**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

This Document Relates To:

*Garrison v. Bankman-Fried*,
Case No. 22-cv-23753-MOORE/OTAZO-REYES

_____/

**RENEWED MOTION TO STAY DISCOVERY (INCLUDING INITIAL DISCLOSURES) BY DEFENDANTS THOMAS BRADY, GISELE BÜNDCHEN, STEPHEN CURRY, LAWRENCE DAVID, GOLDEN STATE WARRIORS, LLC, UDONIS HASLEM, WILLIAM TREVOR LAWRENCE, SHOHEI OHTANI, KEVIN O'LEARY, SHAQUILLE O'NEAL, DAVID ORTIZ, NAOMI OSAKA, AND SOLOMID CORPORATION**

Pursuant to *Order* (ECF 61)[1] following the Initial Conference in this MDL, Defendants Thomas Brady, Gisele Bündchen, Stephen Curry, Lawrence David, Golden State Warriors, LLC ("GSW"), Udonis Haslem, William Trevor Lawrence, Shohei Ohtani, Kevin O'Leary, Shaquille O'Neal, David Ortiz, Naomi Osaka, and Solomid Corporation (collectively, the "Sports & Entertainer Defendants" or "S&E Defendants") renew their motion to stay discovery – including initial disclosures under Rule 26 – pending the Court's rulings on the S&E Defendants'

_____

[1] "ECF" citations are to the docket in this proceeding. References to other proceedings include the initial plaintiff's name and the ECF number, *e.g.*, "*Garrison* ECF 205" references the second Amended Complaint ("SAC") filed in *Garrison v. Bankman-Fried*, No. 22-cv-23753 (S.D. Fla.).

forthcoming motions to dismiss, which are due 45 days after Plaintiffs file their consolidated amended complaint. *See* ECF 61 at 4.[2]

## INTRODUCTION

This motion *should* be unopposed, as Plaintiffs have repeatedly represented that they have no immediate need for discovery from the S&E Defendants. When the S&E Defendants first moved to stay discovery (*Garrison* ECF 162), Plaintiffs opposed the motion **only** as to jurisdictional discovery; they "t[ook] no position and le[ft] it to the Court's discretion what discovery, if any, should be permitted pending a decision on the motions to dismiss and/or any transfer ordered by the Judicial Panel on Multidistrict Litigation." *Garrison* ECF 197 at 4. Plaintiffs subsequently informed the Court that jurisdictional discovery would not be necessary if they were granted leave to file the SAC. *See Garrison* ECF 198 at 6. The Court then ordered Plaintiffs to show cause "whether they still seek jurisdictional discovery … [and] to include in their response the specific genuine issues of material fact that give rise to jurisdictional discovery, as to each Defendant." PAPERLESS ORDER (*Garrison* ECF 201) at 1. Plaintiffs' response identified no such issues; instead, it stated, "[I]f the Court grants [Plaintiffs' motion for leave to amend], the current motions to dismiss will be rendered moot and **no discovery is necessary at this stage**." *Garrison* ECF 202 at 1 (emphasis added).[3]

_____

[2] The S&E Defendants understanding of the *Order* in conjunction with the proceedings at the June 21, 2023, Initial Conference is that Plaintiffs will be filing individualized consolidated amended complaints directed to each group of defendants, such that there may be multiple such pleadings.

[3] Indeed, in a filing dated July 5, 2023, Plaintiffs acknowledged that, even if this motion is denied, they will not take the deposition of Shohei Ohtani until November 2023. *See* ECF 97. Of note,

Plaintiffs were granted leave to file consolidated amended complaints, and they should be held to their word. Even if the Court chose to allow Plaintiffs to contradict their prior positions and claim a need for "jurisdictional" discovery, no such discovery could be necessary. Plaintiffs' counsel represented to the Court at the Initial Conference that Plaintiffs would moot any personal jurisdiction issues by refiling their claims in the proper venues:

> Given the MDL order, we think the personal jurisdiction issues will be resolved, either that the defendants will accept personal jurisdiction here or alternatively, to avoid a lengthy fight, we will simply file cases in their home states that would then be tagalong cases to this Court.

Tr. (ECF 73) at 7:13-17.[4]

Accordingly, the only remaining question is whether Plaintiffs may engage in merits discovery prior to the Court's decision on the S&E Defendants' forthcoming motions to dismiss. The answer should be "No." With respect to the S&E Defendants (at minimum), this remains exactly the type of case where a stay of discovery pending the Court's rulings on case-dispositive motions to dismiss is warranted: one raising novel, unfounded claims in unquestionably costly litigation against multiple defendants. *See, e.g., Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim … should … be resolved before discovery begins.").

---

while Plaintiffs' filing is ambiguous, Mr. Ohtani did not agree Plaintiffs are entitled to discovery at this time; rather, he has agreed on a procedure for discovery if and only if this Motion is denied or any stay entered by the Court expires.

[4] On July 7, 2023, Plaintiffs informed the Court that they will refile in the appropriate jurisdictions. *See* ECF 97 at 2 ("Plaintiffs are working expeditiously to draft those complaints, and to obtain local counsel where needed to file.").

Even before the *Garrison* action became part of this MDL, the Court recognized this is a "complex and costly litigation for all parties involved." Order (*Garrison* ECF 133) at 3. From the original *Garrison* complaint to the FAC to the SAC to, presumably, the consolidated amended complaint to be filed in this MDL, Plaintiffs' claims have expanded in length, parties, and number of causes of action – and thus the complexity and cost as recognized by the Court – making a stay of discovery ever more appropriate.

