# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 22-cv-23753-MOORE/BECERRA

EDWIN GARRISON, *et al.*, on behalf of
themselves and all other similarly situated,

      Plaintiffs,

v.

SAM BANKMAN-FRIED, *et al.*,

      Defendants.

_____/

**MOTION TO DISMISS BY DEFENDANTS THOMAS BRADY, GISELE BÜNDCHEN, STEPHEN CURRY, LAWRENCE DAVID, THE GOLDEN STATE WARRIORS, LLC, UDONIS HASLEM, WILLIAM TREVOR LAWRENCE, SHOHEI OHTANI, KEVIN O'LEARY, DAVID ORTIZ, AND NAOMI OSAKA AND INCORPORATED MEMORANDUM OF LAW AND REQUEST FOR HEARING**

1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ..............................................................................2

III.  ARGUMENT ......................................................................................................4

A.    There Is No Link Between Plaintiffs' Harms And Movants ...................4

B.    Plaintiffs Fail To State Any Claim..........................................................6

1.    Plaintiffs Fail To State a Claim Under The Florida Securities Act ............6

a.    Plaintiffs Do Not—And Cannot—Allege Any Movant Sold
A YBA Or Personally Participated In A YBA Sale ......................6

b.    Plaintiffs Show No Connection To Florida ...................................8

2.    Plaintiffs Fail To State A Claim Under FDUTPA .......................................9

a.    FDUTPA Does Not Apply To Alleged Securities
Transactions ....................................................................................9

b.    The Amended Complaint Fails To Allege The Elements Of
FDUTPA .......................................................................................10

(1)    No Deceptive Act Or Unfair Practice ...............................11

(a)    Plaintiffs Fail To Satisfy Rule 9(b).......................11

(b)    The Alleged Misrepresentations Are, At
Most, Puffery .........................................................11

(c)    Movants Did Not Participate In Misconduct .........12

(d)    Anti-Touting Rules Do Not Support
FDUTPA Claims....................................................13

(2)    Plaintiffs Fail To Allege Causation Under FDUTPA .......13

3.    Plaintiffs Fail To State A Claim For Civil Conspiracy.............................14

4.    Plaintiffs Fail To Allege A Basis For Declaratory Relief.........................15

5.    Out-of-State Plaintiffs Cannot Bring Claims Under Florida Law .............16

i

C.   Allowing Plaintiffs' Claims To Proceed Raises First Amendment Concerns .......................................................................................16

D.   The Case Should Be Dismissed Because FTX Is An Indispensable Party ............17

     1.   Under Both Prongs Of The Rule 19 Test, FTX Is A Necessary Party ........................................................................................18

     2.   Because FTX Cannot Be Joined Or Subject To Discovery, "Equity And Good Conscience" Favor Dismissal Under Rule 19(B)......................19

E.   Further Amendment Would Require Leave And Should Be Denied ...................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*2 Montauk Highway LLC v. Glob. Partners LP*,
  296 F.R.D. 94 (E.D.N.Y. 2013) ................................................................20

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) ...............................................................15

*Adapt Programs, LLC v. Veritable Billings Servs., LLC*,
  2022 WL 3681953 (S.D. Fla. Mar. 22, 2022)...........................................11

*Am. United Life Ins. Co. v. Martinez*,
  480 F.3d 1043 (11th Cir. 2007) ...............................................................14

*Apex Toxicology, LLC v. United HealthCare Servs., Inc.*,
  2020 WL 13551299 (S.D. Fla. July 7, 2020)............................................15

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
  938 F. Supp. 825 (S.D. Fla. 1996) ..............................................................7

*Barmapov v. Amuial*,
  986 F.3d 1321 (11th Cir. 2021) .................................................................4

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,
  2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) .........................................14

*Bolin v. Story*,
  225 F.3d 1234 (11th Cir. 2000) ...............................................................15

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)..................................................................................17

*Braun v. Soldier of Fortune Mag., Inc.*,
  968 F.2d 1110 (11th Cir. 1992) ...............................................................17

*BVCV High Point, LLC v. City of Prattville*,
  2022 WL 3716592 (N.D. Ala. Aug. 29, 2022) .........................................15

*Calderon v. Ashmus*,
  523 U.S. 740 (1998)..................................................................................16

*Carnival Corp. v. Rolls-Royce PLC*,
  2009 WL 3861450 (S.D. Fla. Nov. 17, 2009)...........................................16

*Carolina Cas. Ins. Co. v. Condor Aerial, LLC*,
  2018 WL 5668505 (N.D. Fla. July 2, 2018) ...................................................................19

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) .......................................................................................11

*Cawthon v. Phillips Petroleum Co.*,
  124 So. 2d 517 (Fla. 2d DCA 1960) ..................................................................................7

*Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto.*
  *Ins. Co.*,
  789 F. Supp. 2d 1311 (S.D. Fla. 2011) .............................................................................16

*CFTC v. Bankman-Fried*,
  No. 22-cv-10503 (S.D.N.Y. Feb. 13, 2023), ECF No. 38 ..............................................17

*Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*,
  669 F.2d 667 (11th Cir. 1982) .........................................................................................18

*In re CNL Hotels & Resorts, Inc.*,
  2005 WL 2291729 (M.D. Fla. Sept. 20, 2005) ..................................................................8

*Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*,
  87 F. Supp. 2d 1287 (S.D. Fla. 2000) ................................................................................9

*Dillon v. Axxsys Int'l, Inc.*,
  385 F. Supp. 2d 1307 (M.D. Fla. 2005) .............................................................................8

*Dinaco, Inc. v. Time Warner, Inc.*,
  346 F.3d 64 (2d Cir. 2003) ................................................................................................7

*E.F. Hutton & Co., Inc. v. Rousseff*,
  537 So. 2d 978 (Fla. 1989) .................................................................................................8

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ...........................................................................................................9

*In re Ethereummax Inv. Litig.*,
  2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) ...............................................14

*Fallani v. Am. Water Corp.*,
  574 F. Supp. 81 (S.D. Fla. 1983) .....................................................................................18

*Feingold v. Budner*,
  2008 WL 4610031 (S.D. Fla. Oct. 10, 2008) ...................................................................15

*Feng v. Walsh*,
 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and
 recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) ........................9, 10, 14

*Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of
 Fla., Inc.*,
 526 F. Supp. 3d 1282 (S.D. Fla. 2021) ...............................................................................14

*FTC v. Student Aid Ctr., Inc.*,
 281 F. Supp. 3d 1324 (S.D. Fla. 2016) ...............................................................................12

*In re FTX Trading Ltd.*,
 No. 22-11068 (Bankr. D. Del.) .......................................................................................3, 15

*Glasser v. Hilton Grand Vacations Co., LLC*,
 948 F.3d 1301 (11th Cir. 2020) ..........................................................................................16

*Groom v. Bank of Am.*,
 2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ........................................................................7, 8

*Hodges v. Monkey Cap., LLC*,
 2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) .....................................................................10

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
 224 So. 3d 316 (Fla. 5th DCA 2017) ...........................................................................6, 7, 8

*Justice v. Rheem Mfg. Co.*,
 318 F.R.D. 687 (S.D. Fla. 2016) ...................................................................................13, 14

