# Exhibit A

Transcript of June 21, 2023 Status Conference

```
 1                  UNITED STATES DISTRICT COURT
 2                  SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
 3                 CASE NO. 1:22-cr-20431-KMM-2

 4
     IN RE: FTX CRYPTOCURRENCY          Miami, Florida
 5   EXCHANGE COLLAPSE LITIGATION

 6                                      June 21, 2023

 7                                      10:00 AM - 11:12 PM

 8

 9                                      Pages 1 to 62
     _____
10              TRANSCRIPT OF STATUS CONFERENCE
            BEFORE THE HONORABLE MICHAEL MOORE
11               UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13
     FOR THE PLAINTIFF:          DAVID BOIES, ESQ.
14                               STEPHEN ZACK, ESQ.
                                 BOIES SCHILLER FLEXNER LLP
15                               100 SE 2nd Street
                                 SUITE 2800
16                               MIAMI, FLORIDA 33131

17                               ADAM MOSKOWITZ, ESQ.
                                 HOWARD BUSHMAN, ESQ.
18                               JOSEPH KAYE, ESQ.
                                 THE MOSKOWITZ LAW FIRM
19                               3250 MARY STREET
                                 SUITE 202
20                               MIAMI, FLORIDA 33133

21                               RACHEL FURST, ESQ.
                                 JOHN BYRNE, ESQ.
22                               MADERAL BYRNE & FURST PLLC
                                 2800 PONCE DE LEON BOULEVARD
23                               SUITE 1100
                                 CORAL GABLES, FL 33134-6933
24

25
```

```
 1    ON BEHALF OF DEFENDANT SAM      GERALD EDWARD GREENBERG, ESQ.
      BANKMAN-FRIED:                  GELBER SCHACHTER & GREENBERG
 2                                    1 SE 3RD AVE, SUITE 2600
                                      MIAMI, FL 33131
 3
      ON BEHALF OF DEFENDANTS TOM     THOMAS KROEGER, ESQ.
 4    BRADY, GISELE BUNDCHEN, LAWRENCE COLSON HICKS EIDSON
      DAVID, GOLDEN STATE WARRIORS,   255 ALHAMBRA CIR, SUITE PH
 5    SHAQUILLE O'NEAL, AND NAOMI     CORAL GABLES, FL 33134
      OSAKA:
 6
      ON BEHALF OF DEFENDANTS UDONIS  CHRISTOPHER CARVER, ESQ.
 7    HASLEM AND DAVID ORTIZ:         AKERMAN LLP
                                      201 E LAS OLAS BOULEVARD
 8                                    SUITE 1800
                                      FT LAUDERDALE, FL 33301
 9

10    ON BEHALF OF DEFENDANTS         JESSICA STEBBINS BINA, ESQ.
      SHAQUILLE O'NEAL, TOM BRADY,    LATHAM WATKINS
11    GISELE BUNDCHEN, AND LARRY      10250 CONSTELLATION BOULEVARD,
      DAVID:                          SUITE 1100
12                                    LOS ANGELES, CA 90067

13
      ON BEHALF OF DEFENDANT SEQUOIA  RISHI ZUTSHI, ESQ.
14    CAPITAL:                        CLEARY GOTTLIEB STEEN &
                                      HAMILTON LLP
15                                    ONE LIBERTY PLAZA
                                      NEW YORK, NY 10006
16

17
      ON BEHALF OF DEFENDANT PARADIGM ALEXANDER DRYLEWSKI, ESQ.
18    OPERATIONS LP:                  SKADDEN ARPS SLATE
                                      ONE MANHATTAN WEST
19                                    NEW YORK, NEW YORK 10001
                                            -AND-
20                                    THOMAS "TODD" PITTENGER, ESQ.
                                      GRAY ROBINSON, P.A.
21                                    301 E PINE ST, SUITE 1400
                                      ORLANDO, FL 32801
22
      ON BEHALF OF DEFENDANT THOMA    ANNA TERTERYAN, ESQ.
23    BRAVO:                          KIRKLAND & ELLIS
                                      555 SOUTH FLOWER STREET
24                                    SUITE 3700
                                      LOS ANGELES, CA 90071
25                                          -AND-
                                      ANNA KAUFFMANN, ESQ.
```

```
 1
       STENOGRAPHICALLY REPORTED BY:
 2
                      TRISH BAILEY-ENTIN, RPR, FPR
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    (The following status hearing was held:)
 2         THE COURT:  Calling Case 1:23-MD-03076 in re:  FTX
 3    Cryptocurrency Exchange Collapse Litigation.
 4         Counsel, please state your name for the record,
 5    beginning with the plaintiff.
 6         MR. BOIES:  Good morning, Your Honor.  May it please
 7    the Court, David Boies of Boies Schiller & Flexner for the
 8    plaintiffs.  With me at counsel table is my partner, Stephen
 9    Zack.
10         MR. ZACK:  Good morning.
11         THE COURT:  Good morning.
12         MR. MOSKOWITZ:  Good morning, Your Honor.  Adam
13    Moskowitz for The Moskowitz Law Firm.  And with me here are my
14    partners, Howard Bushman and Joseph Kaye.
15         MS. FURST:  Good morning, Your Honor.  Rachel Furst of
16    Maderal Byrne & Furst, and I'm here with my partner, John
17    Byrne.
18         THE COURT:  Okay.  And I know there are a number of
19    other counsel for plaintiffs as well.  Do they want to be
20    recognized in the event that you want to speak?  If you do,
21    that's fine.
22         If you don't -- for the defense.
23         MR. GREENBERG:  Good morning, Your Honor.  Gerald
24    Greenberg from Gelber Schachter & Greenberg on behalf of Sam
25    Bankman-Fried.
```

```
 1              MR. KROEGER:  Good morning, Your Honor.  Thomas Kroeger

 2    of Colson Hicks Eidson on behalf of Tom Brady, Gisele Bundchen,

 3    Lawrence David, Golden State Warriors, Shaquille O'Neal, and

 4    Naomi Osaka.

 5              MR. CARVER:  Good morning, Your Honor.  Christopher

 6    Carver of Akerman LLP on behalf of Udonis Haslem and David

 7    Ortiz.

 8              MS. BINA:  Good morning, Your Honor.  Jessica Stebbins

 9    Bina of Latham Watkins on behalf of Shaquille O'Neal, Tom

10    Brady, Gisele Bundchen, and Larry David.

11              MR. ZUTSHI:  Good morning, Your Honor.  Rishi Zutshi,

12    Cleary Gottlieb Steen Hamilton, on behalf of Sequoia Capital

13    and the investment --

14              MR. DRYLEWSKY:  Good morning, Judge Moore.  Alex

15    Drylewsky from Skadden Arps on behalf of Paradigm Operations

16    LP.

17              MR. PITTENGER:  Todd Pittenger with GrayRobinson on

18    behalf of Paradigm Operations LP.

19              MS. TERTERYAN:  Good morning, Your Honor.  Anna

20    Terteryan, Kirkland & Ellis, on behalf of defendant Thoma

21    Bravo.

22              MS. KAUFFMANN:  Good morning, Your Honor.  Ana

23    Kauffmann on behalf of Thoma Bravo, local counsel, Berger

24    Singerman.

25              THE COURT:  Anybody else?
```

```
1              All right.  Well, thank you for all being here today.

2   This is our first get-together for a status conference

3   regarding this MDL litigation.  And it's certainly appropriate

4   to get the parties together and try to map out where we're

5   going to go and how we're going to get there.  There are a

6   number of issues that I want to address.  You also have been

7   given an opportunity to submit any topics for discussion, and I

8   have received them.  I have reviewed them from all the parties

9   that have submitted them.

10          I'm going to go -- I'm going to start with the

11  plaintiffs' preliminary report, Docket Entry Number 40.  So

12  we'll hear from plaintiffs' counsel on that.

13          This morning I was provided with additional information

14  regarding the plaintiffs', apparently, agreement as to

15  plaintiffs' co-lead counsel, plaintiffs' steering committee,

16  and plaintiffs' committees and chairpersons for various

17  subtopics that will arise likely in the course of the

18  litigation.

19          So that really did address at least one of the issues

20  that we were going to have to work on and address.  So good for

21  plaintiffs' side of the -- of the court for addressing those

22  issues and coming to some -- coming to an agreement on that.

23          But beyond that, I want to hear from plaintiffs'

24  counsel on your preliminary report in advance of the status

25  conference and what matters you want to take up.
```

1          Okay?

2          MR. BOIES:   Thank you, Your Honor.   May it please the

3    Court, David Boies.   As we indicated in our preliminary report,

4    the first issue was to try and organize the plaintiffs, and

5    we've accomplished that.

6          Second, we would like to discuss an initial schedule

7    for the filing of an amended consolidated complaint or

8    complaints as well as -- obviously, there will be responses to

9    that; answers perhaps; perhaps motion to dismiss.   We have some

10   personal jurisdiction issues that we have been discussing with

11   certain of the plaintiffs' counsel and certain of the

12   defendants' counsel.

13         Given the MDL order, we think the personal jurisdiction

14   issues will be resolved, either that the defendants will accept

15   personal jurisdiction here or alternatively, to avoid a lengthy

16   fight, we will simply file cases in their home states that

17   would then be tagalong cases to this Court.

18         So one way or the other, we think that the personal

19   jurisdiction issues will be resolved.   But there will be,

20   obviously, subsequent motions, and so what we would like to ask

21   the Court to consider is setting a schedule for the filing of a

22   consolidated amended complaint or complaints that will bring

23   all of the cases before Your Honor in an organized way, and

24   then a schedule for the defendants to respond to those.

25         I think one -- one issue for the Court is whether or

1    not discovery should be stayed pending notice of those filings.

2    I know that different courts approach that issue differently,

3    and we're just looking for guidance from the Court as whether

4    the Court thinks it's appropriate in this MDL to stay discovery

5    pending those motions and whether it would be the Court's will

6    that we proceed with the discovery.

7        I think those are sort of the key issues -- key initial

8    issues that we think would be useful to talk about today.

9        THE COURT:  Okay.  Well, that's helpful.  And let's

10   start there and make sure that we stick to each of these issues

11   but -- and I know you have a number of other issues, but I

12   don't want to get ahead of them, but let's just -- let me hear

13   from defense counsel on the personal jurisdiction issue.

14       And I don't know if any one of you want to speak on

15   behalf of all of you.  I know there are individual issues.  So

16   if not, I'm prepared to hear from each of you if there is some

17   agreement or disagreement or how best you want to proceed on

18   that.

19       MR. KROEGER:  Good morning, Your Honor.  Thomas

20   Kroeger.  I will be speaking on behalf of the sports and

21   entertainment defendants for purposes of today's hearing.

22       THE COURT:  Okay.  And I have got -- what do I have? --

23   like three bundles of defendants here?  Is that a fair

24   characterization?

25       MR. KROEGER:  With respect to the sports and

```
1    entertainment defendants or overall?

2           THE COURT:  Overall.

3           MR. KROEGER:  There are, yes, several bundles of

4    defendants.

5           THE COURT:  Okay.  That's going to come up later on.

6    But when you say the sports and entertainment, can you -- I

7    think I know what you mean --

8           MR. KROEGER:  Sure.

9           THE COURT:  -- but can you tell me specifically --

10          MR. KROEGER:  I can specifically identify that would be

11   Tom Brady, Gisele Bundchen, Lawrence David, Golden State

12   Warriors, Shaquille O'Neal, Naomi Osaka, Stephen Curry, Udonis

13   Haslem, William Trevor Lawrence, Shohei Ohtani, Kevin O'Leary,

14   David Ortiz, and the Solomid Corporation.

15          THE COURT:  Okay.  With respect to personal

16   jurisdiction, can you go ahead and address those?

17          MR. KROEGER:  Yes.  With respect to personal

18   jurisdiction, those sports and entertainment defendants who had

19   previously filed motions with respect to personal jurisdiction

20   are essentially evaluating whether they would be refiling.

21          It's possible, based on representation made by

22   plaintiffs' counsel, that that could be worked out, either

23   agreements would be filed in the other jurisdictions and then

24   have them transferred back to your court here, but that is an

25   issue that some of the sports entertainment defendants would
```

```
 1   like to evaluate.
 2          THE COURT:  Okay.  So even within your group, there is
 3   a difference of opinion between the various defendants as to
 4   whether they would or would not --
 5          MR. KROEGER:  It's not so much a difference of opinion.
 6   It's that some defendants have pursued that previously before
 7   the transfer.  Obviously, some did not.  Those that have
 8   previously pursued it would like to still reserve the ability
 9   to potentially proceed with that.
10          THE COURT:  Okay.  So what kind of time frame are you
11   on for resolving those issues?
12          MR. KROEGER:  I think there will need to be further
13   discussions.  I think that is something that could probably be
14   amicably resolved fairly expeditiously.
15          THE COURT:  Okay.  Can you quantify that?
16          MR. KROEGER:  I don't know.  I suppose within 10 or
17   14 days that could be resolved.
18          THE COURT:  Well, let's give you 14 days.  Okay?  So
19   within 14 days, you will resolve the personal jurisdiction
20   issue by doing what?  Either consenting and waiving or
21   contesting?
22          MR. KROEGER:  Correct.
23          THE COURT:  So we'll know in 14 days whether you want
24   to contest personal jurisdiction.
25          MR. KROEGER:  Correct.
```

1        THE COURT:  Okay.  Are we all clear on that?  Do we

2   need any further discussion on that?

3        Will that also include the question that was raised

4   about where other cases would be filed?

5        MR. KROEGER:  I believe so.  If those cases -- if --

6   essentially the resolution is that those cases would have to be

7   filed, say, for instance, in the Northern District of the

8   California, then that's where those cases will be filed and

9   then tagged along here.

10        THE COURT:  Okay.  All right.  Does that satisfy --

11   does that answer your question?  You have 14 days to -- they

12   said they're going to resolve it and decide which way they want

13   to go?

14        MR. BOIES:  Yes, Your Honor.  We think that's an

15   excellent way to approach it.

16        THE COURT:  Okay.  Anybody else on that particular

17   issue?

18        MR. ZUTSHI:  Yes, Your Honor.  It's Rishi Zutshi from

19   Cleary Gottlieb on behalf of Sequoia.

20        At Your Honor's instruction, we've tried to coordinate

21   among the other investor defendants; so I will do my best to

22   speak for that group and let others chime in if necessary.

23        We have not heard from plaintiffs' counsel about any

24   proposals with respect to personal jurisdiction until Mr. Boies

25   just now made those statements this morning.  Our -- the

1   investor defendants are differently situated in that there

2   are -- many of them do intend to raise personal jurisdiction

3   defenses.  None of those issues have been briefed yet.

4        There's also some housekeeping issues including the

5   fact that one of the cases in which a large group of the

6   defendants -- the investor defendants have been named is the

7   O'Keefe case, which is currently pending before Judge Martinez

8   and is still subject to a pending motion to -- for an

9   interdistrict transfer.

10        So I think from our perspective --

11        THE COURT:  What's that?  You said the O'Keefe case?

12        MR. ZUTSHI:  The O'Keefe case.  That's correct,

13   Your Honor.

14        THE COURT:  Well, we'll follow up on that.  You want to

15   transfer it to the MDL?

16        MR. ZUTSHI:  We do.  And plaintiffs and defendants in

17   that case have filed a joint motion to transfer, and also

18   because there's a response deadline this Friday in that case, I

19   think; so --

20        THE COURT:  So that's just -- that's pending before

21   Judge Martinez?

22        MR. ZUTSHI:  That's correct.

23        THE COURT:  All right.  Well, I'll see if we can

24   address that.  You say the response is due --

25        MR. ZUTSHI:  There's technically responses due in that

```
 1    case this Friday.  To the complaint, there's stipulation with

 2    plaintiffs' counsel.

 3            THE COURT:  Okay.  So my understanding is that we sent

 4    them the order.  They signed it.  It hasn't been docketed, so

 5    that frees up your weekend.

 6            MR. ZUTSHI:  That will ease the minds of many of the

 7    defense counsel --

 8            THE COURT:  Okay.

 9            MR. ZUTSHI:  -- in that case.  Thank you, Your Honor.

10            In terms of personal jurisdiction issues, Mr. Boies'

11    proposal is to consolidate the amended complaints -- complaint

12    or complaints.  It's one that we're happy to consider.  I think

13    we'll need some clarity as to whether those complaints will be

14    filed purely as an administrative matter in this case or

15    whether they will be filed in superseding complaints in

16    individual actions.

17            It is important to the investor defendants that we're

18    able to preserve both our motions to dismiss on 12(b)(6)

19    grounds, also personal jurisdiction issues where they're

20    available.

21            So we're happy to discuss that further with plaintiffs'

22    counsel and work cooperatively.  I do think that we will need

23    some clarity from plaintiffs' counsel in the first instance as

24    to what their proposal is for the filing of consolidated

25    amended complaints or a single complaint.
```

1          THE COURT:  Can you live within that same time frame,

2     14 days?

3          MR. ZUTSHI:  So if we have clarity -- if we have

4     clarity from the plaintiffs -- I think we might need an initial

5     period, Your Honor, where we hear from plaintiffs what their

6     proposal is.  We haven't heard whether they plan to file

7     amended complaints and what the new claims would be with

8     respect to our defendants yet.  So we're operating right now on

9     a little bit of a -- in the dark, as it were.

10          And so I'm hesitant to commit to coming to an agreement

11    on how we will respond to complaints when we haven't heard how

12    much time it will be for them or what they'll encompass and

13    where they will be filed.

14          THE COURT:  So do you want to be back here in 14 days

15    to talk about that?

16          MR. ZUTSHI:  Alternatively, if plaintiffs can let us

17    know what their timing is like for making a decision on that,

18    then we could peg a timeline off of that.

19          THE COURT:  Okay.  Well, this is the value of having us

20    here today; so can you answer their questions?

21          MR. BOIES:  Your Honor, I think there are two issues

22    here.  One is the personal jurisdiction issue, and one is the

23    consolidated amended complaint issue.

24          THE COURT:  All right.

25          MR. BOIES:  With respect to personal jurisdiction, we

1    ought to be able to solve that in 14 days because we're going

2    to go one of two things.  Either they're going to waive

3    personal jurisdiction and be in front of this Court, or we're

4    going to file in whatever jurisdiction they say that they are

5    present in, and that will come to this Court as a tagalong

6    case.

