**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | No: 1:23-md-03076-KMM<br><br>MDL No. 3076 |
| This Document Relates To:<br><br>*Garrison v. Bankman-Fried*,<br>No. 22-cv-23753-KMM<br><br>*Garrison v. Ohtani*,<br>No. 23-cv-23064-KMM<br><br>*Garrison v. Golden State Warriors, LLC*,<br>No. 1:23-cv-23084-KMM<br><br>*Norris v. Brady*,<br>No. 23-cv-20439-KMM | |

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY DEFENDANTS
THOMAS BRADY, GISELE BÜNDCHEN, STEPHEN CURRY, LAWRENCE GENE
DAVID, GOLDEN STATE WARRIORS, LLC, UDONIS HASLEM, SHOHEI OHTANI,
KEVIN O'LEARY, SHAQUILLE O'NEAL, DAVID ORTIZ, NAOMI OSAKA, AND
SOLOMID CORPORATION AND INCORPORATED MEMORANDUM OF LAW AND
<u>REQUEST FOR HEARING</u>**

1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................2

III.    PLAINTIFFS' CLAIMS .........................................................................................8

IV.     LEGAL STANDARD .............................................................................................9

V.      ARGUMENT .........................................................................................................10

    A.      Plaintiffs' Shotgun Pleading Is Fatally Flawed ........................................10

    B.      Plaintiffs Fail To State Any Claim............................................................16

        1.      Plaintiffs Fail To State A Claim Under Any State's Securities Act ..........16

        2.      Plaintiffs Fail To State A Claim Under Florida, California, Or
               Oklahoma Consumer Protection Laws ......................................................23

            a.      The Consumer Protection Claims Do Not Apply To
                  Alleged Securities Transactions......................................................23

            b.      The Complaint Fails To Plead The Required Elements.................24

                 (1)      No Knowingly Unlawful, Unfair, Or Deceptive Act
                      Or Unfair Practice ...............................................................24

                      (a)      The Statements Are Puffery...................................25

                      (b)      Movants Did Not Participate In Misconduct .........26

                      (c)      Anti-Touting Rules Do Not Support
                          Plaintiffs' Consumer Protection Claims ...............27

                 (2)      Plaintiffs Fail To Allege Causation....................................28

                 (3)      Plaintiffs' UCL Claim Fails For Lack Of A Remedy ........29

         3.      Plaintiffs Fail To State Claims For Civil Conspiracy ...............................29

        4.      Plaintiffs Fail To State Claims For Aiding And Abetting ........................30

            a.      Plaintiffs Fail To Plead Actual Knowledge ...................................31

            b.      Plaintiffs Fail To Plead Substantial Assistance ............................32

5.     Plaintiffs Fail To Allege A Basis For Declaratory Relief.........................32

C.     Allowing Plaintiffs' Claims To Proceed Raises First Amendment Concerns ......................................................................................................33

D.     The Cases Should Be Dismissed Because FTX Is An Indispensable Party .........34

1.     Under Both Prongs Of The Rule 19 Test, FTX Is A Necessary Party ............................................................................................................34

2.     Because FTX Cannot Be Joined Or Subject To Discovery, "Equity And Good Conscience" Favor Dismissal Under Rule 19(b) ....................35

E.     Further Amendment Would Require Leave And Should Be Denied ..................36

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*2 Montauk Highway LLC v. Glob. Partners LP,*
   296 F.R.D. 94 (E.D.N.Y. 2013) ..................................................................................36

*Adams v. Smith,*
   734 P.2d 843 (Okla. Civ. App. 1986) ..........................................................................35

*Ajzenman v. Off. of Comm'r of Baseball,*
   487 F. Supp. 3d 861 (C.D. Cal. 2020) .........................................................................30

*In re All. Equip. Lease Program Sec. Litig.,*
   2002 WL 34451621 (S.D. Cal. Oct. 15, 2002) .......................................................17, 18

*Almeida v. BOKF, NA,*
   471 F. Supp. 3d 1181 (N.D. Okla. 2020).................................................................31, 32

*Apex Toxicology, LLC v. United HealthCare Servs., Inc.,*
   2020 WL 13551299 (S.D. Fla. July 7, 2020) ...............................................................30

*AquaDry Plus Corp. v. Rockhill Ins. Co.,*
   2020 WL 927440 (S.D. Fla. Feb. 26, 2020) ................................................................33

*AREI II Cases,*
   216 Cal. App. 4th 1004 (2013) ..............................................................................19, 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)......................................................................................................10

*Bacon v. Celebrity Cruises, Inc.,*
   2021 WL 3191058 (S.D. Fla. July 7, 2021)..................................................................11

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.,*
   938 F. Supp. 825 (S.D. Fla. 1996) ...............................................................................19

*Banc of Am. Secs. LLC v. Stott,*
   2005 WL 8156027 (S.D. Fla. Aug. 30, 2005)................................................................9

*Barmapov v. Amuial,*
   986 F.3d 1321 (11th Cir. 2021) ..............................................................................12, 37

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.,*
   2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) .............................................................30

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................................10

*Berkoff v. Masai USA Corp.,*
    2011 WL 13224836 (C.D. Cal. Mar. 3, 2011) ........................................................................29

*Betz v. Trainer Wortham & Co., Inc.,*
    829 F. Supp. 2d 860 (N.D. Cal. 2011) ....................................................................................23

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984)..................................................................................................................34

*Branscum v. San Ramon Police Dep't,*
    2012 WL 6697672 (N.D. Cal. Dec. 22, 2012) ........................................................................30

*Braun v. Soldier of Fortune Mag., Inc.,*
    968 F.2d 1110 (11th Cir. 1992) ...............................................................................................34

*Calderon v. Ashmus,*
    523 U.S. 740 (1998)..................................................................................................................33

*Campbell v. Emory Clinic,*
    166 F.3d 1157 (11th Cir. 1999) ...............................................................................................36

*Carolina Cas. Ins. Co. v. Condor Aerial, LLC,*
    2018 WL 5668505 (N.D. Fla. July 2, 2018) ...........................................................................35

*Carvelli v. Ocwen Fin. Corp.,*
    934 F.3d 1307 (11th Cir. 2019) ...............................................................................................25

*Cawthon v. Phillips Petroleum Co.,*
    124 So. 2d 517 (Fla. Dist. Ct. App. 1960) ..............................................................................21

*Challenge Homes, Inc. v. Gr. Naples Care Ctr., Inc.,*
    669 F.2d 667 (11th Cir. 1982) .................................................................................................34

*Chang v. JPMorgan Chase Bank, N.A.,*
    845 F.3d 1087 (11th Cir. 2017) ...............................................................................................32

*Chen v. PayPal, Inc.,*
    61 Cal. App. 5th 559 (2021) .....................................................................................................32

*Corbett v. PharmaCare U.S., Inc.,*
    567 F. Supp. 3d 1172 (S.D. Cal. 2021)....................................................................................28

*Culbertson v. Schuchert,*
    110 F.3d 67 (9th Cir. 1997) .....................................................................................................22

*Dillon v. Axxsys Int'l, Inc.*,
   185 F. App'x 823 (11th Cir. 2006) ...................................................................12, 13

*Dillon v. Axxsys Int'l, Inc.*,
   385 F. Supp. 2d 1307 (M.D. Fla. 2005), *aff'd*, 185 F. App'x 823 (11th Cir. 2006) ..........19, 20

*Dinaco, Inc. v. Time Warner, Inc.*,
   346 F.3d 64 (2d Cir. 2003)................................................................................21

*Dinwiddie v. Suzuki Motor of Am., Inc.*,
   111 F. Supp. 3d 1202 (W.D. Okla. 2015) .............................................................24

*Eveillard v. Nationstar Mortg. LLC*,
   2015 WL 127893 (S.D. Fla. Jan. 8, 2015) ............................................................32

*Fallani v. Am. Water Corp.*,
   574 F. Supp. 81 (S.D. Fla. 1983) .......................................................................35

*Farlow v. Peat Marwick Mitchell & Co.*,
   666 F. Supp. 1500 (W.D. Okla. 1987) .................................................................22

*Feng v. Walsh*,
   2020 WL 5822420 (S.D. Fla. Sept. 14, 2020) .........................................................9

*Feng v. Walsh*, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021), *report and recommendation
   adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022)...........................................23, 30

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) .............................................................................31

*FTC v. AbbVie Prods. LLC*,
   713 F.3d 54 (11th Cir. 2013) ............................................................................15

*In re FTX Trading Ltd.*,
   No. 22-11068 (Bankr. D. Del.) .....................................................................2, 7, 8

*GE Real Est. Servs., Inc. v. Mandich Real Est. Advisors, Inc.*,
   337 So. 3d 416 (Fla. Dist. Ct. App. 2021) ............................................................30

*Genesis NYC Enters., Inc v. JAI Grp., SA*,
   2016 WL 1588397 (S.D. Fla. Apr. 20, 2016) ........................................................11

*Glasser v. Hilton Grand Vacations Co., LLC*,
   948 F.3d 1301 (11th Cir. 2020) .........................................................................33

*Groom v. Bank of Am.*,
   2012 WL 50250 (M.D. Fla. Jan. 9, 2012).............................................................19

*Harris v. Pub. Health Tr.*,
  2020 WL 1933169 (S.D. Fla. Apr. 14, 2020) ........................................................................11

*Hollifield v. Resolute Cap. Partners Ltd., LLC*,
  2023 WL 4291524 (C.D. Cal. May 12, 2023) ................................................................18, 22

*Honig v. Kornfeld*,
  339 F. Supp. 3d 1323 (S.D. Fla. 2018) ..........................................................................31, 32

*IIG Wireless, Inc. v. Yi*,
  22 Cal. App. 5th 630 (2018) ............................................................................................32

*Impac Warehouse Lending Grp. v. Credit Suisse First Bos. LLC*,
  270 F. App'x 570 (9th Cir. 2008) ..................................................................................31, 32

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
  224 So. 3d 316 (Fla. Dist. Ct. App. 2017) ......................................................................17, 19

*Jackson v. Fischer*,
  2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ................................................................18, 23

*Justice v. Rheem Mfg. Co.*,
  318 F.R.D. 687 (S.D. Fla. 2016) ........................................................................................28

*KC Leisure, Inc. v. Haber*,
  972 So. 2d 1069 (Fla. Dist. Ct. App. 2008) ........................................................................26

*KeyView Labs, Inc. v. Barger*,
  2020 WL 8224618 (M.D. Fla. Dec. 20, 2020) ....................................................................25

*Koehler v. Pulvers*,
  614 F. Supp. 829 (S.D. Cal. 1985) ....................................................................................22

*Konopasek v. Ten Assocs., LLC*,
  2018 WL 6177249 (C.D. Cal. Oct. 22, 2018) ....................................................................22

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ....................................................................................................29

*Lamm v. State St. Bank & Tr. Co.*,
  889 F. Supp. 2d 1321 (S.D. Fla. 2012), *aff'd*, 749 F.3d 938 (11th Cir. 2014) ......................31

*Lawrence v. Bank of Am., N.A.*,
  455 F. App'x 904 (11th Cir. 2012) ....................................................................................31

*Leon v. Caterpillar Indus., Inc.*,
  69 F.3d 1326 (7th Cir. 1995) ............................................................................................21

*Lewis v. Russell*,
   2009 WL 1260290 (E.D. Cal. May 7, 2009) .......................................................................35

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
   306 F. Supp. 3d 629 (S.D.N.Y. 2018) ..........................................................................27, 28

*Lombardo v. Johnson & Johnson Consumer Cos., Inc.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ............................................................................29

*Lowe v. SEC*,
   472 U.S. 181 (1985).........................................................................................................33

*Marks v. Buckner*,
   1984 U.S. Dist. LEXIS 18692 (N.D. Okla. Mar. 13, 1984)............................................19, 20

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ..............................................................................24

*Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*,
   783 F. Supp. 2d 1214 (S.D. Fla. 2011) ............................................................................33

*Meridian Tr. Co. v. Batista*,
   2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ..................................................................30

*Mfg. Rsch. Corp. v. Greenlee Tool Co.*,
   693 F.2d 1037 (11th Cir. 1982) ......................................................................................25

