# BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: FTX CYPTOCURRENCY EXCHANGE

COLLAPSE LITIGATION

**MDL No. 3076**

This document relates to: Multinational VC Defendants, Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-3655

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

*Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960

*Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974

---

## PLAINTIFFS' MOTION TO SERVE CERTAIN DEFENDANTS
## WITH PROCESS THROUGH ALTERNATE MEANS

Plaintiffs, who are the named plaintiffs in *O'Keefe* (S.D. Fla.),[1] *O'Keefe* (N.D. Cal.),[2] *O'Keefe* (E.D. Wa.),[3] *Chernyavsky* (S.D. Fla.),[4] *Cabo* (N.D. Cal.),[5] and the applicable MDL administrative complaints,[6] request an Order pursuant to Federal Rule of Civil Procedure 4(f)(3) authorizing Plaintiffs to serve multinational defendants in the above-listed actions ("Defendants") pursuant to the "Service Plan" discussed below.

The Defendants at issue here are sophisticated multinational entities who, despite having actual knowledge of these proceedings for months, are delaying prosecution of this case by continuing to refuse to accept or otherwise waive service. In order to preserve judicial resources and keep this litigation on its current productive schedule, and given Defendants' efforts to stall the case and extract concessions from Plaintiffs (rather than simply accept service and proceed with participating, which most have already done by submitting docket filings, monitoring status conferences, and regularly communicating with Plaintiffs' counsel), Plaintiffs move the Court for an Order authorizing service on Defendants via e-mail communication to Defendants and/or Defendants' counsel.[7]

Rule 4(f)(3) provides for effectuating service on individuals outside of the United States[8] through other means not prohibited by international agreement or by the destination country. It is

---

[1] The named plaintiff in *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700 ("*O'Keefe* (S.D. Fla.)") is Connor O'Keefe.

[2] The named plaintiff in *O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-03655 ("*O'Keefe* (N.D. Cal.)") is Connor O'Keefe.

[3] The named plaintiff in *O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR ("*O'Keefe* (E.D. Wa.)") is Connor O'Keefe.

[4] The named plaintiffs in *Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960 ("*Chernyavsky* (S.D. Fla.)") are Alexander Chernyavsky, Ryan Henderson, Vitor Vozza, Kyle Rupprecht, Warren Winter, and Sunil Kavuri.

[5] The named plaintiffs in *Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974 ("*Cabo* (N.D. Cal.)") are Leandro Cabo, Vitor Vozza, Kyle Rupprecht, Warren Winter, and Sunil Kavuri.

[6] The named plaintiffs in the applicable MDL administrative complaints against the Bank Defendants (the "Bank Defendants MDL Complaint") and the Multinational VC Defendants (the "Multinational VC Defendants Complaint") (R. Docs. 155 & 182) are Brandon Orr, Leandro Cabo, Ryan Henderson, Michael Livieratos, Alexander Chernyavsky, Gregg Podalsky, Vijeth Shetty, Chukwudozie Ezeokoli, Michael Norris, Edwin Garrison, Shengyun Huang, Julie Papadakis, Vitor Vozza, Kyle Rupprecht, Warren Winter, Sunil Kavuri.

[7] Attached as **Exhibit 1** to this Motion is the supporting declaration of Molly L. Wells ("Wells Decl."), citations to which include the referenced exhibits therein.

[8] Fed. R. Civ. P. 4(h)(2) applies the broadly worded Rule 4(f)(3) to service on foreign business

important to note that Rule 4(f)(3) is available as a *first resort*, and is recognized by circuit courts, including the Eleventh Circuit, and numerous district courts as equal to other service methods under Rule 4(f).[9] Thus, Plaintiffs are not required to exhaust service of process by methods enumerated in Rule4(f)(1) or Rule 4(f)(2) before seeking the alternate relief provided in Rule 4(f)(3). *See* n.9. And, the means of service Plaintiffs seek—email on Defendants and their U.S. counsel—satisfy all requirements of Rule (4)(f)(3) as each satisfy due process and none contravene any source of international law, including relevant laws of the destination countries.

Alternate methods of service are particularly apt because of Defendants' attempts to employ service as a tactic to either delay litigation or force Plaintiffs to negotiate. Due to Defendants' stated objections to personal jurisdiction, Plaintiffs initiated lawsuits against them in both Florida and California (against Temasek, SoftBank, and Sino Global) and in Florida and Washington (against Deltec and Chalopin). Plaintiffs have been in communication with counsel for Temasek, SoftBank, Deltec and Chalopin regarding this MDL and the original consolidated actions, and counsel for Sino Global made an appearance in this MDL just this morning. There is no dispute that these Defendants have had actual knowledge of this litigation. Yet, in contravention of Defendants' clear "duty [under Federal Rule of Civil Procedure 4(d)(1)] to avoid unnecessary expenses of serving the summons," counsel for Temasek, SoftBank, Deltec, and Chalopin refuse to accept or waive service on their clients' behalf. Even more galling, certain of them have sought to extract certain concessions in return for waivers that Plaintiffs plainly cannot make.

Plaintiffs therefore respectfully request an order from this Court allowing them to effect service on Defendants via e-mail communication to Defendants and/or Defendants' counsel. Other defendants in this MDL have already been served by alternate means. *See* Order, *Garrison v. Paffrath*, No. 23-21023-CIV-ALTONAGA/Damian (S.D. Fla. May 5, 2023).

---

entities.

[9] *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010) ("Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing." ) (quoting *Rio Props.*, 284 F.3d at 1015); *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003). *See also*, *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002); *Swarna v. Al-Awadi*, 2007 WL 2815605, at *1–2 (S.D.N.Y. Sept. 20, 2007).

