**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-MD-3076-MOORE/Otazo-Reyes

In RE

FTX CRYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION

_____

**This Document Relates to All Actions**

**DEFENDANTS ARMANINO LLP AND PRAGER METIS CPAS, LLC'S**
**JOINT MOTION TO DISMISS COMPLAINT (DKT. 158)**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND AND PLAINTIFFS' ALLEGATIONS .........................................3

    I.    Plaintiffs' Claims Are Founded on Armanino's and Prager Metis's Non-Public Audit Reports. ...........................................................................................................3

    II.   Armanino's and Prager Metis's Duties and Responsibilities as Outside Auditors Were Defined by Professional Standards. .................................................................5

LEGAL STANDARDS ..............................................................................................................7

    I.    Plaintiffs' Complaint Is Subject to Stringent Pleading Standards. ...............................7

    II.   Plaintiffs Cannot Sidestep the Pleading Standards Through Ambiguous Allegations. ................................................................................................................8

ARGUMENT ............................................................................................................................9

    I.    Plaintiffs Fail to Allege Essential Elements Common to Nearly All of Their Claims. ....................................................................................................................9

        A.    The Court Should Dismiss Each Count That Requires Plaintiffs to Plead a Misrepresentation or Exposure to a Statement (Counts II, IV-VIII, X-XIII). ...........9

            1.    Plaintiffs Do Not Allege That They Saw Any Audit Reports from Armanino or Prager Metis. ...................................................................................10

            2.    Plaintiffs Do Not Identify Any Misrepresentation in Armanino's or Prager Metis's Non-Public Audit Reports. ...........................................................12

            3.    The Alleged "Expressions of Public Support" Are Not Statements of Material Fact. ........................................................................................13

            4.    Statements of FTX Entities or FTX Insiders Do Not Support Plaintiffs' Claims Against Armanino or Prager Metis. .........................................13

        B.    The Court Should Dismiss Each Count that Requires Plaintiffs to Plead a Duty or Intended Benefit (Counts II and IX-XIII). ................................................13

        C.    The Court Should Dismiss Each Count that Requires Plaintiffs to Plead Knowledge or Intent (Counts I-II, VII-VIII, and X-XVIII). ....................................16

        D.    Plaintiffs Have Not Plausibly Alleged Armanino and Prager Metis Caused Their Alleged Harm, Requiring the Dismissal of Claims that Require Causation (Counts I-II, V-VII, IX-XVIII). .................................................................18

    II.   Plaintiffs' Claims Sounding in Fraud Are Not Pled with Particularity as Required by Rule 9(b) (Counts II, IV-XVII). .................................................................19

    III.   The Court Should Dismiss the RICO Conspiracy (Count I) and Common Law Conspiracy (Count XIV) Claims. .................................................................................21

        A.    Plaintiffs Fail to Sufficiently Allege Any Agreement for Conspiracy Purposes. ................................................................................................................22

B.     Plaintiffs' Conspiracy Allegation is Irrational. .........................................................23

C.     Plaintiffs Fail to Allege Armanino or Prager Metis Had Knowledge of or Was Willfully Blind to the Insider Defendants' Alleged Criminal and Tortious Activity. .........................................................................................................24

IV.    The Court Should Dismiss the Florida Misleading Advertising Law Claims (Count II) and California False Advertising Claim (Count VII). ..................................25

A.     Plaintiffs Do Not Plausibly Allege Any Plaintiff Actually Relied on Any Statement by Armanino or Prager Metis. ...................................................................25

B.     Armanino's and Prager Metis's Audit Reports Were Not Public Statements. ..........26

C.     Plaintiffs Cannot Identify Any False Statements in Any Representation by Armanino or Prager Metis. .......................................................................................26

V.     The Court Should Dismiss the Florida Securities / Investor Claims (Counts III and IV) and the California Securities Claim (Count VIII). ............................................27

A.     Plaintiffs' Fail to Adequately Plead Their FSIPA Claims (Counts III and IV). ........27

B.     Plaintiffs Fail to Adequately Plead Their California Corporate Securities Law Claim (Count VIII). .........................................................................................28

VI.    The Court Should Dismiss Plaintiffs' FDUTPA Claim (Count V). ...............................30

A.     Plaintiffs Fail to Allege a Deceptive or Unfair Trade Practice Under FDUTPA. ................................................................................................................30

B.     Plaintiffs Fail to Allege Causation Under FDUTPA. .................................................30

C.     FDUTPA Does Not Apply to Securities Transactions. ..............................................31

VII.   The Court Should Dismiss the California Unfair Competition Law Claim and (Count VI) and Aiding and Abetting Violations of UCL Claim (Count XVI). .............31

A.     Plaintiffs' Claims Should Be Dismissed Because They Are Not Entitled to Equitable Relief Under the UCL. ...............................................................................31

B.     Plaintiffs Have Not Plausibly Alleged Any Unlawful, Unfair, or Fraudulent Act by Armanino or Prager Metis. ...............................................................................31

C.     Plaintiffs Fail to Allege Actual Reliance Under the UCL. ........................................33

D.     Plaintiffs Fail to Allege Aiding and Abetting Liability Under the UCL. ..................33

VIII.  Non-Florida Plaintiffs Do Not Have Standing to Bring Florida Statutory Claims (Counts II-V); Non-California Plaintiffs Do Not Have Standing to Bring California Claims Against Prager Metis (Counts VI-VIII and XVI). .............................34

IX.    The Court Should Dismiss the Professional Negligence Claim (Count IX). .................35

X.     The Court Should Dismiss the Common Law Fraud and Misrepresentation Claims (Counts X-XIII). ...................................................................................................35

XI.    The Court Should Dismiss the Aiding and Abetting Fraud Claim (Counts XV). .........36

XII.    The Court Should Dismiss the Aiding and Abetting Fiduciary Duty Claim
        (Count XVII).............................................................................................................37

XIII.   The Court Should Dismiss the Aiding and Abetting Conversion Claim (Count
        XVIII). ......................................................................................................................38

XIV.    The Court Should Dismiss the Declaratory Judgment Claims (Counts XIX
        (Florida) and XX (California))..................................................................................39

XV.     Plaintiffs Lack Standing to Seek Injunctive Relief Against Armanino and
        Prager Metis. ............................................................................................................40

CONCLUSION.............................................................................................................................40

REQUEST FOR HEARING..........................................................................................................40

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ..............................................................16, 22, 23, 24

*Advanced Fluid Sys., Inc. v. Huber*,
28 F. Supp. 3d 306 (M.D. Pa. 2014), *aff'd*, 958 F.3d 168 (3d Cir. 2020) ..............................26

*Aguilo v. Cognizant Tech. Sols. U.S. Corp.*,
2022 WL 2106077 (M.D. Fla. June 10, 2022)..............................................................20

*Airplanes of Boca, Inc. v. United States ex rel. F.A.A.*,
254 F. Supp. 2d 1304 (S.D. Fla. 2003) ..............................................................19

*Alhassid v. Bank of Am., N.A.*,
60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..............................................................22

*Ali v. Am. Airlines, Inc.*,
2023 WL 4239065 (E.D. Cal. June 28, 2023) ..............................................................20

*Alper Auto., Inc. v. Day to Day Imports, Inc.*,
2021 WL 5893161 (S.D. Fla. Nov. 3, 2021), *aff'd*, 2022 WL 3418643 (11th
Cir. Aug. 17, 2022) ..............................................................25

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. Nov. 16, 2020) ..............................................................31

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (Cal. Ct. App. 1994)..............................................................19

*Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*,
605 F. App'x 820 (11th Cir. 2015) ..............................................................17

*AREI II Cases*,
157 Cal. Rptr. 3d 368 (Cal. Ct. App. 2013)..............................................................29

*Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*,
232 So. 3d 502 (Fla. 1st DCA 2017) ..............................................................10, 16, 18

*Arnold v. McFall*,
839 F. Supp. 2d 1281 (S.D. Fla. 2011) ..............................................................19, 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................8

*AToN Ctr., Inc. v. United Healthcare Ins. Co.*,
    311 Cal. Rptr. 3d 564 (Cal. Ct. App. 2023) ...................................................................16

*Avedisian v. Mercedes-Benz USA, LLC*,
    43 F. Supp. 3d 1071 (C.D. Cal. 2014) ......................................................16, 18, 35

*Azimpour v. Sears, Roebuck & Co.*,
    2016 WL 7626188 (S.D. Cal. Oct. 17, 2016) ..........................................................26

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
    938 F. Supp. 825 (S.D. Fla. 1996) ...........................................................................28

*Balistreri v. McCormick & Co., Inc.*,
    2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) ........................................................25

*Banco Latino Int'l v. Gomez Lopez*,
    95 F. Supp. 2d 1327 (S.D. Fla. 2000) ......................................................................16

*Beck v. Prupis*,
    529 U.S. 494 (2000) ..................................................................................................22

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,
    2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) .........................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................7, 23

*Bigler-Engler v. Breg, Inc.*,
    7 Cal. App. 5th 276 (Cal. Ct. App. 2017) ................................................................15

*Bily v. Arthur Young & Co.*,
    834 P.2d 745 (Cal. 1992), *as modified* (Nov. 12, 1992) ................................ *passim*

*Birmingham v. Doe*,
    2022 WL 18134962 (S.D. Fla. Dec. 6, 2022), *report and recommendation*
    *adopted sub nom. Birmingham v. ROFX.net*, 2023 WL 112308 (S.D. Fla. Jan.
    5, 2023) ......................................................................................................................23

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ....................................................................................8

*Brennan v. Ruffner*,
    640 So. 2d 143 (Fla. 4th DCA 1994) .......................................................................35

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ..............................................................................4, 9

*Bruhl v. PricewaterhouseCoopers Int'l*,
    2006 WL 8431888 (S.D. Fla. Apr. 3, 2006) ............................................................15

*Burger King Corp. v. Austin*,
    805 F. Supp. 1007 (S.D. Fla. 1992) .......................................................................38

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (Cal. Ct. App. 2005) .........................................................17

*Ceithaml v. Celebrity Cruises, Inc.*,
    207 F. Supp. 3d 1345 (S.D. Fla. 2016) ..................................................................20

*Cenco Inc. v. Seidman & Seidman*,
    686 F.2d 449 (7th Cir. 1982) ..............................................................................17

*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*,
    2018 WL 3618243 (S.D. Cal. July 30, 2018), *aff'd*, 821 F. App'x 701 (9th Cir.
    2020) ................................................................................................................18

*Chaney v. Dreyfus Serv. Corp.*,
    595 F.3d 219 (5th Cir. 2010) ..............................................................................24

*Checkers Sec. Litig.*,
    858 F. Supp. 1168 (M.D. Fla. 1994) ....................................................................28

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) ...........................................................................23

*Colenzo v. FDIC*,
    2010 WL 11512212 (C.D. Cal. Apr. 28, 2010) ...............................................10, 13, 14, 35

*Ctr. for Individual Rts. v. Chevaldina*,
    2017 WL 11682278 (S.D. Fla. Nov. 14, 2017)........................................................19

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) .............................................................................4

*Decarlo v. Costco Wholesale Corp.*,
    2020 WL 1332539 (S.D. Cal. Mar. 23, 2020) ...................................................17, 33

*Devco Premium Fin. Co. v. N. River Ins. Co.*,
    450 So. 2d 1216 (Fla. 1st DCA 1984) ..................................................................28

*DFG Grp., LLC. v. Stern*,
    220 So. 3d 1236 (Fla. 4th DCA 2017) ............................................................10, 18

*Doe v. CVS Pharmacy*,
    982 F.3d 1204 (9th Cir. 2020) .............................................................................32

*Domanus v. Locke Lord LLP*,
  847 F.3d 469 (7th Cir. 2017) ........................................................24

*Eisenberg v. Standard Ins. Co.*,
  2009 WL 1809994 (S.D. Fla. June 25, 2009) ..................................39

*Enron Corp.*,
  235 F. Supp. 2d 549 (S.D. Tex. 2002) ............................................32

*FCC, LLC v. Mizuho Medy Co., Ltd.*,
  2008 WL 11338403 (S.D. Cal. July 16, 2008) ................................20

*Feng v. Walsh*,
  2020 WL 5822420 (S.D. Fla. Sept. 14, 2020) ................................39

*Feng v. Walsh*,
  2021 WL 8055449 (S.D. Fla. Dec. 21, 2021), *report and recommendation
  adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) .......................17

*Fiol v. Doellstedt*,
  58 Cal. Rptr. 2d 308 (Cal. Ct. App. 1996) ..........................36, 37, 38

*Fla. Cement & Concrete Antitrust Litig.*,
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) ............................................24

*Galectin Therapeutics, Inc. Sec. Litig.*,
  843 F.3d 1257 (11th Cir. 2016) .........................................................8

*Gallagher v. New York City Health & Hosps. Corp.*,
  2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017), *aff'd*, 733 F. App'x 3 (2d Cir.
  2018) ................................................................................................14

*GemCap Lending, LLC v. Quarles & Brady, LLP*,
  269 F. Supp. 3d 1007 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I,
  LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019) .............. *passim*

*George v. eBay, Inc.*,
  286 Cal. Rptr. 3d 492 (Cal. Ct. App. 2021) ....................................38

*Giacometti v. Aulla, LLC*,
  114 Cal. Rptr. 3d 724 (Cal. Ct. App. 2010) ....................................35

*Giacometti v. Aulla, LLC*,
  187 Cal. App. 4th 1133 (Cal. Ct. App. 2010) ..................................18

*Giron v. Hong Kong*,
  2017 WL 5495504 (C.D. Cal. Nov. 15, 2017) ................................19

*Goldstein v. Firer*,
  2022 WL 17343638, at *5 (S.D. Fla. Nov. 16, 2022), *report and
  recommendation adopted*, 2022 WL 17344853 (S.D. Fla. Nov. 30, 2022) ............................34

*Greenberg v. Miami Children's Hosp. Rsch. Inst., Inc.*,
  264 F. Supp. 2d 1064 (S.D. Fla. 2003) ...............................................................................15

*Grippo v. Perazzo*,
  357 F.3d 1218 (11th Cir. 2004) .........................................................................................27

*Hakim-Daccach v. Knauf Int'l GmbH*,
  2017 WL 5634629 (S.D. Fla. Nov. 22, 2017) ......................................................................34

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (Cal. Ct. App. 2008) ........................................................................18

*Hearn v. McKay*,
  642 F. Supp. 2d 1330 (S.D. Fla. 2008) ...............................................................................37

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010) .................................................................................................................19

*Himes v. Brown & Co. Sec. Corp.*,
  518 So. 2d 937 (Fla. 3d DCA 1987) .....................................................................................18

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
  424 F. Supp. 3d 882 (E.D. Cal. 2019) ............................................................15, 16, 20, 36

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
  2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) ......................................................................24

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) .........................................................................................22

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013) ...............................................................................10

*Jan. 2021 Short Squeeze Trading Litig.*,
  584 F. Supp. 3d 1161 (S.D. Fla. 2022) ...............................................................................37

*Julian v. Mission Cmty. Hosp.*,
  11 Cal. App. 5th 360 (Cal. Ct. App. 2017) ..........................................................................16

*Kashner Davidson Sec. Corp. v. Desrosiers*,
  689 So. 2d 1106 (Fla. 2d DCA 1997) ...............................................................................9, 27

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................................19, 31

*Kerman-Ray of the House of Carr v. City & Cnty. of Denver*,
 2016 WL 7178320 (D. Colo. Dec. 8, 2016)................................................................9, 12

