**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

THIS DOCUMENT RELATES TO:

Domestic Investor Defendants
_____/

**INVESTOR DEFENDANTS' MOTION TO DISMISS THE**
**ADMINISTRATIVE CLASS ACTION COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

LEGAL STANDARD ...............................................................................................................8

I.    Plaintiffs' Claims Fail Because They Are Based on the Implausible Theory that
      Investor Defendants Knew of FTX's Fraud (All Counts) .....................................................9

II.   Plaintiffs' Misrepresentation Claims Fail (Counts Six & Seven).....................................15

      A.    Plaintiffs Fail to Plead Actionable Misstatements .........................................16

      B.    Plaintiffs Fail to Plead Actionable Omissions ................................................19

      C.    Plaintiffs Fail to Plead that Investor Defendants Knew or Lacked
            Reasonable Ground to Believe Their Statements Were False .......................19

      D.    Plaintiffs Have Not Alleged Intent to Defraud or Induce Reliance .............20

      E.    Plaintiffs Fail to Plead Actual and Justifiable Reliance................................21

      F.    Plaintiffs Fail to Plead Resulting Damages ...................................................22

      G.    Plaintiffs' Fraudulent Inducement Claim Also Fails (Count Eight).............22

III.  Plaintiffs Fail to Adequately Plead that Investor Defendants Conspired with FTX
      or Aided Its Fraud ................................................................................................................23

      A.    The AC Does Not Support a Plausible Inference that Investor Defendants
            Aided and Abetted Fraud and Conversion (Counts Ten & Eleven) .............23

      B.    The AC Does Not Support a Plausible Inference that Investor Defendants
            Conspired to Act Unlawfully (Count Nine)...................................................25

IV.   Plaintiffs' Claims for Securities Violations Under California and Florida Law Fail ........26

      A.    Plaintiffs' Cal. Corp. Code § 25504.1 Claim Fails (Count Three) ...............26

      B.    Plaintiffs Fail to State a Claim for Violation of the FSIPA (Count Five)......28

V.    Plaintiffs' Other State Statutory Claims Also Fail..............................................................31

A. Plaintiffs Fail to Adequately Allege Violations of California's UCL and FAL (Counts One and Two) ............................................................31

B. Plaintiffs' FDUTPA Claim Also Fails (Count Four) .....................................35

VI. Plaintiffs Fail to State a Basis for Declaratory Relief (Counts Twelve & Thirteen) .........38

VII. Dismissal with Prejudice Is Appropriate ..........................................................40

CONCLUSION ..................................................................................................................40

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
925 F.3d 1205 (11th Cir. 2019) ...................................................................... 39

*Alvarez v. Royal Caribbean Cruises, Ltd.*,
905 F. Supp. 2d 1334 (S.D. Fla. 2012) ........................................................... 17

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) ...................................................................... 11

*Amlap ST, LLC v. CBRE, Inc.*,
2016 WL 235919 (Cal. Ct. App. Jan. 19, 2016) .............................................. 27

*Angell v. Allergan Sales, LLC*,
2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ...................................... 11, 15, 24

*Anschutz Corp. v. Merrill Lynch & Co.*,
785 F. Supp. 2d 799 (N.D. Cal. 2011) ............................................................. 9

*Apex Toxicology, LLC v. United HealthCare Servs., Inc.*,
2020 WL 13551299 (S.D. Fla. July 7, 2020) ................................................... 25

*Apple Inc. v. Corellium, LLC*,
2021 WL 1348433 (S.D. Fla. Feb. 25, 2021) .................................................. 39

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 8, 15

*Atl. Specialty Ins. Co. v. AmWINS Access Ins. Servs., LLC*,
2017 WL 7731865 (S.D. Fla. Sept. 13, 2017) (Moore, J.) ............................... 15

*Azure Coll., Inc. v. Bank of Am., N.A.*,
2022 WL 180290 (S.D. Fla. Jan. 19, 2022) .................................................... 40

*Bank of N.Y. Mellon v. Yerger*,
2010 Fla. Cir. LEXIS 12750 (Fla. Cir. Ct. 2010) ........................................ 19-20

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) .......................................................... 24

*Beaver v. Tarsadia Hotels*,
    29 F. Supp. 3d 1294 (S.D. Cal. 2014) ........................................................................ 33

*Behrman v. Allstate Ins. Co.*,
    388 F. Supp. 2d 1346 (S.D. Fla. 2005) ...................................................................... 19

*Benson v. JPMorgan Chase Bank, N.A.*,
    2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) ............................................................ 26

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
    241 F. Supp. 3d 1084 (C.D. Cal. 2017) ...................................................................... 22

*Bolin v. Story*,
    225 F.3d 1234 (11th Cir. 2000) .................................................................................. 39

*Bongino v. Daily Beast Co., LLC*,
    477 F. Supp. 3d 1310 (S.D. Fla. 2020) ...................................................................... 36

*Bowen v. Ziasun Techs., Inc.*,
    116 Cal. App. 4th 777 (4th District 2004) ................................................................. 31

*Brooks v. Gomez*,
    2013 WL 496339 (N.D. Cal. Feb. 7, 2013) .......................................................... 10, 11

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) .................................................................................. 18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................................................... 35

*Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*,
    789 F. Supp. 2d 1311 (S.D. Fla. 2011) ...................................................................... 39

*Chance World Trading E.C. v. Heritage Bank of Com.*,
    438 F. Supp. 2d 1081 (N.D. Cal. 2005) ...................................................................... 23

*Chevy Chase Bank, F.S.B. v. Carrington*,
    2010 WL 745771 (M.D. Fla. Mar. 1, 2010) ................................................................ 8

*Clement v. Lipson*,
    999 So. 2d 1072 (Fla. Dist. Ct. App. 2008) ............................................................... 30

*Coccaro v. Geico Gen. Ins. Co.*,
    648 F. App'x 876 (11th Cir. 2016) ............................................................................ 39

*Codeventures, LLC v. Vital Motion Inc.*,
 2021 WL 1131531 (S.D. Fla. Mar. 24, 2021)................................................................ 25

*Cork v. CC-Palo Alto, Inc.*,
 534 F. Supp. 3d 1156 (N.D. Cal. 2021) ....................................................................... 21

*Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
 2008 WL 926513 (S.D. Fla. Mar. 31, 2008)................................................................ 24

*Davidoff v. Farina*,
 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005)............................................................. 10

*Davis v. HSBC Bank Nev., N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ...................................................................................... 35

*Dillon v. Axxsys Int'l, Inc.*,
 185 F. App'x 823 (11th Cir. 2006) ............................................................................... 29

*Dillon v. Axxsys Int'l, Inc.*,
 385 F. Supp. 2d 1307 (M.D. Fla. 2005)........................................................................ 30

*Eveillard v. Nationstar Mortg. LLC*,
 2015 WL 127893 (S.D. Fla. Jan. 8, 2015) .................................................................... 38

*Farr v. Paramo*,
 2017 WL 3583036 (S.D. Cal. Aug. 18, 2017) .............................................................. 25

*Feingold v. Budner*,
 2008 WL 4610031 (S.D. Fla. Oct. 10, 2008)................................................................ 38

*Feng v. Walsh*,
 2020 WL 5822420 (S.D. Fla. Sept. 14, 2020) ........................................................... 8, 25

*Fineman v. Ferragamo USA, Inc.*,
 2023 WL 3778264 (S.D. Fla. May 12, 2023) ............................................................... 17

*Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*,
 526 F. Supp. 3d 1282 (S.D. Fla. 2021) ........................................................................ 37

*Gerard v. Wells Fargo Bank, N.A.*,
 2015 WL 12780486 (C.D. Cal. May 19, 2015) ............................................................ 22

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*,
 2014 WL 6966645 (C.D. Cal. Dec. 8, 2014) ................................................................ 20

*Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*,
  2015 WL 12862724 (S.D. Fla. Aug. 20, 2015)..................................................... 10

*Grills v. Philip Morris USA, Inc.*,
  645 F. Supp. 2d 1107 (M.D. Fla. 2009)........................................................ 9, 23

*Groom v. Bank of Am.*,
  2012 WL 50250 (M.D. Fla. Jan. 9, 2012)......................................................... 24

*Gulati v. Countrywide Home Loans, Inc.*,
  2006 WL 6301285, (M.D. Fla. July 10, 2006) ................................................ 22

*Guo v. Robl*,
  2023 WL 2683473 (C.D. Cal. Mar. 2, 2023) ..................................................... 9

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................... 31, 34

*Hammett v. Sherman*,
  2020 WL 1332591 (S.D. Cal. Mar. 23, 2020) ................................................... 11

*Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*,
  2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) .................................................... 10

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) .................................................. 17

*Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Mkts, LLC*,
  347 F. App'x 711 (2d Cir. 2009) ...................................................................... 22

*Hartel v. GEO Grp., Inc.*,
  2021 WL 4397841 (S.D. Fla. Sept. 23, 2021) .................................................. 17

*Hauser v. Steward Melbourne Hosp., Inc.*,
  2020 WL 917259 (M.D. Fla. Feb. 11, 2020) ............................................... 10, 39

*Honig v. Kornfeld*,
  339 F. Supp. 3d (S.D. Fla 2018) .......................................................... 15, 25, 26

*Hutchins v. Nationstar Mortg. LLC*,
  2017 WL 2021363 (N.D. Cal. May 12, 2017)................................................... 16

*In re Actimmune Mktg. Litig.*,
  2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ............................................... 33, 34

*In re Adobe Sys., Inc. Priv. Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ........................................................... 38

*In re Apple Computer, Inc. Sec. Litig.*,
   243 F. Supp. 2d 1012 (N.D. Cal. 2002) ......................................................... 17

*In re Autodesk, Inc. Sec. Litig.*,
   132 F. Supp. 2d 833 (N.D. Cal. 2000) ........................................................... 12

*In re Brican Am. LLC*,
   2015 WL 11661980 (S.D. Fla. Aug. 4, 2015) ................................................. 23

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
   2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ............................................ 31-32

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   761 F. Supp. 2d 504 (S.D. Tex. 2011) ........................................................... 13

*In re Facebook PPC Advert. Litig.*,
   2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) ............................................... 33

*In re Jiangbo Pharms., Inc., Sec. Litig.*,
   884 F. Supp. 2d 1243 (S.D. Fla. 2012) ......................................................... 12

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ............................................... 32

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ......................................................... 31

*In re Outlaw Lab'y, LLP*,
   463 F. Supp. 3d 1068 (S.D. Cal. 2020) ......................................................... 32

*In re SolarCity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................... 17

*In re Talis Biomedical Corp. Sec. Litig.*,
   2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) ............................................... 18

*In re ZZZZ Best Sec. Litig.*,
   1990 WL 132715 (C.D. Cal. Jul. 23, 1990) ................................................... 27

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
   224 So. 3d 316 (Fla. Dist. Ct. App. 2017) ................................................. 29, 30

*Junod v. Mortg. Elec. Registration Sys.*,
    584 F. App'x 465 (9th Cir. 2014) ................................................................. 10, 39

*Kahan Novoa v. Safra Nat'l Bank of N.Y.*,
    313 F. Supp. 2d 1347 (S.D. Fla. 2003) ...................................................... 30

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................. 9

*Kelly v. Palmer, Reifler, & Assocs., P.A.*,
    681 F. Supp. 2d 1356 (S.D. Fla. 2010) ...................................................... 36

*Kronk v. Landwin Grp., LLC*,
    2011 WL 13143096 (C.D. Cal. June 7, 2011) ........................................... 15

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) .............................................................................. 33

*L.S. ex rel. Hernandez v. Peterson*,
    982 F.3d 1323 (11th Cir. 2020) ................................................................ 40

*Lamm v. State St. Bank and Tr.*,
    749 F.3d 938 (11th Cir. 2014) .................................................................. 14

*Lawrence v. Bank of Am., N.A.*,
    2010 WL 3467501 (M.D. Fla. Aug. 30, 2010) ........................................... 23

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) ....................................................... 15, 23

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ..................................................................... 19

*Lombardo v. Johnson & Johnson Consumer Cos.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) ...................................................... 37

*Lum v. Merlin Ents. Grp. U.S. Holdings Inc.*,
    2023 WL 2583307 (S.D. Cal. Mar. 20, 2023) ............................................ 19

*Lynn Finkelstein & Co. v. Ball*,
    2007 WL 9701156 (S.D. Fla. May 15, 2007) ............................................. 12

*Madura v. Bank of Am., N.A.*,
    767 F. App'x 868 (11th Cir. 2019) ........................................................... 8

*Malowney v. Fed. Collection Deposit Grp.*,
193 F.3d 1342 (11th Cir. 1999) ........................................................ 39

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
225 F. Supp. 3d 1034 (N.D. Cal. 2016) ........................................ 10, 23

*McElrath v. ABN AMRO Mortg. Grp., Inc.*,
2012 WL 463893 (S.D. Fla. Feb. 13, 2012) ...................................... 10

