UNITED STATES DISTRICT CORT
SOUTHERN DISTRICT OF FLORIDA

MDL No. 3076
CASE NO.: 1:23-md-03076-MOORE

IN RE:

FTX CRYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION

THIS DOCUMENT RELATES TO:

Domestic Venture Capital Funds

*Rabbitte, et al. v. K5 Global Advisor, LLC, et al.,* No. 4:23-cv-03953 (N.D. Cal.)

*Rabbitte, et al. v. SkyBridge Capital II, LLC, et al.*, No. 1:23-cv-22949 (S.D. Fla.)

_____/

**DEFENDANT K5 GLOBAL ADVISOR, LLC'S
INDIVIDUAL MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's Order at ECF 216, Defendant K5 Global Advisor, LLC ("K5 Global") individually moves to dismiss Plaintiffs' amended complaint (ECF 157) (the "AC") and submits this memorandum of law in support.[1]

## I. THE AC DOES NOT PLEAD ANY CLAIMS AGAINST K5 GLOBAL

The claims against K5 Global, who was only added to this suit in recent weeks, are clearly an afterthought. Plaintiffs only bring claims against K5 Global on Counts 9 (civil conspiracy), 10 (aiding and abetting fraud), and 11 (aiding and abetting conversion). As explained in the Joint Motion, all three of these claims require, among other things, that the Defendant had actual knowledge of the primary wrongdoer's misconduct. Mot. at Sections I, III. The AC makes no such showing and must be dismissed as to K5 Global.

### A. K5 Global's Financial Relationship with SBF Undermines Any Inference of Actual Knowledge of the Alleged Wrongdoing at FTX

The AC alleges that K5 Global agreed to become invested in FTX via an asset exchange in which it gave entities affiliated with Samuel Bankman-Fried ("SBF") a one-third interest in various entities affiliated with K5 Global in exchange for, among other things, "$250 million in shares of FTX Trading Ltd. and West Realm Shires, Inc. to 'vest quarterly over three years.'"[2] AC ¶¶ 518, 525. In other words, the AC alleges that K5 Global and its principals agreed to give SBF and related entities a substantial interest in their business—which the AC alleges had significant assets—in exchange for FTX stock that would not fully vest for three years. AC ¶¶ 40, 518. As with the other Investor Defendants, the notion that K5 Global would agree to exchange something of value for shares in an enterprise it knew was fraudulent is not plausible as a matter

---

[1] Capitalized terms not defined herein have the meaning set out in the Investor Defendants' Joint Memorandum of Law (ECF 301) (the "Joint Motion" or "Mot."), which K5 Global joins in full.

[2] West Realm Shires, Inc. is the official name for FTX US. AC at 3.

1

of law.  *See, e.g.*, *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, 2005 WL 736217, at *3 (S.D.N.Y. Mar. 30, 2005), *aff'd*, 159 F. App'x 317 (2d Cir. 2005) (allegations of irrational motive cannot support a fraud claim); *Davidoff v. Farina*, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005) (granting motion to dismiss where "it would have made no economic sense for defendants to invest . . . in a venture that they knew would fail.").  If anything, the AC's allegations only confirm that K5 Global was also a victim of the fraud.

### B. The AC's Remaining Allegations About K5 Global Likewise Do Not Plead Actual Knowledge of FTX's Alleged Fraud

Rather than contend with these facts, the AC instead offers a series of allegations against K5 Global that read more like a Hollywood gossip column than a well-pled cause of action.  The gist of Plaintiffs' allegations against K5 Global is that its principals endeavored to introduce SBF to various celebrities or other well-known individuals, and that some unspecified set of these relationships somehow further burnished FTX's credibility.  AC ¶¶ 506-516.  The AC also alleges that K5 Global had a "close relationship" with SBF/FTX, resulting in its principals sitting on FTX's Advisory Board and the entities reportedly keeping one another informed on their activities.  AC ¶¶ 523, 525, 527.  But nowhere does the AC allege that K5 Global had actual knowledge of SBF/FTX's fraud, much less agreed to take part in it.  These omissions are fatal.

*First*, the AC's allegations that K5 Global's principals reportedly introduced SBF to various well-known individuals state no claim.  The mere act of networking comes nowhere close to showing actual knowledge of an acquaintance's alleged misconduct.  *See* Mot. at Section III.  Plaintiffs attempt to obfuscate the innocuous nature of these alleged activities by littering their AC with a slew of boldface names, but offer no details regarding what was said in these introductions or what became of them.  AC ¶¶ 506-7, 509, 512, 515.  To the contrary, Plaintiffs admit that at least some of the alleged introductions came to nothing.  AC ¶¶ 509, 513.  The near-total lack of

detail concerning these alleged activities dooms Plaintiffs' claims.  But even if K5 Global were inferred to have made positive comments about SBF/FTX in the course of these alleged interactions, such remarks would still not be sufficient to establish K5 Global's involvement in SBF/FTX's fraud.  "Rather, such a positive comment would more easily be interpreted to demonstrate [K5 Global's] lack of awareness of [SBF/FTX's] fraudulent activities." *Lawrence v. Bank of America, N.A.*, 455 Fed. App'x 904, 906 (11th Cir. 2012).  Indeed, this reading is the only plausible one in light of the allegations that K5 Global was willing to trade a valuable stake in its own ventures for, in part, $250 million in FTX shares that would vest over three years.  AC ¶ 518.

*Second*, the threadbare allegations that the two companies were "aligned" (AC ¶ 525), that K5 Global's principals sat on FTX's Advisory Board and had access to FTX's internal messaging service (AC ¶¶ 298, 523), and that K5 Global "had knowledge of FTX's internal operations, the lack of internal controls, and of the wrongdoing committed by FTX" (AC ¶ 530) all fail to state a claim.  These allegations are mere conclusions that omit precisely what it is that K5 Global supposedly knew, much less when and how they came to learn it.  The same is true of the AC's insinuations related to K5 Global's alleged design or consulting work.  AC ¶ 528.  All of these allegations fall well short of the standard necessary to allege actual knowledge on the part of K5 Global, particularly in light of the AC's admissions that SBF/FTX concealed their fraud from investors.  Mot. at Section I; *see also Wiand v Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1247 (M.D. Fla. 2013) (allegation that defendant did business with primary wrongdoer failed to plausibly allege actual knowledge of wrongdoing); *Bradshaw v. SLM Corp.*, 652 Fed. App'x 593, 594 n.1 (9th Cir. 2016) (mem. op.) (allegation that defendant worked "hand-in-glove" with primary wrongdoer lacked necessary specificity as to defendant's knowledge of underlying fraud).

For the foregoing reasons, as well as those set out in the Joint Motion, the AC's claims against K5 Global should be dismissed.

Dated:  September 22, 2023  Respectfully submitted,

*/s/ Jason C. Hegt*
James E. Brandt
NY Bar No. 1858935
Jason C. Hegt
NY Bar No. 4781191
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
james.brandt@lw.com
jason.hegt@lw.com

*Attorneys for Defendant K5 Global Advisor, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 22, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

By: /s/ *Jason C. Hegt*
Jason C. Hegt