## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

THIS DOCUMENT RELATES TO:

The Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC*,
No. 1:23-cv-20700 (S.D. Fla.)

*O'Keefe v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-23065 (S.D. Fla.)

*Chernyavsky v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-22960 (S.D. Fla.)

*Cabo v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-23212 (S.D. Fla.)
                                                    /

### THE MULTINATIONAL VC DEFENDANTS' MOTION TO DISMISS THE [CORRECTED] ADMINISTRATIVE CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................ 3

    I.     The Multinational VCs. ............................................................................................ 3

    II.    FTX Presented Itself to the World as a Leader in the Crypto Industry. ................ 4

    III.   Plaintiffs Do Not Allege That Any Due Diligence by the Multinational VCs
         Uncovered Any Wrongdoing at FTX. .................................................................... 4

    IV.   The Multinational VCs Purchased Minority Equity Stakes in FTX. .................... 5

    V.    According to the Complaint, FTX and the FTX Insiders Defrauded the
         Multinational VCs........................................................................................................ 6

    VI.   Plaintiffs' Sparse Factual Allegations About the Multinational VCs Show No
         Wrongdoing of Any Kind. ..................................................................................... 7

    VII.  When FTX Collapsed, the Multinational VCs Lost Their Entire
         Investments—Hundreds of Millions of Dollars.................................................... 11

ARGUMENT ......................................................................................................................... 11

    I.     The Complaint Should Be Dismissed Because Its Claims Against the
         Multinational VCs Are Implausible and Fail to Meet Basic Pleading
         Requirements. ........................................................................................................ 11

         A.    Plaintiffs' Claims Are Implausible. ........................................................ 11

         B.    Plaintiffs' Complaint Is an Improper Shotgun Pleading......................... 13

         C.    Plaintiffs Fail to Allege Fraud with Particularity Under Rule 9(b). ........ 14

    II.    Plaintiffs' Unregistered Securities Claims (Counts 1 and 3) Should Be
         Dismissed.............................................................................................................. 15

         A.    Counts 1 and 3 Fail Because the Multinational VCs Did Not
             Participate in or Materially Aid the Sale of Unregistered Securities....... 16

         B.    Count 1 Also Fails Because the Multinational VCs Were Not
             Directors, Officers, Partners, or Agents of FTX. .................................... 17

         C.    Count 3 Also Fails Because Plaintiffs Fail to Allege an "Intent to
             Deceive or Defraud." .............................................................................. 18

         D.    Plaintiffs' Unregistered Broker-Dealer Claim (Count 3) Fails.............. 18

    III.   Plaintiffs' Securities Fraud Claims (Counts 2, 4, 5, and 6) Should Be
         Dismissed.............................................................................................................. 19

         A.    Counts 2, 4, and 5 Fail Because the Multinational VCs Did Not
             Participate or Materially Assist in FTX's Alleged Securities Fraud. ...... 19

         B.    Counts 2, 4, 5, and 6 Fail Because Plaintiffs Do Not Sufficiently
             Allege That the Multinational VCs Acted with Scienter......................... 21

# <u>TABLE OF CONTENTS</u>
(continued)

Page

C. Counts 2 and 6 Should Be Dismissed Because the Multinational VCsAre Not Directors, Officers, Partners, Agents, or Control Persons of FTX. ...........................................................................22

IV. The Complaint Fails to State a Claim for Conspiracy (Count 7).........................22

V. The Complaint Fails to State Any Aiding and Abetting Claim (Counts 8, 9, and 10). ...................................................................................................23

  A. The Complaint Does Not Establish Any Multinational VC's Actual Knowledge of FTX's Alleged Wrongdoing. ...........................................24

  B. The Complaint Does Not Plead Facts Showing That Any of the Multinational VCs Substantially Assisted in FTX's Misconduct...........25

VI. Plaintiffs' California Unfair Competition Law Claim (Count 11) Should Be Dismissed.....................................................................................27

  A. Plaintiffs' UCL Claim Should Be Dismissed Because It Relates to "Securities Transactions."................................................................27

  B. Plaintiffs Lack Standing Under the UCL...............................................28

  C. Plaintiffs Fail to Plead Fraud, Unfairness, or Unlawfulness Under the UCL....................................................................................................30

  D. Plaintiffs' UCL Claim Fails Because They Seek an Inappropriate Remedy. ................................................................................................31

  E. Plaintiffs' UCL Claim Fails Because It Is Not Sufficiently Connected to California. ...........................................................................32

VII. Plaintiffs' California False Advertising Law Claim (Count 12) Should Be Dismissed.....................................................................................32

VIII. Plaintiffs' Florida Deceptive and Unfair Trade Practices Act Claim (Count 13) Should Be Dismissed...........................................................34

IX. Plaintiffs' Negligent Misrepresentation Claim (Count 14) Should Be Dismissed.........................................................................................36

X. Plaintiffs' Intentional Misrepresentation and Fraudulent Inducement Claims (Counts 15 and 16) Should Be Dismissed.........................................38

XI. Plaintiffs' Declaratory Judgment Claims (Counts 17 and 18) Should Be Dismissed.....................................................................................39

XII. Plaintiffs' Punitive Damages Claim (Count 19) Should Be Dismissed..............40

CONCLUSION.......................................................................................40

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
2018 WL 11220494 (N.D. Cal. May 22, 2018) ......................................................19

*In re Actimmune Mktg. Litig.*,
2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .........................................................30

*Angell v. Allergan Sales, LLC*,
2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) .......................................................25

*Apex Toxicology, LLC v. United HealthCare Servs., Inc.*,
2020 WL 13551299 (S.D. Fla. July 7, 2020)....................................................22, 23

*ARB, Inc. v. Luz Const., Inc.*,
1992 WL 164487 (9th Cir. July 16, 1992)............................................................26

*AREI II Cases*,
216 Cal. App. 4th 1004 (2013) .....................................................................16, 20

*Arnold v. McFall*,
839 F. Supp. 2d 1281 (S.D. Fla. 2011) ....................................................19, 21, 37

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................11, 12, 13

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
938 F. Supp. 825 (S.D. Fla. 1996) .....................................................................16

*Balzer v. Wal-Mart Stores, Inc.*,
2015 WL 13828418 (C.D. Cal. Feb. 25, 2015)......................................................33

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021) ........................................................................14

*Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*,
2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ................................................23, 38

*Behrman v. Allstate Ins. Co.*,
388 F. Supp. 2d 1346 (S.D. Fla. 2005) ...............................................................37

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) .........................................................................31

*Blair v. Wachovia Mortg. Corp.*,
  2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ......................................................................34

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014) .............................................................................................28

*Bowen v. Ziasun Techs., Inc.*,
  116 Cal. App. 4th 777 (2004) .........................................................................................27, 32

*Brissette v. Entrust Grp., Inc.*,
  621 F. App'x 461 (9th Cir. 2015) ........................................................................................38

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
  116 F.3d 1364 (11th Cir. 1997) ..........................................................................................15

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
  2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ....................................................................31

*Calderon v. Total Wealth Mgmt., Inc.*,
  2018 WL 1621397 (S.D. Cal. Apr. 4, 2018) ..................................................................20, 21

*California Amplifier, Inc. v. RLI Ins. Co.*,
  94 Cal. App. 4th 102 (2001) ...............................................................................................21

*Carran v. Morgan*,
  2007 WL 3520480 (S.D. Fla. Nov. 14, 2007) .....................................................................20

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ............................................................................................34

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal. App. 4th 1138 (2005) ...........................................................................................24

*Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto.
  Ins. Co.*,
  789 F. Supp. 2d 1311 (S.D. Fla. 2011) ...............................................................................40

*Chapman v. Pier 1 Imps. (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ..............................................................................................31

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
  169 F. Supp. 2d 1119 (N.D. Cal. 2000) ..............................................................................32

*City First Mortg. Corp. v. Barton*,
  988 So. 2d 82 (Fla. Dist. Ct. App. 2008) ............................................................................35

*Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*,
  87 F. Supp. 2d 1287 (S.D. Fla. 2000) .................................................................................34

*David v. Am. Suzuki Motor Corp.*,
   629 F. Supp. 2d 1309 (S.D. Fla. 2009) ..................................................................32

*Doe v. SuccessfulMatch.com*,
   70 F. Supp. 3d 1066 (N.D. Cal. 2014) .................................................................29

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................29

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) .................................................................30

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
   761 F. Supp. 2d 504 (S.D. Tex. 2011) .................................................................25

*Eurosemillas, S.A. v. Uttarwar*,
   854 F. App'x 137 (9th Cir. 2021) .......................................................................38

*Feingold v. Budner*,
   2008 WL 4610031 (S.D. Fla. Oct. 10, 2008) .....................................................39

*Feng v. Walsh*,
   2021 WL 8055449 (S.D. Fla. Dec. 21, 2021) .....................................................34

*Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of
   Fla., Inc.*,
   526 F. Supp. 3d 1282 (S.D. Fla. 2021) ...............................................................36

*Galvez v. Wells Fargo Bank, N.A.*,
   2018 WL 2761917 (N.D. Cal. June 7, 2018) ......................................................38

*Garcia v. Kashi Co.*,
   43 F. Supp. 3d 1359 (S.D. Fla. 2014) .................................................................40

*Ginsberg v. Google Inc.*,
   586 F. Supp. 3d 998 (N.D. Cal. 2022) ................................................................28

*Griffin Indus. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ..........................................................................12

*Groom v. Bank of Am.*,
   2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ..........................................................26

*Hammett v. Sherman*,
   2020 WL 1332591 (S.D. Cal. Mar. 23, 2020) ....................................................18

*Hennegan Co. v. Arriola*,
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) ...............................................................35

*Hines v. FiServ, Inc.*,
　　2010 WL 1249838 (M.D. Fla. Mar. 25, 2010) .......................................................17

*Hollifield v. Resolute Cap. Partners Ltd.*,
　　2023 WL 2628675 (C.D. Cal. Feb. 14, 2023).........................................................18

*Honig v. Kornfeld*,
　　339 F. Supp. 3d 1323 (S.D. Fla. 2018) .............................................................25, 38

*Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*,
　　932 F. Supp. 2d 1336 (S.D. Fla. 2013) ...................................................................12

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
　　224 So. 3d 316 (Fla. Dist. Ct. App. 2017) .............................................................17

*In re Jiangbo Pharms., Inc., Sec. Litig.*,
　　884 F. Supp. 2d 1243 (S.D. Fla. 2012) ...................................................................13

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
　　162 F.3d 1290 (11th Cir. 1998) ..............................................................................38

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,
　　1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ...........................................19, 27, 32

*Kearns v. Ford Motor Co.*,
　　567 F.3d 1120 (9th Cir. 2009) ....................................................................28, 29, 30

*Konopasek v. Ten Assocs.*,
　　2018 WL 6177249 (C.D. Cal. Oct. 22, 2018) .........................................................19

*Lacayo v. Wells Fargo Bank, N.A.*,
　　2019 WL 8756577 (S.D. Fla. Sept. 23, 2019) ........................................................13

*Lachapelle v. Kim*,
　　2015 WL 5461542 (N.D. Cal. Sept. 16, 2015) ........................................................23

*Lamm v. State St. Bank & Tr. Co.*,
　　889 F. Supp. 2d 1321 (S.D. Fla. 2012) ...................................................................24

*Lane v. Cap. Acquisitions & Mgmt. Co.*,
　　2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) .........................................................14

*Lawrence v. Bank of Am., N.A.*,
　　455 F. App'x 904 (11th Cir. 2012) .........................................................................24

*LBS Petrol., LLC v. Demir*,
　　2015 WL 12469064 (S.D. Fla. Oct. 28, 2015).........................................................26

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ........................................................................37

*Linville v. Ginn Real Est. Co.*,
   697 F. Supp. 2d 1302 (M.D. Fla. 2010) ....................................................37

*Lombardo v. Johnson & Johnson Consumer Cos.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ......................................................35

*Luke v. Gulley*,
   975 F.3d 1140 (11th Cir. 2020) ............................................................5, 6, 9

*Magluta v. Samples*,
   256 F.3d 1282 (11th Cir. 2001) ..................................................................14

*Markowitz v. Diversified Lending Grp., Inc.*,
   2010 WL 11507662 (C.D. Cal. Feb. 26, 2010)..........................................18

