UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

FTX Cryptocurrency Exchange Collapse MDL Litigation
_____

THIS DOCUMENT RELATES TO:

All Actions
_____/

**CO-LEAD COUNSELS' REPLY TO SPORTS & ENTERTAINMENT DEFENDANTS' OPPOSITION TO CROSS-MOTION TO STAY PENDING COMPLETION OF CRIMINAL TRIAL**

Plaintiffs appreciate the Court's consideration of their pending Cross-Motion, and for already: (1) granting the Government's and SBF's motions to stay the Insiders Action, and all discovery in the MDL, pending the completion of the SBF's trial in the Criminal Action, and (2) granting Plaintiffs a preliminary extension to file their Oppositions to the 26 pending Motions to Dismiss to November 6th, while the Court considers whether to stay the remainder of the MDL pending completion of SBF's criminal trial. While Plaintiffs can certainly meet the Court's November 6th deadline, if necessary, Plaintiffs reiterate that, for the same reasons the Court granted the Government's and SBF's Motions to Stay, the Court should also grant Plaintiffs' Cross-Motion.

Aside from the pending request for stay, the only other requests in Plaintiffs' Cross-Motion that are still pending are for the Court to grant Plaintiffs permission: (1) to conduct targeted jurisdictional discovery, specifically regarding the pending Motions to Dismiss (either immediately following the stay, if granted, or immediately if the Court declines to enter the stay), *see* Cross-Motion at 6–7; and (2) to issue one subpoena to the Special Counsel for the FTX Debtor Entities (which cannot burden any of the parties to this case), so the MDL Plaintiffs may obtain

the same materials the FTX Debtor Entities have already shared with the Government and with SBF's legal team.

The value of the damages to the FTX victims is now admittedly in the many billions of dollars. While Plaintiffs will certainly provide a full response to the FTX Sports & Entertainment Defendants' Motion to Dismiss, it is imperative now to **_finally_** correct the many false and misleading statements these Celebrities continue to make (even as of *this week*), all in an orchestrated effort to convince this Court: (1) to not require them to produce *any* discovery, even copies of their own FTX agreements that, from the ones Plaintiffs have been able to obtain (before the MDL and in other litigations), ***specifically require Defendants to "promote" FTX's unregistered offerings and require them to follow federal law and disclose to the public how much they were specifically being paid by FTX (to show the extent to which they had any self-interest)***;[1] (2) not to appoint *any* Special Master to deal with discovery matters; and (3) to instead quickly dismiss all of these important claims before the truth about Defendants' conduct is revealed to the Court.

## THE "FALSE STORY" CREATED AND TOLD BY THE FTX CELEBRITIES

Since Undersigned Counsel filed the very first FTX Complaint in November of last year, these FTX Celebrities have loudly protested to this Court (and to the public), that there is "**_not a single authority_**" to support any claim that they could be held liable for promoting FTX's unregistered offerings and thus they "**_could never be liable_**" for any of the billions of dollars in damages to the FTX victims. Attached as **Exhibit A** is a brief slide presentation detailing how this position is simply false based upon the facts and law.

---

[1] Admittedly, **_none_** of the Celebrity Promoters followed the law or these contractual provisions.

To summarize, while these FTX Celebrities have cited to over **_511 different_** state and federal court decisions, statutes, ordinances, and newspaper articles, in their over **_49 responsive pleadings just filed in the last two weeks_**, *see, e.g.,* (ECF No. 271), it is astonishing that they think that somehow the Court would never learn the binding 11th Circuit standard for promoters of unregistered securities that was clearly and recently articulated in *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022), *cert. denied sub nom. Arcaro v. Parks*, 214 L. Ed. 2d 235 (2022), (and all of the subsequent case law applying that new standard), which specifically reversed old law that Defendants continue to cite in their submissions to this Court.

For example, **_just two weeks ago,_** *see* (ECF No. 278), the FTX Celebrities again continue to cite to this Court old, pre-*Wildes* district court decisions, such as *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, *4 (S.D. Fla. May 13, 2019), without even revealing to this Court that such decisions were reversed by the Eleventh Circuit's *Wildes* decision.

