UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

Multinational VC Defendants

Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960

*Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974

_____/

**PLAINTIFFS' REPLY TO DEFENDANTS SOFTBANK GROUP CORP., SOFTBANK INVESTMENT ADVISERS (UK) LIMITED, AND SOFTBANK GLOBAL ADVISERS LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION TO SERVE CERTAIN DEFENDANTS WITH PROCESS THROUGH ALTERNATE MEANS**

Though the sophisticated and global SoftBank Defendants would have this Court believe that they are an afterthought to Plaintiffs' Complaints and played no role in the scheme alleged, this is not the case. Arguments on the merits of Plaintiffs' claims are, of course, improper for consideration on a motion asking for leave for alternative service, but some of SoftBank's arguments are so off-base they warrant brief response. SoftBank invested at least $100 million in FTX, had its most senior executives serve on FTX's advisory board, actively collaborated with FTX to expand its reach, and lobbied the U.S. government to issue FTX the necessary licensing to operate as an exchange (despite otherwise purporting to avoid investments in the risky world of cryptocurrency), all of which FTX publicly touted as a conduit of its success, and all after purporting to conduct a due diligence review that Plaintiffs allege was fraudulent. This fraud is alleged to have substantially occurred in the United States. SoftBank's assertions that Plaintiffs have not made efforts to serve it thus far are also untrue, as Plaintiffs have attempted service on its U.S. subsidiary, SB Group US, Inc.[1] SoftBank provided critical groundwork and support necessary for FTX's expansive fraud scheme.

Both of SoftBank's arguments for why this Court should not grant Plaintiffs' proposed service method under Rule 4(f)(3) fall flat, under the authority of this district and multiple circuits.

First, there is zero requirement that Plaintiffs first attempt other service methods, through the Hague Convention or otherwise, before seeking leave for alternate service. *See The N. Face Apparel Corp. v. Individuals, Bus. Entities & Uninc. Ass'ns Identified on Schedule "A"*, 2023 WL 5669999, at *1 (S.D. Fla. June 30, 2023) ("Alternate methods of service under Rule 4(f)(3) are available without first attempting service by other means."). All Plaintiffs must do is propose a

---

[1] As alleged in the complaint, Plaintiffs believe that SoftBank employs over 300 people in the United States and maintains offices in four U.S. cities. (MDL ECF No. 182 at 30-33.)

2

plan that does not violate international agreement and that is reasonably calculated to give notice, which they have done. Rule 4(f)(3) is an instrument of first resort, not last. As set forth herein, this district has repeatedly approved the exact alternate service methods Plaintiffs seek—email on foreign Defendant and/or local counsel—as comporting with due process, and without requiring attempts at other service methods first.[2]

Second, despite SoftBank's assertions that "the better reading of the Rule" requires that email service take place outside of the United States, there is a litany of case law from this district and around the country that disagrees wholly with that premise. Indeed, it is SoftBank's local counsel that has appeared in this litigation, that submits and monitors filings on this MDL docket, and that has filed dispositive Rule 12 motions on SoftBank's behalf. Serving *that* counsel with the summons and complaint is the logical path for purposes of affording SoftBank due process and an opportunity to respond.

## ARGUMENT

Rule 4(f)(3) provides that service on foreign defendants may be accomplished "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Alternate methods of service under Rule 4(f)(3) are available without first attempting service by other means. *N. Face Apparel Corp. v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A"*, 2023 WL 5669999, at *1 (S.D. Fla. June 30, 2023*); Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002); *see also De Gazelle Grp., Inc. v. Tamaz Trading Establishment,* 817 F.3d 747, 750 (11th Cir. 2016) ("If a party cannot, or *chooses not to*, serve a defendant abroad using one of the methods specified in Rule 4(f)(1) and (2), the party may

---

[2] Including in this MDL just five months ago. *See Garrison v. Paffrath*, No. 23-cv-21023, ECF No. 65 (S.D. Fla. May 5, 2023).

3

accomplish service 'by other means not prohibited by international agreement, as the court orders.'") (emphasis added).

A.  **Plaintiffs Are Not Required to Try Other Service Methods First Because Rule 4(f)(3) is an Option of First Resort.**

SoftBank's first argument—that Plaintiffs' motion must fail because Plaintiffs must show they have tried other service means but they failed, or otherwise proved difficult—is incorrect as a matter of law. While SoftBank cherry picks a few cases wherein the Court declined to grant alternate service, the weight of authority on this issue is clear: The weight of authority is clear: Rule 4(f)(3) may be used as a **first resort**. *E.g.*, *The N. Face Apparel Corp. v. Individuals, Bus. Entities & Uninc. Ass'ns Identified on Schedule "A"*, 2023 WL 5669999, at *1 (S.D. Fla. June 30, 2023) ("Alternate methods of service under Rule 4(f)(3) are available **without first attempting service by other means**.") (emphasis added; citing, *inter alia*, *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750 (11th Cir. 2016) ("If a party cannot, or chooses not to, serve a defendant abroad using one of the methods specified in Rule 4(f)(1) and (2), the party may accomplish service 'by other means not prohibited by international agreement, as the court orders.'")); *see also*, *e.g.*, *Al-Saadi v. Annchery Fajas USA, Inc.*, Case No. 20-23939, 2022 WL 898562, at *3 (S.D. Fla. Mar. 28, 2022) ("This Court has also found that a party does not have to attempt other forms of service before requesting leave for alternative service under Rule 4(f)(3)) (citing *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-21962, 2007 WL 1577771 (S.D. Fla. May 31, 2022) ("[C]ertainly, Rule 4(f)(3) includes no qualifiers or limitations which indicated its availability only after attempting service of process by other means.")); *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, Case No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. 2021) (recognizing that considerations under Rule 4(f)(3) "are not akin to an exhaustion requirement").

First, Rule 4(f)(3) is one of several choices for serving litigants under Rule 4, and stands on equal footing with all the others. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F. 3d 1007, 1015 (9th Cir. 2012); *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015); *Tracfone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357 (S.D. Fla. 2015). Contrary to SoftBank's argument, whether Plaintiffs have identified workable addresses, could show that SoftBank is evading service, or could show foreign service as expensive and time-consuming, is all completely immaterial. Although these are factors that the Court *could* weigh in terms of granting leave to pursue alternate service—as courts have broad discretion and authority to evaluate a multitude of factors in determining whether a proposed service method is appropriate (*see Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003); *Rio Props.*, 284 F.3d at 1015)—the law is clear that the Court's primary concern is only two-fold. The proposed service plan must (1) not violate international agreement and (2) be reasonably calculated to give notice. *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011); *In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, No. 19-21551, 2019 WL 13062201, at *1 (S.D. Fla. May 14, 2019) (citations omitted); *see also*, *e.g.*, *Al-Saadi v. Annchery Fajas USA, Inc.*, Case No. 20-23939, 2022 WL 898562, at *3 (S.D. Fla. Mar. 28, 2022); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-21962, 2007 WL 1577771 (S.D. Fla. May 31, 2022) ("[C]ertainly, Rule 4(f)(3) includes no qualifiers or limitations which indicated its availability only after attempting service of process by other means.").

It is abundantly clear from SoftBank's own actions, in disputing the sufficiency of Plaintiffs' service attempts thus far, disputing the sufficiency of Plaintiffs' substantive claims,

appearing in this lawsuit, and otherwise defending itself, that it has notice of this lawsuit and will be afforded the opportunity to respond.

Second, with respect to SoftBank's assertion that Plaintiffs must first attempt service through the Hague Convention, that is not the law—"numerous courts have determined that the Convention's provisions regarding service of process are 'neither mandatory nor exclusive.'" *City Pension Fund for Firefighters & Police Officers v. Aracruz Cellulose S.A.*, 2010 WL 11527263, at *2 (S.D. Fla. Jul. 23, 2010); *see also id.* (collecting cases); *Kreimerman v. Casea Veerkamp, S.A.*, 22 F.3d 634, 642 (5th Cir. 1994) ("[T]he text of the Convention strongly indicates, not that the Convention preempts other conceivable methods of service, but that it merely provides a mechanism for transmitting and delivering letters rogatory when and if parties elect to use that mechanism."). What *does* matter is whether the U.K. and Japan, SoftBank's home countries, have precluded service by email as signatories to the Hague Convention They have not. Thus, a court acting under Rule 4(f)(3) remains free to order alternate means of service where, as here, a signatory nation has not expressly objected to them. *See, e.g., Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, 2015 U.S. Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015) (authorizing service by email); *see also Chengdu Jiechen Tech. Ltd. v. Trobing-US*, 2021 WL 10382802, at *1 (S.D. Fla. Aug. 10, 2021) (authorizing service by email and publication); *Yeti Coolers, LLC v. Individuals, Bus. Entities & Unincorporated Associations Identified on Schedule "A"*, 2023 WL 5659522, at *1 (S.D. Fla. July 24, 2023) (same).

Finally, a slew of service plans that have been granted in this district illustrate that the factors Defendants assert as prerequisites to alternate service simply are not. Each time, the court primarily evaluated whether the proposed plan would afford due process without regard to any prior service efforts:

6

- where defendants were shown to have formed internet-based businesses and to have reliable forms of electronic contact (*E.g.*, *Chanel, Inc. v. replicachanelpurses.com*, 2023 WL 5625547, at *1–2 (S.D. Fla. June 26, 2023); *see also N. Face Apparel*, 2023 WL 5669999, at *1 (same); *Smiley Co. SPRL v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, WL 5625607, at *1 (S.D. Fla. June 30, 2023) (same));

- where plaintiffs showed that domestic defendant is a wholly-owned subsidiary of the foreign defendant and that the president of the foreign defendant serves on the board of the domestic defendant (*E.g.*, *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, 2015 WL 5320947, at *4 (S.D. Fla. Sept. 14, 2015));

- where international courier to foreign defendants' known personal and corporate addresses, as well as email and U.S. mail to their Florida counsel, was sufficient notice of the action, (*E.g.*, *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182 (S.D. Fla. 2012));

- where the court was reasonably satisfied that the defendants who operate on the internet and rely on electronic communication for their business would be apprised by electronic service (*E.g.*, *Tiffany (NJ) LLC v. DORAPANG Franchise Store*, 2018 WL 4828430, at *3 (S.D. Fla. July 17, 2018));

- where Plaintiff had identified at least one known form of electronic contact (*E.g.*, *Chengdu Jiechen Tech. Ltd. v. Trobing-US*, 2021 WL 10382802, at *1 (S.D. Fla. Aug. 10, 2021); and

- where email service combined on foreign individual defendant, foreign corporate defendant, and local counsel comported with due process (*E.g.*, *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617 (S.D. Fla. 2011).

Because alternate service under Rule 4(f)(3) is a valid and accepted first resort of effectuating service on foreign defendants in federal litigation, Plaintiffs are not required to first attempt other means of service, via the Hague Convention or otherwise.

### B. Service by Email on a Foreign Internet-Based Entity and Its Local Counsel is Both Valid and Common.

SoftBank's argument that service on local counsel is inappropriate also fails. Courts around the country routinely approve motions for alternate service to local counsel, this district included. *In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, No. 19-21551, 2019 WL 13062201, at *2 (S.D. Fla. May 14, 2019) (citations omitted); *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175 (S.D. Fla. 2012). *See also*, *e.g.*, *LG Elecs, Inc. v. ASKO Appliances, Inc.*, 2009 WL 1811098, at *4 (D. Del. June 23, 2009) (finding that service upon an attorney was permissible in light of the regularity of contact between the defendant and attorney); *Prediction Co. LLC v. Rajgarhia*, 2010 WL 1050307, at *1 (S.D.N.Y. Mar. 22, 2010) (finding that sending the summons and complaint to defendant's attorney and requesting that he forward the documents to defendant satisfies due process concerns); *Marlabs Inc. v. Jakher*, 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010) (finding that service on the foreign defendant through his attorney comports with due process because the defendant was clearly on notice of the contents of the instant complaint and had regular contact with its attorney); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 2010 WL 1337743, at *3 (N.D. Cal. Apr. 2, 2010) (finding that where the defendant had consulted U.S. counsel regarding the lawsuit and participated in the case through U.S. counsel it was reasonable to find that the defendant had sufficient notice of the suit); *FMAC Loan Receivables v.*

*Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005) (finding that where the defendant's attorney had filed several motions on the defendant's behalf the defendant would be given proper notice of the suit if process was served on his attorney).

Ultimately, because due process is what the Court's analysis turns on, there is little doubt that SoftBank's counsel in this matter is in regular contact with the entity and thus is reasonably calculated to provide notice, as the counsel and Defendant have an ongoing relationship in terms of litigation that takes place in the United States. *ACP Master, Ltd. v. Sprint Corp.*, No. CV 8508-VCL, 2017 WL 3421142 (Del. Ch. July 21, 2017), aff'd, 184 A.3d 1291 (Del. 2018) (counsel for SoftBank Group Corp. was from the New York and San Francisco offices of Morrison & Foerster LLP, as is true in this litigation).

## CONCLUSION

Plaintiffs respectfully request that this Court grant its proposed service plan, which comports with due process, does not violate international agreement, and serves the particularities at hand given the complexities of this litigation.

Dated: October 12, 2023                                                  Respectfully submitted,

**By: */s/ Adam Moskowitz***                                          **By: */s/ David Boies***
Adam M. Moskowitz (FL Bar No. 984280)           David Boies (NY Bar No. 2296333)
Joseph M. Kaye (FL Bar No. 117520)                    Alexander Boies (NY Bar No. 5418579)
**THE MOSKOWITZ LAW FIRM, PLLC**              Brooke A. Alexander (NY Bar No. 4678900)
Continental Plaza                                                          **BOIES SCHILLER FLEXNER LLP**
3250 Mary Street, Suite 202                                       333 Main Street
Coconut Grove, FL 33133                                           Armonk, NY 10504
Telephone: (305) 740-1423                                         Telephone: (914) 749-8200
adam@moskowitz-law.com                                     dboies@bsfllp.com
joseph@moskowitz-law.com                                   aboies@bsfllp.com
service@moskowitz-law.com                                  balexander@bsfllp.com

*Co-Lead Counsel*                                                        *Co-Lead Counsel*

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (CA Bar No. 130064)
Christopher K.L. Young (CA Bar No. 238532)
Louis Kessler (CA Bar No. 243703)
Itak K. Moradi (CA Bar No. 310537)
**JOSEPH SAVERI LAW FIRM**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
lkessler@saverilawfirm.com
imoradi@saverilawfirm.com

Robert Lieff (CA Bar No. 37568)
P.O. Drawer A
Rutherford, CA 94573
rlieff@lieff.com

*Counsel to Plaintiffs and the Putative Classes*

By: */s/ Molly L. Wells*
James R. Swanson (LA Bar No. 18455)
Kerry J. Miller (LA Bar. No. 24562)
Molly L. Wells (LA Bar. No. 36721)
C. Hogan Paschal (LA Bar No. 38495)
**FISHMAN HAYGOOD L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone:(504) 586-5252
Fax: (504) 586-5250
jswanson@fishmanhaygood.com
kmiller@fishmanhaygood.com
mwells@fishmanhaygood.com
hpaschal@fishmanhaygood.com

*Counsel to Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

By: */s/ Adam M. Moskowitz*
     Adam M. Moskowitz