UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

_____

THIS DOCUMENT RELATES TO:

Bank Defendants

>  *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700
>
>  *O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

Multinational VC Defendants

>  *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700
>
>  *O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-3655
>
>  *Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960
>
>  *Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974

Promoter Defendants

>  *Garrison, et al. v. Bankman-Fried, et al.,* S.D. Fla. Case No. 22-cv-23753
>
>  *Garrison, et al. v. Kevin Paffrath, et al.,* S.D. Fla. Case No. 23-cv-21023

_____/

**PLAINTIFFS' OMNIBUS MOTION TO LIFT DISCOVERY STAY AND FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY, AND, IF NECESSARY TO AMEND THEIR COMPLAINTS WITH ANY FACTS ARISING FROM SUCH DISCOVERY**

*CASE NO. 1:23-md-03076-KMM*

Plaintiffs respectfully move the Court to enter an order: (1) lifting the stay of discovery imposed during the pendency of Sam Bankman-Fried's Trial, [ECF Nos. 318, 336]; (2) granting Plaintiffs leave to (a) take brief jurisdictional discovery from the following Defendants, prior to a ruling on Defendants' arguments to dismiss the actions against them for lack of personal jurisdiction or insufficient service of process: Steph Curry, Golden State Warriors LLC ("GSW"), Solomid Corporation ("TSM"), Naomi Osaka, Udonis Haslem, Lawrence Gene David, Andre Jikh, Jeremy LeFebvre, Graham Stephan, Jaspreet Singh, Erika Kullberg, Brian Jung, Creators Agency LLC ("CA"), SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, Temasek Holdings (Private) Limited, Temasek International USA LLC, Sino Global Capital Holdings LLC, Farmington State Bank d/b/a Moonstone Bank ("Moonstone"), Deltec Bank and Trust Company Limited ("Deltec"), and Jean Chalopin; and (b) to file any amendments to the Administrative Complaints or oppositions to the pending motions within twenty (20) days after completing that brief jurisdictional discovery, so Plaintiffs may incorporate any additional facts that support personal jurisdiction over these Defendants and address arguments raised in all Defendants' motions to dismiss.

## **BACKGROUND**

Since before this MDL was created, the Promoter Defendants'[1] primary argument was that Florida courts had no jurisdiction over them because neither they nor FTX conducted any substantial business regarding FTX in this state.

---

[1] The "Promoter Defendants," for purposes of this Motion, are defined as Steph Curry, Golden State Warriors LLC ("GSW"), Solomid Corporation ("TSM"), Naomi Osaka, Udonis Haslem, Lawrence Gene David, Andre Jikh, Jeremy LeFebvre, Graham Stephan, Jaspreet Singh, Erika Kullberg, Brian Jung, and CA. The "Bank Defendants," for purposes of this Motion, are Moonstone, Deltec, and Jean Chalopin; the "VC Defendants" are SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, Temasek Holdings (Private) Limited, Temasek International USA LLC, and Sino Global Capital Holdings LLC.

*CASE NO. 1:23-md-03076-KMM*

In *Garrison v. Bankman-Fried*, No. 1:22-cv-23753-KMM ("*Garrison*"), Plaintiffs filed a motion for leave to conduct jurisdictional discovery as to Defendants Curry, David, GSW, and Osaka,[2] and Udonis Haslem, based on the same jurisdictional arguments they raise in their now-pending motion to dismiss. *See Garrison*, ECF No. 163, attached as **Exhibit A**. The Court denied that motion as moot when the Court granted the *Garrison* Plaintiffs leave to amend their complaint, [ECF No. 207] which included, among other materials, the Declaration of Dan Friedberg, where he explained that FTX's Vice President of Business Development, Avi Dabir, "operated from our Miami office, and he was focused on formulating and executing our important FTX celebrity partnerships." [ECF No. 205-1, ¶¶ 20–25].

The *Garrison* Plaintiffs maintained, however, that if "any FTX Defendant decides to renew any arguments, and/or raise additional arguments as to personal jurisdiction directed to that Amended Complaint, even in light of this new jurisdictional information, Plaintiffs respectfully submit that brief jurisdictional discovery (brief depositions and targeted discovery) may be necessary, consistent with the orders on discovery entered by Chief Judge Altonaga, Judge Altman, and Magistrate Judge Reid in the related Voyager Digital class actions pending before this Court." [ECF No. 202].

Also before this MDL, in *Garrison v. Paffrath*, No. 23-21023-CIV-ALTONAGA/Damian ("*Paffrath*"), Defendants Jikh, LeFebvre, Stephan, Singh, Kullberg, Jung, and CA also moved to dismiss on the same jurisdictional grounds they now raise here. After considering the *Paffrath* Parties' Joint Report on Discovery,[3] Chief Judge Altonaga entered an Order,[4] ruling "[t]he Court

---

[2] Defendant Shohei Ohtani as well, though he no longer contests personal jurisdiction here.
[3] *Paffrath*, [ECF No. 93], attached as **Exhibit B**.
[4] *Id.,* [ECF No. 96], attached as **Exhibit C**.

3

*CASE NO. 1:23-md-03076-KMM*

finds that jurisdictional discovery is appropriate; additional jurisdictional facts need not be alleged in Plaintiffs' pleading," and granted Plaintiffs leave to conduct jurisdictional discovery—written requests and depositions—against Defendants Jikh, LeFebvre, Stephan, Singh, Kullberg, Jung, and CA. Further, Chief Judge Altonaga stayed any and all briefing on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) pending completion of jurisdictional discovery and the filing of operative complaints and motions to dismiss for lack of personal jurisdiction and/or to transfer venue. *Id.*

Once this MDL was consolidated before this Court, however, these same Defendants renewed their claim that Plaintiffs are not entitled to jurisdictional discovery, ignoring that the Court already found these same allegations sufficient to trigger Plaintiffs' "qualified right to jurisdictional discovery." *See Am. Civil Liberties, Union of Fla. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017).

Shortly after Plaintiffs filed their Consolidated Amended Complaints, The Promoter Defendants, the Bank Defendants, and the Foreign VC Defendants all moved to dismiss the claims against them for lack of personal jurisdiction or for insufficient service of process.

Given that Sam Bankman-Fried's trial was imminent, the Court granted Mr. Bankman-Fried's and the Government's request to stay discovery in these proceedings pending the completion of Mr. Bankman-Fried's criminal trial. [ECF Nos. 318, 336]. The Court ruled, however, that Plaintiffs may seek to lift the stay and renew this request for jurisdictional discovery when Mr. Bankman-Fried's trial was over. [ECF No. 336].

*CASE NO. 1:23-md-03076-KMM*

On November 2, 2023, Mr. Bankman-Fried's trial concluded when the jury returned a verdict finding him guilty on all seven counts.[5] Accordingly, Plaintiffs respectfully ask the Court at this stage to lift the stay and to grant Plaintiffs leave to conduct limited jurisdictional discovery, and to afford a very brief period (20 days) following that discovery to file any amendments to the Administrative Complaints or oppositions to the pending motions, especially because Courts routinely allow such amendments to cure pleading deficiencies in service of the general principle that "decisions on the merits are not to be avoided on the basis of 'mere technicalities.'" *Castros v. Signal Fin. Co. LLC*, 1:17-CV-21870-KMM, 2018 WL 1137099, at *1 (S.D. Fla. Feb. 4, 2018) (Moore, C.J.) (collecting cases).[6]

## I.   **LEGAL ARGUMENT**

Florida's long-arm statute provides for both general and specific personal jurisdiction. The Court has general personal jurisdiction over a defendant who has been "engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Specific jurisdiction exists for claims arising out of certain discrete acts of a defendant that occur in Florida, including "[c]omitting a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2) (2022).

---

[5]   https://www.reuters.com/legal/ftx-founder-sam-bankman-fried-thought-rules-did-not-apply-him-prosecutor-says-2023-11-02/ (accessed November 3, 2023).

[6]   Granting Plaintiffs' request would comport with the "policy of the federal rules []to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," particularly where the proposed amendment would not violate any scheduling order in place and there is no "substantial reason" to deny the amendment, which "could include 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment[,]'" none of which would apply since Plaintiffs would be providing their first substantive amendment to the complaint after, at a minimum, taking narrow discovery to address the jurisdictional arguments raised by some of the Defendants. *Castros*, 2018 WL 1137099, at *1 (citations omitted).

*CASE NO. 1:23-md-03076-KMM*

In the *Paffrath* complaint, Plaintiffs invoked both general and specific jurisdiction as the basis for personal jurisdiction over each of the FTX Defendants under the long arm statute by alleging:

> 11. FTX's fraudulent scheme was designed to take advantage of investors from across the globe, including specifically in Florida, who sought out what was represented to be a safe platform to make their investments in the burgeoning cryptocurrency industry. The scheme resulted in FTX investors collectively sustaining billions of dollars in damages.
>
> . . .
>
> 33. This Court has personal jurisdiction against Defendants because they conduct substantial and not isolated business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of FTX's YBAs in Florida — including to Plaintiffs in this case — which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of FTX's unregistered securities to consumers in Florida. Further, Defendants have engaged in a conspiracy in which some of the co-conspirators—including some who are Defendants in this action—committed overt acts in furtherance of the conspiracy in the State of Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

*Paffrath*, [ECF No. 1, at ¶¶ 11, 33]. Plaintiffs also alleged FTX's domestic US base of operations was Miami, Florida [*id.*, ¶ 63] and was where FTX put the alleged fraudulent plan, involving Defendants, into effect [*id.*, ¶ 43]. Judge Altonaga found these allegations sufficient to allow Plaintiffs to proceed to jurisdictional discovery. *Id.*, ECF No. 96.

In *Garrison*, the Complaint's allegations in support of personal jurisdiction in Florida are reliant on FTX's domestic headquarters being based in Miami (ECF No. 205, ¶¶ 2–3, 7, 9, 23, 31, see also ECF No. 205-1), the defendants' understanding of the overall publicity campaign emanating from Florida (¶¶ 371, 382, 405–407, 414, 427, 434–438, 576–581, 603–611, 623, 651-54), the value of such campaign overall (ECF No. 205 ¶¶ 12, 219, 624–29), their own place in that campaign both in terms of the publicity that their investment in/affiliation with FTX would provide

6

(¶¶ 6, 13, 219, 232, 365–399, 419–428, 560–567, 582–594, 631–642), participation with others located in Florida on matters relating to the publicity campaign (¶¶ 16, 231, 398, 424), and presence in Florida on related matters (Curry, see ¶¶ 372, 297, 408, and Osaka, see ¶¶ 556, 566–67).

For *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, *O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, *Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, and *Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, the allegations in support of PJ in Florida are reliant on FTX's domestic headquarters being based in Florida (ECF No. 182, ¶¶ 9, 45, 121, 290), Defendants' understanding of the overall publicity campaign emanating from Florida (*see* ECF No. 182, ¶¶ 281-91, 302; ECF No. 182-1), the value of such campaign overall (ECF No. 182, ¶¶ 231, 233, 287–88; ECF No. 182-2, at pp. 2-3, 6), their own place in that campaign both in terms of the publicity that their investment in/affiliation with FTX would provide as well as the fact that their investment moneys were used to further such campaign (ECF No. 182, ¶¶ 304–05, 318, 344–49, 351, 388), participation on the Advisory Board (by Temasek) with others located in Florida and on matters relating to the publicity campaign and LedgerX (also Florida-based) (ECF No. 182, ¶¶ 36, 251, 262, 361–63, 372), and presence in Florida (Sino Global) on related matters (ECF No. 182, ¶¶ 35, 253, 264, 316–18)).

Plaintiffs have already located certain documents demonstrating that jurisdictional discovery would yield jurisdictionally relevant facts—namely, the underlying conspiracy's existence as well as contacts with the relevant jurisdictions.

For example, an email exchange between Paradigm and FTX used as an exhibit in the criminal trial shows that the VCs were indeed inquiring into the relationship between FTX and Alameda, the lack of corporate controls at both companies or groups of companies, the VCs'

7

*CASE NO. 1:23-md-03076-KMM*

awareness of the value of their association with FTX, and that the VCs wanted only to bump FTX's value before getting it on the selling block and cashing out. See GX-320, attached as **Exhibit E**. Plaintiffs have a right to discovery into similar exchanges between FTX and Temasek and/or Sino Global to further prove up the existence of conspiracy jurisdiction.

Other exhibits from Sam Bankman-Fried's criminal trial confirm FTX's involvement in the Liquid Value fund in which Plaintiffs allege Sino Global and FTX were co general partners, which fund Plaintiffs further allege is representative of the quid pro quo arrangement existing between the entities—i.e., FTX's favor to Sino Global in return for Sino Global's agreement to invest in FTX and publicize the same. See GX-14B, an excerpt of which is attached as **Exhibit F**; see also ECF No. 182, ¶ 35 (alleging quid pro quo relationship involving Sino Global, FTX, and Liquid Value fund).

Although Sino Global's Matthew Graham denies any relevant Florida contacts in his declaration in support of the motion to dismiss for lack of personal jurisdiction, see ECF No. 300-1, a publicly available slide deck on the Liquid Value fund mentions that a "Sino Global Capital" team member was based in Miami, Florida. See Liquid Value Slide Deck, attached as **Exhibit G**, at p. 4. Sino Global further represented to regulators that its subsidiary maintained a "principal office and place of business" at 1111 Brickell Avenue, 10th Floor, Miami, Florida 33131 in relation to the Liquid Value fund. See Sino Global Capital Management LLC Form ADV, attached as **Exhibit H**, Sections 1 & 7.A.

Still other trial exhibits include additional details regarding which employees from the venture capitalist defendants were involved with the FTX investment, see GX-26, an excerpt of which is attached as **Exhibit I**; confirm meetings between Temasek employees that served on FTX's advisory board and FTX's SBF and Ramnik Arora that further suggest a blurring of the

8

lines by Temasek between its numerous subsidiaries, see GX-286, attached as **Exhibit J**; and reveal that a large number of documents exist regarding the FTX advisory board on which Temasek employees sat and which monitored and advised on matters pertaining to the Miami publicity campaign and Miami-based LedgerX, LLC d/b/a FTX US Derivatives, an entity with a longtime base in Miami that likewise formed part of FTX's publicity campaign to appear as the safe, dependable, and legitimate place to trade crypto, see S-2003, attached as **Exhibit K**, at Attachment A-1, at GX-29 ("Advisory_Board_Update_20210818 (1)"), GX-68 ("Advisory Board-comments"); *id.* Attachment A-2, at GX-234 ("Advisory Board Meeting Materials-09/19/2022"), GX-235 ("FTX Advisory Board Meeting 09_19_2022.pdf (Attachment To Advisory Board Meeting Materials – 09/19/2022), GX-278 ("RE: Advisory Board Meeting tomorrow").

If the guilty pleas of Caroline Ellison, Nishad Singh, and Gary Wang along with the agreements that we know exist between FTX and these venture capitalists, but which such venture capitalists have kept secret to date, do not alone provide sufficient basis for conspiracy jurisdiction to warrant jurisdictional discovery, then certainly Plaintiffs many detailed allegations combined with the foregoing documents tending to support the same get Plaintiffs across the line.

With respect to Moonstone, Deltec, and Chalopin, certain documents have come to light since Plaintiffs filed their complaint further establishing that such banks' services were key to the success of the conspiracy. For example, the indictment of Ryan Salame speaks to the struggle that FTX faced in locating banks that would provide the services that it needed to thrive—that is, until Deltec and Moonstone stepped in. See Salame Indictment, attached as **Exhibit L**, at ¶5 ("When FTX was founded … many U.S. banks were reluctant to do business with cryptocurrency companies, and those banks that were willing to open accounts for cryptocurrency companies had

extensive customer due diligence and licensing requirements, with which FTX was not compliant." (emphasis added)).

Others show that Moonstone made certain misrepresentations to regulators in order to obtain the licenses that it needed to enable FTX to move depositors' funds offshore. Specifically, on August 17, 2023, just one week after Plaintiffs filed the Administrative Class Action Complaint, the Federal Reserve announced an enforcement action against Moonstone, because, upon information and belief, at Chalopin's direction, Moonstone did not inform the Federal Reserve, in applying for membership, that Moonstone intended "to pursue a strategy focused on digital banking services or digital assets" (i.e., banking FTX and Alameda), and Moonstone "improperly chang[ed] its business plan" to provide such services (i.e., to FTX and Alameda) without prior notification or approval from the Federal Reserve. *See* Turner Wright, "Federal Reserve issues enforcement action against FTX-linked US bank," Cointelegraph.com (Aug. 17, 2023), *available at* https://cointelegraph.com/news/federal-reserve-issues-enforcement-action-against-ftx-linked-bank (last accessed Nov. 3, 2023) (summarizing the Federal Reserve's enforcement action and providing a link to the Federal Reserve's cease and desist order arising from same). Moonstone, Deltec, and Chalopin deny that Plaintiffs' allegations prove certain elements of their claims, including arguing that their routine banking services cannot constitute substantial assistance of any kind. Yet, these two documents alone prove the contrary. They likewise render even more plausible Plaintiffs' conspiracy allegations in support of conspiracy jurisdiction over these defendants in Florida.

None of the Defendants deny any of the Complaint's material allegations that FTX marketed its products to investors in, and from Florida through the use of paid celebrity endorsements (many millions of dollars), or that FTX paid Defendants many millions of dollars to

promote FTX's YBA's to millions of investors worldwide, including in Florida. Instead, the Defendants' jurisdictional declarations—exactly like the ones provided by Messrs. Cuban and Ehrlich in the Voyager cases—contain only general assertions regarding where the Defendants live and where they physically negotiated and signed their individual contracts with FTX.

Further, for purposes of specific jurisdiction under Florida's long arm statute, the issue is whether Defendants' tortious acts <u>caused injury</u> in Florida. *See Louis Vuitton Malleties, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) ("[W]e conclude that under Florida law where Mosseri created the websites and posted the alleged infringing material does not matter. For purposes of § 48.193(1)(a)(2), the issue is whether Mosseri's tortious acts caused injury in Florida."). Defendants' general denials of contacts with Florida do not address whether these Defendants nevertheless committed a tortious act within Florida by knowingly and purposely promoting FTX's products and services to Florida residents who purchased those products and services based on Defendants' promotional activities, even if conducted outside of Florida. *See Licciardo v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (holding that, under Florida law, a nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside the state that causes injury within Florida).

The law of this Circuit has long recognized a qualified right to jurisdictional discovery. *See Am. Civil Liberties, Union of Fla.*, 859 F.3d at 1341. The qualified right is afforded when (1) the movant timely moves for jurisdictional discovery and (2) the information the movant seeks, if it exists, would give rise to jurisdiction. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (distinguishing cases referring to qualified right of jurisdictional discovery because in *Posner*, plaintiff failed to make discovery requests in the eight months between the time the complaint was filed and the time it was dismissed) (citing *Eaton v. Dorchester Dev., Inc.*, 692

CASE NO. 1:23-md-03076-KMM

F.2d 727, 729-31 (11th Cir. 1982); *Gleneagle Ship Mgmt. Co. v. Leondakos*, 602 So.2d 1282, 1284 (Fla. 1992)); *see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790 (11th Cir. 2014) ("Our case law suggests that federal courts should order limited jurisdictional discovery where the information plaintiff seeks, if it exists, would give rise to jurisdiction.).

Thus, courts in this circuit routinely permit limited jurisdictional discovery before ruling on a jurisdictional motion to dismiss. *See Happy Tax Franchising, LLC v. Hill*, Case No. 19-24539-CIV, 2020 WL 13221241, *1 (S.D. Fla. Jun 24, 2020) (granting leave to conduct jurisdictional discovery prior to deciding motion to dismiss); *Kilma v. Carnival Corp.*, 2008 WL 4559231, at *1 (S.D. Fla. Oct. 10, 2008) (permitting jurisdictional discovery prior to ruling on a motion to dismiss) (Moore, J.); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 2008 WL. 1771857, *2 (S.D. Fla. Apr. 15, 2008) ("[J]urisdictional discovery will be useful to determine the actual extent of Defendants' contacts with Florida to determine whether this case can be resolved on its merits. Without factual discovery, the Court would be left to conjecture whether it could exercise jurisdiction over Defendants."); *Eaton*, 692 F.2d at 729 (holding it was premature to dismiss a claim for lack of jurisdiction where plaintiffs were not given an opportunity to elicit material through discovery to support a determination on jurisdiction); *Blanco Lines*, 632 F.2d at 657 (reversing a dismissal on jurisdictional grounds because "Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue" where the dismissal was entered before Plaintiff had an adequate opportunity to take jurisdictional discovery).

Here, limited jurisdictional discovery – consisting of the requests for production of documents, interrogatories, and a single deposition of each of the thirteen Defendants who are

12

CASE NO. 1:23-md-03076-KMM

challenging jurisdiction, *see* **Composite Exhibit D** – may reveal relevant facts, including, among other things:

1. Whether Defendants otherwise are engaged in substantial and not isolated activity targeting or taking place in Florida which may subject them to general jurisdiction in Florida;

2. Whether other agreements exist between Defendants and FTX under which Defendants agreed to target actions or submit to jurisdiction in Florida;

3. Whether Defendants have generated sales or revenue from advertising and marketing in Florida and/or to Florida consumers;

4. Whether Defendants are authorized to do business or conduct business in Florida;

5. Whether Defendants operate in the United States or sought financial investments or financing in the United States;

6. Whether Defendants maintain accounts with Florida based financial institutions;

7. Whether Defendants' board of directors or employees reside in Florida;

8. Whether there are any other relevant contacts between Defendants and FTX that may be sufficient to establish general or specific jurisdiction under the long-arm statute.

9. Whether Defendants contracted to target their advertising or marketing efforts for FTX's services and products to the state of Florida in a manner that may subject them to specific jurisdiction in Florida.

Plaintiffs should have the opportunity to at least conduct jurisdictional discovery before the Court rules on Defendants' jurisdictional arguments. Plaintiffs' request is timely and appropriate considering Defendants' jurisdictional arguments. *See, e.g., Happy Tax Franchising*, 2020 WL 13221241 at *1 ("The qualified right [to jurisdictional discovery] is afforded when 1)

*CASE NO. 1:23-md-03076-KMM*

the movant timely moves for jurisdictional discovery and 2) the information the movant seeks if it exists, would give rise to jurisdiction.").

## CONCLUSION

For all the foregoing reasons, Plaintiffs very respectfully request that the Court grant this Motion and enter an order granting leave for Plaintiffs to: (1) lift the stay of discovery in these proceedings now that Sam Bankman-Fried's trial has concluded; (2) conduct limited jurisdictional discovery in the manner described above within sixty (60) days of the Court's order on this Motion; and (3) to file any amendments to the Administrative Complaints or oppositions to the pending motions within twenty (20) days after completing that brief jurisdictional discovery. Any of the FTX Defendants can still raise any and all specific objections (undue burden, etc.) to the discovery that is served, which the Court can decide.

## S.D. FLA. L.R. 7.1 CERTIFICATION

Plaintiffs' Counsel certify that they have conferred with Counsel for Defendants Steph Curry, Golden State Warriors LLC, Solomid Corporation, Naomi Osaka, Udonis Haslem, Lawrence Gene David, Andre Jikh, Jeremy LeFebvre, Graham Stephan, Jaspreet Singh, Erika Kullberg, Brian Jung, Creators Agency LLC, Farmington State Bank d/b/a Moonstone Bank, SoftBank Group Corp., SoftBank Investment Advisers (UK) Limited, SoftBank Global Advisers Limited, Temasek Holdings (Private) Limited, Temasek International USA LLC, Sino Global Capital Holdings LLC, Deltec Bank and Trust Company Limited, and Jean Chalopin, in a good faith effort to resolve the issues raised in this Motion, and report that Defendants uniformly oppose the requested relief.

*CASE NO. 1:23-md-03076-KMM*

Dated: November 3, 2023.                                    Respectfully submitted,

**By:** */s/ Adam Moskowitz*                                **By:** */s/ David Boies*
Adam M. Moskowitz                                           David Boies
Florida Bar No. 984280                                      Alexander Boies
Joseph M. Kaye                                              Brooke A. Alexander
Florida Bar No. 117520                                      **BOIES SCHILLER FLEXNER LLP**
**THE MOSKOWITZ LAW FIRM, PLLC**                            333 Main Street
Continental Plaza                                           Armonk, NY 10504
3250 Mary Street, Suite 202                                 914-749-8200
Coconut Grove, FL 33133                                     dboies@bsfllp.com
Office: (305) 740-1423                                      aboies@bsfllp.com
adam@moskowitz-law.com                                      balexander@bsfllp.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead MDL Counsel*                                       *Co-Lead MDL Counsel*


Joseph R. Saveri                                            James R. Swanson
**JOSEPH SAVERI LAW FIRM**                                  Kerry J. Miller
601 California Street, Suite 1000                           **FISHMAN HAYGOOD LLP**
San Francisco, CA 94108                                     201 St. Charles Avenue, 46th Floor
Telephone: (415) 500-6800                                   New Orleans, LA 70170
jsaveri@saverilawfirm.com                                   Telephone: (504) 586-5252
                                                            jswanson@fishmanhaygood.com
                                                            kmiller@fishmanhaygood.com

*Plaintiffs' Steering Committee Members*

*Plaintiffs' Steering Committee Members*

15

*CASE NO. 1:23-md-03076-KMM*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 3, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz