# Composite

# Exhibit D

**PLAINTIFFS' OMNIBUS MOTION TO LIFT DISCOVERY STAY AND FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY, AND, IF NECESSARY TO AMEND THEIR COMPLAINTS WITH ANY FACTS ARISING FROM SUCH DISCOVERY**

(Part 2 of 3)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT DELTEC BANK AND TRUST COMPANY LIMITED.**

Plaintiffs in the above-titled action, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District of Florida, request that Defendant Deltec Bank and Trust Company Limited, produce all documents, electronically stored information, and things that are in your possession, custody, or control requested in response to the following Requests for Production.

Respectfully submitted on November ___, 2023

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| Plaintiffs' Steering Committee Members | |
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>**P.O. Drawer A**<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.     "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.     "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.     "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.     "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation,

- 1 -

correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.     "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.     "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.     "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda. "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

9.     "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For

- 2 -

purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

10.     "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

11.     "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures

within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that

- 4 -

such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

12.  "FTT" refers to the digital token created by the FTX Entities.

13.  "FTX Entities" refers to FTX Trading and/or FTX US.

14.  "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

15.  "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

3816133v1

16.     "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

17.     "Moonstone" refers to Farmington State Bank d/b/a Moonstone Bank, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Moonstone or in which Moonstone is a member or other owner, its international, national or local branches or offices. "Moonstone" shall also encompass Moonstone's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Moonstone, including but not limited to Jean Chalopin and Janvier Chalopin

18.     "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

19.     "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

20.     "You" or "Your" shall refer to Deltec Bank and Trust Company Limited ("Deltec"), its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Deltec or in which Deltec is a member or other owner, its international, national or local branches or offices. "You" or "Your" shall also encompass Deltec's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Deltec, including but not limited to Jean Chalopin.

3816133v1

21.    Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

22.    Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

3816133v1

## <u>INSTRUCTIONS</u>

1.      Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.      Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.      Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.      These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.      For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

    a.      the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

    b.      the date such document was prepared;

- 8 -

    c.      the names, employment positions and addresses of the author or preparers of such document;

    d.      the names, employment positions, and the addresses of each person who received such document;

    e.      the title, a brief description, and the subject matter of the document;

    f.      the number of the request under which such document would be produced but for the objection; and

    g.      description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.      If any document responsive to a request has been destroyed, produce all documents describing or referencing:

    a.      the contents of the lost or destroyed document;

    b.      all locations in which any copy of the lost or destroyed document had been maintained;

    c.      the date of such loss or destruction;

    d.      the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

    e.      all document retention and destruction policies in effect at the time any requested document was destroyed; and

    f.      all efforts made to locate any responsive document alleged to have been lost.

7.      In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8.      These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a

supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.   All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.   In responding to these Document Requests, you are to include Documents:

   a.   obtained from witnesses who gave information to any governmental agency or investigatory body;

   b.   that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

   c.   obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.   All documents are to be produced in the following method if not produced in its Native Format:

   a.   Single page .TIFF images

   b.   Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

   c.   Document level Text Files containing extracted full text or OCR text

   d.   Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

- 10 -

## REQUESTS FOR PRODUCTION

1.    All workpapers, communications and/or other documents concerning any of the accounts at Deltec that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda, including, but not limited to, account lists, account opening documents, signature cards, and terms for the accounts..

2.    All agreements between you and FTX Entities and/or Alameda, including but not limited to deposit agreements, wire transfer agreements, escrow agreements, custodial agreements, loan agreements, ACH agreements and authorization limits, account signatory agreements, and any other service or account management agreements.

3.    All workpapers, communications and/or other documents concerning the expected account activity in the accounts at Deltec that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda.

4.    All workpapers, communications and/or other documents concerning the actual account activity in the accounts that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda. This request specifically seeks but is not limited to: all account statements and summaries, records of deposits and withdrawals, wire transfer records, records of all other electronic funds transfers not constituting wire transfers, ACH records, records of account transfers between accounts opened or held in the name of or for the benefit of FTX Entities and/or Alameda at Deltec, and records of all account activity involving checks.

5.    All workpapers, communications and/or other documents concerning any loans made or credit facilities (e.g. irrevocable standby letters of credit, or other letters of

- 11 -

credit) offered by you to or for the benefit of FTX Entities and/or Alameda including all documents and communications concerning:

a.      any loan evaluations,

b.      any claimed or actual security or collateral for such loans or credit facilities,

c.      any repayment of such loans or credit facilities that you sought or that any person made, and

d.      any claimed or actual use of the proceeds of such loans or credit facilities.

This includes a request for documents sufficient to identify your employees with responsibility for making, approving, and monitoring such loans or credit facilities.

6.      All workpapers, communications and/or documents concerning concerning accounts personally held by directors, officers, managers, employees, representatives, or agents of FTX Entities and/or Alameda at Deltec, and any non-market or non-standard terms in those accounts, including but not limited to in respect of wire or electronic transfer processes, overdraft privileges, interest rates, and amortization.

7.      Your policies, procedures, manuals, training materials, instructions, or forms related to Anti-Money Laundering ("AML"), Countering the Financing of Terrorism ("CFT"), verification of customer identity, Customer Due Diligence ("CDD"), Know Your Customer ("KYC"), Customer Risk Assessment or Risk Rating, Services Risk Assessment or Risk Rating, Enhanced CDD, on-going monitoring of customer relationships, electronic funds transfers, Suspicious Transaction Reports ("STR"), account-opening, risk management, record-keeping, and any similar such policies or procedures related to customer due diligence or

account monitoring, as well as any heightened or enhanced versions of such policies or procedures. This request includes all versions of the foregoing documents that were proposed or put in place from 2019 to present.

8.  All workpapers, communications and/or documents concerning your monitoring for suspicious or fraudulent activity, including but not limited to actual or potential alerts, cautions, flags, or alarms raised as a result of Your monitoring systems or the policies and procedures referenced in the previous request – including enhanced versions of them – and any reports (*e.g.*, STRs, Currency Transaction Reports ("CTR"), Reports of International Transportation of Currency or Monetary Instruments ("CMIR"), large scale cash deposits, large scale transaction reports, low balance reports, balance fluctuation reports, reports of international funds transfers just below reporting threshold, or reports of atypical or uneconomical account activity or funds movement) made thereof, including any STR filed by you. This includes a request for documents sufficient to identify your employees who were involved in such procedures.

9.  All workpapers, communications and/or documents concerning your review of, or inquiry or investigation into, any activity at any time in any accounts (including correspondent accounts) held or opened in the name of or for the benefit of FTX Entities and/or Alameda at Deltec. This includes a request for all documents and communications concerning any actual or potential alerts, cautions, flags, alarms, or red flags raised by such review, inquiry, or investigation, based upon:

a.  possible or actual comingling of FTX Entities' depositors' funds or assets with FTX Entities' or Alameda's funds or assets,

b.  the volume of transfers made into and out of such accounts,

- 13 -

c.      the individual or aggregate value of transfers made into and out of such accounts,

d.      the rationale or lack thereof for large transactions made into and out of such accounts,

e.      the frequency of transfers made into and out of such accounts,

f.      the round trip or circular nature of any of the transfers made into and out of such accounts,

g.      the geographic place of origin or destination of transfers made into and out of such accounts,

h.      the unusual, atypical, or uneconomic nature of transfers made into and out of such accounts,

i.      the repetitiveness of transfers made into and out of such accounts,

j.      the complexity of transfers made into and out of such accounts,

k.      the electronic nature of transfers made into and out of such accounts,

l.      the purpose of transfers made into and out of such accounts,

m.      the identity of the transferees for transfers made out of such accounts, including whether the transferees (or the transferee accounts) were related to the transferors (or the transferor accounts),

n.      the identity of the transferees for transfers made out of such accounts, including whether the transferees appeared to take possession of funds or assets of depositors of FTX Entities,

o.      the identity of the transferees for transfers made out of such accounts, including whether the transferees were entities whose role as transferee had been disclosed to FTX Entities' depositors or you by FTX Entities or Alameda,

p.       any round number dollar amounts involved in the transfers made into or out of such accounts,

q.      any check pouching or cash letter activity in such accounts, or

r.      certain of these accounts being correspondent accounts.

This also includes a request for documents sufficient to identify your directors, officers, managers, employees, representatives, or other agents involved in such review, inquiry, or investigation.

10. All workpapers, communications and/or documents concerning generated by or concerning any automated transaction monitoring systems maintained by you in response to activity at any time in any accounts (including correspondent accounts) held or opened in the name of or for the benefit of FTX Entities and/or Alameda, including documents sufficient to identify the codes, rules, thresholds or parameters that have been established for or used by the automated transaction monitoring systems that generated any alerts, cautions, flags, alarms or red flags that are responsive to the previous request. This includes a request for any and all documents necessary to understand all fields in documents produced in response to the previous request.

11. All workpapers, communications and/or documents, including investigation reports, concerning the automated transaction monitoring system alerts, cautions, flags, alarms, or red flags that are responsive to individual request number 8. This includes a request for documents sufficient to identify your employees involved in reviewing such alerts, cautions, flags, alarms, or red flags.

12. All your general policies, procedures, or operating manuals related to the services you provided to FTX Entities and/or Alameda, including but not limited to those relating to processing wire transfers or other electronic funds transfers, treasury services, any advisory services, trade financing services, banking and taking custody of cryptocurrencies, or trading, lending, and borrowing digital assets.

- 15 -

13. All workpapers, communications and/or documents reflecting or relating to any special policies, procedures, or manuals—whether official or unofficial—that you prepared and followed specifically for the FTX Entities' and/or Alameda accounts.

14. All workpapers, communications and/or documents concerning actual, requested, or proposed visits by you to FTX Entities and/or Alameda or by FTX Entities and/or Alameda to you.

15. All communications among or between Deltec's directors, officers, managers, employees, representatives and/or agents concerning accounts held in the name of FTX Entities and/or Alameda.

16. All work papers, documents, and/or communications concerning the FTX Entities and/or Alameda that you provided to or exchanged with:

   a. Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, and Ramnik Arora;

   b. any actual or prospective customer of any of the FTX Entities and/or any actual or prospective investor in any of the FTX Entities;   or

   c. any of the Defendants.

17. All workpapers, communications and/or documents concerning (a) whether FTX Entities and/or Alameda were registered (including any registration for purposes of the Investment Company Act of 1940, 15 U.S.C. § 80a, et seq.) or regulated (including by the SEC or FINRA), or (b) whether any applicable digital assets were registered or were subject to a Regulation D exemption from registration under the Securities Act of 1933, 15 U.S.C. § 77a, et seq.

- 16 -

18.    All workpapers, communications and/or documents that you gathered or created before November 11, 2022 concerning:

    a.    any news articles or media coverage concerning FTX Entities and/or Alameda,

    b.    any litigation activity concerning FTX Entities and/or Alameda, or to which FTX Entities and/or Alameda was a party,

    c.    any proceedings at any administrative or regulatory body concerning FTX Entities and/or Alameda, or to which FTX Entities and/or Alameda was a party, including proceedings involving their employees or their customers, and the outcomes of any such proceedings, including sanctions, suspensions, fines, or censures,

    d.    any action that was taken or notice that was issued concerning FTX Entities and/or Alameda by a governmental, regulatory (including self-regulatory), oversight, administrative, criminal law, or enforcement body,

    e.    any proposed or final report issued or to be issued by any agency or government instrumentality (*e.g.*, an administrative or regulatory body or committee or subcommittee of either chamber of the U.S. Congress) concerning FTX Entities and/or Alameda,

    f.    allegations made by any claimed whistleblower against or concerning FTX Entities and/or Alameda,

    g.    any examination, inquiry, or review by a governmental or regulatory agency into or concerning FTX Entities and/or Alameda, and

    h.    all assertions that FTX Entities and/or Alameda were or might be engaged in or part of a fraudulent enterprise or Ponzi scheme, or were or might be engaged in or part of money-laundering activities for drug cartels or others.

This includes a request for all documents and communications concerning FTX Entities and/or Alameda that you conducted or attempted to conduct with persons litigating against them, including employees and customers (as referenced in subparagraphs (b) and (c) above), or with journalists (as referenced in subparagraph (a) above), or with whistleblowers (as referenced in subparagraph (f) above).

3816133v1

19.   All workpapers, communications and/or documents concerning any recommendations, referrals, or references that you provided to or for FTX Entities and/or Alameda, including as addressed to all actual or prospective depositors generally speaking, business counterparties, regulators or other governmental bodies, specific persons, "To Whom It May Concern," or otherwise. This includes a request for all documents and communications whereby you vouch for FTX Entities and/or Alameda, including for FTX Entities and/or Alameda insiders or control persons.

20.   All workpapers, communications and/or documents concerning the size and importance to You of your actual and prospective relationships with FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to your relationships with other clients. This includes a request for all documents and communications concerning the size and importance to you of:

a.   your actual and prospective revenue and profits from FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to your revenues and profits from other clients, and

b.   the balances in the accounts (including correspondent accounts) in the names of FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to balances in the accounts in the names of other clients.

This also includes documentation showing total deposits at Deltec in the accounts in the name of FTX Entities and/or Alameda as well as total deposits overall at Deltec.

21.   All workpapers, communications and/or documents concerning (a) threats, indications, or statements by FTX Entities and/or Alameda concerning the movement of some or all of their business, accounts, or balances from Deltec, (b)

your contemplation that FTX Entities and/or Alameda might do so, and (c) actual or potential efforts by you to grow your business, relationships, accounts, or balances with FTX Entities and/or Alameda.

22. All workpapers, communications and/or documents concerning FTX Entities and/or Alameda, or any of their officers or directors or control persons actually or potentially being (a) designated as a "VIP customer," (b) designated as a "Politically Exposed Person," or (c) deemed to be in a "Special Category of Clients," as well as all documents and communications concerning any risk level assigned by you to FTX Entities and/or Alameda.

23. All correspondent banking agreements between you and any other bank relating to any services performed by you concerning the FTX Entities and/or Alameda.

24. All audit, due diligence, or other reports (whether prepared by you or others) concerning the FTX Entities and/or Alameda, and all documents and communications concerning such reports.

25. Any periodic or intermittent audits, reviews, evaluations, or reports, either prepared internally or by a third party, regarding your compliance with applicable Statutes and Regulations or internal policies and procedures regarding compliance with Statutes and Regulations or industry standards and best practices, including any KYC procedures, AML procedures, customer identification procedures, procedures and related guidelines pursuant to the Bahamas Banks and Trust Companies Regulation Act, the Central Bank of the Bahamas Act and the Bahamas Cooperative Credit Unions Act, AML risk management, client due diligence, or account-opening policies and procedures maintained by you. This includes a request for any

3816133v1

audit or model validation reports regarding automated transaction monitoring systems maintained by you.

26.  All workpapers, communications and/or documents concerning the source of funds deposited into any accounts (including correspondent accounts) opened or held in the name of or for the benefit of FTX Entities and/or Alameda, including all documents and communications concerning whether these funds originated from (a) the purchase of cryptocurrencies or tokens, or (b) other deposit products offered by FTX Entities and/or Alameda.

27.  All workpapers, communications and/or documents concerning any services or products that FTX Entities and/or Alameda offered to customers or depositors or investors.

28.  All workpapers, communications and/or documents concerning the formation and governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, and certificates of good standing.

29.  All workpapers, communications and/or documents concerning the ownership of, and relationship between, if any, each of the FTX Entities and/or Alameda and/or any joint ventures, affiliates, and/or subsidiaries, including, but not limited to, organizational charts.

30.  All workpapers, communications and/or documents concerning your efforts to transform Bahamian laws, regulations, policies, or other guidance in order to make them more favorable for digital asset startups.

3816133v1

31.     All workpapers, communications and/or documents concerning the accounts opened by Tether Limited Inc. ("Tether") at Deltec, Tether's expected banking activity at Deltec, Tether's actual banking activity at Deltec, including transactions by, to, or through the FTX entities, their insiders, or their affiliates.

32.     All workpapers, communications and/or documents concerning the Crypto Bahamas cryptocurrency summit that you co-hosted with FTX in the Bahamas.

33.     All workpapers, communications and/or documents concerning the $50 million loan in favor of Deltec International Group from Norton Hall Ltd, and any other loans or other transactions between you and FTX, its insiders, or its affiliates.

34.     All workpapers, communications and/or documents concerning Jean Chalopin's efforts to obtain funding, whether via investment or loan or any other form whatsoever, for Deltec or Moonstone from the FTX Entities and/or Alameda.

35.     All workpapers, communications and/or documents concerning Alameda's $11.5 million investment in Moonstone.

36.     All workpapers, communications and/or documents between FTX Entities and/or Alameda and Jean Chalopin, whether in his personal capacity or representative capacity for Deltec and/or Moonstone, concerning the U.S. banking services that FTX Entities and/or Alameda requested or required.

37.     To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy

Actions, the Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request.

38. All workpapers, communications, documents or other discovery concerning your operations in the United States.

39. To the extent not produced in response to any of the foregoing requests, all documents and communications concerning any account at Deltec in the name of FTX Entities and/or Alameda. This includes a request for documents sufficient to identify your employees involved in (a) opening such accounts, (b) ongoing activity in such accounts, or (c) any review, inquiry, or investigation into the holders of such accounts or into any activity in such accounts.

3816133v1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO**
**DEFENDANT MOONSTONE BANK**

Plaintiffs in the above-titled action, pursuant to Rules 26 and 34 of the Federal Rules of

Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District

of Florida, request that Defendant Farmington State Bank d/b/a Moonstone Bank, produce all

documents, electronically stored information, and things that are in your possession, custody, or

control requested in response to the following Requests for Production.

Respectfully submitted on November ___, 2023

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| **Plaintiffs' Steering Committee Members** | |
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

## DEFINITIONS

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.      "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.      "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.      "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation,

- 1 -

correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Concerning" means relating to, referring to, describing, evidencing or constituting.

6. "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7. "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8. "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda.

9. "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10. "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For

- 2 -

purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11. "Deltec" refers to Deltec Bank & Trust Company Ltd. including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents.

12. "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof. To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the

- 3 -

full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

13. "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents

- 4 -

and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

14.     "FTT" refers to the digital token created by the FTX Entities.

15.     "FTX Entities" refers to FTX Trading and/or FTX US.

16.     "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

17.     "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers,

employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

18. "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

19. "Moonstone" refers to Farmington State Bank d/b/a Moonstone Bank, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Moonstone or in which Moonstone is a member or other owner, its international, national or local branches or offices. "Moonstone" shall also encompass Moonstone's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Moonstone, including but not limited to Jean Chalopin and Janvier Chalopin

20. "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

21. "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

22. "You" or "Your" shall refer to Farmington State Bank d/b/a Moonstone Bank ("Moonstone"), its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Moonstone or in which Deltec is a member or other owner, its

- 6 -

international, national or local branches or offices. "You" or "Your" shall also encompass Moonstone's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Moonstone, including but not limited to Jean Chalopin.

23.    Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

24.    Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## **INSTRUCTIONS**

1.    Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.    Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.    Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.    These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.    For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

   a.    the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

   b.    the date such document was prepared;

- 8 -

3816135v1

    c.    the names, employment positions and addresses of the author or preparers of such document;

    d.    the names, employment positions, and the addresses of each person who received such document;

    e.    the title, a brief description, and the subject matter of the document;

    f.    the number of the request under which such document would be produced but for the objection; and

    g.    description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.    If any document responsive to a request has been destroyed, produce all documents describing or referencing:

    a.    the contents of the lost or destroyed document;

    b.    all locations in which any copy of the lost or destroyed document had been maintained;

    c.    the date of such loss or destruction;

    d.    the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

    e.    all document retention and destruction policies in effect at the time any requested document was destroyed; and

    f.    all efforts made to locate any responsive document alleged to have been lost.

7.    In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8.    These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a

- 9 -

supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9. All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10. In responding to these Document Requests, you are to include Documents:

    a.    obtained from witnesses who gave information to any governmental agency or investigatory body;

    b.    that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

    c.    obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11. All documents are to be produced in the following method if not produced in its Native Format:

    a.    Single page .TIFF images

    b.    Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

    c.    Document level Text Files containing extracted full text or OCR text

    d.    Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

- 10 -

## REQUESTS FOR PRODUCTION

1.      All workpapers, communications and/or other documents concerning any of the accounts at Moonstone that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda, including, but not limited to, account lists, account opening documents, signature cards, and terms for the accounts.

2.      All agreements between you and FTX Entities and/or Alameda, including but not limited to deposit agreements, wire transfer agreements, escrow agreements, custodial agreements, loan agreements, ACH agreements and authorization limits, account signatory agreements, and any other service or account management agreements.

3.      All workpapers, communications and/or other documents describing the expected account activity in the accounts at Moonstone that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda.

4.      All workpapers, communications and/or other documentation reflecting the actual account activity in the accounts that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda. This request specifically seeks but is not limited to: all account statements and summaries, records of deposits and withdrawals, wire transfer records, records of all other electronic funds transfers not constituting wire transfers, ACH records, records of account transfers between accounts opened or held in the name of or for the benefit of FTX Entities and/or Alameda at Moonstone, and records of all account activity involving checks.

5.      All workpapers, communications and/or documents concerning any loans made or credit facilities (e.g. irrevocable standby letters of credit, or other letters of credit)

offered by you to or for the benefit of FTX Entities and/or Alameda including all documents and communications concerning:

a.      any loan evaluations,

b.      any claimed or actual security or collateral for such loans or credit facilities,

c.      any repayment of such loans or credit facilities that you sought or that any person made, and

d.      any claimed or actual use of the proceeds of such loans or credit facilities.

This includes a request for documents sufficient to identify your employees with responsibility for making, approving, and monitoring such loans or credit facilities.

6.      All workpapers, communications and/or documents concerning accounts personally held by directors, officers, managers, employees, representatives, or agents of FTX Entities and/or Alameda at Moonstone, and any non-market or non-standard terms in those accounts, including but not limited to in respect of wire or electronic transfer processes, overdraft privileges, interest rates, and amortization.

7.      Your policies, procedures, manuals, training materials, instructions, or forms related to Anti-Money Laundering ("AML"), Countering the Financing of Terrorism ("CFT"), verification of customer identity, Customer Due Diligence ("CDD"), Know Your Customer ("KYC"), Customer Risk Assessment or Risk Rating, Services Risk Assessment or Risk Rating, Enhanced CDD, on-going monitoring of customer relationships, electronic funds transfers, Suspicious Activity Reports ("SAR"), account-opening, risk management, record-keeping, and any similar such policies or procedures related to customer due diligence or account monitoring, as well as any heightened or enhanced versions of such policies or

- 12 -

procedures. This request includes all versions of the foregoing documents that were proposed or put in place from 2019 to present.

8.   All workpapers, communications and/or documents concerning your monitoring for suspicious or fraudulent activity, including but not limited to actual or potential alerts, cautions, flags, or alarms raised as a result of Your monitoring systems or the policies and procedures referenced in the previous request – including enhanced versions of them – and any reports (*e.g.*, SARs, Currency Transaction Reports ("CTR"), Reports of International Transportation of Currency or Monetary Instruments ("CMIR"), large scale cash deposits, large scale transaction reports, low balance reports, balance fluctuation reports, reports of international funds transfers just below reporting threshold, or reports of atypical or uneconomical account activity or funds movement) made thereof, including any SAR filed by you. This includes a request for documents sufficient to identify your employees who were involved in such procedures.

9.   All workpapers, communications and/or documents concerning your review of, or inquiry or investigation into, any activity at any time in any accounts (including correspondent accounts) held or opened in the name of or for the benefit of FTX Entities and/or Alameda at Moonstone. This includes a request for all documents and communications concerning any actual or potential alerts, cautions, flags, alarms, or red flags raised by such review, inquiry, or investigation, based upon:

a.       possible or actual comingling of FTX Entities' depositors' funds or assets with FTX Entities' or Alameda's funds or assets,

b.       the volume of transfers made into and out of such accounts,

- 13 -

c.      the individual or aggregate value of transfers made into and out of such accounts,

d.      the rationale or lack thereof for large transactions made into and out of such accounts,

e.      the frequency of transfers made into and out of such accounts,

f.      the round trip or circular nature of any of the transfers made into and out of such accounts,

g.      the geographic place of origin or destination of transfers made into and out of such accounts,

h.      the unusual, atypical, or uneconomic nature of transfers made into and out of such accounts,

i.      the repetitiveness of transfers made into and out of such accounts,

j.      the complexity of transfers made into and out of such accounts,

k.      the electronic nature of transfers made into and out of such accounts,

l.      the purpose of transfers made into and out of such accounts,

m.      the identity of the transferees for transfers made out of such accounts, including whether the transferees (or the transferee accounts) were related to the transferors (or the transferor accounts),

n.      the identity of the transferees for transfers made out of such accounts, including whether the transferees appeared to take possession of funds or assets of depositors of FTX Entities,

o.      the identity of the transferees for transfers made out of such accounts, including whether the transferees were entities whose role as transferee had been disclosed to FTX Entities' depositors or you by FTX Entities or Alameda,

p.       any round number dollar amounts involved in the transfers made into or out of such accounts,

q.      any check pouching or cash letter activity in such accounts, or

r.      certain of these accounts being correspondent accounts.

- 14 -

This also includes a request for documents sufficient to identify your directors, officers, managers, employees, representatives, or other agents involved in such review, inquiry, or investigation.

10.   All workpapers, communications and/or documents generated by or concerning any automated transaction monitoring systems maintained by you in response to activity at any time in any accounts (including correspondent accounts) held or opened in the name of or for the benefit of FTX Entities and/or Alameda, including documents sufficient to identify the codes, rules, thresholds or parameters that have been established for or used by the automated transaction monitoring systems that generated any alerts, cautions, flags, alarms or red flags that are responsive to the previous request. This includes a request for any and all documents necessary to understand all fields in documents produced in response to the previous request.

11.   All workpapers, communications and/or documents, including investigation reports, concerning the automated transaction monitoring system alerts, cautions, flags, alarms, or red flags that are responsive to individual request number 8. This includes a request for documents sufficient to identify your employees involved in reviewing such alerts, cautions, flags, alarms, or red flags.

12.   All your general policies, procedures, or operating manuals related to the services you provided to FTX Entities and/or Alameda, including but not limited to those relating to processing wire transfers or other electronic funds transfers, treasury services, any advisory services, trade financing services, banking and taking custody of cryptocurrencies, or trading, lending, and borrowing digital assets.

- 15 -

13. All workpapers, communications and/or documents concerning any special policies, procedures, or manuals—whether official or unofficial—that you prepared and followed specifically for the FTX Entities' and/or Alameda accounts.

14. All workpapers, communications and/or documents concerning actual, requested, or proposed visits by you to FTX Entities and/or Alameda or by FTX Entities and/or Alameda to you.

15. All communications among or between Moonstone's directors, officers, managers, employees, representatives and/or agents concerning accounts held in the name of FTX Entities and/or Alameda.

16. All documents, work papers, and/or communications concerning the FTX Entities and/or Alameda that you provided to or exchanged with:

   a.    Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison, Constance Wang, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, and Ramnik Arora;

   b.    any actual or prospective customer of any of the FTX Entities and/or any actual or prospective investor in any of the FTX Entities; or

   c.    any of the Defendants.

17. All workpapers, communications and/or documents concerning (a) whether FTX Entities and/or Alameda were registered (including any registration for purposes of the Investment Company Act of 1940, 15 U.S.C. § 80a, et seq.) or regulated (including by the SEC or FINRA), or (b) whether any applicable digital assets were registered or were subject to a Regulation D exemption from registration under the Securities Act of 1933, 15 U.S.C. § 77a, et seq.

- 16 -

18. All workpapers, communications and/or documents that you gathered or created before November 11, 2022 concerning:

    a. any news articles or media coverage concerning FTX Entities and/or Alameda,

    b. any litigation activity concerning FTX Entities and/or Alameda, or to which FTX Entities and/or Alameda was a party,

    c. any proceedings at any administrative or regulatory body concerning FTX Entities and/or Alameda, or to which FTX Entities and/or Alameda was a party, including proceedings involving their employees or their customers, and the outcomes of any such proceedings, including sanctions, suspensions, fines, or censures,

    d. any action that was taken or notice that was issued concerning FTX Entities and/or Alameda by a governmental, regulatory (including self-regulatory), oversight, administrative, criminal law, or enforcement body,

    e. any proposed or final report issued or to be issued by any agency or government instrumentality (*e.g.*, an administrative or regulatory body or committee or subcommittee of either chamber of the U.S. Congress) concerning FTX Entities and/or Alameda,

    f. allegations made by any claimed whistleblower against or concerning FTX Entities and/or Alameda,

    g. any examination, inquiry, or review by a governmental or regulatory agency into or concerning FTX Entities and/or Alameda, and

    h. all assertions that FTX Entities and/or Alameda were or might be engaged in or part of a fraudulent enterprise or Ponzi scheme, or were or might be engaged in or part of money-laundering activities for drug cartels or others.

This includes a request for all documents and communications concerning FTX Entities and/or Alameda that you conducted or attempted to conduct with persons litigating against them, including employees and customers (as referenced in subparagraphs (b) and (c) above), or with journalists (as referenced in subparagraph (a) above), or with whistleblowers (as referenced in subparagraph (f) above).

- 17 -

3816135v1

19.     All workpapers, communications and/or documents concerning any recommendations, referrals, or references that you provided to or for FTX Entities and/or Alameda, including as addressed to all actual or prospective depositors generally speaking, business counterparties, regulators or other governmental bodies, specific persons, "To Whom It May Concern," or otherwise. This includes a request for all documents and communications whereby you vouch for FTX Entities and/or Alameda, including for FTX Entities and/or Alameda insiders or control persons.

20.     All workpapers, communications and/or documents concerning the size and importance to You of your actual and prospective relationships with FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to your relationships with other clients. This includes a request for all documents and communications concerning the size and importance to you of:

a.      your actual and prospective revenue and profits from FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to your revenues and profits from other clients, and

b.      the balances in the accounts (including correspondent accounts) in the names of FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to balances in the accounts in the names of other clients.

This also includes documentation showing total deposits at Deltec in the accounts in the name of FTX Entities and/or Alameda as well as total deposits overall at Moonstone.

21.     All workpapers, communications and/or documents concerning (a) threats, indications, or statements by FTX Entities and/or Alameda concerning the movement of some or all of their business, accounts, or balances from Moonstone,

- 18 -

(b) your contemplation that FTX Entities and/or Alameda might do so, and (c) actual or potential efforts by you to grow your business, relationships, accounts, or balances with FTX Entities and/or Alameda.

22.     All workpapers, communications and/or documents concerning FTX Entities and/or Alameda, or any of their officers or directors or control persons actually or potentially being (a) designated as a "VIP customer," (b) designated as a "Politically Exposed Person," or (c) deemed to be in a "Special Category of Clients," as well as all documents and communications concerning any risk level assigned by you to FTX Entities and/or Alameda.

23.     All correspondent banking agreements between you and any other bank relating to any services performed by you concerning the FTX Entities and/or Alameda.

24.     All audit, due diligence, or other reports (whether prepared by you or others) concerning the FTX Entities and/or Alameda, and all documents and communications concerning such reports.

25.     Any periodic or intermittent audits, reviews, evaluations, or reports, either prepared internally or by a third party, regarding your compliance with applicable Statutes and Regulations or internal policies and procedures regarding compliance with Statutes and Regulations or industry standards and best practices, including any KYC procedures, AML procedures, customer identification procedures, procedures and related guidelines pursuant to the Bank Secrecy Act, Patriot Act, FinCEN, FFEIC Manual, AML risk management, client due diligence, or account-opening policies and procedures maintained by you. This includes a request for any audit or

- 19 -

model validation reports regarding automated transaction monitoring systems maintained by you.

26.    All workpapers, communications and/or documents concerning the source of funds deposited into any accounts (including correspondent accounts) opened or held in the name of or for the benefit of FTX Entities and/or Alameda, including all documents and communications concerning whether these funds originated from (a) the purchase of cryptocurrencies or tokens, or (b) other deposit products offered by FTX Entities and/or Alameda.

27.    All workpapers, communications and/or documents concerning any services or products that FTX Entities and/or Alameda offered to customers or depositors or investors.

28.    All workpapers, communications and/or documents concerning the formation and governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, and certificates of good standing.

29.    All workpapers, communications and/or documents concerning the ownership of, and relationship between, if any, each of the FTX Entities and/or Alameda and/or any joint ventures, affiliates, and/or subsidiaries, including, but not limited to, organizational charts.

30. All workpapers, communications and/or documents concerning the accounts opened by Tether Limited Inc. ("Tether") at Deltec, Tether's expected banking activity at Deltec, Tether's actual banking activity at Deltec, including transactions by, to, or through the FTX Entities, their insiders, or their affiliates.

- 20 -

31.     All workpapers, communications and/or documents concerning your efforts to transform Bahamian laws, regulations, policies, or other guidance in order to make them more favorable for digital asset startups.

32.     All workpapers, communications and/or documents concerning the $50 million loan in favor of Deltec International Group from Norton Hall Ltd.

33.     All workpapers, communications and/or documents concerning Jean Chalopin's efforts to obtain funding, whether via investment or loan or any other form whatsoever, for Deltec or Moonstone from the FTX Entities and/or Alameda.

34.     All workpapers, communications and/or documents concerning Alameda's $11.5 million investment in Moonstone.

35.     All workpapers, communications and/or documents between FTX Entities and/or Alameda and Jean Chalopin, whether in his personal capacity or representative capacity for Deltec and/or Moonstone, concerning the U.S. banking services that FTX Entities and/or Alameda requested or required.

36.     To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, the Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request.

37.     All workpapers, communications, documents, other discovery concerning your operations in the United States.

38.     To the extent not produced in response to any of the foregoing requests, all documents and communications concerning any account at Moonstone in the name of FTX Entities and/or Alameda. This includes a request for documents sufficient to identify your employees involved in (a) opening such accounts, (b) ongoing activity in such accounts, or (c) any review, inquiry, or investigation into the holders of such accounts or into any activity in such accounts.

3816135v1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JEAN CHALOPIN

Plaintiffs in the above-titled action, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District of Florida, request that Defendant Jean Chalopin, produce all documents, electronically stored information, and things that are in your possession, custody, or control requested in response to the following Requests for Production.

Respectfully submitted on November ___, 2023

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| **Plaintiffs' Steering Committee Members** | |
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.      "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.      "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.      "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation,

- 1 -

correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5.    "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.    "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.    "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.    "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda.

9.    "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10.    "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For

- 2 -

purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11.     Deltec" refers to Deltec Bank & Trust Company Ltd. including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents.

12.     "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the

- 3 -

full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

13.  "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents

- 4 -

and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

14.     "FTT" refers to the digital token created by the FTX Entities.

15.     "FTX Entities" refers to FTX Trading and/or FTX US.

16.     "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

17.     "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers,

employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

18.     "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

19.     "Moonstone" refers to Farmington State Bank d/b/a Moonstone Bank, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Moonstone or in which Moonstone is a member or other owner, its international, national or local branches or offices. "Moonstone" shall also encompass Moonstone's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Moonstone, including but not limited to Jean Chalopin and Janvier Chalopin

20.     "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

21.     "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

22.     "You" or "Your" shall refer to Deltec Bank and Trust Company Limited ("Deltec"), its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Deltec or in which Deltec is a member or other owner, its international, national or local

- 6 -

branches or offices. "You" or "Your" shall also encompass Deltec's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Deltec, including but not limited to Jean Chalopin.

23. Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

24. Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## **INSTRUCTIONS**

1.    Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.    Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.    Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.    These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.    For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

a.    the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

b.    the date such document was prepared;

c.   the names, employment positions and addresses of the author or preparers of such document;

d.   the names, employment positions, and the addresses of each person who received such document;

e.   the title, a brief description, and the subject matter of the document;

f.   the number of the request under which such document would be produced but for the objection; and

g.   description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.   If any document responsive to a request has been destroyed, produce all documents describing or referencing:

a.   the contents of the lost or destroyed document;

b.   all locations in which any copy of the lost or destroyed document had been maintained;

c.   the date of such loss or destruction;

d.   the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

e.   all document retention and destruction policies in effect at the time any requested document was destroyed; and

f.   all efforts made to locate any responsive document alleged to have been lost.

7.   In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8.   These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a

- 9 -

supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.     All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.     In responding to these Document Requests, you are to include Documents:

   a.     obtained from witnesses who gave information to any governmental agency or investigatory body;

   b.     that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

   c.     obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.     All documents are to be produced in the following method if not produced in its Native Format:

   a.     Single page .TIFF images

   b.     Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

   c.     Document level Text Files containing extracted full text or OCR text

   d.     Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

## **REQUESTS FOR PRODUCTION**

1.    Work papers, communications, and/or other documents prepared by you and/or delivered to, exchanged with, or received from the FTX Entities and/or Alameda, including, but not limited to Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison, Constance Wang, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, and Ramnik Arora.

2.    Work papers, communications, and/or other documents prepared by you and/or delivered to, exchanged with, or received from the other Defendants concerning the FTX Entities and/or Alameda.

3.    Work papers, communications, and/or other documents concerning your efforts to transform Bahamian laws, regulations, policies, or other guidance in order to make them more favorable for digital asset startups, including, but not limited to, correspondence with Ryan Pinder.

4.    Work papers, communications, and/or other documents concerning the Crypto Bahamas cryptocurrency summit that you co-hosted with FTX in the Bahamas.

5.    Work papers, communications, and/or other documents prepared by you and/or delivered to, exchanged with, or received from the other Defendants concerning the cryptocurrency summit that you co-hosted with FTX in the Bahamas.

6.    Work papers, communications, and/or other documents concerning Deltec's efforts to raise debt capital in New York.

7.    Work papers, communications, and/or other documents concerning the $50 million loan in favor of Deltec International Group from Norton Hall Ltd.

3816136v1

8.      Workpapers, communications and/or documents concerning the accounts opened by Tether Limited Inc. ("Tether") at Deltec, Tether's expected banking activity at Deltec, Tether's actual banking activity at Deltec, including transactions by, to, or through the FTX entities, their insiders, or their affiliates.

9.      Work papers, communications, and/or other documents concerning your efforts to obtain funding, whether via investment or loan or any other form whatsoever, for Deltec or Moonstone from the FTX Entities and/or Alameda.

10.     Work papers, communications, and/or other documents concerning Alameda's $11.5 million investment in Moonstone.

11.     Work papers, communications, and/or other documents between FTX Entities and/or Alameda and you, whether in your personal capacity or representative capacity for Deltec and/or Moonstone, concerning the U.S. banking services that FTX Entities and/or Alameda requested or required.

12.     Work papers, communications, and/or other documents concerning Moonstone's application for and membership in the Federal Reserve.

13.     Work papers, communications, agreements and/or other documents concerning ownership, purchase, and/or sale of the Albany condominium complex, by or to you, Joe Lewis, Sam Bankman-Fried, FTX and/or Alameda.

14.     All documents, communications, or other discovery concerning your conducting business, or seeking financing or other investments, in the United States.

15.     To the extent not produced in response to any of the foregoing requests, all documents and communications concerning any account at Deltec or Moonstone in the name of FTX Entities and/or Alameda. This includes a request for documents

- 12 -

sufficient to identify your employees involved in (a) opening such accounts, (b) ongoing activity in such accounts, or (c) any review, inquiry, or investigation into the holders of such accounts or into any activity in such accounts.

16.     To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, the Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request.

- 13 -

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT**
**SINO GLOBAL CAPITAL LIMITED**

Plaintiffs in the above-titled action, pursuant to Rules 26, 33 34, and 36 of the Federal

Rules of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern

District of Florida, request that Defendant Sino Global Capital Limited respond to the enclosed

Requests for Admission and Interrogatories and produce all documents, electronically stored

information, and things that are in your possession, custody, or control requested in response to

the following Requests for Production.

Respectfully submitted on November ___, 2023

| **Plaintiffs' Co-Lead Counsel** | |
|---|---|
| By: */s/ Adam Moskowitz*　　　　　<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| **Plaintiffs' Steering Committee Members** | |
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.    "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), and/or successors, which includes but is not limited to Alameda Ventures Ltd., and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of the foregoing. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.    "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.    "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.    "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by

any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.     "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.     "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.     "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda.

9.     "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10. "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11. "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

12.     "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or

- 4 -

privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

13.    "FTT" refers to the digital token created by the FTX Entities.

14.    "FTX Entities" refers to FTX Trading and/or FTX US.

15.    "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

16.    "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel

Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

17. "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

18. "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

19. "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

20. "Work Papers" refers to all documents, including drafts, organizational charts, spreadsheets, and other data, prepared, maintained and/or obtained by you concerning the planning, procedures performed, information obtained, and conclusions reached in connection with any investment, or potential investment, in any of the FTX Entities and/or Alameda. "Work Papers" also includes documents that you have in your possession, custody or control that were prepared, maintained and/or obtained by you concerning the FTX Entities and/or Alameda that were prepared or obtained from any of the FTX Entities and/or Alameda or any other persons or entities investing in or providing accounting, auditing, or consulting services to the FTX Entities and/or Alameda.

21. "You" or "Your" shall refer to the Defendant responding to these requests, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any funds or other investment vehicles held by the Defendant responding or in which the Defendant responding is a member or other

owner, its international, national or local branches or offices, including, but not limited to Sino Global Capital Holdings, LLC, Ryze Labs, and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of the responding Defendant.

22.    "Sino Global Capital Management" shall refer to Sino Global Capital Management LLC, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, any international, national or local branches or offices, and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on its behalf.

23.    "Liquid Value" shall refer to the fund(s) in which you were co-general partners with FTX Entities and/or Alameda and any funds related in any way thereto. It shall refer to Liquid Value Fund I LP; Liquid Value GP Limited; Liquid Value US Fund I LP; Liquid Value Offshore Feeder Fund I LP; and each of the foregoing's predecessors, successors, subsidiaries, departments divisions, and/or affiliates, any international, national or local branches or offices, and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Liquid Value.

24.    Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

25.    Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase.

No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## INSTRUCTIONS

1.   Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.   Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.   Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.   These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.   For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

a.   the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

b.     the date such document was prepared;

c.     the names, employment positions and addresses of the author or preparers of such document;

d.     the names, employment positions, and the addresses of each person who received such document;

e.     the title, a brief description, and the subject matter of the document;

f.     the number of the request under which such document would be produced but for the objection; and

g.     description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.     If any document responsive to a request has been destroyed, produce all documents describing or referencing:

a.     the contents of the lost or destroyed document;

b.     all locations in which any copy of the lost or destroyed document had been maintained;

c.     the date of such loss or destruction;

d.     the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

e.     all document retention and destruction policies in effect at the time any requested document was destroyed; and

f.     all efforts made to locate any responsive document alleged to have been lost.

7.     In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

- 10 -

8.      These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.      All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.     In responding to these Document Requests, you are to include Documents:

a.      obtained from witnesses who gave information to any governmental agency or investigatory body;

b.      that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

c.      obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.     All documents are to be produced in the following method if not produced in its Native Format:

a.      Single page .TIFF images

b. Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

c. Document level Text Files containing extracted full text or OCR text

d. Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Please admit that you are or were registered to conduct business in Florida.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that Sino Global Capital Management is or was registered to conduct business in Florida.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that Liquid Value is or was registered to conduct business in Florida.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that Sino Global Capital Management is or was registered to conduct business in California.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that Liquid Value is or was registered to conduct business in California.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that you do or did operate, conduct, engage in, or carry on a business or business venture in Florida.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that Sino Global Capital Management does or did operate, conduct, engage in, or carry on a business or business venture in Florida.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that Liquid Value does or did operate, conduct, engage in, or carry on a business or business venture in Florida.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that Sino Global Capital Management does or did operate, conduct, engage in, or carry on a business or business venture in California.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that Liquid Value does or did operate, conduct, engage in, or carry on a business or business venture in California.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that you regularly conduct or conducted business in Florida.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that Sino Global Capital Management regularly conducts or conducted business in Florida.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that Liquid Value regularly conducts or conducted business in Florida.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that Sino Global Capital Management regularly conducts or conducted business in California.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that Liquid Value regularly conducts or conducted business in California.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that the business that Sino Global Capital Management conducts or conducted in Florida and/or California relates at least in part to Plaintiffs' factual allegations in their complaint (SD Fla. Case No. 23-md-3076, R. Doc. 182).

**REQUEST FOR ADMISSION NO. 17:**

Please admit that the business that Liquid Value conducts or conducted in Florida and/or California relates at least in part to Plaintiffs' factual allegations in their complaint (SD Fla. Case No. 23-md-3076, R. Doc. 182).

**REQUEST FOR ADMISSION NO. 18:**

Please admit that you maintain or maintained a place of business, office, facility or agency in Florida, or otherwise have physical operations in Florida.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that Sino Global Capital Management maintains or maintained a place of business, office, facility or agency in Florida, or otherwise has physical operations in Florida. Please further admit that such "place of business, office, facility or agency in Florida" is or was Sino Global Capital Management's principal office or place of business.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that Liquid Value maintains or maintained a place of business, office, facility or agency in Florida, or otherwise has physical operations in Florida. Please further admit that such "place of business, office, facility or agency in Florida" is or was Liquid Value's principal office or place of business.

**REQUEST FOR ADMISSION NO. 21:**

Please admit that Sino Global Capital Management maintains a place of business, office, facility or agency in California, or otherwise has physical operations in California.

**REQUEST FOR ADMISSION NO. 22:**

Please admit that Liquid Value maintains or maintained a place of business, office, facility or agency in California, or otherwise has physical operations in California. Please further admit

that such "place of business, office, facility or agency in California" is or was Liquid Value's principal office or place of business.

**REQUEST FOR ADMISSION NO. 23:**

Please admit that Matthew Graham owns or owned in whole or in part, whether directly or indirectly, You, Sino Global Capital Management, and Liquid Value.

**REQUEST FOR ADMISSION NO. 24:**

Please admit that Matthew Graham manages or managed—whether directly or indirectly— Your, Sino Global Capital Management's, and Liquid Value's operations.

<b>INTERROGATORIES</b>

**INTERROGATORY NO. 1:**

If you responded to any of the foregoing Requests for Admission in any way other than an unequivocal admission, please set forth all facts to support each such response(s).

**INTERROGATORY NO. 2:**

Please identify all current and former owners of Sino Global Capital Limited, Sino Global Capital Holdings, LLC, Sino Global Capital Management, and Liquid Value, including the ownership percentage held by each owner identified in response to this Interrogatory No. 2.

**INTERROGATORY NO. 3:**

Please identify your, Sino Global Capital Management's, and Liquid Value's employees, executives, and directors. In doing so, please provide their home address(es), titles and descriptions of their role(s) with respect to Sino Global Capital Limited, Sino Global Capital Holdings, LLC, Sino Global Capital Management, and/or Liquid Value, their office address(es), their work phone number(s), and their work email address(es).

**INTERROGATORY NO. 4:**

Please identify the entity that pays the salaries or any other compensation of the personnel listed in response to Interrogatory No. 4.

**INTERROGATORY NO. 5:**

Please identify the entity that pays the expenses and/or losses of Sino Global Capital Holdings, LLC.

**INTERROGATORY NO. 7:**

Please describe the business of, and how such business is conveyed to you, Sino Global Capital Management, and/or Liquid Value.

**INTERROGATORY NO. 8:**

Please identify the executives, directors, employees, and/or representatives of Sino Global Capital Holdings, LLC, Sino Global Capital Limited, Sino Global Capital Management, and/or Liquid Value who participated in responding to these discovery requests.

## **REQUESTS FOR PRODUCTION**

1. All workpapers, communications, and other documents concerning subscription agreements, membership agreements, partnership agreements, and/or other agreements between you and any of the FTX Entities, Alameda or any of the Defendants relating to any of the FTX Entities and/or Alameda.

2. All communications between you, Sino Global Capital Management, and/or Liquid Value and any of the FTX Entities, Alameda, or any of the Defendants concerning any of the FTX Entities and/or Alameda.

3.      All communications between Matthew Graham and any executive, director, employee, agent, and/or representative of any of the FTX Entities, Alameda, North Dimension Inc., and/or LedgerX LLC.

4.      All communications between Matthew Graham and Defendants and/or Defendants' executives, directors, employees, agents, and/or representatives.

5.      All work papers, communications, and other documents concerning the Series B funding of FTX Trading, which closed in October 2021, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

6.      Documents evidencing wire transfers or other payments, or instructions related to the foregoing, for any payments (1) from you, Sino Global Capital Management, and/or Liquid Value to any of the FTX Entities and/or Alameda or (2) from any of the FTX Entities and/or Alameda to you, Sino Global Capital Management, and/or Liquid Value.

7.      Documents and communications concerning your due diligence efforts undertaken by you or on your behalf in conjunction with potential or actual investments in or with FTX Entities and/or Alameda, whether such efforts were undertaken before the investment or following the investment in the form of continued monitoring, tracking, or management. Such documents and communications should include but not be limited to standard due diligence policies and/or checklists for your usual due diligence efforts, as well as all documents and communications specifically relating to or collected through your due diligence efforts undertaken with respect

to your actual investment(s) and/or any other potential investment(s) in FTX Entities and/or Alameda, or your Liquid Value funds.

8.      Contracts for any legal services you, Sino Global Capital Management, and/or Liquid Value sought or obtained in relation to the FTX Entities and/or Alameda.

9.      All work papers, communications, and other documents, concerning any investment by FTX Entities and/or Alameda in you, Sino Global Capital Management, Liquid Value, or in any other investment fund, limited partnership, or other business venture that you own, operate, or manage, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

10.     All work papers, communications, and other documents concerning Liquid Value, including, but not limited to offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and any diligence materials concerning any of the FTX Entities and/or Alameda.

11.     All "Relationship Documents," including but not limited to, any side letters, that Liquid Value references in any proofs of claim (including, but not limited to, claim numbers 3132 and 3967) or supplements thereto that Liquid Value filed in the Bankruptcy Actions. This request specifically includes any amendments or alterations to those claims.

12.     All work papers, communications, and other documents concerning your, Sino Global Capital Management's, and/or Liquid Value's membership and service on the board, including any advisory board, of any of the FTX Entities and/or

Alameda, including, but not limited to, agendas, presentations, and minutes of any and all meetings of such board.

13. All work papers, communications, and other documents concerning the membership and service on your, Sino Global Capital Management's, and/or Liquid Value's board, including any advisory board, by any of the FTX Entities and/or Alameda, including, but not limited to, agendas, presentations, and minutes of any and all meetings of such board.

14. All work papers, communications, and other documents concerning any of the FTX Entities and/or Alameda that were prepared or maintained in connection with, and/or referred to, your investments in, or any other potential investments in, loans to, or financing for any of the FTX Entities and/or Alameda.

15. All documents concerning any working group lists, or the names and contact information for all persons or entities, you received, prepared, or maintained in connection with your investments, or potential investments, in any of the FTX Entities and/or Alameda, including, but not limited to, persons in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management), directors, and/or other personnel involved in the Series A, Series B, Series B-1, Series C, and/or any other funding for, investment in, or potential investment in any of the FTX Entities and/or Alameda.

16. All documents and work papers concerning the operations of any of the FTX Entities and/or Alameda, including, but not limited to, operating pro formas, uses

and sources of cash and investment proceeds, investment portfolios, status reports, budgets, and/or presentations concerning the performance of any of the FTX Entities and/or Alameda, as well as, any market research, profitability analyses, evaluations, and/or other reports prepared by you or for you by any investment bankers, research analysts, management consultants and/or other professional.

17. All documents and work papers concerning the formation and corporate governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, certificates of good standing, charters for any and all board committees, compliance policies, anti-corruption policies, whistleblower polices, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

18. All documents and work papers concerning the implementation of accounting controls, financial controls, cash management controls and/or audit processes at any of the FTX Entities and/or Alameda, including, but not limited to audit committees, internal and/or external audits, audited and/or unaudited financial statements, general ledgers, policies and procedures concerning audits, asset allocation, liquidity forecasting, and disbursement controls, and other financial records for any of the FTX Entities and/or Alameda, and the engagement of, and services provided by, any accounting firm by and for any of the FTX Entities and/or Alameda, including, but not limited to Robert Lee & Associates, Prager Metis CPAs LLC and/or Armanino LLP.

19.    Any documents evidencing updates, progress reports, or similar with respect to (1) your investments in FTX Entities and/or Alameda and (2) FTX Entities' and/or Alameda's financials.

20.    All documents and work papers concerning North Dimension Inc, including, but not limited to, its ownership, employees, business purpose, and operations.

21.    All documents and work papers concerning LedgerX LLC, including, but not limited to, its ownership, employees, business purpose, and operations.

22.    All communications with any representative, employee, or agent of LedgerX LLC.

23.    All documents and work papers concerning any transactions and/or transfers of fiat, cryptocurrency, or other assets between any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, including, but not limited to, disbursements, donations, gifts, bonuses and other compensation, capital contributions, promissory notes, inter-company agreements, service agreements, and loan agreements.

24.    All documents and work papers concerning risk management controls—and any exemptions or alterations thereto for, but not limited to, Alameda—at any of the FTX Entities and/or Alameda, including, but not limited to, policies and procedures concerning investment diversification, cryptocurrency products and other digital assets, derivative products, and leverage, including, but not limited to, the purported

"risk engine" auto-liquidator and other protocols to prevent a user from becoming over-leveraged on any of the FTX Entities' platforms and/or the FTX Entities' purported policy prohibiting any user from maintaining a negative balance on their platforms.

25.    All documents and work papers concerning regulatory compliance at any of the FTX Entities and/or Alameda, including, but not limited to, campaign finance regulations, licensure of the FTX Entities and/or Alameda in the jurisdictions in which each operates, including, but not limited to, money transmitter licenses, and the regulation of cryptocurrencies, tokens, and other digital assets—including the yield-bearing accounts offered by the FTX Entities—as securities.

26.    All documents and work papers concerning any charitable, political and/or campaign contribution by any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

27.    All documents and work papers concerning any internal complaints, including, but not limited to, "whistleblower" complaints, litigation, administrative or regulatory proceedings, investigations or governmental actions involving any of the FTX Entities and/or Alameda.

28.    All documents and work papers concerning the custody, and/or safeguarding, of customer funds, including fiat, cryptocurrencies, and other digital assets,  by any of

the FTX Entities and/or Alameda, including, but not limited to, the labeling of customer accounts as "for the benefit of" ("FBO") the customer, the segregation (or lack thereof) of customer funds from the FTX Entities' operating accounts, the storage of customer funds in digital wallets on the FTX Entities' platforms, and the ledgering and/or bookkeeping of those funds by any of the FTX Entities and/or Alameda.

29.   All documents and work papers concerning the terms of service for any of the FTX Entities and use thereof by customers or investors.

30.   All documents and work papers concerning FTT, including, but not limited to, FTT held by any of the FTX Entities and/or Alameda, and their use of FTT as collateral for loans and other transactions.

31.   All documents and work papers concerning the real and tangible property held by any FTX Entity and/or Alameda, including, but not limited to, the location and use of such property, and any mortgages, deeds of trust, lease and/or security agreements for the properties, and transfers of such properties by, among, and between any FTX Entity, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

32.   All documents and work papers concerning the decision to post, preparation of any post, and posting on your website, social media platform, or any other public forum

of any statements concerning the FTX Entities, Alameda, any director, control person, or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, and/or any of the Defendants.

33.    All documents, work papers, and/or communications concerning the FTX Entities and/or Alameda you provided to or exchanged with:

    a.    Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Caroline Ellison, Gary Wang, Nishad Singh, Constance Wang, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, and Ramnik Arora;

    b.    any actual or prospective customer of any of the FTX Entities and/or Alameda and/or any actual or prospective investor in any of the FTX Entities and/or Alameda;   or

    c.    any of the Defendants.

34.    To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, the Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request for discovery.

35.    All documents, communications, and work papers relating to fraud detection and anti-money laundering protection by you, including, but not limited to, policies, procedures, manuals, monitoring systems, including automated monitoring systems, even if generated by a third party, employed by you to detect, monitor, and/or prevent fraud, money laundering, and/or other misconduct by the companies and other entities in which you invest, including, but not limited to, Know Your Customer or Know Your Client (together, "KYC") obligations, policies, procedures and compliance; Know Your Business ("KYB") obligations, policies, procedures, and compliance; Ant-Money Laundering ("AML") obligations, policies, procedures, and compliance; Customer Identification Program ("CIP") obligations, policies, procedures, and compliance; Bank Secrecy Act ("BSA") obligations, policies, procedures and compliance; risk management; and other due diligence.

36.    All work papers, communications, and other documents concerning your decision to make the investment in the FTX Entities and/or Alameda, including but not limited to any meeting minutes, memoranda, or materials with respect to your internal committee or board discussions; and any meeting minutes, memoranda, or materials with respect to communications with Defendants.

37.    Documents concerning any meetings between your directors, executives, employees, representatives, and/or agents and FTX's directors, executives, employees, representatives, and/or agents. This request includes but is not limited to any expense reports and calendar entries related to any such meetings.

38.    All workpapers, communications, and other documents concerning your hiring and employment of Constance Wang.

39.   Organizational charts for Sino Global Capital Limited, Sino Global Capital Holdings, Sino Global Capital Management, Liquid Value, Ryze Labs, and any other intermediate entities existing along the chain of ownership between or among the entities specifically named in this request and Matthew Graham or any other ultimate owner and/or shareholder.

40.   All documents and work papers concerning your, Sino Global Capital Management's, and/or Liquid Value's formation and corporate governance, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, certificates of good standing, charters for any and all board committees, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

41.   Your, Sino Global Capital Management's, and Liquid Value's audited financial statements, including income statements, balance sheets and statements of cash flow, whether consolidated or unconsolidated.

42.   Your, Sino Global Capital Management's, and Liquid Value's Federal and State (in whatever state they may be filed) tax returns and reporting information.

43.   Documents concerning your, Sino Global Capital Management's, and/or Liquid Value's banking relationships in California and/or Florida.

44.   All documents, work papers, or other discovery concerning any agreements or contracts between or among Sino Global Capital Limited, Sino Global Capital Holdings, LLC, Sino Global Capital Management, Liquid Value, and/or any owner

of the foregoing, including, but not limited to, intercompany agreements, lease-back agreements, and/or shared services agreement.

45.     All documents, work papers, or other discovery concerning property, personnel, or equipment provided to or shared by Sino Global Capital Limited, Sino Global Capital Holdings, LCC, Sino Global Capital Management, and/or Liquid Value.

46.     All documents, work papers, or other discovery concerning your, Sino Global Capital Management's, and/or Liquid Value's operations in the United States, including, but not limited to, any offices and personnel located in California and Florida.

47.     All documents, work papers, or other discovery concerning any registration by you, Sino Global Capital Management, and/or Liquid Value to conduct business in Florida or California.

48.     All documents, work papers, or other discovery concerning your, Sino Global Capital Management's, and/or Liquid Value's operating, conducting, engaging in, or carrying on a business or business venture in Florida or California.

49.     All documents, work papers, or other discovery concerning any place of business, office, facility, agency, or office that you, Sino Global Capital Management, and/or Liquid Value maintain in Florida or California.

50.     All documents, work papers, or other discovery concerning your, Sino Global Capital Management's, and/or Liquid Value's physical operations in Florida or California.

51.     All documents, work papers, or other discovery concerning your, Sino Global

        Capital Management's, and/or Liquid Value's business in, or soliciting business

        within, Florida or California.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO DEFENDANT**
**SINO GLOBAL CAPITAL HOLDINGS, LLC**

Plaintiffs in the above-titled action, pursuant to Rules 26, 33 34, and 36 of the Federal

Rules of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern

District of Florida, request that Defendant Sino Global Capital Holdings, LLC, respond to the

enclosed Requests for Admission and Interrogatories and produce all documents, electronically

stored information, and things that are in your possession, custody, or control requested in response

to the following Requests for Production.

Respectfully submitted on November ___, 2023

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*      <br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| **Plaintiffs' Steering Committee Members** ||
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
      Adam M. Moskowitz

## DEFINITIONS

Unless otherwise specified, the terms set forth below have the following meanings:

1.    "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), and/or successors, which includes but is not limited to Alameda Ventures Ltd., and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of the foregoing. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.    "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.    "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.    "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by

any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5.   "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.   "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.   "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.   "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda.

9.   "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10.     "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11.     "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

12. "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or

privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

13.    "FTT" refers to the digital token created by the FTX Entities.

14.    "FTX Entities" refers to FTX Trading and/or FTX US.

15.    "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

16.    "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel

Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

17. "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

18. "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

19. "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

20. "Work Papers" refers to all documents, including drafts, organizational charts, spreadsheets, and other data, prepared, maintained and/or obtained by you concerning the planning, procedures performed, information obtained, and conclusions reached in connection with any investment, or potential investment, in any of the FTX Entities and/or Alameda. "Work Papers" also includes documents that you have in your possession, custody or control that were prepared, maintained and/or obtained by you concerning the FTX Entities and/or Alameda that were prepared or obtained from any of the FTX Entities and/or Alameda or any other persons or entities investing in or providing accounting, auditing, or consulting services to the FTX Entities and/or Alameda.

21. "You" or "Your" shall refer to the Defendant responding to these requests, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any funds or other investment vehicles held by the Defendant responding or in which the Defendant responding is a member or other

owner, its international, national or local branches or offices, including, but not limited to Sino Global Capital Limited, Ryze Labs, and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of the responding Defendant.

22.    "Sino Global Capital Management" shall refer to Sino Global Capital Management LLC, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, any international, national or local branches or offices, and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on its behalf.

23.    "Liquid Value" shall refer to the fund(s) in which you were co-general partners with FTX Entities and/or Alameda and any funds related in any way thereto. It shall refer to Liquid Value Fund I LP; Liquid Value GP Limited; Liquid Value US Fund I LP; Liquid Value Offshore Feeder Fund I LP; and each of the foregoing's predecessors, successors, subsidiaries, departments divisions, and/or affiliates, any international, national or local branches or offices, and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Liquid Value.

24.    Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

25.    Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase.

No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## INSTRUCTIONS

1.    Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.    Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.    Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.    These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.    For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

   a.    the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

b.      the date such document was prepared;

c.      the names, employment positions and addresses of the author or preparers of such document;

d.      the names, employment positions, and the addresses of each person who received such document;

e.      the title, a brief description, and the subject matter of the document;

f.      the number of the request under which such document would be produced but for the objection; and

g.      description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.      If any document responsive to a request has been destroyed, produce all documents describing or referencing:

a.      the contents of the lost or destroyed document;

b.      all locations in which any copy of the lost or destroyed document had been maintained;

c.      the date of such loss or destruction;

d.      the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

e.      all document retention and destruction policies in effect at the time any requested document was destroyed; and

f.      all efforts made to locate any responsive document alleged to have been lost.

7.      In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8.      These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.      All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.     In responding to these Document Requests, you are to include Documents:

a.      obtained from witnesses who gave information to any governmental agency or investigatory body;

b.      that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

c.      obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.     All documents are to be produced in the following method if not produced in its Native Format:

a.      Single page .TIFF images

- 11 -

b.      Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

c.      Document level Text Files containing extracted full text or OCR text

d.      Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Please admit that you are or were registered to conduct business in Florida.

**REQUEST FOR ADMISSION NO. 2:**

Please admit that Sino Global Capital Management is or was registered to conduct business in Florida.

**REQUEST FOR ADMISSION NO. 3:**

Please admit that Liquid Value is or was registered to conduct business in Florida.

**REQUEST FOR ADMISSION NO. 4:**

Please admit that Sino Global Capital Management is or was registered to conduct business in California.

**REQUEST FOR ADMISSION NO. 5:**

Please admit that Liquid Value is or was registered to conduct business in California.

**REQUEST FOR ADMISSION NO. 6:**

Please admit that you do or did operate, conduct, engage in, or carry on a business or business venture in Florida.

**REQUEST FOR ADMISSION NO. 7:**

Please admit that Sino Global Capital Management does or did operate, conduct, engage in, or carry on a business or business venture in Florida.

**REQUEST FOR ADMISSION NO. 8:**

Please admit that Liquid Value does or did operate, conduct, engage in, or carry on a business or business venture in Florida.

**REQUEST FOR ADMISSION NO. 9:**

Please admit that Sino Global Capital Management does or did operate, conduct, engage in, or carry on a business or business venture in California.

**REQUEST FOR ADMISSION NO. 10:**

Please admit that Liquid Value does or did operate, conduct, engage in, or carry on a business or business venture in California.

**REQUEST FOR ADMISSION NO. 11:**

Please admit that you regularly conduct or conducted business in Florida.

**REQUEST FOR ADMISSION NO. 12:**

Please admit that Sino Global Capital Management regularly conducts or conducted business in Florida.

**REQUEST FOR ADMISSION NO. 13:**

Please admit that Liquid Value regularly conducts or conducted business in Florida.

**REQUEST FOR ADMISSION NO. 14:**

Please admit that Sino Global Capital Management regularly conducts or conducted business in California.

**REQUEST FOR ADMISSION NO. 15:**

Please admit that Liquid Value regularly conducts or conducted business in California.

**REQUEST FOR ADMISSION NO. 16:**

Please admit that the business that Sino Global Capital Management conducts or conducted in Florida and/or California relates at least in part to Plaintiffs' factual allegations in their complaint (SD Fla. Case No. 23-md-3076, R. Doc. 182).

**REQUEST FOR ADMISSION NO. 17:**

Please admit that the business that Liquid Value conducts or conducted in Florida and/or California relates at least in part to Plaintiffs' factual allegations in their complaint (SD Fla. Case No. 23-md-3076, R. Doc. 182).

**REQUEST FOR ADMISSION NO. 18:**

Please admit that you maintain or maintained a place of business, office, facility or agency in Florida, or otherwise have physical operations in Florida.

**REQUEST FOR ADMISSION NO. 19:**

Please admit that Sino Global Capital Management maintains or maintained a place of business, office, facility or agency in Florida, or otherwise has physical operations in Florida. Please further admit that such "place of business, office, facility or agency in Florida" is or was Sino Global Capital Management's principal office or place of business.

**REQUEST FOR ADMISSION NO. 20:**

Please admit that Liquid Value maintains or maintained a place of business, office, facility or agency in Florida, or otherwise has physical operations in Florida. Please further admit that such "place of business, office, facility or agency in Florida" is or was Liquid Value's principal office or place of business.

**REQUEST FOR ADMISSION NO. 21:**

Please admit that Sino Global Capital Management maintains a place of business, office, facility or agency in California, or otherwise has physical operations in California.

**REQUEST FOR ADMISSION NO. 22:**

Please admit that Liquid Value maintains or maintained a place of business, office, facility or agency in California, or otherwise has physical operations in California. Please further admit

that such "place of business, office, facility or agency in California" is or was Liquid Value's principal office or place of business.

**REQUEST FOR ADMISSION NO. 23:**

Please admit that Matthew Graham owns or owned in whole or in part, whether directly or indirectly, You, Sino Global Capital Management, and Liquid Value.

**REQUEST FOR ADMISSION NO. 24:**

Please admit that Matthew Graham manages or managed—whether directly or indirectly—Your, Sino Global Capital Management's, and Liquid Value's operations.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

If you responded to any of the foregoing Requests for Admission in any way other than an unequivocal admission, please set forth all facts to support each such response(s).

**INTERROGATORY NO. 2:**

Please identify all current and former owners of Sino Global Capital Limited, Sino Global Capital Holdings, LLC, Sino Global Capital Management, and Liquid Value, including the ownership percentage held by each owner identified in response to this Interrogatory No. 2.

**INTERROGATORY NO. 3:**

Please identify your, Sino Global Capital Management's, and Liquid Value's employees, executives, and directors. In doing so, please provide their home address(es), titles and descriptions of their role(s) with respect to Sino Global Capital Limited, Sino Global Capital Holdings, LLC, Sino Global Capital Management, and/or Liquid Value, their office address(es), their work phone number(s), and their work email address(es).

**INTERROGATORY NO. 4:**

Please identify the entity that pays the salaries or any other compensation of the personnel listed in response to Interrogatory No. 4.

**INTERROGATORY NO. 5:**

Please identify the entity that pays the expenses and/or losses of Sino Global Capital Holdings, LLC.

**INTERROGATORY NO. 7:**

Please describe the business of, and how such business is conveyed to you, Sino Global Capital Management, and/or Liquid Value.

**INTERROGATORY NO. 8:**

Please identify the executives, directors, employees, and/or representatives of Sino Global Capital Holdings, LLC, Sino Global Capital Limited, Sino Global Capital Management, and/or Liquid Value who participated in responding to these discovery requests.

## **REQUESTS FOR PRODUCTION**

1.   All workpapers, communications, and other documents concerning subscription agreements, membership agreements, partnership agreements, and/or other agreements between you and any of the FTX Entities, Alameda or any of the Defendants relating to any of the FTX Entities and/or Alameda.

2.   All communications between you, Sino Global Capital Management, and/or Liquid Value and any of the FTX Entities, Alameda, or any of the Defendants concerning any of the FTX Entities and/or Alameda.

3.     All communications between Matthew Graham and any executive, director, employee, agent, and/or representative of any of the FTX Entities, Alameda, North Dimension Inc., and/or LedgerX LLC.

4.     All communications between Matthew Graham and Defendants and/or Defendants' executives, directors, employees, agents, and/or representatives.

5.     All work papers, communications, and other documents concerning the Series B funding of FTX Trading, which closed in October 2021, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

6.     Documents evidencing wire transfers or other payments, or instructions related to the foregoing, for any payments (1) from you, Sino Global Capital Management, and/or Liquid Value to any of the FTX Entities and/or Alameda or (2) from any of the FTX Entities and/or Alameda to you, Sino Global Capital Management, and/or Liquid Value.

7.     Documents and communications concerning your due diligence efforts undertaken by you or on your behalf in conjunction with potential or actual investments in or with FTX Entities and/or Alameda, whether such efforts were undertaken before the investment or following the investment in the form of continued monitoring, tracking, or management. Such documents and communications should include but not be limited to standard due diligence policies and/or checklists for your usual due diligence efforts, as well as all documents and communications specifically relating to or collected through your due diligence efforts undertaken with respect

to your actual investment(s) and/or any other potential investment(s) in FTX Entities and/or Alameda, or your Liquid Value funds.

8. Contracts for any legal services you, Sino Global Capital Management, and/or Liquid Value sought or obtained in relation to the FTX Entities and/or Alameda.

9. All work papers, communications, and other documents, concerning any investment by FTX Entities and/or Alameda in you, Sino Global Capital Management, Liquid Value, or in any other investment fund, limited partnership, or other business venture that you own, operate, or manage, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

10. All work papers, communications, and other documents concerning Liquid Value, including, but not limited to offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and any diligence materials concerning any of the FTX Entities and/or Alameda.

11. All "Relationship Documents," including but not limited to, any side letters, that Liquid Value references in any proofs of claim (including, but not limited to, claim numbers 3132 and 3967) or supplements thereto that Liquid Value filed in the Bankruptcy Actions. This request specifically includes any amendments or alterations to those claims.

12. All work papers, communications, and other documents concerning your, Sino Global Capital Management's, and/or Liquid Value's membership and service on the board, including any advisory board, of any of the FTX Entities and/or

Alameda, including, but not limited to, agendas, presentations, and minutes of any and all meetings of such board.

13.   All work papers, communications, and other documents concerning the membership and service on your, Sino Global Capital Management's, and/or Liquid Value's board, including any advisory board, by any of the FTX Entities and/or Alameda, including, but not limited to, agendas, presentations, and minutes of any and all meetings of such board.

14.   All work papers, communications, and other documents concerning any of the FTX Entities and/or Alameda that were prepared or maintained in connection with, and/or referred to, your investments in, or any other potential investments in, loans to, or financing for, any of the FTX Entities and/or Alameda.

15.   All documents concerning any working group lists, or the names and contact information for all persons or entities, you received, prepared, or maintained in connection with your investments, or potential investments, in any of the FTX Entities and/or Alameda, including, but not limited to, persons in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management), directors, and/or other personnel involved in the Series A, Series B, Series B-1, Series C, and/or any other funding for, investment in, or potential investment in any of the FTX Entities and/or Alameda.

16.   All documents and work papers concerning the operations of any of the FTX Entities and/or Alameda, including, but not limited to, operating pro formas, uses

and sources of cash and investment proceeds, investment portfolios, status reports, budgets, and/or presentations concerning the performance of any of the FTX Entities and/or Alameda, as well as, any market research, profitability analyses, evaluations, and/or other reports prepared by you or for you by any investment bankers, research analysts, management consultants and/or other professional.

17.    All documents and work papers concerning the formation and corporate governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, certificates of good standing, charters for any and all board committees, compliance policies, anti-corruption policies, whistleblower polices, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

18.    All documents and work papers concerning the implementation of accounting controls, financial controls, cash management controls and/or audit processes at any of the FTX Entities and/or Alameda, including, but not limited to audit committees, internal and/or external audits, audited and/or unaudited financial statements, general ledgers, policies and procedures concerning audits, asset allocation, liquidity forecasting, and disbursement controls, and other financial records for any of the FTX Entities and/or Alameda, and the engagement of, and services provided by, any accounting firm by and for any of the FTX Entities and/or Alameda, including, but not limited to Robert Lee & Associates, Prager Metis CPAs LLC and/or Armanino LLP.

19.     Any documents evidencing updates, progress reports, or similar with respect to (1) your investments in FTX Entities and/or Alameda and (2) FTX Entities' and/or Alameda's financials.

20.     All documents and work papers concerning North Dimension Inc, including, but not limited to, its ownership, employees, business purpose, and operations.

21.     All documents and work papers concerning LedgerX LLC, including, but not limited to, its ownership, employees, business purpose, and operations.

22.     All communications with any representative, employee, or agent of LedgerX LLC.

23.     All documents and work papers concerning any transactions and/or transfers of fiat, cryptocurrency, or other assets between any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, including, but not limited to, disbursements, donations, gifts, bonuses and other compensation, capital contributions, promissory notes, inter-company agreements, service agreements, and loan agreements.

24.     All documents and work papers concerning risk management controls—and any exemptions or alterations thereto for, but not limited to, Alameda—at any of the FTX Entities and/or Alameda, including, but not limited to, policies and procedures concerning investment diversification, cryptocurrency products and other digital assets, derivative products, and leverage, including, but not limited to, the purported

"risk engine" auto-liquidator and other protocols to prevent a user from becoming over-leveraged on any of the FTX Entities' platforms and/or the FTX Entities' purported policy prohibiting any user from maintaining a negative balance on their platforms.

25.     All documents and work papers concerning regulatory compliance at any of the FTX Entities and/or Alameda, including, but not limited to, campaign finance regulations, licensure of the FTX Entities and/or Alameda in the jurisdictions in which each operates, including, but not limited to, money transmitter licenses, and the regulation of cryptocurrencies, tokens, and other digital assets—including the yield-bearing accounts offered by the FTX Entities—as securities.

26.     All documents and work papers concerning any charitable, political and/or campaign contribution by any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

27.     All documents and work papers concerning any internal complaints, including, but not limited to, "whistleblower" complaints, litigation, administrative or regulatory proceedings, investigations or governmental actions involving any of the FTX Entities and/or Alameda.

28.     All documents and work papers concerning the custody, and/or safeguarding, of customer funds, including fiat, cryptocurrencies, and other digital assets,  by any of

the FTX Entities and/or Alameda, including, but not limited to, the labeling of customer accounts as "for the benefit of" ("FBO") the customer, the segregation (or lack thereof) of customer funds from the FTX Entities' operating accounts, the storage of customer funds in digital wallets on the FTX Entities' platforms, and the ledgering and/or bookkeeping of those funds by any of the FTX Entities and/or Alameda.

29.     All documents and work papers concerning the terms of service for any of the FTX Entities and use thereof by customers or investors.

30.     All documents and work papers concerning FTT, including, but not limited to, FTT held by any of the FTX Entities and/or Alameda, and their use of FTT as collateral for loans and other transactions.

31.     All documents and work papers concerning the real and tangible property held by any FTX Entity and/or Alameda, including, but not limited to, the location and use of such property, and any mortgages, deeds of trust, lease and/or security agreements for the properties, and transfers of such properties by, among, and between any FTX Entity, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

32.     All documents and work papers concerning the decision to post, preparation of any post, and posting on your website, social media platform, or any other public forum

of any statements concerning the FTX Entities, Alameda, any director, control person, or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, and/or any of the Defendants.

33.    All documents, work papers, and/or communications concerning the FTX Entities and/or Alameda you provided to or exchanged with:

    a.    Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Caroline Ellison, Gary Wang, Nishad Singh, Constance Wang, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, and Ramnik Arora;

    b.    any actual or prospective customer of any of the FTX Entities and/or Alameda and/or any actual or prospective investor in any of the FTX Entities and/or Alameda;   or

    c.    any of the Defendants.

34.    To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, the Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request for discovery.

35.    All documents, communications, and work papers relating to fraud detection and anti-money laundering protection by you, including, but not limited to, policies, procedures, manuals, monitoring systems, including automated monitoring systems, even if generated by a third party, employed by you to detect, monitor, and/or prevent fraud, money laundering, and/or other misconduct by the companies and other entities in which you invest, including, but not limited to, Know Your Customer or Know Your Client (together, "KYC") obligations, policies, procedures and compliance; Know Your Business ("KYB") obligations, policies, procedures, and compliance; Ant-Money Laundering ("AML") obligations, policies, procedures, and compliance; Customer Identification Program ("CIP") obligations, policies, procedures, and compliance; Bank Secrecy Act ("BSA") obligations, policies, procedures and compliance; risk management; and other due diligence.

36.    All work papers, communications, and other documents concerning your decision to make the investment in the FTX Entities and/or Alameda, including but not limited to any meeting minutes, memoranda, or materials with respect to your internal committee or board discussions; and any meeting minutes, memoranda, or materials with respect to communications with Defendants.

37.    Documents concerning any meetings between your directors, executives, employees, representatives, and/or agents and FTX's directors, executives, employees, representatives, and/or agents. This request includes but is not limited to any expense reports and calendar entries related to any such meetings.

38.    All workpapers, communications, and other documents concerning your hiring and employment of Constance Wang.

39.    Organizational charts for Sino Global Capital Limited, Sino Global Capital Holdings, Sino Global Capital Management, Liquid Value, Ryze Labs, and any other intermediate entities existing along the chain of ownership between or among the entities specifically named in this request and Matthew Graham or any other ultimate owner and/or shareholder.

40.    All documents and work papers concerning your, Sino Global Capital Management's, and/or Liquid Value's formation and corporate governance, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, certificates of good standing, charters for any and all board committees, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

41.    Your, Sino Global Capital Management's, and Liquid Value's audited financial statements, including income statements, balance sheets and statements of cash flow, whether consolidated or unconsolidated.

42.    Your, Sino Global Capital Management's, and Liquid Value's Federal and State (in whatever state they may be filed) tax returns and reporting information.

43.    Documents concerning your, Sino Global Capital Management's, and/or Liquid Value's banking relationships in California and/or Florida.

44.    All documents, work papers, or other discovery concerning any agreements or contracts between or among Sino Global Capital Limited, Sino Global Capital Holdings, LLC, Sino Global Capital Management, Liquid Value, and/or any owner

of the foregoing, including, but not limited to, intercompany agreements, lease-back agreements, and/or shared services agreement.

45.      All documents, work papers, or other discovery concerning property, personnel, or equipment provided to or shared by Sino Global Capital Limited, Sino Global Capital Holdings, LCC, Sino Global Capital Management, and/or Liquid Value.

46.      All documents, work papers, or other discovery concerning your, Sino Global Capital Management's, and/or Liquid Value's operations in the United States, including, but not limited to, any offices and personnel located in California and Florida.

47.      All documents, work papers, or other discovery concerning any registration by you, Sino Global Capital Management, and/or Liquid Value to conduct business in Florida or California.

48.      All documents, work papers, or other discovery concerning your, Sino Global Capital Management's, and/or Liquid Value's operating, conducting, engaging in, or carrying on a business or business venture in Florida or California.

49.      All documents, work papers, or other discovery concerning any place of business, office, facility, agency, or office that you, Sino Global Capital Management, and/or Liquid Value maintain in Florida or California.

50.      All documents, work papers, or other discovery concerning your, Sino Global Capital Management's, and/or Liquid Value's physical operations in Florida or California.

51.     All documents, work papers, or other discovery concerning your, Sino Global

Capital Management's, and/or Liquid Value's business in, or soliciting business

within, Florida or California.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO**
**DEFENDANT TEMASEK HOLDINGS (PRIVATE) LIMITED**

Plaintiffs in the above-titled action, pursuant to Rules 26, 33, and 34 of the Federal Rules

of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District

of Florida, request that Defendant Temasek Holdings (Private) Limited, respond to the enclosed

Interrogatories and produce all documents, electronically stored information, and things that are

in your possession, custody, or control requested in response to the following Requests for

Production.

Respectfully submitted on November ___, 2023

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz* <br> Adam M. Moskowitz <br> Florida Bar No. 984280 <br> Joseph M. Kaye <br> Florida Bar No. 117520 <br> **THE MOSKOWITZ LAW FIRM, PLLC** <br> Continental Plaza <br> 3250 Mary Street, Suite 202 <br> Coconut Grove, FL 33133 <br> Office: (305) 740-1423 <br> adam@moskowitz-law.com <br> joseph@moskowitz-law.com | By: */s/ David Boies* <br> David Boies <br> Alex Boies <br> Brooke Alexander <br> **BOIES SCHILLER FLEXNER LLP** <br> 333 Main Street <br> Armonk, NY 10504 <br> Office: (914) 749-8200 <br> dboies@bsfllp.com <br> aboies@bsfllp.com <br> balexander@bsfllp.com |

| service@moskowitz-law.com | |
|---|---|
| **Plaintiffs' Steering Committee Members** | |
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.      "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.      "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.      "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation,

- 1 -

correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5.  "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.  "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.  "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.  "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda.

9.  "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10.  "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For

purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11.     "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

12.     "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures

within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that

- 4 -

such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

13.    "FTT" refers to the digital token created by the FTX Entities.

14.    "FTX Entities" refers to FTX Trading and/or FTX US.

15.    "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

16.    "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

17.    "LedgerX LLC" refers to LedgerX LLC d/b/a FTX US Derivatives or FTX Derivatives.

18.    "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

19.    "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

20.    "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

21.    "Work Papers" refers to all documents, including drafts, organizational charts, spreadsheets, and other data, prepared, maintained and/or obtained by you concerning the planning, procedures performed, information obtained, and conclusions reached in connection with any investment, or potential investment, in any of the FTX Entities and/or Alameda. "Work Papers" also includes documents that you have in your possession, custody or control that were prepared, maintained and/or obtained by you concerning the FTX Entities and/or Alameda that were prepared or obtained from any of the FTX Entities and/or Alameda or any other persons or entities investing in or providing accounting, auditing, or consulting services to the FTX Entities and/or Alameda.

22.    "You" or "Your" shall refer to the Defendant responding to these requests, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any funds or other investment vehicles held by the Defendant responding or in which the Defendant responding is a member or other

owner, its international, national or local branches or offices, including, but not limited to Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd. and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of the responding Defendant.

23.   Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

24.   Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## <u>INSTRUCTIONS</u>

1.   Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.   Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.   Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.   These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.   For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

   a.   the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

b.      the date such document was prepared;

c.      the names, employment positions and addresses of the author or preparers of such document;

d.      the names, employment positions, and the addresses of each person who received such document;

e.      the title, a brief description, and the subject matter of the document;

f.      the number of the request under which such document would be produced but for the objection; and

g.      description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.      If any document responsive to a request has been destroyed, produce all documents describing or referencing:

a.      the contents of the lost or destroyed document;

b.      all locations in which any copy of the lost or destroyed document had been maintained;

c.      the date of such loss or destruction;

d.      the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

e.      all document retention and destruction policies in effect at the time any requested document was destroyed; and

f.      all efforts made to locate any responsive document alleged to have been lost.

7.      In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8.      These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.      All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.     In responding to these Document Requests, you are to include Documents:

        a.      obtained from witnesses who gave information to any governmental agency or investigatory body;

        b.      that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

        c.      obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.     All documents are to be produced in the following method if not produced in its Native Format:

        a.      Single page .TIFF images

- 10 -

b.      Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

c.      Document level Text Files containing extracted full text or OCR text

d.      Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please identify all current and former owners of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd., including the ownership percentage held by each owner identified in response to this Interrogatory No. 1.

**INTERROGATORY NO. 2:**

Please identify the directors on the boards of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

**INTERROGATORY NO. 3:**

Please identify the directors, executives, employees, representatives, and/or agents of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., Temasek International Pte. Ltd., and/or any other Temasek-affiliated entity having any role with respect to the decision to invest in FTX, any due diligence involved in such decision, negotiations related to the investment in FTX, the actual investment in FTX, and/or any ongoing monitoring of FTX in the wake of the investment. In doing so, please provide their home address(es), titles and descriptions of their role(s) with respect to the Temasek-affiliated entity in question, their office address(es), their work phone number(s), and their work email address(es).

**INTERROGATORY NO. 4:**

Please identify the entity that pays the salaries or any other compensation of the personnel listed in response to Interrogatory No. 3.

**INTERROGATORY NO. 5:**

Please identify the entity that pays the expenses and/or losses of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

**INTERROGATORY NO. 6:**

Please describe the business of, and how such business is conveyed to, Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

**INTERROGATORY NO. 7:**

Please identify the executives, directors, employees, and/or representatives of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd. who participated in responding to these discovery requests.

## REQUESTS FOR PRODUCTION

1.     All workpapers, communications, and other documents concerning subscription agreements, membership agreements, partnership agreements, and/or other agreements between you and any of the FTX Entities, Alameda or any of the Defendants relating to any of the FTX Entities and/or Alameda.

2.     All communications between you and any of the FTX Entities, Alameda, or any of the Defendants concerning any of the FTX Entities and/or Alameda.

3.     All work papers, communications, and other documents concerning the Series B and B-1 funding of FTX Trading, which closed in October 2021, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks,

capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

4.      All work papers, communications, and other documents concerning the Series C funding of FTX Trading, which closed in January 2022, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

5.      All work papers, communications, and other documents concerning the Series A funding of FTX US, which closed in January 2022, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

6.      Documents evidencing wire transfers or other payments, or instructions related to the foregoing, for any payments from you to any of the FTX Entities and/or Alameda *or* from any of the FTX Entities and/or Alameda to you.

7.      Documents and communications concerning your due diligence efforts undertaken by you or on your behalf in conjunction with potential or actual investments in or with FTX Entities and/or Alameda, whether such efforts were undertaken before the investment or following the investment in the form of continued monitoring, tracking, or management.

8.      Contracts for any legal services you sought or obtained in relation to the FTX Entities and/or Alameda.

9.      All work papers, communications, and other documents concerning your membership and service on the board, including any advisory board, of any of the FTX Entities and/or Alameda, including, but not limited to, calendar entries, agendas, presentations, and minutes of any and all meetings of such board.

10.     All work papers, communications, and other documents concerning the membership and service on your board, including any advisory board, by any of the FTX Entities and/or Alameda, including, but not limited to, agendas, presentations, and minutes of any and all meetings of such board.

11.     All work papers, communications, and other documents concerning any of the FTX Entities and/or Alameda that were prepared or maintained in connection with, and/or referred to, your investments in, or any other potential investments in, loans to, or financings for, any of the FTX Entities and/or Alameda.

12.     All documents concerning any working group lists, or the names and contact information for all persons or entities, you received, prepared, or maintained in connection with your investments, or potential investments, in any of the FTX Entities and/or Alameda, including, but not limited to, persons in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management), directors, and/or other personnel involved in the Series A, Series B, Series B-1, Series C, and/or any other funding for, investment in, or potential investment in any of the FTX Entities and/or Alameda.

13.     All documents and work papers concerning the operations of any of the FTX Entities and/or Alameda, including, but not limited to, operating pro formas, uses and sources of cash and investment proceeds, investment portfolios, status reports, budgets, and/or presentations concerning the performance of any of the FTX Entities and/or Alameda, as well as, any market research, profitability analyses, evaluations, and/or other reports prepared by you or for you by any investment bankers, research analysts, management consultants and/or other professional.

14.     All documents and work papers concerning the formation and corporate governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, certificates of good standing, charters for any and all board committees, compliance policies, anti-corruption policies, whistleblower polices, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

15.     All documents and work papers concerning the implementation of accounting controls, financial controls, cash management controls and/or audit processes at any of the FTX Entities and/or Alameda, including, but not limited to audit committees, internal and/or external audits, audited and/or unaudited financial statements, general ledgers, policies and procedures concerning audits, asset allocation, liquidity forecasting, and disbursement controls, and other financial records for any of the FTX Entities and/or Alameda, and the engagement of, and services provided by, any accounting firm by and for any of the FTX Entities and/or Alameda,

- 16 -

including, but not limited to Robert Lee & Associates, Prager Metis CPAs LLC and/or Armanino LLP.

16. Any documents evidencing updates, progress reports, or similar with respect to (1) your investments in FTX Entities and/or Alameda and (2) FTX Entities' and/or Alameda's financials.

17. All documents and work papers concerning North Dimension Inc, including, but not limited to, its ownership, employees, business purpose, and operations.

18. All documents and work papers concerning LedgerX LLC, including, but not limited to, its ownership, employees, business purpose, and operations.

19. All communications with any representative, employee, or agent of LedgerX LLC.

20. All documents and work papers concerning any transactions and/or transfers of fiat, cryptocurrency, or other assets between any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, including, but not limited to, disbursements, donations, gifts, bonuses and other compensation, capital contributions, promissory notes, inter-company agreements, service agreements, and loan agreements.

21. All documents and work papers concerning risk management controls—and any exemptions or alterations thereto for, but not limited to, Alameda—at any of the FTX Entities and/or Alameda, including, but not limited to, policies and procedures

concerning investment diversification, cryptocurrency products and other digital assets, derivative products, and leverage, including, but not limited to, the purported "risk engine" auto-liquidator and other protocols to prevent a user from becoming over-leveraged on any of the FTX Entities' platforms and/or the FTX Entities' purported policy prohibiting any user from maintaining a negative balance on their platforms.

22.    All documents and work papers concerning regulatory compliance at any of the FTX Entities and/or Alameda, including, but not limited to, campaign finance regulations, licensure of the FTX Entities and/or Alameda in the jurisdictions in which each operates, including, but not limited to, money transmitter licenses, and the regulation of cryptocurrencies, tokens, and other digital assets—including the yield-bearing accounts offered by the FTX Entities—as securities.

23.    All documents and work papers concerning any charitable, political and/or campaign contribution by any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

24.    All documents and work papers concerning any internal complaints, including, but not limited to, "whistleblower" complaints, litigation, administrative or regulatory proceedings, investigations or governmental actions involving any of the FTX Entities and/or Alameda.

25.    All documents and work papers concerning the custody, and/or safeguarding, of customer funds, including fiat, cryptocurrencies, and other digital assets, by any of the FTX Entities and/or Alameda, including, but not limited to, the labeling of customer accounts as "for the benefit of" ("FBO") the customer, the segregation (or lack thereof) of customer funds from the FTX Entities' operating accounts, the storage of customer funds in digital wallets on the FTX Entities' platforms, and the ledgering and/or bookkeeping of those funds by any of the FTX Entities and/or Alameda.

26.    All documents and work papers concerning the terms of service for any of the FTX Entities and use thereof by customers or investors.

27.    All documents and work papers concerning FTT, including, but not limited to, FTT held by any of the FTX Entities and/or Alameda, and their use of FTT as collateral for loans and other transactions.

28.    All documents and work papers concerning the real and tangible property held by any FTX Entity and/or Alameda, including, but not limited to, the location and use of such property, and any mortgages, deeds of trust, lease and/or security agreements for the properties, and transfers of such properties by, among, and between any FTX Entity, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

29.     All documents relating to your "interactions" with Sam Bankman-Fried and others affiliated with FTX Entities, Alameda, North Dimension Inc., and/or LedgerX LLC as referenced by you on your website. *See* Temasek, "FTX Statement and FAQs" (26 November 2022), *available at* https://www.temasek.com.sg/en/news-and-resources/news-room/statements/2022/statement-FTX (last visited October 11, 2023).

30.     All documents and work papers concerning the "qualitative feedback" you gathered from "people familiar with the company, including industry employees, industry participants, and other investors" concerning any of the FTX Entities and/or Alameda, which you reference on your website.[1]

31.     All documents and work papers concerning your "engage[ment of] management on business strategy" and your "monitor[ing] of [the] performance" of any of the FTX Entities and/or Alameda, which you reference on your website.[2]

32.     All documents and work papers concerning the decision to post, preparation of any post, and posting on your website, social media platform, or any other public forum of any statements concerning the FTX Entities, Alameda, any director, control person, or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive

---

[1] *See* https://www.temasek.com.sg/en/news-and-resources/news-room/statements/2022/statement-FTX#how-did-Temasek-come-to-invest-in-FTX

[2] *See* https://www.temasek.com.sg/en/news-and-resources/news-room/statements/2022/statement-FTX#how-did-Temasek-come-to-invest-in-FTX

vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, and/or any of the Defendants.

33.    All documents, work papers, and/or communications concerning the FTX Entities and/or Alameda you provided to or exchanged with:

    a.    Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Caroline Ellison, Gary Wang, Nishad Singh, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, Ramnik Arora, and Constance Wang;

    b.    any actual or prospective customer of any of the FTX Entities and/or Alameda and/or any actual or prospective investor in any of the FTX Entities and/or Alameda;  or

    c.    any of the Defendants.

34.    To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request for discovery.

35.    All documents, communications, and work papers relating to fraud detection and anti-money laundering protection by you, including, but not limited to, policies, procedures, manuals, monitoring systems, including automated monitoring systems, even if generated by a third party, employed by you to detect, monitor,

and/or prevent fraud, money laundering, and/or other misconduct by the companies and other entities in which you invest, including, but not limited to, Know Your Customer or Know Your Client (together, "KYC") obligations, policies, procedures and compliance; Know Your Business ("KYB") obligations, policies, procedures, and compliance; Anti-Money Laundering ("AML") obligations, policies, procedures, and compliance; Customer Identification Program ("CIP") obligations, policies, procedures, and compliance; Bank Secrecy Act ("BSA") obligations, policies, procedures and compliance; risk management; and other due diligence.

36.     All work papers, communications, and other documents concerning your decision to make the investment in the FTX Entities and/or Alameda, including but not limited to any meeting minutes, memoranda, or materials with respect to your internal committee or board discussions; and any meeting minutes, memoranda, or materials with respect to communications with Defendants.

37.     Documents concerning any meetings between your directors, executives, employees, representatives, and/or agents and FTX's directors, executives, employees, representatives, and/or agents. This request includes but is not limited to any expense reports and calendar entries related to any such meetings.

38.     Organizational charts for Temasek Holdings (Private) Limited, Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., Temasek International Pte. Ltd., and any other intermediate entities existing along the chain of ownership between or among the entities specifically named in this request.

39.     All documents and work papers concerning your formation, organization, and corporate governance, including, but not limited to, articles of incorporation,

articles of formation, by-laws, board minutes, consents, membership agreements, partnership agreements, certificates of good standing, registrations to do business, licenses, charters for any and all board committees, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

40.     Your audited financial statements, including income statements, balance sheets and statements of cash flow, whether consolidated or unconsolidated.

41.     Your Federal and State (California, New York, Washington, D.C. and/or Florida) tax returns and reporting information.

42.     Documents concerning your banking relationships in California, New York, Washington, D.C., and/or Florida.

43.     All documents, work papers, or other discovery concerning any agreements between Temasek Holdings (Private) Limited, Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd., including, but not limited to, intercompany agreements, lease-back agreements, and/or shared services agreement.

44.     All documents, work papers, or other discovery concerning property, personnel, or equipment provided to or shared by Temasek Holdings (Private) Limited, Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

45.     All documents, work papers, or other discovery concerning your operations in the United States, including, but not limited to, your offices and personnel located in New York, New York, San Francisco, California, and Washington, D.C.

46.     Documents related to your investments in any businesses that have offices or operations in Florida and/or California.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MDL No. 3076**
**CASE NO. 1:23-md-03076-KMM**

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF DISCOVERY REQUESTS TO**
**DEFENDANT TEMASEK INTERNATIONAL USA LLC**

Plaintiffs in the above-titled action, pursuant to Rules 26, 33, and 34 of the Federal Rules

of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District

of Florida, request that Defendant Temasek International USA LLC, respond to the enclosed

Interrogatories and produce all documents, electronically stored information, and things that are

in your possession, custody, or control requested in response to the following Requests for

Production.

Respectfully submitted on November ___, 2023

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*         <br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| **Plaintiffs' Steering Committee Members** | |
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November ___, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.  "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.  "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.  "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.  "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation,

correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.      "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.      "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.      "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to  the FTX Entities and/or Alameda.

9.      "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10.     "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For

purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11.    "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

12.    "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures

within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that

such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

13.    "FTT" refers to the digital token created by the FTX Entities.

14.    "FTX Entities" refers to FTX Trading and/or FTX US.

15.    "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

16.    "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

17.     "LedgerX LLC" refers to LedgerX LLC d/b/a FTX US Derivatives or FTX Derivatives.

18.     "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

19.     "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

20.     "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

21.     "Work Papers" refers to all documents, including drafts, organizational charts, spreadsheets, and other data, prepared, maintained and/or obtained by you concerning the planning, procedures performed, information obtained, and conclusions reached in connection with any investment, or potential investment, in any of the FTX Entities and/or Alameda. "Work Papers" also includes documents that you have in your possession, custody or control that were prepared, maintained and/or obtained by you concerning the FTX Entities and/or Alameda that were prepared or obtained from any of the FTX Entities and/or Alameda or any other persons or entities investing in or providing accounting, auditing, or consulting services to the FTX Entities and/or Alameda.

22.     "You" or "Your" shall refer to the Defendant responding to these requests, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any funds or other investment vehicles held by the Defendant responding or in which the Defendant responding is a member or other

owner, its international, national or local branches or offices, including, but not limited to Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd. and current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of the responding Defendant.

23. Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

24. Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## INSTRUCTIONS

1.    Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.    Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.    Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.    These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.    For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

   a.    the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

- 8 -

b.  the date such document was prepared;

c.  the names, employment positions and addresses of the author or preparers of such document;

d.  the names, employment positions, and the addresses of each person who received such document;

e.  the title, a brief description, and the subject matter of the document;

f.  the number of the request under which such document would be produced but for the objection; and

g.  description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6.  If any document responsive to a request has been destroyed, produce all documents describing or referencing:

a.  the contents of the lost or destroyed document;

b.  all locations in which any copy of the lost or destroyed document had been maintained;

c.  the date of such loss or destruction;

d.  the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

e.  all document retention and destruction policies in effect at the time any requested document was destroyed; and

f.  all efforts made to locate any responsive document alleged to have been lost.

7.  In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8.    These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.    All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.   In responding to these Document Requests, you are to include Documents:

   a.    obtained from witnesses who gave information to any governmental agency or investigatory body;

   b.    that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

   c.    obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.   All documents are to be produced in the following method if not produced in its Native Format:

   a.    Single page .TIFF images

b.      Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

c.      Document level Text Files containing extracted full text or OCR text

d.      Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please identify all current and former owners of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd., including the ownership percentage held by each owner identified in response to this Interrogatory No. 1.

**INTERROGATORY NO. 2:**

Please identify the directors on the boards of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

**INTERROGATORY NO. 3:**

Please identify the directors, executives, employees, representatives, and/or agents of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., Temasek International Pte. Ltd., and/or any other Temasek-affiliated entity having any role with respect to the decision to invest in FTX, any due diligence involved in such decision, negotiations related to the investment in FTX, the actual investment in FTX, and/or any ongoing monitoring of FTX in the wake of the investment. In doing so, please provide their home address(es), titles and descriptions of their role(s) with respect to the Temasek-affiliated entity in question, their office address(es), their work phone number(s), and their work email address(es).

**INTERROGATORY NO. 4:**

Please identify the entity that pays the salaries or any other compensation of the personnel listed in response to Interrogatory No. 3.

**INTERROGATORY NO. 5:**

Please identify the entity that pays the expenses and/or losses of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

**INTERROGATORY NO. 6:**

Please describe the business of, and how such business is conveyed to, Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

**INTERROGATORY NO. 7:**

Please identify the executives, directors, employees, and/or representatives of Temasek International USA LLC, Temasek Holdings Private Limited, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd. who participated in responding to these discovery requests.

**REQUESTS FOR PRODUCTION**

1.   All workpapers, communications, and other documents concerning subscription agreements, membership agreements, partnership agreements, and/or other agreements between you and any of the FTX Entities, Alameda or any of the Defendants relating to any of the FTX Entities and/or Alameda.

2.   All communications between you and any of the FTX Entities, Alameda, or any of the Defendants concerning any of the FTX Entities and/or Alameda.

3.   All work papers, communications, and other documents concerning the Series B and B-1 funding of FTX Trading, which closed in October 2021, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks,

capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

4.  All work papers, communications, and other documents concerning the Series C funding of FTX Trading, which closed in January 2022, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

5.  All work papers, communications, and other documents concerning the Series A funding of FTX US, which closed in January 2022, including, but not limited to, offering memoranda, offering circulars, prospectuses, pitch decks, capitalization tables, diligence memoranda, reports, opinions, and other diligence materials concerning any of the FTX Entities and/or Alameda.

6.  Documents evidencing wire transfers or other payments, or instructions related to the foregoing, for any payments from you to any of the FTX Entities and/or Alameda or from any of the FTX Entities and/or Alameda to you.

7.  Documents and communications concerning your due diligence efforts undertaken by you or on your behalf in conjunction with potential or actual investments in or with FTX Entities and/or Alameda, whether such efforts were undertaken before the investment or following the investment in the form of continued monitoring, tracking, or management.

8.  Contracts for any legal services you sought or obtained in relation to the FTX Entities and/or Alameda.

9. All work papers, communications, and other documents concerning your membership and service on the board, including any advisory board, of any of the FTX Entities and/or Alameda, including, but not limited to, calendar entries, agendas, presentations, and minutes of any and all meetings of such board.

10. All work papers, communications, and other documents concerning the membership and service on your board, including any advisory board, by any of the FTX Entities and/or Alameda, including, but not limited to, agendas, presentations, and minutes of any and all meetings of such board.

11. All work papers, communications, and other documents concerning any of the FTX Entities and/or Alameda that were prepared or maintained in connection with, and/or referred to, your investments in, or any other potential investments in, loans to, or financing for, any of the FTX Entities and/or Alameda.

12. All documents concerning any working group lists, or the names and contact information for all persons or entities, you received, prepared, or maintained in connection with your investments, or potential investments, in any of the FTX Entities and/or Alameda, including, but not limited to, persons in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management), directors, and/or other personnel involved in the Series A, Series B, Series B-1, Series C, and/or any other funding for, investment in, or potential investment in any of the FTX Entities and/or Alameda.

13.     All documents and work papers concerning the operations of any of the FTX Entities and/or Alameda, including, but not limited to, operating pro formas, uses and sources of cash and investment proceeds, investment portfolios, status reports, budgets, and/or presentations concerning the performance of any of the FTX Entities and/or Alameda, as well as, any market research, profitability analyses, evaluations, and/or other reports prepared by you or for you by any investment bankers, research analysts, management consultants and/or other professional.

14.     All documents and work papers concerning the formation and corporate governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, certificates of good standing, charters for any and all board committees, compliance policies, anti-corruption policies, whistleblower polices, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

15.     All documents and work papers concerning the implementation of accounting controls, financial controls, cash management controls and/or audit processes at any of the FTX Entities and/or Alameda, including, but not limited to audit committees, internal and/or external audits, audited and/or unaudited financial statements, general ledgers, policies and procedures concerning audits, asset allocation, liquidity forecasting, and disbursement controls, and other financial records for any of the FTX Entities and/or Alameda, and the engagement of, and services provided by, any accounting firm by and for any of the FTX Entities and/or Alameda,

including, but not limited to Robert Lee & Associates, Prager Metis CPAs LLC and/or Armanino LLP.

16.    Any documents evidencing updates, progress reports, or similar with respect to (1) your investments in FTX Entities and/or Alameda and (2) FTX Entities' and/or Alameda's financials.

17.    All documents and work papers concerning North Dimension Inc, including, but not limited to, its ownership, employees, business purpose, and operations.

18.    All documents and work papers concerning LedgerX LLC, including, but not limited to, its ownership, employees, business purpose, and operations.

19.    All communications with any representative, employee, or agent of LedgerX LLC.

20.    All documents and work papers concerning any transactions and/or transfers of fiat, cryptocurrency, or other assets between any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, including, but not limited to, disbursements, donations, gifts, bonuses and other compensation, capital contributions, promissory notes, inter-company agreements, service agreements, and loan agreements.

21.    All documents and work papers concerning risk management controls—and any exemptions or alterations thereto for, but not limited to, Alameda—at any of the FTX Entities and/or Alameda, including, but not limited to, policies and procedures

- 17 -

concerning investment diversification, cryptocurrency products and other digital assets, derivative products, and leverage, including, but not limited to, the purported "risk engine" auto-liquidator and other protocols to prevent a user from becoming over-leveraged on any of the FTX Entities' platforms and/or the FTX Entities' purported policy prohibiting any user from maintaining a negative balance on their platforms.

22.   All documents and work papers concerning regulatory compliance at any of the FTX Entities and/or Alameda, including, but not limited to, campaign finance regulations, licensure of the FTX Entities and/or Alameda in the jurisdictions in which each operates, including, but not limited to, money transmitter licenses, and the regulation of cryptocurrencies, tokens, and other digital assets—including the yield-bearing accounts offered by the FTX Entities—as securities.

23.   All documents and work papers concerning any charitable, political and/or campaign contribution by any of the FTX Entities, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

24.   All documents and work papers concerning any internal complaints, including, but not limited to, "whistleblower" complaints, litigation, administrative or regulatory proceedings, investigations or governmental actions involving any of the FTX Entities and/or Alameda.

25.     All documents and work papers concerning the custody, and/or safeguarding, of customer funds, including fiat, cryptocurrencies, and other digital assets, by any of the FTX Entities and/or Alameda, including, but not limited to, the labeling of customer accounts as "for the benefit of" ("FBO") the customer, the segregation (or lack thereof) of customer funds from the FTX Entities' operating accounts, the storage of customer funds in digital wallets on the FTX Entities' platforms, and the ledgering and/or bookkeeping of those funds by any of the FTX Entities and/or Alameda.

26.     All documents and work papers concerning the terms of service for any of the FTX Entities and use thereof by customers or investors.

27.     All documents and work papers concerning FTT, including, but not limited to, FTT held by any of the FTX Entities and/or Alameda, and their use of FTT as collateral for loans and other transactions.

28.     All documents and work papers concerning the real and tangible property held by any FTX Entity and/or Alameda, including, but not limited to, the location and use of such property, and any mortgages, deeds of trust, lease and/or security agreements for the properties, and transfers of such properties by, among, and between any FTX Entity, Alameda, and/or any director, control person, and/or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda.

29.     All documents relating to your "interactions" with Sam Bankman-Fried and others affiliated with FTX Entities, Alameda, North Dimension Inc., and/or LedgerX LLC as referenced by you on your website. *See* Temasek, "FTX Statement and FAQs" (26 November 2022), *available at* https://www.temasek.com.sg/en/news-and-resources/news-room/statements/2022/statement-FTX (last visited October 11, 2023).

30.     All documents and work papers concerning the "qualitative feedback" you gathered from "people familiar with the company, including industry employees, industry participants, and other investors" concerning any of the FTX Entities and/or Alameda, which you reference on your website.[1]

31.     All documents and work papers concerning your "engage[ment of] management on business strategy" and your "monitor[ing] of [the] performance" of any of the FTX Entities and/or Alameda, which you reference on your website.[2]

32.     All documents and work papers concerning the decision to post, preparation of any post, and posting on your website, social media platform, or any other public forum of any statements concerning the FTX Entities, Alameda, any director, control person, or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive

---

[1] *See* https://www.temasek.com.sg/en/news-and-resources/news-room/statements/2022/statement-FTX#how-did-Temasek-come-to-invest-in-FTX

[2] *See* https://www.temasek.com.sg/en/news-and-resources/news-room/statements/2022/statement-FTX#how-did-Temasek-come-to-invest-in-FTX

vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, and/or any of the Defendants.

33. All documents, work papers, and/or communications concerning the FTX Entities and/or Alameda you provided to or exchanged with:

    a.    Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Caroline Ellison, Gary Wang, Nishad Singh, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, Ramnik Arora, and Constance Wang;

    b.    any actual or prospective customer of any of the FTX Entities and/or Alameda and/or any actual or prospective investor in any of the FTX Entities and/or Alameda;   or

    c.    any of the Defendants.

34. To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request for discovery.

35. All documents, communications, and work papers relating to fraud detection and anti-money laundering protection by you, including, but not limited to, policies, procedures, manuals, monitoring systems, including automated monitoring systems, even if generated by a third party, employed by you to detect, monitor,

and/or prevent fraud, money laundering, and/or other misconduct by the companies and other entities in which you invest, including, but not limited to, Know Your Customer or Know Your Client (together, "KYC") obligations, policies, procedures and compliance; Know Your Business ("KYB") obligations, policies, procedures, and compliance; Ant-Money Laundering ("AML") obligations, policies, procedures, and compliance; Customer Identification Program ("CIP") obligations, policies, procedures, and compliance; Bank Secrecy Act ("BSA") obligations, policies, procedures and compliance; risk management; and other due diligence.

36.    All work papers, communications, and other documents concerning your decision to make the investment in the FTX Entities and/or Alameda, including but not limited to any meeting minutes, memoranda, or materials with respect to your internal committee or board discussions; and any meeting minutes, memoranda, or materials with respect to communications with Defendants.

37.    Documents concerning any meetings between your directors, executives, employees, representatives, and/or agents and FTX's directors, executives, employees, representatives, and/or agents. This request includes but is not limited to any expense reports and calendar entries related to any such meetings.

38.    Organizational charts for Temasek Holdings (Private) Limited, Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., Temasek International Pte. Ltd., and any other intermediate entities existing along the chain of ownership between or among the entities specifically named in this request.

39.    All documents and work papers concerning your formation, organization, and corporate governance, including, but not limited to, articles of incorporation,

articles of formation, by-laws, board minutes, consents, membership agreements, partnership agreements, certificates of good standing, registrations to do business, licenses, charters for any and all board committees, policies relating to conflicts of interest, insider trading policies, related party transaction policies, and codes of ethics.

40. Your audited financial statements, including income statements, balance sheets and statements of cash flow, whether consolidated or unconsolidated.

41. Your Federal and State (California, New York, Washington, D.C. and/or Florida) tax returns and reporting information.

42. Documents concerning your banking relationships in California, New York, Washington, D.C., and/or Florida.

43. All documents, work papers, or other discovery concerning any agreements between Temasek Holdings (Private) Limited, Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd., including, but not limited to, intercompany agreements, lease-back agreements, and/or shared services agreement.

44. All documents, work papers, or other discovery concerning property, personnel, or equipment provided to or shared by Temasek Holdings (Private) Limited, Temasek International (USA) LLC, Artz Fund Investments Pte. Ltd., and/or Temasek International Pte. Ltd.

45. All documents, work papers, or other discovery concerning your operations in the United States, including, but not limited to, your offices and personnel located in New York, New York, San Francisco, California, and Washington, D.C.

46.    Documents related to your investments in any businesses that have offices or operations in Florida and/or California.