IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

This Document Relates To:

    ALL ACTIONS

                                          /

**PLAINTIFFS' OPPOSITION TO DEFENDANT K5 GLOBAL ADVISOR, LLC'S
INDIVIDUAL MOTION TO DISMISS [ECF NO. 302]**

This memorandum responds specifically to the arguments raised by Defendant K5 Global Advisor, LLC's ("K5 Global") Individual Motion to Dismiss ("K5 MTD"). ECF 302.[1]

## I. K5 Global Aided and Abetted, and Conspired with, FTX to Commit Fraud

Plaintiffs have pled "enough facts to state a claim for relief that is plausible on its face." *Borges v. SmileDirectClub, LLC*, 2022 WL 4269564, at *2 (S.D. Fla. Sept. 15, 2022). The Complaint alleges that K5 Global provided FTX a "one-stop shop for relationships" (¶¶510–511), and without their connections "FTX and SBF would not have been able to obtain the endorsement from many of the celebrities that gave credibility to FTX, downplayed its risks, and gave consumers the assurance that FTX was a legitimate operation." *See, e.g.*, ¶¶514–516 (introductions to politicians, billionaires, and investors). Tellingly, K5 Global admits to receiving $250 million in FTX shares in exchange for its substantial assistance, but ignores that it also ***received $700 million of fraudulently commingled cash from Samuel Bankman-Fried ("SBF") and Alameda***. K5 MTD at 1–3; ¶522. K5 Global knew of FTX's fraud because it acted as "if they were merged" with FTX. ¶525(c). And "anti-money laundering ('AML') and know your customer ('KYC') laws and regulations, such as the Bank Secrecy Act, Patriot Act, and Anti-Money Laundering Act" required it to know the source of the funds. ¶620.

## II. K5 Global's Arguments Ring Hollow

K5 Global raises three arguments denying knowledge and requesting factual inferences – all fail. ***First***, K5 Global argues that Plaintiffs' allegations make "no economic sense" (K5 MTD at 1–2) but completely ignore that K5 Global received $700 million from fraudulently commingled customer assets, and also that K5 Global's founders, Michael Kives ("Kives") and Bryan Baum

---

[1] Capitalized terms have the same meaning as defined in in Administrative Class Action Complaint and Demand for Jury Trial Domestic Venture Capital Funds ("Complaint"). ECF 157. Unless otherwise noted, all "¶_" or "¶¶__" references are to the Complaint, and all emphasis is added and citations omitted. Plaintiffs incorporate by reference their response to ECF No. 301.

("Baum"), **personally split $250 million of it**. ¶¶518–519. The motive to receive these funds supports the plausibility of Plaintiffs' allegations. *Cabot E. Broward 2 LLC v. Cabot*, 2016 WL 8739579, at *4 (S.D. Fla. Oct. 25, 2016) ("financial reason for the substantial assistance" lends plausibility to allegations). That Kives and Baum would be receiving $250 million upfront when it was FTX that was putting in the capital is an "atypical transaction[,] and transactions that lack a business justification can itself support an inference of knowledge." *Perlman v. Bank of Am., N.A.*, 2011 WL 13108060, at *8 (S.D. Fla. Dec. 22, 2011).

*Second*, K5 Global argues that actual knowledge cannot be inferred from "networking." MTD at 2. But, by networking to establish FTX's legitimacy, K5 Global provided substantial and material assistance to FTX – elements of aiding and abetting and civil conspiracy. K5 Global does not dispute as much. And a "[defendant]'s actions, even if they do not independently give rise to liability, may serve as indicia of actual knowledge that buttress an aiding and abetting" and conspiracy claim. *Simi Mgmt. Corp. v. Bank of Am. Corp.*, 2012 WL 1997232, at *6 (N.D. Cal. June 4, 2012). Unquestionably, this argument merely twists the Complaint's allegations because K5 Global's knowledge is alleged to be based on its close relationship to FTX and its AML and KYC requirements. ¶620; *Amegy Bank Nat. Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923, 929 (11th Cir. 2015) (conducting due diligence, access to financial information, participation in KYC process, and close relationship supported in an inference of actual knowledge). Specifically, K5 Global knew assets were being comingled: (i) K5 Global received $300 million paid from Alameda through SBF's entity Clifton Bay (¶520); (ii) Clifton Bay's balance sheet showed that FTX and Alameda were the source of SBF's assets (¶621); (iii) K5 Global requested Alameda, not FTX, to pay the exorbitant fees charged to FTX, and discussed payment with a senior FTX executive (¶528); and (iv) K5 Global was kept informed about FTX's investments using the

embezzled customer deposits (¶527). Such allegations are more than sufficient. *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394, at *6 (N.D. Cal. Apr. 15, 2010) ("'Asking for plausible grounds to infer the existence of a claim for relief . . . simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to prove that claim.'").

***Third***, K5 Global admits that FTX and K5 Global were "'aligned'" but claims that Plaintiffs must allege "precisely what . . . K5 Global . . . knew" and "when and how they came to learn it." K5 MTD at 3. But "knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) of the Federal Rules of Civil Procedure. And general awareness may be inferred by the "surrounding circumstances and expectations of the parties." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985). Specific facts alleged show that K5 Global was treated "as part of SBF's team," included on FTX's internal messaging channels, little care was given to separating costs, and that Baum had a room in the Bahamas because he was such a frequent FTX visitor. ¶¶523–528. *Amegy Bank*, 619 F. App'x at 929 ("A reasonable jury could infer that the professional and social aspect of the relationship led the two to discuss [the conversion]."). As noted above, K5 Global also advised FTX on how to invest other embezzled funds – there was an agreement for "keep[ing] each other informed on what is being invested." ¶527; *Freeman v. JPMorgan Chase Bank N.A.*, 675 F. App'x 926, 934 (11th Cir. 2017) ("If Padgett-Perdomo was assisting Gordon in his fraudulent scheme, it follows that she knew Gordon was misappropriating money from the OPT Escrow Account.").

Accordingly, Plaintiffs have "explain[ed] the factual basis for concluding that [K5 Global] w[as] aware of the fraud," which is enough at this stage. *Leader Trade Sols. Corp. v. Dell World Trade LP, L.L.C.*, 2010 WL 11506346, at *10 (S.D. Fla. Feb. 16, 2010).

Respectfully submitted on November 6, 2023.

| PLAINTIFFS' CO-LEAD COUNSEL | |
|---|---|
| By: /s/ *Adam Moskowitz* | By: /s/ *David Boies* |
| Adam M. Moskowitz (FL Bar No. 984280)<br>Joseph M. Kaye (FL Bar No. 117520)<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| DOMESTIC VENTURE CAPITAL FUNDS' COMMITTEE MEMBERS | |
| Stuart A. Davidson<br>Anny M. Martin<br>Eric I. Niehaus<br>Brian E. Cochran<br>Patton L. Johnson<br>Kenneth P. Dolitsky<br>Joseph J. Tull<br>Shawn A. Williams<br>Hadiya K. Deshmukh<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>225 NE Mizner Boulevard, Suite 720<br>Boca Raton, FL 33432<br>Office: (561) 750-3000<br>Fax: (561) 750-3364<br>sdavidson@rgrdlaw.com<br>amartin@rgrdlaw.com<br>ericn@rgrdlaw.com<br>bcochran@rgrdlaw.com<br>pjohnson@rgrdlaw.com<br>kdolitsky@rgrdlaw.com<br>jtull@rgrdlaw.com<br>shawnw@rgrdlaw.com<br>hdeshmukh@rgrdlaw.com | John C. Herman<br>Candace Smith<br>**HERMAN JONES LLP**<br>3424 Peachtree Road NE, Suite 1650<br>Atlanta, GA 30326<br>Office: (404) 504-6555<br>Fax: (404) 504-6501<br>jherman@hermanjones.com<br>csmith@hermanjones.com |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on November 6, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: /s/ *Adam M. Moskowitz*
ADAM M. MOSKOWITZ