UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**
**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

Promoter and Digital Creator Defendants

    *Garrison, et al. v. Bankman-Fried, et al.*,
    Case No. 22-cv-23753

    *Garrison, et al. v. Paffrath et al.*,
    Case No. 23-cv-21023

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [D.E. 266, D.E. 268]**

Plaintiffs respectfully oppose Defendants' motions to dismiss the Administrative Class Action Complaint, (ECF No. 179, "CAC") for lack of personal jurisdiction (ECF Nos. 266, 268).

The FTX Disaster is the largest financial fraud in American history. CAC ¶ 1. FTX positioned itself as a safe and easy way for people to make money. It guaranteed attractive interest rates on any assets—USD, "FTT" (FTX's native crypto token), and others—that customers maintained in their FTX accounts, which it called "Yield Bearing Accounts" ("YBAs"). *Id.* ¶¶ 30, 86, 93, 272. FTX developed a platform ("the FTX Platform") intuitive enough for novice investors that would place cryptocurrency trade orders and offered the YBAs. *Id.* ¶¶ at 2–3, 168. Within two years, owing to the unprecedented scale and intensity of the FTX promoters and Brand Ambassadors touting of FTX, the company obtained billions of dollars in customer assets. *Id.* Once in possession of those funds, unbeknownst to FTX customers, FTX leveraged and commingled them to engage in risky and unregulated investments. *Id.* ¶¶ 155–58. In 2022, customers sought to make withdrawals from their accounts, which FTX could not cover, and FTX collapsed. *Id.* ¶¶ 175–79. It filed for bankruptcy in 2022 and the scheme was over. *Id.* ¶¶ 166, 178.

None of this could have happened without Defendants' assistance and participation. *Id.* ¶¶ 281, 272–75, 726, 728–29. The Celebrity Defendants: (1) agreed to serve as "Brand Ambassadors" for FTX; (2) engaged in an unprecedented promotional campaign designed to sell FTX's crypto-related securities and influence their fans to invest in FTX; and (3) failed to disclose the eye-watering sums of compensation FTX was paying them to tout its products. *Id.* ¶¶ 34, 195, 298, 306, 329. Their undisclosed compensation also included crypto tokens or equity in FTX, which meant that the more success that they had in influencing people to trade on FTX, the more they stood to profit financially. *E.g., Id.* ¶¶ 34, 295, 339, 395. Defendants gave FTX—which was an unknown "newcomer" to the cryptocurrency scene—the legitimacy it needed to obtain billions of

1

dollars of customer assets. *See id.* ¶ 728. Neither FTX nor the celebrities were naïve; FTX wanted the most trustworthy and well-known household names in their respective industries, and for their part, the Celebrities charged FTX accordingly.

The YouTuber Defendants similarly partnered with FTX to promote its platform. *Id.* ¶ 704. FTX's paid endorser program was designed to use the positive reputation associated with specific YouTube influencers to convince consumers that FTX was a safe place to buy and sell cryptocurrency. *Id.* ¶ 706. They promoted FTX and provided investor information and advice on an array of topics on their YouTube and other social media channels, including crypto and FTX. *Id.* ¶¶ 55, 715–719. Unfortunately, in exchange for money, these Defendants abused their audience's trust, including Plaintiffs and Class Members, helping FTX cause billions of dollars of losses. Some YouTuber Defendants have since withdrawn their support, instead offering apologies for their involvement. *Id.* ¶¶ 716–717. Most have deleted all traces of their FTX promotions on their channels.

But FTX would not have been successful in perpetrating this fraudulent scheme on Plaintiffs and Class Members in Florida (and around the globe) without key events that took place in and emanated from here in Miami, Florida, which not only eventually became FTX's official headquarters but was their de facto domestic headquarters for years before FTX's eventual collapse. *Id.* ¶ 13. FTX maintained an office in Miami since early 2021, long before FTX eventually moved its Domestic headquarters to Brickell in late 2022. *Id*.

The Miami office was run by Mr. Avinash Dabir, who was based in Miami and eventually became FTX's Vice President of Business Development. *Id*. Mr. Dabir operated from the Miami office and spearheaded FTX's partnerships. *Id.* ¶¶ 14, 16. His successful partnership with the Miami heat, which led to naming rights to the Miami Arena, was the gateway for FTX to team up

with celebrities and other important partners, such as Defendants. *Id*. ¶ 16. The FTX promotional campaigns came from the brain trust of FTX in Miami. *Id*. ¶ 740. Many of the FTX promotions also took place in Florida as a cryptocurrency hub; for example, Defendant Osaka promoted FTX at the 2022 Miami Open tennis tournament when she wore the FTX logo throughout the tournament. *Id*. ¶¶ 613–614, 744; *see also id.* 749–750.

Plaintiffs invested in FTX after being exposed to Defendants' promotional activities, misrepresentations, or material omissions. *Id*. ¶¶ 39–54. The promotions should not be viewed in isolation, but rather as a part of a wide-ranging conspiracy to promote and sell unregistered securities. *Id*. ¶¶ 285, 786–91. Plaintiffs and Class Members lost these investments overnight when FTX imploded and former-CEO, Sam Bankman-Fried, filed an emergency Chapter 11 bankruptcy petition in Delaware. *Id*. ¶ 7, 13, 33. This action seeks to hold Defendants responsible for their roles in touting FTX and to make whole the victims that Defe ndants harmed. *Id*. ¶¶ 292–306.

Since before this MDL was created, these Defendants have primarily argued that this Court has no jurisdiction over them, falsely alleging that neither they nor FTX conducted any substantial FTX business in Florida. Despite actions pending in their home jurisdictions that have also been transferred to this Court through the MDL process, Defendants choose to continue to assert these same jurisdictional arguments as to the Florida-based actions. As explained below, Plaintiffs certainly raise sufficient allegations for the Court to deny this motion. In any event, now that SBF's trial has concluded, Plaintiffs filed on November 3, 2023, their Omnibus Motion to Lift Stay and for Leave to Conduct Jurisdictional Discovery, [ECF No. 348] (the "Omnibus Motion"), which asks the Court to postpone ruling on these motions, grant Plaintiffs leave to conduct jurisdictional discovery, and grant leave to either supplement this Opposition or amend the CAC. *See* Omnibus Motion at 2–3 ("[t]he Court finds that jurisdictional discovery is appropriate; additional

3

jurisdictional facts need not be alleged in Plaintiffs' pleading.") (quoting *Paffrath*, ECF No. 93) (Altonaga, C.J.). The Court should deny these motions outright or grant jurisdictional discovery.

## ARGUMENT

The personal jurisdiction question here involves a "involves a two-part analysis." *Advanced Bodycare Solutions LLC* v. *Thione Int'l, Inc.,* 514 F. Supp. 2d 1326, 1328 (S.D. Fla. 2007). First, the Court must decide whether Florida's Long Arm Statute reaches Defendants; then, the Court must decide if exercising jurisdiction over Defendants comports with constitutional due process requirements. *Id.* at 1329. A plaintiff seeking to establish a court's jurisdiction over a non-resident defendant need only allege sufficient material facts to make out a prima facie case of jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Plaintiffs have sufficiently alleged that personal jurisdiction over Defendants in Florida is proper. To the extent the Court has any doubt, it should allow Plaintiffs to seek jurisdictional discovery prior to ruling. *See* Omnibus Motion; *see also id.*, Ex. C.

**I.   THE COURT HAS JURISDICTION OVER DEFENDANTS.**

    **a.   The Florida Long Arm Statute Reaches Defendants.**

        **i.   Defendants' tortious conduct subjects them to jurisdiction in Florida.**

Plaintiffs have sufficiently alleged specific jurisdiction over Defendants for committing tortious acts within Florida under Fla. Stat. § 48.193(1)(a)(2). The Eleventh Circuit Court of Appeal has recognized that the "Florida Long–Arm statute provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1168 (11th Cir. 2005). "[T]he alleged tortfeasor's 'physical presence [in Florida] is not required.'" *Id.* (citing *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). Thus, an out-of-state defendant's "telephonic, electronic, or written

communications into Florida" suffice to trigger jurisdiction under the long–arm statute as long as the cause of action arises from those communications. *Id.*

In *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008), the Eleventh Circuit found that jurisdiction over the nonresident defendant was proper under the long-arm statute because "the alleged infringement clearly [] occurred in Florida by virtue of the website's accessibility in Florida." *Id.* Similarly, in *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *4 (S.D. Fla. Jan. 23, 2015), the plaintiff alleged that the non-resident defendant had committed a tort as a result of the defendant's postings on a noncommercial website. The court found that there was jurisdiction under the long arm statute based on the fact "that the website was both accessible, and accessed, in Florida" even though the posting "contained minimal references to the state of Florida." *See also Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) ("Because the Florida Supreme Court concluded that Marshall committed a tortious act in Florida by posting allegedly defamatory material about ISC that was accessible in Florida when the material was then accessed and thus published in Florida, she is accordingly subject to the Florida long-arm statute.").

The Complaint alleges that Defendants partnered with FTX to promote its platform to investors by claiming FTX was the "safe" option among its competing cryptocurrency exchanges. Defendants endorsed and promoted FTX on their channels and social media platforms which were made available in Florida and form the basis of Defendants' tortious conduct. As part of their campaign, Defendants Curry, David, Osaka and others touted FTX to potential investors in catchy commercials and social media posts, thereby assisting FTX in perpetuating the fraud and conversion of users' investments and without ever disclosing the nature of their sponsorships. Nor did they conduct any due diligence. These communications and promotions were accessible *and*

5

were accessed in Florida. Further, as Plaintiffs allege in their complaint, Miami was the center for the FTX fraud scheme and therefore, Defendants knew or should have known that, if FTX failed, the effect would be felt by Florida citizens.

Moreover, the scope of § 48.193(1)(a)(2) is not limited to acts committed in Florida but extends to tortious acts committed by a defendant outside of Florida that cause injury within Florida. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013). The Eleventh Circuit in *Mosseri* held: "Applying our precedent in *Lovelady,* we conclude that under Florida law where Mosseri created the websites and posted the alleged infringing material does not matter. For purposes of § 48.193(1)(a)(2), the issue is whether Mosseri's tortious acts caused injury in Florida. *Lovelady* says the tort of trademark infringement caused injury and thus "occurred in Florida by virtue of the website's accessibility in Florida." Similarly, in *DCS Real Est. Invs., LLC v. Bella Collina Events, LLC*, No. 5:14-CV-678-JSM-PRL, 2015 WL 628586, at *2 (M.D. Fla. Feb. 12, 2015), the Court found that Florida's long-arm statute was satisfied even though the website at issue was created and operated outside of Florida because it had caused injury in Florida. Here, Defendants' communications and actions were instrumental to furthering the FTX fraudulent scheme and caused injury in Florida as the Florida Plaintiffs who invested with FTX lost their investments when the fraudulent scheme fell apart.

Plaintiffs' allegations satisfy the tortious conduct prong of Florida's long-arm statute.

### b.  Defendants' role as co-conspirators subjects them to jurisdiction in Florida.

Where a plaintiff alleges a nationwide conspiracy to engage in tortious conduct, courts have held that the tortious conduct occurs within Florida in satisfaction of the state's long-arm statute. *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 585 (Fla. 2000); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009) (citing *Machtinger v.*

6

*Inertial Airline Servs., Inc.,* 937 So.2d 730, 734–36 (Fla. 3d DCA 2006) (finding personal jurisdiction existed in Florida where conspiracy was made in Ohio but acts in furtherance of the conspiracy were done in and directed toward Florida)); *AXA Equitable Life Ins. Co.*, 608 F. Supp. 2d at 1354 ("Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state."); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1313 (S.D. Fla. 2017) (same).

In *Execu-Tech Bus. Sys., Inc.*, the plaintiff alleged that the defendant and other manufacturers of thermal fax paper "deliberately conspired to fix the wholesale price of their product throughout the United States, including Florida" in violation of Florida's Deceptive and Unfair Trade Practice Act. *Id.* The Florida Supreme Court held that the defendant and its coconspirators "committed a tortious act (i.e., a violation of the Act) on Florida soil and subjected themselves to the jurisdiction of Florida courts." *Id.* at 585–86.

Plaintiffs allege that Defendants were part of a conspiracy to engage in tortious conduct, including participating in the deceptive promotions of FTX and the solicitation of unregistered investments in Florida. When FTX partnered with Defendants, Defendants knew the impact that the resulting campaign would have on their followers and ultimately, on the growth of the FTX Platform. CAC ¶¶ 709–711. Defendants conspired in developing the publicity that would help make FTX appear credible and legitimate to their fanbase and their followers who were, unfortunately, unsuspecting investors whom Defendants knew would believe their recommendations. *See e.g.*, *id*. ¶ 26 (Defendants Brady and Bündchen were instrumental in bringing in Defendant Curry, as well as other FTX Brand Ambassadors); *see also* ¶ 711. As expected, thousands of investors like Plaintiffs and others in Florida (and nationwide) handed over their hard-earned money to FTX—and lost it when the Miami-centered scheme fell apart. As

7

Plaintiffs fully detail in their opposition to Defendants Rule 12(b)(6) motion to dismiss, these allegations are sufficient to state a claim for civil conspiracy.

Further, Defendants' connections to Florida are not solely based on the allegations surrounding Mr. Dabir (*see* 268 Mot., 9). As the Complaint alleges in further detail, many of Defendants' unlawful actions occurred specifically in Florida, such as Defendant Osaka wearing the FTX logo during the Miami Open. Defendants' reliance on *Oueiss v. Saud*, No. 1:20-cv-25022, 2022 WL 1311114, at *18 (S.D. Fla. Mar. 29, 2022) (268 Mot., 9) is therefore unhelpful because there, there was no "indication that the [nonresident defendant] was aware of any act in furtherance of the Conspiracy that took place or would take place in Florida."

Defendants also argue that Plaintiffs cannot rely on the long-arm statute because they have not alleged a tort nor any connexity between Plaintiffs' allegations and their causes of action. (*See* 268 Mot., 8-10). Both are incorrect. First, Plaintiffs allege in their complaint that Plaintiffs' FTX promotions constitute tortious conduct. And, for purposes of determining whether personal jurisdiction is proper, "[t]he appropriate inquiry is whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred." *Machtinger v. Inertial Airline Servs., Inc.,* 937 So.2d 730, 734 (Fla. 3d DCA 2006); *see also Deloitte & Touche v. Gencor Indus., Inc.,* 929 So. 2d 678, 682 (Fla. 5th DCA 2006) ("the inquiry is not whether the tort occurred, but assuming the tort occurred as alleged, did it occur in Florida?").

Plaintiffs allege that Defendants committed torts in Florida which ultimately caused injury to Florida plaintiffs, and that these form the basis of Plaintiffs' claims and causes of action. Defendants have not, nor could they, deny that the FTX scheme was based orchestrated and based in Florida. Defendants orchestrated with the FTX entities to facilitate a powerful celebrity and influencer endorsement and branding campaign that involved Defendants' statements which

8

ultimately resulted in thousands of investors in Florida deciding to invest in FTX. When FTX failed, *in Florida*, so did the Florida investors' investments. Plaintiffs have shown a sufficient nexus between their claims and Defendants' actions in Florida.

Plaintiffs have satisfied the conspiracy jurisdiction theory embraced by Florida's long-arm statute.

### c. Exercising specific personal jurisdiction over Defendants comports with Due Process.

Along with meeting the requirements of Florida's long-arm Statute, the exercise of personal jurisdiction over Defendants satisfies the "traditional conception of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945). Courts apply a three-part test: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Mosseri*, 736 F.3d at 1355. All three factors are satisfied here.

*First*, but for Defendants' FTX promotions, there would be no claim before this Court. This requirement is met because, as described above, Plaintiffs adequately allege that their claims arise out of Defendants' tortious conduct in Florida. The Court should reject Defendants' attempts to point the finger at others to minimize their involvement and liability in the case. (268 Mot., 11). "[T]o be sure, every single MDL Defendant is responsible for the damages that Class Members have sustained." CAC ¶ 11. Defendants did not need to have created nor controlled the Platform to be responsible, (*see* 268 Mot., 11), because without their involvement, the FTX fraud was not

9

have reached the unprecedented extent it did, tying in Plaintiffs and other investors in the class. Defendants' actions in Florida gave rise to Plaintiffs' claims.

*Second*, Defendants have purposefully availed themselves of Florida sufficient to warrant them to jurisdiction here. A "nonresident defendant's ...tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Mosseri*, 736 F.3d at 1356. Even a single act can support jurisdiction if it creates a substantial connection with the forum. *Lovelady*, 544 F.3d at 1285. When an intentional tort is alleged, courts may use one of two applicable tests for determining whether the defendant purposefully availed himself of the forum: the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984) or the "minimum contacts test" set forth in *Keeton v. Hustler Mag., Inc.,* 465 U.S. 770 (1984). *Mosseri*, 736 F.3d at 1356. A defendant need only meet the standard for one of these tests to satisfy due process. Here, both tests are met.[1]

Under the *Calder* "effects test," a defendant avails himself of the forum when the tort was (1) intentional, (2) aimed at the forum state, and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Mosseri*, 736 F.3d at 1356. In *Gubarev v. Buzzfeed, Inc.*, 253 F. Supp. 3d 1149, 1159 (S.D. Fla. 2017), this Court held that the "effects test" was satisfied where the plaintiffs showed that the defendants intentionally posted an article (that contained defamatory statements) on an international website that was accessible in Florida and

---

[1] A civil conspiracy claim can also satisfy the due process requirements. *See Sky Enterprises, LLC v. Offshore Design & Drilling Servs., LLC*, No. 3:16-CV-916-J-32PDB, 2017 WL 7309871, at *13 (M.D. Fla. Dec. 21, 2017). *See Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016). *See Mazer,* 556 F.3d at 1281–82 (finding that a non-resident defendant in a Florida civil conspiracy is subject to personal jurisdiction even if the alleged conspirator otherwise has no connections with the state); *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, No. 09-23248-CIV, 2011 WL 5057203, at *7-*9 (S.D. Fla. Oct. 24, 2011) (same).

one of those plaintiffs was a Florida resident. It stated: "When Defendants published their unverified Dossier via their website and mobile application, Defendants knew it would be viewed around the world, and given the international scope of its contents, should have anticipated that the effects of the publication might be felt in different fora, including the fora where Plaintiffs are located. Accordingly, Defendants cannot claim surprise at being hauled into court in the Southern District of Florida." *Id*.

Here, Defendants aggressively promoted and advertised FTX on their YouTube and social media channels that Defendants knew were accessible throughout the entire world, including specifically, in Miami, FTX's main base and the "hot spot" for crypto companies. Accordingly, Defendants availed themselves of the laws of Florida under the *Calder* "effects test" because these promotions were accessible in Florida and viewed by Plaintiffs in Florida, which created harms in Florida that could have been reasonably anticipated by Defendants.

Jurisdiction in Florida is also proper under the "minimum contacts test." Under this test, a court assesses the nonresident defendant's contacts and asks whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being hauled into court in the forum. *Mosseri*, 736 F.3d at 1357. This Court has held that an online publication to a national audience that was accessed in Florida, and caused harm in Florida, was sufficient to satisfy the minimum contacts test. *Buzzfeed, Inc.,* 253 F. Supp. 3d at 1160. The same analysis applies here. It is disingenuous for Defendants, who are known nationwide and who each have hundreds of thousands if not millions of followers—and who knew that their communications and promotions would be accessed in Florida (FTX's main hub)—to now claim that they could not reasonably anticipate being hauled into a Florida court.

11

Defendants cite to several Florida opinions. None are helpful. For example, in *Don King Prods., Inc. v. Mosley*, No. 15-61717-CV, 2016 WL 3950930, at *4 (S.D. Fla. Jan. 27, 2016) (268 Mot., 10), the Court declined to find jurisdiction because the "Plaintiff's justification for the exercise of personal jurisdiction over Defendants hinge[d] on [the defendant's] marketing of the August 29, 2015 event on the internet," but "Plaintiff's cause of action did not arise from that marketing." Plaintiffs' claims here arise from the Defendants' FTX marketing and promotions.

*Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n,* 140 F. Supp. 2d 1325, 1330 (S.D. Fla. 2001) and *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12, 2023) (268 Mot., 12) are both distinguishable because in those cases, the alleged tortious conduct and/or injury did not occur in Florida. Here, Plaintiffs allege that Defendants' tortious conduct, i.e., their unlawful and deceptive promotions, occurred in Florida. They also allege that these communications led to injury in Florida as the Florida plaintiffs invested in FTX and ultimately lost their investments. In another case, *Zamora Radio, LLC v. Last.fm LTD.*, No. 09-20940-CIV, 2011 WL 2580401, at *4 (S.D. Fla. June 28, 2011) (268 Mot., 12), the Court focused on the due process analysis in the context of websites who sell products, not at issue here.

Finally, Defendants erroneously rely on numerous cases from *other jurisdictions* which analyze due process in the context of general jurisdiction, which is inapplicable here. *See e.g., Hy Cite Corp. v. Badbusinessbureau.com,* L.L.C., 297 F. Supp. 2d 1154, 1161 (W.D. Wis. 2004); ("Plaintiff's argument that general jurisdiction exists in this case [involving the defendant's internet activities in the forum state] borders on the frivolous."); *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) ("[T]he fact that [the defendant] maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction.").

12

*Lastly*, jurisdiction over Defendants in Florida comports with fair play and substantial justice. *Lovelady*, 544 F.3d at 1288 (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Courts consider four relevant factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining effective relief, and (4) the judicial system's interest in resolving the dispute. *Id*. (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980)). Balancing the four factors weighs in favor of this Court's exercise of jurisdiction over Defendants.

"Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. When Florida residents have been harmed, Florida has a substantial interest in allowing its residents to obtain convenient and effective relief in their district. *Tobinick*, 2015 WL 328236, at *10. The ties between the FTX fraud, including Defendants' actions, and Florida are significant, and the harm that Plaintiffs suffered *within the* forum, are all extremely relevant to the Court's due process determination.

Defendants also face no undue burden by litigating this case in Florida, where this MDL is currently pending. Any burden on Defendants occasioned by litigating here is mitigated by "modern methods of transportation and communication [which] reduce this burden significantly." *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 259 (11th Cir. 1996). Thus, the burden of "transporting documents to Florida" considered in *Response Reward Sys., L.C. v. Meijer, Inc.,* 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002), (*see* 268 Mot., 14), is non-existent, especially given that the MDL is already pending here—*and* these same Defendants would still be subject to suit here in this MDL because there are actions already properly transferred into this MDL from their home jurisdictions. Defendants' other concern regarding the burden of "hiring local counsel" considered

13

in *Wiegering v. Blue Cross & Blue Shield of Massachusetts, Inc.,* No. 16-23031-CIV, 2017 WL 1294907, at *4 (S.D. Fla. Feb. 2, 2017) (268 Mot., 14) is neutral at best, as it would apply equally to Plaintiffs in Florida if they are forced to bring their claims in California.

Even so, even if this Court determines there is an undue burden on Defendants, the other three factors all heavily support this Court's exercise of jurisdiction. *Tobinick*, 2015 WL 328236, at *10 (holding that an exercise of jurisdiction does not offend the traditional notions of fair play and substantial justice when there is a burden on the defendant, but the remaining factors favor exercising jurisdiction). The Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.

## II.     DEFENDANTS' CLAIM-SPLITTING ARGUMENT HAS NO MERIT.

Defendants argue that it is "improper" for Plaintiffs to maintain the *Garrison* action in Florida simultaneously with the action filed in California. (268 Mot., 15) They ask that this Court dismiss the "duplicative" *Garrison* action pursuant to the claim-splitting doctrine. (*Id*. at 15) The truth is, however, "there is no duplicative litigation because there is but one case pending before the Court—this MDL—and all other cases have been administratively closed pending remand." *In re Zantac (Ranitidine) Prod. Liab. Litig.,* 546 F. Supp. 3d 1152, 1182 (S.D. Fla. 2021). Accordingly, it is "improper" for Defendants to raise this argument at this juncture.[2] "The Defendants may raise this issue at such time to the extent they believe it is necessary to avoid duplicative litigation in any transferee court." *Id*. (denying the defendants' request to dismiss any complaint because of improper claim splitting).

---

[2] Defendants' cases, *Vanover v. NCO Fin. Servs., Inc.,* 857 F.3d 833 (11th Cir. 2017) and *Hussain v. Hussain*, No. 3:22-CV-24-MMH-MCR, 2022 WL 198811, at *2 (M.D. Fla. Jan. 12, 2022), *reconsideration denied*, No. 3:22-CV-24-MMH-MCR, 2022 WL 180785 (M.D. Fla. Jan. 19, 2022), are inapposite. Neither were MDLs and thus, neither considered this doctrine in the context of transferee cases, as here.

### III. DEFENDANTS' MOTION TO DISMISS RAISES ISSUES THAT WARRANT JURISDICTIONAL DISCOVERY.

To the extent the Court is not satisfied of the propriety of its jurisdiction over the Defendants, Plaintiffs request that the Court postpone consideration of Defendants' motion until after Plaintiffs have had an opportunity to conduct jurisdiction discovery on the issues presented, as explained in Plaintiffs' Omnibus Motion, and as this Court previously held in the *Paffrath* action prior to transfer into this MDL. *See* Order at 2 ("The Court finds that jurisdictional discovery is appropriate; additional jurisdictional facts need not be alleged in Plaintiffs' pleading.").

In the Eleventh Circuit, jurisdictional discovery is highly favored before resolving motions to dismiss for want of personal jurisdiction. *See e.g.*, *Happy Tax Franchising, LLC v. Hill*, Case No. 19-24539-CIV, 2020 WL 13221241, *1 (S.D. Fla. Jun 24, 2020) (granting leave to conduct jurisdictional discovery prior to deciding motion to dismiss); *Kilma v. Carnival Corp.*, 2008 WL 4559231, at *1 (S.D. Fla. Oct. 10, 2008) (permitting jurisdictional discovery prior to ruling on a motion to dismiss) (Moore, J.); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 2008 WL. 1771857, *2 (S.D. Fla. Apr. 15, 2008) ("[J]urisdictional discovery will be useful to determine the actual extent of Defendants' contacts with Florida to determine whether this case can be resolved on its merits. Without factual discovery, the Court would be left to conjecture whether it could exercise jurisdiction over Defendants.").

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss for lack of personal jurisdiction. Alternatively, Plaintiffs request that the Court defer ruling on these motions until after Plaintiffs have had an opportunity to conduct jurisdictional discovery regarding this Court's personal jurisdiction over Defendants.

## **REQUEST FOR ORAL ARGUMENT**

Plaintiffs respectfully request that the Court hear oral argument on this opposition and respectfully submit that thirty minutes should be sufficient for all Parties.

Dated: November 6, 2023                                    Respectfully submitted,

| **Plaintiffs' Co-Lead Counsel** ||
| --- | --- |
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| **Plaintiffs' Promoter Committee Members** ||
| Barbara C. Lewis<br>Florida Bar No. 118114<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>service@moskowitz-law.com | K. Rachel Lanier<br>Alex Brown<br>**THE LANIER LAW FIRM, P.C.**<br>10940 W. Sam Houston Pkwy N.<br>Houston, TX 77064<br>Telephone: (713) 659-5200<br>Rachel.Lanier@lanierlawfirm.com<br>Alex.Brown@lanierlawfirm.com |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed on November 6, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam Moskowitz*

Adam Moskowitz