# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla.
Case No. 1:23-cv-20700

*O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal.
Case No. 3:23-cv-3655

*Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*,
S.D. Fla. Case No. 1:23-cv-22960

*Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal.
Case No. 3:23-cv-03974

_____ /

**DECLARATION OF ADAM M. MOSKOWITZ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY DEFENDANTS TEMASEK HOLDINGS PRIVATE LTD., TEMASEK INTERNATIONAL USA LLC, AND SINO GLOBAL CAPITAL HOLDINGS, LLC**

I, Adam M. Moskowitz, declare and state as follows:

1.      I am Founding and Managing Partner at The Moskowitz Law Firm. I am an attorney duly authorized and licensed to practice and in good standing in the State of Florida. This declaration is based on my personal knowledge, unless otherwise stated, and if called as a witness I could and would testify competently to the facts stated herein.

2.      Attached as Exhibit 1 is a true and correct copy of trial exhibit GX-320 from the criminal trial of Samuel Bankman-Fried, *United States v. Samuel Bankman-Fried*, No. 1:22-cr-00673 (S.D.N.Y.).

3.      Attached as Exhibit 2 is a true and correct copy of "Sino Global Capital"'s Liquid Value slide deck circulated publicly online.

4. Attached as Exhibit 3 is a true and correct copy of Sino Global Capital Management LLC's Form ADV that is available on the SEC's website.

5. Attached as Exhibit 4 is true and correct copy of an excerpt of a large spreadsheet listing FTX's venture capital partners, which native spreadsheet is trial exhibit GX-26 from the criminal trial of Samuel Bankman-Fried, *United States v. Samuel Bankman-Fried*, No. 1:22-cr-00673 (S.D.N.Y.).

6. Attached as Exhibit 5 is a true and correct copy of Sijia Chen's LinkedIn page which is publicly available via the LinkedIn website.

7. Attached as Exhibit 6 is a true and correct copy of a screenshot of Matthew Graham's Bloomberg profile which is publicly available via the Bloomberg website.

8. Attached as Exhibit 7 is a true and correct copy of a screenshot of "Sino Global Capital"'s tweet regarding the collapse of FTX which is publicly available via Twitter (now X) now via Sino Global's rebranded "Ryze" account.

9. Attached as Exhibit 8 is a true and correct copy of trial exhibit GX-286 from the criminal trial of Samuel Bankman-Fried, *United States v. Samuel Bankman-Fried*, No. 1:22-cr-00673 (S.D.N.Y.).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on November 5, 2023 in Miami, Florida.

By: */s/ Adam M. Moskowitz*
**Adam M. Moskowitz**

# Exhibit 1

Message

| | |
|---|---|
| **From**: | Sam Bankman-Fried [sam@alameda-research.com] |
| on behalf of | Sam Bankman-Fried <sam@alameda-research.com> [sam@alameda-research.com] |
| **Sent**: | 4/25/2021 5:34:43 AM |
| **To**: | Arjun Balaji [arjun@paradigm.xyz] |
| **CC**: | Lehua Cortez [lehua@paradigm.xyz]; Matt Huang [matt@paradigm.xyz] |
| **Subject**: | Re: rob sarver |
| **Attachments**: | FTX stats 2021-04-23.xlsx |

thanks!

And I definitely apologize for being a bit (intentionally) difficult to interface with on the call.

BTW:

a) new file attached; 1 more day and fixes a column labeling issue (same overall but 2 revenue source labels got swapped).
b) **indicative and super confidential**: this is not finalized yet but it's roughly what we anticipate sending out very soon: https://docs.google.com/document/d/1rcIFddVBEBn9CMgOTfz-TCrxwObRuo32PPRWj2o1jyY/edit?usp=sharing (request access).  Note that some of the information there is a few days old.

—
Sam Bankman-Fried

On April 24, 2021, 8:51 AM GMT+8 sam@alameda-research.com wrote:

Hey guys -- updated numbers attached.

—
Sam Bankman-Fried

On April 23, 2021, 4:52 AM GMT+8 sam@alameda-research.com wrote:

sounds good!

—
Sam Bankman-Fried

On April 23, 2021, 4:35 AM GMT+8 arjun@paradigm.xyz wrote:

Hi Sam, apologies for what looks like a messy game of telephone here.

**GOVERNMENT EXHIBIT**
**320**
22 Cr. 673 (LAK)

Re-affirming that we haven't discussed or considered "12B", so genuinely confused where that's coming from. Simply put, our interest in a potential partnership with FTX (or anyone, really) comes from optimism about the long-term potential of the business and the positive impact it can have.

In the interest of transparency: we are (of course) impressed by the scale you've accomplished so quickly, but we *do* have some concerns, briefly outlined below.

1) Governance. As we understand, FTX is effectively owned + controlled by Sam, lacking more traditional corporate governance model, rights, etc. One example of where this can negatively manifest with crypto companies is through (unintended) value leakage, e.g. via FTT, Alameda, or some other mechanism. Like you, we place a *heavy* emphasis on alignment. As a shareholder, we'd want confidence that the value FTX creates accrues directly to equity holders. We're not suggesting that this isn't the case today; just that, candidly, we aren't sure how to think about it yet.

2) Price. Thanks for your earlier feedback; let's discuss live tomorrow.

Our lens may be colored by our sense of the highest order goal: paving the best path to FTX building an enduring franchise, and (eventually) listing as a public company. I don't think we're misaligned on this goal, so perhaps the disagreement is on how to maximize success to that end.

In any case, appreciate your patience and look forward to discussing in higher resolution tomorrow.

.

On Thu, Apr 22, 2021 at 10:33 AM, Sam Bankman-Fried <sam@alameda-research.com> wrote:
 Got it -- hearing a lot of inconsistent things here between you, the others, and third hand sources about it.

 Happy to chat about it!

 —

 Sam Bankman-Fried

On April 23, 2021, 1:27 AM GMT+8 matt@paradigm.xyz wrote:

Hi Sam: happy to talk through it. We have never thought about "12" as a number, much less talked about that number with anyone. It also is not in our interest to do anything to harm you or FTX — we are long crypto more than we are long any particular company, and we all benefit from good actors like you building successfully. I would be surprised if this chatter is coming from us, or anyone we associate with — this is not how high quality venture/growth investors behave.

On Thu, Apr 22 2021 at 10:24 AM, Sam Bankman-Fried <sam@alameda-research.com> wrote:
 "Word on the street" is that we're asking for $12B val.

 90% sure it's coming from those conversations.

 Not super appreciative of that, though no reason to think it's you guys in particular, could be coming from any one of them.

CONFIDENTIAL TREATMENT REQUESTED BY FTX

Frankly a pretty bad look given the Coinbase holdings many of that group have, makes us wonder what the motivation behind it is.

I'm not sure what your guys thoughts are on the raise but maybe to be more explicit about this: it's totally fine if you want a $12b val, but we don't, and we would rather just not raise, which is totally fine with us!  Also lots of others are happy with 20b, and FTT implies a much higher val, so would be kinda weird for us to raise a 10-12 from a group of people who have not historically been very aligned with us.  Super happy to keep talking about the raise if you want, and happy to talk about valuation if you have a convincing case for it!

I'm not really sure how we as a community got to where we are -- we should be looking to work together in the crypto space, not fight each other, and things seem surprisingly sectarian -- though at some point vested interest in projects might just cause that, which could just be a prisoner's dilemma.

I'm happy to hop on a call to discuss if helpful--we have one scheduled for tomorrow--but wanted to jump on this fairly quickly because it's very important to us that there be honesty in this process and we suspect that somewhere near here misleading information is being passed behind our backs.

And again -- don't mean this as specifically targeting you guys -- could just as easily be any of the others.

—

Sam Bankman-Fried

On April 23, 2021, 1:14 AM GMT+8 matt@paradigm.xyz wrote:

Hi Sam:

We've just been chatting with a few folks we know and often collaborate with (Tiger, MFN, Ribbit, Coatue) to compare notes on the opportunity.

The discussion / consensus seems to be:
1) everyone loves you, SBF + the core FTX platform
2) $20B is a very high price (even for Tiger and Coatue who are setting price records in the private markets)

What is the message that you think is leaking?

On Thu, Apr 22 2021 at 10:06 AM, Sam Bankman-Fried <sam@alameda-research.com> wrote:
Hey guys --

I was wondering if you could give more context on conversations you've been having with other VCs.  I suspect that a somewhat garbled version of those is leaking out and being reframed as coming from us...

—

Sam Bankman-Fried

On April 19, 2021, 2:04 PM GMT+8 sam@alameda-research.com wrote:

sure!

CONFIDENTIAL TREATMENT REQUESTED BY FTX

—

Sam Bankman-Fried

On April 19, 2021, 12:51 PM GMT+8 matt@paradigm.xyz wrote:

Thanks Sam. is it OK for us to share this and discuss with MFN as well?

Either way, let's schedule a call among the 3 of us (you me and Arjun) this week?

On Sun, Apr 18 2021 at 1:54 PM, Sam Bankman-Fried <sam@alameda-research.com> wrote:
Hey!

I have a bunch of thoughts on this.

Here's something I wrote up recently on it--want to read it, and then decide whether it makes sense for us to have a call on it?

https://docs.google.com/document/d/1LRQcugHfFEp1zqG9rRZ3v2ikXuGQ_7w8oqpkoMHOnz8/edit?usp=sharing

Sam

—

Sam Bankman-Fried

On April 19, 2021, 1:18 AM GMT+8 matt@paradigm.xyz wrote:

Sam: hope you are well.

One thought/question for you:

We really like you and the FTX business, but feel $20B+ is mismatched with the scale of the current business. We gather that many other high quality investors may feel similarly.

Would you entertain an offer around $10B if we can aggregate a super high quality syndicate?

Eg perhaps it is Paradigm, Tiger, Coatue, Ribbit, MFN, etc?

This would still be low (~4%) dilution, while getting a bunch of premium names on the cap table ahead of any plans to go public / make inroads into the US.

If you'd be open to entertaining, we could work to try to put something together...

On Thu, Feb 25 2021 at 3:04 AM, Sam Bankman-Fried <sam@alameda-research.com> wrote:
Thanks :)

Hopefully that will come to fruition!

CONFIDENTIAL TREATMENT REQUESTED BY FTX

—

Sam Bankman-Fried

On February 25, 2021, 7:44 AM GMT+8 matt@paradigm.xyz wrote:

Hey Sam:

Just wanted to give you a heads up that I spoke to Robert Sarver about you and FTX/Alameda. He was curious to do some referencing. Said all good things.. so best of luck on whatever collaboration you guys are cooking up.

Best,
Matt

CONFIDENTIAL TREATMENT REQUESTED BY FTX

# Exhibit 2

# Liquid Value Fund I, LP

## Sino Global Capital *in partnership with* FTX





Information Current as of January 5, 2022

Private & Confidential - Not for Distribution

 

# Executive Summary

➢ **Liquid Value Fund I** is a stage agnostic closed-ended VC fund that invests in blockchain technology, cryptocurrencies and adjacent infrastructure.



**Sino Global Capital** is an Asia-based VC that has an **unrealized multiple of 31.8x** on mark-to-market investments that were made with prop capital over the last 15 months.

SGC is the **GP responsible for all fund discretionary decisions** of Liquid Value Fund I.



FTX is a cryptocurrency derivatives exchange that handles over $10B in daily volume.

**FTX** will serve as **Co-GP** and **anchor LP** of Liquid Value Fund I, providing significant strategic advantage. FTX will provide up to $60m in capital contributions.

➢ Fund I has a current portfolio of 22 investments, including an investment with a **14x markup and one with a 31x markup.**

➢ GP will return 100% of LP capital before taking carried interest.

➢ Substantial investment weight given to **FTX, Solana, and Serum** ecosystems.

 

# 1. Sino Global Capital

# 2. Liquid Value Fund I ("LV I")

# 3. Case Studies

# 4. Offering Overview

# 5. Contact & Data Room

# 6. Appendix

Sino Global Capital

 

# Key Facts

**Sino Global Capital – Key Facts:**

➢ Founded in 2015 and exclusively crypto-focused since early 2017.

➢ Writes strategic checks to best-in-class blockchain and digital asset projects.

➢ Known for strong Asia-based networks and ability to bridge East-West gaps.

➢ Prop AUM of more than $300M.

**Sino Global Capital – Team Member Distribution:**



Note: Beijing (1), Shanghai (1), Kunming (2), Hong Kong (1), Kuala Lumpur (1), Singapore (1), The Hague (1), Miami (1), Utah (1), USA (1), Bengaluru (2).

Private & Confidential - Not for Distribution

# Team



**Managing Partner & CEO**
**Matthew Graham**

Matthew has seven years of mainland China investment banking experience with a focus on representing international technology companies in China for strategic partnership and investment. Previously Matthew working in financial services as trader. @mattysino



**Partner**
**Haru Chen**

Haru is a serial entrepreneur and investor from China's Yunnan Province. She has been focused on blockchain since 2015, and has invested in numerous successful projects including Ethereum, Neo, Ontology, EOS, Ada, RSK, and AE.



**Chief of Staff**
**Dermot McGrath**

Dermot has over 5 years of China experience focusing on corporate finance, investment analysis, deal making and technology commercialization. Before joining Sino Global Capital, he worked as a Finance Manager for a blue-chip Chinese Fortune 500 company. @dermotmcg



**COO & Head of Investment**
**Ian Wittkopp**

Ian has 6 years of experience working at the Bureau of Labor Statistics in Washington, D.C. in both the Budget and Economic Indicators Offices. Before joining SGC, Ian also consulted for numerous MNCs including Volkswagen-China and was a Product Manager at an InsurTech. @ianw888



**General Counsel & Head of IR**
**Patrick Loney**

Over seven years experience as a lawyer, merchant banker and entrepreneur in mainland China. Serving as General Counsel and fundraiser for SGC. Fluent in English and proficient in Mandarin. @PatrickLoney0



**Senior Investment Associate**
**Hans Xiang**

Hans has over 3 years' experience in the blockchain industry. He completed his BSc in Finance & Control at The Hague University of Applied Sciences and has recently finished his MSc in Financial Technology at The University of Glasgow. He has a multilingual background in English, Chinese and Dutch. @OmniscientAsian



**Vice President - Communications**
**Sally Wang**

Sally has 6+ years combined experience in communications and crypto. Started as a Journalist in China state-owned media CGTN and found her passion for crypto. She has guided multiple crypto brands including TokenInsight, Velo Labs, DCG's Foundry etc. @sallywang666



**Investment Associate**
**Thomas Tang**

Thomas has 2+ years of experience in traditional finance, previously working at Citibank across multiple verticals including equities, credit & risk, portfolio & asset management. Thomas graduated from the London School of Economics in 2019, majoring in Accounting and Finance. @TTx0x



**Investment Associate**
**Wei Han**

Wei Han has over 6 years of product development experience in the Fintech industry. An early participant to the DeFi space, he was top 100 in the Degen Score leaderboard. Now, as a full-time investment associate at SGC he helps contribute to deal sourcing and research. @cweihan



**Investment Analyst**
**Ben Poynor**

Ben has four years of crypto experience, three years in backend web development, and two years in venture capital. @0xPemulis

# Sino Global Capital




# We invest early and with conviction








# Investments by Geography



**North America**
- FTX US
- PYTH
- SOLANA
- Zapper

**Europe**
- Mintbase
- XDEFI WALLET
- zignaly
- jet
- WINTERMUTE

**Distributed**
- OXYGEN
- MAPS.ME
- Parrot
- BONFIDA

**Asia**
- MERCURIAL FINANCE
- SERUM
- Impossible Finance
- Mask
- Delta. Exchange
- FTX

**19** total investments

Private & Confidential - Not for Distribution

# Sino Global Capital

rt># Sino Global Capital

 

# Return Performance

**31.8x*** on invested capital



**Mark-to-market investments**

**1.0x*** on invested capital
(valued at cost)



**Investments with no market price**

*Note: See Appendix I for details

 

1. Sino Global Capital

2. **Liquid Value Fund I ("LV I")**

3. Case Studies

4. Offering Overview

5. Contact & Data Room

6. Appendix




# Fund & Manager

➢ Liquid Value Fund I, LP (the "Fund") is **managed by Sino Global Capital ("SGC") in partnership with FTX**.

➢ SGC will make **all discretionary decisions** regarding the management of the Fund.

➢ FTX will be **co-GP and anchor LP**. The fund represents the first time that FTX has allocated capital to an outside VC manager.

➢ SGC's mark-to market prop capital investments have a **31.8x unrealized multiple**.

➢ SGC has **22 deals** (and counting) in the Liquid Value Fund I portfolio.



**SINO** GLOBAL CAPITAL

**Matthew Graham**
CEO | @mattysino

**SGC is an established crypto investor with deep roots in Asia and within the rapidly expanding Solana ecosystem. Founded by Matthew Graham, SGC invests in leading crypto teams around the world.**



**FTX**

Sam Bankman-Fried
CEO | @sbf_ftx

**FTX is a crypto finance empire built by Sam Bankman-Fried ("SBF") & includes FTX Int'l ($25B crypto exchange), FTX.US (crypto exchange), Alameda Research (prop trading) & Alameda Ventures (prop VC).**



# Key Advantages

*Competition for the best deals has increased; LV Fund I has significant advantages to access the best deal flow*



### Partnership with FTX

➢ FTX as a co-GP and anchor LP unlocks significant strategic advantage.

➢ Rapidly growing brand recognition in US through high profile sponsorships of Miami Heat Arena, MLB and star athletes including Tom Brady, Steph Curry and Lewis Hamilton



### Best-in-class reputation and expertise

➢ Crypto is an industry with large amounts of "vaporware."

➢ SGC investment signals trustworthiness and quality

➢ SGC provides key strategic relationships and post-investment support to portfolio.



### Significant mindshare in Solana ecosystem

➢ SGC has invested broadly in Solana infrastructure

➢ Co-hosted a product demo day with Solana team to showcase best-in-class teams.

➢ Solana Ecosystem Outlook with SBF (FTX founder), Anatoly Yakovenko (Solana founder) and Matt (SGC founder)



### Strong Asia-based network and geographic diversity

➢ SGC provides a strong Asia network and expertise, while also bridging Western networks.

➢ Being an Asia-based VC provides a significant advantage in winning deals.




# Key Advantages: FTX



**Forbes**

**#32 Sam Bankman-Fried**

Founder, FTX

PHOTO BY GUERIN BLASK FOR FORBES

**REAL TIME NET WORTH** $22.5B

as of 10/11/21

• Sam Bankman-Fried is the richest person in crypto, thanks to his FTX exchange and Alameda Research trading firm.

**THE WALL STREET JOURNAL.**

MARKETS | DEALS

## Crypto Exchange FTX Valued at $18 Billion in Funding Round

Investors include SoftBank, Sequoia Capital and Daniel Loeb's Third Point hedge fund





Cryptocurrencies

## Tom Brady and Gisele Bündchen Take Equity Stake in Crypto Firm FTX

By Vildana Hajric  + Follow

June 29, 2021, 8:00 PM GMT+8
*Updated on June 30, 2021, 3:10 AM GMT+8*

► 'They were both really into it,' says FTX's Sam Bankman-Fried

► Tampa quarterback tweets Monday that 'laser eyes didn't work'

Private & Confidential - Not for Distribution

 

# Key Advantages: FTX

*FTX as a Co-GP and anchor LP unlocks significant strategic value through FTX ecosystem collaboration*

## Sam Bankman-Fried is the CEO or founding member of the below entities



➢ Raised $1.32B in 2021; valued at $25B.

➢ Lists over 250 futures and 100 spot markets.

➢ Avg daily volume of $12–15B.

➢ Official sponsor of Major League baseball and Miami Heat.



➢ Subsidiary of FTX, focused on the U.S. market.

➢ Acquired LedgerX to expand offerings.

➢ Controls a CFTC derivatives clearing organization license letting it host complex contracts on the platform.

➢ Avg daily volume of $200–250M.





➢ Best-in-class OTC desk & market making services

➢ Manages over $1B in digital assets

➢ Trades between $1-$10 billion per day across thousands of products



➢ First decentralized, on-chain, central limit order book.

➢ Recently launched permissioned markets setting.

➢ $40M+ in daily volume (trailing 7 days)

# Key Advantages: Solana Mindshare

*SGC has gained significant mindshare in the Solana ecosystem investing in key projects and infrastructure*



See Solana Demo Day hosted and organized by SGC




# Key Advantages: Reputation

*SGC has spent years cultivating deep ecosystem relationships; SGC on a cap table is signal that a project is high quality*

**Reputation among crypto users and other investors:**

View SGC as long-term, high trust, community member







**Reputation among builders and portfolio companies:**

View SGC as taking extra effort post-investment



**Bryan Pellegrino – CEO of LayerZero Labs**
Sino Global Capital's founder friendly culture, deep network in both the east and west, and proven track record of extremely high commitment to long-term vision with portfolio companies makes them one investor every company building something real in this space should want in their corner






# Portfolio Investments (Page 1 of 2)

| Project | Category | Description |
|---------|----------|-------------|
| ORCA | Decentralized Exchange | **Orca** is the easiest, fastest, and most user-friendly automated market marker on Solana, a human-centred DEX built to optimise for simplicity and composability. |
| LayerZero. | Cross-Chain Architecture | **LayerZero** is an omnichain interoperability protocol that unites decentralized applications across disparate blockchains. |
| Clearpool | Institutional Liquidity | **Clearpool** is a decentralized capital markets ecosystem, where institutions can borrow uncollateralized liquidity, and LPs get attractive rewards. |
| ZETA | Decentralized Derivatives | **Zeta** is the premier under-collateralized DeFi options platform, providing liquid derivatives trading to individuals and institutions alike. |
| VYBE NETWORK | Blockchain Infrastructure | **Vybe Network** is the premier data-processing & analytics protocol for the Solana & Serum community. |
| SOLCERY | Gaming Infrastructure | **Solcery** is a decentralized games hub on Solana, connecting players, developers and creators in one place. |
| PHANTASIA | Sports Gaming | **Phantasia** is the first of its kind Fantasy Sports Platform made for players and powered by Blockchain technology. |




# Portfolio Investments (Page 2 of 2)

| Project | Category | Description |
|---|---|---|
| paraswap | DeFi Aggregator | **ParaSwap** aggregates decentralized exchanges and other DeFi services in one comprehensive interface to streamline and facilitate users' interactions with DeFi. |
| pSTAKE | Liquid Staking | **pSTAKE** is a liquid staking protocol unlocking the liquidity of staked assets which can be used in DeFi to generate additional yield. |
| Atomic Form | NFT Hardware | **Atomic Form** builds hardware and software for NFTs and Web3 media, bridging physical and digital worlds through on-chain verification, participation and display. |
| NYAN | Decentralised Gaming | **Nyan Heroes** is a NFT play-and-earn metaverse built on Solana featuring a third-person shooter battle royale game. |
| BETDEX | Sports Betting | **BetDex** is a global decentralized sports betting protocol that is permissionless, allowing anyone to build applications on top. |
| XDEFI WALLET | Wallet Infrastructure | **XDEFI Wallet** is a multi-chain wallet built for DeFi users and NFT lovers with native integrations on THORChain, Ethereum, several EVM networks and Terra. |
| cypher | Decentralized Exchange | **Cypher** is a decentralized synthetic asset protocol on the Solana blockchain that facilitates price and demand discovery in nascent markets. |
| marginfi | Trading Protocol | **MarginFi** allows traders to seamlessly trade across Solana protocols through one global margin account. |




# 1. Sino Global Capital

# 2. Liquid Value Fund I ("LV I")

# **3. Case Studies**

# 4. Offering Overview

# 5. Contact & Data Room

# 6. Appendix

## Case Study

 

# Solana

Solana is a built to **optimize speed, volume, cost efficiency and composability**, which we believe will drive mass adoption of Solana-based crypto services.

**Speed/Volume**.
Currently can process ~50,000 tps
Theoretically scalable to ~710,000 tps

**Cost efficiency**.
Ultra-low fees ($0.0008/tx).

**Composability**.
Highly composable infrastructure and developer tools accelerates innovation



Source: DeFi Llama

*Watch*: Matthew Graham, SBF and Solana founder Anatoly Yakovenko discuss upcoming trends in the Solana ecosystem. (September 10, 2021)
*Read*: Solana's roadmap for increased decentralization and scaling.

 

# Solana

*Solana is a highly performant chain with the ability to scale transactions*

| | Solana | Polkadot | Cardano | Cosmos | Avalanche | Algorand | Binance Smart Chain | Ethereum | Ethereum 2* | Arbitrum | Optimism |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **TPS** | 50,000 | 400 | 250 | 1,400 | 4,500 | 1,000 | 100 | 30 | 100,000* | 2,000 | 2,000 |
| **Finality time** | 0.4 seconds | 12-60 seconds | ~20 seconds | 1-3 seconds | 1-5 seconds | 4.5 seconds | 75 seconds | 5 minutes | 20 - 60 seconds | Up to 1 week | Up to 1 week |
| **Avg tx fee** | $0.0008 | $0.46 | $0.38 | $0.03 | $0.03 | $0.001 | $0.01 | $20-200+ | | $3-12 | $1-5 |
| **# of Validators** | 1,083 | 297 | 2,076 | 125 | 1,025 | 1,254 | 21 | 3,023 | 242,772 | N/A | N.A |
| **Type** | Layer 1 | Sharding | Layer 1 | Layer 1 | Layer 1 | Layer 1 | Layer 1 | Layer 1 | Sharding | Layer 2 (Optimistic rollup) | Layer 2 (Optimistic rollup) |

*ETH2.0 stats are theoretical

**Note on Decentralization:** At ~1,000 nodes, Solana is often criticized for being "centralized." We agree Solana needs more independent nodes and believe it will as it grows. However, mass adoption (among devs, consumers and institutions) will not hinge on decentralization but rather on speed, volume, cost and composability.

 

# Serum

In August 2020, FTX launched Serum, the first DEX using a fully decentralized central limit orderbook (CLOB). Serum enables transaction bundling and potential for advanced, automated investment strategies.

## Serum and its ecosystem are highly composable

**Applications use Serum as an economic clearing mechanism, share Serum's common liquidity pool and access services offered by one another.**

**Key Benefit**

This allows projects to focus their efforts on refining their own product (i.e. risk engine, margin engine, front end) and business model, and to launch, pivot and iterate as needed.



**DeFi Applications built via composable blocks**

BONFIDA  jet  MERCURIAL FINANCE  コープ|COPE

RAYDIUM OXYGEN STAR ATLAS

Media Network

**Infrastructure**

SERUM   PYTH

**Layer 1**

SOLANA

**Credit:**
*@ianw8899*
*@TTx0x*

*Serum Ecosystem project examples in Appendix

Private & Confidential - Not for Distribution

 

# Adjacent Investment Opportunities

We continue to invest in projects that are adjacent to our core focus of DeFi and the Solana ecosystem. Typically, these decisions are made based on the quality of the founders and teams at these companies.



**Cryptocurrency derivatives exchange built by traders, for traders**

➢ Offers innovative products including industry-first derivatives, options, volatility products and leveraged tokens

➢ Strives to be robust enough for professional trading firms and intuitive enough for first-time users



**Global NFT platform and marketplace**

➢ "Shopify for NFTs": allows anyone to create their own NFTs and marketplace while abstracting away all complexity

➢ Innovative auction types and token features such as spawning, self-destructing and embedded value tokens



**Leading Crypto market maker and proprietary trading firm**

➢ Crypto-native market maker focused on creating efficient, liquid, transparent markets

➢ Provides liquidity algorithmically more than $5B+/day across most cryptocurrency exchanges and trading platforms

Private & Confidential - Not for Distribution

22

 

# 1. Sino Global Capital

# 2. Liquid Value Fund I ("LV I")

# 3. Case Studies

# 4. **Offering Overview**

# 5. Contact & Data Room

# 6. Appendix

 

# Offering Overview

The investments we make out of **Liquid Value Fund I** will leverage SGC's strong reputation, experience, and network while adding the immense strategic benefits of a best-in-class partner like FTX.

We plan to continue to cultivate high ROI opportunities in the FTX, Solana, and Serum ecosystems while broadening into other areas of innovation.

**Service Providers**

Cayman Counsel: **||| WALKERS**

LPA/PPM: **COLE-FRIEMAN & MALLON LLP**

Tax: 

Administrator: 

## Liquid Value Fund I

| | |
|---|---|
| General Partners |  |
| Size | $175M Target; $200M Hard Cap |
| Minimum Ticket | $1 million |
| Term | Close-ended: 10 (+1) years |
| Investment Period | 4 years (ideal is 18–30 months) |
| Distribution | 100% of LP capital returned before GP carry |
| Mgmt Fee / Carry | 2% / 20% |
| Initial Closing | December 15, 2021 ($10m; FTX) |
| Investment Stage | Early-stage; Follow-on; Private "treasury rounds"; Select big tickets |

Private & Confidential - Not for Distribution

24

 

1. Sino Global Capital

2. Liquid Value Fund I ("LV I")

3. Case Studies

4. Offering Overview

**5. Contact & Data Room**

6. Appendix

 

# Contact & Data Room

**Data Room Contents:**

- PPM
- LPA
- Subscription Agreement
- Team Track Record
- Warehouse/Portfolio Materials
- Organizational Documents

**Contact and Data Room Access:**

Detailed descriptions of the offering, our investment track record, warehoused and portfolio investments, and subscription documents can be found in the Fund's data room.

Please email [investors@sinoglobalcapital.com](mailto:investors@sinoglobalcapital.com) to request access.

Private & Confidential - Not for Distribution

 

# Legal Disclosure

The information contained in this presentation (the "Presentation") is highly confidential and is being provided for information purposes only to a limited number of financially sophisticated persons who have expressed an interest in the matters described herein.

The Presentation does not constitute an offer to sell, or a solicitation of an offer to purchase, any securities.  Any such offer or solicitation will be made in accordance with applicable securities laws.

The Presentation is being provided on a confidential basis solely to those persons to whom this Presentation may be lawfully provided.  It is not to be reproduced or distributed to any other persons (other than professional advisors of the persons receiving these materials).  It is intended solely for the use of the persons to whom it has been delivered and may not be used for any other purpose.  Any reproduction of the Presentation in whole or in part, or the disclosure of its contents, without the express prior consent of Liquid Value GP Limited is prohibited.

No representation or warranty (express or implied) is made or can be given with respect to the accuracy or completeness of the information in the Presentation.  Certain information in the Presentation constitute "forward-looking statements" about potential future results.  Those results may not be achieved, due to implementation lag, other timing factors, portfolio management decision-making, economic or market conditions or other unanticipated factors. Nothing contained herein shall be relied upon as a promise or representation whether as to past or future performance or otherwise.

In considering the performance information contained herein, past performance is not necessarily indicative of future results, and there can be no assurance that comparable results will be achieved.

The views, opinions, and assumptions expressed in this presentation are as of the date listed on the cover, are subject to change without notice, may not come to pass and do not represent a recommendation or offer of any particular security, strategy or investment.

The Presentation does not purport to contain all of the information that may be required to evaluate the matters discussed therein.  It is not intended to be a risk disclosure document.  Further, the Presentation is not intended to provide recommendations, and should not be relied upon for tax, accounting, legal or business advice.  The persons to whom this document has been delivered are encouraged to ask questions of and receive answers from the general partner of the Company and to obtain any additional information they deem necessary concerning the matters described herein.

None of the information contained herein has been filed or will be filed with the Securities and Exchange Commission, any regulator under any state securities laws or any other governmental or self-regulatory authority. No governmental authority has passed or will pass on the merits of this offering or the adequacy of this document. Any representation to the contrary is unlawful.

 

1. Sino Global Capital

2. Liquid Value Fund I ("LV I")

3. Case Studies

4. Offering Overview

5. Contact & Data Room

**6. Appendix**

 

# SGC Prop Track Record

## Mark-to-Market Investments

| Company | Token ticker | Investment Amount ($000s) | % of prop cap | Mark-to-Market ($000s) | MOIC |
|---|---|---|---|---|---|
| Serum | SRM | | | | 114.7x |
| Mask Network | MASK | | | | 42.9x |
| Bonfida | FIDA | | | | 35.5x |
| Delta Exchange | DETO | | | | 5.4x |
| MAPS | MAPS | | *Redacted – See Data Room* | | 11.5x |
| Oxygen | OXY | | | | 7.6x |
| Solana | SOL | | | | 15x |
| Zignaly | ZIG | | | | 8.6x |
| Mercurial Finance | MER | | | | 3.2x |
| Impossible Finance | IF | | | | 28.7x |
| Jet Protocol | JET | | | | 19x |
| Party Parrot | PRT | | | | 4.3x |
| **Total** | | **$4,080,000** | **38%** | **$129,705,997** | **31.8x** |

## Investments with no public market price

| Company | Token ticker | Investment Amount ($000s) | % of prop cap | Mark-to-Market ($000s) | MOIC |
|---|---|---|---|---|---|
| Mintbase | - | | | | 1x |
| Wintermute | - | | | | 1x |
| Zapper.fi | - | | *Redacted – See Data Room* | | 1x |
| Pyth | - | | | | 1x |
| FTX | - | | | | 1x |
| FTX.US | - | | | | 1x |
| **Total** | | **$6,772,842** | **62%** | **$6,772,842** | **1x** |

**Note:** The multiple of 31.8X was calculated based on 12 investments using the following formula: [Current market price of all SGC primary or private deals which are actively traded with a quoted market price] / [Total invested capital on such deals]. The 6 primary or private deals for which there is not a current public market price are excluded from the calculation, although, if comps were used, many of these investments would show significant gains.

Finally, secondary market purchases of Solana (at a blended price below $2) and FTX's exchange token FTT (at a blended price below $1) are not included in the above estimates. As of January 5, 2022, Solana was traded at $149.31 and FTT at $37.23.

 Back to "Return Performance"

# Solana Advantage Visual

*High performance next generation blockchains unlock a virtuous cycle leading to mass adoption*



① High performance blockchains *(i.e. Solana)* unlocks **additional "design space"** *(i.e. speed, cost, composability)*

② Key infrastructure "legos" use new design space to **build differently** *(i.e. Serum)*

③ Applications **build better products**

④ **Users enter the ecosystem,** attracted by differentiated products

⑤ **UX improves** as experience becomes differentiator *(i.e. deprecation of Serum Swap)*

⑥ **Total Value Locked increases rapidly**

⑦ Ecosystem interest and **investment increases,** more institutional entrances *(i.e. $314.5M Solana fundraise)*

*Virtuous Cycle of Next Gen Protocols*

Private & Confidential - Not for Distribution

 

# Interesting Solana Ecosystem Projects

| Product | Industry | Description |
|---|---|---|
| PYTH | Data Oracle | To compete with NASDAQ as a provider of real time data to financial firms, Jump Capital identified Solana as the only viable blockchain on which to launch Pyth, an oracle that feeds real-time data from around the world directly into Serum and registered on the Solana blockchain. |
| Serum | Infrastructure | FTX chose Solana on which to build Serum, the first ever decentralized central limit order book (CLOB) on which other financial apps are built. We discuss Serum in more detail in the following slides. |
| jet | DeFi | Taking advantage of Solana's highly composable blockchain, Jet Protocol built out a borrow-lending protocol available for its own users and also other projects within the Serum ecosystem. Jet will even allow for cross chain rate arbitrage powered by Solana and Serum. |
| Parrot | DeFi | Parrot Protocol is a liquidity and lending network that uses their own stablecoin, PAI, to centralize exposure taken across multiple collateral types. The team chose Solana because allows multiple processing steps to be combined into a single transaction, enabling complex collateral types to be efficiently liquidated. |
| AUDIUS | Music Streaming | Audius is a blockchain-powered, decentralized music streaming service with social media features. It is owned and run by an open-source community of artists, fans, and developers. The founders of Audius chose Solana for its high-performance and ability to house a platform with the potential need to scale rapidly. |
| STAR ATLAS | Gaming | Star Atlas is a next-generation video game involving space exploration, territorial conquest, political domination, and more. It features a decentralized economy and plans to evolve into a metaverse. (Watch trailer). The team chose Solana because it is the only blockchain with the computational bandwidth akin to the modern internet. |




# Portfolio Construction

In our prop capital investments, we were capital constrained and not able to "size up" and lead as many investment rounds as desired.

➤ In Liquid Value Fund I, we will continue to invest heavily in early-stage (Seed/Series A) projects. Check sizes are under $1.5M with 30% capital allocated. These early-stage investments will start a relationship with the founders and allow for value to be built post investment.

➤ Roughly 40% of the fund will be invested in deals between $1.5M-$5M. With this check size we will lead follow-ons for Seed/Series A projects. Additionally, we will participate in private placements.

➤ Finally, roughly 30% of the fund will be invested in deals over $5M. These are unique opportunities where ability to size up meets conviction.



**Check Size**

- Small: <$1.5M+ 30%
- Large: $5M+ 30%
- Medium: $1.5M-$5M 40%

**Token vs. Equity**

- Equity 25%
- Tokens 75%



VYBE NETWORK

➤ Co-lead investor
➤ Token investment in a seed round project.
➤ Post money-cap $25M
➤ Strategy: Build relationship and size up in future rounds.

ORCA

➤ Private placement token investment from Orca treasury.
➤ Received token discount for lockup & strategic support.
➤ Strategy: Size positions up.



WINTERMUTE

➤ Series B equity investment w/ dividend.
➤ Chain agnostic crypto-adjacent infrastructure
➤ Strategy: Strategic cooperation & future investment




# Portfolio Construction

The investment breakdown of our prop capital could reflect thinking on future investment allocations.

➢ Solana projects (42%): We continue to see strong deal flow in the Solana ecosystem due to our strong reputation and mindshare. These projects span DeFi, NFTs/gaming, sports betting, and developer infrastructure.

➢ Chain-agnostic infrastructure (42%): We view crypto-adjacent or supporting infrastructure like centralized exchanges, wallets, market makers, and agnostic aggregators as superior investment opportunities in a multi-chain world.

➢ Non-Solana projects (16%): We continue to believe in a multi-chain world where different use cases are more suited or less suited for different chains. We have also made investments on Ethereum, NEAR, and Binance Smart Chain.

***Potential* Investment Breakdown**



**Note:** The above percentages reflect the breakdown of our previous prop capital portfolio (19 investments); Liquid Value Fund I *could* exhibit a similar breakdown.

Private & Confidential - Not for Distribution

# Exhibit 3

# FORM ADV

**UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION AND REPORT BY EXEMPT REPORTING ADVISERS**

| | |
|---|---|
| Primary Business Name: SINO GLOBAL CAPITAL MANAGEMENT LLC | CRD Number: 326303 |
| Other-Than-Annual Amendment - All Sections | Rev. 10/2021 |
| 6/30/2023 12:36:30 PM | |

**WARNING:** Complete this form truthfully. False statements or omissions may result in denial of your application, revocation of your registration, or criminal prosecution. You must keep this form updated by filing periodic amendments. See Form ADV General Instruction 4.

### Item 1 Identifying Information

Responses to this Item tell us who you are, where you are doing business, and how we can contact you. If you are filing an *umbrella registration*, the information in Item 1 should be provided for the *filing adviser* only. General Instruction 5 provides information to assist you with filing an *umbrella registration*.

A.   Your full legal name (if you are a sole proprietor, your last, first, and middle names):
**SINO GLOBAL CAPITAL MANAGEMENT LLC**

B.   (1) Name under which you primarily conduct your advisory business, if different from Item 1.A.
**SINO GLOBAL CAPITAL MANAGEMENT LLC**

*List on Section 1.B. of Schedule D any additional names under which you conduct your advisory business.*

(2) If you are using this Form ADV to register more than one investment adviser under an *umbrella registration*, check this box ☐

*If you check this box, complete a Schedule R for each relying adviser.*

C.   If this filing is reporting a change in your legal name (Item 1.A.) or primary business name (Item 1.B.(1)), enter the new name and specify whether the name change is of
☐ your legal name or ☐ your primary business name:

D.   (1) If you are registered with the SEC as an investment adviser, your SEC file number:
(2) If you report to the SEC as an *exempt reporting adviser*, your SEC file number: **802-127878**
(3) If you have one or more Central Index Key numbers assigned by the SEC ("CIK Numbers"), all of your CIK numbers:

No Information Filed

E.   (1) If you have a number ("*CRD Number*") assigned by the *FINRA's CRD* system or by the IARD system, your *CRD* number: **326303**

*If your firm does not have a CRD number, skip this Item 1.E. Do not provide the CRD number of one of your officers, employees, or affiliates.*

(2) If you have additional *CRD* Numbers, your additional *CRD* numbers:

No Information Filed

F.   *Principal Office and Place of Business*
(1) Address (do not use a P.O. Box):

| Number and Street 1: | | Number and Street 2: | |
|---|---|---|---|
| 1111 BRICKELL AVENUE, 10TH FLOOR | | | |
| City: | State: | Country: | ZIP+4/Postal Code: |
| MIAMI | Florida | United States | 33131 |

If this address is a private residence, check this box: ☐

*List on Section 1.F. of Schedule D any office, other than your principal office and place of business, at which you conduct investment advisory business. If you are applying for registration, or are registered, with one or more state securities authorities, you must list all of your offices in the state or states to which you are applying for registration or with whom you are registered. If you are applying for SEC registration, if you are registered only with the SEC, or if you are reporting to the SEC as an exempt reporting adviser, list the largest twenty-five offices in terms of numbers of employees as of the end of your most recently completed fiscal year.*

(2) Days of week that you normally conduct business at your *principal office and place of business*:
◉ Monday - Friday  ○ Other:

Normal business hours at this location:
9-5

(3) Telephone number at this location:
1 206 972 6047

(4) Facsimile number at this location, if any:

(5) What is the total number of offices, other than your *principal office and place of business*, at which you conduct investment advisory business as of the end of your most recently completed fiscal year?

G.  Mailing address, if different from your *principal office and place of business* address:

    Number and Street 1:                        Number and Street 2:

    City:              State:              Country:          ZIP+4/Postal Code:

    If this address is a private residence, check this box: ☐

H.  If you are a sole proprietor, state your full residence address, if different from your *principal office and place of business* address in Item 1.F.:

    Number and Street 1:                        Number and Street 2:

    City:              State:              Country:          ZIP+4/Postal Code:

|  |  | Yes | No |
|---|---|---|---|

I.  Do you have one or more websites or accounts on publicly available social media platforms (including, but not limited to, Twitter, Facebook and LinkedIn)?      ◉ ○

*If "yes," list all firm website addresses and the address for each of the firm's accounts on publicly available social media platforms on Section 1.I. of Schedule D. If a website address serves as a portal through which to access other information you have published on the web, you may list the portal without listing addresses for all of the other information. You may need to list more than one portal address. Do not provide the addresses of websites or accounts on publicly available social media platforms where you do not control the content. Do not provide the individual electronic mail (e-mail) addresses of employees or the addresses of employee accounts on publicly available social media platforms.*

J.  Chief Compliance Officer

    (1) Provide the name and contact information of your Chief Compliance Officer. If you are an *exempt reporting adviser,* you must provide the contact information for your Chief Compliance Officer, if you have one. If not, you must complete Item 1.K. below.

    Name:                           Other titles, if any:

    Telephone number:                   Facsimile number, if any:

    Number and Street 1:                        Number and Street 2:

    City:               State:              Country:          ZIP+4/Postal Code:

    Electronic mail (e-mail) address, if Chief Compliance Officer has one:

    (2) If your Chief Compliance Officer is compensated or employed by any *person* other than you, a *related person* or an investment company registered under the Investment Company Act of 1940 that you advise for providing chief compliance officer services to you, provide the *person's* name and IRS Employer Identification Number (if any):

    Name:

    IRS Employer Identification Number:

K.  Additional Regulatory Contact Person: If a person other than the Chief Compliance Officer is authorized to receive information and respond to questions about this Form ADV, you may provide that information here.

    Name:                           Titles:

    Telephone number:                   Facsimile number, if any:

    Number and Street 1:                        Number and Street 2:

    City:               State:              Country:          ZIP+4/Postal Code:

    Electronic mail (e-mail) address, if contact person has one:

|  | Yes | No |
|---|---|---|

L.  Do you maintain some or all of the books and records you are required to keep under Section 204 of the Advisers Act, or similar state law, somewhere other than your *principal office and place of business*?    ○ ◉

*If "yes," complete Section 1.L. of Schedule D.*

                                                     Yes  No

M.  Are you registered with a *foreign financial regulatory authority*?    ○ ◉

*Answer "no" if you are not registered with a foreign financial regulatory authority, even if you have an affiliate that is registered with a foreign financial regulatory authority. If "yes," complete Section 1.M. of Schedule D.*

                                                     Yes  No

N.  Are you a public reporting company under Sections 12 or 15(d) of the Securities Exchange Act of 1934?    ○ ◉

                                                     Yes  No

O.  Did you have $1 billion or more in assets on the last day of your most recent fiscal year?    ○ ◉

    If yes, what is the approximate amount of your assets:

    ○  $1 billion to less than $10 billion

    ○  $10 billion to less than $50 billion

○ $50 billion or more

*For purposes of Item 1.O. only, "assets" refers to your total assets, rather than the assets you manage on behalf of clients. Determine your total assets using the total assets shown on the balance sheet for your most recent fiscal year end.*

P.   Provide your *Legal Entity Identifier* if you have one:

A *legal entity identifier* is a unique number that companies use to identify each other in the financial marketplace. You may not have a *legal entity identifier*.

---

**SECTION 1.B. Other Business Names**

No Information Filed

---

**SECTION 1.F. Other Offices**

No Information Filed

---

**SECTION 1.I. Website Addresses**

List your website addresses, including addresses for accounts on publicly available social media platforms where you control the content (including, but not limited to, Twitter, Facebook and/or LinkedIn). You must complete a separate Schedule D Section 1.I. for each website or account on a publicly available social media platform.

| | |
|---|---|
| Address of Website/Account on Publicly Available Social Media Platform: | https://sinoglobalcapital.com/ |
| Address of Website/Account on Publicly Available Social Media Platform: | https://twitter.com/SinoGlobalCap |
| Address of Website/Account on Publicly Available Social Media Platform: | https://www.linkedin.com/company/sinoglobalcapital |

---

**SECTION 1.L. Location of Books and Records**

No Information Filed

---

**SECTION 1.M. Registration with Foreign Financial Regulatory Authorities**

No Information Filed

---

**Item 2 SEC Registration/Reporting**

**SEC Reporting by *Exempt Reporting Advisers***

B.   Complete this Item 2.B. only if you are reporting to the SEC as an *exempt reporting adviser*. Check all that apply. You:

☑ (1) qualify for the exemption from registration as an adviser solely to one or more venture capital funds, as defined in rule 203(l)-1;

☐ (2) qualify for the exemption from registration because you act solely as an adviser to *private funds* and have assets under management, as defined in rule 203(m)-1, in the United States of less than $150 million;

☐ (3) act solely as an adviser to *private funds* but you are no longer eligible to check box 2.B.(2) because you have assets under management, as defined in rule 203(m)-1, in the United States of $150 million or more.

*If you check box (2) or (3), complete Section 2.B. of Schedule D.*

---

**SECTION 2.B. *Private Fund* Assets**

If you check Item 2.B.(2) or (3), what is the amount of the *private fund* assets that you manage?   $

NOTE: "*Private fund* assets" has the same meaning here as it has under rule 203(m)-1. If you are an investment adviser with its *principal office and place of business* outside the Un...

---

### Item 3 Form of Organization

If you are filing an *umbrella registration*, the information in Item 3 should be provided for the *filing adviser* only.

A. How are you organized?

- ○ Corporation
- ○ Sole Proprietorship
- ○ Limited Liability Partnership (LLP)
- ○ Partnership
- ○ Limited Liability Company (LLC)
- ◉ Limited Partnership (LP)
- ○ Other (specify):

*If you are changing your response to this Item, see Part 1A Instruction 4.*

B. In what month does your fiscal year end each year?
DECEMBER

C. Under the laws of what state or country are you organized?

State     Country

Delaware  United States

*If you are a partnership, provide the name of the state or country under whose laws your partnership was formed. If you are a sole proprietor, provide the name of the state or country where you reside.*

*If you are changing your response to this Item, see Part 1A Instruction 4.*

---

### Item 6 Other Business Activities

In this Item, we request information about your firm's other business activities.

A. You are actively engaged in business as a (check all that apply):

- ☐ (1) broker-dealer (registered or unregistered)
- ☐ (2) registered representative of a broker-dealer
- ☐ (3) commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
- ☐ (4) futures commission merchant
- ☐ (5) real estate broker, dealer, or agent
- ☐ (6) insurance broker or agent
- ☐ (7) bank (including a separately identifiable department or division of a bank)
- ☐ (8) trust company
- ☐ (9) registered municipal advisor
- ☐ (10) registered security-based swap dealer
- ☐ (11) major security-based swap participant
- ☐ (12) accountant or accounting firm
- ☐ (13) lawyer or law firm
- ☐ (14) other financial product salesperson (specify):

*If you engage in other business using a name that is different from the names reported in Items 1.A. or 1.B.(1), complete Section 6.A. of Schedule D.*

|  |  | Yes | No |
|---|---|---|---|
| B. (1) | Are you actively engaged in any other business not listed in Item 6.A. (other than giving investment advice)? | ○ | ◉ |
| (2) | If yes, is this other business your primary business? | ○ | ○ |

*If "yes," describe this other business on Section 6.B.(2) of Schedule D, and if you engage in this business under a different name, provide that name.*

|  |  | Yes | No |
|---|---|---|---|
| (3) | Do you sell products or provide services other than investment advice to your advisory *clients*? | ○ | ◉ |

*If "yes," describe this other business on Section 6.B.(3) of Schedule D, and if you engage in this business under a different name, provide that name.*

---

### SECTION 6.A. Names of Your Other Businesses

**SECTION 6.B.(2) Description of Primary Business**

Describe your primary business (not your investment advisory business):

If you engage in that business under a different name, provide that name:

**SECTION 6.B.(3) Description of Other Products and Services**

Describe other products or services you sell to your *client*. You may omit products and services that you listed in Section 6.B.(2) above.

If you engage in that business under a different name, provide that name:

**Item 7 Financial Industry Affiliations**

In this Item, we request information about your financial industry affiliations and activities. This information identifies areas in which conflicts of interest may occur between you and your *clients*.

A.   This part of Item 7 requires you to provide information about you and your *related persons*, including foreign affiliates. Your *related persons* are all of your *advisory affiliates* and any *person* that is under common *control* with you.

You have a *related person* that is a (check all that apply):

☐   (1)   broker-dealer, municipal securities dealer, or government securities broker or dealer (registered or unregistered)
☐   (2)   other investment adviser (including financial planners)
☐   (3)   registered municipal advisor
☐   (4)   registered security-based swap dealer
☐   (5)   major security-based swap participant
☐   (6)   commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
☐   (7)   futures commission merchant
☐   (8)   banking or thrift institution
☐   (9)   trust company
☐   (10)  accountant or accounting firm
☐   (11)  lawyer or law firm
☐   (12)  insurance company or agency
☐   (13)  pension consultant
☐   (14)  real estate broker or dealer
☐   (15)  sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
☑   (16)  sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

*Note that Item 7.A. should not be used to disclose that some of your employees perform investment advisory functions or are registered representatives of a broker-dealer. The number of your firm's employees who perform investment advisory functions should be disclosed under Item 5.B.(1). The number of your firm's employees who are registered representatives of a broker-dealer should be disclosed under Item 5.B.(2).*

*Note that if you are filing an umbrella registration, you should not check Item 7.A.(2) with respect to your relying advisers, and you do not have to complete Section 7.A. in Schedule D for your relying advisers. You should complete a Schedule R for each relying adviser.*

*For each related person, including foreign affiliates that may not be registered or required to be registered in the United States, complete Section 7.A. of Schedule D.*

*You do not need to complete Section 7.A. of Schedule D for any related person if: (1) you have no business dealings with the related person in connection with advisory services you provide to your clients; (2) you do not conduct shared operations with the related person; (3) you do not refer clients or business to the related person, and the related person does not refer prospective clients or business to you; (4) you do not share supervised persons or premises with the related person; and (5) you have no reason to believe that your relationship with the related person otherwise creates a conflict of interest with your clients.*

*You must complete Section 7.A. of Schedule D for each related person acting as qualified custodian in connection with advisory services you provide to your clients (other than any mutual fund transfer agent pursuant to rule 206(4)-2(b)(1)), regardless of whether you have determined the related person to be operationally independent under rule 206(4)-2 of the Advisers Act.*

**SECTION 7.A. Financial Industry Affiliations**

Complete a separate Schedule D Section 7.A. for each *related person* listed in Item 7.A.

1.   Legal Name of *Related Person*:
     LIQUID VALUE GP LIMITED

2.   Primary Business Name of *Related Person*:
     LIQUID VALUE GP LIMITED

3.   *Related Person's* SEC File Number (if any) (e.g., 801-, 8-, 866-, 802-)
     -

4.   *Related Person's*
   (a)   *CRD* Number (if any):

   (b)   CIK Number(s) (if any):

                                        No Information Filed

5.   *Related Person* is:  (check all that apply)
   (a)  ☐  broker-dealer, municipal securities dealer, or government securities broker or dealer
   (b)  ☐  other investment adviser (including financial planners)
   (c)  ☐  registered municipal advisor
   (d)  ☐  registered security-based swap dealer
   (e)  ☐  major security-based swap participant
   (f)  ☐  commodity pool operator or commodity trading advisor (whether registered or exempt from registration)
   (g)  ☐  futures commission merchant
   (h)  ☐  banking or thrift institution
   (i)  ☐  trust company
   (j)  ☐  accountant or accounting firm
   (k)  ☐  lawyer or law firm
   (l)  ☐  insurance company or agency
   (m)  ☐  pension consultant
   (n)  ☐  real estate broker or dealer
   (o)  ☐  sponsor or syndicator of limited partnerships (or equivalent), excluding pooled investment vehicles
   (p)  ☑  sponsor, general partner, managing member (or equivalent) of pooled investment vehicles

|  |  | Yes | No |
|---|---|---|---|
| 6. | Do you *control* or are you *controlled* by the *related person*? | ○ | ⦿ |
| 7. | Are you and the *related person* under common *control*? | ⦿ | ○ |
| 8. (a) | Does the *related person* act as a qualified custodian for your *clients* in connection with advisory services you provide to *clients*? | ○ | ⦿ |
| (b) | If you are registering or registered with the SEC and you have answered "yes," to question 8.(a) above, have you overcome the presumption that you are not operationally independent (pursuant to rule 206(4)-2(d)(5)) from the *related person* and thus are not required to obtain a surprise examination for your *clients'* funds or securities that are maintained at the *related person*? | ○ | ○ |

   (c)   If you have answered "yes" to question 8.(a) above, provide the location of the *related person's* office responsible for *custody* of your *clients'* assets:
   Number and Street 1:                        Number and Street 2:
   City:                State:                Country:                ZIP+4/Postal Code:
   If this address is a private residence, check this box: ☐

|  |  | Yes | No |
|---|---|---|---|
| 9. (a) | If the *related person* is an investment adviser, is it exempt from registration? | ○ | ○ |
| (b) | If the answer is yes, under what exemption? | | |
| 10. (a) | Is the *related person* registered with a *foreign financial regulatory authority*? | ○ | ⦿ |

   (b)   If the answer is yes, list the name and country, in English of each *foreign financial regulatory authority* with which the *related person* is registered.
                                        No Information Filed

|  |  | Yes | No |
|---|---|---|---|
| 11. | Do you and the *related person* share any *supervised persons*? | ⦿ | ○ |
| 12. | Do you and the *related person* share the same physical location? | ⦿ | ○ |

---

**Item 7 *Private Fund* Reporting**

|  | Yes | No |
|---|---|---|
| B.  Are you an adviser to any *private fund*? | ⦿ | ○ |

*If "yes," then for each private fund that you advise, you must complete a Section 7.B.(1) of Schedule D, except in certain circumstances described in the next sentence and in Instruction 6 of the Instructions to Part 1A. If you are registered or applying for registration with the SEC or reporting as an SEC exempt reporting adviser, and another SEC-registered adviser or SEC exempt reporting adviser reports this information with respect to any such private fund in Section 7.B.(1) of Schedule D of its Form ADV (e.g., if you are a subadviser), do not complete Section 7.B.(1) of Schedule D with respect to that private fund. You must, instead, complete Section 7.B.(2) of Schedule D.*

*In either case, if you seek to preserve the anonymity of a private fund client by maintaining its identity in your books and records in numerical or alphabetical code, or similar designation, pursuant to rule 204-2(d), you may identify the private fund in Section 7.B.(1) or 7.B.(2) of Schedule D using the same code or designation in place of the fund's name.*

Funds per Page: 15 ⌄   Total Funds: 2

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a) Name of the *private fund*:

      LIQUID VALUE OFFSHORE FEEDER FUND I LP

   (b) *Private fund* identification number:
      (include the "805-" prefix also)

      805-3374738176

2. Under the laws of what state or country is the *private fund* organized:

      State:                          Country:
                                      Cayman Islands

3. (a) Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

   | Name of General Partner, Manager, Trustee, or Director |
   |---|
   | LIQUID VALUE GP LIMITED |

   (b) If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

   | No Information Filed |
   |---|

4. The *private fund* (check all that apply: you must check at least one):

   ☑ (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

   ☐ (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5. List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

   | No Information Filed |
   |---|

                                                                                                              Yes  No
6. (a) Is this a "master fund" in a master-feeder arrangement?                                                  ○    ●

   (b) If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

   | No Information Filed |
   |---|

                                                                                                              Yes  No
   (c) Is this a "feeder fund" in a master-feeder arrangement?                                                  ●    ○

   (d) If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

      Name of *private fund*:

      LIQUID VALUE FUND I LP

      *Private fund* identification number:
      (include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7. If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

   | No Information Filed |
   |---|

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

                                                                                                              Yes  No

8.  (a)  Is this *private fund* a "fund of funds"?  ○ ◉

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b)  If yes, does the *private fund* invest in funds managed by you or by a *related person*?  ○ ○

|  | Yes | No |
|---|---|---|

9.  During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)?  ○ ◉

10.  What type of fund is the *private fund*?

○ hedge fund  ○ liquidity fund  ○ private equity fund  ○ real estate fund  ○ securitized asset fund  ◉ venture capital fund  ○ Other *private fund*:

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

11.  Current gross asset value of the *private fund*:

$ 111,351,942

## Ownership

12.  Minimum investment commitment required of an investor in the *private fund*:

$ 1,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13.  Approximate number of the *private fund's* beneficial owners:

20

14.  What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

2%

15.  (a)  What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

5%

|  | Yes | No |
|---|---|---|

(b)  If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*?  ◉ ○

16.  What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

98%

## Your Advisory Services

|  | Yes | No |
|---|---|---|

17.  (a)  Are you a subadviser to this *private fund*?  ○ ◉

(b)  If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|

18.  (a)  Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*?  ○ ◉

(b)  If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

|  | Yes | No |
|---|---|---|

19.  Are your *clients* solicited to invest in the *private fund*?  ○ ◉

*NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20.  Approximately what percentage of your *clients* has invested in the *private fund*?

0%

## Private Offering

|  | Yes | No |
|---|---|---|

21.  Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933?  ○ ○

22.  If yes, provide the *private fund's* Form D file number (if any):

| No Information Filed |
|---|

## B. SERVICE PROVIDERS

### **Auditors**

|  | **Yes** | **No** |
|---|---|---|
| 23.  (a)  (1) Are the *private fund's* financial statements subject to an annual audit? | ⦿ | ○ |
| (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP? | ⦿ | ○ |

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

> **Additional Auditor Information : 1 Record(s) Filed.**
>
> If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.
>
> (b)  Name of the auditing firm:
>
> MARCUM (CAYMAN)
>
> (c)  The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):
>
> | City: | State: | Country: |
> |---|---|---|
> | GRAND CAYMAN |  | Cayman Islands |
>
> |  | **Yes** | **No** |
> |---|---|---|
> | (d)  Is the auditing firm an *independent public accountant*? | ⦿ | ○ |
> | (e)  Is the auditing firm registered with the Public Company Accounting Oversight Board? | ○ | ⦿ |
> | If yes, Public Company Accounting Oversight Board-Assigned Number: |  |  |
> | (f)  If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ○ | ○ |

|  | **Yes** | **No** |
|---|---|---|
| (g)  Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ⦿ | ○ |

(h)  Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

○ Yes  ○ No  ⦿ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

### **Prime Broker**

|  | **Yes** | **No** |
|---|---|---|
| 24.  (a)  Does the *private fund* use one or more prime brokers? | ○ | ⦿ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

| No Information Filed |
|---|

### **Custodian**

|  | **Yes** | **No** |
|---|---|---|
| 25.  (a)  Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ○ | ⦿ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

| No Information Filed |
|---|

**Administrator**

|  | | Yes | No |

26. (a) Does the *private fund* use an administrator other than your firm?    ◉ Yes  ○ No

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

---

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b) Name of administrator:

MG STOVER & CO

(c) Location of administrator (city, state and country):

| City: | State: | Country: |
| DENVER | Colorado | United States |

|  | Yes | No |

(d) Is the administrator a *related person* of your firm?    ○ Yes  ◉ No

(e) Does the administrator prepare and send investor account statements to the *private fund's* investors?
◉ Yes (provided to all investors)  ○ Some (provided to some but not all investors)  ○ No (provided to no investors)

(f) If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund's* investors? If investor account statements are not sent to the (rest of the) *private fund's* investors, respond "not applicable."

---

27. During your last fiscal year, what percentage of the *private fund's* assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

0%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

**Marketers**

|  | | Yes | No |

28. (a) Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?    ○ Yes  ◉ No

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

---

No Information Filed

---

A. PRIVATE FUND

**Information About the *Private Fund***

1. (a) Name of the *private fund*:

LIQUID VALUE US FUND I LP

(b) *Private fund* identification number:
(include the "805-" prefix also)

805-4350860371

2. Under the laws of what state or country is the *private fund* organized:

| State: | Country: |
| Delaware | United States |

3. (a) Name(s) of General Partner, Manager, Trustee, or Directors (or *persons* serving in a similar capacity):

| Name of General Partner, Manager, Trustee, or Director |
|---|
| LIQUID VALUE GP LIMITED |

(b) If filing an *umbrella registration*, identify the *filing adviser* and/or *relying adviser(s)* that sponsor(s) or manage(s) this *private fund*.

| No Information Filed |
|---|

4. The *private fund* (check all that apply: you must check at least one):

☑ (1) qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940

☐ (2) qualifies for the exclusion from the definition of investment company under section 3(c)(7) of the Investment Company Act of 1940

5. List the name and country, in English, of each *foreign financial regulatory authority* with which the *private fund* is registered.

| No Information Filed |
|---|

      **Yes No**

6. (a) Is this a "master fund" in a master-feeder arrangement? ○ ◉

(b) If yes, what is the name and *private fund* identification number (if any) of the feeder funds investing in this *private fund*?

| No Information Filed |
|---|

      **Yes No**

(c) Is this a "feeder fund" in a master-feeder arrangement? ◉ ○

(d) If yes, what is the name and *private fund* identification number (if any) of the master fund in which this *private fund* invests?

Name of *private fund*:

LIQUID VALUE FUND I LP

*Private fund* identification number:
(include the "805-" prefix also)

NOTE: You must complete question 6 for each master-feeder arrangement regardless of whether you are filing a single Schedule D, Section 7.B.(1) for the master-feeder arrangement or reporting on the funds separately.

7. If you are filing a single Schedule D, Section 7.B.(1) for a master-feeder arrangement according to the instructions to this Section 7.B.(1), for each of the feeder funds answer the following questions:

| No Information Filed |
|---|

NOTE: For purposes of questions 6 and 7, in a master-feeder arrangement, one or more funds ("feeder funds") invest all or substantially all of their assets in a single fund ("master fund"). A fund would also be a "feeder fund" investing in a "master fund" for purposes of this question if it issued multiple classes (or series) of shares or interests, and each class (or series) invests substantially all of its assets in a single master fund.

      **Yes No**

8. (a) Is this *private fund* a "fund of funds"? ○ ◉

NOTE: For purposes of this question only, answer "yes" if the fund invests 10 percent or more of its total assets in other pooled investment vehicles, regardless of whether they are also *private funds* or registered investment companies.

(b) If yes, does the *private fund* invest in funds managed by you or by a *related person*? ○ ○

      **Yes No**

9. During your last fiscal year, did the *private fund* invest in securities issued by investment companies registered under the Investment Company Act of 1940 (other than "money market funds," to the extent provided in Instruction 6.e.)? ○ ◉

10. What type of fund is the *private fund*?

○ hedge fund ○ liquidity fund ○ private equity fund ○ real estate fund ○ securitized asset fund ◉ venture capital fund ○ Other *private fund*:

NOTE: For definitions of these fund types, please see Instruction 6 of the Instructions to Part 1A.

11. Current gross asset value of the *private fund*:

$ 53,543,260

**Ownership**

12. Minimum investment commitment required of an investor in the *private fund*:

$ 1,000,000

NOTE: Report the amount routinely required of investors who are not your *related persons* (even if different from the amount set forth in the organizational documents of the fund).

13. Approximate number of the *private fund's* beneficial owners:

25

14. What is the approximate percentage of the *private fund* beneficially owned by you and your *related persons*:

2%

15. (a) What is the approximate percentage of the *private fund* beneficially owned (in the aggregate) by funds of funds:

8%

                                                                     **Yes  No**

    (b) If the private fund qualifies for the exclusion from the definition of investment company under section 3(c)(1) of the Investment Company Act of 1940, are sales of the fund limited to *qualified clients*?  ◉  ○

16. What is the approximate percentage of the *private fund* beneficially owned by non-*United States persons*:

1%

## Your Advisory Services

                                                                    **Yes  No**

17. (a) Are you a subadviser to this *private fund*?  ○  ◉

    (b) If the answer to question 17.(a) is "yes," provide the name and SEC file number, if any, of the adviser of the *private fund*. If the answer to question 17.(a) is "no," leave this question blank.

| No Information Filed |
|---|

                                                                    **Yes  No**

18. (a) Do any investment advisers (other than the investment advisers listed in Section 7.B.(1).A.3.(b)) advise the *private fund*?  ○  ◉

    (b) If the answer to question 18.(a) is "yes," provide the name and SEC file number, if any, of the other advisers to the *private fund*. If the answer to question 18.(a) is "no," leave this question blank.

| No Information Filed |
|---|

                                                                    **Yes  No**

19. Are your *clients* solicited to invest in the *private fund*?  ○  ◉

    *NOTE: For purposes of this question, do not consider feeder funds of the private fund.*

20. Approximately what percentage of your *clients* has invested in the *private fund*?

0%

## Private Offering

                                                                    **Yes  No**

21. Has the *private fund* ever relied on an exemption from registration of its securities under Regulation D of the Securities Act of 1933?  ◉  ○

22. If yes, provide the *private fund's* Form D file number (if any):

| Form D file number |
|---|
| 021-424560 |

B. SERVICE PROVIDERS

## Auditors

                                                                    **Yes  No**

23. (a) (1) Are the *private fund's* financial statements subject to an annual audit?  ◉  ○

        (2) If the answer to question 23.(a)(1) is "yes," are the financial statements prepared in accordance with U.S. GAAP?  ◉  ○

If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

> **Additional Auditor Information : 1 Record(s) Filed.**
>
> If the answer to question 23.(a)(1) is "yes," respond to questions (b) through (h) below. If the *private fund* uses more than one auditing firm, you must complete questions (b) through (f) separately for each auditing firm.

(b) Name of the auditing firm:

MARCUM (CAYMAN)

(c) The location of the auditing firm's office responsible for the *private fund's* audit (city, state and country):

City:               State:           Country:

GRAND CAYMAN                                Cayman Islands

|  | Yes | No |
|---|---|---|
| (d) Is the auditing firm an *independent public accountant*? | ◉ | ○ |
| (e) Is the auditing firm registered with the Public Company Accounting Oversight Board? | ○ | ◉ |

    If yes, Public Company Accounting Oversight Board-Assigned Number:

|  | Yes | No |
|---|---|---|
| (f) If "yes" to (e) above, is the auditing firm subject to regular inspection by the Public Company Accounting Oversight Board in accordance with its rules? | ○ | ○ |

|  | Yes | No |
|---|---|---|
| (g) Are the *private fund's* audited financial statements for the most recently completed fiscal year distributed to the *private fund's* investors? | ◉ | ○ |

(h) Do all of the reports prepared by the auditing firm for the *private fund* since your last *annual updating amendment* contain unqualified opinions?

○ Yes ○ No ◉ Report Not Yet Received

*If you check "Report Not Yet Received," you must promptly file an amendment to your Form ADV to update your response when the report is available.*

## Prime Broker

|  | Yes | No |
|---|---|---|
| 24. (a) Does the *private fund* use one or more prime brokers? | ○ | ◉ |

If the answer to question 24.(a) is "yes," respond to questions (b) through (e) below for each prime broker the *private fund* uses. If the *private fund* uses more than one prime broker, you must complete questions (b) through (e) separately for each prime broker.

> No Information Filed

## Custodian

|  | Yes | No |
|---|---|---|
| 25. (a) Does the *private fund* use any custodians (including the prime brokers listed above) to hold some or all of its assets? | ○ | ◉ |

If the answer to question 25.(a) is "yes," respond to questions (b) through (g) below for each custodian the *private fund* uses. If the *private fund* uses more than one custodian, you must complete questions (b) through (g) separately for each custodian.

> No Information Filed

## Administrator

|  | Yes | No |
|---|---|---|
| 26. (a) Does the *private fund* use an administrator other than your firm? | ◉ | ○ |

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

**Additional Administrator Information : 1 Record(s) Filed.**

If the answer to question 26.(a) is "yes," respond to questions (b) through (f) below. If the *private fund* uses more than one administrator, you must complete questions (b) through (f) separately for each administrator.

(b) Name of administrator:

MG STOVER & CO

(c) Location of administrator (city, state and country):

City:               State:                 Country:

DENVER                        Colorado                   United States

(d)  Is the administrator a *related person* of your firm?                                    Yes  No
                                                                                               ○    ◉

(e)  Does the administrator prepare and send investor account statements to the *private fund's* investors?

    ◉ Yes (provided to all investors)  ○ Some (provided to some but not all investors)  ○ No (provided to no investors)

(f)  If the answer to question 26.(e) is "no" or "some," who sends the investor account statements to the (rest of the) *private fund's* investors? If investor account statements are not sent to the (rest of the) *private fund's* investors, respond "not applicable."

27.  During your last fiscal year, what percentage of the *private fund's* assets (by value) was valued by a *person*, such as an administrator, that is not your *related person*?

0%

Include only those assets where (i) such *person* carried out the valuation procedure established for that asset, if any, including obtaining any relevant quotes, and (ii) the valuation used for purposes of investor subscriptions, redemptions or distributions, and fee calculations (including allocations) was the valuation determined by such *person*.

### Marketers

28.  (a)  Does the *private fund* use the services of someone other than you or your *employees* for marketing purposes?                          Yes  No
                                                                                               ○    ◉

You must answer "yes" whether the *person* acts as a placement agent, consultant, finder, introducer, municipal advisor or other solicitor, or similar *person*. If the answer to question 28.(a) is "yes," respond to questions (b) through (g) below for each such marketer the *private fund* uses. If the *private fund* uses more than one marketer you must complete questions (b) through (g) separately for each marketer.

No Information Filed

Funds per Page: 15 ▾   Total Funds: 2

---

**SECTION 7.B.(2) *Private Fund* Reporting**

No Information Filed

---

**Item 10 Control Persons**

In this Item, we ask you to identify every *person* that, directly or indirectly, *controls* you. If you are filing an *umbrella registration*, the information in Item 10 should be provided for the *filing adviser* only.

If you are submitting an initial application or report, you must complete Schedule A and Schedule B. Schedule A asks for information about your direct owners and executive officers. Schedule B asks for information about your indirect owners. If this is an amendment and you are updating information you reported on either Schedule A or Schedule B (or both) that you filed with your initial application or report, you must complete Schedule C.

                                                         Yes  No

A.  Does any *person* not named in Item 1.A. or Schedules A, B, or C, directly or indirectly, *control* your management or policies?        ○    ◉

*If yes, complete Section 10.A. of Schedule D.*

B.  If any *person* named in Schedules A, B, or C or in Section 10.A. of Schedule D is a public reporting company under Sections 12 or 15(d) of the Securities Exchange Act of 1934, please complete Section 10.B. of Schedule D.

---

**SECTION 10.A. *Control Persons***

No Information Filed

---

**SECTION 10.B. *Control Person* Public Reporting Companies**

No Information Filed

In this Item, we ask for information about your disciplinary history and the disciplinary history of all your *advisory affiliates*. We use this information to determine whether to grant your application for registration, to decide whether to revoke your registration or to place limitations on your activities as an investment adviser, and to identify potential problem areas to focus on during our on-site examinations. One event may result in "yes" answers to more than one of the questions below. In accordance with General Instruction 5 to Form ADV, "you" and "your" include the *filing adviser* and all *relying advisers* under an *umbrella registration*.

Your *advisory affiliates* are: (1) all of your current *employees* (other than *employees* performing only clerical, administrative, support or similar functions); (2) all of your officers, partners, or directors (or any *person* performing similar functions); and (3) all *persons* directly or indirectly *controlling* you or *controlled* by you. If you are a "separately identifiable department or division" (SID) of a bank, see the Glossary of Terms to determine who your *advisory affiliates* are.

*If you are registered or registering with the SEC or if you are an exempt reporting adviser, you may limit your disclosure of any event listed in Item 11 to ten years following the date of the event. If you are registered or registering with a state, you must respond to the questions as posed: you may, therefore, limit your disclosure to ten years following the date of an event only in responding to Items 11.A.(1), 11.A.(2), 11.B.(1), 11.B.(2), 11.D.(4), and 11.H.(1)(a). For purposes of calculating this ten-year period, the date of an event is the date the final order, judgment, or decree was entered, or the date any rights of appeal from preliminary orders, judgments, or decrees lapsed.*

You must complete the appropriate Disclosure Reporting Page ("DRP") for "yes" answers to the questions in this Item 11.

| | Yes | No |
|---|---|---|
| Do any of the events below involve you or any of your *supervised persons*? | ○ | ◉ |

For "yes" answers to the following questions, complete a Criminal Action DRP:

| | Yes | No |
|---|---|---|
| A.    In the past ten years, have you or any *advisory affiliate*: | | |
| (1)   been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to any *felony*? | ○ | ◉ |
| (2)   been *charged* with any *felony*? | ○ | ◉ |

*If you are registered or registering with the SEC, or if you are reporting as an exempt reporting adviser, you may limit your response to Item 11.A.(2) to charges that are currently pending.*

| | Yes | No |
|---|---|---|
| B.    In the past ten years, have you or any *advisory affiliate*: | | |
| (1)   been convicted of or pled guilty or nolo contendere ("no contest") in a domestic, foreign, or military court to a *misdemeanor* involving: investments or an *investment-related* business, or any fraud, false statements, or omissions, wrongful taking of property, bribery, perjury, forgery, counterfeiting, extortion, or a conspiracy to commit any of these offenses? | ○ | ◉ |
| (2)   been *charged* with a *misdemeanor* listed in Item 11.B.(1)? | ○ | ◉ |

*If you are registered or registering with the SEC, or if you are reporting as an exempt reporting adviser, you may limit your response to Item 11.B.(2) to charges that are currently pending.*

For "yes" answers to the following questions, complete a Regulatory Action DRP:

| | Yes | No |
|---|---|---|
| C.    Has the SEC or the Commodity Futures Trading Commission (CFTC) ever: | | |
| (1)   *found* you or any *advisory affiliate* to have made a false statement or omission? | ○ | ◉ |
| (2)   *found* you or any *advisory affiliate* to have been *involved* in a violation of SEC or CFTC regulations or statutes? | ○ | ◉ |
| (3)   *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4)   entered an *order* against you or any *advisory affiliate* in connection with *investment-related* activity? | ○ | ◉ |
| (5)   imposed a civil money penalty on you or any *advisory affiliate*, or *ordered* you or any *advisory affiliate* to cease and desist from any activity? | ○ | ◉ |
| D.    Has any other federal regulatory agency, any state regulatory agency, or any *foreign financial regulatory authority*: | | |
| (1)   ever *found* you or any *advisory affiliate* to have made a false statement or omission, or been dishonest, unfair, or unethical? | ○ | ◉ |
| (2)   ever *found* you or any *advisory affiliate* to have been *involved* in a violation of *investment-related* regulations or statutes? | ○ | ◉ |
| (3)   ever *found* you or any *advisory affiliate* to have been a cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4)   in the past ten years, entered an *order* against you or any *advisory affiliate* in connection with an *investment-related* activity? | ○ | ◉ |
| (5)   ever denied, suspended, or revoked your or any *advisory affiliate's* registration or license, or otherwise prevented you or any *advisory affiliate*, by *order*, from associating with an *investment-related* business or restricted your or any *advisory affiliate's* activity? | ○ | ◉ |
| E.    Has any *self-regulatory organization* or commodities exchange ever: | | |
| (1)   *found* you or any *advisory affiliate* to have made a false statement or omission? | ○ | ◉ |
| (2)   *found* you or any *advisory affiliate* to have been *involved* in a violation of its rules (other than a violation designated as a "*minor rule violation*" under a plan approved by the SEC)? | ○ | ◉ |
| (3)   *found* you or any *advisory affiliate* to have been the cause of an *investment-related* business having its authorization to do business denied, suspended, revoked, or restricted? | ○ | ◉ |
| (4)   disciplined you or any *advisory affiliate* by expelling or suspending you or the *advisory affiliate* from membership, barring or suspending you or the *advisory affiliate* from association with other members, or otherwise restricting your or the *advisory affiliate's* activities? | ○ | ◉ |

| | | | | Yes | No |
|---|---|---|---|---|---|
| F. | | Has an authorization to act as an attorney, accountant, or federal contractor granted to you or any *advisory affiliate* ever been revoked or suspended? | | ○ | ⊙ |
| G. | | Are you or any *advisory affiliate* now the subject of any regulatory *proceeding* that could result in a "yes" answer to any part of Item 11.C., 11.D., or 11.E.? | | ○ | ⊙ |

For "yes" answers to the following questions, complete a Civil Judicial Action DRP:

| | | | | Yes | No |
|---|---|---|---|---|---|
| H. | (1) | Has any domestic or foreign court: | | | |
| | | (a) in the past ten years, *enjoined* you or any *advisory affiliate* in connection with any *investment-related* activity? | | ○ | ⊙ |
| | | (b) ever *found* that you or any *advisory affiliate* were *involved* in a violation of *investment-related* statutes or regulations? | | ○ | ⊙ |
| | | (c) ever dismissed, pursuant to a settlement agreement, an *investment-related* civil action brought against you or any *advisory affiliate* by a state or *foreign financial regulatory authority*? | | ○ | ⊙ |
| | (2) | Are you or any *advisory affiliate* now the subject of any civil *proceeding* that could result in a "yes" answer to any part of Item 11.H.(1)? | | ○ | ⊙ |

## Schedule A

**Direct Owners and Executive Officers**

1. Complete Schedule A only if you are submitting an initial application or report. Schedule A asks for information about your direct owners and executive officers. Use Schedule C to amend this information.
2. Direct Owners and Executive Officers. List below the names of:
   (a) each Chief Executive Officer, Chief Financial Officer, Chief Operations Officer, Chief Legal Officer, Chief Compliance Officer(Chief Compliance Officer is required if you are registered or applying for registration and cannot be more than one individual), director, and any other individuals with similar status or functions;
   (b) if you are organized as a corporation, each shareholder that is a direct owner of 5% or more of a class of your voting securities, unless you are a public reporting company (a company subject to Section 12 or 15(d) of the Exchange Act);
   Direct owners include any *person* that owns, beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 5% or more of a class of your voting securities. For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.
   (c) if you are organized as a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 5% or more of your capital;
   (d) in the case of a trust that directly owns 5% or more of a class of your voting securities, or that has the right to receive upon dissolution, or has contributed, 5% or more of your capital, the trust and each trustee; and
   (e) if you are organized as a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 5% or more of your capital, and (ii) if managed by elected managers, all elected managers.
3. Do you have any indirect owners to be reported on Schedule B?   ○ Yes   ⊙ No
4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner or executive officer is an individual.
5. Complete the Title or Status column by entering board/management titles; status as partner, trustee, sole proprietor, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).
6. Ownership codes are:   NA - less than 5%       B - 10% but less than 25%     D - 50% but less than 75%
   A - 5% but less than 10%     C - 25% but less than 50%     E - 75% or more
7. (a) In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.
   (b) In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.
   (c) Complete each column.

| FULL LEGAL NAME (Individuals: Last Name, First Name, Middle Name) | DE/FE/I | Title or Status | Date Title or Status Acquired MM/YYYY | Ownership Code | *Control Person* | PR | *CRD* No. If None: S.S. No. and Date of Birth, IRS Tax No. or Employer ID No. |
|---|---|---|---|---|---|---|---|
| Graham, Matthew | I | MANAGING MEMBER | 12/2022 | E | Y | N | 7495930 |

## Schedule B

**Indirect Owners**

1. Complete Schedule B only if you are submitting an initial application or report. Schedule B asks for information about your indirect owners; you must first complete Schedule A, which asks for information about your direct owners. Use Schedule C to amend this information.
2. Indirect Owners. With respect to each owner listed on Schedule A (except individual owners), list below:
   (a) in the case of an owner that is a corporation, each of its shareholders that beneficially owns, has the right to vote, or has the power to sell or direct the sale of, 25% or more of a class of a voting security of that corporation:

   For purposes of this Schedule, a *person* beneficially owns any securities: (i) owned by his/her child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, sharing the same residence; or (ii) that he/she has the right to acquire, within 60 days, through the exercise of any option, warrant, or right to purchase the security.
   (b) in the case of an owner that is a partnership, all general partners and those limited and special partners that have the right to receive upon dissolution, or have contributed, 25% or more of the partnership's capital;

(c)  in the case of an owner that is a trust, the trust and each trustee; and

(d)  in the case of an owner that is a limited liability company ("LLC"), (i) those members that have the right to receive upon dissolution, or have contributed, 25% or more of the LLC's capital, and (ii) if managed by elected managers, all elected managers.

3. Continue up the chain of ownership listing all 25% owners at each level. Once a public reporting company (a company subject to Sections 12 or 15(d) of the Exchange Act) is reached, no further ownership information need be given.

4. In the DE/FE/I column below, enter "DE" if the owner is a domestic entity, "FE" if the owner is an entity incorporated or domiciled in a foreign country, or "I" if the owner is an individual.

5. Complete the Status column by entering the owner's status as partner, trustee, elected manager, shareholder, or member; and for shareholders or members, the class of securities owned (if more than one is issued).

6.  Ownership codes are:     C - 25% but less than 50%     E - 75% or more
                              D - 50% but less than 75%     F - Other (general partner, trustee, or elected manager)

7. (a)  In the *Control Person* column, enter "Yes" if the *person* has *control* as defined in the Glossary of Terms to Form ADV, and enter "No" if the *person* does not have *control*. Note that under this definition, most executive officers and all 25% owners, general partners, elected managers, and trustees are *control persons*.

   (b)  In the PR column, enter "PR" if the owner is a public reporting company under Sections 12 or 15(d) of the Exchange Act.

   (c)  Complete each column.

No Information Filed

---

**Schedule D - Miscellaneous**

You may use the space below to explain a response to an Item or to provide any other information.

---

**DRP Pages**

**CRIMINAL DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

**REGULATORY ACTION DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

**CIVIL JUDICIAL ACTION DISCLOSURE REPORTING PAGE (ADV)**

No Information Filed

---

**Execution Pages**

**DOMESTIC INVESTMENT ADVISER EXECUTION PAGE**

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial submission of Form ADV to the SEC and all amendments.

Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint the Secretary of State or other legally designated officer, of the state in which you maintain your *principal office and place of business* and any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such *persons* may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding*, or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of the state in which you maintain your *principal office and place of business* or of any state in which you are submitting a *notice filing*.

Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

| Signature: | Date: MM/DD/YYYY |
| PATRICK LONEY | 06/30/2023 |
| Printed Name: | Title: |
| PATRICK LONEY | GENERAL COUNSEL |
| Adviser *CRD* Number: | |
| 326303 | |

---

## *NON-RESIDENT* INVESTMENT ADVISER EXECUTION PAGE

You must complete the following Execution Page to Form ADV. This execution page must be signed and attached to your initial submission of Form ADV to the SEC and all amendments.

### 1. Appointment of Agent for Service of Process

By signing this Form ADV Execution Page, you, the undersigned adviser, irrevocably appoint each of the Secretary of the SEC, and the Secretary of State or other legally designated officer, of any other state in which you are submitting a *notice filing*, as your agents to receive service, and agree that such persons may accept service on your behalf, of any notice, subpoena, summons, *order* instituting *proceedings*, demand for arbitration, or other process or papers, and you further agree that such service may be made by registered or certified mail, in any federal or state action, administrative *proceeding* or arbitration brought against you in any place subject to the jurisdiction of the United States, if the action, *proceeding* or arbitration (a) arises out of any activity in connection with your investment advisory business that is subject to the jurisdiction of the United States, and (b) is *founded*, directly or indirectly, upon the provisions of: (i) the Securities Act of 1933, the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, the Investment Company Act of 1940, or the Investment Advisers Act of 1940, or any rule or regulation under any of these acts, or (ii) the laws of any state in which you are submitting a *notice filing.*

### 2. Appointment and Consent: Effect on Partnerships

If you are organized as a partnership, this irrevocable power of attorney and consent to service of process will continue in effect if any partner withdraws from or is admitted to the partnership, provided that the admission or withdrawal does not create a new partnership. If the partnership dissolves, this irrevocable power of attorney and consent shall be in effect for any action brought against you or any of your former partners.

### 3. *Non-Resident* Investment Adviser Undertaking Regarding Books and Records

By signing this Form ADV, you also agree to provide, at your own expense, to the U.S. Securities and Exchange Commission at its principal office in Washington D.C., at any Regional or District Office of the Commission, or at any one of its offices in the United States, as specified by the Commission, correct, current, and complete copies of any or all records that you are required to maintain under Rule 204-2 under the Investment Advisers Act of 1940. This undertaking shall be binding upon you, your heirs, successors and assigns, and any *person* subject to your written irrevocable consents or powers of attorney or any of your general partners and *managing agents.*

### Signature

I, the undersigned, sign this Form ADV on behalf of, and with the authority of, the *non-resident* investment adviser. The investment adviser and I both certify, under penalty of perjury under the laws of the United States of America, that the information and statements made in this ADV, including exhibits and any other information submitted, are true and correct, and that I am signing this Form ADV Execution Page as a free and voluntary act.

I certify that the adviser's books and records will be preserved and available for inspection as required by law. Finally, I authorize any *person* having *custody* or possession of these books and records to make them available to federal and state regulatory representatives.

| Signature: | Date: MM/DD/YYYY |
| Printed Name: | Title: |
| Adviser *CRD* Number: | |
| 326303 | |

# Exhibit 4

| Link to fund raise folder: https://drive.google.com/drive/folders/13aqMtWqNA1LJWR5-6sROtri4qNcSdfaX?usp=sharing | | | | |
| --- | --- | --- | --- | --- |
| **Name** | **Contacts** | **BTIG** | **Signature Block** | **Side letter** |
| Sequoia | .com, lin@sequoiacap.com, pfu@sequoiacap.com & Goodwi | | Executed | Yes |
| Paradigm Capital | att@paradigm.xyz, arjun@paradigm.xyz & Latha | No | Sig packet sent to Adam Zuckerman at Latham | Yes |
| Thoma Bravo | thomabravo.com, cchan@thomabravo.com & Kirkland | | Executed | Yes |
| SoftBank | ank.com, zelda.desouza@softbank.com, hayley.chan@softban | No | | Yes |
| Third Point LLC (Dan Loeb's fund) | n, RBrem@thirdpoint.com, Morgan Lewis (scot | No | .om/drive/folders/1bv2Fb6KnHf-O5t5vs8yutis4jb. | Yes |
| Insight Partners | com, efisher@insightpartners.com, Astarker@insightpartners | | Executed | Yes |
| Ribbit Capital | tcap.com, zack@ribbitcap.com & Latham; max@ | No | Sig Packet sent to attorney | Yes |
| Lightspeed Venture Partners | an@lsvp.com, ryan@lsvp.com, morgan@lsvp.com, Ravi@lsv | | Executed | Yes |
| Willoughby Capital (Dan Och's fund) | om>,  Adnan Ahmad <adnan@willcapllc.com>. | Yes | V 6, LLC – $5mmhttps://drive.google.com/drive/f | Yes |
| 40 North Capital LLC. | n.leidinger@40north.com, matthew.pavia@40no | Yes | om/drive/folders/1q4jSkBc0twQU9epl3iq-RCRR3hI | Yes |
| Multicoin Capital | kyle@multicoin.capital, brian@multicoin.capital | No | /drive/folders/1NhBO7pNE-Y4Rse55ZiOeDl0m; | No |
| Altimeter | @altimeter.com, James Ho <james@altimeter.co | No | om/drive/folders/1k-0oac6jQw3gdlPNcAzccYJoV | No |
| Coinbase Ventures | ase.com, shan.aggarwal@coinbase.com, ventures | | Executed | Yes |
| Bond Capital | om, paul@bondcap.com, katie@bondcap.com, | No | Executed | No |
| Precept (Mark Cuban) + Hunt Family | ker@preceptfund.com, nroossien@preceptfund. | Yes | om/drive/folders/1yjgv1MEHfvt-JozIAezM112ng | No |
| Senator Investment Group | JArmao@senatorlp.com & SRZ | | ive.google.com/drive/folders/1SWnH7CrNnGafNyxT_s6Cydd' | Yes |
| Paul Tudor Jones | n.com, Colleen.Dodman@jnsgrp.com, Michael. | No | om/drive/folders/1bRCInlrCOSWiXtioMbcMkAjL; | Yes |
| Tribe Capital | a@tribecap.co, raaid@tribecap.co, arj@tribecap. | Tribe Capital | | No |
| Tekne | ben@teknecap.com | Yes | n/drive/folders/1g-Sa-vwM7K-1G2mH-24ngTQ_I | Yes |
| DWF | m.rendchen@digital-wave.ch | Yes | om/drive/folders/1-roK9tNvIy7GhLx7-yrPL6Hyr | Yes |
| Circle | m, pcorker@circle.com, jallaire@circle.com, fna | Yes | /drive/folders/1WwVzMZCmJWRnlHKsynos8war | Yes |
| Race Capital | @race.capital, alfred@race.capital, edith@race.c | Yes | om/drive/folders/1vazPyBHbrTVa89WuhBUB-ZFR | Yes |
| Pantera Capital | n@panteracapital.com, Lauren@panteracapital.c | Yes | Ramnik to reach out | Yes |
| Ryan Rabaglia (LCV Shire Holdings) | glia@gmail.com, partner@lc.ventures, invest@lc | Yes | n/drive/folders/108tzGwECUundUIe9Axw0e3xyJ | Yes |
| Alan Howard | com, Craig.Adams@brevanhoward.com, Naomi | No | om/drive/folders/1aKygwi2ZTrVSDbnxFch28jyqx | Yes |
| Izzy Englander | JWhitney@iefo.com, spavel@iefo.com | No | | Yes |
| Matthew Graham/Sino Global | matthew.graham@sinoglobalcapital.com | Yes | /drive/folders/1aCsCAVDvAPVvMemr6h62ZzN: | No |
| Belfer Management LLC | taub@belfermgmt.com, cdamore@belfermgmt. | Yes | .LC C/O BELFER MGMT associated with Belfer N | Yes |
| White Truffle | le.fund, nikita.masyukov@its-trade.com, sergei.v | Yes | m/drive/folders/1QuWiCDsV9QP7rAyJMA95Dxu) | Yes |
| Nibbio | bbio.io, arnaud.mazzucco@nibbio.io, clarens.carac accio@nibbi | Yes | /drive/folders/1b2tiy_1-8bHOLgNMGcm1W3W | No |
| NEA | r@nea.com, sbrecher@nea.com, SThompson@nea.com | | Executed | No |
| Jason Tang/True Edge Capital | quant@trueedgecapital.com.cn | Yes | n/drive/folders/1qLp4XRxtZPShtzudMTrnv5Xmn | Yes |
| Kraft Family | ls@thekraftgroup.com, davidl@thekraftgroup.c | Yes | om/drive/folders/1ZO7bycbajStSBR4c6mt8yGQUV | Yes |
| Hazoor Partners | ers.com, Craig@hazoorpartners.com, Harpreet@ | Yes | om/drive/folders/18Cv4ogBStr_zsFwc_0MydzlGn | No |
| VanEck - Asset Manager | gurbacs@vaneck.com, lrappaport@vaneck.con | Yes | m/drive/folders/1CSa9Lskra5cK6uWEsRuAFb7xI | No |
| Folkvang | e@folkvang.io, jeff@folkvang,io, james@folkvang.io | | Signature packet sent to attorney | No |

**Link to fund raise folder: https://drive.google.com/drive/folders/13aqMtWqNA1LJWR5-6sROtri4qNcSdfaX?usp=sharing**

| Name | Media | ro'ed to Fenw | Contacts |
|---|---|---|---|
| OTPP | 1 (Confirmed) | 1 | emmanuelle_norchet@otpp.com, andrew_jang@otpp.com |
| Sequoia Global Equities | 1 (Confirmed) | 1 | sequoiacap.com, Kimberly Summe <summe@sequoiacap.com>, Scott Wu <Wu@sequoiacap |
| Temasek | 1 (Confirmed) | 1 | antonylewis@temasek.com.sg, sijia@temasek.com.sg, |
| SEA | 1 (Confirmed) | 1 | David Ma <mad@sea.com> |
| Ribbit Capital | 1 (Confirmed) | 1 | cap.com, zack@ribbitcap.com, Ben Paull <ben@ribbitcap.com>, Max Montgomery <max@ |
| Blackrock | 1 (Confirmed) | 1 | xwell Stein <Maxwell.Stein@blackrock.com>, Michael Svidrun <Michael.Svidrun@blackroc |
| Sequoia Capital | | 1 | cap.com, lin@sequoiacap.com, Joe Binder <jbinder@sequoiacap.com>; Megan Dollar <dai@ |
| Altimeter | | 1 | james@altimeter.com, hab@altimeter.com, Judy Yuan <judy@altimeter.com> |
| ICONIQ Capital | 1 (Confirmed) | 1 | >, Divesh Makan <divesh@iconiqcapital.com>, Ryan Koh <rkoh@iconiqcapital.com>, Zach |
| IVP | 1 (Confirmed) | 1 | cooley.com>, Eric Liaw <eliaw@ivp.com>, Jason Kong <jason@ivp.com>, James Black <jb |
| Ausvic Capital Limited | | 1 | Alan Li <alanli@dawanasset.com>, chenping@ausviccapital.com |
| Lightspeed Venture Partners | 1 (Confirmed) | 1 | amy@lsvp.com, shan@lsvp.com, ryan@lsvp.com, morgan@lsvp.com, Ravi@lsvp.com |
| Pulsar Trading | | 1 | joanna.li@pulsartradingcap.com, partners@pulsartradingcap.com |
| SkyBridge | | 1 | kybridge.com, Daniel Barile <DBarile@skybridge.com>, Brett Messing <BMessing@skybr |
| Tiger Global | 1 (Confirmed) | 1 | n>, Whitney Bishop <WBishop@fenwick.com>, can@ftx.com, dan@ftx.com, Steven L. Bag |
| Belfer Management | | 1 | n@belfermgmt.com, staub@belfermgmt.com, cdamore@belfermgmt.com, jganz@belfermg |
| Insight Partners | | 1 | tpartners.com, efisher@insightpartners.com, Rebecca E. Wainstein <RWainstein@willkie.co |
| Blue Pool Capital | | 1 | om>, Erin Kim <EKim@bluepoolcapital.com>, Jordan Oreck <JOreck@bluepoolcapital.co |
| Base 10 Ventures | | 1 | w Lebovitz <andrew@base10.vc>, adeyemi ajao <ade@base10.vc>, tj nahigian <tj@base10. |
| ThirdPoint Ventures | | 1 | thirdpoint.com>, Scott D. Karchmer <scott.karchmer@morganlewis.com>, Danielle Ebenste |
| Race Capital | | 1 | chris@race.capital, alfred@race.capital, edith@race.capital |
| UOB Group | | 1 | Charles KOK Hoong Chwan <Charles.KokHC@uobgroup.com> |
| Whale Rock Capital | | 1 | whalerockcapital.com>, Wei Guo <wei@whalerockcapital.com>, James Houghtlin <james@ |
| xnlp | | 1 | tb@xnlp.com, Thomas O'Grady <tog@xnlp.com> |
| Phil Fayer | | | pfayer@nuvei.com, avi@fayerfo.com |
| Willoughby Capital | | 1 | adnan@willcapllc.com, Jeff Derbyshire <jderbyshire@willcapllc.com> |
| APES Partners | | 1 | Stewart Gruen <stew@apes.partners>, edward cheung <ed@apes.partners> |
| Samsung Next | | 1 | d Lee <david.lee@samsungnext.com>, Preethi Kasireddy <preethi.kasireddy@samsungnext. |
| Tribe Capital | | 1 | tribecap.co, lauren@tribecap.co, Lisa Potocsnak <lisa@tribecap.co>, Alex Chee <alex@tribe |
| Chuang Family | | 1 | <EdwinChuang@chuangs-china.com>, Boris Lee <borislee@chuangs.com.hk>, Leo Chan < |
| Senator Investment Group | | 1 | JArmao@senatorlp.com, raustin@senatorlp.com, operations@senatorlp.com |
| JFK | | 1 | jfk@th3ia.io, gav@th3ia.io, johann.kirsten@Gmail.com |
| 2021-015 Investments LLC | | 1 | Van Voris <tvanvoris@thielcapital.com>, David Wheelock <dwheelock@thielcapital.com>, |
| Anthos Capital | | 1 | ly@anthoscapital.com>,Pam Ryan <pryan@anthoscapital.com>, Randy Chandler <rchandle |
| Meritech Capital | | 1 | , Alex Kurland <ak@meritechcapital.com>, Joel Backman <jbackman@meritechcapital.com |
| Hof Capital Growth Fund | | 1 | lad@hof.capital, David Wittmann <dwittmann@hof.capital>, Sinan Koc <sinankoc95@gma |
| Telstra Ventures | | 1 | Matthew Koertge <Matthew@telstraventures.com>, Joseph An <joseph@telstraventures.com |

| | A | B |
|---|---|---|
| 1 | | |
| 2 | Name | Contacts |
| 3 | Paradigm Capital | matt@paradigm.xyz, arjun@paradigm.xyz & Latham |
| 4 | Temasek | Pradyumna AGRAWAL <pradyumna@temasek.com.sg>, Antony LEWIS <antonylewis@temasek.com.sg>, CHEN Sijia <sijia@temasek.com.sg> |
| 5 | NEA | ooley.com>; Weaver, Alex <aweaver@cooley.com>; Nicole Hatcher <nhatcher@nea.com>, Stephanie Brecher <sbrecher@nea.com>, Carmen Cha |
| 6 | Lightspeed Venture Partners | Ravi Mhatre <ravi@lsvp.com>, Ryan Stouffer <ryan@lsvp.com>, amy@lsvp.com |
| 7 | Steadview Capital | Ravi Mehta <rmehta@steadview.com>, Jared Sleeper <jsleeper@steadview.com>, Joy Bhakat <jbhakat@steadview.com> |
| 8 | Newlands | Michael Abramson <michael@thenewlands.com>, Jan Koum <jan@thenewlands.com> |
| 9 | IVP | Tom Loverro <tloverro@ivp.com> |
| 10 | Multicoin Capital | umani <kyle@multicoin.capital>, Brian Smith <brian@multicoin.capital>, Tushar Jain <tushar@multicoin.capital>, Matt Shapiro <matt@multicoin. |
| 11 | GreenOaks Capital | ehta@greenoakscap.com, Tyler Mann <tyler.mann@greenoaks.com>, Benny Peretz <benny.peretz@greenoaks.com>, legalops <legalops@greenoak |
| 12 | Skybridge | Brett Messing <bmessing@skybridge.com>, John Darsie <JDarsie@skybridge.com> |
| 13 | Tiger Global | acook@tigerglobal.com, RFortunato@tigerglobal.com |
| 14 | ThirdPoint Ventures | n>, Daniel Loeb <dloeb@thirdpoint.com>, Robin Brem <RBrem@thirdpoint.com>, Scott D. Karchmer <scott.karchmer@morganlewis.com>, Da |
| 15 | Tribe Capital | Raaid Hossain <raaid@tribecap.co>, Arjun Sethi <arj@tribecap.co> |
| 16 | OTPP | emmanuelle_norchet@otpp.com, andrew_jang@otpp.com, Tariq Rangwala <Tariq_Rangwala@otpp.com> |
| 17 | SoftBank | Tom Cheung <tom.cheung@softbank.com>, Munish Varma <munish.varma@softbank.com>, Hayley Chan <hayley.chan@softbank.com> |
| 18 | 40North | oww@standardinvestments.com, Oliver Wiener <oliver.wiener@standardinvestments.com> |
| 19 | Insight Partners | ndrew Starker <Astarker@insightpartners.com>, Nikhil Sachdev <nsachdev@insightpartners.com>, Scott Laughlin <SLaughlin@insightpartners.con |
| 20 | Thoma Bravo | Robert Sayle <rsayle@thomabravo.com> |
| 21 | Bond Capital | Katie Denton <katie@bondcap.com>, Daegwon Chae <daegwon@bondcap.com>, Keeyan Sanjasaz <keeyan@bondcap.com> |
| 22 | Lux Capital | on Reeves <brandon.reeves@luxcapital.com>, Segolene Scarborough <sego.scarborough@luxcapital.com>, Sean Traynor <sean.traynor@luxcapita |
| 23 | Belfer Management | Eileen Aptman <eaptman@belfermgmt.com> |
| 24 | Ribbit Capital | Nick Shalek <nick@ribbitcap.com>, Zack Rosen <zack@ribbitcap.com> |
| 25 | Senator | Joseph Armao <JArmao@senatorlp.com> |
| 26 | Telstra Ventures | <Albert@telstraventures.com>, Yash Patel <Yash@telstraventures.com>, Mark Sherman <Mark@telstraventures.com>, Joseph An <joseph@telst |
| 27 | DE Shaw | Jesse Jiang <Jesse.Jiang@deshaw.com> |
| 28 | BlackRock | Samir Menon <Samir.Menon@blackrock.com> |
| 29 | Willoughby Capital | Jeff Derbyshire <jderbyshire@willcapllc.com>, Adnan Ahmad <adnan@willcapllc.com>, Daniel S Och <dan@willcapllc.com> |
| 30 | Asiff Hirji | Asiff Hirji <ahirji@inflexsion.com> |
| 31 | Empire State Group | julianting@egh.com.hk, Barry Chan <barrychan@egh.com.hk>, Colin Tam <colintam@egh.com.hk> |
| 32 | Samsung Next | David Lee <david.lee@samsungnext.com>, Joan Kim <joan.kim@samsungnext.com> |
| 33 | Aditya Agarwal | Aditya Agarwal <adityaag@gmail.com>, Bala Chandrasekaran <bala@southparkcommons.com> |
| 34 | Ryan Griffin | Ryan Griffin <rygriff11@gmail.com>, Jason Hodes <JHodes@wmeagency.com>, JZH <JZH@wmeagency.com> |
| 35 | Blaine Gabbert | Bwgabbert@gmail.com, , Jason Hodes <JHodes@wmeagency.com>, JZH <JZH@wmeagency.com> |

# Exhibit 5

sg.linkedin.com/in/sijia-chen-b0a700216

**Linked** in

Articles   People   Learning   Jobs   |   Join now   |   Sign in

**Sign in**
Stay updated on your professional world

**Sign in**

G Continue with Google

New to LinkedIn? Join now



**Sija Chen**
--
Singapore, Singapore
58 followers · 41 connections

See your mutual connections

**Join to view profile**

 **Monetary Authority of Singapore (MAS)**

**People also viewed**

 **Pei Shan Goh**
Senior Legal Counsel at Monetary Authority of Singapore (MAS)
Singapore

Connect

 **Jean-Marie Lim**
Financial Services Lawyer
Singapore

Connect

 **Yuih Ein Ng**
Senior Legal Counsel at MAS
Singapore

Connect

 **Paul Yuen**
--
Singapore

Connect

 **Germaine Leung**
Senior Legal Counsel

**Activity**



Came home from an almost month long business trip to a pleasant surprise that I have been recognised on Fintech65 as one of the 65 leaders in the...

Liked by Sija Chen



It hasn't fully sunk in yet, but today marks my last working day at Dentons Rodyk. What the firm has meant to me goes far beyond the work itself...

Liked by Sija Chen

sg.linkedin.com/in/sijia-chen-b0a700216

**Linked** 

Articles   People   Learning   Jobs   Join now   Sign in

## Experience

 **Senior Legal Counsel**
Monetary Authority of Singapore (MAS)
Apr 2020 - Present · 3 years 8 months
Singapore

Covers the legal aspects of the central banking and developmental functions, including procurement, currency, technology and financing projects.

 **Corporate Lawyer**
Dentons
2016 - Mar 2020  · 4 years
Singapore

Capital Markets and Mergers and Acquisitions

## Education

 **University of Leeds**
Bachelor of Laws - LLB  · Law

**Hwa Chong Institution**
-

## More activity by Sijia

 I've worked hard, for my entire career, to keep my life balanced with my job. In my book, I write about my Tuesday date nights with my wife. For over...

**Connect**

 **Chermaine T.**
Lawyer
Singapore
**Connect**

 **Felicia Tan**
Associate (Legal), Monetary Authority of Singapore
Singapore
**Connect**

 **Elisa Soh**
Assistant General Counsel at Monetary Authority of Singapore (MAS)
Singapore
**Connect**

**Show more profiles** ⌄

 **Explore collaborative articles**

We're unlocking community knowledge in a new way. Experts add insights directly into each article, started with the help of AI.

**Explore More**

## Others named **Sijia Chen**

 **Sijia Chen**
SWE-SRE at Google
Greater Sydney Area

# Exhibit 6

B Matthew Graham, Sino Global ×   +

g.com/profile/person/23162662

# Matthew Graham
CEO/Mng Partner/Founder, Sino Global Capital Ltd

| CURRENT POSITION | TENURE AT CURRENT POSITION | PREVIOUS POSITION |
|---|---|---|
| CEO/Mng Partner/Founder, Sino Global... | PRESENT | Founder, Sino Global Capital Ltd |

| EDUCATION | BOARD MEMBERSHIPS | INDUSTRY |
|---|---|---|
| -- | -- | Financial Services |

## Latest News



**Ex-FTX Chief Operating Officer Constance Wang Joins VC Firm Sino Global Capital**
Jul 19, 2023



## Career History

| TITLE | COMPANY | TENURE |
|---|---|---|
| **CEO/Mng Partner/Founder** | Sino Global Capital Ltd | PRESENT |
| **Founder** | Sino Global Capital Ltd | 01/2015-UNKNOWN |
| | China Bridge Capital | FORMER |

## About Sino Global Capital Ltd

Sino Global Capital Limited operates as a venture capital firm. The Company specializes in digital assets and blockchain, including cryptocurrency. Sino Global Capital serves customers worldwide.

| SECTOR | INDUSTRY | SUB-INDUSTRY | INCORPORATED |
|---|---|---|---|
| Financials | Financial Services | Asset Management | 02/28/2017 |

| ADDRESS | WEBSITE | NO. OF EMPLOYEES |
|---|---|---|
| China | www.sinoglobalcapital.com | -- |

MORE INFO >

## People Also Search For



**Victor P Stabile**
Judge, Pennsylvania Superior Court

**William R Carpenter**
Judge, Pennsylvania Court of Common Pleas

**Murry Neal Gunty**
Managing Partner/Founder, Blackstreet Capital Partners LP

# Exhibit 7



Official Statement –

The events over the past week have been shocking and saddening. Like many of you, we trusted FTX to be a good actor committed to pushing the industry forward. We deeply regret that misplaced trust.

Over the course of the last five days, we have been solely concentrated on two things: protecting our LPs and working with our portfolio companies, many of whom have never experienced periods of such intense volatility.

Sino Global Capital is functioning as normal and continues to invest as a fund. The focus of our current fund has been infrastructure and gaming. Fund investments have been balanced across ecosystems, and we do not employ leverage or short-term trading strategies. Our direct exposure to FTX exchange was confined to mid-seven figures held in custody. Our investment into the equity of FTX was made prior to the launch of our fund, and we did not invest any LP capital into FTX.

Using lessons forged from the ashes of the 2017/18 cycle, the industry was able to redefine itself with new use cases, new technologies, and new participants. Today, our industry is hurting. There is a long road to recovery ahead, and we have faith that the community will once again evolve. Our thesis has not changed—we believe blockchain technology to be the most important innovation since the advent of the internet.

Going forward, we will continue to seek out and support exceptional teams building the future of our industry.

- Sino Global Capital



# Exhibit 8

Appointment

---

**From**: Antony LEWIS [antonylewis@temasek.com.sg]
**Sent**: 11/16/2021 4:54:56 PM
**To**: Pradyumna AGRAWAL [pradyumna@temasek.com.sg]; Ramnik Arora [ramnik@ftx.com]; Sam Bankman-Fried [sam@ftx.com]

**Subject**: Temasek/FTX
**Location**: 375 Park Avenue, 14th Floor, New York, NY 10152

**Start**: 11/16/2021 11:30:00 PM
**End**: 11/17/2021 12:30:00 AM
**Show Time As**: Busy

**Recurrence**: (none)

Meeting in the office then head to dinner (we will book).

Thanks

This email is confidential and may also be privileged. If this email has been sent to you in error, please delete it immediately and notify us. Please do not copy, distribute or disseminate part or whole of this email if you are not the intended recipient or if you have not been authorized to do so. We reserve the right, to the extent and under circumstances permitted by applicable laws, to retain, monitor and intercept email messages to and from our systems. Thank you.

We provide investment advice and other investment-related services to certain Temasek group entities only and not to any other parties.

GOVERNMENT
EXHIBIT
286
22 Cr. 673 (LAK)