# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### MDL No. 3076

### CASE NO. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

THIS DOCUMENT RELATES TO:

Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*,

S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*,

E.D. Wa. Case No. 2:23-cv-00213-TOR

**OPPOSITION TO MULTINATIONAL VC DEFENDANTS' MOTION TO DISMISS THE [CORRECTED] ADMINISTRATIVE CLASS ACTION COMPLAINT (ECF No. 303)**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND ...................................................................... 2

        A.      Plaintiffs Allege Defendants Uncovered FTX's Unlawful Conduct Through Their
                Business Dealings. .................................................................................................. 2

                i.      Defendants had access to and knowledge of FTX's corporate structure,
                        transactions, and (lack of) internal controls because of the due diligence they
                        conducted. ................................................................................................................2

                ii.     Temasek and SoftBank gained additional knowledge of FTX's operations and
                        finances by holding four seats on its Advisory Board. ...............................3

                iii.    Defendants invested hundreds of millions of dollars in FTX. .....................4

                iv.     Defendants provided FTX with other vital non-monetary assistance and also
                        developed close ties with SBF. ...................................................................5

        B.      Entities with Less Knowledge of FTX than Defendants, Less Resources Than
                Defendants, and Sometimes Less Expertise Than Defendants, Found Glaring Red
                Flags. ....................................................................................................................... 6

        C.      Plaintiffs Allege Injury as Result of Defendants' Conduct. ................................... 8

III.    ARGUMENT ..................................................................................................................... 9

        A.      Standard of Review. ................................................................................................ 9

        B.      Plaintiffs' Allegations Are Sufficiently Pled. ...................................................... 10

                i.      Defendants' argument that Plaintiffs' claims are implausible is a veiled
                        demand for a level of detail not required at the pleadings stage...............10

                ii.     Shotgun pleadings are stricken to ensure parties know of the claims against
                        them, which Defendants clearly do...........................................................11

        C.      Plaintiffs Sufficiently Pled That Defendants Aided and Abetting the Sale of
                Unregistered Securities (Counts 1 and 3). ........................................................... 12

                i.      Defendants provided "material assistance" to FTX, which sold unregistered
                        securities in violation of California law.....................................................13

                ii.     Defendants "personally participated or aided" FTX in the sale of unregistered
                        securities in violation of Florida law.........................................................15

                iii.    Plaintiffs are not required to show public statements by Defendants in Counts
                        1 and 3........................................................................................................16

                iv.     Privity between Defendants and Plaintiffs is not required because they are in
                        privity with FTX. .......................................................................................17

                v.      Plaintiffs have pled the requisite intent.....................................................17

i

      vi.    Defendants misstate the standard for Plaintiffs' unregistered broker-dealer claim for Count 3. ....................................................................................18

D.    Plaintiffs Sufficiently Pled That Defendants Aided and Abetted Securities Fraud and (Counts 2 and 4). ........................................................................... 18

      i.    Defendants participated and materially assisted in securities fraud. .........20

      ii.    Plaintiffs allege scienter. ...........................................................................21

E.    Plaintiffs Sufficiently Pled Control Person Liability for FTX's Primary Violations Under California Law (Count 6). ....................................................................... 22

F.    Market Manipulation Under California Law is Sufficiently Pled (Count 5). ....... 22

G.    Plaintiffs Sufficiently Pled Defendants Engaged in a Conspiracy (Count 7). ...... 23

H.    Plaintiffs Sufficiently Pled Defendants Aiding and Abetted the Common Law Claims of Fraud, Fiduciary Breach, and Conversion (Count 8, 9, 10). ................ 25

I.    Plaintiffs Sufficiently Pled Their Claims Under the California Unfair Competition Law ("UCL") (Count 11). ....................................................................... 28

      i.    Plaintiffs state a UCL claim under the "unlawful prong." ........................28

      ii.    Plaintiffs state claims under the "unfair" and "fraudulent" prongs. ..........30

J.    Plaintiffs Sufficiently Pled a False Advertising Law Claim (Count 12). .............. 30

K.    Plaintiffs Sufficiently Pled Their Claim under Florida's Deceptive and Unfair Trade Practices Act (Count 13) ....................................................................... 31

      i.    Plaintiffs sufficiently pled a claim under the FDUTPA. ...........................32

L.    Plaintiffs Sufficiently Pled Negligent Misrepresentation. ................................... 33

M.    Plaintiffs Sufficiently Pled Intentional Misrepresentation.................................... 34

N.    Plaintiffs' Declaratory Judgment Claims Stand Because There is a Justiciable Controversy. ....................................................................................... 36

O.    Plaintiffs' Request for Punitive Damages Stand. .................................................. 38

P.    Should the Court Find Any of Plaintiffs' Allegations Insufficiently Pled, Plaintiffs Request Leave to Amend. ....................................................................... 39

IV.    CONCLUSION ............................................................................................. 40

# TABLE OF AUTHORITIES

## Cases

*Acadia Partners, L.P. v. Tompkins*,
  759 So. 2d 732 (Fla. 5th DCA 2000) ...................................................................................25

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ...............................................................................................................30

*Arnold v. McFall*,
  839 F. Supp. 2d 1281 (S.D. Fla. 2011) ...................................................................17, 20, 21

*Arthur Young & Co. v. Mariner Corp.*,
  630 So. 2d 1199 (Fla. Dist. Ct. App. 1994) ..........................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................9

*Bank v. Pitt*,
  928 F.2d 1108 (11th Cir.1991) ..............................................................................................40

*Baptist Hosp., Inc. v. Baker*,
  84 So.3d 1200 (Fla. 1st DCA 2012) ......................................................................................32

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................9, 10, 11

*Blair v. Wachovia Mortg. Corp.*,
  No. 5:11-CV-566-OC-37TBS, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012)........................32

*Bowden v. City of Franklin*,
  Ky., 13 F. Appx. 266 (6th Cir.2001) ......................................................................................39

*Bowen v. Ziasun Techs., Inc.*,
  116 Cal. App. 4th 777 (2004) ....................................................................................29, 31, 32

*Bryant v. Dupree*,
  252 F.3d 1161 (11th Cir. 2001) ..............................................................................................40

*Cabrales v. Castle & Cooke Mortg., LLC*,
  2015 WL 3731552 (E.D. Cal. June 12, 2015) ........................................................................29

*Chang v. JPMorgan Chase Bank*,
  845 F.3d 1087 (11th Cir. 2017) ..............................................................................................26

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) ..................................................................................................................39

*Cockrell v. Sparks*,
    510 F.3d 1307 (11th Cir. 2007) ...........................................................................40

*Cohen v. Office Depot, Inc.*,
    184 F.3d 1292 (11th Cir.1999) ............................................................................38

*Conley v. Gibson*,
    335 U.S. 41 (1957) ...............................................................................................10

*Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*,
    561 F. App'x. 882 (11th Cir. 2014) .....................................................................25

*Davis v. Powertel, Inc.*,
    776 So.2d 971 (Fla. 1st DCA 2000) ....................................................................33

*Dillon v. Axxsys Int'l, Inc.*,
    385 F. Supp. 2d 1307 (M.D. Fla. 2005), aff'd, 185 F. App'x 823 (11th Cir.
    2006) .....................................................................................................................15

*Eidmann v. Walgreen Co.*,
    522 F. Supp. 3d 634 (N.D. Cal. 2021) .................................................................30

*Fitzpatrick v. Gen. Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011) ...........................................................................33

*Flying Dutchman Park, Inc. v. City and County of San Francisco*
    (2001) 83 Cal.App.4th 1129 ................................................................................37

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................................40

*Freeman v. Sharpe Res. Corp.*,
    2013 WL 2151723 (M.D. Fla. May 16, 2013) ...............................................10, 24

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*,
    696 So.2d 334 (Fla.1997) .....................................................................................35

*Gilison v. Flagler Bank*,
    303 So. 3d 999 (Fla. Dist. Ct. App. 2020) ...........................................................26

*Glynn v. Basil St. Partners, LLC*,
    2010 WL 11623025 (M.D. Fla. Sept. 21, 2010) ..................................................32

*Haas v. Travelex Ins. Servs. Inc.*,
    555 F. Supp. 3d 970 (C.D. Cal. 2021) .................................................................29

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................28

*Hellum v. Breyer*,
    194 Cal. App. 4th 1300 (2011) ........................................................................22

*Hilderbrandt v. Butts*,
    550 F. Appx. 697 (11th Cir. 2013)..................................................................40

*In re Initial Public Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)............................................................11

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    140 S. Ct. 768, 206 L. Ed. 2d 103 (2020) ......................................................36

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
    224 So. 3d 316 (Fla. Dist. Ct. App. 2017) ......................................................15

*Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*,
    800 F.2d 1577 (11th Cir. 1986) ........................................................................9

*Jackson v. Fischer*,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013) ..........................................................22

*Jackson v. Wal-Mart Stores, Inc.*,
    753 F. App'x 866 (11th Cir. 2018) ....................................................................9

*Janis v. Nelson*,
    2009 WL 4505935 (D.S.D. Nov.24, 2009)......................................................39

*Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*,
    No. C-97-4618 MHP, 1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ................31

*Kerruish v. Essex Holdings, Inc.*,
    No. 16-60877-CIV, 2017 WL 10457076 (S.D. Fla. Aug. 9, 2017) ....................36

*Lesti v. Wells Fargo Bank, N.A.*,
    960 F. Supp. 2d 1311 (M.D. Fla. 2013)..........................................................25

*Livingston v. H.I. Fam. Suites, Inc.*,
    2005 WL 2077315 (M.D. Fla. Aug. 29, 2005) ................................................10

*Logan v. Morgan, Lewis & Bockius LLP*,
    350 So.3d 404 (Fla. Dist. Ct. App. 2022) ......................................................17

*Lotierzo v. Woman's World Med. Ctr., Inc.*,
    278 F.3d 1180 (11th Cir. 2002) ........................................................................9

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ..........................................................................28

*Maison v. Ford Motor Co.*,
   2005 WL 1684159 (N.D. Fla., July 7, 2005) ........................................................................10

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
   192 F.3d 1283 (9th Cir. 1999) ..................................................................................................23

*Miller Fam. Tr. v. Nielson*,
   No. 2:12-CV-00913-SVW-SH, 2013 WL 12474637 (C.D. Cal. Mar. 11, 2013) ..................29

*Moss v. Kroner*,
   197 Cal. App. 4th 860 (2011) ........................................................................................ *passim*

*MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*,
   40 F.4th 1295 (11th Cir. 2022) ..................................................................................................9

*Nagrampa v. MailCoups Inc.*,
   No. C03-00208 MJJ, 2007 WL 2221028 (N.D. Cal. July 30, 2007) ......................................30

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d. 1101 (C.D. Cal. Oct. 20, 2003) ............................................................26, 28

*People v. Salas*,
   37 Cal.4th 967 (2006) ..............................................................................................................18

*People v. Simon*,
   9 Cal. 4th 493, 886 P.2d 1271 (1995) .....................................................................................20

*People's Tr. Ins. Co. v. Alonzo-Pombo*,
   307 So.3d 840 (Fla. 3d DCA 2020) ........................................................................................37

*People's Tr. Ins. Co. v. Franco*,
   305 So.3d 579 (Fla. 3d DCA Apr. 15, 2020) ..........................................................................37

*Peters v. Amoco Oil Co.*,
   57 F.Supp.2d 1268 (M.D.Ala.1999) .......................................................................................24

*Pilliod v. Monsanto Company*,
   67 Cal.App.5th 591 ..................................................................................................................39

*Pirozzi v. Apple, Inc.*,
   966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) ...........................................................................29

*Primerica Fin. Servs., Inc. v. Mitchell*,
   48 F. Supp. 2d 1363 (S.D. Fla. 1999) .....................................................................................23

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*,
   711 F.2d 989 (11th Cir.1983) ..................................................................................................24

*Randall v. Ditech Fin., LLC,*
   23 Cal. App. 5th 804 (2018) ...................................................................28

*Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.,*
   109 So. 3d 851 (Fla. 1st DCA 2013) .....................................................37

*Ronpak, Inc. v. Elecs. for Imaging, Inc.,*
   No. 14-CV-04058-JST, 2015 WL 179560 (N.D. Cal. Jan. 14, 2015) .......................33, 34, 36

*Rousseff v. E.F. Hutton Co.,*
   867 F.2d 1281 (11th Cir. 1989) .............................................................15

*Rusty115 Corp v. Bank of Am., N.A.,*
   2023 WL 6064518 (S.D. Fla. Sept. 18, 2023) .....................................36

*Saunders v. Superior Court,*
   27 Cal. App. 4th 832 (1994) ..................................................................25

*Schaffer Fam. Invs., LLC v. Sonnier,*
   120 F. Supp. 3d 1028 (C.D. Cal. 2015) ...............................................14

*Scheck Invs., L.P. v. Kensington Mgmt., Inc.,*
   No. 04-21160-CIV, 2009 WL 10668565 (S.D. Fla. June 17, 2009)....................................15

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,*
   650 F.Supp.2d 1213 (S.D.Fla.2009) .....................................................38

*Silva v. Bieluch,*
   351 F.3d 1045 (11th Cir. 2003) .............................................................40

*Smith v. Network Equip. Techs., Inc.,*
   1990 WL 263846 (N.D. Cal. Oct.19, 1990)....................................................26

*Souran v. Travelers Ins. Co.,*
   982 F.2d 1497 (11th Cir. 1993) .............................................................33

*Specialty Marine & Indus. Supplies, Inc. v. Venus,*
   66 So.3d 306 (Fla. First Dist. Court of Appeal 2011)............................................35

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ...............................................................9

*State Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial
   Leasing, LLC,*
   946 So.2d 1253 (Fla. 1st DCA 2007) .....................................................33

*Stewart Agency, Inc. v. Arrigo Enters., Inc.,*
   266 So. 3d 207 (Fla. Dist. Ct. App. 2019) ............................................32

*Stonecreek--AAA, LLC v. Wells Fargo Bank N.A.*,
    2013 WL 5416970 (S.D. Fla. Sept. 26, 2013) ....................................................................35

*Stowell v. Ted S. Finkel Inv. Servs., Inc.*
    489 F. Supp. 1209 (S.D. Fl. 1980) ...................................................................................39

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. 2017), aff'd, 731 F. App'x 719 (9th Cir.
    2018) ...................................................................................................................................31

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)..............................................................................................................9

*Tellabs, Inc. v. Makor Issues and Rights, Ltd*,
    551 U.S. 308 (2007)............................................................................................................27

*United Motors Int'l, Inc. v. Hartwick*,
    2017 WL 888304 (C.D. Cal. Mar. 6, 2017) .......................................................................23

*United States v. Baxter Int'l, Inc.*,
    345 F.3d 866 (11th Cir. 2003) ......................................................................................10, 24

*Valderrama v. Rousseau*,
    2012 WL 12925174 (S.D. Fla. Sept. 18, 2012) .................................................................23

*Viterbi v. Wasserman*,
    191 Cal. App. 4th 927 (2011) .............................................................................................17

*Watson Carpet & Floor Cvering, Inc. v. Mohawk Industries, Inc.*,
    648 F.3d 452 (6th Cir. 2011) ................................................................................................9

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) ..........................................................................................11

*Wilson & Wilson v. City Council of Redwood City*,
    191 Cal. App.4th 1559 ........................................................................................................37

*Woodward v. Metro Bank of Dallas*,
    522 F.2d 84 (5th Cir.1975) .................................................................................................28

*X Corp. v. Y Person*,
    622 So.2d 1098 (Fla. Dist. Ct. App. 1993) ........................................................................37

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................................................28

Cal. Bus. & Prof. Code §17500 .................................................................................................30

Cal. Corp. Code § 25110 ..............................................................................................12, 13, 14, 18

Cal. Corp. Code § 25503 ..............................................................................................................12, 13

Cal. Corp. Code § 25504 ..............................................................................................................*passim*

California's False Advertising Law .............................................................................................28, 30

California Unfair Competition Law ............................................................................................*passim*

Fla. Stat. § 501 ...................................................................................................................................32

Fla. Stat. § 517 ..............................................................................................................12, 15, 19, 20

Florida Securities and Investor Protection Act Section 517.07 .......................................................15

**Other Authorities**

17 C.F.R. § 240.10b-5 ........................................................................................................................20

Fed. R. Civ. P. 8 .............................................................................................................................2, 38

Fed. R. Civ. P. 9 ...........................................................................................................................*passim*

Fed. R. Civ. P. 12 ..................................................................................................................10, 11, 39

Fed. R. Civ. P. 15 ...............................................................................................................................40

Rule 10b–5 .........................................................................................................................................20

Rule 12(e) ...........................................................................................................................................11

Plaintiffs file this opposition to the Motion to Dismiss the Corrected Administrative Complaint (MDL ECF No. 182) for Failure to State a Claim (MDL ECF No. 303).

## I.   <u>**INTRODUCTION**</u>

The Multinational VC Defendants[1] (Defendants) would have the Court believe they, like the everyday crypto traders who lost $8 billion in crypto and cash from their FTX accounts, were conned too. But fraud on this scale can never be accomplished alone. It required the assent and acquiescence of numerous parties who, like Defendants, leveraged their own legitimacy and lent their own names and knowledge to prop up FTX, enriching themselves in the process. As the world now knows, FTX, through its CEO Sam Bankman-Fried and others, preyed on Plaintiffs and class members by bringing the FTX exchange and the unregistered securities by which it operated to market in the United States based on false assurances that FTX was the safest place to trade crypto.

In relying on those assurances, Plaintiffs and class members did not, could not, and frankly would never have known but for the collapse, that SBF was plundering their accounts from the start. They did not know FTX lacked asset management, governance, and cybersecurity controls. They did not know FTX contradicted its own terms of service and was commingling depositor funds. They did not know SBF structured his companies as one common enterprise, such that giant sums of assets were routinely shuffled around then sloppily accounted for in a bad attempt to disguise laundering. They certainly did not know that the financial records were homespun, that key corporate documents were incomplete or missing, or that FTX did not have a CFO.

But who did have the sophistication, industry expertise, close access, and ongoing partnerships with FTX to know the above? Indeed, whose business model relies on obtaining insider knowledge to evaluate a company's legitimacy? Defendants. Tellingly, Defendants do not challenge the underlying corporate failures or fraudulent conduct alleged; they argue instead that

---

[1] (1) Temasek Holdings (Private) Limited and its wholly owned U.S. subsidiary Temasek International (USA) LLC (Temasek);

(2) SoftBank Group Corp. and its subsidiary entities SB Group US, Inc. SoftBank Investment Advisers (UK) Limited, and SoftBank Global Advisers Limited (SoftBank); and

(3) Sino Global Capital Limited (Sino Global).

Plaintiffs insufficiently pled their knowledge and material assistance to FTX in perpetrating its scheme. But Defendants are alleged to have aided and abetted the fraud by: (1) funding FTX in multiple rounds of private funding; (2) controlling FTX by serving on its "Advisory Board" which functioned as its *de facto* board of directors; (3) actively lobbying on behalf of and providing legal and regulatory guidance to FTX; (4) promoting FTX to help bring the FTT tokens by which it operated to market; and (5) making material misrepresentations and omissions about the thorough due diligence they touted as performing, and the safety of the FTX platform while promoting it.

Plaintiffs' detailed allegations easily meet requirements of Federal Rules of Civil Procedure 8 and 9(b), and Defendants' motion should be denied in its entirety. Plaintiffs' complaint sets forth the who, what, where, when and why of the scheme. Defendants are asking for a level of factual inquiry simply inappropriate for the pleading stage, particularly where information about the scheme is within Defendants' exclusive control. Should the Court grant any part of Defendants' motion, Plaintiffs respectfully request the Court grant leave to amend.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiffs Allege Defendants Uncovered FTX's Unlawful Conduct Through Their Business Dealings.

#### i.   Defendants had access to and knowledge of FTX's corporate structure, transactions, and (lack of) internal controls because of the due diligence they conducted.

Defendants are some of the largest and foremost venture capital firms in the industry. Each represented doing significant due diligence into FTX before investing hundreds of millions of dollars into FTX. MDL ECF No. 182, ¶¶ 251-253, 262-264, 319-334.[2] Each is also required by law to conduct due diligence. As fiduciaries to their own investors, Defendants were obligated to include in their diligence a review of FTX's financial statements and projections, identification of basic corporate governance structures including formation documents and information about directors, officers and internal controls, an examination of the business model vis-a-vis financial

---

[2] Unless otherwise noted, all citations hereafter are to paragraphs of MDL ECF No. 182 (Plaintiffs' corrected administrative complaint).

records, and information concerning related party transactions, intercompany agreements, loans, debt instruments and other credit agreements. ¶ 319.

Not only were they required to do so; they said they did. Temasek represented conducting multiple rounds of due diligence for eight months, including "significant regulatory and licensing due diligence on the business model of FTX, particularly on financial regulations, licensing, anti-money laundering (AML) / Know Your Customer (KYC) and sanctions across multiple jurisdictions[,] a review of [FTX's] audited financial statements and a cybersecurity review." ¶ 320. Temasek also specifically admitted to enquiring about "the relationship, preferential treatment, and separation between Alameda and FTX." ¶ 321.

SoftBank Group employed its "dedicated review department" to conduct due diligence on FTX's "business, technology, business model, market size, business plan, competitive environment, financial condition, legal compliance, etc." prior to making its reported $100 million dollar investment. ¶¶ 252, 263, 323. Presumably, SoftBank conducted a particularly heightened diligence on FTX given its public statements about typically *not* investing in cryptocurrency because it is a risky, easily manipulable industry. ¶ 324.

Sino Global, in the words of its managing partner Matthew Graham, did "a hell of a lot of due diligence" and then embarked on a particularly "deep relationship" with FTX, as further detailed herein. ¶¶ 325, 369. Further, before bringing on the FTX Group as its co-general partner and anchor investor of the investment fund Liquid Value Fund 1, Sino Global undertook additional due diligence reviews of SBF, FTX, and Alameda. ¶¶ 326-327. Sino Global took $60 million dollars from Alameda and an undisclosed amount from FTX to start the $200 million Liquid Value I fund that traded in and propped up the very tokens at issue here.  ¶ 264.

### ii. Temasek and SoftBank gained additional knowledge of FTX's operations and finances by holding four seats on its Advisory Board.

FTX had an advisory board that met quarterly and had unique inside information about FTX. ¶¶ 361-362. Several of Defendants had directors who served not only on their own boards but also on FTX's. Two of Temasek's most senior executives, Pradyumna Agrawal and Antony

Lewis, served on FTX's advisory board, as did two of SoftBank's—Rajeev Misra, CEO of both SoftBank Investment Advisers and SoftBank Global Advisers, and Tom Cheung, a San Francisco-based Partner of SoftBank Investment Advisers. ¶¶ 363, 366.

### iii.   Defendants invested hundreds of millions of dollars in FTX.

On July 20, 2021, Defendants participated with other investors in the almost $1 billion Series B funding for FTX Trading. ¶ 308. On October 21, 2021, Temasek and SoftBank helped other VCs put up another $420.69 million in FTX Trading's Series B-1 funding. ¶ 309. SBF, in the joint press release announcing the fundraising, leveraged the MVCs' reputations and referred to them as "partners" in guaranteeing FTX's trustworthiness, transparency, and compliance and in engaging regulators. *Id.*

Although FTX claimed this Series B-1 funding would help it "make strategic investments designed to grow the business and expand [its] regulatory coverage," SBF instead quickly diverted $300 million in stock—equivalent to *seventy-five percent* of the Series B-1 funds raised—to himself. ¶ 311.

It is highly unusual in any industry for a founder to sell himself stock before going public. Nonetheless, and in spite of the public contradiction of purported use of the Series B-1 funds, Defendants proceeded to invest even more money. On January 31, 2022, FTX Trading announced it had raised $400 million in Series C Funding from investors, including Temasek and SoftBank, which FTX touted was "demonstrating [their] belief in the Company's vision and their continued support of FTX's explosive growth." ¶ 312. Just days before, on January 26, 2022, FTX US also closed on its $400 million Series A fundraising, securing yet more money from certain Defendants, including Temasek and SoftBank.

According to Temasek, it "continued to monitor performance and engage management on business strategy, as well as legal, policy and regulatory matters," after investing, even supposedly advising FTX with regard to "upgrad[ing] regulatory and legal functions" and to "strengthen [its] leadership." ¶ 360.

All told, Temasek invested $275 million; SoftBank invested $100 million; and Sino Global maintains some anonymity but reported an amount in the "mid-seven" figures. ¶¶ 343, 251.

### iv. Defendants provided FTX with other vital non-monetary assistance and also developed close ties with SBF.

Defendants invested in FTX's growth in other ways. Temasek sponsored Crypto Bahamas, an event reported as a "four-day flex of FTX's expanding empire," and presented on panels at the event in support of the expansion and legitimization of cryptocurrency. ¶¶ 363-365. Even after FTX's collapse, Temasek admitted that it had frequently interacted with SBF and with others in the FTX ecosphere. ¶ 349.

SoftBank lobbied the CFTC to grant FTX the necessary licenses to operate as a derivatives clearinghouse with claims that FTX's proposal would reduce risks to the consumer, even though it had knowledge of FTX's unusual, unprecedented algorithmic-based trading model. ¶¶ 366-367.

Sino Global also sponsored Crypto Bahamas, which launched FTX and SBF into notoriety and amplified FTX's reach into the U.S. market. ¶ 333. Sino Global affirmatively represented that it "supported the FTX vision" "[f]rom the very beginning," "worked with [FTX] to make it a reality," and knew that its due diligence representations, investment, and ongoing relationship lent an air of legitimacy to FTX. ¶¶ 358, 253. Matthew Graham and SBF had a "deep relationship" that Graham touted publicly. ¶ 371. The slide deck Sino Global prepared to pitch Liquid Value Fund 1, of which FTX was a general partner, highlights knowledge that Sino Global acquired in the course of its relationship with SBF and FTX, *including that SBF owned and controlled both FTX and Alameda*. ¶ 327. Matthew Graham was close to other FTX insiders, as he lent his luxury Bahamas home to SBF's "right-hand man" and FTX executive and board member Constance Wang, from where Wang led FTX's global business expansion and oversight of its token listings and PR. ¶ 372. Wang was only four years out of college and clearly lacked business acumen. ¶ 373. Despite her inexperience, despite her presiding over one of the largest

frauds in recent history, and *after FTX's collapse*, Graham hired Wang as a Sino Global executive. ¶ 373.

SBF repeatedly underscored the tremendous value that Defendants brought to FTX, remarking that through fundraising, "we've formed a hugely valuable set of partners;" SBF explained after the Series B funding closed that "[t]he primary goal of the raise was to [find] strategic allies who can help FTX grow its brand." ¶ 308. It touted in a press release regarding funding from Defendants that it was able to "partner with investors that prioritize positioning FTX as the world's most transparent and compliant cryptocurrency exchange." ¶ 309.

### B. Entities with Less Knowledge of FTX than Defendants, Less Resources Than Defendants, and Sometimes Less Expertise Than Defendants, Found Glaring Red Flags.

Defendants were aware of FTX's fraud—i.e., were aware that FTX's financial records had substantial concerns; lacked internal controls or a board of independent directors; did not segregate Class Member funds from operations; was hemorrhaging money to Alameda and other SBF affiliates under his control; and concentrated control in the hands of unsophisticated twenty-somethings—because these issues became clear to many others who spent much less time evaluating FTX's non-public records. ¶ 340. After being appointed CEO when FTX filed for bankruptcy, John Ray III observed he had never "seen such a complete failure of corporate controls and such a complete absence of trustworthy financial information as occurred here." ¶ 235. He stated in a filing that: "[t]he FTX Group lacked appropriate management, governance, and organizational structure," board oversight was "effectively non-existent," and the "management and governance of the FTX Group was largely limited to Bankman-Fried, Singh, and Wang." He stated this trio "controlled nearly every significant aspect of the FTX Group," despite being "not long out of college and with no experience in risk management or running a business." ¶ 150. Mr. Ray found that:

- Customer assets from FTX.com were commingled with assets from the Alameda trading platform;

- Alameda used client funds to engage in margin trading which exposed customer funds to massive losses;

- The FTX Group went on a spending binge in late 2021 through 2022, during which approximately $5 billion was spent buying a myriad of businesses and investments, many of which may be worth only a fraction of what was paid for them; loans and other payments were made to insiders in excess of $1 billion;

-  Alameda's business model as a market maker required deploying funds to various third-party exchanges which were inherently unsafe, and further exacerbated by the limited protection offered in certain foreign jurisdictions.

¶¶ 139-142. Mr. Ray prepared a report of failures—including the complete lack of (1) management and governance controls; (2) financial and accounting controls; and (3) digital asset management, information security and cybersecurity controls—and concluded therein that "[t]he FTX Group's profound control failures placed its crypto assets and funds at risk ***from the outset***." ¶¶ 149; 154 (emphasis added). Defendants had access to the same information Mr. Ray did, years before he did. ¶ 340. Ray uncovered these findings in a matter of days. *Id.*

Second, multiple other venture capitalists identified or rejected FTX as a bad investment upon exposure to non-public information. In a story following the collapse, the *Financial Times* quoted an anonymous executive at a "top investor" in FTX explaining that he advised his firm against the investment after the firm's initial diligence and "wouldn't have touched" SBF after phone calls, but that the firm invested anyway. ¶ 341.

Venture capital firm Social Capital determined SBF didn't "make much sense" after one Zoom meeting, and prepared recommendations FTX could undertake if investment talks were to proceed—i.e., forming a board, creating dual-class stock, and providing investors with warranties around related party transactions—to which an FTX employee responded with expletives. ¶ 328.

Venture capitalist Alex Pack conducted a fraction of the due diligence that Temasek touted conducting (one month vs. eight) but declined investing in FTX after determining that "Alameda and FTX were tied at the hip." ¶ 330.

Third, contrary to Defendants' thinly veiled claims that they too were hoodwinked and victimized by FTX, certain corporate and investor materials from FTX that have been made public are suspicious on their face. ¶ 329. The pitchbooks FTX used to solicit funds from Defendants feature unsubstantiated projections and calculations, and appear unorganized, inaccurate, confusing, and unsophisticated. ¶ 331. The audited financials—which at least Temasek claimed to review and which would have been standard for SoftBank and Sino Global to review—show clearly irregular activity, including FTX using its own FTT tokens as currency for acquisitions, questionable loans, and numerous perplexing related party transactions. ¶¶ 332-334, 336; *see also* ¶¶ 127-128. Neither FTX Trading nor FTX US paid federal income taxes, despite appearing profitable. ¶ 335. The balance sheets show that FTT tokens issued were largely held by FTX or Alameda, while FTX was making public representations that FTT was widely distributed. ¶ 337. The FTX terms of service clearly contradicted its actual practices. ¶ 338.

Fourth, regulatory action taken by the CFTC in the wake of the collapse also confirmed that basic due diligence—available to Defendants but not to Class Members— would have revealed fraud. ¶ 342. The CFTC's complaint alleges that the FTX business was structured to easily enable the embezzlement of customer funds. *Id.*

Fifth, even non-profit organizations with far less resources, who are obviously not in the business of conducting due diligence, declined grants from FTX after "conducting due diligence checks" and finding red flags in the information they were offered by FTX. ¶ 234.

### C. Plaintiffs Allege Injury as Result of Defendants' Conduct.

Plaintiffs have alleged a scheme through which all Defendants in this MDL action are responsible, by way of each of their respective roles in pushing the FTX fraud to the unprecedented limits that it reached, for the damages Plaintiffs have suffered. This includes

specific allegations that Multinational VC Defendants caused Plaintiffs injury. ¶¶ 11, 163, 414, 423-424, 432-433, 443-444, 454-455, 467-468, 474, 479, 487, 505-506, 516-517, 524-525, 532-533, 553-554.

### III.  <u>ARGUMENT</u>

#### A.  **Standard of Review.**

In deciding a motion to dismiss, the court is required to review the complaint in the light most favorable to plaintiff. *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co*., 40 F.4th 1295, 1301-02 (11th Cir. 2022). The court must accept plaintiffs' allegations and all reasonable inferences therefrom as true. S*ee United States v. Pemco Aeroplex*, Inc., 195 F.3d 1234, 1236 (11th Cir.1999) (en banc); *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002) *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When complaint allegations are capable of more than one inference, the court must adopt the plausible inference that supports a valid claim for plaintiffs. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *Watson Carpet & Floor Cvering, Inc. v. Mohawk Industries, Inc.*, 648 F.3d 452 (6th Cir. 2011) (defendants' conduct may have several plausible explanations but "[f]erreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage."). In other words, a court "must assume the truth of all well-pleaded allegations except legal conclusions, regardless of whether evidence may ultimately support them." *Jackson v. Wal-Mart Stores, Inc.*, 753 F. App'x 866, 869 (11th Cir. 2018); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ("Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.") (citation omitted).

The standard is not whether plaintiffs will ultimately prevail, but whether the allegations are sufficient to allow plaintiffs to conduct discovery to prove their allegations. *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). Even if it were to strike the court that actual proof of the facts is improbable or relief is remote, the facts alleged must be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, a 12(b)(6) motion should be granted only if it appears beyond a doubt that the plaintiff could not prove any set of

facts in support of its claim which would entitle it to relief. *Conley v. Gibson*, 335 U.S. 41, 48 (1957) (emphasis added); see also Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570.

Thus, a motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requires a court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of plaintiff. *Twombly*, 550 U.S. at 556-57.

### B. Plaintiffs' Allegations Are Sufficiently Pled.

#### i. Defendants' argument that Plaintiffs' claims are implausible is a veiled demand for a level of detail not required at the pleadings stage.

Defendants' self-serving assertions that Plaintiffs' allegations are "false" or "preposterous" does not render them implausible under applicable law. Defendants are wrong on both the facts and the law. Claims are plausible when the factual content pled allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556.

In cases including allegations of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that the allegations of fraud also be stated with particularity. Fed. R. Civ. P. 9(b). *Absolute* particularity, however, is not required, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery. *See Freeman v. Sharpe Res. Corp.*, 2013 WL 2151723, at *10 (M.D. Fla. May 16, 2013); *Livingston v. H.I. Fam. Suites, Inc.*, 2005 WL 2077315, at *4 (M.D. Fla. Aug. 29, 2005); *Maison v. Ford Motor Co.*, 2005 WL 1684159, at *2 (N.D. Fla., July 7, 2005). Consumer plaintiffs in fraud actions cannot be assumed to have the same knowledge as an insider to the fraud, especially when information was concealed. *Id.* Thus, even under the heightened pleading standard of Rule 9(b), allegations about the *nature* of a conspiracy are sufficient where information about the extent of the alleged conspiracy is within defendants' exclusive control. *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881–82 (11th Cir. 2003) (internal citations omitted). A plaintiff need only "to detail the relevant aspects of the underlying fraud ... to explain the factual basis for concluding that defendants were aware of the fraud; and, to explain the factual basis for determining that they substantially assisted in its commission." *Id.*

Plaintiffs have clearly met this standard. They have pled, and with the requisite particularity where applicable, each element of each cause of action with detailed facts, which must be taken as true, in support of those allegations. Defendants are advocating for a reading of Rule 9(b) that would raise that pleading standard to a level akin to that at motion for summary judgment or at trial, such that Plaintiffs somehow should prove all issues before discovery has even begun or engage in factual disputes about materiality and causation of the allegations stated.

Further, Defendants repeatedly state that the Complaint lacks detail, which is not only untrue but is no ground for dismissal under Rule 12(b)(6). *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 333 (S.D.N.Y. 2003); *see also Twombly*, 550 U.S. at 555 (a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations). If Defendants truly believed the pleadings are unclear, they should have moved for a more definite statement under Rule 12(e) and requested more detail. They did not. As the complaint is sufficiently clear and puts Defendants on notice of the allegations against them regarding the nature of the conspiracy; their illegal sale of unregistered securities and aiding and abetting of securities fraud; their aiding and abetting of fraud, fiduciary breach, and conversion; their material misrepresentations to the public; and their other statutory violations of unfair competition and deceptive practices laws, any argument to the contrary should be disregarded.

### ii. Shotgun pleadings are stricken to ensure parties know of the claims against them, which Defendants clearly do.

Likewise, Defendants' claims that Plaintiffs' complaint is a shotgun pleading fall flat. As described by the Eleventh Circuit, shotgun pleadings are those "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked . . . ." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544, n.14 (11th Cir. 1985)). The purpose of prohibiting shotgun pleading is to ensure defendants are adequately on notice of the claims against them. Unlike the cases cited, Plaintiffs' complaint asserts a litany of facts *specific to each Defendant* concerning, *inter alia*, their due diligence of

FTX; relationships with FTX; amounts invested; timing of investments; lobbying efforts where applicable; advisory board membership where applicable; and omissions of material fact when promoting FTX. *See id.* at 1324 (Complaint was not a shotgun pleading because "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count.").

### C. Plaintiffs Sufficiently Pled That Defendants Aided and Abetting the Sale of Unregistered Securities (Counts 1 and 3).

Plaintiffs have sufficiently pled their claims against Defendants for aiding and abetting FTX's sale of unregistered securities under both Florida and California law.

Defendants do not contest for purposes of this motion that FTX sold unregistered securities—the FTX tokens called FTTs (¶¶ 218-19, 337) and the Yield-Bearing Accounts (¶¶ 203-217) by which FTX operated—in California and Florida.[3] They only argue that they did not "materially assist" or "personally participate" in FTX's underlying sale of those unregistered securities. MTD at 16. This assertion is baseless, and Defendants resort to mischaracterizing the necessary elements of the aiding and abetting claim to make it.

As alleged, each Defendant provided FTX with material assistance necessary to bring the FTX platform and its unregistered securities to the U.S. market. This assistance included the funding from each of them necessary to bring FTX to market (¶¶ 307-318); that SoftBank lobbied and made statements to the United States government to help establish FTX as a supposedly safe and trustworthy place to buy and keep crypto (¶¶ 52-53, 252, 263, 367); that Temasek and SoftBank both advised and controlled  FTX by serving  on its "Advisory Board," and acted as FTX's agents to overcome legal and regulatory hurdles to bring FTX's platform and unregistered securities to market (and also as FTX's control persons to the extent they themselves provided the

---

[3] Plaintiffs allege Defendants violated each state's prohibition on the sale of unregistered and/or unqualified securities, Florida Statute § 517.07 and California Corporations Code § 25110 respectively. Indeed, as alleged, bringing the FTX platform to market necessarily involved the sale of FTTs and the YBAs in which FTX customers held their crypto assets. ¶¶ 197-229; *see* Fla. Stats. §§ 517.07(1), 517.211; Cal. Corp. Code §§ 25110, 25503, 25504, 25504.1.

actual legal and regulatory governance for FTX given its total lack of internal governance or controls) (¶¶ 36, 251-252, 262-263, 361-363, 366, 457); that each Defendant actively promoted the FTX platform to crypto investors at investment conferences, lending the weight of their names to FTX as a safe and lucrative investment (¶¶ 364-365, 370); and that Sino Global partnered with Alameda and FTX to start a fund that traded in and churned the FTTs at issue (¶¶ 35, 253, 264, 316-318, 325-327). All three Defendants are alleged to have promoted FTX and provide FTX with the assistance FTX needed to access the U.S. market. ¶¶ 363-371.

In the meantime, FTX was selling unregistered securities with virtually no internal controls, loaning and spending money that wasn't theirs, and otherwise was committing fraud on an incredible scale. Defendants misrepresented as true that they conducted significant due diligence that led them to tout FTX as trustworthy and as having proper internal controls and risk measures. They omitted the truth they discovered about FTX every time they made public representations about and promoted FTX. ¶¶ 126, 251, 253, 263-264, 320-21, 323, 325, 443, 484. This assistance in commission of the fraud provides for aiding and abetting liability under both California and Florida law.

### i. Defendants provided "material assistance" to FTX, which sold unregistered securities in violation of California law.

Section 25110 of the California Corporate Securities Law ("CSL") prohibits the offer or sale by any person in California of securities that are not qualified through registration. Section 25503 affords a statutory cause of action to purchasers of those unregistered securities for violations of Section 25110. Sections 25504 and 25504.1 establish joint and several liability on the part of certain actors, including control persons and agents who materially aid in the transaction constituting the violation) and persons who materially assist in the violation with the intent to deceive or defraud. §§ 25504, 25504.1; *Moss v. Kroner*, 197 Cal. App. 4th 860, 873 (2011). Defendants do not contest the status of the YBAs and FTTs as unregistered securities, which Plaintiffs have alleged, for purposes of this motion MTD at 15-16, n. 15; *see also* ¶ 428. Thus, all

that remains is whether Defendants "materially" assisted in selling YBAs and FTTs under California law, or were partners/agents or control persons of FTX.

"California law provides for numerous other actors to be held secondarily liable for the illegal sale of a security in violation of section 25110." *Moss v. Kroner*, 197 Cal. App. 4th at 871. Every person or entity that provides "material assistance" in selling unregistered securities is jointly and severally liable along with the seller of those securities:

> Section 25504.1 provides that any person who materially assists in a violation of section 25110 with the intent to deceive or defraud is jointly and severally liable with any other person who is liable for an illegal sale of unregistered securities under section 25110. Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission.

*Id.* (citing *Apollo Capital Fund v. Roth Capital Partners*, 158 Cal.App.4th 226, 257(2007)). "Materially assisting" an alleged securities law violation under California law "may take the form of aiding in the preparation of offering documents relied upon by investors, communicating misrepresentations directly to investors, or otherwise playing a material, facilitating role in the alleged securities law violation." *Schaffer Fam. Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1045 (C.D. Cal. 2015) (*quoting Arei II Cases,* 216 Cal.App.4th 1004, 1014, 157 Cal.Rptr.3d 368 (Cal.Ct.App.2013).

Each Defendant engaged in one or more of the exemplar activities described in *Schaffer Family*. Defendants misrepresented material facts to investors. *E.g.*, ¶¶ 364-365, 370. Defendants prepared official statements to the United States government to facilitate FTX's access to the U.S. market. *E.g.*, ¶¶ 52-53, 252, 263, 367. But Defendants did more—they funded FTX (*e.g.*, ¶¶ 307-318); they advised and controlled FTX by serving on its "Advisory Board," and acted as FTX's agents to overcome legal and regulatory hurdles to bring FTX's platform and unregistered securities to market (*e.g.*, ¶¶ 36, 251-252, 262-263, 361-363, 366, 457); and they started funds that traded in and churned the FTTs (*e.g.*, ¶¶ 35, 253, 264, 316-318, 325-327). That is material assistance under any bar.

### ii. Defendants "personally participated or aided" FTX in the sale of unregistered securities in violation of Florida law.

Section 517.07 of the Florida Securities and Investor Protection Act ("FSIPA") provides that "[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security ... is registered pursuant to this chapter." Fla. Stat. § 517.07(1) *Scheck Invs., L.P. v. Kensington Mgmt., Inc.,* No. 04-21160-CIV, 2009 WL 10668565, at *2 (S.D. Fla. June 17, 2009). Section 517.211(1) extends liability to those who aid in such sales:

> Every sale made in violation of [Fla. Stat. § 517.07] may be rescinded at the election of the purchaser.... Each person making the sale and every director, officer, *partner*, *or agent* of or for the seller, if the director, officer, *partner, or agent* has personally participated or *aided* in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security.

Fla. Stat. § 517.211(1) (emphasis added.); *Scheck Invs.,* 2009 WL 10668565 at *2. Privity is not required. *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd*., 224 So. 3d 316, 328 (Fla. Dist. Ct. App. 2017). "Section 517.211, by its plain language, extends liability to. . . [s]uch parties [that] would not necessarily be in privity of contract with the buyer or seller in a strict sense.").

Further, proof of loss causation is not required. *Arthur Young & Co. v. Mariner Corp.*, 630 So. 2d 1199, 1204 (Fla. Dist. Ct. App. 1994); *Rousseff v. E.F. Hutton Co.,* 867 F.2d 1281, 1282 (11th Cir. 1989). For an officer, director or agent to be held personally liable for the sale of illegal securities he must "engage in some act or acts which induce the purchaser to invest." *Dillon v. Axxsys Int'l, Inc.,* 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005), aff'd, 185 F. App'x 823 (11th Cir. 2006) (citing *Ruden v. Medalie,* App., 294 So.2d 403 (1974)). The term "agent," in Section 517.211 extending liability to agents of or for purchaser or seller of security, incorporates the common-law definition of agency. *Arthur Young & Co.,* 630 So. 2d at 1204.

Here, Plaintiffs have alleged that Defendants undertook myriad acts as agents or partners of FTX. SBF literally referred to Defendants as his "partners." ¶¶ 308, 309. Temasek and Softbank advised on regulatory concerns on behalf of FTX to smooth the sale of FTX's unregistered

15

securities in the U.S. ¶¶ 308, 309, 360, 367. Temasek and SoftBank were control persons of FTX by virtue of their service on FTX's Advisory Board in the absence of corporate governance and controls at FTX. ¶ 457. Further, Sino Global, in an effort to legitimize and sell the FTX platform and the unregistered securities by which it operates, partner with FTX to create supposedly independent funds that then traded in the very securities at issue in this lawsuit, the FTTs, to prop them up. ¶¶ 35, 127, 329. Defendants also personally participated in the sale of unregistered securities each time they lobbied for or promoted bringing the FTX platform to market and induce the Plaintiffs to purchase the unregistered YBAs with FTX. ¶¶ 363-65, 370, 413, 421, 430.

### iii. Plaintiffs are not required to show public statements by Defendants in Counts 1 and 3.

Defendants offer several red-herring arguments. MTD at 16-17. Each are easily disposed of. First, Defendants argue Plaintiffs fail to identify a public statement encouraging anyone to purchase anything or mention YBAs or FTTs. MDT at 16. But Defendants, as aiders and abettors, agents, and/or control persons of FTX, are secondarily liable for FTX's primary violations of selling unregistered securities. *Moss v. Kroner*, 197 Cal. App. 4th at 872  ("to the extent that the [complaint] alleges that the [] defendants materially assisted [the primary violator] in selling unregistered securities and that they possessed the intent to defraud or deceive, the complaint properly alleges a claim for liability under section 25504.1"). They are liable in promoting the safety and trustworthiness of FTX as a crypto trading platform, sponsoring and speaking at FTX investor conferences, and helping to bring the FTX platform to market to sell unregistered securities. And, notwithstanding that material misstatements and omissions are not required to allege the aiding and abetting the sale of unregistered securities, Defendants' material misrepresentations and glaring omissions about the due diligence they performed and the existence of FTX's safety, trustworthiness, and internal controls in promoting FTX—statements which form the basis of other causes of action described herein—can also be construed as public statements made to encourage sales. Defendants fail to even address the myriad other ways they are alleged to have aided FTX with the aim of aiding the sale of FTTs and YBAs. ¶¶ 361-363, 366, 372, 457.

### iv.   Privity between Defendants and Plaintiffs is not required because they are in privity with FTX.

Defendants next argue that Plaintiffs failed to allege Defendants had direct contact or privity with Plaintiffs. MTD at 17. But privity is not an element of aiding and abetting the sale of unregistered securities in either Florida or California. *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 937 (2011) (a "control person" under section 25504 and an "aider and abettor" under section 25504.1 can be sued for damages without privity of contract."); *Moss v. Kroner*, 197 Cal. App. 4th 860, 878 (2011) ("we conclude that the Legislature, when it enacted sections 25504 and 25504.1, intended to depart from those principles by placing these certain secondary actors in the shoes of the principal violator for the purpose of civil liability as long as the original direct violator was in privity with the plaintiff."); *see also Logan v. Morgan, Lewis & Bockius LLP*, 350 So.3d 404 (Fla. Dist. Ct. App. 2022) (stating in the context of breach of fiduciary duty that aiding and abetting liability requires "knowledge of the breach by the alleged aider and abettor" and "the aider and abettor's substantial assistance or encouragement of the wrongdoing" but not privity or direct contact with those the wrongdoer was in contact with).  Defendants are wrong to suggest privity is required for aiding and abetting the sale of unregistered securities. These Defendants provided the regulatory and legal acumen to being the FTX platform to market in the United States.

Defendants also argue here that Plaintiffs fail to allege when they became FTX customers, opened YBAs, or bought tokens. But Defendants offer no authority that such specific allegations beyond the existing allegations that Plaintiffs were FTX customers— i.e., held accounts, traded crypto, and therefore purchased unregistered securities—is required at this stage. *See* ¶¶ 13-28.

### v.   Plaintiffs have pled the requisite intent.

Defendants further claim that Plaintiffs' unregistered sale claim fails because Plaintiffs have not alleged that Defendants assisted in the sale with the intent to deceive or defraud. MTD at 18. First, scienter under Florida law is satisfied by a showing of mere negligence. *Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011). Second, Plaintiffs' allegations regarding the provision of legal and regulatory assistance to FTX satisfies the unlawful intent needed for aiding and

abetting the sale of unregistered securities under California law. Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission. *Moss v. Kroner*, 197 Cal. App. 4th at 872 (*citing Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 257, 70 Cal. Rptr. 3d 199, 224 (2007); *see also, People v. Salas*, 37 Cal.4th 967, 981 (2006) ("[a] defendant is not guilty of the crime of selling an unregistered security in violation of section 25110 if there is a reasonable doubt whether the defendant knew the security was not exempt from regulation or was criminally negligent in failing to know that the security was not exempt"). Plaintiffs' allegations about Defendants' knowledge of the underlying fraud obtained in the course of their partnerships and the affirmative misrepresentations and omissions they made at investor conferences regarding the due diligence they conducted and the safety of the platform (See Section II(A)), thus suffice for the requisite intent of aiders and abettors under Florida and California law.

### vi. Defendants misstate the standard for Plaintiffs' unregistered broker-dealer claim for Count 3.

Finally, Defendants argue Plaintiffs' unregistered broker-dealer claim fails because they did not allege privity and did not materially assist the sale. MTD at 17-18. But this is wrong. As CSL section 25210(b) provides: "No person shall, **… on behalf of an issuer,** effect any transaction in, or **induce or attempt to induce the purchase or sale of, any security in this state** unless [a licensed] broker-dealer and agent have complied with any rules as the commissioner may adopt for the qualification and employment of those agents." Cal. Corp. Code § 25210(b) (emphasis added). To the extent Defendants, in addition to providing capital for the scheme to sell unregistered, unqualified securities, also promoted and invested in these unregistered securities, and advised FTX on how to induce their purchase by Plaintiffs, Defendants are jointly and severally liable under Section 25504 as agents and control persons of FTX, and thus under Section 25504.1 as aiders and abettors for FTX's primary violation of 25210. ¶¶ 426-433.

### D. Plaintiffs Sufficiently Pled That Defendants Aided and Abetted Securities Fraud and (Counts 2 and 4).

Defendants next challenge the sufficiency of Plaintiffs' allegations that Defendants committed and/or aided and abetted in securities fraud under California and Florida law. MTD 19-

22. This includes Plaintiffs claims for aiding and abetting securities fraud under Florida law (Count 2, ¶¶ 415-25) and  aiding and abetting securities fraud under California law (Count 4, ¶¶ 435-45). These Counts are properly pleaded under the relevant Florida and California law.

Plaintiffs allege Defendants' liability as "partners" and "agents " of FTX and based on their "material assistance" or "aid" critical to commission of the scheme—and that is all that is required. ¶ 421; Fla. Stat. § 517.211(2)(extending joint and several liability to "partners" and "agents" who "aid" in the scheme); ¶ 437, Cal. Corp. Code § 25504.1(extending joint and several liability to those who "materially assist" in any violation of §25401 which prohibits the offer or sale of a security "by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."). Defendants are alleged, by virtue of their repeated investments in FTX, to have known about the total lack of internal controls, the illegal undisclosed related party loans to Alameda and the total lack of corporate governance, yet nonetheless contributed in bring the FTX platform and its securities to market in Florida and California by acting as its "partners" in investing in FTX, in acting as  FTX's agent in promoting and lobbying for FTX,  and acting as its control person by controlling FTX from its Advisory Board and providing it the legal and regulatory guidance it needed given  FTX's alleged non-existent corporate governance or internal controls.

**Florida**. The Florida Securities and Investor Protection Act ("FSIPA") prohibits any person "in connection with the offer, sale, or purchase of any investment or security" from "directly or indirectly" (1) employing "any device, scheme, or artifice to defraud"; (2) obtaining "money or property by means of an untrue statement or a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading"; or (3) engaging in "any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person." Fla. Stat. § 517.301. Section 517.211(2) extends joint and several liability to liability to any "director, officer, partner, or agent of or for the seller if they personally participated or aided in making the sale or purchase."

The elements of a cause of action under Section 301 are identical to those under Rule 10b–5 of the Exchange Act, "except that the scienter requirement under Florida law is satisfied by [a] showing of **mere negligence**." *Arnold v. McFall,* 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011) (citing *Grippo v. Perazzo,* 357 F.3d 1218, 1222 (11th Cir. 2004)) (emphasis added); *see* 17 C.F.R. § 240.10b-5. Further, a plaintiff does not need to prove loss causation under Florida law. *Id.* (citing *E.F. Hutton & Co., Inc. v. Rousseff*, 537 So.2d 978, 981 (Fla.1989)). Reliance is not required.

**California**. Section 25401 of the CSL makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Section 25501 provides a private right of action to purchasers of securities injured by violation of Section 25401. Section 25501 imposes liability not only for statements known to be false or misleading, but also for those made without exercising reasonable care to determine the truth or falsity of the statement. Section 25504.1 extends liability under Section 25501 to any person who "materially assists" in a violation of Section 25401 and makes them jointly and severally liable with any other person liable under Section 25501. The scienter standard in California under Section 25401 is whether Defendants were "aware, *or with reasonable care would have been aware*, that statements by which the sale was made were false or misleading." *People v. Simon*, 9 Cal. 4th 493, 516, 886 P.2d 1271, 1286 (1995); *Moss,* 197 Cal. App. 4th at 872 ("Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission").

### i.  Defendants participated and materially assisted in securities fraud.

In Count 2, Plaintiffs allege facts that satisfy both primary liability under Section 517.301 and secondary liability as FTX's "partners" and/or "agents" pursuant to Section 517.211(2). ¶¶ 421-424. Plaintiffs identify material misrepresentations and omissions with specificity (*e.g.*, ¶ 419), and that Defendants were SBF's and FTX's partners and agents and aided in the misrepresentations and omission to the public about the safety and trustworthiness of FTX (¶¶ 421-424). Plaintiffs also plead facts showing Defendants materially aided and abetted FTX's and

SBF's primary violations of Section 25401 for making material misrepresentations and omissions about FTX's business and in conducting the broader scheme to defraud. ¶¶ 435-345. Such misstatements and omissions and their relations to the overall scheme are pled with specificity. ¶ 439. Defendants' citation to *AREI II Cases,* 216 Cal. App. 4th 1004, 1014 (2013) supports Plaintiffs' arguments. As explained by *AREI II*, "[t]o support liability under section 25504.1 for such a violation, the complaint must include allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities by means of false and misleading statements. Such assistance may take the form of aiding in the preparation of offering documents relied upon by investors, communicating misrepresentations directly to investors, or otherwise playing a material, facilitating role in the act of selling or attempting to sell the securities by means of misrepresentations or omissions of material fact." *Id.* And as outlined above, Plaintiffs have alleged each of those as to each Defendant. Defendants financed FTX, sponsored FTX investor conferences, lobbied for FTX, and provided legal and regulatory guidance to bring FTX and its unregistered securities to market.

### ii. Plaintiffs allege scienter.

Acknowledging that the scienter standard under Florida securities law is one of negligence, Defendants still argue that Plaintiffs have failed to plausibly allege that Defendants "acted negligently, much less with knowledge or intent." MTD at 21-22. Again, as the "scienter requirement under Florida law is satisfied by [a] showing of mere negligence," Plaintiffs have alleged in significant detail how Defendants pumped billions into FTX and propped them up on for business on the U.S. market after conducting significant due diligence that should have raised serious flags, and in fact that did raise red flags for others. *See Arnold v. McFall*, 839 F. Supp. 2d at 1286. That negligent conduct occurred under these facts is unquestionable. As for scienter under California law, intent to defraud is defined as "the intent to induce reliance on a knowing misrepresentation or omission." *Moss v. Kroner,* 197 Cal. App. 4th at 872. As discussed above and in the sections regarding Plaintiffs' material misrepresentations claims, this standard is also met.

### E. Plaintiffs Sufficiently Pled Control Person Liability for FTX's Primary Violations Under California Law (Count 6).

Defendants argue Count 6 fails because Plaintiffs did not allege Defendants are directors, officers, partners, agents or control persons, MTD at 22, but Plaintiffs adequately alleged control person liability under California law. ¶¶ 455-457. (The Florida argument related to agency is discussed above.) "Every person who *directly or indirectly controls* a person liable under Section 25501 or 25503…*every person occupying a similar status or performing similar functions*, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or *agent* who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person[.]" Cal. Corp. Code § 25504 (emphasis added). Defendants' secondary liability as an agent or control person of a primary violator does not require scienter (in contrast to Section 25504.1, which does). *See. e.g., Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1073 (N.D. Cal. 2013); *Moss v. Kroner,* 197 Cal. App. 4th at 873. But "[u]nder California law, the general definition of 'control' for use throughout the Corporations Code, including section 25504 (see § 5), is 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a corporation.' (§ 160, subd. (a); see also § 25403, subd. (a).)" *Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1316 (2011). Plaintiffs have alleged Defendants acted both as agents in acting on behalf of FTX in legal and regulatory matters, and as control persons insofar as they served on an Advisory Board with total absence of internal governance or controls. Such allegations are sufficient to plead violations of Section 25504.

### F. Market Manipulation Under California Law is Sufficiently Pled (Count 5).

Defendants attempt to lump Plaintiffs' market manipulation claim for violating Section 25500 in with their arguments regarding aiding and abetting securities fraud, and do not address the substantive allegations that Sino Global illegally traded in FTTs. As alleged, Sino Global started the Liquid Value I fund with over a hundred million dollars from FTX and Alameda and worked closely with SBF to churn and prop the FTTs up. ¶¶ 35, 264, 316, 318, 325-27. Such trading sustained the false and artificially inflated value of the FTTs and YBAs.

### G.  Plaintiffs Sufficiently Pled Defendants Engaged in a Conspiracy (Count 7).

Plaintiffs have sufficiently pled the elements of conspiracy under both California and Florida law, such that Defendants are on clear notice of the nature of the scheme alleged. Defendants argue the complaint lacks particularity but do not identify how, nor do they bother to substantively address any of the underlying causes of action alleged (even while acknowledging that conspiracy is not a standalone claim but requires underlying tortious conduct). Because they do not challenge the multiple overt acts that Plaintiffs have alleged Defendants took in furtherance of the conspiracy, their vaguely formulated opposition on this cause of action entirely fails to identify why Plaintiffs' pleading is deficient.

To state a cause of action for conspiracy under California law, Plaintiffs must show the (1) formation of an agreement to commit a wrong, (2) wrongful conduct in furtherance of the conspiracy and (3) damages arising from the wrongful conduct. *United Motors Int'l, Inc. v. Hartwick*, 2017 WL 888304, at *10 (C.D. Cal. Mar. 6, 2017). Similarly, under Florida law, the elements are (1) conspiracy between two or more parties (2) to do an unlawful act or to do a lawful act by unlawful means, (3) an overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Primerica Fin. Servs., Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999). While a civil conspiracy complaint must contain more than a bare allegation that defendants conspired, it is sufficient if it apprises defendant of the character and type of facts and circumstances upon which the plaintiff is relying to establish the conspiracy. *AREI II Cases*, 216 Cal. App. 4th at 1022. In both California and Florida, "a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement'" is enough to infer a conspiracy.  *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1301 (9th Cir. 1999); *Valderrama v. Rousseau*, 2012 WL 12925174, at *7 (S.D. Fla. Sept. 18, 2012) (same).

Further, allegations about the general nature of a conspiracy are sufficient even under the heightened pleading standard of Rule 9(b) where information about the extent of the alleged conspiracy is within the defendants' exclusive control. *United States v. Baxter Int'l, Inc.*, 345 F.3d

866, 881–82 (11th Cir. 2003) (citations omitted). It is sufficient for the plaintiff "to detail the relevant aspects of the underlying fraud…explain the factual basis for concluding that defendants were aware of the fraud; and, explain the factual basis for determining that they substantially assisted in its commission." *Id*; *see also Freeman v. Sharpe Res. Corp*., 2013 WL 2151723, at *10 (M.D. Fla. May 16, 2013) ("[A]bsolute particularity is not required, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery."). As such, courts typically allow leeway in pleading when the information supporting the pleading is under exclusive control of the defendant. *See Peters v. Amoco Oil Co.*, 57 F.Supp.2d 1268, 1284–85 (M.D.Ala.1999) *882 (holding that complaint setting forth general allegations about nature of conspiracy was sufficient despite heightened pleading standard, where information about extent of alleged conspiracy was within defendants' exclusive control); *see also Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp*., 711 F.2d 989, 995 (11th Cir.1983).

Here, the complaint puts Defendants on notice as to the "who, what, where, when, why" of the conspiracy. Plaintiffs allege agents of FTX and each Defendant formed a tacit agreement to deceive the public that took place from the time of due diligence and formation of partnerships until the collapse. *E.g.*, ¶¶ 34, 251-253, 316-318, 459-463. Plaintiffs have pled facts permitting a reasonable inference that Temasek, SoftBank, and Sino Global were aware of the plan to defraud the public (¶¶319-327, 331-340) then committed overt acts in furtherance of the fraud, breach of fiduciary duty, and conversion by injecting necessary capital into the scheme (¶¶306-315, 343-344, 357), publicly generating for FTX the appearance of credibility and trustworthiness (¶¶ 345-348, 350, 364-365, 368-3701, advising FTX on regulatory, legal, and marketing matters intended to bolster its growth (¶¶ 349, 351-355, 358-363, 366, 367), and concealing the fraud when the company began to falter, all with the purpose of keeping the fraud afloat until Defendants could cash out (¶¶ 374-381, n.148). Each of these acts permitted the scheme to grow in scale and persist in duration, which directly resulted in financial injury to Plaintiffs.

These actions are unlikely to have been taken without a tacit agreement in place. Defendants were presented with repeated opportunities to determine that FTX was fraudulent.

Whether they didn't care at the outset or found out when it was too late, each Defendant was incentivized to prop up FTX and overlook or hide the sloppy internal controls and other regulatory issues while quietly pushing the company towards an IPO, and thereby impliedly agreed to assist FTX in its multiple forms of wrongful conduct.

### H. Plaintiffs Sufficiently Pled Defendants Aiding and Abetted the Common Law Claims of Fraud, Fiduciary Breach, and Conversion (Count 8, 9, 10).

Under both Florida and California law, the elements necessary to sustain an aiding and abetting claim are: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor. *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1321 (M.D. Fla. 2013) (citations omitted); *Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 736-37 (Fla. 5th DCA 2000) (quoting Restatement (Second) of Torts § 876 (1979)); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 846 (1994).

Because Defendants do not contest that FTX committed fraud, fiduciary breach, or conversion,[4] (*see* MTD 23-26), Plaintiffs discuss only the sufficiency of the allegations as to the second and third elements of aider and abettor liability—knowledge and substantial assistance.

As to knowledge, allegations of knowledge and intent are not subject to the same particularity requirement as fraud. Fed. R. Civ. P. 9(b); *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x. 882, 884 (11th Cir. 2014). Courts have found pleadings sufficient if they allege generally that defendants had actual knowledge of a specific primary violation. *See*, *e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. Oct. 20, 2003) (citing *Dubai Islamic Bank v. Citibank, N.A.*, 256 F.Supp.2d 158, 167 (S.D.N.Y.2003));

---

[4]    Even so, it bears briefly noting that with respect to all three common law causes of action, Plaintiffs have more than sufficiently pled the first element of aiding and abetting—the underlying wrongful conduct on the part of FTX. *See, e.g.,* ECF No. 182 ¶¶ 99-120 (mechanics of scheme); 131-154 (utter lack of FTX corporate controls and management of assets, as well as FTX's public acknowledgment and evidence of its knowledge thereof); 464-465 (commission of FTX's fraud); 89, 91, 92, 469-471 (commission of FTX's fiduciary breach); 475-476 (commission of FTX's conversion).

*Smith v. Network Equip. Techs., Inc.*, 1990 WL 263846, * 7 (N.D. Cal. Oct.19, 1990) (citing *In re Thortec Securities Litig.,* 1989 WL 67429 (N.D.Cal.1989) ("[A] general averment of actual knowledge [is] sufficient to plead a claim of aiding and abetting liability")). "A defendant has knowledge of an underlying [violation] if it has a general awareness that its role was part of an overall improper activity." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003 (Fla. Dist. Ct. App. 2020) (citing *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985). Assistance is "substantial" when it "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying wrongful conduct] to occur." *Chang v. JPMorgan Chase Bank*, 845 F.3d 1087, 1097 (11th Cir. 2017).

Plaintiffs sufficiently pled Defendants aided and abetted FTX's underlying wrongful conduct because the allegations, taken as true, establish they (1) had knowledge of the underlying wrongful conduct committed by FTX and (2) provided FTX with substantial assistance in furtherance thereof.

First, through their expertise, knowledge of FTX's operations obtained through due diligence, and ongoing partnerships and close ties with FTX, Defendants came to know about FTX's fraud, including the lack of internal control, misappropriation of funds, unsupported financial statements, and the granting of exemptions and other special treatment to Alameda that enabled Alameda to margin trade and expose Plaintiffs to loss. ¶¶ 128, 251-253, 262-264, 319-334, 466. Defendants' knowledge is substantiated by the evidence that so many other actors—less close to FTX and with less wherewithal—were able to identify red flags from the same materials Defendants were given, red flags Defendants that would have the Court believe they simply somehow missed. ¶¶ 139-142, 149, 150, 154, 234-235, 328-338, 340-342. The Court should consider the complaint in its entirety: "the inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter," not whether individual allegations in isolation meet the standard. *See Tellabs, Inc. v. Makor Issues and Rights, Ltd*, 551 U.S. 308, 322 (2007). If a reasonable person could deem the inference of knowledge cogent and at least as compelling as any opposing inference, a complaint should survive. *Id.* at 324.

Defendants then provided substantial assistance to commission of the fraud with that knowledge in tow. FTX could not have reached its success without the extensive assistance of Defendants, vis-à-vis their investments, efforts to legitimize FTX in the public eye, and provision of hands-on support, guidance, infrastructure, networks, endorsements, promotion, publicity, and cover. ¶¶ 467; 303, 304, 306, 353-373. FTX knew this was true and said it was true, as it publicly lauded its ability to go from a one billion dollar valuation with no VC investment to a twenty-five billion dollar valuation after "raising the largest round…from some of the best firms in the world" in less than a year. ¶¶ 304, 352, 353, 355. FTX prominently advertised Defendants as integral to its reliability and legitimacy. *Id*. Likewise, regulators acknowledge that the venture capital firms pumping FTX with cash and repeatedly endorsing the exchange and its founder constituted necessary aid to FTX in gaining the public trust needed to carry out the scheme. ¶ 354. Finally, Plaintiffs have alleged they were harmed by Defendants' substantial assistance to FTX.

While these allegations are pled specifically as to each Defendant as set forth herein, some standout allegations bear specific mention. For example, Temasek called itself an "active investor" of FTX and publicly reported on its extensive, "multiple," purportedly successful eight months of due diligence, which included evaluating the separation of FTX and Alameda, FTX's financial information, its anti-money laundering procedures, and other regulatory compliance measures, and on conducting interviews with FTX employees, industry insiders, and SBF himself. ¶¶ 320-322. After investing, Temasek continued to advise on strategy and monitor performance. *Id*.; ¶ 343.

With respect to SoftBank, the knowledge it obtained through due diligence presumably was particularly heightened, as the company publicly professed before investing to "stay[ing] away from coins" given the risky nature of the industry. Softbank not only invested, it enlisted two executives to serve on the Advisory Board—both of whom were demoted or fired just weeks before the fraud was revealed. ¶ 366. Needless to say, these are not actions of a disinterested party.

While SoftBank was firing its insiders close to FTX right before the fraud was revealed, Sino Global made the equally suspicious choice of bringing insiders in. After the fraud went public, Sino Global (a ten-person company at the time) hired FTX financial executive Constance Wang

to join its team as an executive. ¶ 373. A party who engages in atypical business transactions or actions which lack business justification may be found liable as an aider and abettor of fraud with a minimal showing of knowledge. *See Neilson*, 290 F. Supp. at 1120 (citing *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1010 (11th Cir.1985)); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir.1975).

Basic due diligence would have uncovered FTX's commingling and misappropriating of assets—indeed, without conducting the due diligence that Temasek, Sino Global, and SoftBank touted as undertaking, other investors, exchanges, and even non-profits unfamiliar with the landscape saw that FTX didn't make sense. ¶¶ 139-142, 149, 150, 154, 234-235, 328-338, 340-342. These facts are unusual for such sophisticated firms, are suggestive of atypical business transactions, and don't comport with the idea that these parties were also conned.

## I. Plaintiffs Sufficiently Pled Their Claims Under the California Unfair Competition Law ("UCL") (Count 11).

Defendants' arguments that Plaintiffs fail to state a claim under the California UCL are wrong. MTD at 27-31. The UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200. Each "prong" provides a separate and distinct theory of liability. *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017); *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

### i. Plaintiffs state a UCL claim under the "unlawful prong."

As Plaintiffs have sufficiently alleged a violation of California's False Advertising Law (See Section J) and aiding and abetting securities fraud under California law, Plaintiffs have successfully alleged a predicate violation under the "unlawful" prong. ¶¶ 452-458; *Randall v. Ditech Fin., LLC*, 23 Cal. App. 5th 804, 811 (2018) ("The UCL's 'unlawful' prong borrows violations of other laws...and makes those unlawful practices actionable.")

Defendants argue Plaintiffs' "unlawful" claim should be dismissed because they are premised on securities transactions. MTD at 27 (citing *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004)). Since *Bowen*, however, courts have clarified that UCL claims may proceed

to the extent they are unrelated, or merely tangentially related to securities transactions. *Miller Fam. Tr. v. Nielson,* No. 2:12-CV-00913-SVW-SH, 2013 WL 12474637, at *8 (C.D. Cal. Mar. 11, 2013). This is especially true when, like here, the claims are also based on aiding and abetting securities fraud. *Benson v. JPMorgan Chase Bank,* N.A., No. 09–5272, 2010 WL 1526394, at *7-8 (N.D. Cal. Apr. 15, 2010) (refusing to apply *Bowen* to UCL claim targeting bank's alleged aiding and abetting violation of section 10(b)). And, to the extent the Court does not hold the relevant assets are securities, Plaintiffs have the right to plead their UCL claims in the alternative. *Haas v. Travelex Ins. Servs. Inc*., 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021); *Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552 at *4 (E.D. Cal. June 12, 2015) ("[A] litigant is entitled to assert inconsistent theories of recovery on both legal and equitable grounds at the pleadings stage.")

Defendants' argument that Plaintiffs have not alleged an injury in fact is completely unavailing. MTD at 28. Plaintiffs lost money and property due to the fraud that Defendants aided, which involved far more than material misstatements and omissions by either FTX or Defendants. Defendants attempt to couch Plaintiffs' UCL claims in only misstatements and omissions should be rejected as it ignores the larger scheme that they aided by promoting FTX, advising FTX on corporate governance and legal and regulatory compliance, lobbying to bring the FTX platform to market, and trading in the securities at issue to prop them up and give FTX legitimacy. Because the UCL requires that a plaintiff's economic injuries come "as a result of" the fraudulent conduct, ...a plaintiff must allege "a causal connection or reliance on the alleged misrepresentation*." Pirozzi v. Apple, Inc*., 966 F. Supp. 2d 909, 920 (N.D. Cal. 2013) (citing Cal. Bus. & Prof. Code § 17204). But for Defendants' conduct in funding and controlling and acting as agents on behalf of FTX, and but for their omissions when promoting FTX to the public, Plaintiffs could not have and would not have opened accounts on the FTX platform. Further, contrary to Defendants' assertions, to the extent Plaintiffs' UCL claims are premised on omissions, Plaintiffs are entitled to a presumption of reliance on material omissions Defendants made about FTX every time they promoted FTX, after gaining access and learning the truth about its total lack of meaningful governance and internal controls*. See Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972). Plaintiffs plausibly allege Defendants knew of the fraud yet continued to promote and sell FTX.

### ii. Plaintiffs state claims under the "unfair" and "fraudulent" prongs.

The arguments that Plaintiffs' UCL claims fail under the unfair and fraudulent prongs are equally unavailing. MTD at 30-31. A plaintiff alleges a UCL violation under the "unfair" prong by alleging an "immoral, unethical, oppressive, or unscrupulous [business practice that] causes injury…which outweighs [the utility of the practice]." *Nagrampa v. MailCoups Inc.*, No. C03-00208 MJJ, 2007 WL 2221028, at *2 (N.D. Cal. July 30, 2007). Here, Plaintiffs allege Defendants knew of SBF's fraud, nonetheless promoted FTX, and were kicked back tens of millions of dollars to trade in those tokens and assist in the scheme. ¶¶ 319-373, 485. Such conduct equally qualifies under the "fraudulent" prong of the UCL, which prohibits deceptive or misleading conduct "likely to deceive" a "reasonable consumer." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021); *see* ¶ 484. FTX was not trustworthy and Defendants knew this when they offered their money and names for legitimacy.

Defendants' argument that money damages are adequate is not well taken given the bankruptcy of FTX and the tenuous legal status and economic value of their accounts at FTX and the tokens held in those FTX accounts. MTD at 31.

Defendants' final argument that the UCL cannot apply because of an insufficient connection to California simply ignores that Plaintiffs Cabo and Henderson are from California and opened their FTX accounts in California. ¶¶ 14, 15. The UCL claim should be upheld.

### J. Plaintiffs Sufficiently Pled a False Advertising Law Claim (Count 12).

Plaintiffs adequately plead a violation of California's False Advertising Law ("FAL"). The FAL prohibits any statement in connection with the sale of goods or services "which is untrue or misleading." Cal. Bus. & Prof. Code §17500. As alleged, Defendants knew, or reasonably should have known, that their misstatements and omissions relating to the viability and safety of FTX and the results of their own due diligence activities were untrue or misleading. In the alternative, if Defendants did not carry out the robust due diligence efforts they advertised, then they knew, or reasonably should have known, that their claims relating to their due diligence were untrue or misleading. Defendants failed to adequately inform Plaintiffs and the Class of the true nature of FTX when advertising. ¶¶ 327, 369-71, 493.

Defendants' grounds for dismissal of the FAL are weak. MTD at 32-33. First, Defendants again incorrectly rely on *Bowen*, 116 Cal. App. 4th at 788, to argue that 17500 claims cannot be based on securities claims. MTD at 32 (citing *Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.,* No. C-97-4618 MHP, 1998 WL 2016634, at \*17–18 (N.D. Cal. Sept. 14, 1998)). Like *Bowen*, *Kainos* involved a discrete federal security fraud claim, not an aiding and abetting state law claim as a part of a sprawling cryptocurrency fraud, where whether securities are involved is a legal issue in the first place. Thus, reliance on *Kainos* suffers from the same fatal flaw as Defendants reliance on *Bowen*. Further, this argument ignores that Defendants aided in bringing FTX to market through direct marketing and sponsoring and participation in FTX investor conferences, including giving speeches regarding FTX and crypto, *after* conducting due diligence and knowing at the time FTX was suffered from a total, and fatal, lack of governance and internal controls. Further Defendants are alleged to have touted their FTX investments at crypto investment conferences, on podcasts and social media while omitting the truth each time they did. ¶¶ 34, 363-65, 369-71.

Plaintiffs need not prove the misrepresentation or omission was the "only," "sole," "predominant," or "decisive" cause of the injury-causing conduct, rather, they may show that the misrepresentation or omission was a substantial factor in their decision-making process. *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017), aff'd, 731 F. App'x 719 (9th Cir. 2018). If an omission is material, the fact that one would have behaved differently "can be presumed, or at least inferred." *Id*. (citations omitted). Thus, Plaintiff have adequately alleged the advertising statements that included their omissions, along with the SBF statements the Multinational VC Defendants lent their names to as "partners," including SBF's press releases upon their repeated investments in FTX and Sino Global's pitch deck for its fund with alameda and FTX were deceptive. ¶ 327.

### K. Plaintiffs Sufficiently Pled Their Claim under Florida's Deceptive and Unfair Trade Practices Act (Count 13)

Plaintiffs FDUPTA claims survive largely for the same reasons they do under the UCL. The Florida Deceptive and Unfair Trade Practices Act (FDUPTA) "protect[s] the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or

unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2); *Stewart Agency, Inc. v. Arrigo Enters., Inc*., 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019); *Baptist Hosp., Inc. v. Baker*, 84 So.3d 1200, 1204 (Fla. 1st DCA 2012). Like the UCL, a "violation of FDUPTA may be based on '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." *Glynn v. Basil St. Partners, LLC*, 2010 WL 11623025, at *5 (M.D. Fla. Sept. 21, 2010); Fla. Stat. § 501.203(3)(c). The Act is construed liberally to promote its policy of protecting the public. Fla. Stat. § 501.202(2).

To state a claim, Plaintiffs must plead (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Baptist Hosp.,* 84 So.3d at 1204.  A "deceptive act or unfair practice" may be found when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Blair v. Wachovia Mortg. Corp.,* No. 5:11-CV-566-OC-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) (quoting *Sundance Apartments I, Inc. v. General Elec. Capital Corp.,* 581 F.Supp.2d 1215, 1220 (S.D.Fla.2008)). Much like the unlawful prong under the UCL, a "*per se* violation of FDUPTA stems from the transgression of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition or unfair, deceptive, or unconscionable acts or practices.'" *Id.* (citing Fla. Stat. § 501.203(3)(c)). Defendants' argument that Plaintiffs' FDUTP claim fails because it is based on securities fails for the same reasons it does in California under *Bowen*, *supra*.

### i.  Plaintiffs sufficiently pled a claim under the FDUTPA.

As set forth in detail throughout, Plaintiffs plead a deceptive act by Defendants. Defendants confuse the second element of causation with reliance (by arguing that Plaintiffs fail to allege causation because "Plaintiffs do not allege that they even saw or read the Multinational VCs' statements." MTD at 35). But reliance is not a part of the causation standard of FDUTPA. *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (whether allegedly deceptive conduct would deceive an objective reasonable consumer is a common issue for all the putative class members, amenable to classwide proof); *Davis v. Powertel, Inc.,* 776 So.2d 971, 973 (Fla. 1st DCA 2000) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *State Office of Attorney Gen., Dep't of Legal Affairs*

*v. Commerce Commercial Leasing, LLC,* 946 So.2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.") (quotation omitted). Plaintiffs have adequately pled causation. *See* ¶ 508.

Third, Plaintiffs have adequately pled damages. ¶ 509. Here, Defendants simply recycle their incorrect reliance argument to argue that Plaintiffs suffered no damages, but this is a confusing, unsound position—Plaintiffs lost their entire crypto investments held on the FTX platform.

**L.  Plaintiffs Sufficiently Pled Negligent Misrepresentation.**

In the event that Defendants did not conduct the robust due diligence they professed to undertake, Plaintiffs have pled negligent misrepresentation as an alternative cause of action, as Defendants made public statements intended to legitimize FTX in the public eye that they knew or should have known were false, and that injured Plaintiffs as result.

Under California and Florida law, negligent misrepresentation generally requires: (1) misrepresentation of a material fact; (2) that the representation was made without knowledge as to its truth or falsity or that the representor should have known the representation was false; (3) the representor intended that the misrepresentation induce action; and (4) resulting injury from justifiable reliance on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993); *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, No. 14-CV-04058-JST, 2015 WL 179560, at *2 (N.D. Cal. Jan. 14, 2015).

Plaintiffs sufficiently plead each element. First, Plaintiffs allege that each Defendant made multiple misleading statements publicly endorsing FTX as a safe exchange. Temasek publicly touted its due diligence activity regarding the safety and viability of FTX. ¶ 513. It hosted and spoke at the Crypto Bahamas event, which was lauded as a "four-day flex of FTX" in support of the exchange. ¶¶ 363-365. SoftBank, in addition to toting its due diligence efforts, successfully lobbied the CFTC in support of FTX obtaining licensing to operate as a derivatives clearinghouse, and asserted that FTX's liquidity and protocols reduce the risk to the financial system—a statement

that became demonstrably untrue. ¶¶ 252, 263, 323; ¶ 367. Sino Global publicly endorsed both FTX's integrity and the extent of its due diligence of FTX. ¶ 34, 325, 369. Each Defendant made representations regarding the safety and legitimacy of FTX and their own due diligence activities in order to induce confidence in FTX and convince consumers to commit to using the platform, thereby increasing the value of Defendants' investments in FTX.

Second, Plaintiffs allege Defendants knew or should have known their statements were false. Defendants had access to and knowledge of FTX's corporate structure, transactions, and the nature of its internal controls through the course of due diligence. *See* Section II(A)(i). Temasek and Sino Global held seats on the board. Section II(A)(ii). As set forth herein, numerous other individuals and entities picked up on the concerning and shady nature of FTX's business practices after spending much less time and resource evaluating the company than Defendants did. Section II(A)(iv). Defendants were provided a plethora of materials that now are regarded as clearly demonstrating improper overlap between FTX and Alameda, insufficient internal controls, irregular transactions, unsubstantiated projections, questionable loans, inflated assets, untruthful statements about FTT, and more. *Id.* It's simply implausible to think that Defendants did not know— *at the very least*, they certainly should have.

Third, there is an extremely logical inference to draw from Defendants' actions that they intended their misrepresentations to be relied on. *See*, e.g., ¶ 351, ¶ 353. Defendants' enthusiastic public endorsements of FTX paid off, as FTX's user base grew exponentially between rounds of funding (which meant, in turn, Defendants' investments skyrocketed). ¶ 356. Indeed, other investors have stated relying on the word of, and professed due diligence of, other "luminary venture capital investors" that invested in FTX. ¶ 233, 351. As set forth herein, Plaintiffs were injured as result of relying on these misrepresentations about the safety and viability of FTX.

**M. Plaintiffs Sufficiently Pled Intentional Misrepresentation.**

Under California law, Plaintiffs must plead: (1) a false statement concerning a material fact; (2) the represser's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance

on the representation. *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So.3d 306 (Fla. First Dist. Court of Appeal 2011) (citing *Butler* v. Yusem, 44 So.3d 102, 105 (2010); *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985).) Justifiable reliance is not a necessary element of fraudulent misrepresentation, which means "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had [the recipient] made an investigation, unless [the recipient] knows the representation to be false or its falsity is obvious." *Butler*, 44 So.3d at 105; *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 336 (Fla.1997) (quoting *Besett v. Basnett*, 389 So.2d 995, 998 (Fla.1980)).

As set forth in detail herein, first, Plaintiffs do allege false statements by Defendants concerning material facts about the reliability and legitimacy of FTX. These include Defendants' repeated representations about the adequate extent, nature, and findings of their due diligence; that FTX's services were safe; that SBF was a visionary who was focused on decreasing risk in trading; and that FTX was an exchange the public should trust. ¶¶ 251-253, 262-264, 306-315, 319-334, 343-348, 350, 357, 362, 364-365, 368-370. These statements were not, as Defendants argue, just opinions or subjective endorsements—they were factually untrue representations about the nature of FTX's business to the public. *See Stonecreek--AAA, LLC v. Wells Fargo Bank N.A.*, 2013 WL 5416970, at *7–8 (S.D. Fla. Sept. 26, 2013) (statements not opinions when defendants knew the representations were false at the time they were made because they were aware of but concealed certain information).

As for the second element that Defendants knew their representations were false, Plaintiffs sufficiently plead that Defendants willfully turned a blind eye to what they knew and should have known and that they were incentivized to do so. Willful blindness is a viable theory of proof under Florida law which imputes actual knowledge where a person has "suspicion aroused about a particular fact, realized its probability, but deliberately refrained from obtaining confirmation because he or she wanted to remain in ignorance." *Rusty115 Corp v. Bank of Am., N.A.*, 2023 WL 6064518 (S.D. Fla. Sept. 18, 2023) (citing Florida Pattern Jury Instruction (Criminal) 3.3(h)). This theory of circumstantial proof can be applied in civil cases. *See*, *e.g.*, *Intel Corp. Inv. Pol'y Comm.*

*v. Sulyma*, 140 S. Ct. 768, 779, 206 L. Ed. 2d 103 (2020) (citing *Global-Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754 (2011)).

Third, while Defendants argue that Plaintiffs failed to point how their false factual statements evince intention to induce specific action, "[t]he law does not require that the false statement be made directly to the injured party, 'provided [that the statement is] made with the intent that it shall reach ... and be acted on by the injured party." *Kerruish v. Essex Holdings, Inc.*, No. 16-60877-CIV, 2017 WL 10457076, at \*2 (S.D. Fla. Aug. 9, 2017) (quoting *Harrell v. Branson*, 344 So. 2d 604, 606 (Fla. Dist. Ct. App. 1977)). Notwithstanding, as alleged, Defendants' statements *did* induce action in the public sphere and normalized trading on the FTX platform. As also alleged, multiple other actors in the space have publicly stated relying on the due diligence performed by FTX institutional investors. As for Defendants' argument here that Plaintiffs fail to mention an actual produce or service that FTX fraudulently induced consumers to purchase, the allegations are clear: consumers were paid a high yield for depositing fiat currency that FTX then laundered. The product, so to speak, is the high yield offered in exchange for depositing funds on the platform.

Ultimately, Defendants repeatedly argue that Plaintiffs did not sufficiently plead that they made misrepresentations to the public by attempting to rebut the factual basis for Plaintiffs' claims, but offering competing versions of the facts as alleged is improper at the motion to dismiss stage. *Ronpak, Inc. v. Elecs. for Imaging, Inc.*, 2015 WL 179560, at \*3 (N.D. Cal. Jan. 14, 2015).

### N.  Plaintiffs' Declaratory Judgment Claims Stand Because There is a Justiciable Controversy.

Defendants' four arguments in support of their request for dismissal of the declaratory judgment claims each fail. The test for the sufficiency of a complaint for declaratory judgment is not whether Plaintiffs will succeed in obtaining the decree sought, but whether they are entitled to a declaration of rights at all. *X Corp. v. Y Person*, 622 So.2d 1098, 1101-02 (Fla. Dist. Ct. App. 1993) (citing *Platt v. General Dev. Corp.*, 122 So.2d 48 (Fla. 2d DCA1960), cert. dismissed, 129 So.2d 143 (Fla.1961)). The relevant issue is whether a justiciable dispute involving plaintiffs'

rights exists. *People's Tr. Ins. Co. v. Alonzo-Pombo*, 307 So.3d 840, 843 (Fla. 3d DCA 2020); *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So. 3d 851, 859 (Fla. 1st DCA 2013); *see also People's Tr. Ins. Co. v. Franco*, 305 So.3d 579 (Fla. 3d DCA Apr. 15, 2020); *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App.4th 1559, 1582(2011).

Defendants first make the circular and unavailing argument that declaratory judgment is unavailable because there are simply no valid underlying claims. As set forth herein, Plaintiffs have adequately pled their UCL, FAL, and fraud claims for which they seek declaratory relief.

Second, Defendants take issue with Plaintiffs seeking an order for remedial measures in addition to declaratory relief, *e.g.,* restitution to the Plaintiffs and issuing public announcements. But the additional relief does not somehow detract from the need for the court to adjudicate the parties' rights as to whether Defendants illegally solicited Plaintiffs' transactions and is thus no basis for dismissal of the claim. Defendants' citation to *Garcia v. Kashi Co.*, which only clarifies what the two types of relief are, is inapt. 43 F. Supp. 3d, 1359, 1389 (S.D. Fla. 2014).

Third, Defendants maintain that Plaintiffs seeking compensatory damages forecloses a claim for declaratory relief because money damages are adequate and therefore the relief sought is duplicative. MTD at 40. There is California caselaw stating that where a party seeks compensatory damages which provide an adequate remedy at law, equitable relief may be barred. *See Flying Dutchman Park, Inc. v. City and County of San Francisco* (2001) 83 Cal.App.4th 1129, 1138 (The rule in this state is that injunctive and declaratory relief will not be granted where there is a plain, complete, speedy, and adequate remedy at law). However, the remedies here are distinct—as Plaintiffs seek monetary damages to remedy harm incurred and the prospective remedies of declaratory judgment and injunctive harm to curb future harm (¶ 535-549)—and such a determination would be improper at this early stage of litigation, *particularly* with concomitant proceedings that will impact the legal status and economic value of Plaintiffs' assets. *See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213, 1231 (S.D.Fla.2009) (explaining that "other courts have held that 'declaratory judgment is inappropriate solely to adjudicate past conduct' [citations omitted]). A justiciable conflict exists for the court to provide

declaratory relief even if the court addresses compensatory damages, given the injunctive relief claim and uncertainty of the valuation of the assets at issue.

Fourth, Defendants rely on *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC* for the proposition that Plaintiffs improperly seek factual determinations of possible tortious acts committed in the past, which is unrelated to the "purpose" of declaratory judgment. 650 F. Supp. 2d, 1213, 1231; *See* MTD at 40. But as Plaintiffs' allegations make clear, the relief sought is not meant just to adjudicate past conduct or obtain a "purely legal ruling" but is instead meant to address an ongoing and actual controversy. Plaintiffs seek a determination of whether the YBAs were illegally sold by FTX and illegally solicited by Defendants, which will determine whether there is further escalation of this conflict or further litigation. Plaintiffs seek the court's guidance in determining their rights. In neither *Medmarc* nor *Sierra Equity Group* does the court state that it cannot rely upon the facts in the course of clarifying the legal relations between the parties, as opposed to utilizing a declaratory relief action as a vehicle for resolving of past disputes of fact. Accordingly, Plaintiffs have properly alleged claims for a declaratory judgment.

### O. Plaintiffs' Request for Punitive Damages Stand.

Defendants assert no cognizable basis for their assertion that Plaintiffs' request for punitive damages should be dismissed. MTD at 40. Their first argument is it should be dismissed because it is not a stand-alone cause of action—but of course punitive damages are a form of relief. Indeed, because an allegation that Plaintiffs are entitled to a type of damages does not constitute a claim under Rule 8, it does not provide a basis for the court to dismiss a claim. *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir.1999), vacated in part on other grounds by 204 F.3d 1069 (11th Cir. 2000); *see also Bowden v. City of Franklin*, Ky., 13 F. Appx. 266, 276 (6th Cir.2001) ("Count VI is not a claim for relief but a request for punitive damages."). "[A] plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety." *Janis v. Nelson*, 2009 WL 4505935, at *7 (D.S.D. Nov.24, 2009). To the extent allegations in the complaint are styled as a claim for punitive damages, this is at worst surplusage, not grounds for dismissal of any substantive claim to which those allegations relate.

The relief Plaintiffs request is irrelevant to the determination of whether a plaintiff has stated a claim for relief, as dismissal rests not on whether Plaintiffs request a proper remedy but whether they are entitled to any remedy. *See City of L.A. v. Lyons*, 461 U.S. 95, 130 (1983).

Plaintiffs request punitive damages as an available form of relief arising out of their claims for fraud and intentional misconduct. *See Stowell v. Ted S. Finkel Inv. Servs., Inc.* 489 F. Supp. 1209, 1215 (S.D. Fl. 1980) (punitive damages may be recovered under Florida law in any action containing aggravating circumstances such as willfulness, wantonness, maliciousness, gross negligence, recklessness or fraud); *Pilliod v. Monsanto Company*, 67 Cal.App.5th 591, 642 (Punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. Courts are to determine reprehensibility by considering five factors: "[whether] the harm caused was physical as opposed to economic; [whether] the tortious conduct evidenced an indifference to or a reckless disregard of the health or safety of others; [whether] the target of the conduct had financial vulnerability; [whether] the conduct involved repeated actions or was an isolated incident; and [whether] the harm was the result of intentional malice, trickery, or deceit, or mere accident.") (internal quotes and citations omitted).

**P. Should the Court Find Any of Plaintiffs' Allegations Insufficiently Pled, Plaintiffs Request Leave to Amend.**

Defendants assert the complaint should be dismissed with prejudice without providing any authority as to why granting leave to amend would be improper. A district court's discretion to dismiss a complaint without leave to amend "is 'severely restrict[ed]' by Fed. R. Civ. P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (citations omitted)).

Plaintiffs are given at least one chance to amend where it appears a more carefully drafted complaint could state a claim. *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991); *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003). Dismissal with prejudice is only proper where there has

been undue delay, bad faith, repeated failure to cure deficiencies by previously allowed amendments; where amendment would cause undue prejudice; or, where amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *Hilderbrandt v. Butts*, 550 F. Appx. 697, 699 (11th Cir. 2013). **None** of those circumstances are present. Nor do Defendants assert any bars to Plaintiffs' claims that are clear as a matter of law. By contrast, even as to the claims Defendants characterize as frivolous, Defendants make factually dependent arguments concerning, *e.g.*, the existence of injury, reliance, and causal links between Plaintiffs' damages and Defendants' conduct.

Further, because there are parallel criminal and bankruptcy proceedings, it would be particularly problematic to dismiss any claims with prejudice given the possibility that those proceedings may result in factual grounds to make amendments. Thus, should the court conclude that any claims are subject to dismissal, Plaintiffs respectfully request that it grant leave to amend.

## IV.    <u>CONCLUSION</u>

Plaintiffs respectfully request the Court deny Temasek, Softbank, and Sino Global's motion to dismiss Plaintiffs' complaint for failure to state a claim. To the extent this Court does not deny the motion outright, it should defer a ruling pending jurisdictional discovery, for which Plaintiffs have requested leave by way of motion (ECF No. 348), or until trial.

## <u>REQUEST FOR ORAL ARGUMENT</u>

To the extent the Court agrees with any of Defendants' challenges to the pleadings, Plaintiffs request oral argument and pray that the Court will grant leave to amend as set forth above.

Dated: November 6, 2023

Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*

By: */s/ David Boies*
David Boies
Alexander Boies
Brooke A. Alexander
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
914-749-8200
dboies@bsfllp.com
aboies@bsfllp.com
balexander@bsfllp.com

*Co-Lead Counsel*

James R. Swanson, La. Bar No. 18455
Kerry J. Miller, La. Bar. No. 24562
Molly L. Wells, La. Bar. No. 36721
C. Hogan Paschal, La. Bar No. 38495
**FISHMAN HAYGOOD L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jswanson@fishmanhaygood.com
kmiller@fishmanhaygood.com
mwells@fishmanhaygood.com
hpaschal@fishmanhaygood.com

Joseph R. Saveri
Christopher Young
**JOSEPH SAVERI LAW FIRM**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com

*Counsel to Plaintiffs and the Putative Classes*

Robert Lieff
P.O. Drawer A
Rutherford, CA 94573
rlieff@lieff.com

*Counsel to Plaintiffs and the Putative Classes*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the forgoing was filed on November 6, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: <u>*/s/ Adam Moskowitz*</u>

Adam Moskowitz