# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE: FTX Cryptocurrency Exchange Collapse Litigation**

_____

*This document relates to:*

*Promoter and Digital Creator Defendants*

     *Garrison v. Bankman-Fried*, No. 22-cv-23753-KMM

     *Garrison v. Ohtani*, No. 23-cv-23064-KMM

     *Garrison v. Golden State Warriors, LLC*,
No. 1:23-cv-23084-KMM

     *Norris v. Brady*, No. 23-cv-20439-KMM

     *Garrison, et al. v. Paffrath, et al.*, No. 23-cv-21023-KMM

_____/

## PLAINTIFFS' JOINT OPPOSITION AND MEMORANDUM OF LAW IN RESPONSE TO:

### (A) THE JOINT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FILED BY THE "CELEBRITY DEFENDANTS" [ECF NO. 271]

### AND

### (B) THE JOINT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FILED BY THE "YOUTUBER DEFENDANTS" [ECF NO. 265]

### AND

### (C) DEFENDANT WILLIAM TREVOR LAWERENCE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM BY WILLIAM TREVOR LAWRENCE[ECF NO. 311]

### TABLE OF CONTENTS

Preliminary Statement .................................................................................................. 1

ARGUMENT ................................................................................................................ 4

I.     PLAINTIFFS PROPERLY PLED THEIR STATE SECURITIES CLAIMS. ....... 4

      A.   Plaintiffs Sufficiently Pled Claims Under Fla. Stat. § 517.07 (Count 1). ...... 4

      B.   Plaintiffs Sufficiently Pled Claims Under California Corporations Code § 25504.1 (Count 8). ................................................................. 10

      C.   Plaintiffs Sufficiently Pled Claims Under Oklahoma Securities Law (Count 13) ................................................................................. 11

II.    PLAINTIFFS PROPERLY PLEAD THEIR CLAIMS UNDER THE STATE CONSUMER PROTECTION LAWS. .............................................. 12

      A.   The Consumer Protection Laws Apply. ............................................ 12

      B.   The Pleading Standard Under Rule 8 Applies. ............................... 15

      C.   Plaintiffs Sufficiently Alleged Deceptive and Unfair Acts ......................... 16

      D.   Defendants' Statements Were Not Mere "Puffery." .................................. 18

      E.   Plaintiffs Sufficiently Alleged Defendants' Participation in Unfair and Deceptive Practices. ................................................................. 19

      F.   Violations of Anti-Touting Guidelines and Regulations Are Evidence of Deception. ............................................................................ 21

      G.   Plaintiffs Adequately Alleged Causation and Damages. ............................ 22

      H.   Plaintiffs Have Sought an Equitable Remedy Under Their UCL Claim. .... 23

      I.   The YouTuber Defendants' Additional Arguments Fail. ............................ 24

III.   PLAINTIFFS PROPERLY PLED CIVIL CONSPIRACY AND AIDING AND ABETTING ................................................................................ 25

      A.   Plaintiffs Allege a Civil Conspiracy. ............................................ 25

      B.   Plaintiffs Allege Aiding and Abetting. .......................................... 27

IV.   PLAINTIFFS STATED A CLAIM FOR DECLARATORY RELIEF. ............... 29

V.    THE FIRST AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS. ........ 30

i

VI.     FTX IS NOT AN INDISPENSABLE PARTY UNDER RULE 19. ................... 31

    A.     FTX Is Not a Required Party Under Rule 19(a). .......................... 31

    B.     Dismissal Is Not Warranted Under Rule 19(b). ........................... 32

VII.    PLAINTIFFS' COMPLAINT IS NOT A "SHOTGUN PLEADING." .............. 33

VIII.   PLAINTIFFS BROUGHT THEIR CLAIMS UNDER THE APPROPRIATE STATE LAWS. ................................................................................................. 34

IX.     THE PSLRA DOES NOT BAR PLAINTIFFS' CLAIMS. ................................. 35

X.      LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY. ................. 36

CONCLUSION ........................................................................................................ 37

REQUEST FOR ORAL ARGUMENT ................................................................... 37

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Oakbrook Sec. Corp.*,
  763 So. 2d 1099 (Fla. 4th DCA 1999) ..................................................................... 54

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
  608 F. Supp. 2d 1349 (S.D. Fla. 2009) ................................................................... 44

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
  938 F. Supp. 825 (S.D. Fla. 1996) ......................................................................... 12

*Bedel v. Thompson*,
  103 F.R.D. 78 (S.D. Ohio 1984) ...................................................................... 51, 52

*Ben-Yishay v. Mastercraft Dev., LLC*,
  2009 WL 6387928 (S.D. Fla. Dec. 14, 2009) ........................................................ 44

*Berkoff v. Masai USA Corp.*,
  2011 WL 13224836 (C.D. Cal. Mar. 3, 2011) ....................................................... 37

*Betz v. Trainer Wortham & Co., Inc.*,
  829 F. Supp. 2d 860 (N.D. Cal. 2011) ................................................................... 21

*BFI Waste Sys. of N. Am., Inc. v. Broward Cnty.*,
  209 F.R.D. 509 (S.D. Fla. 2002) ...................................................................... 50, 52

*BluestarExpo, Inc. v. Enis*,
  568 F. Supp. 3d 1332 (S.D. Fla. 2021) .................................................................. 44

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984) ............................................................................................... 50

*Bowen v. Ziasun Techs., Inc.*,
  116 Cal. App. 4th 777 (2004) ................................................................................ 21

*BPI Sports v. Labdoor*, Inc.,
  No. 15-62212, 2016 WL 739652 (S.D. Fla. Feb. 25, 2016) .................................. 35

*Burstein v. First Penn-Pac. Life Ins. Co.*,
  2002 WL 34186960 (S.D. Fla. Feb. 12, 2002) (denying motion ........................... 39

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ......................................................................... 35, 55

*Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*,
    42 F.3d 668 (1st Cir. 1994) ................................................................. 51

*Caster v. Hennessey*,
    781 F.2d 1569 (11th Cir. 1986) .......................................................... 24

*Cawthon v. Phillips Petroleum Co.*,
    124 So. 2d 517 (Fla. 2d DCA 1650) .................................................. 10

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*,
    447 U.S. 557 (1980) ........................................................................... 49

*Charles v. Fla. Foreclosure Placement Ctr., LLC*,
    988 So. 2d 1157 (Fla. 3d DCA 2008) ................................................ 42

*City of St. Petersburg, Fla. v. Wachovia Bank, Nat. Ass'n.*,
    2010 WL 2991431 (M.D. Fla. July 27, 2010) .................................... 18

*Coffey v. WCW & Air, Inc.*,
    2018 WL 4154256 (N.D. Fla. Aug. 30, 2018) ................................... 31

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
    332 F. App'x 565 (11th Cir. 2009) .................................................... 35

*Coleman v. CubeSmart*,
    328 F. Supp. 3d 1349 (S.D. Fla. 2018) ................................... 23, 26, 27

*Commodity Trend Serv., Inc. v. CFTC*,
    233 F.3d 981 (7th Cir. 2000) ............................................................. 50

*Contant v. Bank of Am. Corp.*,
    2018 WL 5292126 (S.D.N.Y. Oct. 25, 2018) ............................... 22, 23

*County of Salano v. Callejo Redevelopment Agency*,
    75 Cal. App. 4th 1262 (2009) ............................................................ 39

*Crowell v. Morgan, Stanley, Dean Witter Servs., Co.*,
    87 F. Supp. 2d 1287 (S.D. Fla. 2000) ................................................ 18

*De Ford v. Koutoulas*,
    2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) .................................. 13

*Demetriades v. Yelp, Inc.*,
    228 Cal. App. 4th 294 (2014) ............................................................ 29

*Denton v. Seterus, Inc.*,
    2019 WL 6721643 (N.D. Okla. Mar. 14, 2019) ................................ 40

iv

*Dinaco, Inc., v. Time Warner, Inc.*,
   346 F.3d 64 (2d Cir. 2003) ............................................................................... 10

*Dokken v. Minnesota-Ohio Oil Corp.*,
   232 So. 2d 200 (Fla. 2d DCA 1970), the court affirmed ............................................ 54

*Donofrio v. Matassini*,
   503 So. 2d 1278 (Fla. 2d DCA1987) ....................................................... 42, 43

*Energy Fluids, Inc. v. Cimarex Energy Co.*,
   2008 WL 2404226 (W.D. Okla. June 10, 2008) ..................................................... 45

*e-ventures Worldwide, LLC v. Google, Inc.*,
   188 F. Supp. 3d 1265 (M.D. Fla. 2016) .............................................................. 50

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ...................................................................................... 48

*Feng v. Walsh*,
   2021 WL 8055449 (S.D. Fla. Dec. 21, 2021) ...................................................... 20

*Fitzpatrick v. Vital Pharms., Inc.*,
   2021 WL 6776238 (S.D. Fla. June 7, 2021) ....................................................... 54

*Fla. Emergency Physicians Kang &Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*,
   526 F. Supp. 3d 1282 (S.D. Fla. 2021) ............................................................. 37

*Fuller v. Sight 'N Sound Appliance Centers, Inc.*,
   982 P.2d 528 (Ok. Civ. App. 1999) ................................................................... 41

*Garland v. Advanced Med. Fund, L.P. II*,
   86 F. Supp. 2d 1195 (N.D. Ga. 2000) ............................................................... 54

*Gavron v. Weather Shield Mfg., Inc.*,
   819 F. Supp. 2d 1297 (S.D. Fla 2011) ............................................................... 26

*Gilison v. Flagler Bank*,
   303 So. 3d 999 (Fla. Dist. Ct. App. 2020) ......................................................... 45

*Grayson v. No Labels, Inc.*,
   2021 WL 2869870 (M.D. Fla. Jan. 26, 2021) ...................................................... 42

*Groom v. Bank of Am.*,
   2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ........................................................... 12

*Harris v. Nordyne, LLC*,
   2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) ..................................................... 25

v

*HCM High Yield Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB,*
  2001 WL 36186526 & n.12 (S.D. Fla. Dec. 14, 2001) ............................................................. 51

*Hodges v. Monkey Cap., LLC,*
  2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) ..................................................................... 19, 20

*Hollis v. Stephen Bruce & Assocs.,*
  2007 WL 4287623 (W.D. Okla. Dec. 5, 2007) ......................................................................... 41

*Houghton v. Leshner,*
  2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) ......................................................................... 13

*In re Anthem, Inc. Data Breach Litig.,*
  2016 WL 3029783 (N.D. Cal. May 27, 2016) .......................................................................... 38

*In re Ethereummax  Inv.,*
  2023 WL 6787827,  (C.D. Cal. June 6, 2023) .................................................................... 22, 40

*In re Sahlen & Assocs., Inc. Sec. Litig.,*
  773 F. Supp. 342 (S.D. Fla. 1991) ........................................................................................... 10

*In re Tobacco II Cases,*
  46 Cal. 4th 298 (2009) ..................................................................................................... 30, 36

*Intel Corp. Inv. Pol'y Comm. v. Sulyma,*
  140 S.Ct. 768 (2020) ................................................................................................................ 47

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.,*
  224 So. 3d 316 (Fla. 5th DCA 2017) ................................................................................... 9, 11

*Justice v. Rheem Mfg. Co.,*
  318 F.R.D. 687 (S.D. Fla. 2016) ............................................................................................. 37

*Kahan Novoa v. Safra Nat. Bank of New York,*
  313 F. Supp. 2d 1347 (S.D. Fla. 2003) .................................................................................... 54

*KC Leisure, Inc. v. Haber,*
  972 So. 2d 1069 (Fla. 5th DCA 2008) ............................................................................... 31, 32

*Lewis v. Mercedes-Benz USA, LLC,*
  530 F. Supp. 3d 1183 (S.D. Fla. 2021) ........................................................................ 24, 30, 34

*Lombardo v. Johnson & Johnson Consumer Cos.*, Inc.,
  124 F. Supp. 3d 1283 (S.D. Fla. 2015) .................................................................................... 37

Lowe v. SEC,
  472 U.S. 181 (1985) ................................................................................................................. 50

*Lueras v. BAC Home Loans Servicing*, LP,
221 Cal. App. 4th 49 (2013) ............................................................ 24, 26

*Lynch v. Johns-Manville Sales Corp.*,
710 F.2d 1194 (6th Cir. 1983) ............................................................ 51

*Mandel v. Howard*,
2012 WL 1069182 (S.D. Fla. Mar. 29, 2012) .................................... 51

*Marino v. Broward Sheriff's Office*,
2021 WL 10384112 (S.D. Fla. Mar. 24, 2021) .................................. 56

*Marty v. Anheuser-Busch Companies, LLC*,
43 F. Supp. 3d 1333 (S.D. Fla. Sep. 5, 2014) .................................... 28

*Messer v. E.F. Hutton & Co.*,
847 F.2d 673 (11th Cir. 1988) ............................................................ 13

*Morgan Guar. Tr. Co. of New York v. Martin*,
466 F.2d 593 (7th Cir. 1972) ............................................................. 51

*Moss v. Kroner*,
197 Cal. App. 4th 860 (2011) ...................................................... 14, 15

*Odor v. Rose*,
2008 WL 2557607 (W.D. Okla. June 20, 2008) ................................ 17

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
151 Cal. App. 4th 688 (2007) ............................................................. 22

*Patterson v. Beall*,
19 P.3d 839 (Ok. 2000) ............................................................... 24, 31

*Pino v. Cardone Capital, LLC*,
55 F.4th 1253 (9th Cir. 2022) ............................................................ 13

*Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*,
942 F.3d 1200 (11th Cir. 2019) ......................................................... 53

*Pujol v. Shearson Am. Exp., Inc.*,
877 F.2d 132 (1st Cir. 1989) .............................................................. 52

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ............................................................. 55

*Robertson v. White*,
633 F. Supp. 954 (W.D. Ark. 1986) ................................................... 21

*Rogers v. Cisco Sys., Inc.*,
  268 F. Supp. 2d 1305 (N.D. Fla. 2003) ..................................................................... 18

*Rollins, Inc. v. Heller*,
  454 So.2d 580 (Fla. 3d DCA 1984) .......................................................................... 32

*Roskind v. Morgan Stanley Dean Witter & Co.*,
  80 Cal. App. 4th 345 (2000) ...................................................................................... 21

*S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*,
  89 So. 3d 264 (Fla. 3d DCA 2012) .............................................................................. 9

*Scarff v. Wells Fargo Bank, N.A.*,
  2005 WL 3454136 (N.D. Cal. Dec. 16, 2005) ............................................................ 47

*Seattle-First Nat. Bank v. Carlstedt*,
  800 F.2d 1008 (10th Cir. 1986) .................................................................................. 47

*SEC v. Bankatlantic Bancorp, Inc.*,
  2012 WL 12837291 (S.D. Fla. Dec. 7, 2012) ............................................................. 25

*SEC v. Terraform Labs Pte. Ltd.*,
  ---F. Supp.3d---, 2023 WL 4858299 (S.D.N.Y. July 31, 2023) ............................... 6, 7

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ...................................................................................................... 6

*Sheffler v. Americold Realty Tr.*,
  2023 WL 3918491 (11th Cir. June 9, 2023) ............................................................... 56

*SIG, Inc. v. AT & T Digital Life, Inc.*,
  971 F. Supp. 2d 1178 (S.D. Fla. 2013) ...................................................................... 32

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*,
  710 F.2d 678 (11th Cir. 1983) .................................................................................... 51

*Silverboys, LLC v. Joelsson*,
  2020 WL 13401917 (S.D. Fla. Nov. 30, 2020) ........................................................... 32

*Simms Inv. Co. v. E.F. Hutton & Co. Inc.*,
  699 F. Supp. 543 (M.D.N.C. 1988) ........................................................................... 54

*Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*,
  2021 WL 6118098 (M.D. Fla. Dec. 27, 2021) ............................................................ 20

*Sparta Ins. Co. v. Poore*,
  2013 WL 6243707 (N.D. Ala. Dec. 3, 2013) ......................................................... 50, 52

*State Farm Mut. Auto. Ins. Co. v. Lewin*,
  535 F. Supp. 3d 1247 (M.D. Fla. 2021) ................................................................. 44

*Stone Inv. Dakota LLC v. De Bastos*,
  2015 WL 6997979 (S.D. Fla. Nov. 12, 2015) ......................................................... 19

*Strickland v. Alexander*,
  772 F.3d 876 (11th Cir. 2014) ................................................................................ 49

*Stueve Bros. Farms, LLC v. Berger Kahn*,
  222 Cal. App. 4th 303 (2013) ................................................................................. 46

*Sun Life Assurance Co. of Canada v. Bank of Utah*,
  614 F. Supp. 3d 1323 (N.D. Ga. 2022) ................................................................... 55

*Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*,
  404 U.S. 6 .................................................................................................................. 7

*Taylor v. Costco Wholesale Corp.*,
  2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) .......................................................... 32

*Thieme v. Cobb*,
  2016 WL 3648531 (N.D. Cal. July 8, 2016) ........................................................... 38

*Thompson v. Procter & Gamble Co.*,
  2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) .............................................. 27, 28, 29

*Triton II, LLC v. Randazzo*,
  2019 WL 1777726 (S.D. Fla. Apr. 23, 2019) ......................................................... 51

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (2009) ......................................................................... 38, 39

*U.S. S.E.C. v. Pirate Inv. LLC*,
  580 F.3d 233 (4th Cir. 2009) .................................................................................. 50

*United Healthcare of Fla., Inc.*,
  526 F. Supp. ............................................................................................................ 37

*Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ................................................................................................ 49

*Vazquez v. Joseph Cory Holdings, LLC*,
  2017 WL 819919 (M.D. Fla. Mar. 2, 2017) ........................................................... 21

*Voo-Doo Daddy Productions, LLC v. Colorblind Media, LLC*,
  2023 WL 1469408 (M.D. Fla. Feb. 2, 2023) .......................................................... 49

*Wagner v. First Horizon Pharm. Corp.*,
  464 F.3d 1273 (11th Cir. 2006) ............................................................................... 25

*Walls v. Am. Tobacco Co.*,
  11 P.3d 626 (Okla. 2000) ................................................................................... 37, 38

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) ............................................................................... 53

*Wildes v. Bitconnect Int'l PLC*,
  25 F. 4th 1341 (11th Cir. 2022) ........................................................................ 12, 13

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ................................................................................... 36

*Woods v. Barnett Bank of Ft. Lauderdale*,
  765 F.2d 1004 (11th Cir. 1985) ............................................................................... 46

*Woodward v. Metro Bank of Dallas*,
  522 F.2d 84 (5th Cir.1975) ..................................................................................... 47

*Wyatt v. Union Mortg. Co.*,
  598 P.2d 45 (Cal. 1979) .......................................................................................... 47

**Statutes**

15 U.S.C. 78u-4(a)(1) .................................................................................................. 55

28 U.S.C. § 1332(d)(9) ................................................................................................ 55

California Corporations Code § 25504.1 .................................................................... 14

Fla. Stat. Ann. § 501.204 (West) ............................................................................... 23

Fla. Stat. § 501.212 .................................................................................................... 18

Fla. Stat. § 517.07 ................................................................................................... 4, 5

Fla. Stat. § 517.211(1) ...................................................................................... 5, 7, 8, 11

Okla. Stat. Ann. tit. 15, § 752(13) ....................................................................... *passim*

Okla. Stat. Ann. tit. 71, § 1-301 ............................................................................... 15

Okla. Stat. Ann. tit. 71, § 1-509 ........................................................................... 16, 17

Okla. Stat. tit. 15, § 752(2) ........................................................................................ 41

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................................ 24, 39

Fed. R. Civ. P. 11(b)(3) ................................................................................................ 28

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 56

Fed. R. Civ. P. 19(a)(1) ............................................................................................ 51, 52

Fed. R. Civ. P. 19(b) ................................................................................................ 52

**Regulations**

16 C.F.R. § 255.5 ................................................................................................ 34

Plaintiffs filed their [Corrected] Administrative Class Action Complaint ("CAC") in the "Promoter and Digital Creator" Track [ECF No. 179], which asserted claims against (a) the sports and entertainment personalities who partnered with FTX (the "Celebrity Defendants"), and (b) the creators of digital content who promoted FTX on YouTube and other social media ("YouTuber Defendants" and, with the Celebrity Defendants, "Defendants"). Plaintiffs hereby submit their opposition to the Celebrity Defendants' jointly filed motion under Rule 12(b)(6) ("the Celebrity Motion") (ECF No. 271) and the YouTuber Defendants' jointly filed motion under Rule 12(b)(6) ("the YouTuber Motion") (ECF No. 265),[1] and respectfully state as follows:

## PRELIMINARY STATEMENT

The FTX Disaster is the largest financial fraud in American history. CAC ¶ 1. FTX positioned itself as a safe and easy way for people to make money. It guaranteed attractive interest rates on any assets that customers maintained in their FTX accounts, which were called "Yield Bearing Accounts" ("YBAs"). *Id.* ¶¶ 30, 86, 93, 272. FTX developed a platform ("the FTX Platform") intuitive enough for novice investors that would place cryptocurrency trade orders and offered the YBAs. *Id.* ¶¶ at 2–3, 168. Within two years, owing to the unprecedented scale and intensity of the FTX promotors' and Brand Ambassadors' touting of FTX, the company obtained control over billions of dollars in customer assets. *Id.* Once in possession of those funds, unbeknownst to FTX customers, FTX leveraged and commingled them to engage in risky and unregulated investments. *Id.* ¶¶ 155–58. In 2022, customers sought to make withdrawals from their accounts that FTX could not cover and FTX collapsed. *Id.* ¶¶ 175–79. It filed for bankruptcy in 2022 and the scheme was over. *Id.* ¶¶ 166, 178.

---

[1]  Defendant William Trevor Lawerence joined and adopted the Celebrity Motion (ECF No. 311).

None of this could have happened without Defendants' assistance and participation. *Id.* ¶¶ 281, 272–75, 726, 728–29. The Celebrity Defendants: (1) agreed to serve as "Brand Ambassadors" for FTX; (2) engaged in an unprecedented promotional campaign designed to sell FTX's crypto-related securities and influence their fans to invest in FTX; and (3) failed to disclose the eye-watering sums of compensation FTX was paying them to tout its products. *Id.* ¶¶ 34, 195, 298, 306, 329. Their undisclosed compensation also included crypto tokens or equity in FTX, which meant that the more success they had in influencing people to trade on FTX, the more they stood to profit financially. *E.g.*, *Id.* ¶¶ 34, 295, 339, 395. Defendants gave FTX—which was an unknown "newcomer" to the cryptocurrency scene—the legitimacy it needed to obtain billions of dollars of customer assets. *See id.* ¶ 728.

The YouTuber Defendants similarly partnered with FTX to promote its platform. *Id.* ¶ 704. FTX's paid endorser program was designed to use the positive reputation of specific YouTube influencers to convince consumers that FTX was a safe place to buy and sell cryptocurrency. *Id.* ¶ 706. They promoted FTX and provided investor information and advice through their YouTube channels on an array of topics, including cryptocurrency and FTX. *Id.* ¶¶ 55, 715–719.

Defendants understood their ability to influence consumer behavior. *Id.* ¶¶ 279–81. The whole point of FTX's partnering with celebrities was to increase consumers' investments in FTX; more specifically, to assist in FTX's solicitation of investments in crypto-related securities offered on its platform. *Id.* ¶¶ 273–74, 279. And the Celebrity Defendants substantially assisted FTX's offering and sale of unregistered securities. *Id.* ¶ 284.

None of these Defendants had a reasonable basis for their promotional activities on behalf of FTX that conveyed YBAs were safe and secure investments. *Id.* ¶¶ 720–24. But FTX and Defendants knew that since FTX was a "newcomer" on the scene, it needed to rely on mass branding and sponsorship to compete with more established exchanges. *Id.* ¶ 283. Without

disclosing their compensation or financial incentives, Defendants held themselves out as genuinely believing that FTX was the place where inexperienced investors should "buy, sell, and trade in crypto safely," *id.* ¶¶ 274, 435, 461, or that FTX is the "safe and easy way" for Plaintiffs to start their "crypto journey" and that FTX is a space to "trust." *Id.* ¶ 573.

As one example of the kinds of marketing messages Defendants were paid to convey, Tom Brady and Giselle Bundchen filmed a series of national television promotions in which they stated they were "telling everyone" that "FTX is the safest and easiest way to buy and sell crypto," and that it is "better" than other investment options. *Id.* ¶¶ 301–07 (the link to the commercials is at ¶ 307). Ironically, even though Brady (and all Defendants) deny inducing people to put money in FTX, that is the exact premise of the promotions. In one commercial, Brady and Bundchen, having realized how easy it is to make money on FTX, convince everyone they can—plumbers, bartenders, beauty salon customers, officer workers, i.e., ordinary people just like Plaintiffs—to put money in FTX. *Id.* One kitchen worker is even depicted quitting his job after Brady convinces him to go all in with FTX. *Id.* While Brady's and Bundchen's touting activity was arguably among the most aggressive, all Defendants were promoting similar messages—which was that the yields offered by FTX could be a life-changing source of income for people like Plaintiffs.

But the YBAs that offered those yields were securities, and they were not registered. Both FTX and Defendants knew or should have known that the objective of their partnerships, and the promotional activity they undertook together, constituted promoting unregistered securities. *Id.* ¶¶ 720–21. Both before and after Defendants solicited investments for FTX, there was significant national attention to the fact that cryptocurrency investment products substantially identical to FTX's products constituted securities under both federal and state law. *Id.* ¶¶ 28, 206–246.

The SEC and other regulators have made it clear that if FTX YBAs were found to be "securities," all persons who promote or facilitate the sale of such investments may be liable under state and federal law. *Id.* ¶¶ 1, 27. Because YBAs (as well as other FTX products discussed below) were unregistered securities, each Defendant is liable for Plaintiffs' losses, jointly and severally. *Id.* ¶ 30. In addition, regardless of the security status of FTX's products, Defendants violated state consumer protection laws—including by violating the FTC's long-established rules and regulations regarding celebrity endorsements of cryptocurrency. *Id.* ¶ 29.

Plaintiffs invested in FTX after being exposed to the Celebrity Defendants' promotional activities, misrepresentations, or material omissions. *Id.* ¶¶ 13, 33, 48–54. The promotions should not be viewed in isolation, but rather as part of a wide-ranging conspiracy to promote and sell FTX's products. *Id.* ¶¶ 285, 786–91. Plaintiffs and Class Members lost their investments overnight when FTX imploded and former-CEO, Sam Bankman-Fried ("SBF"), filed an emergency Chapter 11 bankruptcy petition in Delaware. *Id.* ¶ 7, 13, 33. This action seeks to hold Defendants responsible for their roles in touting FTX and to make whole the victims that Defendants harmed.

## ARGUMENT

## I.   PLAINTIFFS PROPERLY PLED THEIR STATE SECURITIES CLAIMS.

### A.   Plaintiffs Sufficiently Pled Claims Under Fla. Stat. § 517.07 (Count 1).

Section 517.07 of the Florida Securities and Investor Protection Act ("FSIPA") provides that "[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security . . . is registered pursuant to this chapter." Fla. Stat. § 517.07(1). Any person who sells an unregistered security in violation of § 517.07 is liable to purchasers for recission or, if the purchasers have sold the security, for damages. *See* Fla. Stat. § 517.211(1). In addition, "every director, officer, partner, or agent of or for the seller" who "personally participated or aided in making the sale" is jointly and severally liable. *Id*. Thus, to state a FSIPA claim against

Defendants, Plaintiff must allege: (1) the FTX products were securities; (2) the securities were not registered; and (3) Defendants participated or aided in the sales as partners or agents of or for FTX. Plaintiffs have alleged sufficient facts supporting these elements.

### 1. The FTX Products Were Unregistered Securities.

It is plausible to conclude the FTX platform, YBAs, and FTT are securities based on the detailed factual allegations in the Complaint. *See* CAC ¶¶ 247–61. In their motions, Defendants do not dispute and thus concede for purposes of this motion that YBAs and FTT are securities. *See* ECF 271 at n.13 (suggesting digital tokens might not qualify "in some circumstances" but not arguing that here); ECF 265 at 6 (assuming for this motion that FTT and YBAs are securities).

In fact, Defendants dispute only that the FTX platform is a security, but they limit that argument to a conclusory sentence claiming it is "obvious" that "trading platforms or exchanges are not securities and Plaintiffs identify no authority holding otherwise." *See* ECF 271 at 16. That conclusion is *not* obvious.  The factors for what constitutes a security under S*EC v. W.J. Howey Co.*, 328 U.S. 293 (1946) are described in the Complaint. *See* CAC ¶¶ 255(a)–(d). Plaintiffs have pled facts plausibly demonstrating the FTX Platform is a security—including because customer investments through FTX were, by default, placed in YBAs, which are securities. *See id.* ¶¶ 30, 259. FTX promoted its platform to obtain customer investments, pool them together, and use them to generate returns that would be redistributed. *Id.* ¶¶ 258, 266. Defendants cannot now disassociate themselves from the reality of what FTX was selling and why the FTX Platform existed. Indeed, as the Southern District of New York recently explained in *SEC v. Terraform Labs Pte. Ltd.*, ---F. Supp.3d---, 2023 WL 4858299, at *12 (S.D.N.Y. July 31, 2023) (J. Rakoff),[2]

---

[2] All emphases in quotations are added and internal quotations and citations removed, unless otherwise stated.

whether a product constitutes a security depends on "the full set of contracts, expectations, and understandings centered on the sales and distribution" of the product. Under the analysis in *Terraform*, the FTX Platform is plausibly a security because it was created and sustained through unregistered securities, with customer investments being lent to third parties in exchange for FTT as collateral. CAC ¶¶ 157-59, 174, 181, 247–61. *See Terraform Labs*, 2023 WL 4858299, at *12 (declining "to erect an artificial barrier between the tokens and the investment protocols with which they are closely related for the purposes of [the Court's] analysis*"); see also Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co*., 404 U.S. 6, 10 n. 7 (holding that "[n]ovel or atypical methods [of violating securities laws] should not provide immunity from the securities laws.").

Plaintiffs have also alleged, without contradiction, that none of the alleged securities were registered in compliance with FSIPA. Thus, the seller of the unregistered securities (FTX) is liable to Plaintiffs under § 517.211(1).[3] Because Plaintiffs also plausibly alleged that Defendants acted as partners and agents who assisted FTX in making these sales, the motion to dismiss Count I should be denied.

### 2.      Defendants Were Partners with, or Agents of or for, FTX.

FSIPA liability extends to "every . . . partner, or agent of or for" FTX who "personally participated or aided in making the sale."  *See* Fla. Stat. § 517.211(1). Plaintiffs allege that each Defendant was a partner of FTX. *See* CAC ¶¶ 313, 323, 435, 468, 581, 610, 618, 704. Plaintiffs further allege that the objective of the partnerships included "help[ing] FTX successfully solicit or attempt to solicit investors in FTX's crypto-related securities". *See id*. ¶ 323. Defendants' own statements confirm these allegations. *See, e.g.*, CAC ¶ 313 (Bundchen quoted by Vogue Magazine as being in partner with FTX); ¶ 435 (Stephen Curry writing "I'm excited to partner with [FTX]"); ¶ 436

---

[3] Plaintiffs do not assert any claims against FTX in this action.

n.164 (FTX press statement that "announced a long-term partnership with . . . Stephen Curry" under which "Curry will receive an equity stake in FTX"); ¶ 468 n.171 (NBA press release regarding Warriors Partnership with FTX); ¶ 502 (Shaquille O'Neil writing that he was "partnering with FTX to help make crypto accessible for everyone."); ¶ 581 (SBF telling CNN "[w]e are really excited to give our partners [like Shohei Ohtani] a stake because it means we are aligned"); ¶ 610 (Naomi Osaka stating "I'm proud to partner with FTX"); ¶ 618 (alleging the compensation structure of Osaka's partnership agreement was designed to incent solicitations); ¶ 704 (alleging the YouTuber Defendants "partnered with FTX to promote its platform to investors").

The factual allegations also plausibly demonstrate that Defendants were agents. Under FSIPA "the term 'agent' is given its common meaning—'representation of a principal.'" *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 329 (Fla. 5th DCA 2017). "The elements of actual agency are: 1) acknowledgment by the principal of the agent; 2) the agent's acceptance; and 3) control of the agent by the principal." *Id.* at 329. *See also S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*, 89 So. 3d 264, 267 (Fla. 3d DCA 2012) ("[i]n examining whether agency exists, the principal's actions are the primary indication of the relationship, and such examination is generally done by the trier of fact unless there is *indisputably no connection* between the principal and the agent.").

Plaintiffs allege that Defendants "represent[ed]" the "principal," FTX, by serving as promoters and "Brand Ambassadors" for FTX. CAC ¶¶ 56–61, 63–67, 274, 280–81. FTX hired the Celebrity Defendants to run a mass-influence campaign to increase sales. CAC ¶¶ 272–274. Defendants agreed to perform that function and were financially motivated to act in FTX's interests. *Id.* ¶ 726. The promotional campaigns were coordinated by FTX out of Miami, Florida. *Id.* ¶¶ 13–15, 18–26, 32–33, 84, 730–50. FTX had the ability to review and control the messages Defendants disseminated. *See*, *e.g.*, *id.* ¶¶ 409, 453, 521, 522 (alleging FTX controlled and

orchestrated the promotional activity). Plaintiffs have therefore pled facts plausibly demonstrating that Defendants were agents of FTX.[4] At a minimum, there are factual disputes that cannot be decided at this stage. *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 (S.D. Fla. 1991) (fact question existed whether auditor PMM was an agent of securities seller).

### 3.    Defendants Aided and Personally Participated in the Sales.

Although Defendants concede they encouraged consumers to invest with FTX, they deny specifically promoting YBAs or FTT. Based on that distinction, they argue they did not "personally participate" or "aid" in selling any securities. ECF 265 at 7–8; ECF 271 at 16–17. As a threshold matter, that ignores Plaintiffs' plausible allegation the FTX Platform was also a security. Whether the FTX Platform meets the *Howey* test is a fact-based issue that Defendants have not addressed. *See* Part I.A.1, above. In addition, Defendants' argument ignores that investing in FTX by default results in opening a YBA—which Defendants concede is a security—meaning, investing in FTX by default is investing in a security. CAC ¶¶ 30, 259. The Complaint plausibly alleges that Defendants directly encouraged their followers and fans to invest through FTX, which, at a minimum, meant investing in YBAs and, thus, securities. *Id.* ¶¶ 30, 35, 49, 236, 237, 256–258, 270–286. Indeed, regardless of whether the specific words "YBAs" or "FTT" appeared in Defendants promotions, that is what they were promoting. And Defendants' personal participation

---

[4] Defendants argue being in advertisements does equate with agency, citing *Dinaco, Inc., v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003) and *Cawthon v. Phillips Petroleum Co.*, 124 So. 2d 517 (Fla. 2d DCA 1650). *Dinaco*—which was decided on a factual record, not on a motion to dismiss— discusses advertisements only in the context of apparent agency, not actual agency, which is at stake here. 346 F.3d at 69–70. *Cawthon* only pertains to "general advertisement[s]" that used the name and logo of a franchisor, which were insufficient to make a gas station operator the agent of an oil company. 124 So. 2d at 519, 521. Defendants here were allegedly paid to exploit their prestige and trustworthiness to influence the investment decisions of their fans and followers through direct promotions; thus, the facts are not equivalent to *Dinaco* or *Cawthon*.

was critical to FTX's campaign to attract investors. *Id.* ¶¶ 274, 729. Their aid and participation met the standard required by § 517.211.[5]

In addition, Plaintiffs' allegations show that Defendants "successfully solicit[ed] the purchase" of YBAs and FTT. *Id.* ¶¶ 39–54 (alleging that each Plaintiff invested in FTX "[a]s a result of the MDL Defendants' wrongdoing"). In contrast to Defendants' cases, the Eleventh Circuit's recent decision in *Wildes v. Bitconnect Int'l PLC*, 25 F. 4th 1341, 1346 (11th Cir. 2022) is instructive. In *Bitconnect*, the court held that promoting unregistered securities (cryptocurrency) through mass communications on YouTube and the internet could give rise to liability under federal securities laws. *Id.*[6]; *see also Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1257–60 (9th Cir. 2022) (adopting the *Bitconnect* court's reasoning and holding that a plaintiff "need not have alleged that he specifically relied on any of the alleged misstatements identified in the [complaint].to state a claim" for promotion of unregistered securities).[7]

---

[5] The cases cited by Defendants either support Plaintiffs' position or are distinguishable. In *Geveran*, 224 So. 3d at 328, the court merely found, based on a factual record, that "parties liable under section 517.211 have to be directly involved in a sale of securities" (as opposed to "other types of wrong-doing"). That is exactly what Plaintiffs here allege. *E.g.*, CAC ¶¶ 293–729. In *Groom v. Bank of Am.*, 2012 WL 50250, at *4–5 (M.D. Fla. Jan. 9, 2012), the defendant bank's only alleged participation was failure to monitor suspicious transaction activity. The court merely held that "an allegation of the failure to act, absent a duty to act, is not substantial assistance." In *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. 825, 828 (S.D. Fla. 1996), the court found, based on a factual record, that a law firm that the parties stipulated had done nothing more than perform standard legal services was not involved in selling the unregistered securities to meet the participation standard in § 517.211.

[6] The Youtuber Defendants contend (ECF 265 at 8) that *Wildes* is distinguishable because it applied Section 12(a)(1) of the Securities Act of 1933, rather than FSIPA. But courts in Florida have looked to federal securities laws for guidance in interpreting FSIPA. *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 676 (11th Cir. 1988).

[7] *See also De Ford v. Koutoulas*, 2023 WL 2709816, at *15–16 (M.D. Fla. Mar. 30, 2023) (plaintiffs stated a claim for sale of unregistered securities based on (1) documented alleged promotion of cryptocurrency online and through the same social media channels, and (2) allegation that promotions were done to serve spokesman's own financial interests); *Houghton v. Leshner*, 2023 WL 6826814, at *3–5 (N.D. Cal. Sept. 20, 2023) (denying motion to dismiss because "[s]olicitation is broadly construed," and a promoter "could be a statutory seller liable for

**B.      Plaintiffs Sufficiently Pled Claims Under California Corporations Code § 25504.1 (Count 8).**

To state a claim under California Corporations Code § 25504.1 for promoting unregistered securities, a plaintiff must allege: (1) Defendants provided material assistance in any violation of § 25110 (which prohibits the sale of unregistered securities), with (2) intent to deceive or defraud. *Moss v. Kroner*, 197 Cal. App. 4th 860 (2011), 872; Cal. Corp. Code § 25504.1. The first element is substantially the same as the corresponding elements under FSIPA. Those elements are therefore met under the California Securities Act for the reasons discussed above in Part I.A.1.

Plaintiffs' allegations show it is plausible that Defendants had the necessary intent. The intent requirement under § 25504.1 is defined as "the intent to induce reliance on a knowing misrepresentation or omission." *Moss*, 197 Cal. App. 4th at 872. Plaintiffs' allegations support the inference that Defendants intended to induce customers to rely on their representations about FTX while omitting that (i) Defendants had no reasonable basis for their representations about FTX's purportedly being "safe"; and/or (ii) FTX had serious problems. Plaintiffs allege, for example, that Defendants were exposed to red flags of fraud—red flags problematic enough to cause other individuals to refuse to partner with FTX. CAC ¶¶ 22, 31, 139–44, 163–64, 176, 184–98, 207–09, 265–67, 275–78, 331, 338, 363–64, 396–97, 417–18, 439–41, 462, 487–89, 537–40, 574, 599, 621–22, 647–50, 694–98, 720–24. Plaintiffs also allege that Defendants (i) had not disclosed their financial motivations to tout FTX (*e.g.*, *id.* ¶ 34 ); (ii) knew they were representing FTX to be safe, trustworthy, and superior to other exchanges when in fact, they knew that had no basis for any of those conclusions (*see, e.g.*, *id.* ¶ 330); and (iii) knew they were using their considerable fame and

_____

solicitation based on YouTube videos and Instagram posts touting the investments and rates of return.")

10

prestige to influence novice investors to make risky financial decisions based on their uninformed recommendations (*e.g.*, ¶ 279).

### C.  Plaintiffs Sufficiently Pled Claims Under Oklahoma Securities Law (Count 13).

Section 1-301(B) of Oklahoma's securities code makes it "unlawful for a person to offer or sell a security in this state" unless the security is registered or exempt. Okla. Stat. Ann. tit. 71, § 1-301. In turn, § 1-509(B) states "[a] person is liable to a purchaser if the person sells a security in violation of Section 1-301 of this title." Okla. Stat. Ann. tit. 71, § 1-509(B). For the reasons discussed above in Part I.A.1–3, Plaintiffs allege that FTX is a person liable to Plaintiffs for selling unregistered securities under § 1-509(B). In addition, § 1-509(G) extends liability "jointly and severally" to other categories of individuals identified in subsections (G)(3), (4), and (5) who "materially aid[] the conduct giving rise to the liability." Okla. Stat. Ann. tit. 71, § 1-509(G). These categories individuals include people "associated with" the seller, "agents," and, most broadly, "[a]ny other person" who provided material aid to "the conduct giving rise to liability." *Id*. § 1-509(G)(3)–(5).[8]

Defendants are liable under the Oklahoma securities law because they sold unregistered securities, promoted false and deceptive messages about securities and the FTX platform, and failed to disclose material information. *See, e.g.*, CAC ¶¶ 272–86. In addition to being "agents" of FTX and individuals "associated with" FTX, Defendants are also "[a]ny other person[s]" who materially aided in FTX's violation of the Oklahoma securities laws. § 1-509(G)(3)-(5).

---

[8] Defendants claim the Oklahoma securities act also requires the Plaintiffs to plead that Defendants knew, or "in the exercise of reasonable care" could have known, of the conduct giving rise to the violation. Okla. Stat. Tit. 71, § 1-509(B), (G)(4)–(5). That is incorrect. The applicable provisions state that the burden of proof is on the *Defendants* to show they did *not* know of the conduct giving rise to the violation and could not have known about it even with the exercise of reasonable care. *Odor v. Rose*, 2008 WL 2557607, at *4 (W.D. Okla. June 20, 2008).

Defendants were an essential component of FTX's sales campaign, and they were remarkably effective in increasing FTX's sales. *See* CAC ¶¶ 23, 26, 274 281. Plaintiffs have therefore stated a claim against Defendants under the Oklahoma securities law.

## II.   PLAINTIFFS PROPERLY PLEAD THEIR CLAIMS UNDER THE STATE CONSUMER PROTECTION LAWS.

Defendants claim that Plaintiffs have failed to allege a claim under Florida, Oklahoma, and California consumer protection laws.  They are wrong.

### A.   The Consumer Protection Laws Apply.

Defendants incorrectly argue that the consumer protection claims should be dismissed based on a theory that the consumer protection statutes purportedly have an exception for cases involving securities.  ECF 271 at 12, 16–17; ECF 265 at 6–8, 11–12.

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") itself does not recognize any safe harbor for securities, even though the Florida legislature exempted certain other regulated activities from FDUTPA, such as national banking. *See* Fla. Stat. § 501.212. Only a small number of district courts have addressed this issue. Even in cases cited by Defendants, in which courts held that FDUPTA does not cover the claims at issue, the courts acknowledged the absence of any binding authority for that conclusion. *See Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1315 (N.D. Fla. 2003) ("Whether FDUTPA applies to claims related to securities transactions has not been addressed by any Florida court."); *see also Crowell v. Morgan, Stanley, Dean Witter Servs.*, Co., 87 F. Supp. 2d 1287, 1294 (S.D. Fla. 2000); *City of St. Petersburg, Fla. v. Wachovia Bank, Nat. Ass'n.*, 2010 WL 2991431, at *3 (M.D. Fla. July 27, 2010).

More recent opinions (which Defendants did not acknowledge in their motions) have concluded FDUTPA does *not* exclude claims relating to securities, consistent with the statute's plain language. *See Stone Inv. Dakota LLC v. De Bastos*, 2015 WL 6997979 at *4 (S.D. Fla. Nov.

12, 2015) (denying motion to dismiss FDUTPA claim in case involving sale of unregistered securities); *Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *7–8 (S.D. Fla. Aug. 14, 2018). In *Hodges*, the court wrote that "a violation of the securities laws is a per se violation of FDUTPA," reasoning that "the securities laws are designed for consumer protection and proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." *Hodges*, 2018 WL 9686569, at *7; *see also Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2021 WL 6118098, at *7 (M.D. Fla. Dec. 27, 2021) (denying summary judgment on claims of securities fraud and FDUTPA, quoting *Hodges*).

The Court, moreover, need not decide this question at this stage in the litigation, because the consumer protection claims are not predicated solely on Defendants' sale or promotion of securities. This distinguishes the cases cited by Defendants, which involved claims of federal securities fraud under Rule 10b and parallel consumer protection claims. In those cases, defendants' "deceptive" acts underpinning the FDUPTA claims were the same as the conduct giving rise to their alleged liability under federal securities law.[9]

Here, Defendants violated FDUTPA through conduct that "would either deceive an objectively reasonable person or offend public policy in a way that is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Vazquez v. Joseph Cory Holdings, LLC*, 2017 WL 819919 (M.D. Fla. Mar. 2, 2017). Plaintiffs' securities claims, by contrast, do not depend

---

[9] *See Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) (FDUTPA claim predicated on 10(b) securities and related fraud); *Betz v. Trainer Wortham & Co., Inc.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011) (UCL claim predicated on federal 10(b) securities fraud); *Robertson v. White*, 633 F. Supp. 954, 960–64, 969, 974–76, 978 (W.D. Ark. 1986) (OCPA claim predicated on state and federal securities fraud claims).

on proof of these elements. Indeed, Plaintiffs' claims under FDUPTA, the UCL, and OCPA[10] target unfair and deceptive conduct that is not identical to the conduct underpinning the securities claims. For example, Plaintiffs' consumer protection claims allege that Defendants deceptively represented FTX to be safe, reliable, and superior to other investment options, *e.g.*, CAC ¶¶ 30, 82, and that they trusted FTX and were investing in it. *Id.* ¶ 395. They also deceptively failed to disclose their compensation and financial motivation for touting FTX, in violation of FTC disclosure guidelines. *Id.* ¶ 34. These kinds of deceptive acts fall squarely within the consumer protection statutes.

Further, Defendants themselves intend to dispute that FTX's products constitute securities. *See* ECF 271 at 12 n.10, 16–17 & n.3; ECF 265 at 7–8. Whether they are securities will have to be decided based on a factual record, and, for that reason alone, Defendants' overbroad legal argument about the scope of FDUPTA, the UCL, and the ODTPA should be rejected. *See, e.g.*, *Contant v. Bank of Am. Corp.*, 2018 WL 5292126, at *9 (S.D.N.Y. Oct. 25, 2018) ("[A]lthough FX instruments are analogous to securities in some respects, Plaintiffs do not have recourse under federal securities or antitrust laws. Defendants cite nothing to suggest that the Florida legislature meant to exempt the conduct in question from FDUTPA."); *In re Ethereummax Inv.*, 2023 WL 6787827, at *16–17, (C.D. Cal. June 6, 2023) ("[T]he Court cannot conclude at this stage that the

---

[10] Celebrity Defendants address the UCL and OCPA by citing a single case from California and Oklahoma. But these cases are distinguishable for the same reasons as the Florida cases. In addition, Defendants' California case, *Betz v. Trainer*, relies on comments from *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777 (2004) which multiple appellate cases contradict. *See Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345, 355 n.8 (2000), *as modified on denial of reh'g* (May 26, 2000) ("The UCL contains no language supporting an exclusion for securities, and under the plain language of the UCL, we cannot create such an exclusion."); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715–16 (2007) (stating that the finding above from *Roskind* was not dicta).

State Consumer Law claims are barred by the securities law claims because whether the cryptocurrency at issue here is a "security" is a hotly contested topic . . . .").

At bottom, Defendants' alleged deceptive acts are *not* beyond the scope of the consumer protection regulations. And, at a minimum, it would be premature for the Court to conclude otherwise while there are factual disputes about what products Defendants were promoting, whether they were securities, and whether their conduct is even regulated by securities law. *Contant*, 2018 WL 5292126 at *9.

**B.     The Pleading Standard Under Rule 8 Applies.**

The elements of a FDUTPA claim are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018); Fla. Stat. Ann. § 501.204 (West).  The elements of a claim under the OCPA and UCL are substantially the same.[11]

Defendants incorrectly contend these claims must be pled with particularity under Rule 9(b). In fact, as many courts in this circuit[12] have expressly recognized, Rule 8—not Rule 9(b)—

---

[11] An OCPA claim must allege "(1) that the defendant engaged in an unlawful practice…; (2) that the challenged practice occurred in the course of [the] defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Ok. 2000). The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent . . . . A fraudulent practice under the UCL require[s] only a showing that members of the public are likely to be deceived and can be shown even without allegations of actual deception, reasonable reliance and damage . . . . To have standing to sue under the UCL, a private [class representative] must . . . . (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by the unfair business practice or false advertising that is the gravamen of the claim." *E.g.*, *Lueras v. BAC Home Loans Servicing*, LP, 221 Cal. App. 4th 49, 80–82 (2013) (cleaned up); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312–28 (2009) (explaining that standing requirements are not substantive elements of a UCL claim); *Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 303 n.10 (2020) (explaining split on "unfair" prong).

[12] As this is a procedural issue, Eleventh Circuit law controls over that of sister circuits or states. *See, e.g.*, *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) ("[U]nder *Hanna* a federal

categorically applies to consumer protection claims. *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1231–34 (S.D. Fla. 2021) (collecting cases and analyzing the correct standard).[13] And at a minimum, even Defendant's cases acknowledge 8(a) is the appropriate standard for non-fraud-based FDUTPA claims. Regardless, the Plaintiffs have alleged facts sufficient to state a claim under the consumer protection laws under either pleading standard.

### C.  Plaintiffs Sufficiently Alleged Deceptive and Unfair Acts.

Plaintiffs alleged Defendants engaged in deceptive and unfair acts in the course of their business. A "deceptive act" is one that is "likely to mislead [a] consumer acting reasonably in the circumstances." *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla 2011); *accord* Okla. Stat. Ann. tit. 15, § 752(13). This is an objective test and therefore a "plaintiff need not show actual reliance on the representation or omission at issue." *Coleman*, 328 F. Supp. 3d at 1361; *accord Lueras*, 221 Cal. App. 4th at 81 ("[A UCL claim] requires only a showing that members of the public are likely to be deceived and can be shown even without allegations of actual deception, reasonable reliance and damage.") (cleaned up). A statement can violate

---

court need not adhere to a state's strict pleading requirements but should instead follow Fed.R.Civ.P. 8(a)."); Restatement (First) of Conflict of Laws § 585 ("All matters of procedure are governed by the law of the forum.")

[13]  Defendants rely on *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 & n.2 (11th Cir. 2006), which was not a FDUPTA case. *Wagner* held only that Rule 9(b) applied to plaintiffs' claims under 15 U.S.C. §§ 77k(a) and 77l(a)(2) when the misrepresentation justifying relief under the Securities Act was separately alleged to support a claim for securities fraud under the Exchange Act and Rule 10b-5. *Id.* at 1277. *Wagner* does not apply here because (1) Plaintiffs have not separately raised fraud claims against Defendants, and (2) FDUTPA claims are unlike the non-fraud claims at issue in *Wagner* because, as courts have acknowledged, FDUTPA prohibits a wide range of conduct and therefore the concerns behind Rule 9(b)'s particularity requirement "categorically do not apply to claims under FDUTPA" even if fraudulent conduct is somehow "implicate[d]." *See Harris v. Nordyne, LLC*, 2014 WL 12516076, at *4–5 (S.D. Fla. Nov. 14, 2014) (citing *Wagner*); *SEC v. Bankatlantic Bancorp, Inc.*, 2012 WL 12837291, at *2 (S.D. Fla. Dec. 7, 2012) (emphasis added) ("*Wagner* repeatedly limits its holding to cases where the nonfraud claim *requires* proof of a misrepresentation.").

FDUTPA even if it is "technically or literally true" if it nevertheless is likely to mislead—the court must "consider the net impression created[, which] . . . . is an issue of fact." *Coleman*, 328 F. Supp. 3d at 1361 (S.D. Fla. 2018). "Ordinarily, the question of whether a business practice—such as a statement made on a product's packaging—is deceptive, is a question of fact not appropriately resolved on a motion to dismiss." *Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018).

Plaintiffs' detailed pleading satisfies the "deceptive act" element where they allege, as just a few examples, that Defendants:

- Extolled FTX's safety, trustworthiness, and compliance with regulations. CAC ¶¶ 8, 30, 82, 93, 139–44, 190, 272–74, 304, 330, 344–45, 351, 354–55, 438, 461, 478, 567, 573, 635–40, 648, 695, 705, 716, 703–05, 716–18.

- Misrepresented they had done due diligence and were investing their own money in FTX (apart from payments for their promotions). *Id.* ¶¶ 271, 274, 286, 330, 350–54, 363, 377, 395, 406, 415, 502, 538, 567, 587, 598, 610.

- Represented that FTX's products were safe investments for first-time investors without expert advice or presented themselves as qualified to give that advice. *Id.* ¶¶ 37, 274, 330, 394, 416, 434–35, 438–567, 637–40, 502, 520, 527, 536, 573, 610–12, 619, 687, 704–19.

- Failed to disclose that they were paid promoters, the amount they were paid, that their compensation would increase the more people invested in FTX, and deceptively presented themselves as organically and genuinely recommending FTX. *Id.* ¶¶ 34, 37, 298, 306, 312, 329, 373–74, 381, 393, 395, 408–09, 414–16, 433, 442–43, 451–53, 460, 486, 520–25, 535, 567, 572, 582, 597, 604, 758, 764–66, 716 n.288.[14]

Rather than confronting these allegations, Defendants cherry pick certain statements that they claim are non-actionable. But Plaintiffs plainly alleged that each Defendant engaged in actionable deceptive acts—including promoting FTX as a safe investment and failing to disclose their paid relationships and financial incentives.

---

[14] These detailed allegations do not even account for Defendants' prior statements promoting FTX and its securities that they have deleted, but which may be revealed in discovery. *See* CAC ¶¶ 284, 311, 321–22, 344, 346–47, 386, 411, 591, 716; *see also* Fed. R. Civ. P. 11(b)(3).

17

### D.    Defendants' Statements Were Not Mere "Puffery."

Defendants also argue (*e.g.*, ECF 271 at 25) that their misrepresentations are mere "puffery." They are wrong. Representations or omissions are not mere "puffery" when they "are ones to which a reasonable consumer could rely." *Thompson v. Procter and Gamble Co.*, 2018 WL 5113052, *2 (S.D. Fla. Oct. 19, 2018) (finding fact issues precluded motion to dismiss FDUPTA claim). Courts "do not assess the individual representations in a vacuum" and focus instead on whether a statement would have "contributed . . . to the deceptive context . . . as a whole." *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. Sep. 5, 2014) (statement of "German Quality" not puffery); *see also Thompson*, 2018 WL 5113052 at * 2 (statements that detergent is "trusted" and "mild" are not puffery even if not "empirically verifiable."); *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014) (statement about providing the "most trustworthy" reviews not puffery when "intended to induce consumer reliance"). Defendants made factual statements that contributed to the deceptive context and that reasonable consumers would have relied on, including:

- "[FTX] met my own rigorous standards of compliance . . . . It has some of the best crypto exchange offerings I've seen on the market. FTX leverages best-in-class tech to provide a quality trading experience with low fees for both professional and retail investors alike, while at the same time providing the reporting platform that serves both internal and regulatory compliance requirements." CAC ¶ 274.

- "[FTX US] is 100% operational, nothing is going on with FTX US." *Id*. ¶ 718.

- "I'm not an expert, *and I don't need to be*. With FTX I have everything I need to buy, sell, and trade crypto *safely*." *Id.* ¶¶ 274, 435, 461 (emphasis added) (part of entire campaign centered around hashtag or phrase #notanexpert).

- "[H]e has two parents that are compliance lawyers.  If there's ever a place I could be that I'm not gonna get in trouble it's gonna be at FTX.  So you know, that's, they're great people, but he gets the job in compliance which is why he's working so hard to get regulation." *Id.* ¶¶ 354.

- "all in," "100% in," and "I'm in," and other variations implying defendants were investing their own money, as part of the "You in?" campaign. *Id.* ¶¶ 8, 286, 301, 330, 377, 395, 415, 502, 526, 567, 610.

- "[FTX is] the *safe* and easy way to start your crypto journey" and a "long-term partner in the space that I could trust." *Id.* ¶ 573.

Whether these statements are assessed in isolation or in combination with Defendants' additional deceptive omissions and non-disclosures, they are actionable under FDUPTA.

### E.   Plaintiffs Sufficiently Alleged Defendants' Participation in Unfair and Deceptive Practices.

Defendants contend (ECF 271 at 26–27; ECF 265 at 12) they are not liable because they deny knowing about or participating in FTX's financial fraud. This is wrong for three reasons. **First**, Defendants' assertion that they could not possibly have known about FTX's improper conduct is contradicted by the factual allegations in the Complaint, which show that Defendants were exposed to red flags of fraud that were significant enough to deter other promoters from working with FTX. *See supra* Section I.B.

**Second**, it is immaterial whether Defendants knew about FTX's financial fraud. Numerous cases confirm that Plaintiffs need not prove a "knowledge" element under their consumer protection claims—but instead, only that Defendants participated in unfair or deceptive conduct. *See Lewis*, 530 F. Supp. 3d at 1232–33 (S.D. Fla. 2021) (collecting cases and analyzing statutory text); *accord In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (holding that knowledge of falsity is not an element of UCL claim); *Patterson*, 19 P.3d at 847 n.12 (noting that Okla. Stat. titl. 15 §§ 752(13) does "not speak to the necessity of an intent to deceive, but . . . that the alleged deceptive actions have the *capacity* to deceive the consumer.").

**Third**, the only "participation" required is being "a direct participant in the actions that constituted a violation of the FDUPTA," *i.e.*, the promotional practices that were unfair and deceptive. *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008); *see also Coffey*

19

*v. WCW & Air, Inc.*, 2018 WL 4154256, at *4 (N.D. Fla. Aug. 30, 2018). The Defendants clearly participated because they were the ones who made the deceptive statements. At most, Defendants' cases stand for the unremarkable position that an individual is not *vicariously* liable for statements by corporate employers or others they had no control over.[15] But "it is[, of course,] unnecessary to pierce the corporate veil [when] the individual defendant was a direct participant in the [predicate act]." *Id.* (citing *Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984). And inasmuch as participation beyond deceptive statements is necessary, Plaintiffs have also alleged Defendants furthered the scheme of FTX Insiders by:

- Displaying the FTX name and logo in venues, on clothing, verbally, *and even by renaming* themselves or their venues. CAC. ¶¶ 15–24, 282, 426, 468–69, 474–80, 491–94, 506–19, 603, 613–14, 625, 667–79, 686, 691, 727, 744;

- Entering into arrangements to provide exclusive NFTs, other digital and physical merchandise, and promotional giveaways through FTX or bearing the FTX logo. *Id.* ¶¶ 320, 379, 423, 442–46, 468, 476, 478, 480–82, 510–11, 524, 527, 657, 667, 683–84;

- Participating in various FTX "charity" projects, interviews, and podcasts, which were a critical part of FTX and Insider Defendants ability to falsely present themselves as trustworthy individuals motivated by "effective altruism" rather than personal profit. *Id.* ¶¶ 93–95, 308–22, 348–55, 370, 380, 383, 385–86, 407–09, 436, 442–43, 478, 528–31, 538–44, 566, 642, 741–46.

In view of the foregoing, Defendants cannot reasonably dispute that they personally participated in the conduct giving rise to the consumer protection violations.

---

[15] *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1195–96 (S.D. Fla. 2013) (citing *KC Leisure*) (corporate officers not personally liable under FDUTPA for corporation's failure to provide required franchise disclosures when there was no showing the officers controlled the corporation's non-disclosure); *Silverboys, LLC v. Joelsson*, 2020 WL 13401917, at *8–9 (S.D. Fla. Nov. 30, 2020) (citing *KC Leisure*) (two companies not liable for third company's independent fraudulent alteration of first two's invoices before passing them onto consumers); *Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *3 (E.D. Cal. Oct. 8, 2020) (Costco not liable for failing to disclose Roundup carcinogenic because "a retailer is not required to police each and every [manufacturer] representation made by the products on its shelves.").

### F.   Violations of Anti-Touting Guidelines and Regulations Are Evidence of Deception.

Defendants argue (ECF 271 at 27–28) that violations of FTC or SEC "anti-touting" guidelines and regulations do "not constitute a *per se* violation" of any consumer protection statute. ***First***, that is not universally true, as demonstrated by one of Defendants' main authorities, *SIG Inc. v. AT&T*, *supra*, in which the plaintiff's only evidence supporting its FDUTPA claim was defendants' violation of an FTC disclosure guideline. ***Second***, the Court need not decide the issue under Rule 12(b)(6), because Plaintiffs have not asserted a "per se" claim in the first place. There is no dispute that, at a minimum, violations of disclosure regulations can constitute *evidence* of unfair or deceptive practices, regardless of whether such evidence would rise to the level of a "per se" violation of a consumer protection statute.

Notably, under the relevant FTC guidelines, Defendants were required to "fully disclose" their connections to FTX if such connection "might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience)." 16 C.F.R. § 255.5. Further, when a celebrity promotes a product in a manner or place where "[c]onsumers might not realize that a celebrity . . . has been paid for doing so"—such as on "a social networking site"—there must be "a clear and conspicuous disclosure that the [celebrity] has been engaged as a spokesperson" or else the endorsement "is likely to be deceptive." *Id.* at Example 3. That is exactly the type of deceptive touting that Plaintiffs allege. Defendants made endorsements on YouTube and social media disguised as objective financial advice, they promoted FTX without disclosing they were being paid to do so (and without disclosing that their own pecuniary interests depended on inducing more customers to invest in cryptocurrency), and they coordinated with FTX to make their promotions appear to be genuine and spontaneous, when in reality they were scripted and coordinated. CAC ¶¶ 37–38, 381, 408–09, 451–53, 520–22, 567, 704–19

### G.     Plaintiffs Adequately Alleged Causation and Damages.

Defendants incorrectly claim that Plaintiffs did not allege causation.  "[F]ederal courts and Florida courts alike have stated that 'FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.' . . . . [but] 'simply prove that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'"  *Lewis*, 530 F. Supp. 3d at 1233–34 (S.D. Fla. Mar. 30, 2021) (quoting *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009), and then quoting *BPI Sports v. Labdoor*, Inc., No. 15-62212, 2016 WL 739652, at *5 (S.D. Fla. Feb. 25, 2016)); *accord* Okla. Stat. Ann. tit. 15, § 752(13) (emphasis added) ("'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived *or could reasonably be expected to deceive or mislead a person to the detriment of that person*."). Defendants' claim that Plaintiffs must "allege which, if any, statements they were exposed to," ECF 265 at 14; ECF 271 at 12, "simply seek[s] a reliance inquiry by another name." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016).[16]

Defendants' promotions had the "capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs' allegations

---

[16] The standards under the UCL are substantially similar. The California Supreme Court has held that when a defendants' deceptive conduct or misrepresentations are alleged to be "part of an extensive and long-term advertising campaign," as Plaintiffs have alleged here, a plaintiff is "not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements," nor "that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298 at 328 (2009). Instead, a plaintiff establishes a "presumption" of reliance by showing the misrepresentation was material and "that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id*. at 326–27. This makes the reliance inquiry similar to FDUTPA's damages inquiry. In addition, under the UCL, allegations of damages and causation are purely "procedural" standing requirements, and the recent addition of these procedural requirements to the statute "left entirely unchanged the substantive rules." *Id*. at 313–14. Thus, they have no bearing on the Rule 9(b) arguments.

22

show that a reasonable consumer would have been likely to be confused and deceived by those promotions. And indeed, many consumers *were* deceived. *See, e.g.*, CAC ¶¶ 653–59 (cataloguing huge spike in FTX downloads after deceptive Super Bowl ad); ¶¶ 38, 704–19 (explaining outsized influence of social media due to perceived genuineness). Defendants' promotions (i) enabled FTX to successfully solicit customers, who would not have invested their money in the essentially worthless FTX platform and products if they had known they were investing in high-risk securities, as opposed to "safe" investments; and (ii) injured Plaintiffs as a result. *See* CAC ¶¶ 34, 39–54, 69–75, 285, 333, 369, 398, 419–20, 451, 463, 492–93, 506, 541, 574, 600, 607, 643, 650–59, 691, 713–17, 753, 756, 764, 782–83, 815, 847–48.[17]

## H.    Plaintiffs Have Sought an Equitable Remedy Under Their UCL Claim.

Defendants are wrong that Plaintiffs cannot seek restitution through their UCL claim. Under California law, "a plaintiff who paid a third-party money (i.e., money in which the plaintiff had a vested interest)" may seek "UCL restitution from a defendant whose unlawful[, unfair, or deceptive] business practice caused the plaintiff to pay that money." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1338 (2009); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *2–3, 8, 30–32 (N.D. Cal. May 27, 2016) (allowing UCL restitution claim against defendant where plaintiff's insurer indirectly used plaintiff's insurance premiums to pay

---

[17] Defendants' reliance on *Lombardo v. Johnson & Johnson Consumer Cos.*, Inc., 124 F. Supp. 3d 1283 (S.D. Fla. 2015); *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687 (S.D. Fla. 2016); *Berkoff v. Masai USA Corp.*, 2011 WL 13224836 (C.D. Cal. Mar. 3, 2011); *Fla. Emergency Physicians Kang &Assocs., M.D., Inc. v. United Healthcare of Fla., Inc.*, 526 F. Supp. 3d 1282 (S.D. Fla. 2021); and *Walls v. Am. Tobacco Co.*, 11 P.3d 626 (Okla. 2000) is misplaced. In these cases, the defendants had not plausibly alleged any injury directly *or indirectly* resulting from Defendant's conduct. *Lombardo*, 124 F. Supp. 3d at 1289–90; *Rheem Mfg. Co.*, 318 F.R.D at 696–98; *Berkoff*, 2011 WL 13224836, at *6; *United Healthcare of Fla., Inc.*, 526 F. Supp. at 1301–02; *Walls*, 11 P.3d, at 630. Here, by contrast, Defendants made deceptive promotions directly to Plaintiffs, and Plaintiffs plausibly alleged that a reasonable person would rely on or be confused by them, and that they were harmed as a result.

defendant); *Thieme v. Cobb*, 2016 WL 3648531, at *2, *7 (N.D. Cal. July 8, 2016). "A person is enriched if he receives a benefit at another's expense. . . . For a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution." *Troyk*, 171 Cal. App. 4th at 1338 (quoting *County of Salano v. Callejo Redevelopment Agency*, 75 Cal. App. 4th 1262 (2009). Parties are entitled to seek equitable remedies in the alternative to money damages, as Plaintiffs have done here, and it is inappropriate for a court to dismiss claims for such alternative relief at the motion to dismiss stage. *See* Fed. R. Civ. P. 8(a)(3); *Burstein v. First Penn-Pac. Life Ins. Co.*, 2002 WL 34186960, at *8 (S.D. Fla. Feb. 12, 2002) (denying motion to dismiss where plaintiff sought equitable relief as alternative to money damages because case was "in its early stages" and plaintiff was entitled to pursue "alternate claim for relief").

Plaintiffs here allege a proper basis for restitution as an alternative remedy: Defendants undertook unfair and deceptive acts in partnership with FTX, Plaintiffs were harmed by those acts because they invested their money in FTX and its products, and Defendants richly profited from this arrangement because of the money they received from FTX. *See* CAC ¶¶ 11, 35, 296–99, 326–28, 356–60, 373, 390–92, 412–13, 425, 458–59, 475–76, 485, 532, 562, 570–71, 580–81, 595–96, 606, 615–20, 643–46, 691–63. Plaintiffs thus properly seek restitution as an alternative remedy and dismissal of such claims at this stage would be improper. *See In re Ethereummax Inv.*, 2023 WL 6787827, at *4, *6, 24–25 (C.D. Cal. June 6, 2023) (allowing claim for restitution under UCL to proceed against celebrity promoters of cryptocurrency).

## I.     The YouTuber Defendants' Additional Arguments Fail.

The YouTuber Defendants' claim (ECF 265 at 11 n.7) that the OCPA does not apply to "acts [of] a third-party" relies on a mischaracterization of the precedent. The line of cases on which the YouTube Defendants rely narrowly holds "that the OCPA generally does not apply to *debt collection activities* performed by persons or entities *uninvolved in the underlying consumer*

24

transaction." *Denton v. Seterus, Inc.*, 2019 WL 6721643, *8 (N.D. Okla. Mar. 14, 2019); *accord Hollis v. Stephen Bruce & Assocs.*, 2007 WL 4287623, *4 (W.D. Okla. Dec. 5, 2007). But Defendants are not debt collectors, and they were not "uninvolved in the underlying consumer transaction"—they promoted FTX and its securities and motivated Plaintiffs to invest in them. The OCPA unquestionably applies to that type of promotional activity. Okla. Stat. tit. 15, § 752(2) ('Consumer transaction' means the advertising . . . of any services or any property, tangible or intangible . . . ."); *Fuller v. Sight 'N Sound Appliance Centers, Inc.*, 982 P.2d 528, 533 (Ok. Civ. App. 1999) (holding defendant's deceptive scheme and practices were actionable under the Oklahoma securities act).

## III. PLAINTIFFS PROPERLY PLED CIVIL CONSPIRACY AND AIDING AND ABETTING.

### A. Plaintiffs Allege a Civil Conspiracy.

Civil conspiracy requires (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Grayson v. No Labels, Inc.*, 2021 WL 2869870, at *7 (M.D. Fla. Jan. 26, 2021). "Each coconspirator need not act to further a conspiracy; each need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (simplified). "The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA1987).

Defendants incorrectly assert that Plaintiffs fail to allege what unlawful act Defendants conspired to do. Plaintiffs allege Defendants actively participated in the scheme where (i) each promotion and advertisement ***assisted and furthered*** the conspiracy; (ii) Defendants acted as a

coconspirator by assisting in the promotion of the FTX and its products; (iii) Defendants had partnership deals with FTX and were paid in cash, cryptocurrency, and FTX equity, which gave them financial incentives to induce as many customers as possible to invest in FTX and grow the crypto market; (iv) Defendants were exposed to red flags of fraud that did or should have put them on notice that consumers investing in FTX would be exposed to serious, undisclosed risks; and (v) Defendants promoted unregistered securities through mass communications over social media and television, when "motivated at least in part by their own financial interests or those of the securities' owner," which was held to be actionable in both *Wildes* and *Pino*. *See supra* Part I.A.3. Plaintiffs' allegations are therefore not limited to Defendants merely appearing in advertisements—they alleged that Defendants coordinated with FTX to perpetrate the mass sale of unregistered securities amidst serious, undisclosed financial motivations, and undisclosed red flags concerning the risk of investing in those securities.

In addition, Plaintiffs need not plead with specificity how each coconspirator furthered each part of the large FTX conspiracy, as Defendants claim. Rather, each individual's participation may be inferred from circumstantial evidence. *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987). That Defendants' numerous misrepresentations and omissions to class members about the FTX Platform promoted false confidence and drove consumers to invest in FTX and its products despite enormous undisclosed risks is more than enough to support a claim of civil conspiracy. *See e.g.*, *Ben-Yishay v. Mastercraft Dev., LLC*, 2009 WL 6387928, at *3 (S.D. Fla. Dec. 14, 2009); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1358 (S.D. Fla. 2009).

Last, Defendants object to Plaintiffs making allegations in reference to the Defendants as a group. That is baseless—courts repeatedly have acknowledged that it is appropriate for a

Complaint to refer to parties as a group where the pleading confirms that those parties engaged in the same alleged conduct, as Plaintiffs allege in their Complaint here. *See BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1344 (S.D. Fla. 2021); *see also*, *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 4 1247, 1258–59 (M.D. Fla. 2021) (declining invitation to dismiss entire complaint as a shotgun pleading where claims were adequately pled). Indeed, Plaintiffs have adequately pled that each Defendant ***assisted*** in the conspiracy by promoting and advertising FTX's fraudulent scheme and it is therefore appropriate for Plaintiffs to refer to those Defendants together. *See, e.g.*, CAC ¶¶ 287–335 (Tom Brady and Gisele Bundchen); ¶¶ 336–99 (Udonis Haslem); ¶¶ 400–21 (David Ortiz); ¶¶ 423–66 (Stephen Curry); ¶¶ 467–94 (Golden State Warriors); ¶¶ 495–558 (Shaquille O'Neal); ¶¶ 559–76 (William Trevor Lawerence); ¶¶ 577–601 (Shohei Ohtani); ¶¶ 602–29 (Naomi Osaka); ¶¶ 630–59 (Larry David); ¶¶ 660–703 (Team SoloMid); ¶¶ 704–29 (YouTuber Defendants).

> **B.  Plaintiffs Allege Aiding and Abetting.**

Tort claims predicated on a theory of aiding and abetting have three elements: (1) the existence of an underlying violation; (2) knowledge of the violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the violation by the alleged aider and abettor. *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003–04 (Fla. Dist. Ct. App. 2020) (holding that plaintiff sufficiently alleged aiding and abetting fraud claim where complaint pleaded that bank defendant assisted principal car dealership in leading investors to believe their loans were properly documented on dealership's books and records); *Energy Fluids, Inc. v. Cimarex Energy Co.*, 2008 WL 2404226, at *3 (W.D. Okla. June 10, 2008) (declining to dismiss aiding and abetting fraud claim against a defendant who had made no misrepresentation himself because he allegedly trained others on how to execute the fraud); *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 310–11, 323–26 (2013) (reversing dismissal of aiding and abetting fraud claims

27

against defendant law firm whose attorneys allegedly enriched themselves using client's trust funds, reasoning that dismissal was premature since plaintiffs were "limited in their ability" to state their claims at the pre-discovery stage). Defendants do not dispute, and thus concede, that Plaintiffs adequately pled the first element—that is, the existence of an underlying violation. ECF 271 at 30–31, ECF 265 at 15–17. Defendants instead claim that Plaintiffs have not adequately pled the second and third elements, but they are wrong.

*First*, Plaintiffs have adequately pled Defendants' knowledge of the underlying violation. The knowledge element may be satisfied "by circumstantial evidence." *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009–10 (11th Cir. 1985) (citing *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 95–96 (5th Cir.1975)); *Scarff v. Wells Fargo Bank, N.A.*, 2005 WL 3454136, at *4–7 (N.D. Cal. Dec. 16, 2005) (citing *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 52 (Cal. 1979) (*en banc*); *Seattle-First Nat. Bank v. Carlstedt*, 800 F.2d 1008 (10th Cir. 1986); *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S.Ct. 768, 779 (2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Defendants assert that Plaintiffs alleged "no facts" suggesting that Defendants knew about FTX's wrongdoing. ECF 271 at 31. However, Defendants ignore the allegations in the Complaint discussed above in Part I.B connection with their promotion of FTX and its products. Defendants therefore knew or should have known of FTX's wrongdoing, consistent with Defendant O'Leary's admission that: "[w]e all look like idiots. Let's put that on the table. We relied on each other's due diligence. . . ." *See* CAC ¶¶ 22, 31, 139–44, 163–64, 176, 184–98, 207–09, 265–67, 275–78, 331, 338, 363–64, 396–97, 417–18, 439–41, 462, 487–89, 537–40, 574, 599, 621–22, 647–50, 694–98, 720–24.

*Second*, there can be no reasonable dispute that Plaintiffs have alleged Defendants' substantial assistance. Plaintiffs allege that (i) Defendants partnered with FTX for the purpose of

inducing customers to invest in FTX and its products—unregistered securities (*see above* Part I.A.2); (ii) Defendants knew or should have known about FTX's sale of unregistered securities and the risk associated with consumers' investments in FTX and its products given its wrongdoing and operational failures, as discussed above; and (iii) Defendants then undertook to leverage their celebrity to persuade consumers to invest in FTX and its products based on false claims that FTX purportedly was "safe" when, in fact, it was anything but (*see above* Part I). *E.g.*, CAC ¶ 279

Plaintiffs have thus adequately pled each element of their aiding and abetting claims.

## IV.    PLAINTIFFS STATED A CLAIM FOR DECLARATORY RELIEF.

Pursuant to the Federal Declaratory Judgment Act, Plaintiffs ask this Court to declare that YBAs were unregistered securities, the FTX Platform did not work as represented, and Defendants were paid and had a financial interest in promoting FTX to the nation. CAC ¶¶ 804–10. "[P]arties routinely plead declaratory judgment claims in distinct counts." *Voo-Doo Daddy Productions, LLC v. Colorblind Media, LLC*, 2023 WL 1469408, at *2 (M.D. Fla. Feb. 2, 2023). And as demonstrated above in Parts I–II, Plaintiffs sufficiently alleged claims under both the securities laws and consumer protection statutes of Florida, California, and Oklahoma. *See* CAC, ¶¶ 768–785. Plaintiffs specifically requested declaratory relief as a remedy for violations of the latter. *Id.* ¶ 785.

Additionally, Plaintiffs allege "a real and immediate likelihood of future injury." *See Strickland v. Alexander*, 772 F.3d 876, 885 (11th Cir. 2014) (internal quotes omitted). Plaintiffs allege that cryptocurrency is increasingly being used by organized crime syndicates and nation-states for illicit purposes. CAC ¶ 193. The Cryptocurrency National Disaster continues to grow by the billions almost every day. *Id.* ¶ 32. This is the largest securities fraud in history, and unless a workable, coordinated, and organized structure is established now, the FTX victims will continue to suffer. *Id.* Plaintiffs' request for declaratory relief is not for the purpose of making factual determinations. There is a justiciable controversy over whether the YBAs were sold illegally and

whether Defendants illegally solicited their purchases from Plaintiffs. CAC ¶ 809. Plaintiffs thus adequately plead a claim for declaratory relief.

## V.  THE FIRST AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS.

None of Defendants' alleged promotions or conduct are entitled to First Amendment protection. "For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading." *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 566 (1980). In contrast, "[u]ntruthful speech, commercial or otherwise, has never been protected for its own sake." *Va. State Bd. Of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). Courts have repeatedly held that "[p]unishing fraud, whether it be common law fraud or securities fraud, simply does not violate the First Amendment." *U.S. S.E.C. v. Pirate Inv. LLC*, 580 F.3d 233, 255 (4th Cir. 2009); *Commodity Trend Serv., Inc. v. CFTC*, 233 F.3d 981, 992 (7th Cir. 2000) ("Laws directly punishing fraudulent speech survive constitutional scrutiny even where applied to pure, fully protected speech.").

Each of the cases on which Defendants rely is inapposite. In *Lowe v. SEC*, a case pertaining to registration requirements under the Investment Advisers Act, the Supreme Court simply suggested, in a footnote, that an opinion about marketable securities might be protected like opinions about commercial products. 472 U.S. 181, 210 n.58 (1985) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984)). And *Bose* itself only decided the appropriate standard of review for a finding of "actual malice" in a defamation case. *Bose Corp.*, 466 U.S. at 499–500. Neither case justifies dismissing the claims here. Defendants have not even attempted to identify any specific commercial speech they contend is protected, and it would be premature to rule on their defenses at this stage of the case. *See e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1275 (M.D. Fla. 2016) (identifying defendant's First Amendment argument as an affirmative defense not appropriate for a motion to dismiss).

## VI.    FTX IS NOT AN INDISPENSABLE PARTY UNDER RULE 19.

Under Rule 19, courts undertake a two-step analysis whereby they determine: (1) whether the non-party at issue is a "Required Party" under the factors in Rule 19(a)(1)(A) and (B); and (2) if the non-party is a "Required Party" that cannot be joined, whether the action nevertheless should proceed. Courts are "loathe to grant" dismissal under Rule 19. *Sparta Ins. Co. v. Poore*, 2013 WL 6243707, at *1 (N.D. Ala. Dec. 3, 2013). "The burden is on the moving party to establish that a person is necessary or indispensable." *BFI Waste Sys. of N. Am., Inc. v. Broward Cnty.*, 209 F.R.D. 509, 514 (S.D. Fla. 2002). Under step one, FTX is not a Required Party and, even if it were, this case should proceed without FTX under step two of the Rule 19 analysis.

### A.  FTX Is Not a Required Party Under Rule 19(a).

*First*, "Rule 19 does not require the joinder of joint tortfeasors" or "co-conspirators." *Mandel v. Howard*, 2012 WL 1069182, at *4 (S.D. Fla. Mar. 29, 2012); *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 677 (1st Cir. 1994). It has long been "beyond peradventure that joint tortfeasors are not indispensable parties." *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1198–99 (6th Cir. 1983). Defendants therefore cannot rely on FTX's status as a co-conspirator to claim that FTX is an indispensable party.

*Second*, FTX is not a required party because "complete relief" can be afforded to the existing parties. *See* Fed. R. Civ. P. 19(a)(1). Rule 19's Committee Notes confirm that it does not regulate nonparties jointly and severally liable with party defendants. "[T]he 'complete relief' requirement concerns the ability of the *already included defendants* to provide relief. *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984); *Morgan Guar. Tr. Co. of New York v. Martin*, 466 F.2d 593, 598 (7th Cir. 1972). Defendants and FTX are jointly and severally liable for the relief sought. While Defendants claim that rescission requires FTX's joinder, they ignore contrary authority providing for rescissionary damages and Defendants' joint liability. *See HCM High Yield*

31

*Opportunity Fund, LP v. Skandinaviska Enskilda Banken AB*, 2001 WL 36186526, at \*23–24 & n.12 (S.D. Fla. Dec. 14, 2001) (holding "rescissionary damages" to be an appropriate FSIPA remedy against those participating or aiding in sale of security even though issuer had not been joined); *Triton II, LLC v. Randazzo*, 2019 WL 1777726 (S.D. Fla. Apr. 23, 2019) (same for federal securities fraud claim); *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 687 (11th Cir. 1983) (same for common-law fraud claim involving securities).

  ***Third***, FTX is not a required party where it does not even "*claim*" a relevant interest. *See* Fed. R. Civ. P. 19(a)(1)(B). Defendants merely assert—without evidence—that FTX "has an interest" in this case. ECF No. 265 at 38; ECF No. 271 at 46. That is not enough to make FTX indispensable. *see* Fed. R. Civ. P. 19(a)(1)(B); *BFI*, 209 F.R.D. at 516; *Sparta*, 2013 WL 6243707, at \*5, 6–7 (when the nonparty is "surely aware of th[e] action" and "has not sought to intervene," courts will not "second-guess the [nonparty's] assessment of its own interests."). Defendants, moreover, can adequately represent FTX's "interests" which are aligned with Defendants'. *See Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 135 (1st Cir. 1989). Defendants also do not and cannot argue that they would face double or inconsistent "obligations" in FTX's absence. *See Bedel*, 103 F.R.D. at 81 (inconsistent "results" not enough); Fed. R. Civ. P.19(a)(1)(B)(ii). Accordingly, Defendants have not met their burden to show FTX is indispensable under Rule 19.

  **B.  Dismissal Is Not Warranted Under Rule 19(b).**

  Even if FTX were a required party (it is not), this case should not be dismissed under Rule 19(b). *First*, proceeding without FTX does not create a risk of prejudice because (i) FTX has not claimed an interest here; (ii) Defendants can defend any interest FTX allegedly has, and (iii) FTX's possession of discovery is irrelevant. *See BFI*, 209 F.R.D. at 515–16 (nonparties' possession of evidence "does not make them necessary parties."). *Second*, any judgment would be adequate for Plaintiffs because Defendants are jointly and severally liable, and there is no risk to Defendants of

inconsistent "obligations." *Third*, by suggesting Plaintiffs lose their claims against the *solvent* Defendants and pursue *insolvent* FTX in a bankruptcy adversary proceedings, Defendants tacitly admit that Plaintiffs will lack an adequate remedy if the Court dismisses these claims. *Finally*, any conceivable prejudice could be "lessened or avoided" with the tools identified in Rule 19(b)(2), i.e., "(A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures." Fed. R. Civ. P.19(b)(2).

## VII.   PLAINTIFFS' COMPLAINT IS NOT A "SHOTGUN PLEADING."

Plaintiffs' Complaint is not a shotgun pleading because "it does what complaints must do: it 'gives the defendant[s] adequate notice of the claims against [them] and the grounds upon which each claim rests'" so that defendants may prepare a response. *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)) (cleaned up). A complaint need not be "a model of efficiency or specificity" so long as, "whatever their faults," the claims are "informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Weiland*, 792 F.3d at 1324–26.  While the Eleventh Circuit frowns on incorporating prior *counts* in each successive count (which the Complaint does not do), incorporation of even the entire factual section is not in and of itself a basis for labeling a complaint a shotgun pleading. *Id.* at 1324. Defendants are on notice of the claims and factual allegation on which Plaintiffs intend to rely to prove their claims, which would "explain why the defendants did not move for a more definite statement." *Id.* at 1321 n.10, 1324.  Most of the Complaint is pled on a person-by-person basis, or when certain Defendants are alleged to engaged in the same conduct, on a group-by-group basis, with subsections that "greatly simplif[y]" Defendants' task in responding. *See id.* at 1325, CAC ¶¶ 287–750. Similarly, Plaintiffs have used and/or allegations where either alternative would

support Plaintiffs' claims, or when they could not reasonably know which alternative applies, such as for Defendants' states of mind.

## VIII.   PLAINTIFFS BROUGHT THEIR CLAIMS UNDER THE APPROPRIATE STATE LAWS.

The Youtuber Defendants make two related arguments about which state's law applies. *First*, they argue that Florida securities law does not apply because (they claim) no securities were sold from Florida. (ECF 265 at 9). That argument fails because Plaintiffs allege that (i) FTX perpetrated its scheme from its domestic headquarters located in Miami; (ii) FTX orchestrated the promotion scheme that Defendants participated from its Miami offices; and (iii) offers to sell YBAs and FTTs originated from the State of Florida. CAC ¶¶ 18–31, 38, 297–317, 321. These facts implicate Florida's securities law.[18]

*Second*, the Youtuber Defendants claim that out-of-state plaintiffs cannot bring claims under another state's law because (they assert) there is not a sufficient state interest in applying its laws (ECF 265 at 19). They are wrong.  Plaintiffs allege that there is a close nexus between Florida and the events underpinning their claims, as discussed above.  Likewise, with respect to California and Oklahoma law, Plaintiffs' allegations identify the relationship between those states and Plaintiffs' claims here.  CAC 48, 422–94, 577, 589, 652–53.  Nor is there any bar to multiple states laws applying to overlapping claims, as here.  *See Garland v. Advanced Med. Fund, L.P. II*, 86 F.

---

[18] Defendants misplace their reliance on *Kahan Novoa v. Safra Nat. Bank of New York*, 313 F. Supp. 2d 1347, 1355 (S.D. Fla. 2003). That case was decided on a factual record and relied on only two cases, neither of which supports dismissal in the circumstances here. In *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1100 (Fla. 4th DCA 1999), in which the court affirmed the dismissal of fraud claims under Section 517.301, it was undisputed all the relevant sales conduct "occurred *entirely* in other states." In *Dokken v. Minnesota-Ohio Oil Corp.*, 232 So. 2d 200, 204 (Fla. 2d DCA 1970), the court affirmed a jury verdict by concluding that there was no evidence presented *at trial* "showing that the sale . . . was a part of a general plan or purpose or by persons in the business of making sales in Florida in violation of the Sales of Securities law." Here, by contrast, Plaintiffs' allegations are more than enough to get past the motion to dismiss stage.

Supp. 2d 1195, 1204–05 (N.D. Ga. 2000) ("the weight of the legal authority indicates that conflicts of law principles are not applicable in cases involving state Blue Sky laws. Consequently, the court found that the pertinent question in such cases is whether there was a sufficient territorial nexus between the state at issue and the transaction."); *Simms Inv. Co. v. E.F. Hutton & Co. Inc.*, 699 F. Supp. 543, 545 (M.D.N.C. 1988) ("the securities laws of two or more states may be applicable to a single transaction without presenting a conflict of laws question.").

Ultimately, the issue of which states' laws apply to the facts here (and any class certification implications that result) is more appropriately resolved on a factual record. *Fitzpatrick v. Vital Pharms., Inc.*, 2021 WL 6776238, at *9–11 (S.D. Fla. June 7, 2021) (declining to dismiss FDUTPA claims due to possibility multiple states' consumer protection acts would apply and noting issues of class certification normally require a factual record); *Sun Life Assurance Co. of Canada v. Bank of Utah*, 614 F. Supp. 3d 1323, 1340 (N.D. Ga. 2022) ("[D]ismissal of class allegations at the pleading stage is an extreme remedy."). And even if the Rule 23 standards were relevant here, the authorities confirm that class certification routinely is granted in the context of consumer protection statutes. *See, e.g.*, *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983–90 (11th Cir. 2016); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985–86 (9th Cir. 2015).

## IX.    THE PSLRA DOES NOT BAR PLAINTIFFS' CLAIMS.

The YouTuber Defendants argue (ECF 265 at 21–22) the Court lacks subject matter jurisdiction and that the Private Securities Litigation Reform Act ("PSLRA") bars Plaintiffs' claims. They claim that Plaintiffs' claims fall into the "covered security" exception to the Court's jurisdiction under the Class Action Fairness Act ("CAFA"), which is Plaintiffs' asserted basis for federal jurisdiction (CAC ¶ 53). This exception applies only to a class action "that *solely* involves a claim . . . concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933," *see* 28 U.S.C. § 1332(d)(9). This action does not "solely" involve any such claims. Plaintiffs

35

have also asserted, for instance, consumer protection claims involving deceptive or unfair practices that do not depend on the FTX products being securities. In addition, the YouTuber Defendants dispute that FTX is a security. ECF 265 at 21–22. Subject matter jurisdiction therefore exists. Further, the YouTuber Defendants' assertion that Plaintiffs failed to include certain certifications fails because the PSLRA requires those certifications only for "each private action arising *under this chapter* [Chapter 2B of title 15] that is brought as a plaintiff class action." 15 U.S.C. 78u-4(a)(1). Plaintiffs do not assert claims under that chapter—they assert only state-law claims. The PSLRA's certification requirements therefore do not apply.

## X.     LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY.

If any claims are dismissed, the dismissal should be *without prejudice* and with leave for Plaintiffs to amend. Defendants' request for dismissal "with prejudice" is foreclosed by Rule 15(a)(2)'s instruction that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has directed that leave to amend should be denied only in cases marked by undue delay, bad faith, dilatory motive, futility of amendment, or undue prejudice to the opposing party." *Marino v. Broward Sheriff's Office*, 2021 WL 10384112, at *2 (S.D. Fla. Mar. 24, 2021). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Sheffler v. Americold Realty Tr.*, 2023 WL 3918491, at *2 (11th Cir. June 9, 2023).

None of the factors warranting dismissal *with prejudice* exist here. Amending the complaint would not prejudice Defendants, as this MDL is at its early stage and discovery has not yet started. *See Marino*, 2021 WL 10384112, at *3. Nor would amendment be futile. Even in the past several months, new information has been revealed from the federal criminal trial of SBF. Defendants misleadingly argue that "Plaintiffs have filed at least nine original complaints in state and federal court, three amended complaints." ECF 271 at 36. Defendants appear to be counting

all complaints filed anywhere, including before the MDL. It is unremarkable that in one of the largest consumer frauds in history there would be complaints in multiple jurisdictions by a variety of plaintiffs. So far as it appears, only one of those complaints (in *Garrison*) was ever amended, but that happened before the Court ruled on any motions to dismiss. This is the first consolidated class action complaint against these Defendants in the MDL. After filing a Consolidated Complaint on August 8, 2023, Plaintiffs identified a minor error and filed a "corrected" Consolidated Complaint three days later.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Celebrity and YouTuber Motions to Dismiss.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request that the Court hear oral argument on these Motions, and respectfully submit that thirty minutes should be sufficient for all Parties.

Dated: November 6, 2023                     Respectfully submitted,

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| **FTX Promoter Committee Members** | |
| Barbara C. Lewis<br>Florida Bar No.<br>118114<br>**The Moskowitz Law Firm, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>service@moskowitz-law.com | K. Rachel Lanier<br>Alex J. Brown<br>**The LANIER LAW FIRM, P.C.**<br>10940 W. Sam Houston Pkwy N<br>Houston, TX 77064<br>Telephone: (713) 659-5200<br>Facsimile: (713) 659-2204<br>Rachel.Lanier@lanierlawfirm.com<br>Alex.Brown@lanierlawfirm.com |
| Marc Ayala<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>mayala@bsfllp.com | Tyler Ulrich<br>Florida Bar No. 94705<br>**BOIES SCHILLER FLEXNER LLP**<br>100 SE 2nd St., Suite 2800<br>Miami, FL 33131<br>Office: 305-539-8400<br>tulrich@bsfllp.com |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 6, 2023, a true and correct copy of the foregoing

was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true

and correct copy to be served on all counsel of record.

<u>/s/ <i>Adam M. Moskowitz</i>      </u>
Adam M. Moskowitz
