# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MDL No. 3076
### CASE NO. 1:23-md-03076-KMM

In Re: FTX Cryptocurrency Exchange Collapse Litigation

### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO <u>DEFENDANT DELTEC BANK & TRUST COMPANY, LIMITED</u>

Plaintiffs in the above-titled action, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District of Florida, request that Defendant Deltec Bank and Trust Company Limited, produce all documents, electronically stored information, and things that are in your possession, custody, or control requested in response to the following Requests for Production.

Respectfully submitted on August 2, 2023,

| **Plaintiffs' Co-Lead Counsel** | |
|---|---|
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| **Plaintiffs' Steering Committee Members** | |
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000 | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP** |

| | |
|---|---|
| San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>*jsaveri@saverilawfirm.com* | 201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>*jswanson@fishmanhaygood.com*<br>*kmiller@fishmanhaygood.com* |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>*rlieff@lieff.com* | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2023, I caused a true and correct copy of these requests for production to be served on Defendants via electronic mail.

/s/ *Marshal J. Hoda*

Marshal J. Hoda
Plaintiffs' eDiscovery Committee Co-Chair
**THE HODA LAW FIRM, PLLC**
marshal@thehodalawfirm.com
(832) 848-0036

- 2 -

## **DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1.      "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2.      "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3.      "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4.      "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation, correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party

receives but does not respond to.

5.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

6.     "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7.     "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8.     "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions.  When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

9.     "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action.  For purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

10.     "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type,

including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings, print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof. To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

11.     "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved

(including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

12.    "FTT" refers to the digital token created by the FTX Entities.

13.    "FTX Entities" refers to FTX Trading, WRS, and/or FTX US.

14.    "FTX Trading" refers to FTX Trading Ltd. and its subsidiaries d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

15.    "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.),

successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

16.    "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

17.    "Moonstone" refers to Farmington State Bank d/b/a Moonstone Bank, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Moonstone or in which Moonstone is a member or other owner, its international, national or local branches or offices. "Moonstone" shall also encompass Moonstone's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Moonstone, including but not limited to Jean Chalopin and Janvier Chalopin

18.    "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

19.    "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

20.    "WRS" refers to West Realm Shires Inc. including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. WRS includes, without limitation, its subsidiary West

Realm Shires Services Inc. d/b/a FTX US ("FTX US"). No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

21.     "You" or "Your" shall refer to Deltec Bank and Trust Company Limited ("Deltec"), its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Deltec or in which Deltec is a member or other owner, its international, national or local branches or offices. "You" or "Your" shall also encompass Deltec's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Deltec, including but not limited to Jean Chalopin.

22.     Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

23.     Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## INSTRUCTIONS

1.      Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2.      Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3.      Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4.      These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former agents, representatives, or attorneys.

5.      For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

6.      the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

      a.      the date such document was prepared;

      b.      the names, employment positions and addresses of the author or preparers of such document;

      c.      the names, employment positions, and the addresses of each person who

received such document;

d.    the title, a brief description, and the subject matter of the document;

e.    the number of the request under which such document would be produced but for the objection; and

f.    description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information).

7.    If any document responsive to a request has been destroyed, produce all documents describing or referencing:

a.    the contents of the lost or destroyed document;

b.    all locations in which any copy of the lost or destroyed document had been maintained;

c.    the date of such loss or destruction;

d.    the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

e.    all document retention and destruction policies in effect at the time any requested document was destroyed; and

f.    all efforts made to locate any responsive document alleged to have been lost.

8.    In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

9.    These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or

required to be produced, you should make a supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

10.    All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

11.    In responding to these Document Requests, you are to include Documents:

      a.    obtained from witnesses who gave information to any governmental agency or investigatory body;

      b.    that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

      c.    obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

12.    All documents are to be produced in the following method if not produced in its Native Format:

      a.    Single page .TIFF images

      b.    Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

      c.    Document level Text Files containing extracted full text or OCR text

d.    Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page .TIFF.

## REQUESTS FOR PRODUCTION

1. All account opening documents for any of the accounts at Deltec that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda.

2. Documentation reflecting the identities of your officers, directors, managers, employees, representatives, or agents who were tasked with overseeing or servicing your relationship with FTX Entities and/or Alameda as well as their respective roles with respect thereto.

3. All agreements between you and FTX Entities and/or Alameda, including but not limited to deposit agreements, wire transfer agreements, escrow agreements, custodial agreements, loan agreements, ACH agreements and authorization limits, account signatory agreements, and any other service or account management agreements.

4. Documentation reflecting any authority or discretion you had over accounts at Deltec that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda.

5. All documents describing the expected account activity in the accounts at Deltec that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda.

6. All documentation reflecting the actual account activity in the accounts that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda. This request specifically seeks but is not limited to: all account statements and summaries, records of deposits and withdrawals, wire transfer records, records of all other electronic funds transfers not constituting wire transfers, ACH records, records of account transfers between accounts opened or held in the name of or for the benefit of FTX Entities and/or Alameda at Deltec, and records of all account activity involving checks.

7. All documents and communications concerning signature cards or signature authority on any accounts held or opened at Deltec in the name of or for the benefit of FTX Entities

and/or Alameda, and actual or potential changes thereto.

8.     All documents and communications concerning any loans made or credit facilities (e.g. irrevocable standby letters of credit, or other letters of credit) offered by you to or for the benefit of FTX Entities and/or Alameda including all documents and communications concerning:

    a.     any loan evaluations;

    b.     any claimed or actual security or collateral for such loans or credit facilities;

    c.     any repayment of such loans or credit facilities that you sought or that any person made;

    d.     any claimed or actual use of the proceeds of such loans or credit facilities, and;

    e.     documents sufficient to identify your employees with responsibility for making, approving, and monitoring such loans or credit facilities.

9.     All documents and communications concerning accounts personally held by directors, officers, managers, employees, representatives, or agents of FTX Entities and/or Alameda at Deltec, and any non-market or non-standard terms in those accounts, including but not limited to in respect of wire or electronic transfer processes, overdraft privileges, interest rates, and amortization.

10.     All documents and communications concerning interest rates on balances in any accounts at Deltec in the names of FTX Entities and/or Alameda.

11.     Your policies, procedures, manuals, training materials, instructions, or forms related to Anti-Money Laundering ("AML"), Countering the Financing of Terrorism ("CFT"), verification of customer identity, Customer Due Diligence ("CDD"), Know Your Customer

("KYC"), Customer Risk Assessment or Risk Rating, Services Risk Assessment or Risk Rating, Enhanced CDD, on-going monitoring of customer relationships, electronic funds transfers, Suspicious Transaction Reports ("STR"), account-opening, risk management, record-keeping, and any similar such policies or procedures related to customer due diligence or account monitoring, as well as any heightened or enhanced versions of such policies or procedures. This request includes all versions of the foregoing documents that were proposed or put in place from 2019 to present.

12.     All documents and communications concerning your monitoring for suspicious or fraudulent activity, including but not limited to actual or potential alerts, cautions, flags, or alarms raised as a result of Your monitoring systems or the policies and procedures referenced in the previous request – including enhanced versions of them – and any reports (e.g., STRs, Currency Transaction Reports ("CTR"), Reports of International Transportation of Currency or Monetary Instruments ("CMIR"), large scale cash deposits, large scale transaction reports, low balance reports, balance fluctuation reports, reports of international funds transfers just below reporting threshold, or reports of atypical or uneconomical account activity or funds movement) made thereof, including any STR filed by you. This includes a request for documents sufficient to identify your employees who were involved in such procedures.

13.     All documents and communications concerning your review of, or inquiry or investigation into, any activity at any time in any accounts (including correspondent accounts) held or opened in the name of or for the benefit of FTX Entities and/or Alameda at Deltec. This includes a request for all documents and communications concerning any actual or potential alerts, cautions, flags, alarms, or red flags raised by such review, inquiry, or investigation, based upon:

        a.      possible or actual comingling of FTX Entities' depositors' funds or assets

with FTX Entities' or Alameda's funds or assets,

b.    the volume of transfers made into and out of such accounts,

c.    the individual or aggregate value of transfers made into and out of such accounts,

d.    the rationale or lack thereof for large transactions made into and out of such accounts,

e.    the frequency of transfers made into and out of such accounts,

f.    the round trip or circular nature of any of the transfers made into and out of such accounts,

g.    the geographic place of origin or destination of transfers made into and out of such accounts,

h.    the unusual, atypical, or uneconomic nature of transfers made into and out of such accounts,

i.    the repetitiveness of transfers made into and out of such accounts,

j.    the complexity of transfers made into and out of such accounts,

k.    the electronic nature of transfers made into and out of such accounts,

l.    the purpose of transfers made into and out of such accounts,

m.    the identity of the transferees for transfers made out of such accounts, including whether the transferees (or the transferee accounts) were related to the transferors (or the transferor accounts),

n.    the identity of the transferees for transfers made out of such accounts, including whether the transferees appeared to take possession of funds or assets of depositors of FTX Entities,

o.     the identity of the transferees for transfers made out of such accounts, including whether the transferees were entities whose role as transferee had been disclosed to FTX Entities' depositors or you by FTX Entities or Alameda,

p.     any round number dollar amounts involved in the transfers made into or out of such accounts,

q.     any check pouching or cash letter activity in such accounts,

r.     certain of these accounts being correspondent accounts, and;

s.     documents sufficient to identify your directors, officers, managers, employees, representatives, or other agents involved in such review, inquiry, or investigation.

14.     All documents generated by any automated transaction monitoring systems maintained by you in response to activity at any time in any accounts (including correspondent accounts) held or opened in the name of or for the benefit of FTX Entities and/or Alameda. This includes, but is not limited to, any actual or potential alerts, cautions, flags, alarms, or red flags raised by such activity, based upon:

a.     the volume of transfers made into and out of such accounts,

b.     the individual or aggregate value of transfers made into and out of such accounts,

c.     the rationale or lack thereof for large transactions made into and out of such accounts,

d.     the frequency of transfers made into and out of such accounts,

e.     the round trip or circular nature of any of the transfers made into and out

of such accounts,

f.  the geographic place of origin or destination of transfers made into and out of such accounts,

g.  the unusual, atypical, or uneconomic nature of transfers made into and out of such accounts,

h.  the repetitiveness of transfers made into and out of such accounts,

i.  the complexity of transfers made into and out of such accounts,

j.  the electronic nature of transfers made into and out of such accounts,

k.  the purpose of transfers made into and out of such accounts,

l.  the identity of the transferees for transfers made out of such accounts, including whether the transferees (or the transferee accounts) were related to the transferors (or the transferor accounts),

m.  the identity of the transferees for transfers made out of such accounts, including whether the transferees appeared to take possession of funds or assets of depositors of FTX Entities,

n.  the identity of the transferees for transfers made out of such accounts, including whether the transferees were entities whose role as transferee had been disclosed to FTX Entities' depositors or you by FTX Entities or Alameda,

o.  any round number dollar amounts involved in the transfers made into or out of such accounts,

p.  any check pouching or cash letter activity in such accounts,

q.  certain of these accounts being correspondent accounts, or

r.    the alerted or flagged activity or transactions being potentially suspicious or having no business or apparent lawful purpose or not being the type of transactions that the particular customer would normally be expected to engage in.

15.    Documents sufficient to identify the codes, rules, thresholds or parameters that have been established for or used by the automated transaction monitoring systems that generated any alerts, cautions, flags, alarms or red flags that are responsive to the previous request. This includes a request for any and all documents necessary to understand all fields in documents produced in response to the previous request.

16.    All documents and communications, including investigation reports, concerning the automated transaction monitoring system alerts, cautions, flags, alarms, or red flags that are responsive to individual request number 14. This includes a request for documents sufficient to identify your employees involved in reviewing such alerts, cautions, flags, alarms, or red flags.

17.    Any manuals or training materials related to any automated transaction monitoring system maintained or used by you, whether or not you created such manuals or training materials.

18.    All AML, CFT, CDD, KYC, Risk Assessments or Ratings, or other due diligence documentation, including documentation for any heightened or enhanced versions of the foregoing, concerning accounts held or opened in the name of or for the benefit of FTX Entities and/or Alameda, including evaluation or analysis of prospective accounts, loans, or letters of credit that were sought to be held or opened in the name of or for the benefit of FTX Entities and/or Alameda.

19.    All formal or informal requests or inquiries by or on behalf of you to any person (including but not limited to internal requests or inquiries, as well as requests or inquiries made

directly to FTX Entities and/or Alameda) for information of any kind concerning FTX Entities and/or Alameda – irrespective of whether these requests or inquiries were not responded to, were responded to in part, or were responded to fully – as well as the responses to these requests or inquiries. This includes a request for documents sufficient to identify your officers, directors, managers, employees, representatives, or agents who made any such requests and inquiries.

20.     Documentation concerning your compliance chief's education, credentials, prior experience, and any training that he or she attended related to AML, CFT, CDD, KYC, Risk Assessment or Rating, Enhanced CDD, STR, account-opening, or any due diligence or monitoring.

21.     Documentation concerning Jean Chalopin's education, credentials, prior experience, and any training that he has attended related to any securities regulations, AML, CFT, CDD, KYC, Risk Assessment or Rating, Enhanced CDD, STR, account-opening, or any due diligence or monitoring.

22.     Documents and communications concerning AML, CFT, CDD, KYC, Risk Assessments or Ratings, or other due diligence best practices, industry standards, statutes, regulations (including any Statutes and Regulations), rules, codes, bulletins, alerts, advisory letters, circulars, or judicial decisions governing the foregoing.

23.     All documents and communications concerning differences between KYC and AML standards and best practices (including Statutes or Regulations), as promulgated or as enforced in the United States versus any other jurisdiction.

24.     All your general policies, procedures, or operating manuals related to the services you provided to FTX Entities and/or Alameda, including but not limited to those relating to processing wire transfers or other electronic funds transfers, treasury services, any advisory services, trade financing services, banking and taking custody of cryptocurrencies, or trading,

lending, and borrowing digital assets.

25.     Documentation reflecting or relating to any special policies, procedures, or manuals—whether official or unofficial—that you prepared and followed specifically for the FTX Entities' and/or Alameda accounts.

26.     All documents and communications concerning actual, requested, or proposed visits by you to FTX Entities and/or Alameda or by FTX Entities and/or Alameda to you. This includes a request for all documents and communications concerning:

    a.     the dates of such visits, including as reflected on calendars,

    b.     the names of your officers, directors, managers, employees, representatives, or agents who joined such visits,

    c.     any inspections conducted during such visits,

    d.     any reports based on or following such visits,

    e.     any gifts from FTX Entities and/or Alameda to your officers, directors, managers, employees, representatives, or agents during such visits,

    f.     and any reporting of them to you,

    g.     your officers', directors', managers', employees', representatives', or agents' expenses for travel, accommodations, meals, or leisure or entertainment events or activities (e.g., golf) during such visits which were paid or reimbursed by FTX Entities and/or Alameda, and any reporting of them to you, and;

    h.     all documents and communications concerning your protocol, code, or rules for employee conduct in connection with such visits, including as contained in handbooks or manuals.

27.     All communications among or between Deltec's directors, officers, managers, employees, representatives and/or agents concerning accounts held in the name of FTX Entities and/or Alameda.

28.     All communications between you and any of the FTX Entities, Alameda, or any of the Defendants concerning any of the FTX Entities and/or Alameda.

29.     All documents concerning any communications between you and each of the following entities and/or persons concerning the FTX Entities and/or Alameda:

a.     Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Caroline Ellison, Gary Wang and Nishad Singh;

b.     the Parliament of Singapore and/or any other judicial body, legislature, governmental office and/or agency of the Republic of Singapore;

c.     the Legislative Council of Hong Kong and/or any other judicial body, legislature, governmental office and/or agency of the Hong Kong Special Administrative Region of the People's Republic of China;

d.     the SEC;

e.     the Commodity Futures Trading Commission CFTC;

f.     the United States Department of Justice, including any United States Attorney's Office ("DOJ");

g.     any Committee or member of the House of Representatives and/or the Senate of the United States;

h.     the Government of the Bahamas and/or any agency thereof;

i.     any United States state or administrative agency or regulatory entity;

j.      any United States federal agency or foreign governmental agency, administrative agency or regulatory entity;

k.      any accounting firm, accountant or auditor;

l.      any actual or prospective customer of any of the FTX Entities and/or any actual or prospective investor in any of the FTX Entities;

m.      any Debtors, Creditors, Liquidators, the U.S. Trustee (or any person or entity acting on their behalf), and/or any person or entity filing an adversary proceeding in the Bankruptcy Actions; or

n.      any of the Defendants.

30.     All documents concerning the FTX Entities and/or Alameda you provided to or exchanged with:

a.      Officers, directors, employees, and control persons of any of the FTX Entities and/or Alameda, including, but not limited to, Samuel Bankman-Fried, Caroline Ellison, Gary Wang and Nishad Singh;

b.      the Parliament of Singapore and/or any other judicial body, legislature, governmental office and/or agency of the Republic of Singapore;

c.      the Legislative Council of Hong Kong and/or any other judicial body, legislature, governmental office and/or agency of the Hong Kong Special Administrative Region of the People's Republic of China;

d.      the SEC;

e.      the CFTC;

f.      the DOJ;

g.      any Committee or member of the House of Representatives and/or Senate

of the United States;

h.    the Government of the Bahamas and/or any agency thereof;

i.    any United States state or administrative agency or regulatory entity;

j.    any United States federal agency or foreign governmental agency, administrative agency or regulatory entity;

k.    any accounting firm, auditor or accountant;

l.    any actual or prospective customer of any of the FTX Entities and/or Alameda and/or any actual or prospective investor in any of the FTX Entities and/or Alameda;

m.    any Debtors, Creditors, Liquidators, the U.S. Trustee (or any person or entity acting on their behalf) and/or any person or entity filing an adversary proceeding in the Bankruptcy Actions; or

n.    any of the Defendants.

31.    All communications between you and any United States regulatory body, including but not limited to the SEC or CFTC or any state, administrative, or regulatory body of the states constituting the United States, concerning cryptocurrencies, tokens, digital assets, or any securities, whether or not such communications related to FTX Entities and/or Alameda. For the purposes of this request, communications concern "cryptocurrencies, tokens, digital assets, or any securities" when either the applicable regulatory body or you suggest, believe, state, or question whether the subject of the communication constitutes a cryptocurrency, token, digital asset, or security under any law or regulation or other guidance.

32.    All documents and communications concerning (a) whether FTX Entities and/or Alameda were registered (including any registration for purposes of the Investment Company Act

of 1940, 15 U.S.C. § 80a, et seq.) or regulated (including by the SEC or FINRA), or (b) whether any applicable digital assets were registered or were subject to a Regulation D exemption from registration under the Securities Act of 1933, 15 U.S.C. § 77a, et seq.

33.     All documents and communications that you gathered or created before November 11, 2022 concerning:

a.     any news articles or media coverage concerning FTX Entities and/or Alameda,

b.     any litigation activity concerning FTX Entities and/or Alameda, or to which FTX Entities and/or Alameda was a party,

c.     any proceedings at any administrative or regulatory body concerning FTX Entities and/or Alameda, or to which FTX Entities and/or Alameda was a party, including proceedings involving their employees or their customers, and the outcomes of any such proceedings, including sanctions, suspensions, fines, or censures,

d.     any action that was taken or notice that was issued concerning FTX Entities and/or Alameda by a governmental, regulatory (including self-regulatory), oversight, administrative, criminal law, or enforcement body,

e.     any proposed or final report issued or to be issued by any agency or government instrumentality (e.g., an administrative or regulatory body or committee or subcommittee of either chamber of the U.S. Congress) concerning FTX Entities and/or Alameda,

f.     allegations made by any claimed whistleblower against or concerning FTX Entities and/or Alameda,

g.   any examination, inquiry, or review by a governmental or regulatory agency into or concerning FTX Entities and/or Alameda,

h.   all assertions that FTX Entities and/or Alameda were or might be engaged in or part of a fraudulent enterprise or Ponzi scheme, or were or might be engaged in or part of money-laundering activities for drug cartels or others, and;

i.   all documents and communications concerning FTX Entities and/or Alameda that you conducted or attempted to conduct with persons litigating against them, including employees and customers (as referenced in subparagraphs (b) and (c) above), or with journalists (as referenced in subparagraph (a) above), or with whistleblowers (as referenced in subparagraph (f) above).

34.   All documents and communications concerning any recommendations, referrals, or references that you provided to or for FTX Entities and/or Alameda, including as addressed to all actual or prospective depositors generally speaking, business counterparties, regulators or other governmental bodies, specific persons, "To Whom It May Concern," or otherwise. This includes a request for all documents and communications whereby you vouch for FTX Entities and/or Alameda, including for FTX Entities and/or Alameda insiders or control persons.

35.   All documents and communications concerning compensation in any form (including fees and charges, e.g., banking fees, management fees, advisory fees, consulting fees, brokerage fees, and investment fees, as well as expenses) for which you billed FTX Entities and/or Alameda, or which you were paid by FTX Entities and/or Alameda, including all documents and communications concerning:

a.     the basis for such compensation, including any invoices or fee schedules or contracts between FTX Entities and/or Alameda, on the one hand, and you, on the other hand,

b.     disclosed or undisclosed compensation paid or payments made by or on behalf of FTX Entities and/or Alameda to you (including in cash), whether or not the recipient received such compensation in his or her personal capacity or in his or her capacity as your officer, director, manager, employee, representative, or agent, or any other capacity, and;

c.     sufficient personal records and personal communications of any of your officer, director, manager, employee, representative, or agent receiving such compensation to fully document all compensation paid from FTX Entities and/or Alameda to him or her.

36.     All documents and communications concerning the size and importance to You of your actual and prospective relationships with FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to your relationships with other clients. This includes a request for all documents and communications concerning the size and importance to you of:

a.     your actual and prospective revenue and profits from FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to your revenues and profits from other clients,

b.     the balances in the accounts (including correspondent accounts) in the names of FTX Entities and/or Alameda, on an absolute basis and on a comparative basis to balances in the accounts in the names of other clients, and;

     c.     documentation showing total deposits at Deltec in the accounts in the name of FTX Entities and/or Alameda as well as total deposits overall at Deltec.

37.     All documents and communications concerning (a) threats, indications, or statements by FTX Entities and/or Alameda concerning the movement of some or all of their business, accounts, or balances from Deltec, (b) your contemplation that FTX Entities and/or Alameda might do so, and (c) actual or potential efforts by you to grow your business, relationships, accounts, or balances with FTX Entities and/or Alameda.

38.     All documents and communications concerning FTX Entities and/or Alameda, or any of their officers or directors or control persons actually or potentially being (a) designated as a "VIP customer," (b) designated as a "Politically Exposed Person," or (c) deemed to be in a "Special Category of Clients," as well as all documents and communications concerning any risk level assigned by you to FTX Entities and/or Alameda.

39.     All correspondent banking agreements between you and any other bank relating to any services performed by you concerning the FTX Entities and/or Alameda.

40.     All AML, CFT, CDD, KYC, Risk Assessments or Ratings, Enhanced CDD, or other due diligence documentation related to any correspondent banking relationship used to service accounts at Deltec held or opened in the name of or for the benefit of FTX Entities and/or Alameda.

41.     All audit reports (whether prepared by you or others) concerning the relationships between you and FTX Entities and/or Alameda, and all documents and communications concerning such audit reports.

42.     Any audit or due diligence reports concerning FTX Entities and/or Alameda that were prepared by or for you, including as part of your audit or due diligence work concerning FTX

Entities and/or Alameda.

43.     Any periodic or intermittent audits, reviews, evaluations, or reports, either prepared internally or by a third party, regarding your compliance with applicable Statutes and Regulations or internal policies and procedures regarding compliance with Statutes and Regulations or industry standards and best practices, including any KYC procedures, AML procedures, customer identification procedures, procedures and related guidelines pursuant to the Bahamas Banks and Trust Companies Regulation Act, the Central Bank of the Bahamas Act and the Bahamas Cooperative Credit Unions Act, AML risk management, client due diligence, or account-opening policies and procedures maintained by you. This includes a request for any audit or model validation reports regarding automated transaction monitoring systems maintained by you.

44.     All documents and communications concerning the source of funds deposited into any accounts (including correspondent accounts) opened or held in the name of or for the benefit of FTX Entities and/or Alameda, including all documents and communications concerning whether these funds originated from (a) the purchase of cryptocurrencies or tokens, or (b) other deposit products offered by FTX Entities and/or Alameda.

45.     All documents and communications concerning any services or products that FTX Entities and/or Alameda offered to customers or depositors or investors.

46.     All documents concerning the formation and governance of any of the FTX Entities and/or Alameda, including, but not limited to, articles of incorporation, articles of formation, by-laws, membership agreements, partnership agreements, and certificates of good standing.

47.     All documents concerning the ownership of each of the FTX Entities and/or

Alameda.

48.     All documents concerning the relationship between any of the FTX Entities, Alameda, and/or any joint ventures, affiliates, and/or subsidiaries, including, but not limited to, organizational charts.

49.     All documents and communications concerning your efforts to transform Bahamian laws, regulations, policies, or other guidance in order to make them more favorable for digital asset startups.

50.     Documents and communications concerning the cryptocurrency summit that you co-hosted with FTX in the Bahamas.

51.     Documents and communications concerning the $50 million loan in favor of Deltec International Group from Norton Hall Ltd.

52.     Documents and communications concerning Jean Chalopin's efforts to obtain funding, whether via investment or loan or any other form whatsoever, for Deltec or Moonstone from the FTX Entities and/or Alameda.

53.     Documents and communications concerning Alameda's $11.5 million investment in Moonstone.

54.     Documents and communications between FTX Entities and/or Alameda and Jean Chalopin, whether in his personal capacity or representative capacity for Deltec and/or Moonstone, concerning the U.S. banking services that FTX Entities and/or Alameda requested or required.

55.     All documents concerning any reductions in compensation, including, but not limited to, denials of discretionary bonuses, demotions, terminations, or other demerits to your directors, officers, independent contractors, or employees as a result of your relationship with any of the FTX Entities and/or Alameda.

56.     All documents concerning any internal or third-party analyses, investigations, or audits conducted in response to your relationship with the FTX Entities and/or Alameda.

57.     Documentation of any modifications in your policies, procedures, or manuals implemented as a result of your relationship with FTX Entities and/or Alameda.

58.     All documents concerning the posting on your website, social media platform, or any other public forum of any statements concerning the FTX Entities, Alameda, any director, control person, or person in management (including, but not limited to, the chief executive officer, the chief financial officer, the chief compliance officer, the chief technology and/or information officer, the general counsel, presidents, executive vice presidents, vice presidents, and any others positions of management) of any of the FTX Entities and/or Alameda, and/or any of the Defendants.

59.     All documents or communications concerning statements made on any website, social media platform, or any other public forum by Samuel Bankman-Fried, the FTX Entities, Alameda, or by any of the Defendants.

60.     All documents and communications exchanged between you and John J. Ray III (or any of his agents or employees conducting operations on behalf of the FTX Entities or Alameda on or after the filing of bankruptcy petitions in the Bankruptcy Actions) concerning the FTX Entities and/or Alameda.

61.     All documents and communications provided to any third party since November 22, 2022 concerning the FTX Entities and/or Alameda.

62.     To the extent not already produced in connection with any of the above requests, all transcripts and recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings,

the Bankruptcy Actions or any other foreign or domestic forum.

63.     All documents and other information required to be produced pursuant to Florida Statute 627.4137, including, but not limited to, insurance policies under which you may seek coverage in connection with the above-referenced action or your work and/or engagements on behalf of the FTX Entities and/or Alameda.

64.     All documents concerning your policies and procedures for the preservation, maintenance and/or destruction of the documents sought by these Requests, including any ESI or e-mail.

65.     A list of the directors, officers, employees, departments, business units or other people with possession, custody, or control of any discovery responsive to these Requests, to the extent not already produced.

66.     All documents, communications, or other discovery concerning your operations in the United States.

67.     To the extent not produced in response to any of the foregoing requests, all documents and communications concerning any account at Deltec in the name of FTX Entities and/or Alameda. This includes a request for documents sufficient to identify your employees involved in (a) opening such accounts, (b) ongoing activity in such accounts, or (c) any review, inquiry, or investigation into the holders of such accounts or into any activity in such accounts.