**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MDL No. 3076**

**CASE NO. 1:23-md-03076-KMM**

**IN RE:**

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

_____

THIS DOCUMENT RELATES TO:

Multinational VC Defendants

*Chernyavsky, et al. v. Temasek Holdings (Private) Limited, et al.* Case No. 1:23-cv-22960 (S.D. Fla.)

*Cabo, et al. v. Temasek Holdings (Private) Limited, et al.* Case No. 1:23-cv-23212 (S.D. Fla.)

_____ /

**REPLY IN RESPONSE TO DEFENDANT SINO GLOBAL CAPITAL HOLDING'S OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION TO LIFT DISCOVERY STAY AND FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY, AND, IF NECESSARY TO AMEND THEIR COMPLAINTS WITH ANY FACTS ARISING FROM SUCH DISCOVERY**

Plaintiffs file this reply in support of their omnibus motion to lift the discovery stay and for leave to conduct jurisdictional discovery (ECF No. 348), and in response to the opposition thereto filed by Defendant Sino Global Capital Holdings LLC (SGCH) (ECF No. 383).

## I.      INTRODUCTION

SGCH's opposition makes clear that facts concerning this Court's jurisdiction and the merits of this case are intertwined. The law is clear—when facts about both the merits and jurisdiction are in genuine dispute, a district court "abuses its discretion if it completely denies a party jurisdictional discovery" that is sought in a timely manner. *Am. Civil Liberties Union of Fla. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982); *Cohodes v. MiMedx Grp., Inc.*, 2022 WL 15523079, at *3 (N.D. Cal. Oct. 27, 2022) (citing *Coschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)). And there are many disputes of fact here.

Defendant's argument in opposing Plaintiffs' request to lift the stay and conduct limited jurisdictional discovery boils down to the following: CEO Matthew Graham submitted a conclusory and self-serving affidavit declaring that SGCH does not conduct business in the forum states and that it took no action in furtherance of the conspiracy, and therefore, Plaintiffs have not shown a dispute that would establish their right to jurisdictional discovery. (Notably, Defendant's opposition does not argue that Plaintiffs have not set forth a prime facie case for jurisdiction against Sino Global, just that SGCH is not imputed.)

But as set forth in much detail in the oppositions to Defendant's pending motions to dismiss (ECF No. 299, 358) there are abundant allegations—and now, evidence in the record in support[1]— that subject Sino Global to this Court's jurisdiction under the long arm statutes of Florida and California based on its tortious conduct. SGCH concedes that Sino Global promoted and invested

---

[1] Given the stay on discovery pending the conclusion Sam Bankman-Fried's criminal trial, evidence gathered to date about the multinational venture capital defendants is from publicly available information. As the criminal trial is now over, the basis for the stay is moot but multinational VC defendants continue to benefit from it and are effectively exploiting that Plaintiffs lack documentary evidence as to their intentionally obscured corporate structures.

in FTX, and its only means of disputing its own involvement is by feigning a distinction with its parent company, Sino Global Capital Ltd. In reality, "Sino Global Capital" holds itself out to the world as just one entity. All that SGCH has offered to challenge that fact is a single self-serving affidavit containing conclusory assertions that it is not subject to this Court's jurisdiction, which is not sufficient to shift the burden back to Plaintiffs to produce evidence supporting jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Posner v. Essex. Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

Meanwhile, Plaintiffs have provided documentation demonstrating that Sino Global is an elusive internet-based venture capital firm with only ten employees—one of which is a former FTX executive—that (1) operates as a singular entity called Sino Global Capital and (2) had deep ties to both FTX and this forum. For example, the company only called itself Sino Global Capital in conducting business alongside FTX. ECF No. 182, ¶¶ 316, 318, 327. It repeatedly promoted FTX to the public as Sino Global Capital. *See id*. ¶ 345. Sino Global Capital had operations in Miami and multiple employees in the United States. ECF No. 348, Ex. G, p. 5; ECF No. 299-1, Ex. A. It registered its Miami investments arm, Sino Global Capital Management LLC, with the SEC and listed on its application just one website, one Twitter handle, and one LinkedIn account for all its operations—all of which use the name Sino Global Capital. ECF No. 348, Ex. H, Sec. 1.I. That Miami arm oversaw Sino Global Capital and FTX's joint venture fund. *Id*. Ex. H, Sec. 7.A. After FTX collapsed, Sino Global Capital tweeted a statement about its involvement to the public. *Id*. Ex. 7 (emphasis added). Exhibits from the criminal trial support Plaintiffs' allegations that there was a quid pro quo arrangement between FTX and Sino Global, but again, these documents only refer to the company as Sino Global Capital. *See* ECF No. 348, Ex. F, I; ECF No. 182, ¶ 35.

Perhaps more important than the evidence indicating that Sino Global operates as one unitary entity is what Mr. Graham omitted from his declaration in response to that evidence, particularly with respect to Florida. Mr. Graham does *not* attest that SGCH is not registered to do business in Florida; does not operate, conduct, engage in, or carry on a business or any business

venture in Florida; does not maintain a place of business, office, facility, agency, or office in Florida, or otherwise have any physical operations in Florida; or does not regularly do business in Florida. ECF No. 300-1, ¶¶ 17-24. Plaintiffs' allegations to the contrary thus must be accepted as true. *See Posner*, 178 F.3d at 1214-15. In any event, SGCH's more general denial of contacts with Florida do not address Plaintiffs' very specific allegation that it committed a tortious act within Florida by knowingly and purposely promoting FTX's products and services to Florida residents who purchased those products and services based on Defendants' promotional activities (which supports the exercise of jurisdiction *even if* that conduct occurred outside of Florida). *See Licciardo v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (a nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside the state that causes injury within Florida); *See Louis Vuitton Malleties, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) ("[W]e conclude that under Florida law where Mosseri created the websites and posted the alleged infringing material does not matter. For purposes of § 48.193(1)(a)(2), the issue is whether Mosseri's tortious acts caused injury in Florida.").

In other words, Plaintiffs have made a prima facie showing of the company's participation in the conspiracy and thus at least an initial showing of the Court's jurisdiction over it. Matthew Graham is hiding behind the fact that he purposely conflates the Sino Global entities in public statements, and now feigns corporate distinctions that do not appear anywhere in the public record for the purpose of avoiding litigating the merits. At the very least, this factual dispute makes clear that there is ambiguity regarding Sino Global's contacts with the forum, and it is this exact ambiguity that Plaintiffs' jurisdictional discovery would uncover. *See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 2008 WL. 1771857, *2 (S.D. Fla. Apr. 15, 2008) ("[J]urisdictional discovery will be useful to determine the actual extent of Defendants' contacts with Florida to determine whether this case can be resolved on its merits. Without factual discovery, the Court would be left to conjecture whether it could exercise jurisdiction over Defendants."); *see* ECF No. 348 at 12-14 (explanation of how the discovery sought will substantiate the degree of Sino Global's contacts and purposeful availment of the forums).

## II.     ARGUMENT

### A. Plaintiffs Have Properly Requested Jurisdictional Discovery and Have Demonstrated the Dispute that Such Discovery Would Address.

Where jurisdiction or venue is in dispute, discovery is available to ascertain the facts bearing on such issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The Eleventh Circuit's view is clear that courts should permissively order jurisdictional discovery where the information sought would give rise to jurisdiction. *Am. Civil Liberties Union*, 859 F.3d at 1337;; *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730 (11th Cir. 1982); *Gleneagle Ship Mgmt. Co. v. Leondakos*, 602 So.2d 1282, 1284 (Fla. 1992); *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984).

Because such discovery may be necessary for the court to assess whether it has jurisdiction, a plaintiff should be given an opportunity to develop facts sufficient to assist the court. *Eaton*, 692 F.2d at 730-731 (holding that a dismissal for lack of jurisdiction was premature because a plaintiff must be given an opportunity to develop facts that support a determination on that issue). Indeed, when facts that go both to the merits of the case and the court's jurisdiction are in dispute, a district court "abuses its discretion if it completely denies a party jurisdictional discovery," so long as the party moves for the discovery and was not dilatory in its request. *Am. Civil Liberties*, 859 F.3d at 1341. Thus, the discretion that is afforded courts in granting jurisdictional discovery is more often limited to the *form* of discovery, as opposed to whether there should be any discovery at all. *Id.* The point of jurisdictional discovery is to prevent a defendant from defeating the jurisdiction of a federal court by withholding information on its contacts with the forum. *See, e.g., Diamond Chem. Co. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003)

Here, SGCH concedes a plaintiff is entitled to jurisdictional discovery where there are disputed issues of fact that would support the exercise of jurisdictional discovery (Mot. at 1); it just asserts that Plaintiffs have not established their right to discovery and have not shown that there is a factual dispute. But the cases SGCH cites in support of this position, which are easily distinguishable both in procedure and in substance, demonstrate the opposite.

Procedurally speaking, Plaintiffs' request is proper because they have affirmatively moved for the Court's leave, identify in detail the information sought from the jurisdictional discovery, and explain how such information would bolster their specific jurisdiction allegations. *Cf. Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786 (11th Cir. 2017) (plaintiff "buried" request for discovery in a motion to dismiss and did not specify information sought or purpose thereof); *Thompson v. Carnival Corporation*, 174 F. Supp. 3d 1327 (S.D. Fla. 2016) (plaintiff did not move for jurisdictional discovery, did not submit evidence or affidavits bolstering the request, and had not alleged specific jurisdiction over a foreign company that otherwise was not "at home" in Florida); *Iglesis v. Pernod Ricard, S.A.*, 2020 WL 13367918, at *3 (because plaintiff did not identify what issues were in dispute that could establish personal jurisdiction, explain the discovery sought, or identify how such discovery would inform general or specific jurisdiction—and instead filed a three-page motion with vague assertions that discovery would reveal Florida-based contacts—plaintiff had not met its burden *but was directed to remedy the shortfalls identified and renew its motion.*)

Plaintiffs' request is also substantively proper because it would clarify whether this Court can exercise personal jurisdiction over SGCH. Plaintiffs have alleged that Sino Global Capital formed part of an expansive conspiracy that took place in Florida (*See* ECF No. 182, ¶ 34), but there is a material dispute as to whether that conduct was undertaken by or can be imputed to SGCH. Importantly, Mr. Graham does *not* assert that SGCH does not operate, conduct, engage in, or carry on a business or any business venture in Florida; does not maintain a place of business, office, facility, agency, or office in Florida, or have any physical operations in Florida; or does not regularly do business in Florida. ECF No. 300-1, ¶¶ 17-24. *Cf. Yepez v. Regent Seven Seas Cruises*, 2011 WL 3439943, at *2 (S.D. Fla. Aug 5, 2011) (unpublished) (defendant had not registered to do business in Florida, did not do business in Florida, did not have registered agents for service of process in the United States, and had not committed a tort in Florida); *Auf v. Howard Univ.*, 2020 WL 1452350 (S.D. Fla. Mar. 25, 2020) (unpublished) (no allegations made that would support a finding that Defendants conducted business in Florida, and the motion was untimely).

Instead, Mr. Graham conclusorily maintains that SGCH employees were not involved in the FTX investment. ECF No. 300-1, ¶ 6. But he presents no evidence that would show which Sino Global entity was the actual investor or that the entities are even distinct. It bears mention that not only does Mr. Graham own and operate Sino Global, it appears to be just be a ten-person company. In this context, discovery would absolutely clarify the nature and extent of involvement by the Sino Global entities, and more importantly, whether Mr. Graham simply put on a different hat to conduct his dealings with FTX in order to evade the very consequences now at issue. Exactly who at Sino Global and which Sino Global entity was involved in the FTX conspiracy is a question of fact that discovery could and would resolve. These are facts that are critical to the Court's personal jurisdiction analysis.

If nothing else, SGCH's attacks on jurisdiction "go right to the merits of the overall case," and in the alternative to ordering jurisdictional discovery, "the proper course of action for a district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case [which is a challenge that can be addressed] in the proper manner: after discovery and with the protections of either a trial or review on summary judgment." *Douglas v. United States*, 814 F.3d 1268, 1275–76 (11th Cir. 2016).

**B. The Court Should Allow for Jurisdictional Discovery Before Ruling on the Rule 12 Motions and Should Allow for Any Necessary Amendments as Result.**

Limited jurisdictional discovery is routinely permitted prior to ruling on a motion to dismiss.[2] Further, courts allow for amendments resulting from such discovery to cure pleading

---

[2] *See Am. Civil Liberties, Union of Fla. v. City of Sarasota*, 859 F.3d 1337,1341 (11th Cir. 2017); *Happy Tax Franchising, LLC v. Hill*, Case No. 19-24539- CIV, 2020 WL 13221241, *1 (S.D. Fla. Jun 24, 2020) (granting leave to conduct jurisdictional discovery prior to deciding motion to dismiss); *Kilma v. Carnival Corp.*, 2008 WL 4559231, at *1 (S.D. Fla. Oct. 10, 2008) (same) (Moore, J.); *Sierra*, 2008 WL. 1771857, *2 (S.D. Fla. Apr. 15, 2008); *Eaton*, 692 F.2d at 729 (11th Cir. 1982) (holding it was premature to dismiss a claim for lack of jurisdiction where plaintiffs were not given an opportunity to elicit material through discovery to support a determination on jurisdiction); *Blanco v. Carigulf Lines*, 632 F.2d 656, 657 (5th Cir. 1980) (reversing a dismissal on jurisdictional grounds because "Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue" where the dismissal was entered before Plaintiff had an adequate opportunity to take jurisdictional discovery).

deficiencies in service of the general principle that "decisions on the merits are not to be avoided on the basis of 'mere technicalities.'" *Castros v. Signal Fin. Co. LLC*, 1:17-CV-21870-KMM, 2018 WL 1137099, at *1 (S.D. Fla. Feb. 4, 2018) (Moore, C.J.) (collecting cases). Granting Plaintiffs' motion would thus comport with the "policy of the federal rules…to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading," particularly where the proposed amendment would not violate any scheduling order in place and there is no "substantial reason" to deny the amendment, which "could include 'undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment[,]'" none of which would apply since Plaintiffs would be providing their first substantive amendment to the complaint after, at a minimum, taking narrow discovery to address the jurisdictional arguments raised by Sino Global. *Id.* (citations omitted).

## III.   CONCLUSION

For reasons herein, Plaintiffs' Motion should be granted.

Dated: November 27, 2023                                Respectfully submitted,

**By:** */s/ Adam Moskowitz*                             **By:** */s/ David Boies*
Adam M. Moskowitz                                        David Boies
Florida Bar No. 984280                                   Alexander Boies
Joseph M. Kaye                                           Brooke A. Alexander
Florida Bar No. 117520                                   **BOIES SCHILLER FLEXNER LLP**
**THE MOSKOWITZ LAW FIRM, PLLC**                         333 Main Street
Continental Plaza                                        Armonk, NY 10504
3250 Mary Street, Suite 202                              914-749-8200
Coconut Grove, FL 33133                                  dboies@bsfllp.com
Office: (305) 740-1423                                   aboies@bsfllp.com
adam@moskowitz-law.com                                   balexander@bsfllp.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*                                        *Co-Lead Counsel*


Joseph R. Saveri                                         James R. Swanson, La. Bar No. 18455
Christopher Young                                        Kerry J. Miller, La. Bar. No. 24562
Itak K. Moradi                                           Molly L. Wells, La. Bar. No. 36721
**JOSEPH SAVERI LAW FIRM**                               C. Hogan Paschal, La. Bar No. 38495
601 California Street, Suite 1000                        **FISHMAN HAYGOOD L.L.P.**
San Francisco, CA 94108                                  201 St. Charles Avenue, 46th Floor
Telephone: (415) 500-6800                                New Orleans, Louisiana 70170-4600
jsaveri@saverilawfirm.com                                (504) 586-5252; (504) 586-5250 fax
cyoung@saverilawfirm.com                                 jswanson@fishmanhaygood.com
imoradi@saverilawfirm.com                                kmiller@fishmanhaygood.com
                                                         mwells@fishmanhaygood.com
*Counsel to Plaintiffs and the Putative*                 hpaschal@fishmanhaygood.com
*Classes*
                                                         Robert Lieff
                                                         P.O. Drawer A
                                                         Rutherford, CA 94573
                                                         rlieff@lieff.com

                                                         *Counsel to Plaintiffs and the Putative*
                                                         *Classes*

9