UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

_____

THIS DOCUMENT RELATES TO:

Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

_____/

**PLAINTIFFS' REPLY IN RESPONSE TO DEFENDANTS DELTEC BANK AND JEAN CHALOPIN'S AND DEFENDANT MOONSTONE'S OPPOSITIONS TO PLAINTIFFS' OMNIBUS MOTION TO LIFT DISCOVERY STAY AND FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY, AND, IF NECESSARY TO AMEND THEIR COMPLAINTS WITH ANY FACTS ARISING FROM SUCH DISCOVERY**

Plaintiffs file this reply in support of their omnibus motion (R. Doc. 348) and in response to oppositions filed by Defendants Deltec Bank and Trust Company ("Deltec") and Jean Chalopin (R. Doc. 380) and by Farmington State Bank d/b/a Moonstone Bank ("Moonstone") (R. Doc. 379).

In advance of Sam Bankman-Fried's ("SBF's") criminal trial, this Court granted the government's request to stay discovery as to all proceedings because "allowing discovery to commence in the other Complaints would [have] potential to impact [SBF's] Criminal Action." R. Doc. 318. Though the trial is over, Defendants continue to benefit from the stay, implemented only because their co-conspirator was prosecuted and convicted of seven criminal counts.

In securing SBF's conviction, the government introduced evidence confirming that at least one of those counts—money laundering—involved Defendants' services, as by no later than May 20, 2021, Deltec was receiving wire transfers of customer funds directly into accounts held by the FTX Entities and controlled by SBF. *See* R. Doc. 361-1. Additionally, the government's witnesses testified that SBF routed "round-trip" fraudulent transfers through an entity called Emergent Fidelity Technologies ("Emergent") to obscure FTX's misappropriation of customer funds. *See* **Ex. A-1**, Tr., at 1740:13-1742:18. Reportedly, Emergent held accounts at Moonstone through which, upon information and belief, many of these fraudulent transactions were routed.[1]

Few banks were willing to assist FTX's misconduct in this way. On September 7, 2023, more than one month after Plaintiffs' Administrative Complaints ("ACs") were due, Ryan Salame, a former Alameda executive and CEO of FTX Digital Markets, confirmed in pleading guilty for participating in the FTX fraud that the FTX Entities were desperate to find banks willing to service their accounts because "[w]hen FTX was founded … many U.S. banks were reluctant to do business with cryptocurrency companies and those banks that were willing to open accounts for cryptocurrency companies had extensive customer due diligence and licensing requirements, *with*

---

[1] https://www.washingtonpost.com/business/2023/01/20/us-seizes-170-million-ftx/ (last accessed Nov. 25, 2023) (reporting that the government seized $170 million "from accounts in … a tiny Washington state-based bank that has ties to FTX's management [i.e, Moonstone] and that "[t[he accounts were held either by a company called Emergent Fidelity Technologies, which is majority-owned by Bankman-Fried, or FTX Digital Markets, a Bahamian subsidiary of FTX.").

1

*which FTX was not compliant.*" R. Doc. 361-1 at 7 (emphasis added). Insiders Caroline Ellison and Nishad Singh testified same,[2] demonstrating that Defendants rendered substantial assistance to the FTX Entities in part because no other banks were willing to open and service the accounts.

The extent to which Defendants assisted FTX's misconduct is coming still into fuller view. For example, on August 17, 2023, two weeks after Plaintiffs' ACs were due, the Federal Reserve announced an enforcement action against Moonstone and Chalopin arising from their failure to disclose in Moonstone's application for membership that the bank intended to service digital asset clients (i.e., the FTX Entities).[3] The enforcement action suggests that Moonstone and Deltec lied to obtain membership in the Federal Reserve so to provide the FTX Entities with access to the U.S. banking system, access that it badly needed, but could not find from other financial institutions.

SBF's trial and related enforcement actions highlight the need for the discovery that Plaintiffs seek.[4] Unlike in most cases, Plaintiffs did not have direct contact with Defendants, and thus have no access to the information necessary to vindicate their rights. As to Plaintiffs, Defendants are a black box: Plaintiffs' claims are rooted in evidence exclusively in the possession of Defendants, including communications between Defendants and the FTX Entities, insiders, and other co-conspirators, and services provided by Defendants to same. But, as the government's prosecution of SBF demonstrates, evidence supporting Plaintiffs' claims against Defendants does exist and can be had with the power of subpoena. Jurisdictional discovery will provide such evidence to Plaintiffs and, given the postures of Plaintiffs and Defendants in this case, is especially important here, "lest the [D]efendant[s] defeat the jurisdiction of a federal court by withholding information on [their] contacts with the forum." *See Peach.com, LLC v. Peachly, LLC*, No. 21-21-20636-CIV, 2021 WL 7542983, at *2 (S.D. Fla. June 16, 2021).

---

[2] *See* **Ex. A-2**, Tr., at 654:12-16 ("[I]t was hard for it to get bank accounts, so Alameda would receive money in its bank accounts for FTX customer deposits"); **Ex. A-3**, Tr. at 1354:6-16 ("Alameda accounts were used … was because FTX had a hard time securing bank accounts.").
[3] https://www.federalreserve.gov/newsevents/pressreleases/enforcement20230817a.htm (last accessed Nov. 24, 2023).
[4] Plaintiffs reference this evidence not to supplement their prima facie case but to illustrate what their requested discovery will uncover if this Court grants their requested leave.

2

And though Defendants claim to make only "facial" challenges to jurisdiction, they do so while denying knowledge, assistance, agreements, and acts in furtherance[5]—the ultimate facts necessary to establish jurisdiction over Plaintiffs' claims—while arguing the circumstantial evidence that Plaintiffs have diligently gathered from public sources is insufficient to plead the elements of their claims. In this way, Defendants do put jurisdiction in factual dispute, giving rise to Plaintiffs' qualified right to discovery. If nothing else, Defendants' attacks on jurisdiction "go right to the merits of the overall case," and in the alternative to ordering jurisdictional discovery, "the proper course of action for a district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. The court can then address this challenge in the proper manner: after discovery and with the protections of either a trial or review on summary judgment." *Douglas v. United States*, 814 F.3d 1268, 1275–76 (11th Cir. 2016).

1. **Plaintiffs pleaded Defendants committed intentional torts and engaged in civil conspiracy, giving rise to personal jurisdiction in Florida and Washington state.**

Defendants argue, initially, that Plaintiffs have no right to jurisdictional discovery, because Plaintiffs failed to plead a prima facie case for jurisdiction. To establish prima facie that Defendants are subject to personal jurisdiction in Florida and Washington state,[6] Plaintiffs need only plead, with respect to Florida, that Defendants committed an intentional tort causing injury within the state or participated in a conspiracy where a co-conspirator committed at least one act in furtherance in the state, and, with respect to Washington, that Defendants transacted any business or committed a tortious act within the state giving rise to Plaintiffs' claims.[7] As such, the "facts that go to the merits [of Plaintiffs' claims] and the court's jurisdiction are intertwined," *Am. Civil Liberties, Union of Fla. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017), a reality of the jurisdictional analysis that Defendants do not contest, and by sufficiently pleading their

---

[5] *See, e.g.*, R. Doc. 267 at 10 ("Plaintiffs fail to [plead an agreement between Deltec, Chalopin, and FTX] for the simple reason that such an agreement to conspire did not … exist.").
[6] Moonstone concedes that it is subject to personal jurisdiction in Washington and therefore no discovery is sought as to Moonstone's ties to Washington. R. Doc. 379 at 3.
[7] F.S.A. § 48.193; *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 (S.D. Fla. 2017); Wash. Rev. Code Ann. § 4.28.185 (West); *see also TRC Tire Sales, LLC v. Extreme Tire & Serv.*, Inc., No. CV-08-015-FVS, 2008 WL 3200727, at *2 (E.D. Wash. Aug. 6, 2008).

claims, Plaintiffs sufficiently pleaded a prima facie case for jurisdiction.[8]

*First,* Plaintiffs pleaded each Defendant had "general awareness" they played part in FTX's "overall improper activity" from *inter alia* knowledge gleaned from their "long-time friend[ships]" with the FTX Entities[9] and executives,[10] as well as from their diligence on FTX, including:

- Deltec was obligated as a Bahamian Supervised Financial Institution to conduct diligence on FTX before opening its accounts, including verifying the FTX Entitites's identity (i.e., beneficial ownership). This required Deltec to maintain ongoing monitoring of FTX's banking activity, including (1) identifying the source of funds transferred into, out from, and among the FTX Entities' accounts; (2) obtaining payer and payee information for cross-border wire transfers and transfers greater than $1,000; and (3) questioning the FTX Entitites about unusual activity in their accounts."[11] Similarly, Moonstone was required to adhere to certain anti-money laundering ("AML") and KYC laws and regulations, obligating it to identify and verify the FTX Entities' beneficial owners, sources of funds, and intended purposes of the accounts, as well as to monitor and report suspicious transactions of $5,000 or more in the accounts.[12] From this, Deltec and Moonstone would have learned that FTX customer deposits were transferred to Alameda and other entities that SBF separately owned.

- Chalopin and his son Janvier Chalopin, Moonstone's chief digital officer, solicited Alameda for start up capital upon their purchase of Moonstone and, after "pitch[ing Alameda] the whole roadmap," secured an $11.5 million investment—which the Chaloins would have learned was sourced from FTX customer funds, nearly doubling the bank's valuation overnight and giving SBF overlapping ownership of Moonstone and the FTX Entities.[13] The Chalopins negotiated the deal with Dan Friedberg, who held executive roles at both FTX and Alameda, revealing the overlap of—and conflicts of interest between—the FTX Entities, as well as the total lack of appropriate management, governance and other controls at FTX.[14]

- Chalopin, as chairman of Deltec and Moonstone, obtained knowledge of FTX's misconduct from the diligence conducted by the two banks, which knowledge is imputed to Deltec and Moonstone by law.[15]

---

[8] *See, e.g.*, R. Doc. 379 at 8 ("Plaintiffs simply have not stated a prima facie case for jurisdiction because they have not sufficiently alleged a conspiracy claim against Moonstone."); R. Doc. 380 at 10 ("Plaintiffs' allegations … are utterly conclusory and speculative, and clearly unsupported by any factual allegations. Plaintiffs therefore cannot claim conspiracy-based jurisdiction.")
[9] As used herein, "FTX Entities" refers to FTX Trading Ltd., West Realm Shires Inc. ("FTX US" and, together with FTX Trading Ltd., "FTX"), Alameda Research, LLC ("Alameda").
[10] *See* R. Doc. 368 at 16 ("Mr. Chalopin touted that 'Deltec has been a long-time friend of FTX, and it is our pleasure to support them.'") (citing R. Doc. 155, ¶ 296); R. Doc. 361 at 12 (same).
[11] R. Doc. 361 at 14-15 (citing R. Doc. 155, ¶ 300).
[12] R. Doc. 368 at 20-21 (citing R. Doc. 155, ¶¶ 309-313).
[13] R. Doc. 368 at 35.
[14] R. Doc. 361 at 16 (citing R. Doc. 155, ¶¶ 305, 307-308); R. Doc. 368 at 18-19 (same).
[15] R. Doc. 368 at 29 (citing *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*, 144 F.3d 732, 736 (11th Cir. 1998); *Pearson v. Deutsche Bank AG*, 2023 WL 2610271, at *24 (S.D. Fla. Mar. 23, 2023); *Interlake Porsche & Audi, Inc. v. Bucholz*, 728 P.2d 597, 607

From this diligence, Plaintiffs allege Defendants learned that FTX's representations as to its risk management controls, conflicts of interest, and other investor protections were false (i.e., FTX was committing fraud); that FTX was not, in fact, holding customer deposits for the customers' benefit, segregated from FTX's own assets (i.e., FTX was committing fiduciary breach); and that FTX was instead siphoning those funds through Alameda—a major shareholder of Moonstone— to enrich SBF and other insiders (i.e., FTX was converting customer assets), all by way of the FTX Entities' accounts at Deltec and Moonstone, Chalopin's two banks.

Plaintiffs similarly sufficiently pleaded that Defendants "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling [FTX's fraud, fiduciary breach and conversion] to occur,"[16] rendering substantial assistance to FTX's misconduct, including:

- When "FTX needed bank accounts that would allow FTX customers to deposit dollars with FTX that could be used to purchase cryptocurrency and pay for transactions," services many banks were "reluctant to do," Defendants stepped in, opening 17 accounts for the FTX Entities at Deltec and two at Moonstone.[17]

- Upon opening the FTX Entities' accounts, Moonstone and Deltec, at the direction of Chalopin, provided services that John Ray, III, the 40-year veteran appointed to administer the FTX bankruptcy estate, described as "certainly highly irregular" and effected transfers between FTX accounts at Moonstone and Deltec that have "gotten [the FTX bankruptcy estate's] attention"—including, upon information and belief, transfers of customer funds from accounts at Moonstone in the U.S. to accounts at Deltec in The Bahamas, beyond U.S. law enforcement's reach.[18]

- Moonstone obtained—as Plaintiffs now know, through deceit—membership in the Federal Reserve, providing FTX with access to the U.S. banking system.[19]

- Moonstone and Chalopin concealed FTX's misconduct though each was obliged to disclose FTX's fiduciary breach to FTX customers under Washington law, *see In re Consol. Meridian Funds*, 485 B.R. 604, 626 (Bankr. W.D. Wash. 2013).[20]

Plaintiffs further allege, because FTX collapsed in Miami, Defendants' aiding and abetting FTX's fraud, fiduciary breach and conversion caused injuries emanating from Florida.[21] At the same time,

---

(Wash. 1986); R. Doc. 361, at 28 (same).
[16] *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017); *In re Mastro*, 2017 WL 2889659 (Bankr. W.D. Wash. July 6, 2017), at *16.
[17] R. Doc. 361 at 29-30 (citing R. Doc. 155, at ¶¶ 132, 298, 300-02 and Salame indictment, ¶ 5).
[18] R. Doc. 368 at 24 (citing R. Doc. 155, at ¶¶ 314-315).
[19] R. Doc. 368 at 31-32 (citing R. Doc. 155, at 315, 337).
[20] R. Doc. 368 at 32-33.
[21] *See* R. Doc. 368 at 7 (citing R. Doc. 155, ¶ 39).

5

Plaintiffs allege that Deltec and Chalopin transacted business in Washington state, by (1) effecting banking transfers from FTX Entities' accounts at Moonstone; and (2) soliciting Alameda's $11.5 investment through negotiations with Dan Friedberg in Seattle, Washington. With these allegations, Plaintiffs pleaded prima facie that Defendants' aiding and abetting FTX's fraud, fiduciary breach, and conversion, caused injury in Florida and involved tortious conduct in Florida and Washington state, giving rise to personal jurisdiction under Florida and Washington law.

Plaintiffs' civil conspiracy claims further confer personal jurisdiction in Florida. Plaintiffs allege many of Defendants' co-conspirators were in Florida—including, for example, FTX US, LedgerX d/b/a/ FTX US Derivatives ("LedgerX"), and Zach Dexter, president of LedgerX and FTX US—and that acts in furtherance of the conspiracy were carried out in the state—including, for example, the purchase of naming rights to the Miami Heat's basketball arena and FTX US's acquisition of LedgerX, both of which were integral to FTX's broader campaign to paint itself as the safest cryptocurrency exchange, a campaign in which Defendants played a direct role by, for example, co-sponsoring FTX's Crypto Bahamas summit.[22] Plaintiffs adequately alleged Defendants acted in furtherance of the conspiracy, pleading that Defendants assisted FTX's misconduct for reasons above, and alleged Defendants agreed to take such actions, evidenced by:

- Chalopin's close ties with SBF for many years and regular communications with Dan Friedberg, another of the FTX Entities' top executives. *See Koch v. Royal Wine Merchants, Ltd.*, 907 F. Supp. 2d 1332, 1347 (S.D. Fla. 2012) (finding allegations of regular communications and other close contacts, plus knowledge of misconduct, sufficient to plead agreement).

- Moonstone's role as the FTX Entities' primary entry point to the U.S. banking system as one of the only financial institutions willing to service the FTX Entities in the U.S, despite its knowledge of FTX's misconduct, as well as Moonstone's effecting of the FTX Entities' "highly irregular" transfers of customer funds to offshore accounts after deceiving the Federal Reserve to obtain the necessary memberships to do that. *See BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1351 (S.D. Fla. 2021) (where defendant knew of and aided the fraud, "the Court is hard pressed to conclude that this was all done without any kind of agreement that plausible supports a civil conspiracy").

- Deltec's role as one of FTX's primary banks as one of the only institutions with capabilities to accept, hold, process, and transfer digital assets and cryptocurrency,

---

[22] R. Doc. 155, ¶¶ 39, 263, 289, 290-92, 293-96.

- and Deltec's effecting FTX's "highly irregular" transfers of customer funds to its offshore accounts despite its knowledge of FTX's misconduct. *See id.*

- The handsome rewards paid by the FTX Entities to Deltec and Moonstone for their assistance, with Deltec's parent company receiving a $50 million "loan" from an FTX affiliate at a time in which it was in critical need of a capital injection, and with Moonstone receiving the $11.5 million investment from Alameda, upon the closing of which SBF and Chalopin shared ownership of bank. *See Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. Dist. Ct. App. 1987) (evidence that defendant had knowledge of, participated in, and benefitted from a fraud could give rise to the inference that defendant conspired in furtherance of the fraud).[23]

As there is "[n]o requirement … that parties formalize or even articulate the agreement [to conspire]" and "the parties' conduct may imply an agreement," *White v. Verizon Fla., LLC*, 2009 WL 10670227, at *2 (M.D. Fla. Nov. 9, 2009), Plaintiffs sufficiently pleaded that Defendants engaged in a civil conspiracy with the FTX Entities and other co-conspirators, a conspiracy rooted in Miami, where FTX US was headquartered, and giving rise to personal jurisdiction in Florida.

  2. **This Court may order the jurisdictional discovery that Plaintiffs seek.**

Defendants suggest the Court may not order jurisdictional discovery because Defendants have only challenged this Court's jurisdiction facially. While true Defendants did not attach affidavits to their motions to dismiss, it is not true that Defendants did not lodge factual attacks therein. For example, Deltec and Chalopin contest that any agreement to conspire existed between them and FTX, arguing "Plaintiffs fail to [plead an agreement to conspiracy between Deltec, Chalopin, and FTX] for the simple reason that such an agreement to conspire did not—and does not—exist." Defendants further argue they did not know of FTX's misconduct and did nothing to assist that misconduct.[24] These facts "go right to the merits of the overall case," and in the

---

[23] *See also Perkumpulan Inv. Crisis Ctr. Dressel—WBG v. Regal Fin. Banccorp, Inc.*, 781 F. Supp. 2d 1098, 1117 (W.D. Wash. 2011); *Money Mailer, LLC v. Brewer*, 2018 WL 1916665, at *3 (W.D. Wash. Apr. 23, 2018).

[24] *See, e.g.*, R. Doc. 267 at 9 ("Plaintiffs do not allege that either Deltec or Mr. Chalopin had any communications with FTX, its founder, [SBF], or any FTX employee regarding any alleged conspiracy, fraud, or other wrongdoing …. Plaintiffs do not allege how or when Deltec and Mr. Chalopin supposedly acquired this knowledge, or what they allegedly knew about FTX's conduct."); *id.* at 22 ("[T]here are no allegations whatsoever regarding any particular acts or communications by Deltec or Mr. Chalopin in connection with any purported conspiracy."); R. Doc. 262 at 16 ("Plaintiffs fail to make factual allegations that Moonstone actually knew that FTX was perpetrating a fraud on, breaching its fiduciary duties to, or stealing from FTX's customers."); *id.* at 21 ("[T]he Complaint alleges that "Moonstone took overt acts in furtherance of the FTX fraud, with Moonstone providing FTX access to the U.S. banking system, and effecting transfers

alternative to ordering discovery, "the proper course of action for a district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. The court can then address this challenge in the proper manner: after discovery and with the protections of either a trial or review on summary judgment." *Douglas*, 814 F.3d at 1275–76.

By exploiting these technicalities of procedure, Defendants attempt to narrow this Court's broad discretion to order "discovery of facts necessary to ascertain" jurisdiction. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982) ("It is now clear that federal courts have the power to order, at their direction, the discovery of facts necessary to ascertain their competency to entertain the merits."); *see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 790 (11th Cir. 2014) ("Federal courts clearly have the power to order jurisdictional discovery."). Indeed, "case law suggests that federal courts should order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to jurisdiction." *Id.* Such is the case here. Each of Plaintiffs' discovery requests directly relates to an element of their aiding and abetting and/or civil conspiracy claims, which in turn give rise to personal jurisdiction:

- Requests concerning Defendants' opening and servicing of the FTX Entities' accounts relate to allegations Defendants learned of FTX's misconduct in the course of opening and banking the accounts and substantially assisted FTX's misconduct by providing "highly irregular services" to the FTX Entities.[25]

- Requests concerning Defendants' additional services to the FTX Entities and/or insiders, such as lobbying, lending or other financing, relate to allegations learned of that misconduct in the course of providing such services and assisted FTX's misconduct in providing those services.[26]

- Requests concerning Defendants' AML, KYC and other diligence, monitoring, and suspicious activity reporting policies and procedures—as well as any actual diligence, monitoring, reporting or review conducted by Defendants on the FTX Entities, including sources of funds and banking activity—relate to allegations Defendants learned of FTX's misconduct through diligence.[27]

---

of Class Member funds into accounts under SBF's control." But this is no more than providing wholly routine banking services to its customer."); *id.* at 23 (Plaintiffs fail to plead "Moonstone agreed with anyone to commit fraud, breach fiduciary duties, or convert Class Members funds.").
[25] R. Doc. 348-5 at 14-15, 18-19, 22-24 (Nos. 1, 2, 6, 12, 15, 16, 23, 36); *id.* at 38-39, 42-43, 46-48 (Nos. 1, 2, 6, 12, 15, 16, 23, 35); *id.* at 62-64 (Nos. 1, 2, 15, 16).
[26] *Id.* at 14, 23, 24 (Nos. 5, 30, 32); *id.* at 38, 47-48 (Nos. 5, 31); *id.* at 62 (Nos. 3, 4, 5, 11-13).
[27] *Id.* at 14-23 (Nos. 3, 4, 7, 8, 9, 10, 11, 14, 17, 18, 19, 24, 25, 26, 27, 28, 37, 38); *id.* at 38-48 (Nos. 3, 4, 7, 8, 9, 10, 11, 14, 17, 18, 19, 24, 25, 26, 27, 28, 36, 37).

8

- Requests concerning the importance of the FTX Entities' accounts to Defendants' business, for example, based on revenue or profitability, relate to allegations Defendants agreed, at least implicitly, to assist FTX's misconduct because it benefited Defendants financially.[28]

- Requests concerning Tether Limited Inc. ("Tether") relate to allegations Defendants knew of FTX's misconduct because Tether ran a similar fraud through Deltec that likely involved FTX. In interviews made public after Plaintiffs' ACs were filed, SBF admitted that FTX "wired [Tether] a lot of dollars" by "going through three different jurisdictions [and] intermediary banks," suggesting that Tether accounts at Deltec and/or Moonstone were involved in FTX's misconduct.[29]

- Requests concerning the $50 million loan by Norton Hall Ltd., an FTX affiliate, in favor of Deltec's parent company, the $11.5 million investment by Alameda in Moonstone, and other efforts by Defendants to obtain funding, investments, loans or other financing from the FTX Entities relate to allegations that Defendants were rewarded for their assistance with FTX's misconduct, evidencing that Defendants agreed, at least implicitly, to engage in a conspiracy with FTX.[30]

Because each request relates to an element of Plaintiffs' claims, this discovery will support jurisdiction over Defendants. Because Plaintiffs have sought leave for this discovery before any ruling from on Defendants' motions to dismiss,[31] Plaintiffs' requests are timely.[32] This Court is empowered to allow the discovery that Plaintiffs seek.

### 3. Plaintiffs are entitled to pursue litigation against Defendants in Florida.

Moonstone suggests that because it contests jurisdiction only in Florida, ceding any objection to personal jurisdiction in Washington, Plaintiffs should be forced to litigate their claims against Moonstone in Washington courts. R. Doc. 379 at 16-17. But it is the plaintiffs' privilege to choose the venue in which to file, and "[i]n the Eleventh Circuit there is a 'strong presumption against disturbing plaintiffs' initial forum choice." *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1339 (M.D. Fla. 2010) (quoting *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004)). Plaintiffs' preferred forum is the

---

[28] *Id.* at 22-23 (Nos. 20, 21, 22); *id.* at 45-46 (same).
[29] Zeke Faux, *Number Go Up: Inside Crypto's Wild Rise and Staggering Fall* (2023); R. Doc. 348-5 at 24 (No. 31); *id.* at 47 (No. 30); *id.* at 63 (No. 8).
[30] R. Doc. 348-5 at 24 (Nos. 33, 34, 35); *id.* at 48 (Nos. 32, 33, 34); *id.* at 62-63 (Nos. 6, 7, 9-10).
[31] *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999) ("discovery efforts" before motion to dismiss was ruled on are timely) (citing *Eaton*, 692 F.3d at 729-31); *cf. Mother Do I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1146 (S.D. Fla. 2007) (denying jurisdictional discovery where plaintiffs agreed not to take any discovery until after the court ruled on motion to dismiss).
[32] Deltec and Chalopin omit that for much of the time since Plaintiffs filed their complaints, they worked to serve Deltec and Chalopin in The Bahamas, as neither would agree to waive service.

Southern District of Florida, where the original *O'Keefe* complaint was filed on February 22, 2023. Plaintiffs are entitled to prosecute their claims against Defendants in this Court.

Moonstone's argument that Plaintiffs' "fail[ure] and refus[al] to dismiss the Florida Action, instead having both the Florida and Washington Actions transferred into this MDL" in an "effort" to "manufacture and now exploit the … Florida and Washington Actions" is not well taken.[33] Plaintiffs are simply trying to protect their interests, as the law permits them to do. While Plaintiffs are confident that Defendants are subject to personal jurisdiction in Florida, if this Court were to determine that such jurisdiction was lacking, Plaintiffs' claims against Moonstone would be preserved in Washington, where Moonstone does not contest jurisdiction. That is not "gamesmanship;" it is an appropriate use of the procedural rules, which Moonstone made necessary with its objection to jurisdiction in Florida.[34]

### 4. Plaintiffs' extrinsic evidence demonstrates the need for discovery.

Deltec and Chalopin protest that Plaintiffs have offered "not a single reason" why the discovery stay should be lifted. But this Court implemented the stay only so that the MDL would not interfere with SBF's criminal trial. That trial is now over and, as detailed above, exhibits and testimony introduced at the trial, which commenced nearly two months after Plaintiffs' ACs were due, confirm Defendants were closely involved in perpetuating FTX's misconduct. Defendants' entanglement in the FTX fraud gives rise to jurisdiction over Plaintiffs' claims, as Plaintiffs' jurisdictional discovery will show, and provides "good cause" to amend Plaintiffs' ACs.[35]

### CONCLUSION

For reasons herein, Plaintiffs' Motion should be granted.

---

[33] R. Doc. 379 at 16.
[34] *See, e.g.*, *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, No. 08-MD-01916-KAM, 2018 WL 11251118, at *5 (S.D. Fla. Aug. 13, 2018) ("[T]he rule against claim-splitting does not apply … where the first court lacked personal jurisdiction over at least some of the defendants in the second-filed suit.") (citations omitted).
[35] Moonstone further objects Plaintiffs' motion violates Local Rule 15.1. But Plaintiffs could not attach proposed amended ACs to the instant motion, as they have not yet conducted the requested discovery. Plaintiffs will submit proposed amendments if and as necessary to comply with any ruling from this Court.

Dated: November 27, 2023                       Respectfully submitted,

**By:** */s/ Adam Moskowitz*                       **By:** */s/ David Boies*
Adam M. Moskowitz                               David Boies
Florida Bar No. 984280                          Alexander Boies
Joseph M. Kaye                                  Brooke A. Alexander
Florida Bar No. 117520                          **BOIES SCHILLER FLEXNER LLP**
**THE MOSKOWITZ LAW FIRM, PLLC**                333 Main Street
3250 Mary Street, Suite 202                     Armonk, NY 10504
Coconut Grove, FL 33133                         914-749-8200
Office: (305) 740-1423                          dboies@bsfllp.com
adam@moskowitz-law.com                          aboies@bsfllp.com
joseph@moskowitz-law.com                        balexander@bsfllp.com

*Co-Lead Counsel*                               *Co-Lead Counsel*

Joseph R. Saveri                                James R. Swanson, La. Bar No. 18455
Christopher Young                               Kerry J. Miller, La. Bar. No. 24562
Itak K. Moradi                                  Molly L. Wells, La. Bar. No. 36721
**JOSEPH SAVERI LAW FIRM**                      C. Hogan Paschal, La. Bar No. 38495
601 California Street, Suite 1000               **FISHMAN HAYGOOD L.L.P.**
San Francisco, CA 94108                         201 St. Charles Avenue, 46th Floor
Telephone: (415) 500-6800                       New Orleans, Louisiana 70170-4600
jsaveri@saverilawfirm.com                       (504) 586-5252; (504) 586-5250 fax
cyoung@saverilawfirm.com                        jswanson@fishmanhaygood.com
imoradi@saverilawfirm.com                       kmiller@fishmanhaygood.com
                                                mwells@fishmanhaygood.com
*Counsel to Plaintiffs and the Putative         hpaschal@fishmanhaygood.com
Classes*
                                                Robert Lieff
                                                P.O. Drawer A
                                                Rutherford, CA 94573
                                                rlieff@lieff.com

                                                *Counsel to Plaintiffs and the Putative
                                                Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

                                        /s/ *Adam M. Moskowitz*
                                            Adam M. Moskowitz

11