**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-md-03076-KMM**

| |
|---|
| IN RE:<br><br>**FTX CRYPTOCURRENCY EXCHANGE**<br>**COLLAPSE LITIGATION** |
| THIS DOCUMENT RELATES TO:<br><br>Bank Defendants |

**DEFENDANT MOONSTONE BANK'S REPLY IN SUPPORT OF MOTION TO**
**DISMISS PLAINTIFFS' ADMINISTRATIVE CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.   PLAINTIFFS' REVISED  ARGUMENTS CANNOT CURE GAPS IN THE
     COMPLAINT. ....................................................................................................................1

II.  THE FEW NON-CONCLUSORY ALLEGATIONS AGAINST MOONSTONE
     DO NOT SHOW THAT PLAINTIFFS ARE ENTITLED TO ANY RELIEF .................3

     a.   Unjust Enrichment (Count V)...............................................................................3

          i.    The Opposition fails to rebut Moonstone's grounds for dismissal. .............3

          ii.   Plaintiffs' new theory of benefit also fails ................................................6

     b.   Common Law Aiding and Abetting Claims (Counts II, III, and IV)......................8

          i.    Failure to allege actual knowledge ............................................................8

          ii.   Failure to allege indicia of knowledge ......................................................15

          iii.  Failure to allege substantial assistance .....................................................16

     c.   Civil Conspiracy (Count I).....................................................................................19

     d.   Personal Jurisdiction ..............................................................................................21

III. CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

*Aceto Corp. v. TherapeuticsMD, Inc.*,
  953 F. Supp. 2d 1269 (S.D. Fla. 2013)................................................................... 5, 6

*Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*,
  631 F. Supp. 3d 950 (W.D. Wash. 2022) ...................................................................... 2

*Angell v. Allergan Sales, LLC*,
  3:18-CV-282-J-34JBT, 2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) .......................... 8, 9, 10

*Baptista v. JPMorgan Chase Bank, N.A.*,
  640 F.3d 1194 (11th Cir. 2011)...................................................................................... 6

*Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*,
  144 F.3d 732 (11th Cir. 1998)...................................................................................... 14

*Benson v. QBE Ins. Corp.*,
  61 F. Supp. 3d 1277 (S.D. Fla. 2014).......................................................................... 2

*Burban v. City of Neptune Beach, Fla.*,
  920 F.3d 1274 (11th Cir. 2019).................................................................................... 8

*Calvert v. Commercial Bank of Washington, N.A.*,
  No. 10-17952, 2013 WL 3487562 (Bankr. W.D. Wash. May 14, 2013)....................... 19

*Chang v. JPMorgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017).................................................................................... 9, 16

*Gilison v. Flagler Bank*,
  303 So. 3d 999 (Fla. 4th DCA 2020) ........................................................................... 9, 15

*Groom v. Bank of Am.*,
  2012 WL 50250 (M. D. Fla. Jan. 9, 2012) ................................................................... 18

*Heilig Tr. & Beneficiaries v. First Interstate Bank of Wash.*,
  93 Wash. App. 514, 969 P.2d 1082 (1998) ................................................................. 19

*Honig v. Kornfeld*,
  339 F. Supp. 3d 1323 (S.D. Fla. 2018)........................................................................ 10

*Huls v. Llabona*,
  437 F. App'x 830 ......................................................................................................... 2

*In re Consolidated Meridian Funds*,
  485 B.R. 604 (W.D. Wash., Jan. 3, 2013).................................................................... 9

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   584 F. Supp. 3d 1161 (S.D. Fla. 2022) ................................................................. 17

*In re Takata Airbag Products Liability Litigation*,
   2017 WL 2406711 (S.D. Fla. Jun. 1, 2017) ............................................................ 4

*Interlake Porsche & Audi, Inc. v. Bucholz*,
   45 Wash. App. 502, 728 P.2d 597 (1986) ............................................................ 14

*Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*,
   653 P.2d 1331 (Wash. 1982) .................................................................................. 5

*Isaiah v. JPMorgan Chase Bank, N.A.*,
   2017 WL 5514370 ................................................................................................... 9

*Lamm v. State Street Bank & Trust*,
   749 F.3d 938 (11th Cir. 2014) ............................................................................. 10

*Lawrence v. Bank of Am., N.A.*,
   455 F. App'x 904 (11th Cir. 2012) ........................................................................ 9

*Lawrence v. Bank of Am., N.A.*,
   2010 WL 3467501 (M.D. Fla. Aug. 30, 2010) ................................................ 8, 15

*McKally v. Perez*,
   87 F. Supp. 3d 1310 (S.D. Fla. 2015) .......................................................... passim

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) ........................................................................ 1, 22

*Pearson v. Deutsche Bank AG*,
   2022 WL 951316 (S.D. Fla. Mar. 30, 2022) .................................................. 12, 14

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) ........................................................................ 8

*Ricchetti v. Starfish Beach S., S.A.*,
   No. 10CV21754, 2010 WL 11451771 (S.D. Fla. Dec. 27, 2010) ........................ 19

*Romano v. Motorola, Inc.*,
   2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) ....................................................... 5

*Stewart v. Bank of Am., N.A.*,
   2012 WL 13106302 (M.D. Fla. Feb. 28, 2012) ................................................... 19

*Virgilio v. Ryland Grp., Inc.*,
   680 F.3d 1329 (11th Cir. 2012) ......................................................................... 6, 7

*Wang v. Revere Cap. Mgmt., LLC,*
  2023 WL 2198570, at *8 (S.D. Fla. Feb. 15, 2023), *report & rec. adopted*, No. 22-CV-
  80884-RAR, 2023 WL 2183382 (S.D. Fla. Feb. 22, 2023) ....................................................... 7

*Wiand v. Wells Fargo Bank, N.A.,*
  938 F. Supp. 2d 1238 (M.D. Fla. 2013) ............................................................................. 10, 12

*Williams v. Wells Fargo Bank N.A.,*
  2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ............................................................................ 4

*World Class Yachts, Inc. v. Murphy,*
  731 So. 2d 798 (Fla. 4th DCA 1999) ...................................................................................... 21

(iv)

The Opposition's tabloid style twisting of Plaintiffs' actual allegations, coupled with its reliance on sensationalized new content, only further highlight the deficiencies of Plaintiffs' claims.[1] More fiction than fact, Plaintiffs' revised claims against Moonstone amount to unreasonable inferences upon anecdotal (and outright false) allegations and flawed legal theories. As is well-settled in this Circuit, "***conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal***." *E.g.*, *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (emphasis added). When one looks beyond the hyperbole, it is clear the claims against Moonstone must be dismissed.

## I. PLAINTIFFS' REVISED ARGUMENTS CANNOT CURE GAPS IN THE COMPLAINT.

Plaintiffs finesse their Opposition's "Factual Allegations" to recast Moonstone's supposed role in the conspiracy and to wholly create a fantasy where the "largest financial fraud in US history," in which FTX allegedly "stole more than $8 billion in Class Member Funds" (AC, ¶ 147), could not have been perpetrated without Moonstone. Instead of confining themselves to the Complaint's allegations, Plaintiffs improperly interject new allegations and assumptions to magically conclude that Moonstone must have played a "critical" role in this fraud. (Opp., 1.) But even if this Court were to indulge, for example, Plaintiffs' attempts to rely on the trial of Sam Bankman-Fried (which encompassed five weeks, hundreds of trial exhibits, and almost two dozen witnesses) and the sworn plea agreements of his ***actual*** co-conspirators, ***Plaintiffs cannot cite to a single statement in the trial transcript or in the plea agreements that relates to Moonstone at all.***

---

[1] (*See* DE 368, or "Opposition.") This Reply utilizes the same acronyms as Moonstone's Motion to Dismiss (DE 262, or "MTD").

1

In addition to improperly resting on new allegations,[2] the Opposition misattributes allegations about Deltec to Moonstone,[3] contradicts the Complaint,[4] and relies on inapt case law[5] and red herrings[6] (as well as outright falsehoods[7]). But in deciding a motion to dismiss for failure to state a claim, the Court "considers only the four corners of the complaint, along with any documents attached to the complaint or incorporated into the complaint by reference." *See*, *e.g.*, *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. 2014)); *accord Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950, 961 (W.D. Wash. 2022). New averments cannot cure the Complaint's shortcomings and must be disregarded. *McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) (citing *Huls v. Llabona*, 437 F. App'x 830, 832 n. 5 (11th Cir. 2011)) (a complaint may not be amended by briefs in opposition to a motion to dismiss).

One of the most striking examples of inventing new facts is Plaintiffs' unqualified assertion

---

[2] Nowhere is Plaintiffs' ploy made more obvious than its reliance on two exhibits that are ***not*** referenced in the Complaint, do not even mention Moonstone, and on their face bear no relation whatsoever to Moonstone. (Opp., Ex. A, Exs. 1-2.)

[3] For example, the Complaint expressly alleges that Deltec (not Moonstone) offered "one-of-a-kind" digital financial services. In contrast, the Complaint alleges that Moonstone was one of three U.S. banks to have FTX digital asset accounts. (AC, ¶¶ 304, 316; AC, ¶ 313 (alleging FTX gained access to a "third point of entry to the US banking system" when it made deposit at Moonstone).)

[4] For example, while Plaintiffs state that Moonstone offered a "service that other U.S. Banks refused to provide" (Opp., 26), they alleged that two other U.S. banks, Signature and Silvergate, provided FTX this service and an entry point to the Federal Reserve (Opp., 18; AC ¶¶ 304, 337).

[5] For example, see *infra* note 16.

[6] For instance, Plaintiffs now refer to Moonstone as Deltec's "sister bank" (Opp., 2, 19, 26-27), without basis. Plaintiffs' characterization of Alameda as a "majority shareholder" in Moonstone (*id.* at 14, 30) is not only absent from the Complaint, but also ignores Mr. Ray's sworn testimony, during the very same Congressional testimony Plaintiffs cite, that Alameda's investment in Moonstone was a *minority share* of 10%. *See infra* n.23.

[7] As Moonstone noted in its Motion to Dismiss, and which Plaintiffs refused to address in their Opposition, the key "factual allegations" they rely on to establish "actual knowledge" (Chalopin allegedly being CEO and Chairman of Moonstone) and "substantial assistance" (Moonstone transferring any of the FTX deposit) are not even true. (*See* MTD, 2 n.4, 8 n.8.) Moonstone will not, however, be goaded into a factual dispute that would reward Plaintiffs' falsehoods.

that Moonstone "helped fence Class Member funds over across the U.S. border," (*e.g.*, Opp., 12), even though ***there is no well-pled allegation that any FTX deposit at Moonstone ever left Moonstone***. Nor could there be, because it is a matter of public record that the $50 million deposit actually referenced in the Complaint—whether or not it was FTX customer funds—never left Moonstone Bank until it was seized by the U.S. Department of Justice, where it remains. (*See* MTD, 8 n.8.)

At its core, Plaintiffs' Complaint fails to plausibly allege anything more than Moonstone "*must have*" or "*would have*" known about FTX's alleged fraud, which is not only wrong but also legally insufficient to prove that Moonstone conspired with or aided and abetted FTX's fraud, breach of fiduciary duty, or conversion. When stripped down to the non-conclusory allegations about Moonstone, specifically named in just 21 of its 359 paragraphs, the Complaint contains no facts to show any wrongdoing by Moonstone, any basis for joint liability with FTX, or any entitlement to relief by Plaintiffs. Moreover, because the Complaint fails to show any connections between Moonstone and Florida and does not state a claim for civil conspiracy, the Southern District of Florida also lacks personal jurisdiction over Moonstone in the Florida Action. Even if the gratuitous new content and unreasonable assumptions in Plaintiffs' Opposition could be considered by the Court, Plaintiffs' briefing does nothing to remedy the factual and logical gaps fatal to their Complaint.

## II.   THE FEW NON-CONCLUSORY ALLEGATIONS AGAINST MOONSTONE DO NOT SHOW THAT PLAINTIFFS ARE ENTITLED TO ANY RELIEF

### a.   *Unjust Enrichment (Count V)*

#### i.   The Opposition fails to rebut Moonstone's grounds for dismissal.

As demonstrated in the Motion to Dismiss, even if the Complaint actually alleged that Plaintiffs conferred any benefit on Moonstone, such benefit was indubitably ***not directly conferred***

and did not give rise to any additional consideration owed by Moonstone. (*See* MTD, pp. 7-8.) Each of these defects is fatal as a matter of law to their unjust enrichment claim, and the Opposition does not show otherwise. In Count V, it is expressly alleged ***only*** that Plaintiffs "conferred benefits on Deltec and Moonstone by depositing funds into and using the FTX Platform" and that "Deltec and Moonstone acquired ill-gotten gains, including in the form of revenues derived from Plaintiffs' and other class members' funding and use of the FTX Platform." (AC, ¶¶ 356-57.) The Complaint contains no facts linking the FTX Platform, which it alleges was operated by "FTX Group" (AC ¶ 6), to Moonstone. (MTD, at 6.) Ignoring their own Complaint, Plaintiffs now suggest (for the first time citing an online post about "how banks generally make money"), again impermissibly attempting to amend their Complaint through an opposition, that their belief that the $50 million deposited by FTX was Class Member funds is grounds to further infer that the deposit was "a primary profit source for the bank." (Opp., 31-32, n.163.)[8]

Moreover, Plaintiffs' cases about sales through intermediaries are inapt, and fail to rebut any of the more apposite authority cited by Moonstone requiring a direct conferral here. In *In re Takata Airbag Products Liability Litigation*, which Plaintiffs cite for the general idea that a direct benefit may be conferred through an intermediary rather than direct contact, the Southern District of Florida *dismissed* the unjust enrichment claim based on an analysis that likewise requires dismissal here. 2017 WL 2406711, at *9-10 (S.D. Fla. Jun. 1, 2017) ("*Takata*"). In *Takata*, the plaintiffs claimed unjust enrichment against the seller of a defective airbag used in their vehicles, which were manufactured by various automakers and sold to plaintiffs through dealerships. *Id.* at *9. That court caveated the general principle,[9] and the cases espousing it, as applying only where

---

[8] Plaintiffs do not cite a single citation to the Complaint to support this claim. (*See* Opp., 31-32.)

[9] *See id.* (citing *Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *2, 5 (S.D. Fla. Oct. 14, 2011) (finding direct conferral where benefits "passed through" to defendant because

the defendant directly markets a final product to the plaintiff but sells it to the plaintiff through an intermediary/retailer, such that the benefit merely "passes through" to the defendant. *Id.*

The *Takata* court rejected that the intermediary theory applied where, as in that case, the defendant's benefits were fully realized in selling its airbags to the third-party automakers and were not "contingent on any consumer's decision to purchase a vehicle" that incorporated the airbag. *Id.* at *10 (finding no direct conferral between plaintiffs, purchasers of vehicles, and defendant, the supplier of one component part that third parties used to make those vehicles). *Cf. Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) (cited by Plaintiffs) (finding direct benefit between plaintiff and defendant manufacturer even though distributor, rather than manufacturer, directly supplied the manufacturer's products to plaintiff); *Romano*, 2007 WL 4199781, at *2 (cited by Plaintiffs) (finding direct benefit from plaintiff, who purchased defendant's phone from third party retailer, to defendant manufacturer, who marketed the phone to consumers and sold phone through retailers).[10]

In this case, the problem is not merely that there was no "*direct contact*" alleged between Plaintiffs and Moonstone, but rather, that there was no "*direct benefit*" (nor contingent) from Plaintiffs to Moonstone. The Complaint makes clear that Plaintiffs were transacting with FTX as the purveyor of *FTX's own products or services* (cryptocurrency, FTX Platform, YBAs, and/or

---

defendant received kickbacks and/or commissions that were contingent on and taken directly out of the insurance premiums paid by the plaintiffs) and *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (finding plaintiff's purchase of defendant's final product through retailer stated direct benefit).

[10] Plaintiffs' reliance on *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, is similarly misplaced because, in ruling on summary judgment, there was evidence that the claimants completed their construction services on property encumbered by the defendant bank *at the urging and with consent of the bank*, the bank knew about and acquiesced in the work (with evidence it told the subcontractor that the funds to pay for the work "were secure"), and the value of the property increased because of the work. 653 P.2d 1331, 1334-35 (Wash. 1982).

FTT sales) (*see*, *e.g.*, ¶ 320), ***not*** as a retailer or intermediary *for Moonstone's services*. *Cf. Aceto Corp.*, 953 F. Supp. 2d at 1272-73, 1288 (finding "pass through" benefit where plaintiffs bought defendant's product from the exclusive distributor of defendant's product). As there is no suggestion here that Plaintiffs were transacting with FTX as a means to knowingly invest or deposit money in Moonstone, the intermediary theory of direct conferral cannot salvage Plaintiffs' claim. Because there is absolutely no allegation or insinuation here that Moonstone received any benefit directly from Plaintiffs, Count V must be dismissed. *See, e.g.*, *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming dismissal under Florida law of unjust enrichment claim based on an indirect benefit to marketing vendor); (*see also* MTD, n.7 (collecting cases dismissing claims for lack of direct benefit).)

Accordingly, as Plaintiffs never conferred any benefit directly on Moonstone, Moonstone need not, as a matter of law, have paid consideration *to Plaintiffs*. Moreover, the allegations show that in exchange for whatever revenues Moonstone may have obtained from its alleged depositor, FTX (*see* AC, ¶ 313), Moonstone provided consideration in the form of routine banking services to FTX (*see id.* at ¶ 316). *See Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (dismissing an unjust enrichment claim where the plaintiff failed to allege that the defendant withheld consideration for the benefit conferred). Consideration was paid for the benefit conferred.

### ii.    Plaintiffs' new theory of benefit also fails

The Opposition also newly contends that Plaintiffs conferred on Moonstone the benefit of the Alameda investment in Moonstone. (Opp., 31-32). This is not alleged in the Complaint.[11]  Even

---

[11] The unjust enrichment count contends only that Plaintiffs conferred benefits on Moonstone "by depositing funds into and using the FTX Platform" and that Moonstone acquired "revenues derived from Plaintiffs' … funding and use of the FTX Platform. (AC, ¶¶ 356-57.)

if it was, the investment also fails to constitute a direct benefit without adequate consideration required for an unjust enrichment claim.

Critically, the Complaint does not, in fact, allege that Alameda used "Class Member Funds" to make the investment in Moonstone, which is fatal to its claim that the investment was a benefit Moonstone received from Plaintiffs. (*Cf.* AC, ¶ 305.)[12] Even if it had been alleged that Alameda's investment was funds obtained from the Plaintiffs, based on the same principles dictating that FTX's deposit in Moonstone was not a direct benefit, Plaintiffs cannot show they conferred the investment as a direct benefit to Moonstone. This indirect link is one that Florida and Washington courts routinely reject as a basis for unjust enrichment. (*See* MTD, 7 n.7; *see, e.g.*, *Wang v. Revere Cap. Mgmt., LLC*, 2023 WL 2198570, at *8 (S.D. Fla. Feb. 15, 2023), *report & rec. adopted*, No. 22-CV-80884-RAR, 2023 WL 2183382 (S.D. Fla. Feb. 22, 2023) (finding no unjust enrichment claim against defendant lender where plaintiffs alleged third parties diverted their money to repay loan by lender)). Further, consideration was paid in that Alameda became a shareholder in Moonstone in return for its investment. (AC, ¶ 305.)

Like Plaintiffs' arguments about FTX's deposit, their use of Alameda's investment is not based on any allegation in the Complaint and would be insufficient to support an unjust enrichment claim anyway. Because there is absolutely no allegation or insinuation here that Moonstone received any benefit from Plaintiffs, Count V must be dismissed. *See, e.g.*, *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (affirming dismissal under Florida law of unjust enrichment claim based on an indirect benefit to marketing vendor).

---

[12] Contrary to Plaintiffs' suggestion later in its Opposition, the Complaint does not allege that Alameda used customer funds for its investment in Moonstone, nor that every single investment Alameda made used customer funds.

> **b.   *Common Law Aiding and Abetting Claims (Counts II, III, and IV)***

Plaintiffs' Opposition improperly stacks inferences[13] to reach untenable conclusions about Moonstone's supposed role that are not well-pled in the Complaint. Hence, Counts II-IV must be dismissed because they fail to sufficiently allege two required elements of aiding and abetting: (1) Moonstone's "actual knowledge" of FTX's alleged underlying wrongdoing, and (2) Moonstone's knowing "substantial assistance" in the commission of the wrongdoing. *See Lawrence v. Bank of Am.*, *N.A.*, 2010 WL 3467501, at *3 (M.D. Fla. Aug. 30, 2010).

> **i.   Failure to allege actual knowledge**

The Complaint makes nothing but conclusory allegations of knowledge. Plaintiffs' contention that circumstantial evidence is enough misses the point: "[W]hile actual knowledge may be shown by circumstantial evidence, ***the circumstantial evidence must demonstrate that the aider and abettor actually knew*** of the underlying wrongs committed." *Angell v. Allergan Sales, LLC,* No.3:18-CV-282-J-34JBT, 2019 WL 3958262, at *13 (M.D. Fla. Aug. 22, 2019) (emphasis added) (citing *Perlman v. Wells Fargo Bank, N.A.,* 559 F. App'x 988, 993 (11th Cir. 2014)). The Motion to Dismiss did not argue that explicit allegations of knowledge are required (*cf.* Opp., 23 n.138), but instead that Plaintiffs' "would have," "must have," and "information and belief" allegations cannot support an inference of knowledge. (*See* MTD, 11) (collecting cases, including several concerning claims of fraud against banks in the context of apparent Ponzi schemes[14]). As explained below, the Opposition relies on inapposite case law, ignores the relevant legal standard, and attempts to rely on facts that overstate or simply mistake the Complaint's allegations.

---

[13] *See generally Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1282 (11th Cir. 2019) (in affirming dismissal of claims under Rule 12(b)(6), explaining "we do not stack inference on inference to impose an obligation" not obviously imposed).

[14] (*See* AC, ¶¶ 3, 234, 325 (referring to FTX's fraud as Ponzi scheme).)

The Opposition cites cases that are factually distinguishable and unavailing here:

- In *Chang v. JPMorgan Chase Bank, N.A.*, it was sufficiently alleged that the bank had knowledge where its vice president personally labeled the fraudster's account as escrow even though the fraudster failed to comply with the bank's procedures for opening escrow accounts, falsely represented the escrow account's balance on bank letterhead, and secretly received $100,000 from the fraudster. 845 F.3d 1087, 1096-97 (11th Cir. 2017).

- In *Gilison v. Flagler Bank*, it was alleged the bank had "direct access to [the fraudster's] financial records and the discrepancies within them," the fraudster's accountants, who made balance sheets that conflicted with its tax statements, were the bank's CEO/President and members of the board of directors, and the bank had advanced the fraudster funds, bolstering its financial condition. 303 So. 3d 999, 1003 (Fla. 4th DCA 2020).

- In *In re Consolidated Meridian Funds*, it was accepted as well-pled that the fraudster intended to create custodial accounts for the benefit of investors, the bank knew of his intention, the investor's checks were deposited directly to the bank, and bank documents referred to those funds as "custodial accounts." 485 B.R. 604, 617, 621 (W.D. Wash., Jan. 3, 2013).

None of these courts accepted a claim based entirely on what a bank "would have" or "must have" known, because such allegations are ***insufficient to plead actual knowledge*** to state aiding and abetting claims. (*See* MTD, 9-13.)

Plaintiffs do not distinguish Moonstone's ample authority on the standard for pleading a bank's actual knowledge of another's Ponzi scheme, which they cannot meet here. *See Isaiah v. JPMorgan Chase Bank, N.A.*, 2017 WL 5514370, at *4, *aff'd sub nom. Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296 (11th Cir. 2020) (finding "even if JPMC detected suspicious activity on the accounts as alleged, this only demonstrates knowledge of the symptoms of the Ponzi scheme, not JPMC's actual knowledge of the scheme itself"); *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) ("Although Plaintiffs alleged the transactions were atypical and therefore Bank of America should have known of the Ponzi scheme, such allegations are insufficient under Florida law to trigger liability."); *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *9-11

9

(M.D. Fla. Aug. 22, 2019) ("Conclusory statements that a defendant actually knew [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant should have known that something was amiss."); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1246-47 (M.D. Fla. 2013) (allegations that a bank had "red flags" or "should have known" will not suffice to establish a claim for aiding and abetting); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343-44 (S.D. Fla. 2018) ("Florida law requires that a defendant have actual 'knowledge of the underlying fraud or breach of fiduciary duty,' not merely that certain 'red flags' indicate a defendant 'should have known' of the breach.") (quoting *Lamm v. State Street Bank & Trust*, 749 F.3d 938, 950 (11th Cir. 2014)).)

With these standards in mind, it is clear the Complaint contains no plausible allegations that state or justify a reasonable inference that Moonstone suspected, had a general awareness of, or recklessly disregarded—much less actually knew—that FTX was engaged in any fraud, fiduciary breach, or conversion at any time before FTX's collapse in November 2022. Plaintiffs have not shown that the anecdotal and speculative allegations of the Complaint, which barely pass muster as "circumstantial," demonstrate that Moonstone *actually knew* of the underlying wrongs FTX was committing. *See Angell*, 2019 WL 3958262, at *13.

Again recognizing the inadequacy of its Complaint, Plaintiffs now argue they have shown "actual knowledge" by embellishing far beyond the four corners of their Complaint, which they cannot do to avoid a motion to dismiss. Even if they could, their arguments are insufficient.

*First*, they purportedly allege Moonstone "would have learned" of FTX's fraud, breach of fiduciary duty, or conversion from "regulatory mandated diligence." (Opp., 22-23.) This is not a well-pled basis for "actual knowledge." The Complaint throws out the titles of a handful of laws, regulations, and manuals without specifying any particular provisions or details about who, when,

or how the due diligence was supposed to be accomplished, nor that it actually was.[15] It claims that regulations require "enhanced due diligence" on high-risk offshore money service businesses ("MSBs"), and that FTX Trading is an MSB, but does not actually allege that FTX Trading or any other FTX-related MSB was a customer of Moonstone. (*See* AC, ¶¶ 310, 311, 313.) Similarly, the Complaint alleges that unspecified "relevant regulations" require Moonstone to monitor for and report suspicious transactions above $5,000 or $10,000, but it does not plausibly allege that Moonstone effected any transfers from the "$50 million in FTX accounts." (AC ¶ 311 (alleging "under information and belief" transfers were made), ¶ 316 (providing no further factual basis in claiming Moonstone was "effecting transfers of Class Member funds into accounts under SBF's control"). Plaintiffs have no response to these gaps, raised in Moonstone's Motion to Dismiss, other than to miscast their own pleading.

Notably, while the Opposition sets forth five bullets that Moonstone supposedly "would have learned" (Opp., 22), its underlying citations do not support its arguments. For instance, paragraph 309 vaguely claims certain regulations may require a bank to investigate the nature and intended purpose of the business relationship with an account's beneficial owners. (*Id.*) But the plain words of paragraph 309 do nothing to indicate, as the Opposition suggests, that Moonstone "would have learned" that "the intended use and purpose of the FTX accounts was to hold customer assets, including Class Member funds, in custody for the customers' benefit as reiterated in FTX's terms of service." (AC, ¶ 309.) Their argument not only presumes, without alleging, there was some indication that the FTX accounts at Moonstone were custodial or beneficial in nature, but further presumes that FTX's consumers are the "beneficial owners"—even while the Opposition

---

[15] For example, the Complaint does not allege, as the Opposition claims, that due diligence had to be done on FTX "before opening its accounts." (*Compare* Opp., 21, *with* AC, ¶¶ 309-11.)

asserts in the very next bullet that Moonstone "would have learned" that the beneficial owner of FTX and Alameda was SBF. (Opp., 22.) Then Plaintiffs paradoxically suggest FTX provided due diligence documents revealing fraudulent insider transfers of customer funds while simultaneously claiming that FTX took measures to disguise those transactions and/or that no records of them existed. (*See* Opp., 22 (compare first and fourth bullets); *see also* AC ¶¶ 102, 138(j).) Those five bullets are the sort of "red flags" that fall short of alleging a bank's "actual knowledge." *See, e.g., Wiand*, 938 F. Supp. 2d at 1244-45.

Plaintiffs do not even adequately allege that Moonstone undertook or was required to undertake the specified diligence. Plaintiffs claim that "Moonstone represented to the public that it offered to its customers 'first-in-class regulatory, compliance and risk expertise,' and so certainly must have satisfied its diligence and monitoring regulatory obligations"— without any context like the speaker, place, or circumstances, and particularly the time of the alleged statement (which is puffery, not an admission). (*See* AC, ¶ 309.) This is Plaintiffs' only, flimsy basis for suggesting Moonstone "certainly must have" done due diligence, despite it being fundamental to their speculation on what knowledge Moonstone "would have obtained" therefrom.[16]

*Second*, Plaintiffs contend they alleged that "Moonstone learned of facts demonstrating FTX's underlying misconduct" from soliciting Alameda's investment in Moonstone, namely, Mr. Chalopin's alleged association with Mr. Friedberg preceding that investment. (Opp., 23.) Again, Plaintiffs misrepresent their allegations. At most, the Complaint alleges that Friedberg and Chalopin regularly met over dinner; spoke highly of each other; began discussing Alameda's

---

[16] Hence, it is only when allegations go beyond assuming what the bank "must have," "would have," or "should have" done that a claim may be plausibly stated. *See Pearson v. Deutsche Bank AG*, 2022 WL 951316, at *8 (S.D. Fla. Mar. 30, 2022) (upholding claim where bank defendants allegedly "did nothing about the fraud *after* they investigated [red flags] and learned of the fraud") (emphasis in original).

investment in Moonstone in August 2021; and that Mr. Chalopin *may* have known that in 2013 it was reported that Mr. Friedberg allegedly covered up a totally separate poker cheating scheme perpetrated by others. Nowhere in the Complaint is it alleged, or even speculated, that Moonstone "learned of facts demonstrating FTX's underlying misconduct" from Mr. Friedberg. In fact, in complete contrast to this, Plaintiffs have attached to and incorporated into their Complaint a sworn declaration from Mr. Friedberg that he "had no idea of any customer deficit" at FTX and immediately resigned when he suspected fraud. (DE 155-2, ¶¶ 7, 9, 10, 11.) This sworn declaration is in direct contrast to its allegations of how Moonstone allegedly acquired this "actual knowledge" of FTX's misconduct and only highlights Plaintiffs' grasping of anything to survive dismissal.

In addition, the Complaint alleges nothing about regulatory-mandated diligence on *investors*, rather than customers. And even if it could be reasonably inferred from the Complaint that Alameda paid for some *other* investments with FTX customer funds, it is not alleged that Alameda's $11.5 million investment *in Moonstone* was "customer funds" or "backed by cryptocurrency" or that Moonstone would have had any reason or any way to trace that. (Opp., 22; AC, ¶¶ 305, 307.) On its face, the Complaint does not allege that the investment from Alameda or conversations with Mr. Friedberg gave the bank "actual knowledge" of any fraud, fiduciary breach, or conversion.

*Third*, the Opposition argues that Moonstone had actual knowledge because "the knowledge that Mr. Chalopin acquired as the chairman of Deltec and longtime friend of SBF" should be imputed to Moonstone, which is meritless for two reasons. (Opp., 24.) To start, the Complaint does not plausibly allege that Mr. Chalopin had "actual knowledge" of FTX's underlying misconduct to begin with; instead, it repeatedly states that he had "close ties" to SBF and FTX executives, which they conclude from the anecdote that he attended, at some unspecified

date, a conference co-hosted by Deltec and FTX, which SBF also attended. (*See* AC, ¶¶ 293, 296, 305, 316.) Plaintiffs' argument is nothing more than guilt by association, and Mr. Chalopin cannot impute knowledge he did not actually have. Plaintiffs' inapt cases about imputing knowledge generally do nothing to change their ***allegations*** in this case.[17]

In addition, Plaintiffs' argument to impute "actual knowledge" would force this Court to impute knowledge ***twice***: first from Deltec to Mr. Chalopin, then from Mr. Chalopin to Moonstone. (*See* Opp., 24.) But Plaintiffs offer no legal basis, and Moonstone is aware of none, to impute the "knowledge" of a corporation (that is clearly not a sole proprietorship) to its officers or directors. Nor does the Complaint allege that Mr. Chalopin, as a shareholder and board chairman of Deltec, personally handled or knew of every aspect of Deltec's due diligence, transactions, marketing, negotiations, internal investigations, etc. Plaintiffs' attempt to impute Mr. Chalopin's and Deltec's knowledge to Moonstone is legally and factually unsustainable.

At bottom, it is misleading for the Opposition to suggest that "Plaintiffs allege" in the Complaint that "Moonstone knew FTX's representations" to the public "were false" based on the foregoing three bases. (*See* Opp., 24, 25 (lacking citation).) They did not, and so those contentions must be disregarded. *See McKally*, 87 F. Supp. 3d at 1317. Because Plaintiffs only ever speculate that Moonstone "would have obtained" knowledge, not that it actually knew, its allegations are legally insufficient to state claims for aiding and abetting in Counts II, III, and IV.

---

[17] *Cf. Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*, 144 F.3d 732, 734 (11th Cir. 1998) (directors' *actual knowledge* of accounting malpractice unsuccessfully sought to be imputed to corporation *was undisputed*); *Pearson*, 2022 WL 951316, at *8 (in considering evidence on summary judgment, imputing the knowledge of two employees upon finding "the evidence supports that at least two bank employees *had knowledge* of the Ponzi scheme") (emphasis added); *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wash. App. 502, 517, 728 P.2d 597, 607 (1986) (recognizing, in analyzing statute of limitations, that trial court imputed the knowledge of officer and director where the record evidence shows that he *knew personally* and discovered facts about the underlying fraud).

### ii.    Failure to allege indicia of knowledge

Plaintiffs try to salvage their aiding and abetting claims by arguing that Moonstone's "actual knowledge" can be inferred from three circumstantial "indicia of knowledge." (*See* Opp., 25-26.) However, the Complaint does not plainly allege these indicia, nor does it contain facts creating a reasonable inference the indicia exist.[18] *See Lawrence I,* 2010 WL 3467501, at *3 (circumstantial evidence must give rise to "a strong inference of [Moonstone] having actual knowledge" of the underlying misconduct). Again, Plaintiffs cannot amend their Complaint by including them in their responsive pleading. *See McKally*, 87 F. Supp. 3d at 1317.

*First*, as Moonstone explained above, the Complaint *does not allege* that "Moonstone had access to the FTX Entities' financial records and visibility of transfers from FTX to Alameda" based on supposed regulatory-mandated diligence. (Opp., 25-26.) Nor could this be plausibly extrapolated from any reasonable reading of the Complaint's tenuous allegations about what Moonstone "would have learned" upon engaging in due diligence on its account holders.[19]

*Second*, as also explained above, it is not plausibly alleged that Moonstone benefitted or received kickbacks from FTX's underlying violations in the form of Alameda's investment. (*See* Part II.a, *supra*; *Cf.* Opp., 25.) The Complaint's sole reference to Moonstone benefiting from a "quid pro quo" is vague and conclusory. (*See* AC, ¶ 314.)[20]

---

[18] The entire section lacks a single citation to the Complaint.

[19] Because Plaintiffs have alleged two other U.S. banks served FTX (AC, ¶¶ 304, 313, 316), and presumably would have been subject to the same U.S. banking regulations, it is not even plausible that Moonstone is the "only" financial institution with "direct access" to FTX's financial records, as was the case in *Gilison*. (*Cf.* Opp, 25 (citing *Gilison*, 303 So. 3d at 1003).)

[20] It is especially ambiguous given that Plaintiffs allege that Alameda invested in Moonstone in *January 2022*, and it was not until *after* that investment that Moonstone applied for membership in the Federal Reserve, and it was not until *after* joining the Federal Reserve that FTX deposited money at Moonstone (the supposed trigger for Moonstone's supposed due diligence). (AC, ¶ 313.)

*Third*, there is no allegation (or evidence) before the Court that Moonstone "made a false representation to the Federal Reserve in its application for membership to the benefit of FTX and Alameda." (*See* Opp., 26.) Plaintiffs concede it did not make such allegation in the Complaint. (*See id*.) Even so, unlike the case cited by the Opposition, there is zero indication that Moonstone made any representation to the Federal Reserve "*on behalf of*" (Opp., 25) FTX and Alameda. *Cf. Chang*, 845 F.3d at 1096-97 (allegation that the bank's vice president misrepresented the fraudster's account balance on the bank's letterhead supported knowledge). As with Plaintiffs' other supposed "allegations" and "circumstantial indicia" of Moonstone's knowledge, this argument cannot withstand the slightest scrutiny and fails to support their claims.

### iii.   Failure to allege substantial assistance

Just as they did for the "actual knowledge" element of the aiding and abetting claims, Plaintiffs improperly mischaracterize their pleading and introduce novel allegations. *See McKally*, 87 F. Supp. 3d at 1317. Neither tactic can remedy the Complaint's failure to allege that Moonstone provided substantial assistance to the underlying tortfeasors. None of the Opposition's four arguments show this element has been met.

*First*, Plaintiffs did not allege that "Moonstone provided FTX **necessary** access to the U.S. banking system." (Opp., 26) Nowhere does their Complaint explain the import of Federal Reserve membership or describe the bank's membership as "necessary" (or otherwise a precondition) to FTX's unlawful activities. The Opposition attempts to fill that gap by citing paragraph 313 to contend that "FTX needed the ability to take in customer deposits in the United States, which its accounts at Moonstone allowed it to do, and then traffic those deposits to Alameda beyond the reach of U.S. authorities, which it did so by transfer to accounts held by FTX at Deltec, Moonstone's sister bank." (Opp., 27.) These are misrepresentations and new allegations, because **paragraph 313 says no such thing:** (i) **not** that FTX needed a U.S. bank, (ii) **not** that Moonstone

16

"took in customer deposits," (iii) *not* that FTX transferred money from Moonstone to Deltec, and (iv) *not* that Deltec is Moonstone's "sister bank." (*See* AC, ¶ 313.) The actual allegations of the Complaint simply amount to Moonstone providing FTX the same routine banking services that it would provide to any other customer. (*See* MTD, 15.)

Second, Moonstone has already shown that Plaintiffs *did not allege,* and certainly *did not plausibly allege,* that Moonstone effected banking transactions to and from FTX or that Moonstone knew that FTX was misappropriating customer assets by way of such transfers. (*See* Part I, *supra*; *cf.* Opp., 27.) Mr. Ray's testimony lends no support to Plaintiffs' position at all. (*Cf. id.*) And Plaintiffs cannot be permitted to embellish their allegation that Moonstone provided assistance "beyond ordinary or routine banking services" by putting words in Mr. Ray's mouth. Paragraph 315 in Plaintiffs' Complaint stated, in its entirety:

> To be sure, the assistance provided by Deltec, Moonstone, and Mr. Chalopin goes beyond ordinary or routine banking services, and the irregular nature of their relationship to FTX has captured the attention of John J. Ray, who is overseeing FTX's bankruptcy. In testimony before Congress, Mr. Ray noted that he was "looking at what dollars were that went from the FTX group to [Moonstone Bank] and looking at the connections of that bank to the Bahamas [i.e., Deltec]….There's a lot more questions than answers. It's certainly highly irregular and has got our attention."

(AC, ¶ 315.)[21] Mr. Ray said nothing about any *services that Moonstone provided* to FTX or about *transfers* from Moonstone to Deltec. Plaintiffs insert new words into Mr. Ray's mouth when they repeatedly misstate in the Opposition that he testified "that the services Moonstone and Deltec

---

[21] Mr. Ray's testimony, which Plaintiffs selectively quote in the Complaint, is available in full at https://www.c-span.org/video/?524743-1/ftx-ceo-testifies-cryptocurrency-companys-collapse. As the Congressional testimony is a public record, the Court may take judicial notice of the statement. *See*, *e.g.*, *In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1176 n.10 (S.D. Fla. 2022), *aff'd*, 76 F.4th 1335 (11th Cir. 2023) (taking judicial notice of a statement to Congress).

provided to FTX were 'certainly highly irregular' and transfers between the banks have 'gotten [the Bankruptcy Estate's] attention.'" (Opp., 19 (citing AC, ¶ 315); *see also id.* at 27, 29 (same).)

Plaintiffs' *third* point fares no better. (Opp., 27.) The Complaint does not plausibly allege that Moonstone effected any transfer whatsoever from the FTX account. Moreover, having failed to establish Moonstone's "actual knowledge" of FTX's underlying misconduct, a bank transfer (domestic or international) is a routine banking service and not evidence of conspiracy. *See, e.g., Groom v. Bank of Am.*, 2012 WL 50250, at \*4 (M. D. Fla. Jan. 9, 2012) (allegations of a failure to adhere to customary or standard practices, or conclusory allegations that a customer was permitted to engage in suspicious transactions, are insufficient to demonstrate substantial assistance).

Plaintiffs' *fourth* point—that the vaguely described regulatory due diligence "would have" informed Moonstone of (i) all the representations and fiduciary duties of FTX to FTX's customers and (ii) FTX's misappropriation of customer funds—has already been addressed and shown to be both unasserted and unwarranted speculation. (*See* Part II.B.i, *supra*.) Yet Plaintiffs take that fantasy one step further by arguing that whatever Moonstone "would have learned" not only informed Moonstone that FTX's business account held "custodial funds" but also imposed on Moonstone a duty "to disclose that [misappropriation] misconduct to FTX customers." (Opp., 27.) In other words, Plaintiffs claim that FTX did not keep records of its commingled client funds or insider transfers, while also claiming that information responsive to generic "Know Your Customer" laws would have given Moonstone all the information it needed to ascertain that FTX had breached a fiduciary duty to FTX customers *and* to disclose that to particular FTX customers (presumably these Plaintiffs).

Fantasies aside, Plaintiffs' cases are inapposite here. In *Calvert v. Commercial Bank of Washington, N.A.*, the court found substantial assistance was well-pled when the bank *knew* the

accounts were custodial accounts and that the investor deposited funds directly into the account for investment of those funds in real estate investments, yet the bank nonetheless allowed the fraudster to commingle the funds in the custodial accounts with his own personal and related corporation funds and to misappropriate the funds to buy personal assets and pay personal obligations. No. 10-17952, 2013 WL 3487562 (Bankr. W.D. Wash. May 14, 2013), *amended sub nom. In re Consol. Meridian Funds*, No. BR 10-17952-KAO, 2013 WL 3487732 (Bankr. W.D. Wash. May 21, 2013). But in that case, unlike here, a Washington law imposed specific duties on banks where the transactions involve "fiduciary accounts and instruments" and where the bank had knowledge of the fiduciary status of the fiduciary. *See id.; see also Heilig Tr. & Beneficiaries v. First Interstate Bank of Wash.*, 93 Wash. App. 514, 969 P.2d 1082 (1998) (concerning duty to disclose imposed by state's Negotiable Instruments Act). Plaintiffs' other cases are similarly distinguishable in that they rely on circumstances where a duty to disclose arose by contract between the bank and the non-customer plaintiff or from an agreement between an investment firm and the customer established a fiduciary duty.[22] These cases provide no basis for Plaintiffs to simply speculate (not cite any allegation) that Moonstone "knew of the custodial nature of FTX's relationship to its customers and, therefore, the fiduciary duty it owed to each," and thereby must have had its own (unpled) duty to disclose.

### c.    *Civil Conspiracy (Count I)*

As Moonstone has demonstrated and the Opposition fails to refute, Plaintiffs' Civil Conspiracy claim fails on two grounds. Plaintiffs have not sufficiently stated any of its claims for

---

[22] *Stewart v. Bank of Am., N.A.*, 2012 WL 13106302 (M.D. Fla. Feb. 28, 2012) (writing evidenced that bank was acting as an express escrow agent and as custodian for the insurance funds and bank owed a duty to the plaintiffs regarding all disbursements from escrow); *Ricchetti v. Starfish Beach S., S.A.*, No. 10CV21754, 2010 WL 11451771 (S.D. Fla. Dec. 27, 2010) (alleging that a custodial agreement imposed a custodial duty from investment firm in favor of plaintiff).

aiding and abetting FTX's wrongdoing,[23] and therefore cannot establish a civil conspiracy necessarily predicated thereon. Plaintiffs also fail to plead sufficient facts supporting that Moonstone entered an agreement to commit fraud, breach fiduciary duties, or convert Class Members funds. Their cases are inapt, as each is premised on far more than the few non-conclusory allegations of Moonstone's knowledge and involvement as pled here.

Plaintiffs concede that they rely entirely on an inference of an agreement. (Opp., 30.) But for each of the Opposition's six enumerated "allegations" they claim implies an agreement, as explained above they are not grounded in the Complaint. To be clear, the Complaint cannot make out any claim based on its wholly conclusory allegations of (1) unsubstantiated "close ties" to FTX executives, (2) Moonstone's willingness, like at least two other U.S. banks, to service the nascent cryptocurrency industry,[24] (3) unreasonable inferences characterized as "knowledge" of FTX's wrongdoing, (4) transfer allegations made "under information and belief," or (5) Alameda's investment in and FTX deposits in Moonstone, which Moonstone simply held. (*See id.*) Nor can Plaintiffs fashion an inference of conspiracy based on their novel (and false) characterization of Alameda as "Moonstone's majority shareholder." (*See id.*)[25] Plaintiffs' fantasy that "SBF enjoyed overlapping ownership of Moonstone and the FTX Entities" is the epitome of their tabloid style perversion of the truth in this case. Count I is likewise baseless and must be dismissed.

---

[23] The parties do not dispute that only intentional torts, not the unjust enrichment claim, may serve as a predicate for the civil conspiracy claim. (*See* MTD, 16; Opp., 29-31.)

[24] The Complaint actually alleges that *Deltec*, not *Moonstone*, was FTX's "primary vehicle" and provided "one-of-a-kind" banking services to FTX. (*See* AC, ¶¶ 245, 283; *see also supra* note 2.)

[25] *See supra* note 5.

### d.      *Personal Jurisdiction*

As pled, the Complaint fails to state any sufficient basis for personal jurisdiction over Moonstone in Florida. It is not disputed that there is zero mention of Moonstone (or Deltec or Mr. Chalopin) in the "Material Ties to Florida" section of the Complaint (AC, ¶¶ 260-280), and zero mention of Florida among the allegations specific to Moonstone (*id.* at ¶¶ 305-316). The Complaint fails to expressly identify ***any basis*** for personal jurisdiction over Moonstone in Florida (MTD, 18 n.11)—and Plaintiffs continue to refuse to even address why it seeking to hale Moonstone into Florida—but regardless, there are no well-pled allegations in the Complaint to support personal jurisdiction in the Florida Action. (See MTD, 9-17.) As all of Plaintiffs' claims fail under Rule 12(b)(6), none can suffice to impute a link to Florida under 12(b)(2) or Florida's long-arm statute. *See World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999).

Indeed, it would offend due process for the Court to facially find personal jurisdiction over Moonstone based on allegations not appearing in the Complaint. (*Cf.* Opp., 33.) This is exactly the case with Plaintiffs' argument, again without citation, that "Plaintiffs allege that Moonstone, through Chalopin, intentionally and tortiously conspired with Miami-based FTX US to fashion the bank a tool to grant FTX the access to the U.S. banking system that it so badly needed, access Moonstone was able to provide only by deceiving the Federal Reserve into granting it necessary licenses, all in order to funnel customer deposits offshore to FTX US accounts at Deltec." (Opp., 33.) No doubt Plaintiffs wish to allege this fantasy *now* so to obscure their pleading defects, but none of this was (or could have been) ***actually alleged in their Complaint***.

## III.   CONCLUSION

Upon removing the Complaint's conclusory allegations, unwarranted factual deductions, and novel allegations, the Court should recognize that Plaintiffs have not shown any entitlement to relief from Moonstone—and should not be permitted to exploit the costly and potentially

coercive information-gathering processes of discovery to fish for other claims. *See Oxford Asset Mgmt.*, 297 F.3d at 1188; *McKally*, 87 F. Supp. 3d at 1317. Based on the foregoing arguments and authorities, Moonstone moved the Court to dismiss the claims against it with prejudice and to hold that Florida lacks personal jurisdiction over Moonstone in the Florida Action.


Date: <u>December 6, 2023</u>           <u>/s/ Marisa R. Dorough           </u>
                                         Ty Kelly Cronin
                                         (*Pro hac vice application forthcoming*)
                                         Frank C. Bonaventure, Jr.
                                         (*Pro hac vice application forthcoming*)
                                         **BAKER, DONELSON, BEARMAN,**
                                         **CALDWELL & BERKOWITZ, P.C.**
                                         100 Light Street, 19th Floor
                                         Baltimore, Maryland 21202
                                         Phone: (410) 862-1049
                                         tykelly@bakerdonelson.com
                                         fbonaventure@bakerdonelson.com

                                             -and-

                                         Marisa Rosen Dorough, Esq.
                                         Florida Bar No. 73152
                                         **BAKER, DONELSON, BEARMAN,**
                                         **CALDWELL & BERKOWITZ, P.C.**
                                         200 South Orange Avenue, Suite 2900
                                         Orlando, Florida 32801
                                         Phone: (407) 422-6600
                                         mdorough@bakerdonelson.com

                                         *Counsel for Defendant Farmington State Bank d/b/a Moonstone Bank.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 6, 2023, the foregoing was electronically filed with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to counsel for all parties of record.

<u>*/s/ Marisa R. Dorough*</u>
Marisa Rosen Dorough