**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This Document Relates To:

*Garrison, et al. v. Kevin Paffrath, Graham Stephan,*
*Andrei Jikh, Jaspreet Singh, Brian Jung,*
*Jeremy Lefebvre, Tom Nash, Ben Armstrong,*
*Erika Kullberg, and Creators Agency, LLC,*
Case No. 23-cv-21023

_____/

**REPLY IN SUPPORT OF YOUTUBER DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.  Introduction ................................................................................................................1

II.  Plaintiffs Failed to State Claims under State Securities Laws ...........................................2

    a.  Plaintiffs Do Not State a Claim under Fla. Stat. § 517.07 (Count One) ...............2

    b.  California Corporations Code § 25504.1 (Count 8) and Oklahoma Securities Law (Count 13).......................................................................................6

III.  Plaintiffs' Causes of Action under Consumer Fraud and Deceptive Practices Laws Fail (Counts Two, Seven and Twelve) ...............................................................9

    a.  Consumer Fraud and Deceptive Practices Laws Are Not Applicable to Securities Cases .......................................................................................9

    b.  The Heightened Pleading Standard Applies to Plaintiffs' Consumer Fraud Claims ....................................................................................................10

IV.  Plaintiffs Fail to State a Claim for Civil Conspiracy (Counts Three, Eleven) or Aiding and Abetting (Counts Four, Five, Nine, Ten, Fourteen).....................................13

V.  Plaintiffs' Arguments for Declaratory Relief Fail (Count Six).......................................16

VI.  FTX is a Necessary Party under FRCP 19 ...................................................................17

VII.  The Amended Complaint is a Shotgun Pleading against the YouTuber Defendants........18

VIII.  Conclusion ...............................................................................................................19

CERTIFICATE OF SERVICE ..........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019)................................................................................16

*Absorbezz, L.L.C. v. Hierseman*,
  No. 19-61442, 2020 WL 6870876 (S.D. Fla. 2020)...................................................10

*Almeida v. BOKF, NA*,
  471 F. Supp. 3d 1181 (N.D. Okla. 2020)....................................................................15

*Am. United Life Ins. Co. v Martinez*,
  480 F.3d 1043 (11th Cir. 2007)..................................................................................14

*AREI II Cases*,
  157 Cal. Rptr. 3d 368 (Cal. Ct. App. 2013)..................................................................7

*Axon Enter., Inc. v. FTC*,
  598 U.S. 175 (2023) ......................................................................................................9

*Baum v. Phillips, Appel & Walden, Inc.*,
  648 F. Supp. 1518 (S.D.N.Y. 1986),
  aff'd sub nom., 867 F.2d 776 (2d Cir. 1989) ................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................13

*Beltram v. Shackleford, Farrior, Stallings & Evans*,
  725 F. Supp. 499 (M.D. Fla. 1989) ..............................................................................4

*Betz v. Trainer Wortham & Co., Inc.*,
  829 F. Supp. 2d 860 (N.D. Cal. 2011) ........................................................................10

*Bowen v. Ziasun Techs., Inc.*,
  116 Cal. App. 4th 777 (2004) .......................................................................................9

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019)....................................................................................8

*City of Indus. v. City of Fillmore*,
  129 Cal. Rptr. 433 (Cal. Ct. App. 2011)....................................................................13

*Corporacion Industrial de Energia, C.A. v. JPMorgan Chase Bank, N.A.*,
  2023 WL 34643 (S.D. Fla. Jan. 4, 2023)....................................................................16

*De Ford v. Koutoulas*,
No. 6:22-cv-652, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) ............................................5

*Dolphin LLC v. WCI Cmtys., Inc.*,
715 F.3d 1243 (11th Cir. 2013)..............................................................................................11

*Dreyfuss v. Dreyfuss*,
701 So. 2d 437 (Fla. Dist. Ct. App. 1997) ..............................................................................3

*Durham v. Bus. Mgmt. Assocs.*,
847 F.2d 1505 (11th Cir. 1988)................................................................................................7

*Edwards v. Urice*,
220 P.3d 1145 (Okla. Civ. App. 2008)..................................................................................13

*Emory v Peeler*,
756 F.2d 1547 (11th Cir. 1985)..............................................................................................16

*Feng v. Walsh*,
No. 19-24138, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021)..................................................9

*Groom v. Bank of Am.*,
No. 8:08-cv-2567, 2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ...............................................15

*Guo v. Robl*,
No. 2:22-cv-05576, 2023 WL 2683473 (C.D. Cal. Mar. 2, 2023).........................................6

*Hollifield, et al. v. Resolute Cap. Partners Ltd., et al.*,
No. 2:22-cv-07885, 2023 WL 8168831 (C.D. Cal. Aug. 1, 2023) .........................................7

*Honig v. Kornfeld*,
339 F. Supp. 3d 1323 (S.D. Fla. 2018) ...................................................................................4

*Howard Family Charitable Found. v. Timble*,
259 P. 3d 850 (Okla. Civ. App. 2011)....................................................................................8

*In re Apple In-App Purchase Litig.*,
855 F. Supp. 2d 1030 (N.D. Cal. 2012)................................................................................12

*In re Ethereummax Investor Litig.*,
2023 WL 6787458 (C.D. Cal. Oct. 3, 2023)...........................................................................7

*In re Tobacco II Cases*,
207 P. 3d 20 (Cal. 2009).......................................................................................................11

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
224 So. 3d 316 (Fla. Dist. Ct. App. 2017).............................................................................3

*Kahan Novoa v. Safra Nat'l Bank of N.Y.*,
  313 F. Supp. 2d 1347 (S.D. Fla. 2003)................................................................6

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .........................................................................12

*Kleiman v. Wright*,
  No. 22-11150, 2023 WL 7039512 (11th Cir. Oct. 23, 2023) .................................3

*Laker Airways, Inc. v. British Airways, PLC*,
  182 F.3d 843 (11th Cir.1999) ..........................................................................17

*Lawrence v. Bank of Am., N.A.*,
  455 Fed. Appx. 94 (11th Cir. 2021) ..................................................................15

*Lillard v. Stockton*,
  267 F. Supp. 2d 1081 (N.D. Okla. 2003)..............................................................8

*Lindner v. Durham Hosiery Mills, Inc.*,
  761 F.2d 162 (4th Cir. 1985) .............................................................................9

*Logan v. Morgan, Lewis & Bockius LLP*,
  350 So. 2d 404 (Fla. Dist. Ct. App. 2022) ..........................................................13

*Lowe v. SEC*,
  472 U.S. 181 (1985) ........................................................................................6

*Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*,
  522 F. Supp. 3d 1202 (S.D. Fla. 2021)..............................................................18

*Major v. Microsoft Corp.*,
  60 P.3d 511 (Okla. Ct. App. 2002) ...................................................................10

*Marchisio v. Carrington Mortgage Svcs., LLC*,
  919 F.3d 1288 (11th Cir. 2019)..........................................................................3

*Markowitz v. Diversified Lending Grp., Inc.*,
  2010 WL 11507662 (C.D. Cal. Feb. 26, 2010)......................................................7

*Marmol v. Kalonymus Dev. Partners, LLC*,
  Nos. 22-20703 and 22-20881,
  2023 WL 2524884 (S.D. Fla. Mar. 15, 2023).....................................................17

*Moecker v. Antoine*,
  845 So. 2d 904 (Dist. Ct. App. Fla. 2003) ...........................................................9

*Morchem Indus., Inc. v. Rockin Essentials LLC*,
  No. 1:20-cv-24735, 2021 WL 5014105 (S.D. Fla. June 16, 2021) (Moore, K.) ...................11

*Namer v. Bank of Am., N.A.*,
    2017 WL 4391710 (S.D. Cal. 2017) ................................................................15

*Nikkel v. Stifel, Nicolaus & Co., Inc.*,
    1975 OK 158, 542 P.2d 1305 (Okla. Sup. Ct. 1975 .......................................8

*Odor v. Rose*,
    No. CIV-07-554, 2008 WL 2557607 (W.D. Okla. June 20, 2008) .....................4

*Patterson v. Beall*,
    19 P.3d 839 (Okla. 2000) ...............................................................................11

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*,
    No. 3:12-cv-1366, 2013 WL 12172912 (M.D. Fla. Aug. 18, 2013) ..................11

*Pino v. Cardone Capital, LLC*,
    55 F. 4th 1253 (9th Cir. 2022) ........................................................................5

*Pinter v. Dahl*,
    486 U.S. 622 (1988) ....................................................................................4, 5

*Platinum Ests. v. TD Bank, N.A.*,
    No. 11-60670, 2012 WL 760791 (S.D. Fla. Mar. 8, 2012) .........................15, 16

*Pop v. Lulifama.com LLC*,
    No. 8:22-cv-2698, 2023 WL 4661977 (M.D. Fla. July 20, 2023) ................11, 12

*Richterkessing v. Broward Sheriff's Office*,
    2007 WL 9701082 (S.D. Fla. July 23, 2007) ....................................................4

*Rogers v. Cisco Sys., Inc.*,
    268 F.Supp.2d 1305 (N.D. Fla. 2003) ............................................................10

*Rubin v. Gabay*,
    979 So. 2d 988 (Fla. Dist. Ct. App. 2008) ........................................................4

*Scala v. Citicorp Inc.*,
    No. C 10-03859, 2011 WL 900297 (N.D. Cal. 2011) .......................................10

*South Fla. Water Mgmt. Dist. v. Montalvo*,
    84 F.3d 402 (11th Cir. 1996) ..........................................................................4

*Spicer v. Chicago Bd. Options Exch., Inc.*,
    No. 88 C 2139, 1990 WL 172712 (N.D. Ill. Oct. 30, 1990),
    aff'd, 977 F.2d 255 (7th Cir. 1992) ..................................................................6

*Spinner Corp. v. Princeville Dev. Corp.*,
    849 F.2d 388 (9th Cir. 1988) ......................................................................9, 10

*Stephenson v. Paine Webber Jackson & Curtis, Inc.*,
    839 F.2d 1095 (5th Cir. 1988) ........................................................................ 9

*T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc.*,
    No. 21-CV-153, 2022 WL 16842907 (N.D. Okla. Jan. 21, 2022)................................. 11, 12

*Taubenfeld v. Lasko*,
    324 So. 3d 529 (Fla. Dist. Ct. App. 2021) ............................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 8

*Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*,
    No. 10-CV-16, 2011 WL 221863 (N.D. Okla. Jan. 21, 2011).............................................. 15

*Underwood v. Coinbase Global, Inc.*
    654 F. Supp. 3d 224 (S.D.N.Y. 2023) ................................................................... 5

*Viterbi v. Wasserman*,
    123 Cal. Rptr. 3d 231(Cal. Ct. App. 2011)............................................................. 4

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015)............................................................................ 18

*Wildes v. BitConnect International PLC*,
    25 F.4th 1341 (11th Cir. 2022) .......................................................................... 4, 5

*Wilson v. Saintine Expl. & Drilling Corp.*,
    872 F.2d 1124 (2d Cir. 1989)............................................................................... 5

*Wolf v. Celebrity Cruises, Inc.*,
    683 Fed. Appx. 786 (11th Cir. 2017) .................................................................... 3

**Statutes**

15 O.S. § 753 ............................................................................................................ 11

71 O.S.1971 § 408......................................................................................................... 8

15 U.S.C. § 45............................................................................................................. 10

15 U.S.C. § 78u–4(b)(1)(B) ............................................................................................ 7

15 U.S.C. § 78u-4(b)(2)(A) ............................................................................................ 7

15 U.S.C § 77l................................................................................................................ 4, 5

71 O.S.Supp. 2004 § 1-301 ............................................................................................ 8

71 O.S.Supp. 2004 § 1-509(G) ................................................................................8

Cal. Bus. Prof. Code 17200 ...........................................................................9, 10

Cal. Corp. Code § 25401 .......................................................................................6

Cal. Corp. Code § 25501 .......................................................................................6

Cal. Corp. Code §  25504 .......................................................................................7

Cal. Corp. Code § 25504.1 ..............................................................................6, 7

Fla. Stat. § 501.204 ...............................................................................................9

Fla. Stat. § 501.2105 ...........................................................................................19

Fla. Stat. § 517.07 ............................................................................................2, 6

Fla. Stat. § 517.211 ........................................................................................2, 19

**Rules**

Fed. R. Civ. P. 8 ..................................................................................................13

Fed. R. Civ. P. 9 ............................................................................................*passim*

Fed. R. Civ. P. 12 ............................................................................................1, 19

Fed. R. Civ. P. 19 ..........................................................................................17, 18

**Other Authorities**

Adam Moskowitz, at https://www.law360.com/articles/1770249/ftx-investors-
    sue-mlb-f1-team-over-crypto-promotions ...........................................................19

Defendants Graham Stephan, Andrei Jikh, Jaspreet Singh, Brian Jung, Jeremy Lefebvre, Erika Kullberg, and Creators Agency LLC (collectively, the "YouTuber Defendants" or "Movants"), by and through their respective undersigned attorneys of record, hereby file this reply in support of their motion to dismiss under FRCP 12(b)(6) [ECF No. 265] and in response to Plaintiff's consolidated opposition [ECF No. 372].

## I.    Introduction

Although the Court permitted separate briefing for the YouTuber Defendants and the S&E Defendants, [ECF No. 216, 236], Plaintiffs tellingly file only one combined opposition [ECF No. 372] to the YouTuber Defendants' motion to dismiss [ECF No. 265] and the S&E Defendants' motion to dismiss [ECF No. 271]. As with Plaintiffs' Amended Complaint [ECF No. 179], their Opposition obfuscates and conflates the YouTuber Defendants and the S&E Defendants in an effort to try to mislead and manufacture allegations against the YouTuber Defendants, when none exist.

In the factual allegations of the Amended Complaint [ECF No. 179], Plaintiffs reference movant Creators Agency LLC ("Creators Agency") once at paragraph 715 and movant Graham Stephan ("Stephan") twice at paragraphs 716-717. No other movant is mentioned by name in the Plaintiffs' sprawling 859 paragraph complaint, outside of the section identifying the parties. As to Creators Agency and Stephan, it is merely alleged, without any factual detail or support, that Creators Agency "procured and/or facilitated" contracts for "talent it manages" and that Stephan "promoted FTX as a safe investment," *not* YBAs and FTTs. ECF No. 179, ¶¶ 715-717. Such superficial (or non-existent) allegations concerning *these* Movants are clearly insufficient to support any claim against the YouTuber Defendants, let alone the fourteen separate causes of action brought by the Plaintiffs.

While Plaintiffs baldly argue that "all Defendants were promoting similar messages," to those of Defendants Brady and Bundchen, Opposition at 3, and that "it is appropriate for a Complaint to refer to parties as a group where the pleading confirms that those parties engaged in the same alleged conduct," *id.* at 27, Plaintiffs consistently cite paragraphs of the Amended

1

Complaint in purported support for their opposition, which *do not involve, relate to, or concern*, the YouTuber Defendants.  Indeed, pages 105 to 261 (paragraphs 287 to 659) of the Amended Complaint concern the S&E Defendants and are almost exclusively cited by the Plaintiffs in their Opposition as purported support, whereas only pages 272 to 280 (paragraphs 704 to 729) allegedly relate to the YouTuber Defendants.  Similarly, of the four page preliminary statement in the Opposition, only one paragraph even relates to the YouTuber Defendants.

Plaintiffs have failed to plead a sufficient cause of action against any Defendant for the reasons discussed in the YouTuber Defendants and S&E Defendants' motions to dismiss.  But the paucity of facts pled against the YouTuber Defendants cannot possibly satisfy even the most basic of pleading standards.  As such, the Amended Complaint should be dismissed as to the YouTuber Defendants.

## II.   Plaintiffs Failed to State Claims under State Securities Laws

### a.   Plaintiffs Do Not State a Claim under Fla. Stat. § 517.07 (Count One)

While the Florida Securities and Investor Protection Act ("FSIPA"), Fla. Stat. § 517.07, makes it unlawful for a person to sell, or offer to sell, an unregistered security, FSIPA limits liability to either sellers, or to specific persons –  "every director, officer, partner, or agent of or for the seller if the director, officer, partner, or agent has personally participated or aided in making the sale."  Fla. Stat. § 517.211.  In their Opposition (pp. 6-8), Plaintiffs do not contend that the YouTuber Defendants are sellers under FSIPA, but that the YouTuber Defendants are secondarily liable as partners or agents of FTX.  However, the Amended Complaint is devoid of sufficient allegations that establish either a partnership or agency relationship between any of the YouTuber Defendants and FTX.  Nor does the Amended Complaint contain facts sufficient to establish that the YouTuber Defendants personally participated or aided in making any sale of securities, even assuming *arguendo* that YBAs, FTTs, *or FTX*[1] were securities.

---

[1] In their Opposition (at 5), Plaintiffs remarkably claim that "[i]t is plausible to conclude the FTX platform" (defined by Plaintiffs' as "FTX's mobile application and/or web-based cryptocurrency investment service that places cryptocurrency trade orders on behalf of users") is *itself* a security

Plaintiffs' bald claim that "Digital Creators partnered with FTX to promote its platform to investors" (Am. Compl. ¶ 704) does not transform the YouTuber Defendants into partners with FTX under the law. To be considered a partnership under Florida law, there must exist: "(1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses; and (4) joint control or right of control." *Kleiman v. Wright*, No. 22-11150, 2023 WL 7039512, at *1 (11th Cir. Oct. 23, 2023). "These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership." *Kleiman*, 2023 WL 7039512, at *1 (quoting *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. Dist. Ct. App. 1997)). The Amended Complaint fails to allege the elements necessary to establish a legal partnership between any of the YouTuber Defendants and FTX.

Nor do Plaintiffs sufficiently allege that any of the YouTuber Defendants are agents of FTX. Plaintiffs assert that the YouTuber Defendants were "actual agents" of FTX, which requires: "1) acknowledgement by the principal of the agent; 2) the agent's acceptance; and 3) control of the agent by the principal." *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*, 224 So. 3d 316, 329 (Fla. Dist. Ct. App. 2017); *see also Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786, 796 (11th Cir. 2017). Control by the principal over an agent's actions is the "key element" in establishing an agency relationship. *Marchisio v. Carrington Mortgage Svcs., LLC,* 919 F.3d 1288, 1311 (11th Cir. 2019). Yet in support, Plaintiffs do not cite a ***single paragraph*** of the Amended Complaint that relates to ***any*** of the YouTuber Defendants, let alone sufficient allegations to support each element of agency (*see* Opp'n at 7-8, *citing* Am. Compl. ¶¶ 13-15, 18-26, 32-33, 56-61, 63-67, 84, 272-274, 274, 280-281, 409, 453, 521, 522, 726, 730-750).[2] *See Geveran*, 224 So. 3d at 329 (finding that plaintiff failed to state a claim against defendants where the complaint does

---

because a customer signing up for the app purportedly received a YBA account by default. Even if true, this argument is nonsensical since elsewhere in their complaint, Plaintiffs acknowledge that an FTX customer could choose whether it would "stake" its assets for a potential return or decline to do so. ECF No. 179, at ¶ 259.

[2] Even ¶ 726 that falls under the section identified as "Digital Creators Defendants" only contains claims about "some of the biggest names in sports and entertainment," not the YouTuber Defendants.

not allege that either defendant accepted an agency agreement with the corporation or that the corporation exercised control over them).[3]   Moreover, Plaintiffs' allegations of agency rely on unsupported legal conclusions that the Court is to ignore in considering whether Plaintiffs have pled a legally sufficient claim. *Richterkessing v. Broward Sheriff's Office,* 2007 WL 9701082, at *2 (S.D. Fla. July 23, 2007) (citing *South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 409, n.10 (11th Cir. 1996)) ("The court should ignore those allegations that contain no more than opinions or legal conclusions."); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1347 (S.D. Fla. 2018) (stating that "[t]o state a claim based on vicarious liability, a plaintiff must set forth any ultimate facts that establish either actual or apparent agency'") (citations and quotations omitted).

Plaintiffs fail to sufficiently allege that the YouTuber Defendants personally participated or aided in the making of a sale of an unregistered security.  In *Wildes v. BitConnect International PLC*, 25 F.4th 1341, 1345 (11th Cir. 2022), the Eleventh Circuit considered "whether a person can solicit a purchase, within the meaning of the Securities Act, by promoting a security in a mass communication."  The Eleventh Circuit's ruling did not alter the requirement under *Pinter v. Dahl*, 486 U.S. 622, 647 (1988), that for liability under section 12 of the Securities Act the solicitation "must be motivated by a desire to serve the solicitor's or the security owner's financial interests."[4] 25 F.4th at 1346.  The Eleventh Circuit found that, where the promotors of BitConnect used publicly available videos and "convinced the plaintiffs to buy BitConnect through their referral programs *and earned a commission on those investments*," they were soliciting the purchase of

---

[3] "[W]hen a party bearing the burden of proof fails to produce any supportive evidence [as to the existence of an agency relationship]…, a question that is ordinarily one of fact becomes a question of law to be determined by the court.  *Rubin v. Gabay*, 979 So. 2d 988, 990 (Fla. Dist. Ct. App. 2008) (where a stockbroker referred an investor to a different stockbroker who handled some investment in companies that turned out to be shams, the court found the referring stockbroker was not liable as an agent, even where the defendant received a referral fee with respect to the transaction of one stock).

[4] Florida, California, and Oklahoma courts look to the analysis in *Pinter* for guidance in interpreting state securities laws.  *See Beltram v. Shackleford, Farrior, Stallings & Evans*, 725 F. Supp. 499, 500 (M.D. Fla. 1989); *Viterbi v. Wasserman*, 123 Cal. Rptr. 3d 231, 238(Cal. Ct. App. 2011) ("federal cases construing federal securities laws are persuasive authority when interpreting our state law"); *Odor v. Rose*, No. CIV-07-554, 2008 WL 2557607, (W.D. Okla. June 20, 2008).

securities to serve their financial interests. *Id.* at 1347 (emphasis added); *see also Pino v. Cardone Capital, LLC*, 55 F. 4th 1253, 1259 (9th Cir. 2022) (noting "the requirement that a seller must have his own, independent financial interest *in the sale*") (emphasis added).   In *De Ford v. Koutoulas*, No. 6:22-cv-652, 2023 WL 2709816, at *15 (M.D. Fla. Mar. 30, 2023), the court stated that "[t]he plaintiff must thus allege not only that the defendant actively solicited investors, but that the plaintiff purchased securities as a result of that solicitation and that this solicitor did so to serve their own financial interests."   In *De Ford*, the court granted a defendant's motion to dismiss where there were no allegations that the defendant received value or made solicitations to serve his financial interests despite the allegations that he promoted a cryptocurrency. *Id.* at *16.  Here, the Amended Complaint generally alleges that FTX collaborated with social media influencers to "increase brand visibility and strengthen a brand's reputation." Am Compl. ¶ 711.  Conspicuously lacking are any allegations that any of the YouTuber Defendants earned any commission or increased earnings related to the assets any customers maintained in their FTX accounts.

In the recent instructive case, *Underwood v. Coinbase Global, Inc.* 654 F. Supp. 3d 224, 238 (S.D.N.Y. 2023), the district court held that users of an online cryptocurrency platform, Coinbase, failed to sufficiently allege that the company that operated the platform "solicited" their transactions as required to state a claim for the sale or solicitation of unregistered securities.  There, the plaintiffs alleged that Coinbase promoted the sale of tokens, participated in direct promotions including "airdrops" of free tokens, wrote news updates about the price movements of tokens, and linked to stories about tokens published on the internet.  *Id.*  To be held liable under Section 12 of the Securities Act, the purchaser-plaintiff must demonstrate the defendant's "direct and active participation of the immediate sale."  *Id.*  The district court determined that these activities "do not describe conduct beyond that 'collateral' participation that *Pinter* and its progeny exclude from Section 12 liability."  *Id.* (citing *Wilson v. Saintine Expl. & Drilling Corp.*, 872 F.2d 1124, 1125 (2d Cir. 1989) ("[C]ollateral participants who do not solicit sales cannot be liable under Section 12(1)….")).  The court found these marketing activities and services to be "insufficient to establish active solicitation by a defendant."  *Id.* The district court also found that, even if the plaintiff pled

direct solicitation, it failed to plead that the plaintiff purchased and sold tokens as a result of the solicitation. Similarly, here, the Plaintiffs failed to sufficiently allege that any of the YouTuber Defendants had any direct and active participation in the sale of any FTX products and that Plaintiffs purchased any FTX products as a result of the alleged solicitation.[5]

Finally, the Plaintiffs fail to address the YouTuber Defendants' argument that Plaintiffs may not avail themselves of FSIPA unless they establish that unregistered securities were sold within the State of Florida. Fla. Stat. § 517.07(1); *Kahan Novoa v. Safra Nat'l Bank of N.Y.*, 313 F. Supp. 2d 1347, 1355 (S.D. Fla. 2003). Plaintiffs merely allege that promotional campaigns took place in Florida (none of which involve the YouTuber Defendants) and that FTX US moved its headquarters to Miami in September 2022, a few months before filing for bankruptcy. Am. *Compl.* ¶ 731-750. These deficiencies in pleading are also fatal to Plaintiffs' claim.[67]

### b. California Corporations Code § 25504.1 (Count 8) and Oklahoma Securities Law (Count 13)

Plaintiffs have brought a claim under California Corporations Code § 25504.1, which requires that the plaintiff allege both a primary and secondary violation. *Guo v. Robl*, No. 2:22-cv-05576, 2023 WL 2683473, at *6 (C.D. Cal. Mar. 2, 2023). "A primary violation under Sections 25401 and 25501 requires that (i) a Defendant offered or sold a security; (ii) in California; (iii) by means of a material misrepresentation or omission." *Id.* A violation of section 25504.1 requires (i) a predicate violation; and (ii) and intent to defraud by the defendant. *Id.* "When the statutory

---

[5] *See Spicer v. Chicago Bd. Options Exch., Inc.*, No. 88 C 2139, 1990 WL 172712, at *2 (N.D. Ill. Oct. 30, 1990), aff'd, 977 F.2d 255 (7th Cir. 1992)); *see also Baum v. Phillips, Appel & Walden, Inc.*, 648 F. Supp. 1518, 1530 (S.D.N.Y. 1986), aff'd sub nom., 867 F.2d 776 (2d Cir. 1989).

[6] Plaintiff further argues that the YouTuber Defendant are not entitled to First Amendment Protection under *Lowe v. SEC*, 472 U.S. 181, 210 n.58 (1985), but as Plaintiffs have pled, the YouTuber Defendants at best would be acting as a publisher offering impersonal investment advice to the general public on a regular basis subject to the publishers exclusion from the Investment Advisers Act of 1940 ("Advisers Act" ) as further stated in *Lowe*.

[7] Relating to the PLSRA arguments brought by Defendants Stephan, Jikh, and Lefebvre, Plaintiffs state in their Opposition at pg. 36 that "they assert only state-law claims." The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") forbids the bringing of large securities class actions based upon violations of state law in federal court. That is exactly what was done here. Thus, this Court lacks subject matter jurisdiction.

scheme is viewed as a whole, therefore, it cannot be the case that aider and abettor liability in section 25504.1 applies to a broader spectrum of aide or assistance than secondary liability applicable to control persons, employees, and agents in section 25504." *AREI II Cases*, 157 Cal. Rptr. 3d 368, 377 (Cal. Ct. App. 2013). Section 25504 "requires that a person materially aid not just in the transaction but in the violation itself" and section 25504.1 "requires no less." *Id.* at 378. California courts have rejected a "'but for' approach to assessing material assistance [that] would potentially extend liability to persons who have no involvement whatsoever in the actual securities law violation." *Id.* Where there are no allegations of false or misleading statements that plaintiffs relied upon, a court does not even need to address the scienter component of the statute.[8] *Id.* at 380; *see also In re Ethereummax Investor Litig.*, 2023 WL 6787458, at *18 (C.D. Cal. Oct. 3, 2023) (dismissing plaintiffs' secondary liability claim under section 25504.1 where the complaint failed to identify specific conduct that would render defendant liable). Moreover, a claim under section 25504.1 sounds in fraud and must be pled with specificity under FRCP 9(b). *Hollifield, et al. v. Resolute Cap. Partners Ltd., et al.*, No. 2:22-cv-07885, 2023 WL 8168831, at *6 (C.D. Cal. Aug. 1, 2023).

The purpose for this degree of particularity is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (alterations added; citation and quotation marks omitted). The pleading requirements do not end with those found in Rule 9(b). Under the PSLRA, a complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading," 15 U.S.C. § 78u–4(b)(1)(B). "[W]ith respect to each act or omission alleged[,]" the complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2)(A). A "'strong inference' is one that is 'cogent and

---

[8] "The "intent to deceive or defraud element' under Section 25504.1 requires 'actual knowledge' of [the predicate violation]." *Markowitz v. Diversified Lending Grp., Inc.*, 2010 WL 11507662, at *4 (C.D. Cal. Feb. 26, 2010).

at least as compelling as any opposing inference one could draw from the facts alleged.'" *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

Similarly, under Oklahoma law, "[a]bsent the establishment of prerequisite liability by a primary offender [for sale of a security in violation of § 1-301], no liability may attach for aiding and abetting under § 1–509(G). *See Howard Family Charitable Found. v. Timble*, 259 P. 3d 850, 857 (Okla. Civ. App. 2011)(citing *Nikkel v. Stifel, Nicolaus & Co., Inc.,* 1975 OK 158, 542 P.2d 1305 (Okla. Sup. Ct. 1975) (finding aiding and abetting liability would not lie under predecessor statute 71 O.S. 1971 § 408 absent such primary liability)). Section 1-301 only applies to offers or sales of a security "in this state" of Oklahoma. Claims under Oklahoma securities law must meet the heightened pleading standard under FRCP 9(b). *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1111 (N.D. Okla. 2003) (assessing claims of securities fraud under predecessor statute using the FRCP 9(b) standard). A complaint that alleges claims for securities fraud under Oklahoma law, but "fails to distinguish among any of the Defendants in assigning responsibility for wrongdoing," that includes "blanket and conclusory allegations [that] lack specificity as to the time, date, facts, and materiality of the allegations," and fails to "allege facts demonstrating [the plaintiffs'] justifiable reliance" will be dismissed. *Id.*

Here, Plaintiffs have failed to plead what specific material assistance the YouTuber Defendants supposedly provided in connection with the sale of FTX products, nor any intent to defraud. Again, there are no facts averred against Defendants Andrei Jikh, Jaspreet Singh, Brian Jung, Jeremy Lefebvre, and Erika Kullberg, except to identify them as "Parties." As to Defendant Stephan, the Amended Complaint does not identify even one video or social media post that any Plaintiff even viewed, let alone relied. Am Compl. ¶¶ 716, 717. The Amended Complaint does not allege that Creators Agency even made statements, just that it managed digital creators and facilitated contracts between FTX and some (unnamed) talent. Am Compl. ¶ 715. Given the paucity of allegations about the YouTuber Defendants, no claims against them under California or Oklahoma securities laws can be sustained.

III.   **Plaintiffs' Causes of Action under Consumer Fraud and Deceptive Practices Laws Fail (Counts Two, Seven and Twelve)**

a.   **Consumer Fraud and Deceptive Practices Laws Are Not Applicable to Securities Cases**

The majority of jurisdictions hold that consumer fraud and deceptive trade practices statutes do not apply to securities transactions because the purchase and sale of securities is heavily and separately regulated by state and federal securities laws. *Feng v. Walsh*, No. 19-24138, 2021 WL 8055449, at \*13-14 (S.D. Fla. Dec. 21, 2021); *Moecker v. Antoine*, 845 So. 2d 904, 908 (Dist. Ct. App. Fla. 2003) ("The purpose of laws requiring the registration of securities is to protect the public from fraudulent and deceptive practices in the sale and marketing of securities."); *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004) ("based upon persuasive federal and out-of-state authority, we conclude that section 17200 does not apply to securities transactions"); *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 392 (9th Cir. 1988) (holding that the Hawaii Supreme Court would conclude that the state version of the FTC Act would not apply to claims arising from securities transactions); *Stephenson v. Paine Webber Jackson & Curtis, Inc.*, 839 F.2d 1095 (5th Cir. 1988) ("The FTC Act has been interpreted to preclude coverage of securities claims."); *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 167-68 (4th Cir. 1985) (determining that the North Carolina Supreme Court would that securities transactions are beyond the scope of the state version of the FTCA).[9]  The U.S. Supreme Court noted this separation of authority in, *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023) when it stated: "Congress established the SEC to protect investors in securities markets, and created the FTC to promote fair competition.  The Commissions enforce, respectively, the Securities Exchange Act and the FTC Act (among other laws)."

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204, provides that "[i]t is the intent of the Legislative that, in construing subsection (1), due

---

[9] Contrary to Plaintiffs' assertion, the YouTuber Defendants did acknowledge contrary case law in their motion, ECF No. 265 at 12, n. 9.

consideration and great weight should be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017." As noted in *Spinner*, the Federal Trade Commission Act ("FTCA") has not been applied in a securities context since 1927, before the creation of the Securities and Exchange Commission in the 1930s. 849 F.2d at 391. Because in *Spinner*, the Hawaii statute, like Florida's, directed that the act be interpreted as is section 5(a)(1) of the FTCA, the Ninth Circuit determined that the state legislature did not intend to regulate the field of securities in its state version of the FTCA. *Id.* at 392-93. Federal courts in Florida have applied the same reasoning and concluded that the Supreme Court of Florida would hold that FDUTPA does not apply to claims arising from securities transactions. *Rogers v. Cisco Sys., Inc.*, 268 F.Supp.2d 1305, 1316-17 (N.D. Fla. 2003).

Similarly, in California, "[n]o court, however, has allowed Section 17200 claims to proceed where, as here, the predicate acts are securities transactions." *Betz v. Trainer Wortham & Co., Inc.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011). Where a complaint alleges "misrepresentations and omissions that occurred 'in connection with' the purchase or sale of covered securities," a claim under section 17200 is foreclosed because section 17200 does not apply to securities transactions. *Scala v. Citicorp Inc.*, No. C 10-03859, 2011 WL 900297, at *20 n.7 (N.D. Cal. 2011). While Oklahoma courts have not opined on this exact question, by analogy, Oklahoma courts have determined that claims under the Oklahoma Consumer Protection Act ("OCPA") that are predicated on the same allegations as an antitrust claim are barred because Oklahoma legislature expressed the intention that Oklahoma's antitrust laws be interpreted in a manner consistent with federal antitrust law. *Major v. Microsoft Corp.*, 60 P.3d 511, 517 (Okla. Ct. App. 2002). On this basis alone, the consumer fraud claims should be dismissed.

### b. The Heightened Pleading Standard Applies to Plaintiffs' Consumer Fraud Claims

To state a claim under FDUTPA, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Absorbezz, L.L.C. v. Hierseman*, No. 19-61442,

2020 WL 6870876, at *3 (S.D. Fla. 2020) (citing *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)).  "The four elements of a consumer's private action under the OCPA are: '(1) that the defendant engaged in an unlawful practice as defined at 15 O.S. § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.'" *T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc.*, No. 21-CV-153, 2022 WL 16842907, at *8 (N.D. Okla. Jan. 21, 2022) (quoting *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000)).  Where a claim under California's Unfair Competition Law ("UCL") is based on fraud, the UCL requires actual reliance, proven "by showing that the defendant's misrepresentation or nondisclosure was the immediate cause of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 207 P. 3d 20, 39 (Cal. 2009).

While there is a split of authority among Florida district courts as to whether FRCP 9(b) applies to claims brough under FDUTPA, courts assessing similar allegations have concluded that FRCP 9(b) does apply.  *See Pop v. Lulifama.com LLC*, No. 8:22-cv-2698, 2023 WL 4661977, at * 3 (M.D. Fla. July 20, 2023); *see also Morchem Indus., Inc. v. Rockin Essentials LLC*, No. 1:20-cv-24735, 2021 WL 5014105 (S.D. Fla. June 16, 2021) (Moore, K.) (where the causes of action in the complaint either alleged fraud or were premised on facts alleging fraud, the heightened pleading standards of FRCP 9(b) applied).  In *Pop*, the plaintiff brought a lawsuit under FDUTPA against a designer and social media influencer who advertised the designer's products, alleging that the influencers misrepresented their material relationship with the designer and led him to purchase products of inferior quality.  2023 WL 4661977, at *1.  The court concluded that the plaintiff's claims sounded in fraud because the complaint alleged "unscrupulous [practices]…likely to mislead any consumer acting reasonably in the circumstances." *Id.* (citing from the complaint in that case).  FDUTPA claims that hinge on allegations of misrepresentation are "grounded in fraud" and governed by FRCP 9(b). *Id.* (citing *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, No. 3:12-cv-1366, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 18, 2013)).

Federal courts in California and Oklahoma hold that claims under the UCL and OCPA, respectively, are subject to FRCP 9(b) and must be pled with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (where parties disagreed on whether plaintiffs' UCL claims were subject to FRCP 9(b), the court found that claims that "are entirely dependent upon allegations that Defendant made misrepresentations and omission that are 'grounded in fraud'" are subject to the heightened pleading requirement of FRCP 9(b)); *T.D. Williamson, Inc. v. Lincoln Elec. Automation, Inc.*, 2022 WL 16842907, at *8 (N.D. Okla. Jan. 21, 2022) ("[Plaintiff's] OCPA claim is subject to the same pleading requirements of Rule 9(b) because it relies on some form of fraud and misrepresentation.").

Here, as in *Pop*, the Plaintiffs failed to set forth the "who, what, when, where, and how" of the YouTuber Defendants' alleged misconduct, as required under FRCP 9(b). *Id.* The Plaintiffs did not allege which statements from the YouTuber Defendants were supposedly misleading, when those statements were made, and which statements led the Plaintiffs to purchase the FTX products. *Id.* As in *Pop*, the Plaintiffs further fail to allege whether they viewed any YouTuber Defendants' videos or social media content before purchasing FTX products, thereby failing to plead the element of causation. Therefore, similar to *Pop*, the FDUTPA count should be dismissed.

Even if the heightened pleading standard did not apply, and separate and apart from whether consumer fraud laws apply to securities transactions, Plaintiffs failed to plead facts sufficient to show how the YouTuber Defendants' conduct was unfair and deceptive. In their Opposition (at 14), Plaintiffs assert their "consumer protection claims allege that Defendants deceptively represented FTX to be safe, reliable, and superior to other investment options" and that Defendants "deceptively failed to disclose their compensation and financial motivation." However, with respect to the *YouTuber Defendants*, the Amended Complaint does not describe what any social media posts said about FTX, and what those YouTuber Defendants or their social media posts did, or did not say, about any financial relationship with FTX. The Amended Complaint states in a vague and conclusory manner that some finance and money social media

influencers collaborated with FTX and worked with Defendant Creators Agency.  Am Compl. ¶ 715.  The Amended Complaint avers that Defendant Stephan "prior to FTX's collapse promoted FTX as a safe investment" (Am. Compl. ¶ 716), but does not allege what was said by Stephan, when it was said, or whether any of the Plaintiffs even saw any purported videos or statements, let alone relied on them in deciding to purchase FTX products.  There are no allegations *at all* about Defendants Andrei Jikh, Jaspreet Singh, Brian Jung, Jeremy Lefebvre, or Erika Kullberg, other than their description in the "Parties" section (Am. Compl. ¶¶ 70, 71, 72, 73, 75) or being lumped into the large group of defendants that Plaintiffs define as "Promoter and Digital Creator Defendants" or "Brand Ambassador Defendants (Am. Compl. at 3).  Surely, this pleading does not suffice under even FRCP 8.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## IV. Plaintiffs Fail to State a Claim for Civil Conspiracy (Counts Three, Eleven) or Aiding and Abetting (Counts Four, Five, Nine, Ten, Fourteen)

To state a cause of action for civil conspiracy, a plaintiff must plead "(1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 2d 404, 412 (Fla. Dist. Ct. App. 2022); *see also City of Indus. v. City of Fillmore*, 129 Cal. Rptr. 433, 450 (Cal. Ct. App. 2011) ("The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agree to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages."); *Edwards v. Urice*, 220 P.3d 1145, 1152 (Okla. Civ. App. 2008).  Because there is no freestanding cause of action for civil conspiracy, a plaintiff "must further identify an actionable underlying tort or wrong." *Logan*, 350 So. 2d at 412. Where the conspiracy claim alleges that two or more parties agreed to commit fraud, a plaintiff

must plead with specificity under FRCP 9(b).  *Am. United Life Ins. Co. v Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007).

Plaintiffs' summary of their pleadings is misleading as to the YouTuber Defendants because it inappropriately and incorrectly lumps together the YouTuber Defendants with the S&E Defendants.  (Opp'n at 25).  As previously stated, Plaintiffs have *not* alleged facts about any agreement between each YouTuber Defendant and FTX, let alone an agreement to commit fraud.  Rather, the complaint vaguely states that "[m]any of the most famous finance and money social media influencers collaborated with FTX" and that some talent managed by Creators Agency had "signed contracts."  Am. Compl. ¶ 715.  The complaint does not allege that Creators Agency had a contract with FTX, nor does it allege that any particular YouTuber Defendant had a contract with FTX.  The Amended Complaint merely states that Defendant Stephan posted a video that FTX had been a "recurring sponsor."  Am. Compl. ¶ 717.

Contrary to what Plaintiffs state in their Opposition (at 26), the Amended Complaint does not actually describe any specific promotional statement by the YouTuber Defendants, or which YouTuber Defendants, if any, purportedly "had partnership deals with FTX and were paid in cash, cryptocurrency, and FTX equity."  Nor do the Plaintiffs allege that the YouTuber Defendants were aware of red flags. (Opp'n at p. 26).  Rather, the Amended Complaint cites general statements and comments about FTX by FTX's new CEO as part of the company's bankruptcy filings that are not specific to the YouTuber Defendants in any way.  Am. Compl. ¶¶ 721-724.  Based on these comments, the Amended Complaint leaps to the unsubstantiated conclusion that "[i]t is hard to imagine that anyone who has done business with FTX, including paid endorsers, would not have personally witnessed one or more of the deficiencies identified by Mr. Ray."  Am. Compl. ¶ 724.  Such statements do not establish any supposed "unlawful act," "unlawful means," or "overt act."  These allegations fall far short of setting forth the elements necessary to sustain a claim for civil conspiracy.

"To state a claim for aiding and abetting a tort in Florida, a plaintiff must allege: '(1) an underlying violation on the part of the primary wrongdoer;[10] (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Taubenfeld v. Lasko*, 324 So. 3d 529, 543-44 (Fla. Dist. Ct. App. 2021) (quoting *Lawrence v. Bank of Am., N.A.*, 455 Fed. Appx. 94, 906 (11th Cir. 2021)). Similarly, in California, "[a] civil cause of action for aiding and abetting necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Namer v. Bank of Am., N.A.*, 2017 WL 4391710, at *2 (S.D. Cal. 2017) (internal citations omitted). By contrast, the Oklahoma Supreme Court has not recognized a cause of action for aiding and abetting fraud. *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1196 (N.D. Okla. 2020) (noting that there are several reasons to believe that the Oklahoma Supreme Court would decline to recognize a cause of action for aiding and abetting); *Transp. Alliance Bank, Inc. v. Arrow Trucking Co.*, No. 10-CV-16, 2011 WL 221863 (N.D. Okla. Jan. 21, 2011) ("It does not appear that Oklahoma recognizes a cause of action for acquiescing in, or aiding and abetting, common law fraud."). As a preliminary matter, Count Fourteen for Aiding and Abetting Fraud under Oklahoma law must be dismissed.

Claims under Florida and California law for aiding and abetting are deficient because, at a minimum, Plaintiffs failed to plead that any YouTuber Defendant has knowledge of a fraud by FTX. "Conclusory statement[s] that a defendant 'actually knew' [is] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest[] that the defendant 'should have known that something was amiss.'" *Platinum Ests. v. TD Bank, N.A.*, No. 11-60670, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) (quoting *Groom v. Bank of Am.*, No. 8:08-cv-2567, 2012 WL 50250, at *3 (M.D. Fla. Jan. 9, 2012)). Alleging that defendants somehow "should have known of FTX's wrongdoing" (Opp'n at 28) or "were exposed to red flags of fraud" (Opp'n at 26)

---

[10] The YouTuber Defendants do not concede that Plaintiffs adequately pled the existence of an underlying violation (Opp'n at 28), but this issue is not relevant given Plaintiffs' failure to plead the elements of aiding and abetting as to the YouTuber Defendants.

does not suffice. *Platinum*, 2012 WL 760791, at *4 ("Plaintiff has failed to allege sufficiently the requisite degree of scienter, because red flags or aroused suspicions do not constitute actual awareness of one's role in a fraudulent scheme."). Plaintiffs failed to plead necessary knowledge of wrongdoing to survive a motion to dismiss as to aiding and abetting.

## V.  Plaintiffs' Arguments for Declaratory Relief Fail (Count Six)

In order to state a claim under the Federal Declaratory Judgment Act ("FDJA"), "under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests…. The controversy between the parties cannot be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210-11 (11th Cir. 2019). "[I]njuries sustained from 'past conduct' will not support a claim for declaratory relief absent a showing 'that such conduct has continued or will be continued in the future.'" *Corporacion Industrial de Energia, C.A. v. JPMorgan Chase Bank, N.A.*, 2023 WL 34643, at *3 (S.D. Fla. Jan. 4, 2023) (quoting *Emory v Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).

Here, Plaintiffs argue there is a "real and immediate likelihood of future injury," not based on the actions of the Defendants, but on the vague basis that "cryptocurrency is being used by organized crime syndicates and nation-states for illicit purposes" and that "unless a workable, coordinated, and organized structure is established now, the FTX victims will continue to suffer." Opp'n at 29. First, the alleged future injury does not involve the actions of any of the defendants in this case, even though the law requires "a substantial continuing controversy *between parties having adverse legal interests*." Second, the allegations that "organized crime syndicates and nation-states" may do something illicit with cryptocurrency in the future falls far short of meeting the requirements of a definite, concrete threat. Third, the fact that FTX filed for bankruptcy in November 2022, Am. Compl. ¶ 31, forecloses any future possibility of the type of alleged promotional conduct on behalf of FTX about which Plaintiffs complain.

In addition, the question of "whether the YBAs were sold illegally and whether Defendants illegally solicited their purchases from Plaintiffs," (Opp'n at pp. 29-30) is one that must be resolved

in connection with Plaintiffs' claims under Florida, California and Oklahoma securities laws (Counts One, Eight and Thirteen), as primary liability is a predicate to secondary liability. "[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiffs will be able to secure full, adequate and complete relief. *Marmol v. Kalonymus Dev. Partners, LLC*, Nos. 22-20703 and 22-20881, 2023 WL 2524884 (S.D. Fla. Mar. 15, 2023). Therefore, Plaintiffs' claim under the FDJA should be dismissed.

## VI. FTX is a Necessary Party under FRCP 19

The allegations in the Amended Complaint demonstrate that FTX's actions are at the core of this lawsuit. Am. Compl. ¶¶ 1-5 ("SBF and his FTX Group caused billions of dollars in losses to Plaintiffs"; "SBF and the FTX Group stole customer deposits and used billions of dollars in customer funds"; "The FTX Platform maintained by the FTX Group was truly a house of cards"; "the FTX Group offered and sold securities without proper registration"). The Amended Complaint avers that SBF's and the FTX Group's "conduct violated numerous laws, including laws related to the sale of unregistered securities, consumer protection, professional malpractice, fraud, and conversion." Am. Compl. ¶ 5. Plaintiffs seek to hold the YouTuber Defendants secondarily liable under state securities laws that require a showing of FTX's alleged primary liability. Therefore, FTX, the absent party, has an interest in the disposition of the proceedings. FRCP 19(a)(1)(B)(i). *See Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 847-48 (11th Cir.1999) (finding the interests of the absent party under the circumstances were "more significant than those of a routine joint tortfeasor" because plaintiff's antitrust claims necessarily required the court to evaluate the absent party's conduct in relation to plaintiff, thus "substantially implicating" the absent party's conduct). Although courts have held that joint tortfeasors need not all be joined in one lawsuit, the Eleventh Circuit holds that "a joint tortfeasor will be considered a necessary party when the absent party emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation." *Id.* at 848

(internal citations omitted).  Such is the case here.  Because FTX is a necessary party but the bankruptcy stay prevents FTX from being joined, this case should be dismissed.  FRCP 19(b).

**VII.    The Amended Complaint is a Shotgun Pleading against the YouTuber Defendants**

The Amended Complaint is a shotgun pleading as to the allegations made against the YouTuber Defendants.  Contrary to Plaintiffs' assertion, the Amended Complaint as to the YouTuber Defendants is not "pled on a person-by-person basis" and does not provide the YouTuber Defendants with adequate notice of the claims against them.  Opp'n at 33.  Plaintiffs fail to articulate facts specific to each defendant, and attempt to rely on the same general, conclusory, and boilerplate allegations as to all YouTuber Defendants. There are absolutely no factual allegations about Defendants Andrei Jikh, Jaspreet Singh, Brian Jung, Jeremy Lefebvre, and Erika Kullberg in the Amended Complaint.  Defendant Creators Agency is mentioned only as "talent management" for digital creators in one paragraph.  Am. Compl. ¶ 715.  And Defendant Graham Stephan is mentioned only in just two paragraphs (Am Comp. ¶¶ 716-17), neither of which allege any facts identifying or describing any videos or statements posted before the FTX collapse, any arrangements with FTX, or that any of the Plaintiffs saw any purported posts from Stephan and justifiably relied and acted upon them.  The section of the Amended Complaint that purportedly relates to the "Digital Creators Defendants" (Am Compl. ¶¶ 704-29) largely consists of statements about social media influencing in general and statements by FTX's new CEO about *FTX*, not anything that any of the YouTuber Defendants said or did.  Instead, Plaintiffs either lump the YouTuber Defendants into a group of *twenty-one* defendants, defined as "Promoter and Digital Creator Defendants" (Am. Compl. at 3), or into a group of defendants across several different class actions, defined as "MDL Defendants" (Am. Compl. at 2).  According to Plaintiffs, the Defendants have all done precisely the same things. Worse, the allegations themselves are purely conclusory recitations of legal elements of the type condemned by *Twombly/Iqbal*.  This is a quintessential shotgun pleading as to the YouTuber Defendants.  *See Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1206 (S.D. Fla. 2021); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

## VIII.   Conclusion

For the foregoing reasons and those articulated in their motion to dismiss under FRCP 12(b)(6), the YouTuber Defendants respectfully request that the Amended Complaint be dismissed with prejudice[11] and award them attorneys' fees and costs pursuant to Fla. Stat. §§ 501.2105(1) and 517.211(6).

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on December 6, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

**LAW OFFICE OF JOSEF M. MYSOREWALA, PLLC**

By*: /s/ Josef M. Mysorewala*
    Josef M. Mysorewala, Esq., FL Bar 105425
    josefm@lawjmm.com
    2000 South Dixie Hwy., Suite 112
    Miami, Florida 33133
    (305) 356-1031


**FLANGAS LAW GROUP**
Kimberly P. Stein, Esq. (*pro hac vice*)
3275 South Jones Blvd., Suite 105
Las Vegas, NV 89146
kps@fdlawlv.com

*Attorneys for Defendants, Graham Stephan, Andrei Jikh and Jeremy Lefebvre*

---

[11] Plaintiffs claim that amendment would not be futile because "[e]ven in the past several months, new information has been revealed from the federal criminal trial of SBF." Opp'n at 36. Plaintiffs fail, however, to describe what "new information" has come to light about the YouTuber Defendants, nor could they. In addition, it was recently revealed that counsel for Plaintiffs has been utilizing "confidential mediations" *in this case* to try and gather discovery in order to file "more FTX complaints." FTX Investors Sue MLB, F1 Team Over Crypto Promotions, Law360, November 27, 2023, quoting Adam Moskowitz, at https://www.law360.com/articles/1770249/ftx-investors-sue-mlb-f1-team-over-crypto-promotions. As such, in addition to the futility of amendment, the Court should deny leave to amend due to Plaintiffs' bad faith use of the confidential mediation process.

**STEARNS WEAVER MILLER WEISSLER**
**ALHADEFF & SITTERSON, P.A.**

By: */s/ Jose G. Sepulveda*
Jose G. Sepulveda, Esq.
Florida Bar No. 154490
jsepulveda@stearnsweaver.com
mfigueras@stearnsweaver.com
150 W. Flagler Street, Suite 2000
Miami, Florida 33130
Telephone: 305-789-3200

and

POTOMAC LAW GROUP, PLLC
Derek Adams, Esq., *Pro Hac Vice*
dadams@potomaclaw.com
1717 Pennsylvania Avenue, NW, Suite 1025
Washington, D.C. 20006
Telephone: 202-204-3005

*Counsel for Defendants Erika Kullberg, Brian*
*Jung and Creators Agency LLC*

**CUMMINGS, MCCLORY, DAVIS &ACHO,**
**P.C.**

By: *s/Michael O. Cummings*
  Michael O. Cummings, NY Bar No. 2701506
  mcummings@cmda-law.com
  1185 Avenue of The Americas, Third Floor
  New York, NY 10036
  (212) 547-8810
  Ronald G. Acho, Michigan Bar No. P-23913
  racho@cmda-law.com
  17436 College Parkway
  Livonia, MI 48152
  (734) 261-2400

*Counsel for Defendant Jaspreet Singh*

20