**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-MD-3076-MOORE/Otazo-Reyes

IN RE:

FTX CRYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION

_____

**This Document Relates to All Actions**

**DEFENDANTS ARMANINO LLP AND PRAGER METIS CPAS, LLC'S**
**REPLY IN SUPPORT OF THEIR JOINT MOTION TO DISMISS COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................................................1

ARGUMENT ........................................................................................................................................1

I.     Plaintiffs Plead in the Ambiguous, Not the Alternative. ...............................................1

II.    Plaintiffs Fail to Allege Essential Elements Common to Nearly All of Their
Claims. ...............................................................................................................................2

    A.    The Court Should Dismiss Each Count That Requires Plaintiffs to Plead a
Misrepresentation or Exposure to a Statement (Counts II, IV–VIII, X–XIII)..........2

        1.    Plaintiffs Do Not Allege That They Saw Any Audit Reports from Armanino
or Prager Metis, or Identify Any Misstatements Therein. ......................................2

        2.    The Alleged "Cheerleading Statements" Were Not Statements of Fact......................4

        3.    SBF's Congressional Testimony Never Mentioned Armanino or Prager
Metis. ......................................................................................................................4

    B.    The Court Should Dismiss Each Count that Requires Plaintiffs to Plead a
Duty or Intended Benefit (Counts II and IX–XIII)......................................................5

    C.    The Court Should Dismiss Each Count that Requires Plaintiffs to Plead
Knowledge or Intent (Counts I–II, VII–VIII, and X–XVIII).....................................6

    D.    The Court Should Dismiss Each Count that Requires Plaintiffs to Plead
Causation (Counts I–II, V–VII, IX–XVIII). ...............................................................7

III.    Plaintiffs' Claims Sounding in Fraud Are Not Pled with Particularity as
Required by Rule 9(b) (Counts II, IV–XVII)..................................................................7

IV.    The Court Should Dismiss the RICO Conspiracy (Count I) and Common Law
Conspiracy (Count XIV) Claims. ....................................................................................8

V.    The Court Should Dismiss the Florida Misleading Advertising Law Claim
(Count II) and California False Advertising Claim (Count VII). ...................................9

    A.    Plaintiffs Do Not Plausibly Allege Any Plaintiff Actually Relied on Any
Statement by Armanino or Prager Metis. ....................................................................9

    B.    Armanino's and Prager Metis's Audit Reports Were Not Directed at the
Public. .........................................................................................................................10

    C.    Plaintiffs Cannot Identify Any False Statements in Any Representation by
Armanino or Prager Metis. .........................................................................................10

VI.    The Court Should Dismiss the Florida Securities and Investor Protection Act
(FSIPA) Claims (Counts III and IV) and the California Securities Law Claim
(Count VIII). ...................................................................................................................11

    A.    Plaintiffs' FSIPA Claims (Counts III and IV) Fail Because Plaintiffs Cannot
Plausibly Plead an Agency Relationship Between FTX and Its Auditors. ................11

B. Plaintiffs Fail to Adequately Plead Their California Corporate Securities Law (CSL) Claim (Count VIII). ...................................................................12

VII. The Court Should Dismiss Plaintiffs' FDUTPA Claim (Count V). .............................13

VIII. The Court Should Dismiss the California Unfair Competition Law Claim (Count VI) and Aiding and Abetting Violations of UCL Claim (Count XVI)..............14

A. The Court Should Dismiss the UCL Claims Because Plaintiffs Are Not Entitled to Equitable Relief...........................................................................14

B. Plaintiffs Have Not Plausibly Alleged Any Unlawful, Unfair, or Fraudulent Act by Armanino or Prager Metis........................................................14

C. Plaintiffs Fail to Allege Actual Reliance Under the UCL. .......................................15

D. Plaintiffs Fail to Allege Aiding and Abetting Liability Under the UCL. .................15

IX. Non-Florida Plaintiffs Do Not Have Standing to Bring Florida Statutory Claims (Counts II–V); Non-California Plaintiffs Do Not Have Standing to Bring California Claims Against Prager Metis (Counts VI–VIII and XVI). ..........................16

X. The Court Should Dismiss the Professional Negligence Claim (Count IX)................17

XI. The Court Should Dismiss the Common Law Fraud and Misrepresentation Claims (Counts X–XIII). ..............................................................................................17

XII. The Court Should Dismiss the Aiding and Abetting Fraud Claim (Count XV)...........18

XIII. The Court Should Dismiss the Aiding and Abetting Fiduciary Duty and Conversion Claims (Counts XVII and XVIII)...............................................................19

XIV. The Court Should Dismiss the Declaratory Judgment Claims (Counts XIX and XX) and Plaintiffs Lack Standing to Seek Injunctive Relief.......................................20

XV. Plaintiffs Should Not Be Given Leave to Amend Their Complaint. ...........................20

**CONCLUSION** .......................................................................................................................**20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Carnival Corp.*,
    482 F. Supp. 3d 1256 (S.D. Fla. 2020) .......................................................................9

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ....................................................................................8

*AREI II Cases*,
    157 Cal. Rptr. 3d 368 (Cal. Ct. App. 2013) ...............................................................13

*Arthur Young & Co. v. Mariner Corp.*,
    630 So. 2d 1199 (Fla. 4th DCA 1994) ........................................................................11

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) ........................................................................15

*Barajas v. Blue Diamond Growers Inc.*,
    2023 WL 2333548 (E.D. Cal. Mar. 2, 2023) ..............................................................14

*Bily v. Arthur Young & Co.*,
    834 P.2d 745 (Cal. 1992), *as modified* (Nov. 12, 1992) ....................................3, 6, 17

*Box Off. Ent., LLC v. Brian D. Gordon, CPA, P.A.*,
    2007 WL 1362898 (S.D. Fla. May 9, 2007) .................................................................6

*Brady v. Medtronic, Inc.*,
    2015 WL 11181971 (S.D. Fla. Mar. 30, 2015) .............................................................5

*Bruhl v. PricewaterhouseCoopers Int'l, Ltd.*,
    2006 WL 8431886 (S.D. Fla. Apr. 3, 2006) ...............................................................18

*Ceithaml v. Celebrity Cruises, Inc*,
    207 F. Supp. 3d 1345 (S.D. Fla. 2016) .........................................................................8

*In re Checkers Sec. Litig.*,
    858 F. Supp. 1168 (M.D. Fla. 1994) ..........................................................................12

*Colenzo v. FDIC*,
    2010 WL 11512212 (C.D. Cal. Apr. 28, 2010) ............................................................3

*Copart, Inc. v. Sparta Consulting, Inc.*,
    339 F. Supp. 3d 959 (E.D. Cal. 2018) ........................................................................14

*Devco Premium Fin. Co. v. N. River Ins. Co.*,
    450 So. 2d 1216 (Fla 1st DCA 1984) ....................................................................11

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) .............................................................................15

*Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*,
    79 So. 3d 855 (Fla. 4th DCA 2012) .....................................................................12

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*,
    673 F. App'x 925 (11th Cir. 2016) ......................................................................20

*Eli Lilly & Co. v. Tyco Integrated Sec., LLC.*,
    2015 WL 11251732 (S.D. Fla. Feb. 10, 2015) .............................................16, 17

*Emcore Corp. v. PricewaterhouseCoopers LLP*,
    102 F. Supp. 2d 237 (D.N.J. 2000) ........................................................................9

*In re Ethereummax Inv. Litig.*,
    2023 WL 6787458 (C.D. Cal. Oct. 3, 2023) ........................................................12

*First Fla. Bank, N.A. v. Max Mitchell & Co.*,
    558 So. 2d 9 (Fla. 1990) .................................................................................6, 17

*Gardner v. Am. Home Mortg. Servicing, Inc.*,
    691 F. Supp. 2d 1192 (E.D. Cal. 2010) ................................................................14

*Gilison v. Flagler Bank*,
    303 So. 3d 999 (Fla. 4th DCA 2020) .....................................................................8

*Hensley-Maclean v. Safeway, Inc.*,
    2014 WL 1364906 (N.D. Cal. Apr. 7, 2014) ........................................................14

*Holmes v. Baker*,
    166 F. Supp. 2d 1362 (S.D. Fla. 2001) ...................................................3, 7, 11, 18

*Jacobs v. Coopers & Lybrand, L.L.P.*,
    1999 WL 101772 (S.D.N.Y. Mar. 1, 1999) ..........................................................18

*Jallali v. Nova Se. Univ., Inc.*,
    486 F. App'x 765 (11th Cir. 2012) ........................................................................5

*James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomm., Inc.*,
    2008 WL 360803 (M.D. Fla. Feb. 8, 2008) ..........................................................20

*Jara v. Nunez*,
    2015 WL 8659954 (M.D. Fla. Dec. 14, 2015) .....................................................1, 2

*Joe Hand Promotions, Inc. v. Creative Ent., LLC*,
   978 F. Supp. 2d 1236 (M.D. Fla. 2013) ................................................................2

*Kirschner v. Bennett*,
   2012 WL 13060078 (S.D.N.Y. June 18, 2012) ...............................................3, 19

*LeFebvre v. Syngenta Biotechnology, Inc.*,
   2008 WL 5245056 (N.D. Cal. Dec. 15, 2008) .....................................................20

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*,
   2019 WL 6218780 (S.D. Cal. Nov. 21, 2019) .....................................................10

*Locke v. Wells Fargo Home Mortg.*,
   2010 WL 4941456 (S.D. Fla. Nov. 30, 2010) ......................................................10

*Lu Silverio v. Just Brands, LLC*,
   2023 WL 6389529 (S.D. Fla. Oct. 2, 2023) .........................................................20

*Marksman Sec. Corp. v. P.G. Sec., Inc.*,
   2020 WL 12188373 (S.D. Fla. June 25, 2020) .....................................................10

*McFall v. Stacy & Witbeck, Inc.*,
   2016 WL 6248882 (N.D. Cal. Oct. 26, 2016) .......................................................19

*Mostowfi v. I2 Telecom Int'l, Inc.*,
   2004 WL 7338797 (N.D. Cal. May 27, 2004) ........................................................8

*Murphy v. Olly Pub. Benefit Corp.*,
   651 F. Supp. 3d 1111 (N.D. Cal. 2023) ...............................................................14

*NationsBank N.A. v. KPMG Peat Marwick LLP*,
   813 So. 2d 964 (Fla. 4th DCA 2002) .................................................................5, 6

*Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*,
   657 F. Supp. 2d 1279 (M.D. Fla. 2009) ...............................................................20

*Nazemi v. Specialized Loan Servicing, LLC*,
   637 F. Supp. 3d 856 (C.D. Cal. 2022) .................................................................15

*Neilson v. Union Bank of Cal., N.A.*,
   2003 WL 27374137 (C.D. Cal. Feb. 20, 2003) ....................................................19

*Newton v. Duke Energy Fla., LLC*,
   895 F.3d 1270 (11th Cir. 2018) ...........................................................................20

*In re Outlaw Lab., LLP*,
   463 F. Supp. 3d 1068 (S.D. Cal. 2020) .............................................................9, 10

*Oxford Asset Mgmt., Ltd. v. Jaharis,*
    297 F.3d 1182 (11th Cir. 2002) ......................................................................4

*Rana Fin., LLC v. City Nat'l Bank of N.J.,*
    347 F. Supp. 3d 1147 (S.D. Fla. 2018) ...........................................................8

*Rogers v. Nacchio,*
    2006 WL 7997562 (S.D. Fla. June 6, 2006), *aff'd*, 241 F. App'x 602 (11th Cir.
    2007) ...............................................................................................................13

*Sagastume v. Psychemedics Corp.,*
    2020 WL 8175597 (C.D. Cal. Nov. 30, 2020) ...............................................14

*Schaffer Fam. Invs., LLC v. Sonnier,*
    120 F. Supp. 3d 1028 (C.D. Cal. 2015) .........................................................13

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery,*
    *LLC,*
    315 F. Supp. 3d 1291 (S.D. Fla. 2018) .........................................................13

*In re Sunbeam Sec. Litig.,*
    89 F. Supp. 2d 1344 (S.D. Fla. 1999) ...........................................................18

*In re Sunterra Corp. Sec. Litig.,*
    199 F. Supp. 2d 1308 (M.D. Fla. 2002) ....................................................4, 11

*Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co.,*
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) ...........................................................8

*Tan v. Quick Box, LLC,*
    2021 WL 1293862 (S.D. Cal. Apr. 7, 2021) .................................................16

*Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.,*
    2023 WL 4457458 (S.D. Fla. 2023) ................................................................5

*United States v. Browne,*
    505 F.3d 1229 (11th Cir. 2007) ......................................................................9

*United States v. Starrett,*
    55 F.3d 1525 (11th Cir. 1995) ........................................................................9

*In re Van Wagoner Funds, Inc. Sec. Litig.,*
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ..........................................................9

*Wendruck v. Hartford Life Ins. Co.,*
    2005 WL 8156443 (C.D. Cal. Dec. 12, 2005) .................................................9

*In re Winn-Dixie Stores, Inc. Sec. Litig.*,
   531 F. Supp. 2d 1334 (M.D. Fla. 2007) ........................................................................4

*In re Woodbridge Invs. Litig.*,
   2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ...............................................................16

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) ...........................................................................................5

**Statutes**

AU-C § 200.A56 ...............................................................................................................7

Cal. Corp. Code § 25003 ................................................................................................12

Cal. Corp. Code § 25504.1 .............................................................................................12

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ..................................................................................................20

## INTRODUCTION

Plaintiffs' Opposition (ECF No. 354) is full of rhetoric but devoid of substance. Missing from Plaintiffs' 180-page Complaint and 39-page Opposition is any plausible allegation of necessary elements including intent, actual knowledge, reliance, duty, and privity between Plaintiffs and Armanino or Prager Metis. Instead, Plaintiffs seek to misdirect attention to various public statements by non-party FTX insiders, none of which are attributable to Armanino or Prager Metis. Plaintiffs' pleadings reduce to an incoherent mishmash of grievances against FTX insiders, a few tweets and website posts from either Armanino or Prager Metis that have nothing to do with their audits of the financial statements of FTX US or FTX Trading, and public statements from FTX entities and insiders that make no mention of Armanino or Prager Metis.

Plaintiffs do not set forth factual allegations that state a claim sufficient to survive Armanino's and Prager Metis's Motion to Dismiss (ECF No. 281) (the "Motion") because they never allege that any Plaintiff ever knew of, saw, received, or relied upon any statement from Armanino or Prager Metis about the financial statements of FTX US or FTX Trading. That failure renders Plaintiffs' entire theory of the case—that they would not have traded on the FTX exchanges but for their reliance on Armanino's and Prager Metis's "clean" audit reports—dead on arrival. No further investigation or evidence could remedy this abject failure to plead reliance. What's more, Plaintiffs do not dispute that the Complaint never alleges which Plaintiff invested in which exchange (if any) or which of the Auditor Defendants each Plaintiff blames for which losses. Plaintiffs call this pleading "in the alternative," but nowhere is there a plain statement showing any Plaintiff is entitled to relief from Armanino or Prager Metis. For the reasons stated in the Motion and those set forth below, the Court should dismiss the Complaint, and it should do so with prejudice.

## ARGUMENT

### I.    Plaintiffs Plead in the Ambiguous, Not the Alternative.

The Complaint relies on "and/or" catch-all allegations that conflate both plaintiffs and defendants to obscure the fact that they cannot allege that any Plaintiff ever saw or relied upon any statement by or attributed to Armanino or Prager Metis about the financial statements of FTX US or FTX Trading. Plaintiffs now concede that "most Plaintiffs did not read the actual audit reports," Opp. at 31, but still fail to identify a single Plaintiff or class member who did. Instead, they argue "and/or" pleading is fine, because *Jara v. Nunez*, 2015 WL 8659954, at *3 (M.D. Fla. Dec. 14,

2015), says they are entitled to "plead in the alternative under Rule 8, so long as no ambiguity is created." Opp. at 9.[1] But *Jara* held plaintiffs can plead alternative *legal theories*, not alternative *facts*, and expressly rejects the pleading tactic Plaintiffs employ: "**Pleading 'in the ambiguous' most commonly occurs when a plaintiff uses 'and/or' several times in a sentence or when the use of 'and/or'" provides for the liability of alternative defendants.**" *Id.* (emphasis added); *see also Joe Hand Promotions, Inc. v. Creative Ent., LLC*, 978 F. Supp. 2d 1236, 1240 (M.D. Fla. 2013) ("usage of several 'and/or' conjunctions among other ambiguities" renders allegations insufficient).

Plaintiffs also impermissibly conflate Armanino and Prager Metis, pleading every single count against both parties as if they were a single entity, despite the fact that Armanino and Prager Metis conducted separate audits for separate clients who had different customers. This hardly "clearly identif[ies] the parties, who they are, and who did what." Opp. at 9. And rather than identify which platform—FTX US or FTX Trading—any Plaintiff traded on, Plaintiffs instead argue that they each *could* have been customers of both platforms, and thus *could* have claims related to both entities—as if they do not know the platform they used. *Id.* Rather than clarify which Plaintiffs have claims against which auditor, Plaintiffs prevaricate. By refusing to articulate a single set of facts giving rise to liability, Plaintiffs have failed to state a claim.

## II. Plaintiffs Fail to Allege Essential Elements Common to Nearly All of Their Claims.

### A. The Court Should Dismiss Each Count That Requires Plaintiffs to Plead a Misrepresentation or Exposure to a Statement (Counts II, IV–VIII, X–XIII).

Counts II, IV–VIII, and X–XIII require Plaintiffs to allege that Armanino and Prager Metis made a material misrepresentation or omission or engaged in a deceptive practice, and that Plaintiffs saw and relied on that statement. The Complaint does not allege any of these elements.

#### 1. Plaintiffs Do Not Allege That They Saw Any Audit Reports from Armanino or Prager Metis, or Identify Any Misstatements Therein.

Plaintiffs concede they have not alleged any Plaintiff or any class member ever saw either an Armanino or a Prager Metis audit report, but they say that is not a problem. Instead, they argue "the fact that most Plaintiffs did not read the actual audit reports is irrelevant because they learned

---

[1] Plaintiffs inexplicably point to Paragraph 358 of the Complaint to show they have affirmatively pleaded reliance. Opp. at 8, 19, n. 20. But as Armanino and Prager Metis demonstrated in their Motion, this paragraph exemplifies the exact type of rhetorical tricks and "and/or" allegations that courts, including Plaintiffs' own authority, roundly reject as failing to comply with Rule 8. Mot. at 2, 8–9.

that the Auditors issued 'clean' audit reports and they, and the market, relied on these reports," Opp. at 31, all while claiming the fact that the audit reports were non-public is irrelevant. *Id*. at 10. Plaintiffs' invocation of a purported "market" does not obviate the need to plead their own reliance, and they make no effort to distinguish the authority cited in the Motion. *See, e.g.*, *Colenzo v. FDIC*, 2010 WL 11512212, at *4 (C.D. Cal. Apr. 28, 2010) ("Plaintiffs do not allege that they relied on any statement by E&Y since they do not allege that they ever read or heard any statement by E&Y that caused them to alter their conduct. Absent an allegation that plaintiffs read or knew of an allegedly false statement by E&Y and relied on it, the amended complaint does not adequately plead reliance."). There is simply no basis in law for Plaintiffs' "market reliance" theory, and for good reason, as its adoption would result in the unbounded liability for independent auditors that courts have routinely rejected. *See Bily v. Arthur Young & Co.*, 834 P.2d 745, 772 (Cal. 1992), *as modified* (Nov. 12, 1992).

Plaintiffs' "market reliance" theory is all the more implausible here given that Plaintiffs ***do not allege that the "market" ever saw these non-public reports either***. In support of their novel reliance theory, they cite a single nonbinding opinion from a New York special master, *Kirschner v. Bennett*, 2012 WL 13060078 (S.D.N.Y. June 18, 2012). But *Kirschner* did not involve the issue of "market reliance" to state a claim for misrepresentation. Instead, it was limited to substantial assistance in someone else's representation. *Kirschner* also involved very different facts, including that the relevant "financial statements were available to customers and counterparties who requested them," and "members of the public had requested" and "had access to" the auditor's work product. *Id.* at *13. Here, in contrast, Plaintiffs do not allege Armanino's or Prager Metis's audit reports were distributed beyond their intended recipients, who did not include FTX customers. Finally, no court has cited the *Kirschner* opinion for such a proposition in the more than 11 years since it was issued.

Plaintiffs also fail to identify any misrepresentation or misstatements of fact in the non-public audit reports they never read. Instead, Plaintiffs allege the audit reports as a whole were material misstatements. Opp. at 29. They cite no legal authority supporting this theory of liability. Instead, they reference two cases that bear no similarity to this one. In those cases, the plaintiffs alleged they actually saw the audit reports and they identified specific misstatements they relied on, but the courts nonetheless dismissed fraud claims against the auditors for failing to allege scienter. *See Holmes v. Baker*, 166 F. Supp. 2d 1362, 1379–80 (S.D. Fla. 2001) ("Plaintiff's red

flags consist primarily of rehashes of the GAAP violations. . . . At most, Plaintiff has alleged 'fraud by hindsight' and nothing more than ordinary negligence against [auditor]."); *In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1338 (M.D. Fla. 2002) ("[B]ecause an independent accountant often depends on its client to provide the information base for the audit, it is almost always more difficult to establish scienter on the part of the accountant than on the part of its client."). Here, too, Plaintiffs cannot identify any particular misrepresentation in the non-public audit reports, nor can they establish Armanino or Prager Metis's knowledge of the alleged underlying fraud. *See* Section II.C *infra*.

        2.    <u>The Alleged "Cheerleading Statements" Were Not Statements of Fact.</u>

Because Plaintiffs cannot plead they ever saw—much less relied upon—the audit reports themselves, they string together a collection of public statements from Armanino or Prager Metis wholly unrelated to their auditing work or FTX US's or FTX Trading's financial statements. Though Plaintiffs never specify which statement from which auditor led them to become customers of which FTX entity, Plaintiffs purport to argue that a single post on Prager Metis's website and three tweets from Armanino and one of its employees constituted actionable "cheerleading." Opp. at 9–10.[2] Critically, Plaintiffs fail to allege that the tweets or website post were statements of *fact*, let alone *misstatements*. Indeed, none of these statements indicates Armanino or Prager Metis were engaged to perform financial statement audits for FTX US or FTX Trading.

        3.    <u>SBF's Congressional Testimony Never Mentioned Armanino or Prager Metis.</u>

Deflecting attention from the fact that they never saw any of Armanino's or Prager Metis's statements about financial statements, Plaintiffs advance the novel and nonsensical theory that auditors must indefinitely police and correct public statements by the CEOs of their audit clients. In advancing this fanciful theory, they claim to belatedly incorporate almost 50 pages of Sam Bankman-Fried's February 2022 Congressional testimony into their Complaint, a practice

---

[2] Plaintiffs ask the Court to reserve a decision on the materiality of these statements because materiality is a mixed question of fact and law. Opp. at 10. But the Court need not consider these statements at all, given that Plaintiffs fail to allege that they are statements of fact. Further, courts routinely resolve questions of materiality at this stage when the statements are clearly immaterial. *See, e.g.*, *In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F. Supp. 2d 1334, 1343 (M.D. Fla. 2007) ("if it is plain that the alleged omission or misstatement is unimportant and reasonable minds could not differ on the question of importance, it is proper for this Court to pronounce a misstatement or omission immaterial as a matter of law.") (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002)).

routinely rejected in this Circuit. *See, e.g.*, *Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012) ("[A] party cannot amend a complaint by attaching documents to a response to a motion to dismiss."). Even if incorporated, the appended testimony makes no mention of Armanino or Prager Metis, the audit work they performed, or the audit opinions they issued. The testimony is therefore irrelevant. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) ("[Company's] press release did not attribute any assurances to Ernst & Young and, in fact, did not mention Ernst & Young at all. Thus, Ernst & Young neither directly nor indirectly communicated misrepresentations to investors."). That an Armanino employee tweeted in reference to Mr. Bankman-Fried's testimony does not make Armanino responsible for the testimony. And Plaintiffs allege no facts at all tying Prager Metis to this testimony at all.

## B. The Court Should Dismiss Each Count that Requires Plaintiffs to Plead a Duty or Intended Benefit (Counts II and IX–XIII).

Plaintiffs provide no basis to establish that Armanino or Prager Metis had a duty to any Plaintiff, or that Armanino or Prager Metis intended to induce Plaintiffs to rely on the audit reports. Plaintiffs do not dispute that they never had a relationship with Armanino or Prager Metis (let alone one sufficient to create a duty), or that the audit reports were plainly not addressed to customers. Instead, Plaintiffs argue, without support, that "[b]ecause they were private entities, there was no requirement that the financial statements of FTX US and FTX Trading be audited," so "the Auditors knew or should have known that the reason they were engaged to issue audit reports was so the FTX Entities could tout them to curry favor and trust with current and prospective customers of and investors in FTX." Opp. at 4. Plaintiffs cite no authority which would require such an inference or impose such a duty and none exists.[3] Neither *NationsBank N.A. v. KPMG Peat Marwick LLP*, 813 So. 2d 964, 967 (Fla. 4th DCA 2002), nor *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 2023 WL 4457458, at *15 (S.D. Fla. 2023) (Opp. at 17–18), contravenes Restatement (Second) of Torts § 552, which limits the scope of an auditor's negligence liability to only "***specifically intended beneficiaries of the audit report who are known***

---

[3] Plaintiffs caveat their argument by asking the Court to resolve the issue of reasonable reliance at a later stage, citing *Brady v. Medtronic, Inc.*, 2015 WL 11181971, at *4–5 (S.D. Fla. Mar. 30, 2015), a medical device case with no relevance to this dispute. Opp. at 19. But actual reliance is an essential element of many of Plaintiffs' claims, and something they fail to plead.

*to the auditor and for whose benefit it renders the audit report*."[4] Plaintiffs are customers of widely used yet privately held exchanges and do not purport to have ever seen the non-public auditors' reports prepared by Armanino or Prager Metis. Thus, they are not within the discrete class to whom Armanino and Prager Metis owed a duty. With no duty, Armanino and Prager Metis cannot be liable under Counts II and IX–XIII.

### C. The Court Should Dismiss Each Count that Requires Plaintiffs to Plead Knowledge or Intent (Counts I–II, VII–VIII, and X–XVIII).

Plaintiffs allege Armanino and Prager Metis ignored "red flags" identified by Mr. Ray and his team's post-collapse forensic investigation of the FTX Group. But Plaintiffs cannot rely on Mr. Ray's findings to establish Armanino or Prager Metis's knowledge and intent. ***First,*** Plaintiffs do not dispute that the timing, purpose, scope, and basis of Mr. Ray's forensic investigation were entirely different than that of the financial statement audits performed by Armanino and Prager Metis for FTX US and FTX Trading[5] at an earlier period in time. In fact, Plaintiffs cite Mr. Ray's April 2023 report, which *post-dates* guilty pleas from SBF's co-conspirators. Opp. at 4. ***Second,*** Mr. Ray's report makes no mention of Armanino, Prager Metis, or their work or the controls specifically over financial reporting that are relevant to an independent audit. Plaintiffs ask the Court to infer knowledge from alleged "red flags" discovered by a forensic investigation team at

---

[4] *Bily*, 834 P.2d at 767 (emphasis added); *see also Box Off. Ent., LLC v. Brian D. Gordon, CPA, P.A.*, 2007 WL 1362898 (S.D. Fla. May 9, 2007), at *3–5. Indeed, *Nations Bank* disavows any duty where an accountant "merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the audited financial statements], on the part of anyone to whom it may be repeated." 813 So. 2d at 967 (citing *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9 (Fla. 1990)). Further, in both *Nations Bank* and *Todd Benjamin* there was ample of evidence that the auditors were aware their audits would be relied on by non-clients, and that plaintiffs actually relied on the statements from the auditors. *NationsBank*, 813 So. 2d at 967–68 (evidence showed KPMG knew "that Banks would rely on the audited financial statements in making their annual decisions"); *Todd Benjamin*, No. 20-cv-21808, ECF No. 21, ¶¶ 63, 65, 96 (plaintiffs pleaded facts showing the auditor actually acknowledged and knew its report would be distributed to and relied on "by prospective and current investors, including Plaintiffs" and that the reports actually were distributed to those investors).

[5] Plaintiffs contend that Mr. Ray reviewed the "FTX Group" because he was unable to differentiate among the FTX Entities because of the massive intermingling. Opp. at 6–5, n.7. But Mr. Ray's report does not support this position. Instead, "FTX Group" was simply a term Ray used to outline the scope of his analysis. *See In re FTX Trading Ltd.*, No. 22-11068, ECF No. 1242-1, at 1 n.2 (Bankr. D. Del. Apr. 9, 2023). Further, Mr. Ray explained that the Debtors used four groups of businesses, or "silos," for "organizational purposes": the WRS Silo (which includes FTX.US), the Alameda Silo, the Ventures Silo, and the Dotcom Silo (which includes FTX Trading). *Id.* at 9.

a later time with full hindsight knowledge of the fraud, an argument contrary to their own authority. *See Holmes*, 166 F. Supp. 2d at 1380 (finding plaintiffs' allegations of "red flags," "GAAP and GAAS violations," and the "magnitude of the financial overstatements," without any "allegations of actual awareness of accounting fraud" failed to establish knowledge); *see also* AU-C § 200.A56 ("Because of the inherent limitations of an audit . . . the subsequent discovery of a material misstatement of the financial statements resulting from fraud or error does not by itself indicate a failure to conduct an audit in accordance with GAAS.").

Plaintiffs make no attempt to address let alone distinguish Armanino and Prager Metis's ample authority showing courts routinely reject plaintiffs' efforts to impute knowledge based on later discovered facts by parties standing at a later period in time and in a completely different position than the independent auditors. Mot. at 17 (collecting cases).

**D.    The Court Should Dismiss Each Count that Requires Plaintiffs to Plead Causation (Counts I–II, V–VII, IX–XVIII).**

Despite their failure to plead that they ever saw Armanino's or Prager Metis's non-public audit reports, Plaintiffs assert in conclusory fashion that causation "is adequately pled." Opp. at 19. Rather than explain how they reached such a conclusion, Plaintiffs vaguely promise that causation "will be addressed" in briefing for their separate actions against other, unspecified MDL defendants. Opp. at 20 n.21. Armanino and Prager Metis have not identified this alleged phantom briefing. By referring the Court beyond the four corners of the Complaint, Plaintiffs effectively concede that they failed to allege causation against Armanino or Prager Metis.

**III.   Plaintiffs' Claims Sounding in Fraud Are Not Pled with Particularity as Required by Rule 9(b) (Counts II, IV–XVII).**

Plaintiffs do not dispute that the heightened Rule 9(b) pleading standard applies to a majority of their claims, namely: Florida misleading advertising (Count II), FSIPA (Count IV), FDUTPA (Count V), UCL (Count VI), California FAL (Count VII), California securities law (Count VIII), fraudulent concealment (Count X), negligent misrepresentation (Count XI), intentional misrepresentation (Count XII), fraud (Count XIII), civil conspiracy (Count XIV), aiding and abetting fraud (Count XV), aiding and abetting a UCL violation (Count XVI), and aiding and abetting breach of fiduciary duty (Count XVII). *See* Mot. at 19–20.[6]

---

[6] Plaintiffs erroneously argue that their professional negligence claim need not satisfy Rule 9(b)'s heightened pleading standard. In support of their position, Plaintiffs cite cases in which the

Rather than calling out any specific facts that Plaintiffs pleaded with particularity under Rule 9(b), Plaintiffs ask the Court to take their word for it and simply assert in conclusory fashion that "all counts are adequately alleged" under whichever pleading standard governs them. Opp. at 8. But Plaintiffs never explain how any of their fraud-based counts "set forth particular allegations about the 'who, what, where, when, and how' of the fraud" or allege the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Cf. Ceithaml v. Celebrity Cruises, Inc*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2016). This deficiency compels the dismissal of Counts II and IV–XVII.

## IV.    The Court Should Dismiss the RICO Conspiracy (Count I) and Common Law Conspiracy (Count XIV) Claims.

Plaintiffs do not allege either an agreement to the objective of the conspiracy or an agreement to commit two predicate acts necessary to plead RICO and common law conspiracy against Armanino or Prager Metis. *See Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1293 (11th Cir. 2010). Both federal statutory and state common law require specific allegations of the how and why of a purported conspiracy. *See, e.g.*, *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020); *Super Vision Int'l, Inc. v. Mega Int'l Com. Bank Co*., 534 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008). Nevertheless, Plaintiffs assert that this Court should instead "infer" an agreement because: (1) Armanino and Prager Metis submitted two "clean," non-public audit reports to FTX entities; and (2) FTX's CEO made public statements about crypto regulation and the "safety" of the FTX platform. *See* Opp. at 12–13. Yet none of Plaintiffs' cited authority supports inferring any kind of agreement, even an implied one, from such paltry allegations that do not connect the auditors' opinions to any purported wrongdoing by FTX Insiders. On the contrary, *Am. Dental Ass'n*, 605 F.3d at 1293–94, held that courts cannot "infer" a conspiracy agreement from mere "conclusory statements" such as "defendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy." Further, Plaintiffs have not pleaded a *single fact* showing that Armanino or Prager

---

professional negligence claim did not sound in fraud, as it does here. But both Florida and California law require professional negligence claims—when grounded in fraud—to satisfy Rule 9(b), a standard Plaintiffs fail to meet. *See Mostowfi v. I2 Telecom Int'l, Inc.*, 2004 WL 7338797, at *9 (N.D. Cal. May 27, 2004); *Rana Fin., LLC v. City Nat'l Bank of N.J.*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018).

Metis took any acts in furtherance of an "agreement" with FTX executives.[7]

Equally baseless is Plaintiffs' assertion that *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1185 (N.D. Cal. 2004), is somehow irrelevant because an auditor's economic motive is not a required element to pleading conspiracy. *See* Opp. at 13–14. But Plaintiffs miss the point. *Van Wagoner* holds that a plaintiff's pleading must be ***plausible*** to survive a motion to dismiss, and it is not plausible to simply conclude that an independent accounting firm would intentionally assist in a client's fraud scheme. 382 F. Supp. 2d at 1185. Plaintiffs' vague allegations that cryptocurrency presented a new line of business are not enough to suggest that Armanino or Prager Metis would sacrifice their professional reputations to participate in a conspiracy. Other cases Plaintiffs cite in an attempt to salvage their implausible conspiracy theory are irrelevant. *See* Opp. at 14. *Wendruck v. Hartford Life Ins. Co.*, 2005 WL 8156443, at *2–3 (C.D. Cal. Dec. 12, 2005), does not involve a RICO conspiracy claim. And in *Emcore Corp. v. PricewaterhouseCoopers LLP*, 102 F. Supp. 2d 237, 263–66 (D.N.J. 2000), the auditor's client alleged the auditor, its partners, and its counsel participated in predicate offenses of federal mail and wire fraud. The only "predicate offense" Plaintiffs identify (not in their Complaint, but in their response brief) is the "predicate offense" of "cheerleading"—not a theory supported by case law. *See* Opp. at 11 n.11.

## V.   The Court Should Dismiss the Florida Misleading Advertising Law Claim (Count II) and California False Advertising Claim (Count VII).

### A.   Plaintiffs Do Not Plausibly Allege Any Plaintiff Actually Relied on Any Statement by Armanino or Prager Metis.

Actual reliance on *the defendant's* alleged misrepresentation is an essential element of liability under the California and Florida statutes Plaintiffs invoke in Counts II and VII. *See In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085–86 (S.D. Cal. 2020) (California False Advertising Statute "requires a showing of a causal connection or reliance on the alleged misrepresentation. . . . [a] defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate section 17200 or 17500") (internal quotations omitted); *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1267 (S.D. Fla. 2020) (noting plaintiffs must allege "particular facts of how [defendant] contributed to the misleading

---

[7] Plaintiffs' citations to *United States v. Browne*, 505 F.3d 1229, 1247 (11th Cir. 2007) and *United States v. Starrett*, 55 F.3d 1525 (11th Cir. 1995) are irrelevant, as those cases evaluated the sufficiency of evidence to support a *criminal* RICO conviction.

advertisements," and dismissing § 817.41 claim based on "conclusory statements that [defendant's] 'input and/or suggestions and/or recommendations contributed to [the advertiser's] alleged misleading statements'").

Plaintiffs do not allege that they saw or relied on any statement made by Armanino or Prager Metis, and instead claim that they relied on non-party FTX's public statements about its own stability and "safety." *See* Opp. at 27. Plaintiffs do not allege Armanino or Prager Metis possessed any control—much less "unbridled control"—over those non-party statements. *Cf. Outlaw*, 463 F. Supp. 3d at 1086.

## B. Armanino's and Prager Metis's Audit Reports Were Not Directed at the Public.

Plaintiffs' insistence that Florida's false advertising statute only requires a statement be "disseminated before the general public," not a "public statement," is a distinction without a difference. Opp. at 27.[8] Plaintiffs never allege that the Armanino's or Prager Metis's audit reports were disseminated for public consumption and concede they "did not read the actual audit reports." *Id*. at 31. And Plaintiffs cite no authority that suggests non-public statements such as the auditors' reports can come within the ambit of the state false/misleading advertising statutes. *Id*. at 27–28 (*citing Marksman Sec. Corp. v. P.G. Sec., Inc.*, 2020 WL 12188373, at *7 (S.D. Fla. June 25, 2020), which did not involve auditors and centered on marketing claims made on an Instagram profile that was "published online to the general public"). Statements that never see the public light of day are obviously not actionable as false advertising.

## C. Plaintiffs Cannot Identify Any False Statements in Any Representation by Armanino or Prager Metis.

Plaintiffs do not allege that Armanino's or Prager Metis's alleged public "cheerleading" statements about FTX were statements of fact, let alone false. Although Plaintiffs quote dicta from two distinguishable securities fraud cases, Opp. at 29, they neglect to mention that (a) neither case involves the relevant state false/misleading advertising statutes, (b) both cases involve publicly

---

[8] Both the California and Florida statutes require that the alleged false/misleading advertisement be directed at the public. *Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*, 2019 WL 6218780, at *5 (S.D. Cal. Nov. 21, 2019) ("[t]o state a claim for violation of [Cal. Bus. & Prof. Code] § 17500, a plaintiff must allege that there was an advertisement that was directed at the public and that it was unfair, deceptive, untrue, or misleading"); *Locke v. Wells Fargo Home Mortg.*, 2010 WL 4941456, at *5 (S.D. Fla. Nov. 30, 2010) (dismissing claim under Fla. Stat. § 817.41 because "the statements allegedly made to the Plaintiff by [defendant]'s employees were not public statements and could not be construed as advertising").

issued audit opinions for publicly traded companies, where plaintiffs could see and rely on the auditors' work product before investing, and (c) both cases ultimately dismissed fraud claims as to the auditors for failing to allege *scienter*. *See In re Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d at 1338 (dismissing securities fraud claim); *Holmes*, 166 F. Supp. 2d at 1380 (same).

By contrast, FTX was privately held, its audited financial statements were not publicly distributed, and Plaintiffs do not purport to have ever seen the audit reports. Plaintiffs have not identified any false statements in any public representations by Armanino or Prager Metis as required under the Florida and California statutes.

## VI.    The Court Should Dismiss the Florida Securities and Investor Protection Act (FSIPA) Claims (Counts III and IV) and the California Securities Law Claim (Count VIII).

### A.    Plaintiffs' FSIPA Claims (Counts III and IV) Fail Because Plaintiffs Cannot Plausibly Plead an Agency Relationship Between FTX and Its Auditors.

Plaintiffs seek to hold Armanino and Prager Metis liable for the sale of unregistered securities (Count III) and investment fraud (Count IV) under FSIPA. Because Armanino and Prager Metis did not sell securities (or anything else, for that matter) to Plaintiffs (or anyone else, for that matter), Plaintiffs try to engineer FSIPA liability by reframing the independent auditors as FTX's agents. This theory is foreclosed by Florida law, which holds that an auditor's duties to its client do not "convert the auditor into something of management's agent who must police the system created by management." *Devco Premium Fin. Co. v. N. River Ins. Co.*, 450 So. 2d 1216, 1219 (Fla 1st DCA 1984).

Plaintiffs assert liability by association—not agency. Plaintiffs do not cite any case where a Florida court found that an auditor was its client's agent in connection with a securities sale by dint of its status as an independent auditor or its public statements regarding that client. The sole case against an accountant Plaintiffs can muster underscores the point: in *Arthur Young & Co. v. Mariner Corp.*, the defendant accounting firm was not retained as the independent auditor of the client's financial statements. Rather, the accounting firm was retained to ***act as a broker in the sale of its client***, requiring the accounting firm to "prepare a selling memorandum, contact potential buyers, assist in the negotiation of the sale, and 'represent [its client's] interests.' For their services, [the accountants] were to be paid a contingent fee based on the amount of the selling price due on the closing of a sale." *Arthur Young & Co. v. Mariner Corp.*, 630 So. 2d 1199, 1204 (Fla. 4th DCA 1994). Plaintiffs do not allege Armanino or Prager Metis agreed to act as brokers in any respect, nor that they had any contact with FTX customers or received proceeds from FTX's

sale of YBAs or FTT. The Complaint does not allege that Armanino or Prager Metis had any financial stake in the sale of any products or services by FTX. In their Opposition, Plaintiffs posit that auditors might be motivated to achieve "increased auditing business." Opp. at 30. But the court in *In re Checkers Sec. Litig.*, 858 F. Supp. 1168, 1180 (M.D. Fla. 1994), rejected such a charge, dismissing FSIPA claims against an auditor who, though keen to gain more auditing business, "had no financial interest in the sale of securities."[9] This Court should do likewise.

**B.      Plaintiffs Fail to Adequately Plead Their California Corporate Securities Law (CSL) Claim (Count VIII).**

Plaintiffs allege that Armanino and Prager Metis are liable under the CSL because they are FTX's agents for purposes of selling unregistered securities. The CSL defines an "agent" as "any individual . . . who represents a broker-dealer or who for compensation represents an issuer in effecting or attempting to effect purchases or sales of securities." Cal. Corp. Code § 25003. Plaintiffs do not allege Armanino or Prager Metis fit that description. Instead, they complain that Armanino and Prager Metis failed to police "the Insider Defendants' statements on behalf of FTX about the use of customer and investor funds." Opp. at 22. The CSL does not impose a duty on independent financial statement auditors to monitor their clients' speech, nor does it transform those auditors into agents because of their engagement as independent auditors. And contrary to Plaintiffs' claim that "agency status ultimately is a factual issue that should not be resolved on dismissal," courts dismiss CSL claims that fail to allege an agency relationship in accordance with the statutory definition. *See, e.g.*, *In re Ethereummax Inv. Litig.*, 2023 WL 6787458, at *18 (C.D. Cal. Oct. 3, 2023) (dismissing CSL claim where "Plaintiffs' agency theory does not hold water").

Separately, Plaintiffs offer the conclusory allegation that Armanino and Prager Metis are liable under the CSL because they "materially assisted" FTX in the sale of securities. Opp. at 21. This argument fails for two reasons. First, Plaintiffs do not allege the "intent to deceive or defraud" that Cal. Corp. Code § 25504.1 requires to impose liability on those who materially assist securities

---

[9] Plaintiffs also argue that the issue of agency is unfit for resolution at the motion to dismiss stage. Opp. at 29. This dodge (for which Plaintiffs cite only a non-FSIPA case, *Brady v. Medtronic*) does not square with the fact that agency is a necessary element of FSIPA liability and therefore must be pled in accordance with the Federal Rules. Courts routinely dismiss FSIPA claims when Plaintiffs fail to adequately allege an agency relationship. *See, e.g.*, *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012) ("[A]n allegation of an agency relationship is a mere legal conclusion which we do not have to accept as true in analyzing the sufficiency of the complaint.").

issuers. Indeed, they ignore the plain text of the statute and deny such an intent requirement exists. *See* Compl. at n.167. Second, under the CSL, "it is not enough that a person provided material assistance in a larger scheme to defraud if that person had no role or involvement in the part of the scheme that constituted a violation of the securities laws." *Schaffer Fam. Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1045 (C.D. Cal. 2015). Plaintiffs allege only that Armanino and Prager Metis "lur[ed] customers to FTX" in general and allege no facts tying Armanino or Prager Metis to FTX's sale of alleged securities such as YBAs or FTT. Opp. at 22. Absent a tangible link between Armanino and Prager Metis and "some aspect of the securities law violation," Plaintiffs cannot state a claim under the California Securities Law. *AREI II Cases*, 157 Cal. Rptr. 3d 368, 377 (Cal. Ct. App. 2013); *see also Schaffer*, 120 F. Supp. 3d at 1045. Count VIII should be dismissed.

## VII.    The Court Should Dismiss Plaintiffs' FDUTPA Claim (Count V).

Plaintiffs' Opposition, like their Complaint, fails to identify a deceptive or unfair trade practice performed by Armanino or Prager Metis, instead focusing on aspects of FTX's business that were allegedly improper. *See* Opp. at 31. Plaintiffs assert they pled a FDUTPA claim because Armanino and Prager Metis "did nothing to stop FTX from touting [its] audit status" and "the market" relied on the statements about auditors' nonpublic reports (regardless of whether any member of the public ever actually saw the auditors' nonpublic reports). Instead of citing any legal authority to support their novel theory that FDUTPA renders auditors responsible for the public's reaction to public statements by officers of their audit clients, Plaintiffs point to *State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291 (S.D. Fla. 2018), where an insurer sued medical providers and a billing company for conducting a fraudulent scheme to provide inflated invoices for covered claims. Not only did defendants in *State Farm* actively participate in the scheme and directly deceive plaintiff, plaintiff undisputedly read the suspect invoices at issue—unlike Plaintiffs, who admit they "did not read" the audit reports. Opp. at 31.

Further, Florida law prohibits Plaintiffs from shoehorning securities claims into a FDUTPA cause of action. Plaintiffs' references to *Hodges* and *Skypoint* (Opp. at 31) fail to rebut the many valid authorities which hold that "FDUTPA does not apply to securities claims." *Rogers v. Nacchio*, 2006 WL 7997562, at *14–15 (S.D. Fla. June 6, 2006), *aff'd*, 241 F. App'x 602 (11th Cir. 2007) (collecting cases). And in any event, Plaintiffs fail to adequately allege a violation of

the securities laws. *See* Mot. at 27–28. Thus, even under their novel theory, Plaintiffs fail to establish a predicate for FDUTPA liability.

**VIII.   The Court Should Dismiss the California Unfair Competition Law Claim (Count VI) and Aiding and Abetting Violations of UCL Claim (Count XVI).**

    **A.   The Court Should Dismiss the UCL Claims Because Plaintiffs Are Not Entitled to Equitable Relief.**

Plaintiffs' request for equitable relief fails because Plaintiffs do not allege that they lack an adequate remedy at law. *See* Mot. at 31. Plaintiffs try to paint their pleading deficiencies as seeking alternative relief, but their argument is undermined by their own authority. Opp. at 35. *Compare Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129 (N.D. Cal. 2023) (permitting UCL equitable claim as alternative relief *where plaintiff explicitly pled inadequate remedy at law*), *with Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) (dismissing UCL equitable claim as alternative relief because *plaintiff failed to allege inadequate remedy at law*). Plaintiffs try to distinguish *Sonner* based on differences in procedural posture, Opp. at 33, but *Sagastume* rejected that exact argument in dismissing the UCL equitable claim. 2020 WL 8175597, at *7 n.2. Plaintiffs' failure to allege an inadequate legal remedy bars equitable relief under the UCL, warranting dismissal of Count VI.

    **B.   Plaintiffs Have Not Plausibly Alleged Any Unlawful, Unfair, or Fraudulent Act by Armanino or Prager Metis.**

***Failure to Plead Unlawful Conduct Under the UCL.*** Plaintiffs do not allege that Armanino or Prager Metis engaged in unlawful conduct. Plaintiffs try to predicate their unlawful-conduct claim on Armanino's and Prager Metis's alleged negligence and purported violations of professional standards. Compl. ¶ 395; Opp. at 33–34. The negligence cases Plaintiffs cite in their Opposition are inapplicable because each found that defendants owed plaintiffs a duty,[10] which Plaintiffs have failed to allege here. *See* Section II.B *supra*; *Barajas v. Blue Diamond Growers Inc.*, 2023 WL 2333548, at *22 (E.D. Cal. Mar. 2, 2023) ("if a plaintiff fails to state a claim under a 'borrowed' law, it cannot support the UCL claim."). Plaintiffs cannot remedy their inability to plead claims for professional negligence and negligent misrepresentation using a UCL claim founded on the same failed theories.

---

[10] *See Hensley-Maclean v. Safeway, Inc.*, 2014 WL 1364906 at *4 (N.D. Cal. Apr. 7, 2014); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1199 (E.D. Cal. 2010); *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 970–71 (E.D. Cal. 2018).

***Failure to Plead Unfair Conduct Under the UCL.*** Plaintiffs agree that there are three tests to establish a claim for unfair conduct under the UCL. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020); Opp. at 23. Plaintiffs nonetheless fail to explain how their Complaint satisfies any of the three tests, instead stating in a conclusory manner that it "allege[s] many grounds for their unfairness claim." Opp. at 23. In so doing, Plaintiffs fail to rebut the Motion's argument that Plaintiffs cannot plead Armanino's or Prager Metis's conduct was "substantially injurious" because they never saw or read the non-public audit reports. *See* Mot. at 32.

***Failure to Plead Fraudulent Conduct Under the UCL.*** Plaintiffs fail to identify a single, specific misrepresentation made by Armanino or Prager Metis. This alone is fatal to their UCL fraudulent conduct theory. As discussed in Section II.A, *supra*, Armanino's tweets and Prager Metis's single website post contained no statements of fact, references to the audits, or misrepresentations of any sort. Plaintiffs' assertion that "merely representing and certifying that FTX was audited in accordance with applicable statutes" could constitute a fraud upon the public constitutes an unsupported legal conclusion that is (a) irrelevant (Plaintiffs never allege that Armanino or Prager Metis made any such public representation), and (b) contrary to law. *Cf. Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (dismissing UCL fraudulent-prong claim where plaintiff only alleged "a legal conclusion" that filing a false tax form constitutes a fraudulent practice).

## C.    Plaintiffs Fail to Allege Actual Reliance Under the UCL.

The California Supreme Court "consistently require[s] allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014). Plaintiffs perfunctorily claim they pled reliance under the UCL. Opp. at 24. But, as detailed in Section II.A, this argument is foreclosed by the fact that Plaintiffs never allege that they or "the market" saw Armanino's or Prager Metis's non-public audit reports.

## D.    Plaintiffs Fail to Allege Aiding and Abetting Liability Under the UCL.

Plaintiffs' Complaint fails to allege any factual support for their conclusory allegation that Armanino and Prager Metis knew of any underlying UCL violation and provided substantial assistance in the violation. Mot. at 48. Rather than meaningfully dispute this, Plaintiffs rest on their conclusory allegation that Armanino and Prager Metis "knew that their clean Audit Reports concerning the financial statements of FTX Trading and FTX US, their failure to refute public

statements made by FTX and/or SBF concerning FTX's financial statements and audits thereon and other statements concerning FTX or SBF alleged herein, were deceitful and fraudulent when made," Opp. at 25 (citing Complaint ¶ 481), as well as two distinguishable cases involving allegations of much greater entanglement with the wrongdoer. *See In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020) (defendant bank knew of banking activity that was inconsistent with the fraudster's stated business model, knew that the fraudster was using investors' funds for personal expenses, and knew that fraudster was paying himself large dividends despite no significant source of revenue); *Tan v. Quick Box, LLC*, 2021 WL 1293862, at *12 (S.D. Cal. Apr. 7, 2021) (defendant managed the violating company's returns, handled customer complaints, and processed refunds for the violator's products, all of which gave the defendant knowledge that the violator was overcharging for products). Plaintiffs have failed to allege the degree of factual support that underlaid the *Woodbridge* and *Tan* decisions. Plaintiffs allege only conclusory recitations of the common-law requirements of knowledge and substantial assistance. *See* Compl. ¶ 481. Because this is insufficient even under Rule 8 pleading standards, Plaintiffs' Count XVI for aiding and abetting violations of the UCL must be dismissed.

## IX.    Non-Florida Plaintiffs Do Not Have Standing to Bring Florida Statutory Claims (Counts II–V); Non-California Plaintiffs Do Not Have Standing to Bring California Claims Against Prager Metis (Counts VI–VIII and XVI).

As explained in Armanino and Prager Metis' Motion, any Plaintiff who was not impacted by the alleged behavior *in* Florida or California does not have standing to sue under those states' statutes. Mot. at 34. Plaintiffs' response, which focuses on the locations where *Defendants* operated, misses the mark. *See* Opp. at 25–27. None of the cases Plaintiffs cites holds that out-of-state plaintiffs have standing to bring suit under a state-specific statute. Nor does the Complaint contain allegations that Armanino or Prager Metis committed wrongful actions within Florida or California. Plaintiffs' cited case, *Eli Lilly & Co. v. Tyco Integrated Sec., LLC.*, 2015 WL 11251732, at *4–5 (S.D. Fla. Feb. 10, 2015), does not support their far-reaching assertion that any tweet or website post is sufficient to confer standing on plaintiffs of all 50 states. *Eli Lilly* involved a FDUTPA lawsuit against a Florida-based security company for overstating the quality of its services and inadvertently enabling a burglary at a warehouse in Connecticut. None of the unique jurisdictional facts of *Eli Lilly* are present here: Armanino and Prager Metis are not based in Florida and their public statements about FTX were not directed at—or even seen by—Plaintiffs. It cannot,

therefore, be plausibly inferred that the auditors' statements "actually occurred in or . . . flowed from business practices occurring within the state of Florida." *Id.* at *5.

**X.      The Court Should Dismiss the Professional Negligence Claim (Count IX).**

Plaintiffs argue that Armanino and Prager Metis are liable to Plaintiffs for professional negligence because it was "reasonably foreseeable" that customers would rely on their statements, and Armanino and Prager Metis "intended [the customers'] reliance." Opp. at 20. But Plaintiffs mischaracterize the holding in *Bily*, and they misapply *First Fla. Bank*, 558 So. 2d 9 (Fla. 1990). First, the *Bily* court expanded liability to foreseeable third parties for negligent misrepresentation, *not* professional negligence. *Bily*, 834 P.2d at 767–68. Under California law, "an auditor's liability for general negligence in the conduct of an audit of its client financial statements is confined to the client." *Id.* at 767. Second, although the holding of *First Fla. Bank* is not limited to negligent misrepresentation, under Florida law, liability for professional negligence is limited to noncontractual parties whom the auditor (i) "intends to supply the information or knows the recipient intends to supply it" and (ii) intends to influence or knows that the recipient intends to influence. 558 So. 2d at 12. Here, Plaintiffs fail to plead that Armanino or Prager Metis intended their audit reports to reach and influence FTX US and FTX Trading customers, respectively, or that either firm was aware that the FTX entities had that intention. Indeed, Plaintiffs make no showing that any Plaintiff saw, let alone acted in reliance upon, the audit reports.

**XI.     The Court Should Dismiss the Common Law Fraud and Misrepresentation Claims (Counts X–XIII).**

Plaintiffs' claims for fraudulent concealment, negligent misrepresentation, intentional misrepresentation, and fraud fail because Plaintiffs fail to (i) plead that Armanino or Prager Metis had a duty to Plaintiffs, *see* Section II.B; (ii) identify any false statement or misrepresentation by either Armanino or Prager Metis, *see* Section V.C; (iii) identify any statement whatsoever from either Armanino or Prager Metis that Plaintiffs actually saw or relied on, *see* Section II.A; or (iv) show that Armanino or Prager Metis knew—or should have known—of any representation's falsity, *see* Section II.C.

Plaintiffs do not identify a single case where a court held that independent auditors of the financial statements of a privately held company could be liable for defrauding that company's customers based on (a) non-public auditors' reports that customers never saw or read, or (b) company management's public references to having audited financial statements. Instead, they offer three securities fraud cases brought by investors who *actually saw and reviewed* the publicly

-17-

distributed audit reports prior to investing. Opp. at 32–34. Unlike here, the plaintiffs in those cases also alleged specific false and misleading statements as well as facts indicating defendant auditors actually knew of the falsity. *See In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1344, 1326 (S.D. Fla. 1999) (audit client's employees tipped the auditor off about inaccuracies within the financial statements, auditor disavowed its audit opinion after issuance and admitted wrongdoing); *Jacobs v. Coopers & Lybrand, L.L.P.*, 1999 WL 101772 (S.D.N.Y. Mar. 1, 1999) (auditor relied on an unverified fax to support its confirmation of accounts receivable and later withdrew its audit opinion); *Bruhl v. PricewaterhouseCoopers Int'l, Ltd.*, 2006 WL 8431886, at *6 (S.D. Fla. Apr. 3, 2006) (the "*Bruhl* Auditor Decision") (plaintiff alleged "specific trades that were manipulated and specific statements that were false"). Further, the courts in both *Sunbeam* and *Jacobs* found that the auditor defendants' long-term auditing relationships with the clients at issue also supported the fraud claims. *Sunbeam*, 89 F. Supp. 2d at 1346; *Jacobs*, 1999 WL 101772, at *15. Here, Plaintiffs' allegations of fraud and misrepresentation are illogical, vague and imprecise, falling far short of those asserted by the plaintiffs in *Sunbeam*, *Jacobs*, and *Bruhl* Auditor Decision.

Plaintiffs also offer no authority suggesting that they can plead knowledge based on the Ray report, which was compiled by forensic investigators well *after* Armanino and Prager Metis issued their audit reports and *after* the discovery of fraud by FTX Insiders and months after the auditors completed their work. To the contrary, courts reject such efforts to plead "fraud by hindsight." *Holmes*, 166 F. Supp. 2d at 1379–80 ("Plaintiff's red flags consist primarily of rehashes of the GAAP violations" and failed to show "actual awareness of accounting fraud.").

Further, neither Armanino nor Prager Metis had long relationships with FTX US or FTX Trading, respectively. Although Plaintiffs contend these short histories somehow evidence Armanino's and Prager Metis's culpability, they offer no support for this conclusion. Opp. at 14. In short, Plaintiffs rely on "conclusory, fact-deficient allegation[s] that as the issuing company's auditor[s] with access to the company's books," Armanino and Prager Metis "knew or should have known" of the underlying fraud at FTX. *Cf. Sunbeam*, 89 F. Supp. 2d at 1346. Such allegations are insufficient to plead Plaintiffs' fraud claims, which should be dismissed with prejudice. *Id.*

## XII.   The Court Should Dismiss the Aiding and Abetting Fraud Claim (Count XV).

Plaintiffs' claim for aiding and abetting fraud fails because they have not adequately pled that (i) Armanino and Prager Metis gave substantial assistance or encouragement to the perpetrator of the fraud; (ii) Armanino and Prager Metis knew that fraud was being or would be committed;

or (iii) Armanino and Prager Metis's conduct was a substantial factor in causing Plaintiffs' harm. Here, Plaintiffs fail to plead with particularity that Armanino or Prager Metis knew about the underlying fraud, that the FTX entities distributed the audit reports outside of the organization, or that Armanino or Prager Metis were aware that the FTX entities had any such distribution plans. Instead, Plaintiffs allege only that the "Auditor Defendants knew *or recklessly disregarded* that the representations by FTX and the FTX Insider Defendants . . . were deceitful and fraudulent when made." Compl. ¶ 475 (emphasis added). This is insufficient to show *actual* knowledge and is fatal to Plaintiffs' claim. *See McFall v. Stacy & Witbeck, Inc.*, 2016 WL 6248882, at *5 (N.D. Cal. Oct. 26, 2016) ("[W]hile ordinary business transactions can satisfy the substantial assistance element of an aiding and abetting claim, this is true only where the defendant actually knew those transactions were assisting the fiduciary in committing [fraud]. . . . [K]nowledge is the crucial element.") (cleaned up). As explained in Section II.A *supra*, Plaintiffs' reliance on *Kirschner* is unavailing because, unlike here, the auditor in *Kirschner* admitted wrongdoing and was *assumed* by the special master to know about the underlying fraud. 2012 WL 13060078, at *9 n.13.

Plaintiffs therefore fail to allege that Armanino or Prager Metis actually knew of or substantially assisted the underlying fraud. And by failing to allege that they ever saw Armanino's or Prager Metis's non-public audit reports or public statements, Plaintiffs cannot show that Armanino's or Prager Metis's conduct was a substantial factor in causing their harm. *See* Section II.D, *supra*. This deficiency offers the Court yet another basis to dismiss Count XV with prejudice.

## XIII.   The Court Should Dismiss the Aiding and Abetting Fiduciary Duty and Conversion Claims (Counts XVII and XVIII).

As Armanino and Prager Metis outlined in their Motion, Plaintiffs failed to state a claim for either aiding and abetting breach of fiduciary duty (Count XVII) or aiding and abetting conversion (Count XVIII) because they did not plead Armanino and Prager Metis's actual knowledge of the FTX Insiders' purported wrongdoing or establish that FTX Insiders owed them a fiduciary duty. *See* Mot. at 37–39. Rather than engaging with these arguments, Plaintiffs simply assert that these counts are subject to the Rule 8 pleading standard—without explaining how their pleadings actually *meet* the Rule 8 standard or addressing Count XVII's failure to satisfy Rule 9(b). *See* Opp. at 38; *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374137, at *14 (C.D. Cal. Feb. 20, 2003). Plaintiffs do not explain how FTX or its Insiders owed a fiduciary duty to the Plaintiffs. Nor do they rebut the user agreements incorporated into their Complaint or the relevant caselaw, which establish that no such duty existed. By failing to plead necessary elements and

declining to rebut Armanino and Prager Metis's arguments altogether, Plaintiffs have failed to state a claim for aiding and abetting either breach of fiduciary duty or conversion.

## XIV. The Court Should Dismiss the Declaratory Judgment Claims (Counts XIX and XX) and Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs are not entitled to declaratory and injunctive relief because they fail to allege a threat of *future* injury by Armanino or Prager Metis. *See* Mot. at 40. Because they cannot argue otherwise, Plaintiffs cite four inapposite cases that touch on various unrelated aspects of declaratory and injunctive caselaw. *See* Opp. at 38.[11] By failing to rebut Armanino and Prager Metis's substantive arguments or identify any caselaw which supports their novel theory of liability, Plaintiffs concede the invalidity of their requests for declaratory and injunctive relief.

## XV. Plaintiffs Should Not Be Given Leave to Amend Their Complaint.

Plaintiffs' lackadaisical request for leave to amend should be denied. *See* Opp. at 38 n.40. "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). Indeed, courts in this District reject requests for leave presented in this manner. *See, e.g.*, *Lu Silverio v. Just Brands, LLC*, 2023 WL 6389529, at *10 (S.D. Fla. Oct. 2, 2023) (dismissing a complaint with prejudice where plaintiff "request[ed] leave to amend as an afterthought, in a footnote at the end of her response in opposition"). Plaintiffs' throwaway request offers no inkling as to why justice would require affording them leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Plaintiffs have therefore "failed to follow the well-trodden procedural path toward amendment," and their request to amend should be denied. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016).

## CONCLUSION

For the reasons stated in their Motion and above, Armanino and Prager Metis respectfully request that the Court dismiss the Complaint against Armanino and Prager Metis with prejudice.

---

[11] *LeFebvre v. Syngenta Biotechnology, Inc.*, 2008 WL 5245056, at *4 (N.D. Cal. Dec. 15, 2008) (regarding non-compete clauses, "a new employer is entitled to pursue a declaratory judgment action against a former employer"); *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (discussing availability of "public injunctive relief" during motion to compel arbitration); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1292–93 (M.D. Fla. 2009) (plaintiff alleged sufficient amount in controversy to establish federal court jurisdiction and advance declaratory judgment claim); *James D. Hinson Elec. Contracting Co. v. Bellsouth Telecomm., Inc.*, 2008 WL 360803, at *4 (M.D. Fla. Feb. 8, 2008) (plaintiff can seek declaratory/injunctive relief when complaint concerns defendant's *ongoing* and *future* conduct).

Dated: December 6, 2023

By:

*/s/ Ian M. Ross*
Ian M. Ross
Florida Bar No. 091214
Email: iross@sidley.com
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Suite 900
Miami, FL 33131
Tel.: (305) 391-5100
Fax: (305) 391-5101


Bruce R. Braun
Email: bbraun@sidley.com
Joanna R. Travalini
Email: jtravalini@sidley.com
Tommy Hoyt
Email: thoyt@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel.: (312) 853-7050
Fax: (312) 853-7036

*Attorneys for Defendant Prager Metis CPAs, LLC*

Respectfully submitted,

*/s/ Samuel A. Danon*
Samuel A. Danon
Florida Bar No. 892671
Email: sdanon@HuntonAK.com
Tom K. Schulte
Florida Bar No. 1025692
Email: tschulte@HuntonAK.com
Hunton Andrews Kurth LLP
333 S.E. 2nd Avenue, Suite 2400
Miami, FL 33131
Tel.: (305) 810-2500

Matthew P. Bosher
Email: mbosher@HuntonAK.com
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 955-1500

Thomas R. Waskom
Email: twaskom@HuntonAK.com
Michael J. Bisceglia
Email: mbisceglia@HuntonAK.com
Elizabeth K. Brightwell
Email: ebrightwell@HuntonAK.com
Hunton Andrews Kurth LLP
951 E. Byrd Street
Richmond, VA 23219
Tel: (804) 788-8200

*Attorneys for Defendant Armanino LLP*