# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse
Litigation**

_____

THIS DOCUMENT RELATES TO:

The Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC*,
No. 1:23-cv-20700 (S.D. Fla.)

*O'Keefe v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-23065 (S.D. Fla.)

*Chernyavsky v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-22960 (S.D. Fla.)

*Cabo v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-23212 (S.D. Fla.)

_____/

### THE MULTINATIONAL VC DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE [CORRECTED] ADMINISTRATIVE CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.     THE COMPLAINT FAILS TO MEET BASIC PLEADING REQUIREMENTS. ............. 2

     A.     Plaintiffs' Claims Are Implausible. ........................................................................ 2

     B.     The Complaint Is a Shotgun Pleading. .................................................................. 2

     C.     Plaintiffs Do Not Allege Fraud with Particularity Under Rule 9(b). ......................... 3

II.     PLAINTIFFS' UNREGISTERED SECURITIES CLAIMS (COUNTS 1 AND 3)
SHOULD BE DISMISSED. ............................................................................................. 4

     A.     Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 1
and 3). .................................................................................................................. 4

     B.     Plaintiffs Do Not Plead That the Multinational VCs Were Directors, Officers,
Agents, or Partners of FTX (Count 1). ................................................................. 7

     C.     Plaintiffs Plead Neither Negligence nor Intent to Defraud (Counts 1 and 3). .......... 8

     D.     Plaintiffs Fail to Plead Their Unregistered Broker-Dealer Claim (Count 3). ........... 9

III.     PLAINTIFFS' SECURITIES FRAUD CLAIMS (COUNTS 2, 4, 5, AND 6) SHOULD
BE DISMISSED. ............................................................................................................ 9

     A.     Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 2, 4,
and 5). .................................................................................................................. 9

     B.     Plaintiffs Again Fail to Plead Scienter (Counts 2, 4, 5, and 6). ............................. 10

     C.     Plaintiffs Do Not Allege That the Multinational VCs Were Control Persons of
FTX (Counts 2 and 6). ........................................................................................ 11

     D.     Plaintiffs Do Not Allege Market Manipulation (Count 5). .................................... 11

IV.     THE COMPLAINT DOES NOT STATE A CLAIM FOR CONSPIRACY
(COUNT 7). ................................................................................................................. 11

V.     THE COMPLAINT DOES NOT STATE ANY AIDING AND ABETTING CLAIM
(COUNTS 8–10). ......................................................................................................... 12

VI.     PLAINTIFFS' UCL CLAIM (COUNT 11) SHOULD BE DISMISSED. ........................ 14

     A.     Plaintiffs' UCL Claim Relates to "Securities Transactions." ................................. 14

     B.     Plaintiffs Lack Standing to Bring a UCL Claim. ................................................... 14

     C.     Plaintiffs Do Not Plead Fraud, Unfairness, or Unlawfulness. ............................... 15

     D.     Plaintiffs' UCL Claim Fails Because They Seek an Inappropriate Remedy. ........... 15

     E.     Plaintiffs' UCL Claim Is Not Sufficiently Connected to California. ....................... 16

# TABLE OF CONTENTS

(continued)

**Page**

VII.    PLAINTIFFS' FAL CLAIM (COUNT 12) SHOULD BE DISMISSED.......................... 16

VIII.   PLAINTIFFS' FDUTPA CLAIM (COUNT 13) SHOULD BE DISMISSED.................. 16

IX.     PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM (COUNT 14) SHOULD BE DISMISSED. .................................................................................................. 18

X.      PLAINTIFFS' INTENTIONAL MISREPRESENTATION AND FRAUDULENT INDUCEMENT CLAIMS (COUNTS 15 AND 16) SHOULD BE DISMISSED. ........... 18

XI.     PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS (COUNTS 17 AND 18) SHOULD BE DISMISSED. ....................................................................................... 19

XII.    PLAINTIFFS' PUNITIVE DAMAGES CLAIM (COUNT 19) SHOULD BE DISMISSED. ............................................................................................................. 20

XIII.   LEAVE TO AMEND SHOULD BE DENIED. ...................................................... 20

CONCLUSION....................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Angell v. Allergan Sales, LLC,*
    2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ........................................................................12

*AREI II Cases,*
    216 Cal. App. 4th 1004 (2013) ..............................................................................................5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................................4

*Betz v. Trainer Wortham & Co.,*
    829 F. Supp. 2d 860 (N.D. Cal. 2011) ..................................................................................14

*Blair v. Wachovia Mortg. Corp.,*
    2012 WL 868878 (M.D. Fla. Mar. 14, 2012) .......................................................................17

*Block v. eBay, Inc.,*
    747 F.3d 1135 (9th Cir. 2014) ............................................................................................14

*Blow v. Carnival Corp.,*
    2023 WL 3686840 (S.D. Fla. May 26, 2023) ......................................................................20

*Carran v. Morgan,*
    2007 WL 3520480 (S.D. Fla. Nov. 14, 2007) ......................................................................10

*Corsello v. Lincare, Inc.,*
    428 F.3d 1008 (11th Cir. 2005) ............................................................................................4

*Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.,*
    2011 WL 1233106 (S.D. Fla. Mar. 30, 2011) .......................................................................9

*Dolphin LLC v. WCI Cmties., Inc.,*
    715 F.3d 1243 (11th Cir. 2013) ..........................................................................................17

*Drewes v. Cetera Fin. Grp., Inc.,*
    2020 WL 13566405 (S.D. Fla. July 9, 2020) ........................................................................8

*Freeman v. Sharpe Resources Corp.,*
    2013 WL 2151723 (M.D. Fla. May 16, 2013) .......................................................................4

*Honig v. Kornfeld,*
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) ...............................................................................12

*Livingston v. H.I. Family Suites, Inc.,*
    2005 WL 2077315 (M.D. Fla. Aug. 29, 2005) ......................................................................4

*Maison v. Ford Motor Co.*,
  2005 WL 1684159 (N.D. Fla. July 7, 2005) ........................................................................4

*Meridian Tr. Co. v. Batista*,
  2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ...................................................................12

*Molina v. Aurora Loan Servs., LLC*,
  635 F. App'x 618 (11th Cir. 2015) ...................................................................................17

*Montalbano v. Ariad Pharms., Inc.*,
  2015 WL 11198245 (S.D. Fla. Aug. 4, 2015).....................................................................20

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................................13

*Nuwave, Ltd. v. Argyle Equities, LLC*,
  2007 WL 3130443 (M.D. Fla. Oct. 24, 2007) ...................................................................11

*In re Nvidia Corp. Sec. Litig.*,
  2010 WL 4117561 (N.D. Cal. Oct. 19, 2010).....................................................................13

*Otto Candies, LLC v. Citigroup, Inc.*,
  2023 WL 6418135 (S.D. Fla. Aug. 25, 2023).....................................................................13

*Papadopoulos v. Sidi*,
  2007 WL 9700707 (S.D. Fla. Jan. 8, 2007) .........................................................................7

*Richter v. Wells Fargo Bank NA*,
  2015 WL 163086 (M.D. Fla. Jan. 13, 2015).......................................................................13

*Robbins v. Robertson*,
  782 F. App'x 794 (11th Cir. 2019) ...................................................................................20

*Rothman v. Equinox Holdings, Inc.*,
  2021 WL 124682 (C.D. Cal. Jan. 13, 2021) .......................................................................16

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
  2012 WL 1015806 (N.D. Ill. Mar. 22, 2012).....................................................................17

*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir. 2003) ............................................................................................4

*Witt v. Stryker Corp. of Mich.*,
  648 F. App'x 867 (11th Cir. 2016) ...................................................................................20

*Woods v. Barnett Bank of Ft. Lauderdale*,
  765 F.2d 1004 (11th Cir. 1985) ........................................................................................13

iv

**Other Authorities**

Fed. R. Civ. P. 9 ..................................................................................................................4

Fla. Stat. § 620.8101(7) .....................................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs' Opposition **completely ignores** that the government investigated FTX's collapse and concluded that investors like the Multinational VCs "were victims of [SBF's] fraudulent scheme rather than being liable for it." (ECF No. 247 at 3, 14.)[1]  Plaintiffs also fail to mention that a jury recently confirmed those findings and convicted SBF of conspiracy to defraud investors "by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda." *See United States v. Bankman-Fried*, No. 1:22-cr-00673-LAK (S.D.N.Y.), ECF No. 202 ¶ 28 & Jury Verdict.  Plaintiffs' own allegations include admissions from FTX insiders that they defrauded investors, which the Multinational VCs highlighted in their Motion.  (Mot. at 6, 12.)  Plaintiffs have **no response** in their Opposition.

Rather than address that fatal flaw in their theory, Plaintiffs repeat a handful of irrelevant, unsupported, and implausible allegations.  Plaintiffs imagine that the Multinational VCs made "exorbitant amounts of money" from their FTX investments, even though they also allege that the Multinational VCs lost hundreds of millions of dollars.  Plaintiffs accuse the Multinational VCs of misleadingly "touting" their due diligence on FTX, but Temasek's alleged statements were made **after** FTX collapsed and the statements by SG Capital Limited and SoftBank **had nothing to do with FTX at all**.  Plaintiffs invent roles for Temasek and SoftBank as "*de facto*" members of FTX's board of directors, without any support from the 195-page Complaint, solely because certain representatives were on an advisory board.  And Plaintiffs claim that SoftBank "lobbied" for

---

[1] Capitalized terms used but not otherwise defined have the meaning in the Multinational VCs' Motion to Dismiss (ECF No. 303) (the "Motion" or "Mot.").  "Opposition" or "Opp." refers to Plaintiffs' Opposition to the Motion (ECF No. 362).  Certain of the Multinational VCs also filed motions to dismiss for lack of personal jurisdiction and for insufficient service of process.  (ECF Nos. 296, 298, 299, 300.)  The defendants who joined the Motion and join this brief do so without prejudice to their positions taken in those motions.  Defendant Sino Global Capital Limited ("SG Capital Limited") has not been served yet and is not included in the Motion or this reply brief.

"FTX" based on a single letter discussing LedgerX, LLC, which Plaintiffs' own allegations show was uninvolved in any of FTX's misconduct.  The Multinational VCs pointed out these (and many other) flaws in the Motion.  Plaintiffs just ignore them and seek to implicate alleged foreign investors in a conspiracy that they were victims of, based on shotgun pleadings alleging only that the investors did (or must have done) due diligence on FTX; invested in FTX; and lost those investments when FTX collapsed.  Plaintiffs' baseless claims should be dismissed with prejudice.

## ARGUMENT

### I.      The Complaint Fails to Meet Basic Pleading Requirements.

#### A.      Plaintiffs' Claims Are Implausible.

The Motion showed that Plaintiffs' claims make no sense and are contradicted by their own allegations.  (Mot. at 11–13.)  Specifically, it is implausible that the Multinational VCs could have aided and abetted a massive fraud when Plaintiffs also allege that the Multinational VCs were victims of that very fraud.  SBF's recent conviction for defrauding FTX's equity investors further underscores the absurdity of Plaintiffs' claims.  Other than the general unsupported assertion that the Multinational VCs "are wrong on both the facts and the law" (Opp. at 10), Plaintiffs offer no response.[2]  As a result, the Complaint should be dismissed under *Iqbal/Twombly*.  (Mot. at 11–13.)

#### B.      The Complaint Is a Shotgun Pleading.

The Multinational VCs have demonstrated that Plaintiffs' Complaint commits three "sins" of shotgun pleading.  (*Id.* at 13–14.)  Plaintiffs largely ignore that showing.

*First*, Plaintiffs' Complaint relies on impermissible group pleading, conflating eight legally distinct corporate entities in each of their nineteen causes of action.  (*Id.*)  Plaintiffs respond that

---

[2] Plaintiffs argue that they are not required to allege their claims with "[a]bsolute particularity" and that lack of detail is "no ground for dismissal."  (Opp. at 10–11.)  As discussed in the Motion and below, however, lack of specificity is a separate ground for dismissal.

the Complaint includes "a litany of facts **specific to each Defendant**" (Opp. at 11), but they cite nothing to support that claim—nor could they.

**Second**, in response to the Multinational VCs' showing that the Complaint is "replete with conclusory, vague, and immaterial" allegations (Mot. at 14), Plaintiffs argue that they included allegations regarding the Multinational VCs' due diligence on FTX, the amounts and timing of their investments, their "lobbying efforts," "advisory board" membership, and "omissions of material fact when promoting FTX" (Opp. at 11–12).  Plaintiffs cite nothing for these vague assertions, which mischaracterize the allegations in the Complaint.  Nor do Plaintiffs explain why they needed 554 numbered paragraphs, the vast majority of which have nothing to do with the Multinational VCs, to make that handful of allegations.

**Third**, Plaintiffs have no response to the Multinational VCs' point that each cause of action improperly incorporates by reference everything that came before it.  (*See* Mot. at 14.)  Nor could they.  Plaintiffs assert **all nineteen** counts against **all eight** Multinational VCs and incorporate all "preceding paragraphs" in the **554-paragraph Complaint** by reference in **each count**.  (*See id.*)

### C.     Plaintiffs Do Not Allege Fraud with Particularity Under Rule 9(b).

Plaintiffs concede that Rule 9(b) applies to Counts 2 and 4–16.  (*Id.* at 14–15; Opp. at 10.) But they do not address the Multinational VCs' case law or even meaningfully engage with the Multinational VCs' argument that the Complaint fails Rule 9(b)'s particularity requirements. Instead, Plaintiffs argue that the Complaint's lack of specificity "is no ground for dismissal under Rule 12(b)(6)" and that "some matters are beyond [their] knowledge."[3]  (Opp. at 10–11.)

---

[3] Plaintiffs' problem is not a lack of information.  (*See* Opp. at 11.)  FTX has been publicly unraveling for a year, and a wealth of information about FTX's fraud is already available. Plaintiffs are also actively coordinating with the former General Counsel to FTX and Alameda. (*See* Compl. Ex. A.)  Rather, Plaintiffs' problem is that the mountain of available information undercuts their claims.

Plaintiffs are incorrect.  Where, as here, Rule 9(b) applies, plaintiffs must plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).  And even under Rule 8, the Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

Plaintiffs' authorities are not contrary.  For example, in *Maison v. Ford Motor Co.*, 2005 WL 1684159, at *2 (N.D. Fla. July 7, 2005), the court dismissed fraud claims under Rule 9(b), finding that they did not specify what false statements defendants made to the public, how "concerted advertising campaigns" were distributed, when or how long those ads ran, and which ads plaintiffs allegedly viewed that induced them to purchase defendant's product.  The Court explained that, "[a]lthough Plaintiffs cannot be expected to have knowledge of details of corporate internal affairs in a corporate fraud case, more detail must be provided for purposes of Rule 9(b) to enable [defendant] to reply intelligently to the issues raised." *Id.*  So too here.[4]

## II.    Plaintiffs' Unregistered Securities Claims (Counts 1 and 3) Should Be Dismissed.

The Multinational VCs' Motion showed that Plaintiffs' unregistered securities claims should be dismissed for multiple independent reasons.  Plaintiffs provide no meaningful response.

### A.    Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 1 and 3).

Plaintiffs concede that "material assistance" and "personal participation" require a direct

---

[4] Plaintiffs' remaining cases are readily distinguishable.  In *Freeman v. Sharpe Resources Corp.*, 2013 WL 2151723, at *9–10 (M.D. Fla. May 16, 2013), and *Livingston v. H.I. Family Suites, Inc.*, 2005 WL 2077315, at *4 (M.D. Fla. Aug. 29, 2005), the plaintiffs provided specifics about the who, what, when, where, and how of the alleged fraud, which Plaintiffs here have not done.  And *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881–82 (11th Cir. 2003), evaluated claims only under the pre-*Iqbal/Twombly* notice pleading standard, not the modern plausibility approach to Rule 8, much less the exacting requirements of Rule 9(b) applicable here.

connection to the sale of unregistered securities to an investor.  (Mot. at 16; Opp. at 14–15.)
Plaintiffs also do not dispute that the Complaint fails to (i) identify any statement by any
Multinational VC encouraging anyone to purchase anything; (ii) allege that the Multinational VCs
helped prepare any offering documents; (iii) allege that any Multinational VC mentioned YBAs
or FTT in any public statement; (iv) allege that any Multinational VC had direct contact with any
Plaintiff or class member; or (v) identify when any Plaintiff allegedly opened a YBA or bought
FTT.  (*See* Mot. at 16–17.)  Those concessions are dispositive.

Plaintiffs devote pages of their Opposition to arguing that they need not show that any
Multinational VC made public statements mentioning YBAs or FTT (Opp. at 16) or allege privity
with any Multinational VC (*id.* at 17).  But the Multinational VCs never argued that privity or a
public statement is strictly required; rather, they explained that a defendant must have had direct
involvement in the sale of unregistered securities.  (Mot. at 16.)  Plaintiffs make no such allegation.

Undeterred, Plaintiffs recite a handful of vague and conclusory allegations, none of which
constitute material assistance or personal participation.  ***First***, Plaintiffs claim that "[t]he funding
from each of [the Multinational VCs was] necessary to bring FTX to market."  (Opp. at 12, 14.)
But Plaintiffs ignore the case law holding that it is "not enough that a person provided material
assistance in a larger scheme to defraud" (which Plaintiffs also fail to allege) and that a "complaint
must [instead] include allegations demonstrating how the defendant assisted in the ***act of selling
or offering to sell securities***."  *AREI II Cases*, 216 Cal. App. 4th 1004, 1014–15 (2013) (emphasis
added); (Mot. at 16).  Plaintiffs cite nothing showing that "funding" FTX meets that standard.

***Second***, Plaintiffs state that "SoftBank lobbied and made statements to the United States
government to help establish FTX as a supposedly safe and trustworthy place to buy and keep
crypto."  (Opp. at 12, 14.)  That assertion is irrelevant, because those efforts did not involve the

offer or sale of any security.  (*See* Mot. at 16.)  It is also deeply misleading.  Plaintiffs' allegation relies on a single letter that SoftBank Group Corp.[5] submitted to the CFTC in support of ***LedgerX, LLC's*** application for a derivatives clearinghouse license.  (Compl. ¶ 367; Opp. at 5, 12.)  But Plaintiffs do not dispute that their allegations show that LedgerX, LLC (1) is a regulated entity and is still solvent, (2) was an "exception" to SBF's and Gary Wang's control of FTX's digital assets, and (3) was not involved in any of FTX's misconduct.  (Mot. at 9–10, 28.)

*Third*, Plaintiffs claim that "Temasek and Softbank both advised and controlled FTX by serving on its 'Advisory Board,' and acted as FTX's agents to overcome legal and regulatory hurdles to bring FTX's platform and unregistered securities to market."  (Opp. at 12.)  But Plaintiffs never allege that the "advisory board" (made up of dozens of people from FTX's equity investors) had any decision-making authority at FTX—only that it "met quarterly and had unique inside information and access into FTX."  (Compl. ¶ 362.)  Plaintiffs also affirmatively allege—consistent with the jury verdict against SBF—that FTX was "under the ultimate control of [SBF]." (*Id.* ¶ 151.)  And Plaintiffs cite no authority showing that their vague advisory board allegations are sufficient to show involvement in the offer or sale of securities.  (*See* Mot. at 16–17.)

*Fourth*, Plaintiffs assert that "each Defendant actively promoted the FTX platform to crypto investors at investment conferences."  (Opp. at 13 (citing Compl. ¶¶ 364–65, 370).)  Plaintiffs do not identify a single statement made by any SoftBank entity.  The three Complaint paragraphs they cite allege Temasek's and SG Capital Limited's participation in a Crypto Bahamas event but do not describe any statements at those conferences "promot[ing] the FTX platform," much less any related to the offer or sale of securities to any investor.

*Fifth*, Plaintiffs claim that "Sino Global partnered with Alameda and FTX to start a fund

---

[5] Though Plaintiffs use the collective term "SoftBank," they cite nothing identifying statements to the government from any other SoftBank entity, nor any Temasek or Sino entity, for that matter.

that traded in and churned the FTTs at issue." (*Id.* at 13–14, 16.)  The Opposition defines "Sino Global" as SG Capital Limited (*id.* at 1 n.1), but that entity has not been served or appeared in this action and did not join the Motion (Mot. at 1 nn.1–2, 8).  There is no allegation that moving Defendant Sino Global Capital Holdings, LLC ("SG Capital Holdings") had any connection to these co-investment arrangements; indeed, SG Capital Holdings ***is not mentioned once in the Opposition***.  Moreover, Plaintiffs allege no actual facts to support, or even explain, their churning accusation and nowhere allege that they purchased FTT (or anything else) from "Sino Global."

***Sixth***, Plaintiffs suggest that statements the Multinational VCs supposedly made about their due diligence on FTX were false and misleading and "can also be construed as public statements made to encourage sales." (Opp. at 13, 16.)  Wrong again.  Plaintiffs fail to show that any of the Multinational VCs' statements are false or misleading or how they "actively and directly . . . influence[d] or induce[d] the investor to buy" securities.  *Papadopoulos v. Sidi*, 2007 WL 9700707, at *6 (S.D. Fla. Jan. 8, 2007); (*see* Mot. at 20–21).  Plaintiffs also ignore that Temasek's statements about its due diligence were made ***after*** FTX's collapse.  (Mot. at 5.)  And the statements attributed to SoftBank Group Corp. and non-movant SG Capital Limited had nothing to do with FTX—the allegations in the Complaint show that those were general statements about the types of diligence those entities might do on an investment.  (Compl. ¶¶ 323–26; Opp. at 3, 13, 16; Mot. at 4.)  Plaintiffs allege no facts about the diligence that any Sino Global or SoftBank entity ***actually*** performed on FTX or what any such diligence ***actually*** uncovered.

### B.   Plaintiffs Do Not Plead That the Multinational VCs Were Directors, Officers, Agents, or Partners of FTX (Count 1).

Plaintiffs concede that the Multinational VCs were not directors or officers of FTX.  (*See* Opp. at 15; Mot. at 17.)  Plaintiffs also do not show the "actual or apparent control" required to demonstrate an agency relationship.  (Mot. at 17.)  Plaintiffs point to SoftBank's and Temasek's

"advisory board" participation (Opp. at 16), but the "advisory board" did not have any control over FTX (*see supra* at 6). Plaintiffs' vague claims about the Multinational VCs "advis[ing] on regulatory concerns," "lobb[ying]," and promoting FTX (Opp. at 15–16) are equally unavailing.

Plaintiffs' partnership arguments fare no better. Plaintiffs identify a single vague social media post in which SBF says, "we've formed a hugely valuable set of partners." (*Id.* at 15.) That solitary comment does not show that the Multinational VCs, who were passive minority investors, created a legal partnership to carry out the business of FTX, as required for liability here. *See* Fla. Stat. § 620.8101(7) (defining "partnership"); *Drewes v. Cetera Fin. Grp., Inc.*, 2020 WL 13566405, at *6 (S.D. Fla. July 9, 2020) ("[T]he colloquial use of 'partner' does not automatically convert [a] relationship into a *de facto* partnership.").[6]

### C.    Plaintiffs Plead Neither Negligence nor Intent to Defraud (Counts 1 and 3).

Plaintiffs say nothing of substance about their failure to plead the requisite intent for their unregistered securities claims. Plaintiffs state that, under Florida law, Count 1 requires a showing of negligence and, under California law, Count 3 requires a showing of "[i]ntent to defraud." (Opp. at 17–18.) Plaintiffs then offer the same vague, conclusory, and misleading allegations about "the provision of legal and regulatory assistance to FTX[,] . . . knowledge of the underlying fraud obtained in the course of their partnerships[,] and the affirmative misrepresentations and omissions they made at investor conferences regarding the due diligence they conducted and the safety of the platform." (*Id.*) Plaintiffs again ignore the many defects in those claims, including that FTX insiders affirmatively misled the Multinational VCs about the existence of FTX's fraudulent scheme. (*See supra* at 2–7; Mot. at 6–7.) Further, Plaintiffs insist that the Multinational VCs

---

[6] Plaintiffs also claim that SG Capital Limited "partner[ed]" with FTX in a co-investment fund. (Opp. at 16.) Again, SG Capital Limited is not a moving entity here, and there are no allegations specific to SG Capital Holdings. (*See supra* at 7.) Regardless, the creation of a **separate** co-investment fund is not the same as partnering in **FTX's** business.

"should have known" about FTX's misconduct but do not address the case law explaining that "should have known" allegations are insufficient to establish intent to defraud. (Mot. at 18.)

### D.      Plaintiffs Fail to Plead Their Unregistered Broker-Dealer Claim (Count 3).

Plaintiffs barely defend their unregistered broker-dealer claim. Plaintiffs first argue that privity is not required to state a claim. (Opp. at 18.) But they cite nothing for that position and do not address the cases that explain that they must indeed allege privity with the Multinational VCs. (Mot. at 18–19.) Plaintiffs also never argue that they have alleged privity. That dooms the claim.

Plaintiffs also argue that the Multinational VCs are secondarily liable under Section 25504.1 for materially assisting in violations of Section 25210(b) with intent to deceive or defraud. (Opp. at 18.) Again, they cite nothing to support that claim. The Multinational VCs explained that "Section 25504.1 lists the provisions to which it applies, and Section 25210 is not among them." (Mot. at 19.) Plaintiffs offer no response. Plaintiffs also suggest that the Multinational VCs are secondarily liable as control persons under Section 25504. (Opp. at 18.) But Count 3 does not mention Section 25504, and Plaintiffs may not use the Opposition "to amend [their] theory of the complaint." *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2011 WL 1233106, at *11 (S.D. Fla. Mar. 30, 2011). Regardless, any claim under Sections 25504 or 25504.1 fails because the Multinational VCs were not control persons and did not "materially assist" in any sale of securities or act "with intent to deceive or defraud." (Mot. at 16–18.)

### III.   Plaintiffs' Securities Fraud Claims (Counts 2, 4, 5, and 6) Should Be Dismissed.

Plaintiffs' Opposition confirms that they did not plead multiple elements of their securities fraud claims.

### A.      Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 2, 4, and 5).

Plaintiffs again acknowledge that material assistance and personal participation require a

showing of direct involvement in the sale of securities by means of false or misleading statements. (Opp. at 21.)  And again, Plaintiffs offer no factual allegations even approaching such a showing.

While Plaintiffs claim to "identify material misrepresentations and omissions with specificity," they cite only to misrepresentations that **FTX** and **SBF** allegedly made.  (*Id.* at 20 (citing Compl. ¶ 419).)  Plaintiffs do not point to any factual allegation showing that the Multinational VCs had ***any involvement*** in those statements.  (*See id.*; Mot. at 20.)  Instead, Plaintiffs cite vague allegations about what the Multinational VCs supposedly should have known about FTX and conclusory claims that the Multinational VCs assisted or participated in FTX's fraud.  (Opp. at 20–21 (citing Compl. ¶¶ 419, 421–24, 435–45).)  Those unsupported and implausible allegations are insufficient to state a claim.  (*See* Mot. at 20–21; *supra* at 2–7.)

Plaintiffs also repeat their claims that the Multinational VCs "financed FTX, sponsored FTX investor conferences, lobbied for FTX, and provided legal and regulatory guidance to bring FTX and its unregistered securities to market."  (Opp. at 21.)  As discussed above, the Court should reject those assertions, which are unsupported by the Complaint.  (*See supra* at 2–7.)  In any event, those allegations are insufficient because "no amount of involvement with the business of the seller will overcome the absence of personal participation or aid in the making of the sale."  *Carran v. Morgan*, 2007 WL 3520480, at *4 (S.D. Fla. Nov. 14, 2007).

### B.      Plaintiffs Again Fail to Plead Scienter (Counts 2, 4, 5, and 6).

As the Motion explained, the Multinational VCs could not have acted with scienter because Plaintiffs' allegations show that ***FTX deceived and defrauded the Multinational VCs*** up until FTX collapsed.  (Mot. at 21.)  In response, Plaintiffs just repeat their conclusory allegation that the Multinational VCs "pumped billions into FTX and propped them up on for business on the U.S. market after conducting significant due diligence that should have raised serious flags."  (Opp. at 21.)  Plaintiffs do not mention their allegations about the government's investigations or the recent

conviction of SBF, which doom their claims.  Plaintiffs' threadbare response confirms that their securities fraud claims should be dismissed.

### C. Plaintiffs Do Not Allege That the Multinational VCs Were Control Persons of FTX (Counts 2 and 6).

Plaintiffs' sole basis for control person liability is the conclusory claim that "Defendants acted both as agents in acting on behalf of FTX in legal and regulatory matters, and as control persons insofar as they served on an Advisory Board."  (*Id.* at 22.)  As explained above, Plaintiffs do not allege (i) an actual or apparent agency or partnership relationship or (ii) that FTX's "advisory board" had any decision-making power at FTX.  (*See supra* at 6–8; Mot. at 22.)

### D. Plaintiffs Do Not Allege Market Manipulation (Count 5).

Plaintiffs effectively abandon their market manipulation claim.  (Opp. at 22.)  To start, the Opposition addresses only non-movant SG Capital Limited—an unserved entity.  (*Id.*; *see supra* at 7.)  Further, Plaintiffs lack any factual allegations to support their assertion that SG Capital Limited "worked closely with SBF to churn and prop the FTTs up" and that "[s]uch trading sustained the false and artificially inflated value of the FTTs and YBAs."  (Opp. at 22.)

## IV. The Complaint Does Not State a Claim for Conspiracy (Count 7).

Plaintiffs concede that Rule 9(b) applies to their conspiracy claim and that they must plead the "who, what, where, when, [and] how of the alleged conspiracy."  (Mot. at 22–23; Opp. at 23–24.)  Plaintiffs' Opposition makes clear that they have not done so.

To start, Plaintiffs again ignore that the Multinational VCs "were victims of the alleged fraud, rather than co-conspirators."  *Nuwave, Ltd. v. Argyle Equities, LLC*, 2007 WL 3130443, at *4 (M.D. Fla. Oct. 24, 2007) (dismissing conspiracy claim); (*see supra* at 1–2).  Rather than address this fundamental problem, Plaintiffs speculate that the Multinational VCs formed "a tacit agreement" with unspecified "agents of FTX."  (Opp. at 24.)  They further speculate that this

so-called tacit agreement may have been no more than an implied agreement to "overlook" FTX's "sloppy internal controls and other regulatory issues," not an active participation in any wrongdoing.  (*Id.* at 25.)  And, rather than identify when this alleged agreement was entered, Plaintiffs claim that the Multinational VCs may have impliedly agreed to overlook FTX's issues either "at the outset" of their investments or "when it was too late."  (*Id.*)

Such hazy and implausible allegations cannot support a conspiracy claim.  *See Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *6 (S.D. Fla. Sept. 26, 2018) (rejecting "conclusory and unsupported assertions of an agreement" and requiring specifics of the alleged conspiracy).

## V.   The Complaint Does Not State Any Aiding and Abetting Claim (Counts 8–10).

Plaintiffs acknowledge that they must plead facts showing that the Multinational VCs had actual knowledge of FTX's wrongdoing and that they substantially assisted in its commission. (Opp. at 25.)  Plaintiffs fail to do so.  ***First***, instead of showing actual knowledge, Plaintiffs rely solely on supposed "red flags" that they claim the Multinational VCs ought to have noticed.  (*Id.* at 26.)  But red flags and allegations that the Multinational VCs had "information from which one ***could*** or even should deduce the existence of fraud" are "insufficient to state a claim."  *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *12–13 (M.D. Fla. Aug. 22, 2019); (Mot. at 24–25). Further, Plaintiffs' "factual allegations that [SBF and others] intentionally concealed the scheme lend support to the proposition that the [Multinational VCs] did not have actual knowledge of" FTX's wrongdoing.  *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018).

Plaintiffs' sparse allegations do not change this analysis.  For Temasek, Plaintiffs point to nothing more than the fact that Temasek conducted diligence before investing and monitored the investment afterward.  (Opp. at 27; Compl. ¶¶ 320–22.)  Similarly, Plaintiffs speculate about SoftBank's diligence.  (Opp. at 27.)  As discussed above, these diligence allegations are defective. (*See supra* at 7.)  Plaintiffs also point to the firing and demotion of certain SoftBank Group Corp.

employees, but such allegations are insufficient to show actual knowledge, particularly where, as here, Plaintiffs do not plead specific facts connecting the personnel decision with the wrongdoing at issue. *See In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at *11 (N.D. Cal. Oct. 19, 2010); *Otto Candies, LLC v. Citigroup, Inc.*, 2023 WL 6418135, at *7 (S.D. Fla. Aug. 25, 2023).

Plaintiffs also allege that SG Capital Limited hired a former FTX financial executive after FTX's collapse. (Opp. at 27–28.) But again, that allegation cannot be attributed to the moving entity SG Capital Holdings. Regardless, the *post-hoc* hiring of an individual whom Plaintiffs have not accused of wrongdoing says nothing about whether that non-moving entity knew of, let alone substantially assisted, her former employer's misconduct. Nor is hiring an individual with cryptocurrency startup experience to work at a cryptocurrency startup-focused venture capital firm equivalent to the "atypical business transactions" discussed in Plaintiffs' cases.[7]

***Second***, Plaintiffs fail to allege that the Multinational VCs substantially assisted FTX's wrongful conduct. Because Plaintiffs maintain that FTX committed "the largest financial fraud in US history" (Compl. ¶ 1), they must allege that the Multinational VCs' assistance was substantial in that context. "[S]ubstantial assistance will not be found where the amount of assistance alleged is minor in comparison to the massive scope of the overall fraudulent scheme." *Richter v. Wells Fargo Bank NA*, 2015 WL 163086, at *3 (M.D. Fla. Jan. 13, 2015) (quotations and alterations omitted). Plaintiffs assert, in a conclusory manner, that "FTX could not have reached its success without the extensive assistance of" the Multinational VCs. (Opp. at 27.) But the Complaint is devoid of facts showing that the Multinational VCs' investments, or anything else they did, were

---

[7] (Opp. at 28 (citing *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1121 (C.D. Cal. 2003) (bank engaged in "atypical banking procedures to service" accounts subject to Ponzi scheme); *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1012 (11th Cir. 1985) (bank wrote letter of reference for fraudster customers containing "statements of which the writer ha[d] no knowledge . . . solely for the purpose of 'currying favor' with" the customers)).)

in any sense material to FTX's fraud.  (*See supra* at 2–7; Mot. at 26–27.)  And, again, Plaintiffs

ignore that SBF has now been convicted of defrauding investors like the Multinational VCs.

**VI.     Plaintiffs' UCL Claim (Count 11) Should Be Dismissed.**

The Opposition does not rebut any of the reasons for dismissing Plaintiffs' UCL claim.

### A.     Plaintiffs' UCL Claim Relates to "Securities Transactions."

Under settled law, the UCL does not apply to "securities transactions."  (Mot at 27.)

Plaintiffs respond only that "UCL claims may proceed to the extent they are unrelated, or merely

tangentially related to securities transactions."  (Opp. at 28–29.)  But Plaintiffs' entire Complaint

is premised on their purchase of supposed securities from FTX, and their UCL claims allege that

the Multinational VCs misled consumers "into purchasing, depositing, and/or transacting in fiat

currency and digital assets with accounts with FTX."  (Compl. ¶ 482.)  "No court . . . has allowed

Section 17200 claims to proceed where, as here, the predicate acts are securities transactions."

*Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011).

### B.     Plaintiffs Lack Standing to Bring a UCL Claim.

Plaintiffs argue that the Multinational VCs caused them immediate injury via the "larger

scheme that [the Multinational VCs] aided by promoting FTX, advising FTX on corporate

governance and legal and regulatory compliance, lobbying to bring the FTX platform to market,

and trading in the securities at issue to prop them up and give FTX legitimacy."  (Opp. at 29.)

Those claims are insufficiently pleaded (*see supra* at 2–7) and, regardless, do not constitute

misrepresentations made to Plaintiffs that would support a UCL claim.  (Mot. at 28–29.)

Further, to state a UCL claim, Plaintiffs must demonstrate actual reliance and that "the

defendant's misrepresentation or nondisclosure was an ***immediate cause*** of the plaintiff's

injury-producing conduct."  *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (emphasis

added; quotations omitted).  Plaintiffs argue that, "[b]ut for Defendants' conduct in funding and

controlling and acting as agents on behalf of FTX, and but for their omissions when promoting FTX to the public, Plaintiffs could not have and would not have opened accounts on the FTX platform." (Opp. at 29.) Plaintiffs cite nothing for this conclusory proposition, and there are no factual allegations in the Complaint that Plaintiffs saw any statements by the Multinational VCs or that those statements influenced their purchasing decisions. (Mot. at 29–30.)

### C. Plaintiffs Do Not Plead Fraud, Unfairness, or Unlawfulness.

Contrary to Plaintiffs' own allegations that FTX defrauded the Multinational VCs, Plaintiffs argue that the Multinational VCs supposedly knew of SBF's fraud, promoted FTX anyways, and "were kicked back tens of millions of dollars to trade in [FTX's] tokens and assist in the scheme." (Opp. at 30.) Unsurprisingly, nothing Plaintiffs cite supports their "kickback" allegation. (*See* Compl. ¶¶ 319–73, 485.) Rather, these are the same flawed and unsupported claims that Plaintiffs rely on elsewhere in their Opposition. (*See supra* at 2–7.) In any event, Plaintiffs fail to show that the Multinational VCs' conduct would have deceived or misled an actual customer, as required by the "unfair" and "fraudulent" prongs of the UCL. (*See* Mot. at 30–31.) Finally, Plaintiffs concede that their "unlawful" allegations rely on their California securities fraud and false advertising claims (Opp. at 28), and those claims are insufficiently pleaded (Mot. at 31).

### D. Plaintiffs' UCL Claim Fails Because They Seek an Inappropriate Remedy.

Plaintiffs do not contest that, to establish a UCL claim, they must lack an adequate remedy at law. (Opp. at 30.)[8] Plaintiffs instead argue that they have no such remedy "given the bankruptcy of FTX and the tenuous legal status and economic value of their accounts at FTX and the tokens held in those FTX accounts." (*Id.*) But FTX's bankruptcy is irrelevant to Plaintiffs' suit against the Multinational VCs.

---

[8] Plaintiffs concede that they "are not entitled to restitution or injunctive relief." (Mot. at 31.)

**E.      Plaintiffs' UCL Claim Is Not Sufficiently Connected to California.**

Plaintiffs argue that the UCL applies because two Plaintiffs are from California.  (*Id.*)  But they do not, and cannot, defend the assertion of a UCL claim by the fourteen Plaintiffs who are not from California.  (*Compare* Compl. ¶¶ 13, 16–28, *with* Compl. ¶¶ 480–88.)

**VII.    Plaintiffs' FAL Claim (Count 12) Should Be Dismissed.**

Plaintiffs have not rebutted the four independent reasons why their FAL claim should be dismissed.  ***First***, Plaintiffs cannot premise their FAL claim on securities transactions.  (Mot. at 32; Opp. at 31; *see supra* at 14.)  ***Second***, Plaintiffs do not identify any specific advertising statement by the Multinational VCs, much less any untrue or misleading statement.  (Mot. at 32–33.)[9]  Plaintiffs' argument that "Defendants aided in bringing FTX to market" and "touted their FTX investments at crypto investment conferences" (Opp. at 31) misses the mark.  The only actual statements that Plaintiffs identify are factually true statements about the Multinational VCs' investments in FTX or their subjective and unactionable opinions about FTX or SBF.  (Mot. at 32–33.)  Plaintiffs also ignore that they have not alleged that they read, heard, or relied on anything said by the Multinational VCs that constituted a substantial factor in their decision-making.  *See Rothman v. Equinox Holdings, Inc.,* 2021 WL 124682, at *5–6 (C.D. Cal. Jan. 13, 2021) (explaining that the presumption that one would have behaved differently cannot be applied to misrepresentations plaintiffs never saw).  ***Third***, Plaintiffs do not dispute that their failure to allege the "fraudulent" prong of the UCL also requires dismissal of their FAL claim.  (Mot. at 33.)  ***Fourth***, as explained above, Plaintiffs have an adequate remedy at law.  (*Id.*; *see supra* at 15.)

**VIII.   Plaintiffs' FDUTPA Claim (Count 13) Should Be Dismissed.**

Plaintiffs' FDUTPA claim, like their UCL and FAL claims, cannot proceed because it is

---

[9] Plaintiffs appear to rely on statements from SBF as the basis for their claim (Opp. at 31), but those statements cannot plausibly be attributed to the Multinational VCs.  (*See supra* at 2, 10.)

premised on securities transactions.  (Mot. at 34; *see supra* at 14, 16.)  Plaintiffs also have not sufficiently pleaded the elements of a FDUTPA claim for three reasons.

> ***First***, Plaintiffs do not dispute that they have not alleged any act by any Multinational VC likely to mislead them and failed to specify which representations, omissions, or practices by which of the Multinational VCs caused Plaintiffs to transact on the FTX platform.  *See Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3–4 (M.D. Fla. Mar. 14, 2012) (dismissing FDUTPA claim for failure to plead "precisely what statements were made," in what form, "the time and place of each such statement, and the person responsible for making them"); (Mot. at 34).

> ***Second***, Plaintiffs claim that they have pleaded causation and that the Multinational VCs confuse causation with reliance.  (Opp. at 32.)  They are wrong.  Under Eleventh Circuit precedent, a plaintiff must show "that the allegedly misleading statement caused [the] claimed damages." *Dolphin LLC v. WCI Cmties., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *see also Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015).  And, while some courts hold that plaintiffs need to show only that the practice was "likely to deceive a consumer acting reasonably in the same circumstances," *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2012 WL 1015806, at *7 (N.D. Ill. Mar. 22, 2012) (surveying case law), Plaintiffs meet neither standard.  They do not allege that they relied on any statement by a Multinational VC or that any statement by a Multinational VC would have caused an objectively reasonable consumer to suffer damages by transacting on the FTX platform.  (*See supra* at 5, 14–16; Mot. at 35.)

> ***Third***, Plaintiffs erroneously claim they have pleaded damages because they lost their investments on FTX.  (Opp. at 33.)  But Plaintiffs ignore that SBF's and other FTX insiders' actions caused their losses, not any alleged deceptive acts by the Multinational VCs.  (Mot. at 35.)

IX.     **Plaintiffs' Negligent Misrepresentation Claim (Count 14) Should Be Dismissed.**

Plaintiffs have not pleaded the elements of a negligent misrepresentation claim.  ***First***, Plaintiffs argue that "Defendants made public statements intended to legitimize FTX in the public eye," rehashing the same flawed allegations that form the basis of all of their claims (Opp. at 33–34), which fail for the reasons discussed above (*see supra* at 2–7).  ***Second***, Plaintiffs make the conclusory claim that "Defendants knew or should have known their statements were false" (Opp. at 34) but again allege no facts about what the Multinational VCs uncovered in their due diligence or how that rendered false any of their statements about FTX.  ***Third***, Plaintiffs do not dispute that they "have entirely failed to link their alleged damages from transacting on FTX to any specific statement by any of the Multinational VCs."  (Mot. at 37–38; Opp. at 34.)

X.      **Plaintiffs' Intentional Misrepresentation and Fraudulent Inducement Claims (Counts 15 and 16) Should Be Dismissed.**

Plaintiffs have not adequately pleaded their intentional misrepresentation and fraudulent inducement claims.  ***First***, Plaintiffs argue that the Multinational VCs made false representations about "their due diligence; that FTX's services were safe; that SBF was a visionary who was focused on decreasing risk in trading; and that FTX was an exchange the public should trust." (Opp. at 35.)  But the cited allegations contain only statements that certain entities performed diligence, which Plaintiffs do not claim are false; speculation about the diligence that certain entities ***might*** have performed; statements made by FTX or other industry participants (not by the Multinational VCs); and certain of the Multinational VCs' subjective opinions.  (*See* Mot. at 38.)

***Second***, Plaintiffs do not allege that the Multinational VCs knew that any representation was false.  Plaintiffs claim that the Multinational VCs "turned a blind eye to what they knew and should have known" about FTX (Opp. at 35) but do not allege that the Multinational VCs actually uncovered any wrongdoing at FTX and again ignore that the Multinational VCs were defrauded

by SBF and other insiders (*see supra* at 2–7, 12; Mot. at 39).

**Third**, Plaintiffs argue that false statements need not be made directly to an injured party, but rather the statements could be made with the intent that they reach and be acted on by the injured party.  (Opp. at 36.)  But Plaintiffs fail to make even that showing, as they do not identify any statement by a Multinational VC about an FTX product or service.  (Mot. at 39.)

**Fourth**, Plaintiffs' reliance argument is unsupported.  (*Id.*)  Plaintiffs do not argue that they relied on any statement by the Multinational VCs.  Plaintiffs instead claim that "multiple **other** actors . . . have publicly stated relying on the due diligence performed by FTX institutional investors."  (Opp. at 36 (emphasis added).)  But Plaintiffs cannot assert claims for these "other actors."  Further, nothing in the Complaint shows that these "other actors" relied on the supposed diligence statements by the Multinational VCs.  Indeed, no one could have relied on those statements—the statements attributed to SG Capital Limited and SoftBank were not about FTX, and Temasek made its alleged statements **after** FTX collapsed.  (*See supra* at 7.)

## XI.     Plaintiffs' Declaratory Judgment Claims (Counts 17 and 18) Should Be Dismissed.

**First**, Plaintiffs agree that if their underlying UCL, FAL, and fraud claims fail, their declaratory judgment claims also fail.  (Mot. at 39; Opp. at 37.)  **Second**, Plaintiffs concede that their declaratory relief claims seek improper remedial measures but claim that "does not somehow detract from the need for the court to adjudicate the parties' rights."  (Opp. at 37; Mot. at 39–40.)  They cite nothing for that position and do not defend their requested relief.  **Third**, Plaintiffs admit that where, as here, "a party seeks compensatory damages which provide an adequate remedy at law, equitable relief may be barred."  (Opp. at 37.)  But Plaintiffs claim that "the remedies here are distinct" and that they seek declaratory relief "to curb future harm."  (*Id.*)  That argument fails because there is no possibility of future harm—the FTX platform is no longer functioning, and SBF is in jail.  (*See* Mot. at 31.)  **Fourth**, Plaintiffs confusingly state that the relief they seek is not

to improperly "adjudicate past conduct" or obtain a "purely legal ruling" but that they "seek a determination of whether the YBAs were illegally sold by FTX and illegally solicited by Defendants, which will determine whether there is further escalation of this conflict or further litigation." (Opp. at 38.)  But Plaintiffs do not allege that the Multinational VCs sold or solicited the sale of YBAs (or any FTX product) to Plaintiffs, and the Opposition does not explain how they will apparently "further escalat[e] this conflict" such that a declaratory judgment is appropriate.

## XII.   Plaintiffs' Punitive Damages Claim (Count 19) Should Be Dismissed.

Plaintiffs concede that their claim for punitive damages is not a cause of action but instead is a type of relief.  (*Id.*)  That concession is dispositive.  *See Montalbano v. Ariad Pharms., Inc.*, 2015 WL 11198245, at *10 (S.D. Fla. Aug. 4, 2015); (Mot. at 40).

## XIII.  Leave to Amend Should Be Denied.

Plaintiffs should be denied leave to amend.  (Opp. at 39–40.)  ***First***, "Plaintiffs' method of requesting amendment—seeking leave to amend without identifying the intended amendments, and doing so only in the event the Court issues an adverse ruling—is improper."  *Blow v. Carnival Corp.*, 2023 WL 3686840, at *11 (S.D. Fla. May 26, 2023).  ***Second***, Plaintiffs have already amended once, and this case has been pending for nearly a year.  Any additional amendment would cause undue delay.  *See Witt v. Stryker Corp. of Mich.*, 648 F. App'x 867, 870–71 (11th Cir. 2016). ***Third***, because Plaintiffs' claims are fundamentally nonsensical and implausible, any amendment would be futile.  *See Robbins v. Robertson*, 782 F. App'x 794, 807 (11th Cir. 2019).[10]

<u>CONCLUSION</u>

The Complaint against the Multinational VCs should be dismissed with prejudice.

---

[10] Plaintiffs assert that a with-prejudice dismissal would be "problematic" because of the "parallel criminal and bankruptcy proceedings."  (Opp. at 40.)  But SBF's criminal trial is over, and Plaintiffs do not identify what facts they expect to learn from FTX's bankruptcy (which could take years to resolve).

Dated:  December 6, 2023

/s/ Eric D. Lawson
Eric D. Lawson (mdl102196)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: (212) 468-8000
Email: elawson@mofo.com

Anna Erickson White (mdl102198)
Ryan M. Keats (mdl102197)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: awhite@mofo.com
          rkeats@mofo.com

Adam M. Foslid (Fla. Bar No. 682284)
WINSTON & STRAWN LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 2400
Miami, FL 33131
Telephone: (305) 910-0500
Email: afoslid@winston.com

*Counsel for Defendants SoftBank Group Corp.; SB Group US, Inc.; SoftBank Investment Advisers (UK) Limited; and SoftBank Global Advisers Limited*

Respectfully submitted,

/s/ Adam S. Fels (with permission)
Adam S. Fels (Fla. Bar No. 0114917)
FRIDMAN FELS & SOTO, PLLC
150 Alhambra Circle
Suite 715
Coral Gables, FL 33134
Telephone: (305) 569-7701
Email: afels@ffslawfirm.com

Brad S. Karp, *pro hac vice*
Andrew J. Ehrlich, *pro hac vice*
Nina M. Kovalenko, *pro hac vice*
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: bkarp@paulweiss.com
          aehrlich@paulweiss.com
          nkovalenko@paulweiss.com

*Counsel for Defendants Temasek Holdings (Private) Ltd. and Temasek International (USA) LLC*

/s/ Jason P. Gottlieb (with permission)
Jason P. Gottlieb, *pro hac vice*
Michael Mix, *pro hac vice*
Vani Upadhyaya, *pro hac vice*
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
Telephone: (212) 735-8600
Email: jgottlieb@morrisoncohen.com
          mmix@morrisoncohen.com
          vupadhyaya@morrisoncohen.com

*Counsel for Defendant Sino Global Capital Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of December, 2023, I e-filed a true and correct copy of the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ <em><u>Eric D. Lawson</u></em>