**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-md-3076-KMM

**In RE**

**FTX CRYPTOCURRENCY**
**EXCHANGE COLLAPSE LITIGATION**

THIS DOCUMENT RELATES TO:

Law Firms

**FENWICK & WEST LLP'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS'**
**ADMINISTRATIVE CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................ 1

II.   Arguments and Authorities ........................................................................ 2

    A.    Florida Law Governs Plaintiffs' Common Law Claims. ..................... 2

        1.    Florida's Choice-of-Law Rules Apply ...................................... 3

        2.    Florida's Choice-of-Law Rules Compel Application of Florida Substantive Law. ..................................................................... 6

        3.    Even if California's Choice-of-Law Rules Apply to *Cabo*, They Likewise Compel Application of Florida Substantive Law ..................... 9

    B.    Plaintiffs Fail to State a Claim Under Florida Law. ........................... 10

        1.    Plaintiffs Fail to State a Claim for Conspiracy or Aiding-and-Abetting Liability Because They Do Not Allege Fenwick Performed Work Outside the Scope of Its Representation of FTX (Counts 1–8) .................................................................. 10

        2.    Plaintiffs Fail to Plausibly Allege Essential Elements of Their Aiding-and-Abetting Claims (Counts 2–7) .................................. 12

    C.    Plaintiffs Also Fail to State a Claim Under California Law. .............. 15

        1.    Plaintiffs Fail to State a Claim for Conspiracy or Aiding-and-Abetting Liability Because They Do Not Allege Fenwick Performed Work Outside Its Official Capacity on Behalf of FTX (Counts 1–8) .................................................................. 15

        2.    Plaintiffs Fail to Plausibly Allege Essential Elements of Their Aiding-and-Abetting Claims (Counts 2–7) .................................. 17

    D.    Plaintiffs Fail to State a RICO Claim Under Federal Law. ............... 18

    E.    The Court Should Dismiss the Complaint With Prejudice. ................. 20

III.   Conclusion ................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. McGuireWoods LLP*,
   518 B.R. 491 (Bankr. N.D. Ind. 2014)...................................................................................16

*Alch v. Super. Ct.*,
   122 Cal. App. 4th 339 (2004) ...............................................................................................18

*Amegy Bank National Association v. DB Private Wealth Mortgage, Ltd.*,
   2014 WL 791503 (M.D. Fla. Feb. 24, 2014) ......................................................................8, 9

*American General Life Ins. Co. v. Fernandez*,
   2012 WL 5267703 (C.D. Cal. Oct. 24, 2012).......................................................................16

*Baptiste v. Doe*,
   2021 WL 6112976 (11th Cir. Dec. 27, 2021) ......................................................................20

*Barney v. Aetna Casualty & Surety Co.*,
   185 Cal. App. 3d 966 (1986) ...........................................................................................16, 17

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) ..................................................................................................4

*Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*,
   131 Cal. App. 4th 802 (2005) .........................................................................................16, 17

*Black v. Bank of America*,
   30 Cal. App. 4th 1 (1994) .....................................................................................................15

*Black v. Sullivan*,
   48 Cal. App. 3d 557 (1975) ..................................................................................................17

*Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.*,
   502 F. Supp. 2d 1237 (S.D. Fla. 2009) ................................................................................19

*Casey v. U.S. Bank National Association*,
   127 Cal. App. 4th 1138 (2005) .............................................................................................16

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001)..............................................................................................................19

*Chance v. Cook*,
   50 F.4th 48 (11th Cir. 2022) ...........................................................................................10, 12

*Chunhong Jia v. Boardwalk Fresh Burger & Fries, Inc.*,
   2021 WL 3493313 (M.D. Fla. Aug. 9, 2021) ........................................................................7

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ............................................................................................19

# TABLE OF CONTENTS
(continued)

**Page**

*Doctors' Co. v. Super. Ct.,*
    49 Cal. 3d 39 (1989) ...................................................................................1, 15, 17

*In re Enron Corp. Secs., Derivative & 'ERISA' Litig.,*
    511 F. Supp. 2d 742 (S.D. Tex. 2005) ...........................................................7

*In re Estrategias en Valores, S.A.,*
    628 B.R. 722 (Bankr. S.D. Fla. 2021)...........................................................8

*Farese v. Scherer,*
    342 F.3d 1223 (11th Cir. 2003) ...........................................................1, 10, 12

*Gelboim v. Bank of America Corp.,*
    574 U.S. 405 (2015).........................................................................................3, 4

*Grape Leaf Capital, Inc. v. Lafontant,*
    316 So. 3d 760 (Fla. 3d DCA 2021) ...........................................................14

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.,*
    485 F.3d 1233 (11th Cir. 2007) ...................................................................6

*Heffernan v. Hunter,*
    189 F.3d 405 (3d Cir. 1999)...........................................................................10

*Hunter v. Citibank, N.A.,*
    2011 WL 7483457 (N.D. Cal. June 16, 2011) ............................................16

*James River Ins. Co. v. Med Waste Mgmt., LLC,*
    46 F. Supp. 3d 1350 (S.D. Fla. 2014) ...........................................................3

*In re January 2021 Short Squeeze Trading Litig.,*
    584 F. Supp. 3d 1161 (S.D. Fla. 2022) .........................................................3

*Logan v. Morgan, Lewis & Bockius LLP,*
    350 So. 3d 404 (Fla. 2d DCA 2022) ...................................................10, 11, 12

*In re Managed Care Litig.,*
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) .........................................................19

*Metrocity Holdings, LLC v. Bank of America, N.A.,*
    2023 WL 6064516 (S.D. Fla. Sept. 18, 2023) ..........................................13, 14

*Miller v. Harden,*
    2006 WL 5083825 (M.D. Fla. Sept. 7, 2006) ............................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC,*
    2015 WL 3905018 (S.D. Fla. June 25, 2015) ............................................6

*Neilson v. Union Bank of Cal., N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................17

# TABLE OF CONTENTS
(continued)

Page

*Platinum Estates, Inc. v. TD Bank, N.A.*,
  2012 WL 760791 (S.D. Fla. Mar. 8, 2012) ................................................................13

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ................................................................................19

*In re Refrigerant Compressors Antitrust Litig.*,
  731 F.3d 586 (6th Cir. 2013) .....................................................................................4

*Ruiz v. Tenet Hialeah Healthsystem, Inc.*,
  260 So. 3d 977 (Fla. 2018) .......................................................................................15

*In re Sahlen & Associates, Inc. Secs. Litig.*,
  773 F. Supp. 342 (S.D. Fla. 1991) .......................................................................18, 19

*Stromberg v. Qualcomm Inc.*,
  14 F.4th 1059 (9th Cir. 2021) ...................................................................................10

*In re Takata Airbag Prods. Liability Litig.*,
  379 F. Supp. 3d 1333 (S.D. Fla. May 3, 2019) ............................................................5

*In re Telexfree Secs. Litig.*,
  652 F. Supp. 3d 233 (D. Mass. 2023) .........................................................................8

*United States v. Bankman-Fried*,
  No. 22-cr-673 (S.D.N.Y.), Dkt. 305 ..........................................................................20

*Washington Mutual Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ...............................................................................................9

*Wise v. Cach, LLC*,
  2010 WL 1257665 (S.D. Fla. Mar. 26, 2010) ............................................................20

*In re Zantac (Rantidine) Prods. Liability Litig.*,
  2023 WL 2325536 (S.D. Fla. Mar. 2, 2023) ................................................................5

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................12

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145(2) ..........................................................6

Restatement (Second) of Conflict of Laws § 145, cmt. e .................................................6

Restatement (Third) of Agency § 7.04 ..............................................................................16

## I.     INTRODUCTION

As Fenwick & West explained in its motion to dismiss, Plaintiffs' Complaint fails to state a claim for conspiracy or aiding-and-abetting liability under Florida law.  Rather than meaningfully dispute this, Plaintiffs engage in an extended defense of an entirely different case—one that is nowhere to be found in the Complaint.

Plaintiffs begin by insisting for the first time that this action has nothing to do with Florida, but instead arises under *California* law.  Plaintiffs assert this argument despite having repeatedly taken the position that the "conspiracy [was] rooted in Miami," Dkt. 391 at 8, that the "primary conduct at issue in these actions . . . emanated from the Southern District of Florida," MDL No. 3076, Dkt. 1-1 at 17, and that a nationwide class is appropriate because all of their purported injuries "stem[] from a transactional occurrence that emanated from the State of Florida," Compl. ¶ 221(b).  These admissions doom Plaintiffs' opportunistic effort to evade Florida law.

In any event, the choice-of-law dispute is academic because Plaintiffs fail to plead claims against Fenwick under either Florida or California law.  Florida law is clear that "as long as an attorney's conduct falls within the scope of his representation, the attorney is immune from allegations of" conspiracy or aiding and abetting, *Farese v. Scherer*, 342 F.3d 1223, 1231 (11th Cir. 2003), and under California law, a conspiracy or aiding-and-abetting claim will not lie against an alleged participant if the participant "was acting only as the agent or employee of the party who did have [a] duty," *Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39, 44 (1989).  Plaintiffs maintain that these rules do not apply where an attorney "agrees to assist" a client's tort, but even if that were true (it is not), Plaintiffs must distort the Complaint's allegations to identify any such agreement.

Tellingly, Plaintiffs cite only two *facts* alleged in the Complaint to support the proposition that Fenwick agreed to assist FTX in its conspiracy—that (1) Fenwick "helped construct entities

. . . that enabled FTX to misappropriate customer funds," Opp. at 30 (citing Compl. ¶¶ 200–02, 204–10, 264), and (2) "when Dan Friedberg . . . asked Fenwick what public disclosures would 'likely be required with respect to the intercompany relationships between Alameda Group and FTX,' Fenwick acknowledged that the disclosures 'could be very problematic given that this'd likely draw in all of our intercompanies,'" *id.* (citing Compl. ¶ 209). But these allegations hardly establish that Fenwick agreed to assist FTX in violating the law. For example, while the Complaint alleges that FTX directed Fenwick to "form[]" North Dimension "[o]n August 25, 2020," it was not until "April 2021, after a bank opened accounts for North Dimension," that North Dimension "received tens of millions of dollars in customer funds from FTX.com." Compl. ¶ 206. Similarly, the email exchange cited by Plaintiffs does not show that Fenwick agreed to assist any tort. On the contrary, Fenwick simply explained that "we'll need to disclose . . . the material terms of related party transactions," Compl. ¶ 209—not the advice one would expect from a coconspirator.

Given their eagerness to depart from the allegations in the Complaint, it should come as no surprise that Plaintiffs conclude their Opposition by seeking leave to amend. But while Plaintiffs pin this request on the hope that Bankman-Fried's criminal trial would reveal new evidence of Fenwick's complicity, that trial has long concluded. And far from supporting Plaintiffs' claims, the evidence at that trial showed that the FTX Insiders were the *only* people aware of the fraudulent scheme. As a result, the Court should dismiss Plaintiffs' claims against Fenwick with prejudice.

## II.  ARGUMENTS AND AUTHORITIES

### A.  <u>Florida Law Governs Plaintiffs' Common Law Claims.</u>

Florida's choice-of-law rules govern Plaintiffs' claims in both the *O'Keefe* and *Cabo* cases because Plaintiffs filed a master, superseding complaint in the Southern District of Florida. Under Florida choice-of-law rules, Florida substantive law applies. And even if California's choice-of-law rules governed the claims in *Cabo* (they do not), Florida substantive law would still apply.

### 1.    *Florida's Choice-of-Law Rules Apply.*

A "district court exercising diversity jurisdiction generally applies the law of the forum state, including choice of law rules." *James River Ins. Co. v. Med Waste Mgmt., LLC*, 46 F. Supp. 3d 1350, 1355 (S.D. Fla. 2014).  Here, that is Florida.  Plaintiffs attempt to invoke an exception which holds that "'in multidistrict litigation, the transferee court usually must follow the choice-of-law rules of the forum state *of each transferor court*.'"  Opp. at 3 (quoting *In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1179 (S.D. Fla. 2022)).  Thus, although Plaintiffs concede Florida's choice-of-law rules apply to *O'Keefe*, which "was transferred from the Southern District of Florida," they contend California's choice-of-law rules apply to *Cabo*, which was transferred from the Northern District of California.  *Id.* at 4.  Not so.

Even if the transferor court's choice-of-law rules "usually" apply in MDLs, they do not *always* apply, and this case is one where they do not.  In the sentence following the one quoted by Plaintiffs, which Plaintiffs omit, the court qualified its rule:  "But parties to multidistrict litigation may consent to filing a 'master complaint' that supersedes the previously filed individual pleadings and merges the transferred actions until pretrial proceedings have concluded.  When parties consent to filing a superseding master complaint, the transferee court becomes the forum court, and the choice-of-law rules of the transferee court's forum state apply."  *In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d at 1179.  This qualification stems from *Gelboim v. Bank of America Corp.*, 574 U.S. 405 (2015), which observed that "[p]arties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersedes prior individual pleadings," in which case "the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL proceedings."  *Id.* at 413 n.3.

The Complaint here is just such a "master complaint" that "supersedes" the *O'Keefe* and *Cabo* complaints. The key factor in determining whether a complaint filed in an MDL supersedes prior complaints is whether it is intended to have "legal effect" or, alternatively, to provide a mere "summary" of the operative complaints. *Id.* In making this determination, "relevant signals include (1) how the plaintiffs labeled the new complaint, (2) whether the plaintiffs served the defendants with the new complaint instead of the original pleadings, (3) whether key deadlines were set in relation to the new complaint, (4) whether the court entertained motions to dismiss the consolidated complaint, and (5) whether the parties and the court looked solely to the allegations in the consolidated complaint when arguing and deciding such motions." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 490 (7th Cir. 2020).

Here, these considerations support treating the Complaint as superseding those originally filed in *O'Keefe* and *Cabo*:

- Plaintiffs describe the Complaint "as the controlling document for pre-trial purposes, including Rule 12(b)(6)." Compl. at 4.

- Plaintiffs described the Complaint as an "amended consolidated complaint" in the Court's status conference, Hr'g Tr. (6/21/23) at 7:6-8, 7:20-21, and the Court's initial scheduling and case management order described the Complaint as an "amended complaint[]," Dkt. 61 at 4; *see Bell*, 982 F.3d at 491 ("The plaintiffs did not fashion this set of complaints as mere administrative summaries. Rather, they filed them as 'amended consolidated' complaints.").

- Deadlines were set based on the filing of the Complaint. Dkt. 61 at 4; Dkt. 152; *see In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 591 (6th Cir. 2013) ("The court fixed the deadline for the defendants to answer by looking at the date of the master complaint's filing.").

- The Court is considering motions to dismiss the Complaint, rather than the respective *O'Keefe* and *Cabo* complaints. *See* Mot. at 1.

- Plaintiffs cite only the Complaint in their briefing, as does Fenwick.

Plaintiffs argue that they "have not waived the right to have the law of the transferor forum apply to *Cabo*." Opp. at 4 n.1 (citing Compl. at 4). But the *only* thing the Complaint reserves is

the right to *return* the actions to the transferor courts after pretrial proceedings conclude. Compl. at 4 ("Plaintiffs are not otherwise joining or merging these actions, which retain their individual nature for all other purposes, including transferor forum, personal jurisdiction, and subject matter jurisdiction."). This is a far cry from the type of reservation that has been found to preclude treating a complaint as superseding. *See In re Zantac (Rantidine) Prods. Liability Litig.*, 2023 WL 2325536, at *26 (S.D. Fla. Mar. 2, 2023) (stating that the complaint "does not necessarily include all claims asserted in all of the transferred actions" and "[e]ach Plaintiff in this MDL will adopt the [complaint] and specific causes of action alleged herein against specific Defendants through a separate Short Form Complaint"). And as Plaintiffs recently confirmed, "the California suits . . . were simply brought to grant this Court the same general jurisdictional basis that the California district courts would have over these Defendants." Dkt. 390 at 4.

Not only have Plaintiffs failed to reserve the right to rely on the earlier complaints, the Complaint evinces Plaintiffs' intent to move on from the *O'Keefe* and *Cabo* complaints by materially changing the substance and scope of those pleadings. The *O'Keefe* complaint comprised 214 paragraphs and the *Cabo* complaint comprised 268; the Complaint here is 311 paragraphs. The *O'Keefe* complaint asserted four causes of action; the Complaint here asserts eight causes of action, including a federal RICO claim. And the Complaint adds *eleven* named Plaintiffs that were not identified in either the *O'Keefe* or *Cabo* complaints, including Brandon Orr, Michael Livieratos, Alexander Chernyavsky, Gregg Podalsky, Chukwudozie Ezeokoli, Michael Norris, Edwin Garrison, Shengyun Huang, Julie Papadakis, Vitor Vozza, and Sunil Kavuri. These facts show that Plaintiffs intended the Complaint to supersede the *O'Keefe* and *Cabo* complaints. *See In re Takata Airbag Prods. Liability Litig.*, 379 F. Supp. 3d 1333, 1340–41 (S.D. Fla. May 3, 2019) (finding that "Direct File Complaints" superseded original "Transferor

Complaints" where "the Direct File Complaints significantly amend the Transferor Complaints" by "add[ing] numerous new plaintiffs asserting a myriad of new claims for the first time").

Because the Complaint supersedes the *O'Keefe* and *Cabo* complaints, Florida's choice-of-law rules govern.

### 2. Florida's Choice-of-Law Rules Compel Application of Florida Substantive Law.

"Florida resolves conflict-of-law questions according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Relevant factors include (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2).

These factors leave no doubt that Florida has the most significant relationship to this case.[1] The Complaint centers the alleged conduct in Florida. Plaintiffs allege that "[t]he primary conduct at issue in these actions admittedly emanated from the Southern District of Florida." MDL No. 3076, Dkt. 1-1 at 17; *see also* Compl. ¶ 221(b) ("[A]ll offers of the FTX Platform, YBAs and/or FTT to Plaintiffs and the Class Members (in which MDL Defendants each materially assisted, substantially participated, and/or personally participated) were made by FTX from their principal place of business in Miami, Florida, and thus every single offer . . . stems from a

---

[1]   Because named Plaintiffs sustained their alleged injuries in a variety of jurisdictions, *see* Compl. ¶¶ 16–31, the place where the underlying conduct occurred takes precedence over the place of injury, *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, 2015 WL 3905018, at *13 (S.D. Fla. June 25, 2015). For similar reasons, the parties' domicile or residence is not accorded significant weight. *See* Restatement (Second) of Conflict of Laws § 145, cmt. e.

transactional occurrence that emanated from the State of Florida.").  Because Plaintiffs had no direct relationship with Fenwick, any relationship between the parties was necessarily centered in Florida, where the Complaint alleges FTX—the only link between Plaintiffs and Fenwick—had its principal place of business and implemented Fenwick's advice.

Plaintiffs attempt to sidestep their own allegations by focusing solely on Fenwick's location and ignoring the underlying scheme perpetrated by Bankman-Fried in Florida.  *See* Opp. at 7 ("Fenwick's misconduct emanated from California, where the law firm is headquartered and has half of its U.S. offices[.]"); *id.* ("[T]he misconduct here—the advice and counsel by Fenwick lawyers—occurred in California.").  But for purposes of aiding-and-abetting and conspiracy claims, Fenwick's alleged liability cannot be divorced from FTX's conduct.  *See In re Enron Corp. Secs., Derivative & 'ERISA' Litig.*, 511 F. Supp. 2d 742, 793 (S.D. Tex. 2005) ("Because a civil action for aiding and abetting cannot exist independently but must be based upon a valid underlying cause of action, the Court considers both the place of the aiding and abetting and the place where the misrepresentations were made to CRRA as places where the tort took place.").  In *Chunhong Jia v. Boardwalk Fresh Burger & Fries, Inc.*, 2021 WL 3493313 (M.D. Fla. Aug. 9, 2021), for example, the court found that Ohio had the most significant relationship to claims for aiding and abetting breach of fiduciary duty and aiding and abetting constructive fraud because, although "[t]he Boardwalk Defendants' corporate activities would have arisen out of Maryland," the "parties' relationship [wa]s centered in Ohio because the partnership giving rise to the Boardwalk Defendants' purported duties is an Ohio partnership and Ohio is where the restaurants were initially set out to be built."  *Id.* at *7.

Plaintiffs asserted before the JPML that "FTX's alleged fraudulent and deceptive business practices *trigger the entire litigation* and, to some extent at least, *condition the various plaintiffs'*

*right to recover in all the actions*." MDL No. 3076, Dkt. 21 at 3 (emphases added). For this reason, Plaintiffs maintained that "despite multiple Defendants and theories, *FTX is the common nexus amongst all cases*[.]" *Id.* at 8 (emphasis added).[2]

Plaintiffs do not cite a single case that has looked solely to the place where an alleged conspirator or aider-and-abettor was located, to the exclusion of the place where the conspiracy was actually put into effect. And while they claim support from two cases cited by Fenwick, both of those cases make clear that the critical inquiry is where the underlying misconduct was centered—not just where an alleged aider-and-abettor was located.

In *In re Estrategias en Valores, S.A.*, 628 B.R. 722 (Bankr. S.D. Fla. 2021), the representative of a bankrupt Colombian entity sued Deutsche Bank for, among other things, aiding and abetting the entity's Ponzi scheme by investing $25 million without due diligence. *Id.* at 726–27. In holding that Colombian law applied, the court focused on the entity's conduct, explaining that "Estraval was incorporated under Colombian law and had done business in Colombia for 16 years before it was forced into liquidation," that "the company had perpetrated a financial fraud on the Colombian public," and that it had "manipulated and falsified *libranzas*, which were Colombian negotiable instruments taken out by Colombian pensioners and Colombian government employees." *Id.* at 735. Although the court also observed that "'Deutsche Bank had invested in Colombia,'" Opp. at 7 (quoting *In re Estrategias*, 628 B.R. at 735), that was its only mention of the alleged aider-and-abettor in its choice-of-law analysis.

*Amegy Bank National Association v. DB Private Wealth Mortgage, Ltd.*, 2014 WL 791503

---

[2]   Plaintiffs suggest "California has the most significant interest in governing the conduct of its licensed attorneys." Opp. at 6. That is not relevant in a tort case. *See In re Telexfree Secs. Litig.*, 652 F. Supp. 3d 233, 235 (D. Mass. 2023) (distinguishing malpractice claims from aiding-and-abetting claims for choice-of-law purposes because "[t]he focus of [an aiding-and-abetting] claim is not on defendant's status of an attorney, but his conduct allegedly aiding and abetting fraud").

(M.D. Fla. Feb. 24, 2014), likewise focused on the underlying scheme, rather than the location of the alleged aider-and-abettor.  There, Amegy made a loan to Johnson secured by shares in a partnership.  *Id.* at *1.  Johnson sold those shares to pay debts owed to Deutsche Bank entities.  *Id.* at *2–3.  Amegy sued the Deutsche Bank entities, asserting a direct claim for conversion and derivative claims for aiding and abetting and conspiracy.  *Id.* at *5.  The Court found that Georgia had the most significant relationship because, among other things, "Johnson, even though not a party in this matter, also sold the Host Stock in Georgia."  *Id.* at *5.  Although the court considered the Deutsche Bank entities' conduct, this conduct was clearly relevant to Amegy's direct claim for conversion.  *See, e.g.*, *id.* at *5 ("Deutsche Bank obtained the Host Stock certificate in Georgia.").  In any event, *Amegy* refutes Plaintiffs' claim that FTX's conduct in Florida can be ignored.

As a result, the Court should apply Florida law to *O'Keefe* and *Cabo*.  At a minimum, it should apply Florida law to *O'Keefe*, which was originally filed in the Southern District of Florida.

### 3. Even if California's Choice-of-Law Rules Apply to Cabo, They Likewise Compel Application of Florida Substantive Law.

Although Plaintiffs insist that California's choice-of-law rules govern in the later-filed *Cabo* action, they never apply those rules to the facts presented here.  Instead, Plaintiffs simply assert that Fenwick has waived any argument that Florida law applies by "not even cit[ing] the governing 'governmental interest test,' much less attempt[ing] to prove why it displaces California law."  Opp. at 4.  But Plaintiffs are mistaken about who bears the burden in a putative class action.

Generally, "the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state."  *Washington Mutual Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 919 (2001).  But this rule does not apply in the class action context.  Instead, "[u]nder California's choice of law rules, the *class action proponent* (here, Plaintiffs) bears the initial burden to show that application of California law is constitutional on the basis that California has 'significant

contact or significant aggregation of contacts' to the claims of each class member." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067–68 (9th Cir. 2021).  Only after "'the class action proponent makes this showing, [does] the burden shift[] to the other side to demonstrate that foreign law, rather than California law, should apply to class claims.'"  *Id.* at 1068.

Here, Plaintiffs make no effort to establish California's contacts with the putative class members and their claims, Compl. ¶ 221, even though the named Plaintiffs themselves hail from such far-flung places as Germany and Brazil, *id.* ¶¶ 16–31.  Plaintiffs therefore fail to carry their initial burden, and Fenwick has no obligation to address California's governmental interest test.

B.  **Plaintiffs Fail to State a Claim Under Florida Law.**

Plaintiffs fail to state a claim under Florida law because they do not allege Fenwick performed work outside the scope of its representation and do not allege elements of their claims.

1.  ***Plaintiffs Fail to State a Claim for Conspiracy or Aiding-and-Abetting Liability Because They Do Not Allege Fenwick Performed Work Outside the Scope of Its Representation of FTX (Counts 1–8).***

Florida law is clear:  "[A]s long as an attorney's conduct falls within the scope of his representation, the attorney is immune from allegations of" conspiracy.  *Farese*, 342 F.3d at 1231 (citing *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999)); *see also Chance v. Cook*, 50 F.4th 48, 51 (11th Cir. 2022); *Miller v. Harden*, 2006 WL 5083825, at *6 (M.D. Fla. Sept. 7, 2006). Although Plaintiffs claim that this "is wrong under Florida law," Opp. at 29, the lone case they cite says otherwise.  In *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404 (Fla. 2d DCA 2022), the Second District Court of Appeals acknowledged that courts "have refused to extend civil conspiracy liability to attorneys, relying on the 'intracorporate conspiracy' doctrine and the premise that the attorney was merely acting as an agent of his or her client within the scope of legal representation."  *Id.* at 413.  The *Logan* court found that the plaintiff had properly alleged aiding-and-abetting and conspiracy claims against a law firm only because the "allegations plainly

establish (and later events undeniably confirmed) that [the defendant] was *not* acting within the scope of legitimate legal representation." *Id.* at 414 (emphasis in original).

According to Plaintiffs, they—like the plaintiff in *Logan*—have alleged that Fenwick performed work outside the scope of its representation because "'agree[ing] to assist'" a client's tort "'plainly falls outside the scope of legitimate legal representation.'"  Opp. at 30 (quoting *Logan*, 350 So. 3d at 413).  But the court's holding in *Logan* was expressly "limited" to the facts presented; indeed, the court reiterated that "extreme caution should be exercised when an attempt is made to hold an attorney liable for a wrong committed by his client by way of a civil conspiracy cause of action." 350 So. 3d at 414.  And the facts presented here are a far cry from those in *Logan*.

*Logan* involved a law firm that allegedly conspired with some of its client's executives to deceive the client itself—conduct that clearly exceeds the scope of representation.  As the court explained, BDO had been "marketing an 'investment strategy' directed toward high-income individuals." 350 So. 3d at 407.  The "executives in charge of BDO's 'Tax Solutions' group . . . knew that their strategy was likely illegal," but they "had considerable incentive to keep the scheme going for as long as possible because they each received ten percent (collectively thirty percent) of the Tax Solutions group's significant profits." *Id.* at 408.  These executives "believed that if they could obtain an opinion from a major law firm giving BDO a 'clean bill of health' and downplaying the risk of illegality, they could quash the growing concern among others within BDO about potential criminal exposure." *Id.*  With this end in mind, "the tax executives turned in part to Morgan Lewis," which complied.  *Id.*  "Now able to tell their other BDO partners and BDO's board that a major law firm had concluded that BDO had nothing to worry about, the tax executives . . . successfully encouraged BDO to continue marketing and implementing the investment strategy." *Id.*  The plaintiff alleged that "if Morgan Lewis had not provided the tax

executives with a false, whitewashed assessment of its scheme, 'BDO's board would have shut down BDO's tax solutions practice.'" *Id.* at 410.

Far from suggesting that Fenwick deceived or misled FTX, Plaintiffs allege that all of Fenwick's conduct was performed at FTX's direction and was then used by FTX to further its own illegal ends. *See, e.g.*, Compl. ¶ 212 ("With the help of Fenwick, FTX was able to leverage these three licenses in subsequent applications to the CFTC and other regulators."); *id.* ¶ 216 ("Fenwick helped FTX US to develop 'compliance' procedures designed to skirt FTX's regulatory obligations and/or conceal its noncompliance therewith."). This alone distinguishes *Logan*.

The immunity provided attorneys when they perform work within the scope of their representation is grounded in "[t]he right of a litigant to independent and zealous counsel," which is "at the heart of our adversary system and, indeed, invokes constitutional concerns." *Farese*, 342 F.3d at 1231. If simply *alleging* that an attorney agreed to assist a client's tort were sufficient to withstand a motion to dismiss and proceed to discovery, this "would most certainly have a chilling effect upon the zealous advocacy we expect out of lawyers." *Chance*, 50 F.4th at 51. The Court should therefore dismiss Plaintiffs' claims against Fenwick on this ground alone.

## 2. Plaintiffs Fail to Plausibly Allege Essential Elements of Their Aiding-and-Abetting Claims (Counts 2–7).

Even if Plaintiffs had alleged that Fenwick performed work outside the scope of its representation of FTX, their aiding-and-abetting claims still fail because Plaintiffs do not adequately allege actual knowledge, substantial assistance, and proximate cause.

***Actual Knowledge.*** Although "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff must still "accompany [] general allegation[s] with allegations of *specific facts* giving rise to a *strong inference* of actual knowledge regarding the underlying fraud," *Metrocity Holdings, LLC v. Bank of Am., N.A.*, 2023

WL 6064516, at *9 (S.D. Fla. Sept. 18, 2023) (emphases added). "Conclusory statements that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant 'should have known that something was amiss.'" *Id.* As such, red flags and mere suspicions are not sufficient to establish actual knowledge. *See Platinum Estates, Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *4–5 (S.D. Fla. Mar. 8, 2012).

Plaintiffs attempt to brush aside this authority on the ground that it is "mostly unpublished" and arose from cases "regarding the liability *of banks* for Ponzi schemes." Opp. at 32. But Plaintiffs do not dispute the underlying principle—that actual knowledge requires something more than allegations that a defendant *should have known* of the underlying violation. Instead, Plaintiffs insist that "[t]he allegations in the Complaint go well beyond 'unusual trends' that Fenwick 'should have recognized as suspicious.'" *Id.* They do not.

Plaintiffs contend that "[t]he Complaint supports the assertion that 'Fenwick learned that the FTX entities were . . . acting inconsistently with their representations to customers, and even misappropriating customer funds,' [by] referencing specific documents, communications, and work experience that informed Fenwick." Opp. at 13. But those "documents, communications, and work experience[s]" at most support an inference that Fenwick knew of FTX's *duty* to customers; they do not support a "strong inference" that Fenwick knew of FTX's *breach*. For example, Plaintiffs state that "Fenwick 'helped to create accounts and entities where and through which misappropriated customer funds were diverted, and drafted intracompany loans or other related party agreements, guarantees, and promissory notes,' that facilitated those transfers," *id.*, but those are routine legal services law firms provide to their clients, and Plaintiffs do not allege that Fenwick knew these services were being misused. Rather, Plaintiffs' allegations, taken together, establish only that Fenwick (1) provided legal services to FTX, (2) maintained "close

ties" to former Fenwick attorneys, and (3) communicated with FTX executives regarding their legal services. *See* Compl. ¶¶ 199, 203, 208. At most, these allegations "only suggest that [Fenwick] '*should have known* that something was amiss.'" *Metrocity*, 2023 WL 6064516, at *9. But this is not enough to plead actual knowledge. *Id.*

      ***Substantial assistance.*** Plaintiffs agree that substantial assistance requires that "a defendant affirmatively assists, helps conceal[,] or fails to act when required to do so, thereby enabling the breach to occur." Opp. at 33. But despite Plaintiffs' attempts to dramatize Fenwick's role in the scheme, their allegations boil down to one thing: Fenwick's provision of routine legal services. *See, e.g.*, Opp. at 16 (noting Fenwick's "provi[sion] [of] legal assistance," "formation and management of [various] entities," advising on "regulatory obligations," and drafting disclosures). As discussed above, *see supra*, Section B.1, courts have repeatedly rejected such conduct as a basis for aiding-and-abetting liability against lawyers.

      Plaintiffs point to *Grape Leaf Capital, Inc. v. Lafontant*, 316 So. 3d 760 (Fla. 3d DCA 2021), for the proposition that substantial assistance occurs where an "attorney 'facilitat[es]' improper transfers of funds held for the benefit of one, to another." Opp. at 33. But that case did not involve an attorney who created a legal entity that his client independently *used* to funnel funds to himself, as Plaintiffs allege here. Rather, the attorney in that case *himself* distributed "settlement proceeds from the wrongful death defendant's insurance carrier to [his client] directly instead of arranging for the proceeds to be deposited into the 'restricted depository account' designated by the court in [a] separate probate proceeding." 316 So. 3d at 761. Plaintiffs' remaining cases are similarly unavailing, as none involved lawyers or law firms. *See* Opp. at 18.

      ***Proximate Cause.*** In evaluating proximate cause, courts look to whether the injury in question was a foreseeable consequence of the danger created by a defendant's act. *Ruiz v. Tenet*

*Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 981–82 (Fla. 2018).  Here, "Plaintiffs' theory of causation is that Fenwick provided key services to the FTX entities that 'permitted the scheme to grow in scale and persist in duration,' such that Fenwick was a 'substantial factor' in causing Plaintiffs to lose their money."  Opp. at 20.  But Fenwick could not have reasonably foreseen that its routine legal services, such as the formation of companies and the provision of legal advice regarding disclosure requirements, would result in one of the largest consumer frauds in history.

Read together, the allegations in the Complaint establish, at most, that FTX and Bankman-Fried, unbeknownst to Fenwick, leveraged Fenwick's legal services to defraud customers, which in turn caused Plaintiffs' harm.  This falls far short of plausibly alleging proximate causation.

## C. <u>Plaintiffs Also Fail to State a Claim Under California Law.</u>

Even if California law applied, Plaintiffs still fail to state a claim.  *First*, Plaintiffs do not allege Fenwick was acting as anything other than FTX's agent when it performed the work at issue here.  *Second*, Plaintiffs do not plausibly allege essential elements of their claims.

### 1. *Plaintiffs Fail to State a Claim for Conspiracy or Aiding-and-Abetting Liability Because They Do Not Allege Fenwick Performed Work Outside Its Official Capacity on Behalf of FTX (Counts 1–8).*

California's "agent's immunity rule" provides that "[a] cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty."  *Doctors' Co.*, 49 Cal. 3d at 44.  This rule rests on the premise that "[w]hen a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the employee can conspire."  *Black v. Bank of America*, 30 Cal. App. 4th 1, 6 (1994).  Because aiding-and-abetting claims rest on the same theory of concerted action, courts have "appl[ied] the

agent's immunity rule to aiding and abetting claims." *American General Life Ins. Co. v. Fernandez*, 2012 WL 5267703, at *5 (C.D. Cal. Oct. 24, 2012).[3]

Although Plaintiffs claim that providing advice that somehow assists a client's tort "plainly falls outside the scope of legitimate legal representation," Opp. at 30, that does not mean that it falls outside the scope of the attorney's *agency*. On the contrary, it is well recognized that an agent's authority can encompass the commission of tortious acts. *See* Restatement (Third) of Agency § 7.04 ("A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and . . . the agent's conduct is tortious."). The Complaint's allegations make clear that all of Fenwick's services were rendered at its client's request.

There are "two settings in which a conspiracy claim might lie against an attorney for participating in the violation of a duty owed by the client to another." *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 817 (2005). Neither is present here.

*First*, a conspiracy or aiding-and-abetting claim will lie "where the attorney violates a duty that he or she independently owes to the plaintiff." *Id.* This was the case in *Barney v. Aetna Casualty & Surety Co.*, 185 Cal. App. 3d 966 (1986), in which the plaintiff alleged that his insurer-provided attorney conspired with his insurer to settle claims unfavorably to him. *Id.* As the court

---

[3]   The cases cited by Plaintiffs hold only that "'[o]rdinary business transactions . . . can satisfy the *substantial assistance element* of an aiding and abetting claim if the [defendant] actually knew those transactions were assisting the customer in committing a specific tort.'" Opp. at 8 (emphasis added). That has nothing to do with the distinct question presented here—namely, whether there is a separate entity with whom the employee can conspire. Moreover, Plaintiffs' primary case—*Casey v. U.S. Bank National Association*, 127 Cal. App. 4th 1138 (2005)—involved claims against a bank, not an attorney. *Id.* at 1141; *see also Abrams v. McGuireWoods LLP*, 518 B.R. 491, 504 (Bankr. N.D. Ind. 2014). And *Hunter v. Citibank, N.A.*, 2011 WL 7483457 (N.D. Cal. June 16, 2011), merely declined to reconsider an order denying an attorney's motion for summary judgment where the attorney did not "present any case under California law . . . asserting the principle that attorneys should be so excepted" from *Casey*'s rule. *Id.* at *2.

explained, the conspiracy claims could proceed because "the settlement clearly violated the attorney's own fiduciary duty to the insured plaintiff." *Doctors' Co.*, 49 Cal. 3d at 47. But here, the Complaint alleges that only FTX had any duty to Plaintiffs. *See, e.g.*, Compl. ¶ 259 ("FTX US owed a duty to its customers to act with reasonable care"); *id.* ¶ 276 ("FTX US owed fiduciary duties to Class Members, including duties of care and loyalty.").

*Second*, a conspiracy or aiding-and-abetting claim will lie "where the attorney's acts go beyond the performance of a professional duty owed to the client and are, in addition, done for his or her own personal financial gain." *Berg & Berg*, 131 Cal. App. 4th at 817–18. Crucially, however, "California courts uniformly hold that ordinary fees, even fees calculated on the amount of assets held in an account, do not satisfy the 'personal gain or financial advantage' requirement." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1122 (C.D. Cal. 2003). Rather, "'in furtherance of the attorney's financial gain' . . . means that through the conspiracy, the attorney derived economic advantage over and above monetary compensation received in exchange for professional services actually rendered on behalf of a client." *Berg & Berg*, 131 Cal. App. 4th at 836. This was the case in *Black v. Sullivan*, 48 Cal. App. 3d 557 (1975), in which trust beneficiaries' attorneys "had taken assignments of the beneficiaries' interests as security for loans and for past and future attorney's fees," and the trust's assets "had increased in value" during the time in question. *Doctors' Co.*, 49 Cal. 3d at 46–47. But here, Plaintiffs do not allege that Fenwick received more than ordinary fees for the work it performed for FTX. *See, e.g.*, Compl. ¶ 306 ("[I]n exchange for Fenwick's counsel in these matters, FTX paid Fenwick significant fees.").

## 2. *Plaintiffs Fail to Plausibly Allege Essential Elements of Their Aiding-and-Abetting Claims (Counts 2–7).*

Even if Fenwick does not fall within the agent's immunity rule, Plaintiffs' aiding-and-abetting claims should still be dismissed for failure to plead essential elements of those claims. As

discussed above, Plaintiffs fail to allege *facts* giving rise to a plausible inference that Fenwick actually knew of FTX's alleged misconduct, substantially assisted that conduct, and proximately caused Plaintiffs' injuries. *See supra*, Section B.2. Those same elements are required under California law. *See Alch v. Super. Ct.*, 122 Cal. App. 4th 339, 357 (2004) ("[T]he basic elements of viable aiding and abetting claims [are] the identity of the aider and abettor, knowledge that the primary violator's conduct constituted a breach of duty, and the manner in which the named employer or agency assisted in or encouraged the predicate violation.").

> **D.    Plaintiffs Fail to State a RICO Claim Under Federal Law.**

The Opposition does nothing to cure the two fatal deficiencies in Plaintiffs' RICO claim.

*First*, Plaintiffs fail to adequately allege that Fenwick agreed to participate in a RICO enterprise. Even in their Opposition, Plaintiffs muster only conclusory assertions arising from, at most, Fenwick's provision of routine legal services. *See, e.g.*, Opp. at 24 ("'Fenwick facilitated the scheme to defraud and RICO enterprise by agreeing to provide and providing legal services.'"). The two *facts* alleged—Fenwick's "creat[ion] of the North Dimension entities" and its email exchange with Friedberg, *id.* at 25—are inadequate for the reasons outlined above. *See supra* at 1–2. And while Plaintiffs allege that Fenwick "played an affirmative role in the concealment of the FTX scheme," Opp. at 25 (citing Compl. ¶¶ 3, 40, 277, 285), none of Plaintiffs' citations even mentions Fenwick; rather, they relate solely to actions taken by FTX and Bankman-Fried.

Plaintiffs' contention that it is necessary only that the allegations, "read in their totality, clearly suggest that such an agreement was made," Opp. at 26, is not supported by their cases. In *In re Sahlen & Associates, Inc. Securities Litigation*, 773 F. Supp. 342 (S.D. Fla. 1991), the court stated that "[c]onclusory allegations or a 'bare bones' statement of conspiracy will not survive a motion to dismiss." *Id.* at 370 (cleaned up). While *Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.*, 502 F. Supp. 2d 1237 (S.D. Fla. 2009), noted that a conspiracy can be inferred

based on the parties' behavior, *id.* at 1254–55, Plaintiffs' allegations still fall short of this threshold. Last, Plaintiffs point to *In re Managed Care Litigation*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003), to suggest that routine business practices may be probative of conspiracy, Opp. at 26–27, but that case involved a RICO claim against insurance companies, not law firms providing legal services.

      *Second*, Plaintiffs fail to allege a RICO enterprise because the alleged participants comprised only "a corporate defendant and its agents or employees acting within the scope of their roles for the corporation." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020). Plaintiffs dispute this, asserting that "[t]he RICO enterprise alleged was between *several* individuals and the 'FTX Group entities,' which is defined in the Complaint to include *several distinct* corporate entities, including FTX Trading LTD, West Realm Shires Inc., and Alameda Research, LLC." Opp. at 27 (citing Compl. at 5; *id.* ¶¶ 297, 299). But this is contrary to the Complaint's allegations. Plaintiffs allege that Bankman-Fried "operated FTX and Alameda as a common enterprise," with the two companies "shar[ing] offices . . . as well as key personnel and other resources critical to the companies' operations." Compl. ¶ 102. Moreover, though their Opposition asserts that "Caroline Ellison is never alleged to have been an agent of either FTX Trading or FTX US, and at all times worked for Alameda," Opp. at 27, Plaintiffs' Complaint specifically defined Ellison as an "FTX Insider Defendant." Compl. at 5; *id.* ¶ 165. And Plaintiffs' reliance on *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), for the proposition that "[a] RICO conspiracy is pleaded on these facts, notwithstanding that certain conspirators may have been FTX employees," Opp. at 27, was recently rejected by the Eleventh Circuit, *see Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1356 (11th Cir. 2016) (concluding that *Cedric Kushner* held only that "RICO's distinctiveness requirement is met where an individual defendant engages in a pattern of racketeering activity through a corporation," and does not address "the 'quite different' case,

arising in this case, where the defendant 'person' is a corporation").  Plaintiffs' RICO claim fails.

### E.     The Court Should Dismiss the Complaint With Prejudice.

"[A] court should deny leave to amend a pleading when, among other reasons, the amendment would be futile."  *Wise v. Cach, LLC*, 2010 WL 1257665, at *4 (S.D. Fla. Mar. 26, 2010).  An amendment may be futile where the plaintiff "fails to identify any new facts that might form the basis for stating a claim successfully."  *Baptiste v. Doe*, 2021 WL 6112976, at *2 (11th Cir. Dec. 27, 2021).  Although Plaintiffs insist they "can correct any deficiencies with additional facts regarding Fenwick's role in the FTX collapse, including by incorporating the various statements made by Sam Bankman-Fried during his ongoing criminal trial," Opp. at 35, they do not identify what those facts may be—even though that trial concluded before Plaintiffs filed their Opposition.  This is not surprising, as the judge in that case ruled that Bankman-Fried would not be allowed to discuss his purported reliance on counsel in almost all cases.  *See United States v. Bankman-Fried*, No. 22-cr-673 (S.D.N.Y.), Dkt. 305 at 9–10.  Meanwhile, the FTX Insiders' trial testimony established that (1) nobody but the FTX Insiders knew about the movement of customer funds; (2) the FTX Insiders executed their scheme through secret code hidden in the platform's software; and (3) even FTX's General Counsel did not know about the movement of customer funds until just days before the bankruptcy.  Thus, there is no basis to believe that allowing Plaintiffs leave to amend will be anything but futile.

### III.     CONCLUSION

This Court should dismiss the Complaint under Rule 12(b)(6) and 9(b) because Plaintiffs have failed to plausibly state any claim.  And because Plaintiffs are unable to amend their Complaint to state a valid claim for relief, the Court should dismiss the Complaint with prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2023, I electronically filed the foregoing with the Clerk of Court using CM/ECF, and that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

/s/Nicole K. Atkinson
DAVID R. ATKINSON
Florida Bar No.: 767239
datkinson@gunster.com
mmargolese@gunster.com
eservice@gunster.com
NICOLE K. ATKINSON
Florida Bar No.: 167150
natkinson@gunster.com
STEPHEN C. RICHMAN
Florida Bar No.: 1015692
srichman@gunster.com
jfirogenis@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
Brickell World Plaza
600 Brickell Avenue, Suite 3500
Miami, FL 33131
Tel: (305) 376-6000, (561) 655-1980
Fax: (305) 376-6010, (561) 655-5677

KEVIN S. ROSEN (*pro hac vice*)
krosen@gibsondunn.com
MICHAEL HOLECEK (*pro hac vice*)
mholecek@gibsondunn.com
SAMUEL ECKMAN (*pro hac vice*)
seckman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 229-7000
Fax: (213) 229-7520

*Counsel for Defendant Fenwick & West LLP*