**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

THIS DOCUMENT RELATES TO:

Domestic Investor Defendants

_____


**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**INVESTOR DEFENDANTS' MOTION TO DISMISS**
<u>**THE ADMINISTRATIVE CLASS ACTION COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION…………………………………………………………………………...   1

ARGUMENT…………………………………………………………………...........   1

I.   The Opposition Confirms Plaintiffs' Failure to Plausibly Allege that Investor
     Defendants Knew or Should Have Known of FTX's Fraud (All Counts).............   1

II.   Plaintiffs' Misrepresentation Claims Fail (Counts Six & Seven).........................   6

    A.   Plaintiffs Fail to Plead Actionable Misstatements .....................................   6

    B.   Plaintiffs Fail to Plead Actionable Omissions ...........................................   8

    C.   Plaintiffs Do Not Adequately Allege Intent to Defraud or Reliance ..........   8

    D.   Plaintiffs Do Not Adequately Allege Resulting Damages..........................   9

    E.   Plaintiffs' Negligent Misrepresentation Claim Fails .................................   10

III.   Plaintiffs Fail to Plead Investor Defendants Conspired with FTX or
      Aided Its Fraud ................................................................................................   10

    A.   Plaintiffs Fail to State Claims for Aiding and Abetting
           (Counts Ten & Eleven) ..............................................................................   10

    B.   Plaintiffs Fail to State a Conspiracy Claim (Count Nine).........................   12

IV.   Plaintiffs' Claims for Securities Violations Under California and
      Florida Law Fail...............................................................................................   14

    A.   Plaintiffs' Cal. Corp. Code § 25504.1 Claim Fails
           (Count Three)...........................................................................................   14

    B.   Plaintiffs Fail to State a Claim for Violation of the FSIPA
           (Count Five).............................................................................................   15

V.   Plaintiffs' Other State Statutory Claims Also Fail..............................................   16

    A.   Plaintiffs Cannot Allege Violations of California's UCL or FAL
           (Counts One & Two) ................................................................................   16

    B.   Plaintiffs' FDUTPA Claim Also Fails (Count Four)................................   18

VI.   Plaintiffs Fail to State a Basis for Declaratory Relief
      (Counts Twelve & Thirteen)..............................................................................   20

**Page**

CONCLUSION…………………………………………………………….........     20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**Cases**</u>

*Abdo v. Fitzsimmons*,
    2018 WL 11220494 (N.D. Cal. May 22, 2018).............................................................. 14

*Angell v. Allergan Sales, LLC*,
    2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ............................................................... 12

*Arthur Young & Co. v. Mariner Corp.*,
    630 So.2d 1199 (Fla. 4th Dist. Ct. App. 1994) ......................................................... 15, 16

*Avakian v. Wells Fargo Bank, N.A.*,
    827 F. App'x 765 (9th Cir. 2020) .................................................................................. 10

*Captain Jack's Crab Shack, Inc. v. Cooke*,
    2022 WL 4375364 (11th Cir. Sept. 22, 2022) ................................................................. 1

*Carvelli v. Ocwen Fin. Corp.*,
    934 F.3d 1307 (11th Cir. 2019) ...................................................................................... 7

*Chang v. JPMorgan Chase Bank, N.A.*,
    845 F.3d 1087 (11th Cir. 2017) ...................................................................................... 3

*Chang v. Wells Fargo Bank, N.A.*,
    2020 WL 1694360 (N.D. Cal. Apr. 7, 2020) .................................................................. 5

*Cheverez v. Plains All Am. Pipeline, LP*,
    2016 WL 4771883 (C.D. Cal. Mar. 4, 2016) ............................................................... 18

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
    77 F. Supp. 3d 887 (N.D. Cal. 2014) ............................................................................. 3

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ......................................................................... 17

*Coccaro v. Geico Gen. Ins. Co.*,
    648 F. App'x 876 (11th Cir. 2016) ............................................................................... 20

*Cork v. CC-Palo Alto, Inc.*,
    534 F. Supp. 3d 1156 (N.D. Cal. 2021) ......................................................................... 9

**Page(s)**

*Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*,
 87 F. Supp. 2d 1287 (S.D Fla. 2000) ............................................................... 20

*Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
 2008 WL 926513 (S.D. Fla. Mar. 31, 2008) .................................................... 11

*DCD Partners, LLC. v. Transamerica Life Ins. Co.*,
 2015 WL 5050513 (C.D. Cal. Aug. 24, 2015) .................................................. 10

*Dillon v. Axxsys Int'l, Inc.*,
 185 F. App'x 823 (11th Cir. 2006) ................................................................... 16

*Feng v. Walsh*,
 2020 WL 5822420 (S.D. Fla. Sept. 14, 2020) .................................................. 13

*Feng v. Walsh*,
 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021) ................................................... 20

*Frayman v. Douglas Elliman Realty, LLC*,
 LLC, 515 F. Supp. 3d 1262 (S.D. Fla. 2021) ................................................... 19

*Gavaldon v. StanChart Sec. Int'l, Inc.*,
 2019 WL 764031 (S.D. Cal. Feb. 20, 2019) ....................................................... 3

*Henry v. Tyler*,
 2020 WL 3574637 (N.D. Cal. July 1, 2020) ....................................................... 5

*Homyk v. ChemoCentryx, Inc.*,
 2023 WL 3579440 (N.D. Cal. Feb. 23, 2023) ..................................................... 4

*Honig v. Kornfeld*,
 339 F. Supp 3d 1323 (S.D. Fla. 2018) .............................................................. 13

*I.B. ex rel. Fife v. Facebook, Inc.*,
 905 F. Supp. 2d 989 (N.D. Cal. 2012) .............................................................. 20

*In re Adobe Sys., Inc. Priv. Litig.*,
 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .............................................................. 20

*In re Anthem, Inc. Data Breach Litig.*,
 162 F. Supp. 3d 953 (N.D. Cal. 2016) .............................................................. 17

*In re Autodesk, Inc. Sec. Litig.*,
 132 F. Supp. 2d 833 (N.D. Cal. 2000) ................................................................ 6

**Page(s)**

*In re BioMarin Pharm. Inc. Sec. Litig.*,
    2022 WL 164299 (N.D. Cal. Jan. 6, 2022) ............................................................ 4

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ........................................................................... 11

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
    224 So.3d 316 (Fla. Dist. Ct. App. 2017) ........................................................ 15

*Kennedy v. Wells Fargo Bank, N.A.*,
    2011 WL 5080166 (N.D. Cal. Oct. 25, 2011) .................................................. 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................. 17

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) .................................................................. 12

*LeGrand v. Abbott Labs*,
    655 F. Supp. 3d 871 (N.D. Cal. 2023) ............................................................ 3

*Levine v. Entrust Grp., Inc.*,
    2013 WL 1320498 (N.D. Cal. Apr. 1, 2013) .................................................. 4

*Lewis v. Mercedes-Benz USA, LLC*,
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) ...................................................... 18, 19

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ........................................................................... 8

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ........................................................................... 4

*Markowitz v. Diversified Lending Grp., Inc.*,
    2010 WL 11507662 (C.D. Cal. Feb. 26, 2010) .............................................. 14

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ......................................................................... 9

*Myers v. Provident Life and Accident Ins. Co.*,
    472 F. Supp. 3d 1149 (M.D. Fla. 2020) .......................................................... 6

*Neilson v. Union Bank of Cal.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................... 12

**Page(s)**

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
    32 F.4th 1298 (11th Cir. 2022) ................................................................. 6

*Oueiss v. Saud*,
    2022 WL 1311114 (S.D. Fla. Mar. 9, 2022)................................................. 13

*Perret v. Wyndham Vacation Resorts, Inc.*,
    846 F. Supp. 2d 1327 (S.D. Fla. 2012) ..................................................... 19

*Platinum Ests., Inc. v. TD Bank, N.A.*,
    2012 WL 760791 (S.D. Fla. Mar. 8, 2012)............................................ 11, 12

*Pruco Life Ins. Co. v. Brasner*,
    2011 WL 2669651 (S.D. Fla. July 7, 2011)................................................. 9

*Rattner v. 1809 Brickell LP*,
    2022 WL 4770402 (S.D. Fla. Aug. 23, 2022)............................................... 7

*Rosado v. eBay Inc.*,
    53 F. Supp. 3d 1256 (N.D. Cal. 2014) ...................................................... 20

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*,
    75 F.4th 232 (4th Cir. 2023) ..................................................................... 2

*Schwarz v. ThinkStrategy Cap. Mgmt. LLC*,
    797 F. Supp. 2d 439 (S.D.N.Y. 2011).......................................................... 3

*SEC v. Spartan Sec. Grp., LTD*,
    2019 WL 2372277 (M.D. Fla. June 5, 2019)............................................. 11

*Team Servs., Inc. v. Securitas Elec. Sec., Inc.*,
    2021 WL 9350987 (S.D. Fla. Aug. 9, 2021)............................................. 19

*Tippens v. Round Island Plantation L.L.C.*,
    2009 WL 2365347 (S.D. Fla. July 31, 2009)............................................ 13

*TransPetrol, Ltd. v. Radulovic*,
    764 So.2d 878 (Fla. Dist. Ct. App. 2000) ................................................... 8

*Tsavaris v. Pfizer, Inc.*,
    2016 WL 375008 (S.D. Fla. Feb. 1, 2016) .............................................. 9, 10

*United Motors Int'l, Inc. v. Hartwick*,
    2017 WL 888304 (C.D. Cal. Mar. 6, 2017)............................................... 13

**Page(s)**

*Wang v. Revere Cap. Mgmt., LLC*,
    2023 WL 2198570 (S.D. Fla. Feb. 15, 2023) ............................................................... 2

*Wiand v. Wells Fargo Bank, N.A.*,
    938 F. Supp. 2d 1238 (M.D. Fla. 2013).......................................................................... 13

*Williams v. Obstfeld*,
    314 F.3d 1270 (11th Cir. 2002) ...................................................................................... 15

**Rules and Statutes**

Cal. Corp. Code § 25504.1................................................................................................. 14

Fed. R. Civ. P. 9(b) .............................................................................................. 3, 6, 7, 10

Fla. Stat. § 501.204(1)....................................................................................................... 20

## INTRODUCTION

Plaintiffs' Opposition fails to address the central argument in Investor Defendants' Motion: Plaintiffs' entire case rests on the implausible theory that each Investor Defendant knew or should have known about FTX's fraud but still agreed to become investors in FTX, and ultimately lose, hundreds of millions of dollars.[1]  Plaintiffs' own pleadings contradict this theory by making clear that FTX misled Investor Defendants and concealed its fraud from them, and the government has now proven beyond a reasonable doubt that SBF defrauded FTX's investors.  *See* Jury Verdict, *United States v. Bankman-Fried*, No. 1:22-cr-00673 (Nov. 2, 2023).[2]  What is most telling about Plaintiffs' Opposition is that it does not dispute any of this.  Instead, Plaintiffs rely on generic allegations that improperly lump all Investor Defendants together to speculate about what Investor Defendants *might* have learned from due diligence or other interactions with FTX *if FTX were being truthful*.  The law is clear that this is not enough to satisfy Plaintiffs' pleading burden.  For that reason, and based on the many other fatal pleading defects identified in the Motion and below, the Court should dismiss the AC with prejudice.

## ARGUMENT

### I.   The Opposition Confirms Plaintiffs' Failure to Plausibly Allege that Investor Defendants Knew or Should Have Known of FTX's Fraud (All Counts)

Plaintiffs' theory is that Investor Defendants did something no rational actor would do: agree to invest (and lose) hundreds of millions of dollars in a business they knew to be a fraud.

---

[1]     Capitalized terms not defined here have the same meanings as in Investor Defs.' Mot. to Dismiss the Administrative Class Action Compl. and Incorporated Memorandum of Law, ECF No. 301 (Sept. 22, 2023) ("Mot.").  Plaintiffs' Opposition to Domestic VC Defs.' Mot. to Dismiss the Compl., ECF No. 371 (Nov. 6, 2023), is referred to as the "Opposition."

[2]     *See Captain Jack's Crab Shack, Inc. v. Cooke*, 2022 WL 4375364, at *1 n.1 (11th Cir. Sept. 22, 2022) (taking judicial notice of jury verdict, which is "not subject to reasonable dispute," and affirming district court's grant of motion to dismiss).

*See* Mot. 9-15.  Plaintiffs' own pleadings confirm the implausibility of that theory.  For example, the superseding indictment of SBF and the SEC complaint, which the AC incorporates by reference, allege the exact opposite—*i.e.*, that FTX misled Investor Defendants.  Plaintiffs do not dispute this because they cannot: the superseding indictment explicitly charges SBF with defrauding investors, including Investor Defendants, a charge that the government has now proven beyond a reasonable doubt.  *See id.* at 14 (citing Superseding Indictment ¶ 27).  Although Plaintiffs quote and cite the superseding indictment and SEC complaint extensively in the AC, the Opposition contains no references to either.  Plaintiffs' concession by silence is fatal to their claims.[3]  Nor are any of Plaintiffs' arguments in the Opposition availing.[4]

*First*, the Opposition relies heavily on speculation that Investor Defendants must have learned about FTX's fraud during due diligence.  *See* Opp'n 5-6, 14, 19.  But Plaintiffs do not identify a single specific piece of information that Investor Defendants allegedly learned during due diligence that should have alerted them to FTX's fraud.  The law is clear: allegations "[t]hat general due diligence occurred do[] not support the inference that Defendants learned any specific information" that their public statements were false.  *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 242 (4th Cir. 2023); *see also Wang v. Revere Cap. Mgmt., LLC*, 2023 WL 2198570, at *5 (S.D. Fla. Feb. 15, 2023) (same).  Several of Plaintiffs' own cases support

---

[3]     Plaintiffs wrongly accuse Investor Defendants of misstating the legal standard for knowledge, *see* Opp'n 18-19 & n.13, but the Motion is clear that each of Plaintiffs' claims requires at least an allegation that each Investor Defendant should have known of the alleged fraud, and some require actual knowledge, Mot. 9-10 & n.7.  In any event, the difference is immaterial because Plaintiffs have not pled and cannot plausibly plead facts to support an allegation that Investor Defendants either knew or should have known of FTX's fraud.

[4]     Plaintiffs speculate that Investor Defendants lost only their clients' money and not their own, Opp'n 2, but even this unsupported assertion does not make it any more plausible that Investor Defendants would have invested in FTX if they knew it to be a fraud particularly, since doing so would risk significant reputational harm in addition to economic losses.

this point because, unlike here, the plaintiffs in those cases had alleged specific facts to support a showing of knowledge. *See, e.g.*, *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 898 (N.D. Cal. 2014) (plaintiffs alleged defendants had access to specific customer complaints notifying them about product defect); *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (defendant's employee participated in misappropriation of funds).[5]

Plaintiffs' conjecture that a rigorous due diligence process would have uncovered FTX's fraud, Opp'n 19, is also contradicted by their own allegations that FTX went to great lengths to conceal its fraud. *See* Mot. 14 (citing, *e.g.*, AC ¶¶ 106-10, 119, 122, 124). For example, the Opposition argues that financial statements and balance sheets acquired in due diligence should have revealed FTX's fraud, *see* Opp'n 20, but the AC also alleges that the FTX balance sheet was "a total sham." AC ¶ 552; *see also id.* ¶ 119 (FTX "prepared certain quarterly balance sheets that concealed the extent of Alameda's borrowing"). Due diligence, no matter how "rigorous," could not uncover FTX's fraud if—as the pleadings allege and the recent SBF verdict confirms—Investor Defendants were lied to in response to their inquiries.[6]

Nor can Plaintiffs satisfy their burden by pointing to information that came to light *after* FTX's collapse. Opp'n 10, 19-20, 22-23 (citing articles from November 2022 and bankruptcy

---

[5]    Plaintiffs' other cases are even further afield. For example, *LeGrand v. Abbott Labs*, 2023 WL 1819159, at *13 (N.D. Cal. Feb. 8, 2023), is not about due diligence at all. *Gavaldon v. StanChart Sec. Int'l, Inc.*, 2019 WL 764031, at *7-8 (S.D. Cal. Feb. 20, 2019), merely granted leave to add a misrepresentation claim focused on due diligence, but that claim was later dismissed for failure to comply with Rule 9(b), 2020 WL 835311, at *6-10 (Feb. 20, 2020). And in *Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, 797 F. Supp. 2d 439, 444-45 (S.D.N.Y. 2011), the defendants made representations directly to the plaintiffs to persuade them to invest with the defendants.

[6]    Plaintiffs quote one Investor Defendant as stating, "We probably would have made the investment [in FTX] again." *See* Opp'n 2 (citing AC ¶ 567). That statement—read in context—only confirms that Investor Defendants relied on the information that FTX made available to them at the time, which, even in retrospect, did not reveal FTX's fraud.

reports from April and June 2023).  These hindsight allegations show nothing about what any Investor Defendant knew or should have known at the time of the alleged misstatements.[7]  *See, e.g.*, *Levine v. Entrust Grp., Inc.*, 2013 WL 1320498, at *5 (N.D. Cal. Apr. 1, 2013) (rejecting hindsight allegations).  Plaintiffs do not allege that any of the concerns identified in the bankruptcy reports were disclosed to Investor Defendants before they made any of the alleged misstatements, and any suggestion that the information should have been discovered during due diligence is refuted by Plaintiffs' own allegations that FTX concealed its fraud.  *See supra* Part I.  In any event, after-the-fact concerns raised in the bankruptcy reports about "corporate deficiencies" and lack of controls that Plaintiffs cite, *see, e.g.*, Opp'n 10-12, 23, at most show that FTX was a growing company that could improve certain internal practices, not that it was likely or actually committing fraud, much less one visible to Investor Defendants.[8]

*Second*, Plaintiffs' new argument that Investor Defendants knew of FTX's fraud because they "were suspicious" of Alameda and FTX's relationship, Opp'n 20-21, mischaracterizes the

---

[7]    Nor does one Investor Defendant's presence in FTX's "war room" while news of FTX's fraud was breaking indicate that the investor "already knew there was fraud." Opp'n 9. Plaintiffs themselves admit that, at that moment, the fraud was only "becoming clear" to Investor Defendants and the rest of the public. AC ¶ 432.

[8]    Plaintiffs' string-cite to cases about "withh[olding] important warning signs from the market," Opp'n 23, also misses the point.  The defendants in those cases were alleged to have withheld information about their own companies. *See Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 706-07, 710 (7th Cir. 2008) (defendants made false statements about "robust" demand for their products when they knew demand was sinking); *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 164299, at *14 (N.D. Cal. Jan. 6, 2022) (defendants misrepresented likelihood of FDA approval of pharmaceutical product by omitting adverse test results); *Homyk v. ChemoCentryx, Inc.*, 2023 WL 3579440, at *20 (N.D. Cal. Feb. 23, 2023) (similar).  None of those cases addresses situations where, like here, defendants were victims of a third-party fraudster. Furthermore, to the extent that Plaintiffs claim that Investor Defendants planned to exit their investments before the fraud was revealed, *see* Opp'n 24, that suggestion is implausible because it would have required Investor Defendants to have a crystal ball to predict when the fraud would be revealed and in any event lacks factual support.

AC, which alleges only that one Investor Defendant asked FTX about that relationship and was assured there was nothing untoward about it, AC ¶ 564.  If anything, this allegation supports the opposite conclusion: that Investor Defendants did appropriate diligence, as they stated, and that FTX concealed its illicit practices from Investor Defendants.  Similarly, Plaintiffs' assertion that Investor Defendants' knowledge of FTX's and Alameda's "commingling" can be shown by a non-defendant investor's request for "reps and warranties," Opp'n 21 (citing AC ¶ 305), does not help them.  The AC does not allege that this potential investor knew of or suspected FTX's fraud.  And in any event, allegations about what an unrelated non-party learned during negotiations with FTX—which were allegedly reported publicly only after FTX collapsed—say nothing about what each Investor Defendant knew.  *Henry v. Tyler*, 2020 WL 3574637, at *5 (N.D. Cal. July 1, 2020) (rejecting the "contention that knowledge on the part of any one [party] can be imputed to other [parties] as a result of their shared [activities]").

*Third*, Plaintiffs' argument that certain Investor Defendants should have known of FTX's fraud based on FTX-related entities' limited investments in funds administered by those defendants is fundamentally illogical.  As Plaintiffs concede, FTX went to great lengths to conceal its fraud.  *See supra* Part I.  In addition, Plaintiffs' allegations fail because the AC does not allege what information these defendants learned during alleged AML and KYC investigations or from what sources, and FTX's participation in other funds is not inherently suspicious.[9]

---

[9]    *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at *4-5 (N.D. Cal. Apr. 7, 2020) is distinguishable.  There, the plaintiffs "directly allege[d]" the defendant learned of the underlying fraud in its AML investigation by reviewing particular accounts from which the fraud was evident, manually processing transactions related to the fraud, deviating from standard practices with respect to the investments, and maintaining records reflecting knowledge of key facts suggesting fraud was occurring.  *Id.*  Nothing like that is (or could be) alleged here.

*Fourth*, Plaintiffs' allegations that certain Investor Defendants sat on the FTX Advisory Board, and executed Investor Rights Agreements granting FTX control rights, are inadequate. *See* Opp'n 3. Plaintiffs have made no effort to plead what Investor Defendants learned or supposedly should have learned from the unspecified Advisory Board "meetings" and "presentations" or other interactions alleged in the AC. *See* Mot. 13; *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) ("[P]laintiffs must do more than allege that these key officers had the requisite knowledge by virtue of their 'hands on' positions.").

*Finally*, Plaintiffs also fail to plead knowledge of FTX's fraud based on allegations about letters some Investor Defendants sent to the CFTC advocating for FTX's LedgerX platform to be able to clear derivatives. Opp'n 22. Those letters—which were founded on an understanding of how FTX was *designed* to operate, based on FTX's representations—show nothing about any Investor Defendant's knowledge of FTX's fraud. And, as the AC concedes, LedgerX stood apart from FTX's main businesses and was not susceptible to SBF's manipulation. *See* AC ¶¶ 227, 297.

## II.     Plaintiffs' Misrepresentation Claims Fail (Counts Six & Seven)

### A.     Plaintiffs Fail to Plead Actionable Misstatements

The Opposition says nothing to excuse Plaintiffs' failure to identify which alleged representations are supposedly false and why they are false.[10] Under Rule 9(b), that failure is reason enough to dismiss Plaintiffs' fraud claim. *See Myers v. Provident Life and Accident Ins. Co.*, 472 F. Supp. 3d 1149, 1179 (M.D. Fla. 2020); Mot. 16-19.

---

[10]     This includes Plaintiffs' suggestion that certain Investor Defendants' statements about their due diligence were misleading. *See* Opp'n 15, 21. As with the other alleged representations, Plaintiffs do not explain how those statements were false, and indeed they rely on the *truth* of those statements for their theory that Investor Defendants were aware of FTX's fraud. *See* Mot. 18-19.

Plaintiffs instead ask the Court to accept improper group pleading and ignore Rule 9(b)'s requirements by considering the alleged representations "holistically."  Opp'n 16-17.  That is not the law:  Rule 9(b) requires particularized allegations of each alleged misstatement, not generalized allegations.  *See, e.g.*, *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022).  Plaintiffs may not "lump[] . . . together" all the Investor Defendants' conduct and fail to "explain how each Defendant is responsible."  *Rattner v. 1809 Brickell LP*, 2022 WL 4770402, *4 (S.D. Fla. Aug. 23, 2022).[11]  Plaintiffs also incorrectly argue that Rule 9(b) should be "relaxed" because information about the fraud is in Investor Defendants' control.  Opp'n 14, 25 n.18.  But that makes no sense here: information about the fraud was in FTX's control and, as discussed above, Plaintiffs themselves allege that FTX concealed that fraud.

Plaintiffs' other arguments—which do not identify any specific purported misrepresentations and only peddle in generalities—are equally unavailing.  Opp'n 16-17.  For example, Plaintiffs' contention that *none* of the alleged statements is puffery cannot be squared with the many alleged "expression[s] of . . . exaggerated opinion" in the AC.  *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1319 (11th Cir. 2019); *see, e.g.*, AC ¶ 344 (SBF was "obviously a genius").  Plaintiffs' argument that opinion statements may be actionable if the speaker does not believe the statement, Opp'n 16, is beside the point:  the AC does not allege any facts showing that any Investor Defendant made statements it believed to be untrue.[12]  Similarly irrelevant is

[11]   Plaintiffs' improper group pleading approach is particularly troublesome here where Plaintiffs themselves tacitly concede that at least one defendant (Tiger Global) is not alleged to have made *any* statements at all, *see* Opp'n 35 n.25, and, as to another defendant (Altimeter), misleadingly cite to paragraphs in the AC as if the statements alleged therein had anything to do with FTX when they plainly do not.  *Id.*

[12]   As noted in the Motion, the AC does not allege that certain Investor Defendants that appeared on UpOnly TV said anything themselves about FTX, let alone made any misstatements.

Plaintiffs' argument that "superior knowledge" makes "promises of future action" actionable, *id.*, because, again, Plaintiffs fail to allege facts showing that Investor Defendants had *any* knowledge of FTX's fraud.

### B.     Plaintiffs Fail to Plead Actionable Omissions

Plaintiffs' fraud-by-omission claim fails because they have not alleged facts establishing that any Investor Defendant had a duty to disclose information to Plaintiffs. *See* Mot. 19.  Plaintiffs contend that "exclusive knowledge" or "active[] conceal[ment]" of facts or the "telling of [] half-truth[s]" may give rise to such a duty.  Opp'n 17-18.  But even those circumstances (which do not exist here) only give rise to a duty under California law if there is a "*transaction* between the parties" and under Florida law if the parties are in a confidential relationship.  *See LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997); *TransPetrol, Ltd. v. Radulovic*, 764 So.2d 878, 879-80 (Fla. Dist. Ct. App. 2000).  None of Plaintiffs' cases supports imposing a duty to disclose where, as here, Plaintiffs allege no prior relationship at all with Investor Defendants.[13]

### C.     Plaintiffs Do Not Adequately Allege Intent to Defraud or Reliance

Plaintiffs do not adequately allege that any Investor Defendant intended to defraud Plaintiffs or induce their reliance.  Mot. 25.  Like the AC, the Opposition does not explain why Investor Defendants would participate in FTX's fraud, and its bare conclusions are not enough. *See Kennedy v. Wells Fargo Bank, N.A.*, 2011 WL 5080166, at *2 (N.D. Cal. Oct. 25, 2011).

---

[13]     Plaintiffs try to manufacture a "transaction" between Plaintiffs and Investor Defendants because *FTX* allegedly invested in certain Investor Defendant funds.  Opp'n 18.  But *LiMandri v. Judkins* makes clear that this type of attenuated relationship is insufficient.  52 Cal. App. 4th 326, 337 (1997) (dismissing claims for failure to allege a direct transaction).

Nor do Plaintiffs adequately allege justifiable reliance.  Mot. 23-24.[14]  They do not allege that they read, heard, or were even aware of, a single Investor Defendant statement regarding FTX; nor do they allege any details concerning what they did in reliance on those statements.  *See Cork v. CC-Palo Alto, Inc*., 534 F. Supp. 3d 1156, 1178 (N.D. Cal. 2021).  Plaintiffs incorrectly argue that reliance can be inferred simply because a statement may have been misleading, Opp'n 24, but the case on which they rely did not even involve a common law fraud claim and, unlike here, involved allegations that plaintiffs viewed or were aware of alleged misrepresentation made directly by the defendant company from which they purchased products.  *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1014-15, 1021 (9th Cir. 2020) (analyzing FAL and UCL claims).[15]

### D.      Plaintiffs Do Not Adequately Allege Resulting Damages

The Opposition offers only a conclusory assertion that Plaintiffs "suffered damages." Opp'n 24-25.  That is not enough.  The AC fails to plead facts to support a showing that Plaintiffs lost money as a result of Investor Defendants' statements, nor does it allege a nexus between any of those statements and Plaintiffs' alleged damages.  *See* Mot. 22.[16]

---

[14]      Plaintiffs argue that justifiable reliance "is a matter for summary judgment or trial."  Opp'n 24.  But that ignores this Court's decision in *Tsavaris*, which makes clear that misrepresentation claims can and should be dismissed at the pleading stage where a plaintiff fails to allege that they saw the statements at issue and therefore cannot show justifiable reliance.  *Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *5 (S.D. Fla. Feb. 1, 2016).

[15]      Plaintiffs assert that reliance is alleged if a defendant "intends [a statement] to reach and influence either a particular person or persons, known to him, or a group or class of persons."  Opp'n 24.  But their case makes clear that such an allegation could satisfy only the intent prong, not reliance.  *See Pruco Life Ins. Co. v. Brasner*, 2011 WL 2669651, at *8 (S.D. Fla. July 7, 2011).

[16]      Plaintiffs argue that *Harbinger Cap. Partners Master Fund I, Ltd. v. Wachovia Cap. Markets., LLC*, is inapt because Investor Defendants are not bankrupt.  *See* Opp'n 25 n.16.  But *Harbinger* is directly on point, as it barred plaintiffs from recovering against banks that allegedly conspired to induce plaintiffs to invest in a bankrupt debtor, because damages had yet to become "clear and definite" and "were not ripe" due to the debtor's pending bankruptcy proceeding.  347 F. App'x 711, 713 (2d Cir. 2009).  Plaintiffs' attempt to distinguish *Body Jewelz, Inc. v. Valley Forge Ins. Co*. also fails as that case also involved conclusory allegations that defendant's

*(cont'd)*

### E.     Plaintiffs' Negligent Misrepresentation Claim Fails

Plaintiffs' primary argument in support of their negligent misrepresentation claim is that they do not need to satisfy Rule 9(b).  Opp'n 26.  That is not the law: both California and Florida courts require negligent misrepresentation claims sounding in fraud, like the claim here, to satisfy Rule 9(b).  *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020); *Tsavaris*, 2016 WL 375008, at *5.  Plaintiffs fail to do so because they have not pled facts showing that Investor Defendants made material misstatements without reasonable grounds for believing their statements were true.  As discussed above, Plaintiffs fail to allege with particularity any actionable misstatements by any Investor Defendant.  *See supra* Parts II.A-B; *DCD Partners, LLC. v. Transamerica Life Ins. Co.*, 2015 WL 5050513, at *10 (C.D. Cal. Aug. 24, 2015) (conclusory allegations that defendant acted "unreasonabl[y] and without proper cause" not enough to show lack of reasonable grounds to believe truth of statement).  In addition, Plaintiffs fail to plead that any Investor Defendant lacked reasonable grounds for any alleged misstatements, which would be implausible in any event given Plaintiffs' allegations about FTX's efforts to conceal its fraud.[17]

### III.   Plaintiffs Fail to Plead Investor Defendants Conspired with FTX or Aided Its Fraud

### A.     Plaintiffs Fail to State Claims for Aiding and Abetting (Counts Ten & Eleven)

Plaintiffs fail to allege that Investor Defendants substantially assisted fraud or conversion. To start, Plaintiffs do not plead that any Investor Defendant had *any awareness* of the alleged scheme, let alone the requisite high level of conscious intent.  Mot. 23-25.  Though Plaintiffs attempt to muddle the analysis, Opp'n 26, scienter is relevant to both the actual knowledge and

---

misleading statements directly contributed to plaintiffs' damages, which the court found insufficient.  *See* 241 F. Supp. 3d 1084, 1091 (C.D. Cal. 2017).

[17]     Plaintiffs' fraudulent inducement claim (Count Eight) fails for largely the same reasons that their intentional misrepresentation claim fails.  *See* Mot. 22-23.

substantial assistance elements.  At most, Plaintiffs allege Investor Defendants engaged in ordinary activities that assisted FTX's apparently legitimate business without disclosing FTX's fraud with regard to customer funds.  In these circumstances, Plaintiffs must allege a "conscious and specific motivation" to aid wrongdoing.  *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008).  The AC fails to do so.[18]

Plaintiffs argue that Investor Defendants' assistance in the scheme was "direct and extraordinary," Opp'n 27, but none of the supposed affirmative assistance Plaintiffs point to was suspicious or atypical.  Providing capital, business advice, and other business connections and support to help a startup grow are the ordinary and expected activities of venture capital investors.[19] *See* Opp'n 27-29; AC ¶¶ 298, 376, 471, 613-14.  Without more, such activities do not suggest a "conscious and specific motivation" to aid fraud.[20]  *Citco*, 2008 WL 926513, at *6.  Plaintiffs' cases illustrate this point: there, the defendants either *actually knew* the encouraged acts were tortious, *consciously ignored* significant red flags, or engaged in *atypical* business transactions, all supporting a reasonable inference of awareness of the wrongdoing they aided.[21]  Here, Plaintiffs

---

[18]     For allegations "combin[ing] inaction with affirmative assistance, the degree of knowledge required depends upon how ordinary the assisting activity is in the involved businesses."  *Platinum Ests., Inc. v. TD Bank, N.A.*, 2012 WL 760791, at *4 (S.D. Fla. Mar. 8, 2012).

[19]     To be sure, Plaintiffs provide no information to suggest that Paradigm's and Ribbit's role in FTX's funding round was anything other than ordinary business dealings with a company in which they invested.

[20]     Indeed, it was FTX's misrepresentations that induced one Investor Defendant to feature FTX at its conferences, Opp'n 7, introduce SBF to valuable contacts in the Middle East, Opp'n 8, and invest tens of millions of dollars in FTX's native token and other SBF-affiliated tokens, Opp'n 8 n.7.  This financial and reputational investment is the opposite of what one would expect if the Investor Defendant knew of FTX's fraud.

[21]     *Compare In re First All. Mortg. Co.*, 471 F.3d 977, 994 (9th Cir. 2006) ("Lehman received reports that detailed the fraudulent practices.") *and SEC v. Spartan Sec. Grp., LTD*, 2019 WL 2372277, at *6 (M.D. Fla. June 5, 2019) (Chief Compliance Officer "approved responses to FINRA deficiency letters without familiarizing himself with the companies despite numerous red

*(cont'd)*

allege no particularized facts to support an inference that Investor Defendants *knew of or actually deduced* FTX's wrongdoing, and the controls issues Plaintiffs point to came to light only after the fact and were not red flags at the time.  *See supra* Part I; *Platinum Ests.*, 2012 WL 760791, at *4.

Nor do certain Investor Defendants' positive statements about FTX establish aiding and abetting liability.  Opp'n 28.  "Positive comments" do not show aiding and abetting where, as here, the comments "would more easily be interpreted to demonstrate [defendant's] lack of awareness of . . . fraudulent activities."  *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012).  Absent particularized facts showing these statements were knowingly false when made, the only reasonable inference from the AC is that Investor Defendants were expressing good faith opinions, unaware of FTX's unlawful acts.  *See* Mot. 16-18.  Plaintiffs also fail to plead how any of these statements proximately caused their injuries.  Contrary to Plaintiffs' assertions, and as their own cases make clear, "*causation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered.*"  *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003).  Plaintiffs point to no allegation that Investor Defendants' statements were a "substantial factor" in causing FTX's fraud and conversion of Plaintiffs' funds—nor can they, when they have failed to plead they saw or heard any of these statements.  *See* Mot. 21, 23-25.

## B.     Plaintiffs Fail to State a Conspiracy Claim (Count Nine)

Plaintiffs also fail to allege that any Investor Defendant ever agreed to commit fraud or to convert FTX customer funds, as required to plead a conspiracy claim.  Mot. 24.  Critically, they plead no "factual predicate" to show that any Investor Defendant agreed to do any acts concerning

---

flags"), *with Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *13 (M.D. Fla. Aug. 22, 2019) (noting "difference between having information from which one could or even should deduce the existence of fraud, and actually making that deduction").

FTX *with an unlawful purpose*. *Oueiss v. Saud*, 2022 WL 1311114, at *14 (S.D. Fla. Mar. 9, 2022) (Moore, J.).  Plaintiffs point to examples of Investor Defendants' innocuous business activities that "could not have occurred without an agreement" to argue that an agreement may be inferred, such as agreeing to announce investments in FTX, voicing general support for FTX, or participating in FTX's investments.  Opp'n 30-31.[22]  But Plaintiffs ignore that none of those activities suggest any unlawful purpose.

Nor does any of the purported "circumstantial evidence" support a reasonable inference that Investor Defendants agreed with FTX to do anything with the purpose of defrauding FTX customers.  *See Feng v. Walsh*, 2020 WL 5822420, at *11 (S.D. Fla. Sept. 14, 2020) ("A conspiracy requires a meeting of the minds between two or more persons *to accomplish a common and unlawful plan*.").  Nor does the fact that FTX had a financial interest in Skybridge or that Multicoin had a "good relationship" with FTX US's president, Opp'n 31, indicate unlawful intent.  Such threadbare allegations fail to state a conspiracy claim against any Investor Defendant.  *See Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, at *5 (S.D. Fla. July 31, 2009) (Moore, J.).

Plaintiffs also ignore that circumstantial evidence can prove conspiracy "only when the inference sought to be created by such circumstantial evidence *outweighs all reasonable inferences to the contrary*."  *Honig v. Kornfeld,* 339 F. Supp 3d 1323, 1345-46 (S.D. Fla. 2018); *see also Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1243 (M.D. Fla. 2013).  Here, a conspiracy

---

[22]     Plaintiffs' allegations come nowhere close to what was alleged in the cases on which they rely.  *See* Opp'n 31-32.  For example, *Freeney v. Bank of Am. Corp.* involved allegations of "very close" relationships between co-conspirators, who were brothers, ex-spouses, romantic partners, and in a 12-year-long attorney-client relationship, and of *similar lies* that "would have made no sense absent an agreement."  2015 WL 12535021, at *32 (C.D. Cal. Nov. 19, 2015); *see also United Motors Int'l, Inc. v. Hartwick*, 2017 WL 888304, at *10-11 (C.D. Cal. Mar. 6, 2017) (allegations of defendants' *similar misconduct*—threats, intimidation, and harassment—and clear personal motive to further the conspiracy sufficed).

is far less plausible than the inference that Investor Defendants agreed to invest in and support what they believed was a legitimate business because they too were misled by FTX—an inference which is also supported by Plaintiffs' own pleadings.

## IV.  Plaintiffs' Claims for Securities Violations Under California and Florida Law Fail

### A.  Plaintiffs' Cal. Corp. Code § 25504.1 Claim Fails (Count Three)

The Opposition fails to rescue any element of Plaintiffs' fatally flawed § 25504.1 claim. *First*, Plaintiffs make no effort to argue that the AC pleads Investor Defendants' actual knowledge of the scheme and instead incorrectly assert that actual knowledge is not required.  Opp'n 38.  That is wrong, as Plaintiffs' own cases show.  *See, e.g.*, *Markowitz v. Diversified Lending Grp., Inc.*, 2010 WL 11507662, at *4 (C.D. Cal. Feb. 26, 2010); Mot. 27.[23]

*Second*, Plaintiffs concede that material assistance under § 25504.1 requires "involvement in the part of the scheme that constituted a violation of the securities laws."  *AREI II Cases*, 216 Cal. App. 4th 1004, 1014-15 (2015).  But their laundry list of citations to the AC contains no allegations that any Investor Defendant assisted SBF in secretly diverting funds—which is the alleged securities law violation—because there are none.[24]

*Third*, the Opposition cannot cure the failure to allege any predicate securities law violation or that any Plaintiff had a YBA or bought FTT.  Plaintiffs argue that an "offer" was made in California because "advertisements on websites and links to FTX constitute offers."  Opp'n 39 (citing *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *16 (N.D. Cal. Feb. 26, 2020)).  But *Zakinov* involved very different allegations: the defendant allegedly had "an entire section of its

---

[23]    *Abdo v. Fitzsimmons*, 2018 WL 11220494 (N.D. Cal. May 22, 2018), which Plaintiffs quote, did not involve a § 25504.1 claim.

[24]    Plaintiffs' reliance on *Apollo* and *Markowitz* is misplaced: in each, the defendants assisted in selling securities to the plaintiffs, which is not the case here.  *Apollo*, 70 Cal. Rptr. 3d at 224; *Markowitz*, 2010 WL 11507662, at *4.

website dedicated to providing advice on 'How to Buy [the Token]'" that the defendant itself allegedly created, including "links to exchanges and instructions on 'how to buy [the token]' on those exchanges." *Id.*  The AC contains no such allegations regarding the offer or sale of FTX's products, which no Investor Defendant is alleged to have had any hand in creating or distributing.

### B.     Plaintiffs Fail to State a Claim for Violation of the FSIPA (Count Five)

Plaintiffs' FSIPA claim fails at the outset because they do not allege that any Plaintiff purchased YBAs in Florida, a fact that Plaintiffs do not even address in their Opposition.  *See* Mot. 30; Opp'n 36-38.  Plaintiffs also concede that Investor Defendants cannot be liable as sellers of securities.  *See* Opp'n 37.  Instead, Plaintiffs claim that Investor Defendants are liable as "director[s], officer[s], partner[s], or agent[s]" of FTX that "personally participated" in FTX's sale of securities.  *Id.*  However, they cannot meet that test either.

*First*, Investor Defendants did not hold any of the specified roles with FTX.  The AC does not allege that Investor Defendants were directors or officers of FTX.  Similarly, Plaintiffs' conclusory assertion that Investor Defendants were "forming partnerships" is not enough to establish liability.  *See* Opp'n 37.  Partnership under Florida law requires joint control or right of control and duty to share in losses and liabilities of a business.  *See, e.g.*, *Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002).  The AC alleges nothing like that here.[25]  And there are no allegations that Investor Defendants were authorized to act as, or held themselves out to be, FTX's agents, or that Investor Defendants agreed to assist in selling YBAs to Plaintiffs.[26]

---

[25]    The AC also does not allege facts to support the assertion that certain Investor Defendants controlled FTX by way of the Advisory Board.  Opp'n 37.  Likewise, Plaintiffs' passing suggestion that Investors' Rights Agreements "guarantee[d] rights to control the Company" lacks any factual support and is without merit.  *Id.* at 3.

[26]    In *Arthur Young & Co. v. Mariner Corp.*, 630 So. 2d 1199 (Fla. 4th DCA 1994), an auditing firm agreed to assist in the negotiation and sale of the seller's securities and to "represent [the
*(cont'd)*

*Second*, Plaintiffs do not allege Investor Defendants' "personal participation" in the sale of securities to Plaintiffs.  *See* Mot. 30; Opp'n 37-38.  At most, the AC alleges that certain Investor Defendants spoke *publicly* about FTX—not that they personally induced Plaintiffs to purchase YBAs or were directly involved in those sales.  *See, e.g.*, AC ¶¶ 319, 321, 325, 329-332, 334-338, 343-347.  Similarly, Plaintiffs' allegations that Investor Defendants invested in FTX and "touted" FTX to "regulators" do not show that Investor Defendants were involved in the sale of securities to Plaintiffs.  The court in *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828 (11th Cir. 2006), held that an officer could not be liable even where she attended a dinner with the purchaser at which her husband pitched an investment, as "mere presence at the dinner meeting" did not show personal involvement in the sale.  Plaintiffs' allegations here fall far short of even those in *Dillon*, as they allege no interaction with Investor Defendants at all.  Accordingly, Plaintiffs' FSIPA claim fails.

## V.    Plaintiffs' Other State Statutory Claims Also Fail

### A.    Plaintiffs Cannot Allege Violations of California's UCL or FAL (Counts One & Two)

Plaintiffs simply ignore that, because they have an adequate remedy at law, they cannot plead a claim in equity under the UCL or the FAL.  *See* Mot. 31.  This alone warrants dismissal.  But the Opposition fails to rescue the UCL and FAL claims for three additional reasons.

*First*, Plaintiffs fail to state a claim for equitable relief.  The Opposition makes clear that Plaintiffs *cannot* state a restitution claim.  Although they claim to have lost "money and property," and implausibly blame that on "Defendants' misconduct," these allegations are meritless.  Opp'n 31, 33.  Plaintiffs do not and cannot allege that Investor Defendants ever acquired Plaintiffs'

---

seller's] interests."  *Id.* at 1204.  The court held that "the context of the use of the word agent [in the statute] is to make liable all those *representatives and direct participants* in the sale of the security who commit fraud as a means of inducing the purchaser to buy."  *Id*. at 1203 (emphasis added).  There are no similar allegations here.

"property," and FTX's alleged investments with Investor Defendants is not enough to establish that *plaintiff's* property went to Investor Defendants. *See* Opp'n 32; *City & Cnty. of S.F. v. Purdue Pharma L.P*, 491 F. Supp. 3d 610, 695 (N.D. Cal. 2020) (cited at Opp'n 32) (for restitution, "plaintiff must once have had an ownership interest in the money or property acquired by the defendant through unlawful means"). And "disgorgement of profits . . . where the[] profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest" is "not an authorized remedy" under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003). Investor Defendants have not acquired anything belonging to Plaintiffs.

Plaintiffs' injunctive relief theory is similarly flawed. Plaintiffs claim that injunctive relief is warranted because "Defendants' public praise of companies Defendants invest in could be repeated." Opp'n 32. But that is not the injunctive relief they seek. Instead, they ask the Court to enjoin "continuing [the] unlawful practices" alleged in the AC—*i.e.*, supposed misrepresentations about FTX. *See* AC, Prayer for Relief. Plaintiffs concede that FTX and its related entities are now defunct, so there is no risk of Investor Defendants repeating the alleged misconduct. Opp'n 8-9. Without grounds for injunctive relief or restitution, Plaintiffs' UCL and FAL claims must be dismissed. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016) (UCL remedies "are limited to restitution and injunctive relief.").

*Second*, Plaintiffs do no more than repeat conclusory, unsupported allegations of reliance and causation. Opp'n 32-33. They now contend, without explanation, that they "have sufficiently alleged their reliance . . . were [sic] plausible" and "have satisfied the 'causation' requirement."[27] They have not. *See* Mot. 20-22; *supra* Parts II.C-D.

---

[27]     In support, Plaintiffs cite only AC ¶¶16-31 & 616-21, but those paragraphs contain, at most, cursory allegations that do not approach the requirements for pleading causation of Plaintiffs' alleged losses or their reliance on supposed misstatements.

*Third*, the Opposition makes clear that Plaintiffs have not pled, and cannot sustain, a claim under any of the three UCL prongs.  <u>Fraudulent Prong</u>: Plaintiffs are mistaken that Investor Defendants "make no argument" here.  Opp'n 34.  Investor Defendants made several arguments that apply to the UCL claims under any prong, including that Plaintiffs lack standing and have failed to allege knowledge and reliance.  *See, e.g.*, Mot. 33, 33 n.20, 34, 35.  <u>Unlawful Prong</u>: Plaintiffs concede that a claim under this prong requires a predicate violation, but they fail to allege one.  This requires dismissal.  *See* Mot. 33-34.  <u>Unfair Prong</u>: Plaintiffs complain that Investor Defendants have "inserted a knowledge element" into the UCL's unfair prong.  Opp'n 33.  That is wrong, but also misses the point.  Because Investor Defendants did not know about FTX's fraud, their actions could not be "immoral, unethical, oppressive, or unscrupulous."  Mot. 35.  Plaintiffs also argue the "allegedly unfair conduct [must only] 'be tethered to some legislatively declared policy.'"  Opp'n 34.  The Opposition does not identify any such policy.  Plaintiffs also omit an additional pleading requirement: the alleged misconduct must also lead to some unfair result.  *See Cheverez v. Plains All Am. Pipeline, LP*, 2016 WL 4771883, at *3 (C.D. Cal. Mar. 4, 2016).  Plaintiffs do not plausibly allege that Investor Defendants—who lost hundreds of millions— benefited from "unfair" business practices leading to the requisite unfair result.

## B.   Plaintiffs' FDUTPA Claim Also Fails (Count Four)

Plaintiffs concede that their FDUTPA claim is based on the same allegations as their misrepresentation claims, Opp'n 34-35, and therefore it should be dismissed for the same reasons.[28]  But the FDUTPA claim also fails for three additional reasons.

---

[28]   Plaintiffs argue that they need not allege Investor Defendants' knowledge of FTX's fraud for their FDUTPA claim, Opp'n 35-36, but even the case on which Plaintiffs rely recognizes a split of authority on that point, *see Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1232 (S.D. Fla. 2021).  Plaintiffs here concede that their FDUTPA claim is coextensive with their fraud claim.  Where a FDUTPA claim is based on fraud, "Plaintiffs' FDUTPA claim must be [pled] with
*(cont'd)*

*First*, FDUTPA does not extend to a defendant solely because it is subject to personal jurisdiction in Florida.  *See* Opp'n 36.  Indeed, this Court has rejected that argument and held instead that "FDUTPA applies only to action that occurred within the state of Florida."  *Team Servs., Inc. v. Securitas Electronic Security, Inc.*, 2021 WL 9350987, at *5 (S.D. Fla. Aug. 9, 2021).  Plaintiffs cannot meet that standard, as they do not point to *any* allegedly deceptive conduct by Investor Defendants (as opposed to FTX) in Florida.  *See Team Servs.*, 2021 WL 9350987, at *5.

*Second*, Plaintiffs have not alleged facts to show that statements by any Investor Defendant were likely to deceive a consumer acting reasonably under the circumstances.  There are no allegations that Investor Defendants advertised, offered, or sold products to consumers.  Investor Defendants' remote, attenuated statements about FTX are not enough to support Plaintiffs' claim and are distinguishable from Plaintiffs' cases where the defendants made factual representations about their own goods or services in advertising directed at consumers.[29]  *See Lewis*, 530 F. Supp. 3d at 1233 (manufacturer and distributor represented that vehicles "have safety features that they do not have and . . . that the [vehicles] are of a particular standard, quality, or grade, when they are not"); *Frayman v. Douglas Elliman Realty*, LLC, 515 F. Supp. 3d 1262, 1280 (S.D. Fla. 2021) (owner allegedly deceived consumers by advertising an illegal property rental).

*Third*, Plaintiffs cite no support for their suggestion that Investor Defendants' statements were advertisements in "trade or commerce" under FDUTPA.  Opp'n 35.  That FTX engaged in

---

particularity and must meet the same pleading standard as [for] the fraud claim."  *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012).

[29]     Take Plaintiffs' own examples—tweets from an investor stating: "Only trade #bitcoin with @FTX_official" and "@SBF.FTX is so unique in combining innovation with rigorous operations." *See* Opp'n 35 (citing AC ¶¶ 361, 369).  Plaintiffs allege no basis to support an inference that a reasonable person in their position would have relied on these tweeted opinions by third party investors to make their own financial decisions about transacting with FTX.  *See* Mot. 37.

trade or commerce with Plaintiffs by accepting their deposits does not render Investor Defendants' expressed views about FTX "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"  Fla. Stat. 501.204(1); *see* Mot. 36-37.[30]

## VI. Plaintiffs Fail to State a Basis for Declaratory Relief (Counts Twelve & Thirteen)

The Opposition confirms that there is no "substantial likelihood that [Plaintiffs] will suffer injury in the future" and accordingly that Plaintiffs lack Article III standing to seek a declaratory judgment.  *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 879 (11th Cir. 2016); *see supra* Part V.A.  Plaintiffs do not even try to argue otherwise.  Nor could they, since the only conduct the AC alleges is *past* conduct that has no likelihood of continuing or causing future injury, because FTX has since "imploded."  *See* AC ¶ 7.[31]  There is no such plausible risk of future injury in regards to the defunct FTX, and Counts Twelve and Thirteen should be dismissed.

## CONCLUSION

For the reasons stated above and in Investor Defendants' opening brief, Investor Defendants respectfully request that the Court dismiss the AC with prejudice.

---

[30]  Further, FDUTPA targets commercial conduct, not securities transactions governed by other statutes.  Plaintiffs allege that their claims arise out of securities transactions.  *See, e.g.*, AC ¶ 690.  While Investor Defendants dispute that, *see* Mot. 28 n.17, Plaintiffs lack standing to assert a FDUTPA claim regardless.  *See Feng v. Walsh* 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) ("Because Plaintiffs' allegations regarding their lost investments are rooted in securities transactions, FDUTPA does not apply."); *Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1294-95 (S.D Fla. 2000).

[31]  None of Plaintiffs' cases is on point, as each involved a declaration concerning alleged ongoing misconduct.  *See Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1268 (N.D. Cal. 2014) (defendant "offer[ed] no evidence that its conduct has changed" such that there was an "ongoing conflict that may affect others facing similar circumstances as Plaintiff"); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1005 (N.D. Cal. 2012) (defendant's business practices were ongoing and plaintiffs sought to require defendant to "substantially alter its . . . transactions in order to comply with the law or not engage [the] transactions . . . at all"); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1220 (N.D. Cal. 2014) (plaintiffs sought declaration "clarifying [defendant's] *ongoing* contractual obligation to provide reasonable security" (emphasis added)).

Dated:  December 6, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Paul C. Huck, Jr.* | */s/ Amy Jane Longo* |
| **LAWSON HUCK GONZALEZ PLLC** | **STEARNS WEAVER MILLER** |
| Paul C. Huck, Jr. | **WEISSLER ALHADEFF & SITTERSON,** |
| Florida Bar No. 968358 | **P.A.** |
| 334 Minorca Avenue | Jay B. Shapiro |
| Coral Gables, Florida 33134 | Florida Bar No. 776361 |
| Telephone: (305) 441-2299 | 150 West Flagler Street, Suite 2200 |
| paul@lawsonhuckgonzalez.com | Miami, FL 33130 |
| | Telephone: (305) 789-3200 |
| **CLEARY GOTTLIEB STEEN &** | Facsimile: (305) 789-2664 |
| **HAMILTON LLP** | jshapiro@stearnsweaver.com |
| Jennifer Kennedy Park (admitted *pro hac* | |
| *vice*) | **ROPES & GRAY LLP** |
| Joon Kim (admitted *pro hac vice*) | David Hennes (admitted *pro hac vice*) |
| Rishi N. Zutshi (admitted *pro hac vice*) | 1211 Avenue of the Americas |
| 1841 Page Mill Rd Suite 250 | New York, New York 10036 |
| Palo Alto, CA 94304 | Telephone: (212) 596-9000 |
| Telephone: (650) 815-4130 | Facsimile: (212) 596-9090 |
| Facsimile: (650) 815-4199 | david.hennes@ropesgray.com |
| jkpark@cgsh.com | |
| jkim@csgh.com | Amy Jane Longo (admitted *pro hac vice*) |
| rzutshi@cgsh.com | 10250 Constellation Blvd. |
| | Los Angeles, California 90067 |
| *Counsel for Defendant Sequoia Capital* | Telephone.: (310) 975-3000 |
| *Operations, LLC* | Facsimile: (310) 975-3400 |
| | amy.longo@ropesgray.com |
| | |
| | *Counsel for Defendant Altimeter Capital* |
| | *Management, LP* |

/s/ Scott M. Malzahn

**TEIN MALONE TRIAL LAWYERS**
Michael Tein
Florida Bar No. 993522
3059 Grand Avenue
Coconut Grove, Florida 33133
Telephone: (305) 442-1101
tein@teinmalone.com

**WAYMAKER LLP**
Brian E. Klein
Scott M. Malzahn
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone: (424) 652-7800
Facsimile: (424) 652-7850
bklein@waymakerlaw.com
smalzahn@waymakerlaw.com

*Counsel for Defendant Multicoin Capital Management LLC*

/s/ Alexander C. Drylewski

**GRAY ROBINSON, P.A.**
T. Todd Pittenger, Esq.
Florida Bar No. 768936
Kelly J.H. Garcia, Esq.
Florida Bar No. 0694851
301 E. Pine Street, Suite 1400
Orlando, FL 32802-3068
Telephone: 407-843-8880
Facsimile: 407-244-5690
todd.pittenger@gray-robinson.com
kelly.garcia@gray-robinson.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Alexander C. Drylewski (admitted *pro hac vice*)
Mikal Davis-West
One Manhattan West

/s/ Anna Terteryan

**BERGER SINGERMAN LLP**
Jordi Guso
Florida Bar No. 863580
Ana Kauffman
Florida Bar No. 89092
1450 Brickell Avenue, Ste 1900
Miami, FL 33131
Telephone: (305)-714-4376
jguso@bergersingerman.com
akauffmann@bergersingerman.com

**KIRKLAND & ELLIS LLP**
Mark McKane (admitted *pro hac vice*)
Anna Terteryan (admitted *pro hac vice*)
Stephen Silva (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
mark.mckane@kirkland.com
anna.terteryan@kirkland.com
stephen.silva@kirkland.com

*Counsel for Defendant Thoma Bravo, LP*

/s/ Jeffrey F. Robertson

**SCHULTE ROTH & ZABEL LLP**
Peter H. White
Jeffrey F. Robertson
555 Thirteenth Street, NW
Suite 6W
Washington, DC 20004
Telephone: 202-729-7470
Facsimile: 202-730-4520
pete.white@srz.com
jeffrey.robertson@srz.com

*Counsel for Defendant Tiger Global Management, LLC*

22

New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
alexander.drylewski@skadden.com
mikal.davis-west@skadden.com

Mark R.S. Foster (admitted *pro hac vice*)
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
mark.foster@skadden.com

*Counsel for Defendant Paradigm Operations
LP*

/s/ *Nicholas D. Marais*
**AKERMAN LLP**
Jacqueline M. Arango
Florida Bar No. 664162
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Telephone: (305) 374 5600
jacqueline.arango@akerman.com

**KEKER, VAN NEST & PETERS LLP**
Steven P. Ragland
Nicholas D. Marais
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
sragland@keker.com
nmarais@keker.com

*Counsel for Defendant Ribbit Capital, L.P.*

/s/ *Douglas R. Hirsch*
**SADIS & GOLDBERG LLP**
Douglas R. Hirsch
Frank S. Restagno
551 Fifth Avenue, 21st Floor
New York, New York 10176
(212) 947-3793
dhirsch@sadis.com

/s/ *Jason C. Hegt*
**LATHAM & WATKINS LLP**
James E. Brandt
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Fax: (212) 751-4864
james.brandt@lw.com
jason.hegt@lw.com

*Counsel for Defendant K5 Global Advisor,
LLC*

frestagno@sadis.com

**MELAND BUDWICK, P.A.**
Eric W. Ostroff
200 South Biscayne Boulevard
Ste 3200
Miami, FL 33131
Tel: 305-358-6363
Fax: 305-358-1221
eostroff@melandbudwick.com

*Counsel for Defendant SkyBridge Capital II,*
*LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2023, I filed a true and correct copy with the Clerk of Court via CM/ECF, which will send notice of the same to all counsel and parties of record.

*/s/ Paul C. Huck, Jr.*

Paul C. Huck, Jr.

*Counsel for Defendant Sequoia Capital Operations, LLC*