UNITED STATES DISTRICT CORT
SOUTHERN DISTRICT OF FLORIDA

MDL No. 3076
CASE NO.: 1:23-md-03076-MOORE

IN RE:

FTX CRYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION

_____

THIS DOCUMENT RELATES TO:

Domestic Venture Capital Funds

*Rabbitte, et al. v. K5 Global Advisor, LLC, et al.,* No. 4:23-cv-03953 (N.D. Cal.)

*Rabbitte, et al. v. SkyBridge Capital II, LLC, et al.*, No. 1:23-cv-22949 (S.D. Fla.)
_____/

**DEFENDANT K5 GLOBAL ADVISOR, LLC'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
INDIVIDUAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

I.     THE CLAIMS AGAINST K5 GLOBAL SHOULD BE DISMISSED

Plaintiffs' Opposition (ECF 349) ("Opposition" or "Opp.") doubles down on the fact-free theory that anyone who did any business with FTX must have been involved in the alleged fraud. But Plaintiffs' claims against K5 Global are wafer-thin and should be dismissed because the AC (ECF 157) does not include *any* factual allegations showing that K5 Global had knowledge of SBF/FTX's fraud, much less that K5 agreed to join, aide, or abet the fraud in any way.

*First*, Plaintiffs argue that K5 Global can be charged with knowledge of SBF/FTX's fraud because SBF allegedly said that he and a K5 principal would both act how they would "if [FTX and K5 Global] were merged." Opp. at 1 (citing AC ¶ 525(c)). But Plaintiffs ignore their own allegation that this statement was in the context of SBF describing a "solution" regarding "one of the FTX side projects." AC ¶¶ 524, 525(c). The AC offers absolutely nothing to allege that the entities collaborated more broadly, much less that they collaborated with regard to FTX's core operations, handling of customer funds, or any alleged fraud. In short, the AC comes nowhere close to the pleading facts necessary to pierce the corporate veil and impute all of FTX's knowledge to K5 Global. *See* ECF 302 ("Opening Brief") at 3.

*Second*, Plaintiffs also assert that K5 Global received "fraudulently commingled" funds. Opp. at 1–2 (citing AC ¶¶ 518–19, 522). Again, however, the AC contains no such allegation. Instead, the cited paragraphs allege that K5 Global and SBF agreed to a transaction in which SBF and others agreed to take an interest in certain K5 Global entities in exchange for a mix of cash and FTX stock. The AC offers no explanation for which of these funds were "fraudulently commingled," how this transaction was supposedly "atypical," Opp. at 2, or how K5 Global allegedly knew that to be the case. Rule 9(b) requires more. *See* ECF 301 at 12–13.[1]

---

[1] Indeed, Plaintiffs allege that SBF was FTX's founder and majority owner (*see, e.g.*, AC ¶¶ 46, 63, 109), so the notion that he had FTX stock to give is hardly surprising and is a far cry from the

*Third*, Plaintiffs argue—citing to nothing—that "networking" can give rise to an aiding and abetting claim. Not so. *See* Opening Brief at 2–3. Even Plaintiffs' reframed argument that "K5 Global's knowledge is alleged to be based on its close relationship to FTX and its AML and KYC requirements, " Opp. at 2, still does not explain precisely what K5 Global learned or should have learned about SBF/FTX's alleged fraud. A long line of cases in this District have found that insufficient as a matter of law.²

*Finally*, Plaintiffs resort to buzzwords describing K5 Global as "aligned" with FTX or "part of SBF's team," Opp. at 3, but mere labels do not state a claim. *Honig*, 339 F. Supp. 3d at 1344 (mere "conclusory allegations that [a defendant] substantially assisted or encouraged the wrongdoing…[are] insufficient to withstand a motion to dismiss."). Indeed, the AC's only claim about what K5 Global supposedly knew is that FTX allegedly kept K5 Global informed on investments that FTX made *in other entities*. Opp. at 23 (citing AC ¶ 527). The AC offers nothing to even suggest that K5 Global was even involved in FTX's handling of customer funds or that it knew that the source of funds for any FTX investments was suspect. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 557 (S.D. Tex. 2011) ("conclusory statements and references to . . . passive investment [did not] show actual knowledge of any fraud.").

---

"frequent and voluminous" bank transfers and other specific allegations at issue in *Perlman v. Bank of America, N.A.*, 2011 WL 13108060, at *8 (S.D. Fla. Dec. 22, 2011) (cited in Opp. at 2).

² *See, e.g.*, *Wang v. Revere Capital Mgmt., LLC*, 2023 WL2198570, at *5 (S.D. Fla. Feb. 15, 2023) (allegations that "Defendants, upon reviewing the due diligence and underwriting documents, *should* have known or discovered that…payments would be derived from misappropriated funds" was insufficient to plead actual knowledge of the alleged underlying fraud) (citations omitted; emphasis in original); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (plaintiff cannot satisfy actual knowledge requirement by pointing to "certain red flags indicat[ing] a defendant should have known" of the underlying fraud) (citations omitted); *Yuanxiao Feng v. Walsh*, 2020 WL 5822420, at *8 (S.D. Fla. Sept. 14, 2020) (finding that plaintiff "failed to create a strong inference of actual knowledge" where the complaint's allegations "merely support an inference that the [ ] Defendants should have known of the underlying fraud") (citations omitted).

For these reasons, and the reasons stated in the K5 Global Opening Brief and the Investor Defendants' briefing (ECF 301 & 413), the claims against K5 Global should be dismissed.

Dated: December 6, 2023

Respectfully submitted,

<u>/s/ Jason C. Hegt</u>
James E. Brandt
NY Bar No. 1858935
Jason C. Hegt
NY Bar No. 4781191
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
james.brandt@lw.com
jason.hegt@lw.com

*Attorneys for Defendant K5 Global Advisor, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 6, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

By: */s/ Jason C. Hegt*
Jason C. Hegt