# Exhibit C

Case 1:23-md-03076-KMM   Document 470-5   Entered on FLSD Docket 01/12/2024   Page 2 of 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

In Re: FTX Cryptocurrency Exchange Collapse Litigation

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT JEAN CHALOPIN**

Plaintiffs in the above-titled action, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and Local Rule 26.1 of the United States District Court for the Southern District of Florida, request that Defendant Jean Chalopin, produce all documents, electronically stored information, and things that are in your possession, custody, or control requested in response to the following Requests for Production.

Respectfully submitted on December 22, 2023

| Plaintiffs' Co-Lead Counsel ||
|---|---|
| By: /s/ *Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: /s/ *David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |

| **Plaintiffs' Steering Committee Members** ||
|---|---|
| Joseph R. Saveri<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com | James R. Swanson<br>Kerry J. Miller<br>**FISHMAN HAYGOOD LLP**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, LA 70170<br>Telephone: (504) 586-5252<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com |
| Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2023, a true and correct copy of the foregoing was served via email to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

**DEFINITIONS**

Unless otherwise specified, the terms set forth below have the following meanings:

1. "Alameda" refers to Alameda Research LLC, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to Alameda herein.

2. "All/Each" and "And/Or" – The terms "all", "each", "and" and "or" shall be construed as meaning either all or each as necessary, or conjunctively, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

3. "Bankruptcy Actions" refers to Case No. 22-11068 (JTD) (Jointly Administered) pending in the United States Bankruptcy Court for the District of Delaware, and all bankruptcy proceedings filed in or after November 2022 on behalf of any of the FTX Entities and/or Alameda, and all adversary proceedings filed in connection therewith.

4. "Communication" means, without limitation, the transmittal of information in the form of facts, ideas, inquiries or otherwise, and whether orally or in writing, or by any other means or medium, including in person, electronically and/or by exchange or communication of any document, and includes, without limitation,

correspondence, memoranda, reports, presentations, face-to-face conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, Agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, exchanges of recorded information, and postings of any type. The term "Communication" includes instances where one party disseminates information that the other party receives but does not respond to.

5. "Concerning" means relating to, referring to, describing, evidencing or constituting.

6. "Control person" means a person (as defined herein) in direct or indirect possession of the power to direct or cause the direction of the management and policies of a person (as defined herein), whether through the ownership of voting securities, by contract, or otherwise.

7. "Creditors" refers to all creditors in the Bankruptcy Actions, including, but not limited to, any committees of such creditors.

8. "Criminal Proceedings" refers to *United States v. Sam Bankman-Fried*, 1:22-CR-00673 pending in the Southern District of New York, and all criminal proceedings filed in or after November 2022 relating to the FTX Entities and/or Alameda.

9. "Debtors" refers to all FTX Entities and/or Alameda that have filed petitions for bankruptcy protection in the Bankruptcy Actions. When referring to the FTX Entities and/or Alameda in the Requests, the Requests cover the periods both prior to, and after, their filing of any of the Bankruptcy Actions.

10. "Defendants" refers to any and all persons and/or entities named as defendants in any of the actions consolidated with, and into, the above-captioned action. For

purposes of these Requests, Defendants also includes Silvergate Capital Corporation (a/k/a Silvergate Bank) and Signature Bank.

11. Deltec" refers to Deltec Bank & Trust Company Ltd. ("Deltec Bank") including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform), predecessors (including acquired entities or lines of business), successors, including, but not limited to Deltec International Group, Deltec Asset Management Group, Delchain Ltd., Relm Insurance, Halcyon Life, Fulgur Alpha, Deltec Fund Services Limited, and/or any entities affiliated with or held by Deltec Bank or in which Deltec Bank is a member or other owner, its international, national or local branches or offices, as well as Deltec's current and prior partners, executives, directors, officers, employees, representatives and/or agents.

12. "Document" refers to any written, printed, typed or other graphic matter, of any kind or nature, whether in hard copy or electronic format, whether the original, draft, or a copy and copies bearing notations or marks not found on the original, including, but not limited to, memoranda, reports, recommendations, notes, letters, envelopes, post-its, emails, text messages, instant messages (including, but not limited to, messages exchanged or sent using Slack, Teams, Discord, WhatsApp, Signal or any other similar application), transcripts, studies, analyses, tests, books, articles, minutes, agreements, contracts, and all other written communications, of any type, including inter and intra-office communications, questionnaires, surveys, charts, graphs, videos, photographs, tapes, voice messages or other recordings,

print-outs or compilations from which information can be obtained or, if necessary, translated through detection devices into reasonably usable form, including all underlying or preparatory materials and drafts thereof.  To the extent not already covered in the above definition, "Document" specifically includes any "writing", "recording", "photograph", "original" or "duplicate" as defined in Rule 1001 of the Federal Rules of Evidence, and/or "Electronically Stored Information" within the full scope of Rule 34 of the Federal Rules of Civil Procedure and/or as further defined as "ESI" herein.

13. "ESI" refers to Electronically Stored Information, as consistent with Rule 34 of the Federal Rules of Civil Procedure and includes all computer or electronically stored or generated data and information, including all attachments to and enclosures within any requested item, and all drafts thereof. ESI includes all information and documents stored in any format and on any storage media, including, but not limited to: internal and external storage devices, hard drives, flash drives; and magnetic tape, whether fixed, portable or removable, and ESI further includes, but is not limited to, electronic spreadsheets, electronic presentation documents, e-mail messages, text messages, message platforms (including, but not limited to, Slack, Teams, Discord, WhatsApp, Telegram, Messenger, Signal or any other similar platforms where chat messages are exchanged); image files; sound files; material or information stored in a database or accessible from a database (including, but not limited to, Salesforce, Azure Cloud, or SQL databases). Responsive ESI may also include data on social media websites (e.g., LinkedIn, Facebook, Twitter, Instagram, and internal intranet social media). To the extent that a document or ESI

contains tracked changes, comments, or other hidden text, the document or ESI should be imaged with that hidden text displayed. ESI also includes all associated metadata that is maintained or saved (including for example, author, recipient, file creation date, file modification date, etc.). Metadata preservation includes preserving parent-child relationships within a document family (the association between an attachment and its parents' document or between embedded documents and their parent). The entire document and attachments will be produced, except any attachments that may be withheld or redacted on the basis of any protection or privilege, work product, or other applicable protection. Best efforts shall be made to ensure that the parent-child relationships within a document family (the association between an attachment and its parent document) are preserved and that such responsive child document(s) should be consecutively produced immediately after the responsive parent document.

14. "FTT" refers to the digital token created by the FTX Entities.

15. "FTX Entities" refers to FTX Trading and/or FTX US.

16. "FTX Trading" refers to FTX Trading Ltd. d/b/a FTX Trading, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or trading platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel

Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX Trading herein.

17. "FTX US" refers to West Realm Shires Services Inc. d/b/a FTX US, including, but not limited to, its past and present subsidiaries, affiliates, divisions, segments (including any mobile application and/or web-based cryptocurrency investment services or platform, such as FTX.com), predecessors (including acquired entities or lines of business such as Blockfolio, Inc.), successors, directors, officers, employees, representatives and/or agents. No specific reference to any of the foregoing in the following Requests, including any specific reference to Samuel Bankman-Fried, Caroline Ellison, Gary Wang, or Nishad Singh, serves to limit the scope of any reference to FTX US herein.

18. "Liquidators" refers to all liquidators in the Bankruptcy Actions, including, but not limited to, the Joint Provisional Liquidators of FTX Digital Markets Ltd.

19. "Moonstone" refers to Farmington State Bank d/b/a Moonstone Bank, its predecessors, successors, subsidiaries, departments divisions, and/or affiliates, including, but not limited to, any banking entities affiliated with or held by Moonstone or in which Moonstone is a member or other owner, its international, national or local branches or offices. "Moonstone" shall also encompass Moonstone's current and prior partners, officers, directors, employees, representatives, agents or any persons acting or purporting to act on behalf of Moonstone, including but not limited to Jean Chalopin and Janvier Chalopin

20. "Person" or "People" refers to any natural person(s) or any business, legal, or governmental entity (or entities) or association(s).

21. "Trustee" refers to the U.S. Trustee assigned in the Bankruptcy Actions, including any of the Trustee's employee or agents, including any examiner appointed in the Bankruptcy Actions.

22. "You" or "Your" shall refer to Jean Chalopin.

23. Whenever a reference to a business entity appears, the reference shall mean the business entity, its affiliated companies, partnerships, divisions, subdivisions, directors, officers, employees, agents, clients or other representatives of affiliated third parties.

24. Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

## INSTRUCTIONS

1. Production of documents and items requested herein shall be made at the offices of The Moskowitz Law Firm, P.O. Box 653409, Miami, FL 33133, or via electronic mail to the email addresses provided in the signature blocks of the attorneys serving these requests.

2. Unless otherwise stated in a request, the time period for which you must respond is January 1, 2019, through the date of production.

3. Objections: Where an objection is made to any request, the objection shall state with specificity all grounds for the objection and respond to the Request to the extent it is not objectionable. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or by the Court's order, or any extensions thereof, shall be waived.

4. These requests shall include all documents that are in your possession, custody or control or in the possession, custody or control of your present or former directors, executives, agents, representatives, or your attorneys, or any and all persons acting on your behalf, or your present or former directors, executives, agents, representatives, or attorneys.

5. For any document, or portion thereof, covered by a request that is withheld from production (or redacted in whole or in part) under claim of privilege, work product protection or any other basis, you shall provide the following information in the form of a privilege log:

    a. the reasons and each and every fact supporting any withholding, and legal basis for withholding the document including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid;

      b.    the date such document was prepared;

      c.    the names, employment positions and addresses of the author or preparers of such document;

      d.    the names, employment positions, and the addresses of each person who received such document;

      e.    the title, a brief description, and the subject matter of the document;

      f.    the number of the request under which such document would be produced but for the objection; and

      g.    description of the subject matter sufficient to determine whether the privilege is properly invoked (without revealing privileged information)

6. If any document responsive to a request has been destroyed, produce all documents describing or referencing:

      a.    the contents of the lost or destroyed document;

      b.    all locations in which any copy of the lost or destroyed document had been maintained;

      c.    the date of such loss or destruction;

      d.    the name of each person who ordered, authorized, and carried out the destruction of any responsive document;

      e.    all document retention and destruction policies in effect at the time any requested document was destroyed; and

      f.    all efforts made to locate any responsive document alleged to have been lost.

7. In producing the documents requested, indicate the specific request(s) pursuant to which document or group of documents is being produced.

8. These requests should be deemed continuing such that if you, your directors, officers, employees, agents, representatives, or any person acting on your behalf, subsequently discover or obtain possession, custody, or control of any document or ESI previously requested or required to be produced, you should make a

- 9 -

   supplemental production of such document or ESI. Supplemental productions should be provided on a rolling basis as additional documents become available.

9.  All documents that cannot be accurately represented in TIFF format (such as spreadsheets, computer slide presentations, audio files, video files, and other similar file types) shall be provided in native format. The parties will further meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Teams, Slack, Microsoft Access, Azure Cloud, Salesforce, Oracle, or other ephemeral messaging or proprietary database systems).

10.  In responding to these Document Requests, you are to include Documents:

  a.  obtained from witnesses who gave information to any governmental agency or investigatory body;

  b.  that constitute, or refer or relate to, summaries of testimony or other statements in connection with any governmental agency or investigatory body proceeding or investigation; or

  c.  obtained on your behalf by counsel in preparing for testimony or interviews before any governmental agency or investigatory body.

11.  All documents are to be produced in the following method if not produced in its Native Format:

  a.  Single page .TIFF images

  b.  Color.jpg (documents wherein reflection of importance relies on color, shall be produced in .jpg format)

  c.  Document level Text Files containing extracted full text or OCR text

  d.  Electronic documents, e-mails, text or instant messages are to be processed and converted from the electronic format to single page tiff.

## REQUESTS FOR PRODUCTION

1. Work papers, communications, and/or other documents prepared by you and/or delivered to, exchanged with, or received from the FTX Entities and/or Alameda, including, but not limited to Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison, Constance Wang, Brett Harrison, Sam Trabucco, Zach Dexter, Ryne Miller, Ryan Salame, Dan Friedberg, and Ramnik Arora.

2. Work papers, communications, and/or other documents prepared by you and/or delivered to, exchanged with, or received from other Defendants, or shared internally within Deltec and/or Moonstone, concerning the FTX Entities and/or Alameda.

3. Work papers, communications, and/or other documents concerning your efforts to transform Bahamian laws, regulations, policies, or other guidance in order to make The Bahamas more favorable for digital asset startups, including, but not limited to, correspondence with Ryan Pinder.

4. Work papers, communications, and/or other documents concerning the Crypto Bahamas cryptocurrency summit that you co-hosted with FTX in the Bahamas.

5. Work papers, communications, and/or other documents prepared by you and/or delivered to, exchanged with, or received from the other Defendants concerning the cryptocurrency summit that you co-hosted with FTX in the Bahamas.

6. Work papers, communications and/or other documents concerning any of the accounts at Deltec and/or Moonstone that were opened or held in the name of or for the benefit of FTX Entities and/or Alameda, including, but not limited to,

account lists, account opening documents, signature cards, and terms for the accounts.

7. Work papers, communications and/or other documents concerning any insurance coverage provided by you (including specifically, but not limited to, Relm Insurance) to FTX Entities and/or Alameda, including, but not limited to, policies, underwriting files, claims files, risk assessments, investigations, and/or memoranda.

8. Work papers, communications and/or other documents concerning the expected and/or actual account activity in the accounts that were opened or held at Deltec and/or Moonstone in the name of or for the benefit of FTX Entities and/or Alameda.

9. Work papers, communications, and/or other documents concerning Deltec's efforts to raise debt capital in New York.

10. Work papers, communications, and/or other documents concerning the $50 million loan in favor of Deltec International Group from Norton Hall Ltd.

11. Workpapers, communications and/or documents concerning the accounts opened by Tether Limited Inc. ("Tether") at Deltec and/or Moonstone, including, but not limited to, Tether's expected banking activity at Deltec and/or Moonstone, Tether's actual banking activity at Deltec and/or Moonstone, including transactions by, to, or through the FTX entities and/or Alameda, their insiders, or their affiliates, and the service of Paolo Ardoino, Tether's Chief Technology Officer, on Delchain's board. To the extent your banking relationship(s) with Tether pre-dates January 1, 2019, the time period for this Request is from the date of your initial contact with Tether through the date of production.

12. Work papers, communications, and/or other documents concerning your efforts to obtain funding, whether via investment or loan or any other form whatsoever, for Deltec, Moonstone, or any other investment vehicle and/or business venture from the FTX Entities and/or Alameda.

13. Work papers, communications, and/or other documents concerning Alameda's $11.5 million investment in Moonstone.

14. Work papers, communications, and/or other documents between FTX Entities and/or Alameda and you, whether in your personal capacity or representative capacity for Deltec and/or Moonstone, concerning the U.S. banking services that FTX Entities and/or Alameda requested or required.

15. Work papers, communications, and/or other documents concerning Moonstone's application for and membership in the Federal Reserve.

16. Work papers, communications, agreements and/or other documents concerning ownership, purchase, and/or sale of the Albany condominium complex, by or to you, Joe Lewis, Sam Bankman-Fried, FTX and/or Alameda.

17. All documents, communications, or other discovery concerning your, Deltec's, and or Moonstone'sconducting business, or seeking financing or other investments, in the United States.

18. To the extent not produced in response to any of the foregoing requests, all documents and communications concerning any account at Deltec or Moonstone in the name of FTX Entities and/or Alameda. This includes a request for documents sufficient to identify your employees involved in (a) opening such accounts, (b)

        ongoing activity in such accounts, or (c) any review, inquiry, or investigation into the holders of such accounts or into any activity in such accounts.

19. To the extent not already produced in connection with any of the above requests, all work papers, communications, transcripts and/or recordings of any depositions, testimony, interviews, or statements you have provided concerning the FTX Entities and/or Alameda in any court, administrative proceedings, the Bankruptcy Actions, the Criminal Proceedings, or any other foreign or domestic forum or in response to any governmental agency request.