**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
No. 1:23-md-3076-KMM/EIS

*In re*

*FTX Cryptocurrency Exchange Collapse Litigation*

This Document Relates to the Administrative Class Action Complaint and Demand for Jury Trial as to the Bank Defendants (ECF No. 155)

**DECLARATION OF LANECIA DARVILLE IN SUPPORT OF**
**(i) DEFENDANTS DELTEC BANK AND TRUST COMPANY LIMITED AND JEAN CHALOPIN'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND EXPEDITE JURISDICTIONAL DISCOVERY AND**
**(ii) DEFENDANTS DELTEC BANK AND TRUST COMPANY LIMITED AND JEAN CHALOPIN'S MOTION TO QUASH OR FOR A PROTECTIVE ORDER**

I, Lanecia Darville, declare as follows:

1.      I am a member of The Bahamas Bar, admitted in 2010 and licensed to practice law in The Commonwealth of The Bahamas from the date thereof.

2.      I serve in the position of Legal Counsel at Deltec Bank and Trust Company Limited ("Deltec").

3.      Deltec is a company incorporated under the Companies Act of The Bahamas and is duly licensed by The Central Bank of The Bahamas to carry on financial services business pursuant and subject to The Bank & Trust Companies Regulations Act, 2020 ("BTCRA") (Exhibit 1) and Regulations (collectively, "Applicable Law").  Mr. Chalopin serves as the Chairman of the Board of Deltec. The Chairman of the Board is a regulated function per The Central Bank of The Bahamas' Supervisory and Regulatory Guidelines.

4.      The Central Bank of The Bahamas is the supervisory authority for licensed financial institutions.  All supervised financial institutions are required to comply with Applicable Law and regulatory guidelines promulgated by The Central Bank of The Bahamas.

*5.*      Section 77 of the BTCRA expressly preserves client confidentiality and prohibits the disclosure by a licensee (bank) or its directors to any person regarding "information relating to the identity, assets, liabilities, transactions or accounts of a customer" ("Confidential Information") with limited exceptions, one of which is "when a [bank or a bank's director] *is lawfully required to make disclosure by any court of competent jurisdiction within The Bahamas, or under the provisions of any law of The Bahamas.*"  (Exhibit 1 at 77-78.)

6.      The BTCRA provides that any contravention or breach of these statutory provisions constitutes an offence and the person guilty of such offence is liable on conviction to a fine or a term of imprisonment, or both.  Specifically, Section 77(10) of the BTCRA imposes a financial penalty of $25,000 or imprisonment of up to 2 years for any breaches of Section 77's confidentiality mandate.  (Exhibit 1 at 79.)

7.      The requests for production and deposition notices issued in these proceedings and served on each of Deltec and Mr. Chalopin by Plaintiffs on December 22, 2023 (the "Requests") do not qualify as an order by a "court of competent jurisdiction within The Bahamas" (BTCRA Section 77) and are therefore not recognizable or enforceable in The Bahamas for the purposes of permitting a lawful disclosure by Deltec or Mr. Chalopin in compliance with their obligations under Applicable Law.

8.      Under the Evidence (Proceedings in Other Jurisdictions) Act ("EPOJA"), Statute Laws of The Commonwealth of The Bahamas, the Supreme Court of The Bahamas is enabled to provide assistance obtaining evidence required for the purposes of civil proceedings in other

jurisdictions upon application being made to the to the Supreme Court by or on behalf of a court or tribunal exercising jurisdiction in a country or territory outside The Bahamas for an order for evidence to be obtained in The Bahamas (an "Order").

9.      An Order requested and issued pursuant to EPOJA would allow Plaintiffs to lawfully request and obtain the disclosure of testimonial and documentary evidence located in The Bahamas in connection with foreign proceedings.  Such an Order would qualify as one of the exceptions allowing for lawful disclosure of Confidential Information under BTCRA Section 77 ("when a [bank or a bank's director] is lawfully required to make disclosure by any court of competent jurisdiction within The Bahamas, or under the provisions of any law of The Bahamas") that would enable Deltec and Mr. Chalopin to disclose the Confidential Information requested by Plaintiffs without being penalized under Applicable Law.

10.     Inasmuch as Deltec is incorporated, registered, and licensed in The Bahamas and Mr. Chalopin is a resident and citizen of The Bahamas, both are subject to the jurisdiction and laws of The Commonwealth of The Bahamas and Plaintiffs are required to comply with the statutory procedures set out in EPOJA to obtain an Order from the Supreme Court of The Bahamas for Deltec's and Mr. Chalopin's compliance with the Requests.


        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

        Executed on January 12, 2024, at Nassau, The Bahamas.


_____

Lanecia Darville

# Exhibit 1



*EXTRAORDINARY*

# OFFICIAL GAZETTE
# THE BAHAMAS

## PUBLISHED BY AUTHORITY

| NASSAU | 27th July, 2020 |
|--------|-----------------|

# BANKS AND TRUST COMPANIES REGULATION ACT, 2020

## Arrangement of sections

**Section**

**PART I - PRELIMINARY**       **5**

1.   Short title..................................................................................................................5
2.   Interpretation............................................................................................................5

**PART II – BANKING AND TRUST SERVICES**     **11**

3.   Application of Act....................................................................................................11
PROHIBITIONS     11

4.   Prohibition of the use of the word "bank", etc.......................................................13
5.   Prohibition against carrying on banking, trust or money transmission business
    without a licence.....................................................................................................13
APPLICATION AND GRANT OF A LICENCE     13

6.   Application for a bank or trust company licence....................................................14
7.   Consideration of application by the Bank..............................................................14
8.   Criteria for Bank in determining if a person is fit and proper...............................15
9.   Grant of a licence...................................................................................................15
10.  Conditions on grant of a licence............................................................................16
MONEY TRANSMISSION BUSINESSES AND AGENTS     16

11.  Application for a licence for a Money Transmission Service Provider...............16
12.  Registration of Money Transmission Agents........................................................17
REGISTERED REPRESENTATIVES     17

13.  Registered Representatives.....................................................................................17
14.  Bank may cancel registration, etc. .......................................................................17

**PART III – OWNERSHIP OF LICENSEES**     **18**

TRANSFER OR OTHER DISPOSITION OF SHARES     18

15.  Shares, etc., not to be issued or transferred without approval..............................18
CONTROLLERS     18

16.  Grant of approval in relation to controllers of a licensee.....................................19
17.  Objection to an existing controller or indirect controller of a licensee...............19
18.  Power to make directions.......................................................................................20
19.  Offences.................................................................................................................22

**PART IV – DUTIES AND OBLIGATIONS OF LICENSEES** 23

20. Licensee to publish statement of accounts...........................................................23
21. Licensee to notify Bank of appointment of auditor............................................24
22. Powers and obligations of auditors.....................................................................24
23. Licensee to notify Bank of material information.................................................25
24. Licensee to furnish information to Bank.............................................................26
25. Licensee to inform on potential Insolvency........................................................26
26. Licensee to obtain approval to have a subsidiary, etc. outside The Bahamas.....27

**PART V - SUPERVISION OF LICENSEES AND REGISTRANTS** 27

INSPECTOR OF BANKS AND TRUST COMPANIES 27

27. Establishment of Office of Inspector of Banks and Trust Companies................27
28. Duties of Inspector.............................................................................................28
29. Sanctions authorized by Bank............................................................................30
30. Surrender of Licence...........................................................................................33
31. Winding up of non-banking licensees and registrants........................................33
FOREIGN SUPERVISORY AUTHORITIES 33

32. Inspection by supervisory authority....................................................................33
33. Supervisory Authority may appoint other body to conduct inspection...............35
34. Confidentiality of reports of Inspector and Supervisory Authority.....................35

**PART VI – SPECIAL RESOLUTION FRAMEWORK FOR BANKS** 36

RECOVERY OF BANKS IN FINANCIAL DISTRESS, ETC. 36

35. Objectives of Resolution framework...................................................................36
36. Recovery Plans....................................................................................................37
37. Resolution Plans..................................................................................................38
STATUTORY ADMINISTRATION 39

38. Appointment of a Statutory Administrator..........................................................39
39. Expenses of the statutory administrator. ............................................................41
40. General powers of the statutory administrator....................................................41
41. Central Bank Oversight of Statutory Administrator............................................42
42. Suspension of payment of capital distributions..................................................43
43. Moratorium and effect of statutory administration on proceedings....................43
44. Taking control of the bank...................................................................................43
45. Inventory and plan of action to resolve the bank................................................45
46. Capital increase by existing shareholders...........................................................45
47. Mergers, sales and other restructuring................................................................47
48. Termination of statutory administration..............................................................49
49. Licensing of body corporate as Bridge Institution.............................................49
50. Transfer of assets, rights or liabilities to asset management vehicle...................52
51. Management of assets by asset management vehicle...........................................52
52. Onward property transfer from asset management vehicle..................................52
53. Central Bank to report to Minister......................................................................53
54. Disposal of Proceeds...........................................................................................53

| | | |
|---|---|---|
| 55. | Recovery of costs following application of stabilization option........................ 53 | |
| 56. | Payment from the resolution funding account..................................................... 54 | |
| 57. | Repayment of the resolution funds....................................................................56 | |
| | LIQUIDATION OF BANKS | 56 |
| 58. | Liquidation of banks.........................................................................................56 | |
| 59. | Voluntary liquidation of banks..........................................................................56 | |
| 60. | Compulsory winding up and appointment of liquidator...................................... 58 | |
| 61. | Powers and duties of the liquidator...................................................................59 | |
| 62. | Termination of Contracts...................................................................................62 | |
| 63. | Notice of Claims............................................................................................... 63 | |
| 64. | Objections......................................................................................................... 64 | |
| 65. | Distributions...................................................................................................... 64 | |
| 66. | Avoidance of pre-liquidation transfers............................................................... 64 | |
| 67. | Priority of claims.............................................................................................. 67 | |
| 68. | Final reporting................................................................................................... 69 | |
| 69. | Automatic Termination Rights............................................................................ 69 | |
| 70. | Creditor Safeguards........................................................................................... 69 | |
| 71. | Shareholder and Creditor Safeguards................................................................. 70 | |
| 72. | Independent valuer to meet qualifications.......................................................... 73 | |

**PART VII - MISCELLANEOUS**                                                           **74**

| | | |
|---|---|---|
| 73. | Central Bank may publish action....................................................................... 74 | |
| 74. | Prohibition orders............................................................................................. 74 | |
| 75. | Bank to issue warning and decision notices....................................................... 75 | |
| 76. | Variation, revocation of prohibition order.......................................................... 76 | |
| 77. | Preservation of confidentiality........................................................................... 77 | |
| 78. | Treatment of dormant accounts held by banks.................................................... 80 | |
| 79. | Charges for account to be by agreement............................................................. 85 | |
| 80. | Power of search................................................................................................. 85 | |
| 81. | Attorney-General's fiat...................................................................................... 87 | |
| 82. | Regulations........................................................................................................ 87 | |
| 83. | No Derogation.................................................................................................... 87 | |
| 84. | Appeal............................................................................................................... 88 | |
| 85. | Fees and levy..................................................................................................... 89 | |
| 86. | Repeal................................................................................................................ 90 | |
| 87. | Savings.............................................................................................................. 90 | |

**FIRST SCHEDULE**                                                                     **91**

INSPECTION AND SUPERVISION OF BANKS AND TRUST COMPANIES          91

**SECOND SCHEDULE**                                                                    **92**

FEES AND LEVY                                                                          92

**THIRD SCHEDULE**     **96**

SECURITIES TRANSFER INSTRUMENTS     96


**FOURTH SCHEDULE**     103

PROPERTY TRANSFER INSTRUMENTS     103



No. 22 of 2020

# BANKS AND TRUST COMPANIES REGULATION ACT, 2020

## AN ACT TO REPEAL THE BANKS AND TRUST COMPANIES REGULATION ACT AND TO CONSOLIDATE AND MODERNISE THE LAW REGULATING BANKS AND TRUST COMPANIES WITHIN THE BAHAMAS AND FOR CONNECTED MATTERS

[Date of Assent - 24th July, 2020]

### Enacted by the Parliament of The Bahamas

# PART I - PRELIMINARY

### 1.   Short title.

(1)   This Act may be cited as the Banks and Trust Companies Regulation Act, 2020.

(2)   This Act shall come into force on such date as the Minister may appoint by Notice published in the Gazette.

### 2.   Interpretation.

In this Act —

"**asset management vehicle**" means a company that is—

(a)   incorporated under the Companies Act (*Ch. 308*);

(b)   limited by shares;

(c)   wholly or partially owned by the Bank and or the Government;

(d)   created for receiving some or all of the assets, rights and liabilities of a bank under statutory administration or a bridge institution;

"**authorised agent**" means a person designated by a bank or trust company under the provisions of section 6;

"**Bahamas Agent**" means a Registered Representative who provides administrative services to a private trust company under a service agreement;

"**bank**" means any person lawfully carrying on banking business including the accepting of deposits of money withdrawable by cheque;

"**banking business**" means —

- (a) the business of accepting deposits of money which may be withdrawn or repaid on demand or after a fixed period or after notice and employing those deposits in whole or in part by lending or otherwise investing them for the account and at the risk of the person accepting them; and
- (b) without limiting the generality of the foregoing, includes the provision of money transmission services, and "**banker**" shall be construed accordingly;

"**bridge institution**" is a company that is —

- (a) incorporated under the Companies Act (*Ch. 308*);
- (b) limited by shares;
- (c) owned by the Central Bank; and
- (d) created for receiving a transfer, and effecting a timely disposal of the assets, rights and liabilities of a bank under statutory administration; and
- (e) licensed under this Act;

"**company**" means a company incorporated either under the laws of The Bahamas or under the laws of any other country or place;

"**controller**" means a person —

- (a) in accordance with whose directions, instructions or wishes the directors or officers of a licensee, or of another company of which the licensee is a subsidiary, are accustomed or are under an obligation, whether formal or informal, to act;
- (b) who is able to exercise a significant influence over the management of a licensee, or of another company of which it is a subsidiary by virtue of —
  - (i) a holding of shares or other securities in the licensee or such other company;

        (ii)    an entitlement to exercise, or control the exercise of, the voting power at any general meeting of the licensee, or such other company;

    (c)    who is in a position to determine the policy of the licensee but who is not —

        (i)    a director or officer of the licensee whose appointment has been approved by the Bank; or

        (ii)    a person in accordance with whose directions, instructions or wishes the directors of the licensee are accustomed to act by reason only that they act on advice given by such person in a professional capacity;

**"deposit"** means —

    (a)    the unpaid balance of money or its equivalent received or held by an institution from or on behalf of a person in the usual course of business and for which the institution has given or is obliged to give credit to that person's chequing, savings, demand or time account, or for which the institution has issued a certificate, receipt, cheque, money-order, draft or other instrument in respect of which it is primarily liable; and

    (b)    such other payments as the Bank may by regulation prescribe, excluding, subject to subparagraph (iii), any unpaid balance of money or its equivalent received or held in relation to the provision of property other than currency, or services or the giving of security; and, for the purposes of this Act, an unpaid balance of money or its equivalent is referable to the provision of property or services or the giving of security only if —

        (i)    it is paid by way of advance or part payment under a contract for the sale, hire or other provision of property or services and is repayable only in the event that the property or services is or are not sold, hired or otherwise provided;

        (ii)    it is paid by way of security for the performance of a contract or by way of security in respect of loss which may result from the non-performance of a contract; or

        (iii)    it is paid by way of security for the delivery or return of any property whether in a particular state of repair or otherwise;

**"Designated Person"** means the individual or individuals (whether living or deceased) described as such within a Designating Instrument provided that if more than one Designated Person is described as such each Designated Person must be related to a Designated Person so described by consanguinity or some other family relationship;

**"Designating Instrument"** means an instrument in the form specified in the *First Schedule* to the Banks and Trust Companies (Private Trust Companies) Regulations;

**"Domestic Systemically Important Institution"** or **"DSII"** means a bank licensed under this Act and which reported total consolidated domestic liabilities of such amount as the Governor may determine by notice, to the Bank for the preceding financial year of that bank;

**"Financial and Corporate Service Provider"** means a person that is licensed pursuant to the Financial and Corporate Service Providers Act (*Ch. 369*);

**"Governor"** means the person appointed as Governor under paragraph 2 of the Schedule to the Central Bank of The Bahamas Act, 2020;

**"indirect controller"** means any person, whether acting alone or together with any other person, and whether with or without holding shares or controlling voting power in a licensee —

    (a)  in accordance with whose directions, instructions or wishes the directors and officers of the licensee are accustomed or under an obligation, whether formal or informal, to act; or

    (b)  who is in a position to determine the policy of the licensee, but does not include any person —

        (i)  who is a director or other officer of the licensee whose appointment has been approved by the Bank; or

        (ii)  in accordance with whose directions, instructions or wishes the directors of the licensee are accustomed to act by reason only that they act on advice given by him in his professional capacity;

**"Inspector"** means the office of Inspector of Banks and Trust Companies established under section 27;

**"insolvent"** has the meaning ascribed to it in section 187 of the Companies Act (*Ch. 308*);

"**levy**" means the amount payable by a DSII for the DSII's preceding financial year pursuant to section 85(2);

"**levy threshold amount**" means such sum as the Governor may determine by Notice;

"**licence**" means a licence granted under section 9 or 11 or deemed to be so granted in accordance with that section;

"**licensee**" means any person holding a licence under the provisions of this Act and for the purposes of this Act"licensee" includes the branches or subsidiaries of a licensee operating outside of The Bahamas;

"**Minister**" means the Minister responsible for Finance;

"**Money Transmission Agent**" means any person carrying on money transmission business on behalf of a Money Transmission Service Provider;

"**Money Transmission Business**" means the business of accepting cash, cheques, other monetary instruments or other stores of value in one location and the payment of a corresponding sum in cash or other form to a beneficiary in another location by means of a communication, message, transfer or through a clearing network to which the money transfer business belongs and "money transmission services" shall be construed accordingly;

"**Money Transmission Service Provider**" means any person carrying on a money transmission business;

"**Other family relationships**" means personal relationship between two persons —

    (a)    by marriage or former marriage; or

    (b)    which exists if —

        (i)    one is the child of the other, natural or adopted, legitimate or illegitimate; or

        (ii)    one is regarded by the other as his child;

"**penalty**" means an administrative monetary penalty imposed by the Bank pursuant to section 47 of the Central Bank of The Bahamas Act, 2020;

"**Private Trust Company**" means a company incorporated under the provisions of the Companies Act (*Ch. 308*), or the International Business Companies Act (*Ch. 309*), which by its Memorandum and Articles of Association —

      (a)    acts as trustee only for a trust or trusts created or to be created by or at the direction of a Designated Person or Designated Persons or an individual or individuals who are related by consanguinity or other family relationships to the Designated Person described within the Designating Instrument or, if there is more than one Designated Person so described, to a Designated Person, which Designated Person or Designated Persons need not be named in such company's Memorandum and Articles of Association or Memorandum or Articles of Association;

      (b)    is required to appoint a Registered Representative; and

      (c)    is not the subject of a notice of withdrawal made under section 14(1);

**"Registered Representative"** means a person resident in The Bahamas that is licensed pursuant to section 13 or a Financial and Corporate Service Provider registered with the Central Bank, which provides to a Private Trust Company, the services of a —

      (a)    secretary;

      (b)    director; or

      (c)    Bahamas Agent;

**"Securities Commission"** means the Securities Commission of The Bahamas referred to in section 19(1) of the Securities Industry Act 2011 (*No. 10 of 2011*);

**"Stabilization option"** refers to a power that may be exercised in relation to a bank under statutory administration, pursuant to section 46 or 47;

**"Supervisory Authority"** in relation to a country or territory outside The Bahamas means a foreign entity charged with the responsibility of conducting consolidated supervision of banking and trust business in a licensee's home country;

**"the Bank"** has the meaning assigned by section 2 of the Central Bank of The Bahamas Act;

**"Total domestic liabilities amount"** means an amount equal to the total domestic liabilities of a DSII as reported by the DSII to the Bank for the DSII's preceding financial year";

**"trust business"** means the business of acting as trustee, executor or administrator;

**"trust company"** means any company carrying on trust business.

# PART II – BANKING AND TRUST SERVICES

### 3.    Application of Act.

The provisions of this Act —

- (a)    except for sections 6, 20, 28(2)(f), 32, 33, 78 and 79 shall, unless the context otherwise requires, apply *mutatis mutandis* to Money Transmission Service Providers that are licensed pursuant to section 11;
- (b)    subject to section 6(4), shall, unless the context otherwise requires, apply *mutatis mutandis* to Private Trust Companies and Registered Representatives.

## PROHIBITIONS

### 4.    Prohibition of the use of the word "bank", etc.

- (1)    Except with the approval of the Central Bank, no person, other than a licensee acting under and in accordance with the terms of its licence under this Act, shall —
  - (a)    use or continue to use the words "bank", "trust", "trust company", "trust corporation", "savings" or "savings and loan" or any of their derivatives either in English or in any other language, in the description or title under which such person is carrying on business from within The Bahamas whether or not such business is carried on in The Bahamas;
  - (b)    use words representing that that person is carrying on a money transmission business, in English or in any other language, in the description or title under which that person carries on business from within The Bahamas whether or not such business is carried on in The Bahamas;
  - (c)    make, or continue to make, whether directly or indirectly, any representation in any bill-head, letter, letter-head, circular, paper, notice or advertisement or by any other means whatsoever, whether similar to the foregoing or not, that such person is carrying on banking business, trust business, or money transmission business or is authorised by the law of The Bahamas to carry on such respective business;
  - (d)    in any manner whatsoever, solicit or receive deposits from the public.
- (2)    Except with the approval of the Bank —

       (a)    the Registrar General shall not register a company; and

       (b)    no company if already registered immediately before the twenty-fifth day of November, 1968, shall be entitled to remain registered on or after that date, with a name which contains the words "bank", "trust", "trust company", "trust corporation", "savings" or "savings and loan" or any of their derivatives either in English or in any other language.

(3)    Before giving its approval under subsection (1) or (2), the Bank may require of any person such references and such other information and particulars as may be prescribed.

(4)    Whenever the Bank considers it to be in the public interest the Bank may withdraw any approval given under subsection (1).

(5)    The Bank may refuse to grant a licence to, or to register, as the case may be, a person, or if such person is already in possession of a licence or certificate of registration, as the case may be, the Bank may revoke such licence or cancel such registration, if in the Bank's opinion such person is carrying on or intending to carry on banking or trust business, money transmission business or the business of acting as a Registered Representative, as the case may be, under a name which —

       (a)    is identical with that of any company, firm or business house, whether within The Bahamas or not, or which so nearly resembles that name as to be calculated to deceive;

       (b)    is calculated to suggest, falsely, the patronage of, or connection with some person or authority whether within The Bahamas or not;

       (c)    is calculated to suggest, falsely, that such person has a special status in relation to or derived from the Government of The Bahamas or has the official backing of or acts on behalf of the said Government or of any department or official thereof or is recognized in The Bahamas as a national or central bank or trust company, money transmission service provider or Registered Representative, as the case may be; or

       (d)    is calculated to mislead the public as to the nature of the person's business arrangements.

(6)    Every person who contravenes the provisions of this section shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding fifty thousand dollars or to a term of imprisonment not exceeding one year or to both such fine and imprisonment and in the case of a continuing offence to a fine not exceeding one thousand dollars for each day during which the offence continues.

(7)    Where it appears to the Bank —

    (a)    that a company has contravened any prohibition contained in subsection (1), and that no other effective means exists of dealing with the company in relation to the contravention; or

    (b)    that a company is disentitled to remain registered by reason of being in breach of paragraph (b) of subsection (2), then in either such case the Bank may direct the Registrar General to give notice in writing to the company requiring it to show cause within thirty days why it should not be struck off the register of companies and the Registrar General shall serve such notice accordingly, specifying the contravention or breach complained of, by causing the same to be delivered personally or sent by prepaid registered post to the secretary of the company at its registered office and in the case of a notice sent by post it shall be deemed to have been served on the fifth day after the posting of the registered envelope or packet containing the same.

(8)    If any company fails within thirty days of the service of a notice under the provisions of subsection (7) to show cause why it should not be struck off the register or to satisfy the Bank that the contravention or breach complained of has been discontinued and will not be repeated, then the Bank may in writing direct the Registrar General to strike the company off the register; and the Registrar General shall act accordingly and thereupon the company shall be dissolved.

(9)    Upon the removal of a company pursuant to this section, the provisions of section 271(4) to 274 (inclusive) of the Companies Act (*Ch. 308*) shall have effect in relation to such company as they have effect in relation to any company removed from the register pursuant to that Act.

**5.    Prohibition against carrying on banking, trust or money transmission business without a licence.**

No person shall carry on —

    (a)    a banking business;

    (b)    a trust business; or

    (c)    a money transmission business,

from within The Bahamas, whether or not such business is carried on in The Bahamas unless it is in possession of a valid licence granted by the Bank to carry on such business.

## APPLICATION AND GRANT OF A LICENCE

### 6.    Application for a bank or trust company licence.

(1)    Any company desirous of carrying on—

    (a)    a banking business; or

    (b)    a trust business;

from within The Bahamas, shall make application to the Bank for the grant of a licence.

(2)    An application made pursuant to subsection (1) shall —

    (a)    be in writing and contain such information and particulars as may be prescribed;

    (b)    be accompanied by such references, as may be prescribed.

(3)    A group of persons may, where the group proposes to form a company for the purpose of carrying on a banking business or a trust business, make application to the Bank for an intimation as to whether or not the company will be authorised to carry on such business upon its incorporation.

(4)    The Governor may by Regulation exempt any specified person or class of persons, or any specified class or part of any class of banking or trust business from the provisions of section 6(1), or of any regulations made pursuant to this Act, subject to such terms and conditions as may, in the Governor's opinion, be appropriate.

### 7.    Consideration of application by the Bank.

The Bank shall, in considering an application made pursuant to section 6(1), have regard to —

    (a)    the incorporation and ownership structure of the company;

    (b)    the nature and sufficiency of the financial resources of the applicant to provide continuing financial support for the bank or trust company, as the case may be;

    (c)    the soundness and feasibility of the business plan;

    (d)    the best interests of the financial system in The Bahamas;

    (e)    the public interest;

and shall, in every case in which an application is made, advise the Minister of the Bank's decision to either grant or refuse the grant of a licence to the applicant.

**8.  Criteria for Bank in determining if a person is fit and proper.**

(1)  The Bank shall, in considering an application for a licence or registration under this Act, have regard as to whether the applicant is fit and proper.

(2)  In determining whether a person is or remains a fit and proper person for the purposes of this Act, the Bank shall have regard to all the circumstances, including the person's —

    (a)  honesty, integrity and reputation;

    (b)  competence and capability;

    (c)  financial soundness; and

(d)  previous disciplinary record, general compliance history including whether the Bank or any other domestic regulatory authority, a Supervisory Authority, or other foreign regulatory body, has previously imposed a disciplinary sanction on such person.

(di)

(3)  The Bank shall refuse to grant a licence or to register a person, where the Bank is of the opinion that the business to which the application relates would not be carried on by fit and proper persons.

**9.  Grant of a licence.**

(1)  The Bank may if satisfied with respect to the matters set out in subsection (1) of section 8, grant a licence to the applicant, subject to such terms and conditions, if any, as the Bank deems necessary.

(2)  The Bank shall not grant a licence to a bank or trust company having its head office or its registered office outside The Bahamas unless —

    (a)  such bank or trust company designates and notifies to the Bank —

        (i)  a principal office in The Bahamas;

        (ii)  by name one of its officers who is to be the bank's or trust company's authorised agent in The Bahamas; and

        (iii)  by name another of its officers who in the absence or inability of the officer named under subparagraph (ii) is to be the bank's or trust company's authorised agent in The Bahamas;

    (b)  the Bank is satisfied that the bank or trust company is subject to adequate consolidated supervision by the Supervisory Authority and that the Supervisory Authority makes no objection to the establishment of the branch or subsidiary in The Bahamas;

     (c)    there are no constraints on internal and external audits imposed by the Supervisory Authority;

     (d)    the Supervisory Authority —

         (i)    is permitted to examine, wherever they are kept, the books of the bank or trust company;

         (ii)   is informed where the bank or trust company will be managed; and

         (iii)  has agreed to inform the Bank as soon as reasonably possible of any circumstances that arise which may seriously jeopardise the interests of creditors of the bank or trust company.

## 10.  Conditions on grant of a licence.

(1)    It shall be a condition of every licence granted to a bank or trust company to which section 9 applies, that the bank or trust company shall forthwith notify the Bank in writing of any change of —

     (a)    its principal office in The Bahamas; or

     (b)    either or both of the officers designated pursuant to section 9(2) (a)(ii) or (iii).

(2)    The Bank may at any time by notice in writing —

     (a)    make the licence subject to such conditions or limitations that are consistent with this Act and that relate to the business of the bank or trust company as the Bank considers necessary;

     (b)    amend or revoke any authorization contained in the licence or any condition or limitation to which the licence is subject:

Provided that before taking any action under paragraph (a) or (b), the Bank shall provide the bank or trust company with an opportunity to make written representations regarding any proposed action within such time as may be specified in the notice, but not being less than seven days.

## MONEY TRANSMISSION BUSINESSES AND AGENTS

## 11.  Application for a licence for a Money Transmission Service Provider.

(1)    Any person other than a bank or trust company licensed under this Act, who is desirous of carrying on a money transmission business as a Money Transmission Service Provider from within The Bahamas

shall make application to the Bank for the grant of a licence.

(2)  An application made pursuant to subsection (1) shall —

    (a)  be in writing and contain such information and particulars as may be prescribed;

    (b)  be accompanied by such number of references, as may be prescribed.

(3)  In considering an application made under subsection (1), the Bank shall have regard to such matter as may be prescribed by regulation.

## 12.  Registration of Money Transmission Agents.

Any person who desires to carry on the business of providing money transmission services as a Money Transmission Agent shall, subject to such terms and conditions as the Bank may require, register with the Bank.

## REGISTERED REPRESENTATIVES

## 13.  Registered Representatives.

(1)  No person shall be registered as a Registered Representative (whether or not such business is carried on in or from within The Bahamas) unless that person is —

    (a)  in possession of a valid licence granted by the Bank pursuant to section 9 of this Act; or

    (b)  a Financial and Corporate Service Provider, who is registered with the Bank to carry on such business.

(2)  A Financial and Corporate Service Provider who is desirous of being registered as a Registered Representative shall first make application to the Bank.

(3)  An application made pursuant to subsection (2) shall be in writing and contain such information and particulars as may be prescribed.

(4)  In considering an application made under subsection (2), the Bank shall have regard to such matter as may be prescribed by regulation.

## 14.  Bank may cancel registration, etc.

(1)  Subject to subsection (2) the Bank may, by notice in writing —

    (a)  cancel any registration granted pursuant to section 12 or 13(1)(b);

    (b)  withdraw any exemption granted pursuant to section 6(4).

(2)     The Bank shall, before cancelling a registration or withdrawing an exemption, afford a person in respect of whom it proposes to take action pursuant to paragraph (a) or (b) of subsection (1), an opportunity to make written representations regarding any proposed action within such time as may be specified in the notice, but not being less than seven days.

(3)     Whenever the Bank shall cancel a registration or withdraw any exemption under subsection (1), the Bank may cause notice of such action to be published in the Gazette.

(4)     Notwithstanding anything to the contrary in any trust instrument, where the Bank is satisfied that in the interests of a trust it is necessary for all or any of the trusts for which the company is acting as trustee to be transferred to a new trustee for administration by such trustee, the Bank may order the transfer of any such trust to a new trustee, and make such supplemental orders or give such directions, as it deems fit.

# PART III – OWNERSHIP OF LICENSEES

## TRANSFER OR OTHER DISPOSITION OF SHARES

### 15.   Shares, etc., not to be issued or transferred without approval.

(1)     No shares in a company or any other securities of such company which is a licensee under this Act shall be issued and no issued shares shall be transferred or disposed of in any manner without the prior approval of the Bank.

(2)     All dividends of the shareholders of a bank or trust company shall be paid out of the profits and not out of the subscribed capital of the bank or trust company.

(3)     No person shall become a controller or an indirect controller of a licensee without obtaining the prior approval of the Bank.

(4)     In subsection (1) the reference to shares being transferred or disposed of includes not only the transfer or disposal of the legal interest in the shares but also the transfer or disposal of any beneficial interest in the shares.

(5)     The Bank may by notice in writing exempt any person or class of persons or any class or description of shares or interest in shares from the provisions of this section subject to such terms and conditions, if any, as the Bank may deem necessary and may make such further transitional provisions as the Bank considers necessary or expedient for the purposes of this section .

## CONTROLLERS

### 16. Grant of approval in relation to controllers of a licensee.

    (1)    The Bank may approve an application made by a person pursuant to subsection (3) of section 15, if satisfied that —

        (a)    the person is a fit and proper person;

        (b)    having regard to the likely influence of the person, the licensee will or will continue to conduct its business prudently and to comply with the provisions of this Act; and

        (c)    it is in the best interest of the financial system of The Bahamas to approve the application.

    (2)    Any approval under this section may be granted to any person subject to such conditions as the Bank may determine, including but not limited to any condition —

        (a)    restricting the controller's disposal or further acquisition of shares, or other securities, or voting power, in the licensee; or

        (b)    restricting the controller's exercise of voting power in the licensee.

    (3)    The Bank may at any time add to, vary or revoke a condition imposed under subsection (2).

    (4)    A condition imposed under subsection (2) shall have effect notwithstanding any provision of the Companies Act *(Ch. 308)*, any other law, or anything contained in the memorandum or articles of association of the licensee.

### 17. Objection to an existing controller or indirect controller of a licensee.

    (1)    The Bank may serve a written notice of objection on a person referred to in subsection 15(3) if the Bank is satisfied that —

        (a)    the person has ceased to be a fit and proper person;

        (b)    having regard to the likely influence of the person, there is a material risk that, the licensee —

            (i)    will fail to conduct, or is failing to conduct, its business prudently; or

            (ii)    will fail to comply with, or is failing to comply with, the provisions of this Act;

        (c)    a condition of approval imposed on the person under subsection 16(2) has not been complied with;

- (d) the person has furnished a false or misleading document or information in connection with an application made under subsection 15(1);

- (e) the person has knowingly failed or refused to cooperate with the Bank in the performance of its duties;

- (f) the Bank would not have been satisfied as to any matters specified in subsection (1) had it been aware, at that time, of circumstances relevant to the person's application under subsection 15(3); or

- (g) it is no longer in the best interests of the financial system in The Bahamas for the person to continue to be a controller or an indirect controller, as the case may be, of a licensee.

(2) The Bank shall, in any written notice of objection, specify a reasonable period within which the person named in the notice shall —

- (a) take such steps as are necessary to ensure that he ceases to be a controller or an indirect controller, as the case may be; or

- (b) comply with such direction or directions as the Bank may make under section 18.

(3) A person served with a notice of objection under this section shall comply with the notice.

(4) Notwithstanding the provisions of subsections (2) and (3), a person who has been served with a notice of objection pursuant to subsection (1) may, within a period of seven days commencing the day after which the notice is served, make written representations to the Bank which the Bank shall take into account in determining whether to vary or revoke the notice.

## 18. Power to make directions.

(1) Subject to section 19, the Bank —

- (a) where the Bank is satisfied that a person has failed to comply with a condition imposed under subsection (2) of section 16; or

- (b) where the Bank has served a written notice of objection under section 17, it —

  - (i) may by notice in writing, direct the transfer or disposal of all or any of the shares or other securities in a licensee held by such person or an associate of such person within such time, or subject to such conditions, as the Bank considers appropriate;

        (ii)    may by notice in writing, restrict the transfer or disposal of shares or other securities specified pursuant to sub-paragraph (i); or

        (iii)   may by notice in writing, make such other direction as the Bank considers appropriate.

(2)    A person to whom a notice is given under subsection (1) shall comply with such direction or directions as may be specified in the notice.

(3)    Notwithstanding any of the provisions of the Companies Act (*Ch. 308*), any other law, or anything contained in the memorandum or articles of association of a licensee, a direction or restriction by the Bank under subsection (1) shall apply so that, until a transfer or disposal is effected in accordance with the direction, or the restriction on the transfer or disposal is removed—

    (a)   no voting rights shall be exercisable in respect of the specified shares or other securities unless the Bank expressly permits such rights to be exercised;

    (b)   no shares or other securities of the licensee shall be issued or offered, whether by way of rights, bonus or otherwise, in respect of the specified shares or other securities unless the Bank expressly permits such issue or offer; and

    (c)   except in a liquidation of the licensee, no payment shall be made by the licensee of any amount, whether by way of dividends or otherwise, in respect of the specified shares or other securities unless the Bank expressly authorises such payment.

(4)    For the purposes of this section , a person, A is an associate of another person B where —

    (a)   A is the spouse, parent, remoter lineal ancestor step-parent, son, daughter, remoter issue, step-son, step-daughter, brother or sister of B;

    (b)   A is a company whose directors are accustomed or under an obligation, whether formal or informal, to act in accordance with the directions, instructions or wishes —

        (i)    of B; or

        (ii)   where B is a company, of the directors of B;

    (c)   B is a company whose directors are accustomed or under an obligation, whether formal or informal, to act in accordance with the directions, instructions or wishes —

        (i)    of A; or

        (ii)    where A is a company, of the directors of A;

(d)    A is a person who is accustomed or under an obligation, whether formal or informal, to act in accordance with the directions, instructions or wishes of B;

(e)    B is a person who is accustomed or under an obligation, whether formal or informal, to act in accordance with the directions, instructions or wishes of A;

(f)    A is a related company of B;

(g)    A is a company in which B, alone or together with other associates of B as referred to in paragraphs (b) to (f), is in a position to control not less than twenty per cent of the voting power in A;

(h)    B is a company in which A, alone or together with other associates of A as described in paragraphs (b) to (f), is in a position to control not less than twenty percent of the voting power in B; or

(i)    A is a person with whom B has an agreement or arrangement, whether oral or in writing, express or implied, to act together with respect to the —

        (a)    acquisition, holding or disposal, of shares or other interests in the licensee; or

        (b)    exercise of their voting power in relation to the licensee.

## 19.   Offences.

(1)    A person who —

    (a)    contravenes sections 15(1) or (3), 17(3) or 18(2); or

    (b)    fails to comply with a condition imposed under subsection (2) or (3) of section 16,

commits an offence and shall be liable on summary conviction —

        (i)    in the case of an individual, to a fine not exceeding fifty thousand dollars or to imprisonment for a term not exceeding two years, or to both such fine and imprisonment;

        (ii)    in the case of a company, to a fine not exceeding one hundred thousand dollars;

        (iii)    in the case of a continuing offence by an individual, to a further fine not exceeding five hundred dollars for each day, or part of a day, during which the offence continues; and

          (iv)    in the case of a continuing offence by a company, to a further fine not exceeding one thousand dollars or each day, or part of a day, during which the offence continues.

(2)    It shall be a defence for a person who is charged with an offence in respect of a contravention of subsection (1) of section 15 to prove that such person —

    (a)    was not aware that he had committed the contravention; and

    (b)    within fourteen days of becoming aware that he had committed the contravention —

          (i)    notified the Bank of the contravention; and

          (ii)    within such time as was determined by the Bank, took such actions in relation to his shareholding or control of the voting power in the licensee as was directed by the Bank.

# PART IV – DUTIES AND OBLIGATIONS OF LICENSEES

## 20.  Licensee to publish statement of accounts.

(1)    Every licensee shall, within four months of the end of its financial year, publish a true and full yearly statement of its accounts and the auditor of the licensee shall certify that such statement is properly drawn up so as to exhibit a true and correct view of the state of the licensee's affairs as shown by the books of the licensee; provided that the Bank may, if the Bank sees fit, exempt any licensee from the provisions of this section.

(2)    Such statement shall be signed by the manager or by such other person or officer of the licensee as may from time to time be authorised by the licensee to sign such statement on behalf of the licensee; and the correctness thereof shall be declared to in such manner and by such persons as the Bank may direct.

(3)    Such statements shall be published in such form and manner and shall contain such particulars as the Bank may from time to time direct.

(4)    Every licensee shall provide within four months of the end of its financial year a copy of its annual financial statement to the Bank, unless prior written approval for an extension of time has been granted by the Bank.

(5)    The Bank may, for such further period not exceeding sixty days it deems expedient, extend the time periods referred to in subsections (1)

and (4).

## 21. Licensee to notify Bank of appointment of auditor.

(1)  Subject to subsection (2), a licensee shall, within fourteen days of the appointment of an auditor, notify the Bank thereof.

(2)  The Bank may at any time require a licensee to replace an auditor by notice in writing delivered to the usual place of business of the licensee and the auditor.

## 22. Powers and obligations of auditors.

(3)  An auditor of a licensee shall —

   (a)  have the right of access at all times to the books, accounts and vouchers of the licensee and be entitled to require from the licensee such information and explanations as he reasonably considers necessary for the performance of his duties as auditor;

   (b)  give the Inspector immediate written notification of the following matters —

      (i)  his intention to resign before the expiration of his term of office as auditor;

      (ii)  his intention not to seek to be reappointed as auditor; and

      (iii)  a decision to include a modification of his report on the licensee's financial statements and, in particular, a qualification or denial of his opinion, or the statement of an adverse opinion.

(4)  An auditor or former auditor of a licensee shall give written notice to the Inspector of any fact or matter —

   (a)  of which such auditor has or had become aware; and

   (b)  which is likely to be of material significance for the discharge, in relation to the licensee, of the functions of the Inspector under this Act.

(5)  A notice under subsection (4) shall be given —

   (a)  in the case of an auditor, immediately after the auditor, becomes aware of the matters in respect of which notice is to be given to the Inspector; and

   (b)  in the case of a former auditor, as soon as reasonably practicable after this provision comes into force.

(6)  An auditor or former auditor who fails to comply with this section commits an offence and shall be liable on summary conviction to a

fine of twenty-five thousand dollars.

(7)     This section shall apply to any matter of which an auditor or former auditor of a licensee has or had become aware in his capacity as auditor and which relates to the business or affairs of the licensee or any related company.

(8)     In this section **"related company"**, in relation to a licensee, means —

    (a)     a parent company, subsidiary company or associate company of that licensee;

    (b)     a subsidiary company of a parent company of the licensee;

    (c)     a parent company of a subsidiary company of the licensee; or

    (d)     a company wherein a controlling shareholder of that licensee, either alone or with one or more associates, holds ten per cent or more of the shares or is entitled to exercise, or to control the exercise of more than ten per cent of the voting power at a general meeting.

(9)     No duty of confidentiality to which an auditor or former auditor of a licensee may be subject shall be regarded as having been breached by reason of his communicating in good faith to the Inspector, pursuant to —

    (a)     paragraph (b) of subsection (3);

    (b)     subsection (4); or

    (c)     paragraphs (a), (b) and (c) of subsection 28(2),

any information or opinion which is relevant to the Inspector's functions and responsibilities under this Act.

## 23.   Licensee to notify Bank of material information.

(1)     A licensee shall immediately notify the Bank of any material information that may negatively affect the fitness and propriety of a director or senior manager of the licensee.

(2)     A licensee which contravenes of fails to comply with subsection (1) commits an offence and shall be liable on summary conviction to a fine not exceeding one hundred thousand dollars.

(3)     Where a licensee is convicted of an offence pursuant to paragraph (a) of subsection (2), every director, manager, secretary or other officer of the licensee is guilty of the offence where it is proved that the default which constituted the offence took place with that person's knowledge, authority, permission or implied or express consent and is liable on summary conviction to a fine not exceeding fifty thousand dollars.

## 24.    Licensee to furnish information to Bank.

(1)    Every person who is subject under this Act to the supervision of the Bank shall furnish the Bank with such information including returns at such times and in such form as the Bank may reasonably require for the proper discharge of its functions under this Act or any regulations made under this Act.

(2)    A person who fails without reasonable excuse to furnish any information required by the Bank under this section commits an offence and shall be liable on summary conviction —

    (a)    in the case of an individual, to a fine not exceeding fifty thousand dollars and, in the case of a continuing offence, to a further fine not exceeding five hundred dollars for each day, or part of a day, during which the offence continues; or

    (b)    in the case of a company, to a fine not exceeding one hundred thousand dollars and, in the case of a continuing offence, to a further fine not exceeding one thousand dollars for each day, or part of a day, during which the offence continues.

## 25.    Licensee to inform on potential Insolvency.

(1)    A licensee shall immediately inform the Bank where such licensee —

    (a)    is, or is likely to become, insolvent;

    (b)    is, or is likely to become, unable to meet its obligations; or

    (c)    has suspended, or is about to suspend, payments.

(2)    The Bank may in writing —

    (a)    where a licensee is, or appears likely to become, unable to meet its obligations; or

    (b)    where a licensee, in the opinion of the Bank, is carrying on business in a manner detrimental to the interest of the —

        (i)    public;

        (ii)    depositors of the licensee;

        (iii)    beneficiaries of any trust; or

        (iv)    other creditors of the licensee,

            (aa)    require the manager or authorised agent of such licensee to supply within such reasonable time as may be specified-the financial statements of such licensee, as of a date determined by the Bank, audited by an auditor who is a chartered accountant or a certified public accountant approved by the Bank; and

(bb)    such other information relating to the licensee as the Bank may specify.

(3)    A person who —

    (a)    fails to comply with the written requirements of the Bank made pursuant to subsection (2); or

    (b)    in response to the written requirements of the Bank made pursuant to subsection (2), knowingly or wilfully supplies false information to the Bank, commits an offence and shall be liable on summary conviction to a fine not exceeding one hundred thousand dollars, or to imprisonment for a term not exceeding two years, or to both such fine and imprisonment.

(4)    A bank that receives any deposit while insolvent commits an offence, and shall be liable on summary conviction to a fine not exceeding fifty thousand dollars.

(5)    Any director or officer of a bank described in subsection (4) who knows or, in the proper performance of his duties, should know of the insolvency of such bank, and who receives, or authorizes the acceptance of a deposit, commits an offence and shall be liable on summary conviction to a fine not exceeding twenty five thousand dollars and to imprisonment for a term not exceeding two years.

### 26.    Licensee to obtain approval to have a subsidiary, etc. outside The Bahamas.

A licensee incorporated or registered in The Bahamas shall not without the prior written approval of the Bank establish, outside of The Bahamas, a subsidiary, branch, agency or representative office.

# PART V - SUPERVISION OF LICENSEES AND REGISTRANTS

## INSPECTOR OF BANKS AND TRUST COMPANIES

### 27.    Establishment of Office of Inspector of Banks and Trust Companies.

There is hereby established within the Central Bank of The Bahamas an office to be known as the Office of Inspector of Banks and Trust Companies and the functions of that office shall be performed by such person as the Governor considers suitable for the purpose of performing the powers and duties assigned to such Inspector under this Act.

## 28.  Duties of Inspector.

(1)  It shall be the duty of the Inspector —

   (a)  to maintain a general review of bank and trust company practice in The Bahamas;

   (b)  to conduct, whenever he thinks fit and when required by the Governor, on-site examinations and off-site supervision of the business of the licensee for the purpose of satisfying himself that the provisions of this Act or any written law administered by the Bank or relating to compliance with anti-money laundering or countering the financing of terrorism and proliferation financing requirements are being complied with, that the licensee is in sound financial position and, after the conclusion of each examination or supervision, to report to the Governor, or in such cases where the Inspector is unable to conduct such examination or supervision, to appoint an auditor, at the expense of the licensee, to conduct such examination or supervision and to report thereon to the Governor; and the Governor may assess charges to recover the cost of such examination or supervision;

   (c)  to examine and to report on the several returns delivered to the Governor pursuant to section 20 of this Act;

   (d)  to examine and make recommendations to the Governor with respect to applications for licences;

   (e)  to examine, by way of receipt of regular returns or in such other manner as he thinks necessary the affairs or business of any licensee carrying on business in or from within The Bahamas for the purpose of satisfying himself that the Act is being complied with and that the licensee is in sound financial position;

   (f)  to inspect and supervise banks and trust companies in accordance with the Rules for Inspection and Supervision set out in the *First Schedule* so as to ensure the preservation of the soundness and efficiency of the banking system.

(2)  In the performance of his functions under this Act and subject to the provisions of section 77, the Inspector shall be entitled at all reasonable times —

   (a)  to have access to such books, records, vouchers, documents, cash and securities of any licensee or;

   (b)  to call upon the manager or any officer of any licensee for such information or explanation;

(c)    to call upon the auditors of any licensee for such auditor's reports, working papers, information or explanation;

(d)    to require that the auditor of a licensee report to the Inspector on the extent of the procedures of the auditor in the examination of the annual financial statements and may require that the auditors enlarge the scope of that examination or direct that any other particular procedure be performed in any particular case;

(e)    to require that the auditor make a particular examination relating to the adequacy of the procedures adopted by the licensee for the safety of its creditors and shareholders, or the beneficiaries of any trust, or any other examination, at the expense of the licensee, as considered necessary by the Inspector,

as the Inspector may reasonably require for the purpose of enabling him to perform his functions under this Act.

(3)    The Inspector may, with the approval of the Governor, in writing authorise any other person to assist the Inspector in the performance of his functions under this Act.

(4)    Where any person —

(a)    fails to comply with any requirement made by the Inspector, pursuant to subsection (2), within the period determined by the Inspector or within such further period as the Inspector may determine, it shall be presumed, in the absence of satisfactory evidence being furnished by the licensee justifying such a failure to comply with such requirement, that the licensee concerned has been carrying on business in contravention of the terms of its licence with effect from the date of such failure;

(b)    knowingly or intentionally supplies false or misleading information to the Inspector or any person authorised to assist the Inspector;

(c)    grossly violates, as an auditor of a licensee in the performance of an audit, his duties as set out in subsection (1) of section 20, or makes untrue statements in an audit report or omits essential facts or fails to request pertinent information from the licensee or fails to report his findings to the Inspector; or

(d)    perpetrates a fraud or a crime which involves the making of misrepresentations in advertising or otherwise or using the domicile of The Bahamas for such purposes he shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding one hundred thousand dollars or to a term of

> imprisonment not exceeding five years or to both such fine and imprisonment and in the case of a continuing offence to a fine not exceeding two thousand dollars for each day during which the offence continues.

## 29.  Sanctions authorized by Bank.

(1)  The Bank may —

    (a)  by order, revoke the licence of a licensee —

        (i)  if, in the opinion of the Bank, the licensee is carrying on its business in a manner detrimental to the public interest or to the interests of its depositors or the beneficiaries of any trust or other creditors or is either in The Bahamas or elsewhere contravening the provisions of this or any other Act or of any order or regulations made under this Act, or any term or condition subject to which the licence was issued;

        (ii)  if the licensee has ceased to carry on banking business or trust business;

        (iii)  if the licensee becomes bankrupt or goes into liquidation or is wound up or otherwise dissolved;

        (iv)  if a licensee is, or appears likely to become, unable to meet its obligations as they fall due;

        (v)  if it appears to the Bank that the licensee has furnished information or documents to the Bank in connection with its application for a licence which is or are false or misleading in a material particular or has failed to inform the Bank of a material change in respect of information so furnished

    and the Bank shall subsequently advise the Minister of its decision;

    (b)  impose, amend or vary conditions upon the licence;

    (c)  require the substitution or removal of any director or officer of the licensee;

    (d)  at the expense of the licensee, appoint a person to advise the licensee on the proper conduct of its affairs and to report to the Bank thereon within three months of the date of his appointment;

    (e)  at the expense of the licensee, appoint a receiver or receiver manager to assume control of the licensee's affairs in the interest of creditors who will have all the powers of a receiver

under the Companies Act (*Ch. 308*);

(f)   at the expense of the bank, appoint a statutory administrator of the bank, who meets the qualifications established by the Bank including fit and proper person criteria required to be met by directors and officers of banks, to manage the bank on its behalf.

(g)   issue written directions requiring a licensee to cease or refrain from committing an act or pursuing a course of conduct that is an unsafe or unsound practice, or that is in contravention of any law in The Bahamas or elsewhere, or to perform a remedial act, or to do anything required to be done and such directions include the power to —

    (i)   restrict the licensee or a subsidiary of a licensee from further lending;

    (ii)  limit a licensee's maximum individual and aggregate exposures, including off-balance sheet transactions, investments, or capital expenditure;

    (iii)  require the licensee or a subsidiary to dispose of specified assets;

    (iv)  require the licensee to suspend for a specified period of time, alter, reduce, or terminate any activity that in the opinion of the Bank has caused material losses to the licensee or its subsidiary, is detrimental to the interest of depositors, the beneficiaries of any trust or other creditors or presents excessive risk to the licensee or its subsidiary;

    (v)  prohibit the licensee or its subsidiary from paying a dividend or making a distribution on its share capital or issue rights, shares or bonus shares to shareholders or to any person claiming under their authority;

    (vi)  require shareholders of the licensee to contribute additional capital; and

    (vii) require such action to be taken by the licensee as the Bank considers necessary.

(2)   For the avoidance of doubt, the Bank may impose any of the sanctions set out in section 29(1)(c), (d), (e), (f) and (g) of this Act, against a Private Trust Company or a Registered Representative where, in the opinion of the Bank, the Private Trust Company or a Registered Representative is, whether in The Bahamas or elsewhere —

(a)   contravening any of the provisions of this or any other Act or of any order or regulations made under this Act, or any term or condition subject to which registration pursuant to section   13,

or an exemption pursuant to subsection 6(4), was granted;

    (b)    contravening or failing to comply with a direction of the Bank; or

    (c)    carrying on its business in a manner that is detrimental to the reputation of The Bahamas.

(3)    Every person who contravenes the provisions of this section  or of section  shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding one hundred thousand dollars or to imprisonment for a term not exceeding five years or to both such fine and imprisonment and in the case of a continuing offence to a fine not exceeding two thousand five hundred dollars for each day during which the offence continues.

(4)    Whenever the Bank is of the opinion that any action under subsection (1)(a)(i) and (b) should be taken against a licensee, the Bank may forthwith suspend the licence of such licensee and before taking such action the Bank shall give that licensee notice in writing of its intention so to do setting out in such notice the grounds on which it proposes to act and shall afford the licensee within such time as may be specified therein, not being less than seven days, an opportunity of submitting to the Bank a written statement of objection to such action, and thereafter the Bank shall advise the licensee of its decision.

(5)    Whenever the Bank shall suspend a licence under subsection (4) the Bank may cause notice of such suspension to be published in the Gazette.

(6)    Any suspension of a licence under subsection (4) shall be for a period of ninety days, or until the Bank takes action under subsection (1)(a)(i) or (b) or until the Bank notifies the licensee that the suspension is removed, whichever period is the shorter.

(7)    Where the Bank suspends or revokes a licence under this section, the Bank may apply to the Supreme Court for an order that the licensee be forthwith wound up by the court in which case the provisions of the Companies Act relating to the winding up of a company by the court shall, *mutatis mutandis*, apply.

(6)    The Bank may, in any case in which a licensee or person who has at any time been a licensee is being wound up voluntarily, apply to the Supreme Court if the Bank considers that the winding up is not being conducted in the best interests of its depositors, the beneficiaries of any trust or other creditors, and the court shall make such order as it shall consider appropriate in the winding up of the licensee.

## 30.   Surrender of Licence.

    (1)    A licensee or a registered representative or money transmission agent, which has ceased to carry on the business in respect of which a licence or certificate of registration, as the case may be, was granted by the Bank, shall apply to the Bank to surrender its licence or certificate of registration.

    (2)    The Bank may upon an application made pursuant to subsection (1) approve the surrender upon such terms and conditions as the Bank deems appropriate.

## 31.   Winding up of non-banking licensees and registrants.

Notwithstanding section 190(1) and 211 of the Companies Act (*Ch. 308*), no trust company, money transmission service provider licensed under this Act or registered representative or money transmission agent registered with the Bank may —

    (a)    be wound up voluntarily; or

    (b)    petition the Supreme Court to be wound up,

except with the prior written approval of the Bank.

# FOREIGN SUPERVISORY AUTHORITIES

## 32.   Inspection by supervisory authority.

    (1)    A Supervisory Authority which is responsible for regulating a bank or trust company with a branch or subsidiary incorporated inside The Bahamas may upon written notification to and approval by the Inspector, conduct an inspection, under conditions of confidentiality, and subject to the conditions set out in subsection (2), solely for purposes of consolidated supervision, of the books and accounts of any branch or subsidiary of that bank or trust company in The Bahamas and may gather only such information as is necessary for the performance of consolidated supervision of any branch or subsidiary of that bank or trust company in The Bahamas, being information as to whether such branch or subsidiary of that bank or trust company as a constituent of the banking group —

    (a)    is adequately organized;

    (b)    has adequate risk management systems and appropriately identifies, limits and monitors risks inherent in that bank or trust company's business activities;

     (c)   is managed by persons who are fit and proper for the conduct of business activities;

     (d)   complies with capital-adequacy and risk-diversification requirements on a consolidated basis; and

     (e)   correctly complies with its reporting duties to the Supervisory Authority.

(2)   Any branch or subsidiary of a bank or trust company to which subsection (1) applies shall, subject to the conditions set out below, permit the Supervisory Authority at all reasonable times, to conduct its inspection under subsection (1), where the Supervisory Authority —

     (a)   has obtained the prior written approval of the Inspector;

     (b)   is prohibited by its domestic laws from divulging information obtained in the course of the inspection to any other person or where the Supervisory authority has given such written undertaking, as the Inspector may require, as to the confidentiality of the information obtained;

     (c)   has given to the Inspector a written undertaking —

        (i)   to comply with the provisions of this Act and any condition imposed by the Inspector under this section;

        (ii)   to use the information obtained exclusively for the purpose of consolidated supervision;

        (iii)   that it shall not transmit information obtained during the course of its inspection to any other authorities or bodies without the written consent of the Inspector;

     (d)   agrees to subsequently report to the Inspector on the general results of the inspection.

(3)   Where information concerning criminal or penal matters comes to the attention of the Supervisory Authority in the course of an inspection, and the Supervisory Authority wishes to convey such information to any person or entity in the Supervisory Authority's home country, or elsewhere, the Supervisory Authority shall not, without first obtaining the consent in writing of the Inspector, divulge such information to any person or entity in the home country of the Supervisory Authority or elsewhere:

     Provided that in all cases, the Supervisory Authority shall inform the Inspector of any information concerning criminal or penal matters which come to the Supervisory Authority's attention in the course of an inspection.

(4)     The Supervisory Authority, in carrying out an inspection under subsection (1), shall not have access to information relating to the assets under management or deposit operations of individual customers of a licensee:

     Provided however, that where the Supervisory Authority during an inspection within The Bahamas wishes to gain access to information, which directly or indirectly relates to assets under management or deposit operations of any individual customer for the purpose of assessing any risks and addressing any specific supervisory concerns, the Supervisory Authority shall inform the Inspector and the Inspector shall gather the information himself and shall, upon being satisfied that the information meets the requirements set out in this subsection, transmit it to the Supervisory Authority requesting it.

(5)     The Inspector or any authorized agent of the Inspector may, whenever the Inspector thinks fit or upon the request of a licensee accompany a Supervisory Authority during its inspection within The Bahamas of a licensee, pursuant to this section.

## 33.   Supervisory Authority may appoint other body to conduct inspection.

(1)     A Supervisory Authority may, with the prior written approval of the Inspector, appoint another body to conduct the inspection referred to in subsection (1) of section 32 and in such event the provisions of this section and subsections (1), (2), (3), (4) and (5) of section 32 shall apply to the appointed body in the same way as they apply to the Supervisory Authority.

(2)     The Inspector may, at any time after granting approval for an inspection under this section require the Supervisory Authority to comply with such other conditions as the Inspector may determine.

## 34.   Confidentiality of reports of Inspector and Supervisory Authority.

(1)     Any person who has, by any means, access to a report or other information or document produced by the Inspector or a Supervisory Authority upon examination or inspection of a licensee under section 28 or 32, by reason of his acting in any of the following capacities —

    (a)     director, officer, employee or agent of any licensee or former licensee;

    (b)     counsel and attorney, consultant or auditor of the Bank or as an employee or agent of such counsel and attorney, consultant or auditor;

     (c)    counsel and attorney, consultant, auditor, accountant, receiver or liquidator of any licensee or former licensee or as an employee or agent of such counsel and attorney, consultant, auditor, accountant, receiver or liquidator;

     (d)    auditor of any customer of any licensee or former licensee or as an employee or agent of such auditor,

shall not communicate the report or other information or document or any part thereof to any person other than a director, officer, employee or agent of the licensee without the prior written permission of the Inspector.

(2)    The Inspector may grant permission under subsection (1) subject to such conditions as may be determined by the Inspector.

(3)    If any person receives a report or any part of a report or other information or document referred to in subsection (1), knowing or having reasonable grounds to believe, that such report or other information or document or part thereof was communicated to him in contravention of this section, that person shall be guilty of an offence unless he proves —

     (a)    that the report or other information or document or part thereof, as the case may be, was communicated to him contrary to his intention; and

     (b)    where the communication was effected in any written form, that he has conveyed or has taken reasonable steps to convey the report or other information or document or part thereof, as the case may be, to the Inspector.

(4)    Any person guilty of an offence under this section, shall be liable on summary conviction to a fine not exceeding twenty-five thousand dollars or to imprisonment for a term not exceeding two years or to both such fine and imprisonment.

# PART VI – SPECIAL RESOLUTION FRAMEWORK FOR BANKS

## RECOVERY OF BANKS IN FINANCIAL DISTRESS, ETC.

### 35.  Objectives of Resolution framework.

(1)    The powers granted under this Act to —
     (a)    the Bank;

(b)    a statutory administrator appointed by the Bank; or

(c)    a liquidator appointed by the Bank,

in relation to statutory administration or liquidation shall be exercised by the Bank, a statutory administrator or liquidator appointed by the Bank, as the case may be, to achieve the following objectives of —

   (i)    maintaining financial stability;

   (ii)   protecting and enhancing public confidence in the stability of the banking system of The Bahamas;

   (iii)  protecting depositors including by ensuring prompt payouts of deposits of a bank in liquidation;

   (iv)   minimizing the costs of resolution and avoiding unnecessary destruction of value;

   (v)    protecting public funds.

(2)    In subsection (1)(a), the reference to financial stability includes, in particular, a reference to the continuity of critical banking services.

(3)    The order in which the objectives are listed in this section is not significant and they are to be balanced by the Bank as appropriate in each case.

## 36.   Recovery Plans.

(1)    A bank shall prepare and submit periodically to the Bank, a plan for the rapid and orderly recovery of such bank based on different scenarios of financial distress or failure, whether on an individual basis or on a group basis.

(2)    The bank's senior management shall be responsible for the development and maintenance of the bank's recovery planning process.

(3)    The Bank may issue a direction to a bank specifying the matters which shall be included in a plan required under subsection (1) and such plan shall be referred to as a **"recovery plan"** or **"the plan"**.

(4)    A bank shall —

   (a)    review its recovery plan at least annually;

   (b)    keep its recovery plan up to date, including updating the plan to reflect any change to the legal or organizational structure of the bank, its business, its financial situation, and any other matter which could have a material effect on or necessitate a change to the recovery plan; and

   (c)    notify the Bank promptly of any material changes to its

recovery plan and, in any event, within one month of making such change.

(5) A bank shall update its recovery plans as frequently as required by the Bank.

(6) Where the Bank is of the opinion that a recovery plan submitted by a bank pursuant to subsection (1) is deficient in any material respect it shall notify the bank in question of the deficiencies in the plan and require such bank to resubmit the recovery plan within a specified time frame and with such revisions as may reasonably be required by the Bank to address any deficiency in the plan.

(7) Revisions required by the Bank to a bank's recovery plan, pursuant subsection (1) may include proposals for changes in the business operations and corporate structure of the bank to facilitate implementation of the plan.

(8) Where a bank fails to submit or resubmit a recovery plan in the period required by the Bank, the Bank may —

    (a) impose more stringent prudential requirements, and restrictions or restrictions, on the growth, activities, or operations of the bank, or any branch or subsidiary thereof; or

    (b) take any other actions the Bank may determine, until such time as the bank resubmits a plan that in the opinion of the Bank, remedies the deficiencies.

(9) The Bank may direct a bank to implement all or a specified part of the bank's recovery plan.

(10) A plan submitted in accordance with this section shall not be binding on the Bank or its agents, in the recovery of a bank.

(11) No private right of action may be based on any plan submitted in accordance with this section.

## 37.  Resolution Plans.

(1) The Bank may prepare a resolution plan for a bank (including at a consolidated level in consultation with any other domestic regulatory authority or a Supervisory Authority), using information and analysis submitted by the bank.

(2) A bank shall cooperate with the Bank in the exercise of its powers under subsection (1).

(3) The plan referred to in subsection (1) shall set out options for resolving the bank in different scenarios including systemic instability, and shall include details of how resolution powers and tools may be

applied to resolve the bank where necessary, in a manner that promotes continuity in its critical functions.

(4)    The Bank shall update the resolution plan of a bank as frequently as is necessary given the risk profile of the bank.

(5)    Where the Bank is of the opinion that significant impediments to orderly resolution exist, it may issue a notice directing the bank in writing to address or remove such impediments and the bank shall comply with such direction of the Bank.

(6)    The Bank shall —

    (a)    give reasons for issuing a direction under subsection (5);

    (b)    state when the direction takes effect; and

    (c)    specify a reasonable period within which the bank may make representations to the Bank about the direction.

(7)    The Bank must consider representations made pursuant to subsection (6)(c) and decide —

    (a)    whether to confirm or revoke the notice; and

    (b)    if the notice is revoked, whether to serve a new notice containing a different direction.

(8)    The Bank must serve written notice on the bank of its decision under subsection (7).

(9)    If no representation is made by the bank within the period specified under subsection (6)(c), the Bank must serve written notice on the bank that the notice under subsection (5) is confirmed.

## STATUTORY ADMINISTRATION

### 38.    Appointment of a Statutory Administrator.

(1)    The Bank may, by notice in writing, appoint a statutory administrator pursuant to section 29(1)(f) where —

    (a)    in the opinion of the Bank, a bank —

        (i)    has engaged or is engaging in any unsafe and unsound practice in such a manner as to weaken the bank's condition, threaten depositors' interests or dissipate the bank's assets;

        (ii)    is either in The Bahamas or elsewhere, contravening the provisions of this or any other Act, or of any order or regulations made under this Act, or any directive issued

by the Bank pursuant to this Act, or any term or condition subject to which its licence was issued; or

(b) the bank's capital level falls below (or is likely to fall below within the next twelve months) the minimum regulatory capital required by the Bank;

(c) the capital and value of the assets of the bank have, in the opinion of the Bank, reached or are likely to reach a level or are eroding in a manner that may detrimentally affect its depositors or creditors, with no reasonable prospects of timely restoration of such capital and value;

(d) the Bank has reasonable cause to believe that the bank or its directors, officers or a significant shareholder has engaged or is engaging in illegal activities in a manner which jeopardizes depositors' interests;

(e) the Bank is of the opinion that the realizable value of the assets of the bank is not sufficient to give adequate protection to the depositors and creditors of the bank, or is less than its liabilities, or the bank's financial condition suggests that it will shortly be in that circumstance;

(f) the Bank is of the opinion that the bank is unable to or is likely to become unable to meet its liabilities and other obligations as they mature or become due, or pay its depositors' demands in the normal course of business;

(g) the bank fails in any manner to cooperate with its external auditors; or

(h) the bank fails to cooperate with the Bank to enable the Bank to perform its supervisory responsibilities, including through concealment or failure to submit for inspection any of the bank's books, papers or records.

(2) Where the Bank determines that a statutory administrator should be appointed pursuant to subsection (1), the Bank shall notify the Minister of its decision.

(3) Where the Bank appoints a statutory administrator of a bank, the Bank shall promptly notify the bank of the appointment and shall specify in the notice, the grounds for the appointment.

(4) The Bank may simultaneously publish notice of the appointment of a statutory administrator in the Gazette and in a newspaper of general circulation.

(5) The statutory administrator may be a person from the private sector or an official of the Bank.

(6)     The statutory administrator may be appointed for —

    (a)     a period not exceeding twelve months; and

    (b)     a further period not exceeding twelve months, if it appears to the Bank that additional time is required to ensure an orderly restructuring of the bank under this Act.

(7)     The Bank may —

    (a)     vary the terms of appointment of a statutory administrator;

    (b)     at any time replace a statutory administrator; and

    (c)     remove a statutory administrator prior to the end of any of the periods specified in subsection (6)(a) or (b), by written notice to the statutory administrator.

(8)     The variation of the terms of appointment of a statutory administrator or the termination of such appointment shall take place on such date as is specified in the notice referred to in subsection (7).

(9)     If a statutory administrator has any direct or indirect interest in a bank under statutory administration he shall disclose his interest to the Bank as soon as possible.

(10)    Any transaction involving a bank in statutory administration in which the statutory administrator has a direct or indirect material interest in the matter may be engaged in only with the prior written approval of the Bank.

## 39.   Expenses of the statutory administrator.

The statutory administrator shall receive such remuneration as the Bank may determine and all costs and expenses incurred on account of the statutory administration shall be borne by and charged to the bank under statutory administration.

## 40.   General powers of the statutory administrator.

(1)     Upon the appointment of a statutory administrator —

    (a)     all powers, functions and responsibilities of the shareholders, directors and officers of a bank under statutory administration shall vest in the statutory administrator, except where the statutory administrator requests the shareholders or directors or officers to carry out any activity provided under this Act; and

    (b)     any action or decision taken by or on behalf of the bank subject to statutory administration shall, unless they are taken by or under the authority of the statutory administrator, be null and void.

(2)   The statutory administrator shall have full and exclusive powers to manage and operate the bank, including taking any action as necessary or appropriate to —

    (a)   carry on the business of the bank;

    (b)   exercise shareholders' rights and powers;

    (c)   continue or discontinue any or all of its operations;

    (d)   stop or limit the payment of the bank's obligations;

    (e)   remove any or all directors and officers;

    (f)   employ any necessary officers or employees;

    (g)   execute any instrument in the name of the bank;

    (h)   initiate, defend and conduct in the name of the bank any action or proceedings to which the bank may be a party;

    (i)   so far as the statutory administrator is able to do so, sell or otherwise dispose of a subsidiary of the bank;

    (j)   preserve and safeguard the assets and property of the bank;

    (k)   in order to ensure that it is possible for the performance of critical functions to be legally or operationally separated from the performance of other functions, change the legal or operational structure of a subsidiary of the bank; or

    (l)   implement a plan of action with respect to the bank that has been approved by the Bank.

(3)   The statutory administrator may employ, at the expense of the bank under statutory administration, counsel and attorneys at law, auditors and other independent professionals or consultants to assist the statutory administrator on such terms as the Bank may approve.

## 41.   Central Bank Oversight of Statutory Administrator.

(1)   The statutory administrator shall act in accordance with regulations made pursuant to this Act or directions issued by the Bank to facilitate the purposes of this Act or of regulations made under this Act and shall only be accountable to the Bank for the performance of his duties and the exercise of his powers as statutory administrator.

(2)   The statutory administrator may delegate any of his powers or duties to other persons, subject to the prior written approval of the Bank.

(3)   The Bank may issue its approval pursuant to subsection (2) and may make such approval subject to such conditions as the Bank deems appropriate.

### 42. Suspension of payment of capital distributions.

The statutory administrator shall immediately suspend the payment of capital distributions in general and payment of any kind to directors, officers and significant shareholders; provided, however, that base compensation may be paid to directors and officers for services rendered to the statutory administrator.

### 43. Moratorium and effect of statutory administration on proceedings.

(1)   The Bank may impose a moratorium temporarily suspending some or all payments by a bank under statutory administration as the Bank may consider necessary to protect the interest of depositors and the stability of the financial sector.

(2)   No person or class of persons shall, without the prior written consent of the statutory administrator begin or continue a proceeding or petition in a court or other forum against a bank under statutory administration or exercise rights under a mortgage, charge, or other security or collateral over the property of a bank under statutory administration, or issue any execution, attach any debt, or otherwise enforce or seek to enforce any judgment or order obtained in respect of a bank under statutory administration.

(3)   For the purposes of this section, **"proceedings"** or **"petitions"** include counterclaims or cross-claims against the bank and the appointment of a statutory administrator against subsidiaries of the bank but excludes actions taken by the Bank, regulatory authorities, the Public Prosecutor and other public agencies, in respect of any matter in existence or violations or misconduct prior to the statutory administration.

(4)   Where statutory administration has not yet been terminated, the Bank may, where it is of the opinion that it is no longer necessary to impose a moratorium, publish in the Gazette a notice that the moratorium has been lifted.

### 44. Taking control of the bank.

(1)   The statutory administrator shall immediately upon appointment, secure the property, offices, books, records, and assets of a bank under statutory administration to prevent their dissipation by theft or other improper action, by taking actions including, but not limited to, the following —

(a)    changing the locks and limiting access to the new keys on external entrances to the bank's offices and on doors to internal offices which contain financial assets or information or equipment which could enable a person to gain unlawful access to financial assets;

(b)    changing or establishing access codes to the bank's computers and granting access only to a limited number of trustworthy employees;

(c)    issuing new photo identification passes for entrance of authorized employees to the bank's premises and controlling the access of other persons to the bank's premises;

(d)    cancelling authorizations of persons to conduct financial transactions for or on behalf of the bank and issuing new authorizations, as appropriate, and notifying third parties; and

(e)    informing correspondent banks, registrars and transfer agents of securities, and external asset managers of the bank's assets that persons who previously had authorization to give instructions on behalf of the bank with respect to dealing in the bank's assets or assets held in trust by the bank are no longer so authorized and that only the statutory administrator, and persons authorized by the statutory administrator have such authority.

(2)    The statutory administrator shall have unrestricted access to and control over the offices, books of account and other records, and other assets of the bank and its subsidiaries.

(3)    The statutory administrator may call upon any director, officer, employee or agent or any former, director, officer, employee or agent of a bank under statutory administration to make available to the statutory administrator any records and information relating to the bank that the statutory administrator shall require and such director, officers, employee or agent of the bank shall provide such records or information to the statutory administrator, as the case may be.

(4)    The statutory administrator may request the assistance of law enforcement officials, who shall, if necessary, use force to assist the statutory administrator to gain access to any premises of the bank, to gain control over and to secure such properties, offices, assets, books and records of the bank.

(5)    Any person who shall obstruct the statutory administrator in the exercise of his functions under this Act commits an offence and shall be liable on summary conviction thereof to a fine not exceeding one hundred thousand dollars or to imprisonment for a term of not less

than one year nor more than five years or to both, and in the case of a continuing offence, to an additional fine of one thousand dollars for each day during which the offence continues.

## 45. Inventory and plan of action to resolve the bank.

(1)     Within a period specified by the Bank, the statutory administrator shall prepare and deliver to the Bank —

    (a)     a written inventory of the assets and liabilities of the bank under statutory administration, classifying the assets according to their different risk profiles and classifying the non-performing loans according to the Bank's directives;

    (b)     a written assessment of the amount of assets likely to be realized in a liquidation of the bank;

    (c)     a written report on the financial condition and future prospects of the bank under statutory administration and propose a plan of action which, as appropriate, shall recommend —

        (i)     returning the bank to compliance with the law by carrying out a plan of corrective actions that may include a capital increase;

        (ii)     compulsory liquidation of the bank if there is no reasonable prospect for the return of the bank to financial soundness through reorganization or otherwise; or,

        (iii)     if the bank cannot be rehabilitated, any other course of action designed to minimize disruption to depositors and preserve the stability of the banking sector.

(2)     The statutory administrator shall promptly provide any additional report or information requested by the Bank.

(3)     The Bank may —

    (a)     approve the report or additional report mentioned in subsection (1)(c) or (2), as the case may be, without modification or subject to such conditions as it thinks necessary; or

    (b)     refuse to approve the report.

(4)     The statutory administrator may, subject to the written approval of the Bank, implement the plan of action mentioned in subsection (1)(c) on the basis of the report provided to the Bank.

## 46. Capital increase by existing shareholders.

(1)     On the basis of the report produced under subsection 45(1)(c) or 45(2), the Statutory Administrator may take the following actions to

increase the bank's capital through the issuance of new shares —

    (a)    determine the extent of losses and prepare the bank's balance sheet covering the amount of such losses through the bank's profits, reserves and, if necessary, capital; and

    (b)    notify existing shareholders of the amount of additional capital needed to bring the bank's capital into compliance with all capital requirements and allow such shareholders to subscribe and purchase additional shares, by submitting binding commitments equal to the full amount of additional capital needed, within three business days of such notification.

(2)    Existing shareholders of a bank under statutory administration shall have no pre-emptive or other rights to purchase additional shares issued except as provided in this section.

(3)    The statutory administrator may take action to increase the bank's capital through the issuance of shares to new shareholders in the following circumstances —

    (a)    in the event that binding commitments are not submitted by existing shareholders in an amount equal to the full amount of additional capital needed by existing shareholders; or

    (b)    without offering shares to existing shareholders, if the Bank determines that —

        (i)    an expedited resolution of a bank is necessary to maintain financial stability, or

        (ii)    the existing shareholders are no longer fit and proper to maintain a controlling shareholding in the bank.

(4)    For the purpose of carrying out a recapitalization by new shareholders of a bank under statutory administration, the statutory administrator shall —

    (a)    determine the extent of losses and prepare the bank's balance sheet covering the amount of such losses through the bank's profits, reserves and, if necessary, capital;

    (b)    if necessary to reflect losses, reduce the par value of outstanding shares, restructure or write down debt or other capital instruments, notwithstanding the provision of any other law;

    (c)    determine the amount and type of funding needed to bring the bank into compliance with all capital requirements; and

    (d)    cause the bank to issue additional shares in the amount necessary, carry out the sale of shares and facilitate the purchase

of such shares by new investors.

(5) Notwithstanding any existing law or other laws that may come into effect to regulate the securities market and other disclosures by issuers of securities, the Securities Commission shall take the necessary action to permit issuance of a bank's securities in accordance with the provisions of this section within a maximum of three business days.

(6) The powers provided in subsections (1), (3) and (4) and section 47(1), (3) and (10) may be exercised by a statutory administrator only upon the written authorization of the Bank.

(7) Where a statutory administrator pursuant to subsection (4) —

    (a) writes down equity or other instruments of ownership of a bank, unsecured and uninsured creditor claims;

    (b) converts into equity or other instruments of ownership of a bank all or parts of unsecured and uninsured creditor claims,

the statutory administrator shall take the action referred to in paragraph (a) and (b) in a manner that respects the hierarchy of claims in liquidation under this Act.

## 47.  Mergers, sales and other restructuring.

(1) Subject to section 44, and on the basis of the report produced under subsection 45(1)(c) or (2), the statutory administrator may carry out a merger of the bank under statutory administration or a transfer, in whole or in part —

    (a) shares or other securities issued by the bank;

    (b) the bank's assets, rights and liabilities.

(2) A transfer of the bank's shares or other securities, assets, rights and liabilities pursuant to subsection (1) may be to —

    (a) a purchaser;

    (b) a bridge institution for a temporary period;

    (c) an asset management vehicle,

for the purpose of resolving the bank.

(3) The statutory administrator may transfer to a purchaser, a bridge institution or an asset management vehicle —

    (a) shares or other securities of a bank under statutory administration by making one or more securities transfer instruments;

    (b) assets, rights or liabilities of a bank under statutory

administration by making one or more property transfer instruments.

(4) Where a statutory administrator has first transferred any securities issued by or any assets, rights or liabilities of a bank under statutory administration to a bridge institution, the statutory administrator may —

    (a) by making one or more securities transfer instruments, transfer securities issued by the bridge institution or securities issued by a bank under statutory administration and held by the bridge institution to another —

        (i) bridge institution (an onward bridge institution); or

        (ii) entity;

    (b) by making one or more property transfer instruments, transfer assets, rights or liabilities of the bridge institution (however accruing or arising) to another entity.

(5) The *Third Schedule* has effect with respect to securities transfer instruments.

(6) The *Fourth Schedule* has effect with respect to property transfer instruments.

(7) The transferee of assets of the bank under statutory administration shall have no liability to depositors, creditors, or shareholders of the bank except to the extent liabilities are explicitly assumed.

(8) Where a transfer is made under subsection (3) the Bank shall inform the Minister about the transfer as soon as practicable after the transfer is completed.

(9) The Minister shall cause a copy of each report under subsection (8) to be laid before each House of Parliament.

(10) Subject to the written approval of the Bank, the statutory administrator may carry out a restructuring of the liabilities of a bank under statutory administration, through arrangements with the bank's creditors, including a reduction, modification, re-scheduling or novation of their claims.

(11) When action is taken by the statutory administrator pursuant to subsection (1), the Bank shall —

    (a) by instrument in writing appoint an independent valuer to verify the adequacy of the compensation provided to the transferor regarding the transferred assets, rights and liabilities; and

    (b) publish notice of the appointment of the independent valuer in the *Gazette*.

(12)   Any measure conducted under statutory administration under this section will not constitute a voidable preference, a transaction at undervalue or a fraudulent trading pursuant to sections 241, 242 and 243 of the Companies Act (*Ch. 308*).

## 48.   Termination of statutory administration.

(1)   Subject to subsection (2) the statutory administration shall terminate at the expiry of the term specified in the notice appointing the statutory administrator or any extension of the term of such appointment by the Bank.

(2)   Statutory administration shall be terminated prior to the expiry of the term set out in subsection (1) if the Bank determines that —

    (a)   statutory administration is no longer necessary because the grounds for appointment of the statutory administrator have ceased to exist; or

    (b)   the bank under statutory administration cannot be rehabilitated or restructured and the Bank issues a decision to revoke the bank's license under section 29(1)(a) and to commence liquidation proceedings under section 60.

(3)   Where the statutory administration is terminated in circumstances mentioned in subsection (1) and the reason for the appointment of the statutory administrator continues to exist, the Bank shall issue a decision to revoke the licence under section 29(1)(a) and commence a compulsory winding-up proceeding under section 60.

(4)   In the case of a termination of statutory administration that does not involve a closure of the bank, the statutory administrator shall carry out the duties of the bank's directors and officers, until nomination or election of new directors and appointment of officers, at which time all powers of control over the affairs of the bank and its properties, offices, assets books and records that were vested in the statutory administrator shall vest in the bank.

(5)   Within thirty days of the termination of the appointment or such further period as the Bank may approve, the statutory administrator shall prepare and submit to the Bank a final report and accounting of the statutory administration.

## 49.   Licensing of body corporate as Bridge Institution.

(1)   Upon the incorporation of a body corporate by the Bank pursuant to section 28(4) of The Central Bank of The Bahamas Act, 2020, the Bank shall grant a licence to the body corporate to carry on the business of a bridge institution.

(2)    The Bank may exempt the bridge institution from such requirements, or grant such approvals, under this Act as may be necessary to facilitate the carrying on of its licensed business.

(3)    The Bank shall publish notice of the grant of a licence pursuant to subsection (1) in the *Gazette*.

(4)    A company incorporated pursuant to section 28 of the Central Bank of The Bahamas Act, may be designated as a bridge institution for a period of two years.

(5)    Notwithstanding subsection (4), the Minister may, by Order, grant up to three extensions, not exceeding twelve months each, during which a company referred to in subsection (4) may continue to be designated as a bridge institution.

(6)    The Bank may hold —

    (a)    any shares of a bank under statutory administration that the Bank acquires in the course of a sale or other disposition of its shares of the bridge institution or that a bridge institution acquires in the course of a sale or other disposition of its assets.

    (b)    the shares for a period of no more than five years from the day on which they are acquired and may dispose of them.

(7)    The Minister may, by order, extend the period referred to in subsection (6)(b) if general market conditions so warrant.

(8)    A company's licence as a bridge institution terminates if —

    (a)    the Bank is no longer the sole shareholder; or

    (b)    the bridge institution is amalgamated with a body corporate that is not a bridge institution.

(9)    If a bridge institution's licence has not terminated under subsection (8), the bridge institution's board of directors shall take all necessary steps to dissolve the bridge institution if —

    (a)    all or substantially all of the bridge institution's assets have been sold or otherwise disposed of; and

    (b)    all or substantially all of its liabilities have been assumed or discharged.

(10)    If the Bank considers that substantially all of the transfers of assets, rights and liabilities or shares or other securities of a bank to a bridge institution have been substantially completed, the Bank shall apply for a winding-up order under the Companies Act (*Ch. 308*) in respect of the bank.

(11) An employee or officer of the Bank shall not receive remuneration or benefits from a bridge institution for being a director or officer of that bank.

(12) If a bridge institution becomes the employer of employees of a bank, the bridge institution is not liable in respect of a liability, including one as a successor employer —

    (a) that is in respect of the employees or former employees of the bank or a predecessor of the bank or in respect of a pension plan for the benefit of those employees or former employees; and

    (b) that exists before the bridge institution becomes the employer or that is calculated by reference to a period before the bridge institution becomes the employer.

(13) subsection (12) does not affect the liability of a successor employer other than the bridge institution.

(14) The Bank may give directions to the board of directors of a bridge institution.

(15) The board of directors of a bridge institution, shall ensure that the directions are implemented in a prompt and efficient manner and shall, after implementing a direction, notify the Bank without delay that it has been implemented.

(16) The Bank may give directions to the board of directors of a bridge institution to make, amend or repeal any bye-law.

(17) The board of directors of a bridge institution may, with the prior approval of the Bank, vary or repeal any by-law.

(18) For the purposes of subsections (16) and (17), by-law means a bye-law of the bridge institution.

(19) Any action or other civil proceeding before a judicial or quasi-judicial body and any arbitration, to which a bridge institution may become a party by virtue of acquiring an asset or assuming a liability of a bank under statutory administration shall be stayed for a period of 90 days from the day on which the bridge institution acquires the asset or assumes the liability.

(20) The bridge institution may waive the stay referred to in subsection (19).

(21) Without prejudice to section 71, the following persons shall not have any rights over or in relation to assets, rights or liabilities which have been transferred to the bridge institution —

    (a) shareholders of the bank under statutory administration;

    (b) creditors of the bank under statutory administration, or

(c)    other third parties whose assets, rights or liabilities have not been transferred.

(22)    The bridge institution, and the members of its senior management, shall not owe any legal duty or responsibility to shareholders or creditors of the bank under statutory administration and shall have no liability to such shareholders or creditors for acts or omissions in the discharge of their legal duties.

## 50.   Transfer of assets, rights   or liabilities to asset management vehicle.

(1)    A statutory administrator may transfer the assets, rights or liabilities of —

(a)    a bank under statutory administration; or

(b)    a bridge institution,

to an asset management vehicle by making one or more property transfer instruments.

(2)    Without prejudice to section 71, shareholders or creditors of a bank under statutory administration and other third parties whose assets, rights or liabilities have not been transferred to the asset management vehicle shall not have any rights over or in relation to assets, rights or liabilities which have been transferred to the asset management vehicle.

(3)    An asset management vehicle, its management body and senior management, shall not owe any legal duty or responsibility to shareholders or creditors of the bank under statutory administration and the management body and senior management of the vehicle shall have no liability to such shareholders or creditors for acts or omissions in the discharge of their legal duties.

## 51.   Management of assets by asset management vehicle.

An asset management vehicle must manage the assets transferred to it with a view to maximizing their value through eventual sale or orderly wind down.

## 52.   Onward property transfer from asset management vehicle.

(1)    This section applies if the statutory administrator has made a property transfer instrument under section 50 (hereafter referred to as "the original instrument") in respect of an asset management vehicle.

(2)    The statutory administrator may, by making one or more property transfer instruments, transfer assets, rights or liabilities of the asset

management vehicle (whether accruing or arising before or after the original instruments is made) to another entity.

(3)   A property transfer instrument may relate to assets, rights or liabilities of an asset management vehicle whether or not they were transferred to that vehicle by an instrument made under this section.

## 53.   Central Bank to report to Minister.

(1)   If the statutory administrator transfers to an asset management vehicle under section 50 any assets, rights or liabilities of a bank under statutory administration or of a bridge institution, the Bank must report to the Minister on —

    (a)   the activities and audited financial position of the asset management vehicle; and

    (b)   the progress that has been made towards maximizing the value of the assets transferred to it through eventual sale or orderly wind down.

(2)   The first report under subsection (1) must be made as soon as practicable after audited financial statements are available for the year in which a transfer is first made to the asset management vehicle.

(3)   A report under subsection (1) must be made for each subsequent year after the year mentioned in subsection (2).

(4)   The reporting obligation under subsection (3) does not apply in respect of any year during which the asset management vehicle does not hold any assets or rights, or have any liabilities, mentioned in subsection (1).

(5)   The Minister must cause a copy of each report under subsection (1) to be laid before each House of Parliament.

## 54.   Disposal of Proceeds.

(1)   This section applies to any money received by the Bank as a shareholder of an asset management vehicle.

(2)   The money must be paid into the resolution funding account.

## 55.   Recovery of costs following application of stabilization option.

(1)   This section applies in the, case of a bank under statutory administration where the Bank is of the view that —

    (a)   the bank has ceased, or is likely to cease to be viable;

    (b)   there is no reasonable prospect that private sector action

(outside of resolution) would result in the bank again becoming viable within a reasonable period;

    (i)    the non-viability of the bank poses risks to the stability and effective working of the financial system of The Bahamas, including to the continued performance of critical financial functions; and

    (ii)    resolution will avoid or mitigate those risks.

(2)    The Bank or the Minister —

    (a)    may charge to the bank under statutory administration all reasonable costs properly incurred by the Bank or the Minister, as the case requires, in or in connection with a matter mentioned in section 56(1);

    (b)    must not charge costs under subsection (2) if, or to the extent that, the charging of the costs might, in the opinion of the Bank or the Minister (having consulted the Bank), undermine the meeting of the resolution objectives.

(3)    Any costs charged to an entity under subsection (2) may be recovered from the entity as a civil debt due to the Bank or the Government, as the case requires, in any court of competent jurisdiction.

(4)    Any money received in respect of costs charged to an entity under subsection (2) (including under subsection (4) must be paid into the resolution funding account.

## 56.  Payment from the resolution funding account.

(1)    Subject to subsection (5), money standing to the credit of the resolution funding account may only be used by the Bank in, or in connection with —

    (a)    preparing for the making of a transfer instrument in respect of a bank that, in the opinion of the Bank, is likely to become a bank under statutory administration;

    (b)    the making of a transfer instrument in respect of a bank under statutory administration; or

    (c)    the resolution of a bank under statutory administration, including payment of any compensation due under section 71 and any associated costs.

(2)    Money standing to the credit of the resolution funding account may not be used to meet —

    (a)    expenses incurred by the Bank in performing functions under, or otherwise carrying out duties under section 36, 37, 28 or 80;

or

(b)    general operational expenses incurred by the Bank unrelated to a matter mentioned in subsection (1)(a).

(3)    Before the Bank may use money standing to the credit of the resolution funding account in regards to the exercise of a power by the statutory administrator under section 46 or 47 it must have regard to the extent to which the bank's own resources can be utilized, including the extent to which —

    (a)    liabilities of the bank can be written off or converted to enable it to absorb losses and re-establish its capital position;

    (b)    assets of the bank can be sold; or

    (c)    private sector funding can be obtained by the bank.

(4)    Without limiting subsection (1)(a), the purposes for which money standing to the credit of the resolution funding account may be used by the Bank include —

    (a)    providing a guarantee or indemnity in respect of the assets, rights or liabilities of bank under statutory administration, a group company of bank under statutory administration, a bridge institution or an asset management vehicle;

    (b)    lending money to a bank under statutory administration, a group company of a bank under statutory administration, a bridge institution or an asset management vehicle; and

    (c)    if necessary, providing, or underwriting the provision of, capital to a bank under statutory administration, a group company of a bank under statutory administration, a bridge institution or an asset management vehicle.

(5)    Any money standing to the credit of the resolution funding account that neither the Bank nor the Minister intends to use for a purpose mentioned in subsection (1) must be used to repay resolution funds and, to that end, must be paid —

    (a)    out of the resolution funding account; and

    (b)    into the account from which resolution funds were paid into the resolution funding account.

(6)    For the purposes of subsection (5)(b), if resolution funds were paid into the resolution funding account from more than one account, the money must be paid into those accounts in proportion to the amounts paid from those accounts.

(7)    Interest, by reference to prevailing market rates, may be charged to the resolution funding account on the outstanding principal amount of

resolution funds until repaid under subsection (5) or section 57.

(8) The use of the resolution funding account is subject to audit in accordance with regulations made pursuant to this subsection.

## 57. Repayment of the resolution funds.

(1) Any money standing to the credit of the resolution funding account on completion of the resolution must be used to repay any resolution funds or pay interest charged under section 56(7).

(2) Money used for a purpose mentioned in subsection (1) must be paid into the account out of which the resolution funds, or the resolution funds to which the interest relates, were paid into the resolution funding account and, if resolution funds were paid into the resolution funding account out of more than one account, in proportion to the amounts paid out of those accounts.

# LIQUIDATION OF BANKS

## 58. Liquidation of banks.

(1) The winding-up of a bank shall be undertaken pursuant only to the provisions of this Act, and the Companies Act (*Ch. 308*) as modified by this Act.

(2) The Bank may issue regulations, rules, orders, directions, or other instruments regarding the winding-up of a bank pursuant to this Act.

## 59. Voluntary liquidation of banks.

(1) Notwithstanding sections 190(1) and 211 of the Companies Act (*Ch. 308*), no bank may petition the court to be wound-up voluntarily, except with the prior written approval of the Bank.

(2) The Bank may, subject to such terms and conditions as it deems appropriate, approve the voluntary winding-up of a bank if it is satisfied that —

   (a) the bank is solvent and has sufficient liquid assets to repay its depositors and other creditors in full and without delay;

   (b) the winding-up has been approved by the holders of at least two-thirds of the issued voting shares of the bank; and

   (c) there are clear procedures in place for repayment of the bank's depositors and creditors within three days.

(3) Where the Bank approves the voluntary winding up of a bank

pursuant to subsection (2), the bank shall —

(a) surrender its license and all copies thereof to the Bank which shall forthwith accept the surrender of such license;

(b) apply to the Supreme Court for its winding up;

(c) cease to do business, retaining only such staff as is necessary for an orderly winding-up under the supervision of a voluntary liquidator appointed with the approval of the Bank, and thereafter exercise its powers only to the extent, necessary to effect its orderly liquidation;

(d) repay in full its depositors within three days and other creditors within a reasonable period of time; and

(e) wind-up all operations which were commenced or undertaken prior to the receipt of the approval to wind-up.

(4) Notwithstanding the provisions of section 212 of the Companies Act (*Ch. 308*), a voluntary winding-up is deemed to commence from the time the Bank approves the voluntary winding-up pursuant to subsection (2).

(5) Notwithstanding the provisions of section 216 of the Companies Act (*Ch. 308*)—

(a) no person shall pass a resolution to remove a voluntary liquidator appointed pursuant to paragraph (c) of subsection (3) from office unless that person gives the Bank prior notice of his intention to pass such a resolution;

(b) a person who makes an application to the court pursuant to section 216(3) of the Companies Act (*Ch. 308*) for an order that a voluntary liquidator appointed under paragraph (c) of subsection (3) be removed from office, shall notify the Bank of the application within twenty-four hours of the filing of the application.

(6) Notwithstanding the provisions of section 217 of the Companies Act, (*Ch. 308*), where a voluntary liquidator appointed pursuant to paragraph (c) of subsection (3) intends to resign, he shall notify the Bank of his intention prior to his resignation.

(7) Notwithstanding section 218(1) of the Companies Act (*Ch. 308*), notice of a voluntary winding-up shall be filed, served or published within ten days of receipt of the approval of the Bank given pursuant to subsection (2).

(8) The voluntary liquidator shall notify the Bank in any case where an application for a supervision order is made to the Supreme Court or

where a court issues a supervision order pursuant to sections 219, 225, 226 and 227 of the Companies Act (*Ch. 308*).

(9)    The voluntary liquidator shall submit a report and an account of the winding-up to the Bank, every six months.

(10)   The voluntary liquidator shall submit a report and an account of the winding-up within twenty-one days of the date on which the bank's affairs are fully wound up.

(11)   The Bank shall have power to issue directives to a voluntary liquidator and require the voluntary liquidator to produce such other reports as the Bank may require.

## 60.    Compulsory winding up and appointment of liquidator.

(1)    The Bank shall appoint a liquidator for a bank if —

   (a)    the Bank has revoked the license of the bank pursuant to subsection 29(1)(a) (i), (iii) or (iv) of this Act; or

   (b)    a statutory administration is terminated pursuant to subsection 48(2)(b) of this Act.

(2)    The Bank may appoint a liquidator for a bank where it has revoked the licence of the bank pursuant to section 29(1)(a)(ii) or (v).

(3)    The liquidator shall be a person from the private sector or an officer of the Bank who meets the qualifications established by the Bank.

(4)    The Bank shall —

   (a)    have the power to vary or revoke the appointment of the liquidator at any time upon written notice to the person so appointed, and that person immediately shall cease to act as liquidator; and

   (b)    appoint a replacement who shall be a person from the private sector or an officer of the Bank who meets such qualifications as may be established by the Bank.

(5)    The terms of the liquidator's compensation shall be set by the Bank and may include incentives for meeting the objectives described in section 61(2) and may include penalties for failure to meet such objectives.

(6)    The compensation of the liquidator and experts that he engages, reimbursement of their expenses and expenses of the Bank in execution of provisions of this section with respect to a bank, shall be paid from the assets of the bank.

(7)    Payments to the liquidator shall be made on a current basis if in the

judgment of the liquidator and upon approval of the Bank, there are sufficient liquid assets.

(8)  Any moneys owing to the liquidator at the end of the term of liquidation shall be paid from the proceeds of the sales of the bank's assets in accordance with the priority described in section 67.

## 61.  Powers and duties of the liquidator.

(1)  Where the Bank appoints a liquidator of a bank pursuant to section 60, the liquidator shall become the sole legal representative of the bank, and, shall succeed to all rights and powers of the shareholders and directors and officers responsible for the management of the bank.

(2)  The liquidator shall exercise his powers with due regard to the objectives of resolution as set out in section 35 of the Act.

(3)  The liquidator may borrow money guaranteed with the bank's assets, or without guarantee, with the prior approval of the Bank.

(4)  The liquidator may —

(a)  not take any new deposits;

(b)  extend credit only to an existing customer in accordance with the terms of an agreement in force at the time of the appointment of the liquidator and with the prior approval of the Bank provided however that the liquidator shall have the power to repudiate such loan commitments where such repudiation is in the best interest of the insolvency estate.

(5)  The liquidator shall have unrestricted access to and control over the offices, books of account and other records, and other assets of the bank and its subsidiaries.

(6)  The liquidator may request the assistance of law enforcement officials, who shall, if necessary, use force to assist the liquidator to gain access to any premises of the bank, to gain control over and to secure such properties, offices, assets, books and records of the bank.

(7)  Any person who wilfully obstructs the liquidator in the exercise of his functions under this Act, commits an offence and shall be liable on summary conviction thereof to a fine not exceeding one hundred thousand dollars or to imprisonment for a term of not less than one year nor more than five years or to both, and in the case of a continuing offence, to an additional fine of one thousand dollars for each day during which the offence continues.

(8)  The liquidator shall secure the property, offices, books, records, and assets of the bank to prevent their dissipation by theft or other

improper action, by taking actions including, but not limited to, the following —

(a) changing the locks and limiting access to the new keys on external entrances to the bank's offices and on doors to internal offices which contain financial assets or information or equipment which could enable a person to gain unlawful access to financial assets;

(b) changing or establishing access codes to the bank's computers and granting access only to a limited number of trustworthy employees;

(c) issuing new photo identification passes for entrance of authorized employees to the bank's premises and controlling the access of other persons to the bank's premises;

(d) cancelling authorizations of persons to conduct financial transactions for or on behalf of the bank and issuing new authorizations, as appropriate, and notifying third parties;

(e) informing correspondent banks, registrars and transfer agents of securities, and external asset managers of the bank's assets that persons who previously had authorization to give instructions on behalf of the bank with respect to dealing in the bank's assets or assets held in trust by the bank are no longer so authorized and that only the liquidator and persons authorized by the liquidator have such authority; and

(f) suspending the payment of capital distributions in general and payment of any kind to directors, officers and principal shareholders; provided, however, that base compensation may be paid to directors and officers for services rendered to the liquidator.

(9) The liquidator shall establish a new balance sheet for the bank, based on his determination of liquidation values of the bank's assets with a corresponding reduction in the value of the bank's liabilities in the reverse order of priority in payment of distributions in the liquidation of a bank's assets.

(10) The liabilities of a bank placed in liquidation under section 60 shall be deemed due and payable and interest shall cease to accrue as of the date of the appointment of the liquidator.

(11) Within one month of taking possession of a bank —

(a) the liquidator shall make an inventory of the assets and property of the bank and transmit a copy thereof to the Bank; and

      (b)   the Bank shall make a copy of the inventory available for examination by the public.

(12)  The powers of the shareholders and directors and officers responsible for the management of the bank shall be terminated upon the appointment of the liquidator; provided, however, that directors or officers may be instructed by the liquidator to exercise specified functions for the bank; and further, provided that such persons shall be subject to dismissal by the liquidator from their positions at the bank and shall thereupon cease to receive compensation from the bank.

(13)  When part of the business of a bank is sold in accordance with section 47(1), the liquidator must cooperate with any request of the Bank to enter into an agreement for the residual entity to provide services or facilities to the transferor.

(14)  The liquidator shall immediately, following his appointment —

      (a)   file a copy of his instrument of appointment with the Registrar; and

      (b)   post in each branch of the bank a notice of —

            (i)   the revocation of the license of the bank in liquidation; and

            (ii)  his appointment as liquidator of the bank and specify in such notice:

                  (aa)  the effective date and time when he took possession of the bank; and

                  (bb)  specify that persons who previously had authorization to act or give instructions on behalf of the bank are no longer so authorized.

(15)  The liquidator shall —

      (a)   publish notice of his appointment in the Gazette and in a local newspaper of general circulation, each week for four consecutive weeks; and

      (b)   co-ordinate such publication with the Deposit Insurance Corporation for the purpose of payment of insured deposits to eligible depositors pursuant to the Protection of Depositors Act (*Ch. 317*).

(16)  Within sixty days after the appointment of a liquidator, the liquidator shall —

      (a)   deliver a notice of his appointment to all known depositors, creditors and lessees of safe-deposit boxes held by the bank;

    (b)    publish in the Gazette and a local newspaper of general circulation a notice specifying the manner and time in which any claim against the bank may be filed with the liquidator, not being earlier than sixty days from the date of delivery or publication of the notice.

(17)   As of the date of appointment of a liquidator —

    (a)    any claim or right of the bank which would expire or be extinguished upon the expiration of a statutory, contractual or other term, shall be suspended;

    (b)    the calculation of interest and penalties against the bank's obligations shall be suspended and no other charge or liability shall accrue on the obligations of the bank;

    (c)    all legal proceedings against the bank are stayed and the exercise of any right in respect of the bank's assets shall be suspended;

    (d)    no right shall be exerted over the bank's assets during the bank's liquidation, except rights given to the liquidator;

    (e)    no creditor may attach, sell or take possession of any assets of the bank as a means of enforcing his claim or initiate or continue any legal proceeding to recover the debt or perfect security interests in the bank's assets;

    (f)    any attachment or security interest (except one existing six months prior to the effective date of the liquidation) shall be vacated, and no attachment or security interest, except one created by the liquidator in the application of this section shall attach to any of the assets or property of the bank so long as such liquidation continues;

    (g)    shareholders' rights shall be extinguished except for the right to receive proceeds, if any, under section 67(4).

## 62.  Termination of Contracts.

(1)   A liquidator may, within thirty days of the date of his appointment, repudiate any unfulfilled or partially fulfilled contract, to the extent that the fulfilment of such contract is determined to be burdensome for the bank and the repudiation would promote the orderly administration of the bank's affairs and protect depositors' interests.

(2)   Notwithstanding any other law, any liability arising from a repudiation pursuant to subsection (1) shall be determined as of the date of repudiation and shall be limited to actual direct damages incurred and shall not include any damage for lost profits or opportunity or non-

monetary damages.

(3)   Subject to any law governing conditions of employment, the liquidator of a bank may terminate, not later than three months after his appointment —

    (a)   any employment contract of the bank;

    (b)   any contract for services to which the bank is a party; and

    (c)   any obligations of the bank as a lessee of property.

(4)   A lessor of any property referred to in subsection (3) —

    (a)   shall be given notice of not less than thirty days of the intended termination of the obligations of a bank;

    (b)   has no claim for rent other than rent accrued up to and including the date of the termination of the obligation of the bank; and

    (c)   has no right to consequential or other damages which arise by reason only of any termination  of the obligations of the bank, notwithstanding any term of the lease to the contrary.

## 63.   Notice of Claims.

A liquidator shall, not later than ninety days after the last day specified in the notice for filing claims against a bank being compulsorily wound-up —

    (a)   where he doubts the validity of any claim, reject the claim;

    (b)   determine the amount, if any, owing to each known depositor or other creditor, and the priority of each claim under this Act;

    (c)   file with the Bank a schedule of the actions proposed to be taken for the purpose of the compulsory winding-up of the bank provided that such filing shall exclude deposits that are uninsured but which are included in the definition of "deposits" under section 2(1) of the Protection of Depositors Act (*Ch. 317*), and which have been fully paid out or transferred to another entity;

    (d)   notify each person whose claim is allowed in full; and

    (e)   publish, once a week for three consecutive weeks, in the Gazette and in a newspaper of general circulation in The Bahamas —

        (i)   a notice of the date and place where the schedule referred to in paragraph (c) will be available for inspection; and

        (ii)   the last date, not being earlier than thirty days from the date of publication, on which the liquidator will file that schedule with the Bank.

(f) The Bank may approve the schedule of actions referred to in paragraph (c) subject to such terms and conditions as it may require.

(g) The Bank shall, in approving the schedule referred to in paragraph (c), ensure that all of the deposits that are uninsured but which are included in the definition of "deposits" under section 2(1) of the Protection of Depositors Act (*Ch. 317*) are paid out in an expeditious manner.

## 64. Objections.

(1) Within twenty days of the filing of a schedule under section 63(c), a depositor or other creditor or shareholder of the bank concerned, or other interested person, may file with the Bank any objection that person has to any action proposed in such schedule.

(2) The Bank may direct that an objection filed pursuant to subsection (1) be served on the liquidator and such interested parties as the Bank may require, and shall subsequently hear the objection and issue a Notice setting out its determination thereon as it considers appropriate in the circumstances.

(3) When the Bank allows an objection, the Notice shall set out the manner in which the schedule referred to in section 63 is to be modified.

## 65. Distributions.

(1) Where a liquidator has filed a schedule in respect of a bank, pursuant to subsection 63(c), the liquidator shall make periodic distributions of recoveries on liquidated assets to claimants, if the liquidator establishes an adequate reserve (as determined by the Bank) for the payment of disputed claims against the bank.

(2) As soon as practicable after all objections against the distribution proposed by the liquidator have been heard and determined, final distribution of the assets of the bank concerned shall be made by the liquidator.

## 66. Avoidance of pre-liquidation transfers.

(1) The liquidator may declare void a transaction based on a forged or fraudulent document that the bank has executed to the detriment of creditors within the five years preceding the effective date of the liquidation.

(2) The liquidator may declare void the following transactions affecting

the assets of the bank or to recover from third parties the transfers by the bank —

(a)   gratuitous transfers to, or to persons related to, directors and officers and principal shareholders of or holders of significant interests in the bank made within the five years preceding the effective date of the liquidation;

(b)   gratuitous transfers to third parties made within the three years preceding the effective date of the liquidation;

(c)   transactions in which the consideration given by the bank considerably exceeded the received value obtained, made within the three years preceding the effective date of the liquidation;

(d)   any act done within the five years preceding the effective date of the liquidation, with the intention of all parties involved to withhold assets from the bank's creditors, or otherwise impair their rights;

(e)   transfers of property of the bank to, or for the benefit of, a creditor on account of a debt incurred within the six months preceding the effective date; of the liquidation which has the effect of increasing the amount that the creditor would receive in a liquidation of the bank; provided however that payment of deposits in an amount equal to or less than two thousand dollars per depositor shall not be subject to this provision.

(f)   transactions with persons related to the bank conducted within one year prior to the effective date of the liquidation, if detrimental to the interest of depositors and other creditors; and

(g)   any attachment or security interest, except one existing six months prior to the effective date of the liquidation.

(3)   An action to declare a transfer void may be brought by the liquidator within one year following the effective date of the liquidation.

(4)   Notwithstanding the foregoing subsections, the liquidator may not declare void a payment or transfer by the bank if it was made in the ordinary course of the bank's business, or if it was part of a contemporaneous exchange for reasonably equivalent value, or to the extent that following the transfer the recipient extended new unsecured credit to the bank which had not been satisfied by the bank as of the effective date of the liquidation.

(5)   The liquidator may recover property or the value of property transferred by the bank from a transferee of an initial transferee only if the second transferee did not give fair value for the property and knew or reasonably should have known that the initial transfer could be set

aside.

(6) The liquidator may file notice of an action to declare a transfer void in the public records for real estate ownership and any other rights in property and a person taking title to or acquiring any security interest or other interest in such property after the filing of such a notice takes his or her title or interest subject to the rights of the bank to recover the property.

(7) Notwithstanding subsection (1) —

(a) irrevocable money and securities transfer orders entered by a bank into a payment or securities settlement system recognized as such by the Bank shall be legally enforceable and binding on third parties, even upon a decision revoking the bank's license and appointing a liquidator, but only if the transfer orders become irrevocable before such decision takes effect; or

(b) a bank enters irrevocable money or securities transfer orders into a payment or securities settlement system after the decision revoking the bank's license and appointing a liquidator takes effect and the transfer orders are carried out on the day of such decision, the transfer orders shall be legally enforceable and binding on third parties, unless the liquidator proves that the system operator was aware of the decision before the transfer orders became irrevocable.

(8) No law, regulation or practice on the setting aside of contracts and transactions issued or adopted before the decision revoking the bank's license and appointing a liquidator takes effect shall, as a consequence of such decision, lead to the unwinding of a netting by a payment or securities settlement system recognized as such by the Bank because of that decision.

(9) For the purposes of subsections (7) and (8) —

(a) a payment order entered into a money or securities settlement system becomes irrevocable at the time defined by the regulations of that system; and

(b) **"netting"** means the conversion into one net claim or one net obligation of claims and obligations resulting from transfer orders which a participant or participants in a settlement system either issue to, or receive from, one or more other participants in that system with the result that only a net claim or a net obligation remains.

(10) Nothing in this Act and no decision made under this Act shall prevent or prohibit the set off by operation of law of obligations between a

bank being subject to the liquidation proceedings under this Act and its counterparty .

(11) In determining the rights and obligations between a bank in liquidation and its contractual counterparty —

(a) effect shall be given to the termination provisions of eligible financial contracts between them;

(b) the net termination value determined in accordance with an eligible financial contract between them, shall be a claim of the bank on the counterparty or shall be admitted after its validation as a claim of the counterparty on the bank.

(12) For the purposes of this subsection —

(a) **"eligible financial contract"** means swaps, options and other derivative transactions related to interest rates, foreign exchange swaps, commodities, and guarantee of liabilities, but also includes any type of financial contract from time to time specified by the Bank by regulation for such purpose; and

(b) **"net termination value"** means the net amount obtained after setting off the mutual obligations between the parties to an eligible financial contract in accordance with its provisions.

(13) Except as provided under this subsection, no set-off shall be allowed with respect to claims against the bank after the decision to revoke the bank's license and the appointment of a liquidator takes effect or within three months before such decision.

(14) Save for deposits insured under the Protection of Depositors Act (*Ch. 317*), claims against the bank arising from deposits shall be set-off against any sum due by a depositor to the bank as of the date on which the license is revoked and the liquidator is appointed —

(a) automatically if such sum is matured or past due;

(b) at the option of the depositor, if the sum is not matured or past due.

## 67. Priority of claims.

(1) In any liquidation of a bank's assets, allowed secured claims shall be paid to the extent of the realization of the security or the security shall be delivered to the secured creditor.

(2) The following unsecured claims have priority against the general assets of a bank being compulsorily wound-up under this Act, namely

(a)   necessary and reasonable expenses incurred by the statutory administrator or liquidator, including professional fees in carrying out their functions under this Act;

(b)   subrogated claims of the Deposit Insurance Corporation under the Protection of Depositors Act (*Ch. 317*) in respect of insured deposits;

(c)   deposits that are uninsured but not excluded from the definition of "deposits" under section 2(1) of the Protection of Depositors Act (*Ch. 317*);

(d)   credits extended to the bank by the Bank until the appointment of the liquidator to the extent not sufficiently secured by collateral;

(e)   wages and salaries of the officers and employees of the bank (whether or not earned wholly or in any part by way of commission) including any amount payable by way of allowance or reimbursement under any contract of employment or award or agreement regulating conditions of employment, that accrued during the three months immediately preceding the appointment of a statutory administrator or liquidator under this Act, provided that such amount does not exceed ten thousand dollars per person;

(f)   all taxes due and other imposts owing to the Government of The Bahamas;

(g)   the fees, and assessments owing to the Bank;

(h)   credits extended to the bank after the appointment of the liquidator;

(i)   all other unsecured claims of creditors;

(j)   subordinated debt.

(3)   After payment of all other claims against the bank, all remaining claims against the bank that were not filed within the time limited therefore under this Act may then be paid.

(4)   Where the amount available to pay the claims of any class of claimant specified in this section in respect of priorities is not sufficient to provide payment in full to all claimants in that class, the amount available shall be distributed by the liquidator on a *pro rata* basis among the claimants in that class.

(5)   The assets of a bank being compulsorily wound-up that remain after the final distribution to claimants pursuant to subsection (2) shall be distributed by the liquidator among the shareholders of the bank in

proportion to their respective rights.

## 68.  Final reporting.

(1)   A liquidator appointed pursuant to section 60 shall, prepare a report and an account of the winding up showing how it has been conducted and how the bank's property has been disposed of and thereupon shall call a general meeting of the bank for the purpose of laying before it the account and giving an explanation for it.

(2)   The liquidator shall submit the report and an account of the winding up described in subsection (1) to the Bank.

(3)   At least twenty-one days before the meeting the liquidator shall send a notice specifying the time, place and object of the meeting to each contributory in any manner authorised by the company's articles and published in the Gazette.

(4)   The liquidator shall, no later than seven days after the meeting, make a return to the Registrar in the prescribed from specifying —

    (a)   the date upon which the meeting was held; and

    (b)   if a quorum was present, particulars of the resolutions, if any, passed at the meeting.

(5)   A liquidator who fails to call a general meeting of the company as required by subsection (1) or fails to make a return as required by subsection (3) shall be liable to pay a penalty not exceeding ten thousand dollars.

## 69.  Automatic Termination Rights.

The entry into resolution and the exercise of any resolution powers shall not trigger statutory or contractual set-off rights, or constitute an event that entitles any counterparty of a bank in resolution, to exercise contractual acceleration or early termination rights, provided the substantive obligations under the contract continue to be performed.

## 70.  Creditor Safeguards.

The powers of the Bank or statutory administrator under section 38 shall not be used to —

    (a)   transfer assets of a bank in resolution against which a liability is secured (under a lien, mortgage or any other type of security interest) unless the liability and the benefit of the security interest is also transferred; or

(b)   transfer only some but not all of the rights and liabilities protected under a netting clause contained in an eligible financial contract.

(c)   For the purposes of this section, "eligible financial contract" has the meaning ascribed under subsection 66(11)(b).

## 71.   Shareholder and Creditor Safeguards.

(1)   If, in accordance with a valuation determined by an independent valuer, who meets qualification requirements specified by the Bank, any shareholder or creditor of the bank under statutory administration establishes that as a result of any merger, purchase and assumption, sale or restructuring under section 47, it is in a position that is worse than if the bank had been liquidated, (not taking into account the effects of any financial or other support from the Bank, the Government, or the Deposit Insurance Corporation to the bank or an acquirer of the bank under section 47 of this Act), that shareholder or creditor shall be entitled to compensation in an amount that would restore the shareholder or creditor to the same position as he would have been in had the bank been liquidated provided however that such compensation will only be payable to the shareholder or creditor if recoveries from the liquidation of assets would have exceeded other claims.

(2)   For the purposes of subsection (1) the Bank shall pay the compensation and shall decide whether to pay it wholly or partly in cash or wholly or partly in any other form, including shares, that the Bank considers appropriate.

(3)   Subject to subsection (1) in determining the amount of compensation to which a person is entitled, the following shall not be taken into account —

(a)   any shares or other interest or right received by another person as a result of a transfer made pursuant to section 47 or retained by another person; and

(b)   any common shares received by another person as a result of a conversion of shares or liabilities in accordance with the contractual terms of those shares or liabilities.

(4)   Payment of the compensation by the Bank under subsection (2) discharges the Bank from its obligations under that subsection and in no case is the Bank under any obligation to see to the proper application in any way of any such payment.

(5)     An independent valuer may appoint a person to assist in the performance of the independent valuer's functions, subject to the written approval of the Bank.

(6)     The Bank shall determine the remuneration to be paid to an independent valuer and any person appointed pursuant to subsection (5).

(7)     The valuation under subsection (1) shall determine the following —

    (a)     the treatment that shareholders and creditors, would have received if the institution under resolution had entered liquidation at the time when the decision was made to place the bank under statutory administration;

    (b)     the actual treatment that shareholders and creditors have received in the resolution of the institution under statutory administration;

    (c)     whether there is any difference between the treatment referred to in paragraph (a) and the treatment referred to in paragraph (b).

(8)     The valuation under subsection (1) shall —

    (a)     assume that the bank under statutory administration would have entered normal liquidation proceedings at the time when the decision referred to in section 29(1(f) was taken,

    (b)     assume that the resolution action or actions had not been effected, and

    (c)     disregard any provision of extraordinary public financial support to the institution under resolution.

(9)     Where the valuation carried out under subsection (1) determines that any shareholder or creditor referred to in that subsection, has incurred greater losses than they would have incurred in a winding up under normal insolvency proceedings, it is entitled to the payment of the difference from the Fund in compensation.

(10)    Any affected shareholder or creditor may apply to the independent valuer appointed under section 47(11) for compensation in accordance with subsection (1).

(11)    The independent valuer to whom an application is made shall determine the amount of compensation due to any person who has made an application under subsection (10).

(12)    Before any determination under subsection (11) has been made, the following persons may make submissions to the independent valuer concerned and the independent valuer shall consider any such

submissions —

    (a)   the Bank;

    (b)   the Minister;

    (c)   any affected shareholders or creditors.

(13)  Where the independent valuer has determined, in accordance with subsection (11) the amount of compensation, if any, payable to each person who has applied for it, the independent valuer shall report in writing to the Bank the following —

    (a)   the name of each such person;

    (b)   whether compensation is payable to each such person;

    (c)   the amount of compensation, if any, payable to each such person.

(14)  A report under subsection (13) shall set out the following —

    (a)   a summary of the evidence on which the independent valuer relied in making his or her determination;

    (b)   the independent valuer's reasons for making the determination.

(15)  As soon as practicable after the publication of the independent valuer's report, the Bank shall —

    (a)   notify each applicant in writing whether or not compensation has been determined to be payable to him, and

    (b)   pay compensation in accordance with the report to each person to whom compensation has been so determined to be payable.

(16)  The Bank shall cause the independent valuer's report under subsection (13) to be published as soon as is practicable.

(17)  As soon as practicable after the publication of the independent valuer's report, the Bank shall —

    (a)   notify each applicant in writing whether or not compensation has been determined to be payable to him, and

    (b)   pay compensation in accordance with the report to each person to whom compensation has been so determined to be payable.

(18)  The Bank, or a shareholder or creditor who has or claims a right to compensation, may lodge an appeal with the Supreme Court against the determination of the independent valuer under subsection (13).

(19)  The independent valuer is to be the respondent to an appeal under subsection (18).

(20)  On hearing an appeal under subsection (13), the Court may substitute its own determination or confirm, annul or vary the determination

appealed from and may make any other consequential order.

(21)   In deciding, for the purposes of an appeal under subsection (13) whether the independent valuer's determination should be confirmed, annulled or varied, the test to be applied by the Supreme Court is whether the appellant has established, as a matter of probability, taking into account the degree of expertise and specialist knowledge possessed by the independent valuer and taking the process as a whole, that the determination was vitiated by a serious and significant error or a series of such errors.

## 72.   Independent valuer to meet qualifications.

(1)   A person may not be appointed as an independent valuer by the Bank unless they meet the qualifications specified in writing by the Bank.

(2)   The Bank must exercise the powers that it has under this Act to, as far as practicable, provide access, or procure the provision of access, for the independent valuer of any records and documents of the bank under statutory administration, or of a connected person, that are, or any other information that is, relevant to the performance by the independent valuer of functions under this Act.

(3)   For the purposes of subsection (2) **"connected person"** has the meaning given in section 38(10)(d) of the Central Bank of The Bahamas Act, 2020.

(4)   The Bank may revoke the appointment of an independent valuer if —

(a)   the person is incapable of performing the functions of an independent valuer;

(b)   the person is not performing the functions of an independent valuer impartially and independently;

(c)   the person is guilty of serious misconduct;

(d)   the person no longer satisfies the criteria for appointment specified by the Bank.

(5)   Where the Bank revokes the appointment of an independent valuer pursuant to subsection (4), or where the independent valuer resigns the Bank shall appoint a new independent valuer as soon as practicable following such revocation or resignation.

(6)   As soon as practicable after a new independent valuer is appointed under subsection (5), the Bank may, by notice in writing served on the person who has ceased to hold the office of independent valuer, require the person to provide the documents, records or accounts to which this subsection applies to the person appointed as the successor

of the person in that office within the period, and in the manner, specified in the notice.

(7)    Subsection (6) applies to—

    (a)    any document provided to the person in the capacity of independent valuer;

    (b)    any records or accounts kept by the person as required under subsection (6); and

    (c)    any other records made by the person in the capacity of independent valuer that are relevant to the performance by a successor independent valuer of functions under this Act.

(8)    A person who, without reasonable excuse, fails to comply with a requirement under subsection (6) commits an offence and is liable on summary conviction to a fine of fifty thousand dollars or to imprisonment for 6 months and, in the case of a continuing offence, to a further fine of one thousand dollars for every day during which the offence continues.

(9)    A person who produces any document for complying with a requirement under subsection (6) that the person knew, or ought reasonably to have known, to be false in a material particular commits an offence and is liable on summary conviction to a fine of fifty thousand dollars or to imprisonment for six months.

(10)    The acts of a person acting as an independent valuer are valid despite the fact that it is afterwards discovered that there was a defect in the appointment of the independent valuer, other than a defect arising because the independent valuer did not meet the criteria specified by the Bank.

# PART VII - MISCELLANEOUS

## 73.    Central Bank may publish action.

The Bank may, if satisfied that the circumstances so warrant, at any time make public and publish notice of any action it has taken under paragraphs (a) through (f) of subsection (1) of section 29, section 30, section 43 or under section 44, 75(4), 76(2) or 76(5).

## 74.    Prohibition orders.

(1)    The Bank may, where it appears to the Bank that an individual is not

or is no longer a fit and proper person to perform a regulated function, make an order prohibiting such individual from performing a regulated function.

(2)    For the purposes of this section, **"regulated function"** includes —

    (a)    serving as a director of a licensee, a Registered Representative or a money transmission agent;

    (b)    serving as an officer of a licensee, a Registered Representative or a money transmission agent;

    (c)    acting as the auditor of a licensee, a Registered Representative or a money transmission agent; and

    (d)    performing any other function in or for a licensee, a Registered Representative or a money transmission agent which requires approval, supervision or monitoring by the Bank.

(3)    An individual who is in breach of a prohibition order, performs or agrees to perform a regulated function commits an offence and shall be liable on summary conviction —

    (a)    to a fine not exceeding fifty thousand dollars; and

    (b)    in the case of a continuing breach, to a further fine not exceeding five hundred dollars for each day, or part of a day, during which the offence continues.

(4)    It is a defence to a charge against a person in relation to a contravention of subsection (3) if the defendant proves that he took all reasonable precautions and exercised all due diligence to avoid committing the offence.

(5)    The Bank may, on the application of the individual named in the prohibition order, vary or revoke the order.

(6)    The provisions of this section shall not apply to any controller or shareholder of a licensee or Registered Representative.

## 75.   Bank to issue warning and decision notices.

(1)    The Bank shall, where it proposes to make a prohibition order, issue a warning notice to all interested parties including —

    (a)    the individual affected by the proposed order; and

    (b)    if the Bank deems fit, the relevant licensee Registered Representative, or Money Transmission Agent.

(2)    A warning notice issued under subsection (1) shall —

    (a)    set out the terms of the prohibition and the grounds on which the Bank proposes to act; and

      (b)    afford the individual named in the notice within such time as is specified in the notice, an opportunity to submit to the Bank a written statement of objection to the proposed prohibition order.

(3)    The Bank shall, following the issuance of a warning notice under subsection (1), advise the individual named in the notice of its decision.

(4)    The Bank shall, where it decides to make a prohibition order, issue to the individual named in the warning notice, a written notice of the Bank's decision.

(5)    A decision notice issued under subsection (4) shall —

      (a)    name the individual to whom the prohibition order applies;

      (b)    set out the terms of the order;

      (c)    state the date on which the Bank's decision is to take effect;

      (d)    be delivered to the individual named in the order; and

      (e)    if the Bank deems fit, be delivered to the relevant licensee Registered Representative, or Money Transmission Agent.

(6)    An individual against whom a decision to make a prohibition order is made may refer the matter to the Supreme Court.

## 76.    Variation, revocation of prohibition order.

(1)    An individual against whom a prohibition order has been made may apply to the Bank to have the order varied or revoked.

(2)    The Bank shall —

      (a)    where it decides to grant an application for variation or revocation of a prohibition order, give the applicant and if the Bank deems fit, the relevant licensee, Registered Representative, or Money Transmission Agent a written notice of the Bank's decision; and

      (b)    where the Bank proposes to refuse such application, issue to the applicant and, if the Bank deems fit, the relevant licensee, Registered Representative, or Money Transmission Agent a written warning notice.

(3)    A warning notice issued under paragraph (b) of subsection (2) shall —

      (a)    set out the reasons for the Bank's proposed refusal to vary or revoke the prohibition order; and

      (b)    contain a statement that the individual named in the warning notice may, within such time as is specified in the notice, submit to the Bank a written statement of objection to such

proposed refusal.

(4)    The Bank shall, following the issuance of a warning notice under paragraph (b) of subsection (2), advise the individual named in the notice of its decision.

(5)    The Bank shall, where it decides to refuse the application for variation or revocation, issue to the applicant a written decision notice which shall comply with the requirements of subsection (5) of section 75.

(6)    An applicant issued a decision notice under subsection (5) may refer the matter to the Supreme Court.

## 77.   Preservation of confidentiality.

(1)    No person who has acquired information in his capacity as —

(a)    director, officer, employee or agent of any licensee or former licensee;

(b)    counsel and attorney, consultant or auditor of the Bank or as an employee or agent of such counsel and attorney, consultant or auditor;

(c)    counsel and attorney, consultant, auditor, accountant, receiver or liquidator of any licensee or former licensee or as an employee or agent of such counsel and attorney, consultant, auditor, accountant, receiver or liquidator;

(d)    auditor of any customer of any licensee or former licensee or as an employee or agent of such auditor;

(e)    the Inspector under the provisions of this Act;

(f)    a Supervisory Authority or as a director, officer, employee or agent of a Supervisory Authority; shall, without the express or implied consent of the customer concerned, disclose to any person any such information relating to the identity, assets, liabilities, transactions or accounts of a customer of a licensee or relating to any application by any person under the provisions of this Act, as the case may be, except —

(i)    for the purpose of the performance of his duties or the exercise of his functions under this Act, if any;

(ii)    for the purpose of the performance of his duties within the scope of his employment;

(iii)    when a licensee is lawfully required to make disclosure by any court of competent jurisdiction within The Bahamas, or under the provisions of any law of The

Bahamas;

(iv) for the purpose of enabling or assisting the Bank to exercise any functions conferred upon the Bank by any written law;

(v) in the case of a bridge institution, to the Minister or his designate;

(vi) in the case of an asset management vehicle, to the Minister or his designate;

(vii) to a person with a view to the institution of, or for the purpose of —

    (aa) criminal proceedings;

    (bb) disciplinary proceedings, whether within or outside The Bahamas, relating to the exercise by a counsel and attorney, auditor, accountant, valuer or actuary of his professional duties; or

    (cc) disciplinary proceedings relating to the discharge by a public officer or a member or employee of the Bank of his duties.

(2) Subsection (1) shall not apply in any case where in accordance with such conditions as the Inspector may determine, information of such class or classes as the Inspector may from time to time approve, is transmitted from a licensee to the head office, a branch or subsidiary of that licensee outside of The Bahamas, solely for the purposes of carrying out collation, synthesis or processing of information on behalf of the licensee.

(3) In any civil proceedings where information is likely to be disclosed in relation to a customer's bank account, those proceedings may, if the court, of its own motion or on the application of a party to the proceedings, so orders, be held in camera and the information shall be confidential as between the court and the parties thereto.

(4) No person shall publish the name, address or photograph of any parties to those civil proceedings as are referred to in subsection (3) or any information likely to lead to the identification of the parties thereto either during the currency of the proceedings or after they have been terminated.

(5) The Bank may, subject to the provisions of section 32(2), provide information on the beneficial owners, directors, officers and operations of a licensee (including any report produced by the Inspector pursuant to any inspection or examination of the licensee) to

the Supervisory Authority which is responsible for regulating the head office of the licensee for the purpose of consolidated supervision of the licensee by the Supervisory Authority.

(6)   To facilitate regulatory cooperation within The Bahamas, the Governor or any director, officer, employee, agent or advisor of the Bank may cooperate with any other domestic regulatory authority, including, by sharing information on the beneficial owners, directors, officers and operations of a licensee and any of its affiliates, or any other information acquired in the discharge of functions and duties under this or any other Act, where the Governor considers that such cooperation or information may be relevant to the functions of such other regulatory authority, or as a necessary part of a framework for consolidated supervision, oversight or regulation of the financial services sector.

(7)   Nothing contained in this section shall —

    (a)   prejudice or derogate from the rights and duties subsisting at common law between a licensee and its customer;

    (b)   prevent a licensee from providing upon a legitimate business request in the normal course of business a general credit rating with respect to a customer; or

    (c)   prevent the Inspector from sharing information relating to the identity, assets, liabilities, transactions or accounts of a customer of a licensee with the Financial Intelligence Unit where he believes that a suspicious transaction was not reported as required under the Financial Transactions Reporting Act, 2018 (*No. 5 of 2018*).

(8)   The Bank in the exercise of its co-operative functions may, with the approval of the Governor, enter into memoranda of understanding with Supervisory Authorities for the purpose of facilitating the consolidated supervision of its licensees.

(9)   No memorandum of understanding entered into pursuant to subsection (8) may call for assistance beyond that which is provided for by this Act, or relieve the Bank of any of its functions or duties under this Act.

(10)  Every person who contravenes the provisions of subsection (1) shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding twenty-five thousand dollars or to a term of imprisonment not exceeding two years or to both such fine and imprisonment.

## 78.  Treatment of dormant accounts held by banks.

(1)  This section applies to —

   (a)  a deposit account, including demand, savings, and fixed term deposit account;

   (b)  a chequing account;

   (c)  a bank draft, cashier cheque, certified cheque and money order;

   (d)  a traveller's cheque;

   (e)  a credit balance on a credit card;

   (f)  a credit balance on a loan;

   (g)  collateral held on a loan, including cash and non-cash collateral;

   (h)  funds paid for shares or other interest in a licensee;

   (i)  a custody account or safety deposit box;

   (j)  a deposit account of precious metals and precious gemstones;

   (k)  all securities listed in Part I of the *First Schedule* to the Securities Industry Act, 2011 (*No. 10 of 2011*); and

   (l)  such other deposit account or other facility as the Bank may, by notice, determine.

(2)  For the purposes of this section —

**"customer"** means —

   (a)  a person who holds an account or other facility;

   (b)  a person who, in respect of an account or other facility, is authorised, in writing, to act as the agent of the person who holds the account or other facility;

   (c)  a person who is authorised under a power of attorney to manage and control an account or other facility;

   (d)  where a person who holds an account or other facility is deceased, the heirs, executors, administrators and assigns of that person;

   (e)  such other person as the Bank may by notice determine;

**"dormant account"** means a deposit account or other facility at a bank where the customer has initiated no transaction, for a period of seven years, with respect to —

   (a)  the deposit account or other facility;

   (b)  any other deposit account or facility of the customer held with the bank;

**"other facility"** means any account or arrangement —

      (a)    that is provided by a bank to a customer;

      (b)    by, through or with which a customer may conduct transactions,including instruments such as bank drafts, manager's cheques, money orders, and traveller's cheques;

**"precious gemstones"** does not include jewellery;

**"recognized foreign securities exchange"** has the meaning assigned in section 2 of the Securities Industry Act, 2011 (*No. 10 of 2011*);

**"registered securities exchange"** means a securities exchange that is registered pursuant to Part V of the Securities Industry Act, 2011;

**"transaction"** means an action initiated by a customer, in person or by electronic or other non-physical means, in respect of a deposit account or other facility that such customer has with a bank and includes —

      (a)    a deposit, withdrawal, exchange or transfer of funds in any currency denomination whether in cash, by cheque, payment order, or other instrument;

      (b)    a communication, acknowledgement, request, or instruction where evidenced in writing and signed by the customer;

      (c)    a contemporaneous record of the customer's verbal instruction prepared by the bank.

(3)    The seven year period, referred to in the definition of dormant account in subsection (2), shall be calculated in the case of —

      (a)    a deposit account made for a fixed period, from the date on which the fixed period terminated, or the date the customer terminates his instructions to automatically renew the deposit, whichever is the later;

      (b)    a deposit account not made for a fixed period, from the date on which the customer last conducted a transaction with respect to the deposit account; and

      (c)    a facility other than one referred to in paragraphs (a) or (b), from the date on which the facility was issued, established, or the obligation to make a payment in respect of the facility accrued, whichever is the later.

(4)    A bank in The Bahamas shall, where a liability exists by reason of a dormant account held at such bank, within two months after the end of the calendar year in which the applicable seven year period expired —

(a)    pay to the Bank an amount equal to and in the same currency denomination as the amount owing by the bank in respect of the dormant account, including cash from a dormant safety deposit box; or

(b)    subject to subsection (10), liquidate a dormant account, including a safety deposit box, containing precious metals, precious gemstones or securities, and after deducting the reasonable costs incurred in connection with the liquidation of the account, pay the balance of the proceeds of sale of such account to the Bank, provided that, the Bank may exempt a bank in writing from this subsection where extenuating circumstances exist.

(5)    For the purposes of paragraph (b) of subsection (4) —

(a)    securities listed on a registered securities exchange or a recognized foreign securities exchange shall be sold at prices prevailing on the exchange at the time of sale;

(b)    securities that are not listed on an established stock exchange may be sold over the counter at prices prevailing at the time of the sale or by any reasonable method selected by the bank using its best efforts and prudence and having regard to market conditions at the time of the sale, which sale shall take place within two months after the end of the calendar year in which the applicable seven year period expired or within such longer period as the Bank may, in its sole discretion, approve;

(c)    a purchaser acquiring property at a sale takes the property free of all claims of the owners and of all persons claiming through or under the owners;

(d)    a person making a claim for liquidated property is entitled to receive the proceeds of sale of such property, less deductions for —

        (i)    costs of sale;

        (ii)    reasonable expenses incurred by the Bank, pursuant to section 27(2) of the Central Bank of The Bahamas Act, 2020; and

        (iii)    is not entitled to receive any appreciation in the value of the property occurring after the sale of such property.

(6)    Subsection (4)(b) shall not apply where the precious metals, precious gemstones or securities do not have a ready buyer, cannot be sold, are worthless or are not cost-effective to sell and, in such cases, the bank —

(a) shall transfer the property to the Bank or to an agent appointed by the Bank; or

(b) at the discretion of the Bank, shall continue to hold the precious metals, precious gemstones or securities, as the case may be, as an agent for the Bank.

(7) Subject to subsection (12), no person shall have a claim for any act done pursuant to paragraph (b) of subsection (4) against —

(a) a bank;

(b) a registrar and transfer agent; or

(c) any other person acting for or on behalf of the bank.

(8) A bank shall retain —

(a) for a period of fifteen years after the date the bank makes a payment to the Bank pursuant to subsection (4); or

(b) for a period of five years after the bank makes a payment to a claimant pursuant to subsection (12), all records relating to the dormant account in respect of which such payment was made including all —

(i) registers;

(ii) signature cards;

(iii) signing authorities;

(iv) microfilm or electronically stored copies of such records.

(9) Notwithstanding subsection (8), the relevant periods for the retention of records where a bank makes a payment pursuant to subsection (4) or subsection (12) with respect to a securities account shall be seventeen years and seven years, respectively.

(10) Notwithstanding subsection (4), a bank shall —

(a) subject to paragraph (b), not make payment to the Bank with respect to —

(i) dormant accounts which have any one or more of the following characteristics —

(aa) are non-cash collateral;

(bb) are a custody account or safety deposit box, except for cash, precious metals, precious gemstones or securities found in such boxes;

(ii) such other characteristics as the Governor may, by regulation, determine;

(b) continue to administer the dormant accounts referred to in paragraph (a) in the best interest of the customer in accordance

with the bank's contractual obligations and subject to
heightened internal monitoring by the bank, in accordance with
guidelines issued by the Bank;

(c)   deduct a reasonable sum for the administration of the dormant
account referred to in paragraph (a) only where —

(i)   there is an enforceable written contract between the bank
and the customer under which the bank may impose a
charge; and

(ii)  the bank regularly imposes the charge and the charge is
not regularly reversed or otherwise cancelled.

(11)  A bank which holds a dormant account of the kind referred to in
subsection (10)(a) shall make a report to the Bank at such intervals,
and in such form containing such particulars, as the Bank may require.

(12)  Where a bank has made a payment to the Bank pursuant to subsection
(4) and —

(a)   the bank represents to the Bank that it is satisfied that a person
is entitled to receive an equal amount where the funds were paid
in Bahamian dollars and an equivalent amount where the funds
were paid in any other currency; and

(b)   the person has brought a claim to the bank for the amount so
paid prior to the expiry of ten years from the date of the Bank's
receipt of such amount, a liability shall arise —

(i)   on the Bank, to repay to the bank an equal or equivalent
amount, as the case may be, together with interest if
interest was payable by the bank, at a rate and computed
in a manner that the Bank may by written notice
determine; and

(ii)  on the bank, to pay the amount received from the Bank
under sub-paragraph (i) to the claimant.

(13)  A bank which makes a payment to the Bank pursuant to subsection
(4), or transfers property to the Bank or an agent of the Bank pursuant
to subsection (6)(a), shall be discharged from further liability in
respect of such payment or transfer.

(14)  The Bank shall, where the Bank makes a payment pursuant to
subsection (12) of this section or section 27(2) of the Central Bank of
The Bahamas Act, 2020, be discharged from further liability in respect
of such payment.

(15)  A bank shall maintain a register of dormant accounts containing in
respect of each account the —

(a)    full name and last known address of each customer;

(b)    last known telephone number or other contact of each customer;

(c)    name of the bank and location of the branch at which the dormant account is held;

(d)    account number;

(e)    type of facility;

(f)    full description of assets, including amount and currency where appropriate;

(g)    fee status, indicating whether the account was subject to any fees immediately prior to transfer to the Bank and the amount of such fees;

(h)    interest status, indicating whether the account was subject to any interest earned immediately prior to transfer to the Bank and the amount of such interest;

(i)    date of last transaction on the account;

(j)    measures, briefly described, taken to contact the customer;

(k)    in the case of funds in transit, file copy of the instrument or transfer;

(l)    date funds were paid to the Bank pursuant to subsection (4), where applicable; and

(m)    other information that the Bank may, in writing, require a bank to maintain in the register.

### 79.  Charges for account to be by agreement.

No bank shall directly or indirectly charge or receive any sum of money for the establishment, maintenance or service of an account unless such charge is made by express and specific agreement between the bank and the customer.

### 80.  Power of search.

(1)    If a Magistrate is satisfied by information on oath given by the Inspector or by a person authorised under section 28(4) to assist the Inspector either —

    (a)    that a licence has been suspended; or

    (b)    that there is reasonable ground for suspecting that an offence against this Act has been or is being committed and that evidence of the commission of the offence is to be found at any premises specified in the information or in any vehicle, vessel

or aircraft so specified; or

(c)    that any books, records, vouchers, documents, cash or securities which ought to have been produced under section 28(3) and have not been produced are to be found at any such premises or in any such vehicle, vessel or aircraft, he may grant a search warrant authorising the Inspector or such person authorised under section 28(4) or any police officer together with any other person named in the warrant and any other police officers, to enter the premises specified in the information or, as the case may be, any premises upon which the vehicle, vessel or aircraft so specified may be, at any time within one month from the date of the warrant, and to search the premises or, as the case may be, the vehicle, vessel or aircraft.

(2)    The person authorised by any such warrant as aforesaid to search any premises or any vehicle, vessel or aircraft may search every person who is found in or whom he has reasonable ground to believe to have recently left or to be about to enter those premises or that vehicle, vessel or aircraft, as the case may be, and may seize any books, records, vouchers, documents, cash or securities found in the premises or in the vehicle, vessel or aircraft which he has reasonable ground for believing to be evidence of the commission of any offence against this Act or any such books, records, vouchers, documents, cash or securities found in the premises or in the vehicle, vessel or aircraft which he has reasonable ground for believing to be evidence of the commission of any offence against this Act or any such books, records, vouchers, documents, cash or securities found in the premises or in the vehicle, vessel or aircraft which he has reasonable ground for believing ought to have been produced under section 28(3):

Provided that no female shall, in pursuance of any warrant issued under this subsection, be searched except by a female.

(3)    Where by virtue of this section a person has any power to enter any premises he may use such force as is reasonably necessary for the purpose of exercising that power.

(4)    Every person who shall obstruct the Inspector or any other person in the exercise of any powers conferred on him by virtue of this section shall be guilty of an offence and shall be liable on summary conviction to a fine not exceeding one thousand dollars or to imprisonment for a term not exceeding three months or to both such fine and imprisonment.

## 81.   Attorney-General's fiat.

(1)   No prosecution in respect of any offence committed under this Act shall be instituted except by or with consent of the Attorney-General.

(2)   Any penalty incurred under this Act shall be paid to the Bank.

(3)   Notwithstanding any provision in any enactment prescribing the period within which summary proceedings may be commenced, proceedings for an offence committed under this Act may be commenced at any time within the period of three months from the date on which evidence sufficient, in the opinion of the Attorney General, to justify a prosecution for the offence comes to his knowledge, or within the period of twelve months after the commission of the offence, whichever period last expires;

(4)   For the purposes of this section, a certificate purporting to be signed by the Attorney-General as to the date on which such evidence referred to in subsection (3) comes to his knowledge shall be conclusive.

## 82.   Regulations.

The Bank may make regulations for all or any of the following purposes —

(a)   to prescribe the information, particulars and references which may be prescribed under section 6(2) and section 4(3);

(b)   to prescribe the facts or matters which are likely to be of material significance for the discharge of the Inspector's functions under this Act;

(c)   generally for carrying out the purposes or provisions of this Act into effect.

## 83.   No Derogation.

(1)   The provisions of the Act shall have effect in addition to and not in derogation of any other provisions having the force of law in The Bahamas, provided however that the provisions of the Act shall prevail to the extent of any inconsistency with other laws of general application.

(2)   This Act shall have effect notwithstanding anything to the contrary in the Companies Act (*Ch. 308*) and the provisions of that Act, insofar as they relate to banking business or such other business as may be regulated or supervised by the Bank in or from within The Bahamas, shall have effect only subject to the provisions of this Act.

### 84. Appeal.

(1) An appeal shall lie to the Supreme Court from any decision of the Bank —

    (a) amending or revoking an authorization contained in a licence under section 10(6) or revoking a licence under sections 4(5), 29, or 48(3);

    (b) cancelling any registration or withdrawing any exemption under section 14(1) or withdrawing any approval under section 4(4);

    (c) requiring a licensee to take certain steps which the Bank may specify under section 29.

    (d) to serve a notice of objection under subsection (1) of section 17;

    (e) to serve a decision notice under subsections (4) of 75 or subsection (5) of section 76;

    (f) appointing a statutory administrator pursuant to section 29(1)(f);

    (g) appointing a liquidator pursuant to section 60(1).

(2) An appeal against the decision of the Bank shall be on motion and the appellant within twenty-one days after the day on which the Bank has given its decision shall serve on the Attorney-General a notice in writing signed by the appellant or his counsel and attorney of his intention to appeal and of the general ground for his appeal:

Provided that any person aggrieved by the decision of the Bank may upon notice to the Attorney-General apply to the Supreme Court for leave to extend the time within which the notice of appeal prescribed by this section may be served, and the Supreme Court upon the hearing of such application may extend the time prescribed in this section as it deems fit.

(3) The Attorney-General shall upon receiving the notice of appeal transmit to the Registrar of the Supreme Court without delay a copy of the Bank's decision and all papers relating to the appeal:

Provided that the Attorney-General shall not be compelled to disclose any information if he considers that the public interest would suffer by such disclosure.

(4) The Registrar shall set the appeal down for hearing on such day, and shall cause notice of the same to be published in such manner, as the Supreme Court may direct.

(5) At the hearing of the appeal the appellant shall, before going into the

case, state all the grounds of appeal on which he intends to rely and shall not, unless by leave of the Supreme Court, go into any matters not raised by such statement.

(6) In any court, administrative, or arbitration proceedings brought against the Bank, the Inspector, a director, officer, employee, correspondent or agent of the Bank, including any statutory administrator, or liquidator appointed by the Bank under this Act for an act done or omitted to be done by such persons in connection with the discharge or purported discharge of their functions or against the Bank for any actions or inactions pursuant to sections 29(1)(f), 38, 40, 42, 43, 46, 47, 48, 49, 50, 60(1) or 60(2), 62 and 63 of this Act relating to intervening in or resolving banks —

    (a) the court, administrative body, or arbitration panel may examine only whether the respondent acted unlawfully, in bad faith, or with gross negligence, the burden of proof of which shall be borne by the plaintiff or claimant;

    (b) the action in question shall continue without restriction during the period of an appeal and any further appeal or other proceedings related to the appeal; and

    (c) the court, administrative body, or arbitration panel may if appropriate award monetary damages to an injured party but shall not enjoin, stay, suspend, or set aside the action in question.

(7) An appeal against a decision of the Bank shall not have the effect of suspending the execution of such decision.

## 85.   Fees and levy.

(1) Notwithstanding the provisions of any other law, a bank that is a DSII at any time during a financial year that ends after the commencement of this section is liable to pay a levy in respect of that financial year.

(2) The provisions of the *Second Schedule* shall have effect for the payment of the fees in respect of the matters mentioned in that Schedule and all fees and levy listed in the *Second* Schedule shall be collected by the Bank.

(3) Subject to subsection (4) all fees and any levy amount paid pursuant to subsection (2) shall be placed in the Consolidated Fund.

(4) For the purpose of funding regulatory activity of the Bank, the Securities Commission of The Bahamas, the Insurance Commission of The Bahamas and the Compliance Commission, the Bank shall withhold such amount of the fees and levy collected under subsection

(2) as may be agreed with the Minister and shall remit the balance to the Treasurer.

(5)   The Minister may by regulations —

    (a)   provide for the refund (or other application) of over payment of levy;

    (b)   vary the fees or amount of levy prescribed in the *Second Schedule*, to provide that any such regulations which increase the amount of any fees or levy payable under this Act shall be exempt from the provisions of section 32 of the Interpretation and General Clauses Act but instead be subject to affirmative resolution of both Chambers of Parliament.

(6)   The Bank may, if the Bank considers it appropriate to do so, waive the payment of the whole or a part of an amount of levy that is payable by a DSII.

(7)   In subsection (5), the expression **"affirmative resolution of both Chambers of Parliament"** in relation to regulations means that the regulations are not to come into operation unless and until affirmed by a resolution of each of those Chambers.

(8)   If any person fails to comply with any requirement of subsections (1), (2) and the *Second Schedule*, he, or, where such person is a company, the company and every director, manager, secretary or other officer of the company who knowingly and wilfully authorises or permits the default, shall on summary conviction be liable, for every day during which the default continues, to a fine not exceeding one thousand dollars.

## 86.  Repeal.

The Banks and Trust Companies Regulation Act (*Ch. 316*), is hereby repealed.

## 87.  Savings.

Any licence, authority, approval or exemption granted under the repealed Act which is in force immediately before the coming into force of this Act —

    (a)   shall continue to have effect after the coming into force of this Act as if granted under this Act;

    (b)   in the case of a grant for a specific period, shall remain in force for so much of that period as falls after the coming into force of this Act.

## FIRST SCHEDULE

(sections 2, 28 and 78)

## INSPECTION AND SUPERVISION OF BANKS AND TRUST COMPANIES

1.    In accordance with section 28, the Inspector shall in carrying out inspections and supervision of banks and trusts companies —

       (a)   regularly evaluate the condition, solvency and liquidity of all licensees;

       (b)   establish appropriate and prudent standards for conducting safe and sound banking and trust business;

       (c)   set prudent and appropriate capital adequacy requirements for banks not less than those established in the Basel Capital Accord and its Amendments;

       (d)   evaluate banks' policies, practices and procedures related to the granting of loans and making of investments and the on-going management of the loan and investment portfolios;

       (e)   ensure that banks and trust companies have management information systems that enable management to identify portfolio concentration in line with established limits;

       (f)   ensure that banks and trust companies have in place and use systems that accurately measure, monitor and adequately control market and other risks;

       (g)   ensure that banks establish and adhere to adequate policies, practices and procedures for evaluating the quality of assets and the adequacy of loan-loss provisions and loan-loss reserves;

       (h)   ensure that banks and trust companies have in place internal controls adequate to the nature and scale of their operations, and adequate policies, practices and procedures, including strict know-your-customer rules that promote high ethical and professional standards, and so prevent the use of the bank for criminal purposes;

       (i)   co-operate with inspectors and supervisors in other jurisdictions to the extent necessary for the purposes of cross-border supervision consistent with the policy established by the Basel Committee for cross-border supervision.

2.    In this Schedule, **"Basel Committee on Banking Supervision"** or **"Basel Committee"** means the committee of central banks and bank supervisors that is the primary global standard setter for the prudential regulation of banks.

## SECOND SCHEDULE

(section 85)

## FEES AND LEVY

### 1.   Calculation of levy.

(1)   The amount of levy payable by a DSII for a financial year is the amount worked out using the following formula —

Levy   =   Rate of   x   (Consolidated   --   Levy Threshold   +   Regulatory capital amount
Assessment       Total Domestic                             equivalent to 16 per cent of
per annum        Liabilities amount                        a  DSII's  risk  weighted
                 of DSII                                   assets)

(2)   The amount of levy payable by a DSII for a financial year shall in no case be less than zero.

(3)   The annual rate of assessment to be used to calculate the levy shall be 0.30% or such other percentage as the Minister may by regulation determine from time to time.

(4)   Subject to the following paragraphs of this Schedule, the following shall be the fees under this Act, that is to say —

### 2.   Fees.

**Matters in respect of which fee is payable**          **Amount of fee $**

(a)   Appointment of a licensee by the Controller of Exchange as an authorised dealer as defined in paragraph (1) of regulation 42 of the Exchange Control Regulations in the case where the licensee as per its last audited financial statement —

   (i)   has domestic assets not exceeding $500 million       $250,000

   (ii)   has domestic assets exceeding $500 million but not exceeding $1 billion       $500,000

   (iii)   has domestic assets exceeding $1 billion       $1 million

(b)   Continuance in being on the first day of January in any year as a person appointed as mentioned in sub-paragraph (a) of this paragraph in the case where the licensee as per its last consolidated audited financial statements —

   (i)   has domestic assets not exceeding $500 million       $275,000

   (ii)   has domestic assets exceeding $500 million but not exceeding $1 billion       $550,000

(iii) has domestic assets exceeding \$1 billion but not exceeding \$1.5 billion                                                   \$1 million

(iv) has domestic assets exceeding \$1.5 billion          \$1.2 million

(c) A further fee payable on the first day of January in any year as a person appointed as mentioned in subparagraph (a) of this paragraph in the case where the licensee as per its last consolidated audited financial statements —

(i) has domestic liabilities not exceeding \$100 million   \$50,000

(ii) has domestic liabilities exceeding \$100 million but not exceeding \$500 million                                              \$450,000

(iii) has domestic liabilities exceeding \$500 million but not exceeding \$1 billion                                                 \$1.5 million

(iv) has domestic liabilities exceeding \$1 billion        \$2 million

(d) Appointment of a licensee as authorised agent pursuant to the Exchange Control Regulations, 1956, in the case where the licensee as per its last consolidated audited financial statements —

(i) has assets not exceeding \$5million                    \$90,000

(ii) has assets exceeding \$5 million  but not exceeding \$20 million
                                                          \$150,000

(iii) has assets exceeding \$20 million                    \$225,000

(e) Continuance in being on the first day of January in any year as a person appointed as mentioned in subparagraph (d) of this paragraph in the case where the licensee as per its last audited financial statement —

(i) has assets not exceeding \$5 million                   S 90,000

(ii) has assets exceeding \$5 million but not exceeding \$20 million
                                                          S150,000

(iii) has assets exceeding \$20 million                    \$225,000

(f) Grant of license to carry on banking business or to carry on both banking business and trust business without any limitation on the persons with or for whom such respective business may be carried on, where the licensee —

(i) has been declared by the Controller of Exchange pursuant to the Exchange Control Regulations to be resident in The Bahamas; and

(ii) has not been appointed as mentioned in subparagraph (a) or (d) of this paragraph                                               \$80,000

(g) Continuance in being on the first day of January in any year as a person licensed as mentioned in subparagraph (f) of this paragraph \$80,000

(h) Grant of licence to carry on trust business without any limitation on the persons with or for whom such respective business may be carried on,

---

where the licensee —

    (i)    has been declared by the Controller of Exchange pursuant to the Exchange Control Regulations, 1956, to be resident in The Bahamas; and

    (ii)   has not been appointed as mentioned in subparagraph (a) or (d) of this paragraph         $58,000

(i)    Continuance in being on the first day of January in any year as a person licensed as mentioned in subparagraph (e) of this paragraph

         $58,000

(j)    Grant of licence to carry on banking business or to carry on both banking business and trust business without any limitation on the persons with or for whom such respective business may be carried on, where the licensee —

    (i)    has been declared by the Controller of the Exchange pursuant to the Exchange Control Regulations not to be resident in

        The Bahamas; and

    (ii)   has not been appointed as mentioned in subparagraph (a) or (d) of this paragraph         $80,000

(k)   Continuance in being on the first day of January in any year as a person licensed as mentioned in subparagraph (j) of this paragraph

         $80,000

(l)    Grant of license to carry on trust business without any limitation on the persons with or for whom such respective business maybe carried on, where the licensee —

    (i)    has been declared by the Controller of Exchange pursuant to the Exchange Control Regulations not to be resident in The Bahamas; and

    (ii)   has not been appointed as mentioned in subparagraph (a) or (d) of this paragraph         $58,000

(m)  Continuance in being on the first day of January in any year as a person licensed as mentioned in subparagraph (l) of this paragraph

         $58,000

(n)   Continuance in being on the first day of January in any year as a person licensed to carry on banking business solely with a person specified in the licence         $35,000

(o)   Grant of licence to carry on banking business and trust business solely with or for persons specified in the licence         $35,000

(p)   Continuance in being on the first day of January in any year as a person licensed as mentioned in sub-paragraph (o) of this paragraph

         $35,000

(q)   Grant of license solely to carry on the trust Business  specified in the
      licence                                                  $11,000

(r)   Continuance in being on the first day of January in any year as a person
      licensed as mentioned in subparagraph (q) of this paragraph

                                                               $11,000

(s)   Grant of any licence not mentioned in subparagraph (f), (h), (j), (l), (o)
      or (q) of this paragraph                                 $2,500

(t)   Continuance in being on the first day of January in any year as a person
      licensed as mentioned in subparagraph (s) of this paragraph

                                                               $2,500

(u)   On commencement of the business of a private trust company

                                                               $6,000

(v)   Continuance in being on the first day of January in any year as a
      private trust company mentioned in subparagraph (u) of this paragraph
                                                               $4,000

(w)   On commencement of the business of a Money Transmission
      Service Provider                                         $11,000

(x)   Continuance in being on the first day of January in any year as a
      Money Transmission Service Provider mentioned in paragraph (w)
                                                               $11,000

(y)   Grant of a certificate of registration to carry on the business of Registered
      Representative                                           $2,500

(z)   Continuance in being on the first day of January in any year as a person
      registered as mentioned in subparagraph (y) of this paragraph

                                                               $2,500

## 3.   Miscellaneous.

Where any person by reason of falling within a class mentioned in
subparagraphs (a) to (z) of paragraph 2 of this Schedule has paid a fee
therein prescribed in respect of that class for any year and would, but for
provisions of this paragraph of this Schedule, be required to pay in that year
a further fee or further fees by reason of such person during that year coming
additionally within another such class as aforesaid, such person shall not be
required to pay in respect of fees under this Act for that year more in total
than the highest fee prescribed in respect of any of the classes within which
such person falls:

Provided that any person in any year falling within a class mentioned at
subparagraph (a) or (b) and at the same time within a class mentioned at
subparagraph (c), (d) or (e) of the said paragraph 1 of this Schedule shall,

---

subject to paragraphs 4 and 5 of this Schedule, be required to pay the fee prescribed in respect of both such classes for that year.

## 4.   Extension of time for payment of fees.

As respects the fees specified at subparagraphs (b), (e), (g), (i), (k), (m), (n), (p), (r), (t), (v), (x) and (z) of paragraph 2 of this Schedule —

(a)   not more than sixty days grace, to be calculated from the first day of January in each year, may be allowed by the Treasurer for the payment of the fees payable in any year; and

(b)   no such fees shall be payable in any year where the original appointment or licence to which such fee relates was made or granted on or after the first day of September in the preceding year.

## 5.   Deductions in respect of fees.

Any fee paid by any person in any year pursuant to subsection (1) of section 300, and paragraph 2 of the Third Schedule to, the Companies Act and pursuant to subsection (1) of section 176 of, and paragraph 3 of the Schedule to, the International Business Companies Act (*Ch. 309*) shall be deducted from any fees payable by such person in that year under this Act.

## THIRD SCHEDULE

(section 47(5))

## SECURITIES TRANSFER INSTRUMENTS

Part I - General

## 1.   Interpretation.

In this Schedule —

"**prescribed entity**" means —

(a)   a bank under statutory administration;

(b)   a holding company of a bank under statutory administration;

(c)   an affiliated operational entity of a bank under statutory administration;

(d)   a bridge institution to which —

        (i)     securities issued by an entity mentioned in paragraph (a), (b) or (c) have been transferred by a securities transfer instrument; or

        (ii)    assets, rights or liabilities of such an entity have been transferred by a property transfer instrument;

    (e)    an asset management vehicle to which assets, rights or liabilities mentioned in paragraph 42(3)(b) have been transferred by a property transfer instrument;

**"securities"** includes —

    (a)    shares and stock;

    (b)    debentures, including —

        (i)     debenture stock,

        (ii)    loan stock,

        (iii)   bonds,

        (iv)   certificates of deposit, and

        (v)    any other instrument creating or acknowledging a debt.

    (c)    warrants or other instruments that entitle the holder to acquire anything in paragraph (a) or (b).

## 2.   Securities transfer instrument.

    (1)    A securities transfer instrument is an instrument that —

        (a)   provides for the transfer of securities issued by a prescribed entity; and

        (b)   makes any other provision for the purpose of, or in connection with, the transfer of securities issued by a prescribed entity (whether or not the transfer has been or is to be effected by that instrument, by another share transfer instrument or otherwise).

    (2)    A securities transfer instrument may relate to —

        (a)  specified securities; or

        (b)  securities of a specified description.

## 3.   Procedure.

As soon as practicable after making a securities transfer instrument in respect of a prescribed entity, the Bank must —

    (a)    send a copy to —

        (i)     the transferor;

        (ii)    the transferee; and

        (iii)   the Minister;

(b)    publish a copy of the instrument on its internet website;

(c)    arrange for the publication of a copy of the instrument on the internet website (if any) of the prescribed entity; and

(d)    cause notice of the making of the instrument to be published in the Gazette.

## 4.   Effect of securities transfer instrument.

(1)    A transfer of securities and any other provision contained in a securities transfer instrument takes effect by operation of this Act.

(2)    A transfer takes effect at the times, or on the date, specified in the securities transfer instrument.

(3)    A transfer takes effect despite any restriction arising under contract or legislation or in any other way.

(4)    A securities transfer instrument may provide for a transfer to take effect free of any trust, liability or other encumbrance (and may include provision about the extinguishment of any trust, liability or other encumbrance).

(5)    A securities transfer instrument may extinguish rights to acquire securities.

(6)    This paragraph does not affect the right of a person to make, as a beneficiary under a trust or a party to a contract, a claim against a pre-resolution creditor or pre-resolution shareholder who is or was the trustee under the trust or a counterparty to the contract if any assets, rights or liabilities that are or were the subject of the trust or contract are affected by a securities transfer instrument.

(7)    In this paragraph —

    "restriction" includes —

        (a)    any restriction, inability or incapacity affecting what can and cannot be assigned or transferred (whether generally or by a particular person); and

        (b)    a requirement for consent (however described);

    "transfer" means a transfer of securities under a securities transfer instrument.

**5. Continuity.**

(1) A securities transfer instrument may provide for a transferee to be treated for any purpose connected with the transfer as the same person as the transferor.

(2) A securities transfer instrument may provide for agreements made or other things done by, or in relation to, a transferor to be treated as made or done by, or in relation to, the transferee.

(3) A securities transfer instrument may provide for anything (including legal proceedings) that relates to anything transferred and is in the process of being done by, or in relation to, the transferor immediately before the transfer date to be continued by, or in relation to, the transferee.

(4) A securities transfer instrument may modify references (express or implied) to a transferor in an instrument or other document.

(5) A securities transfer instrument may permit or require —

    (a) a transferor to provide a transferee with information and assistance; and

    (b) a transferee to provide a transferor with information and assistance.

**6. Conversion and de-listing.**

(1) A securities transfer instrument may provide for securities to be converted from one form or class to another.

(2) A securities transfer instrument may provide for the listing of securities on a recognized stock exchange to be cancelled or dealings in securities on a recognized stock exchange to be suspended.

**7. Removal of directors etc.**

(1) A securities transfer instrument may revoke the appointment of a person as a director, or as the chief executive officer or deputy chief executive officer, of a prescribed entity with effect from a date, or the occurrence of an event, specified in the instrument.

(2) The exercise of a power under subparagraph (1) does not affect the rights of any party to a contract of employment or services under which a director, chief executive officer or deputy chief executive officer is employed by, or acts for or on behalf of or under an arrangement with, a prescribed entity.

**8. Instruments.**

(1) A securities transfer instrument may permit or require the execution,

issue or delivery of an instrument.

(2) A securities transfer instrument may provide for a transfer to have effect irrespective of —

    (a)    whether an instrument has been produced, delivered, transferred or otherwise dealt with; or

    (b)    registration.

(3) A securities transfer instrument may provide for the effect of an instrument executed, issued or delivered in accordance with the securities transfer instrument.

(4) A securities transfer instrument may modify or annul the effect of an instrument.

(5) A securities transfer instrument may —

    (a)    entitle a transferee to be registered in respect of a security; and

    (b)    for that purpose, require a person to effect registration.

## 9.    Incidental provision, etc.

(1) A securities transfer instrument may include incidental, consequential or transitional provisions.

(2) In relying on subparagraph (1), a securities transfer instrument —

    (a)    may make provision generally or only for specified purposes, cases or circumstances; and

    (b)    may make different provision for different purposes, cases or circumstances.

Part II - Supplemental Securities Transfer Instrument

## 10.    Supplemental securities transfer instrument

(1) This Part applies if the Statutory Administrator has made a securities transfer instrument under section 47 (original instrument).

(2) The Statutory Administrator may make one or more supplemental securities transfer instruments.

(3) A supplemental securities transfer instrument is a securities transfer instrument that —

    (a)    provides the transfer of securities that were issued by the prescribed entity before the original instruments and were not the subject of the original instrument or another supplemental securities transfer instrument; or

(b)     makes provision of a kind that a securities transfer instrument may make under paragraph 2(1)(b) of this Schedule (whether or not in connection with a transfer that was the subject of the original instrument).

(4)     The possibility of making a supplemental securities transfer instrument in reliance on subparagraph (2) does not prevent the making of a new instrument under section 47 (and not in reliance on subparagraph (2)).

(5)     Except as otherwise provided by this Part, Part 1 of this Schedule applies with respect to a supplemental securities transfer instrument in the same way as it applies with respect to an original instrument.

Part III - Reverse Securities Transfer Instrument

## 11.     Power to make Reverse Securities Transfer Instruments.

(1)     This Part applies if the Statutory Administrator has made a securities transfer instrument under section 47(original instrument) providing for the transfer of securities issued by a prescribed entity (original transferred securities) to another entity (original transferee).

(2)     The Statutory Administrator may make one or more reverse securities transfer instruments in respect of original transferred securities held by the original transferee.

(3)     A reverse securities transfer instrument is a securities transfer instrument that —

(a)     provides for the transfer of original transferred securities held by the original transferee to the transferor under the original instrument; and

(b)     makes any other provision for the purpose of, or in connection with, the transfer of original transferred securities (whether or not the transfer was the subject of that instrument).

(4)     The Statutory Administrator must not make a reverse securities transfer instrument without the written consent of the original transferee unless the original transferee is a bridge institution or an asset management vehicle.

(5)     Nothing in this subparagraph prevents the making of a supplemental securities transfer instrument under Part 2 of this Schedule in respect of securities that have been the subject of a reverse securities transfer instrument.

(6)   Except as otherwise provided by this Part, Part 1 of this Schedule applies with respect to a reverse securities transfer instrument in the same way as it applies with respect to an original instrument.

## FOURTH SCHEDULE

(section 47(6))

## PROPERTY TRANSFER INSTRUMENTS

Part I – General

### 1.   Interpretation.

In this Schedule —

**"prescribed entity"** means —

- (a)   a bank under statutory administration;
- (b)   a holding company of a bank under statutory administration;
- (c)   an affiliated operational entity of a bank under statutory administration;
- (d)   a bridge institution to which —
  - (i)   securities issued by an entity mentioned in paragraph (a), (b) or (c) have been transferred by a securities transfer instrument; or
  - (ii)   assets, rights or liabilities of such an entity have been transferred by a property transfer instrument; or
- (e)   an asset management vehicle to which assets, rights or liabilities mentioned in section 47(2) have been transferred by a property transfer instrument.

### 2.   Property transfer instrument.

- (1)   A property transfer instrument is an instrument that —
  - (a)   provides for the transfer of assets, rights or liabilities of a prescribed entity; and
  - (b)   makes any other provision for the purpose of, or in connection with, the transfer of assets, rights or liabilities of a prescribed entity (whether or not the transfer was the subject of that instrument).
- (2)   A property transfer instrument may relate to —
  - (a)   all assets, rights and liabilities;
  - (b)   all assets, rights and liabilities subject to specified exceptions;
  - (c)   specified assets, rights or liabilities; or

(d)     assets, rights or liabilities of a specified description.

## 3.     Procedure.

As soon as practicable after making a property transfer instrument in respect of a prescribed entity, the Bank must —

- (a)     send a copy to—
  - (i)     the transferor;
  - (ii)    the transferee; and
  - (iii)   the Minister;
- (b)     publish a copy of the instrument on its internet website;
- (c)     arrange for the publication of a copy of the instrument on the internet website (if any) of the prescribed entity; and
- (d)     cause notice of the making of the instrument to be published –
  - (i)     in the Gazette; and
  - (ii)    in the Gazette to maximize the likelihood of the notice coming to the attention of persons likely to be affected.

## 4.     Effect of property transfer instrument.

- (1)     A transfer of assets, rights or liabilities and any other provision contained in a property transfer instrument takes effect by operation of this Act.
- (2)     A transfer takes effect at the time, or on the date, specified in the property transfer instrument.
- (3)     Subject to any condition imposed under subparagraph (4), a transfer takes effect despite any restriction arising under contract or legislation or in any other way.
- (4)     A property transfer instrument may make a transfer subject to such conditions as the Statutory Administrator determines, provide for a transfer to be a conditional or a specified event or situation —
  - (a)     occurring or arising; or
  - (b)     not occurring or arising.
- (5)     A property transfer instrument may include provision dealing with the consequences of breach of a condition imposed under subparagraph (4).
- (6)     Consequences mentioned in subparagraph (5) may include any of the following —
  - (a)     automatic vesting in the original transferor;
  - (b)     an obligation to effect a transfer back to the original transferor;

        (c)    provision making a transfer or anything done in connection with a transfer void or voidable.

(7)    If a property transfer instrument makes provision in respect of assets held on trust (however arising), it may also make provision about —

        (a)    the terms on which the assets are to be held after the instrument takes effect, which provision may remove or alter the terms of the trust but only to the extent that the Statutory Administrator thinks it necessary or expedient for transferring —

                (i)    the legal or beneficial interest of the transferor in the assets; or

                (ii)    any powers, rights or obligations of the transferor in respect of the assets; or

        (b)    how any powers, provisions and liabilities in respect of the assets are to be exercisable or have effect after the instrument takes effect.

(8)    Provision may not be made under subparagraph (7)(a) that affects the beneficial interest of a client in the client's assets held on trust, however arising.

(9)    In subparagraph (7), a reference to the transferor is a reference to the transferor under the property transfer instrument.

(10)    Nothing in paragraph 4 affects the right of a person to make, as a beneficiary under a trust or a party to a contract, a claim against a creditor or shareholder who is or was the trustee under the trust or a counterparty to the contract prior to the appointment of a statutory administrator if any assets, rights or liabilities that are or were the subject of the trust or contract are affected by a property transfer instrument.

(11)    A transfer of an interest in land under a property transfer instrument does not extinguish, affect, vary, diminish or postpone any priority of that interest, whether under any Act or in equity.

(12)    The Statutory Administrator must register or cause to be recorded in the Registry —

        (a)    a copy of the property transfer instrument under which an interest in land is transferred;

        (b)    a copy of an instrument that states whether any condition imposed on the transfer under subparagraph (4) is satisfied; and

        (c)    a copy of an instrument that evidences an automatic vesting in the original transferor in consequence of a breach of such condition.

(13)    The production of the instruments mentioned in subparagraph (12)(a) and (b) is conclusive evidence for proving and deducing title in favour of the transferee.  However, in the case of an automatic vesting in the original transferor, the production of the instruments mentioned in subparagraph (12)(a), (b) and (c) is conclusive evidence for proving and deducing title in favour of the original transferor.

(14)    Notwithstanding the provisions of any other law, the vesting of an interest in land under a property transfer instrument does not –

    (a)    constitute an acquisition, disposal, assignment, transfer or parting with possession of that interest;

    (b)    constitute an assignment or under lease of, or an agreement to assign or underlet, that interest;

    (c)    constitute an assignment, transfer, devolution, parting with possession, dealing with or other disposition of that interest or in any instrument concerning or affecting that interest;

    (d)    operate as a breach of covenant or condition against alienation;

    (e)    give rise to any forfeiture, damages or other right of action; or

    (f)    invalidate or discharge any contract or security interest.

(15)    In this paragraph —

**"Registry"** has the meaning ascribed to it by section 2 of the Registration of Records Act (*Ch. 187*);

**"restriction"** includes —

    (a)    any restriction, inability or incapacity affecting what can and cannot be assigned or transferred (whether generally or by a particular person); and

    (b)    a requirement for consent (however described);

**"transfer"** means a transfer of assets, rights or liabilities under a property transfer instrument.

## 5.    Application to the Court.

(1)    The Statutory Administrator may, if of the opinion that a transferee has breached a condition of a transfer imposed under subparagraph 4(4) of this Schedule, apply to the Court for an order under subparagraph (2).

(2)    On an application under subparagraph (1), the Court may, if satisfied that the transferee has breached a condition mentioned in that subparagraph, make any order that it thinks fit, including in order that the transferee effects a transfer back to the original transferor.

6.     **Transferable property.**

A property transfer instrument may transfer any assets, rights or liabilities of a prescribed entity including, in particular —

    (a)    assets, rights or liabilities acquired or arising between the making of the instrument and the transfer date;

    (b)    rights or liabilities arising on or after the transfer date in respect of matters occurring before that date;

    (c)    assets outside The Bahamas;

    (d)    rights or liabilities under a non-Bahamian law; and

    (e)    rights or liabilities arising under an Act to which the prescribed entity is entitled or subject.

7.     **Continuity.**

    (1)    A property transfer instrument may provide —

        (a)    for a transfer to be, or to be treated as, a succession; and

        (b)    for a transferee to be treated for any purpose connected with the transfer as the same person as the transferor.

    (2)    A property transfer instrument may provide for agreements made or other things done by, or in relation to, a transferor to be treated as made or done by, or in relation to, the transferee.

    (3)    A property transfer instrument may provide for any (including legal proceedings) that relates to anything transferred and is in the process of being done by, or in relation to, the transferor immediately before the transfer date to be continued by, or in relation to, the transferee.

    (4)    A property transfer instrument that transfers, or enables the transfer of, a contract of employment may include provision about continuity of employment.

    (5)    A property transfer instrument may modify references (express or implied) to a transferor in an instrument or other document.

    (6)    In so far as rights and liabilities in respect of anything transferred are enforceable after the transfer, a property transfer instrument may provide for apportionment between the transferor and the transferee to a specified extent and in specified ways.

    (7)    A property transfer instrument may enable the transferor and transferee by agreement to modify a provision of the instruments, but a modification —

        (a)    must achieve a result that could have been achieved by the instrument; and

          (b)    may not transfer (or arrange for the transfer of) assets, rights or liabilities.

(8)    A property transfer instrument may permit or require —

          (a)    a transferor to provide a transferee with information and assistance; and

          (b)    a transferee to provide a transferor with information and assistance.

## 8.   De-listing.

A property transfer instrument may provide for a listing of securities on a recognized stock exchange to be cancelled or dealings in securities on recognized stock exchanges to be suspended.

## 9.   Removal of directors etc.

(1)    A property transfer instrument may revoke the appointment of a person as a director, or as the chief executive officer or deputy chief executive officer, of a prescribed entity with effect from such date as may be specified in the instrument.

(2)    The exercise of a power under subparagraph (1) does not affect the rights of any party to a contract of employment or services under which a director, chief executive officer or deputy chief executive officer is employed by, or acts for or on behalf of or under an arrangement with, a prescribed entity.

## 10.   Licences.

(1)    A licence in respect of anything transferred by a property transfer instrument continues to have effect despite the transfer.

(2)    A property transfer instrument may expressly exclude the applicability of the provisions of subparagraph (1) to a specified extent.

(3)    If a licence confers rights or imposes obligations, a property transfer instrument may apportion responsibility for the exercise of, or compliance with, those rights or obligations between the transferor and the transferee.

(4)    In this paragraph, **"licence"** includes permission and approval and any other permissive document in respect of anything transferred.

## 11.   Creation of liabilities.

(1)    The provision that may be made by a property transfer instrument includes provision for the creation of liabilities.

(2)    The provision may be framed by reference to an agreement that has

been or is to be entered into, or anything else that has been or is to be done, by any person.

## 12.  Insured Deposits.

(1)   This paragraph applies if a property transfer instrument transfers an insured deposit and both the transferor and transferee are members of the deposit insurance fund under the Protection of Depositors Act.

(2)   Any insured deposit held by a depositor with the transferee immediately before the transfer date continues to be an insured deposit.

(3)   An insured deposit mentioned in subparagraph (2) is not affected by any increase in the number or amount of deposits held by the depositor with the transferee as a result of a transfer caused by the property transfer instrument.

(4)   Any insured deposit held by a depositor with the transferor immediately before the transfer date that is transferred by the property transfer instrument (transferred insured deposit) continues to be an insured deposit for the period of 6 months beginning on the transfer date, even if it matures on or after the transfer date and is renewed with the transferee.

(5)   Notwithstanding the provisions of sub-paragraph (4), where the transferred insured deposit has an original maturity date that is after the expiry of the period of six months beginning on the transfer date, it continues to be an insured deposit until it first matures after the transfer date.

(6)   Subparagraph (4) has effect despite the number or amount of deposits held by the depositor with the transferee immediately before the transfer date.

(7)   This paragraph has effect despite anything to the contrary in the Protection of Depositors Act (*Ch. 317*).

## 13.  Non-Bahamas property.

(1)   This paragraph applies if a property transfer instrument transfers non-Bahamian property.

(2)   The transferor and the transferee must each take any necessary steps to ensure that the transfer is effective as a matter of the law of the jurisdiction where the property is located (if it is not otherwise so effective).

(3)   Until the transfer is effective as a matter of non-Bahamian law, the transferor must —

(a) hold the asset or right for the benefit of the transferee (together with any additional asset or right accruing by operation of the original asset or right); or

(b) discharge the liability on behalf of the transferee.

(4) If the Statutory Administrator determines that, despite any steps taken by the transferee or the transferor, it is not possible for the transfer of certain non-Bahamian property to be effective under the law of the jurisdiction where the property is located or (if the property consists of rights or liabilities) the law under which it arises —

(a) subparagraph (3) ceases to apply; and

(b) the provisions of the property transfer instrument relating to that property are void.

(5) The Statutory Administrator must give written notice of any determination under subparagraph (4) to the transferor and the transferee.

(6) The transferor must meet any expenses of the transferee in complying with this paragraph.

(7) The transferor must comply with any directions of the Bank in respect of the obligations under subparagraphs (2) and (3).

(8) A direction under subparagraph (7) may expressly exclude the applicability of the provisions of subparagraph (2) or (3) to a specified extent.

(9) An obligation imposed by or under this paragraph is enforceable as if created by contract between the transferor and transferee.

## 14. Incidental provision.

(1) A property transfer instrument may include incidental, consequential or transitional provisions.

(2) In relying on subparagraph (1), a property transfer instrument —

(a) may make provision generally or only for specified purposes, cases or circumstances; and

(b) may make different provision for different purposes, cases or circumstances.

Part II – Supplemental Property Transfer Instrument

## 15. Supplemental property transfer instrument.

(1) This Part applies if the Statutory Administrator has made a property transfer instrument under section 47 (original instrument).

(2) The Statutory Administrator may make one or more supplemental property transfer instruments.

(3) A supplemental property transfer instrument is a property transfer instrument that —

    (a) provides for assets, rights or liabilities to be transferred from the transferor under the original instrument (whether accruing or arising before or after the original instrument); or

    (b) makes provision of a kind that a property transfer instrument may make under paragraph 2(1)(b) of this Schedule (whether or not in connection with a transfer that was the subject of the original instrument).

(4) The possibility of making a supplemental property transfer instrument in reliance of subparagraph (2) does not prevent the making of a new instrument under section 50 (and not in reliance on subparagraph (2)).

(5) Paragraph 25 does not apply to the making of a supplemental property transfer instrument.

(6) Except as otherwise provided by this Part, Part 1 of this Schedule applies with respect to a supplemental property transfer instrument in the same way as it applies with respect to an original instrument.

Part III – Reverse Property Transfer Instrument

### 16. Reverse property transfer instrument.

(1) This Part applies if a Statutory Administrator has made a property transfer instrument under section 50 (original instrument) providing for the transfer of assets, rights or liabilities of a prescribed entity (original transferred assets, rights or liabilities) to another entity (original transferee).

(2) The Statutory Administrator may make one or more reverse property transfer instruments in respect of original transferred assets, rights or liabilities held by the original transferee.

(3) A reverse property transfer instrument is a property transfer instrument that —

    (a) provides for the transfer of original transferred assets, rights or liabilities held by the original transferee to the transferor under the original instrument; and

  (b) makes any other provision for the purpose of, or in connection with, the transfer of original transferred assets, rights or liabilities (whether or not the transfer was the subject of that instruments).

(4) The Statutory Administrator must not make a reverse property transfer instrument without the written consent of the original transferee unless the original transferee is a bridge institution or an asset management vehicle.

(5) Nothing in this paragraph prevents the making of a supplemental property transfer instrument under Part 2 of this Schedule in respect of assets, rights or liabilities that have been the subject of a reverse property transfer instrument.

(6) Except as otherwise provided by this Part, Part 1 of this Schedule applies with respect to a reverse property transfer instrument in the same way as it applies with respect to an original instrument.