**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla.
Case No. 1:23-cv-20700

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et
al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

_____/

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM FOR LEAVE TO FILE**
**AMENDED COMPLAINT AGAINST BANK DEFENDANTS**

Plaintiffs, pursuant to Federal Rule of Civil Procedure 15(a)(2) respectfully move this Court for an order granting them leave to file an Amended Administrative Class Action Complaint against Defendants Deltec Bank and Trust Company Limited ("Deltec"), Jean Chalopin, and Farmington State Bank d/b/a Moonstone Bank ("Moonstone") (collectively, the "Bank Defendants"). The proposed pleading is attached as **Exhibit A**.

In the past two weeks, notwithstanding Bank Defendants' efforts to avoid any meaningful jurisdictional discovery as ordered by this Court, and with the cooperation of key FTX Insider Defendants, Plaintiffs uncovered **approximately 7000 pages of direct text messages** between Bank Defendants, FTX,[1] and Alameda Research, LLC ("Alameda") and other details previously unknown to the public that substantiate, and add to, the allegations set forth in Plaintiffs' Administrative Complaint against Bank Defendants. [ECF No. 155].

Revelations from the text messages and testimony are startling and include:

- Defendant Deltec, of which Defendant Chalopin is a controlling owner, individually identified incoming FTX customer deposits and manually transferred those deposits into Alameda's Deltec bank account daily and by way of texting one another on the Telegram messaging platform;

- Deltec *knew* those incoming deposits belonged to FTX customers, but transferred them into Alameda's Deltec bank account anyway;

- To be sure, Deltec specifically inquired as to the nature and purpose of North Dimension, the sham electronics dealer that FTX Group installed as a front to suck in FTX customer deposits, and through which FTX customer funds were wired into Alameda accounts at Deltec;

- Deltec manually, and knowingly, processed wires totaling billions of FTX customer funds out of Alameda's Deltec bank account and beyond the customers' reach—including *after* Deltec learned of Alameda's looming insolvency and FTX's inevitable collapse;

---

[1] As used herein, "FTX" refers to FTX Trading Ltd. ("FTX Trading"), its domestic counterpart, West Realm Shires Services Inc. d/b/a FTX US ("FTX US" and collectively with FTX Trading, "FTX").

- Deltec shared regulatory compliance questions and customer information with FTX in violation of banking regulations and law—essentially, providing to FTX a playbook for evading regulatory scrutiny;

- At other times, Deltec exempted FTX and Alameda from regulatory-mandated "know-your-customer" and anti-money laundering requirements wholesale and often *fabricated documents* on behalf of FTX and Alameda to side step those requirements in other ways;

- When crypto suffered a crash in May 2022, and Alameda's loans started to be recalled, Deltec in secret prioritized Alameda redemptions of crypto and wires of proceeds from those redemptions over those of other bank customers, so that Alameda's losses from the crash would be lessened;

- Deltec secretly brokered a manipulative scheme between Tether Ltd., a cryptocurrency firm that mints the stablecoin "USDT" and Alameda to artificially inflate Tether's market capitalization and USDT's market price, which Alameda would purchase with FTX customer funds and immediately sell at the inflated market price;

- In furtherance of the Alameda-Tether scheme, Deltec extended a secret *de facto* line of credit that sometimes exceed *2 billion U.S. dollars*;

- Separately, Defendant Chalopin approached Alameda with another scheme, in which his insurance company, Relm Insurance, would purport to offer coverage to FTX customers for their deposits, but which Alameda would secretly fund; and

- Defendant Moonstone's membership into the Federal Reserve, a critical entry point for FTX to the U.S. banking system, was obtained by way of deceit and for FTX's benefit.

## I.    **BACKGROUND**

Plaintiffs named the Bank Defendants in this action for their alleged role in aiding and abetting the FTX fraud, for which a jury found FTX's top executive, Sam Bankman-Fried ("SBF"), guilty and several of his coconspirators have pleaded guilty. As Plaintiffs originally alleged, due to their regulatory diligence and monitoring obligations, the Bank Defendants enjoyed a "unique position", from which Bank Defendants learned Deltec, Chalopin, and Moonstone knew FTX was misappropriating customer funds by way of Alameda contrary to its representations, *inter alia*,

that it was "the safest and easiest way to buy and sell crypto" that it would hold customers' deposits in custody for their benefit and segregated from FTX's own assets.

Despite this knowledge, Bank Defendants provided necessary assistance to SBF, FTX, and Alameda in commission of the FTX scheme. Deltec and Chalopin helped to foster a lax regulatory jurisdiction in The Bahamas necessary to the FTX fraud, and provided high-risk, non-routine banking services to FTX that other banks would not provide. As the chief executive of Deltec, Chalopin spent years assisting the Bahamian government in "transform[ing] the country into a sandbox for digital asset startups." Indeed, as Chalopin tells it, "[i]t would be nothing in The Bahamas if it weren't for us [Deltec] in the beginning." Transforming The Bahamas into a crypto haven was no easy task—Chalopin recalls it was like clearing a jungle in which "you have to use your machete and cut the branches." Deltec was happy to help FTX in these and other ways. Chalopin often touted, "Deltec has been a long-time friend of FTX, and it is our pleasure to support them," noting that Deltec had "embraced [FTX's] vision of the future." FTX, in turn, was a great friend of Deltec. After an extended failure by Deltec to raise debt capital in New York, Chalopin turned to FTX and, in October 2021, Deltec's parent company, Deltec International Group, received a $50 million loan from Norton Hall Ltd., an entity controlled by Ryan Salame, CEO of FTX's Bahamian outfit, paid for with Class Member funds.

Moonstone likewise aided the fraud by providing necessary, one-of-a-kind banking services to FTX when other financial institutions would not, including entry to the US banking system by way of the Federal Reserve and by serving as an outpost through which SBF trafficked customer assets offshore to its sister bank in The Bahamas, Deltec. FTX rewarded Moonstone for its assistance by flushing the bank with tens of millions of dollars in needed capital, becoming, in the case of Alameda, a shareholder of the bank by way of an $11.5 million investment that doubled the then-value of the bank, and hundreds of millions of dollars of deposits.

In response to Plaintiffs' well-pleaded complaint, Bank Defendants sought to evade litigation on the merits with cheap challenges to service or personal jurisdiction. Plaintiffs initially filed suit in the U.S. District Court for the Southern District of Florida due to the FTX conspiracy's

extensive ties to the greater Miami area and the Bank Defendants' participation in that conspiracy and commission of other intentional torts in the forum. Plaintiffs later commenced an action in the U.S. District Court for the Eastern District of Washington in an abundance of caution to address Bank Defendants' objections to this Court's personal jurisdiction. But Bank Defendants were not appeased.

After Bank Defendants filed motions to dismiss in which they argued that this Court lacks personal jurisdiction over them, Plaintiffs sought and obtained from this Court the right to conduct jurisdictional discovery as to those parties. Moonstone later withdrew its motion to avoid submitting to such discovery, but Plaintiffs proceeded with jurisdictional discovery as to Deltec and Chalopin. Plaintiffs also employed other means to gather information as to Deltec and Chalopin, such as effectuating settlements with certain FTX Insiders that included a requirement that they provide Plaintiffs with jurisdictional facts, and reviewing SBF's trial transcript and exhibits. Plaintiffs likewise made discoveries regarding Moonstone's misconduct since filing their original administrative complaint. Now, having completed formal and informal jurisdictional discovery on all Bank Defendants, Plaintiffs seek leave of this Court to file the enclosed Amended Administrative Class Action Complaint against the Bank Defendants.

## II.      RELEVANT PROCEDURAL HISTORY

After *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700 ("*O'Keefe* (S.D. Fla.)") was transferred and consolidated into this MDL, in conformance with this Court's order in the MDL, ECF No. 61, counsel for Plaintiffs and the Bank Defendants held discussions and confirmed that all Bank Defendants disputed personal jurisdiction in Florida. Although Plaintiffs disagreed that this Court lacked personal jurisdiction, Plaintiffs filed suit in Washington—another jurisdiction in which Plaintiffs believe personal jurisdiction exists over these defendants—to cure any objections.[2]

---

[2] *See O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR ("*O'Keefe* (E.D. Wa.)").

On August 3, 2023, this Court sua sponte entered a stay of all discovery in this matter through at least September 19, 2023. ECF No. 152. This Court specified that the parties could then move either to reopen discovery or to extend the stay.

On August 7, 2023, in accordance with this Court's order, *see* ECF No. 61, Plaintiffs asserted their claims against the Bank Defendants in the MDL administrative class action complaint filed with this Court. *See* ECF No. 155.

On September 21, 2023, Plaintiffs filed a motion to serve certain foreign defendants—including Deltec and Chalopin—through alternate means. *See* ECF No. 280. Though counsel had appeared in this action on behalf of each of these defendants, each had refused to waive service. Deltec and Chalopin opposed the motion, *see* ECF No. 329, and Plaintiffs filed a reply in support, *see* ECF No. 342. This motion remains pending.

On September 22, 2023, the MDL Defendants filed their responsive pleadings to Plaintiffs' administrative complaints. Deltec and Chalopin jointly filed a motion to dismiss advancing Rule 12(b)(2) personal jurisdiction (as to Florida and Washington) and Rule 12(b)(6) failure to state a claim defenses. ECF No. 267. Moonstone filed a separate motion to dismiss asserting that personal jurisdiction is lacking in Florida under Rule 12(b)(2) as well as Rule 12(b)(6) arguments mirroring those of Deltec and Chalopin. ECF No. 262.

Shortly thereafter, this Court entered an order, ECF No. 318, granting SBF and the Government's motions to stay discovery in these proceedings pending the completion of SBF's criminal trial, which they had filed on September 11 and 16, 2023, respectively, *see* ECF Nos. 241, 247. The Court further ruled, however, that Plaintiffs could seek to lift the stay and renew its request for jurisdictional discovery when the trial concluded. ECF No. 318, 336.

On November 3, 2023, the day after SBF's criminal trial concluded with a guilty verdict, Plaintiffs moved to lift the discovery stay to allow for jurisdictional discovery and, if necessary, to amend their administrative class action complaints to assert facts gleaned from jurisdictional discovery as to certain defendants, including Bank Defendants. ECF No. 348. The next business

day, Plaintiffs filed their oppositions to the MDL Defendants' responsive pleadings, including the Bank Defendants' motions to dismiss under Rules 12(b)(2) and 12(b)(6).

This Court granted in part Plaintiffs' motion for jurisdictional discovery on December 18, 2023. ECF No. 422. In the ruling, the Court recognized that a plaintiff "enjoys a qualified right to jurisdictional discovery" when it timely moves for it and "the information the plaintiff [requests] would give rise to jurisdiction." *Id.* at 3. The Court further concluded that denying jurisdictional discovery would constitute an abuse of discretion given that facts going to both the merits and jurisdiction were intertwined and disputed. *Id.*

The Court squarely considered and rejected assertions by Deltec and Chalopin that Plaintiffs had failed to plead a *prima facie* case of personal jurisdiction. *Id.* at 4. The Court held that the "disputed facts related to Plaintiffs' theories of personal jurisdiction"—e.g., commission of intentional torts in Florida and/or Washington—"are intertwined with the merits" such that "Plaintiffs have a qualified right to jurisdictional discovery." *Id.* at 5.

The Court concluded that, if Plaintiffs obtained information via the jurisdictional discovery warranting amendment to their complaints or responsive pleadings (i.e., oppositions to the 12(b)(2) motions), then Plaintiffs may move to amend or file supplemental responses to the motions. *Id.* at 5-6.

Plaintiffs served jurisdictional discovery on Deltec, Chalopin, and Moonstone four days later. The requests were met with objections mirroring arguments this Court already rejected in its ruling permitting Plaintiffs to take jurisdictional discovery, though Deltec and Chalopin also asserted for the first time that they could not respond to discovery absent an order from a Bahamian court permitting as much. In response, on January 5, 2024, Moonstone withdrew its personal jurisdiction objection as to Florida. Due to Deltec and Chalopin's continued refusal to respond to the discovery as necessary, Plaintiffs were forced to file a motion to compel, which Deltec and Chalopin opposed. ECF Nos. 447 & 470. Deltec and Chalopin then repeated their arguments in opposition to the motion to compel in a separate motion to quash and for protective order. ECF No. 471. Following a hearing, on January 19, 2024, Magistrate Judge Eduardo I. Sanchez issued

an order grating in part the motions to compel. ECF No. 478. Judge Sanchez ordered Deltec and Chalopin to produce "documents evincing Deltec[]'s banking license and corporate structure, as well as any contracts and agreements that Deltec[], other Deltec entities, or Jean Chalopin had with FTX, Alameda, and their related companies" and to submit to a Rule 30(b)(6) deposition. *Id.* at 3. Despite denying Deltec and Chalopin's motion to quash and for protective order (ECF No. 471), Judge Sanchez granted their *ore tenus* motion for protective order to prevent Plaintiffs from inquiring into Deltec's and its related entities' customers or customer information *except for with respect to FTX, Alameda, and/or their related entities*. *Id.*

On January 26, 2024, Deltec made a woefully insufficient and heavily redacted document production. Two business days later, on January 30, 2024, Plaintiffs took the Rule 30(b)(6) deposition of Deltec, at which Mr. Chalopin served as the corporate representative. After follow-up communications with counsel for Deltec and Chalopin regarding the deficiencies in Deltec's document production and corporate testimony, counsel for Deltec produced unredacted versions of six contracts. The unredacted documents revealed extremely limited helpful information, the use of which is governed by protective order and, as such, is not quoted, summarized, or otherwise referenced in any way, either in the instant motion or the Plaintiffs' proposed amended complaint.

Plaintiffs have pursued other avenues of information gathering and succeeded in obtaining certain information relevant to issues of personal jurisdiction over the MDL Defendants, including merits-intertwined issues. Specifically, immediately following the Government's dismissal of the charges against SBF to be tried at a second trial in March 2024, Plaintiffs worked diligently to finalize settlement agreements with FTX insiders Caroline Ellison, Nishad Singh and Gary Wang in which those insiders agreed to provide Plaintiffs with information regarding MDL Defendants, including Bank Defendants. Over the course of the last couple of weeks, Plaintiffs have held initial proffer sessions with Ms. Ellison, Mr. Singh, and Mr. Wang which inform in part the Amended Administrative Class Action Complaint enclosed with this motion for leave.

Ms. Ellison's proffer session was especially fruitful for Plaintiffs' amendment as to Deltec and Chalopin. Following that session, Ms. Ellison produced nearly 7,000 pages of Telegram

messages between Deltec and Alameda or FTX employees regarding account reconciliations and Alameda, transfers of FTX customer funds to Alameda's accounts, FTX's purchases of the Tether stablecoin, and Deltec's off-the-books multi-billion-dollar line of credit that it extend to Alameda, which bear directly on Deltec's contacts with the relevant forums and knowledge and assistance of the FTX fraud as explained below. Moreover, taken together, Ms. Ellison and Mr. Singh's proffers further confirmed the many ties between Bank Defendants and Florida, which Plaintiffs include in the enclosed amendment. Those ties include that many members of Alameda's Settlements Team, which processed banking transactions and settled trades, worked from Alameda's office in Berkeley, California and that FTX maintained operations in Miami, Florida long before it official moved its U.S. headquarters there, including by way of its acquisitions of Blockfolio and LedgerX (d/b/a FTX US Derivatives), key components of FTX.

### III.   <u>ARGUMENT</u>

Under Rule 15(a), "after any responsive pleading has been filed, subsequent amendments are permitted only with the leave of the district court." *Sec. Pest Control v. Wells Fargo Bank, Nat'l Ass'n*, 535 F. Supp. 3d 1213, 1214 (M.D. Ala. 2020) (quoting *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984)). Although the decision to grant or deny leave to amend is within the court's discretion, that discretion is limited in favor of granting leave to amend. *See id.* at 1214-15 (citing *Espey*, 734 F.2d at 750). As the U.S. Supreme Court has made clear,

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." [O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307–08 (11th Cir. 1983) ("[I]n the absence of a declared or apparent reason, an outright refusal to grant leave to amend is an abuse of discretion."). The dictate that leave be freely given is

intended to facilitate determination of claims on the merits. *Sec. Pest Control*, 535 F. Supp. 3d at 1214. Even if a party's motion for leave to amend is filed after a court-ordered deadline for the filing of all amended pleadings, the party need only demonstrate good cause why leave should be granted, at which point Rule 15's liberal-amendment standard applies. *See, e.g.*, *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366–67 (11th Cir. 2007).

Leave to amend should be "freely given" here. This case is in its infancy. To date, this Court has maintained a discovery stay for most of the case's duration, either sua sponte or acting upon the motions of SBF and/or the Government. Yet, on December 18, 2023, this Court lifted that discovery stay for a 45-day period to permit Plaintiffs to conduct jurisdictional discovery. Although at that time this Court denied as premature Plaintiffs' blanket request to amend their administrative complaints to the extent information gained via jurisdictional discovery warranted it, *see* ECF No. 422, Plaintiffs' request is premature no more. Plaintiffs now know that their formal jurisdictional discovery efforts as to Deltec and Chalopin, proffer sessions with certain FTX insiders, and other information-gathering (including review of SBF's trial transcripts and exhibits) generated the following information justifying the instant request for leave to amend:

- **Deltec:** Ms. Ellison's proffer, and Ms. Ellison's production of nearly 7,000 pages of Telegram messages show *inter alia* that Deltec (1) manually effected transfers of customer funds into and out of Alameda's Deltec account, including from North Dimension, which Deltec knew was a front; (2) manually effected secret transactions between Alameda and Tether to artificially inflate the market price of certain stablecoins; (3) extended a *de facto* line of credit totaling at times $2 billion to facility Alameda's misappropriation of FTX customer funds; and (4) transferred hundreds of millions of dollars from FTX's Deltec bank account to Alameda even after learning of Alameda's insolvency. These facts prove Deltec's knowledge, assistance, and agreement in support of intentional tort and conspiracy-based jurisdiction in Florida and Washington.

- **Chalopin:** Ellison's proffer suggested that Chalopin (1) launched Relm Insurance to provided coverage to (and varnish the reputation of) FTX despite knowing of FTX's misconduct, and (2) proposed that Alameda enter into an insurance scheme with Deltec International Group to exploit profit from covering FTX customer deposits. These facts prove Chalopin's intimate involvement in the Deltec-FTX/Alameda banking relationship and knowledge of the FTX fraud.

- **Moonstone:** On August 17, 2023, ten days after Plaintiffs filed their administrative complaint against Bank Defendants, the Federal Reserve Board ("Fed") announced its enforcement action related to Farmington's misrepresentations to the Fed regarding its business plan in its application for membership in the Fed. *See, e.g.*, Turner Wright, "Federal Reserve issues enforcement action against FTX-linked US bank," Countelegraph.com (last accessed Feb. 16, 2024), https://cointelegraph.com/news/federal-reserve-issues-enforcement-action-against-ftx-linked-bank. This allegation shows Moonstone's willingness to engage in wrongful (and atypical) conduct in order to assist the FTX fraud.

For the same reasons, to the extent this Court deems the good cause standard to apply, Plaintiffs have satisfied it. At the time of Plaintiffs' court-ordered deadline to file their administrative complaints, Plaintiffs had not yet engaged in jurisdictional discovery, proffer sessions with FTX insiders, and SBF's criminal trial had not commenced such that Plaintiffs were not privy to the trial transcripts and exhibits. Certain other public information that only came to light after the deadline also bears on the enclosed proposed amendment.

In addition, Plaintiffs' amendment does not suffer from "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *See Foman*, 371 U.S. at 182. Plaintiffs file this motion in pursuit of the enclosed amendment in accordance with this Court's deadline to file supplemental pleadings necessitated by the Court-ordered jurisdictional discovery, *see* ECF No. 422, and in order to shore up personal jurisdiction allegations in response to Deltec and Chalopin's personal jurisdiction objections, *see* ECF No. 267; this motion and amendment do not suffer from "undue delay, bad faith or dilatory motive."

Further, although this Court classified Plaintiffs' initial administrative complaints as "amended" administrative complaints, *see* ECF No. 61, the filing of those administrative complaints was necessitated by various cases' consolidation before this Court as an MDL and *not* in order to "cure deficiencies." Thus, Plaintiffs' proposed amendment does not suffer from "repeated failure to cure deficiencies by amendments previously allowed."

Plaintiffs pursue the instant amendment prior to this Court's ruling on MDL Defendants', including Bank Defendants', Rule 12 motions. As such, Bank Defendants would suffer little to no prejudice from the amendment. Bank Defendants may complain that they may have to re-argue Rule 12 defenses taking Plaintiffs' new allegations into consideration, but that does not warrant denial of a motion to amend. To the contrary, even if this Court had already granted Bank Defendants' Rule 12(b)(6) motions, Rule 15(a)'s mandate that leave be freely given would weigh in favor of granting amendment. *See Thomas*, 705 F.2d at 1307 ("A grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim . . . .").

Lastly, Plaintiffs' proposed amendment is not futile. "When a district court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *Sec. Pest Control*, 535 F. Supp. 3d at 1215 (quoting *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822 (11th Cir. 1999)). Yet, this Court has already noted that Plaintiffs made out a prima facie case for personal jurisdiction in granting Plaintiffs' request for jurisdictional discovery. *See* ECF No. 422. And Plaintiffs' new information only bolster their well-pleaded claims by showing, for example, that Bank Defendants knew that Alameda was misappropriating FTX customer funds—and manually assisted FTX and Alameda in doing so—while violating banking regulations and law (Bahamian regulations, for Deltec, regulations by the Federal Reserve, for Moonstone). All the while, Deltec brokered a clandestine manipulative scheme between Alameda and Tether, propped up Alameda with a secret, multi-billion-dollar *de facto* line of credit in furtherance of that scheme, and burned through FTX customer funds in doing so. None of the foregoing was previously known to Plaintiffs until recently and certainly not earlier than the filing of their last complaint.

In sum, Plaintiffs demonstrate good cause for their proposed amendment, no reason exists to justify its refusal, and, therefore, leave should be "freely given" under Rule 15 and binding precedent.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and permit them to file against the Bank Defendants the proposed Amended Administrative Class Action Complaint that is attached hereto.

**REQUEST FOR ORAL ARGUMENT**

Plaintiffs respectfully request that the Court hear oral argument on this Motion, and respectfully submit that thirty minutes should be sufficient for all Parties.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (a)(3)**

In compliance with Local Rule 7.1(a)(3), Plaintiffs' counsel conferred with counsel for Moonstone, Deltec, and Chalopin regarding whether they would oppose the relief requested herein. Plaintiffs' counsel e-mailed counsel for Moonstone, Deltec, and Chalopin on February 15, 2024, to ask whether their clients would oppose Plaintiffs' motion for leave to amend. Counsel for Moonstone informed Plaintiffs via email that date that they opposed the requested relief. Counsel for Deltec and Chalopin indicated via telephone on February 16, 2024, that they could not consent to the requested relief absent review of the proposed amendment itself and, unless or until such review revealed to the contrary, presumed her client would oppose the motion.

Dated: February 16, 2024                              Respectfully submitted,

**By: */s/ Adam Moskowitz***          | **By: */s/ David Boies***
Adam M. Moskowitz                        | David Boies
Florida Bar No. 984280                   | Alexander Boies
Joseph M. Kaye                           | Brooke A. Alexander
Florida Bar No. 117520                   | **BOIES SCHILLER FLEXNER LLP**
**THE MOSKOWITZ LAW FIRM, PLLC**          | 333 Main Street
Continental Plaza                        | Armonk, NY 10504
3250 Mary Street, Suite 202              | 914-749-8200
Coconut Grove, FL 33133                  | dboies@bsfllp.com
Office: (305) 740-1423                   | aboies@bsfllp.com
adam@moskowitz-law.com                   | balexander@bsfllp.com
joseph@moskowitz-law.com                 |
service@moskowitz-law.com                |

*Co-Lead Counsel*                                      *Co-Lead Counsel*

Joseph R. Saveri
Christopher Young
Itak K. Moradi
**JOSEPH SAVERI LAW FIRM**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
imoradi@saverilawfirm.com

*Counsel to Plaintiffs and the Putative Classes*

James R. Swanson, La. Bar No. 18455
Kerry J. Miller, La. Bar. No. 24562
Molly L. Wells, La. Bar. No. 36721
C. Hogan Paschal, La. Bar No. 38495
**FISHMAN HAYGOOD L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jswanson@fishmanhaygood.com
kmiller@fishmanhaygood.com
mwells@fishmanhaygood.com
hpaschal@fishmanhaygood.com

Robert Lieff
P.O. Drawer A
Rutherford, CA 94573
rlieff@lieff.com

*Counsel to Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on February 16, 2024 via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam Moskowitz*
Adam M. Moskowitz