UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-3655

*Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960

*Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974

_____/

**PLAINTIFFS' MOTION AND INCORPORATED MEMORANDUM FOR LEAVE TO FILE AMENDED COMPLAINT AGAINST MULTINATIONAL VC DEFENDANTS**

Plaintiffs, pursuant to Federal Rule of Civil Procedure 15(a)(2) respectfully move this Court for an order granting them leave to file an Amended Administrative Class Action Complaint against existing Multinational VC Defendants Temasek Holdings (Private) Limited ("Temasek Holdings"), Temasek International (USA) LLC ("Temasek USA"), Sino Global Capital Limited ("SGCL"), Sino Global Capital Holdings, LLC ("SGCH"), Softbank Group Corp., SB Group US, Inc., SoftBank Investment Advisers (UK) Limited, and SoftBank Global Advisers Limited, and adding the following related entities: Temasek International Pte. Ltd. ("Temasek International"), Artz Fund Investments Pte. Ltd. ("Artz"), and Blakiston Investments Pte. Ltd. ("Blakiston"),[1] Sino Global Capital Management LLC ("SGCM"), Liquid Value GP Limited, Liquid Value Offshore Feeder Fund I LP, and Liquid Value U.S. Fund I LP (collectively, "Liquid Value Defendants"),[2] and SoftBank II Tempest (DE) LLC.[3] The proposed pleading is attached as **Exhibit A**.

I. **BACKGROUND**

Plaintiffs named the Multinational VC Defendants—Temasek, Sino Global Capital, and SoftBank—in this action for their alleged role in aiding and abetting the FTX fraud, for which a jury found FTX's top executive, Sam Bankman-Fried ("SBF"), guilty and several of his coconspirators have pleaded guilty. The Multinational VC Defendants aided FTX's fraudulent scheme by injecting hundreds of millions in much needed start-up capital across multiple funding rounds, affirmatively laundered the reputations of FTX and SBF, and personally advised FTX as the fraudulent scheme took meteoric rise. Temasek and SoftBank were two of FTX's largest financial backers, putting up $275 million and $100 million, respectively, and held multiple seats on FTX's advisory board, with Pradyumna Agrawal, Managing Director for Blockchain Investments, and Antony Lewis, Director for Crypto & Blockchain Venture Building & Investing,

---

[1] Plaintiffs will refer to Temasek International, Artz, and Blakiston, together with Temasek Holdings and Temasek USA, collectively as "Temasek."
[2] Plaintiffs will refer to SGCM and Liquid Value Defendants, together with SGCL and SGCH, collectively as "Sino Global Capital."
[3] Plaintiffs will refer to SoftBank II Tempest (DE) LLC, together with Softbank Group Corp., SB Group US, Inc., and SoftBank Investment Advisers (UK) Limited, collectively as "SoftBank."

serving on behalf of Temasek; and Rajeev Misra, CEO of Softbank Investment Advisors (UK) Ltd. and SoftBank Global Advisers Ltd., and Tom Cheung, a Partner of SoftBank Investment Advisers (UK) Ltd., serving on behalf of SoftBank. Sino Global underwrote FTX's fraudulent enterprise in some amount in the "mid-seven figures" and maintained similar rapport with FTX, providing advice, support, and other assistance by way of its founder and managing partner, Matthew Graham.

With huge stakes in FTX and close ties to its top executives, Temasek, SoftBank and Sino Global publicly touted FTX, encouraging depositors to place their hard-earned fiat and crypto assets in accounts on the exchange, all while highlighting its purportedly unmatched safety. They did so despite having learned via extensive pre-investment due diligence efforts and ongoing investment monitoring that FTX was defrauding its customers. The scheme worked, and FTX's value skyrocketed as more and more people jumped on the FTX bandwagon. But, over the summer of 2022, the crypto industry faltered, ultimately causing the liquidity crisis that exposed the FTX fraud. Although, as a result, Multinational VC Defendants' envisioned pay day never materialized, neither was the loss of their investment materially harmful. While Plaintiffs and class members in many cases lost their entire savings, Multinational VC Defendants were able to write off their FTX investments, which were in any case minimal when considering their monumental portfolios.

In response to Plaintiffs' well-pleaded complaint, Multinational VC Defendants seek to evade litigation on the merits with cheap challenges to service or personal jurisdiction. Plaintiffs initially filed suit in the U.S. District Court for the Southern District of Florida due to the FTX conspiracy's extensive ties to the greater Miami area and Multinational VC Defendants' participation in that conspiracy and commission of other intentional torts in the forum. Plaintiffs later commenced actions in the U.S. District Court for the Northern District of California in an abundance of caution to address Multinational VC Defendants' objections to this Court's personal jurisdiction. But Multinational VC Defendants were not appeased.

After Temasek Holdings, Temasek USA, and SGCH filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs sought and obtained from this Court the right

3

to conduct jurisdictional discovery as to those parties. SGCH later withdrew its motion to avoid submitting to such discovery, but Plaintiffs proceeded with jurisdictional discovery as to Temasek Holdings and Temasek USA. Plaintiffs employed other means to gather information as to the other Multinational VC Defendants—who continue to assert insufficient service of process as a defense to this action—to further inform the jurisdictional arguments, such as effectuating settlements with certain FTX Insiders that included a requirement that they provide Plaintiffs with jurisdictional facts and reviewing SBF's trial transcript and exhibits. Now, having completed limited formal and informal jurisdictional discovery on all Multinational VC Defendants, Plaintiffs seek leave of this Court to file the enclosed Amended Administrative Class Action Complaint against the Multinational VC Defendants to incorporate information learned therefrom.

## II.     RELEVANT PROCEDURAL HISTORY

After *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700 ("*O'Keefe* (S.D. Fla.)") was transferred and consolidated into this MDL, in conformance with this Court's order in the MDL, ECF No. 61, counsel for Plaintiffs held discussions with counsel for Temasek Holdings and SoftBank[4] and confirmed that they each disputed personal jurisdiction in Florida. Although Plaintiffs disagreed that this Court lacked personal jurisdiction, Plaintiffs filed suit in California—another jurisdiction in which Plaintiffs believe personal jurisdiction exists over these defendants—to cure any objections.[5] Various MDL Plaintiffs thereafter filed putative class actions in the Southern District of Florida and Northern District of California to include certain domestic subsidiaries of the Multinational VC Defendants—namely, Temasek USA, SB Group US, Inc., and SGCH—again to address the Multinational VCs' personal jurisdiction concerns, and which have already been transferred and consolidated into this MDL. *See Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-

---

[4] SGCL had not made any appearance in this matter at that time.
[5] *See O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-03655 ("*O'Keefe* (N.D. Cal.)").

22960 ("*Chernyavsky* (S.D. Fla.)"); *see also Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974 ("*Cabo* (N.D. Cal.)").

On August 3, 2023, this Court sua sponte entered a stay of all discovery in this matter through at least September 19, 2023. ECF No. 152. This Court specified that the parties could then move either to reopen discovery or to extend the stay.

In accordance with this Court's order, *see* ECF No. 61, Plaintiffs asserted their claims against the Multinational VC Defendants in the MDL administrative class action complaint filed with this Court. *See* ECF Nos. 159 & 182.

On September 21, 2023, Plaintiffs filed a motion to serve certain foreign defendants—including Temasek Holdings, SoftBank, and SGCL—through alternate means. *See* ECF No. 280. Though counsel had appeared in this action on behalf of each of these defendants (or, in the case of SGCL, its domestic counterpart, SGCH), each had refused to waive service. Temasek Holdings, SoftBank, and SGCL all opposed the motion, *see* ECF Nos. 330, 331, 332, and Plaintiffs filed replies in support, *see* ECF Nos. 343, 344 & 345. This motion remains pending.

On September 22, 2023, the MDL Defendants filed their responsive pleadings to Plaintiffs' administrative complaints. Temasek Holdings, SoftBank, and SGCH filed Rule 12(b)(5) motions to dismiss for insufficient service. ECF Nos. 296, 298 & 299. Temasek Holdings, Temasek USA, and SGCH filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and attached conclusory, self-serving declarations from Belinda Chan Hian Wun, Caroline Jane Atherton, and Matthew Graham, respectively, in support of the motion. ECF No. 300. Multinational VC Defendants also filed a joint motion to dismiss for failure to state a claim under Rule 12(b)(6). ECF No. 303.

Shortly thereafter, this Court entered an order, ECF No. 318, granting SBF and the Government's motions to stay discovery in these proceedings pending the completion of SBF's criminal trial, which they had filed on September 11 and 16, 2023, respectively, *see* ECF Nos. 241, 247. The Court further ruled, however, that Plaintiffs could seek to lift the stay and renew its request for jurisdictional discovery when the trial concluded. ECF No. 318, 336.

5

On November 3, 2023, the day after SBF's criminal trial concluded with a guilty verdict, Plaintiffs moved to lift the discovery stay to allow for jurisdictional discovery and, if necessary, to amend their administrative class action complaints to assert facts gleaned from jurisdictional discovery. ECF No. 348. The next business day, Plaintiffs filed their oppositions to the MDL Defendants' responsive pleadings, including the Multinational VC Defendants' motions to dismiss under Rules 12(b)(2), 12(b)(5), and 12(b)(6). In Plaintiffs' Rule 12(b)(2) opposition, due to the ongoing discovery stay, Plaintiffs were forced to rely entirely upon publicly available information to counter the self-serving declarations that Temasek Holdings, Temasek USA, and SGCH submitted in support of their motion to dismiss for lack of personal jurisdiction.

This Court granted in part Plaintiffs' motion for jurisdictional discovery on December 18, 2023. ECF No. 422. In the ruling, the Court recognized that a plaintiff "enjoys a qualified right to jurisdictional discovery" when it timely moves for it and "the information the plaintiff [requests] would give rise to jurisdiction." *Id.* at 3. The Court further concluded that denying jurisdictional discovery would constitute an abuse of discretion given that facts going to both the merits and jurisdiction were intertwined and disputed. *Id.* The Court squarely considered and rejected assertions by Temasek Holdings, Temasek USA, and SGCH that Plaintiffs had failed to plead a *prima facie* case of personal jurisdiction and, instead, recognized that Plaintiffs had pleaded jurisdiction arising from their commission of intentional torts and participation in civil conspiracy in Florida or California. *Id.* at 4. The Court held that the "disputed facts related to Plaintiffs' theories of personal jurisdiction"—i.e., commission of intentional torts and participation in a conspiracy in Florida and/or California—"are intertwined with the merits" such that "Plaintiffs have a qualified right to jurisdictional discovery." *Id.* at 5. The Court concluded that, if Plaintiffs obtained information via the jurisdictional discovery warranting amendment to their complaints or responsive pleadings (i.e., oppositions to the 12(b)(2) motions), then Plaintiffs may move to amend or file supplemental responses to the motions. *Id.* at 5-6.

Plaintiffs served jurisdictional discovery on Temasek Holdings, Temasek USA, and SGCH four days later. The requests were met with objections mirroring arguments this Court already

6

rejected in its ruling permitting Plaintiffs to take jurisdictional discovery, and Plaintiffs were forced to file motions to compel. Temasek Holdings, Temasek USA, and SGCH opposed. Following a hearing, on January 19, 2024, Magistrate Judge Eduardo I. Sanchez issued an order grating in part the motions to compel. ECF No. 478. Judge Sanchez ordered Temasek Holdings and Temasek USA to respond to Plaintiffs' interrogatories, provide Plaintiffs with Temasek's organizational structure, produce all contracts or agreements with any FTX entity, and further ordered them to submit to Rule 30(b)(6) depositions covering issues of personal jurisdiction. *Id.* He further ordered SGCH to produce all contracts between it or any of its subsidiaries or related entities (specifically including SGCL) and FTX, FTX-related entities, or Alameda, and he ordered SGCH to submit to a Rule 30(b)(6) deposition on personal jurisdiction, including "whether Plaintiffs' allegations of civil conspiracy concerning Sino Global Capital may be imputed to [SGCH]." *Id.*

The very next day—after SGCH's baseless objection to personal jurisdiction forced Plaintiffs to oppose its Rule 12(b)(2) motion, file a motion for jurisdictional discovery and reply in support, serve jurisdictional discovery, engage in fruitless meet and confers, file a motion to compel, and give oral argument at a hearing—SGCH offered to withdraw its Rule 12(b)(2) motion in exchange for Plaintiffs' agreement to withdraw their jurisdictional discovery. Because Judge Sanchez's order entitled Plaintiffs to discovery on SGCL and SGCH's other related entities, Plaintiffs indicated that they would accept SGCH's proposal only if SGCL waived service and SGCH would provide certain information about the related entities. SGCH refused and proceeded to withdraw its Rule 12(b)(2) motion, preventing Plaintiffs from obtaining jurisdictional discovery as to Sino Global Capital.

On January 22, 2024, Temasek Holdings and Temasek USA issued supplemental responses to Plaintiffs' interrogatories and had Ms. Chan and Ms. Atherton, respectively, verify those supplements. Temasek Holdings's supplemental responses revealed that Temasek International employees Pradyumna Agrawal, Antony Lewis, Chen Sijia, Rodney Gavin Edgerton, and Jason Norman Lee had personal knowledge regarding Temasek's investment in FTX. On January 25,

7

2024, Temasek Holdings made its one jurisdictional discovery production of thirty-four documents, which included Temasek's contracts with FTX entities—some of which were based in California—and its organizational chart. Plaintiffs reviewed the production and prepared for Temasek's corporate depositions accordingly. Two business days later, on January 29, 2024, Plaintiffs took the Rule 30(b)(6) deposition of Temasek Holdings. Temasek USA's deposition proceeded on January 31, 2024.

Over the course of the depositions, it became apparent that Temasek had prepared its corporate witnesses—Ms. Chan for Temasek Holdings and Ms. Atherton for Temasek USA—to testify only as to the conclusory assertions they provided in support of Temasek's Rule 12(b)(2) motion and in a manner wholly insufficient to inform the actual facts underlying those conclusory assertions. Ms. Chan, a Temasek International employee lacking any personal knowledge related to the FTX investments, testified that the process for formulating her declaration and preparing for the deposition was as follows: Counsel drafted the declaration, which she "verified" by having internal counsel confirm with Pradyumna Agrawal in writing that its conclusory assertions were correct. Months later, in conjunction with verifying the supplemental interrogatory responses, she had a conversation with Mr. Agrawal "but only to confirm some of the information in the declaration." Ms. Atherton was similarly unprepared; she testified that to prepare for her deposition she spoke to internal and external counsel, her "tax and finance representatives," and "to be cautious" she "spoke[] with [Mr.] Agrawal to ensure that my understanding in my deposition [sic] – the statements that I made was, indeed, the same that he had."

Neither corporate representative was prepared to testify to Temasek Holdings's jurisdictional discovery production or to how, e.g., Temasek, via Artz, could have entered contracts with a California-based entity to invest in such California-based entity absent contacts with California. Nor were they prepared to testify to the due diligence Temasek undertook before and during its investment in the California- and Florida-based FTX entities, which Temasek's website is clear involved no less than the following:

8

- "review[ing] FTX's audited financial[s]"; obtaining advice from "external legal and cybersecurity specialists in key jurisdictions" with "legal and regulatory review";
- "gather[ing] qualitative feedback on [FTX] and management team based on interviews with people familiar with the company, including employees, industry participants, and other Investors";
- obtaining "legal and regulatory due diligence" from "[e]xternal legal counsel for key jurisdictions";
- "engag[ing] FTX management on addressing [its] leadership gaps in the lead up to and post-investment"; and
- "continu[ing] to monitor performance and engage management on business strategy, as well as legal, policy and regulatory matters" post investment.

Instead, they could testify only that Mr. Agrawal represented that neither he nor his team had traveled to California or Florida in conjunction with the investments. Neither Ms. Chan nor Ms. Atherton, however, had bothered to review any underlying documentation—i.e., any memos, communications, calendar entries, contracts with specialists in "key jurisdictions," interview notes, travel expense reimbursements, or FTX Advisory Board-related materials—and relied instead on Mr. Agrawal's conclusory assertion.

Nevertheless, despite Temasek Holdings's and Temasek USA's best attempt to thwart entirely Plaintiffs' ability to probe the very factual dispute that this Court ordered gave rise to jurisdictional discovery in the first place, Plaintiffs were able to glean limited information regarding Temasek's contacts with California and Florida as well as the relationship amongst the Temasek Defendants. These additional facts are included in Plaintiffs' proposed amendment.

In addition, Plaintiffs have pursued other avenues of information gathering and succeeded in obtaining certain information relevant to issues of personal jurisdiction over the MDL Defendants, including merits-intertwined issues. Specifically, immediately following the Government's dismissal of the charges against SBF to be tried at a second trial in March 2024,

9

Plaintiffs worked diligently to finalize settlement agreements with FTX insiders Caroline Ellison, Nishad Singh, and Gary Wang in which those insiders agreed to provide Plaintiffs with information regarding MDL Defendants, including Temasek, Sino Global Capital, and SoftBank. Over the course of the last couple of weeks, Plaintiffs have held initial proffer sessions with Ms. Ellison, Mr. Singh, and Mr. Wang which inform in part the Amended Administrative Class Action Complaint enclosed with this motion for leave.

### III. ARGUMENT

Under Rule 15(a), "after any responsive pleading has been filed, subsequent amendments are permitted only with the leave of the district court." *Sec. Pest Control v. Wells Fargo Bank, Nat'l Ass'n*, 535 F. Supp. 3d 1213, 1214 (M.D. Ala. 2020) (quoting *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984)). Although the decision to grant or deny leave to amend is within the court's discretion, that discretion is limited in favor of granting leave to amend. *See id.* at 1214-15 (citing *Espey*, 734 F.2d at 750). As the U.S. Supreme Court has made clear,

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." [O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307–08 (11th Cir. 1983) ("[I]n the absence of a declared or apparent reason, an outright refusal to grant leave to amend is an abuse of discretion."). The dictate that leave be freely given is intended to facilitate determination of claims on the merits. *Sec. Pest Control*, 535 F. Supp. 3d at 1214; *see also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir.2004) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *cf. Bryant v. Dupree*, 252 F.3d 1161, 1163–64 (11th Cir. 2001) (reversing district court's decision to deny leave

to amend a complaint because there was no evidence of prejudice to the defendant). Even if a party's motion for leave to amend is filed after a court-ordered deadline for the filing of all amended pleadings, the party need only demonstrate good cause why leave should be granted, at which point Rule 15's liberal-amendment standard applies. *See Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366–67 (11th Cir. 2007).

Leave to amend should be "freely given" here. This case is in its infancy. To date, this Court has maintained a discovery stay for most of the case's duration, either sua sponte or acting upon the motions of SBF and/or the Government. Yet, on December 18, 2023, this Court lifted that discovery stay for a 45-day period to permit Plaintiffs to conduct jurisdictional discovery. Although at that time this Court denied as premature Plaintiffs' blanket request to amend their administrative complaints to the extent information gained via jurisdictional discovery warranted it, *see* ECF No. 422, Plaintiffs' request is premature no more. Plaintiffs now know that their limited, formal jurisdictional discovery efforts as to Temasek, proffer sessions with certain FTX insiders, and other information-gathering (including review of SBF's trial transcripts and exhibits) generated the following information justifying the instant request for leave to amend:

- **Temasek:** Information regarding Temasek's corporate structure, employees and entities involved in the FTX investments whether directly or indirectly, and activities in Florida and California including agreements with FTX and Alameda; FTX's widespread activities in Florida (promotional, regulatory (as to LedgerX), technical (plan to build "cold wallets") and personnel (FTX US headquarters moving to Miami) and in California (trade settlements via Alameda; FTX US employees in California; and the North Dimension California-based entity (used a bridge between FTX and Alameda for deposits).

- **Sino Global Capital:** The Sino Global Defendants relied upon FTX funds to fund their own venture capital funds (FTX investing as a General Partner), and therefore the Sino Defendants relied upon investment funds traceable directly to FTX customer accounts, through Alameda. These funds were directly derived from activity in California and Florida, including: (1) the settlement of Alameda's trades by Alameda employees in California; (2) the improperly obtained regulatory approval of the Florida-based LedgerX platform to serve as FTX's derivative trading platform by Florida FTX employees, (3) multiple other FTX US employees based in California and Florida, involved with future plans for FTX such as a plan to

11

- construct "cold wallets" for FTX customers; (4) travel by FTX executives between Florida and the United States; and (5) promotional activities in Miami including seats in FTX arena for the Miami Heat.

- **SoftBank:** Certain limited facts revealed in the proffers and jurisdictional discovery pertaining to FTX and Alameda also apply to Softbank – including the information that FTX disclosed to auditors and investors that it earned interest on the line of credit to Alameda (with FTX customer funds) – which would have been accessible during due diligence. Likewise, general information gleaned regarding ties to Florida and California go towards jurisdiction over SoftBank.

For the same reasons, to the extent this Court deems the good cause standard to apply, Plaintiffs have satisfied it. At the time of Plaintiffs' court-ordered August 6, 2023, deadline to file their administrative complaints, Plaintiffs had not yet engaged in jurisdictional discovery, proffer sessions with FTX insiders, and SBF's criminal trial had not commenced such that Plaintiffs were not privy to the trial transcripts and exhibits and certain other public information that came to light after the deadline.

In addition, Plaintiffs' amendment does not suffer from "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *See Foman*, 371 U.S. at 182. Plaintiffs file this motion in pursuit of the enclosed amendment in accordance with this Court's deadline to file supplemental pleadings necessitated by the Court-ordered jurisdictional discovery, *see* ECF No. 422, and in order to shore up personal jurisdiction allegations in response to Temasek's and Sino Global Capital's personal jurisdiction objections, *see* ECF No. 267; this motion and amendment do not suffer from "undue delay, bad faith or dilatory motive." To be sure, Plaintiffs have not delayed in filing this motion for leave to amend within a month after obtaining additional information in jurisdictional discovery. Rather than declining to take action and waiting for other parties and court orders, Plaintiffs seek to amend the complaint at this point and expedite this litigation.

Further, although this Court classified Plaintiffs' initial administrative complaints as "amended" administrative complaints, *see* ECF No. 61, the filing of those administrative

complaints was necessitated by various cases' consolidation before this Court as an MDL and *not* in order to "cure deficiencies." Thus, Plaintiffs' proposed amendment does not suffer from "repeated failure to cure deficiencies by amendments previously allowed."

Plaintiffs pursue the instant amendment prior to this Court's ruling on MDL Defendants', including Multinational VC Defendants', Rule 12 motions. As such, Multinational VC Defendants would suffer little to no prejudice from the amendment. Multinational VC Defendants may complain that they may have to re-argue Rule 12 defenses taking Plaintiffs' new allegations into consideration, but that does not warrant denial of a motion to amend. To the contrary, even if this Court had already granted Multinational VC Defendants' Rule 12(b)(6) motions to dismiss, Rule 15(a)'s mandate that leave be freely given would weigh in favor of granting leave to amend. *See Thomas*, 705 F.2d at 1307 ("A grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim . . . .").

As to futility, for the reasons set forth in Plaintiffs' opposition to Defendants' motion to dismiss pursuant Rule 12(b)(6), the existing claims that Plaintiffs have included in the filed CAC all state a claim for relief. The allegations which Plaintiffs seek to add to the CAC via this motion for leave to amend (i.e. that FTX disclosed to investors, such as VCs, that FTX was earning interest from the transfer of customer funds to Alameda; that Temasek agreed to purchase tokens from Alameda; and that FTX had more extensive business dealings in Florida and California) all only strengthen Plaintiffs' existing claims. Therefore, any argument that these amendments are futile lacks merit – the Court has not yet decided the motion to dismiss and any amendments only strengthen Plaintiffs' position.

As for the new Defendants, they are subsidiaries and affiliates of the existing three institutional investors named in the previous complaint: Sino Global, Temasek, and Softbank. Temasek has agreed with FTX in previous agreements that affiliates and subsidiaries of Temasek may be bound by Temasek's actions, and the affiliates and subsidiaries of Sino Global and Softbank are owned and controlled by the corporate parents, so it is not futile to add them as defendants as to the existing claims against the related entities.

Plaintiffs also seek leave to amend to bring new claims for conversion, aiding and abetting conversion, and unjust enrichment against the Sino Global entities alone. These claims are certainly not futile. As for conversion, the proposed claim alleges that Sino Global converted FTX customer funds by accepting FTX funds as an investment into their own VC fund, and the FTX funds were derived from FTX customer funds. Likewise, as to aiding and abetting conversion, by accepting the investment funds from FTX, Sino Global aided and abetted FTX in converting customer funds. Finally, an unjust enrichment claim is not futile, given the allegations that Sino Global took the funds from FTX despite its prior due diligence regarding the separation of FTX and Alameda. The futility bar to leave for amend is not a high one, and these proposed claims clearly pass it. *See Hall v. United Ins. Co. of Am.*, 367 F.3d at 1263.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and permit them to file against the Multinational VC Defendants the proposed Amended Administrative Class Action Complaint that is attached hereto.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request that the Court hear oral argument on this Motion, and respectfully submit that thirty minutes should be sufficient for all Parties.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (a)(3)

In compliance with Local Rule 7.1(a)(3), Plaintiffs' counsel conferred with counsel for Temasek, Sino Global Capital, and SoftBank regarding whether they would oppose the relief requested herein. Counsel for Plaintiffs emailed counsel for Temasek, Sino Global, and SoftBank on February 15, 2024 regarding whether their clients would oppose the motion for leave to amend. Counsel for Temasek replied that he could not provide any meaningful response without seeing the amendment and would inform Plaintiffs whether his client opposed the requested relief after receiving this motion and proposed pleading and asked Plaintiffs to inform the Court of this fact here. After exchanging emails with counsel for Sino Global regarding the nature of the intended amendment, counsel for Sino Global informed Plaintiffs that his client opposed the requested

14

relief. Counsel for SoftBank, like counsel for Temasek, indicated that he could not provide a response without first reviewing the proposed amendment. Counsel for Plaintiffs provided a high-level summary of the proposed amendment and indicated they were available to discuss it, but Plaintiffs did not receive any further inquiries from counsel for SoftBank.

**Dated: February 16, 2024**                                  Respectfully submitted,

**By:** */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*

**By:** */s/ David Boies*
David Boies
Alexander Boies
Brooke A. Alexander
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
914-749-8200
dboies@bsfllp.com
aboies@bsfllp.com
balexander@bsfllp.com

*Co-Lead Counsel*

Joseph R. Saveri
Christopher Young
Itak K. Moradi
**JOSEPH SAVERI LAW FIRM**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
imoradi@saverilawfirm.com

*Counsel to Plaintiffs and the Putative Classes*

James R. Swanson, La. Bar No. 18455
Kerry J. Miller, La. Bar. No. 24562
Molly L. Wells, La. Bar. No. 36721
C. Hogan Paschal, La. Bar No. 38495
**FISHMAN HAYGOOD L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jswanson@fishmanhaygood.com
kmiller@fishmanhaygood.com
mwells@fishmanhaygood.com
hpaschal@fishmanhaygood.com

Robert Lieff
P.O. Drawer A
Rutherford, CA 94573
rlieff@lieff.com

*Counsel to Plaintiffs and the Putative Classes*

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed on February 16, 2024 via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam Moskowitz*
Adam M. Moskowitz