# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:
FTX Cryptocurrency Exchange Collapse Litigation

_____

This document relates to:

Promoter and Digital Creator Defendants

    *Garrison, et al. v. Bankman-Fried, et al.*,
    Case No. 22-cv-23753

    *Garrison, et al. v. Paffrath et al.*,
    Case No. 23-cv-21023

_____/

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs respectfully submit this supplemental brief in support of their opposition to Defendants Graham Stephan, Andrei Jikh, Jaspreet Singh, Brian Jung, Jeremy Lefebvre, Erika Kullberg, Creators Agency LLC, Stephen Curry, Larry David, Golden State Warriors LLC, Naomi Osaka, and Solomid Corporation's motions to dismiss the Administrative Class Action Complaint, (ECF No. 179, "CAC") for lack of personal jurisdiction (ECF Nos. 266, 268).[1]

After Defendants filed their motions, in which they argued that this Court lacks personal jurisdiction over them, Plaintiffs sought and obtained from this Court leave to conduct jurisdictional discovery. Plaintiffs proceeded with jurisdictional discovery as to Defendants Kullberg, Creators Agency, LLC, Singh, and David. Plaintiffs also employed other means to gather information, including effectuating settlements with certain FTX insiders requiring that they provide Plaintiffs with jurisdictional facts. Now, having completed jurisdictional discovery, Plaintiffs sought leave of Court to supplement their opposition to Defendant's motions to dismiss.

## ARGUMENT

Of the four Defendants who maintain personal jurisdiction challenges at this juncture, three will remain in this MDL regardless of the outcome of this motion, because they have each been sued in another action, properly transferred here, from which they ***do not*** dispute they are subject to general personal jurisdiction. Plaintiffs filed a lawsuit against Defendant Singh, a Michigan resident, in Michigan,[2] a lawsuit against Defendant Creators Agency, a Wyoming limited liability

---

[1] Defendants Stephen Curry, Solomid Corporation, Golden State Warriors LLC, and Naomi Osaka withdrew their personal jurisdiction challenges subsequent to filing their opening briefs. *See* ECF No.'s 473, 444, 443. Defendants Brian Jung, Graham Stephan, Andrei Jikh, and Jeremy Lefebvre have reached a tentative settlement, and a motion for stay as to them will be forthcoming.
[2] *See Garrison, et al v. Singh,* Case No. 2:23-11764 filed in the United States District Court, Eastern District of Michigan.

1

company, in Wyoming,[3] and a lawsuit in California[4] against Defendant David, a California resident. These actions were subsequently transferred to this MDL Court by the JPML.[5] As a result of these transfers, this Court now has the same jurisdictional basis as the transferor courts and therefore has general jurisdiction for the claims at issue in the MDL. *See* Andrew D. Bradt & D. Theodore Rave, Aggregation on Defendants' Terms: Bristol-Myers Squibb and the Federalization of Mass Tort Litigation, 59 B.C. L. REV. 1251, 1296–97 (2018) ("So long as the cases were originally filed in (or removed to) a district court that has personal jurisdiction . . . the MDL transferee court does not need an independent basis for personal jurisdiction over the temporarily transferred cases."); *see also In re FMC Corp. Pat. Litig.*, 422 F. Supp. 1163, 1165 (J.P.M.L. 1976) ("Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue. A transfer under Section 1407 is, in essence, a change of venue for pretrial purposes." (citations omitted)).

As the Court has a clear basis for asserting jurisdiction over these Defendants in this MDL, the Court need not rule on *all* asserted bases for jurisdiction. For purposes of proceeding in this MDL in adjudicating common pretrial issues, Defendants' jurisdictional arguments as to the Florida action are irrelevant. Any arguments as to the Florida action are only an issue for if and when that action is remanded to the transferor Court at the conclusion of the MDL and until then, does not need to be addressed because the underlying cases are stayed.

---

[3] *See Garrison v. Creators Agency, LLC*, Case No. 2:23-00139, filed in the United States District Court, District of Wyoming.
[4] *See Garrison v. Ohtani, et al*, Case No. 2:23-cv-05951, filed in the United States District Court, Central District of California; *see also* David Decl. ¶ 2.
[5] *See* Conditional Transfer Orders, CTO-2 (ECF No. 208) and CTO-3 (ECF No. 189).

### A. Discovery Confirms These Defendants Participated in the FTX Conspiracy.

Plaintiffs have nonetheless sufficiently alleged that personal jurisdiction over Defendants in Florida is proper. Defendants' roles as co-conspirators subject them to jurisdiction in Florida. As Plaintiffs have alleged, Defendants conspired to engage in tortious conduct, including specifically partnering with FTX and participating in the deceptive promotions of FTX and the solicitation of unregistered investments in Florida. Defendants all entered into agreements with FTX to promote FTX to investors and produced their agreements. *See e.g.*, Jaspreet Singh Deposition Transcript ("Singh Depo."), attached as **Exhibit 1** at 26:8–10 ("You had a relationship with FTX US, correct? Yes") and 30:13–17 (admitting that he did "advertising services" for FTX US pursuant to his agreement); Erika Kullberg Deposition Transcript ("Kullberg Depo"), attached as **Exhibit 2** at 33:18 –34:4 (admitting that she entered into multiple contracts with FTX) and 31:5–7 ("Did you create any content for FTX as a Creator? Yes"); *see also* Notice of Filing Sealed Exhibit to Declaration of Larry David in Support of Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 165, at Exhibit A[6].

Furthermore, Creators Agency told Defendants to refer to the videos that other Defendants made when creating their own videos. *See* **Exhibit 3** (linking to Tom Brady Commercials); and **Exhibit 4** (telling Graham Stephan, Andrei Jikh, and Jeremy Lefebvre "[FTX personnel] were very happy with Graham's integration already, so similar talking points as what Graham did are great"); **Exhibit 5** (telling Graham Stephan, Andrei Jikh, and Jeremy Lefebvre "on your upcoming integrations, FTX would like you to show your screen/phone using the FTX App. Here's an example of what Minority Mindset did for their integration that performed exceptionally well").

---

[6] This was filed in the Florida action, *Garrison v. Bankman-Fried et al*, Case No. 1:22-ev-23753-KMM.

**B. Discovery Confirms Acts in Furtherance of the Conspiracy Occurred in Florida.**

Defendants have not denied—nor could they—that the FTX scheme was orchestrated and based in Florida, or that FTX was successful in perpetrating its fraudulent scheme on Plaintiffs and Class Members in Florida, due to key events that took place in and emanated from here in Miami, Florida. *See* CAC ¶ 13. Miami not only eventually became FTX's official headquarters but was their de facto domestic headquarters for years before FTX's eventual collapse. *See* Declaration of Nishad Singh ("Singh Dec.") attached as **Exhibit 6,** at ¶ 17 ("In September 2022, SBF announced to the company over video conference that the Miami office would become the official FTX US headquarters, and that it would close its other offices in favor of the Miami location. This selection of Miami occurred for many reasons, including a desire to consolidate operations in the United States, FTX US employees' preference for Miami for such consolidation, Miami's close proximity to the Bahamas and ease of travel between the two locales, Mr. Dexter's stature within FTX US, SBF's relationship with Miami mayor Francis Suarez, Miami's status as an informal "crypto hub," and the rebranding of the Miami Heat arena as FTX Arena.").

At all relevant times during Defendants' collaborations with FTX, FTX operations were centered in and around Miami. *See id.* ("at least twenty-one employees not already located in Miami indicated they would move to Miami" and "[o]thers indicated they would spend the majority of their time in Miami." "FTX US selected a new, bigger office space in Miami to expand into as part of the relocation of its official headquarters."); *see also id.* at ¶ 18 ("Even though FTX Trading was not based in the United States, at least one of SBF and Ramnik Arora, FTX Trading's head of product, traveled to the United States, on average, roughly every other week to meet with business partners, including investors. I specifically recall that these trips often took them to, at a minimum, Washington, D.C., New York, and Miami.").

Indeed, the Miami office was run by Mr. Avinash Dabir, who was based in Miami and eventually became FTX's Vice President of Business Development. *Id*. Mr. Dabir operated from the Miami office and was in charge of handling FTX's partnerships. *See* Singh Dec. at ¶ 13 ("From 2021 until FTX's collapse, Mr. Dabir executed some of FTX's various publicity campaigns from a Miami office."). In fact, Mr. Dabir worked with other FTX and FTX US employees who were based out of Miami. *See id.; see also id*. at ¶ 16. These promotional campaigns included FTX's many celebrity partnerships, as well as its partnership with the Miami Heat and correlative purchase of the naming rights to the Miami Heat stadium, which became FTX Arena. *Id*.

Indeed, Defendants' contracts with FTX clearly show the relevant ties to Florida. Defendants' contracts define the contract territory as nationwide (even, worldwide), without any restrictions to Florida. And, pursuant to Defendant David's agreement with FTX, the focus of his FTX partnership was to help promote FTX to a *national* consumer base—meaning including Florida—by, e.g., participating in a Super Bowl commercial for FTX that would be viewed by millions of people around the world. Further, Mr. David collaborated extensively with Mr. Dabir, who was based in Miami, for the award-winning Super Bowl FTX commercial that included Mr. David. *See* CAC ¶¶ 17–18, 734. Moreover, at no time during their collaboration with FTX did Defendants *restrict* their content from reaching Florida consumers. *See e.g.*, Singh Depo. at 73:1–3 ("Did FTX US or Creators Agency ever ask you to restrict your content from reaching individuals in Florida? No, ma'am."); *see also id*. at 73:4–7.

In addition, as a component of this conspiracy, FTX provided Defendants with "talking points" that Defendants were to use when generating content and promotions for FTX, and required that they sign off on content and promotions before Defendants published them throughout the life of their contractual relationships. *See e.g.,* Kullberg Depo. at 151:17–24 ("Are

5

you aware of any FTX US talking points that were provided to either you as a Creator or Creators Agency for the Creators to use when they were generating content for FTX? Yes. FTX provided talking points."). These "talking points" included specific references to Miami, such as the endorsement of the Miami Heat Arena. They also included indirect references to Miami. Defendants were instructed in the talking point sheets and through email to emphasize the FTX App, formerly Blockfolio, which was based in Miami. Furthermore, the talking points also included FTX's partnership with Mercedes F1, particularly their joint NFT collection, which was launched in connection with FTX Off the Grid, a multi-day extravaganza in Miami which coincided with the first-ever Miami Grand Prix. *See* **Exhibit 7**; *see generally* CAC ¶¶ 286–306, *Garrison v. Mercedes-Benz Grand Prix Limited*, No. 23-cv-24480 (S.D. Fla. Nov. 27, 2023) (explaining FTX Off-the-Grid event and NFT promotions).

Given the above, Defendants cannot deny their associations with FTX nor the fact that they conspired with FTX in developing the publicity that would help make FTX appear credible and legitimate to their fanbase and their followers who were, unfortunately, unsuspecting investors whom Defendants knew would believe their recommendations. When FTX failed, *in Florida*, so did the Florida investors' investments.

### C. Defendants' Tortious Conduct Caused Injury in Florida.

Defendants' tortious conduct also separately subjects them to jurisdiction in Florida. Under Florida's long arm statute, the proper analysis is whether Defendants' tortious acts *caused injury* in Florida. *See Louis Vuitton Malleties, S.A. v. Mosseri*, 736 F.3d 1339, 1354 (11th Cir. 2013) ("[W]e conclude that under Florida law where Mosseri created the websites and posted the alleged infringing material does not matter. For purposes of § 48.193(1)(a)(2), the issue is whether Mosseri's tortious acts caused injury in Florida."). An out-of-state defendant's "telephonic,

electronic, or written communications into Florida" suffice to trigger jurisdiction. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,* 421 F.3d 1162, 1168 (11th Cir. 2005). Defendants are subject to Florida jurisdiction because they committed a tortious act within Florida by knowingly and purposely promoting FTX's products and services to Florida residents who purchased those products and services based on Defendants' promotional activities. *See Licciardo v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (holding that, under Florida law, a nonresident defendant commits "a tortious act within [Florida]" when he commits an act outside the state that causes injury within Florida).

Defendants cannot dispute that their promotional activity impacted Florida consumers. As Plaintiffs have alleged, Miami was the center hub for FTX and Defendants' FTX-related promotions were never restricted so as to exclude Florida investors and consumers. Indeed, as Plaintiffs allege, not only were Defendants' promotions accessible in Florida but they were in fact accessed by viewers in Florida.

And to the extent Defendants attempt any arguments to the contrary, they should not be permitted to do so because this relevant information is solely in Defendants' possession and Defendants have prevented Plaintiffs from obtaining it. As influencers and content creators with *millions* of followers, Defendants know—and/or should know—that social media channels, such as Youtube and Instagram, have analytic features which provide information to the owners about the performance of their channel and which include, for example, the specific region or location of their viewers, including which state viewers are located.[7] Indeed, Defendant Kullberg admitted that Youtube's analytics information provides users with the geographical information for the

---

[7] *See e.g.*, https://support.google.com/youtube/answer/9717005?hl=en (explaining how users can access Youtube's analytics reports to view geographical statistics of their viewers).

viewers for certain videos. *See* Kullberg Depo. at 41:18–22 ("Does Youtube provide you analytics on the geography of where the videos are viewed from? For long form videos, it does provide geography."). Mr. Singh did as well. *See* Singh Depo. at 61:11–14 ("Are you aware that YouTube channels have certain analytic features which provide information to the owner about the performance of the channel? Yeah."). And although Kullberg claimed to be unaware of the fact that YouTube analytics will provide content creators with the geographical information of viewers as specifically as the city and state from where they are accessing and viewing the videos, Plaintiffs have put forth evidence in the record demonstrating this to be the case. *See* Exhibit 1 to Kullberg Depo., attached as **Exhibit 8.**

Yet, Defendants failed to provide Plaintiffs with critical information as to Florida viewers when questioned at their depositions. In response to questions such as "what percentage of the web traffic on [his] website comes from the State of Florida," Defendant Singh said: "I have zero idea." *See* Singh Depo. at 76:16–18. Mr. Singh also claimed he did not know how many of his subscribers were located in Florida. *See id.* at 61:2–4. Plaintiffs were likewise unsuccessful in obtaining this information for Kullberg and Creators Agency.

Even more damaging is that Plaintiffs are ***now unable*** to obtain this critical information even if they wanted to because, in the wake of the FTX collapse, **Defendants have purposefully deleted or rendered unavailable to the public much of their FTX promotional content**. In Ms. Kullberg's case, she testified at her deposition that around the time of the FTX bankruptcy, she removed the FTX content she had previously posted. *See* Kullberg Depo. at 39:4–15; *see also id.* at 47:11–14. Similarly, Plaintiffs are unable to obtain this information as to Mr. Singh's FTX promotions because Mr. Singh testified that he was "not sure" whether he had removed, hidden, deleted, or otherwise disabled the videos he had posted in 2022 pursuant to his agreement with

8

FTX. *See* Singh Depo. at 77:9–13; *see also id.* 77:19–21 ("Have you ever made any advertisements that you made for FTX US in 2022 private? I don't know.").

Despite their efforts, Plaintiffs were never provided with this information from Defendants Singh, Kullberg, or Creators Agency. *See* Kullberg Depo. at 190–192; Singh Depo. at 72:16–25.[8] Accordingly, to the extent that the Court has any doubt as to whether Florida consumers accessed and viewed Defendants' FTX promotions, it should find that this evidence, had it been produced by Defendants or made available to Plaintiffs, would have shown that the relevant FTX content were in fact accessed by viewers in Florida. *See Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986) ("The 'adverse inference' rule provides that 'when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.'"); *see also Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1282 (M.D. Fla. 2009) ("Whether the spoliated evidence would have actually been detrimental to the case is irrelevant at this point, because no one, other than perhaps the Defendants themselves, can know for certain.").

In sum, because Defendants' FTX promotions were accessible in Florida and were indeed accessed in Florida, they are subject to jurisdiction here. *See Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 328236, at *4 (S.D. Fla. Jan. 23, 2015) (finding jurisdiction under the long arm statute based on the fact "that the website was both accessible, and accessed, in Florida" even though the posting "contained minimal references to the state of Florida."); *see also Internet Sols. Corp. v. Marshall*, 611 F.3d 1368, 1370 (11th Cir. 2010) ("Because the Florida Supreme Court concluded that Marshall committed a tortious act in Florida by posting allegedly defamatory

---

[8] Nor were Plaintiffs provided with the reason as to why these videos were deleted as Defendants' counsel gave instructions to not respond to these questions. *See e.g.*, Kullberg Depo. at 47:11–19 ("You have already acknowledged that you removed content around the time of bankruptcy. The question is why? Objection, same objection. Instruct the witness not to answer. Why she did or did not remove something is not relevant to jurisdiction here.").

9

material about ISC that was accessible in Florida when the material was then accessed and thus published in Florida, she is accordingly subject to the Florida long-arm statute.").

## CONCLUSION

For the reasons stated herein, Plaintiffs believe jurisdiction is sufficiently pled and Plaintiffs request that the Court deny Defendants' motions to dismiss for lack of personal jurisdiction. However, Plaintiffs reserve our right to seek leave to amend the complaint at a later date to include these and other facts learned in jurisdictional discovery. For the sake of efficiency, Plaintiffs have not done so at this juncture.

Dated: February 16, 2024                    Respectfully submitted,

| **Plaintiffs' Co-Lead Counsel** | |
|---|---|
| By: /s/ *Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: /s/ *David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| **Plaintiffs' Promoter Committee Members** | |
| Barbara C. Lewis<br>Florida Bar No. 118114<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>service@moskowitz-law.com | Desiree Fernandez<br>Florida Bar No. 119518<br>**MARK MIGDAL & HAYDEN**<br>Brickell City Tower<br>80 SW 8th Street, Suite 1999<br>Miami, FL 33130<br>desiree@markmigdal.com<br>eservice@markmigdal.com |

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the forgoing was filed on February 17, 2024, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam Moskowitz*
Adam Moskowitz