# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**
**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

*Garrison, et al. v. Paffrath et al.*,
Case No. 23-cv-21023
_____/


**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF**
**PLAINTIFFS' OPPOSITION TO DEFENDANT ERIKA KULLBERG'S MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(5) AND, IN THE**
**ALTERNATIVE, CROSS-MOTION TO SERVE DEFENDANT KULLBERG THROUGH**
<u>**ALTERNATE MEANS PURSUANT TO FRCP 4(f)(3)**</u>

Plaintiffs submit this memorandum in opposition to Ms. Kullberg's Rule 12(b)(5) Motion to Dismiss (the "Motion"). ECF No. 263.[1] As outlined herein, further discovery reinforces that service was proper.

Although she failed to disclose it for nearly a year since specially-appearing in and participating in this action, Ms. Kullberg—a lawyer barred in the State of California—is a resident of Dubai, and was at the time of the April 6, 2023 service at issue here. She refused to respond to any jurisdictional discovery requests seeking to ascertain where she resided on the original date of service (April 6, 2023), even though Magistrate Judge Sanchez clearly ordered that Plaintiffs were allowed to seek information from Ms. Kullberg on "where she lived on that date." *See* January 17, 2024 Discovery Hearing Transcript, attached as **Exhibit 1.** Because Ms. Kullberg is and was a nonresident and owns and operates many different American companies (like Creators Agency LLC, incorporated in Wyoming), Plaintiffs finally learned that she has authorized her sister, Eileen Shannon, to receive all of her domestic U.S. mail at the address where Ms. Shannon resides. *See* Erika Kullberg Deposition Transcript Excerpts ("Kullberg Depo."), attached as **Exhibit 2** at 83:19–23 ("You said before that you received mail at your sister's address because you did not live in the United States; right? Yes"); *see also id.* at 84:7–8 ("I had mail sent to my sister's address"). For this reason, any investigation into Ms. Kullberg's residences in the United States resulted in her name being attached to her sister's residence.

After Plaintiffs served Ms. Kullberg at what Plaintiffs now know was her sister's New York residence on April 6, 2023, Ms. Kullberg "specially appeared" in this action to argue that service was improper. At no point did she reveal that it was because her sister was served, or that her sister was not authorized as Kullberg's domestic agent for purposes of receiving mail and

---

[1] Plaintiffs incorporate by reference their responses to ECF Nos. 265, 266, 268, and 271.

service of process. Instead, Ms. Kullberg obtained a declaration from her sister's college roommate, Arzu Malik, to give the appearance that Ms. Kullberg had *zero* connection to the New York address to which process was served. She also had Ms. Malik produce a declaration claiming that Plaintiffs' process server had somehow circumvented security at the building and appeared outside her door, leaving the documents taped to the door instead of effecting service. *See* Declaration of Arzu Malik, attached as Exhibit A to the Motion (ECF No. 263-1). Ms. Kullberg produced a voice memo that she sent to Ms. Malik a month after she was served with this lawsuit, explaining that she would be "looped into" these proceedings unless Ms. Malik could prove Plaintiffs' process server "lied," claiming that she could not be required to participate in this lawsuit unless it was shown that she was "physically served papers."[2]

Plaintiffs' process server, however, not only produced an affidavit of service explaining that he left the papers with the front desk when he was refused entry into the building to effect service, in accordance with New York law (*see* Declaration of Adam Moskowitz in Support of Plaintiffs' Opposition to the Motion, ECF No. 367-1, at Exhibit 4), he even returned to the building a few weeks ago to confirm that he left the papers with an authorized doorman and to provide additional picture evidence of the building entry, showing that he did not (and could not) access the building without keycard access or the doorman letting him in. *See* Declaration of Musab Nassar, attached as **Exhibit 3**. While neither Plaintiffs nor their process server can explain why Ms. Malik has a picture "representing how the papers were left" on her door, the irrefutable evidence is that Plaintiffs' process server served the lawsuit papers at 40 Waterside Plaza in accordance with New York Law.

---

[2] *See* Audio File, available at https://www.dropbox.com/scl/fi/6d2l52b2bmhepnwvzzvoj/Erika-to-Arzu.mp3?rlkey=tva82bd0o3n8gu9flbagqs5zn&e=1&dl=0.

But Ms. Kullberg maintained her charade all the way until a few weeks ago, when Plaintiffs found and subpoenaed Ms. Malik for deposition. Ms. Malik testified that she and Ms. Shannon were roommates while they attended dental school in New York, and that Ms. Shannon immediately contacted Ms. Kullberg about this lawsuit once she was served with process at her apartment. After that point, Ms. Kullberg has worked to create a false narrative to give the appearance that her due process rights were somehow violated, while the evidence illustrates that the truth is closer to Ms. Kullberg's attempted perpetration of a fraud upon this Court in order to attempt to avoid answering Plaintiffs' claims on their merits. Ethical and professional implications aside, Plaintiffs simply seek confirmation that Ms. Kullberg was, in fact, properly served with process on April 6, 2023.

As Plaintiffs' opposition to Ms. Kullberg's motion details, service on Ms. Kullberg was proper. "A process server's return of service on a defendant, which is regular on its face, is presumed to be valid absent clear and convincing evidence presented to the contrary." *Happy Tax Franchising, LLC v. Hill*, No. 19-CV-24539-FAM, 2022 WL 6744545, at \*3 (S.D. Fla. July 22, 2022); *see also Telf Corp. v. Gomez*, 671 So. 2d 818, 818 (Fla. 3d DCA 1996) ("It has well been established that a process server's return of service on a defendant which is regular on its face is presumed to be valid absent clear and convincing evidence presented to the contrary."). It is insufficient for Ms. Kullberg to "impeach the validity of the summons with a simple denial of service"; she must instead "present 'clear and convincing evidence' to corroborate h[er] denial." *Id*. To meet this standard, "the witnesses to a fact [must] be credible" and "the testimony must be clear, direct and weighty." *Lazo v. Bill Swad Leasing Co.*, 548 So. 2d 1194, 1195 (Fla. 4th DCA 1989). Ms. Kullberg has not provided evidence sufficient to pass this threshold.

For example, while Ms. Kullberg claims in her declaration that no one "residing at this address" was authorized to accept the papers on her behalf (*see* Kullberg Declaration, attached as Exhibit B to the Motion, ECF No. 263-2, at ¶ 4**),** at her deposition, Ms. Kullberg testified that her sister, who resided at the Waterside Plaza address at the time of the disputed service, has often received mail for Ms. Kullberg, including *at the Waterside Plaza location*, because Ms. Kullberg resided abroad and had no address of her own in the United States. *See* Kullberg Depo. at 83:19–23 ("You said before that you received mail at your sister's address because you did not live in the United States; right? Yes"); 84:7–8 ("I had mail sent to my sister's address"); and 102:6–9 ("So why did you use that address? I used that address because I don't have an address in the US."). In fact, Ms. Kullberg admitted that she often had her mail "sent to any address that [her] sister lived at" in the past four years. *See id*. at 84:20–23. And Ms. Kullberg has even used this address for important matters related to her company, co-defendant Creators Agency LLC, including listing this address on the articles of incorporation when she created Creators Agency LLC. *See* Kullberg Depo. at Exhibit 4, attached as **Exhibit 4.**

More importantly, the Court should deny Defendant's motion because the current service was certainly sufficient to provide Ms. Kullberg with notice. "The primary function of Rule 4 is to provide the mechanism for bringing notice of the commencement of an action to the defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." §1063 Subject Matter Jurisdiction, Venue, Personal Jurisdiction, and Service of Process Distinguished, 4 Fed. Prac. & Proc. Civ. § 1063 (4th ed.). "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *F.T.C. v. Pecon Software Ltd.*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) (finding that service by email "was reasonably calculated to apprise defendants of the pendency of

this action"). Ms. Kullberg testified that she "has seen E-mails about the lawsuit" by receiving the emails sent from Plaintiffs' counsel from as early as March 2023. *See, e.g.,* Kullberg Depo. at 69:8–15.

Courts have also allowed for service to be effected on a defendant by delivering the summons and complaint to a relative of the defendant. *See S.E.C. v. Nnebe*, No. 01 CIV. 5247(KMW)KNF, 2003 WL 402377, at *2 (S.D.N.Y. Feb. 21, 2003) (finding that serving the summons and amended complaint to relatives of the defendant was appropriate); *Leab v. Streit*, 584 F. Supp. 748, 763 (S.D.N.Y. 1984) (permitting service by delivery of the summons and complaint to the defendants' parents and grandmother); *Deason v. Deason*, 343 N.Y.S.2d 276 (Sup. Ct. Albany 1973) (finding that "service of the summons by mailing to the addresses of a defendant's relatives satisfies the demands of procedural due process ... where a plaintiff has demonstrated that he or she has exhausted all reasonable possibilities of serving the summons personally"). Not only does Ms. Kullberg regularly receive mail at her sister's addresses, but Ms. Kullberg testified that she became aware of the April 6, 2023 service at the Waterside Plaza location immediately after it occurred through her sister's notifications. Further, as evidenced here, Ms. Kullberg has carefully guarded her whereabouts. Without a specific address, even challenging and lengthy processes like Hague service cannot be utilized.

In short, the reality of this case is that Ms. Kullberg has been served and her Due Process rights have been more than satisfied such that she should be required to fully participate in her defense of Plaintiffs' claims against her in these proceedings.

Nonetheless, should the Court find that Plaintiffs need to effect service again, Plaintiffs request that the Court allow them to serve Ms. Kullberg through 4(f)(3) by serving her via her personal email, her present counsel's email, and/or by serving her sister, Ms. Shannon. "When

traditional methods of service prove 'impracticable,' service may be made 'In such manner as the court, upon motion without notice, directs.'" *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 365 (E.D.N.Y. 2016). In *Ferrarese*, the Court granted the plaintiffs' request to serve the defendant by alternative means after unsuccessful attempts to locate the defendant despite multiple efforts such as various computer database searches, speaking with the defendant's sister, and hiring a private investigator to locate the defendant. *Id*. at *366. Just as in *Ferrarese*, Plaintiffs have been unable to locate Ms. Kullberg despite multiple efforts. *See* Declaration of Adam Moskowitz, at ¶¶ 2–6. Under these circumstances, the traditional methods of service for Ms. Kullberg are "impracticable" given that Ms. Kullberg "is taking active measures to avoid being located and to evade service." *Id.* Alternate service is particularly appropriate when the defendant lives abroad, as Ms. Kullberg, who currently resides in Dubai with her husband. *See* Kullberg Depo. at 133:9–12; *see also* YouTube Link[3] (announcing Ms. Kullberg's move to Dubai); Erik Kullberg's LinkedIn[4].

In deciding the appropriate method for alternate service, "the Court must ensure that the alternate method complies with 'constitutional due process' by being 'reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Ferrarese*, 164 F. Supp. 3d at 366. Here, serving Ms. Kullberg via the e-mail addresses identified by Plaintiffs and used by Plaintiffs to initially contact Ms. Kullberg would no doubt provide Ms. Kullberg with notification of the lawsuit. *See F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *5; *see also Philip Morris USA Inc. v. Veles Ltd.*, No. 06 CV 2988 GBD, 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) *("Defendants' objections about theoretical reliability of email service are unpersuasive in this case, as plaintiff had amply

---

[3] Available at https://youtu.be/jkuZqcGN6kM.
[4] Available at https://www.linkedin.com/in/eric-kullberg-315b633a/?originalSubdomain=ae.

demonstrated the high likelihood that defendants would receive and respond to email communications, and defendants themselves do not dispute receiving email service in this case."). As does serving Ms. Kullberg by serving her counsel at his e-mail address. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1013, 1015-17 (9th Cir. 2002) (affirming alternative service on defendant's counsel because defendant consulted with counsel regarding the complaint and "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)" when reasonably calculated to apprise defendant of action's pendency) (footnotes omitted); *Brookshire Bros. v. Chiquita Brands Int'l*, Inc., 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (denying motion to quash service of process because court's Rule 4(f)(3) authorization of service on foreign defendant's local counsel afforded defendant "reasonable time to make an appearance," affording the foreign defendant more time defend than" had service been perfected pursuant to the Hague Convention under Rule 4(f)(1)).

Furthermore, serving Ms. Kullberg by serving her sister at her address would likewise satisfy "the demands of procedural due process" (*Deason*, 343 N.Y.S.2d at 276) because, as detailed above, not only does Ms. Kullberg's sister often receive mail on behalf of and for Ms. Kullberg, but it was her sister who immediately notified Ms. Kullberg of the service attempt on April 6, 2023 at the Waterside Plaza address. Thus, it is "reasonable to conclude that serving papers on defendant and on defendant's sister at this location will likely reach the defendant and give the defendant notice of the action." *Ferrarese*, 164 F. Supp. 3d at 368.

For the foregoing reasons, Plaintiffs ask this Court to deny Defendant's motion to dismiss, or alternatively, grant Plaintiffs' request to serve Kullberg through 4(f)(3) by serving her via her personal email, through her counsel, and/or by serving her sister, Eileen Shannon, and grant Plaintiffs such other relief as the Court deems just and proper.

Dated: February 16, 2024                    Respectfully submitted,

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: /s/ *Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: /s/ *David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| Plaintiffs' Promoter Committee Members | |
| Barbara C. Lewis<br>Florida Bar No. 118114<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>service@moskowitz-law.com | Desiree Fernandez<br>Florida Bar No. 119518<br>**MARK MIGDAL & HAYDEN**<br>Brickell City Tower<br>80 SW 8th Street, Suite 1999<br>Miami, FL 33130<br>desiree@markmigdal.com<br>eservice@markmigdal.com |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 16, 2024, a true and correct copy of the foregoing

was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true

and correct copy to be served on all counsel of record.

/s/ *Adam M. Moskowitz*
Adam M. Moskowitz

# Exhibit 1

1
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
2
CASE NO. 23-MD-03076-KMM
3

4    IN RE FTX CRYPTOCURRENCY
     EXCHANGE COLLAPSE LITIGATION,
5                                    Miami, Florida

6                                    January 17, 2024

7                                    Pages 1 - 84

8    ------------------------------------------------------------

9                           DISCOVERY HEARING
                  TRANSCRIBED FROM DIGITAL AUDIO RECORDING
10               BEFORE THE HONORABLE EDUARDO I. SANCHEZ
                     UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     FOR THE PLAINTIFF(S):  ADAM M. MOSKOWITZ, ESQ.
13                          JOSEPH M. KAYE, ESQ.
                            THE MOSKOWITZ LAW FIRM
14                          P.O. Box 653409
                            Miami, FL 33175
15                          305-740-1423
                            adam@moskowitz-law.com
16                          joseph@moskowitz-law.com

17

18   FOR THE PLAINTIFF(S):  TYLER E. ULRICH, ESQ.
                            STEPHEN N. ZACK, ESQ.
19                          BOIES SCHILLER AND FLEXNER, LLP
                            100 SE 2nd Street
20                          Miami, FL 33131
                            305-539-8400
21                          tulrich@bsfllp.com
                            szack@bsfllp.com
22

23

24

25

```
1    APPEARANCES (CONT'D)

2

3    FOR THE PLAINTIFF(S):   DAVID BOIES, ESQ.
                             BOIES SCHILLER FLEXNER, LLP
                             333 Main Street
4                            Armonk, NY 10504
                             914-749-8200
5                            dboies@bsfllp.com
                             (by phone)
6

7

8    FOR THE DEFENDANT(S):   ZACHARY A. LIPSHULTZ, ESQ.
     Larry David             COLSON HICKS EIDSON
                             255 Alhambra Circle
9                            Coral Gables, FL 33134
                             305-476-7400
10                           zach@colson.com

11

12   FOR THE DEFENDANT(S):   JOSE G. SEPULVEDA, ESQ.
     Kullberg, Jung          JAY B. SHAPIRO, ESQ.
13   Creators & Altimeter    STEARNS WEAVER MILLER
                             150 West Flagler Street
14                           Miami, FL 33130
                             305-789-3200
15                           jsepulveda@stearnsweaver.com
                             jshapiro@stearnsweaver.com
16

17

18   FOR THE DEFENDANT(S):   LARA SAMET BUCHWALD, ESQ.
     Deltec & Chalopin       ROSHAAN WASIM, ESQ.
                             DAVIS POLK & WARDWELL, LLP
19                           450 Lexington Avenue
                             New York, NY 10017
20                           212-450-4351
                             lara.buchwald@davispolk.com
21                           roshaan.wasim@davispolk.com

22

23                           JOSEPH B. ISENBERG, ESQ.
                             VENABLE, LLP
                             100 Southeast Second Street
24                           Miami, FL 33131
                             305-349-2396
25                           jbisenberg@venable.com
```

```
 1    APPEARANCES (CONT'D)

 2

 3    FOR THE DEFENDANT(S):   MARISA R. DOROUGH, ESQ.
      Farmington Bank          BAKER DONELSON
 4                             200 South Orange Avenue
                               Orlando, FL 32801
 5                             470-367-5406
                               mdorough@bakerdonelson.com
 6

 7

 8    FOR THE DEFENDANT(S):   NATHAN M. BULL, ESQ.
      Stephen Curry           MCDERMOTT WILL & EMERY, LLP
 9                             333 SE 2nd Ave
                               Miami, FL 33131
10                             305-358-3500
                               nbull@mwe.com
11

12                            ELLIE HOURIZADEH, ESQ.
                              MCDERMOTT WILL & EMERY, LLP
13                             2049 Century Park East
                               Los Angeles, CA 90067
14                             310-788-4125
                               ehourizadeh@mwe.com
15

16    FOR THE DEFENDANT(S):   VANI UPADHYAYA, ESQ.
      Sino Global Capital      MELISSA MADRIGAL, ESQ.
17    Holdings, LLC            MORRISON COHEN, LLP
                               909 Third Avenue
18                             New York, NY 10022
                               212-735-8747
19                             vupadhyaya@morrisoncohen.com
                               mmadrigal@morrisoncohen.com
20

21

22    FOR THE DEFENDANT(S):   ADAM S. FELS, ESQ.
      Temasek                  FRIDMAN FELS & SOTO, PLLC
23                             150 Alhambra Circle
                               Coral Gables, FL 33134
24                             786-338-8272
                               afels@ffslawfirm.com
25
```

```
 1    APPEARANCES (CONT'D)

 2

 3    FOR THE DEFENDANT(S):   THOMAS K. SCHULTE, ESQ.
      Armanino, LLP           HUNTON ANDREWS KURTH, LLP
 4                            333 SE 2nd Avenue
                              Miami, FL 33131
 5                            305-810-2500
                              tschulte@huntonak.com
 6

 7                            ANDREW J. EHRLICH, ESQ.
                              PAUL WEISS RIFKIND WHARTON & GARRISON
 8                            1285 Avenue of the Americas
                              New York, NY 10019
 9                            212-373-3166
                              aehrlich@paulweiss.com
10

11
      FOR THE DEFENDANT(S):   MICHAEL O. CUMMINGS, ESQ.
12    Jaspreet Singh          CUMMINGS MCCLOREY DAVIS & ACHO, PLC
                              1185 Avenue of the Americas
13                            New York, NY 10036
                              212-547-8810
14                            mcummings@cmda-law.com
                              (by phone)
15

16                            DESIRÉE E. FERNÁNDEZ, ESQ.
                              MARK MIGDAL & HAYDEN
17                            80 SW 8th Street
                              Miami, FL 33130
18                            305-374-0440
                              desiree@markmigdal.com
19

20

21    TRANSCRIBED BY:         Joanne Mancari, RPR, CRR, CSR
                              Court Reporter
22                            jemancari@gmail.com

23

24

25
```

```
 1    Thereupon,

 2    the following proceedings were held:

 3              THE DEPUTY CLERK:  Calling case In Re FTX

 4    Cryptocurrency Exchange Collapse Litigation, case No. 23 3076,

 5    MD, Moore.

 6              Counsel, please state your appearance for the record,

 7    starting with the plaintiff.

 8              MR. MOSKOWITZ:  Good morning, your Honor.  Adam

 9    Moskowitz and Joey Kaye, for The Moskowitz Law Firm.  We are

10    colead counsel with the Boies Schiller firm, and here we have

11    Steve Zack, Tyler Ulrich, and Mr. Boies is on the phone.

12              THE COURT:  OK.  Good afternoon.

13              MR. SEPULVEDA:  Good afternoon, your Honor.  Jose

14    Sepulveda, from Stearns Weaver Miller, on behalf of defendants

15    Erika Kullberg, Brian Jung, and Creators Agency.

16              THE COURT:  Good afternoon.

17              MR. SHAPIRO:  Good afternoon, your Honor.  Jay

18    Shapiro, also from the Stearns Weaver law firm.  I am here on

19    behalf of Altimeter Capital.  Altimeter doesn't have any dog in

20    any of the fights here in front of you today, but I am just

21    here to observe.

22              THE COURT:  OK.

23              MS. BUCHWALD:  Your Honor, Lara Samet Buchwald, of

24    Davis Polk & Wardwell, on behalf of Deltec and Jean Chalopin.

25    With me is Roshaan Wasim and Joseph Isenberg.
```

```
1           THE COURT:  Very well.  Good afternoon.

2           MS. DOROUGH:  Marisa Dorough, of Baker Donelson, here

3  on behalf of defendant Farmington State Bank.  We also

4  (inaudible).

5           MR. BULL:  Good afternoon.  Nathan Bull and my

6  colleague Ellie Hourizadeh.  We are from the firm McDermott

7  Will & Emery, on behalf of defendant Stephen Curry, and we are

8  here to observe.

9           MR. LIPSHULTZ:  Good afternoon, your Honor.  Zach

10  Lipshultz, of the law firm Colson Hicks Eidson, and I'm here on

11  behalf of defendant Larry David.

12           I don't anticipate speaking today because the

13  discovery request was withdrawn as to my client.

14           MS. UPADHYAYA:  Good afternoon, your Honor.  Vani

15  Upadhyaya, from Morrison Cohen.

16           THE COURT:  I'm sorry.  I can't hear you.

17           MS. UPADHYAYA:  Good afternoon.  Vani Upadhyaya, of

18  Morrison Cohen.  I'm here with Melissa Madrigal.  We represent

19  Sino Global Capital Holdings, LLC.

20           THE COURT:  OK.  Is there anyone else here making an

21  appearance today?

22           MR. FELS:  Yes, your Honor.

23           THE COURT:  OK.

24           MR. FELS:  Adam Fels, Fridman Fels & Soto.  With me

25  here is Andrew Ehrlich, from the Paul Weiss law firm.  We
```

```
 1   represent the Temasek parties.

 2              MR. SCHULTE:  Good afternoon, your Honor.  Tom

 3   Schulte, of Hunton Andrews Kurth.  I'm here on behalf of

 4   Armanino, and we have no motions pending.

 5              THE COURT:  Anyone else?  OK.

 6              MS. FERNANDEZ:  Desiree Fernandez, Mark Migdal &

 7   Hayden, cocounsel for the plaintiffs.

 8              THE COURT:  I'm sorry?

 9              MS. FERNANDEZ:  Cocounsel for the plaintiffs, your

10   Honor.

11              THE COURT:  OK.  Thank you.

12              All right.  Full complement of folks here today.

13              We have got, I think it is a little over half a dozen

14   motions to address today.

15              I understand on the plaintiffs' side.  Who is here on

16   the defendants' side raising a motion?

17              Mr. Sepulveda, I know you have your group.

18              MS. BUCHWALD:  I'm here on behalf of Deltec and

19   Mr. Chalopin.

20              THE COURT:  OK.  Who else?  Mr. Fels.  OK.  Anyone

21   else?

22              MS. UPADHYAYA:  On behalf of Sino.

23              THE COURT:  On behalf of Sino.  OK.

24              All right.  Well, Mr. Moskowitz, let's start with you

25   because these are primarily your motions to compel, although
```

1    there are some motions for protective order and to quash.

2              Give me a moment.

3              MR. MOSKOWITZ:  Thank you, your Honor.

4              THE COURT:  Let me start first with where we are and

5    is there anything that has developed since these filings.

6              MR. MOSKOWITZ:  I can give you a quick one- or

7    two-minute update, because this is our first hearing with your

8    Honor.  So I can tell you sort of where we are in the case.

9              Since these filings, one of the defendants have

10   settled their claims.  So they are not going to be here asking

11   for anything, any relief.

12             THE COURT:  That would be Mr. Jung.

13             MR. MOSKOWITZ:  Yes, your Honor.

14             THE COURT:  OK.  I didn't know if that was just

15   resolution of the discovery issues.

16             MR. MOSKOWITZ:  No, it is settlement for the case.

17             THE COURT:  In any event, for our purposes today the

18   discovery issues are resolved with respect to Mr. Jung.

19             MR. MOSKOWITZ:  Yes, your Honor.

20             So I can give you maybe a minute or two, if that is

21   OK, and I could kind of tell you how these all fall within the

22   context of the case and get -- pretty quick.

23             THE COURT:  I don't think I need that at this point.

24   Really what I wanted to find out is had there really been any

25   development on the discovery issues that have been briefed.

1          MR. MOSKOWITZ:  There have, your Honor.  So for

2   everybody else -- you know there's around 54 defendants.  So

3   everybody else has dropped their jurisdictional defense or

4   dropped their resistance for discovery.  So really we are only

5   down to three people, three categories of people.

6          One is the bank, Deltec, and it is the only bank we've

7   sued because the other six are insolvent, and Deltec plays a

8   major role in the fraud.  I mean, we allege basically it

9   happened because Sam Bankman-Fried was able to bank with this

10  international bank that had the most experience in the world

11  with cryptocurrency, and Deltec is not a small mom-and-pop

12  Bahamian bank; it is a major international conglomerate, with

13  many different companies, with businesses in Miami, and we've

14  heard already, because Sam Bankman-Fried, his trial took place,

15  and he was convicted of various things, including transferring

16  money almost on a weekly basis between the FTX and the Alameda

17  accounts.  Well, both of those accounts were at Deltec Bank.

18         So it is ironic that they say, you know, we are just a

19  small bank, we didn't do anything.  They don't handle Bahamian

20  money.  People don't deposit Bahamian money there because it is

21  an international bank, and that is where hundreds of millions

22  of dollars was flowing through every week for FTX.

23         So they are a major, major defendant here, and for

24  them to claim there is no jurisdiction doesn't really make any

25  sense because the law says you don't even need to have events

1    in Florida if you help further the conspiracy.

2           So we have many, many other allegations against Deltec

3    Bank and what they did and Mr. Chalopin.  In fact, they bought

4    another bank, Farmington Bank, which then they flowed money

5    through.  So there are a lot of allegations.

6           The second are just two hedge funds, Temasek and Sino.

7    The other eight hedge funds are not here today.  They have

8    agreed with us.  We have worked it out.

9           These two funds -- Sino, we found an office in Miami.

10   These people were partners of FTX.  They served on the advisory

11   committee of FTX.  So it is sort of absurd to say, well, we are

12   going to give an affidavit from their company, which they did,

13   but we are not going to let you challenge that declaration.

14   That's what they did.  All the other funds said, yeah, you've

15   got jurisdiction over us.

16          So clearly there are allegations about them furthering

17   the conspiracy because the original money all came from them.

18   Many people invested because they had the stamp of approval

19   from these two very respected funds.

20          The third category are just five individuals that are

21   social influencers.  These aren't even the celebrities in the

22   case.  These are just people that had their YouTube station.

23   They would go on, promote FTX, secretly get paid kickbacks from

24   FTX for doing the promotions, and under the BitConnect case,

25   the Eleventh Circuit case now, it says you can be held liable

1     for promoting an unregistered security if you had a financial

2     interest.

3              So these five individuals, we now know, they all got

4     paid, they all had a financial interest, they all promoted FTX,

5     and in the last year, your Honor, this case has advanced

6     greatly.  The SEC has said that the FTT token and the FTX

7     interest account is an unregistered security.  So I don't think

8     any of the remaining defendants are ever going to come into

9     court and say they're not.

10             So these five individuals, they admittedly promoted an

11    unregistered security.  They're liable.  So they have been the

12    most adamant and the most ferocious defendants, saying, we're

13    not giving you anything; we're not going to listen to you;

14    we're not going to accept service.  The truth is probably

15    because there is no other defense.  They admitted it.  We did

16    promote FTX.  We took money.

17             That is what we are here today.  We worked out

18    everything else.  We want one deposition of each of the

19    defendants.

20             Judge Moore entered an order denying these defendants'

21    motion to stay discovery, saying I will allow jurisdictional

22    discovery.  We've met for hundreds of hours, because we took to

23    heart your Honor's order which says you need to really work

24    these out in meet and confers, and some of these individual

25    social influencers violate your rule because they have

1    objections that are boilerplate.  They actually say

2    boilerplate, we reserve all objections without waiving any, we

3    state the following.  They don't even meet your own discovery

4    rule regulations.

5         So we would just ask that your Honor allow us to take

6    the jurisdictional discovery from these three defendants so we

7    can move on to the next phase of the case, because Judge Moore

8    has said, we have to finish this all in a matter of three

9    weeks.  So we have to get the documents, take the depositions,

10   and then file any supplemental filings in about

11   three-and-a-half weeks.

12        THE COURT:  OK.

13        MR. MOSKOWITZ:  I say one last thing is, in any

14   typical case that we've had there is burdensome.  There is not

15   a single affidavit from any of these three people to say that

16   any of the discovery we are seeking is burdensome.

17        So they have had a year now, because we filed these

18   lawsuits a year ago.  The SEC has looked into it, the Justice

19   Department.  Clearly they've gathered everything they have.

20        THE COURT:  I understand, Mr. Moskowitz.  This

21   discovery wasn't served until the end of December.  Obviously,

22   I think, except for Temasek, I haven't actually seen, I think,

23   any objections to any discovery at this point because they are

24   not due yet, right?

25        MR. MOSKOWITZ:  Right.

1        THE COURT:  So we are in this situation.  I know you

2   are trying to expedite discovery.  Obviously you didn't seek to

3   do that at the beginning of the discovery period, and probably

4   you didn't have reason to at that point.  You thought that

5   there would be cooperation.

6        Look at your discovery requests.  I do have some

7   concerns because they do seem to me to be very broad.  I am not

8   sure about this, but some of them do seem to me

9   disproportionate to the limited jurisdictional discovery that

10  Judge Moore ordered.  A lot of it I think is not and a lot of

11  it is clearly within the scope.

12        I guess what I need to do now is -- well, let me ask

13  you, what is it exactly that you're asking for in terms of your

14  motions to compel?  Are you just asking for them to -- I mean,

15  their regular due date now would be Monday, right?

16        MR. MOSKOWITZ:  Right.

17        THE COURT:  That would be when you would get their

18  responses and their objections and what have you.  I assume

19  that it's -- well, let me not assume.

20        What is the status on that?  Have you gotten their

21  objections yet?  Do you know where this is at, or is it still

22  in flux because they are not responding to you until Monday?

23        MR. MOSKOWITZ:  We have gotten objections from each

24  one of them.

25        THE COURT:  OK.

```
 1           MR. MOSKOWITZ:  Multiple objections from each one of
 2   these three defendants saying we object; we may give you some
 3   nonprivileged materials, but we object.  We have gotten the
 4   objections already.
 5           I understand what your Honor is saying.  The reason we
 6   served it is, typically in an MDL when the cases all get
 7   transferred here somebody who originally, like Larry David, he
 8   originally said you don't have jurisdiction in Florida.  Well,
 9   when it is MDL'd, the case gets transferred to Florida.  So it
10   is the case from California.
11           We didn't expect there would be any type of
12   jurisdictional fights.  So in the beginning we served
13   discovery, which included jurisdictional discovery.  Judge
14   Moore denied discovery.  It is only when they raised in their
15   motion to dismiss, hey, and you also don't have jurisdiction
16   over us, then we served this discovery.
17           We could make it easy, your Honor.  We could even go
18   after this hearing and try again and send them cut-down,
19   limited requests, because it is not going to be a very close
20   issue, in my opinion, whether there is jurisdiction over these
21   defendants.  So I don't want to waste your time, your Honor.
22           THE COURT:  Well, that is really what I wanted to get
23   at.  I want to find out what it is that you really need, right,
24   because some of these end up with, and anything involved in
25   this lawsuit.
```

1          MR. MOSKOWITZ:  Absolutely.

2          THE COURT:  I understand that some of this comes from

3     other things, but I want to get to the gist of it because you

4     have got until the end of the month to -- well, I guess until

5     the 1st of next month to complete this discovery, and the

6     defendants obviously need some time too because of what is

7     involved.

8          So I just want to make sure everyone has time and that

9     we do what Judge Moore has ordered, which I think is limited

10    discovery of what -- and I understand and I believe, and I will

11    hear from them now and their position, but I do believe that

12    there is merits discovery that is intertwined with the

13    jurisdictional that he has authorized, but, again, he also did

14    not authorize full merits discovery.  I think the order is very

15    clear on both of those aspects.

16         MR. MOSKOWITZ:  Absolutely.

17         THE COURT:  Now exactly what that means, the devil is

18    in the details.  There just isn't full merits discovery, and I

19    think some of this gets close to seeking that.  That is really

20    what I want to address.

21         So I want you to be prepared to do that.  And maybe

22    let's start with the first of the defendants, Mr. Sepulveda and

23    his clients, and maybe we can see -- unless you tell me there

24    is some other way that you think that we can resolve this and

25    you can tell me already what it is that you need that might not

1    be objectionable to them.

2           MR. MOSKOWITZ:  I think we could, your Honor.  There

3    is overlap because we have been doing discovery in the Voyager

4    and the Binance case.

5           For example, the FTX contract.  You could say, well,

6    that is merits discovery, but it is not because the actual

7    contract will say this is your target audience.  They say that.

8    Or this is how much you're going to be paid and this will be

9    your compensation.  That goes towards jurisdiction as well.  Or

10   this is where you'll post your internet sites.  So a lot of it

11   is overlap.

12          I think we worked our way back.  I think if we just

13   have a deposition date in, say, three weeks for each of the

14   defendants, one deposition, as allowed by the federal rules,

15   one deposition, then in the next week the materials that

16   they've already reviewed -- I don't want them to start looking

17   for anything.  We filed this a year ago.  So you have got to

18   presume in good faith their lawyer has already gathered the

19   materials that are relevant.  So I think if your Honor just

20   required them to comply with the federal rules, which is

21   materials which you have already gathered for your

22   investigation over the last year that relate to these issues,

23   produce them.

24          I think after we get those -- let's see what we get.

25   I mean, really, I'd give them all the benefit of the doubt.  I

1  presume that we are going to get a lot.  So let's see what we

2  get.  If we need to come back to your Honor, we will, but at

3  least we will also have that deposition date.  We are willing

4  to take anything.  They can give us any day, any time, any

5  location in the next three weeks.

6       So I think if we do it that way, that come Monday,

7  give them, using your best good faith effort, whatever

8  documents you have about your partnerships with FTX that is not

9  burdensome, something you've already gathered, give us a

10  deposition to test those declarations in three weeks, we're

11  done.

12       We have a lot of other important things to do in this

13  case.  This is not the most important.  I am being honest.

14  Because we are going to have to come back and ask you for

15  things.  This I don't think requires that much.  I think under

16  any good faith rule they produce to us the documents, we try to

17  work it out, we have a set date for the deposition, and that

18  should be enough.

19       THE COURT:  OK.  Let me talk to them, because one of

20  the things I want to be clear is I'm not sure what you proposed

21  and the way you proposed it the clarity of what it is they need

22  to do and that there isn't just going to be a fight as to what

23  that is.  So I want to be very clear when we get out of here

24  today what it is that you still want, that you're still

25  seeking, and what it is that they are able to produce and

```
1    whatever I need to rule on and make clear what it is that has

2    to be produced.

3              MR. MOSKOWITZ:  Right.

4              THE COURT:  If there isn't agreement as to what that

5    is.  Unless there is some reason that we need to come back to

6    address this within the next week or two, I don't want to do

7    that.

8              MR. MOSKOWITZ:  OK.

9              THE COURT:  Because you are not going to get it done

10   during that time period.

11             MR. MOSKOWITZ:  Correct, your Honor.  And only they

12   know what they have.  I don't know what they have.

13             THE COURT:  OK.

14             MR. MOSKOWITZ:  They have had a year now to go through

15   what they've had, and you can ask them.

16             THE COURT:  All right.

17             MR. MOSKOWITZ:  Thank you so much, your Honor.

18             THE COURT:  OK.  Thank you.

19             Mr. Sepulveda.

20             MR. SEPULVEDA:  Thank you, your Honor.

21             So we are here today on two of our clients,

22   Ms. Kullberg and Creators Choice.  They are both a little bit

23   differently situated.

24             With regards to Ms. Kullberg, we filed a motion for

25   protective order that had two separate bases for relief.  One,
```

1   we filed a 12(b)(5) motion to dismiss for lack of service.

2   That motion was originally filed in May of last year.  It was

3   then refiled in September, and during that entire time frame

4   they have not made any efforts to properly effectuate service.

5            In support of the motion to dismiss for improper

6   service, we filed Ms. Kullberg's affidavit where she attested

7   that she has never resided at the address where substitute

8   service was attempted.  We also filed a separate affidavit from

9   the then resident of that apartment that testified that

10  Ms. Kullberg has never resided at that apartment.

11           Because of that we filed our motion for 12(b)(5).  It

12  remains pending.  It is fully briefed.  We understand Judge

13  Moore has allowed jurisdictional discovery, but we are asking

14  to defer the jurisdictional discovery as to her during the time

15  that the motion remains pending before the court.

16           THE COURT:  I'll tell you, Mr. Sepulveda, that is not

17  going to happen.  I do not see where Judge Moore's order allows

18  that.

19           MR. SEPULVEDA:  OK.  Understood, your Honor.

20           THE COURT:  So that's --

21           MR. SEPULVEDA:  Understood.

22           THE COURT:  Let me start right out that that is not

23  happening.

24           MR. SEPULVEDA:  Understood.

25           The second issue, then, your Honor, with regards to

1    Ms. Kullberg is that Judge Moore's order was very specific that

2    what he was allowing was limited jurisdictional discovery.

3         In the plaintiffs' motion, they set forth the type of

4    jurisdictional discovery that they wanted, and at page 13 they

5    set forth that they wanted information regarding the

6    substantial and non-isolated activity with the State of

7    Florida, sales or revenue to Florida.  They cited all this

8    discovery that they wanted related to Florida.  They never

9    asked for personal service discovery.

10        In Judge Moore's order, he also distinguished between

11   jurisdictional discovery and the discovery as to another one of

12   the codefendants, Mr. Haslem, who is also contesting personal

13   service, and he did not allow any discovery as to personal

14   service.

15        Here, there are interrogatories, 13 through 25, that

16   go solely to the issue of personal service.  It asks for

17   information regarding any business contacts that Ms. Kullberg

18   has had anywhere in the United States, every address that she's

19   ever had in the United States, any driver's license address

20   that she's ever had, which is really irrelevant to the issue of

21   did she live in that apartment at the time.

22        They have presented no evidence in opposition to the

23   motion to dismiss establishing that she didn't live there.

24   They've only supplied the affidavit of Mr. Moskowitz, where he

25   attaches a service report that she may have lived there six

1    months before service was effectuated.

2             There is no evidence to contradict the evidence that

3    she did not live in that apartment, your Honor.  So this extra

4    discovery that they're seeking related only to service of

5    process, your Honor, we believe should not be allowed and that

6    to the extent the discovery proceeds against her, it should be

7    only as to jurisdictional discovery then, your Honor.

8             THE COURT:  OK.  Let me stop you right there and I am

9    going to ask you some questions and I am going to have some

10   questions for Mr. Moskowitz to address this issue before we

11   move on to something else.

12            First off, let me say, I've looked at the order.  I do

13   think that service of process is a component of personal

14   jurisdiction, and I don't think that it is excluded from the

15   discovery that Judge Moore did, and I also think that the

16   footnote that you cite dealing with Mr. Haslem is very clear

17   that that exclusion of Mr. Haslem is limited to Mr. Haslem and

18   only on the basis of circumstances dealing with Mr. Haslem.

19            So on that basis I think that some discovery on the

20   issue of service of process is appropriate.

21            Having said that, I tend to agree with you that a lot

22   of what is requested in here is not about deciding whether or

23   not service of process was proper, but is really looking for

24   other information, perhaps, to properly effectuate service, and

25   I don't think discovery is proper in that respect.

```
 1              Let me hear from you on that, Mr. Moskowitz.

 2              MR. MOSKOWITZ:  Yes, your Honor.  Again, anything we

 3      can do to resolve these differences, we want to.  So we are

 4      happy to forget the interrogatories.  We don't want this to be

 5      burdensome on the defendant.  So we want the deposition of her.

 6      As we know, discovery of service is jurisdictional discovery.

 7      The Eleventh Circuit allows that.  So we don't want to be

 8      burdensome to her.  She doesn't have to answer if there is a

 9      question about her driver's license.  Produce whatever basic

10      documents she currently has about her dealings with FTX and let

11      us take her deposition.

12              I want to work all of these out.  She is a very minor

13      player in the spectrum of things.

14              THE COURT:  Let me ask you, Mr. Moskowitz, because

15      some of these items, and I don't know that it is just in the

16      interrogatories, because I am concerned about the questions,

17      frankly, at the deposition as well that starts getting into

18      where she is now, what she is doing now, in order to somewhat

19      effectuate service.

20              I don't think you get discovery to figure out how to

21      serve her.  You get discovery to show that how you served her

22      was proper.  Right?

23              MR. MOSKOWITZ:  Right.  We will limit the questions,

24      your Honor.  I mean, we have the transcript from this hearing.

25      We will not ask her those specific questions.
```

```
 1              THE COURT:  OK.

 2              MR. MOSKOWITZ:  We don't need to.

 3              THE COURT:  All right.  So you will confine yourself

 4    to historical, where she lived on that date, whether she lived

 5    in that apartment.

 6              MR. MOSKOWITZ:  Those specific facts that I put in my

 7    declaration, we will focus just on that.

 8              THE COURT:  OK.  Is that acceptable, then, to

 9    Ms. Kullberg?

10              MR. SEPULVEDA:  Yes, your Honor.  We already provided

11    dates to them of, I think it was January 29th and February 1st

12    for Creators and Kullberg, to the extent the court ordered

13    discovery.

14              THE COURT:  OK.  That works in terms of the dates as

15    well?

16              MR. MOSKOWITZ:  Any dates are fine with us, your

17    Honor.

18              THE COURT:  OK.

19              MR. MOSKOWITZ:  We will cover them.

20              THE COURT:  So then does that address, I guess, your

21    objection on the service of process issue?

22              MR. SEPULVEDA:  Yes, it does, your Honor.

23              THE COURT:  All right.  Then let me get down to the

24    other question on personal jurisdiction.  What other issues do

25    we have on that, Mr. Sepulveda?
```

1      MR. SEPULVEDA:  Your Honor, there's five requests.

2  None of the requests are limited to contacts with the State of

3  Florida.

4      Starting from No. 5, it asks for all documents

5  regarding whether YBAs or FTT constitutes a security under

6  federal or state law.  That is merits-based discovery.

7      THE COURT:  OK.  Let me stop you right there.

8      What does that have to do with personal jurisdiction?

9      MR. MOSKOWITZ:  Your Honor, the law in Florida is not

10  you need to actually commit an act in the State of Florida.  I

11  mean, it is one of the differences --

12      THE COURT:  No, no, no.  I'm asking about whether or

13  not something is or isn't a security.

14      MR. MOSKOWITZ:  Right, because if she is promoting an

15  unregistered security and she knew it was an unregistered

16  security, the fact that she is going out promoting it on the

17  internet to millions of people saying you should buy this

18  illegal product furthers the fraud, furthers the conspiracy,

19  furthers what she's doing.

20      THE COURT:  If it is an unregistered -- you told me at

21  the beginning of this hearing that the SEC, it's already been

22  determined that it is an unregistered security.

23      MR. MOSKOWITZ:  I don't know if somebody is going to

24  come up and contest that, because it hasn't been found in a

25  court of law that it is an unregistered security.  I don't

```
 1    think -- Sam went to jail.  Nobody is really contesting now
 2    what the SEC is saying.  If she is willing to say, yes, I agree
 3    it is an unregistered security, I don't need to go down that
 4    road.
 5            Again, it goes back to burdensome.  I think what we've
 6    learned from people we settled with, they've got a folder.
 7    They have all the documents that they have from their FTX.
 8            The problem with these influencers is most of them
 9    scrubbed the databases and they erased from the internet all of
10    their postings.  So we had to spend three months on Archive.org
11    going back to find Erika's posts because they were deleted.  So
12    that is something we have asked for.  Give us the posts that
13    you made, if you have a copy of them.
14            THE COURT:  OK.  Let me stop you because that is a
15    different question.  Really, what I want to find out is, and
16    let me take a look at --
17            (Pause)
18            THE COURT:  The question, I guess, that we're talking
19    about is No. 5 on the --
20            MR. SEPULVEDA:  Requests for production.
21            THE COURT:  I have the interrogatories in front of me.
22    Let me just pull -- OK.
23            Again, Mr. Moskowitz, whether these documents
24    constitute a security under federal or state law.  I guess I'm
25    just not certain how that is just merit based, something on the
```

1    merits, right.  If you've got an agreement and it is an

2    unregistered security, does it matter whether or not she knows

3    it is an unregistered security?

4            MR. MOSKOWITZ:  No.

5            THE COURT:  So then how is question 5 relevant to your

6    personal jurisdiction?

7            MR. MOSKOWITZ:  We can withdraw that.

8            THE COURT:  OK.  All right.  So that is withdrawn

9    then.

10           MR. MOSKOWITZ:  I think we asked like five requests to

11   all of these people, total.  So when we met with some of them,

12   they are like, we don't have anything.  OK.  But if that's --

13           THE COURT:  Yes.  I understand.  I am just trying

14   to --

15           MR. MOSKOWITZ:  Sure.

16           THE COURT:  I am trying to keep it confined within the

17   personal jurisdiction world, and I agree with you in terms of

18   the contracts and agreements.  That goes to the conspiracy

19   issue you said.  I think any contracts or agreements that they

20   have, there are other things in the communications establishing

21   the agreements, those sorts of things, those do go to the

22   conspiracy on the personal jurisdiction issues that I think

23   Judge Moore found were at issue.

24           MR. MOSKOWITZ:  We are happy with just that.  I mean,

25   I want to be honest, your Honor.  We are going to ask you for

1   things that are very important to the case.  These other

2   materials are not.  So if we have all of her contracts,

3   agreements, correspondence, payments with FTX, that's good

4   enough.

5        That is the same for the other four social

6   influencers.  We will make it easy.  If they just give us the

7   documents they have regarding their contracts, their payments,

8   their emails for what they did for FTX, that is all we're

9   seeking.  I don't want to make it more complex than it needs to

10  be.

11       THE COURT:  OK.  I hear you.  I see Mr. Sepulveda,

12  he --

13       MR. SEPULVEDA:  The devil is in the detail.

14       THE COURT:  Let me go back and ask him.

15       MR. SEPULVEDA:  Your Honor, going to No. 1, which the

16  request says:  All documents and communications, including

17  contracts or agreements, regarding your relationship, directly

18  or indirectly, with FTX.

19       I think Mr. Moskowitz just said he basically wants

20  every single email communication exchanged by our clients with

21  FTX or internally over a two- or three-year period regarding

22  the FTX relationship.  If communications, including

23  communications that were outside the state between employees of

24  FTX, I don't think he really wants that, but that is what he is

25  asking for.

1          To the extent there is a contract, I don't believe our

2     contracts actually reference the State of Florida.  I'm not

3     sure they would be responsive if they don't.  He represented to

4     you that there are some contracts that represent where they are

5     directed to.  I think if our contracts don't represent the

6     state -- don't say we target Florida and don't refer to Florida

7     and I know that our contracts were entered into with an entity

8     that was from Delaware and had an Illinois provision, I'm not

9     sure how that really gets him personal jurisdiction in Florida.

10         If your Honor wants us to produce the contracts,

11    that's fine.  When you start expanding it to every single

12    communication regarding a three-year relationship, that is not

13    relevant to jurisdiction and it would be burdensome, even

14    though we don't have any affidavits at this point.

15         MR. MOSKOWITZ:  Your Honor, it's been a year.  They're

16    saying it's burdensome.  How do we know?

17         The acts don't have to occur in Florida.  I mean,

18    we've talked about that.

19         THE COURT:  I understand.  We talked about targeting.

20    I think even whether -- Mr. Sepulveda, whether or not the

21    agreement says it does, and I don't know what these agreements

22    look like, if the agreement does and there's some other

23    communication along the way that says, oh, pursuant to our

24    agreement you should be targeting Florida and the response is

25    yes, OK, we will do that, you know.

```
 1              MR. SEPULVEDA:  Our position in our meet and confers,

 2     we said, look, we'll produce any communications that discuss

 3     Florida, relate to Florida, target Florida.  We would agree to

 4     produce all of that.  We don't have a problem with that.  We

 5     think they're entitled to that.

 6              What we have a problem is when you're saying

 7     day-to-day communications regarding your FTX relationship, that

 8     is overbroad and not relevant to jurisdiction.

 9              THE COURT:  Again, I am going to go back and forth.  I

10     am trying to get my head around exactly what this is because I

11     don't understand exactly what this sort of promoter

12     relationship is.

13              MR. SEPULVEDA:  Sure.

14              THE COURT:  What is it about that that isn't

15     sufficient?  What is it about that that you need for personal

16     jurisdiction purposes?

17              MR. MOSKOWITZ:  She has a contract with FTX.  We don't

18     even get that, according to what he's saying.  He's saying,

19     well, if the contract --

20              THE COURT:  No, no, no.  You're going to get that.

21              MR. MOSKOWITZ:  We're getting all agreements between

22     her -- so I want to be clear --

23              THE COURT:  All agreements between --

24              MR. MOSKOWITZ:  All agreements between her and FTX,

25     any and all payments that were made, because that is the
```

1    financial incentive she had to make these promotions, that is

2    good enough.  I'm trying to be as honest as possible.

3         It is not limited to Florida.  It is any and all

4    agreements with FTX, any addendums, revisions, any letter

5    agreements with revise it, because sometimes they write them

6    letters about their agreement.  I'm not telling them to search

7    for thousands of documents.  So there can't be that many of

8    those.  And then whatever she was paid, the payments.  Hey,

9    thank you for promoting our FTX, here's your check, here's what

10   you made.  That's it.  And it's been a year now.

11        THE COURT:  OK.  I hear you.  I don't disagree with

12   you that it seems to me that that would be burdensome, but I'm

13   not clear how payments go to personal jurisdiction.

14        If they're payments in Florida, if they're payments

15   for things in Florida, yes.  If they're just payments, the

16   agreement will say how the payment structure is.  You're really

17   talking about the amount, right, and the amount doesn't change

18   whether or not you have long arm jurisdiction under the

19   conspiracy, right.

20        MR. MOSKOWITZ:  Right.  It is not the most important

21   thing to us, your Honor.

22        THE COURT:  I'm not saying that you don't get this

23   down the line on merits discovery if personal jurisdiction is

24   established, right.

25        MR. MOSKOWITZ:  Right.

1          THE COURT:  I'm just saying we have limited

2    jurisdictional discovery here.  So that is what I want to keep

3    it to.  What you need to address the jurisdictional issues.

4          MR. MOSKOWITZ:  OK.  Contracts, agreements.

5          THE COURT:  Contracts and agreements.

6          MR. SEPULVEDA:  Amendments.

7          THE COURT:  And anything that would indicate that

8    Florida is being targeted.

9          MR. SEPULVEDA:  Yes.

10          MR. MOSKOWITZ:  Yes.

11          THE COURT:  OK.

12          MR. MOSKOWITZ:  Or not.  Hey, don't promote -- when

13    you get on the internet, don't include Florida in your

14    podcasts.  Because if not, I presume the internet includes

15    Florida, right.  I mean, that is the argument I'm going to

16    make.  When you do a promotion on the internet --

17          THE COURT:  Sure.

18          MR. MOSKOWITZ:  -- YouTube, it hits Florida.  If there

19    is something that he has that says, no, we didn't mean to

20    include Florida, of course, show me that.

21          THE COURT:  So what we're looking for, and this is

22    going to address for you, and I just want to be clear, both for

23    Kullberg and for Creators Choice?

24          MR. SEPULVEDA:  Yes, sir.

25          THE COURT:  OK.  So it is going to be -- right,

```
 1    Mr. Moskowitz?

 2              MR. MOSKOWITZ:  Yes, your Honor.

 3              THE COURT:  So it will be any and all agreements

 4    between Kullberg --

 5              MR. SEPULVEDA:  Or Creators.

 6              THE COURT:  -- or Creators Choice and FTX.

 7              MR. MOSKOWITZ:  Or any of their affiliate entities.

 8              THE COURT:  FTX and any of their affiliated entities,

 9    and any agreements or communications that establish or address

10    the targeting of Florida.

11              MR. SEPULVEDA:  Understood.

12              MR. MOSKOWITZ:  Right.  I just want to be clear, if it

13    is, say, the advertising agency Dentsu for FTX, if they signed

14    the agreement on behalf of FTX, it is on behalf of FTX.  I

15    don't want to get into some problem.

16              THE COURT:  Yes.  They are in agreement.  So FTX or

17    someone acting --

18              MR. MOSKOWITZ:  On their behalf.

19              THE COURT:  -- on FTX's behalf.  OK.

20              MR. SEPULVEDA:  And that will take care of all of

21    them?

22              THE COURT:  Does that address everything for both of

23    you in terms of --

24              MR. MOSKOWITZ:  We have the two depositions.

25              MR. SEPULVEDA:  In regards to the deposition --
```

```
 1              MR. MOSKOWITZ:  The deposition dates?

 2              MR. SEPULVEDA:  Yes.

 3              The one other thing, your Honor, with regards to the

 4       service issue, we also had a protective order.  I don't know if

 5       you still need the deposition of Malik --

 6              MR. MOSKOWITZ:  Yes.

 7              MR. SEPULVEDA:  -- or since you're getting Erika,

 8       that's OK.

 9              MR. MOSKOWITZ:  She gave an affidavit, so we

10       definitely want to test the affidavit.  You can't give -- or

11       withdraw the affidavit.

12              THE COURT:  In our agreement you don't have standing

13       to contest that?  Well, let me ask you a question.  It seemed

14       to me one of the things that, and I don't know if you've

15       talked, but is there some issue as to a relationship between

16       Ms. Kullberg and Ms. Malik, or how this --

17              MR. SEPULVEDA:  I mean, since they're going to be

18       deposing -- maybe if you agree that we can give her, if you're

19       not satisfied with Ms. Kullberg's answers about any

20       relationship she may have.

21              MR. MOSKOWITZ:  OK.  Let's try that.

22              MR. KAYE:  No, no, no.  We want both.  We want both

23       depositions.

24              MR. MOSKOWITZ:  Why?

25              MR. KAYE:  Because Arzu Malik gave a declaration that
```

1   completely contradicts what the process server gave in his

2   service affidavit, and there are a lot of inconsistencies

3   between her position and Kullberg's position, and because they

4   both gave affidavits we think that we should get both of them

5   on those limited issues.

6           MR. MOSKOWITZ:  We will limit the deposition, your

7   Honor, to, say, two hours.  I mean, we don't want to be

8   burdensome.  So we will limit the deposition.

9           If someone affirmatively gives a declaration, it is

10  going to be tested.  So we will limit it to two hours.

11          THE COURT:  OK.

12          MR. MOSKOWITZ:  By Zoom.  I will limit it to Zoom, two

13  hours.

14          THE COURT:  Two-hour deposition.  Again, we are

15  talking about the events on the date of service.

16          MR. MOSKOWITZ:  Right.

17          MR. SEPULVEDA:  Thank you, your Honor.

18          MR. MOSKOWITZ:  Thank you, your Honor.

19          THE COURT:  Thank you.

20          MR. EHRLICH:  Good afternoon, your Honor.  Andrew

21  Ehrlich, from Paul Weiss, on behalf of the Temasek defendants.

22          Would it be agreeable for me to be heard?

23          THE COURT:  Sure.

24          MR. EHRLICH:  To address some of the comments by

25  Mr. Moskowitz on Temasek, if I could give you just a minute on

1    what Temasek is.

2         Temasek was an equity investor in FTX.  It made a

3    preferred equity investment of in excess of $300 million that

4    was wiped out upon the bankruptcy of FTX.  It is a sovereign

5    wealth fund owned by the government of Singapore, based in

6    Singapore.

7         There are two defendants named in these proceedings.

8    One is Temasek Holdings.  One is Temasek (USA).

9         In connection with our 12(b)(2) motion, a

10   representative of each of those entities submitted a

11   declaration.  It is at ECF-300 in the main case, 300-2 and

12   300-3.  In short what they state, which has, importantly, your

13   Honor, never been contradicted by the plaintiffs, which I think

14   is important in the case law in the Eleventh Circuit and in

15   this district.

16        What those affidavits state is Temasek Holdings is a

17   Singapore entity.  Its employees are the ones who did the work

18   on the FTX investment, based in Singapore.  They never came to

19   Florida.  They never went to California.

20        There is a transferred case from California here, your

21   Honor.  So both jurisdictions are relevant for purposes of the

22   12(b)(2) motion.  Neither party had contact or worked in either

23   jurisdiction, and certainly Temasek Holdings has no presence in

24   the United States, period, full stop.

25        Temasek (USA) is based in New York, has a small office

1    in California.  None of the work related to the FTX

2    investment -- the diligence, the investigation, the

3    negotiation -- was done by U.S.-based people.  It was all done

4    in Singapore.  And there is no contest as to any of those

5    facts.

6            So what is the basis for jurisdiction that is

7    asserted?  It is, again, the long arm conspiracy jurisdiction.

8    But what is the conspiracy?

9            I would ask Mr. Moskowitz to identify -- the court

10   well knows for a conspiracy you need the who, what, where, when

11   of the corrupt agreement.

12           The facts that are pleaded truly are Temasek was an

13   investor, and certainly a significant one.  It did due

14   diligence, so it must have known, and for a period of time a

15   Temasek employee sat on an honorific advisory board that had no

16   legal authority but was a group of investors that were on an

17   advisory board for a period of time.

18           That is the conspiracy.

19           I think I heard Mr. Moskowitz, I think what he said

20   was it was a validator for FTX.  Well, respectfully, that does

21   not constitute the basis for a conspiracy under the law.  So

22   what exactly are they entitled to test here?

23           What we agreed to do, voluntarily, is to answer the

24   interrogatories that were propounded as relates to the two

25   parties that were sued, and we agreed to run, and are currently

1   undertaking to run, email searches for communications with FTX,

2   Sam Bankman-Fried, FTX and its agents that would direct or

3   relate to conduct in Florida in connection with Temasek's

4   investment, and we had a meet and confer and we said to

5   plaintiffs, we think that's enough.  If there is something else

6   you want us to do, tell us, because what you served two weeks

7   ago were 46 blunderbuss merits discovery requests --

8   information about legal contracts, information about all

9   communications, about everything.  Tell us what else you want

10   beyond communications directed at Florida and we'll answer your

11   interrogatories.

12          We didn't get a response.  We got a motion.

13          I know no court likes to be burdened by emails between

14   the parties, but it is attached as Exhibit 1 to the motion to

15   compel.  You can read for yourself.  My partner, Ms. Kovalenko,

16   said, Here's what we'll do; if you have another proposal, tell

17   us.  We got a motion five hours later.

18          So as far as we're concerned, your Honor, we behaved

19   in good faith.  There is no contradiction of the jurisdictional

20   facts that we've submitted that require jurisdictional

21   discovery, whether it is the Cortazar case or the Serra-Cruz

22   case or the Zapata case, all cases in this district that hold

23   jurisdictional discovery is not appropriate in the context of

24   an absence of a fact question, but we recognize Judge Moore

25   ordered it and we are going to obviously comply in good faith

1    with his order.  We think we made an appropriate proposal.  We

2    think we are doing enough.

3          Incidentally, in light of this record, it does not

4    seem appropriate to us to burden people halfway across the

5    world with depositions when we have yet to see a meaningful

6    fact question.  So that is how we see the world, your Honor.

7          THE COURT:  OK.  Mr. Moskowitz, I am going to go back

8    to the same question I had before.

9          I agree that some of this discovery requested was very

10   detailed, and I could not see how, other than in the most

11   tangential ways, it was related to personal jurisdiction,

12   especially proportional, the time and the limited discovery

13   that Judge Moore has granted you.  So what I'm asking again is,

14   what do you really need?

15         MR. MOSKOWITZ:  Yes.

16         THE COURT:  They have said they are going to answer

17   all your interrogatories, right, on behalf of the two parties.

18   Are we good then on the interrogatories?

19         MR. MOSKOWITZ:  Yes, your Honor.

20         THE COURT:  OK.

21         MR. MOSKOWITZ:  So the deposition we clearly need to

22   take because he gave a sworn declaration of somebody from his

23   company Temasek, and there are other references to (ONE)

24   Temasek.  We don't know the organizational structure.  We don't

25   have to take his word for it.  We are not at a motion to

1    dismiss the conspiracy allegations today.  We are just here to

2    figure out who is the right party.

3           So we want the one deposition of the company, which,

4    under oath, we are going to question his declaration, and we'd

5    like the documents of his connection with FTX, with the

6    company, so we can see which entity entered into the deals with

7    FTX.  There are different ones.  He says there is a Temasek

8    (USA), Temasek Singapore.  Let's see the contracts.  Let's see

9    the agreements between you and FTX so we can see who's there,

10   and we ask for some basic organizational structure.  How is the

11   company structured?  That's it.  We don't need all the others.

12          I agree, your Honor, we have had many meet and

13   confers.  We have 32 law firms helping us.  They've got 50 law

14   firms.  So I think on both sides we are all trying to do our

15   best.  But we could cut it down to give us the interrogatory

16   answers, give us any and all agreements with FTX, give us your

17   organizational structure, and give us a date for a deposition

18   or withdraw your declaration.  I mean, if you're going to put a

19   declaration into the record, we have to test it.  And give us

20   any date in the next three weeks.  That would be sufficient for

21   us.

22          THE COURT:  OK.  Let me come back to you.  Excuse me,

23   because I have to tell you, I'm terrible with names.  Remind

24   me.

25          MR. EHRLICH:  Yes.  It is Andrew Ehrlich.

```
1              THE COURT:  Ehrlich.  I should remember that.  Yes.
2              MR. EHRLICH:  On behalf of Temasek.
3              So a couple of things, your Honor.  One, the
4    declarations, Mr. Moskowitz may not have read the declarations
5    we submitted.  They are very clear.  They say Temasek Holdings
6    has a subsidiary.  It identifies the subsidiary and the
7    subsidiary of that.  Artz Holdings, Inc. is the party that made
8    the investment.  We told them who made the investment in the
9    declaration.  The interrogatories ask for what's the structure,
10   how is it owned, who does what, who are the people.  We are
11   going to answer the interrogatories.
12             So I still don't hear the question that requires
13   probing of a witness where there is not a factual dispute,
14   because that is the touchstone of the cases -- is there a
15   factual dispute.  You don't get to take discovery just because
16   you want to test something where it is not controverted, at
17   least in the jurisdictional context.
18             THE COURT:  Well, look, I understand your argument,
19   Mr. Urlich, but in my view that ship has sailed because Judge
20   Moore found that there was enough contested and disputed that
21   it warranted jurisdictional discovery, and he did identify what
22   he viewed as being in play, I think, in the motion when he
23   talked about, in terms of Temasek, it was the contact with the
24   forum state and the purported corporate separateness, right.
25   So it is the interrelatedness of the companies.
```

```
 1              MR. EHRLICH:  OK, your Honor.  Understood.

 2              THE COURT:  And I understand that you don't agree with

 3    that, but that is his ruling.  That is the law of the case as

 4    far as I am concerned.

 5              MR. EHRLICH:  Understood, your Honor, and understood

 6    on the contracts, the agreements.  We'll provide those.  I

 7    would ask for the same accommodation.

 8              It doesn't seem to me that, if this is done

 9    efficiently, this needs to be more than a two-hour event.  The

10    organizational structure is going to be clear in the

11    interrogatories.  It, frankly, was already clear in the

12    affidavit.  It is not that complicated.  There are four

13    entities.

14              MR. MOSKOWITZ:  Your Honor, no.  We said two hours for

15    a woman that is giving an affidavit about a service.

16              Let's not forget, the bankruptcy court has said it's

17    $6 billion in damages.  They may be liable for $6 billion.  So

18    let's put this in context here.

19              There's two companies.  He said there's two separate

20    companies.  We want one seven-hour deposition of each of them.

21    He says they're in Singapore.  Do them by Zoom.  I mean, there

22    is no burdensome to wake up, do a deposition, wake up, do a

23    deposition.

24              THE COURT:  OK.

25              MR. MOSKOWITZ:  And just the areas that the judge has
```

1    said to go into.

2         THE COURT:  I hear you and I understand.  Frankly, I

3    agree that a deposition is appropriate.  Given the personal

4    jurisdictional issues here, two seven-hour depositions seem a

5    bit much.

6         MR. MOSKOWITZ:  It is a lot.  It is a lot.  We don't

7    take long depositions.  How about if we agree on four hours, a

8    four-hour deposition of each.

9         THE COURT:  I think a half-day deposition.

10        Mr. Ehrlich.

11        MR. EHRLICH:  Half of the seven hours allotted by the

12   federal rules.

13        THE COURT:  Let's keep it at four hours.

14        MR. EHRLICH:  OK.  Your Honor, I do want to just

15   respond to something Mr. Moskowitz said.  I don't know who said

16   we are liable for $6 billion.  This thing has been scrutinized

17   all over the place.  Temasek has never been charged by any

18   regulator anywhere.  So I am not sure what that --

19        THE COURT:  Look, I don't intend on passing upon any

20   of that here today.

21        MR. EHRLICH:  Of course.

22        THE COURT:  All I am doing here today -- understand,

23   there's a lot that is going to be litigated in this case.

24        MR. EHRLICH:  Right.

25        THE COURT:  All I'm addressing here is the discovery

1    that is needed on this jurisdictional basis that Judge Moore

2    has ordered.  That is really it.

3         MR. EHRLICH:  Thank you.

4         THE COURT:  Again, let me be clear.  For each of these

5    two parties it will be a four-hour deposition on personal

6    jurisdictional issues of the corporate entities, including the

7    issues that Judge Moore has talked about, the interrelatedness

8    and the contacts with the forum state.

9         MR. EHRLICH:  OK.

10        THE COURT:  That is what the issue should be.

11        MR. EHRLICH:  Understood.

12        THE COURT:  That will go to the contracts and

13   agreements and the basics of that.  So the contracts and

14   agreements will be produced.  The organizational structure, you

15   will answer the interrogatories.  Each of the parties will

16   answer as to themselves.

17        Is that it then?

18        MR. MOSKOWITZ:  Just give us a deposition date, say,

19   next week, in two weeks, before the deadline.

20        MR. EHRLICH:  We will have one promptly and it will be

21   within the deadline.

22        MR. MOSKOWITZ:  Great.

23        THE COURT:  OK.

24        MR. MOSKOWITZ:  Thank you, your Honor.

25        MR. EHRLICH:  Thank you, your Honor.

```
 1              THE COURT:  Very good.  Thank you.

 2              MS. BUCHWALD:  Your Honor, Lara Samet Buchwald, of

 3    Davis Polk, on behalf of defendant Deltec as well as Jean

 4    Chalopin, that is the chairman of Deltec Bank & Trust.

 5              If I may, your Honor, we are both responding to their

 6    motion to compel as well as we filed our own motion to quash

 7    and for a protective order.

 8              If I can set the stage for a second, because I think

 9    we are slightly differently positioned, and I think it came

10    through in our papers, but I just want to make the issue clear.

11              Deltec is a Bahamas-based bank.  Mr. Chalopin is a

12    Bahamas resident and citizen, also the chairman of the bank.

13              The plaintiffs' allegations, candidly, are not what

14    you just heard from Mr. Moskowitz earlier.  They are contained

15    in a handful of pages.  They allege that we are both Bahamas

16    residents, and there are no allegations of specific conduct,

17    case-related conduct relating to Florida.  There is also a

18    separate Washington complaint that hasn't been served.  There

19    is the same thing, no allegations with respect to Washington.

20              We have tried to engage on these personal jurisdiction

21    issues for some time.  Obviously, without success.

22              The key backdrop here, which, again, positions us

23    differently and creates a bigger issue, that can't easily be

24    resolved by a meeting in the middle, is that there is a

25    specific Bahamas law that prohibits my clients from responding
```

1    and disclosing anything about their customers.

2            So we have a declaration in from Lanecia Darville.  It

3    is at, I believe, 470-1 on ECF.

4            THE COURT:  I've reviewed it.  Yes.

5            MS. BUCHWALD:  OK.  Excellent.

6            So what that declaration talks about is the interplay

7    of two statutes.  It is the Bank & Trust Companies Regulations

8    Act of 2020, which is actually -- there was a repealed earlier

9    version from 1965, and then there is the Evidence (Proceedings

10   in other Jurisdictions) Act.

11           The way that the statutes operate is that the Bank Act

12   says you as a bank, as well as your employees and your officers

13   and your directors, cannot disclose information about a

14   customer's identity, assets, liabilities, accounts, etc., and

15   then there is an exception.  The exception says unless you have

16   an order from the Bahamas Supreme Court, or I think the

17   language is a court of competent jurisdiction within the

18   Bahamas, that lawfully requires a response.

19           So we have explained what that approach would be and

20   how to do it, but absent that we are subject to fines as well

21   as imprisonment if we respond.

22           Now, I then take a step back and say, well, let's look

23   at the requests and do the requests really seek customer

24   information or not.

25           We are in the position, I think, like some of the

1    others here -- not like the folks who got five requests but who

2    received 40 and kind of charitably construed probably 70

3    requests -- that ask for everything about account information

4    not only of FTX entities but every agent and representative and

5    employee of FTX.  We're asked about audits.  We're asked about

6    any sort of information concerning monitoring accounts.  These

7    are extremely substantive.  Frankly, they go beyond merits-type

8    discovery requests.

9          So when you think about is there a way to thread the

10   needle where you're not violating the Bank Act in responding,

11   we don't see any way to do it, which is why from the beginning

12   we said -- by the way, from the beginning is not a year ago.

13   We got these discovery requests on the Friday before

14   Christmas -- we said, look, there is an issue here.  There is

15   the Evidence (Proceedings in other Jurisdictions) Act and this

16   is the way we can respond to appropriately-tailored discovery.

17   We were told, no, we are going to stand on our discovery.

18         That is where we are.  It leaves us, frankly,

19   differently positioned than the others.

20         When I think about both the framework -- and I think

21   we and plaintiffs both agree that where you have the conflict

22   between their requests and between a foreign law that applies,

23   you are looking at the Supreme Court's decision in

24   Aerospatiale, and they talk and they start kind of from the

25   premise of the idea that, look, we are not going to have a

1    blanket rule that foreign laws will always trump the federal

2    rules, but what we are going to say is you have to be cautious,

3    right, you have to be able to understand that when you have

4    foreign litigants, you give them special vigilance, and when

5    you have foreign litigants, you take care to be able to

6    navigate these particular issues.

7         What the Supreme Court said is for, quote-unquote,

8    delicate issues like that we're not going to give you a rule,

9    but we'll drop a footnote and here are some factors to

10   consider, and the factors we seemingly agree with.  The

11   application of them we don't.

12        The reality is what you have here is extremely

13   overbroad requests that are relating to a motion that we made

14   which is challenging the facial sufficiency of their pleadings.

15        So they allege that we are a Bahamas-based bank and a

16   Bahamas-based chairman, individual, and there are no

17   allegations beyond that.  So we don't even put in a declaration

18   contesting jurisdictional facts because we're moving to dismiss

19   on the basis of their own allegations.

20        So when you talk about kind of the first factor, the

21   necessity of the information, from our perspective, again,

22   there is nothing that is needed.

23        Then you go on to the various different factors,

24   including whether the information originated in the U.S.

25   Deltec is a Bahamas-based bank.  It doesn't have servers in the

1    U.S., it doesn't have documents in the U.S., it doesn't have

2    information originating in the U.S.  The same thing with

3    Mr. Chalopin.  He is a Bahamas resident.

4         Then when you go on to the extent to which

5    noncompliance would violate either U.S. policy interests or

6    compliance would violate Bahamian policy interests, that is

7    where you have, again, decades and decades of a statute being

8    in place that says Bahamas-based banks, you may not disclose

9    this information or we're going to impose a penalty and we're

10   going to send you to jail.

11        So I don't have the ability standing here to say, you

12   know what, these handful of things, if we are going to narrow

13   it down, we will be OK, because the reality is unless we are

14   taking everything off the table that relates to customers,

15   we're faced with the same Hobbesian choice where we either

16   respond or we're subject to criminal sanction in the Bahamas.

17        So, again, I think that is where we are.  It is from a

18   kind of policy perspective.  When you think about the policies

19   that underlie personal jurisdiction, quite challenging, because

20   we do have -- again, I understand Mr. Moskowitz may disagree --

21   we have this very small Bahamas-based bank, and when you think

22   about, again, due process inquiries, when you think about

23   whether there is specific jurisdiction, when you think about

24   whether they would anticipate being haled into court and on

25   defending their jurisdiction would have to make merits-based

1  discovery and potentially risk criminal sanction in the U.S.,

2  that is where the rubber meets the road.

3  THE COURT:  Well, before you start, Mr. Moskowitz, let

4  me ask you a question.  Ms. Buchwald?

5  MS. BUCHWALD:  Yes.

6  THE COURT:  I hear your argument and I appreciate the

7  circumstances that it puts your clients in, but, again, I'm

8  looking at Judge Moore's order.  He ordered your clients to

9  engage in jurisdictional discovery.

10  What you are saying is jurisdictional discovery

11  doesn't apply to us.  That is done.  He's already decided that

12  it does, right.  That is what this order says.  All defendants,

13  and that includes your clients, have to engage in

14  jurisdictional discovery, limited jurisdictional discovery.

15  MS. BUCHWALD:  I would say two things.  Number one is,

16  the issue of whether we could comply wasn't yet before the

17  court.  So we haven't had the opportunity --

18  THE COURT:  Why was that?

19  MS. BUCHWALD:  Because the request was made to lift

20  the stay by plaintiffs.  This wasn't on our motion.

21  THE COURT:  But you responded, and there is a line in

22  your response that says this may violate Bahamas law and

23  doesn't go beyond that.  So that is in there.  So Judge Moore

24  presumably was told something and someone at least flagged the

25  beginning of this issue, and he went ahead and he ordered

1    discovery.

2            If you didn't tell him, whether jurisdictional or any

3    other discovery, no one argued in more detail.  This Bahamas

4    statute wasn't cited to Judge Moore.

5            MS. BUCHWALD:  What I would say, your Honor, is that

6    obviously we have moved for a protective order and to quash.

7    That is a separate motion that we've made that raises these

8    issues that puts in the relevant evidence on that piece.

9            So, sure, I don't think Judge Moore appreciated when

10   he said limited jurisdictional discovery that it would create a

11   situation for a defendant where in responding we'd potentially

12   risk criminal penalties.  That is number one.

13           Number two, limited jurisdictional discovery doesn't

14   necessarily entail dozens of pages of requests.

15           THE COURT:  That is a different question, and I will

16   address that.  The first one I want to do because the motion to

17   quash on this, as far as I'm concerned, Judge Moore said there

18   is jurisdictional discovery and it is not within my purview to

19   say, eh, Judge Moore didn't fully appreciate this and his order

20   doesn't apply.  If you want him to consider that, then, as far

21   as I'm concerned, that is a motion to reconsider or something

22   to him on the jurisdictional discovery issue and you argue

23   this.

24           He has said that there is jurisdictional discovery,

25   and that is not something that I think I can nor do I have any

1    willingness to overrule.  That doesn't mean that of some the

2    issues that are raised, that you've raised, don't impact, I

3    think, the scope of discovery that is in play, because I think

4    they do, at the very least.

5         I'm not sure how far this discovery extends in terms

6    of the information that is being provided.  I just don't think

7    that is something that I can do, and I think under the case law

8    too I'm not sure that, even going through the factors, it is

9    clear to me that this discovery isn't appropriate, especially

10   given the time lines that are involved here.

11        How long does it take to go through this process in

12   the Bahamas?

13        MS. BUCHWALD:  The answer is I don't know, but we have

14   fully-briefed motions to dismiss.  So the reality is if it

15   takes time and they want to ask the court for more time and to

16   hold that motion in abeyance, that may be a way to do it.

17        THE COURT:  Judge Moore has said that this is his time

18   line.  What I'm here to do is enforce his time line in his

19   orders, not to change them.

20        As far as I'm concerned, if that is the issue, that is

21   something that you need to take to Judge Moore.

22        MS. BUCHWALD:  OK.  Again, I think the issue is,

23   again, we are differently situated.  We have a statute that is

24   very explicit and on point.

25        THE COURT:  I don't disagree with you on that.  You

1   are in a different situation and the considerations are

2   different, but we have a ruling in place.

3           I'm not certain that even under the Supreme Court's

4   case -- the Third Circuit case that I think plaintiffs cited,

5   Automotive Refinishing, is very instructive on the fact that

6   these principles apply to jurisdictional discovery and that

7   jurisdictional discovery can go forward under these

8   circumstances.

9           Given the time lines that Judge Moore has ordered and

10  his finding that jurisdictional discovery is appropriate that,

11  absent something that you're going to tell me that there is

12  some way to get this done under Bahamian law in this way, I

13  think that this is going forward under the Rules of Civil

14  Procedure and the discovery rules.

15          MS. BUCHWALD:  A couple of thoughts.  Number one is,

16  with respect to the Third Circuit case, there is a Supreme

17  Court case, right.  There is Aerospatiale, which really talks

18  about how do you deal in this framework.  So I think --

19          THE COURT:  And the Third Circuit case applies it,

20  right?

21          MS. BUCHWALD:  The Third Circuit case applies it.

22  Different facts, but the Third Circuit case applies it.

23          The Third Circuit case is also talking about whether

24  you have a uniform rule.  In other words, as a blanket rule you

25  must go to the foreign law before you can consider the federal

1    rules.  We are not arguing for that.

2          We are saying in our specific situation, where we have

3    a specific statute that says you may not provide this or you

4    risk penalty or you risk going to jail, then given where we are

5    and given the fact that our motion is quite literally only

6    challenging the facial sufficiency of their complaint that it

7    is a different situation here than you have in any of the cases

8    that we have seen on a cite.

9          So that is where we stand.

10         Look, if there were a situation in which they came to

11   us and said, you know what, I see that you have a challenge.  I

12   see that you have a challenge.  Actually, what we are going to

13   ask for is what we really think of as true jurisdictional

14   discovery.  Do you have licenses in Florida.  Do you have

15   physical buildings in Florida.  Maybe we get there and we can

16   figure out a way to conclude that doesn't violate the Bank Act

17   and that doesn't violate --

18         THE COURT:  How could that violate the Bank Act?  Even

19   what you've cited, it only has to do with customer information,

20   right?

21         MS. BUCHWALD:  It only has to do with customer

22   information, but, again --

23         THE COURT:  That wouldn't be customer information

24   anyway.

25         MS. BUCHWALD:  I agree, but that is not what they're

1    seeking.  If you look at their requests, you can go through one

2    by one by one and the vast majority are seeking customer

3    information.  Tons of customer information.

4         To the extent that there are ones that don't

5    technically require customer information, they are wildly

6    unrelated to jurisdictional discovery.  Can I have any audits

7    that have ever been conducted of your bank.

8         So where we are is, if there were something that were

9    narrow and appropriate, I suspect we could get there, but when

10   we raise the issue both about breadth and with respect to, here

11   is the particular challenge we're facing, we were told, yeah,

12   too bad.

13        Again, if there is a way to thread the needle, if

14   there is a way to get comfortable, we will try to do it, but I

15   think the reality is, again, we are facing situations and we

16   are facing a choice that is impossible for our clients to make.

17        THE COURT:  OK.  Let me hear from Mr. Moskowitz.

18        MR. MOSKOWITZ:  Your Honor, I told you before that

19   there are things that we need and things that are important and

20   things that are not.  This is troubling.  Let me explain why.

21        A few weeks ago we informed Deltec, you are not a

22   domestic bank, you do not have a dealer's license, and you

23   can't handle Bahamian dollars.  You're not a Bahamian bank.

24   You're an international bank.  We told them that their

25   disclosures with FTX describes Deltec is a global financial and

1    insurance services group for innovators, entrepreneurs and

2    their networks.  Deltec empowers SMEs, their founders, their

3    investors, blah, blah, blah, goes on a lot more.

4          We told them that there's a lot of Deltec divisions.

5    Deltec Asset Management Group, offices in New York, Nassau,

6    London.  There is a Deltec International Group.  Offices in New

7    York.  FTX, Delchain, Deltec Bank & Trust.

8          What is going on here?  We are not just saying --

9    credibility is everything.  So to say that Deltec is a tiny --

10   and they said it again -- it is a tiny little Bahamian bank,

11   that is not true.

12         Before FTX got involved with them, the reason Sam went

13   to them is because they were backing the stablecoin Tether for

14   billions of dollars.  30, 40, billions of dollars Mr. Chalopin

15   had to physically have to back the coin.  He is not a local

16   Bahamian bank.

17         So what have I heard in the last three weeks.  I see

18   an affidavit citing some Bahamian statute.  Fine.  But they

19   better be very careful if they're saying under oath that this

20   is a Bahamian bank, because I asked them three weeks ago.  I

21   said, it is not a Bahamian bank.  I have never seen or heard or

22   read anything to the difference.  So that is why this

23   deposition is crucial.

24         There is a reason they keep saying we're a small bank,

25   we're a small bank.  How did you back Tether?  That is $30

1    billion.  It is an international conglomerate.

2         So I know all we have is our credibility.  I just

3    don't understand how they can keep saying, well, now we're a

4    Bahamian bank and there's a Bahamian statute.  We address that.

5    The U.S. Supreme Court addressed even if they are a Bahamian

6    bank, but I'm suspicious here.  There's so much going on.  I

7    think this deposition is going to be the most insightful.

8         Think about it.  Each of the accounts that came in,

9    Sam said, I transferred from Alameda to FTX, secretly,

10   illegally.  He did that at Deltec.  Deltec had Alameda accounts

11   and they had FTX accounts and they were transferring between

12   them.  So I don't know how they could make this argument we're

13   just a local Bahamian bank.  You can't deposit a Bahamian

14   dollar.

15        So I haven't, A, seen any evidence that they are a

16   Bahamian bank, to start there.  I have seen evidence that they

17   are an international bank that probably handles more crypto in

18   the world than anybody else, and Mr. Chalopin is a billionaire.

19   So I get a little upset when somebody kind of leads us down

20   this road.

21        We want a deposition.  Let's get under oath what the

22   Deltec conglomerate is, what was Deltec's involvement, how did

23   they buy Farmington Bank.  These things -- we're not going to

24   be burdensome.  We will do it by Zoom.  There is something here

25   that is fishy.

1          THE COURT:  Look, Mr. Moskowitz, again, a lot of this

2     may be good and appropriate merits discovery, but, again, the

3     order is for limited jurisdictional discovery on the issue of

4     personal jurisdiction.

5          MR. MOSKOWITZ:  Absolutely, your Honor.

6          THE COURT:  Obviously, Judge Moore did not want full

7     merits discovery to go forward because he kept that stay in

8     place.

9          MR. MOSKOWITZ:  We are going to limit it just like we

10    did with the other defendants, your Honor.

11         THE COURT:  How are we going to get there?

12         MR. MOSKOWITZ:  We're going to ask them about -- OK.

13         THE COURT:  I understand, and it is somewhat

14    concerning, right, any time you enter an order that is doing

15    something that someone might be forced to violate the law of

16    where they live, and that is not something that is not

17    concerning.

18         I think the law is that that can be done and it is

19    appropriate to do it in certain circumstances, and regardless

20    of the case, I think that is done.  I think that Judge Moore

21    has just said they have to do discovery.  So I think my goal,

22    my role here is simply to figure out what the scope of that

23    discovery is.

24         MR. MOSKOWITZ:  As I've explained, we are going to ask

25    them about the corporate structure, about Deltec Asset

1   Management Group, Deltec International Group, Delchain, Deltec

2   Bank & Trust, how they each are related to each other, who

3   actually handled the FTX and Alameda accounts, are they a

4   Bahamian bank, are they a registered Bahamian bank, and then we

5   have events which we told them about that occurred in Miami.

6   We actually have --

7           THE COURT:  Let me stop you right there,

8   Mr. Moskowitz.

9           Let me ask Ms. Buchwald.  Corporate structure, who

10  handled the client, all that sort of stuff, it seems to me that

11  that is not client information, right?  That is not customer

12  information.  That is information about the bank.

13          MS. BUCHWALD:  Is this mic on?

14          THE COURT:  Yes.

15          MS. BUCHWALD:  OK.  With respect to the corporate

16  structure, I agree with you.

17          With respect to who handled the client, again, I'm not

18  a Bahamas lawyer nor am I a Bahamian lawyer, but I'm not a

19  Bahamas lawyer, and it depends on what the phrasing is and what

20  the questions are.  So where I don't want to lead folks are to

21  a situation in which we are saying no to every answer, because

22  you can't do that.

23          So with respect to corporate structure, I agree with

24  you that corporate structure is not an issue.  If that is what

25  they were limited to, we would be able to respond to that.

```
1          THE COURT:  OK.  Mr. Moskowitz, what I'm trying -- I

2   think you both see what I'm trying to do is, I'm trying to get

3   to someplace where there are things that -- I want to get you

4   what you need to address jurisdictional discovery and I want to

5   do as best I can without them having to run afoul of any

6   potential violations of Bahamian law.

7          MR. MOSKOWITZ:  Sure.

8          THE COURT:  We may not be able to accomplish that, but

9   there may be some things that we are in agreement are going to

10  be.

11         So I want to start and go there and see where we are

12  on that, and then we can go forward and see what else is

13  involved.

14         MR. MOSKOWITZ:  I think the seminal issue which we'll

15  ask is, are you a Bahamian bank, because the information we've

16  received is they're not.  I mean, that is a pretty basic

17  question, right.  You'd think in the last three weeks they

18  could have come back to us and said, Adam, the people that are

19  talking to you, they don't know what they're talking about.

20  Here are our records.  Here.  We are a small bank in the

21  Bahamas.  We haven't seen anything about that.  So that is the

22  first area.

23         Then we have news that they were in Miami.  Deltec

24  International Group, Delchain Limited and Realm Insurance, who

25  Deltec owns, they all did all of these seminars in Miami.  Why?
```

1  They said:  The event's a great opportunity to network with

2  potential clients and spread the word about the Deltec group of

3  customers and our wide range of services and benefits.

4          I could ask them about that.  That is not going to

5  violate any Bahamian law.

6          THE COURT:  OK.  So what we are talking about is --

7  let's go through it -- whether or not -- I guess what type of

8  institution it is, right?

9          MR. MOSKOWITZ:  Right.

10          THE COURT:  What the corporation is.  What type of

11  institution it is.

12          MR. MOSKOWITZ:  And then what role did these

13  subsidiaries play in the FTX events, right.

14          Maybe Realm Insurance, which offers crypto insurance,

15  had no involvement.  That's a pretty simple question.  They had

16  no contact with Sam or no contact with FTX.  But every one of

17  the PR, press releases that they put out said that they are a

18  global financial and services group.  It doesn't say they are a

19  local Bahamian bank.  How could a local Bahamian bank have $30

20  billion in Tether.  It is illogical.

21          So we are going to ask them all about what they did

22  for FTX.  We are not violating anybody else.  It just doesn't

23  really make sense.  I mean, FTX has already -- Sam's already

24  been convicted of fraud.  He committed fraud.  Their concern is

25  that the Bahamas authorities -- they're not in the Bahamas

1    liquidation.  There was a liquidator there.  He didn't involve

2    Deltec Bank.  I may ask them about that.  We can ask them about

3    it.  They are not in that.  They weren't brought into the

4    receivership.  They have nothing to do with it because, our

5    opinion, it is an international bank.  It is not Bahamas.

6         So we are just going to ask all of these questions and

7    see the documents from them about their corporate structure and

8    the relationship between these four Deltec subsidiaries, and we

9    could narrow this dep to four hours too.  That shouldn't take a

10   long time.

11        THE COURT:  Let me see where we are.

12        MR. MOSKOWITZ:  Thank you.

13        THE COURT:  No, no.  I want to ask you some questions

14   about this because, again, I think -- and the issues I am going

15   to address now are really going to be the scope of the

16   discovery.

17        Ms. Buchwald, I think, as I've said, I think the

18   motion to quash and for protective order, I am going to deny.

19   I think that you need to take to Judge Moore on a motion for

20   reconsideration.  So that is going to be denied.

21        Then I think the issue is -- I take it under the

22   cases, Societe Aerospatiale, right?

23        MS. BUCHWALD:  Your guess is as good as mine.

24        THE COURT:  In that case, I think the considerations

25   of what discovery is and I think a court is required to be even

1    more stringent on discovery dealing with a foreign national.

2    So I do want to make sure that this is very tightly limited to

3    the personal jurisdictions.

4         Again, I grant you that there are merits issues that

5    are tied into that, but I don't want to go forward and have

6    situations where this isn't going forward because there is some

7    unresolved issue as to what has to be answered and what doesn't

8    have to be answered and what has to be produced and what

9    doesn't have to be produced.

10        So where are we?  Let's start with the production.

11   Documents.  What are the documents that you need?  Because I

12   think a lot of the documents that we are talking about are bank

13   operational documents, internal, how they handle accounts and

14   how they do this.  I don't see how those deal with personal

15   jurisdiction except in the most tangential ways.

16        MR. MOSKOWITZ:  Right.  At this stage, your Honor --

17   again, we are just asking what we need -- give us the

18   contracts, the agreements you set up with FTX, Sam, and all of

19   his companies and subsidiaries.  Show us the contracts.

20        The contracts, your Honor, actually list the names of

21   the entities, and you saw there's six different Deltec

22   entities.  So who is the entity that signed the agreements with

23   them, right.

24        THE COURT:  Just so we're clear, we are not talking

25   about regular depository agreements, right.

```
1                MR. MOSKOWITZ:  Not at all.  FTX.  We are just saying

2       FTX.  We are not saying somebody who just put their --

3                THE COURT:  No, no.

4                MR. MOSKOWITZ:  -- savings account.

5                THE COURT:  I'm saying, you're not just saying a bank

6       depository account that FTX had.  You're talking about some --

7                MR. MOSKOWITZ:  Global master agreement whereby people

8       could send in money directly to FTX.

9                I don't want to know the customer's name, I don't want

10      to know any privacy concerns of that person, but they must have

11      had agreements with FTX -- this is what we're going to do for

12      you; these are the services we are going to provide for you.

13               So much has been disclosed.  I mean, what hasn't been

14      disclosed about the relationship with FTX that the receiver

15      doesn't have.  The receiver has every page of materials from

16      the FTX account.  So it is kind of silly.  I mean, she didn't

17      address any of that.

18               The receiver right now is sitting on the FTX servers.

19      He has every email, every bank statement, every everything.

20      We've talked to the insiders who told us all about them.  So it

21      is sort of like -- it is not really a true world to say we're

22      nervous.  There is no way the Bahamas is going to come after

23      them because it's all been disclosed already to the receiver.

24               So what we are going to ask is about the different

25      entities of Deltec, the relationship to them.  We'd like their
```

1    documents in terms of any agreements which they entered into

2    with FTX regarding what they would do for FTX, and then we'll

3    ask them about these other entities, the Deltec International

4    Group, these other entities, contacts they've had in Miami.  We

5    know they had various events.  We'll ask them about that.  And

6    then Farmington Bank.  They bought a bank in Seattle,

7    Washington.  Mr. Chalopin bought it for $3 million.  He turned

8    around and sold it with Sam.  I mean, real questionable

9    allegations there.  Then the insider at FTX got a special

10   kickback.  There is stuff there that have nothing to do with

11   Bahamas Bankrupt Secrecy Act.

12          So Farmington Bank in Seattle, we are going to ask a

13   little bit about that -- how did you situate with that, how did

14   you sell it, buy it, whatever -- and that's it.  We will limit

15   this to four hours by Zoom.

16          MS. BUCHWALD:  Your Honor, if I may, briefly.

17          THE COURT:  You may.

18          MS. BUCHWALD:  So I'm not going to respond point by

19   point to some of the substantive things that were said there.

20          In large part what I'll say is, when things don't show

21   up in a complaint and you can't plead them consistent with Rule

22   11 but then you say them as if they're true, it is pretty

23   problematic.

24          In any event, with respect to kind of the broader

25   picture of how we move forward.  Number one is, again, I'm not

1    a Bahamas lawyer so I can't say that the categories that are

2    here are entirely fine.  What I would say is as a matter of

3    logic things like the banking license, there should be a way

4    through with the banking license.  The corporate structure,

5    there should be a way through.

6          When you go beyond that, what did every entity in a

7    corporate group have, what are their contacts and what did they

8    do, you're dealing with an issue of possession, custody, and

9    control.  You have a group that has different entities, that

10   has different businesses, and the idea that somehow that the

11   regulated bank has all of this information, I don't know that

12   they do.

13         What I would say is this.  I am very concerned that if

14   a deposition is ordered, we are going to be in a world where

15   every single question asks about customer information, and I'm

16   going to be there directing a witness not to respond to every

17   question.  No one wants to be in that position.

18         If there is a way that we can frame this in terms of

19   interrogatories or in terms of a written deposition, which I

20   know none of us do but it is there under the federal rules, so

21   that we can respond, and then if there is something else to

22   talk about, we can talk about it.  That might be a way through

23   this that doesn't raise all of the tricky, thorny issues with

24   respect to potential criminal liability here.

25         THE COURT:  OK.  Mr. Moskowitz, my concern, and I

1    think what I'm hearing -- and, Ms. Buchwald, you tell me -- is

2    I guess the party that has been served, is it Deltec Bank?

3         MS. BUCHWALD:  Deltec Bank & Trust was served with the

4    Florida complaint, not the Washington complaint, but yes.

5         THE COURT:  That that is an entity that may not have

6    all this information because of where it falls within, perhaps,

7    the structure that you have described.  I don't know, but it

8    does sound to me like I'm hearing something to that effect when

9    I hear the regulated bank.

10        MR. MOSKOWITZ:  I could say this, your Honor.

11   Mr. Chalopin said -- and she can correct me if I'm wrong -- I

12   run Deltec Bank and I run all the other Deltec entities.

13   Mr. Chalopin.

14        THE COURT:  That may be a whole different issue as to

15   Mr. Chalopin because he may have those answers.  OK.

16        This is what I am going to do at this point.

17   Obviously, it is what is in their possession, custody, or

18   control, as in all cases, but the parties here will have to

19   turn over all contracts and agreements that they and other

20   entities, other Deltec entities that they -- of other Deltec

21   entities which are in their custody, possession, and control

22   that are with FTX or one of the FTX entities.

23        Now, look, will also have to produce documents

24   regarding the banking license and corporate structure, and I

25   think that is all we were talking about in terms of documents,

```
 1      is that right?
 2                  MR. MOSKOWITZ:  Yes, your Honor.
 3                  THE COURT:  What was it in terms of Farmington Bank?
 4                  MR. MOSKOWITZ:  Whatever documents or materials they
 5      have about their purchase and sale to FTX of the bank, because
 6      FTX then used Farmington Bank as another conduit of their
 7      funds.
 8                  THE COURT:  Who is --
 9                  MS. BUCHWALD:  So to be clear, your Honor, Deltec
10      didn't purchase Farmington Bank.  Farmington Bank also doesn't
11      have a jurisdictional defense that's live.
12                  MR. MOSKOWITZ:  Your Honor, it's OK.  Again, let's try
13      to cut this.  In our deposition, we could ask them, maybe we
14      will briefly ask them a question about it, but we won't go into
15      any of the customers.  We will just ask them briefly about how
16      that was handled.  If there is a question, counsel can tell us,
17      and we will, of course, be very careful not to violate any
18      customer agreements.
19                  THE COURT:  OK.
20                  MR. MOSKOWITZ:  OK.
21                  THE COURT:  So there will be nothing about customers
22      or customer agreements or customer information.
23                  MR. MOSKOWITZ:  Besides FTX.  Right.
24                  THE COURT:  Besides the agreements with FTX.
25                  MR. MOSKOWITZ:  Yes, your Honor.
```

```
1          THE COURT:  Ms. Buchwald, I think in terms of the
2    personal jurisdiction and the issues that Judge Moore has
3    identified that that is probably about as narrow as we can make
4    it at this point.
5          MS. BUCHWALD:  Understood, your Honor.  Maybe I can
6    take -- I know you said on the protective order, on the motion
7    to quash, you weren't willing to grant that.  The one request I
8    might have is if you can craft a protective order that says, in
9    effect, what Mr. Moskowitz said, which is, And plaintiffs will
10   not ask about customer information, I think that would go a
11   long way to giving my clients some comfort here.
12         THE COURT:  Mr. Moskowitz, if someone from the Bahamas
13   comes to -- I can understand that.  If they want something to
14   show why they are doing something required by a court order and
15   not something else and that they were doing something to
16   protect themselves, and you've represented that you are not
17   going to ask --
18         MR. MOSKOWITZ:  It is just FTX and Alameda.  So as
19   long as those two customers are in there, we are not going to
20   be asking about Mr. Bahamas or anyone else.
21         THE COURT:  What you are asking about is the
22   agreements between Deltec and --
23         MR. MOSKOWITZ:  Alameda and FTX.  Right.  We will get
24   to everything later down the road, but for purposes of this
25   battle, it will just be the agreements between Alameda, FTX,
```

1    and Deltec, figure out who those companies were that were

2    involved in those agreements.  We will get past jurisdiction.

3    Then we will deal with the motion to dismiss.

4              THE COURT:  OK.  What I will do, then, is I am going

5    to grant a limited protective order that the discovery and the

6    deposition shall not include questioning about Deltec customers

7    and Deltec customer information other than the agreements

8    between Deltec and Alameda.

9              MR. MOSKOWITZ:  Alameda and FTX.

10             THE COURT:  I'm sorry.

11             MR. MOSKOWITZ:  Right.  Alameda and FTX and any of

12   their related parties.  It could be FTX U.S.  It could be an

13   FTX or Alameda company.  I don't think there's going to be any

14   confusion there.

15             THE COURT:  Ms. Buchwald, that should give your client

16   some cover.  I understand that you don't want any of it to go

17   forward, but I am going to order that it go forward.

18             So under the circumstances, is there anything else

19   that you think that it needs to be worded in some way to give

20   them cover in the Bahamas?  I understand you are not a Bahamian

21   lawyer.  None of us are.

22             MS. BUCHWALD:  No, and what I can say is this.  What

23   continues to give me pause is if FTX and FTX-related entities

24   had accounts.  Again, you read the statute and questions about

25   the assets and the like are kind of squarely within what is

1    prohibited from being shared, and I take it what they're saying

2    is we want to understand the contractual relationship, and

3    that's what you are limiting it to.

4          THE COURT:  Let me ask that too, Mr. Moskowitz,

5    because I understand your concern.  I understand you'd like to

6    do it.

7          In terms of personal jurisdiction, what the assets

8    are, what they are depositing, those amounts, how does that go

9    to jurisdiction?  Isn't the jurisdictional issue really about

10   what the agreements are and how they're transacting business

11   rather than the amounts in which they're doing it or who

12   individual clients and depositors and individual loans and that

13   sort of thing?

14         MR. MOSKOWITZ:  Yes.  I'm trying to do it in the dark

15   because I don't know what is there.

16         Certainly what they did is relevant to, say, were they

17   a coconspirator.  So I need to know not only what the contract

18   said, but what did they actually do.  Did they do $30 billion a

19   week for FTX in money going back and forth.  That may actually

20   go towards furthering the conspiracy, which is an act -- I get

21   it.  It is on the edge side of it.

22         THE COURT:  You're really getting into merits there.

23   You're not really getting into the jurisdictional issue because

24   if you have a conspiracy, you have a conspiracy whether it is

25   small, whether it is big --

```
 1                MR. MOSKOWITZ:  Fair enough.

 2                THE COURT:  -- if you contributed.

 3                MR. MOSKOWITZ:  We will agree to just the agreements,

 4     contracts with FTX, Alameda, and their related companies.

 5     That's it.  That will be enough for this hurdle.

 6                THE COURT:  OK.  Then in terms of the production, it

 7     will be those documents that we've already discussed.

 8                MR. MOSKOWITZ:  Right.  And then one four-hour Zoom

 9     deposition?

10                THE COURT:  One four-hour Zoom deposition.  That will

11     be -- we are just talking about one.

12                MR. MOSKOWITZ:  One, yes.  One, and it is a corporate

13     representative.  So somebody will get prepared and we will

14     see -- obviously, your Honor can see if we ask the person and

15     he says I have no idea what Deltec whatever is.  I mean, he or

16     she has to do some preparation.

17                I'm telling them what we are going to ask them.  I

18     have given them the names of these entities so they can sit

19     down with that person and try to say, OK, Mr. Chalopin would

20     get you on the phone; what is the relationship of these

21     companies.  Unless they're going to put Mr. Chalopin up.  I

22     would think he would be the most knowledgeable person.

23                THE COURT:  OK.

24                MR. MOSKOWITZ:  Thank you, your Honor.

25                THE COURT:  All right.  Thank you.
```

1          MS. UPADHYAYA:  Good afternoon, your Honor.  Vani

2    Upadhyaya, with Morrison Cohen, here for Sino Global Capital

3    Holdings, LLC and Sino Global Capital Limited.

4          I'll keep it brief.  Our position as to Sino Global

5    Capital Holdings is that it will absolutely produce limited

6    documents and information in accordance with the order, but

7    like other defendants have pointed out, 51 document requests,

8    25 requests for admission, eight interrogatories and a

9    deposition is completely overbroad and goes beyond the scope of

10   Judge Moore's order here.

11         If there is a way to limit it to issues pertaining to

12   personal jurisdiction, we can do that, but we think that a

13   deposition at this point would also just be duplicative of

14   information that could be elicited in interrogatories.

15         As for Sino Global Capital Limited, that entity is in

16   a different position.  That entity has not been served with

17   process in this action.  It has not moved to dismiss.

18   Plaintiffs' motion for jurisdictional discovery did not include

19   it, and it was not included in Judge Moore's order.

20         We had a meet and confer with plaintiffs where we

21   brought this up, and plaintiffs agreed to hold discovery as to

22   Limited in abeyance, but hours later we got a motion to compel

23   that seemingly includes it.  So we think that at this stage it

24   is premature to have any jurisdictional discovery as to Sino

25   Global Capital Limited and we would ask that the court agree

1   with that.

2            THE COURT:  OK.  Let me start off, Mr. Moskowitz, my

3   impression from reading everything is that you're not going

4   forward on Sino Global Capital Limited at this time anyway,

5   correct?

6            MR. MOSKOWITZ:  No.  We just want one deposition.

7            THE COURT:  OK.  So we are only talking about Sino

8   Global Capital Holdings.

9            I guess we are back to where we are.  Remind me your

10  name.  I'm so sorry.

11           MS. UPADHYAYA:  Vani Upadhyaya.

12           THE COURT:  Upadhyaya.

13           MS. UPADHYAYA:  Yes.

14           THE COURT:  OK.  You said your client is willing to

15  produce.

16           MS. UPADHYAYA:  Limited documents on corporate

17  structure and answer interrogatories pertaining to activities

18  in Florida and California.  We are not sure what beyond that

19  would be elicited in a deposition that wouldn't be duplicative.

20           THE COURT:  OK.  Mr. Moskowitz, I'm back to you.  What

21  is it that you need on personal jurisdiction?

22           MR. MOSKOWITZ:  Yes.  Your Honor, Sino Global Capital

23  has a partnership with FTX.  They are more than what we have

24  been talking about.  They actually had a fund which they

25  created working with FTX.

```
1              THE COURT:  OK.
2              MR. MOSKOWITZ:  So we would absolutely like to ask
3     them for personal jurisdiction deposition questions.  That's
4     all.
5              It is a reasonable deposition, four hours, about their
6     structure, about where they're based, about how they worked
7     with FTX, how they set up their own fund with FTX.  In fact,
8     when we were searching our records, we found that Sino Global
9     Capital Management has an office in Miami, 111 Brickell Avenue,
10    tenth floor.  That was never --
11             THE COURT:  That is Sino Capital Holdings?
12             MR. MOSKOWITZ:  No, this is Management, LLC.
13             So we are going to ask the one deposition, the
14    Holdings, can you tell us about what you know about Limited,
15    what you know about Management.  I mean, all of these hedge
16    funds.  They create tons of different entities.  We'd like to
17    know what they did in their Miami office.  So that would be
18    something we would ask in the deposition.
19             THE COURT:  OK.  Ms. --
20             MR. MOSKOWITZ:  It is one guy.  I mean, there is one
21    guy who owns all of these Sino funds.  Matthew Graham.  So it
22    is the same guy.
23             I don't want to go back to what we did with Deltec,
24    but I just want to make sure.  Mr. Chalopin is a defendant.  He
25    is an individual defendant in this case.  So I just wanted to
```

```
 1   clarify, if he is not going to be the corporate rep, we do want
 2   to depose Mr. Chalopin.  He is named.  It is not just Deltec
 3   Bank alone.
 4              THE COURT:  OK.
 5              MR. MOSKOWITZ:  We will get to that later.
 6              THE COURT:  We will come back to this because you did
 7   tell me it was one.  I asked you and you told me it was one
 8   deposition.
 9              MR. MOSKOWITZ:  It is one deposition of Deltec, but
10   Mr. Chalopin is also a named defendant.
11              THE COURT:  All right.  OK.  We were addressing both
12   parties, but OK.
13              MR. MOSKOWITZ:  So one deposition here --
14              THE COURT:  Is Ms. Buchwald still here?
15              MR. MOSKOWITZ:  -- of Sino Holdings.
16              THE COURT:  All right.  OK.  Let's address -- we will
17   come back to that.
18              MR. MOSKOWITZ:  Thank you.
19              THE COURT:  Let's stay on Sino Global for right now.
20              MS. UPADHYAYA:  Your Honor, there are absolutely no
21   allegations in the complaint as to Sino Global Capital
22   Holdings, LLC.  All relationships to FTX and potential
23   investment into FTX was allegedly made by Sino Global Capital
24   Limited, an entity that hasn't been served.
25              Now, there are questions and discovery sought about
```

1    other entities, Capital Management.  I think that is completely

2    beyond the scope of jurisdictional discovery.

3              MR. MOSKOWITZ:  My point, your Honor, how would you

4    know?  How would you know what Sino entity to specifically name

5    when you bring a lawsuit.  Say I relied on Sino because I know

6    Matthew and I read his blogs.  How would I know the exact

7    technical name of the company to bring.  So that is why this

8    deposition says, tell us, what do the different entities do,

9    who signed the agreement.

10             THE COURT:  I understand where you're going,

11   Mr. Moskowitz.  Again, we are on limited jurisdictional

12   discovery.  This isn't about figuring out who you can sue; this

13   is about establishing whether you have jurisdiction over the

14   parties that you have named.

15             MR. MOSKOWITZ:  Right.

16             THE COURT:  I think what Judge Moore found here,

17   right, the district that he identified is whether there are

18   allegations of civil conspiracy on behalf of Sino Global

19   Capital and whether they can be imputed to Sino Global Capital

20   Holdings, Inc.

21             MR. MOSKOWITZ:  Right.

22             THE COURT:  So the issue is, to the extent -- and I

23   don't know if there is any basis for saying that any of

24   those -- because of what is involved in those other entities,

25   does that show a basis for imputing what Sino Global Capital

1    did to Sino Global Capital Holdings.

2            MR. MOSKOWITZ:  We're trying to do this as quickly as

3    possible.  If they want us to sue them again later.

4            A simple question for three minutes, what is your

5    management company, what do you do in the Florida office, I

6    don't see how that's burdensome.  I'm just trying to make it

7    quick so we can get to the bottom line of who is the proper

8    defendant here.  I get that.

9            Your Honor, we told you there are things we are going

10   to really need.  We are happy to limit this deposition however

11   you'd like.

12           MS. UPADHYAYA:  Respectfully, that information could

13   be answered in interrogatories and by producing corporate

14   structure documents.

15           THE COURT:  Well, let me say, first of all, I think

16   they are entitled to a deposition.  That is not the issue.

17           The issue might be the scope of the deposition, but

18   there isn't anything about Judge Moore's order, I think -- and

19   I don't know if you're the ones that argued it or not because,

20   frankly, between all the different parties, who argued what,

21   but I think depositions fall within the scope of jurisdictional

22   discovery.  He certainly didn't exclude it.  Even though it

23   wasn't addressed, I did note that it is actually in the request

24   for the lifting of the jurisdictional, that there be a

25   deposition as to each party.

```
1              MS. UPADHYAYA:  Understood.

2              THE COURT:  That was requested.  So I think that is

3    appropriate.  They are talking about a four-hour deposition.

4    So, again, I think that is appropriate.

5              In terms of the remaining discovery, what are we

6    talking about?  What else is it on the motion to compel and the

7    response?  What are we looking at?  Again, I want to resolve

8    this.  Are we talking about the same thing, the agreements?

9              MR. MOSKOWITZ:  I think the exact same words we used

10   for Temasek I think would be fine, the same wording.

11             THE COURT:  I guess that would be any contracts or

12   agreements between Sino Global Capital Holdings and any of the

13   FTX-related entities.

14             MR. MOSKOWITZ:  And then the only difference here we

15   would add is, there was a liquid value fund that was set up

16   where Sino Global Capital is a partner of FTX.  We'd just like

17   the agreement for this because this would clearly show

18   jurisdiction.  I don't know where this took place, where it was

19   for.

20             THE COURT:  All right.  Wouldn't that fall within the

21   scope of this, an agreement between Sino Global Capital

22   Holdings and an FTX-related entity?

23             MR. MOSKOWITZ:  Sure.  It just says Sino Global

24   Capital.  So I didn't want to have any issue.  It doesn't say

25   Holdings.  I guess Sino Holdings and their subsidiaries.
```

```
1              MS. UPADHYAYA:  Just to clarify.  You're not
2    proceeding on the basis of Sino Global Capital Limited,
3    correct?
4              MR. MOSKOWITZ:  That's what we're going back to, yes.
5    I'm showing it right here.
6              THE COURT:  That is Sino Global Capital Holdings
7    Limited.
8              MS. UPADHYAYA:  I think he's saying that it is Sino
9    Global Capital Limited, the entity that they said they were not
10   going forward on.
11             THE COURT:  You're saying that that is a -- I'm sorry.
12   Sino Global Capital Limited is the party to that agreement?
13             MR. MOSKOWITZ:  This just says Sino Global Capital.
14             MS. UPADHYAYA:  If it is Holdings, then that's --
15             THE COURT:  OK.
16             MR. MOSKOWITZ:  We wanted to make it easier so we said
17   just one deposition, one four-hour deposition.  That was the
18   main purpose of that.  But asking that person questions about
19   Sino Global Capital, whatever your Honor's pleasure.
20             THE COURT:  I understand.  I think they do get to ask
21   questions of the Sino Global Capital Holdings representative as
22   to the relationship between Sino Global Capital Limited and
23   Sino Global because that is what they talked about, what can be
24   imputed from Sino Global Capital to Sino Global Capital
25   Holdings, right?
```

```
1            MS. UPADHYAYA:  Understood.

2            THE COURT:  In terms of the deposition, that's fine.

3    My question was in terms of the document production, what are

4    we looking at?

5            MR. MOSKOWITZ:  What can they produce?  Again, I want

6    to be reasonable.  We don't want to put them out.  Could they

7    produce to us any and all agreements between Sino Global

8    Limited -- sorry -- Sino Global Holdings, Inc., and/or any of

9    their subsidiaries, entities with FTX or Alameda.

10           MS. UPADHYAYA:  If it is limited to Holdings, yes.

11           THE COURT:  So agreements and contracts between Sino

12   Global Capital Holdings and --

13           MR. MOSKOWITZ:  I'd like their subsidiaries and their

14   related parties, including Sino Global Capital.  I just want to

15   see the agreement.  So if it is in their possession, custody,

16   or control.  If it is not, it is not.  But if he or she could

17   make a phone call and say, hey, can you send me the contract

18   between Sino Global Capital and FTX, that is within their

19   possession, custody, or control.

20           THE COURT:  OK.  Ms. Upadhyaya, I might not normally

21   think that, but given the issue here that was identified by

22   Judge Moore also goes to the fact that the district that he

23   sees is what could be imputed to Sino Global Capital Holdings

24   from Sino Global Capital Limited, I am inclined to say that

25   that would include the subsidiaries, including, if it is a
```

```
1    subsidiary, Sino Global Capital, Inc. or if -- Sino Global

2    Capital Limited, right.  If that is within the custody,

3    control, or it is a subsidiary of Sino Global Capital Holdings,

4    Inc., and interest may not be --

5              MS. UPADHYAYA:  Understood.

6              THE COURT:  -- I don't know.  But if it is a

7    subsidiary or it has possession of that information dealing

8    with Sino Global Capital Limited, it will also produce those

9    documents.

10             MS. UPADHYAYA:  Understood.

11             THE COURT:  So it is basically agreements and

12   contracts between Sino Global Capital Holdings and its

13   subsidiaries, including, if applicable, Sino Global Capital

14   Limited, and that would be their agreements, contracts with

15   FTX-related entities and Alameda.

16             OK.  Anything else?

17             MR. MOSKOWITZ:  No, your Honor.

18             THE COURT:  No.

19             MS. UPADHYAYA:  Thank you.

20             THE COURT:  OK.  Thank you.

21             Let's go ahead and address --

22             MR. MOSKOWITZ:  I just wanted to be careful, your

23   Honor, because it appeared to me -- I had thought he was going

24   to be the corporate rep the whole time.  So I figured we could

25   just do one, four hours, it's done.
```

1    The feeling that I got is that it may not be him, and

2    he is a personally-named defendant in this case.  If he is not

3    going to be the corporate rep, I'd like to take his deposition

4    for three hours on those exact same issues.

5    MS. BUCHWALD:  Again, I think given the limited scope

6    it is probably unnecessary.  I think we can try to work through

7    this, again, subject to all of the issues that I've been

8    explaining about the potential risks that everybody is trying

9    to navigate.

10    THE COURT:  OK.  Let's do this.  It will be the same

11    thing I said before.  It will be, if he is not the corporate

12    rep or he won't be testifying as the corporate rep, then an

13    additional three hours of deposition, they get to depose

14    Mr. Chalopin for three hours on the same issues, basically.

15    MR. MOSKOWITZ:  If you could just give us a week's

16    notice, so we know when it is.

17    THE COURT:  Yes.

18    If you-all work something out that it can just be done

19    once, that's all fine.

20    MS. BUCHWALD:  Understood.

21    MR. MOSKOWITZ:  We will try to do that.

22    THE COURT:  If there is something that you need -- the

23    discovery order here is going to be a summary order.  It is

24    just going to refer back to the hearing for most of the stuff,

25    but I will enter a separate written protective order dealing

1    with what we talked about in terms of the deposition so that if

2    anyone needs to just show any Bahamian authorities why they

3    attended a deposition and answered these questions, there is at

4    least something of record that someone can show.

5              MS. BUCHWALD:  Thank you, your Honor.

6              MR. MOSKOWITZ:  Understood.  Thank you, your Honor.

7              THE COURT:  OK.  Do we have any other party here?

8              MR. MOSKOWITZ:  There is one more.  Mr. Singh --

9              THE COURT:  Mr. Singh I have.

10             MR. MOSKOWITZ:  -- who is a social influencer.

11             THE COURT:  Yes.

12             MR. MOSKOWITZ:  I don't think he has a lawyer here.

13             THE COURT:  OK.  Have you had any discussions with --

14             A VOICE:  I think Michael Cummings might be on the

15   phone.

16             MR. MOSKOWITZ:  Maybe Mr. Cummings is on the phone,

17   but I know your Honor said you can't argue if you are

18   telephonically.

19             THE COURT:  Is there any counsel for Mr. Singh on the

20   phone?

21             MR. CUMMINGS:  Yes.  This is Michael Cummings.

22             Can you hear me, your Honor?

23             THE COURT:  I can, Mr. Cummings.

24             MR. CUMMINGS:  Yes.  I wasn't prepared to argue,

25   though we are pretty much in the same boat, I would say, as

1    Creators earlier and would pretty much echo their arguments.

2          We thought the scope was going into jurisdictional

3    discovery way beyond, jurisdictional into merits.  Mr. Singh

4    has practically no contacts with Florida whatsoever.

5          We disagree, to the extent that any discussion between

6    the internet necessarily includes Florida, we don't agree with.

7    So we would resist that.

8          As far as the scope that your Honor ordered with

9    respect to Creators, we understand and would abide by that.

10          THE COURT:  OK.  Mr. Moskowitz, that works for you?

11          MR. MOSKOWITZ:  Of course.

12          THE COURT:  Then in terms of what I ordered earlier in

13    terms of the discovery to be produced by Creators Choice will

14    be the same order as well as to Mr. Jaspreet Singh.

15          MR. CUMMINGS:  Understood, your Honor.

16          MR. MOSKOWITZ:  Thank you, your Honor.

17          THE COURT:  Is there anything else we need to address

18    then here today?

19          MR. MOSKOWITZ:  I don't think so, your Honor.

20          THE COURT:  Anything else from any of the defendants?

21          OK.  All right.  Thank you very much.

22          MR. MOSKOWITZ:  Thank you so much, your Honor.

23          THE COURT:  I hope it all goes smoothly for you-all.

24          (Adjourned)

25

C E R T I F I C A T E


        I hereby certify that the foregoing is an accurate

transcription to the best of my ability of the digital audio

recording in the above-entitled matter.


January 19, 2024          s/ Joanne Mancari
                          Joanne Mancari, RPR, CRR, CSR
                          Court Reporter
                          jemancari@gmail.com

# Exhibit 2

ERIKA KULLBERG  30(b)(6)                    February 01, 2024
IN RE: FTX CRYPTOCURRENCY EXCHANGE                        69

```
 1   Asked and answered.
 2           THE WITNESS:  As to a time
 3   period?
 4           (BY ATTORNEY KAYE):
 5      Q.  No, like a manner of becoming
 6   aware of it?
 7      A.  I don't recall.
 8      Q.  Did you ever see any E-mails
 9   about the lawsuit?
10      A.  I have seen E-mails about the
11   lawsuit.
12      Q.  What E-mails do you remember
13   seeing about this lawsuit?
14      A.  I remember seeing an E-mail
15   from someone at your law firm.
16      Q.  What was that E-mail?
17      A.  I don't recall what it said.
18      Q.  Do you remember to what E-mail
19   address you received that at?
20      A.  I don't know.
21      Q.  You have
22   Erika@CreatorsAgency.CO.  Is that one
23   of your E-mails?
24      A.  Yes.
25      Q.  Erika@ErikaKullberg.com?
```



ERIKA KULLBERG  30(b)(6)                    February 01, 2024
IN RE: FTX CRYPTOCURRENCY EXCHANGE                        83

```
 1   watched the deposition I knew that

 2   they lived together all of dental

 3   school.

 4             (BY ATTORNEY KAYE):

 5        Q.  And during that time period,

 6   you had met her in person how many

 7   times about?

 8        A.  Rough estimate, less than 5.

 9        Q.  For all of those times, were

10   all of those times when like at the

11   apartment that they lived in

12   together?

13        A.  No, I don't believe so.

14        Q.  Where else?

15        A.  I think we have been out to at

16   least one restaurant.

17        Q.  Also in New York?

18        A.  Yes.

19        Q.  You said before that you

20   received mail at your sister's address

21   because you did not live in the United

22   States; right?

23        A.  Yes.

24        Q.  What kind of mail,

25   generally?
```



ERIKA KULLBERG  30(b)(6)                          February 01, 2024
IN RE: FTX CRYPTOCURRENCY EXCHANGE                              84

```
 1        A.  I don't know specifically what
 2   I sent her.  I sent mail to my
 3   sister's address.
 4        Q.  Mail from you to your sister's
 5   address?  Is that what you're
 6   saying?
 7        A.  No, no.  I had mail sent to my
 8   sister's address.
 9        Q.  For the 4 years that she and
10   Arzu lived together, they lived at 2
11   locations; right?
12        A.  I'm not entirely sure on that
13   one.
14        Q.  If that is what Arzu testified
15   to, you have no reason to dispute
16   that?
17        A.  If that is what she said then,
18   yes.  I have no reason to dispute
19   that.
20        Q.  Would you have mail sent to
21   any address that your sister lived at
22   during those 4 years?
23        A.  Yes.
24        Q.  And is it just for any like US
25   based mail?  Or is just all mail in
```



ERIKA KULLBERG  30(b)(6)                    February 01, 2024
IN RE: FTX CRYPTOCURRENCY EXCHANGE                      102

```
 1   download this document?
 2           THE WITNESS:  No, my tech
 3   issue it's not working, but I saw it
 4   through him scrolling.  Thank you.
 5           (BY ATTORNEY KAYE):
 6       Q.  Okay.  So why did you use that
 7   address?
 8       A.  I used that address because I
 9   don't have an address in the US.
10       Q.  Okay.  When you say in the US,
11   you're talking about the lower 48,
12   continental US?
13       A.  Sorry.  I don't know what that
14   means.
15       Q.  I mean, there is the lower 48.
16   Which is what we call the continental
17   US.  And then there is also Alaska.
18   There is Hawaii.  There is US
19   territories.  There is American
20   Embassies.  There is Naval bases, Air
21   Force bases, Army bases.  All of those
22   are technically US territories.  US
23   addresses where you can get US mail
24   there.
25           So my simple question is, when
```



ERIKA KULLBERG  30(b)(6)                    February 01, 2024
IN RE: FTX CRYPTOCURRENCY EXCHANGE                        133

```
 1   from Eileen.
 2        Q.  How did she learning anything
 3   from Carlos?
 4        A.  I don't know.
 5        Q.  Do you know who Carlos is?
 6        A.  I don't know Carlos, but they
 7   have told -- Eileen or Arzu or both
 8   have said that he was a doorman.
 9        Q.  Do you know if he was there
10   the day of this alleged service?
11        A.  I was not in New York.  I do
12   not know.
13        Q.  Was Arzu's declaration your
14   idea?
15            ATTORNEY ADAMS:  Objection,
16   instruct her not to answer if it calls
17   for Attorney/Client communication.
18            THE WITNESS:  That would call
19   for Attorney/Client communication.
20            (BY ATTORNEY KAYE):
21        Q.  I mean that's an answer.  Wow.
22   When you asked Arzu whose idea was it
23   for the declaration, he said -- and
24   Barbara, you can give me the page
25   number, but it's lines 13 through 15.
```



# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:
**FTX Cryptocurrency Exchange Collapse Litigation**

_____

This document relates to:

Promoter Defendants

*Garrison, et al. v. Kevin Paffrath, et al.,* S.D. Fla. Case
No. 23-cv-21023

_____/

**DECLARATION OF MUSAB NASSAR**

I, Musab Nassar, declare and state as follows:

1.      This declaration is based on my personal knowledge, unless otherwise stated, and if called as a witness I could and would testify competently to the facts stated herein.

2.      On April 6, 2023, I went to the following location to complete service on Erika Kullberg: 40 Waterside Plaza, New York, NY 10010. Attached as **Exhibit A** is the return of service I executed after completing that service.

3.      While inside the entrance lobby to the building on April 6, 2023 I spoke to the doorman at the lobby, consistent with my affidavit of service. The picture attached as **Exhibit B** is a true and accurate copy of the picture I took at that time of the doorman who I spoke with. He placed a call when I told him I was there to serve papers (to apartment 11D on the building's phone system), and then refused me further access to the building to effect service. Under New York law, when the doorman refuses entry to the building, I am authorized to leave the documents with the doorman. I did this, took his picture, and left, having effected service of process in accordance with New York law.

4.      On January 29, 2024, I returned to the same location: 40 Waterside Plaza, New York, NY 10010. The pictures attached as **Exhibit C** are true and accurate copies of the pictures I took on January 29, 2024, while I was standing outside of the building.

5.     Attached as **Exhibit D** are true and accurate copies of the pictures I took on January 29, 2024, while I was inside of the building located at the 40 Waterside Plaza address.

6.     While inside the building on January 29, 2024, I approached the doorman at the lobby, who told me his name was Juan. I showed him the picture attached here as Exhibit B, and Juan advised that the individual in the photograph is a current employee at this location who works as a doorman. Juan did not recall his name.

7.     Juan also advised that the company who employs the doormen for this location also employs the doormen for other buildings located at the plaza, such as, for example, 35 Waterside Plaza, York, NY 10010.

8.     Juan further advised that the doormen are all rotated amongst the buildings as needed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on January 30, 2024 in New York, NY.

By _____
Musab Nassar

# Exhibit A

## RETURN OF SERVICE
### UNITED STATES DISTRICT COURT
### SOUTHERN District of Florida

Case Number: 1:23-CV-21023-CMA

Plaintiff: **EDWIN GARRISON, ET AL., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED**
vs.
Defendant: **KEVIN PAFFRATH, ET AL.**

For: THE MOSKOWITZ LAW FIRM, PLLC

Received by P.I. SERVICES on the 24th day of March, 2023 at 12:29 pm to be served on **ERIKA KULLBERG, 40 Waterside Plz, Apt 11D, NEW YORK, NY 10010**. I, ___MUSAB NASSAR___, do hereby affirm that on the __6__ day of __APRIL__, 20_23_ at _07:40P_.m., executed service by delivering a true copy of the **SUMMONS AND COMPLAINT (21 DAYS)** in accordance with state statutes in the manner marked below:

( ) INDIVIDUAL SERVICE: Served the within-named person.

(X) SUBSTITUTE SERVICE: By serving ___JERRY DOE___ as
____DOORMAN  (REFUSED LAST NAME)____.

( ) POSTED SERVICE: After attempting service on ___/___ at _____ and on ___/___ at _____ to a conspicuous place on the property described herein.

( ) OTHER SERVICE: As described in the Comments below by serving
_____ as _____.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS:_TAN SKIN MALE, WEARING HAT, AGE 45-60, HEIGHT 5'9"-6', WEIGHT 181-200LBS_
_DOORMAN CALLED RECIPIENT AND WAS TOLD TO ACCEPT THE DOCUMENTS_
_DOORMAN REFUSED TO LET ME UP._
_HAIR COLOR CANNOT BE DETERMINED_

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.
Under Penalties of Perjury, I declare I have read the foregoing document and the facts stated in it are true and correct, NO NOTARY REQUIRED PERSUANT TO F.S. 92.525(2).

_Musab Nassar_

PROCESS SERVER # _2045119-DCA_
Appointed in accordance with State Statutes

**P.I. SERVICES
1430 S. Dixie Highway
Suite 105, #157
Coral Gables, FL 33146
(305) 666-0142**

Our Job Serial Number: 2023000483

Copyright © 1992-2023 DreamBuilt Software, Inc - Process Server's Toolbox V8 2n

# Exhibit B



# Exhibit C















# Exhibit D





# Exhibit 4

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

For Office Use Only

**WY Secretary of State**
**FILED: Aug  9 2021 10:27AM**
**Original ID: 2021-001026336**

**EXHIBIT**

**4**

# Limited Liability Company

# Articles of Organization

**I.**   **The name of the limited liability company is:**

Creators Agency LLC

**II.**   **The name and physical address of the registered agent of the limited liability company is:**

Registered Agents Inc.
30 N Gould St Ste R
Sheridan, WY 82801

**III.**   **The mailing address of the limited liability company is:**

30 N Gould St, STE R
Sheridan, WY 82801

**IV.**   **The principal office address of the limited liability company is:**

30 N Gould St, STE R
Sheridan, WY 82801

**V.**   **The organizer of the limited liability company is:**

Erika Kullberg
40 Waterside Plz, Apt 11D, New York, New York, 10010

**Signature:**   *Erika Kullberg*                    Date:   **08/09/2021**

Print Name:   **Erika Kullberg**

Title:   **Organizer**

Email:   **erikankullberg@gmail.com**

Daytime Phone #:   **(310) 601-8394**

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

---

☑ I am the person whose signature appears on the filing; that I am authorized to file these documents on behalf of the business entity to which they pertain; and that the information I am submitting is true and correct to the best of my knowledge.

☑ I am filing in accordance with the provisions of the Wyoming Limited Liability Company Act, (W.S. 17-29-101 through 17-29-1105) and Registered Offices and Agents Act (W.S. 17-28-101 through 17-28-111).

☑ I understand that the information submitted electronically by me will be used to generate Articles of Organization that will be filed with the Wyoming Secretary of State.

☑ I intend and agree that the electronic submission of the information set forth herein constitutes my signature for this filing.

☑ I have conducted the appropriate name searches to ensure compliance with W.S. 17-16-401.

☑ I consent on behalf of the business entity to accept electronic service of process at the email address provided with Article IV, Principal Office Address, under the circumstances specified in W.S. 17-28-104(e).

**Notice Regarding False Filings: Filing a false document could result in criminal penalty and prosecution pursuant to W.S. 6-5-308.**

> **W.S. 6-5-308. Penalty for filing false document.**
>
> (a) A person commits a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both, if he files with the secretary of state and willfully or knowingly:
>
> (i) Falsifies, conceals or covers up by any trick, scheme or device a material fact;
>
> (ii) Makes any materially false, fictitious or fraudulent statement or representation; or
>
> (iii) Makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.

☑ I acknowledge having read W.S. 6-5-308.

**Filer is:**   ☑ An Individual     ☐ An Organization

**Filer Information:**
**By submitting this form I agree and accept this electronic filing as legal submission of my Articles of Organization.**

| | | | |
|---|---|---|---|
| Signature: | *Erika Kullberg* | Date: | **08/09/2021** |
| Print Name: | **Erika Kullberg** | | |
| Title: | **Organizer** | | |
| Email: | **erikankullberg@gmail.com** | | |
| Daytime Phone #: | **(310) 601-8394** | | |

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

## Consent to Appointment by Registered Agent

**Registered Agents Inc.**, whose registered office is located at **30 N Gould St Ste R, Sheridan, WY 82801**, voluntarily consented to serve as the registered agent for **Creators Agency LLC** and has certified they are in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

I have obtained a signed and dated statement by the registered agent in which they voluntarily consent to appointment for this entity.

Signature:    *Erika Kullberg*                    Date:  **08/09/2021**

Print Name:    **Erika Kullberg**

Title:    **Organizer**

Email:    **erikankullberg@gmail.com**

Daytime Phone #:    **(310) 601-8394**

# STATE OF WYOMING
## Office of the Secretary of State

I, EDWARD A. BUCHANAN, Secretary of State of the State of Wyoming, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

### CERTIFICATE OF ORGANIZATION

**Creators Agency LLC**

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **9th** day of **August**, **2021** at **10:27 AM.**

Remainder intentionally left blank.



Filed Date: 08/09/2021


Secretary of State

Filed Online By:

Erika Kullberg

on 08/09/2021