**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| **IN RE:** <br> **FTX CRYPTOCURRENCY EXCHANGE** <br> **COLLAPSE LITIGATION** | No. 1:23-md-03076-KMM <br><br> MDL No. 3076 |
| This Document Relates To: <br><br> *Garrison v. Wasserman Media Group, LLC* <br> *and Dentsu McGarry Bowen LLC,* <br> No. 23-cv-24478-KMM | **DEFENDANTS' JOINT MOTION TO** <br> **DISMISS** |

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTUAL ALLEGATIONS ...................................................................... 2

SUMMARY OF ARGUMENTS ............................................................................................... 5

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

I.  PLAINTIFFS FAIL TO STATE ACTIONABLE CLAIMS UNDER VARIOUS
    STATE SECURITIES LAWS (COUNTS ONE, EIGHT, AND THIRTEEN). ................. 7

    A.  Plaintiffs Fail To State A Claim For Violation Of The Florida Securities
        Act (Count One) ................................................................................................ 7

        1.  Ad Agency Defendants Were Neither Sellers Of Unregistered
            Securities Nor FTX's Agents Under Applicable Florida Securities
            Laws. ..................................................................................................... 8

        2.  Ad Agency Defendants Did Not Induce Plaintiffs To Purchase Or
            Trade On The FTX Platform. ............................................................... 10

    B.  Plaintiffs Fail To Plead A Claim Under California's Securities Laws
        (Count Eight). ................................................................................................. 11

    C.  Plaintiffs Fail To Plead A Claim Under Oklahoma's Securities Laws
        (Count Thirteen) ............................................................................................. 12

II. PLAINTIFFS FAIL TO STATE ACTIONABLE STATE LAW CONSUMER-
    PROTECTION CLAIMS (COUNTS TWO, SEVEN, AND TWELVE). ....................... 14

    A.  Plaintiffs Fail To State A Claim Against Ad Agency Defendants Under The
        Florida Deceptive And Unfair Trade Practices Act ("FDUTPA") (Count
        Two). ............................................................................................................... 14

        1.  Ad Agency Defendants Are Exempt From The FDUTPA Because
            Count Two Is Rooted In Alleged Securities Transactions And
            Involves An "Information Disseminator." ............................................ 14

        2.  Plaintiffs Fail To Plead The Elements Of A FDUTPA Claim. ................. 15

            (a)  Ad Agency Defendants Did Not Commit Unfair Trade
                 Practices Against Plaintiffs. ......................................................... 16

            (b)  Plaintiffs Fail To Plead Causation. .............................................. 17

|  |  | (c) | Ad Agency Defendants Do Not Have Legal Duties to Plaintiffs Under the FDUTPA. | 18 |

|  | B. | Plaintiffs Fail To State A Claim for Violation Of California's Unfair Competition Law ("UCL") (Count Seven). | 19 |

|  |  | 1. | Plaintiffs Fail To Allege A Knowingly Unlawful, Unfair, Or Deceptive Act Or Practice. | 19 |

|  |  |  | (a) | No Allegations Ad Agency Defendants Made Statements. | 19 |

|  |  |  | (b) | Plaintiffs Fail To Allege Ad Agency Defendants Participated In Misconduct. | 20 |

|  |  | 2. | Plaintiffs Fail To Allege Causation. | 21 |

|  |  | 3. | The UCL Does Not Apply To Claims Related To Unregistered Securities. | 23 |

|  | C. | Plaintiffs Fail To State A Claim For Violation of The Oklahoma Consumer Protection Act (Count Twelve). | 23 |

|  |  | 1. | Ad Agency Defendants Are Not Sellers To Consumers. | 24 |

|  |  | 2. | Ad Agency Defendants' Conduct Is Exempt Under the OCPA. | 25 |

|  |  | 3. | Plaintiffs Fail To Plausibly Plead Causation. | 25 |

III. | PLAINTIFFS FAIL TO ALLEGE ANY COMMON LAW STATE TORT CLAIMS (COUNTS THREE, FOUR, FIVE, NINE, TEN, ELEVEN, AND FOURTEEN). | 26 |

|  | A. | Plaintiffs Fail To State A Claim For Civil Conspiracy (Counts Three and Eleven). | 26 |

|  |  | 1. | The Florida Civil-Conspiracy Claim Fails (Count Three). | 26 |

|  |  |  | (a) | Plaintiffs Fail To Allege Any Actionable Agreement Between Ad Agency Defendants And The Actual Fraudsters. | 27 |

|  |  |  | (b) | Plaintiffs Fail to Allege Ad Agency Defendants Committed Any "Overt Act" That Caused Plaintiffs' Damages. | 28 |

|  |  | 2. | Plaintiffs' California Civil-Conspiracy Claim Fails (Count Eleven). | 29 |

|  | B. | Plaintiffs Fail To State Any Actionable Claim For Aiding And Abetting Fraud (Counts Four, Nine, and Fourteen). | 30 |

1.      The Florida Aiding and Abetting Fraud Claim Fails (Count Four). ......... 30

        (a)     Plaintiffs Fail To Allege Actual Knowledge Of The Fraud........... 31

        (b)     Plaintiffs Fail To Plead "Substantial Assistance" To The
                Fraud. ...................................................................................... 32

2.      The California Aiding and Abetting Fraud Claim Fails (Count
        Nine). ................................................................................................ 33

3.      Plaintiffs' Claim For Aiding And Abetting Fraud Under Oklahoma
        Law Fails (Count Fourteen). ................................................................ 36

C.      Plaintiffs Fail To State Aiding And Abetting Conversion Claims (Counts
        Five and Ten). ............................................................................................ 37

1.      The Florida Aiding And Abetting Conversion Claim Fails (Count
        Five). ................................................................................................ 37

2.      Plaintiffs Fail To State A Claim For Aiding And Abetting
        Conversion Under California Law (Count Ten). ...................................... 37

IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY JUDGMENT
        (COUNT SIX)................................................................................................. 38

REQUEST FOR HEARING ....................................................................................... 41

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*550 Seabreeze Dev. LLC v. Ill. Union Ins. Co.*,
    2020 WL 473610 (S.D. Fla. Jan. 29, 2020) ...........................................................39

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
    925 F.3d 1205 (11th Cir. 2019) ...........................................................................40

*Ajzenman v. Off. of Comm'r of Baseball*,
    487 F. Supp. 3d 861 (C.D. Cal. 2020) .................................................................30

*In re All. Equip. Lease Program Sec. Litig.*,
    2002 WL 34451621 (S.D. Cal. Oct. 15, 2002) ....................................................12

*Almeida v. BOKF, NA*,
    471 F. Supp. 3d 1181 (N.D. Okla. 2020).............................................................36

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) .............................................................................7

*Am. United Life Ins. Co. v. Martinez*,
    480 F.3d 1043,1065 (11th Cir. 2007) ..................................................................26

*Angell v. Allergan Sales, LLC*,
    2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ....................................................31

*Apex Toxicology, LLC v. United HealthCare Servs., Inc.*,
    2020 WL 13551299 (S.D. Fla. July 7, 2020).......................................................28

*Arencibia v. AGA Serv. Co.*,
    533 F. Supp. 3d 1180 (S.D. Fla. 2021) ................................................................39

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................6, 7, 20

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
    938 F. Supp. 825 (S.D. Fla. 1996) ......................................................................10

*Barker v. Henderson, Franklin, Starnes & Holt*,
    797 F.2d 490 (7th Cir. 1986) ..............................................................................14

*Beck v. Prupis*,
    529 U.S. 494 (2000).............................................................................................29

v

*Behrman v. Allstate Ins.*,
  388 F. Supp. 2d 1346 (S.D. Fla. 2005), *aff'd*, 178 F. App'x 862 (11th Cir.
  2006) .................................................................................................................................19

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................7, 20, 28

*Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*,
  32 Cal. Rptr. 3d 325 (Cal. Ct. App. 2005) ...............................................................36

*Berkoff v. Masai USA Corp.*,
  2011 WL 13224836 (C.D. Cal. Mar. 3, 2011)........................................................22

*Betz v. Trainer Wortham & Co., Inc.*,
  829 F. Supp. 2d 860 (N.D. Cal. 2011) .....................................................................23

*BluestarExpo, Inc. v. Enis*,
  568 F. Supp. 3d 1332 (S.D. Fla. 2021) .....................................................................40

*Brown v. Tony*,
  2023 WL 6973026 (S.D. Fla. Oct. 23, 2023) (Moore, J.).....................................16

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................................ *passim*

*California v. Texas*,
  593 U.S. 659 (2021)....................................................................................................38

*Camp v. Dema*,
  948 F.2d 455 (8th Cir. 1991) .....................................................................................35

*Campion v. Old Republic Home Prot. Co.*,
  272 F.R.D. 517 (S.D. Cal. 2011) ..............................................................................22

*Casey v. U.S. Bank Natl. Assn.*,
  26 Cal. Rptr. 3d 401 (2005) .......................................................................................34

*Cawthon v. Phillips Petroleum Co.*,
  124 So. 2d 517 (Fla. 2d DCA 1960) .........................................................................10

*Cedar Hills Properties Corp. v. Eastern Federal Corp.*,
  575 So. 2d 673 (Fla. 1st DCA 1991) ........................................................................28

*Chang v. JPMorgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017) ................................................................................33

*Chen v. PayPal, Inc.*,
  275 Cal. Rptr. 3d 767 (Cal. Ct. App. 2021).......................................................35, 38

*Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*,
  2018 WL 7287192 (S.D. Fla. Jan. 31, 2018) ...............................................................19

*United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*,
  290 F.3d 1301 (11th Cir. 2002) ..................................................................................28

*CTI Services LLC. v. Haremza*,
  797 F. Supp. 2d 1257 (N.D. Okla. 2011) ....................................................................24

*Cullum v. Packo*,
  947 So. 2d 533 (Fla. 1st DCA 2006) ...........................................................................9

*Dillon v. Axxsys Int'l, Inc.*,
  185 F. App'x 823 (11th Cir. 2006) .............................................................................10

*Dillon v. Axxsys Intern., Inc.*,
  385 F. Supp. 2d 1307 (M.D. Fla. 2005), *aff'd*, 185 F. App'x 823 (11th Cir.
  2006) ............................................................................................................................8

*Dolphin, LLC v. WCI Communities, Inc.*,
  715 F.3d 1243 (11th Cir. 2013) ..................................................................................15

*Eastwood v. Nat'l Bank of Commerce, Altus, Okla.*,
  673 F. Supp. 1068 (W.D. Okla. 1987) ........................................................................36

*Eldridge v. Equifax, Inc.*,
  2019 WL 1179420 (W.D. Okla. March 13, 2019) ........................................................24

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ....................................................................................29

*Eveillard v. Nationstar Mortg. LLC*,
  2015 WL 127893 (S.D. Fla. Jan. 8, 2015) ..................................................................39

*Farlow v. Peat Marwick Mitchell & Co.*,
  666 F. Supp. 1500 (W.D. Okla. 1987) ........................................................................13

*Feng v. Walsh*,
  2021 WL 8055449 (S.D. Fla. Dec. 21, 2021), *report and recommendation
  adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) ..................................................14

*Fernando Grinberg Tr. Success Int. Props., LLC v. Scottsdale Ins.*,
  2010 WL 2510662 (S.D. Fla. June 21, 2010) .............................................................39

*Fineman v. Ferragamo USA Inc.*,
  2023 WL 3778264 (S.D. Fla. May 12, 2023), *appeal dismissed*, 2023 WL
  5939033 (11th Cir. Jul. 19, 2023) ...............................................................................17

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ............................................................................34, 38

*In re FTX Trading Ltd.*,
    No. 22-11068 (Bankr. D. Del.) ...................................................................4, 5, 12, 21

*Garcia v. Scottsdale Ins.*,
    2018 WL 3432702 (S.D. Fla. July 16, 2018) ............................................................39

*Garfield v. NDC Health Corp.*,
    466 F.3d 1255 (11th Cir. 2006) ..................................................................................7

*Gifford v. Hornbrook Fire Prot. Dist.*,
    2021 WL 4168532 (E.D. Cal. Sept. 14, 2021) ........................................................29

*Ginsberg v. Lennar Florida Holdings, Inc.*,
    645 So. 2d 490 (Fla. 3d DCA 1994) ..................................................................28, 29

*Gonzalez v. Proctor & Gamble Co.*,
    247 F.R.D. 616 (S.D. Cal. 2007) ..............................................................................22

*Groom v. Bank of Am.*,
    2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ................................................................10

*Harmsen v. Smith*,
    693 F.2d 932 (9th Cir. 1982) ..............................................................................34, 35

*Hollifield v. Resolute Cap. Partners Ltd., LLC*,
    2023 WL 4291524 (C.D. Cal. May 12, 2023) ..........................................................12

*Honig v. Kornfeld*,
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) ...............................................................31, 37

*IIG Wireless, Inc. v. Yi*,
    231 Cal. Rptr. 3d 771 (Cal. Ct. App. 2018) ............................................................36

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.*,
    224 So. 3d 316 (Fla. 5th DCA 2017) ...................................................................8, 10

*Jackson v. Fischer*,
    2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ........................................................12

*James v. Tyson Foods, Inc.*,
    292 P.3d 10 (Okla. 2012) .........................................................................................25

*Jolibois v. Fla. Int'l Univ. Bd. of Trs.*,
    654 F. App'x 461 (11th Cir. 2016) ..........................................................................39

*Josefsberg v. Uber Techs., Inc.*,
   2023 WL 5670301 (S.D. Fla. Aug. 31, 2023) ..................................................................18

*Kenneth F. Hackett & Assoc., Inc. v. GE Capital Info. Tech. Sol., Inc.*,
   744 F. Supp. 2d 1305 (S.D. Fla. 2010) ...........................................................................39

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .................................................................................................22

*Koziara v. City of Casselberry*,
   392 F.3d 1302 (11th Cir. 2004) .....................................................................................40

*Lamm v. State St. Bank & Tr.*,
   749 F.3d 938 (11th Cir. 2014) .......................................................................................35

*Lawrence v. Bank of Am.*,
   N.A., 455 F. App'x 904 (11th Cir. 2012) ...........................................................31, 32, 37

*Liberty City Movie, LLC v. U.S. Bank, N.A.*,
   824 F. App'x 505 (9th Cir. 2020) ..............................................................................29, 30

*Llado-Carreno v. Guidant Corp.*,
   2011 WL 705403 (S.D. Fla. Feb. 22, 2011) ..................................................................33

*Lombardo v. Johnson & Johnson Consumer Cos.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ..........................................................................17

*Lumber 2, Inc. v. Illinois Tool Works, Inc.*,
   261 P.3d 1143 (Okla. 2011) ...........................................................................................24

*Mantz v. TRS Recovery Servs., Inc.*,
   2012 WL 12897159 (S.D. Fla. Oct. 30, 2012) ...............................................................19

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ...........................................................................19

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .........................................................................................22

*Melvin v. Nationwide Debt Recovery, Inc.*,
   2000 WL 33950122 (W.D. Okla. Aug. 24, 2000) ..........................................................24

*Meridian Tr. Co. v. Batista*,
   2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ...............................................................27

*MidFirst Bank v. Keefe, Bruyette & Woods, Inc.*,
   2008 WL 11338073 (W.D. Okla. Apr. 23, 2008) ...........................................................36

*Minshall v. TD Evergreen,*
   2005 WL 8145046 (M.D. Fla. Aug. 4, 2005) .......................................................................15

*Molina v. Aurora Loan Servs., LLC,*
   635 F. App'x 618 (11th Cir. 2015) ...........................................................................16, 18

*Musson v. Rice,*
   1987 OK 66, 739 P.2d 1004 (Okla. 1987) ...............................................................13

*Neilson v. Union Bank of Cal., N.A.,*
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................................29

*Next Century Commc'ns Corp. v. Ellis,*
   318 F.3d 1023 (11th Cir. 2003) ...........................................................................17, 20

*Nichols v. Yandre,*
   151 Fla. 87, 9 So.2d 157 (Fla. 1942) ....................................................................10

*Nikkel v. Stifel, Nicolaus & Co., Inc.,*
   542 P.2d 1305 (Okla. 1975) ...................................................................................13

*Ocean's 11 Bar & Grill, Inc. v. Indemnity Ins. Corp. of DC,*
   2011 WL 3843931 (S.D. Fla. Aug. 26, 2011) .....................................................39

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.,*
   774 F.3d 598 (9th Cir. 2014) .................................................................................20

*Park Place Kendall Condo. Ass'n, Inc. v. Rockhill Ins.,*
   2022 WL 18779644 (S.D. Fla. June 24, 2022) ....................................................39

*Patterson v. Beall,*
   19 P.3d 839 (Okla. 2000) .......................................................................................23

*Pearson v. Deutsche Bank AG,*
   2022 WL 951316 (S.D. Fla. Mar. 30, 2022) ........................................................32

*Perlman v. Wells Fargo Bank, N.A.,*
   559 F. App'x 988 (11th Cir. 2014) ...........................................................31, 32, 35

*Perret v. Wyndham Vacation Resorts, Inc.,*
   846 F. Supp. 2d 1327 (S.D. Fla. 2012) .................................................................16

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.,*
   842 So. 2d 773 (Fla. 2003) .....................................................................................16

*Pop v. Lulifama.com LLC,*
   2023 WL 4661977 (M.D. Fla. July 20, 2023) .....................................................20

*Rensel v. Centra Tech, Inc.*,
  No. 17-24500-CIV, 2019 WL 2085839 (S.D. Fla. May 13, 2019) (J. Scola)..........................11

*Rogers v. Cisco Sys., Inc.*,
  268 F. Supp. 2d 1305 (N.D. Fla. 2003)...................................................................................14

*Rubin v. Gabay*,
  979 So.2d 988 (Fla. 4th DCA 2008)........................................................................................9

*Rusheen v. Cohen*,
  39 Cal. Rptr. 3d 516 (Cal. 2006)...........................................................................................29

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
  773 F. Supp. 342 (S.D. Fla. 1991).............................................................................................9

*SEC v. Ripple Labs, Inc.*,
  2023 WL 4507900 (S.D.N.Y. July 13, 2023) ...........................................................................8

*Sevidal v. Target Corp.*,
  117 Cal. Rptr. 3d 66 (Cal. Ct. App. 2010) ............................................................................22

*SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*,
  764 F.3d 1327 (11th Cir. 2014) ..............................................................................................27

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery,
  LLC*,
  278 F. Supp. 3d 1307 (S.D. Fla. 2017) ..................................................................................16

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998).................................................................................................................38

*Sugarman v. Brown*,
  73 Cal. App. 5th 152 (Cal. 2021)...........................................................................................22

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*,
  904 F.3d 1197 (11th Cir. 2018) ..............................................................................................26

*Taylor v. Costco Wholesale Corp.*,
  2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) ...........................................................................21

*Terry v. Nuvell Credit Corp.*,
  2007 WL 2746919 (W.D. Okla. Sept. 20, 2007) .....................................................................25

*Tippens v. Round Island Plantation LLC*,
  2009 WL 2365347 (S.D. Fla. Jul. 31, 2009).............................................................................26

*Trabajadores v. Cortez Moreno*,
  237 So. 3d 1127 (Fla. 3d DCA 2018) .....................................................................................27

*Transp. All. Bank, Inc. v. Arrow Trucking Co.*,
  2011 WL 221863 (N.D. Okla. Jan. 21, 2011) ........................................................36

*Trilogy Props. LLC v. SB Hotel Assocs. LLC*,
  2010 WL 7411912 (S.D. Fla. Dec. 23, 2010) ..........................................................9

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ....................................................................................33, 35

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir.2010) .............................................................................30

*UTC Indus., Inc. v. Pres. Fin. Corp.*,
  976 So. 2d 92 (Fla. 3d DCA 2008) ....................................................................26

*Vior Funeral Homes, Inc. v. Hartford Fire Ins.*,
  2017 WL 5953289 (S.D. Fla. June 20, 2017) .......................................................39

*Virgilio v. Ryland Grp.*,
  680 F.3d 1329 (11th Cir. 2012) ........................................................................18

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
  287 F. App'x 81 (11th Cir. 2008) ......................................................................34

*White v. CitiMortgage*,
  2012 WL 13024694 (W.D. Okla. June 15, 2012) ..................................................24

*Wiand v. Wells Fargo Bank, N.A.*,
  938 F. Supp. 2d 1238 (M.D. Fla. 2013) ..............................................................32

*Wolf v. Celebrity Cruises, Inc.*,
  683 F. App'x 786 (11th Cir. 2017) ....................................................................10

*Wright v. Schock*,
  571 F. Supp. 642 (N.D. Cal. 1983), aff'd, 742 F.2d 541 (9th Cir. 1984) ..................34, 35, 38

*Yuanxiao Feng v. Walsh*,
  2020 WL 5822420 (S.D. Fla. Sept. 14, 2020), *report and recommendation
  adopted*, 2020 WL 5819615 (S.D. Fla. Sept. 30, 2020) .........................................37

*Zlotnick v. Premier Sales Grp., Inc.*,
  480 F.3d 1281 (11th Cir. 2007) ........................................................................16

**Statutes**

Okla. Stat. tit. 15 §752(14)...............................................................................23

Okla. Stat. tit. 15 §754(1).................................................................................25

Okla. Stat. tit. 71 § 1-509 ................................................................................................13

Okla. Stat. tit. 71 §1-509(B) ............................................................................................13

Okla. Stat. tit. 71 §1-509(G) ...........................................................................................13

15 U.S.C. § 77(a)(1) ...........................................................................................................8

Cal. Corp. Code §§ 25110, 25503, 25504.1 .....................................................................12

Cal. Corp. Code §§ 25210(b), 25501.5 ...........................................................................12

Fla. Stat. § 501.211(2) ......................................................................................................19

Fla. Stat. § 501.212(2) ......................................................................................................15

Fla. Stat. § 517.211(2) ........................................................................................................8

Okla. Stat. tit. 15 § 761.1(A) ...........................................................................................24

## PRELIMINARY STATEMENT

Sam Bankman-Fried—SBF—was a fraud.  FTX was a house of cards.  FTX and its executives perpetrated one of the biggest cons in U.S. history.  This much was proven in a five-week trial in the Southern District of New York.  A jury found him guilty on all seven criminal fraud counts, for which SBF may face a maximum sentence of 115 years in prison.  He and his cronies may spend years—lifetimes—behind bars.  But does their fraudulent conduct sweep in every vendor or supplier that provided legitimate, arm's-length services to FTX?   No.  Dentsu McGarry Bowen LLC ("Dentsu")—an advertising agency hired to create comedic commercials for FTX and its platform—and Wasserman Media Group, LLC ("Wasserman")—an advertising agency hired to create aspects of certain FTX marketing campaigns (collectively, "Ad Agency Defendants") are far too removed from these crimes to be held liable for them.

Plaintiffs make vague and conclusory allegations that Ad Agency Defendants somehow "knew" or "should have known" of the secret fraud SFB and the FTX Insiders were perpetrating.  Plaintiffs' misguided supposition that Ad Agency Defendants possessed such knowledge—despite the fact that virtually no one other than SBF and the FTX Insiders knew about the felonious activities going on behind FTX's carefully closed doors—is not only baseless and illogical, but flies in the face of the substantive allegations in the Class Action Complaint ("CAC").  Conspicuously absent from the CAC are any allegations Ad Agency Defendants had (1) any involvement in the management of FTX's business; (2) any involvement in creating or disseminating—or even knowledge of—FTX's White Papers or any other of the company's disclosures or other materials related to the venture; (3) any role in explaining FTX's business model or information about the sale of or FTX tokens ("FTTs") or yield-bearing accounts ("YBAs"); (4) any financial interest in the success of FTX's YBAs; or (5) any relationship or even contact with any of the Plaintiffs.  Plaintiffs fail to make these allegations because they cannot.

In the end, Plaintiffs' lawsuit against Ad Agency Defendants is a transparent effort to pick a potential "deep pocket" for losses with which they had nothing to do.  The Court should not, and cannot, countenance it.  For the myriad reasons explained below, Plaintiffs have not and cannot state claims upon which relief may be granted.  Their claims against Ad Agency Defendants fail as a matter of law, and the Court should dismiss them, with prejudice.

## STATEMENT OF FACTUAL ALLEGATIONS

As Plaintiffs allege it, "[i]n May 2019, SBF and his co-founders, Gary Wang and Nishad Singh, (the "FTX Insiders"), launched FTX" and began operating the FTX platform as a "centralized digital asset exchange aimed at 'the mass market and first-time users' of cryptocurrencies" (the "FTX Platform"). (CAC ¶ 67).  In doing so, "FTX portrayed itself as a trustworthy and law-abiding member of the cryptocurrency industry, focused not only on profits, but also on investor and client protection." (*Id*. ¶ 68).  Unbeknownst to U.S. Commodity Futures Trading Commission (CFTC), sophisticated investors, and certainly to Ad Agency Defendants or the general public, SBF and the other FTX Insiders were severely and criminally mismanaging the venture.  They were siphoning user deposits to friends and family members, and otherwise wrongfully converting those funds for their own use—including by (among other things), commingling (and misusing) FTX funds with those of SBF's cryptocurrency hedge fund, Alameda Research, and various other private ventures.  (*Id*. ¶¶ 133-34).

FTX's purported business model was two-fold: *first*, FTX operated a cryptocurrency exchange via its FTX Platform, through which users could trade FTTs and other crypto assets and fiat currency; *second*, FTX ran an "Earn Program," through which users could open YBAs, guaranteeing certain pre-set annual returns on assets held in those accounts.  (*Id*. ¶¶ 71-72).  According to Plaintiffs, the YBAs and FTTs offered through the FTX Platform were "securities." (*Id*. ¶¶ 241, 246).

By early 2022, billions of dollars worth of crypto assets were being traded daily on the FTX Platform, representing approximately ten percent (10%) of the global volume for all crypto trading. *Id*. Moreover, FTX's team grew to over 300 employees globally. *Id*. FTX and Alameda were hailed as "giants in their respective industries." (*Id*. ¶ 160.).

FTX went to great lengths to portray itself not only as a legitimate business, but one that prioritized safe crypto trading and investing. (*Id*. ¶¶ 74-75.). To the public, *including Ad Agency Defendants*, FTX implemented (at least on paper) extensive protocols and protective measures to ensure a fair and secure user experience. For example, FTX offered "wash trading protection," representing that it implemented "exchange controls that actively prevent a party trading with themselves." (*Id*. ¶ 76). In a public proposal to the CFTC, FTX also touted a "risk-engine" that purportedly protected against customers becoming overleveraged or under-collateralized on the platform. (*Id*. ¶ 77). SBF attested to the legitimacy and safety of the FTX model before the U.S. House of Representatives' Committee on Agriculture in May 2022—and the fraudulent scheme survived the congressional probe, undiscovered for a number of months. (*Id*. at ¶ 78). FTX also held itself as backed by the Federal Deposit Insurance Corporation until at least August 2022. (*Id*. ¶ 79).

In November 2022, a wave of shock and disbelief swept across the globe when FTX suddenly and unexpectedly imploded when users sought to withdraw $5 billion from the FTX Platform following public concerns that questioned the relationship between FTX and Alameda, and the overall liquidity of "Bankman-Fried's empire." (*Id*. ¶¶ 159-61). Unable to meet this demand or obtain a bailout, FTX halted user withdrawals and eventually initiated bankruptcy proceedings. (*Id*. ¶ 164); *see In re FTX Trading Ltd*., No. 22-11068 (Bankr. D. Del.).

Plaintiffs repeatedly assert that FTX collapsed because FTX's most senior leadership

committed a *secret fraud* involving the misappropriation of user funds for personal benefit and to prop up other companies, including Alameda.  (CAC ¶¶ 134–42).  Plaintiffs further allege that FTX's failure to adhere to legal and compliance obligations, as well as severe mismanagement of the company, caused the demise.  (*Id*. ¶¶ 149, 173–77).  Plaintiffs aver that the FTX Insiders went as far as to "pa[y] out millions of dollars in hush money to keep whistleblowers from exposing the fraud[.]" (*Id*. ¶ 150).  Plaintiffs insist that FTX's fraudulent scheme was "thoroughly concealed" and that only the few individuals in SBF's inner circle knew about the fraudulent scheme.  (*Id*. ¶¶ 131, 145, 149–51).

Plaintiffs would now seek to hold Ad Agency Defendants financially responsible for the thoroughly concealed crimes FTX, SBF, and others committed.  This, say Plaintiffs, is because Dentsu "helped spearhead FTX's $20 million marketing campaign." (*Id*. ¶ 308).  But Ad Agency Defendants' roles were, as Plaintiffs allege, limited to providing general, commercial advertising services to FTX, including the production of three (3) "longform" FTX commercials featuring Tom Brady and his then-wife Gisele Bündchen, as well as one featuring comedian Larry David, which aired during the 2022 NFL Super Bowl, (*Id*. ¶¶ 308-15); ensuring an esports organization complied with its FTX marketing obligations, including reviewing "email signatures" (*Id*. ¶ 284); and hiring a third party to create digital collectibles and "experiences" for a Miami Beach race and Los Angeles All Star baseball game, including "FTX's Ballpark Bobblers campaign"—described as an "immersive virtual bobblehead experience," (*Id*. ¶¶ 288–92).  When compared with the dozens of allegations—set forth by Plaintiffs in excruciating detail—about how FTX showcased all the hallmarks of a legitimate and thriving enterprise, and, the lengths to which FTX, SBF, and the FTX Insiders went to hide their crimes, Plaintiffs' allegations against Ad Agency Defendants are few, facially generic and paltry.

Specifically, the conclusory paragraphs directed to Ad Agency Defendants (out of Plaintiffs' 458–paragraph CAC) allege that:

- FTX solicited and used Ad Agency Defendants' advertising services to enhance FTX's brand (*see, e.g.,* CAC ¶¶ 3, 38);

- Wasserman helped ensure an esports organization complied with its FTX marketing obligations and hired a third party to design digital experiences and collectibles as part of two sporting-event promotions (CAC ¶ 282);

- Ad Agency Defendants somehow "knew or should have known" that FTX was wrongfully selling unregistered securities due to their resources and prominence (*see, e.g.,* CAC ¶ 38);

- Ad Agency Defendants' promotion of the FTX platform was deceptive and unlawful; (*see, e.g.,* CAC ¶¶ 296-320); and,

- Ad Agency Defendants were "aiding and abetting FTX Group's fraud, and/or conversion." (CAC ¶ 298).

Plaintiffs don't allege that *they*—or *any* FTX investors—ever saw these commercials and relied on them to cause any Plaintiff to use the FTX Platform, trade FTTs, or set up YBAs. Plaintiffs ultimately conclude that Ad Agency Defendants' provision of advertising services to FTX was "deceptive and unlawful" because they somehow "knew or should have known" about the FTX fraud. (*Id*. ¶¶ 297, 320).  At bottom, Plaintiffs assert that Ad Agency Defendants are liable because *FTX* solicited and used Ad Agency Defendants' advertising services to further *FTX's* brand.

These allegations of FTX's conduct miss the mark against Ad Agency Defendants.  As Ad Agency Defendants explain below, Plaintiffs' allegations are wholly insufficient to state *any* claim against them and, therefore, the Court should dismiss the CAC with prejudice.

## SUMMARY OF ARGUMENTS

Plaintiffs' claims against Ad Agency Defendants fail for myriad reasons—not the least of which is Plaintiffs' failure to *plausibly* allege that Ad Agency Defendants knew or should have known of FTX's well-concealed fraud.  Plaintiffs' state-law securities claims fail because Plaintiffs

have not alleged (nor could they) that Ad Agency Defendants knew about FTX's malfeasance or that it sold, offered to sell, induced Plaintiffs to purchase, or materially assisted FTX in the sale of securities (regardless of whether FTTs or YBAs were, in fact, securities). Plaintiffs' state-law consumer-protection claims fail because, among other reasons, sales of alleged securities are exempted from the relevant statutes, innocent advertisers (like Ad Agency Defendants) cannot be held responsible for a third-party's fraud, and Plaintiffs fail to plead causation—they don't allege they even watched the marketing campaigns Ad Agency Defendants produced or designed, or, that those campaigns induced Plaintiffs to trade on the FTX Platform, purchase FTTs, or open YBAs. Likewise, Plaintiffs' common-law tort claims—conspiracy, aiding and abetting fraud, and aiding and abetting conversion—fail because Plaintiffs do not plead fraud with the specificity that Rule 9(b) requires, they fail to allege unlawful agreements between Ad Agency Defendants and FTX, they fail to allege *any* overt act in furtherance of the alleged conspiracy, and they fail to plausibly allege that Ad Agency Defendants were aware of FTX's misconduct. Finally, Plaintiffs' claim for declaratory relief fails because their underlying legal claims fail, because Plaintiffs seek money or damages for past alleged wrongs rather than to enjoin future wrongs, and, because declaratory judgment simply is not appropriate to measure the adequacy, or not, of Plaintiffs' legal claims.

## LEGAL STANDARD

The Court should dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007)) (emphasis added); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1287 (11th Cir. 2010) ("'[f]actual allegations must be enough to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In addition, claims sounding in fraud must satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Rule 9(b) requires that a complaint based on fraud set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citations omitted).

Plaintiffs' CAC, on its face, does not and cannot ever state any plausible claim for relief against Ad Agency Defendants. Likewise, the CAC woefully fails to meet the heightened pleading requirements of Rule 9(b). Accordingly, as explained below, the Court should dismiss the CAC with prejudice.

## **ARGUMENT**

### I. **PLAINTIFFS FAIL TO STATE ACTIONABLE CLAIMS UNDER VARIOUS STATE SECURITIES LAWS (COUNTS ONE, EIGHT, AND THIRTEEN).**

Plaintiffs purport to bring claims under the securities laws of Florida, California, and Oklahoma (Counts One, Eight, and Thirteen, respectively). Each of these claims fails to state any actionable claim against Ad Agency Defendants and the Court should dismiss them.

#### **A. Plaintiffs Fail To State A Claim For Violation Of The Florida Securities Act (Count One).**

Plaintiffs strain credulity to allege a claim under the Florida Securities Act (codified in Chapter 517 of the Florida Statutes) arising from Ad Agency Defendants' function as an

advertising agency for FTX and FTX's—not Ad Agency Defendants'—sale of FTTs and YBAs. Florida law imposes strict limitations on who may be held liable for the sale of "unregistered securities."[1]   Section 517.211 expressly provides that liability for the sale of an unregistered security extends only to two groups: (1) sellers; and (2) "every director, officer, partner, or agent of . . . [the] seller." Fla. Stat. § 517.211(2).   "Section 517.211(2) limits liability to persons *involved directly in the sale of the security*[.]" *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.,* 224 So. 3d 316, 324 (Fla. 5th DCA 2017) (emphasis added).[2]

### 1.    Ad Agency Defendants Were Neither Sellers Of Unregistered Securities Nor FTX's Agents Under Applicable Florida Securities Laws.

Plaintiffs do not (and cannot legitimately) allege that Ad Agency Defendants were "sellers" for purposes of the Florida Securities Act.[3]   Instead, Plaintiffs' entire theory of liability hinges

---

[1] Plaintiffs repeatedly allege that the FTX Platform sold unregistered securities. (*See, e.g.*, CAC ¶¶ 2–3, 8–9, 13, 32, 34, 38, 64, 232–233, 245, 270–73, 298, 321, 355, 357, 364, 371, 374, 386, 388, 407, 438.)   Solely for the purposes of this motion, this assumes the FTTs and YBAs *were* securities.   Some courts have rejected the theory that digital tokens are securities in some circumstances, depending on the facts. *See, e.g.*, *SEC v. Ripple Labs, Inc.*, 2023 WL 4507900, at *11-14 (S.D.N.Y. July 13, 2023) (XRP tokens were not securities where purchasers had no reason to expect that their payments would increase value of XRP because they did not know who they had purchased them from).

[2] Florida securities law is narrower than federal law (*i.e.*, the Securities Exchange Act of 1933) which, unlike Florida law, applies to "offers" of securities in addition to sales of securities. 15 U.S.C. § 77(a)(1).   *See Dillon v. Axxsys Intern., Inc.*, 385 F. Supp. 2d 1307, 1313 & n.4 (M.D. Fla. 2005), *aff'd*, 185 F. App'x 823 (11th Cir. 2006) (stating that liability under Section 517.211(2) only applies to persons participating in the sale of a security and noting that Florida rejected a more expansive scheme of liability with regards to such sales).

[3] To the extent Plaintiffs are seen to argue that  Ad Agency Defendants were "sellers"—although not pled in the CAC—such a claim immediately fails as Florida law makes clear that the only "person making the sale" is the person in privity with the buyer of the alleged security. *See Trilogy Props. LLC v. SB Hotel Assocs. LLC*, 2010 WL 7411912, at *12 (S.D. Fla. Dec. 23, 2010) (dismissing securities claims and noting that "for a buyer to have a claim under Florida Statutes § 517.211, buyer/seller privity must exist"); *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 (S.D. Fla. 1991) (plaintiff may recover under first prong of Section 517.211 only from "his seller, who he is in privity with").   Plaintiffs do not, and cannot, allege that Ad Agency

upon Ad Agency Defendants' status as FTX's purported "agents." (CAC ¶¶ 369, 373.) Florida courts have held that under Section 517.211, the term "agent" is given its common meaning—"representation of a principal." *Rubin v. Gabay*, 979 So.2d 988, 990 (Fla. 4th DCA 2008). An agent both speaks on behalf of *and has the authority to bind the principal. See Cullum v. Packo*, 947 So. 2d 533, 536 (Fla. 1st DCA 2006) (citations omitted). Plaintiffs fail to plead any facts supporting that Ad Agency Defendants were FTX's agents for the purpose of selling alleged securities.

Plaintiffs do not (and cannot) allege that Ad Agency Defendants had any *authority* to bind FTX to anything. *Id.* Plaintiffs' allegations confirm that Ad Agency Defendants merely rendered general advertising services to FTX by designing aspects of FTX's marketing campaigns or producing a limited set of television commercials. (CAC ¶¶ 284, 288–292, 309-15). Plaintiffs' sole allegation that "[Ad Agency Defendants] are agents of the FTX Entities pursuant to Fla. Stat. § 517.211" is a bare legal conclusion unsupported by any factual allegations. This "conclusory allegation, unsupported by facts, fails to show that" Ad Agency Defendants were agents for purposes of a Chapter 517 analysis. *Trilogy*, 2010 WL 7411912, at *12 (dismissing Chapter 517 claims).

Advertisements simply cannot "fairly be construed as holding any proof that such company was an agent for [the advertiser]." *See, e.g., Cawthon v. Phillips Petroleum Co*., 124 So. 2d 517, 520 (Fla. 2d DCA 1960); *cf. Wolf v. Celebrity Cruises, Inc*., 683 F. App'x 786, 798 (11th Cir. 2017) (declining to find agency relationship between cruise ship company and excursion company

---

Defendants entered into contracts with them or any other buyer involving YBAs or FTTs, or that Ad Agency Defendants are otherwise in privity with them. Plaintiffs concede that it was the *"FTX Entities* sold and offered to sell the unregistered YBAs to Plaintiffs." (CAC ¶ 372 (emphasis added).).

despite the plaintiff's allegations that the cruise ship company "promoted, marketed, and advertised the excursion."). Merely performing as a service provider for FTX's advertisements is wholly insufficient to establish Ad Agency Defendants were "agents" of FTX under Florida securities laws. *Id.*

> **2.      Ad Agency Defendants Did Not Induce Plaintiffs To Purchase Or Trade On The FTX Platform.**

To state a claim under Section 517, Plaintiffs must also plausibly and independently allege Ad Agency Defendants "*personally participated or aided the sales*" *and engaged in "some activity in inducing the purchaser to invest*." *Groom v. Bank of Am.*, 2012 WL 50250, at *5 (M.D. Fla. Jan. 9, 2012) (emphasis added) (citing *Nichols v. Yandre*, 9 So.2d 157, 160 (Fla. 1942)); *see also Dillon v. Axxsys Int'l, Inc*., 185 F. App'x 823, 828 (11th Cir. 2006) ("The law requires some personal activity and involvement in the sale."); *J.P. Morgan*, 224 So. 3d at 324; *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A*., 938 F. Supp. 825, 828 (S.D. Fla. 1996) 828 (*declining* to extend liability to participants only remotely related to the relevant aspects of the sales transaction, specifically noting that "[t]he buyer does not, in any meaningful sense, purchase the security from such a person.") (citations omitted).  Plaintiffs utterly fail to do so.[4]

The CAC lacks any allegation or plausible inference that Ad Agency Defendants engaged in any activities that aided sales to Plaintiffs or induced them to invest with FTX.  The marketing, promotions, and commercials referenced in the CAC cannot plausibly be interpreted to be an "offer to sell" or "solicitation of an offer" to buy the so-called unregistered securities.  *See Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2019 WL 2085839, at *2 (S.D. Fla. May 13, 2019) (J. Scola)

---

[4] Moreover, "liability only extends to persons *who successfully solicit the purchase*, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Bailey*, 938 F. Supp. At 828 (emphasis added).

(dismissing complaint where the only solicitation allegations entailed endorsements of the subject security by renowned boxer, Floyd Mayweather, which were posted on his Twitter account). Ad Agency Defendants' role in creating some FTX advertising content is facially remote, as Plaintiffs do not allege—nor can they—that the marketing materials contained an "offer" or "sale" information, such as the business model for the FTX Platform, the prices of FTTs, the with terms and conditions related to the "Earn Program" and the YBAs, or where or how a purchaser would go about trading FTTs or opening YBAs if they were so inclined.[5]

    For all of these reasons Count One must be dismissed with prejudice.

**B.**    **Plaintiffs Fail To Plead A Claim Under California's Securities Laws (Count Eight).[6]**

    In Count Eight of the CAC, Plaintiffs allege that Ad Agency Defendants' work to create advertising campaigns for FTX constituted "the offer or sale . . . in California of securities that are not qualified through registration" and therefore violated the California Securities Law ("CSL"). CAC ¶¶ 415–422 (adding that section 25504.1 of the CSL extends liability to persons who

---

[5] Any person interested in trading on the FTX Platform or purchasing FTTs or YBAs would have to independently research the company to discover its terms, figure out how to buy FTTs and YBAs, and take whatever steps were necessary to use the FTX Platform.

[6] Preliminarily, Plaintiffs have failed to plead any nexus between their California claims and the state of California. Only two named Plaintiffs, Cabo and Henderson (CAC ¶¶ 46-47), are alleged to be residents of California. Yet Plaintiffs' California-law claims are all brought in the alternative by a different alleged plaintiff—referred to only as "Piano"—who is not even listed as one of the sixteen named Plaintiffs. (CAC ¶¶ 45-59; 410-440.) Further, these alternative claims were brought on behalf of "California subclasses" (*Id.* ¶¶ 410-440) which are nowhere defined. Plaintiffs allege no acts that took place in California; the California claims are brought by an unnamed Plaintiff; Dentsu is not alleged to be a resident of California or even to have done business in California (*Id.* ¶ 61); and there are no allegations that Dentsu disseminated any alleged misrepresentations from California. Their California-law claims against Dentsu should be dismissed on that basis alone. *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 85 Cal. Rptr. 2d 18 (1999) ("[T]he UCL was not intended to regulate conduct unconnected to California.").

materially assist in such violation).  Not so.  Plaintiffs have failed to plead that FTX is a security, and even if they had, they have not pled the requisite *privity*.

To plead a claim under the CSL, Plaintiffs must allege either privity or that Ad Agency Defendants "materially assist[ed]" in the sale of the unregistered security and did so with the "intent to deceive or defraud."  Cal. Corp. Code §§ 25110, 25503, 25504.1; *see also In re All. Equip. Lease Program Sec. Litig.*, 2002 WL 34451621, at *11 (S.D. Cal. Oct. 15, 2002); *Hollifield v. Resolute Cap. Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023).  Only those in privity with the buyer can be held liable for alleged sales of securities by unlicensed broker-dealers. Cal. Corp. Code §§ 25210(b), 25501.5; *see also Jackson v. Fischer*, 2015 WL 1143582, at *22 (N.D. Cal. Mar. 13, 2015) ("Section 25501.5 expressly requires privity of contract as a condition to liability.").  Yet Plaintiffs clearly allege that *FTX*, not Ad Agency Defendants, was in privity with the buyers. And Plaintiffs' allegations about Ad Agency Defendants' "assistance" and "intent" are boilerplate and conclusory.  Plaintiffs meet neither of the requirements for a claim to be under the CSL.  The Court must therefore dismiss Count Eight.

### C.   Plaintiffs Fail To Plead A Claim Under Oklahoma's Securities Laws (Count Thirteen).[7]

Count Thirteen broadly contends that Ad Agency Defendants violated the Oklahoma Uniform Securities Law ("OUSL") because they sold unregistered securities and that the "FTX Platform, YBAs and/or FTTs Tokens are each a security pursuant to Okla. Stat. 1-202(32)."[8] (CAC ¶¶ 450-51.)  But the FTX Platform is not a security—it's a platform, an exchange—and

---

[7] Plaintiffs' CAC references the Oklahoma Uniform Securities Act of 1980.  However, the operative statute is the Oklahoma Uniform Securities Act of 2004, Okla. Stat. tit. 71, §§ 1-101 to 1-701.

[8] The relevant section of the operative statute is Okla. Stat. tit. 71, §1-102(32).

Plaintiffs don't claim to have owned the FTX Platform or any interest in it, just that they "deposited or invested through an FTX Platform." (CAC ¶ 54.) Therefore, no claim lies under the OUSL.

Plaintiffs say Ad Agency Defendants' are liable "pursuant to section 1-509 for both primary and secondary violations of Oklahoma securities law[.]" (*Id.* ¶ 452.) But Plaintiffs do not allege any facts that would support primary or secondary liability.

Primary liability to a purchaser under the OUSL arises when a

> person *sells* a security in violation of Section 1-301 of this title, or by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission, and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission.

Okla. Stat. tit. 71 §1-509(B) (emphasis added). Secondary liability arises where the defendant (a) directly or indirectly controlled the seller, was a managing partner, executive officer, director, employee, or associate of the seller, or otherwise materially aided the seller; *and* (b) knew or could have known, in the exercise of reasonable care, of the alleged fraud. Okla. Stat. tit. 71, §1-509(G). Plaintiffs do not allege that Ad Agency Defendants sold anything to them,[9] Nor do they allege that Ad Agency Defendants controlled, managed, or otherwise materially aided the seller (FTX), *and*, knew, or "in the exercise of reasonable care" could have known of the conduct giving rise to the violation. These are key limitations on liability under the OUSL (and its predecessor). Okla. Stat. tit. 71, § 1-509; *Nikkel v. Stifel, Nicolaus & Co., Inc.*, 542 P.2d 1305, 1308 (Okla. 1975); *cf.*, *Farlow v. Peat Marwick Mitchell & Co.*, 666 F. Supp. 1500, 1506 (W.D. Okla. 1987) (conclusory allegations that defendant "knew or should have known" of alleged fraud are insufficient; noting

---

[9] The Oklahoma Supreme Court has held that the "seller" of securities is the issuer, not the broker-dealer. *Musson v. Rice*, 1987 OK 66, 739 P.2d 1004 (Okla. 1987). Plaintiffs do not plausibly allege that Ad Agency Defendants issued or were broker-dealers of any securities.

that "'secondary liability does not sweep up all people who can be characterized as participants in or contributors to the success of the firm that issues the securities.'") (quoting *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 495 (7th Cir. 1986).

As Plaintiffs fail to state a claim for violation of Oklahoma's securities laws, the Court must dismiss Count Thirteen.

## II.   PLAINTIFFS FAIL TO STATE ACTIONABLE STATE LAW CONSUMER-PROTECTION CLAIMS (COUNTS TWO, SEVEN, AND TWELVE).

Plaintiffs assert claims under the consumer-protection statutes of Florida, California, and Oklahoma. Each of these claims fail as a matter of a law to plausibly state any actionable claim against Ad Agency Defendants and, thus, the Court should dismiss them.

### A.   Plaintiffs Fail To State A Claim Against Ad Agency Defendants Under The Florida Deceptive And Unfair Trade Practices Act ("FDUTPA") (Count Two).

Plaintiffs' FDUTPA claim is fatally flawed.  First, Ad Agency Defendants are exempt from any claim under the FDUTPA because the statute does not extend to alleged claims arising from transactions including securities.  Second, even if Plaintiffs' claim could theoretically be asserted against Ad Agency Defendants, it still fails because Plaintiffs do not, and cannot, state any claim under the elements of the statute.

#### 1.   Ad Agency Defendants Are Exempt From The FDUTPA Because Count Two Is Rooted In Alleged Securities Transactions And Involves An "Information Disseminator."

As a matter of law, the FDUTPA does not apply to claims "rooted in [alleged] securities transactions." *Feng v. Walsh*, 2021 WL 8055449, at *13 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022) (dismissing FDUTPA claim); *Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1316 (N.D. Fla. 2003) ("[T]he FDUTPA, like most state unfair trade practices acts, is largely modeled after Section 5 of the Federal Trade Commission Act, and the FTC Act has been consistently interpreted to *preclude* coverage of

14

securities claims in the overwhelming majority of state and federal courts addressing this issue.")
(quotation omitted) (emphasis added); *Minshall v. TD Evergreen*, 2005 WL 8145046, at *1
(M.D. Fla. Aug. 4, 2005) (same).  Since the gravamen of Plaintiffs' CAC is clearly rooted in
alleged "securities transaction(s)," (*see, e.g.*, CAC ¶¶ 2, 4–9, 32–38, 241, 246, 271, 370–71, 357),
those transactions are not subject to the FDUTPA.

Nor is the FDUTPA lawfully applied to an "advertising agency" (CAC ¶ 307), like
Ad Agency Defendants.  By its own terms, the FDUTPA makes clear that Ad Agency Defendants
are exempt:

> [e]xcept as provided in s. 501.2041, a publisher, broadcaster, printer, or other
> person *engaged in the dissemination of information* or the reproduction of printed
> or pictorial matter, insofar as the information or matter has been disseminated or
> reproduced on behalf of others without actual knowledge that it violated this part.

Fla. Stat. § 501.212(2) (emphasis added).[10]   Because Plaintiffs' CAC alleges Ad Agency
Defendants simply designed or produced marketing materials on behalf of FTX (CAC ¶¶ 61–62,
284, 288–292, 310–14, 324–25, 327–28)—and nothing more—Plaintiffs' FDUTPA claim against
Ad Agency Defendants cannot stand.

### 2.      Plaintiffs Fail To Plead The Elements Of A FDUTPA Claim.

It is well-established that plaintiffs asserting a FDUTPA claim must allege "(1) a deceptive
act or unfair trade practice; (2) causation; and (3) actual damages."  *Dolphin, LLC v. WCI
Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).  Assuming that Plaintiffs' claims were
not exempt from the FDUTPA, Count Two still fails since Plaintiffs have not pled, and cannot ever
sufficiently plead, any of the elements of their FDUTPA claim.

---

[10] Section 501.2041 concerns prohibited actions by "social media platforms."   Ad Agency
Defendants are not social-media platforms.

**(a)      Ad Agency Defendants Did Not Commit Unfair Trade Practices Against Plaintiffs.**

Although Plaintiffs' "shotgun pleading" exceeds 140 pages[11], it is wholly lacking *any* specific allegations regarding Ad Agency Defendants' purported "deceptive acts" or "unfair trade practices." "'[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).  "The deception must be *probable, not possible*, and must be likely to cause injury to a *reasonably relying consumer*."  *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (quotation omitted) (emphases added).  Moreover, "[w]here a [FDUTPA] claim is grounded in fraud, the complaint must also comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327 (S.D. Fla. 2017); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1332–33 (S.D. Fla. 2012)) (dismissing FDUTPA claim where allegations failed to explain "how the statements misled [p]laintiffs").  An unfair trade practice, on the other hand, is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *PNR, Inc.*, 842 So. 2d at 777 (quotation omitted).

Nowhere in the CAC do Plaintiffs allege that Ad Agency Defendants fraudulently misled anyone or acted "immorally" or "against public policy."  (*See, e.g.*, CAC ¶¶ 150, 172, 312, 315-16.)  Plaintiffs do not ever allege (because they can't) that Ad Agency Defendants knew or were even tangentially aware of the FTX Insiders' wrongful conduct.  (*See Id.* ¶¶ 150, 172.)  Plaintiffs

---

[11] *See Brown v. Tony*, 2023 WL 6973026, at *2 (S.D. Fla. Oct. 23, 2023) (dismissing "shotgun pleading") (Moore, J.).

instead describe marketing campaigns where Ad Agency Defendants helped create, *inter alia*, "an immersive virtual bobblehead experience" (*Id.* ¶ 291) and three comedic commercials for FTX that stated, "Don't miss out on crypto" and asked, "You in?"   (*Id.* ¶¶ 309–10, 320.)  These marketing campaigns' sole purpose was, as alleged, to create FTX brand awareness.  To the extent any statements in these commercials may have "evoke[d] the feeling that crypto is the next big breakthrough," (*Id.* ¶ 315), those statements were general, and classic, non-actionable "puffery."  *See Fineman v. Ferragamo USA Inc.*, 2023 WL 3778264, at *7 (S.D. Fla. May 12, 2023), *appeal dismissed*, 2023 WL 5939033 (11th Cir. Jul. 19, 2023) (statements about the "high quality" of a product "are nothing more than mere puffery and therefore cannot form the basis of a FDUTPA claim"); *cf. Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) (collecting cases and affirming dismissal because "the characterization of a company's performance as 'strong' constitutes mere puffery").  Because Plaintiffs cannot allege *Ad Agency Defendants* engaged in any "deceptive acts," or *Ad Agency Defendants* engaged in any "unfair trade practices," Count Two fails to plausibly state a claim.

### (b)   Plaintiffs Fail To Plead Causation.

To "prove the causation element of a FDUTPA claim," Plaintiffs must plead causation by alleging "that an objectively reasonable person would have been deceived" by the purportedly misleading statement.  *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (quotation omitted).  "Causation must be *direct, rather than remote or speculative.*"  *Id.* (quotation omitted) (emphasis added) (holding that plaintiff's theory of causation was "too remote and speculative to satisfy the causation element [since] Defendants themselves do not set the retail prices of the Products; rather, [third-party] retailers . . . ultimately set the prices" that purportedly caused plaintiffs their damages); *see also Pop v. Lulifama.com LLC*, 2023 WL 4661977, at *3 (M.D. Fla. July 20, 2023) (dismissing FDUTPA claim because, among other

things, plaintiff failed to identify "which posts from the Influencer Defendants led him to purchase the [contested] product or provided any details of the . . . Defendants' alleged scheme to pay the Influencer Defendants to promote [the contested] products—other than asserting that [the seller] pays 'significant monies' to promote its products").

Plaintiffs do not allege *any* causal link between Ad Agency Defendants' services to FTX and Plaintiffs' decisions to purchase unregistered securities from FTX.  Specifically, Plaintiffs fail to allege that (i) Ad Agency Defendants "controlled" an FTX Platform, (ii) Plaintiffs purchased any fiat currency deposited or invested in an FTX Platform as a direct result of Ad Agency Defendants' services, or (iii) Plaintiffs even viewed Ad Agency Defendants' marketing campaigns. *Molina*, 635 F. App'x at 627 (affirming dismissal of FDUTPA claim where plaintiff did not assert that "but for" the representations she would not have completed the transaction).  Even in a fantasy wherein all members of the would-be classes viewed Ad Agency Defendants' marketing campaigns, Plaintiffs readily admit that the "problems with cryptocurrencies [described in the CAC] are well known and one of the big reasons why consumers are hesitant to purchase or use cryptocurrencies." (*See* CAC ¶ 184.)  In other words, not only do Plaintiffs fail to show that Ad Agency Defendants directly caused them any harm, but any objectively reasonable person who may have viewed any of the marketing campaigns were well aware they needed to conduct their own due diligence before using an FTX Platform.  Plaintiffs' own allegations are thus absolutely fatal to Plaintiffs' would-be FDUTPA claim.

### (c)     Ad Agency Defendants Do Not Have Legal Duties to Plaintiffs Under the FDUTPA.

Count Two is also not actionable because Ad Agency Defendants had no duty to advise the public to conduct their own due diligence before using an FTX Platform.  Under the FDUTPA, Ad Agency Defendants had "no duty to take precautions to protect against criminal acts *of third*

*parties.*" *See Josefsberg v. Uber Techs., Inc.*, 2023 WL 5670301, at *4-5 (S.D. Fla. Aug. 31, 2023)

(emphasis added) (dismissing FDUTPA claim); *see also Virgilio v. Ryland Grp.*, 680 F.3d 1329,

1338 (11th Cir. 2012) (dismissing FDUTPA claim because "the alleged duty of disclosure did not

exist under Florida law"); *Behrman v. Allstate Ins.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005)

("Under Florida law, omissions are not actionable as fraudulent misrepresentations unless the party

omitting the information owes a duty of disclosure to the party receiving the information"), *aff'd*,

178 F. App'x 862 (11th Cir. 2006).[12]   FTX, not Ad Agency Defendants, engaged in fraudulent

criminal conduct.  FTX, not Ad Agency Defendants, is responsible for Plaintiffs' losses.

### B.   Plaintiffs Fail To State A Claim for Violation Of California's Unfair Competition Law ("UCL") (Count Seven).

To assert a UCL claim (Cal. Bus and Prof. Code § 17200), a plaintiff must plead, with

particularity: (1) a knowingly unlawful, unfair, or deceptive practice; (2) causation; and (3)

damages.  *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1004 (N.D. Cal. 2009); *Zhang v.*

*Twitter Inc.,* 2023 WL 5493823, at *7 (N.D. Cal. Aug. 23, 2023).  Plaintiffs fail on all three fronts.

#### 1.   Plaintiffs Fail To Allege A Knowingly Unlawful, Unfair, Or Deceptive Act Or Practice.

##### (a)   No Allegations Ad Agency Defendants Made Statements.

Plaintiffs have failed to plead a cognizable claim with the specificity that Rule 9(b)

requires: Nowhere in their 140-plus page CAC do Plaintiffs even approach their burden to establish

---

[12] Count Two also independently fails because Plaintiffs have not sufficiently alleged that *Ad Agency Defendants* caused them any "actual damages" as the FDUTPA requires. *See* Fla. Stat. § 501.211(2); *Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, 2018 WL 7287192, at *14 (S.D. Fla. Jan. 31, 2018) (dismissing FDUTPA claim since plaintiff only asserted damages "in purely conclusory terms and impermissibly allege[d] consequential damages"); *see also Mantz v. TRS Recovery Servs., Inc.*, 2012 WL 12897159, at *3 (S.D. Fla. Oct. 30, 2012) ("FDUTPA does not provide for the recovery of special or consequential damages"). To be sure, Plaintiffs have pled that the FTX Platform criminally imploded, but nowhere in the CAC do Plaintiffs allege actual harm they suffered *from Ad Agency Defendants* because of that implosion.

Ad Agency Defendants engaged in knowingly false or deceptive acts or practices.   Rule 9(b)

requires specific, non-conclusory allegations demonstrating when or how Ad Agency Defendants

made misleading statements.  Yet Plaintiffs cannot and do not explain how Ad Agency Defendants'

marketing services for FTX constitute misleading statements *by Ad Agency Defendants to any*

*plaintiff or putative class member*.   Plaintiffs allege no such statements and cannot, because as

advertising agencies, Ad Agency Defendants do not *make* statements.[13]

Plaintiffs do not plead any specific misrepresentations that Ad Agency Defendants made.

Rather, Plaintiffs allege that FTX retained Ad Agency Defendants to manage or create FTX

marketing via events or commercials, some of which used "a comedic tone" and "evoke[d] the

feeling that crypto was the next big breakthrough."  (CAC ¶¶ 311, 314, 315.)  But Plaintiffs do not

(and cannot) allege that Ad Agency Defendants made statements to them or any class member.

They merely allege Ad Agency Defendants created concepts and campaigns—in which *others*

made statements that are classic "puffery."   *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d

1023, 1028 (11th Cir. 2003) (statement amounted to non-actionable puffery where the statement

was "not the sort of empirically verifiable statement that can be affirmatively disproven.").

### (b)    Plaintiffs Fail To Allege Ad Agency Defendants Participated In Misconduct.

Plaintiffs do not allege that *Ad Agency Defendants* participated in any misconduct.  When

a UCL claim is based on deceptive acts of a corporation with which a defendant has a business

---

[13] Plaintiffs conclusively aver that producing advertisements—for a client apparently no one believed illegitimate in real time—was a deceptive act.  (CAC ¶¶ 296–300, 319–323).  But it is simply implausible to allege that creating advertising content under a routine engagement is a "deceptive act" solely because FTX was later found to be covertly perpetuating a fraud.  These allegations do not meet federal pleading standards under *Iqbal* or *Twombly*, much less under Rule 9(b).  *See, e.g.*, *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014) (holding that "Rule 9(b) applies to all elements of a securities fraud action, including loss causation[,]" a heightened pleading standard compared to *Iqbal* and *Twombly*).

relationship, the plaintiff must plausibly allege the defendant *personally participated in* and *knew of* the associated corporation's wrongdoing. *See, e.g., Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *4 (E.D. Cal. Oct. 8, 2020) (defendant's liability under UCL "must be based on his personal participation in the unlawful practices and unbridled control over th[ose] practices") (emphasis added).

Plaintiffs do not (and cannot) plausibly allege Ad Agency Defendants had knowledge of or participated in FTX's secret wrongdoing.   Sophisticated investors, regulatory enforcement officials, financial institutions, business media, and Plaintiffs themselves were all unaware of FTX's fraud at the time of the subject marketing campaigns.   Unable to allege actual participation or knowledge, Plaintiffs resort to allegations that Ad Agency Defendants had the "financial incentive" to promote FTX (CAC ¶¶ 294–95, 317), "should have known that FTX's platform was built atop a house of cards." (*Id.* ¶¶ 296, 320) and, despite the regulators' and sophisticated investors' apparent inability to do so—were expected to "understand how FTX was pooling investments in a common enterprise and using those assets to generate the promised returns" (*Id.* ¶¶ 300, 323).   These expectations are simply unreasonable, even in hindsight, and Plaintiffs' generic allegations of wrongdoing are grossly insufficient to state a UCL claim under federal pleading standards. *Taylor*, 2020 WL 5982090, at *4.

### 2. Plaintiffs Fail To Allege Causation.

Plaintiffs fail to allege but-for causation between Ad Agency Defendants' alleged conduct and any actual damage Plaintiffs claim.  The "direct" cause of Plaintiffs' injuries was *FTX's* secret misconduct, not Ad Agency Defendants' marketing services. *FTX*—not Ad Agency Defendants— was a fraud. *FTX*—not Ad Agency Defendants—misled the public. *FTX*—not Ad Agency Defendants—misappropriated the Plaintiffs' funds.  Where, as here, a plaintiff is damaged by a third-party's actions, the causal chain is broken. *See Berkoff v. Masai USA Corp.*, 2011 WL

13224836, at *6 (C.D. Cal. Mar. 3, 2011) (dismissing UCL claim for lack of causation and finding plaintiff failed to allege requisite causal connection that she made purchase based upon statements a salesperson—not the defendant—made when selling defendants' product).

Plaintiffs do not and cannot allege that most class members heard or saw the Ad Agency Defendants' marketing campaigns, or that they themselves do not allege they experienced the subject marketing campaigns. *See, e.g., Mazza v. Am. Honda Motor C*o., 666 F.3d 581, 595 (9th Cir. 2012) (holding classwide presumption of reliance inappropriate where many class members never saw allegedly misleading advertisements prior to purchase); *Campion v. Old Republic Home Prot. Co*., 272 F.R.D. 517, 536 (S.D. Cal. 2011) ("[A] causal link must exist between the alleged conduct and the alleged injury" and "one who was not exposed to the alleged misrepresentation and therefore could not possibly have lost money or property as a result of the unfair competition is not entitled to restitution."); *Gonzalez v. Proctor & Gamble Co*., 247 F.R.D. 616, 624-25 (S.D. Cal. 2007) (same); *cf. Sevidal v. Target Corp*., 117 Cal. Rptr. 3d 66, 83 (Cal. Ct. App. 2010) (denying class certification in a case alleging a UCL claim where majority of class members did not see allegedly false representation).

But even if they had, their UCL claim would fail. There is simply no causal nexus between Ad Agency Defendants' services as advertising agencies for FTX and the Plaintiffs' losses.[14]

---

[14] Plaintiffs' UCL claim also fails because a "UCL action is equitable in nature" and relief is "limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1144 (2003). Here, Plaintiffs cannot request injunctive relief because there is no threat of imminent, future injury. Likewise, restitution under the UCL is limited to the amount the defendant received as a result of its unlawful, unfair, or fraudulent acts or practices. Plaintiffs cannot make a claim for restitution against Ad Agency Defendants because they do not hold "'any money or property that [ Ad Agency Defendants] took directly from [P]laintiff[s].'" *Sugarman v. Brown*, 73 Cal. App. 5th 152, 164 (Cal. 2021), *unpublished* (quoting *Korea Supply*, 29 Cal. 4th at 1150- 51). Plaintiffs' failure to state a claim for damages under the UCL defeats their UCL claim.

**3.      The UCL Does Not Apply To Claims Related To Unregistered Securities.**

Finally, Plaintiffs' UCL claim fails because this case is "rooted" in alleged securities transactions and, therefore, the UCL simply does not apply.  Plaintiffs allege that the FTX Platform sold unregistered securities.  (*See, e.g.*, CAC ¶¶ 2–3, 8–9, 13, 32, 34, 38, 64, 232–233, 245, 270–73, 298, 321, 355, 357, 364, 371, 374, 386, 388, 407, 438.)  But the UCL (like the FTC Act on which it is loosely based) does not apply to claims that are "rooted in [alleged] securities transactions." *Betz v. Trainer Wortham & Co., Inc.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011) ("No court, however, has allowed [UCL claims] to proceed where, as here, the predicate acts are [alleged] securities transactions.").

For these reasons, Plaintiffs' UCL claim fails, and the Court must dismiss Count Seven.

**C.      Plaintiffs Fail To State A Claim For Violation of The Oklahoma Consumer Protection Act (Count Twelve).**

Count Twelve is a claim for violating the Oklahoma Consumer Protection Act ("OCPA"). To state an OCPA claim, Plaintiffs, as private consumers, must plausibly allege "(1) that the defendant engaged in an unlawful practice as defined [in the OCPA]; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000).  Plaintiffs contend Ad Agency Defendants violated the OCPA by engaging in unfair or deceptive trade practices in violation of the OCPA. CAC ¶¶ 443–445.

The OCPA defines unfair trade practices as "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  Okla. Stat. tit. 15 §752(14).  The Oklahoma Supreme Court has defined a "consumer," as used in the OCPA, "[o]ne who uses economic goods and so diminishes or destroys

their utilities; opposed to producer" or a "person who buys goods or services for personal, family, or household use, with no intention of resale," that is, "one who consumes or uses economic goods." *Lumber 2, Inc. v. Illinois Tool Works, Inc.*, 261 P.3d 1143, 1147-49 (Okla. 2011) (citations omitted).[15]

### 1.     Ad Agency Defendants Are Not Sellers To Consumers.

Plaintiffs assert Ad Agency Defendants violated the OCPA because FTX hired them to create marketing campaigns in connection with sports.  (CAC ¶¶ 284, 288–292, 305-328.)  While Ad Agency Defendants may have provided marketing services to FTX—as a vendor—they are not alleged to have been *selling* anything to consumers.  This failure is fatal to Plaintiffs' claim, because courts have limited the OCPA's application—consistent with its clear legislative intent— to buyers (*i.e.*, plaintiffs) who purchase goods or services from sellers (*i.e.*, defendants):

> If the Court were to construe this statute as Plaintiffs request, the result would be that every action alleged to be immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers in the course of business could give rise to litigation under the [Oklahoma] Consumer Protection Act, an act designed to protect buyers from sellers.  Furthermore, the remedy portions of the Act addresses, in part, "customers."  "The commission of any act or practice declared to be a violation of the Consumer Protection Act shall render the violator liable to the aggrieved consumer for payment of actual damages sustained by the *customer*[.]" Okla. Stat. tit. 15 § 761.1(A)(emphasis added).  Clearly Plaintiffs do not allege they were customers of Defendants.

*Melvin v. Nationwide Debt Recovery, Inc.*, 2000 WL 33950122, at *3 (W.D. Okla. Aug. 24, 2000); *see also White v. CitiMortgage*, 2012 WL 13024694, at *3 (W.D. Okla. June 15, 2012) (OCPA did not apply because defendant had not sold or offered to sell a good or service to plaintiffs); *CTI Services LLC. v. Haremza*, 797 F. Supp. 2d 1257, 1263 (N.D. Okla. 2011) (OCPA did not apply to plaintiffs' claims because they were not consumers of defendants' products); *Eldridge v. Equifax,*

---

[15] The OCPA does not expressly defines the term "consumer."

*Inc.*, 2019 WL 1179420, at * (W.D. Okla. March 13, 2019) ("This Court has held that Oklahoma intended to limit application of the [OCPA] to problems arising between buyers and sellers[.]" (quotation omitted)); *James v. Tyson Foods, Inc.*, 292 P.3d 10, 18 (Okla. 2012) (OCPA applies to buyers who are consumers of the product sold).

Plaintiffs did not buy anything from Ad Agency Defendants. The OCPA doesn't apply.

### 2.   Ad Agency Defendants' Conduct Is Exempt Under the OCPA.

The OCPA also provides an exemption to "[p]ublishers, broadcasters, printers or other persons insofar as an unlawful practice as defined in Section 753 of this title involves information that has been disseminated or reproduced on behalf of others without knowledge that it is an unlawful practice." Okla. Stat. tit. 15 §754(1). Plaintiffs' "knowledge" of the fraud allegations against Ad Agency Defendants are wholly conclusory and unsupported by any plausible factual allegations. Plaintiffs cannot plausibly plead that Ad Agency Defendants knew FTX was a fraud.

### 3.   Plaintiffs Fail To Plausibly Plead Causation.

Plaintiffs must also demonstrate causation to recover under the OCPA, "that is, [damages] must be shown to have been caused by the actions which the plaintiffs contend constituted the violation of the Consumer Protection Act." *Terry v. Nuvell Credit Corp.* 2007 WL 2746919, at *5 (W.D. Okla. Sept. 20, 2007) (citation omitted). Plaintiffs' OCPA claim is that Ad Agency Defendants knew or should have known that FTX was a fraud, but nevertheless agreed to manage or design FTX marketing materials, those materials appeared in connection with sporting events (CAC ¶¶ 284–92, 305–328), and Plaintiffs lost money because they owned or otherwise possessed some sort of FTX asset that is now worthless (*Id.* ¶ 54). Singularly lacking from the CAC, however, is *any* allegation that Plaintiffs saw, heard, or even knew of the supposedly unlawful marketing. As Plaintiffs fail to allege that *Ad Agency Defendants* conduct *caused* their losses, the Court must dismiss Count Twelve.

### III.   PLAINTIFFS FAIL TO ALLEGE ANY COMMON LAW STATE TORT CLAIMS (COUNTS THREE, FOUR, FIVE, NINE, TEN, ELEVEN, AND FOURTEEN).

Plaintiffs' tortured attempt to assert claims for (A) civil conspiracy, (B) aiding and abetting fraud, and (C) aiding and abetting conversion under the common laws of Florida, California, and Oklahoma are rife with multiple failures that require the Court to dismiss them with prejudice.

#### A.   Plaintiffs Fail To State A Claim For Civil Conspiracy (Counts Three and Eleven).

##### 1.   The Florida Civil-Conspiracy Claim Fails (Count Three).

Count Three, Plaintiffs' Florida civil-conspiracy claim, purportedly arises from Ad Agency Defendants making "misrepresentations and omissions about the FTX Platform in order to promote false confidence in and to drive consumers to invest in what was ultimately a Ponzi Scheme." (CAC ¶ 368.)  To state a plausible claim for civil conspiracy, Plaintiffs must allege facts that show: (1) an agreement between two or more parties (2) to commit a tort or other unlawful act, (3) an overt act in furtherance of the conspiracy, and (4) damages resulting from the alleged conspiracy under Florida law. *Tippens v. Round Island Plantation LLC*, 2009 WL 2365347, at *4 (S.D. Fla. Jul. 31, 2009) (citing *UTC Indus., Inc. v. Pres. Fin. Corp.*, 976 So. 2d 92, 94 (Fla. 3d DCA 2008)).   Additionally, following the Eleventh Circuit's Rule 9(b) particularity requirement, when a "conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must plead the fraud with specificity." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018) (affirming dismissal of conspiracy claim partly because it "fail[ed] to comport with the standards of Fed. R. Civ. P. 9(b)"); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043,1065 (11th Cir. 2007).  Further, Florida law "does not recognize civil conspiracy as a freestanding tort." *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018); *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014).  A conspiracy claim cannot stand alone and requires alleging an agreement

to commit an "independent wrong or tort." *SFM Holdings*, 764 F.3d at 1339.

> **(a)     Plaintiffs Fail To Allege Any Actionable Agreement Between Ad Agency Defendants And The Actual Fraudsters.**

To satisfy the pleading standard for civil conspiracy, Plaintiffs must set forth factual allegations of an agreement between Ad Agency Defendants and the FTX Entities.  They do not do so.  Plaintiffs fail to identify *any* unlawful *agreement* involving Ad Agency Defendants and FTX.

The CAC alleges Ad Agency Defendants conspired with the "FTX Entities" to commit fraud and induce Plaintiffs "to invest in the YBAs and/or use the FTX Platform," and that Ad Agency Defendants "knew or should have known of potential concerns about FTX selling unregistered crypto securities" because they have "vast resources" and "prominence." (CAC ¶¶ 296, 298, 319, 321.)   These are facially and legally absurd allegations.  *See, e.g., Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *4 (S.D. Fla. Sept. 26, 2018) (dismissing conspiracy and aiding and abetting fraud claims based on allegations the defendant "should have known" about the fraud).  There's also no nexus or "agreement" or any effort to "connect" Ad Agency Defendants to a "conspiracy" to defraud.  Ad Agency Defendants helped create advertisements.  That is all.  Nowhere in the CAC do Plaintiffs allege—generally or specifically— how Ad Agency Defendants conspired to perpetrate FTX's and SBF's crimes upon investors by creating advertisements "promot[ing] a risky financial device" or "promoting the use and adoption of [the] FTX [Platform] for crypto trading."  (CAC ¶¶ 293, 312.)  Ad Agency Defendants were paid as arm's-length service providers for services rendered.  That is all.[16]

---

[16] Throughout the CAC, Plaintiffs consistently set forth conclusory allegations without detailing any of the specific "misrepresentations or omissions" Ad Agency Defendants supposedly made that establish the elements of a conspiracy.  Plaintiffs' conclusory allegations and purported "knew-

> **(b)     Plaintiffs Fail to Allege Ad Agency Defendants Committed Any "Overt Act" That Caused Plaintiffs' Damages.**

Plaintiffs' conclusory allegation that "Defendants' conspiracy with the FTX Entities to commit fraud caused damages to Plaintiffs" (CAC ¶ 390) is a paradigmatic "formulaic recitation of the elements of a cause of action" that is facially insufficient—especially under Rule 9(b). *Twombly*, 555 U.S. at 550.  The CAC generally describes Ad Agency Defendants' promotional activities (*see* CAC ¶¶ 284, 288–292, 305–315), but critically fails to provide facts showing how any of these routine business activities are unlawful or the intent to commit one.  *See*, *e.g.*, *Apex Toxicology, LLC v. United HealthCare Servs., Inc.*, 2020 WL 13551299, at *3 (S.D. Fla. July 7, 2020) (Rule 9(b) requires plaintiff to identify "the content of such statements and the manner in which they misled the plaintiff").  Plaintiffs do not allege facts identifying with whom Ad Agency Defendants agreed, where the agreements were made, or even how such agreement was allegedly reached.  *See United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1310–11 (11th Cir. 2002) (explaining that under Rule 9(b), fraud allegations "must include facts as to time, place, and substance of the defendant's alleged fraud.").  The essence of an actionable conspiracy is a meeting of two independent minds intent on one common purpose. *Cedar Hills Properties Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). However, the CAC fails to explain how the Ad Agency Defendants intended to perpetrate FTX's and SBF's crimes upon investors. If there is no intent to achieve an illegal goal, then there is no conspiracy. *Ginsberg,* 645 So. 2d at 502.

Plaintiffs have a heightened obligation to plead Ad Agency Defendants' intent to commit

---

or-should-have-known" standard simply does not suffice for pleading civil conspiracy under Florida law—especially when the pleading involves allegations of fraud.  Rather, Plaintiffs must demonstrate that Ad Agency Defendants had the specific intent to commit an unlawful act.  *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 502 (Fla. 3d DCA 1994) ("A conspiracy is only unlawful when there is an intent to achieve an illegal goal.").

a wrongful act in the form of an "overt act." *Id.* Plaintiffs have not met their burden because they cannot. For all of these reasons, the Court must dismiss Count Three.

**2.    Plaintiffs' California Civil-Conspiracy Claim Fails (Count Eleven).**

Count Eleven tries to assert a claim for civil conspiracy under California law. Although aiding and abetting and conspiracy are sometimes regarded as "closely allied forms of liability," *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003), conspiracy under California law generally requires an agreement as well as an overt act that causes the harm alleged. *Beck v. Prupis*, 529 U.S. 494, 500 (2000). "The elements of a conspiracy are (1) the formation of a group of two or more people who agreed to a common design to commit a tort, (2) a wrongful act committed under the agreement, and (3) resulting damages." *Gifford v. Hornbrook Fire Prot. Dist.*, 2021 WL 4168532, at *21 (E.D. Cal. Sept. 14, 2021). "Under California law, 'there is no separate and distinct tort cause of action for civil conspiracy.'" *Liberty City Movie, LLC v. U.S. Bank, N.A.*, 824 F. App'x 505, 508 (9th Cir. 2020) (quoting *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997)). This means that "'a civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed.'" *Liberty City*, 824 F. App'x at 508 (quoting *Rusheen v. Cohen*, 39 Cal. Rptr. 3d 516, 526 (Cal. 2006)). Importantly, when a civil-conspiracy claim sounds in fraud, like in Florida, a plaintiff's allegations must meet Rule 9(b)'s heightened pleading standards.

Plaintiffs' civil-conspiracy claim here, under California law, fails as a threshold matter because the CAC does not allege with the requisite specificity the predicate claims of either aiding and abetting or conversion. *See Liberty City*, 824 Fed. App'x at 508 (because plaintiff's aiding-and-abetting and conversion claims failed, plaintiff failed to establish predicate for conspiracy claim; therefore, that claim also failed). The Court need proceed no further in its analysis and must dismiss this claim.

29

Further, Plaintiffs' conspiracy claim fails independently as a matter of law: *Plaintiffs fail to plausibly and particularly allege FTX entered into any unlawful agreement with Ad Agency Defendants*. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly fraudulent statement, and why it is false.'" (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010)); *Ajzenman v. Off. of Comm'r of Baseball*, 487 F. Supp. 3d 861, 868-69 (C.D. Cal. 2020))). The mere act of FTX paying Ad Agency Defendants to design or create marketing campaigns, without Ad Agency Defendants' knowledge of FTX's misdeeds, is insufficient to allege an "agreement" to commit fraud or any other tort. *Id.* Indeed, payment for services rendered—*i.e.*, Ad Agency Defendants doing what all their customers and clients pay them to do, provide marketing and advertisement services is not a plausible basis for alleging Ad Agency Defendants agreed with FTX to commit fraud.

Plaintiffs' civil-conspiracy claim under California law fails to state a cause of action and the Court must dismiss Count Eleven.

### B. Plaintiffs Fail To State Any Actionable Claim For Aiding And Abetting Fraud (Counts Four, Nine, and Fourteen).

#### 1. The Florida Aiding and Abetting Fraud Claim Fails (Count Four).

Count Four alleges Ad Agency Defendants conspired with the FTX Entities to commit fraud and induce Plaintiffs to "deposit funds into what was ultimately a fraudulent house of cards." (CAC ¶ 392.) To state a claim for aiding and abetting fraud under Florida law, Plaintiffs must allege: (1) an underlying violation by the primary wrongdoer; (2) the alleged aider-and-abettor's *knowledge* of the underlying violation; and (3) the alleged aider-and-abettor's *substantial assistance* in commission of the wrongdoing. *Lawrence v. Bank of Am.*, N.A., 455 F. App'x 904,

906 (11th Cir. 2012); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (holding plaintiff must allege actual knowledge and not merely red flags indicating Defendant should have known of the fraud or conversion).  While Plaintiffs detail *FTX's* alleged wrongdoing in detail, Plaintiffs, unsurprisingly, fail to plead *Ad Agency Defendants'* alleged knowledge of, or substantial assistance in, the commission of the alleged fraud.  The Court must thus dismiss Count Four.

### (a)      Plaintiffs Fail To Allege Actual Knowledge Of The Fraud.

Ad Agency Defendants—like the rest of the world—had no knowledge of the fraudulent activities and crimes the FTX Entities and FTX Insiders were perpetrating.  Plaintiffs fail to allege non-conclusory facts plausibly showing Ad Agency Defendants *actually knew* FTX was perpetrating a fraud, breaching its fiduciary duties, or stealing from its customers—which is essential to establish the "actual knowledge" element of Plaintiffs' aiding-and-abetting-fraud claims.  *See Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014).  "[W]hile actual knowledge may be shown by circumstantial evidence, the circumstantial evidence must demonstrate that the aider and abettor *actually knew* of the underlying wrongs committed."  *Angell v. Allergan Sales, LLC,* 2019 WL 3958262, at *13 (M.D. Fla. Aug. 22, 2019) (citing *Perlman*, 559 F. App'x at 993).  Mere constructive knowledge or negligence does not satisfy the "actual knowledge" element of an aiding-and-abetting claim under Florida law.  *See*, *e.g.*, *Perlman,* 559 F. App'x at 992–96; *Lawrence*, 455 F. App'x at 907; *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244-45 (M.D. Fla. 2013). For example, analyzing similar claims of aiding and abetting Ponzi schemes, Florida courts have rejected the theory that an organization aided and abetted a primary tortfeasor by simply doing business with the tortfeasor—exactly the case here—even if

the tortfeasor engaged in allegedly suspicious conduct.[17]  *Id.*  Allegations must go beyond assuming what a defendant "must have," "would have," or "should have" done, and must plead *actual knowledge* to plausibly state a claim.  *Pearson v. Deutsche Bank AG*, 2022 WL 951316, at *8 (S.D. Fla. Mar. 30, 2022) (emphasis added) (dismissing aiding and abetting claim alleging that bank defendants "both failed to investigate 'red flags' and then did nothing about the fraud after they investigated and learned of the fraud").

Plaintiffs' CAC makes only conclusory assertions of describing a so-called failure to investigate "red flags," which are insufficient to state a claim for aiding and abetting fraud.  *E.g.*, *Perlman,* 559 F. App'x at 994.  Plaintiffs only allege Ad Agency Defendants' "prominence" and "vast resources" meant they knew or should have known about FTX's financial fragility and the concerns about FTX selling unregistered securities.  (CAC ¶¶ 298, 321.)  Plaintiffs reference FTX's "rampant mismanagement" and "red flags" without pleading facts showing that Ad Agency Defendants had actual knowledge of same.  *Id.*  The CAC alleges no facts from which to plausibly infer that Ad Agency Defendants suspected, much less knew or even should have known, that FTX was engaged in any fraud, conversion, or other wrongdoing—prior to FTX's collapse in November of 2022.  Rather, Plaintiffs simply speculate about what Ad Agency Defendants *could have learned* about FTX given their resources.

       **(b)**       **Plaintiffs Fail To Plead "Substantial Assistance" To The Fraud.**

Plaintiffs likewise fail to adequately allege that Ad Agency Defendants *knowingly* provided the requisite "substantial assistance" to the FTX Entities.  Substantial assistance requires that "a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby

---

[17] The CAC is facially riddled with generic "hindsight-is-20/20" type allegations. (*See, e.g.,* CAC ¶¶ 2; 117; 157; 159; 296; 298).

enabling" the underlying tort.  *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017).  Because Plaintiffs have not alleged facts showing Ad Agency Defendants had actual knowledge of FTX's alleged wrongdoing, they have necessarily failed to plausibly allege that Ad Agency Defendants "knowingly" rendered substantial assistance.  "[T]he knowledge and substantial assistance components" of aiding and abetting "should be considered relative to one another as part of a single inquiry designed to capture conscious culpable conduct."  *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 504–05 (2023).  Thus, while Plaintiffs state in conclusory terms that Ad Agency Defendants "promoted and/or solicited the FTX Platform, YBAs, and/or FTTs, to Plaintiffs," they fail to offer any facts showing that Ad Agency Defendants "participated in, substantially assisted, and facilitated Bankman-Fried's, the FTX Insiders', and the FTX Group's fraudulent misconduct, *with knowledge* that such fraud was cheating investors."  (CAC at ¶ 394 (emphasis added)).

As with Count Three, Plaintiffs likewise fail to plead Count Four with the particularity Rule 9(b) requires.  When a claim sounds in fraud, a plaintiff must state with particularity the circumstances constituting the fraud.  *Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (Rule 9(b)'s particularity requirement applies to all claims that sound in fraud).  To meet the particularity requirement, Plaintiffs must identify the precise statements, representations made, and the content and manner in which the Ad Agency Defendants misled the plaintiff.  *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,* 287 F. App'x 81, 86 (11th Cir. 2008) ("Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent.").  They do not meet their burden.

Consequently, the Court should dismiss Count Four with prejudice.

### 2.   The California Aiding and Abetting Fraud Claim Fails (Count Nine).

Count Nine must be dismissed because Plaintiffs' allegations are wholly insufficient to

establish either Ad Agency Defendants' knowledge of the purported fraud or that they "substantially assisted" FTX's wrongs.  To state a claim for aiding and abetting fraud under California law, Plaintiffs must allege "(1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and of his or her role in furthering it; and (3) substantial assistance in the wrong."  *Wright v. Schock*, 571 F. Supp. 642, 662–63 (N.D. Cal. 1983), aff'd, 742 F.2d 541 (9th Cir. 1984) (citing *Harmsen v. Smith*, 693 F.2d 932, 944 (9th Cir. 1982)).  To establish knowledge, Plaintiffs must allege Ad Agency Defendants had actual knowledge of the underlying fraud, not merely that certain red flags indicate they should have known of the fraud.  *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("[T]o satisfy the knowledge prong, the defendant must have 'actual knowledge of the specific primary wrong the defendant substantially assisted.'") (quoting *Casey v. U.S. Bank Natl. Assn.*, 26 Cal. Rptr. 3d 401, 406 (2005)).

California has a higher bar to establish knowledge for aiding-and-abetting claims because the alleged aider and abettor must have both actual knowledge of the wrong *and* knowledge "of his or her role in furthering it."  *Wright*, 571 F. Supp. at 662.  "The secondary violator's duty arises from 'knowing assistance of or participation in a fraudulent scheme.'"  *Id.* at 663 (quoting *Harmsen*, 693 F.2d at 944).  "The performance of mere 'ministerial tasks' is insufficient to establish aiding and abetting liability."  *Id.*

Plaintiffs' allegations fail to show Ad Agency Defendants' actual knowledge, let alone the heightened standard requiring their knowledge of their alleged role in furthering FTX's wrongs. Indeed, even if the CAC alleged any facts showing Ad Agency Defendants actually knew about FTX's underlying fraud or conversion—it doesn't—Plaintiffs' allegations are still insufficient because Plaintiffs do not allege that Ad Agency Defendants had any knowledge of how their

routine advertising services furthered FTX's misconduct. Plaintiffs' conclusory assertions of negligence-type allegations, in the form of purported failure to investigate "red flags," simply do not establish Ad Agency Defendants' knowledge of the alleged wrong as a matter of law. *Perlman*, 559 F. App'x at 994; *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014) ("[A]iding and abetting claims fail [when] factual allegations are insufficient to establish (or allow one to fairly infer) [a defendant's] knowledge of the underlying fraud[.]").

Because Plaintiffs fail to establish the requisite knowledge for aiding-and-abetting liability, they also fail to establish Ad Agency Defendants' "substantial assistance" in FTX's scheme. "'[T]he knowledge and substantial assistance' components" of aiding and abetting "'should be considered relative to one another' as part of a single inquiry designed to capture conscious culpable conduct." *Taamneh*, 598 U.S. at 504–05 (quoting *Camp v. Dema*, 948 F.2d 455, 459 (8th Cir. 1991)). Where, as here, the dearth of allegations of a defendant's knowledge regarding the alleged scheme shows that no facts could plausibly give rise to the reasonable inference the defendant substantially assisted or encouraged the wrongdoing, a claim for aiding and abetting will not lie. *Chen v. PayPal, Inc.*, 275 Cal. Rptr. 3d 767, 786 (Cal. Ct. App. 2021) ("'[A]iding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct . . . it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'" (quoting *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 32 Cal. Rptr. 3d 325, 340 n.10 (Cal. Ct. App. 2005))). Substantial assistance also requires that a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the underlying fraud or conversion. *See, e.g., IIG Wireless, Inc. v. Yi*, 231 Cal. Rptr. 3d 771, 794 (Cal. Ct. App. 2018).

### 3. Plaintiffs' Claim For Aiding And Abetting Fraud Under Oklahoma Law Fails (Count Fourteen).

The Oklahoma Supreme Court has not recognized liability for aiding and abetting fraud. *See Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1196 (N.D. Okla. 2020). In fact, at least two federal district courts have dismissed fraud claims against secondary actors based on the assumption that Oklahoma does not recognize a cause of action for aiding and abetting fraud. *Transp. All. Bank, Inc. v. Arrow Trucking Co.*, 2011 WL 221863, at *5 (N.D. Okla. Jan. 21, 2011); *Eastwood v. Nat'l Bank of Commerce, Altus, Okla.*, 673 F. Supp. 1068, 1081 (W.D. Okla. 1987).

Even if Plaintiffs' aiding-and-abetting claim might otherwise be valid (it is not), it fails for the same reasons discussed throughout this brief: the CAC is utterly silent on both Ad Agency Defendants' actual knowledge (because there is none) of FTX's purportedly fraudulent scheme, and how Ad Agency Defendants' services "substantially assisted" the fraud (because they did not) in any way. *See Almeida*, 471 F. Supp. 3d at 1197–98 (even if Oklahoma recognized claims for aiding and abetting fraud, allegations against a bank that failed to stop fraudulent acts of a promoter were insufficient to establish a claim because the complaint did not allege actual knowledge or intent to aid in the fraud (*i.e.*, substantial assistance)); *MidFirst Bank v. Keefe, Bruyette & Woods, Inc.*, 2008 WL 11338073, at *6 (W.D. Okla. Apr. 23, 2008) (plaintiff failed to establish claim for liability under Section 1-509(G)(5) of Oklahoma Securities Act because plaintiff failed to allege required knowledge and intent to defraud to establish underlying claim for fraud). Therefore, Plaintiff's claim against Ad Agency Defendants for aiding and abetting fraud under Oklahoma law also fails, and the Court must dismiss it with prejudice.

### C.    Plaintiffs Fail To State Aiding And Abetting Conversion Claims (Counts Five and Ten).

#### 1.    The Florida Aiding And Abetting Conversion Claim Fails (Count Five).

Plaintiffs allege that Ad Agency Defendants aided and abetted the FTX Group, which "wrongfully interfered with Plaintiffs' possessory interest in a specific, identifiable sum of money." (CAC ¶ 398.)  The Court must dismiss Count Five for the same deficiencies that warrant dismissal of Count Four under Florida law for aiding and abetting fraud, namely, Plaintiffs' failure to sufficiently plead with heightened specificity the requisite second and third elements required to state a claim for aiding and abetting under Florida Law: the alleged aider and abettor's *knowledge* of the underlying violation and the alleged aider and abettor's *substantial assistance* in commission of the wrongdoing.  *Lawrence*, 455 F. App'x at 906; *Honig* 339 F. Supp. 3d at 1343.  Here, Plaintiffs allege *no* facts suggesting that Ad Agency Defendants possessed actual knowledge about any underlying "conversion" of Plaintiffs' property.  *See, e.g.*, *Yuanxiao Feng v. Walsh*, 2020 WL 5822420, at *8 (S.D. Fla. Sept. 14, 2020) (dismissing aiding and abetting conversion claim based on insufficient allegations the defendant should have known about the fraud based on red flags), *report and recommendation adopted*, 2020 WL 5819615 (S.D. Fla. Sept. 30, 2020).  Plaintiffs do not and cannot plead that Ad Agency Defendants "knowingly" provided the requisite substantial assistance to the primary tortfeasor.  The Court must thus dismiss Count Five.

#### 2.    Plaintiffs Fail To State A Claim For Aiding And Abetting Conversion Under California Law (Count Ten).

Count Ten must be dismissed for the same reasons the aiding-and-abetting-fraud claim under California law must be dismissed: Plaintiffs do not establish actual knowledge of the supposed conversion or that Ad Agency Defendants "substantially assisted" in the commission of FTX's wrongs.  *Wright*, 571 F. Supp. at 662–63.  Alleging Ad Agency Defendants "should have known" of the fraud is insufficient.  *See In re First All. Mortg. Co.*, 471 F.3d at 993.  This is

especially true when considering, again, California's heightened standard to establish knowledge for aiding-and-abetting claims requires knowledge of an alleged wrong *and* "his or her role in furthering it." *Wright*, 571 F. Supp. at 662.

The CAC alleges no facts showing that Ad Agency Defendants actually knew about FTX's underlying conversion or that they had any knowledge of how their advertising efforts allegedly helped further this wrong. This failure to plausibly plead Ad Agency Defendants' actual knowledge of the alleged scheme is fatal to Plaintiffs' claim for aiding and abetting conversion. *Chen*, 275 Cal. Rptr. 3d at 786 (Cal. Ct. App. 2021). The Court must also dismiss Count Ten.

## IV.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR DECLARATORY JUDGMENT (COUNT SIX).**

The Court must dismiss Plaintiffs' "Declaratory Judgment" claim for several independent reasons. *First*, because all of Plaintiffs' other claims fail for the reasons stated above, the procedural nature of this request for "declaratory judgment" means that this too must fail. *See California v. Texas*, 593 U.S. 659, 672 (2021) ("[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998) ("There being no controversy over whether petitioner failed to file reports, or over whether such a failure constitutes a violation, the declaratory judgment is not only worthless to respondent, it is seemingly worthless to all the world."). *Second*, declaratory judgment is meant to prevent forward-looking harms, not backward-looking harms, and all of Plaintiffs' alleged harms are backward-looking. *Third*, declaratory judgment is not the proper vehicle for the Court to determine the sufficiency, or not, of the allegations in Plaintiffs' CAC.

"Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own." *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180,

1195 (S.D. Fla. 2021); *Jolibois v. Fla. Int'l Univ. Bd. of Trs.*, 654 F. App'x 461, 466 (11th Cir. 2016) ("The Declaratory Judgment Act is procedural in operation and does not confer independent jurisdiction upon this Court"). Accordingly, where "substantive claims do not survive, [a] derivative request for declaratory relief must be dismissed." *Eveillard v. Nationstar Mortg. LLC*, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015). As Ad Agency Defendants detail in this brief, Plaintiffs have not adequately alleged facts to support *any* of their would-be substantive claims against Ad Agency Defendants. Declaratory relief is thus wholly improper.

Further, courts regularly exercise their discretion to dismiss backward-looking declaratory-judgment claims that would be equally resolved by adjudication of other substantive claims. *Park Place Kendall Condo. Ass'n, Inc. v. Rockhill Ins.*, 2022 WL 18779644, at *2 (S.D. Fla. June 24, 2022) (dismissing backward-looking declaratory-judgment claim that was duplicative of affirmative substantive claim); *550 Seabreeze Dev. LLC v. Ill. Union Ins.*, 2020 WL 473610, at *3 (S.D. Fla. Jan. 29, 2020) (same); *Garcia v. Scottsdale Ins.*, 2018 WL 3432702, at *2 (S.D. Fla. July 16, 2018) (same); *Fernando Grinberg Tr. Success Int. Props., LLC v. Scottsdale Ins.*, 2010 WL 2510662, at *2 (S.D. Fla. June 21, 2010) (same); *Vior Funeral Homes, Inc. v. Hartford Fire Ins.*, 2017 WL 5953289, at *2 (S.D. Fla. June 20, 2017) (same). *But see Kenneth F. Hackett & Assoc., Inc. v. GE Capital Info. Tech. Sol., Inc.*, 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010) (allowing forward-looking declaratory-judgment claim to stand because declaratory relief affected future payments or rate increases under existing contract); *Ocean's 11 Bar & Grill, Inc. v. Indemnity Ins. Corp. of DC*, 2011 WL 3843931, at *4 (S.D. Fla. Aug. 26, 2011) (allowing declaratory-judgment claim seeking relief that amounted to an injunction to stand alongside breach-of-contract claim for money damages).

Plaintiffs have also failed to allege any immediate or future harm from which declaratory relief would save them. *See BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1356 (S.D. Fla. 2021) ("'[A] plaintiff seeking . . . declaratory relief must prove not only an injury, but also a real and immediate threat of future injury in order to satisfy the "injury in fact" requirement.'" (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004))); *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1211 (11th Cir. 2019). Plaintiffs' CAC alleges neither an immediate threat of irreparable harm nor forward-looking harms that would make declaratory relief necessary. To the contrary, Plaintiffs ask the Court to right alleged past wrongs. *See* CAC ¶ 31. Declaratory relief is an improper response to Plaintiffs' ask.

For these reasons, the Court must dismiss Count Six.

## CONCLUSION

FTX was a fraud. SBF and his cronies caused hundreds of thousands of people billions of dollars in losses. Plaintiffs have every right to seek recovery of those damages—from those responsible. But in their desire to find deep pockets, Plaintiffs have cast their net too far, enmeshing innocent third-party service providers like Ad Agency Defendants against whom Plaintiffs' claims fail as a matter of law. The Court should dismiss them.

**HOLLAND & KNIGHT LLP**

*/s/ Stephen P. Warren*
**Stephen P. Warren**
(Fla. Bar No. 788171)
Stephen.Warren@hklaw.com
Brandon T. White (Fla. Bar No. 106792)
Brandon.White@hklaw.com
Andrew W. Balthazor (Fla. Bar No. 1019544)
Andrew.Balthazor@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300

**BUCHANAN INGERSOLL & ROONEY PC**

*Lauren Humphries*
**Lauren V. Humphries**
 (Fla. Bar No: 0117517)
lauren.humphries@bipc.com
Mark A. Kornfeld (Fla. Bar No. 1019233)
mark.kornfeld@bipc.com
401 East Jackson Street, Suite 2400
Tampa, FL 33602
Telephone: 813-222-8180

40

Miami, Florida 33131
Telephone: 305-374-8500
*Attorneys for Wasserman Media Group, LLC*

Christopher J. Dalton (*pro hac vice*)
christopher.dalton@bipc.com
550 Broad Street, #810
Newark, NJ 07102

Jennifer M. Oliver (*pro hac vice*)
jennifer.oliver@bipc.com
600 W. Broadway, Suite 1100
San Diego, CA 92130

*Attorneys for Dentsu McGarry Bowen LLC*

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), the Ad Agency Defendants respectfully request that this Court allow for in-person, oral argument on this Motion to Dismiss.  In support of such request, Ad Agency Defendants state that oral argument will facilitate the presentation of its argument against the 458 allegations of the Complaint.  Oral argument on the Motion will allow the Ad Agency Defendants to clearly demonstrate the multiple grounds for why the Complaint should be dismissed with prejudice.  The undersigned represents that sixty minutes per side shall suffice for the arguments to be presented to the Court on the Motion to Dismiss.

**HOLLAND & KNIGHT LLP**

*/s/ Stephen P. Warren*
**Stephen P. Warren**
(Fla. Bar No. 788171)
Stephen.Warren@hklaw.com
Brandon T. White (Fla. Bar No. 106792)
Brandon.White@hklaw.com
Andrew W. Balthazor (Fla. Bar No. 1019544)
Andrew.Balthazor@hklaw.com
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

**BUCHANAN INGERSOLL & ROONEY PC**

**Lauren V. Humphries**
 (Fla. Bar No: 0117517)
lauren.humphries@bipc.com
Mark A. Kornfeld (Fla. Bar No. 1019233)
mark.kornfeld@bipc.com
401 East Jackson Street, Suite 2400
Tampa, FL 33602
Telephone: 813-222-1141

41

Telephone: 305-374-8500
*Attorneys for Wasserman Media Group, LLC*

Christopher J. Dalton (*pro hac vice*)
christopher.dalton@bipc.com
550 Broad Street, #810
Newark, NJ 07102

Jennifer M. Oliver (*pro hac vice*)
jennifer.oliver@bipc.com
600 W. Broadway, Suite 1100
San Diego, CA 92130

*Attorneys for Dentsu McGarry Bowen LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of February, 2024, the undersigned electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

BUCHANAN INGERSOLL & ROONEY PC

*Lauren Humphries*

Lauren V. Humphries, Esq.
Florida Bar No: 0117517