UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

THIS DOCUMENT RELATES TO:

Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

## DEFENDANT MOONSTONE'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AGAINST BANK DEFENDANTS

Defendant Farmington State Bank d/b/a Moonstone Bank ("Moonstone") hereby files this opposition to Plaintiffs' Motion and Incorporated Memorandum of Law for Leave to File Amended Complaint Against Bank Defendants [ECF 492, the "Motion to Amend"],[1] because Plaintiffs' proposed amended complaint, the Amended Administrative Class Action Complaint and Demand for Jury Trial Bank Defendants [ECF 492-1, the "PAC"], is futile and smacks of bad faith as to Moonstone, and therefore the Court should exercise its discretion to deny leave to amend as to Moonstone.

---

[1] References herein to ECF docket entry numbers refer to filings in the instant MDL, Case No. 23-md-03076-KMM, unless otherwise proceeded by a different case number.

1

I.     **INTRODUCTION**

Plaintiffs' Motion to Amend and the PAC exhibit more of the same improper tactics that Plaintiffs have used to try to disguise the factual and legal futility of their case against Moonstone, which rests entirely on defectively-pled speculation and guilt by association:

- Impermissibly using group pleading about "Bank Defendants" or "Defendants" to enlarge allegations against Moonstone without a factual basis or good faith justification to do so, including misleadingly suggesting that any of the 7000 pages of text messages by "Bank Defendants" were made ***by Moonstone*** (despite the Declaration of Caroline Ellison ("Ms. Ellison") attached to the PAC revealing the messages were between specific representatives of Alameda, Tether, and Deltec—and not Moonstone) or gave rise to any new allegations against Moonstone [*see* PAC, ¶ 10, and Ex. A, ¶¶ 27-28];

- Transparently seeking to use the Federal Reserve's unrelated enforcement action as propensity evidence by mischaracterizing the action as being based on Moonstone's "misrepresentations to the Fed" [Mot. to Amend, at 11] and/or "banking FTX and Alameda" [PAC, ¶ 255], when the announcement itself (which the Motion to Amend and PAC have neither cited nor attached) shows neither is true;

- Fictitiously implying, while omitting any explanation, that Moonstone's joining the Federal Reserve provided ***any benefit whatsoever*** to FTX much less was "a critical entry point for FTX to the U.S. banking system" [Mot. to Amend, at 3], which is particularly disingenuous considering the fact that Moonstone and its customers already had the ***same*** "access to the U.S. banking system" ***prior*** to becoming a Federal Reserve member;

- Refusing to correct their allegation, repeated in the PAC, that Jean Chalopin (Mr. Chalopin") is the CEO and Chairman of Moonstone, despite notice from Moonstone that this was false; and

- Continuing to falsely infer that Moonstone made even a single transfer of money from or to FTX's bank deposit, which was turned over in full to the U.S. Government. [*See* DE 262, 8 n.8]. Despite all of the "formal jurisdictional discovery efforts as to Deltec and Chalopin, proffer sessions with certain FTX insiders, and other information-gathering" [Mot. to Amend, at 10], Plaintiffs still ***cannot sufficiently allege***, but can only speculate "under information and belief," that Moonstone made ***any transfers at all*** to or from any FTX account. [PAC, ¶ 251.] Their inadequately-pled speculation that Moonstone made such transfers is the lynchpin in their narrative that Moonstone knew about, and therefore impliedly agreed to and participated in, the FTX fraud.

Plaintiffs' PAC as to Moonstone adds no relevant or well-pled basis for relief from Moonstone and thus is futile and smacks of bad faith. Accordingly, leave to amend as to Moonstone should be

2

denied and the Court should rule based on the operative Administrative Complaint [ECF 155] and Moonstone's pending motion to dismiss [ECF 262 (motion to dismiss), ECF 368 (opposition), and ECF 392 (reply)].

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Connor O'Keefe filed a putative class action in the Southern District of Florida against 18 defendants, including Moonstone, Deltec Bank & Trust Co. Ltd. ("Deltec"), and Mr. Chalopin. [Case No. 1:23-cv-20700-KMM, ECF 1 ("Florida Action").] After Moonstone indicated that it would contest personal jurisdiction in Florida, O'Keefe filed an identical suit in July 2023 in the Eastern District of Washington. [Case No. 2:23-cv-00213-TOR, ECF 1 ("Washington Action").] After the Florida and Washington Actions were transferred to the MDL, on August 7, 2023, Plaintiffs brought suit and added new claims herein in the Administrative Class Action Complaint against the "Bank Defendants," which they defined to include Moonstone, Deltec, and Mr. Chalopin. [ECF 155.]

On September 21, 2023, Moonstone moved to dismiss all claims in the Administrative Complaint, including a facial challenge to the Florida Complaint for lack of personal jurisdiction. [ECF 262.] The motion to dismiss was fully briefed following Plaintiffs' opposition and Moonstone's reply [ECF 368, 394], and remains pending. On November 3, 2023, Plaintiffs sought leave to take jurisdictional discovery and to file amended pleadings "so Plaintiffs may incorporate any additional facts that support personal jurisdiction over these Defendants and address arguments raised in all Defendants' motions to dismiss." [ECF 348.] The Court allowed jurisdictional discovery but denied leave to amend the complaints as premature. [ECF 422.]

Having already consented to jurisdiction in the Washington Action, and facing extensive personal jurisdiction discovery from Plaintiffs, on January 5, 2024, Moonstone dropped its

3

challenge to personal jurisdiction in Florida [ECF 445], which mooted Plaintiffs' authority for jurisdictional discovery. Plaintiffs proceeded to obtain limited discovery from Deltec and Mr. Chalopin, as well as numerous other MDL defendants. On January 30, 2024, Plaintiffs deposed Mr. Chalopin in his individual capacity and as a corporate representative of Deltec.

On February 16, 2024, Plaintiffs filed the instant Motion to Amend [ECF 492], attaching the PAC as Exhibit 1 thereto [ECF 492-1]. Plaintiffs' Motion to Amend explains the amendment as to Moonstone based on Plaintiffs' "discoveries regarding Moonstone's misconduct since filing their original administrative complaint" [Mot. to Amend, at 5]; it does not even mention the addition of the RICO Count [*see generally id.*]. As to Moonstone, the PAC, in paragraph 255, adds a single factual allegation about the Federal Reserve's August 17, 2023 announcement of an enforcement action against Moonstone.[2] The PAC also adds a RICO conspiracy claim against "All Defendants" in Count V, although the count adds no unique factual allegations regarding Moonstone at all. Far from "addressing arguments raised in [Moonstone's] motion to dismiss," the PAC makes no material changes to the allegations against Moonstone—even failing to correct scriveners' errors—except to add inaccurate and irrelevant allegations about the enforcement action in one paragraph (¶ 255), is ultimately futile and should be disallowed as to Moonstone. [*Compare* ECF 155, ¶¶ 305-316, *with* PAC, ¶¶ 245-259.][3]

---

[2] Plaintiffs raised the same allegation about the enforcement action in their opposition to Moonstone's motion to dismiss [ECF 368, 18-19 and n.120], but because it was not in the Administrative Complaint, it was not properly before the Court at that time. On February 6, 2024 (prior to Plaintiffs' Motion to Amend), the Federal Reserve publicly announced it terminated the enforcement action, as the entity has been wound down and no longer functions as a bank.

[3] *E.g.,* ECF 155, ¶ 312 (repeating partial sentence); PAC, ¶ 252 (same mistake). The PAC even includes footnotes citing to the exact same allegations in Plaintiffs' original Administrative Complaint. [*See* PAC, at ¶ 256 (citing ECF 155).]

4

## III. LEGAL STANDARDS FOR AMENDMENT

When a party moves for leave to amend pleadings, the Federal Rules of Civil Procedure generally dictate that it be granted "when justice so requires." FED. R. CIV. P. 15(a)(2). "A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (internal quotation marks omitted) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the Eleventh Circuit, the futility of an amendment to a complaint depends on whether the amended complaint would be subject to immediate dismissal, for instance, for failure to state a claim. *E.g., Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend is justified by futility when "complaint as amended is still subject to dismissal"). Whether to grant or deny an opportunity to amend is within the discretion of the district court. *Foman*, 371 U.S. at 182; *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (explaining the court has "'extensive discretion' to decide whether or not to allow a party to amend a complaint") (citing *Hargett v. Valley Fed. Say. Bank*, 60 F.3d 754, 761 (11th Cir. 1995)).

## IV. AMENDMENT AS TO MOONSTONE SHOULD BE DENIED AS FUTILE

The Court should find that the amendment would be futile and deny Plaintiffs' Motion to Amend because the amended allegations against Moonstone do not cure the defects in the claims

5

(Counts I-IV and VI) previously raised in the Administrative Complaint and do not state a claim under the new Count V for RICO Conspiracy. *See Cockrell*, 510 F.3d at 1310 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed[.]"). Because the allegations against Moonstone are materially identical but for the addition of the Enforcement Action and the RICO Conspiracy count, Moonstone incorporates its arguments in its Motion to Dismiss, which stands to dispose of Counts I-IV and VI as a matter of law, and focuses this opposition on the futility of the proposed additions as to Moonstone.

    **a. <u>Amendments to Include References to the Enforcement Action Are Futile Because They Are Inaccurate, Irrelevant, and Improper.</u>**

As it pertains to Moonstone, there is one "discovery" supposedly "justifying the instant request for leave to amend" (Mot. to Amend, at 10): the August 17, 2023 announcement by the Federal Reserve Board of an enforcement action against Moonstone, which Plaintiffs baselessly twist into allegations that Moonstone "fraudulently obtained" its Federal Reserve membership. [PAC, ¶ 255.] The addition of this allegation is not only futile to Plaintiffs' ability to state a claim, it is completely irrelevant and at most amounts to improper propensity evidence.

Plaintiffs try to mischaracterize the Federal Reserve's announcement of the Consent Order to Cease and Desist, which is attached as **Exhibit "1"** hereto (the "Cease-and-Desist"). Plaintiffs' Motion to Amend boldly claims, without citation or attribution, their investigation uncovered that "Defendant Moonstone's membership into the Federal Reserve, a critical entry point for FTX to the U.S. banking system, ***was obtained by way of deceit and for FTX's benefit***." [Mot. to Amend, at 3 (emphasis added).] It goes on to claim that the Federal Reserve Board "announced its enforcement action related to Farmington's misrepresentations to the Fed regarding its business plan in its application for membership in the Fed." [*Id.* at 11.] In support, Plaintiffs cite (but do not

6

attach) an online article from Cointelegraph, rather than the Federal Reserve Board's publicly-available Cease-and-Desist (linked in the article).

Plaintiffs' addition is improper and futile for several reasons.

***First***, it is inaccurate. Had Plaintiffs attached the Cease-and-Desist, the Court would see that the Federal Reserve Board makes no allegations or findings that Moonstone "misrepresented" or misled the Fed. [*See generally* Ex 1.] It instead finds that "Farmington violated the Bank Commitments by engaging in activities which changed the Bank's business plan and general character *without receiving prior written approval* from the Board of Governors, the Reserve Bank, or the WSDFI." [Ex 1, p. 3 (emphasis added).] Moonstone's failure to receive prior written approval is a far cry from applying for membership under false pretenses, which is how Plaintiffs exaggerate and misrepresent it in the PAC. [*See* PAC, ¶ 255 (alleging Moonstone *applied* to the Federal Reserve *with the intent*, and *without informing the Fed*, to provide digital banking services to FTX and Alameda); *id.* at ¶ 256 (referring to Moonstone's membership in the Federal Reserve as "fraudulently obtained")].[4]

***Second***, Plaintiffs again mischaracterize the Cease-and-Desist by inventing its relevance to the FTX fraud. It ***does not mention FTX or Alameda*** or give rise to any reasonable inference

---

[4] The PAC expressly (though inaccurately) alleges:

    255. On August 17, 2023, the Federal Reserve announced an enforcement action against Moonstone, **because, upon information and belief, at Chalopin's direction, Moonstone did not inform the Federal Reserve, in applying for membership, that Moonstone intended "to pursue a strategy focused on digital banking services or digital assets" (i.e., banking FTX and Alameda),** and Moonstone "improperly chang[ed] its business plan" **to provide such services (i.e., to FTX and Alameda)** without prior notification or approval from the Federal Reserve.

    256. With access to the U.S. banking system **by way of Moonstone's membership in the Federal Reserve fraudulently obtained**, FTX quickly began to route the fraud through it, depositing $50 million in customer assets, including Class Member funds, across two accounts at the bank. …

[*Id.* at ¶¶ 255-56 (emphasis added).]

that the Bank's conduct was furthering or aiding the FTX fraud in any way.[5] Plaintiffs simply jump to the conclusion that "Defendant Moonstone's membership into the Federal Reserve, a critical entry point for FTX to the U.S. banking system, was obtained by way of deceit ***and for FTX's benefit***." [Mot. to Amend, at 3 (emphasis added).]

In fact, FTX's supposed benefit from Moonstone's membership in the Federal Reserve is a red herring and must be disregarded, not taken as true under Rule 12(b)(6). Plaintiffs' repeatedly attempt to impart Moonstone's joining the Federal Reserve as a benefit to FTX by suggesting that it was "a critical entry point for FTX to the U.S. banking system" [Mot. to Amend, at 3] and was necessary "such that FTX Group could access the U.S. banking system." [PAC, ¶¶ 137; *see also id.* at 9, 254, 256, 259, 280).] Plaintiffs never explain how or why, because they cannot.

The fact is—as the Cease-and-Desist evidences—the Federal Reserve ***approved*** Moonstone's application to become a member of the Federal Reserve System on **June 17, 2021**, which is (1) ***before*** August 2021, when Plaintiffs allege that Mr. Chalopin and Dan Friedberg "began to discuss Alameda's potential investment in Moonstone," and (2) ***before*** January 2022, when Plaintiffs allege that Alameda invested in Moonstone's holding company. [*Compare* Ex. 1, at 3, *with* PAC, ¶¶ 245, 247.] Furthermore, Moonstone was already part of the U.S. banking system before joining the Federal Reserve, though it was being regulated by the Federal Deposit Insurance Commission ("F.D.I.C."), under the same federal regulations, when it applied (on or about April

---

[5] The online article cited by Plaintiffs also makes no allegations that Moonstone made misrepresentations to regulators and even states that "[n]either the Fed enforcement action nor the move to leave the space explicitly mentioned crypto exchange FTX." Turner Wright, "Federal Reserve issues enforcement action against FTX-linked US bank," Countelegraph.com (last accessed Feb. 28, 2024), https://cointelegraph.com/news/federal-reserve-issues-enforcement-actionagainst-ftx-linked-bank.

16, 2021) to join the Federal Reserve.[6] Accordingly, before or after joining the Federal Reserve, Moonstone's customers had the *same* "access to the U.S. banking system" that they did before Alameda made its investment in Moonstone's bank holding company. For all their insinuations, Plaintiffs have not explained and cannot explain how or why joining the Federal Reserve provided any benefit whatsoever to any Moonstone customer, including FTX. In fact, even the PAC asserts Moonstone was FTX's "*third point* of entry to the US Banking system." [PAC, ¶ 254 (emphasis added).] Plaintiffs' innuendo provides no well-pled basis to infer that the "acts" of applying to and joining the Federal Reserve, which are certainly are not wrongful *per se*, were either substantial assistance to or furthered the enterprise of any FTX fraud, which likewise renders the PAC's additions irrelevant and futile.

*Third*, the allegations are subject to striking as immaterial or exclusion as character evidence. Plaintiffs would have this Court believe the additional allegation in the PAC has bearing because it "shows Moonstone's *willingness* to engage in wrongful (and atypical) conduct in order to assist the FTX fraud." [*Id.* at 11 (emphasis added)]. In other words, Plaintiffs believe they can use this allegation to imply Moonstone's character or propensity for wrongdoing—*not* factual evidence of Moonstone's actual or reasonable inferred knowledge or participation in the FTX fraud. *But see Sepulveda v. City of Doral*, No. 1:21-CV-23267-KMM, 2022 WL 19406445, at *2 (S.D. Fla. Aug. 29, 2022) (citation omitted) ("Rule 404 recognizes that evidence of bad acts, when offered to prove that a person acted in accordance with his character, 'is of slight probative value and may be very prejudicial' in that it allows 'the trier of fact to reward the good man and to punish

---

[6] While it was still a state-chartered bank (it is no longer), Moonstone was at all times regulated by the State of Washington and the Federal Government—first by the F.D.I.C., then as of June 2021, by the Federal Reserve Board. Banks can be governed by either the F.D.I.C. or the Federal Reserve Board, which provide the *same* access to the U.S. banking system available to customers.

9

the bad man because of their respective characters despite what the evidence in the case shows actually happened.'"). This is further grounds to reject this amendment as futile.

### b. Group Pleading for "Bank Defendants" Is Improper.

It is Plaintiffs, not Bank Defendants, that have "done their best to elide Plaintiffs' allegations" so as to eliminate the material distinctions between Moonstone, Deltec, and Chalopin. Despite formal and informal discovery and assistance from FTX Insiders, Plaintiffs can substantiate no link between Moonstone and Deltec other than the fact that Mr. Chalopin owns interests in both banks' (separate) holding companies. [*See* PAC, ¶ 307.] This has not deterred Plaintiffs from lumping Moonstone, Deltec, and Mr. Chalopin together—even seemingly calling them "the primary **bank** for the RICO enterprise"—when there are allegations and/or evidence to the contrary.[7] [PAC, ¶ 302 (emphasis added).]

For example, Plaintiffs' Motion to Amend boasts of the "approximately 7000 pages of direct text messages between ***Bank Defendants***, FTX, and Alameda Research, LLC," which they use to bolster the introduction to the PAC. [Mot. to Amend, at 2 (emphasis added); PAC, ¶ 10.] But Plaintiffs' PAC fails to mention that Ms. Ellison, who produced those messages, attests the messages were between "representatives from Alameda, Tether, and Deltec"—***with no mention of Moonstone***. [PAC, Ex. A, ¶¶ 27-28.] Further, their Motion to Amend concedes that those messages do not give rise to any additional factual allegations in the PAC against Moonstone. [Mot. to Amend, at 8-9.] Similarly, Plaintiffs' PAC broadly accuses "Bank Defendants" of "providing a suite of non-routine, high risk banking services to FTX Group" including "expediting

---

[7] Plaintiffs continue to assert that Mr. Chalopin is CEO and Chairman of Moonstone without any factual basis and despite notice from Moonstone's filings [*see* ECF 262, at 2 n.4; ECF 394, 2 n.7] and evidence known to the Plaintiffs to the contrary. In fact, the March 2022 press release Plaintiffs quote in paragraph 245 expressly names Ronald Oliveira as Moonstone's CEO. [PAC, ¶ 245.]

10

the transfer of FTX customer funds to Alameda at the expense of other banking customers and FTX customers; brokering a covert manipulation scheme between Tether Limited and Alameda; and extending a *de facto* line of credit to Alameda that at times exceeded *2 billion U.S. dollars*." [PAC, ¶ 9 (emphasis in original).] They extend these allegations to Moonstone even though the PAC later makes those specific accusations as to Deltec only, and not Moonstone. [*Cf. id.* at ¶ 133.]

It is hardly surprising that Plaintiffs are quick to lump Moonstone in with the other "Bank Defendants," "MDL Defendants," and "Defendants" generally even when it makes no sense (as discussed *infra*). When all Plaintiffs have to hold Moonstone jointly liable for the FTX fraud comes down to (1) selling a small interest in the bank's holding company to Alameda, (2) joining the Federal Reserve, and (3) being custodian to an FTX deposit that never left Moonstone, they need to rely on guilt by association. This tactic of group pleadings is nevertheless impermissible, even under Rule 8(a). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Accordingly, the proposed amendment as to the Federal Reserve enforcement action would be futile.

    c.  **<u>Count V Fails to State a Claim Against Moonstone Under Rule 8(a).</u>**

        i.  **Failure to Sufficiently Allege Moonstone's Agreement**

In the PAC, Plaintiffs attempt to newly assert a RICO conspiracy claim under Section 1962(d) against "All Defendants," but fail to properly allege this claim against Moonstone.[8] [*See* PAC, ¶¶ 297-312.] Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]." 18 U.S.C. § 1962(d).

---

[8] For purposes of this opposition, Moonstone takes no position as to the sufficiency of Plaintiffs' PAC as to the underlying RICO violation or the conspiracy allegations against any other MDL Defendant, but does not intend to waive such arguments if the Court permits the amendment.

11

"The essence of a RICO conspiracy claim is that each defendant has **agreed** to participate in the conduct of an enterprise's illegal activities." *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (citing 18 U.S.C. § 1962(d)) (emphasis in original). "[P]roof of the agreement is at the heart of a conspiracy claim." *Id.* (quoting *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1345 (S.D. Fla. 2006)). "To be guilty of conspiracy ... parties must have agreed to commit an act that is itself illegal." *Id.* (quoting *United States v. Vaghela*, 169 F.3d 729, 732 (11th Cir. 1999)); *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1166 (S.D. Fla. 2019).

A plaintiff can state a RICO conspiracy claim by showing the defendants: (1) agreed to the overall objective of the conspiracy; or (2) agreed to commit two predicate acts. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)). A RICO agreement may be established by either direct evidence or it may be inferred from the conduct of the participants. *Id.* However, the circumstantial evidence must demonstrate "that each defendant necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007). For a conspiracy to violate § 1962(c), as Plaintiffs have asserted here [PAC, ¶ 298], "a plaintiff must demonstrate that a defendant 'objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise' through a pattern of racketeering activity." *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008) (quoting *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995)).

Courts in the Southern District of Florida have not hesitated to dismiss RICO Conspiracy claims where the factual basis for the alleged agreement is not properly pled under Rule 8(a). *See*,

12

*e.g.*, *In re Takata*, 396 F. Supp. 3d at 1166 (dismissing RICO conspiracy claim because plaintiffs' allegations of defendants' relationships "beyond simple information sharing," their "decid[ing] together to forego key performance requirements," and "work[ing] together" to minimize the airbag recall "still fail[ed] to plausibly allege [defendants] entered into an *agreement* with Takata *to commit* wire or mail fraud") (emphasis in original); *Pupke v. McCabe*, No. 13-80860-CIV, 2014 WL 12621479, at *2-*3 (S.D. Fla. Jan. 30, 2014) (dismissing RICO conspiracy count where the complaint "does not allege the specifics of the alleged agreement between Old Republic and any other party to commit the RICO violations[,] … does not identify the persons alleged to have entered into the alleged agreement, … does not provide the dates of when the agreement was entered into, and … does not set forth the terms of the agreement"); *Solomon*, 574 F. Supp. 2d at 1291-92 (finding "all of Plaintiffs' allegations regarding the agreement to conspire to commit mail and wire fraud [were] conclusory" where complaint described the entities who agreed and the substance of the agreement but "contain[ed] no other allegations about who made the agreement, when the agreement was made, or how the Defendants made the agreement"). While there is conflicting authority in the Eleventh Circuit as to whether a RICO conspiracy claim must satisfy the pleading standards of Rule 8(a) or Rule 9(b),[9] the foregoing cases demonstrate that even Rule 8(a)'s plausibility standards require well-pled details supporting when and how a defendant entered into the agreement to commit substantive RICO violations.

Here, Plaintiffs' PAC is futile because it fails to properly allege the factual basis for any "meeting of the minds" in which Moonstone supposedly agreed either to the overall objective of the conspiracy or to commit two predicate acts. *See Am. Dental Ass'n*, 605 F.3d at 1293. Plaintiffs'

---

[9] *See Gov't Emps. Ins. Co. v. Landau & Assocs., P.A.*, No. 817CV02848EAKTGW, 2019 WL 12493609, at *6 (M.D. Fla. Mar. 29, 2019) (collecting Eleventh Circuit cases).

13

allegations of Moonstone's involvement in the alleged RICO conspiracy are nothing more than unwarranted deductions of fact and legal conclusions that are insufficient and implausible under *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a))); *Twombly*, 550 U.S. at 564 ("Although in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions …."); *see also Aldana v. Del Monte Fresh Produce N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (on a Rule 12(b)(6) motion to dismiss, the court does not accept as true unwarranted deductions of fact).

The allegations about Moonstone are insufficient to enable the Court to draw any inference, much less a reasonable one, of a RICO agreement between Moonstone and any other MDL Defendant. Presumably (it is presumed since Plaintiffs fail to mention anything about their RICO claim in the Motion to Amend), Plaintiffs are relying on inferences about Moonstone's conduct from allegations they have incorporated into Count V,[10] which amount to the following: (1) Moonstone took in a $50 million deposit from FTX, though Plaintiffs have not plausibly alleged any transfers out of Moonstone from this deposit; (2) Moonstone provided "access to the U.S. banking system" by joining the Federal Reserve, though this is a red herring as described above; and (3) Moonstone supposedly violated "know your customer" and anti-money laundering laws, though the PAC does not plausibly allege those applicable were violated here, nor does it allege how such violations are relevant to the so-called RICO conspiracy. This, with no details on who, when, or how Moonstone may have agreed to an otherwise illegal act under RICO, is simply

---

[10] Count V incorporates the "paragraphs preceding Count I," not Counts I-IV or VI. [PAC, ¶ 297.]

14

not a sufficient factual basis to show or infer that Moonstone agreed to a RICO conspiracy. *See In re Takata*, 396 F. Supp. 3d at 1166; *Solomon*, 574 F. Supp. 2d at 1291-92.

The allegations comprising the new Count V itself, which primarily consist of blanket references to "Defendants," are likewise insufficient to enable the Court to draw even a reasonable inference of a RICO agreement between Moonstone and any other MDL Defendant. Specifically, even if the Court is to assume that references in Count V to "Defendants" includes Moonstone (despite vague and ambiguous allegations about the undefined "Defendants" inconsistent with the PAC's prior allegations about Moonstone[11]), the PAC at most alleges:

- In paragraph 298, a conclusory assertion that "Defendants agreed and conspired";

- In paragraph 302, the unwarranted allegation that "Defendants[12] served as the primary bank for the RICO enterprise, assisting in the structure of the enterprise operations and the flow of FTX customer funds from FTX Trading Ltd. and FTX US to Alameda," which is not well-pled against Moonstone, as Plaintiffs have not sufficiently alleged that Moonstone acted in connection with or engaged in any transfer with Deltec or that there was even a single transfer of funds from the FTX deposit at the bank;

- In paragraph 307, the unwarranted conclusion that "Defendants . . . agree[d] to provide and provid[ed] banking services to Alameda, FTX US and FTX Trading Ltd., including executing wire transfers and other transactions of FTX customer funds into and out of FTX Group accounts, and officers of the FTX entities," which is not plausible as to Moonstone, as it is not otherwise sufficiently alleged to have provided banking services to Alameda or to have engaged in any transfers from the FTX deposit at the bank;

---

[11] Paragraphs 307 and 310 of the PAC inexplicably refer to the scope of "Defendants' employment" with FTX and in furtherance of the "firm's business," where there is no allegation that Moonstone was "employed" by FTX or indication as to what company "firm" refers. The references to "Defendants" in Count V also repeatedly use the singular (*e.g.*, "primary **bank**," "**its** words and conduct," "**Defendant** participated"). These inconsistencies further undermine any assumption that each reference to "Defendants" necessarily includes Moonstone. *See Barmapov v. Amuial*, 2018 WL 11267365, *5 (S.D. Fla. Dec. 12, 2018) (nixing RICO conspiracy claim) (quoting *Naftali v. Capasso*, 2015 WL 4483995, at *4 (S.D. Fla. July 22, 2015) ("When a complaint indiscriminately lumps all defendants together it fails to comply with Rule 8.")).

[12] Plaintiffs' recasting of two separate banks as a single "primary bank" confirms their intention to conflate Moonstone with Deltec and obfuscate the facts. [*Cf.* PAC, ¶¶ 133, 136 (alleging Deltec, not Moonstone, provided "one-of-a-kind" banking services FTX could not find in other banks)].

15

- In paragraph 307, the irrelevant assertion that "in exchange for Defendants' [banking services], FTX Group … invested more than $11 million in the holding company for Moonstone, which Mr. Chalopin owns," which says nothing about what **Moonstone** supposedly did or agreed to;[13]

- In paragraph 308, a conclusory allegation that "Defendants had the specific intent to participate in the overall RICO enterprise";

- In paragraph 309, an unwarranted deduction from insufficiently pled facts that "Defendants agreed, at least impliedly, with Salame, Ellison, Friedberg and/or one or more of his co-conspirators to commit overt acts in furtherance of these activities, including (1) violating anti-money laundering laws and other banking regulations (all Defendants); (2) siphoning FTX customer funds into Alameda's bank accounts (all Defendants)," where the PAC has not adequately pled that Moonstone violated any banking laws or regulations, knew that the funds comprising the FTX deposit at the bank were "customer funds," or made any transfers whatsoever from the FTX deposit, including to Alameda's bank accounts;

- In paragraph 310, vague and conclusory assertions about "Defendants' knowledge" and participation in a fraudulent scheme "committed within the scope of the Defendants' employment with FTX and in furtherance of the firm's business," which is also nonsensical as there is no allegation that Moonstone was a FTX employee or agent; and

- In paragraph 311, a conclusory allegation that "the Defendants formed an illegal agreement to violate the substantive provisions of the RICO statute set forth above [§ 1962(c)] and thus are jointly and severally liable for the acts of their co-conspirators[.]"

[PAC, ¶¶ 297-312 (Count V).]

In sum, these unwarranted deductions and legal conclusions about "Defendants" are not plausibly drawn from the scant factual allegations about Moonstone, which do not give rise to a reasonable inference of it agreeing to violate RICO in furtherance of defrauding FTX customers. The few factual allegations pertaining to Moonstone fail to suggest any agreement or "meeting of

---

[13] Moonstone disputes that Alameda's January 2022 investment in its holding company was some kind of "price" for providing bank deposit services to FTX months later, but in any event, it would be irrelevant to the existence of an agreement from Moonstone. *See United States v. Starrett*, 55 F.3d 1525, 1552 (11th Cir. 1995) ("The focus of the RICO conspiracy statute is not on why the defendant associates with the enterprise, but on what he does, or agrees to do, while associated with it. . . . The RICO conspiracy statute does not apply until the defendant manifests his agreement to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, regardless of his purpose for associating with the enterprise.").

16

the minds" to commit an otherwise illegal act, or, in the words of the Eleventh Circuit, do not show that Moonstone "necessarily must have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *Browne*, 505 F.3d at 1264.

Because Plaintiffs have not sufficiently and plausibly pled a RICO agreement by Moonstone, Plaintiffs fail to state a cognizable claim against Moonstone as a matter of law. Accordingly, the Motion to Amend must be denied as futile as to the inclusion of Moonstone.

> **d. The PAC Does Not Materially Change Any Other Factual Allegations About Moonstone and Therefore Does Not Cure the Defects as to Plaintiffs' Regurgitated Claims for Aiding and Abetting Fraud, Breach of Fiduciary Duty, or Conversion, Common Law Conspiracy or Unjust Enrichment.**

As detailed in Moonstone's pending motion to dismiss, Plaintiffs' claims in the original Administrative Complaint (which remain pending and operative should the Court deny Plaintiffs leave to amend) are subject to dismissal under FRCP 12(b)(6). [ECF 262.] While Moonstone will not rehash here each defective aspect therein, Plaintiffs' PAC makes no attempt to cure the defects therein. This is readily apparent from the fact that Plaintiffs make no meaningful modification or factual supplementation regarding Moonstone in the PAC, beyond adding the irrelevant allegation regarding the Fed's enforcement action. In fact, Plaintiffs have barely changed any allegation about Moonstone. Hence, even if Plaintiffs were allowed to file their PAC, Plaintiffs' claims against Moonstone would continue to suffer from the same defects already identified in the motion to dismiss brought by Moonstone. Plaintiffs' Motion to Amend should therefore be denied as futile. *See Cockrell*, 510 F.3d at 1310; *Burger King Corp.*, 169 F.3d at 1320.

**V.    CONCLUSION**

The amendments as to Moonstone as proposed by the PAC would be futile, thus Plaintiffs' Motion to Amend should be denied and Plaintiffs' PAC disallowed as to Moonstone.

| | |
|---|---|
| Date: <u>March 1, 2024</u> | <u>*/s/ Marisa R. Dorough*</u><br>Ty Kelly Cronin (*Pro hac vice*)<br>Frank C. Bonaventure, Jr. (*Pro hac vice*)<br>**BAKER, DONELSON, BEARMAN,**<br>**CALDWELL & BERKOWITZ, P.C.**<br>100 Light Street, 19th Floor<br>Baltimore, Maryland 21202<br>Phone: (410) 862-1049<br>tykelly@bakerdonelson.com<br>fbonaventure@bakerdonelson.com<br><br>  -and-<br><br>Marisa Rosen Dorough, Esq.<br>Florida Bar No. 73152<br>**BAKER, DONELSON, BEARMAN,**<br>**CALDWELL & BERKOWITZ, P.C.**<br>200 South Orange Avenue, Suite 2900<br>Orlando, Florida 32801<br>Phone: (407) 422-6600<br>mdorough@bakerdonelson.com<br><br>*Counsel for Defendant Farmington State Bank d/b/a Moonstone Bank.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2024, the foregoing was electronically filed with the Clerk of the Court through the CM/ECF system, which will send a notice of electronic filing to counsel for all parties of record.

*/s/ Marisa R. Dorough*
Marisa Rosen Dorough
