# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT

 2               SOUTHERN DISTRICT OF FLORIDA

 3                     MDL No. 3076

 4
                 CASE NO:  1:23-md-03076-KMM
 5

 6

 7   IN RE:  FTX Cryptocurrency Exchange  )
     Collapse Litigation,                 )
 8                                        )
                                          )
 9   -------------------------------------

10

11

12              VIDEOTAPED DEPOSITION

13          VIDEO CONFERENCE DEPOSITION OF

14          DEFENDANT CREATORS AGENCY, LLC

15            RULE 30(b)(6) REPRESENTATIVE

16                  ERIKA KULLBERG

17         (Also in Her Individual Capacity)

18

19            THURSDAY, FEBRUARY 1, 2024

20

21   REPORTED BY:

22   DENISE D. HARPER-FORDE
     Certified Shorthand Reporter (CSR)
23   Certified RealTime Reporter (CRR)
     Certified LiveNote Reporter (CLR)
24   Registered Professional Reporter (RPR)
     Notary Public (FLORIDA)
25
```



```
 1           A.   I can't recall.   If you want

 2    to pull up the contracts, we can

 3    look.

 4           Q.   For any of the content that

 5    you created for FTX.   This is 2021 up

 6    until they filed bankruptcy.   Did you

 7    remove any of it from any of the

 8    platforms you originally posted it

 9    on?

10              ATTORNEY ADAMS:   Objection.

11              THE WITNESS:   Yes.

12              (BY ATTORNEY KAYE):

13           Q.   When did you do that?

14           A.   I don't recall, but it was

15    close to bankruptcy date.

16           Q.   After the bankruptcy date?

17           A.   I don't recall.

18           Q.   What was your reason for

19    removing the contents?

20              ATTORNEY ADAMS:   Objection.

21    Instruct her not to answer.   It has no

22    bearing whatsoever on jurisdiction.

23              (BY ATTORNEY KAYE):

24           Q.   So you are an accomplished

25    YouTube-er; right?   You have millions
```



800.211.DEPO (3376)
EsquireSolutions.com

1   country.  I know it provides US.

2   Those are the specifics that I am

3   aware of.

4           Q.  Okay.  Do you know if it

5   provides Cities?

6           A.  I don't know.

7           Q.  Have you ever checked?

8           A.  I have checked the geography,

9   and I don't see the City on it.  When

10  I check the geography, you see the

11  countries and percentage.

12          Q.  Is geography like a tab that

13  you can click on to look at?

14          A.  I don't recall, but I don't

15  think it's a tab on it's own.  I think

16  it's probably grouped in with other

17  things, but I don't know 100

18  percent.

19          Q.  Okay.  Now, if I told you that

20  the video -- the page that shows the

21  metrics for the video has the tabs

22  content, traffic source, geography,

23  Cities, viewer gender, date, revenue

24  source, subscription status,

25  subscription source...more.



1       Q.   Now, I will PDF it to send it

2    to the Court Reporter.  I use my

3    computer in dark mode, because I'm

4    staring at the screen for like 16

5    hours a day.  So it will be flipped

6    when it's a PDF, but it will be the

7    same document.

8            Do you so that E-mail on my

9    screen?

10       A.   Yes, I see that E-mail on your

11    screen.

12       Q.   Friday, March 31st, 12:30 in

13    the morning.  From me to

14    Erika@CreatorsAgency.CO,

15    Erika@ErikaKullberg.com.

16            Is this the E-mail you're

17    referring to?  Does that refresh your

18    recollection?

19       A.   I don't recall the specific

20    E-mail, but as I stated I recall

21    receiving an E-mail from your firm.

22       Q.   Okay.  Do you recall seeing a

23    notice of commencement of action and a

24    request of waiver of service form?

25       A.   Again, I don't recall



```
 1   Waterside Plaza address for any

 2   purposes?

 3              ATTORNEY ADAMS:  Objection.

 4   Vague.

 5              (BY ATTORNEY KAYE):

 6        Q.  Do you understand the

 7   question?

 8        A.  No, I don't.

 9        Q.  Other than receiving your mail

10   there, did you ever use the 40

11   Waterside Plaza address for any other

12   purposes?

13              ATTORNEY ADAMS:  Objection,

14   same.  Vague.  You can answer, if you

15   understand.

16              THE WITNESS:  I don't

17   understand the question.  If I used it

18   for any other purposes?  Did I live

19   there?  No.

20              (BY ATTORNEY KAYE):

21        Q.  Did you ever have a driver's

22   license with that address?

23        A.  No.

24        Q.  Did you ever register to vote

25   at that address?
```



```
 1   organization for Creators Agency.

 2        Q.   Did you prepare it?

 3        A.   Yes.

 4        Q.   What is Registered Agents,

 5   Inc.?

 6        A.   Registered Agents, Inc. is a

 7   Registered Agent service.

 8        Q.   What is your understanding of

 9   that location?  Have you ever been

10   there physically?

11             ATTORNEY ADAMS:  Joe, could I

12   just ask can you put the whole

13   document in here or put it in the chat

14   so half of it is not cut off here.

15             ATTORNEY KAYE:  Sure.  I will

16   put it in the chat.

17             (BY ATTORNEY KAYE):

18        Q.   So the question is, have you

19   ever physically been to that location,

20   Erika?

21        A.   I have never physically been

22   to the Sheraton Wyoming location.

23        Q.   Why did you decide to create

24   the LLC in Wyoming?

25             ATTORNEY ADAMS:  To the extent
```



1    that might call for Attorney/Client

2    communication, I remind you not to

3    disclose that.

4              THE WITNESS:  I read that --

5              (BY ATTORNEY KAYE):

6         Q.  Did Derek represent you -- go

7    ahead.  You read?

8         A.  I read that Wyoming was a good

9    state to open a LLC.

10        Q.  Why is it a good state to open

11   an LLC?

12             ATTORNEY ADAMS:  The document

13   is still not in the chat.  Can you go

14   ahead and put that in the chat so that

15   the witness can actually see the

16   document.

17             ATTORNEY KAYE:  Yes, I will

18   put it in the chat.  We will get to

19   it.  I'm asking why did you think

20   Wyoming was a good state to open an

21   LLC?

22             ATTORNEY ADAMS:  I am not

23   going to allow additional questions

24   when you're putting half of the

25   document up.  Either show the



```
 1          Q.  You said you can answer this

 2   to the best of your ability?

 3          A.  I can.  What is the time

 4   frame?  And who are we speaking about?

 5          Q.  The time frame would be from

 6   August, 2021 through November, 2022?

 7          A.  So list the States where

 8   independent contractors are located?

 9          Q.  Yes, to the best of your

10   ability.  Does Creators Agency have

11   any records of this?  Like where these

12   people were located?

13          A.  I'm not sure.

14          Q.  Okay.  So based on memory, to

15   the best of your ability, what States

16   were the independent contractors

17   located in?

18          A.  Nevada.  That is it.

19          Q.  That is all you remember?

20          A.  No, that's it.

21          Q.  What about the Creators from

22   August, 2021 through November, 2022?

23          A.  That I can try to answer for

24   specific Creators, but I don't know

25   everyone.  I can answer for the
```



1   have an awareness of that?

2          A.  No, that is not something that

3   I recall.  I would have recalled or

4   that I recalled.  But I just saw the

5   document probably in the last few days

6   because of prep.

7          Q.  And both as a representative

8   of Creators and individually, your

9   answer is the same?  Your awareness of

10  Miami being in the talking points came

11  a couple of days ago?

12         A.  Yes, my answer is the same.

13         Q.  Did you ever travel to Miami

14  for anything FTX related?

15         A.  No, I did not.

16         Q.  Did you ever attend Bitcoin

17  2021?

18         A.  No, I did not.

19         Q.  Did you attend Bitcoin 2022?

20         A.  No, I did not.

21         ATTORNEY ADAMS:  Object.

22         (BY ATTORNEY KAYE):

23         Q.  Did you go to any Miami Heat

24  games?

25         ATTORNEY ADAMS:  Objection.  I



```
 1   for it's Creators?
 2              ATTORNEY ADAMS:  Objection.
 3   Instruct not to answer, unless it is
 4   tide some way to Florida.
 5              ATTORNEY KAYE:  You know where
 6   I'm going with this, Derek.  If there
 7   is analytics, and it shows any kind of
 8   geographical location, we need to know
 9   that.
10              ATTORNEY ADAMS:  That's a fair
11   question, but that wasn't the one you
12   asked.  You can ask that question.
13              ATTORNEY KAYE:  Yes, because I
14   lead into it.  Give me a little bit of
15   leeway, so that there is less that we
16   have to go to the Magistrate Judge on
17   would be great.  We are rounding out
18   the 4 hours on the record.
19              (BY ATTORNEY KAYE):
20        Q.  So, the first question Erika,
21   did Creators Agency ever create any
22   reports on promo code usage or any
23   kind of analytics for the Creators?
24        A.  I don't believe we had that
25   information, no.
```



```
 1                      BEGINS"

 2                    *   *   *   *

 3           ATTORNEY ADAMS:  Hold on.

 4    Objection.  I'm going to designate

 5    this portion of the transcript as

 6    "confidential".  Beyond the scope of

 7    what you're permitted to ask about.

 8    Instruct the witness not to answer.

 9           You can answer specifically if

10    it relates to Florida tracking.

11           THE WITNESS:  No. --

12           (BY ATTORNEY KAYE):

13       Q.  -- that you are aware?

14       A.  No, there are no analytics

15    related to Florida that I am aware of,

16    that FTX provided to either Creators

17    Agency or Creators.

18       Q.  Or that Creators Agency

19    collected on its own?

20       A.  Or that Creators Agency

21    collected on its own.

22       Q.  Okay.  For any of these

23    scenarios, did you ever ask or

24    check?

25       A.  No.  For analytics
```



```
 1   US.

 2        Q.   Okay.  Do you ever ask to have

 3   it broken down By State?

 4        A.   No.

 5        Q.   Could you have?

 6        A.   Sorry?

 7        Q.   Could you have?

 8        A.   "Could" or "should"?

 9        Q.   "Could", C-O-U-L-D.  Could you

10   have?

11        A.   I did not know this was an

12   option until you showed me today.

13        Q.   Okay.  I'm sure you will check

14   after this.

15             So the answer is "no", you

16   only ever asked about US versus

17   international?

18        A.   The only geographical data we

19   have ever asked Creators for is what

20   percent of their audience is based in

21   is specific country.

22        Q.   Okay.  And did you ever do

23   this for FTX?  Any of the FTX

24   content?

25        A.   Did FTX ever request this?
```



```
 1            Q.  No.  Did you ever request it

 2      from the Creators about any of the FTX

 3      content that they created?

 4            A.  No.

 5            Q.  Did anybody at Creators Agency

 6      request it?

 7            A.  Not that I am aware.

 8            Q.  Did anybody at FTX request

 9      it?

10            A.  Not that I am aware.

11            Q.  So same for Creators Agency.

12      Did Creators Agency ever collect any

13      geographical tracking data for content

14      that was generated by the Creators?

15            A.  Again, for Creators Agency we

16      have asked for geographical data as to

17      what percent of their audience as a

18      whole is in a specific country.

19            Q.  Okay.  And so that would be

20      data coming from the Creators

21      themselves; right?

22            A.  As opposed to?

23            Q.  As opposed to Creators Agency

24      doing their own analysis and

25      collecting their own data?
```



ERIKA KULLBERG  30(b)(6)                                    February 01, 2024
IN RE: FTX CRYPTOCURRENCY EXCHANGE                                       193

```
 1                  CROSS EXAMINATION

 2              (BY ATTORNEY ADAMS):

 3          Q.   Ms. Kullberg, just a few

 4   follow-up questions here.   So Mr. Kaye

 5   was asking you about geographical

 6   data, and you talked a little bit

 7   about that.   I want to make sure we

 8   are clear on it.

 9              Did Creators Agency track

10   State-By-State data of it's Creators

11   for any purpose?

12          A.   No.

13          Q.   Okay.   Did FTX ever ask you to

14   track State-By-State data for any

15   purpose?

16          A.   No.

17          Q.   Did you ever talk to anyone at

18   FTX about tracking data as it relates

19   to posts, videos, et cetera being

20   watched in Florida?

21          A.   No.

22          Q.   Did you ever talk to anyone at

23   FTX in terms of targeting of

24   Florida?

25          A.   No.
```



1        Q.  Did you or Creators Agency

2   post any videos or make any posts that

3   targeted Florida?

4        A.  No.

5        Q.  You mentioned Jack Roberts in

6   your testimony.  What is your

7   understanding of where Jack Roberts

8   was when you spoke with him?

9        A.  My understanding is he was

10  between Chicago and New York.

11       Q.  There is a name I want to ask

12  you if you or Creators Agency to your

13  knowledge has had any contact with,

14  and that is Avinash Dabir.

15            Do you recognize Avinash

16  Dabir?

17       A.  No, I do not.

18       Q.  Okay.  And you mentioned the

19  conference in 2022 earlier today.  Do

20  you recall testifying about that?

21       A.  I'm sorry.  Which conference?

22       Q.  The Bitcoin conference in

23  Orlando that you mentioned September

24  -- I think you said September of 2022.

25  Is that right?



```
 1                    C E R T I F I C A T E

 2                         *  *  *  *

 3          I, Denise D. Harper-Forde,
      Registered Professional Reporter and
 4    Notary Public in and for the State of
      Florida at large, do hereby certify
 5    that I was authorized to and did
      stenographically report the deposition
 6    of ERIKA KULLBERG; and that the
      foregoing pages are a true and correct
 7    transcription of my stenographic notes
      of said deposition.

 8
              I further certify that said
 9    deposition was taken at the time and
      place hereinabove set forth, and that
10    the taking of said deposition was
      commenced and completed as hereinabove
11    set out.

12            I further certify that I am not an
      attorney or counsel of any of the
13    parties, nor am I a relative or
      employee of any attorney or counsel of
14    party connected with the action, nor
      am I financially interested in the
15    action.

16            The foregoing certification of
      this transcript does not apply to any
17    reproduction of the same by any means
      unless under the direct control and/or
18    direction of the certifying Reporter.

19

20    DATED this 2nd day of February, 2024
```



```
21    _____

22

      DENISE D. Harper-Forde, RPR, CRR, CLR
23    Notary Public - State of Florida
      My Commission Expires:  12-27-2025
24    My Commission No:  HH 211163

25
```