UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse Litigation**

This document relates to:

Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

_____ /

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AGAINST BANK DEFENDANTS**

Plaintiffs respectfully submit this Reply memorandum in support of their Motion for Leave to File Amended Complaint Against Bank Defendants Deltec Bank and Trust Company Limited ("Deltec"), Jean Chalopin, and Farmington State Bank d/b/a Moonstone Bank ("Moonstone") (collectively, the "Bank Defendants") (ECF Doc. 492) ("Motion"). As set forth below, Plaintiffs more than satisfy Federal Rule of Civil Procedure 15(a)(2)'s liberal standard for amendment as to Moonstone, the sole Bank Defendant who opposes the Motion.

## INTRODUCTION

To prepare the proposed Amended Administrative Class Action Complaint ("Amendment") (ECF Doc. 492-1), Plaintiffs worked tirelessly over the holidays and through January to push for the jurisdictional discovery that this Court ordered was appropriate, review trial transcripts and exhibits, further mine publicly available sources, and, most importantly, reach settlement agreements with certain FTX Insiders—namely, Caroline Ellison, Gary Wang, and Nishad Singh—involving a series of proffer sessions and, where possible, document production in relation to those Insiders' knowledge of the defendants in this MDL. And, when it came to Bank Defendants, Ms. Ellison had a lot to say.

Over the course of her proffer session, Ms. Ellison, who many view as the government's star witness in the case against Sam Bankman-Fried that resulted in his conviction on seven counts of fraud and conspiracy, informed Plaintiffs regarding the many ways in which Deltec *and Chalopin* were willing to blur lines and break rules to win FTX's business and billions in deposits. The Telegram messages that Ms. Ellison produced to Plaintiffs between FTX and Deltec unequivocally demonstrate that Deltec was closely tracking FTX's banking activity, including transfers of customer funds from FTX to Alameda, which is, at its core, what the FTX fraud was all about. Plaintiffs go to great lengths to detail those communications in their proposed Amendment. The discussions with Chalopin that Ms. Ellison described in her session are more than enough to give rise to the reasonable inference that Chalopin (1) understood that FTX's *actual* business model, which relied upon the misappropriation of customer funds, was inherently risky to those customers—not "safe" as widely represented—and relied upon obfuscation of the close

1

FTX-Alameda ties, and (2) desired to insert himself and his businesses into the action for the sake of turning an easy profit, by way of bank fees, spread on FTX customer deposits, future joint ventures, and other schemes. Again, Plaintiffs describe those discussions in their proposed amendment. Although these allegations mention Deltec—not Moonstone—by name, they are likewise condemning as to Moonstone due to a common shareholder: Chalopin.

Try as it might, Moonstone cannot escape the import of Chalopin's dual roles at Deltec and Moonstone. Chalopin invested in Deltec, became its largest shareholder, and served as Chairman of its Board of Directors. Chalopin and Deltec were actively involved in transforming The Bahamas, where Deltec is based, into a crypto-friendly jurisdiction. This attracted FTX. When FTX Trading moved its headquarters to The Bahamas, Chalopin and Deltec cemented their relationship with it and its founder, SBF, and his lieutenant, Ms. Ellison, among others. Chalopin then decided to purchase a tiny Washington state bank, Farmington State Bank, with the specific intent to transform it into a bank specializing in servicing the crypto and marijuana industries. Moonstone complains that Plaintiffs mislabel Chalopin as Moonstone's CEO. Even assuming that he is not CEO, Chalopin was founder, principal shareholder, and Director of Moonstone, and he exerted substantial control in Moonstone's creation, direction, and operation both in that capacity and, according to the Federal Reserve Board, through FBH Corporation, Moonstone's holding company, for which Chalopin served as the President and Chairman of the Board. *See* ECF No. 510-1. Indeed, publicly available information confirms Chalopin enjoyed dominant roles at both institutions, regardless of title, as well as an exceedingly close relationship with convicted felon SBF. This is clear from Plaintiffs' allegations. The result of Chalopin's dual roles is that the knowledge that he gained throughout his dealings with FTX are imputed to Moonstone. Thus, Plaintiffs' additional allegations in their Amendment going toward Deltec's knowledge— including the Telegram messages and meetings between Ms. Ellison and Chalopin—also relate to Moonstone's knowledge.

Moonstone's similar attempt to sweep the Federal Reserve Board's enforcement action under the rug also fails. Moonstone suggests that Plaintiffs cite to a news article rather than the

2

Federal Reserve's actual Consent Order to Cease and Desist to mislead this Court. Assuredly, no such tactics are necessary here. As the Order itself makes clear, in conjunction with Chalopin's purchase of Moonstone through a holding company, FBH Corporation ("FBH"), of which he was principal shareholder, President, and Chairman, FBH applied for membership in the Federal Reserve Board. The Federal Reserve Board approved the transaction and granted the Moonstone membership to the Federal Reserve in 2021 subject to certain conditions. Those conditions, *inter alia*, prohibited the FBH/Moonstone from changing its business plans without prior approval. Nevertheless, the Federal Reserve Board discovered during an examination of Moonstone that it had changed its business plan without such prior approval. As Plaintiffs have alleged, however, Chalopin's purpose in engaging in the transaction with Moonstone was to build a bank that would fill the "massive gap" in U.S. banking by servicing the crypto and marijuana industries, *see* ECF No. 492-1, ¶ 136, undoubtedly representing a change in business plan from Farmington State Bank's "provi[sion of] traditional deposit accounts and making loans to residents and farming operations," *see* ECF No. 510-1. The foregoing gives rise to an overwhelming inference that the application for approval and membership to the Federal Reserve involved deceit—whether or not the Federal Reserve chose to state as much in its Order—and clearly constituted substantial assistance to the FTX entities that so sorely needed Moonstone's services due to the aforementioned "massive gap." This blockbuster enforcement action forms part of Plaintiffs' new allegations specific to Moonstone and did not occur until after Plaintiffs filed their Amendment. It alone justifies affording Plaintiffs the opportunity to amend.

Lastly, Moonstone persisted in its meritless personal jurisdiction objection for months on end. Moonstone's position required Plaintiffs to brief Rule 12(b)(2) arguments and to seek jurisdictional discovery and a correlative lift of the discovery stay. Almost immediately upon receipt of this Court's order granting such discovery, however, Moonstone dropped its personal jurisdiction objection rather than permitting any access to its internal documents or information via jurisdictional discovery. By contrast, Deltec and Chalopin engaged in some limited jurisdictional discovery and, having reviewed the proposed Amendment, do not oppose the

Motion. Consequently, this Reply addresses only Moonstone's opposition, in which it seeks to avoid Plaintiffs' amended allegations against it essentially because it successfully prevented Plaintiffs from taking discovery and therefore Plaintiffs' new allegations on the whole relate more directly to Deltec. This Court should not condone such tactics. As explained above, given Chalopin's dual roles, most of Plaintiffs' new allegations implicate Moonstone. Additionally, the Federal Reserve Board's enforcement action is alone sufficient to justify Plaintiffs' amendment. And, perhaps most importantly, every time Plaintiffs have been permitted to scratch the surface of the Bank Defendants, their allegations have proven true and then some. This Court should grant Plaintiffs' Motion.

## LAW AND ARGUMENT

Moonstone does not dispute the Rule 15(a) standard that leave should be "freely given" in the absence of any apparent or declared reason. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Nor does it dispute that this dictate is intended to facilitate determination of claims on the merits. *Sec. Pest Control v. Wells Fargo Bank, Nat'l Ass'n*, 535 F. Supp. 3d 1213, 1214 (M.D. Ala. 2020). Indeed, although the decision to grant or deny leave to amend is within the court's discretion, that discretion is limited in favor of granting leave to amend. *See id.* at 1214-15 (citing *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984)). Instead, Moonstone argues only that Plaintiffs' proposed amendment is futile. For the reasons summarized above and explained in more detail below, Moonstone is wrong.

"Amendments are futile when they will 'fail as a matter of law' or are subject to dismissal." *Gibson v. MillerCoors, LLC*, No. 1:20-CV-241 (LAG), 2021 WL 5413779, at *1 (M.D. Ga. Aug. 6, 2021) (citing *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010); *Burger King v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)). "[T]he same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is used to determine futility." *Id.* (quoting *Bazemore v. U.S. Bank, N.A.*, 167 F. Supp. 3d 1346, 1355 (N.D. Ga. 2016) (first citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996); and then (citing *Burger King*, 169 F.3d at 1315)), *aff'd*, 692 F. App'x 986 (11th Cir.

4

2017)). Because Plaintiffs' amendment is legally sufficient, this Court should reject Moonstone's futility argument and grant leave to amend.

### A. Plaintiffs' addition of the Federal Reserve Board enforcement action against Moonstone justifies the amendment.

First, Plaintiffs' allegations regarding the Federal Reserve Board's enforcement action against Moonstone are not "inaccurate, irrelevant, and improper." Opp. at 6. Moonstone claims the allegations are "inaccurate," because the Federal Reserve's Consent Order to Cease and Desist does not specifically reference *deceit* or *FTX*. But Plaintiffs' allegations, which are based upon publicly available information, are to the effect that Chalopin's intention when he sought about to acquire Moonstone and membership in the Federal Reserve was to fill what he perceived to be a "massive gap" in the U.S. banking system with respect to the crypto and marijuana industries. The Consent Order demonstrates that, before Chalopin purchased Moonstone's predecessor, it was a tiny bank servicing a rural community of farmers with traditional deposit accounts and loans. It further demonstrates that in conjunction with its approval of the transaction and Moonstone's membership in the Federal Reserve in 2021, the Federal Reserve prohibited Moonstone from altering its business plan without prior approval. It then demonstrates that during its next examination of Moonstone the Federal Reserve discovered that the bank had altered its business practice to service the crypto industry. Taken together, the foregoing more than supports an inference that the application to the Federal Reserve was deceitful. Moreover, given Plaintiffs' allegations regarding the close ties between Chalopin, SBF, and FTX, once again gleaned from publicly available information, as well as FTX and SBF's influence in the crypto industry at the time, there is more than enough from which to ascertain that Chalopin had FTX and SBF in mind when went about to fill the "massive gap" in the U.S. banking industry for crypto companies by purchasing and transforming Moonstone.

Nor is the enforcement action "irrelevant." Plaintiffs assert aiding and abetting claims against Moonstone, which will require a showing of substantial assistance. FTX struggled to find banking institutions willing to service its accounts, particularly in the United States, and as

5

Plaintiffs allege, Moonstone provided much needed "access [to] the U.S. banking system" by way of "obtaining membership in the Federal Reserve." *See* Compl., ¶¶ 137, 254. Deceiving the Federal Reserve to acquire membership therein in order to fill a "massive gap" in the U.S. banking industry and then using that membership to bank the FTX fraud with knowledge of the same is certainly sufficient to satisfy that element of such a claim. *See, e.g.*, *Logan v. Morgan, Lewis & Bockius LLP*, 350 So. 3d 404, 411 (Fla. Dist. Ct. App. 2022) ("Substantial assistance occurs when a defendant affirmatively assists, helps conceal[,] or fails to act when required to do so, thereby enabling the breach to occur." (quoting *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017))). Moreover, the allegations specifically address Moonstone's position, taken in its motion to dismiss, that it engaged in only "routine services" that purportedly cannot constitute "substantial assistance." ECF No. 262, at 15. Presumably, Moonstone's defiance of the Federal Reserve to fill the "massive gap" in the U.S. banking industry was not routine.

Lastly, to the extent that Moonstone suggests that the enforcement action allegations are "improper" as character evidence, its argument is of no matter. Moonstone is briefing futility of amendment, not admissibility of evidence. Moreover, Plaintiffs very much intend to use the enforcement action to prove knowledge and substantial assistance, and not just a willingness to engage in wrongful conduct.

The Federal Reserve's Consent Order is highly relevant, and its addition to Plaintiffs' factual allegations lends further support to Plaintiffs' claims against Moonstone. Although Plaintiffs' amendment adds more than just this enforcement action as to Moonstone, it is alone enough to justify the amendment.

**B. Plaintiffs' allegations against Chalopin support the amendment as to Moonstone.**

Moonstone further argues that Plaintiffs did not change any allegations against it other than to add the Federal Reserve Board enforcement action and a RICO claim. Opp. at 17. Although these changes alone satisfy the liberal Rule 15(a) standard, Moonstone is, in any case, wrong.

Plaintiffs' Amendment incorporates many new allegations related to Chalopin. Chalopin was Deltec's largest shareholder and Chairman of its Board of Directors. He concurrently served

6

as founder, principal shareholder, and Director of Moonstone, and he and exerted substantial control in Moonstone's creation, direction, and operation both in that capacity and, according to the Federal Reserve Board, through FBH Corporation, Moonstone's holding company, for which Chalopin served as the President and Chairman of the Board. Under both Florida and Washington law, Chalopin's knowledge is imputed to Moonstone. *See, e.g.*, *Tew v. Chase Manhattan Bank, N.A.*, 728 F. Supp. 1551, 1559 (S.D. Fla.), *amended by*, 741 F. Supp. 220 (S.D. Fla. 1990) ("Normally, the acts and knowledge of an agent are imputed to the principal. In the case of a corporation, it can only act through its agents. Therefore, the rule is that the actions of corporate directors and officers are attributable to the corporate entity."); *Davies v. Owens-Illinois, Inc.*, 632 So. 2d 1065, 1066 (Fla. Dist. Ct. App. 1994) (holding that president of one company carried with him knowledge he acquired there to second company where he served as director and therefore would be imputed to second company); *Interlake Porsche & Audi, Inc. v. Bucholz*, 728 P.2d 597, 607 (1986) ("officer and director['s] knowledge . . . is imputed to the corporation").

In this way, the allegations as to Chalopin—and even Deltec where one can reasonably infer from those allegations that they would pertain to Chalopin specifically as well—go toward Plaintiffs' claims against Moonstone.

### C. Plaintiffs' allegations are sufficient to put Moonstone on notice of claims against it.

Moonstone argues that Plaintiffs engage in improper group pleading. Opp. at 10. But Plaintiffs' allegations put Moonstone on notice of the claims against it. Nothing more is required.

Under Rule 8, a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "point" of Rule 8 "is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (cleaned up).

Here, although Moonstone complains of "group pleading," Plaintiffs include many Moonstone-specific allegations. For example, a simple word search in Plaintiffs' proposed amendment turns up 65 hits for "Moonstone," and undersigned counsel counts roughly 20 detailed

7

paragraphs of Moonstone-specific allegations. They are more than sufficient to put Moonstone on notice of the claims against it. Though Plaintiffs at times reference Bank Defendants together, such is proper where intended to reference all Bank Defendants and further, at times, as a result of Chalopin's dual roles at both Deltec and Moonstone. In any case, Plaintiffs' occasional usage of "Bank Defendants" is no reason to deviate from the rule that leave to amend be "freely" given.

### D. Plaintiffs' RICO claim is not futile.

Moonstone argues that Plaintiffs' RICO claim is futile, and Plaintiffs should be denied leave to add it, because Plaintiffs failed "to properly allege the factual basis for any 'meeting of the minds' in which Moonstone supposedly agreed either to the overall objective of the conspiracy or to commit two predicate acts." Opp. at 13. Not so.

Agreement to participate in a RICO conspiracy may be established either "(1) by showing an agreement on an overall objective, or (2) by showing that a defendant agreed personally to commit two predicate acts and therefore to participate in a 'single objective' conspiracy." *United States v. Thompson*, No. 20-10373, 2023 WL 8015755, at *13 (11th Cir. Nov. 20, 2023). As to the former, Plaintiffs may establish "an agreement on an overall objective by circumstantial evidence showing that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." *Id.* "Regardless of the method used to prove the agreement, [Plaintiffs do] not have to establish that each conspirator explicitly agreed with every other conspirator to commit the substantive racketeering" activity nor "that the defendants ... participated in every aspect of the conspiracy"; instead, it is enough to prove that the defendants "knew the essential nature of the conspiracy." *Id.* (citations omitted).

Plaintiffs satisfy these requirements in their amended complaint, pleading that:

- Mr. Chalopin served simultaneously as the chairman of Deltec and as the chairman and Moonstone, each of which Mr. Chalopin owned and controlled. Compl., ¶¶ 29, 186 n.29, 246.
- Mr. Chalopin developed close ties to FTX, touting that "Deltec has been a long-time friend of FTX, and it is our pleasure to support them; indeed, Deltec's provision of banking services to FTX Group motivated Mr. Chalopin's purchase of Moonstone. Compl., ¶¶ 136, 147, 150.

8

- At Deltec, Mr. Chalopin "secured the stablecoin Tether as a customer, which held $1.8 billion dollars on deposit at the bank," which accounted for "nearly half of the total deposits at Deltec" at the time. Compl., ¶ 140.

- Beginning as early as 2018, by way of Telegram messages directly between Deltec and FTX Group, Deltec identified each incoming FTX customer deposits and allocated those deposits to Alameda's accounts—i.e., not only knew, but manually assisted FTX Group's misappropriation of customer funds. Compl., ¶¶ 165-178.

- Beginning no later than July 2020, also by way of Telegram messages, this time between Deltec, FTX Group, and Tether, Deltec brokered a fraudulent scheme wherein Alameda would purchase hundreds of millions of dollars' worth of Tether's stablecoin with FTX customer funds, a fact apparent to Deltec from its manual allocation of incoming customer deposits to Alameda's Deltec bank accounts, which Deltec then manually transferred to Tether's account at Deltec. Compl., ¶¶ 194-228.

- To facilitate the fraudulent Alameda-Tether-Deltec scheme, Deltec extended to Alameda a *de facto* line of credit totaling billions of dollars at times, an arrangement that was cleared by Deltec's top management, including its CFO, beginning in January 2021. Compl., ¶¶ 229-236.

- FTX Group rewarded Deltec, and Mr. Chalopin, its controlling owner, for its assistance to the FTX fraud. In October 2021, Deltec's parent company, Deltec International Group, received a $50 million loan form Norton Hall Ltd., and entity controlled by Ryan Salame, CEO of FTX's Bahamian outfit, and primary party to the Telegram chats between FTX Group and Deltec. Compl. ¶, 151.

- In 2020, Mr. Chalopin purchased Moonstone, while Deltec was assisting with the FTX fraud in the foregoing ways. Compl., ¶ 246.

- Mr. Chalopin purchased Moonstone with the intention of "developing a bank owned and operated by FTX Group." Compl., ¶ 137.

- In January 2022, after Deltec had been assisting with the FTX fraud for nearly two years and had extended the *de facto* line of credit to Alameda for one year, Mr. Chalopin sought another return of the favor, and solicited Alameda for an investment of $11.5 million in Moonstone—nearly double Moonstone's net worth at the time, far in excess of the investment's fair market value and far from arm's length. Compl., ¶ 246. Mr. Chalopin negotiated the deal at length with Dan Friedberg, general counsel to FTX Group. Compl., ¶ 248.

With these allegations, Plaintiffs sufficiently allege that Moonstone agreed both (1) on an overall objective and (2) personally to commit two predicate acts in furtherance of the FTX fraud. *First,* the allegations give rise to the inference that Moonstone knew "others were conspiring to participate in the same enterprise," *Thompson*, 2023 WL 8015755, at *13, in that, for example, Deltec knew that Alameda was misappropriating FTX customer funds by identifying those

9

deposits and transferring them to Alameda's accounts, as well as by transferring those funds into Tether's Deltec accounts as part of the Alameda-Deltec-Tether scheme. Plaintiffs' allegations give rise to the inference that Chalopin held the same knowledge, by way of his management and control of Deltec and its two largest clients, which is in turn imputed to Moonstone. Similarly, FTX Group's $50 million loan to Deltec's parent company, and Mr. Chalopin's solicitation of an investment in Moonstone by Alameda in an amount far exceeding the market rate, give rise to the inference of an agreement *quid pro quo* among FTX Group, Deltec, and Moonstone.

*Second*, the allegations likewise give rise to the inference that Moonstone agreed to commit two predicate acts in furtherance of the fraud – at the very least, Moonstone committed and/or aided and abetted mail and wire fraud by (1) accepting Alameda's $11.5 million investment, and (2) holding $50 million in FTX deposits, each comprised of FTX customer funds, which FTX Group obtained by mail and wire fraud, which Moonstone very well knew for reasons above. *See, e.g.*, *Factor Grp., LLC v. Ayotte Trailer Rentals, Inc.*, No. 08-20383-CIV, 2009 WL 10699883, at *2 (S.D. Fla. Sept. 23, 2009) (citing *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994) ("One who aids and abets two predicate acts can be civilly liable under RICO."); *Fireman's Fund Ins. Co. v. Plaza Oldsmobile Ltd.*, 600 F. Supp. 1452, 1457 (E.D.N.Y. 1985) ("[A]iding and abetting mail fraud would, pursuant to 18 U.S.C. § 2, be indictable under 18 U.S.C. § 1341, and hence would be a predicate act under § 1961(1)(B).").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Leave to File Amended Complaint Against Bank Defendants (ECF Doc. 492) as to Defendant Farmington State Bank d/b/a Moonstone Bank—the sole Bank Defendant who opposes the motion—and permit them to file against Farmington State Bank d/b/a Moonstone Bank the proposed Amended Administrative Class Action Complaint that is attached to their Motion

Dated: March 8, 2024                          Respectfully submitted,

| | |
|---|---|
| **By:** */s/ Adam Moskowitz* <br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com<br><br>*Co-Lead Counsel* | **By:** */s/ David Boies*<br>David Boies<br>Alexander Boies<br>Brooke A. Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>914-749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com<br><br>*Co-Lead Counsel* |
| Joseph R. Saveri<br>Christopher Young<br>Itak K. Moradi<br>**JOSEPH SAVERI LAW FIRM**<br>601 California Street, Suite 1000<br>San Francisco, CA 94108<br>Telephone: (415) 500-6800<br>jsaveri@saverilawfirm.com<br>cyoung@saverilawfirm.com<br>imoradi@saverilawfirm.com<br><br>*Counsel to Plaintiffs and the Putative Classes* | James R. Swanson, La. Bar No. 18455<br>Kerry J. Miller, La. Bar. No. 24562<br>Molly L. Wells, La. Bar. No. 36721<br>C. Hogan Paschal, La. Bar No. 38495<br>**FISHMAN HAYGOOD L.L.P.**<br>201 St. Charles Avenue, 46th Floor<br>New Orleans, Louisiana 70170-4600<br>(504) 586-5252; (504) 586-5250 fax<br>jswanson@fishmanhaygood.com<br>kmiller@fishmanhaygood.com<br>mwells@fishmanhaygood.com<br>hpaschal@fishmanhaygood.com<br><br>Robert Lieff<br>P.O. Drawer A<br>Rutherford, CA 94573<br>rlieff@lieff.com<br><br>*Counsel to Plaintiffs and the Putative Classes* |

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was filed on March 8, 2024 via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

                                             **By:** */s/ Adam Moskowitz*
                                             Adam M. Moskowitz