# Exhibit 2

```
 1   Joey.
 2              ATTORNEY KAYE:  No, it's
 3   not.
 4              (BY ATTORNEY KAYE):
 5        Q.   Did you create any content for
 6   FTX as a Creator?
 7        A.   Yes.
 8        Q.   On what platforms?
 9        A.   I can recall YouTube, TikTok,
10   possibly Instagram.
11        Q.   Do you know a ballpark about
12   how many videos you created for FTX?
13        A.   I don't recall the exact
14   number.
15        Q.   What was the time period
16   during which you were creating content
17   for FTX?
18        A.   I don't recall the exact
19   dates.
20        Q.   Did you create any content for
21   them in 2021?
22        A.   I'm not positive about 2021,
23   but I did in 2022.
24        Q.   Did you create content for FTX
25   -- go ahead.
```



```
 1   saying hey, do a post for us?  Or did
 2   you have like a schedule that FTX sent
 3   you that you agreed to?  How did that
 4   work, to the best you can recall?
 5              ATTORNEY ADAMS:  Objection as
 6   to form.
 7              THE WITNESS:  It was based on
 8   the contract terms.
 9              (BY ATTORNEY KAYE):
10         Q.   And did you fully comply with
11   any of the contracts you had with
12   FTX?
13         A.   Some, yes.  Others, no.
14              ATTORNEY ADAMS:  Objection.
15              (BY ATTORNEY KAYE):
16         Q.   Some, yes?  Others, no?
17         A.   Correct.
18         Q.   How many contracts did you
19   have with FTX during the relevant time
20   period?
21         A.   Clarification.
22              ATTORNEY ADAMS:  You're asking
23   her in her individual capacity, Joey?
24              (BY ATTORNEY KAYE):
25         Q.   Yes, this is for content you
```



```
 1   created for FTX?
 2        A.   In my individual capacity, I
 3   believe there were 3 contracts in
 4   place.
 5        Q.   Were they for different terms
 6   or were they overlapping?
 7             ATTORNEY ADAMS:  Objection.
 8             THE WITNESS:  I don't recall
 9   the exact terms of the contracts.  But
10   my belief is that they were different
11   terms.
12             (BY ATTORNEY KAYE):
13        Q.   Okay.  Would you have posted
14   the content to YouTube, TikTok, and
15   Instagram?
16             ATTORNEY ADAMS:  Objection.
17             THE WITNESS:  It depends on
18   what the contract says.
19             (BY ATTORNEY KAYE):
20        Q.   Okay.  If the contract said
21   post it to YouTube, Instagram and
22   TikTok, would you have posted it to
23   all 3 pursuant to the contracts?
24             ATTORNEY ADAMS:  Objection.
25             THE WITNESS:  As mentioned,
```



```
 1        A.  I can't recall.  If you want
 2   to pull up the contracts, we can
 3   look.
 4        Q.  For any of the content that
 5   you created for FTX.  This is 2021 up
 6   until they filed bankruptcy.  Did you
 7   remove any of it from any of the
 8   platforms you originally posted it
 9   on?
10             ATTORNEY ADAMS:  Objection.
11             THE WITNESS:  Yes.
12             (BY ATTORNEY KAYE):
13        Q.  When did you do that?
14        A.  I don't recall, but it was
15   close to bankruptcy date.
16        Q.  After the bankruptcy date?
17        A.  I don't recall.
18        Q.  What was your reason for
19   removing the contents?
20             ATTORNEY ADAMS:  Objection.
21   Instruct her not to answer.  It has no
22   bearing whatsoever on jurisdiction.
23             (BY ATTORNEY KAYE):
24        Q.  So you are an accomplished
25   YouTube-er; right?  You have millions
```



1           (BY ATTORNEY KAYE):
2           Q.   What other analytics does it
3      provide?
4           A.   It provides -- I think it
5      depends on the video type.  But it
6      provides how long people stay to watch
7      the video.  For long form YouTube it
8      provides how many people clicked to
9      work the video.  And many other
10     metrics that I can't name.
11          Q.   Does it show traffic source?
12          A.   For long form videos I believe
13     it does show traffic source.
14          Q.   What is a long form video?
15          A.   A long form video is anything
16     that is not a short.  A short is under
17     60 seconds, to my understanding.
18          Q.   Does YouTube provide you
19     analytics on the geography of where
20     the videos are viewed from?
21          A.   For long form videos, it does
22     provide geography.
23          Q.   And how specific does that
24     geography get?
25          A.   I know it provides the



1  country.  I know it provides US.
2  Those are the specifics that I am
3  aware of.
4       Q.  Okay.  Do you know if it
5  provides Cities?
6       A.  I don't know.
7       Q.  Have you ever checked?
8       A.  I have checked the geography,
9  and I don't see the City on it.  When
10 I check the geography, you see the
11 countries and percentage.
12      Q.  Is geography like a tab that
13 you can click on to look at?
14      A.  I don't recall, but I don't
15 think it's a tab on it's own.  I think
16 it's probably grouped in with other
17 things, but I don't know 100
18 percent.
19      Q.  Okay.  Now, if I told you that
20 the video -- the page that shows the
21 metrics for the video has the tabs
22 content, traffic source, geography,
23 Cities, viewer gender, date, revenue
24 source, subscription status,
25 subscription source...more.



```
 1   the scope of the jurisdiction
 2   discovery here.
 3              (BY ATTORNEY KAYE):
 4        Q.   Did you delete your YouTube
 5   videos or did you set them to
 6   private?
 7              ATTORNEY ADAMS:  I'm going to
 8   object and instruct her not to answer
 9   again on that same grounds.
10              (BY ATTORNEY KAYE):
11        Q.   You have already acknowledged
12   that you removed content around the
13   time of bankruptcy.  The question is
14   why?
15              ATTORNEY ADAMS:  Objection.
16   Same Objection.  Instruct the witness
17   not to answer.  Why she did or did not
18   remove something is not relevant to
19   jurisdiction here.
20              ATTORNEY KAYE:  Absolutely
21   relevant to conspiracy base
22   jurisdiction.
23              ATTORNEY ADAMS:  I disagree
24   that it has any relevance to
25   jurisdiction, Joey.
```



```
 1   Money; right?
 2        A.   Huh-huh.
 3        Q.   So you're saying yes,
 4   Millennial Money and yes individually.
 5   The question is, when you say
 6   "individually" are you referring to
 7   Financial Education with Jeremy
 8   Lefebere or just Jeremy Lefebere as a
 9   dude?
10        A.   Oh, I'm referring to Jeremy's
11   channel, YouTube channel as an
12   individual.  Not with Millennial
13   Money.  He has multiple channels.  So
14   I don't know if it was for -- which
15   individual channel it was for, but it
16   was him.  He had multiple channels.
17        Q.   Are you aware of any FTX US
18   talking points that were provided to
19   either you as a Creator or Creators
20   Agency for the Creators to use when
21   they were generating content for
22   FTX?
23        A.   Yes.  FTX provided talking
24   points.
25        Q.   Who did they provide the
```



1   he is going to instruct her not to
2   answer, I will do that, and we will
3   certify to the Magistrate Judge.
4              VIDEOGRAPHER:  One moment.
5   Off the record.  The time is 1:19.
6                 (Off the Record)
7                 (Back on the Record)
8              VIDEOGRAPHER:  Back on the
9   Record.  The time is 1:25.
10             (BY ATTORNEY KAYE):
11      Q.   Okay.  So Erika, aside from
12  YouTube, are you aware of any
13  geographical analytics that are
14  collected and accessible to Creators
15  who post content on -- I am going to
16  do it on a list.  So you can just say
17  "yes" or "no" for each of them.
18             Instagram?
19      A.   Yes.
20      Q.   TikTok?
21      A.   I'm not 100 percent sure.
22      Q.   FaceBook?
23      A.   Likely yes, but not 100
24  percent sure.
25      Q.   FaceBook and Instagram are



```
 1   both "metas" (phonetic) probably
 2   somewhere; right?
 3            ATTORNEY ADAMS:  Objection.
 4   Calls for speculation.
 5            (BY ATTORNEY KAYE):
 6        Q.  The last one, Twitter or
 7   "X"?
 8        A.  No idea.
 9        Q.  For Instagram, have you
10   checked for yourself or for Creators
11   Agency any of those geographical
12   analytics?
13        A.  I can speak personally, I have
14   checked geographical analytics.
15        Q.  Do you know whether it breaks
16   it down by State?
17        A.  No, I don't believe it does.
18   I'm not aware.
19        Q.  Same question for TikTok?
20        A.  I'm just not as familiar with
21   the TikTok analytics, and what they
22   offer.
23        Q.  FaceBook?
24        A.  I'm also not familiar with
25   what they offer.
```



```
 1        Q.   Twitter/"X"?
 2        A.   I don't think I have ever
 3   looked.
 4        Q.   For each of the 4 have you
 5   ever asked or checked for the State
 6   level stuff?
 7        A.   No.
 8             ATTORNEY KAYE:  Subject to
 9   recall, I don't have any further
10   questions at this time.  So we can go
11   off the record?
12             ATTORNEY ADAMS:  Let's stay
13   on.  I have a few follow-up questions,
14   Joey.  It should not take too long.
15             ATTORNEY KAYE:  Sure.  Let's
16   note the time on the record real
17   quick, because it's not going to count
18   towards my 4 hours.
19             ATTORNEY ADAMS:  That is fine.
20             ATTORNEY KAYE:  George, where
21   are we on the record?
22             VIDEOGRAPHER:  3 hours, 43
23   minutes.
24             ATTORNEY KAYE:  I reserve the
25   17 minutes.
```

