UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE: FTX Cryptocurrency Exchange Collapse Litigation**

THIS DOCUMENT RELATES TO:

Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-3655

*Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960

*Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AGAINST MULTINATIONAL VC DEFENDANTS**

Despite Defendants' arguments to the contrary, what Plaintiffs seek to do here is not only entirely ordinary and routinely granted by courts across the United States, it was specifically contemplated by this Court when it denied without prejudice Plaintiffs' request to amend their complaints when they moved for leave to conduct jurisdictional discovery because the Court first wanted to see a proposed amended pleading after Plaintiffs completed that discovery. *See, e.g.,* ECF No. 422. Plaintiffs seek leave to amend the complaint in a timely manner after obtaining new and material evidence from proffers from the Insider Defendants. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[L]eave sought should, as the rules require, be 'freely given.'").

The proposed amendments are certainly not futile. Plaintiffs' complaint already sufficiently states claims against the VC Defendants and alleges personal jurisdiction in both California and Florida. The additional allegations Plaintiffs seek leave to include in their amended complaint serve to bolster these facts—i.e., that the VC Defendants targeted California and Florida to invest in FTX, which, in addition to its office in the Bahamas, depended upon California and Florida to operate, including: (1) the settlement of Alameda's trades by Alameda employees in California; (2) regulatory approval of the Florida-based LedgerX platform to serve as FTX's derivative trading platform by Florida FTX employees, (3) FTX US employees based in California and Florida, including Miami headquarters; (4) travel by FTX executives between Florida and the United States; and (5) promotional activities in Miami.

Plaintiffs' proposed addition of new Defendants in the Complaint is proper, and there is no futility in granting leave to amend to join them or new claims against existing Defendants. Those entities were all involved in the FTX investment and performed enough due diligence regarding FTX's structure, including regarding the Alameda/FTX relationship, to be aware of the fraud. As alleged in the PAC, FTX cross-invested in Sino Global's Liquid Value Fund as a General Partner, and the Sino Global entities were aware of the lack of internal controls at FTX and Alameda through their diligence and Sino Global employees who worked alongside FTX employees in the Bahamas. Accordingly, when Sino Global took money from FTX in the form of investment funds, Sino Global converted that money and was unjustly enriched at the expense of the Plaintiffs.

Finally, the Court should reject VC Defendants' nonsensical argument that proposed deletions of allegations in the proposed amended complaint—which involve a publicly-available plea colloquy from Caroline Ellison and publicly available SEC enforcement activity—are done

in bad faith because Plaintiffs are now somehow "hiding facts," when in reality Plaintiffs are simply streamlining the allegations, especially as the pleading documents span hundreds of pages.

The Court should grant Plaintiffs' Motion and allow this litigation to finally proceed as to these Defendants.

II.  ARGUMENT

### A. The Court's December 18, 2023 Order Contemplated This Motion After Plaintiffs Completed Jurisdictional Discovery.

Plaintiffs' proposed amended complaint, submitted attached to their motion for leave to amend, was not submitted in "defiance" of the Court's December 18, 2023 order. That order clearly contemplated this action, stating that the Court merely denied the request to amend because "[s]uch a request *is premature*, particularly when it is *unclear what information may be gleaned* from jurisdictional discovery." ECF No. 422.

As noted in Plaintiffs' motion for leave to amend, many of the facts driving Plaintiffs' amendment do not arise out of the limited jurisdictional discovery that the court granted in its December 18, 2023 order as to these Defendants (who then sought to avoid that obligation by withdrawing their arguments rather than submit to discovery), but instead from the proffers from the Insider Defendants. *See* ECF No. 492 at 7–8. At the time of this Court's December 18, 2023 order, material facts gleaned from the Insider Defendant proffers were unavailable to Plaintiffs, and courts routinely permit amendment upon discovery of new facts, even long after the close of discovery. *See, e.g.*, *Port Auth. Police Benevolent Assoc., Inc. v. Port Auth. of N.Y.& N.J.*, No. 15-CV-3526 (AJN), 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016) ("Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate"). The VC Defendants ask this Court to cast a blind eye to those new, damning facts.

### B. Leave to File the Proposed Amended Complaint is Properly Sought.

The VC Defendants suggest that Plaintiffs' amendment is futile, because "Plaintiffs' Motion for Leave repeats the same unsupported conclusion" that the VC Defendants "'learned via extensive pre-investment due diligence efforts and ongoing investment monitoring that FTX was defrauding its customers,'" and that Plaintiffs' amended complaint adds only "numerous irrelevant paragraphs about FTX's own activities, but none supporting the inference that the Multinational VC Defendants knew of, let alone participated in, the FTX fraud" (Opp. at 8). However, the current

2

operative complaint includes extensive allegations demonstrating that the VC defendants had access to documents such as pitch decks illustrating the improper relationship between FTX and Alameda, and Defendants themselves note that Plaintiffs' new allegations—that FTX executives provided investors and auditors with the interest payment amount as to the line of credit to Alameda from FTX (Opp. at 8)—significantly bolster and support Plaintiffs' claims. Under these circumstances, of course these Defendants would oppose Plaintiffs' run-of-the-mill request for leave to amend, which the law is clear should be "freely given." *See Foman*, 371 U.S. at 182.

The VC Defendants also erroneously argue that Mr. Bankman-Fried's conviction is somehow dispositive and antithetical to Plaintiffs' allegations that the VC Defendants "had to have known of the fraud" (Opp. at 9). The fact that FTX may have concealed certain details from the VC Defendants does *not* exonerate them if they knew of *other* fraud at FTX and *misrepresented what they actually knew to others in the marketplace. See Coquina Investments v. Rothstein*, No. 10-60786-Civ., 2011 WL 4971923, at *14 (S.D. Fla. Oct. 19, 2011) (finding issue of material fact on question of whether a bank had knowledge of fraud or provided substantial assistance as issues of fact for the jury). The complaint lays out the incentives for the VC Defendants to conceal their knowledge of the fraud or turn a blind eye to it: they had invested substantial amounts in FTX and were incentivized to either push quietly for internal controls at FTX to remedy the issues they saw or for a fast IPO to exit with their funds before enforcement actions began. The fact that the VC Defendants: (1) kept their funds invested; (2) lost money when FTX declared bankruptcy; and (3) may have been misled in part by FTX, does not exonerate them for their misconduct; that it failed to inure to their benefit does not make it any less actionable.

**(ii) The Proposed Amendments as to the Existing Temasek Defendants are Proper.**

Defendants' assertion that the PAC does not add a single factual allegation tying any Temasek Defendant to any forum (Opp. at 9, 10) is wrong. The specific jurisdiction analysis includes how the defendant has targeted the forum state in connection with the plaintiff's claim. Plaintiffs added numerous allegations about FTX's activities in Florida and California that comprise the basis of the claims against the Temasek defendants. Defendants concede that Plaintiffs added allegations regarding FTX and FTX Insiders' tortious conduct in Florida, but argue it is irrelevant. It is clear from the both the existing complaint and the PAC, however, that allegations regarding Temasek's actions in Florida and California are tied to FTX's actions there as well, given that the claims hinge on Temasek's knowledge or willful blindness regarding FTX's

3

fraud. Because (1) FTX US had a large presence in Miami, (2) FTX executives frequently traveled to Miami from the Bahamas, (3) LedgerX was based in Miami, and (4) Alameda settled trades in California, the fraud in question—involving Alameda trading based upon funds improperly diverted from FTX customer accounts—occurred in Florida and California. Given that Temasek invested in FTX, its actions were necessarily targeted at these states where the fraud undisputedly occurred. *See Zuru Inc. v. Individuals, P'ships & Uninc. Assocs. Identified on Schedule "A"*, 2023 WL 4996689, at *1 (S.D. Fla. July 27, 2023) (finding personal jurisdiction where "Defendants directly target their business activities towards consumers in the United States, including Florida").

Plaintiffs include numerous allegations demonstrating personal jurisdiction in Florida to buttress the already sufficient allegations set forth in the existing complaint, such as:

- information regarding Temasek's corporate structure, employees and entities involved in the FTX investments, whether directly or indirectly, and activities in Florida and California, including agreements with FTX and Alameda;
- FTX's widespread activities in Florida (promotional, regulatory (as to LedgerX), technical (plan to build "cold wallets") and personnel (FTX US headquarters in Miami) and in California (trade settlements via Alameda;
- FTX US employees in California; and
- the North Dimension California-based entity (used as a bridge between FTX and Alameda for deposits)).

Defendants acknowledge that Plaintiffs added allegations concerning actions by FTX and its principals in relation to Florida (Opp at 10), and that Temasek invested in FTX. That alone is sufficient.[1] While the VC Defendants also argue that Plaintiffs do not plead "general" jurisdiction as to the Singapore-based Temasek entities, this argument is irrelevant as Plaintiffs sufficiently pleaded specific jurisdiction based upon Temasek's actions directed at the fora.[2]

---

[1] Defendants argue that Plaintiffs' "conspiracy-based theory of personal jurisdiction" fails to satisfy Due Process" (Opp. at 10) and that the PAC does not add any facts alleging that any of the Temasek Defendants themselves directed activity to Florda" (Opp. at 11). However, a Temasek representative served on the FTX advisory board, which exercised significant influence, given the lack of a Board of Directors, a CFO, or other traditional corporate oversight.

[2] It is clear from jurisdictional discovery and the FTX Insider declarations that: (1) the fraudulent scheme in question was based in part in California, given that Alameda's trading settlements were executed in California, so the fraudulent scheme (transfers from FTX customer fund to Alameda trading accounts) could not have functioned but for Alameda's action in California; and (2) Temasek invested in and actively managed FTX, including by sitting on the advisory board, and either knew of or was willfully blind to the FTX/Alameda fraud. This is enough to establish specific personal jurisdiction in California as to all Temasek entities involved in the investment.

4

### (iii) The Addition of New Proposed Temasek Defendants is Proper.

The VC Defendants argue Plaintiffs could not have alleged personal jurisdiction as to the new Temasek Defendants because they maintain Plaintiffs failed to allege personal jurisdiction as to the existing Temasek Defendants (Opp at 12). The VC Defendants' jurisdictional arguments are wrong, as Plaintiffs explain in their opposition to the VC Defendants' motion to dismiss. There is personal jurisdiction in Florida and California over the proposed Temasek defendants, either individually, or based upon their corporate role in conjunction with the existing Temasek Defendants, given: (1) their role in the FTX investment for Temasek and (2) FTX's extensive presence and activities in both of those states.

Temasek—a sophisticated sovereign wealth fund with decades of investment experience and near limitless resources—like other similarly situated investment funds, that examined: (1) a new company in the crypto industry; (2) with a corporate structure indicating clear overlap between the trading platform with custodial customer accounts and the proprietary trading company with the same ownership; and (3) clear evidence indicating that unaccounted funds were flowing from the customer-facing platform to the trading company (including interest payments), would certainly have seen enough evidence of fraud to raise the alarm. As already alleged, other investors declined to invest, *pointing to these same red flags*. This is surely enough to survive a motion to dismiss and the new proposed allegations further bolster the claims.[3] *See, e.g.*, *Bhatia v. Silvergate Bank*, 2024 WL 1199679, at *25–29 (S.D. Cal. Mar. 20, 2024) (denying motion to dismiss and concluding plaintiffs adequately pleaded Silvergate Bank's actual knowledge of FTX fraud to support aiding and abetting claim where plaintiffs alleged they relied on Silvergate's due diligence obligations or actions to support the inference of Silvergate's knowledge).

Still, the VC Defendants assert that "the undisputed record demonstrates Temasek Holdings and Artz are both Singaporean entities, based and headquartered in Singapore, which conducted no relevant activities in or directed to either forum state" (Opp at 12–13). The assertion that Artz—the Temasek holding company that funded the FTX investment—conducted no relevant activities directed to either California or Florida is belied by the facts alleged, including: (1) FTX's

---

[3] The Supreme Court has stated: "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment . . . the leave sought should, as the rules require, be 'freely given'" *Foman*, 371 U.S. at 182.

promotional activities, like paying for the FTX Arena in Miami or obtaining Sponsorships from Californians like the Golden State Warriors and Larry David; (2) FTX's US headquarters in Miami; (3) LedgerX's headquarters in Miami; (4) Alameda's settlement clearing activity in California; (5) Alameda's offices in California; and (6) regular travel by FTX executives to Florida. Although Artz may be in Singapore, conduct diligence into FTX and managing the investment required activities that were necessarily targeted at these forum states.[4]

### (iv) The Proposed Amendment as to the Softbank Defendants is Timely and Proper.

Plaintiffs' motion for leave to amend as to the Softbank Defendants is certainly meritorious because although the Softbank entities dropped their challenges to personal jurisdiction to avoid submitting to the discovery this Court ordered them to submit to does not prevent them from raising it in the future. It is certainly not improper for the Plaintiffs to seek leave to amend the complaint to add additional jurisdictional facts now pertaining to *all* VC Defendants, including Softbank, before Softbank raises a potential personal jurisdictional challenge, if merely for judicial economy. Likewise, although the VC Defendants state that none of the proposed new factual allegations are unique to Softbank, they still pertain to actions that FTX-related entities took in California and Florida, including the information that FTX disclosed to auditors and investors that it earned interest on the line of credit to Alameda (with FTX customer funds).[5]

---

[4] Likewise, although Blakiston, which Plaintiffs allege executed token warrant agreements with Alameda, is a Singapore entity (Opp. at 12), the Alameda trades stemming from these funds would have been cleared in California. The VC Defendants also acknowledge that "Artz is a Singapore investment vehicle through which Temasek International primarily made investments in FTX (ECF No. 297-2)," so Temasek International's investments were necessarily targeted at California and Florida given FTX's activities and entities located in those states. The VC Defendants also argue that Plaintiffs' complaints regarding their discovery misconduct are irrelevant here, (Opp. at 13), but it *is clearly* relevant because the VC Defendants rely upon their wrongful lack of production to argue that Plaintiffs were unable to obtain information from them to demonstrate Temasek's FTX-related activities in California.

[5] The VC Defendants note that Plaintiffs filed complaints mentioning SoftBank Tempest, but not naming that entity as a defendant. But it is unsurprising that an original complaint includes references to an entity that is later joined as a defendant. Plaintiffs now have the benefit of jurisdictional discovery and information from the FTX Insider Defendants, which provides evidence regarding the scope of the fraud at FTX, how visible the fraud was to all institutional investors who employed standard due diligence (as Softbank purportedly did), the fraud's connection to Florida and California, and how Softbank particularly knew or should have known about the fraud. The record is clear that Plaintiffs considered adding Softbank defendants, and, after obtaining additional evidence, timely did so (there is no scheduling order defining a final deadline to amend or join parties).

### (vi) The Addition of the New Sino Global Defendants is Proper.

The PAC sufficiently alleges personal jurisdiction over the new defendants and that the Sino Global defendants, either individually or as alter ego/agents, are liable, refuting the VC Defendants argument that "there are no substantive allegations that any of these entities did anything wrong."[6] The Sino Global Defendants relied upon FTX funds to fund their own VC funds (FTX investing as a General Partner), and thus the Sino Global Defendants relied upon investment funds traceable directly to FTX customer funds diverted through Alameda; funds that were therefore directly derived from FTX's activity in California and Florida.

As to the alter ego allegations, the PAC establishes that: (1) the entities were involved in the FTX fraud (i.e., as explained above, Sino Global investing in FTX and conducting extensive due diligence shows it was aware of the fraud) and (2) that the Sino Global employees worked alongside FTX employees both in the Bahamas and at the Brickell location. Therefore, the Sino Global entities, including the alter ego entities such as Liquid Value (the investment vehicle in which FTX invested) were used as part of the fraud.

Sino Global also disregarded corporate formalities. The PAC alleges that Matthew Graham exercises control over all entities (PAC ¶ 48), which is borne out on public investment forms.[7] Sino Capital has publicly stated it has no fixed address, and based on limited jurisdictional discovery, open-source information, and information from the proffers, Sino Capital's employees worked alongside FTX employees in the Bahamas and also at FTX's US headquarters in Miami.

In sum, SG Capital Management, LV Offshore, LV GP, and LV Fund GP all are controlled by Matthew Graham, are interwoven with Sino Global Capital, and were all involved in the FTX fraud: the Liquid Value entities received funds from FTX (and therefore from FTX customer accounts) despite Sino Global's awareness of the FTX/Alameda corporate structure. Therefore, the PAC as pled fully supports the alter ego and agency claims.

Plaintiffs have alleged facts in the PAC demonstrating both that Matthew Graham controls the Sino Global entities and that they are a sham enterprise existing solely to serve as a vehicle for fraud (namely that FTX was a general partner in the Liquid Value Fund, that Sino Global

---

[6] Plaintiffs' Motion for Leave to Amend specifically notes "Liquid Value GP Limited" as a new Defendant (Mot. at 1) and the PAC clearly includes "Liquid Value GP Limited." Defendants are wrong, Plaintiffs have not mixed up entity names or failed to join them in the PAC. (Opp. at 15).
[7] *See, e.g.,* PAC ¶¶ 48–53.

7

employees worked alongside FTX employees in Miami out of the same address, and that they disregarded the corporate form on SEC filings), refuting Defendants' veil-piercing arguments. In any event, alter ego liability aside, Plaintiffs have established the new Sino Global entities are properly sued in the PAC as they are also liable independently and on agency grounds.

### (vii) The Conversion-Related Claims and Unjust Enrichment Claim are Proper.

As to the VC Defendants' arguments regarding the conversion claim, (Opp. At 17–18), Plaintiffs sufficiently allege that: "The Sino Global Defendants accepted a $60 million investment from Alameda and yet another investment of an undisclosed amount from Sam Bankman-Fried, each of which, upon information and belief, was comprised of Class Member funds," (Compl. ¶ 338), and that "the Sino Global Defendants misappropriated those funds for their own benefit by taking funds from FTX (in the form of an investment in Sino Global entities)" (Compl. ¶ 340).

Likewise, as to the alternative unjust enrichment, the Complaint alleges that "Plaintiffs directly conferred a monetary benefit on the Sino Global Defendants in the form of investment funds provided to the Sino Global Defendants from FTX customer funds," that "Plaintiffs also conferred a monetary benefit on the Sino Global Defendants because they accepted funds that they knew, or should have known, were FTX consumer deposits," and "[w]ith Plaintiffs' money, the Sino Global Defendants enriched themselves" (Compl. ¶¶ 364–66). VC Defendants argue that, even though the Sino Global Defendants accepted funds that they knew, or should have known, belonged to FTX customers, "Plaintiffs did not confer any *direct* monetary benefit on the Sino Global Defendants" (Opp. at 19). But it is clear that the funds FTX transferred to Sino Global were FTX customer funds, given FTX's insolvency, and were a benefit. Because Plaintiffs lacked privity with Sino Global, they have no adequate remedy at law, making the unjust enrichment claim proper and distinguishable from conversion, contrary to the VC Defendants' arguments (Opp at 19).

### C.      Plaintiffs Properly Removed Extraneous Allegations from the PAC.

The VC Defendants inexplicably argue that Plaintiffs' PAC is somehow improper because it removes extraneous allegations that are all publicly available from Caroline Ellison's guilty plea.[8] Plaintiffs' removal of these facts, in the course of adding multiple substantive claims and

---

[8] The VC Defendants' reliance on *Cordero v. Owre*, 2018 WL 11371098, at *2 (S.D. Fla. Feb. 9, 2019) is misplaced. There, the court found that the plaintiff's attempt to sneak in untimely changes to a complaint not disclosed in the motion for leave "supported a finding of bad faith," *id*. at *2, but here the omitted allegations were merely extraneous to Plaintiffs' claims and are public record.

8

supporting allegations merely streamlines the most relevant facts, is entirely proper and consistent with the Federal Rules of Civil Procedure, and in no way demonstrates any type of bad faith or lack of clarity to the court or any party to the litigation.

### III. CONCLUSION

The Court should grant Plaintiffs' motion for leave to amend the complaint.

Dated: March 29, 2024

Respectfully submitted,

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*

James R. Swanson, La. Bar No. 18455
Kerry J. Miller, La. Bar. No. 24562
Molly L. Wells, La. Bar. No. 36721
C. Hogan Paschal, La. Bar No. 38495
**FISHMAN HAYGOOD L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252; (504) 586-5250 fax
jswanson@fishmanhaygood.com
kmiller@fishmanhaygood.com
mwells@fishmanhaygood.com
hpaschal@fishmanhaygood.com

Robert Lieff
P.O. Drawer A
Rutherford, CA 94573
rlieff@lieff.com

*Counsel to Plaintiffs and the Putative Classes*

By: */s/ David Boies*
David Boies
Alexander Boies
Brooke A. Alexander
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
914-749-8200
dboies@bsfllp.com
aboies@bsfllp.com
balexander@bsfllp.com

*Co-Lead Counsel*

Joseph R. Saveri (State Bar No. 130064)
Christopher Young (State Bar No. 318371)
Itak K. Moradi (State Bar No. 310537)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
imoradi@saverilawfirm.com

*Counsel to Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed on March 29, 2024, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
ADAM M. MOSKOWITZ