**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE: FTX Cryptocurrency Exchange Collapse Litigation**

_____

*This document relates to:*

*Promoter and Digital Creator Defendants*

       Garrison v. Wasserman Media Group, LLC
       and Dentsu McGarry Bowen, LLC,
       No. 23-cv-24478-KMM
_____/

**PLAINTIFFS' OPPOSITION AND MEMORANDUM OF LAW**
**IN RESPONSE TO DEFENDANTS'**
**JOINT MOTION TO DISMISS [ECF NO. 506]**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 4

    I.      PLAINTIFFS PROPERLY PLED THEIR STATE SECURITIES CLAIMS........ 4

          A.    Plaintiffs Sufficiently Pled Claims Under Fla. Stat. § 517.07 (Count 1)....... 4

          B.    Plaintiffs Sufficiently Pled Claims Under Cal. Corp. Code § 25504.1 (Count 8).............................................................................................................. 9

          C.    Plaintiffs Sufficiently Pled Claims Under Oklahoma Securities Law (Count 13)............................................................................................................ 11

    II.     PLAINTIFFS PROPERLY PLED THEIR CONSUMER PROTECTION CLAIMS. ................................................................................................ 12

          A.    Plaintiffs Sufficiently Alleged Deceptive Acts............................................ 12

          B.    Plaintiffs Sufficiently Allege Unfair Acts.................................................... 15

          C.    Plaintiffs Adequately Alleged Causation and Damages. ............................. 18

          D.    Each of Defendants' Arguments to the Contrary Fail. ................................. 20

    III.    PLAINTIFFS PROPERLY PLED CIVIL CONSPIRACY AND AIDING AND ABETTING.................................................................................................. 27

          A.    Plaintiffs Allege a Civil Conspiracy. .......................................................... 27

          B.    Plaintiffs Allege Aiding and Abetting. ........................................................ 29

    IV.    PLAINTIFFS STATE A CLAIM FOR DECLARATORY RELIEF. ................. 36

    V.     LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY. ................. 38

CONCLUSION........................................................................................................ 39

REQUEST FOR ORAL ARGUMENT ..................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*550 Seabreeze Dev. LLC v. Ill. Union Ins.*,
   2020 WL 473610 (S.D. Fla. Jan. 29, 2020) ............................................................... 37

*A&M Gerber Chiropractic LLC*,
   925 F.3d 1205 .................................................................................................... 21, 38

*Ahearn v. Mayo Clinic*,
   180 So. 3d 165 (Fla. 1st DCA 2015) ....................................................................... 19

*Ajose v. Interline Brands, Inc.*,
   187 F. Supp. 3d 899 (M.D. Tenn. 2016) .................................................................. 16

*Almeida v. BOKF, NA*,
   471 F. Supp. 3d 1181 (N.D. Okla. 2020) .................................................................. 30

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
   608 F. Supp. 2d 1349 (S.D. Fla. 2009) .................................................................... 28

*Backus v. Gen. Mills, Inc.*,
   122 F. Supp. 3d 909 (N.D. Cal. 2015) ..................................................................... 16

*Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*,
   938 F. Supp. 828 (S.D. Fla. 1996) ............................................................................. 9

*Behrman v. Allstate Ins. Co.*,
   388 F. Supp. 2d 1346 (S.D. Fla. 2005) .................................................................... 23

*Benson v. JPMorgan Chase Bank, N.A.*,
   2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) ......................................................... 21

*Ben-Yishay v. Mastercraft Dev., LLC*,
   2009 WL 6387928 (S.D. Fla. Dec. 14, 2009) .......................................................... 28

*Betz v. Trainer Wortham & Co.*,
   829 F. Supp. 2d 860 (N.D. Cal. 2011) ..................................................................... 21

*Bhatia v. Silvergate Bank*,
   2024 WL 1199679 (S.D. Cal. Mar. 20, 2024) ......................................................... 34

*Blain v. Liberty Mut. Fire Ins. Co.*,
   2023 WL 2436003 (S.D. Cal. Mar. 9, 2023) ........................................................... 16

*Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*,
  2021 WL 3552175 (S.D. Fla. Aug. 11, 2021) ........................................................ 24, 25

*BluestarExpo, Inc.*,
  568 F. Supp. 3d 1332 (S.D. Fla. 2021) ...................................................................... 38

*Bowen v. Ziasun Techs., Inc.*,
  11 Cal. Rptr. 3d 522 (Ct. App 2004) ........................................................................ 21

*California Med. Assn. v. Aetna Health of California Inc.*,
  532 P.3d 250 (Cal. 2023) ........................................................................................... 19

*Campion v. Old Republic Home Prot. Co.*,
  272 F.R.D. 517 (S.D. Cal. 2011) ............................................................................... 19

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) ................................................................................... 18

*Casey v. U.S. Bank Nat. Assn.*,
  26 Cal. Rptr. 3d 401 (Ct. App. 2005) ....................................................................... 33

*Caster v. Hennessey*,
  781 F.2d 1569 (11th Cir. 1986) ................................................................................. 24

*Cawthon v. Phillips Petroleum Co.*,
  124 So. 2d 517 (Fla. 2d DCA 1960) ............................................................................ 7

*Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ........................................................................................... 17

*Chang v. JPMorgan Chase Bank, N.A.*,
  845 F.3d 1087 (11th Cir. 2017) ........................................................................... 32, 35

*Chang v. Wells Fargo Bank, N.A.*,
  2020 WL 1694360 (N.D. Cal. Apr. 7, 2020) ....................................................... 32, 35

*Charles v. Fla. Foreclosure Placement Ctr., LLC*,
  988 So. 2d 1157 (Fla. 3d DCA 2008) ........................................................................ 27

*Chen v. PayPal, Inc.*,
  275 Cal. Rptr. 3d 767 (Ct. App. 2021) ...................................................................... 36

*Cir. City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ................................................................................................... 23

*Coffey v. WCW & Air, Inc.*,
  2018 WL 4154256 (N.D. Fla. Aug. 30, 2018) ........................................................... 23

iii

*Coleman v. CubeSmart*,
    328 F. Supp. 3d 1349 (S.D. Fla. 2018) ................................................................. 14

*Contant v. Bank of Am. Corp.*,
    2018 WL 5292126 (S.D.N.Y. Oct. 25, 2018) ........................................................ 20

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
    561 F. App'x 882 (11th Cir. 2014) ....................................................................... 31

*County of Salano v. Callejo Redevelopment Agency*,
    26 Cal. Rptr. 3d 401 (Ct. App. 2009) .................................................................. 25

*CTI Servs. LLC v. Haremza*,
    797 F. Supp. 2d 1257 (N.D. Okla. 2011) ............................................................. 27

*De Ford v. Koutoulas*,
    2023 WL 2709816 (M.D. Fla. Mar. 30, 2023) .................................................. 6, 8

*Demetriades v. Yelp, Inc.*,
    175 Cal. Rptr. 3d 131 (Ct. App. 2014) ................................................................ 15

*Denton v. Seterus, Inc.*,
    2019 WL 6721643 (N.D. Okla. Mar. 14, 2019) .................................................. 27

*Donofrio v. Matassini*,
    503 So. 2d 1278 (Fla. 2d DCA 1987) ............................................................ 27, 28

*Dorfman v. Nutramax Lab'ys, Inc.*,
    2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) .................................................... 23

*EcoHub, LLC v. Recology Inc.*,
    2023 WL 6725632 (N.D. Cal. Oct. 11, 2023)...................................................... 36

*Eifler v. Shurgard Cap. Mgmt. Corp.*,
    861 P.2d 1071 (Wash. Ct. App. 1993) ................................................................. 14

*Energy Fluids, Inc. v. Cimarex Energy Co.*,
    2008 WL 2404226 (W.D. Okla. June 10, 2008).................................................. 30

*Epperson v. Gen. Motors, LLC*,
    2023 WL 8628327 (S.D. Cal. Dec. 13, 2023)...................................................... 16

*Favila v. Katten Muchin Rosenman, LLP*,
    115 Cal. Rptr. 3d 274 (Ct.  App. 2010) ............................................................... 29

*Fernando Grinberg Tr. Success Int. Props., LLC v. Scottsdale Ins.*,
    2010 WL 2510662 (S.D. Fla. June 21, 2010) ..................................................... 37

iv

*Fineman v. Ferragamo USA Inc.*,
  672 F. Supp. 3d 1302 (S.D. Fla. 2023) ................................................................. 14

*Galstaldi v. Sunvest Communities USA, LLC*,
  637 F. Supp. 2d 1045 (S.D. Fla. 2009) ................................................................. 23

*Garcia v. Scottsdale Ins.*,
  2018 WL 3432702 (S.D. Fla. July 16, 2018) ......................................................... 37

*Garland v. Advanced Med. Fund, L.P. II*,
  86 F. Supp. 2d 1195 (N.D. Ga. 2000) ................................................................... 11

*Gavron v. Weather Shield Mfg., Inc.*,
  819 F. Supp. 2d 1297 (S.D. Fla. 2011) ................................................................. 12

*Gilison v. Flagler Bank*,
  303 So. 3d 999 (Fla. 4th DCA 2020) ............................................................... 29, 31

*Grayson v. No Labels, Inc.*,
  2021 WL 2869870 (M.D. Fla. Jan. 26, 2021) ........................................................ 27

*Groom v. Bank of Am.*,
  2012 WL 50250 (M.D. Fla. Jan. 9, 2012) ................................................................ 9

*Harmsen v. Smith*,
  693 F.2d 932 (9th Cir. 1982) ................................................................................ 32

*Harris v. Nordyne, LLC*,
  2014 WL 12516076 (S.D. Fla. Nov. 13, 2014) .................................................. 24, 25

*Hodges v. Monkey Cap., LLC*,
  2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) ........................................................ 21

*Honig v. Kornfeld*,
  339 F. Supp. 3d 1323 (S.D. Fla. 2018) ................................................................. 34

*Houchins v. Case*,
  189 So. 402 (Fla. 1939) ....................................................................................... 15

*Houghton v. Leshner*,
  2023 WL 6826814 (N.D. Cal. 2023) ........................................................................ 8

*Huynh v. Quora, Inc.*,
  2020 WL 7408230 (N.D. Cal. June 1, 2020) ......................................................... 15

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................................. 16, 25

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ......................................................................... 8, 21

*In re Equifax Inc. Sec. Litig.*,
    357 F. Supp. 3d 1189 (N.D. Ga. 2019) .................................................................... 14

*In re Ethereummax Inv.*,
    2023 WL 6787827 (C.D. Cal. June 6, 2023) ........................................................ 20, 26

*In re First All. Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................................... 32, 34, 35, 36

*In re Sahlen & Assocs., Inc. Sec. Litig.*,
    773 F. Supp. 342 (S.D. Fla. 1991) ........................................................................... 8, 9

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ............................................................................... 19, 22, 24

*In re Woodbridge Investments Litigation*,
    2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ............................................................ 34

*J.P. Morgan Sec., LLC v. Geveran Investments Ltd.*,
    224 So. 3d 316 (Fla. 5th DCA 2017) ................................................................... 4, 6, 9

*James v. Tyson Foods, Inc.*,
    292 P.3d 10 (Okla. 2012) ........................................................................................ 27

*Josefsberg v. Uber Techs., Inc.*,
    2023 WL 5670301 (S.D. Fla. Aug. 31, 2023) .......................................................... 23

*KC Leisure, Inc. v. Haber*,
    972 So. 2d 1069 (Fla. 5th DCA 2008) ..................................................................... 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
    131 Cal. Rptr. 2d 29 (Ct. App. 2003) ...................................................................... 25

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ..................................................................... 14

*Lamm v. State St. Bank & Tr.*,
    749 F.3d 938 (11th Cir. 2014) ................................................................................. 35

*Lawrence v. Bank of Am., N.A.*,
    455 F. App'x 904 (11th Cir. 2012) .......................................................................... 33

*Lewis v. Mercedes-Benz USA, LLC*,
    530 F. Supp. 3d 1183 (S.D. Fla. Mar. 30, 2021) ......................................... 18, 22, 24

*Liberty City Movie, LLC v. U.S. Bank, N.A.*,
    824 F. App'x 505 (9th Cir. 2020) ........................................................................... 29

*Lombardo v. Johnson & Johnson Consumer Companies, Inc.*,
    124 F. Supp. 3d 1283 (S.D. Fla. 2015) .................................................................... 18

*Lueras v. BAC Home Loans Servicing*, LP,
    163 Cal. Rptr. 3d 804 (Ct. App. 2013) .............................................................. 12, 17

*Marino v. Broward Sheriff's Office*,
    2021 WL 10384112 (S.D. Fla. Mar. 24, 2021) ........................................................ 38

*Marshall v. Red Lobster Mgmt. LLC*,
    2023 WL 9111611 (C.D. Cal. Dec. 18, 2023) ......................................................... 15

*Marty v. Anheuser-Busch Companies, LLC*,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ..................................................................... 14

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................................................... 18

*Messer v. E.F. Hutton & Co.*,
    847 F.2d 673 (11th Cir. 1988) ................................................................................... 8

*Molina v. Aurora Loan Servs., LLC*,
    635 F. App'x 618 (11th Cir. 2015) .......................................................................... 13

*Moss v. Kroner*,
    129 Cal. Rptr. 3d 220 (Ct. App. 2011) ................................................................ 9, 10

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*,
    462 P.3d 461 (Cal. 2020) ........................................................................................ 16

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d. 1101 (C.D. Cal. Oct. 20, 2003) ............................................... 31, 35

*Next Century Commc'ns Corp. v. Ellis*,
    318 F.3d 1023 (11th Cir. 2003) ............................................................................... 14

*Odor v. Rose*,
    2008 WL 2557607 (W.D. Okla. June 20, 2008) ..................................................... 12

*Ogdon v. Grand Canyon Univ. Inc.*,
    2023 WL 5054644 (D. Ariz. Aug. 8, 2023) ............................................................ 17

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. Rptr. 4th 688 (Ct. App. 2007) .................................................................. 21

*Park Place Kendall Condo. Ass'n, Inc. v. Rockhill Ins.*,
   2022 WL 18779644 (S.D. Fla. June 24, 2022) ....................................................... 37

*Patterson v. Beall*,
   19 P.3d 839 (Okla. 2000) ..................................................................... 16, 19, 22, 24

*Pearson v. Deutsche Bank AG*,
   2022 WL 951316 (S.D. Fla. Mar. 30, 2022) ............................................................ 34

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) ............................................................. 33, 34, 35

*Pino v. Cardone Cap., LLC*,
   55 F.4th 1253 (9th Cir. 2022) ............................................................................... 5, 8

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ............................................................................................. 4, 5

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
   842 So. 2d 773 (Fla. 2003) ..................................................................................... 15

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F. Supp. 2d 1105 (N.D. Cal. 2013) ..................................................................... 8

*Rogers v. Cisco Sys., Inc.*,
   268 F. Supp. 2d 1305 (N.D. Fla. 2003) ................................................................... 21

*Roskind v. Morgan Stanley Dean Witter & Co.*,
   95 Cal. Rptr. 2d 257 (Ct. App. 2000) ...................................................................... 21

*S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*,
   89 So. 3d 264 (Fla. 3d DCA 2012) ............................................................................ 7

*Scarff v. Wells Fargo Bank, N.A.*,
   2005 WL 3454136 (N.D. Cal. Dec. 16, 2005) ......................................................... 31

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
   2021 WL 11593043 (N.D. Cal. Aug. 16, 2021) ....................................................... 19

*Sevidal v. Target Corp.*,
   117 Cal. Rptr. 3d 66 (Ct. App. 2010) ...................................................................... 18

*Sheffler v. Americold Realty Tr.*,
   2023 WL 3918491 (11th Cir. June 9, 2023) ............................................................ 38

*Simi Mgmt. Corp. v. Bank of Am., N.A.*,
   930 F. Supp. 2d 1082 (N.D. Cal. 2013) ................................................................... 32

*Simms Inv. Co. v. E.F. Hutton & Co. Inc.*,
  699 F. Supp. 543 (M.D.N.C. 1988) ......................................................................... 11

*Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*,
  2021 WL 6118098 (M.D. Fla. Dec. 27, 2021) ......................................................... 21

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  113 Cal. Rptr. 2d 399 (Ct. App. 2001) ................................................................... 16

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*,
  278 F. Supp. 3d 1307 (S.D. Fla. 2017) ....................................................... 13, 15, 24

*Stone Inv. Dakota LLC v. De Bastos*,
  2015 WL 6997979 (S.D. Fla. Nov. 12, 2015) ......................................................... 20

*Strickland v. Alexander*,
  772 F.3d 876 (11th Cir. 2014) ................................................................................ 37

*Stueve Bros. Farms, LLC v. Berger Kahn*,
  166 Cal. Rptr. 3d 116 (Ct. App. 2013) ................................................................... 30

*Sugarman v. Brown*,
  288 Cal. Rptr. 3d 165 (Ct. App. 2021) ................................................................... 26

*Taylor v. Costco Wholesale Corp.*,
  2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) ........................................................... 23

*Terry v. Nuvell Credit Corp.*,
  2007 WL 2746919 (W.D. Okla. Sept. 20, 2007) ..................................................... 19

*Thieme v. Cobb*,
  2016 WL 3648531 (N.D. Cal. July 8, 2016) ........................................................... 25

*Thompson v. Procter & Gamble Co.*,
  2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) .................................................... 13, 15

*Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*,
  2023 WL 4457458 (S.D. Fla. July 11, 2023) ......................................................... 32

*Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*,
  320 F. Supp. 3d 1285 (M.D. Fla. 2018) .................................................................. 31

*Troyk v. Farmers Grp., Inc.*,
  90 Cal. Rptr. 3d 589 (Ct. App. 2009) ............................................................... 25, 26

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ................................................................................................ 31

*Vior Funeral Homes, Inc. v. Hartford Fire Ins.*,
  2017 WL 5953289 (S.D. Fla. June 20, 2017) ....................... 37

*Virgilio v. Ryland Grp., Inc.*,
  680 F.3d 1329 (11th Cir. 2012) ...................................... 23

*Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*,
  2023 WL 1469408 (M.D. Fla. Feb. 2, 2023) ..................... 38

*White v. CitiMortgage*, ,
  2012 WL 13024694 (W.D. Okla. June 15, 2012) ............... 27

*Wiand v. Wells Fargo Bank, N.A.*,
  938 F. Supp. 2d 1238 (M.D. Fla. 2013) ........................... 33

*Wildes v. BitConnect Int'l PLC*,
  25 F.4th 1341 (11th Cir. 2022) ................................ 5, 6, 8

*Wolf v. Celebrity Cruises, Inc.*,
  683 F. App'x 786 (11th Cir. 2017) ............................... 7, 8

*Wolicki-Gables v. Arrow Int'l, Inc.*,
  641 F. Supp. 2d 1270 (M.D. Fla. 2009) ............................ 7

*Woods v. Barnett Bank of Ft. Lauderdale*,
  765 F.2d 1004 (11th Cir. 1985) ..................................... 31

*Wright v. Schock*,
  571 F. Supp. 642 (N.D. Cal. 1983) ................................ 32

**Statutes**

Cal. Bus. & Prof. Code § 17200 ......................................... 24

Cal. Corp. Code § 25504.1............................................... 9

Fla. Stat. § 501.204 .................................................... 24

Fla. Stat. § 501.212 .................................................... 22

Fla. Stat. § 517.07 ..................................................... 4

Fla. Stat. § 517.211 .................................................... 4

Okla. Stat. Ann. tit. 71, § 1-509 ................................ 11, 12

Okla. Stat. tit. 15, § 752 ...................................... 12, 26

Okla. Stat. tit. 15, § 753 ........................................... 24

Okla. Stat. tit. 15, § 754 ........................................................................................... 22, 27

Okla. Stat. tit. 15, § 761.1 ............................................................................................... 19

Okla. Stat., tit. 71, § 1-509 .............................................................................................. 11

**Rules**

Fed. R. Civ. P. 11(b)(3) ................................................................................................... 13

Fed. R. Civ. P. 15(a)(2) ................................................................................................... 38

Fed. R. Civ. P. 8(a) ............................................................................................... 24, 26, 31

Fed. R. Civ. P. 9(b) .......................................................................................................... 31

**Other Authorities**

Restatement (First) of Conflict of Laws § 585 ............................................................... 24

Plaintiffs filed their Class Action Complaint ("Compl.") against Defendants Wasserman Media Group, LLC ("Wasserman") and Dentsu McGarry Bowen LLC ("Dentsu" and, together, "Defendants" or "Ad Agency Defendants") in this Court (No. 23-cv-24478-KMM), and subsequently moved for transfer to MDL 3076. Following the transfer, Defendants filed a Joint Motion to Dismiss for failure to state a claim ("Mot.," ECF No. 506). Plaintiffs hereby submit their opposition and respectfully state as follows:

## INTRODUCTION

Without the help of specifically Defendants Wasserman and Dentsu, the monumental scale of the FTX Disaster would not have been possible, as large swathes of the public would never have heard of FTX or been swayed to invest using FTX by star-studded commercials and gigantic media partners, and would never have trusted FTX as the "safe" and "protected" option for investing their funds. Compl. ¶ 34. Wasserman and Dentsu are the best of the best – hired specifically to drive customers from across the globe to Voyager.

Wasserman publicly proclaims to value truth and "honesty with our clients, partners, and each other. We take the time and the care to respectfully have the hard conversations. Mistakes happen. Learn from them and be accountable." Compl. ¶ 274; https://www.teamwass.com/about/. Yet, when they decided to partner with FTX, a financial institution in the unregulated crypto industry, these values mysteriously disappeared, with Wasserman proceeding to lead marketing campaigns in two gigantic markets, Major League Baseball and Formula 1 Racing, where they drew in customers and their funds prior to the collapse. Compl. ¶ 288.

Dentsu oversaw a $20 million dollar marketing campaign, which included creating commercials with superstars like Tom Brady, and even creating Larry David's first ever Super Bowl commercial, the pinnacle of commercial advertising. Compl. ¶ 308, 313. This would obviously bring in large quantities of investments, which was the sole purpose of advertising

FTX's platform—more deposits and accounts with YBAs. Dentsu, as a sophisticated entity, knew or should have known that FTX's platform was a scam, of potential concerns about FTX selling unregistered crypto securities, or that it was aiding and abetting the FTX Group's fraud or conversion, especially before broadly advertising such a controversial financial product.

Defendants knew or should have known that the objective of their partnerships, and their promotional activity, constituted promoting unregistered securities like FTT and YBAs. Compl. ¶¶ 298, 321. Both before and after Defendants created investments for FTX, there was significant national attention to the fact that cryptocurrency investment products substantially identical to FTX's products constituted securities under both federal and state law. *See* Compl. ¶¶ 186–232.

As Defendants concede, FTX was a house of cards, and the FTX Disaster is the largest financial fraud in American history. Mot. 1. They also cannot dispute that the FTX Disaster was a team effort in which they were each crucial players, contrary to what Defendants want the public to believe.

FTX positioned itself as a safe and easy way for people to make money. It guaranteed attractive interest rates on any assets that customers maintained in their FTX accounts, which were called "Yield Bearing Accounts" ("YBAs"). Compl. ¶ 233, 235, 236. In addition, FTX offered the FTT token, which is an investment contract. Compl. ¶ 246. FTX developed a platform ("the FTX Platform") intuitive enough for novice investors that would place cryptocurrency trade orders and offered the YBAs and FTT. Compl. ¶¶ 83, 246. Within two years, owing to the unprecedented scale and intensity of the FTX promoters' and Ad Agency Defendants' advertising of FTX, the company obtained control over billions of dollars in customer assets. Compl. ¶ 134. Unbeknownst to FTX customers, FTX then leveraged and commingled them to engage in risky and unregulated

investments. Compl. ¶ 141, 142. In November 2022, FTX collapsed and went bankrupt when it could not cover customer withdrawal requests. Compl. ¶ 161–64.

The crucial ingredient for FTX to grow into the largest financial fraud in history were customers, which Defendants delivered, capturing market share for FTX by creating advertisements that enticed innocent prospective customers with the false impression that cryptocurrency assets held on the FTX Platform were safe. Compl. ¶ 392. Defendants are sophisticated firms who understood their capability of influencing consumer behavior. *See* Compl. ¶ 279, 280, 317. For example, the point of FTX's partnering with paid endorsers and with those who facilitated such endorsements was to increase consumers' investments in FTX; more specifically, to assist in FTX's solicitation of investments in crypto-related securities offered on its platform. Compl. ¶¶ 259–60, 265. And the Ad Agency Defendants substantially assisted FTX's offering and sale of unregistered securities. Compl. ¶ 298–300, 321–23.

The SEC and other regulators have made it clear that if FTX YBAs were found to be "securities," all persons who promote or facilitate the sale of such investments may be liable under state and federal law. *See* Compl. ¶¶ 186–232. Because YBAs (as well as other FTX products discussed below) were unregistered securities, each Defendant is liable for Plaintiffs' losses, jointly and severally. Compl. ¶ 34. In addition, regardless of the security status of FTX's products, Defendants violated state consumer protection laws. Compl. ¶¶ 375–84.

Defendants' promotions should not be viewed in isolation, but rather as part of a wide-ranging conspiracy to promote and sell FTX's products. *See* Compl. ¶ 385–90. Plaintiffs bring this action to hold Defendants responsible for the billions in damages they helped cause.

## ARGUMENT

I.   **PLAINTIFFS PROPERLY PLED THEIR STATE SECURITIES CLAIMS.**

A.   **Plaintiffs Sufficiently Pled Claims Under Fla. Stat. § 517.07 (Count 1).**

The Florida Securities and Investor Protection Act ("FSIPA") provides that "[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security . . . is registered pursuant to this chapter." Fla. Stat. § 517.07(1). Any person who sells an unregistered security in violation of § 517.07 is liable to purchasers for recission or, if the purchasers have sold the security, for damages. *See* Fla. Stat. § 517.211(1). In addition, "every director, officer, partner, or agent of or for the seller" who "personally participated or aided in making the sale" is jointly and severally liable. *Id*. Thus, to state a FSIPA claim, Plaintiffs must allege: (1) the FTX products were securities; (2) the securities were not registered; and (3) Defendants participated or aided in the sales as partners or agents of or for FTX. Plaintiffs have alleged sufficient facts supporting these elements.

1.   **Defendants Were Partners with, or Agents of or for, FTX.**

FSIPA liability extends to "1) sellers," and 2) "every director, officer, partner, or agent of ... [the] seller." *J.P. Morgan Sec., LLC v. Geveran Investments Ltd.*, 224 So. 3d 316, 327 (Fla. 5th DCA 2017); Fla. Stat. § 517.211(1). Because FSIPA does not expressly define what constitutes a "seller," courts have relied on the United States Supreme Court's decision in *Pinter v. Dahl*, 486 U.S. 622 (1988), in determining who is a "seller" under Fla. Stat. § 517.211.

In *Pinter*, the Supreme Court held that liability for selling unregistered securities "is not limited to persons who pass title" in an unregistered security, but also extends to "the person who successfully solicits the purchase" of that security, "motivated at least in part by a desire to serve his own financial interests or those of the security owner." 486 U.S. at 643, 647. Solicitation is a broad concept that encompasses *all* forms of enabling and encouraging of securities purchases and

4

reaches *all* conduct "directed at producing the sale." *Id.* at 647, 650–51 n.26. Courts consistently have refused to graft any further limitations on the definition of solicitation, explaining that there is "no indication that Congress was concerned with regulating only a certain type of solicitations," or excluding social media advertising which presents particular "dangers that investors will be persuaded to purchase securities without full and fair information." *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1259–60 (9th Cir. 2022).

In *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022), the Eleventh Circuit clearly articulated the standard applicable to mass solicitation of unregistered securities, ruling that spokespersons who promoted a crypto Ponzi scheme had engaged in "solicitation" of securities by "urg[ing] people to buy [crypto tokens] in online videos," even if the offering's promoters did not directly target particular purchasers. *Id.* at 1346. In so ruling, the Court observed that the Securities Act does not distinguish between individually targeted sales efforts and broadly disseminated pitches, and noted that in early cases applying the Securities Act of 1933, "people understood solicitation to include communications made through diffuse, publicly available means—at the time, newspaper and radio advertisements." *See Pino*, 55 F.4th at 1258 (discussing and quoting *Wildes*, 25 F.4th at 1346).

In *Pino*, 55 F.4th 1253, the Ninth Circuit adopted *Wildes* in its entirety, holding that a real estate management company that promoted real estate investment funds through "mass communications to potential investors" via nontargeted internet videos posted on social media could be a statutory seller liable for solicitation based on YouTube videos and Instagram posts touting the investments and rates of return. *Id.* at 1258–60. The court noted that, to state a cause of action, a plaintiff "need not have alleged that he specifically relied on any of the alleged misstatements identified in the [complaint]." *Id.* at 1260.

5

In *De Ford v. Koutoulas*, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023), the court denied a motion to dismiss claims that a spokesperson for "Let's Go Brandon" cryptocurrency (LGBCoin) engaged in the solicitation of unregistered securities. Citing *Wildes*, 25 F.4th 1341, the court rejected the argument that "mere social media posts cannot make him a seller of securities" and held that the plaintiff had sufficiently alleged a claim for selling unregistered securities by alleging the (1) online promotion of LGBCoin through social media channels, and (2) that the promotions were done to serve the spokesperson's own financial interests. *Id.* at 15.

Here, contrary to Defendants' characterizations of the Complaint's allegations, Plaintiffs have alleged that Defendants were significantly more than just remote players in the sale of FTX's products. To further their own financial interests and those of FTX, Dentsu helped spearhead FTX's $20 million marketing campaign which included commercials featuring celebrities like Tom Brady, Gisele Bündchen, and Larry David, while Wasserman led marketing campaigns for FTX at the MLB All Star Game in LA and for Formula 1's Miami Beach Race Weekend. Compl. ¶¶ 287–92, 308–15. Defendants' marketing induced millions of vulnerable investors to invest in FTX. Compl. ¶¶ 38, 293, 322–28. Defendants were financially motivated to solicit investors—not only because FTX was paying them for performing that service, but also because they had expectations of long-term opportunities to work with FTX and its high-profile brand ambassadors. Compl. ¶¶ 293–95, 316–18. Based on these allegations and others set forth in the Complaint, Plaintiffs plausibly plead solicitation.

Plaintiffs' allegations also plausibly demonstrate that Defendants were agents of FTX. Under FSIPA "the term 'agent' is given its common meaning—'representation of a principal.'" *Geveran Invs.*, 224 So. 3d at 329. "The elements of actual agency are: 1) acknowledgment by the principal of the agent; 2) the agent's acceptance; and 3) control of the agent by the principal." *Id.*.

*See also S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n*, 89 So. 3d 264, 267 (Fla. 3d DCA 2012) ("[i]n examining whether agency exists, the principal's actions are the primary indication of the relationship, and such examination is generally done by the trier of fact unless there is *indisputably no connection* between the principal and the agent." (emphasis added)).[1]

Plaintiffs allege that FTX hired Defendants to run mass-influence marketing campaigns to increase sales. Compl. ¶¶ 274–328. Indeed, Plaintiffs allege that Wasserman acted as FTX's official global agency for its partnership activation business after winning in an agency review, and both parties touted their relationship. Compl. ¶ 278–80. The promotional campaigns were coordinated by FTX out of Miami, Florida. *Id.* ¶¶ 330–39. FTX had the ability to review and control the messages Defendants disseminated. *See*, *e.g.*, *id.* ¶ 333 (alleging FTX's Vice President of Business Development had final approval of all aspects of the Super Bowl commercial). These allegations are sufficient to establish that Defendants acted as FTX's agents.

Defendants argue that advertisements are not proof that Defendants were agents for FTX, citing *Cawthon v. Phillips Petroleum Co.*, 124 So. 2d 517 (Fla. 2d DCA 1960) and *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017). *Cawthon* only pertains to "general advertisement[s]" that used the name and logo of a franchisor, which were insufficient to make a gas station operator the agent of an oil company. 124 So. 2d at 519, 521. Defendants here were paid to exploit the prestige and trustworthiness of celebrities and sports organizations to influence the investment decisions of their fans and followers through their promotions; thus, the facts are not equivalent to *Cawthon*. *Wolf* is also inapposite, as the court found that the plaintiff's belief that the defendant was an agent was not reasonable "in light of the two separate disclaimers he

---

[1] Contrary to Defendants' assertion, Plaintiffs are not required to allege that Defendants had authority to bind FTX. *See Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1289 (M.D. Fla. 2009), *aff'd*, 634 F.3d 1296 (11th Cir. 2011) (identifying elements to establish agency).

received" which expressly stated that the excursion operators "were independent contractors and not agents or representatives" of the defendant. *Wolf*, 683 F. App'x at 798. No such disclaimers exist in this case.

Accordingly, Plaintiffs have pled facts plausibly demonstrating that Defendants were agents of FTX. At a minimum, there are factual disputes that cannot be decided at this stage. *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 372 (S.D. Fla. 1991) (fact question existed whether auditor PMM was an agent of securities seller).[2]

### 2. Defendants Aided and Personally Participated in the Sales.

The Ad Agency Defendants have aided and personally participated in the sales of unregistered securities. The Eleventh Circuit has held that promoting unregistered securities (cryptocurrency) through mass communications on YouTube and the internet could give rise to liability under federal securities laws.[3] *BitConnect*, 25 F.4th at 1346; *see also Pino*, 55 F.4th at 1257–60 (adopting the *Bitconnect* court's reasoning and holding that a plaintiff "need not have alleged that he specifically relied on any of the alleged misstatements identified in the [complaint]" to state a claim for promotion of unregistered securities); *De Ford*, 2023 WL 2709816, at *15–16 (unregistered securities claim stated based on promotions of cryptocurrency online and on social media and serving spokesman's financial interests); *Houghton*, 2023 WL 6826814, at *3–5

---

[2] Similarly, whether Defendants' actions qualify as an actionable "solicitation" should be tested on an evidentiary basis, and not through a motion to dismiss. *See Houghton v. Leshner*, 2023 WL 6826814, at *3 (N.D. Cal. 2023) (extent of each role in soliciting the securities "should be tested on an evidentiary basis."); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009) ("Whether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury"); *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1126 (N.D. Cal. 2013) ("[W]hether an individual is a seller under section 12 is a question of fact, not properly decided on a motion to dismiss.").

[3] Courts in Florida look to federal securities laws for guidance in interpreting FSIPA. *Messer v. E.F. Hutton & Co.*, 847 F.2d 673, 676 (11th Cir. 1988).

(denying motion to dismiss because "[s]olicitation is broadly construed," and a promoter "could be a statutory seller liable for solicitation based on YouTube videos and Instagram posts touting the investments and rates of return"). In this case, Plaintiffs have alleged that Defendants' sustained and aggressive marketing campaigns induced millions of vulnerable investors to invest in FTX. Compl. ¶¶ 38, 293, 322–28. These allegations are sufficient to support Plaintiffs' FSIPA claim.[4] Regardless, whether Defendants had "sufficient participation" to be liable under §§517.301 and 517.211 "is a question of fact to be determined at trial or earlier summary proceedings"—not at the motion to dismiss stage. *In re Sahlen*, 773 F. Supp. at 372.

### B.    Plaintiffs Sufficiently Pled Claims Under Cal. Corp. Code § 25504.1 (Count 8).

Plaintiffs have stated a claim under Cal. Corp. Code § 25504.1 for promoting unregistered securities, which are pleaded in the alternative to the nationwide claim under Florida law. Under § 25504.1, a plaintiff must allege: (1) Defendants provided material assistance in any violation of § 25110 (which prohibits the sale of unregistered securities), with (2) intent to deceive or defraud. *Moss v. Kroner*, 129 Cal. Rptr. 3d 220, 226 (Ct. App. 2011); Cal. Corp. Code § 25504.1.[5] Plaintiffs allege that Defendants intended to induce customers to rely on their representations about FTX

---

[4] Defendants' cases on this point either support Plaintiffs' position or are distinguishable. In *Groom v. Bank of Am.*, 2012 WL 50250, at *4–5 (M.D. Fla. Jan. 9, 2012), unlike here, plaintiffs had not alleged that defendants "played any part in the sale of the investments or that they fell within any other category of persons identified in Fla. Stat. § 517.211(2)]." In *Geveran Investments*, 224 So. 3d at 328, the court acknowledged that defendants "have to be directly involved in a sale of securities"—as Plaintiffs have alleged here, Compl. ¶¶ 274–328. In *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F. Supp. at 828 (S.D. Fla. 1996), unlike this case, the parties had *stipulated* that defendant had done nothing more than perform standard legal services.

[5] In a single sentence, Mot. 12, Defendants suggest that Plaintiffs have failed to plead that FTX is a security. However, Defendants have assumed for the purposes of this motion that FTTs and YBAs are securities. Mot. 8 n.1. And Defendant do not explain why that is insufficient for the purposes of California law. Moreover, Plaintiffs also allege that the FTX Platform itself is a security, *see, e.g.*, Compl. ¶¶ 370–71, but Defendants do not address those allegations more than conclusorily, Mot. 12–13.

while omitting that (i) Defendants had no reasonable basis for their representations about FTX's purportedly being "safe"; and/or (ii) FTX had serious problems. Plaintiffs allege, for example, that Defendants were exposed to red flags of fraud and either knew or should have known about FTX's financial fragility. Compl. ¶¶ 38, 296–300, 319–23. Plaintiffs also allege that Defendants (i) had not disclosed their financial motivations to tout FTX, *e.g.*, Compl. ¶ 363; (ii) knew they were helping to represent FTX as a safe, trustworthy, and superior to other exchanges when in fact, they knew that had no basis for any of those conclusions, *e.g.*, Compl. ¶ 299; and (iii) knew they were using their considerable fame and prestige to influence novice investors to make risky financial decisions based on their uninformed recommendations, *e.g.*, Compl. ¶ 293.

Defendants make three unavailing arguments that Plaintiffs' California Securities Act claim should be dismissed. *First*, Defendants argue that privity with the buyer is required for an unregistered securities claim. But strict privity is not required to recover damages against a defendant under § 25504 and § 25504.1. *Moss*, 129 Cal. Rptr. 3d at 228. *Second*, Defendants complain that Plaintiffs' allegations are boilerplate. However, the allegations enumerated above are more than sufficient to state a claim under the California Securities Act. *Third*, Defendants argue, in a footnote, that the claims against Dentsu[6] should be dismissed because no nexus exists between the State of California and Plaintiffs' California claims. They are wrong. Notwithstanding the scrivener's error in failing to identify the California Plaintiffs Cabo and Henderson in the context of the California claims, Plaintiffs have incorporated all allegations regarding Cabo and Henderson into each of the California alternative claims. Compl. ¶¶ 46–47, 351, 415. Defendants clearly understand that the relevant California Plaintiffs are Cabo and Henderson.[7] Moreover,

---

[6] Defendants do not contest that Wasserman has sufficient connection to California.

[7] The absence of definitions of California sub-classes is irrelevant to the Motion to Dismiss.

Defendants do not, and cannot, dispute that multiple state securities laws may apply to the same transactions, as is the case here. *See Garland v. Advanced Med. Fund, L.P. II*, 86 F. Supp. 2d 1195, 1204–05 (N.D. Ga. 2000) ("the pertinent question in such [Blue Sky] cases is whether there was a sufficient territorial nexus between the state at issue and the transaction"); *Simms Inv. Co. v. E.F. Hutton & Co. Inc.*, 699 F. Supp. 543, 545 (M.D.N.C. 1988) ("[T]he securities laws of two or more states may be applicable to a single transaction.").

### C.     Plaintiffs Sufficiently Pled Claims Under Oklahoma Securities Law (Count 13).

As with Plaintiffs' claim under the California Securities Act, Plaintiffs have stated a claim under Oklahoma's securities code, which is pled in the alternative to their nationwide claim under Florida law. Under Oklahoma law, "[a] person is liable to a purchaser if the person sells a security in violation of Section 1-301 of this title" (which requires registration). Okla. Stat., tit. 71, § 1-509(B).[8] For the reasons discussed above in Part I.A, with respect to FSIPA, Plaintiffs allege that FTX is a person liable to Plaintiffs for selling unregistered securities under § 1-509(B). Okla. Stat. tit. 71, § 1-509(G) extends liability "jointly and severally" to certain categories of individuals who "materially aid[] the conduct giving rise to the liability." Okla. Stat. tit. 71, § 1-509(G).[9]

---

[8] Defendants state that FTX Platform is not a security as it is "a platform, an exchange." Mot. 12. But they do not explain *why* that makes it not a security. This is immaterial as Defendants have assumed for the purposes of this motion that both FTTs and YBAs *are* securities. Mot. 8 n.1. In any event, Plaintiffs have pled facts plausibly demonstrating the FTX Platform is a security— including because customer investments through FTX were, by default, placed in YBAs, which are securities. *See id.* ¶¶ 242, 244. Under *SEC v. Terraform Labs Pte. Ltd.*, 2023 WL 4858299, at *12 (S.D.N.Y. July 31, 2023) (J. Rakoff), whether a product constitutes a security depends on "the full set of 'contracts, expectations, and understandings' that attach to the subject." Under the *Terraform* analysis, the FTX Platform is plausibly a security because it was created and sustained through unregistered securities, with customer investments being lent to third parties in exchange for FTT as collateral. Compl. ¶¶ 217–32, 142, 255–56.

[9] Defendants claim Plaintiffs must plead that Defendants knew, or "in the exercise of reasonable care" could have known, of the conduct giving rise to the violation. That is incorrect. The burden of proof is on *Defendants* to show they did *not* know of the conduct giving rise to the violation and

Defendants are liable under the Oklahoma securities law because they sold unregistered securities, promoted false and deceptive messages about securities and the FTX platform, and failed to disclose material information. *See, e.g.*, Compl. ¶¶ 274–378, 441–48. In addition to being "agents" of FTX and individuals "associated with" FTX, Defendants are also "[a]ny other person[s]" who materially aided in FTX's violation of the Oklahoma securities laws. § 1-509(G)(3)–(5). Defendants were an essential component of FTX's sales campaign, and they were remarkably effective in increasing FTX's sales. *See* Compl. ¶¶ 278, 287, 293, 308–09, 312, 322. Plaintiffs have therefore stated a claim against Defendants under the Oklahoma securities law.

## II.   PLAINTIFFS PROPERLY PLED THEIR CONSUMER PROTECTION CLAIMS.

Plaintiffs have stated claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the California Unfair Competition Law ("UCL"), and the Oklahoma Consumer Protection Act ("OCPA"). As set out here, Plaintiffs have alleged deceptive and unfair acts, as well as causation and damages. Defendants' arguments to the contrary, as shown, are each incorrect.[10]

### A.   Plaintiffs Sufficiently Alleged Deceptive Acts.

Plaintiffs allege Defendants engaged in "deceptive acts," i.e., acts that are "likely to mislead [a] consumer acting reasonably in the circumstances." *Gavron v. Weather Shield Mfg., Inc.*, 819 F. Supp. 2d 1297, 1302 (S.D. Fla. 2011).[11] "Ordinarily, the question of whether a business

---

could not have known about it even with the exercise of reasonable care. *Odor v. Rose*, 2008 WL 2557607, at *4 (W.D. Okla. June 20, 2008).

[10] As explained below, the Court need not answer *now* the threshold question raised by Defendants about whether the consumer protection laws apply to securities.

[11] *Accord* Okla. Stat. tit. 15, § 752(13) (defining "deceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral."); *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804 (Ct. App. 2013) ("[F]raudulent practice[s] under the UCL

practice—such as a statement made on a product's packaging—is deceptive, is a question of fact not appropriately resolved on a motion to dismiss." *Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018).

Plaintiffs' detailed pleading satisfies the "deceptive act" element where they allege, as just a few examples, that Defendants:

- Wrote or otherwise designed or assisted in designing misleading representations in the advertising campaign that represented FTX as "safe" and suitable for first-time retail investors. Compl. ¶¶ 3, 16, 68, 79, 258–60, 271–72, 285–87, 309–15, 320.

- Wrote or otherwise designed or assisted in designing misleading representations in the advertising campaign representing celebrity promoters as "in" on crypto, *i.e.*, investing their own money in FTX. Compl. ¶¶ 3, 16, 287, 309–10, 320.

- Planned and organized the dissemination of further misleading misrepresentations. Compl. ¶¶ 3, 284–85.[12]

Defendants argue (Mot. 17, 20) that these misrepresentations are mere "puffery" under Florida and California law.[13] They are wrong. Representations or omissions are not mere "puffery" when they "are ones to which a reasonable[14] consumer could rely." *Thompson*, 2018 WL 5113052,

_____

'require[] only a showing that members of the public are likely to be deceived' and 'can be shown even without allegations of actual deception, reasonable reliance and damage.'").

[12] For further examples and context for Defendants' advertising campaigns, *see* Plaintiff's Response to Celebrity and YouTuber Defendants' Mot. to Dismiss at 17–19, In re: FTX Cryptocurrency Exchange Collapse Litig., No. 1:23-md-03076, ECF No. 372 (Nov. 6, 2023) and the complaint citations therein. Additional statements and acts may be revealed in discovery. *See* Fed. R. Civ. P. 11(b)(3).

[13] Defendant nowhere present this argument with respect to Oklahoma and, thus, waive that defense to the extent it is available in the first instance.

[14] The "reasonable" language here refers to whether consumers' interpretation of a defendant's words was reasonable—not whether they would have uncovered the fraud with "their own due diligence" as Defendants claim (Mot. 18). *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017) (finding whether plaintiff "knew the defendant's business well enough to manage the risk" irrelevant because "FDUTPA does not require 'subjective proof of deception'"); *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (denying claim because plaintiff "did not explain what was deceptive about the websites"). And what the average consumer can be expected to know about

at *2. Courts do not assess the individual representations "in a vacuum" and focus instead on whether a statement would have "contributed . . . to the deceptive context . . . as a whole." *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1342 (S.D. Fla. 2014) (statement of "German Quality" not puffery); *see also, e.g.*, *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1218–25 (N.D. Ga. 2019) (statements about "strong data security" not puffery given "context" that it was the focus of advertising campaign and important to consumers); *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018) (court must consider "net impression"). Defendants' actions must be viewed in their context—the entire focus of Defendants' and FTX's advertising campaign was to convince ordinary people with no investment experience that cryptocurrency was a "safe" investment despite their lack of experience, and that FTX was the "safest way….to buy and sell [it]." Convincing customers of this was crucial to FTX's success.[15] *See, e.g.*, Compl. ¶¶ 16, 79, 317.

FTX and its products were not "safe" investments under any meaning of the word. Numerous courts have found similar statements to be actionable because, in context, something can be objectively (and obviously) unsafe,[16] and consumers can and do rely on such statements. *See, e.g.*, *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 860–63 (N.D. Cal. 2015) (collecting cases and finding Uber's statements about safety were actionable); *Eifler v. Shurgard*

---

FTX is, of course, a wholly different matter from what a sophisticated business entity with a close working relationship with FTX—like Defendants—can be expected to know and verify.

[15] In light of this context, this case is unlike *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1029 (11th Cir. 2003), where statements about "strong performance" were qualified by less optimistic statements and targeted financially sophisticated investors.

[16] Defendant's reliance on *Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302 (S.D. Fla. 2023), *appeal dismissed*, 2023 WL 5939033 (11th Cir. July 19, 2023), is misplaced because safety is objective, unlike the aesthetic sensibilities surrounding luxury goods.

14

*Cap. Mgmt. Corp.*, 861 P.2d 1071, 1079 (Wash. Ct. App. 1993) (representation that storage facility was "safe" and "secure" was deceptive).[17]

### B.   Plaintiffs Sufficiently Allege Unfair Acts.

Defendants also independently violated the consumer protection acts by engaging in "unfair" practices, which are those that "'offend[] established public policy' or [are] 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1326 (S.D. Fla. 2017) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)); *accord* Okla. Stat. tit. 15, § 752 (defining "unfair trade practice" essentially identically). Similarly, under the UCL, a defendant's behavior violates the "unfair prong" if any of the following four tests is met:

(1) "Balancing": "[T]he gravity of the harm to the alleged victim" "[out]weigh[s] the utility of the defendant's conduct."

(2) "Immoral": The conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."

(3) "Tethering:" The conduct "offends an established public policy," which can be "tethered to [a] violation of any underlying constitutional, statutory or regulatory provision, …threaten[ing] an incipient violation of an antitrust law, or violat[ing] the policy or spirit of an antitrust law."

(4) 1980 FTC test: "1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."

---

[17] *See also Thompson*, 2018 WL 5113052, at *2–3 (statements that detergent is "trusted" and "mild" are not puffery); *Demetriades v. Yelp, Inc.*, 175 Cal. Rptr. 3d 131, 143–44 (Ct. App. 2014) (statement about providing the "most trustworthy" reviews not puffery when "intended to induce consumer reliance"); *Huynh v. Quora, Inc.*, 2020 WL 7408230, at *10–11 (N.D. Cal. June 1, 2020) (statement that company "has implemented safeguards to protect the information we collect" not puffery); *Houchins v. Case*, 189 So. 402, 403–04 (Fla. 1939) (finding representations that stock was a "first class and safe investment" to be actionable for common-law fraud); *cf. Marshall v. Red Lobster Mgmt. LLC*, 2023 WL 9111611, at *9 (C.D. Cal. Dec. 18, 2023) ("[A]lthough sustainability [of lobster and shrimp fishing] can be measured in different ways, this alleged representation is fact-based").

15

*See, e.g.*, *Epperson v. Gen. Motors, LLC*, 2023 WL 8628327, at \*6 (S.D. Cal. Dec. 13, 2023) (emphasis added) (cleaned up) (noting that the 1980 FTC test is less commonly accepted, and holding that "an 'unfair' business practice prong may be proven by *either* the Tethering, Immoral, *or* Balancing Tests"); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989–90 (N.D. Cal. 2016) (blending tests (1) and (2) and stating traditional rule has been that claims survive if they meet either tests (1)/(2) or (3)).[18]

"[A] practice may be deemed unfair even if not specifically proscribed by some other law," and there is a "relatively low threshold for unfairness at the pleading stage." *Blain v. Liberty Mut. Fire Ins. Co.*, 2023 WL 2436003, at \*10, \*12 (S.D. Cal. Mar. 9, 2023) (finding that "allegations of an unjust financial windfall in the context of a global pandemic are sufficient to establish a claim for UCL unfairness against an insurer because of the relation between the conduct and California's public policy that 'the cost of insurance be fair, transparent and affordable'").[19] Courts have found that distributing a significantly risky product to unsuspecting consumers may qualify as an unfair practice. *See Ajose v. Interline Brands, Inc.*, 187 F. Supp. 3d 899, 904, 910–11 (M.D. Tenn. 2016) (selling plumbing equipment with a "significant risk" of causing water damage unfair under FDUTPA); *Epperson*, 2023 WL 8628327, at \*1, \*7 (defective battery that "may ignite" in vehicles). A practice may also be unfair even if it lacks capacity to deceive. *See Patterson v. Beall*,

---

[18] While courts have differed on the relationship between these tests, *see Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 462 P.3d 461, 472 & n.10 (Cal. 2020), in accordance with the "intentionally…broad, sweeping language" of the UCL, designed to give courts "maximum discretion to prohibit new schemes to defraud," *Smith v. State Farm Mut. Auto. Ins. Co.*, 113 Cal. Rptr. 2d 399, 415–16 & nn. 22–23 (Ct. App. 2001), *as modified* (Nov. 20, 2001), the Court should allow Plaintiffs' UCL claims to proceed if any of the tests are met.

[19] *See also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 990 (cutting costs on data security violated policy of protecting customer data); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 930 (N.D. Cal. 2015) (harm from trans fats violated public policy against adulterated foods).

19 P.3d 839, 847 & n.12 (Okla. 2000) (charges could be unfair practice even though plaintiff knew they were unjustified).

Here, Defendants engaged in unfair practices that were immoral, unethical, oppressive, unscrupulous" and violated the established policies behind the false advertising and security registration laws when, among other acts, they:

- Knowingly or negligently promoted inherently and substantially risky and or/illegal products, the FTX platform, YBAs, and FTTs, to unsuspecting consumers. ¶¶ 3, 16, 35, 38, 44, 79, 149, 162, 170–83, 186–214, 239–48; 261–64, 277, 284–92, 296–300, 309–15, 319–23.
- Specifically targeted young, inexperienced, and otherwise financially vulnerable investors, who were least likely to see through their and FTX's deceptions, most likely to be significantly harmed by these deceptions, and not eligible to purchase unregistered securities. Compl. ¶¶ 73, 185, 293, 317.

These unfair practices were also undoubtedly "substantially injurious to consumers," helping cause over $11 billion in losses. Compl. ¶ 9. There is no utility to balance this harm because Defendants' efforts to enrich themselves by tricking consumers into investing in a Ponzi scheme has no public utility. *See Ogdon v. Grand Canyon Univ. Inc.*, 2023 WL 5054644, at *7 (D. Ariz. Aug. 8, 2023) (deceiving students into worthless degree programs lacks utility), *on reconsideration on other grounds* 2024 WL 1344455 (D. Ariz. Mar. 29, 2024). Consumers could not have reasonably avoided their substantial harm because they lacked access to the knowledge and substantial resources that Defendants had. Thus, under any test, Plaintiffs have pled an unfair practice.[20]

---

[20] In addition, "[b]y defining 'unfair competition' to include any unlawful act or practice, the UCL permits violations of other laws to be treated as independently actionable as unfair competition." *Lueras*, 163 Cal. Rptr. 3d at 831 (citing *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999)). Defendants' unregistered securities violations, *see supra* Part I, are thus violations of the UCL under the "unlawful" prong.

### C.    Plaintiffs Adequately Alleged Causation and Damages.

Plaintiffs have adequately alleged causation. "[F]ederal courts and Florida courts alike have stated that 'FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.' . . . . [but] 'simply prove that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1233–34 (S.D. Fla. Mar. 30, 2021) (citations omitted). Defendants' claim that Plaintiffs must allege they viewed Defendants' marketing campaigns, Mot. 17–18, 21–22, 25, "simply seek[s] a reliance inquiry by another name." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Deceptive advertising can cause damages even to plaintiffs who do not see it, because that advertising allows the seller to "systematically" set a higher price than would be possible if the truth were known. *See id.* at 986–88; *Lewis*, 530 F. Supp. 3d at 1234.[21]

Plaintiffs' allegations show that a reasonable consumer would have been likely to be confused and deceived by those promotions. Compl. ¶¶ 34, 117–18, 121–25, 133. FTX's products were not scantly advertised car features, clothing, or home appliance insurance.[22] *See, e.g.*, Compl.

---

[21] There is nothing "consequential" or "remote" Mot. 19 n.12, about these damages. Defendants worked to sell Plaintiffs' FTX products by painting them as "safe," and from the beginning those products were worth less than they were sold for, both because FTX was always a Ponzi scheme and because cryptocurrency is inherently risky. Compl. ¶¶ 11, 131–83, 270. The Eleventh Circuit has held that a hidden risk is enough to impact the appropriate value at the time of purchase, thereby creating actual damages. *See Carriuolo*, 823 F.3d at 986–87. Defendants' reliance on the summary judgment opinion in *Lombardo v. Johnson & Johnson Consumer Cos.*, 124 F. Supp. 3d 1283, 1289–90 (S.D. Fla. 2015)—which assessed whether "evidence" was "establish[ed]"—is likewise misplaced.

[22] Defendants wrongly rely on a series of class certification cases, Mot. 22, which are not pertinent because discovery has not yet occurred. Moreover, these cases involved misrepresentations that were far less pervasive than those at issue here, and one was at least partially overruled on this point. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), *overruled by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *Sevidal v. Target Corp.*, 117 Cal. Rptr. 3d 66, 84 (Ct. App. 2010) ("most class members" never clicked on

¶ 344 (Superbowl commercial). One does not rack up over $11 billion in sales of cryptocurrency products from millions of ordinary people, Compl. ¶¶ 9, 353, without a pervasive, sustained safety-focused advertising campaign like what Defendants executed with FTX. Defendants' promotions thereby (i) enabled FTX to successfully solicit customers, who would not have invested their money in the essentially worthless FTX platform and products if they had known they were investing in high-risk securities, as opposed to "safe" investments; and (ii) injured Plaintiffs as a result. *See* Compl. ¶¶ 9, 16, 45–59, 152. Nothing more is needed to plead causation or damages under FDUTPA or the OCPA.[23] And damages are not even necessary for injunctive and declaratory relief under FDUTPA. *See* Compl. ¶ 384; *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 172 (Fla. 1st DCA 2015) (quoting Fla. Stat. § 501.211(1)).

        The standards under the UCL are substantially similar to those for damages under FDUTPA. When a defendant has engaged in a pervasive advertising campaign, as here, reliance is "presum[ed]" when the misrepresentation is material. *In re Tobacco II Cases*, 207 P.3d 20, 39–40 (Cal. 2009).[24] Therefore, Plaintiffs' UCL claims are sufficient with respect to causation for the same reasons Plaintiffs' FDUTPA and OCPA claims suffice.

---

website button necessary to view misrepresentation); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517 (S.D. Cal. 2011) (representation was not "a uniform" misrepresentation)

[23] While the Oklahoma Supreme court has inferred a causation requirement from the private right of action in Okla. Stat. tit. 15, § 761.1, *Patterson*, 19 P.3d at 846, neither it nor the statutory language restrict what may constitute causation. *Terry v. Nuvell Credit Corp.*, 2007 WL 2746919 (W.D. Okla. Sept. 20, 2007) is inapposite. *Terry* merely held that repossession agents could not be held at fault for plaintiff's prosecution for pulling a gun on the repossession agents. *Id.* at 5.

[24] Moreover, third-party reliance suffices, and causation for the unfair and unlawful prongs may be shown by other means entirely. *See Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 11593043, at *6 (N.D. Cal. Aug. 16, 2021). Misrepresentations need not be "the sole or even the decisive cause of the injury-producing conduct," *In re Tobacco*, 207 P.3d at 40, and the California Supreme Court has even cast doubt on whether causation must be proximate, *California Med. Ass'n v. Aetna Health of California Inc.*, 532 P.3d 250, 265 (Cal. 2023).

### D.   Each of Defendants' Arguments to the Contrary Fail.

#### 1.   The Consumer Protection Laws Apply.

Defendants incorrectly argue that its FDUTPA and UCL claims should be dismissed based on a theory that these consumer protection statutes have an implied exception for cases involving securities. Mot. 14–15, 23.[25] The Court should reject that (incorrect) theory, but it need not address that question *now* when the Court has not yet determined whether "securities" are at issue here. As set out below, the Court can ultimately allow the consumer protection claims in any of three independent ways: by determining (a) that the alleged securities are not securities, (b) that they are securities, but that these state statutes do not bar claims involving securities, or (c) that regardless, Plaintiffs complain of conduct that is unlawful without regard to the securities claims.

First, Defendants' argument is premature. Defendants admit they will dispute that FTX's products are securities. *See* Mot. 8 n.1, 12–13. That issue must first be decided based on a factual record, and if they are found to not be securities, Defendants' argument on this point would evaporate. *See, e.g., In re Ethereummax Inv.*, 2023 WL 6787827, at *16–17 (C.D. Cal. June 6, 2023) ("[T]he Court cannot conclude at this stage that the State Consumer Law claims are barred by the securities law claims because whether the cryptocurrency at issue here is a "security" is a hotly contested topic . . . ."); *cf. Contant v. Bank of Am. Corp.*, 2018 WL 5292126, at *9 (S.D.N.Y. Oct. 25, 2018) (concluding that, because "Plaintiffs do not have recourse under federal securities or antitrust laws," the "conduct in question" was not exempted from FDUTPA).

Second, recent opinions from Florida courts (which Defendants ignore) have concluded FDUTPA does *not* exclude claims relating to securities, consistent with the statute's plain language. *See Stone Inv. Dakota LLC v. De Bastos*, 2015 WL 6997979, at *4 (S.D. Fla. Nov. 12,

---

[25] Defendants does not make, and have thus waived, this argument for the OCPA.

2015) (denying motion to dismiss); *Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at \*7–8 (S.D. Fla. Aug. 14, 2018). "A violation of the securities laws is a per se violation of FDUTPA" because "the securities laws are designed for consumer protection and proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." *Hodges*, 2018 WL 9686569, at \*7; *see also Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2021 WL 6118098, at \*7 (M.D. Fla. Dec. 27, 2021) (denying summary judgment on claims of securities fraud and FDUTPA, quoting *Hodges*).[26] With respect to California law, "[t]he UCL contains no language supporting an exclusion for securities, and under the plain language of the UCL, we cannot create such an exclusion." *Roskind v. Morgan Stanley Dean Witter & Co.*, 95 Cal. Rptr. 2d 257, 265 n.8 (Ct. App. 2000), *as modified on denial of reh'g* (May 26, 2000).[27]

Third, here, Plaintiffs' claims under FDUPTA, the UCL, and the OCPA target unfair and deceptive conduct that is *not* identical to the conduct underpinning the securities claims. For example, Plaintiffs' consumer protection claims allege that Defendants designed commercials and ad campaigns to deceptively promote FTX as safe, reliable, and superior to other investment options, *e.g.*, Compl. ¶¶ 3, 16, 284–87, 309–15, 320. These kinds of deceptive acts fall squarely within the consumer protection statutes. For this additional reason, the Court need not decide now

---

[26] Defendants' Florida cases relied on *Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1315 (N.D. Fla. 2003), which is older and acknowledged the absence of binding authority.

[27] Defendants address the UCL by citing a single case from California, *Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011), which relied on comments from *Bowen v. Ziasun Techs., Inc.*, Cal. Rptr. 3d 522 (Ct. App. 2004). But contra *Bowen*, *Roskind's* holding that the UCL encompasses securities was not "dicta," but "integral" to its ultimate ruling. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 51 (Ct. App. 2007). Moreover, inasmuch as *Bowen* has any continuing force, it has been repeatedly cabined to its (dissimilar) facts, as *Betz* itself acknowledged. *Betz*, 829 F. Supp. 2d at 866; *see also, e.g.*, *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394, at \*6–9 (N.D. Cal. Apr. 15, 2010); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. at 553.

whether the consumer protection act claims are available activity pertaining to the sale or promotion of securities. The Court should decline to dismiss the consumer protection claims on this basis.

### 2.     Plaintiffs Sufficiently Alleged Defendants' Participation in Unfair, Deceptive, and/or Unlawful Practices.

Defendants contend they are not liable because they did not know about or participate in FTX's financial fraud. Mot. 16, 18–21, 25. This is wrong for three reasons. ***First***, Defendants' assertion that they could not possibly have known about FTX's improper conduct is contradicted by the factual allegations in the Complaint, which show that Defendants were exposed to red flags of fraud that were significant enough to deter other promoters from working with FTX. *See* Compl. ¶¶ 44, 162, 261.

***Second***, it is immaterial whether Defendants knew about FTX's financial fraud. Numerous cases confirm that Plaintiffs need not prove a "knowledge" element under their consumer protection acts—but instead, only that Defendants participated in unfair or deceptive conduct. *See Lewis*, 530 F. Supp. 3d at 1232–33 (collecting cases and analyzing statutory text); *accord In re Tobacco II Cases*, 207 P.3d at 29–30 (noting that knowledge of falsity is not an element of UCL claims); *Patterson*, 19 P.3d at 847 n.12 (emphasis added) (noting that Okla. Stat. titl. 15, § 752(13) does "not speak to the necessity of an intent to deceive, but . . . that the alleged deceptive actions have the *capacity* to deceive the consumer").[28]

---

[28] While Defendants point to exemptions in FDUTPA and the OCPA for unknowing "publisher[s], broadcaster[s], printer[s], or other[s] engaged in the dissemination of information or the reproduction of printed or pictorial matter," Mot. 25 (citing Fla. Stat. § 501.212(2); Okla. Stat. tit. 15, § 754(1)), Defendants plainly do not qualify as any of these. The plain meaning of someone "engaged in the dissemination of information" does not encompass advertisers. Moreover, the specific entities in the list simply lease space for *others* to fill. Under the cannon of ejusdem generis, the general catch-all term "others" should be interpreted to follow this pattern. *See, e.g.,*

22

**Third**, the only "participation" required is being "a direct participant in the actions that constituted a violation of the [consumer protection acts]," *i.e.*, the promotional practices that were unfair and deceptive. *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008); *accord Dorfman v. Nutramax Lab'ys, Inc.*, 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013) (finding retailer "participated" when it "entered into marketing and sales agreements . . . to further promote and repeat the false and deceptive statements at issue"). "One need not show the defendant was the principal actor involved in the violative acts, or that the defendant initiated those acts." *Galstaldi v. Sunvest Comtys.Communities USA, LLC*, 637 F. Supp. 2d 1045, 1056–57 (S.D. Fla. 2009); *see also Coffey v. WCW & Air, Inc.*, 2018 WL 4154256, at *1, *3–4 (N.D. Fla. Aug. 30, 2018) (finding retailer liable for deceptive marketing that it facilitated).

Defendants are not uninvolved bystanders;[29] they designed many of the deceptive statements and disseminated others. And inasmuch as participation beyond aiding the creation of deceptive statements is necessary, Plaintiffs have also alleged Defendants furthered the scheme of FTX Insiders by:

- Auditing FTX promoters' compliance with their promotion contracts. Compl. ¶ 284.

---

*Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–115 (2001). Unlike the listed items, Defendants had active roles in designing the offending content.

[29] At most, Defendants' cases stand for the unremarkable position that an individual is not vicariously liable for statements by corporate employers or others they had no control over. *See Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *3 (E.D. Cal. Oct. 8, 2020); *Josefsberg v. Uber Techs., Inc.*, 2023 WL 5670301, at *3, *4 (S.D. Fla. Aug. 31, 2023). It is unnecessary to analyze vicarious liability when "the individual defendant was a direct participant in the [predicate act]." *KC Leisure, Inc.*, 972 So. 2d at 1074. Defendant's citations to *Virgilio* and *Behrman* are even less relevant, as the claims in those cases involved failures to disclose without accompanying misstatements or half-truths. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012); *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346 (S.D. Fla. 2005), *aff'd*, 178 F. App'x 862 (11th Cir. 2006).

- Leading FTX marketing campaigns, hiring others to promote FTX, and otherwise planning and organizing dissemination of misleading FTX advertisements by others. Compl. ¶¶ 3, 284–85, 288–292, 301–02.

In view of the foregoing, Plaintiffs have plausibly alleged that Defendants personally participated in the conduct giving rise to the consumer protection violations.

### 3.     The Pleading Standard Under Rule 8 Applies.

As many courts in this circuit[30] have expressly recognized, Rule 8—not Rule 9(b)— categorically applies to all consumer protection claims. *Lewis*, 530 F. Supp. 3d at 1231–34 (collecting cases and analyzing the correct standard); *Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, 2021 WL 3552175, at *9 (S.D. Fla. Aug. 11, 2021) (same).[31] "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud," and a FDUTPA plaintiff need not prove core elements of fraud, including actual reliance, a defendant's knowledge that their conduct is deceptive, or even a deceptive act at all, as it also encompasses any "unfair" act. *Lewis*, 530 F. Supp. 3d at 1231–33 (quoting *Harris v.*

---

[30] As this is a procedural issue, Eleventh Circuit law controls here over that of sister circuits or states for consumer protection claims under California, Oklahoma, and Florida law. *See, e.g., Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) ("[U]nder *Hanna* a federal court need not adhere to a state's strict pleading requirements but should instead follow Fed. R. Civ. P. 8(a)."); Restatement (First) of Conflict of Laws § 585 ("All matters of procedure are governed by the law of the forum."). As detailed in the above sections, the substantive aspects of each consumer protection law that would bear on the choice between Rule 8(a) and Rule 9(b) are essentially the same, such as lack of a substantive reliance or knowledge requirement. *See* Fla. Stat. § 501.204; Cal. Bus. & Prof. Code § 17200; Okla. Stat. tit. 15, § 753(21); Okla. Stat. tit. 15, § 752(13–14). Even causation and damages are not substantive elements of a violation, but procedural requirements for a private plaintiff to have statutory standing that "le[ave] entirely unchanged the substantive rules" (and thus should not be considered for 9(b) purposes). *See In re Tobacco II Cases*, 207 P.3d at 30; *accord Patterson*, 19 P.3d at 846; Fla. Stat. § 501.211(2). As such, the Court should follow in-Circuit precedent regarding FDUTPA and apply Fed. R. Civ. P. 8(a) to all consumer protection act claims.

[31] Even Defendant acknowledges 8(a) is the appropriate standard for non-fraud-based FDUTPA claims. *See* Mot. 16 (citing *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1327 (S.D. Fla. 2017)).

*Nordyne, LLC*, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 13, 2014)). Under these circumstances, an alleged FDUTPA violation does not entail the same special risk of reputational harm that an allegation of fraud does, obviating the need for a 9(b) standard. *E.g.*, *Harris*, 2014 WL 12516076, at *4. And because "FDUTPA's elements are more particularized than those of common law fraud[, a] complaint which states plausible [FDUTPA] allegations….will generally put a FDUTPA defendant on fair notice of the nature of plaintiff's claim[,]" one of the most significant concerns behind Rule 9(b). *Harris*, 2014 WL 12516076, at *3–5; *Bluegreen*, 2021 WL 3552175, at *7. Regardless, as shown above, the Plaintiffs have alleged facts sufficient to state a claim under the consumer protection laws under either pleading standard.

### 4.    Plaintiffs Allege a Proper Basis for Restitution under the UCL.

Under California law, Plaintiffs may seek restitution through their UCL claim. "A plaintiff who paid a third-party money (i.e., money in which the plaintiff had a vested interest)" may seek "UCL restitution from a defendant whose unlawful[, unfair, or deceptive] business practice caused the plaintiff to pay that money." *Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 616 (Ct. App. 2009); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *2–3, *8, *30–32 (N.D. Cal. May 27, 2016) (allowing UCL restitution claim against defendant where plaintiff's insurer indirectly used plaintiff's insurance premiums to pay defendant); *Thieme v. Cobb*, 2016 WL 3648531, at *2, *7 (N.D. Cal. July 8, 2016). "A person is enriched if he receives a benefit at another's expense. . . . For a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution." *Troyk*, 90 Cal. Rptr. 3d at 617  (quoting *County of Salano v. Callejo Redevelopment Agency*, 90 Cal. Rptr. 2d 41, 52 (Ct. App. 2009).[32] Parties are

---

[32] Defendants' cases are inapposite. *Troyk* explains that reliance on the seemingly restrictive "language [in *Korea Supply Co. v. Lockheed Martin Corp.*, 131 Cal. Rptr. 2d 29, 41–42 (Ct. App. 2003) is misplaced because it] was parsed from the facts and analysis in that case, which involved money in which the plaintiff never had a vested interest[,]" a lost opportunity rather than money

entitled to seek equitable remedies in the alternative to money damages, as Plaintiffs have done here, and a court should not dismiss claims for such alternative relief at the motion to dismiss stage. *See* Fed. R. Civ. P. 8(a)(3); *Burstein v. First Penn-Pac. Life Ins. Co.*, 2002 WL 34186960, at *8 (S.D. Fla. Feb. 12, 2002) (denying motion to dismiss because case was "in its early stages" and plaintiff was entitled to pursue "alternate claim[] for relief").

Plaintiffs here allege a proper basis for restitution as an alternative remedy: Defendants undertook unfair and deceptive acts in partnership with FTX, Plaintiffs were harmed by those acts because they invested their money in FTX and its products, and Defendants richly profited from this arrangement because of the money they received from FTX. *See* Compl. ¶¶ 3, 9, 16, 45–60, 294–95, 316–18. Plaintiffs thus properly seek restitution as an alternative remedy, and the Court should not dismiss such claims at this stage. *See In re Ethereummax Inv.*, 2023 WL 6787827, at *4, *6, *24–25 (allowing UCL restitution claim to proceed against celebrity promoters of cryptocurrency).

### 5. The OCPA Does Not Require Privity.

The OCPA does not require privity, and it covers promotional activity like the activity engaged in by Defendants. Okla. Stat. tit. 15, § 752(2) ("'Consumer transaction' means the advertising . . . of any services or any property, tangible or intangible . . . .").

Defendants' claim that the OCPA only applies when a plaintiff directly buys something from the defendant relies on a mischaracterization of the precedent. The line of cases on which the Defendants primarily rely narrowly holds "that the OCPA generally does not apply to *debt collection activities* performed by persons or entities *uninvolved in the underlying consumer*

---

spent. *Troyk*, 90 Cal. Rptr. 3d at 616. The UCL claims in *Sugarman v. Brown*, 288 Cal. Rptr. 3d 165, 174 (Ct. App. 2021), which are discussed in an unpublished portion of the opinion, similarly involved no money paid by plaintiff to anyone, only reputational harm.

*transaction.*"[33] *Denton v. Seterus, Inc.*, 2019 WL 6721643, *8 (N.D. Okla. Mar. 14, 2019) (collecting cases) (emphasis added). But Defendants are not debt collectors, and they were not "uninvolved in the underlying consumer transaction." They are far more involved than a mere publisher or broadcaster, *see supra* note 28, which the OCPA indicates may still be liable under some circumstances. *See* Okla. Stat. tit. 15, § 754(1).

## III.   PLAINTIFFS PROPERLY PLED CIVIL CONSPIRACY AND AIDING AND ABETTING.

### A.   Plaintiffs Allege a Civil Conspiracy.

Civil conspiracy requires (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Grayson v. No Labels, Inc.*, 2021 WL 2869870, at *7 (M.D. Fla. Jan. 26, 2021). "Each coconspirator need not act to further a conspiracy; each need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (simplified). "The existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987).

Plaintiffs allege an unlawful act or agreement between Defendants and the FTX Entities in furtherance of those acts. Specially, Plaintiffs allege Defendants actively participated in the scheme where (i) each promotion and advertisement **assisted and furthered** the conspiracy;

---

[33] Defendants' other cases are even less relevant. In two of them, the plaintiff was not a consumer. *CTI Servs. LLC v. Haremza*, 797 F. Supp. 2d 1257, 1263 (N.D. Okla. 2011); *James v. Tyson Foods, Inc.*, 292 P.3d 10, 18 (Okla. 2012). In a final case, *White v. CitiMortgage*, the court deemed the motion to dismiss the OCPA claim "confessed" because Plaintiffs had failed to adequately respond. *White v. CitiMortgage*, 2012 WL 13024694, at *2 (W.D. Okla. June 15, 2012).

(ii) Defendants acted as a coconspirator by assisting in the promotion of the FTX and its products;

(iii) Defendants had partnership deals with FTX and were paid in cash, cryptocurrency, and FTX equity, which gave them financial incentives to induce as many customers as possible to invest in FTX and grow the crypto market; (iv) Defendants were exposed to red flags of fraud that did or should have put them on notice that consumers investing in FTX would be exposed to serious, undisclosed risks; and (v) Defendants promoted unregistered securities through mass communications over social media and television, when motivated at least in part by their own financial interests or those of the securities' owner, which was held to be actionable in both *Wildes* and *Pino*. *See supra* Part I.A. Plaintiffs' allegations are not limited to an agreement to create advertisements; they allege that Defendants coordinated with the FTX Entities to perpetrate the mass sale of unregistered securities amidst serious, undisclosed financial motivations notwithstanding undisclosed red flags concerning the risk of investing in those securities.

In addition, Plaintiffs need not plead with specificity how each coconspirator furthered each part of the large FTX conspiracy, as Defendants claim. Rather, each individual's participation may be inferred from circumstantial evidence. *Donofrio*, 503 So. 2d at 1281. That Defendants' numerous misrepresentations and omissions about the FTX Platform promoted false confidence and drove consumers to invest in FTX products despite enormous undisclosed risks is more than enough to support a claim of civil conspiracy. *See e.g.*, *Ben-Yishay v. Mastercraft Dev., LLC*, 2009 WL 6387928, at *3 (S.D. Fla. Dec. 14, 2009); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1358 (S.D. Fla. 2009).

Moreover, the Ad Agency Defendants deliberately engaged in activities to support FTX's operations, whether they understood they were interfacing with securities. They are responsible because their intended actions led to the perpetration of an unlawful act. Furthermore, to the extent

that a conspiracy claim requires intent for an illegal goal, Defendants, pursuant their respective agreements with the FTX Entities, intended to willingly and actively participate in FTX's sale of various products, which are unregistered securities. Through their actions, they have satisfied the criteria for conspiracy under Florida law.

Defendants also argue that the Plaintiffs' claim for civil conspiracy under California law fails because Plaintiffs' predicate claims are insufficient. Defendants' reliance on *Liberty City Movie, LLC v. U.S. Bank, N.A.*, 824 F. App'x 505, 508 (9th Cir. 2020)—where the civil conspiracy claim failed because the two predicate claims were time-barred—is misplaced. The predicate claims are not time barred—and Plaintiffs have shown above why each underlying claim satisfies the applicable pleading standard. Defendants also recycle the same argument as under Florida law that Plaintiffs fail to plausibly allege FTX entered into an unlawful agreement with Defendants. They argue that compensation for marketing services cannot constitute an agreement to commit an unlawful act. But in California, intent and knowledge necessary for conspiracy can be deduced from the actions undertaken, the relationship between the parties, and other circumstantial evidence. *See Favila v. Katten Muchin Rosenman, LLP*, 115 Cal. Rptr. 3d 274, 287 (Ct.  App. 2010). The Plaintiffs' allegations detail how the Defendants worked alongside FTX to facilitate the widespread sale of unregistered securities, driven by significant, yet concealed, financial interests and ignored red flags—actions that are actionable under both *Wildes* and *Pino*.

**B.    Plaintiffs Allege Aiding and Abetting.**

Plaintiffs have stated claims for aiding and abetting conversion and aiding and abetting fraud. Tort claims predicated on a theory of aiding and abetting have three elements: (1) the existence of an underlying violation; (2) knowledge of the violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the violation by the alleged aider and abettor. *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003–04 (Fla. 4th DCA 2020) (finding

29

plaintiff sufficiently alleged aiding and abetting fraud claim where complaint pleaded that bank defendant assisted principal car dealership in leading investors to believe their loans were properly documented on dealership's books and records); *Stueve Bros. Farms, LLC v. Berger Kahn*, 166 Cal. Rptr. 3d 116, 121–22, 132–34 (Ct. App. 2013) (reversing dismissal of aiding and abetting fraud claims against defendant law firm whose attorneys allegedly enriched themselves using client's trust funds, reasoning that dismissal was premature since plaintiffs were "limited in their ability" to state their claims at the pre-discovery stage); *Energy Fluids, Inc. v. Cimarex Energy Co.*, 2008 WL 2404226, at *3 (W.D. Okla. June 10, 2008) (declining to dismiss aiding and abetting fraud claim against a defendant who had made no misrepresentation himself because he allegedly trained others on how to execute the fraud).

Defendants do not contest that FTX committed fraud or conversion, instead arguing that Plaintiffs have not adequately pled the second and third elements of aider and abettor liability.[34] Thus, Plaintiffs discuss only the sufficiency of the allegations as to the Defendants' knowledge and substantial assistance under Florida, California, and Oklahoma law.[35] Mot. 30–38.

---

[34] With respect to Oklahoma law, Defendants also argue that there is no aiding and abetting fraud claim under Oklahoma law. Mot. 36. First, Defendants fail to acknowledge that federal district in Oklahoma are split on whether an aiding and abetting fraud claim exists under Oklahoma law. *See Energy Fluids, Inc.*, 2008 WL 2404226, at *3 (declining to dismiss aiding and abetting fraud claim based on Oklahoma prior caselaw). Indeed, *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181 (N.D. Okla. 2020), on which Defendants rely, not only acknowledges this split of authority, but also notes that "Oklahoma Supreme Court has neither recognized nor declined to recognize a cause of action for aiding and abetting fraud." *Almeida*, 471 F. Supp. 3d at 1196. Even if the Oklahoma law is unsettled regarding the availability of this aiding and abetting claim, the Court should not decline to dismiss it on this basis—as in *Energy Fluids*—and should assess whether Plaintiffs have stated such a claim here.

[35] Plaintiffs do not bring an aiding and abetting conversion claim under Oklahoma law.

### 1. Knowledge

Plaintiffs have adequately pled Defendants' knowledge of the underlying fraud and conversion. Allegations of knowledge and intent are not subject a heightened pleading standard. Fed. R. Civ. P. 9(b); *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014).[36] The knowledge element may be satisfied through inference or "by circumstantial evidence." *See Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009–10 (11th Cir. 1985); *Scarff v. Wells Fargo Bank, N.A.*, 2005 WL 3454136, at *4–7 (N.D. Cal. Dec. 16, 2005). Courts have found pleadings sufficient if they allege generally that defendants had knowledge of a specific primary violation. *See, e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d. 1101, 1120 (C.D. Cal. Oct. 20, 2003). "A defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity." *Gilison*, 303 So. 3d at 1003 (citing *Woods*, 765 F.2d at 1009).[37]

Contrary to Defendants' contentions (Mot. 31–32, 34-35), Plaintiffs plead facts suggesting that Defendants knew about FTX's wrongdoing. Plaintiffs allege that (i) FTX's wrongdoing—including sale of unregistered securities and complete lack of internal controls, which contributed to its conversion of consumer funds—was plainly evident upon the slightest scrutiny of FTX's

---

[36] Defendants argue (Mot. 33, 37) that Plaintiffs' allegations do not satisfy Fed. R. Civ. P. 9(b). However, Fed. R. Civ. P. 9(b) does not apply to all elements of aiding and abetting a common law tort. *See Cordell Consultant, Inc. Money Purchase Plan and Trust*, 561 F. App'x at 884 ("[A]llegations of knowledge and intent are not subject to the particularity requirement."); *see also Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1296–97 (M.D. Fla. 2018) (denying motion to dismiss where elements two and three satisfied the pleading requirements of Fed. R. Civ. P. 8(a)(2)). Moreover, Plaintiffs' allegations are made with sufficient particularity to satisfy the heightened standard.

[37] The United States Supreme Court has recognized that courts often view substantial assistance and knowledge as working "in tandem" – "if the assistance were direct and extraordinary, then a court might more readily infer conscious participation in the underlying tort." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 491–92 (2023) (discussing *Woods*, 765 F.2d at 1010).

internal operations and documents; (ii) Defendants must have conducted due diligence in connection with their promotion of FTX and its products; and (iii) Defendants therefore knew of FTX's wrongdoing. Compl. ¶¶ 35, 149, 162, 170–177, 252–253, 261–264, 274–328. Defendants' knowledge is substantiated by the evidence that so many others—without the benefit of the ongoing collaboration—identified and acted upon these red flags. *See id.* ¶¶ 44, 162, 261. The Court can therefore reasonably infer that Defendants, in fact, knew of FTX's wrongdoing. *See Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 2023 WL 4457458, at \*16 (S.D. Fla. July 11, 2023) (finding that the facts demonstrate "a strong inference of actual knowledge"); *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1096–97 (11th Cir. 2017) (finding that the allegations support an inference that defendant knew that the primary wrongdoer was misappropriating money); *Chang v. Wells Fargo Bank, N.A.*, 2020 WL 1694360, at \*3-5 (N.D. Cal. Apr. 7, 2020) (finding plaintiffs' claim that Wells Fargo had actual knowledge of the fraud to be plausible); *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1099–1100 (N.D. Cal. 2013) (denying summary judgment where circumstantial evidence could support a reasonable jury finding of defendant's actual knowledge).

Defendants argue that California law creates a "higher bar to establish knowledge" for aiding and abetting claims. Mot. 34 (citing *Wright v. Schock*, 571 F. Supp. 642, 662–63 (N.D. Cal. 1983) and citing *Harmsen v. Smith*, 693 F.2d 932, 944 (9th Cir. 1982)). However, subsequent California courts recognized that under California law plaintiffs must simply allege that the defendants "[knew] the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *In re First All. Mortg. Co.*, 471 F.3d 977, 993

(9th Cir. 2006) (quoting *Casey v. U.S. Bank Nat. Assn.*, 26 Cal. Rptr. 3d 401, 405 (Ct. App. 2005)).[38]

Defendants point to unpublished cases dismissing aiding and abetting claims against banks for the proposition that an organization cannot aid and abet a primary tortfeasor "by simply doing business with the tortfeasor." *See* Mot. 31-32. But Plaintiffs do not allege that Defendant have "simply d[one] business" with FTX. Plaintiffs allege here that Defendants are responsible for their critical part in the FTX scheme, including by foisting it on the broader consuming public by leading marketing campaigns with respect to Major League Baseball and Formula 1 Racing and creating commercials with superstars like Tom Brady and Larry David. *See, e.g.*, Compl. ¶ 288, 308, 313. In the bank cases on which Defendants rely, defendants were accused of aiding and abetting the underlying tort through *inaction* while conducting their business routinely. *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) ("Bank of America, in providing only routine banking services, was not required to investigate Diamond's transactions."); *see also Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (relying on *Lawrence*, 455 F. App'x 904 to affirm a dismissal of claim with respect to "routine banking services"); *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244–45 (M.D. Fla. 2013) (same). Not so here. These advertising agencies were partners, advisors, and collaborators to FTX and the celebrity endorsers as they carried out the advertising campaigns crucial to the success of the scheme. *See* Compl. ¶¶ 274–328.

Defendants also argue that "a so-called failure to investigate 'red flags,' . . . [is] insufficient to state a claim for aiding and abetting fraud." Mot. 31, 32, 34. This is incorrect: a defendant's

---

[38] Regardless, Plaintiffs have alleged that Defendants were aware that their advertising work was a key cog in perpetuating the fraud and conversion underlying FTX and therefore the operative pleading satisfies even this additional hurdle.

"decision to ignore suspicious activity or red flags is sufficient to demonstrate actual knowledge." *In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020); *see also Bhatia v. Silvergate Bank*, 2024 WL 1199679, at *27 (S.D. Cal. Mar. 20, 2024) ("[A]s in Woodbridge, Plaintiffs allege that numerous red flags were visible to Defendants, which they ignored. . . . [T]his alone is sufficient to demonstrate actual knowledge."). Moreover, the cases on which Defendants rely are inapposite and do not actually support Defendants' argument for dismissal. In *Honig v. Kornfeld*, 339 F. Supp. 3d 1323 (S.D. Fla. 2018), the "red flags" were only known by a subset of the external sales agents and the plaintiffs made few, if any, allegations regarding knowledge against the other agents. *Honig*, 339 F. Supp. 3d at 1331, 1344. In *Perlman*, 559 F. App'x 988, the court found, in a proposed amended complaint, *sufficient* additional factual allegations that supported a plausible inference of actual knowledge. *Perlman*, 559 F. App'x at 995–96. Specifically, the plaintiff pointed to evidence that, despite its internal investigation, the defendant permitted the fraudulent accounts to remain open. *Id.* at 994–95 (finding such additional allegations sufficient to create a plausible inference that the bank had actual knowledge of the Ponzi scheme). The breadth of the allegations here, including the obvious red flags, allows the inference of actual knowledge as in *Perlman*.

In addition, Defendants wrongly cite *Pearson* as an example of a court dismissing an aiding and abetting claim. Mot. 32 (citing *Pearson v. Deutsche Bank AG*, 2022 WL 951316, at *8 (S.D. Fla. Mar. 30, 2022)). But the court in *Pearson* denied the motion to dismiss. 2022 WL 951316, at *8 ("Those allegations, among others, establish a fact pattern that, if proven, a reasonable fact finder could view as sufficient to go beyond red flags.") (internal quotation marks omitted). Lastly, *In re First All.*, 471 F.3d 977, 999 on which Defendants rely, actually shows that ignoring obvious red flags—as Defendants did here—can satisfy the knowledge requirement. 471 F.3d at 999 ("That

34

[the bank] came upon red flags which were seemingly ignored was enough to establish actual knowledge under the California aiding and abetting standard ....").[39] The allegations here support a reasonable inference that Defendants had knowledge of the underlying wrongful conduct committed by FTX.

## 2. Substantial Assistance

Defendants provided substantial assistance to FTX in carrying out the fraud and conversion. FTX could not have achieved its success without the extensive assistance of Defendants, vis-à-vis their pursuit of customers, efforts to legitimize FTX in the public eye, and provision of hands-on support, guidance, and publicity. *See* Compl. ¶¶ 274–328. Assistance is "substantial" when it "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the [underlying wrongful conduct] to occur." *Chang*, 845 F.3d at 1097. Ordinary business dealings "can satisfy the substantial assistance element of an aiding and abetting claim if the [defendant] actually knew those transactions were assisting the [principal] in committing a specific tort." *In re First All.*, 471 F.3d at 995; s*ee Chang*, 2020 WL 1694360, at *6.

Defendants partnered and collaborated with FTX to design commercials and ad campaigns to persuade consumers to invest in FTX and its products based on false claims that FTX purportedly was "safe" when, in fact, it was not. Compl. ¶¶ 3, 16, 284–87, 309–15, 320. Defendants are not passive bystanders; they organized, designed, and disseminated the deceptive statements at the heart of the FTX disaster. *Id.* ¶¶ 3, 284–85, 288–292, 301–02. Those activities qualify as substantial assistance. *See Neilson*, 290 F. Supp. 2d at 1108–10, 1129 (bank's participation was

---

[39] With respect to aiding and abetting fraud under California law, Defendants argue that "'red flags,' simply do not establish Ad Agency Defendants' knowledge of the alleged wrong as a matter of law." Mot. 35. But they only cite cases applying Florida law. *Id.* (citing *Perlman*, 559 F. App'x at 994, and *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014)).

substantial factor where bank-provided funds kept scheme afloat); *In re First All.*, 471 F.3d at 995 (jury permitted to find defendant provided substantial assistance where defendant satisfied the tortfeasor's financing needs).[40] As noted above, Defendants rely on cases where courts have dismissed claims based on allegations of passive inaction—but active participation is alleged here. *See, e.g., Chen v. PayPal, Inc.*, 275 Cal. Rptr. 3d 767, 786 (Ct. App. 2021) (dismissing claim where defendant merely failed to update policy that allowed fraud).

Defendants knowingly provided "significant assistance" to FTX's business as a crypto exchange and seller of securities as well as FTX's fraud. FTX's business is intertwined with its fraudulent enterprise. Defendants cannot separate the promotion and marketing of FTX, its exchange, and its crypto offerings from the fraud and conversion that this business was built upon and designed to support. *See In re First All.*, 471 F.3d at 995 (rejecting a distinction between assisting a tortfeasor's business and assisting its fraud "where a company's whole business is built like a house of cards on a fraudulent enterprise").

Plaintiffs have sufficiently alleged that Defendants aided and abetted FTX's underlying fraud and conversion because the allegations establish Defendants (1) had knowledge of the underlying wrongful conduct committed by FTX and (2) provided FTX with substantial assistance in furtherance thereof.

## IV.    PLAINTIFFS STATE A CLAIM FOR DECLARATORY RELIEF.

Pursuant to the Federal Declaratory Judgment Act, Plaintiffs ask this Court to declare that YBAs were unregistered securities, the FTX Platform did not work as represented, and Defendants were paid and had a financial interest in promoting FTX to the nation. Compl. ¶¶ 403–409.

---

[40] Even "advice or encouragement to act" can qualify as substantial assistance. *EcoHub, LLC v. Recology Inc.*, 2023 WL 6725632, at *10 (N.D. Cal. Oct. 11, 2023).

Plaintiffs' request satisfies the Declaratory Judgment Act's requirement. Defendants' arguments to the contrary fail as well.

*First*, Defendants argue the declaratory judgment claim fails because the underlying claims fail. However, as demonstrated above in Parts I–II, Plaintiffs sufficiently alleged claims under both the securities laws and consumer protection statutes of Florida, California, and Oklahoma. *See* Compl. ¶¶ 367–384. Plaintiffs specifically requested declaratory relief as a remedy for violations of the latter. *Id.* ¶ 384.

*Second*, Defendants argue (Mot. 38-39) that the Court should exercise its discretion to dismiss the "backward looking" declaratory judgment claim. However, Plaintiffs' claim is not such a "backward looking" claim: Plaintiffs allege "a real and immediate likelihood of future injury." *See Strickland v. Alexander*, 772 F.3d 876, 885 (11th Cir. 2014) (internal quotes omitted).[41] Plaintiffs allege that cryptocurrency is increasingly being used by organized crime syndicates and nation-states for illicit purposes. Compl. ¶ 179. The Cryptocurrency National Disaster continues to grow by the billions almost every day. *Id.* ¶ 36. This is the largest securities fraud in history, and unless a workable, coordinated, and organized structure is established now, the FTX victims will continue to suffer. *Id.* Plaintiffs' request for declaratory relief is not for the purpose of making

---

[41] Moreover, the cases on which Defendants rely for the proposition that the Court should exercise its discretion to dismiss the supposedly backward-looking declaratory judgment claim (Mot. 39) only pertain to duplication of a *breach of contract claim* and a declaratory judgment claim—a situation not presented here. *See Park Place Kendall Condo. Ass'n, Inc. v. Rockhill Ins.*, 2022 WL 18779644, at *2-3 (S.D. Fla. June 24, 2022) (dismissing declaratory judgment claim where "subsumed in the breach of contract claim"); *550 Seabreeze Dev. LLC v. Ill. Union Ins.*, 2020 WL 473610, at *2-3 (S.D. Fla. Jan. 29, 2020) (same); *Garcia v. Scottsdale Ins.*, 2018 WL 3432702, at *2-3 (S.D. Fla. July 16, 2018) (same); *Fernando Grinberg Tr. Success Int. Props., LLC v. Scottsdale Ins.*, 2010 WL 2510662, at *2–3 (S.D. Fla. June 21, 2010) (same); *Vior Funeral Homes, Inc. v. Hartford Fire Ins.*, 2017 WL 5953289, at *2 (S.D. Fla. June 20, 2017) (same).

factual determinations. There is a justiciable controversy over whether the YBAs were sold illegally and whether Defendants illegally solicited their purchases from Plaintiffs. *Id.* ¶ 408.[42]

*Finally*, Defendants also argue (Mot. 38)—without explanation—that the Court should dismiss this claim as it is not the proper vehicle to adjudicate Plaintiffs' allegations. But "parties routinely plead declaratory judgment claims in distinct counts." *Voo-Doo Daddy Productions., LLC v. Colorblind Media, LLC*, 2023 WL 1469408, at *2 (M.D. Fla. Feb. 2, 2023). Plaintiffs thus adequately plead a claim for declaratory relief.

## V.    LEAVE TO AMEND SHOULD BE GRANTED, IF NECESSARY.

If any claims are dismissed, the dismissal should be *without prejudice* and with leave for Plaintiffs to amend. Defendants' request for dismissal "with prejudice" is foreclosed by Rule 15(a)(2)'s instruction that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has directed that leave to amend should be denied only in cases marked by undue delay, bad faith, dilatory motive, futility of amendment, or undue prejudice to the opposing party." *Marino v. Broward Sheriff's Office*, 2021 WL 10384112, at *2 (S.D. Fla. Mar. 24, 2021). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Sheffler v. Americold Realty Tr.*, 2023 WL 3918491, at *2 (11th Cir. June 9, 2023).

None of the factors warranting dismissal *with prejudice* exist here. Amending the complaint would not prejudice Defendants, as this MDL is at its early stage and discovery has not yet started. *See Marino*, 2021 WL 10384112, at *3. Nor would amendment be futile. Even in the

---

[42] As a result, this case is unlike *Bluestar Expo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1356 (S.D. Fla. 2021), on which Defendants rely, where "factual determinations regarding events that have already transpired." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205 (11th Cir. 2019), is also inapposite. Unlike Plaintiffs' allegations here, the plaintiff in *A&M Gerber* was "careful to avoid alleging" a substantial likelihood of future injury. *Id.* at 1216.

past several months, new information has been revealed through obtained documents from several MDL Defendants in connection with pending settlements of the class claims against them. *See, e.g.*, ECF No. 494-1, at 4–6 (citing declaration of FTX co-founder Nishad Singh).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Ad Agency Defendants' Motion to Dismiss.

## REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request that the Court hear oral argument on this Motion, and respectfully submit that thirty minutes should be sufficient for all Parties.

Dated: April 15, 2024                          Respectfully submitted,

| Plaintiffs' Co-Lead Counsel | |
|---|---|
| By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com | By: */s/ David Boies*<br>David Boies<br>Alex Boies<br>Brooke Alexander<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>dboies@bsfllp.com<br>aboies@bsfllp.com<br>balexander@bsfllp.com |
| **FTX Promoter Committee Members** | |
| Barbara C. Lewis<br>Florida Bar No. 118114<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>service@moskowitz-law.com | |
| Marc Ayala<br>**BOIES SCHILLER FLEXNER LLP**<br>333 Main Street<br>Armonk, NY 10504<br>Office: (914) 749-8200<br>mayala@bsfllp.com | Tyler Ulrich<br>Florida Bar No. 94705<br>**BOIES SCHILLER FLEXNER LLP**<br>100 SE 2nd St., Suite 2800<br>Miami, FL 33131<br>Office: 305-539-8400<br>tulrich@bsfllp.com |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 15, 2024, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

/s/ *Adam M. Moskowitz*
Adam M. Moskowitz

41