**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

|  |  |
|---|---|
| **IN RE:** | No. 1:23-md-03076-KMM |
| **FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION** | MDL No. 3076 |
| This Document Relates To:<br><br>*Garrison v. Wasserman Media Group, LLC and Dentsu McGarry Bowen LLC,*<br><br>No. 23-cv-24478-KMM | |

**DEFENDANTS DENTSU MCGARRY BOWEN LLC'S AND WASSERMAN MEDIA
GROUP, LLC'S JOINT REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.    Plaintiffs' State Securities Claims Fail and the Court Should Dismiss Them (Count I, Count VIII, and Count XIII)................................................................ 1

    A.    Count I (Violation of Florida Securities Law) Fails. ................................. 1

    B.    Count VIII (Violation of California Securities Law) Fails. ...................... 3

    C.    Count XIII (Violation of Oklahoma Securities Law) Fails. ...................... 5

II.    Plaintiffs' Consumer-Protection Claims Fail and the Court Should Dismiss Them (Count II, Count VII, and Count XII)......................................................... 7

    A.    Count II (Florida Deceptive Trade Practices Act ("FDUTPA")) and Count XII (Oklahoma Consumer Protection Act ("OCPA")) are Barred Under "Information Disseminator" Exemptions. ....................................... 7

    B.    Count II (FDUTPA) and Count VII (California Unfair Competition Law ("UCL")) Fail Because Plaintiffs Cannot Establish Defendants Engaged in a Deceptive or Unfair Trade Practice. ..................................... 7

        1.    The Challenged Statements Were "Puffery." ................................. 8

        2.    Plaintiffs Fail to Plausibly Allege an Unfair Trade Practice........... 8

    C.    Plaintiffs Fail to Adequately Plead Knowledge. ....................................... 10

    D.    Plaintiffs Fail to Adequately Plead Causation or Damages. ..................... 12

III.    Plaintiffs' Conspiracy and Aiding-and-Abetting Claims Fail and the Court Should  Dismiss Them (Counts III, IV, IX, XI, and XIV). .................................. 14

    A.    Plaintiffs Fail to Plead Defendants Conspired With FTX to Commit Fraud or Acted Pursuant to an Unlawful Agreement................................ 14

    B.    Defendants Could Not Have Aided or Abetted FTX to Commit Fraud or Conversion of Which They Were Unaware. ......................................... 17

IV.    Plaintiffs' Declaratory-Judgment Claim Fails and the Court Should Dismiss It (Count VI)........................................................................................................... 18

V.    The Court Should Deny Plaintiffs' Request for Leave to Amend. ........................ 19

CONCLUSION.................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*,
   938 F.3d 1170 (11th Cir. 2019) .................................................................................13

*Angell v. Allergan Sales, LLC*,
   2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ........................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009)...........................................................................................5

*AXA Equitable Life Ins. v. Infinity Fin. Grp., LLC*,
   608 F. Supp. 2d 1349 (S.D. Fla. 2009) ..................................................................16

*Bell v. Sec'y of State for Georgia*,
   2024 WL 1299927 (11th Cir. 2024) .......................................................................19

*Ben-Yishay v. Mastercraft Dev., LLC*,
   2009 WL 6387928 (S.D. Fla. Dec. 14, 2009) ........................................................16

*Berkoff v. Masai USA Corp.*,
   2011 WL 13224836 (C.D. Cal. Mar. 3, 2011) .......................................................13

*Cardenas v. Toyota Motor Corp.*,
   2021 WL 6926418 (S.D. Fla. Aug. 12, 2021) ........................................................12

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) .................................................................................12

*Cedar Hills Props. Corp., v. E. Fed. Corp.*,
   575 So. 2d 673 (Fla. 1st DCA 1991) ......................................................................17

*Charles v. Fla. Foreclosure Placement Ctr., LLC*,
   988 So. 2d 1157 (Fla. 3d DCA 2008) ....................................................................14

*Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*,
   2018 WL 7287192 (S.D. Fla. Jan. 31, 2018) .........................................................13

*Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*,
   561 F. App'x 882 (11th Cir. 2014) .........................................................................18

*Datto v. Florida Int'l Univ. Bd. of Trustees*,
   2020 WL 3963713 (S.D. Fla. July 13, 2020)...........................................................2

*Dillon v. Axxsys Intern., Inc.,*
  385 F. Supp. 2d 1307 (M.D. Fla. 2005), aff'd, 185 F. App'x 823 (11th Cir. 2006) ................................................................................................................2

*Donofrio v. Matassini,*
  503 So. 2d 1278 (Fla. 2d DCA 1987) ...................................................................16

*Eifler v. Shurgard Cap. Mgmt. Corp.,*
  861 P.2d 1071 (Wash. Ct. App. 1993) ..................................................................9

*Favila v. Katten Muchin Rosenman LLP,*
  115 Cal. Rptr. 3d 274 (2010) ..............................................................................16

*Gilison v. Flagler Bank,*
  303 So. 3d 999 (Fla. 4th DCA 2020) ...................................................................18

*Ginsberg v. Lennar Florida Holdings, Inc.,*
  645 So. 2d 490 (Fla. 3d DCA 1994) ....................................................................14

*Grayson v. No Labels, Inc.,*
  2021 WL 2869870 (M.D. Fla. Jan. 26, 2021) ......................................................14

*Himes v. Brown & Co. Sec. Corp.,*
  518 So. 2d 937 (Fla. 3d DCA 1987) ....................................................................12

*Hollifield v. Resolute Cap. Partners Ltd., LLC,*
  2023 WL 4291524 (C.D. Cal. May 12, 2023) ........................................................4

*Honig v. Kornfeld,*
  339 F. Supp. 3d 1323 (S.D. Fla. 2018) ................................................................18

*In re First All. Mortg. Co.,*
  471 F.3d 977 (9th Cir. 2006) ...............................................................................17

*In re Horizon Organic Milk,*
  955 F. Supp. 2d 1311 (S.D. Fla. 2013) ................................................................13

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation,*
  758 F. Supp. 2d 1077 (S.D. Cal. 2010) .................................................................8

*In re Tobacco II Cases,*
  207 P.3d 20 (Cal. 2009) ......................................................................................11

*In Ryder Int'l Corp. v. First American National Bank,*
  943 F.2d 1521 (11th Cir. 1991) .............................................................................2

*J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.,*
  224 So. 3d 316 (Fla. 5th DCA 2017) .....................................................................3

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   114 F. Supp. 3d 852 (N.D. Cal. 2015) ...................................................................9

*Lamm v. State St. Bank & Tr.*,
   749 F.3d 938 (11th Cir. 2014) .............................................................................18

*Lewis v. Mercedes-Benz USA, LLC*,
   530 F. Supp. 3d 1183 (S.D. Fla. Mar. 30, 2021)........................................11, 12, 13

*Lombardo v. Johnson & Johnson Consumer Co., Inc.*,
   124 F. Supp. 3d 1283 (S.D. Fla. 2015) ................................................................12

*Macias v. HBC of Fla., Inc.*,
   694 So. 2d 88 (Fla. 3d DCA 1997) .....................................................................13

*Murray Cty. v. Homesales, Inc.*,
   330 P.3d 519 (Okla. 2014).................................................................................5, 6

*Musson v. Rice*,
   739 P.2d 1004 (Okla. 1987)..............................................................................5, 6

*Nesbeth v. Wachovia Bank*,
   2010 WL 11601016 (S.D. Fla. July 19, 2010), *report and recc. adopted sub*
   *nom. Nesbeth v. USIMO*, 2010 WL 11601017 (S.D. Fla. Sept. 9, 2010) .............1, 2

*Newton v. Florida*,
   895 F.3d 1270 (11th Cir. 2018) .........................................................................19

*Odor v. Rose*,
   2008 WL 2557607 (W.D. Okla. June 20, 2008) ....................................................6

*Pinter v. Dahl*,
   486 U.S. 622 (1988)..........................................................................................1, 2

*Pop v. LuliFama.com LLC*,
   2024 WL 1194485 (M.D. Fla. Mar. 20, 2024) ....................................................12

*Rensel v. Centra Tech, Inc.*,
   2019 WL 2085839 (S.D. Fla. May 13, 2019) ........................................................3

*Rousseff v. E.F. Hutton Co., Inc.*,
   867 F.2d 1281 (11th Cir. 1989) ...........................................................................2

*Ruhlen v. Holiday Haven Homeowners, Inc.*,
   28 F.4th 226 (11th Cir. 2022) ..............................................................................7

*Seropian v. Wachovia Bank, N.A.*,
   2010 WL 2949658 (S.D. Fla. July 26, 2010)..........................................................2

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*,
    904 F.3d 1197 (11th Cir. 2018) ........................................................................16

*Taylor v. Costco Wholesale Corp.*,
    2020 WL 5982090 (E.D. Cal. Oct. 8, 2020) .....................................................10

*Thompson v. Procter & Gamble Co.*,
    2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) .....................................................8

*Twitter, Inc. v. Taamneh*,
    598 U.S. 471 (2023) ........................................................................................17

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .........................................................................5

*Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*,
    2023 WL 1469408 (M.D. Fla. Feb. 2, 2023) ...................................................19

**Statutes**

15 U.S.C. § 77(a)(1) .....................................................................................................2

Cal. Corp. Code § 25110 ..............................................................................................4

Cal. Corp. Code § 25503 ..............................................................................................4

Cal. Corp. Code § 25504.1 ...........................................................................................4

Fed. R. Civ. P. 9(b) ...........................................................................................5, 9, 10, 20

Fla. Stat. § 517.021(22) ................................................................................................3

Okla. Stat., tit. 71, § 1-509(B) ......................................................................................6

## INTRODUCTION

Plaintiffs seek to impose liability on any person or entity that provided a service which disseminated information about the FTX Platform. American courts have long rejected such attenuated targets of liability. To be clear, Defendants are not broker-dealers; primary or indirect issuers or sellers of securities; investment managers; securities or consumer-protection regulators; insurers against third-party fraudsters; responsible for investor due diligence; or in privity with Plaintiffs. Neither the Class Action Complaint ("CAC") nor the Opposition Brief ("Opposition" or "Opp.") plausibly suggests otherwise. Accordingly, this Court should dismiss Plaintiffs' Complaint against Defendants with prejudice.

## ARGUMENT

**I.     Plaintiffs' State Securities Claims Fail and the Court Should Dismiss Them (Count I, Count VIII, and Count XIII).**

### A.     Count I (Violation of Florida Securities Law) Fails.

In arguing that Defendants are "sellers" under the Florida Securities and Investor Protection Act ("FSIPA"), Plaintiffs mischaracterize the Supreme Court's definition of a "seller" of securities. In *Pinter v. Dahl*, 486 U.S. 622 (1988), the Supreme Court concluded that a collateral participant who did not actually solicit unlawful securities sales for his own financial interest cannot be held liable as a "seller", "even when that person's involvement in the transaction constitutes a substantial factor in causing the transaction to take place." *Nesbeth v. Wachovia Bank*, 2010 WL 11601016, at *4 (S.D. Fla. July 19, 2010), *report and recc. adopted sub nom. Nesbeth v. USIMO*, 2010 WL 11601017 (S.D. Fla. Sept. 9, 2010). Under *Pinter*, a "person who offers or sells a security" must have either (1) passed title of the security to the plaintiff, or (2) successfully solicited the purchase motivated at least in part by his own financial interest. *Nesbeth*, 2010 WL 11601016, at *3.

Plaintiffs allege Defendants' advertisements facilitated FTX's ability to commit the alleged securities fraud. This is insufficient to deem Defendants a "seller" of securities. Plaintiffs do not adequately allege either of the *Pinter* requirements, and they have failed to state a cause of action under Florida law.[1] *See Id.,* at *3-4; *see also In Ryder Int'l Corp. v. First American National Bank*, 943 F.2d 1521 (11th Cir. 1991) (applying *Pinter* test, where customer purchased corporate commercial paper through bank, "providing financial information concerning the availability of commercial paper for sale and the execution of the customer's orders did not render [bank] an 'offeror' or a 'seller' under Section 12(2) of the Securities Act.").

Furthermore, Plaintiffs do not even allege Defendants are "sellers" in the CAC; rather, Plaintiffs allege that Defendants are "agents" of the FTX Entities under FSIPA CAC ¶ 373. Indeed, the CAC identifies *FTX* as the seller of unregistered securities to Plaintiffs. CAC ¶ 372. Plaintiffs allege Defendants were *agents*, not *sellers*. The Court should not consider these newly asserted allegations and arguments. *Datto v. Florida Int'l Univ. Bd. of Trustees,* 2020 WL 3963713, at *4 (S.D. Fla. July 13, 2020); *Seropian v. Wachovia Bank, N.A.,* 2010 WL 2949658, at *4 (S.D. Fla. July 26, 2010) (refusing to consider new claim pled in response to motion to dismiss where the claim was not pled in original complaint).[2]

Plaintiffs' agency theory fails, too, because Plaintiffs do not allege sufficient facts to

---

[1] Florida securities law is narrower than federal law (*i.e.*, the Securities Exchange Act of 1933). *Rousseff v. E.F. Hutton Co., Inc.*, 867 F.2d 1281, 1283-85 (11th Cir. 1989) (FSIPA is "far more restrictive" and "applies to a far more narrow group of activities" and holding federal laws do not supersede state securities laws). Unlike Florida law, the Securities Exchange Act of 1933 applies to "offers" of securities in addition to sales of securities. 15 U.S.C. § 77(a)(1). *Dillon v. Axxsys Intern., Inc.,* 385 F. Supp. 2d 1307, 1313 & n.4 (M.D. Fla. 2005), aff'd, 185 F. App'x 823 (11th Cir. 2006) (liability under FSIPA only applies to persons participating in sale of security, noting Florida rejected more expansive scheme of liability).

[2] If the Court is willing to consider Plaintiffs' "seller" argument, it fails because Plaintiffs have not plausibly alleged that Defendants *successfully* solicited the purchase of a security from Plaintiffs, let alone anyone, which the law requires. *See Pinter*, 486 U.S. at, 643, 647.

establish *every* element of agency, either actual or apparent. "The elements of actual agency are: 1) acknowledgment by the principal of the agent; 2) the agent's acceptance; and 3) control of the agent by the principal." *J.P. Morgan Sec., LLC v. Geveran Invs. Ltd.,* 224 So. 3d 316, 329 (Fla. 5th DCA 2017) (citations omitted). "The elements of apparent agency are: 1) a representation by the principal; 2) reliance by a third party; and 3) a change in position by the third party based on the representation of an agency relationship." *Id.* (citations omitted). Here, Plaintiffs fail to allege facts plausibly suggesting FTX's acknowledgement or representation of Defendants as its agents (first element of actual and apparent agency), Defendants' acceptance of the agency (second element of actual agency), or FTX's control over Defendants (third element of actual agency). Plaintiffs' agency argument fails.[3]

Plaintiffs argue the CAC plausibly alleges Defendants aided or personally participated in the sale of unregistered securities. Opp. 16. Plaintiffs ignore Florida law, which defines "sale" or "sell" as a "contract of sale or disposition of an investment, security, or interest in a security, for value." Fla. Stat. § 517.021(22). The CAC does not contain sufficient facts to plausibly establish that Defendants aided or personally participated in a *contract* of sale or disposition (to Plaintiffs) of a security or interest in a security (registered or not) for value under FSIPA.[4]  The Court should dismiss Count I with prejudice.

### B.    Count VIII (Violation of California Securities Law) Fails.

Plaintiffs' Opposition likewise fails to save their California securities-law claim, which

---

[3] Moreover, Plaintiffs have lumped Defendants together and fail to plausibly plead agency for *each* Defendant *separately*.

[4] The marketing, promotion, and ads referenced in the CAC cannot plausibly be interpreted as an "offer to sell" or "solicitation of an offer" to buy the so-called unregistered securities. *See Rensel v. Centra Tech, Inc.,* 2019 WL 2085839, at *2 (S.D. Fla. May 13, 2019) (dismissing complaint where only "solicitation" entailed endorsements of subject security that boxer Floyd Mayweather posted on his Twitter account).

requires Plaintiffs to specifically allege Defendants "materially assist[ed]" in the sale of the unregistered security and did so with the "intent to deceive or defraud." Cal. Corp. Code §§25110, 25503, 25504.1; *see also Hollifield v. Resolute Cap. Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023). Plaintiffs have not pointed to either Defendant's direct involvement in any transactions between themselves and FTX (nor could they). And Plaintiffs mischaracterize the privity requirement under California's Corporate Securities Law ("CSL"). Depending on the nature of Defendants' alleged relationship ("broker-dealer" vs. "secondary actor") with the primary seller (FTX) and the buyer (Plaintiffs), "[t]o plead a claim under the CSL, Plaintiffs must allege either privity *or* that Defendants 'materially assist[ed]' in the sale of the unregistered security and did so with the 'intent to deceive or defraud.'"

*First,* Plaintiffs do not contest the absence of strict privity between Defendants and Plaintiffs. Opp. 10. Plaintiffs allege FTX, *not* Defendants, interacted directly with the purchasers, and nowhere in the CAC do Plaintiffs allege Defendants sold, offered to sell, or induced Plaintiffs to purchase an alleged security. *Second,* Plaintiffs argue their allegations "are more than sufficient to state a claim under the California Securities Act." *Id*. Yet the CSL requires Plaintiffs to show *material* assistance coupled with fraudulent intent—elements Plaintiffs do not and cannot establish. Opp. 10. *Third,* Plaintiffs' contention that "it is immaterial whether Defendants knew about FTX's financial fraud" is just wrong. Opp. 22. Defendants could not have intended to deceive or defraud Plaintiffs where Defendants were not aware of FTX's fraud. Plaintiffs do not specifically allege Defendants had knowledge of, or participated in, any of FTX's alleged underlying fraud. Plaintiffs instead regurgitate the same speculative assertions that there were "red flags." Opp. 10. These are exactly the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court has found insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).[5] The Court should dismiss Count VIII with prejudice.

   **C.    Count XIII (Violation of Oklahoma Securities Law) Fails.**

   Plaintiffs' arguments in support of their Oklahoma claim fare no better than the Florida

and California claims. Opp. 11-12. Plaintiffs' allegations do not meet the most basic requirement

of Oklahoma securities law—selling securities—because the law is clear that *advertising* is not

selling securities. In the seminal case of *Musson v. Rice*, 739 P.2d 1004 (Okla. 1987), the

Oklahoma Supreme Court held that a "seller" is one who is in the business of performing security

sales "acts which occup[ied] his time, attention, and labor . . . for the purpose of livelihood, profit,

or pleasure." *Id.* (noting that "[t]his definition also emphasizes a certain regularity of activity").

   Plaintiffs' CAC makes no allegations that establish Defendants were sellers—or broker-

dealers—of any alleged FTX securities. Plaintiffs have failed to assert (and cannot credibly do so)

that Defendants "engaged in the business of effecting transactions in securities" or performed

securities sales acts which occupied their "time, attention, and labor. . . for the purpose of

livelihood, profit, or pleasure."  Defendants are in the advertising business. They are not in the

business of effecting transactions in securities. Plaintiffs' conclusory allegations that Defendants

were "sellers" of securities is without merit.

   Plaintiffs' agency allegations are likewise deficient because Plaintiffs do not (and cannot)

allege that FTX had any control over Defendants. Under Oklahoma law, "[t]he essential factor in

any agency relationship is the principal's right to control the conduct of the agent." *Murray Cty.*

*v. Homesales, Inc.*, 330 P.3d 519, 526-27 (Okla. 2014). Plaintiffs' CAC contains no allegations

---

[5] Fed. R. Civ. P. 9(b) requires that Plaintiffs *must* do more than merely suggest that Defendants
"should have known" of FTX's alleged fraud—they must provide concrete examples of
Defendants' direct and knowing participation in the fraud, including what specific fraudulent
statements were made, when and where they were made, and how they were false. *U.S. ex rel.*
*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

supporting FTX's alleged control over Defendants—because Defendants were arm's-length, third-party marketing vendors for FTX, wholly lacking any hallmarks of an agency relationship.

Plaintiffs' allegations that Defendants "promoted false and deceptive messages about securities and the FTX platform," *see, e.g.*, CAC ¶¶ 274–378, 441–48; Opp. 12, are insufficient to establish liability under the OSL because Plaintiffs fail to assert "an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading." Okla. Stat., tit. 71, § 1-509(B). Again, Plaintiffs' CAC and Opposition assert, in conclusory fashion, that Defendants' statements about the "safety" of FTX's exchange platform (not FTX's FTTs or YBAs) were untrue but fail to assert the facts necessary to establish Defendants knew the true nature of FTX's fraud. (Plaintiffs cannot and, indeed, the CAC essentially establishes this.) Plaintiffs' allegations simply amount to (i) Defendants' advertisements made statements; (ii) FTX turned out—unbeknownst at the time to Defendants and the rest of the world—to be fraudulent; therefore, (iii) Defendants made untrue statements of material facts about a fraud—of which Defendants had no knowledge.

Finally, Defendants' knowledge—or lack thereof—is the key to establishing their liability under the OSL, which Plaintiffs fail to allege. Incredibly, Plaintiffs try to shift the burden of proof, claiming *Defendants* must prove their *lack* of knowledge—turning logic on its head by demanding that Defendants prove a negative. Opp. 11 n.9.[6]

The Court should dismiss Count XIII with prejudice.

---

[6] Plaintiffs mistakenly cite *Odor v. Rose*, 2008 WL 2557607, at *4 (W.D. Okla. June 20, 2008), for this proposition. But the burden shifting there only applies when a defendant seeks an exception to registration under the statute. *Id.* at *2; *see also Musson*, 739 P.2d at 1005 ("In Oklahoma, the burden of proving an exception or exemption to a provision under the Securities Act is on the person claiming the exception or exemption."). Defendants are not claiming any *exception* under the statute. Instead, Defendants assert that the statute *does not apply* at all because Plaintiffs do not (and cannot) allege sufficient facts establishing that it does.

II.    **Plaintiffs' Consumer-Protection Claims Fail and the Court Should Dismiss Them (Count II, Count VII, and Count XII).**

    A.    **Count II (Florida Deceptive Trade Practices Act ("FDUTPA")) and Count XII (Oklahoma Consumer Protection Act ("OCPA")) are Barred Under "Information Disseminator" Exemptions.**

Defendants are entitled to exemption from FDUTPA and OCPA as "information disseminators." Unable to meaningfully dispute the plain text of Fla. Sta. § 501.212(2) and OCPA §454(1), Plaintiffs argue in a footnote that the "Information Disseminator" exemption only applies to "entities … that simply lease space for *others* to fill." Opp. 22 n.28.[7] This unbridled interpretation is directly contradicted by the express language of FDUTPA and OCPA. Those legislatures' choices to exempt an advertiser is controlling and the court should dismiss Plaintiffs' claims with prejudice. *See Ruhlen v. Holiday Haven Homeowners, Inc.*, 28 F.4th 226, 229 (11th Cir. 2022) ("[I]t is the text's meaning. . .that binds us as law.") (quotation omitted).

    B.    **Count II (FDUTPA) and Count VII (California Unfair Competition Law ("UCL")) Fail Because Plaintiffs Cannot Establish Defendants Engaged in a Deceptive or Unfair Trade Practice.**

Plaintiffs' consumer-protection claims are premised on ads claiming that FTX was a "safe" way to get into crypto or that various celebrities were "in" on crypto and FTX. But this fails to demonstrate a deceptive trade practice because Plaintiffs do not credibly allege how these claims misled them. Opp. 13. Rather than explaining how these statements were deceptive, Plaintiffs summarily assert that because FTX was ultimately discovered to be a fraud—long after the ads were created—the ads must have been deceptive. Opp. 13.

---

[7] FDUTPA exempts anyone innocently "engaged in the dissemination of information" and OCPA exempts "publishers, broadcasters, printers or other persons insofar as an unlawful practice as defined in Sec. 753 of this title involves information that has been disseminated or reproduced on behalf of others without knowledge that it is an unlawful practice."

### 1.     The Challenged Statements Were "Puffery."

Plaintiffs identify three advertisements featuring Tom Brady and Gisele Bundchen in which Brady and Bundchen state that they are "in" on trading cryptocurrency with FTX, which is a "safe and easy" way to trade crypto. Opp. 13. The generic statement that "FTX is a safe and easy way to get into crypto" is classic, non-actionable puffery. Plaintiffs cannot sufficiently allege how these ads were deceptive, immoral, against public policy, or an unfair trade practice. Attempting to circumvent this fatal flaw, Plaintiffs argue that the Court cannot determine at this stage of the proceedings that Plaintiffs' "deception" allegations fail as a matter of law. Opp. 12-13 (quoting *Thompson v. Procter & Gamble Co.*, 2018 WL 5113052, at *2 (S.D. Fla. Oct. 19, 2018)). However, the very next sentence in *Thompson* following the quoted language makes clear that "in order for an alleged misrepresentation to be actionable, it must, *as a threshold matter*, be capable of inducing reasonable reliance by a consumer." 2018 WL 5113052, at *2 (emphasis added).[8]  Plaintiffs' conclusory allegations fail to cross this threshold. Plaintiffs' CAC fails to identify any action that could be construed as deceptive or unfair.

### 2.     Plaintiffs Fail to Plausibly Allege an Unfair Trade Practice.

While they contend Defendants' advertisements were "immoral, unethical, oppressive, unscrupulous,"[9] Plaintiffs do not specify why the creation of a product advertisement meets the unfair trade practices definition. None of the ads even mentioned FTTs or YBAs, leaving only FTX's exchange platform as the subject of Plaintiffs' allegations. But the exchange platform was not limited to FTX's FTTs or YBAs. There is nothing unfair—and Plaintiffs' allegations fail to

---

[8] *See also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litigation*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) ("generalized, vague and unspecific assertions, constitute mere puffery upon which a reasonable consumer could not rely, and hence are not actionable" under UCL) (quotations omitted) (citations omitted).

[9] Plaintiffs cite this language from *Rollins, Inc. v. Butland*, 951 So. 2d 860 (Fla. 2d DCA 2006).

assert as much—about advertising that FTX was a platform where one could buy, sell, or trade *various* cryptocurrencies.

Plaintiffs argue that they have sufficiently alleged deceptive acts by generally concluding that Defendants designed "misleading representations" in FTX's advertising campaigns. Opp. 13. They have not. Plaintiffs' broad characterization of the marketing campaigns' tone and celebrity endorsements do not rise to the level of specificity required under Rule 9(b), which demands clear, non-conclusory examples of knowingly false statements Defendants made directly to Plaintiffs. Plaintiffs conflate the role of Defendants with that of the advertiser (FTX), and ignore the fact that, as advertising agencies, Defendants do not *make* statements. The cases they rely upon (Opp. 14-15) demonstrate this point.

For example, in *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 857 (N.D. Cal. 2015), the plaintiffs brought consumer-protection claims against Uber, the advertiser, for safety-related advertising slogans, including statements on Uber's website. The court found that *Uber* made the actionable statements—*not* the website designer, publisher, or ad agency. Similarly, in *Eifler v. Shurgard Cap. Mgmt. Corp.*, 861 P.2d 1071, 1074-75 (Wash. Ct. App. 1993), the court found the plaintiff's consumer-protection claim was actionable against the company that *placed* the advertisement, not the yellow pages in which those ads were placed. These cases do not support Plaintiffs' sought-after outcome. To equate a third-party's creation of commercials using "a comedic tone" that "evoke[d] the feeling that crypto was the next big breakthrough" (CAC ¶¶ 311, 314, 315) to the first-party's "making of statements" is simply a bridge too far.

When, as here, a consumer-protection claim is based on deceptive acts of a corporation (FTX) with which a defendant has a business relationship (Defendants), the plaintiff must plausibly allege the defendant personally participated in and knew of the associated corporation's

wrongdoing. *See, e.g.*, *Taylor v. Costco Wholesale Corp.*, 2020 WL 5982090, at *4 (E.D. Cal. Oct. 8, 2020) (defendant's liability under UCL "must be based on his personal participation in the unlawful practices and unbridled control over th[ose] practices"). Plaintiffs do not (and cannot) plausibly allege Defendants had knowledge of or personally participated in FTX's secret wrongdoing, over which they had no control—let alone *unbridled* control.

Plaintiffs further suggest that Defendants' practices may be unfair even if they lack capacity to deceive. Opp. 16-17. But Plaintiffs broadly categorize promotional activities as "unfair" without demonstrating how these actions specifically "violated public policy" or were "unethical, oppressive, or unscrupulous." *Id.* Plaintiffs' argument relies entirely on the bald and unsupported assertion that Defendants "enrich[ed] themselves by tricking consumers into investing into a Ponzi scheme," and the conclusion that consumers "lacked access to the knowledge and substantial resources that Defendants had." Opp. 17. Plaintiffs cannot allege that Defendants actually participated in or knew of FTX's fraud beyond these generic and sweeping assertions—which fall far short of what is required to state a consumer-protection claim under *Iqbal* or *Twombly*, much less under Rule 9(b). *Taylor*, 2020 WL 5982090, at *4.

### C.      Plaintiffs Fail to Adequately Plead Knowledge.

Plaintiffs claim that Defendants were "exposed to red flags," which apparently deterred other potential promoters of FTX. Opp. 22. Plaintiffs identify three supposed red flags:  First, Plaintiffs claim the NFL backed out of partnering with FTX after performing due diligence and deciding not to partner with *any* cryptocurrency player (not just FTX). CAC ¶ 44. Second, Plaintiffs assert a competing cryptocurrency exchange, Binance, backed out of acquiring FTX after discovering "mishandling" of customer funds (shortly before FTX collapsed). CAC ¶ 162. Third, Plaintiffs allege several non-profits turned down gifts from FTX's founder, citing "undisclosed red flags" as their reason for doing so. CAC ¶ 261.

These allegations actually support that Defendants *did not* know of FTX's fraud. Plaintiffs do not assert that any of these entities spoke with Defendants or otherwise publicly revealed their findings—Plaintiffs even allege the non-profits' findings were "undisclosed." These alleged examples, even if taken as true, do nothing to demonstrate that Defendants knew or should have known of "red flags" associated with FTX's business practices based on the undisclosed findings of other, unrelated entities.[10]

Perhaps anticipating that the "red flag" argument would be insufficient to impute knowledge to Defendants, Plaintiffs then incredibly claim that "it is immaterial whether Defendants knew about FTX's financial fraud." Opp. 22. Plaintiffs rely on *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183 (S.D. Fla. Mar. 30, 2021), and *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009), both of which involved the *manufacturer's* deceptive advertising. Defendants are not manufacturers. They did not make FTX, FTTs, or YBAs. They are third-party ad agencies with no knowledge of the inner workings of FTX, no knowledge of FTX's fraud, no control over FTX, no ability to manage or warn others about the unknown fraud.

These cases demonstrate, once again, Plaintiffs' misunderstanding of the knowledge required for their consumer-protection claims. If Defendants knew of the underlying fraud and continued to advertise on FTX's behalf, then that might have given rise to a cause of action. But without this knowledge, there is no way the advertisements could be unfair or deceptive, especially in light of the fact that the ads were about general use of FTX's trading platform, not the offending FTX products—FTTs and YBAs. *Lewis* and *In re Tobacco* are wholly inapplicable as those cases

---

[10] Further, Defendants stand in a completely different position from these other entities. Defendants did not seek to partner with FTX (NFL), buy it out (Binance), or accept large donations from FTX's founder (non-profits). Defendants were simply hired as third-party vendors to produce advertisements. Plaintiffs' "red flag" argument is actually a red herring.

involved manufacturers advertising their own products, over which they had control and, therefore, knew about the misleading statements. Defendants, as arm's-length, third-party advertisers, had no such involvement with FTX or its products and, therefore, could not have the knowledge to produce deceptive advertising.

### D.   Plaintiffs Fail to Adequately Plead Causation or Damages.

Plaintiffs fail to draw a proximate link between Defendants' ads and Plaintiffs' decision to purchase FTTs or invest in YBAs. Plaintiffs remarkably imply they can maintain their action against Defendants for disseminating allegedly deceptive commercials *even if no one ever actually viewed those commercials in the first place*. Opp. 18.[11]   In other words, Plaintiffs assert that inadequate allegations of deception satisfy their burden to establish causation and damages. *Id.* at 19. That's wrong.

Plaintiffs rely on *Lewis*, 530 F. Supp. 3d 1183, for the proposition that the "FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct." Opp. 18. But "*causation* is [still] a necessary element of the FDUTPA claim, and causation must be direct, rather than remote or speculative." *Lombardo v. Johnson & Johnson Consumer Co., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015) (quotation omitted) (emphasis added). "Where a plaintiff does not allege that the harm resulted from the FDUTPA violation, the claim must fail for lack of causation." *Pop v. LuliFama.com LLC*, 2024 WL 1194485, at *4 (M.D. Fla. Mar. 20, 2024).[12]   Plaintiffs' failure to allege that they—let alone any ordinary consumer—purchased unregistered securities from the FTX platform after seeing Defendants' commercials is fatal to their claim.

---

[11] Plaintiffs' reliance on *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) "is misplaced in this regard, as the class members in [that] case[] were uniformly exposed to affirmative misstatements made by the defendants." *Cardenas v. Toyota Motor Corp.*, 2021 WL 6926418, at *12 (S.D. Fla. Aug. 12, 2021).
[12] *See also Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 938 (Fla. 3d DCA 1987).

Plaintiffs must plead that "but for" the commercials they would not have lost money when the FTX platform criminally imploded—but they haven't. *See Lewis*, 530 F. Supp. at 1234 (citing *In re Horizon Organic Milk*, 955 F. Supp. 2d 1311, 1333 (S.D. Fla. 2013)); *see also Macias v. HBC of Fla., Inc.*, 694 So. 2d 88 (Fla. 3d DCA 1997) ("[I]njury claimed to have been suffered cannot be merely speculative."); *Circuitronix, LLC v. Shenzen Kinwong Elec. Co.*, 2018 WL 7287192, at *14 (S.D. Fla. Jan. 31, 2018) (dismissing FDUTPA claim where plaintiff only asserted damages "in purely conclusory terms"); *Berkoff v. Masai USA Corp.*, 2011 WL 13224836, at *6 (C.D. Cal. Mar. 3, 2011) (UCL requires plausible link between alleged deceptive or unfair acts and the harm *plaintiffs* suffered). Unable to draw the required causal link, Plaintiffs also necessarily fail to allege "but for" damages under their consumer-protection claims.[13]

Plaintiffs ask this Court to presume that "[o]ne does not rack up over $11 billion in sales of cryptocurrency products from millions of ordinary people…without a pervasive, sustained safety-focused advertising campaign like what Defendants executed with FTX."  Opp. 19. According to Plaintiffs, "[n]othing more is needed to plead causation or damages." *Id*. This is plainly insufficient to articulate a causal link between Defendants' conduct and Plaintiffs' alleged damages. Plaintiffs do not and cannot allege that they, or even most class members, heard or saw Defendants' marketing campaigns or relied on them. But even if they had, their consumer-protection claims still fail for failure to plead any causal nexus between Defendants' services and the Plaintiffs' losses. That's because FTX's secret misconduct, not Defendants' marketing

---

[13] Plaintiffs say allegations of damages "are not even necessary" because they are nominally requesting injunctive and declaratory relief. Opp. 19. Wrong again. That's because "an injunction [and a request for declaratory relief] must be geared toward preventing *future* harm." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.,* 938 F.3d 1170, 1175 (11th Cir. 2019). Here, FTX has already imploded—in other words, Plaintiffs *cannot* suffer future harm.

services, caused Plaintiffs' losses.

III.     **Plaintiffs' Conspiracy and Aiding-and-Abetting Claims Fail and the Court Should Dismiss Them (Counts III, IV, IX, XI, and XIV).**

      A.     **Plaintiffs Fail to Plead Defendants Conspired With FTX to Commit Fraud or Acted Pursuant to an Unlawful Agreement.**

Plaintiffs' failure to plead that Defendants entered into an agreement to assist FTX's fraud dooms their conspiracy claims under Florida and California law. At most, Plaintiffs allege Defendants entered into legitimate business agreements with FTX to provide routine marketing and advertising services. That is not a conspiracy to commit fraud.

Plaintiffs concede their civil conspiracy claims require them to allege there was "an agreement" between Defendants and FTX "to do an unlawful act or to do a lawful act by unlawful means." Opp. 27.[14] Plaintiffs also acknowledge that liability for a civil conspiracy requires that each coconspirator "'know of the scheme and assist in it[.]'" *Id.* (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008)); *see also* Mot. 28 (citing *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 502 (Fla. 3d DCA 1994) ("A conspiracy is only unlawful when there is an intent to achieve an illegal goal.")).

According to the CAC, however, FTX's insiders actively concealed their fraud from third parties, including Defendants. Indeed, Plaintiffs have alleged in detail that FTX's fraud was shrouded in secrecy and "thoroughly concealed[.]" CAC ¶ 131, and that only four FTX insiders were even aware that the company was converting customer funds. *Id.* ¶¶ 131, 146; *see also id.* ¶ 172 ("FTX Group was *tightly controlled* by a *small group* of individuals who . . . *lied to third*

---

[14] The Opposition misstates the required elements, stating: "Plaintiffs allege an unlawful act *or* agreement between Defendants and the FTX Entities." Opp. 27 (emphasis added). These are not alternative elements. *Both* elements are required to plead civil conspiracy, as Plaintiffs recognize in their statement of the law. *Id.* (citing *Grayson v. No Labels, Inc.*, 2021 WL 2869870, at *7 (M.D. Fla. Jan. 26, 2021)).

*parties* about their business . . . .") (emphasis added). FTX's misuse of customer funds was hidden because "FTX kept its crypto in a common pool used to fund *undisclosed* and unreasonably risky investments" and used "software to *conceal* the misuse of customer funds[.]" *Id.* ¶ 252 (emphasis added). FTX concealed its fraud from even sophisticated parties, preparing "materially misleading financial statements" and doctored "quarterly balance sheets" for lenders or equity investors— hiding the misuse of company funds, improper intra-company loans, and "loans" to certain FTX insiders. *Id.* ¶ 145.

Plaintiffs' allegations that Defendants should have somehow pierced this veil are implausible and contradicted by their own allegations. Plaintiffs *argue* that Defendants "were exposed to red flags of fraud that did or should have put them on notice" and thus "Defendants actively participated in the scheme[.]" Opp. 27-28. However, Plaintiffs *plead* the opposite, claiming that Defendants "failed to properly investigate" FTX. CAC ¶¶ 299, 322. Even if these negligence-type allegations were plausible—they are not, because ad agencies are hired to produce marketing campaigns, not investigate complex financial frauds—a "failure to properly investigate" FTX supports only one inference, namely, that Defendants *did not know* about FTX's fraud. The Court should give no weight to Plaintiffs' conclusory argument to the contrary.

Plaintiffs merely plead that Defendants *should have known* about the fraud because of their purported "failure to properly investigate" FTX. This falls well short of pleading facts showing Defendants knew of the FTX scheme, intended to help FTX achieve an illegal goal, and agreed to help FTX achieve that illegal goal. Plaintiffs' *ipse dixit* argument that Defendants are liable under a conspiracy theory merely because "their intended actions led to the perpetration of an unlawful act" is as illogical as it is unsupported. Opp. 28-29.

Moreover, Plaintiffs do not meaningfully address their failure to satisfy the Eleventh

Circuit's heightened pleading requirements for conspiracy to commit fraud. *See Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1213 (11th Cir. 2018) ("Where a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must plead this act with specificity.") (citation omitted). Instead of addressing the defects in their pleadings, Plaintiffs assert (incorrectly) that they can rely on strained circumstantial evidence to cure those deficiencies. Opp. 27 (citing *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987)). Plaintiffs' reliance on *Donofrio* is misplaced because that case addresses the sufficiency of evidence required on a motion for directed verdict—not the pleading requirements on a motion to dismiss. Ultimately, it's a moot point because Plaintiffs offer no direct or circumstantial evidence supporting an inference that there was a conspiratorial agreement between Defendants and FTX.[15]

Plaintiffs have not pled specific, plausible facts showing Defendants and FTX made an "unlawful agreement" to assist in FTX's fraud. Simply put, Plaintiffs do not plead a "meeting of two independent minds" that demonstrates anything more than Defendants' agreement to provide routine marketing services for FTX. *See* Mot.28 (citing *Cedar Hills Props. Corp., v. E. Fed. Corp.*,

---

[15] Many of Plaintiffs' authorities illustrate this inadequacy. Opp. 28-29. In *Ben-Yishay v. Mastercraft Dev., LLC*, 2009 WL 6387928, at *3 (S.D. Fla. Dec. 14, 2009), the court determined the plaintiffs adequately pled "the circumstances of the fraud" by distinguishing among the various defendants and specifying their respective roles. In *AXA Equitable Life Ins. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1358 (S.D. Fla. 2009), the plaintiff pled the allegations with the specificity Rule 9(b) requires because the complaint "clearly identifie[d] the misrepresentations made", "the time and place of each", "the person responsible for making each misrepresentation and the contents of the statements", and "what the defendants obtained as a consequence[.]" *Id.* at 1357. Finally, in *Favila v. Katten Muchin Rosenman LLP*, 115 Cal. Rptr. 3d 274, 292 (2010), the court found the allegations were sufficient—relying on certain emails and letters showing the parties intended to make particular misrepresentations to defraud plaintiffs—because plaintiffs had specifically alleged the "how, when, where, to whom, and by what means" of the misrepresentations. But there's nothing in the CAC that spells out the role of each Defendant in FTX's fraud or the particulars of each Defendant's alleged misconduct.

575 So. 2d 673, 676 (Fla. 1st DCA 1991)). The Court should dismiss Plaintiffs' civil-conspiracy claim with prejudice.

**B.      Defendants Could Not Have Aided or Abetted FTX to Commit Fraud or Conversion of Which They Were Unaware.**

Plaintiffs acknowledge, as they must, that their aiding-and-abetting claims require them to allege facts showing Defendants (1) had "actual knowledge" of FTX's fraud or conversion and (2) rendered "substantial assistance" to FTX in committing that fraud or conversion. Opp. 29-30. The knowledge and substantial-assistance components of aiding and abetting "should be considered relative to one another as part of a single inquiry designed to capture conscious culpable conduct." Mot. 33 (citing *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 504-05 (2023)).

Plaintiffs fail to plead facts showing Defendants actually knew of FTX's secret fraud or conversion—the *concealment* of which is detailed thoroughly in Plaintiffs' CAC. Plaintiffs *argue* that Defendants "must have conducted due diligence" and "therefore knew of FTX's wrongdoing." Opp. 32. Again, however, Plaintiffs *plead* the opposite: that Defendants "failed to properly investigate" FTX. CAC ¶¶ 299, 322. Translation:  Defendants did not (and could not) know about FTX's concealed fraud.

Because Plaintiffs fail to plead Defendants actually knew of FTX's fraud or conversion, Plaintiffs also fail to plead Defendants provided substantial assistance to FTX's tortious conduct. In fact, Plaintiffs concede that providing ordinary business services, which is what Defendants did, satisfies the substantial assistance element only if Defendants had *actual knowledge* that their services "were assisting the [principal] in committing a specific tort."  Opp. 35 (citing *In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006)). Defendants didn't have this knowledge.

Plaintiffs' argument that circumstantial evidence can show actual knowledge of misconduct, Opp. 32-35, is another classic red herring. While circumstantial evidence can support

17

an inference of actual knowledge, "the circumstantial evidence must demonstrate that the [defendant] actually knew of the underlying wrongs committed," *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *13 (M.D. Fla. Aug. 22, 2019), and "not merely that certain 'red flags' indicate a defendant 'should have known' of the [wrongdoing]," *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (quoting *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014)). Even when a bank has access to a fraudster's financial records, that alone is not sufficient to infer the bank had "actual knowledge" of a Ponzi scheme. There must be additional facts showing knowledge of bad acts.[16]  Plaintiffs fail to provide such "actual-knowledge" allegations here. Plaintiffs' allegations merely plead Defendants *should have known* because of their purported "failure to properly investigate" FTX. This falls short of actual knowledge. The Court should dismiss Plaintiffs' aiding-and-abetting claims with prejudice.

## IV.   Plaintiffs' Declaratory-Judgment Claim Fails and the Court Should Dismiss It (Count VI).

Plaintiffs' Opposition confirms that there is no basis for awarding declaratory relief. As detailed above, Plaintiffs have not adequately alleged facts to support their underlying claims and their declaratory-judgment claim fails for this reason alone.[17]  Plaintiffs' declaratory-judgment

---

[16] *See, e.g.*, Opp. 29, 31 (citing *Gilison v. Flagler Bank*, 303 So. 3d 999, 1003 (Fla. 4th DCA 2020); *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014)). The *Gilison* court determined a bank had general knowledge of a scheme because the bank had "direct access to the [primary offender's] financial records and the discrepancies within them" and "because the bank's underwriters approved additional funds to [the primary offender]." 303 So. 3d at 1003. In *Cordell Consultant*, the defendant lawyers were alleged to have conspired with their client to defraud the plaintiff, where the lawyers "had extensive knowledge of the client's practices" and there were "extensive disclosures to all four individual defendants, such that they knew that the client unlawfully withdrew funds[.]" 561 F. App'x at 883. In any event, Plaintiffs' authorities discussing aiding and abetting tort liability for financial institutions based on their access to financial records and facilitation of financial transactions for primary tortfeasors, Opp. 33-34 (citing cases), are an unhelpful apples-to-oranges comparison to the Defendants' marketing role vis-à-vis FTX. As participants in the heavily-regulated financial industry, banks have numerous know-your-customer duties inapplicable to advertising agencies.

[17] In response to Defendants' argument that a declaratory judgment is not the proper vehicle to

claim also fails because they have not alleged any immediate or future harm. Mot. 40. Plaintiffs'
attempt to show ongoing or future misconduct—by arguing that bad actors are increasingly using
cryptocurrency for illicit purposes—misses the mark because it's untethered to Plaintiffs' claims
against Defendants (or, incredibly, FTX). Opp. 37. The only conduct Plaintiffs allege is *past*
conduct that has no likelihood of causing a *future* injury, as FTX is now defunct. Plaintiffs' request
for declaratory relief is based on pure speculation that they *may* be harmed by *other bad actors* in
the cryptocurrency industry. This is not a real, imminent threat of future harm redressable by a
declaratory judgment in this case. The Court should dismiss Count VI with prejudice.

**V.      The Court Should Deny Plaintiffs' Request for Leave to Amend.**

The Court should deny Plaintiffs' request for leave to amend the CAC because amendment
would be futile. *See Bell v. Sec'y of State for Georgia*, 2024 WL 1299927, at *10 (11th Cir. 2024)
(district court "may properly deny leave to amend [a] complaint ... when such amendment would
be futile") (citations omitted). Plaintiffs' request for leave to amend is also improper. *See Newton
v. Florida*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that request for leave to
amend is not properly raised if embedded in memorandum in opposition to motion to dismiss).
Plaintiffs have already had ample opportunity to articulate the basis for their claims against
Defendants—yet they have failed to do so. Indeed, with over a year of extensive litigation
surrounding the FTX collapse and the wealth of information at their disposal, Plaintiffs' allegations
fall short of the requisite specificity necessary to plead viable claims against them—much less
satisfy Rule 9(b)'s heightened pleading for fraud-based claims. If Plaintiffs had sufficient factual

---

adjudicate Plaintiffs' allegations, Plaintiffs claim parties routinely plead these claims "in distinct
counts." Opp. 38 (citing *Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*, 2023 WL
1469408, at *2 (M.D. Fla. Feb. 2, 2023)). But the *Voo-Doo Daddy* court explained that courts
entertain stand-alone declaratory-judgment claims when brought as *counterclaims*. The court
concluded *the defendant* could seek a declaratory judgment about its ownership of the copyrights
the plaintiff had placed into question by filing claims and requesting a declaratory judgment. *Id.*

bases to advance their claims against Defendants, they would have undoubtedly alleged so. They did not. This Court, like courts across this Circuit routinely do, should dismiss Plaintiffs' claims with prejudice because amendment would be futile.

**CONCLUSION**

The Court should dismiss the Complaint with prejudice. Defendants are traditional, arm's-length service providers unjustly caught in Plaintiffs' legal dragnet. Plaintiffs advance no well-pled, specific, or plausible allegations that they, or any class of investors, were swayed to invest using FTX as a result of Defendants' conduct. As the Motion to Dismiss demonstrates, Plaintiffs' claims are based on tortured interpretations of state securities and consumer-protection laws and illusory theories of conspiracy and aiding-and-abetting fraud that lack any plausible allegations of actual knowledge, intent, scienter, reliance, and causation. Plaintiffs' claims do not and cannot withstand scrutiny at the motion-to-dismiss stage. Accordingly, the Court should dismiss the Complaint with prejudice.

DATED: May 13, 2024                             Respectfully submitted,


HOLLAND & KNIGHT LLP                   BUCHANAN INGERSOLL & ROONEY PC


/s/ Andrew W. Balthazor                    *Lauren Humphries*
Andrew W. Balthazor, Esq.                  Lauren V. Humphries, Esq.
Florida Bar No.: 1019544                   Florida Bar No: 0117517
701 Brickell Avenue, Suite 3300            401 East Jackson Street, Suite 2400
Miami, Florida 33131                       Tampa, FL 33602
(305) 374-8500                             (813) 222 8180
Andrew.Balthazor@hklaw.com                 Lauren.Humphries@bipc.com
*Attorneys for Wasserman*                   *Attorneys for Dentsu MB*

20

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of May, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

BUCHANAN INGERSOLL & ROONEY PC

Lauren V. Humphries, Esq.
Florida Bar No: 0117517

4894-8973-7147, v. 11

21