## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | MDL No. 3076 <br><br> Case No. 23-md-03076-KMM |
| THIS DOCUMENT RELATES TO: <br><br> *Lahav et al.* v. *Binance Holdings Limited et al.*, No. 1:24-cv-21421-MOORE | |

### DEFENDANTS BINANCE HOLDINGS LIMITED AND CHANGPENG ZHAO'S
### <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Samson A. Enzer
Herbert S. Washer
Tammy L. Roy
Miles C. Wiley
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

*Attorneys for Binance Holdings Limited and Changpeng Zhao*

Aaron S. Weiss
**CARLTON FIELDS P.A.**
700 NW 1st Ave., Ste. 1200
Miami, FL 33136
Telephone: 305-530-0050

Benjamin M. Stoll
John L. Gibbons
**CARLTON FIELDS P.A.**
1025 Thomas Jefferson St. NW, Ste. 400W
Washington, DC 20007
Telephone: 202-986-8160

*Attorneys for Binance Holdings Limited*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 5

LEGAL STANDARDS ............................................................................................................. 8

ARGUMENT ............................................................................................................................. 9

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER FOREIGN
DEFENDANTS BHL AND MR. ZHAO ........................................................................ 9

    A.    Plaintiff Fails To Plead General Personal Jurisdiction ................................... 9

    B.    Plaintiff Fails To Plead Specific Personal Jurisdiction ................................. 10

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FEDERAL SECURITIES
LAWS (COUNTS I & II) ............................................................................................. 12

    A.    Plaintiff Fails to Plead a Misstatement or Omission ..................................... 13

    B.    Plaintiff Fails to Plead that Defendants Made Any Statement "In Connection
With" the Purchase or Sale of a Security ...................................................... 17

    C.    Plaintiff Fails to Plead a Strong Inference of Scienter .................................. 20

    D.    Plaintiff Fails to Plead Reliance on the At-Issue Statements ........................ 25

    E.    Plaintiff Fails to Plead Loss Causation ......................................................... 28

    F.    There Is No Private Action Under Section 17(a) ........................................... 30

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA STATUTORY
LAW (COUNTS III & IV) ........................................................................................... 30

    A.    Plaintiff Fails To State a Claim Under California's UCL ............................. 30

        1.    Plaintiff Fails to Plead that Defendants Engaged in Unlawful,
Fraudulent, or Unfair Business Practices ......................................... 31

        2.    Plaintiff Fails to Plead that He Relied on the At-Issue
Statements or That He Suffered a Loss Caused by His Reliance ...... 32

    B.    Plaintiff Fails to State a Claim for Secondary Liability Under the California
Corporations Code ........................................................................................ 33

**Page**

IV.     PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA COMMON LAW (COUNTS V, VI, VII) .................................................................................................... 35

    A.    Plaintiff Fails to State a Claim for Intentional Misrepresentation .............................. 35

    B.    Plaintiff Fails to State a Claim for Negligent Misrepresentation............................... 37

    C.    Plaintiff Fails To State a Claim for Unjust Enrichment.............................................. 39

CONCLUSION.................................................................................................................... 40

## TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens* v. *United States*, 406 U.S. 128 (1972)..................................................... 27

*Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013)............................................. 25

*Apollo Cap. Fund, LLC* v. *Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226 (2007) .................. 34

*AREI II Cases*, 216 Cal. App. 4th 1004 (2013). ............................................................... 35

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009)...................................................................... 8, 21

*Aviation One of Fla., Inc.* v. *Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870 (11th Cir. 2018) .......................................................................................................... 10

*Balistreri* v. *McCormick & Co.*, 2023 WL 5988600 (N.D. Cal. Sept. 13, 2023) ........................ 32

*Basic Inc.* v. *Levinson*, 485 U.S. 224 (1988) ........................................................................ 16

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007)................................................................. 8

*Bioheart, Inc.* v. *Peschong*, 2013 WL 1729278 (S.D. Fla. Apr. 22, 2013)................................. 11

*Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 731-732 (1975) ............................ 19, 25

*BNSF Railway Co.* v. *Tyrrell*, 581 U.S. 402 (2017) ....................................................... 10

*Brooks* v. *Tarsadia Hotels*, 2019 WL 2436395 (S.D. Cal. June 11, 2019) .................................. 35

*Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462 (1985)................................................ 12

*Cahill* v. *Edalat*, 2017 WL 2608857 (C.D. Cal. Feb. 15, 2017)..................................... 33

*Cambridge Ret. Sys.* v. *MEDNAX, Inc.*, 2019 WL 4893029 (S.D. Fla. Oct. 3, 2019)................. 13

*Carter* v. *Ford Motor Co.*, 2021 WL 1165248 (S.D. Fla. Mar. 26, 2021 ...................................... 9

*Carvelli* v. *Ocwen Fin. Corp.*, 934 F.3d 1307 (11th Cir. 2019) ................................................. 16

*Champions League, Inc.* v. *Woodard,* 224 F. Supp. 3d 317 (S.D.N.Y. 2016) ............................ 18

*Cisco Sys., Inc.* v. *STMicroelectronics, Inc.*, 77 F. Supp. 3d 887 (N.D. Cal. 2014). .................... 37

*City of St. Petersburg, Fla.* v. *Wachovia Bank, Nat'l. Ass'n.*, 2010 WL 2991431 (M.D. Fla. July 27, 2010) ................................................................................................................ 19

**Page(s)**

*City of Warren Gen'l Empls.' Ret. Sys.* v. *Teleperformance SE*, 2024 WL 2320209 (S.D. Fla. May 22, 2024) ............................................................................................................ 29

*Climo* v. *Office Depot, Inc.*, 2012 WL 13018593 (S.D. Fla. 2012) ................................................ 22

*Currie* v. *Cayman Res. Corp.*, 835 F.2d 780 (11th Cir. 1988) ...................................................... 30

*Cutler* v. *Rancher Energy Corp.*, 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ........................ 38

*D.E. & J Ltd. P'ship* v. *Conaway*, 284 F. Supp. 2d 719 (E.D. Mich. 2003) ................................. 29

*Daimler AG* v. *Bauman*, 571 U.S. 117 (2014) ............................................................................... 9

*Day* v. *Advanced Micro Devices, Inc.*, 2023 WL 2347421 (N.D. Cal. Mar. 2, 2023) .................. 40

*Diep* v. *Apple, Inc.*, 2024 WL 1299995 (9th Cir. Mar. 27, 2024) .................................................. 32

*Doan* v. *Singh*, 2013 WL 3166338 (E.D. Cal. June 20, 2013) ....................................................... 35

*Doe* v. *SuccessfulMatch.com*, 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................... 30

*Durell* v. *Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) ........................................................ 32

*Eddy* v. *Sharp*, 199 Cal. App. 3d 858 (1988) ................................................................................. 38

*Engalla* v. *Permanente Medical Group, Inc.*, 938 P.2d 903 (Cal. 1997). ..................................... 36

*Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) ...................................................... 31

*Faulkner* v. *Verizon Commcn's, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) .............................. 17

*FindWhat Investor Grp.* v. *FindWhat.com*, 658 F.3d 1282 (11th Cir. 2011). ............ 14, 22, 23, 26

*Frida Kahlo Corp.* v. *Pinedo*, 2021 WL 4147876 (S.D. Fla. Sept. 13, 2021) ............................. 12

*Ghalehtak* v. *Fay Servicing, LLC,* 304 F. Supp. 3d 877 (N.D. Cal. 2018) ................................... 31

*Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, 564 U.S. 915 (2011). ............................................. 9

*Great Fla. Bank* v. *Countrywide Home Loans, Inc.*, 2011 WL 382588 (S.D. Fla. Feb. 3, 2011) 16

*Griffin Indus., Inc.* v. *Irvin*, 496 F.3d 1189 (11th Cir. 2007). ....................................................... 5

*Griffin* v. *Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030 (C.D. Cal. 2015 ...................... 36, 38

*Guerra* v. *United Nat'l Foods, Inc.*, 2019 WL 13203781 (N.D. Cal. Nov. 8, 2019) ................... 32

*Guo* v. *Robl*, 2023 WL 2683473, at *6 (C.D. Cal. Mar. 2, 2023) ................................................. 34

**Page(s)**

*Hall* v. *Sea World Entm't, Inc.*, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)............................ 33

*Hall* v. *Time Inc.*, 158 Cal. App. 4th 847 (2008) ........................................................... 33

*Halliburton Co.* v. *Erica P. John Fund, Inc.* 573 U.S. 258 (2014).......................................... 25, 26

*Harbinger Capital Partners LLC* v. *Deere & Co.*, 632 F. App'x 653 (2d Cir. 2015). ................. 20

*Hubbard* v. *BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ..................................... 27

*Hunt* v. *Wells Fargo Bank, NA*, 576 F. App'x 693 (9th Cir. 2014) ................................................ 39

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*, 2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023)........ 20

*In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71 (S.D.N.Y. 2023) ........................................... 20

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 1097244 (C.D. Cal. Mar. 9, 2012) ..................................................................................................................... 9

*In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257 (11th Cir. 2016)........................... 8, 9

*In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336 (N.D. Ga. 2010) ................................ 29

*In re January 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231 (S.D. Fla. 2022) ... 12, 28

*In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269 (S.D. Fla. 2017) ................................ 14, 23, 24

*In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888 (N.D. Cal. 2018)................................. 39

*In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130 (M.D. Fla. 2005).................................... 28

*In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291 (S.D. Fla. 2002)..................................... 16

*In re Takata Airbag Prods. Liab. Litig.*, 2020 WL 3286821 (S.D. Fla. May 29, 2020)............ 9, 30

*In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262 (S.D. Fla. Sept. 4, 2015) 20

*In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1192 (S.D. Fla. 2021) ............... 12

*Instituto de Prevision Militar* v. *Merrill Lynch & Co.*, 2007 WL 2900318 (S.D. Fla. Sept. 28, 2007) ................................................................................................................... 26

*Instituto De Prevision Militar* v. *Merrill Lynch*, 546 F.3d 1340 (11th Cir. 2008) ...................... 19

*Interstellar Prods., Inc.* v. *Bush*, 576 F. Supp. 3d 1106 (M.D. Fla. 2020) ................................... 11

*Jager* v. *Davol Inc.*, 2017 WL 696081 (C.D. Cal. Feb. 9, 2017)................................................. 38

**Page(s)**

*Jianmen Benlida Printed Circuit Co., Ltd.* v. *Circuitronix, LLC*, 2023 WL 8354939 (S.D. Fla. Dec. 1, 2023)........................................................................................................... 29

*Kane* v. *Chobani, Inc.*, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013)....................................... 31

*Kearns* v. *Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ...................................................... 31

*Kwikset Corp.* v. *Superior Ct.*, 246 P.3d 877 (Cal. 2011) ...................................................... 30

*LightSquared Inc.* v. *Deere & Co.,* 2015 WL 585655 (S.D.N.Y. Feb. 5, 2015) .......................... 20

*MacPhee* v. *MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023) ...................................... 13, 28

*Markowitz* v. *Diversified Lending Grp., Inc.*, 2010 WL 11507662 (C.D. Cal. Feb. 26, 2010). ... 35

*Menora Mivtachim Ins. Ltd.* v. *Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022)...................... 20

*MH Pillars Ltd.* v. *Realini*, 277 F. Supp. 3d 1077 (N.D. Cal. 2017) ........................................ 40

*Miller* v. *Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365 (S.D. Fla. 2019 .............................. 11

*Mirkin* v. *Wasserman*, 858 P.2d 568 (Cal. 1993).................................................... 33, 36, 37

*Miyahira* v. *Vitacost.com, Inc.*, 2012 WL 12895513 (S.D. Fla. June 28, 2012) ......................... 17

*Mizzaro* v. *Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008)...................................... 21, 22, 23

*Moore* v. *Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020);............................................. 32

*OCG Energy, LLC* v. *Shen*, 2023 WL 2628689 (C.D. Cal. Jan. 11, 2023) ................................. 35

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund* v. *Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004). .......................................................................................................... 20

*Oueiss* v. *Saud*, 2022 WL 1311114 (S.D. Fla. Mar. 29, 2022).................................................. 9, 12

*Phila. Fin. Mgmt. of S.F., LLC* v. *DJSP Enters., Inc.*, 572 F. App'x 713 (11th Cir. 2014) ......... 22

*Plastino* v. *Wells Fargo Bank*, 873 F. Supp. 2d 1179 (N.D. Cal. 2012)....................................... 39

*Puri* v. *Khalsa*, 674 F. App'x 679 (9th Cir. 2017)................................................................. 39

*Rabin* v. *Google LLC*, 2023 WL 4053804 (N.D. Cal. June 15, 2023)........................................ 40

*Robbins* v. *Kroger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ............................................. 28

*SANDP Solutions, Inc.* v. *Silver Logic, LLC*, 2022 WL 7049243 (S.D. Fla. Jan. 14, 2022) ........ 10

*Scheibe* v. *Fit Foods Distrib., Inc.*, 2023 WL 7434964 (S.D. Cal. Nov. 8, 2023)....................... 31

**Page(s)**

*Scheibe* v. *Livwell Prods., LLC*, 2023 WL 4414580 (S.D. Cal. July 7, 2023) ............................ 39

*SEC* v. *Binance Holdings Ltd.*, 2024 WL 3225974 (D.D.C. June 28, 2024)................................ 19

*SEC* v. *Goble*, 682 F.3d 934 (11th Cir. 2012).................................................................. 17

*SEC* v. *LBRY, Inc.*, 1:21-cv-260-PB (D.N.H. Jan. 30, 2023)........................................... 19

*SEC* v. *Merchant Capital, LLC*, 483 F.3d 747 (11th Cir. 2007).................................... 13

*SEC* v. *Monterosso*, 756 F.3d 1326 (11th Cir. 2014) ................................................. 13

*SEC* v. *Ripple Labs, Inc.*, 682 F. Supp. 3d 308 (S.D.N.Y. 2023) ................................. 19

*SEC* v. *Unique Financial Concepts, Inc.*, 196 F.3d 1195 (11th Cir. 1999)................... 18

*SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946)............................................................ 18

*SI 59 LLC* v. *Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146 (2018). ................ 37

*Siegler* v. *Curb Call, Inc.*, 2017 WL 6730095 (S.D. Cal. Dec. 29, 2017)................... 40

*Smith* v. *Allstate Co.*, 160 F. Supp. 2d  1150 (S.D. Cal. 2001)....................................... 38

*Smith* v. *City of Fort Pierce*, 2018 WL 5787269 (S.D. Fla. 2018) .............................. 26

*Smith* v. *Smith*, 184 F.R.D. 420 (S.D. Fla. 1998)........................................................ 30

*Smith* v. *Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310 (M.D. Fla. 2010................ 8

*Solis–Ramirez* v. *DOJ*, 758 F.2d 1426 (11th Cir. 1985).............................................. 5

*Sovereign Offshore Servs., LLC* v. *Shames*, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) .......... 11

*Stanaford* v. *Genovese*, 2016 WL 4198146 (S.D. Fla. Mar. 14, 2016) ....................... 27

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007)....................................... 21, 24

*Teton Global Invs., LLC* v. *LC Inv. 2010*, 2021 WL 5861565 (S.D. Cal. Aug. 11, 2021) ........... 32

*Thompson* v. *SendTec, Inc.*, 2007 WL 9700594 (S.D. Fla. June 12, 2007)................................ 21

*UMG Recordings, Inc.* v. *Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015).36, 38

*United Techs. Corp.* v. *Mazer*, 556 F.3d 1260 (11th Cir. 2009)..................................................... 9

*Vardazaryan* v. *Liberty Mutual Fire Ins. Co.*, 2023 WL 8884391 (C.D. Cal. Nov. 2, 2023) ...... 37

*Vess* v. *Ciba-Geigy Corp.  USA*, 317 F.3d 1097 (9th Cir. 2003)................................................. 36

**Page(s)**

*Villali* v. *Chep Servs., LLC*, 2022 WL 3348111 (E.D. Cal. Aug. 12, 2022)............................ 31, 32

*Waite* v. *All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018) ................................................... 10

*Walden* v. *Fiore*, 571 U.S. 277 (2014)...................................................................................... 10, 11

*Water Island Event-Driven Fund, LLC* v. *Tribune Media Co.*, 39 F.4th 402 (7th Cir. 2022)...... 16

*Wong* v. *Tomaszewski*, 2018 WL 4628269 (E.D. Cal. Sept. 27, 2018........................................... 33

*Yastrab* v. *Apple Inc.*, 173 F. Supp. 3d 972 (N.D. Cal. 2016). ..................................................... 36

*Zakinov* v. *Ripple Labs, Inc.*, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ................................ 34

*Zimmerman* v. *Buttigieg*, 521 F. Supp. 3d 1197 (M.D. Fla. 2021) ............................................... 11

**Statutes**

15 U.S.C. § 78u–4(b)(1). ............................................................................................................... 22

15 U.S.C. § 78u–4(b)(1)(B). ............................................................................................................ 8

15 U.S.C. § 78u–4(b)(2). ............................................................................................................... 20

Cal. Bus. & Prof. Code § 17200 .................................................................................................... 30

Cal. Bus. & Prof. Code § 17204 .................................................................................................... 30

Cal. Corp. Code § 25110................................................................................................................ 34

Cal. Corp. Code § 25401................................................................................................................ 34

Cal. Corp. Code § 25504.1............................................................................................................. 34

Fed. R. Civ. P. 10(c). ...................................................................................................................... 5

Fed. R. Civ. P. 9(b) ......................................................................................................................... 8

## PRELIMINARY STATEMENT[1]

The cause of the collapse of cryptocurrency exchange FTX is now well-known and recognized throughout the Amended Complaint ("AC"): FTX CEO Samuel Bankman-Fried ("SBF") criminally misused customer assets to fund risky bets, creating a multi-billion dollar deficit and triggering a run on deposits.[2]  In November 2022, FTX froze accounts and declared bankruptcy.  SBF resigned to face criminal charges, for which he was ultimately convicted and sentenced to 25 years in prison.[3]

This case is one of many filed in the aftermath of FTX's collapse.  Despite acknowledging the true cause, Plaintiff asks the Court to ignore it and accept an implausible premise: that two tweets by BHL's then-CEO, Mr. Zhao, published after FTX's collapse had begun, were

---

[1] In this memorandum, Defendants Binance Holdings Limited ("BHL"), Changpeng Zhao ("Mr. Zhao"), BAM Trading Services Inc., and BAM Management US Holdings Inc. are collectively referred to as "Defendants."  FTX Trading Ltd. ("FTX") and its affiliates are collectively referred to as the "FTX Group" or "FTX."  Unless otherwise noted, emphasis is added and internal citations, quotations, and bracketed alterations are omitted.

[2] (*See, e.g.,* AC Ex. 5 at 4-7 (citing November 2, 2022 *CoinDesk* report "Divisions in Sam Bankman-Fried's Crypto Empire Blur on His Trading Titan Alameda's Balance Sheet"; November 8, 2022 *CNBC* report "FTX's token plunges 80% on liquidity concerns, wiping out over $2 billion in value"; November 9, 2022 *Bloomberg* article, "Sam Bankman-Fried's FTX Empire Faces US Probe Into Client Funds, Lending"; November 10, 2022 *Wall Street Journal* article "FTX Tapped Into Customer Accounts to Fund Risky Bets, Setting Up Its Downfall"; November 11, 2022 *Financial Times* article "Global regulators circle Sam Bankman-Fried's FTX exchange"; November 12, 2022 *CNBC* article "Between $1 billion and $2 billion of FTX customer funds have disappeared, SBF had a secret 'back door' to transfer billions: Report"; November 17, 2022 *CNN Business* report "Complete failure: Filing reveals staggering mismanagement inside FTX"; November 17, 2022 *Wall Street Journal* article "New CEO Says FTX Suffered 'Complete Failure of Corporate Controls'")).

[3] *See* Sealed Indictment, *United States* v. *Samuel Bankman-Fried*, No. 1:22-cr-00673, ECF No. 1 (S.D.N.Y. Dec. 9, 2022) (alleging SBF engaged "in a scheme to defraud customers of FTX.com by misappropriating those customers' deposits, and using those deposits to pay expenses and debts of . . . [SBF's] proprietary crypto hedge fund, and to make investments").

responsible for FTX's failure. Plaintiff's purported relationship to FTX's collapse is very attenuated. He does not allege that he invested in the FTX Group directly or owned FTX's cryptocurrency, FTT. Rather, Plaintiff alleges that he and the class he seeks to represent were damaged when they lost access to certain unspecified fiat and cryptocurrency they had deposited with FTX. Remarkably, Plaintiff seeks to recover the *current* increased value of these assets not from FTX's bankruptcy estate, but from Defendants, FTX's alleged former competitor.

Plaintiff asserts seven causes of action against Defendants.[4] The theory underpinning each of these claims is that two allegedly false and misleading tweets by Mr. Zhao in November 2022 caused FTX's collapse and the putative class's claimed injuries. But, as discussed below, the Amended Complaint fails to adequately allege that either statement was false or misleading. In fact, Plaintiff's own allegations confirm each statement's accuracy.

The first challenged tweet, from Sunday November 6, 2022 at 10:47AM, stated:

> As part of [BHL's] exit from FTX equity last year, [BHL] received roughly $2.1 billion USD equivalent in cash (BUSD and FTT). Due to recent revelations that have came [sic] to light, we have decided to liquidate any remaining FTT on our books.

(AC ¶ 8; AC Ex. 18) (the "November 6 Tweet"). The second contested tweet, from Tuesday November 8, 2022 at 11:09AM, stated:

> This afternoon, FTX asked for our help. There is a significant liquidity crunch. To protect users, we signed a non-binding [letter of intent (LOI)], intending to fully acquire FTX.com and help cover the liquidity crunch. We will be conducting a full [due diligence (DD)] in the coming days.

---

[4] Plaintiff asserts violations of Section 10(b) of the Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 (Count I); violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") (Count II); violations of California's Unfair Competition Law (Count III); violations of Cal. Corp. Code § 25504.1 (Count IV); negligent misrepresentation (Count V); intentional misrepresentation (Count VI); and unjust enrichment (Count VII).

(AC ¶ 8; AC Ex. 18) (the "November 8 Tweet").[5]  In attempting to blame Defendants for FTX's collapse, Plaintiff ignores his own allegations of flagrant misconduct at FTX and makes the unsupported claim that without Mr. Zhao's two truthful tweets, "all of the FTX Group members would have continued to be solvent and would never have filed for bankruptcy." (AC ¶ 50).  Even putting aside that this conclusory assertion defies common sense and is contradicted by Plaintiff's other allegations, his claims fail as a matter of law for several independent reasons.

*First*, Plaintiff fails to establish personal jurisdiction over foreign defendants BHL and Mr. Zhao.  Neither is "at home" in the United States to convey general jurisdiction because, Plaintiff alleges, Mr. Zhao is a Canadian citizen and BHL is headquartered in the Cayman Islands and operates out of the Republic of China.  Plaintiff also fails to plead the minimum contacts required for specific jurisdiction.  Courts consistently reject jurisdiction over foreign defendants based solely on tweets that are viewable anywhere in the world.

*Second*, Plaintiff does not adequately allege that either of Mr. Zhao's tweets were false or misleading.  The November 6 Tweet's reference to liquidating "any remaining FTT" (AC ¶ 8) accurately implies some or all FTT may already have been sold.  And the Amended Complaint confirms the truth of the November 8 Tweet, acknowledging BHL signed a non-binding letter of intent to acquire FTX.com.  Plaintiff's assertion that the tweet was misleading because Defendants did not actually intend to purchase FTX is mere speculation that falls far short of meeting the plausibility standard, let alone the heightened pleading standards for fraud.  And it ignores the

---

[5] Plaintiff also appears to take issue with BHL's and Mr. Zhao's statements on November 9, 2022 that BHL would not be moving forward with the acquisition of FTX.com.  Plaintiff's issue with these statements, however, appears to be that such statements somehow call into question Defendants' intent to acquire FTX.com as announced on November 8, 2022.  Plaintiff does not appear to be asserting that the statements on November 9 were actually false or actionable, nor could he.

clear statement in Mr. Zhao's tweet that BHL would be conducting due diligence "in the coming days." Plaintiff's failure to adequately allege that any statement was false or misleading defeats every one of his seven claims as a matter of law.

**Third,** Plaintiff fails to allege that he purchased or sold a security or undertook any transaction whatsoever. Indeed, Plaintiff admits he "made ***no transactions*** during the class period in the debt or equity securities that are the subject of the action." As a mere holder (and a holder of non-securities at that), Plaintiff's claims fail. Plaintiff also lacks standing under Section 10(b) because the alleged misstatements were not about the unspecified cryptocurrencies Plaintiff allegedly held.

**Fourth**, Plaintiff's claims also fail because he does not adequately allege that Defendants acted with scienter. Plaintiff's claims all sound in fraud and are subject to the heightened pleading requirements of both Federal Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). These require Plaintiff to allege facts that would support a strong inference that Defendants knew or were severely reckless in not knowing their statements were false.

Plaintiff offers no such facts. His scienter theory rests solely on an alleged rivalry between Mr. Zhao and SBF. But rumors and conclusory assertions concerning a defendant's supposed intent do not come close to satisfying the "exacting" pleading requirements that govern Plaintiff's claims, and fall far short of being more compelling than the non-culpable inferences drawn from Plaintiff's own allegations.

**Finally**, Plaintiff's claims fail for a host of other independent reasons, including that Plaintiff has not properly pleaded that: (i) Plaintiff actually relied on either statement (let alone reasonably relied); (ii) the statements proximately caused Plaintiff's purported damages; or (iii) any of Defendants owed Plaintiff or the putative class any duty.

These fatal deficiencies require dismissal of Plaintiff's federal securities claims (*see* Section II); his state statutory claims (*see* Section III); and his common-law claims (*see* Section IV). For these reasons, the Amended Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

Plaintiff alleges that BHL is a cryptocurrency company headquartered in the Cayman Islands and operating out of China. (AC ¶ 18). Mr. Zhao is a Canadian citizen and the co-founder and former CEO of BHL. (AC ¶ 19). FTX Group was a cryptocurrency company founded by SBF. As part of its product offerings, FTX issued and maintained its own native digital asset, an exchange token known as FTT, that provided users with access to the FTX trading platform's features and services. (AC ¶ 6). Both the FTX Group and BHL are alleged to offer (or to have offered) platforms on which customers could trade cryptocurrency and therefore to have been "competitors." (AC ¶¶ 1-2).

SBF founded FTX in May 2019, while working at the digital asset trading firm Alameda Research ("Alameda"). (AC Ex. 5 at 1).[6] FTX was immediately successful in attracting investors and users. Six months after FTX was founded, BHL invested approximately $100 million into the company for a 20% ownership stake. (*Id.* at 1). Between 2019 and 2022, FTX continued to grow rapidly. (*Id.*). By 2021, FTX was operating the world's third-largest cryptocurrency exchange by volume. (AC Ex. 5 at 1). In July 2021, FTX raised another $900 million (at an $18 billion valuation), and SBF bought out BHL's stake in FTX for approximately $2 billion (a portion of

---

[6] Exhibits appended to a complaint are part of the pleading "for all purposes, including a Rule 12(b)(6) motion." *Solis–Ramirez* v. *DOJ,* 758 F.2d 1426, 1430 (11th Cir. 1985); Fed. R. Civ. P. 10(c). "[W]hen the exhibits [to a complaint] contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc.* v. *Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

which was paid in FTT).  (*Id.* at 2, 5).

While FTX's rise to prominence was astonishingly fast, its collapse in the fall of 2022 was even faster—unfolding over mere days as the company's liquidity issues, fraud, and misallocation of funds were exposed to the public through the press and social media.  (*See, e.g.,* AC Ex. 5 at 4-7).  On November 2, 2022, *CoinDesk* reported that a significant portion of the assets of FTX's affiliate Alameda were held in FTX's own cryptocurrency, signaling that "a fall in FTT's value would hurt both firms, given their shared ownership."  (AC Ex. 5 at 3; Ex. 10 at 2-3).  Two days later, on November 4, 2022, a pseudonymous crypto researcher published further claims suggesting Alameda was insolvent.  (AC Ex. 10 at 3).[7]

Days later, on Sunday November 6, 2022 at 10:47AM, Mr. Zhao tweeted:

As part of [BHL's] exit from FTX equity last year, [BHL] received roughly $2.1 billion USD equivalent in cash (BUSD and FTT).  Due to recent revelations that have came [*sic*] to light, we have decided to liquidate any remaining FTT on our books.

(*See* AC ¶ 8; AC Ex. 18).  Roughly three hours later, on November 6, 2022 at 1:49PM, Mr. Zhao confirmed through a separate tweet that a transfer of approximately $580 million in FTT, which was the subject of online discussion the day prior, was "part of [BHL's liquidation of its FTT]."  (AC ¶ 46; AC Ex. 18).

On November 7, 2022, as the price of FTT was declining and reports of liquidity issues at FTX Group emerged, SBF tweeted:  "I'd love it, @cz_binance, if we could work together for the ecosystem."  (AC Ex. 10 at 4).  On November 8, 2022 at 11:09AM, Mr. Zhao tweeted:

This afternoon, FTX asked for our help.  There is a significant liquidity crunch.  To protect users, we signed a non-binding LOI [letter of intent], intending to fully acquire FTX.com and help cover the liquidity crunch.  We will be conducting a full

---

[7] The researcher was vindicated just a few days later when, on November 11, FTX, Alameda, and more than 100 affiliates filed for bankruptcy.  (AC Ex. 5 at 5).

> DD [due diligence] in the coming days.
>
> There is a lot to cover and will take some time.  This is a highly dynamic situation, and we are assessing the situation in real time.  [BHL] has the discretion to pull from the deal at any time.  We expect FTT to be highly volatile in the coming days as things develop.

(AC Ex. 18).  That same day, SBF tweeted confirmation of the non-binding agreement, pending due diligence:

> Things have come full circle, and FTX.com's first, and last, investors are the same: we have come to an agreement on a strategic transaction with [BHL] for FTX.com (pending [due diligence] etc).

(AC Ex. 10).  Also on November 8, 2022, Reuters reported that SBF had sent a message to FTX staff stating: "On an average day, we have tens of millions of dollars of net in/outflows.  Things were mostly average until this weekend. . . .  In the last 72 hours, we've had roughly $6b of net withdrawals from FTX."  (AC Ex. 43).  This run on FTX thus began the morning of November 5, a full day *before* either of Mr. Zhao's challenged tweets.

The following day, on November 9, 2022, Bloomberg reported that the Securities and Exchange Commission ("SEC") and Commodity Futures Trading Commission ("CFTC") were investigating FTX's handling of client funds and its connections to SBF's other holdings.  (AC Ex. 5 (citing Lydia Beyoud *et al.*, "Sam Bankman-Fried's FTX Empire Faces US Probe Into Client Funds, Lending," *Bloomberg* (Nov. 9, 2022))).  That afternoon, BHL tweeted:

> As a result of corporate due diligence, as well as the latest news reports regarding mishandled customer funds and alleged US agency investigations, we have decided that we will not pursue the potential acquisition of FTX.com.
>
> In the beginning, our hope was to be able to support FTX's customers to provide liquidity, but the issues are beyond our control or ability to help.

(AC Ex. 32 at 1).  The same day, Mr. Zhao expressed regret about the deal not moving forward, tweeting: "Sad day.  Tried, but [crying emoji]."  (*Id.*).

On November 10, 2022, SBF made several public statements "taking responsibility for

FTX's failure and indicating that FTX was still seeking capital to remain solvent."  (AC Ex. 5).  The following day, on November 11, 2022, the FTX Group filed for bankruptcy and SBF stepped down as CEO.  (AC Ex. 10 at 5, 6).

On December 9, 2022, SBF was indicted by the U.S. Attorney for the Southern District of New York for defrauding FTX's customers and investors.  (*Id*.).  In 2024, after SBF was found guilty by a trial jury, SBF was "sentenced to 25 years in prison[,] and the FTX Group and the FTX Platform(s) are no longer operational."  (AC ¶ 2).

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  On a motion to dismiss, "the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant."  *Smith* v. *Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010).

Plaintiff's claims—all sounding in fraud—require him to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016).  Plaintiff's federal securities fraud claims must also satisfy the PSLRA, which requires him to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1)(B).  Plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state

of mind [*i.e.*, scienter]." *Galectin*, 843 F.3d at 1270. "[S]cienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *Id.*

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER FOREIGN DEFENDANTS BHL AND MR. ZHAO

Plaintiff bears the burden of making a *prima facie* showing of personal jurisdiction over each Defendant, and "[t]he Court's exercise of personal jurisdiction over a nonresident defendant must also comport with the due process requirements of the United States Constitution." *Oueiss* v. *Saud*, 2022 WL 1311114, at *12 (S.D. Fla. Mar. 29, 2022); *United Techs. Corp.* v. *Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).[8] Personal jurisdiction can be general or specific. *Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, 564 U.S. 915, 919 (2011). Plaintiff has not met his burden to sufficiently allege either general or specific personal jurisdiction over the foreign Defendants.[9]

#### A. Plaintiff Fails To Plead General Personal Jurisdiction

General jurisdiction exists only if the defendant is "at home" in the forum. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014). A corporation is generally "at home" only at its "place of incorporation and its principal place of business." *Waite* v. *All Acquisition Corp.*, 901 F.3d 1307,

---

[8] "Questions of federal law in cases transferred under 28 U.S.C. § 1407 are governed by the clearly settled law of the transferee court's circuit." *In re Takata Airbag Prods. Liab. Litig.*, 2020 WL 3286821, at *3 (S.D. Fla. May 29, 2020).

[9] Because the Amended Complaint fails to allege that the foreign Defendants have sufficient contacts with the United States, it fails to establish jurisdiction over Plaintiff's claims under both California and federal law. *See Carter* v. *Ford Motor Co.*, 2021 WL 1165248, at *13 (S.D. Fla. Mar. 26, 2021 (jurisdiction over state law claims "requires a plaintiff to show that his claim arises, not from the defendant's *nationwide* contacts, but from its *state-specific* contacts"). Nothing in the Amended Complaint comes close to showing that Defendants' alleged misstatements were targeted at California in particular, as opposed to the United States in general. *See, e.g.*, *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 1097244, at *13-14 (C.D. Cal. Mar. 9, 2012) (no jurisdiction over state law claims because alleged misstatements were directed "towards the United States securities markets" as a whole, not the forum state "specifically").

1317 (11th Cir. 2018). For an individual, "the paradigm forum" for "general jurisdiction is the individual's domicile." *SANDP Solutions, Inc.* v. *Silver Logic, LLC*, 2022 WL 7049243, at *4 (S.D. Fla. Jan. 14, 2022) (quoting *Daimler*, 571 U.S. at 137).

Here, Plaintiff's own allegations refute any notion that BHL or Mr. Zhao was "at home" in the United States at the time of the alleged conduct. In fact, the Amended Complaint alleges that Mr. Zhao is a *foreign* citizen and that BHL is a *foreign* corporation with a *foreign* headquarters. (AC ¶ 19 ("Defendant [Mr. Zhao] is a Canadian citizen"); AC ¶ 18 (BHL is "headquarter[ed] in 23 Lime Tree Bay Ave, Cayman Islands and operat[es] out of the Republic of China")).

Plaintiff's unadorned allegations that BHL and Mr. Zhao "conduct[] substantial business in this District, and a substantial part of the acts and omissions complained of occurred in this District" (AC ¶¶ 21, 24), are insufficient to establish general jurisdiction as a matter of law. *See BNSF Railway Co.* v. *Tyrrell*, 581 U.S. 402, 414 (2017) ("[I]n-state business … does not suffice to permit the assertion of general jurisdiction.").

## B. Plaintiff Fails To Plead Specific Personal Jurisdiction

This Court cannot exercise specific jurisdiction "consistent with due process" because Defendants' alleged "suit-related conduct" does not "create a substantial connection with the forum[.]" *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014). To plead specific personal jurisdiction, a plaintiff must establish that: (1) his claims "arise out of or relate to" the defendants' contacts with the forum; (2) defendants "purposefully availed [themselves] of the privilege of conducting activities within the forum"; and (3) defendant's "purposeful contacts with the forum" must be "such that [they] should reasonably anticipate being haled into court there" and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Aviation One of Fla., Inc.* v. *Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 879 (11th Cir. 2018). Plaintiff fails to meet any of these requirements.

-10-

*First*, Plaintiff's claims do not "arise out of or relate to" BHL's or Mr. Zhao's contacts with the United States because the Amended Complaint fails to allege that BHL or Mr. Zhao had *any* contacts with the United States.  Plaintiff's claims arise solely out of two tweets published by Mr. Zhao.  Nothing about those tweets was directed towards the United States.  "[C]ourts have uniformly rejected the argument that a tweet, not specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause." *Miller* v. *Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1375 (S.D. Fla. 2019); *see also Sovereign Offshore Servs., LLC* v. *Shames*, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that his blog posts would be accessible in [the U.S.] … and [plaintiff's] physical location in [the U.S.] are insufficient to establish … minimum contacts."); *Bioheart, Inc.* v. *Peschong*, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) ("There was no reason for [defendant] to have thought that . . . investors would be located in [the relevant forum].").  Because Plaintiff does not allege any forum-related contacts, by definition, he has not pleaded specific jurisdiction.[10]

*Second*, Plaintiff fails to allege that BHL or Mr. Zhao purposefully availed themselves of the privilege of conducting activities in the United States.  The *only* purported in-forum contact is the fact that the two at-issue tweets were viewable in—but not directed to—the United States.  Such an alleged contact has been "uniformly" rejected as a basis for personal jurisdiction.  *See, e.g.*, *Zimmerman* v. *Buttigieg*, 521 F. Supp. 3d 1197, 1209-11 (M.D. Fla. 2021) (finding a lack of personal jurisdiction because there was no evidence the tweets at issue were directed at any person in Florida); *Interstellar Prods., Inc.* v. *Bush*, 576 F. Supp. 3d 1106, 1111-12 (M.D. Fla. 2020)

---

[10] Any alleged connection between Plaintiff and the forum is irrelevant.  Only contacts that "the defendant *himself* creates with the forum" are relevant.  *Walden* v. *Fiore*, 571 U.S. 277, 284-85 (2014)

(same); *Oueiss*, 2022 WL 1311114, at *23-24 (same). Because there are no alleged suit-related contacts, there can be no purposeful availment.

***Third***, Plaintiff does not sufficiently allege that either BHL or Mr. Zhao had a reasonable expectation of being haled into American courts. This requirement ensures "that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1192, 1206 (S.D. Fla. 2021) (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)). "[O]nline activity alone" that is not targeted at the forum—*i.e.*, the only type of conduct alleged here—"does not establish that [Defendants] should reasonably anticipate litigation in [the forum]." *Frida Kahlo Corp.* v. *Pinedo*, 2021 WL 4147876, at *6 (S.D. Fla. Sept. 13, 2021).

In short, Plaintiff has not pleaded a *prima facie* basis for personal jurisdiction over Defendants BHL and Mr. Zhao. The Court should dismiss these Defendants on this basis alone.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FEDERAL SECURITIES LAWS (COUNTS I & II)

The Amended Complaint asserts federal securities claims under Exchange Act Section 10(b) and SEC Rule 10b-5 promulgated thereunder (Count I), and Securities Act Section 17(a) (Count II).[11] To state a Section 10(b) claim, "a plaintiff must plausibly allege" the existence of

---

[11] In a few paragraphs of the Amended Complaint, Plaintiff appears to characterize his claim as one of market manipulation. (*See, e.g.,* AC ¶ 62 (alleging BHL "secured" its "own profit" "before manipulating the market")). Notwithstanding these few references, Plaintiff's claims are clearly claims of misrepresentation because they do not arise from any "market activity." *In re January 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1260 (S.D. Fla. 2022) ("Market manipulation and misrepresentation claims differ from one another in several respects[,]" including most notably that a "market manipulation claim arises from market *activity*, rather than a *misrepresentation*."). Indeed, Plaintiff's own allegations confirm his claims arise solely out of alleged misrepresentations. (*See, e.g.*, AC ¶ 90 (alleging that the Defendants "manipulated the

-12-

"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *MacPhee* v. *MiMedx Grp., Inc.*, 73 F.4th 1220, 1241 (11th Cir. 2023).  Section 17(a) "requires substantially similar proof[.]" *SEC* v. *Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014).  Specifically, "[t]o show a violation of section 17(a)(1), the SEC must prove (1) material misrepresentations or materially misleading omissions, (2) in the offer or sale of securities, (3) made with scienter." *SEC* v. *Merchant Capital, LLC*, 483 F.3d 747, 766 (11th Cir. 2007).

Plaintiff fails to plausibly allege *any* of the required elements for either of his federal securities claims.  Plaintiff's Section 17(a) claim also fails because there is no private right of action under Section 17(a); only the SEC may bring such claims.

### A.     Plaintiff Fails to Plead a Misstatement or Omission

Plaintiff has not—and cannot—plead a misleading statement or omission.  To satisfy the "material misrepresentation or omission" element, a plaintiff must plead "each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." *Cambridge Ret. Sys.* v. *MEDNAX, Inc.*, 2019 WL 4893029, at *5 (S.D. Fla. Oct. 3, 2019).  "[I]f an allegation regarding the statement or omission is made on information and belief," Plaintiff must "state with particularity all facts on which that belief is formed." *Id.*  Moreover, "[t]he PSLRA requires specific facts showing that each statement at issue was false and misleading at the time it was made." *Id.* at *20.  A statement is misleading only if, in the light of the facts existing at the time of the statement, "a reasonable investor, in the exercise of due care, would have been misled by

---

market through tweets and press releases"); AC ¶ 98 (Defendants "made false and misleading statements" citing Amended Complaint Sections C-E)).

it." *FindWhat Investor Grp.* v. *FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011).

Neither of the two statements at issue—Mr. Zhao's tweets about (i) BHL's decision to liquidate its remaining FTT; and (ii) BHL's potential acquisition of FTX.com subject to due diligence—was false or misleading. To the contrary, the plain text of the tweets, and the facts alleged by Plaintiff, demonstrate that they were true, and not misleading, when they were made.

***First***, Plaintiff asserts that the November 6 Tweet that BHL had "decided to liquidate any remaining FTT on [BHL's] books" was "false and misleading because [BHL] had already sold . . . approximately \$530 million" of its FTT the day "before making this statement," and because the Tweet was purportedly "phrased in the future tense." (AC ¶ 44; *see also* AC ¶ 8 ("[T]he phrase 'we have decided to liquidate' suggests future action to be taken.")).

Plaintiff's twisted reading of the November 6 Tweet is simply incompatible with its plain language. He alleges that, because BHL "had already liquidated FTT at a higher price before making this announcement," (AC ¶ 8), the statement that "we have decided to liquidate any remaining FTT on our books" was misleading. But that is precisely what the tweet signifies—that at least some and potentially all of the FTT had "already" been liquidated. Plaintiff asserts that the statement is "phrased in the future tense," (AC ¶ 44), but the tweet is unambiguously phrased in the past tense: "decided to liquidate" uses the past tense of the verb "to decide." In any event, to the extent the statement conveyed anything about timing, it spoke only to the timing of Defendants' *decision* to liquidate; it conveyed nothing about the timing of the liquidation itself. Plaintiff cannot avoid dismissal by blatantly mischaracterizing the statement at issue. *See, e.g.*, *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1276 (S.D. Fla. 2017) (rejecting allegation that "mischaracterizes the plain language of the *actual* disclosures" and failed "to consider the disclosures in context, as is required by the PSLRA").

-14-

More fundamentally, Plaintiff fails to explain how BHL's liquidation of a portion of its FTT on November 5, 2022 is inconsistent with Mr. Zhao's factually accurate statement on November 6, 2022 that BHL had "decided" to liquidate its holdings.  Plaintiff also acknowledges that just three hours after Mr. Zhao's November 6 Tweet, he publicly confirmed in a separate tweet that a large transfer of FTT the day before was "part of" BHL's liquidation efforts.  (AC ¶ 46). Such transparency contradicts any suggestion that Mr. Zhao misled, or was attempting to mislead, anyone about BHL's liquidation of FTT.[12]

***Second***, Plaintiff alleges that the November 8 Tweet that BHL had signed a letter of intent to acquire FTX.com was "false and misleading."  (*See* AC ¶¶ 53-54, 59-60).  But the Amended Complaint itself alleges that the statement was true: it pleads that SBF confirmed that BHL had in fact "come to an agreement" to acquire FTX, subject to pending due diligence.[13]

In an attempt to render this admittedly true statement "misleading," the Amended Complaint asserts that, "***[o]n information and belief***, [Mr. Zhao] never had a good faith intention to acquire the FTX Group."  (AC ¶ 53).[14]  But the Amended Complaint fails to allege with the

---

[12] Plaintiff's real complaint appears to be that Defendants sold (some) of their FTT tokens "at an opportunistic time," which allegedly "had a negative impact on FTT Value in the market."  (AC ¶ 6).  Even accepting these allegations as true, this does not plead a securities law violation or render Mr. Zhao's statement false or misleading.

[13] (*See* AC Ex. 10 (quoting SBF's November 8, 2022 tweet confirming on behalf of FTX Group that a letter of intent had been signed: "we have come to an agreement on a strategic transaction with [BHL] for FTX.com (pending (DD) [due diligence] etc.).").

[14] Plaintiff also asserts that the November 8 Tweet "implied to the market that [Mr. Zhao] possessed material, confidential information regarding [FTX's] internal operations and finances" and "that [Mr. Zhao] was working with the FTX Group's executives."  (AC ¶ 54).  But Plaintiff does not allege that these implications were false in any way; indeed, the Amended Complaint confirms that Defendants had access to confidential due diligence materials and were working with FTX executives before Defendants decided not to move forward.  (*See, e.g.,* AC ¶ 13).

required particularity *any* facts showing that Mr. Zhao lacked a good-faith intent to acquire FTX and so fails to allege any actionable misstatement. *Great Fla. Bank* v. *Countrywide Home Loans, Inc.*, 2011 WL 382588, at \*5-6 (S.D. Fla. Feb. 3, 2011) (dismissing fraud claim where plaintiff failed to plead facts showing defendant's "specific knowledge" that statements were false); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1300-01 (S.D. Fla. 2002) (dismissing securities claim where complaint "offer[ed] no specifics," beyond allegations "based on information and belief," about why the challenged statements were misleading). *See also* Section II.C, *infra*.

The Amended Complaint also ignores the Tweet's unambiguous cautionary language that BHL's potential acquisition was far from guaranteed, specifically providing that the letter of intent was "***non-binding***"; that it was subject to "conducting a full [due diligence] in the coming days"; that the situation was "highly dynamic" and being assessed in "real time"; that BHL had "***the discretion to pull out from the deal at any time***"; and that Mr. Zhao "expect[ed] FTT to be highly volatile in the coming days as things develop." (AC Ex. 17, 18). *See Carvelli* v. *Ocwen Fin. Corp.*, 934 F.3d 1307, 1327 (11th Cir. 2019) (finding statements not misleading in light of "relevant cautionary language" disclosing "uncertainty").

Moreover, Plaintiff's purported belief that "the FTX Platform(s) were stable and secure" because of the potential BHL bailout, (AC ¶ 131), does not render the November 8 Tweet false or misleading. Given "the ever-present possibility that the contemplated transaction will not be effectuated" (*see Basic Inc.* v. *Levinson*, 485 U.S. 224, 232 (1988)), no reasonable investor would have understood Mr. Zhao's accurate and caveated statement as some guarantee that BHL would step in and solve the FTX Group's liquidity problems. *Water Island Event-Driven Fund, LLC* v. *Tribune Media Co.*, 39 F.4th 402, 406-07 (7th Cir. 2022) (finding statements about anticipated success of merger were not false as a matter of law despite ultimate failure of deal); *Faulkner* v.

-16-

*Verizon Commcn's, Inc.*, 156 F. Supp. 2d 384, 388, 397-98 (S.D.N.Y. 2001) (statement that "[m]erger was expected to be completed in mid-2001" was not actionable after deal fell through).

At bottom, Plaintiff's true complaint is that BHL did not ultimately acquire FTX.com. But Plaintiff's bare allegation that the acquisition was later called off (AC ¶ 72) does not establish that any part of the November 8 Tweet was false or misleading when made, particularly given that the Tweet itself expressly stated that BHL's offer was "non-binding," subject to diligence, and that BHL could "pull out" at "any time." *See, e.g.*, *Miyahira* v. *Vitacost.com, Inc.*, 2012 WL 12895513, at \*5 (S.D. Fla. June 28, 2012) ("Securities laws do not require clairvoyance—facts arising *after* a statement was made cannot establish a securities fraud claim.").[15]

**B.      Plaintiff Fails to Plead that Defendants Made Any Statement "In Connection With" the Purchase or Sale of a Security**

Plaintiff's federal securities claims fail for the additional reason that he does not adequately allege that the purportedly false and misleading statements were made "in connection with the purchase or sale of securities." *SEC* v. *Goble*, 682 F.3d 934, 942 (11th Cir. 2012). Without that connection, even a complaint that alleges a misrepresentation must be dismissed. *Id.* at 946 (dismissing 10(b) claim where the alleged "misrepresentation was not made in connection with the purchase or sale of securities"). Plaintiff fails to satisfy this pleading requirement for at least three separate reasons: (i) there was no security at issue; (ii) Plaintiff (and the class) did not purchase or sell anything (securities or otherwise); and (iii) Mr. Zhao's statements were not about the "cryptocurrencies" held by Plaintiff.

*First*, Plaintiff does not allege he engaged in any transaction involving a "security." *See*

---

[15] In fact, in its tweet the next day, BHL stated that it was its "corporate due diligence" as well as the latest reports regarding FTX mishandling funds and investigations into such misconduct that led it to decide to not pursue the transaction. (AC Ex. 32).

*Champions League, Inc.* v. *Woodard,* 224 F. Supp. 3d 317, 322 (S.D.N.Y. 2016) ("In order to satisfy the *Twombly/Iqbal* plausibility standard for stating a claim for securities fraud, a complaint must, among other things, ***explain what securities were allegedly purchased***."). The Amended Complaint arises out of the putative class's alleged loss of access to "fiat or cryptocurrency deposited or invested through an FTX Platform." (AC ¶ 81). But Plaintiff does not allege that any of the "fiat or cryptocurrency" he allegedly lost access to were "securities." In fact, Plaintiff swore under penalty of perjury that he "made no transactions during the class period in the debt or equity securities that are the subject of the action." Motion for Appointment as Lead Counsel, *Lahav* v. *Binance Holdings Ltd.,* No. 3:23-cv-05038 (N.D. Cal. Dec. 4, 2023), ECF No. 29-4 ("Pl. PSLRA Certification (ECF No. 29-4)").

The only "cryptocurrency" specifically mentioned in the Amended Complaint is FTX's FTT token—a cryptocurrency Plaintiff does not allege he ever owed. Even if Plaintiff now attempts to belatedly assert that FTT were "securities," there is no basis for that assertion. To be sure, courts have found that, in certain circumstances, certain sales of tokens can qualify as "securities" transactions. But to properly plead that a cryptocurrency asset was offered or sold in a securities transaction, Plaintiff must allege that the transaction involved: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others." *SEC* v. *Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). Plaintiff does not even attempt to plead ***any*** of these elements as to any asset allegedly owned by Plaintiff or purported class members.[16]

_____

[16] The Amended Complaint references *SEC* v. *W.J. Howey Co.*, 328 U.S. 293 (1946), (*see* AC ¶¶ 34-35), which sets forth the test for determining whether a transaction constitutes an investment contract and thus, a security under the federal securities laws. Plaintiff alleges that the SEC has used this test with respect to certain cryptocurrencies (AC ¶ 35) but makes no attempt whatsoever

-18-

*Second*, even if Plaintiff had sufficiently alleged that the assets at issue were "securities" (which he has not), his claims still fail because he did not "purchase or sell" these assets during the putative class period. Plaintiff's damage allegations in fact rest on the premise that the putative class did not buy or sell anything, but simply maintained their assets on FTX's platforms notwithstanding Defendants' statements (or any other FTX-related news) and then lost access to those assets when FTX collapsed.

As such, Plaintiff is a mere *holder* of the assets in question and has no private right of action under Section 10(b) and Rule 10b-5. *See Blue Chip Stamps* v. *Manor Drug Stores*, 421 U.S. 723, 731-732, 755 (1975). The Eleventh Circuit has made clear that investors, such as Plaintiff, "who *held* securities because of a misrepresentation or omission, have no private right of action under § 10(b) and Rule 10b-5." *Instituto De Prevision Militar* v. *Merrill Lynch*, 546 F.3d 1340, 1348 (11th Cir. 2008); *see City of St. Petersburg, Fla.* v. *Wachovia Bank, Nat'l. Ass'n.*, 2010 WL 2991431, at *3 (M.D. Fla. July 27, 2010) ("[N]either federal nor Florida securities laws allow an action for the improper 'holding' of securities."). Thus, Plaintiff's Section 10(b) claim fails as a matter of law.

*Finally*, even if Plaintiff had alleged that he purchased or sold securities (and he did not),

---

to plead that any asset in the unidentified universe of fiat or cryptocurrencies at issue in this case satisfies the *Howey* test. This alone is fatal to Plaintiff's securities claims.

Furthermore, courts have held that digital asset transactions made on secondary exchanges, such as FTX, are not investment contracts and therefore are not securities. *See SEC* v. *Binance Holdings Ltd.*, 2024 WL 3225974, at *22 (D.D.C. June 28, 2024) (dismissing claim because secondary sales of digital asset failed to satisfy *Howey*); *SEC* v. *Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 329-330 (S.D.N.Y. 2023) (finding "Programmatic" transactions where the buyer "stood in the same shoes as a secondary market purchaser" did not satisfy *Howey*); Hearing on Motion Transcript, *SEC* v. *LBRY, Inc.*, 1:21-cv-260-PB (D.N.H. Jan. 30, 2023), ECF No. 105 (declining to extend securities finding to secondary transactions).

he lacks standing under Section 10(b) because there is a fundamental disconnect between the subject of the allegedly false statements, *i.e.*, BHL's interest in the FTX Group, and the allegedly damaged assets—unidentified fiat and cryptocurrency maintained on FTX platforms. Section 10(b) standing requires that "plaintiff bought or sold the securities ***about which the misstatements were made***." *Menora Mivtachim Ins. Ltd.* v. *Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022). "Stockholders do not have standing to sue … when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase." *Ontario Pub. Serv. Emps. Union Pension Tr. Fund* v. *Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004). As a result, courts routinely dismiss claims for lack of standing where, as here, plaintiffs purchased or sold an entirely different security than the one mentioned in defendants' allegedly false or misleading statements.[17] Accordingly, the Court should dismiss Plaintiff's claim for lack of standing.

## C.       Plaintiff Fails to Plead a Strong Inference of Scienter

Under the PSLRA, Plaintiff must plead "with particularity facts giving rise to a strong inference" that each Defendant acted with scienter, *i.e.,* the "intent to deceive, manipulate, or defraud," or "severe recklessness." 15 U.S.C. § 78u-4(b)(2); *Mizzaro* v. *Home Depot, Inc.*, 544

---

[17] *See, e.g., In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262, at *3 (S.D. Fla. Sept. 4, 2015) (dismissing claim because defendants made allegedly misleading statements about a company named "Ocwen," but plaintiffs purchased shares of a different company, "Alitsource"); *In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 78–79 (S.D.N.Y. 2023) (dismissing because "Plaintiffs fail to establish that they bought or sold securities about which the misstatements were made"); *In re Alibaba Grp. Holding Ltd. Sec. Litig.,* 2023 WL 2601472, at *5 (S.D.N.Y. Mar. 22, 2023) (dismissing because the "challenged disclosures were not about Alibaba—the company in which Plaintiffs purchased or sold stock. Instead, they related to Ant's IPO, business, and regulatory environment."); *LightSquared Inc.* v. *Deere & Co.,* 2015 WL 585655, at *18 (S.D.N.Y. Feb. 5, 2015) (similar), *aff'd sub nom. Harbinger Capital Partners LLC* v. *Deere & Co.*, 632 F. App'x 653 (2d Cir. 2015).

-20-

F.3d 1230, 1238 (11th Cir. 2008).[18]  The required "inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations."  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007).  This inquiry is "inherently comparative" as "the court must take into account plausible opposing inferences."  *Id*. at 323.  A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.

The three types of scienter allegations asserted in the Amended Complaint fail to satisfy these high pleading standards.

*First*, Plaintiff recites the definition of scienter without alleging any supporting facts.  (*See, e.g.,* AC ¶ 59 ("Defendants acted with scienter in that Defendants knew, or recklessly disregarded, that the public statements they issued and disseminated . . . were materially false and misleading.")).  This "threadbare recital of the elements" of securities fraud is plainly insufficient.  *Iqbal*, 556 U.S. at 678; *see also, e.g.*, *Thompson* v. *SendTec, Inc*., 2007 WL 9700594, at \*5 (S.D. Fla. June 12, 2007) (rejecting scienter allegations that rested on "bald assertion" that defendants "acted with scienter" but provided "no particularized facts showing knowledge of the alleged omission on the part of any Defendant").  To adequately plead scienter, a plaintiff must plead *facts* that plausibly imply a defendant knew its statements were false (or recklessly disregarded the risk).  Here, Plaintiff does not even try to do so.

---

[18] "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Mizzaro* v. *Home Depot, Inc*., 544 F.3d 1230, 1238 (11th Cir. 2008).

***Second***, Plaintiff claims that the Defendants ultimately benefited from FTX's collapse. (*See, e.g.*, AC ¶¶ 8, 73).  Even if Plaintiff alleged that Defendants were incentivized to cause FTX's collapse—a different allegation that appears nowhere in the Amended Complaint—it is well-established that generic allegations of a financial incentive are "insufficient to establish scienter." *See FindWhat*, 658 F.3d at 1303 ("reject[ing] the notion that allegations of motive and opportunity to commit fraud, standing alone, are sufficient to establish scienter in this Circuit").[19]

***Finally***, Plaintiff relies on the wholly unsupported and speculative assertions—based on "information and belief"—that Mr. Zhao made his statements intentionally "to hurt the FTX Group" and that he never had any intent to acquire the FTX.com platform.  (*See, e.g.*, AC ¶ 14 ("On information and belief, [Mr. Zhao] publicly disseminated this information on Twitter and other social media platforms to hurt the FTX Group."); *id.* ¶ 53 ("On information and belief, [Mr. Zhao] never had a good faith intention to acquire the FTX Group.")).  This is inadequate.

The PSLRA requires that any claims based on "information and belief" must "state with particularity ***all*** facts on which that belief is formed."  15 U.S.C. § 78u–4(b)(1).  Yet, Plaintiff offers ***nothing***—no statement by Defendants, no confidential witness, no internal communication—that might arguably support his rank speculation about Mr. Zhao's intent or motive, and so fails to plead scienter.  *See Mizzaro*, 544 F.3d at 1247-48 (finding scienter not adequately pleaded where, among other things, "there are no claimed e-mails or letter" or statement

---

[19] *See also Phila. Fin. Mgmt. of S.F., LLC* v. *DJSP Enters., Inc.*, 572 F. App'x 713, 718 (11th Cir. 2014) (rejecting allegations of an alleged "motive to maintain an artificially inflated stock price to minimize [defendant's] own financial losses" because "a personal financial incentive, standing alone, is insufficient to establish a strong inference of actual fraud"); *Climo* v. *Office Depot, Inc.*, 2012 WL 13018593, at *4 (S.D. Fla. 2012) (allegation of motivation to make false positive report of financial performance because it was "losing market share to competitors" was "generic" and "shared by every company" and thus, did "not support a strong inference of scienter").

by any confidential witness that suggested the defendants were aware of the purported fraud); *KLX*, 232 F. Supp. 3d at 1281 (dismissing complaint which "contain[ed] no relevant allegations—no reports (generated when or by whom), no conversations, no tips, no emails, no confidential witness—that indicate or even suggest that Defendants made any statements knowing them to be false").

Instead, Plaintiff appears to rely on a reported "rivalry" that allegedly existed between Mr. Zhao and SBF,[20] as well as the baseless and self-serving statement by SBF that "probably [BHL] never really planned to go through with the deal."[21]  These "wholly speculative" allegations do not meet the "exacting" requirements of pleading scienter.  *See, e.g., FindWhat,* 658 F.3d at 1302-03 (allegations that "it was 'commonly known'" within company that distribution partners were engaged in fraud was "conclusory and plainly lacks sufficient particularity to create a strong inference of scienter"); *Mizzaro*, 544 F.3d at 1248 (holding that third party's "interpretation" of statement said "precious little, if anything, about the knowledge or intent" of the speaker).

Plaintiff's scienter argument also fails because there exists far more compelling explanations for the tweets at issue.  As to the November 6, 2022 Tweet, the Amended Complaint's allegations strongly suggest that Mr. Zhao made his statement with the intent to be transparent to

---

[20] (*See, e.g.,* AC ¶ 7 ("On information and belief, [Mr. Zhao] and Defendants were unhappy with SBF's regulatory efforts."); AC ¶ 38 (referencing an alleged "rivalry" between Mr. Zhao and SBF)).

[21] Plaintiff alleges that it "later became clear that Mr. Zhao never had any intention to go through with the deal to save the FTX Group," citing an unidentified publication appended as Exhibit 3 to the Amended Complaint.  (AC ¶ 72).  Exhibit 3 to the Amended Complaint is partially illegible, but it seems to generally describe the reported rivalry between SBF and Mr. Zhao and purports to quote the New York Times quoting SBF as saying: "I shouldn't throw stones in a glass house, so I'll hold back a bit . . . Except to say: probably they never really planned to go through with the deal."

the market about Defendants' decision to sell their FTT—a decision they had every right to make regardless of whether such sales might have been expected to move the price of FTT downward. *See Tellabs*, 551 U.S at 324 ("A complaint will survive" dismissal "only if a reasonable person would deem the inference of scienter" from its allegations "*at least as compelling as any opposing inference*"). Given the public reports about FTX pleaded throughout the Amended Complaint, it is far more plausible that Mr. Zhao's statements, and Defendants' decision to sell its remaining FTT holdings, aimed to protect BHL—not to hurt FTX.

As to the November 8, 2022 Tweet, again, the far more compelling inference from the Amended Complaint is that Mr. Zhao responded to FTX Group's request for "help" in good faith—subject to performing full due diligence—but ultimately could not move forward with the acquisition for the reasons BHL publicly stated: "As a result of corporate due diligence, as well as the latest news reports regarding mishandled customer funds and alleged US agency investigations, we have decided that we will not pursue the potential acquisition of FTX.com." (AC Ex. 32 at 1). The Amended Complaint itself pleads that BHL's decision was based on "confidential information" received from the FTX Group in the course of due diligence. (*See* AC ¶ 13 ("On Wednesday, November 9, 2022, BHL—now appearing to be armed with confidential information from the FTX Group—suddenly pulled back, with Mr. Zhao tweeting an emoji putatively expressing regret.")). The more compelling (if not only) inference from the totality of these allegations is that Mr. Zhao's tweets on November 8 and 9, 2022 were true and accurately reflected Defendants' intent at the time they were made, amid a rapidly-changing situation with FTX—dooming Plaintiff's scienter argument. *See, e.g.*, *KLX*, 232 F. Supp. 3d at 1283 ("Together, the non-fraudulent factors are more compelling than the fraudulent ones, and therefore Plaintiffs fail to meet their scienter burden.").

-24-

### D.   Plaintiff Fails to Plead Reliance on the At-Issue Statements

Plaintiff must also plausibly allege that he (and the putative class) reasonably relied on Mr. Zhao's allegedly false or misleading tweets.  Reliance "is an essential element of the § 10(b) private cause of action because proof of reliance ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury."  *Amgen Inc.* v. *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).  "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of [the allegedly false statement] and engaged in a relevant transaction—*e.g.*, purchasing [the company's stock]—based on that specific misrepresentation."  *Halliburton Co.* v. *Erica P. John Fund, Inc.* 573 U.S. 258, 267 (2014).

Plaintiff does not allege that he saw Mr. Zhao's tweets or that he engaged in any transaction based on them—to the contrary, he affirmatively swore that he did not engage in any securities transactions.  *See* Pl. PSLRA Certification (ECF No. 29-4).  That alone defeats his claims.  *See, e.g.*, *Blue Chip Stamps*, 421 U.S. at 735 ("justification" for a securities fraud claim "is absent when there is no actual purchase or sale of securities").  And as to the putative class, Plaintiff's reliance allegations are internally inconsistent.  In some instances, Plaintiff alleges that the at-issue statements induced customers to deposit assets on FTX platforms; in other instances, Plaintiff alleges the at-issue statements caused the market to lose confidence in FTX and sell off FTT.[22]

---

[22] (*Compare* AC ¶ 109 (alleging that Defendants' conduct "induce[d]" customers "to purchase, transact, and/or deposit digital assets with accounts with the FTX Group"); AC ¶ 131 ("Lead Plaintiff and the Class actually and justifiably relied on Defendants' statements in that they deposited, and/or transacted digital assets, with accounts with the FTX Group . . . Lead Plaintiff and the members of the Class transacted, and/or deposited digital assets into accounts with the FTX Group believing that the FTX Platform(s) were stable and secure.") *with* AC ¶ 70 (alleging that Mr. Zhao's tweets "cause[d] the market to lose confidence in FTT and the FTX Group"); AC ¶ 128 ("Defendants made [the at-issue statements] in order to induce lack of confidence in the FTX

These conflicting factual allegations cannot both be true at the same time and should not be credited. *Smith* v. *City of Fort Pierce*, 2018 WL 5787269, *6 (S.D. Fla. 2018) ("A court ruling on a motion to dismiss accepts as true the factual allegations in the complaint, but need not accept factual claims that are internally inconsistent.").[23]

Unable to plead actual reliance, Plaintiff seeks to benefit from two presumptions of reliance permitted under the federal securities law in certain circumstances—yet he is not entitled to either.

***First***, Plaintiff makes reference to the "fraud-on-the-market" presumption (*see, e.g.*, AC ¶ 78), which "allows the reliance element of a Rule 10b-5 claim to be rebuttably presumed, so long as the defendant's fraudulent misstatement was material and the market was informationally efficient." *FindWhat*, 658 F.3d at 1310. To warrant this presumption, a plaintiff must show, among other things, that the security at issue "traded in an efficient market." *Halliburton*, 573 U.S. at 268.

Of the numerous unspecified fiat and cryptocurrency assets allegedly at issue here, Plaintiff only attempts to plead that FTT traded in an efficient market. But Plaintiff ***never alleges that he***

---

Platform(s), and to convince consumers to sell and/or move out all digital assets on the FTX Platform(s)[.]")).

[23] Moreover, even if this Court were to accept Plaintiff's conclusory and conflicting allegations as to what some putative class members may have done in purported reliance on Mr. Zhao's statements (and it should not), it is worth noting that Plaintiff cannot possibly show reliance as to all putative class members. The putative class is defined as any person who invested through an FTX platform "during the time period of volatility ***starting before November 6, 2022***"—*i.e.*, before the at-issue conduct. (AC ¶ 81; AC ¶ 2(iii) ("The time of interest for this action is the roughly five- to six-month period before the collapse of the FTX Group.")). As a matter of law (and common sense), one cannot act in reliance on a statement that has not yet been made. *Cf. Instituto de Prevision Militar* v. *Merrill Lynch & Co.*, 2007 WL 2900318, at *6 (S.D. Fla. Sept. 28, 2007) ("Many of the omissions, alleged by Plaintiff, also occurred ***after*** the investment decision and therefore cannot be a basis for primary liability under § 10(b) and Rule 10b-5."), *aff'd*, 546 F.3d 1340 (11th Cir. 2008)).

***participated in that market and swears that he did not***. *See* Pl. PSLRA Certification (ECF No. 29-4). This alone precludes a fraud-on-the market presumption. *See Hubbard* v. *BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012) (fraud-on-the-market presumption requires "showing that the plaintiff bought the security").

Moreover, even with respect to FTT, Plaintiff's vague references to factors like the number of users of FTX platforms; the trading volume across all assets traded on FTX platforms (including FTT *and* other assets); FTX's revenue; and the alleged "technology savviness" of FTX's clients (*see* AC ¶ 78) do not indicate that the market for FTT (or any other digital asset) was efficient. Rather, courts in this Circuit typically look at the following factors in determining whether a security trades on an efficient market: the trading volume of the at-issue security; analyst coverage of the securities or securities issuer; the existence of market makers and arbitrageurs who trade in the security; and the existence of empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. *See, e.g.*, *Stanaford* v. *Genovese*, 2016 WL 4198146, at *5-6 (S.D. Fla. Mar. 14, 2016) (identifying these factors as those that control the "efficient market" determination and rejecting plaintiff's fraud-on-the-market argument for failure to show market efficiency). Plaintiff does not plead any of this as to FTT, or as to any other asset allegedly at issue.

***Second***, Plaintiff separately claims an entitlement to a "presumption of reliance" under *Affiliated Ute Citizens* v. *United States*, 406 U.S. 128 (1972). (AC ¶ 79). "The Eleventh Circuit has clarified," however, "that *Affiliated Ute* applies only to cases involving primarily a failure to disclose in which defendants who had an affirmative duty to disclose stood mute, leaving plaintiffs absolutely nothing upon which to rely." *In re January 2021 Short Squeeze Trading Litig.*, 2023 WL 9035671, at *22-23 (S.D. Fla. Nov. 13, 2023) (citing *Cavalier Carpets, Inc.* v. *Caylor*, 746

F.2d 749, 755 (11th Cir. 1984)). "[I]n cases alleging affirmative misrepresentations or in those mixing allegations of omissions and misstatements, the *Affiliated Ute* presumption is unavailable." *Id.* But here, the *Affiliated Ute* presumption cannot apply because: (i) Plaintiff concedes Defendants had no "affirmative duty" (AC ¶ 49); and (ii) the only alleged statements at issue are two alleged misrepresentations—not omissions. For each of these reasons, Plaintiff is not entitled to any reliance presumption.

### E.    Plaintiff Fails to Plead Loss Causation

Plaintiff's claims also fail because he does not plead loss causation, *i.e.,* a causal connection between Defendants' allegedly wrongful conduct and Plaintiff's purported harm. To establish loss causation, a plaintiff "must offer proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." *MacPhee*, 73 F.4th at 1241-42; *see also Robbins* v. *Kroger Props., Inc.*, 116 F.3d 1441, 1448 (11th Cir. 1997).[24] At the pleading stage, Plaintiff "must show that the defendant's act was a substantial or significant contributing cause of the loss." *MacPhee*, 73 F.4th at 1242; *see also In re Recoton Corp. Sec. Litig.*, 358 F. Supp. 2d 1130, 1152 (M.D. Fla. 2005) ("relationship between the alleged fraud and the harm caused must be pled").

Here, Plaintiff cannot plead any causal relationship between the two tweets and his purported loss, because it was intervening events—FTX CEO SBF's fraud and misuse of customer assets and the resulting bankruptcy of the FTX Group—that caused any such loss. Indeed, the

---

[24] Notably, here, Plaintiff does not allege a "subsequent decline in value" of the assets at issue. He pleads the opposite, alleging that the assets at issue have increased in value. (*See* AC ¶ 36 ("the value of different cryptocurrencies that were frozen on the FTX Platform(s) is currently three to four times the value compared to November 2022")). He includes this allegation likely because he knows the FTX bankruptcy is currently expected to pay "in full" all customers and general unsecured creditors. *See* Jan. 31, 2024  Hr'g Tr. at 18:11-25, *In re FTX Trading Ltd.*, No. 22-bk-11068 (Bankr. D. Del. Feb. 2, 2024), ECF No. 6908.

Amended Complaint affirmatively pleads that it was the FTX Group's "buy back" of BHL's ownership interest in the FTX Group in 2021—$1.2 billion of which Plaintiff alleges "came directly from customer funds on the FTX Platform"—that "damaged the FTX Group and was a significant factor leading to its bankruptcy."  (AC ¶ 47).  Further, the exhibits to the Amended Complaint describe in detail the fraud at the FTX Group, including SBF's indictment and conviction for his role in it.  (*See* AC ¶ 2 & Ex. 5).  In light of the extensive allegations (including SBF's criminal conviction) revealing the true culprit of FTX's downfall—SBF himself—Plaintiff's "speculative and conclusory" assertion here fails to plead loss causation.[25]

In short, Plaintiff pleads no facts that would show that his alleged losses were caused by Mr. Zhao's tweets as opposed to the intervening events pleaded in the Amended Complaint.  The conclusion that Mr. Zhao's two tweets brought about the "rushed and unprecedented collapse of the FTX Group" (AC ¶ 14)—rather than the massive fraud at FTX alleged throughout the Amended Complaint—is simply implausible.  *See, e.g.*, *City of Warren Gen'l Empls.' Ret. Sys.* v. *Teleperformance SE*, 2024 WL 2320209, at *22 (S.D. Fla. May 22, 2024) (holding that plaintiffs "must allege more than the mere possibility of loss causation" and finding loss causation not pleaded where plaintiff's theory was "certainly *possible*" but "not plausible"); *Jianmen Benlida Printed Circuit Co., Ltd.* v. *Circuitronix, LLC*, 2023 WL 8354939, at *2 (S.D. Fla. Dec. 1, 2023) ("Simply setting forth the mere possibility of loss causation does not come even close to providing

---

[25] *See, e.g., In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1361-62 (N.D. Ga. 2010) ("speculative and conclusory" assertion of loss causation insufficient where complaint failed to "distinguish between any losses caused by Defendants' alleged misrepresentations and the collapse of the mortgage industry as a whole"); *D.E. & J Ltd. P'ship* v. *Conaway*, 284 F. Supp. 2d 719, 754 n.26 (E.D. Mich. 2003) (no loss causation where plaintiffs failed to plead "facts to show that their losses were caused by defendants' alleged misstatements as opposed to intervening events," including the "intervening event" of the company's bankruptcy).

a defendant with fair notice of the grounds for entitlement to relief.").

**F.    There Is No Private Action Under Section 17(a)**

Finally, beyond Plaintiff's failure to plead the elements of his federal securities claims, Plaintiff's Section 17(a) claim also fails for the fundamental reason that Section 17 provides no private cause of action. *Currie* v. *Cayman Res. Corp.*, 835 F.2d 780, 784-785 (11th Cir. 1988) ("[S]ection 17(a) does not imply a private cause of action and . . . the district court correctly dismissed this theory of relief."); *Smith* v. *Smith*, 184 F.R.D. 420, 422 (S.D. Fla. 1998) ("The law in the Eleventh Circuit . . . clearly states there is no private right of action under Section 17.").

**III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA STATUTORY LAW (COUNTS III & IV)**

Plaintiff asserts two statutory claims under California's Unfair Competition Law ("UCL") (Count III) and under the California Corporations Code (Count IV). Each fails as a matter of law.[26]

**A.    Plaintiff Fails To State a Claim Under California's UCL**

To state a claim under California's UCL, a plaintiff must allege that the defendant engaged in unlawful, fraudulent, or unfair business practices that caused a plaintiff to lose "money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17200, 17204. Where, as here, a UCL claim is premised on alleged misrepresentations, a plaintiff must also plead that he actually relied on the statements at issue and suffered economic injury as a result of his reliance.[27]

---

[26] California law governs Plaintiff's state statutory and common law claims. *See Takata Airbag*, 2020 WL 3286821, at *3.

[27] *Doe* v. *SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (California courts require plaintiffs to plead reliance and causation in all UCL claims premised on misrepresentations); *Kwikset Corp.* v. *Superior Ct.*, 246 P.3d 877, 887 (Cal. 2011) ("The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." (*quoting Hall* v. *Time Inc.*, 158 Cal. App. 4th 847, 855 (2008).

A UCL claim sounding in fraud must be pleaded with particularity.[28]

As with his federal securities claims, Plaintiff's UCL claim is premised on the same two tweets, and fails for the same reasons: (i) because the two tweets were not unlawful, unfair, or fraudulent; (ii) because Plaintiff does not allege reliance; and (iii) because Plaintiff does not allege the tweets caused his supposed injuries.

### 1. Plaintiff Fails to Plead that Defendants Engaged in Unlawful, Fraudulent, or Unfair Business Practices

A business practice is "unlawful" if it is forbidden by any law, "be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Ghalehtak* v. *Fay Servicing, LLC,* 304 F. Supp. 3d 877, 890 (N.D. Cal. 2018), *aff'd*, 765 F. App'x 168 (9th Cir. 2019). A business practice is "fraudulent" if a plaintiff alleges fraud "with particularity," "explain[ing] what is false or misleading about the defendant's statement." *Scheibe* v. *Fit Foods Distrib., Inc.*, 2023 WL 7434964, at *3 (S.D. Cal. Nov. 8, 2023). Finally, a business practice is "unfair" when it is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Villali* v. *Chep Servs., LLC*, 2022 WL 3348111, at *9 (E.D. Cal. Aug. 12, 2022). For claims like this one alleging injury to "consumers" (AC ¶¶ 104-113), courts use a "balancing test" to determine whether a challenged practice is unfair that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Epic Games, Inc.* v. *Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 681-82 (2024).

Plaintiff has not satisfied any of these standards. As established above, Plaintiff has not

---

[28] *Kane* v. *Chobani, Inc.*, 2013 WL 5289253, at *7 n.4 (N.D. Cal. Sept. 19, 2013) (Rule 9(b) applied to plaintiffs' UCL claims because the claims were premised on a course of fraudulent conduct); *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (holding Rule 9(b) applied to UCL claims "grounded in fraud" and upholding the dismissal of UCL claims that were not "pleaded with particularity").

pleaded that Defendants violated any law—meaning there is no underlying "unlawful" act. *See Guerra* v. *United Nat'l Foods, Inc.*, 2019 WL 13203781, at \*11 (N.D. Cal. Nov. 8, 2019) (dismissing UCL claim where Plaintiff "failed to allege facts to state a plausible claim for a violation of any predicate statute"). Similarly, the Amended Complaint fails to allege a fraudulent business practice because it fails to allege any false or misleading statement, and even if it had, it fails to allege that any such statement was made with the requisite scienter. *See Balistreri* v. *McCormick & Co.*, 2023 WL 5988600, at \*12 (N.D. Cal. Sept. 13, 2023) (dismissing claims for fraudulent business practices under the UCL where plaintiffs failed to allege a misrepresentation that would have deceived members of the public); *see* Sections II.A, II.C, *supra*.

Finally, Plaintiff fails to adequately allege that Defendants engaged in unfair business practices. He makes only the boilerplate assertion that Mr. Zhao's tweets were "immoral, unethical, [or] unscrupulous." (AC ¶ 109). Courts routinely dismiss UCL claims where, as here, the plaintiff "does not allege any *facts* to support the claim and seems to simply paraphrase the tests identified by the courts." *See, e.g.*, *Villali*, 2022 WL 3348111, at \*9; *Teton Global Invs., LLC* v. *LC Inv. 2010*, 2021 WL 5861565, at \*3 (S.D. Cal. Aug. 11, 2021) (dismissing because "[s]pecific facts must be pled to support a theory of an unfair business practice").

### 2. Plaintiff Fails to Plead that He Relied on the At-Issue Statements or That He Suffered a Loss Caused by His Reliance

A "plaintiff must allege actual reliance in order to have standing to pursue UCL" claims. *Moore* v. *Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020); *Durell* v. *Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363-64 (2010) (reliance required where UCL claims are premised on "misrepresentation and deception"). A UCL plaintiff "must also plead" the existence of "an actual injury or loss caused by that reliance." *Diep* v. *Apple, Inc.*, 2024 WL 1299995, at \*2 (9th Cir. Mar. 27, 2024). Plaintiff pleads neither.

As set forth above in Section II.D, Plaintiff does not allege that he saw the at-issue statements or that he relied on those statements for any purpose. *Hall* v. *Sea World Entm't, Inc.*, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015) (dismissing UCL claims sounding in fraud because the plaintiffs failed to allege they actually saw or read the challenged statements prior to their purchases).[29]   Similarly, Plaintiff does not and cannot allege that Mr. Zhao's two tweets caused any injuries.  Rather, the Amended Complaint alleges that the collapse of FTX—and any resulting injuries—were caused by SBF's fraud.  *See* Section II.E, *supra*.

Because Plaintiff has not pleaded reliance or causation, his UCL claim should be dismissed. *Hall* v. *Time Inc.*, 158 Cal. App. 4th 847, 855-58 (2008) (affirming dismissal of UCL claim where plaintiff failed to plead a causal connection or reliance on the alleged misrepresentation).

## B.   Plaintiff Fails to State a Claim for Secondary Liability Under the California Corporations Code

California Corporations Code Sections 25401 and 25110 are the state equivalents of Section 10(b) of the Exchange Act and Section 12(a) of the Securities Act, respectively.[30]   Section 25401 makes it "unlawful for any person to offer or sell a security in [California], or to buy or offer to buy a security in [California], by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the

---

[29] Plaintiff's assertion that the "market" relied on the at-issue statements does not cure this fatal deficiency.  (*See* AC ¶¶ 65-71 ("There Was Market Reliance on [Mr. Zhao's] Tweets")). California common law does not recognize any market-wide presumption of reliance.  *See Mirkin* v. *Wasserman*, 858 P.2d 568, 570-74 (Cal. 1993) (rejecting application of fraud-on-the-market and *Affiliated Ute* presumptions of reliance to California common law claims).

[30] *See Wong* v. *Tomaszewski*, 2018 WL 4628269, at *5 (E.D. Cal. Sept. 27, 2018) (referring to Cal. Corp. Code § 25110 as the "corresponding state-law statute" to Section 12(a) of the Securities Act"); *Cahill* v. *Edalat*, 2017 WL 2608857, at *5 (C.D. Cal. Feb. 15, 2017) (Cal. Corp. Code § 25504 is "California's equivalent" to Section 10(b) of the Exchange Act).

-33-

statements made . . . not misleading." Cal. Corp. Code § 25401. Section 25110 makes it "unlawful for any person to offer or sell in [California] any security in an issuer transaction [unless it is registered or exempted from registration]." Cal. Corp. Code § 25110.

Plaintiff does not assert that Defendants committed a primary violation of the California Corporations Code. Rather, he asserts that Defendants violated California Corporations Code § 25504.1, which imposes secondary liability on "[a]ny person who materially assists" in someone else's violation of Section 25110 or 25401 "with intent to deceive." Cal. Corp. Code § 25504.1. To state a claim under Section 25504.1, a plaintiff must allege "***with particularity***" (1) a primary securities violation under Section 25110 or 25401; (2) that the defendant "materially assisted with that violation"; and (3) that the defendant "had the requisite intent to defraud." *Guo* v. *Robl*, 2023 WL 2683473, at *6 (C.D. Cal. Mar. 2, 2023). Plaintiff has not pleaded any of these requirements.

***First***, Plaintiff fails to plead the threshold element of a primary violation under Section 25110 or 25401. In fact, the Amended Complaint does not even identify a primary violation that could serve as the basis for his secondary liability claim.[31]

In addition, as required by the text of these statutes, a Section 25110 or Section 25401 violation must involve the offer or sale of a security ***in the state of California***. Both sections also require privity between the alleged violator and the plaintiff. *See Apollo Cap. Fund, LLC* v. *Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 252-53 (2007); *Zakinov* v. *Ripple Labs, Inc.*, 2020 WL 922815, at *16 (N.D. Cal. Feb. 26, 2020) (Section 25110 claims require allegations that "the subject securities were offered or sold in California."). But Plaintiff does not allege any securities

---

[31] The only securities fraud claims Plaintiff even purports to allege are his federal claims against Defendants, which fail for the reasons set forth above, and in any event cannot serve as primary violations supporting Section 25504.1 liability. *See* Sections I.A-I.F.

transaction (registered or unregistered)—much less one in California—and does not allege the requisite privity. *See Doan* v. *Singh*, 2013 WL 3166338, at *8 (E.D. Cal. June 20, 2013) (dismissing Section 25110 claim where plaintiff failed to "identify adequately the security transaction at issue").

**Second**, Plaintiff fails to allege that Defendants "materially assisted" a primary violation. Plaintiff never explains *how* Defendants played *any* role—let alone a "material, facilitating" role— in any purported primary violator's "alleged securities law violation." (*See* AC ¶ 116). As such, Plaintiff fails to "state a cause of action" for secondary liability. *See AREI II Cases*, 216 Cal. App. 4th 1004, 1012 (2013).

**Third**, Plaintiff fails to plead that Defendants acted "with intent to deceive." Cal. Corp. Code § 25504.1. This element requires, among other things, "actual knowledge" of the primary violation. *Markowitz* v. *Diversified Lending Grp., Inc.*, 2010 WL 11507662, at *4 (C.D. Cal. Feb. 26, 2010). But, again, Plaintiff has not identified (let alone adequately pleaded) a primary violation, and so cannot plead Defendants' actual knowledge of one. Moreover, as established in Section II.C, Plaintiff has not adequately alleged that Defendants acted with scienter.[32]

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA COMMON LAW (COUNTS V, VI, VII)

Finally, Plaintiff asserts that Mr. Zhao's tweets constitute intentional and negligent misrepresentations and resulted in unjust enrichment. These common law claims fare no better.

### A. Plaintiff Fails to State a Claim for Intentional Misrepresentation

---

[32] *See Brooks* v. *Tarsadia Hotels*, 2019 WL 2436395, at *14-15 (S.D. Cal. June 11, 2019) (dismissing § 25504.1 claim for failure to plead scienter, as required to show "a violation of § 10(b) and section 25504.1"); *OCG Energy, LLC* v. *Shen*, 2023 WL 2628689, at *7 (C.D. Cal. Jan. 11, 2023) (dismissing § 25504.1 claim where plaintiff's allegations did not permit an inference that defendant held the requisite intent to defraud).

To state a claim for intentional misrepresentation under California law, Plaintiff must allege: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud and induce reliance; (4) justifiable reliance; and (5) damages. *See Engalla* v. *Permanente Medical Group, Inc.*, 938 P.2d 903, 917 (Cal. 1997). For each allegedly false statement, a plaintiff "must set forth what is false or misleading about [the] statement, and why it is false." *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). A claim for intentional misrepresentation must also satisfy Rule 9(b). *Griffin* v. *Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1056 (C.D. Cal. 2015).

Here, Plaintiff's intentional misrepresentation claim fails for many of the same reasons that his federal claims fail. ***First***, he does not adequately allege any false statement. *See* Section II.A; *UMG Recordings, Inc*. v. *Glob. Eagle Entm't, Inc*., 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015) (dismissing intentional misrepresentation claims for "fail[ure] to allege any false representation or promise" where claimants "merely plead" summarily that "representations and promises were false when they were made," which was "insufficient even to satisfy Rule 8(a)").

***Second***, to plead a claim for intentional misrepresentation, Plaintiff must also present "plausible allegations" that Defendants ***knew*** the two tweets were false. *See Yastrab* v. *Apple Inc.*, 173 F. Supp. 3d 972, 981 (N.D. Cal. 2016). Setting aside the fact that the two tweets were neither false nor misleading, Plaintiff's conclusory assertions that Defendants "knew, or recklessly disregarded" the truth (AC ¶¶ 59-61) is insufficient to establish the requisite knowledge of falsity. *See* Section II.C.

***Third***, to state a claim for intentional misrepresentation, a plaintiff must allege that he actually and justifiably relied on the alleged misrepresentations. *Mirkin* v. *Wasserman*, 858 P.2d 568, 570 (Cal. 1993) ("It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation."). Plaintiff

fails to do so.

To allege actual reliance, Plaintiff must plead that "the representation was an immediate cause of [the] conduct" that led to his injury and "that without such representation, he would not, in all reasonable probability, have entered into the contract or other transaction" that caused him harm. *Vardazaryan* v. *Liberty Mutual Fire Ins. Co.*, 2023 WL 8884391, at *6 (C.D. Cal. Nov. 2, 2023) (dismissing negligent misrepresentation claim where plaintiff merely relied on "conclusory allegations" that he "was justified in relying upon" the at-issue representations and which were "contrary to his more detailed allegations that demonstrate his total lack of reliance"). Plaintiff has not alleged he took any action based on a belief in Defendants' statements. *See* Section II.D. Plaintiff's conclusory allegations that he "actually and justifiably relied on Defendants' statements" (AC ¶ 131) "are insufficient." *Vardazaryan*, 2023 WL 8884391, at *6.[33]

## B.      Plaintiff Fails to State a Claim for Negligent Misrepresentation

"The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations."[34] *Cisco Sys., Inc.* v. *STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014). A claim for negligent misrepresentation, however, "does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Id.* In addition, a claim for negligent

---

[33] As with his state statutory claim, Plaintiff's assertions that the "market" relied on the at-issue statements (AC ¶¶ 65-71) do not save his claim. Again, there is no marketwide presumption of reliance under California common law. *See Mirkin*, 858 P.2d at 570-74.

[34] A claim for negligent misrepresentation requires: "an assertion of fact, falsity of that assertion," "the tortfeasor's lack of reasonable grounds for believing the assertion to be true," and "the tortfeasor's intent to induce reliance, justifiable reliance by the person to whom the false assertion of fact was made, and damages." *SI 59 LLC* v. *Variel Warner Ventures, LLC*, 29 Cal. App. 5th 146, 154 (2018).

misrepresentation requires that the defendant owed the plaintiff a legal duty. *Eddy* v. *Sharp*, 199 Cal. App. 3d 858, 864 (1988). As with all of Plaintiff's claims, his negligent misrepresentation claim is subject to the heightened pleading standards of Rule 9(b).[35]

Plaintiff's negligent misrepresentation claim fails for three reasons. ***First***, Plaintiff fails to plead the requisite elements of a false statement and reliance for all of the reasons set out above. *See* Sections II.A, II.D and IV.A. ***Second***, Plaintiff has not pleaded that Defendants made the at-issue statements without reasonable grounds for believing them. *Jager* v. *Davol Inc.*, 2017 WL 696081, at \*6 (C.D. Cal. Feb. 9, 2017) (dismissing claims where defendant's statements were later disproven, but plaintiff failed to allege defendant lacked reasonable ground for believing its claims when originally made). Plaintiff's conclusory allegations that Defendants made the at-issue statements "without reasonable grounds for believing the misrepresented facts to be true" (AC ¶ 49) is not enough, because he was required to allege facts suggesting that "the speaker's belief was unreasonable." *Cutler* v. *Rancher Energy Corp.*, 2014 WL 1153054, at \*9 (C.D. Cal. Mar. 11, 2014) (dismissing claims of negligent misrepresentation when the Plaintiff only pleaded conclusory allegations that Defendant had no reasonable grounds for believing their statements were true). His failure to do so precludes his negligence-based claim. *See Smith* v. *Allstate Co.*, 160 F. Supp. 2d  1150, 1152–54 (S.D. Cal. 2001); *UMG Recordings,* 117 F. Supp. 3d at 1112 ("Counterclaimants plead no facts supporting their bare allegation that plaintiffs 'had no reasonable grounds for believing that [their] representations [concerning intent to perform] were true when made.'").

***Third***, "[a]s with any negligence claim, the tort of negligent misrepresentation requires that

---

[35] *See Griffin* v. *Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1056 (C.D. Cal. 2015) (claims for "negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)").

Plaintiff allege a duty of care." *Plastino* v. *Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1190 (N.D. Cal. 2012); *see also In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 1786290, at *5 (N.D. Cal. Apr. 15, 2024) ("When a claim for negligent misrepresentation is based on an affirmative misrepresentation, the duty at issue is a duty of care.").  Plaintiff does not do so; in fact, he pleads the opposite.  (*See* AC ¶ 49 ("[Mr. Zhao] did not have an affirmative duty to disclose his liquidation of FTT[.]")).  Absent a duty, the claim should be dismissed.  *See, e.g.*, *Hunt* v. *Wells Fargo Bank, NA*, 576 F. App'x 693, 694 (9th Cir. 2014) (affirming dismissal of negligent misrepresentation claim "because [defendant] did not owe [plaintiff] a duty of care").

### C.        Plaintiff Fails To State a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim should be dismissed for multiple reasons.

As a threshold matter, Plaintiff's unjust enrichment claim is facially deficient because Plaintiff purports to bring the claim on behalf of a nationwide class, but fails to identify the relevant state law.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) ("[F]ailure to allege which state law governs a common law claim is grounds for dismissal."); *Scheibe* v. *Livwell Prods., LLC*, 2023 WL 4414580, at *7 (S.D. Cal. July 7, 2023) (dismissing unjust enrichment claim on behalf of nationwide class for failure to identify the applicable law).

To the extent Plaintiff asserts an unjust enrichment claim under California law, the claim is insufficiently pleaded.[36]  To plead the California equivalent of unjust enrichment, *i.e.*, restitution, a plaintiff must allege: (1) the defendant received a benefit at the plaintiff's expense; and (2) legal remedies are inadequate to address the harm.  *MH Pillars Ltd.* v. *Realini*, 277 F. Supp. 3d 1077,

---

[36] While Plaintiff's unjust enrichment claim fails to satisfy even *Iqbal*'s plausibility requirement, it must in fact meet Rule 9(b)'s heightened pleading standard because it sounds in fraud.  *Puri* v. *Khalsa*, 674 F. App'x 679, 687-88 (9th Cir. 2017).

1094 (N.D. Cal. 2017) (under California law, unjust enrichment plaintiff must allege "defendant's receipt of a benefit and . . . unjust retention of that benefit at the plaintiff's expense"); *Day* v. *Advanced Micro Devices, Inc.*, 2023 WL 2347421, at \*1 (N.D. Cal. Mar. 2, 2023) (under California law, unjust enrichment claims "must be pleaded in the alternative, and plaintiffs must allege why legal remedies are inadequate").

Plaintiff has not satisfied either requirement.  He alleges that Defendants received a benefit as a result of (1) BHL selling a portion of its FTT prior to announcing its intent to sell to the market, and (2) the collapse of BHL's competitor, FTX.  (*See* AC ¶¶ 134-35).  But Plaintiff fails to allege any connection to these events, and he played no role in conferring any of the benefits Defendants allegedly received.  Thus, Plaintiff has not alleged "facts demonstrating . . . how ***he*** [allegedly] personally enriched" Defendants.  *Siegler* v. *Curb Call, Inc.*, 2017 WL 6730095, at \*8 (S.D. Cal. Dec. 29, 2017) (dismissing unjust enrichment claim where it was a third party who allegedly conveyed at-issue assets to company and thus that third party—not plaintiff—was "the one that could potentially bring a claim for unjust enrichment against the company").

Similarly, Plaintiff's "unjust enrichment claim must be dismissed because Plaintiff has "not alleged that they lack an adequate remedy at law."  *Rabin* v. *Google LLC*, 2023 WL 4053804, at \*13 (N.D. Cal. June 15, 2023).  To the contrary, Plaintiff has asserted multiple claims that could provide an adequate remedy (*see* Counts I-VI)—if his claims were valid and properly pleaded (which, of course, they are not).

## CONCLUSION

The Amended Complaint should be dismissed in its entirety.

Dated:   July 24, 2024
         Miami, Florida

/s/ *Samson A. Enzer*
Samson A. Enzer (senzer@cahill.com)
Herbert S. Washer (hwasher@cahill.com)
Tammy L. Roy (troy@cahill.com)
Miles C. Wiley (mwiley@cahill.com)
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

*Attorneys for Binance Holdings Limited and Changpeng Zhao*

Aaron S. Weiss (aweiss@carltonfields.com)
**CARLTON FIELDS P.A.**
700 NW 1st Ave., Ste. 1200
Miami, FL 33136
Telephone: 305-530-0050

Benjamin M. Stoll (bstoll@carltonfields.com)
John L. Gibbons (jgibbons@carltonfields.com)
**CARLTON FIELDS P.A.**
1025 Thomas Jefferson St. NW, Ste. 400W
Washington, DC 20007
Telephone: 202-986-8160

*Attorneys for Binance Holdings Limited*

-41-