**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | MDL No. 3076<br><br>Case No. 23-md-03076-KMM |
| THIS DOCUMENT RELATES TO:<br><br>*Lahav et al.* v. *Binance Holdings Limited et al.*,<br>No. 1:24-cv-21421-MOORE | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BINANCE**
**HOLDINGS LIMITED AND CHANGPENG ZHAO'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

Samson A. Enzer
Herbert S. Washer
Tammy L. Roy
Miles C. Wiley
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

*Attorneys for Binance Holdings Limited and Changpeng Zhao*

Aaron S. Weiss
**CARLTON FIELDS P.A.**
700 NW 1st Ave., Ste. 1200
Miami, FL 33136
Telephone: 305-530-0050

Benjamin M. Stoll
John L. Gibbons
**CARLTON FIELDS P.A.**
1025 Thomas Jefferson St. NW, Ste. 400W
Washington, DC 20007
Telephone: 202-986-8160

*Attorneys for Binance Holdings Limited*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER FOREIGN
DEFENDANTS BHL AND MR. ZHAO ................................................................... 2

II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FEDERAL SECURITIES
LAWS (COUNTS I & II) ........................................................................................... 5

A.    Plaintiff Fails to Plead a Misstatement or Omission ........................................ 5

B.    Plaintiff Fails to Plead that Defendants Made Any Statement "In Connection
With" the Purchase or Sale of a Security ......................................................... 7

C.    Plaintiff Fails to Plead a Strong Inference of Scienter ................................... 10

D.    Plaintiff Fails to Plead Reliance ..................................................................... 11

E.    Plaintiff Fails to Plead Loss Causation .......................................................... 13

F.    Plaintiff Fails to Plead Market Manipulation ................................................ 14

G.    Plaintiff Cannot Plead a Claim under Section 17(a) ...................................... 14

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA STATUTORY
LAW (COUNTS III & IV) ...................................................................................... 15

A.    Plaintiff Fails To State a Claim Under California's UCL ............................... 15

B.    Plaintiff Fails to State a Claim for Secondary Liability Under the California
Corporations Code .......................................................................................... 18

IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA COMMON LAW
(COUNTS V, VI, VII) .............................................................................................. 21

A.    Plaintiff Fails to State a Claim for Intentional Misrepresentation or Negligent
Misrepresentation ........................................................................................... 21

B.    Plaintiff Fails To State a Claim for Unjust Enrichment ................................. 23

V.    THIS COURT SHOULD DENY PLAINTIFF'S CONDITIONAL REQUEST FOR
LEAVE TO AMEND .............................................................................................. 24

CONCLUSION ......................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Affiliated Ute Citizens* v. *U.S.*, 406 U.S. 128 (1972)...................................................................11, 13

*Apex Directional Drilling, LLC* v. *SHN Consulting Eng'r & Geologists, Inc.*, 119 F. Supp. 3d 1117 (N.D. Cal. 2015) .............................................................................23

*Astiana* v. *Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .............................................24

*Blixseth* v. *Disilvestri*, 2013 WL 12063940 (S.D. Fla. Jan. 31, 2013) ...........................................4

*Breaux* v. *NCL (Bahamas) Ltd.*, 2021 WL 2637217 (S.D. Fla. Feb. 22, 2021) ............................5

*Chiron Recovery Ctr., LLC* v. *United Healthcare Servs, Inc.*, 438 F. Supp. 3d 1346 (S.D. Fla. 2020) ...........................................................................................................25

*Coast Surgery Ctr.* v. *United Healthcare Ins. Co.*, 2024 WL 650174 (C.D. Cal. Jan. 5, 2024)................................................................................................................24

*Colman* v. *Theranos, Inc.*, 325 F.R.D. 629 (N.D. Cal. 2018) .......................................................18

*Currie* v. *Cayman Res. Corp.*, 835 F.2d 780 (11th Cir. 1988) .....................................................14

*Daimler AG* v. *Bauman*, 571 U.S. 117 (2014).................................................................................3

*Dorman* v. *Aronofsky*, 36 F.4th 1306 (11th Cir. 2022) ...............................................................16

*Elias* v. *Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ..................................15, 17

*Figy* v. *Amy's Kitchen, Inc.*, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013)................................18

*Fuqua* v. *Turner*, 996 F.3d 1140 (11th Cir. 2021)........................................................................5

*Goldberger* v. *Bear, Stearns Co.*, 2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000) .........................10

*GolTV, Inc.* v. *Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301 (S.D. Fla. 2017).................19, 20

*Gonzalez* v. *BAM Trading Services, Inc.*, 2024 WL 4589791 (D.N.J. Oct. 28, 2024)....................3

*Great Fla. Bank* v. *Countrywide Home Loans, Inc.*, 2011 WL 382588 (S.D. Fla. Feb. 3, 2011).....................................................................................................................7

*Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ................................................12

*Haynish* v. *Bank of Am., N.A.*, 284 F. Supp. 3d 1037 (N.D. Cal. 2018) .......................................18

*HomeLight, Inc.* v. *Shkipin*, 2024 WL 940089 (N.D. Cal. Mar. 5, 2024).......................................16

**Page(s)**

*In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262 (S.D. Fla. Sept. 4, 2015)................................................................................................................................9

*In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024)........................................8, 9

*In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. Dec. 22, 2002) .......................10

*In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161 (S.D. Fla. 2022)...........25

*In re January 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231 (S.D. Fla. 2022)...........14

*In re January 2021 Short Squeeze Trading Litig.*, 2023 WL 9035671 (S.D. Fla. Nov. 13, 2023)................................................................................................................................13

*In re Mullen Auto. Sec. Litig.,* 2023 WL 8125447 (C.D. Cal. Sep. 28, 2023) .................................9

*In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...........................................22

*In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291 (S.D. Fla. 2002).........................................7

*In re Wyse Tech. Sec. Litig.*, 744 F. Supp. 207 (N.D. Cal. 1990) ...................................................23

*Jackson* v. *Fischer*, 931 F. Supp. 2d 1049 (N.D. Cal. 2013) ............................................................15

*Jones* v. *Bank of Am., N.A.*, 564 F. App'x 432 (11th Cir. 2014) ....................................................19

*Knepfle* v. *J-Tech Corp.*, 48 F.4th 1282 (11th Cir. 2022) .................................................................4

*Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund* v. *Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014) ....................................................................................................12

*Licht* v. *Watson*, 567 F. App'x 689 (11th Cir. 2014)........................................................................8

*MacPhee* v. *MiMedx Grp., Inc.*, 73 F.4th 1220 (11th Cir. 2023) ...................................................14

*Mazza* v. *Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)..............................................18

*McGee* v. *Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107 (C.D. Cal. Sept. 23, 2014)................................................................................................................................22

*McKally* v. *Perez*, 87 F. Supp. 3d 1310 (S.D. Fla. 2015)..................................................................7

*Menora Mivtachim Ins. Ltd.* v. *Frutarom Indus. Ltd.*, 54 F.4th 82 (2d Cir. 2022) .........................8

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71 (2006) ......................................8

*Miller* v. *Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365 (S.D. Fla. 2019) ................................5

*Moore* v. *Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020)....................................................17

**Page(s)**

*Moss* v. *Kroner*, 197 Cal. App. 4th 860 (Cal. Ct. App. 2011) .........................................................20

*Murphy* v. *F.D.I.C.*, 208 F.3d 959 (11th Cir. 2000) ....................................................................3

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund* v. *Nortel Networks Corp.*, 369 F.3d 27 (2d Cir. 2004)............................................................................................................................9

*Principle Sols. Grp., LLC* v. *Ironshore Indem., Inc.*, 944 F.3d 886 (11th Cir. 2019)..................13

*Quesada* v. *Better Earth, Inc.*, 2024 WL 3890077 (M.D. Fla. Aug. 21, 2024) ..............................4

*Rabin* v. *Google LLC*, 2023 WL 4053804 (N.D. Cal. June 15, 2023) ...........................................24

*RMS Titanic, Inc.* v. *Zaller*, 978 F. Supp. 2d 1275 (N.D. Ga. 2013).............................................4

*Rojas-Lozano* v. *Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..................................17, 18

*Romoff* v. *Gen. Motors LLC*, 574 F. Supp. 3d 782 (S.D. Cal. 2021), *aff'd*, 2023 WL 1097258 (9th Cir. Jan. 30, 2023) ..............................................................................................17

*Rosenberg* v. *Gould*, 554 F.3d 962 (11th Cir. 2009) .....................................................................11

*SEC* v. *Ripple Labs, Inc.*, 682 F. Supp. 3d 308 (S.D.N.Y. 2023) ...................................................8

*Semerenko* v. *Cendant Corp.*, 223 F.3d 165 (3rd Cir. 2000) ..........................................................9

*Siegler* v. *Curb Call, Inc.*, 2017 WL 6730095 (S.D. Cal. Dec. 29, 2017) ....................................24

*Siegmund* v. *Xuelian Bian*, 2018 WL 1611197 (S.D. Fla. Apr. 2, 2018)......................................25

*Small* v. *Fritz Cos., Inc.*, 30 Cal. 4th 167 (2003).............................................................................8

*Smith* v. *Smith*, 184 F.R.D. 420 (S.D. Fla. 1998) ........................................................................14

*Stone* v. *Shafran*, 641 F. Supp. 3d 1344 (S.D. Fla. Nov. 21, 2022) ..............................................5

*Tanne* v. *Autobytel, Inc.*, 226 F.R.D. 659 (C.D. Cal. 2005)..........................................................10

*U.S. ex rel. 84Partners, LLC* v. *Nuflo, Inc.*, 79 F.4th 1353 (11th Cir. 2023) ...............................25

*Universal Health Servs., Inc.* v. *US*, 579 U.S. 176 (2016)...............................................................6

*Veritas Legal Plan, Inc.* v. *Freedom Legal Plans, LLC*, 2023 WL 11802483 (S.D. Fla. Dec. 6, 2023)..................................................................................................................................4

*Wilding* v. *DNC Servs. Corp.*, 941 F.3d 1116 (11th Cir. 2019)......................................................10

*Zelman* v. *JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005) .........................................9

**Page(s)**

**Statutes**

Cal. Corp. Code § 25110 ................................................................................................18

Cal. Corp. Code § 25401 ...........................................................................................15, 19

Cal. Corp. Code § 25504.1 .............................................................................................18

## PRELIMINARY STATEMENT[1]

As described in detail in Defendants' MTD, Plaintiff's Amended Complaint is built on an absurd premise. Despite acknowledging the criminal behavior of FTX insiders that led to FTX's downfall and 25-year prison sentence for its former CEO, Plaintiff asks the Court to accept that two truthful tweets in November 2022 by BHL's then-CEO, Mr. Zhao—published after FTX's collapse began—were the true cause of FTX's collapse. Plaintiff simply does not address this fundamental contradiction. Instead, Plaintiff's Opposition merely rehashes the allegations of the Amended Complaint, impermissibly raises new alleged facts and theories for the first time in the Opposition, and responds to arguments that Defendants simply did not make in their MTD.[2] Indeed, the Opposition largely ignores Defendants' arguments and, where it does purport to respond to Defendants' arguments, relies on inapposite cases or no cases at all. Even worse, at times the Opposition ignores controlling authority that plainly forecloses Plaintiff's arguments. In short, the Opposition fails to rebut Defendants' showing that the claims should be dismissed.

*First*, Plaintiff fails to establish personal jurisdiction over BHL or Mr. Zhao because they are not at home in the United States and do not have the minimum contacts required for specific jurisdiction. In response, Plaintiff argues that the Court can exercise personal jurisdiction over BHL and Mr. Zhao because: they have significant operations in the United States; BHL and the Binance U.S. Defendants are alter egos of Mr. Zhao; BHL and Mr. Zhao have numerous non-suit

---

[1] In this memorandum, abbreviated terms refer to the defined terms in Defendants' Motion to Dismiss (ECF No. 707, "MTD"). "Opposition" and "Opp." refer to Plaintiff's Opposition to BHL and Mr. Zhao's MTD (ECF No. 744). "Motion for Leave" refers to Plaintiff's Opposed Conditional Motion for Leave to File Second Amended Complaint (ECF No. 746). Unless otherwise noted, emphasis is added and internal citations, quotations, and bracketed alterations are omitted.

[2] For example, Plaintiff argues that he sufficiently pleads subject matter jurisdiction (Opp. at 22-23) and materiality (Opp. at 30).

related contacts with the forum; and they have waived their personal jurisdiction arguments. Controlling authorities undermine each of these arguments.

*Second*, Plaintiff does not plausibly allege that either of Mr. Zhao's tweets were false or misleading.  To infer falsity, Plaintiff asks the Court to adopt a twisted reading of the tweets or assume that the statements were half-truths.  These arguments fail.

*Third*, Plaintiff lacks standing to pursue his securities law claims because he did not allege that he traded in securities that were the subject of Defendants' alleged misstatements.  Plaintiff's assertions that he may assert "holder" claims related to instruments that were not the subject of Mr. Zhao's tweets are legally incorrect, and he fails to plead that these instruments were securities.

*Fourth*, Plaintiff fails to allege that Defendants acted with scienter.  In the Opposition, Plaintiff rehashes flawed scienter allegations from his Amended Complaint and points to a series of post-hoc statements that he says show scienter.  But none of these allegations raise, as Rule 9(b) requires, an inference that is at least as compelling as plausible inferences of non-fraudulent intent.[3]

*Finally*, Plaintiff's claims fail for multiple other independent reasons, including that Plaintiff has not properly pleaded reliance, causation, or that Defendants owed Plaintiff any duty.

As set forth below, these deficiencies compel dismissal of all of Plaintiff's claims.

## **ARGUMENT**

## I.    **THIS COURT LACKS PERSONAL JURISDICTION OVER FOREIGN DEFENDANTS BHL AND MR. ZHAO**

Plaintiff fails to allege personal jurisdiction over BHL and Mr. Zhao because they are not at home in the forum, Plaintiff's claims do not arise out of or relate to their contacts with the forum,

---

[3] All of Plaintiff's claims sound in fraud and therefore are subject to the heightened pleading standard of Federal Rule 9(b).  (*See* MTD at 8, 31 n.28, 36, 38, 38 n.35, 39 n.36).

they did not purposefully avail themselves of the forum, and they could not have reasonably anticipated being haled into it. (MTD at 9-12). Nothing in the Opposition changes this analysis.[4]

This Court does not have general jurisdiction over BHL or Mr. Zhao because they are not "at home" in the forum. (MTD at 9-10). Plaintiff asserts that Defendants' operations in the United States create general jurisdiction. (Opp. at 20). But general jurisdiction is appropriate only when a defendant is incorporated or domiciled in the forum, has their principal place of business within the forum, or in "exceptional case[s]" where a corporation's activities in a forum are so substantial that they are at home there. *Daimler AG* v. *Bauman*, 571 U.S. 117, 139 n.19 (2014). Plaintiff does not even attempt to allege any facts that could justify jurisdiction on these bases. *See Gonzalez* v. *BAM Trading Services, Inc.*, 2024 WL 4589791, at *7 (D.N.J. Oct. 28, 2024) (no personal jurisdiction over BHL and Mr. Zhao where plaintiff failed to allege "continuous and systematic" contacts with forum state).

Plaintiff also asserts an "alter ego theory,"[5] arguing that the Court may exercise general jurisdiction here because the Binance U.S. Defendants are subject to general jurisdiction in the United States, and Mr. Zhao allegedly operated and controlled BHL and the Binance U.S. Defendants. (Opp. at 7-9). This argument (advanced without supporting authority) should be rejected. To plead alter ego jurisdiction, a plaintiff must allege (1) domination and control by the non-resident defendant over the resident defendant sufficient to pierce the corporate veil; (2) that the corporate form was for a fraudulent purpose; and (3) that fraudulent purpose harmed the

---

[4] The Court should apply Eleventh Circuit law to its analysis of Defendants' personal jurisdiction challenge, which is grounded in due process protections. *See Murphy* v. *F.D.I.C.*, 208 F.3d 959, 964-66 (11th Cir. 2000) (a "transferee court should apply its own interpretation of federal law").

[5] Plaintiff also asserts that "[t]hese entities are not distinct for purposes of liability, and group pleading is appropriate in this case[.]" (Opp. at 26). This is incorrect and group pleading is inappropriate. *See* ECF No. 708 at 3-4, 9-10, 10 n.6, 14.

plaintiff. *Veritas Legal Plan, Inc.* v. *Freedom Legal Plans, LLC*, 2023 WL 11802483, at *3-4 (S.D. Fla. Dec. 6, 2023); *see also Blixseth* v. *Disilvestri*, 2013 WL 12063940, at *9 (S.D. Fla. Jan. 31, 2013) ("To sufficiently plead the alter ego theory, plaintiff must allege both that the resident corporation was a mere instrumentality of its shareholders, and that the corporation was used for improper conduct"). Also, "[t]he amount of control exercised by the parent must be high and very significant." *Knepfle* v. *J-Tech Corp.*, 48 F.4th 1282, 1292 (11th Cir. 2022). Here, Plaintiff asserts, without elaborating, that Mr. Zhao controlled BHL and the Binance U.S. Defendants. This is insufficient to meet the first element.[6] Furthermore, Plaintiff does not plead facts suggesting a fraudulent purpose, or that it injured him. Plaintiff's "alter ego" argument fails.[7]

Plaintiff also asserts that specific jurisdiction over Mr. Zhao and BHL is appropriate because Mr. Zhao's tweets were "directed at U.S. cryptocurrency users," "aimed at soliciting engagement from U.S. markets," and "aimed at the U.S. cryptocurrency market[.]" (Opp. at 21). But these are conclusory arguments and Plaintiff fails to allege facts in the Amended Complaint suggesting that Mr. Zhao's tweets were tailored to a United States audience. Indeed, he specifically concedes that the tweets were "aimed at cryptocurrency users worldwide[.]" (Opp. at 6). And as Defendants explained, "'courts have uniformly rejected the argument that a tweet, not

---

[6] *See Quesada* v. *Better Earth, Inc.*, 2024 WL 3890077, at *5 (M.D. Fla. Aug. 21, 2024) (allegations that defendant companies were "functionally the same entity" were insufficient to establish alter ego jurisdiction); *RMS Titanic, Inc.* v. *Zaller*, 978 F. Supp. 2d 1275, 1302 n.23 (N.D. Ga. 2013) (plaintiffs' conclusory statements that each of the corporate defendants were a "legal fiction," "failed to adhere to required corporate formalities," "abused the corporate form," and "[did] not maintain any distinctions as to [their] functions and operations" were summary allegations and legal conclusions that did not support an alter ego theory of personal jurisdiction).

[7] Moreover, even if BAM were Mr. Zhao's alter ego, that in itself would not establish jurisdiction over BHL. The jurisdictional contacts of a controlling parent corporation or a dominating individual cannot be imputed to its dominated alter ego. *See RMS Titanic, Inc.*, 978 F. Supp. 2d at 1302 (rejecting argument that a subsidiary corporation would be subject to personal jurisdiction because the controlling parent is subject to personal jurisdiction).

specifically directed to a forum state, is a sufficient minimum contact to confer personal jurisdiction under the Due Process Clause.'" (MTD at 11 (quoting *Miller* v. *Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365 (S.D. Fla. 2019))).

Plaintiff further alleges that various non-suit related contacts—including litigation in the United States, plea agreements in unrelated cases, staff in the forum, and solicitation of users in the forum—create personal jurisdiction over Mr. Zhao and BHL. (Opp. at 6, 21). This is incorrect. Only suit-related contacts are relevant for the personal jurisdiction analysis. *See Stone* v. *Shafran*, 641 F. Supp. 3d 1344, 1361 (S.D. Fla. Nov. 21, 2022) ("For a defendant to have sufficient minimum contacts with a forum, the defendant's suit-related conduct must create a substantial connection with the forum state"). To the extent these alleged contacts connect BHL and Mr. Zhao to the United States, they are not related to this suit and therefore do not qualify as minimum contacts.

Finally, Defendants have not waived their personal jurisdiction defenses. Waiving service of process does not waive personal-jurisdiction objections. *Breaux* v. *NCL (Bahamas) Ltd.*, 2021 WL 2637217, at *3 (S.D. Fla. Feb. 22, 2021). Waiver arises when a party "fails to raise objections in its pre-answer motion to dismiss." *Fuqua* v. *Turner*, 996 F.3d 1140, 1154 (11th Cir. 2021). Defendants raised their personal jurisdiction defenses in their pre-answer MTD.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FEDERAL SECURITIES LAWS (COUNTS I & II)

Plaintiff's Amended Complaint fails to state any federal securities claims. (MTD at 12-30). And his scattershot Opposition does not salvage any of them.

### A. Plaintiff Fails to Plead a Misstatement or Omission

Plaintiff fails to sufficiently plead a misstatement or omission because the statements he identifies as misstatements—Mr. Zhao's November 6th Tweet and November 8th Tweet—are

neither false nor misleading.  (MTD at 13-17).  Plaintiff argues that the statements are actionable "half-truths," and attempts to reframe them as having misled consumers about the timing of BHL's decision to liquidate its FTT holdings, and that BHL would rescue FTX.  (Opp. at 10).

"Half-truths" are actionable when they "omit[] critical qualifying information" necessary to make them not misleading.  *Universal Health Servs., Inc.* v. *US*, 579 U.S. 176, 188 (2016).  Plaintiff's proposed reframing does not make either of the tweets actionable.  Plaintiff challenges Mr. Zhao's November 6th Tweet—that "[d]ue to recent revelations that have came [sic] to light, we have decided to liquidate any remaining FTT on our books"—as misleadingly implying that BHL "had yet to begin selling its FTT holdings."  (Opp. at 9-10).  This argument fails for two reasons.  First, Plaintiff's strained reading tortures the tweet's plain language, which accurately implies that some (or even nearly all) FTT was already sold—that is exactly what "any remaining" signifies.  Indeed, just two hours later Mr. Zhao confirmed that BHL made a large sale of FTT the day before.  (AC ¶ 46).  Second, the use of "decided" in the past tense accurately states that, prior to the tweet, BHL had decided to liquidate FTT holdings.  Plaintiff's attempt to manufacture a case by twisting Mr. Zhao's words falls short.  There was nothing false or misleading about the November 6th Tweet.

Plaintiff's challenge to the November 8th Tweet fares no better.  Mr. Zhao wrote: "This afternoon, FTX asked for our help.  There is a significant liquidity crunch.  To protect users, we signed a non-binding [letter of intent], intending to fully acquire FTX.com and help cover the liquidity crunch.  We will be conducting a full [due diligence] in the coming days."  (AC ¶ 53).  Plaintiff claims this tweet is actionable because, based only on Plaintiff's unsupported "information and belief," Mr. Zhao purportedly never had a good faith intention to acquire FTX and thus "created a false impression."  (*Id.*; *see also* Opp. at 10-11, 38).  Plaintiff's conjecture

about Mr. Zhao's supposed intent comes nowhere close to stating a claim.  *See Great Fla. Bank* v. *Countrywide Home Loans, Inc.*, 2011 WL 382588, at *5-6 (S.D. Fla. Feb. 3, 2011) (dismissing fraud claim where plaintiff failed to plead facts showing defendant's "specific knowledge" that statements were false); *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1300-01 (S.D. Fla. 2002) ("on information and belief" allegations were insufficient to allege why the challenged statements were misleading).[8]

### B.   Plaintiff Fails to Plead that Defendants Made Any Statement "In Connection With" the Purchase or Sale of a Security

Plaintiff has not satisfied the requirement that he demonstrate the alleged misstatements were made in connection with the purchase or sale of securities because Plaintiff's own allegations confirm (i) there was no security at issue; (ii) Plaintiff did not purchase or sell anything; and (iii) Mr. Zhao's statements were not about the unidentified "cryptocurrencies" Plaintiff held.  (MTD at 17-20; ECF No. 29-4 ¶ 4 (Plaintiff "made no transactions during the class period in the . . . securities" at issue)).  In response, Plaintiff makes four arguments, none of which are availing.

*First*, Plaintiff's conclusory statements that FTT and other cryptocurrencies traded on FTX were "securities" does not change anything.  (Opp. at 32-33).  Plaintiff admits he did not trade FTT.  As to other cryptocurrencies traded on FTX, Plaintiff now alleges for the first time that he sold a digital token, "XRP," for a stablecoin, "USDT."  (Opp. at 39).  Even if the Court were to consider these brand-new allegations—and it should not[9]—Plaintiff has not alleged facts sufficient

---

[8] Plaintiff acknowledges that Mr. Zhao included "cautionary language" in his Tweets but argues that it should not shield him from liability because Mr. Zhao failed to disclose that he never intended to rescue FTX and that his true motivation was to harm it.  (Opp. at 30).  There is nothing in the Amended Complaint beyond Plaintiff's speculation to support this theory.  This is also not a situation where cautionary language was deployed to mask known, material, adverse facts.  Rather, Mr. Zhao truthfully explained that due diligence was required before any acquisition.

[9] "[A] complaint may not be amended by briefs in opposition to a motion to dismiss."  *McKally* v.

to plead that XRP or USDT were securities under the controlling *Howey* test. (*See* MTD at 18).[10]

*Second*, Plaintiff claims that he satisfies the purchase-or-sale requirement because the Supreme Court expanded the scope of standing to allow Section 10(b) claims by mere "holders" as well.[11] (Opp. at 23-24 (citing *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U.S. 71, 85 (2006))). Plaintiff is wrong. *Dabit* reaffirmed *Blue Chip's* "purchase or sale" requirement for a private Section 10(b) claim, like Plaintiff's claims, and then held that preemption under a different statute, the Securities Litigation Uniform Standards Act, applied not just to "purchasers or sellers" but also to holder classes. 547 U.S. at 80, 89. *Dabit* does not expand the scope of potential plaintiffs in a securities fraud action, and mere "holders," like Plaintiff, do not have standing. Indeed, federal courts unanimously continue to apply the *Blue Chip Stamps* "purchase or sale" standing rule. *See, e.g.*, *Licht* v. *Watson*, 567 F. App'x 689, 691 (11th Cir. 2014); *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1185 (9th Cir. 2024); *Menora Mivtachim Ins. Ltd.* v. *Frutarom Indus. Ltd.*, 54 F.4th 82, 86 (2d Cir. 2022).

*Third*, relying on overruled district court decisions within the Ninth Circuit, Plaintiff asserts that he has standing because Rule 10b-5 does not require a link between the statement and the securities a plaintiff traded. (Opp. at 33-34). Wrong. Contrary to Plaintiff's argument, numerous

---

*Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015).

[10] Public sales of XRP that occur "on digital asset exchanges"—like Plaintiff's transactions—also do "not constitute the offer and sale of investment contracts" and are therefore not securities transactions. *SEC* v. *Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 328-330 (S.D.N.Y. 2023).

[11] Plaintiff also alleges he has standing to bring his misrepresentation claims because California courts allow for holder claims. (*See* Opp. at 24 (citing *Small* v. *Fritz Cos., Inc.*, 30 Cal. 4th 167, 171 (2003)). But the California Supreme Court made clear that "[i]n a holder's action a plaintiff must allege specific reliance on the defendant's representation" and "such persons [who cannot allege specific reliance] cannot bring individual or class actions for fraud or misrepresentation." *Small*, 30 Cal. 4th at 184-85. Here, Plaintiff pleads no reliance, let alone specific reliance, and therefore has no standing. *See infra* Section II.D.

courts throughout the country have held that only plaintiffs trading in the security about which the alleged misrepresentations were made have standing to pursue 10(b) claims.  *See, e.g.*, *Ontario Pub. Serv. Emps. Union Pension Tr. Fund* v. *Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004) ("Stockholders do not have standing to sue . . . when the company whose stock they purchased is negatively impacted by the material misstatement of another company").  Plaintiff argues that the *Nortel* court's approach is not widely accepted and cites two district court cases that attempted to distinguish *Nortel*.  (Opp. at 34 (citing *In re Mullen Auto. Sec. Litig.*, 2023 WL 8125447 (C.D. Cal. Sep. 28, 2023)); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956 (N.D. Cal. 2005))).  But those cases are now bad law.  *See CCIV*, 110 F.4th at 1185 (applying the *Nortel* "bright-line rule" that Section 10(b) standing is limited "to purchasers and sellers of the security about which the alleged misrepresentations were made").  Although the Eleventh Circuit has not yet weighed in, this Court should follow the well-reasoned opinions of the Second and Ninth Circuits and hold that Plaintiff lacks standing because Plaintiff has not alleged a connection between his alleged transactions and the statements at issue.[12]  *See In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, 2015 WL 12001262, at \*4 (S.D. Fla. Sept. 4, 2015) (applying *Nortel*).

*Finally*, Plaintiff argues that his lack of equity ownership in the FTX Group does not bar his claims, because he may assert them on behalf of other named plaintiffs in the MDL.  (Opp. at

---

[12] Plaintiff also cites *Semerenko* v. *Cendant Corp.*, 223 F.3d 165 (3rd Cir. 2000).  As the *Nortel* court explained, "the opinion never explicitly addressed the standing requirement of Rule 10b–5, and this limits its persuasiveness." *Nortel*, 369 F.3d at 33.  Moreover, *Semerenko* is readily distinguishable.  In *Semerenko*, investors in a target of a tender offer sued the potential acquirer after the acquirer allegedly made a series of misstatements about its financial condition and desire to complete the tender offer.  The alleged misstatements "raise[d] the public's interest" in the target's stock, and it was "possible that members of the Class would not have purchased shares of [the target's] stock had they been unable to exchange them for shares of [the defendant]."  223 F.3d at 169-80.  Here, the connection between Mr. Zhao's alleged misstatements and the purported securities at issue is nothing like the merger context analyzed in *Semerenko*.

34-35). Again, he is wrong. It is well-established that "[a]t least one plaintiff must have standing to seek each form of relief requested" and "one named plaintiff for each proposed class needs to have standing for a particular claim to advance." *Wilding* v. *DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019).[13]

### C.     Plaintiff Fails to Plead a Strong Inference of Scienter

Plaintiff has failed to plead a strong inference of scienter because the reasonable inferences opposing scienter are at least as compelling as—if not far more compelling than—the fraudulent inferences Plaintiff advances. (MTD at 20-25). The financial benefits that BHL may have experienced from FTX's demise and any rivalries between the two companies are insufficient to create a strong inference of scienter here—particularly in light of the competing inferences that BHL acted transparently and reasonably by announcing its decision to sell FTT and declining to further entangle itself with FTX once the severity of the situation became clear. (MTD at 23).

In his Opposition, Plaintiff offers up a hodgepodge of arguments that do nothing to weaken these competing non-fraud inferences and ultimately boil down to rank speculation that Mr. Zhao wanted to destroy the FTX Group. For example, Plaintiff lumps together a handful of tweets—including Mr. Zhao's purported acknowledgement that his tweet about BHL liquidating its holdings of FTT may have been the proverbial "straw that broke [FTX's] back," his public comments on "whale alerts," and his previous criticism of Elon Musk's "market-moving" tweets—and says this amounts to scienter. (Opp. at 31). Plaintiff also asserts without support that BHL's

---

[13] Plaintiff cites many cases in his Opposition that are fully in accord and undermine his argument. *See Tanne* v. *Autobytel, Inc.*, 226 F.R.D. 659, 669 (C.D. Cal. 2005) (class may pursue a claim where at least one named plaintiff has standing); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. Dec. 22, 2002) (named plaintiffs must have standing); *Goldberger* v. *Bear, Stearns Co.*, 2000 WL 1886605, at *1 n.1 (S.D.N.Y. Dec. 28, 2000) (noting serious question of "whether plaintiffs who purchased manipulated securities through one brokerage house can represent a class of plaintiffs who purchased different securities through different . . . brokers").

sales of FTT in July and November 2022 were "intentionally timed" to "trigger market volatility, causing a bank run on FTX and leading to its collapse" and that Mr. Zhao's decision to not pursue alternative proposals by FTX "demonstrat[ed] his intent to cause the downfall of a key competitor." (Opp. at 31). But Plaintiff never articulates *how* these supposed facts give rise to an inference of scienter, let alone an inference that is more compelling than non-fraud explanations. *See Rosenberg* v. *Gould*, 554 F.3d 962, 965 (11th Cir. 2009) ("An inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."). The far more likely inferences to be drawn from the totality of Plaintiff's allegations are that BHL acted transparently by announcing that it had decided to sell FTT and, although BHL considered acquiring FTX (subject to due diligence), BHL could not move forward because the situation was too dire for BHL to fix.

### D.      Plaintiff Fails to Plead Reliance

Plaintiff has not alleged that he relied on any misstatements because he does not allege that he saw Mr. Zhao's tweets or that he engaged in any securities transactions based on them.[14] (MTD at 25). Also, the allegations of reliance by the putative class are internally inconsistent, alleging that Mr. Zhao's purported misstatements caused class members to deposit *and* withdraw assets from FTX. (MTD at 25-26). The fraud-on-the-market theory and *Affiliated Ute* presumption also do not apply here because Plaintiff does not allege that he traded securities in an efficient market, Defendants did not owe Plaintiff any duties, and the alleged fraud concerns misstatements, not

---

[14] Further, Plaintiff alleges that on Nov. 9, 2022 he sold "XRP in response to CZ's tweets" (Opp. at 4), but he does not allege that this was before BHL and Mr. Zhao confirmed that day that the acquisition would not be moving forward. (*See* MTD at 7). This is insufficient to allege that Plaintiff took action in reliance on the November 6th and November 8th Tweets.

omissions.  (MTD at 26-28).  Plaintiff's arguments in response do not change this analysis.[15]

*First*, Plaintiff argues that he sold XRP and bought USDT in response to Mr. Zhao's tweets. (Opp. at 4).  But this is irrelevant.  Even if the Court could consider these allegations,[16] Mr. Zhao did not make statements about XRP or USDT, and thus the tweets could not have been the basis for Plaintiff's decisions regarding those tokens.  *See Halliburton Co.* v. *Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) ("[A] plaintiff can demonstrate reliance . . . by showing that he was aware of [the misstatement] and engaged in a relevant transaction—*e.g.*, purchasing [the security]—based on that specific misrepresentation.").

*Second*, Plaintiff once again argues that he does not need to plead individual reliance because the fraud-on-the-market presumption should apply.  (Opp. at 35-36).  But Plaintiff does not plead sufficient facts to invoke it.  The Amended Complaint references the efficiency of the market for FTT tokens, not the tokens that Plaintiff actually traded.  (AC ¶ 78).  Indeed, Plaintiff's Opposition fails to allege that the securities he now names—XRP and USDT—traded in efficient markets.  Plaintiff's conclusory allegation that all crypto trading on FTX occurred in an efficient market (AC ¶ 78), is insufficient.  *See Loc. 703, I.B. of T. Grocery & Food Emps. Welfare Fund* v. *Regions Fin. Corp.*, 762 F.3d 1248, 1257 (11th Cir. 2014) ("[A]lthough trading on a national exchange may be relevant . . . District Courts should remain focused on the market for the particular stock before them, as *FindWhat* suggests.").[17]

---

[15] Plaintiff argues that the cases cited in Defendants' MTD, involving stocks and misstatements by directors, are inapplicable because this case involves market manipulation by a direct competitor. (Opp. at 39).  Plaintiff cites no support for this proposition because there is none.

[16] The Court should disregard these allegations, which were raised for the first time in Plaintiff's Opposition.  *See supra* n.11.

[17] Plaintiffs' assertion that "investors are presumed to have constructive knowledge of publicly available information" (Opp. at 36) also does not suffice to allege reliance.

Finally, Plaintiff argues that the presumption outlined in *Affiliated Ute Citizens* v. *U.S.,* 406 U.S. 128 (1972) applies because Mr. Zhao's statements were partial disclosures that required the disclosure of all material facts.  (Opp. at 40).  But the presumption does not apply because Mr. Zhao did not have any duty of disclosure and Plaintiff mixes allegations of omissions and misstatements.  *See In re January 2021 Short Squeeze Trading Litig*., 2023 WL 9035671, at \*22-25 (S.D. Fla. Nov. 13, 2023) (*Affiliated Ute* presumption unavailable in cases alleging affirmative misrepresentations or mixed allegations of omissions and misstatements).

### E.    Plaintiff Fails to Plead Loss Causation

Plaintiff has failed to plead loss causation because he has not adequately pled a causal connection between Mr. Zhao's tweets and his purported losses.  The pled events of SBF's fraud and misuse of customer funds, and the bankruptcy this caused, were intervening events that caused Plaintiff's alleged losses.  (MTD at 28-29).  Plaintiff's arguments in his Opposition fall short.

Plaintiff's assertion that SBF's fraud was not the cause of his losses because crypto markets rebounded after FTX's bankruptcy makes no sense.  Equally nonsensical is Plaintiff's claim that the brief temporal gap between Mr. Zhao's tweets and the FTX collapse demonstrates causation.  (Opp. at 41).  Of course, this does not eliminate the causal role that SBF played in destroying FTX, as Plaintiff's own pleading shows.  *Cf. Principle Sols. Grp., LLC* v. *Ironshore Indem., Inc.*, 944 F.3d 886, 892 (11th Cir. 2019) ("In Georgia, a proximate cause is not necessarily the last act or cause, or the nearest act to the injury . . .  Instead, it encompasses all of the natural and probable consequences of an action, unless there is a sufficient and independent intervening cause.").

Plaintiff's next argument, that outcomes can have multiple "but-for" causes, also does not save his securities law claims.  There can be no doubt that SBF's fraud was the primary, if not the sole, cause of FTX's collapse and Plaintiff's alleged injury.  But even accepting Plaintiff's argument that there were multiple causes, Plaintiff simply fails to "show that the defendant's act"

here—Mr. Zhao tweeting about selling FTT and BHL's potential acquisition—"was a substantial or significant contributing cause" of FTX's downfall and Plaintiff's alleged loss.  *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1241-1242 (11th Cir. 2023).

**F.    Plaintiff Fails to Plead Market Manipulation**

Plaintiff has not pled market manipulation because the only "manipulative acts" he alleges are alleged misstatements by Mr. Zhao on Twitter.  (MTD at 12).  These tweets do not amount to market activity, which is required for a market manipulation claim.  *See In re January 2021 Short Squeeze Trading Litig.*, 620 F. Supp. 3d 1231, 1260 (S.D. Fla. 2022) ("Market manipulation and misrepresentation claims differ from one another in several respects[,]" including most notably that a "market manipulation claim arises from market activity, rather than a misrepresentation.").  Even if he had alleged market activity, his claim would still fail because he has not pleaded multiple necessary elements, *see id.*—namely, reliance or an assumption of an efficient market, scienter, and that his alleged losses were in connection with the purchase or sale of securities, as explained *supra*.[18]  Accordingly, Plaintiff has failed to allege market manipulation.

**G.    Plaintiff Cannot Plead a Claim under Section 17(a)**

Finally, Plaintiff's suggestion that he can bring a Section 17(a) claim here because other circuits might allow it does not change this Circuit's binding authority forbidding it.  *See Currie v. Cayman Res. Corp.*, 835 F.2d 780, 784-785 (11th Cir. 1988) ("[S]ection 17(a) does not imply a private cause of action and . . . the district court correctly dismissed this theory of relief."); *Smith v. Smith*, 184 F.R.D. 420, 422 (S.D. Fla. 1998) ("The law in the Eleventh Circuit . . . clearly states there is no private right of action under Section 17.").

---

[18] Additionally, Plaintiff's new "pump and dump" theory makes no sense.  (Opp. at 3).  Plaintiff suggests that Mr. Zhao/BHL "dumped" their FTT before the November 6th Tweet, but never explains how Mr. Zhao ever "pumped" it.

III.     **PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA STATUTORY LAW (COUNTS III & IV)**

   A.     **Plaintiff Fails To State a Claim Under California's UCL**

Plaintiff's UCL claim fails because Plaintiff did not plead that Defendants engaged in any unlawful, fraudulent, or unfair practices; that he relied on the alleged misrepresentations; or that Mr. Zhao's tweets caused his injuries.  (MTD at 30-33).  Plaintiff makes several arguments in response, but each fails to rebut Defendants' showings.

*First*, Plaintiff argues that Mr. Zhao's actions were unlawful under federal securities law and California state law.  (Opp. at 43).  But as set forth in Defendants' MTD (at 12, 30), *supra* Section II, and *infra* Section III.B, Plaintiff fails to allege a securities law violation and thus fails to allege unlawful acts under the UCL.  *See Elias* v. *Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 859 (N.D. Cal. 2012) ("Because the Court finds that Plaintiff did not plausibly allege any statutory violations, it concurrently finds that Plaintiff fails to plausibly allege violation of the unlawful prong of the UCL.").  Plaintiff's argument that Mr. Zhao's "conduct in selling his FTT holdings before making public disclosures" constituted a "primary violation" of California Corporations Code § 25401 (Opp. at 44) is similarly implausible.  As discussed in Section II with respect to Plaintiff's Section 10(b) claim, Plaintiff does not allege any facts showing that Defendants made any material misstatement or omission in connection with the sale of securities.  *See Jackson* v. *Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) (allegations that defendant solicited loans and investments from plaintiff without making disclosures failed to state a § 25401 claim because plaintiff alleged no facts showing that defendants materially assisted in violations of other securities laws, with intent to defraud).  This sale also does not support Plaintiff's UCL claim.

*Second*, Plaintiff argues that Mr. Zhao engaged in an unlawful and unfair practice by engaging in two large FTT transactions while making purportedly misleading social media posts.

(Opp. at 43).  This argument also fails.[19]  To start, and as discussed above in Section II and in the MTD (*see* MTD at 24), the tweets were not misleading.  Moreover, Plaintiff also fails to plead facts that suggest that *either* sale was unfair (*i.e.*, immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers) or unlawful (*i.e.*, forbidden by any law).  (*See* MTD at 31).

    *Third*, Plaintiff now asserts that Mr. Zhao engaged in an unfair business practice under the UCL by "us[ing] customer funds to buy back FTT."  (Opp. at 44).  Yet again, this theory is not pled anywhere in Plaintiff's Amended Complaint and should therefore be disregarded.  *See supra* n.11.  It is also unclear what practice Plaintiff alleges harmed him.[20]  To the extent Plaintiff is challenging when BHL sold its equity interest in FTX and FTX allegedly using customer funds to pay BHL, this fails to state a claim.  If anyone harmed Plaintiff in this transaction, it was FTX— who allegedly used the customer funds—not BHL, which would have had no way of knowing how FTX financed the payments.  Additionally, to the extent that Plaintiff bases his UCL unfairness prong claim on the same alleged conduct underlying his deficient fraudulent and unlawful prong claims, he fails to state a claim. *See HomeLight, Inc.* v. *Shkipin*, 2024 WL 940089, at *4 (N.D. Cal. Mar. 5, 2024) (dismissing unfairness claim when it was "based on the same alleged conduct underlying the dismissed unlawful and fraudulent prong claims").

---

[19] In the Amended Complaint, Plaintiff alleged only one sale of FTT, in November 2022.  (AC ¶ 11).  He now asserts, for the first time in his Opposition, that there was an additional sale in July 2022.  (Opp. at 31).  This new theory of multiple FTT transactions is not pled in the Amended Complaint and therefore cannot save Plaintiff's claim.  *See Dorman* v. *Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022) ("[F]acts contained in a motion or brief cannot substitute for missing allegations in the complaint.").

[20] Plaintiff cites Section II(B)-(E) of his brief in support of this argument.  But nothing in these sections describes a transaction where BHL used customer funds to "buy back" FTT.  Indeed, the sections describe BHL *selling* FTT.  For purposes of this claim, Defendants assume that Plaintiff is attempting to describe the "improper use of FTX customer funds to pay off [Mr. Zhao's] *equity* in FTX" (Opp. at 26)—not transactions related to FTT—which Plaintiff says forms the basis for his unjust enrichment claim.

*Fourth*, Plaintiff argues that UCL claims raise questions of fact that preclude early dismissal.  (Opp. at 18 (citing *Moore* v. *Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020))).  But as *Moore* explains, "if common sense would not lead anyone to be misled, then the claim may be disposed of at a motion to dismiss stage." *Id.* at 1018.  Indeed, courts regularly dismiss UCL claims where, as here, the challenged statements are not deceptive on their face. *See Romoff* v. *Gen. Motors LLC*, 574 F. Supp. 3d 782, 788-789 (S.D. Cal. 2021) (granting motion to dismiss UCL claims where the claims relied on dictionary definitions for terms to prove consumer reasonableness), *aff'd*, 2023 WL 1097258 (9th Cir. Jan. 30, 2023); *Elias*, 903 F. Supp. 2d at 855 (dismissing UCL claim where statements did not contain any factual misrepresentations on their face).  Here, there is no plausible reading of Mr. Zhao's tweets other than that they were truthful and not misleading. *See supra* Section II.

*Fifth*, with respect to reliance, Plaintiff argues that actual reliance can be inferred because a presumption of reliance is appropriate when material misrepresentations are pervasively disseminated to potential plaintiffs.  (Opp. at 35, 40).  Although such a presumption may arise in limited circumstances, it is not applicable here.  Plaintiff must plead actual reliance, alleging that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Rojas-Lozano* v. *Google, Inc.*, 159 F. Supp. 3d 1101, 1118 (N.D. Cal. 2016) (citing *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009)).  As many courts in California have explained, this means that "a plaintiff must still at a minimum allege that he saw the representation

at issue."[21]  Plaintiff does not and thus fails to plead reliance.[22]

Lastly, Plaintiff asserts that causation is alleged adequately because injuries can have multiple causes.  (Opp. at 34).  Plaintiff ignores the large body of case law holding that a defendant cannot be held liable under the UCL "if he or she would have suffered the same harm whether or not a defendant complied with the law."  *Haynish* v. *Bank of Am., N.A.,* 284 F. Supp. 3d 1037, 1051 (N.D. Cal. 2018) (dismissing UCL claim for failure to establish causation where the but-for cause of plaintiff's injury, foreclosure, was the default on their loan, not any violations by the defendants).  Plaintiff insists that "[a]bsent [Mr. Zhao's] tweets, there was no reason for FTX to declare bankruptcy" (Opp. at 41), but this ignores SBF's historic fraud—the actual but-for cause of the FTX bankruptcy and Plaintiff's injury.  (*See* MTD at 1, n.2).  Plaintiff's claim fails because he does not and cannot allege facts demonstrating that Mr. Zhao's two Tweets caused any injuries or that he would not have been injured absent the statements.

**B.     Plaintiff Fails to State a Claim for Secondary Liability Under the California Corporations Code**

Plaintiff fails to allege a secondary liability claim under Section 25504.1[23] because he does

---

[21] *Figy* v. *Amy's Kitchen, Inc.*, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (dismissing plaintiff's UCL claim where he did not allege actual reliance).  *See also Rojas-Lozano*, 159 F. Supp. 3d at 1114 ("Plaintiff's insistence that she is nonetheless entitled to an inference of reliance is wrong" where she "failed to allege what she saw, what she believed as a result, how knowledge would impact her behavior, or facts that otherwise support a reasonable inference that an omitted fact was material.").  *C.f. Mazza* v. *Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (at class certification there was no presumption of reliance "because it is likely that many class members were never exposed to the allegedly misleading advertisements") (overruled on other grounds); *Colman* v. *Theranos, Inc.*, 325 F.R.D. 629, 642 (N.D. Cal. 2018).

[22] Plaintiff again asserts "market reliance on [Mr. Zhao's] tweets under the fraud on the market theory."  (Opp. at 4).  But California common law does not recognize any market-wide presumption of reliance. (MTD at 33, n.29).

[23] To state a § 25504.1 claim, Plaintiff must allege with particularity a primary securities violation of Cal. Corp. Code § 25110 (which, like Section 12(a) of the Securities Act, makes it unlawful to

not allege: the offer or sale of a security in California, a primary violation of Section 25110 or 25401, privity with BHL or Mr. Zhao, that Defendants "materially assisted" a primary violation, or that Defendants acted "with intent to deceive." (MTD at 33-35).

Plaintiff's claim fails because he offers no response to Defendants' argument that he fails to allege a securities transaction *in California*. "When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Jones* v. *Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014); *see also GolTV, Inc.* v. *Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) (same).

Plaintiff asserts that the Amended Complaint pleads a primary violation alleging that Mr. Zhao, acting through a Binance entity, "offloaded his *equity* in the FTX Group in two substantial transactions—one in July and another in November 2022." (Opp. at 44). Plaintiff argues that these transactions establish privity between him and Defendants because Defendants exercised control over FTX and Plaintiff was in direct privity with FTX. These assertions make little sense, and even if this theory had been adequately pled, it fails. For one, Plaintiff groups BHL's sales of its equity position in FTX (AC ¶¶ 6, 47) and FTT (an FTX-affiliated utility token, *see* AC ¶¶ 6, 11) as sales of "equity in the FTX Group" without any explanation. Indeed, BHL's divestment of its FTX equity stake, which Plaintiff alleges took place in 2021, cannot serve as a primary violation for the putative class claims here.[24] Plaintiff alleges no facts suggesting that there was any manipulation or misrepresentation related to this transaction, or that this transaction had to be

---

sell unregistered securities) or Cal. Corp. Code § 25401 (which, like Section 10(b) of the Exchange Act, makes it unlawful to buy or sell securities while making material misstatements).

[24] Plaintiff seeks to represent classes of investors with deposits at FTX "during the time period of volatility starting before November 6, 2022 and ending after November 8, 2022." (AC ¶¶ 81-82). A purported primary securities law violation from 2021 is irrelevant to this putative class.

registered.  Plaintiff also fails to allege that BHL's FTT sales were illegal under the securities laws.
As set forth in Section II, Mr. Zhao's tweets regarding BHL's FTT sales were not misleading.  And
Plaintiff does not allege facts sufficient to show that FTT was a security requiring registration.
Additionally, even if Plaintiff adequately alleged that the Defendants sold FTX equity or FTT in a
fraudulent manner, ***Plaintiff did not purchase FTT or FTX equity***.  He has no standing to pursue
claims relating to these transactions and cannot demonstrate the requisite privity.[25]

Regarding material assistance, Plaintiff argues that the other Defendants materially assisted
Mr. Zhao in violation of the securities statutes because "[t]hey facilitated the transactions through
the provision of software and platforms, enabling cryptocurrency transactions in FTT, BUSD, and
fiat currency in exchange for FTX equity."  (Opp. at 45).  This is also not pled in the Amended
Complaint, and would be implausible even if it was pled.  Plaintiff alleges that BHL and Mr. Zhao
sold FTX equity back to FTX.  (AC ¶¶ 47).  Nothing in that allegation suggests BHL or Mr. Zhao
provided platforms or software that allowed for unspecified persons to trade FTT, BUSD, and fiat
currency in exchange for FTX equity.  Nor does Plaintiff explain how providing such software and
platforms would materially assist any alleged fraud relating to BHL's sale of its FTX equity.

Finally, Plaintiff ignores Defendants' argument that actual knowledge of the alleged
primary violation must be shown and therefore waives opposition to it.  *See GolTV, Inc.*, 277 F.
Supp. 3d at 1311 n.7.

---

[25] Plaintiff misrepresents the statements of law in *Moss* v. *Kroner*, 197 Cal. App. 4th 860 (Cal. Ct.
App. 2011).  Plaintiff cites it for the proposition that "California law permits indirect privity, where
'[t]he person alleged to be controlled by the defendants must be alleged to be in privity with the
plaintiffs.'"  (Opp. at 44, citing *Moss*, 197 Cal. App. 4th at 875).  This language is about § 25504,
another secondary liability statute, not § 25401 as Plaintiff implies. Indeed, the *Moss* Court
explicitly held that secondary liability may exist under §§ 25504 and 25504.1 "as long as primary
liability is stated or established with the privity required by section 25501 and a violation of section
25401." *Moss*, 197 Cal. App. 4th at 875.  Plaintiff has not established any primary liability here,
and therefore may not argue secondary liability in the guise of "indirect privity" here.

IV.     **PLAINTIFF FAILS TO STATE A CLAIM UNDER CALIFORNIA COMMON LAW (COUNTS V, VI, VII)**

    A.     **Plaintiff Fails to State a Claim for Intentional Misrepresentation or Negligent Misrepresentation**

Plaintiff also fails to rebut Defendants' arguments that his claims for intentional misrepresentation and negligent misrepresentation fail for many of the same reasons his federal claims fail.  He does not adequately allege: false statements (*see* MTD at 36, *supra* Section II); that the Defendants acted with the requisite scienter—*i.e.* with the knowledge that the alleged misstatements were false for the intentional misrepresentation claim (*see* MTD at 36, *supra* Section II); without reasonable grounds for believing the statements were true for the negligent misrepresentation claim (MTD at 37-38); or that he actually and justifiably relied on the alleged misrepresentation (MTD at 36-37; *supra* Section II).  Plaintiff also fails to allege that Defendants owed him a duty of care, a necessary element of the negligent misrepresentation claim.

In his Opposition, Plaintiff recycles the same arguments that do not save his securities law claims.  For example, Plaintiff asserts that Mr. Zhao's statements were half-truths.  As set forth above in Section II and in Defendants' MTD (at 2, 3, 14-17), Mr. Zhao's statements were accurate and not misleading.[26]  Plaintiff also asserts that the short period of diligence BHL conducted with respect to the potential acquisition of FTX implies that BHL never intended to acquire FTX and that Mr. Zhao acted with scienter in making his statements.  But as discussed above, an equally (if not more) plausible reading is that BHL learned facts about FTX's dire financial situation during diligence and decided to walk away.  Because such a plausible, non-fraud explanation exists,

---

[26] Because Mr. Zhao's statements were accurate and not misleading, they did not create a duty to make additional disclosures regarding BHL's FTT transactions or potential acquisition of FTX. (Opp. at 25 ("Once [Mr. Zhao] made initial disclosures, he was obligated to provide the complete truth.")).

Plaintiff has not met his burden to plead falsity or scienter with particularity. *See McGee* v. *Am. Oriental Bioengineering, Inc.*, 2014 WL 12586107, at *17 (C.D. Cal. Sept. 23, 2014) (scienter and falsity not alleged where plausible, non-fraud explanations for defendants' conduct existed).

Plaintiff also asserts that he has sufficiently alleged falsity and scienter because "[Mr. Zhao], SBF, and independent cryptocurrency experts have acknowledged that [Mr. Zhao's] tweets were a direct catalyst for FTX's bankruptcy." (Opp. at 46 (citing AC ¶¶ 50-51, Ex. 3, 25, 30, 31, 51)). But whether or not Mr. Zhao, SBF, or independent cryptocurrency experts believe that Mr. Zhao's tweets had any impact on FTX is entirely irrelevant to whether or not the statements were true. It is also irrelevant as to whether or not Mr. Zhao made the statements with severe recklessness or with an intent to deceive, manipulate, or defraud at the time.[27] *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1229 (S.D. Cal. 2010) (third-party statements had no impact on question of statement's falsity).[28]

Finally, Plaintiff asserts that Defendants owed him a duty of care because Plaintiff and the class "fall within the category of persons [Mr. Zhao] and the Defendants intended to influence through their misstatements" while knowing "with substantial certainty that they would rely on these statements." (Opp. at 45).[29] Although a duty of care may flow to "a specific class of persons

---

[27] The statements in question show on their face that they have nothing to do with the tweets' truthfulness or lack thereof. (*See, e.g.* AC ¶ 42 (quoting an interview where Mr. Zhao stated: "I actually reflect on the FTX situation and I kind of blame myself for tweeting that too late. As an industry, we let FTX get too big before we started questioning some of these things.")).

[28] Furthermore, as discussed above in Section II, scienter also cannot be inferred from any alleged rivalry with SBF (AC ¶¶ 2, 37-42) or from post-event comments "lacking remorse" (AC ¶ 42). It also cannot be inferred from Mr. Zhao's demonstrated knowledge of the impact on cryptocurrency users (AC ¶¶ 58-64), or Mr. Zhao's awareness of his position as an industry leader (AC ¶¶ 61, 65, Ex. 18). Plaintiff's allegations of actual and justifiable reliance are insufficient to allege claims for the same reasons set forth above in Section II. (*See also* MTD at 36-37).

[29] To the extent Plaintiff argues a duty of care arose from equity ownership in FTX (Opp. at 5, 47-

involved in a transaction that the defendant supplier of information intends the information to influence," liability may only be imposed upon "a defendant who supplies information with the intent to **influence a defined and limited group** of prospective plaintiffs." *Apex Directional Drilling, LLC* v. *SHN Consulting Eng'r & Geologists, Inc.*, 119 F. Supp. 3d 1117, 1126 (N.D. Cal. 2015). Plaintiff's argument manufactures a duty for Defendants that would apply to anyone who viewed Mr. Zhao's tweets—a potentially unlimited universe of claimants that have not been alleged to rely on the tweets. This is not the law. *See In re Wyse Tech. Sec. Litig.*, 744 F. Supp. 207, 209 (N.D. Cal. 1990) (no duty of care to plaintiffs who were open-market purchasers of stock who did not claim to have received or relied on the statements at issue). Moreover, Plaintiff does not allege any facts suggesting Mr. Zhao intended to influence Plaintiff or anyone else.

### B.    Plaintiff Fails To State a Claim for Unjust Enrichment

Plaintiff's claim for unjust enrichment fails because he does not identify the relevant state law, and, to the extent the claim is asserted under California law, he fails to allege that Defendants received a benefit at his expense or that legal remedies are inadequate. (MTD at 39-40). In response, Plaintiff asserts that California law applies and that Defendants were unjustly enriched because FTX allegedly used customer assets to repurchase BHL's equity stake in FTX. (Opp. at 26, 47-48).[30] This does not save his claim.

First, Plaintiff has not conferred any benefit on Defendants. Indeed, Plaintiff admits that he only "effectively" conferred a benefit on Defendants. (Opp. at 47). Such an indirect conferral

---

48), such an argument must be rejected. At the time Mr. Zhao made the challenged statements in November 2022, BHL had divested from its relevant equity interest in FTX. (AC ¶ 11).

[30] Plaintiff's allegation that FTX repurchased BHL's equity stake in FTX using customer funds obviously contradicts his assertion that SBF's fraud played no role in FTX's downfall.

is not sufficient to state a claim.[31]  A plaintiff must plead that he conferred a ***direct benefit*** on the defendant.  *See Coast Surgery Ctr.* v. *United Healthcare Ins. Co.*, 2024 WL 650174, at *4 (C.D. Cal. Jan. 5, 2024) (healthcare provider's unjust enrichment claim against an insurer that allegedly underpaid claims failed because the provider conferred a benefit on patients (the insurer's members), not the insurer itself, and this did not qualify as a "direct benefit" to the defendant).

Second, Plaintiff argues that the duplicative remedy principle set forth in *Rabin* v. *Google LLC,* 2023 WL 4053804 (N.D. Cal. June 15, 2023) is inapplicable here.  (Opp. at 48).  But this is a non-sequitur.  Plaintiff's claim does not fail because it is duplicative of another claim—it fails because he does not allege that he lacks an adequate remedy at law.  "[A] plaintiff seeking equitable relief must, at a minimum, allege that he lacks adequate remedies at law."  *Id.* at *14 (dismissing restitution claim where plaintiffs "fail[ed] to plead any facts as to why the damages they seek under their breach of contract claim is an inadequate remedy").  Here, Plaintiff has brought multiple claims that could provide an adequate remedy (*see* AC Counts I-VI) if his claims had been properly pled, and accordingly does not and cannot plead that legal remedies would be inadequate.

## V.     THIS COURT SHOULD DENY PLAINTIFF'S CONDITIONAL REQUEST FOR LEAVE TO AMEND

The Court should reject Plaintiff's request for leave to further amend his Amended

---

[31] *Astiana* v. *Hain Celestial Grp.*, *Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (Opp. at 47) is distinguishable.  Unlike the Plaintiff here, the plaintiffs in *Astiana* conferred a direct benefit on the defendants by purchasing the defendants' products while relying on allegedly false product labels. *Id.* at 756, 762.  Furthermore, Plaintiff's attempt to distinguish *Siegler* v. *Curb Call, Inc.*, 2017 WL 6730095, at *8 (S.D. Cal. Dec. 29, 2017) (Opp. at 47-48) is unpersuasive.  In *Siegler*, the plaintiff was a shareholder in a company that conveyed certain assets to the defendant in exchange for payments to the shareholders of the conveying company.  *Id.* at *1.  The court held that the shareholder plaintiff did not state a claim for unjust enrichment because the conveying company, not the plaintiff, enriched the defendant.  *Id.* at *8.  The same conclusion follows here.  If any benefit was conveyed to BHL, it was from FTX.  Plaintiff does not and cannot allege that he personally enriched BHL.

Complaint.  (Opp. at 48; *see also* Motion for Leave).  Plaintiff asserts that he "must be given ***at least one chance to amend*** the complaint before the district court dismisses the action with prejudice." (Opp. at 48).  But Plaintiff has already amended his complaint.  A court may dismiss a case with prejudice "after a plaintiff has had an opportunity to amend." *Chiron Recovery Ctr., LLC* v. *United Healthcare Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020).

Plaintiff also offers no reason to think that a second amended complaint would be "more carefully drafted" than his previous complaints.  (Opp. at 48).  Indeed, Plaintiff fails to attach a copy of the proposed amendment or to set forth the substance of any proposed amended pleading. *See U.S. ex rel. 84Partners, LLC* v. *Nuflo, Inc.*, 79 F.4th 1353, 1363 (11th Cir. 2023) ("A plaintiff who moves for leave to amend a complaint must either attach a copy of the proposed amendment to the motion or set forth the substance thereof.").  The Motion for Leave offers no explanation, as it is "only made conditionally" in case this Court "agree[s] with Defendants at least in part." Motion for Leave at 2, 3.  The Motion for Leave is little more than an afterthought that Plaintiff tacks to the end of his Opposition.  It falls far short of adequately requesting leave to amend.  *See In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1204 (S.D. Fla. 2022) ("Plaintiffs' failure to explain how next time will be different does not inspire confidence in their ability to state a claim").

In any event, amendment would be futile.  Even if this Court were to accept as true all of the documents and facts Plaintiff raises for the first time in his Opposition, none of them would change the fundamental insufficiency of Plaintiff's arguments and pleadings.  *See Siegmund* v. *Xuelian Bian*, 2018 WL 1611197, at *10. (S.D. Fla. Apr. 2, 2018) (amendment is futile when new alleged facts "consistent with the challenged pleading could not possibly cure the deficiency").

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice.

Dated:   October 30, 2024
          Miami, Florida

/s/ *Samson A. Enzer*
Samson A. Enzer (senzer@cahill.com)
Herbert S. Washer (hwasher@cahill.com)
Tammy L. Roy (troy@cahill.com)
Miles C. Wiley (mwiley@cahill.com)
**CAHILL GORDON & REINDEL LLP**
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3000

*Attorneys for Binance Holdings Limited and
Changpeng Zhao*

Aaron S. Weiss (aweiss@carltonfields.com)
**CARLTON FIELDS P.A.**
700 NW 1st Ave., Ste. 1200
Miami, FL 33136
Telephone: 305-530-0050

Benjamin M. Stoll (bstoll@carltonfields.com)
John L. Gibbons (jgibbons@carltonfields.com)
**CARLTON FIELDS P.A.**
1025 Thomas Jefferson St. NW, Ste. 400W
Washington, DC 20007
Telephone: 202-986-8160

*Attorneys for Binance Holdings Limited*