UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
MDL No. 3076
Case No. 1:23-md-03076-KMM

IN RE:

FTX Cryptocurrency Exchange Collapse Litigation
_____
THIS DOCUMENT RELATES TO:

    INSIDER DEFENDANTS

    PROMOTER DEFENDANTS


**[PROPOSED] ORDER PRELIMINARILY APPROVING FIRST TRANCHE OF FTX PROMOTER SETTLEMENTS, SEVERING AND STAYING CONSIDERATION OF FIRST TRANCHE OF FTX INSIDER SETTLEMENTS, AND PROVISIONAL <u>CERTIFICATION OF PROPOSED SETTLEMENT CLASS</u>**

All of the Class Representatives[1] have agreed to settle their class-claims with many FTX Insiders and Promoters.[2] Each Settlement Agreement has been filed with the Court, and Plaintiffs have filed a Motion for Preliminary Approval of First Tranche of Settlements, for Provisional Certification of Proposed Settlement Class, and Approval of the Proposed Schedule, on March 27, 2024 (the "Motion"). Insider Settling Defendants, who have pled guilty in the criminal proceedings against them, have agreed to full restitution and forfeiture, and to have Judge Kaplan decide and coordinate in his court how the FTX victim funds recovered from them will be provided to the FTX victims.

Since then, on November __, 2024, Plaintiffs filed a Supplement to their Motion, explaining that they reached a Global Resolution with the FTX Debtors, which included an agreement that Plaintiffs would seek to sever and stay their request for preliminary approval of the FTX Insider Settlements. ECF __. However, the Global Resolution will not affect the settlements reached with the Promoter Defendants.

Plaintiffs additionally requested in their Supplement that if the Court grants preliminary approval of the First Tranche of Promoter settlements, that the Court defer formal notice of the settling Promoter Defendants' Settlement Agreements to the Settlement Class until claims against non-settling Promoter Defendants have been resolved. Noticing all settlements at the end of the litigation will conserve money for the Settlement Class and serve the interests of judicial and

---

[1] Leandro Cabo, Alexander Chernyavsky, Chukwudozie Ezeokoli, Edwin Garrison, Ryan Henderson, Shengyun Huang, Michael Livieratos, Michael Norris, Brandon Orr, Julie Papadakis, Gregg Podalsky, Kyle Rupprecht, and Vijeth Shetty.

[2] Defendants Samuel Bankman-Fried, Caroline Ellison, Zixiao "Gary" Wang, Nishad Singh (collectively, "Insider Settling Defendants"), Daniel Friedberg ("Mr. Friedberg"), Kevin Paffrath, Tom Nash, Brian Jung, Andrei Jikh, Jeremy Lefebvre, Graham Stephan, and William Trevor Lawrence (collectively, "Promoter Settling Defendants") ("Settling Defendants" will refer collectively to Insider Settling Defendants, Mr. Friedberg, and Promoter Settling Defendants).

1

litigative efficiency. Further, it will allow the MDL Plaintiffs to take advantage of the bankruptcy distribution system, which is not yet making distributions.

To the extent necessary, Plaintiffs have also retained the services of acclaimed legal notice experts JND Legal Administration LLC ("JND"), to craft a Notice Plan that provides the best notice practicable to the Class, which is in line with the court-approved program they created for another recent cryptocurrency matter, *In re Ripple Labs Inc. Litig.,* No. 18-cv-06753-PJH, ECF No. 359 (N.D. Cal. Jan. 26, 2024).

Upon considering the Motion and exhibits thereto, the Settlement Agreements, the record in these proceedings, the representations and recommendations of counsel, and the requirements of law, the Court finds that: (1) this Court has jurisdiction over the subject matter and Parties to these proceedings; (2) the proposed Class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and should be preliminarily certified for settlement purposes only; (3) the proposed Settlements are fair, reasonable, and adequate to warrant sending notice of the Settlements to the Class; (4) the "Class Representatives" defined above should be appointed class representatives; (5) Adam Moskowitz of The Moskowitz Law Firm, PLLC and David Boies of Boies Schiller Flexner LLP should be appointed as Co-Lead Class Counsel pursuant to Fed. R. Civ. P. 23(c)(1)(B) and 23(g); (6) the Settlements are the result of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel and are not the result of collusion; (7) the proposed plan of notice to the Class pursuant to Fed. R. Civ. P. 23(e) should be approved, and the schedule for disseminating notice to Class Members, as well as deadlines to comment on or object to the Settlements, should be approved as set forth below; and (8) good cause exists to schedule and conduct a fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) to determine whether the proposed Settlements are fair, reasonable, and adequate and whether they should be approved.

Based on the foregoing, **IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. The Court has jurisdiction over the subject matter and Parties to this proceeding pursuant to 28 U.S.C. §§ 1331 and 1332, including jurisdiction to approve and enforce the Settlement and all orders and decrees that have been entered or which may be entered pursuant thereto.

2. Venue is proper in this District.

**<u>Preliminary Class Certification for Settlement Purposes Only and Appointment of Class Representatives and Settlement Class Counsel</u>**

3. It is well established that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). In deciding whether to preliminarily certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—i.e., all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *Id.*; *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

4. The Court finds, for settlement purposes, that the Rule 23 factors are satisfied, and that preliminary certification of the proposed Class is appropriate under Rule 23. The Court, therefore, preliminarily certifies the following Class:

> All persons or entities who, from May 1, 2019 to the date of preliminary approval, purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT.

5. Specifically, for settlement purposes, that the Class satisfies the following factors of Rule 23:

A. <u>Numerosity</u>: A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty (40). *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (*citing* Newberg & Conte, Newberg on Class Actions, § 3.5 at 247 (4th ed.2002) ("as few as 40 class members should raise a presumption that joinder is impracticable and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone")). Here, numerosity is readily satisfied. The total number of Class members is estimated to be in the millions. As of 2021, FTX reported over 1.2 million registered users across its platforms.

B. <u>Commonality</u>: Rule 23(a)(2) requires that there be one or more questions common to the class. *WalMart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Plaintiffs need only show the existence of a common question of law or fact that is significant and capable of class-wide resolution. *In re Fla. Cement & Concrete Antitrust Litig.*, No. 09-23187-CIV, 2012 WL 27668, at *3 (S.D. Fla. Jan. 3, 2012) (unpublished). The Court already found such commonality in ordering consolidation of these FTX matters. In ordering the consolidation and transfer of these cases, the JPML explained:

> These actions present common questions of fact concerning the collapse of the FTX cryptocurrency exchange in November 2022, which allegedly was caused by the conduct of FTX former principals Sam Bankman-Fried, Zixiao "Gary" Wang, and Nishad Singh, and financial improprieties with Alameda Research. All actions allege that FTX executives fraudulently withheld or misrepresented information with respect to customer assets on the FTX platform and that the professional service firms [i.e., the Domestic VC, Multinational VC, Accounting Firm, Law Firm, and Bank Defendant Tracks] and celebrity promoters [i.e., the Promoter and Digital Creator Track] who worked with FTX were complicit in or otherwise bear responsibility for the alleged fraud – for example, by concealing FTX's financial problems or promoting FTX products with knowledge or willful blindness of the alleged fraud.

ECF No. 1, at 3. Common issues are present here and Rule 23 (a)(2) is satisfied.

C. <u>Typicality</u>: Rule 23(a)(3) requires that "the claims and defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met if the claims of the named plaintiffs 'stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory.'" *Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 435 (M.D. Fla. 2000) (*quoting*, *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996)). "The key inquiry in determining whether a proposed class has 'typicality' is whether the class representative is part of the class and possesses the same interest and suffers the same injury as the class members." *Medine v. Washington Mut., FA,* 185 F.R.D. 366, 369 (S.D. Fla. 1998). Here, the Class Representatives' claims stem from the same common course of conduct as the claims of the Class Members. FTX engaged in a widespread fraudulent scheme and conspiracy in which FTX customer property was wrongfully misappropriated by Alameda and FTX to further facilitate the fraud, a common course of conduct resulting in injury to all Class Members when the fraud was exposed and the FTX house of cards fell. Any injunctive and declaratory relief achieved also applies to Class Representatives and Class Members equally.

D. <u>Adequacy</u>: Rule 23(a)(4) requires that the representative plaintiffs "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). Both prongs are satisfied here. First, Class Representatives and the Settlement Class Members are equally interested in recovering as much of their property and/or recovering damages from any

5

        defendant who aided, abetted, or was an accomplice or agent of FTX. Accordingly, the Class Representatives will fairly and adequately protect the interests of all Settlement Class Members. Second, Class Counsel have extensive experience litigating and settling class actions, including consumer fraud cases throughout the United States. Class Counsel are well-qualified to represent the Settlement Class.

E. <u>Predominance</u>: The proposed Settlement Class satisfies Rule 23(b)(3), which permits a class action if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court has already acknowledged that common questions of law and fact exists such that Consolidation under MDL jurisdiction is appropriate, pursuant to 28 U.S.C. § 1407. *See* ECF No. 1, at 3. The FTX fraud and alleged conspiracy plainly involve common issues of law and fact that predominate over any individual issues involved in this fraud of historic proportions.

F. <u>Superiority</u>: Rule 23(b)(3)'s other requirement is that class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The purpose of the superiority requirement is consistent with the overall goals of Rule 23, which is to assure that the class action is the most efficient, effective, and economic means of settling the controversy. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996). That is the case here where FTX's common course of conduct will play a foundational role in the case against any defendant and individual damages do not justify individual lawsuits. *Id*. ("It would be extremely costly, not to mention unnecessarily duplicative, for a class member to try this action separately"). The individual damages that individual FTX account holders would seek in an individual action are insufficient to incentivize and justify litigation against some of the largest

institutional investors, but given the number of account holders, a class action provides incentives for litigation and recovery against the same defendants. Given the nature of the fraud and the damages here, class treatment is superior to individual lawsuits.

6. The Settlements are conditional on the Court's approval thereof. In the event the Court does not approve all terms of the Settlements, then certification of the Class will be voided as to such Settlements, and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Class, will be voided.

7. For Settlement purposes only and pursuant to the terms of the Settlements, the Court hereby appoints the Class Representatives to serve as class representative plaintiffs and Adam Moskowitz of The Moskowitz Law Firm, PLLC and David Boies of Boies Schiller Flexner LLP to serve as Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(c).

## Preliminary Approval of the Settlement

8. A class action may be settled only with the approval of the Court. *See* Fed. R. Civ. P. 23(e)(1). The Rule 23(e) settlement approval procedure has three principal steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected Class Members; and (3) a final approval determination following a fairness hearing at which Class Members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 William B. Rubenstein, Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 13:39 *et seq.* (5th ed. 2014).

9. Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of the written submissions. *Encarnacion v. J.W. Lee, Inc.,* No. CV 14-61927, 2015 WL 12550747, at *1 (S.D. Fla. June 30, 2015) (unpublished). To grant preliminary approval, the Court should determine whether the proposed settlement substantively falls "within the range of possible approval" or reasonableness. *Id.*; *see also* 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The

7

Court should approve a proposed class action settlement where it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (*citing Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Public policy favors settlements, particularly where complex class action litigation is concerned. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). The proposed Settlements here satisfy the standard for preliminary approval because: (1) they are reasonable; (2) they are the product of arm's-length negotiations between the parties; and (3) Class Representatives and Class Counsel believe it is in the best interest of the Settlement Class.

10. <u>The Settlements are Reasonable</u>: To grant preliminary approval of the proposed Settlement, the Court need only find that it falls within "the range of reasonableness." Alba Conte et al., Newberg on Class Actions § 11.25, at 11–91 (4th ed. 2002); *see also* Manual for Complex Litigation (Fourth) (2004) § 21.632 (characterizing the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties). Plaintiffs seek class-wide relief at this stage from the Promoter Settling Defendants, who are a group of influencers paid by FTX to present it to their followers as a safe and legitimate alternative to other cryptocurrency exchanges.

11. Promoter Settling Defendants are influencers paid by FTX to promote the exchange to their followers. In exchange for release of the claims against them, the Promoter Settling Defendants have agreed to provide monetary relief and cooperation to Class Representatives and Class Members. Plaintiffs are unlikely to collect more even after a full trial on the merits against these Defendants, although proceeding to trial would drastically increase the expense of the litigation and presents an inherent risk of failure. Moreover, adding to the risk of no recovery absent settlement are that motions to dismiss remain pending, and some Promoter Settling Defendants maintain motions on multiple grounds, including personal jurisdiction. The Settlements with the Promoter Settling Defendants are reasonable.

12. <u>The Settlements are the Product of Arm's-Length Negotiations</u>: Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 Newberg § 11.41; *see also Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016). Here, the Settlements were reached after informed, extensive arm's-length negotiations with the assistance of an experienced mediator, The Honorable Michael A. Hanzman (Retired). *See Lee v. Ocwen Loan Servicing, LLC,* No. 14-CV- 60649, slip op. at 25-26 (S.D. Fla. Sept. 14, 2015) (approving settlement and noting that parties' use of a highly respected mediator supported the conclusion that the settlement was not the product of collusion). Each Settling Defendant was individually represented by experienced counsel. The monetary relief afforded by the Promoter Settling Defendants' Settlements also presents the best possible outcome considering the costs and risks of continued litigation and the limited likelihood of obtaining a greater recovery due to Promoter Settling Defendants' relatively insignificant payments from FTX. The Settlements were reached after an extensive investigation into the factual underpinnings of the practices challenged in the civil action, as well as the applicable law. In addition to their pre-filing efforts, Class Counsel engaged in extensive research, including the review of documents, facts and testimony provided in the FTX-related bankruptcy and criminal proceedings. Nothing in the course of the negotiations or in the substance of the proposed Settlements present any reason to doubt the Settlements' fairness.

13. <u>The Recommendation of Experienced Counsel Favors Approval:</u> In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Blue Cross Blue Shield Antitrust Litig.,* No. 2:13-CV-20000-RDP, 2020 WL 8256366, at *26 (N.D. Ala. Nov. 30, 2020) (unpublished). Here, Class Counsel endorses the Settlements as fair, adequate, and reasonable. Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters and have conducted an extensive investigation into the factual and legal issues raised in this action. Class Counsel have weighed the benefits of the Settlements against the inherent risks and expense of

continued litigation, and they strongly believe that the proposed Settlements are fair, reasonable, and adequate. The fact that qualified and well-informed counsel endorse the Settlements as being fair, reasonable, and adequate weighs in favor of approving the Settlements.

## Settlement Distribution

14. With respect to the Promoter Settling Defendants, the Settlements provide that monetary relief shall be paid to a common fund to fund the Class Settlement, which funds shall be paid out according to a plan approved by the court.

15. Courts have delayed allocation plans pending future settlements with non-settling defendants. *See, e.g.*, *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 21–22 (D.D.C. 2019) ("In a case such as this, involving a large number of Class Members and two Non-Settling Defendants, it would be inefficient to distribute and process claims until the entire case has been resolved through litigation or otherwise and the Total Funds Available for Distribution are known. The Court finds that Settlement Class Counsel has demonstrated the adequacy of the Settlements with regard to their proposed means of distributing and processing claims, which will be done through a second notice to Class Members, followed by a right to object and/or file a claim."); *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *2 (E.D. Mich. Feb. 22, 2011) (approving settlement even though "the final plan of allocation was not included in the original Notice in part because of the potential for additional settlements with other Defendants which may affect the final plan of allocation").

16. Moreover, allocation plans may be, and often are, deferred until after final settlement approval. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) ("The Court finds no basis for rejecting the settlements because class members are unable to estimate their individual recoveries.") (citing 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions,§ 8.32 (4th ed. 2002)); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *3 (E.D. Tenn. May 17, 2013) (in order finally approving settlement, "[o]nce the claim processing procedure [for opt outs] is completed, plaintiffs will submit a proposed plan of allocation of the settlement proceeds for the Court's approval"); *Bowling v. Pfizer, Inc.*, 143 F.R.D.

141, 165 n.22 (S.D. Ohio 1992) (approving proposed settlement agreement and finding that it fairly compensated class members where "the exact amount [of individual compensation] will be firmed up" at a later date) (citing *In re Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910, 925 (S.D.N.Y. 1991)); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) (there is "no absolute requirement that . . . a [distribution] plan be formulated prior to notification of the class")); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 480 (S.D.N.Y. 1998) ("it is appropriate, and often prudent, in massive class actions to follow a two-stage procedure, deferring the Plan of Allocation until after final settlement approval"); *Nellis v. Shugrue*, 165 B.R. 115, 121 (S.D.N.Y. 1994) (finding appellant's objection that "the settlement agreement should not have been approved without a formula or plan for the allocation of funds among claimants" to be "without merit") (citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (S.D.N.Y. 1991)); Manual for Complex Litigation, Third, § 30.212 ("Often ... the details of allocation and distribution are not established until after the settlement is approved.").

## **Opt-Outs and Objections**

17. A Class Member may object to the Settlements. To object, the Class Member must comply with the procedures and deadlines approved by the Court. Any Class Member who wishes to object to the Settlements must do so in writing on or before the Objection Deadline, as specified in the Class Notice and the Settlement Agreements. The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defendants' Counsel at the addresses identified in the settlements no later than the Objection Deadline. The requirements to assert a valid written objection shall be set forth in the Class Notice and the requirements must be strictly complied with.

18. Subject to approval of the Court, any Class Member who files and serves a written objection may appear, in person or by counsel, at the Final Approval Hearing held by the District Court, to show cause why the proposed Settlements should not be approved as fair, adequate, and reasonable, but only if the objecting Class Member: (a) files with the Clerk of the District Court a Notice of Intention to Appear at the Final Approval Hearing by the Objection Deadline; and (b)

11

serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member will present to the District Court in connection with the Final Approval Hearing.

### **Effect of Failure to Approve the Settlement or Termination**

19. In the event the Settlements are not approved by the Court, or for any reason the Parties fail to obtain a Final Order and Final Judgment as contemplated in the Settlements, or the Settlements are terminated pursuant to its terms for any reason, then the following shall apply:

(i) All orders and findings entered in connection with the Settlements shall become null and void and have no further force and effect, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in any other proceeding;

(ii) All of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Plaintiffs' right to seek class certification and Settling Defendants' right to oppose class certification;

(iii) Nothing contained in this Order is, or may be construed as, any admission or concession by or against Settling Defendants or Plaintiffs on any point of fact or law;

(iv) Neither the Settlements' terms nor any publicly disseminated information regarding the Settlements, including, without limitation, the Notice, court filings, orders and public statements, may be used as evidence;

(v) Neither the fact of, nor any documents relating to, either party's withdrawal from the Settlements, any failure of the Court to approve the Settlements and/or any objections or interventions may be used as evidence; and

(vi) The preliminary certification of the Class pursuant to this Order shall be vacated automatically and the Actions shall proceed as though the Class had never been certified.

**General Provisions**

20.     The Court reserves the right to approve the Settlements with or without modification, provided that any modification does not limit the rights of the Class under the Settlements, and with or without further notice to the Class and may continue or adjourn the Fairness Hearing without further notice to the Class, except that any such continuation or adjournment shall be announced on the Settlement website.

21.     Settlement Class Counsel and Settling Defendants' Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlements that are not materially inconsistent with this Order or the Agreements, including making, without further approval of the Court, minor changes to the Agreements, to the form or content of the Class Notice or to any other exhibits that the Parties jointly agree are reasonable or necessary.

22.     The Parties are authorized to take all necessary and appropriate steps to establish the means necessary to implement the Agreements.

23.     Any information received by the Settlement Notice Administrator, the Settlement Special Administrator, or any other person in connection with the Settlement Agreements that pertains to personal information regarding a particular Class Member (other than objections or requests for exclusion) shall not be disclosed to any other person or entity other than Settlement Class Counsel, the Settling Defendants, Settling Defendants' Counsel, the Court and as otherwise provided in the Settlement Agreements.

24.     This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class.

25.     Preliminary Approval of First Tranche of Settlements, Provisional Certification of Proposed Settlement Class, and Approval of the Proposed Schedule is **GRANTED** for Defendants

Kevin Paffrath, Tom Nash, Brian Jung, Andrei Jikh, Jeremy Lefebvre, Graham Stephan, and William Trevor Lawrence (collectively, "Promoter Settling Defendants").

26. Preliminary Approval of First Tranche of Settlements, Provisional Certification of Proposed Settlement Class, and Approval of the Proposed Schedule is **STAYED** for Defendants Caroline Ellison, Zixiao "Gary" Wang, Nishad Singh (collectively, "Insider Settling Defendants") and Defendant Daniel Friedberg.

27. The Plaintiffs have asked that the Court defer formal notice of the Settlement Agreement to the Settlement Class until the Plaintiffs' claims against the non-settling Defendants have been resolved. The Court agrees that this is the most practical path forward. Deferring notice will save money for the Settlement Class because, at the end of this litigation, the Plaintiffs will be able to provide notice of all of the settlements at once. Therefore, in the interest of judicial and litigative efficiency, dissemination of notice shall be **STAYED** until the Plaintiffs' claims against the remaining non-settling Defendants have been resolved.

**DONE AND ORDERED** in Chambers at Miami, Florida this _____ day of _____ 2024.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record