UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

THIS DOCUMENT RELATES TO:

Multinational VC Defendants

> *O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700
>
> *O'Keefe v. Temasek Holdings (Private) Ltd., et al.*, N.D. Cal. Case No. 3:23-cv-3655
>
> *Chernyavsky et al. v. Temasek Holdings (Private) Ltd., et al.*, S.D. Fla. Case No. 1:23-cv-22960
>
> *Cabo et al. v. Temasek Holdings (Private) Ltd. et al.*, N.D. Cal. Case No. 3:23-cv-03974

/

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSED OMNIBUS MOTION TO LIFT DISCOVERY STAY WITH RESPECT TO CERTAIN MULTINATIONAL VC DEFENDANTS AND FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY ON <u>CERTAIN MULTINATIONAL VC DEFENDANTS</u>**

Plaintiffs file this reply memorandum in further support of their Opposed Omnibus Motion to Lift Discovery Stay with Respect to Certain Multinational VC Defendants and for Leave to Conduct Jurisdictional Discovery on Certain Multinational VC Defendants (ECF No. 838) (the "Motion") and in response to the oppositions thereto (ECF Nos. 846 & 847) filed by Defendants Sino Global Capital Limited ("SGCL"), Liquid Value Offshore Feeder Fund I LP ("LV Offshore"), Liquid Value GP Limited ("LV GP" and, together with SGL and LV Offshore, "Sino Objectors" [1]), Temasek International Pte. Ltd. ("Temasek International"), Artz Fund Investments Pte. Ltd. ("Artz"), and Blakiston Investments Pte. Ltd. ("Blakiston" and, collectively with Temasek International and Artz, "Temasek Objectors," and, collectively with Sino Objectors, "Objectors"[2]).

Objectors do not contest that Plaintiffs have a right to discovery to resolve disputes of jurisdictional facts, largely focusing instead on their incorrect assertion that Plaintiffs attempt a "second bite at the apple" or "fishing expedition" with the instant request. To be clear, Plaintiffs have not conducted *any* discovery—jurisdictional or otherwise—on Objectors to date: each Objector avoided the very discovery that Plaintiffs now seek via withdrawal of a prior jurisdictional challenge to Plaintiffs' earlier filed complaint *or* was newly added to Plaintiffs' Amended Class Action Complaint on November 19, 2024, and challenged this Court's jurisdiction for the first time on January 10, 2025. *See* ECF Nos. 783, 817.

For all their bluster, Objectors cannot duck the fact that Plaintiffs are entitled to jurisdictional discovery under the facts of this case, the law, and this Court's prior orders. Plaintiffs make out *prima facie* cases for jurisdiction over Objectors; Objectors have put those jurisdictional facts into dispute; Plaintiffs have not conducted jurisdictional discovery on Objectors before, and their current requests are in no way fishing expeditions. Plaintiffs' Motion is due to be granted.

---

[1] Plaintiffs refer to all Sino Global-related entities together as "Sino Global Capital," just as Sino Global Capital publicly represented itself in contemporaneous documents.

[2] Plaintiffs refer to all Temasek-related Defendants together as "Temasek," just as Temasek publicly represents itself on its website, Twitter, and elsewhere. Plaintiffs will refer to Sino Global Defendants and Temasek Defendants together as "Responding Defendants."

[3] "Temasek at a Glance," https://www.temasek.com.sg/en/about-us/temasek-at-a-glance; *See also* FTX Statement and FAQs - Temasek (Temasek describes in an FAQ that "we" invested in FTX, with no distinction between the various subsidiaries on which it now so heavily relies (last accessed March 6, 2025).

### A. Jurisdiction is warranted because Plaintiffs have made out a *prima facie* case of jurisdiction over Objectors, which Objectors have put into factual dispute.

Objectors admit that jurisdictional discovery is available to address factual disputes regarding the Court's jurisdiction. ECF No. 846, at pp. 5-7; ECF No. 847, at p. 8. This Court's prior order granting jurisdictional discovery as to different Sino Global and Temasek entities relied on such black-letter law. ECF No. 422. In moving to dismiss the Amended Complaint, Objectors challenged the factual bases for this Court's jurisdiction, and Plaintiffs identified in their Motion the disputes of jurisdictional facts giving rise to the instant request. ECF No. 838, at p. 14-16.

Objectors argue that Plaintiffs' Motion should fail, still, because Plaintiffs have not (1) identified their physical presence in Florida and California; (2) pleaded any facts sufficient to give rise to an agency theory of jurisdiction; and (3) failed to allege a conspiracy between Objectors and FTX.  ECF No. 846, at p. 8; ECF No. 847, at pp. 11-12.

Objectors ignore wholesale that physical presence in the forum state is not required in Florida, where the defendant either committed an intentional tort causing injury within Florida or participated in a conspiracy where any co-conspirator committed least one act in furtherance of the conspiracy occurred in the state, nor is it required in California where the tortious conduct arises from its contacts with the state. *See, e.g., Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (regarding tortious conduct); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009) (regarding conspiracy jurisdiction). As for due process, directing a conspiracy at Florida suffices as sufficient minimum contacts with Florida. *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 736 (Fla. Dist. Ct. App. 2006); *see also Tavakoli v. Doronin*, 2019 WL 1242669, at *11-12 (S.D. Fla. Mar. 18, 2019).

Objectors likewise ignore that Plaintiffs are not required to allege that Objectors engaged in independent conspiratorial acts in Florida to satisfy the long-arm statute. *See AXA Equitable Life Ins. Co.*, 608 F. Supp. 2d at 1354. Plaintiffs allege that, because the FTX collapse occurred in Miami, Objectors aiding and abetting of FTX's tortious conduct as detailed above caused injuries emanating from Florida. ¶¶ 71, 128. "[U]nder Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida." *Louis Vuitton,* 736 F.3d at 1353; *see also Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317 (S.D. Fla. Feb. 17, 2010). Florida's long-arm statute can support personal jurisdiction over any conspirator even if that party committed no act in or had relevant contact to Florida, so long

2

as another co-conspirator did. *Bluegreen Vacations Unlimited, Inc. v. Montgomery L. Firm LLC*, 2022 WL 17987280, at *4 (S.D. Fla. June 17, 2022) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281-82 (11th Cir. 2009)); *see also Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 2011 WL 5057203, at *3 (S.D. Fla. Oct. 24, 2011).

And, Objectors ignore that, in California, exercising personal jurisdiction over a nonresident defendant is proper if (1) the claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the nonresident defendant "purposefully availed" himself of the privilege of conducting activities in the forum state, thus invoking the benefit of the forum state's laws; and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Plaintiffs' Amended Complaint satisfies these jurisdictional requirements by setting forth Objectors' intentional conduct in detail, including their overt acts taken in furtherance of the fraud, their knowledge of the fraud, how they benefitted from facilitating the fraud, and how that conduct formed part of a conspiracy undertaken with Floridian co-conspirators that caused harm in Florida and California.

*First,* Plaintiffs allege that Objectors knew of FTX's underlying misconduct and assisted FTX anyway, giving rise to aiding/abetting liability and the inference of an agreement to conspire. *See, e.g.*, ¶¶ 280, 283. Through their diligence and ongoing partnerships with FTX, Temasek and Sino Global were exposed to, inter alia, pitchbooks featuring unsubstantiated projections and calculations, and which appeared unorganized, inaccurate, confusing, and unsophisticated (¶ 327); audited financials with clearly irregular activity, including FTX using its own FTT tokens as currency for acquisitions, questionable loans, and perplexing related party transactions (¶¶ 328--333; see also ¶¶ 279-80); the fact that neither FTX Trading nor FTX US paid federal income taxes (¶ 331); that the FTX terms of service contradicted its actual practices, most notably through its undisclosed and unlawful use of customers' fiat and cryptocurrencies (¶¶ 334-335); and that FTX's products were unregistered securities (¶¶ 299). But Temasek and Sino Global decided to invest and continue to promote FTX anyway because its assistance would continue to grow FTX's deposits to Temasek's direct benefit, and because they knew it could write off any resulting loss if the scheme ended which it did. ¶¶ 379-80. This conduct was directed nationwide, including the forum states, and much of the acts in furtherance of the conspiracy took place in Florida. ¶ 71, 128.

More specifically, Plaintiffs pleaded that Temasek, via Artz and Blakiston, provided FTX—

3

including FTX US, which was headquartered in Miami—with funding, publicly promoted their partnership, allowed FTX to launder Temasek's reputation, and otherwise assisted FTX with strategy in hopes of massive returns on its equity stakes. ¶¶ 29, 30, 304-05, 308, 318, 339, 340, 342, 343, 344, 345, 356, 359, 360, 361, 373. Temasek International employees Pradyumna Agrawal and Antony Lewis served on FTX's Advisory Board, which met quarterly, and advised on matters including the publicity campaign and FTX Derivatives strategy, both of which were based in Miami. ¶¶ 357-59. Similarly, Sino Global provided funding to FTX, ¶¶ 48-54, 303-04, 311-12, 339-40; forged a partnership with FTX and participated in publicizing the investment and resulting partnership, ¶¶ 283, 310, 311-14, 323; and reaped handsome rewards in the form of, *inter alia*, FTX's quid pro quo investment in its Liquid Value funds, ¶¶ 283, 312-314. Plaintiffs allege both Temasek and Sino Global provided critical assistance in the form of promoting FTX's brand. ¶¶ 340-45, 347-51, 354, 364-67.

*Second*, Plaintiffs allege that with the foregoing knowledge and assistance, Objectors directed intentional tortious conduct into Florida, through its assistance to FTX US, and California through its assistance to Alameda, and participated in a conspiracy with at least one Floridian co-conspirator, FTX US, sufficient to confer jurisdiction in Florida and California over their claims. *See, e.g.*, ¶¶ 29, 30, 48-54, 283, 303-05, 308, 311-12, 318, 339-45, 347-51, 354, 356, 359, 360-61, 354-67, 373.

*Third*, Plaintiffs allege that Objectors were essentially one with the other Temasek or Sino Global Defendants, as applicable, sufficient to confer agency/alter ego jurisdiction over them in this Court. Plaintiffs assert that Temasek, like its co-defendant Sino Global, completely conflates its entities by holding out the company to the public as one "global…company," *e.g.*, in statements made on its website;[3] with its email address domains, which are the same for all employees regardless of which purportedly separate Temasek entity they are affiliated with;[4] in its yearly

---

[3]"Temasek at a Glance," https://www.temasek.com.sg/en/about-us/temasek-at-a-glance; *See also* FTX Statement and FAQs - Temasek (Temasek describes in an FAQ that "we" invested in FTX, with no distinction between the various subsidiaries on which it now so heavily relies (last accessed March 6, 2025).
[4] ECF No. 348-11.

financial reports;[5] through its maintenance of interlocking directorates and loci of control;[6] and by holding out its leadership board as one entity, called "OneTemasek." ECF 783, ¶ 31.[7] Plaintiffs' *prima facie* case for jurisdiction over the Objectors makes relevant discovery into those Objectors' agency relationships with the other Defendants.

With these allegations, Plaintiffs pled jurisdiction on multiple independent bases and cite to Temasek and Sino Global statements or documents in support of the same, which allegations and evidence Objectors have now put into factual dispute via declarations attached to motions to dismiss. Temasek Objectors argue, for example, that they lack "any contacts" with Florida and California, that one Temasek objector, Temasek USA, "was not involved in the FTX investment at all," and that the "Temasek Defendants' sworn testimony makes clear that [any activities giving rise to an agency theory of jurisdiction] were unconnected to the forum states." ECF No. 847, at p.11-12. Sino Objectors similarly argue, for example, "LV Offshore and LV GP are separate and distinct entities from SG Capital Management," putting Plaintiffs' agency basis for jurisdiction into dispute.

### B. Plaintiffs are not attempting a "second bite at the apple."

Temasek Objectors assert that Plaintiffs' motion should be denied, because Plaintiffs have already had the opportunity to conduct the discovery that they seek and suggest that Plaintiffs are seeking a "second bite at the apple" here. ECF No. 847 at p. 13. Temasek Objectors are incorrect on both counts. Temasek Objectors were not named as parties to this suit until Plaintiffs' Amended Class Action Complaint was filed into the record on November 19, 2024, and Plaintiffs did not have the opportunity to move for jurisdictional discovery against those Defendants until they challenged this Court's jurisdiction for the first time on January 10, 2025. ECF Nos. 783, 817. This would be the first time that Objectors have been subjected to jurisdictional discovery in this case. Plaintiffs' request is timely. Objectors filed their Rule 12(b)(2) motion to dismiss on January 10, 2025. ECF No. 817. Plaintiffs file this motion for leave to take jurisdictional discovery more than ten days in advance of their opposition deadline of February 27, 2025. *See* ECF No. 831 (establishing February 27, 2025, deadline). Thus, Plaintiffs' request to conduct jurisdictional

---

[5] *See, e.g.*, "Temasek Review 2023," https://www.temasekreview.com.sg/downloads/Temasek-Review-2023-full-version.pdf (last accessed November 25, 2023).
[6] https://www.temasek.com.sg/en/about-us/our-leadership#organisation-structure (last accessed November 25, 2023).
[7] All citations herein are to Plaintiffs' Amended Complaint, ECF 783, unless otherwise noted.

5

discovery as to Objectors is timely. *See* ECF No. 422 (holding timely Plaintiffs' request for jurisdictional discovery made one business day prior to Rule 12 opposition deadline).[8] The same is true of Sino Objectors—each Objector was either newly added as a defendant to Plaintiffs' Amended complaint *or* withdrew its jurisdictional challenge to avoid jurisdictional discovery arising from Plaintiffs' earlier filed complaint, such that no Sino Objector has been subject to jurisdictional discovery to date. Plaintiffs could not seek jurisdictional discovery on Objectors until they were parties to this case. Temasek Objectors are wrong to argue that Plaintiffs have "previously had an opportunity to conduct" the discovery that they seek. ECF No. 847, at p.15.[9]

**C. Nor have Plaintiffs embarked on a "fishing expedition;" Plaintiffs' requests encompass the merits of their underlying claims only to the extent that such discovery is also jurisdictional.**

Plaintiffs' requests are not overbroad, nor do the requests tread impermissibly into the merits of their claims. As this Court recognized in granting jurisdictional discovery on earlier-named defendants, "The disputed facts related to Plaintiffs' theories of personal jurisdiction are intertwined with the merits of the respective cases—thus, Plaintiffs have a qualified right to jurisdictional discovery." ECF No. 422, at p. 5. That is because the Florida long-arm statute confers jurisdiction over the Responding Defendants if they engaged in a conspiracy with the other defendants and/or engaged in intentional tortious conduct that effected injury in Florida. Plaintiffs' requests are narrowly tailored to those elements of their claims which are intertwined with the

---

[8] The caselaw cited by Temasek Objectors is inapplicable here. In *Micro Finance Advisors, Inc. v. Coloumb*, the plaintiff sought additional jurisdictional discovery after already having sought jurisdictional discovery on the defendants (i.e., it was the *second* time that the plaintiff sought discovery on the same defendant). Case No. 1:21-cv-22303-JLK, 2022 WL 5359221, at *1 (S.D. Fla. Oct. 6, 2022). And in *Thompson v. Carnival Corporation*, the "plaintiff never formally moved the district court for jurisdictional discovery, but, instead, buried such requests in its briefs as a proposed alternative to dismissing [the] defendant" and there was "no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery." 174 F. Supp. 3d 1327, 1339 (S.D. Fla. 2016). That is not the case here.

[9] Objector's attempts to place the blame on Plaintiffs for not yet having access to their internal documents and correspondence are not well-founded. The point of jurisdictional discovery is to prevent a defendant from defeating the jurisdiction of a federal court by withholding information on its contacts with the forum. *See, e.g., Diamond Chem. Co. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003).

6

jurisdictional inquiry.[10] For example:

- Discovery concerning due diligence on Alameda and FTX is relevant to (1) intentional tortious conduct directed at the forum states giving rise to jurisdiction in Florida and California; and (2) knowledge of FTX's underlying misconduct giving rise to conspiracy jurisdiction in Florida.

- Discovery concerning agreements with Alameda and FTX, as well as concerning any assistance provided to them, is relevant to (1) intentional tortious conduct directed at the forum states giving rise to jurisdiction in Florida and California; and (2) knowledge of FTX's underlying misconduct giving rise to conspiracy jurisdiction in Florida.

- Discovery concerning shared property, personnel, equipment and other overlap among Temasek entities, on the one hand, and among the Sino Global entities, on the other, is relevant to Plaintiffs' agency theory of jurisdiction.

Plaintiffs' requests are directly tied to this Court's jurisdictional inquiry.

### D. The Foreign Sino Global Defendants were served by serving domestic defendant Sino Global Capital Management LLC in Miami.

Sino Objectors arguments relating to service should also fail. Substitute service on a subsidiary is permissible where the Defendant's has "sufficient operational control" over the subsidiary. *Sehringer v. Big Lots, Inc.,* 532 F. Supp. 2d 1335, 1339 (M.D. Fla. 2007). Florida Statutes sections 48.181(3) and 48.181(1) provide that if a nonresident defendant does business in the forum through "brokers, jobbers, wholesalers, or distributors," then service through such an entity is proper as service on an agent of process. *Vega Glen v. Club Mediterranee S.A.*, 359 F. Supp. 2d 1352, 1356 (S.D. Fla. 2005); *Sol Melia, S.A. v. Fontana*, 67 So. 3d 1226, 1228 (Fla. Dist. Ct. App. 2011) (substitute service of process is permitted where the plaintiff demonstrates that the parent corporation exercised control over its subsidiary such that the activities of the subsidiary were in fact the activities of the parent within the state.); *Societe Hellin, S.A. v. Valley Com. Cap., LLC,* 254 So. 3d 1018, 1020 (Fla. Dist. Ct. App. 2018) (section 48.181, authorizes substitute service on nonresident defendants doing business in Florida where the cause of action arises from

---

[10] Temasek Objectors assert that Magistrate Judge Sanchez "rejected nearly every single one of Plaintiffs … RFPs," but that is not true. In any event, the discovery requested by way of the instant Motion is even more narrowly tailored than Plaintiffs' earlier requests of different Temasek Defendants.

the defendant's Florida business activities).

Matthew Graham set up Defendant Sino Global Capital Management LLC ("SGCM") in Miami to solicit investments in the Liquid Value Fund, which is alleged to be part of the larger FTX fraud for using FTX customer money provided by FTX as co-general partner, to churn the tokens that provided FTX its supposed value. ¶ 49. While the parent-subsidiary relationship alone does not suffice for service, where evidence is presented that the subsidiary was an alter ego or that the parent "thoroughly controlled" the subsidiary, service of a subsidiary suffices under these Florida statutes to serve the parent. *Vega Glen* at 1357. Here Plaintiffs have alleged and can establish that there is no meaningful corporate differentiation between the Sino Global Capital entities – they are all owned and controlled by Matthew Graham, share the same general counsel, directors and officers, and the same addresses and web sites.

Though Plaintiffs do not seek jurisdictional discovery regarding the domestic entities Sino Global Capital Holding LLC and SGCM, who are either no longer contesting or never contested personal jurisdiction, both entities have been served and are alleged to be agents and alter egos of these foreign Sino Global entities, including parent Sino Global Capital Limited (n/k/a "Ryze Labs"). ¶ 53. Plaintiffs do not merely allege agency and alter ego—they provide significant factual bases in their operative complaint. ¶¶48-54, Ex. E.

Courts consider various factors in determining whether a subsidiary is the alter ego of its parent corporation, including whether: (1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings. *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 771 (11th Cir. 2018).

Sino Global Capital Limited is a small crypto investment firm owned and operated by Matthew Graham, a U.S. citizen, with no publicized address or corporate headquarters on its

8

website. Until this litigation was filed, Patrick Loney was listed as its General Counsel. Ex. E, pg. 293.[11] SGCM is the corporate entity set up by Graham and Loney to facilitate raising money for the Liquid Value Fund in the United States. ¶ 51. Graham admits he has "utilized a co-working space" in Florida to use as Sino Global's "mailing address," the Miami address listed by Sino Global Capital Management, LLC, and FTX. ¶ 48.

Neither Matthew Graham nor Sino Global Capital's prospectus regarding the Liquid Value Fund – the fund he set up in partnership with FTX to prop up, churn and manipulate the price of FTX's tokens – differentiates between Sino Global corporate forms. ¶ 49, Ex. E. Graham's Liquid Value Fund prospectus refers to "Sino Global Capital," throughout. Page 2 of this Prospectus shows "Sino Global Capital" and FTX served as "Co-GPs" of the Liquid Value Fund, without distinction between corporate forms. ¶ 323. The Prospectus shows the location of "Sino Global Capital" employees, including in Miami, without identifying which Sino Global Capital entity each team member worked for. Ex. E, pg. 292. Among the ten total "Sino Global Capital" team members listed on page 5 of the prospectus are: Matthew Graham, "Managing Partner and CEO" and Patrick Loney, "General Counsel and Head of IR," Dermott McGrath, "Chief of Staff," and Ian Wittkopp, "COO & Head of Investment." Ex. E, pg. 293.

Defendant SGCM is the registered investment advisor located at 1111 Brickell Avenue, 10th Floor, Miami Florida, which Graham and Loney created to raise money for the Liquid Value Fund. ECF No. 783, ¶¶ 49-51. Its investment adviser registration on Form ADV with the Securities and Exchange Commission (¶ 51[12], "SGCM ADV") shows defendant Liquid Value GP Limited is SGCM's General Partner/Manager (§7.A.5(p)), indicates they are both under "common control" (§7.A.7), and that they share supervised persons and the same physical location. SGCM ADV §§7.A.11, 7.A.12. SGCM lists parent Sino Global Capital Limited's newly named "Ryze Labs" web address, its Twitter handle and its LinkedIn handle as its own. SGCM ADV § 1.I.  It shows SGCM is the registered investment adviser for the Liquid Value Fund and its feeder funds. SGCM ADV §7.B.(1). The Schedule A shows Matthew Graham is the "Managing Member" and owner of

---

[11]See also Sino Global's former website listing Mr. Loney as its General Counsel: https://web.archive.org/web/20230601125315/https://sinoglobalcapital.com/team/.
Plaintiffs first attempted to serve Mr. Loney as Sino Global Capital Limited's general counsel at Mr. Loney's registered office address with the Washington State Bar. This official address turned out to be his parent's home, whom he instructed not to accept service.
[12] https://reports.adviserinfo.sec.gov/reports/ADV/326303/PDF/326303.pdf

75% or more of defendant SGCM. Patrick Loney signed the SGCM ADV as the "General Counsel" of SGCM as recently as 03/28/2024.

Similarly, Defendant Liquid Value GP Limited was created by Graham to act as the general partner of all the Liquid Value Fund entities. It is also a registered investment adviser with the SEC.[13] Liquid Value GP Limited lists the website, LinkedIn and Twitter handles for parent Sino Global Capital Limited in this registration as well, which is signed by Ian Wittkopp on behalf of Liquid Value GP Limited April 3, 2023. The address provided is again the same for Sino Global Capital Limited's in Hong Kong. The Liquid Value Fund filed a Notice of Exempt Offering of Securities on Form D[14] with the SEC on December 10, 2021, which lists Matthew Graham, Ian Wittkopp and Dermot McGrath as the Directors of defendant Liquid Value GP Limited. It is signed by Ian Wittkopp, as "Director of Liquid Value GP Limited" and provides the same Hong Kong address as Sino Global Capital Limited.

There is no meaningful differentiation between Sino Global Capital entities. SGCM was served in Miami and was created for the purpose of raising money for the Liquid Value Fund to participate in the FTX fraud. Service on it should be considered service on all the Sino Global Capital and Liquid Value Fund entities in this matter. Jurisdictional discovery should be granted and will further elucidate the overlapping ownership, control, relationships between, and identities of these Sino Global entities who all share the same addresses, websites, officers, directors and majority ownership, and who Matthew Graham created to abuse the corporate form to commit fraud in the state of Florida.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter an order lifting the discovery stay for a 60-day period, granting Plaintiffs leave to take jurisdictional discovery in that 60-day window regarding Objectors *only*, including written discovery substantially in the form attached as Exhibit A to Plaintiffs' Motion and corporate depositions of each of the Objectors, and setting an expedited schedule for conducting such discovery.

---

[13] https://reports.adviserinfo.sec.gov/reports/ADV/317744/PDF/317744.pdf
[14] https://www.sec.gov/Archives/edgar/data/1894745/000189474521000001/xslFormDX01/primary_doc.xml

Dated: March 7, 2025.                    Respectfully submitted,

By: */s/ Adam Moskowitz*                 By: */s/ David Boies*
Adam M. Moskowitz                        David Boies
Florida Bar No. 984280                   Alexander Boies
Joseph M. Kaye                           Brooke A. Alexander
Florida Bar No. 117520                   **BOIES SCHILLER FLEXNER LLP**
**THE MOSKOWITZ LAW FIRM, PLLC**         333 Main Street
Continental Plaza                        Armonk, NY 10504
3250 Mary Street, Suite 202              914-749-8200
Coconut Grove, FL 33133                  dboies@bsfllp.com
Office: (305) 740-1423                   aboies@bsfllp.com
adam@moskowitz-law.com                   balexander@bsfllp.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*                        *Co-Lead Counsel*


Joseph R. Saveri                         James R. Swanson, La. Bar No. 18455
Christopher Young                        Kerry J. Miller, La. Bar. No. 24562
Itak K. Moradi                           Molly L. Wells, La. Bar. No. 36721
**JOSEPH SAVERI LAW FIRM**               C. Hogan Paschal, La. Bar No. 38495
601 California Street, Suite 1000        **FISHMAN HAYGOOD L.L.P.**
San Francisco, CA 94108                  201 St. Charles Avenue, 46th Floor
Telephone: (415) 500-6800                New Orleans, Louisiana 70170-4600
jsaveri@saverilawfirm.com                (504) 586-5252; (504) 586-5250 fax
cyoung@saverilawfirm.com                 jswanson@fishmanhaygood.com
imoradi@saverilawfirm.com                kmiller@fishmanhaygood.com
                                         mwells@fishmanhaygood.com
Robert Lieff                             hpaschal@fishmanhaygood.com
2925 Sycamore Canyon Road
Santa Barbara, CA 93108                  *Counsel to Plaintiffs and the Putative*
rlieff@lieff.com                         *Classes*

*Counsel to Plaintiffs and the Putative*
*Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 7, 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz