# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse
Litigation**

_____

THIS DOCUMENT RELATES TO:

The Multinational VC Defendants

*O'Keefe v. Sequoia Capital Operations, LLC*,
No. 1:23-cv-20700 (S.D. Fla.)

*O'Keefe v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-23065 (S.D. Fla.)

*Chernyavsky v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-22960 (S.D. Fla.)

*Cabo v. Temasek Holdings (Private) Limited*,
No. 1:23-cv-23212 (S.D. Fla.)
_____/

## THE MULTINATIONAL VC DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED ADMINISTRATIVE CLASS <u>ACTION COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT ................................................................................................................................2

    I.    The SAC Fails to Meet Basic Pleading Requirements. .................................................2

        A.  Plaintiffs' Claims Are Implausible. ..................................................................2

        B.  The SAC Is an Improper Shotgun Pleading....................................................2

        C.  Plaintiffs Fail to Allege Fraud with Particularity Under Rule 9(b). .........................3

    II.    Plaintiffs' Unregistered Securities Claims (Counts 1 and 3) Should Be Dismissed......4

        A.  Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 1 and 3). ..................................................................................................5

        B.  Plaintiffs Do Not Plead That the MNVCs Were Directors, Officers, Agents, or Partners of FTX (Count 1). ............................................................................7

        C.  Plaintiffs Plead Neither Negligence nor Intent to Defraud (Counts 1 and 3). ..........8

        D.  Plaintiffs Fail to Plead Their Unregistered Broker-Dealer Claim (Count 3). ..........8

    III.    Plaintiffs' Securities Fraud Claims (Counts 2, 4, 5, and 6) Should Be Dismissed........9

        A.  Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 2, 4, and 5). ..................................................................................................9

        B.  Plaintiffs Again Fail to Plead Scienter (Counts 2, 4, 5, and 6). ............................10

        C.  Plaintiffs Do Not Allege That the MNVCs Were Control Persons of FTX (Counts 2 and 6). ..................................................................................................10

        D.  Plaintiffs Do Not Allege Market Manipulation (Count 5)....................................10

    IV.    The SAC Fails to State a Claim for Conspiracy (Count 7)............................................11

    V.    The SAC Fails to State Any Aiding and Abetting Claim (Counts 8–10). ....................12

    VI.    The SAC Fails to State a Conversion Claim or Aiding and Abetting Conversion Claim Against the "Sino Global Defendants" (Counts 11 and 12).......................13

    VII.    The SAC Fails to State an Unjust Enrichment Claim Against the "Sino Global Defendants" (Count 13). ..............................................................................14

    VIII.    The SAC Fails to State a Claim for Violation of the California Unfair Competition Law (Count 14). ............................................................................................15

        A.  Plaintiffs' UCL Claim Relates to "Securities Transactions." ..............................15

        B.  Plaintiffs Lack Standing to Bring a UCL Claim.................................................15

        C.  Plaintiffs Do Not Plead Fraud, Unfairness, or Unlawfulness. ..............................16

        D.  Plaintiffs' UCL Claim Fails Because They Seek an Inappropriate Remedy. .........16

        E.  Plaintiffs' UCL Claim Is Not Sufficiently Connected to California....................16

IX.     Plaintiffs' FAL Claim (Count 15) Should Be Dismissed. ...........................................17

X.      The SAC Fails to State a Claim for Violation of the Florida Deceptive and Unfair
        Trade Practices Act (Count 16)....................................................................................17

XI.     The SAC Fails to State a Claim for Negligent Misrepresentation (Count 17). ...........18

XII.    The SAC Fails to State a Claim for Intentional Misrepresentation and Fraudulent
        Inducement (Counts 18 and 19)....................................................................................19

XIII.   The SAC Fails to State a Claim for a Declaratory Judgment (Counts 20 and 21). .....20

XIV.    The SAC Fails to State a Claim for Punitive Damages (Claim 22)...........................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aileron Inv. Mgmt, LLC v. Live Oak Banking Co.*,
   2021 WL 1238401 (M.D. Fla. Apr. 2, 2021) ...................................................................13, 14

*Alvarez Galvez v. Fanjul Corp.*,
   533 F. Supp. 3d 1268 (S.D. Fla. 2021) ..........................................................................3

*Angell v. Allergan Sales, LLC*,
   2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ...............................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................4

*Betz v. Trainer Wortham & Co.*,
   829 F. Supp. 2d 860 (N.D. Cal. 2011) .......................................................................15

*Blair v. Wachovia Mortg. Corp.*,
   2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ...............................................................17, 18

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ..............................................................................15

*Carran v. Morgan*,
   2007 WL 3520480 (S.D. Fla. Nov. 14, 2007) ...............................................................10

*Corsello v. Lincare, Inc.*,
   428 F.3d 1008 (11th Cir. 2005) ..............................................................................4

*Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
   2011 WL 1233106 (S.D. Fla. Mar. 30, 2011) ................................................................8, 9

*Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
   2011 WL 1233126 (S.D. Fla. Mar. 30, 2011) ...............................................................3

*Dolphin LLC v. WCI Cmties., Inc.*,
   715 F.3d 1243 (11th Cir. 2013) .............................................................................18

*Drewes v. Cetera Fin. Grp., Inc.*,
   2020 WL 13566405 (S.D. Fla. July 9, 2020) .................................................................7, 8

*First Auto. Serv. Corp., N.M. v. First Colonial Ins. Co.*,
   2008 WL 816973 (M.D. Fla. Mar. 25, 2008) ................................................................3

iii

*Freeman v. Sharpe Resources Corp.*,
  2013 WL 2151723 (M.D. Fla. May 16, 2013)...........................................................4

*Freeney v. Bank of Am. Corp.*,
  2015 WL 12535021 (C.D. Cal. Nov. 19, 2015)........................................................11

*Honig v. Kornfeld*,
  339 F. Supp. 3d 1323 (S.D. Fla. 2018) ..................................................................12

*Jones v. Bank of Am., N.A.*,
  564 F. App'x 432 (11th Cir. 2014) .........................................................................14

*Livingston v. H.I. Family Suites, Inc.*,
  2005 WL 2077315 (M.D. Fla. Aug. 29, 2005) .........................................................4

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) ...............................................................................3

*Maison v. Ford Motor Co.*,
  2005 WL 1684159 (N.D. Fla. July 7, 2005) .............................................................4

*Meridian Tr. Co. v. Batista*,
  2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ........................................................11

*Molina v. Aurora Loan Servs., LLC*,
  635 F. App'x 618 (11th Cir. 2015) .........................................................................18

*Montalbano v. Ariad Pharms., Inc.*,
  2015 WL 11198245 (S.D. Fla. Aug. 4, 2015)..........................................................20

*N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*,
  418 F. Supp. 3d 957 (N.D. Fla. 2019)....................................................................11

*Nuwave, Ltd. v. Argyle Equities, LLC*,
  2007 WL 3130443 (M.D. Fla. Oct. 24, 2007) ........................................................11

*In re Nvidia Corp. Sec. Litig.*,
  2010 WL 4117561 (N.D. Cal. Oct. 19, 2010)..........................................................12

*Otto Candies, LLC v. Citigroup, Inc.*,
  2023 WL 6418135 (S.D. Fla. Aug. 25, 2023)..........................................................12

*Papadopoulos v. Sidi*,
  2007 WL 9700707 (S.D. Fla. Jan. 8, 2007) ..............................................................7

*Richter v. Wells Fargo Bank NA*,
  2015 WL 163086 (M.D. Fla. Jan. 13, 2015).............................................................13

*Rothman v. Equinox Holdings, Inc.*,
    2021 WL 124682 (C.D. Cal. Jan. 13, 2021) ...........................................................................17

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
    2012 WL 1015806 (N.D. Ill. Mar. 22, 2012) .........................................................................18

*In re Sunbeam Sec. Litig.*,
    89 F. Supp. 2d 1326 (S.D. Fla. 1999) .....................................................................................3

*United Motors Int'l, Inc. v. Hartwick*,
    2017 WL 888304 (C.D. Cal. Mar. 6, 2017) ...........................................................................11

*United States v. Baxter Int'l, Inc.*,
    345 F.3d 866 (11th Cir. 2003) .................................................................................................4

*Vechten v. Elenson*,
    2013 WL 12080759 (S.D. Fla. Nov. 12, 2013) ......................................................................14

**Statutes**

California Unfair Competition Law ..............................................................................................15

Fla. Stat. § 620.8101(7) ................................................................................................................7

Florida Deceptive and Unfair Trade Practices Act ......................................................................17

**Other Authorities**

Rule 8 ........................................................................................................................................3, 4

Rule 9(b) ..............................................................................................................................4, 5, 11

Rule 12(b)(6) .................................................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition (ECF No. 845, the "Opposition" or the "Opp.") ***completely ignores*** that the government investigated FTX's collapse and concluded that investors like the MNVCs "were victims of [SBF's] fraudulent scheme rather than being liable for it." (ECF No. 247 at 3, 14; Mot. at 6–7.)[1] Plaintiffs also fail to mention that in November 2023, a jury confirmed those findings and convicted SBF of conspiracy to defraud investors "by providing false and misleading information to those investors regarding FTX's financial condition and the relationship between FTX and Alameda." (*See* ECF No. 818-1 Exs. 6–7.) Plaintiffs' own allegations include admissions from FTX insiders that they defrauded investors, which the MNVCs highlighted in their Motion. (Mot. at 6–7.) Plaintiffs have ***no response*** in their Opposition.

Rather than address that fatal flaw in their theory, Plaintiffs repeat a handful of irrelevant, unsupported, and implausible allegations. Plaintiffs imagine that the MNVCs were "focused solely on enriching themselves" from their FTX investments (Opp. at 1), even though they also allege that the MNVCs lost hundreds of millions of dollars. Plaintiffs accuse the MNVCs of misleadingly "touting" their due diligence on FTX, but Temasek's alleged statements were made ***after*** FTX collapsed and the statements by SoftBank and SG Capital Limited ***had nothing to do with FTX at all***. Plaintiffs invent roles for Temasek and SoftBank as "*de facto*" members of FTX's board of directors, without any support from the 196-page SAC, solely because certain representatives were on an advisory board. And Plaintiffs claim that SoftBank "lobbied" for "FTX" based on a single letter discussing LedgerX, LLC, which Plaintiffs' own allegations show was uninvolved in any of FTX's misconduct. The MNVCs pointed out these (and many other) flaws in the Motion. Plaintiffs just ignore them and seek to implicate alleged foreign investors in a conspiracy that they were victims of, based on shotgun pleadings alleging only that the investors

---

[1] Capitalized terms used but not otherwise defined have the meaning in the MNVCs' Motion to Dismiss (ECF No. 818) (the "Motion" or "Mot."). Certain of the MNVCs also filed motions to dismiss for lack of personal jurisdiction and for insufficient service of process. (ECF Nos. 815, 816, 817, 819.) The MNVCs who joined the Motion and join this reply brief do so without prejudice to their positions taken in those motions.

did (or must have done) due diligence on FTX; invested in FTX; and lost those investments when FTX collapsed.  Plaintiffs' baseless claims should be dismissed with prejudice.

## ARGUMENT

**I.      The SAC Fails to Meet Basic Pleading Requirements.**

**A.      Plaintiffs' Claims Are Implausible.**

The Motion showed that Plaintiffs' claims are nonsensical and are contradicted by their own allegations.  (Mot. at 11–12.)  It is implausible that the MNVCs could have aided and abetted a massive fraud when Plaintiffs also allege that the MNVCs were victims of that very fraud.  Other than the general, conclusory assertion that "[t]hey have pled, and with the requisite particularity where applicable, each element of each cause of action with detailed facts, which must be taken as true, in support of those allegations" (Opp. at 9), Plaintiffs offer no substantive response.[2]  As a result, the SAC should be dismissed under the *Iqbal/Twombly* standard.  (Mot. at 11–12.)

**B.      The SAC Is an Improper Shotgun Pleading.**

As the Motion demonstrated, the SAC commits at least three "sins" of shotgun pleading.  (*Id.* at 12–13.)  Plaintiffs offer only meritless arguments in response.

***First***, Plaintiffs argue, without support, that the SAC includes "a litany of facts ***specific to each Defendant***" regarding the MNVCs' due diligence on FTX, the amounts and timing of their investments, their "lobbying efforts," "advisory board" membership, and "omissions of material fact when promoting FTX."  (Opp. at 10–11 (emphasis added).)  But Plaintiffs do not and cannot cite anything in the SAC that supports those assertions.

***Second***, Plaintiffs claim that they are not required to plead the specific conduct of any defendant.  (*Id.* at 12.)  In support, Plaintiffs cite inapposite authorities relying on the group pleading doctrine.  (*Id.*)  But that doctrine recognizes only that misstatements or omissions made in company-wide publications such as SEC filings may be attributed to the directors and officers

---

[2] Plaintiffs argue that they are not required to allege their claims with "[a]bsolute particularity" and that lack of detail is "no ground for dismissal."  (Opp. at 9–10.)  As discussed in the Motion and below, however, lack of specificity is an independent ground for dismissal.

who run the company day-to-day.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999).  That doctrine does not apply to Plaintiffs' allegations here.

Plaintiffs lump together **sixteen distinct entities** and fail to specify even which **grouping** of defendants, among the already amalgamated terms "Temasek," "Sino Global," and "SoftBank," is responsible.  (*See, e.g.*, SAC ¶¶ 55, 299–304, 310–312, 315, 323–327, 334–340, 350–353, 371– 386.)  Those allegations come nowhere close to satisfying even Rule 8.  *See Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2011 WL 1233126, at *2 (S.D. Fla. Mar. 30, 2011). Rather, the SAC is the "quintessential 'shotgun' pleading" that the Eleventh Circuit has "condemned repeatedly."  *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

**Third**, Plaintiffs assert that they have "alleged which defendant corporations are agents or alter egos of their corporate parents" sufficient to establish vicarious liability for fraud.  (Opp. at 11–12.)  But Plaintiffs' Opposition does not even purport to make such a showing with respect to any one of the SoftBank entities.  As for Temasek and Sino, Plaintiffs rely upon conclusory allegations, including that the entities have common ownership, share a CEO, or "rel[y] on []corporate agents to conduct business."  (*Id.*)

Courts routinely reject such conclusory allegations of vicarious liability.  *See, e.g.*, *Alvarez Galvez v. Fanjul Corp.*, 533 F. Supp. 3d 1268, 1285 (S.D. Fla. 2021) (concluding Plaintiffs insufficiently alleged vicarious liability when "[a]ll Plaintiffs assert to establish vicarious liability is common management between Fanjul and Central Romana and Fanjul's ownership of a minority of Central Romana's shares"); *First Auto. Serv. Corp., N.M. v. First Colonial Ins. Co.*, 2008 WL 816973, at *6 (M.D. Fla. Mar. 25, 2008) ("Common ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability.") (quoting *Weiss Cap. Mgmt., Inc. v. Crowder*, 964 So. 2d 865, 866 (Fla. 4th DCA 2007)).

## C.      Plaintiffs Fail to Allege Fraud with Particularity Under Rule 9(b).

Plaintiffs concede that Rule 9(b) applies to Counts 2 and 4–19.  (Mot. at 14; Opp. at 9.) But they do not address the MNVCs' case law or even meaningfully engage with the MNVCs' argument that the SAC fails Rule 9(b)'s particularity requirements.  Instead, Plaintiffs argue that

the SAC's lack of specificity "is no ground for dismissal under Rule 12(b)(6)" and that "some matters are beyond [their] knowledge."[3]  (Opp. at 9–10.)

Plaintiffs are incorrect.  Where, as here, Rule 9(b) applies, plaintiffs must plead "with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint."  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).  And even under Rule 8, the SAC "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

Plaintiffs' authorities are not to the contrary.  For example, in *Maison v. Ford Motor Co.*, 2005 WL 1684159, at *2 (N.D. Fla. July 7, 2005), the court dismissed fraud claims under Rule 9(b), finding that they did not specify what false statements defendants made to the public, how "concerted advertising campaigns" were distributed, when or how long those ads ran, and which ads plaintiffs allegedly viewed that induced them to purchase defendant's product.  The Court explained that, "[a]lthough Plaintiffs cannot be expected to have knowledge of details of corporate internal affairs in a corporate fraud case, more detail must be provided for purposes of Rule 9(b) to enable [defendant] to reply intelligently to the issues raised."  *Id.*  So too here.[4]

## II.    Plaintiffs' Unregistered Securities Claims (Counts 1 and 3) Should Be Dismissed.

The MNVCs' Motion showed that Plaintiffs' unregistered securities claims should be dismissed for multiple independent reasons.  Plaintiffs provide no meaningful response.

---

[3] Plaintiffs' problem is not a lack of information.  (*See* Opp. at 9.)  FTX publicly unraveled nearly two and a half years ago, and a wealth of information about FTX's fraud is already available.  Plaintiffs are also actively coordinating with former FTX insiders.  (*See* SAC Exs. A–B.)  Rather, Plaintiffs' problem is that the mountain of available information undercuts their claims.

[4] Plaintiffs' remaining cases are readily distinguishable.  In *Freeman v. Sharpe Resources Corp.*, 2013 WL 2151723, at *9–10 (M.D. Fla. May 16, 2013), and *Livingston v. H.I. Family Suites, Inc.*, 2005 WL 2077315, at *4 (M.D. Fla. Aug. 29, 2005), the plaintiffs provided specifics about the who, what, when, where, and how of the alleged fraud, which Plaintiffs here have not done.  And *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881–82 (11th Cir. 2003) evaluated claims only under the pre-*Iqbal/Twombly* notice pleading standard, not the modern plausibility approach to Rule 8, much less the exacting requirements of Rule 9(b) applicable here.

###### A.   Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 1 and 3).

Plaintiffs concede that "material assistance" and "personal participation" require a direct connection to the sale of unregistered securities to an investor.  (Mot. at 15–16; Opp. at 12–15.) Plaintiffs also do not dispute the SAC fails to (i) identify any statement by any MNVC encouraging anyone to purchase anything; (ii) allege that the MNVCs helped prepare any offering documents; (iii) allege that any MNVC mentioned YBAs or FTT in any public statement; (iv) allege that any MNVC had direct contact with any putative class member; or (v) identify when any Plaintiff allegedly opened a YBA or bought FTT.  (*See* Mot. at 15–16.)  Those concessions are dispositive.

Plaintiffs devote pages of their Opposition to arguing that they need not show that any MNVC made public statements mentioning YBAs or FTT (Opp. at 15–16) or allege privity with any MNVC (*id.* at 16–17).  But the MNVCs never argued that privity or a public statement is strictly required; rather, they explained that a defendant must have had direct involvement in the sale of unregistered securities.  (Mot. at 15–16.)  Plaintiffs make no such allegation.

Undeterred, Plaintiffs recite a handful of vague and conclusory allegations, none of which constitute material assistance or personal participation.  *First*, Plaintiffs claim that "[t]he funding from each of [the MNVCs was] necessary to bring FTX to market."  (Opp. at 12.)  But Plaintiffs ignore the case law holding that it is "not enough that a person provided material assistance in a larger scheme to defraud" (which Plaintiffs also fail to allege) and that a "complaint must [instead] include allegations demonstrating how the defendant assisted in the ***act of selling or offering to sell securities***."  *AREI II Cases*, 216 Cal. App. 4th 1004, 1014–15 (2013) (emphasis added); (Mot. at 15–16).  Plaintiffs cite nothing showing that "funding" FTX meets that standard.

*Second*, Plaintiffs state that "SoftBank lobbied and made statements to the United States government to help establish FTX as a supposedly safe and trustworthy place to buy and keep crypto."  (Opp. at 12, 14.)  That assertion is irrelevant, because those efforts did not involve the offer or sale of any security.  (*See* Mot. at 15–16.)  It is also deeply misleading.  Plaintiffs'

allegation relies on a single letter that SoftBank Group Corp.[5] submitted to the CFTC in support of *LedgerX, LLC's* application for a derivatives clearinghouse license.  (SAC ¶ 363; Opp. at 3–4, 12.)  But Plaintiffs do not dispute that their allegations show that LedgerX, LLC (1) is a regulated entity and is still solvent, (2) was an "exception" to SBF's and Gary Wang's control of FTX's digital assets, and (3) was not involved in any of FTX's misconduct.  (Mot. at 9, 28.)

*Third*, Plaintiffs claim that "Temasek and Softbank both advised and controlled FTX by serving on its 'Advisory Board,' and acted as FTX's agents to overcome legal and regulatory hurdles to bring FTX's platform and unregistered securities to market."  (Opp. at 12.)   But Plaintiffs never allege that the "advisory board" (made up of dozens of people from FTX's equity investors) had any decision-making authority at FTX—only that it "met quarterly and had unique inside information and access into FTX."  (SAC ¶ 358.)  Plaintiffs also affirmatively allege—consistent with the jury verdict against SBF—that FTX was "under the ultimate control of [SBF]." (*Id.* ¶ 197.)  And Plaintiffs cite no authority showing that their vague advisory board allegations are sufficient to show involvement in the offer or sale of securities.  (*See* Mot. at 16.)

*Fourth*, Plaintiffs assert that "each Defendant actively promoted the FTX platform to crypto investors at investment conferences."  (Opp. at 13 (citing SAC ¶¶ 359–61, 366–67, 381).)  Plaintiffs do not identify a single statement made by any SoftBank entity.  And the SAC paragraphs they cite allege only a Temasek International employee's and SG Capital Limited's participation in a Crypto Bahamas event but do not describe any statements at those conferences "promot[ing] the FTX platform," much less any related to the offer or sale of securities to any investor.

*Fifth*, Plaintiffs claim that "Sino Global partnered with Alameda and FTX to start a fund that traded in and churned the FTTs at issue."  (*Id.* at 13–15.)  But Plaintiffs allege no actual facts to support, or even explain, their churning accusation and nowhere allege that they purchased FTT (or anything else) from the group-pleaded "Sino Global" or any entity included in that definition.

---

[5] Though Plaintiffs use the collective term "SoftBank," they cite nothing identifying statements to the government from any other SoftBank entity, nor any Temasek or Sino entity, for that matter.

***Sixth***, Plaintiffs suggest that statements the MNVCs supposedly made about their due diligence on FTX were false and "omitted the truth they discovered about FTX." (*Id.* at 13.) Wrong again. Plaintiffs fail to show that any of the MNVCs' statements are false or misleading or how those statements "actively and directly . . . influence[d] or induce[d] the investor to buy" securities. *Papadopoulos v. Sidi*, 2007 WL 9700707, at *6 (S.D. Fla. Jan. 8, 2007); (*see* Mot. at 10–11, 19–20). Plaintiffs also ignore that Temasek Holdings' statements about due diligence were made ***after*** FTX's collapse. (Mot. at 4, 19.) And the statements attributed to SoftBank Group Corp. and SG Capital Limited had nothing to do with FTX—the SAC shows those were general statements about the types of diligence those entities might do on an investment. (SAC ¶¶ 319–22; Opp. at 5–6, 13, 16; Mot. at 4.) Plaintiffs allege no facts about the diligence that any Sino or SoftBank entity ***actually*** performed on FTX or what any such diligence ***actually*** uncovered.

### B. Plaintiffs Do Not Plead That the MNVCs Were Directors, Officers, Agents, or Partners of FTX (Count 1).

Plaintiffs concede that the MNVCs were not directors or officers of FTX. (*See* Opp. at 14–15; Mot. at 16.) Plaintiffs also do not show the "actual or apparent 'control'" required to demonstrate an agency relationship. (Mot. at 16.) Plaintiffs point to SoftBank's and Temasek's "advisory board" participation (Opp. at 15), but the "advisory board" did not have any control over FTX (*see supra* at 6). Plaintiffs repeat that "Sino Global . . . partner[ed] with FTX to create supposedly independent funds that then traded in the very securities at issue in this lawsuit, the FTTs, to prop them up" (Opp. at 15), but again do not explain how this fact illustrates actual or apparent control. Plaintiffs' vague claims about certain MNVCs "advis[ing] on regulatory concerns," "lobb[ying]," and promoting FTX (*id.*) are equally unavailing.

Plaintiffs' partnership arguments fare no better. Plaintiffs claim that "SBF literally referred to Defendants as his 'partners'" (*id.*), but the pleaded comment (SAC ¶ 304) does not show that the MNVCs, who were passive minority investors, created a legal partnership to carry out the business of FTX, as required. *See* Fla. Stat. § 620.8101(7) (defining "partnership"); *Drewes v. Cetera Fin. Grp., Inc.*, 2020 WL 13566405, at *6 (S.D. Fla. July 9, 2020) ("[T]he colloquial use

of 'partner' does not automatically convert [a] relationship into a *de facto* partnership."). Plaintiffs also (incorrectly) claim that SG Capital Limited "partner[ed]" with FTX in a co-investment fund (Opp. at 15), but the creation of a ***separate*** fund is not a partnership in ***FTX's*** business.

>   **C.      Plaintiffs Plead Neither Negligence nor Intent to Defraud (Counts 1 and 3).**

Plaintiffs say nothing of substance about their failure to plead the requisite intent for their unregistered securities claims. Plaintiffs state that, under Florida law, Count 1 requires a showing of negligence and, under California law, Count 3 requires a showing of "[i]ntent to defraud." (*Id.* at 15–16.) Plaintiffs then offer the same vague, conclusory, and misleading allegations about "the provision of legal and regulatory assistance to FTX," "knowledge of the underlying fraud obtained in the course of their partnerships[,] and the affirmative misrepresentations and omissions they made at investor conferences regarding the due diligence they conducted and the safety of the platform. . . ." (*Id.*) Plaintiffs still ignore the many defects in those claims, including that FTX insiders affirmatively misled the MNVCs about FTX's fraudulent scheme. (*See supra* at 1–2; Mot. at 6–7.)

>   **D.      Plaintiffs Fail to Plead Their Unregistered Broker-Dealer Claim (Count 3).**

Plaintiffs barely defend their unregistered broker-dealer claim. Plaintiffs first argue that privity is not required to state a claim. (Opp. at 17.) But they cite no case law for that position and do not address the cases that explain that they must indeed allege privity with the MNVCs. (Mot. at 17.) Plaintiffs also do not argue that they have alleged privity with the MNVCs; they only argue that they have privity with ***FTX***. (Opp. at 17). That dooms the claim.

Plaintiffs also argue that the MNVCs are secondarily liable under Section 25504.1 for materially assisting in violations of Section 25210(b) with intent to deceive or defraud. (*Id.*) Again, they cite nothing in support. The Motion explained that "Section 25504.1 lists the provisions to which it applies and does not include Section 25210." (Mot. at 17.) Plaintiffs offer no response. Plaintiffs also suggest that the MNVCs are secondarily liable as control persons under Section 25504. (Opp. at 17.) But Count 3 does not mention Section 25504, and Plaintiffs may not use the Opposition "to amend [their] theory of the complaint." *Ct. Appointed Receiver of*

*Lancer Offshore, Inc. v. Citco Grp. Ltd.*, 2011 WL 1233106, at \*11 (S.D. Fla. Mar. 30, 2011). Regardless, any claim under Sections 25504 or 25504.1 fails because the MNVCs were not control persons and did not "materially assist" in any sale of securities or act "with intent to deceive or defraud." (Mot. at 15–17.)

**III.    Plaintiffs' Securities Fraud Claims (Counts 2, 4, 5, and 6) Should Be Dismissed.**

Plaintiffs' Opposition confirms that they failed to plead multiple elements of their securities fraud claims.

**A.    Plaintiffs Do Not Plead Material Assistance or Personal Participation (Counts 2, 4, and 5).**

Plaintiffs again acknowledge that material assistance and personal participation require a showing of direct involvement in the sale of securities by means of false or misleading statements. (Opp. at 19.) And again, Plaintiffs offer no factual allegations even approaching such a showing.

While Plaintiffs claim to "identify material misrepresentations and omissions with specificity," they cite only to misrepresentations that ***FTX*** and ***SBF*** allegedly made. (*Id.* (citing SAC ¶ 416).) Plaintiffs do not point to any factual allegation showing that the MNVCs had ***any involvement*** in any of those statements. (*See id.*; Mot. at 18–19.) Instead, Plaintiffs cite vague allegations about what the MNVCs supposedly should have known about FTX and conclusory claims that the MNVCs assisted or participated in FTX's fraud. (Opp. at 19 (citing SAC ¶¶ 416, 418–21, 433–35).) Those unsupported and implausible allegations are insufficient to state a claim. (*See* Mot. at 18–19; *supra* at 3–4.)

Plaintiffs also repeat their claims that the MNVCs "financed FTX, sponsored FTX investor conferences, lobbied for FTX, lent their reputations and credibility to FTX, touted FTX in their public statements and press releases and prospectuses, and provided legal and regulatory guidance to bring FTX and its unregistered securities to market." (Opp. at 19–20.) As discussed above, the Court should reject those assertions, which are unsupported by the SAC. (*See supra* at 5–7.) In any event, those allegations are insufficient because "no amount of involvement with the business

of the seller will overcome the absence of personal participation or aid in the making of the sale." *Carran v. Morgan*, 2007 WL 3520480, at *4 (S.D. Fla. Nov. 14, 2007).

**B.      Plaintiffs Again Fail to Plead Scienter (Counts 2, 4, 5, and 6).**

As the Motion explained, the MNVCs could not have acted with scienter because Plaintiffs' allegations show that ***FTX deceived and defrauded the MNVCs*** up until FTX collapsed. (Mot. at 19.)   In response, Plaintiffs just repeat their conclusory allegation that the MNVCs "pumped billions into FTX and propped them up on for business on the U.S. market after conducting significant due diligence that should have raised serious flags." (Opp. at 20.) Plaintiffs do not mention their own allegations about the government's investigations or SBF's conviction, which doom their claims.

**C.      Plaintiffs Do Not Allege That the MNVCs Were Control Persons of FTX (Counts 2 and 6).**

Plaintiffs' sole basis for control person liability is the conclusory claim that "Defendants acted both as agents in acting on behalf of FTX in legal and regulatory matters, and as control persons insofar as they served on an Advisory Board." (*Id.* at 21.)   As explained above, Plaintiffs do not allege (i) an actual or apparent agency or partnership relationship or (ii) that FTX's "advisory board" had any decision-making power at FTX.   (*See supra* at 6; Mot. at 20.)

**D.      Plaintiffs Do Not Allege Market Manipulation (Count 5).**

Plaintiffs effectively abandon their market manipulation claim against nearly all Defendants.  (Opp. at 21.)  As against SG Capital Limited, Plaintiffs lack any factual allegations to support their assertion that SG Capital Limited "worked closely with SBF to 'churn' and 'prop up' the FTT tokens and FTX's value" and that "[s]uch trading sustained the false and artificially inflated value of the FTTs and YBAs." (*Id.*)  Regardless, this allegation is not even mentioned in the SAC's market manipulation claim (SAC ¶¶ 443–51), and Plaintiffs do not connect that allegation to a false or misleading statement of material fact, as required to state a claim.

## IV.    The SAC Fails to State a Claim for Conspiracy (Count 7).

Plaintiffs concede that Rule 9(b) applies to their conspiracy claim and that they must plead the "who, what, where, when, [and] how of the alleged conspiracy." (Mot. at 20–21; Opp. at 22–23.) Plaintiffs' Opposition makes clear that they have not done so.

To start, Plaintiffs again ignore that the MNVCs "were victims of the alleged fraud, rather than co-conspirators." *Nuwave, Ltd. v. Argyle Equities, LLC*, 2007 WL 3130443, at *4 (M.D. Fla. Oct. 24, 2007) (dismissing conspiracy claim); (*see supra* at 1–2). Rather than address this fundamental problem, Plaintiffs argue that "an agreement may be inferred 'from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct.'" (Opp. at 21.) Plaintiffs then speculate that the MNVCs formed "a tacit agreement" with unspecified "agents of FTX." (*Id.* at 23.) They further speculate that this so-called tacit agreement may have been no more than an implied agreement to "overlook" FTX's "sloppy internal controls and other regulatory issues," not an active participation in any wrongdoing. (*Id.*)

Plaintiffs' hazy and implausible allegations cannot support a conspiracy claim. *See Meridian Tr. Co. v. Batista*, 2018 WL 4693533, at *6 (S.D. Fla. Sept. 26, 2018) (rejecting "conclusory and unsupported assertions of an agreement" and requiring specifics of the alleged conspiracy). Indeed, the allegations here are a far cry from those in the authorities Plaintiffs cite. *See N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 999 (N.D. Fla. 2019) (non-fraud conspiracy plausibly pled where one defendant engaged in intimidation and retaliation to cover up abuse and another made employees agree not to discuss their knowledge of the abuse); *United Motors Int'l, Inc. v. Hartwick*, 2017 WL 888304, at *10 (C.D. Cal. Mar. 6, 2017) (non-fraud conspiracy plausibly pled where plaintiffs alleged the specific timing of the agreement and coordinated actions taken to intimidate plaintiffs); *Freeney v. Bank of Am. Corp.*, 2015 WL 12535021, at *32 (C.D. Cal. Nov. 19, 2015) (plaintiff alleged when the conspiracy began, the nature of the agreement, romantic and familial relationships among the co-conspirators, and representations made by defendants that all supported inference of agreement to defraud plaintiff).

**V.      The SAC Fails to State Any Aiding and Abetting Claim (Counts 8–10).**

Plaintiffs acknowledge that they must plead facts showing that the MNVCs had actual knowledge of FTX's wrongdoing and that they substantially assisted in its commission.  (Opp. at 23.)  Plaintiffs fail to do so.  *First*, instead of showing actual knowledge, Plaintiffs rely solely on supposed "red flags" that they claim the MNVCs ought to have noticed.  (*Id.* at 25.)  But red flags and allegations that the MNVCs had "information from which one ***could*** or even should deduce the existence of fraud" are "insufficient to state a claim."  *Angell v. Allergan Sales, LLC*, 2019 WL 3958262, at *12–13 (M.D. Fla. Aug. 22, 2019) (emphasis added); (Mot. at 22–23).   Further, Plaintiffs' "factual allegations that [SBF and others] intentionally concealed the scheme lend support to the proposition that the [MNVCs] did not have actual knowledge of" FTX's wrongdoing.  *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018).

Plaintiffs' sparse allegations do not change this analysis.  For Temasek, Plaintiffs point to nothing more than the fact that Temasek conducted diligence before investing and monitored the investment afterward.  (Opp. at 25; SAC ¶¶ 320–22.)  Similarly, Plaintiffs only speculate about SoftBank's diligence.  (Opp. at 25–26.)  As discussed above, these diligence allegations are defective.  (*See supra* at 7.)  Plaintiffs also point to the firing and demotion of certain SoftBank Group Corp. employees (Opp. at 26), but such allegations are insufficient to show actual knowledge, particularly where, as here, Plaintiffs do not plead specific facts connecting the personnel decision with the wrongdoing at issue.  *See In re Nvidia Corp. Sec. Litig.*, 2010 WL 4117561, at *11 (N.D. Cal. Oct. 19, 2010); *Otto Candies, LLC v. Citigroup, Inc.*, 2023 WL 6418135, at *7 (S.D. Fla. Aug. 25, 2023).

Plaintiffs further allege that the undefined term "Sino Global" hired a former FTX financial executive after FTX's collapse.  (Opp. at 26.)  But the *post-hoc* hiring of an individual whom Plaintiffs have not accused of wrongdoing says nothing about whether any Sino entity knew of, let alone substantially assisted, her former employer's misconduct.  Nor is hiring an individual

with cryptocurrency startup experience to work at a cryptocurrency startup-focused venture capital firm equivalent to the "atypical" business transactions discussed in Plaintiffs' cases.[6]

**Second**, Plaintiffs fail to allege that the MNVCs substantially assisted FTX's wrongful conduct. Because Plaintiffs maintain that FTX committed "the largest financial fraud in US history" (SAC ¶ 1), they must allege that the MNVCs' assistance was substantial in that context. "[S]ubstantial assistance will not be found where the amount of assistance alleged is minor in comparison to the massive scope of the overall fraudulent scheme." *Richter v. Wells Fargo Bank NA*, 2015 WL 163086, at *3 (M.D. Fla. Jan. 13, 2015) (quotations and alterations omitted). Plaintiffs assert, in a conclusory manner, that "FTX could not have reached its success without the extensive assistance of" the MNVCs. (Opp. at 25.) But the SAC is devoid of facts showing that the MNVCs' investments, or anything else they did, were in any sense material to FTX's fraud. (*See supra* at 5–7, 9–10; Mot. at 23–24.) And, again, Plaintiffs ignore that SBF has now been convicted of defrauding investors like the MNVCs.

## VI. The SAC Fails to State a Conversion Claim or Aiding and Abetting Conversion Claim Against the "Sino Global Defendants" (Counts 11 and 12).

Plaintiffs do not contest that when the claim is for conversion of money, the plaintiff must plead a "specific sum capable of identification." (Mot. at 25; Opp. at 27.) Plaintiffs claim that they do not need to allege the "'exact amount they invested with FTX' to adequately identify the converted funds here." (Opp. at 27.) But they ignore the definition of "identifiable," which refers to money "delivered one at a time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where the wrongful possession of such property is obtained." *Aileron Inv. Mgmt., LLC v. Live Oak Banking Co.*, 2021 WL

---

[6] (Opp. at 26 (citing *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1121 (C.D. Cal. 2003) (bank engaged in "atypical banking procedures to service" accounts subject to Ponzi scheme); *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1012 (11th Cir. 1985) (bank wrote letter of reference for fraudster customers containing "statements of which the writer ha[d] no knowledge . . . solely for the purpose of 'currying favor' with" the customers); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975) (finding that bank did ***not*** aid and abet even though it engaged in "sharp practices" by requiring lender to bank's client to sign cross-collateral clause and not disclosing client's outstanding loans)).)

1238401, at *2 (M.D. Fla. Apr. 2, 2021). Typical examples include "an escrow account, a bag of gold coins, or the like." *Id.* (citation omitted). Even if the plaintiff pleads "concrete sums" converted, that ***still*** does not suffice absent a claim that the funds "had to be segregated, kept in a separate account, or in a trust or escrow account." *Id.* at *7. Plaintiffs have failed to do so here.[7]

In response to the argument that no Sino Global Defendant wrongfully took dominion over Plaintiffs' property, Plaintiffs merely assert that the "Sino Global Defendants. . . converted Plaintiffs' property as 'co-GPs' or co-general partners." (Opp. at 26.) Plaintiffs cite case law that partners "acting within their authority and in pursuit of partnership business, bind all other partners and act as their agents." (*Id.*) But there are no allegations that when FTX or Alameda allegedly converted Plaintiffs' property, they were acting within their authority as partners of Liquid Value Fund I and in pursuit of partnership business; indeed there are no allegations that FTX or Alameda had any operational rights in the Fund. Rather, the SAC alleges FTX and Alameda took "Class Member funds" (not even named Plaintiffs' funds) and in turn invested them with the "Sino Global Defendants." (SAC ¶ 338.) Finally, for the same reason Plaintiffs cannot state their other aiding and abetting claims (*supra* at 12–13), they cannot state an aiding and abetting conversion claim.

## VII. The SAC Fails to State an Unjust Enrichment Claim Against the "Sino Global Defendants" (Count 13).

As the Motion showed, an unjust enrichment claim will be dismissed as duplicative if it cannot be "differentiate[d] . . . from the other torts alleged" or if the plaintiff has an adequate remedy at law. (Mot. at 26.) Plaintiffs do not address this argument, or the argument that an unjust enrichment claim fails when the plaintiff has a remedy at law (*id.*), and are deemed to have conceded them. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

---

[7] Plaintiffs cite *Vechten v. Elenson*, 2013 WL 12080759, at *5 (S.D. Fla. Nov. 12, 2013), but there, unlike here, the defendant had presented evidence of the exact amount converted, and it was an open question as to whether or not the actual amount was higher.

Plaintiffs argue only that they enriched the "Sino Global Defendants" because "Sino Global Capital was co-general partners with SBF/FTX in the Liquid Value Fund." (Opp. at 27.) As explained above, that fact by itself is insufficient to impute FTX's actions to any Sino Defendant.

## VIII.   The SAC Fails to State a Claim for Violation of the California Unfair Competition Law (Count 14).

The Opposition does not rebut any of the reasons for dismissing Plaintiffs' UCL claim.

### A.   Plaintiffs' UCL Claim Relates to "Securities Transactions."

Under settled law, the UCL does not apply to "securities transactions." (Mot at 27.) Plaintiffs respond only that "UCL claims may proceed to the extent they are unrelated, or merely tangentially related to securities transactions." (Opp. at 28.) But Plaintiffs' entire SAC is premised on their purchase of supposed securities from FTX, and their UCL claims allege that the MNVCs misled consumers "into purchasing, depositing, and/or transacting in fiat currency and digital assets with accounts with FTX." (SAC ¶¶ 479, 497.) "No court . . . has allowed Section 17200 claims to proceed where, as here, the predicate acts are securities transactions." *Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 866 (N.D. Cal. 2011).

### B.   Plaintiffs Lack Standing to Bring a UCL Claim.

Plaintiffs argue that the MNVCs caused them immediate injury via the "larger scheme that [the MNVCs] aided by: promoting FTX, advising FTX on corporate governance and legal and regulatory compliance; lobbying to bring the FTX platform to market; and trading in the securities at issue to prop them up and give FTX legitimacy." (Opp. at 28–29.) Those claims are insufficiently pleaded (*see supra* at 5–7) and, regardless, do not constitute misrepresentations made to Plaintiffs that would support a UCL claim. (Mot. at 27–28.)

Further, to state a UCL claim, Plaintiffs must demonstrate actual reliance and that "the defendant's misrepresentation or nondisclosure was an ***immediate cause*** of the plaintiff's injury-producing conduct." *Block v. eBay, Inc.*, 747 F.3d 1135, 1140 (9th Cir. 2014) (emphasis added; quotations omitted). Plaintiffs argue that "[b]ut for Defendants' conduct in funding and controlling and acting as agents on behalf of FTX, and but for their omissions when promoting

FTX to the public, Plaintiffs could not have and would not have opened accounts on the FTX platform." (Opp. at 29.) Plaintiffs cite nothing for this conclusory proposition, and there are no factual allegations in the SAC that Plaintiffs saw any statements by the MNVCs or that those statements influenced their purchasing decisions. (Mot. at 28–29.)

### C. Plaintiffs Do Not Plead Fraud, Unfairness, or Unlawfulness.

Contrary to Plaintiffs' own allegations that FTX defrauded the MNVCs, Plaintiffs argue that the MNVCs supposedly knew of SBF's fraud, promoted FTX anyway, and "were kicked back tens of millions of dollars to trade in [FTX's] tokens and assist in the scheme." (Opp. at 29.) Unsurprisingly, Plaintiffs cite nothing to support their bogus "kickback" allegation. In any event, Plaintiffs fail to show that the MNVCs' conduct would have deceived or misled an actual customer, as required by the "unfair" and "fraudulent" prongs of the UCL. (*See* Mot. at 29.) Finally, Plaintiffs concede that their "unlawful" allegations rely on their California securities fraud and false advertising claims (Opp. at 28), and those claims are insufficiently pleaded (Mot. at 30).

### D. Plaintiffs' UCL Claim Fails Because They Seek an Inappropriate Remedy.

Plaintiffs do not contest that, to establish a UCL claim, they must lack an adequate remedy at law. (*Id.*)[8] Plaintiffs instead argue, without citation, that they have no such remedy "given the tenuous legal status and economic value of their accounts at FTX and the tokens held in those FTX accounts." (Opp. at 29 n.9.) That is irrelevant to Plaintiffs' suit against the MNVCs, where they plainly have a remedy at law.

### E. Plaintiffs' UCL Claim Is Not Sufficiently Connected to California.

Plaintiffs argue that the UCL applies because two Plaintiffs are from California. (*Id.*) But they do not, and cannot, defend the assertion of a UCL claim by the fourteen Plaintiffs who are not from California. (*Compare* SAC ¶¶ 13, 16–28, *with id.* ¶¶ 477–85.)

---

[8] Plaintiffs concede that they "are not entitled to restitution or injunctive relief." (Mot. at 31.)

IX.    **PLAINTIFFS' FAL CLAIM (COUNT 15) SHOULD BE DISMISSED.**

Plaintiffs have not rebutted the four independent reasons why their FAL claim should be dismissed.  ***First***, Plaintiffs cannot premise their FAL claim on securities transactions.  (Mot. at 31; Opp. at 30; *see supra* at 15.)  ***Second***, Plaintiffs do not identify any specific advertising statement by the MNVCs, much less any untrue or misleading statement.  (Mot. at 31–32.)  Plaintiffs' argument that "Defendants aided in bringing FTX to market" and "touted their FTX investments at crypto investment conferences," without a single citation to the SAC (Opp. at 31), misses the mark.  The only actual statements that Plaintiffs could point to are factually true statements about the MNVCs' investments in FTX or their subjective and unactionable opinions about FTX or SBF.  (Mot. at 31–32.)  Plaintiffs also ignore that they have not alleged that they read, heard, or relied on anything said by the MNVCs that constituted a substantial factor in their decision-making.  *See Rothman v. Equinox Holdings, Inc.,* 2021 WL 124682, at *5–6 (C.D. Cal. Jan. 13, 2021) (explaining that the presumption that one would have behaved differently cannot be applied to misrepresentations plaintiffs never saw).  ***Third***, Plaintiffs do not dispute that their failure to allege the "fraudulent" prong of the UCL also requires dismissal of their FAL claim.  (Mot. at 32.)  ***Fourth***, as explained above, Plaintiffs have an adequate remedy at law.  (*Id.*; *see supra* at 16.)

X.    **The SAC Fails to State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act (Count 16).**

Plaintiffs' FDUTPA claim, like their UCL and FAL claims, cannot proceed because it is premised on securities transactions.  (Mot. at 32; *see supra* at 15, 17.)  Plaintiffs also have not sufficiently pleaded the elements of a FDUTPA claim for three additional reasons.

***First***, Plaintiffs do not dispute that they have not alleged any act by any MNVC likely to mislead Plaintiffs and also failed to specify which representations, omissions, or practices by which of the MNVCs caused Plaintiffs to transact on the FTX platform.  *See Blair v. Wachovia Mortg. Corp.*, 2012 WL 868878, at *3–4 (M.D. Fla. Mar. 14, 2012) (dismissing FDUTPA claim

for failure to plead "precisely what statements were made," in what form, "the time and place of each such statement, and the person responsible for making them"); (Mot. at 33).

*Second*, Plaintiffs claim that they have pleaded causation and that the MNVCs confuse causation with reliance. (Opp. at 31–32.) They are wrong. Under Eleventh Circuit precedent, a plaintiff must show "that the allegedly misleading statement caused [the] claimed damages." *Dolphin LLC v. WCI Cmties., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *see also Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015). And, while some courts hold that plaintiffs need to show only that the practice was "likely to deceive a consumer acting reasonably in the same circumstances," *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2012 WL 1015806, at *7 (N.D. Ill. Mar. 22, 2012) (surveying case law), Plaintiffs meet neither standard. They do not allege that they relied on any statement by any MNVC or that any statement by any MNVC would have caused an objectively reasonable consumer to suffer damages by transacting on the FTX platform. (*See supra* at 5–7, 15–17; Mot. at 33.)

*Third*, Plaintiffs erroneously claim they have pleaded damages because they lost their investments on FTX. (Opp. at 32.) But Plaintiffs ignore that SBF's and other FTX insiders' actions caused their losses, not any alleged deceptive acts by the MNVCs. (Mot. at 33–34.)

## XI.    The SAC Fails to State a Claim for Negligent Misrepresentation (Count 17).

Plaintiffs have not pleaded the elements of a negligent misrepresentation claim. *First*, Plaintiffs argue that "Defendants made public statements intended to legitimize FTX in the public eye," rehashing the same flawed allegations that form the basis of all their claims (Opp. at 32), which fail for the reasons discussed above (*see supra* at 5–7). *Second*, Plaintiffs claim that "Defendants knew or should have known their statements were false" (Opp. at 33) but allege no facts about what the MNVCs uncovered in their due diligence or how that rendered false any of their statements about FTX. *Third*, Plaintiffs do not dispute that they "have entirely failed to link their alleged damages to any specific statement by any of the MNVCs." (Mot. at 35; Opp. at 35.)

18

**XII.    The SAC Fails to State a Claim for Intentional Misrepresentation and Fraudulent Inducement (Counts 18 and 19).**

Plaintiffs have not adequately pleaded their intentional misrepresentation and fraudulent inducement claims.  *First*, Plaintiffs argue that the MNVCs made false representations about "their due diligence; that FTX's services were safe; that SBF was a visionary who was focused on decreasing risk in trading; and that FTX was an exchange the public should trust."  (Opp. at 34.)  But the SAC paragraph Plaintiffs cite concerns only facts that *FTX* allegedly failed to disclose.  (*Id.*; SAC ¶ 167.)  Plaintiffs do not identify any false statements by any MNVC.  (*See* Mot. at 36.)

*Second*, Plaintiffs do not allege that the MNVCs knew that any representation was false.  Plaintiffs claim that the MNVCs "turned a blind eye to what they knew and should have known" about FTX (Opp. at 34) but do not allege that the MNVCs actually uncovered any wrongdoing at FTX and again ignore that the MNVCs themselves were defrauded (*see supra* at 1–2, 8, 10, 13; Mot. at 36).

*Third*, Plaintiffs argue that false statements need not be made directly to an injured party and could instead be made with the intent that they reach and be acted on by the injured party.  (Opp. at 34–35.)  But again, Plaintiffs fail to make even that showing, as they do not identify any false statement by an MNVC about an FTX product or service.  (Mot. at 36.)

*Fourth*, Plaintiffs' reliance argument is unsupported.  Plaintiffs do not argue that they relied on any statement by the MNVCs.  Plaintiffs instead claim that "multiple *other* actors in the space have publicly stated relying [sic] on the due diligence performed by FTX institutional investors."  (Opp. at 34–35 (emphasis added).)  But Plaintiffs cannot assert claims on behalf of these "other actors."  Further, nothing in the SAC illustrates that these "other actors" relied on the supposed diligence statements by the MNVCs.  Indeed, no one could have relied on those statements; the statements attributed to SG Capital Limited and SoftBank were not about FTX, and Temasek Holdings made its alleged statements *after* FTX collapsed.  (*See supra* at 7.)

**XIII.    The SAC Fails to State a Claim for a Declaratory Judgment (Counts 20 and 21).**

*First*, Plaintiffs agree that if their underlying claims fail, their declaratory judgment claims also fail.  (Mot. at 36–37; Opp. at 35.)  *Second*, Plaintiffs concede that their declaratory relief claims seek improper remedial measures but argue that "does not somehow detract from the need for the court to adjudicate the parties' rights."  (Opp. at 35; Mot. at 37.)  They cite nothing for that position and do not defend their requested relief.  *Third*, Plaintiffs admit that "equitable relief may be barred where," as here, "a party seeks compensatory damages which provide an adequate remedy at law."  (Opp. at 36.)  But Plaintiffs claim that "the remedies here are distinct" and that they seek declaratory relief "to curb future harm."  (*Id.*)  That argument fails because there is no possibility of future harm—the FTX platform is no longer functioning, and SBF is in jail.  (*See* Mot. at 30.)  *Fourth*, Plaintiffs confusingly state that the relief they seek is not to improperly "adjudicate past conduct or obtain a 'purely legal ruling'" but that they "seek a determination of whether the YBAs were illegally sold by FTX and illegally solicited by Defendants, which will determine whether there is further escalation of this conflict or further litigation."  (Opp. at 36.)  Plaintiffs do not allege, however, that the MNVCs sold or solicited the sale of YBAs (or any FTX product) to Plaintiffs, and the Opposition does not explain how they will apparently "further escalat[e] this conflict" such that a declaratory judgment is appropriate.

**XIV.    THE SAC FAILS TO STATE A CLAIM FOR PUNITIVE DAMAGES (CLAIM 22).**

Plaintiffs concede that their claim for punitive damages is not a cause of action but instead is a type of relief.  (*Id.* at 36–37.)  That concession is dispositive.  *See Montalbano v. Ariad Pharms., Inc.*, 2015 WL 11198245, at *10 (S.D. Fla. Aug. 4, 2015); (Mot. at 37–38).

**<u>CONCLUSION</u>**

The SAC against the MNVCs should be dismissed with prejudice.

Dated:  March 28, 2025                                    Respectfully submitted,


*/s/ Jason Gottlieb*                                     */s/ Andrew J. Ehrlich*
Jason Gottlieb                                           Adam S. Fels (Fla. Bar No. 0114917)
Michael Mix                                              FRIDMAN FELS & SOTO, PLLC
Vani Upadhyaya                                           150 Alhambra Circle
MORRISON COHEN LLP                                       Suite 715
909 Third Avenue                                         Coral Gables, FL 33134
New York, NY 10022                                       Telephone: (305) 569-7701
Telephone: (212) 735-8600                                Email: afels@ffslawfirm.com
Email: jgottlieb@morrisoncohen.com
          mmix@morrisoncohen.com                         Brad S. Karp
          vupadhyaya@morrisoncohen.com                   Andrew J. Ehrlich
                                                         Nina M. Kovalenko
                                                         PAUL, WEISS, RIFKIND, WHARTON &
*Counsel for Defendant Sino Global Capital*              GARRISON LLP
*Holdings, LLC; Sino Global Capital Limited;*            1285 Avenue of the Americas
*Sino Global Capital Management LLC; Liquid*             New York, NY 10019
*Value Offshore Feeder Fund I LP; Liquid*               Telephone: (212) 373-3000
*Value GP Limited; and Liquid Value Fund GP*            Facsimile: (212) 757-3990
*Ltd.*                                                   Email: bkarp@paulweiss.com
                                                                   aehrlich@paulweiss.com
                                                                   nkovalenko@paulweiss.com


*/s/ Ryan M. Keats*                                      *Counsel for Defendants Temasek Holdings*
Anna Erickson White (mdl102198)                          *(Private) Ltd.; Temasek International (USA)*
Ryan M. Keats (mdl102197)                                *LLC; Temasek International Pte. Ltd.; Artz*
MORRISON & FOERSTER LLP                                  *Fund Investments Pte. Ltd.; and Blakiston*
425 Market Street                                        *Investments Pte. Ltd.*
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: awhite@mofo.com
          rkeats@mofo.com


Eric D. Lawson (mdl102196)
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019-9601
Telephone: (212) 468-8000
Email: elawson@mofo.com


Adam M. Foslid (Fla. Bar No. 682284)
WINSTON & STRAWN LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 2400
Miami, FL 33131

Telephone: (305) 910-0500
Email: afoslid@winston.com

*Counsel for Defendants SoftBank Group*
*Corp.; SB Group US, Inc.; SoftBank*
*Investment Advisers (UK) Limited; SoftBank*
*Global Advisers Limited; and SoftBank II*
*Tempest (DE) LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of March, 2025, I e-filed a true and correct copy of the foregoing document using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.


/s/ *Jason Gottlieb*


23