**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
No. 1:23-md-3076-KMM

*In re*

*FTX Cryptocurrency Exchange Collapse Litigation*
_____

This Document Relates to the Administrative Class Action
Complaint and Demand for Jury Trial as to the Bank
Defendants (ECF No. 155)

**DEFENDANTS DELTEC BANK AND TRUST COMPANY LIMITED AND**
**JEAN CHALOPIN'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE CLASS ACTION COMPLAINT AS TO BANK DEFENDANTS**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     INTRODUCTION .................................................................................................... 1

II.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DELTEC BANK OR CHALOPIN. ........................................................................................ 1

    A.    Defendants are not subject to personal jurisdiction in Florida. ............................ 1

        1.    *Plaintiffs have not alleged that either Deltec Bank or Chalopin "expressly aimed" intentional harm at a Florida resident.* ...................... 1

        2.    *Plaintiffs' conspiracy claim also cannot support personal jurisdiction.* ................................................................................................ 3

    B.    Defendants are not subject to personal jurisdiction in Washington State............... 3

    C.    RICO's nationwide service provision does not confer personal jurisdiction over foreign defendants served in The Bahamas. ........................................................ 3

    D.    The exercise of personal jurisdiction over Deltec Bank and Chalopin would violate the Due Process Clause of the Constitution. ................................................. 5

III.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THEIR STANDING. .............. 7

    A.    Plaintiffs do not allege their losses are "fairly traceable" to Defendants. .............. 7

    B.    Plaintiffs' claims are moot. ..................................................................................... 9

IV.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED  UNDER FRCP 12(B)(6)................................................................................................................. 10

    A.    Plaintiffs fail to allege a plausible civil conspiracy claim. .................................... 10

    B.    Plaintiffs fail to allege plausible aiding and abetting claims. ............................... 12

    C.    Plaintiffs' Unjust Enrichment claim fails. ........................................................ 144

    D.    Plaintiffs' RICO claim should be dismissed........................................................ 15

        1.    *Plaintiffs' "Common Purpose" allegations are insufficient.* ................... 16

        2.    *Plaintiffs do not allege they suffered the requisite domestic injury.* ....... 188

V.    *FORUM NON CONVENIENS* WARRANTS DISMISSAL OF THIS ACTION. ........... 19

CONCLUSION................................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                                                    **Page(s)**

*Aceto Corp. v. TherapeuticsMD, Inc.*,
   953 F. Supp. 2d 1269 (S.D. Fla. 2013) ............................................................................... 15

*Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*,
   418 F. Supp. 3d 1075 (S.D. Fla. 2019) ............................................................................... 14

*Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*,
   631 F. Supp. 3d 950 (W.D. Wash. 2022) ....................................................................... 3, 5, 6

*Barilotti v. Island Hotel Co.*,
   2014 WL 1803374 (S.D. Fla. May 6, 2014) ........................................................................ 20

*Bascuñán v. Elsaca*,
   874 F.3d 806 (2d Cir. 2017) (*Bascuñán I*) ......................................................................... 18

*Bascuñán v. Elsaca*,
   927 F.3d 108 (2d Cir. 2019) (*Bascuñán II*) ........................................................................ 19

*Bhatia v. Silvergate Bank*,
   725 F. Supp. 3d 1079 (S.D. Cal. 2024) ............................................................................... 12

*Brink's Mat v. Diamond*,
   906 F.2d 1519 (11th Cir. 1990) ............................................................................................ 4

*Bulpit, LLC v. DeCanio*,
   2013 WL 12126313 (S.D. Fla. June 7, 2013) (Moore, J.) .................................................... 2

*Corbett v. Transp. Sec. Admin.*,
   968 F. Supp. 2d 1171 (S.D. Fla. 2012) ............................................................................... 10

*Correa v. BAC Home Loans Servicing LP*,
   853 F. Supp. 2d 1203 (M.D. Fla. 2012) ............................................................................... 7

*Courbin v. Scott*,
   596 Fed. Appx. 729 (11th Cir. 2014) ................................................................................... 5

*Dean v. Motel 6 Operating L.P.*,
   134 F.3d 1269 (6th Cir. 1998) ............................................................................................. 6

*In re Delta Dental Antitrust Litig.*,
   509 F. Supp. 3d 1377 (J.P.M.L. 2020) ................................................................................ 3

*DiMaio v. Democratic Nat'l Comm.*,
   520 F.3d 1299 (11th Cir. 2008) ........................................................................................... 7

*Focus on the Fam. v. Pinellas Suncoast Transit Auth.*,
   344 F.3d 1263 (11th Cir. 2003) ........................................................................................... 8

*Foster v. Sun Int'l Hotels, Ltd.*,
    2002 WL 34576251 (S.D. Fla. Feb. 5, 2002) ....................................................................... 19

*Freeman v. JPMorgan Chase Bank N.A.*,
    675 Fed. Appx. 926 (11th Cir. 2017) ................................................................................... 8

*Garcia-Bengochera v. Carnival Corp.*,
    57 F.4th 916 (11th Cir. 2023) .............................................................................................. 8

*Hearst v. West*,
    31 Fed. Appx. 366 (9th Cir. 2002) ...................................................................................... 3

*Honig v. Kornfeld*,
    339 F. Supp. 3d 1323 (S.D. Fla. 2018) ............................................................................. 10

*Isaiah v. JP Morgan Chase Bank*,
    2017 WL 5514370 (S.D. Fla. Nov. 15, 2017) .................................................................... 12

*Josefsberg v. Uber Techs., Inc.*,
    2023 WL 5670301 (S.D. Fla. Aug. 30, 2023) ..................................................................... 8

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ............................................................................................................. 6

*Lamm v. State St. Bank & Tr.*,
    889 F. Supp. 2d 1321 (S.D. Fla. 2012), *aff'd*, 749 F.3d 938 (11th Cir. 2014) ............... 11, 12

*Lewis v. Mercedez-Benz United States*,
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) ............................................................................. 17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ............................................................................................................. 8

*Licciardello v. Lovelady*,
    544 F.3d 1280 (11th Cir. 2008) ........................................................................................ 1, 2

*In re Mednax Services, Inc., Customer Data Security Breach Litigation*,
    603 F. Supp. 3d 1183 (S.D. Fla. 2022) ............................................................................... 8

*Morse v. Sun Int'l Hotels, Ltd.*,
    2001 WL 34874967 (S.D. Fla. Feb. 26, 2001) .................................................................. 20

*O'Keefe v. Farmington State Bank et al.*,
    No. 2:23-cv-00213 (E.D. Wash. filed Jul. 26, 2023) ......................................................... 3

*Oueiss v. Saud*,
    2022 WL 1311114 (S.D. Fla. Mar. 29, 2022) ................................................................... 1, 5

*Owens v. Bankasi*,
    2021 WL 638975 (S.D.N.Y. Feb. 16, 2021) ..................................................................... 19

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997) ................................................................................ 3, 4, 20

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012) ...................................................................................... 8

*Romano v. Motorola, Inc.*,
    2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) .............................................................. 15

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,
    382 F.3d 1097 (11th Cir. 2004) .................................................................................... 19

*In re Takata Airbag Prods. Liab. Litig.*,
    2017 WL 2406711 (S.D. Fla. June 1, 2017) ................................................................ 15

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................... 2, 5

*Wiand v. Wells Fargo Bank, N.A.*,
    938 F. Supp. 2d 1238 (M.D. Fla. 2013) ................................................................ 12, 13

*Williams v. Wells Fargo Bank N.A.*,
    2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ......................................................... 14, 15

*In Re Woodbridge Investments Litig.*,
    2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020) ...................................................... 12

**State Cases**

*Am. Safety Ins. Serv., Inc. v. Griggs*,
    959 So. 2d 322 (Fla. 5th DCA 2007) ........................................................................... 14

**Federal Statutes**

Lanham Act,
    15 U.S.C.§§ 1051-1141n (2012) .................................................................................... 8

RICO Act,
    18 U.S.C. §§ 1961-1968 (1976) RICO .................................................................. *passim*

**Rules**

Federal Rule of Civil Procedure 4(e) ................................................................................... 4

Federal Rules of Civil Procedure 12(b)(6) ........................................................................ 10

**Other Authorities**

U.S. Const. Article III, § 2 ................................................................................................... 7

## I.      INTRODUCTION

Plaintiffs must know the Second Amended Complaint ("SAC")—in which they assert implausible claims against Bahamian citizens not subject to jurisdiction in the United States—is entirely insufficient. That is evidenced by the sheer amount of extraneous information and exhibits they improperly include in their Response (D.E. 853)—three pages in the brief and ten exhibits. While reference to matters outside a complaint may be appropriate in responding to a motion for lack of personal jurisdiction, that is not what Plaintiffs have done here. Except for a single exhibit, Plaintiffs do not cite any of this new information in their jurisdictional argument. Instead, Plaintiffs use the new information to plug the many holes in the SAC. That is both improper and futile.

The remainder of Plaintiffs' Response fares no better. Nothing in the SAC or Response plausibly demonstrates this Court has jurisdiction over Deltec Bank and Chalopin or that Deltec Bank and Chalopin knowingly participated in FTX's fraud, which deceived most of the world.

The Court should dismiss all claims against Deltec Bank and Chalopin with prejudice.

## II.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DELTEC BANK OR CHALOPIN.

Plaintiffs concede, as they must, that Deltec Bank (a Bahamian bank) and Chalopin (a Bahamian citizen and resident) are not subject to general jurisdiction. Their arguments for specific jurisdiction also do not pass muster. And RICO's service provision does not save them either since Defendants were not served in the U.S. and Plaintiffs' underlying RICO claim is legally deficient.

### A.      Defendants are not subject to personal jurisdiction in Florida.

#### 1.      Plaintiffs have not alleged that either Deltec Bank or Chalopin "expressly aimed" intentional harm at a Florida resident.

"Courts strictly construe Florida's long-arm statute in favor of the nonresident defendant." *Oueiss v. Saud*, 2022 WL 1311114, at * 11 (S.D. Fla. Mar. 29, 2022). Citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008), Plaintiffs argue Florida's long-arm statute (§

1

48.193) permits the exercise of jurisdiction over nonresident defendants who commit tortious acts outside Florida that cause injuries to Florida residents. *Resp.* at 17. *Lovelady* is not applicable here.

**First**, *Lovelady* is distinguishable on its face. It involved a defendant who used the Internet "as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use [was] aimed at the victim's state of residence [Florida]." 544 F.3d at 1288 n.8. Here, Plaintiffs—only three of whom reside in Florida—do not allege Defendants, a Bahamian bank that provided banking services in The Bahamas and its Bahamian chairman, targeted them with false Internet postings or in any other way. Nor do Plaintiffs allege Defendants "expressly aimed" any conduct at Florida. *Lovelady* "require[s] that the intentional tort be 'expressly aimed at the forum state.'" *Bulpit, LLC v. DeCanio*, 2013 WL 12126313, at *5 (S.D. Fla. June 7, 2013) (Moore, J.) (quoting *Lovelady*, 544 F.3d at 1288).

**Second**, the Supreme Court has squarely foreclosed any argument that courts may exercise personal jurisdiction over a defendant simply because the plaintiff was injured in the forum state:

> [The] mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in some meaningful way.

*Walden v. Fiore*, 571 U.S. 277, 290 (2014); *see also* Section II.D., below. Thus, merely alleging some Plaintiffs (only three of sixteen) felt harm in Florida is not sufficient.

Nor is it enough that Deltec Bank allegedly "conducted diligence on FTX US" and "manually processed" transactions into and out of FTX U.S.'s accounts at Deltec. *Resp.* at 18. Plaintiffs do not allege Deltec Bank (a Bahamian bank) performed any of these actions in Florida. Plaintiffs allege one or two bank personnel (not Chalopin) occasionally communicated by Telegram chat message with various people associated with non-party Alameda, but they never allege any of these communications were sent to or from Florida.

Plaintiffs cannot show that Defendants are connected to Florida in any meaningful way.

> 2. *Plaintiffs' conspiracy claim also cannot support personal jurisdiction.*

Plaintiffs cannot use their civil conspiracy claim to obtain personal jurisdiction over Defendants because: **one**, the Due Process Clause does not allow it (*see* Section II.D., below), and **two**, it is not adequately pled. (*See* Section IV.A., below.)

**B.      Defendants are not subject to personal jurisdiction in Washington State.**

Plaintiffs argue jurisdiction is somehow proper because they (inexplicably) filed a duplicative complaint in the Eastern District of Washington. *See O'Keefe v. Farmington State Bank et al.*, No. 2:23-cv-00213 (E.D. Wash. filed Jul. 26, 2023). But Plaintiffs never served that complaint on Defendants. *Defs*. *Mot*., DE 823, at 9 n.6. This Court can only "exercise personal jurisdiction to the same extent as the transferor court could." *In re Delta Dental Antitrust Litig.*, 509 F. Supp. 3d 1377, 1379 (J.P.M.L. 2020). Since the Washington court never obtained personal jurisdiction over Defendants through that complaint, nor did this Court. *See Hearst v. West*, 31 Fed. Appx. 366, 369 (9th Cir. 2002) (dismissing complaint for failure to timely effect service).

Moreover, as set forth below, the SAC does not allege any facts demonstrating Deltec Bank or Chalopin engaged in any conduct at all that could subject them to personal jurisdiction in Washington. *Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950, 963 (W.D. Wash. 2022) (Washington's long-arm statute limited by "federal due process").

**C.      RICO's nationwide service provision does not confer personal jurisdiction over foreign defendants served in The Bahamas.**

Plaintiffs contend that "[w]hen a federal statute [such as RICO] provides for ***nationwide*** service of process, it becomes the statutory basis for personal jurisdiction." *Resp*. at 19, citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).

(Emphasis added.) "Section 1965(d) of the RICO statute provides for service *in any judicial district* in which the defendant is found." *Id*. (Emphasis added.)

RICO's nationwide service provision does not apply here because neither Deltec Bank nor Chalopin were served in a "judicial district" of the United States. They were served in The Bahamas (and only with the Florida complaint). Thus, Section 1965(d) cannot be used to obtain personal jurisdiction over them. *Cf. Republic of Panama,* 119 F.3d at 942 (RICO's "nationwide service of process" provision permitted Florida district court to exercise personal jurisdiction over defendants—"domestic corporations doing business in this country"—served in the United States).

Plaintiffs' citation to *Brink's Mat v. Diamond,* 906 F.2d 1519 (11th Cir. 1990), also entirely misses the mark. That case held only that, under then-existing Federal Rule of Civil Procedure 4(e), a RICO plaintiff "may use means authorized by state law for serving process on foreign defendants abroad." *Id*. at 1520-21. ("Under Rule 4(e), when the law of the state in which the district court sits provides for service on a party not an inhabitant of the state, that state law provision may be used to bring a foreign party within the jurisdiction of the Federal court."). *Brink's Mat* dealt with service of process, *not personal jurisdiction*.

> This appeal presents only the issue of defendants Fleming and Diamond's amenability to service of process abroad. Whether these defendants have a constitutionally significant relationship with the Middle District of Florida permitting that court to exercise personal jurisdiction over them is not before us. We hold only that the district court may look to Florida law for authority to effect service of process over these defendants abroad.

*Id*. at 1523. *Brink's Mat* does not help Plaintiffs.[1]

In short, RICO's nationwide service provision concerns defendants served in the United States, and not Deltec Bank and Chalopin, who were served in The Bahamas. Moreover, as

---

[1] *Brink's Mat* involved the nationwide service provision found in Section 1965(b), as opposed to Section 1965(d). Both sections require that service be made "in any judicial district."

discussed below (Section IV.D.), Plaintiffs do not plausibly plead a RICO claim. *Courbin v. Scott*, 596 Fed. Appx. 729, 734 (11th Cir. 2014) (RICO service provision requires viable claim).

### D. The exercise of personal jurisdiction over Deltec Bank and Chalopin would violate the Due Process Clause of the Constitution.

The exercise of personal jurisdiction over Deltec Bank or Chalopin, Bahamian residents, would also violate the Due Process Clause. "Generally, a court may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction." *Oueiss*, 2023 WL 1311114, at *17 (cleaned up). "This is because '[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.'" *Id.* (quoting *Walden*, 571 U.S. at 286). "The relationship must arise out of contacts that the 'defendant *himself*' creates with the forum." *Walden*, 571 U.S. at 284 (emph. in orig.).[2]

Plaintiffs argue that Deltec Bank and Chalopin "purposefully directed" activities in Florida and Washington by: (1) "effecting banking transactions by FTX.US" or (2) "by purchasing Moonstone and fashioning it a tool by which FTX could funnel customer deposits to Deltec offshore." *Resp.* at 21. For tort cases like this one, a plaintiff "must sufficiently allege that the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) that caused harm the defendant knows is likely to be suffered in the forum state." *Amazon.com*, 631 F. Supp. 3d at 965. Plaintiffs fail to do so and their "purposeful direction" theories fail accordingly.[3]

---

[2] Because personal jurisdiction must be based on Defendants' *own* contacts, Plaintiffs cannot use their conspiracy claim to obtain jurisdiction over Defendants. *See Oueiss*, 2022 WL 1311114, at *18 (conspiracy-based personal jurisdiction over Crown Prince did not satisfy due process).

[3] Plaintiffs' Response addresses only the "purposeful direction" prong of the three-part due process test. *Resp.* at 20-21; *Mot.* at 13. They fail to respond to Defendants' arguments that the other two

***First***, the SAC is clear that all of Deltec Bank's and Chalopin's purported banking activity took place in The Bahamas. *See SAC* ¶¶ 27, 29, 82-183, 195-98, 228-29, 238-39, 309. There are zero allegations in the SAC that plausibly demonstrate that Deltec Bank or Chalopin "purposefully directed" any banking (or other) activities at Florida or Washington.

And the only potential connection between the State of Washington and Deltec Bank—as opposed to Moonstone (a separate bank)—is the unsupported assertion that Deltec Bank "help[ed] SBF fence Class Member funds, including those held in accounts at . . . Moonstone, across the U.S. border." *SAC* ¶ 259. The SAC, however, supplies no factual allegations to support this bald assertion—*e.g.*, how this was supposedly accomplished, what actions Deltec purportedly took to "help," where it took those actions, when this happened, and which of the Plaintiffs (none of whom reside in Washington) suffered any harm in Washington. Simply put, this is not sufficient.

***Second***, although the SAC alleges Chalopin "purchased Moonstone" and "secured" an investment by Alameda in Moonstone, *SAC* ¶¶ 136, 247, it does not allege that he "expressly aimed" any tortious actions at the state, nor that anyone suffered any harm there as a result. Plaintiffs do not even allege any of Chalopin's actions physically occurred in Washington. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) (defendant "does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction") (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).[4]

---

prongs—"arise out of relate to" and "fair play and substantial justice"—also have not been satisfied. *Mot*. at 14-16. Plaintiffs, thus, concede these points.

[4] Although the SAC alleges Chalopin was the chairman and [wrongly] CEO of Moonstone" (SAC ¶ 246), that is not enough. *Amazon.com*, 631 F. Supp. 3d at 962 ("a person's mere association with a corporation that causes injury in the forum state is not sufficient" for jurisdiction).

The same is true of the Response's ambiguous and unsupported reference to the supposed "fashioning [of] a tool" that would allow FTX to "funnel customer deposits to Deltec offshore." Plaintiffs supply no citations to the SAC where this "tool" is alleged or described and, once again, Plaintiffs neither allege Defendants constructed the so-called tool in Washington nor that any Plaintiff suffered harm in the state—again, none of the Plaintiffs claim to reside there.

## III. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THEIR STANDING.

This Court should also dismiss Plaintiffs' claims because: they do not plausibly allege their losses are "fairly traceable" to either Defendant's alleged conduct; and, the claims are now moot.

### A. Plaintiffs do not allege their losses are "fairly traceable" to Defendants.

Plaintiffs do not dispute that they "never allege their money or other assets were ever transferred to Deltec Bank." *Id*. at 17; *Resp*. at 35-36. Instead, they rest their constitutional standing on a new and wholly unsupported argument: "Almeda could not have brought down the FTX platform" without Deltec Bank's and Chalopin's purported assistance. *Resp*. at 36. Plaintiffs, however, cite no paragraph in the SAC to support this wild speculation.

Plaintiffs cannot now manufacture standing by inviting the Court to imagine a speculative chain of events that Plaintiffs have not pled. "When addressing a motion to dismiss for lack of standing, the court evaluates standing based on the facts of the complaint." *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1207 (M.D. Fla. 2012). "It is not enough that the plaintiff's complaint sets forth facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements." *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008) (omitting internal quote and cite). The Court "should not speculate concerning the existence of standing." *Id*. "[The] court lacks the power to create jurisdiction by embellishing a deficient allegation of injury." *Id*.

Plaintiffs' cases do not help them. For example, *Josefsberg v. Uber Techs., Inc.,* 2023 WL 5670301 (S.D. Fla. Aug. 30, 2023) involved Uber's failure to conduct a proper background check before hiring a driver who had stolen plaintiff's identity. *Id*. at *1. Uber used plaintiff's name and social security number and falsely claimed to the IRS that it paid plaintiff compensation he never received. *Id*. Plaintiff alleged Uber's negligence directly caused Plaintiff to have to pay professionals "to correct tax filings" and to redress "the adverse effects on his tax filing status." *Id*. at *2. The complaint in *Josefsberg* alleged a direct link between Uber's negligence and plaintiff's injuries. Plaintiffs here do not.

Similarly, in *Resnick v. AvMed, Inc*., 693 F.3d 1317 (11th Cir. 2012), the plaintiffs alleged their injuries—the theft of their personal information—were caused by defendant's failure to secure that information while in defendant's possession. *Id*. at 1324; *see also In re Mednax Services, Inc., Customer Data Security Breach Litigation*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) (same); *Freeman v. JPMorgan Chase Bank N.A.*, 675 Fed. Appx. 926, 931 (11th Cir. 2017) (plaintiff alleged his money was deposited into an escrow account at the defendant-bank, where it was then stolen with the help of a bank employee).

Plaintiffs also cite *Garcia-Bengochera v. Carnival Corp*., 57 F.4th 916 (11th Cir. 2023), where the court found standing because the defendant cruise lines used certain ocean front property without compensating the plaintiff, who claimed an ownership interest in the property. *Id*. at 924. *Garcia-Bengochera* bears no resemblance to the facts here. No Plaintiff alleges Deltec Bank ever possessed his or her property.[5]

---

[5] Plaintiffs' remaining case are irrelevant. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) (false advertising under the Lanham Act); *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003) (First Amendment case).

**B.      Plaintiffs' claims are moot.**

Plaintiffs' claims are also moot because the FTX Bankruptcy Plan provides for Plaintiffs to be paid "in full, plus interest," for their claims. *Mot*. at 29. Plaintiffs complain that the Plan will only pay them the full value of their cryptocurrency as of the Petition date, while the price of some cryptocurrencies, such as Bitcoin, have appreciated further since then. According to Plaintiffs, the law allows them to obtain a partial recovery in one action and a supplemental recovery in a second action. *Resp*. at 36-37. This argument is misplaced for at least two reasons.

***First***, the SAC does not allege ***facts*** demonstrating Plaintiffs deposited or held cryptocurrencies at FTX. Although each Plaintiff alleges he or she "purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform" (*SAC* ¶¶ 11-26), nowhere in the SAC do they support their equivocal conclusions with facts. To the contrary, Plaintiffs allege that they "wired" "money" or "funds" to FTX or Alameda. (*Id*. ¶¶ 159, 167, 173, 259.). Plaintiffs never allege they in fact deposited cryptocurrency with FTX.[6]

***Second***, the partial remedy cases Plaintiffs cite are inapplicable. Those cases provide, at most, that where a plaintiff receives *less than* complete relief for an injury in one action, plaintiff may recovery the remainder in a different action. Here, by electing to participate in the Plan and accepting payment "in full," Plaintiffs cannot now seek a second, windfall recovery here.

---

[6] Plaintiffs argue that the "value of their cryptocurrency" may have increased since the bankruptcy petition date. *Resp*. at 36-37. Logically then, at a minimum, for Plaintiffs who did ***not*** have cryptocurrency, the value of their money claims (which did not change in value) are now moot.

## IV.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED UNDER FRCP 12(B)(6).

### A.   Plaintiffs fail to allege a plausible civil conspiracy claim.

At a minimum, a civil conspiracy claim requires "an agreement between two or more parties to do an unlawful act or to do a lawful act by unlawful means." *Corbett v. Transp. Sec. Admin.*, 968 F. Supp. 2d 1171, 1190 (S.D. Fla. 2012) (cleaned up). Plaintiffs must plausibly allege facts demonstrating that Deltec Bank and Chalopin "knowingly entered into an agreement" with someone else in furtherance of FTX's fraud scheme. *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1347 (S.D. Fla. 2018). Plaintiffs have not done so here.

Instead, Plaintiffs ask the Court to "infer[]" that there was an "implied[]" agreement "by Deltec or Chalopin [with whom?] to act in furtherance of FTX's wrongdoing" based on:

(i)     the so-called *de facto* line of credit that, according to Plaintiffs, "Alameda settled using FTX customer funds";

(ii)    Deltec Bank's supposed knowledge that it was transferring "FTX customer funds to Alameda's accounts";

(iii)   the receipt by Deltec Bank's parent company, Deltec International Group ("DIG") of a "$55 [sic] loan"; and

(iv)    Moonstone's receipt of a "$11.5 million investment" and "$50 million in deposits."

*Resp.* at 29 (providing no citations to the SAC). Plaintiffs fail to identify any factual allegations in the SAC plausibly demonstrating that Deltec Bank or Chalopin knew "funds belong[ing] to FTX customers" were improperly being used. Absent this, Plaintiffs do not plausibly allege that Deltec Bank and Chalopin "knowingly entered into an agreement" to do something unlawful.

Plaintiffs claim that Defendants "learned of FTX's misconduct in part through [i] its mandated regulatory diligence and monitoring of FTX Group and [ii] from its provision of hands-on, non-routine banking services to FTX and Alameda." *Resp.* at 6. These conclusions fall short.

*First*, the SAC does not allege that Chalopin—then the non-executive chairman and a shareholder of the bank—participated in regulatory due diligence or that he personally provided any banking services to FTX and Alameda. There are no factual allegations in the SAC from which it can plausibly be inferred that he "learned of FTX's misconduct" in this (or any other) way.[7]

*Second*, the allegations of Deltec Bank's "knowledge" are equally weak. Allegations that a bank has mandatory due diligence requirements do not establish the bank's knowledge of wrongdoing by its customer. *See Lamm v. State St. Bank & Tr.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (insufficient to allege "[bank] should have known something was amiss"), *aff'd,* 749 F.3d 938 (11th Cir. 2014). Nor do the allegations about the Telegram chat messages, which Plaintiffs repeatedly concede contained "joke[s]" among the participants (*SAC* ¶¶ 153, 171, 219, 221, 223, 224, 225), plausibly allege that Deltec Bank knowingly entered into an agreement to assist the FTX fraud. *See Mot.* at 5-8. Putting aside Plaintiffs' hyperbolic and non-*sequitur* (mis)characterizations, the messages in no way demonstrate that Deltec Bank or Chalopin knowingly agreed to commit fraud or that they knew FTX customer funds were being misused or misapplied. Plaintiffs assert, without citation, that "Alameda settled [the line of credit] using FTX customer funds." *Resp*. at 34. But Plaintiffs do not allege Defendants knew that.

Also unavailing are Plaintiffs' attempts to allege Defendants "substantially assisted" in any purported conspiracy. Plaintiffs cite the same innocuous allegations and then simply declare the conduct to be "unlawful." *Resp.* at 30. But there is nothing unlawful about Moonstone accepting

---

[7] Plaintiffs also claim: "Chalopin further learned of FTX's misconduct in courting Alameda to invest in his new bank, Moonstone." *Resp*. at 7. However, the cited support for this conclusory statement (*SAC* ¶ 245) says nothing about his awareness of any wrongdoing—by anyone.

an investment from Alameda, particularly where the SAC does not allege any facts showing that Chalopin knew there was anything improper about it (and this doesn't involve Deltec Bank at all).

**B.      Plaintiffs fail to allege plausible aiding and abetting claims.**

Plaintiffs' three aiding and abetting claims also fail. The SAC lacks allegations of fact to support the "actual knowledge" and "substantial assistance" elements of these claims.

In the Eleventh Circuit, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 950 (11th Cir. 2014). That explains why Plaintiffs lean heavily on a district court decision from the Ninth Circuit (*Resp.* at 23), where unheeded red flags are "sufficient to demonstrate actual knowledge." *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1116 (S.D. Cal. 2024) (citing *In Re Woodbridge Investments Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020) (noting different pleading requirements for "actual knowledge" in Eleventh and Ninth Circuits)). The Eleventh Circuit has routinely held a bank's awareness of and ignoring "red flags" is not enough to plead "actual knowledge." *See* Mot. at 22-23; *see also Isaiah v. JP Morgan Chase Bank*, 2017 WL 5514370, at *3-4 (S.D. Fla. Nov. 15, 2017).

The SAC's allegations of "actual knowledge" boil down to an argument that Defendants "must have," "would have," or "should have" (*SAC* ¶¶ 248, 252, 253) "acquired knowledge of FTX's [fraud]" through: (i) "diligence, ongoing monitoring and/or hands-on partnership" (*id.* ¶ 283), (ii) their supposed "close ties" with FTX (*id.* ¶ 147), and (iii) their purported regulatory obligations to watch out for "unusual activity" in the FTX accounts (*id.* ¶156). This is not sufficient in the Eleventh Circuit. *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244-46 (M.D. Fla. 2013) (dismissing aiding and abetting claims even though plaintiff alleged, among other things: (i) unusual and suspicious transactions triggered bank's fraud alert system, (ii) inaccurate information in account opening documents, (iii) bank was aware of fraudster's personal and

financial history, (iv) bank commingled large amounts of money between accounts, and (v) bank accepted funds into "shadow accounts" that did not match the originating bank accounts).

Aware of the SAC's defects, Plaintiffs stretch its allegations beyond recognition. For example, citing paragraphs 247 and 248, Plaintiffs assert that, from his supposed negotiations with FTX lawyer Dan Friedberg, Chalopin learned" that: (i) "SBF separately owned and controlled FTX and Alameda" and (ii) "SBF operated FTX and Alameda as a common enterprise, riddled with conflicts of interest," contrary to "FTX's representations that FTX and Alameda maintained strict corporate separateness." *Resp*. at 24. But the cited paragraphs do not support these conclusions. Nowhere do they allege Chalopin knew: (i) "SBF separately owned and controlled FTX and Alameda"; (ii) FTX represented that it and Alameda "maintained strict corporate separateness"; or (iii) "SBF operated FTX and Alameda as a common enterprise, riddled with conflicts of interest."[8]

In other instances, Plaintiffs make assertions about Defendants' supposed actual knowledge of FTX's fraud ***without citing any*** allegations at all. For example, Plaintiffs claim:

- "[I]n confirming that Alameda held sufficient proceeds to fund an investment so large that it doubled Moonstone's net worth, Chalopin ***would have seen*** [not did see] that those proceeds were backed by cryptocurrency that FTX fashioned from thin air."

---

[8] Although not cited by Plaintiffs, SAC paragraph 259 alleges, in conclusory fashion, that "Deltec and Moonstone knew" that "Alameda was owned by SBF—separately from FTX—and that FTX was misappropriating Class Member funds." Plaintiffs further allege, again without any support or explanation, that the two banks learned this information from: (i) Chalopin's "close ties" with Bankman-Fried, (ii) his "proselytizing on behalf of the crypto industry," and (iii) pitching Alameda "the whole roadmap" for investments. *Id*. These kinds of conclusory, illogical allegations are plainly insufficient for alleging "actual knowledge" in the Eleventh Circuit.

- "Deltec and Chalopin ***could see*** [not did see] that FTX's representations as to its investor protections, mitigation of conflicts of interest, risk management procedures, regulatory compliance and other fundamental controls, were misleading . . . ."

- "Deltec and Chalopin ***could see*** [not did see] that FTX was transferring customer deposits to and through Alameda, contrary to its representations that FTX would hold those assets in segregated accounts for the customers' benefit."

*Resp*. at 24-25 (emphasis added). Plaintiffs supply no citations to the SAC for these statements.[9]

Plaintiffs' substantial assistance allegations fail for the same reasons set forth above. *See* IV.A. Plaintiffs' aiding and abetting claims should therefore be dismissed with prejudice.

### C. Plaintiffs' Unjust Enrichment claim fails.

Plaintiffs try to sidestep their failure to allege that a direct benefit was conferred ***on Deltec Bank or Chalopin*** by arguing that the benefit can be conferred on the defendant through an intermediary. To that end, Plaintiffs claim the direct benefits here are the alleged loan made to non-party DIG and Alameda's investment in Moonstone, a different bank altogether. *Response*, at 30-31. But, critically, there is no allegation that those benefits—purportedly conferred on distinct entities DIG and Moonstone—were ever transferred ***to these Defendants***. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("plaintiffs must show they directly conferred a benefit ***on the defendants***") (emphasis added); *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1083 (S.D. Fla. 2019).

Plaintiffs cited cases are, again, inapposite. *See Williams v. Wells Fargo Bank N.A.*, 2011 WL 4901346, at *6 (S.D. Fla. Oct. 14, 2011) ("Plaintiffs claim Wells Fargo Bank received

---

[9] For the last bullet point, Plaintiffs might be relying on an account opening document they obtained during jurisdictional discovery in early 2024. Putting aside Plaintiffs' misrepresentation of the document, they never allege it in the SAC and, thus, it cannot be considered now.

kickbacks and/or commissions which were taken directly from the insurance premiums paid by Plaintiffs."); *In re Takata Airbag Prods. Liab. Litig.*, 2017 WL 2406711, at *10 (S.D. Fla. June 1, 2017) (***dismissing*** car buyers' unjust enrichment claim because Takata, which allegedly made and sold defective airbags to car manufacturers, was paid by the car manufacturers and never received money from plaintiffs); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1274 and 1288-89 (S.D. Fla. 2013) (Defendants received plaintiff's products from Pernix, who had obtained them from the plaintiff); *Romano v. Motorola, Inc.*, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) (Motorola received plaintiffs' money even though it sold phones to plaintiffs through a distributor). Absent allegations demonstrating that ***these Defendants*** received a "direct benefit," Plaintiffs' unjust enrichment claim fails as a matter of law.[10]

### D.      Plaintiffs' RICO claim should be dismissed.

The RICO claims are wholly insufficient and must fail. Plaintiffs attempt to rehabilitate the RICO claims by relying on matters outside the SAC. *See Resp.* at 13-16, 32, and 33 (relying on "the limited discovery to date" for RICO claim). Matters outside the SAC should be ignored.

---

[10] While Plaintiffs now claim that "FTX customer assets funded the sham $55 million loan to Deltec's parent company, as well as the $11.5 million investment in Moonstone" (*Resp.* at 30), they cite no support for the assertion that customer funds were used. The SAC contains two allegations specifically referencing the alleged $11.5 million investment from Alameda to Moonstone (*SAC* ¶¶ 245, 247); but, neither alleges how the investment was funded. Similarly, the SAC mentions twice a purported "$55 million loan" from Alameda to "Ryan Salame" or his company "Norton Hall" that was supposedly "paid for with Class Members funds." *Id*. ¶¶ 90, 151. And while Plaintiffs allege DIG received a "$50 million loan from Norton Hall" at some point, Plaintiffs never allege that ***this DIG loan*** was funded by class members' money. *Id.* ¶ 151.

       1.     *Plaintiffs' "Common Purpose" allegations are insufficient.*

The first obvious indication that the SAC's "common purpose" allegations are insufficient is Plaintiffs' choice to jettison them in favor of a newly formulated and unpled "common purpose" theory. The **SAC alleges** that Defendants' "common purpose" was to:

> (i) convince and assuage potential and existing customers to entrust FTX US and FTX Trading Ltd. with their assets, (ii) conceal their misappropriation of customers' funds and conflict-of-interest activities, and (iii) make their ill-gotten gains available for the co-conspirators personal use in interstate and foreign commerce.

SAC ¶ 301. But after Deltec Bank and Chalopin pointed out that these conclusions are "entirely unsupported by any factual allegation[s]" (*Mot.* at 30), Plaintiffs abandoned them in their Response. **Plaintiffs' Response now claims** Defendants shared the "common purpose" of:

> (i) siphoning into their own pockets FTX customer funds, (ii) propping up their operations with same, and (iii) growing their nascent ventures by luring in new accounts through FTX's misrepresentations.

*Resp.* at 32.

Plaintiffs do not cite any allegations in the SAC for this new formulation. That is because the SAC does not plead it. Instead, Plaintiffs attempt to support their new theory with a largely meaningless mixture of extraneous information and documents. *See Resp.* at 32 (citing *Resp.* Section II.E). None of this can be considered.[11]

When Plaintiffs are properly cabined to the SAC's allegations, they are left with alleged banking practices that, even if accepted as true, in no way demonstrate Deltec Bank or Chalopin

---

[11] Response Section II.E. (p. 13) discusses information and exhibits Plaintiffs claim to have obtained through "jurisdictional discovery and cooperation from settling MDL Defendants." *Id.* at 13-14. That discovery took place nearly a year before Plaintiffs filed their SAC in November 2024, but they chose not to allege it in the SAC.

"were actively collaborating [with other defendants] to achieve [an] improper motive." *Lewis v. Mercedez-Benz United States*, 530 F. Supp. 3d 1183, 1216 (S.D. Fla. 2021). For example, there is nothing improper about "manually process[ing]" bank transactions (*Resp*. at 32), particularly considering Plaintiffs' affirmative allegation that some transactions "needed to be effected or approved manually" because "Deltec Bank's systems were not automated." *SAC* ¶ 205.

Plaintiffs also reference, without citation, a supposed "$55 [sic] million . . . sham loan" to DIG that was purportedly "underwritten by FTX customer funds." Although the SAC alleges DIG received a "$50 million" loan (SAC ¶ 151), it never alleges this loan was funded with customer money (or that Defendants knew it). *See*, above, at 15 n. 10. Moreover, that non-party **DIG** allegedly received a loan says nothing about **Deltec Bank's** purported participation in a conspiracy.

Plaintiffs also mischaracterize the SAC's allegations about the so-called "*de facto* line of credit." *Resp*. at 32. From the SAC's description of this arrangement, it is clear the alleged extension of credit was being provided to Alameda by one of the bank's other customers (not by Deltec Bank). *See Mot*. at 7-8; SAC ¶¶ 194-199. Moreover, a line of credit, regardless of who might have extended one, is not improper.

The SAC's "allegations" that Chalopin shared a fraudulent "common purpose" with other members of the alleged RICO enterprise are wholly deficient, including for the reasons set forth above. (*See* Section IV.A. & B.) Plaintiffs argue that Chalopin "learned of" two things: (i) "FTX's misrepresentations to FTX customers" and (ii) "[FTX's] misappropriation of FTX customer funds." *Resp*. at 33. Plaintiffs further claim he supposedly learned this information in two ways: *first*, "through diligence and monitoring at his two banks, Deltec and Moonstone" and, *second*, "through his close friendship with Dan Freidberg." *Id*.

Once again, Plaintiffs provide no citations to the SAC where they allege: (i) Chalopin personally conducted any due diligence or monitoring; (ii) when or how he supposedly "learned" of FTX's "misrepresentations to FTX customers and misappropriation of customer funds"; or (iii) what, if anything, Dan Friedberg told him. (Section IV.A. & B. at 11-14.) Plaintiffs cite paragraphs 245, 246, and 257 of the SAC, but none of these things are alleged in those paragraphs.[12]

### 2.    Plaintiffs do not allege they suffered the requisite domestic injury.

While Plaintiffs refer to FTX Group's accounts in Washington and California, the use of accounts in these states does not render the alleged injury "domestic" under RICO. *Bascuñán v. Elsaca*, 874 F.3d 806, 819 (2d Cir. 2017) (*Bascuñán I*) ("defendant's mere use of a domestic bank" does not "transform an otherwise foreign injury into a domestic one"). If it were, the domestic injury requirement would be eliminated "in a large number of cases," given the "primacy of the American banking and financial transactions." *Id*. The key inquiry is, instead, whether the money was "located in the United States *when it was stolen* or harmed." *Id*. at 820 (emphasis added).

The crux of Plaintiffs' claims against Deltec Bank and Chalopin is that Deltec Bank allegedly "assisted in siphoning FTX customer deposits [at Deltec Bank] to Alameda." (*See SAC* ¶ 182, and at p. 59.) Plaintiffs allege Deltec Bank generally accomplished that in two ways: (i) by "execut[ing] internal transfers of customer funds between FTX Group accounts and FTX customer accounts at Deltec Bank" (*id*. at p. 64 and ¶¶ 179-183), or (ii) by "wir[ing] those accounts [sic] out of Deltec Bank to Alameda's other bank accounts or to fund Alameda's speculative investments." *Id*. ¶ 184. Either way, at the time the funds were allegedly misappropriated—*i.e.*, when internally

---

[12] Plaintiffs also allude (*Resp*. at 33) to a purported bank program at Moonstone, but that program is not alleged in the SAC.

transferred or wired out in routine banking fashion—the SAC alleges they were in Deltec Bank accounts *in The Bahamas*.

Because Plaintiffs have failed to demonstrate they suffered a domestic injury, their RICO claim must be dismissed. *See Bascuñán v. Elsaca*, 927 F.3d 108, 120 (2d Cir. 2019) (*Bascuñán II*) (complaint did not identify location of accounts from which fees were misappropriated).

## V. *FORUM NON CONVENIENS* WARRANTS DISMISSAL OF THIS ACTION.

The Bahamas is the proper forum for any claims because: (1) it is an adequate and available alternative forum (which Plaintiffs to not contest), (2) both private and public factors weigh in favor of litigating there, and (3) Plaintiffs can bring suit there without undue prejudice or delay.

Plaintiffs do not even address the cases cited by Defendants, and Plaintiffs' own cases support that "dismissal should not be automatically barred when a domestic plaintiff has filed suit in his home forum." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). Moreover, "[that] presumption applies with less force when the plaintiff has chosen to sue in a forum in which he does not reside." *Foster v. Sun Int'l Hotels, Ltd.*, 2002 WL 34576251, at *2 (S.D. Fla. Feb. 5, 2002). Here, only three Plaintiffs claim to reside in Florida, and four Plaintiffs do not reside in the United States at all.

While Plaintiffs are correct that some witnesses may be "located in the United States and some are unable to leave the country due to criminal actions and sentences," that is not dispositive. *See Owens v. Bankasi*, 2021 WL 638975, at *6 (S.D.N.Y. Feb. 16, 2021) (granting *forum non conveniens* dismissal in case involving alleged fraudulent scheme by Turkish bank where "[a]part from [two potential witnesses] who are incarcerated in the United States . . . potentially relevant witnesses are in Turkey . . . ."). No matter where the trial proceeds—The Bahamas or the United States—the trial testimony of imprisoned witnesses likely will be presented by deposition as they will not be permitted to appear in person.

Plaintiffs further claim the United States has an interest in providing a forum for this litigation. But any U.S. interests are far inferior to the interests of The Bahamas. Plaintiffs' claims are against a Bahamian bank and its Bahamian chairman. They allegedly arise out conduct that occurred in The Bahamas in purported violation of Bahamian banking regulations. There is no question that "The Bahamas has a vital interest in regulating the standards of conduct of . . . Bahamian Defendants." *Barilotti v. Island Hotel Co.,* 2014 WL 1803374, at *9 (S.D. Fla. May 6, 2014). Plaintiffs have also made numerous allegations that involve Bahamian laws and regulations. *See, e.g., SAC* ¶ 157 ("exempted FTX Group from full compliance with [Bahamian] regulations"), *id*. ("disregarded the Guidelines"), *id*. ¶ 159 ("ma[d]e exceptions to the Guidelines"), *id*. ¶ 164 ("offered to end run . . . banking regulations"), *id*. (assisted others "in dodging those regulations"). The Bahamas clearly has a superior interest to the United States in making sure Bahamian banking laws are properly interpreted and applied to the conduct of a Bahamian bank and one of its citizens. *Morse v. Sun Int'l Hotels, Ltd.*, 2001 WL 34874967, at *7 (S.D. Fla. Feb. 26, 2001) (the need to apply Bahamian law "generally weighs in favor of dismissal"); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 953 (11th Cir. 1997).

Plaintiffs assert that the "primary applicable law is United States law," namely the "statutory and common law causes of action [] based on Florida and United States law." *Resp*. at 39. But that is not necessarily true. The common thread that runs through all Plaintiffs' claims is that Deltec Bank and Chalopin violated—or "disregarded," "offered to end run," assisted in "dodging"—Bahamian banking regulations. Thus, to prove that these Defendants "substantially assisted" others—*i.e.*, conspiracy/aiding-and-abetting—Plaintiffs will need to prove the SAC's allegations that they were violating Bahamian banking laws.

This case should be dismissed on *forum non conveniens* grounds.

20

## CONCLUSION

Wherefore, for the foregoing reasons, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.


Dated: March 31, 2025

Respectfully submitted,
*/s /*Daniel J. Hayes
Desirée Moore
Illinois Bar No. 6286198
(Certificate of Understanding filed)
dmoore@venable.com
Daniel J. Hayes
Illinoi Bar No. 6243089
(Certificate of Understanding filed)
dhayes@venable.com
Joseph B. Isenberg
Florida Bar No. 1018077
jbisenberg@venable.com
**Venable LLP**
227 West Monroe St., Suite 1900
Chicago, IL 60606
Tel: 312-820-3436
Fax: 312-820-3401

-and-

Lara Samet Buchwald
NY Bar No. 4700944
(Certificate of Understanding filed)
lara.buchwald@davispolk.com
Tatiana Martins
NY Bar No. 4300455
(Certificate of Understanding filed)
tatiana.martins@davispolk.com
**Davis Polk & Wardwell LLP**
450 Lexington Avenue
New York, New York 10017
Tel: 212-450-4000
Fax: 212-701-5351
*Attorneys for Defendants Deltec Bank and Trust Company Limited and Jean Chalopin*

21