UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

_____

THIS DOCUMENT RELATES TO:

Bank Defendants

*O'Keefe v. Sequoia Capital Operations, LLC, et al.*, S.D. Fla. Case No. 1:23-cv-20700

*O'Keefe v. Farmington State Bank d/b/a Moonstone Bank, et al.*, E.D. Wa. Case No. 2:23-cv-00213-TOR

_____/

**OPPOSITION TO DEFENDANT MOONSTONE BANK'S MOTION TO STRIKE PLAINTIFFS' OPPOSITION TO MOONSTONE'S MOTION TO DISMISS PLAINTIFFS' AMENDED ADMINISTRATIVE CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW [ECF NO. 822]**

Defendant Farmington State Bank ("Moonstone") asks this Court to strike Plaintiffs' well-founded opposition to Moonstone's pending Rule 12(b)(6) motion (the "Opposition"),[1] because Plaintiffs include in the 30-page Opposition seven short paragraphs referencing documents recently shared with Plaintiffs by the FTX Bankruptcy Estate. Those documents show *inter alia* ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ There is little doubt that the documents referenced in those few paragraphs are damaging to Moonstone's case. But the documents do not, as Moonstone suggests, give rise to any factual allegations not already set forth in the First Amended Complaint ("FAC"), and Moonstone is wrong to suggest that "Plaintiffs heavily rely" on those documents in opposing Moonstone's motion to dismiss. ECF No. 857 at 4. The documents serve only to underscore the plausibility of Plaintiffs' well-pleaded claims.

Rather than grapple with the substance of Plaintiffs' Opposition, Moonstone attempts to exploit procedural technicalities that are neither founded in the law nor consistent with Moonstone's prior readings of the Court's orders in this case. Nothing requires the Court to strike Plaintiffs' Opposition on the grounds asserted by Moonstone. The Court may choose to consider the documents referenced in the Opposition or simply ignore them and, because the documents serve only to confirm allegations already set forth in Plaintiffs' FAC, Moonstone's motion to dismiss the FAC can be denied without reference to the documents. Moonstone's efforts to strike

---

[1] ECF No. 852 (filed under seal).

1

the Opposition because it runs more than 25 pages should likewise fail. Although they required only 30 pages for their Opposition, Plaintiffs are permitted up to 40 pages under a reasonable interpretation of this Court's prior orders, *see, e.g.,* ECF No. 216, and in accord with the parties' course of dealing in complying with those orders for the past two years of briefing in this case.

In short, Moonstone seeks to elevate minute technicalities over any careful examination of Plaintiffs' voluminous allegations.[2] Plaintiffs regret wading through these picayune disputes with this Court, but Moonstone has left them little choice. Moonstone's motion to strike Plaintiffs' Opposition should be denied and Moonstone should be ordered to file its reply within the Court's previously-extended limit of 20 pages. *See* ECF No. 216.

## RELEVANT BACKGROUND

Moonstone's motion to strike turns on seven paragraphs in Plaintiffs' 30-page Opposition, in which Plaintiffs reference nine documents recently produced by the FTX Bankruptcy Estate and attached thereto. ECF No. 848 at 13–16. As made clear in the Opposition, Plaintiffs referenced these documents only to demonstrate the plausibility of their well-pled allegations against Moonstone, not to add new allegations against FTX Group's favored banking group, comprised of Moonstone, Deltec, and Chalopin. *See* ECF No. 852 at 13. ("Plaintiffs have accessed limited discovery that **demonstrates the plausibility of their claims** against the Bank Defendants, Moonstone included….**As substantiated by the limited discovery that Plaintiffs have accessed thus far, Plaintiffs plausibly allege** that Moonstone did far more than simply

---

[2] It is a bold tactic considering that Moonstone paid only lip service to this Court's Local Rule 7.1(a) requiring "good faith" pre-filing conferences prior to filing most motions in a civil case. For instance, it failed even to set out its positions as to the motion to strike (and, in particular, its position on Plaintiffs' request for oral argument) in its conferral email. *See* **Ex. A.**

2

'(1) joining the Federal Reserve, (2) selling a small interest in the bank's holding company to Alameda, and (3) holding an FTX deposit.'") (emphasis supplied). Plaintiffs referenced this recent discovery only to counter Moonstone's suggestion that Plaintiffs' detailed factual allegations cannot give rise to a plausible claim for relief. *See, e.g.*, ECF No. 822 at 11 (arguing Plaintiffs' factual allegations regarding Moonstone's knowledge of wrongdoing fail to "justify a plausible inference" of actual knowledge).

At the highest level, Plaintiffs allege that Moonstone (1) knew that FTX Group was misappropriating funds, by way of its close ties with FTX Group executives and through regulatory mandated diligence and monitoring of FTX accounts; (2) assisted FTX Group in perpetuating that fraud by taking in transfers of FTX customer assets into FTX Group accounts and through the provision of other non-routine banking services; and (3) rendered that assistance in exchange for investment proceeds and other benefits from FTX Group *quid pro quo*. *See, e.g.*, ECF No. 779 (hereinafter "FAC") ¶¶ 147, 245-247, 249-252, 253-259. Each of the documents newly shared with Plaintiffs by the FTX Bankruptcy Estate and attached to Plaintiffs' Opposition demonstrates the plausibility of Plaintiffs' allegations against Moonstone, as Plaintiffs explained in their Opposition.

*First,* Plaintiffs allege Moonstone obtained knowledge of FTX Group's misappropriation of FTX customer funds by way of Chalopin's "close personal bond" to Dan Friedberg, FTX Group's General Counsel, and by way of Moonstone's "close ties" with other FTX Group Executives. *E.g.*, FAC ¶¶ 245, 247. ███████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

3

██████████████████████████████████████████████████████████████████

████████████████████████████████████████ [3]

*Second,* the exhibits to the Opposition demonstrate the plausibility of Plaintiffs' allegations that Moonstone assisted FTX Group's misappropriation of FTX customer funds by, for example, "rout[ing] the fraud through [Moonstone]," taking in "$50 million in [FTX] customer assets, including Class Member funds, across two accounts at the bank," and providing other assistance that "goes beyond ordinary or routine banking services," as observed by John Ray, the head of the FTX Bankruptcy Estate. FAC ¶¶ 256-57, 258 (quoting Mr. Ray's testimony before Congress that he was "looking at what dollars were that went from FTX Group to [Moonstone] and looking at the connections of that bank to the Bahamas [i.e., Deltec]" and noting "[t]here's a lot more questions than answers[;] It's certainly highly irregular and has got our attention"). Plaintiffs further allege that Moonstone and FTX Group shared a common purpose in bringing in more FTX customers to the FTX platform, and that Moonstone provided assistance in furtherance of that common purpose through wire transfers and other predicate acts sufficient to trigger liability under RICO. FAC ¶¶ 301, 303. ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ Setting aside that none of the applicable pleading standards

---

[3] *E.g.*, Exhibit 2 shows that ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████"

4

require those details, █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████[4]

*Third*, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ Plaintiffs allege that Moonstone assisted FTX Group in a number of ways, including through its membership in the Federal Reserve, which provided FTX Group a much-needed entry point into the U.S. banking system. *E.g.*, FAC ¶¶ 253-254, 256. Plaintiffs further allege "Moonstone did not inform the Federal Reserve, in applying for membership, that Moonstone intended 'to pursue a strategy focused on digital banking services or digital assets,'" that "FTX quickly began to route the fraud through [Moonstone], depositing $50 million in customer assets … across two accounts at that bank," and that Moonstone "benefited tremendously from this quid pro quo." FAC ¶¶ 255, 256. Moonstone argued in its Rule 12 motion that these

---

[4] Moonstone is similarly incorrect that "there is no such allegation" that "Alameda became Moonstone's majority shareholder" in the FAC. ECF No. 857 at 6. Plaintiffs allege "[w]ith its $11.5 million investment, Alameda was Moonstone's largest investor" at paragraph 247 of the FAC. ████████████████████████████████████████████████████████████████████

████████████████████████ and public documents suggest that Alameda's investment constituted the vast majority of the equity investment in FBH. *See, e.g.*,

https://www.ffiec.gov/npw/Institution/Profile/5460805?dt=20201111.

5

allegations "directly contradict" one another because "Moonstone *applied* to the Federal Reserve *after* Alameda's investment," such that there could be no *quid pro quo*. ECF No. 822 at 12 (emphasis in original). 

In short, the few documents recently produced by the FTX Bankruptcy Estate and minimally referenced in Plaintiffs' Opposition contain information already referenced in the FAC and serve only to demonstrate the plausibility of Plaintiffs' allegations therein—allegations which Moonstone repeatedly calls into doubt in its Rule 12 motion. *See, e.g.*, ECF No. 822 at 9 ("Plaintiffs continue to rely on conclusory allegations, unfounded speculation, [and] demonstrable mischaracterizations."); *id.* at 9-10 ("Plaintiffs again fail to **plausibly allege any facts** to show wrongdoing by Moonstone, any basis for Moonstone to have joint liability with FTX, or any entitlement to relief by Plaintiffs.") (emphasis in original).

---

[5] For example, ▌"

**LAW AND ARGUMENT**

**I.     There is no basis for striking the Opposition because it is the Court's choice whether to consider—or to ignore—discrete materials identified by Moonstone.**

"[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002). "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id.* Alternatively, the court can ignore documents attached to briefing on a motion to dismiss that were not in a complaint without choosing to convert the motion to one for summary judgment. *See Dyer v. Wal-Mart Stores, Inc.,* No. 8:08-CV-747-T-17TGW, 2010 WL 11474400, at *2 (M.D. Fla. Aug. 6, 2010);[6] *Edwards v. Harrison*, No. CIV.A. 7:07-CV-196HL, 2009 WL 537539, at *2 (M.D. Ga. Mar. 3, 2009) ("Rather, the Court will consider the motion without reference to the affidavits").

Either course would be appropriate here. Moonstone does not contest the authenticity of the documents attached to Plaintiffs' Opposition. Those documents serve only to confirm allegations in the FAC that are central to Plaintiffs' claims against Moonstone, and this Court may exercise its discretion in considering those documents without converting Moonstone's motion to one for summary judgment. Or, this Court could simply ignore the documents in denying Moonstone's pending 12(b)(6) motion. The documents do not introduce any factual allegation that is not already pleaded in Plaintiffs' FAC, and, if it so chooses, this Court could simply deny Moonstone's motion to dismiss on the well-pled allegations of Plaintiffs' FAC alone.

---

[6] *Clarified on reconsideration*, No. 8:08-CV-747-T-17TGW, 2011 WL 13176196 (M.D. Fla. Mar. 4, 2011), *aff'd*, 535 F. App'x 839 (11th Cir. 2013).

## II. Plaintiffs reasonably interpreted this Court's order permitting up to 40 pages for their Opposition.

In granting Plaintiffs leave to file an amended complaint, the Court made clear that "the briefing parameters set forth in this Court's Order in (ECF No. 216)" (the "Briefing Order") apply to the Bank Defendants' motions to dismiss Plaintiffs' FAC. ECF No. 774 at 4 ("Nothing in this Order shall otherwise disturb the briefing parameters set forth in this Court's Order in (ECF No. 216)."). The Briefing Order, in turn, provides:

> [T]o the extent Defendants wish to file Motions to Dismiss, Defendants are permitted to file one joint 12(b)(6) Motion to Dismiss [of up to 40 pages] in response to each Amended Complaint in which they are named as a party. Plaintiffs' responses to each motion shall be up to the same length as authorized for these motions. The joint reply for the Rule 12(b)(6) motion shall be up to 20 pages.

Plaintiffs have consistently interpreted this Order to permit them to file up to 40-page oppositions to each Rule 12(b)(6) motion filed by a Defendant, separately or jointly, with no objection from any Defendant or contrary instruction from the Court.

Plaintiffs' interpretation of the Briefing Order is consistent with subsequent orders by the Court. The Court applied the same parameters—40 pages for memoranda and 20 pages for replies— to briefing on motions to dismiss filed by individual Defendants. *See, e.g.*, ECF No. 663 ("In accordance with the Court's prior order assigning page lengths to other motions to dismiss, see (ECF No. 216), Defendant [Sullivan & Cromwell] may file a motion to dismiss that is no longer than forty (40) pages.").

Plaintiffs' interpretation is also consistent with Moonstone's earlier interpretations of the Briefing Order. When Moonstone individually moved to dismiss Plaintiffs' earlier complaint, Plaintiffs submitted a 33-page opposition. *See* ECF No. 368. Not only did Moonstone fail to object

8

to the length of Plaintiffs' earlier opposition, Moonstone filed a 22-page reply in response, *see* [ECF No. 394], which Moonstone would only be permitted to do if Plaintiffs are correct that the parameters set forth in the Briefing Order—up to 40 pages for memoranda and 20 pages for replies—apply to each Rule 12(b)(6) motion filed by any Defendant, separately or jointly (and even then, Moonstone ran two pages over the 20 page limit).

Indeed, in its Motion for Leave to File Brief in Excess of Twenty Pages, Moonstone acknowledged that "The Court's prior Order permitted Defendants 'to file jointly one 12(b)(6) motion and memorandum of law of up to 40 pages' [ECF No. 216]; **out of an abundance of caution**" and explaining that "Moonstone **does not assume** the 40-page limitation applies here," evidencing Moonstone's recognition that the Briefing Order could reasonably apply to its most-recent Rule 12(b)(6) motion. ECF No. 810 at 1 n.1 (emphasis supplied). Nothing in the Court's order granting Moonstone's request to file excess pages in support of that motion limited Plaintiffs' opposition to anything less than the 40 pages permitted by the Briefing Order. *See* ECF No. 821 ("[I]t is hereby ORDERED AND ADJUDGED that the Motion [ECF No. 810] is GRANTED. Defendant Moonstone's response to the Amended Complaint shall not exceed twenty-five (25) pages."). Plaintiffs' opposition should not be stricken simply because Moonstone chose to limit itself to 25 pages.[7] Indeed, Plaintiffs needed only 30 of the authorized 40 pages for their

---

[7] If anything, it is Moonstone that is in violation of this Court's orders. Though the Briefing Order requires that Defendants "are permitted to file jointly **one** 12(b)(6) motion and memorandum of law," neither Moonstone, Deltec or Chalopin requested leave to file two separate 12(b)(6) motions to dismiss Plaintiffs' FAC, notwithstanding this Court's admonition that nothing "shall disturb … the briefing parameters set forth in [the Briefing Order]" and their prior understanding that the

9

Opposition, and Moonstone should be free to use all 20 pages for its reply, if it feels that would be necessary to fully respond.

## CONCLUSION

Plaintiffs respectfully request the Court deny the instant Motion. The Court is permitted to consider the documents referenced herein, or ignore them entirely, without striking Plaintiffs' Opposition, which Plaintiffs filed in accordance with the briefing parameters set forth in this Court's Briefing Order governing the Rule 12 briefing in this case.

Dated: April 2, 2025                                    Respectfully submitted,

| | |
|---|---|
| **By:** */s/ Adam Moskowitz* | **By:** */s/ David Boies* |
| Adam M. Moskowitz | David Boies |
| Florida Bar No. 984280 | Alexander Boies |
| Joseph M. Kaye | Brooke A. Alexander |
| Florida Bar No. 117520 | **BOIES SCHILLER FLEXNER LLP** |
| **THE MOSKOWITZ LAW FIRM, PLLC** | 333 Main Street |
| Continental Plaza | Armonk, NY 10504 |
| 3250 Mary Street, Suite 202 | (914) 749-8200 |
| Coconut Grove, FL 33133 | dboies@bsfllp.com |
| Office: (305) 740-1423 | aboies@bsfllp.com |
| adam@moskowitz-law.com | balexander@bsfllp.com |
| joseph@moskowitz-law.com | |
| service@moskowitz-law.com | |
| | |
| *Co-Lead Counsel* | *Co-Lead Counsel* |

---

Briefing Order required them to seek leave to file separate motions to dismiss. *See* ECF No. 216 (emphasis supplied); *see also* ECF Nos. 240 & 243. Rather than nit-pick the Bank Defendants' failure to comply with this Court's Briefing Order, Plaintiffs proceeded as the parties had before in briefing the Bank Defendants' earlier, separately filed motions to dismiss, and filed their Opposition to each motion.

10

        James R. Swanson, La. Bar No. 18455
        Kerry J. Miller, La. Bar. No. 24562
        Molly L. Wells, La. Bar. No. 36721
        C. Hogan Paschal, La. Bar No. 38495
        **FISHMAN HAYGOOD L.L.P.**
        201 St. Charles Avenue, 46th Floor
        New Orleans, Louisiana 70170-4600
        (504) 586-5252; (504) 586-5250 fax
        jswanson@fishmanhaygood.com
        kmiller@fishmanhaygood.com
        mwells@fishmanhaygood.com
        hpaschal@fishmanhaygood.com

        *Counsel to Plaintiffs and the Putative Classes*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

        By: */s/ Adam M. Moskowitz*
        **Adam M. Moskowitz**