UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-md-03076-KMM

IN RE:

FTX CRYPTOCURRENCY EXCHANGE
COLLAPSE LITIGATION

THIS DOCUMENT RELATES TO:

Bank Defendants

**DEFENDANT MOONSTONE BANK'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' OPPOSITION TO ITS MOTION TO DISMISS THE AMENDED ADMINISTRATIVE CLASS ACTION COMPLAINT**

The Federal Rules of Procedure and the Local Rules of this Court are not merely suggestions for how litigants should conduct themselves. Rather, these rules are "as binding as any statute duly enacted by Congress" and neither litigants nor the courts may simply disregard them. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016) (*citing Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988)).

In spite of that well known truth, Plaintiffs, initially through their Opposition to Moonstone's Motion to Dismiss (the "12(b)(6) Opposition" or "12(b)(6) Opp."), and now in their Opposition to the Motion to Strike (the "Strike Opposition" or "Opp."), are attempting to do just that – disregard numerous rules governing motions to dismiss and general motions practice, which Plaintiffs dismiss as "minute technicalities." Opp., ECF 864, at 2. That position, while astounding to read, effectively sums up Plaintiffs' entire attitude towards the Motion to Dismiss briefing to date. Plaintiffs believe they can save their facially deficient claims by ignoring the rules of this Court by: 1) attaching nine exhibits to their 12(b)(6) Opposition, not referenced in the Complaint and designed at obscuring the record[1]; 2) making numerous unsupported, miscited, or

---

[1] To be clear, Moonstone does not concede the authenticity of all of the exhibits, and absolutely disputes Plaintiffs' characterizations regarding what those exhibits show. Given that Plaintiffs' 12(b)(6) Opposition failed to provide any authority or basis for the Court to consider the exhibits

demonstrably false representations and passing them off as well pled allegations; and 3) ignoring the unambiguous page limitation requirements mandated by the Local Rules and the prior orders in this litigation.

For those reasons, Moonstone moved to strike the 12(b)(6) Opposition, citing to this Court's inherent power to control its docket and to correct procedural impropriety. In response, Plaintiffs have effectively doubled down — simultaneously arguing that their nine exhibits are just an extension of their "well founded" allegations, while also acknowledging that under the applicable rules of procedure, the Court can "simply ignore them." Opp. at 7. Plaintiffs have likewise doubled down on allegations that Moonstone has shown are demonstrably misleading — for instance, claiming the exhibits "confirm" the Congressional testimony of FTX CEO John J. Ray, who said nothing about any *services that Moonstone provided to FTX* or about *transfers* from Moonstone to Deltec — and which Moonstone has previously shown Plaintiffs have contrived through selective quotations, insertions, conflation, and speculation. Opp. at 4; 12(b)(6) Opp. at 13, 23, 25; *see* Moonstone Reply to Motion to Dismiss Compl., ECF 394, at 17-18 and n.21 (linking to full testimony and noting authority for the Court to take judicial notice of testimony).

Tellingly absent from Plaintiffs' Strike Opposition is any defense of their use of uncited allegations or phantom citations which they pass off as "relevant facts." That's because those statements are indefensible and clearly warrant the exercise of this Court's inherent power to strike. Rather than defend their conduct, Plaintiffs instead continue their campaign to obscure the record and mislead this Court into believing they have plausibly alleged any connection between Moonstone and the underlying FTX fraud which gave rise to this litigation. Moonstone should not be required to respond to a 12(b)(6) Opposition that is materially false and improperly argued.

Moreover, and as indicated in Moonstone's prior filing, Plaintiffs were only able to facilitate their obfuscation of the record by defying this Court's clear rules on page limitations. In response to that reality, Plaintiffs cite to this Court's prior Order that permitted excess briefing when responding to **jointly** filed motions to dismiss. Opp. at 8. But Moonstone did not jointly file

---

to their opposition brief, Moonstone had no reason to *proactively* address the standard for appending exhibits to a motion to dismiss (which an opposition is not). Still, Plaintiffs' Strike Opposition twisted that into a claim that "Moonstone does not contest the authenticity of the documents attached to Plaintiffs' Opposition." Opp. at 7. This is precisely the kind of bad faith and prejudicial briefing tactics that support striking the 12(b)(6) Opposition as more appropriate than simply ignoring the improprieties or giving Moonstone more pages to reply.

their Motion, so that Order, on its face, does not apply to the briefing at issue. Again passing off their non-compliance as a "procedural technicality," *id.* at 1, Plaintiffs argue that this Court's rules should not apply to them. As made clear by the authorities cited in Moonstone's initial Motion — which Plaintiffs do not even acknowledge — that is simply not true, and the page limitation requirements outlined in Local Rule 7.1(c)(2) are binding absent leave of Court and further warrant Moonstone's requested relief. For those reasons, this Court should exercise its inherent authority and fashion a reasonable remedy to Plaintiffs' conduct by striking the 12(b)(6) Opposition, and directing Plaintiffs to refile an opposition brief that complies with the Federal and Local Rules of this Court.

      **A.**    **There Is No Support for the Inclusion of the Nine Exhibits Attached to Plaintiffs' 12(b)(6) Opposition.**

Attempting to justify their inclusion of the nine exhibits attached to the 12(b)(6) Opposition, and in yet another example of their misrepresentations to this Court, Plaintiffs' Strike Opposition cites to language from the Eleventh Circuit's decision in *Horsely*, which affirms that, in certain circumstances, litigants **who file a motion to dismiss** may attach documents to their motion without converting it to a motion for summary judgment. *See* Opp. at 7 (*quoting Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The portion of the *Horsely* decision Plaintiffs cited discusses the "incorporation by reference" doctrine, wherein litigants may attach documents to a **motion to dismiss they filed** which are (already) incorporated by reference in the opposing party's pleading. *See Horsely*, 304 F.3d at 1134 (emphasis added). Moonstone does not dispute that authority, and in fact, has cited to *Horsely* for that very proposition. Mot., ECF 857, at n.5.

That is **not** what Plaintiffs have done here. Obviously, Plaintiffs are not the movants, and cannot "incorporate by reference" exhibits that are not already referenced in their own pleadings. *See Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1351 (M.D. Fla. 2023) (affirming that the incorporation by reference doctrine "[i]s inapplicable when the plaintiff neither references nor relies upon the extrinsic document in the Complaint"); *see also Adr1assist, LLC v. Lima One Cap., LLC*, 580 F. Supp. 3d 1293, 1297 (N.D. Ga. 2022) (noting that under the incorporation by reference doctrine, while courts may consider documents attached to a motion to dismiss under certain circumstances, they may not "[c]onsider **new documents that are attached to a response in opposition to a motion to dismiss**, particularly when the documents or their substance are not referred to in the Complaint") (emphasis added).

3

Applied here, the incorporation by reference doctrine plainly does not apply to the nine exhibits attached to Plaintiffs' 12(b)(6) Opposition. Plaintiffs do not dispute that the documents themselves are not referenced in the Amended Complaint. While Plaintiffs go to great lengths to argue that their exhibits "substantiate" their allegations, that is not the standard for incorporation by reference. Rather, the proposed attachments must actually be referenced in or incorporated into the pleading, and not used to buttress an already deficient pleading.[2]

Instead, Plaintiffs maintain their argument that the exhibits separately "demonstrate the plausibility" of their allegations. While that point is certainly disputed, that is not the standard for incorporating documents by reference to a pleading, and Plaintiffs are not permitted to effectively amend their Complaint through their opposition briefing. *See McKally v. Perez*, 87 F. Supp. 3d 1310, 1317 (S.D. Fla. 2015) (*citing Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011)) (a complaint may not be amended by briefs in opposition to a motion to dismiss). For those reasons, and those articulated in Moonstone's initial Motion, the nine exhibits attached to Plaintiffs' 12(b)(6) Opposition and the four-plus pages of argument based thereon were improperly included, and should be stricken from the record.

B. **Plaintiffs Have Offered No Defense of Their Unsupported, Miscited, and Materially False Statements in the Opposition.**

In further support of the Motion to Strike, Moonstone also pointed out that Plaintiffs' 12(b)(6) Opposition is rife with statements which are purported to be "relevant allegations" from the pleadings, but in actuality are either unsupported by record citations, use inaccurate or misleading record citations, or otherwise demonstrably false based on materials the Court **can** properly consider. Mot. at 1, 6-8. As the Motion demonstrates, the 12(b)(6) Opposition's arguments

---

[2] *See, e.g.*, *Howe v. City of Enter.*, No. 1:15CV113-JA-SRW, 2018 WL 8545947, at *13 (M.D. Ala. Sept. 17, 2018), R&R adopted sub nom. *Howe v. City of Enter., Al.*, No. 1:15CV113-ECM, 2019 WL 8723922 (M.D. Ala. Mar. 12, 2019) (finding incorporation by reference doctrine inapplicable to consider numerous transcripts, videos, and state court records where plaintiff's complaint "has in no way referenced or relied on these documents"); *Legacy Ent. Grp., LLC v. Endemol USA, Inc.*, No. 3:15-cv-0252, 2015 WL 12838795, at *3 (M.D. Fla. Oct. 1, 2015) (finding incorporation by reference did not apply to allow television show synopsis, titles and subtitles, and copy of television episode where complaint for infringement "concerns the title of the show, and a screen shot of the title is included in the Complaint" but it "did not refer to (1) third party summaries, (2) the submitted episode, or (3) the content of Defendants' show"); *see also Apple Inc. v. Corellium, LLC*, No. 19-81160-CIV, 2021 WL 1348433, at *5 (S.D. Fla. Feb. 25, 2021) (refusing to consider developer agreement attached to motion to dismiss counterclaim where it was not pled in or "unquestionably" central to counterclaim).

4

are improperly presented to give the appearance that Plaintiffs have sufficiently pled that Moonstone had actual knowledge of and willingly participated in the FTX fraud, when they clearly have not. *See id.* By omitting or misstating record citations, and coupled with the improperly attached exhibits, Plaintiffs have attempted to mislead the Court into thinking Plaintiffs have, in fact, stated plausible claims against Moonstone warranting a denial of the Motion to Dismiss.

To this, Plaintiffs have no response. Plaintiffs' Strike Opposition is completely silent and offers no explanation or rebuttal to Moonstone's point that many of their purported "relevant allegations" are not sufficiently or plausibly pled by, nor plausibly implied by, the actual allegations of the Amended Complaint. Plaintiffs' silence is tantamount to a concession, and warrants no further response from Moonstone on the prejudice caused by such conduct. *See* Local Rule 7.1(c)(1) (limiting reply memorandum "to rebuttal of matters raised in the memorandum in opposition without reargument of matters covered in the movant's initial memorandum of law").

      **C.**     **Striking The 12(b)(6) Opposition is the Most Appropriate Remedy Given Prejudice From Plaintiffs' Compounding Improprieties.**

Plaintiff's Strike Opposition argues that the Court should simply "ignore" any defects and allow Moonstone to file a reply brief of 20 pages. Opp. at 1-2, 7, 10. In other words, Plaintiffs ask for impunity for their rule-breaking and for Moonstone to bear the burden of it.

The Opposition should be stricken and re-filed because it would be unduly prejudicial for Moonstone to have to parse through each statement in the Opposition to address whether it is an accurate representation of the Amended Complaint in addition to whether the actual allegations within the four corners of the Amended Complaint are legally sufficient to state a claim. The examples below, which are unsupported or misleading statements in the section of the 12(b)(6) Opposition titled "Plaintiffs' Factual Allegations," illustrate why Moonstone simply getting more pages is unfeasible and unfair:

- *"Through its diligence on FTX and close ties with SBF, Moonstone learned that FTX was operated as SBF's personal piggy bank, that as quickly as FTX customer funds flowed into FTX, they flowed back out to other entities SBF separately owned or controlled, and that FTX lacked the most basic internal controls, such that the enterprise was in fact a house of cards. ¶¶ 250-252."* 12(b)(6) Opp. at 4.

    - Paragraphs 250-252 of the Amended Complaint **do not allege** that Moonstone was aware of any of that conduct; they instead allege that through due diligence Moonstone *could have* performed, or conversations Mr. Chalopin *could have* had with Mr. Feinberg, that Moonstone *should have* known about the FTX fraud. Those

5

>   statements, while highly disputed, do not actually allege or plausibly imply that Moonstone **did actually learn** of any of the FTX conduct described above.

- *"With shared objectives and complementary motives, Moonstone conspired with FTX to perpetuate the fraud and committed critical overt acts in furtherance of it, including by providing access to the US banking system, as well as a suite of non-routine, high risk banking services to FTX, accepting and/or transferring Class Member funds into accounts that Moonstone knew were held by entities that SBF separately owned, and helping the fence Class Members funds across the US Border."* 12(b)(6) Opp. at 4-5.

    o These statements are uncited, are false, and are not found in the pleadings. But for conclusory group pleading, there are no allegations in the Amended Complaint that Moonstone agreed with anyone to undertake any act in furtherance of FTX's fraud, much less knew about the FTX fraud, knowingly facilitated it, or "fenced" funds across the U.S. Border. *See* ECF 779, ¶ 9. The Amended Complaint cannot even allege any transfers from Moonstone except "under information and belief." *Id.* at ¶ 251.

- *"In addition to the ordinary diligence that would have come before taking in tens of millions of dollars in investment capital from Alameda, Moonstone obtained information concerning FTX's underlying misconduct from Chalopin's close personal bond with Defendant Dan Friedberg, who helped Chalopin secure Alameda's investment. ¶ 247."* 12(b)(6) Opp at. 9.

    o The citation is materially misleading, as paragraph 247 does not allege that Mr. Chalopin learned of any FTX misconduct from Dan Friedberg. ECF 779, ¶ 247. While it does allege that Chalopin and Friedberg regularly met and discussed Alameda's potential investment in Moonstone, there is nothing in that paragraph or the remainder of the Amended Complaint that actually alleges Chalopin obtained knowledge of FTX misconduct from Mr. Friedberg. *See id.* at ¶¶ 247-48. Nor is there *any* allegation that Moonstone was required to perform, or did perform, due diligence on an ***investor*** (as opposed to a customer or bank account holder, which Alameda was not). *See id.* at ¶¶ 249-52.

- *"At Chalopin's direction, Moonstone promptly applied, and was approved, to become a member of the Federal Reserve, and FTX gained entry to the U.S. banking system. Id."* 12(b)(6) Opp. at 11.

    o The "Id." referred to is paragraph 246, which does not reference the Federal Reserve or any direction by Mr. Chalopin to permit FTX entry into the US Banking system, and ignores the fact that the

6

Amended Complaint itself alleges that FTX already had two other U.S. banks, such that Moonstone became FTX's "**third** point of entry to the US banking system." ECF 779, ¶ 254 (emphasis added).

The "Law and Arguments" section is perhaps worse, as Plaintiffs' 12(b)(6) Opposition then relies on these purported "factual allegations" in the remainder of its brief to argue that they have sufficiently alleged Moonstone's knowledge of FTX's fraudulent conduct and agreement to participate in same —where again, Plaintiffs are relying on unsupported, exaggerated, or deceptively supported statements:

- *"Alameda's $11.5 million capital injection to Moonstone is one such investment, and in confirming that Alameda held sufficient proceeds to fund an investment so large that it doubled Moonstone's net worth, Moonstone would have seen those proceeds were backed by cryptocurrency that FTX fashioned from thin air. Id."* 12(b)(6) Opp. at 20.

    o Not only it is unclear what "Id." references here, there is plainly no allegation in the Amended Complaint about due diligence on investors, as opposed to customers or bank account holders (which Alameda was not). Certainly there is no allegation that plausibly states that due diligence Moonstone performed on Alameda would have exposed the FTX fraud.

- *"This is in addition to the knowledge that Mr. Chalopin acquired as the chairman of Deltec and longtime friend of SBF, knowledge imputed to Moonstone by law. ¶ 156."* 12(b)(6) Opp. at 20.

    o Paragraph 156 simply makes allegations about Bahamian regulations generally, and concludes that "[u]pon information and belief, Deltec Bank observed such suspicious transfers into, out of, and between FTX Group accounts but did not file requisite Suspicious Transaction Reports for every suspicious transaction." ECF 779, ¶ 156. But there is no allegation about Chalopin specifically, including how he was in a position to know transaction-level diligence about one customer or how he is a "long-time friend" of SBF.

- *"Moonstone provided assistance that other U.S. banks refused to provide, and it was one the FTX Entities relied on to perpetrate the fraud. ¶ 9, 258."* 12(b)(6) Opp. at 23.

    o Moonstone cannot be expected to reply where arguments like this repeatedly are "supported" by citations like this, where paragraph 9 makes broad accusations against "Bank Defendants" as a group (not

7

>Moonstone specifically, and including acts alleged against Deltec alone), while paragraph 258 concerns John J. Ray's comments about the FTX Estate's future investigation about what money FTX Group might have transferred to the Bahamas, which testimony Plaintiffs have manipulated with their own insertions. *See* ECF 779, ¶¶ 9, 259.

These examples are far from comprehensive, as many other representations in the 12(b)(6) Opposition about the Amended Complaint lack citations and are divorced from what fairly appears in their pleading, thus illustrating exactly why simply giving Moonstone more pages to reply is no true remedy at all. *See, e.g.*, 12(b)(6) Opp. at 20-21 (spanning roughly a full page of summarized "allegations" without any citation to the Amended Complaint), *id*. at 22 (top paragraph lacking citations); *id.* at 24-25 (numerous allegations supported by a single, misleading citation); *id.* at 26 (same); *id.* at 27 (same). This is precisely the type of bad faith litigation conduct that warrants the exercise of the Court's inherent power to strike. *See Toste v. Beach Club at Fontainebleau Condo. Ass'n, Inc.*, No. 1:20-CV-23771-KMM, 2024 WL 3360487 at *4 (S.D. Fla. May 6, 2024) (affirming that federal courts may exercise their inherent powers to fashion an appropriate remedy were a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").

At bottom, Moonstone should not have to prepare a reply that must cover the insufficiencies of the actual allegations of the Amended Complaint **_and_** the misleading and fallacious arguments of the 12(b)(6) Opposition brief **_and_** how the new exhibits are improper, inapt, and mischaracterized.[3] In the face of this conduct, the appropriate remedy is to strike the 12(b)(6) Opposition in full, and direct Plaintiffs to file a brief that complies with the rules and orders of this Court.

### D. Plaintiffs' Filing of Excessive Pages Was Not Permitted Under the Court's Prior Orders.

Plaintiffs' response regarding their excess pages further illustrates an attitude of disregard for the rules. As was indicated in Moonstone's Motion to Strike, Plaintiffs' 30-page 12(b)(6) Opposition also violated Local Rule 7.1(c)(2), which limits opposing briefs to **20 pages**. In response, Plaintiffs cite to this Court's prior order (ECF 216) pertaining to joint motions to dismiss, which they contend permitted them up to 40 pages to oppose Moonstone's individual motion.

---

[3] Although Moonstone strongly believes that considering the exhibits to the 12(b)(6) Opposition would be improper under Eleventh Circuit precedent, because Plaintiffs' Strike Opposition continues to invite the Court to consider their contents (Opp. at 1, 7, 10), Moonstone would seemingly be obliged to address those exhibits.

8

The Order states in full:

> In response to each Amended Complaint that they are named as a Party in: (1) Defendants are permitted to file **jointly** one 12(b)(6) motion and memorandum of law up to 40 pages; (2) for those Defendants who wish to raise a personal jurisdiction challenge, Defendants are permitted to file **jointly** one 12(b)(2) motion and memorandum of law up to 15 pages; and (3) to the extent applicable, Defendants seeking to raise unique issues or defenses not encompassed by the **joint** Rule 12(b)(6) or Rule 12(b)(2) motions, *e.g.,* a challenge to adequacy of service of process, are permitted to file individual motions and memoranda of law up to 3 pages. In other words, to the extent Defendants wish to file Motions to Dismiss, Defendants are permitted to file one **joint** 12(b)(6) Motion to Dismiss and one **joint** 12(b)(2) Motion to Dismiss in response to each Amended Complaint in which they are named as a party. Plaintiffs' responses to each motion shall be up to the same length as authorized for these motions. The **joint** reply for the Rule 12(b)(6) motion shall be up to 20 pages, the **joint** reply for the Rule 12(b)(2) motion shall be up to 8 pages, and all individual replies support the individual motions shall be up to 2 pages.

ECF 216 (emphasis added).

    The language in the Order is plain and unambiguous, and clearly only pertains to joint motions to dismiss, *i.e.*, motion filed on behalf of two or more defendants. *See* JOINT, Black's Law Dictionary (12th ed. 2024) ("combined, united, or sharing with another"). Notably, Moonstone's Motion to Dismiss was not filed jointly, and therefore the Order does not clearly apply to Plaintiffs' 12(b)(6) Opposition. For this reason, Moonstone requested and obtained the Court's permission for excess pages for its individual motion.[4] In granting Moonstone leave to file a 25-page brief, the Court did not reference ECF 216. *See* ECF 821.[5]

    Attempting to evade that fact, Plaintiffs now contend that their interpretation of the Order at ECF 216 was reasonable because it was "consistent with subsequent orders" from the Court permitting excess pages. Opp. at 8. In support of that statement, Plaintiffs cite the order at ECF 663 — but of course, that order does not help Plaintiffs, as it was granted *in response to a defendant's proper motion to file excess pages*. ECF 663. That is precisely what Plaintiffs failed to

---

[4] On January 9, 2025, Moonstone conferred with Plaintiffs via email for their consent to request 25 pages for Moonstone's motion to dismiss; Plaintiffs said they took no position, referred to the Court's Order at ECF 798 that denied a request for page extension on a joint motion, and in no way indicated Moonstone's motion seeking an additional 5 pages was unnecessary.

[5] For its prior Motion to Dismiss, Moonstone moved jointly with Deltec and Mr. Chalopin to file separate briefs and a page extension. ECF 240. The Court allowed separate briefing expressly under the same page limits in ECF 216, (ECF 243), which Moonstone followed. ECF 262, 394.

do, and is yet another example of Plaintiffs playing fast and loose with the truth in its representations to this Court. *See* ECF 662 ("Sullivan & Cromwell LLP Unopposed Motion for Leave to File Brief in Excess of Twenty Pages"). Citing to the fact that other parties have repeatedly requested and obtained leave to file excess pages does not somehow excuse Plaintiffs from doing so, and in fact further demonstrates Plaintiffs' disregard for the procedures that everyone is expected to follow.

Nor does Plaintiffs' argument that Moonstone has somehow waived its ability to take issue with the current 12(b)(6) Opposition's page length, because Moonstone did not object to prior violations of the same rule, hold any weight. In fact, it is Plaintiffs' *continued* violation of so-called "technicalities" that is unfairly prejudicing Moonstone in demonstrating to the Court the insufficiencies of their pleading under Rule 12(b)(6) — that is, based on what this Court properly may consider: the four corners of the actual allegations of the Amended Complaint and the documents legally incorporated therein or judicial noticed. Nor does pointing the finger at others who have skirted rules absolve Plaintiffs of their clear violations. *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 744 F. Supp. 2d 1297, 1303 (S.D. Fla. 2010) (denying a "but everyone else was doing it" defense to a violation of Local rule 7.1(a)(3) and warning against sending a message that "lawyers can violate the local rules with impunity and not worry… about adverse consequences").

Applied here, both the Local Rules of this Court and a plain reading of the Court's Orders, including ECF 216, make clear that Plaintiffs were not authorized to file excess pages, and their violation of Local Rule 7.1(c)(2) serves as another ground to strike their 12(b)(6) Opposition.

Dated: April 9, 2025

                                                    Respectfully submitted,

                                                    /s/ *Marisa R. Dorough*
                                                    Ty Kelly Cronin
                                                    Maryland CPF No. 0212180158
                                                    (*Certificate of Understanding filed*)
                                                    Frank C. Bonaventure, Jr.
                                                    Maryland CPF No. 8011010040
                                                    (*Certificate of Understanding filed*)
                                                    BAKER, DONELSON, BEARMAN,
                                                    CALDWELL & BERKOWITZ, P.C.
                                                    100 Light Street, 19th Floor
                                                    Baltimore, Maryland 21202
                                                    Phone: (410) 862-1049
                                                    tykelly@bakerdonelson.com

fbonaventure@bakerdonelson.com

-and-

Marisa Rosen Dorough
Florida Bar No. 73152
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
200 South Orange Avenue, Suite 2900
Orlando, Florida 32801
Phone: (407) 422-6600
mdorough@bakerdonelson.com

*Counsel for Defendant*
*Farmington State Bank d/b/a Moonstone Bank*