**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:23-md-03076-KMM**

| |
|---|
| **IN RE:** |
| |
| **FTX CRYPTOCURRENCY EXCHANGE** |
| **COLLAPSE LITIGATION** |
| |
| THIS DOCUMENT RELATES TO: |
| |
| Bank Defendants |

**DEFENDANT MOONSTONE BANK'S REPLY IN SUPPORT OF ITS MOTION TO**
**DISMISS THE AMENDED ADMINISTRATIVE CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

   a.   The Opposition's Reliance on Allegations Absent From the Amended Complaint,

   including Unsupported and False Statements and New Exhibits, Should be Disregarded in

   Evaluating Moonstone's Motion to Dismiss............................................................ 2

   b.   Plaintiffs Fail to Sufficiently Plead Any Cause of Action Against Moonstone ................. 6

      i.   Unjust Enrichment (Count VI)......................................................................... 6

      ii.  Common Law Aiding and Abetting Claims (Counts II, III, and IV) ............................ 8

         1.   Failure to allege actual knowledge ........................................................... 9

         2.   Failure to allege indicia of knowledge...................................................... 12

         3.   Failure to allege substantial assistance ................................................... 14

      iii.  Civil Conspiracy (Count I)............................................................................ 16

      iv.   RICO Conspiracy (Count V) ........................................................................ 17

   c.   Plaintiffs' Claims Are Mooted And Barred By The FTX Bankruptcy Plan...................... 19

III.  CONCLUSION................................................................................................ 19

## Table of Authorities

Page(s)

Cases

*Aceto Corp. v. TherapeuticsMD, Inc.*,
   953 F. Supp. 2d 1269 (S.D. Fla. 2013) ................................................................... 8

*Adr1assist, LLC v. Lima One Cap., LLC*,
   580 F. Supp. 3d 1293 (N.D. Ga. 2022) ................................................................... 3

*Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*,
   219 F.3d 519 (6th Cir. 2000) ............................................................................... 13

*Almanza v. United Airlines, Inc.*,
   851 F.3d 1060 (11th Cir. 2017) ........................................................................... 18

*Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*,
   631 F. Supp. 3d 950 (W.D. Wash. 2022) ................................................................ 2

*American Dental Association v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ..................................................................... 18, 19

*Angell v. Allergan Sales, LLC*,
   2019 WL 3958262 (M.D. Fla. Aug. 22, 2019) ......................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 9, 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 9, 19

*Benson v. QBE Ins. Corp.*,
   61 F. Supp. 3d 1277 (S.D. Fla. 2014) ................................................................... 2

*Bhatia v. Silvergate Bank*,
   725 F. Supp. 3d 1079 (S.D. Cal. 2024) ................................................................ 12

*Calvert v. Com. Bank of Wash., N.A.*,
   No. 10-17952, 2013 WL 3487562 (Bankr. W.D. Wash. May 14, 2013) ................... 16

*CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*,
   352 So. 3d 357 (Fla. 3rd DCA 2022) .................................................................... 8

*Chang v. JPMorgan Chase Bank, N.A.*,
   845 F.3d 1087 (11th Cir. 2017) ..................................................................... 12, 13

*Conn. Gen. Life Ins. Co. v. Mayberg*,
2024 WL 1931704 (S.D. Fla. April 27, 2024) ........................................................... 8

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) ........................................................... 14

*Falls v. Desantis*,
No. 4:22cv166-MW/MJF, 2022 WL 19333278 (N.D. Fla. July 8, 2022) ................................ 8

*Gilison v. Flagler Bank*,
303 So. 3d 999 (Fla. 4th DCA 2020) ........................................................................ 12

*FW Distrib., LLC v. J.P. Morgan Chase Bank, N.A.*,
2024 WL 4665255 (S.D. Fla. Nov. 4, 2024) ............................................................. 10

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002) ............................................................................... 3

*In re Consol. Meridian Funds*,
485 B.R. 604 (Bankr. W.D. Wash. 2013) ......................................................... 9, 12, 14

*In re Jan. 2021 Short Squeeze Trading Litig.*,
584 F. Supp. 3d 1161 (S.D. Fla. 2022) ................................................................... 15

*In Re Takata Airbag Products Liability Litigation*,
396 F. Supp. 3d 1101 (S.D. Fla. 2019) ................................................................... 18

*In re Takata Airbag Products Liability Litigation*,
No. 17-24009-CV- MORENO, 2017 WL 2406711 (S.D. Fla. June 1, 2017) ........................ 7, 8

*Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*,
653 P.2d 1331 (Wash. 1982) ................................................................................... 7

*League of Women Voters of Fla., Inc. v. Lee*,
566 F. Supp. 3d 1238 (N.D. Fla. 2021) ..................................................................... 8

*Lechter v. Aprio, LLP*,
565 F. Supp. 3d 1279 (N.D. Ga. 2021) ................................................................... 18

*Meridian Tr. Co. v. Batista*,
No. 17-23051, 2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) ..................................... 13, 16

*Otto Candies, LLC v. Citigroup, Inc.*,
No. 23-13152, 2025 WL 1337052 (11th Cir. May 8, 2025) ............................................ 8

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) ................................................................. 9

*Ricchetti v. Starfish Beach S., S.A.*,
   No. 10CV21754, 2010 WL 11451771 (S.D. Fla. Dec. 27, 2010) ...................... 16

*Romano v. Motorola, Inc.*,
   2007 WL 4199781 (S.D. Fla Nov. 26, 2007) .............................................. 7, 8

*S.E.C. v. Dunlap*,
   No. 01-8437-CIV, 2002 WL 1007626 (S.D. Fla. Mar. 27, 2002) ..................... 13

*Sprengle v. Smith Mar. Inc.*,
   660 F. Supp. 3d 1337 (M.D. Fla. 2023) ......................................................... 3

*Stewart v. Bank of Am., N.A.*,
   No. 8:11-cv-2586, 2012 WL 13106302 (M.D. Fla. Feb. 28, 2012) .................... 16

*Todd Benjamin Int'l, Ltd. v. Grant Thorton Int'l, Ltd.*,
   682 F. Supp. 3d 1112 (S.D. Fla. 2023) .......................................................... 9

*U.S. Indus., Inc. v. Touche Ross & Co.*,
   854 F.2d 1223 (10th Cir. 1988) ................................................................... 19

*United Food & Comm. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) ...................................................................... 18

*Wang v. Revere Cap. Mgmt., LLC*,
   2023 WL 2198570 (S.D. Fla. Feb. 15, 2023) .................................................. 8

*Wiand v. Wells Fargo Bank, N.A.*,
   938 F. Supp. 2d 1238 (M.D. Fla. 2013) ........................................................ 13

Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:23-md-03076-KMM**

IN RE:

**FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION**

THIS DOCUMENT RELATES TO:

Bank Defendants

**DEFENDANT MOONSTONE BANK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED ADMINISTRATIVE CLASS ACTION COMPLAINT**

Defendant Farmington State Bank d/b/a Moonstone Bank ("Moonstone") hereby files its reply in support of its Motion to Dismiss the Amended Administrative Class Action Complaint (the "Motion to Dismiss" or "Mot."), and in support thereof, states as follows:

**I.    INTRODUCTION**

After Plaintiffs' Amended Administrative Class Action Complaint, ECF 779 ("Amended Complaint" or "AC"), failed to cure the fatal defects in their pleading, Moonstone filed its Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), establishing that Plaintiffs' amended filing still failed to plausibly allege any sufficient ties between Moonstone and the underlying FTX fraud, which is the touchstone of Plaintiffs' theory of liability. Despite their best efforts to fabricate a narrative that Moonstone was a key player "providing necessary assistance" to Sam Bankman-Fried's elaborate and unprecedented Ponzi scheme, Plaintiffs' Amended Complaint simply fails to allege any supportable facts tying Moonstone to any of the FTX misconduct.

Attempting to escape that reality, Plaintiffs' Opposition to Moonstone's Motion to Dismiss, ECF 848 (the "Opposition" or "Opp."), ignores the only relevant inquiry at this phase: the sufficiency of the allegations in the Amended Complaint.[1] Instead, the Opposition is built on

---

[1] While understanding that it is not ripe for consideration at this procedural stage, Moonstone vehemently disputes the allegations made against it in the Amended Complaint, many of which can be disproven by matters in the public record.

obfuscations and falsehoods designed to create the appearance of adequate pleading. That misdirection comes in the form of phantom citations, where Plaintiffs "cite" to the Amended Complaint, but when that citation is checked, no such allegation is found. The misdirection also comes in the form of entirely uncited statements, where Plaintiffs style a factual assertion as a "relevant allegation from the Amended Complaint," when in reality, that statement was never made therein. Just as bad, Plaintiffs' Opposition unjustifiably attached nine (9) new exhibits, not tied to any allegations in the Amended Complaint, which they claim demonstrate the "plausibility" of their allegations. They do not, and they cannot, as Plaintiffs cannot amend their pleading through a response brief.

When stripped of their phantom citations or unsupported statements in the Opposition brief, and instead looking at the Amended Complaint itself, it is clear that Plaintiffs' amended claims as to Moonstone—unjust enrichment, aiding and abetting, and civil conspiracy—still warrant dismissal. Plaintiffs' newly added RICO claim fails for the same reasons—there are simply no factual allegations that support Plaintiffs' efforts to bootstrap Moonstone to FTX's fraud. As demonstrated in the Motion to Dismiss and highlighted below, Plaintiffs' Amended Complaint fails to state claims upon which relief can be granted against Moonstone, and Moonstone should be dismissed from this litigation.

## II.   ARGUMENT

### a. The Opposition's Reliance on Allegations Absent From the Amended Complaint, including Unsupported and False Statements and New Exhibits, Should be Disregarded in Evaluating Moonstone's Motion to Dismiss.

As Plaintiffs are surely aware, motions to dismiss under Rule 12(b)(6) solely challenge the legal sufficiency of the complaint. Therefore, the Court "considers only the four corners of the complaint, along with any documents attached ***to the complaint*** or incorporated ***into the complaint*** by reference." *See, e.g.*, *Benson v. QBE Ins. Corp.*, 61 F. Supp. 3d 1277, 1279 (S.D. Fla. 2014) (emphasis added); *accord Amazon.com Servs. LLC v. Paradigm Clinical Rsch. Inst., Inc.*, 631 F. Supp. 3d 950, 961 (W.D. Wash. 2022). Despite that elementary and universal rule, in their Opposition, Plaintiffs do not stay within "the four corners" of their own pleading, and instead, inappropriately rely on nine exhibits they contend "demonstrate the plausibility" of their allegations. After Moonstone separately moved to strike those nine exhibits as being improperly included in the Opposition, ECF 857, Plaintiffs took the unfounded position that the Court can

consider the documents because they are "undisputed."[2] ECF 864. Plaintiffs cited to inapposite language from the Eleventh Circuit in *Horsely*, which affirms that, in certain circumstances, litigants *who file a motion to dismiss* may attach documents to their motion without converting it to a motion for summary judgment. *See id.* at 7 (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Plaintiffs rely on the portion of *Horsley* concerning the "incorporation by reference" doctrine, wherein litigants may file a *motion to dismiss* that attaches documents that are *already incorporated by reference in the complaint they are opposing*. *See Horsely*, 304 F.3d at 1134.

But that is *not* what Plaintiffs have done here. Plaintiffs are not the movants and cannot now "incorporate by reference" exhibits they have not already referenced in their own pleading. *See Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1351 (M.D. Fla. 2023) (affirming the incorporation by reference doctrine "[i]s inapplicable when the plaintiff neither references nor relies upon the extrinsic document in the Complaint"); *see also Adr1assist, LLC v. Lima One Cap., LLC*, 580 F. Supp. 3d 1293, 1297 (N.D. Ga. 2022) (noting the incorporation by reference doctrine allows courts to sometimes consider documents attached to a motion to dismiss, but they may *not* "[c]onsider *new documents that are attached to a response in opposition to a motion to dismiss*, particularly when the documents or their substance are not referenced in the complaint") (emphasis added). Therefore, even if the documents were undisputed (they are not), it is entirely improper for Plaintiffs to attach and rely on any exhibits in their *opposition*. Those documents, and the arguments based thereon, must be disregarded.

Unfortunately, the improper exhibits are just the tip of the iceberg. The rest of Plaintiffs' Opposition is rife with statements which purport to be "relevant allegations" from the Amended Complaint, but in actuality are (i) unsupported by record citations, (ii) use inaccurate or misleading record citations, or (iii) are demonstrably false based on materials the Court *can* properly consider. These misstatements give the appearance that Plaintiffs have sufficiently pled—when they clearly have not—that Moonstone had actual knowledge of and willingly participated in the FTX fraud. The examples below, which are unsupported, miscited, or misleading statements in the Opposition

---

[2] Moonstone has not and does not concede the validity of the exhibits and strongly rejects Plaintiff's repeated misrepresentation of their import. However, because precedent dictates they should not be considered at this juncture, Moonstone does not (and should not have to) address their veracity or their contents further.

3

section titled "Plaintiffs' Factual Allegations," cannot be used to defeat Moonstone's Motion to Dismiss:

- *"Through its diligence on FTX and close ties with SBF, Moonstone learned that FTX was operated as SBF's personal piggy bank, that as quickly as FTX customer funds flowed into FTX, they flowed back out to other entities SBF separately owned or controlled, and that FTX lacked the most basic internal controls, such that the enterprise was in fact a house of cards. ¶¶ 250-252."* Opp. at 4.

    o Paragraphs 250–252 of the Amended Complaint **do not allege** that Moonstone was aware of any of that conduct; they instead allege that through due diligence Moonstone *could have* performed, or conversations Mr. Chalopin *could have* had with Mr. Friedberg, that Moonstone *should have* known about the FTX fraud. Those statements, while highly disputed, do not actually allege or plausibly imply that Moonstone **did actually learn** of any of the FTX conduct described above.

- *"With shared objectives and complementary motives, Moonstone conspired with FTX to perpetuate the fraud and committed critical overt acts in furtherance of it, including by providing access to the US banking system, as well as a suite of non-routine, high risk banking services to FTX, accepting and/or transferring Class Member funds into accounts that Moonstone knew were held by entities that SBF separately owned, and helping the fence Class Members funds across the US Border."* Opp. at 4–5.

    o These statements are uncited, are false, and are not found in the pleadings. But for conclusory group pleading, there are no allegations in the Amended Complaint that Moonstone agreed with anyone to undertake any act in furtherance of FTX's fraud, much less knew about the FTX fraud, knowingly facilitated it, or "fenced" funds across the U.S. Border. *See* AC, ¶ 9. The Amended Complaint does not (and cannot) even allege any transfers from Moonstone, except "under information and belief." *Id.* at ¶ 251.

- *"In addition to the ordinary diligence that would have come before taking in tens of millions of dollars in investment capital from Alameda, Moonstone obtained information concerning FTX's underlying misconduct from Chalopin's close personal bond with Defendant Dan Friedberg, who helped Chalopin secure Alameda's investment. ¶ 247."* Opp at. 9.

    o The citation is materially misleading, as paragraph 247 does not allege that Mr. Chalopin learned of any FTX misconduct from Dan Friedberg. While it does allege that Mr. Chalopin and Mr. Friedberg regularly met and discussed Alameda's potential investment in Moonstone, there is nothing in that paragraph or the remainder of

4

the Amended Complaint that actually alleges Mr. Chalopin obtained
knowledge of FTX misconduct from Mr. Friedberg. *See* AC, ¶¶
247–48. Nor is there *any* allegation that Moonstone was required to
perform, or did perform, due diligence on an ***investor*** in the bank,
as opposed to a customer or bank account holder (which Alameda
was not). *See id.* at ¶¶ 249–52.

- *"At Chalopin's direction, Moonstone promptly applied, and was approved, to
  become a member of the Federal Reserve, and FTX gained entry to the U.S.
  banking system. Id."* Opp. at 11.

  - The "Id." referred to is paragraph 246, which does not reference the
    Federal Reserve or any direction by Mr. Chalopin to permit FTX
    entry into the U.S. Banking system, and ignores the fact that the
    Amended Complaint itself alleges that FTX already had two other
    U.S. banks, such that Moonstone became FTX's **third** point of
    entry to the US banking system." AC, ¶ 254 (emphasis added).

The Opposition's subsequent "Law and Arguments" section strays even farther from the
actual allegations of the Amended Complaint, as Plaintiffs rely on these purported "factual
allegations" to then argue that they have sufficiently alleged Moonstone's knowledge of FTX's
fraudulent conduct and agreement to participate in same. Plaintiffs again rely on unsupported,
exaggerated, or deceptively supported statements:

- *"Alameda's $11.5 million capital injection to Moonstone is one such
  investment, and in confirming that Alameda held sufficient proceeds to fund an
  investment so large that it doubled Moonstone's net worth, Moonstone would
  have seen those proceeds were backed by cryptocurrency that FTX fashioned
  from thin air. Id."* Opp. at 20.

  - Not only it is unclear what "Id." references here, there is plainly no
    allegation in the Amended Complaint about due diligence on
    investors in the bank, as opposed to customers or bank account
    holders (which Alameda was not). Certainly, there is no allegation
    that plausibly states that any due diligence Moonstone performed on
    Alameda as an investor would have exposed the FTX fraud.

- *"This is in addition to the knowledge that Mr. Chalopin acquired as the
  chairman of Deltec and longtime friend of SBF, knowledge imputed to
  Moonstone by law. ¶ 156."* Opp. at 20.

  - Paragraph 156 simply makes allegations about Bahamian
    regulations generally, and concludes that "[u]pon information and
    belief, Deltec Bank observed such suspicious transfers into, out of,
    and between FTX Group accounts but did not file requisite

Suspicious Transaction Reports for every suspicious transaction." AC, ¶ 156. But it makes *no* allegation about Mr. Chalopin—much less that (or how) he supposedly knew transaction-level diligence about one Deltec customer or what knowledge he supposedly gained merely by being a "friend" of SBF.

- *"Moonstone provided assistance that other U.S. banks refused to provide, and it was one the FTX Entities relied on to perpetrate the fraud. ¶ 9, 258."* Opp. at 23.

  - Paragraph 9 makes broad accusations against "Bank Defendants" as a group, including acts alleged against Deltec alone, and none against Moonstone specifically. *See* AC, ¶ 9. Paragraph 258 concerns John J. Ray's comments about the FTX Estate's future investigation into what money FTX Group might have transferred to the Bahamas, which testimony Plaintiffs have manipulated with their own insertions. *See id.* at ¶ 258. Neither paragraph makes the allegations represented in the Opposition.

These examples are far from comprehensive, as many other representations in the Opposition about the Amended Complaint lack citations and are divorced from what fairly appears in that pleading. Like the improper exhibits, the Court should disregard the statements rebutted above and take care to assess what appears in the Amended Complaint itself. The reason is simple: if they are not actually supported by the Amended Complaint, they cannot be used to oppose a motion to dismiss that challenges the sufficiency of the Amended Complaint's allegations.

### b. Plaintiffs Fail to Sufficiently Plead Any Cause of Action Against Moonstone
#### i. Unjust Enrichment (Count VI)

The Opposition does not contain a single citation to the Amended Complaint in support of their unjust enrichment claim, thus Plaintiffs implicitly concede that any alleged benefit conferred on Moonstone was not **directly conferred**. Opp. at 27–28. As an initial matter, the **only** alleged benefit that Plaintiffs supposedly conferred on Moonstone consists of "depositing funds into and using the FTX Platform" and "ill-gotten gains, including in the form of revenues derived from Plaintiffs' and other class members' funding and use of the FTX Platform." AC, ¶¶ 315–16. However, this defies plausibility because the Amended Complaint is devoid of any allegation that suggests that Moonstone owned, operated, had access to, or had any other involvement *whatsoever* with the FTX Platform, nor derived any revenue from it.

Plaintiffs do not explain how allegations of Plaintiffs' deposits in the FTX Platform— which they allege was "maintained by the FTX Group" (AC, ¶ 3)—purportedly conferred a benefit

on Moonstone. Instead, Plaintiffs stuck with their tactic of attempting to amend their Amended Complaint through the Opposition by asserting two novel theories: (1) the $11.5 million Alaemda investment contained Class Member funds and the investment "far exceeded the value of Alameda's stake in Moonstone"; and (2) the $50 million deposited by FTX was Class Member funds that served as "a primary profit source for the bank." Opp. at 27. To be clear, the Amended Complaint contains **no** allegations that the Alameda investment contained Class Member funds, nor that Moonstone generated any profit from the FTX deposit. Even if it did, the unjust enrichment claim still fails because Plaintiffs did not allege a direct conferral of benefits on Moonstone.

Plaintiffs' contention that benefits need not be conferred directly to sustain a claim for unjust enrichment is unavailing. Plaintiffs rely on inapt case law regarding sales through intermediaries and fail to address the germane authority cited by Moonstone requiring a direct conferral here. In particular, *In re Takata Airbag Products Liability Litigation* found that the theory of conferring a direct benefit through indirect contact with an intermediary was applicable **only** where a defendant uses an intermediary or retailer as a "pass through" to sell a product to the plaintiff, not where "the benefit was not contingent on any consumer's decision to purchase." No. 17-24009-CV- MORENO, 2017 WL 2406711, at *10 (S.D. Fla. June 1, 2017); *see also Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla Nov. 26, 2007) (finding unjust enrichment sufficiently pled where the manufacturer marketed the product directly to consumers but sold it through a third-party retailer and generated profits from each sale).[3]

In contrast, Plaintiffs do not allege that any FTX entity was operating as a retailer or intermediary to sell Moonstone's services to Plaintiffs, nor that Plaintiffs were transacting with FTX as a means to invest or deposit money in Moonstone. Rather, the Amended Complaint unequivocally alleges that Plaintiffs transacted with FTX as the seller of FTX's *own* services, such as those provided on the FTX Platform (FTX's mobile application and/or web-based cryptocurrency investment service). AC, ¶¶ 3, 11–26. It is not that Plaintiffs merely lacked direct *contact* with Moonstone, it is that Plaintiffs did not confer a direct *benefit* on Moonstone. *Compare*

---

[3] Plaintiffs' reliance on *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.,* is equally misplaced. 653 P.2d 1331, 1334–35 (Wash. 1982). In *Irwin*, the court denied summary judgment because there was evidence that the services rendered by the intermediary and paid for by the plaintiffs were performed *at the urging and with the consent of the bank*. *Id.* Here, there are no facts to suggest that Moonstone induced Plaintiffs into transacting with FTX for Moonstone's benefit.

*In re Takata*, 2017 WL 2406711, at \*10, *with Romano*, 2007 WL 4199781, at \*2, and *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013).

The same is true for Plaintiffs' (unpled) novel theories based on the investment and deposit at Moonstone, because an *indirect* monetary benefit is insufficient as a matter of law to plead an unjust enrichment claim. *See Conn. Gen. Life Ins. Co. v. Mayberg*, No. 23-21461-Civ, 2024 WL 1931704, at \*5 (S.D. Fla. April 27, 2024); *see also Wang v. Revere Cap. Mgmt., LLC*, No. 22-CV-80884, 2023 WL 2198570, at \*8 (S.D. Fla. Feb. 15, 2023) ("[T]he first Amended Complaint alleges that Plaintiffs transferred funds to RPD and Walsh and RPD misappropriated those funds to make payments on the High Yield loan. This indirect conferral of benefits is insufficient to satisfy the first element of a claim for unjust enrichment."), abrogated on other grounds in *Otto Candies, LLC v. Citigroup, Inc.*, No. 23-13152, 2025 WL 1337052 (11th Cir. May 8, 2025); *CFLB P'ship, LLC v. Diamond Blue Int'l, Inc.*, 352 So. 3d 357, 360 (Fla. 3rd DCA 2022) (finding payments loaned by plaintiff to a third-party who misappropriated the funds by transferring the funds to defendant were "inequitable circumstances" but, "without evidence demonstrating that a direct benefit was conferred on [defendant], [p]laintiff's claims of unjust enrichment necessarily fail as a matter of law"). Accordingly, as there are no factual allegations to support even an inference that Moonstone received any benefit directly from Plaintiffs, Count VI must be dismissed.[4]

### ii. Common Law Aiding and Abetting Claims (Counts II, III, and IV)

In an effort to overcome the pleading deficiencies in the Amended Complaint regarding Moonstone's involvement in the alleged FTX scheme, Plaintiffs' Opposition impermissibly stacks inferences,[5] contorts the theory of imputation, and relies on inapposite case law. Looking past the unsupported conclusions and focusing strictly on the factual allegations in the Amended Complaint, Counts II through IV must be dismissed for failure to sufficiently allege Moonstone's actual knowledge of FTX's alleged underlying wrongdoing, and Moonstone's knowing

---

[4] Plaintiffs offer no authority to support their argument that Moonstone was required to pay consideration to Plaintiffs. Opp. at 28. As described in the Motion to Dismiss, to the extent that any benefit was conferred on Moonstone by any FTX entity, consideration was provided in the form of banking services. Mot. at 9 (collecting cases for consideration).

[5] *See Falls v. Desantis*, No. 4:22cv166-MW/MJF, 2022 WL 19333278, at \*7 (N.D. Fla. July 8, 2022) (dismissing claim for lack of standing because finding a cognizable injury "stacks multiple inferences absent sufficient factual allegations"); *League of Women Voters of Fla., Inc. v. Lee*, 566 F. Supp. 3d 1238, 1254 (N.D. Fla. 2021) (dismissing a claim because the court had to "fill in the blanks left in the amended complaint and stack inferences" to conclude plaintiffs had standing).

"substantial assistance" in the commission of the wrongdoing. *See Todd Benjamin Int'l, Ltd. v. Grant Thorton Int'l, Ltd.*, 682 F. Supp. 3d 1112, 1136 (S.D. Fla. 2023).

### 1.  *Failure to allege actual knowledge*

While it is correct that Rule 9(b) particularity does not extend to the knowledge element of aiding and abetting common law torts—nowhere in the Motion to Dismiss does Moonstone suggest otherwise—that does not excuse Plaintiffs from their obligation to plead actual knowledge plausibly.  *See Angell v. Allergan Sales, LLC*, No. 3:18-CV-282-J-34JBT, 2019 WL 3958262, at *10 n.16 (M.D. Fla. Aug. 22, 2019) ("[B]ased on the requirements of *Twombly* and *Iqbal*, the Court will consider whether the pleaded factual content allows the court to draw the reasonable inference that [defendant] had actual knowledge of the underlying wrongdoing.") (internal citations and quotations omitted); *In re Consol. Meridian Funds*, 485 B.R. 604, 616–17 (Bankr. W.D. Wash. 2013) ("[A]ctual knowledge may be averred generally under Rule 9(b), however, pleading actual knowledge is still subject to the requirement that a plaintiff must state factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged … Although knowledge may be inferred and proven by circumstantial evidence, the allegations of the same must still satisfy the pleading requirements set forth in *Twombly* and *Iqbal*.") (internal quotations and citations omitted). They have failed to do so.

"Actual knowledge necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *In re Consol. Meridian Funds,* 485 B.R. at 616–17. Plaintiffs' contention that circumstantial evidence is enough misses the point: "[W]hile actual knowledge may be shown by circumstantial evidence, ***the circumstantial evidence must demonstrate that the aider and abettor actually knew of the underlying wrongs committed***." *Angell*, 2019 WL 3958262, at *8 (emphasis added) (citing *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014)).

The factual allegations that Plaintiffs point to in their Opposition—which are overstated if not misstated—fall far short of demonstrating that Moonstone actually knew of FTX's alleged wrongdoing under the standard for pleading a bank's actual knowledge of another's Ponzi scheme. *See* Mot. at 12–13 (collecting cases on pleading actual knowledge).

<u>First</u>, Plaintiffs purportedly allege that Moonstone was "obligated" to comply with various laws and regulations related to due diligence and monitoring which "gives rise to the inference that Moonstone learned" of FTX's fraud, breach of fiduciary duty, or conversion. Opp. at 18–19.

Pertinent case law makes clear this is not enough to allege actual knowledge. *See FW Distrib., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 24-cv-21385, 2024 WL 4665255, at *8 (S.D. Fla. Nov. 4, 2024) (finding allegations that "consistent with their anti-money laundering policies, internal practices, and personal banking relationships" the bank acquired knowledge of fraud merely demonstrates what the bank "should have known … not that they actually knew of the conduct").

Moreover, while their Opposition sets forth five bullet points, the citations to the Amended Complaint for each bullet point do not support its argument. For instance, paragraph 250 vaguely claims that certain regulations require a bank to investigate the nature and intended purpose of the business relationship with an account's beneficial owners. *See* AC, ¶ 250. But the plain words of paragraph 250 do not to infer, as the Opposition suggests, that Moonstone learned "the intended use and purpose of the FTX accounts was to hold customer assets, including Class Member funds, in custody for the customers' benefit as reiterated in FTX's terms of service." Opp. at 19. Their argument not only presumes, without alleging, there was some indication that the FTX accounts at Moonstone were custodial or beneficial in nature (they were not), but further presumes that FTX's consumers were the "beneficial owners"—even while the Opposition asserts in the very next bullet that it can be inferred that Moonstone also learned that the beneficial owner of FTX and Alameda was SBF. Opp. at 19. Such inference stacking is rife in the Opposition.

The allegations in the Amended Complaint, at most, amount to what Moonstone "should have" done (or known), not what it actually did (or knew). The Opposition asserts that "in their Complaint, Plaintiffs quote Moonstone's representation to the public that it *did* conduct this regulatory-mandated diligence and monitoring." *Id.* (emphasis in original). Not so—the Amended Complaint alleges, without any context as to time or place, that "Moonstone represented to the public that it offered to its customers 'first-in-class regulatory, compliance and risk expertise,' so ***certainly must have satisfied its diligence and monitoring regulatory obligations***." AC, ¶ 249. What Plaintiffs are actually doing is improper inference stacking. That is evident in the next line of the Opposition, which states, "Plaintiff's allegations give rise to the inference that Moonstone did conduct that diligence and did obtain the knowledge outlined from that diligence." Opp. at 19. In other words, Plaintiffs are asking this court to ***infer*** that Moonstone conducted amorphous "due diligence and monitoring" then, based on that inference, ***infer again*** that Moonstone actually did obtain knowledge of FTX's Ponzi scheme because of it.

10

_Second_, Plaintiffs contend, with no citation to the Amended Complaint, that they alleged that "Moonstone learned facts demonstrating FTX's underlying misconduct" from soliciting Alameda's investment in Moonstone. Opp. at 20. Again, Plaintiffs misrepresent the Amended Complaint.[6] At most, it alleges that Mr. Friedberg and Mr. Chalopin regularly met over dinner; spoke highly of each other; began discussing Alameda's investment in Moonstone in August 2021; and that Mr. Chalopin _may_ have known that in 2013 it was reported that Mr. Friedberg allegedly covered up a totally separate poker cheating scheme perpetrated by others. _See_ AC, ¶¶ 247–48. Nowhere is it alleged, however implausibly, that Moonstone "learned of facts demonstrating FTX's underlying misconduct" from Mr. Friedberg. In fact, in complete contradiction, Plaintiffs attached and incorporated into their Amended Complaint a sworn declaration from Mr. Friedberg that he "had no idea of any customer deficit" at FTX and immediately resigned when he suspected fraud. ECF No. 779-2, ¶¶ 7, 9, 10, 11. Their own exhibit rebuts and nullifies this latest notion of how Moonstone supposedly acquired this "actual knowledge" of FTX's misconduct, and highlights Plaintiffs' grasp for anything, even the improper and implausible, to survive dismissal.

_Third_, Plaintiffs, again without any authority, suggest a _double_ imputation theory in an attempt to impute "knowledge" from Deltec to Mr. Chalopin and then to impute that "knowledge" from Mr. Chalopin to Moonstone. Opp. at 20. As an initial matter, the Amended Complaint does not plausibly allege that Mr. Chalopin personally had actual knowledge of FTX's underlying misconduct. As the Motion to Dismiss pointed out, the allegations that Mr. Chalopin had "close ties" to SBF and FTX executives, which are derived from the anecdote that he attended a conference co-hosted by Deltec and FTX, is nothing more than guilt by association.

Implicitly recognizing a failure to plausibly allege Mr. Chalopin's personal knowledge of a fraud long-hidden from the world, Plaintiffs make the unsupported conclusion that "[i]t is reasonable to infer from Chalopin as _chairman_ of Deltec was knowledgeable of the transactions effected by the bank on behalf of its largest customer." Opp. at 20 (emphasis in original). The sole basis for the imputation is Mr. Chalopin's role as chairman at Deltec.[7] But Plaintiffs offer no legal basis to impute the knowledge of an entire corporation to its directors. The cases they cite do the

---

[6] Again, Plaintiffs claim that the $11.5 million Alameda investment in Moonstone included Class Member funds. _See id._ Again, no such allegation exists in the Amended Complaint.

[7] The imputed knowledge is necessarily a legal construct, as the Amended Complaint contains no allegations concerning Mr. Chalopin's role and responsibilities at Deltec—such as personally handling Deltec's due diligence or transactions—to otherwise show the inference is reasonable.

opposite—imputing a director's personal knowledge to the corporation. *See* Opp. at 7 n.4. They cite no basis to allow imputed (constructive) knowledge to be again imputed by virtue of a director to a separate entity, and ignore Moonstone's authority to the contrary. *See* Mot. at 14. Plaintiffs' attempt to impute Deltec's alleged knowledge to Moonstone is legally and factually unsustainable.

Plaintiffs' Opposition cannot save their aiding and abetting claims by relying on cases that are readily factually distinguishable:

- In *Chang v. JPMorgan Chase Bank, N.A.*, it was sufficiently alleged that the bank had aider-abettor knowledge where its vice president *personally* labeled the fraudster's account as escrow even though the fraudster failed to comply with the bank's procedures for opening escrow accounts, falsely represented the escrow account's balance on bank letterhead, and secretly received $100,000 from the fraudster. 845 F.3d 1087, 1096–97 (11th Cir. 2017).

- In *Gilison v. Flagler Bank*, it was alleged the bank was the only lender that had "direct access to [the fraudster's] financial records and the discrepancies within them," the fraudster's accountants, who made balance sheets that conflicted with its tax statements, were the bank's CEO/President and members of the board of directors, and the bank had advanced the fraudster funds, bolstering its financial condition. 303 So. 3d 999, 1003 (Fla. 4th DCA 2020).

- In *In re Consolidated Meridian Funds*, it was accepted as well-pled that the fraudster intended to create custodial accounts for the benefit of investors, the bank knew of his intention, the investor's checks were deposited directly to the bank, and bank documents referred to those funds as "custodial accounts. 485 B.R. at 617.

- In *Bhatia v. Silvergate Bank*, it was sufficiently plead that the bank had "actual knowledge" of FTX's wrongdoing where it held multiple FTX accounts and it was alleged that the bank *actually conducted* due diligence that uncovered various suspicious account activities. 725 F. Supp. 3d 1079, 1115 (S.D. Cal. 2024).

At bottom, the allegations in the Amended Complaint merely amount to speculation and conjecture that Moonstone "would have" or "should have obtained" knowledge of FTX's misconduct, not that it actually knew. Accordingly, its allegations are legally insufficient to state claims for aiding and abetting in Count II, III, and IV.

## 2. *Failure to allege indicia of knowledge*

Plaintiffs' effort to salvage their aiding and abetting claims by arguing that Moonstone's "actual knowledge" can be inferred from three circumstantial "indicia of knowledge" is unpersuasive. Opp. at 22. Conspicuously, their entire argument is devoid of any citation to the Amended Complaint. However, even looking at the Amended Complaint, these indicia are neither

plainly alleged nor reasonably inferred by any fact therein. *See Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) ("While actual knowledge may be shown by circumstantial evidence, courts 'stress that the requirement is *actual* knowledge' and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed." (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 536 (6th Cir. 2000) (emphasis in original)).

*First*, as explained above, the Amended Complaint does *not* allege that "Moonstone had access to the FTX Entities' financial records and visibility of transfers from FTX to Alameda" based on supposed regulatory-mandated diligence. Opp. at 22. And this cannot be reasonably inferred based on the tenuous allegations about what Moonstone "would have learned" had it conducted due diligence and monitoring on its customers and their accounts. *Meridian Tr. Co. v. Batista*, No. 17-23051, 2018 WL 4693533 (S.D. Fla. Sept. 26, 2018) (rejecting allegations that a bank "would have access to all relevant information," on the basis that "courts in this district have rejected these types of 'should have known' arguments").

*Second*, as shown above, it is not plausibly alleged that Moonstone benefitted or received kickbacks from FTX's underlying violations in the form of Alameda's investment. *See* Part II.a, *supra*; *cf.* Opp. at 22. The Amended Complaint's fleeting reference to Moonstone benefiting from a "quid pro quo" is vague and conclusory. *See* AC, ¶¶ 256–57.

*Third*, there is no allegation in the Amended Complaint that Moonstone "made a false representation to the Federal Reserve in its application for membership to the benefit of FTX and Alameda." *See* Opp. at 22. Contrary to Plaintiffs' allegations, the *actual* enforcement announcement from the Federal Reserve does not indicate that Moonstone fraudulently obtained its membership or made any misrepresentation in its application. *See generally* Exhibit A.[8] Even so, unlike the case cited by the Opposition, there is zero indication that Moonstone made any representation to the Federal Reserve "*on behalf of*" FTX and Alameda. Opp. at 22; *cf. Chang*,

---

[8] Moonstone's Motion to Dismiss included reference to and a link to publicly-available Exhibit A, which it previously placed on the record, but Moonstone notes that Exhibit A was inadvertently not refiled with its Motion to Dismiss. *See* Mot. at 3-4 and n.5. Exhibit A appears on this Court's docket at ECF No. 510-1, as Exhibit 1 to Moonstone's Opposition to Plaintiffs' Motion for Leave to File Amended Complaint Against Bank Defendants (the pleading now at issue), and therefore can properly be considered. *See S.E.C. v. Dunlap*, No. 01-8437-CIV, 2002 WL 1007626 at *1 (S.D. Fla. Mar. 27, 2002) (courts considering motions to dismiss may consider "items appearing in the record of the case").

845 F.3d at 1096-97 (claim that bank's vice president misrepresented the fraudster's account balance on the bank's letterhead supported that the bank had knowledge). As with Plaintiffs' other supposed "allegations" and "circumstantial indicia" of Moonstone's knowledge, this argument cannot withstand the slightest scrutiny and fails to support their claims.

### 3. *Failure to allege substantial assistance*

Plaintiffs' Amended Complaint similarly fails to allege that Moonstone knowingly provided substantial assistance to FTX, and Plaintiffs' improper characterization of its allegations does not demonstrate otherwise.[9]

<u>*First*</u>, Plaintiffs did not allege that "Moonstone provided FTX ***necessary*** access to the U.S. banking system" (Opp. at 22)—nor could they, as the Amended Complaint pleads that Moonstone was the third of *three* alleged access points to the U.S. banking system.[10] *See* AC, ¶ 254. Moreover, nowhere does the Amended Complaint (or the Opposition) explain the supposed import of Federal Reserve membership, or describe the bank's membership as "necessary" or any other precondition to FTX's unlawful activities. The Opposition attempts to fill that gap by citing paragraph 258 to contend that "FTX needed the ability to take in customer deposits in the United States, which its accounts at Moonstone allowed it to do, and then traffic those deposits to Alameda beyond the reach of U.S. authorities, which it did so by transfer to accounts held by FTX at Deltec, Moonstone's sister bank." Opp. at 22–23. These are misrepresentations and new allegations, because paragraph 258 (and subsequent paragraph 259) ***says no such thing***[11]: (i) ***not*** that FTX needed a U.S. bank, (ii) ***not*** that Moonstone "took in customer deposits," (iii) ***not*** that FTX transferred money from Moonstone to Deltec, and (iv) ***not*** that Deltec is Moonstone's "sister bank." *See* AC, ¶¶ 258–59. The actual allegations of the Amended Complaint simply amount to Moonstone providing FTX the same routine banking services that it would provide to any other customer, which are legally insufficient to demonstrate substantial assistance in this instance. *See In re Consol. Meridian Funds*, 485 B.R. at 624.

---

[9] Under Washington law, "substantial assistance must be pleaded with particularity." *In re Consol. Meridian Funds*, 485 B.R. at 617 (citing *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:11-CV-07165-MRP, 2012 WL 1798997, at *6 (C.D. Cal. Feb. 17, 2012)).

[10] This is directly contradictory to the Opposition's novel contention that "no other U.S. financial institution would service FTX in these ways." Opp. at 24–25.

[11] Likewise, there are no allegations in the Amended Complaint (and Plaintiffs do not point to such) that state or lead to a reasonable inference that Moonstone took *any* action to "conceal FTX's misconduct." Opp. at 24.

*Second*, Moonstone has already shown that Plaintiffs *did not allege,* and certainly did not *plausibly* allege*,* that Moonstone effected banking transactions to and from FTX or that Moonstone knew that FTX was misappropriating customer assets by way of such transfers. *See* Mot. at 16 n.11. The contortion, misrepresentation, and splicing of Mr. John Ray's testimony before Congress cannot be permitted to embellish Plaintiffs' allegation that Moonstone provided assistance "beyond ordinary or routine banking services." Paragraph 258 alleged, in its entirety:

> To be sure, the assistance provided by Deltec, Moonstone, and Mr. Chalopin goes beyond ordinary or routine banking services, and the irregular nature of their relationship to FTX has captured the attention of John J. Ray, who is overseeing FTX's bankruptcy. In testimony before Congress, Mr. Ray noted that he was "looking at what dollars were that went from the FTX group to [Moonstone Bank] and looking at the connections of that bank to the Bahamas [i.e., Deltec]….There's a lot more questions than answers. It's certainly highly irregular and has got our attention."

AC, ¶ 258.[12] To be clear, Mr. Ray said *nothing* about any *services that Moonstone provided* to FTX or about *transfers* from Moonstone to Deltec. Rather, Plaintiffs insert new words into Mr. Ray's mouth when they repeatedly misstate in the Opposition that he testified "that the services Moonstone and Deltec provided to FTX were 'certainly highly irregular' and transfers between the banks have 'gotten [the Bankruptcy Estate's] attention.'" Opp. at 23 (citing AC, ¶ 258); *see also id.* at 13, 25 (same).

*Third*, Plaintiffs assert that through its "regulatory obligation" Moonstone "learned that FTX promised to hold customer assets, including Class Member funds, in custody for the customers' benefit," thus, Moonstone "knew of the custodial nature of FTX's relationship to its customers, and therefore, the fiduciary duty it owed to each." Opp. at 23–24. As explained *supra*, this is **not** alleged in the Amended Complaint, but instead is an unsupported, speculative conclusion derived from stacking inferences. Plaintiffs take that fantasy one step further by arguing, without citation to the Amended Complaint or any other fact, that Moonstone could see (by some unknown means) that "FTX was misappropriating FTX customer funds," to impose on Moonstone a duty to disclose FTX's misconduct. *See id.* at 24.

---

[12] Mr. Ray's testimony, which the Amended Complaint selectively quotes, is available in full at https://www.c-span.org/video/?524743-1/ftx-ceo-testifies-cryptocurrency-companys-collapse. As the Congressional testimony is a public record, the Court may take judicial notice of the statement. *See, e.g.*, *In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1176 n.10 (S.D. Fla. 2022), *aff'd*, 76 F.4th 1335 (11th Cir. 2023) (taking judicial notice of a statement to Congress).

Fantasies aside, Plaintiffs' cases are unavailing here. Their cases involve well-pleaded allegations that an institution *knew* accounts were custodial in nature, either due to investors depositing funds directly into accounts at the institution or because a duty arose from a contract between the institution and a non-customer plaintiff or between an investment firm and the customer. *See Calvert v. Com. Bank of Wash., N.A.*, No. 10-17952, 2013 WL 3487562 (Bankr. W.D. Wash. May 14, 2013), *amended sub nom. In re Consol. Meridian Funds*, No. BR 10-17952-KAO, 2013 WL 3487732 (Bankr. W.D. Wash. May 21, 2013) (finding substantial assistance plead under a Washington law that imposes specific duties on banks involving transactions with "fiduciary accounts" where the bank has knowledge of the fiduciary status based on allegations that investors directly deposited funds into accounts for investments and the bank nonetheless allowed the fraudster to comingle the money with personal and other corporation funds for personal use); *Stewart v. Bank of Am., N.A.*, No. 8:11-cv-2586, 2012 WL 13106302 (M.D. Fla. Feb. 28, 2012) (writing evidenced that the bank was acting as express escrow agent and as custodian for the insurance funds and the bank owed a duty to the plaintiffs regarding all disbursements from escrow); *Ricchetti v. Starfish Beach S., S.A.*, No. 10CV21754, 2010 WL 11451771 (S.D. Fla. Dec. 27, 2010) (alleging a custodial agreement imposed a custodial duty from investment firm in favor of plaintiff).

These cases provide no basis for Plaintiffs to simply speculate (not citing any allegation) that Moonstone "knew of the custodial nature of FTX's relationship to its customers and, therefore, the fiduciary duty it owed to each," and thereby must have had its own (unpled) duty to disclose. *Cf. Meridian Trust Co.*, 2018 WL 4963533, at *5 ("As a matter of law, a bank does not owe a duty of care to a non-customers regarding the opening or maintenance of its accounts.") (internal citations and quotations omitted). In short, the Opposition fails to demonstrate that Moonstone knowingly assisted FTX in its alleged misconduct and thus, Plaintiffs' aiding and abetting claims should be dismissed.

### iii.   *Civil Conspiracy (Count I)*

Plaintiffs' civil conspiracy claim fails on two grounds: (1) Plaintiffs have not sufficiently stated any of its claims for aiding and abetting FTX's wrongdoing,[13] and therefore cannot establish a civil conspiracy necessarily predicated thereon; and (2) Plaintiffs also fail to plead sufficient

---

[13] The parties do not dispute that only intentional torts, not the unjust enrichment claim, may serve as a predicate for the civil conspiracy claim. *See* Mot. 17 n. 12; Opp. at 25.

facts supporting that Moonstone entered an agreement and acted in furtherance to commit fraud, breach fiduciary duties, or convert Class Members funds. Their cases are inapt, as each was premised on far more allegations of knowledge and involvement than pleaded here.

Plaintiffs concede that they rely entirely on an inference of an agreement. Opp. at 26. But each of the Opposition's six enumerated "allegations" they claim implies an agreement, as explained above, are either not asserted or supported in the Amended Complaint. To be clear, the Amended Complaint cannot make out any claim based on its wholly conclusory allegations of (1) unsubstantiated "close ties" to FTX executives, (2) Moonstone's willingness, like at least two other U.S. banks, to service the nascent cryptocurrency industry,[14] (3) unreasonable inferences characterized as "knowledge" of FTX's wrongdoing, (4) transfer allegations made "under information and belief" and misrepresentations of Moonstone's membership in the Federal Reserve, or (5) Alameda's investment in and FTX deposits in Moonstone, which Moonstone simply held. *See id.* Nor can Plaintiffs fashion an inference of conspiracy based on their new (and false) characterization of Alameda as "Moonstone's majority shareholder." *See id.*[15] Plaintiffs' concocted narrative that "SBF enjoyed overlapping ownership of Moonstone and the FTX Entities" is a prime example of twisting the truth in a last-ditch effort to save their claims. Count I is baseless and must be dismissed.

### iv.    RICO Conspiracy (Count V)

As was the case for the civil conspiracy claim, Plaintiffs' RICO conspiracy claim fails because the Amended Complaint lacks factual allegations that plausibly demonstrate that Moonstone agreed to participate in an enterprise's illegal activity. Plaintiffs' deficiency is evident from the fact that the Opposition ***relies almost exclusively on allegations not actually contained in the Amended Complaint*** to claim they have adequately alleged a RICO conspiracy. *See* Opp. at 28-29 (citing Exs. 5, 6). As explained *supra*, new allegations and exhibits appearing for the first time in the Opposition should be disregarded by this Court.

---

[14] The Amended Complaint actually alleges that *Deltec*, not *Moonstone*, provided "one-of-a-kind" banking services to FTX. *See* AC, ¶ 133.

[15] Plaintiffs' characterization of Alameda as a "majority shareholder" or holding a "majority stake" in Moonstone (Opp. 9, 26) is not only absent from the Complaint, but also ignores Mr. Ray's sworn testimony, during the very same Congressional testimony Plaintiffs cite, that Alameda's investment in Moonstone was a *minority share* of 10%. *See infra* n. 12.

The only allegations in the Amended Complaint that Plaintiffs cite in support of its RICO conspiracy count are that Mr. Chalopin negotiated a deal with Mr. Friedberg that resulted in an $11.5 million investment in Moonstone from Alameda that "nearly double[d] the bank's net worth at that time." Opp. at 29 (citing AC ¶¶ 245–46). Plaintiffs fail to offer any rationale as to why it would be reasonable to infer from a single investment, negotiated over a period of months, that Moonstone agreed to and participated in a racketeering scheme—because it cannot. *See In Re Takata Airbag Products Liability Litigation,* 396 F. Supp. 3d at 1166 (dismissing RICO conspiracy claim because plaintiffs' allegations of defendants' relationships "beyond simple information sharing," their "decid[ing] together to forego key performance requirements," and "work[ing] together" to minimize the airbag recall "still fail[ed] to plausibly allege [defendants] entered into an *agreement* with Takata *to commit* wire or mail fraud"). As described in the Motion to Dismiss, the allegations specific to Moonstone in the Amended Complaint are deficient, and the improper group pleading of "Defendants" in paragraphs 297 to 312 does not give rise to a plausible inference of Moonstone agreeing to violate RICO in furtherance of defrauding FTX customers. *See* Mot. at 20–22.

Even the authority cited by Plaintiffs cuts against their RICO conspiracy claims. In *Lechter v. Aprio, LLP*, the Northern District of Georgia dismissed RICO conspiracy counts in finding that the allegations in the complaint were conclusory in nature as the existence of an agreement and the facts asserted were "consistent with each of the Defendants 'going about its own business.'" 565 F. Supp. 3d 1279, 1315 (N.D. Ga. 2021) (citing *United Food & Comm. Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013)). The court noted that, in the Eleventh Circuit, for allegations to cross the line from a *possible* agreement to a *plausible* one, plaintiffs must plead "'allegations explaining how exactly the defendants went about entering into an agreement with each other.'" *Id.* (quoting *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068–69 (11th Cir. 2017)). Because the complaint was devoid of allegations regarding *specific* interactions between defendants and how such an agreement came about, plaintiffs did not plausibly allege a RICO conspiracy under any theory. *Id.* at 1315, 1331–32. Similarly, in *American Dental Association v. Cigna Corp.*, the Eleventh Circuit upheld the dismissal of a RICO conspiracy because, after it eliminated conclusory allegations and unwarranted factual deductions, all that was pleaded was parallel conduct which is "equally

291fd

indicative of rational independent action as it is concerted, illegitimate conduct." 605 F.3d 1283, 1295 (11th Cir. 2010). Plaintiffs' Amended Complaint suffers from these same inadequacies.

In sum, the allegations about Moonstone are insufficient to enable the Court to draw any inference, much less a plausible one, of a RICO agreement by Moonstone. Therefore, Count V should be dismissed.

### c. Plaintiffs' Claims Are Mooted And Barred By The FTX Bankruptcy Plan

Contrary to Plaintiffs' assertions in the Opposition, the FTX Bankruptcy Plan will provide Plaintiffs with 100% redress of their injuries. *See* Mot. at 22. Unlike the cases cited in the Opposition, where the plaintiffs received less than complete relief for their injury, here, an election under the Plan would result in payment in full, plus interest. *See In re: FTX Trading Ltd.*, Case No. 22-11068 (Bankr. D. Del) at ECF Nos. 26404, 26404-1 § 4.3.7, 26404-2. Accordingly, Plaintiffs' claims are mooted, as there is no present controversy for which the court can grant relief. Similarly, as the Plan provides for full compensation, Plaintiffs' entitlement to damages is barred by the one-satisfaction rule, and they should not be permitted to recover twice for the same injury. *See U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1236 (10th Cir. 1988).

## III.   CONCLUSION

Sam Bankman-Fried orchestrated an unparalleled, global Ponzi scheme that fooled the world, including investors, celebrities, financial institutions, and even regulators. It is implausible, if not frivolous, to claim that Moonstone actually saw past the masquerade and knowingly participated in the scheme. Plaintiffs have obfuscated their own pleading and ignored applicable case law to try in vain to paint a picture in which Moonstone even could have or should have known about FTX's ruse. *Twombly* and *Iqbal* serve as gatekeepers to prevent these types of factually-untethered, speculative claims from proceeding past the pleading stage. This latest amendment confirms that dismissal of Moonstone from this lawsuit is just and proper.

Respectfully submitted,

/s/ *Marisa R. Dorough*
Ty Kelly Cronin
Maryland CPF No. 0212180158
(*Certificate of Understanding filed*)
Frank C. Bonaventure, Jr.
Maryland CPF No. 8011010040
(*Certificate of Understanding filed*)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
100 Light Street, 19th Floor
Baltimore, Maryland 21202
Phone: (410) 862-1049
tykelly@bakerdonelson.com
fbonaventure@bakerdonelson.com

-and-

Marisa Rosen Dorough
Florida Bar No. 73152
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
200 South Orange Avenue, Suite 2050
Orlando, Florida 32801
Phone: (407) 422-6600
mdorough@bakerdonelson.com

*Counsel for Defendant*
*Farmington State Bank d/b/a Moonstone Bank*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of May, 2025, I caused the foregoing to be

filed and electronically served on all counsel of record via this Court's CM/ECF filing system.

*s/ Marisa R. Dorough*
Marisa R. Dorough

20