**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | No: 1:23-md-03076-KMM<br><br>MDL No. 3076 |

This Document Relates To:

*Garrison v. Bankman-Fried*,
No. 22-cv-23753-KMM

*Garrison v. Paffrath*,
No. 1:23-cv-21023-KMM

*Norris v. Brady*,
No. 23-cv-20439-KMM

*Podalsky v. Bankman-Fried*
No. 1:22-cv-23983-KMM

*Garrison v. Golden State Warriors*,
No. 1:23-cv-23084-KMM

*Lam v. Bankman-Fried*,
No. 1:23-cv-22195-KMM

*Garrison v. Osaka*,
No. 1:23-cv-23064-KMM

*Garrison et al. v. Furia Esports LLC et al.*,
No. 1:24-cv-20895-RS

*Garrison et al. v. Lincoln Holdings LLC*,
No. 1:24-cv-00655-JMC

*Garrison et al. v. Mercedes-Benz Grand Prix Limited (d/b/a Mercedes-AMG Petronas Formula One Team)*,
No. 1:23-cv-24480-JEM

*Garrison v. Office of The Commissioner of Baseball d/b/a Major League Baseball*,
No. 1:23-cv-24479-KMM

*Garrison v. Riot Games, Inc.*,
No. 1:24-cv-21296-KMM

*Garrison v. Wasserman Media Group, LLC*
*and Dentsu McGarry Bowen LLC,*
No. 23-cv-24478-KMM

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR TO COMPEL**
**ARBITRATION BY SPORTS & ENTERTAINMENT DEFENDANTS, INCORPORATED**
**<u>MEMORANDUM OF LAW, AND REQUEST FOR HEARING</u>**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................3

    A.    FTX Collapses And Files For Bankruptcy. .........................................................3

    B.    Plaintiffs Sue S&E Defendants. ..........................................................................3

    C.    The Court Grants In Part And Denies In Part The Original S&E Defendants' Motion To Dismiss. ..................................................................4

    D.    Plaintiffs File An Amended Consolidated Complaint Against All S&E Defendants. ..................................................................................................4

    E.    Plaintiffs Have Already Begun To Recover Through The FTX Bankruptcy. .................................................................................................6

LEGAL STANDARD .........................................................................................................8

ARGUMENT .......................................................................................................................9

I.    Plaintiffs Have Not Pleaded Any Of The Essential Elements Of An Unregistered Securities Claim Under Florida, California, Or Oklahoma Law. .........................................9

    A.    Plaintiffs Do Not Allege That They Purchased Securities. ..................................10

    B.    Plaintiffs Have Not Pleaded That Defendants Successfully Solicited The Sale Of An Unregistered Security. ...........................................................12

        1.    Plaintiffs Do Not Allege Defendants Induced The Purchase Of Unregistered Securities. ...........................................................13

        2.    The FTX Platform Is Not A Security. ...........................................15

    C.    Plaintiffs Do Not Plead That Any Defendant Solicited The Sale Of YBAs Or FTT. ..................................................................................................20

    D.    The Court Should Dismiss Plaintiffs' Claims Because They Do Not Plausibly Allege Damages. .........................................................................23

II.    The Court Should Dismiss Plaintiffs' California, Oklahoma, And Florida Claims Because They Have Not Alleged A Nexus To Any Of These States. .............................26

III.    The Court Should Again Dismiss Plaintiffs' California Securities Claim Because Plaintiffs Have Still Not Pleaded Intent To Defraud. .........................................28

i

IV.     Plaintiffs' California And Oklahoma Claims Are Time-Barred Against Certain
        Defendants. ........................................................................................................30

V.      The Court Should Strike Damages Allegations Inconsistent With State Law...................31

VI.     Plaintiffs' Claims Belong In Arbitration And Cannot Be Adjudicated As Class
        Claims. ...............................................................................................................33

VII.    If The Court Does Not Dismiss Plaintiffs' Claims In Their Entirety, It Should
        Stay This Proceeding Pending Resolution Of The FTX Bankruptcy Proceedings............38

CONCLUSION.......................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Risley v. Universal Navigation Inc.*,
690 F. Supp. 3d 195 (S.D.N.Y. 2023) ................................................................. 21

*In re Tezos Sec. Litig.*,
2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ................................................. 14, 15

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012) ................................................................................. 27

*Anwar v. Fairfield Greenwich Ltd.*,
826 F. Supp. 2d 578 (S.D.N.Y. 2011) ................................................................. 26

*AREI II Cases*,
216 Cal. App. 4th 1004 (2013) ........................................................................... 14

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ................................................................................... 35, 37

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................................... 37

*Bahamas Sales Assoc. v. Byers*,
701 F.3d 1335 (11th Cir. 2012) ......................................................................... 35

*Bamert v. Pulte Home Corp.*,
445 F. App'x 256 (11th Cir. 2011) ..................................................................... 18

*Barnett v. Blane*,
2013 WL 1001963 (S.D. Fla. Mar. 13, 2013) ................................................. 23, 24

*Becker v. Delek US Energy, Inc.*,
39 F.4th 351 (6th Cir. 2022) ............................................................................. 35

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 8, 24

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. 2020) ............................................................................. 35

iii

*Bogle v. Rausch Sturm, LLP*,
  2022 WL 22824882 (S.D. Fla.  Oct. 7, 2022) ......................................................... 37

*Brody v. Homestore, Inc.*,
  2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) ........................................................ 22

*Calcaterra v. Baptist Health S. Fla., Inc.*,
  733 F. Supp. 3d 1349 (S.D. Fla. 2024) ................................................................. 34

*City of St. Petersburg, Fla. v. Wachovia Bank, Nat'l Ass'n.*,
  2010 WL 2991431 (M.D. Fla. July 27, 2010) ........................................................ 10

*Com. Union Assurance Co. v. Milken*,
  17 F.3d 608 (2d Cir. 1994) .................................................................................. 24

*Costa v. Carambola Partners, LLC*,
  590 F. Supp. 2d 1141 (D. Minn. 2008) ................................................................. 19

*Cress v. Nexo Fin. LLC*,
  2023 WL 6609352 (N.D. Cal. Oct. 10, 2023) ................................................... 23, 24

*Cruz v. Cingular Wireless, LLC*,
  648 F.3d 1205 (11th Cir. 2011) ............................................................................ 37

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
  685 F.2d 1284 (11th Cir. 1982) ............................................................................ 38

*Culbertson v. Schuchert*,
  110 F.3d 67 (9th Cir. 1997) .................................................................................. 29

*Dietrich v. Bauer*,
  76 F. Supp. 2d 312 (S.D.N.Y. 1999) ..................................................................... 10

*Dillon v. Axxsys Int'l, Inc.*,
  385 F. Supp. 2d 1307 (M.D. Fla. 2005) ................................................................ 13

*Donovan v. GMO-Z.com Tr. Co.*,
  2025 WL 522503 (S.D.N.Y. Feb. 17, 2025) ..................................................... 17, 18

*Fedance v. Harris*,
  1 F.4th 1278 (11th Cir. 2021) ........................................................................... 16, 17

*Fitzer v. Am. Inst. of Baking, Inc.*,
  2010 WL 1955974 (S.D. Ga. May 13, 2010) ......................................................... 39

*Foster v. Jesup & Lamont Securities Co.*,
   759 F.2d 838 (11th Cir. 1985) ................................................................. 20, 22

*Gadsby v. Am. Gold Corp. of Cal.*,
   2012 WL 13098205 (M.D. Fla. Apr. 27, 2012) ........................................... 16

*Gandhi v. Carnival Corp.*,
   2014 WL 1028940 (S.D. Fla. Mar. 14, 2014) ............................................. 33

*Gordon v. Terry*,
   684 F.2d 736 (11th Cir. 1982) .................................................................... 18

*Greenfield Children's P'ship v. FriendFinder Networks, Inc.*,
   2014 WL 12205997 (S.D. Fla. Mar. 18, 2014) ........................................... 21

*Hodge v. Orlando Utils. Comm'n*,
   2009 WL 4042930 (M.D. Fla. Nov. 23, 2009) ............................................ 31

*Hodges v. Monkey Cap., LLC*,
   2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) ............................................. 16

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) .................................................................... 6

*Horton v. Hamilton*,
   345 P.3d 357 (Okla. 2015) .......................................................................... 10

*In re CNL Hotels & Resorts, Inc.*,
   2005 WL 2291729 (M.D. Fla. Sept. 20, 2005) ........................................... 20

*In re Craftmatic Sec. Litig.*,
   890 F.2d 628 (3rd Cir. 1989) ................................................................. 20, 21

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
   650 F.3d 167 (2d Cir. 2011) ....................................................................... 22

*In re Phila. Newspapers, LLC*,
   423 B.R. 98 (E.D. Pa. 2010) ....................................................................... 39

*In re Toy King Distribs., Inc.*,
   256 B.R. 1 (Bankr. M.D. Fla. 2000) ........................................................... 25

*In re: Zantac (Ranitidine) Prods. Liab.*,
   2022 WL 16729170 (11th Cir. Nov. 7, 2022) ............................................. 13

*Jackson v. Fischer,*
   2015 WL 1143582 (N.D. Cal. Mar. 13, 2015) ................................................................ 29

*Jacoby v. Cable News Network, Inc.,*
   537 F. Supp. 3d 1303 (M.D. Fla. 2021) ........................................................................ 11

*Jenkins v. Last Atlantis Partners, LLC,*
   2010 WL 3023490 (N.D. Ill. July 30, 2010) ................................................................ 27

*Kajaine Cap., Inc. v. Abouzeid,*
   396 So. 3d 582 (Fla. 4th DCA 2024) ............................................................................ 24

*Konopasek v. Ten Assocs., LLC,*
   2018 WL 6177249 (C.D. Cal. Oct. 22, 2018) .............................................................. 29

*Koogle v. Aetna Life Ins. Co.,*
   2011 WL 6257177 (S.D. Fla. Dec. 14, 2011) ............................................................... 33

*Kramer v. Toyota Motor Corp.,*
   705 F.3d 1122 (9th Cir. 2013) ...................................................................................... 35

*La Grasta v. First Union Sec., Inc.,*
   358 F.3d 840 (11th Cir. 2004) ...................................................................................... 30

*Lamonaco v. Experian Info. Sols., Inc.,*
   141 F.4th 1343 (11th Cir. 2025) ................................................................................... 34

*Lewis v. Russell,*
   2009 WL 1260290 (E.D. Cal. May 7, 2009) ................................................................ 39

*Lubin v. Sybedon Corp.,*
   688 F. Supp. 1425 (S.D. Cal. 1988) ............................................................................. 26

*Mack Univ. LLC v. Halstead,*
   2007 WL 4458615 (C.D. Cal. Nov. 14, 2007) ............................................................. 23

*Madura v. Bank of Am., N.A.,*
   767 F. App'x 868 (11th Cir. 2019) ................................................................................. 6

*Marks v. Buckner,*
   1984 U.S. Dist. LEXIS 18692 (N.D. Okla. Mar. 13, 1984) ......................................... 14

*McCullough v. Leede Oil & Gas, Inc.,*
   617 F. Supp. 384 (W.D. Okla. 1985) ............................................................................ 26

*Moss v. Kroner,*
   197 Cal. App. 4th 860 (2011) ............................................................. 28, 29

*MS Dealer Serv. Corp. v. Franklin,*
   177 F.3d 942 (11th Cir. 1999) ............................................................. 36, 37

*Murphy v. Carnival Corp.,*
   426 F. Supp. 3d 1288 (S.D. Fla. 2019) .............................................. 31, 33

*Oracle Am., Inc. v. Myriad Grp. A.G.,*
   724 F.3d 1069 (9th Cir. 2013) ................................................................. 36

*Outokumpu Stainless USA, LLC v. Coverteam SAS,*
   2022 WL 2643936 (11th Cir. July 8, 2022) ............................................ 37

*Pickett v. Atl. Se. Airlines, Inc.,*
   2007 WL 9701594 (N.D. Ga. Mar. 30, 2007) ........................................ 39

*Pinter v. Dahl,*
   486 U.S. 622 (1988) ......................................................................... 10, 20

*Probst v. State,*
   807 P.2d 279 (Okla. Crim. App. Ct. 1991) ............................................ 16

*Rensel v. Centra Tech, Inc.,*
   2019 WL 2085839 (S.D. Fla. May 13, 2019) ................................... 13, 14

*Revak v. SEC Realty Corp.,*
   18 F.3d 81 (2d Cir. 1994) ....................................................................... 16

*Reves v. Ernst & Young,*
   494 U.S. 56 (1990) .................................................................................. 15

*Risley v. Universal Navigation Inc.,*
   2025 WL 615185 (2d Cir. Feb. 26, 2025) .................................... 1, 21, 23

*Rosenzweig v. Azurix Corp.,*
   332 F.3d 854 (5th Cir. 2003) ............................................................ 21, 23

*Rubke v. Capitol Bancorp Ltd.,*
   551 F.3d 1156 (9th Cir. 2009) ................................................................. 8

*Ryder Int'l Corp. v. First Am. Nat'l Bank,*
   943 F.2d 1521 (11th Cir. 1991) ................................................... 13, 20, 22

*Sagehorn v. Engle*,
    141 Cal. App. 4th 452 (2006) ................................................................ 30

*Schaffer Family Invs., LLC v. Sonnier*,
    120 F. Supp. 3d 1028 (C.D. Cal. 2015) ................................................ 16

*SEC v. Binance Holdings Ltd.*,
    738 F. Supp. 3d 20 (D.D.C. 2024) .......................................... 17, 18, 19

*SEC v. Ripple Labs, Inc.*,
    682 F. Supp. 3d 308 (S.D.N.Y. 2023) .................................................. 19

*SEC v. Unique Fin. Concepts, Inc.*,
    196 F.3d 1195 (11th Cir. 1999) ............................................................ 18

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ........................................................................ 15, 16

*Siegal v. Gamble*,
    2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ..................................... 27

*Stoyas v. Toshiba Corp.*,
    896 F.3d 933 (9th Cir. 2018) ............................................................... 27

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .............................................................................. 6

*Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (11th Cir. 2005) ........................................................... 35

*Terraform Labs*,
    684 F. Supp. 3d 170 (S.D.N.Y. 2023) ........................................... 18, 19

*Tippens v. Round Island Plantation L.L.C.*,
    2009 WL 2365347 (S.D. Fla. July 31, 2009) ...................................... 16

*Treminio v. Crowley Mar. Corp.*,
    649 F. Supp. 3d 1223 (M.D. Fla. 2023) ............................................... 30

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
    287 F. App'x 81 (11th Cir. 2008) .......................................................... 8

*Wagner v. First Horizon Pharm. Corp.*,
    464 F.3d 1273 (11th Cir. 2006) ............................................................. 8

*Washington Mutual Bank v. Law Office of Robert Jay Gumenick, P.C.*,
    561 F. Supp. 2d 410 (S.D.N.Y. 2008) ............................................................... 38, 39

*Wildes v. BitConnect Int'l PLC*,
    25 F.4th 1341 (11th Cir. 2022) ............................................................... 13, 15, 20, 23

*Williams v. TouchTunes Music Corp.*,
    2014 WL 12626340 (C.D. Cal. June 13, 2014) ........................................................ 30

**STATUTES**

15 U.S.C. § 78c .................................................................................................................... 10

71 Okla. Stat.§ 1-102 ............................................................................................................. 9

71 Okla. Stat. § 1-301 ............................................................................................................ 9

71 Okla. Stat. § 1-509 ...................................................................................................Passim

71 Okla. Stat. § 1-610 .......................................................................................................... 26

Cal. Corp. Code § 25004 ..................................................................................................... 27

Cal. Corp. Code § 25008 .................................................................................................. 9, 26

Cal. Corp. Code § 25110 .................................................................................................. 9, 26

Cal. Corp. Code § 25120 ....................................................................................................... 9

Cal. Corp. Code § 25501.5 ................................................................................... 25, 23, 32, 33

Cal. Corp. Code § 25507 ..................................................................................................... 30

Cal. Corp. Code § 25210(b) ................................................................................................ 29

Cal. Corp. Code § 25503 ....................................................................................................... 9

Fla. Stat. § 517.07 ................................................................................................................. 9

Fla. Stat. § 517.211 .......................................................................................................Passim

**RULES**

Fed. R. Civ. P. 8 .................................................................................................................... 8

Fed. R. Civ. P. 9 ........................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 2, 8

**OTHER AUTHORITIES**

Digital Asset Market Clarity (CLARITY) Act of 2025, H.R. 3633, 119th Cong. ...................... 29

## INTRODUCTION

When the S&E Defendants first moved to dismiss this lawsuit two years ago, little was known about how much FTX could recover of the customer assets it had lost. Although the bankruptcy recovery process remains ongoing, Plaintiffs admit that the FTX estate has recovered and paid out billions of dollars to FTX customers. *See* ECF No. 908 ("Am. Compl.") ¶¶ 1, 4.[1] Indeed, certain customers—including some of the Plaintiffs here—have already been reimbursed 120% of the value of their FTX holdings. *See* Exs. 1, 2 (*In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.), ECF Nos. 26866-1, 30570). Plaintiffs have nevertheless forged ahead with a 516-page amended complaint, seeking "billions" from individuals and entities who in some cases did little more than display FTX's logo or satirically tell Super Bowl viewers that FTX was a "bad" idea. And although this latest pleading drops 11 of the 12 previously dismissed counts, it adds 396 paragraphs of duplicative and often contradictory or wholly irrelevant allegations. Despite its length, this pleading still does not state the basic elements of any Plaintiff's claims, including whether any Plaintiff actually purchased the products they now allege were unregistered securities, whether any Plaintiff ever viewed the advertisements they challenge, or how much (if anything) any Plaintiff lost in light of the bankruptcy recoveries received or forthcoming.

The law, too, has developed since the parties first litigated these issues. New precedent from the Second Circuit now makes clear that the solicitation of a trading platform, like FTX, is not the solicitation of any specific product available on that platform, like the cryptocurrency FTX minted called the FTX Token ("FTT") or interest-bearing accounts called "YBAs." *Risley v.*

---

[1] David Yaffe-Bellany, *FTX Customers Poised to Recover All Funds Lost in Collapse*, N.Y. TIMES (May 8, 2024) ("Customers of the failed cryptocurrency exchange FTX are poised to recover all of the money they lost when the firm collapsed in 2022 and receive interest on top of it[.]").

*Universal Navigation Inc.*, 2025 WL 615185, at *3 (2d Cir. Feb. 26, 2025).  And there is still no support for Plaintiffs' tortured argument that the FTX platform was itself transformed into a security by virtue of the misconduct occurring behind closed doors, let alone that third parties who have no knowledge of or involvement in that misconduct—like the S&E Defendants here—can later be held liable for the "sale" of that "security."

Approximately half the S&E Defendants joining this Motion have not yet had the opportunity to challenge Plaintiffs' claims.  The above changes in the facts and the law, coupled with the substantial defects in Plaintiffs' pleadings, now warrant dismissal of this case in its entirety under Federal Rule of Civil Procedure 12(b)(6).  The only claims that remain—three state-law claims that Defendants participated in the sale of unregistered securities—require Plaintiffs to plead the purchase of an unregistered security sold or solicited by Defendants, a resulting loss, and a connection to the states whose laws the Plaintiffs are invoking.  Plaintiffs have not pleaded facts sufficient to make that showing.  *First*, no Plaintiff alleges they purchased the supposed unregistered securities at issue: YBAs, FTT, or the FTX "platform."  *Second*, Plaintiffs have not alleged that Defendants' supposed solicitations caused any Plaintiff to purchase any of the challenged products.  *Third*, Plaintiffs have not pleaded that Defendants solicited the purchase of the FTX platform (which is not a security at all), or that they solicited the purchase of FTT or YBAs in particular.  *Fourth*, Plaintiffs have not pleaded that they suffered any losses—a defect made all the more glaring by the substantial bankruptcy recoveries that have occurred since the Court last considered this case.  And *fifth*, Plaintiffs do not allege the requisite nexus between the sales of the purported securities that they challenge and the states whose laws they seek to invoke.

This case also is proceeding in the wrong forum.  Plaintiffs' entire case rests on the premise that Defendants induced them into opening accounts on FTX.  As their own complaint makes clear

(Am. Compl. ¶ 292), Plaintiffs could not have opened those accounts without agreeing to FTX's terms of service, which included both an arbitration provision and a class action waiver. The Court should thus compel this case to arbitration and/or strike the class allegations in their entirety. Finally, even if the Court does not dismiss this case or transfer it to arbitration, the Court should stay it pending resolution of the bankruptcy proceedings.

## BACKGROUND

### A.      FTX Collapses And Files For Bankruptcy.

"The FTX Group" ("FTX") "was founded in 2019 . . . as an exchange or marketplace for the trading of crypto assets."  Am. Compl. ¶ 127.  That same year, FTX "began offering" YBAs "through its Earn program," which allowed users to "opt[] in and participat[e] in staking . . . supported assets in [users'] FTX account[s]," and become "eligible to earn" pre-set rates of return on assets held in the accounts.  *Id.* ¶¶ 279, 281.  FTX also minted FTT, which Plaintiffs describe as "an exchange token created by FTX that entitles holders to benefits on the FTX exchange." *Id.* ¶ 293.  Plaintiffs assert that YBAs and FTT are securities.  *Id.* ¶¶ 291, 294.

Three years later, in November 2022, FTX collapsed as customers withdrew an estimated "$5 billion" from the exchange and, immediately thereafter, FTX entered bankruptcy.  Am. Compl. ¶¶ 207, 210.  FTX collapsed because its senior leadership secretly misappropriated customer funds for personal use and to prop up other companies; lied to government officials, regulators, auditors, and investors; failed to adhere to compliance obligations; and otherwise mismanaged the company. *Id.* ¶¶ 82, 92–93, 157–59, 162–63, 173–77.  Plaintiffs allege that FTX's senior leaders kept these fraudulent acts wholly secret, even from FTX's other officers and directors.  *See id.* ¶¶ 145–91.

### B.      Plaintiffs Sue S&E Defendants.

Between November 2022 and March 2024, Plaintiffs filed eight separate suits against the S&E Defendants, alleging that their participation in FTX's advertising efforts violated state laws.

Plaintiffs did not allege that Defendants participated in or knew about the fraud, but instead that they should be held liable for promoting FTX through run-of-the-mill advertising. In August 2023, Plaintiffs filed a consolidated complaint that named about half the S&E Defendants (the "Original S&E Defendants"). ECF No. 179. The consolidated complaint contained fourteen counts, including state-law securities claims; state consumer-protections claims; conspiracy; aiding and abetting FTX's alleged fraud; and conversion. ECF No. 179 ¶¶ 768–803, 811–59.

C.     **The Court Grants In Part And Denies In Part The Original S&E Defendants' Motion To Dismiss.**

The Original S&E Defendants moved to dismiss all counts in the consolidated complaint. On May 7, 2025, the Court granted the motion as to 12 of the 14 counts—all but those alleging violations of Florida and Oklahoma securities laws. ECF No. 890. Among other things, the Court held that Plaintiffs failed to plead "that Defendants had actual knowledge of FTX's fraud." *Id.* at 31–32. With respect to the Florida Securities and Investor Protection Act ("FSIPA") and the Oklahoma Uniform Securities Act, the Court held that Plaintiffs had plausibly alleged that the Original S&E Defendants had acted as agents of FTX and solicited the purchase of FTT and YBAs by "promoting FTX generally" because "Defendants' promotion of FTX [was] an implicit promotion of the alleged securities offered by the platform." ECF No. 890 at 14, 18. The Court reserved judgment as to whether the FTX platform was itself a security. *Id.* at 14.

D.     **Plaintiffs File An Amended Consolidated Complaint Against All S&E Defendants.**

Plaintiffs filed an Amended Consolidated Complaint naming all S&E Defendants on May 28, 2025. *See* ECF No. 908. They allege violations of Florida, California, and Oklahoma securities laws and drop 11 of the 12 claims dismissed by the Court. Am. Compl. ¶¶ 1232–1255. In allegations virtually identical to those in their prior complaint, Plaintiffs allege that all 31 Defendants *must have* known that "FTX was a 'house of cards' being run recklessly with little to

4

no oversight" because they purportedly all had "close involvement with FTX," "special access to FTX and FTX insiders that allowed [Defendants] to gain insider knowledge regarding the inner-workings of FTX's operations, including its regulatory compliance," and "close participation in developing and/or vetting various FTX marketing materials." Am. Compl. ¶¶ 383, 417, 475, 511, 548, 575, 621, 651, 738, 767, 793, 823, 872, 898, 944, 986, 1062, 1125, 1173.  Plaintiffs also add the formulaic allegation that each Defendant "knew that the securities for sale were not registered anywhere but nonetheless aided and abetted their sale."  Am. Compl. ¶¶ 382, 416, 474, 510, 547, 574, 620, 650, 737, 766, 792, 822, 871, 897, 943, 985, 1061, 1124, 1172.

Plaintiffs still fail to allege specific facts supporting any of these assertions: Plaintiffs do not allege Defendants even knew about YBAs or FTT; that Defendants knew YBAs or FTT were securities (something that continues to be vigorously disputed by experts, *see infra* Part III); or that Defendants knew that FTX (purportedly) was required to register YBAs or FTT, but did not. Not only do Plaintiffs fail to allege any facts supporting an intent to defraud, Plaintiffs also do not allege facts demonstrating that any Defendant specifically promoted YBAs or FTT.  Indeed, Plaintiffs do not allege that any Defendant ever even mentioned YBAs or FTT.

Further, Plaintiffs allege nothing about their own transactions.  No Plaintiff alleges whether they even purchased any securities, much less which unregistered securities they purportedly purchased, when, from whom, or at what price.  No Plaintiff alleges facts establishing damages— *i.e.*, that the (unalleged) amount they paid for their alleged securities is more than the income they received, including from bankruptcy payouts.  No Plaintiff states what they have received or are due to receive in the FTX bankruptcy.  And no Plaintiff alleges what state they were in when they purchased the purported securities—critically relevant because these state securities laws only apply to securities transactions connected to the respective state.

No Plaintiff alleges that they saw any commercial, social media post, or promotion by any Defendant, let alone that those alleged promotions took place before Plaintiffs bought their alleged securities.  Finally, no Plaintiff alleges that they purchased an unregistered security as a result of— or even after—viewing any promotion by any Defendant.

### E.    Plaintiffs Have Already Begun To Recover Through The FTX Bankruptcy.

The FTX debtors have begun making massive payments to Plaintiffs and other members of the putative class in the bankruptcy proceedings.  In June 2024, the FTX debtors projected that FTX bankruptcy claimants would "recover between 119% and 143% of their Petition Date claim values."  Ex. 3 (Disclosure Statement, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. June 27, 2024), ECF No. 19143) at 9.  Since then, the FTX debtors have paid extraordinary amounts to FTX claimants.  FTX reported that it had distributed over \$5 billion to claimants as of May 2025.  *See* Ex. 2; *see also* Am. Compl. ¶ 1 (alleging bankruptcy court has "returned over \$4.5 billion to creditors").[2]

---

[2] The Court may properly consider these bankruptcy filings under the incorporation-by-reference doctrine because their "authenticity" cannot be "challenged" and the FTX bankruptcy proceedings are "central to the plaintiff[s'] claim[s]," given that they cite numerous filings from the bankruptcy throughout the Amended Complaint.  Am. Compl. ¶¶ 217, 218, 299, 300, 313, 314, 469, 502, 541, 904, 1135, 1141, 1142, 1158, 1159, 1168.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference[.]"); *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019)

Plaintiffs supported the FTX debtors' Chapter 11 plan and even entered into a settlement agreement with the debtors to both confirm and leverage their support.  Specifically, Plaintiffs and MDL counsel in this action agreed to "support, vote in favor of . . . and not object to the FTX Debtors' Chapter 11 plan" and to "file a statement in support of confirmation of the Plan."  *See* Ex. 1 at 12.  In return, the agreement guarantees Plaintiffs over $1,000,000 in payments as "Allowed Claims" in the bankruptcy.  *See id.* at 39.

The settlement agreement also gives Plaintiffs special rights not available to other FTX bankruptcy claimants, crafted so that Plaintiffs can try to pursue damages claims in this forum on top of their recoveries in the bankruptcy.  The settlement agreement's recitals candidly admit that the bankruptcy plan "includes provisions . . . that would, if implemented, harm the MDL Plaintiffs" and would "jeopardize" their "potential recoveries" in this MDL.  *Id.* at 8.  These "Anti-Double Dip," "Stay," and "Injunction" provisions enjoin *other* FTX claimants from continuing any litigation arising out of their claims and require them to pay back amounts recovered in other proceedings related to their claims.  *See* Bankruptcy Plan §§ 7.12, 10.8, 13.5, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.), ECF No. 26404.  But the settlement agreement exempts Plaintiffs alone from such limitations.  *See id.*; Ex. 1 at 8–9 (§ 1(a), (b)).  The agreement also authorizes Plaintiffs' counsel to "seek fees and costs on any recoveries they obtain . . . without regard to whether those funds will be allocated to the FTX Debtors or the MDL."  *Id.* at 10–11 (§ 1(f)(iii)).

(filings in other cases are incorporated by reference into the complaint where plaintiff cites "several record excerpts" from those cases).

## LEGAL STANDARD

Plaintiffs' claims must satisfy the pleading requirements of Rule 8 as well as the heightened pleading standards of Rule 9(b) because their claims sound in fraud. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006) (Rule 9(b)'s heightened pleading requirements apply to securities claims that sound in fraud even if those claims do not require fraudulent scienter); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (heightened pleading requirements apply where a complaint "alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim" (internal brackets and quotation marks omitted)).  Plaintiffs allege that Defendants "directly perpetrated, conspired to perpetrate, and/or aided and abetted the FTX Group's multi-billion-dollar frauds for their own financial and professional gain." Am. Compl. ¶ 14.  They also allege that "the FTX Group's fraud was only able to reach such heights through the offer and sale of unregistered securities, with the willing help and assistance of some of the wealthiest, [most] powerful, and recognized organizations and celebrities across the globe." *Id.* ¶ 40.  These are the types of allegations that led the Court to conclude that Rule 9(b) applied to Plaintiffs' prior complaint.  *See* ECF No. 890 at 24-26.  The Court should again apply Rule 9(b), which requires Plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (discussing pleading requirements under Rule 9(b)).

Regardless, Rule 8 requires Plaintiffs to plead a claim that is plausible on its face, based on well-pleaded facts sufficient to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Unsupported legal conclusions cannot survive and must be dismissed under Rule 12(b)(6). *Id.*

**ARGUMENT**

As detailed below, Plaintiffs' claims fail for numerous reasons, warranting dismissal of this case in its entirety with prejudice. Alternatively, the Court should either compel Plaintiffs to arbitrate or should stay the case pending resolution of the FTX bankruptcy proceedings.[3]

**I.      Plaintiffs Have Not Pleaded Any Of The Essential Elements Of An Unregistered Securities Claim Under Florida, California, Or Oklahoma Law.**

Under all three States' securities laws, Plaintiffs must allege that: (1) they purchased securities (*see* Fla. Stat. § 517.07; Cal. Corp. Code § 25110; 71 Okla. Stat.§ 1-301); (2) those securities needed to be but were not registered (*see* Fla. Stat. § 517.07; Cal. Corp. Code §§ 25110, 25120, 25130; 71 Okla. Stat. § 1-301); (3) Defendants sold or successfully solicited Plaintiffs'

---

[3] For the avoidance of doubt, the Defendants bringing this motion are Thomas Brady, Gisele Bündchen, Lawrence David, FuriaGG Corp, Furia Esports LLC, Furia Experience LLC, Lincoln Holdings LLC, Mercedes-Benz Grand Prix Limited d/b/a Mercedes-AMG Petronas Formula One Team ("Mercedes F1"), Golden State Warriors, LLC, Naomi Osaka, Riot Games, Inc., North America League of Legends Championship Series LLC, Shohei Ohtani, Office of the Commissioner of Baseball d/b/a Major League Baseball, Major League Baseball Properties, Inc., MLB Advanced Media, L.P., The MLB Network, LLC, Stephen Curry, David Ortiz, MLB Players, Inc., Kevin O'Leary and Solomid Corporation, D/B/A Team Solomid, TSM, and/or TSM FTX, Udonis Haslem, Wasserman Media Group, LLC, and Dentsu McGarry Bowen LLC. The Court has already considered certain arguments made by the Original S&E Defendants in the motion to dismiss filed September 21, 2023. ECF No. 271. While the S&E Defendants have sought to avoid relitigating issues absent new facts or law, the newly added S&E Defendants join in those initial motion to dismiss arguments and preserve all appellate rights.

purchases of those securities (*see* Fla. Stat. § 517.211(1); Cal. Corp. Code § 25008; 71 Okla. Stat.§ 1-102(30)); and (4) Plaintiffs suffered a resulting loss (*see* Fla. Stat. § 517.211(5); Cal. Corp. Code §§ 25503, 25501.5. 2; 71 Okla. Stat. § 1-509(B)(1)). Plaintiffs fail to plead at least the first, third, and fourth elements, requiring dismissal.

### A.    Plaintiffs Do Not Allege That They Purchased Securities.

Florida, California, and Oklahoma's securities laws all require that Plaintiffs allege they purchased the security they challenge as unregistered. *See City of St. Petersburg, Fla. v. Wachovia Bank, Nat'l Ass'n.*, 2010 WL 2991431 (M.D. Fla. July 27, 2010) (no cause of action under FSIPA where "no allegations of purchase or sale"); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 351 (S.D.N.Y. 1999) ("claim under California Corporations Code § 25110 'may be brought only b[y] the purchaser of the security'"); *Horton v. Hamilton*, 345 P.3d 357, 361 n.7 (Okla. 2015) ("The [Oklahoma Uniform] Securities Act provides a civil cause of action for purchasers of securities defrauded by a seller[.]"); *see also Pinter v. Dahl*, 486 U.S. 622, 644 (1988) ("purchase requirement clearly confines § 12 liability to those situations in which a sale has taken place").

Here, Plaintiffs must allege they bought FTT, YBAs, or the "FTX platform"—the only "securities" allegedly sold by FTX. Plaintiffs do not allege that. Instead, Plaintiffs merely allege that each of them "purchased or held legal title to and/or beneficial interest in *any fiat or cryptocurrency* deposited or invested through an FTX Platform." Am. Compl. ¶¶ 54–70 (emphasis added). From this, it cannot be determined if Plaintiffs bought (1) fiat currency only; (2) cryptocurrency offered by companies other than FTX, such as Bitcoin, Ethereum, Binance Coin, or Solana; or (3) FTX's alleged securities, FTT or YBAs. If Plaintiffs only traded fiat currency, then they have no claim because fiat currency is not a security. 15 U.S.C. § 78c(a)(10) ("The term 'security' . . . shall not include currency."). The alleged purchase of "any . . . cryptocurrency" likewise fails to plead the purchase of the three "unregistered securities" Plaintiffs allege FTX

sold—YBAs, FTTs, or the FTX platform.  Plaintiffs do not allege that YBAs were a type of cryptocurrency at all, *see* Am. Compl. ¶ 115 (they were not), and FTT was not even available to FTX US users, *see* Am. Compl. ¶ 39.[4]  Further, the mere allegation that Plaintiffs purchased assets "*through* the FTX platform" does not allege the *purchase* of the FTX platform itself.  Critically, Plaintiffs' allegations leave open the very real possibility that Plaintiffs *only* "invested their money into offerings of unregistered securities" *other than* FTT or YBAs.  Am. Compl. ¶ 5.  But if Plaintiffs bought allegedly unregistered securities sold by a third party—instead of from FTX itself—then Defendants cannot be held liable for that sale because they are not alleged to have acted as agents of any such third-party seller.

Plaintiffs cannot fall back on an argument that, as FTX users, they were defaulted into and therefore must have purchased YBAs.  No Plaintiff alleges that *they* were defaulted into a YBA.  Am. Compl. ¶¶ 54–70.  To the contrary, Plaintiffs' complaint admits in several places that users had to "opt in" to receive YBAs, *id.* ¶¶ 281, 287, and that customers "*could* open" YBAs "*and/or*

---

[4] Bankruptcy filings demonstrate that FTT was exclusively sold on FTX Trading, *not FTX US*.  *See* FTX Recovery Trust Customer Schedules, Kʀᴏʟʟ (accessed July 20, 2025), https://media.ra.kroll.com/ftx/schedules/1/FTXSchedules.html (no customers on the "FTX US" schedule in F-1 to F-9 listed as holding FTT).  Plaintiffs' complaint preemptively argues that US users could still access these products through a VPN—*i.e.*, by pretending they were outside the United States.  *See* Am. Compl. ¶ 39 n.12.  But there is no basis whatsoever for concluding that the generic promotion of FTX in the United States solicited the sale of securities *not available for sale in the United States*, which could only be accessed by disguising one's IP address with a VPN.

*other accounts,*" *id.* ¶ 115 (emphasis added).[5]  Filings from the FTX bankruptcy proceedings confirm that customers were *not* automatically enrolled in YBAs.  *See In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.), ECF Nos. 6291–6312.  These filings list the "[c]ustomers who were participating in the [YBA or "earn"] program" in the "Earn Indicator" column, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.), ECF No. 1729, and show that exceedingly few had these accounts—an impossibility if every customer were automatically enrolled.  *See, e.g.*, Ex. 4 (ECF No. 6291).

Because Plaintiffs have not alleged that they purchased FTT or YBAs from FTX or purchased the "FTX platform," Plaintiffs have failed to state any claim.

### B.    Plaintiffs Have Not Pleaded That Defendants Successfully Solicited The Sale Of An Unregistered Security.

Plaintiffs also have not alleged that Defendants successfully solicited the sale of any of the three supposed securities at issue.  As a threshold matter, with respect to their Florida and Oklahoma claims, Plaintiffs do not allege that Defendants solicited the purchases of FTT or the "platform" *at all*.  *See* Am. Compl. ¶¶ 1237–39 (alleging that Defendants participated only in the sale *of YBAs* in violation of Florida law); *id.* ¶¶ 1252–55 (alleging that YBAs, FTT, and the platform are securities but alleging nothing about whether Defendants participated in those sales

---

[5] In some places, Plaintiffs retain their prior allegation that YBAs were default accounts.  *See* Am. Compl. ¶¶ 38, 40, 292.  But the Court need not accept allegations contradicted by Plaintiffs' own complaint.  *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 n.5 (M.D. Fla. 2021) ("court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted by statements in the complaint itself"), *aff'd*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021).

12

and instead incorporating the Florida count (which challenges only YBAs) by reference).  Further, with respect to some Defendants, such as MLB Players, Inc., Plaintiffs do not, and cannot, allege that those Defendants promoted FTX *at all*.

Regardless, Plaintiffs fail to plead solicitation.  To be liable for soliciting the purchase of an unregistered security, "a person must 'urge or persuade' another to buy a *particular* security," *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022) (emphasis added), and the plaintiff must have "purchased securities *as a result of* that solicitation," *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *3 (S.D. Fla. May 13, 2019) (emphasis added).  As detailed below, Plaintiffs fail each step of that test.  No Plaintiff alleges that they ever viewed any promotion by any Defendant—much less that any of those promotions caused any Plaintiff to buy any specific security.  Plaintiffs also fail to allege that *any* of the Defendants solicited the purchase of the three allegedly unregistered securities.  To the contrary, none of the Defendants urged anyone to "buy" the FTX platform, which—in any case—is not a security, and Defendants did not mention YBAs or FTT at all.  Plaintiffs have thus failed to plead that Defendants "'actively' solicited," *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1532 (11th Cir. 1991), the purchase of "a particular security," *BitConnect Int'l PLC*, 25 F.4th at 1346, warranting dismissal.

### 1.    Plaintiffs Do Not Allege Defendants Induced The Purchase Of Unregistered Securities.

To plead a solicitation claim, Plaintiffs must allege "not only that [a particular] defendant actively solicited investors, but that the plaintiff[s] purchased securities *as a result of* that solicitation." *Rensel*, 2019 WL 2085839, at *3 (emphasis added); *see also BitConnect*, 25 F.4th at 1346 ("[T]he solicitation must succeed[.]"); *In re: Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 16729170, at *3 (11th Cir. Nov. 7, 2022) (a plaintiff must "sufficiently allege how its injuries are traceable to the conduct of each defendant," and "cannot haul into court parties that did not

allegedly cause harm, even on behalf of unnamed class members"). Florida, California, and Oklahoma securities laws all require a showing of causation. *See Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005) (under FSIPA, plaintiff must show that a specific defendant "actively and directly . . . influence[d] or induce[d]" plaintiff to buy unregistered securities), *aff'd*, 185 F. App'x 823 (11th Cir. 2006); *AREI II Cases*, 216 Cal. App. 4th 1004, 1019 (2013) (dismissing unregistered-securities claims where "plaintiffs d[id] not allege they relied on the offering memorandum prepared by [defendant] or were even aware of its existence"); *Marks v. Buckner*, 1984 U.S. Dist. LEXIS 18692, at *10 (N.D. Okla. Mar. 13, 1984) (granting summary judgment for defendant because "[plaintiff] presented no evidence he relied on any statements by [that specific defendant] in investing").

Plaintiffs fail entirely to plead causation because they do not allege that they purchased FTT, YBAs, or "the Platform" *as a result of* Defendants' alleged solicitations. In fact, Plaintiffs say nothing at all about whether any of them knew about any promotion in which a Defendant allegedly participated. *See* Am. Compl. ¶¶ 54–70. Plaintiffs do not even allege that their purchases or deposits (whatever those were) took place *after* a Defendant's marketing efforts. *Id*.

Courts routinely reject claims for the solicitation of unregistered securities where the plaintiffs do not plead that they bought securities *as a result of* the alleged solicitation. For instance, in *Rensel*, the defendant paid celebrities to make social media posts encouraging the purchase of the defendant's cryptocurrency. 2019 WL 2085839, at *2. Citing *Pinter*, the court dismissed the plaintiffs' claims because there were "no allegations that this was a successful solicitation, that [celebrity defendants] had any contact with Plaintiffs, or that Plaintiffs even saw the posts." *Id*. at *4. Similarly, in *In re Tezos Securities Litigation*, the plaintiffs argued that a "well-known technology investor" who promoted a cryptocurrency company's initial coin offering should be

held liable as a statutory seller of unregistered securities under *Pinter*. 2018 WL 4293341, at *2 (N.D. Cal. Aug. 7, 2018). But the court found that the claim was "not plausible" because the plaintiff did not allege that "he was cognizant of, or influenced by, [defendant]'s involvement." *Id.* at *9. Here, too, Plaintiffs have failed to allege that they were even aware of any Defendant's alleged solicitation—let alone that the solicitation induced them to purchase any security.[6]

As this Court recognized in its prior order, *BitConnect* establishes that it is possible to solicit the sale of a security through a mass marketing campaign. ECF No. 890 at 16 (citing *BitConnect*, 25 F.4th at 1346). But that does not change each Plaintiff's obligation—reiterated in *BitConnect* itself—to allege that actual purchases followed from the solicitations. 25 F.4th at 1346 ("when the promoters urged people to buy BitConnect coins in online videos, they still solicited *the purchases that followed*" (emphasis added)). Because Plaintiffs do not plead they bought securities because of any Defendant's alleged solicitation, their claims should be dismissed.

### 2. The FTX Platform Is Not A Security.

Plaintiffs' claim that Defendants solicited the purchase of the FTX platform itself fails because they do not plead the platform is a security. While the Court previously concluded that it "need not reach the question of whether the FTX platform may be rendered a security at this stage," ECF No. 890 at 14, it should decide that question now to frame the case going forward.

The complaint does not even attempt to plead that the FTX platform is a security under

_____

[6] The standard for solicitation under Florida, California, and Oklahoma securities laws is narrower than the *Pinter* standard. Only a seller who is in privity with the buyer or a person who "personally participate[d] or aid[ed]," "materially assist[ed]," or "materially aid[ed]" in the sale may be held liable for solicitation. Fla. Stat. § 517.211(1); Cal. Corp. Code §§ 25503, 25504.1; 71 Okla. Stat. § 1-509.

*Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293 (1946), or *Reves v. Ernst & Young*, 494 U.S. 56 (1990).  *Compare* Am. Compl. ¶¶ 295–304 (no allegations about the application of *Howey* or *Reves* to FTX), *with id.* ¶¶ 287–88, 289–94 (allegations about the application of *Howey* and *Reves* to YBAs and FTT).[7]

> To plead that the FTX platform itself constituted a security under *Howey*, Plaintiffs would need to plausibly allege all the following elements: (1) an investment of money in the FTX platform, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others.  *See Fedance v. Harris*, 1 F.4th 1278, 1287 (11th Cir. 2021).  They do not do so.

> To satisfy the "investment of money" prong of the *Howey* test, Plaintiffs must plead that they "commit[ed] assets to an enterprise or venture in such a manner as to subject [themselves] to financial losses." *Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *5 (S.D. Fla. Aug. 14, 2018).  But Plaintiffs do not allege an "investment of money" *in* the FTX platform itself.  Instead, Plaintiffs allege that they invested money in products sold *on* the platform.  Plaintiffs' argument thus fails at the threshold.

> Plaintiffs also fail to plead facts to support the "common enterprise" prong.  That prong requires Plaintiffs to show either vertical commonality—that the "fortunes of the investor are . . . dependent on the efforts and success of those seeking the investment or of third parties," *Gadsby v. Am. Gold Corp. of Cal.*, 2012 WL 13098205, at *4–5 (M.D. Fla. Apr. 27, 2012)—or horizontal

---

[7] Florida, California, and Oklahoma all look to federal courts' guidance when applying the *Howey* test to their securities laws.  *See Schaffer Family Invs., LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1038-45 (C.D. Cal. 2015); *Tippens v. Round Island Plantation L.L.C.*, 2009 WL 2365347, at *7–11 (S.D. Fla. July 31, 2009); *Probst v. State*, 807 P.2d 279, 283–85 (Okla. Crim. App. Ct. 1991).

commonality, which involves "the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994).  Plaintiffs have not sufficiently alleged either.  As to vertical commonality, Plaintiffs make no allegations that FTX users were dependent on the expertise or effort of FTX for their returns.[8]  FTX again merely provided the platform on which Plaintiffs traded fiat or crypto products, such as Ethereum, Binance Coin, and Solana; their returns on those products had nothing to do with FTX.  For example, if a customer bought Bitcoin on FTX, the value of their Bitcoin went up or down based on the *Bitcoin* market—not because of anything *FTX* did.  Similarly, using a stock exchange doesn't make the exchange responsible for a specific company's stock price.  *See Donovan v. GMO-Z.com Tr. Co.*, 2025 WL 522503, at *6 (S.D.N.Y. Feb. 17, 2025); *SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 62 n.22 (D.D.C. 2024).  And as to horizontal commonality, Plaintiffs do not allege that the fortunes of their investments were tied to those of other investors.  For example, if Customer A bought Bitcoin and Customer B bought Ethereum on FTX, each customer's returns depended solely on their transactions in the value of the chosen asset, not on a shared venture.  As Plaintiffs explicitly allege, the FTX platform was merely an "investment service that place[d] trade orders *on behalf of users,*" Am. Compl. at 3 (emphasis added), and thus not a "common enterprise" under *Howey*.

      Plaintiffs suggest that, regardless of what FTX represented in its terms of service or

---

[8]  In fact, Plaintiffs plead the opposite.  The FTX terms of service informed users that "FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account."  Am. Compl. ¶ 162.  The terms further emphasized that "You control the Digital Assets held in your Account."  *Id*.  Meanwhile, none of Plaintiffs' allegations suggest that FTX promised to lend any expertise to generate returns on all assets traded by users on the platform.

elsewhere, the FTX platform can be considered a security because its executives looted user accounts to trade funds for their own benefits.  Am. Compl. ¶¶ 183–90.  But this defies logic: Plaintiffs could not have been "led to expect profits" from a "common enterprise," *Fedance*, 1 F.4th at 1287, when, as Plaintiffs acknowledge, FTX's use of account funds to make fraudulent trades was "thoroughly concealed" from them.  *Id*. ¶ 176.  Simply being victims of a common fraud does not transform Plaintiffs into members of a "common enterprise."

Plaintiffs' allegation that the FTX platform is a security also fails under the third prong of the *Howey* test—whether the expected profits are "to be derived solely from the efforts of others." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999).  The focus of this inquiry "is on the dependency of the investor."  *Bamert v. Pulte Home Corp.*, 445 F. App'x 256, 262 (11th Cir. 2011).  And "[a]n investor who has the ability to control the profitability of his investment, either by his own efforts or by majority vote in a group venture, is not dependent upon the managerial skill of others."  *Id*. (quoting *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982)). The profitability of Plaintiffs' investments may have been driven by the efforts of other third parties—for example, the general shifts in the cryptocurrency market, *see Donovan*, 2025 WL 522503, at *6; *Binance*, 738 F. Supp. 3d at 62 n.22, or the creator of a particular crypto product— but they were not driven by FTX.

The court's holding in *Securities and Exchange Commission v. Terraform Labs Pte. Ltd.* does not "demonstrate[] that the FTX Platform" is a security.  Am. Compl. ¶ 18.  *Terraform Labs* did not address whether a trading platform was a security.  It instead examined whether specific crypto tokens issued by Terraform were securities, and found that the tokens qualified because they were "pitched to investors . . . as yield-bearing investments whose value would grow in line with the Terraform blockchain ecosystem."  *Terraform Labs*, 684 F. Supp. 3d 170, 194 (S.D.N.Y.

18

2023). *Terraform Labs* is accordingly not relevant to the question whether the FTX platform is a security. Virtually all cases involving the alleged sale of an unregistered security through a platform that offers multiple programs or assets have analyzed each specific program or asset class on an individualized basis to determine whether its characteristics should be considered a security, undermining any suggestion that an entire platform could be one. *See, e.g., Binance,* 738 F. Supp. 3d at 48–64 (analyzing whether two digital assets and three crypto programs, offered across two different platforms, constituted securities); *Terraform Labs,* 684 F. Supp. 3d at 193–98 (analyzing whether five "inter-related crypto-assets" and the "sales and distribution" of those assets, traded on the same blockchain network, each individually qualified as securities); *SEC v. Ripple Labs, Inc.*, 682 F. Supp. 3d 308, 323–32 (S.D.N.Y. 2023) (individually analyzing whether one token and four categories of token sales across one blockchain ledger qualified as securities).[9]

Because FTX had nothing to do with the profitability of Plaintiffs' investments in the broad range of assets that they may have traded on the platform, the platform itself is not a security.

---

[9] Plaintiffs likewise do not allege that the FTX platform is a qualifying note under *Reves*. At no point do Plaintiffs allege that FTX made any written promises to pay Plaintiffs any money upon depositing funds in the FTX platform. *See Costa v. Carambola Partners, LLC*, 590 F. Supp. 2d 1141, 1147 (D. Minn. 2008) (defining "note" as "[a] written promise by one party (the maker) to pay money to another party (the payee) or to bearer" (quoting *Black's Law Dictionary* 1088 (8th ed. 2004)). In fact, Plaintiffs' own allegations show that FTX disclaimed any such promises. *See* Am. Compl. ¶ 162. But even if Plaintiffs did allege that deposits in the platform were "notes," their allegations would fail for the same reasons they fail under *Howey*.

**C.     Plaintiffs Do Not Plead That Any Defendant Solicited The Sale Of YBAs Or FTT.**

Even assuming Plaintiffs adequately pleaded they bought unregistered securities from FTX, Plaintiffs' claims still fail as to each Defendant because they do not and cannot plead that each Defendant solicited Plaintiffs to buy those specific securities.  The Court previously held that the federal standard for solicitation of the purchase of an unregistered security under Section 12 of the Securities Act of 1933 applies to Plaintiffs' state-law claims.  ECF No. 890 at 16-17 (citing *Pinter v. Dahl*, 486 U.S. 622 (1988)).  Under this standard, Plaintiffs must show that each Defendant "'actively' solicited," *Ryder*, 943 F.2d at 1532, the purchase of "a particular security," *BitConnect Int'l PLC*, 25 F.4th at 1346.  Defendants' generic promotions of FTX do not satisfy this stringent standard.  At most, Plaintiffs allege that Defendants were collateral participants that may have been a "substantial factor" in causing the (unalleged) transactions at issue, but the Supreme Court has held that is insufficient to plead solicitation.  *Pinter*, 486 U.S. at 650 ("§ 12's failure to impose express liability for mere participation in unlawful sales transactions suggests that Congress did not intend that the section impose liability on participants' collateral to the offer or sale.").  This is yet another ground for dismissal.

Since the Supreme Court decision in *Pinter*, courts have routinely held that solicitation requires a "direct and active" role in persuading an investor to buy a specific security.  *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2291729, at *4 (M.D. Fla. Sept. 20, 2005) (quoting *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3rd Cir. 1989)).  Before that decision, many circuits—including the Eleventh Circuit, *see Foster v. Jesup & Lamont Securities Co.*, 759 F.2d 838, 843–844 (11th Cir. 1985)—held that solicitation liability could be imposed on defendants whose conduct was a "substantial factor" in causing the securities transaction, *Pinter*, 486 U.S. at 648 & n.25 (noting that the Eleventh Circuit used this test in *Foster*).  The Supreme Court expressly

20

rejected the substantial factor test as too "broad," and held that liability could not be imposed "on participants' [sic] collateral to the offer or sale." *Id.* at 650.

This Court previously held that the promotion of FTX's platform was an implicit solicitation of FTT and YBAs. ECF No. 890 at 14. But after this issue was briefed, the Second Circuit squarely addressed this precise question, holding that social media promotions of a cryptocurrency exchange platform by the platform's CEO were "too attenuated" to qualify as solicitation of the alleged securities sold on that platform. *Risley v. Universal Navigation Inc.*, 2025 WL 615185, at *3 (2d Cir. Feb. 26, 2025). With the benefit of the Second Circuit's analysis, Defendants submit that their actions cannot constitute solicitation.

The generic alleged brand promotions here are, like the promotions in *Risley*, too attenuated from the sale of the varied products available for purchase through FTX to render Defendants implicit statutory sellers of those products. As the District Court in *Risley* observed, "no plaintiff would sue the New York Stock Exchange or NASDAQ for tweeting that its exchange was a safe place to trade after that plaintiff had lost money due to an issuer's fraudulent schemes." 690 F. Supp. 3d 195, 222 (S.D.N.Y. 2023). But that is exactly what Plaintiffs seek to do here. In fact, the alleged promotional activities in this case are *more* attenuated than those in *Risley*, because the plaintiff in that case sued the exchange itself. Here, instead of suing FTX (the equivalent of the exchange in *Risley*), Plaintiffs sued Defendants—third parties who merely promoted the FTX platform, displayed the FTX logo, or announced partnerships with FTX.

The Court should follow the approach taken by *Risley* and by courts more generally since *Pinter*, which rejects liability where a defendant is merely "involved" with a sale of alleged securities. For example, Courts of Appeals have held that signing a registration statement or prospectus—the very documents that offer securities for sale—is not enough to impose solicitation

liability. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *Craftmatic Sec. Litig.*, 890 F.2d at 636; *see also Greenfield Children's P'ship v. FriendFinder Networks, Inc.*, 2014 WL 12205997, at \*4 (S.D. Fla. Mar. 18, 2014) (rejecting argument that "the mere issuance of the Prospectus is sufficient to qualify as solicitation"). Similarly, many courts have held that promoting a securities offering by participating in a "road show" is insufficient to establish solicitation. *See, e.g.*, *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 179 (2d Cir. 2011); *Brody v. Homestore, Inc.*, 2003 WL 22127108, at \*5 (C.D. Cal. Aug. 8, 2003).

Eleventh Circuit case law is in accord. In *Foster*, the Eleventh Circuit rejected a solicitation claim against an underwriter even though "the defendant underwriter's name was prominently displayed on the offering document the seller of securities gave to the plaintiff[,] [t]he underwriter and the seller of securities had entered into an agency agreement whereby the underwriter promised to use its 'best efforts' to sell interests in a limited partnership in exchange for a 10% commission" (though "that agreement was subsequently rescinded"), and "the plaintiff relied on the fact that the underwriter's name was displayed on the offering document" in deciding to purchase the securities. *See Ryder*, 943 F.2d at 1525 (summarizing *Foster*). Importantly, the Eleventh Circuit reached this conclusion applying the more lenient "substantial factor" test, *Foster,* 759 F.2d at 845, that was subsequently rejected in *Pinter*.

Plaintiffs allege that Defendants did *far less* than what these cases explicitly held was *insufficient* to establish solicitation liability. *See, e.g.*, Am. Compl. ¶ 306 (alleging Mr. Curry stated in a commercial that FTX has everything to "buy, sell, and trade crypto"), ¶¶ 399–400 (alleging Mr. Brady and Ms. Bündchen appeared in "comedic" commercials to "promote the use of the FTX platform"), ¶ 628 (alleging Golden State Warriors displayed the FTX logo on the court at Chase Center), ¶ 1133 (alleging that Riot and LCS branded images in their video game with the FTX

logo).  And none of these challenged advertisements mentioned, let alone urged others to purchase, YBAs or FTT in particular.   This is far less involvement in the sale of FTT or YBAs than, say, if Defendants had actually signed their names to a document offering to sell FTT or appeared at conferences to promote the offering of YBAs.  So if *that* type of participation in the offering of securities is insufficient to establish solicitation, *e.g.*, *Rosenzweig*, 332 F.3d at 871, then what Defendants allegedly did here cannot possibly suffice.

Defendants of course recognize that the Court held a previous complaint stated solicitation claims against the Original S&E Defendants based on their promotions of FTX.  *See* ECF No. 890 at 10–22.  But as the case law now makes clear, *Risley*, 2025 WL 615185, at *3, Defendants' alleged promotions or mere partnerships with FTX—an exchange that permitted trading in *many* purported securities and non-securities, such as fiat currency, Bitcoin, Ethereum, Binance Coin, and Solana—falls far short of "urg[ing]" Plaintiffs to buy a "*particular* security,"  *see BitConnect*, 25 F.4th at 1346 (emphasis added).

### D.   The Court Should Dismiss Plaintiffs' Claims Because They Do Not Plausibly Allege Damages.

Plaintiffs also do not plead that they suffered any damages.  Under Florida law, a plaintiff bringing an unregistered securities claim may at most "recover an amount equal to the difference between: (a) The consideration paid for the security or investment," plus interest; and "(b) The value of the security or investment at the time it was disposed of by the plaintiff, plus the amount of any income received on the security or investment by the plaintiff."  Fla. Stat. § 517.211(5). California law likewise provides that damages "shall be" the difference between the purchase price, plus interest, and the value of the security when it was disposed of, plus any income received. Cal. Corp. Code § 25501.5(a)(4).  And Oklahoma law limits recovery to "[a]ctual damages," which are similarly defined as the difference between the purchase price, plus interest, and the value of

the security when the purchaser disposed of it.  71 Okla. Stat. § 1-509(B)(3).

These statutory requirements make loss an essential element of all of Plaintiffs' claims. *See Barnett v. Blane*, 2013 WL 1001963, at *3 (S.D. Fla. Mar. 13, 2013); *Cress v. Nexo Fin. LLC*, 2023 WL 6609352, at *15 (N.D. Cal. Oct. 10, 2023); *Mack Univ. LLC v. Halstead*, 2007 WL 4458615, at *9 (C.D. Cal. Nov. 14, 2007); *see also Com. Union Assurance Co. v. Milken*, 17 F.3d 608, 615 (2d Cir. 1994) (dismissing claim under Section 12 of the Securities Act of 1933 because "appellants have not suffered compensable damages").  Plaintiffs nevertheless fail to plead any facts to establish this element.  No Plaintiff alleges: (1) which securities they purchased; (2) how much they paid for those securities; (3) what income they received in connection with those securities, including the amounts they have received or will receive in the FTX bankruptcy or through interest received during the holding period; and (4) critically, that they ultimately paid more for the security than they received.  These pleading failures require dismissal.  *See, e.g.*, *Cress*, 2023 WL 6609352, at *15 (dismissing California securities law claim for failure to plead a "loss within the parameters of the statutory remedy").

Plaintiffs offer only the conclusory allegation that they "sustained damages."  Am. Compl. ¶ 1239.  That is nothing more than "a formulaic recitation of the elements of a cause of action," which "will not do."  *Twombly*, 550 U.S. at 555; *see also Barnett*, 2013 WL 1001963, at *3 (dismissal warranted where plaintiff's "claim of damages is conclusory").  This bare allegation is implausible in light of Plaintiffs' substantial recoveries from the FTX bankruptcy proceeding.  *See* Am. Compl. ¶ 1 (bankruptcy courts "have already returned over $4.5 billion to creditors").  FTX customers have received more than $5 billion in distributions to date from the bankruptcy estate, *see* Ex. 2, and Plaintiffs themselves have received over $1 million, *see* Ex. 1 at 39.  At least six Plaintiffs have already recovered **120%** of the value of their assets as of the bankruptcy petition

date, and may receive more.  *See* Exs. 1, 2; Ex. 3 at 9 (projecting that bankruptcy claimants would "recover between 119% and 143% of their Petition Date claim values").  It is entirely possible Plaintiffs have received or will receive even more than they paid for their alleged securities, in which case none would have damages.  *See Kajaine Cap., Inc. v. Abouzeid*, 396 So. 3d 582, 583 (Fla. 4th DCA 2024) ("[A] 'plaintiff may not recover damages twice for the same injury'"); *In re Toy King Distribs., Inc.*, 256 B.R. 1, 207 (Bankr. M.D. Fla. 2000) (bankruptcy creditors entitled "to only one recovery of the property or value under multiple theories").[10]

Finally, the Amended Complaint briefly suggests that Plaintiffs are entitled to rescission under California's securities law. Am. Compl. ¶¶ 1210 n. 561, 1211, 1249.  California law permits plaintiffs to bring an action for rescission or damages, but not both.  *See* Cal. Corp. Code § 25501.5(a)(1).  And Plaintiffs cannot state a claim for rescission because they cannot "tender" their alleged securities, as required by the California statute.  *See id.* § 25501.5(a)(2).  Although the Amended Complaint vaguely suggests that Plaintiffs "conditionally tender their FTX Group Securities," Am. Compl. ¶ 1250, elsewhere it concedes that Plaintiffs cannot access their assets at FTX, *id.* ¶ 1206, so they cannot possibly tender these "securities" to Defendants.

Plaintiffs' failure to plead the most basic factual allegations about their purported damages

---

[10] That Plaintiffs provide no details about their alleged damages is also problematic in light of the provision in Section 517.211(1) of Florida's securities law stating that no purchaser may have the benefit of that subsection if she "refuse[s] or fail[s]" to "accept an offer" from the defendant for "an amount equal to the difference between the amount paid for the security and the amount received by [her] on the sale of the security" plus interest, "less the amount of any income received by the purchaser on the security."  Fla. Stat. § 517.211(1).  Plaintiffs' failure to plead how much they allegedly lost improperly precludes Defendants from exercising their statutory right.

further warrants dismissal of their claims.

## II.    The Court Should Dismiss Plaintiffs' California, Oklahoma, And Florida Claims Because They Have Not Alleged A Nexus To Any Of These States.

The Court should also dismiss Plaintiffs' claims because they can only bring claims under the laws of California, Oklahoma, and Florida if their transactions in the purported unregistered securities had some connection to the states. But they make no allegations to that effect.

These states' securities laws only apply to purchases of securities that occur within their respective borders. Under the California Securities Law, the sale of unregistered securities is only unlawful if it occurs "in this state," Cal. Corp. Code § 25110—*i.e.*, when the offer is "directed by the offeror to this state and received at the place to which it is directed," *id.* § 25008(b). For instance, a California court held that securities sales did not come within the scope of the California Securities Law where the connection to California was minimal. *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1460–61 (S.D. Cal. 1988) (jurisdictional prerequisites of § 25008(b) were not satisfied where "the securities at issue were offered from New York," and where "the substantial number of non-California investors presumably were not present in California when they purchased their interests"). Oklahoma's Uniform Securities Law, as relevant here, similarly applies only to sales that are "directed by the offeror to a place in this state and received at the place to which it is directed." 71 Okla. Stat. § 1-610(C)(2); *see also McCullough v. Leede Oil & Gas, Inc.*, 617 F. Supp. 384, 389 (W.D. Okla. 1985) (Oklahoma Securities Act not applicable unless an offer to sell is made in Oklahoma and an offer to buy is made and accepted in Oklahoma). And FSIPA makes it unlawful for "any person to sell or offer to sell a security *within this state*." Fla. Stat. § 517.07(1) (emphasis added). Courts applying this standard have recognized when a plaintiff "fail[s] to allege that the purchase/sale of [security] occurred in Florida," that is "fatal" to her claim. *Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578, 589 n.4 (S.D.N.Y. 2011).

26

Plaintiffs make no allegations at all about which state they were in when they bought their purported securities.  In fact, nine of the seventeen Plaintiffs do not even live in Florida, California, or Oklahoma.  Am. Compl. ¶¶ 54, 59, 63, 64, 65, 66, 68, 69, 70.  Even for Plaintiffs who live in one of those states, the mere fact "[t]hat a person is a citizen of a state is insufficient to leap to the conclusion that the sale of a security took place in that state." *Siegal v. Gamble*, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016) (interpreting the meaning of "in this state" in Cal. Corp. Code § 25004); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69–70 (2d Cir. 2012) ("purchaser's citizenship or residency" "is irrelevant to the location of a given transaction"); *Jenkins v. Last Atlantis Partners, LLC*, 2010 WL 3023490, at *5 (N.D. Ill. July 30, 2010) (dismissing Florida securities claim where "Plaintiffs merely plead[ed] that [one plaintiff] is a [Florida] resident").

With respect to the Florida claims, the Court previously held that "Plaintiffs sufficiently allege at the pleading stage that FTX's scheme took place in its Miami offices, and that FTX offered to sell YBAs and FTT from the state of Florida."  ECF No. 890 at 36.  But even assuming this is true, it is not sufficient to plead a nexus to Florida, because a plaintiff must make "factual allegations concerning contract formation, placement of purchase orders, passing of title, and the exchange of money" to establish a violation of a jurisdiction's securities laws.  *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018) (applying federal securities laws).  Plaintiffs here have alleged none of those facts.  At the very least, the Court should dismiss Plaintiffs' claims under Florida law to the extent they are based on trading that occurred on FTX's international platform, which Plaintiffs concede was located abroad.  *See* Am. Compl. ¶ 39 n.12.

Because Plaintiffs are not entitled to bring claims under the laws of states that have no connection to the alleged sales of unregistered securities, the Court should dismiss those claims.

### III.   The Court Should Again Dismiss Plaintiffs' California Securities Claim Because Plaintiffs Have Still Not Pleaded Intent To Defraud.

The Court previously dismissed Plaintiffs' claim for promoting unregistered securities under the California Securities Law because Plaintiffs failed to plead an "intent to deceive or defraud."   ECF No. 890 at 20–22.   Plaintiffs' new allegations suffer from the same defect, particularly under California's "actual knowledge" pleading requirement. *Id.* at 21.

As the Court previously recognized, Plaintiffs must plead that Defendants "inten[ded] to induce reliance on a knowing misrepresentation or omission." *Moss v. Kroner*, 197 Cal. App. 4th 860, 872 (2011).   But their scienter theory continues to be that Defendants "should have known" about FTX's fraud—allegations this Court already held are insufficient.   ECF No. 890 at 21. Plaintiffs' *pro forma* allegations that each Defendant should have known that "FTX was a 'house of cards' being run recklessly with little to no oversight" because Defendants had "close involvement with FTX," "special access to FTX and FTX insiders," and "close participation in developing and/or vetting various FTX marketing materials," are regurgitations of the same "red flag" argument the Court previously rejected.   Am. Compl. ¶¶ 383, 417, 475, 511, 548, 575, 621, 651, 738, 767, 793, 823, 872, 898, 944, 986, 1062, 1125, 1173.   And Plaintiffs' own allegations contradict this theory, making clear that FTX hid its fraud from third parties like Defendants—and even from many of the executives inside the company. *See, e.g., id.* ¶¶ 3, 5, 176, 192, 196, 198, 299.   As before, the Amended Complaint's constructive-knowledge theory does not meet the high standard to plead "a *knowing* misrepresentation or omission." *Moss*, 197 Cal. App. 4th at 872 (emphasis added); ECF No. 890 at 21.

Plaintiffs' conclusory assertion that Defendants "knew that the securities for sale were not registered anywhere but nonetheless promoted their sale" also fails.   Am. Compl. ¶¶ 382, 416, 474, 510, 547, 574, 620, 650, 737, 766, 792, 822, 871, 897, 943, 985, 1061, 1124, 1172.   They do not

28

allege (1) that any Defendant even knew about FTT or YBAs; (2) if they did know about them, that any Defendant intended their generic promotions of FTX to cover FTT and YBAs (without ever mentioning them); (3) that any Defendant also knew that FTT and YBAs were securities—notwithstanding the heated debate in courts and legislatures across the country about whether and when crypto products are securities;[11] and, finally, (4) if any did know FTT and YBAs were securities, that they knew FTX failed to register them as such with the appropriate regulators in California.  Each of these pleading failures independently requires dismissal.  Plaintiffs' pleading is in stark contrast to cases that permit these claims to proceed.  *Cf. Moss*, 197 Cal. App. 4th at 867 (plaintiff plausibly pleaded that defendants knew they were selling unregistered securities because the issuer told them that it had been advised by counsel "to stop selling the notes because they

---

[11] The lack of clarity around whether crypto assets are securities at all recently prompted bipartisan legislation, known as the CLARITY Act, that would declare all cryptocurrencies sold on secondary markets like FTX to be commodities, not securities.  *See* Digital Asset Market Clarity (CLARITY) Act of 2025, H.R. 3633, 119th Cong. § 203.  In light of the historic uncertainty—now being clarified with federal legislation—Plaintiffs cannot establish that Defendants somehow "knew" in 2022 and earlier that certain cryptocurrencies sold via FTX were securities.  Additionally, the SEC recently released guidance indicating that certain "staking activities" do not constitute securities.  *See* SEC, *Statement on Certain Protocol Staking Activities* (May 29, 2025), https://www.sec.gov/newsroom/speeches-statements/statement-certain-protocol-staking-activities-052925.  Plaintiffs allege that FTX claimed that its YBAs generated yield by "staking" assets held in users' accounts—something that is also not a "security."  Am. Compl. ¶¶ 281–86.

were securities").[12]

## IV. Plaintiffs' California And Oklahoma Claims Are Time-Barred Against Certain Defendants.

It is also "apparent from the face of the complaint" that Plaintiffs' California and Oklahoma claims against the Furia, Major League Baseball, MLB Players, Inc., Mercedes F1, Riot Games, and LCS Defendants are barred by the statutes of limitations and repose. *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004); *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1235, 1239 (M.D. Fla. 2023). The Court should therefore dismiss those claims against those Defendants.

The Oklahoma Uniform Securities Act requires plaintiffs to bring claims within "one year after the violation occurred." 71 Okla. Stat. § 1-509(J)(1). The California statute requires claims to be brought within "one year after the discovery by the plaintiff of the facts constituting [the] violation" (the statute of limitations) or two years after the date of the violation (the statute of repose), whichever is shorter. Cal. Corp. Code § 25507(a). While California applies a discovery rule to its statute of limitations, that discovery rule plays no role here. The date of the violation

---

[12] To the extent Plaintiffs separately claim liability under Cal. Corp. Code §§ 25210(b) and 25501.5 for "encouraging the FTX Group to offer and sell" unregistered securities, Am. Compl. ¶ 820, those claims also fail because Plaintiffs include no allegations showing that either Defendants or FTX qualify as broker-dealers under California law. *See Culbertson v. Schuchert*, 110 F.3d 67, 67 (9th Cir. 1997) ("If [a defendant] merely introduced the buyer and seller," he does not qualify as a broker-dealer under §§ 25501.5 and 25210.); *Konopasek v. Ten Assocs., LLC*, 2018 WL 6177249, at *5 (C.D. Cal. Oct. 22, 2018); *Jackson v. Fischer*, 2015 WL 1143582, at *23 (N.D. Cal. Mar. 13, 2015).

30

and the date when a plaintiff should have discovered the basis for their claim are identical in cases asserting unregistered securities claims because a plaintiff knows or should know that a security is unregistered on the date they purchase it, given that "whether a security is registered is a matter of public record." *Sagehorn v. Engle*, 141 Cal. App. 4th 452, 461 (2006). Public SEC filings and other public disclosures are sufficient to place investors on inquiry notice. *See, e.g.*, *Williams v. TouchTunes Music Corp.*, 2014 WL 12626340, at *5 (C.D. Cal. June 13, 2014), *aff'd*, 639 F. App'x 504 (9th Cir. 2016). Further, Plaintiffs plainly had actual knowledge of their claims no later than November 2022, as that is when they sued several of the Original S&E Defendants. *See, e.g.*, *Garrison v. Bankman-Fried*, No. 22-cv-23753 (S.D. Fla.) (filed Nov. 15, 2022).

Even assuming Plaintiffs purchased the alleged securities through FTX at the latest possible date—that is, immediately before FTX shut down and filed for bankruptcy on November 11, 2022, Am. Compl. ¶ 210—they were required to bring their Oklahoma and California claims by November 11, 2023. Plaintiffs filed their suits against the Furia, Major League Baseball, MLB Players, Inc., Mercedes F1, and the Riot Games and LCS Defendants after that date. *See Garrison v. Mercedes-Benz Grand Prix Ltd.*, No. 1:23-CV-24480-KMM (S.D. Fla.) (filed Nov. 27, 2023); *Garrison v. Major League Baseball*, No. 1:23-CV-24479-KMM (S.D. Fla.) (filed Nov. 27, 2023); *Garrison v. Furia Esports LLC*, No. 1:24-CV-20895-KMM (filed Mar. 7, 2024); *Garrison v. Riot Games, Inc.*, No. 1:24-CV-21296-KMM (filed Mar. 7, 2024). Accordingly, the Oklahoma and California securities claims against these defendants are time-barred and must be dismissed.

## V.   The Court Should Strike Damages Allegations Inconsistent With State Law.

If any portion of the Amended Complaint survives dismissal, then at a minimum the Court should strike the damages allegations and claims for relief that have no valid legal connection with the remaining causes of action. Under Rule 12(f), courts may strike a plaintiff's request for "damages claims which are not recoverable under" the relevant law. *Murphy v. Carnival Corp.*,

426 F. Supp. 3d 1288, 1292 (S.D. Fla. 2019); *see also Hodge v. Orlando Utils. Comm'n*, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009) ("[A] prayer for relief not available under the applicable law is properly subject to a motion to strike."). The Court should exercise that authority to strike (1) paragraphs 1203–1209, which allege a damages theory foreclosed by Florida, California, and Oklahoma law, and (2) the claims for relief in the form of restitution, disgorgement, declaratory relief, injunctive relief, and punitive damages, which are not recoverable under each state's laws.

*First*, as a matter of law, the *only* available damages for Plaintiffs' claims are statutory damages, *i.e.*, the difference between what they paid for the securities, plus interest, and what they received when they sold the securities and/or through the bankruptcy, plus any other income received.[13]  *See* Fla. Stat. § 517.211(5) (purchaser of unregistered security "must recover" delta between purchase and disposition price); Cal. Corp. Code § 25501.5(a)(4) (damages "shall be" same delta); 71 Okla. Stat. § 1-509 (plaintiff can recover "actual damages" which are same delta).

The Amended Complaint nevertheless suggests that Plaintiffs can recover for "additional losses" measured by the difference between what they purchased their assets for through FTX and what the assets would be worth if they still held them today.  Am. Compl. ¶¶ 1203–1209.  Even putting to the side that this theory would require impermissible speculation, the fact that the crypto assets that Plaintiffs previously held have changed in value is irrelevant under the statutory formulae.  The *only* relevant factors are the price they paid and the disposition price.  *See* Fla. Stat. § 517.211(5); Cal. Corp. Code § 25501.5(a)(4); 71 Okla. Stat. § 1-509.  The disposition price is

___

[13] Because Plaintiffs no longer possess the crypto assets that form the basis for their claim, their only remedy in this action is damages, not rescission, which applies when the plaintiff is still holding the security in question.  Nor could Plaintiffs obtain rescission as a remedy in an action against S&E Defendants, who did not transfer title to any assets to Plaintiffs.

the amount Plaintiffs received either (i) through the sale of an asset or (ii) in the bankruptcy, which is set by an asset's value on the bankruptcy petition date. *See* Am. Compl. ¶ 1211 (alleging that Defendants are liable for difference between what Plaintiffs paid and "what they obtained . . . either through sale or bankruptcy court payment"). Accordingly, the Court should strike Plaintiffs' allegations claiming losses beyond what they may recover under the statutes, as doing so would promote the "purpose of a motion to strike": "clean[ing] up the pleadings, streamlin[ing] litigation, and avoid[ing] unnecessary forays into immaterial matters." *Gandhi v. Carnival Corp.*, 2014 WL 1028940, at *2 (S.D. Fla. Mar. 14, 2014).

*Second*, the Court should strike Plaintiffs' damages allegations seeking impermissible forms of relief. The Amended Complaint includes a prayer for relief that demands restitution, disgorgement, declaratory relief, injunctive relief, and punitive damages. Am. Compl. at 513–14. But these forms of relief are all categorically unavailable under each state's laws. *See* Fla. Stat. § 517.211(5); Cal. Corp. Code § 25501.5(a)(4); 71 Okla. Stat. § 1-509. Courts regularly strike claims for specific forms of relief that are unavailable under the relevant law. *See, e.g.*, *Murphy*, 426 F. Supp. 3d at 1292 (striking unrecoverable damages); *Koogle v. Aetna Life Ins. Co.*, 2011 WL 6257177, at *2 (S.D. Fla. Dec. 14, 2011) (same). The Court should do the same here.

## VI. Plaintiffs' Claims Belong In Arbitration And Cannot Be Adjudicated As Class Claims.

Not only are Plaintiffs' claims legally flawed, they are proceeding in the wrong forum. Plaintiffs are bound either by the FTX US Terms of Service (the "US ToS"), including its mandatory arbitration clause and class action waiver provision, Ex. 5 (FTX.US User Agreement (May 6, 2022),   https://web.archive.org/web/20220515233010/https://ftx.us/TermsOfService.pdf (accessed July 27, 2025)) at 2, 13–14, or by the FTX Trading Terms of Service (the "Int'l ToS"), Ex. 6 (FTX Terms of Service (May 13, 2022),

33

https://web.archive.org/web/20220702141321/https:/help.ftx.com/hc/article_attachments/626075

2238100/FTX_Terms_of_Service.pdf (accessed July 27, 2025)), which contain materially similar

provisions.

**Plaintiffs Must Arbitrate.**  Plaintiffs' Amended Complaint, together with public records,

establishes that Plaintiffs agreed to the US ToS.  As Sam Bankman-Fried's motion to compel

arbitration explained, "[i]n order to use FTX US's services, including creating and using an FTX

US account, Plaintiffs would have been required to consent to the FTX US User Agreement . . . ,

contained within FTX US's terms of service."  ECF No. 264 at 2–3.  Plaintiffs' own allegations

confirm that users of the "FTX Trading App" were "redirected to the . . . Terms of Service" "from

FTX US."  Am.  Compl. ¶ 292 (quoting Declaration of Director of Enforcement of the Texas State

Securities Board Joseph Rotunda, filed in *In re Voyager Digit. Holdings, Inc.*, No. 22-10943

(MEW), ECF No. 536 (Bankr. S.D.N.Y. Oct. 14, 2022)).  As FTX.US's website reflects, users

were prompted to check a box to agree to the ToS before they could open an FTX account.  *See*

Ex.   7   (FTX.US,   *Open   an   Individual   Account*   (Dec.   9,   2022),

https://web.archive.org/web/20221209204901/https://help.ftx.us/hc/en-

us/articles/360043579413-Open-an-Individual-Account (accessed July 27, 2025)) at 9.  Plaintiffs

also admit their assent to the ToS by relying on the ToS, asserting that "FTX violated their own

terms of service," Am. Compl. ¶¶ 162, 163, 169, and that the ToS made "represent[ations] to Class

Members," *id.* ¶¶ 118, 120.

The US ToS require Plaintiffs to arbitrate individually all disputes "arising out of or

relating to the [ToS] or the breach, termination, enforcement, interpretation or validity thereof or

the use of the Services."  US ToS § 30(a).  The US ToS provide that "[t]he arbitration will be

conducted by the American Arbitration Association . . . under its Consumer Arbitration Rules (the

'AAA Rules') then in effect" and include an express delegation clause stating that "the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement." *Id*. § 30(c).  The ToS are "governed by the Federal Arbitration Act, federal arbitration law, and the laws of the State of California." *Id.* § 29.  Because Plaintiffs' claims challenging their purchases of alleged unregistered securities undeniably "aris[e] out of or relat[e] to the" ToS or their "use of the Services," *id.* § 30(a), they cannot "proffer[] any meritorious argument that the Arbitration Clause" at issue "excludes the instant" state-law securities claims, *Calcaterra v. Baptist Health S. Fla., Inc.*, 733 F. Supp. 3d 1349, 1357–58 (S.D. Fla. 2024), and, moreover, the decision about whether Plaintiffs' claims fall within that broad provision is delegated to the arbitrator, *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1348–49 (11th Cir. 2025).

To the extent Plaintiffs challenge the S&E Defendants' right to enforce these provisions in the ToS because they are not parties to the ToS, that question is also delegated to an arbitrator. The US ToS contain two unequivocal delegations of questions of arbitrability.  First, the Eleventh Circuit has held that incorporation of the AAA Rules delegates threshold questions of arbitrability to the arbitrator.  *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005).  The delegation in the AAA Rules "cover[s] the question" of "whether" a nonsignatory "can enforce the arbitration agreement."  *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020).  Second, the ToS's express delegation clause requires an arbitrator to determine nonsignatory enforcement because it is a question of "enforceability," *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022), or "scope," *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

In any event, the S&E Defendants are entitled to enforce the US ToS under theories of

equitable estoppel or agency.  A plaintiff who is a party to an arbitration clause must arbitrate claims against a nonsignatory defendant where the plaintiff (1) alleges interdependent and concerted misconduct by both the nonsignatory and a signatory that is intertwined with the contract or (2) must rely on the terms of the contract to assert the plaintiff's claims.  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013); *Bahamas Sales Assoc. v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012). These principles "preclude[] a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." *Bahamas Sales*, 701 F.3d at 1342.  Both scenarios are present here.  First, Plaintiffs allege that the S&E Defendants engaged in concerted misconduct with FTX entities that were parties to the arbitration and waiver provisions.  *See, e.g.*, Am. Compl. ¶¶ 14, 322, 382, 416, 474, 510, 547, 574, 620, 651, 766, 792, 822, 871, 943, 985, 1061, 1172. Second, Plaintiffs expressly rely on the ToS and assertions that those terms contained false representations or that FTX violated its own ToS. *Id.* ¶¶ 9, 162-63, 169.  Equitable estoppel applies under these alleged facts.

In addition, Plaintiffs' own agency theory requires them to arbitrate.  While Defendants strongly disagree, Plaintiffs assert that the S&E Defendants acted as agents of FTX.  *See, e.g.*, Am. Compl. ¶¶ 9, 324, 1238.   As with equitable estoppel, agency is an established basis for nonsignatory enforcement of an arbitration provision.  *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (nonsignatory may enforce an arbitration agreement when "under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided" (citation omitted)). Therefore, Plaintiffs' allegations and arguments regarding agency require an arbitrator—not a

court—to evaluate this question.

To the extent Plaintiffs argue that they used FTX Trading instead of FTX.US, that would not help them avoid arbitration.  FTX Trading users were also required to check a box indicating their assent to the International ToS.  Ex. 8 (FTX, FTX Security Features (Oct. 24, 2021), https://web.archive.org/web/20210921181611/https://help.ftx.com/hc/en-us/articles/360044838051-FTX-Security-Features (accessed July 27, 2025)) at 3.  The International ToS also delegate questions of arbitrability by defining "Disputes" to include questions of "enforceability" and incorporating the rules of the Singapore International Arbitration Centre.  Int'l ToS § 38.12.1; *see Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (similarly worded arbitral rules delegate all questions of arbitrability).  Third, even if nonsignatory enforcement were not delegated to the arbitrator, Plaintiffs would be required to arbitrate their claims "arising out of or in connection with the Terms" of the platforms on which they allegedly purchased securities based on third-party beneficiary and equitable estoppel theories.  Int'l ToS § 1.1.  Under a third-party beneficiary theory, Plaintiffs' claims must be arbitrated because "Indemnified Parties"—including "contractors" such as S&E Defendants— "may require that [a] Dispute be finally settled by arbitration."  *Id.* § 38.12.8; *id.* § 29.1 (defining "Indemnified Parties" to include "Personnel"); *id.* § 1.1 (defining "Personnel" to include "contractors"); *see Arthur Andersen,* 556 U.S. at 631 ("third-party beneficiary theories" permit nonsignatory enforcement (citation omitted)).  And under federal equitable estoppel principles, Plaintiffs are required to arbitrate their claims asserting concerted, interdependent misconduct, and which rely on the terms of the International ToS.  *See Outokumpu Stainless USA, LLC v. Coverteam SAS*, 2022 WL 2643936, at *6-7 (11th Cir. July 8, 2022) (Tjoflat, J., concurring) (New York Convention requires application of federal equitable estoppel principles); *MS Dealer,* 177

F.3d at 947–48 (federal equitable estoppel applies when signatory's claims against nonsignatory "rely on the [agreement's] terms" or signatory asserts "collusive behavior" between the nonsignatory and other signatories).

   **Plaintiffs' Claims Cannot Proceed As A Class Action.** The US ToS further provide: "You and FTX.US agree . . . that you and FTX.US are each waiving the right to a trial by jury or to participate in a class action." US ToS § 30(a). Separately, the US ToS contain a "Class Action Waiver," stating that "**YOU AND FTX.US AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**" *Id.* § 30(f); Int'l ToS § 38.12.6(A) ("any Dispute shall be referred to arbitration in accordance with this Clause 38.12 on an individual basis only and not as a claimant or class member in a purported class or representative action"). This waiver is valid and enforceable. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1215-16 (11th Cir. 2011) (affirming order compelling arbitration). And as with the arbitration provision, the class action waiver provision may be invoked for the protection of a non-party to the agreement. *See, e.g., Bogle v. Rausch Sturm, LLP*, 2022 WL 22824882, at *4 (S.D. Fla. Oct. 7, 2022) (dismissing class claims). Thus, even if this case is not sent to arbitration, this Court should strike Plaintiffs' class action allegations.

## VII. If The Court Does Not Dismiss Plaintiffs' Claims In Their Entirety, It Should Stay This Proceeding Pending Resolution Of The FTX Bankruptcy Proceedings.

   In the event the Court does not dismiss Plaintiffs' claims, it should stay this action pending resolution of the FTX bankruptcy proceedings because (1) Plaintiffs will likely recover amounts that equal or exceed the damages that are available in this action, and (2) Defendants may not be able to obtain the discovery needed to defend against Plaintiffs' claims until the bankruptcy

process is complete.

 *First*, trial courts have inherent discretion to "stay litigation pending the outcome of related proceeding[s] in another forum." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). Here, the most efficient course would be to wait for bankruptcy proceedings to run their course to determine whether Plaintiffs will fully recover through those proceedings, because Plaintiffs who recover through the bankruptcy will likely recover amounts that equal or exceed the statutory damages that are available in this action, mooting any claims against Defendants. In *Washington Mutual Bank v. Law Office of Robert Jay Gumenick, P.C.*, 561 F. Supp. 2d 410 (S.D.N.Y. 2008), the court stayed a case under analogous circumstances. The defendant was a law firm that had advised on the closing of a loan for a property that, at the time of the suit, was the subject of separate bankruptcy proceedings. *Id.* at 411. The defendant in that case, as here, was not a party to the bankruptcy proceeding. *Id.* at 411–12. The court nevertheless reasoned that, "although defendants . . . are not parties to the Bankruptcy Proceedings, the issues are closely related because [plaintiff] is seeking damages in this action that may be largely eliminated by the outcome of the Bankruptcy Proceedings." *Id.* at 412. It concluded that principles of comity, avoiding the risk of double recovery, and preventing the waste of time and resources weighed in favor of a stay. *Id.*

 Ongoing bankruptcy proceedings routinely provide a basis for staying related actions against third-party defendants to avoid the risk of double recovery. *E.g.*, *Fitzer v. Am. Inst. of Baking, Inc.*, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010) (granting stay where "[p]laintiff's putative class action [sought] damages for the same personal injury claims that the $12 million PCA bankruptcy settlement fund is designed to compensate" and "staying the proceedings [would] help avoid the risk of double recovery"); *Pickett v. Atl. Se. Airlines, Inc.*, 2007 WL 9701594, at *2

(N.D. Ga. Mar. 30, 2007) (granting stay where "plaintiffs' recovery of some portion of their SERP payments in the [parallel] bankruptcy action will impact the plaintiffs' potential recovery in this action").  The same is true here.

> *Second*, this case should be stayed pending resolution of the bankruptcy action for the independent reason that ongoing bankruptcy proceedings may prevent S&E Defendants from obtaining vital discovery from FTX.  *Lewis v. Russell*, 2009 WL 1260290, at *4 (E.D. Cal. May 7, 2009) (precluding nonparty discovery from debtor); *In re Phila. Newspapers, LLC*, 423 B.R. 98, 105 (E.D. Pa. 2010) (same).  Without discovery from FTX and its former employees, S&E Defendants cannot discover essential facts, including, as just an example, how YBAs actually worked and whether U.S. customers could purchase them.

> Accordingly, in the interest of judicial efficiency and the avoidance of double recovery, the Court should stay proceedings in this case pending resolution of the bankruptcy action, or at least until distributions—which are already well underway—are complete.

## CONCLUSION

> For the foregoing reasons, the Court should dismiss Plaintiffs' claims with prejudice. Defendants reserve the right to seek reasonable attorneys' fees pursuant to Florida Statute § 517.211(7).

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Defendants respectfully request that the Court hear oral argument on their Motion to Dismiss because this case involves myriad legal issues and statutory schemes.  Defendants believe oral argument would further the Court's understanding of the multiple grounds for dismissal with prejudice, as well as the ground for compelling arbitration. Defendants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

On July 24, 2024, counsel for Defendants Golden State Warriors, LLC, Naomi Osaka, Riot Games, Inc., and North America League of Legends Championship Series LLC conferred via telephone with Plaintiffs' counsel regarding the relief requested herein in a good-faith effort to resolve the issues raised in this motion.  The parties were unable to resolve those issues.

Dated: July 27, 2025

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
Pravin R. Patel (FBN 0099939)
  *pravin.patel@weil.com*
Alli G. Katzen (FBN 1024803)
  *alli.katzen@weil.com*
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
Phone: (305)-577-3100

Zachary A. Schreiber
  *zach.schreiber@weil.com*
767 Fifth Avenue
New York, New York 10153
Phone: (212)-310-8000

By: */s/ Pravin R. Patel*
Pravin R. Patel

*Attorneys for Defendant Shohei Ohtani*

**WEIL, GOTSHAL & MANGES LLP**
Pravin R. Patel (FBN 0099939)
  *pravin.patel@weil.com*
Alli G. Katzen (FBN 1024803)
  *alli.katzen@weil.com*
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
Phone: (305)-577-3100

Yehudah L. Buchweitz
  *yehudah.buchweitz@weil.com*
Zachary A. Schreiber
  *zach.schreiber@weil.com*
767 Fifth Avenue
New York, New York 10153
Phone: (212)-310-8000

By: */s/ Pravin R. Patel*
Pravin R. Patel

*Attorneys for Defendant MLB Players, Inc.*

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
  *andrew.clubok@lw.com*
Susan E. Engel (*pro hac vice*)
  *susan.engel@lw.com*
Brittany M.J. Record (*pro hac vice*)
  *brittany.record@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304

Tel: +1.202.637.2200
Fax: +1.202.637.2201

**LATHAM & WATKINS LLP**
Marvin S. Putnam (*pro hac vice*)
 marvin.putnam@lw.com
Jessica Stebbins Bina (*pro hac vice*)
 jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500
Fax: +1.424.653.5501

**LATHAM & WATKINS LLP**
Michele D. Johnson (*pro hac vice*)
 michele.johnson@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235
Fax: +1.714.755.8290

By: */s/ Jessica Stebbins Bina*
Jessica Stebbins Bina

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence David, FuriaGG Corp, Furia Esports LLC, Furia Experience LLC, Lincoln Holdings LLC, and Mercedes-Benz Grand Prix Limited d/b/a Mercedes-AMG Petronas Formula One Team*

**GIBSON, DUNN & CRUTCHER LLP**

Matthew S. Kahn (*pro hac vice*)
 MKahn@gibsondunn.com
Michael J. Kahn (*pro hac vice*)
 MJKahn@gibsondunn.com
Sean F. Howell (*pro hac vice pending*)
 SHowell@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Phone: 415.393.8200

Michael Dore (*pro hac vice*)
 MDore@gibsondunn.com
333 South Grand Avenue
Suite 4600
Los Angeles, CA 90071-3197
Phone: 213.229.7155

By: */s/ Michael J. Kahn*
Michael J. Kahn

*Attorneys for Defendants Golden State Warriors, LLC, Naomi Osaka, Riot Games, Inc., and North America League of Legends Championship Series LLC*

**COLSON, HICKS, EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
(305) 476-7400
Roberto Martínez
Florida Bar No. 305596
 *bob@colson.com*
Stephanie A. Casey
Florida Bar No. 97483
 *scasey@colson.com*
Zachary Lipshultz
Florida Bar No. 123594
 *zach@colson.com*

*Attorneys for Defendants Thomas Brady, Gisele Bündchen, Lawrence David, Golden State Warriors, LLC, Naomi Osaka, Riot Games, Inc., and North America League of Legends Championship Series LLC*

**HECKER FINK LLP**
Sean Hecker
 *shecker@heckerfink.com*
John Quinn
 *jquinn@heckerfink.com*
Sabrina Alvarez-Correa
 *salvarezcorrea@heckerfink.com*
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

By: */s/ John Quinn*
John Quinn

*Counsel for Defendants Office of the Commissioner of Baseball d/b/a Major League Baseball, Major League Baseball Properties, Inc., MLB Advanced Media, L.P., and The MLB Network, LLC*

**McDERMOTT WILL & EMERY LLP**
333 SE 2nd Ave., Suite 4500
Miami, Florida 33131
Telephone: (212) 547-5768
Facsimile: (305) 347-6500

By: */s/ Nathan Bull*
Nathan Bull (Fla. Bar No. 1029523)

**McDERMOTT WILL & EMERY LLP**
Jason D. Strabo (*pro hac vice*)
 *jstrabo@mwe.com*
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 788-4125
Facsimile: (310) 277-4730

**McDERMOTT WILL & EMERY LLP**
Sarah P. Hogarth (*pro hac vice*)
 *shogarth@mwe.com*
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8354
Facsimile: (202) 756-8087

*Attorneys for Defendant Stephen Curry*

**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700

By: */s/ Christopher S. Carver*
Christopher S. Carver, Esq.
Florida Bar No. 993580
 *christopher.carver@akerman.com*
Jason S. Oletsky, Esq.
Florida Bar No. 9301
 *jason.oletsky@akerman.com*
Katherine A Johnson, Esq.
Florida Bar No. 1040357
 *katie.johnson@akerman.com*

*Attorneys for Defendant David Ortiz*

**MARCUS NEIMAN RASHBAUM
& PINEIRO LLP**
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel: (954) 462-1200

2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305)-400-4260

By: */s/ Jeffrey Neiman*
Jeffrey Neiman
Fla Bar. No. 544469
 *jneiman@mnrlawfirm.com*
Jeffrey Marcus

Fla. Bar No. 310890
  *jmarcus@mnrlawfirm.com*
Michael Pineiro
Fla. Bar No. 041897
  *mpineiro@mnrlawfirm.com*
Brandon Floch
Fla. Bar No. 125218
  *bfloch@mnrlawfirm.com*

**BERK BRETTLER LLP**
9119 Sunset Boulevard
West Hollywood, CA 90069
Tel.: (310) 278-2111
Andrew B. Brettler (*pro hac vice*)
  *abrettler@berkbrettler.com*

*Attorneys for Defendant Kevin O'Leary and
Solomid Corporation, D/B/A Team Solomid,
TSM, and/or TSM FTX*

**SQUIRE PATTON BOGGS (US) LLP**
Dorian Daggs (Fla. Bar No. 1028485)
  *Dorian.daggs@squirepb.com*
Digna B. French (Fla. Bar No. 148570)
  *Digna.french@squirepb.com*
Amanda E. Preston (Fla. Bar No. 123652)
  *Amanda.preston@squirepb.com*
200 S. Biscayne Boulevard, Ste. 3400
Miami, Florida 33131
(305) 577-7000

By: */s/ Dorian Daggs*
Dorian Daggs

*Counsel for Defendant Udonis Haslem*

**HOLLAND & KNIGHT LLP**
Stephen P. Warren (Fla. Bar No. 788171)
  *Stephen.Warren@hklaw.com*
Brandon T. White (Fla. Bar No. 106792)
  *Brandon.White@hklaw.com*
Andrew W. Balthazor (Fla. Bar No. 1019544)
  *Andrew.Balthazor@hklaw.com*
701 Brickell Avenue, Suite 3F300
Miami, Florida 33131
(305) 374-8500

By: */s/ Stephen P. Warren*

Stephen P. Warren

*Attorneys for Defendant Wasserman Media Group, LLC*

**BUCHANAN INGERSOLL & ROONEY PC**
Mark Kornfeld
 *Mark.Kornfeld@bipc.com*
401 E. Jackson Street, Suite 2400
Tampa, Florida 33602
(813) 222-8180

By: */s/ Mark Kornfeld*
Mark Kornfeld

*Attorney for Defendant Dentsu McGarry Bowen LLC*

## FILER ATTESTATION

I, Pravin R. Patel, am the ECF user whose identification and password are being used to file the Motion to Dismiss for Failure to State a Claim or to Compel Arbitration by Sports & Entertainment Defendants.  Pursuant to the CM/ECF Administrative Procedures, I hereby attest that I have obtained concurrence from the other parties to file this motion and sign it electronically on their behalf.

By: */s/ Pravin R. Patel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

By: */s/ Pravin R. Patel*