# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | No: 1:23-md-03076-KMM<br><br>MDL No. 3076 |
| This Document Relates To:<br><br>*Garrison et al v. Riot Games, Inc. et al*, 1:24-cv-21296-KMM | |

**DEFENDANTS RIOT GAMES, INC. AND NORTH AMERICA LEAGUE OF LEGENDS CHAMPIONSHIP SERIES LLC'S INDIVIDUAL BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiffs merely allege that Riot Games, Inc. ("Riot") and North America League of Legends Championship Series LLC ("LCS") displayed FTX's logo and referenced FTX two times in statements that did not mention trading crypto. This is not and cannot be solicitation of an unregistered security. In addition to the reasons stated in the Sports and Entertainment Defendants' Motion to Dismiss, the claims against Riot and LCS should be dismissed because neither defendant appeared in any advertisements for FTX, made any representations about FTX's platform or the crypto that could be purchased on it, or even urged Plaintiffs to trade crypto with FTX.

According to Plaintiffs, Riot and LCS promoted FTX in the following ways: they displayed the FTX logo during game broadcasts and in social media posts; stated that certain features in the game and the Most Improved Player Award were "presented by FTX"; described FTX in a post announcing the companies' partnership as "an innovative, thoughtful leader in a space our fans understand"; and posted "We're IN" "as part of FTX's 'You In?' campaign." Am. Compl. ¶¶ 1133, 1141–50, 1155–56. Plaintiffs allege that "[t]hese promotions via logo placement and tagging implicitly promoted FTX (and by extension FTT and YBAs) as a mainstream, trustworthy brand and product." *Id.* ¶ 1147.

These allegations fall well short of pleading that Riot and LCS "actively solicit[ed]" the purchase of FTT or YBAs, as required to state a claim. *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1531 (11th Cir. 1991). At best, Plaintiffs' allegations that Riot and LCS "implicitly promoted FTX," Am. Compl. ¶ 1147, suggest that they may have been a factor in causing Plaintiffs to use FTX and perhaps eventually purchase FTT or YBAs (purchases that Plaintiffs do not actually plead). But that is not enough to state a claim. The Supreme Court expressly held that solicitation liability may not be imposed "on participants[] collateral to the offer or sale" even if their actions were a "substantial factor" in causing the securities transaction. *Pinter v. Dahl*, 486

1

U.S. 622, 650, 654 (1988). Plaintiffs' allegations do not clear that hurdle. Indeed, they do not even satisfy the more lenient substantial factor test overturned in *Pinter*, which required showing defendants "were 'key participants,' 'active negotiators,' or 'the motivating force' behind a sale of securities"—none of which describe Riot or LCS here. *See Ryder*, 943 F.2d at 1525 (citations omitted). If Plaintiffs fail to plead a claim under that looser standard, they necessarily fail to plead a claim under the stricter standard established in *Pinter*.

Plaintiffs' claims against Riot and LCS stand in stark contrast to those typically asserted against purported solicitors. Take the allegations in *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022). The defendant there created "multiple websites where [he] encouraged viewers to buy BitConnect coins," "told potential investors that passive income was merely 'a click away,'" "instructed investors to fill out a form to access a video about 'how to make huge profits with BitConnect,'" and together with "his team posted thousands of YouTube videos extolling BitConnect." *Id.* at 1344. Nothing like that is pleaded here. Plaintiffs do not allege that Riot or LCS made any statements whatsoever about trading on the FTX platform, let alone sought to "'urge or persuade'" Plaintiffs "to buy a particular security" like BitConnect. *Id.* at 1346 (quoting *Ryder*, 943 F.2d at 1531, 1534).

The activities that Plaintiffs allege Riot and LCS participated in are far more attenuated than those that courts have held are *insufficient* to plead solicitation. For instance, one court dismissed solicitation claims against a cryptocurrency-trading platform that "promoted the sale of [cryptocurrency] Tokens by providing users with descriptions of each Token and its purported value proposition" and "participated in direct promotions" for the Tokens. *Underwood v. Coinbase Glob., Inc.*, 654 F. Supp. 3d 224, 239 (S.D.N.Y. 2023), *aff'd in part and rev'd in part on other grounds*, 2024 WL 1478773 (2d Cir. Apr. 5, 2024). The court concluded that the

2

platform's conduct was not "beyond the 'collateral' participation that *Pinter* and its progeny exclude from Section 12 liability." *Id.* Another court dismissed solicitation claims against an investment firm that distributed "marketing materials" for a fund through its website, reasoning that "Section 12 liability cannot be imposed upon 'those who merely assist in another's solicitation efforts.'" *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016).

     This case law establishes that Plaintiffs fail to plead a claim against Riot and LCS. If the plaintiffs in these cases could not plead a solicitation claim against defendants who directly promoted specific securities, then Plaintiffs necessarily fail to state a claim against Riot and LCS—who promoted neither a specific security, nor trading on FTX. "[I]mplicitly promot[ing] FTX" by displaying FTX's logo and stating that FTX is "innovative," *supra* at 1, is simply insufficient to plead that Riot and LCS directly urged Plaintiffs to buy a particular security. The claims against Riot and LCS should be dismissed with prejudice.[1]

---

[1] One argument from the omnibus motion to dismiss bears repeating: Plaintiffs' California and Oklahoma claims are barred by the one-year statutes of limitations, Cal. Corp. Code § 25507(a); 71 Okla. Stat. § 1-509(J)(1), because Plaintiffs did not file suit against Riot and LCS until March 7, 2024—nearly 16 months after FTX shut down on November 11, 2022. *See Garrison v. Riot Games, Inc.*, 1:24-CV-21296-KMM; Am. Compl. ¶ 210.

3

Dated: July 27, 2025                    Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
(305) 476-7400

By: *Stephanie A. Casey*
Roberto Martínez
Florida Bar No. 305596
  bob@colson.com
Stephanie A. Casey
Florida Bar No. 97483
  scasey@colson.com
Zachary Lipshultz
Florida Bar No. 123594
  zach@colson.com

**GIBSON, DUNN & CRUTCHER LLP**

Matthew S. Kahn (*pro hac vice*)
  MKahn@gibsondunn.com
Michael J. Kahn (*pro hac vice*)
  MJKahn@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Phone: 415.393.8200

Michael Dore (*pro hac vice*)
  MDore@gibsondunn.com
333 South Grand Avenue
Suite 4600
Los Angeles, CA 90071-3197
Phone: 213.229.7155

*Attorneys for Defendants Riot Games, Inc. and North America League of Legends Championship Series LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 27, 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system, causing a true and correct copy to be served on all counsel of record.

By: *Stephanie A. Casey*