UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-md-3076-KMM

In RE

**FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION**

THIS DOCUMENT RELATES TO:

Law Firms

**DEFENDANT FENWICK & WEST LLP'S OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT**

Defendant Fenwick & West LLP ("Fenwick") respectfully submits this opposition to Plaintiffs' Motion for Leave to Amend Their Complaint Against Defendant Fenwick & West (ECF No. 967) ("Mot.").

**PRELIMINARY STATEMENT**

Plaintiffs' proposed amendments confirm that after more than two years of litigation, Plaintiffs still have nothing to show that Fenwick knew anything about the FTX fraud. Plaintiffs' core theory is as facile as it is flawed. Fenwick is not liable for aiding and abetting a fraud it knew nothing about, based solely on allegations that Fenwick did what law firms do every day—provide routine and lawful legal services to their clients. As such, leave to amend should be denied, and Fenwick's pending motion to dismiss should be granted.

Plaintiffs now cobble together a smattering of "new factual events" that they contend support amendment. But Plaintiffs' proposed amendments are not only untimely—based on stale information that has been available to them for years—but also misleading and futile. For example, Plaintiffs point to allegations parroted from a report by an FTX Bankruptcy Court Examiner's

investigation of another law firm, Sullivan & Cromwell LLP, that was a major provider of legal services to FTX, and who Plaintiffs and an expert they commissioned have said was embedded at FTX. But what Plaintiffs do not explain is that their allegations against Fenwick mirror those that they had earlier pursued quite aggressively against Sullivan & Cromwell, but then precipitously dismissed with prejudice. Plaintiffs pointed to the Examiner's conclusion that there was "no evidence" supporting the allegations that Sullivan & Cromwell knew or should have known about FTX's fraud—and yet they offer no credible reason why the same allegations should survive against Fenwick.

Another example of how Plaintiffs have fabricated new allegations to justify amendment is their false characterization of the Sam Bankman-Fried criminal trial record. Without citing specific testimony, Plaintiffs irresponsibly allege (notwithstanding Rule 11) that FTX's director of engineering, Nishad Singh, testified that "he informed Fenwick of misuse of customer funds, improper loans, and false representations, and that Fenwick advised on how to facilitate these very acts." Mot. ¶ 5; *see also* ECF No. 967-1 ("Proposed Am. Compl.") ¶ 49.

On the contrary, Mr. Singh testified that Fenwick merely advised on how to structure founder loans, which are common instruments for closely held companies like FTX. He *never* testified that he told Fenwick about the "misuse of customer funds" or that FTX had made "false representations"—let alone that Fenwick advised on how to "facilitate" these unlawful acts. Notably, dozens of witnesses in the Bankman-Fried trial testified that Bankman-Fried and his cadre of closest associates perpetuated their fraud without the knowledge of even FTX's in-house counsel, other FTX employees, executives, and directors, FTX's long-time accountants, and other outside law firms and professionals that worked closely with FTX. Fenwick is no different.

2

Plaintiffs also should not be permitted to end-run this Court's recent ruling dismissing their conspiracy and aiding-and-abetting liability theories against other Defendants. Having been unsuccessful in that endeavor, Plaintiffs now seek to bloat their complaint with new claims for alleged violations of state securities laws that Plaintiffs did not think were viable enough to assert against Fenwick in the first instance.

There is simply no way to interpret Plaintiffs' Motion as anything other than an attempt to stave off the Court from ruling on Fenwick's motion to dismiss and to further delay this litigation. The strategy plainly is to pad the pleadings with false and distracting accusations that do nothing to address the core problem with Plaintiffs' claims against Fenwick—all-the-while saddling Fenwick with false allegations that procedurally the Court will be forced to accept as true in connection with any motion to dismiss. Now is the time to stop this improper strategy in its tracks and foreclose Plaintiffs from sullying Fenwick's reputation publicly based on additional false and misleading allegations that infect the proposed amended complaint. The Court, respectfully, should deny Plaintiffs' Motion and rule on Fenwick's motion to dismiss.

## BACKGROUND

More than two years ago, on August 7, 2023, Plaintiffs filed their consolidated amended complaint against Fenwick, in which they asserted claims for aiding-and-abetting and conspiracy liability, along with a federal RICO cause of action. ECF No. 153. Fenwick responded to the complaint with a motion to dismiss, which has been fully briefed. *See* ECF Nos. 276, 350, 408.

While Fenwick's motion to dismiss was pending, in February 2024, Plaintiffs filed a complaint against Sullivan & Cromwell LLP, another law firm that provided extensive legal services to FTX. *See Garrison v. Sullivan & Cromwell LLP*, No. 24-20630 (S.D. Fla. filed Feb. 16, 2024). In that complaint, Plaintiffs lobbed the same allegations they assert against Fenwick:

3

that Sullivan & Cromwell was "one of the FTX Group's chief providers of legal counsel," that its attorneys were in "near constant contact" with FTX's "inner workings," and that Sullivan & Cromwell advised on key deals and regulatory matters that were instrumental to the FTX fraud. *See generally id.* ¶¶ 22–41. Plaintiffs advanced the same theory that they bring against Fenwick, which is that Sullivan & Cromwell's "immense resources, connections to regulators, expertise, and assistance were vital to perpetuating th[e] scheme" by FTX. *Id.* ¶ 157. And just like Fenwick, Plaintiffs sued Sullivan & Cromwell for civil conspiracy, aiding-and-abetting liability, and RICO, arguing that Sullivan & Cromwell should be secondarily liable for FTX's fraud because it "provided services to the FTX Group entities that went well beyond those a law firm should and ordinarily provides." *Id.* ¶ 38.

Plaintiffs even commissioned a cryptocurrency industry expert to draft a lengthy report that detailed Plaintiffs' contention about just how deeply Sullivan & Cromwell was embedded with FTX. Plaintiffs' report also highlighted "significant questions [that] remain unanswered" relating to Sullivan & Cromwell's representation of FTX in transactional and regulatory matters that gave "credence to the proposition that [Sullivan & Cromwell] potentially knew about misconduct at FTX pre-bankruptcy." *See* ECF No. 710-1 ¶¶ 9.09, 9.32. That is what Plaintiffs had said about Sullivan & Cromwell, and that is what Plaintiffs are still saying about Fenwick now.

While Plaintiffs' litigation against Sullivan & Cromwell was pending here, the FTX Bankruptcy Court tasked an Examiner to investigate Sullivan & Cromwell's legal services to FTX given its role as post-petition bankruptcy counsel for FTX. *See In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Mar. 20, 2024), ECF No. 9882. After conducting this investigation, the Examiner issued a Report concluding that there was no "merit" to the allegation that a law firm, even as deeply embedded as Sullivan & Cromwell, "knew or should have known that customer

4

funds were misappropriated," or that Sullivan & Cromwell otherwise "obtain[ed] actual knowledge of, or ignore[d] any red flags suggesting, fraud or malfeasance occurring at the FTX Group." Examiner's Phase II Report, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Sept. 25, 2024), ECF No. 25679, at 25, 27, 28.

Less than two weeks after the Examiner's Report, Plaintiffs voluntarily dismissed Sullivan & Cromwell from this MDL with prejudice. As their Motion acknowledged, Plaintiffs' counsel "determined that the correct decision when faced with the evidence contained within the Examiner's reports was to dismiss Sullivan & Cromwell, LLP with prejudice from this MDL." Mot. ¶ 15; *see also* ECF No. 967-1 ("Proposed Am. Compl.") ¶ 73 n.13. Yet despite the equivalence of the allegations that Plaintiffs had asserted against Sullivan & Cromwell and Fenwick—and Plaintiffs' counsel's admission that there was not "enough here to state a cause of action" based on these allegations[1]—Plaintiffs did not dismiss Fenwick.

Since the Examiner's Report and Plaintiffs' voluntary dismissal of Sullivan & Cromwell, Plaintiffs' case against Fenwick has only gotten weaker. For instance, on October 8, 2024, the FTX Bankruptcy Court approved a Plan of Reorganization that gives FTX customers ***full*** recovery for the cash and digital assets they held on FTX. *See In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Oct. 8, 2024), ECF No. 26404. Under the Plan, the Estate expects to provide all of FTX's non-governmental creditors—including FTX customers like Plaintiffs and the putative class—with "payment in full," plus 9% interest.[2] And just a few months ago, the FTX Estate announced

---

[1] *Sullivan & Cromwell Dropped from FTX Investor Suit*, Law360 (Oct. 9, 2024), https://www.law360.com/articles/1888587/sullivan-cromwell-dropped-from-ftx-investor-suit (quoting lead counsel for Plaintiffs).

[2] Press Release, *FTX Files Consensus-Based Plan of Reorganization* (May 7, 2024), https://www.prnewswire.com/news-releases/ftx-files-consensus-based-plan-of-reorganization-302138948.html.

5

that it had successfully distributed more than $5 billion to creditors, including a ***120%*** distribution to almost all FTX customers.[3] The recovery that putative class members are already receiving through the bankruptcy proceedings means there is nothing left for Plaintiffs to recover through this lawsuit.

      Plaintiffs' case against Fenwick became even weaker when, on May 7, 2025, the Court dismissed the vast majority (12 of 14) of Plaintiffs' claims against the Celebrity Defendants who promoted FTX. *See* ECF No. 890. Specifically, the Court dismissed all of Plaintiffs' claims for civil conspiracy and aiding-and-abetting liability, the same claims that Plaintiffs asserted against Fenwick. *See id.* at 28–32. The Court held that Plaintiffs had only stated a claim for alleged violations of Florida and Oklahoma securities laws against the Celebrity Defendants by promoting the sale of unregistered securities. *Id.* at 10–22. Although they had every opportunity to do so (as they had done in their complaints against the other Defendant groups), Plaintiffs did not plead either of these state securities claims against Fenwick—plainly because they knew it would be farfetched to claim that lawyers could be liable as promoters of unregistered "securities."

      Apparently concerned about what the Court's ruling regarding the Celebrity Defendants means for their current amended complaint against Fenwick, Plaintiffs now seek a do-over to amend their complaint yet again. At around 1:30 p.m. ET on Friday, August 8, Plaintiffs informed Fenwick's counsel that they intended to file a motion to amend their complaint on the following

---

[3] Press Release, *FTX Recovery Trust to Distribute More than $5 Billion to Creditors in Second Distribution on May 30, 2025* (May 15, 2025), https://www.prnewswire.com/news-releases/ftx-recovery-trust-to-distribute-more-than-5-billion-to-creditors-in-second-distribution-on-may-30-2025-302456976.html. The Class 7 Convenience Claims include 98% of FTX's customers (i.e., those with balances of less than $50,000), and therefore cover virtually the entire putative class. *See* Dietrich Knauth, *FTX Cleared to Repay Billions to Customers After Bankruptcy Plan Approval*, Reuters (Oct. 8, 2024), https://www.reuters.com/legal/crypto-exchange-ftxs-liquidation-plan-receives-court-approval-2024-10-07.

Monday, August 11, at 10:00 a.m. ET. Having given less than five business hours' notice to Fenwick, Plaintiffs filed this Motion.

## LEGAL STANDARD

When, as here, a plaintiff has already amended their complaint once and after a Rule 12 motion has been filed in response to a complaint, a plaintiff requires leave of court to amend it. Fed. R. Civ. P. 15(a)(2). In general, "a court should give leave to amend freely 'when justice so requires.'" *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). However, leave to amend "may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if the complaint, as amended, would remain subject to dismissal. *Hall v. United States Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). "Ultimately, whether to grant or deny leave to amend is within the discretion of the district court." *Holland v. Hunter Douglas, Inc.*, 2018 WL 7082666, at *1 (S.D. Fla. June 25, 2018) (citing *Foman*, 371 U.S. at 182).

## ARGUMENT

Plaintiffs have no good cause to amend their complaint now, when they already amended it once, their operative complaint is more than two years old, and Fenwick's motion to dismiss has been fully briefed for almost as long. While the bar for leave to amend may be modest, it is not toothless. Here, none of the "new factual events" that Plaintiffs cite—some of which transpired as long as 17 months ago—justifies their last-minute attempt to delay dismissal. To the contrary, Plaintiffs' Motion rings of delay, dilatory motive, and bad faith.

By contrast, the proposed amendments would unduly prejudice Fenwick. At the pleading stage, Fenwick and this Court would be forced to accept as true Plaintiffs' meritless and cavalier allegations, which are in any event ultimately futile because they do not address the underlying flaws in their legal theories. They are also flatly inconsistent with Plaintiffs' actions regarding Sullivan & Cromwell. It is therefore well within this Court's discretion to deny Plaintiffs' Motion.

I.  **Plaintiffs' Proposed Amendments Are Untimely and Would Cause Undue Delay**

Courts in this Circuit routinely "deny[] leave to amend when the movant did not show good cause of significant delay." *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1254 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006). In other cases, courts have found unexplained tardiness of six months to a year to be problematic. *See, e.g.*, *Andrx Pharm.*, 421 F.3d at 1236–37 (denying leave to amend where plaintiff waited more than one year to seek leave to amend); *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (affirming denial of leave to amend where plaintiff sought leave six months after deadline for pleading amendments); *Valpack Direct Mktg. Sys., Inc. v. Maschino*, 349 F. App'x 368, 370 (11th Cir. 2009) (same for seven-month delay).

Plaintiffs far exceed that here. Plaintiffs filed their amended complaint two years ago, and the "new factual events" they trumpet—such as the completion of Sam Bankman-Fried's criminal trial in November 2023 and the release of the Examiner's Report in September 2024—occurred long ago. If Plaintiffs' request to amend were truly motivated by these developments, there is no excuse for their lengthy delay.

Plaintiffs' request to amend plainly is a response to this Court's recent ruling on the Celebrity Defendants' motions to dismiss, which dismissed 12 of the 14 claims against those Defendants, and rejected the same conspiracy and aiding-and-abetting theories that Plaintiffs have

8

similarly asserted against Fenwick.  Thus, while Plaintiffs claim that they seek to "expedite" and "streamline[] the claims at issue in this litigation" (Mot. ¶¶ 20–21), amendment would do the exact opposite.  It would trigger a new round of pleadings-based challenges—but this time with a complaint that has become 50% more bloated, growing from 107 pages and 311 paragraphs in the operative complaint, to 168 pages and 464 paragraphs in the proposed amended complaint, and adding new causes of action under state securities laws that could (and should) have been asserted months—if not years—earlier.  *Compare* ECF No. 153 (operative amended complaint), *with* Proposed Am. Compl. (proposed new amended complaint).  Forcing Fenwick to re-brief its motion to dismiss to respond to an overstuffed complaint full of scurrilous allegations would be a waste of resources and further delay this litigation.

## II.     Plaintiffs' Proposed Amendments Are Futile

None of the new "facts" that Plaintiffs identify in their Motion change the conclusion that Fenwick cannot be held liable for providing ordinary and lawful legal services to FTX.

*First*, Plaintiffs argue that they should be allowed to assert new allegations that Fenwick "may also be held liable for primary and/or secondary liability under the Florida Securities and Investor Protection Act ('FSIPA') and the California Securities Law ('CSL')."  Mot. ¶ 4.  These new claims come far too late.  If Plaintiffs truly thought they had state securities claims against Fenwick, they had every opportunity to allege them at the outset (just like they did against many other Defendants in the original amended complaints they filed two years ago).  But Plaintiffs made a strategic decision *not* to bring securities claims against Fenwick—obviously because they deemed those claims too frivolous to bother including them in their pleading.

Nothing has changed since then. Plaintiffs' Motion cites no new facts. Instead, this is an eleventh-hour attempt to evade the Court's ruling on the Celebrity Defendants' motion to dismiss, and to recast lawyers as "promoters." But this theory too goes nowhere.

Lawyers are legal counselors and advocates—not promoters. And treating lawyers as promoters would have dangerous consequences. Courts have long recognized that holding counsel secondarily liable for a client's conduct would seriously impair the ability of lawyers to zealously represent their clients. That is why "merely assist[ing] in drafting offering documents do[es] not [amount to] commit[ting] securities violations." *Walco Invs., Inc. v. Thenen*, 881 F. Supp. 1576, 1583 (S.D. Fla. 1995). As courts in Florida and elsewhere have recognized, "a corporate attorney must do more than prepare legal documents and attend to their execution to render himself responsible under the securities act." *Hughes v. Bie*, 183 So. 2d 281, 283 (Fla. Ct. App. 1966); *see also Koehler v. Pulvers*, 614 F. Supp. 829, 844–45 (S.D. Cal. 1985) (similar under California law). Fenwick is aware of no case in which a law firm was held liable for securities violations simply because it advocated on behalf of its client—and this case should not be the first.[4]

*Second*, Plaintiffs seek to add an allegation about sworn testimony by "FTX Insider Nishad Singh." Mot. ¶ 5. Without quoting any specific testimony, Plaintiffs claim that Mr. Singh testified that "he informed Fenwick of misuse of customer funds, improper loans, and false representations, and that Fenwick advised on how to facilitate these very acts." *Id.*; *see also* Proposed Am. Compl. ¶ 49. This allegation is an irresponsible falsehood.

---

[4] The proposed amended complaint pleads no facts suggesting that Fenwick "promoted"—as opposed to advocated for—FTX. For example, Plaintiffs make the downright silly allegation that Fenwick (like nearly all law firms) identifies on its website the work it does for clients. *See* Proposed Am. Compl. ¶ 31. But when a law firm describes such work, it is clearly marketing *the firm's* work—and not the client's products or services.

10

We reviewed all of Mr. Singh's testimony from the Bankman-Fried trial, and Mr. Singh *never* testified that he had ever "informed" Fenwick about the fraud at FTX. Nor did Mr. Singh ever testify that Fenwick knew about FTX's misuse of customer funds or false representations, or that Fenwick advised on how to "facilitate" wrongful acts. All Mr. Singh testified was that he had consulted with certain Fenwick lawyers about how to generally structure a founder loan—a routine legal service for closely held companies such as FTX, and certainly nothing that would have made Fenwick aware of fraud. The Court should deny leave for Plaintiffs to amend their complaint with mischaracterizations made in bad faith that will exacerbate—rather than streamline—a pleading that is already full of other falsities.

*Third*, Plaintiffs' Motion argues amendment is proper in light of the findings of the Bankruptcy Court Examiner who investigated Sullivan & Cromwell's work for FTX and Bankman-Fried. *See* Mot. ¶¶ 6, 13–15. Again, Plaintiffs' invocation of the Examiner's Report—just as with their mischaracterization of Mr. Singh's testimony—is disingenuous. In fact, Plaintiffs' actions regarding Sullivan & Cromwell demonstrate why leave to amend should be denied.

As this Court knows, Plaintiffs at one time sought to hold Sullivan & Cromwell liable for the FTX fraud, just as Plaintiffs seek now to do against Fenwick. Indeed, Plaintiffs' complaint against Sullivan & Cromwell relied upon the same factual and legal theories that they advance against Fenwick—that Sullivan & Cromwell was one of the FTX Group's "chief providers of legal counsel," had knowledge about FTX's inner workings, and had "immense resources, connections to regulators, expertise, and assistance [that] were vital to perpetuating the scheme." *See* Complaint ¶¶ 22, 157, *Garrison v. Sullivan & Cromwell LLP*, No. 24-20630 (S.D. Fla. filed Feb. 16, 2024), ECF No. 1. The parallels between the complaints that Plaintiffs have filed against

11

Fenwick and Sullivan & Cromwell are strikingly similar, and Plaintiffs' rhetoric against Sullivan & Cromwell was as charged as it is against Fenwick now.

If anything, Plaintiffs were even more aggressive in their prosecution of Sullivan & Cromwell, going so far as commissioning Lee Reiners, a cryptocurrency expert, to prepare a 38-page report that he and Plaintiffs claimed detailed Sullivan & Cromwell's deep ties with FTX and how those ties created "actual and potential conflicts of interest" in Sullivan & Cromwell's representation of the Debtors. *See* ECF No. 710-1 ¶ 9.01. In that report, Mr. Reiners outlined significant "concerns [that] center around the role of [Sullivan & Cromwell] at FTX before, at and during the bankruptcy process," including "unusual circumstances" surrounding Sullivan & Cromwell's representation of the Debtors that "lend further credence to the proposition that [the law firm] potentially knew about misconduct at FTX pre-bankruptcy." *Id.* ¶¶ 9.01, 9.32. He even suggested that while representing FTX in connection with transactional and regulatory matters, Sullivan & Cromwell "may have discovered the 'backdoor' in FTX's code" that was the foundation of how Bankman-Fried and his associates were able to siphon customer funds. *Id.* ¶¶ 9.09, 9.10. Plaintiffs adopted Mr. Reiner's conclusions by relying on his report when opposing Sullivan & Cromwell's motion to dismiss. *See* ECF No. 710.

Yet rather than prosecute their claims against Sullivan & Cromwell, Plaintiffs voluntarily dismissed them *with prejudice* in October 2024. *See* ECF No. 750. Fenwick deserves the same amount of honesty. Plaintiffs attempt to explain away their dismissal of Sullivan & Cromwell as being the "correct decision when faced with the evidence contained within the Independent Examiner's reports," which "cleared Sullivan & Cromwell." Mot. ¶¶ 14-15; *see also* Proposed Am. Compl. ¶ 73 n.13. As lead counsel for Plaintiffs publicly stated: "We don't think, based on

12

the evidence, that we've seen that there's enough here to state a cause of action [against Sullivan & Cromwell], so we dismissed it."[5]

But Plaintiffs' voluntary dismissal of Sullivan & Cromwell only begs the question of why—if the Examiner "cleared" Sullivan & Cromwell for engaging in essentially the same activities as Plaintiffs allege about Fenwick—Plaintiffs nonetheless believe they have enough to keep Fenwick in this lawsuit. Plaintiffs most assuredly will be confronted with that question in this case; and it should be now. The best Plaintiffs offer is that the Examiner "***did not*** clear" Fenwick (Mot. ¶ 14), but this means nothing because the Examiner was only tasked with investigating Sullivan & Cromwell—not Fenwick.

*Fourth*, Plaintiffs vaguely refer to "many more details on Fenwick's relationship to FTX, based upon the interviews cooperation [*sic*] of the settled FTX Insiders." Mot. ¶ 7. Although Plaintiffs do not identify these "details," their proposed complaint attaches an anodyne declaration from former Fenwick attorney Dan Friedberg about FTX's Miami-based business activities that was signed in May 2023, well *before* Plaintiffs filed their operative complaint in August 2023, and that does not address any of Plaintiffs' allegations against Fenwick. *See* Proposed Am. Compl., Ex. A. As for the "FTX Insiders," they had settled their cases back in March 2024. *See* ECF No. 565. Plaintiffs have therefore had access to this information for years. So even assuming that "MDL Counsel has learned many more details on Fenwick's relationship to FTX" (Mot. ¶ 7), they have not explained why amendment would be timely now, or why these "details" should delay a

---

[5] *Sullivan & Cromwell Dropped from FTX Investor Suit*, Law360 (Oct. 9, 2024), https://www.law360.com/articles/1888587/sullivan-cromwell-dropped-from-ftx-investor-suit (quoting lead counsel for Plaintiffs).

ruling on a motion to dismiss that Fenwick filed two years ago.[6] Indeed, it is telling that Plaintiffs say nothing about those supposed "details."

## III. Plaintiffs' Proposed Amendments Would Prejudice Fenwick

In addition to being untimely and futile, amendment of Plaintiffs' complaint yet again would prejudice Fenwick. Fenwick will have no choice but to defend against these meritless allegations—many of them outright falsities. This prejudice is all the more acute because Fenwick will have limited recourse to respond to the mischaracterizations and outright falsehoods in Plaintiffs' proposed amendments at the pleadings stage, when it is forced to accept the allegations—no matter how outrageous and blatantly false—as true. Permitting amendment now would accomplish nothing more than drawing out litigation based on demonstrably false allegations. The Court should exercise its discretion now to prevent this waste of party and judicial resources and unfairness to Fenwick.

Amendment would also prejudice Fenwick by further delaying a ruling on its motion to dismiss, which it filed two years ago. Fenwick's motion raises case-dispositive legal defenses which, if adopted by the Court, may eliminate (or at least substantially narrow) Plaintiffs' claims against Fenwick. *See, e.g.*, *Mullen v. Surtshin*, 590 F. Supp. 2d 1233, 1237 (N.D. Cal. 2008)

---

[6] Additionally, Plaintiffs' Motion does not mention additional amendments they propose to make, including to add and remove named Plaintiffs from the complaint (including removal of Leandro Cabo, the named Plaintiff who filed one of the original underlying complaints against Fenwick, *Cabo v. Fenwick & West LLP*, No. 23-3944 (N.D. Cal.)). Courts in this District have criticized plaintiffs for "slipp[ing] into [their amended complaints] a number of other changes" without "hint[ing] at any of these amendments" in their motion to amend. *Cordero v. Owre*, 2018 WL 11371098, at *2 (S.D. Fla. Feb. 9, 2018). Here, if a Plaintiff wishes to withdraw from or be added to this action, they should do so by following the appropriate Rules—and not through a fly-by-night amendment sought under other pretenses. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); Fed. R. Civ. P. 41(a)(2) (rules governing voluntary dismissals). This is especially true where the MDL is a putative class action involving Plaintiffs who purport to represent the interests of the putative class.

(denying leave to amend, in part, where "amendment is likely to cause unnecessary prejudice to" defendants with pending motions to dismiss and plaintiff "offers no excuse as to the undue delay"). Permitting Plaintiffs to amend now would force Fenwick to incur unnecessary costs to re-brief its motion to dismiss to respond to an amended complaint that suffers from the same core shortcomings when a plaintiff seeks to sue a lawyer for providing ordinary, lawful legal services to a client—something the law does not permit.

## CONCLUSION

Plaintiffs' request to amend their complaint against Fenwick is untimely, futile, and prejudicial. Allowing amendment at this stage based on stale, distracting, and false allegations would needlessly complicate the litigation and delay a ruling on Fenwick's motion to dismiss. The Court, respectfully, should deny Plaintiffs' Motion.

Date: August 25, 2025

Respectfully submitted,

/s/ Nicole K. Atkinson
DAVID R. ATKINSON
  Florida Bar No.: 767239
  datkinson@gunster.com
  mmargolese@gunster.com
  eservice@gunster.com
NICOLE K. ATKINSON
  Florida Bar No.: 167150
  natkinson@gunster.com
GUNSTER, YOAKLEY & STEWART, P.A.
Brickell World Plaza
600 Brickell Avenue, Suite 3500
Miami, FL 33131
Tel: (305) 376-6000, (561) 655-1980
Fax: (305) 376-6010, (561) 655-5677

>KEVIN S. ROSEN (*pro hac vice*)
>  krosen@gibsondunn.com
>MICHAEL HOLECEK (*pro hac vice*)
>  mholecek@gibsondunn.com
>GIBSON, DUNN & CRUTCHER LLP
>333 South Grand Avenue
>Los Angeles, CA 90071
>Tel: (213) 229-7000
>Fax: (213) 229-7520
>
>*Counsel for Defendant Fenwick & West LLP*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 25, 2025, I electronically filed the foregoing with the Clerk of Court using CM/ECF, and that the foregoing document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

>*/s/ Nicole K. Atkinson*
>NICOLE K. ATKINSON