**IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | No. 1:23-md-03076-KMM |
| | MDL No. 3076 |

THIS DOCUMENT RELATES TO:

*Garrison v. Bankman-Fried*,
No. 22-cv-23753-KMM

*Garrison v. Paffrath*,
No. 1:23-cv-21023-KMM

*Norris v. Brady*,
No. 1:23-cv-20439-KMM

*Podalsky v. Bankman-Fried,*
No. 1:22-cv-23983-KMM

*Garrison v. Golden State Warriors*,
No. 1:23-cv-23084-KMM

*Lam v. Bankman-Fried*,
No. 1:23-cv-22195-KMM

*Garrison v. Osaka*,
No. 1:23-cv-23064-KMM

*Garrison et al. v. Furia Esports LLC et al.*,
No. 1:24-cv-20895-RS

*Garrison et al. v. Lincoln Holdings LLC*,
No. 1:24-cv-00655-JMC

*Garrison et al. v. Mercedes-Benz Grand Prix Limited (d/b/a Mercedes-AMG Petronas Formula One Team),*
No. 1:23-cv-24480-JEM

*Garrison v. Office of The Commissioner of Baseball d/b/a Major League Baseball*,
No. 1:23-cv-24479-KMM

*--caption cont'd. on next page--*

*Garrison v. Riot Games, Inc.*
No. 1:24-cv-21296-KMM

*Garrison v. Wasserman Media Group, LLC and
Dentsu McGarry Bowen LLC,*
No. 1:23-cv-23378-KMM

**PLAINTIFFS' OPPOSITION TO THE PROMOTER DEFENDANTS'
MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM OR TO COMPEL
<u>ARBITRATION</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 1

RULE 12(b)(6) LEGAL STANDARD ....................................................................................... 3

ARGUMENT ........................................................................................................................... 3

I.     Plaintiffs Sufficiently Plead Florida, California, and Oklahoma Securities Claims 3

     A.    The Court's Prior Findings Support Upholding These Three State Claims 3

     B.    Plaintiffs Pleaded that a Securities Purchase Occurred. ............................ 4

     C.    Plaintiffs Plead Defendants Solicited Sales of Unregistered Securities ..... 4

          1.  The FTX Products Were Unregistered Securities................................. 4

          2.  Defendants Solicited the Sale of Unregistered Securities.................... 7

     D.    Plaintiffs' Damages Allegations are Sufficient......................................... 10

II.    Plaintiffs Adequately Allege a Nexus to Florida, California and Oklahoma ....... 11

III.   Plaintiffs Plausibly Allege Defendants' Actual Knowledge Under California Law…………………… ...................................................................................... 13

IV.   The Promoters are Liable as Unlicensed Broker-Dealers..................................... 18

V.    Plaintiffs' Claims Are Not Barred By the Statute of Limitations......................... 19

VI.   The Court Should Reject Defendants' Motion to Strike Damages Allegations ... 22

VII.  The Non-Signatory Promoters Cannot Compel Plaintiffs to Arbitrate Their Claims ……………………………………………………………………………23

     A.    The Parties Did Not Agree to Arbitrate Disputes ..................................... 23

     B.    These Parties Have No Agreement to Delegate Arbitrability to an Arbitrator................................................................................................... 25

     C.    Promoters Cannot Use Equitable Estoppel to Compel Arbitration .......... 28

     D.    Promoters Cannot Use an Agency Theory to Compel Arbitration ........... 31

     E.    The Class Action Waiver is Inapplicable.................................................. 32

     F.    Defendants Waived Any Purported Right to Compel Arbitration............ 32

## TABLE OF CONTENTS

**Page**

1.  Defendants Substantially Invoked the Litigation Machinery by Seeking Total Victory on the Merits and Litigating This Case....34

2.  Defendants Delayed Two Years Before Seeking Arbitration, Inconsistent with an Intent to Arbitrate and Fails to Give Fair Notice..................................................................................36

VIII.    Defendants are Not Entitled to a Stay........................................................ 38

CONCLUSION.......................................................................................................  40

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdo v. Fitzsimmons*, 2018 WL 11220494 (N.D. Cal. May 22, 2018)........................................ 12

*Abel Homes at Naranja Villas, LLC v. Hernandez*, 960 So. 2d 891 (Fla. 3d DCA 2007) ........... 25

*AccessNinja, Inc. v. PassNinja, Inc.* 2025 WL 2171606 (2025) ................................................... 19

*Akers v. Newby*, 2022 WL 527766 (M.D. Fla. Jan. 7, 2022) .......................................................... 3

*Allscripts Healthcare Sols., Inc. v. Pain Clinic of NW. Fla., Inc.*, 158 So. 3d 644 (Fla. Dist. Ct. App.  2014) ............................................................................................................................. 28, 29

*Amegy Bank Nat'l Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923 (11th Cir. 2015) 15, 18

*Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578 (S.D.N.Y. 2011) ................................. 12

*AREI II Cases*, 216 Cal. App. 4th 1015 (Ct. App. 2013)................................................................. 8

*Arthur Young & Co. v. Mariner Corp.*, 630 So.2d 1199 (Fla. 4th DCA 1994) ........................... 12

*Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287 (11th Cir. 2013) .............................. 15

*Bailey v. ERG Enterprises, LP*, 705 F.3d 1311 (11th Cir. 2013).................................................. 29

*Balkowitsch v. D & M Dev., Inc.*, 2015 WL 3403083  (E.D. Cal. May 27, 2015) ....................... 14

*Banq, Inc. v. Purcell*, 2024 WL 4164126 (9th Cir. Sept. 12, 2024) ............................................. 35

*Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512 (M.D. Fla. 1989) .................................... 11, 12

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016)................................... 26

*Beck Auto Sales v. Asbury Jax Ford, LLC*, 249 So. 3d 765 (Fla. 1st DCA 2018)................. 23, 25

*C.F.T.C. v. Lee*, 445 F. App'x 126 (10th Cir. 2011)..................................................................... 13

*C.F.T.C. v. Prestige Ventures Corp.*, 2010 WL 8355003 (W.D. Okla. Oct. 27, 2010)............... 13

*Carran v. Morgan*, 510 F. Supp. 2d 1053 (S.D. Fla. 2007)......................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

*Castros v. Signal Fin. Co. LLC*, 2018 WL 1137099 (S.D. Fla. Feb. 4, 2018)............................ 22

*Clark v. LoanCare, LLC*, 2019 WL 13261499 (M.D. Fla. Mar. 20, 2019) ................................. 31

*Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989). .......................................... 9

*Cress v. Nexo Fin. LLC*,  2024 WL 3187152 ............................................................................... 14

*Cress v. Nexo Fin. LLC*, 2023 WL 6609352 (N.D. Cal. Oct. 10, 2023)....................................... 11

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir. 1982) ..................... 40

*Culbertson v. Schuchert*, 110 F.3d 67 (9th Cir. 1997).................................................................. 18

*Davis v. White*, 795 F. App'x 764 (11th Cir. 2020)................................................. 33, 34, 36, 37

*De Ford v. Koutoulas*, 2023 WL 2709816 (M.D. Fla. Mar. 30, 2023).......................................... 8

*De Ford v. Koutoulas*, 2024 WL 1346942 (M.D. Fla. Mar. 29, 2024)........................................... 4

*Eisenbaum v. W. Energy Res., Inc.*, 267 Cal. Rptr. 5 (Cal. App. 4th Dist. 1990)........................ 20

*Erb v. Chubb Nat'l Ins. Co.*, 366 So.3d 1126, (Fla. 3d DCA 2022)............................................. 25

*Fitzer v. Am. Inst. of Baking, Inc.*, 2010 WL 1955974 (S.D. Ga. May 13, 2010) ................. 39, 40

*Fitzpatrick v. Vital Pharms., Inc.*, 2021 WL 6776238 (S.D. Fla. June 7, 2021) ......................... 11

*Florida Roads Trucking, LLC v. Zion Jacksonville, LLC*, 384 So. 3d 817 (Fla. Dist. Ct. App.
    2024) ....................................................................................................................................... 23

*Foster v. Jesup & Lamont Sec. Co.*, 759 F.2d 838 (11th Cir. 1985)............................................... 9

*Garn v. South Florida Stadium LLC* 2025 WL 1279071 (S.D. Fla. Mar. 26, 2025)........ 27, 31, 32

*Gaudreau v. My Pillow, Inc.*, 2022 WL 3098950 (M.D. Fla. July 1, 2022)................................. 37

*Ginsberg v. Vitamins Because LLC*, 2021 WL 7707264 (S.D. Fla. June 9, 2021)........... 28, 29, 32

## TABLE OF AUTHORITIES

**Page(s)**

*Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209 (2009) ............................................................. 28

*Goldstein v. Firer*, 2022 WL 17343638 (S.D. Fla. Nov. 16, 2022) ................................................ 12

*Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350 (11th Cir. 2011) .................................. 26, 33

*Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018) ........................ 33, 34, 37, 38

*Harper v. O'Neal*, 746 F. Supp. 3d 1360 (S.D. Fla. 2024) ............................................................. 5

*Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023) ....................................................... 37

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581 (9th Cir. 1993) ...................... 39

*Hodges v. Monkey Cap., LLC*, 2018 WL 9686569 (S.D. Fla. Aug. 14, 2018) ............................... 6

*Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*, 589 F.3d 917 (8th Cir. 2009) ..........
……………………………………………………………………………………………………...35, 36, 37

*Horton v. Hamilton*, 345 P.3d 357 (Okla. 2015) ................................................................... 19, 20

*Houghton v. Leshner*, 2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) ..................................... 8, 13

*Hubbard Const. Co. v. Jacobs Civ., Inc.*, 969 So. 2d 1069 (Fla. 5th DCA 2007) ........................ 25

*In re BitConnect Sec. Litig.*, 2019 WL 9104318 (S.D. Fla. Aug. 23, 2019) .............................. 6, 8

*In re Infocure Sec. Litig.*, 210 F. Supp. 2d 1331 (N.D. Ga. 2002) ................................................ 11

*In re Mirant Corp.*, 613 F.3d 584 (5th Cir. 2010) ................................................................. 35, 37

*Interim Healthcare, Inc. v. Interim Healthcare of Se. Louisiana, Inc.*, 2020 WL 3078531 (S.D.
    Fla. June 10, 2020) .............................................................................................................. 39

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ................................................................... 15

*Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481 (S.D. Cal. July 8, 2021) ......................... 15

*Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940 (Fla. Dist. Ct. App. 2004) ........................................... 32

## TABLE OF AUTHORITIES

Page(s)

*Kroma Makeup v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351 (11th Cir. 2017) .......... 24

*Kronk v. Landwin Grp. LLC*, 2013 WL 6621023 (Cal. Ct. App. Dec. 16, 2013) ........................ 19

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010) ............................................................ 21

*La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004) .......................................... 20

*Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343 (11th Cir. 2025) ............................. 25, 33

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................................. 38

*Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110 (11th Cir. 2020) .................................................. 28, 30

*Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011) ............................................. 28

*Leidel v. Coinbase, Inc.*, 729 F. App'x 883 (11th Cir. 2018) ...................................................... 25

*Liu v. Wu*, 2024 WL 516960 (S.D. Fla. Jan. 5, 2024), *appeal dismissed*, 131 F.4th 1295 (11th
 Cir. 2025) ............................................................................................................................. 31, 32

*Lubin v. Starbucks Corp.*, 122 F.4th 1314 (11th Cir. 2024) ...................................... 25, 26, 27, 30

*Lubin v. Sybedon Corp.* 688 F. Supp. 1425 (S.D. Cal. 1988) ...................................................... 13

*Marolda v. Symantec Corp. (672 F.Supp.2d 992)* ......................................................................... 2

*Marrero Enters. of Palm Beach, Inc. v. Estefan Enters., Inc.*, 2008 WL 11412087, (S.D. Fla.
 Dec. 16, 2008) ......................................................................................................................... 19

*Matter of Brady, Texas, Mun. Gas Corp.*, 936 F.2d 212 (5th Cir. 1991) .................................... 39

*Mehl v. Off. of Fin. Regul.*, 859 So. 2d 1260 (Fla. 4th DCA 2003) ............................................ 12

*Miranda v. Wells Fargo Bank, N.A.*, 2011 WL 13223667 (S.D. Fla. Sept. 29, 2011) .......... 22, 23

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) ................................................................... 26, 34

*Moss v. Kroner*, 197 Cal. App. 4th 860 (2011) ............................................................................. 4

# TABLE OF AUTHORITIES

**Page(s)**

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999) ........................................ 28, 30

*Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013) ............................................. 30

*Musolino v. Yeshiva Machzikei Hadas Belz*, 137 F. App'x 321 (11th Cir. 2005) ...................... 19

*Nance v. Comm'r*, 59 F.4th 1149 (11th Cir. 2023) ......................................................... 20

*NextPlat Corp. v. Seifert*, 2023 WL 2652577 (S.D. Fla. Jan. 9, 2023)........................................ 11

*Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262 (11th Cir. 2000).......................... 40

*Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158 (11th Cir. 2025)........................... 15, 16, 17

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015) ................................................................................................................ 15

*PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274 (11th Cir. 2021)............................ 15

*Pearson v. Deutsche Bank AG*, 2022 WL 951316 (S.D. Fla. Mar. 30, 2022) ............................ 16

*Peevy v. Jerace*, 2017 WL 11705425 (S.D. Fla. Dec. 21, 2017) .................................................. 40

*People v. Koenig*, 58 Cal. App. 5th 771  (2020)..................................................................... 14, 15

*Perlman v. Gen. Elec.*, 2024 WL 664968 (S.D.N.Y. Feb. 16, 2024) ............................................. 3

*Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476 (5th Cir. 2009) ................... 35

*Pickett v. Atl. Se. Airlines, Inc.*, 2007 WL 9701594 (N.D. Ga. Mar. 30, 2007) ..................... 39, 40

*Pino v. Cardone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022)....................................................... 8

*Pinter v. Dahl*, 486 U.S. 622 (1988) ......................................................................................... 8, 9

*Powell v. Vroom, Inc.*, 2022 WL 4096872 (N.D. Ala. Sept. 7, 2022) .......................................... 33

*Reves v. Ernst & Young*, 494 U.S. 56 (1990)................................................................................. 5

## TABLE OF AUTHORITIES

Page(s)

*Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195 (S.D.N.Y. 2023), *aff'd in part, vacated in part, remanded,* 2025 WL 615185 (2d Cir. Feb. 26, 2025) ..................................................... 9

*Rochambeau v. Brent Exploration, Inc.*, 79 F.R.D. 381 (D. Colo. 1978) ...................................... 19

*Rodriguez v. NCL (Bahamas) Ltd.*, 2025 WL 472427 (S.D. Fla. Feb. 12, 2025) .................. 31, 32

*Rolls–Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So.2d 768 (Fla. Dist. Ct. App.  2007) 28

*Roth v. Mercy Health Ctr., Inc.*, 246 P.3d 1079 (2011) ................................................................ 22

*Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521 (11th Cir. 1991) ................................... 8

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507 (11th Cir. 1990) ......................... 34

*S.E.C. v. Kik Interactive Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y. 2020) ........................................... 5

*S.E.C. v. Terraform Labs Pte. Ltd.* 684 F. Supp. 3d 170 (S.D.N.Y. 2023) ............................... 5, 6

*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ......................................................................... 5, 6

*Sagehorn v. Engle*, 141 Cal. App. 4th 452 (2006) ....................................................................... 20

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039 (S.D. Cal. 2019) ........................................................................................................................................ 3

*Santiago v. Neno Research, Inc.*, 2024 WL 4625783 (M.D. Fla. Oct. 30, 2024), *aff'd sub nom. Santiago v. Neno Research LLC*, 2025 WL 1793306 (11th Cir. June 30, 2025) ............. 26

*Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001) .......................................................... 21

*Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263 (11th Cir. 2015) .............................................. 28, 29

*Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, 797 F. Supp. 2d 439 (S.D.N.Y. 2011) ................... 17

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688 (N.D. Cal. Feb. 24, 2022) . 3

*SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020) ............................................... 5

**TABLE OF AUTHORITIES**

<b>Page(s)</b>

*See Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813 (11th Cir. 2013)............................. 22

*Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2019 WL 4600409 (M.D. Fla. Sept. 23, 2019) ....................................................................................................................................................... 11

*Soriano v. Experian Info. Sols., Inc.*, 2022 WL 6734860 (M.D. Fla. Oct. 11, 2022) ................... 37

*Staniforth v. Total Wealth Mgmt., Inc.*, 2023 WL 3805250 (S.D. Cal. June 2, 2023)................. 13

*Stewart v. Ragland*, 934 F.2d 1033 (9th Cir. 1991)....................................................................... 13

*Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6 (1971) ............... 6

*Tangshan Ganglu Iron & Steel Co., Ltd. v. Becker & Poliakoff, P.A.*, 2016 WL 10956531 (S.D. Fla. Sept. 12, 2016)............................................................................................................... 39, 40

*Tcherepnin v. Knight*, 389 U.S. 332 (1967)..................................................................................... 5

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005) ............... 27

*Terris v. Sprint Corp.*, 2023 WL 5863524 (M.D. Fla. Sept. 11, 2023) .................................. 35, 36

*U.S. Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469 (4th Cir. 1990)............... 39

*U.S. v. Bailey*, 327 F.3d 1131 (10th Cir. 2003).............................................................................. 18

*U.S. v. Davis*, 490 F.3d 541 (6th Cir. 2007) ................................................................................. 18

*U.S. v. Gross*, 661 F. App'x 1007 (11th Cir. 2016). ...................................................................... 17

*U.S. v. Santos*, 553 U.S. 507 (2008) .............................................................................................. 15

*Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250 (S.D. Fla. 2023)........................................................................................................................................ 11

*Wainberg v. Mellichamp*, 93 F.4th 1221 (11th Cir. 2024)...................................................... 20, 22

*Wallace v. JEY Hosp. Grp., LLC*, 2019 WL 2269742 (S.D. Fla. Feb. 1, 2019) .......................... 15

# TABLE OF AUTHORITIES

**Page(s)**

*Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920 (11th Cir. Feb. 8, 2023) ........
.......................................................................................................................................34, 35

*Washington Mutual Bank v. Law Office of Robert Jay Gumenick, P.C., 561 F. Supp. 2d 410*
*(S.D.N.Y. 2008)* ...................................................................................................... 39

*White Const. Co. v. State, Dep't of Transp.*, 860 So. 2d 1064 (Fla. 1st DCA 2003).................. 25

*Wildes v. BitConnect Int'l PLC* ("*BitConnect*"), 25 F. 4th 1341 (11th Cir. 2022) .................. 7, 13

*Williams v. TouchTunes Music Corp.*, 2014 WL 12626340 (C.D. Cal. June 13, 2014), *aff'd,* 639
Fed. Appx. 504 (9th Cir. 2016).................................................................................. 20

*Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004 (11th Cir. 1985) .............................. 16

*Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ................................ 14

**Statutes**
71 Oklahoma Statute § 1–301 ....................................................................................... 4

71 Oklahoma Statute § 1–610 ....................................................................................... 13

Cal. Civ. Proc. Code § 338 .......................................................................................... 19

California Corp. Code § 25210 ...................................................................................... 18

California Corp. Code § 25501 ...................................................................................... 18

California Corp. Code § 25503 ................................................................................... 13, 14

California Corp. Code § 25504 ............................................................................. 13, 14, 15, 21

California Corp. Code § 25507 ...................................................................................... 20

Florida Statute § 517.07 .......................................................................................... 3, 4

Florida Statute § 95.11 ............................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Rules**

AAA, *Consumer Arbitration Rules* R-7 ........................................................................... 33

Fed. R. Civ. P. 8 .......................................................................................... 11, 14, 19, 23

Fed. R. Civ. P. 9 .............................................................................................. 14, 15, 16

Fed. R. Civ. P. 12 ................................................................................................ 3, 23, 30

Fed. R. Civ. P. 15 ....................................................................................................... 21

The Promoters' second set of motions to dismiss Plaintiffs' First Amended Administrative Class Action Complaint ("FAC") in the "Promoter and Digital Creator" Track [ECF No. 908] and to compel arbitration [ECF Nos. 943–51] (collectively, the "Motion") must be denied because they repackage arguments already rejected by the Court in its May 7, 2025 Order [ECF No. 890] ("Order") sustaining Plaintiffs' claims for violations of Florida and Oklahoma securities laws. There is no dispute that all FTX Promoters (1) acted as agents for FTX, (2) in exchange for substantial payments to themselves and to FTX, and (3) promoted an alleged unregistered security. Plaintiffs have streamlined this Track by narrowing their claims against the Promoters to three state securities statutes (unlike other FTX Defendants, such as Fenwick, against whom Plaintiffs also bring aiding-and-abetting and RICO claims) to focus the MDL, the upcoming class certification process, and eventual trial. The Promoters' belated attempt—over three years in—to compel arbitration should be rejected because (1) none are parties to an arbitration agreement, and (2) they waived any such rights by waiting until after consolidation, years of MDL litigation, and this Court's order sustaining Plaintiffs' primary claims.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is well-acquainted with the facts in this case. *See, e.g.,* Order, 2–6. Plaintiffs' FAC was filed after the Court upheld Plaintiffs' claims under Florida's and Oklahoma's Securities laws on Plaintiffs' primary theory of liability that the Promoters were unlawfully selling unregistered securities. *Id.*, 14–20, 22. As the Court summed it up: "[w]hen Defendants urged people to invest in FTX, they solicited the purchases that followed." *Id.*, 18. While the sole

---

[1] This long-waived arbitration bid may be yet another a delay tactic to avoid discovery. Plaintiffs' motion to lift the stay [ECF No. 916] is pending, and only this Court's orders advance the MDL.

question *at this stage* is whether Plaintiffs' allegations state causes of action, the Court also held:

> … the Court takes note that when a plaintiff is a part of a class related to an advertising campaign, the plaintiff need not prove actual reliance on defendant's alleged misconduct. *See Marola*, 672 F. Supp. at 1004 ("When the plaintiff is part of a class, which defendant has targeted by an 'extensive and long–term advertising campaign,' individual class members need not prove reliance, a significant factor to consider at the certification stage.") (citations omitted).

Order, pp. 27–28, n.6. The Court dismissed with leave to amend Plaintiffs' similar claim under California law due to the need for additional allegations to establish Promoters' scienter. *Id.*, 20–22. The Court then directed Plaintiffs to file an amended complaint incorporating all of the Promoters for coordinated briefing [ECF No. 900].

Plaintiffs' FAC focused Plaintiffs' case on their primary theory of liability and incorporated all of the Promoters, including new factual allegations regarding the coordinated scope of their promotional campaign from documents recently obtained from the FTX bankruptcy estate and the extensive litigation, and subsequent trial of the FTX Insiders. *See, e.g.* FAC ¶¶ 325–338, 360–376, 397–413, 599. Plaintiffs' key additions also specifically bolstered their original allegations of Defendant's knowledge to sustain their California securities law claims, *e.g. id.*, ¶¶ 474–477, 547–550, 620–22, and added new allegations explaining why the FTX bankruptcy proceedings are only covering a fraction of investors' damages. *Id.*, ¶¶ 1203–1213. Given the Order and these new allegations, the Promoters recycle arguments the Court already rejected. Promoters end their Motion with a half-hearted, belated request to compel arbitration under FTX's terms of service, after the MDL Court consolidated all FTX cases here and only after this Court already entered the extensive Order. As explained below, this defense does not apply to these Promoters or to Plaintiffs' claims; even if it did, the Promoters waived their purported rights by waiting nearly *three years* into this litigation, after this Court invested substantial time sustaining Plaintiffs' primary liability theories. The Court should deny the Motion.

## RULE 12(b)(6) LEGAL STANDARD

The Court is familiar with the Rule 12(b)(6) standard. Order at 8. Several Promoters have already challenged the Florida, California, and Oklahoma securities claims under Rule 12, and the Court ruled on those arguments. Under Rule 12(g)(2), arguments that "could have—but did not—[appear]" in earlier motions are now barred. *Akers v. Newby*, 2022 WL 527766, at *3 (M.D. Fla. Jan. 7, 2022). The Court should also reject arguments already "considered and rejected." *Id.*; see *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1047 (S.D. Cal. 2019) (relying on reasoning in prior order where facts same in both complaints); *Perlman v. Gen. Elec.*, 2024 WL 664968, at *5 (S.D.N.Y. Feb. 16, 2024) (courts are "loathe to revisit an earlier decision in the absence of extraordinary circumstances"). Aside from new allegations specific to the California claim, the Florida and Oklahoma claims are unchanged and were already sustained, so the result should be the same even for Promoters bringing their first motion. *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2022 WL 20286688, at *2 (N.D. Cal. Feb. 24, 2022) (courts may "choose to decide the 'second motion to dismiss in the same way it decided the first.'"). The Promoters are therefore barred from raising or joining new arguments now.

## ARGUMENT

I.   **Plaintiffs Sufficiently Plead Florida, California, and Oklahoma Securities Claims**

   A. **The Court's Prior Findings Support Upholding These Three State Claims**

This Court correctly noted that the three state securities laws at issue are substantially similar, and Plaintiffs adequately pled those common elements in their prior complaint (with an additional intent requirement in California, addressed separately below). Order, 14–15, 20, 22. For example, § 517.07 of FSIPA provides that "[i]t is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security . . . is registered pursuant to this chapter." Fla. Stat. § 517.07 (1). Violators, including "agents" who "personally participated

or aided in making the sale" are jointly and severally liable to purchasers for rescission or, if the purchasers have sold the security, for damages. *See* Fla. Stat. § 517.211(1). Thus, to state a claim, Plaintiff must allege: (1) the FTX products were securities; (2) that were not registered (which Defendants concede); and (3) Defendants successfully solicited their sales. Plaintiffs continue to allege sufficient facts supporting these elements. *See De Ford v. Koutoulas*, 2024 WL 1346942, at *9 (M.D. Fla. Mar. 29, 2024) (Florida); *Moss v. Kroner*, 197 Cal. App. 4th 860 (2011) (California—with added knowledge requirement); 71 O.S. § 1–301 (Oklahoma).

At this stage, this should end the inquiry as to Plaintiffs' Florida and Oklahoma Securities claims, and Plaintiffs sufficiently bolster their California Securities claims, as discussed below.[2]

### B. Plaintiffs Pleaded that a Securities Purchase Occurred.

Defendants wrongly claim that Plaintiffs fail to allege they purchased securities. Mot., 10–12. But Plaintiffs' claims arise from their "purchase of and investment in the FTX Platform, FTT, and/or YBA." FAC ¶ 38; *see also id.* ¶¶ 54–70; 1215. More importantly, the Court has already held that Plaintiffs adequately pled this element of the claims under Florida and Oklahoma securities laws. Order, 20 (Plaintiffs state a § 517.07 claim); 22 (Plaintiffs state a 71 O.S. § 1–301 claim."). This element is exactly the same under California law.

### C. Plaintiffs Plead Defendants Solicited Sales of Unregistered Securities

#### 1. The FTX Products Were Unregistered Securities

This Court held "Plaintiffs plausibly allege that the FTX products were securities[,]" Order, 14–15, and that "[w]hen Defendants urged people to invest in FTX, they solicited the purchases that follow." *Id.*, 18. The facts and law have not changed since then; nor should that ruling.

Defendants effectively concede the YBAs and FTT are securities. Order, 10–11, 14. The

---

[2] This applies to Ortiz's Supplement, too (FAC ¶¶78, 495, 532, 555–578, 1190–91).

Court held it need not yet decide whether the FTX Platform is a security, *id.* at 14, and Plaintiffs agree that decision would be better made on a full factual record. Yet, as the Court already found, Plaintiffs plausibly allege each FTX product is a security under the *Howey* test. "Following *Howey*, an 'investment contract' under federal securities law is any 'contract, transaction, or scheme whereby a person [(1)] invests his money [(2)] in a common enterprise and [(3)] is led to expect profits solely from the efforts of the promotor or a third party.'" *S.E.C. v. Terraform Labs Pte. Ltd.* ("*Terraform Labs*"), 684 F. Supp. 3d 170, 193 (S.D.N.Y. 2023) (quoting *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946)). Courts have long recognized that "form should be disregarded for substance and the emphasis should be on economic reality." *S.E.C. v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177 (S.D.N.Y. 2020) (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)); *see also SEC v. Telegram Grp. Inc.* ("*Telegram Grp.*"), 448 F. Supp. 3d 352, 365 (S.D.N.Y. 2020); *Reves v. Ernst & Young*, 494 U.S. 56, 60–61 (1990).

As in the highly analogous *Terraform Labs* case, the question is whether the FTX products "and the means by which they were offered and sold [] amounted to a transaction or scheme that exhibited these three qualities." 684 F. Supp. 3d at 193. This analysis turns on "whether the crypto-assets and the 'full set of contracts, expectations, and understandings centered on the sales and distribution of [the assets]' amounted to an 'investment contract' under federal securities laws." *Id.* at 194 (quoting *Telegram Grp.*, 448 F. Supp. 3d at 379; *Howey*, 328 U.S. at 297–98).

The FTX platform was created to facilitate cryptocurrency trading, including the YBAs and FTT, which Defendants do not and cannot dispute were unregistered securities.[3] Moreover,

---

[3] Courts in this District have consistently held that digital assets similar to YBAs and FTTs may be securities. *See*, *e.g.*, *Harper v. O'Neal*, 746 F. Supp. 3d 1360, 1373 (S.D. Fla. 2024); *In re*

Plaintiffs allege that customer investments through FTX were, by default, placed in YBAs. FAC ¶¶ 279, 289. FTX promoted its platform to obtain customer investments, pool them together, and use them to generate returns that would be redistributed. *Id.* ¶¶ 291, 299. Thus, under the analysis in *Terraform Labs*, the FTX platform is plausibly a security because it was created and sustained through unregistered securities, with the fees from customer transactions, including in the sale and purchase of securities, used to build and maintain the platform, and customer investments were lent to third parties in exchange for FTT as collateral. FAC ¶¶ 189–91, 206, 213, 279–94; *see also Terraform Labs*, 684 F. Supp. 3d at 194 (declining "to erect an artificial barrier between the tokens and the investment protocols with which they are closely related for the purposes of [the Court's] analysis"); *see also Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 10 n. 7 (1971) (holding that "[n]ovel or atypical methods [of violating securities laws] should not provide immunity from the securities laws."). The FTX platform, like the citrus grove at issue in *Howey*, exhibits all three elements of a security. Defendants implicitly acknowledge this when they write: "Plaintiffs make no allegations that FTX users were dependent on the expertise or effort of FTX for their returns. FTX again merely provided the platform on which Plaintiffs traded fiat or crypto products[.]" Mot., 17. Without the FTX platform, *there would be no returns*. This Court was correct: "Defendants' promotion of FTX is an implicit promotion of the alleged securities offered by the platform." Order, 14.

Defendants' authorities do not change the Court's analysis. Most simply restate elements of the *Howey* test, *see, e.g.*, *Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *5 (S.D. Fla. Aug. 14, 2018), and others Defendants misconstrue, like arguing that *Terraform Labs* merely

---

*BitConnect Sec. Litig.*, 2019 WL 9104318, at *9 (S.D. Fla. Aug. 23, 2019).

examined whether "specific crypto tokens . . . were securities," *see* Mot., 18, despite this Court's (correct) analysis that "the court in *Terraform Labs* delineated its analysis to encompass not just the crypto-assets in isolation[.]'" Order, 13. Plaintiffs plausibly allege the FTX platform is a security. That is sufficient, and grounds to deny the Motion and Ortiz Supplement.

### 2.   Defendants Solicited the Sale of Unregistered Securities

This Court already held Defendants solicited investment in FTX and, thereby, in the YBAs and FTT. *See* Order, 14–20. The FAC continues to plausibly allege that Defendants directly encouraged their followers and fans to invest through FTX, which, at a minimum, meant investing in YBAs and, thus, securities, and that Plaintiffs did indeed purchase securities "as a result" of Defendants' solicitation. *See* FAC ¶¶ 54–70; *see also* ¶¶ 1239 ("The FTX Entities, with the Defendants' material assistance, offered and sold the unregistered YBAs to Plaintiffs"), 1242 ("Defendants materially assisted and/or personally participated with the FTX Group in the offering and selling of the FTX Platform, the YBAs and/or FTT Tokens Securities . . ."). Defendants' personal participation was intended to and indeed did enrich both Defendants and FTX. *Id*. ¶¶ 377–79, 411–13, 468–71, 502–06, 540–43, 566–68, 615–17, 645, 694, 733–34, 761–63, 785–87, 816–19, 866–68, 937–39, 983, 1053–57, 1113–20, 1166–68. It was critical to FTX's campaign to attract investors. *Id*. ¶¶ 1, 305, 382–86, 416–20, 474–77, 510–12, 547–50, 574–75, 620–22, 647–51, 699–702, 766–68, 792–94, 822–25, 871–75, 912, 943–46, 985–88, 1061–67, 1124–27, 1172–77, 1223. Promoters' aid and participation met § 517.211's standard.

As recognized by this Court, the Eleventh Circuit's decision in *Wildes v. BitConnect Int'l PLC* ("*BitConnect*"), 25 F. 4th 1341, 1346 (11th Cir. 2022) is instructive. Order, 15–18. In *BitConnect*, the court held that promoting unregistered securities (cryptocurrency) through mass communications on YouTube and the internet could give rise to liability under federal securities

laws. *Id.*; *see also Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1257–60 (9th Cir. 2022) (adopting the *BitConnect* court's reasoning and holding that a plaintiff "need not have alleged that he specifically relied on any of the alleged misstatements identified in the [complaint]" to state a claim for promotion of unregistered securities).[4] Defendants attempt to deflect from *BitConnect*'s holding by asserting it stands for the proposition that, in the context of digital assets, plaintiffs alleging violations of securities laws must allege solicitation of a "particular" security. *See* Mot., 13. This is irrelevant as Plaintiffs sufficiently point to Defendants' solicitation of all three plausible securities offered by FTX—YBAs, FTT, and the platform itself. *See, e..g.*, FAC ¶ 71.

Defendants' next argument—that they were mere "collateral participants"—is nonsensical. Mot., 20 (relying on *Pinter v. Dahl*, 486 U.S. 622 (1988)). Defendants were not accountants, lawyers, or other logistical or professional support persons who might be considered "collateral" to the sale. *See Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1527 (11th Cir. 1991) (noting *Pinter*'s intent to exclude from liability "lawyers and accountants whose involvement is that of merely providing professional services"); *AREI II Cases*, 216 Cal. App. 4th at 1015 (Ct. App. 2013) ("section 25504.1 imposes collateral liability upon persons who materially assist in a violation of section 25401 regardless of their business or legal relationship to the primary

---

[4] *See also De Ford v. Koutoulas*, 2023 WL 2709816, at *15–16 (M.D. Fla. Mar. 30, 2023) (stating claim for sale of unregistered securities based on promotion of cryptocurrency), *reconsideration denied*, 2023 WL 3584077 (M.D. Fla. May 22, 2023), *appeal dismissed*, 2023 WL 6213424 (11th Cir. July 31, 2023); *Houghton v. Leshner*, 2023 WL 6826814, at *3–5 (N.D. Cal. Sept. 20, 2023) (denying dismissal as "[s]olicitation is broadly construed," and promoter "could be a statutory seller liable for solicitation based on [internet] posts touting the investments and rates of return.").

violator.").

Instead, the Promoters advertised and promoted FTX, and were precisely "those who 'solicit' offers" for the investment in securities that the Supreme Court maintained could be held liable under securities laws. *See Pinter*, 486 U.S. at 650; *see generally* FAC ¶¶ 339–1178. Defendants' solicitation was "direct and active"—they directly and actively advertised and promoted FTX, thereby enriching both themselves and FTX. *See, e.g.*, *Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 636 (3d Cir. 1989). By contrast, Defendants' reliance on *Foster v. Jesup & Lamont Sec. Co*., is misplaced because the underwriter defendant was not alleged to have advertised or otherwise solicited sale of the security. 759 F.2d 838, 845 (11th Cir. 1985), *abrogated by Pinter v. Dahl*, 486 U.S. 622 (1988). Thus, as Defendants acknowledge, this Court held their promotion of FTX's platform was at least an implicit solicitation of FTT and YBAs. Order, 14.

*Risley*, entered months before the Order but which Defendants never raised, is also inapposite. In *Risley*, plaintiffs sued owners and controllers of a ***decentralized*** digital asset exchange which hosted, but had no other relation to, a variety of "scam tokens." *Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195, 206-07 (S.D.N.Y. 2023), *aff'd in part, vacated in part, remanded*, 2025 WL 615185 (2d Cir. Feb. 26, 2025). "Due to the decentralized nature of the [*Risley*] platform, the identity of these issuers [of scam tokens] is largely unknown, not just to Plaintiffs, but to Defendants as well." *Id.* at 213. Defendants therefore "facilitated—but w[ere] not party to—the contested transaction[,]" and the *Risley* court granted defendants' motion to dismiss plaintiffs' securities claims. *See id*. at 219–21. Here, by contrast, FTX *itself* with the Promoters' help (Order, 20) created and sold unregistered securities and ultimately committed fraud.[5]

---

[5] For the same reasons, the Court should deny the Wasserman and DentsuMB Supplement (*see*

### D.  Plaintiffs' Damages Allegations are Sufficient

This Court already held that Plaintiffs adequately alleged damages under both the Florida and Oklahoma Securities Acts. Order, 4, 20, 22. The FAC incorporates and expands on those allegations, detailing billions of dollars in unrecovered losses directly attributable to Defendants' misconduct. *See*, *e.g.*, *id.* ¶ 1 (class damages "exceed[] tens of billions of dollars"); ¶ 5 (harm stems not from market forces but from "the promotion and sale of unlawful financial products backed by false promises"); ¶¶ 54–70 (each Plaintiff deposited or invested funds through the FTX Platform and sustained damages); ¶ 231 (FTX stole more than $8 billion).

The FAC also adds an entire section addressing the FTX bankruptcy process and explaining why it will not make victims whole. FAC ¶¶ 1203–1213. Far from undermining damages, the pendency of a partial recovery underscores the ongoing harm: a partial payout confirms Plaintiffs' losses. Defendants cite no authority requiring Plaintiffs at the pleading stage to itemize every purchase, identify precise prices, or quantify income received. Defendants will have full opportunity to obtain detailed damages calculations in discovery. Nothing in § 517.211(1) requires Plaintiffs to plead any more specifics to sustain their complaint. The only case Defendants invoke,

---

FAC ¶¶ 7, 341–390, 397–425); the Ortiz Supplement; the Riot Games' Supplement (*see* FAC ¶¶ 105, 1129–1142, 1151, 1160–1177); the GSW Supplement (*see* FAC ¶¶ 80, 627–56); the Haslem Supplement (*see* FAC ¶¶ 77, 519–539, 545–52); and the MLB Supplement. Plaintiffs also allege that Defendant MLB Players, Inc. played a role in the MLB/FTX deal and in promoting the unregistered securities. *See, e.g.*, FAC, n.433 (article stating that "FTX.US has formed an agreement with MLB Players Inc. – a subsidiary of the MLB Players Association that manages all of the commercial activities for the organization"); *see also id.* ¶¶ 102, 954–982, 983, 985–992).

*Cress v. Nexo Fin. LLC*, 2023 WL 6609352 (N.D. Cal. Oct. 10, 2023), is inapposite. There, the plaintiff's own allegations contradicted his claim of damages. *Id.* at 15. Here, Plaintiffs' allegations are internally consistent and already deemed sufficient by this Court. To the extent Defendants speculate on the amount of Plaintiffs' damages or potential bankruptcy recoveries, those are factual questions not properly resolved on this motion. *Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2019 WL 4600409, at *9 (M.D. Fla. Sept. 23, 2019) (disputes over whether plaintiff "actually suffered a loss" are "beyond the scope of a motion to dismiss.").

Finally, Defendants' claim that Plaintiffs cannot simultaneously pursue rescission and damages under the California Securities Act is baseless. Rule 8 expressly permits pleading in the alternative, even inconsistently. Fed. R. Civ. P. 8(d)(2)–(3). Courts in this Circuit have repeatedly confirmed this fact. *Carran v. Morgan*, 510 F. Supp. 2d 1053, 1061–62 (S.D. Fla. 2007); *NextPlat Corp. v. Seifert*, 2023 WL 2652577, at *6 (S.D. Fla. Jan. 9, 2023).

## II.     Plaintiffs Adequately Allege a Nexus to Florida, California and Oklahoma

This Court already held that Plaintiffs sufficiently alleged a nexus to Florida, California, and Oklahoma at this pleading stage, and choice of law issues are better addressed at later stage and on a more complete factual record. Order, 37; *see Fitzpatrick v. Vital Pharms., Inc.*, 2021 WL 6776238, at *11 (S.D. Fla. June 7, 2021). "A single transaction can give rise to a violation of several states' securities anti-fraud acts." *See In re Infocure Sec. Litig.*, 210 F. Supp. 2d 1331, 1362 (N.D. Ga. 2002) (citing *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512 (M.D. Fla. 1989)). The FAC's straightforward allegations that Plaintiffs include Florida, California, and Oklahoma residents who purchased unregistered securities as a result of Defendants' solicitation directed at their home states are sufficient at the pleading stage. FAC ¶¶ 54–70; *see also Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 658 F. Supp. 3d 1250, 1264 (S.D. Fla. 2023).

FSIPA is broadly construed to protect investors. *Arthur Young & Co. v. Mariner Corp.*, 630 So.2d 1199, 1203 (Fla. 4th DCA 1994); *Mehl v. Off. of Fin. Regul.*, 859 So. 2d 1260, 1265 (Fla. 4th DCA 2003). It applies where *any* part of the sale occurs in Florida. *Goldstein v. Firer*, 2022 WL 17343638, at *5 (S.D. Fla. Nov. 16, 2022).[6] As the Court already held, "Plaintiffs sufficiently allege at the pleading stage that FTX's scheme took place in its Miami offices, and that FTX offered to sell YBAs and FTT from the state of Florida." Order, 36; *see also* FAC ¶¶ 1179-1202. The scheme and the events that led to the fraud and eventual collapse were anchored in Florida, FTX's domestic headquarters was in Miami, FTX orchestrated Defendants' promotion scheme from Miami, the offers to sell YBAs and FTTs originated in Florida, and FTX's influencer payments, campaign planning, and promotional materials were disseminated from Florida. FAC ¶¶ 21–24, 26, 28, 29, 31, 34, 48, 1189, 1190–1202. Moreover, at least three of the named Plaintiffs are residents of Florida. FAC ¶¶ 60, 61, 62. Likewise, a sizable portion of the Defendants reside or have a connection to Florida. FAC ¶¶ 73-78, 95-102, 1200-02. Unlike *Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578, 589 n.4 (S.D.N.Y. 2011), Plaintiffs allege more than Florida-based accounts—they allege the fraud was anchored in Florida.

Plaintiffs have likewise alleged a nexus as to California. Plaintiffs alleged that FTX was plastered on stadiums and billboards in California and across the country, ads and tweets were viewed nationwide, many Plaintiffs are residents of the State of California, and numerous defendants reside in or have a connection to California. *See* FAC ¶¶ 55–58, 79, 80, 83–86, 105, 106, 654. Furthermore, this Court has already found that the allegations "go beyond the realm of

---

[6] The same is true in California and Oklahoma. *See Abdo v. Fitzsimmons*, 2018 WL 11220494, at *25 (N.D. Cal. May 22, 2018); *Barnebey*, 715 F. Supp. at 1540.

'general advertising' and point to mass-influence campaigns designed to increase sales that were disseminated by Defendants who served as promoters and Brand Ambassadors." Order, 19; *see also* FAC ¶¶ 71–85, 305, 315–16. And rightly so; under Ninth and Eleventh Circuit precedent, Defendants engaged in a mass solicitation of securities. *See Houghton*, 2023 WL 6826814 at \*3; *BitConnect*, 25 F.4th at 1346. *Lubin v. Sybedon Corp.* is easily distinguished as it limited non-resident claims at class certification, not the pleading stage. 688 F. Supp. 1425 (S.D. Cal. 1988),

Similarly, Oklahoma's Securities Act applies if an offer originates from or is directed into the state. Okla. Stat. tit. 71 § 1–610(C); *C.F.T.C. v. Prestige Ventures Corp.*, 2010 WL 8355003, at \*7 (W.D. Okla. Oct. 27, 2010), *aff'd sub nom. C.F.T.C. v. Lee*, 445 F. App'x 126 (10th Cir. 2011). Plaintiff Garrison, an Oklahoma resident, was solicited and injured by Defendants. ¶ FAC 67. For the same reasons, the Court should deny the Ortiz Supplement.

## III. Plaintiffs Plausibly Allege Defendants' Actual Knowledge Under California Law

Defendants incorrectly argue that Plaintiffs' California Securities Law claim requires "intent to deceive or defraud." Mot., 28. But liability for selling unregistered securities under Cal. Corp. Code § 25503 is strict, and does not require any intent to deceive or defraud. *Stewart v. Ragland*, 934 F.2d 1033, 1040 (9th Cir. 1991); *Staniforth v. Total Wealth Mgmt., Inc.*, 2023 WL 3805250, at \*5 (S.D. Cal. June 2, 2023). Because the Court found the Promoters solicited and personally participated in the sales, this claim should proceed. Order, 18.

Likewise, California Securities Law assigns joint and several liability for the sale of unregistered securities under Cal. Corp. Code § 25504, for "every agent who materially aids in the act or transaction." *Moss*, 197 Cal. App. 4th at 871. Like the underlying violation, there is no intent element, and in fact, it is the defendant that has the burden to prove as an affirmative defense that they had "no knowledge of or reasonable grounds to believe" the existence of the violation. Cal.

Corp. Code § 25504; *see Balkowitsch v. D & M Dev., Inc.*, 2015 WL 3403083, at \*2 (E.D. Cal. May 27, 2015) ("[Section] 25504 also provides an affirmative defense to a director who lacked knowledge of the underlying facts of the violation, but this affirmative defense is not relevant on Defendant Micheli's motion to dismiss."); *People v. Koenig*, 58 Cal. App. 5th 771, 804 (2020) ("Such persons can only escape liability by establishing lack of knowledge or lack of negligence in failing to discover [the underlying violation]."). Importantly, this means that both the direct and secondary liability claims Plaintiffs bring need only satisfy Rule 8. *See Cress v. Nexo Fin. LLC*, 2024 WL 3187152, at \*4-7 (denying motion to dismiss § 25503 claim under Rule 8); *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at \*17-18 (N.D. Cal. Feb. 26, 2020) (denying dismissal of § 25504 claims for selling crypto currency under Rule 8 but granting § 25401 misrepresentation claim under Rule 9).

Promoters also cannot argue that they lacked notice of the claim that they materially assisted FTX as agents. The FAC clearly seeks to hold Promoters liable for the assistance they gave. FAC ¶¶ 40, 321, 380-86, 416-20, 474-77, 510-12, 547-50, 574-75, 620-22, 647-51, 699-702, 737-39, 766-68, 774, 792-94, 822-25, 871-75, 912, 940, 943-46, 985-88, 1058, 1061-67, 1121, 1124-27, 1169, 1172-77, 1217, 1223. Defendants themselves acknowledge that "Plaintiffs assert that the Promoters acted as agents of FTX" and make various arguments denying their material assistance. Mot., 15 n.6, 36; *see* FAC ¶¶ 9, 1238. And as discussed above, their argument that they "were not FTX's Agents" (Mot. at 11) has already been rejected by this Court. ECF No. 265, 6–7; Order, 19–20; Mot., 11.[7]

---

[7] Count Two alleges "Violations of the California Securities Law Cal. Corp. Code §§ 25110, *et seq.*" FAC ¶¶ 1240–51. Plaintiffs need not specify each statutory section so long as Defendants

As the Court considered, California Securities Law also allows for secondary liability under Cal. Corp. Code § 25504.1 which "imposes collateral liability . . . regardless of their business or legal relationship to the primary violator." *Koenig*, 58 Cal. App. 5th at 803; Order, 20–21. While § 25504.1 adds an "intent to deceive or defraud" element, as the Eleventh Circuit recently confirmed, and as Rule 9(b) makes clear, Plaintiffs do not need to plead intent "with specificity because in alleging fraud knowledge may be alleged generally." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1179 (11th Cir. 2025) (cleaned up); Fed. R. Civ. P. 9(b). Accordingly, a "reasonable inference" based on the "factual content" in the complaint is all that is needed at the motion-to-dismiss stage. *Otto Candies*, 137 F.4th at 1180. Further, Promoters' implication that direct evidence is required—akin to a lawyer ordering the defendant to "stop selling"—is also incorrect. Mot., 23–30. Only circumstantial evidence is required; direct evidence is not even needed for summary judgment or trial. *See Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1297 (11th Cir. 2013) (knowledge "'will be provable (as knowledge must almost always be proved) by circumstantial evidence'") (quoting *U.S. v. Santos*, 553 U.S. 507, 521 (2008)); *Amegy Bank Nat'l Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923, 929 (11th Cir. 2015) (finding

---

have fair notice of the claim. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 698–99); *see also Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021). Courts routinely reject dismissal based on mislabeling or incomplete statutory citation. *See Wallace v. JEY Hosp. Grp., LLC*, 2019 WL 2269742, at *4 (S.D. Fla. Feb. 1, 2019), *r&r adopted*, 2019 WL 2267191 (S.D. Fla. Feb. 25, 2019); *Ketayi v. Health Enrollment Grp.*, 2021 WL 2864481, at *11 n.9 (S.D. Cal. July 8, 2021).

actual knowledge proven at trial despite "no direct evidence of [defendant]'s actual knowledge").[8]

Plaintiffs explicitly allege that while Promoters solicited transactions, they knew the securities they were selling were unqualified. *See, e.g.*, FAC ¶¶ 382, 416, 474, 510, 547, 574, 620, 650, 737, 766, 792, 822, 871, 897, 943, 985, 1061, 1124, 1172; *Pearson v. Deutsche Bank AG*, 2022 WL 951316, at *5 (S.D. Fla. Mar. 30, 2022) (Rule 9(b) met "if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud such that the defendants have fair notice of the nature of plaintiff's claim"). And all reasonable inferences must be given to Plaintiffs at this stage. *Otto Candies*, 137 F.4th at 1177, 1188.

Intent to deceive or defraud can also be inferred by the "surrounding circumstances and expectations of the parties." *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985). At the time of the events described in the FAC, the crypto community argued to courts, regulators, and legislatures that crypto currencies were not securities. *See* FAC ¶¶ 194, 232, 285, and generally, Factual Allegations, §§ H, I, J, K. Defendants argue that the Court can infer from this self-created ambiguity that they did not know they were selling unregistered securities. *See, e.g.*, Mot., 29 & n.11. This is an inference that is *not* allowed at this stage. Rather, the proper inference is what is alleged in the FAC: The main reason FTX elicited the help of the Promoters was to build a false narrative that FTX was "'safe' and 'compliant'" and to influence Plaintiffs and Class Members to invest. FAC ¶ 305. Promoters accepted being "overpaid millions," for as little as a 60 second ad or being called Brand Ambassadors, to specifically solicit transactions on FTX's Platform. *See, e.g.*, FAC ¶¶ 7, 16, 437, 468, 540, 546, 568, 616, 636, 724, 762, 818, 918, 999,

---

[8] *Otto Candies* clarifies that the pleading standard for actual knowledge under Rule 9(b) is lower than the standard used in the Court's prior Order. *See* 137 F.4th at 1179.

1079, 1135. It is reasonable to infer each Promoter knew the purpose of their own role in selling unregistered securities. *Otto Candies*, 137 F.4th at 1178 ("A defendant has knowledge of an underlying fraud if it has a general awareness that its role was part of an overall improper activity.") (citation omitted). Indeed, allegations that a defendant "personally profited," as here, supports an inference of knowledge. *U.S. v. Gross*, 661 F. App'x 1007, 1020 (11th Cir. 2016).

Defendants conveniently ignore the numerous factual allegations of actual knowledge and attempt to discount them as demonstrating only "constructive-knowledge." Mot., 28. Contrary to their assertions, ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ Promoters that were self-described crypto experts knew they were selling unregistered securities, and the FAC alleges that other Defendants actually conducted due diligence (which some of them concede they performed). *Id*. ¶¶ 307–11, 344, 365, 386, 393, 420, 649, 700, 875, 988. Promoters that are major corporations are *required* to conduct due diligence. *Id*. ¶¶ 386, 420, 649, 875, 988; *Schwarz v. ThinkStrategy Cap. Mgmt. LLC*, 797 F. Supp. 2d 439, 444-45 (S.D.N.Y. 2011) ("The issue here is not what the defendants knew about the . . . fraud, but what they knew about their own due diligence process when they made allegedly false representations to plaintiffs about that process."). Each Promoter had significant incentives, and some even concealed and lied about them. FAC ¶¶ 344–79, 411–13, 431, 434, 468–71, 502–06, 540–46, 556, 566–68, 580, 582, 615–17, 645, 694, 697, 733–34, 761–63, 785–87, 816–19, 866–68, 893, 937–39, 983, 1053–57, 1113–20, 1135, 1166–68. The Court can also infer from finance related statements themselves that they were intended to sell unregistered securities, and the SEC even warned that persons making endorsements could be liable for violating federal securities law

"for participating in an unregistered offer and sale of securities."  ¶ 35; *see, e.g.*, ¶ 412 ███████

██████████████████████████████████████ ¶ 473 ("Now [FTX is] for all kinds

of investing."), ¶ 500 (SBF "gets the job in compliance which is why he's working so hard to get

regulation."). Covering their internet footprints also raises the inference of intent to deceive or

defraud. *Id*. ¶¶ 463, 490, 492, 565, 899, 931, 1102, 1107, 1047, 1161; *U.S. v. Davis*, 490 F.3d 541,

549 (6th Cir. 2007) ("'Intent can be inferred from efforts to conceal the unlawful activity . . . and

from profits.'"); *U.S. v. Bailey*, 327 F.3d 1131, 1140 (10th Cir. 2003) ("'[i]ntent may be inferred

from evidence that the defendant attempted to conceal activity'"). And the Promoters had

significant and close relationships with FTX. *See* FAC ¶¶ 348, 406, 397-99, 403, 410, 430, 432,

436, 450, 520, 555, 628, 664, 668, 722, 743, 782, 803, 806, 842, 899, 917, 956, 996, 1075-77,

1132-33, 1136-40; *Amegy Bank*, 619 F. App'x at 929 (close business/social relationships support

inference of actual knowledge of fraud). The facts alleged in the FAC suffice at this stage.[9]

## IV.   The Promoters are Liable as Unlicensed Broker-Dealers

Promoters argue in a footnote that they are not liable under Cal. Corp. Code §§ 25210(b)

and 25501.5. Mot., 30 n.12. But the claim is not that they actually qualified as broker-dealers;

rather, it is that they were not licensed when they sold unregistered securities. Defendants' own

cited authority states, "[a] license is . . . required if a person induces or attempts to induce the

purchase or sale of any security." *Culbertson v. Schuchert*, 110 F.3d 67-68 (9th Cir. 1997). They

do not argue that they were licensed, and the Court has already found that "[w]hen Defendants

urged people to invest in FTX, they solicited the purchases that followed." Order, 18.

---

[9] For the same reasons, the Court should deny Wasserman, DentsuMB, Ortiz, Curry (*see* FAC ¶¶

306, 579–625) and MLB Supplements.

## V.      Plaintiffs' Claims Are Not Barred By the Statute of Limitations

As a preliminary matter, Furia, Major League Baseball, MLB Players, Inc., Mercedes F1, Riot Games, and the LCS Defendants (the "Additional Defendants") do not (and cannot) argue that any statute bars Plaintiffs' Florida claims or the California unlicensed broker-dealer claim, and thus any challenge to these claims is waived. *AccessNinja*, 2025 WL 2171606, at *3 n.4.[10]

Furthermore, Additional Defendants' SOL argument fails on Plaintiffs' unregistered securities claims under California and Oklahoma law for three reasons: (1) SOL cannot be decided on a motion to dismiss; (2) Defendants have not shown Plaintiffs had actual notice making their claims untimely; and (3) the complaints relate back to the August 11, 2023 Administrative Complaint, rendering them timely even under Defendants' alleged expiry date.

First, whether Plaintiffs' claims are time-barred is a fact issue, not one for dismissal. *See Marrero Enters. of Palm Beach, Inc. v. Estefan Enters., Inc.*, 2008 WL 11412087, at 4 (S.D. Fla. Dec. 16, 2008) (SOL is an affirmative defense under Rule 8(c)); *Horton v. Hamilton*, 345 P.3d 357, 360–61, 366 (Okla. 2015) (when SOL begin to run and plaintiff's diligence are fact questions for the jury); *Rochambeau v. Brent Exploration, Inc.*, 79 F.R.D. 381, 387 (D. Colo. 1978) (fact dispute over discovery of securities violation precluded dismissal; motion converted to summary judgment as defendant submitted evidence). Accordingly, this argument should be addressed on

---

[10] Fla. Stat. § 95.11(4)(f) (two and five years); *Musolino v. Yeshiva Machzikei Hadas Belz*, 137 F. App'x 321, 323 n.1 (11th Cir. 2005) ("Florida's two-year statute of limitations for Chapter 517 claims is a discovery statute."); Cal. Civ. Proc. Code § 338(a); *Kronk v. Landwin Grp. LLC*, 2013 WL 6621023, at *6 (Cal. Ct. App. Dec. 16, 2013) (three years).

summary judgment, not at the pleading stage.[11]

Even if SOL issues could be resolved on a motion to dismiss, Additional Defendants have not shown that California's statute bars these claims. Plaintiffs need not plead discovery dates because limitations is an affirmative defense. *See Nance v. Comm'r*, 59 F.4th 1149, 1154 (11th Cir. 2023); *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024). In any event, the FAC shows key facts discovered within one year of filing, and § 25507 (a) applies an actual notice—not inquiry notice—standard.[12] *See Eisenbaum v. W. Energy Res., Inc.*, 267 Cal. Rptr. 5, 12 (Cal. App. 4th Dist. 1990). Plaintiffs have pled facts contradicting Additional Defendants' notice arguments.[13]

---

[11] And on this "meager" factual record, i.e., Additional Defendants only point to the filing dates for the complaints and the FTX bankruptcy, Mot., 30–31, summary judgment would still be inappropriate. *See Horton*, 345 P.3d at 366 (denying summary judgment where defendants failed to show when a reasonably diligent plaintiff should have discovered the claim).

[12] Plaintiffs still had to discover facts on qualification, exemptions, agency, or material assistance. Additional Defendants' cited authorities are clearly inapplicable to California and Oklahoma statutes of limitations and repose: (1) *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004) (federal securities claim); (2) *Sagehorn v. Engle*, 141 Cal. App. 4th 452, 461 (2006) (federal securities claim); and (3) *Williams v. TouchTunes Music Corp.*, 2014 WL 12626340 (C.D. Cal. June 13, 2014), *aff'd,* 639 Fed. Appx. 504 (9th Cir. 2016) (raising only inquiry notice in a fraud case with SEC filings, not statute of limitations/repose or actual notice for non-filings).

[13] For example, allegations against Furia stem from a promotional agreement revealed in an exhibit authenticated at SBF's trial beginning October 3, 2023. FAC ¶ 918. Allegations against Mercedes

Additional Defendants argue Plaintiffs had actual notice when they sued the original Defendants. Mot., 31. But notice as to one party does not automatically extend to others because the claims arise from different facts. The original complaint did not plead California claims, *see Garrison v. Bankman-Fried*, No. 22-cv-23753, ECF No. 1 (S.D. Fla.), and allegations of material assistance provided under §§ 25504 and 25504.1 vary by defendant. *See generally* ECF No. 908.

Finally, all claims in the FAC relate back to the Administrative Complaint filed August 11, 2023, within one year of November 11, 2022. ECF No. 179. Rule 15(c)(1)(C) allows relation back when (1) the "conduct, transaction, or occurrence" is the same as the prior complaint; (2) the defendant had notice; and (3) the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Oklahoma's relation back rule (nearly identical to the Federal rule) can also be used, and the "'more forgiving principle of relation back'" governs. *Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962 (11th Cir. 2001); Fed. R. Civ. P. Rule 15 (c)(1)(A). Importantly, the Supreme Court confirmed this rule "asks what the prospective *defendant* knew or should have known . . . not what the *plaintiff* knew or should have known." *Krupski v. Costa Crociere S. p. A*., 560 U.S. 538, 548 (2010) (emphasis in original); *see Roth v. Mercy Health Ctr., Inc*., 246 P.3d 1079, 1088–89 (2011) (applying *Krupski*

---

F1 rely on December 1, 2022 and July 16, 2023 news reports. *Id.* ¶¶ 1055, 1064. Allegations against MLB come from December 23, 2022 FOIA productions. *Id.* ¶¶ 957, 977. Claims against Mercedes F1, MLB, Riot Games, and LCS are further supported by informal discovery. *Id.* ¶¶ 360–66, 370–74, 959–60. Other allegations are based on information obtained later (including bankruptcy filings related to Riot Games and LCS) and in some instances on information and belief. *See id.* ¶¶ 936, 965, 977, 980–81, 1052, 1135, 1141–42, 1158–59, 1165, 1168.

to Oklahoma relation back law).

The Additional Defendants show nothing about what Plaintiffs knew, and Plaintiffs need not negate limitations defenses at this stage. *Wainberg v. Mellichamp*, 93 F.4th at 1224. Both complaints have the same nucleus of facts: "a global, multibillion-dollar fraud made possible only through the knowing promotion and participation of dozens of powerful insiders and celebrity influencers." FAC ¶ 1. Additional Defendants had formal agreements to promote FTX, and they scrubbed websites and social media once FTX suits were filed. *Id.*, ¶¶ 918–919, 965, 974, 996, 999, 1002, 1133, 1136, 1137, 1141; *see also id.*, ¶¶ 931, 1047, 1161. That is enough to establish relation back. *See Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 816 (11th Cir. 2013) (rejecting arguments that "there is no evidence that any of them had notice or knew or should have known they would be targets of the litigation"); *Roth*, 246 P.3d at 1087.

## VI.   The Court Should Reject Defendants' Motion to Strike Damages Allegations

The Eleventh Circuit and district courts stress that motions to strike are "drastic" and "disfavored." *See, e.g., Miranda v. Wells Fargo Bank, N.A.*, 2011 WL 13223667, at *1 (S.D. Fla. Sept. 29, 2011) (Moore, J.) (motions to strike are "time wasters"); *Castros v. Signal Fin. Co. LLC*, 2018 WL 1137099, at *2 (S.D. Fla. Feb. 4, 2018) (even technically appropriate motions to strike denied absent prejudice to movant). Defendants fall far short of the standard for granting this extreme relief. They move to strike FAC ¶¶ 1203–1209, which address why the FTX bankruptcy cannot make victims whole—allegations tied directly to damages, a core element on which Defendants claim more information is warranted. Defendants even concede potential bankruptcy recoveries bear on damages. Mot., 23–24. Having acknowledged their relevance, Defendants cannot credibly seek to strike them.

Nor can Defendants show prejudice. The allegations neither confuse the issues nor unfairly

burden them; they simply give notice of the damages theory to be tested in discovery and at trial. Striking them would improperly resolve disputed facts at the pleading stage, which Rule 12(f) forbids. *Miranda*, 2011 WL 13223667, at *1. Defendants also ask the Court to strike portions of Plaintiffs' prayer for relief, but Plaintiffs may seek all potentially available relief, including alternative and inconsistent remedies, as permitted by Rule 8. Fed. R. Civ. P. 8(d).

## VII.    The Non-Signatory Promoters Cannot Compel Plaintiffs to Arbitrate Their Claims

After almost three years of litigation, including full briefing and the detailed Order, the Promoters now seek arbitration. But they are non-signatories to both the FTX US terms of service ("US TOS") and the FTX Trading terms of service ("International TOS") (collectively, "the Terms"), which belong to parties not sued here, and Promoters cannot rely on them. Further, equitable estoppel and agency theories are unavailable to these Defendants such that they cannot compel arbitration as non-signatories. Regardless, they have waived any purported right.

### A.    The Parties Did Not Agree to Arbitrate Disputes

The Promoters concededly are not parties to any of the Terms. The US TOS's arbitration clause is limited to disputes "BETWEEN YOU AND FTX.US", Motion Exhibit 5 at 1 and 13 §30(g), with narrow language defining the parties to the arbitration clause as "We" and "You and FTX.US." *Id.* at 13 §30(a). This language limits the scope of arbitrable disputes to those between the signatories—"You and FTX.US"—and does not include Defendants. *See Beck Auto Sales v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. 1st DCA 2018) (arbitration clause limited to "disputes 'between the parties' to the arbitration agreement" meant that nonparty was not within its scope); *Florida Roads Trucking, LLC v. Zion Jacksonville, LLC*, 384 So. 3d 817, 820 (Fla. Dist. Ct. App. 2024) (arbitration clause applied to claims brought by signatories or their sureties and the non-signatory Defendants were neither, "so the claims that they [sought] to arbitrate plainly [fell]

- 23 -

outside the scope of the arbitration clause."). Permitting the non-signatory Promoters to invoke the arbitration clause would "effectively be rewriting the agreement between the signatories[.]" *Kroma Makeup v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1356 (11th Cir. 2017).

Similarly, the Promoters are not parties to the International TOS, which also includes clear clauses disclaiming actions taken by third parties. *See* Mot., Ex. 6 at 18 § 19.3 and 26 §38.9 (Third Party Rights). The Third Party Rights section provides that "the Terms are not intended and shall not be construed to create any rights or remedies in any parties other than you and FTX Trading and its Affiliates, which each shall be a third party beneficiary of the Terms;" and "no other person shall assert any rights as a third party beneficiary hereunder . . . ." *Id.* at 27 § 38.9. Defendants have not shown that they are "Affiliates" under the International TOS or that they contracted with an entity which was an affiliate, and until then the International Terms explicitly exclude them.

Yet, Defendants argue without any proof that they are "Indemnified Parties" under the International TOS. "Indemnified Parties" are defined as "FTX Trading, its ***Affiliates*** and service providers and, in each case, their Personnel" and, under the International TOS, "affiliate" is defined as "in relation to a party, any person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such party." Mot. Ex. 6 at 22 § 29.1 (emphasis added) and 29 § 1.1. But Defendants do not distinguish which ███████████████ were "contractors" (and therefore Personnel) with and whether that entity would be considered an affiliate under the International Terms. Therefore, Defendants have not preliminarily shown that they are parties entitled to enforce the arbitration clause. *See Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018); *see also Beck Auto Sales, Inc.* 249 So. 3d at 768.[14]

---

[14] Nevertheless, even if the Promoters are all "Indemnified Parties" under the International TOS,

**B.  These Parties Have No Agreement to Delegate Arbitrability to an Arbitrator**

That the US TOS contains a delegation clause is irrelevant. It is inapplicable and unenforceable here because there is no arbitration agreement between the parties. *See*, *e.g.*, *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1318–20 (11th Cir. 2024); Mot., 34–35; Ex. 5 12 § 30(c). *See also Lamonaco v. Experian Info. Sols., Inc*., 141 F.4th 1343, 1346-49 (11th Cir. 2025) (even where delegation clause was "clear and unmistakable," disputes are referred to the arbitrator only after "the court determines . . . a valid arbitration agreement exists"). Whether an arbitration agreement exists—and if so, whether Defendants have waived it by litigating this case for years—are issues for the Court. *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353-54 (11th Cir. 2011).

"[A]rbitration agreements are no more enforceable than an average contract," so courts

---

*see* Mot., 37, they still cannot compel arbitration because **not a single Promoter** "exercise[d] its right to arbitration under this Section 38.12 by notice in writing to all parties to the Terms within 7 days of being notified in writing of the Dispute" as required for Indemnified Parties. Mot. Exhibit 6 at 27 § 38.12.8. Florida courts enforce time limits for initiating arbitration or notifying signatories to an arbitration clause of a dispute. *See Abel Homes at Naranja Villas, LLC v. Hernandez*, 960 So. 2d 891, 894 (Fla. 3d DCA 2007); *Hubbard Const. Co. v. Jacobs Civ., Inc.*, 969 So. 2d 1069, 1072 (Fla. 5th DCA 2007); *Erb v. Chubb Nat'l Ins. Co.*, 366 So.3d 1126, 1127–28 (Fla. 3d DCA 2022); *White Const. Co. v. State, Dep't of Transp.*, 860 So. 2d 1064, 1067-68 (Fla. 1st DCA 2003). More than seven days have passed since the Promoters were notified in writing of this Dispute through the filing of the lawsuits, so they did not comply with the condition precedent to arbitration and have waived their right to arbitrate. *See infra* at § VII(F).

cannot compel a plaintiff to arbitrate with a defendant who was not subject to the agreement invoked. *Lubin*, 122 F.4th at 1320 (citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)). Accordingly, the Eleventh Circuit has ruled that, "notwithstanding an arbitration agreement that incorporates the AAA Rules, it is improper for an arbitrator to decide threshold issues of arbitrability when the parties dispute whether an arbitration agreement exists between them." *Santiago v. Neno Research, Inc.*, 2024 WL 4625783, at *3 (M.D. Fla. Oct. 30, 2024), *aff'd sub nom. Santiago v. Neno Research LLC*, 2025 WL 1793306 (11th Cir. June 30, 2025).

The Promoters are not signatories to the US TOS, and they do not enjoy its benefits via any agency, equitable estoppel, or third-party beneficiary theories; in other words, there is no contract between the parties, and thus the Court must decide the threshold issue of arbitrability between the Promoters and Plaintiffs. *See Lubin*, 122 F.4th at 1318-20 (holding that "absent an agreement between [Plaintiff] and [Defendant, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'") (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016)). Defendants admit that they "are not parties to the ToS[.]" Mot., 35. Rather, the US TOS is between West Realm Shires Services Inc. dba FTX US and Plaintiffs. Mot. Ex. 5 at 1. Furthermore, as explained *infra* at § VII(D), Defendants have not met their burden of proving that they were FTX's agents (a fact with which they strongly disagree) and therefore cannot rely on agency principles to compel arbitration under the US TOS. Nor does equitable estoppel apply. *Infra* § VII(C). Consequently, there is no arbitration agreement between Plaintiffs and Defendants, and the delegation clause in the US TOS has no effect. *See*, *e.g.*, *Lubin*, 122 F.4th at 1319-24 (affirming denial of motion to compel arbitration where plaintiff "never signed or otherwise agreed to the arbitration agreement with" defendant and equitable estoppel and third-party beneficiary theories did not apply).

*Garn v. South Florida Stadium LLC* also supports the inapplicability of the delegation clause. 2025 WL 1279071 (S.D. Fla. Mar. 26, 2025) (denying motion to compel arbitration). The *Garn* defendants—a non-signatory stadium operator and a non-signatory soccer confederation—sought to compel arbitration based on Terms of Service that the plaintiff had signed with third party Ticketmaster, the ticket vendor for a soccer match. *Id.* Reasoning that "the same contractual principles appl[ied]" as in *Lubin*, the court ruled that the delegation clause would not apply as to the non-signatories unless agency, equitable estoppel, or third-party beneficiary theories applied. *Id.* at *3–5. So, the court denied the motion to compel arbitration, despite the existence of a delegation clause in the Terms of Service that required arbitration of all threshold questions, because neither the express terms of the agreement, nor agency, equitable estoppel, or third-party beneficiary theories afforded defendants the right to invoke the arbitration agreement between plaintiff and the third-party ticket vendor. *Id.* at *6.

Defendants also mistakenly rely on *Terminix* to argue that the US TOS's delegation clause forecloses the Court's consideration of waiver of arbitrability via its incorporation of the AAA Rules. Mot., 35. But *Terminix* is inapposite; the contracts there were between the plaintiff and the defendant, unlike here where Defendants are invoking a contract to which they are not a party. *See Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1329 n.1 (11th Cir. 2005).

In sum, the US TOS's delegation clause has no effect because the US TOS is not a contract between Plaintiffs and Defendants, neither by its express terms nor any other theories, thus the waiver issue is not delegated to an arbitrator and is instead for the Court to decide. *See, e.g.*, *Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1118 (11th Cir. 2020) (holding that although AAA Rules governed the arbitration clauses at issue, the plaintiffs had not agreed to anything with defendants because there was no contract between them, therefore "the district court was correct

to resolve the motion to compel arbitration instead of immediately sending it to an arbitrator.").

### C.  Promoters Cannot Use Equitable Estoppel to Compel Arbitration

"Under Florida Law, the general rule is that a non-signatory to an agreement containing an arbitration provision cannot compel a signatory to submit to arbitration." *Ginsberg v. Vitamins Because LLC*, 2021 WL 7707264, at *4 (S.D. Fla. June 9, 2021) (citing *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011); *Allscripts Healthcare Sols., Inc. v. Pain Clinic of NW. Fla., Inc.*, 158 So. 3d 644, 646 (Fla. Dist. Ct. App.  2014) (citing *Rolls–Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So.2d 768, 770 (Fla. Dist. Ct. App.  2007))). Florida courts recognize only two narrow circumstances where a non-signatory may invoke an arbitration provision based on an equitable estoppel theory: "(1) when the plaintiff-signatory 'must rely on the terms of the written agreement in asserting [its] claims,'; or (2) when the plaintiff-signatory alleges 'substantially interdependent and concerted misconduct' by the signatories and non-signatories, and such alleged misconduct is "founded in or intimately connected with the obligations of the underlying agreement." *Lavigne*, 967 F.3d at 1118-19 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 218–19 (2009) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999))) (cleaned up). "The idea . . . is that a signatory plaintiff should not be allowed to sue to essentially enforce its rights under a contract and, at the same time, evade an arbitration agreement in the contract…." *Schreiber v. Ally Fin. Inc.*, 634 F. App'x 263, 265 (11th Cir. 2015). Accordingly, "'[t]he plaintiff's actual depend[e]nce on the underlying contract in making out the claim against the non-signatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel.'" *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1320 (11th Cir. 2013) (citation omitted).

First, Defendants argue that Plaintiffs "expressly rely on the ToS and assertions that those

terms contained false representations or that FTX violated its own ToS." Mot., 36.[15] This is both

false and irrelevant; Plaintiffs bring three claims, all for the sale of unregistered securities.

Plaintiffs do not rely on the Terms to prove any false representations or that FTX violated any of

its Terms because those are not elements of any of the three statutory claims. *See Bailey*, 705 F.3d

at 1321 ("A party relies on the terms of a contract when the party needs the underlying contract to

make out his or her claim against the non-signatory. The signatory must attempt to hold the non-

signatory to the terms.") (internal citations omitted).

Instead, "for this exception to apply, 'the claim ... must, at a minimum, raise some issue

the resolution of which requires reference to or construction of some portion of the contract itself,'"

*not* just a "simple but-for relationship" where the "plaintiff would not own the product except for

the contract." *Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Florida, Inc.*, 158 So. 3d at

647 (Fla. 3d DCA 2014) (citations omitted); *see also Ginsberg*, 2021 WL 7707264, at *5 ("A mere

but-for relationship between plaintiff's claims and the contract is insufficient to warrant equitable

estoppel.") (quoting *Schreiber*, 634 F. App'x at 264-65). Here, "simple but-for relationship" is all

there is. While without agreeing to the Terms the Plaintiffs would not have been able to "own the

product" of using the FTX platform, no reference back to the terms is needed to prove that

Defendants solicited Plaintiffs to purchase the unregistered securities in the first place.

Second, the Defendants fatally fail to argue that the concerted misconduct was also

"founded in or intimately connected with the obligations of the underlying agreement." *Lavigne*,

---

[15] Defendants misread the FAC; ¶ 9 does not mention the Terms, and ¶¶ 162–63 and 169 reference

"terms of service" only in describing how crypto exchanges operate. They are not pled to establish

elements of the unregistered securities claims, and ¶ 169 does not mention FTX's Terms at all.

967 F.3d at 1119. The majority of Defendants' long string of citations attempting to show *concerted* misconduct are really about their own actions, *see* Mot., 36 (excerpting FAC ¶¶ 14, 322, and 651, but regardless, concerted misconduct alone is not enough under the law.

In the seminal case on equitable estoppel in this Circuit, *MS Dealer*, the Eleventh Circuit clarified that in interpreting the second circumstance of equitable estoppel, "it is important to note that Franklin's obligation to pay the $990.00 charge arose under the [contract] **and** that she specifically alleges" concerted misconduct. *MS Dealer Serv. Corp.*, 177 F.3d at 948 (emphasis added). Here, it is dispositive that Plaintiffs are not suing under or asserting a claim dependent upon any of the FTX Terms. *See, e.g.*, *Lavigne*, 967 F.3d at 1118–20 (evaluating both variations of equitable estoppel and concluding that, as plaintiffs were not suing over duties under the agreements, there was no reason to apply either variation equitable estoppel); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (without relationship of collusion to "terms of the underlying contract," no basis for equitable estoppel). The claims against Defendants would be the same regardless of the FTX Terms. While the Defendants systematically go through the "essential elements" of the state securities laws, they only briefly refer to the Terms in their Rule 12(b)(6) defense for a portion of the *Howey* test for the FTX Platform, Mot., 17 ███████████████ ███████████████████████████ because the Terms are wholly unnecessary to the resolution of the three **statutory** claims brought in this action, which are not grounded in contract. *See Lubin*, 122 F.4th at 1321-22 (holding that equitable estoppel did not compel non-signatory to arbitration because he was suing under statutory duties which did not arise out of the contract and was not suing to enforce or avoid a provision of the contract).

Regardless, since FTX is not a party to this action—nor any action in this MDL—equitable estoppel does not apply. *Liu v. Wu*, 2024 WL 516960, at *4–5 (S.D. Fla. Jan. 5, 2024), *appeal*

*dismissed*, 131 F.4th 1295 (11th Cir. 2025) (finding the "second circumstance" ***inapplicable*** because claims were not alleged against signatory to the agreement); *Clark v. LoanCare, LLC*, 2019 WL 13261499, at *3 (M.D. Fla. Mar. 20, 2019) (defendant could not rely on concerted action circumstance where other signatory not named as defendant). Here, Plaintiffs have not named any defendants that are signatories to either Terms contract. So long as Plaintiffs do not name any FTX Entities as a defendant, the second circumstance of equitable estoppel cannot apply.

### D. Promoters Cannot Use an Agency Theory to Compel Arbitration

Defendants "have the burden of establishing the agency relationship, if one exists" and if "the [prongs] of establishing an agency relationship [have] not been specified, the Court cannot conclude that the [Defendants] can enforce the [Terms] based on an agency theory." *Clark*, 2019 WL 13261499 at *2–3. Yet, they "strongly disagree" that they were FTX's agents. Mot., 36. Defendants have not met *their* burden of proving that they were FTX's agents and therefore cannot rely on agency principles to compel arbitration.

If the Defendants prove they are agents—which they elsewhere disclaim—"a mere agency relationship between a signatory and a non-signatory is insufficient to allow the non-signatory to compel arbitration." *Garn*, 2025 WL 1279071 at *4 ("As Garn does not bring any claims against Ticketmaster, only … equitable estoppel—is relevant here.") (quoting *Rodriguez v. NCL (Bahamas) Ltd.*, 2025 WL 472427, at *9 (S.D. Fla. Feb. 12, 2025)). Instead, a non-signatory alleging an agent-principal relationship is permitted to compel arbitration where "the signatory … must rely on the terms of the written agreement in asserting its claims against the non-signatory or when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* (quoting *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla.

Dist. Ct. App. 2004) (cleaned up) ("We reject the broad construction of the agency exception urged by appellants, which would permit a non-signatory agent to a signatory to invoke arbitration simply because the agency relationship exists.")).

Here, as in *Garn* and *Liu*, Plaintiffs only bring claims against non-signatories to the contract. *Liu*, 2024 WL 516960 at *5 ("In this action, Plaintiff does not make any allegations against FIBF. Further, Plaintiff brings all claims against Defendant in his individual capacity rather than as a representative of FIBF."). Defendants only argue the mere presence of an agency relationship, which without more is insufficient to invoke arbitration as a non-signatory. *Koechli*, 870 So. 2d at 944 ("[A] non-signatory cannot compel arbitration merely because he is an agent of one of the signatories."); *Liu*, 2024 WL 516960, at *5 (same); *Rodriguez.*, 2025 WL 472427, at *9 (similar); *see* Mot., 36 (arguing only that Plaintiffs assert Defendants were agents of FTX and that agency is an available method for non-signatories to compel arbitration).

### E.  The Class Action Waiver is Inapplicable

The US TOS class action waiver does not apply for two independent reasons. First, Defendants are not parties or beneficiaries of the US TOS. *Garn*, 2025 WL 1279071, at *2–5 n.8. Second, by its plain text, the waiver binds Plaintiffs only as to claims against FTX.US, not others. Mot. Ex. 5 at 13 § 30(f). In any event, the Promoters waived reliance on the provision through their litigation conduct. *See infra* § VII(F). The Court should therefore reject application of the waiver here. *Ginsberg*, 2021 WL 7707264, at *5, *9 n.12.

### F.  Defendants Waived Any Purported Right to Compel Arbitration

Defendants have waived their right to arbitration by actively litigating this case for the past

two years.[16] Since Plaintiffs filed their Administrative Class Action Complaint in August 2023,

ECF No. 179, Defendants have sought to dismiss this case on the merits, ECF Nos. 265, 266, 271,

506; asked this court for a stay pending resolution of those motions to dismiss, ECF Nos. 573, 581,

643, 693; and insisted that litigation continue when Plaintiffs requested a stay, ECF Nos. 325, 328.

Defendants did all of this while sitting on the very terms they now rely on—which they received

no later than September 2023. *See* ECF No. 264-2. The doctrine of arbitration waiver was designed

to prevent exactly this kind of abrupt change in tactics. As the Eleventh Circuit has explained:

> The judicial system was not designed to accommodate a defendant who elects to
> forego arbitration when it believes that the outcome in litigation will be favorable
> to it, proceeds with extensive discovery and court proceedings, and then suddenly
> changes course and pursues arbitration when its prospects of victory in litigation
> dim. Allowing such conduct would ignore the very purpose of alternative dispute
> resolution: saving the parties time and money.

*Davis v. White*, 795 F. App'x 764, 768 (11th Cir. 2020) (quoting *Gutierrez v. Wells Fargo Bank,*

*NA*, 889 F.3d 1230, 1236 (11th Cir. 2018)).

---

[16] Whether a party has waived the right to arbitrate is for the court to decide, since courts are better

positioned to police forum-shopping. *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353-

54 (11th Cir. 2011). Delegation occurs only if the agreement unmistakably assigns waiver to the

arbitrator. *See Lamonaco*, 141 F.4th at 1348 (agreement stated arbitrator would decide whether

parties "through litigation conduct or otherwise, *waived the right to arbitrate*" (emphasis

supplied)). Waiver is not delegated merely because enforceability or other threshold issues are.

*See Powell v. Vroom, Inc.*, 2022 WL 4096872, at *6–7 (N.D. Ala. Sept. 7, 2022). The FTX Terms

and AAA rules are silent on waiver. ECF No. 264-2 at 13; AAA, *Consumer Arbitration Rules* R-

7 (amended and effective May 1, 2025),

https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf.

A party waives their right to arbitrate when "under the totality of the circumstances, the party has acted inconsistently with the arbitration right . . . ." *Warrington v. Rocky Patel Premium Cigars, Inc.*, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) (quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). Key factors indicating that a party has acted inconsistently with their right to arbitration include whether they have "substantially invoked the litigation machinery prior to demanding arbitration" and whether they provided "fair notice to the opposing party and the [d]istrict [c]ourt" of their intention to arbitrate. *Id.* at *2 (alteration in original) (quoting *Gutierrez*, 889 F.3d at 1236). The waiver inquiry must "focus on [the party]'s conduct" and whether they "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]" *Morgan v. Sundance, Inc.*, 596 U.S. at 419.[17] Defendants have waived both by seeking a victory on the merits and participating in the litigation *and* by delaying their request to arbitrate.

### 1. Defendants Substantially Invoked the Litigation Machinery by Seeking Total Victory on the Merits and Litigating This Case

Seeking a ruling on the merits substantially invokes the litigation machinery in a way that is inconsistent with a right to arbitrate—parties may not pivot to arbitration merely because their arguments on the merits were unsuccessful. *Davis*, 795 F. App'x at 768-69 (holding that defendants acted inconsistently with the right to arbitrate by filing a motion to dismiss which "sought to resolve the parties' entire dispute on the merits."). Parties may not "play heads I win, tails you lose, which is the worst possible reason for failing to move for arbitration sooner[.]" *Id.*

---

[17] The Supreme Court held that courts "may not devise novel rules to favor arbitration over litigation," *id.* at 418 (2022), rejecting the "heavy burden" previously placed on parties arguing waiver, *see Gutierrez*, 889 F.3d at 1236.

at 770 (quoting *Hooper v. Advance Am., Cash Advance Centers of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009)); *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."). Even if the court has not yet ruled on a merits-based motion, the fact that a party reasonably *anticipates* a decision on the merits may be sufficient for waiver if the party still delayed invoking arbitration in hopes of "avail[ing] themselves of a favorable ruling." *See Banq, Inc. v. Purcell*, 2024 WL 4164126, at *2 (9th Cir. Sept. 12, 2024) ("What matters here is that Defendants moved to dismiss Banq's claims on the merits, not the district court's actions . . ."); *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 482 (5th Cir. 2009) ("Nor does it matter that Jindal contends that it did not seek a ruling—it knew, or should have known, that a decision on the merits was reasonably likely . . ."). A party may not attempt to determine if the judicial process will be favorable to them before deciding to arbitrate.

Filing other motions or participating in case management proceedings to influence the course of the judicial process also shows "a clear intent to litigate" inconsistent with arbitration. *See Warrington*, 2023 WL 1818920, at *2 (before moving to compel arbitration, defendant sought remand, "participated in the district court's case management proceedings[,]" "moved to dismiss," and "filed for multiple extensions"); *see also Terris v. Sprint Corp.*, 2023 WL 5863524, at *3 (M.D. Fla. Sept. 11, 2023) (defendant filed "exhaustive" motion to dismiss and "participated in negotiations with opposing counsel concerning the Case Management Report"). Even if the case is only in early stages, such active participation substantially invokes the litigation machinery and supports waiver. *See Warrington*, 2023 WL 1818920, at *2.

Here, the Defendants substantially invoked the litigation machine by asking this Court to resolve the case on the merits in their prior motions to dismiss. They only seek arbitration now that

their initial strategy failed to bring them the victory they had hoped for. The previous motions to dismiss for failure to state a claim were not merely procedural, but rather "sought to resolve the parties' entire dispute on the merits." *Davis*, 795 F. App'x at 769; ECF Nos. 265, 271, 506.

Defendants who sought a stay pending resolution of the motion to dismiss—Furia, Monumental Sports, Riot Games, MLB, and Mercedes F1—fare no better. These Additional Defendants explicitly argued that they expected to benefit from this Court's ruling on the merits. *See, e.g.*, ECF No. 573 at 5 (arguing a stay would allow "all parties [to] benefit from the Court's evaluation of the novel legal theories presented by plaintiffs"); ECF No. 581 at 3 (seeking a stay on grounds that "[t]he Promoters' Motion to Dismiss is fully briefed and will clarify—and potentially entirely resolve—Plaintiffs' substantively identical claims against Riot Games"). Additional Defendants who filed motions to dismiss and those who sought a stay pending the resolution of those motions "wanted to see how the case was going in federal district court before deciding whether [they] would be better off there or in arbitration." *Davis*, 795 F. App'x at 770 (quoting *Hooper*, 589 F.3d at 922). Defendants may not compel arbitration now merely because they failed to get the case dismissed on the merits.

Defendants' intention to litigate is also clear from their participation in various case management proceedings and other motions before this Court. Defendants have submitted status reports without mentioning the possibility of arbitration, ECF No. 46; opposed the appointment of a Special Master, ECF No. 188; requested extensions, ECF No. 428; and even insisted that litigation continue when Plaintiffs requested a stay, ECF Nos. 325, 328. After dedicating much time and resources to litigating this case, Defendants cannot "change course and demand arbitration now." *Terris*, 2023 WL 5863524, at *3.

**2.     Defendants Delayed Two Years Before Seeking Arbitration, Inconsistent with an Intent to Arbitrate and Failing to Give Fair Notice**

Parties must provide "fair notice at a relatively early stage of litigation" of their intention to arbitrate. *Soriano v. Experian Info. Sols., Inc.*, 2022 WL 6734860, at *3 (M.D. Fla. Oct. 11, 2022) (quoting *Gutierrez*, 889 F.3d at 1236). They "cannot say nothing and drag the plaintiff (and the Court) through months of needless litigation[.]" *Id.* Courts in this Circuit have consistently found that participating in litigation for multiple months while failing to invoke arbitration supports waiver. *See*, *e.g.*, *id.* (finding "no fair notice" where defendant "waited nearly half-a-year before saying anything about arbitration"); *Davis*, 795 F. App'x at 770 (eighteen-month delay); *Gaudreau v. My Pillow, Inc.*, 2022 WL 3098950, at *8 (M.D. Fla. July 1, 2022) (eight-month delay).

Defendants here failed to provide fair, timely notice of their intention to arbitrate. Plaintiffs filed their Administrative Class Action Complaint in August 2023, approximately two years ago. ECF No. 179. Defendants have been actively litigating this case for the entirety of the two years since; the Celebrity Defendants' and YouTuber Defendants' motions to dismiss were both filed in September 2023, ECF Nos. 265, 271, and the motion to dismiss by Dentsu and Wasserman was filed in February 2024, nearly eighteen months ago, ECF No. 506. Celebrity Defendants' mere mention of arbitration almost two years ago in a footnote, ECF No. 271 at n.21, confirms that they were aware of any potential arbitration right—as were all other Defendants by extension—and chose not to invoke it until now. It certainly does not provide sufficient notice to prevent waiver now that they purport to invoke it. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023) ("[A] statement by a party that it has a right to arbitration in pleadings and motions is not enough to defeat a claim of waiver." (citation omitted)); *In re Mirant Corp.*, 613 F.3d at 591 (although Defendant "reserve[ed] that right [to arbitration] in its motions to dismiss," a party "cannot keep its right to demand arbitration in reserve indefinitely"); *Hooper*, 589 F.3d at 923 ("[Defendant]'s

statement in its motion to dismiss—that it might seek arbitration if the district court denied its motion to dismiss—did not forestall the prejudice Plaintiffs suffered. A reservation of rights is not an assertion of rights."). Despite their brief mention of the possibility of arbitration, Defendants continued to act for two years as if they intended to litigate, as described above.[18]

For years Defendants knew of the terms they now rely on but they continued to actively litigate in this Court, seeking to have this case dismissed on the merits. Only now, after substantial resources have already been poured into this case, do Defendants attempt to alter course. These actions "smack[] of outcome-oriented gamesmanship played on the court and the opposing party's dime" and are precisely what waiver doctrine is intended to prevent. *Gutierrez*, 889 F.3d at 1236. Defendants' repeated actions actively participating in this litigation are wholly inconsistent with an intention to arbitrate. The Court should deny Defendants' belated request to compel arbitration.

## VIII.   Defendants are Not Entitled to a Stay

The Defendants' request for a stay should be denied because they fail to meet their burden to show a stay is warranted, and because the harm to Plaintiffs would outweigh any benefit.

Motions to stay are disfavored and require a "clear case of hardship or inequity," especially where, as here, the delay caused by the stay would harm Plaintiffs and the class. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (stays should be granted "[o]nly in rare circumstances"); *Interim*

---

[18] Defendants claimed they could not raise arbitration until they "obtain[ed] the agreements binding Plaintiffs." ECF No. 271 at n.21. But they knew of these terms as early as June 2023 from SBF's Status Report, *see* ECF No. 43; June 21, 2023, Status Conf. Tr. at 49:21–50:4, and SBF attached them to his September 21, 2023 motion to dismiss. They were also continuously accessible on FTX.US and FTX.com via Archive.org. They have had them for over two years.

*Healthcare, Inc. v. Interim Healthcare of Se. Louisiana, Inc.*, 2020 WL 3078531, at *9–10 (S.D. Fla. June 10, 2020) (citation omitted). As the Defendants have not made *any* showing of hardship or inequity, no stay should be granted. *See id.* at *10 (movant must show that "good cause and reasonableness" support a stay).

Defendants ask the Court to "wait for the bankruptcy proceedings to run their course" and see "whether Plaintiffs will fully recover through those proceedings." Mot., 39. However, an automatic stay under a bankruptcy petition generally ends when, as here, the debtor's reorganization plan is confirmed, because the estate ceases to exist. *Matter of Brady, Texas, Mun. Gas Corp.*, 936 F.2d 212, 218 (5th Cir. 1991); *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir. 1993); *U.S. Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1475 (4th Cir. 1990). Further, as Plaintiffs explained in Section I(D), *supra*, Plaintiffs' damages far exceed any amount they can recover through the bankruptcy. In these circumstances, "a stay is inappropriate." *Tangshan Ganglu Iron & Steel Co., Ltd. v. Becker & Poliakoff, P.A.*, 2016 WL 10956531, at *3 (S.D. Fla. Sept. 12, 2016) ("[I]n light of the fact that the bankruptcy action will affect only the issue of damages in this action, a stay is inappropriate…").

Line Defendants here, the *Tangshan* defendants also cited *Washington Mutual* and asked this Court to stay that case pending a related bankruptcy action to prevent the plaintiffs from obtaining a "double recovery." *Tangshan*, 2016 WL 10956531, at *3. In declining to issue the stay, this Court held in *Tangshan* that the *Washington Mutual* case "[wa]s distinguishable [] because here, unlike [there], Plaintiffs' alleged damages far exceed the potential recovery from the Bankruptcy proceedings." *Id.* at *3. The Court should rule the same here.

The other non-binding cases the Defendants rely on, *Fitzer* and *Pickett* (Mot., 39–40), are distinguishable for the same reasons; both involved overlapping injury claims *fully* addressed by

bankruptcy funds and found minimal prejudice from a stay. *See Fitzer v. Am. Inst. of Baking, Inc.*, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010); *Pickett v. Atl. Se. Airlines, Inc.*, 2007 WL 9701594, at *2 (N.D. Ga. Mar. 30, 2007). Here, because Plaintiffs' damages exceed any recovery they can receive through the bankruptcy, "a stay is inappropriate." *Tangshan*, 2016 WL 10956531, at *3. Moreover, Plaintiffs will be severely prejudiced if they are forced to wait years before pursuing their claims, which was not at issue in *Fitzer* or *Pickett*. *Fitzer*, 2010 WL 1955974, at *2 (parties did not argue stay would cause undue prejudice); *Pickett*, 2007 WL 9701594, at *2 ("Of particular significance to the court" was "that the plaintiffs will be minimally prejudiced").

Defendants also argue a red herring—that the "ongoing bankruptcy proceedings may prevent [them] from obtaining vital discovery from FTX." Mot., 40. But they have not even tried to seek discovery, nor do they explain what "vital" discovery they need or why they would be prevented from obtaining it. Nor is the automatic stay under § 362 implicated here. *See Peevy v. Jerace*, 2017 WL 11705425, at *2 (S.D. Fla. Dec. 21, 2017) (no stay where claims against non-debtors are independent and where "case [did] not present sufficiently 'unusual circumstances' to warrant a stay.").

Finally, Defendants' request to stay this litigation until the "resolution of the FTX bankruptcy proceedings," Mot., 38, is "indefinite in scope" and therefore improper. *See Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264-65 (11th Cir. 2000); *see also CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982) (holding "indefinite or immoderate stay" was improper). As it could be years until the bankruptcy is completed, and it will not make Plaintiffs whole, the request for a stay should be denied.

## CONCLUSION

Based on the foregoing, Plaintiffs request that the Court deny Defendants' Motion.

Dated: August 26, 2025                              Respectfully submitted,

| **Plaintiffs' Co-Lead Counsel** | |
|---|---|
| | By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>8883 S.W. 131 Street<br>Miami, FL 33176<br>Mailing Address:<br>P.O. Box 653409<br>Miami, FL 33175Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com |
| **Committee Members** | |
| Laurence D. King<br>Matthew George<br>Clarissa Olivares<br>**KAPLAN FOX & KILSHEIMER LLP**<br>1999 Harrison Street, Suite 1560<br>Oakland, CA  94612<br>Telephone:  (415) 772-4700<br>lking@kaplanfox.com<br>mgeorge@kaplanfox.com<br>colivares@kaplanfox.com | Barbara C. Lewis<br>Florida Bar No. 118114<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>8883 S.W. 131 Street<br>Miami, FL 33176<br>Mailing Address:<br>P.O. Box 653409<br>Miami, FL 33175<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>service@moskowitz-law.com |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the forgoing was filed on August 26, 2025,

with the Court via CM/ECF system, which will send notification of such filing to all attorneys of

record

By: *<u>/s/ Adam M. Moskowitz</u>*
Adam M. Moskowitz
Florida Bar No. 984280