UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

THIS DOCUMENT RELATES TO:

Law Firms

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR COMPLAINT AGAINST DEFENDANT FENWICK & WEST LLP**

## INTRODUCTION

Fenwick & West LLP's ("Fenwick") Opposition reflects Defendants' MDL strategy over the past three years: strenuously contest every single issue, block any merits discovery, drive up costs for all FTX victims, and continue billing their hourly clients millions. Fenwick does not dispute a single alleged fact in the 464 paragraphs. Instead, it advances alleged "good faith" arguments, ranging from absurd to illogical. For example, Fenwick argues that because Plaintiffs dismissed Defendant Sullivan after reviewing actual evidence, Plaintiffs must also now dismiss them. Fenwick's most absurd argument is that *it is the MDL Plaintiffs* who are actually "seeking delay," because its motion to dismiss has been fully briefed with the Court for more than a year.[1]

Although they have to agree that Plaintiffs allege Fenwick created fake shell corporations, coordinated theft with Alameda and FTX, all to further and advance the FTX conspiracy, it opposes amendment, by arguing that somehow all of these alleged fraudulent activities were typical "routine legal services" that are provided by law firms to clients every day. (Opp. at 2–3, 14). But the Proposed Amended Complaint ("PAC")[2] alleges in extraordinary detail exactly how Fenwick was not just a passive advisor, but was a central architect of the FTX enterprise, designing

---

[1] This Court may even have ordered Fenwick to file their response, ECF No. 972, because these arguments may not be made in good faith.

[2] This is Plaintiffs' first substantive amendment. Plaintiffs filed an Administrative Consolidated Complaint at the Court's direction when the MDL was first organized, which did not amend the claims on any of the merits. *See* PAC ¶¶ 22–23 (explaining that the earlier "administrative" complaints were filed solely for consolidation purposes and "not in order to cure deficiencies").

1

corporate structures, drafting agreements, and legitimizing the façade that enabled billions of dollars in unregistered securities offerings and the theft of customer funds.

The PAC details how Fenwick created and maintained the very entities through which FTX and Alameda concealed their confirmed fraud; backdated sham agreements to justify confirmed illegal practices; structured tax and regulatory schemes to avoid detection; and publicly promoted FTX (an unregistered security) to investors and the market. (PAC ¶¶ 30–36, 302–08). These extremely specific detailed actions are far removed from typical and daily legal representation, demonstrating Fenwick's knowing, substantial assistance in the FTX fraud.

Under Rule 15's liberal standard, the Court should grant leave to amend absent undue delay, prejudice, or futility. None exist here. While the Motion to Dismiss has been fully briefed, Plaintiffs thought it would be helpful to the Court to update the pleadings with new evidence from the FTX criminal proceedings, the extensive FTX Independent Examiner's report, and this Court's Promoters Order. ECF No. 890. In fact, the amendment streamlines claims and ensures the Court adjudicates the case on a complete record. Fenwick's Opposition ignores the factual allegations and misstates the law. Plaintiffs' motion for leave to amend should be granted.

## LEGAL ARGUMENT

Rule 15 embodies a liberal standard: amendments should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Fenwick's Opposition (ECF No. 975) relies on technical objections—delay, futility, prejudice—that collapse under scrutiny. This is Plaintiffs' first substantive amendment. It reflects new evidence from sworn insider testimony, the Independent Examiner's report, and this Court's Promoters Order. The amendment updates claims in light of judicial and investigatory findings. Denying leave would elevate form over substance.

## I. AMENDMENT SHOULD BE GRANTED AS THERE IS NO UNDUE DELAY OR PREJUDICE.

Fenwick claims Plaintiffs delayed for "nearly two years" (Opp. at 7–8), but Plaintiffs acted diligently in light of new developments. The current complaint was filed before **(1) SBF's criminal trial** revealing Fenwick advised on misuse of customer funds, PAC ¶ 49**; (2) The Independent Examiner's Report** finding Fenwick "*directly involved*" in misconduct, *Id.* ¶¶ 36, 305–06; or **(3) The Promoters Order** clarifying securities law liability for those promoting the sale of FTX's unregistered securities offerings. ECF No. 890 at 10–22. Plaintiffs moved to amend within months of these events, which is not undue delay. *See, e.g.*, *de Fernandez v. CMA CGM S.A.*, No. 21-CV-22778-RAR, 2023 WL 5224249, at *2 (S.D. Fla. Aug. 14, 2023) (granting leave to amend because "proposed amendments are based on newly discovered information"); *see also Roof & Rack Prods., Inc. v. GYB Invs., LLC*, No. 13-80575-CV, 2014 WL 12452093, at *1 (S.D. Fla. Apr. 11, 2014) ("Discovery of new facts" was proper reason to amend).

Moreover, undue delay arises when amendment is sought on the eve of trial, not at the outset of litigation. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999); *see also Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981) (denying motion filed three weeks before trial). This case is still in its early stages and not remotely close to trial.

Fenwick only cites cases where plaintiffs sought to amend after discovery closed or the court ruled on dispositive motions, neither of which occurred here. *See Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (after discovery closed); *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F. Supp. 2d 1239, 1254 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (after the court ruled on dispositive motions); *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005) (after the court ruled on motion for judgment on the

3

pleadings); *Valpak Direct Mktg. Sys., Inc. v. Maschino*, 349 F. App'x 368, 370 (11th Cir. 2009) (motion governed by Rule 16 given scheduling order deadline, not Rule 15 which is at issue here).

In any event, Plaintiffs should be allowed to amend absent any prejudice to Fenwick. *See Taylor v. Fla. State Fair Auth.*, 875 F. Supp. 812, 815 (M.D. Fla. 1995) ("Even if the [plaintiffs'] actions did constitute undue delay, the defendant has not alleged any real prejudice resulting from the delay and it is doubtful that it could."). This Court has held that amendments are prejudicial where amendment would require significant new preparation late in the case, impose added expense or trial burden, or raise remote issues likely to confuse the jury. *Bonilla v. Librati*, No. 1:21-CV-21588-KMM, 2022 WL 4594126, at *4 (S.D. Fla. Feb. 26, 2022); *Taylor,* 875 F. Supp. at 815 (prejudice from new legal theory applies when "offered shortly before or during trial").

Here, where "the parties are still in the early stages of litigation" and "discovery has not commenced," "it cannot be said that any delay by the plaintiff in bringing her motion for leave to amend caused any real prejudice to the defendant." *Id*. Fenwick's argument that permitting the amendment would cause it "to incur unnecessary costs to re-brief its motion to dismiss" (Mot. at 15) "is insufficient to establish undue prejudice." *Adderley v. Three Angels Broad. Network, Inc.,* No. 18-23362-CIV, 2019 WL 13211864, at *2 (S.D. Fla. Apr. 10, 2019). Fenwick's sole authority, *Mullen v. Surtshin*, 590 F. Supp. 2d 1233 (N.D. Cal. 2008), is non-binding and inapposite, involving a five-year-old case with multiple defendants and dismissal motions, a plaintiff who repeatedly amended (and even ignored a court order to file a proposed amendment), and belatedly sought an amendment that added no facts but merely re-pleaded to avoid dismissal.

## II. THE COURT SHOULD GRANT PLAINTIFFS' MOTION BECAUSE AMENDMENT IS NOT FUTILE.

### A. Plaintiffs Allege Viable State Securities Claims Against Fenwick.

Fenwick argues it cannot be liable under FSIPA or the California Securities Law because "[l]awyers are legal counselors and advocates—not promoters." Opp. at 10. First, the Court should address these arguments on a 12(b)(6) motion to dismiss, not a motion to amend. *Westchester Surplus Lines Ins. Co. v. ATA Fishville FL, LLC*, No. 219CV297FTM38NPM, 2020 WL 336246, at *1 (M.D. Fla. Jan. 21, 2020) (holding that challenges to a newly added count were better suited for a dispositive motion, allowing full argument and response). Second, the Promoters Order already held that "promotion of FTX" is promotion of securities. *See* ECF No. 890 at 10–22. Plaintiffs allege Fenwick affirmatively promoted FTX by touting its representation on its website and in attorney bios, thereby conferring legitimacy through its reputation that FTX used in raising billions and selling unregistered securities. PAC ¶¶ 28, 31. Fenwick's imprimatur functioned as solicitation under *Pinter*. *See Pinter v. Dahl*, 486 U.S. 622, 646–47 (1988); *see also* ECF No. 890 at 10–22; *Wildes v. BitConnect Int'l PLC*, 25 F. 4th 1341, 1346 (11th Cir. 2022).

Even if this Court concludes that Fenwick did not directly solicit the sale of unregistered securities, Plaintiffs' allegations independently support liability for aiding and abetting securities violations. Fenwick did far more than provide "ordinary and lawful legal services" and advocate for its client. Opp. at 1, 9, 15. Defendants dogmatically argue that lawyers cannot be promoters or even secondarily liable, which is plainly not true. *Id.* at 10. Courts have recognized aiding-and-abetting liability where lawyers provide knowing and substantial assistance to securities violations beyond neutral legal advice. *See, e.g., Facciola v. Greenberg Traurig LLP*, No. CV-10-1025-PHX-FJM, 2011 WL 2268950 at *9 (D. Ariz. June 9, 2011) (allegations of law firm's knowing creation of offering documents containing false and misleading statements, drafting private offering

5

memoranda, participating in termination of potential whistleblower, and orchestration of plan for unlicensed securities dealer to sell unregistered securities sufficiently alleged knowledge and substantial assistance sufficient for aiding and abetting securities fraud under Arizona law).

FTX could not have perpetrated the securities violations alleged in the PAC without Fenwick's active and knowing involvement in designing the structures, agreements, and promotional strategies that enabled the sales. For example, the PAC adds allegations that Fenwick acted as an architect of FTX's securities scheme by fundraising and connecting FTX with investors and by creating entities and token foundations central to the FTX fraud. PAC ¶¶ 29, 32–35, 37. Fenwick leveraged its Silicon Valley network to connect FTX with VC funds and investors, legitimizing and facilitating unregistered securities offerings. *Id* at ¶¶ 29–31, 43–45. Fenwick also created the Serum and Incentive Ecosystem Foundations, which were used to issue and manipulate SRM tokens while concealing insider control. PAC ¶¶ 37, 259, 307. Crucially, Fenwick backdated the Payment Agent Agreement to retroactively justify why Alameda was holding billions in FTX customer deposits, and which FTX used to mislead regulators, banks, and investors. PAC ¶ 36.

Accordingly, even absent direct solicitation, the FSIPA and CSL claims are not futile, as they require fact-intensive inquiry into whether Fenwick solicited or aided and abetted unregistered securities sales—a new claim in the Law Firm Track. *See Ameritox, Ltd. v. Aegis Services Corp.*, No. 07-80498-CIV, 2008 WL 11333447 (S.D. Fla. Jan. 25, 2008).

### B. Plaintiffs Strengthen their Aiding and Abetting Allegations in the PAC.

Plaintiffs' amendments strengthen allegations of Fenwick's actual knowledge of the fraud. The PAC specifically alleges that Nishad Singh "of the misuse of customer funds, improper loans, and false representations, **and that Fenwick advised on how to facilitate and hide**" those acts. PAC ¶ 49; *see also* Nishad Singh Testimony October 17 at 1515:5–17 (testifying that he consulted

6

with Fenwick & West about $477 million loan); Nishad Singh Testimony October 16 at 1459:9–1460:6 (testifying that **"lawyers would paper up"** transactions where Alameda would loan money through Sam, Gary, Nishad, and others to then give the money to FTX.US's wallets). It is simply incredulous that Fenwick would argue that these sworn FTX allegations are somehow mere descriptions of Fenwick "provid[ing] routine and lawful legal services to their clients." Opp., at 1.

The Examiner likewise found Fenwick was "directly involved" in structures used to misappropriate customer deposits, which the Examiner Report states includes founder loans like those given to Nishad Singh, and had knowledge of FTX's illiquid FTT holdings, which posed a material risk to FTX's stability. PAC ¶¶ 4, 47, 260; *see also* PAC Exhibit B at 136 (listing direct involvement in the issuance of founder loans, backdated payment agent agreement, obfuscation of the close relationship between FTX Trading and Alameda, silencing credible whistleblowers, downplaying FTX's involvement and control over the Serum Foundation).

These Fenwick allegations (that are now supported by sworn testimony) easily meet the Eleventh Circuit's "actual knowledge" standard. *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1179–80 (confirming that plaintiffs do not need to plead intent "with specificity because in alleging fraud knowledge may be alleged generally"); *Ave. CLO Fund, Ltd. V. Bank of Am., N.A.*, 723 F.3d 1287, 1297 (11th Cir. 2013) (knowledge "'will be provable (as knowledge must almost always be proved) by circumstantial evidence'") (quoting *U.S. v. Santos*, 553 U.S. 507, 521 (2008)); *Amegy Bank Nat'l Ass'n v. Deutsche Bank Alex.Brown*, 619 F. App'x 923, 929 (11th Cir. 2015) (actual knowledge proven at trial despite "no direct evidence of [defendant]'s actual knowledge"); *see also ESG Capital Partners, LP v. Stratos,* 828 F.3d 1023 (9th Cir. 2016) (reversing dismissal of aiding-and-abetting claims where complaint alleged law firm partner knew of the fraud and helped create an entity to advance it).

7

### III. FENWICK'S OPPOSITION IGNORES CRITICAL AND DETAILED FACTS, FURTHER SUPPORTING THE CLAIMS AGAINST IT.

Fenwick's Opposition improperly treats Plaintiffs' Motion for Leave to Amend as a motion to dismiss while addressing only a narrow subset of the PAC. By selectively reciting the pleadings, Fenwick mischaracterizes its conduct as "routine and lawful legal services." (Opp. at 2–3, 14). The PAC, however, alleges sustained and direct participation in FTX's fraud far beyond ordinary legal advice.

The PAC details that Fenwick designed and oversaw the corporate framework for Alameda and FTX (PAC ¶ 32), later identified by John J. Ray III as foundational to the fraud. *Id.* It created North Dimension and North Wireless Dimension—shell companies falsely presented as consumer electronics businesses—to open banking channels for misappropriating tens of millions in customer deposits. (PAC ¶¶ 33, 302–05). Fenwick backdated agreements and corporate documents, drafted memoranda to justify commingling, and monitored tax filings to mislead regulators, banks, and investors. (PAC ¶¶ 26, 36, 39–40, 45, 274, 280, 286, 294, 302–05). These actions constitute affirmative participation in deception, not neutral legal work.

Fenwick also counseled FTX on evading securities registration and leveraged its Silicon Valley reputation to connect FTX with investors (PAC ¶¶ 23, 43–44, 63, 288), structured the Serum and Incentive Ecosystem Foundations used to manipulate SRM tokens (PAC ¶¶ 37, 259, 273, 275–76, 306–07), and concurrently represented SBF, Singh, Wang, and multiple FTX entities despite irreconcilable conflicts of interest. (PAC ¶¶ 38, 41, 273, 280–82, 287). It even promoted FTX on its website and in marketing materials before later scrubbing references post-collapse. (PAC ¶¶ 9, 31, 258, 261, 277–79, 290, 308, 318).

By ignoring these allegations, Fenwick seeks to reframe the PAC through selective omissions. That is improper. At this stage, the Court must accept all well-pleaded allegations as true, construe the complaint in favor of Plaintiffs, and evaluate the complaint as a whole. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The PAC alleges detailed, plausible facts showing Fenwick's direct role in structuring sham entities, disguising commingling, backdating documents, concealing fraud through tax and compliance filings, facilitating token manipulation, promoting FTX to investors, and covering its tracks. These allegations defeat Fenwick's futility argument, and the Court should grant Plaintiffs' motion to file the PAC.

## IV. PLAINTIFFS' PROPOSED AMENDMENT PROMOTES EFFICIENCY.

The Court should grant leave to amend because it avoids piecemeal litigation, aligns the law firm track with this Court's securities rulings, and ensures the record is complete. Courts "liberally allow amendments or supplements because ordinarily they are efficient mechanisms to refine the pleadings to reflect the facts that diligent parties learn during discovery." *Bonilla*, 2022 WL 4594126, at *4.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant leave to amend, deny Fenwick's futility arguments, and deem the pending motion to dismiss moot.

Respectfully submitted September 2, 2025.

9

| Plaintiffs' Co-Lead Counsel ||
|---|---|
| | By: */s/ Adam Moskowitz*<br>Adam M. Moskowitz<br>Florida Bar No. 984280<br>Joseph M. Kaye<br>Florida Bar No. 117520<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>adam@moskowitz-law.com<br>joseph@moskowitz-law.com<br>service@moskowitz-law.com |
| **FTX Other Professionals Committee Members** ||
| William M. Audet<br>California Bar No. 117456<br>Ling Yue Kuang<br>California Bar No. 296873<br>**AUDET & PARTNERS, LLP**<br>711 Van Ness Avenue. Suite 500<br>San Francisco, CA 94102-3229<br>415-568-2555<br>415-568-2556<br>waudet@audetlaw.com<br>lkuang@audetlaw.com | Barbara C. Lewis<br>Florida Bar No. 118114<br>Leo A. Wiesinger<br>Florida Bar No. 1058780<br>**THE MOSKOWITZ LAW FIRM, PLLC**<br>Continental Plaza<br>3250 Mary Street, Suite 202<br>Coconut Grove, FL 33133<br>Office: (305) 740-1423<br>barbara@moskowitz-law.com<br>leo@moskowitz-law.com<br>service@moskowitz-law.com |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 2, 2025, a true and correct copy of the foregoing was sent via electronic mail to counsel for Defendants.

By: */s/ Adam Moskowitz*
Adam M. Moskowitz