# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | No: 1:23-md-03076-KMM<br><br>MDL No. 3076 |
| This Document Relates To:<br><br>*Garrison v. Bankman-Fried*,<br>No. 22-cv-23753-KMM<br><br>*Garrison v. Paffrath*,<br>No. 1:23-cv-21023-KMM<br><br>*Norris v. Brady*,<br>No. 23-cv-20439-KMM<br><br>*Podalsky v. Bankman-Fried*<br>No. 1:22-cv-23983-KMM<br><br>*Garrison v. Golden State Warriors*,<br>No. 1:23-cv-23084-KMM<br><br>*Lam v. Bankman-Fried*,<br>No. 1:23-cv-22195-KMM<br><br>*Garrison v. Osaka*,<br>No. 1:23-cv-23064-KMM<br><br>*Garrison et al. v. Furia Esports LLC et al.*,<br>No. 1:24-cv-20895-RS<br><br>*Garrison et al. v. Lincoln Holdings LLC*,<br>No. 1:24-cv-00655-JMC<br><br>*Garrison et al. v. Mercedes-Benz Grand Prix Limited (d/b/a Mercedes-AMG Petronas Formula One Team)*,<br>No. 1:23-cv-24480-JEM<br><br>*Garrison v. Office of The Commissioner of Baseball d/b/a Major League Baseball*,<br>No. 1:23-cv-24479-KMM | |

| *Garrison v. Riot Games, Inc.*, No. 1:24-cv-21296-KMM<br><br>*Garrison v. Wasserman Media Group, LLC and Dentsu McGarry Bowen  LLC*, No. 23-cv-24478-KMM | |

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR TO COMPEL ARBITRATION BY SPORTS & ENTERTAINMENT DEFENDANTS, <u>INCORPORATED MEMORANDUM OF LAW, AND REQUEST FOR HEARING</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.      Plaintiffs Fail To State A Claim .................................................................................. 2

    A.      Plaintiffs Fail To Allege That Any Plaintiff Purchased Securities ........................ 2

    B.      The FTX Platform Is Not A Security Under *Howey* Or *Terraform* ...................... 3

    C.      Plaintiffs Do Not Allege That Any Defendants Solicited Or Induced The
        Purchase Of Any Unregistered Security ............................................................... 5

    D.      Plaintiffs Do Not Plausibly Allege Damages ........................................................ 7

    E.      Plaintiffs Fail To Allege A Nexus To California, Oklahoma, And Florida ........... 9

    F.      The California Securities Claim Must Again Be Dismissed For Failure To
        Plead Intent To Defraud .................................................................................... 10

    G.      Defendants Are Not Broker Dealers Under California Law .................................. 13

    H.      The Oklahoma And California Claims Are Time-Barred Against The
        Additional Defendants ....................................................................................... 13

II.     The Court Should Strike Damages Allegations Inconsistent With State Law ................. 15

III.    Plaintiffs' Claims Belong In Arbitration And Cannot Be Adjudicated As Class
    Claims ...................................................................................................................... 16

    A.      Defendants' Ability To Enforce Agreement Is Delegated To The
        Arbitrator ......................................................................................................... 16

    B.      Defendants Are Entitled To Invoke The Arbitration And Class Waiver
        Provisions ......................................................................................................... 17

    C.      Defendants Did Not Waive Their Right To Compel Arbitration ......................... 18

    D.      The Class Action Waiver Applies Irrespective of Arbitration ............................. 19

IV.     The Court Should Stay The Case Pending Resolution Of The FTX Bankruptcy ............. 20

CONCLUSION ...................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alberts v. Razor Audio, Inc.*,
  2012 WL 530427 (E.D. Cal. Feb. 17, 2012)..................................................................12, 13

*Allen v. Oakbrook Sec. Corp.*,
  763 So. 2d 1099 (Fla. 4th DCA 1999) ...............................................................................9

*Arouh v. GAN Ltd.*,
  2024 WL 3469032 (C.D. Cal. Mar. 22, 2024)..................................................................18

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009).....................................................................................................16, 17

*Barnett v. Blane*,
  2013 WL 1001963 (S.D. Fla. Mar. 13, 2013) ....................................................................8

*Binder v. Gillespie*,
  184 F.3d 1059 (9th Cir. 1999) ...........................................................................................8

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ...........................................................................................16

*Bloodworth v. United States*,
  623 F. App'x 976 (11th Cir. 2015) ...................................................................................15

*Coker v. Warren*,
  2025 WL 1575578 (11th Cir. June 4, 2025) .....................................................................12

*Creative Sols. Grp., Inc. v. Pentzer Corp.*,
  252 F.3d 28 (1st Cir. 2001).............................................................................................19

*Culbertson v. Schuchert*,
  110 F.3d 67, 1997 WL 143778 (9th Cir. 1997) ...............................................................13

*Deveny v. Entropin, Inc.*,
  139 Cal. App. 4th 408 (2006) ..........................................................................................14

*Dillon v. Axxsys Int'l, Inc.*,
  385 F. Supp. 2d 1307 (M.D. Fla. 2005).............................................................................7

*Donovan v. GMO-Z.com Tr. Co.*,
  779 F. Supp. 3d 372 (S.D.N.Y. 2025).................................................................................3

ii

*Eisenbaum v. W. Energy Res., Inc.*,
   218 Cal. App. 3d 314 (1990) ........................................................................................14

*Evans v. Riverside Int'l Raceway*,
   237 Cal. App. 2d 666 (1965) ........................................................................................13

*Fedance v. Harris*,
   1 F.4th 1278 (11th Cir. 2021) .......................................................................................4

*Fitzer v. Am. Inst. of Baking, Inc.*,
   2010 WL 1955974 (S.D. Ga. May 13, 2010)................................................................20

*Foster v. Jesup & Lamont Securities Co.*,
   759 F.2d 838 (11th Cir. 1985) .......................................................................................6

*Gandhi v. Carnival Corp.*,
   2014 WL 1028940 (S.D. Fla. Mar. 14, 2014)..............................................................16

*Garn v. South Florida Stadium LLC*,
   2025 WL 1279071 (S.D. Fla. Mar. 26, 2025)..............................................................17

*Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.*,
   2020 WL 3078531 (S.D. Fla. June 10, 2020)..............................................................20

*Jackson v. Fischer*,
   2015 WL 1143582 (N.D. Cal. Mar. 13, 2015)..............................................................13

*In re Jan. 2021 Short Squeeze Trading Litig.*,
   2025 WL 1865945 (S.D. Fla. Apr. 8, 2025)................................................................18

*Kirkham v. TaxAct Inc.*,
   2025 WL 914307 (3d Cir. Mar. 26, 2025)...................................................................19

*Krinsk v. SunTrust Bank*,
   2012 WL 12906338 (M.D. Fla. Feb. 1, 2012) ............................................................19

*Krinsk v. SunTrust Banks, Inc.*,
   654 F.3d 1194 (11th Cir. 2011) ...................................................................................19

*Lamonaco v. Experian Info. Sols., Inc.*,
   141 F.4th 1343 (11th Cir. 2025) .............................................................................16, 17

*Lubin v. Starbucks Corp.*,
   122 F.4th 1314 (11th Cir. 2024) ..................................................................................16

*In re Marriott Int'l, Inc.*,
   78 F.4th 677 (4th Cir. 2023) ........................................................................................19

*McCullough v. Leede Oil & Gas, Inc.*,
  617 F. Supp. 384 (W.D. Okla. 1985) ...................................................................9

*Morrison v. Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010) .............................................................................................9

*Moss v. Kroner*,
  197 Cal. App. 4th 860 (2011) .......................................................................11, 12

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir. 1999) ...........................................................................17

*Newman v. Associated Press*,
  578 F. Supp. 3d 1357 (S.D. Fla. 2024) ................................................................3

*NextPlat Corp. v. Seifert*,
  2023 WL 2652577 (S.D. Fla. Jan. 9, 2023) .........................................................9

*OCG Energy, LLC v. Shen*,
  2023 WL 4681640 (C.D. Cal. June 7, 2023) ......................................................12

*In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978*,
  659 F.2d 789 (7th Cir. 1981) .............................................................................18

*Otto Candies, LLC v. Citigroup Inc.*,
  37 F.4th 1158 (11th Cir. 2025) .....................................................................11, 12

*Pace v. Hamilton Cove*,
  258 N.J. 82 (2024) ..............................................................................................19

*Perry-Hudson v. Twilio, Inc.*,
  2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) ......................................................18

*Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*,
  414 F. App'x 240 (11th Cir. 2011) ....................................................................18

*Pickett v. Atl. Se. Airlines, Inc.*,
  2007 WL 9701594 (N.D. Ga. Mar. 30, 2007) .....................................................20

*Rensel v. Centra Tech, Inc.*,
  2019 WL 2085839 (S.D. Fla. May 13, 2019) .......................................................5

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384 (2d Cir. 2011) ...............................................................................19

*Risley v. Universal Navigation Inc.*,
  2025 WL 615185 (2d Cir. Feb. 26, 2025) .........................................................5, 6

*Risley v. Universal Navigation Inc.*,
  690 F. Supp. 3d 195 (S.D.N.Y. 2023)....................................................................6

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................8

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ................................................................................6

*Ryder Int'l Corp. v. First Am. Nat'l Bank*,
  749 F. Supp. 1569 (N.D. Ala. 1990)......................................................................7

*Ryder Int'l Corp. v. First Am. Nat'l Bank*,
  943 F.2d 1521 (11th Cir. 1991) ............................................................................5

*Sagehorn v. Engle*,
  141 Cal. App. 4th 452 (2006) ..............................................................................14

*SEC v. Terraform Labs Pte. Ltd.*,
  684 F. Supp. 3d 170 (S.D.N.Y. 2023)................................................................3, 4

*Siegal v. Gamble*,
  2016 WL 1085787 (N.D. Cal. Mar. 21, 2016)......................................................13

*Skypoint Advisors, LLC. v. 3 Amigos Prods. LLC.*,
  2019 WL 4600409 (M.D. Fla. Sept. 23, 2019) ......................................................8

*Stoyas v. Toshiba Corp.*,
  896 F.3d 933 (9th Cir. 2018) ..............................................................................10

*SVF II Aggregator (DE) LLC, v. Shafi*,
  2025 WL 2490447 (N.D. Cal. Feb. 27, 2025) ......................................................12

*Treminio v. Crowley Mar. Corp.*,
  649 F. Supp. 3d 1223 (M.D. Fla. 2023)................................................................14

*Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*,
  658 F. Supp. 3d 1250 (S.D. Fla. 2023) ................................................................10

*Wildes v. BitConnect Int'l PLC*,
  25 F.4th 1341 (11th Cir. 2022) ..........................................................................5, 7

*Yuba City Unified Sch. Dist. v. Cal. State Tchrs.' Ret. Sys.*,
  18 Cal. App. 5th 648 (2017) ................................................................................14

**Statutes**

Cal. Corp. Code § 25110..........................................................................................10, 11

Cal. Corp. Code § 25501.5..................................................................................8, 9, 13

Cal. Corp. Code § 25504.................................................................................10, 11, 13

Cal. Corp. Code § 25504.1....................................................................................11

Fla. Stat. § 517.211.............................................................................................20

**Rules**

Fed. R. Civ. P. 8...................................................................................................3

Fed. R. Civ. P. 9.............................................................................................11, 13

Fed. R. Civ. P. 15...............................................................................................15

## INTRODUCTION

Plaintiffs' claims founder on a core indisputable truth: No Plaintiff alleges a purchase of any specific product in reliance on any specific action by any specific Defendant. Plaintiffs must plead these facts as to each Defendant; they plead none as to any. Plaintiffs identify no well-pled allegations that they purchased any of the allegedly unregistered securities, relied on any Defendants' alleged promotions, or suffered any damages—a failure that is particularly glaring given that some Plaintiffs have already recovered 120% of their FTX holdings with another $1.9 billion set to arrive at the end of this month. Plaintiffs fail to explain how generic brand promotions amount to the solicitation of the sale of *any* particular security, and they fail to distinguish new law demonstrating that mere promotion of a cryptocurrency-trading platform is insufficient.

Plaintiffs' arguments are not only flawed, they also rest on impossible contradictions. Plaintiffs ask the Court to find both that they were unaware of the Additional Defendants' involvement with FTX (to avoid the time-bar) and that they somehow invested in unregistered securities "as a result of" those same Defendants' promotions (to avoid dismissal for failure to state a claim). Plaintiffs similarly assert that Defendants are "agents" of FTX (in order to hold them liable), but also *not* agents (to avoid the binding arbitration agreements Plaintiffs signed).[1]

Ultimately, Plaintiffs fail to demonstrate that the state securities laws they invoke apply here. These laws do not apply to persons who merely promote a trading platform—sometimes by

---

[1] Defendants agree they are not "agents" of FTX, as Plaintiffs admit in response to Defendants' motion to compel arbitration. Dkt. 977 ("Opp.") at 31. But that only compels the conclusion that Plaintiffs' securities claims fail. *See* Dkt. 890 ("Order") at 20. Thus, to the extent the Court denies arbitration for lack of an agency relationship, it must dismiss Plaintiffs' claims for the same reason. Dkt. 271 at 21.

doing as little as wearing a shirt with its logo—nor transform that trading platform into a security. The Court should dismiss this case, send it to arbitration, or, at minimum, stay the case pending resolution of FTX's bankruptcy.

## ARGUMENT

### I.   Plaintiffs Fail To State A Claim.

Plaintiffs' amended complaint, Dkt. 908 ("Amended Complaint" or "AC") does not allege the purchase of an unregistered security by any Plaintiff, the successful solicitation of that purchase by any Defendant, a resulting loss, or a nexus between a purchase any Plaintiff made and the state whose laws that Plaintiff invokes. Each of these defects independently warrants dismissal. The California claims further fail because Plaintiffs identify no allegations supporting an intent to defraud or that any Defendant acted as a "broker dealer." And Plaintiffs' claims against Furia, Major League Baseball, MLB Players, Inc., Mercedes F1, Riot Games, and LCS Defendants (the "Additional Defendants") are time-barred.

At the outset, Plaintiffs mischaracterize the Court's Order, claiming it forecloses Defendants' challenges to the Florida and Oklahoma counts. Opp. at 3–4. But while the Court found Plaintiffs' prior complaint stated a claim under those statutes, it did not address the specific arguments Defendants raise here, which respond to a massively-expanded pleading that incorporates new facts from the bankruptcy, and which focuses on those new allegations, new case law, and new issues. Plus, this is also some Defendants' first opportunity to present arguments.

### A.   Plaintiffs Fail To Allege That Any Plaintiff Purchased Securities.

There is no dispute that a failure to allege that any Plaintiff purchased an unregistered security is fatal to these claims. Opp. at 4; *see* Dkt. 943 ("Motion" or "Mot.") at 10 (collecting cases). That defect requires dismissal here. Plaintiffs point to allegations that their claims arise from their "purchase of and investment in the FTX Platform, FTT, and/or a YBA," AC ¶ 38, and

that they "purchased or held legal title to *and/or* beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform," *id.* ¶¶ 5–70.[2]  But, as Defendants explained, Mot. at 10–12, these vague allegations do not allege that any of the named Plaintiffs (who do not—and as of now cannot—represent anyone other than themselves) purchased FTT,[3] YBAs, or the FTX platform. Plaintiffs' inability to identify what, if anything, any Plaintiff purchased fails even under Rule 8. *Newman v. Associated Press*, 578 F. Supp. 3d 1357, 1382 (S.D. Fla. 2024) (Moore, J.) (plaintiffs must allege "more than a sheer possibility" that they invested in the products they challenge). The Court should accordingly dismiss this action. *Donovan v. GMO-Z.com Tr. Co.*, 779 F. Supp. 3d 372, 386 (S.D.N.Y. 2025) (Unlike SEC, as private litigants, Plaintiffs may establish liability "only as to the unregistered securities that Plaintiffs purchased.").

### B.     The FTX Platform Is Not A Security Under *Howey* Or *Terraform*.

Plaintiffs' claims based on the FTX platform fail for the independent reason that the "platform" is not itself a security.[4] Even assuming this Court disagreed with Defendants that Plaintiffs have not pled their claims as to YBAs and FTT, it should still dismiss the claims arising from the FTX platform for that reason. New information demonstrates that a large majority of FTX customers were *not* in YBAs, and US-based customers could *not* purchase FTT. Mot. at 11–12. The scope of this case—and in particular discovery and/or settlement—is thus materially affected by whether Plaintiffs' claims as to the FTX platform survive dismissal.

Plaintiffs cite *no* authority that a trading platform can itself be a security, nor that one can

---

[2] All emphasis is added unless otherwise noted.

[3] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

[4] Defendants strongly dispute that FTT and YBAs are securities but believe this issue is better resolved after discovery from the relevant parties, including FTX.

plead a securities claim merely by alleging use of a platform. *SEC v. Terraform Labs Pte. Ltd.*, the sole case Plaintiffs cite, did not hold that a trading *platform* can be a security; rather, it considered whether specific tokens offered on that platform were securities. 684 F. Supp. 3d 170, 194 (S.D.N.Y. 2023). Courts consistently evaluate securities on an asset-by-asset basis; they do not deem entire platforms securities. Mot. at 18–19.

Plaintiffs offer three theories for how the "platform" could be a security under *Howey*: (1) the platform facilitated the exchange of cryptocurrencies and any "returns" generated from those investments, Opp. at 5–6; (2) customers were defaulted into YBAs, which were themselves unregistered securities, *id.* at 6; and (3) customer assets were secretly lent to third parties, *id*. None makes the "platform" a security. To satisfy *Howey*, Plaintiffs must plausibly allege (1) an investment of money in the platform, (2) a common enterprise, and (3) an expectation of profits from the efforts of others. *Fedance v. Harris*, 1 F.4th 1278, 1287–88 (11th Cir. 2021). Plaintiffs' theories lack these essential factual allegations. Take the first: An investment in third-party cryptocurrency offered *through* FTX is not an investment "in" FTX. It is an investment "in" crypto. And Plaintiffs have no meaningful answer to Defendants' point that the returns on that investment turn on market forces, not FTX's "effort," Mot. at 16–17, or that the bankruptcy filings prove that FTX's own cryptocurrency, FTT, was not available to FTX US customers at all, *id*. at 11 & n.4, meaning FTX US permitted trading *only* in third party cryptocurrencies—both of which cut squarely against Plaintiffs' effort to satisfy *Howey*. Plaintiffs' second theory, that all customers were defaulted into YBAs, again entirely ignores that many of Plaintiffs' own allegations, AC ¶¶ 281, 287, and the recent bankruptcy filings, both confirm that users were almost uniformly *not* in YBAs. *E.g.*, Mot. at 10–11. Plaintiffs' final theory rests on the absurdity that the secret misappropriation of customer funds at the heart of FTX's collapse was actually an intentional

investment scheme whereby Plaintiffs invested in FTX with the expectation of receiving returns from the resulting loans provided to third parties. But that, of course, is not what Plaintiffs have alleged here, nor is it remotely plausible given FTX's fraudulent concealment.

    **C.**    **Plaintiffs Do Not Allege That Any Defendants Solicited Or Induced The Purchase Of Any Unregistered Security.**

Plaintiffs' claims also fail because they do not allege facts to show either (1) that each Defendant "'actively' solicit[ed]," *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1527, 1531 (11th Cir. 1991), the purchase of a "particular security," *Wildes v. BitConnect Int'l PLC, 25* F.4th 1341, 1346 (11th Cir. 2022), or (2) that any Plaintiff purchased a security "as a result of that solicitation," *Rensel v. Centra Tech, Inc.*, 2019 WL 2085839, at *3 (S.D. Fla. May 13, 2019).

*Active Solicitation of a Particular Security*. Plaintiffs do not (and cannot) dispute that no Defendant mentioned YBAs or FTT. They nevertheless claim that they have met the first solicitation requirement by generically alleging that "Defendants . . . encouraged their followers and fans to invest through FTX" because FTX defaulted users into YBAs, making any investment in FTX an investment in an unregistered security. Opp. at 7. Not only do Plaintiffs fail to tie any Plaintiff to any Defendant, they do not address the fact that their own allegations, as confirmed by the bankruptcy filings, show that the overwhelming majority of users were *not* in YBAs. Mot. at 11–12. And they offer no explanation for how encouraging fans to invest "through" FTX necessarily amounted to the solicitation of any Plaintiff by any Defendant to purchase any one of the three alleged unregistered securities.

Recent case law shows Plaintiffs' platform-promotion theory is wrong. In *Risley v. Universal Navigation Inc.*, 2025 WL 615185 (2d Cir. Feb. 26, 2025), the Second Circuit held that promotion of a trading platform (like FTX) does not qualify as solicitation of the alleged securities sold on that platform (like FTT and YBAs). *Id*. at *3. Plaintiffs try to distinguish *Risley* on the

grounds that it involved a decentralized crypto platform, Opp. at 9, but they never explain why that distinction matters (because it does not). They also imply that the decision turned on the fact that the defendants in *Risley* "we[re] not party to" the transactions. *Id*. But that portion of the opinion discusses a separate theory of liability based on passing title to the allegedly unregistered securities, not the solicitation theory at issue here. *Compare Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195, 219–20 (S.D.N.Y. 2023) (analyzing privity theory), *with id*. at 221–23 (analyzing solicitation theory). Plaintiffs offer the same basic solicitation theory rejected in *Risley*, and this Court should reject it here too.

Plaintiffs also fail to distinguish the many cases showing that ancillary participation in sales of securities is not "active solicitation." Mot. at 20–22. Plaintiffs wrongly argue that *Pinter v. Dahl*'s bar on liability for those "collateral to the offer or sale," 486 U.S. 622, 650 (1988), applies only to professionals like lawyers or accountants. Opp. at 8. To the contrary, the *Pinter* test analyzes the degree of the defendant's involvement in the sale of securities, not the defendant's job title. To take just two examples, the Eleventh Circuit dismissed solicitation claims against an underwriter in *Foster v. Jesup & Lamont Securities Co.*, 759 F.2d 838, 845 (11th Cir. 1985), and the Fifth Circuit did the same for an issuer of securities and its officers and directors in *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 858 (5th Cir. 2003). Plaintiffs attempt to distinguish *Foster* by arguing that "the underwriter defendant" in that case "was not alleged to have advertised" the securities at issue. Opp. at 9. But the underwriter's name *appeared on the offering document*, and the plaintiff *relied* on that fact in deciding to purchase securities. *Foster*, 759 F.2d at 842. That is far more than what Plaintiffs allege here—no Defendant's name is alleged to have appeared on materials referencing FTT or YBAs, let alone the FTX platform (which no one "purchased" in any event).

Plaintiffs also invoke *BitConnect* for the uncontroversial proposition that mass communications can give rise to solicitation liability. Opp. at 7–8. But *BitConnect* reaffirmed the requirement that solicitation must concern a "*particular* security." 25 F.4th at 1346; *see also Ryder Int'l Corp. v. First Am. Nat'l Bank*, 749 F. Supp. 1569, 1570 n.6 (N.D. Ala. 1990) (solicitation requires defendant to urge "the purchase of a *specific* security"), *aff'd*, 943 F.2d 1521 (11th Cir. 1991). *BitConnect* also involved allegations of active, direct solicitation that are not alleged in this case. The defendants there "posted thousands of videos" to "persuad[e] people to buy *BitConnect coin*," including claiming "passive income was merely 'a click away'" and that investors could "'make huge profits with BitConnect.'" 25 F.4th at 1343–44. This is a far cry from general promotion of a trading platform that allowed investors to buy or trade a wide variety of products or simply to hold assets (including fiat) in an open account. Plaintiffs fail to allege that any Defendant solicited the purchase of FTX or YBAs specifically; *BitConnect* does not apply. Mot. at 20–23.

***As a result of***. Plaintiffs next argue that they have alleged purchases as "a result of" Defendants' purported solicitations by alleging that FTX offered and sold them securities with Defendants' "material assistance." Opp. at 7. That, however, is not an allegation that any Plaintiff purchased a product "as a result of" any Defendant's solicitation. And Plaintiffs cannot overcome the fact that they nowhere allege that any Plaintiff even viewed any Defendant's supposed solicitations, let alone that any Plaintiff was moved to purchase FTT, YBAs, or the Platform as a result. *See Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005) (defendant must have "actively and directly . . . influence[d] or induce[d]" plaintiff to buy unregistered securities), *aff'd*, 185 F. App'x 823 (11th Cir. 2006); *see also* Mot. at 13–14 (collecting cases).

### D.    Plaintiffs Do Not Plausibly Allege Damages.

Plaintiffs do not deny that none pled which (if any) securities they purchased; what they

paid for them; what income they received from them; or whether their bankruptcy recoveries exceed their initial investment(s). They assert only that the Court has "already deemed" their damages allegations "sufficient." Opp. at 11. But bankruptcy filings now show that the FTX estate has already distributed over $6.5 billion to claimants as of June 2025 and further distributions of $1.9 billion have been approved for September 30, 2025. *See* FTX Recovery Trust Financial Report Q2 2025 (Unaudited), *In re FTX Trading Ltd.*, Case No. 1:22-bk-11068 (Bankr. D. Del. Aug. 15, 2025), ECF No. 32371 at 14 (the "FTX Financial Report"); Order Reducing the Amount of the Disputed Claim Reserve, *In re FTX Trading Ltd*, Case No. 1:22-bk-11068 (Bankr. D. Del. July 23, 2025), ECF No. 31822. Several Plaintiffs have already received 120% of the value of their FTX holdings, *see* Mot. at 24–25, with billions more to come. In light of those incorporated facts, conclusory allegations as to total damages or total "class damages," Opp. at 10 (citing AC ¶ 1), are insufficient, *Barnett v. Blane*, 2013 WL 1001963, at *3 (S.D. Fla. Mar. 13, 2013)—especially given that no class has been certified. Plaintiffs have not, and cannot, plausibly allege a loss.[5]

Nor can Plaintiffs rely on rescission to salvage their failure to plead damages because rescission requires the plaintiff to own the security and tender it. Cal. Corp. Code § 25501.5(a)(2).[6]

---

[5] The only case Plaintiffs cite for the incorrect proposition that they need not plead any facts to show loss—*Skypoint Advisors, LLC. v. 3 Amigos Products LLC.*, 2019 WL 4600409 (M.D. Fla. Sept. 23, 2019)—concerns the requirements for pleading loss causation (not damages) in a federal securities fraud case. *Id.* at *8–9. But loss causation is analytically distinct from the separate requirement to plead facts showing actual damages. *See Binder v. Gillespie*, 184 F.3d 1059, 1066 (9th Cir. 1999) (citing *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 n.5 (11th Cir. 1997)).

[6] Plaintiffs seek rescission only as to their California count. AC ¶ 1249.

Plaintiffs, however, allege that they no longer possess, and cannot access, the relevant assets held at FTX, which necessarily defeats any rescission claim. *See* Mot. at 25. Plaintiffs' allegations do not support an action for rescission *or* damages under section 25501.5(a)(2), warranting dismissal.[7]

### E.   Plaintiffs Fail To Allege A Nexus To California, Oklahoma, And Florida.

Plaintiffs' claims further fail because no Plaintiff adequately alleges the sale of an unregistered security within California, Oklahoma, or Florida. Mot. at 26–27.[8] Plaintiffs argue that whether their transactions have the requisite nexus is a "choice of law" question "better addressed at [a] later stage." Opp. at 11. But this is not a choice-of-law issue; Plaintiffs' failures to plead transactions within the "reach[]" of these states' laws are "merits" defects that require dismissal. *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010); Mot. at 26–27 (collecting cases).

The few allegations Plaintiffs identify are legally insufficient to support their claims. *See* Opp. at 11–13. As Defendants explained, Mot. at 27, neither a plaintiff's nor a defendant's residency establishes where a sale occurred. *See also McCullough v. Leede Oil & Gas, Inc.*, 617 F. Supp. 384, 389 (W.D. Okla. 1985) (no in-state transaction despite transaction documents originating from the defendant's Oklahoma office); *Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1101 (Fla. 4th DCA 1999) (no in-state transaction notwithstanding alleged sale of Florida

---

[7] Plaintiffs' authority does not involve California law, and to the extent it has any application here, it confirms that Plaintiffs cannot pursue rescission in these circumstances. *NextPlat Corp. v. Seifert*, 2023 WL 2652577, at *6 n.5 (S.D. Fla. Jan. 9, 2023) (rejecting argument that plaintiff could "pursue concurrent claims for breach of contract and rescission"), *adopted by* 2023 WL 5350857 (S.D. Fla. Aug. 21, 2023).

[8] Plaintiffs do not meaningfully contest that their claims fail to the extent they arise from sales on FTX's international platform. Mot. at 27. Those claims should therefore be dismissed.

company's stock). Plaintiffs have no answer for these authorities; their sole support for their residency theory is an inapposite insurance case, *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Insurance Co.*, 658 F. Supp. 3d 1250, 1264 (S.D. Fla. 2023), that says nothing about when a state's law applies to a securities transaction. Opp. at 11. That "FTX's domestic headquarters was [allegedly] in Miami" and that the alleged "scheme took place" there, Opp. at 12, changes nothing. These allegations do not establish a connection between the challenged *transactions involving Plaintiffs* and Florida (the focus of the in-state transaction requirement), as opposed to a connection between Defendants' general business activities and Florida (which is irrelevant). Mot. at 27. The same is true of conclusory allegations that certain promotions were "directed" at certain states. Opp. at 11–12. Without allegations about "contract formation, placement of purchase orders, passing of title, and the exchange of money," as to each Plaintiff, Plaintiffs' claims fail. *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2018).

### F.     The California Securities Claim Must Again Be Dismissed For Failure To Plead Intent To Defraud.

Plaintiffs' California securities claims also fail because, as the Court held, conclusory allegations that Defendants observed "red flag[s]" and a conclusory assertion of "knowledge" are insufficient to plead intent to deceive under California law. Mot. at 28–30; Order at 21–22. In an effort to evade shortcomings, Plaintiffs pivot to several new theories, including by (1) misstating the pleading standards and (2) arguing, for the first time, that they have asserted claims under Cal. Corp. Code § 25504 (secondary liability for control persons). These new arguments fail too.

As stated in Plaintiffs' Amended Complaint, Cal. Corp. Code § 25110 prohibits the offer or sale of certain unregistered securities. Section 25503 (the "Primary Liability Provision") provides a private right of action for violations of Section 25110. Section 25504.1 (the "Material Assistance Provision") extends that liability to "[a]ny person who materially assists in any

violation of" Section 25110. Plaintiffs' Amended Complaint alleges that "Defendants materially assisted and/or personally participated with the FTX Group in the offering and selling of the FTX platform, the YBAs and/or FTT Tokens Securities in California without being properly registered or qualified for offer or sale either with any federal or California regulator in violation of Section 25503 and/or 25504.1.5." AC ¶ 1242, 1249–50.[9] It does not allege that Defendants are liable under Section 22504 (the "Control Persons Provision").

To state a claim under the Material Assistance Provision, a plaintiff must allege that a defendant both (1) "materially assist[ed]" in the sale of the unregistered security, and (2) did so with the "intent to deceive or defraud." *Moss v. Kroner*, 197 Cal. App. 4th 860, 872 (2011); Cal. Corp. Code § 25504.1. Plaintiffs' claim that an intent to deceive here can be "inferred by the 'surrounding circumstances and expectations of the parties,'" Opp. at 16, ignores the law and this Court's ruling. The Material Assistance Provision is "even stricter than" its federal counterpart in that it requires a showing of both intent to defraud *and* "actual knowledge that the securities for sale were unregistered to establish the requisite scienter." Order at 21 (collecting cases).

Plaintiffs' authorities do not concern California securities claims and thus do not address the "actual knowledge" requirement of the Material Assistance Provision. Plaintiffs cite *Otto Candies, LLC v. Citigroup Inc.*, 37 F.4th 1158 (11th Cir. 2025), to assert that they can allege knowledge generally. Opp. at 15. But *Otto Candies* concerns the federal pleading standards of Rule 9(b); it does not eliminate the substantive requirement under California law to plead "specific facts to show that each Defendant 'intend[ed] to induce reliance on a knowing misrepresentation or omission.'" Order at 21 (quoting *Schaffer Fam. Invs.*, 120 F. Supp. 3d 1028, 1046 (C.D. Cal. 2015)). In any case, *Otto Candies* does not hold that a conclusory allegation of "knowledge" is

---

[9] Plaintiffs also allege violations of the broker dealer statute, addressed *infra* at 13.

enough. It too requires pleading *facts* demonstrating knowledge, which are absent here. 137 F.4th at 1180 ("we [] ask whether 'the plaintiff pleads *factual content* that allows the court to draw the reasonable inference' that a defendant knew about the alleged fraud") (citation omitted).

Plaintiffs next half-heartedly suggest that they have asserted a claim under the Primary Liability Provision. Opp. at 13–14. But the Primary Liability Provision applies only to issuers of securities, which Defendants (alleged advertisers) are not. *See Moss*, 197 Cal. App. 4th at 871.

Although not in their pleadings (as Plaintiffs seem to admit, Opp. at 14 & n.7), Plaintiffs now contend that they have also asserted a *third* claim under the Control Person Provision against Defendants in their supposed capacities as "agents" of FTX. But Plaintiffs did not plead a claim under the Control Person Provision. There is no reference whatsoever to this statute in Plaintiffs' eleven-paragraph Count II, and it is axiomatic that Plaintiffs cannot create new claims in a legal brief. *See Coker v. Warren*, 2025 WL 1575578, at *3 n.2 (11th Cir. June 4, 2025) (upholding decision not to consider new allegations "that were not part of [the] operative complaint").

In any case, that claim, even if it had been pled, would fail. The Court cannot "impose secondary liability in the absence of a proper defendant to which primary liability attaches." *OCG Energy, LLC v. Shen*, 2023 WL 4681640, at *9 (C.D. Cal. June 7, 2023). And here, FTX (the supposed primary violator) is not a Defendant in this case. In addition, to establish a violation of the Control Person Provision, Plaintiffs must "plead facts showing [the defendant's] knowledge of the false or misleading nature of the representations." *Alberts v. Razor Audio, Inc.*, 2012 WL 530427, at *7 (E.D. Cal. Feb. 17, 2012) (citation omitted). Plaintiffs' argument that "actual knowledge" is an affirmative defense that they need not plead around is refuted by a long line of cases holding that knowledge of the fraud must be pleaded with specific facts. *See, e.g., Alberts*, 2012 WL 530427, at *7; *SVF II Aggregator (DE) LLC, v. Shafi*, 2025 WL 2490447, at *17 (N.D.

Cal. Feb. 27, 2025). Plaintiffs are also wrong that this claim need not satisfy Rule 9(b). *See Siegal v. Gamble*, 2016 WL 1085787, at *6 (N.D. Cal. Mar. 21, 2016) (applying Rule 9(b) to control person claims under Section 25504). Plaintiffs have not pled any *facts* demonstrating that any Defendants knew FTX was unlawfully selling unregistered securities or that they intended to deceive anyone.[10] That defect is fatal. *See Siegal*, 2016 WL 1085787, at *6; *see also Alberts*, 2012 WL 530427, at *7–8.

### G.     Defendants Are Not Broker Dealers Under California Law.

Plaintiffs' "broker dealer" claims likewise fail because Plaintiffs allege that FTX, not any Defendant, "sold" them securities. No Defendant therefore had an obligation to register for a license to operate as a broker dealer under Cal. Corp. Code. § 25501.5(a)(1), which "expressly requires privity of contract as a condition to liability." *Jackson v. Fischer*, 2015 WL 1143582, at *22 (N.D. Cal. Mar. 13, 2015) (dismissing claim against defendant "who did not hold title to the securities"). Plaintiffs' own authority proves the point. In *Culbertson v. Schuchert*, 110 F.3d 67, 1997 WL 143778 (9th Cir. 1997) (TABLE), the Ninth Circuit explained that the definition of "broker dealer" does not encompass agents or people who merely introduce a buyer and seller. *Id*. at *2 (citing *Evans v. Riverside Int'l Raceway*, 237 Cal. App. 2d 666, 674–75 (1965)); *see also Jackson*, 2015 WL 1143582, at *22. Plaintiffs thus do not state a claim for violation of § 25501.5.

### H.     The Oklahoma And California Claims Are Time-Barred Against The Additional Defendants.

Plaintiffs allege they purchased their alleged securities no later than November 11, 2022—the day of FTX's collapse. AC ¶ 930; *see also* Mot. at 30-31. And Plaintiffs obtained actual knowledge of the core facts needed to bring their claims by November 15, 2022, when they first filed suit against other Defendants, *see, e.g., Garrison v. Bankman-Fried*, No. 22-cv-23753 (S.D.

---

[10] As explained elsewhere, Plaintiffs also have not stated a claim for material participation.

Fla.) (filed Nov. 15, 2022), and they did not bring suit against Additional Defendants until more than a year later. Plaintiffs ignore binding authority establishing that it is proper to dismiss where, as here, "it is 'apparent from the face of the complaint' that the claim is time-barred." *See Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1235, 1239 (M.D. Fla. 2023) (citation omitted).

Plaintiffs also argue that California law imposes an "actual notice" standard for pleading fraud claims under § 25507(a), relying on a three-decade-old decision, *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal. App. 3d 314, 321 (1990). Opp. at 20. But more recent decisions have rejected *Eisenbaum's* actual notice standard as dicta. *See, e.g., Yuba City Unified Sch. Dist. v. Cal. State Tchrs.' Ret. Sys.*, 18 Cal. App. 5th 648, 657 (2017); *Deveny v. Entropin, Inc.*, 139 Cal. App. 4th 408, 422–23 (2006). An unregistered securities violation immediately triggers inquiry notice. *See* Mot. at 30–31; *Sagehorn v. Engle*, 141 Cal. App. 4th 452, 461 (2006). Although Plaintiffs observe that *Sagehorn* addressed a federal claim, that principle translates to state claims. *See id.* ("[I]t is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities.") (citation omitted); *see also* Order at 16 (applying federal solicitation standard).[11]

Plaintiffs also are wrong that their claims against the Additional Defendants did not materialize until they learned new facts "within one year of filing." Opp. at 20 & n.13. The alleged promotions that supposedly induced Plaintiffs to sign up for FTX occurred well over a year before they filed claims against the Additional Defendants. Moreover, Plaintiffs cannot say both that they were induced to purchase unregistered securities *as a result* of an Additional Defendant's alleged promotions *and* that they had no notice of the Additional Defendants' involvement; it must be one or the other. That Plaintiffs may have learned certain additional or supporting facts has no bearing on when they had notice of their claims sufficient to trigger the relevant limitations periods.

---

[11] Plaintiffs agree that inquiry notice is sufficient under Oklahoma law.

Finally, Plaintiffs argue that the claims in the Amended Complaint "relate back" to the complaint filed in August 2023. But Rule 15(c)(1)(C) permits relation back only when a defendant "knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*."[12] *See* Fed. R. Civ. P. 15(c)(1)(C). Plaintiffs do not allege any facts establishing those requirements. Nor could they, as mere "lack of knowledge about whom to sue" is not a "mistake" of identity for purposes of this rule. *Bloodworth v. United States*, 623 F. App'x 976, 979 (11th Cir. 2015).

## II.   The Court Should Strike Damages Allegations Inconsistent With State Law.

If the Court does not dismiss, it should strike Plaintiffs' allegations regarding unrecoverable damages. A motion to strike is appropriate where a pleading seeks "damages . . . not recoverable under" the governing law, *see* Mot. at 31, as Plaintiffs do here. Florida, California, and Oklahoma securities laws limit recovery to the difference between purchase price (plus interest) and disposition price (plus any income received). Mot. at 31–32. Yet Plaintiffs seek damages measured by what their alleged assets (that they no longer hold) might be worth *today*. AC ¶¶ 1203–09. Plaintiffs also seek a panoply of other forms of impermissible relief (restitution, disgorgement, declaratory relief, injunctive relief, and punitive damages). *Id*. at 513–14.

Tellingly, Plaintiffs do not cite any authority supporting this requested relief. Instead, Plaintiffs argue that their recoveries from the bankruptcy estate are relevant to whether they have suffered any cognizable harm. Opp. at 22–23. While that is true, it does not entitle Plaintiffs to recoveries beyond the statutory limits. And Plaintiffs' contention that the Court should allow their "damages theory to be tested in discovery," Opp. at 22–23, only invites an "unnecessary" fishing

---

[12] Plaintiffs suggest the "nearly identical" Oklahoma relation back standard may apply, Opp. at 21–22, but Plaintiffs make arguments based on the Federal Rules and identify no difference.

expedition into legally irrelevant and "immaterial matters." *Gandhi v. Carnival Corp.*, 2014 WL 1028940, at *2 (S.D. Fla. Mar. 14, 2014) (granting motion to strike).

### III.   Plaintiffs' Claims Belong In Arbitration And Cannot Be Adjudicated As Class Claims.

"[B]ackground principles" of "contract law" "allow a contract to be enforced by . . . nonparties." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Whether Defendants may invoke those principles here is a question delegated to the arbitrator. But no matter who decides the question, Plaintiffs cannot avoid arbitration or maintain this case as a class action.

#### A.   Defendants' Ability To Enforce Agreement Is Delegated To The Arbitrator.

Seeking to avoid the US ToS's broad delegations, Plaintiffs argue that a Court, not an arbitrator, must decide nonsignatory enforcement because it implicates "[w]hether an arbitration agreement exists." Opp. at 25–26. That is wrong. Plaintiffs do not dispute that they agreed to the FTX US ToS, so there is no contract formation question for the Court to resolve. Rather, the question is "who is bound by" Plaintiffs' undisputed agreement, *Arthur Andersen*, 556 U.S. at 630, which concerns scope or enforceability. Mot. at 35. The arbitration provision delegates all such questions to the arbitrator. U.S. ToS § 30(c), Dkt. 943-5. "When a contract delegates threshold questions to the arbitrator, courts must honor that delegation." *Lamonaco v. Experian Info. Sols., Inc.*, 141 F.4th 1343, 1348 (11th Cir. 2025).

To be sure, a signatory to an arbitration agreement may not be able to enforce a delegation clause *against a nonsignatory*, as in *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1319–21 (11th Cir. 2024). But that is not the situation here. And the considered consensus does not apply this same rule where the nonsignatory is seeking to enforce a delegation clause against a party who undoubtedly agreed to it. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir.

2020).[13] Plaintiffs do not otherwise challenge the delegation clause, so this Court "must honor" it. *Lamonaco*, 141 F.4th at 1348–49.

Plaintiffs also suggest that the US ToS "limits the scope of arbitrable disputes to those between the signatories." Opp. at 23. That is a challenge to scope, not delegation, so the arbitrator must resolve it. In any event, Plaintiffs are incorrect: the arbitration clause covers "any dispute, claim or controversy arising out of or relating to these Terms . . . or the use of the Services." U.S. ToS § 30(a), Dkt. 943-5. The Int'l ToS likewise delegates scope questions to the arbitrator, Mot. at 37, and the provisions that Plaintiffs rely on to avoid arbitration are inapposite: Section 19.3 governs third-party purchases, and Section 38.9 exempts Section 38.12.8's arbitration clause.

## B. Defendants Are Entitled To Invoke The Arbitration And Class Waiver Provisions.

Plaintiffs wrongly suggest that Florida law governs the equitable estoppel issues. That too is wrong. The agreement specifies California law, not Florida law, governs. U.S. ToS § 29, Dkt. 943-5. Either way, Plaintiffs must arbitrate.

**Equitable Estoppel**. Plaintiffs contend that their allegations of concerted misconduct (1) do not implicate the US ToS's obligations, and (2) do not matter because Plaintiffs have not sued FTX. Opp. at 29–31. Both arguments are wrong. Plaintiffs cannot avoid arbitration because their claims that Defendants conspired with FTX to sell unregistered securities "are based on the same facts and are inherently inseparable" from arbitrable claims against FTX. *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen*,

---

[13] Plaintiffs' reliance on *Garn v. South Florida Stadium LLC*, 2025 WL 1279071, at *3 (S.D. Fla. Mar. 26, 2025), Opp. at 27, is unfounded. *Garn*—currently on appeal, No. 25-11407 (11th Cir. Apr. 25, 2025)—suggests (wrongly) that third parties can *never* enforce delegation clauses.

556 U.S. 624. And equitable estoppel "prevents [a signatory] from sidestepping [an arbitration] agreement by bringing claims solely against [a nonsignatory]." *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024); *see also Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 241–43 (11th Cir. 2011).

Plaintiffs expressly rely on the US ToS's terms. Plaintiffs suggest that no "reference to" the terms is necessary to resolve their claims. Opp. at 28–29. But they repeatedly reference the FTX US ToS aim to advance their claims, *see, e.g.*, AC ¶¶ 118, 120, 162 & n.46, 163, 169, including asserting that "YBAs are in fact 'an offering of unregistered securities . . . to [United States] residents,'" *id.* ¶ 292, which necessarily relies on the US ToS. Plaintiffs seek to recover for losses of assets held via the "FTX platform," Opp. at 11; AC ¶¶ 54–70, 295–304—which centers on Plaintiffs' allegations that FTX violated the US ToS provisions regarding digital asset custody, AC ¶¶ 162–63; *In re Jan. 2021 Short Squeeze Trading Litig.*, 2025 WL 1865945, at *4 n.4 (S.D. Fla. Apr. 8, 2025) (applying California and federal law in allowing nonsignatory enforcement).

**Agency**. Plaintiffs entirely ignore that they fail to (but must) allege that each Defendant is an agent in order to prevail on their claims. AC ¶¶ 9, 324, 1238.[14] These allegations independently require arbitration. A plaintiff "cannot slough off" its own allegations "to allow it to disavow the relationship for purposes of arbitration." *In re Oil Spill by Amoco Cadiz Off Coast of France March 16, 1978*, 659 F.2d 789, 795–96 (7th Cir. 1981). Because Plaintiffs "allege[] that a non-signatory defendant is an 'agent' of a signatory," Defendants "may compel arbitration." *Arouh v. GAN Ltd.*, 2024 WL 3469032, at *9 (C.D. Cal. Mar. 22, 2024) (California law).

## C.     Defendants Did Not Waive Their Right To Compel Arbitration.

Plaintiffs' argument that Defendants waived their right to compel arbitration falls flat. As

---

[14] These allegations are not sufficient to show agency, and Defendants are not agents of FTX.

a threshold matter, waiver by litigation conduct is a question of arbitrability that the US ToS (or International ToS) also delegates to the arbitrator. *See Kirkham v. TaxAct Inc.*, 2025 WL 914307, at *3 (3d Cir. Mar. 26, 2025); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011). To honor that delegation, the Court must not resolve that question either. *Supra* at 16–17.

But even if the Court reaches the issue, there is no waiver here. The Additional Defendants have *not* previously moved to dismiss. And the remaining Defendants have not waived. No waiver occurs when, as here, defendants "move[] to dismiss" but "initiate[] no formal discovery." *Creative Sols. Grp., Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001). In any event, a material amendment that expands the litigation's scope "nullifie[s]" any waiver. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202–04 (11th Cir. 2011); *see also Krinsk v. SunTrust Bank*, 2012 WL 12906338, at *6 (M.D. Fla. Feb. 1, 2012) (amendment permitted invocation of class action waiver). That is what happened when Plaintiffs added 200+ pages to their pleading, adding, among other things, new parties and "new factual allegations regarding the coordinated scope of the[] promotional campaign," Opp. at 2—which bear on equitable estoppel and agency, *supra* at 17–18.

### D. The Class Action Waiver Applies Irrespective of Arbitration.

Plaintiffs offer no meaningful response to Defendants' request to strike the class allegations. *See* Mot. at 38. Plaintiffs cannot invoke their arguments against an arbitration provision to resist the application of a "distinct" class action waiver. *Pace v. Hamilton Cove*, 258 N.J. 82, 98 (2024). The class action waiver requires that the named Plaintiffs' claims must be litigated individually, whether in arbitration or in court, and Plaintiffs do not contend this waiver is invalid. *See* Opp. at 32. Because a class action waiver may be invoked up until the class certification stage, Defendants may certainly invoke it now. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 686 (4th Cir. 2023). Plaintiffs' class allegations should therefore be stricken.

## IV.    The Court Should Stay The Case Pending Resolution Of The FTX Bankruptcy.

Plaintiffs offer no compelling reason this case should not be stayed pending resolution of the FTX bankruptcy. Even if Plaintiffs were right that the bankruptcy will not "fully" address their damages, Opp. at 39–40 (and they are not: FTX debtors have already distributed over $6.5 billion to claimants as of June 30, 2025, *see* FTX Financial Report at 14, with further distributions of $1.9 billion having been approved for September 30, 2025, *see id.*), a stay would still be warranted because "plaintiffs' recovery of *some portion* of their [damages] in the bankruptcy action will impact the plaintiffs' potential recovery in this action." *Pickett v. Atl. Se. Airlines, Inc.*, 2007 WL 9701594, at *2 (N.D. Ga. Mar. 30, 2007); *see also Fitzer v. Am. Inst. of Baking, Inc.*, 2010 WL 1955974, at *2 (S.D. Ga. May 13, 2010) (granting stay to prevent "risk of double recovery").

Plaintiffs also are wrong that Defendants must show that the absence of a stay would prejudice them. Courts have "broad discretion" "to promote judicial economy, reduce confusion or prejudice, and prevent [] inconsistent resolutions," so long as there is "little possibility the stay will harm others." *Interim Healthcare, Inc. v. Interim Healthcare of Se. La., Inc.*, 2020 WL 3078531, at *9 (S.D. Fla. June 10, 2020) (citations omitted). Courts routinely issue stays to prevent double recoveries, without necessarily finding that the moving party would be prejudiced absent a stay. *See Fitzer*, 2010 WL 1955974, at *2; *Pickett*, 2007 WL 9701594, at *2.[15]

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims with prejudice. Alternatively, the Court should compel arbitration, strike class allegations and damages claims, or, at minimum, stay the case pending resolution of FTX's bankruptcy. Defendants reserve the right to seek reasonable attorneys' fees pursuant to Florida Statute § 517.211(7).

---

[15] Any stay would not be "indefinite in scope," Opp. at 40, since it would end with the bankruptcy.

Dated: September 15, 2025

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
Phone: (305) 577-3100

By: */s/ Pravin R. Patel*
Pravin R. Patel
Florida Bar No. 0099939
 *pravin.patel@weil.com*
Alli G. Katzen
Florida Bar No. 1024803
 *alli.katzen@weil.com*

Zachary A. Schreiber
 *zach.schreiber@weil.com*
767 Fifth Avenue
New York, New York 10153
Phone: (212) 310-8000

*Attorneys for Defendant Shohei Ohtani*

**WEIL, GOTSHAL & MANGES LLP**
Pravin R. Patel
Florida Bar No. 0099939
 *pravin.patel@weil.com*
Alli G. Katzen
Florida Bar No. 1024803
 *alli.katzen@weil.com*
1395 Brickell Avenue, Suite 1200
Miami, FL 33131-3368
Phone: (305) 577-3100

Yehudah L. Buchweitz
 *yehudah.buchweitz@weil.com*
Caroline H. Zalka
 *caroline.zalka@weil.com*
Zachary A. Schreiber
 *zach.schreiber@weil.com*
767 Fifth Avenue
New York, New York 10153
Phone: (212) 310-8000

By: */s/ Pravin R. Patel*
Pravin R. Patel

*Attorneys for Defendant MLB Players, Inc.*

**COLSON, HICKS, EIDSON, P.A.**
255 Alhambra Circle, Penthouse

Coral Gables, Florida 33134
(305) 476-7400

By: */s/ Roberto Martínez*
Roberto Martínez
Florida Bar No. 305596
  *bob@colson.com*
Stephanie A. Casey
Florida Bar No. 97483
  *scasey@colson.com*
Zachary Lipshultz
Florida Bar No. 123594
  *zach@colson.com*

*Attorneys for Defendants Thomas Brady,
Lawrence David, Golden State Warriors, LLC,
Naomi Osaka, Riot Games, Inc., and North
America League of Legends Championship
Series LLC*

**LATHAM & WATKINS LLP**
Andrew B. Clubok (*pro hac vice*)
  *andrew.clubok@lw.com*
Susan E. Engel (*pro hac vice*)
  *susan.engel@lw.com*
Brittany M.J. Record (*pro hac vice*)
  *brittany.record@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200
Fax: +1.202.637.2201

**LATHAM & WATKINS LLP**
Marvin S. Putnam (*pro hac vice*)
  *marvin.putnam@lw.com*
Jessica Stebbins Bina (*pro hac vice*)
  *jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500
Fax: +1.424.653.5501

**LATHAM & WATKINS LLP**
Michele D. Johnson (*pro hac vice*)
  *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235
Fax: +1.714.755.8290

By: */s/ Jessica Stebbins Bina*
Jessica Stebbins Bina

*Attorneys for Defendants Thomas Brady, Lawrence David, FuriaGG Corp, Furia Esports LLC, Furia Experience LLC, Lincoln Holdings LLC, and Mercedes-Benz Grand Prix Limited*

**GIBSON, DUNN & CRUTCHER LLP**

Matthew S. Kahn (*pro hac vice*)
  *MKahn@gibsondunn.com*
Michael J. Kahn (*pro hac vice*)
  *MJKahn@gibsondunn.com*
Sean F. Howell (*pro hac vice pending*)
  *SHowell@gibsondunn.com*
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Phone: 415.393.8200

Michael Dore (*pro hac vice*)
  *MDore@gibsondunn.com*
333 South Grand Avenue
Suite 4600
Los Angeles, CA 90071-3197
Phone: 213.229.7155

By: */s/ Michael J. Kahn*
Michael J. Kahn

*Attorneys for Defendants Golden State Warriors, LLC, Naomi Osaka, Riot Games, Inc., and North America League of Legends Championship Series LLC*

**HECKER FINK LLP**
Sean Hecker
  *shecker@heckerfink.com*
John Quinn
  *jquinn@heckerfink.com*
Sabrina Alvarez-Correa
  *salvarezcorrea@heckerfink.com*
Hecker Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
(212) 763-0883

By: */s/ John Quinn*
John Quinn

*Counsel for Defendants Office of the Commissioner of Baseball d/b/a Major League Baseball, Major League Baseball Properties, Inc., MLB Advanced Media, L.P., and The MLB Network, LLC*

**McDERMOTT WILL & EMERY LLP**
333 SE 2nd Ave., Suite 4500
Miami, Florida 33131
Telephone: (212) 547-5768
Facsimile: (305) 347-6500

By: */s/ Nathan Bull*
Nathan Bull (Fla. Bar No. 1029523)

**McDERMOTT WILL & EMERY LLP**
Jason D. Strabo (*pro hac vice* pending)
  *jstrabo@mwe.com*
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Telephone: (310) 788-4125
Facsimile: (310) 277-4730

**McDERMOTT WILL & EMERY LLP**
Sarah P. Hogarth (*pro hac vice*)
  *shogarth@mwe.com*
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8354
Facsimile: (202) 756-8087

*Attorneys for Defendant Stephen Curry*

**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700

By: */s/ Christopher S. Carver*
Christopher S. Carver, Esq.
Florida Bar No. 993580
  *christopher.carver@akerman.com*
Jason S. Oletsky, Esq.
Florida Bar No. 9301
  *jason.oletsky@akerman.com*
Katherine A Johnson, Esq.
Florida Bar No. 1040357
  *katie.johnson@akerman.com*

Bryan T. West
Florida Bar No. 83526
  *bryan.west@akerman.com*
Three Brickell City Centre
98 Southeast Seventh Street – Suite 1100
Miami, FL 33131
Tel.: 305-374-5600
Fax: 305-374-5095

*Attorneys for Defendant David Ortiz*

24

**NEIMAN MAYS FLOCH & ALMEIDA PLLC**
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel: (954) 462-1200

By: */s/ Jeffrey Neiman*
Jeffrey Neiman
Fla Bar. No. 544469
  jneiman@nmflawfirm.com

Brandon Floch
Fla. Bar No. 125218
  bfloch@nmfalawfirm.com

**BERK BRETTLER LLP**
9119 Sunset Boulevard
West Hollywood, CA 90069
Tel.: (310) 278-2111
Andrew B. Brettler (*pro hac vice*)
  abrettler@berkbrettler.com

*Attorneys for Defendant Kevin O'Leary and Solomid Corporation, D/B/A Team Solomid, TSM, and/or TSM FTX*

**SQUIRE PATTON BOGGS (US) LLP**
Dorian Daggs (Fla. Bar No. 1028485)
  *Dorian.daggs@squirepb.com*
Digna B. French (Fla. Bar No. 148570)
  *Digna.french@squirepb.com*
Amanda E. Preston (Fla. Bar No. 123652)
  *Amanda.preston@squirepb.com*
200 S. Biscayne Boulevard, Ste. 3400
Miami, Florida 33131
(305) 577-7000

By: */s/ Dorian Daggs*
Dorian Daggs

*Counsel for Defendant Udonis Haslem*

**HOLLAND & KNIGHT LLP**
Stephen P. Warren (Fla. Bar No. 788171)
  *Stephen.Warren@hklaw.com*
Brandon T. White (Fla. Bar No. 106792)
  *Brandon.White@hklaw.com*
Andrew W. Balthazor (Fla. Bar No. 1019544)
  *Andrew.Balthazor@hklaw.com*

701 Brickell Avenue, Suite 3300
Miami, Florida 33131
(305) 374-8500

By: */s/ Stephen P. Warren*
Stephen P. Warren

*Attorneys for Defendant Wasserman Media Group, LLC*

**BUCHANAN INGERSOLL & ROONEY PC**
Mark Kornfeld
 Mark.Kornfeld@bipc.com
401 E. Jackson Street, Suite 2400
Tampa, Florida 33602
(813) 222-8180

By: */s/ Mark Kornfeld*
Mark Kornfeld

*Attorney for Defendant Dentsu McGarry Bowen LLC*

**WASERSTEIN & NUNEZ, PLLC**
Carlos A. Nunez-Vivas
Fla. Bar. No. 128181
 carlos@wnlawgroup.com
1124 Kane Concourse
Bay Harbor, Florida 33154
Tel: (305) 563-1011

*/s/ Carlos A. Nunez-Vivas*
Carlos A. Nunez-Vivas

*Attorneys for Defendant Gisele Bündchen*