UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| IN RE FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | Case No. 1:23-md-03076-KMM (MDL No. 3076) Hon. K. Michael Moore United States District Judge |

This Document Relates To: All Actions; and the separately prosecuted, non-class action,

Lucky D., et al. v. Prager Metis Advisors, LLC, et al.,

No. 2:23-cv-00389-MCA (D.N.J.) (transferred for pretrial coordination in MDL 3076).

**LUCKY D PLAINTIFFS' RULE 24 REVISED MOTION TO INTERVENE IN ANTICIPATION OF SECURING STANDING TO OBJECT TO PUTATIVE CLASS PLAINTIFFS' PROPOSED SETTLEMENT WITH AUDITOR DEFENDANTS IN RULE 23 e) HEARING**

**Introduction and Requested Relief.** The Lucky D plaintiffs hereby petition this court seeking an order permitting them to intervene in the pending Rule 23(e). Plaintiffs hereby withdraw the prior motion filed on November 7 and refile this combined motion and legal memorandum. In addition to intervention, Lucky D seek: (i) access to the unredacted settlement agreement and all exhibits/side letters under the MDL Protective Order (ECF No. 483);

**Summary of Grounds.** Intervention is proper as of right under Rule 24(a)(2) because: (1) Lucky D has a significant protectable interest in its live federal claims; (2) absent relief, final approval could impair or impede Lucky D's ability to protect those interests; and (3) the settling parties do not adequately represent Lucky D. Alternatively, permissive intervention is appropriate under Rule 24(b) because Lucky D's request presents common legal issues regarding settlement scope and notice. MDL transfer under 28 U.S.C. § 1407 does not merge individual actions; Lucky D retains its separate identity. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36–37 (1998). A Rule 23(e) settlement may bind a certified class, but it cannot silently extinguish or enjoin an outsider's direct claims without consent and due process. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997); Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999); Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985).

**Requested Relief.**

1. Permit these plaintiffs to intervene in the proposed settlement approval proceeding of Rule 23(e);

2. Order unsealing of filed proposed settlement terms and related documents on behalf of only these plaintiffs,

.

## Memorandum of Law

### Statement of Facts

The Complaint in this matter, originally filed in the District of NJ by twenty (20) plaintiffs, all residents of foreign nations, asserts jurisdiction over only two named defendants Prager Metis LLP and Armanino, LLC asserting diversity of citizenship over the former with a principal place of business in NJ and the with a principal place of business in California.

The First Count of the Complaint alleges both named defendants committed professional malpractice in conducting audits of FT in 2020 and 2021 by failing to comply with auditing standards in accordance with Generally Accepted Accounting Principles . In such audits, defendants are alleged to have failed to comply with the standards set by the American Institute of CPAs Auditing Standards Board for nonpublic companies. The complaint alleges that plaintiffs relied on the audit reports in becoming customers of FTX and depositing their cryptocurrency assets with FTX which were converted by FTX and its agents.

The second count simply alleges in rendering those audit reports defendants were always aware of FTX's precarious financial position and committed common law fraud by publishing those reports knowing potential customers would rely upon the reports in choosing FTX' platform to deposit their assets which assets were later converted.

## Legal Argument

**I.      These plaintiffs have *prima facie* demonstrated an interest in the fund proposed to be distributed to the putative class.**

In <u>Ortiz v. Fibreboard,</u> 527 US 615 (1999), the Supreme Court identified "presumptively necessary conditions for certification in limited fund cases." One of these conditions is a "fund" with definitively ascertained limits such that "the totals of the aggregated liquidate claims and the fund available to satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims being asserted. Id. at 838. Classic examples include "trust assets, a bank account, insurance proceeds, company assets in a liquidation sale and proceeds of a ship sale in a maritime accident suit. Id. quoting 1 Newberg on Class Actions at 4-33.

Plaintiffs' complaint here is confined to two counts against only the two auditor defendants, professional malpractice and common law fraud. While the funds earmarked

for class distribution in the proposed settlement are filed under seal, and discovery is stayed, it is fair for the court to presume these defendants carried malpractice insurance (errors and omissions) and other insurance to shield the licensed individual professional from personal liability.

> II.  These plaintiffs must be afforded full disclosure of the sealed proposed class settlement terms in anticipation of the scheduled 23(e) hearing and file objection(s) they deem appropriate in anticipation.

In In re Temple, 851 F. 2d 1269 (11th Cir. 1988), an asbestos manufacturer moved to consolidate all present and future asbestos related actions against it and to certify a mandatory class action. The company asserted that certification was warranted under R. 23(b)(1)(B) because its assets constituted a limited fund in the sense that they were insufficient to satisfy all claims. Without notifying any class members or conducting an adversarial proceeding on the existence of a limited fund, the lower court accepted the defendants' assertions that its insurance and other funds would not cover its potential tort liability; the lower court in granting class certification as proposed by defendant accepted that defendnat's assertion that the costs of defending numerous small actions were rapidly depleting the company's resources. Certification was reversed by the Court of Appeals because the lower court failed to notify petitioners of the certification procedure violating due process.

Here, plaintiffs must be permitted to determine whether the earmarked settlement funds are restricted to insurance proceeds, bank accounts etc. which if distributed without their ability to object to certification will in all likelihood result in

plaintiffs respectively having uncollectible claims against likely insolvent defendants. They are clearly entitled to unsealing now with the 23(e) hearing just weeks away.

III.    Intervention by these plaintiffs, whether deemed as of right or granted with court permission, must be ordered to ensure class certification is properly granted and, if so, which type of 23 class is appropriate.

In <u>In re Family Dollar Stores Inc. Pest Infestation Litigation</u>, 2023 WL 562195 (WD Tenn. 2023), fifteen or so plaintiffs brought a consolidated class action against defendant retailer alleging they sold rodent contaminated products from infestations of their stores in 11 states. The State of Arkansas sued Family Dollar (FD) in state court under the state Trade Practices Act. At the same period, thirteen other lawsuits were filed in seven states by ordinary consumers also alleging violation of the TPA and all the actions were transferred to an MDL. However, the Arkansas matter was not transferred to the MDL. At the outset,. Plaintiffs and the State entered into an agreement to coordinate discovery and agreed to seek restitution with the plaintiffs keeping 80% of settlement and the state 20%.

Unfortunately, FD agreed to engage in mediation with the plaintiffs and then refused to allow the State to participate in the mediation. When the matter was settled at mediation, Arkansas asked for disclosure of the material terms of the settlement in the mediator's long form settlement agreement indluding just the plaintiffs. Arkansas insisted that the final settlement agreement must specify that the state claims were not

encompassed in the settlement agreement and would not be abrogated as a double recovery, a so-called "carve out." However, later on in the litigation the Arkansas Attorney General became unhappy with the limited protection of just a carve out clause in the settlement and decided that the State opposed that the class plaintiffs receive any settlement under the state TPA. They sought to intervene "and more explicitly" carve out the TPA claims. The court analyzed whether the motion to intervene was too late, holding it was a close call given the late stages of discovery but permitted intervention because of the state's public policy reasons for enforcing the TPA. The court held that Arkansas' interest would not be protected by a simple carve out clause and permitted them to intervene as of right (See F. R. Civ. Pro 24a noting an intervenor's burden is minimal in the it need only show that impairment of its substantial legal interest was possible if intervention was denied (citation omitted).

    In this matter a simple carve out clause in the settlement would not be sufficient to ensure that these plaintiffs' interest in a limited fund would not be severely compromised if they are not permitted to intervene. Like Arkansas, these plaintiffs were not allowed to participate in the settlement. Unlike Arkansas, these plaintiffs were part of the MDL but intentionally ignored and excluded by both the putative class representatives . They were apparently excluded because at no point did these parties ever consider that this might a limited fund case. At the same time, they have sought to protect the individual auditors from personal liability thus implying that the fund is limited to proceeds as defined in Ortiz.

Conclusion

Based on the aforementioned facts and law, this Court should grant limited-purpose intervention granting these plaintiffs standing to object to settlement in the pending scheduled 23 (e) hearing. In addition, in order to enable plaintiffs to prepare for the pending hearing, this court must immediately unseal order access to core settlement materials in antiicaption of intervention.

Local Rule 7.1(a)(3) Certification

See attached Certification with exhibits.

Dated: November 21, 2025

Respectfully submitted,

/s/ Anthony Scordo

Anthony Scordo, Esq.

The Law Office Of Anthony Scordo, Esq. PC

69 E. Allendale Road

Saddle River, New Jersey 07458

P.O. Box 74, Cedar Grove, New Jersey 07009

Ph: 973-837-1861   Fax: 973-837-9650

Email: anthonyscordo@msn.com

N.J. Bar No.: _____ (to be supplied)

(Pro Hac Vice application forthcoming)

/s/ Edward E. Lehman

Edward E. Lehman, Esq.

Illinois ARDC #6194489

Lehman, Lee & Xu PC

33rd Floor, Tower One, Times Square

1 Matheson Street, Causeway Bay

Hong Kong SAR, PRC

Tel: +852-3588-2188  Fax: +852-3588-2088

Email: mail@lehmanlaw.com

(Pro Hac Vice application forthcoming)

Certificate of Service

I certify that on November 07, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Edward E. Lehman

Edward E. Lehman

EXHIBIT A — CAPTION-SPECIFIC CARVE-OUT

For the avoidance of doubt, nothing in the Settlement Agreement, any release, bar order, injunction, notice, judgment, or order of this Court shall release, impair, enjoin, stay, reduce, offset, or otherwise affect the claims asserted in Lucky D., et al. v. Prager Metis Advisors, LLC, et al., No. 2:23-cv-00389-MCA (D.N.J.) (transferred for pretrial coordination in MDL 3076), or the rights of the plaintiffs there to prosecute, conduct discovery, settle, try, appeal, collect on, or enforce any judgment in that action. To the extent of any inconsistency between this paragraph and any other provision of the Settlement Agreement or any order entered herein, this paragraph controls.

EXHIBIT B — LIMITED BAR-ORDER SCOPE

Any bar order entered in connection with this Settlement shall be limited to claims for contribution, indemnity, or other claims for equitable or comparative sharing of damages among the Released Persons relating to claims released by the Settlement Class, with a judgment-reduction/offset provision. The bar order shall not preclude, impair, delay, or enjoin any direct claim by the Lucky D plaintiffs against any defendant in Lucky D., et al. v. Prager Metis Advisors, LLC, et al.

EXHIBIT C — RULE 23(e) NOTICE CLARIFICATION (ONE LINE)

This settlement and any related order do not release, stay, or otherwise affect separately represented, non-class actions, including Lucky D., et al. v. Prager Metis Advisors, LLC, et al., No. 2:23-cv-00389-MCA (D.N.J.).