UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

**FTX Cryptocurrency Exchange Collapse MDL Litigation**

THIS DOCUMENT RELATES TO:

    All Actions

                                                      /

**DEFENDANT PRAGER METIS CPAS, LLC'S RESPONSE IN OPPOSITION TO LUCKY D PLAINTIFFS' RULE 15 MOTION TO AMEND JOINT COMPLAINT**

Defendant Prager Metis CPAs, LLC ("Prager Metis") hereby submits this Response in Opposition to the Lucky D Plaintiffs'[1] "Motion to Amend Joint Complaint to Add Individual Defendants Pursuant to Rule 15" (Dkt. 1062) (the "Motion to Amend").

Last fall, Prager Metis and Court-appointed co-lead counsel for the putative class of MDL Plaintiffs agreed in principle to a class-wide settlement extinguishing all FTX-related claims against Prager Metis. Dkt. 998. The Lucky D Plaintiffs, as class members, stand to benefit if the settlement is approved, unless they choose to opt out of the settlement in due course pursuant to Federal Rule of Civil Procedure 23. However rather than comply with the Federal Rules, Lucky D and an indeterminate number of co-plaintiffs[2] have initiated a chaotic campaign to subvert the

---

[1] As used herein, "Lucky D Plaintiffs" refers to the group of individual FTX customers led by "Lucky D" who initially sued Prager Metis in the District of New Jersey (No. 23-cv-389), were subsequently transferred into the MDL, and now move to amend the (undefined) "joint complaint." Dkt. 1062.

[2] The number, identities, and legitimacy of Lucky D Plaintiffs have never been determined. Attorneys Scordo and Lehman characterize their clients as "*20 or so* foreign-based individual customers of FTX" and admit that that lead Plaintiff "Lucky D" is "a *fictitious* name created to protect his identity." Dkt. 1051 at 2, 4 (emphases added). Most Lucky D Plaintiffs are identified by initials rather than names. Furthermore, *eighteen* of the "20 or so" Lucky D Plaintiffs apparently

1

MDL and divest all FTX customers but themselves from any interest in this Action. In so doing, they ignore both this Court's Orders and Federal Rule of Civil Procedure 23.

After declining to file anything in the MDL for two and a half years, the Lucky D Plaintiffs began their campaign shortly after MDL Plaintiffs and Prager Metis noticed their settlement-in-principle last October. Dkt. 998. Between November and December, the Lucky D Plaintiffs bypassed all conferral requirements and filed *five* cascading versions of a Rule 24 motion to intervene, all aimed at undermining the settlement-in-principle. Dkts. 1007, 1020–22, 1030. As explained in Prager Metis's responses, Dkts. 1023, 1027, 1037, all iterations of the Lucky D Plaintiffs' Rule 24 motion were procedurally invalid and legally meritless. In January, the Lucky D Plaintiffs filed a reply which failed to articulate a legal basis for intervention and instead resorted to schoolyard name-calling against co-lead Plaintiffs' counsel appointed by the Court. Dkt. 1051.

Now, purporting to represent "joint plaintiffs" (an undefined term), counsel for the Lucky D Plaintiffs moves "on plaintiffs' behalf for an Order seeking leave to amend the joint complaint," Dkt. 1062 at 2,[3] so they can add new defendants, inflate their purported damages, and exclude all but twenty-one FTX customers from suing FTX's independent auditors. This motion is likewise incomprehensible and legally infirm. The Court should deny the Motion to Amend with prejudice because (1) it is procedurally invalid, (2) it is futile, and (3) it is unduly delayed.

## ARGUMENT

In this consolidated action, individual plaintiffs like the Lucky D Plaintiffs are not empowered to revive their pre-consolidation actions, much less tear up the consolidated MDL complaint and pursue their individual claims in the middle of the MDL process. Even if the Lucky

---

changed their nationalities between 2023 and 2026. *See* Exh. 1 (redline comparing original and amended Lucky D Complaints).

[3] Pincites to Dkt. 1062 and its attachments refer to ECF pagination.

2

D Plaintiffs could move for leave to amend the MDL complaint (which they cannot), this Motion should be denied as futile.

## I. The Motion is Procedurally Invalid

Purporting to move on behalf of "joint plaintiffs" (an undefined term) and seeking to amend the "joint complaint" (also undefined), the Lucky D Plaintiffs never specify whether they wish to amend the pre-transfer complaint they filed in the District of New Jersey (No. 23-cv-389) (the "New Jersey Complaint") or the consolidated MDL Complaint against the Auditor Defendants (Dkt. 158, the "MDL Complaint"). In either event, the Motion to Amend is procedurally invalid.

### A. Lucky D Plaintiffs Cannot Amend the New Jersey Complaint Because it Was Superseded by the MDL Complaint, and the New Jersey Action is Closed Pending Resolution of the MDL

To the extent the Lucky D Plaintiffs now seek to revive and amend their standalone New Jersey complaint,[4] they may not do so because that matter is closed and the New Jersey Complaint was superseded by the MDL Complaint.

There is no standalone Lucky D dispute pending in the District of New Jersey, or anywhere else for that matter. By order of the JPML, the Lucky D dispute was transferred *in toto* to the Southern District of Florida in October 2023. JPML No. 3076 at Dkt. 216; D.N.J. Dkt. 23-cv-389 Dkt. 48. Originally assigned its own case number in the Southern District of Florida, the Court *sua sponte* stayed and closed the Lucky D matter while claims proceed in the MDL. S.D. Fla. No. 23-cv-23871 at Dkt. 52. In so doing, the Southern District of Florida expressly retained jurisdiction and noted that *Lucky D* could "be restored to the active docket upon motion of a party if circumstances change so that the action may proceed to final disposition." *Id.* Lucky D Plaintiffs

---

[4] Lucky D Plaintiffs clearly used their original New Jersey Complaint as a model for their Proposed Amended Complaint. *See* Exhibit 1 (redline comparing the two documents).

have not moved to reopen the matter or lift the stay and cannot, therefore, amend their standalone complaint in any forum.

Furthermore, the New Jersey Complaint was mooted and superseded by the entry of the consolidated MDL Complaint against the Auditor Defendants (Dkt. 158). In an MDL, "[a] transferee court may require parties to file consolidated amended complaints superseding original ones." *In re Korean Air Lines Co.,* 642 F.3d 685, 699–700 (9th Cir. 2011). On June 21, the Court overseeing this MDL did exactly that. *See* Dkt. 61 at 1, 4 (consolidating all FTX cases transferred by the MDL into "one action," appointing a Leadership Structure authorized to speak on behalf of plaintiffs, and ordering plaintiffs to "file consolidated amended complaints within 45 days"). On August 8, 2023, Plaintiffs filed the consolidated MDL Complaint against the Auditor Defendants. The MDL Complaint seeks class-wide relief on behalf of all FTX customers (including all Lucky D Plaintiffs). Dkt. 158 at 138. The MDL Complaint lawfully superseded the New Jersey complaint, so the New Jersey Complaint is neither pending nor amendable at this time. *See Korean Air Lines,* 642 F.3d at 699.

### B. Lucky D Plaintiffs Cannot Amend the MDL Complaint Because They Are Not in the MDL Leadership Structure

Counsel for the Lucky D Plaintiffs purports to file the Motion to Amend on behalf of "joint plaintiffs" seeking to amend the "joint complaint." Dkt. 1062 at 2. While neither of these terms is defined, one could reasonably infer that the Lucky D Plaintiffs are seeking to overwrite the MDL Complaint with their own Proposed Amended Complaint (Dkt. 1062-2). But counsel for the Lucky D Plaintiffs is not authorized to file such a motion.

This Court's June 21, 2023 Case Management Order defined a Leadership Structure for Plaintiffs' counsel which excluded attorneys for the Lucky D Plaintiffs from any role in the consolidated action. Dkts. 59-1 at 1; 61 at 4. This Leadership Structure has never been challenged

4

and remains in effect to this day. Accordingly, the Lucky D Plaintiffs' attorneys have no authority to speak on behalf of MDL plaintiffs beyond their own clients, much less overwrite plaintiffs' MDL Complaint. If they were permitted to replace the MDL Complaint with their own, these attorneys would not only undermine Prager Metis's proposed settlement with the putative class of FTX customers, but would also prejudice the putative class (except for, perhaps, the "20 or so" Lucky D Plaintiffs) by excluding them from the action against the Auditor Defendants. *Compare* Dkt. 158 (seeking class-wide relief on behalf of all FTX customers) *with* Dkt. 1062-2 (seeking relief on behalf of twenty-one specific FTX customers). To preserve the integrity of the MDL's court-appointed Leadership Structure and avoid unconscionable outcomes, the Court should deny the Motion to Amend with prejudice.

## II.     Even if the Lucky D Plaintiffs Were Authorized to Seek Amendment of the MDL Complaint (Which They Are Not), The Motion Should be Denied as Futile and Unduly Delayed

The Lucky D Plaintiffs' Motion should be denied with prejudice for the independent reasons that it is futile and unduly delayed.

### A.     The Proposed Amendment is Futile

"[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile," i.e., "when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263–64 (11th Cir. 2004) (citation omitted); *accord Medlink Legal Sys., LLC v. QIMA Ltd.*, 794 F. Supp. 3d 1265, 1280 (S.D. Fla. 2025) (dismissing amended complaint with prejudice where "further amendment would be futile"). To be sure, the Proposed Amended Complaint which Lucky D Plaintiffs now seek to file (Dkt. 1062-2) would not survive a motion to dismiss because (i) it does not name all the plaintiffs pursuant to Rule 10, (ii) it does not state any claims pursuant to Rule 12, and (iii) its attempt to add individual defendants is without legal or factual basis.

5

## 1. The Proposed Amended Complaint's use of Fictitious Plaintiff Names Violates Federal Rule of Civil Procedure 10

The Motion to Amend is futile because the Proposed Amended Complaint fails to satisfy Federal Rule of Civil Procedure 10's requirement that every pleading "name all the parties." Instead, the Lucky D Plaintiffs seek to file a complaint on behalf of an indeterminate number of "fictitious" plaintiffs of shifting origins. *See* Dkt. 1051 at 2 (characterizing the Lucky D Plaintiffs as "*20 or so* foreign-based individual customers of FTX") (emphasis added), 4 (admitting lead plaintiff "Lucky D" is "a fictitious name created to protect his identity"); Dkt. 1062-2 (identifying eleven plaintiffs by initials rather than names); Exh. 1 (illustrating how the nationalities of *eighteen* Lucky D Plaintiffs apparently changed between 2023 and 2026). Absent a motion for leave to proceed anonymously and a showing of extraordinary circumstances, these evasive techniques will not pass muster under Rule 10. As the Eleventh Circuit put it in *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992):

> Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. The risk that a plaintiff may suffer some embarrassment is not enough.

"Lucky D" and his co-plaintiffs have neither sought permission to proceed anonymously nor shown any exceptional circumstances which would justify their doing so. The Proposed Amended Complaint would be subject to dismissal under Rule 10(a), so the Motion to Amend is futile.

## 2. The Proposed Amended Complaint Does Not State Any Claims

The Motion to Amend is also futile because the Proposed Amended Complaint is inadequately pled as a matter of law.

6

*First*, the Proposed Amended Complaint fails to state a claim for professional malpractice (Count 1). For a nonclient plaintiff to recover from an accountant for professional malpractice, he must plausibly allege that the accountant:

> (a) knew at the time of the engagement by the client, or agreed with the client after the time of the engagement, that the professional accounting service rendered to the client would be made available to the claimant, who was specifically identified to the accountant in connection with a specified transaction made by the claimant;
>
> (b) knew that the claimant intended to rely upon the professional accounting service in connection with the specified transaction; and
>
> (c) directly expressed to the claimant, by words or conduct, the accountant's understanding of the claimant's intended reliance on the professional accounting service.

*Cast Art Indus., LLC v. KPMG LLP*, 36 A.3d 1049, 1056 (2012) (quoting N.J.S.A. 2A:53A–25(b)(2)). The Lucky D Plaintiffs make no such allegations. They do not allege that Prager Metis knew that its nonpublic audit reports would be "made available" to anyone beyond FTX, much less the "20 or so foreign-based individual customers of FTX" identified as Lucky D. Plaintiffs. Instead, they concede that Prager Metis's audit reports "have not been publicly released" at all. Dkt. 1062-2 at 13. The Proposed Amended Complaint does not allege that Prager Metis knew that any of the Lucky D Plaintiffs existed, much less that they intended to rely upon Prager Metis's nonpublic audit reports prior to depositing funds on the FTX platform. Finally, the Lucky D Plaintiffs never allege that Prager Metis "directly expressed" to them that it understood the Lucky D Plaintiffs intended to rely upon Prager Metis's nonpublic audit reports. In sum, the Proposed Amended Complaint does not allege *any* elements of accountant malpractice, so the Motion to Amend is futile with respect to Count 1.

*Second*, the Proposed Amended Complaint fails to state a claim for common law fraud, New Jersey consumer law fraud, or negligent misrepresentation (Counts 2, 5, and 6), because none

7

of the Lucky D Plaintiffs alleges that they ever saw or received Prager Metis's nonpublic audit reports. To state a claim under any of these causes of action, plaintiffs must plausibly allege "actual receipt and consideration" of the purported misrepresentation.[5] The Lucky D Plaintiffs make no such allegation. On the contrary, they concede that Prager Metis's nonpublic audit reports "have not been publicly released" and never allege that they saw or considered Prager Metis's nonpublic work product at all. Dkt. 1062-2 at 13. Indeed, they never allege that they ever saw or heard the name "Prager Metis" prior to joining the FTX platform. Instead, they posit that a series of unnamed third parties told them that FTX had been given a "clean bill of health by a team of professional auditors," and they decided to place their confidence in the rumor mill. *See* Dkt. 1062-2 at 9, 23–24. This vague and attenuated theory does not pass muster under New Jersey substantive law or Federal Rule of Civil Procedure 12(b)(6), so the Motion to Amend is futile.

*Third,* the Proposed Amended Complaint's claims for common law fraud, aiding and abetting fraud, New Jersey consumer law fraud, and civil conspiracy (Counts 2, 3, 4, and 6) are not pled with particularity as required by Federal Rule of Civil Procedure 9(b). Each of these causes of action is subject to Rule 9(b)'s heightened pleading standard,[6] which requires the

---

[5] *See Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (2000) ("The actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission. The element of reliance is the same for fraud and negligent misrepresentation.").

[6] *Gould Ventures, LLC v. Cooley LLP*, No. CV 24-9485 (RK) (TJB), 2025 WL 1482493, at *5, 15 n.14 (D.N.J. May 23, 2025) ("For fraud claims, a complaint is subject to [Rule 9(b)]'s heightened pleading standard independent of the standard applicable to 12(b)(6) motions. . . . Aiding and abetting fraud is subject to Rule 9(b)'s heightened pleading standards because it is a fraud-derivative claim.") (cleaned up, citations omitted); *Palmieri v. Intervet Inc.*, No. CV 19-22024 (JXN) (AME), 2025 WL 1811271, at *10 (D.N.J. June 30, 2025) ("[Consumer law fraud] [c]laims under the [NJ]CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b).") (citation omitted); *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411 (D.N.J. 2016) ("Like a fraud claim, a claim for conspiracy to defraud must be pled with specificity under Rule 9(b).").

8

complaint set forth particular allegations about the "who, what, when, where, and how of the allegedly false statements." *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008). Rule 9(b) is only satisfied if the complaint sets forth "precisely what statements were made in what documents or oral representations" and "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same." *Id.* (citation omitted). The Lucky D Plaintiffs do not meet this high bar. They do not identify any precise statements in Prager Metis's nonpublic audit reports which they contend to be fraudulent. Nor could they, because they *never saw* the nonpublic reports at issue. Furthermore, the Lucky D Plaintiffs do not specifically identify the time, place, or persons involved in their alleged exposure to false statements. Instead, they allege that unspecified impressions of Prager Metis's "private audit reports . . . were communicated " to them by unspecified third parties on unspecified dates through various means of communication including "representations made through the media" and "by texting, email, and phone calls." Dkt. 1062-2 at 23. This vague narrative tells us neither the "who," the "what," the "where," the "when," nor the "how" of the purported fraud. These claims will not survive a motion to dismiss, so the Motion to Amend is futile.

*Fourth*, the Proposed Amended Complaint's claim for consumer law fraud under N.J.S.A. 58:8-1 *et seq*. fails because that statute only applies to fraud in connection with the sale or advertisement of "merchandise or real estate" and does not apply to the sale of securities or other return-seeking investments. *Stella v. Dean Witter Reynolds, Inc.*, 574 A.2d 468, 478 (N.J. Super. Ct. App. Div. 1990); *Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 424 (D.N.J. 1999). The Lucky D Plaintiffs do not allege that they purchased real estate or merchandise. Instead, they admit that they considered the cryptocurrency tokens they traded on

9

the FTX platform to be "investments." Dkt. 1062-2 at 11. They are therefore ineligible to state a claim for consumer law fraud under N.J.S.A. 58:8-1 *et seq*.

*Fifth*, the Proposed Amended Complaint fails to state a claim for civil conspiracy (Count 6). To state a claim for civil conspiracy, a plaintiff must allege more than "mere labels and conclusions" and must "provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Gross-Quatrone v. Mizdol*, 811 F. App'x 95, 100 (3d Cir. 2020) (citations omitted). The Proposed Amended Complaint does not meet this bar. Instead, it tacks just two conclusory sentences onto the original New Jersey Complaint without alleging any new facts sufficient to support a claim for conspiracy. *See* Exh. 1; Dkt. 1062-2 at 26 ("Defendants conspired with FTX to conceal insolvency, agreeing to prepare and vouch for misleading audit reports which concealed FTX's financial condition. Plaintiffs relied on said audits in entrusting their assets to FTX proximately causing them to suffer monetary damage"). Such "mere labels and conclusions" tell us nothing of the "who," "when," "where," or "how" of the supposed conspiracy and are therefore doomed to dismissal. *See Gross*, 811 F. App'x at 100 (affirming dismissal of civil conspiracy claim which "set out only the most general and conclusory statements"); *Wiley*, 179 F. Supp. 3d at 411 ("Like a fraud claim, a claim for conspiracy to defraud must be pled with specificity under Rule 9(b)."). Count 6 therefore fails as a matter of law.

*Sixth*, the Proposed Amended Complaint's claim for unjust enrichment (Count 7) fails because the Lucky D Plaintiffs do not allege that they conferred a "direct benefit" upon Prager Metis or any other auditor defendant. *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (dismissing consumer's unjust enrichment claim against manufacturer for failure to allege a "sufficiently direct relationship with the defendant" where consumer purchased the product from a third party retailer) (citation omitted). Instead, Lucky D Plaintiffs complain that

10

"Defendants retained audit fees . . . and must disgorge same not having fulfilled their professional obligation." Dkt. 1062-2 at 26. But ***Lucky D Plaintiffs did not pay audit fees (or any other fees) to FTX's auditors***—FTX did. Lucky D Plaintiffs cannot recover disgorgement "simply by asserting that [Prager Metis] has earned unlawful profits" paid by a third party. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 291 (3d Cir. 2018). Lucky D Plaintiffs do not allege any direct commercial relationship between themselves and Defendants, so Count 7 fails as a matter of law.

### 3. The Proposed Amended Complaint Fails to State a Legal or Factual Basis for Its Addition of Individual Defendants

The Motion to Amend is also futile because the Proposed Amended Complaint does not state *any* claims against the three Prager Metis executives it seemingly picked off the Prager Metis website and now seeks to name as individual defendants. Indeed, Lucky D Plaintiffs do not allege that Glenn Friedman (CEO), Craig Michaelson (COO), or Lori Roth (Managing Member) had ***any role*** in the FTX audits whatsoever. They do not allege that any of these three executives were involved in the generation or dissemination of purportedly false statements. They do not allege that any FTX customer received or relied upon any statements uttered or written by the three executives. In short, the Lucky D Plaintiffs do not state any direct liability claims against Prager Metis's executives.

Instead, the Lucky D Plaintiffs pursue a facially deficient theory of guilt by association against the would-be individual defendants. Invoking state partnership statutes, the Lucky D Plaintiffs surmise that Friedman, Michaelson, and Roth must be vicariously liable for any acts or omissions committed by "Prager Metis LLP." *See* Dkt. 1062-2 at 8–9. But "Prager Metis LLP" (a)

does not exist,[7] and (b) did not audit the financial statements of FTX Trading. On the contrary, it has long been a matter of public record that the entity which audited FTX Trading was Prager Metis CPAs, **LLC**, (a named defendant in the ongoing MDL). Prager Metis CPAs, LLC—the actual auditor—is not named as a defendant in the Proposed Amended Complaint and would apparently be dropped from the case altogether if the Motion to Amend is approved. If Lucky D Plaintiffs were to correct their pleading by substituting Prager Metis CPAs, LLC in for "Prager Metis LLP," they would vitiate all claims against Prager Metis's executives, as these claims are premised solely upon New York and New Jersey partnership laws which do not apply to Limited Liability Companies.[8] The Motion's attempt to turn Prager Metis's global leadership into individual defendants is futile and should therefore be denied under Rule 15(a). *See Abanto v. Hayt, Hayt & Landau, P.L.*, No. 11-24543-CIV, 2012 WL 13034900, at *2 (S.D. Fla. Sept. 19, 2012) (denying leave to add defendants as futile) (citing *Hall*, 367 F.3d at 1263). In sum, the Proposed Amended Complaint does not state any claims against Prager Metis or its executives. The Motion should therefore be denied as futile.

---

[7] "Prager Metis LLP" is not a legal entity registered in New York, but "Prager Metis **CPAs** LLP" is. Prager Metis CPAs LLP is not a defendant in this action, and, in any event, did not perform any audit work for FTX.

[8] *People v. Zinke*, 76 N.Y.2d 8, 14–15, 555 N.E.2d 263, 267 (1990) ("[L]imited partnerships and corporations are distinctly different organizational forms in the law of New York. Limited partnerships are governed by the Partnership Law—as they have been since the inception of the Partnership Law—and corporations are governed by the Business Corporation Law, a fact that has pervasive legal and financial significance"); *compare* New Jersey Uniform Partnership Act, N.J. Stat. Ann. § 42:1A-18(a) ("all partners are liable jointly and severally for all obligations of the partnership") *with* New Jersey Uniform Limited Liability Company Act, N.J. Stat. Ann. § 42:2C-30 ("The debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise: (1) are solely the debts, obligations, or other liabilities of the company; and (2) do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager.").

### B. The Motion was Filed After Undue Delay

Even if Lucky D Plaintiffs were authorized to seek amendment of the MDL Complaint (which they are not), and even if the Proposed Amended Complaint were legally viable (which it is not), the Motion to Amend should be denied as unduly delayed.

A district court may exercise its discretion to deny a Rule 15 motion "if Plaintiff sought the amendment after undue delay." *Edwards v. Niles Sales & Serv., Inc.*, 439 F. Supp. 2d 1202, 1209–10 (S.D. Fla. 2006) (denying amendment where the plaintiff "proffered *no* reason, let alone a *legitimate* reason, why he could not have sought that amendment earlier"). Lucky D Plaintiffs filed their Motion nearly *two and a half years* after MDL Plaintiffs filed the operative complaint against the Auditor Defendants. The sole reason they proffer for their extensive delay in seeking amendment is because the "identities of the proposed individual PM principals and employees as to their respective roles in entering into the audit engagement with FTX, conducting same and preparing reports containing their opinions has been difficult to delineate since the case was consolidated by the MDL panel." Dkt. 1062-3 at 3. This assertion is neither credible nor sufficient.

*First*, Lucky D Plaintiffs proffer no reason whatsoever for their belated pursuit of other amendments to their original complaint, including (1) changing the nationalities of most plaintiffs, (2) adding Apex Digital Limited as a new plaintiff, (3) inflating damages by a factor of 26, and (4) adding four new causes of action without alleging any new facts to support them. *See* Exh. 1. Even if the court were to permit the belated and baseless addition of individual defendants (which it should not), all other amendments should be stricken as unduly delayed.

*Second*, the identities of Prager Metis's Chief Executive Officer, Managing Member, and Chief Operating Officer have never been "difficult to delineate." Prager Metis has publicly shared

13

this information on its website since at least the time of the FTX collapse in November 2022.[9] Lucky D Plaintiffs neither offer nor possess any excuse for waiting so long to look up the leadership of the firm they are suing.

*Third*, the Proposed Amended Complaint says nothing of the would-be individual defendants' "respective roles in entering into the audit engagement with FTX, conducting same and preparing reports containing their opinions." Dkt. 1062-3 at 3. Instead, it seeks to hold these three individuals vicariously liable for the acts of "Prager Metis LLP" irrespective of whether they played any role in the FTX audits. *See* Dkt. 1062-2 at 8–9. Accordingly, Lucky D Plaintiffs do not identify any facts connecting the three named individuals to the FTX audits. Even if such facts were alleged, they would be irrelevant under Lucky D Plaintiffs' theory of liability.

*Finally*, the real impetus for this Motion has nothing to do with identifying individual defendants and everything to do with undermining Prager Metis's forthcoming proposed class-wide settlement with the putative class of former FTX customers. For over two years after their action was consolidated into the MDL, Lucky D Plaintiffs elected to sit out proceedings altogether. Only after MDL Plaintiffs and Prager Metis provided notice of their settlement-in-principle last October, *see* Dkt. 998, did the Lucky D Plaintiffs file *anything* in the MDL. They then engaged in filing a series of baseless and procedurally invalid motions aimed at undermining the settlement-in-principle. *See* Dkts. 1007, 1020, 1021, 1022, 1030, 1035, 1051. To date, none of these efforts have borne fruit. The present Motion represents yet another baseless attempt to reshuffle the deck

---

[9] *See* https://web.archive.org/web/20220901000000*/https://pragermetis.com/our-team/lori-a-roth/ (last visited February 13, 2026); https://web.archive.org/web/20221113213703/https://pragermetis.com/our-team/glenn-l-friedman/ (last visited February 13, 2026); https://web.archive.org/web/20260000000000*/https://pragermetis.com/our-team/craig-michaelson/ (last visited February 13, 2026).

14

in the Lucky D Plaintiffs' favor by preventing class-wide settlement. Viewed in context, Lucky D Plaintiffs' proffered justification for their multiyear delay in engaging with the MDL is not credible. The Motion should therefore be denied as unduly delayed.

### III. Conclusion

For the foregoing reasons, the Lucky D Plaintiffs' "Motion to Amend Joint Complaint to Add Individual Defendants Pursuant to Rule 15" (Dkt. 1062) should be denied with prejudice.

Dated: February 19, 2026

Respectfully submitted,

/s/ Ian M. Ross
Ian M. Ross
Florida Bar No. 091214
Email: iross@sidley.com
SIDLEY AUSTIN LLP
830 Brickell Plaza
Miami, FL 33131
Tel.: (305) 391-5100
Fax: (305) 391-5101

Bruce R. Braun
Email: bbraun@sidley.com
Joanna R. Travalini
Email: jtravalini@sidley.com
Tommy Hoyt
Email: thoyt@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel.: (312) 853-7050
Fax: (312) 853-7036

*Counsel for Defendant Prager Metis CPAs, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 19, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

By: */s/ Ian M. Ross*  
Ian M. Ross
