UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

FTX Cryptocurrency Exchange Collapse MDL Litigation

_____

THIS DOCUMENT RELATES TO:

    All Actions

_____/

**LUCKY D PLAINTIFFS' INFORMAL APPLICATION TO EXPEDITE
DISPOSITION OF THEIR PENDING MOTION TO INTERVENE IN
SETTLEMENT PROCEEDINGS**

To: Honorable K. Michael Moore

United States District Judge, Southern District of Florida

Dear Judge Moore:

    Please accept this letter brief in lieu of a more formal brief on behalf of the Lucky D plaintiffs in the captioned matter in support of their motion to file a first amended complaint in the proposed form.

**I. INTRODUCTION**

    Lucky D Plaintiffs submit this Reply in support of their Motion for Leave to Amend (Dkt. 1062) in response to Defendant Prager Metis CPAs, LLC's Opposition (Dkt. 1064). Prager's Opposition proceeds from a false premise, that Lucky D seeks to "tear up" or "overwrite" the operative consolidated/administrative MDL pleading on behalf of a putative class, replacing it with a "joint complaint" for "twenty-one" customers and thereby "excluding" other customers. Opp. at 2, 5. That is not the relief sought.

1

Lucky D plaintiffs are named parties in a transferred member action asserting direct, individual claims. Opp. at 3. The Motion seeks leave to file a First Amended Complaint limited to Lucky D's own claims—filed in the Lucky D member docket upon a limited modification of the existing stay/administrative closure, or through an MDL short-form mechanism if the Court prefers—while leaving the putative-class consolidated/administrative pleadings intact. Prager's procedural objections attempt to convert MDL coordination and leadership appointment into a veto over an existing party's Rule 15 rights. Opp. at 3–5. The Federal Rules and controlling Supreme Court authority do not permit that result.

Prager also fails to carry its heavy burden to show futility. Its challenges are either (i) curable pleading mechanics (e.g., Rule 10 anonymity) or (ii) merits disputes that turn on factual issues and reasonable inferences properly tested on a Rule 12 motion after amendment. Opp. at 6–12. Finally, Prager identifies no cognizable "undue prejudice" under Foman; its delay argument is driven largely by settlement-timetable speculation, not litigation prejudice. Opp. at 13–15. Its request to deny leave "with prejudice" is therefore especially unwarranted. Opp. at 2, 5, 15.

## II. FACTS

Prager opens with, and repeatedly returns to, its settlement-in-principle reached with Court-appointed co-lead counsel for a putative class of former FTX customers. Opp. at 1–2, 5, 14. Prager then uses that settlement posture to treat putative-class counsel as the only meaningful counterpart in this litigation and to reframe Lucky D as mere "class members" who must follow that putative-class strategy, subject only to a future opt-out. Opp. at 1–2. But Prager's own brief recites facts that show why that framing cannot control the Rule 15 analysis.

Lucky D are not unnamed, absent persons. They are named plaintiffs in an action originally filed in the District of New Jersey and transferred (over objection) into this MDL by the JPML. Opp. at 3. Their member

2

action was stayed/administratively closed as a case-management measure, but the stay order expressly contemplates restoration "upon motion of a party" if circumstances change so the action may proceed to final disposition. Opp. at 3–4. Lucky D's counsel therefore represent actual claimants with a pending (albeit stayed) transferred action—not merely a subset of unnamed persons whose claims exist only as part of an uncertified putative class.

Prager also relies on the Court's leadership structure to argue Lucky D's counsel lacks "authority" to seek amendment because counsel is not part of leadership. Opp. at 4–5. But leadership appointment is a coordination tool; it does not erase the separate identity of transferred actions or strip named parties of their own counsel's ability to litigate their claims. See Gelboim v. Bank of Am. Corp., 574 U.S. 405, 413 (2015) (MDL cases "retain their separate identities"); Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 37 (1998) (MDL is a pretrial coordination mechanism). As Lucky D plaintiffs have set forth in multiple submissions conveniently ignored by all parties favoring settlement, this Circuit has determined in In re Temple, 851 F. 2d 1269 (1988) that constitutionally sufficient due process, including proper notice of substantive negotiations, must be afforded to affected parties, enabling them to participate in the settlement process. In the months that led up to the proposal since this matter was transferred (over plaintiffs' objection) to the Multi-district Panel, no such due process was ever afforded to thes Lucky D plaintiffs.

### III. PROCEDURAL OBJECTIONS

**A. Lucky D Does Not Seek to Amend the MDL's Putative-Class Pleading or "Exclude" Other Customers**

Prager's principal procedural narrative is that Lucky D seeks to amend an undefined "joint complaint" or "tear up the consolidated MDL complaint" to "exclude all but twenty-one" customers. Opp. at 2, 5. That is a strawman. Lucky D seeks leave to amend its own direct-claim pleading in its transferred member action and to do so without

3

disturbing the consolidated/administrative pleadings asserted for putative class purposes. Because Prager's asserted "prejudice to the putative class" is premised on the same "replacement" theory (Opp. at 5), it fails once the relief is properly framed.

If the Court has any concern about confusion, the remedy is straightforward: grant leave while expressly clarifying that (i) the consolidated/administrative pleadings remain operative for putative-class purposes and (ii) Lucky D's amended pleading is limited to Lucky D's direct, individual claims.

**B. The "Superseded and Closed" Argument Confuses Case-Management With Extinguishment**

Prager argues Lucky D cannot amend because their New Jersey action "is closed" and their complaint was "superseded" by the MDL pleading. Opp. at 3–4. But Prager's own account of the stay/closure order confirms that the member action may be restored "upon motion of a party." Opp. at 3–4. The Motion seeks precisely that relief: leave to file an amended pleading (and, to the extent necessary, a limited modification of the stay/administrative closure to allow filing and service). Prager identifies a sequencing question for this Court to manage—not a rule that the transferred action is extinguished and unamendable.

Prager's reliance on In re Korean Air Lines Co., 642 F.3d 685 (9th Cir. 2011) is unpersuasive. Opp. at 4. It is non-binding and addresses the transferee court's ability to manage pleadings in consolidated proceedings, not a doctrine that a consolidated pleading erases a transferred action's separate identity or forecloses amendment of a named party's direct claims. See Gelboim, 574 U.S. at 413.

**C. Leadership Appointment Coordinates Common Issues; It Does Not Veto a Party's Rule 15 Rights**

Prager argues Lucky D's counsel is not authorized to seek amendment because counsel is not in the MDL leadership structure. Opp. at 4–5. That objection is beside the point because Lucky D's counsel does not seek to

4

speak "on behalf of" other plaintiffs or supplant the putative-class pleading. Counsel speaks on behalf of Lucky D, named parties in a transferred action seeking amendment of their own claims. Leadership appointment is not a waiver of Rule 15 rights in separately transferred actions.

**IV. FUTILITY IS NOT SHOWN AT THE RULE 15 STAGE**

"Futility" warrants denial only where the proposed amendment would still be subject to dismissal as a matter of law. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004). Prager's arguments fall short because they either identify curable mechanics or demand merits determinations on disputed facts and inferences.

**A. Rule 10(a) Issues Are Curable; They Do Not Justify Denial (Much Less With Prejudice)**

Prager argues the Proposed FAC violates Rule 10(a) because some plaintiffs proceed by initials and one uses a pseudonym. Opp. at 6. Even if the Court requires a separate anonymity motion, that is a correctable procedural issue, not a basis to deny leave as "futile," and certainly not "with prejudice."

The Proposed FAC identifies twenty plaintiffs and their residencies. Proposed FAC ¶¶ 1–20. It explains the basis for confidentiality (targeting/doxxing/solicitation risks) and proposes the standard cure: a motion for protective order and submission of a sealed Attorneys'-Eyes-Only identity list to the Court and defense counsel. Proposed FAC (paragraph following ¶ 20). The Court may grant leave subject to that condition; the remedy is not denial with prejudice. See Doe v. Frank, 951 F.2d 320, 323–24 (11th Cir. 1992).

**B. Prager's "Nonpublic Audit" Argument Does Not Establish Failure to Plead Reliance as a Matter of Law**

Prager's core merits theme is that plaintiffs cannot plead malpractice, fraud, or misrepresentation because Prager's audit reports were "nonpublic" and plaintiffs did not "see or receive" them. Opp. at 7–9. The Proposed

5

FAC pleads that plaintiffs considered and relied upon audit assurances communicated to customers through FTX-facing materials and public statements touting audited financials and a "clean bill of health," and that those assurances induced plaintiffs to deposit and retain assets on the platform. Proposed FAC (Facts Common to All Counts). Whether those assurances are attributable to Prager and whether plaintiffs' reliance is reasonable are fact-bound issues not suitable for a futility determination.

Prager's reliance on Kaufman v. i-Stat Corp., 754 A.2d 1188 (N.J. 2000) does not compel denial. Opp. at 8. Kaufman emphasizes that receipt and consideration of a misstatement is central, but it does not create a categorical rule requiring plaintiffs to physically possess the underlying audit report where the pleaded theory is that the substance of audit assurances was communicated to and considered by plaintiffs. At minimum, Prager's receipt-and-consideration attack is a Rule 12 merits issue—not "clear" futility.

**C. The Accountant Malpractice Claim Is Not Clearly Dismissible Under Cast Art**

Prager argues the Proposed FAC cannot satisfy the New Jersey Accountant Liability Act, N.J.S.A. 2A:53A-25, as construed in Cast Art Industries, LLC v. KPMG LLP, 36 A.3d 1049 (N.J. 2012). Opp. at 7–8. The Proposed FAC pleads a "specified transaction" (depositing and retaining assets on the FTX platform) and alleges that Prager's audit opinions were used to provide assurance to existing and prospective customers about the safety of the platform and thus were foreseeably relied upon by that defined group. Proposed FAC (Facts Common to All Counts); Proposed FAC (First Cause of Action). Whether Prager had the requisite knowledge and whether the communications alleged satisfy the "direct expression" element are not questions that can be resolved against plaintiffs as a matter of law at the amendment stage.

**D. Rule 9(b) Challenges Do Not Meet the High Bar for Futility**

Prager contends fraud-based counts fail Rule 9(b) because the Proposed FAC does not plead the "who,

6

what, when, where, and how." Opp. at 8–9. But the Proposed FAC identifies the audit reports and time period, the audit-assurance content alleged to be misleading, the channels by which those assurances were communicated to customers, and the transaction induced. Proposed FAC (Facts Common to All Counts). Any further particularity—especially regarding internal audit roles and dissemination pathways—is substantially within defendants' possession and can be addressed through the ordinary Rule 12 process. Rule 15 does not require the Court to decide close Rule 9(b) questions and deny leave based on disputable inferences.

**E. The NJCFA, Conspiracy, and Unjust Enrichment Counts Are Not Clearly Barred as a Matter of Law**

Prager argues the NJCFA does not apply because plaintiffs' transactions are "investments." Opp. at 9–10 (citing Stella). The Proposed FAC pleads a consumer-facing transaction involving custody/trading services and safety assurances, not simply a securities purchase. Proposed FAC (Facts Common to All Counts); Proposed FAC (Third Cause of Action). At minimum, the NJCFA's applicability is not so clearly foreclosed that amendment should be denied as futile.

Prager's conspiracy and unjust enrichment arguments likewise seek merits rulings at the amendment stage. Opp. at 10–11. Whether plaintiffs have alleged sufficient facts to infer concerted action, and whether the benefit alleged is sufficiently direct, are issues that can be tested by motion after amendment—not grounds to deny leave outright.

**F. Individual Defendants and Entity-Naming Arguments Do Not Warrant Denial With Prejudice**

Prager argues there is no factual basis to add individual defendants and contends the proposed amended complaint misnames the auditor entity. Opp. at 11–12. The Proposed FAC identifies Prager Metis CPAs, LLC as a defendant (¶ 21) and pleads the relevant officers and John Doe engagement-partner roles consistent with publicly disclosed enforcement allegations. Proposed FAC ¶¶ 21, 23–29. In any event, even if the Court

7

concludes any party-identification or role allegations require refinement, those issues are curable and do not justify denial of leave—much less denial "with prejudice." See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).

### V. NO UNDUE DELAY OR PREJUDICE UNDER FOMAN

Prager argues the Motion comes too late and asserts—without evidence—that its "real impetus" is to undermine settlement. Opp. at 13–15. But delay alone is not enough; the touchstone is undue prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962). Prager identifies no trial date, no discovery cutoff, and no concrete way in which an amended pleading limited to Lucky D's member action would impair Prager's ability to defend. The underlying subject matter overlaps with issues already being litigated in the MDL; allowing amendment simply channels Lucky D's direct claims into an orderly pleading and motion practice framework rather than leaving them in procedural limbo.

Nor is "settlement inconvenience" cognizable prejudice. Prager's settlement-in-principle is a procedural development, not an adjudication of Lucky D's direct claims, and it remains subject to Rule 23 processes (including opt-out rights) if and when a class is certified and a settlement is presented for approval. Opp. at 1–2. Rule 15 does not authorize denying amendment because a defendant prefers to negotiate solely through putative-class counsel or because an individual amendment might complicate a settlement timetable.

### VI. REQUESTED RELIEF

For the foregoing reasons, Lucky D Plaintiffs respectfully request that the Court grant the Motion for Leave to Amend (Dkt. 1062). If the Court has case-management or confidentiality concerns, the appropriate remedy is to impose narrowly tailored conditions rather than deny leave—for example:

1. Clarify that Lucky D's amended pleading is limited to Lucky D's direct, individual claims and does not supersede or modify the operative consolidated/administrative pleadings asserted on behalf of putative classes;

2. Permit filing of the amended pleading in the form attached in the Lucky D member action upon a limited modification of the stay/administrative closure solely for filing and service, consistent with S.D. Fla. L.R. 15.1's requirement that the amended pleading be filed separately after leave is granted; and

3. Condition continued use of pseudonyms/initials on prompt filing of a motion addressing Doe v. Frank and submission of a sealed Attorneys'-Eyes-Only identity list, together with an appropriate protective order.

## CONCLUSION

Prager has not shown any valid procedural bar, clear futility, or undue prejudice that would justify denying leave under Rule 15, much less denying it with prejudice. The Motion to amend original complaint should be granted, with any appropriate, narrowly tailored conditions to preserve coordination and confidentiality.

Dated: February 24, 2026

Respectfully submitted,

/s/ Anthony Scordo
Anthony Scordo, Esq.
New Jersey Attorney ID 024591987
69 East Allendale Road
Saddle River, New Jersey 07458
Telephone: (973) 837-1861
Counsel for Lucky D Plaintiffs
anthonyscordo@msn.com

Edward Lehman
LEHMAN, LEE & XU LLC
Suite 3313, Tower One, Times Square
1 Matheson Street, Causeway Bay
Hong Kong

Telephone: (852) 3588-2188
elehman@lehmanlaw.com