UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MDL No. 3076
CASE NO. 1:23-md-03076-KMM

IN RE:

FTX Cryptocurrency Exchange Collapse MDL Litigation

THIS DOCUMENT RELATES TO:

    All Actions

_____/

### LUCKY D PLAINTIFFS' INFORMAL APPLICATION TO EXPEDITE DISPOSITION OF THEIR PENDING MOTION TO INTERVENE IN SETTLEMENT PROCEEDINGS

To: Honorable K. Michael Moore

United States District Judge, Southern District of Florida

Dear Judge Moore:

    Please accept this letter brief in lieu of a more formal brief on behalf of the Lucky D plaintiffs in the captioned matter in support of their motion to file a first amended complaint in the proposed form.

    Lucky D Plaintiffs respectfully reply to Putative Class Co-Lead Plaintiffs' opposition (ECF No. 1065). The opposition correctly emphasizes the importance of orderly MDL coordination and settlement progress. The motion, however, seeks only narrow leave to amend Lucky D's own direct, individual claims in its transferred underlying action. Nothing in the requested relief disturbs the operative consolidated or administrative complaints or the MDL's coordinated discovery and motion practice framework.

**Factual Background for Context**

1

The Consolidated Complaint pleads a vast, worldwide class encompassing thousands if not millions of consumers globally, with separate Nationwide and International Classes and geography-dependent access restrictions between FTX Trading (FTX.com) and FTX US. Prager Metis audited FTX Trading Ltd., the offshore FTX.com platform, whose users constitute the overwhelming majority (80%) of the putative class. The pleading identifies twelve U.S.-resident plaintiffs to represent the Nationwide Class and only four non-U.S. plaintiffs to represent the International Class. No class has been certified, no notice has issued, and the pleading expressly reserves the right to modify definitions or add subclasses as discovery progresses. These facts illustrate material heterogeneity in reliance, jurisdiction under Morrison v. National Australia Bank Ltd., 561 U.S. 247 (2010), and the cohort most directly impacted by Prager-Metis-centric claims. Leadership was appointed only from putative class lawyer to the exclusion of direct claimants lawyers to apparently coordinate putative class issues, but until Rule 23 determinations are made, that structure cannot substitute for the procedural protections that determine when absent persons can be bound or when named parties with direct claims may be required to defer to putative class strategy. This context underscores why preserving direct-claim rights now serves due process and MDL efficiency without prejudicing the coordinated process.

**I. Rule 15's Liberal Standard Controls and Strongly Favors Leave**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend "should be freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962). Denial is appropriate only for undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. The Eleventh Circuit has repeatedly held that leave should be granted absent a substantial reason to the contrary. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Co-Lead identifies no such substantial reason. Their objections rest almost entirely on managerial concerns—that the amendment was not routed through leadership and might complicate settlement discussions. Those concerns are addressed through routine MDL tools and do not justify denying a named party its Rule 15 rights. Furthermore, <u>putative class plaintiffs lack standing to oppose Lucky D plaintiffs' application to</u>

<u>add additional parties and causes of action</u> and the court should ignore their position or, at the very least, afford their position short shrift. Their description of the Lucky D proposed Complaint as "indecipherable" is laughable. Their scattershot Complaint containing no specific description of Prager's audit plan and implementation of same constituted professional malpractice from the outset and how their "representative" clients (of whom they have slightly more than a handful) relied upon the reports is woefully deficient as Prager set forth in their 12(b)(6) motion last year. Now these two new "allies" are apparently in accord so long as their fees are reimbursed by the respective insurers or the victims themselves.

## II. The Relief Sought Is Narrow and Can Be Efficiently Channeled

The motion seeks leave to amend only Lucky D's direct, individual claims in its transferred underlying action. Lucky D does not seek to supplant, rewrite, or replace the operative consolidated or administrative complaints filed on behalf of the putative classes. The Court can grant leave while expressly clarifying that those pleadings remain operative for putative class purposes and that Lucky D's amendment is confined to its own direct claims and defenses. This is fully consistent with the Case Management Order's contemplation of centralized administration without congesting the master docket with filings of interest only to the directly affected parties (ECF No. 61).

To the extent any stay applies to Lucky D's action, the Court can modify the stay solely to permit filing and service of the amended pleading while leaving all discovery and merits proceedings subject to existing MDL stays and schedules. Alternatively, the Court can direct Lucky D to file an MDL short-form amended complaint that pleads individualized allegations and incorporates by reference the common factual allegations in the operative administrative complaints. Either mechanism preserves MDL efficiency while protecting Lucky D's procedural rights.

## III. MDL Leadership Coordinates; It Does Not Veto Rule 15 Rights of Named Parties

Plaintiffs' leadership is a coordination structure, not a mechanism to waive or extinguish Rule-based rights of separately filed named parties. MDL transfer and coordination do not merge separate actions into a single case for all purposes; transferred actions retain their separate identities. Gelboim v. Bank of America Corp., 574 U.S. 405, 413 (2015). The MDL statute is a pretrial coordination mechanism; it does not authorize leadership to alter parties' substantive or procedural rights. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 37-40 (1998). Temple v. Synthes Corp., Ltd., 498 U.S. 5, 7 (1990) (per curiam) reinforces that judicial economy alone cannot justify procedural coercion that impairs litigants' rights. As Lucky D plaintiffs have set forth in multiple submissions conveniently ignored by all parties favoring settlement, this Circuit has determined in In re Temple, 851 F. 2d 1269 (1988) that constitutionally sufficient due process, including proper notice of substantive negotiations, must be afforded to affected parties, enabling them to participate in the settlement process. In the months that led up to the proposal since this matter was transferred (over plaintiffs' objection) to the Multi-district Panel, no such due process was ever afforded to the Lucky D plaintiffs.

Putative Class Action Co-Lead opposition effectively asks the Court to treat Lucky D as bound to whatever pleading and settlement strategy putative class counsel selects, regardless of Lucky D's individualized claims and defenses. That request assumes what has not yet been determined, that there exists a valid, certifiable class and adequate representation for all relevant cohorts. Rule 23, not an MDL leadership appointment, supplies the procedural protections that determine when absent persons can be bound. Smith v. Bayer Corp., 564 U.S. 299, 313-15 (2011). Until certification and adequacy are determined, putative class counsel cannot be presumed qualified to control the rights of named parties with direct claims. Denying leave on the theory that leadership must control all pleadings would prematurely elevate putative class strategy over Rule 15 rights of actual parties. There has been no ruling on Lucky D's pending motion for limited-purpose intervention in settlement-approval proceedings, underscoring that representational adequacy remains unresolved and that due process favors preserving named parties' ability to plead and protect their direct claims now.

**IV. No Concrete Prejudice Exists; Settlement-Timing Concerns Are Speculative and Curable**

Putative Class Action Co-Lead counsel assert that amendment could interfere with settlement timing or coordination and is therefore prejudicial. That is not the concrete "undue prejudice" contemplated by Foman. Settlement inconvenience to a timetable is not prejudice when the Court can sequence proceedings and channel the mechanics of amendment. Where the Court can limit the amendment to Lucky D's direct claims, preserve coordinated discovery, and set an expedited schedule, speculative coordination concerns do not justify denial of leave.

Putative Class Action Co-Lead's reliance on intervention cases such as Grilli v. Metropolitan Life Ins. Co., 78 F.3d 1533 (11th Cir. 1996), Saccoccio v. JP Morgan Chase Bank, N.A., 2013 WL 5585230 (S.D. Fla. Oct. 9, 2013), and In re Holocaust Victim Assets Litig., 225 F.3d 191 (2d Cir. 2000) is misplaced. Those decisions govern requests for intervention by non-parties or absent class members. Lucky D are existing named parties in a transferred action seeking to amend their own direct claims under Rule 15. Grilli and its progeny have no application here.

**V. Confidentiality and Sealing Can Be Addressed Through Neutral Protective Tools**

To the extent any aspect of the relief or surrounding circumstances involves confidential information, the Court can direct sealed submissions, Attorneys' Eyes Only treatment, or a targeted protective order to protect legitimate confidentiality interests while preserving due process and Rule 15's liberal amendment policy.

For the foregoing reasons, Lucky D respectfully requests that the Court grant the motion for leave to amend. The Court can and should grant leave while expressly channeling the mechanics—limited stay modification and/or an MDL short-form amended complaint—to ensure the MDL remains efficient, coordinated, and fair to all parties, including named plaintiffs with direct claims who may not be adequately represented by an uncertified,

5

heterogeneous putative class.

## CONCLUSION

Putative class plaintiffs have not shown any valid procedural bar, clear futility, or undue prejudice that would justify denying leave under Rule 15, much less denying it with prejudice. The Motion to amend original complaint should be granted, with any appropriate, narrowly tailored conditions to preserve coordination and confidentiality.

Dated: February 24, 2026

Respectfully submitted,

/s/ Anthony Scordo
Anthony Scordo, Esq.
New Jersey Attorney ID 024591987
69 East Allendale Road
Saddle River, New Jersey 07458
Telephone: (973) 837-1861
Counsel for Lucky D Plaintiffs
anthonyscordo@msn.com

Edward Lehman
LEHMAN, LEE & XU LLC
Suite 3313, Tower One, Times Square
1 Matheson Street, Causeway Bay
Hong Kong
Telephone: (852) 3588-2188
elehman@lehmanlaw.com