# ANTHONY SCORDO, ESQ., PC

69 East Allendale Rd.
Saddle River NJ 07458
TEL: 973-837-1861
FAX: 973-837-9650

*E-MAIL: anthonyscordo@msn.com

April 10, 2026

Filed Via ECF

Hon. K. Michael Moore, U.S.D.J.
Wilkie D. Ferguson Jr. Courthouse
400 North Miami Ave.- Room 13-1
Miami, FL 33128

Re: In re FTX Cryptocurrency Exchange Collapse Litigation
Case No. : 1:23-md-03076-KMM

Dear Judge Moore:

I am writing on behalf of joint plaintiffs in matter <u>Lucky D et. al v. Prager Metis et. al.,</u> first filed in the District of New Jersey with docket number 2:23-389, which was transferred by the Joint Panel on Multi-District Litigation to the I<u>n re Cryptocurrency Exchange Collapse Litigation,</u> MDL No. 3076, 1:23-md-03076 (S.D. Fl.). As Your Honor is aware, my clients filed last November a motion seeking to intervene in the Prager Metis (PM) settlement negotiation approval process; that motion remains undecided. In addition, my clients have pending a motion to amend their Complaint to include certain PM principals as individual defendants.

To provide a short background, my clients were, just about exclusively, individual international customers of FTX (the international Bahamas-based platform as opposed to FTX US used by only domestic customers) who sustained substantial personal losses to their assets, primarily savings and retirement accounts. Unlike the clients of those

attorneys selected for the Plaintiffs Steering Committee for the auditor claims, in instituting this Complaint my clients chose not to invoke class action Rule 23 joinder because of their fear that their claims would be ignored.  These claims were filed against PM (and the other FTX Auditor Armanino) for professional malpractice and related fraud claims. And because PM's audit responsibilities involved only FTX, not FTX US, it was their reliance on the fraudulent PM audits of the Bahamas based company that caused their damages. Unfortunately, these plaintiffs' decision not to seek certification as a distinct class of international large FTX investors appears to have resulted in their worst fears being realized, with their claims essentially being swept under the rug by this supposedly "objective" Plaintiffs' Steering Committee chosen to handle the Auditor Claims.

At this juncture, out of frustration at the delay and lack of the PSC's concern for their welfare,  my clients have insisted that I express to your Honor their objections to having been overlooked in the settlement negotiations by the Plaintiffs' Steering Committee. They asked me to reiterate to Your Honor why they must both be formally deemed an intervenor in the PM Settlement Approval process to have their side be heard,  and also be immediately apprised of the terms of the proposed settlement to enable them to formulate challenges to the certification of what can only be a limited fund class. Even now no member of the PSC has admitted that the fund to be distributed in the proposed settlement are solely comprised of PM professional liability insurance proceeds. And those proceeds are being depleted even as we speak by PM's defense counsel, without a peep being uttered by any members of the  PSC who presumably have already started calculating their own expected profits. The Committee's  objection to my clients' intervention appears to be wholly on the grounds of "look at all the work we have done, where were you?"

First, the PSC members cannot articulate one aspect in which they have helped any victims of this massive fraud scheme. At this late date,  PSC members claim to have arrived at a fair settlement when they have yet to even articulate their theories of liability against PM.  But even more importantly, they cannot even point to a single instance they have

demonstrated any transparency to other plaintiffs counsel as to what has transpired in these so-called negotiations. As one commentator has forcefully stated :

> During settlement negotiations, the plaintiffs' lawyer who is not on the PSC may feel especially left out. <u>To address this concern, PSC members need to fully and ably communicate what is transpiring in the settlement negotiations. Without full transparency from the PSC, other plaintiffs' lawyers cannot know whether their client's interests as a whole are being fairly represented and may be suspicious of the motives of the PSC members.</u> One is reminded of the Irishman Michael Collins who negotiated the peace treaty after the Irish Rebellion that resulted in the creation of the Irish Free State and Northern Ireland. Upon his return home he was hailed as a hero by some and by others called a traitor, the resulting civil war cost Collins his life. [Marcy Hogan Greer, A PRACTITIONER'S GUIDE TO CLASS ACTIONS, Chapter 12 Multi District Litigation, VII. Considerations for Comprehensive Resolution (ABA 2017)].

The Lucky D plaintiffs, of course, acknowledge the wide range of power conferred to Your Honor (the MDL judge) by the Panel. Such authority has been described by another commentator as "near plenary". Rubinstein, NEWBERGH ON CLASS ACTIONS, 5th Ed. Jurisdiction, *Rule 23(a) Prerequisites for Class Certification* sec. 6.42 (Thomson Reuters 2017. [1] While the Circuit Court in which the MDL is situated has appellate authority, such authority is only over those aspects of the action that fall outside the final judgment rule. Ibid. That same commentator also notes how protracted and obtuse the remand procedure to the original court remains once a matter has been transferred, usually resulting in "nothing happening" to the so-called "tag along" actions. A constitutional law Professor (Samuel Issacharoff of NYU) has stated as follows, "Multi-district litigation is like the Old Roach Motel ad: Roaches [the transferred cases] check in-but they don't check out." Ibid.

Unfortunately, my clients appear now to be trapped in one of the then described motels and do not even have the benefit of their ignored claims being offered any sympathy much less return of their stolen assets. "Transparent" is the word any plaintiff's attorney caught in this morass would last use to describe what has occurred under the

---

[1] The Lucky d plaintiffs were among the very few parties asserting claims against the auditors that opposed "tag-along" inclusion in the MDL (albeit unsuccessfully).

guidance of this Steering Committee. As asserted in plaintiff's motion to intervene from November, the Eleventh Circuit has recognized in <u>In Re Temple</u>, 851 F. 2d 1269 (1988) a Due Process Right of claimants to a limited fund to be apprised of and participate in settlement negotiations. Here, to date, nobody has even told these plaintiffs where the proceeds are coming from, much less where they are earmarked to go.

To summarize, plaintiffs in the Lucky D matter respectfully implore this court to grant their pending motion to intervene in the Prager Metis settlement approval process with standing to object to the proposed terms if they so opt. Also, the court should grant their motion to amend the Complaint to include claims against certain PM principals  as set forth before any proposed settlement can be approved.

Respectfully submitted,

Anthony Scordo Esq. PC


s/Anthony Scordo



Anthony Scordo

NJ ID 024591987

Attorney for joint plaintiffs Lucky D, et .al


Lehman Lee & Xu

s/ Edward E. Lehman



Edward E. Lehman

IL ARDC 6194489

Attorney for joint plaintiffs Lucky D, et .al

Cc: all counsel via ECF

I certify that I have file this submission via ECF on this date.

s/ Anthony Scordo

Dated: April 10, 2026

_____

Anthony Scordo