**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:23-md-03076-KMM

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | MDL No. 3076 |
| THIS DOCUMENT RELATES TO: **THE PROMOTER DEFENDANTS** | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE**

Plaintiffs hereby respond to the Promoter Defendants' Reply In Support of Request for Judicial Notice and Opposition [ECF No. 1095] to Plaintiffs' Opposition to Request for Judicial Notice and Cross-Motion to Strike [ECF No. 1092] regarding the SEC's *Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets*, 91 Fed. Reg. 13714 (Mar. 23, 2026) (the "Interpretive Rule").

**A.      The Interpretive Rule Does Not Control and Cannot Resolve the Issues Presented.**

Plaintiffs do not urge the Court to "disregard" the Interpretive Rule; to the contrary, the Interpretive Rule, although not binding following *Loper Bright Enters v. Raimondo*, 603 U.S. 369, 412 (2024), *supports* Plaintiffs' long-held position that this Court must apply the test articulated in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946).

The Interpretive Rule states that it "does not supersede or replace the *Howey* test, which is binding legal precedent." 91 Fed. Reg. at 13716. In *Howey,* the Supreme Court defined the term "investment contract" in a way that it intended to be "capable of adaptation to meet the countless

1

and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Id.* at 13717 (citing *Howey*, 328 U.S. at 299). Under *Howey*, the term " 'investment contract' means any contract, transaction, or scheme whereby a person invests money in a common enterprise and reasonably expects profits to be derived from the efforts of others." *Id*. (citing *Howey*, 328 U.S. at 298-99); *see also Reves*, 494 U.S. at 63 n.2 (the *Howey* test is intended to afford "the SEC and the courts sufficient flexibility to ensure that those who market investment contracts are not able to escape the coverage of the Federal securities laws by creating new instruments that would not be covered by a more determinate definition.").

The SEC states that "[a] non-security crypto asset becomes subject to an investment contract when an issuer offers it by inducing an investment of money in a common enterprise with representations or promises to undertake essential managerial efforts from which a purchaser would reasonably expect to derive profits." 91 Fed. Reg. at 13721. That some digital assets held on the FTX exchange may have been characterized as "digital commodities" or otherwise non-security crypto asset(s) is therefore irrelevant to the ultimate question before this Court: have Plaintiffs adequately alleged that Defendants promoted and facilitated a coordinated investment scheme centered on the FTX Platform, FTX's native token (FTT), yield-bearing accounts (YBAs), lending products, and representations that customer assets would generate returns through FTX's managerial efforts such that FTX's offerings are securities under *Howey*?

Regarding the individual digital assets at issue, the Interpretive Rule makes clear: even if one assumes, *arguendo*, that FTT and YBAs are digital commodities rather than securities, this does not end the inquiry. "[A]s with any asset that is not a security, a nonsecurity crypto asset can be offered and sold subject to an investment contract, which is a security." 91 Fed. Reg. at 13717; *see also id*. at 13720–21. Defendants' singular case in support of their position, *Azad v. Jenner*,

2

only confirms that the Court must apply *Howey* and conduct a case-by-case analysis of Defendants' conduct to determine whether digital assets are governed by securities law based on their characteristics, structures, and promotional schemes. 2026 WL 1084840, at *4-6 (C.D. Cal. Apr. 16, 2026) (applying *Howey* and granting dismissal in part because the complaint failed to allege "details about any 'marketing' efforts beyond urging people to buy $JENNER based on an expectation that the coins would increase in value").

The Court's inquiry would not be complete even in a scenario where *all* of the assets traded the FTX Platform were merely "digital commodities" according to the Interpretive Rule. After all, orange trees are not securities, but in *Howey*, the Supreme Court concluded that a citrus grove scheme was offered such that it became a part of an investment contract, which is included in the statutory definition of a "security," *see* 15 U.S.C. § 77b(a)(1). So too here. Indeed, the FTX Platform maps seamlessly onto the citrus grove scheme first discussed in *Howey*:

> [FTX is] offering this opportunity to persons who reside in distant localities and who lack the equipment and experience requisite to the [creation], [maintenance] and marketing of the [digital asset exchange platform]. Such persons have no desire to [found a digital asset exchange platform] or to develop it themselves; they are attracted solely by the prospects of a return on their investment. Indeed, individual development of the [digital asset exchange platform] that [] offer[s] and s[ells digital assets] would seldom be economically feasible due to their small size. Such [platforms] gain utility as [digital asset exchanges] only when [created] and developed as component parts of a larger [international digital asset exchange]. A common enterprise managed by respondents or third parties with adequate personnel and equipment is therefore essential if the investors are to achieve their paramount aim of a return on their investments.

*Howey*, 328 U.S. at 299–300.

Ultimately, whether FTX's offerings, like the citrus grove scheme at issue in *Howey*, exhibit the elements of a security—(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived from the efforts of others—is a question that can only be answered on a full factual record. *See Fedance v. Harris*, 1 F.4th 1278, 1288 (11th Cir. 2021). It

3

is not a question that can be resolved through judicial notice of a generalized agency interpretation outside the context of the complete factual predicate underpinning Plaintiffs' claims.

**B.      Defendants' Request for Judicial Notice and Reply Should Be Stricken.**

Courts in the Eleventh Circuit regularly use the terms "request for judicial notice" and "notice of supplemental authority" interchangeably, treating requests for judicial notice as notices of supplemental authority, and applying the same analysis to either filing. *Hitas v. United States*, No. 3:11-CR-264-J-37JRK, 2019 WL 2717169, at *1 (M.D. Fla. June 28, 2019) ("the Court accepts [the request for judicial notice] as a notice of supplemental authority"); *see also*, *e.g.*, *Giustiniani v. Fla. Dep't of Fin. Servs.*, No. 3:11-CV-792-J-37MCR, 2012 WL 398136, at *3 (M.D. Fla. Feb. 8, 2012); *JuxtaComm-Texas Software, LLC v. Lanier Parking Sys. of Fla., Inc.*, No. 6:11-CV-514-ORL-DAB, 2011 WL 13141509, at *3 (M.D. Fla. Aug. 5, 2011). While no Local Rule governs requests for judicial notice, specifically, Local Rule 7.8 states:

> If one or more pertinent and significant authorities come to a party's attention after the party's motion or memorandum of law has been filed or after oral argument but before a decision has been rendered, a party may promptly file a notice of supplemental authority. Such authority may predate the motion, memorandum, or oral argument. The notice shall contain citations to the supplemental authority and shall state the reasons for the filing of the supplemental citations, referring either to the page of the motion or memorandum of law or to a point argued orally. . . . The bodies of the notice and the response shall not exceed 200 words each. No replies are permitted.

Accordingly, Defendants were required to abide by Local Rule 7.8, but have run afoul of it in multiple respects. Defendants' filing is over three times the maximum 200 words and, now, Defendants have filed a lengthy Reply in support of their Request despite Rule 7.8's clear prohibition on replies. Accordingly, the Court may strike their motion. *See*, *e.g.*, *Incardone v. Royal Carribean Cruises, Ltd.*, No. 16-20924-CIV, 2019 WL 8989848, at *2 (S.D. Fla. June 5, 2019) ("[A]ny motion that fails to comply with" the Local Rules may "be stricken[.]"); *see also Aquatopia, LLC v. Gurson*, No. 1:23-CV-20841-KMM, 2025 WL 4669502, at *2 (S.D. Fla. Aug.

25, 2025) (Moore, J.); accord *Spanakos v. Aronson*, No. 17-80965-CV, 2020 WL 10459636, at *2 (S.D. Fla. Mar. 24, 2020) (Moore, J.). Further, if the appropriate Local Rule governing Defendants' request is Rule 7.1(a)(3), which governs general motions for relief, Defendants have run afoul of the meet and confer provision.

To the extent that Defendants contend that their Request may be considered a part of their Rule 12(b)(6) motion(s), and therefore exempted from the meet and confer requirement, that bald assertion is not supported by the law. Rule 7.1(c)(1) requires that Defendants seek leave of Court before filing "further or additional memoranda of law" supporting a motion, which request would have required Defendants to comply with Rule 7.1's pre-filing conferral requirement. *O'Brien v. Flick*, No. 24-61529-CIV, 2025 WL 242924, at *7 (S.D. Fla. Jan. 10, 2025) (striking motion for leave to file a sur-reply for failure to confer in accordance with Local Rule 7.1(a)(3)), *aff'd*, No. 25-10143, 2025 WL 2731627 (11th Cir. Sept. 25, 2025). Moreover, Defendants' multiple, post-briefing filings contravene Local Rule 7.8's mandate of brevity on post-briefing filings introducing supplemental authority and functions as a self-imposed increase of briefing page limitations.

## CONCLUSION

The Court should strike Defendants' Request for failure to comply with Local Rule 7.8. In the alternative, the Court may take judicial notice of the existence of the SEC's Interpretive Rule, but should accept Plaintiffs' responses. Plaintiffs are also willing to engage in further briefing if the Court should so request.

Dated: May 7, 2026                    Respectfully submitted,

**By: */s/ Adam Moskowitz***                    **By: */s/ David Boies***
Adam M. Moskowitz                               David Boies
Florida Bar No. 984280                          Alexander Boies
Joseph M. Kaye                                  Brooke A. Alexander
Florida Bar No. 117520                          **BOIES SCHILLER FLEXNER LLP**
**THE MOSKOWITZ LAW FIRM, PLLC**                333 Main Street
Continental Plaza                               Armonk, NY 10504
3250 Mary Street, Suite 202                     914-749-8200
Coconut Grove, FL 33133                         dboies@bsfllp.com
Office: (305) 740-1423                          aboies@bsfllp.com
adam@moskowitz-law.com                          balexander@bsfllp.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead MDL Counsel*                           *Co-Lead MDL Counsel*


                                                Laurence D. King
                                                Matthew B. George
                                                Clarissa R. Olivares
                                                **KAPLAN FOX & KILSHEIMER LLP**
                                                1999 Harrison Street, Suite 1560
                                                Oakland, CA 94612
                                                Telephone: (415) 772-4700
                                                *lking@kaplanfox.com*
                                                *mgeorge@kaplanfox.com*
                                                *colivares@kaplanfox.com*

                                                Frederic S. Fox
                                                Joel B. Strauss
                                                **KAPLAN FOX & KILSHEIMER LLP**
                                                800 Third Avenue, 38th Floor
                                                New York, NY 10022
                                                Telephone: 212-687-1980
                                                *ffox@kaplanfox.com*
                                                *jstrauss@kaplanfox.com*

                                                *Plaintiffs' Steering Committee Member*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 7, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, by using the CM/ECF system which will send an electronic notification of such filing to all counsel of record.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz

7