**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

THIS DOCUMENT RELATES TO:

      **AUDITOR DEFENDANTS**

      **LAW FIRM DEFENDANTS**

      **PROMOTER DEFENDANTS**

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SECOND TRANCHE OF
SETTLEMENTS, PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT
<u>CLASS, AND APPROVAL OF THE PROPOSED SCHEDULE</u>**

This multidistrict litigation seeks to address the substantial financial harm caused by the collapse of the FTX cryptocurrency exchange. On December 19, 2024 [**ECF No. 799**], June 30, 2025 [**ECF No. 937**], and July 22, 2025 [**ECF No. 940**] (together, the "***Approved Settlement Orders***"), the Court granted preliminary approval to global class action settlements with fifteen FTX MDL Defendants (the "***Approved Settlements***"). Since then, Plaintiffs have negotiated a second series of settlements with three Defendants—Prager Metis, Fenwick & West, LLP ("Fenwick"), and Udonis Haslem (the "***Second-Tranche Settling Defendants,***"[1] referred to herein as the "***Settling Defendants***" together with the First-Tranche Settling Defendants[2])—for which they now seek preliminary approval (the "***Second-Tranche Settlements***"). The Second-Tranche Settlements are the result of the tremendous efforts of Class Counsel, the Second-Tranche Settling Defendants, Second-Tranche Settling Defendants' Counsel, the FTX Bankruptcy Estate, and their mediator, David Geronemus.

Plaintiffs have also separately continued talks with the FTX Bankruptcy Estate (the "***Bankruptcy Estate***") concerning the administration of Plaintiffs' settlements across both the First and Second Tranches.  Plaintiffs learned during those negotiations that, contrary to previous expectations, the Bankruptcy Estate will not be able to administer settlements for Plaintiffs with optimal effectiveness or efficiency due to economical and practical constraints. Plaintiffs thus request that the Court preliminarily approve JND Legal Administration LLC ("***JND***") not only to executive a Notice Plan but also to execute distribution of settlement relief to approved Class

---

[1] Prager Metis is on the MDL's Auditors Track, Fenwick is on the Law Firms Track, and Mr. Haslem is on the Promoter Track.

[2] The First-Tranche Settling Defendants are (1) FTX Insider Defendants Samuel Bankman-Fried, Gary Wang, Nishad Singh, Caroline Ellison, and Dan Friedberg, and (2) FTX Promoter Defendants William Trevor Lawrence, Kevin Paffrath, Tom Nash, Brian Jung, Graham Stephan, Andrei Jikh, Jeremy LeFebvre, Erika Kullberg, Creators Agency, LLC, and Shaquille O'Neal.

Members. Plaintiffs thus seek approval of the Notice Plan and the Long Form and Short Form Notices submitted herewith as Exhibits 2 ("***JND Supp. Decl.***") and Exhibits 2A ("***Long Form Notice***") and 2B ("***Short Form Notice***"), respectively. Lastly, now that all Settling Defendants have executed settlement agreements, Plaintiffs seek the Court's approval of a Notice Schedule, a step the Court previously deferred at Plaintiffs' request. *See* ECF No. 799 at 10; ECF No. 937 at 12; ECF No. 940 at 13.

## I.        LITIGATION OVERVIEW

Plaintiffs refer the Court to their (1) Motion for Preliminary Approval of First Tranche Settlements, [ECF No. 565 at 3-6]; (2) Agreed Supplement to Plaintiffs' Motion for Preliminary Approval of First Tranche of FTX Settlements [ECF 618]; (3) Motion for Preliminary Approval of Settlement with Defendant Shaquille O'Neal [ECF No. 928 at 1-3]; (4) Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants Erika Kullberg and Creators Agency LLC [ECF No. 939 at 1-3]; (5) Plaintiffs' Unopposed Motion for Extension of Time to File Omnibus Motion for Preliminary Approval [ECF No. 1047 at 1-2]; (6) Plaintiffs' Unopposed Motion for Extension of Time to File Omnibus Motion for Preliminary Approval [ECF No. 1069 at 1-3], and (7) Status Report Regarding Proposed Omnibus Motion for Preliminary Approval [ECF No. 1084] for a full litigation and procedural background of the FTX MDL, the FTX Criminal Proceedings, and the settlement negotiations with the Settling Defendants.

The Second-Tranche Settlements are the result of the efforts of the Parties, the Bankruptcy Estate, and their JAMS mediator, David Geronemus. The settlements with Prager Metis and Fenwick each required multiple sessions and multiple days of mediation between the Parties, which included mediation briefs and presentations and the involvement of the Bankruptcy Estate. The Parties met at arm's length to resolve Plaintiffs' claims and their discussions were informed

by the mediation briefs, the motions fully briefed for the Defendants' respective tracks on the docket, and the Court's various Orders on the docket. The Plaintiffs' settlement with Mr. Haslem was informed by the previous settlements between the Plaintiffs and other Promoter Defendants on the Promoter Track.

Based on the evaluation of the facts and the law, the Settling Parties hereto have agreed (subject to court approval) to Settlements covering all persons or entities who purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT, excluding the FTX Group, the FTX MDL Defendants, governmental entities, and judicial staff presiding over this matter.

## II.   SETTLEMENT CONSIDERATION

### A.   Prager Metis

In consideration for full and final settlement of the claims asserted against Prager Metis in the FTX MDL and the Releases set forth therein and other consideration described in the Settlement Agreements Prager Metis will provide to the Settlement Class, subject to any limitations imposed by a court order: $11,750,000. **Ex. 1A** ("***Prager Agreement***") at §§ 8(a), 14.

### B.   Fenwick

In consideration for full and final settlement of the claims asserted against Fenwick in the FTX MDL and in consideration of the Releases set forth therein, Fenwick will provide to the Settlement Class, subject to any limitations imposed by a court order: $54,000,000. **Ex. 1B** ("***Fenwick Agreement***") at §§ 8.1.1, 14.

### C.   Udonis Haslem

In consideration for full and final settlement of the claims asserted against Mr. Haslem in the FTX MDL and in consideration of the Releases set forth therein, Mr. Haslem will provide to

the Settlement Class, subject to any limitations imposed by a court order: $420,000. **Ex. 1C** ("***Haslem Agreement***") at §§ 8, 15.

## III.   SETTLEMENT CLASS CERTIFICATION

The Second-Tranche Settlements require conditional certification of the Class, pursuant to Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, 23(b)(3), consistent with the Approved Settlement Orders. *See* ECF No. 799 at 4; ECF No. 937 at 3; ECF No. 940 at 3-4. Parties agree that for Settlement purposes only and pursuant to the terms of the Settlements, the Class Representatives[3] will serve as class representative plaintiffs and Adam Moskowitz of The Moskowitz Law Firm, PLLC and David Boies of Boies Schiller Flexner LLP will serve as Co-Lead Class Counsel pursuant to Federal Rule of Civil Procedure 23(c) and (g). The Settlements are conditional on the Court's approval thereof. In the event the Court does not approve all terms of the Settlements, then certification of the Class will be voided as to such Settlements, and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Class, will be voided. Prager Agreement at § 6; Fenwick Agreement at §6; Haslem Agreement at §6.

### A.   The Settlement Class

The Settlement Class is:

All persons or entities who purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT.

Excluded from the Settlement Class are FTX MDL Defendants and their officers, directors, affiliates, legal representatives, and employees; the FTX Group and their officers, directors, affiliates, legal representatives, and employees; any

---

[3] The Class Representatives are Brandon Orr, Leandro Cabo, Charles Dollwet, Jeffrey Malinovitz, Evan Hayes, Mark Girshovich, Ryan Henderson, Michael Livieratos, Alexander Chernyavsky, Gregg Podalsky, Vijeth Shetty, Chukwudozie Ezeokoli, Michael Norris, Edwin Garrison, Shengyun Huang, Julie Papadakis, and Kyle Rupprecht.

governmental entities; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

### B.    Release of Claims

In exchange for the consideration being provided by the Settling Defendants, the Releasing Parties provide a release to the Released Parties, as those terms are defined in the Settlement Agreements and in the form provided by the Settlement Agreements. Prager Agreement at § 14; Fenwick Agreement at § 14; Haslem Agreement at § 15. Without further action by any person or the District Court, Class members will be deemed: (a) to have consented to the dismissal with prejudice of any and all Released Claims; (b) to have released and forever discharged any and all Released Claims; and (c) to be forever barred and enjoined from instituting or further prosecuting Settling Defendants, in any forum whatsoever, including but not limited to any state, federal, or foreign court, or regulatory agency, or any arbitration forum, each and every Released Claim. Prager Agreement at §§ 4(c), 14, 17(a); Fenwick Agreement at §§ 4(c), 14, 17.1.2; Haslem Agreement at §§ 4(c), 15, 18(a).

### C.    Class Notice Provisions

The Settlement requires Class Counsel to prepare a notice that will contain a description of the Settlement Agreement and afford affected parties the opportunity to obtain copies of all the settlement-related papers. The Notice shall be the legal notice to be provided to the Class Members and shall otherwise comply with Rule 23 and any other applicable statutes, laws, and rules, including, but not limited to, the Due Process Clause of the United States Constitution. JND. Supp. Decl.; Prager Agreement at § 3; Fenwick Agreement at § 3; Haslem Agreement at § 3.

Plaintiffs have retained acclaimed legal notice experts JND to craft a Notice Plan to provide the best notice practicable to the Class, which this Court previously approved for the First Tranche of settlements in its Order on Plaintiffs' Motion for Preliminary Approval of First Tranche of

5

Settlements. *See* ECF No. 799 at 5-7. A robust Notice Plan was previously filed in connection with the First-Tranche Motion on March 27, 2024. ECF No. 565-3. As explained in the Declaration of Gina Intrepido-Bowden and in the updated Supplemental Declaration of Gina Intrepido-Bowden Regarding Proposed Settlement Notice Plan ("JND Supp. Decl.", attached hereto as Exhibit 2), the Notice Plan will provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. It will allow Class Members the opportunity to review a plain language notice with the ability to easily take the next step and learn more about the litigation. ECF No. 565-3 at ¶ 12; JND Supp. Decl. ¶¶ 31-32.

If the District Court certifies the Class pursuant to Federal Rule of Civil Procedure 23(b)(3), subject to the requirements of the Preliminary Approval Order, and at a time to be directed by the Court, the Parties will send, or cause to be sent, a Class Notice designed to reach the Class Members. JND designed the Notice Plan to provide the best notice practicable, consistent with the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which considers a notice plan with a high reach (above 70%) to be effective. JND Supp. Decl. at ¶ 4. The Plan consists of CAFA notice to appropriate state and federal officials, digital notice, an internet search campaign, distribution of an informational press release, notice posting on the bankruptcy docket and in the customer claim portal, a notice post by John Ray on X from the FTX account, a settlement website (containing the Long Form Notice, Short Form Notice, Settlement Agreements, frequently asked questions, contact information, and key dates), a settlement toll-free number with an interactive voice response, an email address, and a post office box. JND Supp. Decl. at ¶ 6. JND will work with Counsel for Settling Defendants to provide CAFA notice under 28 U.S.C. § 1715(b) by mail to the appropriate state and federal government officials no later than 10 days after the proposed settlement is filed with the Court. JND Supp. Decl. at ¶ 9.

The proposed digital notice efforts in the Notice Plan are anticipated to serve 82 million digital impressions to adults 18 and older in Canada, the EU, Great Britain, Hong Kong, Japan, and Singapore (the "Key Countries") with focused cryptocurrency targeting. JND Supp. Decl. at ¶ 10. The eight-week campaign uses the Google Display Network, Facebook, Instagram, Reddit, the CoinDesk Headlines eNewsletter (distributed on weekdays to approximately 19,000 subscribers), and the Benzinga Ring the Bell eNewsletter (distributed on weekdays to approximately 320,000 subscribers), with targeting tied to cryptocurrency affinities, websites, apps, keywords, and communities, with an emphasis on men and on mobile devices, and with embedded links to the settlement website. JND Supp. Decl. at ¶¶ 11-17. JND will also run a global Google search effort that uses a custom keyword and ad group list to serve Responsive Search Ads, which when clicked redirect the visitor to the settlement website where they can obtain information and file a claim electronically. JND Supp. Decl. at ¶ 19. At the start of the campaign, JND will distribute a global press release over PR Newswire's Global Crypto & Financial Markets Premium newswire to major crypto and blockchain outlets, financial media, newsrooms, syndication partners, journalists, and influencers in the United States, Canada, Europe, India, Latin America, Africa, and Asia, translated into English, Chinese (Traditional), Dutch, French, German, Italian, Indonesian, Vietnamese, Portuguese, and Spanish. JND Supp. Decl. at ¶ 21. Additional sources of notice include posting on the bankruptcy docket, posting in the FTX Bankruptcy customer claim portal, and a notice post by John Ray on X from the FTX account. JND Supp. Decl. at ¶ 23.

JND will develop and deploy the case-specific settlement website at www.FTXSettlement.com, which will provide links to essential case documents including the Long Form Notice, allow Class Members to file an online claim or print a Claim Form to submit by mail, be ADA-compliant, be optimized for mobile visitors, be designed to maximize search

engine optimization through Google and other search engines, and inform Settlement Class Members of the terms of the Settlement Agreement, their rights under the Settlement Agreement, deadlines, and the date of the Final Approval Hearing. JND Supp. Decl. at ¶¶ 24-27. JND will also establish and maintain an automated toll-free telephone line with an IVR available 24 hours a day and seven days a week, a case email address, and a dedicated post office box. JND Supp. Decl. at ¶¶ 28-30. JND designed the notice documents in plain language to comply with Rule 23, the Due Process Clause of the United States Constitution, and the FJC's Checklist, and the notice documents contain plain and easy-to-read summaries of the settlement and the options available to Class Members. JND Supp. Decl. at ¶¶ 31-32. Using a Comscore reach and frequency platform, JND calculated that the proposed digital effort alone will reach approximately 70% of likely Class Members in the Key Countries on average 2.3 times each, and the eNewsletter placements, internet search campaign, global press release, and notice postings will extend that reach and frequency further. JND Supp. Decl. at ¶ 34.

The Class Notice itself complies with the requirements delineated in § 3 of the Second-Tranche Settlement Agreements.  Prager Agreement at § 3; Fenwick Agreement at § 3; Haslem Agreement at § 3. The Short Form Notice and Long Form Notice are also attached hereto. Ex. 2B (Short Form Notice); 2A (Long Form Notice).

### D.   Final Approval

The Settlements require the prompt filing of a motion for preliminary approval of the Settlements and the Notice Provisions. Prager Agreement at § 2; Fenwick Agreement at §2; Haslem Agreement at § 2.  Class Counsel requests that ninety (90) calendar days after the Court enters its Preliminary Approval Order, the District Court hold the Final Approval Hearing and approve the Settlements.

### E.    Objections

Like the Approved Settlements and the Approved Settlement Orders [No. 799 at 7-8; ECF No. 937 at 5-6, 12; ECF No. 940 at 6, 13], the Second-Tranche Settlements provide that a Class Member may object to the settlements. To object, the Class Member must comply with the procedures and deadlines approved by the Court. Any Class Member who wishes to object to a settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and any Preliminary Approval Order. The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defendants' Counsel (at the addresses identified in the Class Notice, Long Form Notice at ¶ 22, no later than the Objection Deadline. Prager Agreement at § 11, Fenwick Agreement at § 11, Haslem Agreement at § 12. The requirements to assert a valid written objection shall be set forth in the Class Notice. Long Form Notice at ¶ 22; Prager Agreement at § 3(a), Fenwick Agreement at § 3.1.2; Haslem Agreement at § 3(a)(iv).

Subject to Court approval, any Class Member who files and serves a written objection may appear, in person or by counsel, at the Final Approval Hearing held by the District Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Class Member: (a) files with the Clerk of the District Court a Notice of Intention to Appear at the Final Approval Hearing by the Objection Deadline; and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline. Ex. 2A at ¶ 22. Prager Agreement at § 11, Fenwick Agreement at § 11.3, Haslem Agreement at § 11(c). The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member will present to the District Court

9

in connection with the Final Approval Hearing. Fenwick Agreement at § 11.4, Haslem Agreement at § 11(d).

### F.      Settlement Distribution

The Settlements provide that Co-Lead Class Counsel, or their authorized agents, shall administer and calculate the amounts payable to all members of the Class and, after the Effective Date, shall oversee distribution of the Settlement Consideration to all members of the Class. *See* Prager Agreement at § 10, Fenwick Agreement at § 10, Haslem Agreement at § 11. The Settlement Consideration (subject to Court approval) may be utilized to pay all reasonable costs and expenses incurred in providing Notice and administering the Settlement Agreement. *Id.*

A Plan of Allocation will be included within the distributed Class Notice, which will be filed at a time directed by the Court after the Preliminary Approval Order. The Plan of Allocation is attached hereto as Exhibit 3 ("***Plan***"). The Plan of Allocation distributes the Net Settlement Fund *pro rata* to Settlement Class Members who submit timely, complete, and valid Claim Forms supported by a sworn attestation and accepted by the Settlement Administrator. Plan at ¶¶ 3, 9, 11, 13, 15. For each Approved Claim, the Settlement Administrator calculates a Class Member Claim Amount by subtracting the claimant's Bankruptcy Customer Entitlement Amount (the allowed FTX Bankruptcy recovery) from the Gross Claim Value of the assets underlying that bankruptcy claim (measured by CoinGecko pricing as of May 14, 2026) so that the Settlement compensates Class Members only for losses the bankruptcy proceedings did not already make whole. Exhibit Plan at ¶¶ 4, 5, 6. The Plan values FTT Tokens at the claimant's documented out-of-pocket purchase price and assigns no value to FTT received at free or no cost. Plan at ¶ 7. Each Eligible Claimant then receives a *pro rata* share of the Net Settlement Fund equal to that claimant's Class Member Claim Amount divided by the aggregate of all Class Member Claim Amounts and multiplied by

the total value of the Net Settlement Fund, subject to a $5.00 minimum payment for administrative efficiency, funded by a *pro rata* reduction of awards that would otherwise exceed $5.00. Plan at ¶¶ 13, 20.

The Settlement Administrator independently reviews each claim, may request additional Supporting Documentation, and may disallow claims that are inadequately supported or show indicia of fraud, and the Plan also screens Eligible Claimants against OFAC sanctions lists before any distribution occurs. Plan at ¶¶ 8, 18, 24. The determination of the validity of Claim Forms and the proper amount of the payment to a Settlement Class Member is the sole responsibility of the Claims Administrator. Plan at ¶ 23. Class Members who dispute the Administrator's determination must notify the Administrator within thirty days, after which the Administrator and the Class Member have thirty days to attempt to resolve the dispute by agreement before the Administrator issues a binding written decision. Plan at ¶ 21. Finally, the Plan redistributes any remaining or uncashed funds *pro rata* to claimants who collected their payments and would receive at least $5.00 from the redistribution, and authorizes Class Counsel to petition the Court for approval of an alternative distribution of any residual fund if redistribution would be impracticable. Plan at ¶¶ 25, 26.

The Claim Form, the full version of which can be found attached hereto as **Exhibit 2F** ("***Claim Form***"), provides a simple and thorough method for Class Members to submit their Claims to the Settlement Administrator. It can be completed online through the Settlement Website or may be mailed in to JND's P.O. Box. Claim Form at 2. The Claim Form consists of seven parts: (A) Claimant Information; (B) FTX Asset & FTT Token Confirmation; (C) Assets & FTT Tokens Held on the FTX Platform; (D) FTT Tokens Held Outside FTX; (E) Bankruptcy Distribution Acknowledgment; (F) Payment Election; and (G) Signature and Representations. *Id.* Parts C and

11

D require documentation to evidence and verify the total type and quantity of the claimed crypto assets and/or the FTT tokens. *Id.*

### G. Attorneys' Fees and Expenses

Class Counsel's motion for Attorneys' Fees and Expenses shall be filed no later than fourteen (14) days before the Objection/Exclusion Deadline. Prager Agreement at § 13; Fenwick Agreement at § 13; Haslem Agreement at § 14. As soon as is practicable after filing, Co-Lead Class Counsel shall cause the Settlement Administrator to post on the Settlement Website all papers filed and served in support of Co-Lead Class Counsel's motion for an award of Attorneys' Fees and Expenses. *Id.* Fenwick and Haslem reserved the right to oppose any such petition that they deem to be unreasonable in nature or amount or otherwise objectionable. Fenwick Agreement at § 13; Haslem Agreement at § 14. All attorneys' fees and expenses incurred by Class Counsel will be paid out of the Settlement Consideration. Prager Agreement at § 13; Fenwick Agreement at § 13; Haslem Agreement at § 14. The effectiveness of the Settlement will not be conditioned upon or delayed by the Court's failure to approve any petition by Plaintiffs and Class Counsel for Attorneys' Fees and Expenses. *Id.* The denial, downward modification, or failure to grant any petition by Plaintiffs and Class Counsel for Attorneys' Fees and Expenses shall not constitute grounds for modification or termination of the Settlement. *Id.*

## IV. LEGAL STANDARD

Public policy favors settlements, particularly where complex class action litigation is concerned. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). "Settlements conserve judicial resources by avoiding the expense of a complicated and protracted litigation process . . . ." *In re Motorsports Merch. Antitrust Litig.*, 112

F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). The Court has broad discretion in approving a settlement. *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1311 (S.D. Fla. 2015).

Court approval is required for any class action settlement that releases the claims of absent class members. Fed. R. Civ. P. 23(e). Federal Rule of Civil Procedure 23(e)(2) requires the Court to determine whether the Settlement Agreement is "fair, reasonable, and adequate." The 2018 amendments to Rule 23 charge the Court to analyze whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Per these amendments, Rule 23(e)(2)[4] requires courts to consider whether:

A. the class representatives and class counsel have adequately represented the class;

B. the proposal was negotiated at arm's length;

C. the relief provided for the class is adequate, taking into account:

    i.    the costs, risks, and delay of trial and appeal;

    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.    the terms of any proposed award of attorney's fees, including timing of payment; and[5]

    iv.    any agreement required to be identified under Rule 23(e)(3); and

D. the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors must be viewed in tandem with the Eleventh Circuit's guidelines for approval

---

[4] These factors are intended to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Rule 23(e)(2) advisory committee's note to 2018 amendment; *see also Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2019 WL 617791, at \*5 (S.D. Iowa, Feb. 14, 2019) (holding that the 2018 amendments to Rule 23 "were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement").

[5] As explained in Section III.G above, Class Counsel shall file their motion for Attorneys' Fees and Expenses no later than fourteen (14) days before the Objection/Exclusion Deadline.

of a settlement. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (holding that the Rule 23(e)(2) factors must be considered in conjunction with factors that courts used prior to the 2018 amendments). Courts in the Eleventh Circuit have long considered the following six factors when assessing the fairness of a settlement:

1) the likelihood of success at trial;

2) the range of possible recovery;

3) the point on or below the range of recovery at which a settlement is fair, adequate, and reasonable;

4) the complexity, expense, and duration of the litigation;

5) the substance and amount of opposition to the settlement; and

6) the stage of proceedings at which settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

## V.   THE PROPOSED SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

### A.   Standards for Preliminary Approval of a Proposed Settlement

A class action may be settled only with the approval of the Court. Fed. R. Civ. P. 23(e). The Rule 23(e) settlement approval procedure has three principal steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected Class Members; and (3) a final approval determination following a fairness hearing at which Class Members may be heard regarding the settlement, and at which counsel may introduce evidence and present arguments concerning the fairness, adequacy, and reasonableness of the settlement. *See* 4 *Newberg and Rubenstein on Class Actions* §§ 13:39 *et seq.* (6th ed. 2022). Evaluation of each of the factors relevant to preliminary approval demonstrate that such approval of the Second-Tranche Settlements is warranted.

### 1.    The Settlements Are Reasonable

Plaintiffs seek class-wide relief from: (1) Prager Metis, who audited a FTX entity and materially aided and abetted the fraudulent scheme; (2) Fenwick, who served as outside counsel to FTX, materially aided and abetted the fraudulent scheme, and had knowledge regarding FTX's business operations as well as MDL Defendants' furtherance of those operations; and (3) Mr. Haslem, who is a celebrity paid by FTX to present it to their followers as a safe and legitimate alternative to other cryptocurrency exchanges.

#### a)  Prager Metis

Prager Metis served as auditor for FTX Trading Ltd. and issued "clean" audit reports opining that FTX's 2020 and 2021 financial statements complied with GAAP, despite the absence of internal controls and sound corporate governance principles in place at FTX. In exchange for release of the claims against it, Prager Metis has agreed to pay $11,750,000 even before a decision on the Auditor Defendants' Motion to Dismiss [ECF No. 281].  Proceeding to summary judgment and trial would drastically increase the expense of the litigation and presents inherent risks to Class Members' recovery.

By reaching settlement between Prager Metis and the Class, the parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims. The settlement ensures meaningful benefits to Class Members. Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the settlement is highly beneficial to the Class. The settlement with Prager Metis is reasonable.

#### b)  Fenwick

Fenwick served as FTX US's principal outside law firm and helped to craft and implement strategies that facilitated FTX's fraud.  In exchange for release of the claims against it, Fenwick

15

has agreed to pay $54,000,000 even before filing a Motion to Dismiss Plaintiffs' Amended Complaint, and proceeding to summary judgment and trial would drastically increase the expense of the litigation and presents inherent risks to Class Members' recovery.

By reaching settlement between Fenwick and the Class, the parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims. The settlement ensures meaningful benefits to Class Members. Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the settlement is highly beneficial to the Class.  The settlement with Fenwick is reasonable.

### c)  Mr. Haslem

Mr. Haslem, like the other Promoter Defendants, is an influencer paid by FTX to promote the exchange to his followers. In exchange for release of the claims against him, Mr. Haslem has agreed to pay $420,000. The Promoter Defendants' Motion to Dismiss the First Amended Complaint [ECF No. 943] and Mr. Haslem's Individual Brief in Support of the Motion to Dismiss [ECF No. 950] remain pending.  Summary judgment and trial thereafter would drastically increase the expense of the litigation and present inherent risks to Class Members' recovery.

By reaching settlement between Mr. Haslem and the Class, the parties will avoid protracted litigation and establish a means for prompt resolution of Class Members' claims. The settlement ensures meaningful benefits to Class Members. Given the alternative of continued, long and complex litigation before this Court, the risks involved in such litigation and the possibility of further appellate litigation, the availability of prompt relief under the settlement is highly beneficial to the Class.  The monetary relief afforded by Mr. Haslem also presents the best possible outcome considering the costs and risks of continued litigation and the limited likelihood of obtaining a greater recovery due to the size of his payments from FTX. The settlement with Mr.  Haslem is

reasonable.

### 2.      The Class Has Been Adequately Represented

The adequacy inquiry is two-fold. First, the Court must assure itself that the named representatives will adequately and diligently represent the class members' interests and that no potential conflicts in interest will interfere with this representation. *See Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940). Plaintiffs are members of the Settlement Class and do not possess any interests antagonistic to the Class. Both Plaintiffs and the Settlement Class Members allegedly purchased or held legal title to and/or beneficial interest in fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT, which are allegedly unregistered securities, from the Settling Defendants.

Second, the Court must determine that the class's attorneys will adequately represent the class's interests. Class Counsel are experienced in class-action litigation and in cryptocurrency-related class-action litigation, and their firms' CVs highlight their skills and experience. Copies of Class Counsel's CVs are attached hereto as **Exhibit 4**. Because Plaintiffs and their counsel have devoted substantive time and resources to this litigation and have adequately represented their clients' interests, the adequacy requirement is satisfied.

### 3.      The Settlements are the Product of Arm's-Length Negotiations

Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. *See* 4 *Newberg* § 13.45; *see also Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016). Here, the Settlements were reached after informed, extensive arm's-length negotiations. Each Second-Tranche Settling Defendant was individually represented by experienced counsel. The Second-Tranche Settlements were reached after extensive investigations into the factual underpinnings of the practices challenged in the civil actions, as well as the

17

applicable law. In addition to their pre-filing efforts, Class Counsel engaged in extensive research, including the review of documents, facts and testimony provided in the FTX-related bankruptcy and criminal proceedings. Finally, the Plaintiffs separately mediated many times with Defendants Prager Metis and Fenwick before David Geronemus, a highly respected JAMS mediator. *See Lee v. Ocwen Loan Servicing, LLC, No. 14-CV-60649,* 2015 WL 5449813, at *11 (S.D. Fla. Sept. 14, 2015) (approving settlement and noting that parties' use of a highly respected mediator supported the conclusion that the settlement was not the product of collusion). Nothing in the course of the negotiations or in the substance of the proposed settlements provides reason to doubt the settlements' fairness.

### 4. The Recommendation of Experienced Counsel Favors Approval.

In considering a proposed class settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Blue Cross Blue Shield Antitrust Litig.,* No. 2:13-CV-20000-RDP, 2020 WL 8256366, at *26 (N.D. Ala. Nov. 30, 2020) (citation omitted). Here, Class Counsel endorses the Second-Tranche Settlements as fair, adequate, and reasonable. Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters and have conducted extensive investigations into the factual and legal issues raised in this action. Class Counsel have weighed the benefits of the Second-Tranche Settlements against the inherent risks and expense of continued litigation, and they strongly believe that the proposed settlements are fair, reasonable, and adequate. The fact that qualified and well-informed counsel endorse the settlements as being fair, reasonable, and adequate weighs in favor of approving the Settlements.

### B. The Proposed Schedule is Reasonable

The Second-Tranche Settlements afford important relief in the form of monetary relief to Class Members, and the consideration offered by the Second-Tranche Settling Defendants is

reasonable. The settlements consider the significant benefits provided to the Class by Settling Defendants fulfilling their cooperation. Consistent with the provisions of the settlements, Plaintiffs respectfully propose the following schedule:

- Objection Deadline: 45 days after JND's dissemination of notice of the settlement in all fora identified in the Notice Plan;
- Deadline for parties to file a response to any comments or objections by a Class Member: 55 days after JND's dissemination of notice of the settlement in all fora identified in the Notice Plan;
- Final Approval Hearing: 90 days from Preliminary Approval or as determined by the Court.

### C.    Certification of the Proposed Settlement Class Is Appropriate.

The parties agree, for purposes of settlement only, that the Settlement Class be defined as follows:

> All persons or entities who purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT.

> Excluded from the Settlement Class are FTX MDL Defendants and their officers, directors, affiliates, legal representatives, and employees; the FTX Group and their officers, directors, affiliates, legal representatives, and employees; any governmental entities; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

The Class meets the requirement of class certification set forth in Rule 23(a) and Rule 23(b)(3).

### 1. Rule 23(a) is Satisfied.

### a)    The Settlement Class Is Too Numerous to Permit Joinder.

A case may be certified as a class action only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed rule, numerosity is generally presumed when the potential number of class members reaches forty (40). *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (citing *Newberg on Class Actions*, § 3.5 at 247 (4th ed. 2002)). Here, numerosity is readily satisfied. The total number of

Class members is estimated to be in the millions. As of 2021, FTX reported over 1.2 million registered users across its platforms.

### b)  This Action Presents Common Questions of Law or Fact.

Rule 23(a)(2) requires that there be one or more questions common to the class. *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1325 (N.D. Ga. 2007). Plaintiffs need only show the existence of a common question of law or fact that is significant and capable of class-wide resolution. *In re Fla. Cement & Concrete Antitrust Litig.,* No. 09-23187-CIV, 2012 WL 27668, at *3 (S.D. Fla. Jan. 3, 2012). The Court already found such commonality in ordering consolidation of these FTX matters. In ordering the consolidation and transfer of these cases, the JPML explained:

> These actions present common questions of fact concerning the collapse of the FTX cryptocurrency exchange in November 2022, which allegedly was caused by the conduct of FTX former principals Sam Bankman-Fried, Zixiao "Gary" Wang, and Nishad Singh, and financial improprieties with Alameda Research. All actions allege that FTX executives fraudulently withheld or misrepresented information with respect to customer assets on the FTX platform and that the professional service firms [i.e., the Domestic VC, Multinational VC, Accounting Firm, Law Firm, and Bank Defendant Tracks] and celebrity promoters [i.e., the Promoter and Digital Creator Track] who worked with FTX were complicit in or otherwise bear responsibility for the alleged fraud – for example, by concealing FTX's financial problems or promoting FTX products with knowledge or willful blindness of the alleged fraud.

ECF No. 1, at 3. Common issues abound here, and Rule 23(a)(2) is satisfied.

### c)  Class Representatives' Claims are Typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is met if the claims of the named plaintiffs "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996). "The key inquiry in determining whether a proposed class has 'typicality' is whether the class representative is part of the class and

possesses the same interest and suffers the same injury as the class members." *Medine v. Washington Mut., FA,* 185 F.R.D. 366, 369 (S.D. Fla. 1998). Here, the Class Representatives' claims stem from the same common course of conduct as the claims of the Class Members. FTX engaged in a widespread fraudulent scheme and conspiracy in which FTX customer property was wrongfully misappropriated by Alameda and FTX to further facilitate the fraud, a common course of conduct resulting in injury to all Class Members when the fraud was exposed and the FTX house of cards fell. Any injunctive and declaratory relief achieved applies to Class Representatives and Class Members equally.

### d) Class Representatives and Their Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class Members.

Rule 23(a)(4) requires that the representative plaintiffs "fairly and adequately" protect the interests of the class. The two-prong test for determining adequacy is: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted). Both prongs are satisfied here. First, Class Representatives and the Settlement Class Members are equally interested in recovering as much of their property and/or recovering damages from any defendant who aided, abetted, or was an accomplice or agent of FTX. Accordingly, the Class Representatives will fairly and adequately protect the interests of all Settlement Class Members. Second, Class Counsel have extensive experience litigating and settling class actions, including consumer fraud cases throughout the United States. *See* Exhibit 4. Class Counsel are well-qualified to represent the Settlement Class.

### 2. The Requirements of Rule 23(b)(3) are Satisfied.

The proposed Settlement Class satisfies Rule 23(b)(3), which permits a class action if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court has already acknowledged that common questions of law and fact exist such that Consolidation under MDL jurisdiction is appropriate, pursuant to 28 U.S.C. § 1407. *See* ECF No. 1, at 3. The FTX fraud and alleged conspiracy plainly involve common issues of law and fact that predominate over any individual issues involved in this fraud of historic proportions.

Rule 23(b)(3)'s other requirement is that class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The purpose of the superiority requirement is consistent with the overall goals of Rule 23, which is to assure that the class action is the most efficient, effective, and economic means of settling the controversy." *Walco Invs., Inc.*, 168 F.R.D. at 337. That is the case here where FTX's common course of conduct will play a foundational role in the case against any defendant and individual damages do not justify individual lawsuits. *Id.* ("It would be extremely costly, not to mention unnecessarily duplicative, for a class member to try this action separately"). The individual damages that individual FTX account holders would seek in an individual action are insufficient to incentivize and justify litigation against some of the largest institutional Defendants, but given the number of account holders, a class action provides incentives for litigation and recovery against the same defendants. Given the nature of the fraud and the damages here, class treatment is superior to individual lawsuits.

## VI.       THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

Should the Court grant preliminary approval, it must also "direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). Notice should be the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (same). "[I]t is not only necessary that the notice reach the parties affected, but [also] that it convey[s] the required

information," including adequately describing the substantive claims and "information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *See Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-86 (11th Cir. 2007) (citation omitted). JND will create a digital ad campaign, using the Google Display Network, Responsive Search Ads, Facebook, Instagram, and Reddit, and an informational press release to distribute Notice. JND Supp. Decl. ¶¶ 6, 10-14, 19, 21. JND will also publish Notice in the leading cryptocurrency website, the *CoinDesk Headlines eNewsletter*, and *Benzinga's Ring the Bell eNewsletter*, and on a dedicated website created by JND. *Id.* at ¶¶ 15, 16, 24. Additionally, Notice will be posted on the FTX Bankruptcy Docket, the FTX Customer Claim Portal, and will be posted by John Ray on X from the FTX Account. *Id.* at ¶ 6. As part of the Notice Plan, JND will maintain and respond to potential Class Member inquiries made to a 24/7 toll-free IVR hotline, a dedicated email address and a post office box. *Id.* at ¶¶ 6, 28–29. The Notice Plan provides the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); *see also* JND Supp. Decl. ¶¶ 7, 35.

Plaintiffs seek the Court's approval to hire acclaimed legal notice experts JND to administer the notice plan and the distribution of settlement funds. As the Court is aware from previous filings by Plaintiffs, JND crafted a court-approved program for another recent cryptocurrency matter. *See In re Ripple Labs Inc. Litig.,* No. 18-cv-06753-PJH, ECF No. 359 (N.D. Cal. Jan. 26, 2024). Previously, Plaintiffs had sought the Bankruptcy Estate to take on administering notice and distribution of fund, relying on what Plaintiffs understood to be the Bankruptcy Estate's ability to efficiently and economically provide notice and distribute the Settlement Fund to the MDL's Class Members. Plaintiffs have since learned that the Bankruptcy Estate cannot meet the Plaintiffs' economic and efficiency requirements. JND is a reliable choice given its experience and proven capabilities in similar matters.

23

## A.    The Notice Plan Meets All Requirements

The Class's proposed notice plan satisfies the fairness standards set forth in Rule 23. The proposed notice is the best practicable under the circumstances. The notice is "reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, Class Counsel's Fee Application . . . and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's Fee Application," and/or a request for General Release Payments for Plaintiffs. *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011). The Notice will also inform Settlement Class members that there will be no additional opt-out period provided for subsequent settlements by or judgments against the remaining Defendants, making their choice concerning opting out binding if or when those later settlements or judgments occur. Long Form Notice at ¶ 19. [6]

Further, in class action settlements with multiple defendants, allowing a single opt-out period for all Defendants (and not defendant by defendant) is common, appropriate, and in line with the requirement under Rule 23 for the orderly and efficient administration of class actions. Courts have repeatedly held that when a class is certified for a series of separate settlements, class members do not need to be given the opportunity to opt out from each settlement

---

[6] *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, 2020 WL 5211035, at *13 (E.D. Pa. Sept. 1, 2020) ("[T]he Court properly exercised its discretion in approving the second settlement agreement without a second opt out period" because "notice sent to class members following preliminary approval of the first settlement clearly apprised them of the fact that they would be bound by all future judgments in the case, not just the settlement with" the first tranche of settling defendants); *Low v. Trump University, LLC*, 881 F.3d 1111, 1121–22 (9th Cir. 2018) (due process does not compel a second opt-out opportunity at settlement stage because an objector who failed to opt out at the class certification stage's due process rights were protected by prior notice and fairness hearing); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114–15 (2d Cir. 2005) (no requirement to grant "the opportunity to opt out after the settlement notice was issued" because the member "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement.")

individually.[7]

Finally, the Notice presents all required categories of information clearly and in plain English. *See Adams*, 493 F.3d at 1287.  Based on inclusion of the foregoing content, the Notice is substantively sufficient.

## VII.    THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The Class requests that the Court grant preliminary approval and set the schedule set forth below, which includes a proposed final approval hearing date no earlier than 90 days after preliminary approval, if granted. With these settlements, the settlement fund has reached a sum which makes a first round of notice and distribution economical. Due to these recent settlements, an imminent approval hearing date is now essential to provide relief for Class Members.

| EVENT | DATE |
| --- | --- |
| CAFA Notice | On or before June 1, 2026 – 10 days from Filing of Motion for Preliminary Approval |
| Notice Published and Disseminated | Within 30 Days of the Court entering the Order Preliminarily Approving Second Tranche of Settlements |
| Motion for Final Approval of Settlements, to Approve Class Counsel Fees Costs and Class Representative Awards | 14 Days Prior to the Objection/Exclusion Deadline |

---

[7] *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, MDL 1446, 2006 WL 1006611, at *1 (S.D. Tex. April 12, 2006) (settlement class members did not have a right to "cherry pick the class in which they wish to stay"); *In re Del-Val Fin Corp. Sec. Litig.*, 162 F.R.D. 271, 275 (S.D.N.Y. 1995) ("no precedent exists for permitting class members to opt out a class, whether certified for purposes of settlement or otherwise, with respect to some defendants . . . but not others . . . . We believe that the balance struck by Rule 23 would be upset if individuals could choose to participate in a class for purposes of settlement with some defendants, but to exclude themselves from the settlement with other defendants."); *see also Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*, No. 08-cv-42, 2013 WL 4525323 at *10 (E.D.N.Y. Aug. 27, 2013) (class members do "not have an independent right to pick-and-choose which settlement agreements to join or opt out of").

| | |
|---|---|
| Deadline for receipt of opt-out requests and for filing and receipt of objections and notices of appearance | 45 Days from the Notice Date |
| Response to Objections | 10 days from Objection/Opt-out Deadline |
| Settlement Administrator files List of Opt-outs | 10 days prior to Final Approval Hearing |
| Final Approval Hearing | 90 Days from Preliminary Approval or as Determined By the Court |
| Claims deadline | 30 days from Final Approval Order |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court do the following: (1) grant preliminary approval of the Second-Tranche Settlements; (2) grant certification of the Proposed Settlement Class; (3) appoint Class Representatives as Rule 23(c) class representatives; (4) appoint MDL Co-Lead Counsel, Adam Moskowitz of The Moskowitz Law Firm, PLLC and David Boies of Boies Schiller Flexner LLP as Co-Lead Class Counsel pursuant to Fed R. Civ. P. 23(c)(1)(B) and 23(g); (5) approve the proposed plan of notice to the Class pursuant to Fed. R. Civ. P. 23(e) and set a schedule for disseminating notice to Class Members, as well as deadlines to comment on or object to the Settlements; and (6) schedule a hearing pursuant to Fed. R. Civ. P. 23(e)(2) to determine whether the proposed Settlements are fair, reasonable, and adequate, and should be approved.

Dated: May 22, 2026

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*

Respectfully submitted,

By: */s/ David Boies*
David Boies
Alexander Boies
Brooke A. Alexander
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
914-749-8200
dboies@bsfllp.com
aboies@bsfllp.com
balexander@bsfllp.com

*Co-Lead Counsel*

27

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the forgoing was filed on May 22, 2026, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam Moskowitz*

Adam Moskowitz