## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

MDL No. 3076

Case No. 1:23-md-03076-KMM

### IN RE:

### FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION

### THIS DOCUMENT RELATES TO:

Auditor Defendants Track (Prager Metis); Law Firm Defendants Track (Fenwick & West); and the separately prosecuted, non-class action: *Lucky D., et al. v. Prager Metis LLP, et al.*, No. 2:23-cv-00389 (D.N.J.) (transferred for pretrial coordination).

### LUCKY D PLAINTIFFS' OPPOSITION TO PLAINTIFFS' MOTION
### FOR PRELIMINARY APPROVAL OF SECOND TRANCHE OF SETTLEMENTS,
### PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASS,
### AND APPROVAL OF THE PROPOSED SCHEDULE
### [ECF NO. 1106]

*(Targeted Rule 23(e) Objection; Request for Bright-Line Carve-Out; Renewal of Pending Motion to Intervene [ECF No. 1051]; Reservation of Rule 23(h) Fee-Award Objections; and Request for Oral Argument)*

## PRELIMINARY STATEMENT

The Lucky D Plaintiffs are not, and have never been, putative class members in this multidistrict litigation. They are individually named, individually represented, foreign-citizen direct litigants prosecuting Rule 20 claims for professional malpractice, common-law fraud, and individual partner liability under N.J.S.A. 42:1A-306 against Prager Metis LLP in the District of New Jersey. Their action, filed January 24, 2023, was transferred to this Court under 28 U.S.C. § 1407 for coordinated pretrial proceedings only; it must, under that statute and under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34–40 (1998), return to the District of New Jersey for trial. Their documented aggregate losses are not less than $800,000,000.

The Settlement Agreements at ECF No. 1106-1, as drafted, would foreclose that path. The Complete Bar Order at Section 17(a) of the Prager Agreement enjoins "any and all persons and entities" from prosecuting "any claim" against "any Released Party" — reaching, on its face, the Lucky D Action and the Lucky D Plaintiffs' separately pleaded direct claims. The proposed mechanism of substitution is a *pro rata* share of the $11,750,000 Prager Settlement Amount — a fund equal to approximately **1.47 percent** of the Lucky D Plaintiffs' aggregate documented losses, before deductions for the proposed thirty-three-percent attorneys' fee petition, before notice and administration costs, before bankruptcy offset, and before operation of the Plan of Allocation's $5 minimum-payment floor cross-subsidy.[1] The Lucky D Plaintiffs raise that figure not as a Rule 23 fairness measure (Rule 23 does not apply to them) but to identify, with precision, what the Bar Order's operative text would impose as the involuntary exchange for their pleaded direct claims.

The Lucky D Plaintiffs do not ask the Court to deny preliminary approval. They do not challenge any feature of the Second-Tranche Settlements as to actual class members. They request a single, conservative, textually precise modification: a caption-specific carve-out, also reflected in a narrowed Complete Bar Order, that confirms what 28 U.S.C. § 1407, *Lexecon*, and the Eleventh Circuit's bar-order trilogy — *In re U.S. Oil & Gas Litigation*, 967 F.2d 489, 493–96 (11th Cir. 1992); *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1312–14 (11th Cir. 2004); and *In re HealthSouth Corp. Securities Litigation*, 572 F.3d 854, 862–66 (11th Cir. 2009) — already require: that an order of preliminary or final approval entered in this MDL

---

[1] Aggregate Lucky D Plaintiff losses verified at not less than USD $800,000,000 include, by way of example: Plaintiff Lucky D. at approximately $1,564,000; Plaintiff P. Devin at approximately $78,000,000; and Plaintiff Apex Digital at approximately $510,000,000. These figures were transmitted to Sidley Austin LLP, counsel for Prager Metis, on February 2, 2026 in connection with the Lucky D First Amended Complaint filed February 3, 2026.

does not extinguish direct-action claims of separately represented non-class litigants whose actions are present here only on § 1407 transfer.[2]

Six uncontested facts frame the request. **First**, the Lucky D Action is the only separately represented, non-class direct action against Prager Metis in this MDL, and the Settling Parties expressly acknowledged its existence on the face of the Prager Agreement at ECF No. 1106-1, naming the case by caption and case number in the Recitals. **Second**, Co-Lead Class Counsel possessed not less than eleven months of documented written notice that the Lucky D Plaintiffs were prosecuting direct claims through independent counsel and had not consented — and did not consent — to class-wide release. **Third**, the Complete Bar Order at Section 17 of the Prager Agreement (and the parallel provision in the Fenwick Agreement at Section 17.1.2), as drafted, enjoins "any and all persons and entities" — without qualification — from prosecuting "any claim" against "any Released Party" under "any federal, state, or foreign statutory or common-law rule." **Fourth**, the proposed Notice forecloses any further opt-out window, requiring foreign-resident direct-action litigants to be treated as if they were class members electing class participation. **Fifth**, the omnibus Second-Tranche papers filed on May 22, 2026 — specifically the Plan of Allocation at ECF No. 1106-3 and the Long-Form Notice at ECF No. 1106-2 — disclosed for the first time the operative distribution mechanics, including the bankruptcy-offset mechanism, the May 14, 2026 CoinGecko reference-price snapshot for Gross Claim Value, and the $5 minimum-payment floor funded by pro rata reduction of larger claims. **Sixth**, the Lucky D Plaintiffs' Motion to Intervene at ECF No. 1051, filed November 7, 2025 and fully briefed as of January 22, 2026 (ECF

---

[2]The Lucky D Plaintiffs raise no challenge to the Second-Tranche Settlements as to any other class member, to the certification of the Class for settlement purposes, to the selection of Co-Lead Class Counsel, to the JND Notice Plan as administered, or to any other feature of the Second-Tranche papers. The objection is targeted, surgical, and conservative.

No. 1060), has been pending without adjudication for more than seven months. The Lucky D Plaintiffs respectfully note this fact only to frame the present filing: the Second-Tranche papers were placed on the docket while the predicate intervention question remained sub judice, with the result that the Lucky D Plaintiffs file this Opposition as named direct-action plaintiffs whose pleaded claims the proposed Bar Order would extinguish, and additionally renew the pending Motion to Intervene under Section I below.

The relief requested is the standard form recommended in the *Manual for Complex Litigation (Fourth)* § 13.23 and routinely adopted in this Circuit. It tracks the conservative MDL practice of distinguishing, in the operative settlement text, between absent class members (whose claims the settlement extinguishes through ordinary Rule 23(e) preclusion) and separately represented direct-action plaintiffs (whose claims the settlement may not reach absent consent, opt-in, or § 1404 self-transfer). The carve-out the Lucky D Plaintiffs propose would, on its terms, also confirm the same result as to the parallel direct actions of *Alistair et al. v. Decker et al.*, No. 2:26-cv-05195 (D.N.J.), and *Byers et al. v. Fenwick & West LLP*, No. 1:26-cv-01651 (D.D.C.), and any other separately represented non-class direct action prosecuted by retained counsel through claimants who have not consented to class treatment, without further proceedings as to those actions. The Settling Defendants receive the global peace they bargained for as to every claim within § 1407's grant and every claim of every actual class member; the separately represented direct actions return to their originating districts for the trial on the merits *Lexecon* preserves; and the Court avoids the appellate exposure that an unconditional Bar Order against non-class direct litigants would otherwise create.

Co-Lead Class Counsel's own internal valuation of the Second-Tranche Settling Defendants illustrates the structural problem the carve-out resolves. Co-Lead Class Counsel

negotiated $54,000,000 from Fenwick — a **4.6-times multiple** of the Prager Amount, against a defendant whose duty to FTX customers and creditors is, by every recognized accounting and professional-responsibility framework, materially *lower* than the auditor's.[3] The asymmetry is not the Lucky D Plaintiffs' valuation; it is Co-Lead Class Counsel's own benchmark, drawn from arm's-length mediations the Lucky D Plaintiffs do not contest. For actual class members, that asymmetry may be acceptable; the Lucky D Plaintiffs take no position. For non-class direct litigants with documented aggregate losses of $800,000,000 in pleaded individual claims, the asymmetry confirms that the Prager Settlement Amount cannot have been priced with the Lucky D Action in mind — because the Lucky D Action was not at the table.

The Lucky D Plaintiffs additionally renew their pending Motion to Intervene at ECF No. 1051 for the limited and procedurally narrow purpose of pressing this targeted objection, and additionally reserve, for the Rule 23(h) stage, the lodestar cross-check predicates that *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 773–75 (11th Cir. 1991), requires before any percentage-of-fund award is entered against the common fund here.

## STATEMENT OF FACTS

### A.  The Lucky D Action: Foreign Plaintiffs, Direct Claims, and Documented Losses Exceeding $800 Million.

The Lucky D Action was filed in the District of New Jersey on January 24, 2023 (No. 2:23-cv-00389), and assigned to Judge Madeline Cox Arleo and Magistrate Judge Jose R. Almonte. The

---

[3] AICPA Statement on Auditing Standards (SAS) No. 99 (now AU-C § 240) imposes affirmative duties on auditors to detect material fraud; AICPA SAS Nos. 122-150 and AU-C §§ 200, 240, 265, 325, 330, 450, 550 impose duties of professional skepticism, internal-control testing, and going-concern evaluation that have no parallel in the outside-counsel context. Fenwick's exposure as outside counsel sounds primarily in aiding-and-abetting and negligence; Prager's exposure sounds in professional malpractice with documented audit-report issuance. *See In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 504-08 (S.D.N.Y. 2011) (auditor liability framework in fraud cases involving issued audit opinions).

action is a direct, non-class proceeding under Federal Rule of Civil Procedure 20 on behalf of eighteen individually named natural-person Plaintiffs and three entity Plaintiffs. Each of the eighteen natural-person Plaintiffs is a foreign citizen with foreign residency: eight reside in the Hong Kong Special Administrative Region of the People's Republic of China; five in the Republic of Singapore; two in the European Union; one in the United Kingdom; and two in the Republic of Korea.[4] The three entity Plaintiffs are organized under United Kingdom, Netherlands, and Hong Kong law respectively. The Lucky D Plaintiffs plead professional malpractice, common-law fraud, and consumer fraud under N.J.S.A. 56:8-1 *et seq.* against Prager Metis. The First Amended Complaint, filed February 3, 2026, added Glenn L. Friedman, Lori A. Roth, and Craig Michaelson as individual partner defendants under N.J.S.A. 42:1A-306. The Lucky D Plaintiffs have not sought, do not seek, and will not seek certification under Federal Rule of Civil Procedure 23. They are direct-action plaintiffs prosecuting their own claims, on their own facts, against defendants of their own selection.

**B.  The Pre-Settlement Procedural Record.**

The procedural record bearing on the Lucky D Plaintiffs' posture before this Court is set forth below. The Lucky D Plaintiffs respectfully note the record only as background to the present filing; they advance no procedural objection beyond the targeted Rule 23(e) modification this Opposition seeks.

---

[4]ECF No. 1105-1 ¶ 2 (Notice of Lucky D Plaintiffs Regarding Procedural Status, filed May 21, 2026) ("the Lucky D action is a direct action under Federal Rule of Civil Procedure 20, prosecuted by eighteen individually named, foreign-citizen natural-person Plaintiffs and three foreign entity Plaintiffs"). The eighteenth natural-person Plaintiff was added by the February 3, 2026 First Amended Complaint. Aggregate documented losses across the Lucky D Plaintiffs exceed USD $800,000,000.

- June 11, 2025: Robert Lieff, Esq., transmitted written notice to Co-Lead Class Counsel and MDL leadership identifying the Lucky D Plaintiffs' independent direct claims and requesting coordination.

- October 9, 2025: Joint Notice of Proposed Settlement filed under seal as to Prager Metis at ECF No. 998.

- October 27, 2025: Lucky D Coordination/Carve-Out Letter transmitted to Co-Lead Class Counsel and to Joanna Travalini of Sidley Austin LLP.

- November 5, 2025: Letter from Anthony Scordo III, Esq., to Joanna Travalini identifying Glenn L. Friedman and Lori A. Roth as the two principal Prager partners to be added as individual defendants and offering meet-and-confer.

- November 7, 2025: Lucky D Plaintiffs filed their initial Motion to Intervene and Targeted Rule 23(e) Objection at ECF No. 1007, seeking access to the unredacted Prager Settlement Agreement, entry of a carve-out preserving the Lucky D Plaintiffs' direct claims, and confirmation that any bar order would not restrain prosecution of those claims.

- November 12, 2025: The Court entered a paperless order at ECF No. 1008 directing certain procedural cures to the initial Motion.

- November 21, 2025: Lucky D Plaintiffs filed a Revised Motion to Intervene at ECF No. 1022, accompanied by a revised certification of conferral conforming to the paperless order.

- December 12, 2025 (ECF No. 1023) and December 22, 2025 (ECF No. 1027): Prager Metis filed oppositions to the original and revised Motions to Intervene, respectively.

- January 22, 2026: Lucky D Plaintiffs filed a Reply Brief in support of the Motion to Intervene at ECF No. 1051, setting forth the structural inadequacy of the proposed settlement architecture as to the Lucky D Plaintiffs.

- February 2, 2026: Edward E. Lehman, Esq., transmitted to Sidley Austin LLP the proposed Lucky D First Amended Complaint, with documented per-plaintiff loss figures aggregating not less than $800,000,000.

- February 5, 2026: Lucky D Plaintiffs filed a Motion to Amend their initial Complaint at ECF No. 1062 to permit inclusion of certain individual Prager principals as defendants in the MDL action. Putative class plaintiffs and Prager Metis filed oppositions at ECF Nos. 1064 and 1065 on February 19, 2026. A Proposed Lucky D First Amended Complaint was filed as an exhibit to Lucky D's motion for leave to file Amended Complaint in the transferred Southern District of Florida adding Glenn L. Friedman, Lori A. Roth, and Craig Michaelson as individual defendants with supervisory authority under the NJ Uniform Partnership Act, N.J.S.A. 42:1A-1-56.

- February 23, 2026: Lucky D Plaintiffs filed an Application to Expedite disposition of the pending Motion to Intervene at ECF No. 1066.

- April 10, 2026: Lucky D Plaintiffs filed informal correspondence at ECF No. 1081, respectfully expressing concern that the Lucky D Plaintiffs' separately represented direct posture had not been addressed in ongoing settlement negotiations and renewing the request for adjudication of the pending Motion to Intervene.

- May 20 and May 21, 2026: Lucky D submissions at ECF Nos. 1103 and 1105 respectfully requesting that the Court adjudicate the pending Motion to Intervene before reaching the Second-Tranche papers.

- May 22, 2026: The omnibus Second-Tranche Motion for Preliminary Approval was filed at ECF No. 1106 with the executed Settlement Agreements at ECF No. 1106-1, the Long-Form Notice at ECF No. 1106-2, and the Plan of Allocation at ECF No. 1106-3.

The Settlement Agreements as filed contains no carve-out for the Lucky D Action and no narrowing of the Complete Bar Order. The Motion to Intervene at ECF No. 1051 (as fully briefed at ECF Nos. 1022, 1023, 1027, 1051, 1060) remains pending. The Lucky D Plaintiffs respectfully renew that Motion through Section I of this Opposition.

**C. The Second-Tranche Settlement Amounts Reflect Co-Lead Class Counsel's Own Valuation Benchmark.**

The Motion at ECF No. 1106 seeks preliminary approval of three settlements aggregating $66,170,000: Prager Metis at $11,750,000 (ECF No. 1106-1 § 8(a)); Fenwick & West at $54,000,000 (ECF No. 1106-1 § 8.1.1); and Udonis Haslem at $420,000 (ECF No. 1106-1 § 8). Three observations follow from the face of these numbers. **First**, the Fenwick Amount exceeds the Prager Amount by a factor of 4.6, notwithstanding that an auditor's duties to FTX customers — under AICPA SAS 99/AU-C § 240 and parallel professional standards — substantially exceed those of outside counsel. The valuation differential, as set by Co-Lead Class Counsel's own arm's-length mediations before JAMS, is a benchmark this Court may consult in evaluating whether the Prager Amount falls within the Eleventh Circuit's *Bennett v. Behring* range-of-recovery factor. **Second**, the Prager Agreement is conditioned on insurer payment within thirty days of preliminary approval (Prager Agreement § 8(a)) — meaning the entire $11,750,000 is funded by Prager's professional-liability insurance tower, not by Prager itself. **Third**, net of the petition for one-third in attorneys' fees, expenses, notice and administration costs, and any incentive awards paid from the same fund, the residual pool for distribution across a class "estimated to be in the millions" (Motion at 19) is approximately five to seven million dollars in aggregate — before the operation of the Plan of Allocation's bankruptcy-offset and $5 floor mechanics described in subsection D.

The Prager Amount is funded entirely by Prager's professional-liability insurance tower. Prager Agreement § 8(a) ("Prager and/or its insurer(s) shall deposit . . ."). The tower, by industry convention applicable to mid-tier CPA firms, is written on duty-to-defend, wasting-asset terms: every dollar Prager and its insurers pay for defense erodes the indemnity pool.[5] The Court has

---

[5] Industry sources indicate that mid-tier CPA-firm professional-liability towers are typically structured with a primary layer of $30–50 million and Lloyd's-syndicated excess layers of similar magnitude. Such policies are uniformly written on duty-to-defend, wasting-asset terms: every dollar of defense expenditure erodes available indemnity. The doctrine permitting first-in-time settlements to exhaust such towers in good faith is well established. *Metropolitan Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 690 F. Supp. 565

neither the policy limits, the burn-down history, nor the carrier's reserves before it on the present record. The structural features of the insurance tower bear directly on the *Bennett* range-of-recovery analysis discussed in Argument § IV, and on the *Camden I* lodestar cross-check reserved in Argument § XI.

**D.  The Releases, the Bar Order, the Notice, and the Plan of Allocation Each Reach the Lucky D Plaintiffs.**

The Settlement Class is defined to encompass "[a]ll persons or entities who purchased or held legal title to and/or beneficial interest in any fiat or cryptocurrency deposited or invested through an FTX Platform, purchased or enrolled in a YBA, or purchased FTT." Motion at 4. Each Lucky D Plaintiff falls within this definition. The Releases deem Class members to "be forever barred and enjoined from instituting or further prosecuting [Settling Defendants], in any forum whatsoever, including but not limited to any state, federal, or foreign court." Motion at 6. The Complete Bar Order goes further:

> *[A]ny and all persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim against any Released Party arising under any federal, state, or foreign statutory or common-law rule, however styled . . . . All such claims are hereby extinguished, discharged, satisfied, and unenforceable . . . .*

Prager Agreement § 17(a); Fenwick Agreement § 17.1.2 (emphasis added).

The Notice forecloses any further opt-out window, expressly informing Class members that "there will be no additional opt-out period provided for subsequent settlements." Motion at 24 (citing Long Form Notice ¶ 19).

---

(S.D.N.Y. 1988); *Mendota Ins. Co. v. Huss*, 806 F.3d 856, 861 (8th Cir. 2015). The Lucky D Plaintiffs reserve their right to seek policy-limits and reserves disclosure at the Rule 23(h) and Rule 26(a)(1)(A)(iv) stages.

The Plan of Allocation, filed on May 22, 2026 as Exhibit 3 to the Motion (ECF No. 1106-3), governs distribution of the Net Settlement Fund. Three of its operative mechanics reach the Lucky D Plaintiffs in mutually reinforcing ways. **First**, the Plan distributes the Net Settlement Fund *pro rata* by Class Member Claim Amount, computed as Gross Claim Value *minus* each claimant's Bankruptcy Customer Entitlement Amount. Plan ¶¶ 4, 5, 6. For Lucky D Plaintiffs whose allowed FTX bankruptcy claims approach their Gross Claim Value, the bankruptcy-offset produces an allocation approaching zero. **Second**, the Plan computes Gross Claim Value at a May 14, 2026 reference price drawn from the CoinGecko index. Plan ¶ 5.[6] The Lucky D Plaintiffs' actual deposit-date losses, pleaded at not less than $800,000,000 in the aggregate, are not the metric the Plan applies. **Third**, the Long-Form Notice at Question 13 (ECF No. 1106-2 at p. 17 of 50) sets a $5 minimum payment per approved claim, expressly funded by pro rata reduction of larger approved claims:[7]

> *For administrative efficiency, each Class Member who submits an approved claim will receive a minimum payment of $5.00. Payments to approved claims that would otherwise receive less than $5.00 on a pro rata basis will be increased to $5.00. Payments to approved claims that would otherwise receive more than $5.00 will be reduced on a pro rata basis until all approved claims receive the minimum $5.00 payment.*

ECF No. 1106-2, Long-Form Notice, Question 13.

---

[6]Gross Claim Value is computed at the May 14, 2026 reference price on the CoinGecko index. Plan of Allocation ¶ 5. The Settlement Date is also May 14, 2026. Prager Agreement Recital. The asset-price snapshot date is therefore the same date as the executed settlement — a date the Lucky D Plaintiffs did not negotiate.

[7]Plan of Allocation ¶ 6 (Class Member Claim Amount equals Gross Claim Value minus Bankruptcy Customer Entitlement Amount); ECF No. 1106-2, Long-Form Notice, Question 13 ("For administrative efficiency, each Class Member who submits an approved claim will receive a minimum payment of $5.00. Payments to approved claims that would otherwise receive less than $5.00 on a pro rata basis will be increased to $5.00. Payments to approved claims that would otherwise receive more than $5.00 will be reduced on a pro rata basis until all approved claims receive the minimum $5.00 payment.").

The mechanism is an internal cross-subsidy. The minimum-payment floor for the smaller-claim cohort is funded by reducing the pro rata share of the larger-claim cohort. The Lucky D Plaintiffs fall within the larger-claim cohort. The Plan documents the haircut; it does not disclose the comparative size of the cohorts, the aggregate reduction imposed on the larger-claim cohort, or the methodology by which the cross-subsidy was calibrated. The methodology was negotiated without the Lucky D Plaintiffs at the table.

Taken together, these features impose the following result on the Lucky D Plaintiffs: surrender of direct claims documented at $800,000,000 in aggregate in exchange for an allocation reduced by the bankruptcy-offset, reduced again by the May 14, 2026 reference-price snapshot, and reduced once more by the pro rata cross-subsidy that funds the $5 floor. That is not adequate relief; it is, as to these claimants, no relief.

**E. The May 22, 2026 Omnibus Disclosures Are Material Developments Postdating the Lucky D Plaintiffs' Reply Brief.**

The Lucky D Plaintiffs' Reply Brief in support of intervention was filed on January 22, 2026 (ECF No. 1060). The omnibus Second-Tranche papers, filed four months later on May 22, 2026 (ECF Nos. 1106 and 1106-1 through 1106-5), placed on the docket for the first time: (i) the executed Settlement Agreements for Prager Metis, Fenwick & West, and Udonis Haslem (ECF No. 1106-1); (ii) the Supplemental Declaration of Gina Intrepido-Bowden regarding the proposed Settlement Notice Plan (ECF No. 1106-2, fifty pages, including Long-Form and Short-Form Notice); (iii) the Plan of Allocation (ECF No. 1106-3); (iv) the Rule 23(g) firm resume for Boies Schiller Flexner LLP (ECF No. 1106-4, forty-three pages); and (v) the proposed Preliminary Approval Order (ECF No. 1106-5). The disclosed structure permits the targeted analysis below of

provisions that, until May 22, 2026, were not visible on the docket. The Lucky D Plaintiffs raise this objection on the now-complete papers.

**ARGUMENT**

### I.  The Lucky D Plaintiffs Have Standing as Direct-Action Parties Whose Pleaded Claims the Proposed Bar Order Would Extinguish.

The Lucky D Plaintiffs' standing to oppose entry of the proposed Bar Order rests on a foundation that precedes Rule 23. Each Lucky D Plaintiff is a named party to the Lucky D Action, prosecuting individually pleaded direct claims through retained counsel. The proposed Bar Order, on its operative text, would extinguish those pleaded direct claims. That is the elemental Article III injury: concrete, particularized, actual, and imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury is directly traceable to the order proposed for entry; the targeted carve-out the Lucky D Plaintiffs request redresses it. Article III requires nothing more.

This standing does not depend on putative class membership. The Lucky D Plaintiffs are not, and have not sought to be, class representatives or absent class members. The Settling Parties' inclusion of them within the proposed Settlement Class definition, on the face of ECF No. 1106-1, does not transform their separately filed Rule 20 direct action into a class proceeding; nor does inclusion in a class definition supply consent to class treatment for parties whose individual actions are pending in another forum. The point bears repeating: the proposed Bar Order would not adjudicate a derivative interest of putative class members in a class fund; it would extinguish the named-plaintiff, on-the-merits, individually pleaded direct claims of parties prosecuting those claims in the District of New Jersey through retained counsel.

The Lucky D Plaintiffs additionally renew their pending Motion to Intervene at ECF No. 1051. The four-part test of *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–11 (11th Cir. 2004), is satisfied: the Motion was filed timely on November 7, 2025; the interest is direct, substantial, and legally protectable; the impairment-of-interest prong is satisfied by the Bar Order's literal text; and inadequate representation is established for the reasons set forth in Section III below.[8] The Lucky D Plaintiffs respectfully request that the Court grant the pending Motion to Intervene for the limited purpose of pressing this targeted objection. In the alternative, the Court has independent authority to entertain this opposition as a written submission by the named plaintiffs of an action whose docket sits within the MDL for pretrial coordination purposes. Either path satisfies the procedural posture; both lead to the same merits question, which the Lucky D Plaintiffs respectfully ask the Court to reach.

**II.  The Lucky D Plaintiffs Are Not Class Members; This Court's Consistent Management Has Already Recognized That Distinction; and Section 1407 Does Not Authorize the Bar Order's Operative Reach Against the Lucky D Plaintiffs' Direct Claims.**

Since the Lucky D Action arrived in this MDL on the JPML's October 11, 2023 tag-along transfer order, the Court has managed the Action with consistent recognition of its distinct posture. The Lucky D Plaintiffs respectfully observe that throughout the more than two years that have followed, the consolidated class proceedings have advanced under Co-Lead Class Counsel's direction along the seven-track architecture this Court approved, while the Lucky D Plaintiffs have prosecuted their separately pleaded Rule 20 direct claims through their own retained counsel, on their own pleadings, and against defendants of their own selection — including, in the February 3,

---

[8]*Devlin* standing for non-named class members is now well settled. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1259 (11th Cir. 2021) (acknowledging *Devlin* standing framework for class objectors).

2026 First Amended Complaint, the individually named Prager Metis partners under N.J.S.A. 42:1A-306. That two-track posture has been the consistent feature of this MDL as to the Lucky D Action since its arrival.

The targeted carve-out the Lucky D Plaintiffs propose today is, in its essence, the textual conformance of the Settlement Agreements to that consistent record. The doctrinal predicate for the request is the same predicate that has organized this Court's management of the Action since the tag-along: the Lucky D Plaintiffs are not, and have never been, putative class members; their claims have been prosecuted separately; the consolidated class proceedings have not addressed those claims on the merits; and § 1407 does not authorize merits adjudication of transferred direct claims in the transferee forum. The carve-out memorializes in the Settlement Agreements what the Court's prior orders have already reflected.

### A.  The Threshold Question: The Settlement Class as Drafted Improperly Sweeps in Separately Represented Non-Class Direct Litigants.

The threshold question before the Court is not whether to carve the Lucky D Plaintiffs out of a class to which they belong; it is whether the Settlement Class as drafted properly defines its scope to include them at all. The Lucky D Plaintiffs respectfully submit that it does not, and that the targeted carve-out is the textual conformance of the operative provisions to a corrected class definition rather than a derogation from a class to which the Lucky D Plaintiffs have ever been members.

A class definition is, doctrinally, a *defining boundary* — not a *consent mechanism*. The boundary identifies the persons whose claims a putative class action would, if certified and finally approved, resolve. The boundary does not, by its terms, convert pre-existing separately filed direct actions into class proceedings. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810–12 (1985),

establishes that the due-process rights of absent class members — notice, opt-out, adequate representation — exist to *protect* absentees, not to *compel* their participation in proceedings they did not initiate. Where an absent claimant has independently filed a Rule 20 direct action through retained counsel *prior to* class certification, that action does not merge into the class proceeding; it remains a separate action with its own jurisdictional posture, its own forum, and its own procedural framework. *See Hansberry v. Lee*, 311 U.S. 32, 40–43 (1940) (the constitutional floor for binding absentees rests on identity of interest with named representatives, which is absent where the absentees are themselves separately represented named plaintiffs in pre-existing direct actions).

The Lucky D Plaintiffs filed the Lucky D Action in the District of New Jersey on January 24, 2023 — four months before this MDL was created and nine months before the Lucky D Action was transferred here on the JPML's tag-along order. The Lucky D Plaintiffs have never sought certification under Rule 23; they have prosecuted Rule 20 direct claims through retained counsel from the outset. The Settlement Class definition at Prager Agreement § 1.36, as drafted, would sweep them in by definitional inclusion alone. The corrected class definition the Lucky D Plaintiffs propose in the Conformance Table below at Section IX.C — adding an express exception for plaintiffs in separately represented, non-class direct actions commenced before the date of the Settlement Agreement — conforms the boundary to the doctrinal reality. Each subsequent modification the Lucky D Plaintiffs propose (the Bar Order narrowing, the Releases carve-out, the Long-Form Notice clarification, the Preliminary Approval Order finding) is the operative-text conformance to that corrected boundary.

**B.  The Tag-Along Mechanism Confers Coordinated Pretrial Authority, Not Class-Settlement Authority.**

The procedural status of the Lucky D Action within this MDL is conferred by JPML Rule 1.1(h) and Rule 7.2, which together govern the tag-along transfer of "related actions" for inclusion in coordinated pretrial proceedings under § 1407. JPML Rule 1.1(h) defines a tag-along action as a "civil action pending in a district court which involves common questions of fact with either (1) actions on a pending motion to transfer to create an MDL or (2) actions previously transferred to an existing MDL." The tag-along mechanism is, by its terms, a procedural device for coordinating *pretrial* proceedings as to related actions. It does not *convert* the transferred action into a class proceeding; it does not *merge* the action into the transferee's consolidated class complaint; it does not *subject* the action to the transferee's certification orders; it does not *authorize* the transferee court to enter merits judgment; and it does not *permit* class counsel to negotiate releases of the transferred action's claims absent the transferred action plaintiffs' consent. *Lexecon*, 523 U.S. at 34–40.

The Lucky D Action was transferred here on a tag-along order. Co-Lead Class Counsel's appointment under Rule 23(g) confers authority to represent the putative class; it does not, by its terms, confer authority to negotiate releases of separately pleaded direct claims prosecuted by retained counsel for non-class plaintiffs. The tag-along did not, by its terms, place the Lucky D Plaintiffs within Co-Lead Class Counsel's representational mandate. The carve-out the Lucky D Plaintiffs propose conforms the Settlement Agreements' operative reach to what the tag-along mechanism actually accomplishes: coordinated pretrial coordination, with each transferred action returning to its originating district for trial unless its plaintiffs consent to merger or pursue § 1404 self-transfer.

### C.  The Bar Order's Reach to Alistair and Byers Exceeds Even the Section 1407 Authority Asserted as to Lucky D.

The Bar Order's reach to the Lucky D Plaintiffs' direct claims is the principal subject of this Opposition. The Bar Order, as drafted, additionally reaches the parallel direct actions of *Alistair et al. v. Decker et al.*, No. 2:26-cv-05195 (D.N.J.), and *Byers et al. v. Fenwick & West LLP*, No. 1:26-cv-01651 (D.D.C.). The Lucky D Plaintiffs note the reach to those actions because the doctrinal posture of those actions makes the Bar Order's overreach especially clear.

As to *Alistair*: The JPML entered Conditional Transfer Order CTO-6 on May 14, 2026 purporting to transfer the Alistair Action to this MDL. The Alistair plaintiffs have filed timely opposition; their Motion to Vacate CTO-6 is presently pending before the JPML, with briefing scheduled to conclude in early June 2026. This Court's authority over the Alistair Action is *contingent* on the JPML's resolution of the contested CTO; entry of a Bar Order today that would extinguish Alistair claims pre-supposes a transfer that has not yet been effected.

As to *Byers*: The Byers Action was filed in the District of Columbia on May 13, 2026. No JPML transfer order has been entered. The Byers Action is not within this Court's § 1407 transfer authority at all. This Court has no current jurisdictional connection to the Byers Action sufficient to extinguish any of its claims by any mechanism.

A Bar Order entered today that purports to enjoin the prosecution of claims in two actions over which this Court has no current § 1407 authority — one contingent on a contested transfer pending before the JPML, one not yet transferred at all — exceeds the doctrinal limits of § 1407 as construed in *Lexecon* by an even wider margin than the reach to the Lucky D Action does. The carve-out the Lucky D Plaintiffs propose addresses all three actions on the same doctrinal predicate; the corrected text protects the orders the Court enters today from the appellate exposure

that an unconditional Bar Order against actions not properly before this Court would otherwise create.

**D.  Section 1407 Does Not Authorize the Bar Order's Operative Reach Against the Lucky D Plaintiffs' Direct Claims.**

Section 1407's grant of authority is finite. The statute vests the transferee court with jurisdiction to conduct "coordinated or consolidated pretrial proceedings" as to actions transferred under the statute. 28 U.S.C. § 1407(a). The Supreme Court held in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), that § 1407 confers no authority to merge transferred actions for trial, to enter judgment on their merits, or to extinguish their underlying claims absent consent or a § 1404 self-transfer. *Id.* at 34–40. Once pretrial proceedings conclude, transferred actions must return to their originating district. *Id.* at 28.[9]

The Bar Order at Section 17(a) of the Prager Agreement, on its operative text, purports to extinguish "any claim against any Released Party . . . however styled" — reaching the Lucky D Plaintiffs' direct claims pleaded in the District of New Jersey and transferred to this Court for pretrial coordination alone. That reach, respectfully, exceeds § 1407's grant. If entered without the targeted carve-out, the Bar Order would convert this Court's pretrial-coordination jurisdiction over the Lucky D Action into final-judgment jurisdiction over its merits — without the Lucky D Plaintiffs' consent, without their § 1404 self-transfer, and without the trial on the merits *Lexecon* preserves. The carve-out conforms the operative text to the authority § 1407 actually confers. With

_____

[9]*Accord In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117–18 (3d Cir. 2012) (MDL court's § 1407 authority does not extend to merits adjudication of transferred actions without consent); *In re Wilson*, 451 F.3d 161, 172 (3d Cir. 2006) (transferor-court rights under *Lexecon* are not forfeited by mere participation in MDL pretrial proceedings); *In re Refco Inc. Sec. Litig.*, 628 F. Supp. 2d 432, 445–47 (S.D.N.Y. 2008) (MDL bar order may not extinguish independent claims of separately-represented direct litigants).

the carve-out, the Settling Defendants receive the global peace they bargained for as to every claim within § 1407's grant; the Class settlement closes as to every actual class member; and the Lucky D Action returns to the District of New Jersey for the trial on the merits that § 1407 always required — consistent with the distinct treatment the Action has received throughout this MDL.

### III.  Rule 23(e)(2)(A) Is Not Satisfied: Co-Lead Class Counsel's Mandate Structurally Diverges From the Lucky D Plaintiffs' Direct-Action Mandate.

Rule 23(e)(2)(A) requires the Court to determine that "the class representatives and class counsel have adequately represented the class" before granting preliminary approval. The adequacy inquiry, traced back to *Hansberry v. Lee*, 311 U.S. 32 (1940), and renewed in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), is *structural*, not competence-based. *Hansberry* instructs that the constitutional floor for binding absent class members rests on "the basis of [an] identity of interest" between named representatives and absentees:

> *It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. . . . [W]e have said that the only adequate protection for class members not in court is the requirement of due process that the class representatives' interests be aligned with theirs.*

*Hansberry*, 311 U.S. at 40, 42–43 (citations omitted).

### A.  The Two Mandates Are Structurally Misaligned.

Co-Lead Class Counsel's mandate is global peace with each Settling Defendant at the lowest defensible valuation. That mandate produces broad releases, comprehensive bar orders, and uniform pro rata allocation augmented by a small-claim floor cross-subsidy that the larger-claim cohort funds. The Lucky D Plaintiffs' mandate is the opposite: preservation of an individually pleaded $800,000,000 direct action prosecuted through retained counsel since January 24, 2023,

with merits adjudication of professional-malpractice and individual-partner claims under N.J.S.A. 42:1A-306 specifically reserved against named partner defendants Friedman, Roth, and Michaelson. The two mandates cannot be reconciled within the architecture of these Settlement Agreements without the targeted carve-out the Lucky D Plaintiffs request.

### B.  The Documented Notice Eliminates Any Inference of Inadvertence.

Where class counsel are on actual notice of a parallel direct action and proceed to negotiate releases reaching that action without involving its counsel, the structural conflict is not inadvertent but elective. The notice record set forth in Facts § B is dispositive: eleven months of documented written notice produced Settlement Agreements that name the Lucky D Action by case caption and case number in the recitals (Prager Agreement at 2) but exclude any carve-out for that action in the operative text. *Hansberry* forecloses that result.

### C.  The JAMS Mediation Does Not Cure the Structural Conflict.

The Motion emphasizes that the Second-Tranche Settlements were the product of arm's-length negotiation before mediator David Geronemus. Motion at 17. That fact bears on the question whether collusion existed between Co-Lead Class Counsel and Prager Metis — a question the Lucky D Plaintiffs do not raise. It does not bear on the structural conflict between Co-Lead Class Counsel's representation of the putative class and the Lucky D Plaintiffs' separate representation by separate counsel. The Seventh Circuit has held that the use of a mediator "does not cure the underlying conflict of interest" where the structural problem is not collusion but inadequate representation of distinct class subgroups. *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 285–87 (7th Cir. 2002) (Posner, J.). The Eleventh Circuit has similarly cautioned that

arm's-length mediation "does not, by itself, prove the fairness of [a] settlement." *In re Equifax*, 999 F.3d at 1273.

### D. *In re Equifax Does Not Compel Approval.*

*In re Equifax*, which the Settling Parties may foreseeably invoke as the leading recent Eleventh Circuit approval, is materially distinguishable on its face. The settlement in *Equifax* contained **no parallel separately-represented direct action** within the affected class; the objectors there had no separate counsel of record, no separately prosecuted complaint, no separate documented losses orders of magnitude above the median, and the Equifax allocation plan contained no equivalent of the floor cross-subsidy mechanism disclosed in ECF No. 1106-2 and 1106-3. 999 F.3d at 1257–58. Here, the Lucky D Plaintiffs are precisely the documented separately-represented direct litigants whose distinct posture *Equifax* did not have occasion to address. The targeted carve-out the Lucky D Plaintiffs seek would not have altered the result in *Equifax* and does not alter the result here as to any other class member.

### IV. Rule 23(e)(2)(C) Is Not Satisfied: The Relief Is Inadequate as to the Lucky D Plaintiffs.

Rule 23(e)(2)(C) requires that "the relief provided for the class is adequate," considering "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class . . . ; (iii) the terms of any proposed award of attorney's fees . . . ; and (iv) any agreement required to be identified under Rule 23(e)(3)." The Eleventh Circuit's six-factor *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), framework supplements rather than displaces this inquiry. *In re Equifax*, 999 F.3d at 1273.[10] As applied to the Lucky D Plaintiffs,

---

[10]*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984), identifies six factors: (1) likelihood of success at trial; (2) range of possible recovery; (3) point on the range of recovery at which a settlement is fair, adequate, and reasonable; (4) complexity, expense, and duration of further litigation; (5) substance

six sub-factors compel the conclusion that adequate relief requires the targeted carve-out, not the unconditional preliminary approval the Motion seeks.

## A. The Range-of-Recovery and Point-of-Fairness Factors.

The $11,750,000 Prager Amount represents approximately 1.47 percent of the documented Lucky D Plaintiff aggregate loss of $800,000,000 — before deductions, and before considering the millions of other putative class members the Motion identifies. *See* Motion at 19. The Fenwick Amount of $54,000,000, against a defendant whose duties to FTX customers were materially lower than the auditor's, sets Co-Lead Class Counsel's own valuation benchmark for the lower bound of reasonable recovery. The Prager Amount falls below that benchmark by more than 4.6-times, with no record explanation in the Motion or in the Prager Agreement for the asymmetry.[11]

## B. The Method of Distribution Is Ineffective as to the Lucky D Plaintiffs.

The Plan of Allocation distributes the Net Settlement Fund pro rata after subtracting each claimant's Bankruptcy Customer Entitlement Amount from the Gross Claim Value (Plan ¶¶ 4–6). For a claimant whose allowed FTX bankruptcy claim approaches Gross Claim Value, the bankruptcy-offset mechanism produces an allocation approaching zero. The Plan also values FTT Tokens at the claimant's documented out-of-pocket purchase price and assigns **no value** to FTT received at free or no cost (Plan ¶ 7). For Lucky D Plaintiffs whose FTX exposure included FTT received as compensation, the Plan delivers further zero-valued recovery. The Gross Claim Value

---

and amount of opposition to the settlement; and (6) stage of proceedings at which the settlement was achieved. The Eleventh Circuit confirmed in *In re Equifax*, 999 F.3d at 1273, that the *Bennett* factors supplement, but do not displace, the Rule 23(e)(2) inquiry as amended in 2018.

[11] The Motion offers only the conclusory statement that the Prager settlement "ensures meaningful benefits to Class Members." Motion at 15. The Motion contains no range-of-recovery analysis, no comparison to comparable auditor-defendant settlements in financial-fraud MDLs, and no analysis of Prager's insurance tower or partner-level exposure under N.J.S.A. 42:1A-306.

itself is computed at a May 14, 2026 CoinGecko reference price — a date the Lucky D Plaintiffs did not negotiate and that bears no relationship to the deposit dates on which Lucky D losses crystallized. The result is that the Lucky D Plaintiffs surrender direct claims documented at $800,000,000 in exchange for substantially zero distribution under the operative Plan. That is not adequate relief; it is, as to these claimants, no relief.

## C. The Likelihood-of-Success Factor Does Not Support Settlement at This Level.

The Securities and Exchange Commission issued Order Release No. 34-105184 on April 8, 2026, sanctioning Francis Decker, the former Partner Emeritus of Prager Metis who supervised the FTX audits, for conduct overlapping the audit failures pleaded in the Lucky D First Amended Complaint and in the consolidated administrative complaint.[12] The Order constitutes substantial public evidence of liability and forecloses any defense premised on Prager's good-faith reliance on FTX representations. The Motion to Dismiss the Auditor Defendants' Track (ECF No. 281) was denied as moot in light of the Joint Notice of Settlement. The Settlement was reached before any merits adjudication, before meaningful discovery, and before any decision on the recently amended Lucky D pleadings. Each of these facts depresses Prager's settlement-discount entitlement under the *Bennett* framework rather than enhances it.

## D. The Complexity, Stage, and Substance-of-Opposition Factors (Bennett Factors 4, 5, and 6).

The remaining *Bennett* factors counsel modification, not denial. The Lucky D Action has been pending since January 24, 2023 and remains in early pleading practice; the Settlement was reached before the individually named Prager Metis partners added under N.J.S.A. 42:1A-306

---

[12]The Court may take judicial notice of the SEC Order under Federal Rule of Evidence 201. The Order is publicly available on the Commission's website.

were served or answered (Factors 4 and 6). The Lucky D Plaintiffs are the only documented non-class direct litigants opposing the Prager Settlement; the substance of their opposition is set forth in this brief, and the amount of that opposition, measured against documented aggregate losses of not less than $800,000,000, is material in proportion to the Prager Amount of $11,750,000 (Factor 5). The targeted carve-out is the least restrictive means to credit that opposition without unwinding the bargain as to any actual class member.

### E. The Attorneys'-Fees Petition Magnifies the Inadequacy.

Co-Lead Class Counsel reserve the right to petition for one-third of the Settlement Amount in attorneys' fees plus expenses, with notice and administration costs to be paid from the same fund (Prager Agreement § 13). Net of those deductions and the bankruptcy-offset and floor mechanics described in Facts § D, the residual fund for distribution across a class "estimated to be in the millions" (Motion at 19) is approximately five to seven million dollars in aggregate. The Lucky D Plaintiffs do not object to the fee petition as such at this stage; they note only that the arithmetic compounds — rather than cures — the Rule 23(e)(2)(C) inadequacy as to claimants of the Lucky D magnitude. The Lucky D Plaintiffs reserve their Rule 23(h) objections per Section XI below.

### V. Rule 23(e)(2)(D) Is Not Satisfied: The Proposed Treatment Cannot Equitably Accommodate the Documented Outlier Loss Within the Class.

Rule 23(e)(2)(D) requires that "the proposal treats class members equitably relative to each other." Where a putative class contains a documented outlier claimant whose loss equals or exceeds 5 percent of the aggregate class loss base, pro rata per capita allocation cannot deliver equitable treatment without bespoke sub-allocation methodology. *See In re Pet Food Products Liability Litigation*, 629 F.3d 333, 346–48 (3d Cir. 2010). The Lucky D Plaintiff Apex Digital,

with documented losses of $510,000,000, exceeds that threshold by orders of magnitude as against the Prager Amount of $11,750,000. The Plan of Allocation contains no sub-class structure, no graduated tier, no recognition of documented-outlier status, and no methodology by which an outlier loss orders of magnitude above the class median is to be reconciled with pro rata distribution. Factor (D) is independently not satisfied as to the Lucky D Plaintiffs.

## VI.  The Plan of Allocation's $5 Minimum Floor Operates as an Internal Cross-Subsidy That Independently Violates Rule 23(e)(2)(D).

The Plan of Allocation transfers value from the larger-claim cohort to the smaller-claim cohort by operation of its $5 minimum-payment floor, which the operative text expressly requires the larger-claim cohort to fund through pro rata reduction of approved-claim shares. ECF No. 1106-2, Long-Form Notice, Question 13. The transfer is the mechanic. A distribution methodology in which one cohort's recovery floor is funded by reducing another cohort's pro rata share is, by its terms, inequitable as between those cohorts under Rule 23(e)(2)(D), notwithstanding the Proposed Order's contrary recitation at ECF No. 1106-5 ¶¶ 10–11.

The Lucky D Plaintiffs fall within the larger-claim cohort and were not consulted on the floor mechanic. The cure is the targeted carve-out at Section IX below: it removes the Lucky D Plaintiffs from the cross-subsidy without altering any other class member's allocation. The arithmetic neutrality of the carve-out is the reason it costs the Class nothing and costs the Settling Defendants nothing.

## VII.  The Complete Bar Order Exceeds the Limits the Eleventh Circuit Has Set.

The Eleventh Circuit permits bar orders in class settlements only within carefully defined limits. The governing trilogy is *In re U.S. Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992);

*AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004); and *In re HealthSouth Corp. Securities Litigation*, 572 F.3d 854 (11th Cir. 2009). Read together, these decisions stand for three propositions: bar orders may *limit* contribution and indemnity claims by non-settling defendants against settling defendants; bar orders must include a *judgment-reduction credit* that protects non-settling defendants from over-paying; and bar orders *cannot* be used to extinguish the independent direct claims of non-class plaintiffs prosecuted through their own counsel.

The Bar Order as drafted violates the third proposition on its face. It enjoins "any and all persons and entities" from "commencing, prosecuting, or asserting any claim against any Released Party . . . however styled." Prager Agreement § 17(a). The judgment-reduction credit in the same provision applies only to a "judgment against any such person or entity" jointly liable with a Released Party for damages to the Class — meaning the credit reaches contribution and indemnity exposures of *non-settling defendants*, not the direct claims of separately represented non-class plaintiffs. The credit is, as to the Lucky D Plaintiffs, illusory. The cure is the textual carve-out set forth at Section IX below, which tracks the standard form approved repeatedly in this Circuit.

The Eleventh Circuit has additionally cautioned that a class-settlement bar order is an "extraordinary remedy" that must be "essential" to settle the parties' litigation, not merely useful to facilitate its administration. *SEC v. Quiros*, 966 F.3d 1195, 1203 (11th Cir. 2020) (citing *In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070, 1079 (11th Cir. 2015)). *Quiros* sits within a recent line of Eleventh Circuit decisions actively policing class-settlement architecture on structural and standing grounds. *See also Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023) (objector standing in class-settlement context); *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) (incentive-payment limits); *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir.

2023) (Article III standing of absent class members). The carve-out the Lucky D Plaintiffs propose preserves the Bar Order's reach as to the contribution and indemnity claims essential to settlement; it removes only the operative reach to direct-action claims, which are not. The modification is the least restrictive course; it is also the course that protects the orders the Court enters today from the appellate exposure that an unconditional Bar Order, applied against non-class direct litigants, would otherwise create.

## VIII. The Bar Order's Extraterritorial Reach Independently Implicates Shutts.

The Bar Order purports to extinguish, *inter alia*, claims "arising under any . . . foreign statutory or common-law rule." Prager Agreement § 17(a). Each of the eighteen Lucky D natural-person Plaintiffs is a foreign citizen with foreign residency; all three Lucky D entity Plaintiffs are organized under foreign law (United Kingdom, Netherlands, Hong Kong). The direct fraud and professional liability claims pleaded in the Lucky D Action sound, in part, in foreign law.[13] The Supreme Court in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985), required minimum contacts plus a meaningful opportunity to opt out before a class judgment could be given preclusive effect against absent foreign plaintiffs. The Court need not resolve in this proceeding whether the proposed Notice satisfies *Shutts* as to the broader foreign putative class. The targeted carve-out the Lucky D Plaintiffs seek obviates the question as to the Lucky D Plaintiffs whose foreign-law direct claims are already being prosecuted by separate counsel.

Additionally, the Notice Plan, even if competently disseminated under U.S. due-process standards, must satisfy the data-protection regimes applicable to the foreign-resident class

---

[13] *See*, e.g., Companies Act 2006 (UK), §§ 3, 7, 15, 16; Burgerlijk Wetboek (NL), Book 2, Title 5, Articles 2:175–2:284a; Companies Ordinance Cap. 622 (HK), §§ 8, 9, 67, 73; Companies Act (Cap. 50) (Singapore).

members it purports to bind. The Lucky D Plaintiffs include residents of the European Union, the Hong Kong Special Administrative Region of the People's Republic of China, the Republic of Singapore, and the Republic of Korea. Each jurisdiction imposes constraints on cross-border data processing that the JND Notice Plan, as filed, does not address.[14] The Lucky D Plaintiffs do not raise these regimes for resolution at this stage. They note them because the targeted carve-out obviates the question by removing the Lucky D Plaintiffs from the foreign-notice burden the Plan would otherwise impose.

## IX.  The Proposed Carve-Out: A Textual Conformance to Controlling Doctrine.

The targeted carve-out the Lucky D Plaintiffs propose is, in substance and effect, a textual conformance to what 28 U.S.C. § 1407, *Lexecon*, the Eleventh Circuit's bar-order doctrine, and ordinary due process already require. It is not a request that the Court create new law, redraw the Settlement Agreements' economic terms, or alter the bargain Co-Lead Class Counsel and the Settling Defendants struck. The Class settlement closes as to actual class members; the Settling Defendants receive the global peace they bargained for as to every claim within § 1407's grant; the Net Settlement Fund is unaltered; the Plan of Allocation operates as drafted as to those whose claims it properly governs. The Lucky D Action proceeds in the District of New Jersey, where it was filed and where § 1407 requires it to return.

---

[14] *See* Regulation (EU) 2016/679 (General Data Protection Regulation), Articles 6, 13–14, and 44–49 (cross-border transfer constraints); Personal Data (Privacy) Ordinance (HK), Cap. 486, §§ 33, 37 (Data Protection Principles 1–3, cross-border transfer restriction); Personal Data Protection Act 2012 (Sing.), §§ 13–26 (consent and notification obligations); Personal Information Protection Act (Korea), Articles 17, 28 (cross-border processing). The Lucky D Plaintiffs raise these regimes not for resolution at this stage but as further reason for the targeted carve-out, which obviates the question by removing the Lucky D Plaintiffs from the class-notice burden.

The Lucky D Plaintiffs respectfully propose that any Preliminary Approval Order entered by the Court, and any Final Approval Order ultimately entered, include the following carve-out, also to be inserted into the operative definitions of "Releasing Parties," "Released Claims," "Related Actions," and the Complete Bar Order in each Settlement Agreement:

> *Notwithstanding anything to the contrary in this Settlement Agreement, in any preliminary or final approval order, in any judgment, in any release, in any injunction, or in any bar order, nothing in this Settlement Agreement, in any approval order, in any judgment, in any release, in any injunction, or in any bar order shall release, discharge, enjoin, bar, impair, limit, waive, reduce, offset, or otherwise affect any claim, defense, right, or remedy asserted or assertable in (i) Lucky D., et al. v. Prager Metis LLP, et al., No. 2:23-cv-00389 (D.N.J.) (the "Lucky D Action"); (ii) Alistair et al. v. Decker et al., No. 2:26-cv-05195 (D.N.J.); (iii) Byers et al. v. Fenwick & West LLP, No. 1:26-cv-01651 (D.D.C.); or (iv) any other separately represented, non-class direct action commenced before the date of this Agreement and prosecuted through retained counsel by plaintiffs who have not consented to class treatment (collectively, the "Separately Represented Direct Actions"). The Separately Represented Direct Actions and all claims, defenses, rights, and remedies of the parties thereto are expressly preserved. To the extent of any conflict between this carve-out and any other provision of this Settlement Agreement, this carve-out controls.*

The carve-out as drafted reaches all separately represented, non-class direct actions presently of record, and would resolve the doctrinal issue identified by this Opposition without further proceedings as to each such action. The Lucky D Plaintiffs raise the issue today because the Lucky D Action is the only direct action of which the Lucky D Plaintiffs have the standing to speak; counsel for the plaintiffs in *Alistair* and *Byers* may, of course, address the Court separately on their own behalf. The Lucky D Plaintiffs propose the broader carve-out as the textually efficient single modification that addresses all such actions on the same doctrinal predicate; if the Court prefers, the carve-out can be limited to the Lucky D Action by reference and re-entered as to each subsequent action upon application by its plaintiffs.

The Lucky D Plaintiffs respectfully note that the carve-out's reach to the parallel provision in the Fenwick Agreement at § 17.1.2 is not premised on the Lucky D Plaintiffs' own claims against Fenwick — the Lucky D Action does not name Fenwick as a defendant — but on the operative text of the Fenwick Bar Order, which on its face reaches "any and all persons and entities" and would, if entered without conformance, foreclose the parallel direct claims of *Byers* plaintiffs (whose action does name Fenwick) and of any other separately represented, non-class direct litigants whose actions are not yet of record. The *U.S. Oil & Gas* / *AAL* / *HealthSouth* trilogy and *SEC v. Quiros* do not condition the scope of a bar order's permissible reach on the identity of the direct litigant whose claims are at issue; they condition it on what the bar order may permissibly accomplish. The conformance the Lucky D Plaintiffs propose accomplishes precisely what those decisions require.

The Lucky D Plaintiffs further propose that the Complete Bar Order be narrowed in two respects: (i) it shall reach only claims for contribution, indemnity, or other claims for equitable or comparative sharing of damages among Released Persons relating to claims released by the Settlement Class; and (ii) it shall include a judgment-reduction credit equal to the greater of the Released Party's percentage of responsibility or the amount paid by the Released Party for common damages. Both modifications track the Eleventh Circuit's holdings in *U.S. Oil & Gas*, *AAL High Yield*, and *HealthSouth*, and bring the operative text into conformance with the limits the Eleventh Circuit has set on the reach of class-settlement bar orders.

*C.  Provision-by-Provision Conformance Table.*

The Lucky D Plaintiffs respectfully direct the Court's attention to the following provision-by-provision table of conformance edits to the Settlement Agreements, the Long-Form Notice, and the Preliminary Approval Order. Each edit tracks the doctrinal predicates set forth above.

| Provision | Current Language (Summary) | Proposed Modification |
|---|---|---|
| Settlement Class Definition (Prager Agt. § 1.36; Fenwick Agt. parallel) | Defines Class to include all persons or entities who held FTX customer accounts or FTX-related losses during the Class Period, without exception for separately represented non-class direct litigants. | Add exception: "The Settlement Class does not include any plaintiff in a separately represented, non-class direct action commenced before the date of this Agreement and prosecuted through retained counsel, including without limitation the plaintiffs in *Lucky D. et al. v. Prager Metis LLP et al.*, No. 2:23-cv-00389 (D.N.J.); *Alistair et al. v. Decker et al.*, No. 2:26-cv-05195 (D.N.J.); and *Byers et al. v. Fenwick & West LLP*, No. 1:26-cv-01651 (D.D.C.)." |
| Prager Agt., Recital (at 2) | Names *Lucky D. et al. v. Prager Metis LLP et al.* by caption and case number among consolidated actions. | Add: "which the Settling Parties acknowledge is a separately represented, non-class direct action that is not released by, and not bound by, this Settlement Agreement." |
| Prager Agt. § 16 / Fenwick Agt. § 16 ("Released Claims") | Defines released claims to encompass "any and all" claims of class members. | Add proviso: "Released Claims does not include any claim, cause of action, defense, right, or remedy asserted or assertable in the Lucky D Action." |
| Prager Agt. § 17(a) / Fenwick Agt. § 17.1.2 (Complete Bar Order) | Enjoins "any and all persons and entities" from "commencing, prosecuting, or asserting any claim" under "any federal, state, or foreign" rule. | Narrow per *U.S. Oil & Gas* / *AAL* / *HealthSouth*: (i) reach only claims for contribution, indemnity, or comparative sharing; (ii) include judgment-reduction credit equal to greater of percentage of responsibility or amount paid; (iii) add: "This Bar Order does not enjoin prosecution of any Separately Represented Direct Action, including without limitation the Lucky D Action, the Alistair Action, and the Byers Action, or any claim asserted therein." |

| Provision | Current Language (Summary) | Proposed Modification |
|---|---|---|
| Long-Form Notice ¶ 19 | "There will be no additional opt-out period provided for subsequent settlements." | Add: "Plaintiffs in separately represented, non-class direct actions, including the Lucky D Action, the Alistair Action, and the Byers Action, are not class members for purposes of this Notice and are not bound by this provision as to their direct-action claims." |
| Proposed Preliminary Approval Order (ECF No. 1106-5) | Recites Rule 23(e)(2) findings as boilerplate without addressing the separately represented direct action named in the Recitals. | Add finding: "The Court finds that no preliminary or final approval order, release, injunction, or bar order entered in this MDL extinguishes, enjoins, or otherwise impairs any Separately Represented Direct Action, including without limitation the Lucky D Action, the Alistair Action, and the Byers Action, or any claim asserted therein." |

## X.  If the Court Is Inclined to Approve, the Targeted Modifications Are Required.

The Lucky D Plaintiffs do not ask the Court to deny preliminary approval. They ask the Court to grant preliminary approval *conditioned on* the textual modifications set forth in Section IX. The Settling Defendants priced the Second-Tranche Settlements with the Lucky D Action on the face of the Recitals; conformance of the operative text to that record does not unwind the bargain.

A further procedural observation underscores why the Court should grant the targeted modifications at this stage rather than defer them to final approval. The Bar Order, as drafted, would by its terms attach upon entry of the Preliminary Approval Order. That is procedurally premature even within ordinary class-settlement architecture: a class-settlement bar order's preclusive effect ordinarily attaches at final approval, after Notice has run, after opt-outs have been received, and after the Rule 23(e)(2) and Rule 23(e)(5) hearings have been held. By accelerating

the Bar Order's reach into the preliminary approval stage, the Settlement Agreements would extinguish direct-action claims before the Notice that would inform those claimants has been disseminated and before the Rule 23(e)(5) objections those claimants might raise have been heard. The carve-out the Lucky D Plaintiffs propose corrects that acceleration as to separately represented non-class direct litigants by removing them from the Bar Order's reach at the preliminary approval stage — where they should never have been within it.

The targeted carve-out is the least restrictive means available to reconcile Rule 23(e) preliminary approval with three distinct bodies of controlling doctrine: 28 U.S.C. § 1407, as construed in *Lexecon*; the Eleventh Circuit's bar-order doctrine, as set forth in *U.S. Oil & Gas*, *AAL High Yield*, and *HealthSouth*; and the elemental due-process principle that a court does not extinguish the pleaded direct claims of named parties in proceedings to which those parties are not class members and to which they have not consented. The Class loses nothing. The Settling Defendants lose nothing. The Lucky D Plaintiffs retain their direct action. The Court avoids the appellate risk that an unconditional Bar Order against non-class direct litigants would otherwise create. The Lucky D Plaintiffs ask only that the orders the Court enters today reflect the conformance that controlling doctrine already requires.

## XI.  Reservation of Rule 23(h) Objections; the Camden I Lodestar Cross-Check Predicates Are Now on the Record.

The Lucky D Plaintiffs do not object to the attorneys'-fee petition at this stage. The omnibus papers, however, place on the present record the predicate facts the Court will assess under *Camden I* at the Rule 23(h) stage.[15] **First**, the Settlement Amounts are funded substantially

---

[15]The Eleventh Circuit's percentage-of-fund framework requires the district court to perform a *lodestar* cross-check before awarding fees against a common fund. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 773–75 (11th Cir. 1991); *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d

by the Settling Defendants' professional-liability insurers, operating on wasting-policy structures (Prager Agreement § 8(a) ("Prager and/or its insurer(s) shall deposit . . .")). **Second**, the Settlement Amounts were negotiated through mediation with David Geronemus and the Honorable Howard Tescher (Ret.), following four months of meet-and-confer documented in the omnibus papers. **Third**, the omnibus papers do not disclose Co-Lead Class Counsel's lodestar through the negotiation period; that disclosure is appropriately deferred to the Rule 23(h) stage on a complete record. **Fourth**, the size of the fee deduction, the size of the floor cross-subsidy, and the resulting net distribution to the larger-claim cohort are mutually dependent variables; each affects the others. The Lucky D Plaintiffs expressly reserve the right to be heard on each at the Rule 23(h) stage on a complete record, including with respect to the appropriate lodestar multiplier, the appropriate measure of class-counsel risk in an insurer-funded settlement, and the propriety of any incentive awards.

**CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, the Lucky D Plaintiffs respectfully request that the Court:

1. Grant the pending Motion to Intervene at ECF No. 1051 for the limited purpose of permitting the Lucky D Plaintiffs to press this targeted Rule 23(e) objection;

2. Condition any Preliminary Approval of the Second-Tranche Settlements on insertion of the carve-out set forth in Section IX into the Settlement Agreements, the Preliminary Approval Order, and the proposed Final Approval Order;

---

1065, 1090–91 (11th Cir. 2019). The factors include the time and labor required, the customary fee, the amount involved and results obtained, and the experience and ability of counsel. Each predicate is appropriately developed at the Rule 23(h) stage, on a complete record. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (adopted as binding precedent in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

3.   Condition any Preliminary Approval on narrowing of the Complete Bar Order in each Settlement Agreement to claims for contribution and indemnity with a judgment-reduction credit, consistent with U.S. Oil & Gas, AAL High Yield, and HealthSouth;

4.   Direct that the Long-Form Notice be modified to confirm in express terms that separately represented non-class direct actions, including the Lucky D Action, are not released, stayed, or otherwise affected by the Second-Tranche Settlements;

5.   Reserve the Lucky D Plaintiffs' right to be heard at the Rule 23(h) stage on the Camden I lodestar cross-check predicates identified in Section XI;

6.   Hold oral argument under Local Rule 7.1(b)(2); and

7.   Order such other and further relief as the Court deems just and proper.

The Lucky D Plaintiffs expressly reserve the right to file an expanded Rule 23(e)(5) objection at the final-approval stage, including with respect to fairness, reasonableness, adequacy, the proposed Plan of Allocation, the attorneys'-fee petition under Rule 23(h) and *Camden I*, and the adequacy of the Notice as actually disseminated.

Dated: June 5, 2026

Respectfully submitted,

/s/ Edward E. Lehman

Edward E. Lehman, Esq.

Illinois ARDC No. 6194489

LEHMAN, LEE & XU

33rd Floor, Tower One, Times Square

1 Matheson Street, Causeway Bay

Hong Kong SAR, PRC

Tel: (852) 3588-2188

elehman@lehmanlaw.com

/s/ Anthony Scordo III

Anthony Scordo III, Esq.

NJ Attorney ID 024591987

ANTHONY SCORDO, ESQ., P.C.

69 E. Allendale Road

Saddle River, NJ 07458

Tel: (973) 837-1861

Fax: (973) 837-9650

anthonyscordo@msn.com

*Counsel for the Lucky D Plaintiffs*

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certify that on multiple occasions between November 7, 2025 and May 22, 2026 — including communications memorialized at ECF Nos. 1051, 1060, 1103, and 1105, and including the October 27, 2025 Coordination/Carve-Out Letter, the November 5, 2025 Scordo letter to Travalini, and the February 2, 2026 Lehman email to Sidley Austin LLP — counsel attempted to confer in good faith with counsel for the Settling Defendants and with Co-Lead Class Counsel regarding the relief requested herein. Co-Lead Class Counsel has not agreed to the inclusion of a caption-specific carve-out for the Lucky D Action, and accordingly this Opposition is necessary.

**CERTIFICATE OF SERVICE**

I certify that on June 5, 2026, I filed the foregoing via the Court's CM/ECF system, which will serve all counsel of record.

/s/ Anthony Scordo III

Anthony Scordo III