**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MDL No. 3076
Case No. 1:23-md-03076-KMM

**IN RE:**

**FTX Cryptocurrency Exchange Collapse Litigation**

_____

THIS DOCUMENT RELATES TO:

      **INSIDER DEFENDANTS**

      **AUDITOR DEFENDANTS**

      **LAW FIRM DEFENDANTS**

      **PROMOTER DEFENDANTS**

_____

**PLAINTIFFS' OMNIBUS (1) REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SECOND TRANCHE OF SETTLEMENTS, PROVISIONAL CERTIFICATION OF PROPOSED SETTLEMENT CLASS, AND APPROVAL OF THE PROPOSED SCHEDULE; (2) MOTION TO STRIKE ECF NO. 1111; AND (3) MOTION FOR ORDER TO SHOW CAUSE**

Plaintiffs respectfully submit this omnibus (i) reply in further support of preliminary approval of the Second-Tranche Settlements, (ii) motion to strike the Lucky D Plaintiffs' Opposition to Plaintiffs' Motion for Preliminary Approval, ECF No. 1111 (the "Opposition"), and (iii) motion for issuance of an order directing counsel for the Lucky D Plaintiffs to show cause why sanctions should not be imposed.

The Court is not confronted with a legitimate Rule 23 objection. It is confronted with the latest filing in a months-long pattern of conduct by the Lucky D Plaintiffs and their counsel that has repeatedly sought to divert, delay, and complicate settlement proceedings that will provide substantial recoveries to hundreds of thousands of FTX victims.

The Opposition did not arise in isolation. The Lucky D Plaintiffs and their counsel have, from the outset, sought treatment unavailable to other litigants participating in this MDL. They

initially opposed transfer and consolidation of their action into this proceeding, arguments the JPML rejected. Since then, they have repeatedly attempted to circumvent both the stay applicable to individual claims and the Court-appointed leadership structure governing this MDL. They have filed serial motions to intervene while simultaneously insisting they are not members of the putative class. They have sought access to settlement materials unavailable to other claimants, requested individualized carve-outs and exemptions from settlement provisions applicable to everyone else, pursued expedited rulings designed to alter the timing of settlement proceedings, filed collateral actions in other jurisdictions arising from the same underlying facts, and attempted to reserve rights to challenge settlements while simultaneously seeking relief from their consequences. Throughout this process, they have sought to secure special treatment for their purported clients while declining to provide the information necessary to establish who those clients are, whether they are FTX customers, or whether they possess any entitlement to the extraordinary relief requested. In short, the Lucky D Plaintiffs have consistently maintained that they are entitled to participate in these proceedings on terms different from those applicable to every other claimant.

The threshold problem is standing. The Lucky D Plaintiffs have repeatedly represented that they "are not, and have never been," members of the putative class. The Opposition repeats that assertion. Yet the same filing later contends that each Lucky D Plaintiff falls within the settlement-class definition and therefore possesses objector rights under Rule 23(e)(5). Those positions cannot coexist. Either the Lucky D Plaintiffs are outside the Settlement Class and therefore lack standing to object, or they are within the Settlement Class and their repeated representations to the contrary are incorrect. Rule 23 does not permit litigants to disclaim class membership when seeking special treatment and then invoke class membership when seeking to obstruct settlement approval.

That standing problem is compounded by a more fundamental one: neither Plaintiffs, the

settling defendants, nor the Court have any reliable basis to determine who the Lucky D Plaintiffs actually are. Despite months of motion practice and repeated demands for individualized relief, they have refused to provide the identifying information, account records, transaction data, or claim documentation necessary to establish that they are FTX customers, members of the Settlement Class, or proper Rule 23 objectors. They seek extraordinary relief while withholding the very information necessary to determine whether they are entitled to seek that relief in the first place. The Court cannot evaluate standing, class membership, adequacy of representation, or even the identity of the purported objectors without information the Lucky D Plaintiffs have repeatedly declined to provide.

That lack of transparency has already generated concern in other courts. When many of the same individuals filed a parallel action in the District of New Jersey, the court immediately issued an order to show cause questioning whether the complaint contained sufficient allegations regarding the plaintiffs' citizenship to establish federal jurisdiction. Another federal court, in other words, encountered the same threshold issue presented here: who are these plaintiffs, and what evidence exists that they are properly before the court at all?

The broader context is equally significant. The Lucky D Plaintiffs have not participated in these proceedings as ordinary objectors. Rather, they have repeatedly sought intervention, expedited consideration, access to settlement-related materials, individualized carve-outs, and exemptions from settlement provisions applicable to all other claimants. When those efforts failed, they opened new fronts in other courts, including a recently filed action seeking hundreds of millions of dollars from settlement-related counsel while simultaneously attempting to avoid the consequences of, and reserve the right to challenge, the very settlements pending before this Court. The Court need not infer improper motives from that conduct. The docket speaks for itself. The relevant point is that the Opposition is the latest filing in a sequence of efforts through which the

Lucky D Plaintiffs have repeatedly sought treatment different from that afforded to other participants in this MDL.

The Opposition itself raises an additional and serious concern. The filing contains significant citation defects of the type federal courts have increasingly encountered in submissions prepared without adequate verification of the authorities cited. After Plaintiffs identified multiple citation errors, the Lucky D Plaintiffs filed a corrective notice conceding that certain authorities cited in the Opposition were inaccurate and withdrawing those citations. See ECF No. 1118. But that correction does not resolve the broader problem. The Opposition continues to rely on authorities for propositions they do not support, including on issues central to the relief sought. Nor does the corrective filing answer the question Rule 11 squarely presents: if counsel was required to re-verify the authorities after the errors were identified, what verification occurred before the Opposition was filed?

These are not harmless errors. Federal courts depend upon counsel's representations regarding the law. The adversarial process cannot function if courts and opposing parties must independently verify whether cited authorities exist or support the propositions for which they are offered. Recent decisions throughout the federal judiciary have recognized that unverified and fabricated citations waste judicial resources, distort legal analysis, and undermine confidence in the judicial process. At a minimum, attorneys have an obligation to read, verify, and confirm the authorities they place before a federal court.

The Court need not determine at this stage whether sanctions ultimately should be imposed. Nor must it resolve every dispute concerning the accuracy of the authorities cited in the Opposition. It is enough that substantial questions exist concerning (1) whether the Lucky D Plaintiffs possess standing to object at all, (2) whether they have established Settlement Class membership, (3) whether the authorities on which the Opposition relies support the propositions for which they are

4

cited, and (4) whether counsel conducted the reasonable pre-filing inquiry required by Rule 11. Those questions alone warrant striking the Opposition, requiring proof of standing and Settlement Class membership before any further participation in the Rule 23 process, and directing counsel to show cause why additional relief should not be imposed.

For these reasons, and those set forth below, the Court should grant preliminary approval of the settlements, strike the Opposition, require the Lucky D Plaintiffs to establish standing and Settlement Class membership before any further participation in the settlement process, and order counsel to show cause why sanctions should not be imposed.

## FACTUAL AND PROCEDURAL BACKGROUND

The Opposition cannot be understood in isolation. It is merely the latest chapter in a prolonged pattern of conduct through which the Lucky D Plaintiffs and their counsel have repeatedly attempted to disrupt settlement proceedings, obtain individualized advantages unavailable to other claimants, and create procedural obstacles to global resolutions that would benefit the Settlement Class.

The Lucky D Plaintiffs' separate action against Prager Metis was transferred into this MDL in October 2023 pursuant to 28 U.S.C. § 1407 after the Judicial Panel on Multidistrict Litigation concluded that the claims shared a common factual core with the auditor-related claims already pending before this Court. *See* Transfer Order, ECF No. 334. The transfer order rejected the Lucky D Plaintiffs' contention that their claims were too distinct for coordination and centralized the action for coordinated pretrial proceedings. The transfer did not confer upon the Lucky D Plaintiffs any special status within this MDL, nor did it entitle them to participate in settlement proceedings on terms different from any other litigant.

Years later, after notice of the proposed auditor settlement was provided, the Lucky D Plaintiffs launched a sustained effort to obtain exactly that result. On November 7, 2025, they filed

a "Rule 24 Limited-Purpose Motion to Intervene and for Settlement-Related Relief." ECF No. 1007. The motion sought access to confidential settlement materials, special carve-outs from settlement provisions, limitations on proposed bar orders, and individualized notice language preserving their purported rights. Rather than proceeding through the ordinary Rule 23 process applicable to class members, the Lucky D Plaintiffs asserted that they occupied some separate status entitling them to preferential treatment.

Almost immediately, serious procedural deficiencies emerged. Five days later, the Court noted that the Lucky D Plaintiffs' conferral certification was facially implausible because it claimed conferences occurred on November 10 and November 12, 2025, even though the motion had already been filed on November 7, 2025. ECF No. 1008. The Court further warned that noncompliance with procedural requirements could result in filings being stricken and sanctions being imposed. *Id.* The error was not minor. The Lucky D Plaintiffs' counsel later admitted that the filing contained dates that "obviously could not have taken place" before the motion was filed. ECF No. 1031.

Rather than litigate their original motion to conclusion, the Lucky D Plaintiffs embarked upon a pattern of serial filings. They submitted multiple revised intervention motions, amended intervention motions, supplemental memoranda, emergency applications, requests for expedited rulings, motions to amend stayed pleadings, motions to adopt filings, and additional settlement-related requests. *See* ECF Nos. 1007, 1020-22, 1030-31, 1035, 1051, 1062, 1066-68, 1081, 1086, 1105. Nearly all sought some variation of the same relief: intervention, special treatment, accelerated consideration of their requests, exemptions from settlement provisions, or bespoke accommodations unavailable to other litigants.

At the same time, the Lucky D Plaintiffs repeatedly insisted that they were not class members and required intervention because they occupied a unique status outside the settlement

class. Yet when the need arose to challenge proposed settlements, the same plaintiffs suddenly asserted that they fell within the settlement-class definition and therefore possessed objector rights. The contradiction runs throughout their filings and remains unresolved today.

The procedural abuses were accompanied by increasingly aggressive collateral litigation. The Lucky D Plaintiffs' original auditor-related action had already been centralized in this MDL. Yet rather than litigate within the coordinated structure established by the JPML and this Court, they began filing new actions in other jurisdictions arising from the same underlying facts.

Most recently, on May 13, 2026, the Lucky D Plaintiffs filed a new lawsuit against Fenwick & West LLP and several of its current and former attorneys in the United States District Court for the District of Columbia, claiming losses exceeding $525 million. *See Byers v. Fenwick & West LLP*, No. 26-cv-01651, ECF No. 1 (D.D.C. May 13, 2026). The complaint expressly seeks to avoid the consequences of settlements pending before this Court while simultaneously reserving rights to challenge those same settlements.[1]

Equally troubling, the Lucky D Plaintiffs have consistently refused to provide basic information necessary to establish who they are, whether they are FTX customers, whether they are members of the proposed Settlement Class, or whether they possess standing to seek the extraordinary relief they demand. They have declined requests from MDL Plaintiffs, settling defendants, and other interested parties for identifying information, account records, transaction data, and other objective evidence supporting their claims. Their most recent filings contain only partial names, conclusory allegations, and extraordinary loss assertions unsupported by

---

[1] Local Civil Rule 5.1(c)(1) for the U.S. District Court for the District of Columbia states: "The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party. If the party does not wish its full residence address to appear on the public docket, it shall omit the address and simultaneously file under seal a notice containing its full address, which notice shall be available only to the Court and the opposing party."

documentation. One purported plaintiff is identified only as "Junhao" and is alleged to have suffered losses exceeding $500 million. Yet despite repeated requests, counsel has declined to provide the information necessary to verify those allegations or even confirm the identities of the individuals they claim to represent.

That refusal has created jurisdictional concerns elsewhere. On May 13, 2026, many of the same individuals filed a new action in the District of New Jersey against former Prager Metis personnel. *See Alistair v. Decker*, No. 26-cv-05195 (D.N.J.). That same day, the Honorable Stanley R. Chesler issued an Order to Show Cause requiring the plaintiffs to establish subject matter jurisdiction because the complaint failed to provide basic information concerning the citizenship of several purported plaintiff entities. *See* ECF No. 1101-1. The deficiencies identified by that court mirror the problems presented here. Despite demanding extraordinary relief, the Lucky D Plaintiffs continue to withhold information necessary to establish who they are, what claims they possess, and whether they are properly before the Court at all.

Nor is this the first time these individuals and their counsel have attempted to challenge global resolution efforts affecting FTX customers. In the Chapter 11 proceedings, their counsel submitted a lengthy objection on behalf of purported international claimants, asserting aggregate losses of approximately $60 million and objecting to the Debtors' proposed valuation methodology for digital assets. *See* **Exhibit A**. Those objections were fully litigated and ultimately overruled when the Bankruptcy Court confirmed the FTX plan. Having failed to derail the bankruptcy process, these same actors now appear to be pursuing a similar strategy here—filing serial objections, intervention motions, and collateral lawsuits in an effort to extract special treatment and disrupt settlements that will benefit hundreds of thousands of class members.

The present Opposition represents the culmination of this pattern. Shortly after Plaintiffs filed their Second-Tranche preliminary approval papers, the Lucky D Plaintiffs filed the

8

Opposition. ECF Nos. 1106, 1111. The filing purports to oppose preliminary approval while simultaneously renewing intervention arguments, asserting rights reserved to class members, denying class membership, demanding individualized treatment, and relying upon a legal framework supported by fabricated authorities and materially mischaracterized case law.

The defects are not peripheral. Although the Lucky D Plaintiffs have now acknowledged that portions of the Opposition contained inaccurate citations, the correction merely confirms the concerns raised here. The Opposition continues to cite numerous authorities for propositions those cases do not support and continues to rest key arguments on materially flawed legal analysis. Those defects infect the very issues on which the Opposition depends, including standing, settlement approval standards, MDL authority, allocation methodology, and settlement bar orders. The Court should not be required to parse which authorities are real, which authorities support the propositions asserted, and which portions of the Opposition remain reliable after correction. The result is a filing whose legal foundation cannot be trusted and whose defects further underscore the need to strike the Opposition or disregard it unless and until the Lucky D Plaintiffs establish standing and present a legally supportable objection.

The Court should not permit the settlement process to be diverted by unsupported standing claims, serial collateral attacks, or filings grounded in fabricated legal authority. The Court should instead protect the integrity of the Rule 23 process, require the Lucky D Plaintiffs to establish their standing before proceeding further, and address the serious misconduct reflected in the Opposition.

**ARGUMENT**

I.    **The Lucky D Plaintiffs' Opposition Is Not a Proper Rule 23 Objection and Should Be Stricken**

Rule 23(e)(5) allows objection by a class member. The Supreme Court and Eleventh Circuit have explained that a nonnamed person's ability to object or appeal rests on that fact that the

settlement will bind that person as a class member. *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002); *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1251–52 (11th Cir. 2023). That is why the Eleventh Circuit has held that "Persons who are not class members are not bound at all." *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1309–10 (11th Cir. 2004).

The Opposition never resolves, and indeed affirmatively creates, the threshold standing problem. The filing begins by asserting that the Lucky D Plaintiffs "are not, and have never been, putative class members in this multidistrict litigation." Opposition at 1. It later repeats that the Lucky D Plaintiffs "are not, and have not sought to be, class representatives or absent class members." *Id.* at 13. The Lucky D Plaintiffs made the same point even more starkly in their "Request to Defer Ancillary Relief Affecting Direct-Action Claims," asserting that the Lucky D Plaintiffs "are not class members — or putative class members — by their own election." ECF No. 1105 at 2. This is the animating theme of the Lucky D Plaintiffs' entire motion practice.

Yet the Opposition later says that the settlement class definition reaches the Lucky D Plaintiffs and that "[e]ach Lucky D Plaintiff falls within this definition." Opposition at 9–10. Those positions cannot be reconciled. Either the Lucky D Plaintiffs are outside the class and therefore lack ordinary objector standing, or the Lucky D Plaintiffs are inside the class and the Opposition's repeated insistence that they are not class members is false. Either way, the Court should not permit the Lucky D Plaintiffs to have it both ways—disavowing class-member status when doing so supports their intervention narrative, then invoking class-member status when objector standing becomes necessary.

Nor have the Lucky D Plaintiffs supplied proof of class membership. The burden of that showing rests on the objector, not on Plaintiffs or the Court. Because only a class member may object under Rule 23(e)(5), a party invoking that rule must establish that it falls within the class definition and is bound by the settlement it seeks to challenge. Nothing in the record provided here

includes transaction records, account documentation, claim submissions, or sworn proof establishing that any identified Lucky D plaintiff falls within the settlement class and remains bound by the proposed settlements. That omission matters because the Court has broad discretion to impose threshold requirements on objectors in order to expose lawyer-driven or procedurally defective objections and to avoid a chaotic process. *Huang v. Equifax Inc.*, 999 F.3d 1247, 1266 (11th Cir. 2021). Objectors must "state with specificity" the grounds for objection, and factual objections cannot be conclusory. *Ponzio v. Pinon*, 87 F.4th 487, 499–500 (11th Cir. 2023). The Opposition's bald assertion that the Lucky D Plaintiffs' aggregate documented losses exceed $800 million does not substitute for proof that any filer is a settlement-class member with standing to object. That figure is also irreconcilable with the loss amounts these same actors have asserted elsewhere. In the FTX bankruptcy they asserted aggregate losses of approximately $60 million; the District of Columbia complaint claims more than $525 million; and the Opposition now invokes more than $800 million. The Opposition's own footnote documents only about $590 million of that $800 million even by way of example, attributing roughly $510 million of it to a single entity, Apex Digital. See Opposition at 2 n.1. Loss figures that swing by an order of magnitude from one forum to the next, and that the Opposition's own papers do not fully account for, are not evidence of injury. They are a reason to require proof before any of them is credited.

The Court should therefore strike the Opposition or, at minimum, disregard it unless and until the Lucky D Plaintiffs establish standing and class membership.

## II.     The Opposition Relies on Fabricated and Misrepresented Authorities

Even if the Lucky D Plaintiffs had standing, their Opposition is not a reliable legal submission. Its defects are not confined to aggressive advocacy or disputed interpretations of precedent. Rather, the Opposition repeatedly attributes propositions to authorities that those authorities do not support and advances legal arguments built upon materially flawed descriptions

of governing law.

After Plaintiffs identified serious citation defects in the Opposition, the Lucky D Plaintiffs filed a corrective notice acknowledging that certain authorities cited in support of their arguments were inaccurate and withdrawing those citations. *See* ECF No. 1118. Counsel further represented that they had re-verified the remaining authorities cited in the Opposition and confirmed that those authorities were "accurately cited and accurately stated." *Id.* That concession eliminates any dispute regarding the existence of citation errors in the original filing. More importantly, however, it does not cure the broader problems discussed below.

The first category of error involves authorities cited for propositions they do not address. For example, the Opposition cites *In re Pharmacy Benefit Managers Antitrust Litigation*, 700 F.3d 109, 117-18 (3d Cir. 2012), as though it held that an MDL transferee court's authority under 28 U.S.C. § 1407 does not extend to merits adjudication of transferred actions absent consent. It did not. That case concerns waiver of arbitration rights through litigation conduct and does not address the scope of a transferee court's authority under § 1407.

The Opposition likewise cites *In re Refco, Inc. Securities Litigation*, 628 F. Supp. 2d 432, 445-47 (S.D.N.Y. 2008), for the proposition that an MDL settlement bar order may not extinguish independent claims of separately represented litigants. Opposition at 19 n.9. *Refco* says no such thing. The decision addresses bankruptcy-related jurisdiction and abstention issues and does not discuss the propriety or scope of MDL settlement bar orders.

Similarly, the Opposition relies on *In re Pet Food Products Liability Litigation*, 629 F.3d 333, 346-48 (3d Cir. 2010), for the purported rule that "[w]here a putative class contains a documented outlier claimant whose loss equals or exceeds 5 percent of the aggregate class loss base, pro rata per capita allocation cannot deliver equitable treatment without bespoke sub-allocation methodology." Opposition at 25. The Third Circuit adopted no such rule. Rather, it held

12

only that the district court lacked sufficient information to evaluate a particular capped-allocation structure for a category of claims. The decision expressly did not establish any 5-percent threshold, outlier rule, or requirement for individualized allocation methodologies.

Three of the authorities the Opposition relies on do not hold what the Opposition says they hold:

| Authority | What the Opposition says it holds | What the decision actually holds |
|---|---|---|
| *In re Pharmacy Benefit Managers*, 700 F.3d 109 (3d Cir. 2012) | Cited (Opposition at 19 n.9) for the proposition that an MDL court's "§ 1407 authority does not extend to merits adjudication of transferred actions without consent." | An arbitration case. The court held the defendant waived its right to compel arbitration by litigating for more than ten months; the cited pages (117–18) state the waiver standard. The opinion does not address a transferee court's authority under § 1407, merits adjudication, or consent. |
| *In re Refco, Inc. Sec. Litig.*, 628 F. Supp. 2d 432 (S.D.N.Y. 2008) | Cited (Opposition at 19 n.9) for the proposition that an "MDL bar order may not extinguish independent claims of separately-represented direct litigants." | A remand decision. The court held a trustee's state-law claims were sufficiently "related to" the Refco bankruptcy to support removal jurisdiction, and that abstention was not warranted; the cited pages (445–47) address abstention. The opinion does not discuss bar orders, class settlements, or the claims of non-class litigants. |
| *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) | Cited (Opposition at 25) for the proposition that, where a class includes an outlier whose loss is "5 percent of the aggregate class loss base," pro rata allocation "cannot deliver equitable treatment without bespoke sub-allocation methodology." | At the pages the Opposition cites (346–48), the court rejected the argument that unequal allocation among class members shows a conflict requiring subclasses, holding that varied relief "is not unusual." It affirmed certification and remanded settlement approval only because the parties had not supplied enough information to evaluate one capped allocation (the $250,000 Purchase-Claims cap). It announced no 5 percent threshold, outlier rule, or sub-allocation requirement. |

Nor are these defects peripheral. The cited authorities concern the very issues on which the Opposition depends, including standing, MDL authority, settlement approval standards, allocation

13

methodology, and settlement bar orders. These are not isolated citation errors buried in footnotes. They are substantive misstatements of authority directed at the core legal arguments advanced by the Lucky D Plaintiffs.

The pattern is also strikingly similar to the type of citation and verification failures that federal courts have increasingly confronted in filings generated or assisted by artificial intelligence without adequate attorney review. *See ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025) ("The lawyer has a duty to check all the cases and quotations for accuracy."); *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters.*, LLC, No. 17-CV-81140, 2025 WL 1440351, at *5 (S.D. Fla. May 20, 2025) (imposing sanctions for submission of hallucinated authority); *Hylton v. Hylton*, No. 0:25-CV-62206, 2026 WL 166365, at *4 (S.D. Fla. Jan. 5, 2026), *report and recommendation adopted*, 2026 WL 161808 (S.D. Fla. Jan. 21, 2026) (warning that reliance on AI-generated authorities without verifying their existence, accuracy, and relevance violates Rule 11's reasonable-inquiry requirement); *Park v. Kim*, 91 F.4th 610, 615–16 (2d Cir. 2024) (finding that counsel's submission of a brief relying on nonexistent authority reflected a failure to conduct the reasonable inquiry required by Rule 11 and warranted referral for disciplinary investigation).

The Court need not determine whether the errors in the Opposition resulted from carelessness, inadequate legal research, misuse of artificial intelligence, or some combination thereof. What matters is that the filing asks the Court to reject settlements affecting hundreds of thousands of class members based upon legal authorities that do not support the propositions for which they are cited. The Court should not credit a filing built on that foundation.

### III. The Opposition Should Be Stricken and Counsel Should Be Ordered to Show Cause

Federal courts possess broad authority to protect the integrity of judicial proceedings and

to address litigation conduct that abuses the judicial process. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 42–46 (1991). In the class-action context, district courts likewise possess substantial discretion to manage objections and related proceedings to ensure that the settlement process remains fair, orderly, and free from abuse. *Huang*, 999 F.3d at 1266.

The Court should exercise that authority here. The Opposition is not a proper Rule 23 objection submitted by a demonstrated member of the Settlement Class. Instead, it is a filing submitted by litigants who continue to deny class membership while simultaneously attempting to invoke objector rights, who have repeatedly sought individualized treatment unavailable to other claimants, and whose Opposition required correction after Plaintiffs identified serious citation defects.

The filing of ECF No. 1118 only underscores the problem. In that notice, counsel for the Lucky D Plaintiffs acknowledged that authorities cited in the Opposition were inaccurate, withdrew those citations, and represented that they re-verified the remaining authorities after the errors were brought to their attention. ECF No. 1118 ¶¶ 1–3. While the correction confirms Plaintiffs' concerns regarding the reliability of the original filing, it does not cure the broader defects discussed herein. Nor does it answer the threshold question posed by Rule 11: what reasonable inquiry was conducted before the Opposition was filed?

The burden imposed by these defects is precisely the harm courts have repeatedly identified in cases involving unverified legal authorities. As Judge Leibowitz recently explained, the submission of inaccurate authorities harms not only the client but also opposing parties, who must expend resources uncovering the errors, and the courts, whose limited time is diverted from other matters. *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025) (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448-49 (S.D.N.Y. 2023)).

That same decision explains why a show-cause order is warranted here. Rule 11 imposes

an affirmative obligation on counsel to conduct a reasonable inquiry before filing a pleading. *ByoPlanet*, 792 F. Supp. 3d at 1354; *Baker v. Alderman*, 158 F.3d 516, 524–25 (11th Cir. 1998) (holding that Rule 11 imposes an objective duty of reasonable inquiry and authorizes sanctions where counsel advances claims lacking factual or legal support). Attorneys cannot satisfy that obligation by verifying authorities only after errors are discovered and brought to their attention. Nor may attorneys rely upon artificial intelligence or other research tools without independently confirming the accuracy of the resulting authorities and propositions. *ByoPlanet*, 792 F. Supp. 3d at 1354. Because court-initiated Rule 11 proceedings require notice and careful use, Plaintiffs request only a limited show-cause order directed to counsel's pre-filing verification of the authorities cited in the Opposition.

An order to show cause is independently warranted under both the Court's inherent authority and 28 U.S.C. § 1927. Federal courts possess inherent authority to sanction conduct that abuses the judicial process, and bad faith is the key to the exercise of that authority. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017). Section 1927 likewise permits sanctions when an attorney unreasonably and vexatiously multiplies proceedings through conduct that is objectively reckless and tantamount to bad faith. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282–83 (11th Cir. 2010).

The circumstances here extend far beyond a single citation error. The Opposition follows months of serial intervention motions, duplicative filings, collateral lawsuits, requests for individualized carve-outs, demands for special treatment, and repeated efforts to divert settlement proceedings onto separate tracks. The citation defects identified in the Opposition are part of that broader pattern. Even after filing ECF No. 1118, the Lucky D Plaintiffs continue to rely upon authorities for propositions those authorities do not support, including on issues central to their arguments concerning standing, MDL authority, settlement approval, allocation methodology, and

16

settlement bar orders.

At minimum, counsel should be required to explain: (1) what pre-filing inquiry was undertaken before the Opposition was filed; (2) how inaccurate citations came to be included in the Opposition; (3) why authorities such as *In re Pharmacy Benefit Managers Antitrust Litigation*, *In re Refco, Inc. Securities Litigation*, and *In re Pet Food Products Liability Litigation* were cited for propositions they do not support; (4) whether similar verification issues exist elsewhere in the Lucky D Plaintiffs' filings; and (5) what steps counsel took to ensure compliance with Rule 11 before filing the Opposition.

The Court need not determine at this stage whether sanctions ultimately should be imposed. It need only determine that substantial questions exist concerning the accuracy of the legal authorities presented, the adequacy of counsel's pre-filing inquiry, and the broader pattern of conduct reflected throughout the Lucky D Plaintiffs' motion practice. Those questions warrant a show-cause order and further scrutiny by the Court.

### IV.     Nothing in the Opposition Undermines Preliminary Approval.

Even if the Court were to consider the Opposition on the merits, nothing in it provides a basis to deny or delay preliminary approval.

The Opposition's principal arguments rest on three propositions: (1) that the proposed bar orders are categorically improper because separately represented plaintiffs exist; (2) that this Court lacks authority to approve settlements affecting transferred actions; and (3) that the allocation methodology is inherently unfair. None survives scrutiny.

First, the Opposition's bar-order argument misstates Eleventh Circuit law. While bar orders are extraordinary and must be supported by an adequate record, the Eleventh Circuit has repeatedly recognized their propriety where they are fair, equitable, and necessary to facilitate settlement. *See AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305 (11th Cir. 2004); *In re*

17

*HealthSouth Corp. Sec. Litig.*, 572 F.3d 854 (11th Cir. 2009). The Opposition identifies no authority establishing the categorical prohibition it advances.

Second, the Opposition's MDL argument rests on authorities that do not support the propositions for which they are cited. *Lexecon*, 523 U.S. 26 (1998), held that a transferee court may not assign a transferred case to itself for trial under § 1404(a). It did not hold that a transferee court lacks authority to supervise settlement proceedings, approve class settlements, or enter settlement-related relief during coordinated pretrial proceedings. To the contrary, supervising and approving the settlement of consolidated actions is a core function of the coordinated pretrial proceedings that § 1407 exists to facilitate. Nor do *In re Pharmacy Benefit Managers* or *In re Refco* support that proposition.

Third, the Opposition identifies no actual defect in the Rule 23 process. The Court's task at preliminary approval is to determine whether the settlements warrant notice and further consideration under the Rule 23 framework. *Huang*, 999 F.3d at 1260–66. The governing question is whether the Court will likely be able to approve the settlements under Rule 23(e)(2) and to certify the Settlement Class for purposes of judgment. See Fed. R. Civ. P. 23(e)(1)(B). The Rule 23(e)(2) factors frame that determination: the adequacy of representation, whether the settlements were negotiated at arm's length, the adequacy of the relief provided, and the equitable treatment of class members relative to one another. The Opposition does not meaningfully engage that analysis. Instead, it relies on unsupported assertions regarding individualized losses, speculative valuation disputes, and allocation theories unsupported by the authorities it cites.

Finally, the Opposition never resolves its own threshold contradiction. If the Lucky D Plaintiffs are not members of the Settlement Class, they lack standing to object. If they are members of the Settlement Class, Rule 23 provides the relevant process. The Opposition offers no coherent basis for occupying both positions simultaneously.

For all of these reasons, nothing in the Opposition provides a basis to delay, deny, or otherwise withhold preliminary approval.

### V. The Court Should Protect the Settlement Process From Abuse of the Objection Mechanism

The Court's responsibility as fiduciary for absent class members includes protecting the settlement process from abuse. Because the court must carefully scrutinize a proposed class settlement and manage the objection process, it may require threshold information sufficient to evaluate whether an objection is proper. *Huang*, 999 F.3d at 1260–66. Legitimate objectors can provide meaningful assistance to courts evaluating proposed settlements. At the same time, courts have long recognized that objections may be used strategically to delay settlements, obtain leverage, or pursue interests unrelated to those of the class. The 2018 amendments to Rule 23 reflect that same concern. Rule 23(e)(5)(B) now requires court approval before any payment is made in connection with withdrawing or abandoning an objection, a safeguard the Advisory Committee adopted to deter objections lodged for leverage rather than for the benefit of the class. See Fed. R. Civ. P. 23(e)(5) advisory committee's note to 2018 amendment.

The Court need not determine the Lucky D Plaintiffs' ultimate motives to recognize the problem presented here. The Opposition was filed by parties who have not established class membership, who continue to take contradictory positions regarding their status, who have pursued serial intervention motions and collateral litigation, and whose filing required subsequent correction after citation defects were identified. See ECF No. 1118. These circumstances raise substantial concerns regarding whether the Opposition represents a genuine effort to improve the proposed settlements or merely another attempt to disrupt the settlement process.

The Court should therefore require the Lucky D Plaintiffs to establish standing before further participation in the Rule 23 process and should decline to permit unsupported objections

to impede settlements that will benefit hundreds of thousands of class members.

## CONCLUSION

The Opposition does not present a valid basis to deny or delay preliminary approval. The Lucky D Plaintiffs have not established that they possess standing to object. They continue to take irreconcilable positions regarding whether they are members of the Settlement Class. They have engaged in a prolonged pattern of intervention-related motion practice and collateral litigation designed to secure individualized treatment unavailable to other claimants. And the Opposition itself required subsequent correction after significant citation defects were identified, while continuing to rely on authorities that do not support the propositions for which they are cited.

None of those defects undermines the proposed settlements. To the contrary, they underscore the need for the Court to protect the integrity of the Rule 23 process, ensure that only proper objectors participate in settlement proceedings, and require accountability for filings that impose unnecessary burdens on the Court and the parties.

Accordingly, Plaintiffs respectfully request that the Court:

1. Grant preliminary approval of the Second-Tranche Settlements;

2. Strike the Opposition in its entirety, or alternatively disregard the Opposition unless and until the Lucky D Plaintiffs establish Settlement Class membership and standing to object under Rule 23(e)(5);

3. Order the Lucky D Plaintiffs and their counsel to show cause why further participation in the settlement process should be permitted absent proof of standing and Settlement Class membership;

4. Order counsel for the Lucky D Plaintiffs to show cause why sanctions should not be imposed pursuant to Federal Rule of Civil Procedure 11(c)(3), 28 U.S.C. § 1927, or the Court's inherent authority; and

5.     Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
Joseph M. Kaye
Florida Bar No. 117520
**THE MOSKOWITZ LAW FIRM, PLLC**
Continental Plaza
3250 Mary Street, Suite 202
Coconut Grove, FL 33133
Office: (305) 740-1423
adam@moskowitz-law.com
joseph@moskowitz-law.com
service@moskowitz-law.com

*Co-Lead Counsel*

By: */s/ David Boies*
David Boies
Alexander Boies
Brooke A. Alexander
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
914-749-8200
dboies@bsfllp.com
aboies@bsfllp.com
balexander@bsfllp.com

*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the forgoing was filed on June 5, 2026, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam Moskowitz*
Adam Moskowitz

21