Despite their ever-expanding causes of action, the core of Plaintiffs' case against the S&E Defendants is unchanged since their original complaint. Plaintiffs contend that the S&E Defendants' alleged advertising or promotional efforts on behalf of FTX make each S&E Defendant individually responsible, under assorted state-law theories, for losses Plaintiffs allegedly suffered when FTX collapsed. Plaintiffs' claims ignore the truth known to the world and repeatedly reiterated in Plaintiffs' own pleadings: FTX's downfall was caused by the secret machinations of a small handful of "FTX Insider Defendants," who lied to Congress, auditors, regulators, investors, and customers across-the-board in committing their multi-billion-dollar fraud. That massive fraud, in which the S&E Defendants had no alleged (or actual) role, renders Plaintiffs' core theory not only novel – which alone would warrant a stay of discovery – but exceedingly implausible.

In sum, discovery should be stayed until the Court decides the S&E Defendants' forthcoming Rule 12(b) motions, and should proceed only if and to the extent Plaintiffs' claims survive Rule 12(b) motions.

## BACKGROUND

Plaintiffs have sued eight current or former professional athletes, a professional basketball team, a model, a television personality, an e-sports organization, and a comedian. Plaintiffs claim that, by entering into routine advertising and endorsement agreements with FTX or its affiliates,

the S&E Defendants rendered themselves liable for Plaintiffs' alleged losses suffered as a result of FTX's massive fraud. Plaintiffs assert that the S&E Defendants are "sellers" of alleged securities – variously identified in the SAC as the FTX platform itself, FTX Yield Bearing Accounts ("YBAs"), or "FTT" tokens – despite not alleging a single statement made by any of the S&E Defendants regarding YBAs or FTT and, for some, not a single statement regarding FTX at all. *See* SAC. And Plaintiffs assert that the S&E Defendants "aided and abetted" FTX's various frauds merely by failing to uncover the fraud that was intentionally concealed not only from Plaintiffs, but also from Congress, venture capitalists, auditors, regulators, and institutional investors.

On April 14, 2023, the S&E Defendants moved to dismiss the then-operative *Garrison* pleading.[5] Each of Plaintiffs' inadequate claims was subject to dismissal on multiple grounds. *See Garrison* ECFs 154 & 156-59. The claims failed under the individual theories under which they were brought and because Plaintiffs neither plausibly pled reliance on any statement by any S&E Defendant nor that their losses were caused by any advertisement or display by an S&E Defendant, as opposed to independent misconduct by the "FTX Insider Defendants." *See id.* Despite these core flaws, Plaintiffs seek to hold the S&E Defendants liable for claimed billions of dollars of losses resulting from the implosion of FTX.

After the Motions to Dismiss were filed, Plaintiffs stated their intent to take seventeen depositions, including depositions of all (then twelve) S&E Defendants. On April 21, 2023,

---

[5] The main Motion to Dismiss (*Garrison* ECF 154) was filed by all of the then-S&E Defendants. For ease of reference, a copy is attached as Exhibit **A**. In addition, as permitted by the Court (*see Garrison* ECF 132), several of the S&E Defendants filed individual motions to dismiss. *See Garrison* ECFs 156-59. Plaintiffs did not respond to the motions; instead, they sought leave to file and then filed the SAC, which added Solomid Corp. as a defendant.

Plaintiffs sent broad requests for production to Defendants Curry, David, GSW, Ohtani, and Osaka, which were followed by unilateral deposition notices for each of the then-S&E Defendants (copies attached as Composite Exhibit **B**). Plaintiffs' sweeping discovery requests establish the burden the S&E Defendants face absent a stay. The S&E Defendants then filed their original Motion to Stay Discovery. As noted above, Plaintiffs did not oppose staying discovery with respect to merits discovery, *Garrison* ECF 197 at 4, after which Plaintiffs filed the SAC.

Plaintiffs' claims again centered on the implausible idea that the S&E Defendants should have (or did) somehow uncover the secret fraud at the core of FTX. Yet, as detailed below, the SAC itself and its exhibits establish that this core assertion is implausible. Plaintiffs' claims against the S&E Defendants are extraordinary and unfounded – which is exactly why discovery should be stayed until those claims have been tested by motions to dismiss.

<u>**ARGUMENT**</u>

"[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Eleventh Circuit has repeatedly held that a district court should exercise its broad discretion to stay discovery in this very circumstance: where plaintiffs have brought a nonmeritorious action and seek to impose significant discovery burdens and costs on the defendants prior to the likely dismissal of the case as to them.

> [A motion to dismiss] always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. *See Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 838 n. 1 (11th Cir. 1997) (per curiam). Therefore, *neither the parties nor the court have any need for discovery before the court rules on the motion*. *See Kaylor v. Fields*, 661 F.2d 1177, 1184 (8th Cir. 1981) ("Discovery should follow the filing of a well-pleaded complaint. It is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim.").

*Chudasama*, 123 F.3d at 1367 (emphasis added). As the Eleventh Circuit further explained:

> Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants,

squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system.

*Id.* at 1368; *see also*, *e.g.*, *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296, 1308-09 (11th Cir. 2020) (citing *Chudasama*, 123 F.3d at 1367); *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 847 (11th Cir. 2020) (same); *Redford v. Gwinnett Cnty. Jud. Cir.*, 350 F. App'x 341, 346 (11th Cir. 2009) (same); *Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005) ("[N]either the parties nor the court have any need for discovery before the court rules on the motion.") (quoting *Chudasama*, 123 F.3d at 1367).

As explained more fully below, all the factors that the Court must consider in exercising its broad discretion favor a stay of discovery:

*First*, although the consolidated amended complaint as to the S&E Defendants has not been filed and, consequently, there are no pending motions to dismiss, a "preliminary peek" at the previously-filed Motion to Dismiss shows that it was meritorious and, if granted, would have disposed of all claims against the S&E Defendants. *See Lewis v. Mercedes-Benz USA, LLC*, No. 19-cv-81220, 2020 WL 4923640, at *2 (S.D. Fla. Mar. 25, 2020) (Ruiz, II, J.) (citation and quotation marks omitted). None of Plaintiffs' statements at the Initial Conference even hinted at Plaintiffs' changing their core theory as to the S&E Defendants (or any other defendant); therefore, the arguments in the Motion to Dismiss are virtually certain to be directly applicable to Plaintiffs' consolidated amended complaint – and should result in dismissal.

*Second*, without a stay, the S&E Defendants would be subject to the considerable burden and expense of discovery in a case that had seven named plaintiffs and eighteen defendants, was then expanded in the SAC, and has now expanded into this MDL, with some 26 plaintiffs and approximately 50 defendants. In addition, given the FTX bankruptcy and the ongoing criminal

cases against Sam Bankman-Fried and other FTX Insider Defendants,[6] all parties will be limited in the discovery they can take regarding the core FTX fraud for at least several months. Thus, if a stay is not granted, the S&E Defendants will uniquely face the burden of responding to discovery while being unable to obtain discovery critical to them.

Specifically, as the Court is aware, there are parallel bankruptcy and criminal proceedings in various courts, including as to FTX itself, Defendant Bankman-Fried, and other FTX Insider Defendants who have been charged with various alleged crimes. The S&E Defendants face significant – if not insuperable – burdens in seeking discovery from FTX, especially at this time. The criminal proceedings pose an absolute bar to at least some discovery necessary for the S&E Defendants. In fact, this specific problem was discussed with the Court at the Initial Conference with respect to Defendant Bankman-Fried, and Plaintiffs not only did not oppose a discovery stay as to him, they also noted their view that the U.S. Attorney's office would likely oppose any discovery "with respect to the criminal defendant [*i.e.*, Bankman-Fried] and the other people who have pled." Tr. at 26; *see also id.* at 25-27.

*Third*, there will be no prejudice to Plaintiffs. A stay of discovery would not deny Plaintiffs the right to take discovery. If the Court denies the forthcoming motions to dismiss and finds that Plaintiffs have stated plausible claims – which the S&E Defendants submit is unlikely – Plaintiffs will have the opportunity to take discovery. Moreover, the duration of the proposed stay is modest and a stay would not at all be prejudicial to Plaintiffs.

In short, the Court should not allow Plaintiffs to proceed with expensive, wide-ranging, and burdensome discovery unless and until the Court finds Plaintiffs have stated a claim for relief.

---

[6] The "FTX Insider Defendants" are now defined as Sam Bankman-Fried, Caroline Ellison, Gary Wang, Nishad Singh, and Dan Friedberg. *See* SAC ¶¶ 62-67.

The Court's discretion to stay discovery exists for this exact reason: to prevent unnecessary and costly discovery with respect to nonmeritorious claims.[7]

### A.    The Court Has Broad Authority to Stay Discovery

District courts possess "broad discretion to stay proceedings as an incident to [their] power to control [their] own docket[s]." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). This includes "'broad discretion to stay discovery pending decision on a dispositive motion.'" *Internaves de Mexico S.A. de C.V. v. Andromeda Steamship Corp.*, No. 16-cv-81719, 2017 WL 7794599, at *1 (S.D. Fla. Feb. 24, 2017) (Middlebrooks, J.) (quoting *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1560

---

[7] The S&E Defendants note that, absent dismissal, a stay of at least some portion of this case is inevitable. Defendant Bankman-Fried's Preliminary Report (ECF 43) asserts, "At all times relevant to the Complaints, in order to use FTX US or FTX Trading, Ltd. services, customers were required to consent to each platform's respective User Agreement, which contained Terms of Service ('ToS'). Both FTX services' ToS contained mandatory arbitration agreements, class action waivers, and choice of venue and law provisions." *Id.* at 2. The S&E Defendants cannot at present verify these statements – given the inability to obtain discovery from FTX or absent voluntary production by Plaintiffs – but anticipate raising the arbitration and class waiver issues upon obtaining the agreements binding Plaintiffs. In the event of a motion to compel arbitration, either dismissal in favor of arbitration or a complete stay pending appeal of a denial is required. On June 23, 2023, the Supreme Court held, "When a federal district court denies a motion to compel arbitration [and an appeal is taken], … [t]he district court must stay its proceedings." *Coinbase, Inc. v. Bielski*, 599 U.S. __, 2023 WL 4138983, *2 (June 23, 2023).

(11th Cir. 1985)). The Eleventh Circuit firmly recognized this principle in *Chudasama* and has repeatedly reiterated the principle in subsequent decisions.

"[D]iscovery *follows* the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." *Carter v. DeKalb Cnty.*, 521 F. App'x 725, 728 (11th Cir. 2013) (italics in original; citations and quotation marks omitted); *see also Isaiah*, 960 F.3d at 1309 ("[T]he District Court … did not abuse its discretion in staying discovery pending resolution of [defendant's] 12(b)(6) motion[.]"); *Diulus*, 823 F. App'x at 847 ("[B]ecause their complaint failed to state a claim, [plaintiffs] were not entitled to discovery[.]"); *Rivas v. Bank of N.Y. Mellon*, 676 F. App'x. 926, 932 (11th Cir. 2017) ("Granting a discovery stay until an impending motion to dismiss is resolved is a proper exercise of th[e Court's] responsibility."); *Roberts v. FNB S. of Alma, Ga.*, 716 F. App'x 854, 857 (11th Cir. 2017) ("[I]n general, motions to dismiss for failure to state a claim should be resolved before discovery begins.") (citation and quotation marks omitted); *Redford*, 350 F. App'x at 346 (affirming stay where motion "raised serious questions regarding the viability of [plaintiff's] complaint"); *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1292 (11th Cir. 2005) (facial challenges should be resolved before discovery, "especially when the challenged claim will significantly expand the scope of allowable discovery").

Courts in this District have repeatedly granted discovery stays under *Chudasama*. A stay is proper where the movant shows "good cause and reasonableness." *Taylor v. Serv. Corp. Int'l*, No. 20-cv-60709, 2020 WL 6118779, at *1 (S.D. Fla. Oct. 16, 2020) (Ruiz, II, J.) (citations and quotation marks omitted). Good cause exists "when the resolution of a preliminary motion may dispose of the entire action." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-22691, 2014 WL 12528362, at *1 (S.D. Fla. Dec. 10, 2014) (Williams, J.) (citation omitted). Courts "must balance the harm produced by a delay in discovery against the possibility that the [dispositive] motion will

be granted and entirely eliminate the need for such discovery." *Rodriguez v. Imperial Brands PLC*, No. 20-cv-23287, 2022 WL 2231504, at *3 (S.D. Fla. May 25, 2022) (Otazo-Reyes, Mag. J.) (citation and quotation marks omitted) (alteration in original). The criteria also involve assessing "the likely costs and burdens of proceeding with discovery" on claims that may be dismissed. *Dayem ex rel. Dayem v. Chavez*, No. 13-cv-62405, 2014 WL 12588513, at *1 (S.D. Fla. Mar. 11, 2014) (Cooke, J.) (citation and quotation marks omitted).

Further, discovery stays are "particularly appropriate in large putative class action cases such as this," where discovery will be sought from multiple defendants, *Taylor*, 2020 WL 6118779, at *3, and "has the potential to consume vast resources," *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 21-md-02994, 2021 WL 10428229, at *2 (S.D. Fla. Oct. 9, 2021) (Ruiz, II, J.) (citation and quotation marks omitted).

**B.      A Quick "Peek" Shows That the S&E Defendants' Forthcoming Motions to Dismiss Are Clearly Meritorious and Will Likely Be Dispositive**

In analyzing the appropriateness of a stay, a court should take a "preliminary peek at the merits of the dispositive motion to see if it appears to be clearly meritorious and truly case dispositive." *Taylor*, 2020 WL 6118779, at *3 (citation and quotation marks omitted); *see also Rodriguez*, 2022 WL 2231504, at *3 (same). However, the Court need not "offer any substantive opinion on the merits of said Motion[s]." *In re Mednax Servs.*, 2021 WL 10428229, at *3 n.2. Though not directly possible here, because neither the Court nor the S&E Defendants have the benefit of Plaintiffs' imminent consolidated amended complaint, the Court does have the benefit of the Motion to Dismiss and the (likely) fact that, even if Plaintiffs' claims against the S&E Defendants yet again expand, their core theory will remain the same. This core theory – that the S&E Defendants are responsible for Plaintiffs' lost investments and that they facilitated FTX's fraud merely by participating in routine advertising – is fundamentally implausible and Plaintiffs fail to state any viable claims based on that core theory.

1.      **Lack of Plausibility Dooms Plaintiffs' Claims**

Most fundamentally, Plaintiffs have not, and cannot, plead that the S&E Defendants, rather than the FTX Insider Defendants, were responsible for their alleged losses. Indeed, Plaintiffs' own pleadings demonstrate otherwise. In the SAC, Plaintiffs attach a Declaration of FTX Chief Compliance Officer Dan Friedberg (*Garrison* ECF 205-1) asserting that as late as November 7, 2022 – long after any contract between FTX and any S&E Defendant – Mr. Friedberg, the person who "oversaw all lawyers" at FTX, supposedly "had no idea of any customer deficit" and "believed that the customer assets were fully funded on a 1:1 basis *as represented to customers*." *Id.* ¶¶ 7, 9 (emphasis added).[8]

Plaintiffs also relied upon and attached to the SAC the First Interim Report of John J. Ray, now the CEO of the various FTX entities as a result of the bankruptcy. *Garrison* ECF 205-4. The Report is explicit: "[T]hese three individuals [Bankman-Fried, Wang, and Singh] . . . controlled nearly every significant aspect of the FTX Group," "*lied to third parties about their business*," and intentionally misled (if not outright lied to) regulators. *Garrison* ECF 205-4 at 3, 7 & 26 (emphasis added); *see also*, *e.g.*, *id.* at 11 (falsifying audit policies), 19-21 (lying about Alameda and secretly altering FTX core code to benefit Alameda), 25 (lying about hot/cold wallet setup).

---

[8] After Mr. Friedberg executed the declaration on which Plaintiffs so heavily rely, he was sued in an adversary proceeding in the FTX bankruptcy by Alameda Research LLC, FTX Trading Ltd., West Realm Shires, Inc., and West Realm Shires Services Inc. (d/b/a FTX.US), which allege that Mr. Friedberg was a core participant in FTX's fraud and was central to FTX's lies to auditors, bankers, investors, and regulators. *See In re FTX Trading Ltd., Alameda Research LLC v. Friedberg*, No. 23-ap-50419-JTD (Bankr. D. Del. June 27, 2023) (copy attached as Exhibit **C**).

The SAC repeatedly recognizes the widespread, but concealed, nature of the FTX Insider Defendants' fraud. *See id.* ¶¶ 21 n.7 ("the separation [of FTX's domestic and international operations] was merely a farce"); 30 (the FTX Platform "was a Ponzi scheme"); 80 ("FTX clearly violated their [sic] own terms of service"); 103 (Ellison's admissions that she agreed with Bankman-Fried "to provide materially misleading financial statements to Alameda's lenders"); 133 (FTX "secretly transferred" $4 billion in customer funds to Alameda "without telling anyone"). And, of course, every FTX Insider Defendant is either subject to criminal investigation or has already pled guilty for the massive fraud that was FTX. *See id.* ¶¶ 63-67.

The implausibility of Plaintiffs' claims has become even more clear since they filed the SAC. Most recently, on June 26, 2023, the Second Interim Report of John Jay Ray III was filed in the FTX bankruptcy.[9] This 32-page second Interim Report further details the wide variety of lies, misrepresentations, and fraudulent activity directed to Congress, regulators, banks, investors, *etc.*, by the FTX Insider Defendants, all of which Plaintiffs seek to lay at the feet of the S&E Defendants. Pertinent here, Mr. Ray states that FTX insiders, "***lied to banks and auditors, executed false documents, and moved the FTX Group from jurisdiction to jurisdiction, taking flight from the United States to Hong Kong to the Bahamas, in a continual effort to enable and avoid detection of their wrongdoing***." *Id.* at 2 (emphasis added). He further states, that "[t]hrough its website, social media, and in statements and submissions to Congress, regulators and other third parties, the FTX Group represented that it maintained a strict separation of customer and corporate funds," but those statements were "false." *Id.* at 4 (footnote omitted).

---

[9] *In re FTX Trading, Ltd.*, No. 22-11068-JTD (Bankr. D. Del. June 26, 2023), ECF 1704, *Notice of Filing Second Interim Report of John J. Ray III to the Independent Directors – the Commingling and Misuse of Customer Deposits at FTX.com* (copy attached as Exhibit **D**).

Plaintiffs' conclusory allegations that the S&E Defendants alone should have somehow divined that FTX lied to Congress, auditors, bankers, institutional investors, *etc.*, and thus should have refused to enter into routine advertising agreements or risk being liable for a fraud they knew nothing about fail the basic "plausibility" requirement of *Twombly* and *Iqbal.* The blame for Plaintiffs' alleged losses falls on FTX and the FTX Insider Defendants – not on the S&E Defendants, whom Plaintiffs have needlessly dragged into this case in search of deep pockets following the FTX Chapter 11 proceedings and the criminal proceedings against the FTX Insider Defendants.

### 2.      Plaintiffs Cannot Plead the Elements of Their Claims

As set out in full detail in the Motion to Dismiss, each of Plaintiffs' claims in the FAC was likely to be dismissed on several independent grounds. *See generally Garrison* ECF 154. All of those claims are reiterated in the SAC, and all the bells and whistles Plaintiffs added to their allegations does not change the analysis.[10] *Compare Garrison* ECF 16 ¶¶ 249-80, *with Garrison* ECF 205 ¶¶ 672-95 & 708-15.

---

[10] The SAC contains 16 counts – 6 under Florida law, and 5 alternative counts each under California and Oklahoma law. Counts 1, 8, and 13 allege that FTX (the company), YBAs, and/or FTTs were unregistered securities, which the S&E Defendants supposedly directly sold to Plaintiffs or which FTX sold to Plaintiffs with "material assistance" from the S&E Defendants. *Id.* ¶¶ 672-79, 721-28, 755-58. Counts 2, 7, and 12 allege that they engaged in "unfair and deceptive practices" in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the California Unfair Competition Law Business & Professions Code, and the Oklahoma Consumer Protection Act. *Id.* ¶¶ 680-89, 716-20, 747-54. Counts 3, 11, and 16 allege that they conspired with

Although Plaintiffs added a host of new counts to the SAC (increasing the number to sixteen), it is the same theory in different sets of ill-fitting clothing. Overall, Plaintiffs' claims fail because the SAC constitutes an impermissible shotgun pleading lumping the S&E Defendants together and failing, as to each defendant, to give notice of the basis of each claim, to adequately plead causation, and to plausibly allege knowledge of FTX's fraud. *See generally Garrison* ECF 154. More granularly, Plaintiffs do not plead facts supporting the elements of any of their state-law claims for violations of securities laws or unfair competition laws, civil conspiracy, aiding and abetting, or declaratory judgment. *See id.* And, under Rule 19, the SAC – and, indeed, this MDL – cannot proceed without FTX, the central actor in Plaintiffs' story and the entity in possession of the majority of the evidence. *See id.*

Plaintiffs' lead cause of action is the same as it was before: A claim under the Florida Securities and Investor Protection Act, Fla. Stat. § 517.07, in which Plaintiffs allege that the S&E Defendants were "agents" of FTX who personally participated in the sale of FTX "securities." *See* SAC ¶¶ 672-79. As explained in the Motion to Dismiss, this claim fails for several reasons. *First*, the S&E Defendants are not persons who can be held liable under Section 517.07 because none of the S&E Defendants was in privity with Plaintiffs (who are alleged buyers of the "securities") and because the S&E Defendants do not qualify as officers, directors, or agents of FTX merely by virtue of their involvement in FTX advertisements or marketing. *See Garrison* ECF 154 at 6-7.

---

the "FTX Group" to induce Plaintiffs to invest in FTX, YBAs, and/or FTT. *Id.* ¶¶ 690-95, 741-46, 771-76. Counts 4, 9, and 14 allege that they "aided and abetted" FTX's fraudulent misconduct. *Id.* ¶¶ 696-701, 729-34, 759-64. Counts 5, 10, and 15 allege that they "aided and abetted" FTX's alleged conversion of Plaintiffs' "funds." *Id.* ¶¶ 702-07, 735-40, 765-70. And Count 6 seeks a declaratory judgment under Florida's Declaratory Judgment statute. *Id.* ¶ 273.

*Second*, none of the S&E Defendants is alleged to have personally participated or aided in a sale to any Plaintiff – nor could any such allegation be made. The S&E Defendants only allegedly appeared in FTX advertisements or had business agreements with FTX regarding FTX's marketing efforts – but crucially, none of the S&E Defendants ever mentioned YBAs or FTT. *See id.* at 7-8.

Plaintiffs' other claims are also fundamentally defective. The FDUTPA claim is barred as a threshold matter because claims related to securities transactions, as alleged here, cannot be brought under FDUTPA. *See id.* at 9-10. The alleged deceptive conduct was not pled with particularity in satisfaction of Rule 9(b), *see id*. at 11, which, by itself, is a basis for the requested stay. A stay of discovery is especially appropriate "where … Plaintiffs failed to plead fraud with particularity as required by" Rule 9(b). *Tradex Glob. Master Fund SPC Ltd. v. Palm Beach Cap. Mgmt., LLC*, No. 09-cv-21622, 2009 WL 10664410, at *1 (S.D. Fla. Nov. 24, 2009) (Moreno, J.). In addition, the claim is based on statements that are non-actionable puffery, *Garrison* ECF 154 at 11, the S&E Defendants did not participate in the alleged underlying misconduct, *id*. at 12-13, and the S&E Defendants were not the proximate cause of Plaintiffs' alleged losses, *id.* at 13-14. Finally, the claims for civil conspiracy and declaratory judgment likewise fail, including because the underlying securities and FDUTPA claims upon which they are based fail. *See id.* at 14-16.

In sum, Plaintiffs' claims failed in the FAC, they failed in the SAC, and they are likely to fail in the forthcoming consolidated amended complaint. Accordingly, there is good cause for a stay of discovery because, when the Court receives Plaintiffs' next iteration of their claims, it will still be faced with a lawsuit that is likely to be dismissed as to the S&E Defendants.

**C.  Without a Stay, the Court and the S&E Defendants Will Be Unduly Burdened by Needless and Expensive Discovery, Especially as This Is Now an MDL Proceeding**

Without the requested stay, the S&E Defendants will be subject to the unnecessary, expensive, and significant burden of engaging in discovery in what already was "complex and

costly litigation," Order (*Garrison* ECF 133) at 3, and now is even more so by virtue of this MDL. This factor weighs heavily in favor of a stay.

In *Chudasama*, the Eleventh Circuit highlighted that discovery "imposes several costs on the litigant from whom discovery is sought," in addition to on the Court and even on Plaintiffs, which is a strong basis to stay discovery. 123 F.3d at 1367. As the Eleventh Circuit explained:

> [Discovery] burdens include the time spent searching for and compiling relevant documents; the time, expense, and aggravation of preparing for and attending depositions; the costs of copying and shipping documents; and the attorneys' fees generated in interpreting discovery requests, drafting responses to interrogatories and coordinating responses to production requests, advising the client as to which documents should be disclosed and which ones withheld, and determining whether certain information is privileged. The party seeking discovery also bears costs, including attorneys' fees generated in drafting discovery requests and reviewing the opponent's objections and responses. Both parties incur costs related to the delay discovery imposes on reaching the merits of the case. Finally, discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes.

*Id*. at 1367-68 (footnote omitted).

As noted above, the burdens of discovery are already apparent in this litigation. Composite Exhibit B shows the expansive nature of the discovery Plaintiffs seek. Plaintiffs' merits discovery would involve, at minimum, (i) full depositions of all twelve S&E Defendants, (ii) production of all documents related to the S&E Defendants' endorsement, sponsorship, or other agreements with FTX, (iii) interrogatories regarding persons involved in the S&E Defendants' decision to enter into agreements with FTX; (iv) non-party discovery and depositions of two purported "FTX Insiders" – Constance Wang and Lou Frangella; (v) discovery and depositions from parties to other actions within this MDL proceeding, such as FTX's accountants – Armanino and Prager Metis; and (vi) non-party discovery and depositions of advertising companies – Wasserman and dentsuMB. *See id.* With the expansion of this case into an MDL, there is no telling what other discovery demands Plaintiffs intend to seek to impose upon the S&E Defendants.

The costs of Plaintiffs' discovery (as well as inevitable discovery battles over the excessive proposed discovery) in this further-expanded proceeding will unnecessarily burden the Court and the S&E Defendants – most of whom are individual persons – which particularly warrants a stay. *See*, *e.g.*, *Taylor*, 2020 WL 6118779, at *3 (stay "particularly appropriate in large putative class action cases … wherein Plaintiff seeks a significant swath of [discovery] from multiple entities"); *Soldevilla v. On the Barrelhead, Inc.*, No. 19-cv-14462, 2020 WL 597317, at *1 (S.D. Fla. Feb. 5, 2020) (Marra, J.) ("By staying discovery until the motion to dismiss is resolved, the parties will avoid the burden of potentially unnecessary, expensive and fruitless discovery."). Further, the Court should also consider the significant and unnecessary burdens already placed upon the S&E Defendants to defend these lawsuits. *See, e.g.*, *Chevaldina v. Katz*, No. 17-cv-22225, 2017 WL 6372620, at *3 (S.D. Fla. Aug. 28, 2017) (Torres, Mag. J.) (staying discovery and noting that defendants "have already incurred tens of thousands of dollars in attorneys' fees for an action that is not properly before this Court").

In sum, the costs and burden that would be placed upon the Court and the S&E Defendants in proceeding with discovery on Plaintiffs' nonmeritorious claims is indisputably onerous, and substantially outweighs any (non-existent) prejudice to Plaintiffs.

**D.     Plaintiffs Will Not Be Prejudiced by a Temporary Stay**

Balanced against the strong legal basis of the Motions to Dismiss and the significant burdens and costs of discovery that would be imposed on the Court and the S&E Defendants, a brief stay of discovery will not cause any prejudice to Plaintiffs.

*First*, a stay of discovery will not prejudice Plaintiffs because discovery is not needed at this stage, where the Court is making threshold evaluations of whether Plaintiffs have stated a claim against the S&E Defendants. These are "purely legal question[s]" and, thus, "neither the parties nor the court have any need for discovery before the court rules on the" forthcoming

motions to dismiss. *Chudasama*, 123 F.3d at 1367; *see also*, *e.g.*, *Torongo v. Robert G. Roy, D.V.M., M.S., P.A.*, No. 15-cv-81490, 2016 WL 10706286, at *1 (S.D. Fla. Jan. 28, 2016) (Middlebrooks, J.) ("Given that [defendant's] Motion to Dismiss raises substantial questions as to the legal sufficiency of the Complaint, a stay of discovery is appropriate.").

 *Second*, there is no prejudice to Plaintiffs. If the Court finds that they have brought a viable lawsuit, then Plaintiffs will have the opportunity to take discovery. As several Judges in this District have recognized, this prevents any true prejudice to Plaintiffs. *See*, *e.g.*, *Marchand v. Wal-Mart Stores, Inc.*, No. 19-cv-80955, 2019 WL 13279818, at *2 (S.D. Fla. Oct. 10, 2019) (Scola, J.) (granting stay because it would "not cause any prejudice to the Plaintiff who will be afforded sufficient opportunity to conduct discovery if any of her claims advance"); *Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-cv-80134, 2014 WL 12580035, at *1 (S.D. Fla. June 24, 2014) (Ryskamp, J.) (stay of discovery would cause no prejudice; "[s]hould this Court deny the Motion to Dismiss, any discovery to which Plaintiff may ultimately be entitled will be available following the stay"). And the duration of the proposed stay would be modest if the Court does not dismiss this action as to the S&E Defendants, with the motions likely ripe for decision in a few months.

 *Third*, any actual prejudice suffered by Plaintiffs would largely be self-imposed. Had they not insisted on *Garrison* becoming part of the MDL, the Court would likely be near-poised to rule on the S&E Defendants' motions directed to the SAC. Under the original briefing schedule, the Motions to Dismiss directed to the FAC would have been fully briefed by June 14, 2023. *See Garrison* ECF 132. The SAC was filed on May 15, 2023; using the Court's prior briefing schedule as a guide, dismissal motions would likely have been fully briefed by the end of this month and ripe for rulings. Further, given that several of the statutory claims asserted by Plaintiffs have attorneys' fees provisions which may entitle the S&E Defendants to recover their attorneys' fees

and costs, *see*, *e.g.*, *Garrison* ECF 154 at 20, a stay would be of substantial benefit to Plaintiffs in the (likely) event the forthcoming motions to dismiss are granted.

* * *

In any event, as the baseline principle of *Chudasama* recognizes, if Plaintiffs have ***not*** stated a claim – and the S&E Defendants submit the Motion to Dismiss shows Plaintiffs have little likelihood of doing so in their forthcoming consolidated amended complaint – then Plaintiffs have no entitlement to discovery at all, and therefore can show no prejudice.

<u>CONCLUSION</u>

This is the exact type of case where a Court should exercise its discretion to enter a stay of discovery. A quick "peek" at the Motion to Dismiss directed to the FAC demonstrates that this case will likely be dismissed at the threshold stage, the burdens of discovery upon the Court and the S&E Defendants would be significant and unnecessary absent a stay, and the prejudice to Plaintiffs is minimal – at best – if not actually non-existent. Therefore, the Court should stay discovery – including Rule 26 initial disclosures – until after the Court has ruled on the motions to dismiss directed to Plaintiffs' forthcoming consolidated amended complaint against the Sports & Entertainer Defendants.

WHEREFORE, Defendants Thomas Brady, Gisele Bündchen, Stephen Curry, Lawrence David, Golden State Warriors, LLC, Udonis Haslem, William Trevor Lawrence, Shohei Ohtani, Kevin O'Leary, Shaquille O'Neal, David Ortiz, Naomi Osaka, and Solomid Corporation request that the Court stay all discovery (including initial disclosure obligations) pending its rulings on the forthcoming motions to dismiss, and grant the S&E Defendants such other and further relief as the Court deems just and proper.

- 20 -

## Local Rule 7.1(a)(3) Certification

At the Initial Conference on June 21, 2023, Plaintiffs' counsel stated that they oppose a discovery stay, *see* Tr. at 31-33, in response to which the Court ordered the S&E Defendants to file this motion within 21 days of the Initial Conference, *see Order* at 4.

Dated: July 12, 2023

Respectfully submitted,

**COLSON, HICKS, EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
(305) 476-7400

By: */s/ Roberto Martínez*
    Roberto Martínez
    Florida Bar No. 305596
     *bob@colson.com*
    Stephanie A. Casey
    Florida Bar No. 97483
     *scasey@colson.com*
    Zachary Lipshultz
    Florida Bar No. 123594
     *zach@colson.com*

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence David, Shaquille O'Neal, Golden State Warriors, LLC and Naomi Osaka*

**LATHAM & WATKINS LLP**
  Andrew B. Clubok (*pro hac vice*)
   *andrew.clubok@lw.com*
  Susan E. Engel (*pro hac vice*)
   *susan.engel@lw.com*
  Brittany M.J. Record (*pro hac vice*)
   *brittany.record@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200
Fax: +1.202.637.2201

**LATHAM & WATKINS LLP**
  Marvin S. Putnam (*pro hac vice*)
   *marvin.putnam@lw.com*
  Jessica Stebbins Bina (*pro hac vice*)
   *jessica.stebbinsbina@lw.com*
  Elizabeth A. Greenman (*pro hac vice*)
   *elizabeth.greenman@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500
Fax: +1.424.653.5501

**LATHAM & WATKINS LLP**
Michele D. Johnson (*pro hac vice*)
*michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235
Fax: +1.714.755.8290

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence David, and Shaquille O'Neal*

**GIBSON, DUNN & CRUTCHER LLP**

Matthew S. Kahn (*pro hac vice*)
*MKahn@gibsondunn.com*
Michael J. Kahn (*pro hac vice*)
*MJKahn@gibsondunn.com*
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Phone: 415.393.8379

Michael Dore (*pro hac vice*)
*MDore@gibsondunn.com*
Jamila MacEbong (*pro hac vice*)
*JMacEbong@gibsondunn.com*
333 South Grand Avenue
Suite 4600
Los Angeles, CA 90071-3197
Phone: 213.229.7155

*Attorneys for Defendants Golden State Warriors, LLC and Naomi Osaka*

**DIMOND KAPLAN & ROTHSTEIN, P.A.**
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone: (305) 374-1920
Facsimile: (305) 374-1961

By: */s/ David A. Rothstein*
David A. Rothstein, Esq.
Fla. Bar No. 995762
*DRothstein@dkrpa.com*
Alexander M. Peraza, Esq.
Fla. Bar No. 107044
*APeraza@dkrpa.com*
Eshaba Jahir-Sharuz, Esq.
Fla. Bar No. 1038846
*Eshaba@dkrpa.com*

*Attorneys for Defendant William Trevor Lawrence*

**MCANGUS GOUDELOCK & COURIE LLC**
2000 Market Street, Suite 780
Philadelphia, PA 19103
(484) 406-4334

By: */s/ Eric A. Fitzgerald*
    Eric A. Fitzgerald (*pro hac vice*)
     *eric.fitzgerald@mgclaw.com*
    Hillary N. Ladov (*pro hac vice*)
     *hillary.ladov@mgclaw.com*

*Attorneys for Defendant William Trevor Lawrence*

**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700
Fax: 954-468-2454

By: */s/ Christopher S. Carver*
    Christopher S. Carver, Esq.
    Florida Bar No. 993580
    *christopher.carver@akerman.com*
    Jason S. Oletsky, Esq.
    Florida Bar No. 9301
    *jason.oletsky@akerman.com*
    Katherine A Johnson, Esq.
    Florida Bar No. 1040357
    *katie.johnson@akerman.com*

*Attorneys for Defendants Udonis Haslem and David Ortiz*

**WEIL, GOTSHAL & MANGES LLP**

By: */s/ Edward Soto*
    Edward Soto (FBN 0265144)
    *edward.soto@weil.com*
    1395 Brickell Avenue, Suite 1200
    Miami, FL 33131-3368
    Tel.: (305)-577-3100

*Attorney for Defendant Shohei Ohtani*

**McDERMOTT WILL & EMERY LLP**
333 SE 2nd Ave., Suite 4500
Miami, Florida 33131
Telephone: (212) 547-5768
Facsimile: (305) 347-6500

By: */s/ Nathan Bull*
    Nathan Bull (Fla. Bar No. 1029523)
    *nbull@mwe.com*

**McDERMOTT WILL & EMERY LLP**
   Jason D. Strabo (*pro hac vice*)
      *jstrabo@mwe.com*
   Ellie Hourizadeh (*pro hac vice*)
      *ehourizadeh@mwe.com*
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 788-4125
Facsimile: (310) 277-4730

**McDERMOTT WILL & EMERY LLP**
   Sarah P. Hogarth (*pro hac vice*)
      *shogarth@mwe.com*
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8354
Facsimile: (202) 756-8087

*Attorneys for Defendant Stephen Curry*

**MARCUS NEIMAN RASHBAUM**
**& PINEIRO LLP**
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel: (954) 462-1200

2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305)-400-4260

By: */s/ Jeffrey Neiman*
   Jeffrey Neiman
   Fla Bar. No. 544469
      *jneiman@mnrlawfirm.com*
   Jeffrey Marcus
   Fla. Bar No. 310890
      *jmarcus@mnrlawfirm.com*
   Michael Pineiro
   Fla. Bar No. 041897
      *mpineiro@mnrlawfirm.com*
   Brandon Floch
   Fla. Bar No. 125218
      *bfloch@mnrlawfirm.com*

**BERK BRETTLER LLP**
9119 Sunset Boulevard
West Hollywood, CA 90069
Tel.: (310) 278-2111
Andrew B. Brettler (*pro hac vice*)
   *abrettler@berkbrettler.com*

*Attorneys for Defendant Kevin O'Leary and*
*Solomid Corporation d/b/a Team Solomid, TSM*
*and/or TSM FTX*