*Kahan Novoa v. Safra Nat'l Bank of N.Y.*,
 313 F. Supp. 2d 1347 (S.D. Fla. 2003) .................................................................................9

*KC Leisure, Inc. v. Haber*,
 972 So. 2d 1069 (Fla. 5th DCA 2008) .................................................................................12

*KeyView Lab'ys, Inc. v. Barger*,
 2020 WL 8224618 (M.D. Fla. Dec. 22, 2020) ....................................................................11

*Lewis v. Russell*,
 2009 WL 1260290 (E.D. Cal. May 7, 2009) .......................................................................17

*Lombardo v. Johnson & Johnson Consumer Cos.*,
 124 F. Supp. 3d 1283 (S.D. Fla. 2015) ..........................................................................13, 14

*Lowe v. SEC*,
 472 U.S. 181 (1985)..............................................................................................................17

v

*Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC,*
    783 F. Supp. 2d 1214 (S.D. Fla. 2011) ................................................................16

*Meridian Tr. Co. v. Batista,*
    2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ......................................................14

*Mfg. Rsch. Corp. v. Greenlee Tool Co.,*
    693 F.2d 1037 (11th Cir. 1982) ............................................................................11

*Minshall v. TD Evergreen,*
    2005 WL 8145046 (M.D. Fla. Aug. 4, 2005) ......................................................10

*Molinos Valle Del Cibao, C. por A. v. Lama,*
    633 F.3d 1330 (11th Cir. 2011) ............................................................................19

*Montgomery v. New Piper Aircraft, Inc.,*
    209 F.R.D. 221 (S.D. Fla. 2002) ..........................................................................16

*Morchem Indus., Inc. v. Rockin Essentials LLC,*
    2021 WL 5014105 (S.D. Fla. June 16, 2021) (Moore, J.) ...............................5, 10

*Opus Grp., LLC v. Enomatic Srl,*
    2012 WL 13134611 (S.D. Fla. Aug. 23, 2012).....................................................20

*Perret v. Wyndham Vacation Resorts, Inc.,*
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ................................................................10

*In re Phila. Newspapers, LLC,*
    423 B.R. 98 (E.D. Pa. 2010) ................................................................................17

*Pinnacle Foods of Cal., LLC v. Popeyes La. Kitchen, Inc. Rest. Brands Int'l, Inc.,*
    2022 WL 17736190 (S.D. Fla. Dec. 16, 2022) ....................................................13

*Provident Tradesmens Bank & Tr Co. v. Patterson,*
    390 U.S. 102 (1968)..............................................................................................18

*Rensel v. Centra Tech, Inc.,*
    2019 WL 2085839 (S.D. Fla. May 13, 2019) ........................................................8

*Rogers v. Cisco Sys., Inc.,*
    268 F. Supp. 2d 1305 (N.D. Fla. 2003).................................................................10

*Ryder Int'l Corp. v. First Am. Nat'l Bank,*
    943 F.2d 1521 (11th Cir. 1991) ..............................................................................8

*In re Sahlen & Assocs., Inc. Sec. Litig.,*
    773 F. Supp. 342 (S.D. Fla. 1991) ..........................................................................6

*SEC v. Bankman-Fried,*
   No. 22-cv-10501 (S.D.N.Y. Feb. 13, 2023), ECF No. 16 ...................................................17

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC,*
   650 F. Supp. 2d 1213 (S.D. Fla. 2009) ...................................................................................16

*SIG, Inc. v. AT & T Digit.. Life, Inc.,*
   971 F. Supp. 2d 1178 (S.D. Fla. 2013) ..........................................................................10, 12

*Snyder v. Phelps,*
   562 U.S. 443 (2011)................................................................................................................17

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery,*
   *LLC,*
   278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..................................................................................10

*Stevens v. Osuna,*
   877 F.3d 1293 (11th Cir. 2017) .............................................................................................12

*Thompson v. Procter & Gamble Co.,*
   2018 WL 5113052 (S.D. Fla. Oct. 19, 2018).........................................................................11

*Tippens v. Round Island Plantation LLC,*
   2009 WL 2365347 (S.D. Fla. July 31, 2009).........................................................................14

*Trilogy Props. LLC v. SB Hotel Assocs. LLC,*
   2010 WL 7411912 (S.D. Fla. Dec. 23, 2010) ......................................................................6, 7

*United States v. Bankman-Fried,*
   No. 22-cr-673-LAK (S.D.N.Y.)................................................................................................3

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,*
   287 F. App'x 81 (11th Cir. 2008) ....................................................................................10, 11

*Weiland v. Palm Beach Cty. Sheriff's Off.,*
   792 F.3d 1313 (11th Cir. 2015) ...............................................................................................5

*Wildes v. BitConnect Int'l PLC,*
   25 F.4th 1341 (11th Cir. 2022) ................................................................................................8

*Witmer v. Bates,*
   2022 WL 2134593 (N.D. Ala. June 14, 2022)........................................................................18

**STATUTES**

11 U.S.C.

    § 362(a) ................................................................................................3

    § 362(a)(1) ..........................................................................................17

    § 362(a)(3) ..........................................................................................17

15 U.S.C.

    § 77e(a)(1) ...........................................................................................8

    § 77*l* ..................................................................................................18

    § 77*l*(a)(1) ..........................................................................................8

    § 77q(b) ..............................................................................................13

Fla. Stat.

    § 501.2105(1) .....................................................................................20

    § 517.07 ...............................................................................................6

    § 517.07(1) ......................................................................................9, 16

    § 517.211 .........................................................................................6, 7

    § 517.211(1) .........................................................................................6

    § 517.211(3)(a) ...................................................................................18

    § 517.211(3)(b) ...................................................................................18

    § 517.211(6) ........................................................................................20

**RULES**

Fed. R. Bankr. P. 7001 ..............................................................................20

Fed. R. Civ. P. 8 .......................................................................................15

Fed. R. Civ. P. 9 .......................................................................................11

Fed. R. Civ. P. 9(b) ..............................................................................*passim*

Fed. R. Civ. P. 19 ...............................................................................2, 18, 19

Fed. R. Civ. P. 19(a)(1) .............................................................................18

**REGULATIONS**

16 C.F.R.

    § 255.1(d) (Ex. 4) ...............................................................................12

    § 255.5 (Ex. 2) ...................................................................................13

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ...........................................................................2, 16, 17

## OTHER AUTHORITIES

Carly Wanna & Felipe Marques, *FTX US Eyed High-End Office Space in Miami Before Bankruptcy*, BLOOMBERG (Dec. 14, 2022), https://www.bloomberg.com/news/articles/2022-12-14/ftx-us-planned-miami-headquarters-move-before-bankruptcy#xj4y7vzkg .................................................................9

David Yaffe-Bellany & Matthew Goldstein, *Third Top FTX Executive Pleads Guilty in Fraud Investigation*, N.Y. TIMES (Feb. 28, 2023) ........................................................3

Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011) ...........................................19

## I.     INTRODUCTION

Plaintiffs, individuals who allegedly invested in certain products offered by a now defunct cryptocurrency exchange and investment platform, FTX, seek to hold Movants—seven current or former professional athletes, a professional basketball team, a supermodel, a television personality, and a comedian—jointly and severally liable for billions of dollars in losses resulting from Plaintiffs' and the putative classes' alleged deposits of funds into Yield Bearing Accounts ("YBAs") offered by FTX. Am. Compl. ("AC") ¶ 21, ECF No. 16. Plaintiffs allege Movants are somehow responsible for these losses—and indeed are "sellers" of YBAs—because of their involvement in FTX advertisements or sponsorships relating to the FTX exchange. Plaintiffs' allegations are meritless. Plaintiffs do not allege any Movant *ever* even mentioned YBAs—let alone encouraged any Plaintiff to deposit funds into them—nor do they allege that any Movant played any role in the subsequent alleged losses of funds from those accounts—allegedly caused by FTX's misappropriation and mismanagement.

Plaintiffs simply were not injured by Movants. As their complaint lays bare, ***FTX***—not Movants—allegedly enticed Plaintiffs into opening YBAs. And it was ***FTX*** that allegedly operated the scheme that deprived Plaintiffs of the funds deposited into those YBAs. Plaintiffs do not—and cannot—allege a causal connection between the ***FTX***-offered YBAs that allegedly caused their injuries and any statement made by a Movant—some of whom are not even alleged to have made any statement at all. Indeed, Plaintiffs do not allege facts establishing that any Movant sold or personally participated in the sale of YBAs. The lack of causation is fatal to all of Plaintiffs' claims, requiring dismissal with prejudice.

Plaintiffs' claims further fail because Plaintiffs fail to plead facts supporting the elements of their counts for violations of the Florida Securities Act, FDUTPA (which is not even applicable in the securities context), civil conspiracy, or a declaratory judgment, and the non-Florida Plaintiffs

fail to allege any connection to the state. Not only that, stretching these causes of action to impose liability for otherwise valid commercial speech would raise significant First Amendment concerns. Each of these issues requires Plaintiffs' claims be dismissed **with prejudice** because the facts pleaded do not, and cannot, establish liability against Movants.

Alternatively, under Rule 19, this suit cannot proceed without FTX, the central actor in Plaintiffs' story and the entity in possession of the majority of the evidence.

## II.    FACTUAL BACKGROUND

As Plaintiffs tell it, "[t]he FTX group of companies" (collectively, "FTX"[1]) "was founded in 2019 . . . as an exchange or marketplace for the trading of crypto assets." AC ¶ 75. That same year, FTX "began offering" interest-bearing accounts, called "YBAs," "through its Earn program," *id.* ¶ 160, which allowed users to "opt[] in and participat[e] in staking . . . supported assets in [the user's] FTX account," and become "eligible to earn" pre-set rates of return on assets held in the account, *id.* ¶ 162; *see also id.*, Ex. A ¶¶ 30-31.

Hoping to grow its exchange, FTX launched a "mass branding" and advertising campaign. *See id.* ¶¶ 199-203. As part of that effort, certain FTX entities allegedly paid certain Movants to appear in commercials, display the FTX logo, or merely lend their images for FTX's limited use. *See id.* ¶¶ 205-32. None of these advertisements or marketing materials referenced YBAs by name or description. *See id.* Rather, they ranged in content from a satirical advertisement in which Larry David warns users **not** to "get into" crypto with FTX; to a call from "The Moon" to David Ortiz telling him "frantically" that investing in FTX is a good idea; to simple signage featuring FTX's

---

[1] Plaintiffs do not identify the specific FTX entity from which they purchased the alleged securities. Movants therefore refer to FTX generally to encompass any FTX entity which Plaintiffs may have engaged in opening or operating a YBA.

logo at Chase Center where the Golden State Warriors play home games; to generic television advertisements depicting Brady, Haslem, and Bündchen asking if people are "in" on FTX. *See id.* ¶¶ 206, 216, 218, 222-23, 232. For some Movants, no advertising materials are alleged at all; FTX merely announced sponsorship agreements with Ohtani and Lawrence. *See id.* ¶¶ 225-26.

In November 2022, FTX collapsed as customers withdrew "an estimated 6 billion" from the exchange over a three-day period. *Id.* ¶¶ 127-28. Plaintiffs do not allege that they failed to withdraw their deposits, but they each allege that they "sustained damages" in the fallout, *id.* ¶¶ 23-29, and "lost investments," *id.* ¶¶ 263, 272. Following this liquidity crisis, FTX and 101 affiliated debtors initiated bankruptcy proceedings. *Id.* ¶ 128; *see In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.). According to Plaintiffs, in the lead-up to FTX's collapse, FTX's managers misappropriated customer funds, failed to adhere to compliance obligations, and severely mismanaged the company. AC ¶¶ 121-30. These allegations are the subject of multiple ongoing investigations in the bankruptcy court; a pending criminal case against the company's founder, Defendant Sam Bankman-Fried; and multiple criminal plea agreements involving FTX insiders.[2]

According to Plaintiffs, prior to FTX's collapse, each "invested" an unspecified amount into an FTX YBA "after being exposed to some or all of" the FTX promotions or press releases involving Movants. AC ¶¶ 23-29, 160. Barred by the automatic bankruptcy stay from bringing claims directly against FTX outside the bankruptcy process, *see* 11 U.S.C. § 362(a), Plaintiffs sued

---

[2] *See, e.g.*, Adversary Compl. ("Bankr. Compl."), *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Dec. 27, 2022), ECF No. 321 (class action by FTX investors for recission); *United States v. Bankman-Fried*, No. 22-cr-673-LAK (S.D.N.Y.); David Yaffe-Bellany & Matthew Goldstein, *Third Top FTX Executive Pleads Guilty in Fraud Investigation*, N.Y. TIMES (Feb. 28, 2023), https://www.nytimes.com/2023/02/28/technology/ftx-guilty-plea-fraud.html.

Movants and a variety of FTX insiders. Compl. ¶¶ 16-29, ECF No. 1; AC ¶¶ 30-42. Plaintiffs seek to represent three classes of investors who "purchased or enrolled in" YBAs around the globe, across the nation, or in the State of Florida. AC ¶ 234.

Plaintiffs' amended complaint contains four counts. Count One alleges that YBAs were unregistered securities, which FTX sold to Plaintiffs with "material assistance" from Movants in violation of the Florida Securities and Investor Protection Act ("Florida Securities Act"). *Id.* ¶¶ 249-56. Count Two alleges that Movants engaged in "unfair and deceptive practices" in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Id.* ¶¶ 257-66. Count Three alleges that Movants conspired with "FTX entities" to induce Plaintiffs to invest in YBAs. *Id.* ¶¶ 267-72. And Count Four seeks a declaratory judgment. *Id.* ¶ 273.

## III.    ARGUMENT

### A.    There Is No Link Between Plaintiffs' Harms And Movants

Plaintiffs' amended complaint fails at the outset because it is directed at the wrong persons, and Movants respectfully request that it be dismissed with prejudice.

Plaintiffs' sprawling, 280-paragraph amended complaint is a classic "shotgun pleading," *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021),[3] that contains no factual allegations connecting anything Movants did to any of Plaintiffs' alleged losses. Plaintiffs do not even allege that some Movants made any statements promoting FTX at all. Instead, the amended complaint— a blunderbuss of allegations about FTX's fraud and subsequent collapse, as well as an unrelated litigation involving a different cryptocurrency exchange—refers collectively to "Defendants" without distinguishing among the "FTX Insider Defendants" and those merely alleged to have been involved in advertising or sponsorship, including Movants. *See, e.g.*, AC ¶¶ 255, 266, 270-

---

[3] Internal citations and quotation marks are omitted and emphasis added throughout.

71. This fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," and requires dismissal. *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Morchem Indus., Inc. v. Rockin Essentials LLC*, 2021 WL 5014105, at *4 (S.D. Fla. June 16, 2021) (Moore, J.).

Dismissal must be *with* prejudice because the lack of causation between Movants and Plaintiffs' harms cannot be cured by amendment. *FTX* is the entity accused of failing to register the alleged securities and stealing the funds allegedly in Plaintiffs' accounts. Indeed, the only places where Plaintiffs identify any Movant merely describe advertisements or sponsorships—without alleging any wrongdoing by any Movant or connection to any Plaintiff. *See* AC ¶¶ 205-32. Celebrities alleged only to have agreed to a sponsorship, appeared in advertising, or worn the FTX logo on their clothing, *see id.*, should not be required to litigate complex claims about *FTX*'s alleged fraud.

As detailed *infra*, causation is an essential element of each of Plaintiffs' claims. Yet there is no plausible connection between advertising, postings, or sponsorships related to FTX generally and Plaintiffs' specific alleged lost deposits. Plaintiffs' conclusory allegations that Movants made statements "to induce consumers to invest in the YBAs," *e.g.*, *id.* ¶ 211, are belied by the statements themselves—*none* of which mention YBAs (to the extent Plaintiffs even plead that a particular Movant made any statement at all, which they do not as to Ohtani or Lawrence, *see id.* ¶¶ 225-26). "The Moon" calling David Ortiz about "opportunities to get into cryptocurrency with FTX," Tom Brady or Udonis Haslem proclaiming "I'm in" on FTX, or Curry advising he's "not an expert" on crypto, *id.* ¶¶ 206, 217-21—without any mention of YBAs—cannot plausibly tie these Movants to every product offered by FTX, let alone make them *sellers* of those products. Nor do Plaintiffs explain how FTX's announcements of certain Movants' sponsorships, other Movants' displays of

the FTX logo, or Twitter campaigns and YouTube videos promoting FTX, *id.* ¶¶ 212, 219, 222, 225-27, induced any Plaintiff to deposit funds into a YBA. Under Plaintiffs' theory, actors in any brokerage ad would be liable for selling any security that an individual user later purchased using the brokerage's services. That's nonsense. Plaintiffs' failure to allege any link between Movants and Plaintiffs is fatal to Plaintiffs' claims, which all require ***causation***.

**B.      Plaintiffs Fail To State Any Claim**

**1.      Plaintiffs Fail To State a Claim Under The Florida Securities Act**

In Count One, Plaintiffs allege a claim under the Florida Securities Act, Fla Stat. § 517.07, which fails as a matter of law. Even accepting Plaintiffs' allegation that YBAs were securities, Movants are not subject to liability under the statute. Further, the Florida Securities Act extends only to claims with a connection to Florida, which does not exist here.

**a.      Plaintiffs Do Not—And Cannot—Allege Any Movant Sold A YBA Or Personally Participated In A YBA Sale**

Liability under Section 517.07 extends to only two groups: (i) the "person making the sale" of an unregistered security, and (ii) directors, officers, partners, and agents of the seller who "personally participate[] or aid[] in making the sale." Fla. Stat. § 517.211(1); *see also J.P. Morgan Sec., LLC v. Geveran Invs. Ltd*., 224 So. 3d 316, 327 (Fla. 5th DCA 2017). The amended complaint fails to allege that any Movant falls within either category.

As to the first, Plaintiffs do not—and cannot—allege that any Movant is a "person making the sale" of YBAs. Under Florida law, the only "person making the sale" is the person in privity with the buyer of the alleged security. *See Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) ("[F]or a buyer to have a claim under Florida Statutes § 517.211, buyer/seller privity must exist."); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 (S.D. Fla. 1991) (plaintiff may recover under first prong of Section 517.211 only from

"his seller, who he is in privity with"). Plaintiffs do not, and cannot, allege that any Movant entered into a contract with any of them involving YBAs or is otherwise in privity with them: To the contrary, each Plaintiff admits he "purchased an unregistered security *from FTX*." AC ¶¶ 22-29.

Plaintiffs fare no better on the second prong. Only persons on "the list of people enumerated in the statute . . . may be liable." *J.P. Morgan*, 224 So. 3d at 329. But Plaintiffs allege no facts suggesting that any Movant served as a director, officer, partner, or agent of or for the seller, *i.e.*, FTX. And "a conclusory allegation, unsupported by facts, fails to show that any of the defendants" fulfilled one of those roles. *Trilogy Props. LLC*, 2010 WL 7411912, at *12. For good reason: merely being involved in FTX advertisements (and not all Movants are even alleged to have done that much) is wholly insufficient. *See Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003); *Cawthon v. Phillips Petroleum Co.*, 124 So. 2d 517, 520 (Fla. 2d DCA 1960) ("general advertisement" did not constitute an assertion of agency).

Even if a Movant were within the "list of people enumerated in the statute," *J.P. Morgan*, 224 So. 3d at 329, each would still fall outside the second category because Plaintiffs fail to allege that any Movant "personally participated or aided in making the sale" of YBAs, Fla. Stat. § 517.211. Liability requires "direct[] involve[ment] in a sale of securities," *J.P. Morgan,* 224 So. 3d at 328, and "activity in inducing the purchaser to invest," *Groom v. Bank of Am.*, 2012 WL 50250, at *5 (M.D. Fla. Jan. 9, 2012); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996) ("[L]iability only extends to persons who *successfully* solicit the purchase[.]").

Plaintiffs do not allege that any Movant was involved at all in FTX's alleged sale of YBAs to Plaintiffs. Plaintiffs point only to commercials promoting **the FTX exchange** (a platform for buying and selling all kinds of crypto and fiat assets), announcements of FTX sponsorships, or

logo placements. ***None*** of these statements (or non-statements) mention, let alone "actively and directly . . . influence[d] or induce[d] [Plaintiffs] to buy," YBAs. *Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005); *Groom*, 2012 WL 50250, at *5.

Plaintiffs cite *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022), for the proposition that Movants "solicit[ed] their purchases of the unregistered YBAs." AC ¶ 20. As a threshold matter, *Wildes* concerned a claim under Section 12(a)(1) of the ***federal*** Securities Act of 1933, 15 U.S.C. § 77e(a)(1), which, unlike the state statute, also applies to "offers" of securities, *see* 15 U.S.C. § 77*l*(a)(1). However, "[l]iability under" the Florida Securities Act "is narrower than under federal law." *E.F. Hutton & Co., Inc. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989); *see also J.P. Morgan*, 224 So. 3d at 328. Regardless, Plaintiffs' claim fails under *Wildes* too, which requires that "for solicitation to occur, a person must 'urge or persuade' another ***to buy a particular security***." 25 F.4th at 1346-47 (quoting *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1531, 1534 (11th Cir. 1991)); *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729, at *4-5 (M.D. Fla. Sept. 20, 2005) ("A claim of solicitation requires allegations that the defendant directly solicited the plaintiff ***to purchase the securities at issue***" and "that the Plaintiffs' purchases . . . ***resulted from*** that solicitation."); *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *4 (S.D. Fla. May 13, 2019) (dismissing federal securities claims against Floyd Mayweather founded on allegations equivalent to Plaintiffs').

### b.   Plaintiffs Show No Connection To Florida

Plaintiffs' claim further fails because they do not allege any facts showing that the alleged securities they purchased were sold in Florida. Indeed, the alleged facts suggest the contrary. Plaintiffs acknowledge that "the FTX Entities' primary international headquarters is in the Bahamas." AC ¶ 121. And the affidavit cited in Plaintiffs' complaint suggests that FTX's terms of service ***prohibited*** U.S. users from opening YBAs. *Id.* ¶ 174. According to Plaintiffs, FTX

announced its intention to move its U.S. operations from Chicago, Illinois to Miami, Florida, *id.* ¶ 121 & n.36, but that move never happened.[4] Plaintiffs do not identify when—or crucially, where—they opened their YBAs, and there are no facts alleged suggesting that FTX actually moved its operations to Florida or that any Plaintiff opened YBAs from FTX in Florida after that supposed move. *Id.* ¶¶ 23-29. In the absence of these necessary allegations, Plaintiffs have not met their burden to establish that any sales took place in Florida. *See* Fla. Stat. § 517.07(1) (Florida Securities Act, as relevant here, applies only to sales of securities "***within this state***."); *Kahan Novoa v. Safra Nat'l Bank of N.Y.*, 313 F. Supp. 2d 1347, 1355 (S.D. Fla. 2003) (collecting cases); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (describing constitutional limitations).

### 2.     Plaintiffs Fail To State A Claim Under FDUTPA

Plaintiffs' FDUTPA claim likewise fails. FDUTPA does not apply to securities transactions like those alleged here. In addition, Plaintiffs have not sufficiently alleged the elements of a FDUTPA claim, let alone with the particularity required by Rule 9(b).

### a.     FDUTPA Does Not Apply To Alleged Securities Transactions

This Court has explained that FDUTPA—like the Federal Trade Commission Act upon which it is modeled—is "inapplicable to securities claims." *Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022); *see also Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287,

---

[4] Carly Wanna & Felipe Marques, *FTX US Eyed High-End Office Space in Miami Before Bankruptcy*, Bᴌᴏᴏᴍʙᴇʀɢ (Dec. 14, 2022), https://www.bloomberg.com/news/articles/2022-12-14/ftx-us-planned-miami-headquarters-move-before-bankruptcy#xj4y7vzkg.

1294 (S.D. Fla. 2000).[5] Plaintiffs allege that YBAs are unregistered securities "sold" by Movants. *See, e.g.*, AC ¶¶ 1, 131-74, 204. As a result, this case is "rooted in [alleged] securities transactions," and "FDUTPA does not apply." *Feng*, 2021 WL 8055449, at * 13. That alone is grounds for dismissal of Count Two.

> **b.    The Amended Complaint Fails To Allege The Elements Of FDUTPA**

To assert a FDUTPA claim against an individual, a plaintiff must establish: (1) a knowingly deceptive act or unfair practice; (2) causation; and (3) actual damages. *Morchem*, 2021 WL 5014105, at *8; *SIG, Inc. v. AT & T Digit.. Life, Inc.*, 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013). When, as here, a claim sounds in fraud, the plaintiff must also state with particularity the circumstances constituting fraud. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) (Moore, J.); *see also Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012). To do so, a plaintiff must identify the precise statements or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *See W. Coast Roofing*

---

[5] *See also Minshall v. TD Evergreen*, 2005 WL 8145046, at *1 (M.D. Fla. Aug. 4, 2005); *Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1315-16 (N.D. Fla. 2003). *But see Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *4, *7 (S.D. Fla. Aug. 14, 2018) (unpublished decision contrary to weight of authority with expressly limited persuasive value because, in the court's own words, its conclusions "ar[ose] within the context of a default judgment" and were "necessarily based upon Plaintiffs' one-sided submissions to the Court, without the benefit of any adversarial process").

*& Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). "[C]onclusory allegations that certain statements were fraudulent" do not suffice. *Id.*

### (1)   No Deceptive Act Or Unfair Practice

#### (a)   Plaintiffs Fail To Satisfy Rule 9(b)

Plaintiffs violate Rule 9(b) by failing to explain what deceptive act or practice—by each Movant—forms the basis of their claims. Instead, they state vaguely and without differentiation that "Defendants" have engaged in "unfair and deceptive practices as described herein." AC ¶ 262. But the only allegations specific to any Movant describe nothing more than generic advertisements or sponsorship announcements. For many Movants, Plaintiffs identify ***no*** statements at all. *See id.* ¶¶ 222-23, 225-26. And Plaintiffs wholly fail to explain how a Movant appearing next to FTX's name, or saying things like "FTX, you in?", misleads or deceives. *See id.* ¶¶ 217-19, 221, 224, 230, 232. Rule 9 requires much more. *Adapt Programs, LLC v. Veritable Billings Servs., LLC*, 2022 WL 3681953, at *6 (S.D. Fla. Mar. 22, 2022).

#### (b)   The Alleged Misrepresentations Are, At Most, Puffery

At most, Plaintiffs allege that some Movants expressed generalized support for FTX or made claims that FTX was "better" or "safer" than other alternatives. *See* AC ¶¶ 205-32. This is classic puffery, which cannot form the basis of a FDUTPA claim. *See Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018). Puffery includes "general claims of superiority," *Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982), generic statements suggesting a company or product is "better" than its competitors, *KeyView Lab'ys, Inc. v. Barger*, 2020 WL 8224618, at *10 (M.D. Fla. Dec. 22, 2020), and statements suggesting a product is safe or secure, *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019). No Movant's alleged conduct is more than puffery.

11

**(c)      Movants Did Not Participate In Misconduct**

To the extent Plaintiffs imply that Movants were somehow involved in FTX's misconduct, their claims still fail. When a FDUTPA claim is based on the deceptive acts of a corporation (*e.g.*, FTX) with which a defendant has a business relationship, a plaintiff must establish that the defendant "actively participated in or had some measure of control over the corporation's deceptive practices and that the defendant had or should have had knowledge or awareness of the misrepresentations." *SIG*, 971 F. Supp. 2d at 1195 (citing *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073-74 (Fla. 5th DCA 2008)); *see also FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1336 (S.D. Fla. 2016); 16 C.F.R. § 255.1(d) (Ex. 4).

Plaintiffs fail to allege that any Movant had knowledge of, or participated in, the wrongdoing taking place behind FTX's closed doors.[6] Plaintiffs implausibly suggest that "anyone who ha[d] done business with FTX, including paid endorsers, would . . . have personally witnessed one or more of the deficiencies" that made clear FTX was engaged in fraud. AC ¶ 199; *see also id.* ¶ 271. But Plaintiffs themselves, sophisticated investors, financial institutions, and even members of Congress all were unable to discern FTX's fraud from the then-available information. It is implausible that simply "doing business" with FTX was sufficient to put Movants on notice of fraud (indeed, FTX premised an ad on Curry's being "not an expert" on cryptocurrency, *id.* ¶ 219). Plaintiffs cannot meet their pleading burden through generic allegations of wrongdoing. *See Stevens v. Osuna*, 877 F.3d 1293, 1310 (11th Cir. 2017) ("[U]nsupported conclusory assertions that Defendants generally . . . caused, participated in, condoned, or covered up various alleged

---

[6] Plaintiffs' allegations also contradict the claim that Movants knew or should have known about FTX's misconduct, as Plaintiffs allege that FTX insiders *covertly* transferred customer funds to Alameda and exempted Alameda from protocols.  AC ¶¶ 83, 115, 130.

wrongs . . . fail to satisfy the federal pleading standard.").

### (d)   Anti-Touting Rules Do Not Support FDUTPA Claims

To the extent the FTC or SEC regulations relating to "anti-touting," AC ¶¶ 2, 17, 30, form the basis of Plaintiffs' FDUTPA claim, the claim also fails. The FTC guidelines require disclosure of compensation only where viewers would not "ordinarily expect[]" that an ad is in fact an ad. 16 C.F.R. § 255.5 (Ex. 2). These requirements thus do not apply to commercials—and certainly not to those Movants who are not alleged to have made any statements at all. And the SEC requirements are even further afield. As explained, FDUTPA does not apply to alleged securities transactions—much less deceptive practices rooted in violations of securities law. In any case, this provision applies only where the advertisement "describes" a "security." 15 U.S.C. § 77q(b). No Movant is alleged to have "described" any security or to have even mentioned a YBA.

### (2)   Plaintiffs Fail To Allege Causation Under FDUTPA

Plaintiffs' allegations also fall far short of alleging the required "direct" causal nexus between Movants and any actual damage Plaintiffs suffered, as required to state a FDUTPA claim. *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696-97 (S.D. Fla. 2016). While a FDUTPA plaintiff need not prove reasonable reliance, "causation must be direct, rather than remote or speculative." *Id.* at 696; *see also Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015); *Pinnacle Foods of Cal., LLC v. Popeyes La. Kitchen, Inc. Rest. Brands Int'l, Inc.*, 2022 WL 17736190, at *10 (S.D. Fla. Dec. 16, 2022).

Here, the "direct" cause of Plaintiffs' injuries was FTX and its insiders' misconduct, not Movants' generic endorsements of FTX. In Plaintiffs' own telling, ***FTX***—not Movants—sold (or enrolled) them in YBAs. AC ¶¶ 22-29. ***FTX***—not Movants—"guaranteed" them returns. *Id.* ¶ 5. And ***FTX***—not Movants—allegedly misappropriated customer funds. *Id.* ¶ 15. Where, as here, a

plaintiff is damaged by another party's actions, the causal chain is broken and the FDUTPA claim fails. *See Lombardo*, 124 F. Supp. 3d at 1290; *see also Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1301 (S.D. Fla. 2021).

In fact, Plaintiffs do not even allege that they were **exposed** to statements or acts by any Movant, let alone that any of these statements or acts caused any one of them actual damages. *See* AC ¶¶ 23-29 (generically alleging exposure "to **some or all** of Defendants' misrepresentations and omissions"). This is plainly insufficient to plead causation. *See Justice*, 318 F.R.D. at 696-97; *see also In re Ethereummax Inv. Litig.*, 2022 U.S. Dist. LEXIS 220968, at *57-59 (C.D. Cal. Dec. 6, 2022) (finding allegations that plaintiffs "viewed numerous celebrity endorsements" insufficient to plead causation under FDUTPA).

### 3.    Plaintiffs Fail To State A Claim For Civil Conspiracy

Civil conspiracy requires: (1) an agreement between multiple parties, (2) to do an unlawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage as a result of those acts. *Feng*, 2021 WL 8055449, at *11-12. Where a civil conspiracy claim sounds in fraud, the plaintiff must meet the heightened pleading standards of Rule 9(b). *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007); *Tippens v. Round Island Plantation LLC*, 2009 WL 2365347, at *4 (S.D. Fla. July 31, 2009) (Moore, J.).

Plaintiffs fail at the threshold requirement to plausibly allege (and certainly not with the requisite particularity) the existence of an unlawful agreement among Defendants. *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *6 (S.D. Fla. Sept. 23, 2011); *Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *5 (S.D. Fla. Sept. 26, 2018). In fact, there are **no** non-conclusory allegations regarding any agreement between any Movant and FTX to defraud Plaintiffs or sell YBAs.

Plaintiffs also fail to identify what unlawful act any Movant supposedly conspired to do.

They refer vaguely to "numerous misrepresentations and omissions" made by "Defendants"—*i.e.*, all eighteen of them—and the "FTX Entities," AC ¶ 268, but that does not adequately plead intent to complete an unlawful act under Rule 8, and also fails under Rule 9(b). *See Apex Toxicology, LLC v. United HealthCare Servs., Inc.*, 2020 WL 13551299, at *3 (S.D. Fla. July 7, 2020) (dismissing civil conspiracy claim that improperly lumped defendants together).

### 4.    Plaintiffs Fail To Allege A Basis For Declaratory Relief

Count Four seeks declarations that (1) "the YBAs were securities required to be registered with the SEC and state regulatory authorities;" (2) "the Deceptive FTX Platform did not work as represented;" and (3) "Defendants were paid exorbitant sums of money to peddle FTX to the nation." AC ¶ 280. "[T]o receive declaratory or injunctive relief, plaintiffs must establish" both "a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000).

At the outset, a declaration is a procedural vehicle for an otherwise-unavailable form of relief, "not a stand-alone cause of action." *BVCV High Point, LLC v. City of Prattville*, 2022 WL 3716592, at *12 (N.D. Ala. Aug. 29, 2022). "A plaintiff must prevail on an underlying claim in order to be entitled to" a declaratory judgment. *Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008). Because the other counts fail, Count Four also fails.

Second, Plaintiffs do not allege any forward-looking harms, much less any immediate threat of irreparable harm. To the contrary, each request asks the Court to evaluate Plaintiffs' allegations of **past** conduct and **past** harms. None of the declarations Plaintiffs seek can redress these claimed retrospective injuries. As Plaintiffs themselves allege, their "purchase[s]" of YBAs already occurred, and FTX "imploded" and filed for bankruptcy in November 2022. AC ¶¶ 5-6, 15; *In re FTX Trading, Ltd.*, No. 22-11068 (Bankr. D. Del.). The absence of any immediate or future harm alone requires dismissal of Count Four. *See, e.g., A&M Gerber Chiropractic LLC v.*

*GEICO Gen. Ins. Co*., 925 F.3d 1205, 1211 (11th Cir. 2019). In addition, Plaintiffs seek the "adequate legal remedy" of "damages" for their injuries, *see* AC Prayer, foreclosing their duplicative request for equitable relief. *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1318 (S.D. Fla. 2011).

Finally, "a declaratory judgment . . . is not for the purpose of making factual determinations." *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011). Plaintiffs' declaratory claim seeks resolution of "facts" or legal issues "that are dependent upon the facts." AC ¶ 275. The Court should resolve these questions, if at all, as elements of Plaintiffs' claims, not through a declaratory claim requiring it "to make [retrospective] factual determinations." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009); *cf. Calderon v. Ashmus*, 523 U.S. 740, 748-49 (1998).

### 5.   Out-of-State Plaintiffs Cannot Bring Claims Under Florida Law

The out-of-state Plaintiffs must also be dismissed because they fail to allege any connection to Florida. They do not claim to have enrolled in YBAs in Florida, nor to have viewed any statements related to Movants while in Florida. They thus cannot bring Florida-law claims, all of which require some connection to Florida. *See Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 225 (S.D. Fla. 2002); *Carnival Corp. v. Rolls-Royce PLC*, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009); Fla. Stat. § 517.07(1).

### C.   Allowing Plaintiffs' Claims To Proceed Raises First Amendment Concerns

The First Amendment also counsels in favor of dismissal. Plaintiffs' attempt to stretch Florida's laws to reach Movants implicates basic First Amendment principles that militate strongly against allowing their claims to proceed. *See, e.g., Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1310 (11th Cir. 2020) (interpreting statute to avoid constitutional concerns). In fact, the Supreme Court has not only cautioned against imposing liability for "the expression of an

opinion about marketable securities," *Lowe v. SEC*, 472 U.S. 181, 210 n.58 (1985), but also has held that the First Amendment requires dismissal of state tort suits in certain circumstances, *see Snyder v. Phelps*, 562 U.S. 443, 458-59 (2011); *Braun v. Soldier of Fortune Mag., Inc*., 968 F.2d 1110, 1116 (11th Cir. 1992) ("The Constitution delimits a State's power to award remedies for civil torts."). Dismissal is particularly warranted here, where Plaintiffs challenge speech ***without alleging a single fact*** plausibly showing that any Movant spoke untruthfully or with knowledge that a statement was misleading (and where several did not even speak at all). *See Braun*, 968 F.2d at 1119; *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513-14 (1984).

    **D.**    **The Case Should Be Dismissed Because FTX Is An Indispensable Party**

Alternatively, even if the Court were to find that Plaintiffs can state a claim (and it should not), it should nonetheless dismiss the action for failure to join an indispensable party. ***FTX*** allegedly provided YBAs to Plaintiffs, ***FTX*** allegedly failed to register those accounts with state and federal authorities, and ***FTX*** allegedly misappropriated Plaintiffs' deposits for its own use. *See* AC ¶¶ 160-67, 178-85. And Plaintiffs seek relief—including rescission of their contractual agreements, restitution of their lost funds, and an accounting, *see* AC ¶ 251, Prayer—solely available from ***FTX***. Yet the bankruptcy stay prevents FTX from being joined, *see* 11 U.S.C. § 362(a)(1), (3), and likely prevents discovery from FTX, as well as its former employees.[7]

---

[7] *See, e.g.*, *Lewis v. Russell*, 2009 WL 1260290, at *4 (E.D. Cal. May 7, 2009) (precluding non-party discovery based on stay); *In re Phila. Newspapers, LLC*, 423 B.R. 98, 105 (E.D. Pa. 2010) (same). Discovery is also complicated by the ongoing prosecution of Bankman-Fried. *Cf.* Order at 1, *SEC v. Bankman-Fried*, No. 22-cv-10501 (S.D.N.Y. Feb. 13, 2023), ECF No. 16 (granting United States' motion to stay proceedings "until the conclusion of the parallel criminal case"); Order at 1, *CFTC v. Bankman-Fried*, No. 22-cv-10503 (S.D.N.Y. Feb. 13, 2023), ECF No. 38.

Under Rule 19, an absent party is necessary where it "claims an interest relating to the subject of the action" and resolution in its absence may, "as a practical matter," impair the absent party's "ability to protect" that interest, or where "the court cannot accord complete relief among existing parties" in that party's absence. Fed. R. Civ. P. 19(a)(1). If, as here, a necessary party cannot be joined, the Court should consider whether "equity and good conscience" allow for resolution of the issues in that party's absence. *Id.* at 19(b). At both steps, "pragmatic considerations" control. Fed. R. Civ. P. 19 (advisory committee notes to 1966 amendment).

### 1.     Under Both Prongs Of The Rule 19 Test, FTX Is A Necessary Party

Plaintiffs' claims ultimately turn on whether FTX violated the law by failing to register its YBAs with state and federal authorities. FTX undeniably has an interest in defending the legal status of YBAs and whether it was required to register them as securities. AC ¶ 280; *see also* 15 U.S.C. § 77*l*. FTX need not "be bound by the judgment" "in the technical sense" for the Court to consider its interests. *Provident Tradesmens Bank & Tr Co. v. Patterson*, 390 U.S. 102, 110 (1968); *see also Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 670 (11th Cir. 1982) (same). This is particularly true here. Plaintiffs do not allege that any Movant knew or said anything about YBAs, let alone was involved in—much less responsible for—any decision not to register them as securities, to the extent that may have been required. Only FTX is fully incentivized and properly positioned to defend the status of its YBAs.

FTX also has a core interest in the relief Plaintiffs seek, including whether YBAs are "rescinded" (the only appropriate remedy for Plaintiffs' Florida Securities Act claim, *see Fallani v. Am. Water Corp.*, 574 F. Supp. 81, 84 (S.D. Fla. 1983); Fla. Stat. § 517.211(3)(a), (b)). Any agreement Plaintiffs have regarding their YBAs would be with FTX, the entity offering those accounts, and rescission would void that agreement. Sensibly, courts generally "find parties to a contract to be necessary in an action to set aside the contract." *Witmer v. Bates*, 2022 WL 2134593,

18

at *4 (N.D. Ala. June 14, 2022). This logic applies fully here, where the absent seller—FTX—is in the midst of a complex bankruptcy proceeding involving active disputes about whether customer funds are debtor property. *See* Bankr. Compl. ¶¶ 188-99; *see also Carolina Cas. Ins. Co. v. Condor Aerial, LLC*, 2018 WL 5668505, at *3 (N.D. Fla. July 2, 2018) (bankruptcy trustee indispensable).

FTX is also necessary because the relief Plaintiffs seek can only come from FTX: namely, restitution and an accounting of the assets in Plaintiffs' YBAs. AC Prayer. Movants have no power to restore deposits in crypto investments given ***to FTX*** by Plaintiffs and allegedly misappropriated ***by FTX***. *See* Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011). Indeed, whether Plaintiffs even sustained losses and in what amount depends, at least in part, on the resolution of the FTX bankruptcy proceedings. Likewise, Plaintiffs' request for an injunction "directing the Defendants to identify, with Court supervision, victims of their conduct," AC Prayer, cannot be awarded without FTX. Movants have no way of knowing who opened FTX accounts when, or with what result. Nor can Plaintiffs' requested injunctive relief—prohibiting "Defendants from continuing those unlawful practices as set forth herein," AC Prayer—be awarded without FTX. Furthermore, this request is irrelevant to Movants because Plaintiffs do not allege ***any*** continued wrongdoing by them, which alone defeats the claim to injunctive relief. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011).

### 2.  Because FTX Cannot Be Joined Or Subject To Discovery, "Equity And Good Conscience" Favor Dismissal Under Rule 19(B)

All four Rule 19 factors that courts consider in evaluating the equities favor dismissal: (1) prejudice to the absentee or existing parties; (2) whether any prejudice could be "lessened or avoided;" (3) the adequacy of a judgment rendered without the absentee; and (4) "whether the plaintiff would have an adequate remedy if the action were dismissed." Fed. R. Civ. P. 19(b). FTX and Movants would suffer in FTX's absence; its interests would be directly affected, and they

cannot fully or fairly litigate without the "evidence, factors or defenses necessary to determine" the central issues—all of which are held by FTX. *2 Montauk Highway LLC v. Glob. Partners LP*, 296 F.R.D. 94, 101 (E.D.N.Y. 2013). There is no way to avoid this prejudice, given the bankruptcy stay and Plaintiffs' requested relief. A remedy in FTX's absence similarly would not be "adequate" because it would not provide Plaintiffs the full relief they request. And there are other, more appropriate ways for Plaintiffs to obtain relief—namely, an adversary proceeding against FTX in the bankruptcy court. *See* Fed. R. Bankr. P. 7001; Bankr. Compl.

      **E.**     **Further Amendment Would Require Leave And Should Be Denied**

Leave should be denied because it would be futile and impose undue prejudice on Movants. *Opus Grp., LLC v. Enomatic Srl*, 2012 WL 13134611, at *1 (S.D. Fla. Aug. 23, 2012).

WHEREFORE, Movants respectfully request that the Court dismiss this action with prejudice, award them their attorneys' fees and costs pursuant to Fla. Stat. §§ 501.2105(1) and Fla. Stat. § 517.211(6), and grant them such other and further relief as the Court deems just and proper.

### REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Movants respectfully request that the Court hear oral argument on their Motion to Dismiss because this case involves myriad legal issues and statutory schemes. Movants believe oral argument would further the Court's understanding of the multiple grounds for dismissal with prejudice. Movants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

Respectfully submitted,

**COLSON, HICKS, EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
(305) 476-7400

By: */s/ Roberto Martinez*
  Roberto Martínez
  Florida Bar No. 305596
   *bob@colson.com*
  Stephanie A. Casey
  Florida Bar No. 97483
   *scasey@colson.com*
  Zachary Lipshultz
  Florida Bar No. 123594
   *zach@colson.com*

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence David, Golden State Warriors, LLC and Naomi Osaka*

**LATHAM & WATKINS LLP**
  Andrew B. Clubok (*pro hac vice*)
   *andrew.clubok@lw.com*
  Susan E. Engel (*pro hac vice*)
   *susan.engel@lw.com*
  Brittany M.J. Record (*pro hac vice*)
   *brittany.record@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200
Fax: +1.202.637.2201

**LATHAM & WATKINS LLP**
  Marvin S. Putnam (*pro hac vice*)
   *marvin.putnam@lw.com*
  Jessica Stebbins Bina (*pro hac vice*)
   *jessica.stebbinsbina@lw.com*
  Elizabeth A. Greenman (*pro hac vice*)
   *elizabeth.greenman@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500
Fax:  +1.424.653.5501

**LATHAM & WATKINS LLP**
  Michele D. Johnson (*pro hac vice*)
   *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235
Fax: +1.714.755.8290

22

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, and Lawrence David*

**GIBSON, DUNN & CRUTCHER LLP**

Matthew S. Kahn (*pro hac vice* pending)
  MKahn@gibsondunn.com
Michael J. Kahn (*pro hac vice* pending)
  MJKahn@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Phone: 415.393.8379

**GIBSON, DUNN & CRUTCHER LLP**

Michael Dore (*pro hac vice* forthcoming)
  MDore@gibsondunn.com
Jamila MacEbong (*pro hac vice* pending)
  JMacEbong@gibsondunn.com
333 South Grand Avenue
Suite 4600
Los Angeles, CA 90071-3197
Phone: 213.229.7155

*Attorneys for Defendants Golden State Warriors, LLC and Naomi Osaka*

**DIMOND KAPLAN & ROTHSTEIN, P.A.**
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone:        (305) 374-1920
Facsimile:         (305) 374-1961

By: */s/ David A. Rothstein*
David A. Rothstein, Esq.
Fla. Bar No. 995762
  DRothstein@dkrpa.com
Alexander M. Peraza, Esq.
Fla. Bar No. 107044
  APeraza@dkrpa.com
Eshaba Jahir-Sharuz, Esq.
Fla. Bar No. 1038846
  Eshaba@dkrpa.com

*Attorneys for Defendant William Trevor Lawrence*

23

**MCANGUS GOUDELOCK & COURIE LLC**
2000 Market Street, Suite 780
Philadelphia, PA 19103
(484) 406-4334

By: */s/ Eric A.Fitzgerald*
Eric A. Fitzgerald (*pro hac vice*)
  *eric.fitzgerald@mgclaw.com*
Hillary N. Ladov (*pro hac vice*)
  *hillary.ladov@mgclaw.com*

*Attorneys for Defendant William Trevor Lawrence*

**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
Phone: (305)-577-3100

By: */s/ Edward Soto*
  Edward Soto (Fla Bar. No. 0265144)
  *edward.soto@weil.com*

*Attorney for Defendant Shohei Ohtani*

**McDERMOTT WILL & EMERY LLP**
333 SE 2nd Ave., Suite 4500
Miami, Florida 33131
Telephone: (212) 547-5768
Facsimile: (305) 347-6500

By: */s/ Nathan Bull*
  Nathan Bull (Fla. Bar No. 1029523)
  *nbull@mwe.com*

**McDERMOTT WILL & EMERY LLP**
  Jason D. Strabo (*pro hac vice* pending)
  *jstrabo@mwe.com*
  Ellie Hourizadeh (to file *pro hac vice*)
  *ehourizadeh@mwe.com*
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 788-4125
Facsimile: (310) 277-4730

**McDERMOTT WILL & EMERY LLP**
  Sarah P. Hogarth (*pro hac vice* pending)
  *shogarth@mwe.com*
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8354
Facsimile: (202) 756-8087

*Attorneys for Defendant Stephen Curry*

**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700
Fax: 954-468-2454

By: */s/ Christopher S. Carver*
  Christopher S. Carver, Esq.
  Florida Bar No. 993580
    *christopher.carver@akerman.com*
  Jason S. Oletsky, Esq.
  Florida Bar No. 9301
    *jason.oletsky@akerman.com*
  Katherine A Johnson, Esq.
  Florida Bar No. 1040357
    *katie.johnson@akerman.com*

*Attorneys for Defendant David Ortiz and Udonis Haslem*

**MARCUS NEIMAN RASHBAUM & PINEIRO LLP**
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel: (954) 462-1200

2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305)-400-4260

By: */s/ Jeffrey Neiman*
Jeffrey Neiman
Fla Bar. No. 544469
  *jneiman@mnrlawfirm.com*
Jeffrey Marcus
Fla. Bar No. 310890
  *jmarcus@mnrlawfirm.com*
Michael Pineiro
Fla. Bar No. 041897
  *mpineiro@mnrlawfirm.com*
Brandon Floch
Fla. Bar No. 125218
  *bfloch@mnrlawfirm.com*

**BERK BRETTLER LLP**
9119 Sunset Boulevard
West Hollywood, CA 90069
Tel.: (310) 278-2111
Andrew B. Brettler (*pro hac vice*)
  *abrettler@berkbrettler.com*

*Attorneys for Defendant Kevin O'Leary*

25

**<u>CERTIFICATE OF SERVICE</u>**

  I HEREBY CERTIFY that on April 14, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

        By: *<u>/s/ Roberto Martinez</u>*
          Roberto Martínez