7            So I think all they have to do is tell us within a

8    reasonable period of time which of those approaches they're

9    going to take.  And we can then immediately -- either if they

10   waive, there's no issue.  If they say, "We want you to file in

11   our home district to resolve any personal jurisdiction issue,"

12   as we've talked about with the sports and entertainment

13   defendants, in order to move this along and not burden the

14   Court with unnecessary motion practice, we'll file those

15   motions and those complaints, and those will be transferred

16   here.  So I think that can be done within the 14 days.

17           With respect to our consolidated amended complaint, as

18   the Court is aware in every MDL, we need to file a consolidated

19   complaint that brings all of the cases that have been

20   transferred to this Court together.

21           And that is something that, as I said earlier, I would

22   like to get the Court's guidance as to what an appropriate time

23   frame would be.  Something that perhaps a 45-day period of time

24   might be an appropriate time we can do it.  We want to do it

25   consistent with whatever the Court's schedule is in terms of

```
1    that.

2          THE COURT:  Well, I'm in agreement that we -- it would

3    be preferable to have an amended consolidated complaint and to

4    bring all of these actions together under one complaint.  It

5    would certainly help manage the litigation in its entirety, but

6    -- and you mentioned 45 days.  Is that what you're moving for?

7          MR. BOIES:  That's what we propose, Your Honor.

8          THE COURT:  Any objection to 45 days to file a

9    consolidated amended complaint?

10         MR. KROEGER:  The one thing, Your Honor, that we would

11   suggest is that given the difference in distinct factual legal

12   claims with respect to these sports and entertainment

13   defendants, is that that be tracked through a different

14   complaint because a lot of the allegations that go to FTX, FTX

15   employees, financial advisors, and accountants simply are not

16   present with respect to the sports and entertainment

17   defendants.

18         So as we stated in our preliminary report, we are of

19   the view that it would actually promote efficiency and economy

20   if the celebrity and sports -- excuse me, the sports and

21   entertainment defendants are essentially on a separate track

22   through a different complaint.

23         THE COURT:  Just for housekeeping purposes, when each

24   of you speak, can you identify yourself for the record by name

25   again.
```

```
 1            MR. KROEGER:  Yes.

 2            THE COURT:  You know, it's okay.  I just have a court

 3    reporter who's in front of me, and she's trying to keep track

 4    of who is saying what, and I think it might be helpful to her

 5    to have you identify yourself by name each time you speak.

 6    Okay?

 7            MR. KROEGER:  Yes, I apologize.  Thomas Kroeger on

 8    behalf of the sports and entertainment defense.

 9            THE COURT:  Okay.  Well, so this gets to another issue,

10    and that is the separate track of an issue that was raised.

11    What is plaintiffs' response to that?

12            MR. BOIES:  Your Honor, there are great many

13    overlapping issues.  There are also some substantial individual

14    issues.  And I think that you could have separate, quote,

15    "tracks," closed quote, or you could have a consolidated

16    complaint.

17            I don't think that's going to make a huge amount of

18    difference in terms of how the Court is going to handle the

19    cases because every proceeding is going to affect all of the

20    so-called tracks.

21            And I think that it's probably more efficient, in terms

22    of management to have a single consolidated complaint with a

23    count for the individual defendants, but I think it could be

24    done the other way too.  I think that, in terms of efficiency

25    of management, you're going to want to have the overall issues.
```

1    The overall issues with respect to FTX are going to be the same

2    whether it's a sports and entertainment defendant, whether it's

3    an accounting firm, whether it's investors, whether a venture

4    capital firm.  All of those issues, which are going to be many,

5    are going to be the same regardless of who the defendant is.

6         There's then going to be some significant issues that

7    are going to be unique to the lawyers, to the venture capital

8    firms, to the accountants, to each of the individual defendant

9    groups.  Those in one consolidated complaint would be handled

10   as separate counts where you would allege in those counts the

11   issues that were particular to those particular groups of

12   defendants.

13        We think that's the most efficient way to do it, but we

14   also, if the Court would prefer to do it another way -- we

15   could have separate complaints.  Those separate complaints

16   would be much larger in terms of total pages to have to deal

17   with because we would have to repeat the common allegations in

18   each of the -- each of the complaints, but it's something that

19   administratively we could do.

20        THE COURT:  Do you want to respond to that?

21        MR. KROEGER:  Yes, Your Honor.  Thomas Kroeger on

22   behalf of the sports and entertainment defendants.

23        It would perhaps be practical to do a single

24   consolidated complaint so long as it is very clear and

25   compartmentalizes what the allegations are as to the different

1    bundles, as Your Honor mentioned, of defendants.  Otherwise,

2    there's going to be a lot of issues that are simply not germane

3    or relevant to these specific defendants.

4          THE COURT:  And what about the other defense counsel on

5    this topic?

6          MR. ZUTSHI:  Rishi Zutshi.  Your Honor, we're willing

7    to evaluate a proposal either way, whether it's a single

8    consolidated amended complaint or separate complaints.

9    Sometimes the devil is in the details on these issues.  We

10   don't have a view on either conceptually, but we do think it's

11   going to be important, from our clients' perspective, that

12   there's clarity as to -- as I said before, whether these are

13   superseding complaints or administrative complaints.

14         We do have very compelling motion to dismiss arguments

15   that I referenced before that we would like an opportunity for

16   you -- once -- once the consolidated complaints are on file,

17   and we want to make sure that, as we believe they should, those

18   dispose of the claims against our clients, against the investor

19   defendants; that we have clarity and there's no procedural

20   convolution when the cases are ultimately resolved in the MDL

21   cases.

22         THE COURT:  So I think, as the parties have pointed

23   out, there are some pros and cons each way.  There are some

24   issues that are common to the overall case and to each of the

25   defendant groups, and there are some distinct issues as well to

1    each of those groups.

2         When I looked at this, my assessment was that it would

3    help the Court to carve out each of the separate issues as to

4    each of the defendant groups.  So if it doesn't make a big

5    difference to plaintiffs' counsel -- I'm not hearing that -- I

6    think we're on the same wave length, that we can do it either

7    way, but I think for the Court's benefit, it would be

8    preferable to have separate complaints as to each of those

9    groups, and I think that will pay some dividends in other

10   respects.

11        That being said, I do think that the value of the MDL

12   is that there are some common discovery issues that will apply

13   to all defendants, but I don't really see the reason for

14   burdening defendants in one group from participating in certain

15   aspects of claims against other defendants in which they are

16   not affected nor when it comes to filing a motion to dismiss,

17   that I think it would help the Court focus particularly on the

18   grounds for those motions as to that particular subgroup.

19        So with that being said, you have no problem with

20   filing separate complaint as to -- what are we in?  To three

21   different buckets here?

22        MR. BOIES:  None at all, Your Honor.  I think there's

23   probably -- we can talk with defendants' counsel about this,

24   but I think there are probably about five or six different

25   groups of defendants.

```
 1              THE COURT:  Okay.

 2              MR. BOIES:  There are the so-called sports and

 3    entertainment or promoter defendants.  There are the venture

 4    capital or the investor defendants.  There are the insider

 5    defendants.  There are the accounting firm defendants.  There

 6    are the other professional advisor defendants that are probably

 7    distinct from the accounting defendants, and then there are a

 8    group of foreign, non-U.S. entities.

 9              THE COURT:  Okay.

10              MR. BOIES:  And I suspect that the complaints -- if we

11    had filed separate complaints, we would probably have five,

12    possibly six separate complaints, unless there is a group of

13    defendants here that want to be separated out from those five

14    groups.

15              But that would be what, I think, from the plaintiffs'

16    standpoint, we would look at in terms of breaking it up under

17    the so-called bundles of defendants.

18              THE COURT:  Okay.  So you're comfortable, then, with

19    the five or six complaints?

20              MR. BOIES:  Yes, Your Honor.

21              THE COURT:  And you can do that within 45 days?

22              MR. BOIES:  Yes, Your Honor.

23              THE COURT:  Everybody on the defense side comfortable

24    with that?

25              Hearing no objection, okay.
```

1          MR. KROEGER:  Yes, Your Honor.  Thomas Kroeger.  We

2     would be comfortable with those complaints broken down along

3     those lines.  We would also ask to have, you know, 45 days to

4     respond and renew, as we mentioned in our reports, our motions

5     to dismiss.

6          THE COURT:  Any problem with that?

7          MR. BOIES:  No, Your Honor.

8          THE COURT:  So for scheduling purposes so far, we have

9     14 days to address and hopefully resolve the issue of personal

10    jurisdiction, 45 days for the filing of amended complaints, and

11    45 days for the filing of responses to the amended complaints.

12         MR. ZUTSHI:  Your Honor, Rishi Zutshi.  For the

13    investor defendants, we -- and there's a number of different

14    entities that are in that bucket, each with separate counsel,

15    and I think for efficiency, we would like to coordinate as much

16    as we can on a motion to dismiss when that comes.

17         I think if we can get 60 days, that would facilitate us

18    being able to coordinate better because of the number of

19    parties involved.

20         THE COURT:  Do you have any to objection that?  You can

21    say yes.

22         MR. BOIES:  You know, I always hate to object to

23    counsel's request for time, particularly this early in the

24    process.  What I would ask is that they try to do it within

25    45 days, and if they really need the additional 15 days, we

1 won't object to it.

2      But I would ask, if they could, we'd all try to get it

3 done within 45 days.  That's going to be three months from now.

4      THE COURT:  Right.

5      MR. BOIES:  So they've got three months from now to

6 coordinate.

7      MR. ZUTSHI:  Your Honor, we will absolutely make

8 efforts to do so.  I'm just cognizant of the fact that there's

9 counsel for a few of the other investor defendants here at the

10 table with me, but there are several folks, including folks who

11 are only named in O'Keefe and who weren't sure if they were

12 part of the MDL quite yet, and so I would just like a chance to

13 consult with them.

14      THE COURT:  Okay.

15      MR. ZUTSHI:  We will -- we can absolutely commit to

16 making an effort to try to...

17      THE COURT:  A couple points on that.  First of all, I

18 don't think -- I don't anticipate there's going to be any big

19 surprises in their amended complaint that you're not already

20 aware of, so you know what's coming.

21      Secondly, I do agree that, you know, let's try with the

22 idea -- let's work towards 45 for the motion to dismiss.  Do

23 your due diligence, and then if you need additional time, come

24 to me and ask me for additional time and show me why you were

25 not able to do it within the time that you were allotted.  If I

```
 1    see good cause, then fine.  But I want to see diligence in the

 2    first instance.  Okay?

 3         And the other reason, I'm trying to keep it on track

 4    with the other parties to the other buckets, so we're all in

 5    the same -- we're all moving on the same track at least

 6    timewise.  Okay?  And if there's going to be some slippage,

 7    then so be it, but let's demonstrate diligence in the first

 8    instance.

 9         Okay.  So 14, 45, and 45.  Does that address the

10    complaints and the personal jurisdiction issue?

11         Okay.  The next one that I have that you mentioned was

12    staying discovery; right?

13         MR. BOIES:  Excuse me, Your Honor?

14         THE COURT:  The next issue that you raised was staying

15    discovery?

16         MR. BOIES:  Yes, Your Honor.

17         THE COURT:  Okay.  Did you want to say anything more on

18    that?

19         MR. BOIES:  Our view, Your Honor, is that while we

20    don't in a way prejudge the motions to dismiss that they're

21    going to make, we think that the Court would find it unlikely

22    that the complaints would be entirely dismissed.  So we think

23    that it would be appropriate for some discovery to start now.

24         As the Court is aware in these kind of complex cases,

25    you start serving document discovery, basic interrogatories,
```

1    parties make their initial disclosures, it takes a while before

2    you're getting into depositions in any event.

3            So we think there's a lot of discovery that could go

4    forward over the next three months awaiting on a decision on

5    the motion to dismiss.  Obviously, the Court is going to have

6    to take some time after that three months to decide the motions

7    to dismiss.  So we think that during at that period of time it

8    would be appropriate to start discovery.

9            On the other hand, we recognize that different courts

10   take different approaches to staying discovery awaiting the

11   motion to dismiss.  We obviously want to accommodate whatever

12   the Court's preference is on that.

13           THE COURT:  All right.  Any response?

14           MR. GREENBERG:  Gerald Greenberg on behalf of Sam

15   Bankman-Fried.  We certainly think that matters should be

16   stayed.  I think we're probably -- and as far as the plaintiffs

17   are concerned too, we move -- well, initially moved for a stay

18   of all proceedings related to our client pending his criminal

19   case.  So we think certainly at minimum it should be stayed

20   during this proceeding.

21           And our -- and our request was unopposed by plaintiffs

22   with regard to the earlier complaint, so they may agree at this

23   point.

24           But we would, with that in mind, support a stay

25   certainly for the time being, and obviously, we will renew that

1    request once we see the amended complaint.

2         MR. BOIES:  Your Honor, David Boies again.  We agree

3    that Mr. Sam Bankman-Fried is in a similar situation.  And,

4    indeed, we have been contacted by the U.S. Attorney's Office

5    that's handling the criminal prosecution on Mr. Sam

6    Bankman-Fried, and they have indicated that if we were to try

7    to go ahead with discovery, they would come in and make,

8    themselves, a motion to stay with respect to not the whole case

9    but just with respect to the criminal defendant and the other

10   people who have pled.

11        So we don't have any objection to that stay, but we

12   don't think that stay needs to delay the commencement of

13   discovery with respect to the other defendants.

14        Indeed, there's a great deal of information about

15   Mr. Sam Bankman-Fried that both are going to come out of the

16   criminal case and out of the bankruptcy proceeding.  So there's

17   a sense in which it's not our civil discovery but there's a

18   sense in which discovery in the broadest generic sense is going

19   on with respect to him at the present time.  And we think that

20   with respect to the other defendants, it would be appropriate

21   to start discovery during the next several months.

22        THE COURT:  Just with respect to Sam Fried, are you

23   referring to all discovery with respect to him or just to

24   depositions?

25        MR. BOIES:  I think the U.S. Attorney's Office would

```
1    take the position regarding all discovery with respect to him.
2    From our perspective, we think there would be no problem with
3    him providing to us what is already being provided to the
4    government and the like.
5          But I think in fairness, if the U.S. Attorney's Office
6    were here, they would be saying that they would like to have a
7    stay of all discovery with respect to Mr. Sam Bankman-Fried.
8          THE COURT:  Well, I'll let you hash that out with the
9    U.S. Attorney's Office.  If you want to have that fight, you
10   know, I'll be happy to referee it.  But putting that defendant
11   aside, what -- are there any other comments with regard to
12   conducting discovery?
13         MR. KROEGER:  Yes, Your Honor.  Thomas Kroeger.  The
14   sports and entertainment defendants continue to believe that a
15   stay of merit discovery would be appropriate pending the
16   resolution of motions to dismiss, but assuming that some
17   discovery does go forward, it ought to be reasonably tailored.
18   As Your Honor is familiar from the Garrison case, the
19   plaintiffs attempted to set 14 depositions essentially within a
20   span of approximately two weeks.  We don't think that that kind
21   of discovery would be warranted or appropriate while the
22   motions to dismiss are pending.
23         But our position is at its core that there simply
24   should be a stay of ^  merit discovery until the Court rules on
25   motions to dismiss.  Perhaps those rulings could be conducted
```

1    in an expedited matter.

2         THE COURT:  Anybody else?

3         MR. CARVER:  Christopher Carver, Ackerman LLP, on

4    behalf of Mr. Haslem and Mr. Ortiz.  We have a very wide range

5    of defendants here.  We have large institutions down to

6    individuals.  In the Garrison case, the claims are novel.  The

7    claims were subjected to significant motions to dismiss, which

8    we thought were dispositive.

9         And particularly with respect to individual defendants,

10   allowing the type of broad discovery that plaintiffs attempted

11   is not appropriate, we submit, in this type of case because it

12   is now a massive case and there is no harm to plaintiffs

13   whatsoever in delaying discovery until the motions to dismiss

14   are decided.

15        FTX is not an operating entity.  Nothing is going

16   anywhere.  Time doesn't hurt anyone.  But forcing,

17   particularly, individual defendants to incur the expenses of

18   discovery in a case like this when the motions to dismiss, we

19   submit, are extremely well-founded, this falls into the

20   category of cases where the Eleventh Circuit has said that a

21   stay of discovery is quite appropriate.

22        MR. ZUTSHI:  Your Honor, Rishi Zutshi again for

23   investor defendants.  We also -- our position is that discovery

24   should be stayed.  I think there's three points that I make in

25   that regard.  First of all, we haven't seen new claims.  We

1  have seen claims that have been asserted so far against

2  investor defendants.  We think they fail as a matter of law on

3  the pleadings.  The basic theory with respect to the investor

4  defendants is that they aided and abetted a fraud by FTX and

5  its insiders, the result of which was that, by plaintiffs own

6  admission, the tens or hundreds of millions of dollars that the

7  investor defendants had invested, they lost.  It just -- the

8  underlying theory behind the allegations that have been made

9  against our clients make no sense.  They're implausible on

10 their face.

11       In addition to that, there's no well plead facts in

12 many of the elements of claims.  I won't go through those

13 issues.  But we have very, very well-founded motions to

14 dismiss.  Those motions to dismiss will be dispositive of all

15 claims against our clients; that setting aside personal

16 jurisdiction issues, that's just with respect to our 12(b)(6)

17 arguments.

18       We will, as we talked about before, endeavor to brief

19 those issues as quickly as possible, and we're happy to have

20 them resolve as quickly as the Court is able, but we think

21 that's a key -- a key factor under this circuit's law to stay

22 discovery.

23       The second factor that's unique here is what we heard

24 about the U.S. Attorney's Office and the criminal prosecutions

25 with respect Mr. Bankman-Fried.  Mr. Boyd said earlier that

1    those overall issues are going to be the same in this case.

2    And I think the reference there is same issues that the panel

3    found, which is the underlying allegations against our clients

4    are all derivative of an alleged fraud by FTX and its insiders.

5    If discovery into that fraud is being stayed in any respect, us

6    proceeding with discovery in a piecemeal fashion that's on the

7    outer bounds of the claims -- it doesn't go to the part of the

8    issue as to what the scope of the fraud was, whether it was

9    being kept from us, which, frankly, the SEC has alleged in its

10   complaint against Mr. Bankman-Fried that -- I can quote this,

11   that "The fraud was committed unbeknownst to those investors."

12   The investors being referenced there include our clients here.

13        It would be incredibly prejudicial for us to have any

14   sort of discovery proceeding in this case with respect to our

15   clients when we're not able to access full discovery from the

16   main players in the alleged fraud.

17        And finally with respect to prejudice, in addition to

18   what counsel just said, Mr. Boies made reference to the fact

19   that there is going to be effectively discovery available to

20   the plaintiffs through the bankruptcy and the criminal

21   proceedings.  Again, that discovery is going to go to the heart

22   of issues.  That's going to go to the scope of the FTX fraud;

23   so I don't think there's any prejudice to plaintiffs to wait.

24        They haven't yet filed an amended complaint.  By the

25   time we get through amended complaints and motions to dismiss,

1    there's a good chance that there have been significant advances

2    in the criminal prosecutions.  There's a trial set for October

3    of this year, in March of 2024 for the two proceedings against

4    Mr. Bankman-Fried.

5            THE COURT:  Anybody else for the defense?  Any

6    response?

7            Two of you are standing.

8            MR. MOSKOWITZ:  Your Honor, may it please the Court,

9    Adam Moskowitz.  I would just like to give a couple points of

10   reality in that we have been litigating these claims against

11   these types of defendants for more than year.

12           So what's happened?  I mean, a lot of what they're

13   saying is hypothetical or looking forward.  We can look

14   backwards.

15           First of all, most of the celebrity defendants claim

16   they have nothing.  They couldn't give no discovery.  One guy

17   says, "I made a commercial and I have nothing else."

18           So all of these original claims of they're going to be

19   burdensome and it's going to be so overwhelming -- what they

20   answered finally was, "We don't have much."  So there's not

21   much there to get.

22           Second, now we have Magistrate Alicia Otazo, who is

23   very much capable, as the magistrates have done in our other

24   two cases.  If there's an objection on burdensome, she can

25   raise it, and we have done that.  We have done that with

1    Magistrate Reid in her Voyager case, and we've handled any

2    objection raised by the defendants.

3            The third point, Your Honor, is there's still factual

4    differences, even on the most basic points, that they're going

5    to raise to dismiss this case.  For example, they've been

6    saying from the beginning, "There's no connection to Miami.

7    There's simply no connection to Miami."  Well, Your Honor, read

8    our 327-page amended complaint.  And it has a declaration of

9    Dan Friedberg, who's the chief compliance officer at FTX.  He

10   goes through six or seven pages of detail of why the Miami

11   office was so important.

12           If you look at the celebrity status report that they

13   gave you last week in Footnote 3, it summarizes that to say all

14   plaintiffs have said is there could be one employee that didn't

15   work for FTX that may have resided in Florida.  So we're kind

16   of speaking, you know, in Alice in Wonderland.  Like we'll say

17   one thing; they'll say one thing.

18           So there's a real difference here in terms of the facts

19   for the motions to dismiss that they're going to file, and

20   that's why the discovery is so important because if we didn't

21   get that discovery, we would still be under the impression

22   there's no connection to Miami, there may be no MDL to Miami,

23   we wouldn't have learned any of these facts.

24           So that's why we think reasonable discovery is proper

25   from the beginning, like Judge Altman found.  And if there's an

1   objection, we have a magistrate in place who can certainly hear

2   the objection and rule on it.

3          Thank you, Your Honor.

4          THE COURT:  Okay.  Well, I would normally -- and this

5   is not a normal case, but normally I am disinclined to stay

6   discovery during the motion stage, but I recognize that there

7   may be circumstances here that might warrant it.

8          But let me ask you this:  This issue has not been

9   briefed, has it?

10         MR. MOSKOWITZ:  Not in the FTX case.  In the Binance

11  case, there was a motion to stay discovery, and Judge Altman

12  peeked at the merits and said, "I peek at the merits.  This

13  case isn't going away.  I'm going to not allow a blanket stay."

14         MR. CARVER:  Your Honor, Christopher Carver, Ackerman

15  LLP.  In the Garrison case, we filed a motion to stay

16  discovery.  That basically was punted when the case was

17  transferred to the MDL.  It has not -- it was not fully

18  briefed, but our motion is on file.

19         Let me -- let me correct that.  With respect to

20  jurisdictional discovery, plaintiffs opposed it, but respect to

21  merit discovery, the plaintiffs did not oppose it.  They filed

22  a very brief response.  The Court did not rule on that.  It got

23  sucked to the side as a result of the transfer to the MDL.

24         THE COURT:  Right.

25         MR. CARVER:  But we have -- we have laid out why in our

```
1    -- in the Garrison case, which is the sports -- now the sports
2    and entertainer defendants, discovery should be stayed.
3           THE COURT:  Okay.  Can we get a -- can we tee this up
4    again?  Get a motion to stay discovery?
5           MR. CARVER:  On behalf of the sports and entertainment
6    defendants, absolutely.
7           THE COURT:  Anybody else who wants to stay discovery
8    too?  I want to -- I want to brief the issue.
9           MR. CARVER:  Okay.  Your Honor, the question is when
10   for the sports and entertainer defendants?  I think we can do
11   it within 21 days because we have done it, but I don't know
12   about the other defendants.
13          MR. ZUTSHI:  Your Honor, we are differently situated.
14   There's no attempts at discovery.  Many of the defendants in
15   this group haven't even been served in these claims.  We've
16   heard it.  We don't know what the -- what the amended
17   complaints are going to look like, and we have not had any
18   discussions with plaintiffs' counsel about discovery before
19   this conference.
20          So I think it may make sense, with Your Honor's
21   permission, for us to see if we can -- if we can further those
22   issues through discussion among the parties in the first
23   instance, and see if there's any resolution that can be
24   reached.  I just -- I think that it would be unusual, in my
25   experience, to brief a stay of discovery before we've seen an
```

1    amended complaint.

2         THE COURT:  I agree with that.  So you are going to

3    file -- at least with the sports, you are going to file a

4    motion to stay discovery.

5         MR. CARVER:  If that's what Your Honor wants,

6    absolutely.

7         THE COURT:  Yeah.  I would like to brief this because I

8    think there are some pros and cons to this issue that I don't

9    want to rule on from the bench.  And the fact that at least

10   some of the defendants have not been served with a complaint or

11   amended complaint I think weighs in favor of staying discovery

12   at least until such time as it -- you go ahead and push the

13   issue by moving for discovery.  Okay?  So take your best shot

14   and see how they respond, but it may be a little premature to

15   try to pursue discovery at this point.  It may come up again

16   soon, and we can take it up.

17        As an aside, there was something that I was going to

18   talk about at some point, but I might as well do it now.  So

19   we're on our third magistrate judge; right?  And this just

20   happens to be a magistrate judge who is also going to be

21   completing her service as a magistrate judge at the end of

22   November.  Okay?  So she's retiring from service.

23        It is not uncommon, I don't think, in these kind of

24   cases, given the complexity of the case and the time that we

25   can expect to devote to it, to consider the appointment of a

1    special master.  And I would like to discuss that with the

2    parties and get their thoughts on whether they would think that

3    is appropriate or inappropriate, necessary, helpful, unhelpful

4    under Rule 53 and what your thoughts are.

5          MR. BOIES:  Your Honor, we would certainly be amenable

6    to a special master if the Court thinks that's desirable.  I've

7    certainly been in MDLs where there have been special masters

8    and not.  If the magistrate is going to be retiring in

9    November, depending on the decisions of the motions to dismiss,

10   that's going to be shortly after we really begin to get into

11   the heat of discovery, it may be useful to have a special

12   master.  I don't know whether the Court would intend to appoint

13   a magistrate thereafter or not.  And exactly how you divide the

14   roles between the special master and the magistrate is

15   obviously something we would entirely defer to the Court on.

16         THE COURT:  Well, look at -- you've probably been on

17   more of these than I have, so you have seen the pros and the

18   cons.  And my guess is the success very much depends on who the

19   person is.

20         MR. BOIES:  Yes, Your Honor.

21         THE COURT:  So I fully anticipate keeping the motion to

22   dismiss.  I'm not going to refer that out for a court

23   recommendation.  It's a dispositive motion, and I keep them as

24   a matter of practice.

25         The discovery issues -- I think they're going to be --

1    there's going to be a lot of them, and they're going to be very

2    disparate depending on the particular party.  It may be a

3    little premature, but I see it on the horizon, and I just don't

4    like the idea personally of trying to get one magistrate up to

5    speed on these issues and then -- what are we now?  We're at

6    the end of June? -- five months later, say, you know, it's all

7    going to be turned over to some other magistrate judge and it

8    just does not seem to be particularly helpful.

9         So my thought would be unless there's some discrete

10   issue that the currently assigned magistrate judge can handle

11   between now and when she leaves office, that I would, whoever

12   is going to succeed her, start using that judicial officer for

13   whatever help they can provide.

14        And for all I know, I mean, Judge Otazo Reyes could

15   decide next week or the week after that for whatever reason,

16   she wants to recuse.  I'm not assuming that.  I'm assuming

17   she's going to be doing her judicial work until the end of

18   November.

19        But that being said -- and that's only one

20   consideration.  Whether she was going to be here for another

21   eight years, I would still be looking at this issue of the

22   value that a good special master might provide to all the

23   parties.  And I'm willing to entertain, when I look at the

24   rule, each side has an opportunity to submit a name or names

25   that you would want the Court to consider.  I'm happy to

1    consider that.  There are some conditions that have to be

2    satisfied in order to appoint a special master.

3            If you don't want to submit names, I -- believe it or

4    not, I have somebody that -- that you might want to consider,

5    maybe more than one person but -- and you might not want to.

6    You might be opposed to that individual, but I wouldn't make a

7    suggestion if I didn't have full faith and confidence that the

8    individual had the requisite skill and abilities that would be

9    helpful in moving litigation forward.

10            So from the other side, did I get any input on that

11   point?

12            MR. KROEGER:  Yes, Your Honor.  Thomas Kroeger.  From

13   the perspective of the sports and entertainment defendants, we

14   think that the appointment of a special master might be a bit

15   premature at this point, especially given what we believe are

16   very compelling motions to dismiss.

17            The scope of the claims is likely to be substantially

18   winnowed or narrowed as we proceed through that phase.  Given

19   the current timeline we have been discussing, we're already

20   essentially three months out by the time the Court will start

21   to consider and rule on those motions.  And we believe it might

22   be more appropriate to consider the appointment of a special

23   master once the Court has considered and ruled on those motions

24   and we're at that juncture where the merits of discovery is

25   likely to heat up.

```
 1              THE COURT:  I think that's a good point.  So we'll hold

 2     off on that, but that kind of -- the reason it was raised, it

 3     was kind of leading into the issue of discovery, and so we're

 4     going to get that issue on discovery pending the motion to

 5     dismiss.  We'll take up that issue and give you a ruling on

 6     that, and we'll decide whether we're going to have no

 7     discovery, some discovery, or discovery once we have that issue

 8     briefed.  Okay.

 9              So you had three issues to begin with:  The personal

10     jurisdiction, the complaint, and the discovery.

11              What next.

12              MR. BOIES:  Those were -- those were our primary

13     issues, Your Honor.  This is David Boies again.  We do think

14     that it would be helpful, in addition to the plaintiffs'

15     organization, if we had defendants' liaison counsel.  We could

16     focus on -- I think the steps that we have taken in terms of

17     saying we're going to have these groups, bundles of defendants

18     is a good first step.  And if each of those bundles have

19     liaison counsel we could deal with on some of these issues, I

20     think that would be helpful.  And the MDL rules suggest that

21     that's something for the Court to consider, and we think that

22     would be helpful.

23              THE COURT:  Okay.  Who wants to --

24              MR. KROEGER:  Thank you, Your Honor.  Thomas Kroeger.

25     We would similarly suggest that a liaison counsel might be a
```

1   premature selection at this point, just depending on how the

2   motions to dismiss are resolved, in terms of what defendants

3   actually end up remaining in the MDL.

4        So in theory it's probably wise, but we think that the

5   actual appointment or selection of one at this juncture again

6   might be a bit premature.

7        MS. BINA:  Your Honor, Jessica Stebbins Bina on behalf

8   of defendants Brady, Bundchen, O'Neal, and David.

9        Your Honor has already proposed separate groups of

10  defendants, separate complaints.  I think it would make sense

11  to consider any liaison counsel on a defendant group by

12  defendant-group basis at minimum, and it seems potentially

13  unnecessary to do so formally.  Most MDLs don't have a

14  formalized defense liaison counsel.

15       I suggest we first see the amended complaints, see the

16  groupings, and then meet and confer with plaintiffs on this

17  issue as to whether it is actually necessary or helpful in this

18  instance.

19       THE COURT:  Do you know how to get in touch with them?

20       MR. BOIES:  Your Honor, I would disagree that most MDLs

21  do not have defense liaisons.  Most MDLs -- anything like this

22  size and complexity do have defense liaison counsel.  I do

23  agree with defense counsel that it makes sense to have liaison

24  counsel, at least initially, by the defendant groups, but I

25  don't think -- I don't think this is premature because we're

1    going to be dealing with them on all sorts of scheduling issues

2    over the next three months.

3          Just look at the number of lawyers in this room.

4    Trying to get all of them, you know, herded together to even

5    get a meet and confer, for example, on some of the things that

6    we need to meet and confer on today, I think it would be

7    extremely challenging.

8          So I think that in the interim -- and maybe they're

9    just interim liaison counsel, but we do need somebody who is

10   going to be the contact so we're not dealing with literally

11   dozens of different lawyers or law firms.

12         MR. ZUTSHI:  Your Honor, Rishi Zutshi again.  I will

13   say that we've done a lot of work to try and coordinate so far

14   among the investor defendants and also some of the other

15   defendants.  So while I appreciate Mr. Boies' concerns, I think

16   we've been working so far with those plaintiffs' counsel whom

17   have been in touch with us and to coordinate well, and that

18   this is an issue that we can take up informally in the first

19   instance.  And if it presents an issue later on, as counsel

20   here at this table have suggested, we could revisit it whenever

21   we're next before Your Honor.

22         THE COURT:  Are you comfortable with that for the time

23   being?

24         Are you comfortable with that for the time being?

25         MR. BOIES:  Yes, Your Honor.  Let us talk to them and

```
 1      see if we can work this out.

 2              THE COURT:  Okay.

 3              MR. BOIES:  I do think that we're going to need liaison

 4      counsel.  I think it's just -- it's going to be morass if we

 5      have to try and deal with individually all the lawyers on the

 6      other side.  But let us try to work it out and see if we can

 7      come back with a proposal to the Court.

 8              THE COURT:  Yeah.  And I think just for the sake of

 9      collegiality and professionalism and civility that this would

10      be a good example of your ability to work with one another and

11      not make it any more difficult than it needs to be.

12              By the way, just as a minor point, I know getting

13      together sometimes may be difficult and arranging where and

14      time, we do have a lawyer's conference room on the 14th floor

15      of this building that is available and accessible to you if you

16      need a neutral site, and I invite you to avail yourselves of

17      it.  It's there for that purpose.  It's a little larger room,

18      than trying to huddle in the hallway or out in the foyer.  So

19      just be aware of it.  If you want to take advantage of it, by

20      all means.

21              Okay.  So we kind of punted on the defense liaison

22      counsel for the time being, but we can revisit that issue if it

23      proves to be unworkable informally.  Okay?

24              What's your next issue?

25              MR. BOIES:  That completes the issues that we had,
```

```
 1    Your Honor.
 2            THE COURT:  Okay.  For the defense?
 3            MR. GREENBERG:  Your Honor, Gerald Greenberg on behalf
 4    of Mr. Bankman-Fried.  I don't think we have anything in
 5    addition to what's already been discussed.
 6            THE COURT:  Can you just tell me, it would be helpful
 7    to me, the timeline of the criminal matter, if you can share.
 8    I don't want you to tell me anything that I'm not supposed to
 9    know.
10            MR. GREENBERG:  Sure, Your Honor.  There are -- the
11    criminal case in the Southern District of New York currently
12    has two trial dates because certain counsel were separated out
13    based on defense motions relating to some of the international
14    component of the case.
15            The current dates are October of 2023 and March
16    of 2024.  I have been advised by the counsel handling those
17    that those, at least, you know, the best anyone can say right
18    now, seem like real dates.  And each one could go -- and again,
19    this is speculation at this point -- in the five- to seven-week
20    range.  So if that sticks, it would end things in, you know,
21    not by this time next year, but, you know, spring of 2024.
22    But, again, that's -- as always in the case of this nature,
23    that's somewhat speculative.
24            THE COURT:  Right.
25            Okay.  Thank you.
```

1          MR. GREENBERG:  Thank you.

2          MR. KROEGER:  Thank you, Your Honor.  Thomas Kroeger.

3   Just two points.  First on clarification, in terms of the

4   motion to stay discovery, I just want to clarify the timing of

5   when Your Honor would like to receive that.  In theory, that

6   would follow the filing of the amended complaints.  But if

7   Your Honor wants to tee it up somewhat differently in terms of

8   scheduling, that can certainly be done.  I just want to

9   clarify.

10         THE COURT:  Well, what I'm envisioning is that there

11  has been no demand for discovery that's been put on you at this

12  point; right?

13         MR. KROEGER:  Correct.

14         THE COURT:  So --

15         MR. BOIES:  We're not sure.

16         MR. CARVER:  Your Honor, actually, we're in kind of a

17  weird limbo.  There were discovery requests served.  There were

18  deposition notices served that were objected to.  Then because

19  the case got transferred in MDL and everything was stayed, our

20  position is that the discovery was stayed also until the Court

21  said it wasn't, and we had our motion to stay discovery which

22  had been briefed, but the Court hadn't decided when it was

23  transferred to the MDL.  So there's discovery kind of out

24  there, but it's in limbo.

25         THE COURT:  So are you saying that there's an

1  outstanding motion that's ripe that has not been ruled on?

2       MR. CARVER:  Correct, Your Honor.

3       THE COURT:  Okay.  So can I deny that as moot and

4  subject to whatever future renewed discovery requests that

5  plaintiffs' counsel may make?

6       MR. CARVER:  Your Honor, I would never tell a judge he

7  couldn't do something.  Certainly, it would seem, since we do

8  not have an operative complaint at this time, that motion

9  should be denied as moot as were virtually every motion that

10  was pending in Garrison.  In fact, I think that might be the

11  only one outstanding.

12       THE COURT:  Any problem with that?

13       MR. BOIES:  Your Honor, I have one problem with that,

14  and that is he says there's no operative complaint.  It is true

15  that we're going to file a consolidated amended complaint,

16  which is typical in MDL practice, but there are operative

17  complaints out there.  All of the defendants know basically

18  what these claims are.  They've had them for a while.  Some of

19  them have even made motions against them.  This is not a

20  situation which there's no operative complaint with respect to

21  which we can take discovery.  We've actually served some

22  discovery already.

23       I think it would be appropriate that if they're going

24  to take the position that no discovery ought to take place

25  until the motions to dismiss are decided, that they should make

1    those motions now.  We should brief them, and the Court can

2    decide them.  We think if the Court simply takes a peek, to use

3    another judge's view -- words, at the complaint, the Court can

4    make a judgment as to whether this is an appropriate case to go

5    forward on discovery or not.  I think they ought to make those

6    motions now.

7         Now, if -- that's a different question, as to whether

8    discovery that we're seeking is a burden.  That is something

9    that would go to a special master, to a magistrate, however it

10   works out in this case.  But in terms of an absolute bar on any

11   discovery at this point, I think they ought to make their

12   motions now, we ought to brief them, and allow the Court to

13   decide.

14        THE COURT:  All right.  I want to make sure my docket

15   is cleaned up.  I mean, you're saying that there's a motion

16   outstanding that I have not ruled on?

17        MR. BOIES:  I have no problem with that being denied.

18   And under the circumstances, they will make a new motion, we'll

19   brief it, and the Court can then decide on that motion.

20        THE COURT:  Are you okay with that?

21        MR. CARVER:  Yes, Your Honor.  My only question is when

22   would the Court want the new motion.  Right now we've got to --

23   we do have an operative complaint, but we have a complaint that

24   we know is going to be superseded, which is going to be filed

25   in 45 days.  It makes sense since everyone in this room knows

1    that the current pleadings across the board are not the

2    pleadings, that once plaintiffs file their effective

3    consolidated complaint, that -- then we can file our motion to

4    stay discovery within 21 days of that date, and nothing is

5    harmed by cleaning up the procedural limbo that we're in right

6    now and waiting 21 days after plaintiffs file their

7    consolidated amended complaint, to file a motion to stay

8    discovery.  And by that time, all of the defendants on this

9    side of the table, speaking for -- to the right of me -- they

10   will know what their allegations are and whether or not they

11   seek to stay discovery.  And that's, frankly, I think, the

12   cleanest way to do this.

13        THE COURT:  Okay.  Well, we got them to agree to -- I

14   grant your motion.

15        MR. CARVER:  I think he said denied, Your Honor.

16        THE COURT:  To deny the motion to -- it's your motion.

17        MR. CARVER:  My motion to stay discovery, to deny is as

18   moot.  He agrees to that.

19        THE COURT:  Okay.  Denied as moot.  Okay.  So we'll do

20   that.  And then where are we?  Are we waiting until -- are you

21   going to -- are you going to file new motions for discovery, or

22   are you going to -- and are they going to be before you file an

23   amended complaint or after?

24        MR. CARVER:  Your Honor, that is -- that's at the

25   Court's determination.  If the Court wants a motion to stay

```
1   discovery now, we can do it, but I think it makes sense to file
2   it once we see the consolidated amended complaint.  And the
3   defendants along this side of table and the ones that aren't
4   here are going to need to see that consolidated amended
5   complaint.
6           THE COURT:  So you want them to file their motion?
7           MR. BOIES:  We want them to file the motion now so we
8   can respond.
9           THE COURT:  Okay.  So go ahead and file your motion.
10          MR. CARVER:  Twenty one days from today, Your Honor.
11          THE COURT:  Is that okay?
12          MR. BOIES:  Yes, Your Honor.
13          THE COURT:  All right.  Okay.
14          MR. ZUTSHI:  I just -- and I want to -- this is Rishi
15  Zutshi.  I want to clarify that that deadline applies with
16  respect to the sports and entertainer defendants who had a
17  motion previously briefed and who apparently had engaged in
18  some discovery practice before.  The investor defendants had
19  not been subject to any discovery request yet, so --
20          THE COURT:  There's nothing for you to complain about.
21          MR. ZUTSHI:  Yes.
22          MR. BOIES:  Your Honor, we would certainly give them a
23  discovery request.  So if they want to stay discovery, I think
24  they ought to make the motion now.  If all they want to do is
25  object to some of our discovery as burdensome, that's a
```

```
1   separate issue, and that would go to a magistrate but --

2        THE COURT:  Right now they don't have anything to

3   object to because they --

4        MR. BOIES:  We will give them that, Your Honor.

5        THE COURT:  There you go.  Okay.

6        MR. CARVER:  Your Honor, not to complicate things, but

7   if plaintiffs are going to serve discovery on defendants that

8   haven't had discovery and that's going to cause those

9   defendants to file a motion to stay discovery, which I think

10  everyone in this room understands, it might be easier for the

11  Court to have those motions on the same schedule.  It's up to

12  Your honor.  I'm raising the issue.  I'm happy to file within

13  21 days or 21 days from whatever date plaintiffs and the other

14  defendants decide is an appropriate time.  I just -- I'm trying

15  to help.

16       THE COURT:  Complicate the issues.  But go ahead and

17  file yours, and we'll take them up as they're filed.

18       MR. CARVER:  Okay.  Your Honor, we do have another

19  issue on the sports and entertainer defendants.

20       THE COURT:  All right.

21       MR. CARVER:  Mr. Bankman-Fried's preliminary report

22  referenced arbitration and class waiver provisions that the

23  preliminary reports says every plaintiff is bound by.  The

24  sports and entertainer defendants don't have copies of those

25  documents.  That's going to be an issue in this case when we
```

```
1    finally get access to those documents.  And I just wanted to

2    flag that as they relate in Item 6 in the Court's order of

3    things to talk about was related issues that should be brought

4    to the attention of the Court.  That's one of them.

5              THE COURT:  Okay.  All right.  What else?  I got all

6    day for you.

7              MR. BOIES:  Nothing for the plaintiffs, Your Honor.

8              THE COURT:  Okay.

9              MR. ZUTSHI:  Rishi -- there's nothing further from us.

10   Just except for one housekeeping issue, Your Honor.  I know

11   that the order contemplated, if necessary, follow-up conference

12   next week.  It appears we are making progress today.  We

13   obviously have a lot of issues to discuss with plaintiffs'

14   counsel and among ourselves, but -- and is the Court needing us

15   to resume this next week?

16             THE COURT:  So at that time, I was not anticipating the

17   resolution of the lead plaintiffs' counsel.  I thought that was

18   going to be an issue that would require some follow-up.  That

19   issue appears to be moot.  And by the way, I will incorporate

20   that as part of the order that's entered following today's

21   hearing.

22             But I'm certainly available if there are other issues.

23   I don't want to inconvenience anybody unnecessarily.  I know

24   many of you are out of town and have logistical issues, and I

25   don't want to burden you with that.  Don't expect a lot of
```

1   Zooms, by the way.  But I am available if anybody sees an issue

2   now that would make another status conference necessary next

3   week.  If not, I don't need to take up your time unnecessarily.

4   Does anybody see a need at this time?

5          MR. BOIES:  May I have just a moment, Your Honor?

6          THE COURT:  Yes.

7          MR. BOIES:  Your Honor, I don't think either plaintiffs

8   or defendants think it would be necessary next week to have

9   another status conference.

10          THE COURT:  All right.  So that's canceled.  But if it

11  changes, if some of the informal discussions resolve some of

12  these issues or if they don't and you think you need some

13  judicial intervention, just alert us to that, move for it, and

14  we'll take it up.

15          Fair enough?

16          MR. BOIES:  Yes, Your Honor.

17          Could I just inquire, if we conclude that we would like

18  to have a status conference, what is the way for us to approach

19  the Court on that?  Is it a letter?

20          THE COURT:  Not a letter.  You told me you were

21  familiar with the local rules when you admitted pro hac vice.

22  And that's prohibited.

23          And I don't prefer that you call chambers.  I like to

24  have a record, and it should be on the docket, a CM/ECF number,

25  that the parties jointly request a status conference or that

1    you agreed on or that one of you does and the other doesn't, in

2    which case I'll -- I'll make a decision whether we need to have

3    a hearing on it.

4         MR. BOIES:  Thank you, Your Honor.

5         THE COURT:  I like to stick to the record.

6         MR. BOIES:  Thank you, Your Honor.

7         THE COURT:  Okay.  Anybody?  Everybody has been heard?

8    If nothing else, then thank you for coming in.  Good to see

9    you-all, and we will be in recess.

10        ( The status conference was concluded at 11:12 a.m.)

11                    - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2                         -   -   -

 3

 4   I, TRISH BAILEY-ENTIN, Stenographic Reporter, State of Florida

 5   at Large, certify that I was authorized to and did

 6   stenographically report the foregoing proceedings and that the

 7   transcript is a true and complete record of my stenographic

 8   notes.

 9

10           Dated this 21st day of June 2023.

11

12

13

14                    _____

15                    TRISH BAILEY-ENTIN, RPR, FPR

16

17

18

19

20

21

22

23

24

25
```

**1**

**1** [2] - 1:9, 2:2
**10** [1] - 10:16
**100** [1] - 1:15
**10001** [1] - 2:19
**10006** [1] - 2:15
**10250** [1] - 2:11
**10:00** [1] - 1:7
**1100** [2] - 1:23, 2:11
**11:12** [2] - 1:7, 52:10
**12(b)(6** [2] - 13:18, 29:16
**14** [12] - 10:17, 10:18, 10:19, 10:23, 11:11, 14:2, 14:14, 15:1, 15:16, 22:9, 24:9, 27:19
**1400** [1] - 2:21
**14th** [1] - 42:14
**15** [1] - 22:25
**1800** [1] - 2:8
**1:23-MD-03076** [1] - 4:2

**2**

**201** [1] - 2:7
**202** [1] - 1:19
**2022** [1] - 1:6
**2023** [2] - 43:15, 53:10
**2024** [3] - 31:3, 43:16, 43:21
**21** [6] - 1:6, 34:11, 47:4, 47:6, 49:13
**21st** [1] - 53:10
**22-20230-CR-DMM** [1] - 1:3
**255** [1] - 2:4
**2600** [1] - 2:2
**2800** [2] - 1:15, 1:22
**2nd** [1] - 1:15

**3**

**3** [1] - 32:13
**301** [1] - 2:21
**3250** [1] - 1:19
**327-page** [1] - 32:8
**32801** [1] - 2:21
**33131** [2] - 1:16, 2:2
**33133** [1] - 1:20
**33134** [1] - 2:5
**33134-6933** [1] - 1:23
**33301** [1] - 2:8
**3700** [1] - 2:24
**3RD** [1] - 2:2

**4**

**40** [1] - 6:11
**45** [12] - 16:6, 16:8, 21:21, 22:3, 22:10, 22:11, 22:25, 23:3, 23:22, 24:9, 46:25
**45-day** [1] - 15:23

**5**

**51** [1] - 1:9
**53** [1] - 36:4
**555** [1] - 2:23

**6**

**6** [1] - 50:2
**60** [1] - 22:17

**9**

**90067** [1] - 2:12
**90071** [1] - 2:24

**A**

**a.m** [1] - 52:10
**abetted** [1] - 29:4
**abilities** [1] - 38:8
**ability** [2] - 10:8, 42:10
**able** [6] - 13:18, 15:1, 22:18, 23:25, 29:20, 30:15
**absolute** [1] - 46:10
**absolutely** [4] - 23:7, 23:15, 34:6, 35:6
**accept** [1] - 7:14
**access** [2] - 30:15, 50:1
**accessible** [1] - 42:15
**accommodate** [1] - 25:11
**accomplished** [1] - 7:5
**accountants** [2] - 16:15, 18:8
**accounting** [3] - 18:3, 21:5, 21:7
**Ackerman** [2] - 28:3, 33:14
**actions** [2] - 13:16, 16:4
**actual** [1] - 40:5
**ADAM** [1] - 1:17
**Adam** [2] - 4:12, 31:9
**addition** [4] - 29:11, 30:17, 39:14, 43:5
**additional** [4] - 6:13, 22:25, 23:23, 23:24

**address** [7] - 6:6, 6:19, 6:20, 9:16, 12:23, 22:9, 24:9
**addressing** [1] - 6:21
**administrative** [2] - 13:14, 19:13
**administratively** [1] - 18:19
**admission** [1] - 29:6
**admitted** [1] - 51:21
**advance** [1] - 6:24
**advances** [1] - 31:1
**advantage** [1] - 42:19
**advised** [1] - 43:16
**advisor** [1] - 21:6
**advisors** [1] - 16:15
**affect** [1] - 17:19
**affected** [1] - 20:16
**agree** [6] - 23:21, 25:22, 26:2, 35:2, 40:23, 47:13
**agreed** [1] - 52:1
**agreement** [5] - 6:14, 6:22, 8:17, 14:10, 16:2
**agreements** [1] - 9:23
**agrees** [1] - 47:18
**ahead** [6] - 8:12, 9:16, 26:7, 35:12, 48:9, 49:16
**aided** [1] - 29:4
**AKERMAN** [1] - 2:7
**Akerman** [1] - 5:6
**alert** [1] - 51:13
**Alex** [1] - 5:14
**ALEXANDER** [1] - 2:17
**ALHAMBRA** [1] - 2:4
**Alice** [1] - 32:16
**Alicia** [1] - 31:22
**allegations** [6] - 16:14, 18:17, 18:25, 29:8, 30:3, 47:10
**allege** [1] - 18:10
**alleged** [3] - 30:4, 30:9, 30:16
**allotted** [1] - 23:25
**allow** [2] - 33:13, 46:12
**allowing** [1] - 28:10
**alternatively** [2] - 7:15, 14:16
**Altman** [2] - 32:25, 33:11
**AM** [1] - 1:7
**amenable** [1] - 36:5
**amended** [27] - 7:7, 7:22, 13:11, 13:25, 14:7, 14:23, 15:17, 16:3, 16:9, 19:8,

22:10, 22:11, 23:19, 26:1, 30:24, 30:25, 32:8, 34:16, 35:1, 35:11, 40:15, 44:6, 45:15, 47:7, 47:23, 48:2, 48:4
**amicably** [1] - 10:14
**amount** [1] - 17:17
**Ana** [1] - 5:22
**AND** [5] - 2:5, 2:7, 2:11, 2:19, 2:25
**ANGELES** [2] - 2:12, 2:24
**Anna** [1] - 5:19
**ANNA** [2] - 2:22, 2:25
**answer** [2] - 11:11, 14:20
**answered** [1] - 31:20
**answers** [1] - 7:9
**anticipate** [2] - 23:18, 36:21
**anticipating** [1] - 50:16
**apologize** [1] - 17:7
**APPEARANCES** [1] - 1:12
**applies** [1] - 48:15
**apply** [1] - 20:12
**appoint** [2] - 36:12, 38:2
**appointment** [4] - 35:25, 38:14, 38:22, 40:5
**appreciate** [1] - 41:15
**approach** [3] - 8:2, 11:15, 51:18
**approaches** [2] - 15:8, 25:10
**appropriate** [16] - 6:3, 8:4, 15:22, 15:24, 24:23, 25:8, 26:20, 27:15, 27:21, 28:11, 28:21, 36:3, 38:22, 45:23, 46:4, 49:14
**arbitration** [1] - 49:22
**arguments** [2] - 19:14, 29:17
**arise** [1] - 6:17
**Arps** [1] - 5:15
**ARPS** [1] - 2:18
**arranging** [1] - 42:13
**aside** [3] - 27:11, 29:15, 35:17
**aspects** [1] - 20:15
**asserted** [1] - 29:1
**assessment** [1] - 20:2
**assigned** [1] - 37:10
**assuming** [2] - 27:16, 37:16
**attempted** [2] - 27:19,

28:10
**attempts** [1] - 34:14
**attention** [1] - 50:4
**Attorney's** [5] - 26:4, 26:25, 27:5, 27:9, 29:24
**authorized** [1] - 53:5
**avail** [1] - 42:16
**available** [5] - 13:20, 30:19, 42:15, 50:22, 51:1
**AVE** [1] - 2:2
**avoid** [1] - 7:15
**awaiting** [2] - 25:4, 25:10
**aware** [4] - 15:18, 23:20, 24:24, 42:19

**B**

**backwards** [1] - 31:14
**BAILEY** [3] - 3:2, 53:4, 53:15
**BAILEY-ENTIN** [3] - 3:2, 53:4, 53:15
**Bankman** [11] - 4:25, 25:15, 26:3, 26:6, 26:15, 27:7, 29:25, 30:10, 31:4, 43:4, 49:21
**BANKMAN** [1] - 2:1
**Bankman-Fried** [10] - 4:25, 25:15, 26:3, 26:6, 26:15, 27:7, 29:25, 30:10, 31:4, 43:4
**BANKMAN-FRIED** [1] - 2:1
**Bankman-Fried's** [1] - 49:21
**bankruptcy** [2] - 26:16, 30:20
**bar** [1] - 46:10
**based** [2] - 9:21, 43:13
**basic** [3] - 24:25, 29:3, 32:4
**basis** [1] - 40:12
**BEFORE** [1] - 1:10
**begin** [2] - 36:10, 39:9
**beginning** [3] - 4:5, 32:6, 32:25
**BEHALF** [7] - 2:1, 2:3, 2:6, 2:10, 2:13, 2:17, 2:22
**behalf** [19] - 4:24, 5:2, 5:6, 5:9, 5:12, 5:15, 5:18, 5:20, 5:23, 8:15, 8:20, 11:19, 17:8, 18:22, 25:14, 28:4, 34:5, 40:7,

43:3
**behind** [1] - 29:8
**bench** [1] - 35:9
**benefit** [1] - 20:7
**Berger** [1] - 5:23
**best** [4] - 8:17, 11:21, 35:13, 43:17
**better** [1] - 22:18
**between** [3] - 10:3, 36:14, 37:11
**beyond** [1] - 6:23
**big** [2] - 20:4, 23:18
**BINA** [3] - 2:10, 5:8, 40:7
**Bina** [2] - 5:9, 40:7
**Binance** [1] - 33:10
**bit** [3] - 14:9, 38:14, 40:6
**blanket** [1] - 33:13
**board** [1] - 47:1
**boies** [1] - 11:24
**Boies** [6] - 4:7, 7:3, 26:2, 30:18, 39:13
**BOIES** [42] - 1:13, 1:14, 4:6, 7:2, 11:14, 14:21, 14:25, 16:7, 17:12, 20:22, 21:2, 21:10, 21:20, 21:22, 22:7, 22:22, 23:5, 24:13, 24:16, 24:19, 26:2, 26:25, 36:5, 36:20, 39:12, 40:20, 41:25, 42:3, 42:25, 44:15, 45:13, 46:17, 48:7, 48:12, 48:22, 49:4, 50:7, 51:5, 51:7, 51:16, 52:4, 52:6
**boies'** [2] - 13:10, 41:15
**BOULEVARD** [3] - 1:22, 2:7, 2:11
**bound** [1] - 49:23
**bounds** [1] - 30:7
**Boyd** [1] - 29:25
**BRADY** [2] - 2:4, 2:10
**Brady** [4] - 5:2, 5:10, 9:11, 40:8
**Bravo** [2] - 5:21, 5:23
**BRAVO** [1] - 2:23
**breaking** [1] - 21:16
**brief** [8] - 29:18, 33:22, 34:8, 34:25, 35:7, 46:1, 46:12, 46:19
**briefed** [6] - 12:3, 33:9, 33:18, 39:8, 44:22, 48:17
**bring** [2] - 7:22, 16:4
**brings** [1] - 15:19

**broad** [1] - 28:10
**broadest** [1] - 26:18
**broken** [1] - 22:2
**brought** [1] - 50:3
**bucket** [1] - 22:14
**buckets** [2] - 20:21, 24:4
**building** [1] - 42:15
**BUNDCHEN** [2] - 2:4, 2:11
**Bundchen** [4] - 5:2, 5:10, 9:11, 40:8
**bundles** [6] - 8:23, 9:3, 19:1, 21:17, 39:17, 39:18
**burden** [3] - 15:13, 46:8, 50:25
**burdening** [1] - 20:14
**burdensome** [3] - 31:19, 31:24, 48:25
**BUSHMAN** [1] - 1:17
**Bushman** [1] - 4:14
**BY** [1] - 3:1
**BYRNE** [2] - 1:21, 1:22
**Byrne** [2] - 4:16, 4:17

---

# C

**CA** [2] - 2:12, 2:24
**California** [1] - 11:8
**canceled** [1] - 51:10
**capable** [1] - 31:23
**capital** [3] - 18:4, 18:7, 21:4
**CAPITAL** [1] - 2:14
**Capital** [1] - 5:12
**carve** [1] - 20:3
**CARVER** [19] - 2:6, 5:5, 28:3, 33:14, 33:25, 34:5, 34:9, 35:5, 44:16, 45:2, 45:6, 46:21, 47:15, 47:17, 47:24, 48:10, 49:6, 49:18, 49:21
**Carver** [3] - 5:6, 28:3, 33:14
**case** [38] - 12:7, 12:11, 12:12, 12:17, 12:18, 13:1, 13:9, 13:14, 15:6, 19:24, 25:19, 26:8, 26:16, 27:18, 28:6, 28:11, 28:12, 28:18, 30:1, 30:14, 32:1, 32:5, 33:5, 33:10, 33:11, 33:13, 33:15, 33:16, 34:1, 35:24, 43:11, 43:14, 43:22, 44:19, 46:4, 46:10, 49:25, 52:2

**CASE** [1] - 1:3
**Case** [1] - 4:2
**cases** [16] - 7:16, 7:17, 7:23, 11:4, 11:5, 11:6, 11:8, 12:5, 15:19, 17:19, 19:20, 19:21, 24:24, 28:20, 31:24, 35:24
**category** [1] - 28:20
**celebrity** [3] - 16:20, 31:15, 32:12
**certain** [4] - 7:11, 20:14, 43:12
**certainly** [12] - 6:3, 16:5, 25:15, 25:19, 25:25, 33:1, 36:5, 36:7, 44:8, 45:7, 48:22, 50:22
**certify** [1] - 53:5
**chairpersons** [1] - 6:16
**challenging** [1] - 41:7
**chambers** [1] - 51:23
**chance** [2] - 23:12, 31:1
**changes** [1] - 51:11
**characterization** [1] - 8:24
**chief** [1] - 32:9
**chime** [1] - 11:22
**christopher** [1] - 28:3
**Christopher** [2] - 5:5, 33:14
**CHRISTOPHER** [1] - 2:6
**CIR** [1] - 2:4
**Circuit** [1] - 28:20
**circuit's** [1] - 29:21
**circumstances** [2] - 33:7, 46:18
**civil** [1] - 26:17
**civility** [1] - 42:9
**claim** [1] - 31:15
**claims** [16] - 14:7, 16:12, 19:18, 20:15, 28:6, 28:7, 28:25, 29:1, 29:12, 29:15, 30:7, 31:10, 31:18, 34:15, 38:17, 45:18
**clarification** [1] - 44:3
**clarify** [3] - 44:4, 44:9, 48:15
**clarity** [6] - 13:13, 13:23, 14:3, 14:4, 19:12, 19:19
**class** [1] - 49:22
**cleaned** [1] - 46:15
**cleanest** [1] - 47:12
**cleaning** [1] - 47:5
**clear** [2] - 11:1, 18:24

**Cleary** [2] - 5:12, 11:19
**CLEARY** [1] - 2:14
**client** [1] - 25:18
**clients** [6] - 19:18, 29:9, 29:15, 30:3, 30:12, 30:15
**clients'** [1] - 19:11
**closed** [1] - 17:15
**CM/ECF** [1] - 51:24
**co** [1] - 6:15
**co-lead** [1] - 6:15
**cognizant** [1] - 23:8
**Collapse** [1] - 4:3
**COLLAPSE** [1] - 1:5
**collegiality** [1] - 42:9
**Colson** [1] - 5:2
**COLSON** [1] - 2:4
**comfortable** [5] - 21:18, 21:23, 22:2, 41:22, 41:24
**coming** [5] - 6:22, 14:10, 23:20, 52:8
**commencement** [1] - 26:12
**comments** [1] - 27:11
**commercial** [1] - 31:17
**commit** [2] - 14:10, 23:15
**committed** [1] - 30:11
**committee** [1] - 6:15
**committees** [1] - 6:16
**common** [3] - 18:17, 19:24, 20:12
**compartmentalizes** [1] - 18:25
**compelling** [2] - 19:14, 38:16
**complain** [1] - 48:20
**complaint** [41] - 7:7, 7:22, 13:1, 13:11, 13:25, 14:23, 15:17, 15:19, 16:3, 16:4, 16:9, 16:14, 16:22, 17:16, 17:22, 18:9, 18:24, 19:8, 20:20, 23:19, 25:22, 26:1, 30:10, 30:24, 32:8, 35:1, 35:10, 35:11, 39:10, 45:8, 45:14, 45:15, 45:20, 46:3, 46:23, 47:3, 47:7, 47:23, 48:2, 48:5
**complaints** [33] - 7:8, 7:22, 13:11, 13:12, 13:13, 13:15, 13:25, 14:7, 14:11, 15:15, 18:15, 18:18, 19:8, 19:13, 19:16, 20:8,

21:10, 21:11, 21:12, 21:19, 22:2, 22:10, 22:11, 24:10, 24:22, 30:25, 34:17, 40:10, 40:15, 44:6, 45:17
**complete** [1] - 53:7
**completes** [1] - 42:25
**completing** [1] - 35:21
**complex** [1] - 24:24
**complexity** [2] - 35:24, 40:22
**compliance** [1] - 32:9
**complicate** [2] - 49:6, 49:16
**component** [1] - 43:14
**conceptually** [1] - 19:10
**concerned** [1] - 25:17
**concerns** [1] - 41:15
**conclude** [1] - 51:17
**concluded** [1] - 52:10
**conditions** [1] - 38:1
**conducted** [1] - 27:25
**conducting** [1] - 27:12
**confer** [3] - 40:16, 41:5, 41:6
**CONFERENCE** [1] - 1:10
**conference** [10] - 6:2, 6:25, 34:19, 42:14, 50:11, 51:2, 51:9, 51:18, 51:25, 52:10
**confidence** [1] - 38:7
**connection** [3] - 32:6, 32:7, 32:22
**cons** [3] - 19:23, 35:8, 36:18
**consenting** [1] - 10:20
**consider** [10] - 7:21, 13:12, 35:25, 37:25, 38:1, 38:4, 38:21, 38:22, 39:21, 40:11
**consideration** [1] - 37:20
**considered** [1] - 38:23
**consistent** [1] - 15:25
**consolidate** [1] - 13:11
**consolidated** [19] - 7:7, 7:22, 13:24, 14:23, 15:17, 15:18, 16:3, 16:9, 17:15, 17:22, 18:9, 18:24, 19:8, 19:16, 45:15, 47:3, 47:7, 48:2, 48:4
**CONSTELLATION** [1] - 2:11
**consult** [1] - 23:13
**contact** [1] - 41:10

contacted [1] - 26:4
contemplated [1] - 50:11
contest [1] - 10:24
contesting [1] - 10:21
continue [1] - 27:14
convolution [1] - 19:20
cooperatively [1] - 13:22
coordinate [6] - 11:20, 22:15, 22:18, 23:6, 41:13, 41:17
copies [1] - 49:24
CORAL [2] - 1:23, 2:5
core [1] - 27:23
Corporation [1] - 9:14
correct [7] - 10:22, 10:25, 12:12, 12:22, 33:19, 44:13, 45:2
counsel [41] - 4:4, 4:8, 4:19, 5:23, 6:12, 6:15, 6:24, 7:11, 7:12, 8:13, 9:22, 11:23, 13:2, 13:7, 13:22, 13:23, 19:4, 20:5, 20:23, 22:14, 23:9, 30:18, 34:18, 39:15, 39:19, 39:25, 40:11, 40:14, 40:22, 40:23, 40:24, 41:9, 41:16, 41:19, 42:4, 42:22, 43:12, 43:16, 45:5, 50:14, 50:17
counsel's [1] - 22:23
count [1] - 17:23
counts [2] - 18:10
couple [2] - 23:17, 31:9
course [1] - 6:17
Court [44] - 4:7, 7:3, 7:17, 7:21, 7:25, 8:3, 8:4, 15:3, 15:5, 15:14, 15:18, 15:20, 17:18, 18:14, 20:3, 20:17, 24:21, 24:24, 25:5, 27:24, 29:20, 31:8, 33:22, 36:6, 36:12, 36:15, 37:25, 38:20, 38:23, 39:21, 42:7, 44:20, 44:22, 46:1, 46:2, 46:3, 46:12, 46:19, 46:22, 47:25, 49:11, 50:4, 50:14, 51:19
court [4] - 6:21, 9:24, 17:2, 36:22
COURT [99] - 1:1, 4:2, 4:11, 4:18, 5:25, 8:9, 8:22, 9:2, 9:5, 9:9,

9:15, 10:2, 10:10, 10:15, 10:18, 10:23, 11:1, 11:10, 11:16, 12:11, 12:14, 12:20, 12:23, 13:3, 13:8, 14:1, 14:14, 14:19, 14:24, 16:2, 16:8, 16:23, 17:2, 17:9, 18:20, 19:4, 19:22, 21:1, 21:9, 21:18, 21:21, 21:23, 22:6, 22:8, 22:20, 23:4, 23:14, 23:17, 24:14, 24:17, 25:13, 26:22, 27:8, 28:2, 31:5, 33:4, 33:24, 34:3, 34:7, 35:2, 35:7, 36:16, 36:21, 39:1, 39:23, 40:19, 41:22, 42:2, 42:8, 43:2, 43:6, 43:24, 44:10, 44:14, 44:25, 45:3, 45:12, 46:14, 46:20, 47:13, 47:16, 47:19, 48:6, 48:9, 48:11, 48:13, 48:20, 49:2, 49:5, 49:16, 49:20, 50:5, 50:8, 50:16, 51:6, 51:10, 51:20, 52:5, 52:7
Court's [7] - 8:5, 15:22, 15:25, 20:7, 25:12, 47:25, 50:2
courts [2] - 8:2, 25:9
criminal [9] - 25:18, 26:5, 26:9, 26:16, 29:24, 30:20, 31:2, 43:7, 43:11
Cryptocurrency [1] - 4:3
CRYPTOCURRENCY [1] - 1:4
current [3] - 38:19, 43:15, 47:1
Curry [1] - 9:12

D

Dan [1] - 32:9
dark [1] - 14:9
date [2] - 47:4, 49:13
dated [1] - 53:10
dates [3] - 43:12, 43:15, 43:18
DAVID [4] - 1:13, 2:4, 2:7, 2:11
David [10] - 4:7, 5:3, 5:6, 5:10, 7:3, 9:11, 9:14, 26:2, 39:13, 40:8

days [27] - 10:17, 10:18, 10:19, 10:23, 11:11, 14:2, 14:14, 15:1, 15:16, 16:6, 16:8, 21:21, 22:3, 22:9, 22:10, 22:11, 22:17, 22:25, 23:3, 34:11, 46:25, 47:4, 47:6, 48:10, 49:13
DE [1] - 1:22
deadline [2] - 12:18, 48:15
deal [4] - 18:16, 26:14, 39:19, 42:5
dealing [2] - 41:1, 41:10
decide [8] - 11:12, 25:6, 37:15, 39:6, 46:2, 46:13, 46:19, 49:14
decided [3] - 28:14, 44:22, 45:25
decision [3] - 14:17, 25:4, 52:2
decisions [1] - 36:9
declaration [1] - 32:8
DEFENDANT [4] - 2:1, 2:13, 2:17, 2:22
defendant [11] - 5:20, 18:2, 18:5, 18:8, 19:25, 20:4, 26:9, 27:10, 40:11, 40:12, 40:24
defendant-group [1] - 40:12
defendants [78] - 7:14, 7:24, 8:21, 8:23, 9:1, 9:4, 9:18, 9:25, 10:3, 10:6, 11:21, 12:1, 12:6, 12:16, 13:17, 14:8, 15:13, 16:13, 16:17, 16:21, 17:23, 18:12, 18:22, 19:1, 19:3, 19:19, 20:13, 20:14, 20:15, 20:25, 21:3, 21:7, 21:13, 21:17, 22:13, 23:9, 26:13, 26:20, 27:14, 28:5, 28:9, 28:17, 28:23, 29:2, 29:4, 29:7, 31:11, 31:15, 32:2, 34:2, 34:6, 34:10, 34:12, 34:14, 35:10, 38:13, 39:17, 40:2, 40:8, 40:10, 41:14, 41:15, 45:17, 47:8, 48:3, 48:16, 48:18, 49:7, 49:9, 49:14,

49:19, 49:24, 51:8
DEFENDANTS [3] - 2:3, 2:6, 2:10
defendants' [3] - 7:12, 20:23, 39:15
defense [14] - 4:22, 8:13, 13:7, 17:8, 19:4, 21:23, 31:5, 40:14, 40:21, 40:22, 40:23, 42:21, 43:2, 43:13
defenses [1] - 12:3
defer [1] - 36:15
delay [1] - 26:12
delaying [1] - 28:13
demand [1] - 44:11
demonstrate [1] - 24:7
denied [4] - 45:9, 46:17, 47:15, 47:19
deny [3] - 45:3, 47:16, 47:17
deposition [1] - 44:18
depositions [3] - 25:2, 26:24, 27:19
derivative [1] - 30:4
desirable [1] - 36:6
detail [1] - 32:10
details [1] - 19:9
determination [1] - 47:25
devil [1] - 19:9
devote [1] - 35:25
difference [6] - 10:3, 10:5, 16:11, 17:18, 20:5, 32:18
differences [1] - 32:4
different [11] - 8:2, 16:13, 16:22, 18:25, 20:21, 20:24, 22:13, 25:9, 25:10, 41:11, 46:7
differently [4] - 8:2, 12:1, 34:13, 44:7
difficult [2] - 42:11, 42:13
diligence [3] - 23:23, 24:1, 24:7
disagree [1] - 40:20
disagreement [1] - 8:17
disclosures [1] - 25:1
discovery [91] - 8:1, 8:4, 8:6, 20:12, 24:12, 24:15, 24:23, 24:25, 25:3, 25:8, 25:10, 26:7, 26:13, 26:17, 26:18, 26:21, 26:23, 27:1, 27:7, 27:12, 27:15, 27:17, 27:21, 27:24, 28:10,

28:13, 28:18, 28:21, 28:23, 29:22, 30:5, 30:6, 30:14, 30:15, 30:19, 30:21, 31:16, 32:20, 32:21, 32:24, 33:6, 33:11, 33:16, 33:20, 33:21, 34:2, 34:4, 34:7, 34:14, 34:18, 34:25, 35:4, 35:11, 35:13, 35:15, 36:11, 36:25, 38:24, 39:3, 39:4, 39:7, 39:10, 44:4, 44:11, 44:17, 44:20, 44:21, 44:23, 45:4, 45:21, 46:8, 46:11, 47:4, 47:8, 47:11, 47:17, 47:21, 48:1, 48:18, 48:19, 48:23, 48:25, 49:7, 49:8, 49:9
discrete [1] - 37:9
discuss [4] - 7:6, 13:21, 36:1, 50:13
discussed [1] - 43:5
discussing [2] - 7:10, 38:19
discussion [3] - 6:7, 11:2, 34:22
discussions [3] - 10:13, 34:18, 51:11
disinclined [1] - 33:5
dismiss [28] - 7:9, 13:18, 19:14, 20:16, 22:5, 22:16, 23:22, 24:20, 25:5, 25:7, 25:11, 27:16, 27:22, 27:25, 28:7, 28:13, 28:18, 29:14, 30:25, 32:5, 32:19, 36:9, 36:22, 38:16, 39:5, 40:2, 45:25
dismissed [1] - 24:22
disparate [1] - 37:2
dispose [1] - 19:18
dispositive [3] - 28:8, 29:14, 36:23
distinct [3] - 16:11, 19:25, 21:7
District [2] - 11:7, 43:11
district [1] - 15:11
DISTRICT [3] - 1:1, 1:2, 1:11
divide [1] - 36:13
dividends [1] - 20:9
DIVISION [1] - 1:2
Docket [1] - 6:11
docket [2] - 46:14, 51:24

**docketed** [1] - 13:4
**document** [1] - 24:25
**documents** [2] - 49:25, 50:1
**dollars** [1] - 29:6
**done** [9] - 15:16, 17:24, 23:3, 31:23, 31:25, 34:11, 41:13, 44:8
**down** [2] - 22:2, 28:5
**dozens** [1] - 41:11
**DRYLEWSKI** [1] - 2:17
**DRYLEWSKY** [1] - 5:14
**Drylewsky** [1] - 5:15
**due** [3] - 12:24, 12:25, 23:23
**during** [4] - 25:7, 25:20, 26:21, 33:6

**E**

**early** [1] - 22:23
**ease** [1] - 13:6
**easier** [1] - 49:10
**economy** [1] - 16:19
**EDWARD** [1] - 2:1
**effective** [1] - 47:2
**effectively** [1] - 30:19
**efficiency** [3] - 16:19, 17:24, 22:15
**efficient** [2] - 17:21, 18:13
**effort** [1] - 23:16
**efforts** [1] - 23:8
**EIDSON** [1] - 2:4
**Eidson** [1] - 5:2
**eight** [1] - 37:21
**either** [9] - 7:14, 9:22, 10:20, 15:2, 15:9, 19:7, 19:10, 20:6, 51:7
**elements** [1] - 29:12
**Eleventh** [1] - 28:20
**Ellis** [1] - 5:20
**ELLIS** [1] - 2:23
**employee** [1] - 32:14
**employees** [1] - 16:15
**encompass** [1] - 14:12
**end** [5] - 35:21, 37:6, 37:17, 40:3, 43:20
**endeavor** [1] - 29:18
**engaged** [1] - 48:17
**entered** [1] - 50:20
**entertain** [1] - 37:23
**entertainer** [1] - 34:2, 34:10, 48:16, 49:19, 49:24

**entertainment** [16] - 8:21, 9:1, 9:6, 9:18, 9:25, 15:12, 16:12, 16:16, 16:21, 17:8, 18:2, 18:22, 21:3, 27:14, 34:5, 38:13
**ENTIN** [3] - 3:2, 53:4, 53:15
**entirely** [2] - 24:22, 36:15
**entirety** [1] - 16:5
**entities** [2] - 21:8, 22:14
**entity** [1] - 28:15
**Entry** [1] - 6:11
**envisioning** [1] - 44:10
**especially** [2] - 38:15
**ESQ** [16] - 1:13, 1:14, 1:17, 1:17, 1:18, 1:21, 1:21, 2:1, 2:3, 2:6, 2:10, 2:13, 2:17, 2:20, 2:22, 2:25
**essentially** [5] - 9:20, 11:6, 16:21, 27:19, 38:20
**evaluate** [2] - 10:1, 19:7
**evaluating** [1] - 9:20
**event** [2] - 4:20, 25:2
**exactly** [1] - 36:13
**example** [2] - 32:5, 41:5, 42:10
**excellent** [1] - 11:15
**except** [1] - 50:10
**EXCHANGE** [1] - 1:5
**Exchange** [1] - 4:3
**excuse** [2] - 16:20, 24:13
**expect** [2] - 35:25, 50:25
**expedited** [1] - 28:1
**expeditiously** [1] - 10:14
**expenses** [1] - 28:17
**experience** [1] - 34:25
**extremely** [2] - 28:19, 41:7

**F**

**face** [1] - 29:10
**facilitate** [1] - 22:17
**fact** [5] - 12:5, 23:8, 30:18, 35:9, 45:10
**factor** [2] - 29:21, 29:23
**facts** [3] - 29:11, 32:18, 32:23
**factual** [2] - 16:11,

32:3
**fail** [1] - 29:2
**fair** [2] - 8:23, 51:15
**fairly** [1] - 10:14
**fairness** [1] - 27:5
**faith** [1] - 38:7
**falls** [1] - 28:19
**familiar** [2] - 27:18, 51:21
**far** [5] - 22:8, 25:16, 29:1, 41:13, 41:16
**fashion** [1] - 30:6
**favor** [1] - 35:11
**few** [1] - 23:9
**fight** [2] - 7:16, 27:9
**file** [26] - 7:16, 14:6, 15:4, 15:10, 15:14, 15:18, 16:8, 19:16, 32:19, 33:18, 35:3, 45:15, 47:2, 47:3, 47:6, 47:7, 47:21, 47:22, 48:1, 48:6, 48:7, 48:9, 49:9, 49:12, 49:17
**filed** [15] - 9:19, 9:23, 11:4, 11:7, 11:8, 12:17, 13:14, 13:15, 14:13, 21:11, 30:24, 33:15, 33:21, 46:24, 49:17
**filing** [8] - 7:7, 7:21, 13:24, 20:16, 20:20, 22:10, 22:11, 44:6
**filings** [1] - 8:1
**finally** [3] - 30:17, 31:20, 50:1
**financial** [1] - 16:15
**fine** [2] - 4:21, 24:1
**FIRM** [1] - 1:18
**firm** [3] - 18:3, 18:4, 21:5
**Firm** [1] - 4:13
**firms** [2] - 18:8, 41:11
**first** [13] - 6:2, 7:4, 13:23, 23:17, 24:2, 24:7, 28:25, 31:15, 34:22, 39:18, 40:15, 41:18, 44:3
**five** [6] - 20:24, 21:11, 21:13, 21:19, 37:6, 43:19
**FL** [5] - 1:23, 2:2, 2:5, 2:8, 2:21
**flag** [1] - 50:2
**FLEXNER** [1] - 1:14
**Flexner** [1] - 4:7
**floor** [1] - 42:14
**FLORIDA** [3] - 1:2, 1:16, 1:20
**Florida** [3] - 1:4,

32:15, 53:4
**FLOWER** [1] - 2:23
**focus** [2] - 20:17, 39:16
**folks** [2] - 23:10
**follow** [2] - 12:14, 44:6, 50:11, 50:18
**follow-up** [2] - 50:11, 50:18
**following** [4] - 4:1, 50:20
**Footnote** [1] - 32:13
**FOR** [1] - 1:13
**forcing** [1] - 28:16
**foregoing** [1] - 53:6
**foreign** [1] - 21:8
**formalized** [1] - 40:14
**formally** [1] - 40:13
**forward** [5] - 25:4, 27:17, 31:13, 38:9, 46:5
**founded** [2] - 28:19, 29:13
**foyer** [1] - 42:18
**FPR** [2] - 3:2, 53:15
**frame** [3] - 10:10, 14:1, 15:23
**frankly** [2] - 30:9, 47:11
**fraud** [7] - 29:4, 30:4, 30:5, 30:8, 30:11, 30:16, 30:22
**frees** [1] - 13:5
**Friday** [2] - 12:18, 13:1
**FRIED** [1] - 2:1
**Fried** [11] - 4:25, 25:15, 26:3, 26:6, 26:15, 26:22, 27:7, 29:25, 30:10, 31:4, 45:4
**Fried's** [1] - 49:21
**Friedberg** [1] - 32:9
**front** [2] - 15:3, 17:3
**FT** [1] - 2:8
**FTX** [12] - 1:4, 4:2, 16:14, 18:1, 28:15, 29:4, 30:4, 30:22, 32:9, 32:15, 33:10
**full** [2] - 30:15, 38:7
**fully** [2] - 33:17, 36:21
**Furst** [2] - 4:15, 4:16
**FURST** [3] - 1:21, 1:22, 4:15
**future** [1] - 45:4

**G**

**GABLES** [2] - 1:23, 2:5

**Garrison** [5] - 27:18, 28:6, 33:15, 34:1, 45:10
**Gelber** [1] - 4:24
**GELBER** [1] - 2:1
**generic** [1] - 26:18
**Gerald** [3] - 4:23, 25:14, 43:3
**GERALD** [1] - 2:1
**germane** [1] - 19:2
**get-together** [1] - 6:2
**Gisele** [3] - 5:2, 5:10, 9:11
**GISELE** [2] - 2:4, 2:11
**given** [6] - 6:7, 7:13, 16:11, 35:24, 38:15, 38:18
**Golden** [2] - 5:3, 9:11
**GOLDEN** [1] - 2:4
**Gottlieb** [2] - 5:12, 11:19
**GOTTLIEB** [1] - 2:14
**government** [1] - 27:4
**grant** [1] - 47:14
**GRAY** [1] - 2:20
**GrayRobinson** [1] - 5:17
**great** [2] - 17:12, 26:14
**GREENBERG** [7] - 2:1, 2:1, 4:23, 25:14, 43:3, 43:10, 44:1
**Greenberg** [4] - 4:24, 25:14, 43:3
**grounds** [2] - 13:19, 20:18
**group** [9] - 10:2, 11:22, 12:5, 20:14, 21:8, 21:12, 34:15, 40:11, 40:12
**groupings** [1] - 40:16
**groups** [11] - 18:9, 18:11, 19:25, 20:1, 20:4, 20:9, 20:25, 21:14, 39:17, 40:9, 40:24
**guess** [1] - 36:18
**guidance** [2] - 8:3, 15:22
**guy** [1] - 31:16

**H**

**hac** [1] - 51:21
**hallway** [1] - 42:18
**HAMILTON** [1] - 2:14
**Hamilton** [1] - 5:12
**hand** [1] - 25:9
**handle** [2] - 17:18, 37:10

handled [2] - 18:9, 32:1
handling [2] - 26:5, 43:16
happy [6] - 13:12, 13:21, 27:10, 29:19, 37:25, 49:12
harm [1] - 28:12
harmed [1] - 47:5
hash [1] - 27:8
HASLEM [1] - 2:7
Haslem [3] - 5:6, 9:13, 28:4
hate [1] - 22:22
hear [6] - 6:12, 6:23, 8:12, 8:16, 14:5, 33:1
heard [6] - 11:23, 14:6, 14:11, 29:23, 34:16, 52:7
hearing [6] - 4:1, 8:21, 20:5, 21:25, 50:21, 52:3
heart [1] - 30:21
heat [2] - 36:11, 38:25
held [1] - 4:1
help [5] - 16:5, 20:3, 20:17, 37:13, 49:15
helpful [10] - 8:9, 17:4, 36:3, 37:8, 38:9, 39:14, 39:20, 39:22, 40:17, 43:6
herded [1] - 41:4
hesitant [1] - 14:10
Hicks [1] - 5:2
HICKS [1] - 2:4
hold [1] - 39:1
home [2] - 7:16, 15:11
Honor [84] - 4:6, 4:12, 4:15, 4:23, 5:1, 5:5, 5:8, 5:11, 5:19, 5:22, 7:2, 7:23, 8:19, 11:14, 11:18, 12:13, 13:9, 14:5, 14:21, 16:7, 16:10, 17:12, 18:21, 19:1, 19:6, 20:22, 21:20, 21:22, 22:1, 22:7, 22:12, 23:7, 24:13, 24:16, 24:19, 26:2, 27:13, 27:18, 28:22, 31:8, 32:3, 32:7, 33:3, 33:14, 34:9, 34:13, 35:5, 36:5, 36:20, 38:12, 39:13, 39:24, 40:7, 40:9, 40:20, 41:12, 41:21, 41:25, 43:1, 43:3, 43:10, 44:2, 44:5, 44:7, 44:16, 45:2, 45:6,

45:13, 46:21, 47:15, 47:24, 48:10, 48:12, 48:22, 49:4, 49:6, 49:18, 50:7, 50:10, 51:5, 51:7, 51:16, 52:4, 52:6
honor [1] - 49:12
Honor's [2] - 11:20, 34:20
HONORABLE [1] - 1:10
hopefully [1] - 22:9
horizon [1] - 37:3
housekeeping [3] - 12:4, 16:23, 50:10
HOWARD [1] - 1:17
Howard [1] - 4:14
huddle [1] - 42:18
huge [1] - 17:17
hundreds [1] - 29:6
hurt [1] - 28:16
hypothetical [1] - 31:13

**I**

idea [2] - 23:22, 37:4
identify [3] - 9:10, 16:24, 17:5
immediately [1] - 15:9
implausible [1] - 29:9
important [4] - 13:17, 19:11, 32:11, 32:20
impression [1] - 32:21
IN [1] - 1:4
inappropriate [1] - 36:3
include [2] - 11:3, 30:12
including [2] - 12:4, 23:10
inconvenience [1] - 50:23
incorporate [1] - 50:19
incredibly [1] - 30:13
incur [1] - 28:17
indeed [2] - 26:4, 26:14
indicated [2] - 7:3, 26:6
individual [9] - 8:15, 13:16, 17:13, 17:23, 18:8, 28:9, 28:17, 38:6, 38:8
individually [1] - 42:5
individuals [1] - 28:6
informal [1] - 51:11
informally [2] - 41:18, 42:23

information [2] - 6:13, 26:14
initial [4] - 7:6, 8:7, 14:4, 25:1
input [1] - 38:10
inquire [1] - 51:17
insider [1] - 21:4
insiders [2] - 29:5, 30:4
instance [7] - 11:7, 13:23, 24:2, 24:8, 34:23, 40:18, 41:19
institutions [1] - 28:5
instruction [1] - 11:20
intend [2] - 12:2, 36:12
interdistrict [1] - 12:9
interim [2] - 41:8, 41:9
international [1] - 43:13
interrogatories [1] - 24:25
intervention [1] - 51:13
invested [1] - 29:7
investment [1] - 51:25
investor [14] - 11:21, 12:1, 12:6, 13:17, 19:18, 21:4, 22:13, 23:9, 28:23, 29:2, 29:3, 29:7, 41:14, 48:18
investors [3] - 18:3, 30:11, 30:12
invite [1] - 42:16
involved [1] - 22:19
issue [40] - 7:4, 7:25, 8:2, 8:13, 9:25, 10:20, 11:17, 14:22, 14:23, 15:10, 15:11, 17:9, 17:10, 22:9, 24:10, 24:14, 30:8, 33:8, 34:8, 35:8, 35:13, 37:10, 37:21, 39:3, 39:4, 39:5, 39:7, 40:17, 41:18, 41:19, 42:22, 42:24, 49:1, 49:12, 49:19, 49:25, 50:10, 50:18, 50:19, 51:1
issues [50] - 6:6, 6:19, 6:22, 7:10, 7:14, 7:19, 8:7, 8:8, 8:10, 8:11, 8:15, 10:11, 12:3, 12:4, 13:10, 13:19, 14:21, 17:13, 17:14, 17:25, 18:1, 18:4, 18:6, 18:11, 19:2, 19:9, 19:24, 19:25, 20:3, 20:12,

29:13, 29:16, 29:19, 30:1, 30:2, 30:22, 34:22, 36:25, 37:5, 39:9, 39:13, 39:19, 41:1, 42:25, 49:16, 50:3, 50:13, 50:22, 50:24, 51:12
Item [1] - 50:2

**J**

Jessica [2] - 5:8, 40:7
JESSICA [1] - 2:10
JOHN [1] - 1:21
John [1] - 4:16
joint [1] - 12:17
jointly [1] - 51:25
Joseph [1] - 4:14
JOSEPH [1] - 1:18
Judge [6] - 5:14, 12:7, 12:21, 32:25, 33:11, 37:14
judge [6] - 35:19, 35:20, 35:21, 37:7, 37:10, 45:6
JUDGE [1] - 1:11
judge's [1] - 46:3
judgment [1] - 46:4
judicial [3] - 37:12, 37:17, 51:13
juncture [2] - 38:24, 40:5
June [3] - 1:6, 37:6, 53:10
jurisdiction [23] - 7:10, 7:13, 7:15, 7:19, 8:13, 9:16, 9:18, 9:19, 10:19, 10:24, 11:24, 12:2, 13:10, 13:19, 14:22, 14:25, 15:3, 15:4, 15:11, 22:10, 24:10, 29:16, 39:10
jurisdictional [1] - 33:20
jurisdictions [1] - 9:23

**K**

Kauffmann [1] - 5:23
KAUFFMANN [2] - 2:25, 5:22
KAYE [1] - 1:18
Kaye [1] - 4:14
keep [3] - 17:3, 24:3, 36:23
keeping [1] - 36:21
kept [1] - 30:9
Kevin [1] - 9:13
key [4] - 8:7, 29:21

kind [10] - 10:10, 24:24, 27:20, 32:15, 35:23, 39:2, 39:3, 42:21, 44:16, 44:23
KIRKLAND [1] - 2:23
Kirkland [1] - 5:20
knows [1] - 46:25
Kroeger [9] - 5:1, 8:20, 17:7, 18:21, 22:1, 27:13, 38:12, 39:24, 44:2
KROEGER [24] - 2:3, 5:1, 8:19, 8:25, 9:3, 9:8, 9:10, 9:17, 10:5, 10:12, 10:16, 10:22, 10:25, 11:5, 16:10, 17:1, 17:7, 18:21, 22:1, 27:13, 38:12, 39:24, 44:2, 44:13

**L**

laid [1] - 33:25
large [2] - 12:5, 28:5
Large [1] - 53:5
larger [2] - 18:16, 42:17
LARRY [1] - 2:11
Larry [1] - 5:10
LAS [1] - 2:7
last [1] - 32:13
LATHAM [1] - 2:10
Latham [1] - 5:9
LAUDERDALE [1] - 2:8
Law [1] - 4:13
law [3] - 29:2, 29:21, 41:11
LAW [1] - 1:18
Lawrence [3] - 5:3, 9:11, 9:13
LAWRENCE [1] - 2:4
lawyer's [1] - 42:14
lawyers [4] - 18:7, 41:3, 41:11, 42:5
lead [2] - 6:15, 50:17
leading [1] - 39:3
learned [1] - 32:23
least [7] - 6:19, 24:5, 35:3, 35:9, 35:12, 40:24, 43:17
leaves [1] - 37:11
legal [1] - 16:11
length [1] - 20:6
lengthy [1] - 7:15
LEON [1] - 1:22
letter [2] - 51:19, 51:20
liaison [10] - 39:15, 39:19, 39:25, 40:11,

40:14, 40:22, 40:23, 41:9, 42:3, 42:21
**liaisons** [1] - 40:21
**LIBERTY** [1] - 2:15
**likely** [3] - 6:17, 38:17, 38:25
**limbo** [3] - 44:17, 44:24, 47:5
**lines** [1] - 22:3
**literally** [1] - 41:10
**litigating** [1] - 31:10
**LITIGATION** [1] - 1:5
**Litigation** [1] - 4:3
**litigation** [4] - 6:3, 6:18, 16:5, 38:9
**live** [1] - 14:1
**LLP** [6] - 1:14, 2:7, 2:14, 5:6, 28:3, 33:15
**local** [2] - 5:23, 51:21
**logistical** [1] - 50:24
**look** [7] - 21:16, 31:13, 32:12, 34:17, 36:16, 37:23, 41:3
**looked** [1] - 20:2
**looking** [3] - 8:3, 31:13, 37:21
**LOS** [2] - 2:12, 2:24
**lost** [1] - 29:7
**LP** [3] - 2:18, 5:16, 5:18

## M

**Maderal** [1] - 4:16
**MADERAL** [1] - 1:22
**Magistrate** [2] - 31:22, 32:1
**magistrate** [12] - 33:1, 35:19, 35:20, 35:21, 36:8, 36:13, 36:14, 37:4, 37:7, 37:10, 46:9, 49:1
**magistrates** [1] - 31:23
**main** [1] - 30:16
**manage** [1] - 16:5
**management** [2] - 17:22, 17:25
**MANHATTAN** [1] - 2:18
**map** [1] - 6:4
**March** [2] - 31:3, 43:15
**Martinez** [2] - 12:7, 12:21
**MARY** [1] - 1:19
**massive** [1] - 28:12
**master** [9] - 36:1, 36:6, 36:12, 36:14, 37:22, 38:2, 38:14,

38:23, 46:9
**masters** [1] - 36:7
**matter** [5] - 13:14, 28:1, 29:2, 36:24, 43:7
**matters** [2] - 6:25, 25:15
**MDL** [16] - 6:3, 7:13, 8:4, 12:15, 15:18, 19:20, 20:11, 23:12, 32:22, 33:17, 33:23, 39:20, 40:3, 44:19, 44:23, 45:16
**MDLs** [4] - 36:7, 40:13, 40:20, 40:21
**mean** [4] - 9:7, 31:12, 37:14, 46:15
**means** [1] - 42:20
**meet** [3] - 40:16, 41:5, 41:6
**mentioned** [4] - 16:6, 19:1, 22:4, 24:11
**merit** [3] - 27:15, 27:24, 33:21
**merits** [3] - 33:12, 38:24
**MIAMI** [4] - 1:2, 1:16, 1:20, 2:2
**Miami** [4] - 1:4, 32:6, 32:7, 32:10, 32:22
**MICHAEL** [1] - 1:10
**might** [15] - 14:4, 15:24, 17:4, 33:7, 35:18, 37:22, 38:4, 38:5, 38:6, 38:14, 38:21, 39:25, 40:6, 45:10, 49:10
**millions** [1] - 29:6
**mind** [1] - 25:24
**minds** [1] - 13:6
**minimum** [2] - 25:19, 40:12
**minor** [1] - 42:12
**moment** [1] - 51:5
**months** [8] - 23:3, 23:5, 25:4, 25:6, 26:21, 37:6, 38:20, 41:2
**MOORE** [1] - 1:10
**Moore** [1] - 5:14
**moot** [5] - 45:3, 45:9, 47:18, 47:19, 50:19
**morass** [1] - 42:4
**morning** [16] - 4:6, 4:10, 4:11, 4:12, 4:15, 4:23, 5:1, 5:5, 5:8, 5:11, 5:14, 5:19, 5:22, 6:13, 8:19, 11:25
**MOSKOWITZ** [5] -

1:17, 1:18, 4:12, 31:8, 33:10
**Moskowitz** [3] - 4:13, 31:9
**most** [6] - 18:13, 31:15, 32:4, 40:13, 40:20, 40:21
**motion** [43] - 7:9, 12:8, 12:17, 15:14, 19:14, 20:16, 22:16, 23:22, 25:5, 25:11, 26:8, 28:18, 33:6, 33:11, 33:15, 33:18, 34:4, 35:4, 36:21, 36:23, 39:4, 44:4, 44:21, 45:1, 45:8, 45:9, 46:15, 46:18, 46:19, 46:22, 47:3, 47:7, 47:14, 47:16, 47:17, 47:25, 48:6, 48:7, 48:9, 48:17, 48:24, 49:9
**motions** [31] - 7:20, 8:5, 9:19, 13:18, 15:15, 20:18, 22:4, 24:20, 25:6, 27:16, 27:22, 27:25, 28:7, 28:13, 29:13, 29:14, 30:25, 32:19, 36:9, 38:16, 38:21, 38:23, 40:2, 43:13, 45:19, 45:25, 46:1, 46:6, 46:12, 47:21, 49:11
**move** [3] - 15:13, 25:17, 51:13
**moved** [1] - 25:17
**moving** [4] - 16:6, 24:5, 35:13, 38:9
**MR** [112] - 4:6, 4:10, 4:12, 4:23, 5:1, 5:5, 5:11, 5:14, 5:17, 7:2, 8:19, 8:25, 9:3, 9:8, 9:10, 9:17, 10:5, 10:12, 10:16, 10:22, 10:25, 11:5, 11:14, 11:18, 12:12, 12:16, 12:22, 12:25, 13:6, 13:9, 14:3, 14:16, 14:21, 14:25, 16:7, 16:10, 17:1, 17:7, 17:12, 18:21, 19:6, 20:22, 21:2, 21:10, 21:20, 21:22, 22:1, 22:7, 22:12, 22:22, 23:5, 23:7, 23:15, 24:13, 24:16, 24:19, 25:14, 26:2, 26:25, 27:13, 28:3, 28:22, 31:8, 33:10, 33:14, 33:25, 34:5, 34:9,

34:13, 35:5, 36:5, 36:20, 38:12, 39:12, 39:24, 40:20, 41:12, 41:25, 42:3, 42:25, 43:3, 43:10, 44:1, 44:2, 44:13, 44:15, 44:16, 45:2, 45:6, 45:13, 46:17, 46:21, 47:15, 47:17, 47:24, 48:7, 48:10, 48:12, 48:14, 48:21, 48:22, 49:4, 49:6, 49:18, 49:21, 50:7, 50:9, 51:5, 51:7, 51:16, 52:4, 52:6
**MS** [4] - 4:15, 5:19, 5:22, 40:7

## N

**name** [4] - 4:4, 16:24, 17:5, 37:24
**named** [2] - 12:6, 23:11
**names** [2] - 37:24, 38:3
**NAOMI** [1] - 2:5
**Naomi** [2] - 5:4, 9:12
**narrowed** [1] - 38:18
**nature** [1] - 43:22
**necessary** [6] - 11:22, 36:3, 40:17, 50:11, 51:2, 51:8
**need** [17] - 10:12, 11:2, 13:13, 13:22, 14:4, 15:18, 22:25, 23:23, 41:6, 41:9, 42:3, 42:16, 48:4, 51:3, 51:4, 51:12, 52:2
**needing** [1] - 50:14
**needs** [2] - 26:12, 42:11
**neutral** [1] - 42:16
**never** [1] - 45:6
**NEW** [3] - 2:15, 2:19
**New** [1] - 43:11
**new** [5] - 14:7, 28:25, 46:18, 46:22, 47:21
**next** [14] - 24:11, 24:14, 25:4, 26:21, 37:15, 39:11, 41:2, 41:21, 42:24, 43:21, 50:12, 50:15, 51:2, 51:8
**NO** [1] - 1:3
**non** [1] - 21:8
**non-U.S** [1] - 21:8
**none** [2] - 12:3, 20:22
**normal** [1] - 33:5

**normally** [2] - 33:4, 33:5
**Northern** [1] - 11:7
**notes** [1] - 53:8
**nothing** [8] - 28:15, 31:16, 31:17, 47:4, 48:20, 50:7, 50:9, 52:8
**notice** [1] - 8:1
**notices** [1] - 44:18
**novel** [1] - 28:6
**November** [3] - 35:22, 36:9, 37:18
**number** [7] - 4:18, 6:6, 8:11, 22:13, 22:18, 41:3, 51:24
**Number** [1] - 6:11
**NY** [1] - 2:15

## O

**O'Keefe** [4] - 12:7, 12:11, 12:12, 23:11
**O'Leary** [1] - 9:13
**O'NEAL** [2] - 2:5, 2:10
**O'Neal** [4] - 5:3, 5:9, 9:12, 40:8
**object** [4] - 22:22, 23:1, 48:25, 49:3
**objected** [1] - 44:18
**objection** [8] - 16:8, 21:25, 22:20, 26:11, 31:24, 32:2, 33:1, 33:2
**obviously** [8] - 7:8, 7:20, 10:7, 25:5, 25:11, 25:25, 36:15, 50:13
**October** [2] - 31:2, 43:15
**OF** [9] - 1:2, 1:10, 2:1, 2:3, 2:6, 2:10, 2:13, 2:17, 2:22
**office** [2] - 32:11, 37:11
**Office** [5] - 26:4, 26:25, 27:5, 27:9, 29:24
**officer** [2] - 32:9, 37:12
**Ohtani** [1] - 9:13
**OLAS** [1] - 2:7
**ON** [7] - 2:1, 2:3, 2:6, 2:10, 2:13, 2:17, 2:22
**once** [7] - 19:16, 26:1, 38:23, 39:7, 47:2, 48:2
**one** [31] - 6:19, 7:18, 7:25, 8:14, 12:5,

13:12, 14:22, 15:2,
16:4, 16:10, 18:9,
20:14, 24:11, 31:16,
32:14, 32:17, 37:4,
37:19, 38:5, 40:5,
42:10, 43:18, 45:11,
45:13, 48:10, 50:4,
50:10, 52:1
**ONE** [2] - 2:15, 2:18
**ones** [1] - 48:3
**operating** [2] - 14:8,
28:15
**OPERATIONS** [1] -
2:18
**Operations** [2] - 5:15,
5:18
**operative** [5] - 45:8,
45:14, 45:16, 45:20,
46:23
**opinion** [2] - 10:3,
10:5
**opportunity** [3] - 6:7,
19:15, 37:24
**oppose** [1] - 33:21
**opposed** [2] - 33:20,
38:6
**order** [7] - 7:13, 13:4,
15:13, 38:2, 50:2,
50:11, 50:20
**organization** [1] -
39:15
**organize** [1] - 7:4
**organized** [1] - 7:23
**original** [1] - 31:18
**ORLANDO** [1] - 2:21
**Ortiz** [3] - 5:7, 9:14,
28:4
**ORTIZ** [1] - 2:7
**Osaka** [2] - 5:4, 9:12
**OSAKA** [1] - 2:5
**Otazo** [2] - 31:22,
37:14
**otherwise** [1] - 19:1
**ought** [7] - 15:1,
27:17, 45:24, 46:5,
46:11, 46:12, 48:24
**ourselves** [1] - 50:14
**outer** [1] - 30:7
**outstanding** [3] -
45:1, 45:11, 46:16
**overall** [6] - 9:1, 9:2,
17:25, 18:1, 19:24,
30:1
**overlapping** [1] -
17:13
**overwhelming** [1] -
31:19
**own** [1] - 29:5

## P

**P.A** [1] - 2:20
**pages** [2] - 18:16,
32:10
**Pages** [1] - 1:9
**panel** [1] - 30:2
**PARADIGM** [1] - 2:17
**Paradigm** [2] - 5:15,
5:18
**part** [3] - 23:12, 30:7,
50:20
**participating** [1] -
20:14
**particular** [5] - 11:16,
18:11, 20:18, 37:2
**particularly** [5] -
20:17, 22:23, 28:9,
28:17, 37:8
**parties** [10] - 6:4, 6:8,
19:22, 22:19, 24:4,
25:1, 34:22, 36:2,
37:23, 51:25
**partner** [2] - 4:8, 4:16
**partners** [1] - 4:14
**party** [1] - 29:11
**pay** [1] - 20:9
**peek** [2] - 33:12, 46:2
**peeked** [1] - 33:12
**peg** [1] - 14:18
**pending** [10] - 8:1,
8:5, 12:7, 12:8,
12:20, 25:18, 27:15,
27:22, 39:4, 45:10
**people** [1] - 26:10
**perhaps** [5] - 7:9,
15:23, 18:23, 27:25
**period** [4] - 14:5, 15:8,
15:23, 25:7
**permission** [1] - 34:21
**person** [2] - 36:19,
38:5
**personal** [7] - 7:10,
7:13, 7:15, 7:18,
8:13, 9:15, 9:17,
9:19, 10:19, 10:24,
11:24, 12:2, 13:10,
13:19, 14:22, 14:25,
15:3, 15:11, 22:9,
24:10, 29:15, 39:9
**personally** [1] - 37:4
**perspective** [4] -
12:10, 19:11, 27:2,
38:13
**PH** [1] - 2:4
**phase** [1] - 38:18
**piecemeal** [1] - 30:6
**PINE** [1] - 2:21
**Pittenger** [1] - 5:17
**PITTENGER** [2] - 2:20,

5:17
**place** [2] - 33:1, 45:24
**plaintiff** [2] - 4:5,
49:23
**PLAINTIFF** [1] - 1:13
**plaintiffs** [25] - 4:8,
4:19, 7:4, 12:16,
14:4, 14:5, 14:16,
15:16, 25:21, 27:19,
28:10, 28:12, 29:5,
30:20, 30:23, 32:14,
33:20, 33:21, 40:16,
47:2, 47:6, 49:7,
49:13, 50:7, 51:7
**plaintiffs'** [23] - 6:11,
6:12, 6:14, 6:15,
6:16, 6:21, 6:23,
7:11, 9:22, 11:23,
13:2, 13:21, 13:23,
17:11, 20:5, 21:15,
34:18, 39:14, 41:16,
45:5, 50:13, 50:17
**plan** [1] - 14:6
**players** [1] - 30:16
**PLAZA** [1] - 2:15
**plead** [1] - 29:11
**pleadings** [3] - 29:3,
47:1, 47:2
**pled** [1] - 26:10
**PLLC** [1] - 1:22
**PM** [1] - 1:7
**point** [12] - 25:23,
32:3, 35:15, 35:18,
38:11, 38:15, 39:1,
40:1, 42:12, 43:19,
44:12, 46:11
**pointed** [1] - 19:22
**points** [5] - 23:17,
28:24, 31:9, 32:4,
44:3
**PONCE** [1] - 1:22
**position** [5] - 27:1,
27:23, 28:23, 44:20,
45:24
**possible** [2] - 9:21,
29:19
**possibly** [1] - 21:12
**potentially** [2] - 10:9,
40:12
**practical** [1] - 18:23
**practice** [4] - 15:14,
36:24, 45:16, 48:18
**prefer** [2] - 18:14,
51:23
**preferable** [2] - 16:3,
20:8
**preference** [1] - 25:12
**prejudge** [1] - 24:20
**prejudice** [2] - 30:17,
30:23

**prejudicial** [1] - 30:13
**preliminary** [6] - 6:11,
6:24, 7:3, 16:18,
49:21, 49:23
**premature** [6] - 35:14,
37:3, 38:15, 40:1,
40:6, 40:25
**prepared** [1] - 8:16
**present** [3] - 15:5,
16:16, 26:19
**presents** [1] - 41:19
**preserve** [1] - 13:18
**previously** [4] - 9:19,
10:6, 10:8, 48:17
**primary** [1] - 39:12
**pro** [1] - 51:21
**problem** [6] - 20:19,
22:6, 27:2, 45:12,
45:13, 46:17
**procedural** [2] -
19:19, 47:5
**proceed** [4] - 8:6,
8:17, 10:9, 38:18
**proceeding** [5] -
17:19, 25:20, 26:16,
30:6, 30:14
**proceedings** [4] -
25:18, 30:21, 31:3,
53:6
**process** [1] - 22:24
**professional** [1] - 21:6
**professionalism** [1] -
42:9
**progress** [1] - 50:12
**prohibited** [1] - 51:22
**promote** [1] - 16:19
**promoter** [1] - 21:3
**proper** [1] - 32:24
**proposal** [5] - 13:11,
13:24, 14:6, 19:7,
42:7
**proposals** [1] - 11:24
**propose** [1] - 16:7
**proposed** [1] - 40:9
**pros** [3] - 19:23, 35:8,
36:17
**prosecution** [2] -
26:5, 31:2
**prosecutions** [1] -
29:24
**proves** [1] - 42:23
**provide** [2] - 37:13,
37:22
**provided** [2] - 6:13,
27:3
**providing** [1] - 27:3
**provisions** [1] - 49:22
**punted** [2] - 33:16,
42:21
**purely** [1] - 13:14

**purpose** [1] - 42:17
**purposes** [3] - 8:21,
16:23, 22:8
**pursue** [1] - 35:15
**pursued** [2] - 10:6,
10:8
**push** [1] - 35:12
**put** [1] - 44:11
**putting** [1] - 27:10

## Q

**quantify** [1] - 10:15
**questions** [1] - 14:20
**quickly** [2] - 29:19,
29:20
**quite** [2] - 23:12,
28:21
**quote** [3] - 17:14,
17:15, 30:10

## R

**RACHEL** [1] - 1:21
**Rachel** [1] - 4:15
**raise** [3] - 12:2, 31:25,
32:5
**raised** [5] - 11:3,
17:10, 24:14, 32:2,
39:2
**raising** [1] - 49:12
**range** [2] - 28:4, 43:20
**RE** [1] - 1:4
**re** [1] - 4:2
**reached** [1] - 34:24
**read** [1] - 32:7
**real** [2] - 32:18, 43:18
**reality** [1] - 31:10
**really** [4] - 6:19, 20:13,
22:25, 36:10
**reason** [4] - 20:13,
24:3, 37:15, 39:2
**reasonable** [2] - 15:8,
32:24
**reasonably** [1] - 27:17
**receive** [1] - 44:5
**received** [1] - 6:8
**recess** [1] - 52:9
**recognize** [2] - 25:9,
33:6
**recognized** [1] - 4:20
**recommendation** [1] -
36:23
**record** [5] - 4:4, 16:24,
51:24, 52:5, 53:7
**recuse** [1] - 37:16
**refer** [1] - 36:22
**referee** [1] - 27:10
**reference** [2] - 30:2,
30:18

**referenced** [3] - 19:15, 30:12, 49:22
**referring** [1] - 26:23
**refiling** [1] - 9:20
**regard** [2] - 25:22, 27:11, 28:25
**regarding** [3] - 6:3, 6:14, 27:1
**regardless** [1] - 18:5
**Reid** [1] - 32:1
**relate** [1] - 50:2
**related** [2] - 25:18, 50:3
**relating** [1] - 43:13
**relevant** [1] - 19:3
**remaining** [1] - 40:3
**renew** [2] - 22:4, 25:25
**renewed** [1] - 45:4
**repeat** [1] - 18:17
**report** [7] - 6:11, 6:24, 7:3, 16:18, 32:12, 49:21, 53:6
**REPORTED** [1] - 3:1
**Reporter** [1] - 53:4
**reporter** [1] - 17:3
**reports** [2] - 22:4, 49:23
**representation** [1] - 9:21
**request** [6] - 22:23, 25:21, 26:1, 48:19, 48:23, 51:25
**requests** [2] - 44:17, 45:4
**require** [1] - 50:18
**requisite** [1] - 38:8
**reserve** [1] - 10:8
**resided** [1] - 32:15
**resolution** [4] - 11:6, 27:16, 34:23, 50:17
**resolve** [6] - 10:19, 11:12, 15:11, 22:9, 29:20, 51:11
**resolved** [6] - 7:14, 7:19, 10:14, 10:17, 19:20, 40:2
**resolving** [1] - 10:11
**respect** [31] - 8:25, 9:15, 9:17, 9:19, 11:24, 14:8, 14:25, 15:17, 16:12, 16:16, 18:1, 26:8, 26:9, 26:13, 26:19, 26:20, 26:22, 26:23, 27:1, 27:7, 28:9, 29:3, 29:16, 29:25, 30:5, 30:14, 30:17, 33:19, 33:20, 45:20, 48:16
**respects** [1] - 20:10
**respond** [6] - 7:24,

14:11, 18:20, 22:4, 35:14, 48:8
**response** [6] - 12:18, 12:24, 17:11, 25:13, 31:6, 33:22
**responses** [2] - 7:8, 12:25, 22:11
**result** [2] - 29:5, 33:23
**resume** [1] - 50:15
**retiring** [2] - 35:22, 36:8
**reviewed** [1] - 6:8
**revisit** [2] - 41:20, 42:22
**Reyes** [1] - 37:14
**ripe** [1] - 45:1
**RISHI** [1] - 2:13
**Rishi** [7] - 11:18, 19:6, 22:12, 28:22, 41:12, 48:14, 50:9
**rishi** [1] - 5:11
**ROBINSON** [1] - 2:20
**roles** [1] - 36:14
**room** [5] - 41:3, 42:14, 42:17, 46:25, 49:10
**RPR** [2] - 3:2, 53:15
**Rule** [1] - 36:4
**rule** [5] - 33:2, 33:22, 35:9, 37:24, 38:21
**ruled** [3] - 38:23, 45:1, 46:16
**rules** [3] - 27:24, 39:20, 51:21
**ruling** [1] - 39:5
**rulings** [1] - 27:25

## S

**sake** [1] - 42:8
**Sam** [7] - 4:24, 25:14, 26:3, 26:5, 26:15, 26:22, 27:7
**SAM** [1] - 2:1
**satisfied** [1] - 38:2
**satisfy** [1] - 11:10
**Schachter** [1] - 4:24
**SCHACHTER** [1] - 2:1
**schedule** [5] - 7:6, 7:21, 7:24, 15:25, 49:11
**scheduling** [3] - 22:8, 41:1, 44:8
**Schiller** [1] - 4:7
**SCHILLER** [1] - 1:14
**scope** [3] - 30:8, 30:22, 38:17
**SE** [2] - 1:15, 2:2
**SEC** [1] - 30:9
**second** [2] - 7:6, 29:23, 31:22

**secondly** [1] - 23:21
**see** [17] - 12:23, 20:13, 24:1, 26:1, 34:21, 34:23, 35:14, 37:3, 40:15, 42:1, 42:6, 48:2, 48:4, 51:4, 52:8
**seek** [1] - 47:11
**seeking** [1] - 46:8
**seem** [3] - 37:8, 43:18, 45:7
**sees** [1] - 51:1
**selection** [2] - 40:1, 40:5
**sense** [9] - 26:17, 26:18, 29:9, 34:20, 40:10, 40:23, 46:25, 48:1
**sent** [1] - 13:3
**separate** [16] - 16:21, 17:10, 17:14, 18:10, 18:15, 19:8, 20:3, 20:8, 20:20, 21:11, 21:12, 22:14, 40:9, 40:10, 49:1
**separated** [2] - 21:13, 43:12
**Sequoia** [2] - 5:12, 11:19
**SEQUOIA** [1] - 2:13
**serve** [1] - 49:7
**served** [5] - 34:15, 35:10, 44:17, 44:18, 45:21
**service** [2] - 35:21, 35:22
**serving** [1] - 24:25
**set** [2] - 27:19, 31:2
**setting** [1] - 7:21, 29:15
**seven** [2] - 32:10, 43:19
**seven-week** [1] - 43:19
**several** [3] - 9:3, 23:10, 26:21
**SHAQUILLE** [2] - 2:5, 2:10
**Shaquille** [3] - 5:3, 5:9, 9:12
**share** [1] - 43:7
**Shohei** [1] - 9:13
**shortly** [1] - 36:10
**shot** [1] - 35:13
**show** [1] - 23:24
**side** [8] - 6:21, 21:23, 33:23, 37:24, 38:10, 42:6, 47:9, 48:3
**signed** [1] - 13:4
**significant** [2] - 18:6,

28:7, 31:1
**similar** [1] - 26:3
**similarly** [1] - 39:25
**simply** [6] - 7:16, 16:15, 19:2, 27:23, 32:7, 46:2
**Singerman** [1] - 5:24
**single** [4] - 13:25, 17:22, 18:23, 19:7
**site** [1] - 42:16
**situated** [2] - 12:1, 34:13
**situation** [2] - 26:3, 45:20
**six** [4] - 20:24, 21:12, 21:19, 32:10
**size** [1] - 40:22
**Skadden** [1] - 5:15
**SKADDEN** [1] - 2:18
**skill** [1] - 38:8
**SLATE** [1] - 2:18
**slippage** [1] - 24:6
**so-called** [3] - 17:20, 21:2, 21:17
**Solomid** [1] - 9:14
**solve** [1] - 15:1
**sometimes** [2] - 19:9, 42:13
**somewhat** [2] - 43:23, 44:7
**soon** [1] - 35:16
**sort** [2] - 8:7, 30:14
**sorts** [1] - 41:1
**SOUTH** [1] - 2:23
**SOUTHERN** [1] - 1:2
**Southern** [1] - 43:11
**span** [1] - 27:20
**speaking** [3] - 8:20, 32:16, 47:9
**special** [10] - 36:1, 36:6, 36:7, 36:11, 36:14, 37:22, 38:2, 38:14, 38:22, 46:9
**specific** [1] - 19:3
**specifically** [2] - 9:9, 9:10
**speculation** [1] - 43:19
**speculative** [1] - 43:23
**speed** [1] - 37:5
**sports** [24] - 8:20, 8:25, 9:6, 9:18, 9:25, 15:12, 16:12, 16:16, 16:20, 17:8, 18:2, 18:22, 21:2, 27:14, 34:1, 34:5, 34:10, 35:3, 38:13, 48:16, 49:19, 49:24
**spring** [1] - 43:21
**ST** [1] - 2:21

**stage** [1] - 33:6
**standing** [1] - 31:7
**standpoint** [1] - 21:16
**start** [8] - 6:10, 8:10, 24:23, 24:25, 25:8, 26:21, 37:12, 38:20
**State** [3] - 5:3, 9:11, 53:4
**state** [1] - 4:4
**STATE** [1] - 2:4
**statements** [1] - 11:25
**states** [1] - 7:16
**STATES** [2] - 1:1, 1:11
**status** [9] - 4:1, 6:2, 6:24, 32:12, 51:2, 51:9, 51:18, 51:25, 52:10
**STATUS** [1] - 1:10
**stay** [28] - 8:4, 25:17, 25:24, 26:8, 26:11, 26:12, 27:7, 27:15, 27:24, 28:21, 29:21, 33:5, 33:11, 33:13, 33:15, 34:4, 34:7, 34:25, 35:4, 44:4, 44:21, 47:4, 47:7, 47:11, 47:17, 47:25, 48:23, 49:9
**stayed** [8] - 8:1, 25:16, 25:19, 28:24, 30:5, 34:2, 44:19, 44:20
**staying** [4] - 24:12, 24:14, 25:10, 35:11
**Stebbins** [2] - 5:8, 40:7
**STEBBINS** [1] - 2:10
**Steen** [1] - 5:12
**STEEN** [1] - 2:14
**steering** [1] - 6:15
**Stenographic** [1] - 53:4
**stenographic** [1] - 53:7
**STENOGRAPHICALLY** [1] - 3:1
**stenographically** [1] - 53:6
**step** [1] - 39:18
**STEPHEN** [1] - 1:14
**Stephen** [2] - 4:8, 9:12
**steps** [1] - 39:16
**stick** [2] - 8:10, 52:5
**sticks** [1] - 43:20
**still** [5] - 10:8, 12:8, 32:3, 32:21, 37:21
**stipulation** [1] - 13:1
**STREET** [2] - 1:19, 2:23
**Street** [1] - 1:15
**subgroup** [1] - 20:18

**subject** [3] - 12:8, 45:4, 48:19
**subjected** [1] - 28:7
**submit** [5] - 6:7, 28:11, 28:19, 37:24, 38:3
**submitted** [1] - 6:9
**subsequent** [1] - 7:20
**substantial** [1] - 17:13
**substantially** [1] - 38:17
**subtopics** [1] - 6:17
**succeed** [1] - 37:12
**success** [1] - 36:18
**sucked** [1] - 33:23
**suggest** [4] - 16:11, 39:20, 39:25, 40:15
**suggested** [1] - 41:20
**suggestion** [1] - 38:7
**SUITE** [9] - 1:15, 1:19, 1:23, 2:2, 2:4, 2:8, 2:11, 2:21, 2:24
**summarizes** [1] - 32:13
**superseded** [1] - 46:24
**superseding** [2] - 13:15, 19:13
**support** [1] - 25:24
**suppose** [1] - 10:16
**supposed** [1] - 43:8
**surprises** [1] - 23:19
**suspect** [1] - 21:10

---

## T

**table** [5] - 4:8, 23:10, 41:20, 47:9, 48:3
**tagalong** [2] - 7:17, 15:5
**tagged** [1] - 11:9
**tailored** [1] - 27:17
**technically** [1] - 12:25
**tee** [2] - 34:3, 44:7
**tens** [1] - 29:6
**terms** [13] - 13:10, 15:25, 17:18, 17:21, 17:24, 18:16, 21:16, 32:18, 39:16, 40:2, 44:3, 44:7, 46:10
**TERTERYAN** [2] - 2:22, 5:19
**Terteryan** [1] - 5:20
**THE** [101] - 1:10, 1:13, 1:18, 4:2, 4:11, 4:18, 5:25, 8:9, 8:22, 9:2, 9:5, 9:9, 9:15, 10:2, 10:10, 10:15, 10:18, 10:23, 11:1, 11:10, 11:16, 12:11, 12:14,

12:20, 12:23, 13:3, 13:8, 14:1, 14:14, 14:19, 14:24, 16:2, 16:8, 16:23, 17:2, 17:9, 18:20, 19:4, 19:22, 21:1, 21:9, 21:18, 21:21, 21:23, 22:6, 22:8, 22:20, 23:4, 23:14, 23:17, 24:14, 24:17, 25:13, 26:22, 27:8, 28:2, 31:5, 33:4, 33:24, 34:3, 34:7, 35:2, 35:7, 36:16, 36:21, 39:1, 39:23, 40:19, 41:22, 42:2, 42:8, 43:2, 43:6, 43:24, 44:10, 44:14, 44:25, 45:3, 45:12, 46:14, 46:20, 47:13, 47:16, 47:19, 48:6, 48:9, 48:11, 48:13, 48:20, 49:2, 49:5, 49:16, 49:20, 50:5, 50:8, 50:16, 51:6, 51:10, 51:20, 52:5, 52:7
**themselves** [1] - 26:8
**theory** [4] - 29:3, 29:8, 40:4, 44:5
**thereafter** [1] - 36:13
**they've** [2] - 23:5, 45:18
**thinks** [2] - 8:4, 36:6
**third** [2] - 32:3, 35:19
**Thoma** [2] - 5:20, 5:23
**THOMA** [1] - 2:22
**Thomas** [9] - 5:1, 8:19, 17:7, 18:21, 22:1, 27:13, 38:12, 39:24, 44:2
**THOMAS** [2] - 2:3, 2:20
**thoughts** [2] - 36:2, 36:4
**three** [10] - 8:23, 20:20, 23:3, 23:5, 25:4, 25:6, 28:24, 38:20, 39:9, 41:2
**timeline** [3] - 14:18, 38:19, 43:7
**timewise** [1] - 24:6
**timing** [2] - 14:17, 44:4
**to..** [1] - 23:16
**today** [6] - 6:1, 8:8, 14:20, 41:6, 48:10, 50:12
**today's** [2] - 8:21, 50:20
**Todd** [1] - 5:17

**TODD** [1] - 2:20
**together** [6] - 6:2, 6:4, 15:20, 16:4, 41:4, 42:13
**TOM** [2] - 2:3, 2:10
**Tom** [3] - 5:2, 5:9, 9:11
**topic** [1] - 19:5
**topics** [1] - 6:7
**total** [1] - 18:16
**touch** [2] - 40:19, 41:17
**towards** [1] - 23:22
**town** [1] - 50:24
**track** [5] - 16:21, 17:3, 17:10, 24:3, 24:5
**tracked** [1] - 16:13
**tracks** [2] - 17:15, 17:20
**TRANSCRIPT** [1] - 1:10
**transcript** [1] - 53:7
**transfer** [5] - 10:7, 12:9, 12:15, 12:17, 33:23
**transferred** [6] - 9:24, 15:15, 15:20, 33:17, 44:19, 44:23
**Trevor** [1] - 9:13
**trial** [2] - 31:2, 43:12
**tried** [1] - 11:20
**TRISH** [3] - 3:2, 53:4, 53:15
**true** [2] - 45:14, 53:7
**try** [11] - 6:4, 7:4, 22:24, 23:2, 23:16, 23:21, 26:6, 35:15, 41:13, 42:5, 42:6
**trying** [6] - 17:3, 24:3, 37:4, 41:4, 42:18, 49:14
**turned** [1] - 37:7
**twenty** [1] - 48:10
**two** [8] - 14:21, 15:2, 17:20, 31:3, 31:7, 31:24, 43:12, 44:3
**type** [2] - 28:10, 28:11
**types** [1] - 31:11
**typical** [1] - 45:16

---

## U

**U.S** [6] - 21:8, 26:4, 26:25, 27:5, 27:9, 29:24
**Udonis** [2] - 5:6, 9:12
**UDONIS** [1] - 2:6
**ultimately** [1] - 19:20
**unbeknownst** [1] - 30:11

**uncommon** [1] - 35:23
**under** [6] - 16:4, 21:16, 29:21, 32:21, 36:4, 46:18
**underlying** [2] - 29:8, 30:3
**unhelpful** [1] - 36:3
**unique** [2] - 18:7, 29:23
**UNITED** [2] - 1:1, 1:11
**unless** [2] - 21:12, 37:9
**unlikely** [1] - 24:21
**unnecessarily** [2] - 50:23, 51:3
**unnecessary** [2] - 15:14, 40:13
**unopposed** [1] - 25:21
**unusual** [1] - 34:24
**unworkable** [1] - 42:23
**up** [22] - 6:25, 9:5, 12:14, 13:5, 21:16, 34:3, 35:15, 35:16, 37:4, 38:25, 39:5, 40:3, 41:18, 44:7, 46:15, 47:5, 49:11, 49:17, 50:11, 50:18, 51:3, 51:14
**useful** [2] - 8:8, 36:11

---

## V

**value** [3] - 14:19, 20:11, 37:22
**various** [2] - 6:16, 10:3
**venture** [3] - 18:3, 18:7, 21:3
**vice** [1] - 51:21
**view** [4] - 16:19, 19:10, 24:19, 46:3
**virtually** [1] - 45:9
**Voyager** [1] - 32:1

---

## W

**wait** [1] - 30:23
**waiting** [2] - 47:6, 47:20
**waive** [2] - 15:2, 15:10
**waiver** [1] - 49:22
**waiving** [1] - 10:20
**wants** [6] - 34:7, 35:5, 37:16, 39:23, 44:7, 47:25
**warrant** [1] - 33:7
**warranted** [1] - 27:21
**Warriors** [2] - 5:3, 9:12

**WARRIORS** [1] - 2:4
**WATKINS** [1] - 2:10
**Watkins** [1] - 5:9
**wave** [1] - 20:6
**week** [8] - 32:13, 37:15, 43:19, 50:12, 50:15, 51:3, 51:8
**weekend** [1] - 13:5
**weeks** [1] - 27:20
**weighs** [1] - 35:11
**weird** [1] - 44:17
**well-founded** [2] - 28:19, 29:13
**WEST** [1] - 2:18
**whatsoever** [1] - 28:13
**whole** [1] - 26:8
**wide** [1] - 28:4
**William** [1] - 9:13
**willing** [2] - 19:6, 37:23
**winnowed** [1] - 38:18
**wise** [1] - 40:4
**Wonderland** [1] - 32:16
**words** [1] - 46:3
**works** [1] - 46:10

---

## Y

**year** [3] - 31:3, 31:11, 43:21
**years** [1] - 37:21
**YORK** [2] - 2:15, 2:19
**York** [1] - 43:11
**you-all** [1] - 52:9
**yourself** [2] - 16:24, 17:5
**yourselves** [1] - 42:16

---

## Z

**ZACK** [2] - 1:14, 4:10
**Zack** [1] - 4:9
**Zooms** [1] - 51:1
**ZUTSHI** [21] - 2:13, 5:11, 11:18, 12:12, 12:16, 12:22, 12:25, 13:6, 13:9, 14:3, 14:16, 19:6, 22:12, 23:7, 23:15, 28:22, 34:13, 41:12, 48:14, 48:21, 50:9
**Zutshi** [7] - 5:11, 11:18, 19:6, 22:12, 28:22, 41:12, 48:15