*Morchem Indus., Inc. v. Rockin Essentials LLC*,
   2021 WL 5014105 (S.D. Fla. June 16, 2021) ...............................................................9, 11

*Moss v. Kroner*,
   197 Cal. App. 4th 860 (2011) .........................................................................................35

*Next Century Commc'ns Corp. v. Ellis*,
   318 F.3d 1023 (11th Cir. 2003) ......................................................................................25

*Nikkel v. Stifel, Nicolaus & Co., Inc.*,
   542 P.2d 1305 (Okla. 1975)............................................................................................18

*Opus Grp., LLC v. Enomatic Srl*,
   2012 WL 13134611 (S.D. Fla. Aug. 23, 2012)..................................................................37

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*,
   2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ....................................................................27

*Orloff v. Allman*,
   819 F.2d 904 (9th Cir. 1987), *abrogated on other grounds by*
   *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990).........................................21, 22

*Park Place Kendall Condo. Ass'n, Inc. v. Rockhill Ins. Co.*,
   2020 WL 18779644 (S.D. Fla. June 24, 2022) ...................................................................33

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2018) ...................................................................................31

*Perret v. Wyndham Vacation Resorts, Inc.*,
   846 F. Supp. 2d 1327 (S.D. Fla. 2012) ............................................................................24

*In re Phila. Newspapers, LLC*,
   423 B.R. 98 (E.D. Pa. 2010) ...........................................................................................35

*Pop v. Lulifama.com LLC*,
   2023 WL 4661977 (M.D. Fla. July 20, 2023) ........................................................24, 27, 29

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
   390 U.S. 102 (1968) ........................................................................................................34

*Renfro v. Champion Petfoods USA, Inc.*,
   25 F.4th 1293 (10th Cir. 2022) .......................................................................................25

*Robertson v. White*,
   633 F. Supp. 954 (W.D. Ark. 1986) .................................................................................23

*Sagicor Life Ins. Co. v. BOSC, Inc.*,
   2007 WL 9711010 (W.D. Okla. Jan. 24, 2007) ...........................................................18, 19

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
   773 F. Supp. 342 (S.D. Fla. 1991) ...................................................................................17

*Schaffer Fam. Inv., LLC v. Sonnier*,
   120 F. Supp. 3d 1028 (C.D. Cal. 2015) ...........................................................................21

*SEC v. Ripple Labs, Inc.*,
   2023 WL 4507900 (S.D.N.Y. July 13, 2023) ....................................................................17

*Seiger ex rel. Seiger v. Philipp*,
   735 F. App'x 635 (11th Cir. 2018) ...................................................................................36

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*,
   650 F. Supp. 2d 1213 (S.D. Fla. 2009) ............................................................................33

*SIG, Inc. v. AT&T Digit. Life, Inc.*,
   971 F. Supp. 2d 1178 (S.D. Fla. 2013) ........................................................................24, 26

*Silverboys, LLC v. Joelsson*,
   2020 WL 13401917 (S.D. Fla. Nov. 30, 2020) ..................................................................27

*In re Sony Grand Litig.*,
  758 F. Supp. 2d 1077 (S.D. Cal. 2010)................................................................25

*Stevens v. Osuna*,
  877 F.3d 1293 (11th Cir. 2017) ..........................................................................14

*Sugarman v. Brown*,
  73 Cal. App. 5th 152 (2021) ...............................................................................29

*Taylor v. Costco Wholesale Corp.*,
  2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) .......................................................26

*Trilogy Props. LLC v. SB Hotel Assocs. LLC*,
  2010 WL 7411912 (S.D. Fla. Dec. 23, 2010)................................................17, 18

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023)..............................................................................................32

*United States v. Bankman-Fried*,
  No. 22-cr-673-LAK (S.D.N.Y.).............................................................................3

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
  287 F. App'x 81 (11th Cir. 2008) ..........................................................................9

*Wagner v. First Horizon Pharm. Corp.*,
  464 F.3d 1273 (11th Cir. 2006) .............................................................................9

*Walls v. Am. Tobacco Co.*,
  11 P.3d 626 (Okla. 2000)......................................................................................29

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) ...........................................................................10

*Westinghouse Credit Corp. v. Founders Bank & Tr. Co.*,
  1987 WL 1435734 (W.D. Okla. Oct. 26, 1987) ..................................................22

*Wildes v. BitConnect Int'l PLC*,
  25 F.4th 1341 (11th Cir. 2022) ............................................................................20

*Zhang v. Royal Caribbean Cruises, Ltd.*,
  2019 WL 8895224 (S.D. Fla. Mar. 7, 2019)........................................................11

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*,
  917 So. 2d 368 (Fla. Dist. Ct. App. 2005) ..........................................................32

**STATUTES**

15 O.S. § 753 ...............................................................................................................26

71 O.S.
    § 1-301 ...........................................................................................................16, 19
    § 1-509 .....................................................................................................18, 19, 35

11 U.S.C. § 362 ..................................................................................................35

15 U.S.C.
    § 45................................................................................................................26
    § 77*l* ..............................................................................................................34
    § 77q..............................................................................................................28

Cal. Corp. Code
    § 25110........................................................................................................ *passim*
    § 25210.....................................................................................................18, 22
    § 25501...........................................................................................................35
    § 25501.5..................................................................................................18, 22
    § 25503..............................................................................................17, 18, 19
    § 25504.1.................................................................................................17, 19

Fla. Stat.
    § 501.2105.....................................................................................................37
    § 517.07...................................................................................................16, 18
    § 517.211...........................................................................................17, 35, 37

## RULES

Fed. R. Bankr. P. 7001 .....................................................................................36

Fed. R. Civ. P. 19 ............................................................................................34

Local Rule 7.1 ..................................................................................................38

## TREATISES

Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011) ..........................................35

## REGULATIONS

16 C.F.R.
    § 255.1..........................................................................................................26
    § 255.5.....................................................................................................27, 28

## OTHER AUTHORITIES

Alex Weprin, *Naomi Osaka Jumps Into Crypto Craze as Firms Target Young Women*,
    HOLLYWOOD REPORTER (Mar. 21, 2022, 7:00 AM),
    https://www.hollywoodreporter.com/business/digital/naomi-osaka-crypto-ftx-1235115487/..7

Connor Sephton, *Naomi Osaka: Tennis Star Teams Up with FTX—and She's Getting Paid in Crypto, Too*, COINMARKETCAP (accessed Sept. 19, 2023), https://coinmarketcap.com/alexandria/article/naomi-osaka-tennis-star-teams-up-with-ftx-and-she-s-getting-paid-in-crypto-too ...................................................................................................7

David Yaffe-Bellany & Matthew Goldstein, *Third Top FTX Executive Pleads Guilty in Fraud Investigation*, N.Y. TIMES (Feb. 28, 2023) ..............................................................................3

Frank Chaparro, *Why Larry David Was the Perfect 'Anti-Sponsor' of FTX's Super Bowl Ad*, THE BLOCK (Feb. 15, 2022, 5:22 PM), https://www.theblock.co/post/134339/why-larry-david-was-the-perfect-anti-sponsor-of-ftxs-super-bowl-ad-according-to-jeff-schaffer ......................7

FTX, *MLB Superstar Shohei Ohtani Joins FTX as Global Ambassador Through Long-Term Partnership*, PRNEWSWIRE (Nov. 16, 2021), https://www.prnewswire.com/news-releases/mlb-superstar-shohei-ohtani-joins-ftx-as-global-ambassador-through-long-term-partnership-301425911.html ........................................................................................6

FTX, *NBA Superstar Stephen Curry Becomes Global Ambassador and Shareholder of Leading Cryptocurrency Exchange FTX Through Long-Term Partnership*, PRNEWSWIRE (Sept. 7, 2021), https://www.prnewswire.com/news-releases/nba-superstar-stephen-curry-becomes-global-ambassador-and-shareholder-of-leading-cryptocurrency-exchange-ftx-through-long-term-partnership-301370497.html ............................................................................6

Jabari Young, *Cryptocurrency Platform FTX Will Pay Golden State Warriors $10 Million for Global Rights*, CNBC (Dec. 14, 2021, 5:30 AM), https:// www.cnbc.com/2021/12/14/ftx-to-pay-golden-state-warriors-10-million-for-global-rights.html....................................................6

Pete Brush, *Ex-FTX CEO Cops Plea, But Not Cooperating Against SBF*, LAW360 (Sept. 7, 2023, 11:03 AM), https://www.law360.com/articles/1719004/ex-ftx-ceo-cops-plea-but-not-cooperating-against-sbf...............................................................................................................3

## I.       INTRODUCTION

Movants are current or former professional athletes, a professional basketball team, a supermodel, a television personality, an e-sports organization, and a comedian, all of whom allegedly participated in or displayed advertisements promoting FTX. The "corrected" administrative complaint (the "CAC," ECF No. 179) is the thirteenth complaint that Plaintiffs have filed regarding these issues. But even after multiple attempts to assemble a viable case, and even with the benefit of a former high-level FTX executive's declaration, dozens of additional pages of appended evidence, and a wealth of available materials from the FTX bankruptcy proceeding, Plaintiffs' massive pleading is fundamentally and irredeemably flawed.

Despite more than 850 paragraphs of allegations totaling 312 pages, Plaintiffs still fail to plausibly allege causation—or, indeed, the elements of any of their claims. Plaintiffs do not allege any Movant ***ever*** mentioned either of FTX's alleged unregistered securities, YBAs or FTT. They do not allege any facts establishing that Plaintiffs ever purchased YBAs or FTT, and they certainly do not allege Plaintiffs made such purchases ***as a result of*** viewing an advertisement involving a Movant. In fact, Plaintiffs fail even to allege they ever viewed any advertisements involving a Movant at all. Further, Plaintiffs do not allege a single fact supporting their contention that any Movant knew of, or participated in, what Plaintiffs expressly and repeatedly allege was the ***secret*** FTX scheme orchestrated by a small handful of FTX insiders to misappropriate assets invested through the FTX platform. Even so, Plaintiffs attempt to blame Movants for FTX's implosion.

In short, Plaintiffs' claims fail because the complaint constitutes an impermissible shotgun pleading lumping Movants and the YouTuber Defendants (and at times, all MDL Defendants) together and failing to give each Defendant notice of the basis of each Plaintiff's claim against them; fails to adequately plead causation; and fails to plausibly allege Movants' knowledge of— much less actual involvement in—FTX's fraud. More granularly, Plaintiffs do not plead facts

1

supporting the elements of any of their claims. Alternatively, under Rule 19, this suit cannot proceed without FTX, the central actor in Plaintiffs' story and the entity in possession of most of the evidence.

The Court should dismiss all claims against Movants with prejudice.[1]

## II.    FACTUAL BACKGROUND

As Plaintiffs tell it, "[t]he FTX Group" (collectively, "FTX"[2]) "was founded in 2019 . . . as an exchange or marketplace for the trading of crypto assets." CAC ¶ 97. That same year, FTX "began offering" interest-bearing accounts, called "YBAs," "through its Earn program," *id.* ¶ 247, which allowed users to "opt[] in and participat[e] in staking . . . supported assets in [the user's] FTX account," and become "eligible to earn" pre-set rates of return on assets held in the account, *id.* ¶ 249. FTX also minted its own cryptocurrency, the FTX Token ("FTT"), which Plaintiffs describe as "an exchange token created by FTX that entitles holders to benefits on the FTX exchange." *Id.* ¶ 260. Plaintiffs claim that YBAs and FTT are securities. *Id.* ¶ 233.[3]

Three years later, in November 2022, FTX suddenly collapsed as customers withdrew an estimated "$5 billion" from the exchange and, immediately thereafter, FTX entered bankruptcy.

---

[1] Plaintiffs seek to incorporate by reference all of the other MDL complaints. CAC at 3 n.1. Those complaints were not filed in any of the above-captioned cases, and incorporation by reference would be inappropriate—and make what is already an impermissible shotgun pleading exponentially more improper.

[2] Like Plaintiffs, Movants use "FTX" to include any entity in the FTX Group with which Plaintiffs may have interacted.

[3] For this and all of Movants' motions to dismiss, internal citations and quotation marks are omitted and emphasis added throughout.

*Id.* ¶¶ 175-76, 178; *see In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.). FTX's collapse happened, according to Plaintiffs, because FTX's most senior leadership committed a secret fraud—by misappropriating customer funds for personal use and to prop up other companies; outright lying to government officials, regulators, auditors, and investors; failing to adhere to compliance obligations; and otherwise severely mismanaging the company. *Id.* ¶¶ 82, 92-93, 157-59, 162-63, 173-77. Plaintiffs further allege that the fraudulent acts of FTX's senior leaders were kept wholly secret, even from FTX's other officers and directors. *See id.* ¶¶ 145-91. Several of FTX's former executives have since pleaded guilty to criminal fraud, and the former CEO, Sam Bankman-Fried, is awaiting trial on federal fraud charges.[4]

Plaintiffs further allege that, prior to its collapse, FTX made substantial efforts to pass itself off as a legitimate business despite actually being a massive fraud. These efforts included creating and distributing "materially misleading financial statements," *id.* ¶ 159, paying "millions of dollars in hush money" to silence potential whistleblowers, *id.* ¶ 164, misleading members of Congress about FTX's risk management procedures, *id.* ¶¶ 82, 92, providing false statements about customer asset protection on the FTX website, *id.* ¶¶ 88-89, and making political contributions, *id.* ¶¶ 3, 148,

---

[4] The fraudulent acts of FTX's leaders are the subject of ongoing investigation in criminal and bankruptcy matters. *See, e.g.*, Gov't Appl. to Intervene & Mot. Stay & Mem. in Supp., ECF No. 247; David Yaffe-Bellany & Matthew Goldstein, *Third Top FTX Executive Pleads Guilty in Fraud Investigation*, N.Y. Times (Feb. 28, 2023), https://www.nytimes.com/2023/02/28/technology/ftx-guilty-plea-fraud.html; *United States v. Bankman-Fried*, No. 22-cr-673-LAK (S.D.N.Y.); Pete Brush, *Ex-FTX CEO Cops Plea, But Not Cooperating Against SBF*, Law360 (Sept. 7, 2023, 11:03 AM), https://www.law360.com/articles/1719004/ex-ftx-ceo-cops-plea-but-not-cooperating-against-sbf.

170, 190(i). They also included, according to Plaintiffs, engaging in a "mass branding" and advertising campaign, *see id.* ¶¶ 726, 728-29, which began with FTX's sponsorship of the Miami Heat basketball team and arena following review by "diligence teams" from the Heat and the NBA (neither the NBA, the Heat, nor the arena owners are named as defendants in this MDL), *see id.* ¶¶ 20-21, 84, 170, 426, 737, Ex. B at 5.

As part of FTX's advertising efforts, certain FTX entities allegedly paid certain Movants to appear in commercials, display the FTX logo, appear at events, or lend their images for FTX's limited use. *See id.* ¶¶ 287-703. The alleged promotions ranged in content from a satirical Super Bowl commercial, in which Movant Larry David warns users ***not*** to "get into" crypto with FTX, *see id.* ¶¶ 630-31, to simple signage featuring the FTX logo at the arena of Movant Golden State Warriors ("GSW"), *see id.* ¶¶ 468, 630-31. Some Movants are alleged to have promoted the FTX brand generically on social media; FTX allegedly agreed with others to sponsor unrelated events like music festivals or charitable efforts; and others are alleged to have worn apparel bearing an FTX logo (among other logos) in athletic competitions or sold FTX-branded merchandise and NFTs. *See id.* ¶¶ 293-320, 339-55, 372-85, 402-09, 431-57, 477-83, 506-31, 583-92, 602-03, 607-14, 630-31, 636-42, 679-88.

Plaintiffs' allegations regarding each individual Movant's promotions span more than 400 paragraphs and nearly 200 pages of their pleading. *See id.* ¶¶ 287-703. Despite this volume, Plaintiffs' allegations are most notable for what they do not include.

*First*, in the nearly 200 pages of allegations devoted to Movants' alleged conduct, no Movant is alleged to have mentioned the purported "unregistered securities," YBAs or FTT, ***at***

*all*.[5] Further, Plaintiffs fail to allege a **single statement** by any Movant that caused any Plaintiff to purchase or invest in any specific product, including YBAs or FTT. *See id.* ¶¶ 39-54. In fact, no Plaintiff even claims to have **seen** a specific commercial or tweet by any Movant, much less alleges that he or she did business with FTX or purchased any FTX product as a result. *See id.*[6] Plaintiffs do not even allege when they engaged with FTX. A Movant thus may be named in this case even though Plaintiffs deposited funds with FTX years **before** that Movant became involved in any advertising.

*Second*, conclusory allegations that Movants "must" have somehow discerned FTX's secret fraud merely because they had access to financial advisors and/or investment experience are refuted by both Plaintiffs' substantive allegations and common sense. Plaintiffs do not allege a **single fact** suggesting that any Movant had actual or constructive knowledge of FTX's fraud. *See id.* ¶¶ 331, 364, 396, 418, 462, 487-89, 537-40, 599, 622, 649-50, 696-98. Similarly, Plaintiffs fail to allege any specific facts demonstrating that any Movant participated in FTX's fraud. Rather, Plaintiffs make only blanket allegations that "[e]ach" of an undifferentiated "group of Defendants" "contributed both to the perpetration of [FTX's] fraud, and to the sale of unregistered securities, in a vital way," *id.* ¶ 287, and that the actions of "the MDL Defendants" "contributed to the collapse

---

[5] For twelve of the thirteen Movants, Plaintiffs do not allege any references to FTT or YBAs. The only allegation that concerns either is inapposite: Solomid Corporation is alleged to have purchased FTT *from* FTX and then distributed that FTT to its employees and players. CAC ¶¶ 667, 678.

[6] The closest Plaintiffs get is asserting that "many customers relied on the testimonials of paid celebrity endorsers" in deciding "to use FTX," CAC ¶ 279, but they never allege their **own** reliance with respect any Movant's alleged advertisements.

of the FTX Group," *id.* at 3. But Plaintiffs repeatedly—and specifically—allege the opposite: that the "massive [] fraud," *id.*, was orchestrated by FTX insiders who hid their activities from everyone else. *See*, *e.g.*, *id.* ¶¶ 147-64.

       Plaintiffs also wholly fail to allege any specific deceptive act by any Movant or identify a single fraudulent statement made by any Movant. Rather, Plaintiffs assert that because **FTX** used its agreements with Movants to further the FTX brand, which **FTX** then capitalized on as part of its independent secret fraud, each and every Movant was somehow transformed into a co-conspirator. *Id.* ¶ 11. Plaintiffs do generically allege that each Movants' promotions were "deceptive," but merely because Movants made positive statements about the FTX brand and "did not disclose that they were being compensated by FTX." *Id.* ¶¶ 329-30, 361-62, 393-95, 414-16, 460-61, 486, 533-36, 597-98, 618-19, 648, 695. However, Plaintiffs do not plead **any** relationship between, on the one hand, any Movant's failure to disclose compensation for routine advertising and sponsorships—which are, of course, widely understood to be paid, a fact which Plaintiffs themselves recognize was often expressly and publicly acknowledged[7]—and, on the other,

---

[7] *E.g.*, CAC ¶ 297 ("Bankman-Fried touted that Bündchen and Brady took an equity stake in the company as a means of promotion, including on nationally distributed podcasts."); *id.* ¶ 339 (FTX announced that "Mr. O'Leary will be taking an equity stake in [FTX], along with being paid in crypto to serve as an ambassador and spokesperson for FTX"); *id.* ¶ 434 (citing FTX, *NBA Superstar Stephen Curry Becomes Global Ambassador and Shareholder of Leading Cryptocurrency Exchange FTX Through Long-Term Partnership*, PRNEWSWIRE (Sept. 7, 2021), https://www.prnewswire.com/news-releases/nba-superstar-stephen-curry-becomes-global-ambassador-and-shareholder-of-leading-cryptocurrency-exchange-ftx-through-long-term-

Plaintiffs' claimed losses (which were caused by FTX's leaders' secret fraud).

To date, FTX has recovered over $7 billion of the $8.7 billion allegedly owed to its customers. *See* Notice, *In re: FTX Trading LTD., et al.*, No. 22-11068, ECF No. 1704, Ex. A at 32

partnership-301370497.html ("Curry will receive an equity stake in FTX Trading Limited[.]"));
*id.* ¶ 436 (similar); *id.* ¶ 476 (citing Jabari Young, *Cryptocurrency Platform FTX Will Pay Golden State Warriors $10 Million for Global Rights*, CNBC (Dec. 14, 2021, 5:30 AM), https://www.cnbc.com/2021/12/14/ftx-to-pay-golden-state-warriors-10-million-for-global-rights.html);
*id.* ¶ 579 (citing FTX, *MLB Superstar Shohei Ohtani Joins FTX as Global Ambassador Through Long-Term* Partnership, PRNEWSWIRE (Nov. 16, 2021), https://www.prnewswire.com/news-releases/mlb-superstar-shohei-ohtani-joins-ftx-as-global-ambassador-through-long-term-partnership-301425911.html ("Mr. Ohtani will receive all of his compensation in equity and cryptocurrencies[.]")); *id.* ¶ 611 (citing Alex Weprin, *Naomi Osaka Jumps Into Crypto Craze as Firms Target Young Women*, HOLLYWOOD REPORTER (Mar. 21, 2022, 7:00 AM), https://www.hollywoodreporter.com/business/digital/naomi-osaka-crypto-ftx-1235115487/) ("Osaka will receive an equity stake in FTX as part of the long-term deal and will also be receiving some additional compensation in crypto.")); *id.* ¶ 602 (citing Connor Sephton, *Naomi Osaka: Tennis Star Teams Up with FTX—and She's Getting Paid in Crypto, Too*, COINMARKETCAP (accessed Sept. 19, 2023), https://coinmarketcap.com/alexandria/article/naomi-osaka-tennis-star-teams-up-with-ftx-and-she-s-getting-paid-in-crypto-too); *cf.* CAC ¶ 645 ("[H]iring David almost doubled the already hefty $13 million price tag of a prime-time Super Bowl commercial.") (citing Frank Chaparro, *Why Larry David Was the Perfect 'Anti-Sponsor' of FTX's Super Bowl Ad*, THE BLOCK (Feb. 15, 2022, 5:22 PM), https://www.theblock.co/post/134339/why-larry-david-was-the-perfect-anti-sponsor-of-ftxs-super-bowl-ad-according-to-jeff-schaffer).

(June 26, 2023). The trustee has further indicated that it anticipates "additional recoveries," adding that the "vast majority of the [original customer] deficit . . . was in the form of fiat currency and stablecoin that had been misappropriated." *Id.*[8]

## III.   PLAINTIFFS' CLAIMS

Attempting to bypass the bankruptcy process, Plaintiffs filed the above-captioned lawsuits, seeking to represent international and national classes of customers who "purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT." CAC ¶ 752. The complaint contains 14 counts—one under federal law, five under Florida law, five alternative counts under California law, and three alternative counts under Oklahoma law. Counts 1, 8, and 13 allege that FTX itself (*i.e.*, the mobile application and web-based trading service), YBAs, and/or FTT were unregistered securities, which FTX sold to Plaintiffs with "material assistance" from Movants.[9] *Id.* ¶¶ 768-75, 816-23, 850-53. Counts 2, 7, and 12 allege that Movants engaged in "unfair and deceptive practices" in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the California Unfair Competition Law ("UCL"), and the Oklahoma Consumer Protection Act ("OCPA"). *Id.* ¶¶ 776-85, 811-15, 842-49. Counts 3 and 11 allege that Movants

---

[8] A group of FTX investors has filed a separate class action lawsuit—which presumably encompasses Plaintiffs—in the FTX bankruptcy proceeding, seeking rescission of the customer assets frozen during the bankruptcy process. *See* Adversary Compl. ("Bankr. Compl."), *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Dec. 27, 2022), ECF No. 321. That proceeding remains ongoing.

[9] Plaintiffs cite the Oklahoma Uniform Securities Act of 1980, but the operative statute is the Oklahoma Uniform Securities Act of 2004 ("Oklahoma Securities Act").

conspired with the "FTX Entities" to induce Plaintiffs to purchase interests in FTX, YBAs, and/or FTT. *Id.* ¶¶ 786-91, 836-41. Counts 4, 9, and 14 allege that Movants "aided and abetted" FTX's fraud. *Id.* ¶¶ 792-97, 824-29, 854-59. Counts 5 and 10 allege that Movants "aided and abetted" FTX's alleged conversion of Plaintiffs' "funds." *Id.* ¶¶ 798-803, 830-35. And Count 6 seeks a declaratory judgment. *Id.* ¶¶ 804-10.

## IV.   LEGAL STANDARD

In addition to the general obligations of Rule 8, Rule 9(b) governs the sufficiency of Plaintiffs' allegations because Plaintiffs' claims sound in fraud. Plaintiffs generically contend that Movants assisted in FTX's fraud by participating in FTX's commercials and advertising campaigns. *See, e.g.*, CAC ¶¶ 6, 272-88, 521, 759. Plaintiffs' claims all flow from this same allegedly fraudulent activity. *See id.* ¶¶ 768-859. As such, Plaintiffs' claims are all subject to Rule 9(b)'s heightened pleading requirements. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (applying Rule 9(b) to securities claim sounding in fraud); *Morchem Indus., Inc. v. Rockin Essentials LLC*, 2021 WL 5014105, at *4 (S.D. Fla. June 16, 2021) (applying Rule 9(b) to FDUTPA claim); *Banc of Am. Secs. LLC v. Stott*, 2005 WL 8156027, at *5-6 (S.D. Fla. Aug. 30, 2005) (aiding and abetting fraud, conspiracy subject to Rule 9(b)); *Feng v. Walsh*, 2020 WL 5822420, at *15 (S.D. Fla. Sept. 14, 2020) (aiding and abetting conversion subject to Rule 9(b)).

Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, Plaintiffs must identify the precise statements made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the Plaintiffs; and what defendants gained. *See W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008). "[C]onclusory

allegations that certain statements were fraudulent" do not suffice. *Id*.

Rule 8 requires Plaintiffs to plead a claim that is plausible on its face, based on well-pleaded facts sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions unsupported by well-pleaded facts cannot survive. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

For the reasons that follow, Plaintiffs' claims fail under both standards.

## V.    ARGUMENT

### A.    Plaintiffs' Shotgun Pleading Is Fatally Flawed

Plaintiffs' complaint fails because it is an impermissible shotgun pleading, it is directed at people who did not cause Plaintiffs' alleged losses, and Plaintiffs have not plausibly pled that Movants had knowledge of the fraud occurring behind FTX's closed doors—indeed, Plaintiffs' specific allegations regarding that fraud make their claims *im*plausible. These issues resolve the claims against Movants in full, and warrant dismissal with prejudice.

**Shotgun Pleading**: For decades, the Eleventh Circuit has rejected "shotgun" pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Shotgun pleadings should be dismissed because they "fail to one degree or another . . . to give the defendants adequate notice of the claims against them." *Id.* at 1323.

Rather than specifically explain how each Movant's alleged actions caused harm to Plaintiffs (or even describe which Plaintiffs, if any, saw any Movant's specific advertising efforts), Plaintiffs vaguely reference "the MDL Defendants' wrongdoing." CAC ¶¶ 39-54. Yet, the "MDL Defendants" are a widely-varying group that encompasses FTX insiders—including individuals who have pleaded guilty to criminal fraud—accounting firms, financial institutions, venture capital funds, influencers, and Movants. *See id.* at 1-2. As a result, the complaint "fails to distinguish

10

precisely what each defendant is alleged to have done sufficiently enough to give Defendants fair notice." *Genesis NYC Enters., Inc v. JAI Grp., SA*, 2016 WL 1588397, at *3 (S.D. Fla. Apr. 20, 2016). "[I]n evaluating the sufficiency of each count, [Movants] and this Court are forced to sift through the facts presented to determine which allegations are relevant to a particular claim" or person. *Harris v. Pub. Health Tr.*, 2020 WL 1933169, at *3 (S.D. Fla. Apr. 14, 2020); *see also Morchem Indus. Inc.*, 2021 WL 5014105, at *4.

The 859-paragraph complaint is also replete with "and/or" allegations, making it impossible to discern exactly what Plaintiffs allege with respect to any individual Plaintiff and any individual Movant, a hallmark of a "shotgun" pleading. For example, Plaintiffs allege that "the FTX Platform, YBAs **and/or** FTT" was sold and offered to them—but no Plaintiff alleges he or she actually opened a YBA or purchased FTT. CAC ¶ 771. The complaint states only that Plaintiffs "purchased or held legal title to **and/or** beneficial interest in **any** fiat or cryptocurrency deposited or invested through an FTX Platform." *Id*. ¶¶ 39-54. "Either a fact or conclusion is alleged or isn't." *Zhang v. Royal Caribbean Cruises, Ltd.*, 2019 WL 8895224, at *2 (S.D. Fla. Mar. 7, 2019) ("admonish[ing]" plaintiffs "not to allege facts in the alternative" through "and/or" allegations); *see also Bacon v. Celebrity Cruises, Inc.*, 2021 WL 3191058, at *2 (S.D. Fla. July 7, 2021).

As another example, Plaintiffs allege that the "MDL Defendants directly perpetrated, conspired to perpetrate, and/or aided and abetted the FTX Group's multi-billion-dollar frauds for their own financial and professional gain." CAC ¶ 6. This single sentence lumps together widely disparate parties (including former FTX executives who have pleaded guilty to fraud) and widely disparate allegations of misconduct, providing no notice of the allegations against any Movant.

Plaintiffs have been on notice of these defects and have had several opportunities to cure them. *See*, *e.g.*, ECF No. 124 (motion to stay discovery detailing the pleading flaws); *Garrison*

Action ECF No. 154 (motion to dismiss). They have consistently failed to cure these basic pleading errors. Dismissal with prejudice is therefore warranted on this ground alone. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

**Lack Of Causation**: As detailed *infra*, causation is an essential element of Plaintiffs' securities and consumer protection claims. Yet Plaintiffs do not—and cannot—connect their alleged losses to Movants' alleged general advertising related to FTX. Plaintiffs do not allege they directed any funds to FTX following each or any Movant's involvement with an FTX advertisement. Moreover, none of Movants' alleged advertisements mentions YBAs or FTT, the alleged securities on which Plaintiffs' claims are based.[10] General advertising of the FTX brand, without any mention of specific products, cannot plausibly make Movants sellers of any product or service offered by FTX, *see, e.g.*, *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828 (11th Cir. 2006), but the causal chain here is even more attenuated because no Plaintiff even alleges facts to show that s/he invested in FTT or YBAs ***at all***, much less viewed ***any*** advertisement involving a Movant. *See* CAC ¶¶ 39-54. The causal chain then breaks completely because Plaintiffs allege they suffered financial losses, not because of generic advertising, but because of ***FTX's*** clandestine fraud and theft. *Id*. ¶¶ 6, 145, 166. The complaint's 859 paragraphs contain ***no*** facts alleging how Movants supposedly participated in ***FTX's*** fraud; all Plaintiffs allege is that Movants participated in standard advertising arrangements for FTX's brand. *Id*. ¶¶ 287-703.

Plaintiffs' securities and consumer protection claims thus fail because Plaintiffs do not plead any causal link between the generic advertisements for FTX and Plaintiffs' alleged losses.

**No Plausibly Pled Allegations Of Knowledge**: Plaintiffs' remaining claims all hinge on

---

[10] Plaintiffs' vague allegation that Movants sold the "FTX Platform" as a security is utter nonsense. CAC ¶¶ 262-71, 818. The FTX trading platform is not a security. *See infra* Part V.B.1.

their conclusory assertion that Movants knew about and intentionally participated in the "thoroughly concealed" fraud taking place at FTX. *Id*. ¶ 145. But Plaintiffs have stated **no** non-conclusory facts to plausibly support this. Indeed, as outlined above, in sharp contrast to their detailed allegations regarding the FTX insiders' participation in and knowledge of the fraud, Plaintiffs fail to allege a single fact (as opposed to unsupported conclusions) with respect to any Movant plausibly suggesting that Movants were aware of, participated in, or otherwise furthered FTX's secret fraud.

Plaintiffs spill a lot of ink describing Movants' generic advertisements and general business connections. *See id*. ¶¶ 287-703. But, at bottom, Plaintiffs allege only that Movants entered into standard advertising and sponsorship agreements with FTX or its affiliates or otherwise engaged in advertising efforts for the FTX brand. *See id.* They fail to plead any facts remotely suggesting active and knowing participation in FTX's secret misconduct.

To be sure, Plaintiffs conclusorily state that "anyone who ha[d] done business with FTX, including paid endorsers, would . . . have personally witnessed one or more of the deficiencies" from which they could have divined FTX was engaging in fraud.[11] *Id*. ¶¶ 278, 724. And they allege that various Movants' "substantial investment experience" or "prominence" and "vast resources to obtain outside advisors" show that they "knew or should have known of potential concerns about FTX selling unregistered crypto securities and/or that they were aiding and abetting FTX Group's

---

[11] This conclusion is, of course, contradicted by the **many** people who did business with FTX without such knowledge, including sophisticated investors, municipalities, and Plaintiffs themselves. *See, e.g.,* ECF No. 179-2 at 5 (Former junior FTX employee discussing FTX naming rights deal for the arena: "It required a lot of just financial due diligence, a lot of education, and they [Miami-Dade County and the Miami Heat] took the time to learn.").

fraud and/or conversion." *Id.* ¶¶ 331, 364, 396, 418, 462, 537, 599, 622, 649, 696.[12] But these generic allegations regarding simply doing business with FTX, or having advisors or investment experience, are not enough to plead that Movants knew about FTX's fraud. *See Stevens v. Osuna*, 877 F.3d 1293, 1310 (11th Cir. 2017) ("Plaintiff's unsupported conclusory assertions that Defendants generally—including Mooney—'caused, participated in, condoned, or covered up' various alleged wrongs also fail to satisfy the federal pleading standard.").

Even more importantly, Plaintiffs' suggestion that Movants "must have" known of FTX's fraud is contradicted by their own pleading. Plaintiffs allege that the FTX insiders actively concealed their fraud, and they concealed it so well that regulators, lenders, institutional investors, and FTX's own customers (including Plaintiffs themselves) all failed to discover it prior to FTX's collapse. *See, e.g.*, CAC ¶¶ 145, 159-60, 162, 166, 182, 186, 266, 269-70, Exs. A ¶ 9, C at 25-26. Indeed, Plaintiffs rely heavily on the Declaration of Dan Friedberg (ECF No. 179-1), FTX's Chief Regulatory Officer who "oversaw all lawyers" at FTX, which avers that the three core FTX insiders who orchestrated FTX's fraud concealed it ***even from their own colleagues***. CAC ¶¶ 13-17, 731, Ex. A ¶¶ 6-7, 9. Friedberg personally claims to have "had no idea" of the fraud occurring at his company until November 7, 2022—long after any of Movants' deals. *Id.*, Ex. A ¶¶ 7, 9.

---

[12] With respect to GSW, Plaintiffs do not allege even this much; rather, they allege only that GSW "must have" looked into FTX's business. CAC ¶ 489. That says nothing about what GSW ***knew*** about FTX, much less what GSW ***knew about FTX's secret fraud*** (which even FTX's own Chief Regulatory Officer allegedly did not know about). *Id.* Ex. A ¶¶ 7, 9. As to others, Plaintiffs contradict themselves still further—claiming in one moment that a Movant had actual knowledge of FTX's fraud and in the next that he failed to do any due diligence at all. *Compare id.* ¶ 649, *with id.* ¶ 650.

The complaint also repeatedly recognizes the FTX executives' active concealment of their fraud. The First Interim Report in the FTX bankruptcy, Exhibit C to the CAC (ECF No. 179-3), demonstrates that "Bankman-Fried, Wang, and Singh . . . controlled nearly every significant aspect of the FTX Group," "*lied to third parties about their business*," and intentionally misled regulators. *Id.* at 3, 7, 26; *see also*, *e.g.*, *id.* at 11 (falsifying audit policies), 19-21 (lying about Alameda and secretly altering FTX core code to benefit Alameda), 25 (lying about hot/cold wallet setup). Plaintiffs themselves allege that the FTX platform was a fraud, CAC ¶ 181, that FTX's leaders agreed "to provide materially misleading financial statements to Alameda's lenders," *id.* ¶ 159, that FTX and Alameda operated as a common enterprise, contrary to representations of FTX insiders, *id.* ¶¶ 149-51, and that "FTX clearly violated their [sic] own terms of service," *id.* ¶¶ 131-32. Further, Plaintiffs allege FTX induced *many Movants themselves* to agree to take compensation in FTX stock or cryptocurrency*, id.* ¶¶ 295, 339, 395, 425, 580, 606—an illogical act if those Movants "knew" FTX was a valueless sham.

Plaintiffs specifically allege that FTX's regulators, investors, and even its Chief Regulatory Officer were all unaware of FTX's concealed fraud; therefore, it is wholly implausible that any of the Movants would have known merely by virtue of their general resources. Accordingly, in the face of the specifically-pleaded facts and complaint exhibits that doom Plaintiffs' claims, Plaintiffs' conclusory allegations that Movants "must have" divined FTX's fraud through their business dealings, based on alleged "red flags" only visible *now*—after FTX's criminal conduct has become public—must be rejected in their entirety. *See FTC v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) ("At the motion-to-dismiss stage, we consider the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments. We even treat specific facts demonstrated by exhibits as overriding more generalized or conclusory statements in the complaint

itself.").

These threshold pleading failures demonstrate that Plaintiffs' claims are wholly implausible and should be dismissed on this basis alone.

### B. Plaintiffs Fail To State Any Claim

Plaintiffs' claims fail not only for the dispositive reasons above but also because Plaintiffs fail to plead essential elements of each of their claims.

### 1. Plaintiffs Fail To State A Claim Under Any State's Securities Act

Counts 1, 8, and 13 allege claims under the Florida Securities Act, Fla. Stat. § 517.07, the California Securities Act, Cal. Corp. Code § 25110, and the Oklahoma Securities Act, 71 O.S. § 1-301. All fail as a matter of law.

**FTX itself is not a security that Plaintiffs "purchased" by using the application or trading platform**. Aware that their claims with respect to YBAs and FTT suffer the fatal defect that no Movant ever mentioned those products (and no Plaintiff actually alleges s/he purchased any of them), Plaintiffs proffer a novel, barely-half-baked theory that Movants' general promotion of FTX—the company—nevertheless involved the sale of unregistered securities because, according to Plaintiffs, FTX "may have" used customer funds to purchase registered or unregistered securities for itself or its affiliates. CAC ¶¶ 262-71. But even if true, that does not make *FTX* a security. At the risk of stating the obvious, trading platforms or exchanges are not securities, and Plaintiffs identify no authority holding otherwise.

That leaves Plaintiffs' claim that Movants are liable for the sale of YBAs and FTT. Even

accepting *arguendo* Plaintiffs' allegation that these products were securities,[13] Plaintiffs fail to allege liability under any of the relevant state statutes.

       **Florida, California, and Oklahoma all limit who may be liable for the sale of unregistered securities**. In Florida, liability for the sale of an unregistered security extends to only two groups: (i) the "person making the sale" of the unregistered security; and (ii) directors, officers, partners, and agents of the seller who "personally participate[] or aid[] in making the sale." Fla. Stat. § 517.211(1); *see also J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 327 (Fla. Dist. Ct. App. 2017). Under Florida law, the only "person making the sale" is the person in privity with the buyer of the alleged security. *See Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) ("[F]or a buyer to have a claim under Florida Statutes § 517.211, buyer/seller privity must exist."); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 (S.D. Fla. 1991) (plaintiff may recover under first prong of § 517.211 only from "his seller, who he is in privity with.").

       California similarly requires a showing of either privity or that defendant both "materially assist[ed]" in the sale of the unregistered security ***and*** did so with the "intent to deceive or defraud." Cal. Corp. Code §§ 25110, 25503, 25504.1; *see also In re All. Equip. Lease Program Sec. Litig.*,

---

[13] The question of whether these products constitute securities likely depends on facts unpleaded by Plaintiffs and unknown to Movants, who were not involved with either product. Movants note that courts have rejected the argument that digital tokens are securities in some circumstances, depending on the facts. *See*, *e.g.*, *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900, at *11-14 (S.D.N.Y. July 13, 2023) (XRP tokens were not securities where purchasers had no reason to expect that their payments would increase the value of XRP because they did not know who they had purchased the XRP from.).

2002 WL 34451621, at *11 (S.D. Cal. Oct. 15, 2002); *Hollifield v. Resolute Cap. Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023). Likewise, in the context of sales by unlicensed broker-dealers, only those in privity with the buyer may be directly liable. Cal. Corp. Code §§ 25210(b), 25501.5; *see also Jackson v. Fischer*, 2015 WL 1143582, at *22 (N.D. Cal. Mar. 13, 2015) ("Section 25501.5 expressly requires privity of contract as a condition to liability.").

Finally, Oklahoma requires either privity or a successful offer of sale, or that the defendant both controlled, oversaw, or otherwise "materially aid[ed]" in the sale **and** knew, or "in the exercise of reasonable care" could have known, of the conduct giving rise to the violation. 71 O.S. § 1-509; *Nikkel v. Stifel, Nicolaus & Co., Inc.*, 542 P.2d 1305, 1308 (Okla. 1975); *Sagicor Life Ins. Co. v. BOSC, Inc.*, 2007 WL 9711010, at *2 (W.D. Okla. Jan. 24, 2007).

Plaintiffs have not pled facts to satisfy these elements.

**No privity**: Plaintiffs do not—and cannot—allege that any Movant is in privity with any Plaintiff buyer of the alleged securities, as required for any Movant to be a "seller" under each state's laws. Fla. Stat. § 517.07; Cal. Corp. Code §§ 25110, 25503; *Nikkel*, 542 P.2d at 1308; *Sagicor Life Ins. Co.*, 2007 WL 9711010, at *2; *see also In re All. Equip. Lease Program Sec. Litig.*, 2002 WL 34451621, at *11 ("Section[] . . . 25503 only impose[s] liability on direct sellers; strict privity is required."); *Trilogy Props. LLC*, 2010 WL 7411912, at *12 (similar); *Hollifield*, 2023 WL 4291524, at * 6 (dismissing claims under § 25110 where plaintiffs did not allege any direct transaction with any defendant or that any defendant passed title to the challenged securities). Plaintiffs nowhere allege that any Movant entered into a contract or is otherwise in privity with them. To the contrary, Plaintiffs acknowledge that the "***FTX entities*** sold and offered to sell the unregistered YBAs to Plaintiffs." CAC ¶ 773.

**No solicitation of, personal participation in, or material aid in the sale of YBAs or FTT**: As explained above, in the absence of privity, securities liability in each state requires, at minimum, "direct[] involve[ment] in a sale of securities," *J.P. Morgan*, 224 So. 3d at 328, *see also* Cal. Corp. Code §§ 25110, 25503, 25504.1; 71 O.S. §§ 1-301, 1-509(G)(3)-(5), **and** "activity in inducing the purchaser to invest," *Groom v. Bank of Am.*, 2012 WL 50250, at *5 (M.D. Fla. Jan. 9, 2012); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996) ("[L]iability only extends to persons who successfully solicit the purchase[.]"); *AREI II Cases*, 216 Cal. App. 4th 1004, 1015 (2013) ("[T]he complaint must include allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities[.]"); *Marks v. Buckner*, 1984 U.S. Dist. LEXIS 18692, at *10 (N.D. Okla. Mar. 13, 1984) (finding no material aid in the absence of actual reliance).

Plaintiffs do not allege that any Movant was involved in FTX's alleged sale of YBAs or FTT to any of the Plaintiffs. Plaintiffs do not allege that any of the Movants even mentioned YBAs or FTT. Plaintiffs point only to commercials promoting ***the FTX exchange*** (a platform for buying and selling all kinds of crypto and fiat assets), announcements of FTX sponsorships, or logo placements. ***None*** of these statements (or non-statements) mentions—let alone could plausibly have "actively and directly . . . influence[d] or induce[d] [Plaintiffs] to buy"—YBAs or FTT. *Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005), *aff'd*, 185 F. App'x 823 (11th Cir. 2006); *see also Groom*, 2012 WL 50250, at *5; *Sagicor Life Ins. Co.*, 2007 WL 9711010, at *2 (dismissing claims where defendant was not alleged to have "directly solicited Plaintiff to purchase the bonds" at issue).

Further, Plaintiffs also fail to plead that any alleged solicitation by any Movant induced any of them to purchase any unregistered security. *See*, *e.g.*, *AREI II*, 216 Cal. App. 4th at 119

(granting demurrer without leave to amend where "plaintiffs d[id] not allege they relied on the offering memorandum prepared by [defendant] or were even aware of its existence"); *Dillon*, 385 F. Supp. 2d at 1310-11 (no liability for "personally participat[ing] or aid[ing] in the sale of an unregistered security . . . [unless defendant] personally engage[d] in some act or acts ***that induce[d] a purchaser to invest.***"); *Marks*, 1984 U.S. Dist. LEXIS 18692, at *10. Plaintiffs wholly fail to allege either that they purchased the alleged securities (YBAs and FTT) or that they did so as a result of any Movant's alleged actions. CAC ¶¶ 39-54. And this failure cannot be cured because no Movant ever mentioned either product.[14]

Plaintiffs' Florida, California, and Oklahoma securities claims should therefore be dismissed with prejudice.

While the failure to plead these core elements dooms all of Plaintiffs' securities claims, Plaintiffs' Florida and California claims suffer even further fatal infirmities.

---

[14] To the extent Plaintiffs claim they need only show (1) that they purchased an unregistered security and (2) that Movants promoted that unregistered security (something Plaintiffs ***cannot*** plead for the reasons discussed above), *see* CAC ¶ 36, Plaintiffs are wrong as a matter of law. Under ***any*** standard, Plaintiffs must plead and prove not only that Movants successfully solicited, personally participated, or materially aided, in the sale of an unregistered security, but ***also*** that Plaintiffs purchased such unregistered security ***as a result*** of Movants' conduct. *See*, *e.g.*, *Dillon*, 385 F. Supp. 2d at 1310-11; *AREI II*, 216 Cal. App. 4th at 1016-19; *Marks*, 1984 U.S. Dist. LEXIS 18692, at *10; *see also Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) ("[F]or solicitation to occur, a person must 'urge or persuade' another to buy a particular security" and "purchases [of that security must] follow[].").

**No plausible allegations that Movants acted as agents, partners, directors, or officers of FTX**: Plaintiffs' Florida securities claims further fail because Plaintiffs do not allege specific facts to show plausibly that any Movant served as an agent, partner, director, or officer of FTX. Plaintiffs baldly allege that Movants "are agents" of FTX, perhaps because they entered routine "spokesperson and marketing services," "partnership," "brand ambassador," "promotion[al]," or "naming rights" agreements with FTX. CAC ¶¶ 56-62, 63-67, 68, 293, 297, 306, 339, 323-24, 340, 343, 372, 383, 387, 402, 404, 423-24, 447, 468, 502-03, 578, 592, 601, 602, 611-12, 626, 667, 674, 683. This is insufficient as a matter of law to establish an agency relationship, let alone an agency relationship with respect to the sale of securities. *See, e.g.*, *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003) ("If advertising is the stuff of agency then every advertisement by a franchisee with the franchisor's mark would confirm an agency."); *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1336 (7th Cir. 1995) (permission to use another's trademark in advertising does not create agency relationship.); *Cawthon v. Phillips Petroleum Co.*, 124 So. 2d 517, 519 (Fla. Dist. Ct. App. 1960) ("general advertisement" did not constitute an assertion of agency.).

**No intent to defraud**: Plaintiffs' California securities claims also independently fail because—as detailed *supra*, at pp. 17-18, Plaintiffs have not plausibly alleged, and could not plausibly allege, "intent to deceive or defraud," which requires both "actual knowledge . . . of the wrong and of [the defendant's] role in furthering it." *Orloff v. Allman*, 819 F.2d 904, 907 (9th Cir. 1987), *abrogated on other grounds by Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564 (9th Cir. 1990); *see also Schaffer Fam. Inv., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1045-46 (C.D. Cal. 2015). Plaintiffs provide no support for their assertion that "secondary liability for materially assisting a . . . violation pursuant to section 25503[] does not require proof that [Movants] intended to deceive or defraud." CAC ¶ 818 n.52. To the contrary, it is well-established "that California law

21

is even stricter than [federal securities law because it] restricts liability for aiding and abetting a state securities violation to cases where it is shown that the defendant had an intent to deceive or defraud." *Orloff*, 819 F.2d at 907. Indeed, courts have held that constructive knowledge is insufficient to establish the requisite scienter. *Koehler v. Pulvers*, 614 F. Supp. 829, 836, 838-39 (S.D. Cal. 1985). Plaintiffs' conclusory allegations that Movants "knew or should have known" of FTX's alleged securities laws violations, CAC ¶¶ 331, 364, 396, 417-18, 462, 487-89, 537, 540, 599, 622, 649, 696, do not meet this high bar—and especially not with the particularity required by Rule 9(b).[15] *Hollifield*, 2023 WL 4291524, at *6-7.[16]

---

[15] Any allegation that Movants materially aided under Oklahoma law would likewise fail because Plaintiffs have not pled particularized facts to establish any Movant's knowledge that (or recklessness with respect to whether) the alleged securities were unregistered. *See Westinghouse Credit Corp. v. Founders Bank & Tr. Co.*, 1987 WL 1435734, at *12 (W.D. Okla. Oct. 26, 1987). It simply is not enough to allege—as Plaintiffs do—that Movants "knew or should have known" of the unlawful conduct. *See Farlow v. Peat Marwick Mitchell & Co.*, 666 F. Supp. 1500, 1506 (W.D. Okla. 1987).

[16] To the extent Plaintiffs separately claim liability under Cal. Corp. Code §§ 25210(b) and 25501.5 for "encouraging the FTX Group to offer and sell" unregistered securities, CAC ¶ 820, in addition to the lack of privity between Movants and Plaintiffs, *see supra*, at p. 18, those claims also fail because Plaintiffs include no allegations showing that either Movants or FTX qualify as a broker-dealer under California law. *See Culbertson v. Schuchert*, 110 F.3d 67, 67 (9th Cir. 1997) ("If [defendant] merely introduced the buyer and seller," he does not qualify as a broker-dealer under §§ 25501.5 and 25210.); *Konopasek v. Ten Assocs., LLC*, 2018 WL 6177249, at *5 (C.D. Cal. Oct.

### 2.      Plaintiffs Fail To State A Claim Under Florida, California, Or Oklahoma Consumer Protection Laws

Plaintiffs' consumer protection claims—brought under Florida (Count 2, FDUTPA), California (Count 7, UCL), and Oklahoma law (Count 12, OCPA)—likewise fail. Those laws do not apply to securities transactions like those alleged here. Nor have Plaintiffs sufficiently alleged the elements of these claims, let alone with the particularity required by Rule 9(b).

### a.      The Consumer Protection Claims Do Not Apply To Alleged Securities Transactions

Florida, California, and Oklahoma consumer protection claims—like the Federal Trade Commission Act ("FTC Act") on which they are modeled—are inapplicable to alleged misconduct "rooted in [alleged] securities transactions." *Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) (dismissing FDUTPA claim); *see also Betz v. Trainer Wortham & Co., Inc.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011) ("No court, however, has allowed [claims under California's UCL] to proceed where, as here, the predicate acts are [alleged] securities transactions."); *Robertson v. White*, 633 F. Supp. 954, 978 (W.D. Ark. 1986) (the OCPA does not "concern[] itself" with the sale of securities.).

Plaintiffs allege that YBAs, FTT, and FTX the company are unregistered securities "sold" by the Movants. *See, e.g.*, CAC ¶¶ 10, 27, 30, 233, 246-71, 771. As a result, this case is "rooted"

_____

22, 2018) (granting motion to dismiss claim under § 25501.5 where plaintiff "d[id] not allege facts indicating that [defendants] acted as . . . broker-dealers"); *Jackson*, 2015 WL 1143582, at *23 ("Because Jackson fails to allege facts sufficient to establish a primary violation of § 25501.5 as to Fischer, the court need not consider whether § 25501.5 authorizes a private right of action against secondary actors who participate in a primary violation of § 25501.5.").

in alleged securities transactions and these state consumer protection statutes do not apply.

> **b.      The Complaint Fails To Plead The Required Elements**

Plaintiffs' consumer protection claims further fail on their alleged facts. To assert a FDUTPA, UCL, or OCPA claim, a plaintiff must plead, with particularity: (1) a knowingly unlawful, unfair, or deceptive practice; (2) causation; and (3) damages. *SIG, Inc. v. AT&T Digit. Life, Inc*., 971 F. Supp. 2d 1178, 1195 (S.D. Fla. 2013); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1004 (N.D. Cal. 2009); *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1215 (W.D. Okla. 2015).

> **(1)      No Knowingly Unlawful, Unfair, Or Deceptive Act Or Unfair Practice**

Plaintiffs wholly fail to satisfy Rule 9(b) because their 400-plus paragraphs of allegations regarding Movants' advertising for and sponsorships by FTX fail entirely to establish that any Movant engaged in knowingly false or deceptive practices, or that any Plaintiff actually suffered harm as a result of any Movant's conduct. Rule 9 requires specific, non-conclusory allegations demonstrating "the content of [statements at issue] and the manner in which they misled the plaintiff." *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1332-33 (S.D. Fla. 2012) (dismissing FDUTPA claim under Rule 9(b) where the allegations failed to explain "who made the statements to them" and "how the statements misled [p]laintiffs"). Plaintiffs do not and—critically—cannot explain how a Movant appearing next to FTX's name saying things like "FTX, you in?" or displaying the letters "FTX" at their arena (for GSW) or on their clothes (*e.g.*, for Ms. Osaka) plausibly deceives anyone. Plaintiffs' conclusory allegations that those generic advertisements are deceptive solely because FTX turned out to have ***secretly*** engaged in fraud, *see* CAC ¶¶ 330, 361-63, 394-95, 415, 461, 486, 533-34, 536, 598, 618-21, 647-48, 694-95, 779-85, 846-48, fail to meet Rule 9 (or even Rule 8) pleading standards. *See, e.g.*, *Pop v. Lulifama.com*

*LLC*, 2023 WL 4661977, at *3 (M.D. Fla. July 20, 2023) (dismissing FDUTPA claim because, *inter alia*, plaintiff failed to identify "which posts from the Influencer Defendants led him to purchase the [contested] product or provided any details of the . . . Defendants' alleged scheme to pay the Influencer Defendants to promote [the contested] products—other than asserting that [the seller] pays 'significant monies' to promote its products").

### (a)   The Statements Are Puffery

Plaintiffs do not plead any specific, actionable misrepresentations by any Movant. Instead, Plaintiffs allege that some Movants expressed generalized support for FTX or made claims that FTX was "better" or "safer" than other alternatives. CAC ¶¶ 30, 274, 304-05, 330, 354, 361, 394, 438, 461, 478, 536, 637, 640, 648, 695, 705-06, 716. Such statements are classic puffery that cannot sustain a FDUTPA, UCL, or OCPA claim. *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) (holding that a statement amounted to non-actionable puffery where the statement was "not the sort of empirically verifiable statement that can be affirmatively disproven"); *see also Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1302 (10th Cir. 2022) ("[G]eneral statements of opinion typically constitute protected puffery, while specific representations of fact can form the basis of a deceptive trade practice claim.") (alteration in original); *In re Sony Grand Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) ("[O]nly misdescriptions of specific or absolute characteristics of a product are actionable."). Puffery includes "general claims of superiority," *Mfg. Rsch. Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982), generic statements suggesting a company or product is better than its competitors, *KeyView Labs, Inc. v. Barger*, 2020 WL 8224618, at *10 (M.D. Fla. Dec. 20, 2020), and statements suggesting a product is safe or secure, *see Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019). Plaintiffs do not allege a single statement by any Movant that goes beyond puffery or general brand promotion.

**(b)  Movants Did Not Participate In Misconduct**

To the extent Plaintiffs contend that the Movants were generically involved in FTX's misconduct, their claims likewise fail. When a FDUTPA, UCL, or OCPA claim is based on the deceptive acts of a corporation (*e.g.*, FTX) with which a defendant has a business relationship, a plaintiff must establish that the defendant ***personally participated in*** and ***knew of*** the alleged wrongdoing. *See SIG*, 971 F. Supp. 2d at 1195 (to be liable under FDUTPA, a defendant must have "***actively participated*** in or had some measure of control over the corporation's deceptive practices ***and*** . . . the defendant had or should have had knowledge or awareness of the misrepresentations.") (emphases in original); *Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *4 (E.D. Cal. Oct. 8, 2020) (defendant's liability under the UCL "must be based on his personal participation in the unlawful practices and unbridled control over th[ose] practices"); 15 O.S. § 753(2), (5) (making "a false or misleading misrepresentation, knowingly or with reason to know" is unlawful); 16 C.F.R. § 255.1(e) ("Endorsers may be liable for statements made in the course of their endorsements, such as when an endorser makes a representation that the endorser ***knows or should know*** to be deceptive[.]"); *see also* 15 U.S.C. § 45(m)(1)(A) (limiting liability under the FTC Act to persons "with actual knowledge or knowledge fairly implied on the basis of objective circumstances").[17]

Indeed, courts frequently reject FDUTPA claims (and similar claims under the FTC Act) where the plaintiff fails to plead facts showing that a defendant possessed knowledge that the company he worked for or promoted was engaging in deceptive acts, committing fraud, or

---

[17] FDUPTA "directs" Florida courts "to give due consideration and great weight . . . to the interpretations of the Federal Trade Commission Act." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1072-73 (Fla. Dist. Ct. App. 2008) (omission in original).

disseminating misleading advertising material. *See, e.g.*, *Silverboys, LLC v. Joelsson*, 2020 WL 13401917, at *12 (S.D. Fla. Nov. 30, 2020) (dismissing FDUTPA claim as to certain individual defendants where "Plaintiff's allegations regarding these . . . [d]efendants d[id] not support an inference that these [d]efendants were aware of [the improper conduct of others]"); *see also In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Pracs. Litig.*, 2012 WL 6062047, at *16 & n.8 (C.D. Cal. Dec. 3, 2012) (dismissing FDUTPA claim against defendant who was "merely an advertising spokesman," in part due to plaintiffs' failure to "allege facts showing that [defendant] had actual knowledge that the statements were false, [which] may subject him to liability under a direct participant theory").

As explained above, Plaintiffs do not and cannot plausibly allege any Movant had knowledge of or participated in FTX's secret wrongdoing. *See supra*, at pp. 13-16.

### (c) Anti-Touting Rules Do Not Support Plaintiffs' Consumer Protection Claims

To the extent the FTC or SEC "anti-touting" guidelines and regulations, *see* CAC ¶¶ 27, 34, 55, 306, 329, 374, 414, 416, 460, 486, 521, 535, 597, 604, form the basis of Plaintiffs' consumer protection claims, their claims fail for several reasons.

*First*, a violation of the FTC guidelines does not constitute a *per se* violation of the statutes Plaintiffs rely on because guidelines "do[] not prescribe conduct" and thus are not FTC rules or regulations. *Pop*, 2023 WL 4661977, at *4 (FDUTPA); *see also Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 641 (S.D.N.Y. 2018) (dismissing UCL claim and stating that "the FTC does not provide a right of action, and [a plaintiff] cannot engineer one through California law").

*Second*, the advisory FTC guidelines suggest endorsers disclose compensation only where audiences would not "ordinarily" or "reasonably expect[]" that an ad is in fact an ad. 16 C.F.R.

§ 255.5(a), (b)(2). Thus, the FTC disclosure requirements do not apply to commercials, print advertisements, or statements involving a person who describes himself as an endorser, or to any other situation where the facts would not "plausibly raise an inference that the non-disclosure of paid endorsements is likely to lead consumers to believe that the endorsements are unpaid" on social media or any other advertising forum. *Lokai Holdings LLC*, 306 F. Supp. 3d at 641-42; *see also* 16 C.F.R. § 255.5(a) (compensation only "needs to be disclosed when a significant minority of the audience for an endorsement does not understand or expect" that the endorser is being compensated.).

Here, it strains credulity for Plaintiffs to claim that anyone was deceived into thinking that, for example, a Movant acting in a Super Bowl commercial or appearing on a billboard was not receiving compensation. CAC ¶¶ 630-40. Moreover, Plaintiffs plead a widespread FTX advertising campaign in which FTX broadly publicized its agreements with well-known individuals and companies, as detailed *supra*, at n.6. The challenged advertisements thus obviously involve paid endorsements far outside the FTC guidelines.

*Third*, to the extent Plaintiffs' claims rest on the SEC's disclosure requirements, the consumer protection statutes they rely on cannot be applied to claims predicated on securities laws violations. *See supra*, at pp. 23-24. In any case, the relevant SEC provision applies only where the advertisement "describes" a "security." 15 U.S.C. § 77q(b). As detailed above, no Movant is alleged to have "described" an alleged security in any advertisement for FTX.

### (2)      Plaintiffs Fail To Allege Causation

Plaintiffs also fall far short of alleging the required "direct" or "immediate" causal nexus between Movants' alleged conduct and any actual damage Plaintiffs suffered. *See supra*, at pp. 12-13; *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696-97 (S.D. Fla. 2016); *Corbett v. PharmaCare*

*U.S., Inc.*, 567 F. Supp. 3d 1172, 1185 (S.D. Cal. 2021); *Walls v. Am. Tobacco Co.*, 11 P.3d 626, 630 (Okla. 2000). Here, the "direct" cause of Plaintiffs' injuries was FTX's secret misconduct, not the Movants' statements. ***FTX and its insiders***—not Movants—allegedly misappropriated Plaintiffs' funds. CAC ¶¶ 148-58. Where, as here, a plaintiff is damaged by a third party's actions, the causal chain is broken and the consumer protection claim fails. *See Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015); *Berkoff v. Masai USA Corp.*, 2011 WL 13224836, at *6 (C.D. Cal. Mar. 3, 2011). Moreover, because Plaintiffs have "failed to allege whether [they] viewed [the alleged misrepresentations] at all before purchasing the allegedly defective products," they have not pled causation and their claims fail. *Pop*, 2023 WL 4661977, at *3 (second alteration in original).

### (3)     Plaintiffs' UCL Claim Fails For Lack Of A Remedy

Plaintiffs' UCL claim also fails because "[a] UCL action is equitable in nature" and relief is "limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003). Here, Plaintiffs have no claim to injunctive relief. There is no threat of repeated injury in the future, and they likewise fail to allege any basis for restitution from Movants—as opposed to FTX, which allegedly sold the unregistered securities—because "any award that [P]laintiffs would recover from [Movants] would not be restitutionary as it would not replace any money or property that [Movants] took directly from [P]laintiff[s]." *Sugarman v. Brown*, 73 Cal. App. 5th 152, 164 (2021), *unpublished* (quoting *Korea Supply*, 29 Cal. 4th at 1150-51). Plaintiffs cannot obtain damages under the UCL, which alone defeats their claim. *Id.*

All of Plaintiffs' consumer protection claims should be dismissed.

### 3.     Plaintiffs Fail To State Claims For Civil Conspiracy

The Court should also dismiss Counts 3 and 11, alleging civil conspiracy. Civil conspiracy requires: (1) an agreement between multiple parties, (2) to do an unlawful act by unlawful means,

(3) the doing of some overt act in furtherance of the conspiracy, and (4) damage as a result of those acts. *Feng*, 2021 WL 8055449, at *11; *Branscum v. San Ramon Police Dep't*, 2012 WL 6697672, at *8 n.12 (N.D. Cal. Dec. 22, 2012). When a civil conspiracy claim sounds in fraud, as here, the plaintiff must meet the heightened pleading standards of Rule 9(b). *See supra*, at pp. 9-10.

Plaintiffs fail at the threshold requirement to plausibly and particularly allege an unlawful agreement among Movants. *See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *6 (S.D. Fla. Sept. 23, 2011); *Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *6 (S.D. Fla. Sept. 26, 2018); *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 868-69 (C.D. Cal. 2020). That Movants were allegedly paid to appear in advertisements falls far short of adequately alleging an agreement between Movants and FTX **to commit fraud** or some other unlawful act. *See GE Real Est. Servs., Inc. v. Mandich Real Est. Advisors, Inc.*, 337 So. 3d 416, 421 (Fla. Dist. Ct. App. 2021) ("To assume or speculate . . . that the [appellees] participated in a conspiracy . . . merely because they ultimately received some benefits from the [investments] is insufficient for the imposition of liability against them.") (alterations and omissions in original).

More fundamentally, Plaintiffs fail to identify what unlawful act any Movant supposedly conspired to do. Plaintiffs describe Movants' promotional activities at great length, *see* CAC ¶¶ 287-750, but critically fail to explain in non-conclusory terms how any of these statements are connected to an **unlawful** act by any Movant. *See, e.g., Apex Toxicology, LLC v. United HealthCare Servs., Inc.*, 2020 WL 13551299, at *3 (S.D. Fla. July 7, 2020) (noting that Rule 9(b) requires a plaintiff to identify "the content of such statements **and the manner in which they misled the plaintiff**").

### 4.    Plaintiffs Fail To State Claims For Aiding And Abetting

Counts 4, 5, 9, 10, and 14 (aiding and abetting) must similarly be dismissed. To state an aiding-and-abetting claim under Florida, California, or Oklahoma law, Plaintiffs must allege:

(1) an underlying violation by the primary wrongdoer; (2) the alleged aider and abettor's knowledge of the underlying violation; and (3) the alleged aider and abettor's substantial assistance in commission of the wrongdoing. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (Florida); *Impac Warehouse Lending Grp. v. Credit Suisse First Bos. LLC*, 270 F. App'x 570, 572 (9th Cir. 2008) (California); *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1197 (N.D. Okla. 2020) (Oklahoma). Even assuming each state permits such claims,[18] and even though Plaintiffs detail ***FTX's*** alleged wrongdoing, Plaintiffs fail entirely to plead the second and third elements, requiring dismissal.

a.     **Plaintiffs Fail To Plead Actual Knowledge**

All three states require a plaintiff bringing aiding-and-abetting claims to allege that the defendant "ha[d] actual knowledge of the underlying [tort], not merely that certain red flags indicate a defendant should have known of the [tort]." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018); *see In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (California); *Almeida*, 471 F. Supp. at 1197 (Oklahoma). To show such knowledge, plaintiff must include "allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), *aff'd*, 749 F.3d 938 (11th Cir. 2014). As detailed *supra*, at 5-7, Plaintiffs allege ***no*** facts suggesting that any Movant actually knew about any underlying "fraud" or "conversion" by FTX. Plaintiffs' conclusory assertions of negligence and failure to investigate "red flags" cannot fill this gap. *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 994 (11th Cir. 2018); *Almeida*, 471 F. Supp. 3d at 1198; *Honig*, 339 F. Supp. 3d at 1343.

---

[18] The availability of these claims under Oklahoma law is in doubt: the Oklahoma Supreme Court has not recognized claims for aiding and abetting fraud. *Almeida*, 471 F. Supp. 3d at 1197.

### b.     Plaintiffs Fail To Plead Substantial Assistance

Plaintiffs also fail to allege that any Movant provided the requisite "substantial assistance."
*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 373 (Fla. Dist. Ct. App. 2005);
*see Impac Warehouse Lending Grp.*, 270 F. App'x at 572; *Almeida*, 471 F. Supp. 3d at 1197.
"[T]he knowledge and substantial assistance components" of aiding and abetting "should be
considered relative to one another as part of a single inquiry designed to capture conscious culpable
conduct." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 504-05 (2023). Thus, the "dearth of factual
allegations on Defendants' purported knowledge regarding the [alleged] scheme" shows that no
facts could plausibly give rise "to the reasonable inference that the Defendants substantially
assisted or encouraged the wrongdoing"—because no Movant is plausibly alleged to have even
known about the "secret" fraud. *Honig*, 339 F. Supp. 3d at 1345; *see Chen v. PayPal, Inc.*, 61 Cal.
App. 5th 559, 583-84 (2021). Further, substantial assistance requires that "a defendant
affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the
[underlying tort]." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017);
*see IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 654 (2018). Plaintiffs do not allege adequately
that any Movant "affirmatively assist[ed]" or "help[ed] conceal" FTX's misconduct. Accordingly,
Plaintiffs fail to allege substantial assistance, which means that their aiding and abetting claims
fail. *Chang*, 845 F.3d at 1098.

### 5.     Plaintiffs Fail To Allege A Basis For Declaratory Relief

Count 6, for declaratory relief, rises and falls with Plaintiffs' other claims.

*First*, "[d]eclaratory relief is a procedural device which depends on an underlying
substantive cause of action and cannot stand on its own." *Eveillard v. Nationstar Mortg. LLC*,
2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015). Thus, where the substantive claims fail, a claim
for declaratory relief "must be dismissed." *Id*.

*Second*, Plaintiffs do not allege any forward-looking harms, much less any immediate threat of irreparable harm, as required to obtain declaratory relief. To the contrary, each request in Count 6 asks the Court to evaluate Plaintiffs' allegations of ***past*** conduct and ***past*** harms. None of the declarations Plaintiffs seek can redress these retrospective injuries. Any Plaintiff's supposed "purchase[s]" of YBAs and FTT and use of FTX's mobile application and web-trading services already occurred, and FTX "imploded" and filed for bankruptcy in November 2022. CAC ¶¶ 30-31. The absence of any ongoing or future harm requires dismissal. *See, e.g.*, *Park Place Kendall Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2020 WL 18779644, at *2-3 (S.D. Fla. June 24, 2022); *AquaDry Plus Corp. v. Rockhill Ins. Co.*, 2020 WL 927440, at *3 (S.D. Fla. Feb. 26, 2020).

*Third*, "a declaratory judgment . . . is not for the purpose of making factual determinations," *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011), but Plaintiffs' declaratory claim seeks resolution only of "facts" or legal issues "that are dependent upon the facts," CAC ¶ 805. The Court should resolve these questions, if at all, in connection with Plaintiffs' other claims. *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009); *cf. Calderon v. Ashmus*, 523 U.S. 740, 748-49 (1998).

Accordingly, Count 6 fails for each of these independent reasons.

### C.    Allowing Plaintiffs' Claims To Proceed Raises First Amendment Concerns

The First Amendment also mandates dismissal. Principles of constitutional avoidance militate strongly against interpreting state laws to impose tort liability for innocent commercial speech. *See, e.g.*, *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1310 (11th Cir. 2020). Indeed, even if Plaintiffs had identified any security on which their claims are based, the Supreme Court has cautioned against finding liability for "the expression of an opinion about marketable securities." *Lowe v. SEC*, 472 U.S. 181, 210 n.58 (1985). The risk of First Amendment infringement is particularly high here, where Plaintiffs challenge speech without plausibly alleging

that any Movant spoke untruthfully or with actual knowledge of FTX's wrongdoing. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513-14 (1984); *Braun v. Soldier of Fortune Mag., Inc.*, 968 F.2d 1110, 1118 (11th Cir. 1992).

**D.     The Cases Should Be Dismissed Because FTX Is An Indispensable Party**

Alternatively, even if the Court were to find that Plaintiffs state any claim, it should nonetheless dismiss the actions for failure to join indispensable party FTX. Under Rule 19, an absent party is necessary where it "claims an interest relating to the subject of the action" and resolution in its absence may, "as a practical matter," impair the absent party's "ability to protect" that interest, or where "the court cannot accord complete relief among existing parties" in that party's absence. Fed. R. Civ. P. 19(a)(1). If a necessary party cannot be joined, the Court should consider whether "equity and good conscience" allow for resolution in that party's absence. *Id.* at 19(b).

**1.     Under Both Prongs Of The Rule 19 Test, FTX Is A Necessary Party**

Plaintiffs' claims turn on whether FTX violated the law. *FTX* allegedly provided YBAs, FTT, and mobile and web-based trading services to Plaintiffs; *FTX* allegedly failed to register those products as securities; and *FTX* allegedly misappropriated Plaintiffs' deposits for its own use. CAC ¶¶ 145-66, 247-71. *FTX* has an interest in defending the legal status of the YBAs, FTT, and its trading services, all disputed in Plaintiffs' unregistered securities claims. *Id.* ¶ 810; *see also* 15 U.S.C. § 77*l*.[19] And FTX alone has an interest in showing that its business practices were not fraudulent, a predicate that Plaintiffs must prove to prevail on their aiding and abetting claims. The

---

[19] FTX need not "be bound by the judgment" "in the technical sense" for the Court to consider its interests. *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 110 (1968); *see Challenge Homes, Inc. v. Gr. Naples Care Ctr., Inc.*, 669 F.2d 667, 670 (11th Cir. 1982) (same).

indispensable party rule applies fully here, where the absent seller—FTX—is in the midst of complex bankruptcy proceedings involving active disputes about whether these same customer funds are debtor property. *See* Bankr. Compl. ¶¶ 188-99; *Carolina Cas. Ins. Co. v. Condor Aerial, LLC*, 2018 WL 5668505, at *3 (N.D. Fla. July 2, 2018) (bankruptcy trustee indispensable).

FTX also has a core interest in the relief Plaintiffs seek, including rescission for payments to FTX, which is the only appropriate remedy for Plaintiffs' unregistered securities claims. *See Fallani v. Am. Water Corp.*, 574 F. Supp. 81, 84 (S.D. Fla. 1983); Fla. Stat. § 517.211(1), (3)(a); *Moss v. Kroner*, 197 Cal. App. 4th 860, 873 (2011); Cal. Corp. Code § 25501; *Adams v. Smith*, 734 P.2d 843, 845 (Okla. Civ. App. 1986), 71 O.S. § 1-509(B)(1), (3). The same applies to Plaintiffs' demands for restitution of purportedly lost funds, and an accounting. *See* CAC Prayer. Indeed, these forms of relief can come ***only*** from FTX. Movants have no power to restore deposits Plaintiffs may have given ***to FTX*** that were allegedly misappropriated ***by FTX***. *See* Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011). Likewise, only FTX can fulfill the injunction Plaintiffs request, "directing the Defendants to identify, with Court supervision, victims of their conduct" and prohibiting "Defendants from continuing those unlawful practices as set forth herein." CAC Prayer.

### 2. Because FTX Cannot Be Joined Or Subject To Discovery, "Equity And Good Conscience" Favor Dismissal Under Rule 19(b)

The bankruptcy stay prevents FTX from being joined, *see* 11 U.S.C. § 362(a)(1), (3), and likely prevents discovery from FTX, as well as its former employees.[20] Given FTX's direct interest

---

[20] *See, e.g.*, *Lewis v. Russell*, 2009 WL 1260290, at *4 (E.D. Cal. May 7, 2009) (precluding non-party discovery based on stay); *In re Phila. Newspapers, LLC*, 423 B.R. 98, 105 (E.D. Pa. 2010) (same). Discovery is also complicated by the ongoing prosecution of Bankman-Fried. *See* Gov't's

in this case, the Rule 19 equitable factors favor dismissal. *2 Montauk Highway LLC v. Glob. Partners LP*, 296 F.R.D. 94, 101 (E.D.N.Y. 2013). FTX (subject to potential adverse rulings) and Movants (unable to obtain critical evidence from FTX) would both suffer in FTX's absence. Movants cannot fully or fairly litigate without the "evidence, factors or defenses necessary to determine" the central issues—much of which FTX holds. *Id.* A remedy in FTX's absence would not be "adequate" because it would not provide full relief. And Plaintiffs can obtain complete relief through the ongoing adversary proceedings in the bankruptcy court. *See* Fed. R. Bankr. P. 7001; Bankr. Compl.

### E.    Further Amendment Would Require Leave And Should Be Denied

Finally, the Court should dismiss the complaint without leave to amend. District courts have "extensive discretion" to deny leave to amend when amendment would unduly prejudice the opposing party or would be futile. *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999); *Seiger ex rel. Seiger v. Philipp*, 735 F. App'x 635, 637 (11th Cir. 2018). Both militate against amendment here. For nearly a year, Plaintiffs' counsel have shopped this litigation from forum to forum and judge to judge, most recently by moving to create the instant multidistrict litigation. As part of these maneuvers, Plaintiffs have filed at least nine original complaints in state and federal court, three amended complaints, and now the instant complaint. *See* ECF Nos. 156, 179. As a result, Plaintiffs have alleged nearly identical claims more than a dozen times, giving Plaintiffs more than a dozen opportunities to plead adequate factual allegations and refine their

---

Appl. to Intervene & Mot. Stay & Mem. in Supp., ECF No. 247; *cf.* Order at 1, *SEC v. Bankman-Fried*, No. 22-cv-10501 (S.D.N.Y. Feb. 13, 2023), ECF No. 16 (staying proceedings "until the conclusion of the parallel criminal case"); Order at 1, *CFTC v. Bankman-Fried*, No. 22-cv-10503 (S.D.N.Y. Feb. 13, 2023), ECF No. 38.

theories of liability. Moreover, Plaintiffs' most recent amendments came **after** Movants filed a motion to dismiss their first amended complaint in *Garrison* for failure to state a claim. That motion detailed the longstanding flaws in Plaintiffs' claims and showed Plaintiffs how to attempt to counter Movants' arguments in any new pleadings. *See Garrison* Action, ECF No. 154.

Yet the complaint still suffers from the same fatal defects as the previous twelve iterations. Plaintiffs have consistently failed to plead plausible—or, in truth, any—allegations showing that any Movant mentioned YBAs or FTT, had knowledge of FTX's wrongdoing, or caused Plaintiffs' damages. Providing Plaintiffs with yet another opportunity to amend would significantly prejudice Movants, who have incurred significant costs to litigate Plaintiffs' baseless claims for nearly a year. Furthermore, as Plaintiffs' failure to adequately state their claims in any of their thirteen complaints to date makes plain, any amendment would be futile. No further amendment should be permitted. *See*, *e.g.*, *Opus Grp., LLC v. Enomatic Srl*, 2012 WL 13134611, at *1 (S.D. Fla. Aug. 23, 2012) (denying leave to file third amended complaint). This is particularly true given that Plaintiffs have violated the longstanding rule against shotgun pleadings from the very first iteration of their claims. *See Barmapov*, 986 F.3d at 1326 (plaintiff "squandered [the] opportunity [to amend] by filing another shotgun pleading.").[21]

---

[21] Defendant Bankman-Fried's Motion to Dismiss (ECF No. 264) asserts that "Plaintiffs are subject to FTX US and FTX Trading, Ltd.'s Terms of Service, which contain enforceable arbitration clauses and class action waivers," *id.* at 1. Movants cannot at present verify these statements—given the inability to obtain discovery from FTX or absent voluntary production by Plaintiffs—but may raise the arbitration and class waiver issues upon obtaining the agreements binding Plaintiffs.

WHEREFORE, Movants respectfully request that the Court dismiss these actions with prejudice, award them their attorneys' fees and costs pursuant to Fla. Stat. §§ 501.2105(1) and 517.211(6), and grant them such other and further relief as the Court deems just and proper.

**REQUEST FOR HEARING**

In accordance with Local Rule 7.1(b)(2), Movants respectfully request that the Court hear oral argument on their Motion to Dismiss because this case involves myriad legal issues and statutory schemes. Movants believe oral argument would further the Court's understanding of the multiple grounds for dismissal with prejudice. Movants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

Date:  September 21, 2023

Respectfully submitted,

**COLSON, HICKS, EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
(305) 476-7400

By: */s/ Roberto Martinez*
  Roberto Martínez
  Florida Bar No. 305596
   *bob@colson.com*
  Stephanie A. Casey
  Florida Bar No. 97483
   *scasey@colson.com*
  Zachary Lipshultz
  Florida Bar No. 123594
   *zach@colson.com*

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence Gene David, Shaquille O'Neal, Golden State Warriors, LLC and Naomi Osaka*

**LATHAM & WATKINS LLP**
  Andrew B. Clubok (*pro hac vice*)
   *andrew.clubok@lw.com*
  Susan E. Engel (*pro hac vice*)
   *susan.engel@lw.com*
  Brittany M.J. Record (*pro hac vice*)
   *brittany.record@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200
Fax: +1.202.637.2201

**LATHAM & WATKINS LLP**
  Marvin S. Putnam (*pro hac vice*)
   *marvin.putnam@lw.com*
  Jessica Stebbins Bina (*pro hac vice*)
   *jessica.stebbinsbina@lw.com*
  Elizabeth A. Greenman (*pro hac vice*)
   *elizabeth.greenman@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500
Fax:  +1.424.653.5501

**LATHAM & WATKINS LLP**
 Michele D. Johnson (*pro hac vice*)
  *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235
Fax: +1.714.755.8290

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence Gene David, and Shaquille O'Neal*

**GIBSON, DUNN & CRUTCHER LLP**

Matthew S. Kahn (*pro hac vice*)
 *MKahn@gibsondunn.com*
Michael J. Kahn (*pro hac vice*)
 *MJKahn@gibsondunn.com*
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Phone: 415.393.8200

Michael Dore (*pro hac vice*)
 *MDore@gibsondunn.com*
Jamila MacEbong (*pro hac vice*)
 *JMacEbong@gibsondunn.com*
333 South Grand Avenue
Suite 4600
Los Angeles, CA 90071-3197
Phone: 213.229.7155

*Attorneys for Defendants Golden State Warriors, LLC and Naomi Osaka*

**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
Phone: (305)-577-3100

By: */s/ Edward Soto*
 Edward Soto (Fla Bar. No. 0265144)
  *edward.soto@weil.com*

*Attorney for Defendant Shohei Ohtani*

41

**McDERMOTT WILL & EMERY LLP**
333 SE 2nd Ave., Suite 4500
Miami, Florida 33131
Telephone: (212) 547-5768
Facsimile: (305) 347-6500

By: */s/ Nathan Bull*
  Nathan Bull (Fla. Bar No. 1029523)
   *nbull@mwe.com*

**McDERMOTT WILL & EMERY LLP**
 Jason D. Strabo (*pro hac vice*)
  *jstrabo@mwe.com*
 Ellie Hourizadeh (*pro hac vice*)
  *ehourizadeh@mwe.com*
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 788-4125
Facsimile: (310) 277-4730

**McDERMOTT WILL & EMERY LLP**
 Sarah P. Hogarth (*pro hac vice*)
  *shogarth@mwe.com*
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8354
Facsimile: (202) 756-8087

*Attorneys for Defendant Stephen Curry*

**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700
Fax: 954-468-2454

By: */s/ Christopher S. Carver*
 Christopher S. Carver, Esq.
 Florida Bar No. 993580
  *christopher.carver@akerman.com*
 Jason S. Oletsky, Esq.
 Florida Bar No. 9301
  *jason.oletsky@akerman.com*
 Katherine A Johnson, Esq.
 Florida Bar No. 1040357
  *katie.johnson@akerman.com*

*Attorneys for Defendant David Ortiz and*
*Udonis Haslem*

**MARCUS NEIMAN RASHBAUM & PINEIRO LLP**
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel: (954) 462-1200

2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305)-400-4260

By: */s/ Jeffrey Neiman*
Jeffrey Neiman
Fla Bar. No. 544469
  *jneiman@mnrlawfirm.com*
Jeffrey Marcus
Fla. Bar No. 310890
  *jmarcus@mnrlawfirm.com*
Michael Pineiro
Fla. Bar No. 041897
  *mpineiro@mnrlawfirm.com*
Brandon Floch
Fla. Bar No. 125218
  *bfloch@mnrlawfirm.com*

**BERK BRETTLER LLP**
9119 Sunset Boulevard
West Hollywood, CA 90069
Tel.: (310) 278-2111
Andrew B. Brettler (*pro hac vice*)
  *abrettler@berkbrettler.com*

*Attorneys for Defendant Kevin O'Leary and Solomid Corporation*

43

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on September 21, 2023, a true and correct copy of the foregoing

was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true

and correct copy to be served on all counsel of record.

By: *<u>/s/ Roberto Martinez</u>*
        Roberto Martínez

44