## I.     **BACKGROUND**

Plaintiffs named certain multinational defendants in this action for their alleged role in aiding and abetting the FTX fraud: Defendants Temasek Holdings (Private) Ltd. ("Temasek"), SoftBank Group Corp., SoftBank Investment Advisers (UK) Ltd., SoftBank Global Advisers Ltd. (together with SoftBank Group Corp. and SoftBank Investment Advisers (UK) Ltd., "SoftBank"), Sino Global Capital Ltd. ("Sino Global"), Deltec Bank and Trust Company Limited ("Deltec"), and Jean Chalopin (collectively, "Defendants"). These foreign defendants are sophisticated multinational companies, or, in the case of Chalopin, a principal and investor of such an entity.

Each Defendant is alleged to have aided FTX's fraudulent scheme in critical ways: Temasek, SoftBank, and Sino Global injected hundreds of millions in much needed start-up capital across multiple funding rounds, affirmatively laundered the reputations of FTX and its top executive, Samuel Bankman-Fried ("SBF"), and personally advised FTX as the fraudulent scheme took meteoric rise.[10] Temasek and SoftBank were two of FTX's largest financial backers, putting up $275 million and $100 million, respectively, and held multiple seats on FTX's advisory board,[11] with Pradyumna Agrawal, Managing Director for Blockchain Investments, and Antony Lewis, Director for Crypto & Blockchain Venture Building & Investing, serving on behalf of Temasek; and Rajeev Misra, CEO of Softbank Investment Advisors (UK) Ltd. and SoftBank Global Advisers Ltd., and Tom Cheung, a Partner of SoftBank Investment Advisers (UK) Ltd., serving on behalf of SoftBank.[12] Sino Global underwrote FTX's fraudulent enterprise in some amount in the "mid-seven figures" and maintained similar rapport with FTX, providing advice, support, and other assistance by way of its founder and managing partner, Matthew Graham.[13]

With huge stakes in FTX and close ties to its top executives, Temasek, SoftBank and Sino Global publicly touted FTX, encouraging depositors to place their hard-earned fiat and

---

[10] *See, e.g.*, R. Doc. 182, Multinational VC MDL Complaint, at ¶¶ 262, 263, 307, 332.
[11] The advisory board was comprised of several other Defendants in the MDL, as well as FTX executives from across the United States and The Bahamas, including in California, Florida, Illinois, Massachusetts, Texas, and Washington. *See* Multinational VC MDL Complaint at ¶ 361.
[12] *See* R. Doc. 182, Multinational VC MDL Complaint, at ¶¶ 262, 263.
[13] R. Doc. 182, Multinational VC MDL Complaint, at ¶¶ 307, 332 et seq.

crypto assets in accounts on the exchange, all while highlighting its purportedly unmatched safety:







Deltec and Chalopin, meanwhile, helped to foster a lax regulatory jurisdiction in The Bahamas necessary to the FTX fraud, and provided high-risk, non-routine banking services to

---

[14] R. Doc. 182, Multinational VC MDL Complaint, at ¶ 154.
[15] R. Doc. 182, Multinational VC MDL Complaint, at ¶ 146.
[16] R. Doc. 182, Multinational VC MDL Complaint, at ¶ 270.

FTX that other banks would not provide. As the chief executive of Deltec, Chalopin spent years assisting the Bahamian government in "transform[ing] the country into a sandbox for digital asset startups." Indeed, as Chalopin tells it, "[i]t would be nothing in The Bahamas if it weren't for us [Deltec] in the beginning."[17] Transforming The Bahamas into a crypto haven was no easy task—Chalopin recalls it was like clearing a jungle in which "you have to use your machete and cut the branches."[18]  Deltec was happy to help FTX in these and other ways. Chalopin often touted, "Deltec has been a long-time friend of FTX, and it is our pleasure to support them," noting that Deltec had "embraced [FTX's] vision of the future."[19] FTX, in turn, was a great friend of Deltec. After an extended failure by Deltec to raise debt capital in New York, Chalopin turned to FTX and, in October 2021, Deltec's parent company, Deltec International Group, received a $50 million loan from Norton Hall Ltd., an entity controlled by Ryan Salame, CEO of FTX's Bahamian outfit, paid for with Class Member funds.[20]

## II.    RELEVANT PROCEDURAL HISTORY

On February 22, 2023, Plaintiff O'Keefe filed his initial putative class action in the U.S. District Court for the Southern District of Florida against Defendants Deltec, Chalopin, Temasek, Softbank Vision Fund (AIV M2) L.P., Softbank Group Corp., and Sino Global Capital Limited, among others. *See O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700 ("*O'Keefe* (S.D. Fla.)"). Plaintiff O'Keefe initiated service and/or sought waivers of service from Defendants. Then-counsel for Temasek, Robert G. Houck of Clifford Chance US LLP, agreed to accept service on behalf of the entity but did not execute the waiver at that time. Though service of the *O'Keefe* (S.D. Fla.) complaint on Deltec and Chalopin has been effected through the Bahamian central authority, Deltec and Chalopin declined to waive service of the *O'Keefe* (E.D. Wa.) complaint.[21] Plaintiffs have not yet effected service on any other Defendant, and no other Defendant agreed to waive service of the *O'Keefe* (S.D. Fla.) complaint.

The *O'Keefe* (S.D. Fla.) matter was consolidated in MDL No. 3076 before this Court and is now stayed and administratively closed. In conformance with this Court's order in the MDL,

---

[17] R. Doc. 155, Bank Defendants MDL Complaint, at ¶ 284.
[18] R. Doc. 155, Bank Defendants MDL Complaint, at ¶ 285.
[19] R. Doc. 155, Bank Defendants MDL Complaint, at ¶¶ 296.
[20] R. Doc. 155, Bank Defendants MDL Complaint, at ¶¶ 297.
[21] Wells Decl.

counsel for Plaintiffs held discussions with counsel for Defendants regarding whether they maintained personal jurisdiction objections. Except for Sino Global, who has not yet stated any jurisdictional objections, each Defendant in fact disputed personal jurisdiction in Florida. Although Plaintiffs disagreed that this Court lacked personal jurisdiction over Defendants, Plaintiffs filed suit in California and Washington—other jurisdictions in which Plaintiffs believe personal jurisdiction exists over Defendants—to cure any objections.[22] Like *O'Keefe* (S.D. Fla.), these matters were tagged for consolidation in MDL No. 3076 and are now stayed and administratively closed.

On August 7, 2023, Plaintiffs Chernyavsky, Henderson, Vozza, Rupprecht, Winter, and Kavuri filed a putative class action lawsuit in the Southern District of Florida against a wider group of Defendants that included certain domestic subsidiaries—namely, Temasek International (USA) LLC, SB Group US, Inc., and Sino Global Capital Holdings, LLC—in addition to Defendants, again to address Defendants' personal jurisdiction concerns. *See Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960 ("*Chernyavsky* (S.D. Fla.)"). The matter was tagged for consolidation in the MDL and is now stayed and administratively closed.

That same date, Plaintiffs Cabo, Vozza, Rupprecht, Winter, and Kavuri filed a putative class action in the Northern District of California against the same group of Defendants as in the *Chernyavsky* (S.D. Fla.) matter, again to cure any personal jurisdiction objections. *See Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974 ("*Cabo* (N.D. Cal.)"). The matter was tagged for consolidation in the MDL and is now stayed and administratively closed.

Finally, Plaintiffs asserted their claims against Defendants in the MDL administrative complaints filed with this Court on August 7, 2023. *See* R. Docs. 155 & 159. According to this Court's orders, Plaintiffs will litigate their claims against Defendants in the MDL before this

---

[22] Specifically, Plaintiff O'Keefe filed a class action on July 24, 2023 in the Northern District of California in an abundance of caution to address the personal jurisdiction objections of Temasek and others, *see O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-03655 ("*O'Keefe* (N.D. Cal.)"), and a separate class action on July 26, 2023 in the Eastern District of Washington against Deltec, Chalopin and others, *see O'Keefe v. Farmington State Bank d/b/a Moonstone Bank*, E.D. Wa. Case No. 2:23-cv-00213-TOR ("*O'Keefe* E.D. Wa.").

Court rather than in *O'Keefe* (S.D. Fla.), *O'Keefe* (N.D. Cal.), *O'Keefe* (E.D. Wash.), *Chernyavsky* (S.D. Fla.), or *Cabo* (N.D. Cal.).

Plaintiffs resumed efforts to effect service on Defendants. Again, although Plaintiffs have been in discussion with counsel for Defendants Temasek, SoftBank, Deltec, and Chalopin, Defendants have refused to accept service. After Sino Global's counsel made an appearance this morning, undersigned counsel reached out to confer with them regarding the filing of this Motion and learned that Sino Global refused to waive service. But it is apparent that Defendants' counsel have received Plaintiffs' counsel's email communications, and as a result, Defendants have actual knowledge of the foregoing proceedings. Details of those communications follow.

**Temasek.** Undersigned counsel specifically sought an executed waiver from Temasek in accordance with its prior promise to waive service. (In the time since that promise, Temasek had replaced Mr. Houck with Andrew Ehrlich and others of Paul, Weiss, Rifkind, Wharton & Garrison LLP.) Mr. Ehrlich and Temasek refused to make good on the waiver promise and instead indicated that they would agree to waive service in O'Keefe (N.D. Cal.) only if Plaintiffs would agree to dismiss the *O'Keefe* (S.D. Fla.) matter.[23] Because Plaintiffs filed the lawsuits in both jurisdictions to address Temasek's personal jurisdiction objections, they could not agree to

---

[23] *See* Wells Decl. Mr. Ehrlich and his team argue that Plaintiff O'Keefe engaged in impermissible claim splitting by filing lawsuits in Florida and California. This concern is both self-generated and unfounded. It is self-generated because Plaintiff O'Keefe filed the two lawsuits to address Temasek Holdings (Private) Ltd.'s personal jurisdiction objections. It is unfounded because the claim splitting doctrine does not apply to preclude a second filed action where one of the courts in question lacks personal jurisdiction. *See, e.g.*, *Rumbough v. Comenity Cap. Bank*, 748 F. App'x 253, 256 (11th Cir. 2018) ("Absent jurisdiction, our claim-splitting rule does not preclude [a plaintiff]'s second suit against [the same defendant]."). Thus, Plaintiff O'Keefe arguably will have engaged in claim splitting only if the Court concludes that personal jurisdiction exists over Temasek Holdings (Private) Ltd. in both Florida and California—an outcome which presumably Temasek Holdings (Private) Ltd. views as unlikely seeing as it continues to object to personal jurisdiction in *any* U.S. jurisdiction. Moreover, among the available remedies for violations of the claim-splitting doctrine is consolidation, *see Ewing v. Carrier*, 35 F.4th 592, 594 (7th Cir. 2022) (Easterbrook, J.), which has already occurred here by virtue of the MDL. Consequently, even if this Court decides that personal jurisdiction exists in both states such that the claim-splitting doctrine might apply, then an appropriate remedy would effectively already have been granted in June 2023 when the MDL was created. Alternatively, if and only if this Court finds personal jurisdiction in both states and this Court does not believe that consolidation adequately remedies the issue, then Plaintiff O'Keefe might be willing to dismiss one of the actions.

this concession. Mr. Ehrlich declined to indicate whether his client would waive service in *Chernyavsky* (S.D. Fla.) or *Cabo* (N.D. Cal.).

**SoftBank.** Since the original *O'Keefe* complaint was filed in February, undersigned counsel has frequently communicated by telephone and email with counsel to SoftBank, and requested waivers of service in the course of those communications. SoftBank declined the requests.[24]

**Deltec and Chalopin.** Undersigned counsel has been in similarly constant contact with counsel to Deltec and Chalopin, including several ZOOM sessions at Deltec and Chalopin's request, at which undersigned counsel explained the bases for Plaintiffs' claims against these Defendants, and answered other questions from the Defendants' counsel. More recently, counsel to Deltec and Chalopin acknowledged that service of the *O'Keefe* (S.D. Fla.) complaint had been effected through the Bahamian authorities, but stated that Deltec and Chalopin would not agree to waive service of the *O'Keefe* (E.D. Wa.) complaint.[25]

**Sino Global.** Undersigned counsel has diligently researched physical and e-mail addresses for Sino Global, which appears to be based in Hong Kong or Beijing, China, but to no avail. The company, which recently rebranded as "Ryze Labs,"[26] flouts that it maintains no physical office address, and instead operates "in a Beijing Starbucks," as evidenced by the following tweet by Sino Global's founder & Managing Partner, Matthew Graham:

---

[24] Wells Decl.
[25] Wells Decl.
[26] *See* https://www.prnewswire.com/news-releases/sino-global-capital-rebrands-to-ryze-labs-301919064.html, (last accessed Sep. 15, 2023).



Undersigned counsel believes that Graham has since moved the company's operations to Hong Kong, though, currently, Sino Global (d/b/a Ryze Labs) discloses only that it is located in "The Metaverse."[28]  Sino Global (d/b/a Ryze Labs) does not publish the e-mail addresses of any of its

---

[27] https://twitter.com/mattyryze/status/1562105454179897347, (last accessed Sep. 15, 2023).
[28] *See* https://twitter.com/RyzeLabs (twitter page showing that Sino Global d/b/a Ryze Labs is located in the "Metaverse"), (last accessed Sep. 15, 2023).

principals, but it does solicit "press/media inquires" at media@ryzelabs.io on its website[29] and in press releases circulated to the public as recently as September 6, 2023.[30]

Absent an order from this Court, it will be an overwhelmingly slow and costly process to effect service on Defendants. Undersigned counsel estimates that service in the jurisdictions below could take as long as 12 months and cost upwards of $100,000 per Defendant in some cases. Defendants are citizens of the following countries:

- Temasek Holdings (Private) Ltd.: Singapore
- SoftBank Group Corp.: Japan
- SoftBank Investment Advisers (UK) Ltd.: United Kingdom
- Softbank Global Advisers Ltd.: United Kingdom
- Sino Global Capital Ltd.: Hong Kong
- Deltec Bank and Trust Company Limited: The Bahamas
- Jean Chalopin: The Bahamas

Japan, the United Kingdom, Hong Kong/China, and The Bahamas are signatories to the Hague Convention on the Service Abroad of Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention"), which is currently in force in each of these countries. The Hague Convention does not specifically preclude service by e-mail on a party or a party's attorney, and neither Japan, the United Kingdom, nor Hong Kong/China has objected to such alternative means of service provided by Section 10 of the Hague Convention.[31] Although Singapore has acceded to the Hague Convention, it will not enter into force in Singapore until December 1, 2023.[32] As further detailed below, undersigned counsel is unaware of (1) any other international agreement prohibiting this alternative means of service or (2) any domestic laws prohibiting this alternative means of service in The Bahamas, Singapore, Japan, the United Kingdom, or Hong Kong/China.

---

[29] https://ryzelabs.io/team, (last accessed Sep. 14, 2023).
[30] *See, e.g.*, https://www.prnewswire.com/news-releases/sino-global-capital-rebrands-to-ryze-labs-301919064.html, (last accessed Sep. 14, 2023).
[31] Wells Decl.
[32] *See* Singapore Ministry of Law, "Singapore Accedes to the Service Convention" (May 17, 2023), *available at* https://www.mlaw.gov.sg/news/press-releases/singapore-accedes-to-service-convention/#:~:text=Singapore%20on%2016%20May%20deposited,Party%20to%20the%20Service%20Convention.

### III.   ARGUMENT

Federal courts have authorized a wide variety of methods of service using Rule 4(f)(3) so long as due process is afforded and the manner is not specifically prohibited by the destination country.Rule 4(f)(3) "authorizes a district court to order an alternate method for service to be effected upon foreign defendants provided it is not prohibited by international agreement and is reasonably calculated to give notice to the defendants." *In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 19-21551-CIV, 2019 WL 13062201, at *1 (S.D. Fla. May 14, 2019) (Altonaga, J.) (citing Fed. R. Civ. P. 4(f)(3)); *Karsten Mfg. Corp. v. Store*, No. 18-CIV-61624, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018) (authorizing alternative service of process via e-mail and digital publication); *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) ("[D]istrict courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements.") (alteration added) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003) (*"Prewitt Enters"*). Parties employing alternate methods of service should also make "earnest effort" to devise a method of communication that "minimizes offense to foreign law." *Prewitt Enters*, 353 F.3d at 927 (citing Advisory Committee Notes to Fed. R. Civ. P. 4(f)(3)).)

Notably, service under Rule (4)(f)(3) is "neither a last resort nor extraordinary relief," *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), and alternative methods of service under Rule 4(f)(3) are available without first attempting service by other means. *Chengdu Jiechen Tech. Ltd. v. Trobing-US*, 21-61020-CIV, 2021 WL 10382802, at *1 (S.D. Fla. Aug. 10, 2021) (Altman, J.) (citing *Rio Props.*, 284 F.3d at 1015 )). "So especially in a circumstance where service upon a foreign [defendant] under Rule 4(f)(1) or 4(f)(2) has been cumbersome, district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements." *Id.* (citing *Brookshire Brothers, Ltd.*, 2007 WL 1577771, at *2 (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003))); *see also Karsten Mfg. Corp. v. Store*, No. 18-CIV-61624, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018) (authorizing alternative service of process via e-mail and digital publication).

Alternative service of process under Rule 4(f)(3) is warranted here.

***First***, service by e-mail upon Defendants' and/or Defendants' counsel is not prohibited under international agreement in this case. Singapore, Japan, the United Kingdom, Hong Kong/China, and The Bahamas are all signatories to the Hague Convention, although the Hague Convention will not enter into effect in Singapore until December. The Hague Convention does not specifically preclude service by e-mail or by publication. *See Karsten*, 2018 WL 8060707, at *1. Where a signatory nation has objected to the alternative means of service provided by Section 10 of The Hague Convention, that objection is expressly limited to those means listed in the objection and does not represent a blanket objection to other forms of service, such as e-mail communication or publication. *See In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 2019 WL 13062201, at *1 (citing *Karsten*, 2018 WL 8060707, at *2 (authorizing service by email and publication)); *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv- 20590, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (authorizing service by e-mail)); *see also Chengdu Jiechen Tech. Ltd.*, 2021 WL 10382802, at *1 (authorizing service by e-mail and publication,  (citing *Stat Med. Devices, Inc.*, 2015 WL 5320947, at *3). A court acting under Rule 4(f)(3) therefore remains free to order alternative means of service where a signatory nation has not expressly objected to those means. *See In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 2019 WL 13062201, at *1 (citing *Karsten*, 2018 WL 8060707, at *2 (citing *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011))). As for Singapore, which has only acceded to the Hague Convention, it appears the country has no specific prohibition against electronic service of process. *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 4594180, at *1 (S.D. Fla. May 31, 2022).

"Furthermore, courts around the country have found that, in order to prevent delays in litigation, service upon foreign defendants through counsel is appropriate." *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182–83 (S.D. Fla. 2012) (collecting cases permitting service on an attorney).

Neither Japan,[33] the United Kingdom,[34] Hong Kong/China,[35] nor The Bahamas[36] has objected to alternate service under Section 10 via e-mail to a party or a party's attorney. No other

---

[33] *In re One Apus Container Ship Incident on Nov. 30, 2022*, No. 22 MD. 3028 (PAE), 2022 WL 17370122, at *2 (S.D.N.Y. Dec. 2, 2022) ("Service through counsel is not prohibited by international agreement. [S]ervice in . . . Japan, under the Hague Convention, would take six months to a year."); *Malletier v. lvhut.net*, No. 22-CV-60228, 2022 WL 393369, at *1 (S.D. Fla. Feb. 7, 2022) (holding that service via email to defendant domiciled in Japan did not violate any international agreement); *Richemont Int'l SA v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20-61367-CIV, 2020 WL 6484125, at *1 (S.D. Fla. July 13, 2020) (same); *Louis Vuitton Malletier v. aaalvshop.com*, No. 19-CIV-61986-RAR, 2019 WL 7911372, at *1 (S.D. Fla. Aug. 13, 2019) (same); *Liberty Media Holdings, LLC v. Mar.*, No. 10CV1809 WQH BLM, 2011 WL 197838, at *2 (S.D. Cal. Jan. 20, 2011) (same).

[34] *Yeti Coolers, LLC v. Individuals, Bus. Entities & Unincorporated Ass'ns Identified on Schedule "A"*, No. 23-61190-CIV, 2023 WL 5659522, at *1 (S.D. Fla. July 24, 2023) (holding email service on defendant domiciled in the United Kingdom does not violate any international agreement); *Emqore Envesecure Priv. Cap. Tr. v. Singh*, No. CV 20-7324 (KM)(JBC), 2020 WL 12654314, at *2 (D.N.J. July 9, 2020) ("Email service has been permitted in the United Kingdom."); *adidas AG v. adidas.style*, No. 17-62535-CIV, 2018 WL 1801197, at *1 (S.D. Fla. Feb. 7, 2018) (holding that service via email to defendant in United Kingdom did not violate any international agreement); *Liberty Media Holdings, LLC*, 2011 WL 197838, at *2 (same); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04 CIV. 9641 (RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005) ("Service on Defendant's U.K. and U.S. attorneys would satisfy this standard. Both sets of attorneys must be in communication with Defendant in relation to the pending legal proceedings in the United States and the United Kingdom and will know how to locate Defendant.").

[35] *Yeti Coolers, LLC*, 2023 WL 5659522, at *1 (holding service via email and website publication on defendant domiciled in China does not violate any international agreement); *Malletier*, 2022 WL 393369, at *1 (holding that service via email and website publication to defendant domiciled in China did not violate any international agreement); *Reflex Media, Inc v. Ltd.*, No. CV 20-00423-RGK-KS, 2020 WL 9073067, at *2 (C.D. Cal. Oct. 26, 2020) (holding e-mail service on Hong Kong defendant did not violate international agreement); *Emqore Envesecure Priv. Cap. Tr.*, 2020 WL 12654314, at *2 ("Both the People's Republic of China and Hong Kong are signatories to the Hague Convention. Hong Kong has not objected to mail service under Article 10. Given the possibly unsettled state of Hong Kong's autonomy vis-à-vis China, I therefore consider as well China's stance on Article 10. China's objections are more expansive than Hong Kong's[, but] 'China's objection to service by postal channels under Article 10 of the Hague Convention does not encompass service by email and . . . service by email is not prohibited by any international agreement.' [T]he Hague Convention does not render email an impermissible form of service in India, the United Kingdom, and Hong Kong." (citations omitted)); *adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-CV-61264-UU, 2019 WL 7841807, at *2 (S.D. Fla. May 23, 2019) (no international agreement prohibits service via email or website publication in China); *adidas AG*, 2018 WL 1801197, at *1 (holding that service via email or "internet communication" to defendant in China did not violate any international agreement).

[36] *Two Rivers Water & Farming Co. v. Am. 2030 Cap. Ltd.*, No. 19-CV-01640-CMA-STV, 2019

---

international agreement prohibits service via e-mail to Defendants or Defendants' counsel with respect to Defendants domiciled in Singapore,[37] Japan, the United Kingdom, Hong Kong/China, or The Bahamas. Further, undersigned counsel has not located any authority to suggest that the domestic laws of Singapore, Japan, the United Kingdom, Hong Kong/China, or The Bahamas expressly prohibit service by such alternate means.[38] Accordingly, service by e-mail to Defendants or to Defendants' attorneys does not violate any international agreement.

---

WL 5535227, at *4 (D. Colo. Oct. 25, 2019) (granting the plaintiff's motion for service via alternate means of e-mail communication and through the party's attorney with respect to party domiciled in the Bahamas). In *Two Rivers Water & Farming Co.*, the court concludes that The Bahamas is not a signatory to the Hague Convention. In so doing, the judge appears to conflate HCCH membership (The Bahamas is not a member) with signatory status (it is a signatory). *Compare* HCCH, "14: Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters" https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Sep. 18, 2023) (indicating that The Bahamas is not a member by listing country name in italics rather than in bold text), *with* HCCH, "Bahamas – Central Authority & practical information," *available at* https://www.hcch.net/en/states/authorities/details3/?aid=282 (last visited Sep. 18, 2023) (indicating that the Bahamas is a signatory and that the Hague Convention is in force there). Nevertheless, the court correctly concluded that no international agreement precludes service on a defendant domiciled in The Bahamas via e-mail or to the party's attorney.

[37] *In re One Apus Container Ship Incident on Nov. 30, 2022*, 2022 WL 17370122, at *4 ("The Court is unaware of any international agreement prohibiting service by email to a Singapore-based defendant, or service via United States-based counsel. Nor does Singaporean law prohibit service through counsel or by email[.] In fact, Singaporean law seems to permit such service."); *adidas AG*, 2019 WL 7841807, at *2 n.3 (no international agreement prohibits service via email in Singapore); *Assef v. Does 1-10*, No. 15-CV-01960-MEJ, 2016 WL 1191683, at *3 (N.D. Cal. Mar. 28, 2016) ("Singapore is not a member of the Hague Convention, but the Court is unaware of any international agreement prohibiting service by email there.").

[38] *See, e.g.*, *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 4594180, at *1 (S.D. Fla. May 31, 2022) ("Further, Singapore is not a party to the Hague Convention, and has no specific prohibition against electronic service of process."); *Chanel, Inc. v. HandbagStore*, No. 20-CV-62121, 2021 WL 3060329, at *11 (S.D. Fla. June 30, 2021), *report and recommendation adopted sub nom. Chanel, Inc. v. Handbag Store*, No. 20-CIV-62121-RAR, 2021 WL 3053396 (S.D. Fla. July 20, 2021) ("Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served to 'acknowledge' receipt[;] ... [therefore,] it cannot credibly object to U.S. courts ordering the same on defendants located in China." 2021 WL 1222783 at *4 (finding also that "China has not 'objected' to email service" and that "the Court's order of email service pursuant to Rule 4(f)(3) was appropriate") (internal citations omitted); United Kingdom Service Rule 4.3, available at https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.3, (last accessed Sep.21, 2023) (permitting service by "fax or other means of electronic communication.").

**_Second_**, Plaintiffs' proposed Service Plan is reasonably calculated to give notice to the foreign Defendants. Federal courts have repeatedly authorized alternative service methods, including service by e-mail on a party or a party's attorney where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. *See, e.g. Rio Props.,* 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Does,* 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) ("acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [plaintiff's website]."); *Popular Enters., LLC v. Webcom Media Grp, Inc.,* 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts.") (citation omitted); *In re Int'l Telemedia Assocs., Inc.,* 245 B.R. 713, 721 (N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them.").

Furthermore, this Court has frequently authorized foreign service process via e-mail communication. *See, e.g., In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 2019 WL 13062201, at *1; *see also Oueiss v. Al Saud,* 1:20-CV-25022-KMM, 2021 WL 5088942, at *8 (S.D. Fla. Jan. 18, 2021) (collecting cases and authorizing service under Rule 4(f)(3) on various defendants through mail, email, Twitter, publication, and service directed to their "current U.S.-based counsel"); *Chengdu Jiechen Tech. Ltd.*, 2021 WL 10382802, at *1; *Karsten,* 2018 WL 8060707, at *2; *Tiffany (NJ) LLC v. Dorapang Franchise Store,* No.18-cv-61590, 2018 WL 4828430, at *3 (S.D. Fla. July 17, 2018) (authorizing service of process via e-mail and publicly posting copies of the summons, complaint, and all future filings on the internet); *Chanel, Inc. v. Individual, P'ship, or Unincorporated Ass'n,* No. 18-61233-CIV, 2018 WL 7253306, at *1 (S.D. Fla. June 7, 2018) (Dimitrouleas, J.) (authorizing service of process via e-mail and publication where defendant had an internet-based business and utilized e-mail as a reliable form of contact); *Stat Medical Devices, Inc.,* 2015 WL 5320947, at *4 (concluding that

"service by email on the foreign defendant . . . as well as serving the domestic defendant's attorney is reasonably calculated to notify the foreign defendant of the pendency of this action and provide it with an opportunity to defend").

### A. Service on Temasek, SoftBank, Deltec, Chalopin, and Sino Global by e-mail to Defendants' counsel is appropriate here.

Counsel for Plaintiffs have communicated with counsel for Defendants Temasek, Softbank, Deltec, and Mr. Chalopin on numerous occasions via email with regard to this MDL as well as Plaintiffs' separate lawsuits consolidated herein and, from those communications, have identified the e-mail addresses for Defendants' counsel. Deltec and Mr. Chalopin have been served with *O'Keefe* (S.D. Fla.) and their counsel have entered into a stipulation with Plaintiffs to submit separate briefs in support of their Rule 12 motions to dismiss that complaint.[39] Counsel for Plaintiffs are therefore well aware that the e-mail addresses included in the below Service Plan are functional. Counsel for Sino Global made an appearance in this MDL this morning, and they filed documents with this Court in which they represented that their e-mail addresses were as stated in those filings. Plaintiffs conferred with Sino Global regarding the filing of this Motion at those very addresses. Moreover, it is clear from the record in this case that Defendants' counsel identified herein in fact currently represent Defendants. For the same reason, it is clear that Defendants have actual knowledge of this MDL, as well as *O'Keefe* (S.D. Fla.), *O'Keefe* (N.D. Cal.), *O'Keefe* (E.D. Wa.), *Chernyavsky* (S.D. Fla.), and *Cabo* (N.D. Cal.). Therefore, service via e-mail communication to Defendants by way Defendants' attorneys is reasonably calculated to notify Defendants of Plaintiffs' actions. Thus, the Court should exercise its discretion to allow service on Defendants in accordance with Plaintiffs' proposed Service Plan, through e-mail to Defendants' counsel.

### B. Service on Temasek, SoftBank, and Sino Global by e-mail is appropriate here.

Alternatively, undersigned counsel has identified, with reasonable certainty, e-mail addresses for certain Defendants' executives, and request that Plaintiffs be permitted to serve the complaints referenced herein on Defendants at those e-mail addresses. Specifically, undersigned counsel has obtained materials circulated by e-mail to FTX's advisory board, and from those materials has identified e-mail addresses for the following executives who served thereon:

---

[39] R. Doc. 240.

- Pradyumna Agrawal, Temasek's Managing Director for Blockchain Investments;

- Antony Lewis, Temasek's Director for Crypto & Blockchain Venture Building & Investing;

-  Rajeev Misra, CEO of Softbank Defendants Softbank Investment Advisors (UK) Ltd. and SoftBank Global Advisers Ltd.; and

- Tom Cheung, Partner, of Softbank Defendant SoftBank Investment Advisers (UK), served on behalf of SoftBank.

Sino Global does not publicly disclose the email addresses of its partners, but it does solicit "press/media inquires" at media@ryzelabs.io on its website and in press releases published as recently as September 6, 2023, suggesting that the e-mail address is both active and regularly checked.[40] Accordingly, this Court should further exercise its discretion to permit service of Temasek, SoftBank, and Sino Global through email to the addresses provided above.

Although undersigned counsel has not directly communicated with Defendants Temasek, SoftBank, or Sino Global at these email addresses, the documents in which the addresses were located suggest that they are functional. Undersigned counsel would have tested the e-mail addresses prior to filing this Motion and testified in the enclosed declaration to the lack of receipt of any bounce back e-mail, but undersigned counsel does not wish to run afoul of any ethics rules via direct communication with an opposing party whose representation is known. This conundrum only underscores the absurdity of the situation: Defendants are represented in this matter by counsel who are actively litigating on their behalf but would have Plaintiffs expend hundreds of thousands of dollars over the course of a year or more merely to effect service of actions of which Defendants already have actual knowledge. It is difficult to conceive of a more blatant violation of Federal Rule of Civil Procedure 4(d)(1).

For reasons above, these Defendants have actual knowledge of the MDL Complaint, and service via e-mail communication to Defendants is reasonably calculated to notify Defendants of Plaintiffs' actions. Thus, the Court should exercise its discretion to allow service on Defendants in accordance with Plaintiffs' proposed Service Plan, through e-mail to the Defendants' executives listed above.

IV.    **CONCLUSION**

---

[40] https://ryzelabs.io/team, (last accessed Sep. 14, 2023).

For the foregoing reasons, Plaintiffs respectfully request the Court grant this Motion and authorize service of process upon Defendants Temasek Holdings (Private) Ltd., SoftBank Group Corp., SoftBank Investment Advisers (UK) Ltd., Softbank Global Advisers Ltd., Sino Global Capital Ltd., Deltec Bank and Trust Company Limited, and Jean Chalopin in the *O'Keefe* (S.D. Fla.), *O'Keefe* (N.D. Cal.), *O'Keefe* (E.D. Wa.), *Chernyavsky* (S.D. Fla), and *Cabo* (N.D. Cal.) matters in accordance with the following Service Plan:[41]

1. Via email through emailing the Complaint(s) and Summons(es) to Defendants' counsel at the following e-mail addresses:

   - Temasek.: aehrlich@paulweiss.com, nkovalenko@paulweiss.com, bkarp@paulweiss.com, roloughlin@paulweiss.com

   - SoftBank : AFoslid@winston.com

   - Deltec: lara.buchwald@davispolk.com; tatitiana.martins@davispolk.com; Mallory.Cooney@klgates.com, Desiree.Moore@klgates.com

   - Chalopin: lara.buchwald@davispolk.com; tatitiana.martins@davispolk.com; Mallory.Cooney@klgates.com, Desiree.Moore@klgates.com

   - Sino Global: mmadrigal@morrisoncohen.com, jgottlieb@morrisoncohen.com, vupadhyaya@morrisoncohen.com, mmix@morrisoncohen.com

2. Via email through emailing the Complaint(s) and Summons(es) to Defendants at the following e-mail addresses:

   - Temasek: Pradyumna Agrawal, Managing Director for Blockchain Investments, at pradyumna@temasek.com.sg, and Antony Lewis, Director for Crypto & Blockchain Venture Building & Investing, at antonylewis@temasek.com.sg

   - SoftBank: Rajeev Misra, CEO of Softbank Defendants Softbank Investment Advisors (UK) Ltd. and SoftBank Global Advisers Ltd., at rajeev@softbank.com and Tom Cheung, Partner at Softbank Defendant SoftBank Investment Advisers at tom.cheung@softbank.com

   - Sino Global Capital Ltd. (d/b/a Ryze Labs): media@ryzelabs.io

**REQUEST FOR ORAL ARGUMENT**

---

[41] A Proposed Order accompanies this Motion as **Exhibit 2**.

Plaintiffs respectfully request that the Court hear oral argument on this Motion, and respectfully submit that thirty minutes should be sufficient for all Parties.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (a)(3)

In compliance with Local Rule 7.1(a)(3), Plaintiffs' counsel conferred with counsel for Defendants regarding whether they would oppose the relief requested herein.[42] With respect to Temasek, Deltec, and Chalopin, Plaintiffs' counsel had engaged in an e-mail exchange regarding service waivers and indicated that absent a waiver Plaintiffs would file the instant motion for alternate service and assumed the defendants would oppose such a motion. Counsel for Temasek, Deltec, and Chalopin did not respond regarding the motion.[43] With respect to Sino Global, counsel for Plaintiffs e-mailed this afternoon counsel who only this morning made an appearance on Sino Global's behalf, and counsel for Sino Global informed that they would not execute a waiver and would oppose the relief requested herein.[44] With respect to SoftBank, counsel for Plaintiffs has held multiple discussions regarding service and waivers. Today, counsel for Plaintiffs informed that they would be filing the instant motion and asked whether SoftBank would oppose. Counsel for SoftBank indicates that he cannot provide an answer today about whether his client would oppose the instant motion.[45] Given SoftBank's refusal to waive service, Plaintiffs' counsel views a lack of opposition as substantially unlikely and therefore proceeds with this motion. If SoftBank later indicates that it does not oppose this motion, undersigned counsel will inform the Court immediately.

---

[42] *See* Wells Decl., Ex. H.
[43] *Id.* at 1, 4.
[44] *Id.* at 6.
[45] *Id.* at 8.

Dated: September 21, 2023

JOSEPH SAVERI LAW FIRM, LLP

By:        */s/ Christopher K.L. Young*
                 Christopher K.L. Young

Joseph R. Saveri (SBN 130064)
Steven N. Williams (SBN 175489)
Christopher K.L. Young (SBN 318371)
Louis A. Kessler (SBN 243703)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
swillliams@saverilawfirm.com
cyoung@saverilawfirm.com
lkessler@saverilawfirm.com

James R. Swanson (LA. SBN 18455)*
Kerry J. Miller (LA. SBN 24562)*
Benjamin D. Reichard (LA. SBN. 31933)*
C. Hogan Paschal (LA. SBN 38495)*
Monica Bergeron (LA. SBN 39124)*
**FISHMAN HAYGOOD L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jswanson@fishmanhaygood.com
kmiller@fishmanhaygood.com
breichard@fishmanhaygood.com
hpaschal@fishmanhaygood.com
mbergeron@fishmanhaygood.com

Robert L. Lieff (CA SBN 037568)
P.O. Drawer A
Rutherford, California 94573
rlieff@lieff.com

*Motion to Appear Pro Hac Vice to be Filed*

*Attorneys for Individual and Representative Plaintiffs*

David Boies (NY REG NO. 2296333)
Alexander Boies (NY REG NO. 5418579)
Brooke Alexander (NY REG NO. 4678900)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
dboies@bsfllp.com
aboies@bsfllp.com
balexander@bsfllp.com

Adam M. Moskowitz (FL SBN 984280)
Joseph M. Kaye (FL SBN 117520)
**THE MOSKOWITZ LAW FIRM, PLLC**
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Telephone: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com

*Plaintiffs' Co-Lead Counsel for MDL No. 3076*

## CERTIFICATE OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the undersigned, does hereby certify that on September 21, 2023, I electronically filed the above and foregoing using the CM/ECF system which will send a notice of electronic filing to all CM/ECF registrants.

Dated: September 21, 2023                    Joseph Saveri Law Firm, LLP


By:        */s/ Christopher K.L. Young*
                 Christopher K.L. Young

 Joseph R. Saveri (SBN 130064)
 Steven N. Williams (SBN 175489)
 Christopher K.L. Young (SBN 318371)
 Louis A. Kessler (SBN 243703)
 **JOSEPH SAVERI LAW FIRM, LLP**
 601 California Street, Suite 1000
 San Francisco, CA 94108
 Telephone: (415) 500-6800
 Facsimile: (415) 395-9940
 jsaveri@Saverilawfirm.com
 swillliams@Saverilawfirm.com
 cyoung@Saverilawfirm.com
 lkessler@Saverilawfirm.com