*Kingland Ests., Ltd. v. Davis*,
 170 So. 3d 825 (Fla. 3d DCA 2015) ............................................................................19

*Lamm v. State St. Bank & Tr.*,
 749 F.3d 938 (11th Cir. 2014) .....................................................................................17

*Lan Li v. Walsh*,
 2019 WL 12267189 (S.D. Fla. Jan. 29, 2019) .............................................................20

*Lawrence v. Bank of Am., N.A.*,
 455 F. App'x 904 (11th Cir. 2012) ..................................................................17, 38, 39

*Letizia v. Facebook Inc.*,
 267 F. Supp. 3d 1235 (N.D. Cal. 2017) .................................................................10, 33

*Lloyd v. Sch. Bd. of Palm Beach Cnty.*,
 570 F. Supp. 3d 1165 (Moore, J.) (S.D. Fla. 2021) ....................................................24

*Lopez v. Clarke*,
 189 So. 3d 805 (Fla. 4th DCA 2015) ...........................................................................16

*McFall v. Stacy & Witbeck, Inc.*,
 2016 WL 6248882 (N.D. Cal. Oct. 26, 2016)........................................................37, 39

*Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*,
 761 So. 2d 1256 (Fla. 3d DCA 2000) ..........................................................................34

*Minn. Life Ins. Co. v. Philpot*,
 2012 WL 4486311 (S.D. Cal. Sept. 27, 2012) .............................................................39

*Molina v. Aurora Loan Servs., LLC*,
 635 F. App'x 618 (11th Cir. 2015) ..............................................................................30

*Monroe v. Hughes*,
 860 F. Supp. 733 (D. Or. 1991), *aff'd*, 31 F.3d 772 (9th Cir. 1994)...........................17

*Montgomery v. New Piper Aircraft, Inc.*,
 209 F.R.D. 221 (S.D. Fla. 2002)..................................................................................10

*Mosier v. Stonefield Josephson, Inc.*,
 2013 WL 4859635 (C.D. Cal. July 30, 2013)..........................................................36, 39

*Mostowfi v. I2 Telecom Int'l, Inc.*,
 2004 WL 7338797 (N.D. Cal. May 27, 2004) ..............................................................20

*MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*,
    2022 WL 3155035 (S.D. Fla. July 21, 2022), *report and recommendation
    adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022) ......................................22

*Neilson v. Union Bank of Cal., N.A.*,
    2003 WL 27374137 (C.D. Cal. Feb. 20, 2003).......................................................20

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................................20, 37, 39

*OCG Energy, LLC v. Shen*,
    2023 WL 2628689 (C.D. Cal. Jan. 11, 2023) .......................................................28

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
    32 F.4th 1298 (11th Cir. 2022) ..............................................................................16

*Ortiz v. Ocwen Loan Servicing, LLC*,
    2009 WL 10671384 (C.D. Cal. June 17, 2009) .....................................................20

*Overstock.com, Inc. v. Goldman Sachs & Co.*,
    180 Cal. Rptr. 3d 269 (Cal. Ct. App. 2014), *as modified* (Nov. 25, 2014)............34

*Paskenta Band of Nomlaki Indians v. Crosby*,
    122 F. Supp. 3d 982 (E.D. Cal. 2015).....................................................................38

*Peng v. Mastroinni*,
    2021 WL 4522303 (S.D. Fla. May 5, 2021) ..........................................................17

*Perret v. Wyndham Vacation Resorts, Inc.*,
    889 F. Supp. 2d 1333 (S.D. Fla. 2012) ..................................................................40

*Piescik v. CVS Pharmacy, Inc.*,
    576 F. Supp. 3d 1125 (S.D. Fla. 2021) ....................................................9, 16, 30

*Plowright v. Miami-Dade Cnty.*,
    2022 WL 18228314 (S.D. Fla. Dec. 5, 2022) ..........................................................8

*Porsche Cars N. Am., Inc. v. Diamond*,
    140 So. 3d 1090 (Fla. 3d DCA 2014) .....................................................................30

*Pub. Emps. Retirement Ass'n of Colo. v. Deloitte & Touche LLP*,
    551 F.3d 305 (4th Cir. 2009) ..................................................................................17

*Recreational Design & Const., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*,
    820 F. Supp. 2d 1293 (S.D. Fla. 2011) .............................................................18, 20

*Regent All. Ltd. v. Rabizadeh*,
    180 Cal. Rptr. 3d 610 (Cal. Ct. App. 2014)......................................................38, 39

*Reiger v. Price Waterhouse Coopers LLP*,
  117 F. Supp. 2d 1003 (S.D. Cal. 2000), *aff'd sub nom. DSAM Glob. Value
  Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ....................................17

*Republic of Pan. v. BCCI Holdings (Lux.) S.A.*,
  119 F.3d 395 (11th Cir. 1997) ......................................................................16

*Rogers v. Nacchio*,
  2006 WL 7997562  (S.D. Fla. June 6, 2006), *aff'd*, 241 F. App'x 602 (11th
  Cir. 2007) ..............................................................................................31

*Sahlen & Assocs., Inc. Sec. Litig.*,
  773 F. Supp. 342 (S.D. Fla. 1991) ...............................................................20

*Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*,
  2017 WL 700215 (M.D. Fla. Feb. 22, 2017) ...........................................10, 16, 18

*SEC v. Arthur Young & Co.*,
  590 F.2d 785 (9th Cir. 1979) ......................................................................17

*SEC v. Bankman-Fried*,
  Case No. 1:22-cv-10501, Dkt. No. 1 (S.D.N.Y.) ...........................................12

*Sevidal v. Target*,
  189 Cal. App. 4th 905 (Cal. Ct. App. 2010) ................................................10

*Shaeffer v. Califia Farms, LLC*,
  44 Cal. App. 5th 1125 (Cal. Ct. App. 2020) ...........................................10, 32

*Shamsian v. Atl. Richfield Co.*,
  107 Cal. App. 4th 967 (Cal. Ct. App. 2003) .........................................10, 16, 35

*Sharma v. Volkswagen AG*,
  524 F. Supp. 3d 891 (N.D. Cal. 2021) ........................................................31

*Shay v. Apple Inc.*,
  2021 WL 1733385 (S.D. Cal. May 3, 2021) ..................................................31

*Sheeran v. Blyth Shipholding S.A.*,
  2015 WL 9048979 (D.N.J. Dec. 16, 2015) ..................................................9, 12

*Silver v. Countrywide Home Loans, Inc.*,
  760 F. Supp. 2d 1330 (S.D. Fla. 2011), *aff'd*, 483 F. App'x 568 (11th Cir.
  2012) ....................................................................................................22

*SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*,
  243 F. App'x 502 (11th Cir. 2007) ..............................................................39

*Solidda Grp., S.A. v. Sharp Elecs. Corp.*,
   2012 WL 12863888 (S.D. Fla. Sept. 27, 2012) ...................................................................9

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...........................................................................................31

*Staniforth v. Total Wealth Mgmt., Inc.*,
   2023 WL 3805250 (S.D. Cal. June 2, 2023)......................................................................28

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery,
   LLC*,
   278 F. Supp. 3d 1307 (S.D. Fla. 2017) (Moore, J.) ...........................................................19

*Steel Warehouse Cleveland, LLC v. Velocity Outdoor, Inc.*,
   2023 WL 2264257 (N.D. Ohio Feb. 28, 2023)....................................................................8

*Steinberg Moorad & Dunn, Inc. v. Dunn*,
   2002 WL 31968234 (C.D. Cal. Dec. 26, 2002) .................................................................16

*Stewart v. Electrolux Home Prods.*,
   2018 WL 1784273 (E.D. Cal. Apr. 13, 2018).....................................................................25

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*,
   534 F. Supp. 2d 1326 (S.D. Fla. 2008) .............................................................................23

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .......................................................................................20, 23

*TIC Park Centre 9, LLC v. Cabot*,
   2018 WL 4828436 (S.D. Fla. Aug. 31, 2018).....................................................................20

*Tindell v. Murphy*,
   22 Cal. App. 5th 1239 (Cal. Ct. App. 2018) .................................................................16, 18

*Turner v. Williams*,
   65 F.4th 564 (11th Cir. 2023) ...........................................................................................23

*Valiente v. Publix Super Mkts., Inc.*,
   2023 WL 3620538 (S.D. Fla. May 24, 2023) .....................................................................40

*Van Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) .............................................................13, 18, 21, 23

*Vital Pharms., Inc. v. Balboa Cap. Corp.*,
   2016 WL 4479370 (S.D. Fla. 2016) .......................................................................10, 16, 18

*Wakefern Food Corp. v. Marchese*,
   2021 WL 3783259 (D.N.J. Aug. 26, 2021) .......................................................................26

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ................................................12

*Wiand v. Wells Fargo Bank, N.A.*,
    938 F. Supp. 2d 1238 (M.D. Fla. 2013) ................................38, 39

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................34

*Wilson v. Secretary, Dep't Corrs.*,
    54 F.4th 652 (11th Cir. 2022) ................................40

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ................................13

*Wusiya v. City of Miami Beach*,
    614 F. App'x 389 (11th Cir. 2015) ................................40

*Yagman v. Kelly*,
    2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ................................ *passim*

*Yee v. NIVS IntelliMedia Tech. Grp.*,
    2012 WL 12886829 (C.D. Cal. Sept. 7, 2012) ................................20

*Young v. Grand Canyon Univ., Inc.*,
    57 F.4th 861 (11th Cir. 2023) ................................20

*Zarrella v. Pac. Life Ins. Co.*,
    755 F. Supp. 2d 1218 (S.D. Fla. 2010) ................................10, 16, 19

*Zhang v. Royal Caribbean Cruises, Ltd.*,
    2019 WL 8895223 (S.D. Fla. Nov. 15, 2019) ................................25, 26

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ................................30

*ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*,
    917 So. 2d 368 (Fla. Dist. Ct. App. 2005) ................................17

**Statutes**

18 U.S.C. § 1964(c) ................................18

15 U.S.C. § 45(n) ................................30

18 U.S.C. § 1961(1) ................................23

18 U.S.C. § 1962(d) ................................22

28 U.S.C. § 2201(a) ........................................................................................................39

Cal. Bus. & Prof. Code § 17200 .....................................................................................31

Cal. Bus. & Prof. Code § 17500 ..........................................................................10, 25, 26

Cal. Civ. Proc. Code § 1060 ............................................................................................39

Cal. Corp. Code § 25003(a) .............................................................................................29

Cal. Corp. Code § 25210(b) .............................................................................................29

Cal. Corp. Code § 25401 .....................................................................................10, 28, 29

Cal. Corp. Code § 25504 ..................................................................................................29

Cal. Corp. Code § 25504.1 .........................................................................................16, 29

Fla. Stat. § 517.07 ......................................................................................................27, 28

Fla. Stat. § 517.211 ..........................................................................................................28

Fla. Stat. § 817.41 ................................................................................................25, 26, 34

Fla. Stat. § 517.301 ..................................................................................................*passim*

Securities Act of 1933 Section 12 ...................................................................................28

**Other Authorities**

Fed. R. Civ. P. 8 .....................................................................................................*passim*

Fed. R. Civ. P. 9 .....................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ...............................................................................................4, 7

Restatement (Second) of Torts § 552 (1977) ..................................................................14

## PRELIMINARY STATEMENT

The Court should dismiss Plaintiffs' Complaint against Armanino and Prager Metis, the financial statement auditors of FTX US and FTX Trading, respectively, because it fails to allege any link between any Plaintiff and either accounting firm. Plaintiffs claim they invested through or traded on cryptocurrency exchanges run by FTX US or FTX Trading. Those two entities are now in bankruptcy following revelations of fraud by certain FTX Insiders, and Plaintiffs have sued scores of defendants alleging common-law and statutory violations. But as to Armanino and Prager Metis, Plaintiffs do not allege the essential facts necessary to support any one of their kitchen sink of 20 claims. For example:

**No Plaintiff saw a statement by Armanino or Prager Metis.** The Complaint does not allege that any Plaintiff ever saw a statement by or attributed to Armanino or Prager Metis about the financial statements of FTX US or FTX Trading. This is not surprising, as the audit reports prepared by Armanino and Prager Metis were non-public reports intended for and addressed to *their respective privately-held clients*, not to Plaintiffs. Plaintiffs were never clients of Armanino or Prager Metis, and neither defendant ever owed a duty to any Plaintiff. Ten of Plaintiffs' twenty counts require a factual misrepresentation that Plaintiffs saw and relied upon. Counts II, IV-VIII, X-XIII fail for this reason.

**No Plaintiff identifies a false statement by Armanino or Prager Metis.** The Complaint does not plausibly allege that any statement by Armanino or Prager Metis was false or that Armanino or Prager Metis knew any statement was false. Instead, Plaintiffs point to findings by the army of professional services firms working on the FTX bankruptcy ***almost a year after*** the last period audited by Armanino and Prager Metis. But Plaintiffs are comparing apples to oranges when comparing a financial statement audit to an after-the-fact forensic investigation during bankruptcy proceedings. Regardless, the investigation revealed that the management of the FTX-related entities lied to their auditors, which Plaintiffs do not dispute. There are no plausible allegations that Armanino's or Prager Metis's audit opinions were false or that either firm was aware of any false statement. Counts II, IV-VIII, X-XIII fail for these reasons.

**No Plaintiff identifies the platform—FTX US or FTX Trading—on which she traded.** Armanino audited only the financial statements of FTX US; Prager Metis audited only the financial statements of FTX Trading. Each Plaintiff may have invested through or traded on one or the other platform, but not both. Thus, even under Plaintiffs' own theories, no Plaintiff

would have a claim against both Armanino *and* Prager Metis. Plaintiffs have intentionally elided over that fundamental distinction to create the illusion of a single group of claimants and a single group of defendants in this Complaint.

**No Plaintiff alleges facts sufficient to plead a conspiracy involving Armanino or Prager Metis.** Plaintiffs do not plausibly allege any agreement involving either Armanino or Prager Metis and another party for purposes of their conspiracy claims. And Plaintiffs' conspiracy theory defies economic rationality (and settled law) insofar as it presumes an auditor would trade its professional reputation in exchange for a single audit fee. Counts I and XIV fail for this reason.

More generally, the Complaint improperly conflates (i) all of the "Plaintiffs" without specifying which Plaintiff purportedly saw and relied on what statement or took what action in reliance on any statement; and (ii) large groups of defendants and related parties without specifying which defendant made what statement to whom. These allegations are not just improper, they are often flatly inaccurate, such as Plaintiffs' reference to "the Auditor Defendants" when the documents they cite only refer to one of the auditors. Worse, Plaintiffs plead "and/or" allegations more than 200 times in the Complaint to create the illusion of pleading facts when in fact they have avoided doing so. Paragraph 358 illustrates this point:

> One or more of the Plaintiffs reviewed the FTX, FTX Insider Defendants' and/or Auditor Defendants' misrepresentations set forth above, including the misrepresentations that FTX had received a 'GAAP' audit, had been audited, one or more of the Plaintiffs reviewed copies or excerpts of the Auditor Defendants' Audit Reports and/or one or more of the Plaintiffs reviewed the expressions of public support by the Auditor Defendants for FTX and SBF.

Given all the variables, this sentence *could mean* dozens of different things, but it does not allege any actual *fact* sufficient to satisfy Plaintiffs' pleading obligations. It is the opposite of a short and plain statement of the claim showing that the pleader is entitled to relief.

For these reasons and those set forth below, the Court should dismiss the Complaint, and because the Court has already afforded Plaintiffs an opportunity to amend, the dismissal should be with prejudice.

## FACTUAL BACKGROUND AND PLAINTIFFS' ALLEGATIONS

I.      **Plaintiffs' Claims Are Founded on Armanino's and Prager Metis's Non-Public Audit Reports.**

Armanino and Prager Metis are two separate, independent accounting firms that performed financial statement audits for separate and distinct clients under separate engagements. Armanino performed non-public audits of the 2020 and 2021 financial statements for West Realm Shires Inc. ("WRS") and its subsidiary, West Realm Shires Services Inc. ("FTX US"). Prager Metis performed non-public audits of the 2020 and 2021 financial statements for FTX Trading Ltd. ("FTX Trading"). Compl. ¶¶ 251, 300. WRS and FTX US are under common ownership with—though much smaller than—FTX Trading.

Plaintiffs, purported customers of unspecified FTX entities, allege they "purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform." Compl. ¶¶ 18-33. No Plaintiffs state whether they were customers of FTX US or FTX Trading, often conflating and confusing the separate audit clients. Plaintiffs allege Armanino and Prager Metis violated Generally Accepted Auditing Standards ("GAAS") by issuing their audit reports for these respective clients, and thus contributed to the allegedly fraudulent scheme orchestrated by FTX entities and the FTX Insider Defendants ("FTX Insiders"). Plaintiffs base their claims on the non-public audit reports and various social media and Internet posts, none of which a single Plaintiff claims to have seen—let alone relied on—when Plaintiffs deposited funds on the FTX US or FTX Trading exchanges, and many of which were neither authored by or mention Armanino or Prager Metis.

Plaintiffs impermissibly attempt to portray themselves as the actual or intended audience of the audit reports. Although auditors owe a professional duty to their clients,[1] Plaintiffs, as purported **customers of FTX US or FTX Trading**, had no relationship to Armanino or Prager Metis. Plaintiffs do not allege that a single Plaintiff is a client of either Armanino or Prager Metis. No Plaintiff claims to have received or read any of the non-public audit reports. Nor were they the intended recipients or beneficiaries of the reports, which are addressed solely to the

---

[1] *Bily v. Arthur Young & Co.*, 834 P.2d 745, 767 (Cal. 1992), *as modified* (Nov. 12, 1992) ("an auditor's liability for general negligence in the conduct of an audit of its client['s] financial statements is confined to the client, i.e., the person who contracts for or engages the audit services."). *Bily* sets out the general responsibilities and scope of an auditor's work, as well as the limits to an auditor's liability for negligence.

board of directors of FTX US or WRS, and to the board of directors and stockholders of FTX Trading, all of which were privately held. *See* Exs. A-C.[2]

Despite their lack of connection to Armanino or Prager Metis, Plaintiffs allege three categories of alleged misrepresentations in their Complaint:

**The Non-Public Audit Reports**: Plaintiffs allege that Armanino and Prager Metis wrongfully issued unqualified opinions because they knew or should have known about the underlying fraud. Compl. ¶¶ 13, 304-08, 316-20. Further, Plaintiffs offer only the formulaic recitation that Armanino and Prager Metis knew or should have known FTX US and FTX Trading intended to use these audits to recruit customers. *Id.* ¶ 300. Plaintiffs do not allege any facts to substantiate their "knew or should have known" allegations, and never allege they reviewed or received any of these reports.

**Purported Expressions of Public Support**: Plaintiffs allege that Armanino and Prager Metis wrongfully "touted" FTX via four statements: three tweets by Armanino (or an Armanino employee) in response to Mr. Bankman-Fried's Congressional testimony, one of which said, "Let's go buddy," another of which said, "Nice work," *id.* ¶¶ 327-29; and one firm website post by Prager Metis, which states Prager Metis and a FTX employee attended a baseball game and "had a great time." *Id.* ¶ 330. Plaintiffs allege that these statements constituted "support for FTX and/or SBF" and "prevented Plaintiffs and members of the Classes from making an informed decisions whether or not to utilize FTX services." *Id.* ¶ 426. As with the audit reports, Plaintiffs never allege they saw any of these statements. What is more, none of the statements has anything to do with the financial statements of any FTX-related entity or is even a statement of fact.

**Statements from FTX entities and FTX Insiders**: Plaintiffs also cite statements by FTX entities and the FTX Insiders stating that certain financial statements had been audited. *Id.* ¶¶

---

[2] The Court can consider Armanino's and Prager Metis's respective audit reports for FTX US, WRS, and FTX Trading (Exs. A-C), which accompanied the audited financial statements for those entities, Compl. ¶¶ 15, 293–95, as well as the following documents that Plaintiffs quote in their Complaint, which are central to Plaintiffs' claims and allegations, and whose authenticity is not subject to reasonable dispute: (1) the FTX Trading Terms of Service and FTX US User Agreement (Exs. D-E), *id.* ¶¶ 47, 91, nn. 20, 101; and (2) Mr. Ray's First Day Declaration. *Id.* ¶ 237. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal."); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

299-303. But none of these statements was made by or mentions either Armanino or Prager Metis.

Based on these scant allegations, Plaintiffs claim that Armanino and Prager Metis are liable for the following: RICO conspiracy; civil conspiracy; misleading advertising; securities law violations; deceptive and unfair trade practices and competition; aiding and abetting unfair competition, breach of fiduciary duties, and conversion; professional negligence; fraud and misrepresentation; and declaratory judgment.

## II.   Armanino's and Prager Metis's Duties and Responsibilities as Outside Auditors Were Defined by Professional Standards.

As Plaintiffs concede, Armanino's audits of the financial statements of FTX US and Prager Metis's audits of the financial statements of FTX Trading were governed by GAAS. An auditor's objective pursuant to GAAS is "to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error." AU-C §200.06. Because reasonable assurance is *not* absolute assurance, *id.*, the auditor "is not expected to, and cannot, reduce audit risk to zero and cannot, therefore, obtain absolute assurance that the financial statements are free from material misstatement due to fraud or error. This is because inherent limitations of an audit exist." AU-C § 200.A49.

GAAS acknowledge at least two significant limitations of a financial statement audit. The first inherent limitation is that an audit occurs entirely within a client-controlled environment, and thus client management, not the auditor, is responsible for, among other things:

- "[t]he preparation and fair presentation of the financial statements" and "the design, implementation, and maintenance of internal control," AU-C § 200.14;

- fraud prevention and detection, AU-C § 240.04; and

- legal compliance, AU-C §§ 250.03.

Given management's ultimate responsibility for these matters, management must "provide the auditor with access to all information of which management [is]…aware that is relevant to the preparation and presentation of the financial statements." AU-C § 200.A2(c)(i). Management must also provide specific representations to an auditor relating to, among other things, management's belief "that they have fulfilled their responsibility for the preparation and fair presentation of the financial statements and for the completeness of the information provided

to the auditor." AU-C §580.06(a). That means that management—through no fault of the auditor—can undermine an audit. GAAS specifically contemplate this:

> There is the possibility that management or others may not provide, intentionally or unintentionally, the complete information that is relevant to the preparation and fair presentation of the financial statements or that has been requested by the auditor. Accordingly, the auditor cannot be certain of the completeness of information, even though the auditor has performed audit procedures to obtain assurance that all relevant information has been obtained.

AU-C § 200.A51. Here, Armanino's and Prager Metis's audits took place during a time when, by all accounts, *including Plaintiffs'*, senior insiders at FTX entities were engaged in a fraud that involved actively and routinely lying to conceal and perpetuate their fraud.

A second inherent limitation on an audit is "[f]or practical reasons of time and cost, an audit rarely, if ever, examines every accounting transaction in the records of a business." *Bily*, 834 P.2d at 749, 751; AU-C § 200.A49 ("the need for the audit to be conducted within a reasonable period of time and so as to achieve a balance between benefit and cost."). Through the exercise of professional judgment, an auditor relies on risk assessment, analytical procedures, sampling, and various testing procedures to express its opinion. AU-C § 200.A54. But an auditor does not—because it cannot—reconstruct or inspect every transaction that the client entered into during the audit period. GAAS recognize:

> there is an expectation by users of financial statements that the auditor will form an opinion on the financial statements within a reasonable period of time and so as to achieve a balance between benefit and cost, recognizing that it is impracticable to address all information that may exist or to pursue every matter exhaustively on the assumption that information is fraudulent or erroneous until proved otherwise.

AU-C § 200.A52. Given this necessary balance, "there is an unavoidable risk that some material misstatement of the financial statements may not be detected, *even though the audit is properly planned and performed in accordance with GAAS*." AU-C § 200.A56 (emphasis added).

Apparently attempting to suggest that Armanino and Prager Metis conducted deficient audits, Plaintiffs assert that the alleged fraud orchestrated by the FTX Insiders was so "easily" discernable that John Ray—in his capacity as bankruptcy court-anointed CEO of FTX Trading, FTX US, and related entities, well after the last financial statement audit by either Armanino or

Prager Metis[3]—was able to "discover that FTX was a house of cards…days after he became CEO of FTX." Compl. ¶ 14. But that allegation relies on the flawed premise that Mr. Ray's role as CEO conducting a forensic investigation after the discovery of the alleged fraud perpetrated by the FTX Insiders (and well after the last audit opinion by either Prager Metis or Armanino) is somehow comparable to the outside auditor role of Armanino and Prager Metis. Mr. Ray and his army of six professional services firms, with knowledge that fraud had been perpetrated, have have had unfettered access to (i) the FTX entities' books and records, and (ii) statements by insiders confessing to criminal activity. That team has incurred $200 million in professional fees—an average of $1.5 million per day—thus far into their almost year-long investigation.

In light of these two inherent limitations (and others), it is no surprise that GAAS caution against evaluating an auditor's work in hindsight: "Because of the inherent limitations of an audit . . . the subsequent discovery of a material misstatement of the financial statements resulting from fraud or error does not by itself indicate a failure to conduct an audit in accordance with GAAS." AU-C § 200.A56. This is in part because "[f]raud may involve sophisticated and carefully organized schemes designed to conceal it. Therefore, audit procedures used to gather audit evidence may be ineffective for detecting an intentional misstatement that involves, for example, collusion to falsify documentation that may cause the auditor to believe that audit evidence is valid when it is not." AU-C § 200.A51.

## LEGAL STANDARDS[4]

### I.   Plaintiffs' Complaint Is Subject to Stringent Pleading Standards.

Rule 12(b)(6) requires dismissal of a complaint unless it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[3] Armanino issued its audit report on the financial statements of FTX US and WRS for 2020 and 2021 on March 30, 2022. Prager Metis issued its audit report on the financial statements of FTX Trading for 2020 and 2021 on April 2, 2022.

[4] Plaintiffs, who are citizens of eight different states and four foreign countries, purport to represent a national and international class, but they fail to identify which state law applies to their common law tort claims (Counts IX-XV and XVII-XVIII). Armanino and Prager Metis are California and New York firms, respectively. Based on the claims brought in the transferor courts (Southern District of Florida and Northern District of California) and the parties' domiciles (California and New York), this Court may have to apply a variety of state laws to the common law tort claims. For the purposes of this Motion, Armanino and Prager Metis cite to California and Florida state law to analyze Plaintiffs' claims.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The quantum and clarity of facts necessary to state a claim are dictated by Rules 8 and 9(b). Rule 8 applies to every claim and demands "a short and plain statement of the claim showing that the pleader is entitled to relief." "The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Plowright v. Miami-Dade Cnty.*, 2022 WL 18228314, at *2 (S.D. Fla. Dec. 5, 2022) (quotation omitted).

Rule 9(b), which applies to the majority of Plaintiffs' claims (Counts II, IV-XVII), requires a plaintiff "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Under Rule 9(b), a plaintiff must specify: (1) the precise statements or omissions that form the basis of the claim; (2) the time and place of each such statement and the person who made it (or not, in the case of omissions); (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *See Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016). The "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quotation omitted).

## II.    Plaintiffs Cannot Sidestep the Pleading Standards Through Ambiguous Allegations.

Courts have repeatedly and consistently rejected the rhetorical tricks of "and/or" allegations and broad statements like those used here to conflate parties. First, plaintiffs may not rely on "'and/or' as a catch-all to assert allegations," because the "'and/or' construction leaves it just as likely that either [defendant] engaged in the conduct alleged—but not plausible that either in particular did so. This method of pleading fails to connect any particular defendant to any particular allegation." *Steel Warehouse Cleveland, LLC v. Velocity Outdoor, Inc.*, 2023 WL 2264257, at *4 (N.D. Ohio Feb. 28, 2023). Allegations that a plaintiff reviewed "statement X and/or statement Y" are deficient for the same reason.

Second, a plaintiff cannot make generalized allegations against two separate defendants, because such allegations "do not inform each Defendant of the particular claims against it. Moreover, lumping all defendants together for different misconduct fails to demonstrate each

-8-

defendant's individual liability." *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *4 (D.N.J. Dec. 16, 2015) (holding that this pleading tactic does not satisfy Rule 8); *Brooks*, 116 F.3d at 1380-81 (holding a plaintiff may not "lump[] together" individual defendants in their allegations of fraud; facts specific to each must be alleged); *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2012 WL 12863888, at *5 (S.D. Fla. Sept. 27, 2012) ("Generally speaking, allegations pled 'upon information and belief' are insufficient to satisfy Rule 9(b).").

Third, multiple plaintiffs cannot lump themselves together—for instance, referring to "one or more of the Plaintiffs" (*see, e.g.*, Compl. ¶ 358)—to avoid identifying which plaintiff has which claim against which defendant. Rule 8 requires claimants "to clearly identify the parties, who they are, and who did what." *Kerman-Ray of the House of Carr v. City & Cnty. of Denver*, 2016 WL 7178320, at *2 (D. Colo. Dec. 8, 2016).

## ARGUMENT

### I.   Plaintiffs Fail to Allege Essential Elements Common to Nearly All of Their Claims.

Plaintiffs must plausibly allege, among other things: a purported misrepresentation or omission made by each of Armanino and Prager Metis; that each Plaintiff saw and relied upon the purported misrepresentation; facts supporting privity or a special relationship between each Plaintiff and both Armanino and Prager Metis; Armanino's and Prager Metis's knowledge of the underlying fraud orchestrated by the FTX Insiders; and a causal connection between Armanino's and Prager Metis's statements and Plaintiffs' alleged injuries. Plaintiffs' Complaint falls short on all of these issues, requiring dismissal of each of the affected counts discussed below.

### A.   The Court Should Dismiss Each Count That Requires Plaintiffs to Plead a Misrepresentation or Exposure to a Statement (Counts II, IV-VIII, X-XIII).

Ten of Plaintiffs' claims require them to allege that Armanino and Prager Metis made a misrepresentation or omission of a material fact, or otherwise engaged in a deceptive practice, and that Plaintiffs saw and relied on a statement from Armanino and Prager Metis. Plaintiffs' pleading failure requires dismissal of all ten of those counts: Florida Misleading Advertising Law[5] (Count II), Section 517.301 of the Florida Securities and Investor Protection Act ("FSIPA")[6] (Count IV), Count V Florida Deceptive and Unfair Trade Practices Act

---

[5] *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1134 (S.D. Fla. 2021).
[6] *Kashner Davidson Sec. Corp. v. Desrosiers*, 689 So. 2d 1106, 1107 (Fla. 2d DCA 1997).

("FDUTPA")[7] (Count V), (California Unfair Competition Law ("UCL")[8] (Count VI), California False Advertising Law[9] (Count VII), California Corporate Securities Law ("CSL")[10] (Count VIII), and fraudulent concealment,[11] negligent misrepresentation,[12] intentional misrepresentation,[13] and fraud[14] (Counts X-XIII).

          1.      <u>Plaintiffs Do Not Allege That They Saw Any Audit Reports from Armanino or Prager Metis.</u>

      The central allegation of Plaintiffs' Complaint is that Armanino and Prager Metis wrongfully issued unqualified audit reports on the financial statements of FTX US and FTX Trading, respectively, for the fiscal years 2020 and 2021, which convinced Plaintiffs to deposit funds on the FTX US or FTX Trading platforms. Compl. ¶ 15. ***But Plaintiffs fail to allege a single Plaintiff saw a single statement by Armanino or Prager Metis*** about FTX US's or FTX Trading's financial statements. Needless to say, then, not a single Plaintiff adequately pleads reliance on such a statement. *See Colenzo v. FDIC*, 2010 WL 11512212, at *4 (C.D. Cal. Apr. 28, 2010) ("Plaintiffs do not allege that they relied on any statement by E&Y since they do not allege that they ever read or heard any statement by E&Y that caused them to alter their conduct. Absent an allegation that plaintiffs read or knew of an allegedly false statement by E&Y and relied on it, the amended complaint does not adequately plead reliance.").

      Rather than plead facts that would permit even an inference of actual and justifiable reliance, Plaintiffs merely offer only the formulaic recitation that statements by "the Auditor

---

[7] *DFG Grp., LLC. v. Stern*, 220 So. 3d 1236, 1238 (Fla. 4th DCA 2017); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002).

[8] *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1243 (N.D. Cal. 2017).

[9] *See* Cal. Bus. & Prof. Code § 17500; *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (Cal. App. Ct. 2020).

[10] *See* Cal. Corp. Code § 25401; *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1073 (N.D. Cal. 2013).

[11] *Vital Pharms., Inc. v. Balboa Cap. Corp.*, 2016 WL 4479370 at *7 (S.D. Fla. 2016); *Sevidal v. Target*, 189 Cal. App. 4th 905, 928 (Cal. App. Ct. 2010).

[12] *Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505-06 (Fla. 1st DCA 2017); *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983 (Cal. Ct. App. 2003).

[13] *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1039 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019); *Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *3 (M.D. Fla. Feb. 22, 2017).

[14] *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010); *Yagman v. Kelly*, 2018 WL 2138461, at *11 (C.D. Cal. Mar. 20, 2018).

Defendants…were made or disseminated or caused to be made or disseminated before the public," Compl. ¶ 407, and that "[o]ne or more of the Plaintiffs…made investments and/or deposited funds and/or assets with FTX and transferred such funds and/or assets…in reliance, in whole or in part, on the Auditor Defendants' Audit Reports, or the fact of their existence." *Id.* ¶ 410. Plaintiffs never allege any of them ***actually received or saw*** any of the audit reports.

Plaintiffs' only allegations relating to their receipt of or reliance on alleged statements by Armanino or Prager Metis are, in a word, gibberish. For instance, they state that "[o]ne or more of the Plaintiffs, and the Classes, reasonably relied on the representations set forth above and/or the fact that the financial statements of the FTX Entities were purportedly audited." *Id.* ¶ 451. The allegation that one Plaintiff relied on a purported misrepresentation by one of the two Defendants ***or*** "the fact that the financial statements of the FTX Entities were purportedly audited" is deficient. With that "or," Plaintiffs fail to adequately allege that any Plaintiff actually relied on any statement by either Armanino or Prager Metis.[15] It is not difficult to allege simply, "Plaintiff X reviewed Armanino's audit report on FTX US." But Plaintiffs never do.

Nor is Plaintiffs' recurring use of the phrase "one or more of the Plaintiffs" sufficient to plead reliance (or anything else) under Rule 8. In ruling on this Motion, the Court must determine which Plaintiffs (if any) stated which claims against which Defendant. The Court cannot assume, for purposes of a motion to dismiss, that "one" Plaintiff is the same thing as "each" Plaintiff. Instead, for purposes of a motion to dismiss, the Court can only interpret "one or more Plaintiff" as "no particular Plaintiff," and dismiss the claims.

In addition, the Complaint fails to identify which Plaintiffs were customers of FTX US or FTX Trading, often conflating the two clients with each other and other FTX entities. Thus, the Complaint does not identify which audit reports are even allegedly related to Plaintiffs' claims or which audit report Plaintiff could have plausibly relied upon. In support of their misplaced allegation that FTX US and FTX Trading lured customers using Armanino's and Prager Metis's audit reports, Plaintiffs mischaracterize the SEC's complaint against Mr. Bankman-Fried and

---

[15] *See also, e.g.*, Compl. ¶ 445 ("[O]ne or more of the Plaintiffs, and members of the Classes, justifiably relied on the Auditor Defendants' Audit Reports, ***or*** the existence thereof, or statements of support for FTX and SBF"); *id.* ¶ 462 ("Plaintiffs and the members of the Classes were reasonable in relying on the Auditor Defendants' misrepresentations (and corresponding omissions), ***or*** the facts that the Auditor Defendants had audited FTX, in making their decision to send money or assets to the Defendants for purposes of trading on the FTX Platform, opening YBAs and/or purchasing FTTs.") (emphasis added).

state "FTX investors were provided with FTX's audited financial statements" Compl. ¶ 301, despite the SEC complaint noting that "FTX US's conduct is not the subject of the allegations of this complaint." *See SEC v. Bankman-Fried*, Case No. 1:22-cv-10501, Dkt. No. 1, at 7 n.2 (S.D.N.Y.). As such, the SEC's allegation has nothing to do with FTX US, Armanino, or Armanino's audits of FTX US.[16]

Further, Plaintiffs cannot show they relied on statements from Armanino or Prager Metis when they conflate the two defendants. By pleading their claims jointly against the "Auditor Defendants"—two entirely separate firms performing services for distinct clients—Plaintiffs fail to identify which Defendant is responsible for the alleged acts or omissions. *See Sheeran*, 2015 WL 9048979, at *4 ("Rule 8 is not satisfied because the allegations do not inform each Defendant of the particular claims against it. [L]umping all defendants together for different misconduct fails to demonstrate each defendant's individual liability."); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (noting the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against"). Rule 8 requires claimants "to clearly identify the parties, who they are, and who did what." *Kerman-Ray of the House of Carr*, 2016 WL 7178320, at *2. Given Plaintiffs' ambiguous and conclusory allegations, the Complaint violates Rule 8's standards.

  2. Plaintiffs Do Not Identify Any Misrepresentation in Armanino's or Prager Metis's Non-Public Audit Reports.

Plaintiffs fail to identify any misrepresentation in the non-public audit reports. Compl. ¶¶ 293-95. Instead, Plaintiffs allege "the Auditor Defendants never should have issued clean audit reports or opinions on FTX Trading's and FTX US's financial statements" or "allow" Mr. Bankman-Fried to tweet that "FTX…complete[d] a GAAP audit." *Id.* ¶¶ 298, 303. Plaintiffs insist that, based on the post-bankruptcy work performed by Mr. Ray and his army of professional advisors working around the clock, which took place well after Armanino and Prager Metis concluded their audits and for entirely different purposes, Armanino's and Prager

---

[16] In addition, Plaintiffs state, "[b]eginning in 2019, the FTX Group began offering the YBAs to public investors through its Earn program." Compl. ¶ 203. While Plaintiffs define "FTX Group" to include FTX US, FTX US was not launched until May 2020. Likewise, Plaintiffs confuse West Realm Shires Inc. and its subsidiary West Realm Shires Services Inc. d/b/a FTX US ("FTX US"), mistakenly identifying West Realm Shires Inc. as FTX US when quoting from its audit report. Compl. ¶¶ 293-94 ("West Realm Shires Inc. [a/k/a/ FTX US]").

Metis's reports must have been improperly issued. *Id.* ¶ 310. That insinuation is insufficient as a matter of law. *See Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1182 (N.D. Cal. 2004) (holding later-reported internal controls deficiencies were insufficient to show auditor's earlier audit report on financial statements was misleading when made).

3. The Alleged "Expressions of Public Support" Are Not Statements of Material Fact.

Plaintiffs argue that Armanino and Prager Metis "breached their duty of independence by publicly touting, promoting and expressing support to FTX and Bankman-Fried," but never, and in fact cannot, allege that Armanino's and Prager Metis's collective four purported "expressions of public support for FTX and SBF" were statements of fact, let alone that they were false or were otherwise misrepresentations. Compl. ¶¶ 326, 358. Plaintiffs merely argue these statements showed that Armanino and Prager Metis improperly offered public support to "FTX and SBF." Plaintiffs make no attempt to show these statements were actually false or deceptive, let alone material, since they make no mention of any audit services or reports. Further, no Plaintiff alleges she ever saw or relied upon any of those statements.

4. Statements of FTX Entities or FTX Insiders Do Not Support Plaintiffs' Claims Against Armanino or Prager Metis.

Plaintiffs cannot rely on the statements of other individuals and entities to show that either Armanino or Prager Metis made a misrepresentation or false statement. Plaintiffs cite tweets from Mr. Bankman-Fried and posts on "FTX's website" referencing audits of certain financial statements, but none of these statements were made by or even mention Armanino or Prager Metis. Compl. ¶¶ 302-03; *see Colenzo*, 2010 WL 11512212, at *4; *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("[Company's] press release did not attribute any assurances to Ernst & Young and, in fact, did not mention Ernst & Young at all. Thus, Ernst & Young neither directly nor indirectly communicated misrepresentations to investors."). Those statements are not actionable as a matter of law.

**B.  The Court Should Dismiss Each Count that Requires Plaintiffs to Plead a Duty or Intended Benefit (Counts II and IX-XIII).**

The Court should dismiss Plaintiffs' claims for professional negligence (Count IX), fraudulent concealment (Count X), and negligent misrepresentation (Count XI) because Plaintiffs have not alleged they are in privity or have any other special relationship with

Armanino or Prager Metis. The Court should also dismiss Counts II and X-XIII because Plaintiffs fail to show Armanino or Prager Metis intended Plaintiffs to rely on the audit reports.

**Professional Negligence (Count IX)**. "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." *Bily*, 834 P.2d at 760. Under California law, "an auditor's liability for general negligence in the conduct of an audit of its client['s] financial statements is confined to the client, i.e., the person who contracts for or engages the audit services." *Id.* at 767. As such, the auditor owes no duty of care to third parties who may have relied on the audit report, and third parties may not maintain a professional negligence action against the auditor. *See Colenzo*, 2010 WL 11512212, at *6 (dismissing with prejudice claim for professional negligence where plaintiff did not allege they were client of accountant). Plaintiffs do not and cannot allege any duty owed to them.

**Negligent Misrepresentation (Count XI)**. In *Bily*, the California Supreme Court established strict requirements for non-client third parties (like Plaintiffs) attempting to recover against accountants for negligent misrepresentation or fraud.[17] The court held that a narrow class of third party users of audit reports may sue the auditor for negligent misrepresentation only if they "are specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report." *Bily*, 834 P.2d at 767 (citing Restatement (Second) of Torts § 552 (1977)). "The representation must have been made with the intent to induce plaintiff, or a particular class of persons to which plaintiff belongs, to act in reliance upon the representation in a specific transaction, or a specific type of transaction, that defendant intended to influence." *Id.* at 772-73. The test for liability is not whether Plaintiffs were foreseeable users of the audit reports. Rather, the standard is narrowly focused on what the accountant intended. Therefore, "liability should be confined to cases in which [the accountant] manifests an intent to supply the information *for the sort of use in which the plaintiff's loss occurs*." *Id.* at 769 (emphasis added).

---

[17] New York also requires plaintiffs to plead a "special relationship" to state a claim for negligent misrepresentation. *See Gallagher v. New York City Health & Hosps. Corp.*, 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017), *aff'd*, 733 F. App'x 3 (2d Cir. 2018) (stating elements of negligent misrepresentation, including that "defendant had a duty, as a result of a special relationship, to give correct information" to plaintiff).

Plaintiffs do not and cannot allege that Armanino or Prager Metis intended for them to review the audit reports or that Armanino and Prager Metis intended to influence their behavior in the context of any particular transaction. The audit reports were directly addressed to and intended solely for the audit clients' boards of directors in the case of FTX US and WRS, and the board of directors and stockholders in the case of FTX Trading—not their customers or the public at large. Exs. A-C. Plaintiffs' quoted excerpts of the WRS and FTX Trading audit reports artfully omit the reports' intended recipients. Compl. ¶¶ 293-95.[18]

**Fraudulent Concealment (Count X)**. Similarly, "[t]o maintain a cause of action for fraud through nondisclosure or concealment of facts, there *must* be allegations demonstrating that the defendant was under a legal duty to disclose those facts." *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888-89 (E.D. Cal. 2019) (quotations omitted). For fraudulent concealment, there are four circumstances under which that duty arises: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (Cal. Ct. App. 2017).[19] To establish a duty based on superior knowledge, Plaintiffs must also show "the existence of *some other relationship* between the plaintiff and defendant in which a duty to disclose can arise. This relationship has been described as a 'transaction,' such as that between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement." *Immobiliare*, 424 F. Supp. 3d at 888-89 (emphasis in original).

Plaintiffs have not alleged and cannot plausibly allege a relationship of any type with Armanino or Prager Metis. While Plaintiffs allege that "[t]he MDL Defendants, including the Auditor Defendants, had an affirmative duty to disclose the true nature of the financial condition of FTX, the FTX Platform, YBAs and/or FTT to prospective and actual customers and investors because they were in a superior position to know the true nature of FTX," Compl. ¶ 437,

---

[18] Plaintiffs do not quote from Armanino's audit report for FTX US, but this report was similarly addressed to FTX US's board of directors. *See* Ex. A.

[19] Florida law similarly requires privity or a special relationship between the parties. *See Bruhl v. PricewaterhouseCoopers Int'l*, 2006 WL 8431888, at *10 (S.D. Fla. Apr. 3, 2006); *Greenberg v. Miami Children's Hosp. Rsch. Inst., Inc.*, 264 F. Supp. 2d 1064, 1073-74 (S.D. Fla. 2003).

Plaintiffs must also plead "some other relationship" to establish a duty through superior knowledge. *See Immobiliare*, 424 F. Supp. 3d at 888-89.

***Intent to Induce Reliance (Counts II and X-XIII)***. Finally, Plaintiffs' Counts II and X-XIII explicitly require them to show that Armanino and Prager Metis intended to induce Plaintiffs to rely on a misrepresentation of material fact.[20] Plaintiffs, for reasons already stated, fail to do so. Plaintiffs have not alleged and cannot plausibly allege that Armanino and Prager Metis intended to influence their behavior in the context of any particular transaction. Because Plaintiffs fail to establish any relationship with Armanino or Prager Metis, and thus fail to show that either Defendant intended to induce Plaintiffs' reliance on their audit reports, the Court must dismiss Counts II and X-XIII.

### C.   The Court Should Dismiss Each Count that Requires Plaintiffs to Plead Knowledge or Intent (Counts I-II, VII-VIII, and X-XVIII).

Although the Complaint recycles several unsupported fraud-based counts from the various pre-MDL complaints, Plaintiffs are unable to allege that either Armanino or Prager Metis (1) knew of the fraud perpetrated by the FTX Insiders, or (2) intended to deceive potential FTX US or FTX Trading customers with non-public audit reports or insignificant online posts. These allegations are necessary to plead Counts I-II, VII-VIII, and X-XVIII.[21]

---

[20] Florida misleading advertising (Count II) - *Piescik*, 576 F. Supp. 3d at 1134; fraudulent concealment (Count X) - *Avedisian v. Mercedes-Benz USA, LLC*, 43 F. Supp. 3d 1071, 1080 (C.D. Cal. 2014); *Vital Pharms., Inc.*, 2016 WL 4479370, at *7; negligent misrepresentation (Count XI) - *Shamsian*, 107 Cal. App. 4th at 983; *Arlington Pebble Creek, LLC*, 232 So. 3d at 505; intentional misrepresentation (Count XII) - *GemCap Lending, LLC*, 269 F. Supp. 3d at 1039; *Scolieri*, 2017 WL 700215, at *3; Count XIII - *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d at 1224; *Yagman*, 2018 WL 2138461, at *11.

[21] RICO conspiracy (Count I) - *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010); *see also Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 395, 951 (11th Cir. 1997); Count II - *Piescik*, 576 F. Supp. 3d at 1134; California false advertising (Count VII) - *Steinberg Moorad & Dunn, Inc. v. Dunn*, 2002 WL 31968234, at *25 (C.D. Cal. Dec. 26, 2002); California Corporate Securities Law (Count VIII) - Cal. Corp. Code § 25504; *id*. § 25504.1; fraudulent concealment (Count X) - *AToN Ctr., Inc. v. United Healthcare Ins. Co.*, 311 Cal. Rptr. 3d 564, 593 (Cal. Ct. App. 2023); *Lopez v. Clarke*, 189 So. 3d 805, 809-10 (Fla. 4th DCA 2015); negligent misrepresentation (Count XI) - *Tindell v. Murphy*, 22 Cal. App. 5th 1239, 1252 (Cal. Ct. App. 2018); *Arlington Pebble Creek, LLC*, 232 So. 3d at 505; intentional misrepresentation (Count XII) - *GemCap Lending, LLC*, 269 F. Supp. 3d at 1039; *Scolieri*, 2017 WL 700215, at *3; fraud (Count XIII) - *Yagman*, 2018 WL 2138461, at *11; *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022); civil conspiracy (Count XIV) - *Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 394 (Cal. Ct. App. 2017); *Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000); aiding and abetting fraud (Count XV)

When alleging *scienter*, it is not sufficient to allege that a defendant ignored "red flags" and "should have known" of wrongdoings. *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014); *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1008–09 (S.D. Cal. 2000) (allegations that accountant "ignored several 'red flags'" surrounding transactions were "insufficient to raise an inference of scienter" because "an independent accountant's relationship and acquired familiarity with its client does not impute the accountant with knowledge of every idiosyncratic detail associated with the client's business."), *aff'd sub nom. DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002). Nor is it acceptable to "impute knowledge of the wrongdoing" on a defendant "through their mere business associations" with the primary wrongdoer and claim that the defendant therefore "knew or should have known" of the wrongdoing. *Feng v. Walsh*, 2021 WL 8055449, at *7-8 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022); *Peng v. Mastroinni*, 2021 WL 4522303, at *4 (S.D. Fla. May 5, 2021) ("Conclusory statements that a defendant acted with the requisite knowledge" are also inadequate.). Such a conclusion disregards the scope of an audit and the responsibilities of an auditor. *See Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 454 (7th Cir. 1982) ("Auditors are not detectives hired to ferret out fraud"); *Pub. Emps. Retirement Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 316 (4th Cir. 2009) ("It is not an accountant's fault if its client actively conspires with others in order to deprive the accountant of accurate information about the client's finances."); *Monroe v. Hughes*, 860 F. Supp. 733, 738-39 (D. Or. 1991) ("auditors are not 'police' as plaintiffs suggest, and under professional standards, were not required to ensure that [the client] corrected internal control problems prior to its re-issuance of the audit report"), *aff'd*, 31 F.3d 772 (9th Cir. 1994); *SEC v. Arthur Young & Co.*, 590 F.2d 785, 788 (9th Cir. 1979) (the auditor "is not a guarantor of the reports he prepares.").

Plaintiffs' allegations are replete with the types of conclusory allegations rejected by courts in this Circuit and elsewhere. For example, Plaintiffs repeatedly hypothesize that both

---

- *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1148 (Cal. Ct. App. 2005); *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005); aiding and abetting UCL violation (Count XVI) – *Decarlo v. Costco Wholesale Corp.*, 2020 WL 1332539, at *5 (S.D. Cal. Mar. 23, 2020); aiding and abetting breach of fiduciary duty (Count XVII) – *Casey*, 127 Cal. App. 4th at 1148; *Arbitrajes Financieros, S.A. v. Bank of Am., N.A.*, 605 F. App'x 820, 824 (11th Cir. 2015); aiding and abetting conversion (Count XVIII) – *Casey*, 127 Cal. App. 4th at 1148; *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012).

auditors missed "red flags" at "FTX" generally and therefore "knew or should have known" FTX Insiders were engaged in covert fraud. *See, e.g.,* Compl. ¶ 441. These allegations improperly ask the Court to impute knowledge of wrongdoing to Armanino and Prager Metis based solely on their mere business association with FTX US or FTX Trading.[22] *See, e.g.*, Compl. ¶ 354. Further, Plaintiffs attempt to plead Armanino's and Prager Metis's knowledge using the findings from the post-bankruptcy work performed by Mr. Ray and his army of professional advisors working around the clock, which took place well after Armanino and Prager Metis concluded their financial statement audits and for entirely different purposes. Compl. ¶ 310. But the findings of Mr. Ray's forensic team well after Armanino and Prager Metis issued audit reports and based on knowledge that fraud had occurred are insufficient to establish knowledge and misrepresentation here. *See Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d at 1182. Because Plaintiffs fail to establish that Armanino or Prager Metis had actual knowledge or intent, Counts I-II, VII-VIII, and X-XVIII should be dismissed.

**D.   Plaintiffs Have Not Plausibly Alleged Armanino and Prager Metis Caused Their Alleged Harm, Requiring the Dismissal of Claims that Require Causation (Counts I-II, V-VII, IX-XVIII).**

The vast majority of Plaintiffs' claims require them to plead causation.[23] The Court should dismiss these claims in their entirety because Plaintiffs have not plausibly alleged that

---

[22] Moreover, Plaintiffs' purported "red flags" were anything but. As just one example, Plaintiffs claim that "the Terms of User and User Agreements" specify that customer assets "would be segregated." Compl. ¶ 491. The FTX US User Agreement actually says the opposite, making clear that user balances are "not segregated" and instead "are held in shared addresses or accounts." Ex. D (FTX Trading Terms of Service); Ex. E ¶ 6 (FTX US User Agreement).

[23] RICO conspiracy (Count I) - 18 U.S.C. § 1964(c); Florida misleading advertising (Count II) - *Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987); FDUTPA (Count V) - *DFG Grp., LLC.*, 220 So. 3d at 1238; UCL (Count VI) - *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (Cal. Ct. App. 2008); California false advertising (Count VII) - *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 2018 WL 3618243, at *6 (S.D. Cal. July 30, 2018), *aff'd*, 821 F. App'x 701 (9th Cir. 2020); professional negligence (Count IX) - *Giacometti v. Aulla, LLC*, 187 Cal. App. 4th 1133, 1137 (Cal. Ct. App. 2010); *Recreational Design & Const., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 820 F. Supp. 2d 1293, 1298 (S.D. Fla. 2011); fraudulent concealment (Count X) - *Avedisian*, 43 F. Supp. 3d at 1080; *Vital Pharms., Inc.*, 2016 WL 4479370, at *7; negligent misrepresentation (Count XI) - *Tindell*, 22 Cal. App. 5th at 1252; *Arlington Pebble Creek, LLC*, 232 So. 3d at 505; intentional misrepresentation (Count XII) - *GemCap Lending, LLC*, 269 F. Supp. 3d at 1039; *Scolieri*, 2017 WL 700215, at *3); fraud (Count XIII) - *Yagman*, 2018 WL 2138461, at *11; *Zarrella*, 755 F. Supp. 2d at 1224; civil conspiracy (Count XIV) - *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (Cal. 1994); *Kingland Ests., Ltd. v. Davis*, 170 So. 3d 825, 830 n.9 (Fla.

Armanino or Prager Metis caused their purported injuries. Plaintiffs allege that their injuries were caused by third parties' independent conduct. Plaintiffs' allegations are insufficient under both the tests for proximate cause and but-for ("cause-in-fact") causation. *See Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[P]roximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged. … A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient.'"); *Airplanes of Boca, Inc. v. United States ex rel. F.A.A.*, 254 F. Supp. 2d 1304, 1315 (S.D. Fla. 2003) ("To establish that a defendant's act or omission was a cause in fact the plaintiff must show that, but for that act or omission, there would have been no injury or damage."). Plaintiffs allege Armanino and Prager Metis issued "false Audit Reports" and "engag[ed] in the promotion of FTX," Compl. ¶ 388, but in failing to plead that they even saw these non-public audit reports, Plaintiffs establish no causal connection between Armanino's and Prager Metis's acts and Plaintiffs' alleged injuries.

## II.    Plaintiffs' Claims Sounding in Fraud Are Not Pled with Particularity as Required by Rule 9(b) (Counts II, IV-XVII).

Plaintiffs' claims center around the allegedly "largest financial fraud in US history," Compl. ¶ 1, and undoubtedly are grounded in fraud. *Ctr. for Individual Rts. v. Chevaldina*, 2017 WL 11682278, at *3 (S.D. Fla. Nov. 14, 2017) ("[C]ourts have consistently found that Rule 9(b) is also applicable to torts that are not even necessarily fraudulent—such as a breach of fiduciary duty—as long as their underlying factual allegations include averments of fraud."). The majority of Plaintiffs' claims must meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b): Florida misleading advertising (Count II),[24] FSIPA (Count IV),[25] FDUTPA (Count V),[26] UCL (Count VI),[27] California FAL (Count VII),[28] California securities law (Count VIII),[29] professional negligence (Count IX),[30] fraudulent concealment (Count X),[31] negligent

---

3d DCA 2015); aiding and abetting fraud, UCL violation, and breach of fiduciary duty, and conversion (Counts XV-XVIII) - *Giron v. Hong Kong*, 2017 WL 5495504, at *8 (C.D. Cal. Nov. 15, 2017).

[24] *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011)

[25] *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011).

[26] *State Farm Mut. Auto. Ins. Co. v. Performance Orthopedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327 (S.D. Fla. 2017) (Moore, J.).

[27] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

[28] *Id.* at 1125-27.

[29] *Yee v. NIVS IntelliMedia Tech. Grp.*, 2012 WL 12886829, at *1 (C.D. Cal. Sept. 7, 2012).

[30] *Mostowfi v. I2 Telecom Int'l, Inc.*, 2004 WL 7338797, at *9 (N.D. Cal. May 27, 2004).

misrepresentation (Count XI),[32] intentional misrepresentation (Count XII),[33] fraud (Count XIII),[34] civil conspiracy (Count XIV),[35] aiding and abetting fraud (Count XV),[36] aiding and abetting a UCL violation (Count XVI),[37] and aiding and abetting breach of fiduciary duty (Count XVII).[38]

To satisfy Rule 9(b), a complaint "must set forth particular allegations about the 'who, what, when, where, and how' of the fraud." *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016) (quotation omitted); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (claims subject to Rule 9(b) must allege the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"). Plaintiffs fail to meet this standard.

As explained above, Plaintiffs do not identify any specific statement by Armanino or Prager Metis that was false or fraudulently made, or state that they saw or relied on any statements from Armanino or Prager Metis. Throughout their Complaint, Plaintiffs impermissibly conflate Armanino and Prager Metis, pleading every single count against both Defendants as if they were a single entity,[39] often using "and/or" construction, obscuring which specific statements and actions by which Defendant is allegedly actionable. *See Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 371 (S.D. Fla. 1991) (dismissing FSIPA claims for failing to plead actual reliance with particularity under Rule 9 where plaintiffs had not "stated

---

[31] *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 888 (E.D. Cal. 2019); *Aguilo v. Cognizant Tech. Sols. U.S. Corp.*, 2022 WL 2106077, at *3 (M.D. Fla. June 10, 2022).

[32] *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner & Assocs.*, 820 F.Supp.2d 1293, 1303 (S.D. Fla. 2011).

[33] *Ortiz v. Ocwen Loan Servicing, LLC*, 2009 WL 10671384, at *4 (C.D. Cal. June 17, 2009); *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 876 (11th Cir. 2023).

[34] *Yagman*, 2018 WL 2138461, at *11; *Aguilo*, 2022 WL 2106077, at *2.

[35] *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007); *TIC Park Centre 9, LLC v. Cabot*, 2018 WL 4828436, at *2 (S.D. Fla. Aug. 31, 2018).

[36] *FCC, LLC v. Mizuho Medy Co., Ltd.*, 2008 WL 11338403, at *7 (S.D. Cal. July 16, 2008); *Lan Li v. Walsh*, 2019 WL 12267189, at *3 (S.D. Fla. Jan. 29, 2019).

[37] *Ali v. Am. Airlines, Inc.*, 2023 WL 4239065, at *5 (E.D. Cal. June 28, 2023), *report and recommendation adopted*, 2023 WL 5722915 (E.D. Cal. Sept. 5, 2023).

[38] *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374137, at *14 (C.D. Cal. Feb. 20, 2003).

[39] *See, e.g.*, Compl. ¶ 468 ("Each of the MDL Defendants, including the Auditor Defendants, engaged in concerted unlawful acts, particularly in the form of misrepresentations and omissions made to Plaintiffs.").

which of them read and relied on which particular statements made by Defendants"). Plaintiffs do not state whether they were customers of FTX US or FTX Trading, often conflating and confusing the separate audit clients when in fact, there were two auditors, three audit clients, and six separate audit engagements.[40] Nor have Plaintiffs alleged how or why the audit reports were misleading when made. Plaintiffs' reliance on Mr. Ray and his team's forensic analysis of the FTX entities' internal accounting, performed much later and for a different purpose, is insufficient to plead a misrepresentation under Rule 9(b).

In re Van Wagoner Funds, Inc. Securities Litigation is instructive. There, the court found that plaintiffs failed to plead reliance or material misrepresentation with particularity under Rule 9(b) as required for their fraud claim against auditor E&Y. 382 F. Supp. 2d at 1182. First, like here, plaintiffs only generally alleged they relied on E&Y's statements and made "no specific allegation that they read" the accountant's reports. Id. at 1187. Second, plaintiffs relied on later-reported internal controls deficiencies as circumstantial evidence to argue E&Y's earlier report on financial statements was misleading when made. But the court found that even if E&Y was aware of prior internal controls deficiencies when issuing its reports, E&Y had no duty under GAAS to publicly report such problems in prior audits, and plaintiffs' evidence was not particular enough to establish E&Y's report was false and misleading under the pleading standards of Rule 9(b). Id. at 1182. Here, Plaintiffs have made no specific allegation that they actually saw or reviewed the audit reports (much less the when and where), which makes sense since Armanino and Prager Metis performed audits of the financial statements of private companies with audit reports that were not disseminated publicly. Plaintiffs also point to no specific statements in the audit reports and fail to make a contemporaneous showing that the reports were false or deceptive when made. Plaintiffs' claims fail to meet the standards of Rule 9(b).

## III.   The Court Should Dismiss the RICO Conspiracy (Count I) and Common Law Conspiracy (Count XIV) Claims.

Plaintiffs fail to plead essential elements of their conspiracy claims. A conspiracy requires (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) which overt act was done pursuant to and in furtherance of the common scheme. Alhassid v. Bank of Am., N.A., 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014).

---

[40] See, e.g., Compl. ¶ 462 ("Plaintiffs…were reasonable in relying on…the fact that the Auditor Defendants had audited FTX.").

Further, a RICO conspiracy claim under 18 U.S.C. § 1962(d) only can be established "(1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Am. Dental Ass'n,* 605 F.3d at 1293. "To be guilty of conspiracy, . . . parties must have agreed to commit an act that is itself illegal— parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (quotation omitted).[41]

Here, Plaintiffs have failed in the first instance to plead with the requisite particularity the circumstances of the underlying RICO violation that Armanino and Prager Metis allegedly conspired to commit. *See Cigna,* 605 F.3d at 1291; *see, e.g.*, Dkt. 154 ¶ 330 (group pleading that all FTX Insiders committed wire fraud). But putting that aside, the Complaint fails in at least two other respects. First, Plaintiffs fail to allege any agreement between Armanino or Prager Metis and any FTX entity on the overall objective of a conspiracy, or to commit any unlawful or predicate acts. In fact, Plaintiffs' conspiracy allegations are contrary to reason and rationality. Second, Plaintiffs fail to demonstrate either Defendant was aware of or willfully blind to any underlying fraud. As such, Plaintiffs' conspiracy claims should be dismissed.

### A.     Plaintiffs Fail to Sufficiently Allege Any Agreement for Conspiracy Purposes.

For both RICO and common law civil conspiracy, Plaintiffs fail to allege an agreement to the overall objective of a conspiracy, or an agreement to commit any predicate acts. Plaintiffs set forth only **one** conclusory allegation regarding a RICO agreement: "Armanino and Prager Metis intended to or agreed to further an endeavor of the Operator / Manager Defendants which, if completed, would satisfy all of the elements of a substantive RICO criminal offense...and adopted the goal of furthering or facilitating the criminal endeavor." Compl. ¶ 353.

Here, "Plaintiffs have not plausibly alleged sufficient facts regarding Defendants' agreement with other entities or persons to engage in the ongoing criminal conduct of an enterprise. Plaintiffs' allegations of Defendants' parallel conduct, absent a plausibly-alleged

---

[41] "[A] civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by any act in furtherance of a conspiracy that might have caused the plaintiff injury." *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, 2022 WL 3155035, at *10 (S.D. Fla. July 21, 2022), *report and recommendation adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022) (citing *Beck v. Prupis*, 529 U.S. 494, 504–05 (2000)). Instead, a civil conspiracy plaintiff must plead that her injury was caused by something "analogous to an 'act of tortious character'" *Beck*, 529 U.S. at 501–05. Additionally, "an actionable [civil] conspiracy requires an actionable underlying tort or wrong." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1343 (S.D. Fla. 2011), *aff'd*, 483 F. App'x 568 (11th Cir. 2012).

'meeting of the minds,' fail to 'nudge[] their claims across the line from conceivable to plausible.'" *Am. Dental Ass'n*, 605 F.3d at 1296 (quoting *Twombly*, 550 U.S. at 557). This boilerplate language includes no facts to plead the basic details of an agreement between two parties to commit a criminal act. *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.*, 534 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008) ("Although Plaintiff [] alleges [defendant] agreed to violate RICO, this conclusory allegation is unsupported by actual allegations of fact which would create an reasonable inference that [defendant] made such an agreement.").

Further, a predicate act "includes any of a long list of state and federal crimes." *Birmingham v. Doe*, 2022 WL 18134962, at *8 (S.D. Fla. Dec. 6, 2022), *report and recommendation adopted sub nom. Birmingham v. ROFX.net*, 2023 WL 112308 (S.D. Fla. Jan. 5, 2023) (citing *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020)); 18 U.S.C. § 1961(1). There must be enough "facts with respect to *each* predicate act to make it independently indictable as a crime." *Id*. Plaintiffs made no showing that Armanino or Prager Metis committed or agreed to commit any independent crime.

As for common law civil conspiracy, Plaintiffs fail to identify any agreement between Armanino or Prager Metis and any other defendant to commit any tort. Plaintiffs allege only:

> Bankman-Fried and various of the FTX Insider Defendants **entered into at least one agreement** with the other MDL Defendants, including the Auditor Defendants, for the express purpose of making misrepresentations or omissions in order to induce and convince Plaintiffs and the Classes to invest in the FTX Platform, YBAs and/or FTTs and invest their money and/or assets in FTX.

Compl. ¶ 468 (emphasis added). This is precisely the type of "legal conclusion" that cannot support a conspiracy claim, particularly one based in fraud. *See Turner v. Williams*, 65 F.4th 564, 577 n.15 (11th Cir. 2023); *Swartz*, 476 F.3d at 765 ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent.") (quotations omitted).

**B.   Plaintiffs' Conspiracy Allegation is Irrational.**

Plaintiffs' conclusory allegation that Armanino and Prager Metis each agreed with the FTX Insiders to enter into a criminal conspiracy is implausible, irrational, and insufficient as a matter of law. *See Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d at 1185 ("A large independent accountant will rarely, if ever, have any rational economic incentive to participate in its client's fraud. The accountant's success depends on maintaining a reputation for honesty and integrity, requiring a plaintiff to **overcome the irrational inference** that the accountant would risk its professional reputation to participate in the fraud of a single client.") (emphasis added).

Plaintiffs allege nothing to undermine the general presumption of rationality, and the Court must dismiss the conspiracy claims as a result. *See Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *4 (S.D. Fla. Aug. 18, 2021) ("A facially plausible claim must allege facts that are more than merely possible.") (citation omitted); *Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) ("Based on these allegations, it is not plausible to infer [defendant] is involved in the alleged unlawful agreement."); *Lloyd v. Sch. Bd. of Palm Beach Cnty.*, 570 F. Supp. 3d 1165, 1173 (Moore, J.) (S.D. Fla. 2021) ("[U]nwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (quotations omitted).

### C. Plaintiffs Fail to Allege Armanino or Prager Metis Had Knowledge of or Was Willfully Blind to the Insider Defendants' Alleged Criminal and Tortious Activity.

Plaintiffs' RICO and civil conspiracy claims both require specific allegations regarding Armanino's and Prager Metis's *scienter* (actual knowledge, or willful blindness, to the alleged wrongdoing[42]), which Plaintiffs fail to plead. Instead, Plaintiffs offer precisely the sort of "formulaic recitations" of *scienter* that the Eleventh Circuit held are impermissible to establish knowledge and intent for conspiracy liability. *Compare Cigna*, 605 F.3d at 1293-94 (plaintiffs' allegations—that defendants "with knowledge and intent, agreed to the overall objective of the conspiracy" and that defendants "had to agree" with each other for their scheme to be successful—were insufficient "formulaic recitations" and impermissibly asked the court to make an "unwarranted deduction of fact"), *with* Compl. ¶ 354 (asking the court to infer actual knowledge or willful blindness by Armanino and Prager Metis based on Plaintiffs' allegation that Armanino and Prager Metis were "exposed to indications of the fraudulent nature of" the Insider Defendants' endeavors). These types of allegations show neither knowledge of an underlying fraud, nor Armanino's or Prager Metis's "deliberate actions to avoid confirming a high probability of wrongdoing." *Alper Auto., Inc. v. Day to Day Imps., Inc.*, 2021 WL 5893161,

---

[42] *Domanus v. Locke Lord LLP*, 847 F.3d 469, 480 (7th Cir. 2017) ("An inference of knowledge [of a RICO conspiracy] through willful blindness requires that the defendant' believe that there is a high probability that a fact exists and take deliberate actions to avoid learning of that fact.") (quotation omitted); *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 240 (5th Cir. 2010) ("Neither awareness of *some* probability of illegal conduct nor a showing [that] the defendant *should* have known is enough" to constitute the legal equivalent of knowledge.).

at *14 (S.D. Fla. Nov. 3, 2021), *aff'd*, 2022 WL 3418643 (11th Cir. Aug. 17, 2022) (quotation omitted).

## IV. The Court Should Dismiss the Florida Misleading Advertising Law Claims (Count II) and California False Advertising Claim (Count VII).

Plaintiffs do not adequately plead their Florida and California false advertising claims. To assert a claim for misleading advertising under § 817.41, Fla. Stat., a plaintiff "must set forth facts showing: (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation." *Zhang v. Royal Caribbean Cruises, Ltd.*, 2019 WL 8895223, at *5 (S.D. Fla. Nov. 15, 2019). To state a claim under Cal. Bus. & Prof. Code § 17500, a plaintiff must show that (1) the defendant issued an "'untrue or misleading' statement[] in connection with the sale of goods"; (2) the defendant "knows the advertising is false or misleading or should have known in the exercise of reasonable care"; and (3) the misrepresentation is "likely to mislead a reasonable consumer." *Balistreri v. McCormick & Co., Inc.*, 2023 WL 5988600, at *9, *13 (N.D. Cal. Sept. 13, 2023).

Plaintiffs fail to allege they saw or relied on any statements from Armanino or Prager Metis, demonstrate the audit reports were public statements as required under the statutes, or identify any false statement in any of Armanino's or Prager Metis's alleged representations.

### A. Plaintiffs Do Not Plausibly Allege Any Plaintiff Actually Relied on Any Statement by Armanino or Prager Metis.

Plaintiffs fail to plead actual reliance, an essential element of their Florida and California false advertising claims. *See Zhang*, 2019 WL 8895223, at *5; *Stewart v. Electrolux Home Prods.*, 2018 WL 1784273, at *4 (E.D. Cal. Apr. 13, 2018) ("[California's false advertising law] ha[s an] independent requirement[] for standing, which mandate[s] allegations of actual reliance.").[43] As explained in Section I *supra,* the Complaint is carefully worded to avoid any statement to the Court that any Plaintiff actually saw and relied upon Armanino's and Prager Metis's non-public audit reports, Armanino's tweets, or Prager Metis's firm site post. *See, e.g.*, Compl. ¶ 358 (stating that Armanino's and Prager Metis's "expressions of public support for

---

[43] The remaining pleading requirements under both statutes have slight differences, but they largely overlap.

FTX" were "posted … on the internet" and were "thus widely disseminated"—without alleging that any Plaintiff actually saw and relied on these "expressions"). Both false advertising counts should be dismissed due to Plaintiffs' lack of reliance.

> **B.      Armanino's and Prager Metis's Audit Reports Were Not Public Statements.**

The fact that Armanino's and Prager Metis's audit reports were not public is fatal to Plaintiffs' false advertising claims, as the very notion of advertising and promotion requires public dissemination. *See Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 334 (M.D. Pa. 2014), *aff'd*, 958 F.3d 168 (3d Cir. 2020) ("Numerous district courts have concluded that purely private communications and other messages that are not publicly disseminated are not 'advertising' or 'promotion'" for purposes of a false advertising claim under the Lanham Act); *Wakefern Food Corp. v. Marchese*, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021) (plaintiffs in a false advertising case must allege that defendant "disseminated to the relevant purchasing public" the false representation at issue). The plain language of both state statutes reinforces this rule. *See* Fla. Stat. § 817.41(1) (prohibiting disseminating misleading advertisements "before the ***general public***" of Florida) (emphasis added); Cal. Bus. & Prof. Code § 17500 (prohibiting false advertising "made or disseminated before the ***public***") (emphasis added). Thus, the non-public audit reports cannot serve as the basis of either false advertising claim.[44]

> **C.      Plaintiffs Cannot Identify Any False Statements in Any Representation by Armanino or Prager Metis.**

Under Florida's and California's false advertising statutes, plaintiffs are required to identify what precisely was "false" about the defendant's public "advertising." *See Zhang*, 2019 WL 8895223, at *5; *Azimpour v. Sears, Roebuck & Co.*, 2016 WL 7626188, at *6 (S.D. Cal. Oct. 17, 2016). Tellingly, Plaintiffs have not identified a single misstatement of fact by Armanino or Prager Metis. Indeed, Plaintiffs ***left blank*** the portion of the Florida false advertising count (Count II) which purports to identify the misrepresentations in Armanino's and Prager Metis's public statements:

---

[44] Armanino's and Prager Metis's statements, including their non-public audit reports, tweets, and website postings, stand in stark contrast to the actual *advertisements* from the Promoter and Digital Creator Defendants discussed at length in the Complaint, Compl. ¶¶ 247, 258-71, including a TV commercial that aired during the 2022 Super Bowl.

> 360.    At all times material hereto, Defendants' Promotional Material, which one or more of the Plaintiffs reviewed, contained misrepresentations of material facts, including:
>
> 361.    The Auditor Defendants knew or should have known of the falsity of the aforementioned misrepresentations.

Compl. ¶¶ 360-361. For the California false advertising claim (Count VII), Plaintiffs allege that the falsity at issue is the statement in the audit reports that the reports were prepared in accordance with GAAS and FTX's financial statements complied with GAAP. *See* Compl. ¶ 408. But as explained above, the audit reports were not public documents, and private communications cannot serve as the basis for false advertising liability. The Court must dismiss this claim accordingly.

## V.    The Court Should Dismiss the Florida Securities / Investor Claims (Counts III and IV) and the California Securities Claim (Count VIII).

Plaintiffs' claims under Florida and California securities laws fail because Plaintiffs fail to plead that Armanino and Prager Metis were agents of FTX US, FTX Trading, or the FTX Insiders and materially assisted in the sale of securities.[45]

### A.    Plaintiffs' Fail to Adequately Plead Their FSIPA Claims (Counts III and IV).

Plaintiffs bring two causes of action under the FSIPA: sale of unregistered securities in violation of section 517.07 (Count III) and investment fraud in violation of section 517.301 (Count IV). Section 517.07 makes it unlawful for a person to sell or offer to sell an unregistered security within the state of Florida. Fla. Stat. § 517.07. Under section 517.301, plaintiffs must plausibly allege that defendants made (1) a misrepresentation; (2) of a material fact; (3) on which plaintiffs relied. *Kashner Davidson Secs. Corp. v. Derosiers*, 689 So. 2d 1106, 1107 (Fla. 2d DCA 1997). Claims under section 517.301 must satisfy the pleading requirements of Rule 9(b). *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011). The scienter required for a section 517.301 claim is negligence. *Id.* (citing *Grippo v. Perazzo*, 357 F.3d 1218, 1223 (11th Cir. 2004)).

---

[45] Defendants do not concede that any asset bought or sold on any the FTX US or FTX Trading platforms, FTT, or YBAs constitute "securities" under Florida or California law.

While Plaintiffs do not allege Armanino and Prager Metis sold them any securities, Plaintiffs attempt to extend liability to Armanino and Prager Metis under these statutes by alleging they are "agents of FTX and/or the FTX Insider Defendants." Compl. ¶¶ 372, 378; *see* Fla. Stat. § 517.211 (imposing liability on an "agent [who] has personally participated or aided in making the sale" of securities in violation of sections 517.07 or 517.301). But Plaintiffs fail to allege that Armanino or Prager Metis were agents of FTX US, FTX Trading, or the FTX Insiders. First, as a matter of law, outside auditors are not the agents of their clients. *See Devco Premium Fin. Co. v. N. River Ins. Co.*, 450 So. 2d 1216, 1219 (Fla. 1st DCA 1984) (accountant's duty under GAAS "does not…convert the auditor into something of management's agent who must police the system created by management."). Second, Plaintiffs have not pled that Armanino or Prager Metis "personally participated or aided in making the sale" of any securities, as required by section 517.211. Third, courts have held that agent liability under FSIPA, as with Section 12 of the Securities Act of 1933, "only extends to persons who successfully solicit the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996); *Checkers Sec. Litig.*, 858 F. Supp. 1168, 1180 (M.D. Fla. 1994) (dismissing FSIPA claims against auditor where auditor "had no financial interest in the sale of securities"). Plaintiffs do not allege Armanino and Prager Metis had any financial interest whatsoever in the sale of securities. More importantly, just as courts do not extend Section 12 liability to "securities professionals such as accountants and lawyers whose involvement is only the performance of their professional services," Plaintiffs cannot seek recovery against Armanino and Prager Metis based only on their standard professional services. *Bailey*, 938 F. Supp. at 828. (quotation omitted).

## B. Plaintiffs Fail to Adequately Plead Their California Corporate Securities Law Claim (Count VIII).

Plaintiffs also bring a claim under the CSL (Count VIII) for the sale of unregistered securities in violation of section 25110,[46] investment fraud in violation of section 25401,[47] and

---

[46] To state a claim under § 25110, plaintiffs must plausibly allege that defendants sold securities that were subject to qualification but were not qualified as required by §§ 25111–13. *Staniforth v. Total Wealth Mgmt., Inc.*, 2023 WL 3805250, at *5 (S.D. Cal. June 2, 2023).

[47] To state a claim under § 25401, plaintiffs must plausibly allege that defendants sold a security in California by means of a material misrepresentation or omission. *OCG Energy, LLC v. Shen*,

sale of securities without a license under section 25210(b).[48] Plaintiffs seek to impose liability under Cal. Corp. Code § 25504 (extending liability for violations of section 25401 to an "agent who materially aids in the act or transaction constituting the violation," unless the agent "had no knowledge of or reasonable grounds to believe in" the facts giving rise to the violation) and § 25504.1 (extending liability for violations of sections 25110 and 25401 to any person who "materially assists" in the violation "with intent to deceive or defraud").

First, Plaintiffs have not pled that either Armanino or Prager Metis meets the definition of "agent" for the purposes of liability under sections 25504 or 25210(b). *See* Cal. Corp. Code § 25003(a) (defining "[a]gent" as "any individual, other than a broker-dealer or a partner of a licensed broker-dealer, who represents a broker-dealer or who for compensation represents an issuer in effecting or attempting to effect purchases or sales of securities in this state.").

Second, Plaintiffs do not allege that Armanino and Prager Metis played an active role in any securities offering, let alone materially aided or assisted in the sale of securities. *See AREI II Cases*, 157 Cal. Rptr. 3d 368, 377 (Cal. Ct. App. 2013) ("[M]erely playing an active role in a securities offering [is] insufficient for purposes of the material aid requirement of section 25504."). A defendant's alleged material assistance "must involve some aspect of the securities law violation," such as aiding in the preparation of securities-offering documents or communicating misrepresentations directly to investors. *Id.* at 377. Plaintiffs fail to plead that Armanino and Prager Metis materially assisted in unlawful sales of securities, aided in preparing any documents offered by the FTX entities to Plaintiffs, or communicated directly with Plaintiffs regarding the sale of securities. Rather, Plaintiffs merely allege that Armanino and Prager Metis provided audit reports to certain FTX entities and made "public expressions of support," none of which reference the purported securities at issue or were used in any alleged securities offerings to Plaintiffs. Further, Plaintiffs' investment fraud claims fail to satisfy Rule 9(b). *See supra* nn. 25, 29. Plaintiffs' Florida and California securities law claims should be dismissed with prejudice.

---

2023 WL 2628689, at *7 (C.D. Cal. Jan. 11, 2023). Plaintiffs' section 25401 allegations must satisfy Rule 9(b)'s pleading standards. *Id.* at *5.

[48] "No person shall, on behalf of a broker-dealer licensed pursuant to Section 25211, or on behalf of an issuer, effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless that broker-dealer and agent have complied with any rules as the commissioner may adopt for the qualification and employment of those agents." Cal. Corp. Code § 25210(b).

VI.    **The Court Should Dismiss Plaintiffs' FDUTPA Claim (Count V).**

The Court must dismiss the FDUTPA claim because Plaintiffs fail to allege two of the required elements for such claims: (1) a deceptive or unfair practice; and (2) causation. *Piescik*, 576 F. Supp. 3d at 1132.

A.    **Plaintiffs Fail to Allege a Deceptive or Unfair Trade Practice Under FDUTPA.**

Plaintiffs do not allege Armanino or Prager Metis engaged in a deceptive or unfair practice. "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quotations omitted). "The deception must be probable, not possible, and must be likely to cause injury to a reasonably relying consumer." *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (quotations omitted). In considering whether an act is deceptive or unfair, courts consider the Federal Trade Commission's ("FTC") definition of unfair trade practices. *See Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1098 (Fla. 3d DCA 2014) ("the 1980 Policy Statement's definition of unfair trade practice should be used when interpreting FDUTPA"); 15 U.S.C. § 45(n). Under the FTC's three-prong test for "unfairness," injury to the consumer must: (1) be substantial; (2) "not be outweighed by any countervailing benefits to consumers or competition that the practice produces"; and (3) "be an injury that consumers themselves could not reasonably have avoided." *Porsche Cars N. Am., Inc.*, 140 So. 3d at 1096.

Plaintiffs ignore this test and attempt to allege that Armanino and Prager Metis engaged in deceptive or unfair practices by "issuing materially false Audit Reports and engaging in the promotion of FTX." Compl. ¶ 388. But Plaintiffs cannot show the non-public audit reports were likely to mislead because Plaintiffs never saw the reports. Further, Plaintiffs do not point to any statements in Armanino's tweets or Prager Metis's website posting that communicate any fact whatsoever, let alone provide information to consumers about audit services or FTX US's or FTX Trading's non-public financial statements.

B.    **Plaintiffs Fail to Allege Causation Under FDUTPA.**

Plaintiffs do not allege they saw Armanino's or Prager Metis's non-public audit reports or Internet posts. Plaintiffs fail to plead that Armanino's or Prager Metis's conduct caused Plaintiffs' alleged injuries, so the Court should dismiss Plaintiffs' FDUTPA claim.

### C.      FDUTPA Does Not Apply to Securities Transactions.

Armanino and Prager Metis dispute that any asset bought or sold on FTX US or FTX Trading, YBAs, and FTT are securities. In any event, FDUTPA does not apply to securities transactions. *See Rogers v. Nacchio,* 2006 WL 7997562, at \*14-15 (S.D. Fla. June 6, 2006) ("The Court agrees with the above reasoning and concludes that FDUTPA does not apply to securities claims."), *aff'd*, 241 F. App'x 602 (11th Cir. 2007).

### VII.    The Court Should Dismiss the California Unfair Competition Law Claim and (Count VI) and Aiding and Abetting Violations of UCL Claim (Count XVI).

### A.      Plaintiffs' Claims Should Be Dismissed Because They Are Not Entitled to Equitable Relief Under the UCL.

The UCL offers two possible remedies—injunctive relief and restitution—both of which are equitable in nature. *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. Nov. 16, 2020). A plaintiff must allege that he "lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) ("The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy. On that point, *Sonner* holds that it does not."). Plaintiffs seek restitution under the UCL, Compl. ¶ 403, but do not allege they lack an adequate remedy at law. *See Anderson*, 500 F. Supp. 3d at 1009 ("Under *Sonner*, the plaintiffs are required, at a minimum, to plead that they lack an adequate remedy at law, which they have not done."). As such, their UCL claims should be dismissed. *Shay v. Apple Inc.*, 2021 WL 1733385, at \*5 (S.D. Cal. May 3, 2021).

### B.      Plaintiffs Have Not Plausibly Alleged Any Unlawful, Unfair, or Fraudulent Act by Armanino or Prager Metis.

California's UCL prohibits "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. And because Plaintiffs allege Armanino's and Prager Metis's violations of the UCL are based partly on a theory of fraud (*see, e.g.*, Compl. ¶¶ 394, 481), Plaintiffs must satisfy the heighted pleading standard of Rule 9(b). *Kearns*, 567 F.3d at 1125. Plaintiffs must "articulate the who, what, when, where, and how of the misconduct alleged." *Id.* at 1126. Plaintiffs have not alleged liability under any of the three statutory prongs—unlawful, unfair, or fraudulent business practices.

-31-

First, to state a claim under the "unlawful" prong of the UCL, Plaintiffs must allege that Armanino's and Prager Metis's business practice "violates any federal or California statute or regulation." *Shaeffer*, 258 Cal. Rptr. 3d at 277. In pleading their UCL claim, Plaintiffs suggest only that Armanino's and Prager Metis's audit reports fell short of professional standards and that they issued reports in a manner that "constitutes other actionable claims under common law, applicable regulations, or professional standards of conduct" without explaining what those laws or regulations might be. *See* Compl. ¶ 395. Further, GAAS are not statutes or regulations. They are professional standards promulgated by a private organization for the proper exercise of auditors' professional judgment and create no legal duties or civil liability.[49] Plaintiffs thus fail to allege an "unlawful" theory of liability under the UCL.

Second, to state a claim under the "unfair" prong of the UCL, courts consider whether the business practice at issue: (1) is "tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law"; (2) is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3) makes an impact on victims that outweighs "the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (quotations omitted). Plaintiffs do not allege that these "practices" are tied to any underlying constitutional, statutory or regulatory provision, or antitrust laws. They can neither plausibly allege that Armanino and Prager Metis committed "immoral" acts, nor that Armanino and Prager Metis were unjustified in preparing their respective audit reports. Further, Plaintiffs cannot show that the non-public audit reports were "substantially injurious to consumers" or "made an impact on consumers" at all, given that Plaintiff never saw the reports, which were not directed at, intended for, or generated for the benefit of Plaintiffs or other consumers.

Third, to state a claim under the "fraudulent" prong of the UCL, Plaintiffs must allege that "members of the public are likely to be deceived" by Armanino's and Prager Metis's business practices. *See Shaeffer, LLC*, 258 Cal. Rptr. 3d at 277 (quotations omitted). First, Plaintiffs cannot show that they were deceived or that the non-public audit reports were

---

[49] Other courts have reached a similar conclusion with regard to professional standards governing other professions. *See, e.g., Enron Corp.*, 235 F. Supp. 2d 549, 598-99 (S.D. Tex. 2002) ("[e]thical rules of conduct such as disciplinary rules do not create corresponding legal duties nor constitute standards for imposition of civil liability on lawyers").

deceptive because they never saw them. Second, Plaintiffs have made no allegation that three Armanino tweets and a posting on Prager Metis's website were statements of fact, much less deceptive. As such, Plaintiffs fail to plead that these actions by Armanino and Prager Metis were "likely to deceive" the public in any way, and thus fail to allege a "fraudulent" theory of liability under the UCL.

> **C.     Plaintiffs Fail to Allege Actual Reliance Under the UCL.**

To survive a motion to dismiss a UCL claim, plaintiffs must have plausibly alleged actual reliance on the business practice at issue. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1243 (N.D. Cal. 2017). As established in Section I.A *supra*, Plaintiffs fail to allege actual reliance by any Plaintiff on anything Armanino or Prager Metis said or did. This is an independent ground for dismissal of Plaintiffs' UCL claim.

> **D.     Plaintiffs Fail to Allege Aiding and Abetting Liability Under the UCL.**

The Court should also dismiss Count XVI, which attempts to impose aiding and abetting liability under the UCL on Armanino and Prager Metis. To survive a motion to dismiss on aiding and abetting UCL liability, Plaintiffs must allege that Armanino and Prager Metis gave "substantial assistance or encouragement" to another person to violate the UCL, and *actually knew* that the FTX Insiders were committing fraud. *See Decarlo*, 2020 WL 1332539, at *5. Plaintiffs have done neither. Plaintiffs set forth the conclusory and formulaic recitation that Armanino and Prager Metis "provided substantial assistance or encouragement to FTX and/or the FTX Insider Defendants" to engage in fraud. Compl. ¶ 481. Plaintiffs fail to plead any facts to establish how the non-public audit reports or a handful of Internet posts gave substantial assistance or encouragement to the FTX Insiders in orchestrating their alleged fraudulent scheme. And, as explained above, Plaintiffs fail to allege any facts to suggest that Armanino and Prager Metis had ***actual knowledge*** that the FTX Insiders were perpetrating a fraud. Plaintiffs do not allege what conduct in particular Armanino or Prager Metis aided and abetted, and under what theory of UCL liability. Armanino, Prager Metis, and the Court are left guessing, which does not satisfy Rule 8, let alone the heightened pleading standards under Rule 9(b) for a fraud-based UCL claim.

## VIII.  Non-Florida Plaintiffs Do Not Have Standing to Bring Florida Statutory Claims (Counts II-V); Non-California Plaintiffs Do Not Have Standing to Bring California Claims Against Prager Metis (Counts VI-VIII and XVI).

The Court should dismiss the non-Florida Plaintiffs' other Florida statutory claims against Armanino and Prager Metis. Plaintiffs' Florida statutory claims (Counts II-V) must be based on conduct that occurred in Florida.[50] Armanino's and Prager Metis's principal places of business are California and New York, respectively. Plaintiffs make no allegation that any of Armanino's or Prager Metis's acts that form the basis of the Complaint took place in Florida. The non-Florida Plaintiffs therefore lack standing to bring Florida statutory claims against either defendant.

In addition, the non-California Plaintiffs lack standing to bring their California statutory claims against Prager Metis because they make no allegation that any acts performed by Prager Metis took place in California.[51] Where none of the alleged misconduct took place in California, Plaintiffs do not have standing to bring claims under the UCL or FAL (Counts VI-VII, XVI).[52] Further, the non-California Plaintiffs do not have standing to bring their claims under California Corporate Securities Law against Prager Metis.[53]

---

[50] *See* Florida misleading advertising (Count II) - Fla. Stat. § 817.41(1) ("It shall be unlawful for any person to make or disseminate or cause to be made or disseminated [misleading advertisement] before the general public of the state[.]"); FSIPA (Counts III and IV) - *Goldstein v. Firer*, 2022 WL 17343638, at *5 (S.D. Fla. Nov. 16, 2022), *report and recommendation adopted*, 2022 WL 17344853 (S.D. Fla. Nov. 30, 2022) ("[I]n applying the state statute the Court should look at whether the sale occurred *entirely* outside the state of Florida. If the answer is yes, then the FSIPA cannot apply."); FDUTPA (Count V) - *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) (stating that purpose of FDUTPA is to prohibit unfair and deceptive practices which have transpired within the territorial boundaries of the state of Florida); *Hakim-Daccach v. Knauf Int'l GmbH*, 2017 WL 5634629, at *7 (S.D. Fla. Nov. 22, 2017) (dismissing the FDUTPA claim because plaintiff failed to allege that any of the defendants' acts occurred in Florida).

[51] For the purposes of this Motion, Armanino does not concede that non-California plaintiffs have standing to seek relief against it under Plaintiffs' California statutory claims.

[52] "With regard to the UCL, FAL, and CLRA, non-California residents' claims are not supported 'where none of the alleged misconduct or injuries occurred in California.'" *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (finding plaintiffs lacked standing to bring statutory claims against Texas defendant where only alleged activity within California was their own purchase of products advertised).

[53] *Overstock.com, Inc. v. Goldman Sachs & Co.*, 180 Cal. Rptr. 3d 269 (Cal. Ct. App. 2014), *as modified* (Nov. 25, 2014) (dismissing CSL claims based on brokerage firm's alleged participation in clients' naked short selling where seller of conversions conducted its trades from its headquarters outside California, the brokerage firms operated out of offices outside

IX.     **The Court Should Dismiss the Professional Negligence Claim (Count IX).**

Plaintiffs do not have standing to bring their professional negligence claim against Armanino or Prager Metis. To state a cause of action for professional negligence, a party must show it is owed "the duty of the professional to use such skill, prudence and diligence as other members of the profession commonly possess and exercise." *Giacometti v. Aulla, LLC*, 114 Cal. Rptr. 3d 724, 727 (Cal. Ct. App. 2010). As stated in Section I.B *supra*, the court in *Bily* explicitly limited an auditor's general negligence liability to the direct clients of the auditor. *Bily*, 834 P.2d at 767; *Colenzo*, 2010 WL 11512212, at *6 (dismissing with prejudice claim for professional negligence where plaintiff did not allege they were client of accountant). Plaintiffs have not alleged they were Armanino's or Prager Metis's clients, because they were not, or had any other relationship with either audit firm, because they had none. Compl. ¶¶ 423-27. Plaintiffs also make no showing of either a contractual relationship or special relationship with Armanino or Prager Metis—a pleading requirement for professional malpractice claims under Florida law. *See, e.g., Brennan v. Ruffner*, 640 So. 2d 143, 145-56 (Fla. 4th DCA 1994). As such, Armanino and Prager Metis had no professional duty to Plaintiffs, and Plaintiffs' professional negligence claims should be dismissed with prejudice.

X.      **The Court Should Dismiss the Common Law Fraud and Misrepresentation Claims (Counts X-XIII).**

Plaintiffs fail to adequately plead their common law fraud and misrepresentation claims. Plaintiffs' claims for fraudulent concealment (Count X), negligent misrepresentation (Count XI), intentional misrepresentation (Count XII), and fraud (Count XIII) require pleading essentially the same elements: (1) suppression or misrepresentation of a material fact, (2) defendants' knowledge of falsity, (3) defendants' intent to induce reliance, (4) plaintiffs' justifiable reliance, and (5) damage.[54] Plaintiffs fail to plead ***any of the elements*** of these claims with particularity as required under Rule 9(b). *See supra* nn. 31-34.

_____

California, and the conversion trades were consummated on regional exchanges outside California).

[54] *Avedisian*, 43 F. Supp. 3d at 1080 (In California, a claim for fraudulent concealment consists of five elements: (1) defendant concealed or suppressed a material fact, (2) defendant was under a duty to disclose the fact to the plaintiff, (3) defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.); *Shamsian v. Atl. Richfield Co.*, 132 Cal. Rptr. 2d 635, 647 (Cal. Ct. App. 2003) (The elements of a

First, as demonstrated in Section I.A *supra*, Plaintiffs have not adequately pled their claims because they fail to identify any false statement or misrepresentation by either Armanino or Prager Metis, identify any statement whatsoever from either Armanino or Prager Metis that Plaintiffs actually saw or relied on, or provide any basis to show either Armanino or Prager Metis had knowledge of any underlying fraud that would render their audit reports false.

Further, Plaintiffs must plead that Armanino and Prager Metis had a duty to Plaintiffs to support their claims for negligent misrepresentation and fraudulent concealment. As explained in Section I.B. *supra*, Plaintiffs failed to allege that they were "specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report," *Bily*, 834 P.2d at 767, or that Armanino and Prager Metis had some other duty to disclose facts to them. *See Immobiliare*, 424 F. Supp. 3d at 888–89.

## XI. The Court Should Dismiss the Aiding and Abetting Fraud Claim (Counts XV).

Plaintiffs' claim for aiding and abetting fraud (Count XV) requires showing (1) defendants knew that fraud was being or would be committed; (2) defendants gave substantial assistance or encouragement to the perpetrator of the fraud; and (3) defendants' conduct was a substantial factor in causing the plaintiffs' harm. *See Fiol v. Doellstedt*, 58 Cal. Rptr. 2d 308, 312 (Cal. Ct. App. 1996). "[C]ausation is an essential element" of an aiding and abetting claim. *Mosier v. Stonefield Josephson, Inc.*, 2013 WL 4859635, at *3 (C.D. Cal. July 30, 2013). "[T]he plaintiff must demonstrate that 'the aider and abettor provided assistance that was a substantial factor in causing the harm suffered.'" *Id.*

Again, Plaintiffs fail to plead these elements, let alone with the particularity required by Rule 9(b). *See supra* n. 36. First, Plaintiffs have not pled Armanino or Prager Metis had actual knowledge of an underlying fraud. Plaintiffs instead offer only the formulaic recitation that the

---

negligent misrepresentation claim are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance on the misrepresentation, and (5) resulting damage); *GemCap Lending, LLC*, 269 F. Supp. 3d at 1039, *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019) ("To establish intentional misrepresentation, the claimant must prove the following: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage.") (quotations omitted); *Yagman*, 2018 WL 2138461, at *11 (In California, a plaintiff alleging fraud must establish the following elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.") (quotations omitted).

"Auditor Defendants *knew or recklessly disregarded* that the representations by FTX and the FTX Insider…were deceitful and fraudulent when made." Compl. ¶ 475 (emphasis added). This is insufficient to show actual knowledge. *See Neilson*, 290 F. Supp. 2d at 1119 (holding plaintiffs must plead "actual knowledge" to show aider and abettor liability, noting "federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge."). Second, Plaintiffs insist that Armanino and Prager Metis substantially assisted in the underlying fraud by issuing their non-public audit reports. While "ordinary business transactions" for a customer can constitute substantial assistance, plaintiffs must show the defendants knew they were assisting in the underlying fraud. *McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *5 (N.D. Cal. Oct. 26, 2016). Again, "knowledge is the crucial element[.]" *Id.* (quotations omitted). But here, Plaintiffs merely allege the "Auditors Defendants provided knowing *or reckless* substantial assistance to FTX and the Individual Defendants in connection with the fraudulent conduct alleged herein." Compl. ¶ 476 (emphasis added). Third, Plaintiffs can hardly plead that Armanino's or Prager Metis's conduct was a substantial factor in causing their harm where they have not alleged they saw or relied upon Armanino's or Prager Metis's statements. Like Plaintiffs' other common law misrepresentation claims, Count XV should be dismissed.

## XII.   The Court Should Dismiss the Aiding and Abetting Fiduciary Duty Claim (Count XVII).

Plaintiffs' allegations are insufficient to state an aiding and abetting breach of fiduciary duty claim against Armanino and Prager Metis. To prove such a claim under Florida and California law, Plaintiffs must demonstrate "(1) a fiduciary duty on the part of the primary wrongdoer; 2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Hearn v. McKay*, 642 F. Supp. 2d 1330, 1340 (S.D. Fla. 2008) (quotations omitted); *Fiol*, 58 Cal. Rptr. 2d at 312.

Not only do Plaintiffs fail to meet the requirements of Rules 8 and 9(b), *see* Sections I-II *supra*, Plaintiffs also fail to plead (i) the basis for the FTX entities and the FTX Insiders owing them any fiduciary duty, or (ii) that Armanino and Prager Metis had actual knowledge of or (iii) substantially assisted or encouraged the wrongdoing. First, the FTX Trading Terms of Service and FTX US User Agreement both disclaimed any fiduciary relationship with their customers. Ex. D § 2.1.3 (FTX Trading Terms of Service), Ex. E ¶ 21 (FTX US User Agreement). Both Florida and California law recognize the validity of such disclaimers. *See Jan. 2021 Short*

*Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1193 (S.D. Fla. 2022). Even absent such disclaimers, self-directed brokerages generally do not owe fiduciary duties to customers who trade on exchanges under either Florida or California law. *See id.* at 1194. Plaintiffs are not owed the duty that they allege forms the basis for this claim.

Second, Plaintiffs do not plausibly allege that Armanino or Prager Metis actually knew about the alleged wrongdoing, instead pleading that Armanino and Prager Metis "recklessly disregarded" the alleged wrongdoing. But properly conducted audits may fail to detect collusive fraud by client management. *See Bily*, 834 P.2d at 762. The mere fact that Armanino and Prager Metis served as financial statement auditors is not sufficient. Further, both Florida and California law require that a defendant have *actual* knowledge of—not merely that a defendant recklessly disregarded knowledge of—the breach of fiduciary duty. *Paskenta Band of Nomlaki Indians v. Crosby*, 122 F. Supp. 3d 982, 989 (E.D. Cal. 2015); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244, 1247 (M.D. Fla. 2013).

Third, Plaintiffs fail to allege that Armanino or Prager Metis provided substantial assistance to or encouragement of the alleged wrongdoing, with the exception of the non-public audit reports and Internet posts that contain no mention of auditing work. None of these statements show the substantial assistance or encouragement required to support Plaintiffs' claim.[55]

## XIII.  The Court Should Dismiss the Aiding and Abetting Conversion Claim (Count XVIII).

Plaintiffs' allegations are insufficient to support an aiding and abetting conversion claim against Armanino and Prager Metis. To state a claim for aiding and abetting conversion under Florida and California law, a plaintiff must allege the elements of the underlying conversion. *Lawrence*, 455 F. App'x at 906; *Fiol*, 58 Cal. Rptr. 2d at 312; *see Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1012 (S.D. Fla. 1992) (providing the elements of conversion); *Regent All. Ltd. v. Rabizadeh*, 180 Cal. Rptr. 3d 610, 613 (Cal. Ct. App. 2014) (same). A plaintiff must also allege (1) "knowledge of the underlying violation by the alleged aider and abett[o]r" and (2) "the rendering of substantial assistance in committing the wrongdoing by the alleged aider and

---

[55] California law also requires Plaintiffs to allege that "defendant's conduct was a substantial factor in causing harm to plaintiff." *George v. eBay, Inc.*, 286 Cal. Rptr. 3d 492, 508 (Cal. Ct. App. 2021) (citation omitted). For the reasons Plaintiffs fail adequately to allege substantial assistance, Plaintiffs also fail to allege substantial factor.

abettor." *Lawrence*, 455 F. App'x at 906; *Neilson*, 290 F. Supp. 2d at, 1118.[56] Both Florida and California law require that a defendant have *actual* knowledge of—not merely that a defendant recklessly disregarded knowledge of—the underlying conversion. *Feng v. Walsh*, 2020 WL 5822420, at *7 (S.D. Fla. Sept. 14, 2020); *McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *5 (N.D. Cal. Oct. 26, 2016); *Wiand*, 938 F. Supp. 2d at 1247.

Plaintiffs do not allege sufficient facts to show Armanino or Prager Metis had actual knowledge of the alleged underlying conversion or their substantial assistance in committing the conversion. First, Plaintiffs plead that Defendants "knew of *or* recklessly disregarded knowledge of" the alleged wrongdoing. Compl. ¶ 496 (emphasis added). Reckless disregard does not satisfy the knowledge required to support this claim, and for the reasons set forth in Section I.C. *supra*, neither the Defendants' service as auditors nor the statements made by Mr. Ray in the bankruptcy satisfy the actual knowledge element.

Second, Plaintiffs allege that Defendants substantially assisted in committing the underlying conversion through the non-public issuance of the audit reports and certain Internet posts. These allegations fall short of "substantial assistance." For these same reasons, Plaintiffs fail to show that Defendants' conduct was a substantial factor in causing Plaintiffs' harm, as required under California law. The Court should therefore dismiss with prejudice Count XVIII.

## XIV. The Court Should Dismiss the Declaratory Judgment Claims (Counts XIX (Florida) and XX (California)).

Plaintiffs' allegations do not support claims for declaratory relief under California or Florida law. The purpose of a declaratory judgment is "to clarify the legal relations at issue and to settle controversies *prior* to a legal breach of duty or contract." *Eisenberg v. Standard Ins. Co.*, 2009 WL 1809994, at *3 (S.D. Fla. June 25, 2009); *see also* 28 U.S.C. § 2201(a); Cal. Civ. Proc. Code § 1060. Declaratory relief, like other forms of equitable relief, is available only in the absence of an adequate remedy at law. *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 503-04 (11th Cir. 2007); *Minn. Life Ins. Co. v. Philpot*, 2012 WL 4486311, at *11 (S.D. Cal. Sept. 27, 2012). "[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are

---

[56] California law requires proof of two additional elements: (1) plaintiff suffered damages as a result of the underlying conversion, *Regent All. Ltd.*, 180 Cal. Rptr. 3d at 612, and (2) defendant's conduct was a substantial factor in causing plaintiff harm, *Mosier*, 2013 WL 4859635, at *3.

already before the court." *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012). The Florida and California declaratory relief claims (Counts XIX and XX) should be dismissed because (i) the declaratory relief claims are duplicative of the other counts, requesting that the Court determine issues alleged in the previous counts, (ii) there is no actual controversy, and (iii) Plaintiffs have not shown that they lack an adequate remedy at law.

**XV.    Plaintiffs Lack Standing to Seek Injunctive Relief Against Armanino and Prager Metis.**

Plaintiffs cannot pursue claims for injunctive relief because they have not alleged any real and immediate threat of future injury. "[A] party has standing to seek injunctive relief *only* if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Valiente v. Publix Super Mkts., Inc.*, 2023 WL 3620538, at *6 (S.D. Fla. May 24, 2023) (emphasis added) (internal quotations omitted). The Complaint does not contain any allegations showing that Plaintiffs will suffer any future harm. Plaintiffs merely allege (if any injury) *past* injuries to demonstrate a threat of *future* injury, which is not adequate to establish standing for injunctive relief. *Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393-94 (11th Cir. 2015); *Wilson v. Secretary, Dep't Corrs.*, 54 F.4th 652, 668 (11th Cir. 2022) ("[W]here a plaintiff seeks injunctive relief, pointing only to past injuries and speculating that such harm will 'inevitabl[y]' occur again is insufficient to establish standing.") (alteration in original). Thus, the injunction claims should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Armanino and Prager Metis respectfully request that the Court dismiss the Complaint against Armanino and Prager Metis (Dkt. 158) with prejudice.

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Armanino and Prager Metis respectfully request oral argument on their Motion to Dismiss. This case involves numerous legal issues arising under statute and common law. Armanino and Prager Metis submit that oral argument will be helpful in further clarifying the factual background and arguments for dismissal. Armanino and Prager Metis estimate that thirty minutes per side is sufficient to present the issues.

Dated: September 21, 2023

By:

/s/ Ian M. Ross
Ian M. Ross
Florida Bar No. 091214
Email: iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Suite 900
Miami, FL 33131
Tel.: (305) 391-5100
Fax: (305) 391-5101


Bruce R. Braun
Email: bbraun@sidley.com
Joanna R. Travalini
Email: jtravalini@sidley.com
Tommy Hoyt
Email: thoyt@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel.: (312) 853-7050
Fax: (312) 853-7036


*Counsel for Defendant Prager Metis CPAs, LLC*

Respectfully submitted,


/s/ Samuel A. Danon
Samuel A. Danon
Florida Bar No. 892671
Email: sdanon@HuntonAK.com
Tom K. Schulte
Florida Bar No. 1025692
Email: tschulte@HuntonAK.com
Hunton Andrews Kurth LLP
333 S.E. 2nd Avenue, Suite 2400
Miami, FL 33131
Tel.: (305) 810-2500


Matthew P. Bosher
Email: mbosher@HuntonAK.com
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 955-1500


Thomas R. Waskom
Email: twaskom@HuntonAK.com
Michael J. Bisceglia
Email: mbisceglia@HuntonAK.com
Elizabeth K. Brightwell
Email: ebrightwell@HuntonAK.com
Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219
Tel: (804) 788-8200


*Attorneys for Defendant Armanino LLP*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 21, 2023, I filed a true and correct copy with the Clerk of Court via CM/ECF, which will send notice of the same to all counsel and parties of record.

*/s/ Samuel A. Danon*
Samuel A. Danon

*Attorney for Defendant Armanino LLP*