*McFall v. Stacy & Witbeck Inc.*,
2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) .................................... 25

*McFarland v. Memorex Corp.*,
96 F.R.D. 357 (N.D. Cal. 1982) ...................................................... 28

*McGee v. JP Morgan Chase Bank, NA*,
520 F. App'x 829 (11th Cir. 2013) ............................................ 16, 20

*Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*,
783 F. Supp. 2d 1214 (S.D. Fla. 2011) ............................................ 40

*Meridian Tr. Co. v. Batista*,
2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ................................. 8, 13

*Millstein v. Holtz*,
2022 WL 3594915 (S.D. Fla. Aug. 23, 2022) .................................... 10

*Morchem Indus., Inc. v. Rockin Essentials LLC*,
2021 WL 5014105 (S.D. Fla. June 16, 2021) (Moore, J.) ..................... 21

*Myers v. Provident Life and Accident Ins. Co.*,
472 F. Supp. 3d 1149 (M.D. Fla. 2020) .......................................... 16

*Negrete v. Citibank, N.A.*,
187 F. Supp. 3d 454 (S.D.N.Y. 2016) .............................................. 21

*Nevis v. Wells Fargo Bank*,
2010 WL 11636091 (N.D. Cal. Jan. 3, 2010) .................................... 10

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ................................... 13

*Nuwave, Ltd. v. Argyle Equities, LLC*,
2007 WL 3130443 (M.D. Fla. Oct. 24, 2007) .................................... 15

*Okla. Firefighters Pension & Ret. Sys. v. Ixia,*
　　2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ............................................................ 20

*Omnipol, A.S. v. Multinational Def. Servs., LLC,*
　　32 F.4th 1298 (11th Cir. 2022) ........................................................................... 8, 11

*Otwell v. Ala. Power Co.,*
　　747 F.3d 1275 (11th Cir. 2014) ................................................................................ 39

*Oueiss v. Saud,*
　　2022 WL 1311114 (S.D. Fla. Mar. 9, 2022) (Moore, J.) ............................................ 25

*Papasan v. Allain,*
　　478 U.S. 265 (1986) ................................................................................................... 8

*Perlman v. Wells Fargo Bank, N.A.,*
　　559 F. App'x 988 (11th Cir. 2014) ............................................................................ 10

*Perret v. Wyndham Vacation Resorts, Inc.,*
　　846 F. Supp. 2d 1327 (S.D. Fla. 2012) ........................................................................ 9

*Piescik v. CVS Pharm., Inc.,*
　　576 F. Supp. 3d 1125 (S.D. Fla. 2021) .................................................................. 35, 36

*PNC Bank, Nat'l Ass'n v. Fresh Diet, Inc.,*
　　2018 WL 3412871 (S.D. Fla. Mar. 22, 2018) (Moore, J.) ........................................... 38

*Rattner v. 1809 Brickell LP,*
　　2022 WL 4770402 (S.D. Fla. Aug. 23, 2022) (Moore, J.) .............................. 8, 10, 11

*Robb v. Rahi Real Est. Holdings LLC,*
　　2011 WL 2149941 (S.D. Fla. May 23, 2011) ............................................................. 21

*Rode v. Allianz Life Ins. Co.,*
　　2018 WL 4999161 (Cal. Ct. App. Oct. 16, 2018) ....................................................... 27

*Rosa v. Hotwire Commc'ns, LTD,*
　　2023 WL 2917210 (S.D. Fla. Jan. 18, 2023) (Moore, J.) ............................................ 40

*Rushing v. Wells Fargo Bank, N.A.,*
　　752 F. Supp. 2d 1254 (M.D. Fla. 2010) ..................................................................... 29

*Salameh v. Tarsadia Hotels,*
　　2010 WL 2839013 (S.D. Cal. July 20, 2010) ............................................................. 28

x

*Sanchez v. Aviva Life & Annuity Co.*,
    2009 WL 10694223 (E.D. Cal. Nov. 18, 2009)................................................................. 26

*SBFO Operator No. 3, LLC v. Onex Corp.*,
    2023 WL 2631521 (E.D. Mo. Mar. 23, 2023) ................................................................. 15

*Schaffer Fam. Invs., LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (C.D. Cal. 2015) ........................................................................... 9

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
    600 F.3d 1334 (11th Cir. 2010) ....................................................................................... 9

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) ......................................................................... 32

*Shetty v. Sharma*,
    2020 WL 12442133 (S.D. Fla. Nov. 3, 2020)................................................................. 21

*Star Ace Asia, Ltd. v. Longyuan Forwarding, Inc.*,
    2019 WL 9047222 (C.D. Cal. Dec. 11, 2019) ................................................................. 9

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
    278 F. Supp. 3d 1307 (S.D. Fla. 2017) (Moore, J.) ....................................................... 35

*Stretch Lab Franchise, LLC v. Stretch Lab, LLC*,
    2019 WL 2279388 (C.D. Cal. Mar. 4, 2019) ............................................................. 9, 23

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)........................................................................................................ 32

*Tippens v. Round Island Plantation L.L.C.*,
    2009 WL 2365347 (S.D. Fla. July 31, 2009) (Moore, J.)........................................... 23, 26

*Tobinick v. Novella*,
    848 F.3d 935 (11th Cir. 2017) ....................................................................................... 36

*TransPetrol, Ltd. v. Radulovic*,
    764 So.2d 878 (Fla. Dist. Ct. App. 2000) ..................................................................... 19

*Tsavaris v. Pfizer, Inc.*,
    2016 WL 375008 (S.D. Fla. Feb. 1, 2016) (Moore, J.)................................................. 16

*Turner v. Apple, Inc.*,
    2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ................................................................. 21

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................................ 20

*Verigy US, Inc. v. Mayder*,
   2008 WL 4820755 (N.D. Cal. Nov. 4, 2008) ............................................... 25

*Wagner v. First Horizon Pharm. Corp.*,
   464 F.3d 1273 (11th Cir. 2006) ..................................................................... 8

*Wang v. Revere Cap. Mgmt., LLC*,
   2023 WL 2198570 (S.D. Fla. Feb. 15, 2023) ............................................... 11

*Warner v. Tinder Inc.*,
   105 F. Supp. 3d 1083 (C.D. Cal. 2015) ........................................................ 32

*Wiand v. Wells Fargo Bank, N.A.*,
   938 F. Supp. 2d 1238 (M.D. Fla. 2013) ........................................................ 26

*Williams v. Apple, Inc.*,
   2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ....................................... 31, 32

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) .......................................................... 33

*Williamson v. McAfee, Inc.*,
   2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ............................................. 35

*Wilson v. Volkswagen Grp. of Am., Inc.*,
   2018 WL 4623539 (S.D. Fla. Sept. 26, 2018) .............................................. 33

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ..................................................................... 40

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ..................................................................... 36

**<u>Rules and Statutes</u>**

Cal. Bus. & Prof. Code § 17200 ......................................................................... 31

Cal. Bus. & Prof. Code § 17500 .............................................................. 9, 31, 34

Cal. Corp. Code § 25008(a) ............................................................................... 28

Cal. Corp. Code §25504.1...................................................................................... 26, 27, 28, 33

Cal. False Advertising Law.................................................................................         31

Cal. Unfair Competition Law ............................................................................         31

Fed. Declaratory Judgment Act, 28 U.S.C. § 2201...........................................         38

Fed. R. Civ. P. 9(b) ..........................................................................................     *passim*

Fed. R. Civ. P. 12(b)(6).....................................................................................        8, 9

Fla. Stat. § 501.204(1).......................................................................................         36

Fla. Stat. § 501.203(8).......................................................................................       36, 37

Fla. Stat. § 517.07(1).........................................................................................         30

Fla. Stat. § 517.211 ...........................................................................................         29

Fla. Deceptive and Unfair Trade Practices Act .................................................         35

Fla. Securities and Investor Protection Act.......................................................       28-29

## INTRODUCTION

As a result of FTX's fraud and ultimate collapse, the nine investment firms named as defendants here ("Investor Defendants") lost hundreds of millions of dollars that they had separately invested in FTX.  Plaintiffs, who had no relationship with Investor Defendants, have brought nonsensical claims trying to hold Investor Defendants responsible for FTX's fraud of which they were also victims.  But, to do so, the law requires Plaintiffs to allege facts that they cannot—that Investor Defendants knew or should have known of FTX's fraud.  The notion that Investor Defendants knew of FTX's fraud as a result of due diligence or any supposed "relationship" with FTX, but still chose to invest hundreds of millions of dollars in FTX, is implausible on its face.  And any suggestion that Investor Defendants should have known is contradicted by Plaintiffs' own pleadings, which make clear that FTX actively concealed its fraud from many, including Investor Defendants.  These fundamental and incurable defects are fatal to every claim Plaintiffs assert.

Plaintiffs' Administrative Class Action Complaint (the "AC") also fails to adequately plead facts to support other essential elements of their claims, improperly relying on a shotgun pleading approach.  For example, although the AC contains a laundry list of hundreds of statements by certain Investor Defendants about FTX and its founder, Plaintiffs do not identify any specific statements they contend were false or allege that Plaintiffs even saw a single one of these statements, let alone justifiably relied on them to their detriment.  These pleading failures independently require dismissal of Plaintiffs' misrepresentation claims.  Nor have Plaintiffs adequately pled that Investor Defendants did anything to direct or substantially assist FTX's fraud or cause Plaintiffs' injuries, as required to sustain their aiding and abetting, conspiracy, and other statutory claims.  For these reasons and others discussed below, the AC should be dismissed with prejudice.

## STATEMENT OF FACTS[1]

### A. The Parties

Investor Defendants are nine unaffiliated investment firms based in the US that invest in private companies.  AC ¶¶ 32-40.  Independently of one another, each agreed to invest in FTX Trading LTD ("FTX Trading") and/or West Realm Shires Services Inc. d/b/a FTX US ("FTX US") (collectively, "FTX") and later lost the entire value of their investments when FTX collapsed.  *Id.* Plaintiffs do not allege that any Investor Defendants had controlling interests in FTX.

Plaintiffs are sixteen individuals who allegedly "purchased or held legal title to and/or beneficial interest in . . . fiat or cryptocurrency deposited or Invested through an FTX Platform." AC ¶¶ 16-31.  Plaintiffs do not (1) allege any direct transactions with Investor Defendants, (2) specify when or through which FTX entity's platform they "deposited or invested" assets, or (3) allege having opened a yield-bearing account ("YBA") with FTX or bought FTT tokens.[2]

### B. Samuel Bankman-Fried Founds Alameda and FTX and Touts Their Reliability

Plaintiffs' claims derive from the alleged fraud committed by FTX and Samuel Bankman-Fried ("SBF"), which came to a head in November 2022 when FTX filed for bankruptcy and SBF resigned as CEO.  AC ¶ 138.  As a result of FTX's fraud and collapse, FTX's customers and investors, including Investor Defendants, suffered extensive financial losses, *see, e.g.*, AC ¶¶ 382, 389, 563, and SBF was indicted by the Department of Justice and sued in civil enforcement actions by the Securities and Exchange Commission ("SEC") and Commodity Futures Trading Commission ("CFTC"), *see* AC ¶¶ 65, 142-43 (quoting Ex. 1, Complaint, *SEC v. Bankman-Fried*,

---

[1]     The factual allegations in the AC are taken as true solely for the purposes of this motion.

[2]     FTT is a cryptocurrency token issued and backed by FTX that FTX used "to fund the development, marketing, business operations, and growth of FTX."  *See* AC ¶ 197 (quoting Complaint, *SEC v. Ellison & Wang*, No. 22-cv-10794 (S.D.N.Y. Dec. 21, 2022)).

No. 22 cv-10501, ECF No. 1 ¶¶ 1, 32 (S.D.N.Y. Dec. 13, 2022) ("SEC Compl.")).[3]

SBF founded the digital asset trading firm Alameda Research, LLC ("Alameda") in 2017. AC ¶ 64.  Two years later, he founded FTX Trading, a Bahamas-based company that operated an international digital asset trading platform.  AC ¶¶ 50, 127.  And in 2020, SBF launched FTX US, FTX's US-based digital asset exchange.  AC ¶ 50.  Although integral to the conduct alleged in the AC, neither Alameda nor either FTX entity is named as a defendant in any case in this MDL.

FTX accepted deposits of cryptocurrency or fiat currency (*i.e.*, cash and cash equivalents) and allowed customers to use their accounts to trade digital assets, store balances, and withdraw their assets.  *E.g.*, AC ¶¶ 91-93.  FTX also offered YBAs that guaranteed a set interest rate on digital assets.  AC ¶¶ 50-51, 212.  Although the AC often conflates the two, FTX Trading and FTX US operated separate trading platforms, served distinct customer bases, and offered different products under different terms of service.  *Compare* AC ¶ 53, *with id.* ¶ 96.  Only FTX Trading's platform offered FTT tokens, which were not available to US users.  *See* Ex. 2, FTX Trading Terms of Service, at 28 (May 13, 2022) (FTT "not offered in the United States or to U.S. persons") (cited at AC ¶¶ 53, 55, 96-97, 103).

From its founding to its collapse, FTX portrayed itself as trustworthy and doggedly focused "not only on profits, but on investor and client protection."  AC ¶ 47.  For example, SBF testified before the US Senate that FTX adopted "principles for ensuring investor protections" including "avoiding or managing conflicts of interest," and declared that "FTX segregate[s] customer assets from its own assets across our platforms."  *Id.*  (quoting Ex. 3, Superseding Indictment, *United States v. Bankman-Fried*, No. S3 22 Cr. 673 (LAK), ECF No. 115 ¶ 2 (S.D.N.Y. Mar. 28, 2023)

---

[3]      "Ex." refers to exhibits attached to the concurrently filed Declaration of Paul C. Huck in Support of Investor Defendants' Motion to Dismiss.

("Superseding Indictment")).  FTX also promised customers that their assets belonged "solely to [them] and would not be transferred to FTX," AC ¶ 14; that "their assets were safe and could be withdrawn at any time," AC ¶ 54; and that FTX protected against "the risk[s] that any customer would engage in self-dealing" or "become overleveraged or undercollateralized," AC ¶¶ 55-56.  SBF and other FTX principals also represented to investors and customers that FTX and Alameda were "wholly separate entit[ies] . . . at arm's length," and that there was a "Chinese wall . . . to ensure that [Alameda wouldn't get] any sort of special treatment from FTX."  AC ¶ 109.

### C. Investor Defendants Invest in FTX

FTX was "extremely successful" following its launch in May 2019, AC ¶ 126, and, beginning in 2021, Plaintiffs allege that Investor Defendants conducted due diligence and ultimately invested more than $800 million in FTX in a series of separate transactions.  AC ¶¶ 13, 252, 317, 324, 327, 352, 364, 376, 380, 403-04, 439, 441, 459, 461, 471, 476, 494, 497, 517-22.

Plaintiffs allege that unspecified Investor Defendants generally provided business support to FTX, AC ¶ 624, and that representatives for Investor Defendants, except Altimeter, SkyBridge, and Tiger Global, also sat on FTX's Advisory Board, AC ¶ 298.  They allege that Investor Defendants, except for Altimeter, K5 Global, and Tiger Global, occasionally spoke publicly about the exchange and SBF, expressing general enthusiasm and/or subjective optimism about SBF or FTX, largely in connection with their investments.  *See* AC ¶¶ 295, 311-516.  Plaintiffs also allege that FTX affiliates made passive investments in certain Investor Defendants' funds (except Thoma Bravo, Ribbit, and Tiger Global).  Plaintiffs allege that in early 2022, Sequoia, Thoma Bravo, Paradigm, SkyBridge, Multicoin, and Ribbit Capital wrote letters urging the CFTC to approve FTX's application for authorization to clear derivatives on the FTX US platform.  AC ¶¶ 339-42, 367, 384-87, 407-08, 446-48, 480-83.  Plaintiffs do not allege whether FTX's application was approved.  Plaintiffs allege no facts about Investor Defendants directing or participating in the

fraud underlying this suit.

**D. FTX's Alleged Fraud and Concealment of Its Fraud**

Plaintiffs contend that, at the same time FTX was marketing itself to customers and investors as "trustworthy," AC ¶ 47, FTX was engaged in a complex and far-reaching fraud that persuaded Investor Defendants to invest. However, documents incorporated by reference into the AC, including government indictments and complaints, allege that FTX, at SBF's direction, deceived customers and investors, including Investor Defendants, about many aspects of FTX's operation.

For example, the SEC alleges that SBF "engaged in a scheme *to defraud equity investors* in [FTX Trading] . . . at the same time that he was also defrauding the platform's customers." Ex. 1, SEC Compl. ¶ 1[4]; *see* AC ¶¶ 142-43 (citing SEC Compl.). Similarly, the federal indictment of SBF alleges that "[f]rom at least in or about 2019, *up to and including in or about November 2022*, . . . SBF . . . victimized FTX customers, *investors*, financial institutions, lenders, and the Federal Election Commission" through a "pattern of fraudulent schemes." Ex. 3, Superseding Indictment ¶ 1; *see* AC ¶ 65 (citing Superseding Indictment). It further alleges that SBF "deceived [FTX's] investors about the exchange's relationship with Alameda, and about the safety of the exchange more generally, through the use of audited financial statements provided to investors" after SBF "mislead auditors and avoided providing information" and that FTX used those false and inaccurate audited financials "to falsely reassure customers and investors that FTX had proper risk management controls and systems for storing customer assets." Ex. 3, Superseding Indictment ¶ 27. Indeed, the Government, in a recent filing to this court, reiterated that "the investors[] were victims of the fraudulent scheme, rather than being liable for it[.]" The Govt's App. to Intervene

---

[4]     All emphases are added unless otherwise noted.

and Mot. to Stay at 3, ECF No. 247 (Sept. 16, 2023).

Plaintiffs, like the Government, allege that as part of its fraud, FTX did not in fact segregate customer funds, but comingled them in "several 'omnibus accounts held by FTX.'"  AC ¶ 106. FTX then allegedly routed billions of dollars of customer funds from these accounts "to [FTX's] insiders, and their families, friends, and other acquaintances" through personal loans, bonuses, real estate purchases, and charitable and political contributions.  AC ¶ 107.  Plaintiffs further allege SBF granted Alameda secret trading privileges that gave it "a limitless ability to trade and withdraw assets" and incur a negative balance on the FTX platforms.  AC ¶¶ 111, 594.

As Plaintiffs acknowledge, FTX went to extremes to conceal this activity from customers and investors.  AC ¶¶ 119-20, 122, 124.  Former Alameda CEO Caroline Ellison admitted that FTX hid from "FTX's equity investors that Alameda could borrow a potentially unlimited amount from FTX, thereby putting customer assets at risk."  AC ¶ 119.  Similarly, Gary Wang, co-founder of FTX, admitted, "I executed those changes, which I knew would give Alameda Research special privileges on the FTX platform . . . knowing that others were representing to investors and customers that Alameda had no such special privileges and people were likely investing in and using FTX based in part on those misrepresentations."  AC ¶ 122.  Plaintiffs allege that FTX falsified financial statements and other documents to conceal the fraud from Investor Defendants and others, AC ¶ 119, and even went so far as to pay "millions of dollars in hush money to keep whistleblowers from exposing the fraud, money laundering, and price manipulation," AC ¶ 124.

**E.  FTX Collapses and Investor Defendants Lose Hundreds of Millions of Dollars**

SBF and FTX's fraud was ultimately revealed in November 2022, with an article reporting "for the first time" that Alameda's balance sheet "was propped up by FTX-manipulated FTT" and "FTX had lent billions" to Alameda.  AC ¶ 133.  Although SBF announced that the crypto exchange Binance would buy FTX, Binance reneged within twenty-four hours, citing "way too many issues"

hindering the deal.  AC ¶ 136.  Plaintiffs allege that this "triggered panic selling of FTT and a run on FTX."  *Id.*  A few days later, FTX filed for Chapter 11 bankruptcy protection and SBF resigned as CEO.  AC ¶ 138.  As a result of FTX's collapse, Investor Defendants lost hundreds of millions of dollars.  *E.g.*, AC ¶¶ 382, 389 ("Paradigm's equity investment in FTX [of at least $278 million] has now been written down to $0."), ¶ 563 (Sequoia's investment also written down), ¶ 579 (Skybridge "got kicked in the teeth" by FTX).

### F.  Unable to Recover From FTX, Plaintiffs Bring Claims Against Other Victims

With FTX now in a complex bankruptcy proceeding where there is "no guarantee" of "any recovery," and with SBF in jail awaiting trial, *see* AC ¶ 12, Plaintiffs have filed lawsuits against dozens of non-bankrupt individuals and businesses in an effort to supplement whatever recoveries they might ultimately achieve in the FTX bankruptcy.  This includes claims against other victims of FTX's fraud, like Investor Defendants.  Plaintiffs' many lawsuits were consolidated in this MDL on June 5, 2023.  *See* ECF No. 1.  On August 8, 2023, Plaintiffs filed the AC, which asserts thirteen state and common law causes of action against Investor Defendants.[5]  Generally, Plaintiffs' claims are based on allegations that (1) Investor Defendants invested millions of dollars into FTX (which they lost when FTX collapsed), (2) some Investor Defendants made certain statements that painted FTX and/or SBF in a generally positive light, despite Plaintiffs not alleging that they saw—or were even aware of—a single one of these statements, and (3) that Investor Defendants acted with knowledge of FTX's fraud.

---

[5]     Plaintiffs assert only civil conspiracy and aiding and abetting claims against K5 Global. As explained in its separate motion to dismiss, although the means by which K5 Global agreed to become an FTX investor were different from the other Investor Defendants, K5 Global is also a victim of FTX and SBF's fraud and joins in full the Investor Defendants' arguments in that regard.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims sounding in fraud, like all of Plaintiffs' claims here, must be pled with particularity under Federal Rule of Civil Procedure 9(b) by "identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) (Rule 9(b) applies to non-fraud securities claims alleged as part of fraudulent conduct); *Feng v. Walsh*, 2020 WL 5822420, at *15 (S.D. Fla. Sept. 14, 2020) (Rule 9(b) applies to aiding/abetting conversion, fraudulent inducement, fraud, conspiracy, and FDUTPA claims). The Court need not credit a "legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory allegations based solely "upon information and belief," *Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *6 (S.D. Fla. Sept. 26, 2018).

A complaint cannot take a shotgun pleading approach that fails to "give defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Rattner v. 1809 Brickell LP*, 2022 WL 4770402, at *3 (S.D. Fla. Aug. 23, 2022) (Moore, J.). It may not "lump[] several Defendants together," failing to "explain how each Defendant is responsible," *id.* at *4, or recite "legal citations and arguments . . . [that] have no place in a complaint," *Chevy Chase Bank, F.S.B. v. Carrington*, 2010 WL 745771, at *4 (M.D. Fla. Mar. 1, 2010).

Because the AC relies extensively on the SEC Complaint and Superseding Indictment, the Court may consider these and any other documents incorporated by reference in full, not merely the portions Plaintiffs selectively quote. *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) ("A district court may also consider documents referenced in the complaint, even if they

are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity."); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010) (approving of district court's reliance on the full document incorporated by reference in complaint, not just those portions quoted in the complaint).

## ARGUMENT[6]

### I.    Plaintiffs' Claims Fail Because They Are Based on the Implausible Theory that Investor Defendants Knew of FTX's Fraud (All Counts)

At the outset, every claim in the AC fails because Plaintiffs cannot plead that Investor Defendants knew, or even should have known, of FTX's fraud.[7]  Plaintiffs have alleged no facts to

---

[6]     Plaintiffs do not specify which state's law they contend governs their state common law claims.  Because Plaintiffs propose classes with no geographical limitation, the laws of every state and other countries are potentially implicated.  Without waiving any arguments or defenses, for purposes of this motion, Plaintiffs' claims are analyzed under California and Florida law.

Additionally, while this motion is limited to case-dispositive Rule 12(b)(6) arguments, Investor Defendants reserve all rights to bring personal jurisdiction and other challenges to the AC in the future, as reflected in the Court's September 8, 2023 Order.  *See* ECF No. 239 at 2-3.

[7]     Claims alleging that Investor Defendants committed fraud require allegations that they knew their statements were false when made.  **Count 1**: *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (UCL requires allegations of "knowledge of falsity (or 'scienter')"); **Count 2**: Cal. Bus. & Prof. Code § 17500 (FAL requires statement "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"); **Count 4:** *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (fraud-based FDUTPA claim must meet fraud pleading standard); **Count 6:** *Anschutz Corp. v. Merrill Lynch & Co.*, 785 F. Supp. 2d 799, 822 (N.D. Cal. 2011) (negligent misrepresentation claim requires allegations that Defendants lacked reasonable ground for believing challenged statements to be true); **Counts 7-8:** *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122-23 (M.D. Fla. 2009) (claims of intentional fraud and fraudulent inducement require knowledge of falsity); *Star Ace Asia, Ltd. v. Longyuan Forwarding, Inc.*, 2019 WL 9047222, at *7-8 (C.D. Cal. Dec. 11, 2019) (intentional fraud requires knowledge of falsity); *Stretch Lab Franchise, LLC v. Stretch Lab, LLC*, 2019 WL 2279388, at *1 (C.D. Cal. Mar. 4, 2019) (fraudulent inducement requires knowledge of falsity).

Claims for supposed participation in securities fraud or sale of unregistered securities similarly require allegations that Defendants knew of the underlying violations.  **Count 3:** *See Guo v. Robl*, 2023 WL 2683473, at *7 (C.D. Cal. Mar. 2, 2023) (Cal. Corp. Code § 25504.1 requires allegation of "actual knowledge of the predicate" fraud); *Schaffer Fam. Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1045-46 (C.D. Cal. 2015) (Cal. Corp. Code § 25504.1 requires allegation of
*(cont'd)*

support such an inference, and any such inference is implausible on its face because no reasonable investor would have agreed to invest in FTX had it known of the fraud. *See Hampshire Equity Partners II, L.P. v. Teradyne, Inc*., 2005 WL 736217, at *3 (S.D.N.Y. Mar. 30, 2005) (allegations of irrational motive cannot support a fraud claim); *Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (granting motion to dismiss where "it would have made no economic sense for defendants to invest . . . in a venture that they knew would fail"). Additionally, the AC's conclusory and improper group pleading allegations that Investor Defendants should have known about FTX's fraud, AC ¶¶ 303-06, are plainly insufficient, particularly in light of Plaintiffs' acknowledgment that FTX and SBF concealed their activities, *see, e.g.*, AC ¶¶ 106-10, 124; *see Rattner*, 2022 WL 477040, at *3 (dismissing shotgun pleading for "lump[ing] several Defendants together" and not "explain[ing] how each Defendant is responsible").[8] Setting aside the raft of

---

actual knowledge that the instruments at issue were unregistered securities); **Count 5:** *Millstein v. Holtz*, 2022 WL 3594915, at *5 (S.D. Fla. Aug. 23, 2022) (FSIPA claim requires pleading fraud, including knowledge).

Claims that Defendants aided and abetted or conspired in FTX's misconduct require allegations that Defendants knew of the fraud they supposedly aided and abetted or conspired to commit. **Count 9:** *McElrath v. ABN AMRO Mortg. Grp., Inc.*, 2012 WL 463893, at *6 (S.D. Fla. Feb. 13, 2012) (civil conspiracy claim requires allegations that allege that Defendants "[knew] of the scheme"); *Brooks v. Gomez*, 2013 WL 496339, *8 (N.D. Cal. Feb. 7, 2013) ("Conspiring defendants must have actual knowledge that a tort is planned."); **Count 10:** *Gilbert & Caddy, P.A. v. JP Morgan Chase Bank, N.A.*, 2015 WL 12862724, at *3-4 (S.D. Fla. Aug. 20, 2015) (aiding and abetting fraud claim requires allegation that "the defendant had knowledge of the fraud"); *Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016) (same); *Nevis v. Wells Fargo Bank*, 2010 WL 11636091, *5 (N.D. Cal. Jan. 3, 2010) ("[O]nly actual knowledge [of alleged the wrongdoing] will support a claim for aiding and abetting fraud."); **Count 11:** *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993-94 (11th Cir. 2014) (aiding and abetting conversion requires actual knowledge).

The declaratory relief claims require that the underlying violations be adequately alleged. **Counts 12-13:** *Junod v. Mortg. Elec. Registration Sys.*, 584 F. App'x 465, 468 (9th Cir. 2014); *Hauser v. Steward Melbourne Hosp., Inc.*, 2020 WL 917259, at *6 (M.D. Fla. Feb. 11, 2020).

[8]     For example, though Plaintiffs assert each claim against Tiger Global and Altimeter, in the space of 769 paragraphs, the AC only substantively mentions Tiger Global in 12 paragraphs, AC

*(cont'd)*

conclusory statements in the AC, *see, e.g.*, AC ¶¶ 15, 310, 533, 536, 660,[9] Plaintiffs identify only a handful of alleged facts, none of which is sufficient to support an inference that Investor Defendants knew or should have known of FTX's fraud.

*First*, Plaintiffs contend that the fact that Investor Defendants did pre-investment "due diligence" supports an inference that they knew of FTX's wrongdoing. *See, e.g.*, AC ¶¶ 533, 536, 741. But Plaintiffs do not cite a single document, conversation, or other source of information from which they claim anyone at Investor Defendants learned about FTX's fraud, failing Rule 9(b)'s requirement to identify "the who, what, when, where, and how of the fraud alleged." *Omnipol*, 32 F.4th at 1307. Plaintiffs' generic references to due diligence are not enough—courts routinely recognize that merely alleging that due diligence was conducted is "far too tenuous to give rise to a strong inference" of actual knowledge. *Wang v. Revere Cap. Mgmt., LLC*, 2023 WL 2198570, at *5 (S.D. Fla. Feb. 15, 2023) (rejecting similar allegations); *see also Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007) ("extensive[] evaluat[ion]" of policyholder health for a resold life insurance policy was insufficient to establish that policy buyer conspired to commit fraud). This is particularly true here because it is implausible that Investor Defendants would have risked hundreds of millions of dollars and significant reputational and

---

¶¶ 37, 293, 455-64, and Altimeter in 16 paragraphs, *id.* ¶¶ 39, 489-501, 613, 615, many of which allege only background information about these firms unrelated to FTX or their investments. Indeed, the only allegations concerning Tiger Global are that Tiger Global invested $38 million and performed unspecified diligence on FTX prior to investing. Otherwise, the AC merely lumps them in indiscriminately with other Investor Defendants and makes no effort to state allegations against them specifically, as it is required to do. *Rattner*, 2022 WL 477040, at *3.

[9]    *See Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *16-17 (M.D. Fla. Aug. 22, 2019) ("*should have* and *could have* are insufficient" to plead aiding and abetting); *Hammett v. Sherman*, 2020 WL 1332591, at *9 (S.D. Cal. Mar. 23, 2020) (rejecting "'knew or should have known' allegations" as "insufficient to plead actual knowledge"); *Brooks*, 2013 WL 496339, at *7 ("knew or should have known" allegation was "'devoid of further factual enhancement,' and, without more, is insufficient to withstand a motion to dismiss").

legal harm by investing in FTX if they had learned of FTX's fraud during due diligence.  *See In re Jiangbo Pharms., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1268 (S.D. Fla. 2012) (dismissing fraud claims because allegations were insufficient "when compared with what the [defendant] auditor stands to lose by participating in fraud—its reputation and ability to secure further work").

*Second*, Plaintiffs assert that Sequoia, Thoma Bravo, Paradigm, Multicoin, Ribbit, and K5 Global (though not Altimeter, SkyBridge, or Tiger Global) knew of FTX's fraud because they sat on its Advisory Board.  *See* AC ¶¶ 298, 566.  Yet again, Plaintiffs fail to plead any details to support this theory.   At most, Plaintiffs allege that the Advisory Board held "virtual meetings with PowerPoint presentations" and "discussed issues including the CFTC's potential request to increase FTX's default insurance fund in connection with its application to clear derivatives in the U.S., FTX's correspondence with the SEC, and various other executive-level board issues[.]"  *Id.* ¶ 298.  But Plaintiffs do not allege what information the relevant Investor Defendants supposedly learned from these unspecified "meetings" and "presentations," let alone explain how this information would have revealed the fraudulent scheme, which FTX insiders designed and carefully concealed.   Courts routinely reject allegations of knowledge based solely on a defendant's position within a company—a principle that applies with even greater force here, as no Investor Defendant is alleged to have had a position within FTX itself.  *See In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) ("[P]laintiffs must do more than allege that these key officers had the requisite knowledge by virtue of their 'hands on' positions."); *Lynn Finkelstein & Co., Inc. v. Ball*, 2007 WL 9701156, at *15 (S.D. Fla. May 15, 2007) ("A strong inference of scienter is not raised simply by access to insider information by senior management.").

*Third*, Plaintiffs suggest that Investor Defendants' mere investment with FTX necessarily means they knew of FTX's fraud.  *See* AC ¶ 533.  But Plaintiffs do not offer any well-pled facts to

support the conclusion that, simply because Investor Defendants agreed to invest in FTX, they must have known about the fraud.[10]   The law is clear that conclusory allegations that an investor must have actual knowledge of fraud perpetrated by the business in which it invests are insufficient.  *Meridian Tr.*, 2018 WL 4693533, at *9 (dismissing claims alleging bank defendants should have known of fraudulent transfers because of close relationship with their clients and atypical transactions as insufficient to show knowledge); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 557 (S.D. Tex. 2011) ("Plaintiffs' conclusory statements and references to . . . passive investment [did not] show actual knowledge of any fraud.").

*Fourth*, Plaintiffs allege that several Investor Defendants knew of FTX's fraud because certain FTX-related entities (not FTX or Alameda) invested in funds administered by those parties.  *See* AC ¶¶ 613-23.[11]   But again, Plaintiffs fail to meet their burden because they offer no details of what information was provided by the FTX-related entities, much less how that information alerted the relevant Investor Defendants to the fraud or why FTX would reveal a closely guarded fraudulent scheme to its victims.  *See Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *3 (N.D. Cal. Nov. 20, 2020) (allegation that defendant should have known of wrongdoing through its

---

[10]     Plaintiffs' related theory that Investor Defendants concealed FTX's fraud to buy time until they could exit their investments, AC ¶¶ 624-27, presupposes that FTX insiders revealed their fraud to Investor Defendants at some point after they had invested.  But there are no facts pled to support this theory and it is contradicted by the fact, which Plaintiffs acknowledge, that FTX concealed its fraud from investors.  AC ¶¶ 119-20, 122, 124.  The AC also alleges that nearly every Investor Defendant made *multiple* investments in FTX, yet there are no allegations that Investor Defendants attempted to sell any of their equity before the fraud was revealed.  *See, e.g.*, AC ¶¶ 317, 324, 327, 352, 364, 376, 379, 380, 394, 403, 404, 406, 422, 424, 439, 441, 459, 460, 461, 471, 476, 494, 495, 497.  If Investor Defendants were buying time, they would not also have been buying more stock.

[11]     There is no allegation that FTX affiliates invested in funds managed by Thoma Bravo, Ribbit, or Tiger Global.  Further, the alleged investments were for a fraction of the amount the Investor Defendants invested in FTX.

KYC/AML investigations insufficient to support fraud-based claim); *Lamm v. State St. Bank and Tr.*, 749 F.3d 938, 950 (11th Cir. 2014) ("Alleging that a bank disregarded 'red flags' such as 'atypical activities' on customer's account is insufficient to establish knowledge").  Nor do Plaintiffs plead that the FTX entities received any preferential treatment in connection with their limited investments.

*Finally*, none of Plaintiffs' allegations about "due diligence" or "close relationships" suggest that Investor Defendants should have known about FTX's fraud.  Plaintiffs concede that FTX and SBF concealed the fraud, even going so far as to "[pay] out millions of dollars in hush money to keep whistleblowers from exposing the fraud." AC ¶ 124; *see id.* ¶¶ 106-10.  The materials Plaintiffs rely on also make clear that the fraud was concealed from Investor Defendants. *See, e.g.*, Ex. 1, SEC Compl. ¶ 1. ("Unbeknownst to [FTX's] investors (and to FTX's trading customers), [SBF] was orchestrating a massive, years-long fraud, diverting billions of dollars of the trading platform's customer funds for his own personal benefit and to help grow his crypto empire."); Ex. 3, Superseding Indictment ¶ 27 (SBF deceived FTX investors "about the exchange's relationship with Alameda, and about the safety of the exchange more generally, through the use of audited financial statements provided to investors.").  In light of those facts, Plaintiffs' suggestion that Investor Defendants should have uncovered the fraud and the various issues identified in reports from FTX's new CEO to the bankruptcy court, *see, e.g.*, AC ¶¶ 237, 602, does not carry their burden—though the new CEO describes pervasive issues at FTX, *see id.*, he does so only with the benefit of information that was concealed from Investor Defendants.

In short, this Court should properly "draw on its judicial experience and common sense" and find that Plaintiffs fail to plead a facially plausible theory of liability, let alone meet their burden to allege particularized facts that would show Investor Defendants knew or should have

known of a fraud of which they were victims. *Iqbal*, 556 U.S. at 679; *see also Nuwave, Ltd. v. Argyle Equities, LLC*, 2007 WL 3130443, at *3-4 (M.D. Fla. Oct. 24, 2007) (allegations did not "plausibly show a conspiracy," but rather "show that Defendants made a loan that went bad and that they, too, were victims of the alleged fraud, rather than co-conspirators"); *SBFO Operator No. 3, LLC v. Onex Corp.*, 2023 WL 2631521, at *14 (E.D. Mo. Mar. 23, 2023) (plaintiffs' "assertion that Defendants benefitted from an alleged conspiracy . . . is negated by the fact that Defendants, too, lost their entire investment"). Based on Plaintiffs' own pleading, particularly their acknowledgement that FTX and SBF concealed their misconduct, *see, e.g.*, AC ¶¶ 106-10, the only plausible conclusion to be drawn is that Investor Defendants were deceived by FTX too. *See Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) (allegation that bank representative told customer he knew about wrongdoer's investment club and customers were happy with it, causing customer to invest, "would more easily be interpreted to demonstrate [bank's] lack of awareness of [wrongdoer's] fraudulent activities"); *Honig v. Kornfeld*, 339 F. Supp. 3d, 1323, 1344 (S.D. Fla 2018) (allegations that wrongdoers "intentionally concealed the scheme lend support to the proposition that the Defendants did not have actual knowledge of [the misconduct]"); *Angell*, 2019 WL 3958262, at *16 (allegations supporting only "the sheer possibility" of knowledge were insufficient).

## II.      Plaintiffs' Misrepresentation Claims Fail (Counts Six & Seven)

Plaintiffs also fail to adequately plead facts supporting the elements of intentional or negligent misrepresentation claims. For intentional misrepresentation, the elements are (1) a misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Kronk v. Landwin Grp., LLC*, 2011 WL 13143096, at *6 (C.D. Cal. June 7, 2011); *Atl. Specialty Ins. Co. v. AmWINS Access Ins. Servs., LLC*, 2017 WL 7731865, at *2 (S.D. Fla. Sept. 13, 2017) (Moore, J.) (similar, but requiring

"reliance upon the representation" under Florida law).   The elements of negligent misrepresentation are substantially the same, with the exception that instead of knowledge of falsity, plaintiffs must plead that defendants were "without reasonable ground for believing [the misrepresentation] to be true." *Hutchins v. Nationstar Mortg. LLC*, 2017 WL 2021363, at *3 (N.D. Cal. May 12, 2017); *Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *5 (S.D. Fla. Feb. 1, 2016) (Moore, J.).  Because Plaintiffs' intentional and negligent misrepresentation claims sound in fraud, both must be pled with particularity under Rule 9(b).  *See McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013).

### A.      Plaintiffs Fail to Plead Actionable Misstatements

The AC includes hundreds of alleged statements by certain Investor Defendants, but no explanation at all of why any of those statements is purportedly a fraudulent misrepresentation or omission.[12]  That falls far short of what Rule 9(b) requires.  *See, e.g.*, *Myers v. Provident Life and Accident Ins. Co.*, 472 F. Supp. 3d 1149, 1179 (M.D. Fla. 2020) (plaintiff must allege "*how* [the] purported misrepresentations or omissions constitute[] a false statement or an omission of material fact").  As a particularly egregious example, the AC does not allege that Tiger Global or Altimeter made a single public statement about FTX or participated in any other allegedly misleading conduct, and cannot possibly support claims against them sounding in fraud.  But, even if the Court were to consider all statements in the AC by the other Investor Defendants as potential misrepresentations, Plaintiffs' fraud claims still would not be viable.  That is because the alleged statements can be grouped in three categories, none of which is actionable.

*Statements about SBF.*  Many of the alleged statements in the AC relate to SBF and

---

[12]      For the Court's reference, a chart categorizing each of the alleged statements in the AC is attached here as **Exhibit 4.**

perceptions about his abilities.  *See, e.g.*, AC ¶¶ 336, 344, 429 (describing SBF as "obviously a genius," "as good at explaining the principles of macroeconomics as anyone out there in the world today," "an exceptional founder and human in so many ways," and a "truly exceptional human being").  These are nonactionable puffery and opinion statements.  *See Fineman v. Ferragamo USA, Inc.*, 2023 WL 3778264, at *7 n.7 (S.D. Fla. May 12, 2023) (descriptions such as "extraordinary" and "exceptional" fell "squarely within the scope of opinions, exaggerations and general characterizations that constitute puffery"); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972 (N.D. Cal. 2017) ("statements projecting 'excellent results,' a 'blowout winner' . . . have similarly been held not actionable as mere puffery").  In addition, many statements in this group are nonactionable because they are not alleged to be false.  *See, e.g.*, AC ¶ 336 ("You graduated from MIT . . . and were a top trader on Wall Street at Jane Street.").

  ***Statements about FTX and its products.***  The AC also identifies many statements about the capabilities of the FTX platform, which are also non-actionable puffery.  *See, e.g.*, AC ¶ 343 ("[t]he exchange . . . was Goldilocksperfect"); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1342 & n.3 (S.D. Fla. 2012) (suggestions of "an experience you'll never forget" and "the best possible service in everything we do" were puffery); *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1017, 1025 (N.D. Cal. 2002) (statements "incredibly functional" and the "whole thing is perfect" were puffery).  Similarly not actionable are forward-looking opinions about FTX's trajectory.  *See, e.g.*, AC ¶ 418 ("FTX is much more than a crypto exchange. I believe they will become the Amazon of financial services."); *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *18 (N.D. Cal. Nov. 16, 2020) (statement that "I think [the company] backing us is a great statement to the industry and the world that aqua refining is the future" was non-actionable opinion); *Hartel v. GEO Grp., Inc.*, 2021 WL 4397841, at *11 (S.D. Fla. Sept. 23, 2021) (statement

that "[w]e believe this renewed contract is indicative of [our] stability" was the type of "statement [that] has consistently been found to be nonactionable.").[13]

Statements allegedly touting the safety and stability of FTX are similarly nonactionable opinions that merely express belief or expectation.  *See, e.g.*, AC ¶¶ 319, 341 ("FTX is the high-quality, global crypto exchange the world needs, and it has the potential to become the leading financial exchange for all types of assets."); *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1323 (11th Cir. 2019) (affirming district court conclusion that statements "were nonactionable because they expressed only 'belie[f]' and 'expect[ation]'").  And a number of alleged statements are straightforward descriptions of FTX or its partnerships with other entities, none of which is alleged to be false.  *E.g.*, AC ¶ 321 ("FTX.COM is a cryptocurrency exchange built by traders, for traders. It offers innovative products including industry-leading derivatives, options and volatility products, tokenized stocks, prediction markets, leveraged tokens and an OTC desk."); *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *15-16 (N.D. Cal. Dec. 9, 2022) (holding plaintiffs failed to show that company's description in registration statement "[w]e *designed* the…platform *to be* low cost and manufactured at scale" was false or misleading).

***Statements about Investor Defendants.***   The AC also identifies certain statements by Investor Defendants about themselves and their due diligence practices on their websites and in SEC filings and letters to the CFTC.  *See, e.g.*, AC ¶ 353 (Thoma Bravo claiming it "stresses the importance of conducting comprehensive due diligence on prospective investments"), ¶ 340 ("Sequoia Capital has been an investor in FTX International and FTX US since August 2021.").

---

[13]    Plaintiffs include allegations that certain individuals appeared on UpOnly TV, a video podcast that FTX sponsored.  AC ¶ 378.  Plaintiffs, however, do not allege that those individuals made any statements at all discussing FTX or its products, nor could they.  To the extent Plaintiffs allege a cause of action arising from this appearance, it fails like the rest of Plaintiffs' conclusory allegations.

But, despite vague suggestions that these statements were misleading, *e.g.*, AC ¶¶ 340-41, 353-56, Plaintiffs never allege any specific statement to be untrue.  To the contrary, Plaintiffs rely on the *truth* of statements about Investor Defendants' diligence as the basis for Plaintiffs' facially implausible theory that Investor Defendants knew about FTX's fraud.  *E.g.*, AC ¶ 15.

### B.    Plaintiffs Fail to Plead Actionable Omissions

Nor is an omission-based fraud theory viable because Plaintiffs have not alleged (and cannot show) that Investor Defendants had any duty to disclose anything to Plaintiffs.  *See* AC ¶¶ 719-20; *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) ("[O]missions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information.").  In Florida, a duty arises only in a "fiduciary or other relation of trust or confidence between" the parties.  *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 879-80 (Fla. Dist. Ct. App. 2000).  And in California, the duty to disclose does not arise unless "the defendant is in a fiduciary relationship with the plaintiff" or there is "some sort of transaction between the parties" in "which a [duty] can arise."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997).

Plaintiffs do not allege that they had any relationship with any Investor Defendant, much less a fiduciary relationship or other relationship of trust and confidence in which a duty to disclose could arise.  Nor do Plaintiffs allege that they entered into any "transaction" with any Investor Defendant.  The lack of any dealings between Plaintiffs and Investor Defendants means that Plaintiffs cannot plead a fraud-by-omission theory under Florida and California law.  *See Behrman*, 388 F. Supp. 2d at 1351; *LiMandri*, 52 Cal. App. 4th at 336-37.

### C.    Plaintiffs Fail to Plead that Investor Defendants Knew or Lacked Reasonable Ground to Believe Their Statements Were False

To plead knowledge, Plaintiffs must do more than make conclusory allegations.  *See Lum*

*v. Merlin Ents. Grp. U.S. Holdings Inc.*, 2023 WL 2583307, at *9 (S.D. Cal. Mar. 20, 2023); *Bank of N.Y. Mellon v. Yerger*, 2010 Fla. Cir. LEXIS 12750, at *4-6 (Fla. Cir. Ct. 2010). But that is all they offer here, as discussed in Section I, *supra*.

Plaintiffs do not adequately plead that any Investor Defendant made an alleged misrepresentation without reasonable grounds for believing it to be true, as they must to plead a negligent misrepresentation claim. AC ¶¶ 603, 701. As discussed above, SBF and FTX engaged in a widespread fraud that they shielded from the world, including Investor Defendants. *See supra* Statement of Facts parts D & E. It is not enough to allege, generically, that Investor Defendants had access to information that supposedly "would have shown" the alleged fraud. *See supra* Section I; *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1112 (C.D. Cal. 2015) ("Counterclaimants plead no facts supporting their bare allegation that plaintiffs 'had no reasonable grounds for believing that [their] representations [concerning intent to perform] were true when made.'"); *McGee*, 520 F. App'x at 831.

### D. Plaintiffs Have Not Alleged Intent to Defraud or Induce Reliance

Plaintiffs' misrepresentation claims should also be dismissed because they fail to allege that any Investor Defendant acted with intent to mislead or defraud. Beyond conclusory allegations, Plaintiffs do not allege that any Investor Defendant intended to defraud Plaintiffs. Not only do Plaintiffs fail to adequately allege that Investor Defendants knew of FTX's fraud, which is a necessary precondition to pleading fraudulent intent, *see supra* Section I, Plaintiffs identify no rational motive for Investor Defendants to participate in a fraud that would have carried significant risks for their businesses. *See Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *22 (C.D. Cal. Apr. 14, 2015) (rejecting fraud theory that "defies economic reason"); *Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*, 2014 WL 6966645, at *3 (C.D. Cal. Dec. 8, 2014) ("[A] complaint does not state a plausible ground for relief if it is illogical or plainly at odds with

common sense."). Moreover, although Plaintiffs allege that Investor Defendants were motivated to support FTX to profit from their investments, AC ¶¶ 623-27, a general desire to make profits is insufficient to allege motive for the purposes of pleading fraudulent intent. *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464-65 (S.D.N.Y. 2016) ("While Plaintiffs allege a generalized profit motive, it does not create the requisite 'strong inference' of fraudulent intent.").

### E.   Plaintiffs Fail to Plead Actual and Justifiable Reliance

Plaintiffs also fail to meet their burden to plead facts showing that, "but for the alleged misrepresentation or nondisclosure, the [plaintiffs] would not have entered into the transaction." *Shetty v. Sharma*, 2020 WL 12442133, at *4 (S.D. Fla. Nov. 3, 2020). "Failure to allege how a plaintiff relied on the alleged misrepresentations or omission requires dismissal." *Id.* (quoting *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, 2007 WL 9701121, at *5 (S.D. Fla. Mar. 11, 2007)).

Nowhere in the 769-paragraph AC do Plaintiffs plead that they ever saw a single one of the statements identified in the pleadings, let alone that they relied on those statements in deciding to deposit and/or invest assets with FTX. AC ¶¶ 16-31. Indeed, Plaintiffs do not identify any statements they read or heard, or allege details about what, if anything, they did in reliance on those statements. *See Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1178 (N.D. Cal. 2021) ("Plaintiffs do not explain how they would have acted differently but for the misrepresentation."). Nor do Plaintiffs identify which, if any, statements were made prior to Plaintiffs transacting with FTX. *See Turner v. Apple, Inc.*, 2022 WL 445755, at *5 (N.D. Cal. Feb. 14, 2022) ("Plaintiff must allege that he saw and reviewed materials that could have contained the allegedly omitted disclosure"); *Morchem Indus., Inc. v. Rockin Essentials LLC*, 2021 WL 5014105, at *7 (S.D. Fla. June 16, 2021) (Moore, J.) (dismissing fraud claims for failure to allege reliance).

In addition, even if Plaintiffs had adequately pled reliance, they have not and cannot plead that such reliance was reasonable because the statements at issue did not contain investment advice

and were not even made to Plaintiffs.  *See Robb v. Rahi Real Est. Holdings LLC*, 2011 WL 2149941, at *6 (S.D. Fla. May 23, 2011) ("Without justifiable reliance, there can be no actionable fraud."); *Gulati v. Countrywide Home Loans*, Inc., 2006 WL 6301285, at *2 (M.D. Fla. July 10, 2006) (plaintiffs could not have "reasonably and justifiably relied" on "vague and general statements of optimism" because they are "no more than puffery").

### F.     Plaintiffs Fail to Plead Resulting Damages

Plaintiffs' misrepresentation claims should also be dismissed because they fail to plead that any of the alleged misstatements caused their claimed damages.  *Gerard v. Wells Fargo Bank*, *N.A.*, 2015 WL 12780486, at *10 (C.D. Cal. May 19, 2015).  Plaintiffs do not adequately plead that they suffered any damages as a result of actions they took in reliance on any supposed misstatements.

The crux of the entire AC is that Plaintiffs suffered damages as a result of FTX's fraud, which was brought on by SBF, other FTX principals, and the downturn of the broader digital asset market.  It does not follow that any statements by Investor Defendants were the cause of Plaintiffs' alleged damages and, without more, Plaintiffs' misguided attempt to point the finger at Investor Defendants (who were also victims of FTX's fraud) does not pass muster.  *See Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017) (dismissing where "the alleged misrepresentations were not the cause of Plaintiff's damages[;] the 'crash' and GoDaddy's alleged failure to 'manage, administer[,] and monitor Plaintiffs website' were").[14]

### G.     Plaintiffs' Fraudulent Inducement Claim Also Fails (Count Eight)

To allege fraudulent inducement, Plaintiffs must allege: (1) misrepresentation (false

---

[14]     It is also still unclear what damages Plaintiffs even suffered, as the claims process in FTX's bankruptcy proceedings is ongoing.  *Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Markets, LLC*, 347 F. App'x 711, 713 (2d Cir. 2009) (dismissing RICO claims as unripe "because bankruptcy proceedings are still pending, and because it cannot now be determined whether those proceedings will mitigate or remedy Appellants' damages").

representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Stretch Lab Franchise, LLC v. Stretch Lab, LLC*, 2019 WL 2279388, at *1 (C.D. Cal. Mar. 4, 2019); *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122 (M.D. Fla. 2009).  Plaintiffs' fraudulent inducement claim is based on the same inadequate allegations as their misrepresentation claims, AC ¶¶ 717-25, and should be dismissed for the same reasons discussed above.

## III.    Plaintiffs Fail to Adequately Plead that Investor Defendants Conspired with FTX or Aided Its Fraud

### A.    The AC Does Not Support a Plausible Inference that Investor Defendants Aided and Abetted Fraud and Conversion (Counts Ten & Eleven)

Plaintiffs' attempt to establish aiding-and-abetting liability, which "is rare in civil common law," *In re Brican Am. LLC*, 2015 WL 11661980, at *1 (S.D. Fla. Aug. 4, 2015), must be rejected because Plaintiffs fail to plead, as they must, "knowledge of the underlying violation by the alleged aider and [abettor]" or "the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence*, 455 F. App'x at 906; *Chance World Trading E.C. v. Heritage Bank of Com.*, 438 F. Supp. 2d 1081, 1084 (N.D. Cal. 2005); *see also Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, at *5 (S.D. Fla. July 31, 2009) (Moore, J.) ("Plaintiffs have failed to adequately allege knowledge and substantial assistance.").

*First,* Plaintiffs' aiding and abetting claims fail because Plaintiffs have not pled that Investor Defendants knew of the alleged fraud and conversion. *See supra* Section I; *Lawrence*, 455 F. App'x. at 904; *Marble Bridge Funding*, 225 F. Supp. 3d at 1040.

*Second*, Plaintiffs also fail to allege that Investor Defendants substantially assisted fraud or conversion with the required "high" level of intent.  "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so." *Lawrence v. Bank of Am., N.A.*, 2010 WL 3467501, at *4 (M.D. Fla. Aug. 30, 2010).  It requires "a conscious

23

decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1149 (N.D. Cal. 2021). Absent a duty to disclose, a defendant "may be found liable only if scienter of the high 'conscious intent' variety can be shown." *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008). Agreeing to invest in or do business with a party that, as here, turns out to have been engaged in wrongdoing is not substantial assistance without such scienter. *E.g.*, *Groom v. Bank of Am.*, 2012 WL 50250, at *4 (M.D. Fla. Jan. 9, 2012) (rejecting contention that party furthered Ponzi scheme with defendants' loan where there was "no allegation that [defendants] knew [the party] would use the borrowed funds in his fraudulent scheme").

The AC pleads no facts showing that Investor Defendants knew about—let alone intentionally and directly assisted in—FTX's misuse of customer funds, its secret exemptions for Alameda from FTX user policies, or its other alleged wrongs. The AC alleges only that Investor Defendants invested in FTX and/or generically supported its business.[15] AC ¶¶ 353, 390, 433, 462, 624. Such "unremarkable" activities, *Angell*, 2019 WL 3958262 at *11, are not substantial assistance, especially where there are no allegations showing "conscious and specific motivation" to aid conversion and fraud. *Citco*, 2008 WL 926513, at *6.

Nor do any factual allegations support a plausible inference that Investor Defendants laundered FTX's reputation to conceal wrongdoing. Plaintiffs point to positive statements by some Investor Defendants about SBF and FTX, but they allege no facts showing these statements were knowingly false or intended to mislead. *See supra* Section II.C & II.D. Further, Plaintiffs do not

---

[15]     Plaintiffs claim that certain Investor Defendants helped organize FTX's Series B funding round, AC ¶¶ 376, 471, but still fail to plead why doing so would support the inference that they knew of FTX's fraud, let alone that they substantially assisted FTX's fraud with any conscious intent.

plead they saw or heard ***any*** of these statements or that these particular statements otherwise proximately caused their alleged injuries, which independently defeats any possible aiding and abetting claim. *See supra* Section II.E & II.F.; *Codeventures, LLC v. Vital Motion Inc.*, 2021 WL 1131531, at *5 (S.D. Fla. Mar. 24, 2021) (complaint must allege defendant's actions proximately caused harm on which primary liability is predicated); *McFall v. Stacy & Witbeck Inc.*, 2016 WL 6248882, at *7 (N.D. Cal. Oct. 26, 2016) (alleged assistance must be "a substantial factor in causing the harm").

> **B.    The AC Does Not Support a Plausible Inference that Investor Defendants Conspired to Act Unlawfully (Count Nine)**

Plaintiffs' conspiracy claim fails because they fail to adequately plead an agreement to commit fraud. "A conspiracy requires a meeting of the minds between two or more persons to accomplish a common and unlawful plan." *Feng*, 2020 WL 5822420, at *11; *see also Verigy US, Inc. v. Mayder*, 2008 WL 4820755, at *6 (N.D. Cal. Nov. 4, 2008). Conspiracy may be proven by circumstantial evidence "only when the inference sought to be created by such circumstantial evidence *outweighs all reasonable inferences to the contrary*." *Honig*, 339 F. Supp. 3d at 1345-47 (no conspiracy where no facts showing conscious agreement to act unlawfully, especially where alleged primary wrongdoers had concealed nature of scheme); *see also Farr v. Paramo*, 2017 WL 3583036, at *7 (S.D. Cal. Aug. 18, 2017) ("ability and opportunity to conspire, without more, are insufficient to prove the existence of a conspiracy").

Although replete with conclusory allegations that Investor Defendants agreed to further FTX's fraudulent scheme, *e.g.*, AC ¶¶ 6, 627, 637, 732-33, the AC identifies *no specific facts* to support such an agreement. *See Apex Toxicology, LLC v. United HealthCare Servs., Inc.*, 2020 WL 13551299, at *3 (S.D. Fla. July 7, 2020) (dismissing conspiracy claim that lumped defendants together and failed to allege supporting facts with specificity); *Oueiss v. Saud*, 2022 WL 1311114,

at *14 (S.D. Fla. Mar. 9, 2022) (Moore, J.) (conspiracy claims failed absent "factual predicate" to show defendants were recruited or agreed to take part). The only "meeting of the minds" between Investor Defendants and FTX that can be gleaned from the AC is the agreement for Investor Defendants to invest in FTX, which does not show unlawful intent. *See Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010) (bank's financial incentive to accept deposits from Ponzi scheme promoters did not show intent to aid them); *Honig*, 339 F. Supp. 3d at 1346 (no conspiracy between wrongdoers and sales agents where wrongdoers conspired to pay sales agents to sell fraudulent investments, but complaint failed to allege sales agents' knowledge that selling the investments was unlawful). There are no allegations to support an inference that Investor Defendants agreed to invest in FTX, to speak positively about it, or to offer it business support with the *purpose* of defrauding customers. *See Tippens*, 2009 WL 2365347, at *5 (dismissing conspiracy where complaint did "not allege at all, let alone with particularity, that [each defendant] ever joined in a conspiracy, or had knowledge of a conspiracy").

To the contrary, all reasonable inferences to be drawn from the allegations lead to the same obvious conclusion—that, consistent with the position taken by the Department of Justice, the SEC, and CFTC, Investor Defendants were defrauded along with FTX's customers. *See supra* Section I. Because Plaintiffs' allegations "are more likely explained by other lawful behavior, the complaint must be dismissed." *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1243 (M.D. Fla. 2013); *see also Sanchez v. Aviva Life & Annuity Co.*, 2009 WL 10694223, at *3 (E.D. Cal. Nov. 18, 2009) (no conspiracy where allegations "equally consistent with a 'conspiracy' as with an obvious—and lawful—alternative explanation").

## IV. Plaintiffs' Claims for Securities Violations Under California and Florida Law Fail

### A. Plaintiffs' Cal. Corp. Code § 25504.1 Claim Fails (Count Three)

Plaintiffs fail to allege each element of their claim under California Corporations Code

Section 25504.1, which establishes joint and several liability for any person who, (1) with the intent to deceive or defraud, (2) materially assists in (3) any violation of Sections 25110 or 25401.[16]

*First*, Plaintiffs fail to meet the high bar for pleading intent to deceive or defraud under Section 25504.1, which requires that they allege with particularity that defendants engaged in the underlying fraud with actual knowledge of the scheme. *See In re ZZZZ Best Sec. Litig.*, 1990 WL 132715, at *18 (C.D. Cal. Jul. 23, 1990) ("[A]llegations that [defendant] was 'reckless,' which could not meet up to the actual knowledge standard, obviously could not suffice to maintain liability under § 25504.1."). The AC does not, and cannot, adequately allege that Investor Defendants—themselves victims of FTX's fraud—knew of SBF's scheme or that they intended to deceive or defraud anyone. *See supra* Sections I & II.C & II.D; *Rode v. Allianz Life Ins. Co.*, 2018 WL 4999161, at *10-11 (Cal. Ct. App. Oct. 16, 2018) (no intent to defraud where there was "no allegation . . . that the [defendant] insurers knew the proceeds from plaintiffs' surrendered annuities were being used to perpetuate . . . [a] Ponzi scheme").

*Second*, Plaintiffs also fail to allege facts—let alone particularized ones—that any Investor Defendant materially assisted FTX's alleged fraud or offer or sale of unregistered securities. *See supra* section III.A (no allegations of substantial assistance for aiding and abetting claim). "[F]or purposes of section 25504.1, it is not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws." *AREI II Cases*, 216 Cal.App.4th 1004, 1014-15

---

[16]     Section 25110 makes it "unlawful for any person to offer or sell in [California] any security in an issuer transaction" unless registered with the California Department of Financial Protection and Innovation. Section 25401 makes it "unlawful for any person to offer or sell a security in [California] by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading."

(2015); *see also Amlap ST, LLC v. CBRE, Inc.*, 2016 WL 235919, at *10 (Cal. Ct. App. Jan. 19, 2016) (plaintiffs must show defendants "materially assisted *in* the securities law violation." (emphasis in original)).  Here, Plaintiffs fail to allege that Investor Defendants provided direct, material assistance to FTX to violate any securities laws.  For instance, Plaintiffs provide no facts that allege Investor Defendants assisted FTX in offering and selling unregistered securities—i.e., YBAs and FTT tokens.  *See AREI II*, 216 Cal.App.4th at 1015; *Salameh v. Tarsadia Hotels*, 2010 WL 2839013, at *4-6 (S.D. Cal. July 20, 2010) (no liability under Section 25504.1 where "no allegations exist[ed] that Bank Defendants did anything other than what banks traditionally do: loan money").  As a result, this claim fails.

*Third*, even if Plaintiffs could satisfy the scienter or material assistance elements, they have not alleged any predicate securities laws violation.  Putting aside whether the AC alleges that FTX offered or sold any security,[17] it plainly does not allege the offer or sale of any security *in California*, as necessary for a violation of either Section 25401 or Section 25510.  *McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D. Cal. 1982) (limiting California securities law liability to purchases of "securit[ies] in California"); *see* Cal. Corp. Code Section 25008(a); AC ¶¶ 16-31 & 663-669.  Indeed, not a single Plaintiff is even alleged to have had a YBA or bought FTT.  *See* AC ¶¶ 16-31.  The AC therefore fails to allege a predicate securities violation.

### B.      Plaintiffs Fail to State a Claim for Violation of the FSIPA (Count Five)

Plaintiffs cannot state a claim under the Florida Securities and Investor Protection Act

---

[17]      Defendants do not concede that the AC adequately alleges any offers or sales of securities. The AC does not even make clear what securities would be the basis for this claim.  Although it includes dozens of paragraphs discussing decisions analyzing whether tokens are securities, AC ¶¶ 160-207, the cause of action solely discusses FTX's YBAs, AC ¶¶ 666-68, and FTTs were not sold in the US.  *See* Ex. 2, FTX Terms of Service at 28 (FTT "not offered in the United States or to U.S. persons").  However, this Court need not reach the issue of whether the assets are securities given the many other defects that require dismissal.

("FSIPA") because, even assuming FTX's YBAs are securities under Florida law, Investor Defendants are not alleged to have sold or participated in the sale of YBAs to Plaintiffs in Florida. *See also supra* Section IV.A. The FSIPA provides a private right of action for the unlawful sale of unregistered securities in violation of Florida Statute § 517.07. Fla. Stat. § 517.211. It "creates liability for two classes of persons: 1) sellers, and 2) 'every director, officer, partner, or agent of . . . [the] seller.'" *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 327 (Fla. Dist. Ct. App. 2017). "Liability for the second category is further limited to those persons who 'personally participated or aided in making the sale or purchase.'" *Id.*

To start, it is undisputed that Investor Defendants were not in privity with Plaintiffs and are not the sellers; rather, the AC alleges that *FTX* "offered and/or sold" YBAs to Plaintiffs. AC ¶¶ 644, 667; *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1260 (M.D. Fla. 2010) (bank was not the seller of securities where it was not in privity with the plaintiff-purchaser).

Next, to state a claim against a non-seller defendant under the FSIPA, a plaintiff must meet a "twofold" test. *First*, the defendant "must be an officer, director, or agent of the corporation." *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 827 (11th Cir. 2006). *Second*, the allegations must show the defendant "personally participated in the sale of unregistered securities." *Id.* (internal quotations and citations omitted). The AC meets neither prong of this test.

The AC does not allege that Investor Defendants "were directors, officers, partners, and/or agents of the FTX entities[.]" *See* AC ¶¶ 691-92. At most, the AC alleges that Investor Defendants invested *their own* capital in FTX and that certain individuals "held Advisory Board positions within FTX," AC ¶¶ 693, 32-40, 298, but investors and advisors are not liable under the statute. *See J.P. Morgan Sec., LLC*, 224 So. 3d at 329 (only persons on "the list of people enumerated in the statute may be liable"). Nor are there any allegations that Investor Defendants had a

partnership agreement with FTX to sell securities, acted as FTX's broker, offered to sell YBAs or any other purported securities on behalf of FTX, or otherwise served as FTX's agent.

In any event, the AC does not plead facts to support the conclusory assertion that Investor Defendants "participated in" the sale of YBAs to Plaintiffs.  AC ¶ 691.  Florida courts consistently limit the "personally participate" requirement to defendants who "personally induced the investors to purchase the securities or investments." *Clement v. Lipson*, 999 So. 2d 1072, 1076 (Fla. Dist. Ct. App. 2008).  Liability requires "direct[] involve[ment] in a sale of securities." *J.P. Morgan*, 224 So. 3d at 328; *see Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005).  Here, no Plaintiff alleges that they had any direct relationship with any Investor Defendant that involved opening YBAs or any other conduct relating to FTX's business.  *See* AC ¶¶ 16-31.  It is not enough to allege that certain Investor Defendants made statements in interviews, podcasts, or elsewhere in which they discussed their own capital investments in FTX or said positive things about FTX, as "no amount of involvement with the business of the seller will overcome the absence of personal participation or aid in the making of the sale."  *Dillon*, 385 F. Supp. 2d at 1313.

*Third*, the AC fails to adequately allege that any—much less all—of the Plaintiffs purchased YBAs within Florida.  The FSIPA applies only to sales of securities "within this state." Fla. Stat. § 517.07(1); *see also Kahan Novoa v. Safra Nat'l Bank of N.Y.*, 313 F. Supp. 2d 1347, 1355 (S.D. Fla. 2003).  Even assuming that all of the Plaintiffs had YBAs (though none alleges they did), the AC does not identify when—or fatally, where—they opened those accounts, and only three Plaintiffs are even alleged to be Florida residents.  *See* AC ¶¶ 16-31.  Because there are no allegations showing that FTX or any Investor Defendant offered to sell, or sold, YBAs within Florida, Plaintiffs' FSIPA claim fails.

## V.      Plaintiffs' Other State Statutory Claims Also Fail

### A.      Plaintiffs Fail to Adequately Allege Violations of California's UCL and FAL (Counts One and Two)

Plaintiffs purport to bring claims under each prong of California's Unfair Competition Law ("UCL"), which prohibits business acts or practices that are: (1) unlawful, (2) unfair, or (3) fraudulent.  *See* AC ¶¶ 650-52; Cal. Bus. & Prof. Code § 17200.  But Plaintiffs fail to adequately plead a claim under any prong of the UCL, including because the UCL "does not apply to securities transactions" such as those Plaintiffs allege.  *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004).  For similar reasons, Plaintiffs also fail to plead a claim under California's False Advertising Law ("FAL"), which prohibits the dissemination of any statement concerning property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.[18]

### 1.      *Plaintiffs cannot plead grounds for equitable relief.*

*First*, only equitable remedies are available under any prong of the UCL and FAL.  *See Williams v. Apple, Inc.*, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020).  But Plaintiffs claim only an economic injury—"damages" allegedly sustained from the decrease in value of their "fiat or cryptocurrency," *see* AC ¶ 16-31—for which money is plainly an adequate remedy.  *See Williams*, 2020 WL 6743911, at *9; *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1216 (S.D. Fla. 2022) (dismissing UCL claim for failure to allege lack of adequate remedy at law).  That alone defeats their UCL and FAL claims.  *See id.*; *In re Cal.*

---

[18]      Because the same standard for fraudulent activity governs both the FAL and the fraudulent prong of the UCL, courts often analyze the claims together.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017).

*Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021).[19]

*Second*, even if Plaintiffs could show that money damages were somehow inadequate, they still cannot establish a viable claim for restitution or injunctive relief.  Restitution "requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other."  *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020).  The AC does not allege that Investor Defendants took or received any money or property from Plaintiffs.  *See Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1093 (C.D. Cal. 2015) (restitution requires plaintiff to demonstrate defendant "is in possession of money or property taken from [plaintiff]").  Indeed, the AC does not even allege that several Investor Defendants (Thoma Bravo, Ribbit, and Tiger Global) even received any money from FTX.

As for injunctive relief, Plaintiffs cannot demonstrate the required "actual and immediate" threat of repeated injury.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Plaintiffs have not alleged that they have any intention of purchasing cryptocurrency deposited or invested through the defunct FTX Platform in the future.  *See* AC ¶¶ 16-21.  Neither do Plaintiffs allege that Investor Defendants will make any future statements in support of FTX.  Lacking an immediate threat of repeated injury, Plaintiffs do not have standing to pursue an injunction under the UCL or FAL.  *See In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1087-88 (S.D. Cal. 2020).

2.      *The UCL and FAL claims fail because Plaintiffs cannot pled causation or reliance.*

Plaintiffs lack statutory standing to bring a UCL or FAL claim because they fail to allege

---

[19]      Because "the availability of an adequate legal remedy is clear from the face" of the AC, "further amendment of the complaint would be futile," and dismissal with prejudice is appropriate. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4; *see Williams*, 2020 WL 6743911 at *10 (dismissing UCL claims with prejudice).

actual reliance.[20]  *See Kwikset Corp. v. Super. Ct*., 51 Cal. 4th 310, 326 (2011).  Reliance must be

pled with specificity under Rule 9(b).  *See In re Actimmune Mktg. Litig*., 2009 WL 3740648, at *8,

11 (N.D. Cal. Nov. 6, 2009); *Wilson v. Volkswagen Grp. of Am., Inc.*, 2018 WL 4623539, at *11

(S.D. Fla. Sept. 26, 2018) (dismissing UCL and FAL claims for failure to plead actual reliance).

As explained in Section II.E, Plaintiffs fail to plead any "actual reliance" on the alleged

misstatements, let alone with the specificity required under Rule 9(b).  Indeed, Plaintiffs fail to

allege, and cannot show, *any* causal connection whatsoever between the alleged misstatements and

their injury.  *See supra*, Section II.F.  As a result, Plaintiffs lack standing to bring a UCL claim

(under any prong) or an FAL claim, and the Court must dismiss those claims.  *See Williams*, 449

F. Supp. 3d at 912-14 (dismissing UCL and FAL claims for failure to plead plaintiff "saw or read

the relevant representations"); *In re Facebook PPC Advert. Litig.*, 2010 WL 3341062, at *11 (N.D.

Cal. Aug. 25, 2010) (dismissing claims under all UCL prongs for failure to plead actual reliance).

3.       *Plaintiffs fail to plead a predicate violation for their UCL claim.*

To state a claim under the UCL's "unlawful" prong "a plaintiff must allege facts sufficient

to show a violation of some underlying law."  *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294,

1303 (S.D. Cal. 2014).  Here, Plaintiffs point to alleged violations of the FAL and California

Corporations Code § 25504.1 as their supposed predicate violations—but those fail for the reasons

set out in this section and in Section I, respectively.  Additionally, Plaintiffs' FAL claim fails

because Plaintiffs have neither (1) pled any actionable "statement which is untrue or misleading,"

as discussed in Section II.A, nor (2) adequately alleged that Investor Defendants knew or "by the

---

[20]      This is true regardless of what prong of the UCL Plaintiffs bring their claim under, so long
as it is based on alleged misstatements.  *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912-14
(N.D. Cal. 2020) ("Plaintiffs alleging claims under the FAL and UCL [under any prong] are
required to plead and prove actual reliance on the misrepresentations or omissions at issue.").

exercise of reasonable care should [have] known," that any of the alleged misstatements were untrue, as explained in Section II.C.  *See* Cal. Bus. & Prof. Code § 17500.  Because there is no predicate violation, Plaintiffs' "unlawful" UCL claim must also be dismissed.  *Zarrella*, 755 F. Supp. 2d at 1241 (dismissing UCL claim for failure to plead predicate violations).

    *4.*    *Plaintiffs fail to state a claim under the UCL's "unfair" prong.*

Plaintiffs' claim under the "unfair" prong of the UCL also fails for two additional reasons. *First*, courts have held that "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."  *Hadley*, 243 F. Supp. 3d at 1104-05.  Plaintiffs allege that Investor Defendants' "marketing and promotion of FTX" was unfair, AC ¶ 652, but these allegations are the same as those on which Plaintiffs base their claims under the fraudulent and unlawful prongs of the UCL, which are inadequate for all the reasons explained above.[21]  Plaintiffs' overlapping claim under the "unfair" prong therefore must be dismissed.  *See, e.g.*, *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14.

*Second*, Plaintiffs have not alleged any "unfair" business practices.  Plaintiffs' UCL claims fail under either of the two relevant tests:  the "tethering" test and the "balancing" test.  *See Hadley*, 243 F. Supp. 3d at 1104 (explaining "the Ninth Circuit has approved the use of either the balancing or the tethering tests" where plaintiff is a consumer rather than a competitor of defendant).  The tethering test requires "conduct that threatens an incipient violation of an *antitrust law* or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a

---

[21]    Moreover, as explained above, there are no allegations that Altimeter or Tiger Global made any public statements about FTX whatsoever.

violation of the law, or otherwise significantly threatens or harms *competition*." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). Plaintiffs do not allege harm to general market competition, and antitrust laws do not apply here. The "balancing test" restricts "unfair business practices," which "offend[] an established public policy or [are] immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Williamson v. McAfee, Inc.*, 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014). As discussed above, Plaintiffs have not adequately pled that Investor Defendants knew of FTX's fraud. Without such knowledge, Investor Defendants' alleged actions cannot be deemed "immoral, unethical, oppressive, or unscrupulous." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012).

## B.   Plaintiffs' FDUTPA Claim Also Fails (Count Four)

Plaintiffs fail to plead each required element to state a claim for damages under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"): "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Piescik v. CVS Pharm., Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021).

*First*, the AC fails to plead fraud with particularity. Plaintiffs' FDUTPA claim rests on the same legally deficient allegations that form the basis for their common law misrepresentation claims. *See* AC ¶ 676 (alleging Investor Defendants engaged in unfair and deceptive practices by advertising and promoting FTX using false or misleading claims). Where, as here, "the gravamen" of a FDUTPA claim sounds in fraud, Rule 9(b) applies. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) (Moore, J.). For all the reasons the common law claims fail as a matter of law, the FDUTPA claim also fails. *See supra* Section II.

*Second*, the AC fails to adequately plead that any statements by Investor Defendants are likely to have misled a reasonable consumer. Even if Plaintiffs could identify a false or misleading

statement by certain Investor Defendants, the AC fails to allege facts sufficient to support the conclusory claim that such a statement was likely to mislead consumers "into purchasing, depositing, and/or transacting in fiat currency and digital assets with accounts with FTX." AC ¶ 674. Under the FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" *Id.* (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla. 2003)); *see also Piescik*, 576 F. Supp. 3d at 1132 ("an objective test" is used to determine whether the alleged practice was likely to deceive a consumer acting reasonably under the circumstances).

Moreover, the FDUTPA only applies to "unfair or deceptive acts or practices *in the conduct of any trade or commerce*[.]" Fla. Stat. 501.204(1). "[T]rade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8); *see also Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1375 (S.D. Fla. 2010) ("the purpose of FDUTPA is to protect the consuming public and legitimate business enterprises from unconscionable, deceptive, or unfair acts or practices *in the conduct of* any trade or commerce" (internal quotations and citation omitted)). "Where the allegedly violative action is the publication of information, the statute applies only to commercial speech—or, 'expression related solely to the economic interests of the speaker and its audience.'" *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) (quoting *Tobinick v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017)).

Here, Plaintiffs' FDUTPA claim fails because the AC does not allege that Investor Defendants conducted any trade or commerce with respect to FTX or its products as defined in the statute.  Moreover, the AC does not allege that any Investor Defendant specifically mentioned YBAs or urged consumers to purchase any other particular goods or services.  And as noted above, Investor Defendants are themselves investors who chose to invest in FTX (and lost) large amounts of their own capital in FTX.  *See* AC ¶¶ 13, 543.  To be sure, allegations that certain Investor Defendants publicly spoke about how they had themselves invested in FTX does not constitute "conduct" within the statutory definition of "trade or commerce."  Fla. Stat. § 501.203(8); *see also Tobinick*, 848 F.3d at 950-52 (ruling that opinions expressed on a blogpost were not subject to the Lanham Act, where the blogpost did not propose a commercial transaction and did not contain other indicia of commercial speech).  Under the circumstances alleged, it also is objectively unreasonable for a consumer to rely on the investment decisions of unaffiliated investment firms when deciding whether it is "safe" to invest their personal funds on a cryptocurrency exchange.

*Third*, the AC fails to adequately plead causation, as it falls short of alleging a "direct" causal nexus between Investor Defendants and any actual damage Plaintiffs suffered.  *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) ("[C]ausation is a necessary element of the FDUTPA claim, and 'causation must be direct, rather than remote or speculative.'").  For all the reasons stated in Section II.F, the purportedly false or misleading statements by certain Investor Defendants are too remote and speculative to show causation.  *Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1301 (S.D. Fla. 2021) (rejecting FDUTPA claim where the "allegations" showed that another party was the "direct" cause of any damages).

*Fourth*, the AC also fails to allege that any deceptive or unfair trade practice was committed

by Investor Defendants within Florida.  The "FDUTPA . . . seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state [of Florida]."  *Millennium Commc'ns & Fulfillment, Inc.*, 761 So. 2d at 1262.  There is no allegation that Investor Defendants engaged in unfair or deceptive practices within Florida.  In fact, the AC admits that all relevant Investor Defendants are headquartered or principally operated elsewhere.  AC ¶¶ 32-39.

## VI.    Plaintiffs Fail to State a Basis for Declaratory Relief (Counts Twelve & Thirteen)

Counts Twelve and Thirteen are duplicative of Plaintiffs' other claims and both seek a declaration that Investor Defendants "committed the violations of law alleged herein."  AC ¶¶ 761, 769.  Count Twelve is "based upon the violations of the California [UCL] and the California [FAL] as alleged herein," while Count Thirteen evidently is based on Plaintiffs' Florida state law and common law claims, including allegations that "the YBAs were sold illegally."  AC ¶¶ 755, 768.

Plaintiffs' declaratory judgment claims fail for three simple reasons.  *First*, a declaratory judgment is a procedural vehicle for an otherwise-unavailable form of relief, "not [a] cause[] of action."  *Eveillard v. Nationstar Mortg. LLC*, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015).  Here, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies to Plaintiffs' declaratory judgment claims rather than the Florida and California declaratory judgment statutes on which Plaintiffs base their claims.  *See PNC Bank, Nat'l Ass'n v. Fresh Diet, Inc.*, 2018 WL 3412871, at *5 (S.D. Fla. Mar. 22, 2018) (Moore, J.) (applying federal Declaratory Judgment Act instead of Florida's declaratory judgment statute); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (applying federal Declaratory Judgment Act instead of California Declaratory Relief Act).  "A plaintiff must prevail on an underlying claim in order to be entitled to" a declaratory judgment.  *Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008).  Because Plaintiffs' other counts fail (*see supra*), Counts Twelve and Thirteen also fail.

*See, e.g.*, *Hauser v. Steward Melbourne Hosp., Inc.*, 2020 WL 917259, at *6 (M.D. Fla. Feb. 11, 2020); *Junod v. Mortg. Elec. Registration Sys.*, 584 F. App'x 465, 468 (9th Cir. 2014).

*Second*, "to receive declaratory or injunctive relief, plaintiffs must establish" both "a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). Indeed, "to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999); *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 879 (11th Cir. 2016) ("[T]he injury-in-fact requirement insists that a plaintiff allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." (citation omitted)). Plaintiffs cannot possibly meet this standard because they allege only *past* conduct that has no likelihood of continuing or resulting in future injury. *See supra* Section IV.A.1. The absence of any immediate or future harm alone requires dismissal of Counts Twelve and Thirteen. *See, e.g.*, *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019); *Apple Inc. v. Corellium, LLC*, 2021 WL 1348433, at *2 (S.D. Fla. Feb. 25, 2021). In addition, Plaintiffs seek the "adequate legal remedy" of money damages, foreclosing their duplicative request for equitable relief. *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1318 (S.D. Fla. 2011).

*Third*, district courts have "exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014). Thus, courts decline to entertain a declaratory judgment claim "where it would serve no useful purpose," including "because the issues will be resolved by another claim."

*See, e.g.*, *Azure Coll., Inc. v. Bank of Am., N.A.*, 2022 WL 180290, at *2 (S.D. Fla. Jan. 19, 2022) (collecting cases); *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) ("[A] declaratory judgment . . . is not for the purpose of making factual determinations.").  That is the case here, as Plaintiffs seek declaratory judgments that Investor Defendants "committed the violations of law alleged" in *other* counts.  AC ¶¶ 761, 766.

## VII.   Dismissal with Prejudice Is Appropriate

Because Plaintiffs cannot cure the legal deficiencies discussed above through amendment, the AC should be dismissed with prejudice.  *See, e.g.*, *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001) ("If a more carefully drafted complaint could not state a claim, dismissal with prejudice is proper." (quotations omitted)).  Plaintiffs have already amended their pleadings, with the benefit of extensive background materials, including the SEC Complaint and Superseding Indictment.  But the AC and the materials incorporated by reference make clear that "the circumstances of [their] case do not entitle [Plaintiffs] to relief," *Rosa v. Hotwire Commc'ns, LTD*, 2023 WL 2917210, at *3 (S.D. Fla. Jan. 18, 2023) (Moore, J.), and that further amendment would be futile, *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) ("A district court may find futility if a prerequisite to relief is belied by the facts alleged in the complaint." (quotations omitted)).

## CONCLUSION

For the reasons stated above, Investor Defendants respectfully request that the Court dismiss the AC with prejudice.

## Request For Oral Argument

Pursuant to Local Rule 7.1(b)(2), Investor Defendants respectfully request oral argument on their Motion to Dismiss.  As the parties in this MDL have submitted extensive briefing on a number of legal issues, Investor Defendants respectfully suggest that oral argument could clarify the particular reasons requiring dismissal of the claims against Investor Defendants.  Investor Defendants estimate that one hour of legal argument would be required.

Dated:  September 22, 2023

Respectfully submitted,

<table>
<tr>
<td>

*/s/ Paul C. Huck, Jr.*

**LAWSON HUCK GONZALEZ PLLC**
Paul C. Huck, Jr.
Florida Bar No. 968358
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-2299
paul@lawsonhuckgonzalez.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
Jennifer Kennedy Park (admitted *pro hac vice*)
Joon Kim (admitted *pro hac vice*)
Rishi N. Zutshi (admitted *pro hac vice*)
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Telephone: (650) 815-4130
Facsimile: (650) 815-4199
jkpark@cgsh.com
jkim@csgh.com
rzutshi@cgsh.com

*Counsel for Defendant Sequoia Capital Operations, LLC*

</td>
<td>

*/s/ Amy Jane Longo*

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Jay B. Shapiro
Florida Bar No. 776361
150 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-2664
jshapiro@stearnsweaver.com

**ROPES & GRAY LLP**
David Hennes (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
david.hennes@ropesgray.com

Amy Jane Longo (admitted *pro hac vice*)
10250 Constellation Blvd.
Los Angeles, California 90067
Telephone.: (310) 975-3000
Facsimile: (310) 975-3400
amy.longo@ropesgray.com

</td>
</tr>
</table>

41

*Counsel for Defendant Altimeter Capital Management, LP*

/s/ Scott M. Malzahn

**TEIN MALONE TRIAL LAWYERS**
Michael Tein
Florida Bar No. 993522
3059 Grand Avenue
Coconut Grove, Florida 33133
Telephone: (305) 442-1101
tein@teinmalone.com

**WAYMAKER LLP**
Brian E. Klein
Scott M. Malzahn
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
bklein@waymakerlaw.com
smalzahn@waymakerlaw.com

*Counsel for Defendant Multicoin Capital Management LLC*

/s/ Anna Terteryan

**BERGER SINGERMAN LLP**
Jordi Guso
Florida Bar No. 863580
Ana Kauffman
Florida Bar No. 89092
1450 Brickell Avenue, Ste 1900
Miami, FL 33131
Telephone: (305)-714-4376
jguso@bergersingerman.com
akauffmann@bergersingerman.com

**KIRKLAND & ELLIS LLP**
Mark McKane (admitted *pro hac vice*)
Anna Terteryan (admitted *pro hac vice*)
Stephen Silva (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
mark.mckane@kirkland.com
anna.terteryan@kirkland.com
stephen.silva@kirkland.com

*Counsel for Defendant Thoma Bravo, LP*

/s/ Alexander C. Drylewski

**GRAY ROBINSON, P.A.**
T. Todd Pittenger, Esq.
Florida Bar No. 768936
Kelly J.H. Garcia, Esq.
Florida Bar No. 0694851
301 E. Pine Street, Suite 1400
Orlando, FL 32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690
todd.pittenger@gray-robinson.com
kelly.garcia@gray-robinson.com

/s/ Jeffrey F. Robertson

**SCHULTE ROTH & ZABEL LLP**
Peter H. White
Jeffrey F. Robertson
555 Thirteenth Street, NW
Suite 6W
Washington, DC 20004
Telephone: 202-729-7470
Facsimile: 202-730-4520
pete.white@srz.com
jeffrey.robertson@srz.com

*Counsel for Defendant Tiger Global Management, LLC*

42

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Alexander C. Drylewski (admitted *pro hac vice*)
Mikal Davis-West
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
alexander.drylewski@skadden.com
mikal.davis-west@skadden.com

Mark R.S. Foster (admitted *pro hac vice*)
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
mark.foster@skadden.com

*Counsel for Defendant Paradigm Operations LP*

/s/ Nicholas D. Marais
**AKERMAN LLP**
Jacqueline M. Arango
Florida Bar No. 664162
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374 5600
jacqueline.arango@akerman.com

**KEKER, VAN NEST & PETERS LLP**
Steven P. Ragland
Nicholas D. Marais
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
sragland@keker.com
nmarais@keker.com

*Counsel for Defendant Ribbit Capital, L.P.*

/s/ Jason C. Hegt
**LATHAM & WATKINS LLP**
James E. Brandt
NY Bar No. 1858935
Jason C. Hegt
NY Bar No. 4781191
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Fax: (212) 751-4864
james.brandt@lw.com
jason.hegt@lw.com

*Counsel for Defendant K5 Global Advisor, LLC*

*/s/ Douglas R. Hirsch*

**SADIS & GOLDBERG LLP**
Douglas R. Hirsch
Frank S. Restagno
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793
dhirsch@sadis.com
frestagno@sadis.com

**MELAND BUDWICK, P.A.**
Eric W. Ostroff
200 South Biscayne Boulevard
Ste 3200
Miami, FL 33131
Tel: 305-358-6363
Fax: 305-358-1221
eostroff@melandbudwick.com

*Counsel for Defendant SkyBridge Capital II, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, I filed a true and correct copy with the Clerk of Court via CM/ECF, which will send notice of the same to all counsel and parties of record.

*/s/ Paul C. Huck, Jr.*

Paul C. Huck, Jr.

*Counsel for Defendant Sequoia Capital Operations, LLC*