*McCann v. Lucky Money, Inc.*,
   129 Cal. App. 4th 1382 (2005) ..................................................................32

*McGraw Co. v. Aegis Gen. Ins. Agency*,
   2016 WL 3745063 (N.D. Cal. July 13, 2016)............................................26

*Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*,
   783 F. Supp. 2d 1214 (S.D. Fla. 2011) ......................................................40

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ......................................................31

*Mee Indus. v. Dow Chem. Co.*,
   608 F.3d 1202 (11th Cir. 2010) ..................................................................40

*Mejia v. Jurich*,
   781 So. 2d 1175 (Fla. Dist. Ct. App. 2001) ..............................................36

*Meridian Tr. Co. v. Batista*,
   2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ............................... *passim*

*Miccosukee Tribe of Indians of Fla. v. Cypress*,
   814 F.3d 1202 (11th Cir. 2015) ..................................................................11

*Molina v. Aurora Loan Servs., LLC*,
   635 F. App'x 618 (11th Cir. 2015) ............................................................35

*Montalbano v. Ariad Pharms., Inc.*,
   2015 WL 11198245 (S.D. Fla. Aug. 4, 2015)............................................40

*Morchem Indus. v. Rockin Essentials LLC*,
    2021 WL 5014105 (S.D. Fla. June 16, 2021) ........................................................................15

*In re Nexus 6P Prod. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ...................................................................................33

*Nuwave, Ltd. v. Argyle Equities, LLC*,
    2007 WL 3130443 (M.D. Fla. Oct. 24, 2007) ........................................................................23

*OCG Energy, LLC v. Shen*,
    2023 WL 2628689 (C.D. Cal. Jan. 11, 2023) .........................................................................21

*Palomar Health v. Am. Guarantee & Liab. Ins. Co.*,
    2021 WL 4035005 (S.D. Cal. Sept. 3, 2021)..........................................................................37

*Papadopoulos v. Sidi*,
    2007 WL 9700707 (S.D. Fla. Jan. 8, 2007) ...........................................................................16

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003)....................................................................................................34

*Pruco Life Ins. Co. v. Brasner*,
    2011 WL 2669651 (S.D. Fla. July 7, 2011).............................................................................36

*Punian v. Gillette Co.*,
    2016 WL 1029607 (N.D. Cal. Mar. 15, 2016).........................................................................30

*Rattner v. 1809 Brickell LP*,
    2022 WL 4770402 (S.D. Fla. Aug. 23, 2022)..........................................................................14

*Ribak v. Centex Real Estate Corp.*,
    702 So. 2d 1316 (Fla. Dist. Ct. App. 1997) ...........................................................................36

*Richter v. Wells Fargo Bank NA*,
    2015 WL 163086 (M.D. Fla. Jan. 13, 2015)............................................................................27

*Rothis v. M & I Marshall & Isley Bank*,
    2010 WL 3893960 (M.D. Fla. Sept. 29, 2010)........................................................................37

*Rubin v. Gabay*,
    979 So. 2d 988 (Fla. Dist. Ct. App. 2008) .............................................................................17

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006) ........................................................................................................22

*S.F. Residence Club, Inc. v. Amado*,
    773 F. Supp. 2d 822 (N.D. Cal. 2011) ...................................................................................27

*Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*,
    2017 WL 700215 (M.D. Fla. Feb. 22, 2017) ..............................................................38

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) .....................................................................................33

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) ....................................................................31

*SIC Metals, Inc. v. Hyundai Steel Co.*,
    2018 WL 6842958 (C.D. Cal. Nov. 14, 2018)...........................................................18

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*,
    650 F. Supp. 2d 1213 (S.D. Fla. 2009) ....................................................................40

*SIG, Inc. v. AT & T Digit. Life, Inc.*,
    971 F. Supp. 2d 1178 (S.D. Fla. 2013) ....................................................................37

*Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    2023 WL 2768453 (N.D. Cal. Mar. 9, 2023).............................................................33

*Smith v. Ramis*,
    647 F. App'x 679 (9th Cir. 2016) ..............................................................................36

*Swingless Golf Club Corp. v. Taylor*,
    732 F. Supp. 2d 899 (N.D. Cal. 2010) ......................................................................38

*Ting v. United States*,
    927 F.2d 1504 (9th Cir. 1991) ...................................................................................22

*Treminio v. Crowley Mar. Corp.*,
    2023 WL 113565 (M.D. Fla. Jan. 5, 2023)................................................................36

*Turner v. Modesto Police Dep't*,
    2023 WL 4424588 (E.D. Cal. July 10, 2023) ...........................................................40

*Tyco Safety Prod. Canada, Ltd. v. Abracon Corp.*,
    2008 WL 4753728 (S.D. Fla. Oct. 28, 2008).............................................................37

*Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*,
    177 F. App'x 52 (11th Cir. 2006) .............................................................................5, 7

*Vidor v. Am. Int'l Grp., Inc.*,
    491 F. App'x 828 (9th Cir. 2012) ..............................................................................36

*Wang v. Revere Cap. Mgmt., LLC*,
    2023 WL 2198570 (S.D. Fla. Feb. 15, 2023) ...........................................................25

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) ...........................................................................13, 14

*Wiand v. Wells Fargo Bank, N.A.*,
    938 F. Supp. 2d 1238 (M.D. Fla. 2013) .......................................................................25

*Wilding v. DNC Servs. Corp.*,
    941 F.3d 1116 (11th Cir. 2019) ....................................................................................15

*Williams v. Apple, Inc.*,
    2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ............................................................33

*Wilson v. Chattem, Inc.*,
    2009 WL 10667847 (S.D. Fla. Sept. 17, 2009) ..........................................................38

*Wilson v. Frito-Lay N. Am., Inc.*,
    260 F. Supp. 3d 1202 (N.D. Cal. 2017) .......................................................................28

*YMD Recs., LLC v. Ultra Enters., Inc.*,
    361 F. Supp. 3d 1258 (S.D. Fla. 2019) ........................................................................39

*Zarrella v. Pac. Life Ins. Co.*,
    755 F. Supp. 2d 1218 (S.D. Fla. 2010) ..................................................................32, 33

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ....................................................................................15

*Zlotnick v. Premier Sales Grp., Inc.*,
    480 F.3d 1281 (11th Cir. 2007) ....................................................................................34

**Rules**

Fed. R. Civ. P. Rule 8 ...........................................................................................2, 11, 14

Fed. R. Civ. P. Rule 9(b)............................................................................................ *passim*

Fed. R. Civ. P. Rule 12(b)(2) ................................................................................................1

Fed. R. Civ. P. Rule 12(b)(5) ................................................................................................1

**Statutes**

Cal. Bus. & Prof. Code § 17200 .....................................................................................27, 30

Cal. Bus. & Prof. Code § 17204 .........................................................................................28

Cal. Corp. Code § 25210(b)..................................................................................................18, 19

Cal. Corp. Code § 25500.......................................................................................................19, 21

Cal. Corp. Code § 25504............................................................................................21, 22

Cal. Corp. Code § 25504.1 ....................................................................16, 18, 19, 21

Fla. Stat. § 517.211 ................................................................................16, 17, 19, 22

## PRELIMINARY STATEMENT[1]

The Multinational VCs[2] do not belong in this litigation. Plaintiffs' Complaint[3] is a jumbled collection of allegations and claims, the vast majority of which have nothing to do with the Multinational VCs. Even worse, Plaintiffs' claim that the Multinational VCs aided and abetted FTX's[4] massive fraud is implausible and undercut by Plaintiffs' own allegations. Stripped of its conclusory and irrelevant allegations, the Complaint tells a simple story: the Multinational VCs were defrauded by FTX and FTX's insiders into making equity investments in FTX and misled by FTX and those same insiders until FTX ultimately collapsed. As a result, the Multinational VCs lost their entire investments, totaling hundreds of millions of dollars. In fact, the U.S. Securities and Exchange Commission ("SEC") and Department of Justice ("DOJ") have investigated the FTX collapse and have brought actions against FTX's insiders for misleading equity investors like

---

[1] Defendants Sino Global Capital Limited, SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, and Temasek Holdings (Private) Limited have not been served. Defendants Sino Global Capital Holdings, LLC, SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, and Temasek Holdings (Private) Limited are filing separate motions to dismiss pursuant to Rule 12(b)(5). Defendants Sino Global Capital Holdings, LLC, Temasek Holdings (Private) Limited, and Temasek International (USA) LLC are also filing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The defendants who join in this motion do so in an abundance of caution and without prejudice to their positions taken in the motions filed concurrently herewith.

[2] The "Multinational VCs" are Sino Global Capital Limited, Sino Global Capital Holdings, LLC, SoftBank Group Corp., SB Group US, Inc., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, Temasek Holdings (Private) Limited, and Temasek International (USA) LLC. Sino Global Capital Limited has not been served yet (and Plaintiffs do not allege that Sino Global Capital Limited has been served), has not appeared in this action, has no obligation to respond to the Complaint, and is not included in this motion. SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, and Temasek Holdings (Private) Limited likewise have not been properly served with the Complaint and join this motion without prejudice to their motions to dismiss for insufficient service of process under Rule 12(b)(5), which are filed concurrently herewith.

[3] The "Complaint" or "Compl." is the "[Corrected] Administrative Class Action Complaint and Demand for Jury Trial: Multinational VC Defendants" (ECF No. 182).

[4] "FTX" refers to FTX Trading Ltd. and West Realm Shires Inc. and their respective subsidiaries.

the Multinational VCs.   The Multinational VCs are victims—not perpetrators—of FTX's wrongdoing.

Plaintiffs' theory of liability is far-fetched for another reason: Plaintiffs have no connection to the Multinational VCs.   Plaintiffs were customers of FTX who lost their money when the company collapsed.   The Multinational VCs, on the other hand, are reputable venture capital firms who were small minority investors in FTX and also lost their money when FTX collapsed.   The Multinational VCs were not officers, directors, or agents of FTX and had no control or decision-making authority at FTX.   They made no statements to Plaintiffs about FTX, never solicited Plaintiffs to deposit currency with or invest in FTX, and never promoted any FTX product. Plaintiffs nowhere explain why FTX's passive minority investors would be liable to FTX's customers.

In addition to the substantive issues with Plaintiffs' claims, the Complaint fails to comply with the most basic pleading requirements.   None of the 19 counts asserted against the Multinational VCs in the Complaint identifies conduct by any of the individual Multinational VCs. Instead, each count lumps together the Multinational VCs and then proceeds to incorporate Plaintiffs' entire 195-page Complaint.   The rest of the Complaint is made up of impermissible group pleading, vague and conclusory allegations, and pages of allegations about conduct by people or entities other than the Multinational VCs.   Plaintiffs' shotgun pleading strategy fails to comply with Rule 8 of the Federal Rules of Civil Procedure and comes nowhere close to meeting the heightened pleading requirements of Rule 9(b) applicable to most of Plaintiffs' claims.

For these reasons and others explained more fully below, Plaintiffs' claims against the Multinational VCs should be dismissed with prejudice.

## BACKGROUND

### I.     The Multinational VCs.

Plaintiffs name two Sino Global entities,[5] four SoftBank entities,[6] and two Temasek entities[7] as defendants in the Complaint.  (Compl. ¶¶ 29–35.)  Although these are separate entities, only some of which made investments in FTX, Plaintiffs fail to provide allegations specific to each of these eight defendants.  Instead, Plaintiffs either impermissibly group entities together using the terms "SoftBank" and "Temasek" or, more egregiously, lump all eight entities together in allegations that simply refer to the "Multinational VC Defendants."  (*See, e.g.*, *id.* ¶¶ 36–37 (making broad claims about the "Multinational VC Defendants'" supposed wrongdoing).)

Plaintiffs generally allege that the Multinational VCs are highly respected venture capital firms that manage hundreds of billions of dollars in assets and have invested in some of the world's leading technology companies.  (*See id.* ¶¶ 29–35, 251–53, 262–64.)  Plaintiffs do not allege that the Multinational VCs have a history of wrongdoing or fraud—to the contrary, they allege that the Multinational VCs are among "the most reputable investment funds in the world."  (*Id.* ¶ 348.)

---

[5] Plaintiffs name as defendants Sino Global Capital Limited and Sino Global Capital Holdings, LLC.  (Compl. ¶ 34.)  Sino Global Capital Limited has not been served.

[6] Plaintiffs name as defendants SoftBank Group Corp., SB Group US, Inc., SoftBank Investment Advisers (UK) Limited, and SoftBank Global Advisers Limited.  (Compl. ¶¶ 30, 33.)  SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, and SoftBank Global Advisers Limited have not been served.  The plaintiffs in *O'Keefe v. Sequoia Capital Operations, LLC*, No. 1:23-cv-20700 (S.D. Fla.), also named SoftBank Vision Fund (AIV M2) L.P. as a defendant. However, counsel for SoftBank Vision Fund (AIV M2) L.P. informed the *O'Keefe* plaintiffs that SoftBank Vision Fund (AIV M2) L.P. is not the correct fund entity.  In response, plaintiffs' counsel indicated that they would amend their complaint to remove SoftBank Vision Fund (AIV M2) L.P. as a defendant, and that entity was not named as a defendant in this Complaint.

[7] Plaintiffs name as defendants Temasek Holdings (Private) Limited and Temasek International (USA) LLC.  (Compl. ¶ 29.)

## II.     FTX Presented Itself to the World as a Leader in the Crypto Industry.

Launched in May 2019, FTX quickly "grew to become one of the largest cryptocurrency exchanges in the world." (*Id.* ¶ 57.) Within three years of its founding, it reached trading volumes of $21 billion per day. (*Id.*) Sam Bankman-Fried ("SBF"), who co-founded FTX along with Zixiao "Gary" Wang and Nishad Singh, became a public figure and the face of the crypto industry. (*See, e.g.*, *id.* ¶¶ 43, 53, 55, 124.)

Two years before launching FTX, SBF and Mr. Wang also founded Alameda Research ("Alameda"), a crypto-focused hedge fund. (*Id.* ¶ 103.) SBF initially led Alameda as CEO until he was replaced by Caroline Ellison. (*Id.* ¶¶ 64, 103.) FTX represented that FTX and Alameda were separate entities and that Alameda had no special privileges on the FTX exchange. (*Id.* ¶¶ 104, 110.)

## III.    Plaintiffs Do Not Allege That Any Due Diligence by the Multinational VCs Uncovered Any Wrongdoing at FTX.

Given FTX's public profile as an industry-leading company in the emerging crypto space, it is unsurprising that the Multinational VCs and others were interested in investing in the company. Plaintiffs claim that the Multinational VCs performed "significant" due diligence before investing in FTX (*id.* ¶ 36), but they do not allege ***any facts*** showing that any diligence by the Multinational VCs uncovered any wrongdoing at FTX or Alameda.

In addition, Plaintiffs allege no facts about the diligence that any Sino Global or SoftBank entity ***actually*** performed on FTX, much less what any diligence by those entities revealed about FTX. Instead, the Complaint includes pages of allegations regarding the diligence that Sino Global or SoftBank ***might*** have performed on an investment like FTX. (*See id.* ¶¶ 325–26 (speculating about the diligence that Sino Global "would have undertaken"); *id.* ¶¶ 323–24, 332 (speculating about the diligence that SoftBank "would have" done or "presumably" did).)

With regard to Temasek, Plaintiffs identify a November 2022 report (issued *after* FTX's collapse), which explained that Temasek did eight months of diligence on FTX, including "regulatory and licensing due diligence on the business model of FTX" and "a review of [FTX's] audited financial statements and a cybersecurity review." (*Id.* ¶¶ 251, 262, 320.)  However, Plaintiffs omit that the same report also explained that "the level of due diligence done is commensurate with . . . the percentage shareholding being acquired," and that "[f]or a 1-1.5% stake (such as our investment in FTX), it is neither feasible nor the market norm to conduct due diligence equivalent to an investment where a significant shareholding or a controlling stake is being acquired." (*See* Declaration of Eric D. Lawson ("Lawson Decl.") Ex. 1, at 5.)[8]  The report further explained that "due diligence is conducted from an outside-in perspective and access to information is limited," and that "there is the risk that a well-concealed fraud by a small group of people, as reports on FTX suggest, can go on undetected." (*Id.* at 6.)  Plaintiffs allege no facts to the contrary, much less any indicating that Temasek's diligence unearthed any wrongdoing.

## IV.    The Multinational VCs Purchased Minority Equity Stakes in FTX.

None of the Multinational VCs owned more than a small minority stake in FTX.  In fact, "no single investor other than the co-founders own[ed] more than 2% of the equity of any" of the FTX entities.  (*See* Lawson Decl. Ex. 2 ¶ 10; *see also id.* Ex. 1, at 5 (explaining that Temasek owned a 1–1.5% stake in FTX).)[9]

---

[8] The Court may consider this document because it is "referred to in the complaint" and "central to [Plaintiffs'] claim[s]." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020); (*see* Compl. ¶¶ 251, 262, 320–22).

[9] The Court may consider these documents because they are "referred to in the complaint" and "central to [Plaintiffs'] claim[s]," *Luke*, 975 F.3d at 1144; (*see* Compl. ¶¶ 138, 224–25, 235, 251, 262, 320–22, 360), and because the bankruptcy filing is a public record, *see Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53–54 (11th Cir. 2006).

Plaintiffs allege that reputable venture capital firms, including entities affiliated with the Multinational VCs, together made approximately $2 billion of equity investments in FTX entities. (Compl. ¶ 315.)  Of that approximately $2 billion, Plaintiffs allege that FTX raised an amount in the "mid-seven figures" from Sino Global; $100 million from SoftBank; and $275 million from Temasek.  (*Id.* ¶ 343.)  Those investments represented a tiny fraction of FTX's overall valuation, which at the time ranged from ***$18 billion*** to ***$32 billion***.  (*Id.* ¶ 356.)  The Complaint  also contains no allegations that the Multinational VCs were involved in the daily management of FTX.

**V.  According to the Complaint, FTX and the FTX Insiders Defrauded the Multinational VCs.**

Plaintiffs specifically allege that FTX insiders lied to equity investors like the Multinational VCs.  For example, they allege that Ms. Ellison and Mr. Wang ***admitted*** to misleading equity investors.  (*Id.* ¶¶ 113, 116.)  They also allege that Ms. Ellison admitted to creating "materially misleading financial statements" and "quarterly balance sheets," and they allege that FTX used clean audit reports to give "legitimacy and credibility to FTX and SBF" in order "to curry favor with . . . ***investors*** and give them the sense that FTX could be entrusted with their money."  (*Id.* ¶¶ 113, 249 (emphasis added).)  And Plaintiffs themselves explain that SBF "faces over 100 years in prison for crimes predicated on his ***lying to investors*** and stealing billions of dollars of his customers' money."  (*Id.* ¶ 60 (emphasis added).)

The documents incorporated by reference in the Complaint likewise demonstrate FTX's deception of investors.  Plaintiffs premise much of their Complaint on plea allocutions, indictments, and complaints from the federal government's prosecutions and civil enforcement actions against FTX insiders.[10]  Those actions show that FTX lied to its investors.  The SEC's

---

[10] The Court may consider these documents because they are "referred to in the complaint" and "central to [Plaintiffs'] claim[s]," *Luke*, 975 F.3d at 1144; (*see* Compl. ¶¶ 43, 60, 67, 74, 84, 109,

complaint against SBF, as well its complaint against Ms. Ellison and Mr. Wang, describe in detail the fraud they perpetrated on FTX's equity investors, including material misstatements that SBF made to equity investors about FTX's relationship with Alameda.  (*See* Lawson Decl. Ex. 3 ¶ 29; *id.* Ex. 4 ¶ 33.)  As the SEC's complaint explains:

> From at least May 2019 through November 2022, [SBF] engaged in a scheme to defraud equity investors in FTX . . . , the crypto asset trading platform of which he was CEO and co-founder, at the same time that he was also defrauding the platform's customers.  [SBF] raised more than $1.8 billion from investors . . . who bought an equity stake in FTX believing that FTX had appropriate controls and risk management measures.  Unbeknownst to those investors (and to FTX's trading customers), [SBF] was orchestrating a massive, years-long fraud, diverting billions of dollars of the trading platform's customer funds for his own personal benefit and to help grow his crypto empire.

(*Id.* Ex. 3 ¶ 1.)  The DOJ's criminal indictment of SBF, whose trial is scheduled to begin in October 2023, likewise details "a pattern of fraudulent schemes that victimized FTX customers [and] investors."  (*Id.* Ex. 5 ¶¶ 1, 4, 7, 26.)  In fact, in a recent filing with this Court, the DOJ explained that, in contrast to the Complaint, its indictment of SBF alleges that FTX's investors "were victims of [SBF's] fraudulent scheme rather than being liable for it."  (ECF No. 247 at 3, 14.)

## VI.   Plaintiffs' Sparse Factual Allegations About the Multinational VCs Show No Wrongdoing of Any Kind.

The Complaint's 554 numbered paragraphs say very little about the Multinational VCs. Plaintiffs do not allege that any FTX customer had any contact with any of the Multinational VCs at any time.  Plaintiffs also do not allege what any of the eight Multinational VCs knew about FTX, much less details about who, how, or when.  And Plaintiffs do not even attempt to allege that the Multinational VCs had any decision-making authority at FTX or involvement in the day-to-day management of FTX, or any facts that even remotely suggest that any of the Multinational VCs

---

113, 115–16, 134, 136–37), and because they are public records, *see Universal Express*, 177 F. App'x at 53–54.

had a role in any wrongdoing or were even in a position to be able to detect the wrongdoing. Rather, Plaintiffs' handful of allegations about the Multinational VCs are innocuous.

**Sino Global Capital Limited and Sino Global Capital Holdings, LLC**: Plaintiffs allege that Defendant Sino Global Capital Limited (a non-served entity) "invested in" FTX and "operates in the United States" through its subsidiary, Defendant Sino Global Capital Holdings, LLC. (Compl. ¶ 34.)  There are no other allegations specific to Defendant Sino Global Capital Holdings, LLC in the Complaint.  Plaintiffs do not allege that Sino Global Capital Holdings, LLC invested in FTX or has any connection to FTX whatsoever.  Sino Global Capital Holdings, LLC is not even alleged to be part of the defined term "Sino Global."  (*Id.* ¶¶ 34, 253, 264.)  Plaintiffs identify a handful of statements purportedly made by Sino Global Capital Limited and its founder describing their positive relationship with and trust in FTX and SBF.  (*Id.* ¶¶ 34, 253, 264, 345, 358, 368, 371.)  Plaintiffs also allege that Sino Global Capital Limited, FTX, and Alameda had several co-investing arrangements (*id.* ¶¶ 34, 35, 253, 264, 315–18), that Sino Global Capital Limited recently hired a former FTX employee (*id.* ¶¶ 372–73), and that Sino Global Capital Limited held a portfolio of digital tokens, some of which were associated with SBF or FTX (*id.* ¶ 378).  Contrary to Plaintiffs' claims, all of these allegations suggest that Sino Global trusted SBF and FTX and ***was not aware*** of any misconduct.

**SoftBank**: Plaintiffs allege that Defendant SoftBank Group Corp. (a non-served entity) is the corporate parent of Defendant SB Group US, Inc.  (*Id.* ¶ 30.)  There are no other substantive allegations specific to Defendant SB Group US, Inc. in the Complaint.  Plaintiffs allege that SoftBank Group Corp. "invested in FTX through its SoftBank Vision Fund" and that SoftBank Vision Fund is "managed" by Defendants SoftBank Investment Advisers (UK) Limited and SoftBank Global Advisers Limited (both non-served entities).  (*Id.* ¶¶ 31, 33.)  SVF II Tempest

(DE) LLC, which is the only SoftBank entity that Plaintiffs allege invested in FTX (*id.* ¶ 31), is not named as a defendant.  In fact, no SoftBank Vision Fund entity is named as a defendant.

Plaintiffs' allegations regarding the SoftBank entities' connection to FTX are threadbare. The only allegations about any SoftBank entity relate to SoftBank Group Corp., which has not even been served.  Plaintiffs allege that SoftBank Group Corp. had two representatives on FTX's "advisory board."  (*Id.* ¶¶ 252, 263, 361, 366.)  Those representatives were allegedly "executives" from two different SoftBank entities: SoftBank Investment Advisers (UK) Limited and SoftBank Global Advisers Limited.[11]  (*Id.*)  Plaintiffs do not and cannot allege that the "advisory board"— which was made up of dozens of other individuals from FTX's various equity investors—had any decision-making authority.  Rather, it was a mechanism for FTX to provide investors with updates about the company.  (*See id.* ¶ 362.)  And Plaintiffs do not identify any specific information (let alone any wrongdoing) that was shared with the advisory board.

Plaintiffs also allege that SoftBank Group Corp. sent the Commodity Futures Trading Commission ("CFTC") a letter in support of LedgerX, LLC's application for a derivatives clearinghouse license.  (*Id.* ¶¶ 252, 263, 367; *see* Lawson Decl. Ex. 6.)[12]  Plaintiffs misleadingly suggest that the letter discussed risk management at "FTX," but the letter itself defined "FTX" as "LedgerX, LLC d.b.a. FTX US Derivatives."  (*See* Compl. ¶ 367; Lawson Decl. Ex. 6 at 1.) Plaintiffs admit that LedgerX, LLC was "regulated by the CFTC" and an "exception" to SBF's and Mr. Wang's control of FTX Group digital assets.  (Compl. ¶ 224; *see also* Lawson Decl. Ex. 2

---

[11] There are no other substantive allegations specific to Defendants SoftBank Investment Advisers (UK) Limited or SoftBank Global Advisers Limited in the Complaint.

[12] The Court may consider the letter in evaluating the Multinational VCs' motion because it is "referred to in the complaint" and "central to [Plaintiffs'] claim[s]."  *Luke*, 975 F.3d at 1144.

¶ 65 (same).)[13]  Plaintiffs do not allege that LedgerX, LLC was involved in FTX's misconduct.

**Temasek**: Plaintiffs allege that Defendant Temasek Holdings (Private) Limited "operates in North America primarily through" its subsidiary, Defendant Temasek International (USA) LLC. (Compl. ¶ 29.)  There are no substantive allegations specific to Defendants Temasek Holdings (Private) Limited or Temasek International (USA) LLC in the Complaint.  Rather, every substantive allegation related to a Temasek entity simply uses the term "Temasek" and thus impermissibly lumps together distinct corporate entities.  Plaintiffs claim that "Temasek" invested in FTX through "Artz Fund Investments Pte. Ltd.," a nonparty that Plaintiffs describe as one of "Temasek's many investment vehicles." (*Id.*)

Plaintiffs allege that Temasek had two representatives on FTX's "advisory board." (*Id.* ¶¶ 361, 363.)  But, as stated above, this "advisory board" was made up of dozens of individuals from FTX's various equity investors, and Plaintiffs do not and cannot allege that it had any decision-making authority.  Plaintiffs also allege that Temasek and its executives met with "SBF and other high-level personnel to discuss Temasek's investment in FTX and their partnership" (*id.* ¶ 349) and that "[p]ost investment, [Temasek] continued to monitor performance and engage management on business strategy, as well as legal, policy and regulatory matters" (*id.* ¶ 360). These allegations show nothing more than ordinary conduct by a financial investor, which has purchased a small minority stake, and there is simply nothing unusual or revealing about any of them.  Plaintiffs also rely on the allegation that a Temasek executive "was a featured speaker at the Crypto Bahamas April 2022 conference," which SBF and other FTX executives happened to

---

[13] Similarly, FTX's current CEO explained in FTX's bankruptcy proceedings that LedgerX, LLC is an "exception[]" to the risk management, internal controls, and corporate governance issues that he has identified at FTX.  (*See* Lawson Decl. Ex. 7 at 7.)  He has also stated under oath that LedgerX, LLC (1) is a "non-Debtor" in the bankruptcy proceedings, (2) "operates with licenses from the CFTC," and (3), to his knowledge, "is solvent."  (*See id.* Ex. 2 ¶ 13.)

attend (*id.* ¶¶ 363–65), and the following generic LinkedIn post from a Temasek executive about its investment in FTX: "Temasek is privileged to extend partnership with FTX and FTX US Derivatives.   Look forward to supporting continued growth of the business!"   (*Id.* ¶ 346). Plaintiffs' heavy reliance on these irrelevant allegations is revealing.

## VII. When FTX Collapsed, the Multinational VCs Lost Their Entire Investments— Hundreds of Millions of Dollars.

In mid-2022, the value of cryptocurrencies rapidly declined, and FTX experienced a liquidity crisis.  (*Id.* ¶¶ 125–26.)  On November 11, 2022, FTX filed for Chapter 11 bankruptcy, and SBF resigned as CEO.  (*Id.* ¶ 132.)  The DOJ and SEC have explained that, during this period, FTX insiders continued to mislead existing and potential investors that had previously been defrauded.  (*See* Lawson Decl. Ex. 5 ¶ 7; *id.* Ex. 3 ¶ 5; *id.* Ex. 4 ¶ 6.)

Upon the collapse of FTX, the Multinational VCs lost their entire investments, totaling hundreds of millions of dollars.  (*Id.* ¶ 382.)

## ARGUMENT

## I. The Complaint Should Be Dismissed Because Its Claims Against the Multinational VCs Are Implausible and Fail to Meet Basic Pleading Requirements.

### A. Plaintiffs' Claims Are Implausible.

Plaintiffs' claims should be dismissed because they defy common sense and are contradicted by Plaintiffs' own factual allegations.

Under Rule 8's pleading standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   And where, as here, a complaint contains allegations concerning fraud and Rule 9(b) applies, "the pleading requirements do not extend merely to plausibility, they demand plausibility based upon Rule 9(b)'s heightened degree of specificity." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015).  Assessing

the plausibility of a claim under these rules is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Here, Plaintiffs have no such specific facts and only speculate that the Multinational VCs had knowledge of FTX's misconduct because they "undertook a diligence process" before investing. (Compl. ¶ 319.)  Plaintiffs then make the unsupported logical leap to claiming that the Multinational VCs, armed with unspecified knowledge from unspecified diligence, "turned a blind eye" to FTX's fraud and invested "hundreds of millions of dollars" in a criminal enterprise. (*Id.* ¶ 388.)  According to Plaintiffs, those minority investments render the Multinational VCs liable for virtually all of FTX's misconduct. (*Id.* ¶ 11.)  Despite acknowledging that the Multinational VCs lost their investments, Plaintiffs also claim that the Multinational VCs somehow "***made exorbitant amounts of money***" as a result of FTX's fraud. (*Id.* ¶¶ 11, 382 (emphasis added).)

Those claims are not only false—they are preposterous.  Plaintiffs do not allege ***any facts*** showing that any diligence by the Multinational VCs uncovered any wrongdoing at FTX or that any of the Multinational VCs made any money from their FTX investment.  Instead, Plaintiffs admit that the FTX insiders lied to equity investors to get them to invest and that the Multinational VCs ***lost their entire investments*** as a result. (*See supra* at 6–7, 11.)  Plaintiffs' conclusory allegations about the Multinational VCs' supposed wrongdoing should be rejected because they are contradicted by the "specific factual" allegations in the Complaint, *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007), and the documents incorporated by reference, *see Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 932 F. Supp. 2d 1336, 1345 (S.D. Fla. 2013).

What's more, Plaintiffs' theory also ignores the fact that the Multinational VCs were, at most, small minority investors in FTX that had no control or decision-making authority at the

company.[14]  The Multinational VCs also had no direct or indirect contact with Plaintiffs, who were customers of FTX.  It makes no sense for FTX's customers to sue FTX's minority investors for alleged wrongdoing at FTX.  Nor does it make any sense why minority investors would risk their reputations and expose themselves to the "largest financial fraud in US history" by conspiring with FTX's insiders.  (Compl. ¶¶ 1, 29–35, 251–53, 262–64, 348); *see also In re Jiangbo Pharms., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1268 (S.D. Fla. 2012) (dismissing fraud claims because plaintiff's allegations were implausible "when compared with what the [defendant] auditor stands to lose by participating in fraud—its reputation and ability to secure further work").

At bottom, Plaintiffs have not "nudged" their claims against the Multinational VCs "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680.  "[J]udicial experience and common sense," which courts apply when evaluating nonsensical theories such as this one, dictate that Plaintiffs' claims should be dismissed with prejudice.  *Id.*

## B.    Plaintiffs' Complaint Is an Improper Shotgun Pleading.

The Complaint should be dismissed because it commits at least three "sins" of shotgun pleading.  *Lacayo v. Wells Fargo Bank, N.A.*, 2019 WL 8756577, at *4 (S.D. Fla. Sept. 23, 2019).

***First***, the Complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Plaintiffs' 195-page Complaint names eight entities as defendants.  Instead of breaking out which of the eight entities did what, when, and to whom, Plaintiffs conflate those legally distinct corporate entities as "SoftBank" and "Temasek" and often treat all eight defendants as one monolithic unit—the "Multinational VC Defendants."  Indeed, Plaintiffs'

---

[14] As noted above, some Multinational VCs are not even alleged to be investors in FTX, but only affiliates of investors.

nineteen causes of action lump together all of the "Multinational VC Defendants," make no effort to differentiate among the eight entities, and do not plead facts specific to any individual defendant. (*See* Compl. ¶¶ 407–554.)  That fails to satisfy even the minimum standards required by Rule 8. *See Lane v. Cap. Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006).

**Second**, the Complaint is "replete with conclusory, vague, and immaterial" allegations. *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021).  The large majority of the Complaint consists of allegations and legal arguments that are unrelated to the Multinational VCs. The allegations that do mention the Multinational VCs are almost entirely conclusory or vague claims about their supposed misconduct or knowledge, unsupported by specific factual allegations.

**Third**, each count in the Complaint impermissibly "adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland*, 792 F.3d at 1321; (*see* Compl. ¶¶ 407, 415, 426, 435, 446, 455, 458, 464, 469, 475, 480, 489, 496, 511, 519, 526, 534, 542, 550).  That problem is exacerbated by the length of Plaintiffs' Complaint—195 pages and 554 numbered paragraphs—and the fact that most of the incorporated paragraphs amount to "immaterial facts not obviously connected to any particular cause of action."  *Weiland*, 792 F.3d at 1322.  Indeed, "Plaintiff's lack of factual delineation makes it impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief."  *Rattner v. 1809 Brickell LP*, 2022 WL 4770402, at *4 (S.D. Fla. Aug. 23, 2022) (Moore, J.) (quotations omitted).

Because the Complaint is the kind of "quintessential 'shotgun' pleading" that the Eleventh Circuit has "condemned repeatedly," it should be dismissed.  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

### C.      Plaintiffs Fail to Allege Fraud with Particularity Under Rule 9(b).

Rule 9(b)'s heightened pleading standard applies to the fourteen claims (Counts 2 and 4–

16) that sound in fraud. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019); (*see also infra* at 19, 22, 26, 28, 30, 33, 34, 36, 38). Rule 9(b) requires Plaintiffs to state with particularity the circumstances constituting the fraud, meaning "(1) precisely what statements were made . . . or what omissions were made"; (2) "the time and place of each such statement and the person responsible for making" or "not making" it; (3) "the content of such statements and the manner in which they misled the plaintiff"; and (4) "what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Plaintiffs' shotgun pleading fails to allege any such facts. Plaintiffs do not identify the specific misrepresentations that serve as the basis for each of their claims, when and where those statements were made, or by which individual defendants. For that reason alone, the claims must be dismissed. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (affirming dismissal under Rule 9(b) because plaintiffs "lumped together all of the defendants in their allegations of fraud"); *Morchem Indus. v. Rockin Essentials LLC*, 2021 WL 5014105, at *4–5 (S.D. Fla. June 16, 2021) (Moore, J.) (dismissing complaint under Rule 9(b) because it "fail[ed] to state the time and place of the alleged statements," "which specific Defendant" made them, and "how exactly these representations were communicated to Plaintiff").

## II.   Plaintiffs' Unregistered Securities Claims (Counts 1 and 3) Should Be Dismissed.

Plaintiffs' claims based on the alleged sale of unregistered securities (Compl. ¶¶ 407–14 (Count 1), 426–34 (Count 3)) border on frivolous. Plaintiffs do not allege that the Multinational VCs themselves sold securities—registered or otherwise—to anyone. Plaintiffs instead allege that **FTX** offered and sold unregistered securities (*id.* ¶¶ 412, 428) and that the Multinational VCs are secondarily liable under Florida and California law (*id.* ¶¶ 413–14, 428).[15] Those claims should

---

[15] Plaintiffs' unregistered securities and securities fraud claims are premised on the assertion that the "FTX Platform," "YBAs," and "FTT" are securities. (Compl. ¶¶ 410, 418, 428, 438.) Because

be dismissed for multiple independent reasons.

### A.      Counts 1 and 3 Fail Because the Multinational VCs Did Not Participate in or Materially Aid the Sale of Unregistered Securities.

To state a claim for the sale of unregistered securities, Plaintiffs must show that the Multinational VCs personally participated in the sale.  Fla. Stat. § 517.211; Cal. Corp. Code § 25504.1.  Under Florida law, that means a defendant must have "actively and directly, rather than passively, derivatively, or by attribution or imputation, influence[d] or induce[d] the investor to buy" unregistered securities.  *Papadopoulos v. Sidi*, 2007 WL 9700707, at *6 (S.D. Fla. Jan. 8, 2007); *see Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996) (Moore, J.).  Under California law, a defendant must have "materially assist[ed]" the sale of unregistered securities.  Cal. Corp. Code § 25504.1.  It is "not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws."  *AREI II Cases*, 216 Cal. App. 4th 1004, 1014 (2013).  In other words, "[t]he complaint must include allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities."  *Id.* at 1015.

Plaintiffs do not come close to showing that any of the Multinational VCs participated in any securities sales.  The Complaint does not: (i) identify a single statement by any of the Multinational VCs encouraging *anyone* to purchase *anything*; (ii) allege that the Multinational VCs even mentioned YBAs or FTT in a public statement; (iii) allege that the Multinational VCs had any direct contact, much less privity, with any of the Plaintiffs or members of the Class; or

---

Plaintiffs' allegations against the Multinational VCs are insufficient to state a claim regardless, this Court need not determine for purposes of this motion whether "FTX Platform," "YBAs," and "FTT" are unregistered securities or even securities at all.

(iv) identify when any of the Plaintiffs allegedly became FTX customers, opened YBAs, or bought FTT.  There are simply "no allegations in the . . . Complaint that support the claim that [the Multinational VCs] had any part in inducing the purchase of" a security.  *Hines v. FiServ, Inc.*, 2010 WL 1249838, at *6 (M.D. Fla. Mar. 25, 2010).

**B.     Count 1 Also Fails Because the Multinational VCs Were Not Directors, Officers, Partners, or Agents of FTX.**

Florida law extends secondary liability for a sale of unregistered securities only to "director[s], officer[s], partner[s], or agent[s]" of FTX.  Fla. Stat. § 517.211; *see also J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 329 (Fla. Dist. Ct. App. 2017).  Here, Plaintiffs conclusorily allege that the Multinational VCs "are directors, officers, partners and/or agents of" FTX (Compl. ¶ 413) but fail to identify any facts that support that claim.  Plaintiffs' "conclusory allegations," unsupported by facts, fail to show that any of the Multinational VCs held any of the statutorily required roles.  *Hines*, 2010 WL 1249838, at *6–7.

In fact, the more specific allegations in the Complaint show the opposite.  Plaintiffs allege that none of the Multinational VCs held more than a 2% stake in FTX.[16]  The Multinational VCs' representation on FTX's advisory board, where they are only alleged to have received unspecified updates on FTX's operations, is consistent with their roles as passive minority equity investors.  Plaintiffs do not and cannot allege that FTX had actual or apparent "control" over the Multinational VCs or that the Multinational VCs had actual or apparent authority to "act for" FTX.  *Rubin v. Gabay*, 979 So. 2d 988, 990–91 (Fla. Dist. Ct. App. 2008).

---

[16] Plaintiffs impermissibly group the Sino Global, Temasek, and SoftBank entities together when describing the Multinational VCs' investments in FTX.  (*See* Compl. ¶ 315.)  To be clear, each of the three **groups** of defendants, in aggregate, owned less than 2% of FTX.  Many of the **individual** Multinational VCs are not alleged to have invested in or owned any portion of any FTX entity.

**C.      Count 3 Also Fails Because Plaintiffs Fail to Allege an "Intent to Deceive or Defraud."**

California law requires that Plaintiffs allege that the Multinational VCs materially assisted in the sale of unregistered securities "with intent to deceive or defraud."  *SIC Metals, Inc. v. Hyundai Steel Co.*, 2018 WL 6842958, at *5 (C.D. Cal. Nov. 14, 2018); Cal. Corp. Code § 25504.1. There are no factual allegations that show that the Multinational VCs had the intent to deceive or defraud anyone.  As explained above, they are victims—not perpetrators—of FTX's misconduct.

In addition, Plaintiffs do not adequately allege that the Multinational VCs had "actual knowledge" that FTX "offered and sold unqualified, non-exempt securities and/or investment contracts to Plaintiffs."  *Markowitz v. Diversified Lending Grp., Inc.*, 2010 WL 11507662, at *4 (C.D. Cal. Feb. 26, 2010).  With no factual basis whatsoever, Plaintiffs merely speculate that the Multinational VCs would have understood that FTX was selling unregistered securities because of "their knowledge of securities laws and regulations" and the "financial industry," and their "understanding of FTX's operations and intentions."  (Compl. ¶ 429.)  Federal courts have routinely found that "knew or should have known allegations" such as these are insufficient to plead actual knowledge.  *Hammett v. Sherman*, 2020 WL 1332591, at *9 (S.D. Cal. Mar. 23, 2020).

**D.      Plaintiffs' Unregistered Broker-Dealer Claim (Count 3) Fails.**

Plaintiffs also include a claim under Cal. Corp. Code Section 25210(b), which prohibits inducing or attempting to induce another party to engage in the purchase or sale of any security with an unregistered broker-dealer.  (Compl. ¶¶ 430–32.)  To state such a claim, Plaintiffs must allege "privity" with the Multinational VCs.  *Hollifield v. Resolute Cap. Partners Ltd.*, 2023 WL 2628675, at *6 (C.D. Cal. Feb. 14, 2023) (explaining that § 25501.5, which provides the private right of action for § 25210(b), requires privity).  But none of the Multinational VCs is "alleged to have advised others on the purchase or sale of securities, nor are they alleged to have engaged in

any securities transactions as broker-dealers." *Konopasek v. Ten Assocs.*, 2018 WL 6177249, at *5 (C.D. Cal. Oct. 22, 2018).

Plaintiffs also suggest that Section 25504.1 creates secondary liability for those who "materially assisted" in violations of Section 25210(b) "with intent to deceive or defraud." (Compl. ¶¶ 430, 433.) Not so. Section 25504.1 lists the provisions to which it applies, and Section 25210 is not among them. Regardless, any claim under Section 25504.1 would fail because, as explained above, the Multinational VCs did not "materially assist" in any sale of securities or act "with intent to deceive or defraud." (*See supra* at 16–18.)

## III.    Plaintiffs' Securities Fraud Claims (Counts 2, 4, 5, and 6) Should Be Dismissed.

Plaintiffs' claims for securities fraud and market manipulation (Compl. ¶¶ 415–25 (Count 2), 435–57 (Counts 4, 5, and 6)) are meritless for similar reasons. Those claims are governed by Rule 9(b)'s heightened pleading requirements. *See Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011); *Abdo v. Fitzsimmons*, 2018 WL 11220494, at *25 (N.D. Cal. May 22, 2018); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *13 (N.D. Cal. Sept. 14, 1998). Plaintiffs again do not allege that the Multinational VCs are directly liable for securities fraud and do not attribute any supposedly misleading statements to the Multinational VCs. (*See* Compl. ¶¶ 419, 422, 438–39, 441, 449, 452.) Instead, Plaintiffs allege that the Multinational VCs are secondarily liable under Florida (Count 2) and California (Counts 4, 5, and 6) law. Those claims all fail on multiple independent grounds.

### A.    Counts 2, 4, and 5 Fail Because the Multinational VCs Did Not Participate or Materially Assist in FTX's Alleged Securities Fraud.

Plaintiffs must allege that the Multinational VCs "personally participated" (*Id.* ¶ 417 (Count 2); Fla. Stat. § 517.211), "materially assist[ed]" (Compl. ¶ 437 (Count 4); Cal. Corp. Code § 25504.1), or "willfully participate[d]" (Compl. ¶ 447 (Count 5); Cal. Corp. Code § 25500) in

FTX's securities fraud.  They fail to do so.

The Complaint does not contain any factual allegations "demonstrating how the [Multinational VCs] assisted in the act of selling or offering to sell securities by means of false and misleading statements." *Calderon v. Total Wealth Mgmt., Inc.*, 2018 WL 1621397, at *3 (S.D. Cal. Apr. 4, 2018) (emphasis omitted).  The alleged misrepresentations that serve as the basis for these claims were allegedly made by FTX or SBF, ***not the Multinational VCs***.  (*See* Compl. ¶¶ 419, 422, 438–39, 441, 449, 452.)  Plaintiffs do not allege that the Multinational VCs had ***any involvement*** in the statements containing the alleged misrepresentations, much less that they made the statements in connection with the act of selling or offering to sell securities.

Plaintiffs suggest that the Multinational VCs "materially assisted [in] the scheme to sell unregistered securities" by "providing SBF [with] the capital for the fraudulent scheme" and "providing their reputations" to support the fraudulent scheme.  (*Id.* ¶ 443.)  This threadbare allegation does not even rise to the level of alleging that the Multinational VCs "provided material assistance in a larger scheme to defraud," which would in any event be insufficient to state a claim. *AREI II Cases*, 216 Cal. App. 4th at 1014; *see also Carran v. Morgan*, 2007 WL 3520480, at *4 (S.D. Fla. Nov. 14, 2007) ("[N]o amount of involvement with the business of the seller will overcome the absence of personal participation or aid in the making of the sale.").  The same is true for Plaintiffs' claim that the Multinational VCs "partner[ed] with SBF and both FTX and Alameda in investment entities."  (Compl. ¶ 443.)

Plaintiffs also claim that the Multinational VCs provided "false assurances of due diligence to garner trust in SBF, FTX and these securities."  (*Id.*)  But Plaintiffs fail to identify any statements by Sino Global or SoftBank regarding their specific due diligence on FTX, let alone statements made to any of the Plaintiffs.  And Temasek's statements about its due diligence were made only

*after* FTX's collapse.  (*See supra* at 5.)  Plaintiffs also fail to explain why any of the Multinational VCs' statements regarding diligence are false.  In any event, to the extent Plaintiffs' claim is that the Multinational VCs "promote[d] or advise[d] use of" FTX through statements about their due diligence, that would be insufficient to state a claim.  *Calderon*, 2018 WL 1621397, at *4.

### B.     Counts 2, 4, 5, and 6 Fail Because Plaintiffs Do Not Sufficiently Allege That the Multinational VCs Acted with Scienter.

For Counts 4, 5, and 6, California law limits liability to those who act with knowledge or intent to deceive or defraud.  *See OCG Energy, LLC v. Shen*, 2023 WL 2628689, at *7 (C.D. Cal. Jan. 11, 2023); *California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 112 (2001); Cal. Corp. Code §§ 25500, 25504, 25504.1.  For Count 2, "[t]he scienter requirement under Florida law is . . . negligence."  *Arnold*, 839 F. Supp. 2d at 1286.

Plaintiffs fail to plausibly allege that the Multinational VCs acted negligently, much less with knowledge or intent.  Plaintiffs summarily allege that, "[b]ased on their knowledge of the financial industry, with a focus on serving crypto clients, and their understanding of FTX's operations obtained through diligence, ongoing monitoring and/or hands-on partnership, the Multinational VC Defendants acquired knowledge" of FTX's misconduct.  (Compl. ¶¶ 422, 441, 452.)   However, Plaintiffs do not include a single factual allegation indicating that the Multinational VCs were even on notice of FTX's alleged misconduct.  Instead, as discussed above, Plaintiffs' allegations actually show that ***FTX deceived and defrauded the Multinational VCs*** throughout the due diligence process and up until FTX collapsed.  For example, the Complaint shows that the Multinational VCs were misled about SBF's self-dealing, Alameda's relationship with FTX, and other misconduct at FTX.  In the face of these inconsistent, more specific allegations, Plaintiffs' unsupported theory that the Multinational VCs and other venture capital

firms knew of FTX's fraud but nevertheless decided to pour billions of dollars into the enterprise makes no sense.

### C.    Counts 2 and 6 Should Be Dismissed Because the Multinational VCs Are Not Directors, Officers, Partners, Agents, or Control Persons of FTX.

For Count 2, Plaintiffs must allege that the Multinational VCs are "director[s], officer[s], partner[s], or agent[s]" of FTX, as required under Florida law.  Fla. Stat. § 517.211.  For Count 6, California law requires that Plaintiffs allege that the Multinational VCs "directly or indirectly control[led]" FTX.  Cal. Corp. Code § 25504.  Plaintiffs do not allege facts showing that any specific Multinational VC held any of those positions.  Nor could they—the Multinational VCs were, at most, small passive investors in FTX.

### IV.    The Complaint Fails to State a Claim for Conspiracy (Count 7).

Whether Plaintiffs pursue a claim for conspiracy under Florida or California law, their claims fail because they do not satisfy the demanding pleading requirements imposed by Rule 9(b).

"Civil conspiracy is not an independent cause of action; it is a liability spreading device based upon a viable underlying cause of action." *Apex Toxicology, LLC v. United HealthCare Servs., Inc.*, 2020 WL 13551299, at *2 (S.D. Fla. July 7, 2020); *see also Ting v. United States*, 927 F.2d 1504, 1514–15 (9th Cir. 1991) (explaining that civil conspiracy is not an independent tort under California law).  Furthermore, "[w]here a civil conspiracy claim sounds in fraud, like here, it is subject to the heightened pleading standard of Rule 9(b)." *Apex Toxicology*, 2020 WL 13551299, at *3.  This enhanced pleading standard requires Plaintiffs to "set forth clear, positive, and specific allegations of civil conspiracy," including "an agreement between two or more parties" to "do an unlawful act or to do a lawful act by unlawful means." *Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *6 (S.D. Fla. Sept. 26, 2018); *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006) (providing similar elements for civil conspiracy under California law).

The Complaint's allegations do not supply with sufficient particularity "the required who, what, where, when, [and] how of the alleged conspiracy" involving the Multinational VCs. *Beigualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 WL 4434891, at *6 (S.D. Fla. Sept. 23, 2011).  Indeed, the Complaint fails to allege at all—even in non-particular terms—the "times," "dates," and "places" where the Multinational VCs allegedly agreed and conspired with each other and with FTX and/or SBF to defraud Plaintiffs.  *Meridian Tr.*, 2018 WL 4693533, at *6; *see also Lachapelle v. Kim*, 2015 WL 5461542, at *7 (N.D. Cal. Sept. 16, 2015) (rejecting similarly lacking allegations as insufficient even under *Twombly* and *Iqbal*).  Instead, Plaintiffs' non-specific allegations that the Multinational VCs "publicly endorsed," provided funding to, and "worked closely" with SBF (Compl. ¶¶ 314–16) defy Rule 9(b)'s particularity requirement not only because they are entirely vague but also because they "lump[]" the Multinational VCs together and thereby "lack[] specificity" as to any entity.  *Apex Toxicology*, 2020 WL 13551299, at *3.

The closest Plaintiffs come to alleging ***any*** kind of agreement is their claim that non-served entity Sino Global "took in" funds from Alameda and "partnered" with FTX in building one of its funds.  (*See* Compl. ¶¶ 315–17.)  But even that is not an agreement between Sino Global and FTX to commit any improper act.  Regardless, Plaintiffs' conclusory claim that the Multinational VCs entered into a conspiracy with FTX and/or SBF is fatally undermined by Plaintiffs' own allegations that FTX and SBF **defrauded** the Multinational VCs.  *See Nuwave, Ltd. v. Argyle Equities, LLC*, 2007 WL 3130443, at *4 (M.D. Fla. Oct. 24, 2007) (dismissing conspiracy claim in part because "the facts, as alleged by Plaintiffs, show that Defendants made a loan that went bad and that they, too, were victims of the alleged fraud, rather than co-conspirators").  As a result, Plaintiffs' civil conspiracy claim should be dismissed.

## V.     The Complaint Fails to State Any Aiding and Abetting Claim (Counts 8, 9, and 10).

Plaintiffs assert three common law claims against all eight Multinational VCs for allegedly

23

aiding and abetting FTX's and/or SBF's alleged fraud, breach of fiduciary duty, and conversion. (Compl. ¶¶ 464–79.)   A claim for aiding and abetting a common law tort requires Plaintiffs to establish "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor."   *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012) (applying Florida law); *see also Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005) (same under California law).   Here, Plaintiffs' Complaint is entirely devoid of specific allegations that the Multinational VCs had actual knowledge of FTX's alleged fraud, fiduciary breaches, or conversion, or that the Multinational VCs substantially assisted FTX in those acts.

### A.     The Complaint Does Not Establish Any Multinational VC's Actual Knowledge of FTX's Alleged Wrongdoing.

The Complaint concludes that the Multinational VCs must have known about FTX's wrongdoing because they would have conducted routine due diligence prior to investing in FTX. (*See, e.g.*, Compl. ¶ 36.)   But each of the aiding and abetting claims requires proving ***actual*** knowledge; mere allegations that the Multinational VCs "should have known" or "must have known" about FTX's wrongdoing do not suffice.   *See, e.g.*, *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332–33 (S.D. Fla. 2012) (distinguishing between "actual knowledge" as opposed to constructive knowledge); *Casey*, 127 Cal. App. 4th at 1146–47 (stating that aiding and abetting "necessarily requires a defendant to reach ***a conscious decision to participate in tortious activity*** for the purpose of assisting another in performing a wrongful act" and that "suspicion and surmise do not constitute actual knowledge").

Yet, impermissible "should have known" allegations are all that Plaintiffs offer—that the Multinational VCs ***should have*** spotted some unspecified red flag that FTX and/or SBF were

engaged in wrongdoing.  Courts have repeatedly held that "red flags or aroused suspicions do not constitute actual awareness of one's role in a fraudulent scheme."  *Meridian Tr.*, 2018 WL 4693533, at \*6; *see also Wang v. Revere Cap. Mgmt., LLC*, 2023 WL 2198570, at \*5 (S.D. Fla. Feb. 15, 2023) (dismissing aiding and abetting claim premised on the allegation that defendants should have known about misconduct from "due diligence and underwriting documents"), *R&R adopted*, 2023 WL 2183382 (S.D. Fla. Feb. 22, 2023); *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at \*13 (M.D. Fla. Aug. 22, 2019) (distinguishing "***having*** information from which one ***could*** or even should deduce the existence of fraud, and actually ***making*** that deduction"); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244–45 (M.D. Fla. 2013) (noting that red flags "do not create a strong inference of actual knowledge of wrongdoing" (quotations omitted)); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504, 557, 579 (S.D. Tex. 2011) (accepting argument that "Plaintiffs' conclusory statements and references to . . . Deutsche Bank's passive investment in LJM2 [did not] show actual knowledge of any fraud").

Moreover, it is implausible to suggest that the Multinational VCs ***should have*** spotted red flags indicating wrongdoing at FTX (when nobody else did) before the fraud finally unraveled. That is particularly true given that Plaintiffs' own allegations demonstrate that FTX concealed its wrongdoing from the Multinational VCs.  *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018) ("[F]actual allegations that [the underlying tortfeasors] intentionally concealed the scheme lend support to the proposition that the Defendants did not have actual knowledge of [the tortfeasors'] breach of fiduciary duty.").

### B.   The Complaint Does Not Plead Facts Showing That Any of the Multinational VCs Substantially Assisted in FTX's Misconduct.

Plaintiffs also fail to allege facts indicating that the Multinational VCs provided substantial assistance to FTX and its insiders' alleged underlying torts.  Plaintiffs assert that the Multinational

VCs provided funding for SBF's fraudulent scheme and "supplied FTX with hands-on support, partnership, guidance, infrastructure, networks, endorsements, promotion, publicity, cover and other assistance vital to the fraud." (Compl. ¶ 306.) Without more, the bare allegation that the Multinational VCs invested in FTX and provided unspecified "support," "partnership," and "guidance" to FTX (*id.*) does not suffice to constitute knowing substantial assistance to FTX's fraud, *see McGraw Co. v. Aegis Gen. Ins. Agency*, 2016 WL 3745063, at *6 (N.D. Cal. July 13, 2016) (dismissing "general" and "conclusory" allegations about provision of "material support" because "the substantial assistance prong of a claim that defendant aided and abetted the commission of a fraud must be pled with heightened specificity"); *see also LBS Petrol., LLC v. Demir*, 2015 WL 12469064, at *11 (S.D. Fla. Oct. 28, 2015) (similar); *Groom v. Bank of Am.*, 2012 WL 50250, at *4 (M.D. Fla. Jan. 9, 2012) (rejecting allegation that defendant aided and abetted fiduciary breach by loaning primary violator money because there was "no allegation that the banks knew [primary violator] would use the borrowed funds in his fraudulent scheme").

To the extent that Plaintiffs allege the Multinational VCs assisted in FTX's wrongdoing by "turn[ing] a blind eye" (Compl. ¶ 388), that is insufficient to support their aiding and abetting claims. "[M]ere inaction constitutes substantial assistance only if the defendant owes a fiduciary duty directly to plaintiff." *Meridian Tr.*, 2018 WL 4693533, at *5; *see also ARB, Inc. v. Luz Const., Inc.*, 1992 WL 164487, at *3 (9th Cir. July 16, 1992) ("Substantial assistance requires an affirmative act; a mere failure to disclose cannot be the basis for liability unless the party failing to disclose owes a fiduciary or statutory duty of disclosure."). Plaintiffs do not, and cannot, claim that any Multinational VC had a fiduciary relationship with any customer of FTX. Indeed, Plaintiffs have ***no connection*** to the Multinational VCs. As passive minority investors in FTX,

the Multinational VCs had "no duty to protect a third-party . . . from alleged fraud or theft." *Meridian Tr.*, 2018 WL 4693533, at \*5.

The Multinational VCs' small minority equity investments in FTX were also not a substantial factor in furthering FTX's alleged fraudulent scheme, which Plaintiffs maintain "is the largest financial fraud in US history." (Compl. ¶ 1); *see Richter v. Wells Fargo Bank NA*, 2015 WL 163086, at \*3 (M.D. Fla. Jan. 13, 2015) (stating that "substantial assistance will not be found where the amount of assistance alleged is minor in comparison to the massive scope of the overall fraudulent scheme" (quotations and alterations omitted)). That is further, independent grounds to dismiss each of Plaintiffs' aiding and abetting claims.

## VI. Plaintiffs' California Unfair Competition Law Claim (Count 11) Should Be Dismissed.

Plaintiffs bring a claim under Section 17200 of the California Unfair Competition Law ("UCL"), which provides a remedy for injuries resulting from unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 *et seq.* That claim also fails for multiple independent reasons.

### A. Plaintiffs' UCL Claim Should Be Dismissed Because It Relates to "Securities Transactions."

It is well settled that the UCL "does not apply to securities transactions." *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004); *Kainos Labs.*, 1998 WL 2016634, at \*17–18 (dismissing UCL claim premised on "securities transactions"). Here, Plaintiffs' UCL claims are nearly identical to their securities fraud and unregistered securities claims. (*See* Compl. ¶ 482 (claiming that the Multinational VCs misled consumers "into purchasing, depositing, and/or transacting in fiat currency and digital assets with accounts with FTX").) Because Plaintiffs' "theory unavoidably focuses on the purchase of securities," the claim should be dismissed with prejudice. *S.F. Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 834 (N.D. Cal. 2011).

### B.    Plaintiffs Lack Standing Under the UCL.

To establish standing under the UCL, Plaintiffs must demonstrate that they "suffered injury in fact and [] lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *Ginsberg v. Google Inc*., 586 F. Supp. 3d 998, 1007 (N.D. Cal. 2022).  In other words, the UCL requires a plaintiff to allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct."  *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (quotations omitted).  While a plaintiff need not demonstrate that the defendant's misrepresentations were "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentations must have "played a substantial part" in the plaintiff's decision-making.  *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1208 (N.D. Cal. 2017).  "Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Plaintiffs fail to identify any misrepresentation, much less allege that some misrepresentation by the Multinational VCs caused Plaintiffs' injuries.

***First***, Plaintiffs do not point to ***any*** misrepresentations by the Multinational VCs.  Rather, they point to factual statements regarding Temasek and Sino Global's investments in FTX.  (*See, e.g.*, Compl. ¶ 346 ("Temasek is privileged to extend partnership with FTX and FTX US Derivatives.   Look forward to supporting continued growth of the business!"); *id.* ¶ 345 ("Absolutely ecstatic to let you know that Sino Global Capital participated in FTX's Series B round (in retrospect, it was inevitable).").)  They allege even less about SoftBank.  Aside from the letter submitted by the non-served entity SoftBank Group Corp. to the CFTC regarding LedgerX, LLC—a regulated entity that Plaintiffs do not allege was involved in FTX's misconduct— Plaintiffs do not identify ***a single statement*** made by ***any SoftBank entity*** regarding any entity affiliated with FTX.  (*See supra* at 8–10.)

Plaintiffs also cannot state a claim based on alleged omissions.  That theory requires an omission "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose."  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012).  Plaintiffs do not allege any contrary representations.  Nor do Plaintiffs even attempt to allege that any of the Multinational VCs had any disclosure obligation.

**Second**, Plaintiffs do not allege that any statement or omission by the Multinational VCs was an immediate cause of Plaintiffs' injuries.  Plaintiffs make the general claims that the Multinational VCs' practices "misle[d] . . . consumers acting reasonably" and that the Multinational VCs "deceived the public" (Compl. ¶¶ 482, 484), but they fail to allege any specific facts whatsoever in support of those claims.  Rule 9(b) requires Plaintiffs to affirmatively allege with specificity the circumstances of the supposed misrepresentation upon which they relied.  *See Kearns*, 567 F.3d at 1126 (dismissing UCL claim because plaintiff failed to identify specific misstatements, when he was exposed to them, which ones he found material, and which ones he relied on in deciding to purchase the defendant's product); *see also Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1081–82 (N.D. Cal. 2014) (similar).  "[I]f [p]laintiffs did not see the specified representations before they purchased [d]efendant's services, then [p]laintiffs did not rely on these representations and suffered no injury."  *SuccessfulMatch.com*, 70 F. Supp. 3d at 1082.

Plaintiffs' UCL claim falls woefully short of this demanding standard.  Plaintiffs do not even allege that they (or **any** specific consumers) saw or read any statements from the Multinational VCs, much less plead with particularity which statements they saw, when and where they saw those statements, and whether hearing or reading the statements influenced their decision to utilize the FTX platform or purchase or transact in any specific crypto asset.  Nor do Plaintiffs identify which, if any, statements were made prior to the Plaintiffs transacting with FTX.  Indeed,

they fail to allege that the supposed misrepresentations were a factor ***at all*** in their decision to transact on the FTX platform.  Plaintiffs' UCL claim should therefore be dismissed.

### C.     Plaintiffs Fail to Plead Fraud, Unfairness, or Unlawfulness Under the UCL.

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.  Plaintiffs do not adequately allege any of these bases for a UCL claim.

**<u>Fraudulent</u>**.  Under the "fraudulent" prong of the UCL, conduct is considered deceptive or misleading if the conduct is "likely to deceive" a "reasonable consumer." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021).  Fraud-based UCL claims are subject to the particularity standards of Rule 9(b), which require specific factual pleading that indicates why allegedly fraudulent statements are false or misleading. *Kearns*, 567 F.3d at 1125.

Plaintiffs fail to allege why the Multinational VCs' generic statements regarding their investments in FTX would be considered deceptive or misleading.  Plaintiffs make nebulous claims about the Multinational VCs' influence as large venture capitalists and allege that their investments lent legitimacy to FTX and SBF.  (Compl. ¶¶ 304, 343.)  But those allegations fall short of the heightened Rule 9(b) pleading standard.  The mere act of the Multinational VCs investing in FTX cannot possibly be conduct that is likely to deceive a reasonable consumer.  If that were the case, then every company that ever raised venture capital would be deemed vouched for as safe for consumers to use, purchase, or consume.  That is absurd.

**<u>Unfair</u>**.  Plaintiffs' unfairness claims "overlap entirely with their claims of fraud" under the UCL and should be dismissed for the same reasons. *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009); *see also Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016).  Plaintiffs repeat their allegations regarding the Multinational VCs' "conduct with respect to the marketing and promotion of FTX" that supposedly induced Plaintiffs

to "purchase[], transact[], and/or deposit[] fiat currency and digital assets with accounts with FTX." (Compl. ¶ 485.) For the reasons stated above, this entirely overlapping claim should be dismissed.

**Unlawful**. Plaintiffs base their "unlawful" allegations on predicate violations of Cal. Corp. Code Section 25504.1 and California's False Advertising Law. (*Id.* ¶ 483.) As discussed above and below, those claims separately fail. (*See supra* at 16–22; *infra* at 32–33.) Plaintiffs' claim that the Multinational VCs' conduct was "unlawful" in violation of the UCL thus fails as well. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

### D.    Plaintiffs' UCL Claim Fails Because They Seek an Inappropriate Remedy.

To state a claim under the UCL, Plaintiffs must allege that they "lack[] an adequate remedy at law." *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1216 (S.D. Fla. 2022). At bottom, Plaintiffs claim that they paid into the FTX platform and were injured in the amount of their lost investments. (*See* Compl. ¶¶ 13–28, 389, 508.) Because money damages would remedy those alleged injuries, Plaintiffs' UCL claim should be dismissed. *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *7–8 (N.D. Cal. Mar. 29, 2021).

In any event, Plaintiffs are not entitled to restitution or injunctive relief. Restitution is inappropriate because the Multinational VCs do not have possession of anything that belongs to Plaintiffs. *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) ("Restitution requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." (quotations omitted)). To establish standing to pursue "injunctive relief . . . [plaintiffs] must demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotations omitted). Here, the FTX platform is no longer functioning, SBF is facing criminal prosecution, and FTX's bankruptcy proceedings are in progress.

**E.   Plaintiffs' UCL Claim Fails Because It Is Not Sufficiently Connected to California.**

The UCL "does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000).   Courts have allowed out-of-state purchasers to sue California defendants, but only when there was alleged misconduct within California. *See Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1230 (S.D. Fla. 2010).   Here, Plaintiffs are from multiple countries and states, with only some residing in California.  The Multinational VCs, on the other hand, are based in Singapore, Tokyo, and Hong Kong.  (Compl. ¶¶ 29, 30, 34.)  Plaintiffs allege that certain Multinational VCs have offices in California, among other places (*id.*), but do not allege (nor could they) that any of the Multinational VCs are headquartered in California or committed any alleged misconduct within California.  Because the Complaint fails to allege a sufficient nexus with California, Plaintiffs' UCL claim should be dismissed.  *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1327 (S.D. Fla. 2009).

**VII.   Plaintiffs' California False Advertising Law Claim (Count 12) Should Be Dismissed.**

Plaintiffs' California False Advertising Law ("FAL") claim fails for four independent reasons.  *First*, like Plaintiffs' UCL claim, the FAL "does not apply to securities transactions." *See Kainos Labs.*, 1998 WL 2016634, at *17–18 (dismissing FAL claim premised on "securities transactions"); *Bowen*, 116 Cal. App. 4th at 788 (dismissing UCL claim based on securities transactions).   Again, Plaintiffs' entire theory is that the Multinational VCs were involved in securities transactions.  Their FAL claim should be dismissed for that reason alone.

*Second*, an FAL claim must be based on an allegation that members of the public are likely to be deceived by an untrue or misleading advertisement.  *See McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1388 (2005).   General and conclusory statements that defendants

disseminated deceptive advertisements and statements are insufficient to allege an FAL claim. *See Zarrella*, 755 F. Supp. 2d at 1240. Instead, Plaintiffs' FAL claim must meet Rule 9(b)'s heightened pleading requirements. *See Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2023 WL 2768453, at *7 (N.D. Cal. Mar. 9, 2023).

At its core, an FAL claim requires "some type of advertising statement." *Balzer v. Wal-Mart Stores, Inc.*, 2015 WL 13828418, at *3 (C.D. Cal. Feb. 25, 2015). As a result, Plaintiffs "must adequately describe the purported advertising in question." *Id.* Plaintiffs' Complaint is devoid of any factual allegation that any of the Multinational VCs made ***any*** advertising statement. Instead, Plaintiffs point to cherry-picked factual social media posts regarding some of the Multinational VCs' investments in FTX (Compl. ¶¶ 346, 345) and resort to vague, unsubstantiated claims that the Multinational VCs "touted the purported safety, trustworthiness, and favorable risk profile of the FTX Platforms" (*id.* ¶ 304), without pointing to any such statements, much less any such advertising statements. Without identifying a specific untrue or misleading advertisement, Plaintiffs' FAL claim fails. *See In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 932 (N.D. Cal. 2018).

***Third***, a violation of the FAL generally involves the same analysis as the "fraudulent" prong of the UCL. *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020). For the reasons discussed in that section (*see supra* at 30), Plaintiffs' FAL claim likewise fails.

***Fourth***, as explained above (*see supra* at 31), Plaintiffs have an adequate remedy at law in the form of money damages and, regardless, are not entitled to restitution or injunctive relief. *See Williams v. Apple, Inc.*, 2020 WL 6743911, at *9–10 (N.D. Cal. Nov. 17, 2020) (dismissing FAL claims because Plaintiffs had an adequate remedy at law).

## VIII.   Plaintiffs' Florida Deceptive and Unfair Trade Practices Act Claim (Count 13) Should Be Dismissed.

Plaintiffs' claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") should be dismissed because the FDUTPA is inapplicable when the underlying conduct consists of alleged securities transactions.  *See Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *R&R adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022); *Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1294–95 (S.D. Fla. 2000).

Plaintiffs also fail to plead required elements of their FDUTPA claim.  To state a claim, Plaintiffs must allege (1) an objectively deceptive act or unfair practice, (2) causation, and (3) actual damages.  *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016).  Because Plaintiffs' claim sounds in fraud, they must also allege with particularity the circumstances constituting fraud under Rule 9(b)*.  See Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3– 4 (M.D. Fla. Mar. 14, 2012).  Plaintiffs fail to meet that demanding pleading standard.

*First*, Plaintiffs do not adequately allege a deceptive act or unfair practice.  Deception occurs if there is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); *see also Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007).  Deception must be "probable, not possible" and "likely to cause injury to a reasonably relying consumer."  *Zlotnick*, 480 F.3d at 1284.  Here, Plaintiffs fail to point to any representations, omissions, or practices directed to consumers by any Multinational VC that would mislead a consumer.  Unlike a company that promotes its product or service, the Multinational VCs are alleged to have merely invested in FTX and did not direct any advertising, statements, or omissions about FTX's offerings at consumers.  Further, for all the reasons

discussed above regarding Plaintiffs' FAL claim, there is no viable allegation of deception or unfair practice.

**Second**, Plaintiffs fail to allege causation. Under the FDUTPA, "causation must be direct, rather than remote or speculative." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012). Here, Plaintiffs formulaically state that the Multinational VCs' "deceptive promotion and misleading marketing of FTX, as described herein, directly, and proximately caused the harm suffered by Plaintiffs and the Class." (Compl. ¶ 506.) But Plaintiffs do not allege that they even saw or read the Multinational VCs' statements, and they certainly have not alleged that any of those statements caused them to transact on FTX. Nor have they sufficiently alleged what was deceptive about the Multinational VCs' limited statements. There is simply no nexus between anything the Multinational VCs are alleged to have said or done and any of Plaintiffs' alleged damages. That is fatal to Plaintiffs' FDUTPA claim. *See Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (dismissing FDUTPA claim because plaintiff "did not explain what was deceptive about the [defendants'] websites" or allege that, "but for the quoted statement" on defendants' websites, she would not have transacted with them).

**Finally**, Plaintiffs have failed to adequately allege actual damages. The "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008). Plaintiffs blithely assert that the Multinational VCs used "false and/or misleading claims to attract and lure Plaintiffs and Class Members into paying into the FTX Platform," but they fail to specify how those statements caused them actual damages. (Compl. ¶ 502.) Plaintiffs were allegedly damaged by other parties' actions—namely SBF and other FTX insiders—not by the Multinational VCs. Their FDUTPA claim therefore fails. *See Lombardo v.*

*Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015); *Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282, 1301 (S.D. Fla. 2021).

### IX.   Plaintiffs' Negligent Misrepresentation Claim (Count 14) Should Be Dismissed.

Plaintiffs alternatively allege negligent misrepresentation "in the event that the Multinational VC Defendants did not conduct the robust due diligence that they advertised." (Compl. ¶ 512.)  To state a claim, a plaintiff must allege that: "(1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Smith v. Ramis*, 647 F. App'x 679, 681 (9th Cir. 2016); *see also Treminio v. Crowley Mar. Corp.*, 2023 WL 113565, at *11 (M.D. Fla. Jan. 5, 2023).  Rule 9(b)'s heightened pleading standard applies to Plaintiffs' negligent misrepresentation claim.  *See Pruco Life Ins. Co. v. Brasner*, 2011 WL 2669651, at *4 (S.D. Fla. July 7, 2011); *Vidor v. Am. Int'l Grp., Inc.*, 491 F. App'x 828, 829 (9th Cir. 2012).  This claim should be dismissed for several reasons.

***First***, Plaintiffs fail to allege that any of the Multinational VCs made a misrepresentation of material fact.  Under Florida law, a fact is material if, but for the misrepresentation, the aggrieved party would not have entered into the contract.  *Ribak v. Centex Real Estate Corp.*, 702 So. 2d 1316, 1317 (Fla. Dist. Ct. App. 1997).  Neither an opinion nor a promise of future action generally supports a claim of negligent misrepresentation.  *Mejia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. Dist. Ct. App. 2001).

Plaintiffs allege that the Multinational VCs negligently misrepresented "the safety and viability of FTX and their own due diligence activities."  (Compl. ¶ 513.)  But Plaintiffs point to no specific misleading statements by any Multinational VC regarding the safety and viability of

FTX or about any due diligence they did on FTX. *See Tyco Safety Prod. Canada, Ltd. v. Abracon Corp.*, 2008 WL 4753728, at *2 (S.D. Fla. Oct. 28, 2008) ("Plaintiff points to no written or spoken statement by Defendant, thus there is no allegation of a misrepresentation of a material fact."); *Palomar Health v. Am. Guarantee & Liab. Ins. Co.*, 2021 WL 4035005, at *11 (S.D. Cal. Sept. 3, 2021) (similar). Any statements regarding the Multinational VCs' subjective beliefs concerning FTX or SBF are opinions that cannot be considered a misrepresentation of material fact. *See Rothis v. M & I Marshall & Isley Bank*, 2010 WL 3893960, at *5 (M.D. Fla. Sept. 29, 2010).[17]

**Second**, Plaintiffs fail to plead that the Multinational VCs knew, or should have known, that any of their statements were false. "Liability for negligent misrepresentation is limited in the context of commercial transactions such that the supplier of information is only liable if he manifests an intent to deceive." *Linville v. Ginn Real Est. Co.*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010). As explained above, Plaintiffs allege no facts to support their claim that the Multinational VCs should have known their general statements about FTX were false, let alone that they had any intent to deceive. *See Arnold*, 839 F. Supp. 2d at 1289.

**Third**, Plaintiffs fail to allege that they acted in justifiable reliance on any purported misrepresentations. Plaintiffs have entirely failed to link their alleged damages from transacting on FTX to any specific statement by any of the Multinational VCs. *See SIG, Inc. v. AT & T Digit. Life, Inc.*, 971 F. Supp. 2d 1178, 1198 (S.D. Fla. 2013) (dismissing negligent misrepresentation

---

[17] To the extent Plaintiffs rely on supposed omissions by the Multinational VCs, their claims fail for another reason: the Multinational VCs had no duty to disclose anything to the Plaintiffs. "[O]missions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information." *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005). A duty to disclose arises only in "a fiduciary or other relation of trust or confidence," *id.*, or if there is "some sort of transaction between the parties" in "which a [duty] can arise," *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997). Plaintiffs do not allege that they had a fiduciary relationship with the Multinational VCs or any other relationship of trust and confidence, nor do they allege that they entered into any transaction with the Multinational VCs.

claim because plaintiffs failed to "sufficiently link their reliance and damages to any particular falsehood"); *Honig*, 339 F. Supp. 3d at 1343 (similar); *Galvez v. Wells Fargo Bank, N.A.*, 2018 WL 2761917, at *9 (N.D. Cal. June 7, 2018) (similar).

## X.   Plaintiffs' Intentional Misrepresentation and Fraudulent Inducement Claims (Counts 15 and 16) Should Be Dismissed.

To prevail on a claim for fraudulent inducement, a plaintiff must allege "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1315 (11th Cir. 1998); *Swingless Golf Club Corp. v. Taylor*, 732 F. Supp. 2d 899, 908 (N.D. Cal. 2010) (providing the same elements but requiring also that plaintiff's reliance be justifiable). Plaintiffs' intentional misrepresentation claim has the same elements. *See Scolieri v. John Hancock Life Ins. Co. (U.S.A.)*, 2017 WL 700215, at *3 (M.D. Fla. Feb. 22, 2017); *Brissette v. Entrust Grp., Inc.*, 621 F. App'x 461, 462 (9th Cir. 2015). Both claims are subject to Rule 9(b)'s heightened pleading standards. *Begualg Inv.*, 2011 WL 4434891, at *4; *Wilson v. Chattem, Inc.*, 2009 WL 10667847, at *4 (S.D. Fla. Sept. 17, 2009); *Eurosemillas, S.A. v. Uttarwar*, 854 F. App'x 137, 139 (9th Cir. 2021). Plaintiffs fail to plead any of the elements of these claims with particularity.

***First***, Plaintiffs fail to point to ***any*** false statements by any of the Multinational VCs concerning a material fact. As discussed above, the handful of statements that Plaintiffs identify were factual statements regarding the Multinational VCs' investments or opinions about SBF and FTX. Plaintiffs fail to allege how any of these statements were misrepresentations.[18]

---

[18] Again, if these misrepresentation claims are based on alleged omissions, they also fail because the Multinational VCs had no duty to disclose anything to Plaintiffs. (*See supra* at note 17.)

*Second*, Plaintiffs assume that because the Multinational VCs conducted due diligence, they had knowledge that some (unspecified) representation they made was false.  Not so.  As explained above, Plaintiffs do not allege facts showing that the Multinational VCs uncovered any wrongdoing at FTX.  In fact, Plaintiffs' allegations show that FTX's insiders concealed their misconduct from the Multinational VCs.

*Third*, Plaintiffs do not allege how the Multinational VCs' factual statements regarding their investments in FTX evinced any intention to induce anyone to act in any specific way.  The few statements Plaintiffs identify in their Complaint do not mention any FTX product or service.

*Fourth*, as discussed above, it is impossible for Plaintiffs to show that they acted in reliance on any representation without pointing to the specific representation, when and where they saw the representation, and specific actions they took afterward in reliance on it.  Plaintiffs' fraudulent inducement and intentional misrepresentation claims should therefore be dismissed.

## XI.   Plaintiffs' Declaratory Judgment Claims (Counts 17 and 18) Should Be Dismissed.

Plaintiffs seek declaratory relief based on their claims alleged in other counts, including the Multinational VCs' supposed violations of the UCL and the FAL and their alleged role in selling unregistered securities.  (*See* Compl. ¶¶ 535, 543.)  Those claims should be dismissed.

*First*, because Plaintiffs' underlying claims fail for the reasons explained above, Plaintiffs' declaratory judgment claims should also be dismissed.  *See YMD Recs., LLC v. Ultra Enters., Inc.*, 361 F. Supp. 3d 1258, 1267 (S.D. Fla. 2019); *see also Feingold v. Budner*, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("[P]laintiff must prevail on an underlying claim in order to be entitled to" declaratory judgment).

*Second*, Plaintiffs seek not merely a binding adjudication regarding the parties' rights but an order commanding Multinational VCs to take "remedial measures, such as issuing public announcements" and providing restitution to Plaintiffs.  (Compl. ¶¶ 541, 549.)  Such a request is

one for injunctive relief.  *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1389–90 (S.D. Fla. 2014). As explained above, plaintiffs are not entitled to injunctive relief.  (*See supra* at 31.)

**Third**, Plaintiffs' prayer for "actual, direct and compensatory damages" indicates that there are "adequate legal remed[ies]" for their claims and forecloses their duplicative requests for equitable declaratory relief.  *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1318 (S.D. Fla. 2011).

**Fourth**, Plaintiffs' requested declarations improperly ask the Court to make "factual determinations regarding possible . . . tortious acts that [the Multinational VCs are] alleged to have committed in the past."  *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1231 (S.D. Fla. 2009); *see also Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) ("[A] declaratory judgment . . . is not for the purpose of making factual determinations.").  Plaintiffs' declaratory judgment claims should be dismissed.

## XII.   Plaintiffs' Punitive Damages Claim (Count 19) Should Be Dismissed.

Plaintiffs' punitive damages claim should be dismissed because it is not a stand-alone cause of action but rather a potential remedy arising out of other substantive causes of action.  *See Montalbano v. Ariad Pharms., Inc.*, 2015 WL 11198245, at *10 (S.D. Fla. Aug. 4, 2015); *Turner v. Modesto Police Dep't*, 2023 WL 4424588, at *16 (E.D. Cal. July 10, 2023).  Regardless, Plaintiffs are not entitled to punitive damages.  Punitive damages are only available for intentional misconduct or gross negligence.  *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1220 (11th Cir. 2010).  As discussed above, Plaintiffs fail to adequately allege any intentional misconduct or gross negligence by the Multinational VCs.  Instead, their own allegations show that the Multinational VCs were also deceived and injured by FTX and its insiders.

## CONCLUSION

The Complaint against the Multinational VCs should be dismissed with prejudice.

**<u>REQUEST FOR HEARING</u>**

In accordance with Local Rule 7.1(b)(2), the Multinational VCs respectfully request that the Court hear oral argument on their Motion to Dismiss because this case involves a multitude of parties, legal issues, and statutory schemes.  The Multinational VCs believe oral argument would further the Court's understanding of the multiple grounds for dismissal with prejudice.  The Multinational VCs submit that thirty minutes is sufficient for the Multinational VCs to argue the issues presented.

Dated:  September 22, 2023

Respectfully submitted,

/s/ Eric D. Lawson
Eric D. Lawson (mdl102196)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: (212) 468-8000
Email: elawson@mofo.com

Anna Erickson White (mdl102198)
Ryan M. Keats (mdl102197)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: awhite@mofo.com
         rkeats@mofo.com

Adam M. Foslid (Fla. Bar No. 682284)
WINSTON & STRAWN LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 2400
Miami, FL 33131
Telephone: (305) 910-0500
Email: afoslid@winston.com

*Counsel for Defendants SoftBank Group
Corp.; SB Group US, Inc.; SoftBank
Investment Advisers (UK) Limited; and
SoftBank Global Advisers Limited*

/s/ Adam S. Fels
Adam S. Fels (Fla. Bar No. 0114917)
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, FL 33134
Telephone: (305) 569-7701
Email: afels@ffslawfirm.com

Brad S. Karp, *pro hac vice*
Andrew J. Ehrlich, *pro hac vice*
Nina M. Kovalenko, *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: bkarp@paulweiss.com
         aehrlich@paulweiss.com
         nkovalenko@paulweiss.com

*Counsel for Defendants Temasek Holdings
(Private) Ltd. and Temasek International
(USA) LLC*

/s/ Jason P. Gottlieb
Jason P. Gottlieb
Michael Mix
Vani Upadhyaya
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
Telephone: (212) 735-8600
Email: jgottlieb@morrisoncohen.com
         mmix@morrisoncohen.com
         vupadhyaya@morrisoncohen.com

*Counsel for Defendant Sino Global Capital
Holdings, LLC*

42

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of September, 2023, I e-filed a true and correct copy of the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Eric D. Lawson*