There can really be no dispute that the rulings in pre-*Wildes* decisions like *Rensel* are no longer a correct statement of the law on soliciting the sale of unregistered securities certainly here in the Eleventh Circuit and even now across the country. In rejecting Judge Middlebrooks's individual reliance on *Rensel*, the Eleventh Circuit ruled in *Wildes* that a company and spokesmen promoting a cryptocurrency staking Ponzi scheme were statutory "sellers" engaged in "solicitation" of securities, when they "urged people to buy BitConnect coins in online videos," and that "solicitation" only meant to "urge or persuade," and did not need to be "personal or individualized."

Similarly, the Ninth Circuit proudly adopted the full *Wildes* analysis in *Pino v. Cardone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022), holding that a company and its CEO promoting real estate investment funds through "mass communications to potential sellers" via nontargeted

internet videos posted on social media were statutory "sellers" engaged in "solicitation" of securities where promotions "motivated at least in part by their own financial interests or those of the securities' owner," and further went on to rule that, to state a cause of action, plaintiff "need not have alleged that he specifically relied on any of the alleged misstatements identified in the [complaint]."

Recently, in *De Ford v. Koutoulas*, 6:22-CV-652-PGB-DCI, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023), *reconsideration denied,* 6:22-CV-652-PGB-DCI, 2023 WL 3584077 (M.D. Fla. May 22, 2023), the Middle District of Florida also applied *Wildes* and denied a motion to dismiss plaintiffs' claims that a spokesman for "Let's Go Brandon" cryptocurrency (LGBCoin) engaged in the solicitation of unregistered securities, rejecting his argument that "mere social media posts cannot make him a seller of securities." Citing *Wildes*, the district court specifically **denied** the motion to dismiss, concluding plaintiffs stated a claim for sale of unregistered securities based on (1) documented alleged promotion of LGBCoin online and through the same social media channels used by these FTX Celebrities, and (2) allegation that promotions were done to serve spokesman's own financial interests (exactly like these FTX paid Celebrities).

***Most recently***, on September 20, 2023, Judge William H. Orrick of the Northern District of Florida, applying both *Pino* and *Wildes*, denied a similar motion to dismiss by a promoter who was sued for participating in a similar FTX scheme to sell unregistered securities in the form of cryptocurrency, concluding that the suit alleged that the defendants actively solicited sales of the crypto assets, and were not just "mere collateral participants." *Houghton v. Leshner*, No. 3:22-cv-07781-WHO, ECF No. 94 (N.D. Cal. Sept. 20, 2023). In reaching that conclusion, Judge Orrick reasoned that "[s]olicitation is broadly construed," and a promoter "could be a statutory seller liable for solicitation based on YouTube videos and Instagram posts touting the investments and

rates of return." *Id.*, at 4–5 (citing *Pino*, 55 F.4th at 1256; *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022) (finding solicitation can occur within the meaning of the Securities Act, "by promoting a security in a mass communication," and as long as the communication attempts to "urge or persuade" another to buy a particular security, the "efforts at persuasion need not be personal or individualized."))[2]

There simply can be no doubt that the law on mass solicitation of unregistered securities through the internet and social media posts (as exactly was done by these FTX Celebrities), has shifted squarely in favor of Plaintiffs, such that the Defendants are "statutory sellers" who solicited the sales of FTX's unregistered securities, making them liable to Plaintiffs and the class.

## **WHY WHERE THEY SO SCARED TO PRODUCE THEIR OWN FTX CONTRACTS**?

Now that a few FTX Celebrity Contracts have finally been revealed, and other contracts between celebrities and other crypto exchanges have been compelled in other litigation, it is clear why the FTX celebrities might have been fighting so hard to keep them secret: they are undisputed evidence of this false story they continue to tell.

***First***, most of the agreements appear to specifically require all Celebrity promoters to comply with the law, and specifically the FTC's Guide Concerning the Use of Testimonials and Endorsements in Advertising, and the SEC's November 1, 2017 "Statement Urging Caution

---

[2] From the hundreds of state and federal cases cited by the FTX Celebrity Defendants, throughout 46 FTX pleadings, they decided to relegate the 11th Circuit's binding *Wildes* decision to page 20 of a pleading, *see*(ECF No. 271), in just one footnote (footnote 14), and only at the at the end of a long string citation (after citing California state decisions), and where they specifically represented as follows: "… *see also Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022)("[F]or solicitation to occur, a person must 'urge or persuade' another to buy a particular security" and "purchases [of that security must] follow[]."). Certainly, only this Court can decide if that is an accurate summary of the *Wildes* decision, especially when they have used such representations to continue to seek a stay of all discovery from day one, while demanding that the Court quickly rule on their pending Motions to Dismiss.

Around Celebrity Backed ICOs," both of which required the Celebrity Promoters to "disclose the nature, scope, **and amount of compensation received** in exchange for the promotion" of the crypto products, with the failure to do so being in violation of FTC and SEC anti-touting regulations.

*Second*, while the Celebrity Defendants' contracts vary to account for their different fields of being famous (such as athletes, *Shark Tank* hosts, or supermodels), they all require FTX Celebrities to provide all sorts of "***promotional services***" to FTX "in connection with the advertisement, ***promotion*** and marketing of [FTX], ***and their products and services***," including, among other things, post numerous social media posts, autograph items each year, launch NFTs across the country for FTX, conduct virtual meetings and lunches, and host FTX charity events. The contracts specifically require the Defendants to "collaborate" with FTX advertising on scripts for their promotions (*i.e.*, like the fraudulent FTX "I am all in" Campaign, as we have learned that FTX Defendant O'Neal secretly would not personally invest in any cryptocurrency), as well as bar the Celebrity Defendants **from promoting any of the FTX competitors, *in any manner***.

*Third*, as Michael Lewis's new book even highlights this week, the actual amounts these FTX Celebrities were paid for these services were not only astounding, they are clearly indicative of the importance of their personal involvement in perpetuating the FTX scheme from the beginning. For instance, "[FTX] paid Tom Brady $55 million for 20 hours a year for three years," and "paid Steph Curry $35 million for [the] same thing for three years."[3] Further, FTX also paid exorbitant sums for similar promotions to Defendants O'Neal ($749,999.93), the Golden State Warriors ($417,150.00), Osaka (308,333.84), and Ortiz ($270,833.55).[4]

---

[3] https://news.yahoo.com/sam-bankman-fried-paid-tom-174222530.html (accessed Oct. 6, 2023).

[4] https://cointelegraph.com/news/ftx-reverse-payments-to-shaq-celebrities-athletes (accessed Oct.

**CONCLUSION**

Plaintiffs are carefully monitoring and attending the SBF criminal trial in New York, and are continuing discussions with both the Government and SBF. Testimony and documents are being revealed on a daily basis, and still more FTX documents have yet to be revealed from the FTX servers, which only the Special Counsel for the FTX Debtors Entities currently maintains and controls.

For these reasons, and to promote judicial economy, conserve party resources, and avoid duplication of efforts, Co-Lead Counsel very respectfully request the Court enter an Order: (1) granting Co-Lead Counsel's request to stay all litigation in this MDL (not just discovery), pending conclusion of SBF's criminal trial, as the Government concluded best: "the result of that proceeding will have a significant impact on what issues are ultimately in dispute" here, ECF No. 247 at 2, (2) granting Co-Lead Counsel leave to simply issue one subpoena for documents to the Special Counsel for the FTX Debtor Entities in the Bankruptcy Proceedings, and (3) granting Plaintiffs leave to conduct limited jurisdictional discovery, either following the stay of the MDL litigation, if granted, or immediately so Plaintiffs may complete such discovery in advance of the current November 6th deadline to file Oppositions to the pending Motions to Dismiss.

---

6, 2023). Importantly, these are just the specific amounts that FTX seeks to claw back in USD, and Plaintiffs will confirm in discovery what these Celebrity Defendants were paid in any additional compensation in terms of FTX tokens, stock, and/or US dollars.

Respectfully submitted on October 6, 2023.

| | |
|---|---|
| **By:** */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com<br><br>*Co-Lead MDL Counsel* | **By:** */s/ David Boies*<br>David Boies<br>Alexander Boies<br>Brooke A. Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>914-749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com<br><br>*Co-Lead MDL Counsel* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 6, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz